COOLEY LLP
TRAVIS LEBLANC (251097) (tleblanc@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
JOSEPH D. MORNIN (307766) (jmornin@cooley.com)
101 California Street, 5th floor
San Francisco, CA   94111-5800
Telephone:   (415) 693-2000
Facsimile:   (415) 693-2222

DANIEL J. GROOMS (D.C. Bar No. 219124) (admitted *pro hac vice*)
(dgrooms@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
Telephone:   (202) 842-7800
Facsimile:   (202) 842-7899

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 3:19-cv-07123-JSC<br><br>**PLAINTIFFS' SEPARATE CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Date:        February 13, 2020<br>Time:        1:30 p.m.<br>Courtroom: E, 15th Floor<br>Judge:       Hon. Jacqueline S. Corley |

Plaintiffs WhatsApp Inc. and Facebook, Inc. submit this Separate Case Management Statement and Proposed Order under the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.

**I.    JURISDICTION AND SERVICE**

*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

**A.     Subject-Matter Jurisdiction**

The Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action alleges violations of federal law, namely, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*. The Court has supplemental jurisdiction over Plaintiffs' state-law causes of action under 28 U.S.C. § 1367 because they arise from the same nucleus of operative fact as Plaintiffs' CFAA claim.

In addition, the Court has diversity jurisdiction under 28 U.S.C. § 1332 because complete diversity exists between the Plaintiffs and each of the named Defendants and because the amount in controversy exceeds $75,000.

**B.     Personal Jurisdiction and Venue**

The Court has personal jurisdiction over Defendants because they obtained financing from a California-based entity; they directed their actions at California and Plaintiffs, who are headquartered in California; they unlawfully accessed and used WhatsApp's computers, several of which are located in California; and they agreed to WhatsApp's Terms of Service, which required Defendants to submit to the personal jurisdiction of this Court.

Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because the harm to Plaintiffs occurred in this District.

As explained below, Defendants have not appeared in this litigation, they have not responded to the Complaint, and they have not responded to Plaintiffs' communications concerning this matter. Declaration of Joseph D. Mornin ("Mornin Decl.") ¶ 14. As such, there are currently no issues related to personal jurisdiction or venue.

**C.     Service**

Defendant Q Cyber is the parent company of Defendant NSO Group. Compl. ¶¶ 5–6. Both Defendants' offices are located at 22 Galgalei Haplada, Hertsliya, Israel 4672222. *Id.* Ex. 5. As described below, Plaintiffs have made substantial efforts to notify and serve Defendants by email, physical mail, personal service, and service via the Hague Convention.

**1.     Defendants were notified via email, physical mail, and personal service.**

After filing the Complaint on October 29, 2019, Plaintiffs notified NSO Group and Q Cyber

of this litigation and requested waiver of service by delivering the following materials (the "Service Materials") to each Defendant and their board members:

- A cover letter that requested contact information for Defendants' counsel; requested waiver of service of the summons within 60 days; and informed Defendants of their duty to preserve all documents that may be relevant to this litigation. Mornin Decl. ¶ 2 & Ex. 1.
- The Complaint, Complaint exhibits, and civil cover sheet filed in this case (ECF Nos. 1, 1-1, & 1-2). *Id.* ¶ 2.
- U.S. District Court Forms AO 398 ("Notice of a Lawsuit and Request to Waive Service of a Summons") and AO 399 ("Waiver of the Service of Summons"). *Id.* ¶ 2 & Ex. 2.
- The standing order for all judges of the Northern District of California; the civil standing order for Magistrate Judge Jacqueline Scott Corley; the Northern District of California's general standing order for civil cases entitled "Contents of Joint Case Management Statement"; and the Court's order setting ADR deadlines and the initial case management conference (ECF No. 9). *Id.* ¶ 2.

Plaintiffs delivered the Service Materials to Defendants by the following methods:

- <u>By email</u>:
  - On November 4, 2019, Plaintiffs delivered the Service Materials to Shalev Hulio, NSO Group's CEO and board member, by email. *Id.* ¶ 4 & Ex. 3.[1]
  - On November 4, 2019, Plaintiffs delivered the Service Materials to Eran Gorev, who is identified as Q Cyber's CEO in the company's Israeli corporate filings, by email. On November 12, Plaintiffs received an email response from Gorev, in which Gorev stated that he no longer serves in that role. *Id.* ¶ 5 & Ex. 4.
  - On November 8, 2019, Plaintiffs delivered the Service Materials to each NSO Group board member, as identified on NSO Group's website, by email. *Id.* ¶ 7 & Ex. 6.

