# EXHIBIT 3

| U.S. Department of Justice | Exhibit B to Registration Statement |
|---|---|
| Washington, DC 20530 | Pursuant to the Foreign Agents Registration Act of 1938, as amended |

INSTRUCTIONS. A registrant must furnish as an Exhibit B copies of each written agreement and the terms and conditions of each oral agreement with his foreign principal, including all modifications of such agreements, or, where no contract exists, a full statement of all the circumstances by reason of which the registrant is acting as an agent of a foreign principal. Compliance is accomplished by filing an electronic Exhibit B form at https://www.fara.gov.

Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.*, for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: https://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: https://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .33 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterintelligence and Export Control Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name of Registrant | 2. Registration No. |
|---|---|
| Mercury Public Affairs, LLC | 6170 |

3. Name of Foreign Principal

   Q Cyber Technologies Ltd.

Check Appropriate Box:

4. ☒ The agreement between the registrant and the above-named foreign principal is a formal written contract. If this box is checked, attach a copy of the contract to this exhibit.

5. ☐ There is no formal written contract between the registrant and the foreign principal. The agreement with the above-named foreign principal has resulted from an exchange of correspondence. If this box is checked, attach a copy of all pertinent correspondence, including a copy of any initial proposal which has been adopted by reference in such correspondence.

6. ☐ The agreement or understanding between the registrant and the foreign principal is the result of neither a formal written contract nor an exchange of correspondence between the parties. If this box is checked, give a complete description below of the terms and conditions of the oral agreement or understanding, its duration, the fees and expenses, if any, to be received.

7. Describe fully the nature and method of performance of the above indicated agreement or understanding.

   Please see the attached contract. Registrant's services include consulting services in connection with public relations, media relations, government relations, and litigation.

FORM NSD-4
Revised 05/17

8. Describe fully the activities the registrant engages in or proposes to engage in on behalf of the above foreign principal.

Please see the attached contract. Registrant's services include consulting services in connection with public relations, media relations, government relations, and litigation.

9. Will the activities on behalf of the above foreign principal include political activities as defined in Section 1(o) of the Act and in the footnote below?    Yes ☒    No ☐

If yes, describe all such political activities indicating, among other things, the relations, interests or policies to be influenced together with the means to be employed to achieve this purpose.

Please see the attached contract. Registrant's services include consulting services in connection with public relations, media relations, government relations, and litigation.

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this Exhibit B to the registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| Date of Exhibit B | Name and Title | Signature | |
|---|---|---|---|
| January 06, 2020 | Leonardo Dosoretz, Counsel | /s/ Leonardo Dosoretz | eSigned |

Footnote: "Political activity," as defined in Section 1(o) of the Act, means any activity which the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.



# CONSULTING SERVICES AGREEMENT

By and through its General Legal Counsel, **Q Cyber Technologies Ltd** ("Client") hereby enters into this Consulting Services Agreement (the "Agreement") effective as of December 15, 2019 (the "Effective Date") to retain **Mercury Public Affairs, LLC**, a Delaware limited liability company having a business address at 200 Varick Street, Suite 600, New York, New York U.S.A. 10014 ("Consultant"), as an independent contractor to perform the services described herein. Client and Consultant may each be referred to as a "Party" herein, and collectively may be referred to as "Parties".

1. <u>The Services</u>.  Client and Consultant agree that Client hereby retains Consultant to render consulting services to the Client as specified on <u>Schedule 1</u> attached hereto.  In addition, subject to any limitations set forth on <u>Schedule 1</u>, Consultant will provide such other reasonable consulting services as the parties shall mutually agree to in writing (together with the consulting services identified on Schedule 1, the "Services") during the Term (as described below).

