1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone:    (213) 443-4355
5  Facsimile:    (213) 443-4310

6  Attorneys for Defendants NSO GROUP TECHNOLOGIES
   LIMITED and Q CYBER TECHNOLOGIES LIMITED

7

                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9
                      SAN FRANCISCO DIVISION
10

11 | WHATSAPP INC., a Delaware corporation, | Case No. 3:19-cv-07123-JSC |
   | and FACEBOOK, INC., a Delaware |   |
12 | corporation, | **APPLICATION OF DEFENDANTS NSO** |
   |   | **GROUP TECHNOLOGIES LIMITED** |
13 | Plaintiffs, | **AND Q CYBER TECHNOLOGIES** |
   |   | **LIMITED TO SET ASIDE DEFAULT** |
14 | v. | **AND TO ENLARGE TIME TO FILE** |
   |   | **RESPONSIVE PLEADING TO** |
15 | NSO GROUP TECHNOLOGIES LIMITED | **COMPLAINT** |
   | and Q CYBER TECHNOLOGIES LIMITED, |   |
16 |   | Date:    April 16, 2020 |
   | Defendants. | Time:    9:00 a.m. |
17 |   | Ctrm:    E |

18

19                                          Action Filed:  10/29/2019

20

21

22

23

24

25

26

27

28

DEFENDANTS' APPLICATION TO SET                                    Case No. 3:19-cv-07123-JSC
ASIDE DEFAULT AND TO ENLARGE
TIME TO FILE RESPONSIVE PLEADING

1    TO THE COURT AND PLAINTIFFS AND THEIR COUNSEL:

2    PLEASE TAKE NOTICE that on April 16, 2020 at 9:00 a.m., or as soon thereafter as the

3    matter may be heard, Defendants NSO Group Technologies Limited ("NSO") and Q Cyber

4    Technologies Limited ("Q Cyber") will bring on for hearing before the Honorable Jacqueline Scott

5    Corley, United States Magistrate Judge, in Courtroom E of the United States Courthouse located

6    at 450 Golden Gate Avenue, San Francisco, California, this application to vacate the fraudulently-

7    procured default entered by the Court on March 2, 2020, pursuant to Fed. R. Civ. P.  55(c) and to

8    expand the time for Defendants to file a responsive pleading to the Complaint pursuant to Local

9    Rule 6-3.  In bringing this application, Defendants do not concede that personal jurisdiction over

10   them exists in this Court, and they reserve all rights to contest personal jurisdiction.  Defendants

11   also do not concede that this Court has subject matter jurisdiction of this proceeding, and they

12   reserve all rights to contest subject matter jurisdiction.

13   This application is based on this Notice, the Memorandum of Points and Authorities and

14   Declarations of Shalev Hulio and Joseph N. Akrotirianakis submitted herewith, the pleadings,

15   papers and records on file in this case, and such oral argument as may be presented at any hearing.

16

17   DATED:  March 6, 2020                    KING & SPALDING LLP

18

19

20                                           By:  /s/Joseph N. Akrotirianakis
                                                  JOSEPH N. AKROTIRIANAKIS
21                                                AARON S. CRAIG
                                                  Attorneys for Defendants NSO GROUP
22                                                TECHNOLOGIES LIMITED and Q
                                                  CYBER TECHNOLOGIES LIMITED
23

24

25

26

27

28   DEFENDANTS' APPLICATION TO            1            Case No. 3:19-cv-07123-JSC
     SET ASIDE DEFAULT AND TO
     ENLARGE TIME TO FILE
     RESPONSIVE PLEADING

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

WhatsApp Inc. and Facebook, Inc. (collectively "Facebook" or "Plaintiffs") obtained a

3 default by lying to the Court about whether Defendants had been duly served.  Because the default

4 was procured by Facebook's fraud upon the Court, and because, according to the Government of

5 Israel, Defendants have not been properly served under the Hague Convention, the default should

6 be set aside.

