JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
*jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
*acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 3:19-cv-07123-JSC<br><br>**DECLARATION OF JOSEPH N. AKROTIRIANAKIS IN SUPPORT OF DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S APPLICATION TO SET ASIDE DEFAULT AND TO ENLARGE TIME TO FILE RESPONSIVE PLEADING TO COMPLAINT**<br><br>Date:   April 16, 2020<br>Time:   9:00 a.m.<br>Ctrm:   E<br><br>Action Filed:   10/29/2019 |

I, Joseph N. Akrotirianakis, declare as follows:

1. I am a member of the California State Bar and the bar of this court and a partner in the law firm of King & Spalding LLP, counsel to NSO Group Technologies Limited and Q Cyber Technologies Limited ("Defendants"), defendants in this action. I have personal knowledge of the facts set forth herein and, except as otherwise stated, could testify competently to each fact averred herein.

2. The State of Israel is a party to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, commonly referenced as the "Hague Convention."

3. Article 2 of the Hague Convention requires "Each Contracting State [to] designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6." The State of Israel has designated its Administration of Courts as its Central Authority.

4. Article 6 of the Hague Convention provides that the Central Authority of a Contracting State "shall complete a certificate in the form of the model annexed to the present Convention." Article 4 of the Hague Convention allows a Contracting State's Central Authority, if it considers a request not to "comply with the provisions of the present Convention" to "the applicant and specify its objections to the request."

5. As I understand, the Government of Israel has never issued plaintiffs WhatsApp Inc. and Facebook, Inc. ("Plaintiffs") a certificate of service under Article 6 of the Hague Convention for the summons and complaint in this case. Notwithstanding this fact, on February 27, 2020, Plaintiffs applied to this Court for default, stating that Defendants have been "served under the Hague Convention" [Dkt. No. 20 at 2:19].[1]

---

[1] Plaintiffs' application for default further implied that Plaintiffs believed a certificate of service would be forthcoming shortly by saying that: "The Central Authority in Israel has not *yet* issued the formal certificate of service despite Plaintiffs' reasonable efforts to obtain the certificate . . . [a]nd the delay of the certificate in this matter is unusual." [Dkt No. 20 n.1 at 2:22-24] (emphasis added). No reasonable person reading that representation in Plaintiffs' application for default would have understood that the State of Israel's Central Authority had informed Plaintiffs, *two days earlier*, that Plaintiffs' Hague Convention application for service was, in fact, incomplete.

6. On February 27, 2020, I read Plaintiffs' application for default, and I re-read the document on February 28, 2020. On Friday, February 28, 2020, I prepared and sent an email to Israel's Administration of Courts. In my email, I asked that department for the status of Hague Convention service in this matter. A representative of Israel's Administration of Courts responded to my inquiry on Tuesday, March 3, 2020, informing me that "The Hague application for service in this case is incomplete." Moreover, Israel's Administration of Courts informed me that, on February 25, 2020—*two days before Plaintiffs filed their application for default*—"the Office of Court Administration" sent a letter to Plaintiffs' counsel, "in accordance with Article 4 of the Convention, requesting that the application be completed and resubmitted so that [the Israel Administration of Courts] will be able to handle the service request in accordance with the regulations." According to the Israel Administration of Courts, it "ha[d] not received a response, to date," as of March 3, 2020. A copy of this correspondence is attached as **Exhibit 1.**

7. The same day I received this information from Israel's Administration of Courts, I wrote to Plaintiffs' counsel of record in this case (and the signatory of the application for default), Travis LeBlanc, Esq., of Cooley LLP. I referenced Mr. LeBlanc to his ethical obligation to not "knowingly make a false statement of fact or law to a tribunal and to correct a false statement of material fact or law previously made to the tribunal by the lawyer," *Cal. Rules of Prof. Conduct* § 3.3(a)(1), and to his professional obligation to "employ . . . those means only as are consistent with the truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law," *Cal. Bus. & Prof. Code* § 6068(d). In light of Plaintiffs' statement in the application for default that Defendants have been "served under the Hague Convention," I requested that Mr. LeBlanc "correct the factual record and inform the Court that the Government of Israel provided an Article 4 Notice on February 25, 2020, and accordingly, service under the Hague Convention has not yet been completed." I asked Mr. LeBlanc to "Please inform us how and when you plan to do so." A copy of my letter to Mr. LeBlanc is attached as **Exhibit 2**.

