COOLEY LLP
TRAVIS LEBLANC (251097) (tleblanc@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
JOSEPH D. MORNIN (307766) (jmornin@cooley.com)
101 California Street, 5th floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

DANIEL J. GROOMS (D.C. Bar No. 219124) (admitted *pro hac vice*)
(dgrooms@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,

Plaintiffs,

v.

NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,

Defendants.

Case No. 3:19-cv-07123-JSC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' APPLICATION TO SET ASIDE DEFAULT AND TO ENLARGE TIME TO FILE RESPONSIVE PLEADING TO COMPLAINT AND CROSS-MOTION TO AUTHORIZE ALTERNATIVE SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(F)(3)**

Date: April 16, 2020
Time: 1:30 p.m.
Courtroom: E, 15th Floor
Judge: Hon. Jacqueline S. Corley

**TABLE OF CONTENTS**


**Page**

I. Introduction ........ 2

II. Argument ........ 3

A. Plaintiffs did not mislead the Court. ........ 3

B. This litigation should proceed without further delay. ........ 5

1. Service by Alternative Means is Appropriate ........ 6

a. Plaintiffs have made substantial efforts to serve Defendants and Defendants have actual knowledge of the lawsuit ........ 6

(i) Defendants were notified via email, physical mail, and personal service. ........ 6

(ii) Plaintiffs have sought to serve Defendants via the Hague Convention. ........ 8

(iii) Defendants have publicly acknowledged this litigation and filed notices of appearance. ........ 9

b. Legal Standard ........ 10

c. Argument ........ 11

(i) The Court is not required to wait for the formal certificate of service under the Hague Convention before authorizing alternative service. ........ 11

(ii) Service by email is appropriate. ........ 12

2. The Court Should Deny Defendants Motion for Additional Delay ........ 13

III. Conclusion ........ 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*,
No. 11-cv-5149, 2012 WL 3580670 (N.D. Cal. Aug. 17, 2012) ....................13

*Jenkins v. Pooke*,
No. 07-cv-3112, 2009 WL 412987 (N.D. Cal. Feb. 17, 2009) ....................13

*In re LDK Solar Secs. Litig.*,
No. 07-cv-5182, 2008 WL 2415186 (N.D. Cal. June 12, 2008) ....................11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ....................11

*Pena v. Seguros La Comercial, S.A.*,
770 F.2d 811 (9th Cir. 1985) ....................5

*Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
No. 11-cv-2460, 2011 WL 2607158 (N.D. Cal. July 1, 2011) ....................12

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ....................10, 11, 12, 13

*RPost Holdings, Inc. v. Kagan*,
No. 11-cv-0238, 2012 WL 194388 (E.D. Tex. Jan. 23, 2012) ....................13

*Updateme Inc. v. Axel Springer SE*,
No. 17-cv-5054, 2018 WL 306682 (N.D. Cal. Jan. 5, 2018) ....................11

*Williams-Sonoma Inc. v. Friendfinder Inc.*,
No. 06-cv-6572, 2007 WL 1140639 (N.D. Cal. Apr. 17, 2007) ....................13

**Statutes**

Foreign Agents Registration Act ....................9

**Other Authorities**

Federal Rule of Civil Procedure 4(d)(1)(F) ....................8

Federal Rule of Civil Procedure 4(f) ....................10

Federal Rule of Civil Procedure 4(f)(1) ....................10, 11

Federal Rule of Civil Procedure 4(f)(2) ....................10

Federal Rule of Civil Procedure 4(f)(3) ........ *passim*

Federal Rule of Civil Procedure 4(h)(2) ........ 10

Federal Rule of Civil Procedure 12(a)(1)(A)(i) ........ 14

Federal Rule of Civil Procedure 12(b)(5) ........ 14

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on April 16, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom E of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs WhatsApp Inc. and Facebook, Inc. will and hereby do move for the Court's authorization to accomplish service on Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. pursuant to Federal Rule of Civil Procedure 4(f)(3). This motion is based on this Notice of Motion and the Memorandum of Points and Authorities; the declaration of Joseph D. Mornin and Aaron Lukken and attached exhibits; the pleadings, records, and files in this action; and such other written or oral arguments as may be presented at or before the time this Motion is taken under submission by the Court.

