COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
TRAVIS LEBLANC (251097) (tleblanc@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
JOSEPH D. MORNIN (307766) (jmornin@cooley.com)
101 California Street, 5th floor
San Francisco, CA   94111-5800
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

DANIEL J. GROOMS (D.C. Bar No. 219124) (admitted *pro hac vice*)
(dgrooms@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
Telephone:   (202) 842-7800
Facsimile:    (202) 842-7899

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation, | Case No. 4:19-cv-07123-PJH |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS** |
| Plaintiffs, | |
| | Date: |
| v. | Time: |
| | Courtroom: |
| NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, | Judge:      Hon. Phyllis J. Hamilton |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

**Page**

I.    Introduction .................................................................................................................. ii

II.   Background ................................................................................................................... 3

    A.   Plaintiffs requested waiver of service. ........................................................... 3

    B.   Plaintiffs have diligently sought to serve Defendants under the Hague
       Convention and have openly reported those efforts to the Court. .............. 3

    C.   Plaintiffs were unaware of the Central Authority's objections when they filed
       their application for entry of default. ............................................................. 4

    D.   The Hague certificates have now been received. ......................................... 8

III.  Legal Standard ............................................................................................................. 8

IV.   Argument ..................................................................................................................... 9

V.    Conclusion ................................................................................................................. 11

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ..........................................................................................8

*Manning v. Bunnel*,
   No. 2:12-cv-2440, 2015 WL 2358593 (E.D. Cal. May 15, 2015) ...........................................10

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   No. C 09-1967 CW, 2012 WL 5372477 (N.D. Cal. Oct. 30, 2012) ........................................9

*Omoregie v. Boardwalk Auto Ctr., Inc.*,
   No. C 07-3884 PJH, 2007 WL 3475868 (N.D. Cal. Nov. 15, 2007) (Hamilton, J.).................8

*Perfect 10, Inc. v. Yandex N.V.*,
   No. C 12-1521-WHA, 2013 WL 4028948 (N.D. Cal. Aug. 6, 2013)....................................10

*Sanho Corp. v. CIMO Techs., Inc.*,
   No. C 11-2473 PJH, 2012 WL 2952417 (N.D. Cal. July 19, 2012) (Hamilton, J.)..................1

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 3:10-cv-01064-SI, 2012 WL 12919129 (N.D. Cal. Nov. 30, 2012) ............................9, 10

*Valle v. Berryhill*,
   No. 16-cv-02358-JSC, 2019 WL 1517103 (N.D. Cal. Apr. 8, 2019)...............................1, 8, 9

**Statutes**

28 U.S.C. § 1927..................................................................................................................8

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **I.     INTRODUCTION**

2           Defendants' motion for sanctions should be denied because at all times during this matter,

3    Plaintiffs have been fully candid with the Court.  In all their filings, as well as in open court,

4    Plaintiffs' counsel accurately informed the Court of their efforts at serving Defendants and also

5    acknowledged that they had yet to obtain the certificate of service from the Central Authority.

6    Plaintiffs' accurately described their efforts to serve Defendants under the Hague Convention (or

7    otherwise), and the fact that the Israeli Central Authority had not issued a certificate of service

8    pursuant to the Hague Convention at the time Plaintiffs filed the Application for Default. Of course,

9    Defendants do not deny that they were in fact served with the summons and Complaint on December

10   17, 2019; nor do they deny receiving the Service Materials every other time Plaintiffs served them

11   on Defendants, their officers, and their directors.  In fact, Defendants admit in their recent filings that

12   that they were aware of these proceedings at the time the Court ordered Plaintiffs to apply for

13   default.

14          As detailed below, at the time Plaintiffs filed their application for entry of default, Plaintiffs'

15   were unaware of the Central Authority's February 25 letter indicating possible technical defects in

16   Hague service and, once apprised of the situation, Plaintiffs acted diligently to collect relevant facts

17   for the purpose of informing the Court, and worked to address the Central Authority's service

18   concerns.  At no time, however, did Plaintiffs misrepresent any of their service attempts to the Court

19   or intentionally misrepresent the status of the issuance of the service certificate from the Central

20   Authority.  Accordingly, Defendants' request for sanctions should be denied.

21          Sanctions are warranted "when a party has acted in bad faith, vexatiously, or wantonly, or for

22   oppressive reasons—as when the court finds that the party has practiced fraud upon the court, or has

23   unduly disrupted the litigation or hampered enforcement of a court order." *Sanho Corp. v. CIMO*

24   *Techs., Inc.*, No. C 11-2473 PJH, 2012 WL 2952417, at *1 (N.D. Cal. July 19, 2012) (Hamilton, J.)

