1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
     *jakro@kslaw.com*
2   AARON S. CRAIG (Bar No. 204741)
     *acraig@kslaw.com*
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone:    (213) 443-4355
5   Facsimile:    (213) 443-4310

6   Attorneys for Defendants NSO GROUP TECHNOLOGIES
    LIMITED and Q CYBER TECHNOLOGIES LIMITED
7
                        UNITED STATES DISTRICT COURT
8
                     NORTHERN DISTRICT OF CALIFORNIA
9
                             OAKLAND DIVISION
10

11  WHATSAPP INC., a Delaware corporation,        Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
12  corporation,                                  **REPLY OF DEFENDANTS NSO GROUP
                                                  TECHNOLOGIES LIMITED
13                 Plaintiffs,                    AND Q CYBER TECHNOLOGIES
                                                  LIMITED IN SUPPORT OF MOTION
14          v.                                    FOR SANCTIONS [DKT. NO. 28]**

15  NSO GROUP TECHNOLOGIES LIMITED               Judge:   Hon. Phyllis J. Hamilton
    and Q CYBER TECHNOLOGIES LIMITED,            Ctrm:    3
16
                                                  Action Filed:  10/29/2019
17                 Defendants.

18

19

20

21

22

23

24

25

26

27

28

I.      INTRODUCTION

Parties involved in *ex parte* litigation bear a special duty of candor to the court, precisely because the opposing party is not present to correct the factual record.  A moving party must not take unfair advantage of an opponent's absence by procuring judicial action based on false representations, or by failing to correct false representations promptly upon learning about them.  Plaintiffs Facebook and WhatsApp ("Plaintiffs" or "Facebook") and their counsel failed to comply with that duty and admit that their representations to the Court were, in fact, false.

First, Facebook misrepresented to this Court that service was complete under the Hague Convention, although (1) Defendants' counsel had repeatedly told Facebook's counsel that Defendants would not appear because service was not complete; (2) attorneys with at least three of Facebook's law firms working on both this matter and a closely related case knew that Israel's Central Authority, the Israeli Office of Administration of Courts, had not provided a Certificate of Service; and (3) Facebook and two of its law firms had received official written notice from the Administration of Courts that its attempt at service was deficient.[1]  Facebook acknowledges that it misrepresented that Defendants had been served under the Hague Convention in its application for default.  (Plaintiffs' Opposition to Defendants' Application to Set Aside Default [Dkt. No. 29] at 3:24-4:17 (expressing "regret [for] the oversight and inconvenience it has caused the Court . . . ."); Opposition to Motion for Sanctions [Dkt. No. 39] at 4:11-8:7 (attributing the misstatement to "an administrative oversight"); *Id.* at 9:15-18 (stating that if Defendants had waited longer before applying for relief from default, "Plaintiffs could have *corrected* their confusion and prevented unnecessary motion practice before the Court.") (emphasis added).)

Second, after Facebook's counsel handling this case independently confirmed that Facebook had actual knowledge the Office of Administration of Courts had in fact determined its service application was deficient, Facebook failed to bring its misrepresentation to the Court's

---

[1] Facebook's submission appears to assert that its counsel in this case, Cooley LLP, knew at all relevant times that there was no Certificate of Service but did not have actual knowledge that Israel's Administration of Courts determined that its Hague Convention application was deficient until March 3, 2020.

1    attention.  Instead, Facebook waited until NSO acquiesced and entered a notice of appearance to

2    contest the default.  Only then did Facebook admit that it misled the Court and wrongly procured

3    the default notice.

4           Plaintiffs' misrepresentation to this Court[2] and refusal to correct the record resulted in a

5    multiplication of the proceedings.  It caused the Court to enter an unwarranted default on March

6    2, 2020, and forced Defendants to move to set aside the default on March 6, 2020.

7           Facebook goes to great lengths in its Opposition to persuade the Court that its counsel in

8    this case did not know its representation was false on February 27, 2020.  Facebook admits that all

9    of its lawyers knew about the misrepresentation by March 3, however, and Facebook does not

10   explain its failure to correct the record on March 4, 5, or 6, when its ethical obligations and duty

11   of candor required it to do so.

