UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, et al.,<br><br>    Defendants. | Case No. 19-cv-07123-PJH<br><br>**ORDER DENYING MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 28 |

Before the court is defendants NSO Group Technologies Limited ("NSO") and Q Cyber Technologies Limited's ("Q Cyber" and together with NSO, "defendants") motion for sanctions. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES defendants' motion for the following reasons.

**BACKGROUND**

On October 29, 2019, plaintiffs WhatsApp Inc. ("WhatsApp") and Facebook, Inc. ("Facebook" and together with WhatsApp, "plaintiffs") filed a complaint alleging: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) violation of the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502; (3) breach of contract and (4) trespass to chattels. Dkt. 1. In the intervening months, plaintiffs attempted service on defendants, which are Israeli entities, through a variety of means and pursuant to the Hague Convention. Dkt. 20 at 3. Despite these attempts, defendants did not file an appearance in the case or respond. On December 8, 2019, the

Israeli Central Authority received plaintiffs' service materials. The Central Authority then appointed Eitan Newman to serve defendants. Dkt. 20-1, ¶ 4. Plaintiffs believed that Newman had effected service at defendants' office in Hertsliya, Israel in accordance with the Hague Convention on December 17, 2019. Dkt. 20-1, ¶ 5. Accordingly, on February 27, 2020, plaintiffs filed an application for default (Dkt. 20), and the Clerk of Court entered default on March 2, 2020 (Dkt. 22).

In their application for default, plaintiffs stated that they "properly served Defendants with the Complaint and summons" as required by the Hague Convention. Dkt. 20 at 2. Yet, two days earlier, on February 25, 2020, the Government of Israel's Central Authority issued a letter noting issues with the application plaintiff. Later, counsel for defendants inquired about the status of the certificate and received a response from the Central Authority stating that "[t]he Hague application for service in this case is incomplete." Dkt. 24-1, Ex. 1. The Central Authority had sent this letter to an Israeli law firm, Fischer, Behar, Chen, Well, Orion & Co. ("FBC"), that represents Facebook in various matters in Israel but not the matter currently before the court. The same day, an attorney at FBC forwarded a translated version of the Central Authority's letter to a U.S. law firm, White & Case, LLP (Dkt. 39-2, ¶ 6), that provides oversight of Facebook's international litigation matters but not the matter currently before the court, (Dkt. 39-1, ¶ 1). Counsel at White & Case did not forward the Central Authority's letter to counsel of record or communicate with counsel of record until March 5, 2020. Dkt. 39-1, ¶ 6–7.

On March 3, 2020, counsel for defendants contacted plaintiffs' counsel concerning the application for entry of default and disclosed defendants had been in communication with the Central Authority concerning the apparent incomplete service. Dkt. 24-1, ¶ 7. The following day, plaintiffs' counsel acknowledged receipt of defendants' counsel's communication. Id. ¶ 8. On March 6, 2020, defendants filed an application to set aside the default and raised the issue of incomplete service under the Hague Convention. Dkt. 24. Plaintiffs responded to this filing on March 9, 2020, (Dkt. 29), which was the same day defendants filed the present motion for sanctions. Defendants seek sanctions

pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. §1927.  Dkt. 28 at 4.

## DISCUSSION

**A.     Legal Standard**

Federal Rule of Civil Procedure 11 imposes upon attorneys a duty to certify that they have read any pleadings or motions they file with the court and that such pleadings and motions are well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose.  Fed. R. Civ. P. 11(b); see also Business Guides, Inc. v. Chromatic Comm. Enters., Inc., 498 U.S. 533, 542 (1991).  Rule 11 authorizes sanctions for its violation and serves "to deter baseless filings in district court and thus . . . streamline the administration and procedure of federal courts."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).  Sanctions for violating Rule 11 can include an award of attorneys' fees.  Fed. R. Civ. P. 11(c)(4); Cooter & Gell, 496 U.S. at 406–07.  "[S]anctions must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.'  The word 'frivolous' . . . denote[s] a filing that is both baseless and made without a reasonable and competent inquiry."  Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (citation omitted).

