COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
TRAVIS LEBLANC (251097) (tleblanc@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
JOSEPH D. MORNIN (307766) (jmornin@cooley.com)
101 California Street, 5th Floor
San Francisco, CA   94111-5800
Telephone:   (415) 693-2000
Facsimile:   (415) 693-2222

DANIEL J. GROOMS (D.C. Bar No. 219124) (admitted *pro hac vice*)
(dgrooms@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
Telephone:   (202) 842-7800
Facsimile:   (202) 842-7899

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**WHATSAPP'S MOTION TO DISQUALIFY DEFENSE COUNSEL BASED ON PRIOR REPRESENTATION IN A SEALED MATTER**<br><br>Date:       May 20, 2020<br>Time:       9:00 a.m.<br>Courtroom: 3, 3rd Floor<br>Judge:      Hon. Phyllis J. Hamilton |

**REDACTED VERSION OF
DOCUMENT SOUGHT TO BE SEALED**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WHATSAPP'S MOTION TO
DISQUALIFY DEFENSE COUNSEL
CASE NO. 4:19-CV-07123-PJH

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION .................................................................................................................. 1

I.       INTRODUCTION ................................................................................................................ 2

II.      BACKGROUND ................................................................................................................. 3

     A.       WhatsApp Service ................................................................................................... 3

     B.       King & Spalding represented WhatsApp in a sealed proceeding involving substantially the same issues presented in this litigation. ........................................... 4

     C.       King & Spalding has denied there is any conflict ................................................... 5

III.     LEGAL STANDARD .......................................................................................................... 6

IV.      ARGUMENT ....................................................................................................................... 8

     A.       This matter is substantially related to the matter in ██████████████ ██████ ...................................................................................................................... 8

     B.       King & Spalding possesses WhatsApp's confidential information that is material to this litigation. ...................................................................................... 13

V.       CONCLUSION .................................................................................................................. 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. Aerojet-General Corp.,*
  86 Cal. App. 4th 1324 (2001) .................................................................................6, 12

*All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.,*
  Nos. C 07-1200, C 07-1207, C 07-1212, C 06-2915, 2008 WL 5484552 (N.D.
  Cal. Dec. 18, 2008) (Hamilton, J.)...........................................................................6

*Asyst Techs., Inc. v. Empak, Inc.,*
  962 F. Supp. 1241 (N.D. Cal. 1997) .........................................................................9

*Beltran v. Avon Products, Inc.,*
  867 F. Supp. 2d 1068 (C.D. Cal. 2012) .....................................................................9

*City & Cty. of S.F. v. Cobra Sols., Inc.,*
  38 Cal. 4th 839 (2006) ...............................................................................7, 8, 9, 11

*Davis v. EMI Grp. Ltd.,*
  No. 12-cv-1602 YGR, 2013 WL 75781 (N.D. Cal. Jan. 4, 2013) ...........................12

*Farris v. Fireman's Fund. Ins. Co.,*
  119 Cal. App. 4th 671 (2004) .....................................................................7, 8, 9, 11

*Flatt v. Super. Ct.,*
  9 Cal. 4th 275 (1994) ...............................................................................6, 7, 8, 12

*Goldberg v. Warner/Chappell Music, Inc.,*
  125 Cal. App. 4th 752 (2005) ..................................................................................12

*H.F. Ahmanson Co. v. Salomon Bros., Inc.,*
  229 Cal. App. 3d 1445 (1991) ..............................................................................7, 13

*Henriksen v. Great Am. Savings & Loan,*
  11 Cal. App. 4th 109 (1992) ....................................................................................14

*Hitachi, Ltd. v. Tatung Co.,*
  419 F. Supp. 2d 1158 (N.D. Cal. 2006) ....................................................................6

*Jessen v. Hartford Casualty Ins. Co.,*
  111 Cal. App. 4th 698 (2003) .................................................................................8, 9

*Kirk v. First Am. Title Ins. Co.,*
  183 Cal. App 4th 776 (2010) ...............................................................................12, 13

-ii-

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*SC Innovations, Inc. v. Uber Techs., Inc.*,
  No. 18-cv-07440-JCS, 2019 WL 1959493 (N.D. Cal. May 2, 2019) ............................9, 10, 11

*Trone v. Smith*,
  621 F.2d 994 (9th Cir. 1980) ...................................................................................................9

*TWiT, LLC v. Twitter Inc.*,
  No. 18-cv-00341-JSC, 2018 WL 2470942 (N.D. Cal. June 1, 2018) ..................................7, 13

*Wu v. O'Gara Coach Co.*,
  38 Cal. App. 5th 1069 (2019) ..................................................................................................7

**Other Authorities**

California Rule of Professional Conduct 1.9 .....................................................................1, 3, 6, 8

Local Rule 11-4(a)(1) .......................................................................................................1, 3, 6, 8

Model Rules Prof. Conduct, Rule 1.9, cmt. 3 .............................................................................7

-iii-

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION**

To All Parties and Their Attorneys of Record:

**PLEASE TAKE NOTICE** that on May 20, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiff WhatsApp Inc. ("WhatsApp") will move to disqualify Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited's counsel of record, King & Spalding LLP. WhatsApp's Motion to Disqualify Defense Counsel Based on Prior Representation in a Sealed Matter ("Motion to Disqualify") is made pursuant to Local Rule 11-4(a)(1) and California Rule of Professional Conduct 1.9 and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Jacob Sommer, Travis LeBlanc, and Nitin Gupta, all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing or otherwise.

**STATEMENT OF RELIEF SOUGHT**

WhatsApp requests that the Court disqualify King & Spalding LLP based on a conflict of interest in violation of Local Rule 11-4(a)(1) and California Rule of Professional Conduct 1.9.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether King & Spalding is violating Local Rule 11-4(a)(1) and California Rule of Professional Conduct 1.9 because this litigation is substantially related to a previous matter in which King & Spalding represented WhatsApp.

2.      Whether King & Spalding is violating Local Rule 11-4(a)(1) and California Rule of Professional Conduct 1.9 because King & Spalding possesses WhatsApp's confidential information that is material to this litigation.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-1-

WHATSAPP'S MOTION TO
DISQUALIFY DEFENSE COUNSEL
CASE NO. 4:19-CV-07123-PJH

1    **I.    INTRODUCTION**

2            King & Spalding is violating a bedrock requirement of attorney loyalty:  the duty to avoid

3    switching sides and opposing a client that it once represented.  Previously, King & Spalding

4    represented *WhatsApp* in a matter that involved ████████████████████

5    ████████████████████████████████████████████.  In that representation, King

6    & Spalding learned detailed, confidential information about ██████████████████

7    ███████████████.  Now, however, King & Spalding has turned the tables so it can act on behalf

8    of WhatsApp's *adversary* on a substantially related matter, one in which WhatsApp seeks to redress

9    an unlawful access into WhatsApp's servers and technology.  Any attorney defending this suit would

10   love to have insight into how WhatsApp's platform and systems work.  And King & Spalding has that

11   insight—because it was once WhatsApp's counsel.  The law does not countenance that form of

12   revolving-door representation.  WhatsApp called this conflict to King & Spalding's attention, but the

13   firm has declined to step aside—or even, as of this filing—return WhatsApp's files to it.  Because

14   King & Spalding's representation of Defendants violates the law—transforming itself from

15   WhatsApp's trusted advisor to its fierce adversary—King & Spalding must be disqualified.

16           Starting in approximately December 2015, King & Spalding represented WhatsApp in

17   connection with a sealed proceeding in ████████████████████████████████

18   ████████████████████████████████████████████████████████

19   █████.[1]  During that representation, King & Spalding received, had access to, and communicated

20   extensively with WhatsApp about highly confidential information concerning ██████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ███████████████████████████████████.  This same information is front and center

24   in this case.  Here, Defendants, unable to break WhatsApp's end-to-end encryption for messages in

25   transit, circumvented it by reverse engineering and attacking the WhatsApp app.

26

27

28   _____

[1] The matter in ██████████████████████ remains under seal.  *See* WhatsApp's Request for Judicial Notice, filed concurrently herewith.

King & Spalding's participation in the prior representation was also substantial; its attorneys were involved in all aspects of the sealed proceeding.  For example, King & Spalding participated in multiple calls with WhatsApp, helped draft correspondence on WhatsApp's behalf ███████████, and ████████████████████████████████████████████.  All of these tasks required the firm's attorneys to have knowledge of the confidential technical aspects of WhatsApp's platform.

Given the substantial overlap between the factual issues presented in both matters, King & Spalding's representation of Defendants in this case violates Local Rule 11-4(a)(1) and California Rule of Professional Conduct 1.9.  Confidential information that WhatsApp disclosed to King & Spalding is at risk of being disclosed to Defendants and used against WhatsApp in this litigation.  Neither the Local Rules nor well-established case law permits such a result.  Put simply, no client would ever expect to reveal the proprietary and nonpublic details of its product to its lawyers only to find those lawyers acting adversely to it a few years later on a case involving the same technology and on behalf of a client that marketed and sold the ability to attack and exploit its network.

## II.    BACKGROUND

### A.    WhatsApp Service

WhatsApp provides an end-to-end encrypted communication service available on mobile devices (the "WhatsApp Service").  Declaration of Nitin Gupta ("Gupta Decl.") ¶ 2.  Users can install the WhatsApp app on a mobile device to use the WhatsApp Service and can also access the WhatsApp service through a desktop website.  *Id.*  The app is a software program, also referred to as the client software, which runs on a user's device.[2]  *See id.*

The WhatsApp Service allows calls or messages to be made or sent from a user's device to any other WhatsApp user.  *See* Gupta Decl. ¶ 3.  These communications are fully encrypted on the user's device and transmitted through WhatsApp's servers in encrypted form, before being decrypted on the receiving user's device.  *See id.*  WhatsApp's encryption software on clients and servers, as well as its

---

[2] Client software means software that runs on a device that accesses a server, *i.e.*, a computer that provides information, services, or other information to another, local device—the client.  *See* Gupta Decl. ¶ 2.  Here, a user's mobile device or computer (the client) has software (the client software) to connect to WhatsApp's servers.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-3-

WHATSAPP'S MOTION TO
DISQUALIFY DEFENSE COUNSEL
CASE NO. 4:19-CV-07123-PJH

1  message-routing systems, have operated in broadly the same manner since at least early 2016. *See id.*

2  ¶ 4.  WhatsApp has augmented its encryption software and message-routing systems with newer

3  features. *See id.*

4        **B.**    **King & Spalding represented WhatsApp in a sealed proceeding involving**

5                **substantially the same issues presented in this litigation.**

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████  At the time, WhatsApp was in the

10  process of implementing end-to-end encryption of communications sent on its platform, ██████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████

16        WhatsApp was jointly represented by King & Spalding and ZwillGen PLLC. *See* Sommer

17  Decl. ¶¶ 2-3; *see also* Declaration of Travis LeBlanc ("LeBlanc Decl."), Ex. B.   Specifically,

18  Christopher Wray, Catherine O'Neil, Nick Oldham, and Paul Mezzina of King & Spalding, as well as

19  Marc Zwillinger and Jacob Sommer of ZwillGen PLLC, were actively involved in the representation

20  of WhatsApp.  *See* Sommer Decl. ¶ 3; *see also* LeBlanc Decl. ¶ 4.  Wray and Oldham are no longer

21  with King & Spalding and O'Neil has passed away, but Mezzina is now a partner at the firm.  King &

22  Spalding continues to possess the files from its representation of WhatsApp. *See* LeBlanc Decl. ¶ 13.

23        King & Spalding was involved in nearly every aspect of the previous proceeding, which

24  required its lawyers to review and analyze WhatsApp's confidential client information. *See* Sommer

25  Decl. ¶ 12.  For example, King & Spalding formulated case strategy and helped ████████████

26  ████████████████████████████████████████████████████████

27  ――――――――――――――――――――

28  [3] ████████████████████████████████████████████████████████

Cooley LLP
Attorneys At Law
San Francisco

-4-

WhatsApp's Motion to
Disqualify Defense Counsel
Case No. 4:19-cv-07123-PJH

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████  required King & Spalding to understand WhatsApp's ████████████████

6  ████████████████████████████████████████████████

7  ████████████████  *See id.*  King & Spalding also participated in multiple calls in which these

8  details were discussed and ████████████████████████████████████████  *See*

9  *id.* ¶ 12.

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ██████████████████████████████████████

20  **C.      King & Spalding has denied there is any conflict.**

21  King & Spalding entered its appearance in this case on March 6, 2020.  *See* ECF No. 23; *see*

22  *also* ECF No. 26.  On March 18, 2020, counsel for Plaintiffs in this case contacted King & Spalding

23  regarding WhatsApp's concerns about the conflict.  *See* LeBlanc Decl. ¶ 2, Ex. A.  The next day,

24  Robert Thornton, King & Spalding's General Counsel, called Plaintiffs' counsel, indicating that King

25  & Spalding was reviewing the conflict issue and anticipated that it could reach a decision by the week

26  ───────────────────

27  [4] WhatsApp can make these letters available to the Court for *in camera* review.

28  [5] WhatsApp can also make the Government's sealed filing ████████████████████
    available for *in camera* review.

Cooley LLP
Attorneys At Law
San Francisco

-5-

WhatsApp's Motion to
Disqualify Defense Counsel
Case No. 4:19-cv-07123-PJH

1   of March 23, 2020.  *See id.* ¶ 3.  On Friday, March 27, 2020, Mr. Thornton reported that he was still

2   investigating the prior representation and needed more time to reach a decision.  *See id.* ¶ 6.  As an

3   alternative to withdrawing, Mr. Thornton proposed implementing an ethical wall.  *See id.*  WhatsApp

4   rejected this offer.  *See id.* ¶ 7.  Subsequently, on Tuesday, March 31, 2020, King & Spalding informed

5   Plaintiffs' counsel that they did not intend to withdraw.  *See id.* ¶ 9.

6          WhatsApp has repeatedly asked that King & Spalding return its client files.  *See* LeBlanc Decl.

7   ¶¶ 2, 9, 10, 11.  While King & Spalding has returned only one document to date, a review of emails

8   exchanged between WhatsApp and King & Spalding attorneys, which were in WhatsApp's

9   possession, shows that King & Spalding was deeply involved in discussions regarding ██████

10  ████████████████████████████████████████████████████████████████████████

11  ██████████████████████████████████—the very subject matter of the current case.  *See id.* ¶¶ 13-14.

12  ## III.   LEGAL STANDARD

13         Federal courts in this district apply California law when determining whether to disqualify

14  counsel due to a conflict of interest.  *All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, Nos.

15  C 07-1200, C 07-1207, C 07-1212, C 06-2915, 2008 WL 5484552, at *4 (N.D. Cal. Dec. 18, 2008)

16  (Hamilton, J.) ("Motions to disqualify counsel are decided under state law."); *see also Hitachi, Ltd. v.*

17  *Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) (same); Civ. L.R. 11-4(a)(1).  California

18  Rule of Professional Conduct 1.9 (formerly Rule 3-310(E)) prohibits an attorney from engaging in

19  successive representations where the attorney possesses the former client's confidential information

20  and that information is material to the later, adverse representation.[6]  This rule "must be vigorously

21  applied to protect a former client's legitimate expectations of loyalty and trust."  *Adams v. Aerojet-*

22  *General Corp.*, 86 Cal. App. 4th 1324, 1339-40 (2001) (applying former Rule 3-310(E)); *see also*

23  *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994) ("Where the potential conflict is one that arises from

24  ────────────

25  [6]  Rule 1.9 provides, "A lawyer who has formerly represented a client in a matter shall not thereafter
    represent another person in the same or a substantially related matter in which that person's interests

26  are materially adverse to the interests of the former client unless the former client gives informed
    written consent."  *See* Cal. R. of Prof. Conduct Rule 1.9(a).  That Rule further establishes that "[a]

27  lawyer . . . whose present or former firm has formerly represented a client in a matter shall not
    thereafter[] use information protected by Business and Professions Code section 6068, subsection (e)

28  and rule 1.6 acquired by virtue of the representation of the former client to the disadvantage of the
    former client . . . ."  *Id.*  Rule 1.9(c)(1).

the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*."). Courts employ two tests when assessing successive representations. *TWiT, LLC v. Twitter Inc.*, No. 18-cv-00341-JSC, 2018 WL 2470942, at *3, *5 (N.D. Cal. June 1, 2018). Each test on its own is sufficient to establish a conflict of interest. *Id.*

**First**, where the two representations have a "substantial relationship," the attorney may not "serv[e] as counsel to a successive client in litigation adverse to the interests of the first client . . . ." *Flatt*, 9 Cal. 4th at 283. When determining whether the representations have a substantial relationship, courts examine whether the attorney's relationship with the former client was "direct and personal" and "whether there is a connection between the two successive representations . . . ." *Farris v. Fireman's Fund. Ins. Co.*, 119 Cal. App. 4th 671, 679 (2004). In other words, the two representations have a substantial relationship where "the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation." *City & Cty. of S.F. v. Cobra Sols., Inc.*, 38 Cal. 4th 839, 847 (2006). Once a substantial relationship is shown, "the attorney is presumed to possess confidential information," and "the former client need not prove that the attorney possess actual confidential information." *Id.* This presumption operates to "avoid[] the ironic result of disclosing the former client's confidences and secrets through an inquiry into the actual state of the lawyer's knowledge . . . ." *H.F. Ahmanson Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1453 (1991).

**Second**, regardless of whether the former client shows a substantial relationship between the successive representations, disqualification is required if the former client can "prove the lawyer **in fact** obtained such [material confidential] information." *TWit*, 2018 WL 2470942, at *5 (internal quotation and citation omitted) (emphasis added); *see also H.F. Ahmanson*, 229 Cal. App. 3d at 1452; *Wu v. O'Gara Coach Co.*, 38 Cal. App. 5th 1069, 1083 (2019) ("[K]nowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude [a successive] representation.") (quoting ABA Model Rules Prof. Conduct, Rule 1.9, cmt. 3).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-7-

WHATSAPP'S MOTION TO
DISQUALIFY DEFENSE COUNSEL
CASE NO. 4:19-CV-07123-PJH

If a conflict exists between two successive representations—whether through the existence of a substantial relationship or through the actual possession of confidential information—the conflict is imputed to the entire law firm. *See Flatt*, 9 Cal. 4th at 283 ("Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, . . . the disqualification extends vicariously to the entire firm.").

## IV.   ARGUMENT

King & Spalding is engaged in an impermissible successive representation in violation of Local Rule 11-4(a)(1) and California Rule of Professional Conduct 1.9. Specifically, King & Spalding is prohibited from representing Defendants in this case for two reasons, each independently sufficient: (1) this litigation is substantially related to the proceeding in ███████████████, and (2) attorneys at King & Spalding obtained WhatsApp's confidential information during ███████ ███████████ representation and that information is material to the present dispute. Because this conflict is imputed to the entire firm, WhatsApp respectfully requests that the Court grant its motion to disqualify King & Spalding from representing Defendants in this case.

### A.   This matter is substantially related to the matter in ████████████ ██████

When determining whether a substantial relationship exists, courts focus on the relationship of the attorney to the former client and "whether there is a connection between the two successive representations . . . ." *Farris*, 119 Cal. App. 4th at 679 (quoting *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 710 (2003)). Where "the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues," a substantial relationship exists. *Jessen*, 111 Cal. App. 4th at 713. Once a court finds a substantial relationship exists, the attorney is presumed to possess the former client's information, and disqualification is required. *Cobra*, 38 Cal. 4th at 847. Here, the two representations are substantially related because King & Spalding directly represented WhatsApp in a matter that involved highly confidential information and trade secrets that are material to this case. *See Farris*, 119 Cal. App. 4th

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
-8-
WHATSAPP'S MOTION TO
DISQUALIFY DEFENSE COUNSEL
CASE NO. 4:19-CV-07123-PJH

1    at 679 (looking to whether the attorney's relationship with the former client was "direct and personal"

2    and "whether there is a connection between the two successive representations").

3        To begin, the King & Spalding attorneys involved in the previous ████████ had a "direct"

4    relationship with WhatsApp because they personally provided WhatsApp with legal advice in the

5    ██████████████████ matter.  *See* Sommer Decl. ¶¶ 3-4, 8-12; *Jessen*, 111 Cal. App. 4th at 709

6    (relationship is direct where "the lawyer was personally involved in providing legal advice and

7    services to the former client").

8        As such, the only question is whether "the subjects of the prior representation are such as to

9    'make it likely the attorney acquired confidential information' that is relevant and material to the

10   present representation."  *Cobra*, 38 Cal. 4th at 847 (citation omitted); *see also Farris*, 119 Cal. App.

11   4th at 679.  They are.  Indeed, "[t]he substantial relationship test does not require that the issues in the

12   two representations be identical."  *Trone v. Smith*, 621 F.2d 994, 1000 (9th Cir. 1980).  Instead, the

13   substantial relationship test requires only that the subject matters of the two representations are such

14   that the attorney was likely to have acquired information that is "directly at issue in, or ha[s] some

15   critical importance to, the second representation."  *Farris*, 119 Cal. App. 4th at 680.   When two

16   matters involve the details of a client's technology, courts routinely find that the subject matters of the

17   litigations are sufficiently similar to conclude that a substantial relationship exists and disqualify

18   counsel from handling the new representation adverse to their former client.  *See Asyst Techs., Inc. v.*

19   *Empak, Inc.*, 962 F. Supp. 1241, 1242 (N.D. Cal. 1997) (collecting cases in the patent context); *see*

20   *also SC Innovations, Inc. v. Uber Techs., Inc.*, No. 18-cv-07440-JCS, 2019 WL 1959493, at *7-9 (N.D.

21   Cal. May 2, 2019) (matters substantially related in part because same product was at issue); *Beltran v.*

22   *Avon Products, Inc.*, 867 F. Supp. 2d 1068, 1082 (C.D. Cal. 2012) (matters were substantially related

23   in part because both matters required knowledge of moving party's testing protocols for beauty

24   products).

25       *SC Innovations* is particularly instructive here.  There, the court considered a motion by Uber

26   to disqualify SC Innovations, Inc.'s firm—Quinn Emanuel Urquhart & Sullivan LLP—on the basis

27   that it had previously represented Uber in a substantially related matter.  2019 WL 1959493, at *1.

28   Specifically, Quinn Emanuel had defended Uber against antitrust claims brought by taxi operators.  *Id.*

at *2.  SC Innovations argued that the representations were not substantially related because the prior representation involved claims brought by "traditional taxi companies" and the current representation involved a claim brought by a "ride-hailing app[]."  *Id.* at *6.  The court rejected that argument and concluded the representations were substantially related, reasoning in part that the present case "and the taxi cases all relate[d] to the same services provided by Uber," "required at least some degree of discovery into and analysis of the same Uber operations," and involved "the same class of Uber products . . . ."  *Id.* at *7, *9.

That logic applies here because both representations involve ███████████████████████

██████████████████████████████████████████████████████████████.  The prior representation in which King & Spalding represented WhatsApp involved ███████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████.  *See* Sommer Decl. ¶¶ 8-12.  The current representation has King & Spalding representing Defendants ***against*** WhatsApp on claims that Defendants, in order to circumvent WhatsApp's encryption, exploited WhatsApp's app and platform to unlawfully compromise the targeted devices of WhatsApp users.  Put simply, WhatsApp's technology and systems are at the heart of ██████████████ current representations.

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████  Plaintiffs allege in this case that Defendants reverse engineered the WhatsApp app and developed a program that enabled them to emulate legitimate WhatsApp network traffic.  *See, e.g.*, Compl. ¶¶ 35-45.  Plaintiffs further allege that the Defendants' sophisticated program was built to exploit specific components of WhatsApp's network protocols and code and designed to conceal their malicious code by masking it as a part of a legitimate message.  *See id.* ¶¶ 35-45, 54.  Plaintiffs further allege that these malicious transmissions sent by Defendants through

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-10-

WHATSAPP'S MOTION TO
DISQUALIFY DEFENSE COUNSEL
CASE NO. 4:19-CV-07123-PJH

1   WhatsApp's servers exploited a vulnerability in the WhatsApp app to allow NSO to cause a user's

2   device to run an unauthorized program. *See id.* ¶¶ 25, 35-37, 44.  All of this had the ultimate goal of

3   capturing communications and data on the mobile phones of WhatsApp's users. *See id.* ¶¶ 1, 24.

4            This Court should not allow King & Spalding to represent Defendants, who are directly adverse

5   to King & Spalding's former client WhatsApp, in a case that involves the very technology that

6   WhatsApp previously hired King & Spalding to analyze and protect.  King & Spalding's duty in the

7   first case was to ensure that ███████████████████████████████████████████████████

8   ███████████████████████████████████████████ WhatsApp's software and technology,

9   which would have jeopardized the high level of confidentiality the app normally affords to user

10  communications.  Now, in this case, King & Spalding seeks to represent Defendants, who exploited

11  that very same WhatsApp software and technology to unlawfully access protected user

12  communications.  *See* Compl., Ex. 10.  In these circumstances, there is no question that "the general

13  features of the matters involved" support a reasonable inference that WhatsApp imparted confidential

14  information to King & Spalding that "could be used to adverse effect" in this litigation.  *Farris*, 119

15  Cal. App. 4th at 681.[7]  The relevance and utility of the confidential information gleaned from King &

16  Spalding's prior representation of WhatsApp is manifest: Defendants' counsel will need to evaluate

17  the credibility of the Complaint's allegations that Defendants exploited WhatsApp's app, software,

18  network architecture, and severs to surveil targeted users unlawfully.  That inquiry inevitably would

19  be facilitated by King & Spalding's confidential, insider knowledge about WhatsApp's proprietary

20  technology.  As such, this litigation is substantially related to the matter in ██████████████

21  ████████, and the Court should accordingly presume that the King & Spalding attorneys who

22  represented WhatsApp have confidential information regarding ████████████████████.

23  *Cobra*, 38 Cal. 4th at 847.

24

25  ────────────────────────

26  [7] ███████████████████████████████████████████████████████████████████

27  ██████████████████████████████████████████ In fact, courts have rejected arguments that

    representations are not substantially related because there is imperfect overlap between the exact

28  parties involved in the matters are different; instead, courts examine whether, as here, the underlying

    technology is the same.  *See SC Innovations*, 2019 WL 1959493, at *7, *9.

In turn, the Court must impute this conflict to the entire firm. *See Flatt*, 9 Cal. 4th at 283 (imputing conflict where substantial relationship existed). Because Mr. Mezzina represented WhatsApp and continues to practice at King & Spalding, *see* LeBlanc Decl. ¶ 4, the inquiry ends, and King & Spalding should be disqualified from representing Defendants in this case. *Adams*, 86 Cal. App. 4th at 1333 ("It is now firmly established that where the attorney is disqualified from representation due to an ethical conflict, the disqualification extends to the entire firm.").

Even if that were not the case, the Court should impute Ms. O'Neil, Mr. Wray, and Mr. Oldham's conflicts to the entirety of the King & Spalding firm. Where some conflicted attorneys have since left a firm, courts still impute the conflict where (1) the representations are substantially related, and (2) any attorney remaining at the firm has protected information that is material to the subsequent representation. *See Goldberg v. Warner/Chappell Music, Inc.*, 125 Cal. App. 4th 752, 765 (2005). Those requirements are satisfied here. Indeed, a court in this district has in fact imputed a conflict to an entire firm in a situation almost identical to this one. *See Davis v. EMI Grp. Ltd.*, No. 12-cv-1602 YGR, 2013 WL 75781, at *4-5 (N.D. Cal. Jan. 4, 2013). In *Davis*, the court imputed a conflict to the entire firm where the lead attorneys on the prior representation had since left the firm because attorneys who had performed work for the prior client remained at the firm and the firm still possessed the former client's files. *Id.* at *4-5. To emphasize, King & Spalding has acknowledged that Mr. Mezzina remains at the firm and that it still possesses the entire files for its representation of WhatsApp, which files necessarily include confidential information material to the current litigation. *See* LeBlanc Decl. ¶ 3. And the fact that a firm retains a former client's files supports imputing the conflict to the entire firm. *See Davis*, 2013 WL 75781, at *5.

King & Spalding may argue that its untimely offer to impose an ethical wall is sufficient to cure this conflict. It is not. An ethical wall cannot prevent the imputation of a conflict unless two basic requirements are satisfied. First, "the screen must be timely imposed; a firm must impose screening measures *when the conflict first arises*." *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App 4th 776, 810 (2010) (emphasis added). Second, "an effective wall involves the imposition of *preventive measures* to guarantee that [confidential] information will not be conveyed." *Id.* Here, King & Spalding's proposed ethical wall, even if implemented, would be insufficient to rebut the imputation

of the conflict because it was not timely imposed and thus necessarily would not have prevented the

King & Spalding lawyers representing Defendants in this litigation from obtaining information after

their retention and prior to imposition of the ethical wall.  *See* LeBlanc Decl. ¶ 6 (ethical wall was not

in place as of March 27, 2020); *see also Kirk*, 183 Cal. App. 4th at 810 ("[S]creening should be

implemented *before undertaking the challenged representation*. . . . It is not sufficient to simply

produce declarations stating that confidential information was not conveyed . . . .") (emphasis added).

As such, the conflict at issue should be imputed to all of King & Spalding.

**B.    King & Spalding possesses WhatsApp's confidential information that is material to this litigation.**

Even if the matters were not substantially related, disqualification is required if the former

client can "prove the lawyer *in fact* obtained [the former client's confidential] information." *TWiT*,

2018 WL 2470942, at *5; *see also H.F. Ahmanson*, 229 Cal. App. 3d at 1452 ("A former client may

seek to disqualify a former attorney from representing an adverse party by showing the former attorney

actually possesses confidential information adverse to the former client").  WhatsApp has made that

showing here. ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████   In other words, based on its previous representation of WhatsApp, King &

Spalding has confidential knowledge of how WhatsApp's systems work, including but not limited to:

████████████████████████████████████████████████████

███████████████████████████████████████████.

As noted, this information is at the heart of the present litigation, which centers on Defendants'

circumvention of WhatsApp's encrypted platform to gain unauthorized access to users' private

communications.  And this information is still in King & Spalding's possession.  *See* LeBlanc Decl.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-13-

WHATSAPP'S MOTION TO
DISQUALIFY DEFENSE COUNSEL
CASE NO. 4:19-CV-07123-PJH

¶¶ 3-4 (explaining that King & Spalding still possesses WhatsApp's files and that Mr. Mezzina is presently a partner at King & Spalding).  As such, the Court should also impute this conflict to the entire firm.  *See Henriksen v. Great Am. Savings & Loan*, 11 Cal. App. 4th 109, 117 (1992) (imputing conflict where attorney had obtained confidential information in prior representation); *see supra* pp. 13-14 & n.4 (explaining why conflict should be imputed here and why proposed ethical wall is insufficient to rebut the imputation).  Accordingly, King & Spalding should be disqualified for the additional reason that it possesses WhatsApp's confidential information, which is material to this dispute.

## V.   CONCLUSION

In sum, King & Spalding is engaged in an impermissible successive representation for each of two independently sufficient reasons: it previously represented WhatsApp in a matter substantially related to the present litigation, and it otherwise possesses WhatsApp's confidential information that is material to this dispute.  For these reasons, WhatsApp respectfully requests that the Court grant its motion to disqualify King & Spalding from representing Defendants in this case.

Dated: April 10, 2020

Respectfully submitted,

COOLEY LLP

/s/ *Michael G. Rhodes*
Michael G. Rhodes

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-14-

WHATSAPP'S MOTION TO
DISQUALIFY DEFENSE COUNSEL
CASE NO. 4:19-CV-07123-PJH