JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
 *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:    (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES
LIMITED and Q CYBER TECHNOLOGIES LIMITED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>         Plaintiffs,<br><br>      v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>        Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(2), 12(B)(6), AND 12(B)(7)**<br><br>Date:    May 27, 2020<br>Time:   9:00 a.m.<br>Ctrm:   3<br><br>Action Filed:  10/29/2019 |

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 2

    A.  The Court Lacks Personal Jurisdiction Over NSO ....................................... 2

        1.  NSO Did Not Consent to Personal Jurisdiction ................................... 2

        2.  The Court Lacks Specific Jurisdiction Over NSO ................................ 4

        3.  Personal Jurisdiction Would Be Unreasonable .................................... 8

        4.  NSO Is Not Subject to Jurisdiction Under Rule 4(k)(2) ...................... 8

    B.  The Court Lacks Subject Matter Jurisdiction Because NSO Has Derivative
       Foreign Sovereign Immunity ........................................................................ 9

    C.  NSO's Customers Are Indispensable Parties Under Rule 19 ..................... 11

    D.  Plaintiffs Cannot State a CFAA Claim Because NSO Did Not Access
       WhatsApp's Servers Without Authorization ............................................... 12

    E.  Plaintiffs Cannot State a Trespass to Chattels Claim.................................. 14

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,

5

    751 F.3d 796 (7th Cir. 2014) .................................................................................6

6

*Alicog v. Kingdom of Saudi Arabia*,

7

    79 F.3d 1145 (5th Cir. 1996) .................................................................................10

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,

8

    94 F.3d 586 (9th Cir. 1996) .................................................................................9

9

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,

10

    1 F.3d 848 (9th Cir. 1993) .................................................................................8

11

*Barapind v. Rep. of India*,

    844 F.3d 824 (9th Cir. 2016) .................................................................................10

12

*Barnes v. Campbell Soup Co.*,

13

    2013 WL 5530017 (N.D. Cal. July 25, 2013)...........................................................1

14

*Boschetto v. Hansing*,

15

    539 F.3d 1011 (9th Cir. 2008) .................................................................................4

16

*Bosh v. Shed Media US Inc.*,

    2011 WL 13220335 (C.D. Cal. Aug. 16, 2011)........................................................4

17

*Bristol-Myers Squibb Co. v. Super. Ct.*,

18

    137 S. Ct. 1773 (2017) .................................................................................5

19

*Broidy Cap. Mgmt. LLC v. Muzin*,

20

    2020 WL 1536350 (D.D.C. Mar. 31, 2020)..........................................................10

21

*Broidy Cap. Mgmt., LLC v. Qatar*,

    2018 WL 9943551 (C.D. Cal. Aug. 22, 2018)........................................................7

22

*Burger King v. Rudzewicz*,

23

    471 U.S. 462 (1985).................................................................................4

24

*Butters v. Vance Int'l, Inc.*,

25

    225 F.3d 462 (4th Cir. 2000) .................................................................................10

26

*CompuServe Inc. v. Cyber Promotions, Inc.*,

    962 F. Supp. 1015 (S.D. Ohio 1997) ................................................................14, 15

27

*CompuServe, Inc. v. Patterson*,

28

    89 F.3d 1257 (6th Cir. 1996) .................................................................................7

*Core-Vent Corp. v. Nobel Indust. AB*,
    11 F.3d 1482 (9th Cir. 1993) ...................................................................................8

*Coupons, Inc. v. Stottlemire*,
    2008 WL 3245006 (N.D. Cal. July 2, 2008) ..........................................................15

*Craigslist Inc. v. 3Taps Inc.*,
    942 F. Supp. 2d 962 (N.D. Cal. 2013) ....................................................................15

*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ...................................................................7

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
    888 F.3d 640 (4th Cir. 2018) .................................................................................10

*DEX Sys., Inc. v. Deutsche Post AG*,
    727 F. App'x 276 (9th Cir. 2018) ............................................................................7

*DFSB Kollective Co. v. Bourne*,
    897 F. Supp. 2d 871 (N.D. Cal. Sept. 13, 2012) ..................................................5, 6

*Doğan v. Barak*,
    932 F.3d 888 (9th Cir. 2019) .................................................................................10

*Estate of Burkhart v. United States*,
    2008 WL 4067429 (N.D. Cal. Aug. 26, 2008) .........................................................1

*Facebook, Inc. v. ConnectU LLC*,
    2007 WL 2326090 (N.D. Cal. Aug. 13, 2007) .........................................................7

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ...............................................................................13

*Facebook, Inc. v. Rankwave Co.*,
    No. 4:19-cv-3738 (N.D. Cal. Nov. 14, 2019) .......................................................3, 4

*Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*,
    103 F.3d 888 (9th Cir. 1996) ...................................................................................5

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
    2020 WL 1244918 (N.D. Cal. Mar. 16, 2020) .........................................................7

*Georgalis v. Facebook, Inc.*,
    324 F. Supp. 3d 955 (N.D. Ohio 2018) ...................................................................5

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) .................................................................................8

*Google, Inc. v. Eolas Tech. Inc.*,
    2014 WL 2916621 (N.D. Cal. June 24, 2014) .........................................................4

*GreatFence.com, Inc. v. Bailey,*
  726 F. App'x 260 (5th Cir. 2018) ...................................................................6

*Guar. Rate, Inc. v. Conn,*
  264 F. Supp. 3d 909 (N.D. Ill. 2017) ............................................................7

*hiQ Labs, Inc. v. LinkedIn Corp.,*
  938 F.3d 985 (9th Cir. 2019) ..................................................................13, 14

*Hoffman v. Michael A. Rolf C.P.A.,*
  2019 WL 2451007 (N.D. Cal. June 12, 2019) .......................................4, 7, 8

*Holland Am. Line Inc. v. Wartsila N.A., Inc.,*
  485 F.3d 450 (9th Cir. 2007) ......................................................................8, 9

*Hotmail Corp. v. Van$ Money Pie, Inc.,*
  1998 WL 388389 (N.D. Cal. Apr. 16, 1998) ................................................15

*Hungerstation LLC v. Fast Choice LLC,*
  2020 WL 137160 (N.D. Cal. Jan. 13, 2020) .........................................6, 7, 8, 9

*IAND8, Inc. v. W. 54th LLC,*
  2018 WL 4961557 (C.D. Cal. Jan. 26, 2018) .................................................7

*In re Estate of Marcos,*
  25 F.3d 1467 (9th Cir. 1994) .......................................................................10

*Intel Corp. v. Hamidi,*
  30 Cal. 4th 1342 (2003) .........................................................................14, 15

*Ivey v. Lynch,*
  2018 WL 3764264 (M.D.N.C. Aug. 8, 2018) ...............................................10

*Jedson Engineering, Inc. v. Spirit Construction Services, Inc.,*
  720 F. Supp. 2d 904 (S.D. Ohio 2010) .........................................................15

*Kairy v. SuperShuttle Int'l,*
  660 F.3d 1146 (9th Cir. 2011) .....................................................................14

*Karp v. Buchem,*
  2018 WL 4944995 (C.D. Cal. Mar. 23, 2018)................................................7

*LVRC Holdings LLC v. Brekka,*
  581 F.3d 1127 (9th Cir. 2009) ...........................................................12, 13, 14

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
  514 U.S. 52 (1995)..........................................................................................2

*Micron Tech., Inc. v. United Microelec. Corp.,*
  2019 WL 1959487 (N.D. Cal. May 2, 2019) .................................................9

*Microsoft Corp. v. Does 1-18*,
  2014 WL 13238677 (E.D. Va. Apr. 2, 2014) ............................................................15

*Moriah v. Bank of China Ltd.*,
  107 F. Supp. 3d 272 (S.D.N.Y. 2015)......................................................................10

*Netgear, Inc. v. Redzone Wireless, LLC*,
  2017 WL 2351359 (N.D. Cal. May 31, 2017) .............................................................4

*Panavision Int'l, L.P v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) .....................................................................................7

*Philippines v. Pimentel*,
  553 U.S. 851 (2008)...................................................................................................12

*Sachs v. Rep. of Austria*,
  737 F.3d 584 (9th Cir. 2013) (en banc) ....................................................................10

*Samantar v. Yousuf*,
  560 U.S. 305 (2010).....................................................................................................9

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) .....................................................................................1

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .......................................................................................1

*Seattle Sperm Bank, LLC v. Cryobank Am., LLC*,
  2018 WL 3769803 (W.D. Wash. Aug. 9, 2018)..........................................................7

*Skapinetz v. CoesterVMS.com, Inc.*,
  2019 WL 2579120 (D. Md. June 24, 2019) ...............................................................15

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
  277 F. Supp. 3d 521 (S.D.N.Y. 2017)..........................................................................9

*Summit Ent't, LLC v. Santia*,
  2014 WL 12577430 (C.D. Cal. June 24, 2014) .........................................................15

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
  2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) .............................................................7

*Thrifty-Tel, Inc. v. Bezenek*,
  46 Cal. App. 4th 1559 (1996) ....................................................................................15

*Twitch Interactive, Inc. v. Does 1-100*,
  2019 WL 3718582 (N.D. Cal. Aug. 7, 2019) .............................................................15

*United States v. Morris*,
  928 F.2d 504 (2d Cir. 1991)......................................................................................14

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) .................................................................13, 14

*United States v. Phillips*,
    477 F.3d 215 (5th Cir. 2007) ........................................................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014).............................................................................6, 7, 9

*Yearsley v. W.A. Ross Constr. Co.*,
    309 U.S. 18 (1940)........................................................................................11

*Yousuf v. Samantar*,
    699 F.3d 763 (4th Cir. 2012) .......................................................................10

*Yousuf v. Samatar*,
    552 F.3d 371 (4th Cir. 2009) .........................................................................9

**Other Authorities**

Fed. R. Civ. P. 19(a)(1)(B) .................................................................................11

Fed. R. Evid. 201(b)(2) .........................................................................................5

Jack Smith IV, *Here's How to Get Around the Paywalls of the New York Times,
    Wall Street Journal and More*, Observer (Jan. 8, 2015, 2:22 p.m.),
    https://bit.ly/2YedZrD.................................................................................13

Restatement (Second) of the Foreign Relations Law of the United States § 66(f)
    (1965).........................................................................................................10

## I.   INTRODUCTION

Reading Plaintiffs' Complaint along with Defendants' ("NSO's") uncontradicted evidence, there is no dispute the alleged use of Pegasus to message 1400 foreign WhatsApp users in April and May 2019 was done by sovereign governments in foreign countries. Nor is there a dispute that NSO's Pegasus software did not damage WhatsApp's servers, because each message flowed through the system from sender to intended recipient, just like any other message. For all their hyperbole and technical jargon, Plaintiffs submit no evidence to refute this and all but concede that they *have* no evidence supporting their false allegations that NSO operated the Pegasus software. (Opp. 8.) The evidence they *do* have shows otherwise. (Mot. 2 n.1, 6–7 (citing exhibits to Complaint).) NSO is a highly-regulated enterprise that provides government agencies an essential tool to monitor terrorists and criminals, analogous to companies that supply the U.S. military with aircraft, weapons, and cyber-intelligence tools.

Plaintiffs' Opposition depends on ignoring Defendants' evidence and rewriting the Complaint. Plaintiffs mistakenly argue that their allegations must be accepted as true under Rule 12(b). (Opp. at 2). But if they had wanted to contest NSO's motions under Rules 12(b)(1), 12(b)(2), and 12(b)(7), Plaintiffs needed to contradict NSO's evidence through their own affidavits.[1] "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence . . . the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden." *Savage*, 343 F.3d at 1039 n.2. Plaintiffs did not do so. To the extent Plaintiffs make new assertions of fact, they may not amend their Complaint through unsupported statements in their Opposition; they must file an amended complaint. *Barnes v. Campbell Soup Co.*, 2013 WL 5530017, at *2 (N.D. Cal. July 25, 2013).

More broadly, Plaintiffs do not submit *any* evidence to support their attacks on NSO as a rogue hacker-for-hire. NSO did not hack WhatsApp. Plaintiffs do not accuse NSO of stealing their data, accessing their servers to change any of the code that causes WhatsApp to function, or

---

[1] *See Savage v. Glendale Un. High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (12(b)(1)); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (12(b)(2)); *Estate of Burkhart v. United States*, 2008 WL 4067429, at *2 (N.D. Cal. Aug. 26, 2008) (12(b)(7)).

implanting any malicious code or virus into their systems. Plaintiffs merely accuse NSO of figuring out a way for NSO's foreign sovereign customers to use WhatsApp as a delivery mechanism for those sovereigns to contact the phones of terrorists and serious criminals.

Personal jurisdiction cannot be based on foreign communications passing through servers in California. This Court lacks subject matter jurisdiction because foreign sovereigns committed the acts Plaintiffs challenge, with NSO taking a tech-support role as the sovereigns' agent. NSO's customers are indispensable parties under Rule 19, and Plaintiffs' allegations do not state claims under CFAA or for trespass to chattels. NSO's motion to dismiss should be granted.

## II.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over NSO

None of Plaintiffs' personal jurisdiction arguments is persuasive, and the lack of personal jurisdiction is grounds for dismissal of the complaint with prejudice.[2] NSO addresses it first.

#### 1.    NSO Did Not Consent to Personal Jurisdiction

Plaintiffs' consent argument contradicts the unambiguous language in WhatsApp's TOS. Judge Tigar recently rejected Plaintiffs' tortured construction, apparently prompting alteration to the relevant language in WhatsApp's revised TOS ("RTOS"). The TOS that applies to this action, as Judge Tigar found, did not require NSO to consent to personal jurisdiction in California.

The TOS's forum-selection clause expressly applies to any "claim" the customer has with WhatsApp, and claims are usually one-way. That is, if you have a claim against me, it does not mean that I have a claim against you. Plaintiffs' Opposition substitutes the word "dispute," arguing that the TOS apply to "all disputes" *between* the parties—both you with me and me with you. (Opp. at 11.) But the forum-selection clause *defines* "Dispute" as "any claim *you* have with *us*." (Def. Exh. 1 at 4 (emphasis added).) So when the TOS uses the phrase "all such Disputes," it plainly does not apply to disputes *except* for claims by customers against WhatsApp.

Even if the TOS were ambiguous, it must be construed against the drafter. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). No reasonable user would presume

---

[2] Plaintiffs' conditional request for jurisdictional discovery (Opp. 19 n.13) should be denied, as they have not identified any fact that could be established through discovery that would show personal jurisdiction is proper.

that signing up for a free communications service gives the provider a right to *sue the customer* in a foreign jurisdiction with which the customer has no connection. A contract provision subjecting WhatsApp's billions of customers to such a risk would need to be unambiguous.

A few months ago, Judge Tigar ruled that nearly identical language in Facebook's TOS applies only to claims the user files against Facebook, and not to claims Facebook files against the user. *Facebook, Inc. v. Rankwave Co.*, No. 4:19-cv-3738, at *6 (N.D. Cal. Nov. 14, 2019) (Dkt. 34) (cited at Opp. 12). The language Judge Tigar considered ("any claim … you have against us") is almost identical to the WhatsApp TOS ("any claim you have with us"), but vastly different from the language Plaintiffs wish they had drafted ("all disputes we have with each other"). *Id.* at *5. As Judge Tigar held, "Facebook is a sophisticated entity and the Court is entitled to assume that sophisticated parties choose their contract language carefully." *Id.* at *6.

Demonstrating their sophistication, Plaintiffs took decisive steps after *Rankwave* to expand WhatsApp's forum-selection clause beyond claims users have against WhatsApp. (Akro Decl. Exh. 1 at 7.) Where the original TOS covered "any claim *you have with us*," the RTOS covers "any Claim," period. (*Id.* Exh. 2 at 6.) Plaintiffs changed that language for a reason: to expand coverage from the one-way "you will resolve any claim you have with us" to the two-way "you and WhatsApp will resolve any claim" between the parties.[3]

Another RTOS revision puts a final nail in Plaintiffs' argument. After requiring the user to resolve "any claim" in California, the RTOS adds a one-sided caveat: "we may elect to resolve any Dispute *we have with you* . . . in the country in which you reside." (Akro. Decl. Exh. 2 at 6 (emphasis added).) This provision unambiguously uses the same "have with" construction as the TOS to define a limited subset of "claims." If "any Dispute we have with you" in the RTOS does not apply to claims WhatsApp's users bring against it, then "any Dispute you have with us" in the original TOS does not apply to claims WhatsApp brings against its users.

---

[3] Plaintiffs did not revise only the RTOS in January 2020. They also silently altered all previous TOS archived on WhatsApp's website, so a customer (or lawyer) who visited the website to research the TOS from any past date would be deceived that the earlier version contained the broader revised language. (Akro. Decl. at 1–3.) After NSO exposed WhatsApp's revisionist history (*id.*), WhatsApp now appears to have restored the authentic archived TOS to its website.

## 2.     The Court Lacks Specific Jurisdiction Over NSO

Plaintiffs do not establish specific jurisdiction because they do not identify any case-related act that NSO performed in or directed at California. (Mot. 13–16.) Plaintiffs identify four supposed contacts between NSO and California: (1) agreeing to WhatsApp's TOS, (2) obtaining financing in California, (3) contracting with QuadraNet to use California servers, and (4) using WhatsApp's California servers. (Opp. 12–13.) These supposed contacts, however, don't show any intentional connection *to California*, as opposed to "'persons who reside there.'" *Hoffman v. Michael A. Rolf C.P.A.*, 2019 WL 2451007, at *2 (N.D. Cal. June 12, 2019) (Hamilton, J.) (quoting *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014)).

*i. WhatsApp's TOS.* Plaintiffs argue that NSO submitted to jurisdiction in California merely by signing up for WhatsApp (Opp. 11), but "the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). That is especially true for adhesion contracts like the TOS. *Bosh v. Shed Media US Inc.*, 2011 WL 13220335, at *2 n.1 (C.D. Cal. Aug. 16, 2011). The TOS's choice-of-law clause (assuming it even applies, *but see supra* Part II.A.1) is, without more, "insufficient to confer jurisdiction." *Burger King. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

Instead, Plaintiffs must show that NSO created "ongoing obligations with [WhatsApp] in California." *Boschetto*, 539 F.3d at 1017. They do not even try. They simply assert that NSO agreed to comply with the TOS when sending messages. (Opp. 12.) But *all* contracts require compliance, and Plaintiffs do not claim the TOS required NSO to do anything *in California*. All the cases Plaintiffs cite involved multi-year contracts requiring repeat interactions with Californians.[4] NSO, in contrast, had no contact with WhatApp and did not perform the contract in California. (Compl. ¶¶ 33, 43). That is not purposeful availment. *See Netgear, Inc. v. Redzone Wireless, LLC*, 2017 WL 2351359, at *4 (N.D. Cal. May 31, 2017) (no jurisdiction based on

---

[4] *See Rankwave*, No. 4:19-cv-3738, at *9–11 (seven-year contracts under which defendant submitted apps to Facebook and "created and operated at least 30 apps on the Facebook Platform, which were installed by '[h]undreds' of users in California"); *Google, Inc. v. Eolas Tech. Inc.*, 2014 WL 2916621, at *3 (N.D. Cal. June 24, 2014) (twenty-year contract requiring "marketing and sale of . . . patents" in California, "recordkeeping, bookkeeping, accounting, and reporting" to California entity, and "payment of patent royalties" to California entity).

1   contract with California plaintiff that "did not contemplate performance in California").[5]

2       ***ii. Alleged California Financing***. Plaintiffs' claims do not "arise out of" NSO's alleged

3   receipt of financing from a California investor. (Mot. 16.) Plaintiffs' only counter is to speculate

4   that NSO "developed Pegasus using [that] financing." (Opp. 13.) But that claim is not in the

5   Complaint, and Plaintiffs submit no evidence to support it. NSO could just as easily fund

6   Pegasus entirely through customer payments, not through investor financing.

7       Even if some of NSO's alleged California funding went into Pegasus, NSO's use of

8   general corporate funds supporting its entire operation to develop this technology does not confer

9   jurisdiction. The connection between NSO's company-wide financing and any specific use of

10   Pegasus is too attenuated to create a "direct nexus" between the financing and Plaintiffs' claims.

11   *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996). Otherwise,

12   a company would be subject to jurisdiction in every state where it receives any funding.[6] That

13   would improperly convert specific jurisdiction into "a loose and spurious form of general

14   jurisdiction" based on "general connections with the forum." *Bristol-Myers Squibb Co. v. Super.*

15   *Ct.*, 137 S. Ct. 1773, 1781 (2017). Plaintiffs do not cite any case supporting such a boundless

16   theory of specific jurisdiction.

17       ***iii. Alleged Use of QuadraNet Servers.*** Plaintiffs' assertions about QuadraNet's

18   California servers (Opp. 13) should be disregarded because they are not in the Complaint. The

19   Complaint alleged that NSO used QuadraNet servers located *in the United States*, not

20   specifically in California. (Compl. ¶ 34.) If Plaintiffs want to clarify their allegations, they must

21   amend the Complaint. *Supra* at 1.[7] In any event, Plaintiffs' new claims about QuadraNet are

22

23   [5] This Court previously rejected a rule creating specific jurisdiction based on a defendant's
24   Facebook account because it would subject billions of Facebook users around the globe, all of
     whom agree to comply with Facebook's policies, to personal jurisdiction in California. *DFSB*
25   *Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 883 (N.D. Cal. Sept. 13, 2012) (Hamilton, J.).

26   [6] Facebook, for instance, could be sued in any state where one of its shareholders lives. Plaintiffs
     have challenged similar theories of specific jurisdiction when *they* are defendants. *E.g.*,
27   *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 960 (N.D. Ohio 2018) (rejecting jurisdiction
     over Facebook in Ohio despite "significant revenues" from Ohio users).

28   [7] Moreover, Plaintiffs' evidence from "Maxmind.com," "IP2Location.com," and
     "SecurityTrails.com" is inadmissible. (Mornin Decl. ¶¶ 2–6.) Plaintiffs do not request judicial

false: NSO did not contract with QuadraNet to use its California servers. (Supp. Hulio Decl. ¶ 3.) Plaintiffs submit no evidence to the contrary, nor even any evidence tying QuadraNet's servers to NSO or Pegasus. (Gheorghe Decl.; LeBlanc Decl; Mornin Decl.)

If Pegasus messages did pass through QuadraNet servers, they would have been sent by NSO's customers, not NSO. *Supra* at 2. Even if NSO had used QuadraNet's servers, that would still be insufficient. Plaintiffs admit courts have rejected specific jurisdiction based on a defendant's use of third-party servers in the forum. (Opp. 15; Mot. 14 (citing cases); *see also, e.g.*, *DFSB*, 897 F. Supp. 2d at 883.) That is because the contact created by using a server is "de minimis." (Mot. 15 (citing cases).) Internet traffic "bounces from one server to another," *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), like a phone call routed through a switchboard. The "fortuit[y]" that internet traffic originating and terminating overseas happened to pass through California does not create jurisdiction in California. *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020). That is true even when the contract includes a choice of law clause. *Id.* at *6.

**iv. *Purported Use of WhatsApp's California Servers.*** Plaintiffs' claim that NSO used WhatsApp's California servers (Opp. 15) cannot create jurisdiction because the Complaint does not allege that WhatsApp even *has* California servers, let alone that NSO used them. (Mot. 14–15.) Nor do Plaintiffs submit *any evidence* that WhatsApp has California servers that NSO used. In contrast, NSO submitted *uncontradicted evidence* that NSO's customers, not NSO, used Pegasus to send messages over WhatsApp's servers. (Hulio Decl. ¶¶ 9, 14.)

Even if WhatsApp has California servers, and even if NSO had sent messages through them, that still would not show that NSO targeted California because "there is no allegation, argument, or evidence that [NSO] played any role in selecting [any] server's location." *GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018). That rule is not, as Plaintiffs claim, limited to third-party servers. (Opp. 15.) Specific jurisdiction cannot be based on a plaintiff's "unilateral activity" any more than a third party's. *Walden*, 571 U.S. at 287. For that

---

notice of those websites or explain how they compile and verify their data. Thus, the websites are not "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

reason, multiple courts have rejected specific jurisdiction in cases where the defendant accessed the plaintiff's servers.[8] Plaintiffs' cases (Opp. 14–15) are not to the contrary.[9]

Here, Plaintiffs do not claim that NSO or its customers controlled where WhatsApp puts its servers, chose which WhatsApp servers to use, knew which servers WhatsApp's systems would route its messages through, or knew or cared about those servers' locations. (*See* Hulio Decl. ¶ 16.) *If* those servers were in California—which Plaintiffs do not allege or prove—it was pure "happenstance," driven entirely by Plaintiffs' own unilateral decisions. *Hungerstation*, 2020 WL 137160, at *5. NSO's alleged conduct would have been exactly the same if all the servers were in Cleveland, Paris, or Timbuktu. Indeed, the entire "complaint and the conduct alleged therein would look nearly exactly the same if [Plaintiffs] happened to reside in a state other than California. That alone indicates that [NSO's] only suit-related contact to California is [P]laintiff[s]." *Hoffman*, 2019 WL 2451007, at *4 n.2. Because Plaintiffs must show that NSO

---

[8] *See Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *7 (C.D. Cal. Aug. 22, 2018) (location of plaintiff's server was "'random,' 'fortuitous,' or 'attenuated'"); *Karp v. Buchem*, 2018 WL 4944995, at *3 (C.D. Cal. Mar. 23, 2018) (same); *Guar. Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 921–22 (N.D. Ill. 2017) (access to plaintiff's servers inadequate because the "role [the] servers play in [plaintiff's] network is the result of conduct by [plaintiff], not [defendant]").

[9] The defendant in *DEX Sys., Inc. v. Deutsche Post AG*, 727 F. App'x 276, 278 (9th Cir. 2018), unlike NSO, *controlled the location* of the plaintiff's servers. In *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, the defendant *traveled to California* to negotiate with the plaintiff and hacked into the plaintiff's system *from California computers*. 2017 WL 3485881, at *2–3 (N.D. Cal. Aug. 15, 2017). NSO did not. In *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010), the defendant *sold its software to Californians*. NSO did not. In *Seattle Sperm Bank, LLC v. Cryobank Am., LLC*, 2018 WL 3769803, at *1–2 (W.D. Wash. Aug. 9, 2018), the defendants worked for the Washington-based plaintiff and intentionally *stole data from its servers*. NSO did not steal any data from WhatsApp's servers.

*Facebook, Inc. v. ConnectU LLC*, 2007 WL 2326090 (N.D. Cal. Aug. 13, 2007), held that a defendant's "individualized targeting" of a plaintiff supports jurisdiction, *id.* at *5, a test that *Walden* overruled, *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, 2020 WL 1244918, at *7 (N.D. Cal. Mar. 16, 2020) (Hamilton, J.). *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996), and *Panavision Int'l, L.P v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998), also predate *Walden* and have limited relevance. *See IAND8, Inc. v. W. 54th LLC*, 2018 WL 4961557, at *4 (C.D. Cal. Jan. 26, 2018) ("Recent Supreme Court and Ninth Circuit decisions are more applicable here than *Panavision*."). The *CompuServe* defendant advertised, stored, and sold his software on the plaintiff's Ohio servers and communicated with the plaintiff in Ohio. 89 F.3d at 1264–65. The *Panavision* defendant infringed the plaintiff's film and TV trademarks to confuse consumers in California, "the heart of the theatrical motion picture and television industry." 141 F.3d at 1321. NSO's alleged actions have no similar ties to California as a state.

---

did more than target *them*, the Complaint should be dismissed. *Id.* at *4.

### 3.    Personal Jurisdiction Would Be Unreasonable

As NSO argued, this case is materially indistinguishable from *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125–26 (9th Cir. 2002), which establishes that exercising jurisdiction in California would be unreasonable. (Mot. 17–18.) Plaintiffs do not distinguish *Glencore*, and their account of the reasonableness factors is unpersuasive. They rest their claim of NSO's "purposeful interjection" into California on their flawed specific-jurisdiction arguments. (Opp. 16.) They minimize the obvious burden to NSO of litigating in California (Mot. 17) by citing supposed "U.S. ties" with no bearing on this lawsuit (Opp. 16).[10] They shrug off Israel's sovereign interests, even though the Ninth Circuit has held that this factor disfavors jurisdiction *any time* "the defendant is from a foreign nation." *Glencore*, 284 F.3d at 1126. They overvalue their own convenience, which is an "insignificant" factor in the analysis. *Core-Vent Corp. v. Nobel Indust. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993). And they do not even try to establish that Israel is an inadequate forum, despite the Ninth Circuit's rule that the party opposing a motion to dismiss "has the burden of proving the unavailability of an alternative forum." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 853 (9th Cir. 1993).

### 4.    NSO Is Not Subject to Jurisdiction Under Rule 4(k)(2)

In a last ditch attempt to establish personal jurisdiction, Plaintiffs seek to rely on Rule 4(k)(2). (Opp. 17–18.) But "[t]he Ninth Circuit has urged cautious application of Rule 4(k)(2)," *Hungerstation*, 2020 WL 137160, at *7, and it does not apply here.

NSO's alleged "contacts with the United States are only marginally more significant than [its] contacts with [California] and do not support a finding of nationwide jurisdiction." *Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). NSO did not commit any of the actions Plaintiffs challenge, so those alleged actions do not show any contact between

---

[10] NSO's "U.S.-based marketing and sales arm" (Opp. 16 n.12) is actually NSO's sister company, not its "arm" (Supp. Hulio Decl. ¶ 4), and any discussions it had with the DEA are irrelevant to the burden of litigating this suit in California. So are the alleged residence of NSO's co-founder and NSO's erstwhile funding, which ended more than a year ago. (Opp. 16 n.12)

NSO and the U.S. NSO's alleged use of U.S.-based servers creates no more of a connection with the U.S. than with California. Plaintiffs allege that NSO acted overseas (Compl. ¶ 33), so any use of U.S. servers to facilitate that purely foreign conduct was too "scant, fleeting, and attenuated" to create jurisdiction under Rule 4(k)(2). *Holland*, 485 F.3d at 462.[11]

The other alleged U.S. connections are even less significant. Activities of NSO's alleged "marketing arm" (Opp. 18) cannot be attributed to NSO without a showing it is NSO's alter ego, *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996), and its activities did not give rise to Plaintiffs' claims. NSO's co-founder's choice of residence is not a contact between *NSO* and the forum,[12] and it is likewise unrelated to Plaintiffs' claims. And harms Plaintiffs suffered in California do not create jurisdiction. *Walden*, 571 U.S. at 289.

Finally, jurisdiction under Rule 4(k)(2) would be unreasonable for the same reasons that jurisdiction would be unreasonable in California. NSO has no meaningful contacts with the U.S., the burden of litigating there would be high and would harm Israel's sovereign interests, and Israel is an adequate alternative forum.

## B. The Court Lacks Subject Matter Jurisdiction Because NSO Has Derivative Foreign Sovereign Immunity

Contrary to Plaintiffs' argument (Opp. 3), NSO does not claim immunity for itself under the Foreign Sovereign Immunities Act. NSO is entitled to *derivative* sovereign immunity, a claim Plaintiffs wrongly describe as precluded by *Samantar v. Yousuf*, 560 U.S. 305 (2010). *Samantar* rejected a foreign official's claim to *direct* statutory immunity under the FSIA. 560

---

[11] *See Hungerstation*, 2020 WL 137160, at *7 (rejecting Rule 4(k)(2) jurisdiction based on use of U.S. servers); *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 590 (S.D.N.Y. 2017) ("[T]he happenstance that the electronic communications of defendants acting abroad were routed through a server in the United States cannot substantially contribute to a finding of sufficient contacts with the United States."). Plaintiffs' case, *Micron Tech., Inc. v. United Microelec. Corp.* (Opp. 18), involved far more substantial U.S. contacts. The defendant there hacked into the plaintiff's U.S. servers to steal files. 2019 WL 1959487, at *3 (N.D. Cal. May 2, 2019). The servers were the defendant's *targets*, while NSO's alleged targets were foreign WhatsApp users, and NSO did not steal any data from WhatsApp's servers.

[12] None of the directors of NSO or Q Cyber reside in the United States. (Supp. Hulio Decl. ¶ 5.) Facebook cites a declaration of one of its own attorneys for the proposition that the person in question, Omri Lavie, is a director of NSO. That declaration lacks foundation.

---

U.S. at 309–11; *Yousuf v. Samatar*, 552 F.3d 371, 375–76 (4th Cir. 2009). Derivative sovereign immunity is not statutory. *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).[13]

In *Butters*, the Fourth Circuit held that Saudi Arabia's private agent was derivatively immune; it applied the FSIA only to the government. 225 F.3d at 466. *Samantar* affirmed a decision *by the Fourth Circuit*, which had no reason to apply its own *Butters* precedent because there was no claim of derivative immunity. Nor has any other Circuit rejected *Butters*. The Fifth Circuit, which previously approved derivative foreign sovereign immunity, *Alicog v. Kingdom of Saudi Arabia*, 79 F.3d 1145 (5th Cir. 1996) (affirming district court decision applying derivative foreign sovereign immunity), has not revisited its position. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649–50 (4th Cir. 2018) (citing *Alicog* as good law).[14]

That is because derivative immunity is grounded in the common law of foreign sovereign immunity. Plaintiffs admit (Opp. 5–6) that a foreign sovereign's immunity "extends to . . . any . . . agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." Rest. (2d) of Foreign Relations Law § 66(f) (1965). This "conduct-based immunity," *Doğan v. Barak*, 932 F.3d 888, 893–94 (9th Cir. 2019), applies to a foreign sovereign's private agents, *Moriah*, 107 F. Supp. 3d at 277. And it applies when the agent "act[s] on behalf of the state." *In re Estate of Marcos*, 25 F.3d 1467, 1472 (9th Cir. 1994); *accord Yousuf v. Samatar*, 699 F.3d 763, 774–75 (4th Cir. 2012). *Butters* applied this longstanding rule of immunity, which requires dismissal here.

Plaintiffs respond that NSO's customers do not order it to *design and market* Pegasus. (Opp. 7.) That is beside the point; Plaintiffs are not suing NSO for designing or marketing

---

[13] Plaintiffs argue that domestic "derivative sovereign immunity" is not jurisdictional (Opp. 7), but *foreign* sovereign immunity *is* jurisdictional. *Barapind v. Rep. of India*, 844 F.3d 824, 829 (9th Cir. 2016); *Sachs v. Rep. of Austria*, 737 F.3d 584, 589 (9th Cir. 2013) (en banc), *rev'd on other grounds by OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390 (2015). That NSO's immunity derives from its customers' makes no difference. *Butters*, 225 F.3d at 465.

[14] District courts also still apply *Butters*. *Ivey v. Lynch*, 2018 WL 3764264, at *6 (M.D.N.C. Aug. 8, 2018); *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 276–77 & n.34 (S.D.N.Y. 2015). Plaintiffs cite one case declining to apply *Butters*, *Broidy Cap. Mgmt. LLC v. Muzin*, 2020 WL 1536350, at *6 (D.D.C. Mar. 31, 2020), but that court relied primarily on the fact that the defendants were all U.S. citizens.

Pegasus. They challenge the alleged *use* of Pegasus to message WhatsApp's users, which was done entirely by foreign sovereigns. (Hulio Decl. ¶ 14.)[15] Plaintiffs' theory would punish people who offer goods and services to the government when the cause of action is based on the government's use of the product. But suppliers are not stripped of derivative immunity for building tools, nor for helping governments maintain them so that they can be used when needed. In *Yearsley*, for example, the United States did not order the contractor to train its employees and market its services to the government. But the Supreme Court still extended the government's immunity to the contractor because the conduct that gave rise to the complaint—its performance of a construction contract—was "authorized and directed" by the government. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940). Here too, the limited support NSO provides its sovereign customers was done entirely on their behalf and at their express direction.

## C.    NSO's Customers Are Indispensable Parties Under Rule 19

This case should be dismissed because the sovereign governments that allegedly used the Pegasus tool are indispensable parties who cannot be joined under Rule 19. Plaintiffs' Complaint seeks an injunction against "all other persons acting in concert with" NSO. (Compl. Request for Relief ¶ 2; Opp. 9.) Under Plaintiffs' own theory of the case, sovereign government agencies "acted in concert" with NSO, and Plaintiffs recognize that they cannot be joined because they are immune from suit. (Opp. 7.) The Court cannot grant Plaintiffs the relief they seek, so the missing government agencies are indispensable parties. (Mot. 19.) In addition, Plaintiffs' requested relief would impair NSO's customers' rights under their contracts with NSO (Compl. ¶ 43) by forbidding NSO from "facilitating" their use of Pegasus (Opp. 9). Fed. R. Civ. P. 19(a)(1)(B).

To avoid this result, Plaintiffs disavow their own Complaint, ignoring the exhibits that demonstrate NSO's business model (Mot. 2 n.1, 6) and dismissing their request for relief as meaningless "boilerplate" (Opp. 9). But the case is framed by the Complaint Plaintiffs filed. If

---

[15] Plaintiffs appear to have abandoned their false allegation that NSO has private customers. (Mot. 2.) They fault NSO for not identifying individual countries as its customers (Opp. 8), but since all foreign nations have sovereign immunity, the precise identity of NSO's customers is irrelevant. Identifying NSO's customers would expose state secrets about their national-security operations, impairing the very interests sovereign immunity protects. (Mot. 7; Hulio Decl. ¶ 18.)

Plaintiffs want to revise their requested injunction, they must do so in an amended complaint.

Plaintiffs also misdescribe the Supreme Court's ruling in *Philippines v. Pimentel*, 553 U.S. 851 (2008), by shuffling selective quotations to claim that it stands for the opposite of its holding. *Pimentel* held that its rule was "clear: A case may not proceed when a required-entity sovereign is not amenable to suit." *Id.* at 867. Plaintiffs quote from a prefatory section of the opinion in which the Court noted that Rule 19(b) sometimes turns on "factors varying with the different cases," and requires the district court to consider "equity and good conscience." *Id.* at 862–63. Plaintiffs then erroneously state that the Supreme Court applies the "equity and good conscience" standard to sovereigns, when in fact the Supreme Court held the lower courts erred by doing so. *Id.* at 864. *Pimentel*'s rule *is* "categorical" (Opp. 10), and it requires dismissal.

### D.  Plaintiffs Cannot State a CFAA Claim Because NSO Did Not Access WhatsApp's Servers Without Authorization

It is undisputed that WhatsApp authorized NSO to send messages over its servers. (Opp. 21.)[16] According to the Complaint, the only thing that distinguishes NSO's messages from others is the adjective "malicious"—but that describes only the alleged impact on target users,[17] because the servers handled the messages just like other messages. (Compl. ¶¶ 36-37.)

NSO thus could not have acted "without authorization" under the CFAA by sending messages. As the Ninth Circuit has held, "a person who uses a computer 'without authorization' has *no rights*, limited or otherwise, to access the computer in question." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009) (emphasis added). Plaintiffs concede NSO had limited authorization to send messages (Opp. 21), so they cannot claim NSO acted "without authorization" by "violat[ing] those limitations." *Brekka*, 581 F.3d at 1133.[18] If avoiding

---

[16] Plaintiffs seek to enforce the TOS's terms against NSO, thereby admitting that NSO's right to access WhatsApp's servers was created and regulated by the TOS. Access to WhatsApp's servers is the consideration WhatsApp offers in exchange for binding users to the TOS. If WhatsApp had not granted NSO access, Plaintiffs could not invoke the TOS's other terms.

[17] Plaintiffs start their argument with the false claim that NSO "does not dispute that it accessed users' devices in violation of the CFAA." (Opp. 19.) NSO has been crystal clear that it has never accessed any WhatsApp user's device. (Mot. 6, 8, 14, 19, 20; Hulio Decl. ¶¶ 14–15.)

[18] Plaintiffs concede they do not allege that NSO "exceeded authorized access" to WhatsApp's servers. (Opp. 22 n.15.) As NSO has shown, they cannot plead any such claim. (Mot. 21–22.)

---

1   technological limits on otherwise-authorized access violates the CFAA, then a visitor to New

2   York Times' website would commit a federal crime by exceeding a monthly free-article limit.[19]

3          The Ninth Circuit has already rejected Plaintiffs' "technical restrictions" theory of CFAA

4   liability. (Opp. 20.) In *hiQ Labs, Inc. v. LinkedIn Corp.*—a case Plaintiffs cite—LinkedIn

5   enacted "technological systems" to prevent the "scraping" of data from its servers. 938 F.3d 985,

6   990–92 (9th Cir. 2019). The defendant circumvented those systems. *Id.* at 991–92. But the Ninth

7   Circuit still held that the defendant had not accessed LinkedIn's servers "without authorization."

8   *Id.* at 999. Because the defendant was authorized to access LinkedIn's website, technological

9   restrictions on data scraping could not render its access "without authorization." *Id.* at 1003–04.

10         So too here. Plaintiffs assert that NSO formatted WhatsApp messages to hide data

11  WhatsApp did not want users to send. (Opp. 20.) But NSO was authorized to send messages, so

12  violating WhatsApp's limits on the *contents* of those messages is not accessing WhatsApp's

13  servers "without authorization." *hiQ Labs*, 938 F.3d at 999–1004; *Brekka*, 581 F.3d at 1133.

14  Plaintiffs also claim that NSO used "reverse-engineered" software to send messages instead of

15  using "the WhatsApp app" as required by the TOS. (Opp. 21.) But "a violation of the terms of

16  use of a website—without more—cannot establish liability under the CFAA." *Facebook, Inc. v.

17  Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016). Finally, Plaintiffs imply NSO

18  "access[ed] server-side call settings and alter[ed] the technical architecture routing calls through

19  its servers." (Opp. 21.) That claim is not in the Complaint and cannot be considered. In any

20  event, Plaintiffs do not explain what it means or *even claim that NSO did it.* They merely say

21  they have not granted permission, perhaps hoping that the Court will treat a vague insinuation as

22  an allegation. Plaintiffs' jargon cannot hide the fact that all NSO allegedly did was send the

23  wrong kind of message over WhatsApp's servers. That is not a CFAA violation.[20]

24  _____

25  [19] *See* Jack Smith IV, *Here's How to Get Around the Paywalls of the New York Times, Wall Street Journal and More*, Observer (Jan. 8, 2015, 2:22 p.m.), https://bit.ly/2YedZrD. Plaintiffs'

26  own New York Times example (Opp. 22) is inapt because the hacker there would "exceed authorized access" by stealing off-limits user data from the servers. *United States v. Nosal*, 676

27  F.3d 854, 864 (9th Cir. 2012).

28  [20] This conclusion does not "sharply circumscribe the CFAA[]." (Opp. 22.) The Ninth Circuit has repeatedly described the CFAA as a "narrow" statute. *hiQ Labs*, 938 F.3d at 1003; *Nosal*,

None of the cases Plaintiffs cite are to the contrary. The defendant in *Power Ventures* was held liable not because it "engaged in 'technological gamesmanship'" (Opp. 20), but because it accessed Facebook after Facebook withdrew its authorization. 844 F.3d at 1067. Unlike NSO, the *Power Ventures* defendant had "no rights, limited or otherwise, to access the computer in question." *Brekka*, 581 F.3d at 1133. Similarly, the defendant in *United States v. Morris* hacked into "computers at which he had no account and no authority, express or implied," to access. 928 F.2d 504, 510 (2d Cir. 1991). And the defendant in *United States v. Phillips* hacked into a server "he was never authorized to access." 477 F.3d 215, 221 (5th Cir. 2007). That is not true here.

### E.   Plaintiffs Cannot State a Trespass to Chattels Claim

This Court's role in ruling on Plaintiffs' state-law claim is to "predict how the California Supreme Court would decide the issue." *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011). The California Supreme Court would reject Plaintiffs' trespass to chattels claim because it does not allege any injury "to the chattel." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350 (2003). Plaintiffs claim only that NSO "impair[ed] . . . WhatsApp's services" (Opp. 25), which are not chattels. WhatsApp's *servers* are chattels, but Plaintiffs allege no injury to them.

Plaintiffs argue that NSO interfered with the servers' "intended functioning" (Opp. 24), but *Hamidi* forecloses their theory of interference. Under *Hamidi*, actionable "interference" must affect a computer's *technological* functioning, "as by significantly reducing its available memory and processing power." 30 Cal. 4th at 1356. Plaintiffs contend that NSO sent a different type of message than what WhatsApp users normally send, but Plaintiffs concede the messages did not disrupt WhatsApp's servers, slow them down, or otherwise "burden[] [them] as a quantitative matter." (Opp. 25.) The receipt of an undesired message that did not damage the server is not "interference" under *Hamidi*. 30 Cal. 4th at 1358.

Plaintiffs do not cite any case adopting their theory of "interference" under California law. Even *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015 (S.D. Ohio 1997), on which Plaintiffs heavily rely, found under Ohio law that the trespass "placed 'a tremendous

---

676 F.3d at 856, 863. Even when the CFAA does not apply, plaintiffs may still be able to bring claims under state law. *hiQ Labs*, 938 F.3d at 1004; *Nosal*, 676 F.3d at 860.

burden' on the [plaintiff's] equipment, using 'disk space and drain[ing] the processing power.'" *Hamidi*, 30 Cal. 4th at 1354 (quoting *CompuServe*, 962 F. Supp. at 1022). Plaintiffs make no similar allegation, nor could they.[21]

     *Hamidi* also rejects Plaintiffs' reliance on "loss of goodwill and remediation expenses" (Opp. 25), which are not "the type of property interest [trespass to chattels] is primarily intended to protect." 30 Cal. 4th at 1358. *Hamidi* approvingly quoted criticism of Plaintiffs' theory, describing it as "br[eaking] the chain between the trespass and the harm, allowing indirect harms to [the plaintiff's] business interests . . . to count as harms to the chattel (the server)," which "cuts trespass to chattels free from its moorings of dispossession or the equivalent." *Id.* Plaintiffs cite no contrary case representing a reliable statement of California law.[22]

Dated:  April 30, 2020

                  KING & SPALDING LLP

                  By:    */s/Joseph N. Akrotirianakis*
                           JOSEPH N. AKROTIRIANAKIS
                           Attorneys for Defendants NSO GROUP
                           TECHS. LTD and Q CYBER TECHS. LTD

---

[21] Plaintiffs' other cases do not help them. (Opp. 24 n.16.) The defendant in *Thrifty-Tel, Inc. v. Bezenek*, unlike NSO, "overburdened the [plaintiff's] system, denying some subscribers access." 46 Cal. App. 4th 1559, 1564 (1996). The defendant in *Craigslist Inc. v. 3Taps Inc.*, unlike NSO, "reduce[d] craigslist's capacity to service its users." 942 F. Supp. 2d 962, 980 (N.D. Cal. 2013). The defendant in *Coupons, Inc. v. Stottlemire*, 2008 WL 3245006, at *1, 6 (N.D. Cal. July 2, 2008), "impaired [the] plaintiff's ability to provide coupons" (Opp. 24 n.16), while NSO did not prevent WhatsApp from serving any other user. *Skapinetz v. CoesterVMS.com, Inc.*, and *Jedson Eng'g, Inc. v. Spirit Constr. Servs., Inc.*, applied foreign law inconsistent with *Hamidi*. *Skapinetz* applied Georgia law that merely "logging into [the plaintiff's] email accounts without authorization" is trespass to chattels. 2019 WL 2579120, at *6 (D. Md. June 24, 2019). *Hamidi* held that unauthorized use of a computer alone is not sufficient. 30 Cal. 4th at 1357. *Jedson* applied Ohio law that does not require harm *to the chattel*. 720 F. Supp. 2d 904, 926 (S.D. Ohio 2010). *Hamidi* requires "injury to the chattel." 30 Cal. 4th at 1350.

[22] *Hamidi* criticized *CompuServe*, 962 F. Supp. at 1023, and *Hotmail Corp. v. Van$ Money Pie, Inc.*, 1998 WL 388389, at *7 (N.D. Cal. Apr. 16, 1998). *Hamidi*, 30 Cal. 4th at 1357–58. *Microsoft Corp. v. Does 1-18*, 2014 WL 13238677, at *9 (E.D. Va. Apr. 2, 2014), applied Virginia law that, unlike *Hamidi*, did not require harm to the chattel. *Twitch Interactive, Inc. v. Does*, and *Summit Ent't, LLC v. Santia* were *ex parte* rulings addressing the plaintiff's claims without any adversarial argument about California law. *Twitch*, 2019 WL 3718582, at *1 (N.D. Cal. Aug. 7, 2019); *Santia*, 2014 WL 12577430, at *1 (C.D. Cal. June 24, 2014). *Twitch* did not cite *Hamidi* and relied on an incorrect rule that required only "damage to the plaintiff," not the chattel. 2019 WL 3718582, at *4. *Santia* applied the same incorrect rule and even acknowledged it contradicted *Hamidi*. 2014 WL 12577430, at *5 (citing *Hamidi* with "but see" signal).