1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    TRAVIS LEBLANC (251097)
3   (tleblanc@cooley.com)
    KYLE C. WONG (224021)
4   (kwong@cooley.com)
    JOSEPH MORNIN (307766)
5   (jmornin@cooley.com)
    101 California Street, 5th Floor
6   San Francisco, CA   94111-5800
    Telephone:   (415) 693-2000
7   Facsimile:   (415) 693-2222

8   DANIEL J. GROOMS (D.C. Bar No.
    219124) (admitted *pro hac vice*)
9   (dgrooms@cooley.com)
    ELIZABETH B. PRELOGAR (262026)
10  (eprelogar@cooley.com)
    1299 Pennsylvania Avenue, NW, Suite 700
11  Washington, DC  20004-2400
    Telephone:   (202) 842-7800
12  Facsimile:   (202) 842-7899

13  O'MELVENY & MYERS LLP
    MICHAEL R. DREEBEN (D.C. Bar No.
14  370586) (admitted *pro hac vice*)
    (mdreeben@omm.com)
15  1625 I Street NW
    Washington, D.C. 20006
16  Telephone: (202) 383-5300

17  Attorneys for Plaintiffs
    WHATSAPP INC. and FACEBOOK, INC.

18

19              UNITED STATES DISTRICT COURT

20             NORTHERN DISTRICT OF CALIFORNIA

21

22  WHATSAPP INC., a Delaware corporation,    Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
23  corporation,                              **JOINT CASE MANAGEMENT STATEMENT
                                              AND [PROPOSED] ORDER**
24                          Plaintiff,
                                              Date:       May 28, 2020
25             v.                             Time:       2:00 p.m.
                                              Courtroom:  3
26  NSO GROUP TECHNOLOGIES LIMITED            Judge:      Hon. Phyllis J. Hamilton
    and Q CYBER TECHNOLOGIES LIMITED,
27
                            Defendant.
28

1    Plaintiffs WhatsApp Inc. ("WhatsApp") and Facebook, Inc. ("Facebook," collectively with

2    WhatsApp, "Plaintiffs") and Defendants NSO Group Technologies Limited ("NSO") and Q Cyber

3    Technologies Limited ("Q Cyber," collectively with NSO, "Defendants") submit this Case

4    Management Statement and Proposed Order under the Standing Order for All Judges of the

5    Northern District of California and Civil Local Rule 16-9.[1]

6    **I.    JURISDICTION AND SERVICE**

7        *The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's*

8    *counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any*

9    *parties remain to be served, and, if any parties remain to be served, a proposed deadline for*

10   *service.*

11       The parties dispute whether the Court has subject-matter jurisdiction over the case.

12   Plaintiffs contend that the Court has federal question jurisdiction under 28 U.S.C. § 1331 because

13   this action alleges violations of federal law, namely, the Computer Fraud and Abuse Act

14   ("CFAA"), 18 U.S.C. § 1030 *et seq*. Plaintiffs contend that the Court has supplemental jurisdiction

15   over Plaintiffs' state-law causes of action under 28 U.S.C. § 1367 because they arise from the same

16   nucleus of operative fact as Plaintiffs' CFAA claim. In addition, Plaintiffs contend that the Court

17   has diversity jurisdiction under 28 U.S.C. § 1332 because complete diversity exists between the

18   Plaintiffs and each of the named Defendants and because the amount in controversy exceeds

19   $75,000. Defendants contend that the Court lacks subject-matter jurisdiction because Defendants

20   are protected by foreign sovereign immunity, which deprives the Court of subject-matter

21   jurisdiction. Defendants also contend that the Court lacks subject-matter jurisdiction over

22   Plaintiffs' request for injunctive relief because Plaintiffs lack standing to seek that relief.

23       The parties dispute whether the Court has personal jurisdiction over Defendants. As

24   described in the parties' briefing over Defendants' motion to dismiss the Complaint (ECF No. 45),

25   the Plaintiffs allege that the Court has personal jurisdiction over Defendants because they

26   consented to WhatsApp's Terms of Service and because Defendants' contacts with California

27

28   [1]  Plaintiffs previously submitted "Separate Case Management Statement[s]" on February 6, 2020
     and March 19, 2020.  ECF Nos. 18 & 35.

establish specific jurisdiction in this case, or alternatively that Defendants' contacts with the United States establish specific jurisdiction.  As set forth in Defendants' motion to dismiss, Defendants did not consent to personal jurisdiction and Plaintiffs have not alleged any relevant contacts between Defendants and California. By submitting in this statement and participating in the Case Management Conference in compliance with the Local Rules and the Court's orders, Defendants are not waiving their right to assert that they act exclusively as the agent of governmental entities or that the Court lacks personal jurisdiction over Defendants. Defendants expressly reserve those rights.

Plaintiffs allege that venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because the harm to Plaintiffs occurred in this District.  Defendants do not challenge venue separately from their challenges to the Court's subject-matter and personal jurisdiction.

All Defendants have been served.

## II.  FACTS

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

**Plaintiffs' statement:**

Defendants manufactured, distributed, and operated surveillance technology, also known as "spyware," designed to intercept and extract information and communications from mobile phones and devices (collectively, "Defendants' Spyware" or "Spyware").  Defendants have marketed different types of spyware, including spyware that could be surreptitiously installed on a victim's mobile phone without the victim taking any action, such as clicking a link or opening a message (collectively "Spyware").  Their Spyware includes products marketed using such brand names as "Pegasus" and "Phantom."  Once installed, Defendants' Spyware could access a broad array of private information, including the phone's location, camera, microphone, memory, and hard drive, as well as private emails, calls, texts, and messages sent via iMessage, Skype, Telegram, WeChat, Facebook Messenger, WhatsApp, and other platforms. According to public reporting, Defendants' clients included government agencies in the Kingdom of Bahrain, the United Arab Emirates, and Mexico.

Between in and around April 2019 and May 2019, Defendants used WhatsApp servers,

located in the United States and elsewhere, to send their Spyware to approximately 1,400 mobile phones and devices belonging to attorneys, journalists, human rights activists, government officials, and others. Unable to break WhatsApp's end-to-end encryption, Defendants developed their malware to access messages and other communications after they were decrypted on a device. Defendants' actions were not authorized by Plaintiffs. In May 2019, Plaintiffs detected and stopped Defendants' unauthorized access and abuse of the WhatsApp service and computers. On October 29, 2019, Plaintiffs filed this lawsuit seeking injunctive relief and damages based on federal and state claims

Since the filing of the Complaint, there have been several reports of NSO's continued manufacturing, distribution, and operation of surveillance technology. The New York Times reported that Saudi Arabia attempted to install NSO's malware on a Times reporter's phone, and Reuters reported that the FBI is investigating NSO's role in possible hacks of American residents and companies.

The principal factual issues presently in dispute are the following:

- Did Defendant's violate WhatsApp's Terms of Service;
- When and how did Defendants reverse engineer the WhatsApp app;
- Which of Defendants' spyware products (e.g. Pegasus, Phantom, or some other surveillance technology product) was used in connection with the conduct described in the Complaint;
- What was Defendants' role in the access and use of WhatsApp's servers;
- When and how did Defendants access and use or aid in the access and use of WhatsApp servers and the 1400 phones and devices;
- Whether Defendants' conduct occurred in or was directed at California and the United States; and
- What is the full scope of damages caused to Plaintiffs by Defendants' conduct and what were Defendants' profits from such conduct.

**Defendants' statement:**

NSO is an Israeli technology company that designs and markets a highly-regulated

4.

technology to government agencies for use in counterterrorism and investigating child exploitation and other serious crimes. Q Cyber, also an Israeli corporation, is NSO's sole director and majority shareholder. Defendants have no offices, employees, or other presence in California.

The Complaint's allegations are limited to a specific technology called "Pegasus." Any other technology Defendants may have created is irrelevant to Plaintiffs' claims. Plaintiffs' unsupported assertions about post-Complaint conduct by Defendants are also irrelevant, prejudicial, and improper in a Case Management Statement.

Defendants license the Pegasus technology exclusively to sovereign government agencies for use in investigating and preventing terrorism and serious crime. Violent criminals and some of the world's most brutal and dangerous terrorists use Plaintiffs' services to plan and execute their crimes, while Plaintiffs disclaim responsibility and leave it to others—sovereign governments and innocent victims—to deal with the crimes facilitated by WhatsApp. NSO's Pegasus technology allows government agencies to prevent crimes that Plaintiffs' technology would otherwise facilitate. The export of NSO's Pegasus technology is regulated under Israel's Defense Export Control Law, and Defendants' customers are exclusively government agencies. (Plaintiffs claim there is "public reporting" that Defendants have private customers, but that claim is false, and Plaintiffs have never identified any actual reporting that supports it.)

NSO's contracts with its customers require the customers to agree that they (1) will use NSO technology "only for the prevention or investigation of crimes and terrorism and ensure that the [technology] will not be used for human rights violations" and (2) will immediately notify NSO of any potential misuse. Defendants contractually can suspend—and have suspended, and would terminate—service to customers engaged in any improper use of NSO's Pegasus technology outside these parameters. Israel may deny or revoke export licenses if the Israeli government learns of an abuse of the Pegasus technology or non-compliance with the intended use, such as a use of the technology to violate human rights.

Plaintiffs' allegations about Defendants' conduct are false. Most importantly, Defendants do not operate, and have never operated, Pegasus. Instead, Pegasus is operated exclusively by Defendants' sovereign customers, with NSO acting in a purely tech-support capacity at its

customers' direction. Plaintiffs' opposition to Defendants' motion to dismiss admits that Plaintiffs have no evidence to the contrary. If anyone installed Pegasus on any WhatsApp user's devices, it was not Defendants. It would have been an agency of a sovereign government. In any event, WhatsApp's Terms of Service authorized NSO to send encrypted messages over WhatsApp's servers.

Defendants did not target anyone, and in fact contractually prohibit their customers from using NSO's Pegasus technology against people who are not suspected terrorists or criminals. If a government ever misused NSO's Pegasus technology to investigate WhatsApp users other than criminals or terrorists, Defendants have no knowledge of that misuse, which would be a violation of that government's contract with NSO.

The principal factual issues presently in dispute are the following:

- Whether Defendants or its sovereign customers operated Pegasus;
- Whether any entity accessed WhatsApp's servers using Pegasus and, if so, which entity;
- Whether Defendants committed any conduct in or directed at California;
- Whether Defendants were authorized to access WhatsApp's servers;
- Whether WhatsApp's servers suffered any damage caused by Pegasus; and
- Whether Plaintiffs suffered any damages caused by Defendants. (Defendants' profits, referenced in Plaintiffs' statements, are irrelevant.)

## III.    LEGAL ISSUES

*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

The current legal issues in dispute are the following:

- Whether Defendants are immune from liability under a common law doctrine of derivative foreign sovereign immunity applicable to foreign-government contractors;
- Whether Defendants' customers are required parties pursuant to Fed. R. Civ. P. 19
- Whether the Court has personal jurisdiction over Defendants;

- Whether the Complaint states a claim for violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2), (a)(4), and (b);

- The relevance of WhatsApp's Terms of Service to personal jurisdiction and to Plaintiffs' CFAA claim; and

- Whether the Complaint states a claim for trespass to chattels.

## IV.   MOTIONS

*All prior and pending motions, their current status, and any anticipated motions.*

The filed but no longer pending motions in this case are the following:

- Plaintiffs' administrative motion to reschedule the case management conference, which the Court granted, ECF No. 17 (order);

- Plaintiffs' Application for Entry of Default, which the Clerk entered on March 2, 2020, ECF No. 22 (Clerk's Notice of Entry of Default);

- Defendants' Application to Set Aside Default and to Enlarge Time to File Responsive Pleading to Complaint, which the Court granted in part and denied in part, ECF No. 41 (order);

- Plaintiffs' Ex Parte Motion for Protective Order, which the Court deferred until it issues an order on Plaintiff WhatsApp's motion to disqualify, ECF No. 68 (order);

- Defendants' Motion for Sanctions, which the Court denied, ECF No. 48 (order);

- Plaintiffs' Cross-Motion to Authorize Alternative Service Pursuant to Federal Rule of Civil Procedure 4(f)(3), which the Court denied as moot, ECF No. 21 (order);

- WhatsApp's Administrative Motion to Seal Documents Related to WhatsApp's Motion to Disqualify Defense Counsel Based on Prior Representation in a Sealed Matter, which the Court denied without prejudice, ECF No. 52 (order);

- WhatsApp's Amended Administrative Motion to Seal Confidential Material in Motion to Disqualify Defense Counsel and Supporting Documents and Non Party USDOJ Amended Administrative Motion to File Under Seal, both of which the Court granted, ECF No. 67 (order).

The following motions are currently pending:

- Defendants' Motion to Dismiss Under FRCP 12(b)(1), 12(b)(6) and 12(b)(7) (ECF No. 45). The motion has been fully submitted, and by order dated May 1, 2020, the Court vacated the hearing and has taken the matter under submission on the papers. (ECF No. 64)

- WhatsApp's Motion to Disqualify Counsel Based on Prior Representation (ECF No. 47-03). Defendants' opposition brief is currently due on May 29, and WhatsApp's reply brief is due on June 5.

Plaintiffs do not presently anticipate filing any further motions. Defendants anticipate filing a motion to stay discovery and a motion to dismiss Plaintiffs' request for injunctive relief for lack of standing.

## V.    AMENDMENT OF PLEADINGS

*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

Plaintiffs do not presently expect to add or dismiss any parties or claims.

## VI.    EVIDENCE PRESERVATION

*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.*

The Parties have reviewed the ESI Guidelines and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding preservation, and the parties anticipate that they will continue to meet-and-confer on this subject.

## VII.    DISCLOSURES

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.*

**Plaintiffs' statement:**

Plaintiffs will serve their initial disclosures as soon as a protective order governing

1   confidentiality has been entered.

2         **Defendants' statement:**

3         Defendants do not believe that initial disclosures are appropriate until after the Court rules

4   on Defendants' motion to dismiss, because Defendants have raised substantial challenges to the

5   Court's jurisdiction over this case and over Defendants. Defendants propose a stay on discovery

6   until the Court resolves the motion to dismiss and, if necessary, the resolution of any interlocutory

7   appeal from the Court's decision.

8   **VIII.   DISCOVERY**

9         *Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations*

10  *or modifications of the discovery rules, a brief report on whether the parties have considered*

11  *entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ.*

12  *P. 26(f), and any identified discovery disputes.*

13        Plaintiffs have served a number of third party subpoenas and will promptly serve their

14  initial discovery requests. Defendants have not received any discovery requests from Plaintiffs and

15  have not yet served any discovery requests.

16        The parties will be in a position to discuss further the scope of anticipated discovery and

17  the substance of a stipulated e-discovery order after exchanging initial disclosures, initial

18  interrogatory responses and responses to document requests and can evaluate the number of

19  potential custodians and scope of discovery.

20        The parties' proposed discovery schedules are set forth in Section 17 below.

21        In addition, Local Civil Rule 16-10(b) provides that the CMC should "identify and set a

22  date for filing any motions that should be considered early in the pre-trial process." Plaintiffs

23  believe that there is one such issue that will define the scope of discovery and should be addressed

24  as soon as possible.  The parties should address whether Defendants will produce their

25  communications with their customers, who Defendants contend consist exclusively of sovereign

26  governments, relating to the use of Defendants' Spyware on the 1400 mobile phones and devices

27  described in the Complaint, as well as any other mobile phones and devices which were subject to

28  surveillance (or attempted surveillance) as a result of unauthorized access and abuse of the

WhatsApp service and computers.  Defendants' motion to dismiss argues that they did not commit any of the acts alleged in the Complaint and imply that all of the acts alleged in the Complaint were committed by their customers.  Thus, it is essential to the litigation of this case that Plaintiffs obtain early and complete access to Defendants' communications with its customers, to determine the extent to which Defendants were aware of the conduct alleged in the Complaint and participated in that conduct.

Defendants do not believe this issue could possibly be ripe until after Plaintiffs serve specific discovery requests and provide information about which 1400 WhatsApp users Plaintiffs claim were monitored and what evidence connects the "monitoring" to Pegasus software licensed by Defendants. Defendants do not know which if any of their customers were involved in the conduct described in the Complaint and thus cannot determine which communications would be relevant to Plaintiffs' claims. In addition, a request for "Defendants' communications with its customers," besides being overbroad on its face, would likely implicate contractual requirements and foreign privacy laws that affect Defendants' ability to produce its communications. Defendants cannot analyze the potential impact of those issues without a specific discovery request from Plaintiffs. Thus, without such a request, Defendants cannot determine whether it will be able or willing to produce the communications Plaintiffs describe.

## IX.   CLASS ACTIONS

*If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.*

Not applicable.

## X.   RELATED CASES

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

**Plaintiffs' statement**:

While not related within the meaning of Local Rule 3-12(a), the following case is related to the events at issue in this litigation. On November 26, 2019, eight current and former employees

of NSO filed a lawsuit against Facebook in Israel, which is being financed by NSO Group. *Azarzar v. Facebook, Inc.*, Civil File 62584-11-19 (Tel Aviv—Jaffa District Court). The plaintiffs in that case allege Facebook unlawfully terminated their Facebook and Instagram accounts. Facebook has argued in that case that it terminated the employees' accounts in response to the alleged conduct described in the Complaint in this case.

**Defendants' statement**:

Plaintiffs acknowledge that there are no "related" cases or proceedings within the meaning of Local Rule 3-12(a) because there are no pending proceedings that both "concern substantially the same parties, property, transaction or event" and will cause "an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." L.R. 3-12(a).  The fact that Plaintiffs identify the case pending in in Tel Aviv--Jaffa District Court, however, is a tacit acknowledgement that this case is "likely" to cause "an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges," *id.,* which demonstrates that this action should be dismissed in this Court and re-filed in Israel. *Hawaii Island Air, Inc. v. Merlot Aero Ltd.*, 2015 WL 675512, at *16 (D. Haw. Jan. 30, 2015); see *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002) (finding personal jurisdiction unreasonable where related lawsuit was pending in foreign forum).

## XI.   RELIEF

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

Plaintiffs seek the following relief:

- Judgment against Defendants that Defendants have:
    - Violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;
    - Violated the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502;

1

- o      Breached their contracts with WhatsApp in violation of California law; and

2

- o      Wrongfully trespassed on Plaintiffs' property in violation of California law.

3

- Permanent injunction enjoining and restraining Defendants and their agents,

4 servants, employees, successors, and assigns, and all other persons acting in concert

5 with or conspiracy with any of them or who are affiliated with Defendants from:

6

- o      Accessing or attempting to access WhatsApp's and Facebook's service,

7 platform, and computer systems;

8

- o      Creating or maintaining any WhatsApp or Facebook account;

9

- o      Engaging in any activity that disrupts, diminishes the quality of, interferes

10 with the performance of, or impairs the functionality of Plaintiffs' service,

11 platform, and computer systems; and

12

- o      Engaging in any activity, or facilitating others to do the same, that violates

13 WhatsApp's or Facebook's Terms.

14

- Compensatory, statutory, and punitive damages, as permitted by law and in such

15 amounts to be proven at trial.

16

- Reasonable costs, including reasonable attorneys' fees

17

- Pre- and post-judgment interest as allowed by law.

18 Defendants' position is that Plaintiffs' statement of the relief sought is inadequate because

19 it does not identify "the amount of any damages sought"—as the Court's Standing Order

20 specifically requires—or provide any "description of the bases on which damages are calculated."

21 Without that information, it is not possible to determine what discovery will be proportionate to

22 the needs of the case.

23 **XII.  SETTLEMENT AND ADR**

24      *Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case,*

25 *including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary*

26 *to position the parties to negotiate a resolution.*

27      **Parties' Joint Statement:**

28      The parties met-and-conferred regarding settlement in the Rule 26(f) conference and filed

their certifications pursuant to ADR L.R. 3.5.  The parties have elected to discuss ADR selection with the Court at the Initial Case Management Conference.

**Plaintiffs' Additional Statement:**

Counsel for Defendants has also contacted counsel for Plaintiffs to discuss the possibility of settlement.

**Defendants' Response to Plaintiff's Additional Statement:**

Plaintiff's Statement about the parties' settlement discussions is improper and it is plainly an attempt to prejudice the Court.  It is in any event an incomplete and inaccurate recital of the parties' discussions to date.

**XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.   ___ Yes  _x_ No*

**XIV.   OTHER REFERENCES**

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

This case is not suitable for such reference.

**XV.   NARROWING OF ISSUES**

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

The Parties do not believe any issues can be narrowed by agreement at this time.

**XVI.   EXPEDITED TRIAL PROCEDURE**

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64 Attachments B and D.*

The Parties do not believe this is the type of case that should be handled under the Expedited Trial Procedure of General Order No. 64.

**XVII.  SCHEDULING**

*Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

The Plaintiffs propose the following case schedule:

- December 31, 2020:   Last date for substantial completion of party document discovery.
- March 31, 2021:  Fact discovery cutoff.
- April 15, 2021:  Last date for initial expert disclosures (on all issues for which either party has the burden of proof).
- May 15, 2021:  Last date for rebuttal expert disclosures
- May 31, 2021:  Last date for completion of expert depositions and expert discovery.
- July 2, 2021:  Last date to file dispositive motions.
- November 18, 2021: Final pretrial conference
- December 6, 2021: Trial.

The Defendants propose the following case schedule:

- April 15, 2021:  Last date for initial expert disclosures (on all issues for which either party has the burden of proof).
- May 15, 2021:  Last date for rebuttal expert disclosures.
- June 2, 2021: Discovery cutoff. (Defendants do not believe separate deadlines for document, fact, and expert discovery are necessary or appropriate.)
- July 2, 2021: Last date to file dispositive motions.
- November 18, 2021: Final pretrial conference.
- December 6, 2021: Trial.

**XVIII. TRIAL**

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

Plaintiff requests a jury trial and respectfully submits that it is too soon to predict the trial's likely length.

In the experience of counsel for Defendants, few trials require more than 10 court days.

## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.*

**Plaintiffs' statement:**

Plaintiffs filed their Certificate of Interested Entities on October 29, 2019. ECF No. 6 and hereby restate that there is no such interest to report.

**Defendants' statement:**

Defendants filed their Certificate of Interested Entities on March 6, 2020 (Dkt. No. 25). Defendants have amended their Certificate of Interested Entities to state that OSY Technologies has an interest in Defendant Q Cyber.  No other entity has a financial interest, as defined by 28 U.S.C. § 455(d)(4), in either Defendant.

## XX.   PROFESSIONAL CONDUCT

*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

Counsel for Plaintiffs and Defendants have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI.   OTHER

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

The Parties' counsel are not aware of other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

Dated: May 21, 2020                    Respectfully submitted,

                                       COOLEY LLP

                                       /s/ Travis LeBlanc
                                       Michael Rhodes

                                       Travis LeBlanc
                                       Daniel J. Grooms
                                       Kyle C. Wong
                                       Elizabeth B. Prelogar
                                       Joseph D. Mornin


                                       Michael R. Dreeben
                                       O'MELVENY & MYERS LLP

                                       Attorneys for Plaintiffs
                                       WHATSAPP INC. and FACEBOOK, INC.


                                       KING & SPALDING LLP

                                       /s/ Joseph N. Akrotirianakis
                                       Joseph N. Akrotirianakis
                                       Aaron S. Craig

                                       Attorneys for Defendants
                                       NSO GROUP TECHNOLOGIES
                                       LIMITED and Q CYBER TECHNOLOGIES
                                       LIMITED


                            ATTESTATION

       I, Travis LeBlanc, attest that concurrence in the filing of this documents has been

obtained from each of the other signatories.  Executed on May 21, 2020.



                                       /s/ Travis LeBlanc
                                       Travis L. LeBlanc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## __CASE MANAGEMENT ORDER__

2        The above CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER is

3   approved as the Case Management Order for this case and all parties shall comply with its

4   provisions. [In addition, the Court makes the further orders stated below:]

5   IT IS SO ORDERED:

6

7   Dated: _____        _____

8                                                      Judge Phyllis J. Hamilton

    226576768

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28