JOSEPH P. MCMONIGLE, Bar No. 66811
JESSICA R. MACGREGOR, Bar No. 168777
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, California 94104
Telephone:    (415) 397-2222
Facsimile:    (415) 397-6392
Email:        jmcmonigle@longlevit.com
              jmacgregor@longlevit.com

Specially Appearing For Third Party
KING & SPALDING LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED,<br><br>    Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DECLARATION OF M. ROBERT THORNTON IN SUPPORT OF OPPOSITION TO WHATSAPP'S MOTION TO DISQUALIFY DEFENSE COUNSEL BASED ON PRIOR REPRESENTATION IN A SEALED MATTER**<br><br>Hearing Date:  June ___, 2020<br>Time:          9:00 a.m.<br>Courtroom:     3, 3rd Floor<br>Judge:         Honorable Phyllis J. Hamilton |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

---

DECLARATION OF M. ROBERT THORNTON    1    Case No. 4:19-cv-07123-PJH

JOSEPH P. MCMONIGLE, Bar No. 66811
JESSICA R. MACGREGOR, Bar No. 168777
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, California 94104
Telephone:   (415) 397-2222
Facsimile:   (415) 397-6392
Email:       jmcmonigle@longlevit.com
             jmacgregor@longlevit.com

Specially Appearing For Third Party
KING & SPALDING LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DECLARATION OF M. ROBERT THORNTON IN SUPPORT OF OPPOSITION TO WHATSAPP'S MOTION TO DISQUALIFY DEFENSE COUNSEL BASED ON PRIOR REPRESENTATION IN A SEALED MATTER**<br><br>Hearing Date:   June ___, 2020<br>Time:           9:00 a.m.<br>Courtroom:      3, 3rd Floor<br>Judge:          Honorable Phyllis J. Hamilton |

DECLARATION OF
M. ROBERT THORNTON

1

Case No. 4:19-cv-07123-PJH

## DECLARATION OF M. ROBERT THORNTON

I, M. Robert Thornton, declare as follows:

1.  I am a member of the State Bar of Georgia. I am a partner in and the General Counsel for the law firm King & Spalding LLP ("K&S" or the "Firm"). I am resident in K&S's Atlanta office. I submit this declaration in support of K&S's Opposition to WhatsApp's Motion to Disqualify Defense Counsel Based on Prior Representation. I have personal knowledge of the facts in this declaration or, with respect to the Firm's records, I am speaking as the Custodian of Records. If called to testify, I could and would competently testify to these facts.

2.  Since approximately 1990, I have served as K&S's General Counsel. In my capacity as General Counsel, I indirectly supervise K&S's records management and information governance function. I have access to the Firm's (a) business records, including archived records, and (b) case management records, including billing records in closed matters.

3.  On March 18, 2020, I received via email a letter of the same date addressed jointly to me in my capacity as General Counsel and to my partners Paul Mezzina and Joseph Akrotirianakis from Travis LeBlanc of the law firm Cooley LLP ("Cooley"), who identified himself as counsel for WhatsApp and Facebook in this action ("LeBlanc Letter"). The LeBlanc Letter stated in substance that K&S's ongoing or prior representation of WhatsApp in connection with ▮▮▮▮▮▮▮▮▮▮▮▮ ("Sealed Matter"), created a disqualifying conflict of interest in this action. The LeBlanc Letter also requested that K&S provide its file from the Sealed Matter to Cooley.

### A.   Brief Overview of K&S's Retention in the Sealed Matter

4.  After receiving the LeBlanc Letter, I ran a conflicts search on WhatsApp and Facebook and determined that the Firm's file on the Sealed Matter was closed on July 7, 2016 and that the Firm had no other open matters for WhatsApp or Facebook. Therefore, there was no current client conflict.

5.  I then retrieved what little remained of the Sealed Matter file. First, I determined that there was no complete or even nearly complete file on the Sealed Matter either in hard copy or electronically. As I explain in more detail below, the extant Sealed Matter file materials include archived emails for the attorneys who recorded time on the matter; a small number of files on the

firm's document management system; archived hardcopy working files of Christopher Wray and Ms. Cathy O'Neil; and electronic billing records.

6. I reviewed these client file materials and produced them to Mr. LeBlanc in two tranches: one on April 17, 2020 and the other on May 8, 2020.

### B. The K&S Attorneys Directly or Tangentially Involved in the Sealed Matter

7. Based on my review of the Sealed Matter documents, I confirmed that only four K&S attorneys recorded time on the file: Christopher Wray; Cathy O'Neil; Nick Oldham; and Paul Mezzina. One other K&S attorney – Merritt McCallister - apparently had one email communication with Mr. Mezzina, for which she recorded no time. The only other person to record time on this file was Michaela Desrosiers, a legal assistant. She left the Firm on July 1, 2017.

8. Mr. Wray was a K&S partner based in the Atlanta office. He left the Firm in August 2017 after he was nominated to serve as Director of the FBI. He was confirmed in August 2017 and is currently serving in that position.

9. Ms. O'Neil was a K&S partner based in the Atlanta office. She passed away in October 2017 after battling pancreatic cancer.

10. Mr. Oldham was a K&S partner based in the Atlanta office. He left the Firm in December 2017 to work at Equifax, Inc. and is now Chief Privacy and Data Governance Officer at Equifax.

11. Mr. Mezzina was a K&S associate between 2014-2016. He became a partner in 2017. He left the Firm in 2018 to clerk for U.S. Supreme Court Justice Neil Gorsuch and returned to the Firm as a partner on January 6, 2020.

12. Ms. McCallister was a K&S partner who left the Firm in April 2018 to become a professor at the University of Florida School of Law. It is my understanding that she is still in that position.

13. K&S began representing NSO on or about February 1, 2020.

### C. Length of Retention and Hours Billed in the Sealed Matter

14. K&S opened its file in the Sealed Matter on December 23, 2015.

15. The Firm issued a total of four bills between January 2016 and April 21, 2016.

16.     The last time recorded and billed in the Sealed Matter was a March 16, 2016 entry of one tenth of an hour for Mr. Wray's review of an email.

17.     K&S billed a total of 93.6 hours between December 15, 2016 and March 16, 2016. I have attached as Exhibit 1 to this declaration a true and correct copy of the Firm's time entries in the Sealed Matter as contained in the Firm's Finance Department records. Exhibit 1 shows the following total hours recorded by each attorney in the Sealed Matter: Ms. O'Neil—45.2 hours; Mr. Wray—32.7 hours; Mr. Mezzina—7.9 hours; and Mr. Oldham—7.4 hours. Ms. Desrosiers billed .7 hours. Although the time entries in Exhibit 1 for Mr. Mezzina state that he was a partner at the time he did the work in February 2016, that is incorrect. He was a senior associate at the time. Exhibit 1 was printed on March 27, 2020, at which time Mr. Mezzina was a partner.

18.     I have attached as Exhibit 2 to this declaration a copy of Mr. Mezzina's only time entries in the Sealed Matter as contained in the Firm's Finance Department records.

19.     K&S billed WhatsApp a total of approximately $86,125.

20.     On July 6, 2016, K&S received a closing notice from WhatsApp's billing platform, Serengeti.

21.     K&S closed its file in the Sealed Matter on July 7, 2016.

### D.     The Extant Sealed Matter File:  Inaccessible to K&S Attorneys and Staff, Including Mr. Mezzina and the NSO Defense Team

22.     When each of the attorneys who recorded any time on the Sealed Matter left the Firm, their Outlook data was archived and became inaccessible to K&S staff and attorneys absent a specific request to access it made through the Firm's IT Department and approved by the General Counsel's office.

23.     To provide the Sealed Matter emails to WhatsApp in response to the LeBlanc Letter, I requested that the archived Outlook data for Messrs. Wray, Oldham, and Mezzina and Ms. O'Neil be made available. None of those attorneys had segregated and filed all of their Sealed Matter emails in a folder devoted to the Sealed Matter. Their Sealed Matter emails were contained in their Outlook Inbox and Sent Items folder among thousands of other emails related to other matters. At my direction, my legal assistant and the Firm's IT staff retrieved emails from this archived Outlook data, restored them, and conducted electronic searches to identify the emails that related to the Sealed Matter. Those Sealed Matter emails were then provided to me and my legal assistant to

review.

24. Outside of the limited personnel within the General Counsel's office and the staff working at my direction on this project or on unrelated document productions, no attorney or staff member, including any attorney or staff member who has performed any work on the NSO matter, has access to the archived Outlook data for Messrs. Wray, Oldham, and Mezzina or Ms. O'Neil. Even though he returned to the Firm in January 2020, Mr. Mezzina does not have access to his archived Outlook data from prior to his departure in 2018 to clerk for Justice Gorsuch.

25. A folder for the Sealed Matter exists on K&S's document management system ("DMS"). There are seven subfolders, four of which contain no documents.

26. After I received the LeBlanc Letter, I reviewed the materials in this Sealed Matter DMS folder for production to Mr. LeBlanc's firm. Working with the Firm's IT director, I confirmed that with one exception, no current K&S attorney or staff had accessed the Sealed Matter workspace since March 2016 except at my direction after my receipt of Mr. LeBlanc's March 18, 2020 Letter. A K&S partner resident in the New York office accessed a notice of appearance (attached hereto as Exhibit 22) on March 25, 2016; he accessed no other documents. The next time anyone at K&S accessed the workspace in the Sealed Matter was on March 18, 2020, when I and members of my staff began gathering extant case materials in response to the LeBlanc Letter. No member of the NSO litigation team - Joseph Akrotirianakis, Aaron Craig, Rod Rosenstein, Sumon Dantiki, and Matthew Noller has ever accessed documents in the Sealed Matter. Access to the workspace is now locked except to members of the General Counsel's office.

27. Mr. Wray's and Ms. O'Neil's paper working files were sent to offsite storage at Iron Mountain in March and July 2017. According to K&S records, no one requested or accessed those files from the time they were sent to offsite storage until I recalled them and they were delivered to me on or about March 19, 2020 as part of my efforts to respond to the LeBlanc Letter. No member of the NSO defense team had ever asked that the file be recalled or been given access. Since I recalled the file from Iron Mountain, it has been maintained under my control and has not been accessed by any member of the NSO defense team, nor will it be.

28. The Firm's billing records in closed matters, such as the Sealed Matter, are maintained by the Finance Department and are not accessible to Firm attorneys absent a specific request. Finance Department personnel with access to billing records have been instructed not to

provide access to or information about the billing records in the Sealed Matter unless approved by the General Counsel's office.

29. To ensure all members of the NSO defense team remained screened from the Sealed Matter materials, K&S hired outside counsel at the Long & Levit firm to represent it to oppose WhatsApp's Motion to Disqualify. The NSO defense team did not receive or review the unredacted Motion to Disqualify and has confined its participation in the preparation of the opposition to providing declarations concerning the state of their knowledge of the Sealed Matter, the history of the NSO Litigation, and the legal issues in the NSO Litigation.

### E.   Screening of Mr. Paul Alessio Mezzina

30. Mr. Mezzina is resident in the Firm's Washington, D.C. office. Upon our receipt of the LeBlanc's Letter, Mr. Mezzina was informed that he should not discuss any aspect of the Sealed Matter with anyone on the NSO defense team. He has also been informed that he does not have access to the NSO case files, and that he should not attempt to access those case files.

31. Mr. Mezzina cannot access the Sealed Matter documents.

32. Mr. Mezzina cannot access the file materials in the NSO litigation.

### F.   Response to Mr. LeBlanc

33. After I had completed my review of the file materials from the Sealed Matter and had several phone calls with Mr. LeBlanc about the substance of the LeBlanc Letter, I informed Mr. LeBlanc that K&S was not going to voluntarily withdraw from the NSO Litigation because, in substance, (a) there was no current client conflict because K&S has no open matters for WhatsApp or Facebook; (b) we did not agree that the Sealed Matter was substantially related to the NSO litigation; and (c) we did not agree that whatever confidential information the Firm may have obtained in the Sealed Matter was substantially related to the issues in the NSO Litigation. I also informed Mr. LeBlanc that the NSO defense team had not accessed any of the Sealed Matter file materials, nor would they or could they in the future; that Mr. Mezzina was not a member of the NSO defense team and had not shared any information from the Sealed Matter with the NSO defense team, nor would he; and that Mr. Mezzina had not accessed and could not assess the NSO case files. As a result, there was no chance that the NSO defense team would use any confidential information from the Sealed Matter in defending the NSO Litigation. I asked Mr. LeBlanc to share this with his

1  clients and see if they would accept this arrangement and not seek to disqualify K&S. He said that
2  he would do so. He later informed me that his clients would not agree.

### G. Authentication of Documents (As Custodian of Records)

I have attached as Exhibits to this declaration true and correct copies of the following documents as contained and maintained in the Firm's files and records:

34. KS_WHATSAPP_0000001 – Email from Mark Kahn to Chris Wray with copy to Chris Sonderby dated December 17, 2015 regarding ▮▮▮▮▮ attached as Exhibit 3.

35. KS_WHATSAPP_0000457-514 – Email string from Marc Zwillinger to Mark Kahn, Anne Hoge, Chris Sonderby, Colin Stretch, Todd Hinnen, Chris Wray, and Cathy O'Neil dated January 15, 2016 attaching ▮▮▮▮▮ attached as Exhibit 4.

36. KS_WHATSAPP_0002861-2862 – Email string between Cathy O'Neil and Nick Oldham dated January 25, 2016 regarding ▮▮▮▮▮ attached as Exhibit 5.

37. KS_WHATSAPP_0002548 – Email from Cathy O'Neil to Nick Oldham dated February 8, 2016 regarding ▮▮▮▮▮, attached as Exhibit 6.

38. KS_WHATSAPP_0001995-2052 – Email string from Nick Oldham to Cathy O'Neil and Paul Mezzina dated February 10, 2016 attaching the ▮▮▮▮▮, attached as Exhibit 7.

39. KS_WHATSAPP_0002053 – Email string from Paul Mezzina to Nick Oldham and Cathy O'Neil dated February 10, 2016 regarding ▮▮▮▮▮ attached as Exhibit 8.

40. KS_WHATSAPP_0002056-57 – Email string rom Paul Mezzina to Cathy O'Neil and Nick Oldham dated February 10, 2016 regarding ▮▮▮▮▮ attached as Exhibit 9.

41. KS_WHATSAPP_0002059-61 – Email string from Nick Oldham to Paul Mezzina and Cathy O'Neil dated February 10, 2016 regarding ▉▉▉ ▉▉▉ attached as Exhibit 10.

42. KS_WHATSAPP_0002065-68 – Email string from Nick Oldham to Cathy O'Neil with copy to Paul Mezzina dated February 10, 2016 regarding ▉▉▉, attached as Exhibit 11.

43. KS_WHATSAPP_0002069-92 – Email string from Paul Mezzina to Cathy O'Neil and Nick Oldham dated February 10, 2016 ▉▉▉ attached as Exhibit 12.

44. KS_WHATSAPP_0002104-09 – Email string from Paul Mezzina to Nick Oldham dated February 10, 2016 regarding ▉▉▉ attached as Exhibit 13.

45. KS_WHATSAPP_0002117-23 – Email string from Paul Mezzina to Nick Oldham dated February 10, 2016 regarding ▉▉▉ attached as Exhibit 14.

46. KS_WHATSAPP_0002154-56 – Email string from Cathy O'Neil to Paul Mezzina and Nick Oldham dated February 11, 2016 requesting ▉▉▉ attached as Exhibit 15.

47. KS_WHATSAPP_0002182-2309 – Email string from Paul Mezzina to Cathy O'Neil and Nick Oldham dated February 11, 2016 attaching the ▉▉▉ attached as Exhibit 16.

48. KS_WHATSAPP_0002324-30 – Email string from Paul Mezzina to Nick Oldham dated February 11, 2016 regarding ▉▉▉, attached as Exhibit 17.

49. KS_WHATSAPP_0002341-53 – Email string from Nick Oldham to Paul Mezzina dated February 11, 2016 with ▉▉▉, attached as Exhibit 18.

50. KS_WHATSAPP_0002393-95 – Email string from Cathy O'Neil to Nick Oldham with copy to Paul Mezzina dated February 11, 2016 requesting ▉▉▉ attached as Exhibit 19.

51. KS_WHATSAPP_0002498 – Email sting from Merrit McAlister to Paul Mezzina dated February 11, 2016 regarding ███████████, attached as Exhibit 20.

52. KS_WHATSAPP_0003108-10 – Email string from Nick Oldham to Cathy O'Neil dated Ferbruary 14, 2016 regarding ██████, attached as Exhibit 21.

53. KS_WHATSAPP_0001506-7 – Draft Notice of Appearance in Sealed Matter dated February 16, 2016, attached as Exhibit 22

54. KS_WHATSAPP_0000999 – Email string from Chris Wray to Mark Kahn and Cathy O'Neil with copy to Brian Hennessy dated March 16, 2016 stating ██████████, attached as Exhibit 23.

55. KS_WHATSAPP_0000793-95 – Email string from Cathy O'Neil to Mark Kahn with copy to Chris Wray dated June 2, 2016 regarding ████████████████████████████████████████, attached as Exhibit 24.

56. KS_WHATSAPP_0001001-2 – Email string from Chris Wray to JoAnne Harris dated July 6, 2016 regarding writing off 0.1 hours to close file, attached as Exhibit 25.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 29th day of May, 2020, in Atlanta, Georgia.

By: *M. Robert Thornton*
M. ROBERT THORNTON

# EXHIBITS 1 – 25

# SOUGHT TO BE SEALED IN THEIR ENTIRETY