JOSEPH P. MCMONIGLE, Bar No. 66811
JESSICA R. MACGREGOR, Bar No. 168777
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, California  94104
Telephone:    (415) 397-2222
Facsimile:    (415) 397-6392
Email:        jmcmonigle@longlevit.com
              jmacgregor@longlevit.com

Specially Appearing For Third Party
KING & SPALDING LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No.  4:19-cv-07123-PJH<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF KING & SPALDING LLP'S OPPOSITION TO MOTION TO DISQUALIFY**<br><br>Date:       June ___, 2020<br>Time:       9:00 a.m.<br>Courtroom:  3, Third Floor<br>Judge:      Hon. Phyllis J. Hamilton |

King & Spalding, ("K&S") requests that the Court take judicial notice of the "New Rule of Professional Conduct 1.10, Executive Summary" (Exhibit 1) under Rule 201 of the Federal Rules of Evidence and the authority cited below.

Under Fed. R. Evid. 201(b), courts may take judicial notice of matters of public record if the facts are not subject to reasonable dispute.  "Courts may take judicial notice of some public records, including the records and reports of administrative bodies." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (internal quotation marks and citations omitted).

* * *

* * *

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

REQUEST FOR JUDICIAL NOTICE
4:19-CV-07123-PJH

Accordingly, K&S respectfully request that the Court take judicial notice of the "New Rule of Professional Conduct 1.10, Executive Summary."

Dated: May 29, 2020.

LONG & LEVIT LLP

By: */s/ Jessica R. MacGregor*
JESSICA R. MACGREGOR
Specially Appearing For Third Party
KING & SPALDING LLP

4810-9620-5502, v. 1

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

# EXHIBIT 1

![The State Bar of California]

**Rule 1.10 Imputation of Conflicts of Interest: General Rule**
**(Rule Approved by the Supreme Court, Effective November 1, 2018)**

(a)   While lawyers are associated in a firm,* none of them shall knowingly* represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.7 or 1.9, unless

   (1)   the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm;* or

   (2)   the prohibition is based upon rule 1.9(a) or (b) and arises out of the prohibited lawyer's association with a prior firm,* and

      (i)   the prohibited lawyer did not substantially participate in the same or a substantially related matter;

      (ii)  the prohibited lawyer is timely screened* from any participation in the matter and is apportioned no part of the fee therefrom; and

      (iii) written* notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this rule, which shall include a description of the screening* procedures employed; and an agreement by the firm* to respond promptly to any written* inquiries or objections by the former client about the screening* procedures.

(b)   When a lawyer has terminated an association with a firm,* the firm* is not prohibited from thereafter representing a person* with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm,* unless:

   (1)   the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

   (2)   any lawyer remaining in the firm* has information protected by Business and Professions Code section 6068, subdivision (e) and rules 1.6 and 1.9(c) that is material to the matter.

(c)   A prohibition under this rule may be waived by each affected client under the conditions stated in rule 1.7.

(d)   The imputation of a conflict of interest to lawyers associated in a firm* with former or current government lawyers is governed by rule 1.11.

1

**Comment**

[1]	In determining whether a prohibited lawyer's previously participation was substantial,* a number of factors should be considered, such as the lawyer's level of responsibility in the prior matter, the duration of the lawyer's participation, the extent to which the lawyer advised or had personal contact with the former client, and the extent to which the lawyer was exposed to confidential information of the former client likely to be material in the current matter.

[2]	Paragraph (a) does not prohibit representation by others in the law firm* where the person* prohibited from involvement in a matter is a nonlawyer, such as a paralegal or legal secretary.  Nor does paragraph (a) prohibit representation if the lawyer is prohibited from acting because of events before the person* became a lawyer, for example, work that the person* did as a law student. Such persons,* however, ordinarily must be screened* from any personal participation in the matter. (See rules 1.0.1(k) and 5.3.)

[3]	Paragraph (a)(2)(ii) does not prohibit the screened* lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is prohibited.

[4]	Where a lawyer is prohibited from engaging in certain transactions under rules 1.8.1 through 1.8.9, rule 1.8.11, and not this rule, determines whether that prohibition also applies to other lawyers associated in a firm* with the personally prohibited lawyer.

[5]	The responsibilities of managerial and supervisory lawyers prescribed by rules 5.1 and 5.3 apply to screening* arrangements implemented under this rule.

[6]	Standards for disqualification, and whether in a particular matter (1) a lawyer's conflict will be imputed to other lawyers in the same firm,* or (2) the use of a timely screen* is effective to avoid that imputation, are also the subject of statutes and case law. (See, e.g., Code Civ. Proc., § 128, subd. (a)(5); Pen. Code, § 1424; *In re Charlisse C.* (2008) 45 Cal.4th 145 [84 Cal.Rptr.3d 597]; *Rhaburn v. Superior Court* (2006) 140 Cal.App.4th 1566 [45 Cal.Rptr.3d 464]; *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776 [108 Cal.Rptr.3d 620].)

**NEW RULE OF PROFESSIONAL CONDUCT 1.10**
**(No Former Rule)**
**Imputation of Conflicts of Interest: General Rule**

**EXECUTIVE SUMMARY**

The Commission for the Revision of the Rules of Professional Conduct ("Commission") evaluated current rule 3-310 (Avoiding the Representation of Adverse Interests) in accordance with the Commission Charter. In addition, the Commission considered the national standard of the ABA counterparts, a series of rules that address conflicts of interest as they might arise in a number of different situations. The conflicts of interest Model Rules include four rules that correspond directly to the provisions of current rule 3-310: 1.7 (current client conflicts) [rule 3-310(B) and (C)]; 1.8(f) (third party payments) [rule 3-310(F)]; 1.8(g) (aggregate settlements) [rule 3-310(D)]; and 1.9 (Duties To Former Clients) [rule 3-310(E)]. The Model Rules also include Model Rule 1.8, which compiles in a single rule 10 separate conflicts of interest concepts,[1] and Model Rules 1.10 (general rule of imputation and ethical screening in private firm context), 1.11 (conflicts involving government lawyers), and 1.12 (conflicts involving former judges, third party neutrals and their staffs).

**Rule As Issued For 90-day Public Comment**

The result of the Commission's evaluation is a two-fold recommendation for implementing:

(1) the Model Rules' framework of having (i) separate rules that regulate the different conflicts of interest situations currently regulated by a single rule, rule 3-310: proposed rules 1.7 (current clients), 1.8.6 (payments from one other than client), 1.8.7 (aggregate settlements) and 1.9 (former clients); and (ii) several rules to address concepts that are currently found in case law but not in the Rules of Professional Conduct: proposed rules 1.10 (general rule of imputation of conflicts and ethical screening in private firm context), 1.11 (conflicts involving former and current government lawyers), and 1.12 (conflicts involving former judges, third party neutrals, and their staffs).

(2) proposed rule 1.10 (imputation and ethical screening), which would incorporate into a rule of professional conduct the imputation within a law firm of conflicts of interest, a concept that is currently addressed only in California case law, and also would permit the erection of an ethical screen in narrowly defined circumstances to avoid the imposition of such imputations. Proposed rule 1.10 largely adheres to the structure and substance of Model Rule 1.10 but significantly differs in the extent to which a private firm is permitted to erect an ethical screen around a lawyer who has moved laterally from another private firm. Unlike the Model Rule, which broadly permits screening, i.e., it would permit the principal lawyer in the same matter to be screened, the proposed rule would permit screening only in limited situations, i.e., if the prohibited lawyer did "not substantially participate" in the matter at issue.

---

[1] Rather than gather disparate conflicts concepts in a single rule, the Commission has recommended that each provision that corresponds to a concept in Model Rule 1.8 be assigned a separate rule number as is done in the current California rules. For example, the proposed rule corresponding to Model Rule 1.8(a) is numbered 1.8.1; the rule corresponding to Model Rule 1.8(b) is numbered 1.8.2, and so forth. Each of these rules is addressed in separate executive summaries.

1. ***Recommendation of the ABA Model Rule Conflicts Framework***. The rationale underlying the Commission's recommendation of the ABA's multiple-rule approach is its conclusion that such an approach should facilitate compliance with and enforcement of conflicts of interest principles. Among other things, separate rules should reduce confusion and provide out-of-state lawyers, who often practice in California under one of the multijurisdictional practice California Rules of Court (9.45 to 9.48) with quick access to the rules governing their specific conflicts problem. At the same time, this approach will promote a national standard for how the different conflicts of interest principles are organized within the rules.[2]

2. ***Recommendation of addressing the concepts of imputation and screening in a rule that tracks the organization of Model Rule 1.10***. There are four separate provisions in the proposed rule, two of which set forth the rules regarding imputation as it has been developed in case law in California (paragraphs (a) and (b)), one which provides that a client can waive the rule's application (paragraph (c)), and one which excludes government lawyers from the application of the rule (they are governed by rule 1.11).

There are a number of reasons for the Commission's recommendation. *First*, adopting the structure, format and language of the Model Rule, as supplemented by language and law developed in California case law, should protect client interests by clearly establishing in paragraph (a) that imputation is the default situation that can be avoided only if the conflict is personal to the prohibited lawyer, the lawyer is screened under narrowly specified conditions, or the client waives the rule's application. *Second*, permitting the exception for screening a lawyer who "did not substantially participate" in the contested matter will provide flexibility for lawyers to move laterally without creating a significant risk that a lawyer who has acquired sensitive confidential information about the former clients is now in the opposing party's law firm. *Third*, adopting a limited screening provision will place in a rule of professional conduct an approach to screening that was sanctioned in *Kirk v. First American Title Ins. Co.*, 183 Cal.App.4th 776, 108 Cal.Rptr.3d 620 (2010), *review denied* (6/23/2010). *Fourth*, including paragraph (c) regarding waiver will expressly permit what is already implied in current rule 3-310, i.e., that the client can consent to a conflicted representation.

Paragraph (a) of proposed rule 1.10 sets forth the default rule in the introductory clause: any prohibition on representation under rules 1.7 (current client conflict) or 1.9 (former client conflict) will be imputed to all lawyers in the firm unless either subparagraph (a)(1) or (2) applies.

Subparagraph (a)(1) provides that a prohibition based on a lawyer's "personal interest" (e.g., close personal or professional relationship) is not imputed to other lawyers in the firm so long as that interest does not create a significant risk of materially limiting the representation of the firm's client.

---

[2] Every other jurisdiction in the country has adopted the ABA conflicts rules framework. In addition to the identified provisions, the Model Rules also include Model Rule 1.8, which includes eight provisions in addition to paragraphs (d) and (f) that cover conflicts situations addressed by standalone California rules (e.g., Model Rule 1.8(a) is covered by California rule 3-300 [Avoiding Interests Adverse To A Client] and Model Rule 1.8(e) is covered by California rule 4-210 [Payment of Personal or Business Expenses By Or For A Client)].)

Further, the Model Rules also deal with concepts that are addressed by case law in California: Model Rules 1.10 (Imputation of Conflicts and Ethical Screening); 1.11 (Conflicts Involving Government Officers and Employees); and 1.12 (Conflicts Involving Former Judges and Judicial Employees). The Commission is recommending rule counterparts to those rules, each of which is the subject of a separate executive summary.

Subparagraph (a)(2), the screening provision, is derived from the corresponding paragraph in Model Rule 1.10 but has been modified to reflect that the rule is a disciplinary rule rather than a civil standard for disqualification (substitution of "prohibited" for "disqualified"). In addition, unlike the Model Rule, which broadly permits screening,[3] subparagraph (a)(2) provides for screening only in limited circumstances.[4] Under subparagraph (a)(2), a prohibited lawyer's conflict will not be imputed to other lawyer's in the firm so long as the prohibited lawyer did not substantially participate in the contested matter, is timely screened, and written notice is provided to any affected former client to enable the latter to ascertain compliance with the rule. Specifics on what constitutes an effective screen are provided in rule 1.0.1(k) and associated comments.

The phrase "arises out of the personally prohibited lawyer's association with a prior firm" further limits the availability of screening to situations where a prohibited lawyer has moved laterally from another firm. Put another way, a law firm could not erect a screen around those firm lawyers who had represented a former client when the lawyers were associated in the same firm in order to represent a new client against that former client. This is an appropriate limitation on screening and parallels the availability of screening for current and former government lawyers (rule 1.11) and former judicial personnel (rule 1.12) only when such lawyers move to new employment.

Paragraph (b) incorporates Model Rule 1.10(b), which was adopted as the law of California by the court in *Goldberg v. Warner/Chappell Music, Inc.* (2005) 125 Cal.App.4th 752 [23 Cal.Rptr.3d 116]. The concept recognized in *Goldberg* is that if a lawyer who has represented a client and acquired confidential information has left the firm, and no other lawyer who has acquired confidential information remains, then there is no one left in the firm with knowledge that can be imputed to other lawyers in the firm.

Paragraph (c) expressly states what is already implied in current rule 3-310, which provides that a client can give informed written consent to a conflicted representation. If a client can consent to such a representation, then it should follow that a client can waive the imputation of one lawyer's conflict to other lawyers in the firm.

---

[3] The term **"broadly permits screening"** is used to describe an ethical screen provision that permits screening even if the screened lawyer had a substantial and direct involvement in the former client's case, and even if the former and current clients' cases were "substantially related." A rule that broadly permits screening in effect would put private lawyers on equal footing as government lawyers who move from government to private practice or from private practice to government. Even a government lawyer who "personally and substantially participated" in the relevant matter can be screened.

Only four jurisdictions have adopted the Model Rule 1.10(a)(2) screening provisions verbatim: Connecticut, Idaho, Iowa and Wyoming. Nevertheless, there are 14 other jurisdictions that have adopted screening provisions that broadly permit screening of private lawyers similar to the Model Rule: Arizona, Delaware, D.C., Illinois, Kentucky, Maryland, Michigan, Montana, North Carolina, Oregon, Pennsylvania, Rhode Island, Utah and Washington.

[4] The term **"limited screen"** is used to describe a screening provision that permits screening only if a lawyer did not "substantially participate," or was not "substantially involved," did not have a "substantial role," did not have "primary responsibility," etc., in the former client's matter, or when any confidential information that the lawyer might have obtained is deemed "not material" to the current representation, or "is not likely to be significant."

Fourteen jurisdictions permit screening in limited situations: Colorado, Hawaii, Indiana, Massachusetts, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Tennessee, Vermont, and Wisconsin.

Paragraph (d) excludes government lawyers from the application of this rule and directs such lawyers to rule 1.11, which incorporates its own imputation provisions for conflicts involving current and former government lawyers.

As initially circulated for public comment, there were five comments to proposed rule 1.10, all of which provide interpretative guidance or clarify how the proposed rule, which identifies several situations under which imputation can be avoided or does not apply, should be applied. Comment [1] notes that the rule does not apply when the prohibited person is a nonlawyer, for example, a secretary, or a person who acquired confidential information as a nonlawyer, e.g., a law student, but cautions that such a person should be screened. Comment [2] clarifies the application of paragraph (a)(2)(ii) to partnership shares. Comment [3] clarifies that rule 1.8.11, not rule 1.10, applies to conflicts that arise under the 1.8 series of rules. Comment [4] refers lawyers to the 5 series of rules involving supervisory duties within a law firm so that such lawyers can better comprehend their duties vis-à-vis screens. Comment [5] notes that this disciplinary rule does not necessarily govern disqualification motions in the courts.

**Revisions Following 90-Day Public Comment Period**

After consideration of comments received in response to the initial 90-day public comment period, the Commission added Comment [1] which provides guidance in determining whether a lawyer participated substantially in a matter under paragraph (a)(2)(i). The new Comment [1] lists non-exhaustive factors for evaluation and does not change a lawyer's obligations.  The Commission renumbered the following Comments and also added a citation to *Kirk v. First American Title Ins. Co.* to the cases listed in what is now numbered Comment [6]. The Commission made non-substantive stylistic edits and voted to recommend that the Board adopt the proposed rule.

The Board adopted proposed rule 1.10 at its November 17, 2016 meeting.

**Supreme Court Action (May 10, 2018)**

The Supreme Court approved the rule as submitted by the State Bar to be effective November 1, 2018. But see, stylistic changes made by the Court in the title of the rule and the addition of omitted asterisks for defined terms.

4

**Rule 1.10 Imputation of Conflicts of Interest: General Rule**
**(Redline Comparison to the ABA Model Rule)**

(a) While lawyers are associated in a firm,* none of them shall knowingly* represent a client when any one of them practicing alone would be prohibited from doing so by ~~Rules~~rules 1.7 or 1.9, unless

 (1) the prohibition is based on a personal interest of the ~~disqualified~~prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm;* or

 (2) the prohibition is based upon ~~Rule~~rule 1.9(a) or (b) and arises out of the ~~disqualified~~prohibited lawyer's association with a prior firm,* and

  (i) the prohibited lawyer did not substantially participate in the same or a substantially related matter;

  (~~i~~ii) the ~~disqualified~~prohibited lawyer is timely screened* from any participation in the matter and is apportioned no part of the fee therefrom; and

  (~~ii~~iii) written* notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this ~~Rule~~rule, which shall include a description of the screening* procedures employed; ~~a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal;~~ and an agreement by the firm* to respond promptly to any written* inquiries or objections by the former client about the screening* procedures~~; and~~.

  (iii) ~~certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.~~

(b) When a lawyer has terminated an association with a firm,* the firm* is not prohibited from thereafter representing a person* with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm,* unless:

 (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

 (2) any lawyer remaining in the firm* has information protected by ~~Rules~~Business and Professions Code section 6068, subdivision (e) and rules 1.6 and 1.9(c) that is material to the matter.

1

(c)    A ~~disqualification prescribed by~~prohibition under this rule may be waived by ~~the~~each affected client under the conditions stated in ~~Rule~~rule 1.7.

(d)    The ~~disqualification of~~imputation of a conflict of interest to lawyers associated in a firm\* with former or current government lawyers is governed by ~~Rule~~rule 1.11.

**Comment**

[1]    In determining whether a prohibited lawyer's previously participation was substantial,\* a number of factors should be considered, such as the lawyer's level of responsibility in the prior matter, the duration of the lawyer's participation, the extent to which the lawyer advised or had personal contact with the former client, and the extent to which the lawyer was exposed to confidential information of the former client likely to be material in the current matter.

~~Definition of "Firm"~~

~~[1] For purposes of the Rules of Professional Conduct, the term "firm" denotes lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization. See Rule 1.0(c). Whether two or more lawyers constitute a firm within this definition can depend upon the specific facts. See Rule 1.10, Comments [2] - [4].~~

~~Principles of Imputed Disqualification~~

~~[2] The rule of imputed disqualification stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. Paragraph (a)(1) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another, the situation is governed by Rules 1.9(b) and 1.10(a)(2) and 1.10 (b).~~

~~[3] The rule in paragraph (a) does not prohibit representation whether neither questions of client loyalty nor protection of confidential information are presented. Where one lawyer in a firm could not effectively represent a given client because of strong political beliefs, for example, but that lawyer will do no work on the case and the personal beliefs of the lawyer will not materially limit the representation by others in the firm, the firm should not be disqualified. On the other hand, if an opposing party in a case were owned by a lawyer in the law firm, and others in the firm would be materially limited in pursuing the matter because of loyalty to that lawyer, the personal disqualification of the lawyer would be imputed to all others in the firm.~~

[4~~2~~] ~~The rule in paragraph~~ Paragraph (a) ~~also~~ does not prohibit representation by others in the law firm\* where the person\* prohibited from involvement in a matter is a nonlawyer, such as a paralegal or legal secretary. Nor does paragraph (a) prohibit

representation if the lawyer is prohibited from acting because of events before the person* became a lawyer, for example, work that the person* did as a law student. Such persons,* however, ordinarily must be screened* from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyers and the firm have a legal duty to protect. See Rules 1.0. (See rules 1.0.1(k) and 5.3.)

[5] Rule 1.10(b) operates to permit a law firm, under certain circumstances, to represent a person with interests directly adverse to those of a client represented by a lawyer who formerly was associated with the firm. The Rule applies regardless of when the formerly associated lawyer represented the client. However, the law firm may not represent a person with interests adverse to those of a present client of the firm, which would violate Rule 1.7. Moreover, the firm may not represent the person where the matter is the same or substantially related to that in which the formerly associated lawyer represented the client and any other lawyer currently in the firm has material information protected by Rules 1.6 and 1.9(c).

[6] Rule 1.10(c) removes imputation with the informed consent of the affected client or former client under the conditions stated in Rule 1.7. The conditions stated in Rule 1.7 require the lawyer to determine that the representation is not prohibited by Rule 1.7(b) and that each affected client or former client has given informed consent to the representation, confirmed in writing. In some cases, the risk may be so severe that the conflict may not be cured by client consent. For a discussion of the effectiveness of client waivers of conflicts that might arise in the future, see Rule 1.7, Comment [22]. For a definition of informed consent, see Rule 1.0(e).

[7] Rule 1.10(a)(2) similarly removes the imputation otherwise required by Rule 1.10(a), but unlike section (c), it does so without requiring that there be informed consent by the former client. Instead, it requires that the procedures laid out in sections (a)(2)(i)-(iii) be followed. A description of effective screening mechanisms appears in Rule 1.0(k). Lawyers should be aware, however, that, even where screening mechanisms have been adopted, tribunals may consider additional factors in ruling upon motions to disqualify a lawyer from pending litigation.

[83]   Paragraph (a)(2)(iii) does not prohibit the screened* lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualifiedprohibited.

[9] The notice required by paragraph (a)(2)(ii) generally should include a description of the screened lawyer's prior representation and be given as soon as practicable after the need for screening becomes apparent. It also should include a statement by the screened lawyer and the firm that the client's material confidential information has not been disclosed or used in violation of the Rules. The notice is intended to enable the former client to evaluate and comment upon the effectiveness of the screening procedures.

[10] The certifications required by paragraph (a)(2)(iii) give the former client assurance that the client's material confidential information has not been disclosed or used inappropriately, either prior to timely implementation of a screen or thereafter. If compliance cannot be certified, the certificate must describe the failure to comply.

[11] Where a lawyer has joined a private firm after having represented the government, imputation is governed under Rule 1.11(b) and (c), not this Rule. Under Rule 1.11(d), where a lawyer represents the government after having served clients in private practice, nongovernmental employment or in another government agency, former client conflicts are not imputed to government lawyers associated with the individually disqualified lawyer.

[~~12~~4]  Where a lawyer is prohibited from engaging in certain transactions under ~~Rule 1.8, paragraph (k) of that Rule~~rules 1.8.1 through 1.8.9, rule 1.8.11, and not this ~~Rule~~rule, determines whether that prohibition also applies to other lawyers associated in a firm* with the personally prohibited lawyer.

[5]   The responsibilities of managerial and supervisory lawyers prescribed by rules 5.1 and 5.3 apply to screening* arrangements implemented under this rule.

[6]   Standards for disqualification, and whether in a particular matter (1) a lawyer's conflict will be imputed to other lawyers in the same firm,* or (2) the use of a timely screen* is effective to avoid that imputation, are also the subject of statutes and case law. (See, e.g., Code Civ. Proc., § 128, subd. (a)(5); Pen. Code, § 1424; *In re Charlisse C.* (2008) 45 Cal.4th 145 [84 Cal.Rptr.3d 597]; *Rhaburn v. Superior Court* (2006) 140 Cal.App.4th 1566 [45 Cal.Rptr.3d 464]; *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776 [108 Cal.Rptr.3d 620].)