1   JOSEPH P. MCMONIGLE, Bar No. 66811
    JESSICA R. MACGREGOR, Bar No. 168777
2   LONG & LEVIT LLP
    465 California Street, Suite 500
3   San Francisco, California  94104
    Telephone:    (415) 397-2222
4   Facsimile:    (415) 397-6392
    Email:        jmcmonigle@longlevit.com
5                 jmacgregor@longlevit.com

6   Specially Appearing For Third Party
    KING & SPALDING LLP
7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  WHATSAPP INC., a Delaware              Case No.  4:19-cv-07123-PJH
    corporation, and FACEBOOK, INC., a
12  Delaware corporation,                  **KING & SPALDING LLP'S OPPOSITION
                                           TO MOTION TO DISQUALIFY**
13               Plaintiffs,
                                           Date:          June ___, 2020
14  v.                                     Time:          9:00 a.m.
                                           Courtroom:     3, Third Floor
15  NSO GROUP TECHNOLOGIES                 Judge:         Hon. Phyllis J. Hamilton
    LIMITED and Q CYBER
16  TECHNOLOGIES LIMITED,

17               Defendants.

18

19

20

21

22            **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

1   JOSEPH P. MCMONIGLE, Bar No. 66811
    JESSICA R. MACGREGOR, Bar No. 168777
2   LONG & LEVIT LLP
    465 California Street, Suite 500
3   San Francisco, California  94104
    Telephone:     (415) 397-2222
4   Facsimile:      (415) 397-6392
    Email:           jmcmonigle@longlevit.com
5                       jmacgregor@longlevit.com

6   Specially Appearing For Third Party
    KING & SPALDING LLP
7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10

11  WHATSAPP INC., a Delaware                Case No.  4:19-cv-07123-PJH
    corporation, and FACEBOOK, INC., a
12  Delaware corporation,                    **KING & SPALDING LLP'S OPPOSITION
                                             TO MOTION TO DISQUALIFY**
13                Plaintiffs,
                                             Date:             June ___, 2020
14  v.                                       Time:             9:00 a.m.
                                             Courtroom:     3, Third Floor
15  NSO GROUP TECHNOLOGIES                   Judge:            Hon. Phyllis J. Hamilton
    LIMITED and Q CYBER
16  TECHNOLOGIES LIMITED,

17                Defendants.

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTS ...................................................................................................................... 3

    A.   The ███████████████ ........................................................................ 3

        1.   Former K&S Partners Mr. Wray And Ms. O'Neil Represent
            WhatsApp As ██████████ ............................................................ 4

        2.   Mezzina Researches ████████████████████████ ............ 4

        3.   March 16, 2016: ██████████████████████t
            ████████████████████ ...................................................... 5

        4.   All Attorneys Who Recorded Time On The Sealed Matter Depart
            K&S ..................................................................................................... 5

    B.   The NSO Litigation .......................................................................................... 6

    C.   Neither Mr. Mezzina Nor Any Member of the NSO Team Accessed or Has
        Access to the Limited Archived Sealed Matter Materials; Mr. Mezzina Has
        Been Screened From the NSO Litigation .......................................................... 7

III.  LEGAL ARGUMENT ................................................................................................ 8

    A.   Disqualification Motions Are Subject To "Particularly Strict Judicial
        Scrutiny" ............................................................................................................ 8

    B.   CRPC 1.10(b) Permits K&S to Rebut Any Potential Presumption of Shared
        Confidences The Firm Has Established ............................................................ 9

        1.   There is No Substantial Relationship Between the Sealed Matter
            and the NSO Litigation ................................................................. 10

        2.   K&S Did Not Obtain Confidential Information Material to the NSO
            Litigation ........................................................................................ 11

        3.   No Current K&S Attorney Possesses Confidential Information
            Material to the NSO Matter .......................................................... 13

    C.   There is No Basis to Disqualify K&S Under CRPC Rule 1.9 ............................ 16

IV.   CONCLUSION ........................................................................................................ 17

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- i -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

**TABLE OF AUTHORITIES**

Page

**Cases**

*Celebrity Chefs Tour, LLC v. Macy's, Inc*, No. 13-CV-2714 JLS (KSC), 2014 WL 12160744, at *4 (S.D. Cal., Jan. 23, 2014) ................................................................................. 13

*Davis v. EMI Grp. Ltd.* No. 12-cv-1602 YGR, 2013 WL 75781, at *4-5 (N.D. Cal. Jan. 4, 2013) ................................................................................................................................. 15, 16

*Farhang v. Indian Institute of Technology, Kharagpur*, No. C-08-02658 RMW, 2010 WL 199706 (N.D. Cal., Jan. 13, 2010) ........................................................................... 13

*Farris v. Fireman's Fund Ins. Co.* 14 Cal. Rptr. 3d 618, 623 (Ct. App. 2004) ...................... 11, 12

*Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994)....................................................................... 11

*Goldberg v. Warner/Chappell Music, Inc.(Goldberg)*,125 Cal.App.4th 752, 759 (2005) ............ 10

*H.F. Ahmanson & Co. v. Salomon Brothers, Inc*, 229 Cal.App.3d 1445, 1455 (1991)................. 10

*In re Marriage of Zimmerman*, 16 Cal.App. 4th 556, 565 (1993) .................................................. 17

*IPS Grp., Inc. v. Duncan Sols., Inc.* (*IPS Grp.*), No. 15-CV-1526-CAB (MDD), 2017 WL 4654602, at *2 (S.D. Cal. Oct. 17, 2017)................................................................... 2, 8

*Jessen v. Hartford Casualty Ins. Co.*,111 Cal.App.4th 698, 713 (2003) ....................................... 10

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd,.* (760 F.2d 1045, 1049 (9th Cir. 1985) ....... 8

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*., 20 Cal.4th 1135 (1999) ...................................................................................................................... 8, 17

*SC Innovations, Inc. v. Uber Techs., Inc.,* No. 18-cv-07440-JCS, 2019 WL 1959493 at *7-9 (N.D. Cal. May 2, 2019) ................................................................................................... 12

*State Compensation Fund v. Drobot* (Drobot) SACV 13-956 AG, 2014 WL 12579808, *5 (C.D. California 2014), No. SACV 13-956 AG (CWX), 2014 WL 12579808, at *6 (C.D. Cal., July 11, 2014) ...................................................................................................... 13, 15

*TWiT, LLC v. Twitter Inc*. (*TWit*), No. 18-CV-00341-JSC, 2018 WL 2470942, at *7 (N.D. Cal. June 1, 2018)................................................................................. 8, 11, 12, 13

**Rules**

California Rules of Professional Conduct Rule 1.10 ............................................................. passim

California Rules of Professional Conduct Rule 1.9 ..................................................... 2, 10, 16, 17

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- ii -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

## I.      INTRODUCTION

Disqualification is a drastic, disfavored and disruptive remedy that is unwarranted here. Four years ago, WhatsApp looked to then King & Spalding ("K&S") attorneys Christopher Wray and Cathy O'Neil to ████████████████████████ and to provide the company legal advice ██████████████████████████████████████████████ ████████████████████████████████████████ ("Sealed Matter") over a four month period.[1]  But, as WhatsApp reluctantly concedes in passing, Ms. O'Neil, Mr. Wray and Nick Oldham, another K&S attorney who performed minimal work on the file, departed K&S long before WhatsApp filed this action on October 29, 2019.  (Motion, p. 4.)  In 2017, Ms. O'Neil passed away, Mr. Wray left K&S after being nominated and then appointed as Director of the FBI (a fact WhatsApp failed to mention in its motion) and Mr. Oldham became Chief Privacy Officer at Equifax.  To the extent these lawyers acquired any confidences through the Sealed Matter, there is no possibility that they could have shared them with any member of K&S' NSO Group Technologies Limited ("NSO") defense team.  The Sealed Matter case materials were not accessed by the NSO defense team and are now completely inaccessible to anyone in the Firm (with the exception of General Counsel's Office as necessary to respond to WhatsApp's request for its file and to oppose this motion).  The entirety of the remaining file materials in the Sealed Matter were sent to WhatsApp on April 17 and May 8, 2020.

Yet, WhatsApp claims K&S has gone from "trusted advisor" to a "fierce adversary" seeking to "turn the tables" on WhatsApp and insists confidential information is at risk of disclosure.  (Motion, p. 2.)  Why?  Because between February 9-11, 2016, a K&S attorney, Paul Mezzina, spent 7.9 hours researching and preparing a "quick report" on ████████████ ██████████████████████████████████  WhatsApp ignores that Mr. Mezzina's name is absent from WhatsApp's sole evidentiary support for its motion:  the Declaration of Jacob Sommer.  Because Mr. Mezzina never spoke, even once, with any

---

[1] Contrary to WhatsApp's presentation in its Motion, K&S effectively concluded its representation of the company on March 16, 2016, when it recorded its last substantive time and formally closed its file in July 2016. Declaration of M. Robert Thornton ("Thornton Decl.") Ex. 1

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 1 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

1   WhatsApp representative, never attended any meeting with WhatsApp, and did not draft or revise

2   WhatsApp's correspondence or court filings in the Sealed Matter, WhatsApp cannot provide the

3   Court *any* evidence that Mr. Mezzina (or any current K&S lawyer) ever possessed any

4   confidential information material to the defense of NSO.  Nevertheless, according to WhatsApp,

5   under CRPC Rule 1.9 Mr. Mezzina's mere membership in K&S is a sufficient basis for stripping

6   NSO of its counsel of choice and sending the Israeli company back into a foreign legal

7   marketplace dominated by WhatsApp and Facebook.

8         WhatsApp's focus on Rule 1.9 is misplaced.  Where lawyers who represented a former

9   client have left a firm, as did Mr. Wray, Ms. O'Neil and Mr. Oldham, Rule 1.10(b) *permits* the

10   law firm to represent a client in a matter adverse to a former client *unless* the matters are

11   substantially related *and* any attorney remaining at the firm possesses material confidential

12   information.   K&S satisfies all the elements of the Rule.  No matter what technical jargon is used

13   to embroider WhatsApps' motion, there is no substantial relationship between the Sealed Matter

14   involving a ███████████████ and this litigation alleging claims under the Computer

15   Fraud and Abuse Act ("CFAA"), the California Comprehensive Computer Data Access and Fraud

16   Act ("CCDAFA"), breach of contract and trespass to chattel.  Were the court to harbor even a

17   slight concern there were some potential connection between the two matters, no K&S attorney

18   currently associated with the firm possesses confidential information from the Sealed Matter that

19   is material to the NSO Litigation.  Mr. Mezzina did not need and never acquired confidential

20   information from WhatsApp material to the representation of NSO to prepare a "quick report"

21   regarding ██████████████████████. He never will obtain this information, because

22   the extant materials in the Sealed Matter are inaccessible to him as well as all members of the

23   NSO defense team.

24         Strict judicial scrutiny of disqualification motions is necessary to ensure they are not

25   abused for purely tactical reasons.  *IPS Grp., Inc. v. Duncan Sols., Inc.* (*IPS Grp.*), No. 15-CV-

26   1526-CAB (MDD), 2017 WL 4654602, at *2 (S.D. Cal. Oct. 17, 2017) .  WhatsApp waited more

27   than six weeks to raise K&S's potential disqualification and then attempted to leverage it by

28   forcing NSO to choose between transitioning from K&S or obtaining an agreement to enlarge

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 2 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

time to respond to the complaint.  Declaration of Joseph N. Akrotirianakis ("Akrotirianakis Decl.") ¶ 11.  WhatsApp's effort to downplay Mr. Wray's and Ms. O'Neil's roles and departures from the firm, and to overplay Mr. Mezzina's 7.9 hours of appellate research—coupled with its failure to even acknowledge Rule 1.10(b)—suggests that even WhatsApp knows this motion is not well-founded.

Depriving NSO of highly skilled counsel of its choice will impose significant hardship and prejudice.  There are few firms qualified to handle a matter of this complexity and, of those, many have conflicts with WhatsApp or non-moving party, Facebook.  NSO, a foreign company, will be bereft of representation for a prolonged period given the serious obstacles to retaining counsel.  The tactical advantages to WhatsApp, and the harm to NSO, are obvious.  For these reasons, K&S, on behalf of itself and its clients, asks the court to deny this motion.

## II.  FACTS[2]

### A.  ███████████████████

Between December 19, 2015 and July 6, 2016, K&S represented WhatsApp as ███ ██████ in the Sealed Matter – ████████████████████████████████ ██████.  Thornton Decl. ¶ 3, Exhs. 3-4.  At the time K&S was retained, the ZwillGen law firm, WhatsApp's regular outside D.C. based counsel, had been working on the ███████████ for months.  *Id.*, Exh. 4.  WhatsApp ███████████████████████████████████n ███████████████████████████████████████████.  *Id.*  ███████████ ███████████████████████████████████████████.  ZwillGen ██████ on WhatsApp's behalf.  *Id.*  ████ ████████████████████████████████████████ in the Sealed Matter, the company hired K&S t███████████████████ZwillGen.  *Id.*  WhatsApp required K&S to incorporate Facebook's outside counsel guidelines into its fee agreement.  Travis LeBlanc Decl.

---

[2] K&S has submitted select documents from the Sealed Matter.  Under Evidence Code §958 there is no privilege as between K&S and WhatsApp regarding these documents, however it has sought to seal such documents to maintain the privilege as to third parties.  In addition, K&S submits documents protected under the attorney-work product doctrine.  See, CCP §2018.080

("LeBlanc Decl.")  Exh. B.  Under those guidelines, K&S billed through Serengeti, a web-portal Facebook maintains.  *Id.*

### 1.  Former K&S Partners Mr. Wray And Ms. O'Neil Represent WhatsApp As █████████

Although Mr. Wray was WhatsApp's initial point of contact, Ms. O'Neil quickly became the primary K&S attorney working on the matter.  Thornton Decl. Exh. 1.  She participated in calls and emails with WhatsApp's in-house counsel, members of Facebook's general counsel's office and the team of outside counsel representing WhatsApp (including ZwillGen and Perkins Coie attorneys) █████████████████████████████████████████████████████████████. *Id.*  ZwillGen took the lead in drafting correspondence and court submissions while Ms. O'Neil and Mr. Wray edited, reviewed and revised them.  See, e.g. Thornton Decl. Exhs 1 and 6.  On February 5, 2016, Ms. O'Neil flew to California to prepare WhatsApp personnel for a face-to-face meeting with █████████ ████████. *Id.* Exh. 1.  She attended a WhatsApp's meeting with ████████ on February 6, 2016, while Mr. Wray attended by phone.  *Id.*; See also, Declaration of Jason Sommer, ¶8. No other K&S attorneys attended these meetings.  *Id.*

K&S partner Nick Oldham provided a total of 7.4 hours of assistance in the matter. Thornton Decl. ¶ 17, Exh. 1.  He oversaw the filing of WhatApp's response to ██████████ ████ when Ms. O'Neil was involved in depositions out of the office in an unrelated matter.  *Id.* Exh. 21.  He provided his views regarding ████████████ who participated in the February 6, 2016 WhatsApp meeting.  *Id.* Exh. 5.  As detailed below, he also asked Mr. Mezzina to prepare a "quick summary of the law and key cases, if any, regarding ████████████ ████" and communicated with him on that subject.  *Id.*, Ex. 7; Declaration of Paul Alessio Mezzina ("Mezzina Decl.") ¶ 11.

### 2.  Mezzina Researches The Availability Of A ████████████

On February 10, 2016, Mr. Oldham spoke with and emailed Mr. Mezzina[3] ██

---

[3] Mr. Mezzina is now a K&S partner, but was then an associate.  He has always been resident in the Firm's appellate department.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
- 4 -   KING & SPALDING LLP'S OPPOSITION TO MOTION TO DISQUALIFY – 4:19-cv-07123-PJH

██████████████████████ to compel WhatsApp's assistance ██████████ and asked him

to prepare a "quick summary of the law and key cases" on the ████████████████████████.

*Id.* Mr. Mezzina billed 7.9 hours on the project, all on three consecutive days (February 9-11,

2016). *Id.* at ¶ 12, Ex. 2. He had no client contact and reviewed no file materials other than the

court-filed motion in the Sealed Matter. *Id.* at ¶ 16. On February 10 and 11, 2016, Mr. Mezzina

authored and revised a several paragraph report on ██████████████. Thornton Decl. Exhs. 9-

19. In his communications with Mr. Oldham and Ms. O'Neil, Mr. Mezzina stressed he "did not

know enough to predict" the outcome of the four-factor test to be applied when ████████████

██████████████ and directed Mr. Oldham to address any merits issues. *Id.* Exh. 9, p. 2. Ms.

O'Neil counseled against focusing on the merits ████████████████████. *Id.*

Exh. 13, p. 2. The final draft of the quick report to the client included a single paragraph ████

██████████████████████████████████████████████. *Id.*

Ex. 19.

### 3. March 16, 2016: ██████████████ Informs WhatsApp ████████████

On March 16, 2016, the ██████ informed WhatsApp it would not proceed ██████████████

██████████. *Id.* Exh. 23. K&S's substantive work ended on that date. *Id.* Exh. 1. On June 2,

2016, ████████████ informed WhatsApp it had ██████████████████. *Id.* Exh. 24.

Facebook closed the billing matter on Serengeti on July 6, 2016. *Id.*, Exh. 25. Mr. Wray wrote

off one tenth of an hour he recorded on June 2, 2016 (presumably for reviewing the email

forwarding ██████████████████████████) and directed his assistant to close the

file. *Id.* In all, K&S billed WhatsApp for 93.6 hours of work, of which 77.9 hours was recorded

by Ms. O'Neil and Mr. Wray. *Id.*, Ex. 1.

### 4. All Attorneys Who Recorded Time On The Sealed Matter Depart K&S

Mr. Wray was nominated to serve as the Director of the FBI in June 2017 and was sworn

in on August 2, 2017. *Id.* ¶ 8. He still serves in this position. After battling pancreatic cancer,

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 5 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

1    Ms. O'Neil passed away on October 1, 2017.  *Id.* ¶ 9.  Mr. Oldham left the firm on December 4,

2    2017 to join Equifax and now serves as Chief Privacy and Data Governance Officer.  *Id.* ¶10.

3    Mr. Mezzina left K&S on June 29, 2018 to clerk for U.S. Supreme Court Justice Neil Gorsuch.

4    *Id.* ¶ 11; Mezzina Decl. ¶6 .  He returned to the firm's D.C. office in January 2020. *Id.* at ¶11; Id

5    at ¶ 7.

6        **B.    The NSO Litigation**

7        Nothing in the NSO litigation is even remotely related to ██████████████████ or

8    the legal question of ████████████████████████████████████████████

9    ███████████████████.  WhatsApp filed this action against NSO on October 29, 2019 to

10   recover money damages and obtain injunctive relief based on NSO's alleged improper use of the

11   WhatsApp service between April and May 2019.  Declaration of Shmuel Sunray ("Sunray Decl.")

12   ¶ 2.

13       WhatsApp commenced this suit thousands of miles away from Israel, NSO's home base,

14   in a jurisdiction in which NSO is not subject to personal jurisdiction.  This was burdensome

15   enough.  However, given Facebook's domination of the legal marketplace through its retention of

16   dozens, if not hundreds, of law firms across the country, NSO faced an uphill battle in identifying

17   and retaining defense counsel.  NSO had two criteria in selecting counsel:  (1) a strong litigation

18   team in California with subject matter expertise pertinent to Plaintiff's allegations; and, 2) cyber

19   security, governmental relations and national security expertise similar to Plaintiffs' counsel's

20   expertise.  *Id.* at ¶ 2.  In the small pool of firms that met NSO's criteria, eight leading law firms

21   were prevented from representing NSO because of conflicts with the representation of Facebook.

22   *Id.*, ¶3.  After a three month search and after its General Counsel flew to the United States to

23   personally interview K&S attorneys, NSO retained the firm.  *Id.*, ¶ 4.

24       In early February 2020, shortly after NSO retained K&S, lead NSO counsel Joe

25   Akrotirianakis called WhatsApp's counsel, Travis LeBlanc, to inform him K&S would represent

26   NSO.  Akrotirianakis Decl. ¶ 5-6.  Mr. LeBlanc made no mention of a potential conflict.  *Id.*  Six

27   weeks later, Mr. LeBlanc demanded K&S withdraw, based on Mr. Wray's and Ms. O'Neil's 2016

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 6 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

representation of WhatsApp.  *Id.*, ¶ 11.  K&S immediately suggested the parties prioritize WhatsApp's threatened disqualification motion and submit it for resolution before any other motion practice, including NSO's Motion to Dismiss.  *Id.*, ¶ 18.  WhatsApp refused to so stipulate.  *Id.*  NSO prepared and filed a comprehensive Motion to Dismiss on April 2, 2020.  *Id*, ¶ 20.  Eight days later, WhatsApp commenced litigating its disqualification demand by filing an Administrative Motion seeking to file its Motion to Disqualify under seal.  *Id.*  To date, K&S attorneys have devoted in excess of 1,353 of work to defend NSO.  *Id.*, ¶ 21.

### C.   Neither Mr. Mezzina Nor Any Member of the NSO Team Accessed or Has Access to the Limited Archived Sealed Matter Materials; Mr. Mezzina Has Been Screened From the NSO Litigation

In part because all of the attorneys who performed any work on the Sealed Matter departed K&S in 2017/2018 the firm retained very few file materials, and most of what existed was archived.  Thornton Decl. ¶¶22- 29.  For example, Outlook folders for each attorney who recorded time in the Sealed Matter were archived upon their departure (or, for Ms. O'Neil, after her passing) and are inaccessible to Firm and attorneys and staff, unless specifically requested through the IT Department with the approval of the General Counsel's office.  *Id.* ¶¶ 22-24; Lloyd Declaration, ¶¶4-7.

The Firm's modest working file (containing materials from Ms. O'Neil and Mr. Wray) was stored off-site at Iron Mountain and remained there until WhatsApp requested its file.[4] Thornton Decl., ¶ 27; Arthur Decl.  The Firm's electronic document management system includes a folder for the Sealed Matter which consists of seven sub-folders.  Thornton Decl., ¶¶25-26. Four of the seven contain no documents.  *Id.*, ¶25.  There is one folder containing some ███ ██ documents and correspondence sent to the ████████.  *Id.*  K&S's General Counsel verifies that with one exception (a K&S partner in the New York office opened the form Notice of Appearance), the folder had not been accessed by any current attorney or staff member from March 2016 until he and members of his team accessed it in March 2020 in response to Mr. LeBlanc's correspondence.  *Id.*, ¶ 26, Ex. 22.  It has never been accessed by any of the attorneys

---

[4] It is now safely stored in General Counsel's office. Thornton Decl., ¶27.

or staff involved in NSO's defense. *Id.*; Lloyd Decl. ¶¶4-7.  The General Counsel blocked

everyone's access to the folder, aside from himself and members of General Counsel's office.  *Id.*

Sealed Matter billing records were also archived.  Thornton Decl., ¶ 28; Nolan Decl..  To be

clear, the sparse file materials that remained at the Firm were all provided to WhatsApp.

Thornton Decl., ¶ 6.

As explained above, Mr. Mezzina spent only 7.9 hours researching and preparing a 9

paragraph report (spanning less than two pages) on the ████████████████████████ had

no contact with WhatsApp, and did not author, revise or access any confidential communications

material to the defense of NSO.   Mezzina Decl. ¶¶ 11-19, Exh. 2; Thornton Decl., Exhs. 7-20

K&S took pains to maintain this status quo and took additional steps to ensure that he has no

access to the NSO file or team.  Mezzina Decl. ¶¶ 20-22; Thornton Decl. ¶¶30-32.

## III.    LEGAL ARGUMENT

### A.    Disqualification Motions Are Subject To "Particularly Strict Judicial Scrutiny"

Disqualification is a drastic remedy.  *See*, *TWiT, LLC v. Twitter Inc.* (*TWiT*), No. 18-CV-

00341-JSC, 2018 WL 2470942, at *7 (N.D. Cal. June 1, 2018).  It implicates important policy

considerations, including the client's right to counsel of its choice, the attorney's interest in

representing the client, the financial burden on a client, and potential tactical abuse underlying the

motion.  *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,* 20 Cal.4th

1135, 1145 (1999).  Courts must also weigh the need to maintain ethical standards for attorneys

and public trust in the "administration of justice and the integrity of the bar."  *Id.*  Given their

potential to disrupt and disarm a litigation adversary, courts recognize motions to disqualify can

be misused for purely tactical reasons.  *Id.*  For these reasons, they are subjected to "particularly

strict judicial scrutiny."  *IPS Grp., Inc.,*2017 WL 4654602,at *2, *citing Optyl Eyewear Fashion

Int'l Corp. v. Style Cos., Ltd,.* (760 F.2d 1045, 1049 (9th Cir. 1985).  Accordingly, motions to

disqualify must be examined carefully to "...to ensure that literalism does not deny the parties

substantial justice."  *SpeeDee,* 20 Cal.4th 1144.

Balancing the competing public policies tilts the scales in favor of honoring NSO's choice

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 8 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

1    of counsel, and denying disqualification.  As explained in Sections B and C below, K&S's

2    continued representation of NSO will not undermine the public's trust in the integrity of the bar

3    or the administration of justice.  However, there can be no dispute that NSO will suffer extreme

4    prejudice if it is deprived of counsel of its choice.  As set forth above, finding qualified counsel

5    was a daunting, months-long process for NSO before it secured K&S' representation. Sunray

6    Decl.  The pool of law firms with the necessary expertise was small, and made smaller still by the

7    need to eliminate a number of firms due to Facebook conflicts.  Forcing a change in counsel will

8    send NSO back into a diminished legal marketplace dominated by Facebook.  NSO will also lose

9    the benefit of the significant work K&S has already performed and would have to shoulder the

10   increased expense of beginning anew with replacement counsel.

11        WhatsApps' conduct in seeking this drastic, harmful remedy must be viewed with a

12   healthy dose of skepticism.  WhatsApp waited more than six weeks to raise K&S's potential

13   conflict and did so at a critical time.   When K&S commenced its representation, WhatsApp was

14   prepared to take NSO's default; NSO asserted it had not been served.  WhatsApp then moved for

15   entry of default.  On March 6, 2020, K&S moved to set aside the default and sought an additional

16   120 days to file a responsive pleading.  It was *after* K&S sought additional time to file a

17   responsive pleading that WhatsApp raised K&S's purported conflict.  It then used potential

18   disqualification as a pretext for refusing to enter into rational briefing schedules.  It even refused

19   to immediately brief the disqualification motion and pause briefing the motion to dismiss, even

20   though, as K&S explained, it would reduce potential harm to NSO.  WhatsApp began litigating

21   its disqualification request only after forcing NSO to file a comprehensive Motion to Dismiss.

**B.    CRPC 1.10(b) Permits K&S to Rebut Any Potential Presumption of Shared Confidences The Firm Has Established**

24        WhatsApp makes only passing reference to the fact that of the four attorneys who

25   recorded any time on the Sealed Matter, three are no longer with the firm; it likewise declines to

26   acknowledge that one attorney now at K&S, Mr. Mezzina, had no direct contact with WhatsApp

27   and recorded only 7.9 hours of work for researching a ███████████████.  These facts

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 9 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

should have at least suggested to WhatsApp that its disqualification request is governed by CRPC Rule 1.10, not Rule 1.9. Rule 1.10(b) permits firms to represent a current client in a matter adverse to a former client when "a lawyer has terminated an association with a firm" unless the two matters are substantially related ***and*** any lawyer remaining in the firm has confidential information material to the matter. *Id.* The Rule enshrines the "concept recognized in *Goldberg* [] that if a lawyer who has represented a client and acquired confidential information has left the firm, and no other lawyer who has acquired confidential information remains, then there is no one left in the firm with knowledge that can be imputed to other lawyers in the firm." Executive Summary of California Rule of Professional Conduct 1.10, p.3, citing to *Goldberg v. Warner/Chappell Music, Inc.(Goldberg),*125 Cal.App.4th 752, 759 (2005). RJN, Ex. 1. As the *Goldberg* court explained, disqualifying a law firm "when there is no realistic chance that confidences were disclosed [to counsel] would go far beyond the purpose of the substantial relationship test." *Goldberg*, 125 Cal.App.4th 762 (internal citations omitted). WhatsApp cites to *Goldberg*, but fails to bring Rule 1.10 to the Court's attention. Its omission is telling. Applying Rule 1.10, K&S may represent NSO because the Sealed Matter and the NSO Litigation are not substantially related *and*, even if they were, no attorney remaining at the firm possesses confidential information material to the issues before this Court.

### 1.   There is No Substantial Relationship Between the Sealed Matter and the NSO Litigation

The existence of a substantial relationship depends upon factual similarities between the former and current representation, "the legal questions posed, and the nature and extent of the attorney's involvement in the cases." *H.F. Ahmanson & Co. v. Salomon Brothers, Inc,* 229 Cal.App.3d 1445, 1455 (1991). The goal is to determine whether "information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen v. Hartford Casualty Ins. Co.*,111 Cal.App.4th 698, 713 (2003). To be "material," the information acquired during the first representation must be "directly at issue in, or have some critical

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 10 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

importance to, the second representation." *Farris v. Fireman's Fund Ins. Co.* 14 Cal. Rptr. 3d 618, 623 (Ct. App. 2004). If a substantial relationship is shown, courts presume that there has been "access to confidential information by the attorney in the course of the first representation." *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994).

### 2. K&S Did Not Obtain Confidential Information Material to the NSO Litigation

WhatsApp argues K&S must be disqualified because WhatsApps' ████████ ████ was at issue in both the Sealed Matter and is at issue in the NSO Litigation. (Motion at pp. 9-10.) A substantial relationship does not arise merely because a company's core service may be relevant to a former and current representation. *TWiT, 2018* WL 2470942, at *5. A substantial relationship arises only if the legal problems involved in the former and current representation are similar. *Id.* *4.

*Twit* is instructive. The court refused to find a substantial relationship between a former and current representation simply because Plaintiff's audio and streaming services was a fact relevant to both matters. Recognizing TWiT's core services would be a fact relevant in "nearly any matter in which TWiT is a party," the court examined whether the two matters addressed the same legal problems. They did not: the first involved TWiT's alleged patent infringement while the second involved whether Twitter agreed to stay out of the audio and video market and also infringed TWiT's mark. *Id.* Given the distinct legal problems at the heart of the two matters, the Court refused to find they were substantially related and found that any confidential communications the firm had regarding the patent litigation were "immaterial" to the breach of contract/trademark litigation. *Id.* at *4. The *SC Innovations* court engaged in the same analysis, but reached the opposite result, for good reason. There, the former matter and the ongoing matter involved the same legal claims arising out of Uber's core services: Quinn Emannuel[5] defended Uber in multiple antitrust litigation matters alleging predatory pricing and then turned around and

---

[5] Unlike K&S, which represented WhatsApp only as ████████ for a matter of months, Quinn Emmanuel served as Uber's primary outside litigation counsel and was included in the company's Preferred Counsel program. It advised Uber on its most high-profile litigation matters and issues, including numerous anti-trust litigations.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 11 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

prosecuted antitrust litigation against Uber alleging predatory pricing.  *SC Innovations, Inc. v. Uber Techs., Inc.,* No. 18-cv-07440-JCS, 2019 WL 1959493 at *7-9 (N.D. Cal. May 2, 2019).

Just as in *TWiT*, the legal problems in the Sealed Matter and the NSO Litigation are the proverbial apple and orange. The Sealed Matter involved ███████████████████████ ████████████████████████████████████████████████████ ████████████████. Thornton Decl, Exh. 4.  The focus of the representation was on WhatsApp's legal obligations ███████████████████████. In contrast, the focus of the NSO litigation is NSO's Pegasus software, the alleged conduct of NSO and its licensees, and whether this conduct caused damage to WhatsApp.[6]

The information K&S obtained in the Sealed Matter is not "directly at issue in" or relevant, much less critically important to, the NSO Litigation.  *Farris,* 14 Cal. Rptr. 3d 623.  As in *TWiT*, the fact that ██████████████████████ is a fact relevant to both the Sealed Matter and the NSO Litigation, as it would be in nearly any matter in which WhatsApp is a party.  But NSO's alleged misuse of the WhatsApp service has nothing to do with NSO ████████████████████████████████████████████████████ ████████████████████. In WhatsApp's *own* words, it filed suit because NSO "developed malware [Pegasus] to access messages and other communications *after they were decrypted* on a device." (Plaintiffs' CMC Statement, ECF No. 18, p. 7:10-18.).  WhatsApp does not allege NSO ██████████████████, nor that NSO's Pegasus program uses WhatsApp servers to ████████ ██████████████. (Comp. ¶40.)  Pegasus does not ██████████████████████████████ ███████████████████████████████████r. ECF No. 1-1, pg. 42.  The only

---

[6] WhatsApp alleges four causes of action:  Violation of the CFAA under 18 U.S.C. §1030 et seq.; Violation of CCDAFA, California Penal Code §502 (CCDAFA); Breach of Contract; and Trespass to Chattel.  The gravamen of the first two causes of action is NSO's alleged improper access of WhatsApp's servers without authorization.  (Compl. pp. 10-13) The company's breach of contract cause of action asserts NSO violated WhatsApp's Terms of Service.  WhatsApp's Trespass to Chattel cause of action asserts NSO "interfered with [WhatsApp's] possessory interest in [its] computer systems."  Compl. ¶76.  WhatsApp seeks to recover its losses, including "expenditure of resources to investigate and remediate Defendants' conduct, damage to [its] reputation, and damages to the relationship and goodwill between [it] and [its] users and potential users."  (Compl. ¶73).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 12 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

1   alleged use of WhatsApp messages is to send a single message to the target device. Any

2   ███████████ that happens thereafter has nothing to do with ████████████████████████

3   ████████

4         As in *TWiT*, the fact that WhatsApp provides ███████████████████ is likely

5   relevant "in nearly any matter in which it is a party. *TWiT* at *5.  And as in *TWiT*, there is no

6   overlap between the legal and factual issues in the Sealed Matter and the NSO Litigation.

7   ████████████████████████████████████████████████████████████████████████████

8   ███████████████████████, have nothing to do with NSO's Pegasus software and the alleged

9   conduct of NSO and its licensees.  The absence of a substantial relationship between the Sealed

10  Matter and the NSO Litigation compels denial of WhatsApp's motion.

11           **3.    No Current K&S Attorney Possesses Confidential Information**
                     **Material to the NSO Matter**
12

13        Even if the Sealed Matter and the NSO Litigation were determined to be substantially

14  related, under Rule 1.10(b) K&S can only be disqualified if it is determined any lawyer remaining

15  at the firm actually acquired material confidential information." *State Compensation Fund v.*

16  *Drobot* (Drobot) SACV 13-956 AG, 2014 WL 12579808, *5 (C.D. California 2014), No. SACV

17  13-956 AG (CWX), 2014 WL 12579808, at *6 (C.D. Cal., July 11, 2014) (firm rebutted

18  presumption through submitting evidence tainted attorney had left the firm three years prior to the

19  filing of the ongoing matter, had no time entries discussing the case with attorneys still at the

20  firm, and was in a different practice group than the attorneys working on the matter); *see also*

21  *Farhang v. Indian Institute of Technology, Kharagpur*, No. C-08-02658 RMW, 2010 WL

22  199706  (N.D. Cal., Jan. 13, 2010) (firm rebutted presumption through submitting evidence all

23  attorneys who billed time on plaintiff's matter were no longer with the firm and no current

24  employee had any mention of plaintiff's name in their time entries); *Celebrity Chefs Tour, LLC v.*

25  *Macy's, Inc*, No. 13-CV-2714 JLS (KSC), 2014 WL 12160744, at *4 (S.D. Cal., Jan. 23, 2014)

26  (holding firm rebutted any presumption of imputed knowledge of client's confidential

27  information by showing all attorneys who represented client had left the firm and assuring the

28  court that no such confidential information was divulged).  No K&S attorney remaining in the

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 13 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

firm acquired confidential information from WhatsApp that is material to the NSO Litigation.[7]
Mezzina Decl., ¶¶ 9-19. Exh. 2; Thornton Decl., Exs. 9-20; Declaration of Sumon Dantiki
("Dantiki Decl.");   Declaration of Rod J. Rosenstein ("Rosenstein Decl."); Declaration of Aaron
Craig ("Craig Decl."); Declaration of Matthew Noller ("Noller Decl."); Akrotirianakis Decl. ¶¶
22-28.

WhatsApp concedes Ms. O'Neil, Mr. Wray and Mr. Oldham are no longer K&S
attorneys.  Thornton Decl., ¶¶ 7-12.  It submitted no evidence that any WhatsApp representative
ever had contact with Mr. Mezzina, and understands the firm's representation lasted only four
months, four years ago.  K&S disputes that any of the confidential information K&S obtained in
the Sealed Matter is material to its defense of NSO in this litigation.  What is more, WhatsApp's
evidence establishes that only *Ms. O'Neil and Mr. Wray* participated in calls and meetings with
WhatsApp and its legal team and only they (with minimal assistance from Mr. Oldham)
reviewed, revised and advised on correspondence with t███████ and court submissions.
Declaration of Jacob Sommer ("Sommer Decl.") ¶¶ 1-12.  Mr. Sommer does not suggest Mr.
Mezzina participated in such work, had any client contact, or received confidential client
information material to the defense of NSO.  There is no evidence submitted by WhatsApp that
any K&S attorney other than Ms. O'Neil and Mr. Wray had direct contact with  or acquired any
confidential information from WhatsApp.

The lack of any connection between any current K&S attorney and confidential
WhatsApp information is confirmed by K&S's evidence.  Most of the 93.6 hours for which K&S
billed WhatsApp was for work performed by Ms. O'Neil and Mr. Wray (together they billed 77.9
hours).  Thornton Decl. ¶17, Ex. 1.  Mr. Mezzina billed 7.9 hours for the discrete research he
performed and quick email report.  *Id.*  His work product demonstrates he reviewed the
███████████████████ an order, case law and court-filed documents in other cases to

---

[7] Though it applies specifically to assessing whether under Rule 1.10(a)(2), an attorney "substantially participated" in
a representation of a client such that disqualification is warranted, Comment 1 provides a good road map for
analyzing Mr. Mezzina's limited role in the Sealed Matter.  The factors to be considered include "the lawyer's level
of responsibility in the prior matter, the duration of the lawyer's participation, the extent to which the lawyer advised
or had personal contact with the former client, and the extent to which the lawyer was exposed to confidential
information of the former client likely to be material in the current matter."  RJN, Ex. 1.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 14 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

1    prepare the "quick report." Exhs. 9-20.  None of the documents Mezzina received or the work

2    product he prepared refer or relate to confidential client information material to NSO's defense

3    here. His research was on ███████████, and thus a grasp of the facts was unnecessary.  In

4    addition, he conceded his lack of knowledge of the facts and legal issues in his email report.

5    Mezzina Decl. ¶ 14-19; Thornton Decl., Exhs. 9, 13.

6         As in *Drobot*, the evidence here establishes Mr. Mezzina never possessed WhatsApp's

7    confidential information material to the defense of this case and no member of the NSO defense

8    team was aware of the representation or accessed file material from the case.  The Sealed Matter

9    file materials were archived, never accessed by any member of the NSO team and are now

10   inaccessible to all with the limited exception of members of General Counsel's office. *Drobot*,

11   *8; Thornton Decl. ¶¶22-29;  Dantiki Decl.; Rosenstein Decl.; Craig Decl.;  Noller Decl.;

12   Akrotirianakis Decl. ¶¶22-28.

13        K&S hired special counsel to oppose this motion to further shield members of the NSO

14   litigation team from information related to the Sealed Matter.[8]  Thornton Decl., ¶29. And as in

15   *Drobot*, there is "no genuine likelihood that allowing [K&S] to remain on this case will affect the

16   outcome of the proceedings before the Court." *Drobot*, 2014 WL 12579808, *5.

17        Ignoring the evidence, WhatsApp suggests the court should apply *Davis v. EMI Grp. Ltd.*

18   No. 12-cv-1602 YGR, 2013 WL 75781, at *4-5 (N.D. Cal. Jan. 4, 2013) to disqualify K&S.  The

19   case is inapposite.  In *Davis*, Mitchell Silberberg & Knupp ("MSK") represented Ms. Davis and

20   her band, The Motels, for *a decade* on a variety of matters, including contract negotiation, royalty

21   payments and general band management.  MSK attorneys negotiated the very recording contracts

22   with EMI at issue in the litigation.  MSK even retained Davis' tax returns, audits, royalty

23   statements and contract amendments, which were all directly relevant in the litigation.  MSK

24   sought Davis' consent to its representation of EMI.  She refused, but the firm continued with the

25   representation anyway because the attorneys who worked most closely with Davis had left the

26   firm.  MSK conceded (as it should have) that there was a substantial relationship between its

27

28   ───────────────
     [8] The NSO defense team have only reviewed the portions of the opposition that summarize the
     NSO Litigation, their declarations and the Sunray Declaration.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 15 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

former representation of Davis and its current representation of EMI.  In addition, there was

evidence EMI hired MSK because it "perceived an advantage due to the prior relationship."  *Id.* at

\*4.  Against this backdrop, the Court disqualified MSK, finding its representation of Davis was

"extensive" and the opportunities for sharing confidences with others in the firm "were many."

*Id.*

There is no basis for applying *Davis* here.  K&S provided WhatsApp less than 94 hours of

services in the Sealed Matter; the representation was not "extensive."  The four attorneys who

performed work on the matter departed the firm in 2017 and 2018.  Two of the members of the

NSO defense team joined the Firm in April 2017, barely overlapping with Ms. O'Neil, Mr. Wray

and Mr. Oldham. Mr. Craig had no contact with any of them, and Mr. Akrotirionakis's only

contact with Mr. Wray was a roughly ten minute telephone call for another client.  Craig Decl. ¶

Akrotirianakis Decl. ¶ 23-28.  Mr. Noller joined the Firm in August 2018.  Noller Decl. ¶2.  Mr.

Dantiki and Mr. Rosenstein joined K&S in 2019 and 2020.   Dantiki Decl. ¶2; Rosenstein Decl. ¶

2.

Obviously, Mr. Mezzina cannot share confidential material to the NSO defense he never

had.  Screening implemented by K&S ensures no one can access information about the Sealed

Matter outside the General Counsel's office.  Mr. Mezzina has not communicated with any

member of the NSO team about his limited work in the Sealed Matter.  Mezzina Decl. ¶¶9-19.

The NSO Litigation team was not even aware of the Sealed Matter until Mr. LeBlanc's March 18,

2020 correspondence.  Akrotirianakis Decl. ¶ 22.  No member of the NSO Litigation team ever

accessed file material in the Sealed Matter and ever will:  access to the Sealed Matter is restricted.

Thornton Decl. ¶ 22-32;  Dantiki Decl.; Rosenstein Decl.; Craig Decl.; Noller Decl.;

Akrotirianakis Decl.

## C.      There is No Basis to Disqualify K&S Under CRPC Rule 1.9

WhatsApp urges the Court to disqualify K&S pursuant to California Rule of Professional

Conduct, Rule 1.9.  This Rule prohibits a lawyer from representing a new client in a matter

adverse to a former client where there is a substantial relationship between the two matters

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 16 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

(absent the informed written consent of the former client).  The Rule is inapplicable here for two reasons, either sufficient to deny the motion:  1) as established in section III(B)(1) there is no substantial relationship between the Sealed Matter and the NSO litigation; and, 2) no current K&S attorney represented WhatsApp in the Sealed Matter or acquired confidential information material to the defense of NSO.

As formulated, Rule 1.9 prohibits "a lawyer" who formerly represented a client in a matter from representing another client in another matter that is both adverse and substantially related to the former matter.  WhatsApp concedes that the two primary counsel in the Sealed Matter – Ms. O'Neil and Mr. Wray – are no longer at K&S and acknowledges that a third K&S attorney, Mr. Oldham, is also no longer with the firm.  Its entire disqualification analysis rests on Mr. Mezzina's 7.9 hours of work for WhatsApp.

Mr. Mezzina's limited work researching ███████████████ does not rise to the level of "representation" under Rule 1.9.  For the purposes of a disqualification analysis, representation exists where "an attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result."[9]  See, *SpeeDee,* 20 Cal.4th 1148. A representation sufficient to trigger a conflicts analysis does not exist where an attorney was "not called upon to formulate a legal strategy and by the very limited nature of his contact with [the client] could not have gained detailed knowledge of the pertinent facts and legal principles." *In re Marriage of Zimmerman*, 16 Cal.App. 4th 556, 565 (1993).  Mr. Mezzina was not called upon to formulate a legal strategy with regard to WhatsApp's response to ███████████ ████████████████████████████.  Mezzina Decl. ¶¶11-19.  He had no contact with WhatsApp and did not gain "detailed knowledge regarding the pertinent facts and legal principals" at issue in the Sealed Matter.  *Id.*, Thornton Decl. Exhs. 1-20.

## IV.   CONCLUSION

In determining whether the drastic remedy WhatsApp seeks is warranted, the Court must balance several important interests, including NSO's right to be represented by experienced

---

[9] "[M]aterial" means to "material to the employment". *Id.* at p. 1147.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 17 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH

counsel of its choice, preventing abuse of disqualification motions and prejudice to NSO while at the same time ensuring public trust in the courts and standards of ethical practice are maintained. K&S has demonstrated the balance weighs in favor of its client, NSO and that all of the elements necessary to apply Rule 1.10(b) exist: three of the four attorneys involved in the Sealed Matter "terminated" their association with K&S in 2017, the NSO litigation is not substantially related to the Sealed Matter, and the only attorney now at K&S, Mr. Mezzina, did not acquire and does not have any confidential information material to the defense of NSO. K&S has taken care to ensure that neither he, nor any member of the NSO Defense team, nor any other attorney or staff has access to the limited extant file materials. The integrity of this process or the court will not be jeopardized by preserving NSO's attorney-client relationship with K&S. In contrast, the harm to NSO that would flow from disqualification is significant. For these reasons, K&S, for itself and on behalf of its clients, respectfully requests the Court to deny this motion.

Dated: May 29, 2020.                           LONG & LEVIT LLP


                                               By: /s/ *Jessica R. MacGregor*
                                               JESSICA R. MACGREGOR
                                               Specially Appearing For Third Party
                                               KING & SPALDING LLP

4841-3124-1662 v.1.docx

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

- 18 -

KING & SPALDING LLP'S OPPOSITION TO MOTION
TO DISQUALIFY – 4:19-cv-07123-PJH