COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
JOSEPH MORNIN (307766)
(jmornin@cooley.com)
101 California Street, 5th Floor
San Francisco, CA   94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

DANIEL J. GROOMS (D.C. Bar No.
219124) (admitted *pro hac vice*)
(dgrooms@cooley.com)
ELIZABETH B. PRELOGAR (262026)
(eprelogar@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
Telephone:   (202) 842-7800
Facsimile:    (202) 842-7899

O'MELVENY & MYERS LLP
MICHAEL R. DREEBEN (D.C. Bar No.
370586) (admitted *pro hac vice*)
(mdreeben@omm.com)
1625 I Street NW
Washington, D.C. 20006
Telephone: (202) 383-5300

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>                              Plaintiffs,<br><br>         v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>                              Defendants. | Case No. 4:19-cv-07123-PJH<br><br>REPLY BRIEF IN SUPPORT OF WHATSAPP'S MOTION TO DISQUALIFY DEFENSE COUNSEL BASED ON PRIOR REPRESENTATION IN A SEALED MATTER<br><br>Date:          June 24, 2020<br>Time:          2:00 p.m.<br>Courtroom:  3<br>Judge:         Hon. Phyllis J. Hamilton |

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................1

II.  ARGUMENT .........................................................................................3

    A.   All K&S attorneys involved in the prior representation are conflicted in
        this case under Rule 1.9. ...............................................................3

        1.   The four K&S attorneys involved in the prior representation—
            including Mr. Mezzina—represented WhatsApp. ...........................3

        2.   K&S's successive representation of WhatsApp's adversary is
            substantially related to its prior representation of WhatsApp..........5

        3.   The conflicted K&S attorneys—including Mr. Mezzina—obtained
            WhatsApp's confidential information that is material to this case..9

    B.   The conflict should be imputed to the entire firm......................................11

    C.   K&S cannot avoid disqualification by urging a "balancing" test. .............14

III.  CONCLUSION....................................................................................15

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Adams v. Aerojet-General Corp.*,
    86 Cal. App. 4th 1324 (2001) ............................................................................13

5

6

*Beltran v. Avon Prods., Inc.*,
    867 F. Supp. 2d 1068 (C.D. Cal. 2012) ..........................................................6, 8

7

*City & County of S.F. v. Cobra Sols., Inc.*,
    38 Cal. 4th 839 (2006) .........................................................................................6

8

9

*Costello v. Buckley*,
    245 Cal. App. 4th 748 (2016) ..............................................................................9

10

*Davis v. EMI Group Ltd.*,
    2013 WL 75781 (N.D. Cal. Jan. 4, 2013) .........................................................12

11

12

*DCR Mktg. Inc. v. US Alliance Grp., Inc.*,
    2020 WL 2066148 (C.D. Cal. Jan. 31, 2020) .....................................................4

13

*Farris v. Fireman's Fund Ins. Co.*,
    119 Cal. App. 4th 671 (2004) ..............................................................................8

14

15

*Flatt v. Super Ct.*,
    9 Cal. 4th 275 (1994) ................................................................................. *passim*

16

17

*Goldberg v. Warner/Chappell Music, Inc.*,
    125 Cal. App. 4th 752 (2005) ......................................................................11, 12

18

*H.F. Ahmanson Co. v. Salomon Bros., Inc.*,
    229 Cal. App. 3d 1145 (1991) ...........................................................................14

19

20

*Jessen v. Hartford Casualty Ins. Co.*,
    111 Cal. App. 4th 698 (2003) ......................................................................2, 6, 8

21

22

*Kirk v. First Am. Title Ins. Co.*,
    183 Cal. App. 4th 776 (2010) ..................................................................11, 13, 14

23

*In re Marriage of Zimmerman*,
    16 Cal. App. 4th 556 (1993) ...........................................................................4, 5

24

25

*Nat'l Grange of Order of Patrons of Husbandry v. Cal. Guild*,
    38 Cal. App. 5th 706 (2019) ..............................................................................14

26

27

*Openwave Sys., Inc. v. 724 Sols. (US) Inc.*,
    2010 WL 1687825 (N.D. Cal. Apr. 22. 2010) ..................................................14

28

**TABLE OF AUTHORITIES**
(continued)

**Page**

*People ex rel. Dept. of Corps. v. SpeeDee Oil Changes Sys., Inc.*,
    20 Cal. 4th 1135 (1999) ..................................................................................3, 5, 9, 14

*Plumley v. Doug Mockett & Co.*,
    2008 WL 5382269 (C.D. Cal. Dec. 22, 2008) ...............................................................4

*SC Innovations, Inc. v. Uber Techs., Inc.*,
    2019 WL 1959493 (N.D. Cal. May 2, 2019) ..................................................................8

*TWiT, LLC v. Twitter Inc.*,
    2018 WL 2470942 (N.D. Cal. June 1, 2018) ..................................................................6

*ViChip Corp. v. Lee*,
    2004 WL 2780170 (N.D. Cal. Dec. 3, 2004) (Hamilton, J.) .........................................4

**Other Authorities**

California Rules of Professional Conduct
    1.9............................................................................................................... *passim*
    1.10............................................................................................................. *passim*

1  **I.   INTRODUCTION**

2          Four years ago, WhatsApp retained King & Spalding LLP (K&S) ████████

3  ████████████████████████████████████████████  K&S undertook

4  ethical duties to safeguard the client confidences it learned about WhatsApp's ████████

5  ████████████  K&S's files and communications prove that the attorneys who worked on

6  the case obtained "highly confidential and proprietary" information about those matters.  Thornton

7  Decl., Ex. 7, at KS_WHATSAPP_0002046.  One of the attorneys who handled that representation,

8  Paul Mezzina, is a K&S partner today.

9          K&S now asks this Court to allow it to oppose its former client WhatsApp in a case

10  involving circumvention of ████ encryption and security technology.  Neither the law nor

11  fairness allows lawyers to turn on their former clients in this way.  The California ethical rules

12  preclude K&S's about-face representation and explicitly impute the conflict to all attorneys at the

13  firm.  Only by removing the conflicted firm can the Court enforce K&S's ethical obligations and

14  protect the integrity of these proceedings.

15          In its attempt to deny the conflict between its former representation of WhatsApp and its

16  current representation of Defendants NSO Group Technologies Inc. and Q. Cyber Technologies

17  Inc. (collectively, "NSO"), K&S distorts the disqualification standards and all but ignores the

18  relevant legal framework.  First, K&S errs in contending that California Rules of Professional

19  Conduct 1.9 and 1.10(b) provide mutually exclusive disqualification tests and that Rule 1.9, which

20  WhatsApp invokes, is irrelevant here.  *See* Opposition to WhatsApp's Motion to Disqualify

21  ("Opp.") at 2, 16-17.  Properly understood, Rules 1.9 and 1.10 operate in tandem.  Rule 1.9 governs

22  whether an attorney is conflicted and barred from engaging in a successive representation.  And

23  Rule 1.10 generally imputes a conflict to the attorney's entire firm, applying one test if any

24  conflicted attorney remains at the firm (Rule 1.10(a))—which is the situation here since Mr.

25  Mezzina is still at K&S—and a different test if all conflicted attorneys have left (Rule 1.10(b)).

26          Under Rule 1.9, the K&S attorneys who participated in the prior representation—including

27  Mr. Mezzina—have a conflict that precludes representation of NSO against WhatsApp for two

28  independent reasons: (1) the representations are substantially related; and (2) the attorneys actually

**REPLY BR. ISO MOTION TO DISQUALIFY**
**CASE NO. 4:19-CV-07123-PJH**

obtained material confidential information.  Rule 1.10(a) then imputes the conflict to all K&S attorneys.  *See* Rule 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[] . . . 1.9").[1]  K&S essentially concedes the scope and remedy of Rule 1.10(a), but nevertheless attempts to evade its application here.  K&S makes the extraordinary claim that the legal work Mr. Mezzina performed for WhatsApp does not "rise to the level of 'representation' under Rule 1.9."  Opp. at 17.  But Mr. Mezzina received confidential information about WhatsApp's technology and provided substantive legal advice.  And K&S charged WhatsApp for Mr. Mezzina's work.  That is quintessential "representation."  K&S's contrary position has no basis in the facts or record, is unsupported by case law, and would lead to absurd consequences— including that Mr. Mezzina could serve as NSO's lead counsel in this very case, an indefensible result that K&S does not even acknowledge, let alone seek to justify.

Second, K&S misstates the test for substantially related matters.  K&S's insistence that successive representations must involve similar legal issues runs counter to California precedent holding that the test focuses on the subject matter of the representations and not any strict identity of legal claims.  *See, e.g.*, *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 709, 711 (2003).  And K&S's argument that its prior representation of WhatsApp █████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Finally, K&S erroneously asserts that this Court should conduct a "[b]alancing" test to excuse it from compliance with its ethical obligations to WhatsApp based on asserted inconvenience NSO will face in finding new counsel.  Opp. at 8-9.  But the ethical rules themselves balance the relevant interests and when a conflict exists, "[t]he important right to counsel of one's choice *must yield* to ethical considerations that affect the fundamental principles of our judicial

---

[1] Rule 1.10(a) lists two narrow exceptions to this rule based on an attorney's personal conflicts or association with a prior firm, but they are inapplicable here and K&S does not argue otherwise.

REPLY BR. ISO MOTION TO DISQUALIFY
CASE NO. 4:19-CV-07123-PJH

1    process." *People ex rel. Dept. of Corps. v. SpeeDee Oil Changes Sys., Inc.*, 20 Cal. 4th 1135, 1145

2    (1999) (emphasis added).  K&S also does nothing to rebut WhatsApp's showing that it acted

3    prudently by conducting diligence and raising the conflict within two weeks of K&S's entry of an

4    appearance and at the outset of the litigation.

5         K&S represented WhatsApp in a prior matter that is substantially related to ███████████

6    ███████  of this case.  K&S has a clear conflict of interest and should be disqualified from

7    representing NSO here.

8    **II.   ARGUMENT**

9         **A.    All K&S attorneys involved in the prior representation are conflicted in this
            case under Rule 1.9.**

10

11        **1.    The four K&S attorneys involved in the prior representation—
                 including Mr. Mezzina—represented WhatsApp.**

12        At the tail end of its opposition, K&S contends that this Court need not apply the Rule 1.9

13   conflict analysis because "no current K&S attorney represented WhatsApp in the Sealed Matter or

14   acquired confidential information material to" NSO's defense.  Opp. at 17.  K&S is wrong on these

15   points.  Mr. Mezzina is indisputably a current K&S attorney, *see* Mezzina Decl. ¶ 7, and K&S's

16   own exhibits establish that he received material confidential information while representing

17   WhatsApp, *see, e.g.*, Thornton Decl., Ex. 7.  K&S's attempt to erase Mr. Mezzina from the prior

18   representation is factually baseless and legally flawed, and it would produce untenable results.

19        As a threshold matter, WhatsApp formally retained K&S in the prior matter, *see* LeBlanc

20   Decl. (Apr. 29, 2020), Ex. B (engagement letter), and Mr. Mezzina provided legal services and

21   billed his time to WhatsApp in connection with that representation, *see* Thornton Decl., Ex. 2.  Mr.

22   Mezzina communicated with other K&S attorneys who also represented WhatsApp; ███████

23   ████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████  and he drafted a

25   memorandum summarizing his legal research and analysis for WhatsApp.  *See, e.g.*, Thornton

26   Decl., Exs. 2, 7, 18; Opp. at 1.  By any measure, that constitutes legal representation.[2]

27   ────────────

28   [2]  K&S suggests (Opp. at 14 n.7) that the Court evaluate Mr. Mezzina's role in representing

3.

1    K&S cites no case holding that an attorney like Mr. Mezzina who obtained confidential

2    information and performed and billed legal work for a client formally represented by the attorney's

3    firm somehow is not counted in that representation.  And K&S's observation that Mr. Mezzina

4    billed fewer hours than other attorneys and did not meet directly with WhatsApp employees neither

5    alters the fact of the representation nor negates his provision of legal services to WhatsApp during

6    the time he worked on the case.  *See, e.g., ViChip Corp. v. Lee*, 2004 WL 2780170, at *2-3 (N.D.

7    Cal. Dec. 3, 2004) (Hamilton, J.) (disqualifying defendant's attorney and law firm where attorney

8    admitted he had provided 2.5 hours of legal services to the plaintiff); *DCR Mktg. Inc. v. US*

9    *Alliance Grp., Inc.*, 2020 WL 2066148, at *6 (C.D. Cal. Jan. 31, 2020) (disqualifying law firm

10   where attorney billed 2.6 hours on prior matter).

11   Indeed, lesser involvement than Mr. Mezzina's representation of WhatsApp has counted

12   as representation for conflicts analysis.  In *Plumley v. Doug Mockett & Co.*, 2008 WL 5382269, at

13   *1 (C.D. Cal. Dec. 22, 2008), an attorney had not been directly retained by the former client;

14   instead, he was asked to help by the client's lawyer.  *Id.* at *1.  Although he "never met or spoke

15   directly with [the client]" and "spent [only] a total of 5.6 hours on [the client's] matters," the court

16   concluded that he had represented the client for conflicts purposes because he  had participated in

17   "telephone conferences [with the other lawyer], review[ed] briefs and files, and perform[ed] legal

18   research."  *Id.*  Mr. Mezzina's direct representation of WhatsApp on a substantive legal matter in

19   which he received confidential information requires the same conclusion.

20   Against all this, K&S relies on a case evaluating whether a preliminary consultation

21   between a potential client and an attorney that never resulted in the provision of legal services

22   qualified as a "representation."  *See* Opp. at 17 (citing *In re Marriage of Zimmerman*, 16 Cal. App.

23

24   WhatsApp based on Rule 1.10(a)(2), which "permit[s] the erection of an ethical screen in narrowly defined circumstances" when a "lawyer who has moved laterally from another private firm" has a conflict "aris[ing] out of the prohibited lawyer's association with [the] prior firm." Rule 1.10(a)(2)

25   & Executive Summary 1.  The more nuanced assessment of when a conflicted attorney can be screened at a new firm based on whether his "previous[] participation was substantial" has no

26   application here, where Mr. Mezzina represented WhatsApp at K&S, not any other firm.  *Id.* Comment [1].  Rule 1.10(a)(2) seeks to "provide flexibility for lawyers to move laterally."  *Id.*

27   Executive Summary at 2.  It does not create a category of "insubstantial" representation that permits a firm to evade conflicts analysis under Rule 1.9 arising from its own attorney's actions.

28

4.

4th 556, 565 (1993)).[3]  In *Zimmerman*, the court declined to find representation when a prospective client had a "20-minute telephone conversation" with an attorney who lacked the expertise the client sought, declined to take on the case, "performed no work" on the matter,  and "recommended that [the prospective client] seek representation" by someone else.  *Id.* at 560, 565.  That conclusion has no application here, where WhatsApp formally retained K&S to represent it in the prior matter, Mr. Mezzina performed work for WhatsApp, and he obtained WhatsApp's confidential client information in providing those legal services.

The untenable result of K&S's argument, if it were accepted, is that Mr. Mezzina would have no ethical prohibition in serving as lead counsel against WhatsApp in this case.  That would strike a direct blow to public confidence in the integrity of the legal profession (not to mention its unfairness to WhatsApp), given Mr. Mezzina's work for WhatsApp in the prior representation. Even K&S implicitly appears to recognize this.  *See* Opp. at 8 (explaining efforts to screen Mr. Mezzina from the case).  K&S accordingly cannot avoid Rule 1.9's ethical requirements on the unsound theory that Mr. Mezzina did not represent WhatsApp.

### 2. K&S's successive representation of WhatsApp's adversary is substantially related to its prior representation of WhatsApp.

Rule 1.9 makes clear that disqualification is required when "[a] lawyer who has formerly represented a client in a matter" seeks to "represent [an adverse party] in . . . a substantially related matter."  Rule 1.9(a); *see SpeeDee Oil*, 20 Cal. 4th at 1146 ("[W]here the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation.").  K&S's assertion that its successive representations are not substantially related lacks merit.[4]

---

[3] K&S also cites *SpeeDee Oil*, 20 Cal. 4th at 1148.  But the court there found that an attorney *had* represented a prospective client because he had received confidential information in their preliminary consultations and had performed limited initial legal research.  *Id.* at 1152.  *SpeeDee Oil* emphasized that the representation required disqualification even though the attorney spent minimal time on the matter.  *Id.* at 1148.  That disqualification analysis provides yet further support for the conclusion that Mr. Mezzina represented WhatsApp for conflicts purposes.

[4] K&S addresses the substantial relationship test as part of its analysis of Rule 1.10(b)(1), which applies when all attorneys involved in the prior representation have left the firm.  Because Mr. Mezzina is still at K&S, the issue is instead properly examined under Rule 1.9.  But in any event, Rules 1.9 and 1.10(b)(1) apply the same substantial relationship test.

K&S's legal framework is wrong. It contends "[a] substantial relationship arises only if the legal problems involved in the former and current representation are similar." Opp. at 11. But the substantial relationship test does not require identity of legal issues. *See, e.g.*, *Jessen*, 111 Cal. App. 4th at 712. As *Jessen* explained, "limiting the comparison of the two representations to their precise legal and factual issues might operate unrealistically to the detriment of the first client" because an attorney "may acquire confidential information about the client or the client's affairs which may not be directly related to the transaction or lawsuit at hand" but can aid the attorney in later representing the client's adversary. *Id.* Thus, "a 'substantial relationship' exists whenever the 'subjects' of the prior and current representations are linked in some rational manner," with "the words 'subject' and 'subject matter' mean[ing] more than the strict facts, claims, and issues involved in a particular action." *Id.* at 711 (quoting *Flatt v. Super Ct.*, 9 Cal. 4th 275, 283 (1994)); *see also Beltran v. Avon Prods., Inc.*, 867 F. Supp. 2d 1068, 1082 (C.D. Cal. 2012) (concluding that "abundant evidence . . . supports a rational conclusion that information material to the prior . . . matters is also material to the present lawsuit" even though the claims were different, as "identity of claims are not required"). In short, California courts conduct a practical assessment focused on whether "the subjects of the prior representation are such as to make it likely the attorney acquired confidential information that is relevant and material to the present representation." *City & County of S.F. v. Cobra Sols., Inc.*, 38 Cal. 4th 839, 847 (2006) (internal quotations and citation omitted).

In contending that the substantial relationship test is satisfied "only if the legal problems involved . . . are similar," K&S misreads *TWiT, LLC v. Twitter Inc.*, 2018 WL 2470942 (N.D. Cal. June 1, 2018). The court there found no substantial relationship because the subjects of the representations did not overlap, whether looking at the legal claims, the "factual issues," or the services at issue. *Id.* at *4-5. Among other distinctions, the client's "technology [was] not" at issue in the second case, such that the court could conclude that "[a]ny confidential communications" about that technology obtained in the prior representation on patent issues was "immaterial" to the second case. *Id.* But the decision in *TWiT* did not depart from the substantial relationship test, which focuses on more than rote comparison of each case's legal claims.

1    Here, a substantial relationship exists between K&S's successive representations.  In the

2    prior representation, K&S was retained to ████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████   *See*

5    Sommer Decl. ¶¶ 6-12.  Now, K&S seeks to oppose WhatsApp and represent NSO, who is accused

6    of circumventing WhatsApp's security and technical restrictions in order to access WhatsApp's

7    users' communications without their knowledge or consent.  In the prior representation, K&S had

8    full access to confidential and proprietary information about the workings of WhatsApp's software

9    and technology ███████████████████████████████████████████   *Id.*; *see also*

10   Thornton Decl., Exs. 1, 5, 7.  Now, K&S seeks to defend WhatsApp's adversary against specific

11   claims of circumvention and unauthorized access.  K&S's narrow focus on the particular legal

12   issues in each representation ignores the substantial technological overlap in the *subjects* of the

13   suits and the near certainty that the confidential information K&S obtained in the prior

14   representation would be relevant, material, and useful to K&S's current defense of NSO.

15       K&S argues that its prior representation of WhatsApp was limited to issues involving

16   ████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████ Opp. at 12.  But that argument

18   artificially and inaccurately narrows the scope of the prior representation.  K&S's own documents

19   show that, ████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████████

22   ██████████████████████████████   *See* Thornton Decl., Ex. 7 at KS_WHATSAPP_002038-

23   40 ████████████████████████████████████████████████████████████████████████████

24   ██████████████████   ; Sommer Decl. ¶ 6 ███████████████████████████████████████

25   █████████████████████   ; *id.* ¶ 10 █████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████████████

27   █████████████████   ; *id.* ¶ 9 ██████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████████

1   ████████████████████████████████████████████████████████████

2   ███████████████████████████████████████   WhatsApp has alleged that NSO gained

3   unauthorized access to WhatsApp's servers to push malicious code to users' devices in order to

4   access communications decrypted on those devices.  Compl. ¶¶ 25, 35-45; *see, e.g.*, *Jessen*, 111

5   Cal. App. at 713 (considering whether confidential information obtained in first representation is

6   "material to the evaluation, prosecution, settlement or accomplishment of the current

7   representation given its factual and legal issues"); *Farris v. Fireman's Fund Ins. Co.*, 119 Cal.

8   App. 4th 671, 681 (2004) (considering whether "the general features of the matters involved" in

9   both representations suggested that confidential information "could be used to adverse effect" in

10  the successive litigation).  Given the close linkage of the subjects at issue, K&S's successive

11  representations satisfy the substantial relationship test.  *See Beltran*, 867 F. Supp. 2d at 1082

12  (finding attorney was likely to have acquired material confidential information where prior client's

13  "testing protocols" were at issue in both representations); *see also SC Innovations, Inc. v. Uber

14  Techs., Inc.*, 2019 WL 1959493, at *9 (N.D. Cal. May 2, 2019) (finding substantial relationship

15  when Uber's price-setting strategies were material to both representations).[5]

16      K&S errs in arguing that WhatsApp must *additionally* show that the K&S attorneys

17  actually obtained confidential information.  Opp. at 13.  Although WhatsApp can make that

18  showing, *see* Section II.A.3, *infra*, the substantial relationship test creates a "conclusive

19  presumption of knowledge of confidential information" in recognition that a former client should

20  not need "to prove what is in the mind of the attorney" or "engage in a subtle evaluation of the

21  extent to which [the attorney] acquired relevant information in the first representation and of the

22  actual use of that knowledge and information in the subsequent" representation.  *Jessen*, 111 Cal.

23

24  ───────────────────────

    [5] K&S is wrong to contend (Opp. at 11) that *SC Innovations* was singularly focused on the

25  similarity of the legal claims in successive representations.  *SC Innovations* observed that a
    substantial relationship can be based on "the subjects of the prior and current representation," 2019

26  WL 1959493, at *5 (quoting *Flatt*, 9 Cal. 4th at 283), and that a factual overlap can trigger a
    disqualifying conflict, *id.* at *7 (noting that prior representation "required at least some degree of

27  discovery into and analysis of the same Uber operations at issue in th[e] case" before the court).

28

App. 4th at 706 (citation omitted).[6]  Because WhatsApp has demonstrated a substantial relationship, the K&S attorneys involved in the prior representation are conclusively "presumed" to have obtained material confidential information and would be prohibited under Rule 1.9 from representing NSO in this case. *See Flatt*, 9 Cal. 4th at 283 (when substantial relationship exists, "access to confidential information by the attorney in the course of the first representation . . . is *presumed* and disqualification . . . is mandatory").

### 3. The conflicted K&S attorneys—including Mr. Mezzina—obtained WhatsApp's confidential information that is material to this case.

Even absent a substantial relationship between successive representations, under Rule 1.9 "[a] former client may seek to disqualify a former attorney from representing an adverse party by showing the former attorney actually possesses confidential information adverse to the former client." *Costello v. Buckley*, 245 Cal. App. 4th 748, 754 (2016) (citations omitted).  WhatsApp's showing satisfies this alternative test as well, *see* Mot. at 13-14 (summarizing the confidential information K&S received during the prior representation); Sommer Decl. ¶¶ 6-12 (same)—and the documents K&S itself submitted to this Court remove any possible doubt.[7]

---

[6] K&S's observation that Mr. Mezzina billed fewer hours than other K&S attorneys and its contention that he did not need a "grasp of the facts" is thus entirely irrelevant. Opp. at 15. *See SpeeDee Oil*, 20 Cal. 4th at 1148 (observing that whether an attorney could have "acquired confidential information" is "not necessarily answered by the amount of time involved"). The substantial relationship test creates a conclusive presumption that confidential information was obtained precisely to avoid attempts to discern the attorney's state of knowledge. What matters is that K&S cannot and does not dispute that Mr. Mezzina personally provided and billed his legal services to WhatsApp, including (by K&S's own account) reviewing ███████████████ the Sealed Matter," "author[ing] and revis[ing]" a memorandum summarizing his legal research, and communicating with other K&S attorneys about the matter. Opp. at 4-5. While K&S highlights an email from Mr. Mezzina stating ██████████████████████████████ ███████, Opp. at 5, ███████████████████████████████████ ███████████████████ Thornton Decl. Exs. 2, 12 (KS_WHATSAPP_0002069). All of this underscores the logic behind the conclusive presumption of knowledge under the substantial relationship test: it guards against attempts like K&S's to evade ethical obligations through self-serving after-the-fact assurances that no relevant confidential information could have been obtained.

[7] While K&S faults WhatsApp for failing to submit this evidence, *see* Opp. at 14, K&S delayed returning the custodial files for all K&S attorneys who represented WhatsApp until May 8, 2020—almost a month after WhatsApp filed its motion for disqualification and almost two months after WhatsApp first requested that K&S return its client files. *See* LeBlanc Decl. (June 5, 2020) ¶ 16.

1   While K&S contends that "no evidence" demonstrates that "any K&S attorney other than

2   Ms. O'Neil and Mr. Wray . . . acquired any confidential information from WhatsApp," Opp. at 14,

3   excerpts from the client file show that claim is incorrect:  Mr. Oldham sent Mr. Mezzina ███

4   ████████████████████████████████████████████████████████████████████████

5   ██████ containing confidential and proprietary information. *See* Thornton Decl., Ex. 7.  Most

6   importantly, the ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ███████████████████████████   *See id.*, Ex. 7 at KS_WHATSAPP_0002038-41.

10  ████████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████

12  ████████████████████████████   *See id.* at KS_WHATSAPP_0002046.

13   Mr. Mezzina's billing records reflect that he spent time reviewing ████████████████

14  ████████████████████████████████████████████████████████████████████████

15  ██████████████   *See* Thornton Decl., Ex. 2 (Mezzina 2/10/2016 time entry).  And Mr. Oldham

16  clearly understood that Mr. Mezzina had access to confidential information by asking him ████████

17  ████████████████████████████████████████████████████████████████████████

18  █████████████████████   *See* Thornton Decl., Ex. 18 at KS_WHATSAPP_0002345.  The

19  record thus directly contradicts K&S's claim that "[n]one of the documents Mezzina received or

20  the work product he prepared refer or relate to confidential client information."  Opp. at 15.

21   Nor can K&S evade its ethical obligations to its former client on the ground that the

22  confidential client information Mezzina and the other K&S attorneys received was not "material

23  to NSO's defense here."  Opp. at 15.  NSO and its counsel would surely find it relevant and helpful

24  to know ██████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████

27   Once again, the breadth of K&S's claim that none "of the confidential information K&S

28  obtained in the Sealed Matter is material to its defense of NSO" exposes the flaws in its analysis.

1    Opp. at 14.  If NSO's constricted view of materiality were correct, then there would be no per se
2    conflict even if the lead K&S attorneys who worked on the prior matter had, like Mr. Mezzina,
3    remained at K&S (or returned) and appeared now as counsel for NSO here.  Those lawyers would
4    be free to oppose WhatsApp so long as they purported not to use the deep knowledge of
5    WhatsApp's technology that they acquired in the course of representing WhatsApp in the Sealed
6    Matter.  That anomalous result — the inevitable product of NSO's position — reveals why its
7    argument cannot be right.

8          Because the K&S attorneys engaged in the prior representation actually obtained
9    WhatsApp's confidential information material to the present case, Rule 1.9 prohibits their
10   representation of NSO on that additional ground.

11                    **B.      The conflict should be imputed to the entire firm.**

12         The California Supreme Court has recognized that when a conflict of interest requires an
13   attorney's disqualification from a matter, "the disqualification extends vicariously to the entire
14   firm." *Flatt*, 9 Cal. App. 4th at 283; *see also Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th
15   776, 801 (2010) (similar).  Rule 1.10(a) codifies that rule, providing that "[w]hile lawyers are
16   associated in a firm, *none of them* shall knowingly represent a client when *any one of them*
17   practicing alone would be prohibited from doing so by rule[]. . . 1.9."  Rule 1.10(a) (emphasis
18   added).  Applying that analysis here, because Mr. Mezzina remains at K&S and is prohibited from
19   representing WhatsApp under Rule 1.9, his disqualification extends to the firm as a whole.

20         K&S's argument that the Court should instead apply Rule 1.10(b)'s more lenient
21   imputation standard—which does not automatically require vicarious disqualification when all
22   conflicted attorneys have departed a firm—ignores that Mr. Mezzina is still at K&S.  *See* Opp. at
23   10 (citing Rule 1.10(b) (providing imputation rule when "lawyer[s] ha[ve] terminated [their]
24   association with [the] firm").  Rule 1.10(b) incorporates the rule articulated in *Goldberg v.*
25   *Warner/Chappell Music, Inc.*, 125 Cal. App. 4th 752 (2005), which recognized a narrow exception
26   to automatic vicarious disqualification of a firm only where "the evidence establishes that no one
27   other than the departed attorney had any dealings with the client or obtained confidential
28   information." *Id.* at 755.  The cases K&S cites applying *Goldberg* likewise involved the inapposite

11.

1    situation where *no* attorney who worked on the prior representation remained at the firm.  *See* Opp.

2    at 13 (collecting cases where imputation of conflict was rebutted because "all attorneys who billed

3    time on [the first representation] were no longer with the firm").

4        In contrast, where, as here, at least one conflicted attorney like Mr. Mezzina remains at the

5    firm, the automatic vicarious disqualification rule applies.  For example, in *Davis v. EMI Group*

6    *Ltd.*, 2013 WL 75781 (N.D. Cal. Jan. 4, 2013), the court declined to rely on *Goldberg* when a

7    former client's lead attorneys had left the firm because "two attorneys [who remained at the firm

8    had] performed work in connection with [the firm's] representation of [the former client]."  *Id.* at

9    *4.  K&S's attempt (Opp. at 15-16) to distinguish *Davis* on the ground that the representation there

10   was extensive misses the central point: *Goldberg* and Rule 1.10(b) apply only when *all* attorneys

11   who worked on a matter have terminated their association with the firm.  *See* Executive Summary

12   Rule 1.10 at 3 ("The concept recognized in *Goldberg* is that if a lawyer who has represented a

13   client and acquired confidential information has left the firm, *and no other lawyer who has*

14   *acquired confidential information remains*, then there is *no one left* in the firm with knowledge

15   that can be imputed to other lawyers in the firm.") (emphasis added).  K&S offers no support for

16   its contention that *Goldberg* and Rule 1.10(b) can apply where a conflicted attorney like Mr.

17   Mezzina remains at the firm; instead, Rule 1.10(a)'s rule of vicarious disqualification governs here.

18       Even if Rule 1.10(b) and *Goldberg* could apply here, the conflict from K&S's prior

19   representation of WhatsApp must be imputed to the entire firm.  The exception to imputation

20   described in Rule 1.10(b) does not apply if the representations are substantially related and "any

21   lawyer remaining in the firm has protected information that is material to the [current] matter."

22   *Goldberg*, 125 Cal. App. 4th at 765; *see* Rule 1.10(b).  As explained, this case is substantially

23   related to K&S's prior representation of WhatsApp, and Mr. Mezzina—who remains at the firm—

24   did obtain WhatsApp's material confidential information.  Whether analyzed under Rule 1.9 and

25   1.10(a) or under Rule 1.10(b) alone, the result is the same: K&S should be disqualified.

26       K&S cannot avoid that conclusion by obliquely referring to having "screened [Mr.

27   Mezzina] from the NSO litigation."  Opp. at 7.  K&S makes no serious argument that it has actually

28   imposed an ethical wall, the contours and timing of which it leaves totally unclear.  *See* Thornton

Decl. ¶¶ 22-32.  K&S provides no explanation of its conflicts check process, why it failed to inform WhatsApp of the potential conflict *before* agreeing to represent NSO, or how, if at all, it protected WhatsApp's confidential information at the outset of that representation.  And K&S in any event does not contend that the belated institution of such a wall could rebut the automatic rule of vicarious disqualification—and it cannot here.

The California Supreme Court has never approved the use of an ethical wall to rebut a conflict created by successive representations.  *See, e.g.*, *Flatt*, 9 Cal. 4th at 283 ("Where an attorney is disqualified[,] . . . vicarious disqualification of the entire firm is compelled as a matter of law.") (citations omitted).  Lower courts in California are divided on whether an ethical wall can ever rebut the imputation of a conflict, and those courts approving the practice have limited screens to a new firm's hiring of a conflicted attorney.  *See Kirk*, 183 Cal. App. 4th at 799-801 (describing conflict on whether an ethical wall can ever be used and permitting screen for lateral attorney who switched firms); *Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324, 1334-35 (2001) (indicating that ethical walls can be used only for lateral hires because if a conflicted attorney remains at the firm that represented the former client, "[n]o amount of assurances or screening procedures, no 'cone of silence' could ever convince the opposing party that the confidences would not be used to its disadvantage").  Rule 1.10(a)(2) itself authorizes ethical screens only where a conflict results from an attorney's move to a new firm, as opposed to a firm engaging in successive representations.  That rule responds to concerns about lawyer mobility that are irrelevant here, where K&S's conflict arises from its *own* representation of WhatsApp, not from hiring an attorney who represented WhatsApp at some other firm.

Even assuming an ethical wall might rebut the imputation of a conflict, the "screen" K&S refers to in passing would not suffice.  While "[t]he specific elements of an effective screen will vary[,] . . . two elements" at a minimum "are necessary."  *Kirk*, 183 Cal. App. 4th at 810.  "First, the screen must be *timely imposed*; a firm must impose screening measures when the conflict first arises."  *Id.*  "Second, it is not sufficient to simply produce declarations stating that confidential information was not conveyed," because "an effective wall involves the imposition of *preventive measures* to guarantee that information will not be conveyed."  *Id.*

K&S has not met those basic requirements in this case. K&S seemed to have been unaware of the conflict until WhatsApp raised it, and K&S has provided no evidence that it took preventive measures to protect WhatsApp's confidential information at the outset of its representation. Despite Mr. Mezzina's prior work for WhatsApp and continued affiliation with K&S, K&S did not obtain WhatsApp's consent or institute a screen at the time of the engagement. K&S did not even raise the possibility of a wall until more than a week after WhatsApp pointed out K&S's conflict, and K&S's opposition is conspicuously silent on the timing and scope of such a wall. *See* LeBlanc Decl. (April 10, 2020) ¶ 6. Accordingly, any wall is untimely, and the self-serving declarations K&S has submitted purporting to establish that K&S attorneys have not received confidential information are legally irrelevant. *See Kirk*, 183 Cal. App. 4th at 810; *see also Nat'l Grange of Order of Patrons of Husbandry v. Cal. Guild*, 38 Cal. App. 5th 706, 720-21 (2019) (ethical wall insufficient based on lack of contemporaneous evidence that the wall had been instituted when the conflict arose); *Openwave Sys., Inc. v. 724 Sols. (US) Inc.*, 2010 WL 1687825, at *6 (N.D. Cal. Apr. 22. 2010) (ethical wall insufficient because not imposed until movant complained).

## C.   K&S cannot avoid disqualification by urging a "balancing" test.

K&S is wrong to assert that a "[b]alancing" test permits it to switch sides and represent NSO against WhatsApp despite its ethical conflict. Opp. at 8-9. California's ethical rules make clear that when a conflict exists, courts "do not engage in a 'balancing of equities' between the former and current clients. The rights and interests of the former client will prevail." *H.F. Ahmanson Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1145, 1452 (1991); *see SpeeDee Oil*, 20 Cal. 4th 1135 at 1145-46 (new client's interest in "counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process").

Beyond the irrelevance of a balancing inquiry, K&S misstates the relevant equities. Its claim (Opp. at 2, 9) that WhatsApp has engaged in gamesmanship is unfounded and ignores K&S's own conduct and responsibilities to former clients. K&S seeks to shift the burden to WhatsApp to

1
2
3
4
5
6
7

identify a conflict, but Rule 1.9 required K&S to avoid the conflict or seek WhatsApp's consent. K&S's failure to do so put the burden on WhatsApp to assess whether a conflict existed based on the multiple prior times K&S had represented it.  *See* LeBlanc Decl. (June 5, 2020) ¶ 5.  Rather than assert conflicts based on all these prior representations, WhatsApp acted prudently in investigating, identifying only the Sealed Matter as a conflict, and raising the conflict within *two weeks* of K&S entering an appearance, at the outset of the case.  *See id.* ¶ 6.

8
9
10
11
12
13
14
15
16

K&S also distorts the record in suggesting that WhatsApp used its concern about this conflict as "leverage" in communications about a briefing schedule.  Opp. at 2, 9.  When K&S attorneys first reached out in February, they indicated they would not appear in the case as service was not proper, and they did not in fact enter an appearance until March 6, 2020.  *See* LeBlanc Decl. (June 5, 2020) ¶ 2; ECF No. 23.  WhatsApp repeatedly declined to engage in conversations about a briefing schedule during those weeks because K&S was not counsel of record.  *Id.* ¶¶ 3-4. After determining that K&S had a conflict, WhatsApp further refused to discuss the motion to dismiss briefing until K&S made a decision about whether it would withdraw.  *Id.* ¶¶ 7, 9.

17
18
19
20
21
22

Stripped of K&S's distractions, this disqualification motion turns on a clear ethical norm that precludes attorneys from switching sides to turn against their former client on a substantially related matter.  These rules exist to protect the integrity of the profession and fundamental interests in client confidentiality.  After careful evaluation of the facts, WhatsApp brought this motion to vindicate those interests, which require K&S's disqualification here.

23

### III.   CONCLUSION

24

For these reasons, WhatsApp's Motion to Disqualify should be granted.

25
26
27
28

Dated: June 5, 2020

Respectfully submitted,

COOLEY LLP

/s/ *Michael G. Rhodes*
Michael G. Rhodes

Travis LeBlanc
Daniel J. Grooms
Elizabeth B. Prelogar
Kyle C. Wong
Joseph D. Mornin

Michael R. Dreeben
O'MELVENY & MYERS LLP

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.