```
COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
JOSEPH MORNIN (307766)
(jmornin@cooley.com)
101 California Street, 5th Floor
San Francisco, CA   94111-5800
Telephone:   (415) 693-2000
Facsimile:   (415) 693-2222

DANIEL J. GROOMS (D.C. Bar No.
219124) (admitted pro hac vice)
(dgrooms@cooley.com)
ELIZABETH B. PRELOGAR (262026)
(eprelogar@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
Telephone:   (202) 842-7800
Facsimile:   (202) 842-7899

O'MELVENY & MYERS LLP
MICHAEL R. DREEBEN (D.C. Bar No.
370586) (admitted pro hac vice)
(mdreeben@omm.com)
1625 I Street NW
Washington, D.C. 20006
Telephone: (202) 383-5300

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DECLARATION OF TRAVIS LEBLANC IN SUPPORT OF REPLY BRIEF IN SUPPORT OF WHATSAPP'S MOTION TO DISQUALIFY DEFENSE COUNSEL BASED ON PRIOR REPRESENTATION IN A SEALED MATTER**<br><br>Date:         June 24, 2020<br>Time:         9:00 a.m.<br>Courtroom: 3<br>Judge:        Hon. Phyllis J. Hamilton |

1.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LEBLANC DECL.
CASE NO. 4:19-CV-07123-PJH

I, Travis LeBlanc, declare:

1. I am an attorney with the law firm of Cooley LLP and counsel for Plaintiffs WhatsApp Inc. and Facebook, Inc. in this matter. The information in this declaration is based on my personal knowledge of this matter and information I obtained following a reasonable investigation of the events described below. If called as a witness, I could competently testify to the truth of each statement.

2. On February 3, 2020, Joseph Akrotirianakis of King & Spalding first reached out to me. My colleague Joe Mornin and I spoke briefly with Mr. Akrotirianakis that same day, during which Mr. Akrotirianakis indicated that he was counsel for Defendants. During that call, Mr. Akrotirianakis indicated that Defendants might challenge sufficiency of service.

3. On February 4, 2020, it is my understanding that my colleagues Mr. Mornin and Kyle Wong spoke with Mr. Akrotirianakis and Aaron Craig of King & Spalding. Later that day, Mr. Mornin wrote to Mr. Akrotirianakis and Mr. Craig, copying me and my colleagues Mr. Wong and Daniel Grooms, to follow up on the earlier telephone conversation. In that email, Mr. Mornin indicated that we were amenable to discussing a briefing schedule but that we did not think it was appropriate to do so until King & Spalding entered an appearance as counsel of record for Defendants. A true and correct copy of that correspondence is attached hereto as Exhibit A.

4. On February 12, 2020, Mr. Grooms wrote to Mr. Akrotirianakis, copying me, in response to a telephone conversation he had with Mr. Akrotirianakis the day before. In that email, Mr. Grooms noted that Mr. Akrotirianakis had indicated he would agree to accept service on behalf of his clients and enter an appearance in the case if Plaintiffs agreed to postpone the case management conference and substantially extend Defendants' deadline for filing a motion to dismiss. Mr. Grooms reiterated that Plaintiffs remained amenable to discussing a briefing schedule but that Plaintiffs would not negotiate that until King & Spalding entered an appearance as counsel of record in this litigation. A true and correct copy of that correspondence is attached hereto as Exhibit B.

5. While my colleagues and I waited to learn whether King & Spalding would enter an appearance as counsel of record in the case, Plaintiffs contacted me to raise a concern regarding King & Spalding's representation of Defendants in this case because of King & Spalding's representation of WhatsApp in previous and potentially ongoing matters. After a careful investigation of all these

Cooley LLP
Attorneys At Law
San Francisco

2.

LeBlanc Decl.
Case No. 4:19-cv-07123-PJH

matters, which lasted a few weeks, Plaintiffs ultimately decided that the prior representation that is the subject of WhatsApp's Motion to Disqualify raised a disqualifying conflict under the relevant rules.

6. On March 18, 2020, I wrote to King & Spalding to express WhatsApp's concern that King & Spalding was violating ethical rules on conflicts by representing Defendants in this case and to request that King & Spalding return WhatsApp's client file. As detailed in my prior declaration, Mr. Thornton and I engaged in a number of conversations after that point, but Mr. Thornton did not communicate King & Spalding's decision to remain counsel for Defendants until March 31, 2020.

7. On March 25, 2020, my colleague Michael Rhodes wrote to Mr. Akrotirianakis, copying me, to follow up on a telephone conversation Mr. Rhodes and Mr. Akrotirianakis had on March 23, 2020. In that email, Mr. Rhodes stated that he had conferred with our team and considered Mr. Akrotirianakis's request to extend the time in which Defendants had to respond to Plaintiffs' Complaint. Mr. Rhodes indicated that we believed it would be best to wait until King & Spalding had made a decision on whether to withdraw from the case before discussing any scheduling issues. Mr. Rhodes further indicated that he expected to receive King & Spalding's decision on the disqualification issue no later than Friday, March 27, 2020, and that we could discuss scheduling issues at that time. A true and correct copy of that email is attached hereto as Exhibit C.

8. On March 27, 2020, Mr. Thornton reached out to me, indicating he needed more time to complete the investigation of the conflict. Mr. Thornton also proposed implementing an ethical wall, and I rejected that proposal. It was clear to me based on that conversation that the firm had been operating without an ethical wall since at least January and that King & Spalding had continued to retain WhatsApp's confidential files.

9. On March 28, 2020, Mr. Akrotirianakis wrote to Mr. Rhodes, copying me, inquiring about modifying the schedule. Mr. Rhodes responded, copying me, that our position remained the same and that we did not think it was appropriate to discuss scheduling issues until King & Spalding made a definitive decision as to whether it would withdraw from this case. A true and correct copy of that correspondence is included in Exhibit C, attached hereto.

10. On March 31, 2020, Mr. Thornton informed me that King & Spalding would not withdraw from the case. He further informed me that this decision was presented to the Defendants

in this case, who were aware of the conflicts issue and had determined to proceed with the representation notwithstanding the risk that K&S would be disqualified.

11.     That same day, after King & Spalding communicated its decision not to withdraw, Mr. Akrotirianakis emailed Mr. Rhodes and me asking to set the briefing schedule. A true and correct copy of that correspondence is included in Exhibit C, attached hereto.

12.     On April 1, 2020, Mr. Rhodes wrote to Mr. Akrotirianakis, copying me, and again stated that it was not appropriate to discuss a briefing schedule for any disqualification motion or Defendants' motion to dismiss, as Plaintiffs were still awaiting the transfer of their client file and could not make a final decision on whether to pursue a motion for disqualification until it had received such files. A true and correct copy of that correspondence is included in Exhibit C, attached hereto.

13.     Contrary to Mr. Akrotirianakis's characterizations, we did not refuse to engage in discussions regarding a briefing schedule due to any ulterior motive. As my colleagues explicitly told Mr. Akrotirianakis on multiple occasions, we did not believe it was appropriate to engage in such discussions when King & Spalding was not counsel of record. We also did not believe it was appropriate to engage in such discussions when King & Spalding had yet to respond to WhatsApp's concerns regarding the conflict at issue.

14.     Indeed, on April 2, 2020, Mr. Thornton informed me that King & Spalding was still in the process of locating WhatsApp's client file, even though I first requested its return on March 18, 2020. Mr. Thornton did not commit to a date by which King & Spalding would return these files.

15.     Accordingly, on April 10, 2020, over a week later, WhatsApp filed its Motion to Disqualify. While WhatsApp still had not received its client file, King & Spalding had not committed to return WhatsApp's client file in the foreseeable future, even though WhatsApp had repeatedly requested its return for more than three weeks before that date.

16.     In fact, King & Spalding did not make a substantial file transfer until April 17, 2020, when it transferred the custodial files belonging to Christopher Wray and Catherine O'Neil. And King & Spalding did not complete production of the client file until May 8, 2020, when it transferred the custodial files belonging to Paul Mezzina and Nick Oldham.

17. I declare under penalty of perjury that the foregoing is true and correct. Executed on June 5, 2020, in Washington, District of Columbia.

/s/ *Travis LeBlanc*
Travis LeBlanc

227108032

Cooley LLP
Attorneys At Law
San Francisco

5.

LeBlanc Decl.
Case No. 4:19-cv-07123-PJH