Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp Inc. and Facebook, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>                           Plaintiffs,<br><br>          v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>                           Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS**<br><br>Date:    July 22, 2020<br>Time:   9:00 a.m.<br>Ctrm:    3<br>Judge:  Hon. Phyllis J. Hamilton<br>(Hearing vacated by Dkt. No. 104)<br><br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..................................................................................................................1

I. DEFENDANTS' INVOCATION OF (DERIVATIVE) SOVEREIGN IMMUNITY DOES NOT JUSTIFY A STAY OF DISCOVERY ...............................................3

II. DEFENDANTS HAVE NOT RAISED DISPOSITIVE DEFENSES THAT CAN BE RESOLVED WITHOUT DISCOVERY ......................................................5

   A. Defendants' Motion Is Not Dispositive Because Any Alleged Defect Would Warrant Leave to Amend ..........................................................................5

   B. Defendants' Immunity Defense Cannot Be Established Without Discovery ..............6

   C. Defendants' Personal Jurisdiction Defense Cannot Be Established Without Jurisdictional Discovery..........................................................................7

III. THE POSSIBILITY OF FOREIGN NATIONAL SECURITY OBJECTIONS TO CERTAIN DISCOVERY REQUESTS DOES NOT JUSTIFY A STAY ...............................9

IV. PLAINTIFFS WOULD BE PREJUDICED BY A STAY ....................................................11

CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Adams v. AllianceOne, Inc.*,
  2008 WL 11336721 (S.D. Cal. Oct. 22, 2008) .................................................................. 3

*Blankenship v. Hearst Corp.*,
  519 F.2d 418 (9th Cir. 1975) ........................................................................................... 3

*Boschetto v. Hansing*,
  539 F. 3d 1011 (9th Cir. 2008) ........................................................................................ 8

*Bragg v. United States*,
  2010 WL 3835080 (S.D. W.Va. Sept. 29, 2010) .............................................................. 4

*Christian v. Commonwealth of the N. Mariana Islands*,
  2016 WL 406340 (D. N. Mar. I. Feb. 2, 2016) ................................................................ 3

*Clark v. Schwab*,
  2019 WL 4670209 (D. Kan. Sept. 25, 2019) ................................................................... 4

*Contratto v. Ethicon, Inc.*,
  227 F.R.D. 304 (N.D. Cal. 2005) ..................................................................................... 9

*Cook v. Taylor*,
  2019 WL 1233853 (M.D. Ala. Mar. 15, 2019) ................................................................ 4

*Davis v. U.S. Army Reserve Through 321st Sustainment Brigade*,
  2019 WL 5777387 (M.D. La. Nov. 5, 2019) ................................................................... 4

*Doe v. City of Las Vegas*,
  2016 WL 6905386 (D. Nev. Nov. 22, 2016) ................................................................... 3

*Doe v. Holy See*,
  2014 WL 13299857 (E.D. La. Apr. 2, 2014) ................................................................... 4

*Fosselman v. Caropreso*,
  2011 WL 999549 (N.D. Cal. Mar. 18, 2011) .......................................................... 3, 5, 11

*Garcia v. Enter. Holdings, Inc.*,
  2014 WL 4623007 (N.D. Cal. Sept. 15, 2014) ................................................................ 6

*Geraci v. City of Austin*,
  2019 WL 6050728 (W.D. Tex. Nov. 14, 2019) ............................................................... 4

*Gibbons v. McBride*,
  2014 WL 5460593 (S.D. Ga. Oct. 27, 2014) ................................................................... 4

*Gillespie v. Prestige Royal Liquors Corp.*,
    183 F. Supp. 3d 996 (N.D. Cal. 2016) .................................................................................. 8

*Grand Canyon Skywalk Dev. LLC v. Steele*,
    2014 WL 60216 (D. Nev. Jan. 7, 2014) .................................................................................. 4

*Gray v. First Winthrop Corp.*,
    133 F.R.D. 39 (N.D. Cal. 1990) .................................................................................... passim

*Hwang v. Kan. St. Univ.*,
    2012 WL 3292835 (D. Kan. Aug. 13, 2012) ........................................................................ 4

*Kling v. Hebert*,
    2020 WL 760398 (M.D. La. Feb. 14, 2020) ........................................................................ 4

*M.G. v. Metro. Interpreters & Translators, Inc.*,
    2013 WL 690833 (S.D. Cal. Feb. 26, 2013) ........................................................................ 3

*Magassa v. Wolf*,
    2020 WL 2307477 (W.D. Wash. May 8, 2020) .................................................................... 3

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Res. Dev. Servs., Inc.*,
    2010 WL 3746290 (N.D. Cal. Sept. 18, 2010) ............................................................ 5, 6, 11

*New York ex rel. James v. Pa. Higher Educ. Assistance Agency*,
    2020 WL 605944 (S.D.N.Y. Feb. 7, 2020) ............................................................................ 4

*NML Capital, Ltd. v. Republic of Argentina*,
    2012 WL 13036202 (N.D. Cal. Nov. 13, 2012) .................................................................. 10

*Novelposter v. Javitch Canfield Grp.*,
    2014 WL 12618174 (N.D. Cal. May 23, 2014) .................................................................... 5

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
    2018 WL 1569811 (N.D. Cal. Feb. 16, 2018) .................................................................... 10

*Republic of Argentina v. NML Capital, Ltd.*,
    573 U.S. 134 (2014) ............................................................................................................ 10

*Roberts v. Carothers*,
    812 F.2d 1173 (9th Cir. 1987) .............................................................................................. 7

*Salazar v. Honest Tea, Inc.*
    2015 WL 6537813 (E.D. Cal. Oct. 28, 2015) ...................................................................... 1

*Schoppe-Rico v. Lewis*,
    2012 WL 3022441 (N.D. Cal. July 24, 2012) ...................................................................... 5

*Singh v. Google, Inc.*,
    2016 WL 10807598 (N.D. Cal. Nov. 4, 2016) .................................................................... 11

*Skellerup Indus. Ltd. v. City of Los Angeles*,
   163 F.R.D. 598 (C.D. Cal. 1995) .................................................................................. 12

*Societe Nationale Industrielle Aerospatiale v. U.S. District Court*,
   482 U.S. 522 (1987) ....................................................................................................... 10

*Tobar v. United States*,
   2008 WL 3863893 (S.D. Cal. Aug. 19, 2008) .............................................................. 4

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ....................................................................................... 7

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
   556 F. 2d 406 (9th Cir. 1977) ........................................................................................ 8

*Wultz v. Bank of China Ltd.*,
   32 F. Supp. 3d 486 (S.D.N.Y. 2014) .............................................................................. 10

**Rules**

Fed. R. Civ. P. 26(c) ............................................................................................................. 9

Fed. R. Civ. P. 45(d)(3)(A)(iii) ........................................................................................... 10

**Other Authority**

Wright & Miller, Federal Practice & Procedure § 2051 (3d ed.) ........................................ 9

# INTRODUCTION

Defendants have not carried their "heavy burden" to show good cause why ongoing discovery should be stayed pending resolution of their motion to dismiss. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). To the contrary, discovery—which is already underway—should continue forward in order to prevent further delay in this action and to bring Defendants' unlawful conduct to light.

"[D]istrict courts look unfavorably upon . . . blanket stays of discovery," *Salazar v. Honest Tea, Inc.*, 2015 WL 6537813, at *1 (E.D. Cal. Oct. 28, 2015) (internal quotation marks omitted), and require a "strong showing" of good cause to justify such relief. *Gray*, 133 F.R.D. at 40. Defendants offer three reasons for staying discovery: first, they contend that their novel defense of derivative foreign sovereign immunity entitles them to immunity from discovery; second, they invoke the Court's discretion on the theory that their immunity and personal jurisdiction defenses could dispose of the entire case and that the Court should reach that conclusion without any development of the facts; and third, they suggest that certain discovery requests would require the production of sensitive or classified information. None constitutes good cause for a stay.

First, Defendants' novel sovereign immunity defense would require a substantial and unjustified expansion of Ninth Circuit law, and that form of untested claim is too tenuous to support a stay of discovery on the basis of immunity.

Second, under the two-prong test often used in this Circuit, discovery may be stayed based on Defendants' motion to dismiss only if the motion both is potentially case dispositive and can be resolved without discovery. Defendants' motion fails to satisfy either prong. Neither of their defenses is dispositive under the relevant test, because a dismissal on either of those bases would warrant leave to amend to address any pleading deficiency. Moreover, neither of their defenses can prevail without discovery. Defendants' sovereign immunity defense depends upon the exact nature of Defendants' conduct and the extent (if any) to which they acted at the direction of sovereigns, which can only be established in discovery. Likewise, Defendants' personal jurisdiction defense is insufficient to preclude discovery, because even if the existing facts were insufficient to establish

1

Pls.' Opposition to Defs.' Motion to Stay Pending Resolution of Motion to Dismiss
Case No. 4:19-cv-07123-PJH

Defendants' forum-related contacts, they still provide an ample basis for allowing jurisdictional discovery.

Third, Defendants invoke the possibility of national security objections by the State of Israel to certain of Plaintiffs' discovery requests. But unsubstantiated speculation about the *possibility* of future objections does not justify the blanket stay of discovery Defendants seek. And any objections to discovery, when and if presented, could be addressed and resolved *within* the discovery process—through meet and confer discussions and if necessary a protective order. They are not a reason to bring all discovery to a halt. If the possibility of objections warranted a blanket stay of discovery, cases would not progress at all.

Finally, the Court should deny the motion as a matter of discretion because there is no reason to delay Plaintiffs' efforts to uncover the truth. This case involves serious misconduct that must be explored through discovery and addressed before this Court. Defendants covertly reverse-engineered WhatsApp's technology and commandeered its servers to launch known malicious spyware attacks against approximately 1,400 WhatsApp users.[1] These users included over 100 human rights defenders and journalists (*see* Compl. ¶ 42, Dkt. No. 1),[2] and apparently even an attorney representing Defendants' adversary in other ongoing litigation.[3] Despite their insistence that their products are only used to "prevent crime and terrorism" (Defs.' Mot. to Stay Discovery ("Mot.") at 1, Dkt. No. 95), evidence continues to mount that contradicts those claims. Just last week, Amnesty International released a report stating that "NSO Group clearly cannot be trusted" and even "[w]hile it was undertaking a PR offensive to whitewash its image, its tools were enabling

---

[1] Although NSO has tried to portray this as a case about just one of their products—Pegasus—the Complaint is not restricted to that product, but instead relates to all of Defendants' unauthorized access to WhatsApp servers, regardless of which of Defendants' spyware products was used.

[2] *See also* Citizen Lab, *NSO Group / Q Cyber Technologies: Over One Hundred New Abuse Cases* (Oct. 29, 2019), https://citizenlab.ca/2019/10/nso-q-cyber-technologies-100-new-abuse-cases.

[3] *See* Nick Hopkins & Dan Sabbagh, *WhatsApp Spyware Attack Was Attempt to Hack Human Rights Data, Says Lawyer*, Guardian (May 14, 2019), https://www.theguardian.com/technology/2019/may/14/whatsapp-spyware-vulnerability-targeted-lawyer-says-attempt-was-desperate.

2

Pls.' Opposition to Defs.' Motion to Stay Pending Resolution of Motion to Dismiss
Case No. 4:19-cv-07123-PJH

the unlawful surveillance of . . . an award-winning journalist and activist."[4]  These matters must be explored in discovery, and Defendants' effort to use this motion "to litigate prematurely the sufficiency of the complaint" should be denied.  *Id.*  Any delay would risk letting the trail of evidence left over from Defendants' attacks go cold.  Productive discovery is underway and moving forward.  This Court should deny the instant motion and allow Plaintiffs to continue developing the facts.

## I. DEFENDANTS' INVOCATION OF (DERIVATIVE) SOVEREIGN IMMUNITY DOES NOT JUSTIFY A STAY OF DISCOVERY

To limit discovery, "the moving party must meet the requirements of Fed. R. Civ. P. 26(c) and establish good cause."  *Adams v. AllianceOne, Inc.*, 2008 WL 11336721, at *2 (S.D. Cal. Oct. 22, 2008).  This "heavy burden" requires "a 'strong showing' why discovery should be denied," and not merely an attempt to "litigate prematurely the sufficiency of the complaint."  *Gray*, 133 F.R.D. at 40 (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

Defendants primarily contend that their claim to a defense of derivative sovereign immunity warrants a stay of a discovery.  (*See* Mot. at 2–3.)  Their attenuated and conclusory claims of immunity do not constitute good cause.  *See Doe v. City of Las Vegas*, 2016 WL 6905386, at *2 (D. Nev. Nov. 22, 2016) (denying stay where defendants were "relying on their conclusory statement that they raised the issue of immunity"); *cf. Fosselman v. Caropreso*, 2011 WL 999549, at *1–2 (N.D. Cal. Mar. 18, 2011) (Hamilton, J.) (denying defendants' motion to stay discovery because "defendants' qualified immunity ground is so weak, and would not dispose of the entire case").

The cases on which Defendants rely in arguing for a stay based on an immunity defense all involve claims against *sovereign governments or their agencies* or *officials*—entities that are entitled to assert immunity defenses as a matter of well-established law.[5]  Defendants are not

---

[4] Amnesty Int'l, *NSO Group Spyware Used Against Moroccan Journalist Days After Company Pledged to Respect Human Rights* (June 22, 2020), https://www.amnesty.org/en/latest/news/2020/06/nso-spyware-used-against-moroccan-journalist.

[5] *See, e.g.*, *M.G. v. Metro. Interpreters & Translators, Inc.*, 2013 WL 690833, at *1 (S.D. Cal. Feb. 26, 2013) (the United States and DEA employees); *Magassa v. Wolf*, 2020 WL 2307477, at *1 (W.D. Wash. May 8, 2020) (U.S. government officials and employees); *Christian v. Commonwealth of the N. Mariana Islands*, 2016 WL 406340, at *1–2 (D. N. Mar. I. Feb. 2, 2016)

sovereigns and the Ninth Circuit has never recognized their novel theory of "derivative foreign sovereign immunity," as Defendants themselves acknowledge. (Defs.' Mot. to Dismiss at 10, Dkt. No. 45.) And even if such a novel "derivative foreign sovereign immunity" defense were created, Defendants cannot show that it would even apply here—certainly not on the existing record. (*See* Pls.' Opp. to Defs.' Mot. to Dismiss at 4–6, Dkt. No. 55.)

Defendants cite no case—in this Circuit or any other—that stayed discovery pending decision on a novel and factually tenuous immunity defense that would require the district court to craft new law foreclosed by intervening Supreme Court precedent. (*See id*. at 3–6). More particularly, Defendants fail to cite a single case that stayed discovery based on a private defendant's unilateral assertion that its alleged conduct was done exclusively at the direction of a sovereign who would be immune from suit.[6] Defendants' invocation of an "immunity" defense therefore fails to establish good cause for a stay.

---

(the Commonwealth of the Northern Mariana Islands, its agency, and its officials); *Grand Canyon Skywalk Dev. LLC v. Steele*, 2014 WL 60216, at *5 (D. Nev. Jan. 7, 2014) (members of the Hualapai Indian Tribe Council); *Tobar v. United States*, 2008 WL 3863893, at *2–3 (S.D. Cal. Aug. 19, 2008) (the United States); *Kling v. Hebert*, 2020 WL 760398, at *2 (M.D. La. Feb. 14, 2020) (commissioner of Louisiana's Office of Alcohol and Tobacco Control); *New York ex rel. James v. Pa. Higher Educ. Assistance Agency*, 2020 WL 605944, at *2 (S.D.N.Y. Feb. 7, 2020) (quasi-governmental agency processing government student loans); *Geraci v. City of Austin*, 2019 WL 6050728, at *1–2 (W.D. Tex. Nov. 14, 2019) (City of Austin and various officials and employees); *Davis v. U.S. Army Reserve Through 321st Sustainment Brigade*, 2019 WL 5777387, at *1–3 (M.D. La. Nov. 5, 2019) (United States Army Reserve and its employees); *Clark v. Schwab*, 2019 WL 4670209, at *2 (D. Kan. Sept. 25, 2019) (Kansas Secretary of State and a county election commissioner); *Cook v. Taylor*, 2019 WL 1233853, at *1–2 (M.D. Ala. Mar. 15, 2019) (Secretary of Alabama Law Enforcement Agency); *Gibbons v. McBride*, 2014 WL 5460593, at *3 (S.D. Ga. Oct. 27, 2014) (University of Georgia's Board of Regents and police department); *Doe v. Holy See*, 2014 WL 1329985, at *6–7 (E.D. La. Apr. 2, 2014) (the Holy See); *Hwang v. Kan. St. Univ.*, 2012 WL 3292835, at *2 (D. Kan. Aug. 13, 2012) (Kansas State University); *Bragg v. United States*, 2010 WL 3835080, at *2 (S.D. W.Va. Sept. 29, 2010) (the United States).

[6] In fact, Defendants only cite (in passing) a single case staying discovery based on any *derivative* immunity defense. *See New York v. Pa. Higher Educ. Assistance Agency*, 2020 WL 605944, at *2. In *Pennsylvania Higher Education*, the defendant was a quasi-governmental agency appointed to administer the Federal Public Service Loan Forgiveness Program, and was sued for alleged failures in administering that program. *See id.* at *1. The defendant argued that it was derivatively protected by the United States' sovereign immunity, and also by intergovernmental immunity. The court granted a stay because both immunities were "well-founded in the law," the defendant had substantiated the burden it would face in responding to plaintiff's discovery requests, and the plaintiff had failed to show any prejudice. *Id.* at *2. None of these criteria is satisfied here.

4

Pls.' Opposition to Defs.' Motion to Stay Pending Resolution of Motion to Dismiss
Case No. 4:19-cv-07123-PJH

## II. DEFENDANTS HAVE NOT RAISED DISPOSITIVE DEFENSES THAT CAN BE RESOLVED WITHOUT DISCOVERY

Defendants next contend that they are entitled to a stay because their motion seeks dispositive relief based on their sovereign immunity and personal jurisdiction defenses. "The Federal Rules of Civil Procedure do not provide for stays of discovery simply because a motion to dismiss is pending." *Novelposter v. Javitch Canfield Grp.*, 2014 WL 12618174, at *1 (N.D. Cal. May 23, 2014). Courts are loath to provide an opportunity to "litigate prematurely the sufficiency of the complaint," *Gray*, 133 F.R.D. at 40, and do not "look[] favorably upon granting stays of discovery" based solely on a motion to dismiss, *Novelposter*, 2014 WL 12618174, at *1.

When a party seeks to stay discovery based solely on the strength of its pending motion to dismiss, courts in this Circuit have at times applied a two-pronged test to evaluate whether the motion justifies a freeze of discovery.[7] First, a pending motion must be "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Res. Dev. Servs., Inc.*, 2010 WL 3746290, at *1 (N.D. Cal. Sept. 18, 2010). A motion is not dispositive unless plaintiff could obtain dismissal without an opportunity to amend. *Id.* Second, "the court must consider whether the pending dispositive motion can be decided absent additional discovery." *Id.* Defendants' argument for a stay fails to meet either prong of this two-part test, because leave to amend would be warranted even if the motion were granted, and because neither of their defenses can be decided without further discovery.

### A. Defendants' Motion Is Not Dispositive Because Any Alleged Defect Would Warrant Leave to Amend

Defendants' motion fails the first prong of this test because neither of their defenses are dispositive. A motion is dispositive only if the court is "convinced" that the motion will "be

---

[7] Because the decision to stay discovery for good cause is within the discretion of the court, courts in this district have also frequently adjudicated motions to stay without specific analysis of the two-prong test. *See, e.g.*, *Schoppe-Rico v. Lewis*, 2012 WL 3022441, at *1 (N.D. Cal. July 24, 2012) (denying motion to stay because pending discovery requests were not burdensome and stay would delay case); *Fosselman*, 2011 WL 999549, at *1–2 (denying motion to stay based on weakness and limited scope of defendants' qualified immunity argument).

1  granted without leave to amend, which courts grant liberally." *Garcia v. Enter. Holdings, Inc.*,
2  2014 WL 4623007, at *3 (N.D. Cal. Sept. 15, 2014); *see also Nat'l Union Fire Ins. Co.*, 2010 WL
3  3746290, at *1 (motion was not "potentially dispositive" where leave to amend would be granted).
4  As noted above, Defendants' sovereign immunity defense has never been recognized in this Circuit.
5  Even if recognized, according to Defendants' own theory, their derivative sovereign immunity
6  defense is a "conduct-based immunity" that applies (if at all) only if their actions were taken "on
7  behalf of the [foreign] state." (Defs.' Reply in Supp. of Mot. to Dismiss at 10, Dkt. No. 62 (internal
8  quotation marks omitted).)  Such a defense is therefore fact-dependent, and Plaintiffs would have
9  an opportunity to replead their claims to make clear they are based on Defendants' own
10 independent actions.  Similarly, if the Court concludes that Plaintiffs have not adequately pleaded
11 that Defendants are subject to personal jurisdiction in this District, they would have an opportunity
12 to amend their allegations to cure any purported shortcoming in the pleadings.  Defendants' motion
13 to dismiss fails to satisfy the first prong of the test applied in this District and should be denied.
14 *See Nat'l Union Fire Ins. Co.*, 2010 WL 3746290, at *1 ("[I]f either prong of this test is not
15 established, discovery proceeds.").

16       **B.**      **Defendants' Immunity Defense Cannot Be Established Without Discovery**

17       Defendants' sovereign immunity defense also fails the second prong of the test.  Even if it
18 were assumed that Defendants' sovereign immunity defense had legal merit, it still would require
19 proof establishing who Defendants' clients were and what control (if any) they exercised over
20 Defendants' actions.  Defendants' deficient, untested declarations and attorney argument in support
21 of their motion are insufficient to establish the evidentiary basis for this defense.  (*See* Defs.' Mot.
22 to Dismiss at 9–10, Dkt. 45; Pls.' Opp. to Defs.' Mot. to Dismiss at 4–6, Dkt. 55.)  Most
23 significantly, their motion rests entirely on Defendants' own say-so that their clients even have
24 sovereign immunity, as their self-serving declarations do not identify *any* specific foreign sovereign
25 or client for whom they claim to have worked.  Furthermore, they fail to establish that all of the
26 conduct alleged in the complaint—including the reverse-engineering of WhatsApp's technology,
27 and the development and marketing of their spyware—was directed and controlled by foreign
28

sovereigns (assuming, arguendo, that such a fact would support a defense of immunity).  (Pls.' Opp. to Defs.' Mot. to Dismiss at 8, Dkt. No. 55.)

Moreover, Defendants' meager evidence cannot be accepted on the pleadings because their defense goes to the core of Plaintiffs' claims on the merits.  *See Roberts v. Carothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) ("[W]here issues of jurisdiction and substance are intertwined[,] [a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" (citation omitted)).  Discovery will be necessary to evaluate, among other things, Defendants' role in the alleged attacks and to test their assertions that their actions were taken at the direction of a foreign sovereign.  These factual issues are so "intertwined with the merits" that they cannot be resolved on the pleadings.  (Pls.' Opp. to Defs.' Mot. to Dismiss at 8, Dkt. No. 55 (quoting *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)).)  In fact, courts routinely decline to dismiss complaints based on derivative immunity defenses precisely *because* those defenses require a factual predicate that must be established in discovery.  (*See id.* (citing cases).) [8]

### C. Defendants' Personal Jurisdiction Defense Cannot Be Established Without Jurisdictional Discovery

Finally, Defendants' objections to personal jurisdiction also fail the second prong of the two-part test.  (Mot. at 4.)  Here, Defendants consented to jurisdiction in this Court by agreeing to WhatsApp's terms of service, and their extensive targeting of California-based WhatsApp independently establishes jurisdiction in this Court.  (*See* Pls.' Opp. to Defs.' Mot. to Dismiss at 12–16, Dkt. No. 55.)  Defendants reverse-engineered WhatsApp's technology, marketed their ability to circumvent WhatsApp's security measures, infiltrated WhatsApp's California-based servers, and used California-based servers to deliver spyware to user devices.  (*See id.*)  And they also purposefully availed themselves of the benefits and protections of this forum, including by

---

[8] Indeed, in the Fourth Circuit case on which Defendants' derivative sovereign immunity defense is based, the defendants did not even raise that defense on the pleadings, let alone seek to stay discovery based on that objection.  *See Butters v. Vance Int'l, Inc.*, No. 1:99-cv-00027-CMH (E.D. Va. June 16, 1999) (Dkt. No. 13) (derivative immunity defense first asserted in summary judgment motion after close of discovery).

7

soliciting and obtaining venture capital from California residents and marketing their products to California residents through a subsidiary. (*See id.* at 12–14.)

Even if the Court determined that the existing record did not adequately establish personal jurisdiction, Plaintiffs should at a minimum be permitted to pursue jurisdictional discovery.[9] (*Id.* at 19 n.13.) "The Court may only deny jurisdictional discovery if 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction,' or when the request is 'based on little more than a hunch that it might yield jurisdictionally relevant facts.'" *Gillespie*, 183 F. Supp. at 1003 (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F. 2d 406, 430 n.24 (9th Cir. 1977); *Boschetto v. Hansing*, 539 F. 3d 1011, 1020 (9th Cir. 2008)). Here, there is ample evidence that jurisdictional discovery will produce further support for Plaintiffs' allegations.[10] Based on evidence from their own investigation and documents already produced by third parties, Plaintiffs believe discovery will confirm that (1) Defendants invested substantial time and resources targeting Plaintiffs by reverse-engineering their technology; (2) Defendants' spyware products were developed using capital raised from California investors; (3) Defendants tested their spyware in the United States; (4) Defendants specifically touted their ability to circumvent Plaintiffs' security features to investors and clients; and (5) Defendants marketed their products to California residents. Jurisdictional discovery could thus confirm that Defendants purposefully targeted WhatsApp in California and availed themselves of California's laws.[11] The need for

---

[9] The Court has broad discretion to permit jurisdictional discovery. *Gillespie v. Prestige Royal Liquors Corp.*, 183 F. Supp. 3d 996, 1003 (N.D. Cal. 2016).

[10] For example, a publicly available brochure for Defendants' products states that NSO Group is "privately owned, with the majority ownership held by an American private equity firm," that "85% of the company's resources are focused on research and development," and that US-based Westbridge Technologies, Inc. "was founded . . . as the North American branch of the international company NSO Group." Westbridge Technologies, Inc., *Phantom: Turn Your Target's Smartphone into an Intelligence Gold Mine*, https://www.documentcloud.org/documents/6888574-Westbridge-NSO-Group-Brochure-for-Phantom.html.

[11] Defendants' alternative request to stay merits discovery and allow only jurisdictional discovery is unworkable, because these jurisdictional issues are intertwined with the merits and cannot reasonably be bifurcated.

discovery to adjudicate Defendants' jurisdictional defense (if it is not rejected outright) militates against granting a stay of discovery on this basis. [12]

### III.   THE POSSIBILITY OF FOREIGN NATIONAL SECURITY OBJECTIONS TO CERTAIN DISCOVERY REQUESTS DOES NOT JUSTIFY A STAY

Defendants also ask the Court to stay discovery based on the possibility of national security objections to a small number of specific document requests.  (Mot. at 3.)  Defendants claim, without any support, that three of Plaintiffs' requests seek information that is "detrimental to the national security of the State of Israel."  (*Id.*)  On that basis, they seek to stay *all* discovery (including all discovery of Defendants themselves, and all discovery as to third parties). Defendants cite no support for this relief and none exists.

As a threshold matter, Defendants provide no supporting affidavit or declaration substantiating the "national security" objection that they purport to preview on behalf of the State of Israel.  On that basis alone, they cannot establish "good cause" justifying a stay.  *See* Fed. R. Civ. P. 26(c); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 307 (N.D. Cal. 2005) (good cause "requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of harm" (internal quotation marks omitted)); *Gray*, 133 F.R.D. at 40 (movant must "show a particular and specific need" for a stay, "as opposed to making stereotyped or conclusory statements").  In fact, the objection is unfounded because none

---

[12] Defendants note that this Court has already postponed the Case Management Conference pending a decision on the motion to dismiss, and argue that discovery should be stayed for the same reasons. (Mot. at 3.)  Delaying the Rule 16(b) Case Management Conference, however, does not result in a de facto stay of discovery.  *See Gray*, 133 F.R.D. at 40 (stay of discovery "undercut[s] the Federal Rules' liberal discovery provisions").  Under Federal Rule 26(d)(1), discovery may commence after the "conference of the parties" described in Rule 26(f).  *See* Wright & Miller, Federal Practice & Procedure § 2051 (3d ed.) ("Rule 26(f) was eventually amended in 1993 to replace the discovery conference with the court with a conference of the parties . . . ."); *id.* § 2051.1 ("[T]he current conference does not directly involve the judge.").  The parties' conference already occurred, and they submitted their proposed discovery plan reflecting that conference to the Court in the Joint Case Management Statement filed May 21, 2020.  (Joint Case Management Statement at 9–10, Dkt. No. 76; *see also id.* at 8 (jointly confirming that the parties "have met and conferred pursuant to Fed. R. Civ. P. 26(f)").)  Nothing in Rule 26 requires the Court to hold a Rule 16(b) Case Management Conference before discovery may begin.  On the contrary, it is well settled that Defendants must show "good cause" for a stay, and discovery should proceed if both prongs of the two-part test are not met.

of Plaintiffs' requests facially relate to the national security of Israel or any other sovereign; they are reasonable, tailored requests going to the heart of Plaintiffs' allegations against Defendants.[13]

More importantly, if Defendants, the State of Israel, or any other party were to have any objection to any of Plaintiffs' requests, those objections would be matters to be addressed in the ordinary course of discovery—by meet and confer or through appropriate motion practice. The possibility of objections to particular requests does not justify delaying all discovery. *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018) ("superficial statements or vague articulations demonstrating nothing more than the traditional burdens of litigation" are insufficient to justify a stay); *Gray*, 133 F.R.D. at 40 (denying motion to stay and concluding that "defendants may only seek to attack the discovery requests by means of objections, if appropriate, as provided in the Federal Rules"). The fact that a foreign sovereign may raise those objections itself does not lead to a different result, given that foreign sovereigns have no categorical immunity from discovery, *see Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 143 (2014), and foreign confidentiality laws are not a categorical barrier to discovery in U.S. courts, *see Societe Nationale Industrielle Aerospatiale v. U.S. District Court*, 482 U.S. 522, 544 n.29 (1987). If, in fact, the State of Israel believes that any discovery request in this private litigation "requires disclosure of privileged or other protected matter," it can move to quash or seek a protective order just as it and other sovereigns have done in other cases. Fed. R. Civ. P. 45(d)(3)(A)(iii); *see, e.g.*, *Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 495 (S.D.N.Y. 2014) (granting nonparty State of Israel's motion to quash deposition subpoena served on former Israeli national security officer); *NML Capital, Ltd. v. Republic of Argentina*, 2012 WL 13036202, at *1 (N.D. Cal. Nov. 13, 2012) (affirming denial of nonparty foreign sovereign's motion to quash). A

---

[13] The three requests that Defendants object to (Mot. at 3) are Request No. 19 (documents concerning the spyware technology used to transmit data from the Target Devices); Request No. 24 (documents sufficient to describe the information obtained from the Target Devices); and Request No. 25 (documents sufficient to identify Defendants' customers). These requests go to the heart of Plaintiffs' allegations. Furthermore, it is difficult to conceive of how Defendants intend to establish any derivative immunity defense if they cannot even identify in response to Request No. 25 the clients in whose immunity they hope to cloak themselves.

blanket stay of all discovery, however, is not necessary while Israel "consider[s] its position" (Mot. at 3) on Plaintiffs' requests.

The wisdom of addressing objections to particular discovery—rather than by staying *all* discovery—is particularly clear here, given that the purported national security concerns (which have not yet been asserted) pertain to only three of Plaintiffs' requests for production from Defendants, and do not pertain at all to the ongoing third-party discovery that Defendants' motion, if granted, would also bring to a halt.

## IV.   PLAINTIFFS WOULD BE PREJUDICED BY A STAY

Even if Defendants were able to satisfy their heavy burden to establish good cause for a stay of discovery—which they cannot—the Court should nonetheless exercise its "broad discretion" to deny the instant motion. *Fosselman*, 2011 WL 999549, at *1; *see also Nat'l Union Fire Ins. Co.*, 2010 WL 3746290, at *1 (explaining that a court "*may* issue a protective order" when both factors are met (emphasis added)). Here, granting a stay would prejudice Plaintiffs' ability to prove their case and would grind to a halt ongoing third-party discovery that is actively advancing the case. *See Singh v. Google, Inc.*, 2016 WL 10807598, at *2 (N.D. Cal. Nov. 4, 2016) (denying motion to stay where plaintiff argued that "a stay of discovery would prejudice Plaintiff").

The very nature of Defendants' business necessitates that they obscure their conduct. (Compl. Ex. 10, Dkt. No. 1 (NSO Group's product description noting that it can "remotely and covertly extract valuable intelligence from virtually any mobile device").) Public reports suggest that Defendants have previously removed web pages and modified server settings to hide their tracks after their role in an attack has been publicly revealed.[14] Concealing their true activities allows Defendants to avoid challenges to their self-serving assertions that their spyware is used

---

[14] *See* Bill Marczak et al., *Hide and Seek: Tracking NSO Group's Pegasus Spyware to Operations in 45 Countries*, Citizen Lab (Sept. 18, 2018), https://citizenlab.ca/2018/09/hide-and-seek-tracking-nso-groups-pegasus-spyware-to-operations-in-45-countries ("After our August 2016 report, NSO Group apparently removed [certain] decoy pages, and further modified their server code to close an incoming connection without returning any data unless presented with a valid exploit link or other path on the server."); Amnesty Int'l, *supra* n.4 ("The domain name urlpush[.]net was only registered on 6th November 2019 . . . suggesting that our publication may have pushed the attackers to change infrastructure.").

11

Pls.' Opposition to Defs.' Motion to Stay Pending Resolution of Motion to Dismiss
Case No. 4:19-cv-07123-PJH

only to fight terrorism and crime. In reality, however, mounting evidence links Defendants' spyware to hacking attacks—like those alleged here—launched against journalists and opponents of repressive regimes.

In these circumstances, any delay of discovery would prejudice Plaintiffs. The nature of Defendants' operations already presents challenges in uncovering their conduct, and Plaintiffs should not be delayed in following a trail of evidence that may go cold with the passage of time. In addition, Plaintiffs anticipate that they may need to seek discovery from third parties located overseas, including Defendants' new private investors and potentially intermediaries through whom Defendants accessed the IP addresses utilized in the attacks. Seeking discovery overseas can be difficult and time-consuming in the best of circumstances. There is no reason to delay that process. By the same token, the fact that—as this motion makes clear—Defendants may object to Plaintiffs' discovery efforts is all the more reason to allow the discovery process to proceed, and no reason to stop it.

Finally, there is no justification to halt productive third-party discovery that is currently underway, pursuant to which third parties are actively producing documents and information. *See Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 601 (C.D. Cal. 1995) (denying motion to stay where discovery had already begun, including that "[c]ertain third-parties [were] responding to discovery requests from plaintiff"). Plaintiffs have served a range of discovery requests, and over the past weeks have both received discovery in response and held productive meet-and-confer discussions with these parties. To avoid further delay in this action, discovery should be permitted to continue forward.

## CONCLUSION

Defendants are private companies who have been sued based on their own development, sale, and operation of spyware specifically targeted at Plaintiffs' products. Neither their novel claim of immunity that has no support in the law of this Circuit, nor their pending motion dismiss—which, at a minimum, revolves around defenses that could not be accepted without further factual development—meets their "heavy burden" to establish good cause to halt ongoing discovery. Their motion for a stay of discovery should therefore be denied.

| | | |
|---|---|---|
| 1 | Dated: June 30, 2020 | Respectfully Submitted, |
| 2 | | DAVIS POLK & WARDWELL LLP |
| 3 | | |
| 4 | | By: */s/ Antonio J. Perez-Marques* |
| 5 | | Micah G. Block (SBN 270712)<br>DAVIS POLK & WARDWELL LLP |
| 6 | | 1600 El Camino Real<br>Menlo Park, California 94025 |
| 7 | | Telephone: (650) 752-2000<br>Facsimile: (650) 752-2111 |
| 8 | | Email: micah.block@davispolk.com |
| 9 | | Greg D. Andres |
| 10 | | Antonio J. Perez-Marques<br>Craig T. Cagney |
| 11 | | (admitted *pro hac vice*)<br>DAVIS POLK & WARDWELL LLP |
| 12 | | 450 Lexington Avenue |
| 13 | | New York, New York 10017<br>Telephone: (212) 450-4000 |
| 14 | | Facsimile: (212) 701-5800<br>Email: greg.andres@davispolk.com |
| 15 | | antonio.perez@davispolk.com<br>craig.cagney@davispolk.com |
| 16 | | |
| 17 | | *Attorneys for Plaintiffs*<br>*WhatsApp Inc. and Facebook, Inc.* |

13

Pls.' Opposition to Defs.' Motion to Stay Pending Resolution of Motion to Dismiss
Case No. 4:19-cv-07123-PJH