Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
            antonio.perez@davispolk.com
            craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp Inc. and Facebook, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>                                  Plaintiffs,<br><br>          v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>                                  Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF UNDER RULE 12(B)(1)**<br><br>Date:     July 29, 2020<br>Time:    9:00 a.m.<br>Ctrm:    3<br>Judge:  Hon. Phyllis J. Hamilton<br>(Hearing vacated by Dkt. No. 107)<br><br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..................................................................................................................1

I.   BACKGROUND .........................................................................................................2

II.  LEGAL STANDARD..................................................................................................4

III. PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE RELIEF ..........................5

    A.   NSO Operates an Unlawful Hacking Business that Targets Plaintiffs' Servers and Software ..................................................................................................6

    B.   The Identification and Remediation of NSO's May 2019 Attacks Do Not Negate the Risk of Future Harm, But Rather Support Plaintiffs' Standing to Seek an Injunction ..................................................................................................7

    C.   NSO Plainly Intends to Continue Engaging in the Same and Similar Conduct ..........9

    D.   The Broad Reach of Plaintiffs' Services Further Supports the Likelihood that NSO Will Continue to Target them if Not Enjoined ..................................................11

CONCLUSION..................................................................................................................12

i

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
CASE NO. 4:19-CV-07123-PJH

# TABLE OF AUTHORITIES

PAGE

## Cases

*Backhaut v. Apple Inc.*,
    2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) .......................................................................... 11

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) ............................................................................................ 1, 4, 7, 8

*City & Cty. of San Francisco v. Tutor-Saliba Corp.*,
    2005 WL 645389 (N.D. Cal. Mar. 17, 2005) .......................................................................... 10

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ............................................................................................................ 1, 4, 11

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................................................... 4, 7

*Craigslist, Inc. v. Kerbel*,
    2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) ............................................................................. 7

*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ..................................................................................... 6

*Doe 1 v. AOL LLC*,
    719 F. Supp. 2d 1102 (N.D. Cal. 2010) ..................................................................................... 9

*Facebook, Inc. v. Power Ventures, Inc.*,
    252 F. Supp. 3d 765 (N.D. Cal. 2017) ................................................................................. 5, 10

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
    2016 WL 9107427 (C.D. Cal. Aug. 18, 2016) ........................................................................ 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,
    528 U.S. 167 (2000) ................................................................................................................ 1, 4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................................................... 4

*Matera v. Google Inc.*,
    2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ....................................................................... 10

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ................................................................................................... 4

ii

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
CASE NO. 4:19-CV-07123-PJH

*Orantes-Hernandez v. Thornburgh*,
    919 F.2d 549 (9th Cir. 1990) ............................................................................................... 9

*Palmer v. Apple Inc.*,
    2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ............................................................... 10

*Phillips v. Apple Inc.*,
    725 F. App'x 4968 (9th Cir. 2018) ................................................................................ 11

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
    2020 WL 2065700 (N.D. Cal. Apr. 29, 2020) ............................................................... 10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................................................................... 1

*Tagged Inc. v. Does 1 through 10*,
    2010 WL 370331 (N.D. Cal. Jan. 25, 2010) ............................................................... 8, 9

*Villa v. Maricopa County*,
    865 F.3d 1224 (9th Cir. 2017) ....................................................................................... 11

*Warth v. Seldin*,
    422 U.S. 490 (1975) ......................................................................................................... 4

iii

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
CASE NO. 4:19-CV-07123-PJH

## INTRODUCTION

Defendants' business model and suite of products are dependent on exploiting software vulnerabilities in order to covertly access mobile devices for surveillance. (Compl. ¶¶ 24–25.) Defendants do not contest that they have engaged in this business since at least 2010 and continue to this day. (*See* Compl. ¶ 5; Defs.' Mot. to Dismiss at 6, Dkt. 45.) Nonetheless, Defendants ask this Court to conclude before discovery that Defendants do not pose a substantial risk of future harm because Plaintiffs identified and closed one particular vulnerability they had exploited. (*See* Defs. Mot. to Dismiss Pls.' Request for Injunctive Relief ("Mot.") at 1, Dkt. No. 105.) However, Defendants' admitted business model, their history of attacks, and their proclaimed intent to adapt their methods in the face of new hurdles all demonstrate that Defendants will continue this practice unless stopped by this Court. This is a quintessential case for injunctive relief and Defendants' motion should be denied.

Defendants challenge Plaintiffs' Article III standing to pursue injunctive relief on only one ground. (*See id.* at 5.) Specifically, because Plaintiffs have closed the vulnerability that Defendants exploited in the 1,400 attacks uncovered in April 2019, Defendants contend that Plaintiffs lack an injury that is "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180 (2000). According to Defendants, the Court is powerless to issue injunctive relief unless Plaintiffs can show that Defendants will exploit the exact same technical vulnerability again. But that is not the standard for injunctive relief. Rather, a plaintiff seeking prospective injunctive relief must demonstrate "a sufficient likelihood that [it] will again be wronged in *a similar way*." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (emphasis added) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The risk of similar harm in the future need not be a literal certainty—to the contrary, a "'substantial risk' that the harm will occur" suffices. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted).

Plaintiffs easily clear this bar. The complaint alleges a substantial risk that—if not enjoined—Defendants will continue to engage in the same kinds of unlawful conduct alleged in the complaint, including attempting to infiltrate and infiltrating Plaintiffs' computers and servers to

1

target their users.  (*See, e.g.*, Compl. ¶¶ 24–25, 45.)  For a decade, Defendants have been in the business of discovering and exploiting technical vulnerabilities, like the one Plaintiffs caught them using in May 2019, to "remotely and covertly extract valuable intelligence from *virtually any mobile device*."  (*Id.* Ex. 10 (emphasis added).)  Indeed, after Plaintiffs patched the vulnerability that came to light in May 2019, Defendants complained that Plaintiffs had "closed [Defendants'] *biggest*" entry point, but not the only one.  (*Id.* ¶ 45 (emphasis added).)  Defendants have also assured their customers that "their designs constantly evolve to keep pace with an ever-changing cyber world." (*Id.* Ex. 4 at 2.)  The notion that Plaintiffs' having found and patched one particular vulnerability eliminates any risk of future harm is fanciful given Defendants' proclaimed intent to the contrary.

Absent judicial intervention, there is a substantial risk that Defendants will continue to seek unauthorized access to the devices and systems of Plaintiffs and their users.  This Court is empowered to redress that risk with injunctive relief.  The motion should be denied.

I.     **BACKGROUND**

Defendants NSO Group Technologies Inc. and Q Cyber Technologies Inc. (together, "NSO") manufacture, distribute, and operate surveillance technology designed to intercept and extract information and communications from mobile phones.  (*See* Compl. ¶¶ 24–29; *see also* Defs.' Mot. to Dismiss at 6, Dkt. 45 (acknowledging that selling of spyware and providing related support is "Defendants' business model").)  NSO's products are "designed to be remotely installed and enable the remote access and control of information—including calls, messages, and location—on mobile devices using the Android, iOS, and BlackBerry operating systems."  (*See* Compl. ¶ 24.)[1]

Once installed on a device, NSO's spyware can collect and exfiltrate private information, including the phone's location, camera, microphone, memory, and hard drive, as well as private

---

[1] Although NSO has repeatedly tried to portray this as a case about just one of its products—Pegasus—the complaint is not restricted to that product, but instead relates to all of NSO's unauthorized access to WhatsApp servers, regardless of which of NSO's spyware products was used.

2

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
CASE NO. 4:19-CV-07123-PJH

emails, calls, texts, and messages sent via WhatsApp and other services.  (*See id.* ¶¶ 24–29.)  NSO advertises to potential customers that at least one version of its spyware can "remotely and covertly extract valuable intelligence from virtually any mobile device" (*id.* Ex. 10), and its services "meet the challenges of encryption" (*id.* Ex. 8).  In particular, publicly available marketing materials tout NSO's ability to "[m]onitor . . . WhatsApp [and] Facebook."  (*Id.* Ex. 10.)

NSO designed a program that would exploit a vulnerability in the WhatsApp app by: (i) emulating legitimate WhatsApp network traffic while hiding malware transmitted to users; (ii) circumventing technical restrictions and security measures that prevent users from altering network call settings; (iii) manipulating those settings to covertly transmit malicious code through WhatsApp servers and inject the code into users' devices; and thereafter (iv) transmitting additional malware that gave NSO and its customers remote access to the devices.  (*Id.* ¶¶ 32, 35–48, 60–61.)  NSO ultimately deployed this spyware program to target approximately 1,400 devices belonging to WhatsApp users, a group that includes attorneys, journalists, human rights activists, and government officials.  (*Id.* ¶ 42.)

WhatsApp and Facebook closed that vulnerability, contacted law enforcement, and advised users to update the WhatsApp app.  (*Id.* ¶ 44.)  One of NSO's employees subsequently complained that WhatsApp had "just closed [NSO's] *biggest*" means to install its malware.  (*Id.* ¶ 45; *see also id.* Ex. 10 (Pegasus Product Description noting that "[t]he Pegasus system supports *various* installation methods," including multiple "Remote Installation" vectors (emphasis added)).)  The attacks damaged Plaintiffs' goodwill and forced them to incur costs to investigate and prevent NSO's hacking activities, including updating the WhatsApp app.  (*Id.* ¶¶ 44–45, 57.)

But NSO will not be closing up shop just because one particular attack was stopped.  To the contrary, as its advisor announced:  "NSO Group solutions are developed and maintained by a team of cyber-intelligence and cellular communications experts who operate at the forefront of their fields.  Their designs *constantly evolve to keep pace with an ever-changing cyber world.*"  (*Id.* Ex. 4 at 2 ((emphasis added)).)

Plaintiffs seek an injunction, among other things, to prevent NSO from accessing Plaintiffs' services to research their technology, reverse engineer their software, and engage in future cyber

attacks directed at Plaintiffs' systems and their users' devices. NSO's full-throated defense of its conduct and admitted "business model" only confirms its intention of continuing the same practices in the future unless stopped by the Court. (*See, e.g.*, Defs.' Mot. to Dismiss at 2–7, Dkt. 45.)

## II. LEGAL STANDARD

When analyzing Article III standing at the motion to dismiss stage, the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss," the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

To have standing under Article III to pursue injunctive relief, a plaintiff must allege "that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 180–81. For prospective relief, a plaintiff must allege a "real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111. This does not require a showing that "it is literally certain that the harms [plaintiffs] identify will come about[;]" instead a plaintiff may demonstrate standing based on a "'substantial risk' that the harm will occur." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

Standing to pursue injunctive relief also does not require a plaintiff to show that a defendant is certain to repeat a particular past instance of unlawful conduct, causing the exact same harm again. Instead, it suffices to show an injury-in-fact and "a sufficient likelihood that [plaintiff] will again be wronged in a *similar* way." *Bates*, 511 F.3d at 985 (quoting *Lyons*, 461 U.S. at 111) (emphasis added). As part of this analysis, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* (citation omitted). Moreover, "bad faith conduct that indicates that [defendants] will not easily be deterred from attempting to access [plaintiffs']

4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
CASE NO. 4:19-CV-07123-PJH

servers without authorization" suffices to demonstrate that a plaintiff will suffer irreparable harm again in the future. *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019).

### III. PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE RELIEF

NSO contends that Plaintiffs have not established an "actual or imminent" injury-in-fact because Plaintiffs closed the particular vulnerability that NSO exploited in May 2019 and NSO cannot exploit the same vulnerability again. (Mot. at 5–7.)[2] That contention ignores the full scope of Plaintiffs' allegations regarding NSO's misconduct and misunderstands the applicable legal standard. As alleged in the complaint and detailed below, Plaintiffs have shown the requisite "substantial risk" of future harm here, and easily satisfy the standing requirements for injunctive relief. *First*, a substantial risk of future harm arises from the very nature of NSO's business model, which is to discover and exploit technical vulnerabilities in order to extract information from victims' phones. Those unlawful activities are not limited to the May 2019 attacks. Where, as here, a defendant's business model depends on covertly compromising mobile devices, a substantial risk of harm exists. *Second*, the fact that NSO has already hacked Plaintiffs' systems and users in violation of law powerfully supports the risk of future harm. The fact that one particular vulnerability has been identified and remediated does not negate the risk of future harm, it substantiates it. To establish standing, the future harm need not be identical, and NSO's declared intent to "continue evolving" in order to overcome such hurdles makes clear that a risk of "similar" harm in the future exists. Nothing more is required. *Third*, NSO has made plain it will not be deterred absent Court order and that it fully intends to continue engaging in the same and similar conduct. *Fourth*, the enormous popularity of Plaintiffs' services makes Plaintiffs the prime targets for NSO's future efforts, and further demonstrates the substantial risk that NSO will continue to target those services in the future, as it has done in the past. In short, the facts alleged in the

---

[2] Notably, NSO does not dispute that Plaintiffs have adequately pled the other elements of standing. (*See* Mot. at 5–7.)

5

complaint as to NSO's business model, its past conduct and its declared future intentions, along with Plaintiffs' enormous number of users, create a real and immediate threat of future harm.

### A. NSO Operates an Unlawful Hacking Business that Targets Plaintiffs' Servers and Software

NSO's cramped reading of the complaint, and its focus on the allegations that NSO perpetrated one type of attack and Plaintiffs closed one specific vulnerability, overlooks that NSO's core objective is to develop and launch such attacks. NSO is in the business of discovering and exploiting vulnerabilities like the one that Plaintiffs closed in May 2019 for the specific purpose of "extract[ing] valuable intelligence from virtually any mobile device," "remotely," "covertly," and without authority to do so. (Compl. Ex. 10; *see also id.* ¶ 24 ("Defendants manufactured, distributed, and operated surveillance technology or 'spyware' designed to intercept and extract information and communications from mobile phones and devices."); *id.* ¶ 25 (Defendants "used other malware delivery methods"); *id.* ¶ 27 (spyware was "modular" and "could be customized for different purposes").)

The fact that this admitted "business model" entails ongoing violations of law on its own establishes a substantial risk of future harm sufficient to support standing. Wholly apart from whether any particular attack in the future is successful, NSO's probing Plaintiffs' servers and software for vulnerabilities and selling products designed to exploit them *on its own* violates at least the WhatsApp Terms of Service and California law. (*See id.* ¶¶ 22, 58–66; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1057 (N.D. Cal. 2010) (Hamilton, J.) (holding that "knowingly and without permission provided a means of accessing its computers through their use and selling of their auto-posing software, services, and devices" violates the CCCDAFA). Even putting aside all of the well-pleaded allegations that NSO has hacked Plaintiffs' servers and users and intends to do so again, NSO's ongoing efforts to *seek* a way to attack Plaintiffs is itself a violation of law. The substantial risk of future harm from these ongoing activities does not require

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
CASE NO. 4:19-CV-07123-PJH

any attenuated chain of assumptions and suffice on their own to establish Article III standing to pursue injunctive relief.³ *Cf. Clapper*, 568 U.S. at 410.

Courts have routinely awarded prospective injunctive relief where, as here, a defendant's very business model entails a substantial risk of future violation. For example, *Craigslist, Inc. v. Kerbel*, 2012 WL 3166798 (N.D. Cal. Aug. 2, 2012), also involved a defendant whose business model consisted of "developing, offering, and marketing services" that would enable defendants' customers to "circumvent [plaintiff's] security measures" in violation of the CFAA and the CCCDAFA. *Id.* at *2. In these circumstances, the court concluded there was "a likelihood of future harm absent injunctive relief" because the "Defendant's website was still operable as of the filing of its complaint." *Id.* at *16, 19. In granting plaintiff's request for injunctive relief, the court did not restrict its injunction to the specific services that defendant had developed and marketed in the past, but instead enjoined the defendant from "[m]anufacturing, developing, creating, . . . [or] selling . . . *any program, device, or service* that is . . . designed to circumvent security measures on the craigslist website." *Id.* at *16, 19 (emphasis added). Plaintiffs have standing to seek the same relief here.

### B. The Identification and Remediation of NSO's May 2019 Attacks Do Not Negate the Risk of Future Harm, But Rather Support Plaintiffs' Standing to Seek an Injunction

NSO contends that Plaintiffs lack standing to seek injunctive relief because one instance in which NSO's hacking succeeded has been identified and remediated. (Mot. at 5–6.) That argument has it exactly backwards. The fact that NSO has *already* deliberately identified and aggressively exploited a vulnerability in violation of law *supports* the substantial risk of future attacks on Plaintiffs' servers and computers, and thus *supports* Plaintiffs' standing. *See Bates*, 511

---

³ NSO also contends that enjoining it from accessing Plaintiffs' services would not remedy the harms identified in the complaint, purportedly because "Plaintiffs would not be injured by NSO's mere use of their services for innocent purposes." (Mot. at 7 n.7.) That misses the point. Enjoining NSO from accessing Plaintiffs' services will surely redress the harm that arises when it does so unlawfully. And if NSO has a lawful "innocent purpose" for using Plaintiffs' services that does not violate Plaintiffs' terms of service, the injunction can be tailored accordingly. But NSO identifies no such purpose, and its speculation is no reason to cut off injunctive relief entirely.

7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
CASE NO. 4:19-CV-07123-PJH

F.3d at 985 ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." (citation omitted)).

As a threshold point, it would be contrary to the facts alleged in the complaint to suggest that the identified vulnerability presented the only risk. In fact, after Plaintiffs closed the vulnerability, an NSO employee complained that, "You just closed our *biggest* remote [access point] for cellular [devices]," but tellingly did not state it was the *only* vulnerability that NSO was exploiting or could exploit. (Compl. ¶ 45 (emphasis added).) That concession is also entirely consistent with Defendants' description of one of their spyware products as "the most comprehensive and flexible solution" because it "provides a wide range of tools." (*Id.* Ex. 10.)

Moreover, NSO's brazen suggestion that the remediation of this particular vulnerability negates any future risk is directly contrary to its own proclaimed intent to "constantly evolve" in the face of new challenges. (*Id.* Ex. 4 at 2.) NSO has long recognized that the introduction of such hurdles is part and parcel of the "ever-changing cyber world" and has assured customers that "their designs constantly evolve to keep pace" with those changes. (*Id.*; *id.* Ex. 8 (describing NSO's leading team of experts as "dedicated to keeping pace with the ever-changing cyber world")). The Court is not rendered powerless to enjoin future violations of law merely on the basis that the "constant evolution" of NSO's designs may cause future attacks to differ from those identified in the past. *See Bates*, 511 F.3d at 985. The law does not condone or require such a game of cat-and-mouse.

Rather, contrary to NSO's suggestion, the alleged risk of harm does not need to be the result of the *exact same* spyware or exploitation of the *exact same* vulnerability, but merely needs to be "similar" to such prior conduct. *See id.* (explaining that "a sufficient likelihood that [plaintiffs] will again be wronged in a *similar* way" suffices for standing to enjoin future attacks (citation omitted and emphasis added)). Given that NSO is in the business of identifying and exploiting such vulnerabilities, its prior attacks establish a sufficient likelihood that it will perpetrate the same types of attacks in the absence of injunctive relief.

*Tagged Inc. v. Does 1 through 10* likewise involved a defendant whose tactics constantly evolved in the face of plaintiff's security measures. 2010 WL 370331, at *2 (N.D. Cal. Jan. 25,

8

2010). Specifically, although plaintiff had "instituted a number of technological security measures" to prevent the defendants' wrongful activities, defendant had "deliberately implemented . . . tactics to circumvent plaintiff's security measures." *Id.* at *12. The court thus held that "plaintiff sufficiently ha[d] demonstrated a reasonable likelihood of defendant's future violations" and entered a permanent injunction. *Id.* The fact that plaintiff had guarded against *prior* methods did not negate the risk of future harm. Similarly here, although Plaintiffs take extensive security precautions (*see* Compl. ¶¶ 16, 18), NSO has deliberately circumvented those measures in the past and holds out to the marketplace its ability to circumvent them in the future (*see, e.g.*, *id.* ¶ 37 (alleging NSO used "malicious code" to "avoid the technical restrictions built into WhatsApp"); *id.* Ex. 8 (describing NSO's leading team of experts as "dedicated to keeping pace with the ever-changing cyber world")). There can be no doubt that Plaintiffs have standing to seek relief to stop NSO's unlawful conduct.

### C. NSO Plainly Intends to Continue Engaging in the Same and Similar Conduct

NSO's full-throated defense of its conduct and business model further underscore its intent to continue engaging in the same and similar acts. This is not a case of a repentant defendant who has disavowed the challenged conduct or taken steps to prevent its reoccurrence. Far from it. NSO not only stands by its past conduct but in fact seeks to present it as a beneficial public service, analogizing its unlawful hacking to the conduct of police opening a locked door. (Defs.' Mot. to Dismiss at 1, Dkt. 45.) And, NSO argues, it is immune from suit and thus cannot be held to account—or stopped—by this Court. (*See id.* at 8–10.) Because there is no reason to believe NSO intends to stop the challenged conduct unless enjoined, Article III standing exists. *See Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1109 (N.D. Cal. 2010) (finding Article III standing requirements for the purposes of injunctive relief where plaintiff alleged that defendant had "engage[d] in a practice and policy of storing search queries containing confidential information," and had "taken no steps to ensure that such information is not disclosed again in the future").

"Permanent injunctive relief is warranted where, as here, defendant's past and present misconduct indicates a strong likelihood of future violations." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990). For example, in *Planned Parenthood Federation of America,*

9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
CASE NO. 4:19-CV-07123-PJH

*Inc. v. Center for Medical Progress*, the court rejected defendants' arguments that plaintiff could point to no wrongful acts since the initial violation, and found instead that because defendants demonstrated a "continued reliance on those tactics," there was a "real threat of defendants utilizing them in the future." 2020 WL 2065700, at *17 (N.D. Cal. Apr. 29, 2020); *see also id.* at *18 ("[P]laintiffs have standing to seek injunctive relief because of the realistic likelihood that defendants will continue their conduct . . . either directly or through individuals acting in concert with them."); *see also City & Cty. of San Francisco v. Tutor-Saliba Corp.*, 2005 WL 645389, at *15 (N.D. Cal. Mar. 17, 2005) (city and county faced a real threat that defendant would again bid for and obtain public works contracts from plaintiffs by using the "same unfair business tactics" they had used before).

Similarly, in *Facebook, Inc. v. Power Ventures, Inc.*, Facebook sought injunctive relief against defendants' business, which was premised on obtaining Facebook users' login information and scraping Facebook data in violation of state and federal law. 252 F. Supp. 3d at 768–69. Even though defendants "ceased doing business altogether" years before the injunction issued, the court concluded that it was "very likely that Facebook will suffer irreparable harm again" because "Defendants have frequently exhibited bad faith conduct that indicates that they will not easily be deterred from attempting to access Facebook's servers without authorization in violation of the CFAA and [CCCDAFA]." 252 F. Supp. 3d at 782; *see also id.* at 783 ("Defendants' actions suggest that Defendants may continue to access Facebook's servers unless they are strongly deterred. Thus, not only has Facebook suffered irreparable harm, it is very likely that in the absence of a permanent injunction, Facebook will suffer irreparable harm again in the future."). These principles apply squarely here.

Unsurprisingly, none of the cases NSO cites involve a defendant whose conduct so strongly indicated that it would continue to engage in the alleged wrongdoing in the future. Instead, its cases involve unintentional defects or well-intentioned ancillary business practices, which had already been remedied by repentant defendants. *See, e.g.*, *Palmer v. Apple Inc.*, 2016 WL 1535087, at *4 (N.D. Cal. Apr. 15, 2016) (fixed defect in iOS update); *Matera v. Google Inc.*, 2016 WL 5339806, at *15–16 (N.D. Cal. Sept. 23, 2016) (ceased practice of scanning emails for targeted

advertising); *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *8–9 (N.D. Cal. Aug. 13, 2015) (stopped practice of preventing receipt of text messages); *see also Villa v. Maricopa County*, 865 F.3d 1224, 1229 (9th Cir. 2017) (terminated law enforcement wiretap); *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2016 WL 9107427, at *6 (C.D. Cal. Aug. 18, 2016) (similar). Nor is this a case where Plaintiffs can "opt out" and unilaterally avoid NSO's future reverse engineering and cyber attacks. *See, e.g.*, *Phillips v. Apple Inc.*, 725 F. App'x 496, 498 (9th Cir. 2018) (plaintiffs could not be injured by "future updates" of application because they "could choose not to install updates, or they could install them and immediately disable" them). No case prevents a plaintiff from enjoining defendants who had taken no steps to ameliorate plaintiffs' concerns, and instead proclaimed an intent to persist in the challenged conduct to adapt their methods to defeat plaintiff's countermeasures.

NSO's declared intent to persist in its business and indeed to adapt its tactics in response to Plaintiffs' countermeasures powerfully support the substantial risk of future harm, and require denial of NSO's motion.

### D. The Broad Reach of Plaintiffs' Services Further Supports the Likelihood that NSO Will Continue to Target them if Not Enjoined

The sheer scale of Plaintiffs' platforms and users make them a prominent target for NSO's exploits. For example, over 1.5 billion people in 180 countries use the WhatsApp Service, an end-to-end encrypted communication service available on mobile devices. (Compl. ¶¶ 17–18.) It is therefore unsurprising that NSO has long promoted its specific ability to monitor Plaintiffs' services in particular. (*See id.* Ex. 10 (touting Pegasus' ability to "[m]onitor . . . WhatsApp [and] Facebook").) NSO's demonstrated conduct of targeting Plaintiffs' services in particular—and promoting its ability to do so—supports the substantial risk that NSO has continued and will continue to target those same services, which will violate the same laws that Plaintiffs assert here if allowed to proceed. This further demonstrates the existence of a "real or immediate threat that the [Plaintiffs] will be wronged again," and confirms Plaintiffs' standing to seek injunctive relief. *Lyons*, 461 U.S. at 111.

11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF
CASE NO. 4:19-CV-07123-PJH

# CONCLUSION

Plaintiffs allege that NSO is engaged in the business of hacking Plaintiffs' services, without authority to do so, and in violation of contractual and statutory prohibitions. That Plaintiffs discovered and remediated one technical vulnerability that NSO exploited does not negate the actual and imminent risk that NSO will inflict similar harm on them in the future if not enjoined. Nor does NSO's motion suggest that Plaintiffs need not fear such harm—instead NSO brazenly argues that its future infiltrations are beyond the power of this Court to redress or prevent. That is not the law. NSO's motion should be denied.

Dated: July 8, 2020

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: */s/ Antonio J. Perez-Marques*
    Greg D. Andres
    Antonio J. Perez-Marques
    Craig T. Cagney
      (admitted *pro hac vice*)
    DAVIS POLK & WARDWELL LLP
    450 Lexington Avenue
    New York, New York 10017
    Telephone: (212) 450-4000
    Facsimile: (212) 701-5800
    Email: greg.andres@davispolk.com
           antonio.perez@davispolk.com
           craig.cagney@davispolk.com

    Micah G. Block (SBN 270712)
    DAVIS POLK & WARDWELL LLP
    1600 El Camino Real
    Menlo Park, California 94025
    Telephone: (650) 752-2000
    Facsimile: (650) 752-2111
    Email: micah.block@davispolk.com

    *Attorneys for Plaintiffs*
    *WhatsApp Inc. and Facebook, Inc.*