Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
 (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
            antonio.perez@davispolk.com
            craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp Inc. and Facebook, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>                              Plaintiffs,<br><br>           v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>                              Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**DISCOVERY MATTER**<br><br>Date:     September 9, 2020<br>Time:     9:00 a.m.<br>Ctrm:     3<br>Judge:   Hon. Phyllis J. Hamilton<br><br>Action Filed: October 29, 2019 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 9, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs WhatsApp Inc. ("WhatsApp") and Facebook, Inc. ("Facebook," and together with WhatsApp, "Plaintiffs"), will bring on for hearing before the Honorable Phyllis J. Hamilton, in Courtroom 3 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, a motion under Federal Rule of Civil Procedure 37(a)(3)(B)(iv) compelling Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") to search for and produce documents under Rule 34.  The parties have satisfied the requirements of Rule 37 and Civil L.R. 37-1(a) by attempting in good faith to resolve the disputed issues raised herein.

The Motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities herein, the Declaration of Antonio J. Perez-Marques in Support of the Motion ("Perez-Marques Decl.") filed concurrently herewith, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

Dated:  August 5, 2020                     Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  /s/ Antonio J. Perez-Marques

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:  greg.andres@davispolk.com
          antonio.perez@davispolk.com
          craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:  micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp Inc. and Facebook, Inc.*

2

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................3

ARGUMENT ..........................................................................................................................5

I.    NSO'S INTERLOCUTORY APPEAL DOES NOT RELIEVE IT OF ITS
      DISCOVERY OBLIGATIONS (REQUEST NOS. 1–22, 24, 26–28) ...................................5

      A.    This Court Retains Jurisdiction Over the Discovery Sought by Plaintiffs, Which
            Does Not Concern Matters Involved in the Appeal and Is Necessary to Establish
            NSO's Putative Immunity Defenses If They Are Found to Be Legally Available......8

      B.    NSO's Interlocutory Appeal Does Not Divest the Court of Jurisdiction to
            Proceed with Discovery Because NSO's Putative Immunity Defenses Do Not
            Provide a Right Not to Be Tried ................................................................................10

      C.    Discovery Should Proceed As to the Claims to Which NSO's Putative Defenses
            Do Not Apply............................................................................................................13

II.   DISCOVERY BEYOND ONE BRAND OF SPYWARE AND ONE SET OF KNOWN
      VICTIMS IS RELEVANT AND PROPORTIONAL (REQUEST NOS. 1–24, 26, 28–
      29) ...........................................................................................................................15

      A.    Plaintiffs' Requested Discovery Is Relevant ...........................................................17

      B.    Plaintiffs' Requested Discovery Is Proportional to the Needs of the Case................19

CONCLUSION......................................................................................................................20

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Abney v. United States*,
    431 U.S. 651 (1977) ................................................................. 10

*Alaska v. United States*,
    64 F.3d 1352 (9th Cir. 1995) ................................................... 12

*Alto v. Black*,
    738 F.3d 1111 (9th Cir. 2013) ................................................. 10

*Andrade Rico v. Beard*,
    No. 2:17-cv-1402 KJM DB P, 2019 WL 4127206 (E.D. Cal. Aug. 30, 2019) .......................... 14

*Breazeale v. Victim Servs., Inc.*,
    No. 14-CV-05266-VC, 2015 WL 13687730 (N.D. Cal. Sept. 14, 2015) ................................. 14

*Britton v. Co-op Banking Grp.*,
    916 F.2d 1405 (9th Cir. 1990) ................................................... 8

*Butters v. Vance Int'l, Inc.*,
    225 F.3d 462 (4th Cir. 2000) ............................................... 9, 12

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) ............................................................. 13

*Campos v. San Francisco State Univ.*,
    No. C-97-2326 MMC PJH, 1999 WL 35140127 (N.D. Cal. Mar. 19, 1999) ........................... 16

*City of Los Angeles v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001) ..................................................... 6

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
    No. 3:19-CV-137-SI, 2020 WL 403722 (D. Or. Jan. 24, 2020) ................................. 14

*Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Court for Cent. Dist. of California*,
    859 F.2d 1354 (9th Cir. 1988) ................................................. 12

*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ................................... 15

*Davis v. E. Idaho Health Servs., Inc.*,
    No. 4:16-cv-00193-BLW, 2017 WL 1737723 (D. Idaho May 3, 2017) ............................. 20

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1994) ............................................................... 11

ii

*Doğan v. Barak*,
    932 F.3d 888 (9th Cir. 2019) ................................................................ 12

*Donahoe v. Arpaio*,
    No. CV 10-02756-PHX-NVW, 2012 WL 2063455 (D. Ariz. June 7, 2012) ............................ 14

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982) ............................................................................ 6

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
    No. 19-mc-80277-TSH, 2020 WL 1643786 (N.D. Cal. Apr. 2, 2020) ........................ 4

*Kellgren v. Petco Animal Supplies, Inc.*,
    No. 13-cv-644 L (KSC), 2016 WL 4097521 (S.D. Cal. May 26, 2016) .................... 19

*Lewis v. Mutond*,
    918 F.3d 142 (D.C. Cir. 2019) ................................................... 9, 11, 12

*Long v. Hewlett-Packard, Co.*,
    No. C06-02816 JW (HRL), 2006 WL 3751447 (N.D. Cal. Dec. 19, 2006) ................ 18

*Martin v. Halliburton*,
    618 F.3d 476 (5th Cir. 2010) ................................................................ 12

*Miller v. Pancucci*,
    141 F.R.D. 292 (C.D. Cal. 1992) .......................................................... 16

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) .......................................................................... 10

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
    No. SACV 15-02034 JVS (JCGx), 2016 WL 11520758 (C.D. Cal. Oct. 25, 2016) ................ 19

*Nevada v. Bank of Am. Corp.*,
    No. 3:11-cv-00135-RCJ (WGC), 2012 WL 13055575 (D. Nev. Jan. 31, 2012) ................ 8

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) .......................................................................... 10

*Plotkin v. Pac. Tel. & Tel. Co.*,
    688 F.2d 1291 (9th Cir. 1982) .............................................................. 8

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) .......................................................................... 10

*Schering Corp. v. First DataBank Inc.*,
    No. C 07-01142 WHA, 2007 WL 1747115 (N.D. Cal. June 18, 2007) .............. 8, 10, 11

*Simpson v. City of Upland*,
    No. ED CV 18-1024-PSG (SPx), 2019 WL 6703397 (C.D. Cal. Aug. 23, 2019) .............. 18

*Soto v. City of Concord*,
  162 F.R.D. 603 (N.D. Cal. 1995) ............................................................... 18

*Stevenson v. Melady*,
  1 F.R.D. 329 (S.D.N.Y. 1940) .................................................................... 16

*Town of Browning v. Sharp*,
  No. CV-14-24-GF-BMM, 2015 WL 1246543 (D. Mont. Mar. 17, 2015)................................. 8

*United States v. Smith*,
  No. 3:16-cr-00086-SLG-1, 2020 WL 86191 (D. Alaska Jan. 7, 2020) ..................................... 10

*United States v. United States ex rel. Thrower*,
  No. 18-16408 (9th Cir. Aug. 4, 2020)........................................................................... 11

*Vallabharpurapu v. Burger King Corp.*,
  276 F.R.D. 611 (N.D. Cal. 2011)............................................................................ 2, 3, 18

*Wit v. United Behavioral Health*,
  No. 14-cv-02346-JCS, 2016 WL 258604 (N.D. Cal. Jan. 21, 2016) ........................................ 16

*Yearsley v. W.A. Ross Constr. Co.*,
  309 U.S. 18 (1940)................................................................................................. 12

## Rules & Statutes

Cal. Penal Code § 502(c)(6).......................................................................................... 15

Fed. R. Civ. P. 26(b)(1).......................................................................................... 16, 19

N.D. Cal. Civ. R. 37-2 ............................................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs WhatsApp Inc. ("WhatsApp") and Facebook, Inc. ("Facebook," and together with WhatsApp, "Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their Motion to Compel Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") to search for and produce documents in response to Plaintiffs' First Requests for Production under Rule 34.

### PRELIMINARY STATEMENT

Plaintiffs served their First Requests for Production ("RFPs") on NSO two months ago, on June 2, 2020.  Yet NSO has refused to produce any documents—not even those it *concedes* are relevant—and has indicated that when (or if) it does eventually agree to produce any documents, it will do so only with respect to a small subset of Plaintiffs' allegations.  NSO has effectively granted itself a stay from discovery, which is inconsistent with this Court's ruling denying NSO's motion to stay, and its positions on the timing and on document discovery are at odds with the law and the claims at issue.

As a result, this Motion to Compel raises two threshold issues that cut across NSO's responses to Plaintiffs' RFPs and that, in the absence of Court resolution, will preclude further progress in party document discovery.  *First*, the Motion addresses a *timing*-related objection, namely: whether, as Plaintiffs contend, NSO must proceed with the collection and production of documents at this time, or whether, as NSO claims, its noticed appeal of the Court's denial of its motion to dismiss excuses NSO of all of its discovery obligations. As set forth in Exhibit B-1, NSO has objected to 26 of Plaintiffs' 29 requests on this ground (while refusing on other grounds to produce any documents in response to the remaining three requests).  *Second*, the Motion addresses a *scope*-related objection: namely whether Plaintiffs are entitled to discovery on the full scope of their claims, or only, as NSO claims, on a subset of those claims relating to one particular brand of spyware and one particular set of victims that Plaintiffs were able to identify prior to discovery.  As set forth in Exhibit B-2, NSO objected on this basis to 27 of Plaintiffs' 29 requests, in response to which NSO has either refused to produce any documents or limited the scope of what it will (eventually) produce.  On each issue, NSO's position should be rejected.   NSO should be ordered

to proceed immediately with the collection and production of documents in response to the full scope of Plaintiffs' requests.

### 1.    NSO's Pending Appeal Does Not Excuse its Discovery Obligations (Request Nos. 1–22, 24, 26–28.).

NSO's objection to producing discovery based on its pending interlocutory appeal is improper for several reasons.  First, the Ninth Circuit will merely decide whether the putative immunity defenses raised by NSO are legally available to it.  Regardless of the outcome on appeal, NSO must still establish a factual basis to support those putative legal immunity defenses.  Second, an appeal of NSO's purported immunity defenses does not give rise a blanket stay of discovery because those "immunities" operate merely as *defenses to liability*, and do not excuse NSO from facing suit or participating in discovery.  Third, the immunity defenses on appeal do not pertain to claims based on NSO's own conduct in violation of the WhatsApp Terms of Service and state and federal law.

### 2.    Discovery Is Not Limited to One Brand of Spyware or One Set of Victims (Request Nos. 1–24, 26, 28–29).

NSO's position regarding the scope of discovery is directly contrary to the Federal Rules and well-settled law.  In effect, NSO claims that Plaintiffs are only entitled to take discovery concerning a subset of facts set forth in the complaint—i.e., only the facts regarding NSO's publicly known spyware product "Pegasus."  Not so.  The complaint sets forth that NSO developed multiple types of spyware, including "Pegasus *and its variants*."  Compl. ¶ 24 (emphasis added).  Moreover, it is well established that plaintiffs are entitled to "discovery regarding their claims generally, not just the specific factual claims pled in their Complaint." *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011).

NSO is in the business of developing, marketing, and distributing spyware used against Plaintiffs and their users.  Even without the benefit of discovery and before filing suit, Plaintiffs were able to identify over a thousand users—including journalists, attorneys, and activists—who were targeted by NSO's spyware, in attacks that breached the terms of Plaintiffs' service and violated state and federal law.  *See* Compl. ¶¶ 29–43.  Based on NSO's role in developing, testing, using, and causing the use of its suite of spyware against Plaintiffs and their users, Plaintiffs have asserted claims under the Computer Fraud and Abuse Act ("CFAA") and the California

Comprehensive Computer Data Access and Fraud Act ("CCCDAFA"), as well as for breach of contract. *Id.* ¶¶ 49–73.[1]

The discovery sought by Plaintiffs is directly relevant to their claims and is proportional to the needs of the litigation. Specifically, the RFPs that Plaintiffs have propounded in support of their claims concern multiple variants of NSO's spyware, including its development, marketing, testing, and use. In response to those requests—both as a general objection and in response to nearly each and every request—NSO refused to collect or produce any documents other than a narrow set of documents that relate solely to one publicly known brand of its spyware (Pegasus) or one particular set of known victims (the 1,400 individuals that Plaintiffs were able to identify before suit). *See* Perez-Marques Decl. Ex. B (Defs.' Resps. & Objs. to Pls.' First Req. for Produc.). This position first relies on a misreading of the Complaint. Moreover, it is contrary to law, since discovery is not limited to the specific factual assertions in a complaint. *See Vallabharpurapu*, 276 F.R.D. at 615. Accordingly, NSO should be ordered to proceed with collecting and producing all responsive documents without further delay.

## BACKGROUND

On June 2, 2020, Plaintiffs served their First RFPs on NSO. Perez-Marques Decl. Ex. A (Pls.' First Reqs. for Produc.). These document requests were aimed at obtaining documents concerning, among other things, the development of NSO spyware and NSO's actions in probing the WhatsApp network. *See, e.g.*, Perez-Marques Decl. Ex. A (Pls.' First Reqs. for Produc.) at Reqs. No. 4, 5. On July 6, 2020, NSO served its responses and objections. *Id.* Ex. B (Defs.' Resps. & Objs. to Pls.' First Reqs. for Produc.). As relevant here, NSO objected to the requests "to the extent they seek information that is not related or relevant to Plaintiffs' allegations that Defendants operated a software called 'Pegasus' with respect to the 'Target Devices' described in the Complaint"—i.e., the 1,400 devices that Plaintiffs were able, prior to any discovery, to identify as

---

[1] Although this Court dismissed Plaintiffs' trespass to chattels claim, it granted Plaintiffs leave to amend by August 6, 2020. *See* Order Granting in Part and Denying in Part Motion to Dismiss and Denying Motion to Stay Discovery ("Order") at 44–45, Dkt. No. 111.

having been attacked in April and May of 2019.[2]  NSO has indicated that when it does eventually

produce documents, it will not produce anything beyond that limited scope.  *Id.*  NSO further

objected that it would not produce *any* documents at all, including the documents whose relevance

it does not dispute, until "any interlocutory appeal of such decision" on the "subject matter

jurisdiction of this action" is "determined."  *Id.* Ex. B, ¶ 3.

On July 9, 2020, Plaintiffs sent a letter to NSO noting that NSO's threshold objections

lacked any legal basis and seeking "to determine whether . . . we are at [an] impasse as a result of

these positions," and "whether [NSO is] standing on these objections or will agree to withdraw

them."[3]  Perez-Marques Decl. Ex. C (July 9, 2020 Letter from A. Perez-Marques to J.

Akrotirianakis) at 2.  On July 13, 2020, NSO responded, reasserting its position as to the

appropriate scope of discovery, but suggesting, among other things, that further meet-and-confer

discussions were warranted.  *Id.* Ex. D (July 13, 2020 Letter from J. Akrotirianakis to A. Perez-

Marques).  Plaintiffs' counsel responded the next day, confirming their willingness to meet-and-

confer, further substantiating Plaintiffs' views as to the appropriate scope of discovery, and

proposing dates when they were available.  *Id.* Ex. E (July 14, 2020 Letter from A. Perez-Marques

to J. Akrotirianakis).

On July 21, 2020, July 31, 2020, and August 3, 2020, the Parties conducted telephonic

meet-and-confers that included lead counsel for each side.  *Id.* ¶¶ 3, 11, 12.  During those

discussions, NSO maintained its position as to the limited scope of discovery and acknowledged

that the parties had a fundamental disagreement on that issue that would require Court resolution.

---

[2] The objections at issue in this Motion are set forth in General Objection No. 2 of NSO's responses and objections, *see* Perez-Marques Decl. Ex. B (Defs.' Resps. & Objs. to Pls.' First Reqs. for Produc.) at 2, and in NSO's specific objections to each relevant RFP.  The relevant portions of the responses and objections at issue in each section of the Motion have been attached as Exhibits B-1 and B-2, and have been highlighted for the Court's convenience.  *See* N.D. Cal. Civ. R. 37-2.

[3] The correspondence also addressed NSO's improper objection to proceeding with discovery based on the pendency (at that time) of NSO's motion to stay discovery.  Although that objection was plainly improper, *see HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-mc-80277-TSH, 2020 WL 1643786, at *2 (N.D. Cal. Apr. 2, 2020) ("The filing of a motion to stay discovery does not automatically relieve the movant from continuing to comply with its discovery obligations." (citation omitted)), it has now been rendered moot by the Court's order denying the motion to stay, *see* Order at 45, Dkt. No. 111.

4

*Id.*  NSO also maintained its position that party discovery should not go forward during the pendency of its noticed interlocutory appeal.  *Id.*  On that basis, NSO has not only refused to produce any documents, but also refused to make the initial disclosures required by Rule 26(a) "until . . . the resolution of any interlocutory appeal from the Court's decision" on its motion to dismiss.  Joint Case Management Statement at 9, Dkt. No. 76.  Plaintiffs served their initial disclosures on August 4, 2020.  Perez-Marques Decl. ¶ 13.  There is every reason to expect, based on the positions taken by NSO in its court filings, responses and objections, and meet-and-confer discussions, that NSO will continue to refuse on this basis to respond to discovery requests.  The parties having exhausted the meet-and-confer process, these issues are now ripe for judicial intervention.[4]

**ARGUMENT**

**I.    NSO'S INTERLOCUTORY APPEAL DOES NOT RELIEVE IT OF ITS DISCOVERY OBLIGATIONS (REQUEST NOS. 1–22, 24, 26–28)**

As a blanket position in discovery and in specific response to 26 of Plaintiffs' 29 Requests for Production, NSO has indicated that it will refuse to produce any documents until the Ninth Circuit resolves its noticed interlocutory appeal of this Court's decision on NSO's motion to dismiss.  *See* Defs.' Reply in Support of Mot. to Stay, Dkt. No. 108 at 3 n.4; *see also* Perez-Marques Decl. Ex. B (Defs.' Resps. & Objs. to Pls.' First Reqs. for Produc.).[5]  In accordance with

_____

[4] In addition to the two threshold objections addressed in this Motion—timing and scope—NSO has also lodged a number of unsubstantiated and baseless objections, including, for example: that NSO is precluded by unidentified provisions of Israeli or other supposedly applicable laws from producing unspecified documents, *id.* Ex. B (Defs.' Resps. & Objs. to Pls.' First Reqs. for Produc.) at General Obj. No. 6–7; and that certain commonly understood phrases like "take advantage of," *id.* at General Obj. No. 12, "using," *e.g.*, *id.* at Req. No. 18, and "processes" and "methods," *e.g.*, *id.* at Req. No. 14, are "vague and ambiguous."  Based on the parties' meet-and-confer discussions, it remains unclear whether NSO intends to stand on these objections, as they have with the two threshold objections. Should NSO invoke any secondary objection to refuse to produce documents, Plaintiffs reserve the right to address such arguments when raised.  *See id.* Ex. B (Defs.' Resps. & Objs. to Pls.' First Reqs. for Produc.).

[5] For the avoidance of doubt, NSO has not agreed to produce *any* documents in response to *any* requests at this time.  Rather, the only Requests to which this issue is not immediately applicable are three requests (Request Nos. 23, 25, and 29) as to which NSO has refused to produce any documents whatsoever.  *Id.*

Local Rule 37-2, Exhibit B-1 sets forth each of those 26 requests for production in full, followed immediately by the objections and/or responses thereto.  NSO's refusal to proceed with the collection and production of documents pending its appeal is improper and should be rejected on multiple grounds.

*First*, discovery on NSO's immunity claims will be necessary even if it were to prevail on its interlocutory appeal, because those defenses turn on factual development that has not yet occurred.  Accordingly, those fact-based proceedings can and should occur now because they are not involved in the pending appeal.  An appeal seeking review of an interlocutory order deprives the district court of jurisdiction solely as to "those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) ("[T]he filing of a notice of interlocutory appeal divests the district court of jurisdiction over the *particular issues* involved in that appeal." (emphasis added)).  Here, the only issues that would be "involved in the appeal" of NSO's immunity defenses are whether NSO is potentially eligible to claim conduct-based foreign official immunity or derivative foreign sovereign immunity.  *See* Order at 9–15, Dkt. No. 111.  Thus, even if NSO's putative immunity defenses are found to be legally available, the evidence that Plaintiffs seek would be necessary for NSO to establish (and for Plaintiffs to challenge) whether there is a factual basis for those defenses to apply here.  The questions requiring discovery would include whether and to what extent NSO's conduct constitutes "official" acts, and whether and to what extent NSO was acting at the direction of a sovereign government.  These are factual questions that are separate from the legal issues "involved in the appeal"—i.e., whether NSO's claimed defenses are available as a matter of law.  *See* Section I.A, *infra*.

*Second*, discovery on the merits may proceed while NSO's appeal is pending because the immunities that NSO claims are not within the narrow class of defenses that provide immunity from suit.  While an immunity from *suit* can require district court proceedings to pause pending the outcome of an appeal, an appeal claiming an immunity from *judgment* does not.  Here, NSO's claimed immunities, even if applicable, merely provide immunity from judgment.  Even if the Ninth Circuit disagrees with this Court's legal conclusions regarding those defenses, NSO's

6

purported immunity would not be infringed by pretrial proceedings here, including discovery, and discovery would be needed to determine whether the immunities claimed apply to NSO's conduct. There is accordingly no bar to proceeding with discovery and no unfairness in doing so. *See* Section I.B, *infra*.

*Third*, because Plaintiffs bring claims, including for breach of contract and under state and federal law, based on NSO's *own* conduct in developing, testing, and marketing illegal spyware (which it has never contended was directed by any sovereign), discovery can and should proceed— at a bare minimum—on those claims and that conduct while the interlocutory appeal is pending. *See* Section I.C, *infra*.

NSO has contended in meet-and-confer discussions that its noticed appeal divests this Court of jurisdiction to proceed with discovery of NSO. Perez-Marques Decl. ¶¶ 3, 12.[6] On that basis, NSO has refused to proceed with the collection and production of any of its own documents, including even those that NSO *concedes* are relevant and discoverable. Perez-Marques Decl. Ex. B (Defs.' Resps. & Objs. to Pls.' First Reqs. for Produc.). Notably, despite its position that the Court lacks jurisdiction, NSO does not dispute that *third-party* discovery may proceed—and indeed, in meet-and-confer discussions NSO's counsel has indicated its intention to produce documents promptly on behalf of certain non-party clients, *see id.* ¶ 11. In addition, NSO has itself sought relief from this Court, subsequent to and notwithstanding its appeal, with respect to another discovery matter, namely the consideration and entry of a protective order that is disputed by Plaintiffs, and indicated its intent to proceed with other, unspecified filings before this Court. *See id.* ¶¶ 11–12; Defs.' Mot. for Entry of Protective Order, Dkt. No. 114. Putting aside whether NSO's appeal is properly taken, NSO is incorrect in suggesting that its appeal excuses its discovery obligations or prevents the Court from moving forward with discovery.

---

[6] NSO has not sought or obtained a stay pending appeal from this Court, and the Court denied as moot NSO's prior request to stay discovery. Order at 45, Dkt. No. 111.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:19-CV-07123-PJH

**A.    This Court Retains Jurisdiction Over the Discovery Sought by Plaintiffs, Which Does Not Concern Matters Involved in the Appeal and Is Necessary to Establish NSO's Putative Immunity Defenses If They Are Found to Be Legally Available**

Discovery should continue while NSO pursues its interlocutory appeal because the appeal involves only limited legal issues that do not involve the discovery sought, and matters not involved in the appeal should proceed before this Court.  "[W]here an appeal is taken from a judgment which does not finally determine the entire action, the appeal does not prevent the district court from proceeding with *matters not involved in the appeal*."  *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1411 (9th Cir. 1990) (emphasis added); *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) ("[I]t is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case.").  For instance, in *Britton*, the Ninth Circuit held that discovery could continue while the defendant appealed the district court's denial of his motion to compel arbitration, as the "issue of arbitrability was the only substantive issue presented in this appeal."  916 F.2d at 1412; *see also Schering Corp. v. First DataBank Inc.*, No. C 07-01142 WHA, 2007 WL 1747115, at *4 (N.D. Cal. June 18, 2007) (holding that the defendant's interlocutory appeal of a denial of an immunity defense "did not divest this Court of jurisdiction to rule on pretrial and case-management issues, including discovery" because "discovery and other pretrial matters are not relevant to the subject of the appeal"); *Nevada v. Bank of Am. Corp.*, No. 3:11-cv-00135-RCJ (WGC), 2012 WL 13055575, at *2 (D. Nev. Jan. 31, 2012) (concluding that an interlocutory appeal "has neither divested the court of jurisdiction nor effected a stay of proceedings" and that it would "promote[] judicial economy" for the court to resolve "matters not on appeal, such as [a] discovery coordination dispute"); *Town of Browning v. Sharp*, No. CV-14-24-GF-BMM, 2015 WL 1246543, at *1–2 (D. Mont. Mar. 17, 2015) (retaining jurisdiction to decide "independent issues presented in the underlying case" while the defendants appealed ruling denying tribal sovereign immunity).  Likewise, here, the only

8

substantive issues that will be presented on appeal are narrow legal questions.[7]  The discovery

sought by Plaintiffs is not involved in the appeal, and its necessity does not turn on the outcome of

the appeal.

*First*, NSO seeks to invoke *conduct-based* foreign official immunity.  Order at 11, Dkt. No.

111.  As its name suggests, and unlike status-based foreign official immunity—which applies to

certain foreign officials "regardless of the substance of the claim"—conduct-based foreign official

immunity only applies if the acts are performed in the foreign official's "official capacity."  *Lewis

v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019).  Plaintiffs' allegations pertain to a wide range of

acts undertaken by NSO itself, including the design, development, manufacture, distribution, and

operation of various forms of spyware.  *See, e.g.*, Compl. ¶¶ 24, 32.  But there has been no

discovery to determine whether any of that conduct (much less all of it) can be viewed as official

acts.  To the contrary, "[a]t this stage, the boundary between defendants' conduct and their clients'

conduct is not clearly delineated or definitively resolved . . . ."  Order at 19, Dkt. No. 111.  And, as

discussed below, *see* Section I.C, *infra*, there is a broad swath of conduct at issue here that NSO

does not appear to contend was undertaken on behalf of foreign officials.

*Second*, NSO also seeks to shield itself through the doctrine of derivative foreign sovereign

immunity.  Order at 12, Dkt. No. 111.  If such a defense is available at all in this Circuit, and if it is

available to foreign entities, NSO would still have to establish, factually, whether and to what

extent it was acting at the direction of foreign governments.  *See Butters v. Vance Int'l, Inc.*, 225

F.3d 462, 467 (4th Cir. 2000) (granting derivative foreign sovereign immunity to American citizen

because "the *evidence* here establishes" that foreign officials were responsible for challenged action

---

[7] This Court's decision denying NSO's motion to dismiss on immunity grounds was based on discrete legal findings.  First, the Court rejected NSO's attempt to invoke conduct-based foreign official immunity on the ground that the Court can "craft injunctive relief that does not require a foreign sovereign to take an affirmative action."  Order at 12, Dkt. No. 111.  Whether a defendant may invoke this particular immunity defense despite a court's ability to craft such judicial relief is a purely legal question, and the discovery sought by Plaintiffs has no bearing on it.  Second, as to derivative foreign sovereign immunity, the Court held that—even assuming such a defense is recognized in this Circuit—it cannot be invoked if the party seeking immunity is "not incorporated or formed in the United States."  *Id.* at 14–15.  Again, the questions that NSO is likely to raise on appeal as to this defense are purely legal, and the discovery sought here has no bearing on them.

9

1   (emphasis added)).  It is in fact notable that in the case that NSO relies upon for its derivative

2   foreign sovereign immunity argument, such immunity was established through *discovery*.  *Id.* at

3   465.

4        Because the discovery sought by Plaintiffs does not concern "matters . . . involved in the

5   appeal" and will need to go forward to establish the claimed immunities even if they are available,

6   NSO's appeal does not divest this Court of jurisdiction to proceed with discovery.[8]

7        **B.     NSO's Interlocutory Appeal Does Not Divest the Court of Jurisdiction to
             Proceed with Discovery Because NSO's Putative Immunity Defenses Do Not
8            Provide a Right Not to Be Tried**

9        NSO cannot avoid discovery by invoking a narrow exception that applies only when an

10  interlocutory appeal pertains to issues such as double jeopardy and certain status-based immunities

11  that entail an immunity from suit, also known as a "right not to be tried."  *See, e.g.*, *Nixon v.*

12  *Fitzgerald*, 457 U.S. 731, 742 (1982) (absolute immunity); *Mitchell v. Forsyth*, 472 U.S. 511, 530

13  (1985) (qualified immunity); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506

14  U.S. 139, 144–45 (1993) (Eleventh Amendment immunity); *Abney v. United States*, 431 U.S. 651,

15  660 (1977) (double jeopardy); *see also United States v. Smith*, No. 3:16-cr-00086-SLG-1, 2020 WL

16  86191, at *1 & n.4 (D. Alaska Jan. 7, 2020) (discussing the concept of the "right not to be tried"

17  and the "divestiture of jurisdiction rule" associated with it).  Defendants protected by these specific

18  doctrines are excused from even standing trial, so proceeding with discovery while an appellate

19  court determines whether the immunity applies would vitiate the very immunity that is claimed.

20

21

22

—————————————————

23  [8] NSO has also indicated that it intends to appeal the Court's denial of NSO's motion for failure to
    join necessary parties under Rule 19.  *See* Mediation Questionnaire at 2, *WhatsApp Inc. v. NSO*
24  *Group Techs. Ltd.*, No. 20-16408 (9th Cir. July 30, 2020) (Dkt. No. 3).  That ruling is not
    appealable as a collateral order.  *See Alto v. Black*, 738 F.3d 1111, 1130 (9th Cir. 2013) (holding
25  that the denial of a Rule 12(b)(7) motion to dismiss "for inability to join a required party under
    Rule 19 [is not] among the narrow class of rulings collaterally appealable").  In any event, as with
26  NSO's immunity defenses, an appeal of this Court's Rule 19 decision would only raise a narrow
    legal question as to whether "the court can craft injunctive relief that excludes or carves out any
27  sovereign nation."  Order at 34, Dkt. No. 111.  The discovery sought here does not implicate that
    issue.
28

1   *See Mitchell*, 472 U.S. at 526 (describing "immunity from suit" as an immunity that is "effectively

2   lost if a case is erroneously permitted to go to trial").[9]

3           That doctrine has no bearing here.  The Supreme Court has cautioned that courts are

4   required to "view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye."  *Digital*

5   *Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873 (1994); *see United States v. United States*

6   *ex rel. Thrower*, No. 18-16408, slip op. at 14 (9th Cir. Aug. 4, 2020) (citing *Digital Equipment*);

7   *see also Schering*, 2007 WL 1747115, at *2 ("[C]ourts should not interpret the collateral order too

8   expansively lest every right that could be enforced appropriately by pretrial dismissal be loosely

9   described as conferring a right not to stand trial." (internal quotations and citations omitted)).  As

10  explained below, the limited and fact-bound immunities claimed by NSO do not fall in that

11  narrowly circumscribed category that would protect NSO from trial, much less from discovery.

12  Even if legally available, they would protect NSO only from liability, not from suit or discovery.

13  To the contrary, as the Court held in addressing personal jurisdiction, because determining whether

14  these immunities apply to NSO's conduct would *require* discovery, the invocation of those

15  defenses cannot possibly preclude discovery from going forward.  An appeal on these bases

16  accordingly does not and cannot divest the court of jurisdiction to proceed with discovery.

17          The putative immunity defenses raised by NSO do not establish a "right not to be tried," or

18  a right to avoid producing discovery.  Rather, each of the two purported *conduct-based* and

19  *derivative* immunities asserted by NSO would provide, at most, an immunity from *judgment*—upon

20  establishment of certain factual predicates—rather than a blanket immunity from all aspects of

21  litigation, and in particular discovery.

22          *First*, the conduct-based foreign official immunity claimed by NSO would provide

23  immunity only from *judgment*, not from meeting its discovery obligations.  This Court's order

24  recognized as much in holding that the immunity did not warrant dismissal because NSO's "foreign

---

[9] In addition, even where defendants invoke a "right not to be tried," courts do not apply a "blanket
[rule] that any and all discovery . . . should be denied pending what may be a lengthy appeal."
*Schering*, 2007 WL 1747115, at *4.  Rather, the continuation of pretrial proceedings "must be
evaluated matter by matter," and where appropriate, "jurisdiction still exists to decide discovery
issues, rule on pretrial motions, and set dates leading up to trial."  *Id*. at *4–5.

11

sovereign customers would [not] be forced to pay a *judgment* against defendants," and "the court [could] craft injunctive relief that does not require a foreign sovereign to take an affirmative action."  Order at 12, Dkt. No. 111 (emphasis added).  Other authority confirms that reasoning.  As the D.C. Circuit has explained, foreign official conduct-based immunity bars actions only where "a judgment against the official would bind (or be enforceable against) the foreign state."  *Lewis v. Mutond*, 918 F.3d 142, 146 (D.C. Cir. 2019) (interpreting Restatement (Second) of Foreign Relations Law § 66(f) (1965)); *see also Doğan v. Barak*, 932 F.3d 888, 894 (9th Cir. 2019) (relying on Restatement § 66(f)).  In *Lewis*, the D.C. Circuit rejected the notion that conduct-based foreign official immunity protects foreign officials from discovery, concluding that "[t]aking . . . foreign officials away from their official duties"—as may occur in discovery—constitutes "collateral effects [that] are too attenuated to be equated with enforcing a rule against a foreign state."  918 F.3d at 146–47.  To whatever extent NSO is protected by conduct-based foreign official immunity, the protection would be only from an enforceable judgment, not from discovery.[10]

        *Second*, to the extent that derivative foreign sovereign immunity exists at all, it too would only provide an immunity from judgment and therefore would not preclude Plaintiffs from obtaining discovery from NSO.  This much is clear from the model for a derivative *foreign* sovereign immunity claim: i.e., derivative *domestic* sovereign immunity.  *See Butters*, 225 F.3d at 466 (citing *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21–22 (1940)); *see also Martin v. Halliburton*, 618 F.3d 476, 483, 485 (5th Cir. 2010) (identifying "the relevant inquiry in determining whether an 'immunity' is subject to immediate appeal under the collateral order doctrine [as] whether the asserted immunity is from suit or merely from liability" and holding based

---

[10] In *Doğan v. Barak*, the Court of Appeals stated that "the whole point of immunity is to enjoy 'an immunity from suit rather than an immunity from liability,'" *see* 932 F.3d at 895, but the case from which *Doğan* quoted its description of immunity concerned immunity under the Foreign Sovereign Immunities Act, not conduct-based foreign official immunity or derivative foreign sovereign immunity, *see id.* (citing *Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Court for Cent. Dist. of California*, 859 F.2d 1354, 1358 (9th Cir. 1988)).  And it is clear in the Ninth Circuit that not every form of immunity is an immunity *from suit*.  *See Alaska v. United States*, 64 F.3d 1352, 1357 (9th Cir. 1995) (federal sovereign immunity is not an immunity from suit).

on circuit precedent that a denial of derivative domestic sovereign immunity is not an immediately appealable collateral order).

The fact that a *derivative* immunity confers immunity from liability only, and not from suit or a basis to refuse to produce discovery, is also perfectly logical, because the ability to invoke derivative immunity implicates factual questions requiring discovery as to the relationship between the sovereign and the party purporting to invoke the sovereign's immunity. Derivative domestic sovereign immunity thus cannot arise until it is shown that the contractor complied with both "federal law and the Government's explicit instructions." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) (cautioning that while "government contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States[,] . . . [t]hat immunity, . . . unlike the sovereign's, is not absolute"). Likewise, as explained above, to whatever extent derivative foreign sovereign immunity exists in this Circuit, its applicability would turn on unresolved factual questions requiring discovery—such as the relationship between NSO's conduct and any purported instructions from sovereigns—which precludes any interpretation of the claimed immunity as an immunity from suit.

## C.     Discovery Should Proceed As to the Claims to Which NSO's Putative Defenses Do Not Apply

NSO's interlocutory appeal has no impact on this Court's jurisdiction over claims as to which NSO's putative defenses do not apply: namely, breach of contract for certain provisions in the WhatsApp Terms of Service and certain violations of federal and state law based on NSO's own conduct in reverse engineering the WhatsApp app, developing the spyware in the first instance, testing it on WhatsApp systems, and marketing it. *See* Compl. ¶¶ 1, 5, 22, 30, 35. NSO has argued that it was entitled to sovereign immunity because only sovereign governments *use* its spyware. Defs.' Mot. to Dismiss at 6, Dkt. No. 45 (contending that "Defendants license NSO's Pegasus technology . . . and assist with the training, setup, and installation of the Pegasus technology" but "do not operate the Pegasus technology"). This argument ignores the fact that before any use of the spyware (purportedly by its customers), NSO itself had to reverse-engineer the WhatsApp app as well as different operating systems, identify and test for vulnerabilities, then

13

develop computer programs to exploit those vulnerabilities and test the various versions of their programs.  Therefore, NSO's putative immunity defenses, even if valid, do not apply to a broad swath of the conduct alleged in the complaint: namely, NSO's *own* conduct in developing, testing, and marketing illegal spyware, apart from the subsequent use of that spyware—conduct that would plainly violate WhatsApp's Terms of Service (which prohibit reverse-engineering) and Section 502(c)(6) of the CCCDAFA (which prohibits providing the means to engage in unauthorized access).[11]  *See* Compl. ¶¶ 1, 22, 35.  In short, because NSO's putative immunity defenses have no bearing on claims that do not relate to the purported use of NSO spyware by sovereign nations, at the very least discovery related to these claims should proceed during NSO's interlocutory appeal.

District courts in this Circuit have held that an interlocutory appeal from a decision denying an immunity defense does not divest the court of jurisdiction over claims as to which the defense does not apply, and have allowed discovery to proceed on those claims.  *See, e.g.*, *Breazeale v. Victim Servs., Inc.*, No. 14-CV-05266-VC, 2015 WL 13687730, at *1–2 (N.D. Cal. Sept. 14, 2015) (explaining that the court "retain[ed] jurisdiction" over claims as to which interlocutory appeal of denial of immunity defense did not apply and rejecting argument that discovery should be stayed as to those claims); *see also Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 3:19-CV-137-SI, 2020 WL 403722, at *4 (D. Or. Jan. 24, 2020) (allowing discovery on RICO claims to proceed while the defendant appealed denial of immunity on state-law claims and explaining that "[b]ecause Plaintiff's federal RICO claims will go forward regardless of what happens to Plaintiff's state claims, the parties should gather their discovery sooner rather than later").  Even in cases unlike this one, where an interlocutory appeal is on one of the narrow bases that does stay discovery, courts still only extend the stay to "claims subject to the immunity defense."  *Andrade Rico v. Beard*, No. 2:17-cv-1402 KJM DB P, 2019 WL 4127206, at *2 (E.D. Cal. Aug. 30, 2019); *see also Donahoe v. Arpaio*, No. CV 10-02756-PHX-NVW, 2012 WL

---

[11] Discovery may demonstrate that such conduct also violated the CFAA and other provisions of the CCCDAFA, for example, to the extent that the testing of the spyware involved unauthorized access to Plaintiffs' computers or those of their users.

14

2063455, at *2 (D. Ariz. June 7, 2012) ("Where an immunity defense applies to one claim and not another, the claims are separable for purposes of the collateral order doctrine.").

Plaintiffs' breach-of-contract claim does not implicate NSO's sovereign immunity arguments.  The complaint alleges that NSO created WhatsApp accounts while intending to use them for illegal and unauthorized purposes, and that it used the accounts to reverse engineer WhatsApp technology in violation of the WhatsApp Terms.  *See* Compl. ¶¶ 19–23, 30–31, 35; *id.* Ex. 10 at 61 ("We [NSO] are responsible for the system setup and training before its hand-over to the customer.").  NSO's sovereign immunity arguments ignore the allegations that NSO developed its technology by breaching the WhatsApp Terms—allegations that are unconnected to any later licensing of NSO's spyware to sovereign governments.  *See* Defs.' Mot. to Dismiss at 6, Dkt. No. 45 ("Defendants' business model consists of selling NSO's Pegasus technology.").  NSO has never claimed that sovereign governments were involved in the creation of WhatsApp accounts for the purpose of developing or testing the spyware in the first place.  *See* Compl. ¶¶ 30–31, 35.  The WhatsApp Terms also prohibit assisting others in violating the Terms, *id*. ¶ 23, which NSO did by developing and maintaining the spyware in the first place.

Additionally, certain of Plaintiffs' claims under the CFAA and CCCDAFA do not turn on the outcome of NSO's appeal.  For instance, Section 502(c)(6) of the CCCDAFA provides that any person who "[k]nowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network" has violated the statute.  Cal. Penal Code § 502(c)(6); *see also* Compl. ¶ 61.  NSO's *own* conduct—including probing Plaintiffs' servers for vulnerabilities and marketing products providing a means to exploit them—violates Section 502(c)(6), regardless of whether or how NSO's eventual customers may have used the spyware.  *See* Compl. ¶¶ 22, 58–66; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1057 (N.D. Cal. 2010) (Hamilton, J.) (holding that the defendants violated Section 502(c)(6) "through their . . . selling of their auto-posing software, services, and devices").

## II.     DISCOVERY BEYOND ONE BRAND OF SPYWARE AND ONE SET OF KNOWN VICTIMS IS RELEVANT AND PROPORTIONAL (REQUEST NOS. 1–24, 26, 28–29)

The second improper objection at issue in this Motion is NSO's refusal to produce any documents—at any point—beyond documents related to one particular brand of spyware (Pegasus) and one particular set of WhatsApp users known to have been targeted (the 1,400 targeted users identified by Plaintiffs prior to any discovery).  As both a general objection, which is incorporated into each response, and specifically in response to 27 of Plaintiffs' 29 requests, NSO has either objected to producing any documents at all, or limited the scope of what it says it will (eventually) produce, on the basis that "information related to technologies other than the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6–7) . . . has no relevance to Plaintiffs' allegations or any issue in this case."  Perez-Marques Decl. Ex. B (Defs.' Resps. & Objs. to Pls.' First Reqs. for Produc.) at Reqs. No. 1–24, 26, 28–29. Indeed, even for those document requests that are aimed at the design and operation of Pegasus specifically,  NSO has still refused to produce documents beyond its use with respect to the Target Devices.  *Id.* at Reqs. No. 20–22.   In accordance with Local Rule 37-2, Exhibit B-2 sets forth each of the 27 requests for production at issue in full, followed immediately by the objections and/or responses thereto.[12]  NSO's objection is premised on a misreading of Plaintiffs' complaint, and is in any event contrary to law.  NSO should be ordered to produce documents beyond this limited scope.

Federal Rule of Civil Procedure 26 broadly provides for discovery that is "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1); *see also Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2016 WL 258604, at *11 (N.D. Cal. Jan. 21, 2016) (noting that Rule 26 imposes a "broad" standard and a "low threshold" for relevance).  "To limit an examination to matters relevant to only the precise issue presented by their pleadings, would not only be contrary to the express purpose of Rule 26 . . . but also might result in a complete failure to afford plaintiff an adequate opportunity to obtain information that would be useful at the trial."  *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992) (quoting *Stevenson v.*

---

[12] Again, for the avoidance of doubt, NSO has not agreed to produce *any* documents in response to *any* requests at this time.

*Melady*, 1 F.R.D. 329, 330 (S.D.N.Y. 1940)).  As a result, "[c]ourts will rarely reject discovery requests on the ground the information sought is not 'relevant to the subject matter' of the action." *Campos v. San Francisco State Univ.*, No. C-97-2326 MMC PJH, 1999 WL 35140127, at *2 (N.D. Cal. Mar. 19, 1999) (Hamilton, J.).  Applying these standards, discovery beyond a single brand of spyware and single set of known victims is both relevant and proportional to the needs of this case.

### A.    Plaintiffs' Requested Discovery Is Relevant

Plaintiffs bring claims under the CFAA and the CCCDAFA, as well as for breach of contract.  Compl. ¶¶ 49–73.  Consistent with their claims, Plaintiffs have sought discovery from NSO related to NSO's spyware products.  *See, e.g.*, Perez-Marques Decl. Ex. A (Pls.' First Reqs. for Produc.) at Req. No. 1 (requesting documents concerning "the development, testing, deployment, installation, distribution, use, maintenance, troubleshooting, and/or operation of any NSO Spyware targeting or directed at WhatsApp servers or Users").  NSO objected, asserting that discovery is only relevant as it pertains to "Plaintiffs' allegations that Defendants operated a software called 'Pegasus' with respect to the 'Target Devices' described in the Complaint"—i.e., the 1,400 devices that, prior to any discovery, Plaintiffs were able to identify as targeted in April and May of 2019.  *Id.* Ex. B (Defs.' Resps. & Objs. to Pls.' First Reqs. for Produc.) at 2.[13]

NSO's objection is based on an inaccurate reading of the complaint.  For instance, the complaint plainly states that "on information and belief, Defendants caused Target Devices to download and install additional malware—believed to be Pegasus *or another remote access trojan developed by Defendants*—from the remote servers for the purpose of accessing data and communications on Target Devices."  Compl. ¶ 24 (emphasis added).  The complaint repeatedly refers to NSO's entire suite of spyware products.  *See id.* ¶ 24 (defining "Pegasus and its variants"

---

[13] NSO goes beyond objecting to specific requests as unrelated to Pegasus or the Target Devices, and instead imposes this restricted view of this case's subject matter across nearly *all* of its requests—even where it has agreed in principle to produce some documents at some later point. *See, e.g.*, *id.* at Req. No. 5 (agreeing to produce certain documents concerning NSO's identification of Plaintiffs' vulnerabilities but only "from the time period between January 2018 and May 2019 [and] that relate to the identification of the specific WhatsApp vulnerability allegedly exploited by the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint").  As a consequence, this unjustified objection as to the scope of discovery cuts across all current and future requests, and makes all of NSO's responses deficient.

as "collectively, 'Pegasus'").  The complaint also includes allegations about NSO's pattern of targeting Plaintiffs' servers, including that NSO manufactures, distributes, and operates an entire suite of customizable spyware products.  *See, e.g.*, *id.* (NSO "manufactured, distributed, and operated surveillance technology or 'spyware' designed to intercept and extract information and communications from mobile phones and devices"); *id.* ¶ 1 (NSO's "malware *was designed* to infect the Target Devices for the purpose of conducting surveillance of specific WhatsApp users," and NSO "*developed [its] malware* in order to access messages and other communications after they were decrypted on Target Devices" (emphasis added)); *id.* ¶ 25 (NSO "used other malware delivery methods"); *id.* ¶ 27 (NSO's spyware is "modular" and "could be customized for different purposes"); *id.* ¶ 32 (alleging "a number of steps" taken by NSO without authorization, including "set[ting] up *various* computer infrastructure . . . used to infect the Target Devices and conceal Defendants' identity and involvement" (emphasis added)); *id.* ¶ 59 (NSO knowingly accessed and without permission altered and used Plaintiffs' systems in order to "devise and execute a scheme and artifice to defraud and deceive").

The extensive materials attached to the complaint likewise make clear that the wrongful conduct at issue is much broader than the use of spyware under one particular brand name against one particular set of users.  *See, e.g.*, *id.* Ex. 2 (marketing NSO spyware to United States Drug Enforcement Agency); *id.* Ex. 4 (touting NSO's "cyber analytic and intelligence solutions" (plural) as well as intent to "launch[] new cutting edge products" (plural) and to "constantly evolve"); *id.* Ex. 8 (promoting NSO's "products" (plural)); *id.* Ex. 10 (describing "various installation methods" (plural) even for Pegasus system itself).  Plaintiffs are entitled to develop these claims through discovery.

Moreover, NSO's argument is incorrect as a matter of law.  "Plaintiffs are entitled to discovery regarding their claims generally, not just the specific factual claims pled in their Complaint."  *Vallabharpurapu*, 276 F.R.D. at 615; *see also Long v. Hewlett-Packard, Co.*, No. C06-02816 JW (HRL), 2006 WL 3751447, at *2–3 (N.D. Cal. Dec. 19, 2006) (granting motion to compel and rejecting argument that discovery should be limited to facts contained in the complaint concerning two specific computer models owned by defendants).  NSO cannot avoid its discovery

obligations through a narrow reading of the complaint.  Rather, by attempting to narrow discovery to specific factual allegations, NSO ignores that "[r]elevancy should be 'construed liberally and with common sense and discovery should be allowed unless the information sought has no conceivable bearing on the case.'"  *Simpson v. City of Upland*, No. ED CV 18-1024-PSG (SPx), 2019 WL 6703397, at *2 (C.D. Cal. Aug. 23, 2019) (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)).

Plaintiffs are also entitled to jurisdictional discovery.  For example, Plaintiffs have requested documents regarding NSO's efforts to develop and distribute surveillance technology and interactions with Facebook and WhatsApp servers and/or user devices.  *See, e.g.*, Perez-Marques Decl. Ex. A (Pls.' First Reqs. for Produc.) at Reqs. No. 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 23, 26.  Such documents may identify spyware other than Pegasus that NSO has tested, marketed, sold, and/or used in California or elsewhere in the United States.  The mere fact that, prior to discovery, Plaintiffs have succeeded in obtaining more information about Pegasus than other NSO products does not mean that Pegasus is the only spyware at issue in this action, or that NSO can limit its participation in discovery accordingly.

**B.     Plaintiffs' Requested Discovery Is Proportional to the Needs of the Case**

Plaintiffs' requested discovery is also "proportional to the needs of the case."  *See* Fed. R. Civ. P. 26(b)(1) (noting factors for the court's balancing, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").  As an initial matter, NSO has not made any particularized burden objection with respect to any of Plaintiffs' RFPs, and it is NSO's burden to demonstrate that the requests cannot satisfy the proportionality requirements of Rule 26(b)(1).  *See Kellgren v. Petco Animal Supplies, Inc.*, No. 13-cv-644 L (KSC), 2016 WL 4097521, at *2 (S.D. Cal. May 26, 2016) ("The party resisting discovery generally bears the burden to show that the discovery requested is irrelevant to the issues in the case or is not proportional to the needs of the case.").  The proportionality requirements of Rule 26(b)(1) are therefore presumptively satisfied.

1        In any event, NSO can hardly argue that a lack of resources prohibits it from providing

2    relevant documents.  *See* Compl. Ex. 4 (NSO press release stating that NSO is a "global leader in

3    providing cyber intelligence" and that "[t]he company has grown rapidly and finished 2018 with

4    revenues of $250 million").  Indeed, the factors set out in Rule 26(b)(1) fall squarely in Plaintiffs'

5    favor.  The requested discovery goes to central issues in the case, and the issues at stake implicate

6    the core of Plaintiffs' business.  *See Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. SACV

7    15-02034 JVS (JCGx), 2016 WL 11520758, at *3 (C.D. Cal. Oct. 25, 2016) (concluding that "the

8    importance of [the requested] discovery outweighs the burden on the parties and is proportional to

9    the case's needs" where allegations are "at the heart of [the] case").  Plaintiffs seek documents to

10   which NSO has exclusive access and require such documents in order to understand NSO's

11   clandestine activities.  *See Davis v. E. Idaho Health Servs., Inc.*, No. 4:16-cv-00193-BLW, 2017

12   WL 1737723, at *4 (D. Idaho May 3, 2017) (noting that defendant's "sole access to the requested

13   documents" and status as "a large company able to bear the costs of such discovery" weighed in

14   favor of discovery).  NSO's efforts to shield its operations from scrutiny through discovery should

15   be rejected.

16   **CONCLUSION**

17       For the reasons above, Plaintiffs respectfully request that the Court order NSO to proceed

18   with collecting and producing without delay *all* documents responsive to Plaintiffs' First Requests

19   for Production of Documents, without limiting such productions to documents concerning the use

20   of the Pegasus branded spyware or the 1,400 known victims identified prior to discovery.

21

22

23

24

25

26

27

28

1    Dated:   <u>August 5, 2020</u>          Respectfully Submitted,

2                           DAVIS POLK & WARDWELL LLP

3

4                      By:   <u>*/s/ Antonio J. Perez-Marques*</u>
                            Greg D. Andres

5                             Antonio J. Perez-Marques
                            Craig T. Cagney

6                              (admitted *pro hac vice*)
                            DAVIS POLK & WARDWELL LLP

7                             450 Lexington Avenue
                            New York, New York 10017

8                             Telephone: (212) 450-4000
                            Facsimile: (212) 701-5800

9                             Email: greg.andres@davispolk.com

10                                  antonio.perez@davispolk.com
                                 craig.cagney@davispolk.com

11

12                             Micah G. Block (SBN 270712)
                            DAVIS POLK & WARDWELL LLP

13                             1600 El Camino Real
                            Menlo Park, California 94025

14                             Telephone: (650) 752-2000
                            Facsimile:  (650) 752-2111

15                             Email: micah.block@davispolk.com

16

17                             *Attorneys for Plaintiffs*
                            *WhatsApp Inc. and Facebook, Inc.*

18

19

20

21

22

23

24

25

26

27

28