# EXHIBIT E

| | |
|---|---|
| **New York** | **Paris** |
| **Northern California** | **Madrid** |
| **Washington DC** | **Hong Kong** |
| **São Paulo** | **Beijing** |
| **London** | **Tokyo** |

# Davis Polk

**Antonio J. Perez-Marques**

Davis Polk & Wardwell LLP      212 450 4559 tel
450 Lexington Avenue          antonio.perez@davispolk.com
New York, NY 10017

<u>Via Email</u>

July 14, 2020

Re:     *WhatsApp, Inc. et al. v. NSO Group Techs. Ltd. et al.*, 4:19-cv-7123 (N.D. Cal.)

Joseph N. Akrotirianakis
King & Spalding LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071

Dear Joe,

I write in response to your letter dated July 13, 2020.  Plaintiffs are of course willing to meet and confer on these issues, and expect to do so promptly this week—either Wednesday, July 15, or Thursday, July 16.  Please let us know a time that works.

Although we look forward to such discussions, we continue to regard the two points raised in my prior letter—your clients' improper objections based on the pending motion to stay and cramped view as to the scope of discovery—as threshold issues, and we are concerned about the parties' ability to make meaningful progress without their resolution.  That concern is underscored by your non-party clients' blanket refusal to produce *any* materials, and Defendants' reliance on these two objections in response to each and every one of Plaintiffs' requests—not only to limit the scope of discovery, but also in support of a refusal to produce materials within even the *agreed* scope at this time.  Since my prior letter, your additional client Westbridge has also asserted the same improper objections across all of Plaintiffs' requests—and refused to produce any documents—both on the basis of the pending stay motion and by claiming that the requests are "not related to the Pegasus technology used with respect to the 'Target Devices' described in the Complaint."  Westbridge R&Os at 1-11.  Given your apparent position that these fundamental disagreements need not delay discovery, we look forward to your identification of the documents that your clients intend to begin collecting and producing immediately.

With respect to your objection based on the pendency of the motion to stay, your letter effectively concedes that the pendency of such a motion is not a valid independent basis to refuse to produce relevant responses and documents.  As you note, "[u]nless and until discovery is stayed, the responding party may not refuse to produce relevant responses and documents absent a valid objection."  Akrotirianakis Letter dated July 13, 2020 at 1 (quoting *Apple Inc. v. Eastman Kodak Co.*, 2011 WL 334669, at *2 (N.D. Cal. Feb. 1, 2011)).  In other words, some *other* valid objection is required; the pendency of a stay motion does not itself support a refusal to produce.

*See, e.g.*, *HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 1643786, at *2 (N.D. Cal. Apr. 2, 2020) ("The filing of a motion to stay discovery does not automatically relieve the movant from continuing to comply with its discovery obligations." (citation omitted)); *Nat'l Corp. Tax Credit Funds III v. Potashnik*, 2008 WL 11339608, at *1 (C.D. Cal. June 16, 2008) ("That defendants have sought a stay is insufficient to avoid their discovery obligations.  By refusing to comply with discovery merely because a motion to stay is pending, a party effectively is granting its own motion to stay—even before the court has ruled." (citation and internal quotation marks omitted)).  The position your clients are taking is precisely the position that these cases reject.  When I asked you during our June 30 meet-and-confer discussion for any authority supporting your position, you failed to identify any such case.  Nor have you identified any such authority in your letter.  This improper objection should be withdrawn and your clients should begin collecting and producing documents immediately.

*First*, and at a minimum, your clients should immediately proceed with the collection and production of all documents concerning scope of discovery that you *concede* is relevant, namely all documents relevant to the use of Pegasus against the 1,400 users are relevant and discoverable.  The categories of documents that Defendants have already acknowledged are relevant and discoverable are set forth in Appendix A.  *See generally* Defs.' R&Os to Pls.' First RFPs.  Although, as explained below, the case is not so limited, there is no justification for your clients' refusal to produce these undisputedly relevant and discoverable documents.  Please confirm by Wednesday, July 15 at 5:30 p.m. (PT) that you will immediately begin collection and rolling productions of these materials.

*Second*, there should be no meaningful dispute as to the relevance of any jurisdictional discovery, as evidenced by the position Defendants have taken in their motion to dismiss.  *See* ECF No. 45 at 11-18.  Those documents too should be produced without delay, and include, among other things, responses to requests regarding the locations from which Messrs. Lavie and Shaner operated while engaged in business on behalf of Defendants, efforts to develop and distribute Defendants' surveillance technology, and interactions with Facebook and WhatsApp servers and/or user devices.  *See, e.g.*, Shaner R&O's at 4-6 (Req. Nos. 5-11); Lavie R&Os at 3-4 (Req. Nos. 2-5); *see also generally* Pls.' First RFPs.  As above, please confirm by Wednesday, July 15 at 5:30 p.m. (PT) that you will immediately begin the collection and rolling production of such documents in response to requests five through eleven of Mr. Shaner and requests two through five of Mr. Lavie.

*Third*, as previously stated, this case is not limited to the use of a single software (Pegasus) against the 1,400 users, and discovery should not be limited on that basis.  While Defendants' effort to distance themselves from the use of the Pegasus software against these particular users may be an aspect of your clients' defense, it is not a fair reading of the complaint and accordingly not a proper basis on which to limit the scope of discovery as to Defendants or third parties.

The complaint is based not only on the use of this particular spyware, but also more broadly on Plaintiffs' admitted "business model" of developing and marketing spyware designed to commandeer Plaintiffs' servers and hack its customers' devices, or access that information in any way, all in violation of applicable contracts, statutes, and common law.  *See, e.g.,* Compl. ¶ 1 ("Defendants malware **was designed** to infect the Target Devices for the purpose of conducting surveillance of specific WhatsApp users"; "Defendants **developed their malware** in order to access messages and other communications after they were decrypted on Target Devices"; "Defendants' actions were not authorized by Plaintiffs and were in violation of WhatsApp's Terms of Service"); ¶ 24 ("Defendants **manufactured, distributed, and operated surveillance**

***technology or 'spyware'*** designed to intercept and extract information and communications from mobile phones and devices."); ¶ 32 (alleging "a number of steps" taken by Defendants without authorization, including "***set[ting] up various computer infrastructure*** . . . used to infect the Target Devices and conceal Defendants' identity and involvement"); ¶ 59 (Defendants knowingly accessed and without permission altered and used Plaintiffs' systems in order to "***devise*** and execute a scheme and artifice to defraud and deceive"). The Complaint moreover alleges that, in addition to their own improper use, Defendants "***caused*** [Plaintiffs' servers] to be used" (*id.* ¶ 37) without authorization and "***caused*** their malicious code to be transmitted over WhatsApp servers." *Id.* ¶ 42; *see also, e.g., id.* ¶¶ 50, 53, 54 (Defendants "***caused***" Plaintiffs' servers and target devices to be accessed in violation of CFAA); ¶¶ 60, 62 (Defendants "***caused***" Plaintiffs' servers to be used in violation of California law). The extensive materials attached to the complaint likewise make clear that the wrongful conduct at issue is much broader than the use of spyware under one particular brand name against one particular set of users. *See e.g., id.* Ex. 2 (marketing NSO spyware to U.S. DEA); *id.* Ex. 4 (touting NSO's "cyber analytic and intelligence solutions" (plural) as well as intent to "launch[] new cutting edge products" (plural) and "constantly evolve"); *id.* Ex. 8 (promoting NSO's "products" (plural)); *id.* Ex. 10 (describing "various installation methods" (plural) even for Pegasus system itself). Indeed, the complaint specifically alleges that NSO sold remote-access Trojan spyware under multiple brand names. *See, e.g., id.* ¶¶ 24, 27, 32, 44.

Defendants cannot avoid discovery by rewriting the complaint. Plaintiffs are entitled to discovery based on the full scope of their allegations and concerning, among other things, the development and marketing of all of Defendants' spyware products that have been deployed or seek to be deployed against Facebook and WhatsApp, and the conduct through which Defendants caused such spyware to be deployed, including through their development, testing, marketing, and deployment of the spyware *See, e.g.*, Shaner R&Os at 4 (Req. No. 6); Lavie R&Os at 4 (Req. No. 5); *see also generally* Pls.' First RFPs.

*Finally*, the discovery sought from Defendants, Mr. Lavie, and Mr. Shaner is entirely proportional to the needs of the case. As an initial matter, it is Defendants' burden—not Plaintiffs' as you suggest—to demonstrate that the requests cannot satisfy the proportionality requirements of Rule 26(b)(1). *See Kellgren v. Petco Animal Supplies, Inc.*, 2016 WL 4097521, at *2 (S.D. Cal. May 26, 2016) ("The party resisting discovery generally bears the burden to show that the discovery requested is irrelevant to the issues in the case or is not proportional to the needs of the case."). In any event, the conduct at issue by Defendants goes to the core of Plaintiffs' business, and the importance of the issues at stake in the litigation and of discovery in resolving those issues weigh in Plaintiffs' favor. *See* Fed. R. Civ. P. 26(b)(1) (providing a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering, among other things, "the importance of the issues at stake in the action"). Defendants' actions caused not only out-of-pocket harm warranting monetary damages but also substantial and irreparable harm to Facebook and WhatsApp's reputations, public trust, and good will warranting injunctive relief. Compl. ¶ 73. Defendants' activities are ongoing and involve continuing harm to Plaintiffs. *Id.* ¶ 71; *see also* Defs.' Mot. to Dismiss at 6, ECF No. 45 (acknowledging that selling of spyware and providing related support is "Defendants' business model"). These considerations are critically important and amply support the discovery sought.

As noted at the outset, we are available to meet and confer in the coming days to attempt to resolve these threshold issues. It remains our view that your clients' improper objections based on the pending motion to stay and scope of discovery cut across the requests and will preclude

4                                                    July 14, 2020

any productive discussions if not immediately withdrawn or resolved by the Court.  Any continued failure or refusal to immediately begin collecting and producing documents would confirm Plaintiffs' view that your clients' improper objections are standing in the way of legitimate discovery.

In an effort to progress forward without further delay, Plaintiffs' counsel can make themselves available for a meet and confer Wednesday, July 15 or Thursday, July 16.  Please identify a time on those dates when Defendants are available to discuss these points.

Plaintiffs continue to reserve all rights.

Very truly yours,

*/s/ Antonio J. Perez-Marques*

Antonio J. Perez-Marques

## Appendix A

In their Reponses and Objections to Plaintiffs' First Requests for Production, Defendants do not contest the relevance or discoverability of the categories of documents set forth below. As set forth in the accompanying letter, Plaintiffs would expect Defendants to immediately begin collecting and producing documents falling under these categories:

- Documents and communications "related to the development, testing, maintenance and troubleshooting of the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 4);

- Documents and communications "sufficient to identify persons responsible for the development, testing, maintenance and troubleshooting of the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 5);

- "[M]arketing materials, licensing agreements, user complaints, and training manuals or documents, if any exist, related to the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 7);

- Documents and communications "sufficient to identify the persons responsible for installation, maintenance or training related to the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 8);

- Documents and communications "from the time period between January 2018 and May 2019 that relate to the identification of the specific WhatsApp vulnerability allegedly exploited by the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 9);

- Documents and communications "sufficient to identify the persons that assisted in identifying the specific WhatsApp vulnerability allegedly exploited by the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 10);

- Documents and communications "related to the development and testing of the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 11, 17);

- Documents and communications "sufficient to identify the persons responsible for development, testing, or maintenance of the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 12);

- Documents and communications "concerning the processes, methods and technology used by the Pegasus technology that was used with respect to the 'Target Devices'

described in the Complaint (Dkt. No. 1 at 2:6-7) and export data from such Target Devices" (Defs.' R&Os to Pls.' First RFPs at 14);

- Documents and communications, "concerning mobile phone and device operating system vulnerabilities used by the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 15);

- Documents and communications, "sufficient to identify the persons responsible for identifying any mobile phone and device vulnerabilities used by the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 16);

- Documents and communications "sufficient to identify the persons responsible for developing and testing the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 18);

- Documents and communications "concerning the processes, methods and technology used to install the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7) on such Target Devices" (Defs.' R&Os to Pls.' First RFPs at 19);

- Documents and communications "concerning the analysis, reverse engineering, disassembling, or emulating of the WhatsApp application to the extent related to the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 20);

- Documents and communications "concerning the aspects of the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7) that were used by NSO to communicate with WhatsApp" (Defs.' R&Os to Pls.' First RFPs at 21);

- Documents and communications "concerning any WhatsApp accounts used by Defendants to develop, test, transmit, install, or distribute the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 23);

- Documents and communications "sufficient to identify the persons who created and used the WhatsApp accounts used by Defendants to develop, test, transmit, install, or distribute the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 24);

- Documents and communications "concerning the Pegasus technology that was used to transmit data or information from the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 25);

- Documents "sufficient to describe the design and operation of the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 26);

- Documents "sufficient to describe the design and operation of system architecture and technology of the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 27);

- Documents "sufficient to describe the Pegasus Anonymizing Transmission Network to the extent related to the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 28);

- Documents "sufficient to describe whatever information NSO has obtained from the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 30);

- "[M]arketing, sales and promotional materials, if any exist, related to the Pegasus technology that was used with respect to the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7) and which refer to WhatsApp or Facebook" (Defs.' R&Os to Pls.' First RFPs at 31);

- Documents "sufficient to describe NSO's corporate structure, including all parents, subsidiaries, and affiliates" (Defs.' R&Os to Pls.' First RFPs at 32);

- Documents and communications "with Westbridge Technologies, if any exist, related to WhatsApp and Facebook and the use of the Pegasus technology to monitor the 'Target Devices' described in the Complaint (Dkt. No. 1 at 2:6-7)" (Defs.' R&Os to Pls.' First RFPs at 33).