Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp Inc. and
Facebook, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING APPEAL** <br><br> Date: September 9, 2020 <br> Time: 9:00 a.m. <br> Ctrm: 3 <br> Before the Honorable Phyllis J. Hamilton <br><br> Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

PAGE

ARGUMENT .................................................................................................................1

    I.    NSO's Interlocutory Appeal Does Not Give Rise to an Automatic Stay of District Court Proceedings ...........................................................................2

    II.    NSO Cannot Meet Its Burden of Showing that the Court Should Enter a Discretionary Stay .......................................................................................9

CONCLUSION .............................................................................................................11

1

**TABLE OF AUTHORITIES**

2

<u>Page</u>

3

**Cases**

4

*Abney v. United States*,
    431 U.S. 651 (1977) ................................................................................ 4

5

6

*Alaska v. United States*,
    64 F.3d 1352 (9th Cir. 1995) .................................................................. 6

7

*Apostol v. Gallion*,
    870 F.2d 1335 (7th Cir. 1989) ............................................................... 11

8

9

*Augustine v. United States*,
    704 F.2d 1074 (9th Cir. 1983) ................................................................ 7

10

*Bally v. State Farm Life Ins. Co.*,
    No. 18-cv-04954-CRB, 2020 WL 3035781 (N.D. Cal. June 5, 2020) ....................... 10

11

12

*Banga v. Experian Info. Solutions, Inc.*,
    No. C 09–04867 SBA, 2013 WL 1209946 (N.D. Cal. Mar. 25, 2013) ....................... 9

13

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*,
    490 F.3d 718 (9th Cir. 2007) ................................................................ 11

14

15

*Breazeale v. Victim Servs., Inc.*,
    No. 14-CV-05266-VC, 2015 WL 13687730 (N.D. Cal. Sept. 14, 2015) ..................... 8

16

17

*Britton v. Co-op Banking Grp.*,
    916 F.2d 1405 (9th Cir. 1990) ............................................................... 3

18

*Butters v. Vance Int'l, Inc.*,
    225 F.3d 462 (4th Cir. 2000) ................................................................. 7

19

20

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) ........................................................................ 5

21

22

*Castaneda v. Molinar*,
    No. CV 07-07241 DDP (JCx), 2008 WL 9449576 (C.D. Cal. May 20, 2008) ............. 8

23

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
    No. 3:19-CV-137-SI, 2020 WL 403722 (D. Or. Jan. 24, 2020) ......................... 9

24

*Compania Mexicana de Aviacion, S.A. v. U.S. District Court*,
    859 F.2d 1354 (9th Cir. 1988) ............................................................... 6

25

26

*Del Campo v. Kennedy*,
    517 F.3d 1070 (9th Cir. 2008) .............................................................. 10

27

28

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
   511 U.S. 863 (1994) ........................................................................................ 5

*Dogan v. Barak*,
   932 F.3d 888 (9th Cir. 2019) .......................................................................... 6

*Donahoe v. Arpaio*,
   No. CV 10-02756-PHX-NVW, 2012 WL 2063455 (D. Ariz. June 7, 2012) ............................. 9

*Eckert International, Inc. v. Government of the Sovereign Democratic Republic of Fiji*,
   834 F. Supp. 167 (E.D. Va. 1993) ................................................................. 6

*Grauberger v. St. Francis Hospital*,
   169 F. Supp. 2d 1172 (N.D. Cal. 2001) ........................................................... 3

*Hernandez v. City of San Jose*,
   No. 16-CV-03957-LHK, 2017 WL 2081236 (N.D. Cal. May 15, 2017) .................................. 5

*J.P. ex rel. Villanueva v. County of Alameda*,
   No. 17-cv-05679-YGR, 2018 WL 3845890 (N.D. Cal. Aug. 13, 2018) .......................... 5, 7, 11

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ..................................................................... 10, 11

*Lewis v. Mutond*,
   918 F.3d 142 (D.C. Cir. 2019) ................................................................ 5, 7, 10

*M.G. v. Metropolitan Interpreters & Translators, Inc.*,
   No. 12cv460-JM (MDD), 2013 WL 690833 (S.D. Cal. Feb. 26, 2013) ......................... 4, 6, 7

*Martin v. Halliburton*,
   618 F.3d 476 (5th Cir. 2010) ..................................................................... 5

*Mendia v. Garcia*,
   2016 WL 3249485 (N.D. Cal June 14, 2016) ........................................................ 7

*Microsoft Corp. v. Commonwealth Scientific & Industries Research Organisation*,
   No. C 05-01894 MJJ, 2005 WL 8165886 (N.D. Cal. Nov. 14, 2005) ............................ 4, 6

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ............................................................................... 4

*Nevada v. Bank of Am. Corp.*,
   No. 3:11-cv-00135-RCJ (WGC), 2012 WL 13055575 (D. Nev. Jan. 31, 2012) ....................... 3

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982) ............................................................................... 4

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................ 2, 10

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Phoenix Consulting Inc. v. Republic of Angola*,
   216 F.3d 36 (D.C. Cir. 2000) ................................................................................. 7, 8

*Plotkin v. Pacific Tel. and Tel. Co.*,
   688 F.2d 1291 (9th Cir. 1982) ..................................................................................... 4

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
   506 U.S. 139 (1993) ..................................................................................................... 4

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987) ............................................................................... 7, 8

*Schering Corp. v. First DataBank Inc.*,
   No. C 07-01142 WHA, 2007 WL 1747115 (N.D. Cal. June 18, 2007) ............ 3, 5, 6, 8

*Stewart v. Donges*,
   915 F.2d 572 (10th Cir. 1990) ..................................................................................... 5

*Stiner v. Brookdale Senior Living, Inc.*,
   383 F. Supp. 3d 949 (N.D. Cal. 2019) ................................................................ 2, 10

*Town of Browning v. Sharp*,
   No. CV-14-24-GF-BMM, 2015 WL 1246543 (D. Mont. Mar. 17, 2015) .................. 3

*United States v. Bhatia*,
   No. CR 05-0334 SBA, 2007 WL 2795066 (N.D. Cal. Sept. 26, 2007) ...................... 5

*United States v. Claiborne*,
   727 F.2d 842 (9th Cir. 1984) ....................................................................................... 6

*United States v. Smith*,
   No. 3:16-cr-00086-SLG-1, 2020 WL 86191 (D. Alaska Jan. 7, 2020) ...................... 4

*Zango, Inc. v. Kaspersky Lab, Inc.*,
   568 F.3d 1169 (9th Cir. 2009) ................................................................................... 10

**ARGUMENT**

Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") are in the business of developing, marketing, and distributing spyware used against Plaintiffs and their users.  Even without the benefit of discovery and before filing suit, Plaintiffs were able to identify over a thousand users—including journalists, attorneys, and activists—who were targeted by NSO's spyware, in attacks that breached the terms of Plaintiffs' service and violated state and federal law.  *See* Compl. ¶¶ 29–43.  Based on NSO's role in developing, testing, using, and causing the use of its suite of spyware against Plaintiffs and their users, Plaintiffs have asserted claims under the Computer Fraud and Abuse Act ("CFAA") and the California Comprehensive Computer Data Access and Fraud Act ("CCCDAFA"), as well as for breach of contract.  *Id.* ¶¶ 49–73.  This Court has denied NSO's motion to dismiss those claims, and previously denied NSO's motion to stay discovery.  Plaintiffs are entitled to take discovery into NSO's misconduct, but to date, NSO has refused to produce any discovery or even provide initial disclosures under Fed. R. Civ. P. 26(a)(1).  NSO's refusal to participate in party discovery forced Plaintiffs to file a motion to compel, which is currently pending with the Court and addresses some of the same issues as are presented by NSO's current motion to stay.  NSO's attempt to continue avoiding its discovery obligations should be denied.

NSO now contends that, because it has filed an interlocutory appeal of this Court's denial of its motion to dismiss based on novel immunity defenses, it is entitled to an "automatic stay" of all proceedings that "would impose litigation burdens" on NSO.[1]  Not so.  An interlocutory appeal regarding the specific defenses NSO claims does not automatically stay discovery, and NSO cites no case holding as much.  To the contrary, this Court retains jurisdiction over pretrial discovery, including the factual prerequisites to NSO's purported immunities, which are not at issue in NSO's appeal and operate as affirmative defenses to liability, rather than "rights not to be tried."

---

[1] Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited's Motion to Stay Pending Appeal, Dkt. No. 117 at 1 (hereafter, "Mot. to Stay").

Because NSO's appeal does not give rise to an automatic stay of discovery, NSO would need to request a discretionary stay and satisfy its burden of establishing four factors justifying such a stay based on an interlocutory appeal:  (1) a strong likelihood that it will prevail on appeal, (2) irreparable injury that will occur absent a stay, (3) that a stay will not substantially injure Plaintiffs, and (4) that a stay is in the public interest.  *See Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 953 (N.D. Cal. 2019) (citing *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)).  NSO has not even requested a discretionary stay or mentioned this standard, much less satisfied it.  In any event, NSO could not establish these factors.  Among other things, NSO cannot show a "strong likelihood" that it will prevail on appeal as to the putative immunity defenses that this Court held do not apply to NSO.  *See id.*[2]  Nor can it show any "irreparable injury" from participating in discovery—indeed, even if NSO's defenses were found on appeal to be legally available, discovery would still be necessary for NSO to establish (and Plaintiffs to challenge) whether there is a factual basis for those conduct-based and derivative immunity defenses to apply here.

For the reasons set forth herein, the Court should deny NSO's motion to stay.

**I.     NSO's Interlocutory Appeal Does Not Give Rise to an Automatic Stay of District Court Proceedings**

As the party requesting a stay, NSO bears the burden of establishing its right to the same.  *See Stiner*, 383 F. Supp. 3d at 953.  NSO does not meet its burden.  NSO's assertion that its interlocutory appeal based on its affirmative defenses "automatically stays" all proceedings in this Court is incorrect.  Mot. to Stay at 1-2.  First, interlocutory appeals do not as a matter of course give rise to an automatic stay of discovery.  Second, the derivative immunities that NSO asserts are not among the narrow set of immunities that afford a "right not to be tried" that would be vitiated if a stay were not entered.  Third, regardless of the outcome of its appeal, NSO must still establish the factual bases for its putative legal immunity defenses.  Fourth, the immunity defenses on appeal do not pertain to Plaintiffs' claims based on NSO's *own* independent conduct that violates the

---

[2] *See* Order Granting in Part and Denying in Part Motion to Dismiss and Denying Motion to Stay Discovery at 9-15, Dkt. No. 111 (hereafter, "Order").

WhatsApp Terms of Service and state and federal law.  For these reasons, as is also explained in Plaintiffs' Motion to Compel, NSO's objection to proceeding with discovery at this time is improper and NSO should be compelled to proceed with the collection and production of documents notwithstanding its appeal.[3]

**_First_**, it is well settled that NSO does not have any right to an "automatic stay" simply because it filed an interlocutory appeal.  "[W]here an appeal is taken from a judgment which does not finally determine the entire action, the appeal does not prevent the district court from proceeding with _matters not involved in the appeal_."  _Britton v. Co-op Banking Grp._, 916 F.2d 1405, 1411 (9th Cir. 1990) (emphasis added).  For instance, in _Britton_, the Ninth Circuit held that discovery could continue while the defendant appealed the district court's denial of his motion to compel arbitration, as the "issue of arbitrability was the only substantive issue presented in this appeal."  916 F.2d at 1412; _see also Schering Corp. v. First DataBank Inc._, No. C 07-01142 WHA, 2007 WL 1747115, at *4 (N.D. Cal. June 18, 2007) (holding that the defendant's interlocutory appeal of a denial of an immunity defense "did not divest this Court of jurisdiction to rule on pretrial and case-management issues, including discovery" because "discovery and other pretrial matters are not relevant to the subject of the appeal"); _Nevada v. Bank of Am. Corp._, No. 3:11-cv-00135-RCJ (WGC), 2012 WL 13055575, at *2 (D. Nev. Jan. 31, 2012) (concluding that an interlocutory appeal "has neither divested the court of jurisdiction nor effected a stay of proceedings" and that it would "promote[] judicial economy" for the court to resolve "matters not on appeal, such as [a] discovery coordination dispute"); _Town of Browning v. Sharp_, No. CV-14-24-GF-BMM, 2015 WL 1246543, at *1–2 (D. Mont. Mar. 17, 2015) (retaining jurisdiction to decide "independent issues presented in the underlying case" while the defendants appealed ruling denying tribal sovereign immunity).  These cases belie NSO's claim that an interlocutory appeal somehow gives rise to any "automatic stay" in this Court.  _See also Grauberger v. St. Francis Hospital_, 169 F. Supp. 2d 1172, 1175 n.2 (N.D. Cal. 2001) ("An appeal from an interlocutory order

---

[3] _See_ Plaintiffs' Motion to Compel Discovery at 6-15, Dkt. No. 116 (hereafter, "Mot. to Compel").

1    does not, however 'stay the proceedings, as it is firmly established that an appeal from an

2    interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the

3    case.'" (quoting *Plotkin v. Pacific Tel. and Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982)).

4         NSO cites no case to the contrary.  Instead, all of the cases on which NSO relies are either

5    misdescribed or inapposite.  For example, NSO contends that *Microsoft Corp. v. Commonwealth*

6    *Scientific & Industries Research Organisation* is a case in which the "defendant filed an

7    interlocutory appeal of [the denial of its motion to dismiss], which the court held automatically

8    stayed all proceedings."  Mot. to Stay at 3 (citing *Microsoft*, No. C 05-01894 MJJ, 2005 WL

9    8165886, at *2-3 (N.D. Cal. Nov. 14, 2005)).  In fact, the *Microsoft* court merely "decline[d] to

10   exercise its discretion to retain jurisdiction" over the case pending an appeal; the word "stay"

11   appears nowhere in the decision.  2005 WL 8165886, at *3.  Similarly, in *M.G. v. Metropolitan*

12   *Interpreters & Translators, Inc.*, the court *rejected* the proposition that "an automatic stay of all

13   discovery is required in every case in which a defendant raises a claim of immunity." No. 12cv460-

14   JM (MDD), 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013).

15        ***Second***, NSO cannot avoid discovery by invoking a narrow exception that applies *only*

16   when an interlocutory appeal pertains to issues such as double jeopardy and certain status-based

17   immunities that entail an immunity from suit, also known as a "right not to be tried."  *See, e.g.*,

18   *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (absolute immunity); *Mitchell v. Forsyth*, 472 U.S.

19   511, 530 (1985) (qualified immunity); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy,*

20   *Inc.*, 506 U.S. 139, 144–45 (1993) (Eleventh Amendment immunity); *Abney v. United States*, 431

21   U.S. 651, 660 (1977) (double jeopardy); *see also United States v. Smith*, No. 3:16-cr-00086-SLG-1,

22   2020 WL 86191, at *1 & n.4 (D. Alaska Jan. 7, 2020) (discussing the concept of the "right not to be

23   tried" and the "divestiture of jurisdiction rule" associated with it).  For policy and constitutional

24   reasons, these specific status-based immunities have been deemed to protect defendants from even

25   standing trial, such that proceeding against such defendants while an appellate court determines

26   whether one of those immunities applies would vitiate the very immunity that is claimed on appeal.

27   *See Mitchell*, 472 U.S. at 526 (describing "immunity from suit" as an immunity that is "effectively

28   lost if a case is erroneously permitted to go to trial").  But NSO has no claim to one of these status-

4

based immunities, so this basis to stay discovery is inapplicable here.  As explained further in

Plaintiffs' Motion to Compel, the two specific immunities claimed by NSO solely provide

immunity from judgment, and do not preclude Plaintiffs from obtaining discovery from NSO.  *See*

Mot. to Compel at 11-13.[4]  Nor would it make sense for NSO's claimed immunities to confer a

"right not to be tried" because, as discussed below, they both require discovery to determine

whether the factual predicates for such defenses exist.  *See Digital Equip. Corp. v. Desktop Direct,*

*Inc.*, 511 U.S. 863, 873 (1994) (courts are required to "view claims of a 'right not to be tried' with

skepticism, if not a jaundiced eye"); *Schering*, 2007 WL 1747115, at *2 ("[C]ourts should not

interpret the collateral order too expansively lest every right that could be enforced appropriately by

pretrial dismissal be loosely described as conferring a right not to stand trial." (internal quotations

and citations omitted)).

The cases on which NSO relies in support of its argument for a stay all involve the types of

status-based immunities and constitutional rights that *do* include a "right not to be tried."  *See, e.g.*,

*J.P. ex rel. Villanueva v. County of Alameda*, No. 17-cv-05679-YGR, 2018 WL 3845890, at *1

(N.D. Cal. Aug. 13, 2018) (County of Alameda's claim of qualified immunity); *see also Stewart v.*

*Donges*, 915 F.2d 572, 574 (10th Cir. 1990) (police officer's claim of qualified immunity);

*Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 2081236, at *13 (N.D. Cal. May

15, 2017) (same); *United States v. Bhatia*, No. CR 05-0334 SBA, 2007 WL 2795066, at *1 (N.D.

Cal. Sept. 26, 2007) (criminal defendant's constitutional right against double jeopardy).  None of

them pertains to the conduct-based or derivative immunities that NSO has asserted and is raising on

---

[4] NSO's attempt to distinguish *Lewis v. Mutond*, 918 F.3d 142 (D.C. Cir. 2019), *Martin v.*
*Halliburton*, 618 F.3d 476 (5th Cir. 2010), and *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663
(2016), *see* Mot. to stay at 4 n.2, fails because those cases are clearly inconsistent with NSO's
contention that its immunities shield it from all "burdens of litigation."  *See Lewis*, 918 F.3d at 147
(concluding that "[t]aking such foreign officials away from their official duties" by defending the
suit was "too attenuated to be equated with the direct fiscal impacts on the foreign state" that justify
extending immunity to the official); *Martin*, 618 F.3d at 485 (concluding that "a denial of
[derivative] sovereign immunity is not subject to immediate review under the collateral order
doctrine" (citation omitted)); *Campbell-Ewald*, 136 S. Ct. at 672 ("Do federal contractors share the
Government's unqualified immunity from liability *and litigation*? We hold they do not." (emphasis
added)).

appeal, which have never been recognized as "rights not to be tried."  NSO cites *Compania Mexicana de Aviacion, S.A. v. U.S. District Court*, 859 F.2d 1354 (9th Cir. 1988), for the proposition that "[f]oreign sovereign immunity 'is an immunity from suit rather than a mere defense to liability,'" Mot. to Stay at 3 (quoting *Compania Mexicana*, 859 F.2d at 1358), but there is no dispute that NSO is neither a foreign state nor a government agency entitled to foreign sovereign immunity under the Foreign Sovereign Immunities Act.  *See* Order at 9.[5]  *Compania Mexicana* did not involve either of the immunity defenses that NSO claims—i.e., conduct-based foreign official immunity and derivative foreign sovereign immunity.  *See* Order at 9-15.  NSO is not helped by *Dogan v. Barak*, 932 F.3d 888 (9th Cir. 2019), as that decision merely relied on *Compania Mexicana* in the course of holding that Congress had not "extinguish[ed] the common law doctrine of foreign official immunity" *sub silentio* by passing the Torture Victim Protection Act.  *Dogan*, 932 F.3d at 895 (quoting *Compania Mexicana*, 859 F.2d at 1358).  Nothing in *Dogan* purports to confer a "right not to be tried" upon common law foreign official immunity, and the Ninth Circuit has recognized that not all immunities provide that type of immunity *from suit*.  *See Alaska v. United States*, 64 F.3d 1352, 1357 (9th Cir. 1995).

Even if the types of immunity defenses NSO invokes did provide a "right not to be tried"— which they do not—there is no "blanket [rule] that any and all discovery . . . should be denied pending what may be a lengthy appeal."  *Schering*, 2007 WL 1747115, at *4.  A "right not to be tried" is "not as vitally involved when only pre-trial hearings proceed in the district court rather than the trial itself."  *Id.* (quoting *United States v. Claiborne*, 727 F.2d 842, 851 (9th Cir. 1984)).  NSO nevertheless contends that immunities associated with a "right not to be tried" insulate a defendant from all "burdens of litigation."  Mot. to Stay at 2 (quoting *M.G.*, 2013 WL 690833, at *1).[6]  NSO is wrong again.  Contrary to NSO's argument, courts have allowed discovery to proceed

---

[5] NSO's reliance on *Eckert International, Inc. v. Government of the Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167 (E.D. Va. 1993) and *Microsoft* is likewise misplaced, since those cases also involved assertions of sovereign immunity by a "foreign state" (Fiji) and an agency of a foreign state ("Australia's national science agency").  *See Eckert*, 834 F. Supp. at 169 & n.2; *Microsoft*, 2005 WL 8165886, at *1 & n.1.

[6] NSO cites *M.G.* for its assertion that a "defendant asserting immunity should be free from all burdens of litigation," but the court in *M.G.* merely discussed what it recognized was "dicta"

1  even where doing so imposed some "burdens of litigation" on a defendant with a "right not to be

2  tried"—including in at least one case that NSO cites—where they were outweighed by "the

3  prejudice to plaintiff in authorizing such an open-ended stay." *J.P.*, 2018 WL 3845890, at \*3.

4          ***Third***, in addition to establishing that its claims of immunity are legally applicable, NSO

5  bears the burden of establishing the factual predicates for its immunity defenses, just as with any

6  affirmative defense. *See Lewis*, 918 F.3d at 145 ("The defendant bears the burden of proving

7  foreign official immunity."). And the specific "conduct-based" and "derivative" immunities

8  claimed by NSO involve factual questions as to which there have been no factual findings and as to

9  which discovery is accordingly needed. Specifically, there have been no factual findings that any

10  of NSO's conduct (much less all of it) was undertaken in an "official capacity" as an agent of a

11  foreign government, as required for foreign official immunity, *see Lewis*, 918 F.3d at 145, or at the

12  direction of foreign governments, as required for derivative sovereign immunity, *see Butters v.*

13  *Vance Int'l, Inc.*, 225 F.3d 462, 467 (4th Cir. 2000). To the contrary, this Court held that "[a]t this

14  stage, the boundary between defendants' conduct and their clients' conduct is not clearly delineated

15  or definitively resolved." Order at 19, Dkt. No. 111. So, even if NSO's asserted immunity

16  defenses were legally viable, discovery would be necessary to determine whether NSO can carry its

17  burden of establishing the factual bases for its immunities. *See Roberts v. Corrothers*, 812 F.2d

18  1173, 1177-78 (9th Cir. 1987) ("If a district court cannot determine jurisdiction on the basis of a

19  threshold inquiry analogous to a 12(b)(6) motion, the court may assume jurisdiction and go on to

20  determine the relevant jurisdictional facts 'on either a motion going to the merits or at trial.'"

21  (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)); *Phoenix Consulting Inc.*

22  *v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (holding that where immunity defense

23  turns on disputed facts, the court "must give the plaintiff 'ample opportunity to secure and present

24  from the Supreme Court's decision in *Ashcroft v. Iqbal*. 2013 WL 690833, at \*2; *see also Mendia*

25  *v. Garcia*, 2016 WL 3249485, at \*3 (N.D. Cal June 14, 2016) (collecting cases holding that the
   same "passage in *Iqbal* [as the court discussed in *M.G.*] is not binding precedent on discovery

26  matters"). Despite that dicta, the *M.G.* court concluded that "an automatic stay of all discovery is
   not required" and that the court retains discretion to "consider the nature of the case" and balance

27  any burden on the defendant against "the impact on other parties and the court." *M.G.*, 2013 WL

28  690833, at \*2.

evidence relevant to the existence of jurisdiction'" (citation omitted)).[7]  The Court therefore retains

jurisdiction over such discovery and is not required to stay that discovery pending NSO's appeal.

*See Castaneda v. Molinar*, No. CV 07-07241 DDP (JCx), 2008 WL 9449576, at *1 (C.D. Cal. May

20, 2008) ("'Because discovery and other pretrial matters are not relevant to the subject of the

appeal—[the defendants'] claim of immunity,' the Court may continue to oversee discovery in this

case.") (citation omitted).[8]

       **Finally**, there is no reason to stay discovery—at a minimum—as to those claims to which

NSO has no arguable immunity: namely, breach of contract for certain provisions in the WhatsApp

Terms of Service (including helping its customers violate those Terms of Service) and certain

violations of federal and state law based on NSO's *own* conduct in reverse engineering the

WhatsApp app, developing the spyware in the first instance, testing it on WhatsApp systems, and

marketing it (conduct that is necessarily independent of any purported use of that spyware by its

customers.  *See* Compl. ¶¶ 1, 5, 21-25, 28-30, 35, 49-73 (Causes of Action Nos. 1-3).  District

courts in this Circuit have held that an interlocutory appeal from a decision denying an immunity

defense does not divest the court of jurisdiction over claims as to which the defense does not apply,

and have allowed discovery to proceed on those claims.  *See, e.g.*, *Breazeale v. Victim Servs., Inc.*,

No. 14-CV-05266-VC, 2015 WL 13687730, at *1–2 (N.D. Cal. Sept. 14, 2015) (explaining that the

court "retain[ed] jurisdiction" over claims as to which interlocutory appeal of denial of immunity

defense did not apply and rejecting argument that discovery should be stayed as to those claims);

---

[7] NSO's contention that the "automatic stay" it advocates should "at a minimum apply to discovery related to [NSO's] foreign sovereign customers and the actions Defendants take on behalf of those customers" therefore fails.  Mot. to Stay at 5 n.5.  NSO has not yet established who its customers are, whether those customers themselves are entitled to sovereign immunity, or whether any of NSO's challenged actions were taken at their direction.  The Ninth Circuit therefore could not accept NSO's purported immunities without remanding for discovery and fact-finding into these issues.  *See Roberts*, 812 F.2d at 1177-78; *Phoenix*, 216 F.3d at 40.  There is no reason to delay that discovery until NSO's appeal is resolved.

[8] NSO's arguments regarding whether its appeal is "frivolous" (Mot. to Stay at 4-5) are irrelevant, because Plaintiffs have not moved to have the appeal be certified as frivolous.  *See, e.g.*, *Schering*, 2007 WL 1747115, at *3-5 (denying the plaintiff's motion to certify appeal as frivolous but holding that the court retained jurisdiction "to decide discovery issues, rule on pretrial motions, and set dates leading up to a trial").

1  *see also Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 3:19-CV-

2  137-SI, 2020 WL 403722, at *4 (D. Or. Jan. 24, 2020) (allowing discovery on RICO claims to

3  proceed while the defendant appealed denial of immunity on state-law claims and explaining that

4  "[b]ecause Plaintiff's federal RICO claims will go forward regardless of what happens to Plaintiff's

5  state claims, the parties should gather their discovery sooner rather than later"); *Donahoe v. Arpaio*,

6  No. CV 10-02756-PHX-NVW, 2012 WL 2063455, at *2 (D. Ariz. June 7, 2012) ("Where an

7  immunity defense applies to one claim and not another, the claims are separable for purposes of the

8  collateral order doctrine.").  NSO's putative immunity defenses, even if valid, do not apply to

9  NSO's *independent* conduct in developing, testing, and marketing illegal spyware, apart from the

10  subsequent use of that spyware—conduct that would plainly violate WhatsApp's Terms of Service

11  (which prohibit reverse-engineering) and the CCCDAFA and the CFAA (both of which prohibit,

12  among other things, enabling others to engage in unauthorized access), and that NSO has never

13  claimed was taken at the direction of any sovereign government.  *See* Compl. ¶¶ 1, 5, 21-25, 28-30,

14  35, 49-73 (Causes of Action Nos. 1-3).  Indeed, NSO's sovereign immunity arguments ignore the

15  allegations that NSO developed its technology by breaching the WhatsApp Terms—allegations that

16  are unconnected to any licensing of NSO's spyware to sovereign governments.  *See* Defs.' Mot. to

17  Dismiss at 6, Dkt. No. 45 ("Defendants' business model consists of selling NSO's Pegasus

18  technology.").  NSO has never claimed that sovereign governments were involved in the creation of

19  WhatsApp accounts for the purpose of developing or testing the spyware in the first place.  *See*

20  Compl. ¶¶ 30–31, 35.  At the very least, the Court retains jurisdiction as to these claims and

21  discovery on them should proceed during NSO's interlocutory appeal.

22      Because NSO relies solely on a purported right to an "automatic stay" that does not exist,

23  the Court should deny the motion.

24  **II.   NSO Cannot Meet Its Burden of Showing that the Court Should Enter a Discretionary Stay**

25

26      NSO has not asked the Court to exercise its discretion to enter a stay and therefore has

27  waived any such argument.  *See, e.g.*, *Banga v. Experian Info. Solutions, Inc.*, No. C 09–04867

28  SBA, 2013 WL 1209946, at *3 (N.D. Cal. Mar. 25, 2013) ("arguments not raised by a party in an

9

1   opening brief are waived") (citing *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th

2   Cir. 2009)).   Regardless, NSO cannot meet its "burden" to obtain such a discretionary stay, which

3   requires NSO to establish four "circumstances [that] justify exercise of that discretion":  "(1)

4   whether [NSO] has made a strong showing that [it] is likely to succeed on the merits; (2) whether

5   [NSO] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially

6   injure [Plaintiffs]; and (4) where the public interest lies."  *Stiner*, 383 F. Supp. 3d at 953 (quoting

7   *Nken*, 556 U.S at 434).   The first two factors "are the most critical."  *Bally v. State Farm Life Ins.*

8   *Co.*, No. 18-cv-04954-CRB, 2020 WL 3035781, at *3 (N.D. Cal. June 5, 2020) (citing *Nken*, 556

9   U.S. at 434).   NSO has not attempted to satisfy this standard and cannot do so.

10          ***First***, NSO cannot make a "strong showing" that either of its purported immunities is likely

11   to be found applicable on appeal.  NSO's conduct-based foreign official immunity applies only if

12   the suit would result in "enforc[ing] a rule of law against a foreign state."  Order at 11 (quoting

13   *Lewis*, 918 F.3d at 146).  This Court has held that it is capable of crafting relief that avoids such a

14   result, *see id.* at 12, and it is not apparent on what grounds the Ninth Circuit could disagree with

15   this Court's determination prior to reviewing the terms of a final judgment in this matter.

16   Moreover, as this Court also held, NSO's assertion of a derivative foreign sovereign immunity

17   defense has not been recognized in the Ninth Circuit, "[n]or is it clear that the circuit would do so."

18   *Id.* at 13-14; *cf. Del Campo v. Kennedy*, 517 F.3d 1070, 1074 (9th Cir. 2008) ("For the second time

19   in four years, 'we decline the invitation to expand state sovereign immunity dramatically by

20   extending it to corporate actors,' or to private entities generally." (citation omitted)).

21          ***Second***, NSO cannot demonstrate any irreparable injury that will occur in the absence of a

22   stay.  Indeed, NSO's "burden with regard to irreparable harm is higher than it is on the likelihood

23   of success prong."  *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011).  NSO "must show

24   that an irreparable injury is the more probable or likely outcome," *see id.*, which it cannot do,

25   because discovery will necessarily occur even if NSO *prevails* on its appeal.  Moreover, given that

26   NSO will in any event need to engage in discovery for claims to which its purported immunity

27   defenses do not apply, NSO cannot be irreparably injured by proceeding with all discovery now.

28

1    **Finally**, a stay would impose substantial prejudice to Plaintiffs and would not be in the

2  public interest.  These factors address the "balance of hardships" and where, as here, NSO has

3  failed to show a "strong likelihood of success on the merits," it must demonstrate that the "balance

4  of hardships tips sharply in [its] favor."  *Leiva-Perez*, 640 F.3d at 970.  They do not.  NSO has

5  engaged in surreptitious attacks against WhatsApp and its users, including journalists, human rights

6  activists, and political opponents of repressive regimes.  *See, e.g.*, Compl. ¶¶ 29-43.  A stay of

7  discovery during the pendency of NSO's appeal would unfairly prejudice Plaintiffs' ability to prove

8  their case and protect against unauthorized access to their computers.  *See Blue Cross & Blue*

9  *Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007) ("Delay

10 'inherently increases the risk that witnesses' memories will fade and evidence will become

11 stale.'"); *see also Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989) ("During the appeal

12 memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of

13 litigants in other cases).").  A stay would also undermine the public interest in efficient dispute

14 resolution, as NSO's own cases recognize.  *See Apostol*, 870 F.2d at 1338 (concluding that open-

15 ended stays "injure the legitimate interest of other litigants and the judicial system"); *J.P.*, 2018

16 WL 3845890, at *3 (concluding that the "plaintiff's right to a speedy resolution of his claims will

17 be thwarted" by a stay pending appeal).

18         In sum, NSO could not meet its burden to obtain a discretionary stay even if it had sought

19 one, and thus its motion should be denied for that reason as well.

20                                              **CONCLUSION**

21         For the foregoing reasons, NSO's Motion to Stay should be denied.

22

23

24

25

26

27

28

1

Dated:  August 19, 2020

Respectfully Submitted,

2

DAVIS POLK & WARDWELL LLP

3

4

By:  /s/ Antonio J. Perez-Marques

Greg D. Andres

5

Antonio J. Perez-Marques
Craig T. Cagney

6

(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP

7

450 Lexington Avenue
New York, New York 10017

8

Telephone: (212) 450-4000

9

Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com

10

antonio.perez@davispolk.com
craig.cagney@davispolk.com

11

12

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP

13

1600 El Camino Real
Menlo Park, California 94025

14

Telephone: (650) 752-2000
Facsimile:  (650) 752-2111

15

Email: micah.block@davispolk.com

16

*Attorneys for Plaintiffs WhatsApp Inc. and*

17

*Facebook, Inc.*

18

19

20

21

22

23

24

25

26

27

28

12