JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
 acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:    (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY OF DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S IN SUPPORT OF MOTION FOR ENTRY OF PROTECTIVE ORDER**<br><br>*[Filed Concurrently with [Proposed] Order]*<br><br>Date:    September 9, 2020<br>Time:    9:00 a.m.<br>Ctrm:    3<br>Judge:   Hon. Phyllis J. Hamilton<br><br>Action Filed:   10/29/2019 |

## I.   INTRODUCTION

The Court should enter an interim protective order because (1) a protective order is urgently needed to allow Defendants to disclose very important information to the Court and Plaintiff's outside counsel, including information that bears directly on Plaintiffs' Motion to Compel Discovery [Dkt No. 116]; and (2) while Defendants thought they had reached agreement last week on a "comprehensive" stipulated protective order with Plaintiffs, as of now the parties are unable to reach agreement as to the export control law language in a stipulated protective order, which is of paramount importance to this case because the technology at issue in this case is subject to Israel's Defense Export Control Law ("DECL").  Until the parties can reach agreement about the export control language in a comprehensive protective order (or reach an impasse and present their dispute to the Court for resolution and obtain a ruling), Defendants are unable to be disclose information about certain recent developments to the Court and to Plaintiffs' outside counsel.  A protective order is urgently needed.  Understanding this need, Plaintiffs seek to use it as leverage to try to force Defendants to agree to a number of onerous requirements well beyond those contemplated in the court's model protective order, as it relates to export control.

Plaintiffs' complaints that Defendants' proposed protective order is missing certain terms from the model order is ironic and disingenuous, given that, on July 31, 2020, Defendants first asked Plaintiffs to agree to enter the model protective order *in its entirety* as an interim measure. Plaintiffs' counsel flatly rejected the notion of a "20-page interim protective order" and asked Defendants' counsel to present something more streamlined, (which Defendants then did, and which Plaintiffs subsequently refused even to discuss).  Nonetheless, Defendants have attached to this reply brief a new [Proposed] Protective Order that adds to the version submitted by Defendants concurrently with their motion [Dkt. No. 114] the terms from the model protective order Plaintiffs identify in their Opposition as missing from Defendants' proposal.  The only exception is that Defendants must ask the Court to preclude the disclosure of information designated as Highly Confidential—Attorney's Eyes Only to any persons other than the Court and Plaintiffs' outside counsel (such as in house counsel, experts, vendors and staff) except as agreed by the parties, so

that Defendants may comply with their legal obligations in the present unique situation.

## II.   ARGUMENT

### A. Defendants Attempted to Meet and Confer with Plaintiffs; Plaintiffs Refused to Discuss the Substance of the Interim Protective Order

On Friday, July 31, 2020, Defendants' counsel explained the urgent need for an interim protective order to Plaintiffs' counsel and whether Plaintiffs would agree to enter the model order in its entirety on an interim basis. (Akro. Decl. [Dkt. No. 115-1] ¶ 5). Plaintiffs' counsel refused, on the grounds that they were not interested in reviewing a 20-page interim protective order and presenting it to Plaintiffs. (*Id.*) Defendants' counsel then suggested entering into a simplified version of the model protective order until the parties could reach agreement on a more comprehensive order, and Plaintiffs' counsel agreed that might be workable as a concept. (*Id.* ¶ 6). Later that same day, Defendants' counsel sent Plaintiffs substantially the same Proposed Protective Order Defendants attached to their Motion. (*Id.*)

On Monday, August 3, Plaintiffs' counsel informed Defendants that they were not interested in discussing Plaintiffs' proposal for an interim protective order or any of the terms thereof, nor were they willing to agree to have this Motion heard on shortened time. (*Id.* ¶ 7). Plaintiffs claim that "the Parties did not discuss NSO's new proposed protective order in any meaningful detail." (Opp. at 2:20-21). This is true, because *Plaintiffs refused to do so.* (Akro Decl. ¶ 7.) In that same August 3 telephone conference, Defendants' counsel then conferred with Plaintiffs' counsel about the comprehensive protective order for 75 minutes. Immediately thereafter, Defendants' counsel took stock of the parties' positions and subsequently prepared and filed this Motion. (*Id.*) Plaintiffs' counsel's declaration omits certain of the events set forth above (namely the offer by Defendants to enter the model protective order in its entirety), but does not dispute or contradict any of them. In short, Defendants have more than complied with their meet and confer obligations under Local Rule 37-1.

### B. A Protective Order is Urgently Needed, and it is Uncertain When Parties Will Reach Agreement on a Comprehensive Protective Order

As Defendants have explained in the Motion and several other filings, they are in possession of information that is of great importance to the Court and Plaintiffs in the orderly management of the case and the parties' litigation of it.  Without a protective order in place precluding Plaintiffs' outside counsel from disseminating this information, Defendants cannot share the information without violating other legal obligations.  Plaintiffs take Defendants to task for not identifying those legal obligations [Opp. at 3:7].  Unfortunately, the same legal obligations that prevent Defendants from disclosing the substantive information in the absence of a protective order also prevent Defendants from identifying those legal obligations or the nature or source thereof.  Without a protective order in place, Defendants will be unable to present to the Court and to Plaintiffs' outside counsel important information bearing on the entire litigation, and particularly on Plaintiffs' Motion to Compel Discovery from Defendants [Dkt. No. 116].

Defendants have been trying to secure entry of a comprehensive protective order for more than a month.  The parties have exchanged a number of drafts and made compromises including Defendants' agreement to a number of terms not found in the Court's model order.[1]  In fact, on the very day that Plaintiffs filed their Opposition to this Motion, Defendants believed that the two sides had reached agreement on a comprehensive protective order.  Plaintiffs sent a "revised proposal" to Defendants on Sunday, August 16, to which Defendants' counsel indicated their approval on August 17, 2020 (but asked a question to confirm Plaintiffs' understanding of where source code would be made available for inspection) (Block Decl. Exh. F at 2 (Dkt. No. 123-7 at 3 of 8)).[2]  Two hours later, Plaintiffs' counsel sent to Defendants' counsel "a few *further* revisions

---

[1] For example, on August 11, undersigned counsel wrote to Plaintiffs' counsel:

> Our responsive comments are attached. Let us know when you would like to discuss them. There are about three instances where there is not ground to give. So, we could have a discussion about alternative language, but if the concepts are unacceptable, then we should just ask the court to decide. I think in each of these cases, defendants are in favor of the model order language.

(Block Decl. Exh. F at 4 (Dkt. No. 123-7 at 5 of 8).)

[2] Indicating their willingness to accept Facebook's proposal and to provide information pursuant to what was understood to be an agreed-upon protective order, counsel for Defendants even asked whether Plaintiffs would agree that the parties could treat the protective order as being in effect

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR
ENTRY OF A PROTECTIVE ORDER

3

Case No. 4:19-cv-07123-PJH

to 14.3," (*Id.* Exh. F at 2 (Dkt. No. 123-7 at 3 of 8) (emphasis added)), the protective order's "Export Control" provisions. (*Id.* Exh. G.) These "further revisions" impose substantial additional burdens on a producing party relating to the export of technical data and create a breeding ground for discovery disputes to be resolved by the Court. (Block Decl. Exh. G at 23 (Dkt. No. 123-8 at 24 of 28) (inserting additional disputable standards such as identifying controlled technical data "with particularity," requiring a log listing "each such piece of technical data on a document-by-document or similar basis," and two separate "reasonable efforts" requirements for Defendants' prosecution of export license applications in Israel and "cooperat[ing] with" as-yet unknown "foreign counsel" to be engaged by Plaintiffs and disclosing "Protected Material" to that counsel.)

Since Plaintiffs' August 17 regressive bargaining on the export control provision, the parties have been trying to reach a compromise. At this point, however, it is uncertain whether the parties will be able to reach a comprehensive agreement, and, if they can, whether it can be reached in time to permit Defendants to be fully forthcoming in their opposition to Plaintiffs' Motion to Compel, the opposition to which is due September 2. The parties may have to submit their competing proposals as to the language of section 14.3 (Export Control) of a comprehensive protective order to the Court. For these reasons, good cause exists for entry of an interim protective order, until that dispute can be resolved by the parties or presented to the Court.

C. <u>Plaintiffs' Complaints About Omissions From Defendants' Proposed Protective Order are Ironic, but Defendants have Revised their Proposed Protective Order to Address Those Concerns</u>

Plaintiffs devote much of the Opposition to bemoaning of the fact that Defendants' proposed interim protective order omits certain provisions from the model protective order, namely, language from paragraphs 3, 5.1, 7.2, 7.3 and 11. Defendants' first proposal for an interim protective order was the model order in its entirety, however, which Plaintiffs categorically refused. (Akro. Decl. ¶ 5.) Next, Defendants sent to Plaintiffs substantially the version attached

---

between time it is submitted to the Court and the Court's entry of it. (Block Decl. Exh. F at 2 (Dkt. No. 123-7 at 3 of 8).)

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR
ENTRY OF A PROTECTIVE ORDER

4

Case No. 4:19-cv-07123-PJH

to their motion, and Plaintiffs refused to discuss it. (Akro Decl. ¶¶ 6-7.) Considering this chronology of events, the Court should view with skepticism Plaintiffs' complaints about the absence of certain model order provisions in Defendants' proposed order.

Notwithstanding the irony of Plaintiffs' protestations, Defendants are attaching as Exhibit A to this reply a [Revised Proposed] Protective Order that addresses all of Plaintiffs' concerns, with the exception of paragraph 7.3. Defendants' new information cannot be legally shared with persons other than the Court, Plaintiffs' outside counsel, and certain, specific senior Facebook executives. The omissions from paragraph 7.3 in Defendants' two proposed orders comport with Defendants' legal obligations. Exhibit A hereto includes the complete model order language from paragraphs 3, 5.1, 7.2 and 11 of the model protective order and thus should address the concerns Plaintiffs raise in their Opposition.

### III. CONCLUSION

For the foregoing reasons, Defendants ask the Court to grant their motion and enter the [Revised Proposed] Protective Order attached hereto as Exhibit A.

DATED: August 24, 2020

KING & SPALDING LLP

By: /s/ *Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED