1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
      *jakro@kslaw.com*
2   AARON S. CRAIG (Bar No. 204741)
      *acraig@kslaw.com*
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone:    (213) 443-4355
5   Facsimile:     (213) 443-4310

6   Attorneys for Defendants NSO GROUP TECHNOLOGIES
    LIMITED and Q CYBER TECHNOLOGIES LIMITED

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

11   WHATSAPP INC., a Delaware corporation,        Case No. 4:19-cv-07123-PJH
     and FACEBOOK, INC., a Delaware
12   corporation,                                  **OPPOSITION OF DEFENDANTS NSO
                                                   GROUP TECHNOLOGIES LIMITED
13                     Plaintiffs,                 AND Q CYBER TECHNOLOGIES
                                                   LIMITED TO PLAINTIFFS' MOTION TO
14          v.                                     COMPEL [DKT NO. 116]**

15   NSO GROUP TECHNOLOGIES LIMITED                **REDACTED VERSION OF DOCUMENT
     and Q CYBER TECHNOLOGIES LIMITED,             SOUGHT TO BE SEALED**
16
                      Defendants.                  *[Filed Concurrently with Declaration of
17                                                 Joseph N. Akrotirianakis and [Proposed]
                                                   Order]*
18
                                                   Date:    None Set
19                                                 Ctrm:    3
                                                   Judge:   Hon. Phyllis J. Hamilton
20

21                                                 Action Filed:   10/29/2019

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

ARGUMENT ..................................................................................................................... 5

I.     PLAINTIFFS CANNOT ASK THIS COURT TO COMPEL THE PRODUCTION OF ANY DISCOVERY ........................................................ 5

II.    NSO'S INTERLOCUTORY APPEAL AUTOMATICALLY STAYS DISCOVERY ................................................................................ 7

     A.     NSO Claims Immunity from Suit, Not Just Immunity from Liability .................................................................................... 8

     B.     Plaintiffs' Discovery Is Related to the Foreign Sovereign Immunity Defense Raised in NSO's Appeal .................................... 10

III.    PLAINTIFFS' REQUESTS ARE OVERBROAD BECAUSE DISCOVERY UNRELATED TO PEGASUS AND THE ALLEGED 1,400 "TARGET USERS" IS IRRELEVANT TO PLAINTIFFS' CLAIMS AND DISPROPORTIONATE TO THE NEEDS OF THE CASE .............................................................................. 13

     A.     Plaintiffs' Requests Seek Irrelevant Information ............................. 14

     B.     Plaintiffs' Requests Are Disproportionate to the Needs of the Case ............................................................................................ 18

CONCLUSION ................................................................................................................ 18

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Andrade Rio v. Beard*,
   2019 WL 4127206 (E.D. Cal. Aug. 30, 2019)........................................................................12

5

*Behnke v. State Farm Gen. Ins. Co.*,
   196 Cal. App. 4th 1443 (2011) ..............................................................................................13

6

7

*BenQ Am. Corp. v. Forward Elec. Co.*,
   2005 WL 3445629 (N.D. Cal. Dec. 15, 2005)........................................................................14

8

9

*Bluestone Innovations LLC v. LG Elecs. Inc.*,
   2013 WL 6354419 (N.D. Cal. Dec. 5, 2013)..........................................................................14

10

*Breazeale v. Victim Servs., Inc.*,
   2015 WL 13687730 (N.D. Cal. Sept. 14, 2015) .....................................................................12

11

12

*Campbell Ewald-Co. v. Gomez*,
   136 S. Ct. 663 (2016).............................................................................................................10

13

14

*Cholakyan v. Mercedes-Benz USA, LLC*,
   2012 WL 12878362 (C.D. Cal. Apr. 3, 2012) .........................................................................6

15

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
   2020 WL 403722 (D. Or. Jan. 24, 2020) ...............................................................................12

16

17

*Compania Mexicana de Aviacion, S.A. v. U.S. Dist. Ct.*,
   859 F.2d 1354 (9th Cir 1988) .................................................................................................7

18

19

*Costella v. Clark*,
   2009 WL 4730856 (N.D. Cal. Dec. 7, 2009).........................................................................14

20

*Craiglist, Inc. v. Naturemarket, Inc.*
   694 F. Supp. 2d 1039 (N.D. Cal. 2010) .................................................................................12

21

22

*DC Comics v. Pac. Pictures Corp.*,
   706 F.3d 1009 (9th Cir. 2013) .................................................................................................9

23

24

*Del Campo v. Kennedy*,
   517 F.3d 1070 (9th Cir. 2008) ............................................................................................9, 10

25

*Doğan v. Barak*,
   932 F.3d 888 (9th Cir. 2019) ..................................................................................................8

26

27

*In re Estate of Connors*,
   6 F.3d 656 (9th Cir. 1993) ................................................................................................7, 10

28

*Fosselman v. Evans*,
    2011 WL 939616 (N.D. Cal. Mar. 15, 2011)....................................................................6

*Habyarimana v. Kagame*,
    696 F.3d 1029 (10th Cir. 2012) .......................................................................................8

*Hernandez v. City of San Jose*,
    2017 WL 2081236 (N.D. Cal. May 15, 2017) ................................................................10

*Hmong I v. Lao People's Dem. Rep.*,
    2016 WL 2901562 (E.D. Cal. May 17, 2016) ..................................................................8

*Lewis v. Mutond*,
    918 F.3d 142 (D.C. Cir. 2019)......................................................................................8, 9

*M.G. v. Metro. Interpreters & Translators, Inc.*,
    2013 WL 690833 (S.D. Cal. Feb. 26, 2013) ....................................................................7

*Mamani v. Beerzain*,
    654 F.3d 1148 (11th Cir. 2011) .......................................................................................8

*Manuf. Automation & Software Sys., Inc. v. Hughes*,
    2017 WL 5641120 (C.D. Cal. Sept. 21, 2017) .........................................................15, 16

*Martin v. Halliburton*,
    618 F.3d 476 (5th Cir. 2010) .........................................................................................10

*Matar v. Dichter*,
    563 F.3d 9 (2d Cir. 2009) ................................................................................................8

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007) .......................................................................................18

*Microsoft Corp. v. Commonwealth Scientific & Indus. Research Org.*,
    2005 WL 8165886 (N.D. Cal. Nov. 14, 2005) .................................................................7

*Mireskandari v. Mayne*,
    2016 WL 1165896 (C.D. Cal. Mar. 23, 2016)..................................................................8

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
    899 F.3d 1081 (9th Cir. 2018) .........................................................................................7

*Pearson v. Callahan*,
    555 U.S. 223 (2009)........................................................................................................10

*Quiroz v. Praetorian Ins. Co.*,
    2014 WL 3845418 (N.D. Cal. Aug. 5, 2014) .................................................................14

*Risto v. Screen Actors Guild-Am. Fed'n of Television & Radio Artists*,
    2020 WL 2225376 (C.D. Cal. Jan. 8, 2020) ..................................................................14

*Rivera v. NIBCO, Inc.*,
    364 F.3d 1057 (9th Cir. 2004) ...................................................................13

*Savage v. Glendale Union High Sch., Dist. No. 205*,
    343 F.3d 1036 (9th Cir. 2003) ...................................................................11

*Siegert v. Gilley*,
    500 U.S. 226 (1991) ...................................................................................10

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989) .....................................................................11

*In re Subpoenas to Multimedia Over Coax Alliance*,
    2016 WL 5942302 (N.D. Cal. Oct. 13, 2016) ..............................................6

*Takiguchi v. MRI Int'l, Inc.*,
    2016 WL 614393 ...........................................................................................7

*TIBCO Software Inc. v. GAIN Cap. Grp., LLC*,
    2018 WL 4176622 (N.D. Cal. Aug. 31, 2018) ...........................................16

*Turner v. Rupf*,
    2010 WL 889859 (N.D. Cal. Mar. 9, 2010) ...............................................10

*United States v. Friedman*,
    593 F.2d 109 (9th Cir. 1979) .......................................................................7

*United States v. Mageno*,
    762 F.3d 933 (9th Cir. 2014) .....................................................................12

*J.P. ex rel. Villanueva v. Cty. of Alameda*,
    2018 WL 3845890 (N.D. Cal. Aug. 13, 2018) ...........................................10

*In re World Trade Ctr. Disaster Site Litig.*,
    521 F.3d 169 (2d Cir. 2008)..........................................................................9

**Statutes and Rules**

18 U.S.C. § 1030(g) .........................................................................................12

Cal. Penal Code § 502(e)(1)........................................................................12, 13

Civ. L.R. 37-1(a) ................................................................................................6

Fed. R. Civ. P. 26(b)(1).........................................................................14, 15, 18

**Other Authorities**

Ed Conway, *Facebook Currency Will Help It Rule the World*, The Times (June
    21, 2019), https://www.thetimes.co.uk/article/facebook-currency-will-help-it-
    rule-the-world-5ttrsbm0k ..............................................................................1

FTC, *FTC Imposes $5 Billion Penalty and Sweeping New Privacy Restrictions on Facebook* (July 24, 2019), https://www.ftc.gov/news-events/press-releases/2019/07/ftc-imposes-5-billion-penalty-sweeping-new-privacy-restrictions ................................................................................................................2

John Buni, *Mark Zuckerberg's 'New Rules' for the Internet Happen to Benefit Facebook*, The Next Web (July 10, 2019), https://thenextweb.com/podium/2019/07/10/mark-zuckerbergs-new-rules-for-the-internet-happen-to-benefit-facebook/ ...............................................................................1

Sara Morrison, *Facebook's Sad Summer Continues with a $650 Million Settlement*, Vox (July 23, 2020), https://www.vox.com/recode/2020/7/23/21335806/facebook-settlement-illinois-facial-recognition-photo-tagging. .................................................................2

1

**INTRODUCTION**

2    Facebook asks this Court to bless a fishing expedition designed not to advance Plaintiffs'

3  claims in this lawsuit but to harm Defendants NSO Group Technologies Limited and Q Cyber

4  Technologies Limited (collectively, "NSO") by burying them in costly, irrelevant, unjustified

5  discovery.  The Court should reject Plaintiffs' request.

6    NSO is a foreign company that exports technology controlled by extensive Israeli

7  regulation, subjected to close governmental oversight, and used solely by foreign governments in

8  foreign countries. NSO sells the technology only to government agencies that commit to use it

9  only for the lawful investigation and prevention of crime and terrorism, and NSO designs the

10  technology so that it *does not work* if customers try to use it in the United States.[1]

11    In contrast, Plaintiffs' business model depends, in part, on protecting from exposure

12  criminals and terrorists who use Plaintiffs' encrypted messaging services to victimize innocent

13  people.  Plaintiffs' business model also depends on wielding their endless resources as a weapon

14  to obtain monopolistic control over personal communications worldwide.  Their ultimate goal is

15  to position Facebook as a nation unto itself, immune from all regulation and unchecked by any

16  government or competitor.[2]  Plaintiffs see NSO as a threat to this business model.  Indeed, NSO

17  exists, in part, because Facebook devotes untold resources to its goal of defeating the investigative

18  capacities of most governments. Now, Plaintiffs aim to overwhelm NSO with devastating litigation

19

20

21    [1] NSO's technology may not be used to conduct surveillance in the United States or against
    Americans overseas.  Moreover, the technology *does not work* within the geographical bounds of
22    the United States, nor does it work against U.S. telephone numbers anywhere in the world.  (Dkt.
    No. 45-11 (Hulio Decl.) at ¶ 13.)
23
    [2] *See, e.g.,* Ed Conway, *Facebook Currency Will Help It Rule the World*, The Times (June 21,
24    2019),          https://www.thetimes.co.uk/article/facebook-currency-will-help-it-rule-the-world-
    5ttrsbm0k (quoting Facebook CEO Mark Zuckerberg admitting, "In a lot of ways, Facebook is
25    more like a government than a traditional company"); John Buni, *Mark Zuckerberg's 'New Rules'*
    *for the Internet Happen to Benefit Facebook*, The Next Web (July 10, 2019),
26    https://thenextweb.com/podium/2019/07/10/mark-zuckerbergs-new-rules-for-the-internet-
27    happen-to-benefit-facebook/ (noting that Facebook's "move to privacy . . . was clothed in the
    language of contrition, openness, and respect. But it was ultimately a way for Facebook to relieve
28    itself of the responsibility of policing what takes place in private messages and groups.").

costs while seeking to hold NSO liable for national-security operations of sovereign governments.[3]

Plaintiffs' First Requests for Production ("RFPs") are one salvo in their warfare-through-litigation against NSO. Those RFPs seek confidential business information about all of NSO's proprietary technology, as well as information about governmental national-security operations subject to regulations governing classified information under both Israeli law and that of NSO's sovereign clients. Most of that information has no relevance to the claims in Plaintiffs' complaint; the RFPs do not relate to the claims and are not designed to advance them. Instead, they serve the improper purposes of exposing NSO to unjustified litigation burdens and carrying out a fishing expedition not sanctioned by the Federal Rules of Civil Procedure.

NSO has a right to immunity from those burdens, unless and until the Court of Appeals rules otherwise. Although this Court denied NSO's motion to dismiss Plaintiffs' claims on the basis of foreign sovereign immunity, NSO's interlocutory appeal stays all proceedings that would impose litigation burdens on NSO. In that appeal, which Plaintiffs do not contend is frivolous or otherwise improper, NSO will ask the Ninth Circuit to hold that it is totally immune from suit. The appeal stays all proceedings in this Court related to the issues on appeal. Until the appeal is resolved, therefore, discovery is stayed.

Even if discovery were not stayed, Plaintiffs' RFPs far exceed the permissible scope of discovery permitted by the Federal Rules. All of Plaintiffs' claims relate to a single past allegation: the alleged use of a particular technology to access 1,400 WhatsApp users' devices between April and May 2019. Plaintiffs claim Pegasus was used to access 1,400 users' devices through

---

[3] Facebook does so while itself flouting the law and its legal obligations. In July 2019, Facebook paid the Federal Trade Commission a $5 *billion* penalty for violating a 2012 FTC order by "deceiving users" about the privacy of their data. FTC, *FTC Imposes $5 Billion Penalty and Sweeping New Privacy Restrictions on Facebook* (July 24, 2019), https://www.ftc.gov/news-events/press-releases/2019/07/ftc-imposes-5-billion-penalty-sweeping-new-privacy-restrictions. That penalty "is the largest ever imposed on any company for violating consumers' privacy." *Id.* In addition, Facebook recently agreed to pay $650 million to settle Illinois Facebook users' claims that it illegally collected their biometric data through facial recognition software. *See* Sara Morrison, *Facebook's Sad Summer Continues with a $650 Million Settlement*, Vox (July 23, 2020), https://www.vox.com/recode/2020/7/23/21335806/facebook-settlement-illinois-facial-recognition-photo-tagging.

WhatsApp during a 12-day period from April 29 to May 10, 2019.  (Compl. ¶ 42.)  And Plaintiffs assert they closed the WhatsApp "vulnerability" almost 16 months ago, around May 13, 2019. (Compl. ¶ 44.)  Accordingly, only information related to the aspects of Pegasus that were allegedly used to access the 1,400 targeted users' devices is relevant to Plaintiffs' claims.  But Plaintiffs seek mountains of evidence related to technologies other than that allegedly deployed against the 1,400 "Target Users" described in the Complaint.  Plaintiffs seek discovery related to all of NSO's other technology and business operations, none of which has anything to do with the claims in the Complaint (let alone being "reasonably related" to those claims or proportional to the needs of a case about them).  The evidence Plaintiffs seek to compel is irrelevant and disproportionate to Plaintiffs' claims.

Because discovery is stayed and Plaintiffs' RFPs are overbroad, the Court should deny Plaintiffs' motion.  But even if the Court were to agree with Plaintiffs' contrary arguments, that would still not justify compelling the production of any materials.  Plaintiffs' motion challenges only two of the multiple objections NSO has raised to Plaintiffs' improper RFPs.  Plaintiffs do not ask this Court to overrule NSO's other objections, which they acknowledge NSO may continue to advance as a basis for withholding discovery. ███████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ So even if the Court were to overrule the two objections challenged in Plaintiffs' motion, there is still no basis to order NSO to produce discovery of any kind.

The motion to compel should therefore be denied on the additional ground that it is premature.

## BACKGROUND

In this lawsuit, Plaintiffs allege that "[b]etween in and around April 2019 and May 2019, Defendants used WhatsApp servers . . . to send malware to approximately 1,400 mobile phones and devices ('Target Devices')."  (Compl. ¶ 1; *see* Dkt. No. 111 at 1.)  As this Court explained, Plaintiffs "allege that [NSO] created a data program, termed Pegasus," to access the Target Devices.  (Dkt. No. 111 at 2–3; *see* Compl. ¶¶ 24–43.)  Plaintiffs allege that someone accessed the

1,400 Target Devices "[b]etween April 29, 2019 and May 10, 2019."  (Dkt. No. 111 at 4 (citing Compl. ¶ 42).)  Plaintiffs closed the vulnerability allegedly exploited by Pegasus "around" May 13, 2019.  (*Id.* (citing Compl. ¶ 44).)

Plaintiffs do not identify any other NSO technology that has been or could be used against Plaintiffs.  Nor do they allege NSO has done anything to injure Plaintiffs other than allegedly designing Pegasus and allowing it to be used against the 1,400 Target Devices for twelve days more than one year ago.

NSO filed its motion to dismiss on April 2, 2020.  (Dkt. No. 45.)  In that motion, NSO explained that Plaintiffs' allegations are false.  (*E.g.*, Dkt. No. 45 at 6–7.)  NSO does not operate its technology.  (*Id.*)  Instead, NSO sells its technology to foreign government agencies for use in those governments' lawful national-security and law-enforcement operations.  (*Id.*)  NSO submitted affidavits explaining its business model and making clear that foreign sovereigns control the use of Pegasus for surveillance.  (*E.g.*, Dkt. No.45-11)  Based on this evidence, NSO contends that it is immune from suit under foreign sovereign immunity.  (Dkt. No. 45 at 8–10.)  On that basis (among others), NSO moved to dismiss the Complaint.  (*Id.*)

Plaintiffs did not submit any evidence to contradict NSO's evidence about its operations. As this Court found, Plaintiffs did "not contest that defendants are agents of foreign governments." (Dkt. No. 111 at 11.)  Nor did Plaintiffs contend "that [NSO] w[as] acting outside the scope of [its] contracts with [its] customers" or argue that NSO "operated outside [its] official capacity."  (*Id.*) When this Court denied NSO's motion to dismiss on the basis of foreign sovereign immunity (Dkt. No. 111 at 9–15), NSO filed an interlocutory appeal.  (Dkt. No. 112.)

While NSO's motion to dismiss was pending, Plaintiffs served their RFPs on June 4, 2020. (Perez-Marques Decl., Exh. A.)  The RFPs are expansive, seeking (among other things) broad evidence related to "any computer code, program, malware, exploit, and/or remote access tool . . . developed, marketed, sold, distributed, operated, maintained, or used" by NSO, and all "computers and servers . . . that NSO or its customers targeted."  (*Id.* at 3.)

Plaintiffs did not limit their requests to the technology at issue in the Complaint or the 1,400 Target Devices, and thus did not limit the requests to information relevant to their claims.

1    NSO objected to the RFPs on that basis, as well as because its interlocutory appeal automatically

2    stays discovery.  (Perez-Marques Decl, Exh. B.)  NSO also raised other objections to Plaintiffs'

3    RFPs, none of which are at issue in Plaintiffs' motion to compel.  (Mot. 5 n.4.)

4          Between June 30, 2020, and August 3, 2020, counsel for the parties met and conferred over

5    Plaintiffs' RFPs.  (Perez-Marques Decl. ¶¶ 6–12; Akro. Decl. ¶ 14.)  During those conferences,

6    Plaintiffs' counsel focused exclusively on what Plaintiffs assert are NSO's  "threshold" objections:

7    that discovery was stayed and that the RFPs improperly sought evidence unrelated to Pegasus or

8    the 1,400 Target Users. (Akro. Decl. ¶ 15; Perez-Marques Decl. ¶¶ 6, 11.) Plaintiffs' counsel never

9    sought to meet and confer over NSO's other objections.  (Akro. Decl. ¶ 15.)  Nonetheless, during

10   the parties' final conference on August 3, 2020, counsel for NSO offered to discuss NSO's other

11   objections.  (*Id.*)  Surprisingly, Plaintiffs' counsel refused to discuss those objections.  (*Id.*)

12         On August 5, 2020, Plaintiffs filed their motion to compel.

## ARGUMENT

### I.    PLAINTIFFS CANNOT ASK THIS COURT TO COMPEL THE PRODUCTION OF ANY DISCOVERY

16         Plaintiffs' motion is not really a motion to compel; it cannot properly ask this Court to

17   compel anything because it is premature.  The motion addresses only two "threshold" objections

18   (Plaintiffs' term) NSO has raised to Plaintiffs' RFPs.  (Mot. 1.)  Plaintiffs concede that NSO has

19   raised multiple other objections, and Plaintiffs do not ask this Court to overrule any of them.  (Mot.

20   5 n.4.)  Nor could they, since they refused to meet and confer with NSO over those objections.

21         During the parties' conferencing of counsel, NSO's counsel asked to discuss all of NSO's

22   objections.  (Akro. Decl. ¶ 15.)  Despite this request and the clear language of Local Rule 37-1(a),

23   Plaintiffs' counsel refused, taking the surprising position that conferring about Defendants' other

24   objections would not be "productive" until after this Court addressed the two objections discussed

25   in Plaintiffs' motion.  (*Id.*)[4]

26

27   [4] If Plaintiffs are "unclear" over "whether NSO intends to stand on these objections" (Mot. 5 n.4), that is due to Plaintiffs' counsel's refusal to discuss them with NSO's counsel.  For the avoidance

28   of doubt, Defendants have not withdrawn any of their objections and continue to assert them.

1    Under the Court's Local Rules, having refused to meet and confer over all of NSO's

2  objections, Plaintiffs cannot challenge the objections in their motion.  Civ. L.R. 37-1(a) ("The

3  Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless

4  . . . counsel have previously conferred for the purpose of attempting to resolve *all* disputed issues."

5  (emphasis added)); *Fosselman v. Evans*, 2011 WL 939616, at *2 (N.D. Cal. Mar. 15, 2011)

6  (Hamilton, J.) (denying motion to compel for failure to meet and confer); *In re Subpoenas to*

7  *Multimedia Over Coax Alliance*, 2016 WL 5942302, at *2 (N.D. Cal. Oct. 13, 2016) (same).

8    The most Plaintiffs can ask this Court to do, therefore, is overrule the two objections

9  challenged in their motion.  *See Cholakyan v. Mercedes-Benz USA, LLC*, 2012 WL 12878362, at

10  *1 n.5 (C.D. Cal. Apr. 3, 2012) (denying "relief not requested in Plaintiff's motion").  Even if the

11  Court were to overrule those two objections—which, for the reasons below, it should not do—

12  there would be no basis to grant the relief Facebook has requested: to "order NSO to proceed with

13  collecting and producing without delay *all* documents responsive to Plaintiffs' First Requests for

14  Production of Documents."  (Mot. 20.)  Defendants continue to assert their other objections, which

15  Plaintiffs do not ask this Court to overrule. (Mot. 5 n.4.)

1

2

3

4          Accordingly, the only relief Plaintiffs can seek is an order (1) overruling the two objections

5   addressed in their motion and (2) instructing the parties to meet and confer over NSO's other

6   objections.  *See* Dkt. No. 120 at 3 ("suggest[ing]" the "parties continue to meet and confer" about

7   discovery).  In no event would Plaintiffs be entitled to an order compelling NSO to produce any

8   discovery.

9   **II.     NSO'S INTERLOCUTORY APPEAL AUTOMATICALLY STAYS DISCOVERY**

10          As NSO noted in its motion for a stay pending appeal (Dkt. No. 117), the interlocutory

11  appeal of this Court's order denying NSO sovereign immunity automatically stays all proceedings

12  related to the issues on appeal.  *In re Estate of Connors*, 6 F.3d 656, 658 (9th Cir. 1993).[5]  Because

13  foreign sovereign immunity "is an immunity from suit," *Compania Mexicana de Aviacion, S.A. v.*

14  *U.S. Dist. Ct.*, 859 F.2d 1354, 1358 (9th Cir 1988), the appeal shields NSO from any proceedings

15  that impose any "burdens of litigation," *M.G. v. Metro. Interpreters & Translators, Inc.*, 2013 WL

16  690833, at *1 (S.D. Cal. Feb. 26, 2013).  Being forced to participate in discovery involves burdens

17  of litigation.  *See Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1094

18  (9th Cir. 2018) (holding foreign sovereign immunity includes "immunity from discovery").

19  Accordingly, NSO's interlocutory appeal automatically stays discovery in this case. *Microsoft*

20  *Corp.*, 2005 WL 8165886, at *2 ("[T]he denial of a motion to dismiss for foreign sovereign

21  immunity is an immediately appealable collateral order . . . .  [U]pon the filing of a notice of appeal,

22  the district court is divested of jurisdiction over the case, pending the appellate court's resolution

23  of the appeal.").

24          Plaintiffs concede that NSO's appeal automatically stays proceedings related to the issues

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [5] The only exception is if the Court "issues a written certification that the appeal is frivolous or has
27  been waived."  *Microsoft Corp. v. Commonwealth Scientific & Indus. Research Org.*, 2005 WL
    8165886, at *2 (N.D. Cal. Nov. 14, 2005).  Plaintiffs have conceded that NSO's appeal is not
28  frivolous, nor has it been waived.  (Dkt. No. 125 at 8 n.8.)

on appeal.  (Mot. 8.)  But they mistakenly argue that NSO's sovereign immunity defense does not stay discovery because it is only an immunity from liability, and they wrongly contend that the discovery they seek is unrelated to the appeal.  Both arguments are misguided.

### A.   NSO Claims Immunity from Suit, Not Just Immunity from Liability

As Plaintiffs acknowledge, this Court's order from which NSO appeals addressed two kinds of foreign sovereign immunity: "conduct-based foreign official immunity" and "derivative foreign sovereign immunity."  (Mot. 11–12.)  In the Ninth Circuit, both of these forms of immunity are immunity from *suit*, not merely immunity from liability.

1.  The Ninth Circuit has expressly held that "common law foreign official immunity" is "an immunity from *suit* rather than a mere defense to *liability*."  *Doğan v. Barak*, 932 F.3d 888, 895 (9th Cir. 2019) (internal quotation marks omitted).  Burying that inconvenient fact in a footnote, Plaintiffs note *Doğan* quotes from a case involving the FSIA.  (Mot. 12 n.10.)  But the nature of the prior case is irrelevant.  Whatever case *Doğan* quoted, it *describes* common-law conduct-based immunity, the immunity at issue in the case.  932 F.3d at 894–95.  The *Doğan* court rejected the plaintiffs' argument for denying the defendant immunity because the argument would "effectively extinguish the common law doctrine of foreign official immunity," the "whole point" of which is "immunity from *suit*."  *Id.* at 895.

Other federal circuits and district courts within the Ninth Circuit have also held that common-law foreign sovereign immunity is an immunity from suit.  *See Habyarimana v. Kagame*, 696 F.3d 1029, 1032 (10th Cir. 2012) (holding defendant "immune from suit" under common-law immunity); *Mamani v. Beerzain*, 654 F.3d 1148, 1151 (11th Cir. 2011) (same) *Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) (same); *Mireskandari v. Mayne*, 2016 WL 1165896, at *18–20 (C.D. Cal. Mar. 23, 2016) (same); *Hmong I v. Lao People's Dem. Rep.*, 2016 WL 2901562, at *9–10 (E.D. Cal. May 17, 2016) (same).

Plaintiffs cite no case holding otherwise.  And although this Court held that common-law sovereign immunity did not apply to NSO (Mot. 11–12; Dkt. No. 111 at 12), it did not reject the proposition that common-law immunity entails immunity from suit.  Nor did the D.C. Circuit in *Lewis v. Mutond*, 918 F.3d 142 (D.C. Cir. 2019), "reject[] the notion that conduct-based foreign

1    official immunity protects foreign officials from discovery." (Mot. 12.)  Rather, the D.C. Circuit

2    held that the officials in *Lewis* were not entitled to immunity at all.  *Lewis*, 918 F.3d at 146–47; *id.*

3    at 148 (Srinivasan, J., concurring).  Contrary to Plaintiffs' misleading description of the case (Mot.

4    12), the court never even mentioned discovery.  *Id.* at 147.  It simply held that foreign officials

5    cannot automatically claim common-law immunity any time litigation would "[t]ak[e] [them]

6    away from their official duties."  *Id.*  The court did not dispute that, when common-law immunity

7    exists, it is an "immunity *from suit[].*"  *Id.* at 145 (emphasis added). Hence the appeal raising

8    conduct-based sovereign immunity precludes the Court from imposing any burdens on NSO.

9        2.  Alternatively, NSO's appeal stays discovery because it raises the defense of derivative

10   sovereign immunity.  A party that is entitled to derivative immunity logically deserves the same

11   protection from suit. In the context of domestic sovereign immunity, the Ninth Circuit's decision

12   in *Del Campo v. Kennedy*, 517 F.3d 1070 (9th Cir. 2008), can only be read as finding that

13   derivative sovereign immunity includes immunity from suit.  The defendant in *Del Campo* was a

14   private contractor for Santa Clara County.  The plaintiff challenged the contractor's work for the

15   county, and the contractor moved to dismiss based on derivative sovereign immunity.  *Id.* at 1073.

16   After the district court denied that motion, the contractor filed an interlocutory appeal.  *Id.* at 1074.

17   The plaintiff moved to dismiss the appeal, arguing that the Ninth Circuit lacked jurisdiction over

18   the appeal.  *Id.*  The Ninth Circuit disagreed on the ground that "[a]ppeals from denial of sovereign

19   immunity" are proper.  *Id.*

20       The Ninth Circuit could only have reached that conclusion if derivative sovereign

21   immunity entails immunity from suit.  As Plaintiffs agree (Mot. 12), "whether an immunity . . .

22   functions 'as an immunity from suit or merely a defense from liability' is dispositive in

23   determining whether an immediate appeal of an order denying an immunity should be available."

24   *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015 (9th Cir. 2013).  If derivative sovereign

25   immunity were not an immunity from suit, the Ninth Circuit could have not entertained the appeal

26   in *Del Campo*.

27       Furthermore, the Second Circuit has squarely held that derivative domestic sovereign

28   immunity entails immunity from suit.  *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169,

192–93 (2d Cir. 2008).  The Fifth Circuit held to the contrary in *Martin v. Halliburton*, 618 F.3d 476, 483–85 (5th Cir. 2010), but its reasoning is unpersuasive in light of *Del Campo* and *In re World Trade Center*.

By Plaintiffs' own analogy between derivative foreign sovereign immunity and derivative domestic sovereign immunity (Mot. 12), then, derivative foreign sovereign immunity includes immunity from suit.  Plaintiffs' citation of *Campbell Ewald-Co. v. Gomez*, 136 S. Ct. 663 (2016), does not prove otherwise.  (Mot. 13.)  *Campbell-Ewald* held that derivative domestic sovereign immunity may not be available in some factual circumstances, 136 S. Ct. at 672, as is also true of qualified immunity, *see, e.g.*, *Turner v. Rupf*, 2010 WL 889859, at *4 (N.D. Cal. Mar. 9, 2010) (denying qualified immunity due to "disputes of fact").  Whether a defendant is qualifiedly immune thus sometimes depends on particular factual circumstances, but it is still unquestionably "'an immunity from suit rather than a mere defense to liability.'"  *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).  Therefore, when a defendant appeals the denial of a motion to dismiss based on qualified immunity, that appeal stays discovery in the district court.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *J.P. ex rel. Villanueva v. Cty. of Alameda*, 2018 WL 3845890, at *2–4 (N.D. Cal. Aug. 13, 2018); *Hernandez v. City of San Jose*, 2017 WL 2081236, at *11–14 (N.D. Cal. May 15, 2017).  The same reasoning applies to foreign sovereign immunity.

## B.  Plaintiffs' Discovery Is Related to the Foreign Sovereign Immunity Defense Raised in NSO's Appeal

Plaintiffs concede they seek discovery related to NSO's foreign sovereign immunity defense.  (Mot. 6.)  That proves that Plaintiffs' requested discovery relates to "aspects of the case involved in the appeal."  *Conners*, 6 F.3d at 658.  NSO's appeal thus stays discovery.

To argue otherwise, Plaintiffs must claim that discovery about NSO's foreign sovereign immunity defense somehow does not relate to NSO's appeal about its foreign sovereign immunity defense.  In support of that illogical assertion, they argue that NSO's appeal seeks only a legal holding that foreign sovereign immunity could theoretically exist depending on what discovery later reveals.  (Mot. 8–9.)  They also argue that NSO's immunity defense does not apply to all of their claims.  (Mot. 13–15.)  Neither argument is correct.

1.   Plaintiffs are wrong in arguing that discovery will be required no matter what the Ninth Circuit decides in NSO's appeal.[6]  On appeal, NSO will argue that the undisputed facts, when analyzed under the proper legal standard, render NSO immune from suit.  If the Ninth Circuit agrees, it will dismiss the complaint without remanding for additional discovery.  *See, e.g.*, *St. Clair v. City of Chico*, 880 F.2d 199, 201–04 (9th Cir. 1989) (dismissing complaint based on factual challenge to subject-matter jurisdiction).  While Plaintiffs are free to argue to the Ninth Circuit that the complaint should not be dismissed without more factual development, they may not supplement the record on appeal or otherwise rebut NSO's undisputed evidence.  *Id.* at 203–04.  If the Ninth Circuit decides that NSO is entitled to immunity based on the undisputed record, that will be the end of the case, and Plaintiffs will not be entitled to discovery.

2.   The Ninth Circuit can dismiss the entire case, because NSO moved to dismiss all of Plaintiffs' claims for lack of subject-matter jurisdiction.  (Dkt. No. 45 at 8–10, 25; Dkt. No. 45-15 ¶ 2; Dkt. No. 62 at 9–11.)  Plaintiffs' opposition to that motion  did not contend that NSO's defense was limited to particular claims, and this Court did not find that NSO asserted its foreign sovereign immunity defense against anything less than all of Plaintiffs' claims.  (Dkt. No. 111 at 9–15.)

NSO's appeal will similarly target the entire complaint.  As it did in this Court, NSO will argue that it is immune from suit on all of Plaintiffs' claims.  Plaintiffs evidently intend to argue that NSO cannot be immune with respect to their claims (Mot. 13), but their arguments go to the merits of NSO's foreign sovereign immunity defense, not to the scope of that defense as asserted

---

[6] NSO's motion to dismiss raises foreign sovereign immunity through a "factual" challenge to the Court's subject-matter jurisdiction. (Dkt. No. 111 at 9); *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  NSO submitted affidavits establishing that it acts entirely for and at the direction of foreign sovereigns, making it immune from suit.  (Dkt. No. 45 at 8–10; Dkt. No. 45-11; Dkt. No. 45-13; Dkt. No. 62 at 1.)  The burden then shifted to Plaintiffs to "furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage*, 343 F.3d at 1039 n.2.

Plaintiffs introduced no evidence to contradict NSO's evidence.  This Court recognized that Plaintiffs did "not contest that [D]efendants are agents of foreign governments," did "not contend that [D]efendants were acting outside the scope of their contracts with their customers," and did not argue that  "[D]efendants operated outside their official capacity."  (Dkt. No. 111 at 11.)

by NSO.  NSO is the "master of [its] appeal."  *United States v. Mageno*, 762 F.3d 933, 941 (9th Cir. 2014), *vacated on other grounds on reh'g*, 786 F.3d 768 (9th Cir. 2015).  And its appeal will challenge all of Plaintiffs' claims.[7]  Accordingly, every claim is at issue on appeal.[8]

Even if Plaintiffs' arguments about the merits of NSO's defense could affect the scope of NSO's appeal, those arguments are mistaken.  For starters, Plaintiffs cannot plausibly assert any claim based solely on NSO's alleged design and marketing of Pegasus.  Plaintiffs identify no section of the CFAA that would prohibit such conduct.  (Mot. 15.)  While they cite section 502(c)(6) of California's CCCDAFA, that section prohibits "providing a means of accessing a computer."  (*Id.* (emphasis added).)  Designing and marketing Pegasus is not *providing* Pegasus to anyone.  As the one case Plaintiffs cite (*id.*) suggests, only the actual *sale* of a product could arguably qualify.  *See Craiglist, Inc. v. Naturemarket, Inc.* 694 F. Supp. 2d 1039, 1057 (N.D. Cal. 2010) (Hamilton, J.) (holding that "use and selling"—not mere marketing—of software could violate section 502(c)(6)).  But NSO's alleged sale of Pegasus was not unlawful, and it occurred at the behest of its foreign sovereign customers.  So that conduct, like the use of Pegasus, is subject to NSO's foreign sovereign immunity defense.

In addition, none of Plaintiffs' claims are separate from Pegasus's alleged use by NSO's sovereign customers, including their argument that NSO is not immune for its actions "before any use of [Pegasus]" (Mot. 13.)  Each of Plaintiffs' claims requires them to prove damages.  *See* 18

---

[7] That fact distinguishes the cases on which Plaintiffs rely (Mot. 14–15), all of which involved claims the defendants had not moved to dismiss.  *See Breazeale v. Victim Servs., Inc.*, 2015 WL 13687730, at *1 (N.D. Cal. Sept. 14, 2015) (addressing "motion to strike two of the plaintiffs' state law claims"); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 2020 WL 403722, at *4 (D. Or. Jan. 24, 2020) (addressing motion to dismiss state but not federal claims and staying "all aspects of this action that are specifically related to Plaintiff's state claims").  Here, in contrast, NSO moved to dismiss all of Plaintiffs' claims.  In those circumstances, Plaintiffs' own cases confirm that the stay should cover every claim. *Columbia Sportswear*, 2020 WL 403722, at *4; *Andrade Rio v. Beard*, 2019 WL 4127206, at *3–5 (E.D. Cal. Aug. 30, 2019) (staying all discovery pending appeal of qualified immunity denial).

[8] Even if the Court were to agree that some of Plaintiffs' claims are not at issue in NSO's appeal, Plaintiffs concede that would only justify limited discovery.  (Mot. 14.)  To be precise, Plaintiffs could only seek discovery into the design, testing, and marketing of the aspects of Pegasus allegedly used against the 1,400 Target Users.  The RFPs here in issue are far broader than that.

---

1   U.S.C. § 1030(g) (limiting cause of action to "[a]ny person who suffers damage or loss"); Cal.

2   Penal Code § 502(e)(1) (limiting cause of action to person "who suffers damage or loss"); *Behnke*

3   *v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1468 (2011) ("Damages are an essential

4   element of a breach of contract claim.").   NSO's alleged reverse-engineering of WhatsApp's

5   software and design, testing, and marketing of Pegasus (Mot. 14) did not themselves damage

6   Plaintiffs in any way.   Plaintiffs only allege injury through the ultimate *use* of Pegasus by NSO's

7   customers.   (Compl. ¶¶ 57, 64, 73.)   The alleged use of Pegasus is thus an essential part of every

8   claim.   Because NSO's foreign sovereign immunity defense undisputedly applies to claims based

9   on the use of Pegasus, it applies to every claim.   (Mot. 13.)

10          In summary, NSO will argue on appeal that the undisputed factual record requires dismissal

11  of the entire complaint on the basis of foreign sovereign immunity.   Plaintiffs may oppose those

12  arguments on the merits.   But if the Ninth Circuit agrees with NSO, it will dismiss all of Plaintiffs'

13  claims without any further discovery.   The appeal thus relates to all of Plaintiffs' claims and stays

14  all discovery.

15  **III.   PLAINTIFFS' REQUESTS FOR PRODUCTION ARE OVERBROAD BECAUSE**
     **DISCOVERY UNRELATED TO PEGASUS AND THE ALLEGED 1,400**
16   **"TARGET USERS" IS IRRELEVANT TO PLAINTIFFS' CLAIMS AND**
     **DISPROPORTIONATE TO THE NEEDS OF THE CASE**
17

18          Even if discovery were not stayed, Plaintiffs' RFPs are overbroad.   All of Plaintiffs' claims

19  arise out of a single past event: the alleged use of Pegasus to access the 1,400 Target Devices over

20  a 12-day period in Spring 2019.   But Plaintiffs' RFPs seek information about *all* of NSO's

21  technology, whether or not it was used to surveil the 1,400 Target Users or even uses any of

22  Plaintiffs' platforms.   Those requests are not relevant to Plaintiffs' claims.   They are, instead, a

23  speculative fishing expedition designed to burden NSO and manufacture new claims that Plaintiffs

24  all but admit they currently lack any basis to assert.   *See* Mot. 19 (speculating the RFPs "*may*

25  identify spyware other than Pegasus" (emphasis added)).

26          The federal rules mandate proportionality and prohibit such "fishing expeditions."   *Rivera*

27

28

*v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004).[9]  Rule 26(b) limits discovery to "matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  As that language confirms, the scope of discovery depends on Plaintiffs' claims. Plaintiffs thus "bear[] the burden of demonstrating [that] the information sought is relevant" to the claims in their Complaint, not "that it might conceivably become" relevant to claims they have not yet asserted.  *Bluestone Innovations LLC v. LG Elecs. Inc.*, 2013 WL 6354419, at *2 (N.D. Cal. Dec. 5, 2013); *see also Risto v. Screen Actors Guild-Am. Fed'n of Television & Radio Artists*, 2020 WL 2225376, at *3 (C.D. Cal. Jan. 8, 2020) ("The party seeking to compel discovery 'has the initial burden of demonstrating relevance' under Rule 26.").

### A.   Plaintiffs' Requests for Production Seek Irrelevant Information

Plaintiffs have not satisfied their burden to show relevance.  The Complaint's very first paragraph explains that Plaintiffs' claims arise out of the alleged "use[] [of] WhatsApp servers . . . to send malware to approximately 1,400 mobile phones and devices" in "April 2019 and May 2019." (Compl. ¶ 1.)  As this Court recognized in its order on NSO's motion to dismiss, Plaintiffs describe only one technology allegedly used in that event: a program called Pegasus.  (Dkt. No. 111 at 2–4; Compl. ¶¶ 24–29, 38.)  The Complaint does not allege the existence of any other NSO technology that has been or could be used against Plaintiffs or their users.  (*See id.* ¶ 35 ("Defendants reverse-engineered the WhatsApp app and developed *a program*"—singular—"to enable them to emulate legitimate WhatsApp traffic" (emphasis added)).  The conduct described in the Complaint began in January 2018, when Defendants allegedly created WhatsApp accounts. (Compl. ¶ 30; Dkt. No. 111 at 3.)  The alleged conduct ended no later than May 2019, when Plaintiffs "closed the vulnerability" allegedly exploited by Pegasus.  (Compl. ¶ 44; Dkt. No. 111 at 4.)

---

[9] *See Costella v. Clark*, 2009 WL 4730856, at *2 (N.D. Cal. Dec. 7, 2009) (Hamilton, J.). ("'[F]ederal discovery [does not serve as a] fishing expedition to investigate mere speculation.'"); *BenQ Am. Corp. v. Forward Elec. Co.*, 2005 WL 3445629, at *10 (N.D. Cal. Dec. 15, 2005) (Hamilton, J.) ("Of these four requests, all are speculative, and it appears to the court that BenQ America is simply attempting to engage in a fishing expedition."); *see also Quiroz v. Praetorian Ins. Co.*, 2014 WL 3845418, at *2 (N.D. Cal. Aug. 5, 2014) ("[D]iscovery cannot be used as a fishing expedition for evidence of claims that have not been asserted.").

1      All of Plaintiffs' claims arise exclusively out of this alleged conduct.  Plaintiffs' CFAA

2  claim challenges NSO's alleged access to WhatsApp's servers "between April 29, 2019, and May

3  10, 2019 . . . to compromise approximately 1,400 Target Devices." (Compl. ¶¶ 50, 55.)  Their

4  CDAFA claim similarly challenges NSO's alleged use of WhatsApp's servers.  (Compl. ¶¶ 59–

5  63.)  The only conduct Plaintiffs allege could have been a breach of contract relates to the alleged

6  use of Pegasus to access the 1,400 Target Devices.  (*See* Compl. ¶ 32 (describing challenged

7  conduct related to Pegasus).)  And all of the damages Plaintiffs claim NSO caused relate to NSO's

8  alleged access to WhatsApp's servers in April and May 2019.  (Compl. ¶¶ 57, 64, 73.)  Plaintiffs

9  do not identify any other way they have been harmed by NSO.  As a result, the only information

10  "relevant" to Plaintiffs' "claim[s]," Fed. R. Civ. P. 26(b)(1), is information related to the alleged

11  use of Pegasus to access the 1,400 Target Devices.

12      It is obvious that Plaintiffs' RFPs seek discovery that has no relevance to their claims.

13  (RFP Nos. 1–24, 26, 28–29.)  For example, RFPs 1–4, 9–10, 14, 16, 17, 19, 26, and 29 seek

14  information about "NSO Spyware," which Plaintiffs define as "*any* computer code, program,

15  malware, exploit, and/or remote access tool that enabled or was designed to enable any form of

16  access to a mobile phone or devise, its operating system or application, *including but not limited*

17  *to* Pegasus and Phantom and any similar software developed, marketed, sold, distributed, operated,

18  maintained or used by NSO or NSO customers."  (Perez-Marques Decl. Exh. A at 3 (emphasis

19  added).)  Plaintiffs also seek discovery about "Target Devices," defined in the RFPs as "computers

20  and servers, including but not limited to mobile phones or devices, that NSO or its customers

21  targeted, transmitted, routed, or installed with any NSO Spyware, *including but not limited to* the

22  1,400 Target Users who are referenced in the Complaint."  (*Id.* (emphasis added).)  The requests

23  seek thus information about *all* of NSO's technologies, regardless of whether those technologies

24  were used against the 1,400 Target Devices or Plaintiffs.

25      A plaintiff cannot file a lawsuit and use it as part of a strategy to extract general information

26  from and impose large costs on a commercial adversary.  Courts routinely reject this type of *carte*

27  *blanche* discovery. *E.g.*, *Manuf. Automation & Software Sys., Inc. v. Hughes*, 2017 WL 5641120,

28  at *4 (C.D. Cal. Sept. 21, 2017).   In *Hughes*, the plaintiff brought claims for copyright

infringement, breach of contract, and violations of CFAA and CDAFA. *Id.* at *1–2. The plaintiff alleged that the defendants copied a specific software called the "MASS Software" to poach the plaintiff's customers. *Id.* During discovery, the plaintiff sought "information related to *all* communications between Defendants and *any* person regarding Defendants' services or products" and "documents related to *any and every* agreement or license entered into . . . between Defendants and *any other person*." *Id.* at *4 (emphasis in original). The Court rejected those requests, holding that they were overbroad because they were "not limited to communications or agreements related to the M[ASS] Software that is the subject of the litigation." *Id.*; *see also TIBCO Software Inc. v. GAIN Cap. Grp., LLC*, 2018 WL 4176622, at *2 (N.D. Cal. Aug. 31, 2018) (limiting discovery into defendant's software to "the specific software identified in the . . . complaint" because plaintiff's claims were "limited to th[at] specific software").

This Court should reach the same conclusion here because Plaintiffs' requests are not limited to the alleged use of Pegasus "that is the subject of the litigation." *Hughes*, 2017 WL 5641120, at *4. Rather than seek discovery related to the aspects of Pegasus allegedly used against the 1,400 Target Users, Plaintiffs seek discovery on NSO's entire business, including technologies and conduct unrelated to Plaintiffs' claims. Plaintiffs respond that they are "entitled to discovery regarding their claims generally" (Mot. 18), but that does not address the central point. Plaintiffs' claims—even "their claims generally" (*id.*)—entirely depend on the alleged use of Pegasus to access 1,400 Target Devices. All of Plaintiffs' claims are based exclusively on the technology allegedly deployed against, 1,400 "Target Users" described in the Complaint.

Plaintiffs' contrary reading of the Complaint is not plausible. In an attempt to expand their claims, Plaintiffs cite to background allegations about NSO's general business and "suite of customizable spyware products." (Mot. 17–18.) But the Complaint does not allege that *any* of those other products or business activities have anything to do with WhatsApp or harmed Plaintiffs in any way.[10]

---

[10] The supposedly "extensive materials attached to the complaint" do not reveal any "wrongful conduct" (Mot. 18), let alone conduct relevant to Plaintiffs' claims. One attachment allegedly shows NSO "marketing [its] spyware to United States Drug Enforcement Agency" (*id.*), but

1    Plaintiffs may not expand the scope of discovery beyond their actual claims by alleging

2  general facts about NSO's business.  Otherwise, a plaintiff could sue Facebook for a specific

3  practice—say, reading users' private messages—then expand discovery into Facebook's entire

4  business by alleging that "Facebook is a social networking website and mobile application that

5  enables its users to create their own personal profiles and connect with each other on their personal

6  computers and mobile devices."  (Compl. ¶ 15.)  The law does not allow that.  Plaintiffs may

7  challenge NSO's business—and seek discovery into that business—only to the extent that it has

8  allegedly violated the law and harmed Plaintiffs.  And the only way in which Plaintiffs allege NSO

9  harmed them was by using Pegasus to access 1,400 Target Devices in Spring 2019.

10    Every one of Plaintiffs' allegations about NSO's actual conduct concerns the alleged use

11  of Pegasus to access the 1,400 Target Devices.  Plaintiffs obscure this fact through incomplete and

12  misleading quotations.  (Mot. 18; *see* Compl. ¶ 1 (alleging use of "WhatsApp servers . . . to send

13  malware to approximately 1,400 mobile phones or devices" in "April 2019 and May 2019"; *id.*

14  ¶ 25 (alleging that NSO "used other malware delivery methods" to "enable *Pegasus'* remote

15  installation" (emphasis added)); *id.* ¶ 27 (alleging "*Pegasus* was modular malware" (emphasis

16  added)); *id.* ¶ 32 (alleging "a number of steps" NSO allegedly took between January 2018 and

17  May 2019 to "to send discrete malware components . . . to Target Devices").)[11]  The actual

18  allegations raise claims limited to the alleged use Pegasus to access the 1,400 Target Devices.

19    Nor does Plaintiffs' stray reference to "jurisdictional discovery" justify their overbroad

20

21  Plaintiffs do not explain how that could be unlawful, and their claims have nothing to do with that
   marketing because they do not allege that the DEA was involved in the conduct challenged in the

22  Complaint.  Two attachments are vague, benign descriptions of NSO's business, which similarly
   reveal no misconduct or conduct relevant to Plaintiffs' claims.  The third attachment, by Plaintiffs'

23  own admission, relates to Pegasus only.  (*Id.*)  None of these attachments comes close to
   establishing that evidence unrelated to the use of Pegasus allegedly to access the devices of the

24  1,400 Target Users has any relevance to Plaintiffs' claims.

25  [11] Plaintiffs cite one allegation to suggest that the NSO technology allegedly used in April and
   May 2019 is "Pegasus or another remote access trojan developed by Defendants."  (Mot. 17

26  (quoting Compl. ¶ 32).)  In the context of the Complaint, however, Plaintiffs clearly allege that the
   relevant technology is Pegasus.  (Compl. ¶¶ 24–29.)  That is how the Court understood Plaintiffs'

27  allegations.  (*See* Dkt. No. 111 at 2–4 (describing Plaintiffs' claims as alleging the use of Pegasus
   between January 2018 and May 2019).)

28

1   requests.  In order to support personal jurisdiction, the evidence would need to show a "but for"

2   connection between NSO's conduct and Plaintiffs' claims.  *Menken v. Emm*, 503 F.3d 1050, 1059

3   (9th Cir. 2007).  Because Plaintiffs' claims exclusively relate to NSO's alleged use of Pegasus to

4   access the 1,400 Target Devices, evidence unrelated to that conduct would have no causal

5   relationship to Plaintiffs' claims.  Plaintiffs' RFPs are, therefore, just as overbroad with respect to

6   personal jurisdiction as they are to the merits of Plaintiffs' claims.

7       **B.      Plaintiffs' Requests Are Disproportionate to the Needs of the Case**

8           The RFPs are also disproportionate to the needs of the case, because they seek irrelevant

9   information.  As Plaintiffs acknowledge (Mot. 19), two of the factors relevant to proportionality

10  are "the importance of the discovery in resolving the issues" and "whether the burden or expense

11  of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Here, the

12  information sought in Plaintiffs' RFPs has no "importance" to "resolving the issues" because it is

13  irrelevant to Plaintiffs' claims.

14          For the same reason, the "likely benefit" of irrelevant discovery is nil.  *Id.*  Moreover, any

15  potential benefit would be outweighed by the burden and expense of the discovery.  Plaintiffs'

16  RFPs seek extensive, confidential information about NSO's business, technology, and trade

17  secrets.  They also seek sensitive and confidential information about NSO's sovereign customers,

18  including details about the governments' national-security and law-enforcement operations.

19  Producing such information would impose a significant burden on NSO and its government

20  customers, separate and apart from the significant financial burdens involved in producing any

21  information.[12]   That burden far outweighs the trivial benefit to Plaintiffs from receiving

22  information that is not relevant to their claims.

23                          **<u>CONCLUSION</u>**

24          For the foregoing reasons, the Court should sustain Defendants' objections and deny

25

26  _____

27  [12] In addition to its relevance and proportionality objections, NSO has objected to producing such
    information on the grounds of confidentiality, trade secrets, and foreign law.  Plaintiffs do not ask
    this Court to overrule those objections (Mot. 5 n.4), and NSO will maintain them. *See supra*

28  Argument Part I.

1   Plaintiffs' motion to compel.

2

3   DATED:  September 2, 2020                KING & SPALDING LLP

4

5

6                                        By:  /s/ *Joseph N. Akrotirianakis*
                                              JOSEPH N. AKROTIRIANAKIS
7                                             AARON S. CRAIG
                                              Attorneys for Defendants NSO GROUP
8                                             TECHNOLOGIES LIMITED and Q
                                              CYBER TECHNOLOGIES LIMITED
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28