Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
 (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp Inc. and Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>            Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>            Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>**DISCOVERY MATTER**<br><br>Date:    September 9, 2020<br>Time:    9:00 a.m.<br>Ctrm:    3<br>Judge:   Hon. Phyllis J. Hamilton<br>(Hearing vacated by Dkt. No. 127)<br><br>Action Filed: October 29, 2019 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

2

# TABLE OF CONTENTS

PAGE

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................3

I.      DISCOVERY CAN AND SHOULD PROCEED WHILE NSO'S INTERLOCUTORY
        APPEAL IS PENDING ...............................................................................3

        A.      Because the Discovery Sought Is Not Involved in NSO's Interlocutory Appeal
                on Limited Legal Issues, Discovery Should Continue During the Appeal.................3

        B.      NSO's Putative Immunity Defenses Are Defenses to Liability, Not a Protection
                from Suit That Would Allow NSO to Avoid Its Discovery Obligations ....................6

        C.      Discovery Should Proceed as to the Claims to Which NSO's Putative Defenses
                Do Not Apply.................................................................................9

II.     THE REQUESTED DISCOVERY IS BOTH RELEVANT AND PROPORTIONAL TO
        THE NEEDS OF THE CASE ........................................................................10

        A.      Plaintiffs' Requested Discovery Is Relevant ...........................................10

        B.      Plaintiffs' Requested Discovery Is Proportional to the Needs of the Case...............13

III.    THE ISSUES PRESENTED ARE RIPE FOR RESOLUTION AND THE MOTION
        SHOULD BE GRANTED AT THIS TIME ..........................................................13

CONCLUSION......................................................................................................15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

**Cases**

*Alaska v. United States*,
    64 F.3d 1352 (9th Cir. 1995) ............................................................................. 8

*Apostol v. Gallion*,
    870 F.2d 1335 (7th Cir. 1989) ............................................................................ 6

*Bernstein v. Virgin Am., Inc.*,
    No. 15-CV-02277-JST, 2018 WL 6199679 (N.D. Cal. Nov. 28, 2018) ..................................... 14

*Breazeale v. Victim Servs., Inc.*,
    No. 14-CV-05266-VC, 2015 WL 13687730 (N.D. Cal. Sept. 14, 2015) ..................................... 9

*Britton v. Co-op Banking Grp.*,
    916 F.2d 1405 (9th Cir. 1990) ......................................................................... 3, 5

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) .................................................................................. 9

*Campos v. San Francisco State Univ.*,
    No. C-97-2326 MMC PJH, 1999 WL 35140127 (N.D. Cal. Mar. 19, 1999) ............................. 12

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001) ........................................................................... 4

*Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Court for Cent. Dist. of California*,
    859 F.2d 1354 (9th Cir. 1988) .......................................................................... 7

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ................................................................................... 5

*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ................................................................. 9

*Del Campo v. Kennedy*,
    517 F.3d 1070 (9th Cir. 2008) ........................................................................ 8, 9

*Doğan v. Barak*,
    932 F.3d 888 (9th Cir. 2019) ........................................................................... 7

*Estate of Conners v. O'Connor*,
    6 F.3d 656 (9th Cir. 1993) ........................................................................... 1, 3

ii

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
DISCOVERY – CASE NO. 4:19-CV-07123-PJH

*Fosselman v. Evans*,
   No. C 07-2606 PJH PR, 2011 WL 939616 (N.D. Cal. Mar. 15, 2011) ..................................... 14

*Habyarimana v. Kagame*,
   696 F.3d 1029 (10th Cir. 2012) .................................................................................................. 7

*Hernandez v. City of San Jose*,
   No. 16-CV-03957-LHK, 2017 WL 2081236 (N.D. Cal. May 15, 2017) ................................... 9

*Hmong I v. Lao People's Democratic Republic*,
   No. 2:15-CV-2349 TLN AC, 2016 WL 2901562 (E.D. Cal. May 17, 2016) ............................ 7

*In re Subpoenas to Multimedia Over Coax Alliance*,
   No. 16-MC-80192-SK, 2016 WL 5942302 (N.D. Cal. Oct. 13, 2016) ..................................... 14

*In re World Trade Ctr. Disaster Site Litig.*,
   521 F.3d 169 (2d Cir. 2008)........................................................................................................ 9

*J.P. v. County of Alameda*,
   No. 17-CV-05679-YGR, 2018 WL 3845890 (N.D. Cal. Aug. 13, 2018)................................... 9

*Kellgren v. Petco Animal Supplies, Inc.*,
   No. 13-cv-644 L (KSC), 2016 WL 4097521 (S.D. Cal. May 26, 2016) ................................... 13

*Lewis v. Mutond*,
   918 F.3d 142 (D.C. Cir. 2019) .................................................................................................... 6

*Mamani v. Berzain*,
   654 F.3d 1148 (11th Cir. 2011) ................................................................................................... 7

*Martin v. Halliburton*,
   618 F.3d 476 (5th Cir. 2010) ...................................................................................................... 9

*Matar v. Dichter*,
   563 F.3d 9 (2d Cir. 2009).............................................................................................................. 7

*Mfg. Automation & Software Sys., Inc. v. Hughes*,
   No. CV 16-8962-CAS (KSX), 2017 WL 5641120 (C.D. Cal. Sept. 21, 2017).................. 11, 15

*Miller v. Pancucci*,
   141 F.R.D. 292 (C.D. Cal. 1992) ............................................................................................... 12

*Mireskandari v. Mayne*,
   No. CV 12-3861 JGB (MRWx), 2016 WL 1165896 (C.D. Cal. Mar. 23, 2016) ...................... 7

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009)...................................................................................................................... 5

*Nat'l Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*,
   256 F.R.D. 678 (C.D. Cal. 2009) ............................................................................................... 15

iii

*Plotkin v. Pac. Tel. & Tel. Co.*,
    688 F.2d 1291 (9th Cir. 1982) ............................................................................................ 5

*Schering Corp. v. First DataBank Inc.*,
    No. C 07-01142 WHA, 2007 WL 1747115 (N.D. Cal. June 18, 2007) ....................................... 5

*Siegert v. Gilley*,
    500 U.S. 226 (1991) ............................................................................................................ 9

*SolarCity Corp. v. Salt River Project Agricultural Improvement & Power Dist.*,
    859 F.3d 720 (9th Cir. 2017) .............................................................................................. 8

*TIBCO Software Inc. v. GAIN Capital Grp.*, LLC,
    No. 17-CV-03313-EJD (VKD), 2018 WL 4176622 (N.D. Cal. Aug. 31, 2018) ...................... 11

*Vallabharpurapu v. Burger King Corp.*,
    276 F.R.D. 611 (N.D. Cal. 2011) ................................................................................... 2, 12

**Rules & Statutes**

Fed. R. Civ. P. 26(b)(1) ......................................................................................................... 13

Fed. R. Civ. P. 37 ................................................................................................................... 13

iv

1

**INTRODUCTION**

2      This matter has been pending for ten months, but Defendants NSO Group Technologies

3  Limited and Q Cyber Technologies Limited (together, "NSO") have failed to produce any

4  discovery or even provide initial disclosures.  NSO's opposition to the motion to compel

5  demonstrates yet again its apparent belief that it is beyond the reach of this Court and not subject to

6  the Federal Rules of Civil Procedure.  It is unsurprising that NSO is so eager to avoid discovery,

7  since its business is admittedly devoted to manufacturing, testing, distributing, and causing the use

8  of spyware to surreptitiously extract information from mobile devices without the knowledge of the

9  victim.  *See, e.g.*, Complaint ("Compl.") ¶¶ 24, 26–27, Dkt. No. 1.  NSO ignores the fact that its

10  spyware is used to target journalists, attorneys, and activists and portrays itself as an innocuous

11  "company that exports technology," while casting irrelevant (and baseless) aspersions regarding

12  Plaintiffs' "business model."  Defs.' Opp. to Pls.' Mot. to Compel ("Opp.") at 1–2, Dkt. No. 133-

13  15.[1]  But that rhetorical smokescreen has nothing to do with the two discrete issues raised in

14  Plaintiffs' motion to compel, namely: (1) whether discovery should proceed during the pendency of

15  NSO's interlocutory appeal of this Court's denial of NSO's asserted "immunity" defenses, and

16  (2) whether Plaintiffs are entitled to discovery on the full scope of their claims.

17      The interlocutory appeal does not excuse NSO of its discovery obligations.  NSO concedes,

18  as it must, that the Court retains jurisdiction to proceed with matters that are not involved in the

19  appeal.  Opp. at 7 (citing *Estate of Conners v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993)).  Under

20  that standard, discovery may proceed before this Court.  The discovery at issue here is not

21  "involved in" the narrow legal questions that NSO has presented on appeal.  To the extent it has

22  jurisdiction at all, the Ninth Circuit will determine only whether NSO's putative immunity defenses

23  are legally available.[2]  Even if the Ninth Circuit concluded that they are legally available, discovery

24  _____

[1] NSO filed its opposition under seal; this reply brief cites the unredacted version filed in
25  connection with the motion to seal, and accordingly is itself filed under seal.

26  [2] Plaintiffs have moved to dismiss NSO's interlocutory appeal for lack of jurisdiction, because this
Court's denial of NSO's purported "immunities"—which are defenses to liability, not immunities
27  from suit—will not effectively evade review and can be protected by a post-judgment appeal.  *See*
Motion by Appellees to Dismiss Interlocutory Appeal for Lack of Jurisdiction, *NSO Group Techs.
Ltd. v. WhatsApp Inc.*, No. 20-16408 (9th Cir. Sep. 11, 2020).  This motion in the Ninth Circuit has
28  no impact on this Court's jurisdiction.

1

would still be necessary for NSO to establish a factual basis for those defenses to apply.  Pls.' Mot.

to Compel ("Mot.") at 8–10, Dkt. No. 116.  In fact, by invoking the collateral-order doctrine, NSO

has necessarily taken the position that the issues presented on appeal are "completely separate from

the merits," further undermining any argument that the discovery sought here is "involved in" its

appeal, and thus that all discovery must come to a halt for the duration of the appeal.  To the

contrary, despite the appeal, discovery can and should proceed.  Despite NSO's strained efforts to

characterize the defenses it has invoked as immunities to suit (Opp. at 8–10), those purported

immunities remain mere defenses to liability; they do not fall in the narrow category of a "right not

to be tried" that could permit NSO to avoid all discovery while the appeal is pending.  Mot. at 10–

13.  NSO's arguments to the contrary are not supported by its inapposite cases.  Opp. at 8–10.  And

regardless of what the Ninth Circuit concludes, NSO cannot show that its defenses apply to claims

based on NSO's *own* conduct.  Mot. at 13–15; *see*, *e.g.*, Compl. ¶¶ 21–25, 28–29, 35.

As to the second issue, Plaintiffs seek discovery relevant to allegations made in the

complaint.  Mot. at 17–19.  And, even if Plaintiffs did seek discovery beyond the specific facts

alleged in the complaint (which they do not), it is well-settled law that plaintiffs are entitled to

"discovery regarding their claims generally, not just the specific factual claims pled" in the

complaint.  Mot. at 18 (citing *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D.

Cal. 2011)).  NSO disregards this standard entirely—and, indeed, does not even acknowledge or

attempt to distinguish the cases that Plaintiffs cited.  Instead, NSO incorrectly contends that

discovery should be restricted to a subset of facts set forth in the complaint, a position directly

contrary to the law of this District.  NSO's argument is moreover based on a limited and incorrect

reading of the complaint that simply ignores Plaintiffs' allegations regarding multiple types of

spyware that NSO has developed, tested, used, marketed, and caused the use of.  Mot. at 17–18

(citing Compl. ¶¶ 1, 24, 25, 27, 32, 59).

Finally, this Court can—and should—compel NSO to proceed with collecting and

producing relevant documents.  The parties satisfied the Federal Rules of Civil Procedure and this

District's Local Rules by meeting and conferring as to the issues in dispute here.  NSO's purported

2

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
DISCOVERY – CASE NO. 4:19-CV-07123-PJH

1   additional objections have no bearing on the issues raised in Plaintiffs' motion to compel, which

2   should be resolved at this time in order for this case to move forward expeditiously.

3          For the reasons set out below, as well as those set forth in the motion, Plaintiffs' motion to

4   compel should be granted.

5                                          **ARGUMENT**

6   **I.    DISCOVERY CAN AND SHOULD PROCEED WHILE NSO'S INTERLOCUTORY**

7   **        APPEAL IS PENDING**

8          As Plaintiffs established in the motion to compel, NSO's interlocutory appeal does not stay

9   all discovery in this case.  Mot. at 5–15.  First, the discovery sought is not "involved in the appeal."

10  Rather, no matter what relief NSO requests from the Ninth Circuit, the issues involved in its appeal

11  are narrow legal ones that do not involve the discovery sought or extinguish the need for discovery.

12  Second, the legally meritless defenses that NSO asserts have not been recognized as part of the

13  narrow class of defenses that establish a "right not to be tried" and that could allow NSO to avoid

14  discovery while its appeal is pending.  Third, NSO's putative defenses—even if found to be

15  applicable—would not cover the entirety of Plaintiffs' claims and allegations.  Therefore, discovery

16  should go forward notwithstanding NSO's appeal.

17          **A.    Because the Discovery Sought Is Not Involved in NSO's Interlocutory Appeal**

18  **                on Limited Legal Issues, Discovery Should Continue During the Appeal**

19          NSO's interlocutory appeal involves only limited legal issues that do not involve the

20  discovery Plaintiffs seek.  Attempting to broaden the scope of its appeal, NSO repeatedly asserts—

21  with no support—that proceedings "related to" the issues on appeal cannot proceed.  Opp. at 7, 8,

22  10.  It is easy to understand why NSO would want such an expansive standard, but the "related to"

23  standard does not appear in the case law.  Rather, the cases the parties cited establish that the Court

24  retains control over all aspects of the case not "involved in the appeal."  *Estate of Conners*, 6 F.3d

25  at 658; *accord Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1411 (9th Cir. 1990).  As explained

26

27

28

1 in the motion, the discovery Plaintiffs seek is not "involved in the appeal," and it will need to be

2 conducted regardless of the outcome of the appeal.  Mot. at 8–10.[3]

3         NSO's interlocutory appeal turns on discrete legal questions, and the discovery Plaintiffs

4 seek is both inevitable and not involved in the appeal.  Indeed, even if the Ninth Circuit were to rule

5 that NSO's claimed immunity defenses are legally available, NSO would need to prove facts to

6 establish that they apply, because those defenses apply only if (and only to the extent that) NSO

7 was acting on behalf of foreign governments.  *See* Order at 11, 13, Dkt. No. 111.  NSO has

8 acknowledged that "Defendants' sovereign immunity defense depends on their argument that they

9 act only on behalf of foreign sovereigns" and that "Plaintiffs dispute that claim."  Defs.' Mot. to

10 Stay Pending Appeal at 5 n.5, Dkt. No 117.[4]  And this Court has recognized that there are open

11 factual questions about the relationship between NSO and foreign sovereigns, which likewise belies

12 NSO's contention that there are "undisputed facts" that show that NSO is "immune from suit."  *See*

13 Order at 19 ("At this stage, the boundary between defendants' conduct and their clients' conduct is

14 not clearly delineated or definitively resolved . . . ."); Opp. at 11.  These factual issues are not

15 involved in the appeal and, to the contrary, would require discovery to resolve even if the Ninth

16 Circuit rules in favor of NSO.

17         NSO ignores the discrete nature of the legal questions on appeal, and instead argues that

18 because it intends to ask the Ninth Circuit to "dismiss the entire case," discovery should not

19 proceed during the appeal.  Opp. at 11.  NSO is incorrect.  In determining whether to retain

20 jurisdiction, district courts in the Ninth Circuit analyze which "particular issues" are "involved in

21 [the] appeal," rather than looking at the relief requested on appeal.  *City of Los Angeles, Harbor*

22 *Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001).  For instance, in *Schering*

23 *Corp. v. First DataBank Inc.*, the defendant requested that the Ninth Circuit strike the entire

24

---

25 [3] To the extent NSO suggests that its interlocutory appeal gives rise to an "automatic[]" stay of discovery in this case (*see* Opp. at 2, 7), the argument is incorrect for the reasons explained in

26 Plaintiffs' opposition to NSO's motion to stay.  *See* Pls.' Opp. to Defs.' Mot. to Stay Pending Appeal at 2–9, Dkt. No. 125.

27 [4] Moreover, Plaintiffs' complaint includes allegations about NSO's development and testing of its spyware, *see* Compl. ¶¶ 24–25, 35—which are activities that NSO necessarily had to conduct

28 *before* it could sell any of its spyware products to foreign sovereigns.

1    complaint—which would have effectively ended the case.  *See* Br. of Appellant First Databank,

2    Inc. at 58–59, *Schering Corp. v. First DataBank Inc.*, No. 07-15895 (9th Cir. Oct. 1, 2007)

3    (requesting that Ninth Circuit grant motion and strike complaint).  Nonetheless, the district court

4    ruled that "discovery and other pretrial matters are not relevant to the subject of the appeal" and

5    held that "this Court retains jurisdiction over [those] matters."  *Schering Corp. v. First DataBank*

6    *Inc.*, No. C 07-01142 WHA, 2007 WL 1747115, at *4 (N.D. Cal. June 18, 2007).  Similarly, district

7    courts can retain jurisdiction over discovery matters even when the appellant argues that the entire

8    case should be sent to arbitration.  *See Britton*, 916 F.2d at 1412 (holding that district court was not

9    divested of jurisdiction when appellant claimed that case should be sent to arbitration).

10          In effect, NSO is arguing that its *intent* to seek dismissal on appeal means that *every* issue is

11    "involved in the appeal," divesting the district court of jurisdiction.  But that is not the law.  *See,*

12    *e.g.*, *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) (holding that interlocutory

13    appeal does not "stay the proceedings, as it is firmly established that an appeal from an

14    interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the

15    case").  Such a rule would strip the district court of jurisdiction and give the appellant—as "master

16    of [its] appeal," Opp. at 12—the ability to unilaterally decide what issues can proceed in the district

17    court while the appeal is pending.  NSO cites no authority to that effect.  There is no basis for this

18    Court to halt aspects of the case not involved in the appeal—i.e., the discovery Plaintiffs seek—

19    merely because NSO may ask the Ninth Circuit to dismiss the entire complaint.

20          NSO's invocation of the collateral-order doctrine (Opp. at 7–8), itself constitutes an

21    admission that the issues on appeal are separate from the merits of this lawsuit.  The collateral-

22    order doctrine allows parties to appeal only a "small class" of interlocutory rulings "that are

23    conclusive, that resolve important questions separate from the merits, and that are effectively

24    unreviewable on appeal from the final judgment in the underlying action."  *Mohawk Indus., Inc. v.*

25    *Carpenter*, 558 U.S. 100, 106 (2009) (citation omitted).  By invoking the collateral-order doctrine,

26    NSO has thus represented that it views the issues on appeal as "completely separate from the merits

27    of the action."  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).  Allowing discovery to

28    proceed pending the appeal of an issue "completely separate" from the merits is consistent with the

5

purpose of the collateral-order doctrine:  Because "[a]ppeals based on the 'collateral order doctrine' . . . present issues separate from the merits . . . the court of appeals can consider these segregable issues while the district court presses ahead with the case.  Indeed, one of the rationales for the [collateral-order] doctrine is precisely that an appeal of a collateral order does not disrupt the litigation in the district court."  *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989).  NSO cannot have it both ways, arguing simultaneously that the issues on appeal are "completely separate" from the merits and also that the merits discovery sought is "involved in" the appeal.[5]

### B. NSO's Putative Immunity Defenses Are Defenses to Liability, Not a Protection from Suit That Would Allow NSO to Avoid Its Discovery Obligations

Plaintiffs' motion to compel established that NSO cannot avoid discovery by invoking a narrow exception—the "right not to be tried"—that applies only when an interlocutory appeal pertains to a limited set of immunities that provide blanket protection from suit, none of which are at-issue in this case.  Mot. at 10–11.  First, the conduct-based foreign-official immunity that NSO claims is merely a defense to liability, not an immunity from suit, and the defense (if applicable) would only protect NSO from an enforceable judgment, not discovery or trial.  Mot. at 11–12.  Second, to the extent NSO's claim of derivative foreign sovereign immunity even legally exists, it likewise would only provide a defense to liability, and does not preclude Plaintiffs from obtaining discovery.  Mot. at 12–13.

NSO's arguments to the contrary are unavailing.  First, as to conduct-based foreign-official immunity, NSO improperly conflates conduct-based foreign-official immunity with status-based foreign official immunity, which this Court has recognized as two separate doctrines.  *See* Order at 10 ("[C]ourts distinguish between status-based immunity and conduct-based immunity.").  By its nature, status-based foreign official immunity applies to certain foreign officials based solely on the foreign official's title and "regardless of the substance of the claim."  *Id.* (quoting *Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019)).  As the Court found, NSO—a private company—"do[es] not

---

[5] NSO's appeal does not fall within the narrow class of interlocutory appeals that may completely deprive the district court of jurisdiction despite being separate from the merits of the action.  *See* Mot. at 10–11.

1   argue that . . . status-based immunity is available to them." Order at 11. Most of the cases that

2   NSO cites deal with this status-based foreign official immunity, and are thus irrelevant.[6]

3          The two cases NSO cites that do involve conduct-based foreign-official immunity provide

4   no support for NSO's position. In *Mireskandari v. Mayne*, the complaint alleged that the individual

5   defendants were public officials acting in their official capacity. No. CV 12-3861 JGB (MRWx),

6   2016 WL 1165896, at *17–20 (C.D. Cal. Mar. 23, 2016). By contrast here, Plaintiffs' complaint

7   alleges that NSO violated the WhatsApp Terms and federal and state law through conduct unrelated

8   to any foreign sovereign. Compl. ¶¶ 21–25, 28–29, 35 (describing, among other things, that NSO

9   developed, tested, used, marketed, and caused the use of its suite of malicious spyware).[7] And

10  *Matar v. Dichter* did not involve an interlocutory appeal, so the Second Circuit had no occasion to

11  consider whether conduct-based foreign-official immunity is an immunity from suit, or a defense to

12  liability. 563 F.3d 9, 11 (2d Cir. 2009).

13         While NSO claims that the Ninth Circuit's decision in *Doğan v. Barak* establishes that this

14  defense confers immunity from suit, the case holds no such thing. As the motion to compel

15  explains (Mot. at 12 n.10), the language NSO relies upon from *Doğan* is a quotation from an earlier

16  Ninth Circuit decision discussing not the conduct-based foreign-official immunity at issue here, but

17  immunity under the Foreign Sovereign Immunities Act, which protects foreign states and their

18  instrumentalities alone. 932 F.3d 888, 895 (9th Cir. 2019) (citing *Compania Mexicana De*

19  *Aviacion, S.A. v. U.S. Dist. Court for Cent. Dist. of California*, 859 F.2d 1354, 1358 (9th Cir.

20  1988)). In *Doğan*, the Ninth Circuit emphasized that the defendant was entitled to immunity

21  because the effect of the plaintiff's "claims for relief"—i.e., the *judgment* that the plaintiff sought—

22  "would be to enforce a rule of law against [a] sovereign state." 932 F.3d at 893–94. Nothing in

23  *Doğan* suggests that conduct-based foreign-official immunity confers a broad immunity designed to

24  protect private corporations like NSO from standing trial or participating in discovery. Indeed, the

25  ───────────────
    [6] *See Habyarimana v. Kagame*, 696 F.3d 1029, 1031 (10th Cir. 2012) (President of Rwanda);
26  *Mamani v. Berzain*, 654 F.3d 1148, 1150–51 (11th Cir. 2011) (former President and Defense
    Minister of Bolivia); *Hmong I v. Lao People's Democratic Republic*, No. 2:15-CV-2349 TLN AC,
27  2016 WL 2901562, at *10 (E.D. Cal. May 17, 2016) (President and Prime Minister of Laos).

    [7] The allegations in the complaint govern the analysis here, regardless of the arguments that
28  Plaintiffs raised in their opposition to NSO's motion to dismiss. *Cf.* Opp. at 11 n.6.

7

Ninth Circuit has made clear that not every form of so-called immunity is an immunity from suit; some are mere defenses to liability.  *See SolarCity Corp. v. Salt River Project Agricultural Improvement & Power Dist.*, 859 F.3d 720, 726 (9th Cir. 2017) (state-action antitrust immunity "is a defense to liability, not immunity from suit"); *Alaska v. United States*, 64 F.3d 1352, 1356 (9th Cir. 1995) ("federal sovereign immunity is a defense to liability rather than a right to be free from trial").

Second, NSO's arguments regarding its putative derivative foreign sovereign immunity defense are likewise without merit.  As Plaintiffs demonstrated in the motion to compel, a claim of *derivative* immunity necessarily implicates factual questions that require discovery into the relationship between a sovereign and the party purporting to invoke that sovereign's immunity. Mot. at 12–13.  Additionally, since the motion was filed, the United States itself has taken the position before the Supreme Court that the defense "is not genuinely an immunity at all" but rather is "merely a defense to liability."  Perez-Marques Reply Decl. Ex. A (Br. for the United States as Amicus Curiae at 8, *CACI Premier Tech. Inc. v. Al Shimari*, No. 19-648 (Aug. 26, 2020)); *see also id.* at 11 (explaining that "derivative sovereign immunity" is "a misnomer," and is properly understood as a defense to liability on the ground that the defendant acted lawfully, rather than a broader immunity from suit).

NSO relies on cases that are irrelevant because they involve actual immunities *from suit* and do not involve derivative sovereign immunity (either foreign or domestic).  *See* Opp. at 9–10.  NSO principally relies on *Del Campo v. Kennedy*, an appeal from the district court's denial of Eleventh Amendment immunity.  517 F.3d 1070, 1074 (9th Cir. 2008); *see* Opp. at 9.  The Eleventh Amendment immunity that the private contractor in *Del Campo* unsuccessfully sought to invoke bears little, if any, relation to the derivative and conduct-based foreign sovereign immunities sought here.  And, as noted earlier, the Ninth Circuit has confirmed that not all purported "immunities" are immunities from suit that stay discovery.  *See Solar City*, 859 F.3d at 726 (state-action antitrust immunity is not immunity from suit); *Alaska*, 64 F.3d at 1357 (federal sovereign immunity is not

8

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY – CASE NO. 4:19-CV-07123-PJH

immunity from suit).[8]  NSO's claim of derivative foreign sovereign immunity is modeled on

derivative *domestic* sovereign immunity, which is not an immunity from suit.  *See Martin v.*

*Halliburton*, 618 F.3d 476, 483, 485 (5th Cir. 2010) (holding based on circuit precedent that a

denial of derivative domestic sovereign immunity is not an immunity from suit, and thus is not an

immediately appealable collateral order).  NSO's other cases are similarly irrelevant, as they all

involve assertions of qualified immunity or immunity under a specific statute not applicable here.[9]

### C.   Discovery Should Proceed as to the Claims to Which NSO's Putative Defenses Do Not Apply

Finally, as shown in the motion to compel, NSO's interlocutory appeal does not divest the

court of jurisdiction over claims as to which the defense on appeal does not apply.  Mot. at 13–15;

*see, e.g.*, *Breazeale v. Victim Servs., Inc.*, No. 14-CV-05266-VC, 2015 WL 13687730, at *1–2

(N.D. Cal. Sept. 14, 2015).  Here, because NSO's asserted defenses do not impact Plaintiffs'

breach-of-contract claims and certain of Plaintiffs' theories under the federal Computer Fraud and

Abuse Act ("CFAA") and the California Comprehensive Computer Data Access and Fraud Act

("CCCDAFA") (*see* Mot. at 13–15), discovery should at a minimum proceed as to those claims.

NSO fails to show that its purported defenses apply to all of Plaintiffs' claims and theories.

First, NSO *acknowledges* that this Court has held that the sale of spyware could violate Section

502(c)(6) of the CCCDAFA, *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp. 2d 1039, 1057–58

(N.D. Cal. 2010) (Hamilton, J.), and does not explain how selling a product to a foreign sovereign

could constitute acting "at the behest" of that foreign sovereign.  Opp. at 12.  Second, NSO ignores

---

[8] Moreover, the contractor in *Del Campo* claimed that it was covered by its client's *own* Eleventh Amendment immunity.  517 F.3d at 1074.  Here, NSO is claiming *derivative* foreign sovereign immunity—an independent protection that, to the extent it exists at all, would differ in crucial aspects from the standard foreign sovereign immunity that NSO's purported foreign sovereign clients would claim.  *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) (outlining additional requirements of derivative sovereign immunities).  For that reason, *Del Campo* is a standard Eleventh Amendment immunity case that should have little bearing on this Court's analysis of the novel derivative immunity invoked by NSO.

[9] *See Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (qualified immunity); *J.P. v. County of Alameda*, No. 17-CV-05679-YGR, 2018 WL 3845890, at *1–2 (N.D. Cal. Aug. 13, 2018) (qualified immunity); *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 2081236, at *13 (N.D. Cal. May 15, 2017) (qualified immunity); *see also In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 192–93 (2d Cir. 2008) (concluding that "section 305 of the Stafford Act provides immunity from suit").

9

the complaint's allegations that NSO reverse-engineered the WhatsApp app, then developed and tested its own unauthorized software, which was designed to impersonate the official WhatsApp app and connect with WhatsApp's servers, in violation of CFAA's prohibitions, including those on unauthorized access.  *See* Compl. ¶¶ 32–33, 35.  Third, NSO fails to address Plaintiffs' argument that NSO's breach of the WhatsApp Terms in developing, testing, using, marketing, and causing the use of its suite of malicious spyware in the first place has no connection to the sovereign clients to whom NSO claims it eventually sold that spyware.  Mot. at 15.  Finally, NSO's argument that Plaintiffs were not damaged by NSO's actions is belied by the very paragraphs of the complaint that NSO cites.  Opp. at 13 (citing Compl. ¶¶ 57, 64, 73).  Those paragraphs clearly allege that "Defendants' actions" in their totality—and not just the "use of Pegasus by NSO's customers"[10]— "caused Plaintiffs to incur losses and damages."  *See, e.g.*, Compl. ¶ 64; *see also id.* ¶ 71 (alleging, in connection with Plaintiffs' breach of contract claim, that "Defendants' violations of the WhatsApp's Terms have directly and proximately caused and continue to cause harm and injury to WhatsApp").

## II.   THE REQUESTED DISCOVERY IS BOTH RELEVANT AND PROPORTIONAL TO THE NEEDS OF THE CASE

NSO's objection to producing any documents beyond those related to one particular brand of its spyware (Pegasus) and one particular set of targeted WhatsApp users is meritless.  *See* Mot. at 18–19.  NSO's opposition does not demonstrate otherwise.  Because the discovery that Plaintiffs request is both relevant and proportional to the needs of the case, NSO should be ordered to produce documents beyond their baseless reading of the complaint.

### A.   Plaintiffs' Requested Discovery Is Relevant

Plaintiffs' requested discovery is plainly relevant to the subject matter of the action.  NSO's position to the contrary ignores the applicable legal standard in order to advance an argument that misstates the law and misreads the complaint.  Under Rule 26, Plaintiffs are entitled to discovery

---

[10] Although NSO has repeatedly tried to portray this as a case about just one of its products— Pegasus—the complaint is not restricted to that product, but instead relates to all of NSO's unauthorized access to WhatsApp servers, regardless of which of NSO's spyware products was used.

regarding their claims generally (*see* Mot. at 18–19 (citing cases)), and both the factual allegations and the claims asserted in the complaint amply justify the discovery sought.  NSO's position is thus both legally and factually incorrect.

*First*, Plaintiffs seek discovery relevant to their allegations in the complaint.  NSO's contrary argument is based on a fundamental misreading of the complaint.  *See* Mot. at 17–19. NSO cherry-picks allegations from the complaint that suit its position, while ignoring the numerous allegations that refer to NSO's entire suite of spyware products and its efforts to test, use, and cause others to use that spyware.  NSO misleadingly claims that "the only way in which Plaintiffs allege NSO harmed them was by using Pegasus to access 1,400 Target Devices in Spring 2019." Opp. at 17.  But that contention is belied by the plain language of the complaint, which alleges (for example) that NSO "caused Target Devices to download and install additional malware—believed to be Pegasus *or another remote access trojan developed by Defendants*—from the remote servers for the purpose of accessing data and communications on Target Devices."  Compl. ¶ 32 (emphasis added).

Contrary to NSO's representations, the complaint references malware beyond just Pegasus, *id.* ¶ 24, and alleges that NSO manufactures, distributes, and operates an entire suite of spyware products designed to target Plaintiffs' servers, *see, e.g., id.* ¶¶ 1, 25.[11]  NSO's position also disregards the fact that the complaint seeks injunctive relief based on the continuing threat of future harm, including based on NSO's stated intent to "constantly evolve."  *Id.* Ex. 10; *see also id.* Ex. 8 (promoting NSO's "products" (plural)).  Accordingly, the conduct at issue in the complaint is not limited to the use of spyware under one particular brand name and against one particular set of users.  Plaintiffs are entitled to develop their claims through discovery, and the requested information is squarely relevant to such claims.

---

[11] For the same reasons, the cases relied on by NSO (Opp. at 15–16) are inapposite.  In those cases, the requests at issue did "not link the information sought to any claim asserted in the [complaint]." *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. CV 16-8962-CAS (KSX), 2017 WL 5641120, at *4 (C.D. Cal. Sept. 21, 2017); *see also TIBCO Software Inc. v. GAIN Capital Grp., LLC*, No. 17-CV-03313-EJD (VKD), 2018 WL 4176622, at *2 (N.D. Cal. Aug. 31, 2018) (denying request to extend discovery to conduct by party not involved in case).

11

1    *Second*, even if Plaintiffs sought relevant discovery beyond their specific allegations, as

2    shown in the motion, discovery is not limited to the precise issues presented in the pleadings, as

3    such an approach would be contrary to the express purpose of Rule 26 and "might result in a

4    complete failure to afford plaintiff an adequate opportunity to obtain information that would be

5    useful at the trial."  Mot. at 16 (citing *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)).

6    Rather, "Plaintiffs are entitled to discovery regarding their claims generally, not just the specific

7    factual claims pled in their Complaint."  *Id.* at 18 (citing *Vallabharpurapu*, 276 F.R.D. at 615).  In

8    addition, "[t]he relevance test for discovery purposes is whether the information sought might

9    reasonably lead to other evidence that would be admissible," and "the matter need only be relevant

10   to the subject matter of the action, not necessarily the issues."  *Campos v. San Francisco State*

11   *Univ.*, No. C-97-2326 MMC PJH, 1999 WL 35140127, at *2 (N.D. Cal. Mar. 19, 1999) (Hamilton,

12   J.).  For these reasons, courts rarely reject discovery requests on the ground that the information

13   sought is not relevant to the subject matter of the action.  *See* Mot. at 17 (citing *Campos*, 1999 WL

14   35140127, at *2).

15   NSO does not even acknowledge or attempt to distinguish these cases, nor does it address

16   the proper standards in its opposition.  On this basis alone, NSO's scope objection should be

17   overruled and Plaintiffs' motion should be granted.  Plaintiffs bring claims under the CFAA and the

18   CCCDAFA, as well as for breach of contract (Compl. ¶¶ 49–73), and the discovery sought is

19   plainly relevant to those claims.  Consistent with their CFAA and CCCDAFA claims, for example,

20   Plaintiffs seek discovery from NSO related to NSO's spyware products.  Perez-Marques Decl. Ex.

21   A (Pls.' First Reqs. for Produc.) at Req. No. 1 (requesting documents concerning "the development,

22   testing, deployment, installation, distribution, use, maintenance, troubleshooting, and/or operation

23   of any NSO Spyware targeting or directed at WhatsApp servers or Users").  This requested

24   discovery is similarly relevant to Plaintiffs' breach of contract claim, as NSO's continued efforts to

25   design and deploy spyware products in order to alter WhatsApp's servers or target WhatsApp users

26   constitute violations of the WhatsApp Terms.  *See, e.g.*, *id.*  The discovery Plaintiffs seek plainly

27   meets the relevance test.

28

12

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
DISCOVERY – CASE NO. 4:19-CV-07123-PJH

**B.**     **Plaintiffs' Requested Discovery Is Proportional to the Needs of the Case**

NSO's argument that the information sought has a "trivial benefit" to Plaintiffs (Opp. at 18) is likewise unavailing.  To determine that discovery is "proportional to the needs of the case," the court may consider a number of factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  NSO carries the burden of demonstrating that Plaintiffs' requested discovery does not meet the needs of the case.  *See* Mot. at 19 (citing *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-cv-644 L (KSC), 2016 WL 4097521, at *2 (S.D. Cal. May 26, 2016)).

NSO does not come close to meeting that burden.  Instead, NSO merely asserts that the requested discovery is "irrelevant" to the case and therefore is disproportionate.  Opp. at 18.  But because the discovery is indeed relevant, as shown above and in the motion, NSO's argument fails.  In fact, Plaintiffs' requests go to central issues in the case, and those issues implicate the core of Plaintiffs' business.  *See* Mot. at 20.  NSO does not contend that a lack of resources prohibits it from providing such relevant documents to which NSO has exclusive access.  NSO's attempts to ignore these other factors of Fed. R. Civ. P. 26(b)(1) and hide behind legally and factually incorrect articulations of irrelevance should be rejected.

**III.     THE ISSUES PRESENTED ARE RIPE FOR RESOLUTION AND THE MOTION SHOULD BE GRANTED AT THIS TIME**

As Plaintiffs' motion shows, and NSO's opposition confirms, the parties met-and-conferred on multiple occasions regarding the disputed issues here.  Mot. at 4–5; Opp. at 5.  Indeed, NSO had acknowledged that the parties were at an impasse on these issues and that they would require Court intervention before Plaintiffs filed the motion.  *See* Perez-Marques Decl. ¶¶ 10, 12.  As NSO acknowledges, the Local Rules provide that a party may bring a motion to resolve a discovery dispute if counsel have conferred to attempt to resolve the disputed issues.  Fed. R. Civ. P. 37; Opp. at 6 (citing L.R. 37-1(a)).  Plaintiffs satisfied that Local Rule here.

13

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY – CASE NO. 4:19-CV-07123-PJH

1        In opposition, NSO argues yet again for further delay—now on the basis of the contention

2    that there are *other* issues, *not* presented in this motion as to which the parties have not completed

3    their discussions, and thus that the Court should refrain from resolving clear disputes raised here

4    until *all* potential disputes have been fleshed out.  This is delay for delay's sake.  The Court can and

5    should resolve the disputed issues in this motion at this time so that discovery in this case can at

6    long last move forward.  Resolving this motion is particularly urgent because the two objections

7    this motion challenges are not only delaying NSO's production of documents, but also hindering

8    other aspects of discovery including NSO's service of initial disclosures *and* the production of

9    documents by numerous third parties represented by NSO's counsel—all of whom are uniformly

10    refusing to produce *any* documents at this time and standing on NSO's cramped and incorrect view

11    on the scope of discovery.

12        Contrary to NSO's position, Local Rule 37-1 does not require the parties to meet and confer

13    regarding *every* conceivable discovery issue before a party can file a motion to compel.  Rather, the

14    parties must meet and confer regarding the "merits of each discovery issue that is in dispute" prior

15    to filing a motion to compel as to those issues.  *Bernstein v. Virgin Am., Inc.*, No. 15-CV-02277-

16    JST, 2018 WL 6199679, at *6 n.4 (N.D. Cal. Nov. 28, 2018).  None of the cases that NSO relies on

17    hold otherwise.[12]

18        In its opposition, NSO also raises, for the first time, an objection to producing discovery

19    based on ███████████████████████████████████.  Opp. at 6–7.  ████

20    ████ has no relevance to the two issues raised in Plaintiffs' motion: (i) whether discovery can go

21    forward despite NSO's appeal and (ii) whether discovery in this case should be limited to a subset

22    of Plaintiffs' allegations relating to one brand of spyware and one particular set of victims.[13]  If

23

24    [12] In *In re Subpoenas to Multimedia Over Coax Alliance*, the court granted a motion to compel in part while refusing to rule on a specific discovery request where the parties had failed to meet-and-

25    confer *as to that specific issue*.  No. 16-MC-80192-SK, 2016 WL 5942302, at *1–2 (N.D. Cal. Oct. 13, 2016).  And in *Fosselman v. Evans*, this Court denied a motion to compel brought by a *pro se*

26    plaintiff because the plaintiff had failed to "identify any specific communication" that "constituted compliance with the meet and confer requirement."  No. C 07-2606 PJH PR, 2011 WL 939616, at

27    *2 (N.D. Cal. Mar. 15, 2011) (Hamilton, J.).

28    [13] For that reason, it is in fact unclear why NSO believed it required an extension of time to respond to this motion, or why, ██████████████████████, "Defendants' brief could not be

14

1    NSO believes it is legally prohibited (███████████[14]) from producing certain of the

2    discovery sought by Plaintiffs, that issue can be addressed in complying with the Court's order in

3    response to this motion; it is not a reason why such an order should not be issued at all.[15]  The

4    Court should overrule the objections addressed herein (as NSO concedes that the Court may (Opp.

5    at 7)) and compel NSO to proceed with the collection and production of its documents.

6                                              **CONCLUSION**

7          For the foregoing reasons, as well as the reasons set out in Plaintiffs' motion, Plaintiffs

8    respectfully request that the motion be granted.

22    ───────────────────
      fully candid about . . . Plaintiffs' motion to compel."  Defs.' Mot. to Extend Time to Oppose Pls.'
      Mot. to Compel at 1, Dkt. No. 119.

23    [14] ████████████████████████████████████████████████████████

25    [15] NSO also states in passing that it has objected to Plaintiffs' requests "on the grounds of
      confidentiality [and] trade secrets."  Opp. at 18 n.12.  "Confidentiality" and "trade secrets,"
26    however, are not proper bases for refusing to provide discovery, as such information "can be
      adequately shielded by the parties' Stipulated Protective Order," as one of the cases cited by NSO
27    recognizes.  *Hughes*, 2017 WL 5641120, at *4 (cited by Opp. at 15–16); *see also Nat'l Academy of
      Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 681–82 (C.D. Cal. 2009)
28    (granting motion to compel and collecting cases explaining that trade secrets "have widely been
      held to be discoverable" (citation omitted)).

                                                  15

Dated:  September 11, 2020                    Respectfully Submitted,

                                             DAVIS POLK & WARDWELL LLP

                                             By:  */s/ Antonio J. Perez-Marques*
                                                  Greg D. Andres
                                                  Antonio J. Perez-Marques
                                                  Craig T. Cagney
                                                    (admitted *pro hac vice*)
                                                  DAVIS POLK & WARDWELL LLP
                                                  450 Lexington Avenue
                                                  New York, New York 10017
                                                  Telephone: (212) 450-4000
                                                  Facsimile: (212) 701-5800
                                                  Email: greg.andres@davispolk.com
                                                          antonio.perez@davispolk.com
                                                          craig.cagney@davispolk.com

                                                  Micah G. Block (SBN 270712)
                                                  DAVIS POLK & WARDWELL LLP
                                                  1600 El Camino Real
                                                  Menlo Park, California 94025
                                                  Telephone: (650) 752-2000
                                                  Facsimile:  (650) 752-2111
                                                  Email: micah.block@davispolk.com

                                                  *Attorneys for Plaintiffs*
                                                  *WhatsApp Inc. and Facebook, Inc.*

16