---

[1] All email addresses and physical addresses Plaintiffs contacted are identified in the attached Mornin Declaration and exhibits.

- o On November 22, 2019, Plaintiffs attempted to deliver the Service Materials to Nachum Falek, CFO of both Q Cyber and NSO Group, by email. *Id.* ¶ 12 & Ex. 11.
- By physical mail:
  - o On November 4, 2019, Plaintiffs sent the Service Materials by DHL Express to Defendants' shared office in Israel. The Service Materials were delivered to the shared office and signed for at reception on November 10. *Id.* ¶ 6 & Ex. 5.
  - o On November 9, 2019, Plaintiffs sent the Service Materials by FedEx to the office of each NSO Group board member. The Service Materials were delivered and signed for between November 11 and 13. *Id.* ¶ 8 & Ex. 7.
  - o On November 21, 2019, Plaintiffs sent the Service Materials addressed to Nachum Falek, Q Cyber's and NSO Group's CFO, by DHL Express to Defendants' shared office in Israel. The Service Materials were delivered to the shared office and signed for at reception on November 24. *Id.* ¶ 11 & Ex. 10.
- In person:
  - o On November 13, 2019, Plaintiffs hand-delivered the Service Materials to both Defendants at their shared office in Israel. Shir Kovner, who serves as the "legal advisor" for both Defendants, personally signed the receipt for the hand-delivered Service Materials. *Id.* ¶ 9 & Ex. 8.
  - o On November 15, 2019, Plaintiffs hand-delivered the Service Materials to Omri Lavie, NSO Group's co-founder and a current board member, by delivering the Service Materials to his wife at their residence in New Jersey. *Id.* ¶ 10 & Ex. 9.
  - o On November 24, 25, and 27, 2019, Plaintiffs attempted to hand-deliver the Service Materials to Nachum Falek, Q Cyber and NSO Group's CFO, at Defendants' shared office and Falek's home in Israel. When those attempts did not succeed, Plaintiffs sent materials by registered mail in Israel to Defendants' office and left an envelope containing the Service Materials in Falek's mailbox at his residence. *Id.* ¶ 13 & Ex. 12.

The deadline for Defendants to respond to Plaintiffs' requests for waiver of service was January 3, 2020.[2] Defendants have not provided a response as of this filing.

**2.    Defendants were properly served via the Hague Convention.**

In addition to these efforts, Plaintiffs have also successfully served Defendants via the Hague Service Convention. Plaintiffs engaged a vendor to accomplish international process service on November 8, 2019. *Id.* ¶ 16. On December 31, 2019, the vendor reported that Defendants had been served by hand-delivery at their shared office on December 17, 2019. *Id.* ¶ 17 & Exs. 13, 14. Plaintiffs are currently awaiting the issuance of the formal certificate of Hague service by the Central Authority in Israel. *Id.* ¶ 18.

**3.    Defendants have publicly acknowledged this litigation.**

It is undeniable that Defendants have actual notice of this litigation. On October 29, 2019—the same day Plaintiffs filed the Complaint in this case—NSO Group issued a press release discussing the litigation, in which it stated: "In the strongest possible terms, we dispute today's allegations and will vigorously fight them." *Id.* ¶ 19 & Ex. 15. Plaintiffs have also successfully contacted both NSO Group and Q Cyber through multiple channels, as described above. *See, e.g., id.* ¶ 9 & Ex. 8 (showing that the legal advisor for NSO Group—who also serves as the legal advisor for Q Cyber—personally signed for a delivery of the Service Materials listed above), ¶ 8 & Ex. 7 (showing that the Service Materials were delivered and signed for at NSO Group's and Q Cyber's offices).

Moreover, recent public filings under the Foreign Agents Registration Act indicate that Q Cyber executed an agreement with a U.S. public strategy firm, Mercury Public Affairs, on December 19, 2019 (approximately seven weeks after Plaintiffs filed this lawsuit and exactly two days after Hague service was effected), for consulting services related to this litigation:

---

[2] Rule 4(d)(1)(F) provides that a request for waiver of service must "give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver." Here, Plaintiffs sent their initial request for waiver of service to both Defendants by physical mail on November 4, 2019, with instructions to return the waiver within 60 days. Mornin Decl. ¶ 2 & Exs. 1, 2. Plaintiffs delivered the same materials by email to both Defendants on the same day. *Id.* ¶ 4. 60 days after November 4, 2019, is January 3, 2020.

> Consultant [Mercury Public Affairs] will provide strategic consulting and management services ("Services") specific to government relations and crisis management issues that the Client [Q Cyber] faces in connection with, and which may impact, **pending litigation filed against the Client in the U.S. District Court for the Northern District of California** and/or other US and non-US courts, and in connection with potential future litigation or regulatory actions involving similar issues.

*Id.* ¶ 20 & Ex. 16 at 10 (emphasis added).[3] The agreement was signed by Q Cyber's General Legal Counsel, Shmuel Sunray, and envisions payments of $120,000 per month until November 30, 2020. *Id.* Ex. 16 at 4, 11.

**4.     Defendants have not timely responded to the Complaint.**

The deadline for Defendants to respond to the complaint was January 7, 2020. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows: . . . A defendant must serve an answer . . . within 21 days after being served with the summons and complaint."). Despite Plaintiffs' multiple communications to Defendants' corporate headquarters and to their directors, officers, and board members, Defendants have not responded to the Complaint as of this filing and have refused to appear in this litigation.

On February 3, 2020, Plaintiffs' counsel was contacted for the first time by Joseph Akrotirianakis, an attorney at King & Spalding LLP, who stated that he represents NSO Group and Q Cyber. Mornin Decl. ¶ 15. Counsel for all parties spoke by phone on February 4. *Id.* During that phone conversation, Mr. Akrotirianakis stated that he was not currently willing to enter an appearance as an attorney of record in this case. *Id.* Plaintiffs' counsel stated that Plaintiffs were concerned about discussing the litigation with counsel who are not attorneys of record. *Id.* Plaintiffs later confirmed by email that they would only discuss the litigation with an attorney of record. *Id.* As of this filing, Plaintiffs have not received a reply. *Id.*

**II.     FACTS**

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

---

[3] No other litigation has been filed in the Northern District against Q Cyber or NSO Group. Thus, it is indisputable that this agreement contemplates consulting services related to this case.

Defendants manufactured, distributed, and operated surveillance technology, also known as "spyware," designed to intercept and extract information and communications from mobile phones and devices. Defendants' products included "Pegasus," a type of spyware that could be surreptitiously installed on a victim's phone without the victim taking any action, such as clicking a link or opening a message. Once installed, Pegasus could access a broad array of private information, including the phone's location, camera, microphone, memory, and hard drive, as well as private emails, calls, texts, and messages sent via iMessage, Skype, Telegram, WeChat, Facebook Messenger, WhatsApp, and other platforms. Defendants' clients included government agencies in the Kingdom of Bahrain, the United Arab Emirates, and Mexico, as well as private entities.

Between in and around April 2019 and May 2019, Defendants used WhatsApp servers, located in the United States and elsewhere, to send their spyware to approximately 1,400 mobile phones and devices belonging to attorneys, journalists, human rights activists, government officials, and others. Unable to break WhatsApp's end-to-end encryption, Defendants developed their malware to access messages and other communications after they were decrypted on a device. Defendants' actions were not authorized by Plaintiffs. In May 2019, Plaintiffs detected and stopped Defendants' unauthorized access and abuse of the WhatsApp service and computers. On October 29, 2019, Plaintiffs filed this lawsuit seeking injunctive relief and damages based on federal and state claims.

Since the filing of the Complaint, there have been several reports of NSO Group's continued manufacturing, distribution, and operation of surveillance technology. The *New York Times* reported that Saudi Arabia attempted to install NSO Group's malware on a *Times* reporter's phone, and Reuters reported that the FBI is investigating NSO Group's role in possible hacks of American residents and companies. *Id.* ¶¶ 21–22 & Exs. 17, 18.

### III.  LEGAL ISSUES

*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

Given Defendants' failure to timely respond to the Complaint, there are no disputed legal issues at this time.

## IV. MOTIONS

*All prior and pending motions, their current status, and any anticipated motions.*

Plaintiffs previously filed an administrative motion to reschedule the case management conference, which the Court granted. ECF Nos. 16 (motion), 17 (order). There are no pending motions. Plaintiffs anticipate filing motions necessary to obtain a default judgment.

## V. AMENDMENT OF PLEADINGS

*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

At this time, Plaintiffs do not expect to add any parties, claims, or defenses. In accordance with Fed. R. Civ. P. 15(a), and given that Defendants have not served a responsive pleading, Plaintiffs propose that no deadline for amending the pleadings be set at this time.

## VI. EVIDENCE PRESERVATION

*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.*

Plaintiffs have reviewed the ESI Guidelines and are taking reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

Plaintiffs have been unable to meet and confer with Defendants regarding evidence preservation because Defendants have refused to appear and Defendants have not replied to any of Plaintiffs' communications. Mornin Decl. ¶ 14.

## VII. DISCLOSURES

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.*

Because Defendants have not responded to the Complaint, Plaintiffs believe initial disclosures under Fed. R. Civ. P. 26 are premature but are ready to make such disclosures when Defendants appear in this litigation.

## VIII. DISCOVERY

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*

No discovery has been taken to date. In view of Defendants' failure to appear in this litigation or respond to the Complaint, Plaintiffs believe a proposed discovery plan is premature.

## IX. CLASS ACTIONS

*If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.*

Not applicable.

## X. RELATED CASES

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

On November 26, 2019 (approximately one month after Plaintiffs filed their Complaint in this case), eight current and former employees of NSO Group filed a lawsuit against Facebook in Israel. *Azarzar v. Facebook, Inc.*, Civil File 62584-11-19 (Tel Aviv—Jaffa District Court). The plaintiffs in that case allege that Facebook unlawfully terminated their Facebook and Instagram accounts.

## XI. RELIEF

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

Plaintiffs seek the following relief:

- Judgment against Defendants that Defendants have:
    o Violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

- o Violated the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502;
- o Breached their contracts with WhatsApp in violation of California law; and
- o Wrongfully trespassed on Plaintiffs' property in violation of California law.
- A permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors, and assigns, and all other persons acting in concert with or conspiracy with any of them or who are affiliated with Defendants from:
  - o Developing or selling malware or computer code that targets Facebook, Facebook Products, or Facebook Company Products;
  - o Accessing or attempting to access WhatsApp's and Facebook's service, platform, and computer systems;
  - o Creating or maintaining any WhatsApp or Facebook account;
  - o Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Plaintiffs' service, platform, and computer systems; and
  - o Engaging in any activity, or facilitating others to do the same, that violates WhatsApp's or Facebook's Terms.
- That WhatsApp and Facebook be awarded damages, including, but not limited to, compensatory, statutory, and punitive damages, as permitted by law and in such amounts to be proven at trial.
- That WhatsApp and Facebook be awarded their reasonable costs, including reasonable attorneys' fees.
- That WhatsApp and Facebook be awarded pre- and post-judgment interest as allowed by law.
- That the Court grant all such other and further relief as the Court may deem just and proper.

XII.  **SETTLEMENT AND ADR**

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including*

*compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

In view of Defendants' failure to appear in this litigation or respond to the Complaint, Plaintiffs do not believe that the prospects for settlement are favorable, and the parties have not conferred in an attempt to agree on an ADR process in accordance with ADR L.R. 3-5.

### XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.   ___ Yes ___ No*

Plaintiffs consent to a magistrate judge for all purposes. *See* ECF No. 14 (Plaintiffs' consent to magistrate judge jurisdiction). Because Defendants have not appeared, Plaintiffs are unaware of whether Defendants consent to a magistrate judge for all purposes.

### XIV. OTHER REFERENCES

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

This case is not suitable for reference.

### XV. NARROWING OF ISSUES

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

In view of Defendants' failure to appear in this litigation or respond to the Complaint, Plaintiffs do not believe the issues can be narrowed by agreement at this time.

### XVI. EXPEDITED TRIAL PROCEDURE

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64 Attachments B and D.*

Plaintiffs do not believe this is the type of case that should be handled under the Expedited Trial Procedure of General Order No. 64.

## XVII. SCHEDULING

*Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

In view of Defendants' failure to appear in this litigation or respond to the Complaint, Plaintiffs believe that a case schedule is not necessary at this time.

## XVIII. TRIAL

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

In view of Defendants' failure to appear in this litigation or respond to the Complaint, Plaintiffs believe that a trial plan is not necessary at this time. Nonetheless, Plaintiffs request a jury trial and expect the length of the trial to be ten court days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.*

Plaintiffs filed their Certificate of Interested Entities on October 29, 2019. ECF No. 6. Plaintiffs hereby restate the contents of that Certificate: there is no such interest to report.

## XX. PROFESSIONAL CONDUCT

*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

All attorneys of record for Plaintiffs have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI. OTHER

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this*

*matter.*

Plaintiffs intend to secure the just, speedy, and inexpensive disposition of this matter with a motion for default judgment.

Dated: February 6, 2020

Respectfully submitted,

COOLEY LLP

/s/ Travis LeBlanc
Travis LeBlanc
Daniel J. Grooms
Kyle C. Wong
Joseph D. Mornin

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.

CASE MANAGEMENT ORDER

The above SEPARATE CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated:

U.S. Magistrate Judge Jacqueline S. Corley