2. <u>Payment Terms</u>.  Client and Consultant agree that Consultant is entitled to receive and Client shall pay the fees and expenses set forth on <u>Schedule 2</u>, which is incorporated at this point, and which may be modified from time to time as mutually agreed to in writing. Payment in full of fees and expenses shall be made to Consultant within thirty (30) days after an invoice is rendered. For ongoing fees and expenses, Client will be billed on the 1st of every month, unless the Agreement begins mid-month.  In such cases, all expenses will be due in full as billed and all fees will be billed on a prorated basis in the first and last month of the Agreement. In the event that Client does not pay such fees and expenses per the invoices within the specified timeframe and fails to remedy within 14 days after delivery by Consultant of written notice of such failure to make timely payment, Consultant may suspend provision of Services until payment is made. All payments made by Client shall be without deduction or offset, unless otherwise as may be required under the terms of the applicable law. It is agreed that under the terms of the applicable law on the date of this Agreement, and subject to the provision of a valid Form W9 and an undertaking by the Consultant in writing that at the time of any respective payment the Consultant is not a resident for tax purposes in Israel, Client shall not withhold taxes from payments made to the Consultant under the terms of the Agreement.

3. <u>Term</u>.  The Term of this Agreement shall begin on the Effective Date and will continue in effect until November 30, 2020, and thereafter shall continue on a month to month basis, unless terminated by either Party by thirty (30) days prior written notice to the other Party at any time (including, for the avoidance of doubt, during the first year) (the "Term").

4. <u>Contacts</u>. Client shall designate to Consultant, from time to time in writing, the primary contact for reporting and billing purposes. Contacts are identified on Schedule 3. Consultant shall keep the primary contact for reporting purposes regularly informed as to the status of the performance of the Services in accordance with this consulting Agreement. Consultant shall designate to Client, in writing, the primary contact and designated team within Consultant for communications regarding the provision of the Services.

5. <u>Independent Contractor Status</u>. Consultant agrees that it is an independent contractor and not an agent or employee of Client and Consultant will not hold itself out as such an agent or employee. Consultant has no authority or responsibility to enter into any contracts on behalf of Client.

6. <u>Confidential Information/Trade Secrets</u>. This Agreement shall in no way derogate from Consultant's confidentiality obligations and undertakings made under the Non-Disclosure Agreement signed between the Parties dated November 15, 2019 (which, for the avoidance of doubt, shall apply to all applicable information received pursuant to or in connection with the engagement contemplated hereby).

7. <u>Non-Exclusive/Performance</u>. Client hereby acknowledges and agrees that Consultant will, during the Term and thereafter, be entitled to perform and render services or conduct operations of a nature similar or dissimilar to the services or operations performed for Client under this Agreement on behalf of itself or other entities; provided that if such services or operations are to be provided during the Term and the entities are direct competitors of Client or in the same business as Client, Consultant will notify Client in advance and in writing. Notwithstanding anything contained in this Section 7 to the contrary, Consultant represents and warrants that throughout the Term it will (i) perform the Services in good faith and in compliance with all applicable law and regulation, (ii) devote such dedicated team of personnel and resources in the performance of the Services as it deems reasonably necessary to perform such Services hereunder diligently and conscientiously, and (iii) ensure that such team will devote sufficient time and attention for the provision of the Services, including to be reasonably available to accept calls, provide regular consultation and participate in a meeting with Client at least once a month.

8. <u>Indemnification</u>. Each Party will indemnify and hold harmless the other party, its principals, employees, officers and agents, (collectively, the "Indemnified Parties") from and against any and all liabilities, losses, claims, demands, actions, judgments, costs and expenses including but not limited to attorney's fees, arising out of or resulting from any breach of this Agreement or negligence, gross negligence or willful misconduct by the indemnifying Party, its employees, officers, directors and agents. Each Party's indemnification obligations set forth herein are conditioned upon the Indemnified Parties: (i) giving prompt written notice of any claim, action, suit or proceeding for which the Indemnified Parties are seeking indemnity; (ii) granting control of the defense and settlement of the action to the indemnifying Party; and (iii) reasonably cooperating with the indemnifying Party with respect to the defense of the action. Notwithstanding the foregoing, the Indemnified Parties may, at their option and expense, participate in the

defense or settlement of any claim, action, suit or proceeding covered by this Section 8.

9. <u>Publicity</u>.  Neither Party will use the other Party's name, logo, trademarks or service marks in any advertising, publicity releases, or any other materials without that Party's prior written approval.

10. <u>Assignment</u>.  Neither Party will assign this Agreement or otherwise transfer, subcontract or delegate any of its rights and/or obligations hereunder without the prior written consent of the other and any attempt to do so will be void.

11. <u>Notices</u>.  Any notice or other communication required or which may be given hereunder will be in writing and either delivered personally or by courier service, and will be deemed given when so delivered personally, or if delivered by courier, upon delivery, as follows:

    If to Consultant:	Mercury Public Affairs, LLC
    	509 Guisando de Avila, Suite 100
    	Tampa, Florida 33613
    	United State of America
    	Attention:  Bibi Rahim
    	Telephone: 813-908-1380
    	Email: DASAccounting@mercuryllc.com

    If to Client:	Q Cyber Technologies Ltd.
    	Galgaley Haplada 22
    	Herzliya
    	Israel
    	Attention: General Counsel

    Either Party may change the persons and address to which notices or other communications are to be sent to it by giving written notice of any such change in the manner provided herein for giving notice.

12. <u>Governing Law</u>.  This Agreement will be governed by and construed in accordance with the Laws of the State of New York, United States of America applicable to agreements negotiated, executed and performed entirely within the State of New York, United States of America without regard to its conflicts of laws rules and, subject to Section 13, both Parties submit to the exclusive personal jurisdiction of the state and federal courts in New York County, NY, and waive any claim of forum non conveniens and objection to venue in said courts.

13. <u>Dispute Resolution</u>.  In the event of any dispute between the Parties to this Agreement concerning the terms of this Agreement or matters related thereto, the Parties will first reasonably attempt in good faith, as a condition precedent to further action, to settle and resolve said dispute amicably and by agreement within thirty (30) days of a receipt of notice of a dispute by one Party to the other Party. Each Party shall deal in good faith through representatives authorized and empowered to resolve the dispute. In the event that said

dispute is not settled and resolved amicably as set out above, said dispute shall be resolved exclusively and finally through arbitration as set out in this paragraph 13 and under the following terms and conditions:

(a) All disputes arising out of or in connection with this Agreement shall be finally settled and resolved under the Rules of Arbitration of the International Chamber of Commerce as are at present in force.

(b) Three arbitrators shall be appointed in accordance with said Rules.

(c) The arbitration shall take place in Washington, DC, unless otherwise agreed to in writing by both Parties to this Agreement.

(d) The language of the arbitration shall be English.

(e) Each Party shall produce documents originally drafted in English without translation. Any document drafted in a language other than English must be translated into English, properly certified as accurate, with said translation attached to the original document.

(f) All findings, comments, orders, and the arbitration decision and award itself, in addition to all documents and communications of every sort used in the arbitration shall be in English.

(g) The arbitrators may award compensatory damages under the terms of this Agreement, but in no event shall the arbitrators award special, consequential, or punitive damages.

(h) Each Party shall initially bear its own expenses, including all costs and attorney's fees, in connection with presenting its case for arbitration, and the Parties shall share equally in the costs and expenses of the arbitration process itself, including, but not limited to, the cost of the arbitrators. However, in the final award, the arbitral tribunal as described herein shall set and fix the costs of the arbitration and shall decide which Party or Parties shall bear and pay the costs and in what proportions.

(i) Each Party irrevocably waives any right it has or may have to a jury trial concerning any dispute concerning this Agreement.

14. <u>Foreign Agents Registration Act Compliance</u>.
    (a) The Parties mutually acknowledge and agree that this Agreement shall require Consultant to make certain filings in connection with and otherwise comply with the Foreign Agents Registration Act ("FARA"). Consultant shall have the duty and obligation to make any and all necessary filings and report pursuant to FARA in connection with this Agreement.

(b) Client is required to provide to Consultant, immediately upon request, full and accurate details (in a form approved by Consultant) concerning any activities of or information regarding Client in connection with Consultant's compliance with FARA pursuant to this Agreement.

(c) To the extent any filing of Consultant (where such filing includes or should include information related to Client) is audited or reviewed, Client shall cooperate and provide assistance to Consultant in responding to any such investigation in such the manner Consultant elects in its sole and exclusive discretion.

(d) In addition to any other indemnification obligations set forth in this Agreement, an indemnifying Party shall indemnify and hold harmless the Indemnified Parties from and against any and all penalties, fees, damages, liabilities, costs, and claims (including reasonable attorneys' fees) in connection with FARA which the Indemnified Parties may incur as a result of, related to, or arising out of, the indemnifying Party's failure to: (i) provide complete or accurate information to the Indemnified Parties; (ii) timely provide all requested information; (iii) abide by all applicable laws; or (iv) abide by the terms of this Section.

15. General.
   (a) No amendments or modifications shall be binding upon either Party unless made in writing and signed by both Parties.

   (b) This Agreement constitutes the entire agreement between the Parties and supersedes all previous agreements, promises, proposals, representations, understandings, and negotiations, whether written or oral, between the parties respecting the subject matter hereof.

   (c) In the event any one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal or unenforceable, the remaining provisions of this Agreement will be unimpaired, and the invalid, illegal or unenforceable provision will be replaced by a provision which, being valid, legal and enforceable, comes closest to the intention of the Parties underlying the invalid, illegal, or unenforceable provision.

   (d) This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same instrument.

   (e) The Parties hereto agree to use commercially reasonable efforts to perform any further acts and to execute and deliver any further documents which may be reasonably necessary or appropriate to carry out the purposes of this Agreement.

   (f) The section headings contained in this Agreement are inserted for convenience of reference only and will not affect the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the dates noted below.

Mercury Public Affairs, LLC

By: _____

Name: KIERAN MAHONEY

Title: Partner

Date: 12/27/19


Q Cyber Technologies Ltd.

By: p.p. _____

Name: Shmuel Sunray

Title: General Legal Counsel

Date: 12/19/19


*[SIGNATURE PAGE TO MERCURY-Q CYBER CONSULTING SERVICES AGREEMENT]*

Q Cyber Technologies Ltd INTL DC Contract 12152019 (Execution Copy)

## SCHEDULE 1

### Services

Consultant will provide strategic consulting and management services ("**Services**") specific to government relations and crisis management issues that the Client faces in connection with, and which may impact, pending litigation filed against the Client in the U.S. District Court for the Northern District of California and/or other US and non-US courts, and in connection with potential future litigation or regulatory actions involving similar issues.

Within 30 days after the Effective Date, the Consultant shall present to the Client a detailed work plan (SoW) for the provision of Services, which following its approval by the Client shall be added to this Schedule 1.

Consultant and Client will comply with the provisions of all federal, state and local laws, regulations, and requirements pertaining to the performance of Services under this contract.

Q Cyber Technologies Ltd INTL DC Contract 12152019 (Execution Copy)

## SCHEDULE 2

### Compensation and Expense

For Services identified in Schedule 1, Client will pay Consultant the following fees in US Dollars ($):

- ❖ $120,000.00 per month during the Term
- ❖ $5,000.00 one-time compliance fee

Consultant will not perform Services until (i) this Agreement is duly signed and executed by Client and delivered to Consultant, and (ii) an initial payment of $120,000.00 has been received by Consultant to be applied to the first month's services. Thereafter a payment of $120,000.00 in fees shall be due on January 1, 2020, with a like payment being due and payable monthly thereafter per the terms of paragraph 2 of the Agreement (and subject to paragraph 3 thereof). Payments shall be made by wire transfers to Consultant's bank per attached Schedule 4.

In addition, Client will pay and reimburse Consultant for all reasonable business expense actually incurred and properly documented in providing the Services, said expense to be billed monthly along with fees. Any expenses over $500 will be incurred only with the prior written consent of Client.

Subject to the aforesaid, Client will pay and reimburse Consultant for all filing fees, costs, and expenses paid or incurred by Consultant related to compliance requirements in any jurisdiction.

In addition, Client will pay all polling expenses and any media/advertising expenses, including both production and placement; provided that said expense will only be incurred with the prior approval of Client, and will be billed monthly along with fees and other expenses.

In the event of unanticipated expense, or extraordinary expense, or travel or other expense, Consultant may, within its sole judgment and discretion, require Client to pay said expense directly or in advance prior to Consultant undertaking or incurring said unanticipated, extraordinary, travel or other expense.

Q Cyber Technologies Ltd INTL DC Contract 12152019 (Execution Copy)

# SCHEDULE 3

<u>Contact Information</u>
Q Cyber Technologies Ltd.
Galgaley Haplada 22
Herzleliya
Israel

[REDACTED]

## SCHEDULE 4

Bank information for payments

Below please find our payment instructions for receipt of wires, ACHs or book transfers. The information is as follows:

[REDACTED]

Q Cyber Technologies Ltd INTL DC Contract 12152019 (Execution Copy)