7

On February 27, 2020, Plaintiffs filed an application for default that unequivocally stated

8 that Defendants have been "served under the Hague Convention. [Dkt. No. 20 at 2:19].  Plaintiffs

9 made this representation, despite having been informed directly by the Government of Israel, *two*

10 *days earlier*: "The Hague application for service in this case is incomplete."  On February 25,

11 2020, the Government of Israel relayed to Plaintiffs "a letter, in accordance with Article 4 of the

12 Convention."[1]  To this date, Defendants have never been properly served, and any judgment that

13 would be entered as a result of the Court's default would be void.  Accordingly, there is good cause

14 for the Court to set aside its default pursuant to Fed. R. Civ. P. 55(c), and the Court should do so.

15

While Defendants would be within their rights simply to bring a motion to quash service

16 or to move to dismiss for lack of service, Defendants would prefer a reasonable litigation schedule

17 to uncertain delay.  Defendants make the same request to this Court that it made to Plaintiffs on at

18 least three occasions:  for a reasonable period of time to file a responsive pleading, in light of the

19 complex and weighty issues presented by this case.  (In the circumstances, Defendants suggest at

20 least 120 days following the setting aside of the default and the service of the complaint and

21 summons.)  Defendants' Rule 12 motion will not raise soley *Twombley* and *Iqbal* issues.  Rather,

22 Defendants intend to focus on fact-intensive defenses, including derivative foreign sovereign

23 immunity and personal jurisdiction.  These defenses permit the consideration of extrinsic evidence

24 beyond the one-sided pleading filed by Facebook.  *EduMoz, LLC v. Rep. of Mozambique*, 968 F.

25 Supp. 2d 1041, 1060-61 (C.D. Cal. 2013) (sovereign immunity); *Stewart v. Screen Gems–EMI*

26

----

[1] Article 4 of the Hague Convention reads: "If the Central Authority considers that the request does

27 not comply with the provisions of the present Convention it shall promptly inform the applicant
and specify its objections to the request."

28

1   *Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015) (personal jurisdiction).  Obtaining evidence

2   to support Defendants' derivative foreign sovereign immunity argument will be delicate and will

3   require substantial effort.  All of Defendants' customers are sovereign nations and their law

4   enforcement and intelligence agencies.  These sovereigns use Defendants' products to fight

5   terrorism, child exploitation, and other horrific crimes involving ongoing sensitive law

6   enforcement and national security operations.  Given the security concerns and varying national

7   security legal frameworks, Defendants ask for an extended briefing schedule to have a fair

8   opportunity to ascertain what information—if any—may be disclosed to this Court by these

9   sovereign nations.  In light of the gravity of the issues in this case, Defendants' request is

10  reasonable.

11          The Court's intervention is unfortunately required for this scheduling matter, because

12  Plaintiffs have stubbornly refused to discuss a briefing schedule with Defendants.  Rather,

13  notwithstanding Plaintiffs' failure to properly effect service (and in apparent recognition of same),

14  Plaintiffs' counsel refused to discuss the orderly proceeding of this action until after Defendants

15  appeared in the case, and instead used the judicial process to conceal their procedural errors and

16  create a false narrative in the global news media.

17  **I.       THE COURT SHOULD SET ASIDE THE DEFAULT FOR GOOD CAUSE**

18          There is a "strong policy" favoring decisions on the merits instead of defaults.  *Eitel v.*

19  *McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The "good cause" standard for setting aside a

20  default under Rule 55(c) is more lenient than for setting aside a default judgment, and in the former

21  case, the court's discretion is "especially broad."  *Brady v. United States*, 211 F.3d 499, 504 (9th

22  Cir. 2000); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998).

23           "A motion for relief from default may be granted where defendant (even if he or she had

24  actual notice) demonstrates defects in the service of process."  Judge Virginia A. Phillips et al.,

25  *Federal Civil Procedure Before Trial* ¶ 6:181 (2019) (*citing Durukan America, LLC v. Rain*

26  *Trading, Inc.*, 787 F.3d 1161, 1163 (7th Cir. 2015)).

27          In addition, defaults and default judgments are appropriately set aside when there is a

28  | DEFENDANTS' APPLICATION TO | 2 | Case No. 3:19-cv-07123-JSC |
    SET ASIDE DEFAULT AND TO
    ENLARGE TIME TO FILE
    RESPONSIVE PLEADING

1    "fraud on the court."  Fed. R. Civ. P. 60(d)(3); *Eastern Financing Corp. v. JSC Alchevsk Iron and*

2    *Steel Works*, 258 F.R.D. 76, 88 (S.D.N.Y. 2008) (vacating default judgment where motion for

3    default judgment containing "misleading representations" constituted fraud on the court).

4         Defaults and default judgments are void if the court lacks personal jurisdiction over the

5    defendant.  Judge Virginia A. Phillips et al., *Federal Civil Procedure Before Trial* ¶ 6:182 (2019)

6    (*citing Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 924 (11th Cir. 2007)).  The same is true for

7    subject matter jurisdiction.  *Id.* ¶ 6:183.

8         **A.       Good Cause Exists to Set Aside the Default Because Service Is Defective**

9         Each Defendant is an Israeli corporation with a principal place of business in Israel.

10   (Declaration of Shalev Hulio ("Hulio Decl.") ¶ 2.)  The United States and Israel are both parties to

11   the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague

12   Convention").  *SEC v. Cluff*, 2018 WL 896027 (S.D.N.Y. 2018).   Service on Defendants may be

13   accomplished by the means authorized by the Hague Convention.  Fed. R. Civ. P. 4(f)(1).

14        Before service is considered complete under the Hague Convention, the Central Authority

15   in the country where the defendant is located must issue an "Article 6" certificate of service to the

16   applicant.  In *OGM, Inc. v. Televisa, S.A. de C.V.,* 2009 WL 1025971, at *3 (C.D. Cal. Apr. 15,

17   2009), the plaintiffs purported to serve defendants via several means, including the Hague

18   Convention.  The court granted the defendant's motion to dismiss under Rule 12(b)(5), holding:

19   "Although Plaintiffs have submitted a Request for Service to Mexico's Central Authority, such

20   service is not complete as the Central Authority has yet to provide Plaintiffs with a certificate of

21   service under Article 6 of the Hague Convention, and the requirements of Article 15 have not been

22   satisfied."  In a footnote, the *OGM* court noted that Article 15 provides the circumstances where a

23   Court can hold that service is complete under the Hague Convention in the absence of a certificate,

24   including a period of not less than six months elapsing since the date of the transmission of the

25   document, which had not occurred.  The issuance of the certificate of service is a substantive

26   component of the service itself, and without it service is not complete.  Accordingly, courts

27   calculate the date by which a response to the complaint is due as 21 days from the date of issuance

28   DEFENDANTS' APPLICATION TO                    3                    Case No. 3:19-cv-07123-JSC
     SET ASIDE DEFAULT AND TO
     ENLARGE TIME TO FILE
     RESPONSIVE PLEADING

1   of the certificate of service, *not* 21 days from the date the summons and complaint were delivered

2   to the defendant.  *See, e.g., Monster Film Ltd. v. Galloping Illusions Pty Ltd.*, 2016 WL 11520811

3   (C.D. Cal. 2016).[2]  The reason for this rule is plain:  under Article 13 of the Hague Convention,

4   countries may refuse to issue a certificate of service "if it deems that compliance would infringe

5   its sovereignty or security."  Hague Convention, Art. 13.  Allowing courts to enter defaults in the

6   absence of an Article 6 certificate would make Article 13 (and other provisions of the Hague

7   Convention) meaningless.

8        Here, the Government of Israel has not issued an Article 6 certificate; to the contrary, it has

9   affirmatively told Defendants' counsel that "The Hague application for service in this case is

10  incomplete."  (Declaration of Joseph N. Akrotirianakis ("Akro. Decl.") Exh. 1.)

11       What's more, the Government of Israel informed Plaintiffs' Israeli counsel that service was

12  defective and incomplete on February 25, 2020—two days before Plaintiffs applied for default,

13  and requested "that the application be completed and resubmitted," which Plaintiffs have not done.

14  (Akro. Decl. Exh. 1.)

15       Service has not been completed under the Hague Convention.  And while Plaintiffs have

16  claimed to have also "delivered the Complaint and other materials related to this case (the 'Service

17  Materials')" to Defendants and their officers in a number of ways, Plaintiff does not claim that

18  those Service Materials include a summons.  [Dkt. 20 at 3 fn. 2 (describing the so-called "Service

19  Materials" as a host of items <u>not</u> including the summons)].  "A summons must be served with a

20  copy of the complaint."  Fed. R. Civ. P. 4(c)(1).  Thus all those other deliveries are completely

21  
       _____

22  [2] In their application for default, Plaintiffs cited to a single case, *SEC v. Hilsenrath*, 2015 WL
    8156506 (N.D. Cal. 2005), in support of their assertion that "a defendant must respond within 21

23  days from the date of service of the complaint and summons, not from the date on which the
    Central Authority issues the formal Hague certificate."  But in that case, the court did not enter

24  default until 22 days had elapsed *after issuance of the formal Hague certificate*, making any
    statements by the court about when the response was due pure dicta.  Plaintiffs have not cited to

25  any case where a default was properly entered in the absence of an Article 6 certificate of service—
    not to the Court, and not to Defendants when Defendants attempted to meet and confer with

26  Plaintiffs about the two sides' differing interpretations of when service is deemed complete under

27  the Hague Convention.  (Akro. Decl. Exh. 5 and ¶ 12.)

28  DEFENDANTS' APPLICATION TO             4              Case No. 3:19-cv-07123-JSC
    SET ASIDE DEFAULT AND TO
    ENLARGE TIME TO FILE
    RESPONSIVE PLEADING

1   irrelevant to the issue of whether Defendants have been properly served.

2       Because service under the Hague Convention is incomplete, and because Defendants have

3   not been served in any other way, the Court should not have entered default and the law requires

4   that the default be vacated.

5       **B.    Good Cause Exists to Set Aside the Default because it was Procured by a**
            **Fraud on the Court**

6       Plaintiffs' Israeli counsel was informed on February 25, 2020, that service under the Hague

7   Convention was incomplete.  Notwithstanding that information, Plaintiffs lied to this Court on

8   February 27, 2020, when they told this Court that Defendants had been "served under the Hague

9   Convention."  [Dkt. No. 20 at 2:19].

10      As soon as Defendants' and their counsel learned about this, they wrote to Plaintiffs'

11  counsel of record in this case (and the signatory of the application for default), Travis LeBlanc,

12  Esq. of Cooley LLP, notifying him of his ethical obligation not to knowingly make a false

13  statement of fact or law to a tribunal and to correct a false statement of material fact or law

14  previously made to the tribunal by the lawyer," Cal. Rules of Prof. Conduct 3.3(a)(1).  (Akro. Decl.

15  Exh. 2.)  The following day, Mr. LeBlanc sent Defendants' counsel an email that said, in its

16  entirety, "We have received your correspondence.  We are reviewing your assertions and will

17  address them if appropriate."  (Akro. Decl. Exh. 3.)  But Plaintiffs have taken no steps to inform

18  the Court of their mendacity, thus necessitating this application to bring the truth to light.

19      The Court should set aside the Default because it was procured by a fraud on the Court.

20  As default judgments can be set aside for this reason, Fed. R. Civ. P. 60(d)(3), so too can defaults.

21      **C.    The Court should set aside the Default because it Lacks Personal Jurisdiction**
            **over Defendants and Subject Matter Jurisdiction over this Proceeding**

22

23       Defaults and default judgments are void if the court lacks personal jurisdiction over the

24  defendant.  Judge Virginia A. Phillips et al., *Federal Civil Procedure Before Trial* ¶ 6:182 (2019)

25  (*citing Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 924 (11th Cir. 2007)).  Likewise, "if the court

26  lacks subject matter jurisdiction, any default entered against defendant is a nullity."  *Id.* ¶ 6:183

27  (citing *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1337-38

28  DEFENDANTS' APPLICATION TO                          5                    Case No. 3:19-cv-07123-JSC
    SET ASIDE DEFAULT AND TO
    ENLARGE TIME TO FILE
    RESPONSIVE PLEADING

(11th Cir. 2015)).

Defendants do not consent to this Court's personal jurisdiction and expressly reserve their rights to challenge the Court's personal jurisdiction if and when required to do so.  Likewise, Defendants' products are exclusively used by foreign sovereign nations and their intelligence and law enforcement agencies for the purpose of combatting terrorism, child exploitation, and other serious crimes.  (Hulio Decl. ¶ 4.)  Thus, Defendants are entitled to derivative foreign sovereign immunity.   Foreign sovereign immunity defenses fall within the ambit of subject matter jurisdiction. *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 706 (9th Cir. 1992); 28 U.S.C. § 1604.  Defendants expressly reserve and do not waive their right to assert their personal jurisdiction and subject matter jurisdiction defenses, and any other defenses or arguments challenging Plaintiffs' allegations.

## II.  THE COURT SHOULD EXPAND THE TIME FOR DEFENDANTS TO FILE A RESPONSIVE PLEADING

Pursuant to Local Rule 6-3, Defendants request that the Court enlarge the time for them to file a responsive pleading.  While Defendants would be within their rights to ask the Court to quash service, Defendants prefer a reasonable litigation schedule to uncertainty and delay.  Therefore, Defendants' respectfully request a 120-day period after setting aside of the default and service of the complaint and summons, to be able to fully brief and obtain supporting evidence for the important and complex issues that Defendants expect to present in a responsive pleading.

This case involves critical issues about national security and the right of sovereign nations to protect their citizens from terrorists and other criminals by using lawful government-sanctioned means to prevent attacks.  It also involves important issues of sovereignty, comity, official acts of foreign states, and derivative foreign sovereign immunity.  All of Defendants' customers are foreign sovereign states and their intelligence and law enforcement agencies.  (Hulio Decl. ¶ 4.) These sovereign states use Defendants' products in furtherance of their own national security interests and to conduct law enforcement activities, such as combatting terrorism and investigating and prosecuting child exploitation and other serious crimes.  (Hulio Decl. ¶ 4.)  NSO invents cyber

DEFENDANTS' APPLICATION TO SET ASIDE DEFAULT AND TO ENLARGE TIME TO FILE RESPONSIVE PLEADING

6

Case No. 3:19-cv-07123-JSC

solutions that NSO itself *does not use*; the only users of these products are NSO's customers—foreign sovereign states.  (Hulio Decl. ¶ 4.)  NSO's only operational activities are to assist their customers with installation (at the customer's facility) and to provide basic technical support—activities in which NSO completely follows the directions and specifications of these sovereign states. (Hulio Decl. ¶ 4.)  These facts give rise to derivative foreign sovereign immunity—and this Court's lack of subject matter jurisdiction.

Given the security concerns and varying national security legal frameworks, Defendants ask for an extended briefing schedule to have a fair opportunity to ascertain what information—if any—may be disclosed by Defendants' sovereign-nation customers to this Court.  Defendants respectfully request a period of 120 days following the setting aside of the default and service of the complaint and summons to permit them a fair opportunity to obtain evidence to support their responsive pleading.  If the time for Defendants to file a responsive pleading is not so enlarged, Defendants will be substantially harmed in that it will be more difficult, if not impossible, to obtain supporting evidence for their subject matter jurisdiction defense based on derivative foreign sovereign immunity.  (Akro. Decl. ¶ 13.)

Defendants' counsel has asked Plaintiff's counsel on at least three occasions to agree upon a briefing schedule for Defendants' Rule 12 motion.  (Akro. Decl. ¶¶ 10-11.)  Each time, Plaintiffs' counsel took the position that it would not discuss a briefing schedule until after Defendants' counsel had appeared in the case, in apparent recognition that Plaintiffs had not accomplished proper service.  (Akro. Decl. ¶¶ 10-11 and Exh. 4.)

Defendants are not aware of any previous time modifications in the case.  (Akro. Decl. ¶ 14.)  Defendants believe that the requested time modification would not have any effect on the schedule for this case, as the parties have not conducted any pretrial conference, and the Court has not entered a scheduling order.  (Akro. Decl. ¶ 14.)

## III.    CONCLUSION

For good cause shown, Defendants ask the Court to grant this application setting aside the default and enlarging Defendants' time to file a responsive pleading.

1   DATED:  March 6, 2020                KING & SPALDING LLP

2

3

4                                        By:  /s/Joseph N. Akrotirianakis
                                              JOSEPH N. AKROTIRIANAKIS
5                                             AARON S. CRAIG
                                              Attorneys for Defendants NSO GROUP
6                                             TECHNOLOGIES LIMITED and Q
                                              CYBER TECHNOLOGIES LIMITED
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   DEFENDANTS' APPLICATION TO              8                    Case No. 3:19-cv-07123-JSC
     SET ASIDE DEFAULT AND TO
     ENLARGE TIME TO FILE
     RESPONSIVE PLEADING