8. The following day, March 4, 2020, Mr. LeBlanc responded by email, indicating he had received my letter and stating that he would address it "if appropriate." A copy of Mr. LeBlanc's email is attached as **Exhibit 3**.

9. As of the time of this filing, Mr. LeBlanc and Plaintiffs have done nothing to correct the false statement they made to the Court that Defendants have been served under the Hague Convention.

10. Prior to counsel's misrepresentation to the Court, I had telephone conferences with Mr. LeBlanc or his colleagues on at least February 4, 2020, February 11, 2020, and February 17, 2020. On each of these calls, I asked Plaintiffs' counsel if their clients would be willing to discuss an extension of time for Defendants to respond to the Complaint. Each time, Plaintiffs' counsel informed me that they were unwilling to discuss this issue unless and until Defendants entered an appearance with the Court. Plaintiffs' counsel stated that this is because until I or another King & Spalding lawyer appeared in the case, they could not be certain I was actually authorized to represent Defendants or had authority to speak on their behalf. (This is despite having identified me as "defense counsel" in a February 6, 2020 declaration to the Court [Dkt. No. 18-1 ¶ 15].) I told Plaintiffs' counsel multiple times that as a member of the California bar and of the bar of this Court, I could not (and would not) lie about the identities of my clients or the authority I had to speak on their behalf—about which Plaintiff's counsel claimed to be concerned. Plaintiffs' counsel nevertheless refused to discuss scheduling matters unless I agreed to file a notice of appearance.

11. After our February 11, 2020 discussion, Plaintiffs' counsel Daniel Grooms, Esq., sent me an email memorializing our conversation, in which he stated: "Our view remains the same as in our prior correspondence: we are amenable to working with *counsel of record* to develop an appropriate briefing schedule, but we cannot pursue that discussion until you or other counsel enter your appearance with the Court." (Emphasis added.) A copy of Mr. Grooms' February 12, 2020 email is attached as **Exhibit 4**.

12. I have been informed that Plaintiffs' counsel attended a case management conference on February 13, 2020, and that, during the hearing, Plaintiffs' counsel represented to the Court that service was complete under the Hague Convention and that Defendants were in default. Following that conference, I sought to meet and confer with Plaintiffs' counsel about their understanding of when service is complete under the Hague Convention. We discussed this issue

on February 17, 2020, when I referenced Defendants' counsel to several cases in support of Defendants' understanding that the Israel Administration of Courts' issuance of an Article 6 certificate of service under the Hague Convention is a substantive component of service, without which service is not complete; that the time to respond to the Complaint runs from the issuance of the Article 6 certificate of service; and that default is improper in the absence of any Article 6 certificate of service.  During the call and in several writings sent thereafter, I asked Plaintiffs' counsel to provide me any authority of which they were aware that was contrary to the authorities I provided them.  Plaintiffs' counsel provided no legal authority for their contrary position.  I then sent follow-up emails to Plaintiffs' counsel on February 18 and February 20, 2020, setting forth our position in writing and citing cases that supported it.  Plaintiffs' counsel responded on February 20, without citing any legal authority:

> We do not share your view of the referenced cases. The 21-day period for a defendant to respond begins on the date when the summons and complaint are served - here, December 17, 2019. To the extent you disagree, we again advise you to enter your appearance in this matter, at which time these and other issues can be addressed before the Court.

A copy of this correspondence is attached as **Exhibit 5**.

13. An extension of time is needed to provide Defendants with a fair opportunity to ascertain what information, if any, may be disclosed by Defendants' sovereign-nation customers to this Court.  Given the security concerns and varying national security legal frameworks, I request, on behalf of Defendants, a period of 120 days from the Court's order vacating the default to file a responsive pleading.  If the time for Defendants to file a responsive pleading is not so enlarged, Defendants will be substantially harmed in that it will be difficult or impossible to obtain supporting evidence for their subject matter jurisdiction defense of derivative foreign sovereign immunity.

14. I have reviewed every publicly-filed document in this case.  With the exception of the Court's continuance of the Initial Case Management Conference from January 30, 2020, to February 13, 2020 [Dkt No. 17], and setting of a Further Case Management Conference for March 26, 2020 at 1:30 p.m. [Dkt No. 19], I am aware of any other time modifications in the case.  I do

not believe the time modification I have requested would have any effect on the schedule for the case, because the Court has not issued any scheduling order or other case management order.

I declare under the penalty of perjury and the laws of the United States that the foregoing is true and correct this 6th day of March 2020, at Los Angeles, California.

*/s/Joseph N. Akrotirianakis*
Joseph N. Akrotirianakis