## I. INTRODUCTION

On March 6, 2020, Defendants applied to the Court to set aside the entry of default entered on March 2, 2020, and sought also to extend the time to file a response to the Complaint. ECF No. 24. Defendant's motion should be granted in part and denied in part. Plaintiffs request the Court allow this litigation to proceed expeditiously on the merits by setting aside the entry of default but deny Defendants' request to extend time to respond to the Complaint. In setting aside the entry of default, Plaintiffs also request that the Court concurrently authorize alternative service via email.

As set forth below, and in several prior filings (e.g., ECF Nos. 18, 20), Plaintiffs have been candid with the Court about our diligent efforts to serve Defendants in compliance with the applicable provisions of the Hague Convention and to otherwise ensure that they received the summons and Complaint in this case. Moreover, there is no dispute that Defendants have been fully aware of this litigation since it began. On the day the Complaint was filed, Defendants issued a press release in which they vowed to "vigorously fight" Plaintiffs' allegations. ECF No. 20-4. Since then, Defendants retained U.S. counsel (who has now made an appearance in this case), engaged a public relations firm for the purposes of this litigation, and issued a series of public statements contesting Plaintiffs' allegations—all while refusing to respond to the Complaint.. Moreover, Defendants' CEO, Shalev Hulio, filed a declaration in this litigation in which he disputes certain factual allegations contained in the Complaint. *See* ECF No. 24-3 ¶¶ 4–5.

Now, after many months of challenging the merits of Complaint in the court of public opinion, Defendants seek to delay this litigation by claiming that service was insufficient and that they should receive an additional 120 days to respond to the Complaint. *See generally* ECF No. 24. The Court should not permit Defendants' procedural gamesmanship. Defendants have had more than four months to prepare their response to the Complaint. An extension at this time would serve only to prejudice Plaintiffs by further delaying this case. Plaintiffs therefore respectfully request that the Court (1) set aside entry of default so that this case may proceed on the merits; (2) authorize alternative service via email under Federal Rule of Civil Procedure 4(f)(3); and (3) deny Defendants' request to extend the time to respond to the Complaint.

## II. ARGUMENT

### A. Plaintiffs did not mislead the Court.

Plaintiffs have diligently sought to serve Defendants via the Hague Convention and to ensure that they, their directors, and their officers all received the Service Materials. Plaintiffs engaged a vendor, Aaron Lukken of Viking Advocates, LLC, to accomplish Hague service on November 8, 2019. Declaration of Aaron Lukken ("Lukken Decl.") ¶ 4. Mr. Lukken transmitted Plaintiffs' Hague Service materials to the Central Authority in Israel on November 29, 2019, and the Central Authority received them on December 8, 2019. *Id.* ¶ 5 & Exs. 1 & 2. A short time later, the Central Authority appointed Eitan Newman under Article 5(b) of the Hague Convention to accomplish personal service on Defendants. ECF No. 20-1 ¶ 4. Mr. Newman served both Defendants by hand delivery at their shared office on December 17, 2019. *Id.* ¶ 5. Mr. Newman submitted the required certificate of delivery to the Central Authority on December 18, 2019. *Id.* ¶ 7. Plaintiffs have since been awaiting the issuance of the formal certificate of Hague service by the Central Authority in Israel. Declaration of Joseph D. Mornin ("Mornin Decl.") ¶ 8. Plaintiffs have made every reasonable effort to obtain this certificate. As described in his declaration, Mr. Lukken contacted the Central Authority on February 19 to confirm service and inquire as to the status of the issuance of the certificate. Lukken Decl. ¶ 10 & Ex. 2. Mr. Lukken did not receive a response from the Central Authority until after he contacted them again on March 3, 2020.

Defendants' assertions that Plaintiffs made misrepresentations to this Court are simply incorrect. Plaintiffs were unaware of the Central Authority's response when they filed their Application for Entry of Default. As described herein, Plaintiffs and undersigned counsel did not receive information from the Central Authority prior to filing their Application for Entry of Default on February 27.

In support of the argument that Plaintiffs' purposefully deceived the Court in order to obtain a default in this matter, Defendants rely on a February 25 letter from the Central Authority to an Israeli law firm that is engaged in separate Israeli litigation involving the NSO Group. Plaintiffs, Plaintiffs' service agent, and undersigned counsel were unaware of the February 25 letter from the Central Authority at the time Plaintiff filed the application for entry of default in this matter. In fact,

Plaintiffs, Plaintiffs' service agent, and undersigned counsel first learned of that letter from Defendants' counsel on March 3. *See* Mornin Decl. ¶ 2 & Ex. 1. At that time, undersigned counsel reviewed the correspondence between defense counsel and the Central Authority and contacted Fischer, Behar, Chen, Well, Orion & Co. ("FBC"), to whom the letter was addressed. *See id.* ¶ 3–4. Undersigned counsel then learned that on February 9, 2020, FBC contacted the Central Authority at the request of another U.S. law firm, which represents Plaintiffs in other matters, but not in connection with this litigation. *Id.* FBC also explained that on February 25, 2020, it received the aforementioned letter from the Central Authority and that it forwarded the letter to that law firm. *Id*. Due to an administrative oversight, that law firm did not realize that it had received the letter and did not forward the letter or otherwise communicate its contents to Plaintiffs, Plaintiffs' service agent, or Plaintiffs' counsel in this case. *Id.* Plaintiffs and their counsel in this case were therefore unaware of the February 25 letter at the time they filed the Application for Default and until they received defense counsel's communication on March 3. *Id.* ¶ 5.

Even though Plaintiffs and undersigned counsel were unaware of the February 25 letter prior to filing the application, we nevertheless regret the oversight and inconvenience it has caused the Court and have also emphasized to counsel in the separate Israeli litigation matter that it should promptly transmit correspondence related to this matter.

The February 25 letter purports to identify two deficiencies in Plaintiffs' application for Hague service: (1) Plaintiffs did not include "[t]he identity of the specific addressee," and (2) Plaintiffs did not include "[t]he particulars of the parties – including their full information, addresses, telephone numbers and each addresses [sic]." Lukken Decl. ¶ 12, Ex. 2. The first purported deficiency is incorrect—Plaintiffs did identify the specific addressees in the application. *Id.* ¶ 13 & Ex. 2. The second purported deficiency is likewise incorrect—Plaintiffs did provide the addressees' names and addresses. *Id.* ¶ 13 & Ex. 2. Nothing in the Hague Convention requires applicants to provide addressees' phone numbers or email addresses.

Plaintiffs' service agent has never encountered similar objections in the course of more than seven years of accomplishing Hague Service via the Central Authority in Israel, and he has continued to communicate with the Central Authority in order to resolve the issues identified in the

February 25 letter. Lukken Decl. ¶ 13. Since then, Plaintiffs have made every reasonable effort (taking into account time zone differences, language barriers, differing work weeks, and a holiday in Israel) to communicate with the Central Authority in order to understand the Authority's statements and resolve any technical objections it may have regarding Plaintiffs' application for Hague service. *Id.*; *see also* Mornin Decl. ¶ 9. Plaintiffs continue to work with the Central Authority to resolve any concerns around Defendants' supplemental contact information. Mornin Decl. ¶ 9.

Moreover, the Central Authority has previously accepted applications submitted by the same vendor for Hague service containing the same information that Plaintiffs included here. For example, in *In re Nexium (Esomeprazole Magnesium) Antitrust Litigation*, No. 1:12-md-02409-WGY (D. Mass. Sept. 3, 2014), plaintiffs obtained a certificate of Hague service from the Central Authority where plaintiffs listed the company that was served as the addressee and where plaintiffs listed the names of the plaintiffs and defendants in their case when asked for the "[p]articulars of the parties." *See* Mornin Decl. ¶ 7, Ex. 3. Notably, there, plaintiffs did not provide the phone number or email address for the defendant in their application for Hague service. *See id.*

Similarly, here, Plaintiffs identified NSO Group Technologies Limited and Q Cyber Technologies Limited as the respective addressees on their applications for Hague service, and Plaintiffs similarly listed the Plaintiffs and Defendants in this litigation when asked for the "[p]articulars of the parties." *See* Lukken Decl. ¶ 12 & Ex. 2. The Central Authority's request that Plaintiffs provide the additional information identified in its February 25 letter to Mr. Orion, including the Defendants' phone numbers and email addresses, is inconsistent with the controlling authority and their past practice.

Further, on March 6, Defendants' counsel entered an appearance in this litigation and the CEO of both Defendants, Mr. Hulio, filed a declaration in this case. ECF Nos. 23, 24-3, 26. It is notable that his declaration does not deny that Defendants were served on December 17, 2019, or that they received the Service Materials numerous other ways. Indeed, the very fact that Mr. Hulio filed a declaration disputing certain facts at issue herein demonstrates his awareness of the litigation and his actual knowledge of the allegations in the Complaint.

For all these reasons, as set forth below, the entry for default should be vacated and litigation

should proceed.

**B. This litigation should proceed without further delay.**

"Whenever it is reasonably possible, cases should be decided upon their merits." *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (citation omitted). Now that Defendants have appeared in this litigation, Plaintiffs have no objection to setting aside default so that the Court may adjudicate the merits of Plaintiffs' claims.

In order to move this case forward expeditiously, Plaintiffs first request that the Court permit Plaintiff's to effect service via email pursuant to Federal Rule of Civil Procedure 4(f)(3). As set forth below, this is appropriate due to the many efforts that Plaintiffs have made to serve Defendants to date and their actual knowledge of the suit.

Plaintiffs further request that the Court deny Defendants' request to expand the time to respond to the Complaint. Defendants have already had four months to muster their defense, the Court should decline their request for four more.

1. **Service by Alternative Means is Appropriate**

Given the substantial efforts that Plaintiffs have made to serve Defendants and Defendants clear awareness of this litigation, service by alternative means is appropriate.

**a. Plaintiffs have made substantial efforts to serve Defendants and Defendants have actual knowledge of the lawsuit**

Defendant Q Cyber is the parent company of Defendant NSO Group. Compl. ¶¶ 5–6. Both Defendants' offices are located at 22 Galgalei Haplada, Hertsliya, Israel 4672222. *Id*. Ex. 5.

As described below, Plaintiffs have made substantial efforts to contact Defendants by email, physical mail, hand delivery to request waiver of service, and to accomplish international service via the Hague Convention.

**(i) Defendants were notified via email, physical mail, and personal service.**

After filing the Complaint on October 29, 2019, Plaintiffs notified NSO Group and Q Cyber of this litigation and requested waiver of service by delivering the following materials (the "Service Materials") to each Defendant and their board members:

- A cover letter that requested contact information for Defendants' counsel; requested waiver of service of the summons within 60 days; and informed Defendants of their duty to preserve all documents that may be relevant to this litigation. ECF No. 20-3 ¶ 6 & Ex. 4.
- The Complaint, Complaint exhibits, and civil cover sheet filed in this case (ECF Nos. 1, 1-1, & 1-2). *Id.* ¶ 6.
- U.S. District Court Forms AO 398 ("Notice of a Lawsuit and Request to Waive Service of a Summons") and AO 399 ("Waiver of the Service of Summons"). *Id.* ¶ 6 & Ex.5.
- The standing order for all judges of the Northern District of California; the civil standing order for Magistrate Judge Jacqueline Scott Corley; the Northern District of California's general standing order for civil cases entitled "Contents of Joint Case Management Statement"; and the Court's order setting ADR deadlines and the initial case management conference (ECF No. 9). *Id.* ¶ 6.

Plaintiffs delivered the service materials to Defendants by the following methods:

- <u>By email</u>:
  - On November 4, 2019, Plaintiffs delivered the Service Materials to Shalev Hulio, NSO Group's CEO and board member, by email. *Id.* ¶ 8 & Ex. 6.
  - On November 4, 2019, Plaintiffs delivered the Service Materials to Eran Gorev, who is identified as Q Cyber's CEO in the company's Israeli corporate filings, by email. On November 12, Plaintiffs received an email response from Gorev, in which Gorev stated that he no longer serves in that role. *Id.* ¶ 9 & Ex. 7.
  - On November 8, 2019, Plaintiffs delivered the Service Materials to each NSO Group board member, as identified on NSO Group's website, by email. *Id.* ¶ 11 & Ex. 9.
  - On November 22, 2019, Plaintiffs attempted to deliver the Service Materials to Nachum Falek, CFO of both Q Cyber and NSO Group, by email. *Id.* ¶ 16 & Ex. 14.
- <u>By physical mail</u>:

- On November 4, 2019, Plaintiffs sent the Service Materials by DHL Express to Defendants' shared office in Israel. The Service Materials were delivered to the shared office and signed for at reception on November 10. *Id.* ¶ 10 & Ex. 8.
- On November 9, 2019, Plaintiffs sent the Service Materials by FedEx to the office of each NSO Group board member. The Service Materials were delivered and signed for between November 11 and 13. *Id.* ¶ 12 & Ex. 10.
- On November 21, 2019, Plaintiffs sent the Service Materials addressed to Nachum Falek, Q Cyber's and NSO Group's CFO, by DHL Express to Defendants' shared office in Israel. The Service Materials were delivered to the shared office and signed for at reception on November 24. *Id.* ¶ 15 & Ex. 13.

- In person:
  - On November 13, 2019, Plaintiffs hand-delivered the Service Materials to both Defendants at their shared office in Israel. Shir Kovner, who serves as the "legal advisor" for both Defendants, personally signed the receipt for the hand-delivered Service Materials. *Id.* ¶ 13 & Ex. 11.
  - On November 15, 2019, Plaintiffs hand-delivered the Service Materials to Omri Lavie, NSO Group's co-founder and a current board member, by delivering the Service Materials to his wife at their residence in New Jersey. *Id.* ¶ 14 & Ex. 12.
  - On November 24, 25, and 27, 2019, Plaintiffs attempted to hand-deliver the Service Materials to Nachum Falek, Q Cyber and NSO Group's CFO, at Defendants' shared office and Falek's home in Israel. When those attempts did not succeed, Plaintiffs sent materials by registered mail in Israel to Defendants' office and left an envelope containing the Service Materials in Falek's mailbox at his residence. *Id.* ¶ 17 & Ex. 15.

The deadline for Defendants to respond to Plaintiffs' requests for waiver of service was January 3, 2020.[1] Defendants have not provided a response as of this filing.

[1] Rule 4(d)(1)(F) provides that a request for waiver of service must "give the defendant a reasonable

**(ii) Plaintiffs have sought to serve Defendants via the Hague Convention.**

As explained in Plaintiffs' Opposition to Defendants' Application to Set Aside Default and to Enlarge Time to File Responsive Pleading to Complaint (filed concurrently), Plaintiffs have diligently sought to serve Defendants in accordance with the applicable provisions of the Hague Convention. Despite these efforts, however, the Central Authority in Israel has not yet issued the formal certificate of service.

**(iii) Defendants have publicly acknowledged this litigation and filed notices of appearance.**

It is undeniable that Defendants have actual notice of this litigation. On October 29, 2019—the same day Plaintiffs filed the Complaint in this case—NSO Group issued a press release discussing the litigation, in which it stated: "In the strongest possible terms, we dispute today's allegations and will vigorously fight them." ECF No. 20-4. Plaintiffs have also successfully contacted both NSO Group and Q Cyber through multiple channels, as described above. *See, e.g.*, ECF No. 20-3 ¶¶ 13 (showing that the legal advisor for NSO Group—who also serves as the legal advisor for Q Cyber—personally signed for a delivery of the Service Materials listed above), ¶ 10.

Moreover, recent public filings under the Foreign Agents Registration Act indicate that Q Cyber executed an agreement with a U.S. public strategy firm, Mercury Public Affairs, on December 19, 2019 (approximately seven weeks after Plaintiffs filed this lawsuit and exactly two days after Hague service was effected), for consulting services related to this litigation:

---

time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver." Here, Plaintiffs sent their initial request for waiver of service to both Defendants by physical mail on November 4, 2019, with instructions to return the waiver within 60 days. ECF No. 20-3 ¶ 10 & Ex. 8. Plaintiffs delivered the same materials by email to both Defendants on the same day. *Id.* ¶ 8. 60 days after November 4, 2019, is January 3, 2020.

> Consultant [Mercury Public Affairs] will provide strategic consulting and management services ("Services") specific to government relations and crisis management issues that the Client [Q Cyber] faces in connection with, and which may impact, ***pending litigation filed against the Client in the U.S. District Court for the Northern District of California*** and/or other US and non-US courts, and in connection with potential future litigation or regulatory actions involving similar issues.

ECF No. 20-6 at 10 (emphasis added).[2] The agreement was signed by Q Cyber's General Legal Counsel, Shmuel Sunray, and envisions payments of $120,000 per month until November 30, 2020. *Id.* at 4, 11.

Defendants' counsel of record, Joseph Akrotirianakis of King & Spalding LLP, has also represented to the government of Israel that his firm represents Defendants in this litigation. In his email to the Central Authority, he stated: "We are writing with an urgent inquiry regarding the case of **WhatsApp Inc. and Facebook, Inc. v. NSO Group Technologies Limited and Q Cyber Technologies Limited, Case No. 3:19-cv-07123-JSC**, pending before the United States District Court for the Northern District of California. [¶] We are United States counsel for the defendants, NSO Group Technologies Limited and Q Cyber Technologies Limited." Mornin Decl. ¶ 2 & Ex. 1 (emphasis in original).

In addition, on March 6, 2020, counsel for Defendants appeared in this litigation and filed Defendants' Application to Set Aside Default and to Enlarge Time to File Responsive Pleading to Complaint. ECF No. 24. Moreover, Defendants' CEO submitted a declaration to this Court on the same day. ECF No. 24-3.

Thus, there is no dispute that Defendants have been fully aware of the Complaint since it was filed more than four months ago on October 29, 2019. Nonetheless, Defendants continue to maintain that service was deficient and that they should receive an additional 120 days to respond to the Complaint. Their actions serve no purpose but to delay this litigation. As explained below, the Court has clear authority to authorize alternative service by email so that this litigation may proceed without further delay.

[2] No other litigation has been filed in the Northern District against Q Cyber or NSO Group. Thus, it is indisputable that this agreement contemplates consulting services related to this case.

**b. Legal Standard**

Federal Rule of Civil Procedure 4(h)(2) "authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for individuals." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002 (citations omitted)). Rule 4(f) provides that a plaintiff may effect service outside any judicial district in the United States

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . ; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Each of these three methods "stands independently, on equal footing." *Rio*, 284 F.3d at 1014 n.2 (quoting Rule 4(f)). A plaintiff need not attempt service pursuant to Rule 4(f)(1) or 4(f)(2) before effecting service by "other means" pursuant to Rule 4(f)(3). *Id.* at 1014–16.

A U.S. court may order service pursuant to Rule 4(f)(3) by any method that is not prohibited by international agreement, including email, physical mail, publication, or delivery to the defendant's attorney. *Id.* at 1016. The method of service is within a court's "sound discretion," and depends on "the particularities and necessities of a given case." *Id.*

The method of service authorized by a court "must also comport with constitutional notions of due process." *Id.* Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. at 1016–17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

**c. Argument**

**(i) The Court is not required to wait for the formal certificate of service under the Hague Convention before authorizing alternative service.**

Plaintiffs served both Defendants with Hague service materials on December 17, 2019, and

are currently awaiting issuance of the formal certificate of service from the Central Authority in Israel. ECF No. 20-3 ¶¶ 21–23. As explained above, Defendants are now seeking to delay this process further by disputing the sufficiency of the materials Plaintiffs provided to the Central Authority. But there is no requirement that the Hague process must be complete before a court may authorize alternative service pursuant to Rule 4(f)(3).

Indeed, the Ninth Circuit has made clear that a plaintiff is not required to complete—or even attempt—Hague service before pursuing alternative service under Rule 4(f)(3), as alternative service is but "one means among several" for effecting service on foreign defendants. *See Rio*, 284 F.3d at 1015. As the court in *Rio* stated, "FRCP 4(f)(3) stands independently of FRCP 4(f)(1); it is not necessary for plaintiffs to first attempt service through 'internationally agreed means' before turning to 'any other means not prohibited by international agreement.'" *In re LDK Solar Secs. Litig.*, No. 07-cv-5182, 2008 WL 2415186, at *2 (N.D. Cal. June 12, 2008) (quoting *Rio*, 284 F.3d at 1014); *see also Updateme Inc. v. Axel Springer SE*, No. 17-cv-5054, 2018 WL 306682, at *3 (N.D. Cal. Jan. 5, 2018) ("'numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies.' . . . ") (quoting *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-cv-2460, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011)).

Service via the Hague Convention can be lengthy, complex, and uncertain. Although this Hague process is still ongoing, it serves little purpose to wait for that process to unfold when Defendants have publicly acknowledged the litigation, can readily be contacted through means other than the Hague Convention (as Plaintiffs have already done via email, physical mail, and hand delivery), and have retained counsel who have now appeared in this case. Indeed, Defendants' counsel have acknowledged that they have reviewed the Complaint and other filings in the case (ECF No. 24-1) and the CEO of both Defendants has filed a declaration in this very case (ECF No. 24-3).

Plaintiffs submit that the Court should exercise its discretion to authorize alternative service while the Hague process moves forward in parallel. *See Rio*, 284 F.3d at 1016 ("we commit to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)").

**(ii) Service by email is appropriate.**

To establish that a means of alternative service of process is appropriate, a plaintiff must show that it is (1) reasonably calculated to provide actual notice to the defendant and (2) not prohibited by international agreement. *Rio*, 284 F. 3d at 1014–17. Plaintiffs satisfy both requirements here.

First, email would provide actual notice. Although there is no reasonable dispute that NSO Group, Q Cyber, and their counsel are already fully aware of this litigation, they can all be contacted by email as well. *See, e.g.*, ECF No 20-4 ¶¶ 8–11 (showing that Plaintiffs successfully contacted Defendants via email); Mornin Decl. ¶ 2 (Plaintiffs' counsel have received correspondence from Defendants' counsel) & Ex. 1 (Defendants' counsel contacted the Central Authority in Israel multiple times via email).

The Ninth Circuit has held that service by email is appropriate where a defendant conducts business over the internet, uses email regularly to conduct its business, and encourages the public to contact it via email. *Rio*, 284 F.3d at 1017; *see also id.* at 1018 ("when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process"); *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-cv-5149, 2012 WL 3580670, at *2 (N.D. Cal. Aug. 17, 2012) (authorizing service by email at the contact address listed on the defendants' website after the plaintiffs demonstrated that emails had not been returned as undeliverable); *Jenkins v. Pooke*, No. 07-cv-3112, 2009 WL 412987, at *2 (N.D. Cal. Feb. 17, 2009) (authorizing service by email on a valid email address).

Further, Defendants here are *already aware* of this litigation, and cannot plausibly claim to lack actual notice or an opportunity to object. *See, e.g.*, ECF Nos. 20-4 (NSO Group issued a press release stating that it intends to "vigorously fight" this case), 20-6 (Q Cyber hired a strategy firm for consulting services related to this litigation); Mornin Decl. ¶ 2 & Ex. 1 (Defendants' counsel stated to the Central Authority in Israel that they represent Defendants in this litigation); ECF No. 24-3 (Shalev Hulio, the CEO of both NSO Group and Q Cyber, filed a declaration in this litigation).[3]

[3] In addition, Hulio and Omri Lavie, the co-founder of NSO Group, made posts on Twitter

Second, as this Court has previously held, service by email on defendants in Israel is not prohibited by international agreement. *See Williams-Sonoma Inc. v. Friendfinder Inc.*, No. 06-cv-6572, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (finding that service by email to defendants in Israel was not prohibited by international agreement and authorizing Williams-Sonoma to serve defendants in Israel by email pursuant to Rule 4(f)(3)). At least one court in another district has likewise held that no international agreement prohibits service by email or physical mail on Israeli defendants. *RPost Holdings, Inc. v. Kagan*, No. 11-cv-0238, 2012 WL 194388, at *2–3 (E.D. Tex. Jan. 23, 2012) (authorizing service by email on Israeli defendant's email address, and service by email and physical mail on defendant's counsel's email address and physical address in Israel).

For those reasons, Plaintiffs submit that the Court should exercise its discretion to authorize alternative service by email.

### 2. The Court Should Deny Defendants Motion for Additional Delay

The Court should decline Defendants' request to further delay this case. Defendants claim that if the Court does not grant an additional 120 days for them to respond to the Complaint, they "will be substantially harmed in that it will be more difficult, if not impossible, to obtain supporting evidence for their subject matter jurisdiction defense based on derivative foreign sovereign immunity." ECF No. 24 at 7. But they have already had more than four months to evaluate the Complaint and prepare their defenses. Defendants' counsel has been engaged in this case since at least February 3, 2020, when they first contacted Plaintiffs' counsel. ECF No. 20-3 ¶ 19. Defendants have had the ability to challenge the validity of service of process through a motion under Rule 12(b)(5)—but instead, they chose to delay this litigation by waiting for entry of default, and only then did they raise the same arguments they could have raised sooner in a motion to dismiss. Defendants appeared in this case only after the Clerk of the Court entered default against them—and in the meantime, rather than challenge service in a timely manner, they issued a series of public

---

discussing this litigation. *See, e.g.*, https://twitter.com/omrilavie/status/1212845189032747008 (on January 2, 2020, Lavie posted a link to a *Wall Street Journal* article featuring this litigation, accompanied by the following text: "Life is more complicated than it seems. NSO Group saves lives! Remember that. #nsogroup #nso #nsogroupsaveslives"; Hulio retweeted this posting).

statements about the merits of this case. *See, e.g.*, ECF No. 20-3 ¶ 3 (Defendants' issued a press release on the same day the Complaint was filed); *see also* Mornin Decl. ¶ 6 & Ex. 2 (Defendants issued a public statement contesting the validity of default in this case). Further, Defendants have offered no explanation for their delay in appearing in this case or their delay in objecting to the sufficiency of service of process.

Despite Defendants' inaction over the last four months, Defendants now seek an additional 120 days to respond to the Complaint, which would give them a total of more than ***eight months*** to prepare a response. By contrast, the Federal Rules give a defendant ***three weeks*** to respond under ordinary circumstances. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is . . . within 21 days after being served with the summons and complaint."). Nothing in Defendants' motion supports such deviation from the Rules.

## III. CONCLUSION

Plaintiffs respectfully request that the Court:

1. Set aside default;
2. Grant Plaintiffs' motion to authorize alternative service on Defendants via email; and
3. Deny Defendants' request to enlarge the time to respond to the Complaint.

Dated: March 9, 2020

Respectfully submitted,

COOLEY LLP

/s/ Travis LeBlanc

Travis LeBlanc
Daniel J. Grooms
Kyle C. Wong
Joseph D. Mornin

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.