25   (citing *In re DeVille*, 361 F.3d 539, 544 (9th Cir. 2004)); *see also Valle v. Berryhill*, No. 16-cv-

26   02358-JSC, 2019 WL 1517103, at *3 (N.D. Cal. Apr. 8, 2019) (sanctions are warranted only where a

27   party acts in bad faith, as demonstrated by "willful misconduct" or "recklessness that is coupled with

28   an improper purpose" (citing *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001))). Plaintiffs have

1    clearly not engaged in such conduct, and Defendants have failed to prove otherwise.

2          Defendants' motion for sanctions is simply their latest move to litigate this case in the court

3    of public opinion while refusing to confront the merits of Plaintiffs' claims. *See, e.g.*, ECF No. 29-3.

4    Indeed, Plaintiffs filed their Complaint nearly five months ago. ECF No. 1. On that very same day,

5    Defendants issued a press release vowing to "vigorously fight" Plaintiffs' allegations. ECF No. 20-4.

6    Since then, Defendants have:

7          • Issued a series of statements to the press contesting Plaintiffs' allegations and the Court's

8            decisions (e.g., ECF No. 29-3);

9          • Engaged a public relations firm for consulting services specifically related to this

10           litigation for payments of $120,000 per month (ECF No. 20-6);

11         • Retained counsel at King & Spalding LLP, a major U.S. law firm (ECF No. 18-1 ¶ 15);[1]

12         • Tweeted repeatedly about the merits of this litigation (ECF No. 29 at 13 n.1);

13         • Filed an application to set aside entry of default and to enlarge the time to respond to the

14           Complaint (ECF No. 24); and

15         • Submitted a declaration from their CEO that disputes the factual allegations in the

16           Complaint (ECF No. 24-3).

17         In addition, Defendants have taken every opportunity to delay this litigation—including,

18   most recently, splitting hairs about whether Defendants' email address and phone number should

19   have been included on the materials that were *served on Defendants* at their shared office[2]—while at

20   the same time issuing press releases and tweeting about the merits of the case. Despite these efforts,

21

22   _____

     [1] As noted in Plaintiffs' Separate Case Management Statement, Plaintiffs intend to file a motion to

23   disqualify King & Spalding LLP for a conflict of interest. ECF No. 35 at 4–5.

24   [2] Defendants claim that service was invalid because Plaintiffs' application for Hague service did not
     include Defendants' email address and telephone number. *See* ECF Nos. 29-7 (the Central

25   Authority's letter stated that Plaintiffs' application for Hague service was deficient because it did not
     include Defendants' email addresses and telephone numbers), 24 at 1 (Defendants rely on the

26   Central Authority's letter as the basis for their application to vacate entry of default). Setting aside
     the fact that no such requirement appears anywhere in the Hague Convention, Defendants' argument

27   makes their strategy abundantly clear: rather than respond to the Complaint, they have chosen to
     delay this case on the basis of procedural minutiae, while having had actual notice of Plaintiffs'

28   claims since the Complaint was filed in October.

the Defendants have been served once again and the Israeli Central Authority has now in fact issued the Hague certificates. ECF No. 32. The Court should end Defendants' procedural distractions, such as their motion for sanctions, and allow this litigation to proceed.

## II.    BACKGROUND

### A.    Plaintiffs requested waiver of service.

Plaintiffs filed their complaint on October 29, 2019. ECF No. 1. Beginning on November 4, Plaintiffs made exhaustive efforts by email, physical mail, and hand service to notify Defendants, their officers, and their directors of this litigation and request waiver of service—including by sending waiver requests, the Complaint, and other litigation materials to Defendants' officers, founders, board members, and legal representatives. *See* Declaration of Joseph D. Mornin in Support of Plaintiffs' Application for Entry of Default, ECF No. 20-3 ¶¶ 6–17. Tellingly, Defendants never disputed that they received the Service Materials or waiver requests, nor do they explain why they disregarded those materials.

### B.    Plaintiffs have diligently sought to serve Defendants under the Hague Convention and have openly reported those efforts to the Court.

In their response to Defendants' application to set aside default, Plaintiffs provided a detailed summary of their efforts to serve Defendants under the Hague Convention. *See* ECF No. 29 at 3. Plaintiffs were equally candid with the Court about these efforts in Plaintiffs' application for entry of default. *See* ECF No. 20. For instance, Plaintiffs stated that Eitan Newman personally served Defendants with the Hague service materials on December 17, 2019—a fact that Defendants have not disputed. *Id.* at 2. In addition, Plaintiffs disclosed the "Central Authority in Israel has not yet issued the formal certificate of Hague service despite Plaintiffs' reasonable efforts to obtain the certificate." *Id.* at 2 n.1. There is simply no merit to Defendants' claim that Plaintiffs concealed facts related to Hague service.  Plaintiffs made every reasonable effort to serve the Defendants in accordance with the Hague Convention, to investigate the facts surrounding those service attempts, to fully apprise the Court of those facts in a timely manner, and, ultimately, to serve Defendants in full compliance with the Hague Convention.

Cooley LLP
Attorneys At Law
San Francisco

-3-                    Pls.' Opp. to Defs.' Motion for Sanctions
Case No. 4:19-cv-07123-PJH

**C.      Plaintiffs were unaware of the Central Authority's objections when they filed their application for entry of default.**

Defendants do not dispute the primary facts regarding Hague service: that the Central Authority received Plaintiffs' Hague service materials on December 8, 2019; that the Central Authority appointed Mr. Newman to serve those materials on Defendants soon afterwards; and that Mr. Newman did in fact personally serve those materials on both Defendants on December 17, 2019. Instead, Defendants allege that the Central Authority sent a letter to Plaintiffs on February 25, 2020, identifying purported technical deficiencies in Plaintiffs' application for Hague service, and that Plaintiffs intentionally concealed this letter from the Court when they applied for entry of default on February 27. Defs.' Mot. for Sanctions, ECF No. 28 at 2–4.

Defendants' factual assertions about Plaintiffs' receipt of the February 25 letter are incorrect. As explained in the timeline of events below, neither Plaintiffs nor their counsel in this litigation knew about the Central Authority's February 25 letter when they applied for entry of default.

It was only after the clerk entered default against the Defendants in this matter that Plaintiffs learned that the Central Authority had sent a letter on February 25 to an attorney at Fischer, Behar, Chen, Well, Orion & Co. ("FBC"), a law firm in Israel that represents Plaintiffs in various matters (but not in this U.S. litigation). Declaration of Yael Riemer ("Riemer Decl.") ¶¶ 1, 6. At that time, the Central Authority *did not* send the letter to Plaintiffs or to Plaintiffs' service agent (Aaron Lukken) as required by Article 4 of the Hague Convention.[3] Declaration of Joseph D. Mornin in Support of Plaintiffs' Opposition to Defendant's Application to Set Aside Default ("Mornin Decl. ISO Opp'n"), ECF No. 29-1 ¶¶ 3–5; *see also* Declaration of Aaron Lukken in Support of Plaintiffs' Opposition to Defendant's Application to Set Aside Default ("Lukken Decl. ISO Opp'n"), ECF No. 29-5 ¶¶ 10–11 (stating that Mr. Lukken contacted the Central Authority about the status of the certificate on February 19 and did not receive a reply until March 4, after he followed up on March 3); *id.* ¶ 12 (explaining that it is unusual and contrary to the provisions of the Hague Convention for

---

[3] Article 4 states: "If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform ***the applicant*** and specify its objections to the request" (emphasis added). The full text of the Hague Convention is available at https://www.hcch.net/en/instruments/conventions/full-text/?cid=17.

Cooley LLP
Attorneys At Law
San Francisco

-4-

Pls.' Opp. to Defs.' Motion for Sanctions
Case No. 4:19-cv-07123-PJH

the Central Authority to contact a third party, rather than the applicant, regarding the status of Hague service requests).

Plaintiffs have learned that after FBC received the February 25 letter, an attorney at FBC forwarded the letter to a U.S. law firm, which provides oversight of international litigation matters for Facebook in various other matters, but not in this litigation before this Court. Riemer Decl. ¶ 6; Declaration of Julian Lamm ("Lamm Decl.") ¶¶ 1–5. Due to an administrative oversight, the attorneys at the U.S. law firm did not realize that they had received the February 25 letter from FBC (especially since they are not representing Plaintiffs in this matter), and did not forward or share that information with anyone, including Plaintiffs, Plaintiffs' service agent, or Plaintiffs' counsel in this case. Therefore, neither Plaintiffs nor undersigned counsel had any knowledge of the February 25 letter until after the February 27, 2020 filing of their application for entry of default and until after the Clerk entered default on March 2, 2020.  Indeed, the first time Plaintiffs' counsel or Plaintiffs learned of the purported objections contained in the February 25 letter was on March 3, 2020, when counsel for the Defendants emailed Plaintiffs' counsel. Mornin Decl. ISO Opp., ECF. No. 29-1 ¶ 5.

Stripped of Defendants' hyperbole, the actual relevant facts regarding Plaintiffs and their counsel's conduct are as follows:

- On December 8, 2019, the Central Authority received Plaintiffs' application for Hague service. Lukken Decl. ISO Opp'n, ECF No. 29-5 ¶ 5. Shortly afterwards, the Central Authority appointed Eitan Newman to serve the Hague service materials on Defendants. Declaration of Eitan Newman in Support of Plaintiffs' Application for Entry of Default, ECF No. 20-1 ¶¶ 3–4.

- On December 17, 2019, Mr. Newman personally served both Defendants at their shared office in Israel. *Id*. ¶ 5; *see also id.* Ex. 1 (proof of service).  On December 18, Mr. Newman provided documentation to the Central Authority showing that service had been accomplished. *Id.* ¶ 7.

- Between January 29, 2020, and February 16, 2020, FBC made a series of inquiries to the Central Authority regarding the status of the formal certificate of Hague service. Riemer Decl. ¶¶ 2–5.

1
2
3
4

- On February 13, 2020, the Court held a case management conference, during which Plaintiffs' counsel stated that they had not received the formal certificate of Hague service and did not know when it would arrive. The Court directed Plaintiffs to apply for entry of default against Defendants. ECF No. 19.

5
6
7
8

- On February 19, 2020, Plaintiffs' service agent, Aaron Lukken, contacted the Central Authority on his own initiative to inquire about the status of the formal certificate of Hague service. He did not receive a response. Lukken Decl. ISO Opp'n, ECF No. 29-5 ¶ 10.

9
10
11
12
13

- On February 25, 2020, the Central Authority sent a letter (via email) to FBC identifying purported deficiencies in Plaintiffs' application for Hague service. Riemer Decl. ¶ 6. FBC forwarded this letter to White & Case, but due to an administrative oversight, White & Case did not forward the letter to Plaintiffs, Plaintiffs' service agent, or Plaintiffs' counsel in this litigation. Lamm Decl. ¶¶ 5–9.

14
15
16
17
18

- On February 27, 2020, Plaintiffs applied for entry of default as ordered by the Court. ECF No. 20. Based on the information available to Plaintiffs at the time of filing, Plaintiffs explained to the Court that Mr. Newman had served the Defendants on December 17, 2019, and that the Central Authority had not yet issued the formal certificate of Hague service. ECF No. 20 at 1–2.

19
20

- On March 2, 2020, the Clerk of the Court entered default against both Defendants. ECF No. 22.

21
22
23

- On March 3, 2020, Mr. Lukken contacted the Central Authority on his own initiative regarding his February 19, 2020, inquiry to which he had not yet received a response. Lukken Decl. ISO Opp'n, ECF No. 29-5 ¶¶ 11–12.

24
25
26
27
28

- On March 3, 2020, Plaintiffs' counsel received a letter (via email) from Defendants' counsel regarding the status of service in Plaintiffs' application for entry of default. Mornin Decl. ISO Opp'n, ECF No. 29-1 ¶ 2. Before this date, neither Plaintiffs nor Plaintiffs' counsel in this matter had received notice of any such correspondence from the Central Authority. *Id.* ¶¶ 2, 5. The letter and its enclosures showed that Defendants'

counsel had been in communication with the Central Authority regarding Plaintiffs' application for Hague service and that the Central Authority informed Defendants' counsel that Plaintiffs' Hague service application was purportedly deficient. ECF No. 24-2 at 2–11.

- On March 3, 2020, after receiving Defendants' letter, Plaintiffs' counsel immediately began investigating the letter's claim that the Central Authority had identified purported deficiencies in Plaintiffs' application for Hague service. Mornin Decl. ISO Opp'n, ECF No. 29-1 ¶ 3. During the course of an investigation between March 3 and March 6, Plaintiffs' counsel learned that the Central Authority had sent its February 25 letter to FBC, and *did not* send the letter to Plaintiffs or Plaintiffs' service agent as required by Article 4 of the Hague Convention. *Id.* Plaintiffs' counsel further learned that FBC promptly forwarded that letter to an attorney at White & Case, and due to an administrative oversight, that attorney never forwarded the February 25 letter to Plaintiffs, Plaintiffs' service agent, or Plaintiffs' counsel in this litigation. *Id.* ¶¶ 3–4.

- On March 4, 2020, for the first time, the Central Authority responded to Mr. Lukken's February 19 and March 3 inquiries by emailing a copy of its February 25 letter to Mr. Lukken, who then forwarded the letter to Plaintiffs' counsel. *Id.*; *see also id.* Ex. 2, ECF No. 29-7 at 6 (attaching a copy of the Central Authority's email).

- On March 6, 2020, without having discussed the matter further with Plaintiffs' counsel, Defendants filed their Application to Set Aside Default and to Enlarge Time to Respond to the Complaint, in which they accused Plaintiffs of procuring default by defrauding the Court. ECF No. 24. In addition, Defendants' CEO and Defendants' counsel submitted declarations in which they did not deny that Defendants were served on December 17 and moreover, did not claim that any facts surrounding Plaintiffs' service efforts were inaccurate or unfounded. *See* ECF Nos. 24-1, 24-3.

- On March 9, 2020, Plaintiffs filed their response to Defendants' Application, in which they did not object to setting aside default so that the case could proceed on the merits.

ECF No. 29. Also on March 9, 2020, Defendants filed their motion for sanctions. ECF No. 28.

These facts demonstrate Plaintiffs' veracity and candor with the Court regarding its efforts to serve Defendants under the Hague Convention. They further show that, due to an administrative oversight, Plaintiffs were unaware of the Central Authority's February 25 letter when they applied for entry of default. And, most importantly, they show that neither Plaintiffs nor undersigned counsel have acted in bad faith or with reckless disregard.

**D.      The Hague certificates have now been received.**

After learning of the purported deficiencies identified in the Central Authority's February 25 letter, Plaintiffs re-submitted their application materials to the Central Authority along with Defendants' email addresses, phone numbers, and the name of Defendants' CEO. On March 12, 2020, Mr. Newman personally re-served Defendants at their shared office in Israel, and the Central Authority subsequently issued the formal certificates of Hague service on March 16, 2020. On March 18, 2020, Plaintiffs filed the Hague certificates with the Court. ECF No. 32.

**III.     LEGAL STANDARD**

Courts have inherent authority to impose sanctions "for bad faith, which includes a broad range of willful improper conduct." *Fink*, 239 F.3d at 992. Courts may also impose sanctions under 28 U.S.C. § 1927 for conduct that "multiplies the proceedings in any case unreasonably and vexatiously." But the power to impose sanctions "must be exercised with restraint and discretion." *Valle*, 2019 WL 1517103, at *3 (quoting *Chambers v. NASCO*, 501 U.S. 32, 44 (1991)). The "bad-faith requirement sets a 'high threshold,' which may be met by willful misconduct, or recklessness that is coupled with an improper purpose." *Id.* (quoting *Fink*, 239 F.3d at 993–94). Absent a specific finding of bad faith, courts lack the authority to impose sanctions under their inherent power. *Omoregie v. Boardwalk Auto Ctr., Inc.*, No. C 07-3884 PJH, 2007 WL 3475868, at *1 (N.D. Cal. Nov. 15, 2007) (Hamilton, J.) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) and *United States v. Stoneberger*, 805 F.2d 1391, 1392 (9th Cir. 1986)). "It is the moving party's burden to demonstrate that the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose." *Valle*, 2019 WL 1517103, at *3 (citing *Burnett v. Conseco, Inc.*, 87 F.

Supp. 3d. 1238, 1247–48 (N.D. Cal. 2015)).

Sanctions may be warranted where a party acts in bad faith. *Valle*, 2019 WL 1517103, at *3 (explaining that bad faith can be shown by "willful misconduct" or "recklessness that is coupled with an improper purpose"). For instance, sanctions "may be appropriate when a party deceives the court 'at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the court.'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:10-cv-01064-SI, 2012 WL 12919129, at *3 (N.D. Cal. Nov. 30, 2012) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)); *see also In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2012 WL 5372477, at *6 (N.D. Cal. Oct. 30, 2012) (sanctions are available "if the court specifically finds . . . conduct tantamount to bad faith," which may encompass "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose" (quoting *Fink*, 239 F.3d at 994)).

## IV.    ARGUMENT

Plaintiffs and Plaintiffs' counsel acted in good faith at all times. Defendants' speculation about Plaintiffs' conduct and their assumptions about Plaintiffs' bad faith are simply incorrect.  Had they provided Plaintiffs with notice of the motion for sanctions and allowed sufficient time to investigate service issues, Plaintiffs could have corrected their confusion and prevented unnecessary motion practice before the Court.  Instead, Defendants jumped to a conclusion based on incorrect factual assumptions and their unwillingness to await the results of the undersigned counsel's investigation of circumstances surrounding the February 25 letter that Defendants obtained from the Israeli Central Authority. As explained above, the actual facts regarding Plaintiffs' representations about service to the Court do not remotely approach the kind of bad faith conduct that for which sanctions would be appropriate. *See, e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2012 WL 5372477, at *6 (N.D. Cal. Oct. 30, 2012) (sanctions are available "if the court specifically finds . . . conduct tantamount to bad faith," which may encompass "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose" (quoting *Fink*, 239 F.3d at 994)), Nothing of the sort happened here.

Instead of an act in bad faith, the facts demonstrate a series of unfortunate miscommunications. First, the Central Authority sent the letter to the FBC law firm in Israel, which represents Plaintiffs in various matters, but not in this litigation before this Court. The Authority notably *did not* send the letter to Plaintiffs or Plaintiffs' service agent[4] as required by Article 4 of the Hague Convention. Second, FBC forwarded the letter to the U.S. law firm—another firm that represents Plaintiffs in various matters, but not in this litigation. The attorneys at the U.S. law firm did not realize that they had received the letter and failed to send it to Plaintiffs or Plaintiffs' counsel in this litigation.

While this was an unfortunate error, in no way does it show that Plaintiffs or Plaintiffs' counsel at Cooley LLP engaged in sanctionable conduct. *See, e.g.*, *Manning v. Bunnel*, No. 2:12-cv-2440, 2015 WL 2358593, at *11 (E.D. Cal. May 15, 2015) (finding that counsel's "mistaken representation . . . [did] not appear to have been made in bad faith or for any improper purpose," and concluding that sanctions were not warranted "for what appears to be the result of a clerical error"); *In re TFT-LCD*, 2012 WL 12919129, at *4 (declining to impose sanctions for a "mistake by [a party's] counsel"); *Perfect 10, Inc. v. Yandex N.V.*, No. C 12-1521-WHA, 2013 WL 4028948, at *4 (N.D. Cal. Aug. 6, 2013) (declining to impose sanctions because "bad faith ha[d] not been established" where counsel claimed to have made a "simple mistake" based on inaccurate information it had received).

Plaintiffs have only ever acted diligently and in good faith here. Since filing the Complaint in October, Plaintiffs have made every reasonable good-faith effort to notify Defendants of this litigation and request waiver of service and to serve Defendants under the applicable provisions of the Hague Convention. Defendants do not deny that they were, in fact, served on December 17, 2019, and on multiple other occasions. And, most importantly in the Application for Entry of Default, Plaintiffs provided the Court in their papers and in open court with the most current, full, and accurate information of which we were aware regarding the procedural status of this case,

---

[4] As set forth above, Plaintiffs first learned of the Central Authority's objections when Mr. Akrotirianakis sent his letter to Plaintiffs' counsel on the evening of March 3. Plaintiffs did not see the letter itself until the Central Authority provided a copy to Mr. Lukken on March 4.

1  including Plaintiffs' efforts to serve Defendants and Defendants' refusal to respond to the

2  Complaint.

3  **V.    CONCLUSION**

4          Sanctions are appropriate only where a party "acted with the requisite bad faith or improper

5  purpose." *Valle*, 2019 WL 1517103, at *3. Defendants have failed to show that Plaintiffs acted with

6  bad faith in any way. On the contrary—Plaintiffs have made every reasonable effort to serve

7  Defendants, including service via the Hague Convention on December 17, 2019. Defendants do not

8  deny these facts, and Plaintiffs have been entirely forthright in presenting them to the Court.

9  Accordingly, Plaintiffs respectfully request that the Court deny Defendants' motion for sanctions.

10

11  Dated: March 23, 2020                    Respectfully submitted,

12                                           COOLEY LLP

13                                           /s/ Travis LeBlanc
                                             Michael G. Rhodes
14                                           Travis LeBlanc
                                             Daniel J. Grooms
15                                           Kyle C. Wong
                                             Joseph D. Mornin
16
                                             Attorneys for Plaintiffs
17                                           WHATSAPP INC. and FACEBOOK, INC.

18

19

20

21

22

23

24

25

26

27

28