12          Even if the Court were to credit Facebook's evidence and argument completely, it should

13   impose sanctions for Facebook's refusal promptly to notify the Court that it had properly failed to

14   serve Defendants, and that its default motion therefore was misleading.  The Court should impose

15   sanctions in the amount of $16,994.25 payable to Defendants, as well as any other sanction the

16   Court deems appropriate.

17   **II.    FACTUAL CHRONOLOGY**

18          The following brief chronology may be helpful to the Court.  These facts do not appear to

19   be in dispute, and all come from pleadings previously filed by the parties.

20          October-November 2019:   Facebook sent materials, *not including a summons*, to

21   Defendants and certain persons affiliated with Defendants.  [Plaintiffs' Opposition to Set Aside

22   Default, Dkt. No. 29 at 6:24-8:24.]

23          December 17, 2019:   Facebook attempted to serve Defendants under the Hague

24   Convention.  [Plaintiffs' Opposition to Motion for Sanctions, Dkt. No. 39:19-21].  This service

25   attempt was made pursuant to an incomplete Hague application that Israel "reject[ed] for

26

27   _____

[2] Facebook's misrepresentations were made to Magistrate Judge Corley.  The case was reassigned
28   to Chief Judge Hamilton on March 20, 2020.  [Dkt. No. 36.]

1  deficiency of form."   [Exhibit 1 to Declaration of Joseph N. Akrotirianakis in Support of

2  Application to Set Aside Default ("Akro. Decl."), Dkt. No. 24-2; Declaration of Aaron Lukken in

3  Support of Plaintiffs' Opposition to Defendants' Application to Set Aside Default ("Lukken

4  Decl.") ¶ 11, Dkt. No. 29-5.]

5      February 4 to 20, 2020:  Defendants' counsel repeatedly notified Facebook's counsel that

6  Defendants had not appeared in court because service was not complete.  Defendants' counsel

7  provided Facebook's counsel with case law explaining that default cannot properly be entered in

8  the absence of a certificate of service and that the Hague Convention certificate of service is a

9  substantive component of service without which service is not complete.[3]  Facebook's counsel

10  provided no contrary authority to Defendants.  Instead, in three telephone conferences between

11  Facebook's counsel and Defendants' counsel and two email exchanges between counsel,

12  Facebook's counsel sought to pressure Defendants to enter an appearance in the case and refused

13  Defendants' offer to waive service—and eliminate the need for judicial intervention—in return for

14  a negotiated briefing schedule.  [Akro Decl. ¶¶ 10-11 and Exhs. 4-5, Dkt. Nos. 24-1 and 24-2.]

15      February 25, 2020:  Israel's Central Authority issued an Article 4 Certificate (*i.e.* a notice

16  of deficiency) under the Hague Convention and notified Facebook's Israeli counsel about

17  deficiencies in Facebook's service application.  [Akro Decl. Exh. 1, Dkt. No. 24-2; Declaration of

18  Yael Riemer in Support of Plaintiffs' Opposition to Defendants' Motion for Sanctions ("Riemer

19  Decl.") ¶ 6; Dkt. No. 39-2.]

20      February 25, 2020:  Facebook's Israeli counsel translated the Article 4 Certificate and letter

21  from Israel's Central Authority and sent them by email to three separate attorneys at White & Case,

22  a law firm representing Facebook in related litigation that previously had expressly inquired about

23

24  [3] Courts normally do not enter default without a certificate of service under the Hague Convention
because the foreign state may determine that service was defective, as happened in this case, or
25  may exercise its sovereign discretion to refuse service under Article 13 of the Hague Convention,
even if the documentation is correct.  This Court held that the service date runs from the time when
26  Facebook made its second, successful attempt at Hague Convention service on March 12, 2020,
rather than the date the Administration of Courts issued a certificate of service. Some courts take
27  that approach to computing time when service is ultimately shown to be successful, although
28  obviously a defendant's response clock does not start if service is deficient.

REPLY IN SUPPORT OF MOTION                    3                    Case No. 4:19-cv-07123-PJH
FOR SANCTIONS

1  service on Facebook's behalf.  [Riemer Decl. ¶ 6, Dkt. No. 39-2; Declaration of Julian Lamm in

2  Support of Plaintiffs' Opposition to Defendants' Motion for Sanctions ("Lamm Decl.") ¶¶ 5-6,

3  Dkt. No. 39-1.]  Each of these three attorneys "inadvertently overlooked" that email message.

4  [Lamm Decl. ¶ 6.]

5      February 27, 2020:  Facebook applied to this Court for default, falsely representing that

6  Defendants were "served under the Hague Convention."  [Dkt. No. 20 at 2:19.]

7      March 2, 2020:  This Court entered a default order.  [Dkt. No. 22.]

8      March 3-6, 2020:  Multiple news outlets published reports that Facebook won its case

9  against NSO by obtaining a default judgment.

10      March 3, 2020:  The Israeli Administration of Courts informed Defendants' counsel that

11  "[t]he Hague application in this case is incomplete" and pointed out that it had previously notified

12  Facebook's counsel.  [Akro. Decl. ¶ 6 and Exh. 1, Dkt. Nos. 24-1 and 24-2.]

13      March 3, 2020:  Defendants' counsel sent a letter asking Facebook's counsel to "correct

14  the factual record and inform the Court that the Israeli Administration of Courts provided an

15  Article 4 Notice on February 25, 2020, and accordingly, service under the Hague Convention has

16  not yet been completed."  [Akro. Decl. ¶ 7 and Exh. 2, Dkt. Nos. 24-1 and 24-2.]

17      March 4, 2020:  A Hague Convention expert hired by Facebook independently learned

18  from the Israel Administration of Courts that Facebook's Hague Convention application was

19  "reject[ed] for deficiency of form," in an email message sent at 3:31 a.m., to which he responded

20  at 5:19 a.m.  [Lukken Decl. ¶¶ 4, 11 and Exh. 2, Dkt. Nos. 29-5 and 29-7.]

21      March 4, 2020:  Counsel for Facebook responded to the March 3, 2020 letter from

22  Defendants' counsel with an email that stated, in its entirety: "We have received your

23  correspondence.  We are reviewing your assertions and will address them if appropriate."  [Akro.

24  Decl. Exh. 3, Dkt. No. 24-2.]

25      March 5-6, 2020:  Defendants prepared their application to set aside the default, the fees

26  associated with which were at least $16,994.25.  [Declaration of Aaron Craig in Support of

27  Defendants' Motion for Sanctions ["Craig Decl." ¶¶ 3-6, Dkt. No. 28-1.]

28      March 6, 2020:  After waiting until the end of the business day to see whether Facebook

1  would correct the record by moving to set aside the default order that it procured through

2  misrepresentations, Defendants filed an application to set aside the default. [Dkt. No. 24.]

3  **III.     ARGUMENT**

4          A.     <u>Plaintiffs' Refusal to Correct their Misstatement Multiplied the Proceedings</u>

5          Sanctions may be imposed under 28 U.S.C. § 1927 for either bad faith or recklessness.

6  *Lahiri v. Universal Music and Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).  Attorney

7  misstatements to the court and failure to correct those misstatements are sanctionable under section

8  1927 if they result in a multiplication of the proceedings.  *Id.* at 1220-1221.  Apart from the statute,

9  the Court possesses inherent power to impose sanctions.  *Chambers v. NASCO, Inc.*, 501 U.S. 32,

10  43, 111 S. Ct. 2123, 2132 (1991).

11          Facebook's refusal to correct its misstatement to the Court after confirming the true facts

12  warrants sanctions under both section 1927 and the Court's inherent authority, even if the Court

13  excuses Facebook's failure to communicate that two of its law firms had received actual notice of

14  the service deficiency on February 25, 2020.  In Facebook's eleven-page Opposition, it does not

15  explain its failure to tell the Court the truth at any time between March 4 and March 6, which

16  would have caused the Court to vacate the default without requiring Defendants to prepare and file

17  an application.  This constitutes bad faith and willful misconduct that multiplied the proceedings.

18          Facebook offers no cogent explanation for its refusal promptly to tell the Court about its

19  misrepresentation after Defendants' counsel explicitly asked Facebook's counsel to do so.  (Akro.

20  Decl. ¶ 7 and Exh. 2 [Dkt. Nos. 24-1 and 24-2].)  Defendants' March 3, 2020, letter provided clear

21  notice of the misrepresentation.   And three full days provided more than sufficient time to

22  investigate the service issues, particularly where there was only one relevant fact—the Israel

23  Administration of Court's notice of deficiencies in Facebook's Hague Convention application.

24  After Defendants informed counsel for Facebook about this fact on March 3, Plaintiffs' agent

25  independently confirmed it early in the morning on March 4.  Facebook could have filed a Notice

26  of Supplemental Facts on March 4 or March 5 or March 6.  But despite being asked by Defendants

27

28

1    to correct the record, Facebook chose to remain silent.[4]   That tactical choice directly multiplied

2    the proceedings, requiring Defendants to appear and move to set aside the default notice.

3           Only proper service of a summons triggers an obligation to appear.  Facebook devotes

4    many pages to arguments about Defendants' knowledge that a lawsuit had been filed, but this is

5    irrelevant because Defendants had no obligation to appear until they were properly served.

6    Facebook also criticizes the Israeli Administration of Courts for finding Facebook's Hague

7    Convention application deficient, but whether or not any party agrees with the Administration of

8    Courts is immaterial; the judiciary is the final authority.

9           Defendants had a legal right not to appear unless and until service was completed, period,

10   and service was not completed when Facebook applied for default.  Facebook and its counsel may

11   have been reluctant to give up their wrongfully-procured default because it generated favorable

12   publicity for Facebook and unfavorable publicity for Defendants, or because it provided

13   unwarranted leverage to pressure Defendants to forego their legal right to insist on proper service,

14   but those motivations lawfully could not supersede Facebook's duty to correct the record.

15          Even if the Court were to find Facebook's conduct to be merely reckless and not willful,

16   such recklessness is sanctionable because it was combined with an illegitimate objective—to

17   coerce Defendants to appear in the case immediately despite Facebook's failure to complete

18   service.

19          Facebook was so devoted to its strategy to compel Defendants to appear in the case without

20   completing service that Facebook refused even a collegial request to discuss scheduling matters—

21   in an effort to resolve the service issue without involving the Court—before Defendants' counsel

22   entered an appearance. (Akro. Decl. ¶¶ 10-11 and Exhs. 4-5 [Dkt. Nos. 24-1 and 24-2].)

23   Facebook's misrepresentation advanced its strategic goal and garnered it a cycle of favorable

24   publicity at NSO's expense, and Facebook should pay a penalty for it.

25          If Facebook had told the truth and corrected its own misrepresentation, this Court would

26

27   ───────────────────────────
     [4] When Plaintiffs subsequently learned that Israel's Administration of Courts had issued a new
28   certificate *confirming* service, in contrast, they immediately informed the Court.  [Dkt. No. 33.]

REPLY IN SUPPORT OF MOTION                   6                    Case No. 4:19-cv-07123-PJH
FOR SANCTIONS

1   have vacated the default and Facebook's strategy to compel Defendants to appear in the case

2   without completing service would have failed.  That would have constituted a double defeat for

3   Facebook: requiring it both to admit service was incomplete and to concede that it had wrongfully

4   procured a default finding that was publicized to Facebook's advantage.

5       In the absence of any other plausible explanation, Facebook's refusal to inform the Court,

6   on March 4, 5, and 6, that Israel had, "reject[ed]" Facebook's Hague Convention application for

7   "deficiency of form" (Lukken Decl. ¶ 11), must be viewed as a tactical maneuver in furtherance

8   of an improper litigation strategy.

9       Facebook's refusal to correct its prior misstatement and notify the Court that the Israeli

10  Administration of Courts issued a notice of deficiency in response to its Hague Convention

11  application was in bad faith, or alternatively, was reckless with an improper purpose, and is

12  therefore sanctionable under section 1927 and the Court's inherent authority.

13      B.      Facebook's Opposition Understates the Significance of its Misrepresentation

14      Facebook's Opposition begins with a factual assertion that elides a critical detail:

15  "Plaintiffs' counsel accurately informed the Court of their efforts at serving Defendants . . . ."

16  (Opp. at 1:3-5).  In its application for default, however, Facebook did not tell the Court merely that

17  it had made *efforts* at serving Defendants.  Rather, it wrongly represented that Defendants *were*

18  "served under the Hague Convention."  [Dkt. No. 20 at 2:19.][5]

19      Facebook made this claim despite having been told repeatedly that Defendants had not

20  been served under the Hague Convention, first by Defendants' attorneys throughout February

21  (Akro. Decl. ¶¶ 10-11 and Exhs. 4-5 [Dkt. Nos. 24-1 and 24-2]) and subsequently by the

22  communication from the Israeli Central Authority to two of Facebook's law firms on February 25,

23  2020.  The Court entered default based on this misrepresentation; default would not have been

24  entered if Facebook had informed the Court that Facebook's efforts were unsuccessful.

25

26  —————————————
[5] In its application for default, Facebook acknowledged in a footnote that Israel had not yet issued
27  the Certificate of Service, admitting that "the delay in the issuance of the certificate in this matter
    is unusual," but omitting that its attorneys had inquired about the absence of the certificate and
28  received notice that Facebook's application was deficient. [Dkt. 20 at 2 n.1.]

1        C.        Facebook Had Actual Knowledge of Its Misrepresentation

2        A law firm associate representing Facebook in a very closely related matter—litigation

3  brought against Facebook by NSO employees, in which Facebook evidently is seeking to use the

4  very existence of this lawsuit as a *lis alibi pendens* defense—admits that on Facebook's behalf,

5  he asked Facebook's Israeli counsel to "contact the Central Authority in Israel to inquire about

6  the status of Facebook and Whatsapp's application for service under the Hague Convention in

7  the U.S. litigation" on January 28, 2020.  [Dkt. 39-1 at 2.]  Facebook's Israeli counsel did indeed

8  contact the Central Authority on January 29, 2020, then followed up with repeated telephone

9  calls and emails until the Central Authority responded on February 25, with the message

10  providing actual notice not only that the Certificate had not been issued—Facebook already

11  knew that—but also that Facebook's application was deficient.  The Israeli attorney immediately

12  notified the law firm associate and two other attorneys at Facebook's other law firm. [Dkt. 39-2

13  at 2.]

14        Facebook admits that it and its counsel *in this case* were aware that no Certificate of

15  Service had been issued.  [Dkt. 20 at 2 n.1.]  It overlooks the compelling fact that Facebook's

16  American attorney in the related case and its Israeli counsel were urgently inquiring about the

17  status of Hague Service application.  Why were they inquiring?  They were inquiring because

18  Facebook knew that a deficiency in service would relieve NSO of any duty to appear in the

19  litigation and preclude Facebook from obtaining a default order.

20        Given these undisputed facts, the Court must find that Facebook had actual knowledge of

21  its misrepresentation on February 27 that service was complete, and that *both Facebook and

22  counsel in this case* had actual knowledge on March 3 of their duty to correct the record and

23  move to vacate the default that they obtained under false pretenses.

24  //

25  //

26  //

27  //

28  //

REPLY IN SUPPORT OF MOTION        8        Case No. 4:19-cv-07123-PJH
FOR SANCTIONS

1   IV.   **CONCLUSION**

2        For the foregoing reasons, Defendants ask the Court to grant the Motion for Sanctions and

3   order Facebook and their counsel to pay $16,994.25 to Defendants and any other form of sanction

4   the Court deems appropriate.

5

6   Dated:  March 30, 2020                 KING & SPALDING LLP

7                                        By:   */s/Joseph N. Akrotirianakis*

8                                             JOSEPH N. AKROTIRIANAKIS
                                          AARON S. CRAIG

9                                             Attorneys for Defendants NSO GROUP
                                          TECHNOLOGIES LIMITED and Q

10                                            CYBER TECHNOLOGIES LIMITED

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28