Nevertheless, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."  Operating Eng'rs Pension Trust v. A-C Co., 859 F.2d 1336, 1345 (9th Cir. 1988).  Rule 11 sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."  Id. at 1344.  "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously."  Id.  Courts should "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."  Fed. R. Civ. P. 11 Advisory Comm. Notes (1993 Amendments).

Additionally, 28 U.S.C. § 1927 provides that a court "may" require "[a]ny attorney" who "multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because

of such conduct." "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." Blixseth v. Yellowstone Mountain Club, LLC, 796 F.3d 1004, 1007 (9th Cir. 2015) (quoting New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989)). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purposes of harassing an opponent." New Alaska, 869 F.2d at 1306 (quoting Estate of Blas ex rel. Chargualaf v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986)).

The party seeking sanctions bears the burden of demonstrating by clear and convincing evidence that sanctions are justified. In re Zilog, Inc., 450 F.3d 996, 1007 (9th Cir. 2006); Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc., 834 F.2d 833, 837 (9th Cir. 1987).

**B.     Analysis**

Defendants advance two arguments why sanctions are appropriate. First, they contend that plaintiffs falsely represented to the court in their February 27, 2020 application for default that defendants had been properly served under the Hague Convention. Mtn. at 2. According to defendants, plaintiffs knew this statement was false at the time they made it because the Israeli Central Authority informed them two days prior that the Hague application for service was incomplete. Id. at 2–3. Second, defendants argue that plaintiffs' counsel had an obligation to correct the false statement after making such a statement to the court and did not make any such correction. According to defendants, they notified plaintiffs' counsel on March 3, 2020 of the Israeli Central Authority's statement that service was incomplete and plaintiffs' counsel, while acknowledging receipt, did not correct its false statement with the court. Id. at 3. As a result of this, defendants had to spend time and effort to draft an application to set aside the default when that default was obtained by a purportedly false statement.

Plaintiffs respond that in their February 27, 2020 application for default that they disclosed that the Central Authority had yet to issue a formal certificate in accordance with the Hague Convention despite their reasonable efforts to obtain the certificate. See

Dkt. 20 at 2 n.1.  They also state that they were unaware of the February 25, 2020 letter from the Central Authority because that letter was first sent to an Israeli firm which in turn was forwarded to a different U.S. law firm than the counsel of record in this case.  Opp. at 4.  Plaintiffs have produced a declaration from an attorney at White & Case that the letter was not forwarded to plaintiffs' counsel through an inadvertent error.  Dkt. 39-1.  Plaintiffs' counsel state that after they were informed by defendants' counsel of the incomplete service, they undertook an investigation to determine what had occurred and defendants filed the application to set aside the default without having followed up with plaintiffs' counsel.  Opp. at 7.

The statement in question from plaintiffs' application for default is as follows:

> On December 17, 2019, Plaintiffs properly served Defendants with the Complaint and summons at their shared office in Hertsliya, Israel, in accordance with Federal Rule of Civil Procedure 4(f)(1) and the applicable provisions of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention").

Dkt. 20 at 2.  Plaintiffs' counsel's statement in the application for default was not clearly false at the time the statement was made.[1]  Defendants' arguments to the contrary are

---

[1] Contrary to defendants' argument, it is also not clear that for plaintiffs to have "properly served" defendants, plaintiffs must have received a certificate of service issued by Israel's Central Authority.  As this court indicated in its prior order, the Central Authority's requirement under Article 6 of the Hague Convention to provide adequate certificate of service accords with Federal Rule of Civil Procedure 4(l)(2), which requires service not within any judicial district of the United States to be proved "if made under Rule 4(f)(1), as provided in the applicable treaty or convention."  See Dkt. 41 at 2 n.2.  In other words, the certificate of service from the Israeli Central Authority is the means by which a plaintiff proves service.  This must be read with Rule 4(l)(3), which states "[f]ailure to prove service does not affect the validity of service."  See also 4B Wright & Miller, et al., Fed. Prac. & Proc. Civ. § 1136 (4th ed. 2019) ("[T]here is no reason to believe that proof of service under Rule 4(f) is not controlled by the statements in Rule 4(l)(3) that failure to make proof of service does not affect the validity of the service . . .").  The failure to provide proof of service by obtaining the certificates of service required by the Hague convention does not invalidate service of process.  See, e.g., Burda Media, Inc. v. Viertel, 417 F.3d 292, 301 (2d Cir. 2005) (discussing failure to return a formal certificate and noting that "[c]ases addressing similar issues have held that the failure to comply strictly with the Hague Convention is not automatically fatal to effective service"); Coombs v. Iorio, No. CIV-06-060-SPS, 2008 WL 4104529, at *3 (E.D. Okla. Aug. 28, 2008) (collecting cases).  If plaintiffs' failure to obtain an adequate certificate of service did not unequivocally mean that the service itself was invalid, then their counsel's statement that service was proper was not a misstatement.

unavailing for two reasons.  First, plaintiffs' counsel acknowledged in the application that the Central Authority had not returned the official certificate of service.  In plaintiffs' application for default, counsel stated "[t]he Central Authority in Israel has not yet issued the formal certificate of Hague service despite Plaintiffs' reasonable efforts to obtain the certificate.  And the delay in the issuance of the certificate in this matter is unusual."  Id. at 2 n.1 (citing Dkts. 20-1, 20-3).  This statement demonstrates that plaintiffs and their counsel were transparent with their efforts to properly serve defendants and to identify the technical issues they encountered.[2]

Second, the primary evidence that defendants point to as demonstrating plaintiffs' counsel's knowledge of the false statement—the letter from the Israeli Central Authority—had not reached plaintiffs' counsel at the time they filed the application for default.  Plaintiffs have filed declarations supporting their explanation that the Israeli Central Authority did not send the letter to plaintiffs' counsel of record in this case stating that the certificate of service had not been issued.  Instead, this letter was first sent to the Israeli firm FBR and then to a different U.S. firm (White & Case) but was not forwarded to plaintiffs' counsel of record in this case.  In their reply brief, defendants invite this court to find that plaintiffs' counsel had actual knowledge of the February 25th letter due to the common client of the other two firms that also represent Facebook.  Reply at 8.  This line of reasoning is entirely speculative and, without clear and convincing evidence from defendants, there is no reason to infer that plaintiffs' counsel had actual knowledge of the letter in question.

Finally, the court is not convinced that plaintiffs' counsel engaged in sanctionable conduct by failing to immediately disclose any misrepresentations after defendants'

---

[2] Defendants also place weight on the fact that throughout February 2020 defendants' counsel informed plaintiffs' counsel that their clients had not been served under the Hague Convention.  Dkts. 24-1, 24-2.  Yet, it appears that defendants' counsel first received a formal response from the Israeli Central Authority on March 3, 2020 responding to defendants' counsel's inquiry into the status of service (Dkt. 24-1, ¶ 6), and any statements made in February 2020 by defendants' counsel to plaintiffs' counsel were not supported by the Israeli Central Authority's view that service was incomplete.

counsel notified plaintiffs' counsel on March 3, 2020 of issues with the certificate of service.  Plaintiffs' counsel represent that they engaged in an internal investigation to determine the veracity of defendants' counsel's claims.  They further represent that defendants' counsel did not follow up before filing the motion with the court on March 6, 2020 accusing plaintiffs' counsel of lying.

To summarize, sanctions under Rule 11 and 28 U.S.C. § 1927 are an extraordinary remedy.  Defendants have not demonstrated by clear and convincing evidence that plaintiffs and their counsel's conduct is sanctionable.

## CONCLUSION

For the foregoing reasons, defendants' motion for sanctions is DENIED.

**IT IS SO ORDERED.**

Dated: April 13, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge