1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
      *jakro@kslaw.com*
2   AARON S. CRAIG (Bar No. 204741)
      *acraig@kslaw.com*
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone:     (213) 443-4355
5   Facsimile:     (213) 443-4310

6   Attorneys for Defendants NSO GROUP TECHNOLOGIES
    LIMITED and Q CYBER TECHNOLOGIES LIMITED
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11   WHATSAPP INC., a Delaware corporation,      Case No. 4:19-cv-07123-PJH
     and FACEBOOK, INC., a Delaware
12   corporation,                                **OPPOSITION OF DEFENDANTS NSO
                                                 GROUP TECHNOLOGIES LIMITED
13                 Plaintiffs,                   AND Q CYBER TECHNOLOGIES
                                                 LIMITED TO PLAINTIFFS' MOTION TO
14          v.                                   STRIKE AFFIRMATIVE DEFENSES
                                                 [DKT NO. 140]**
15   NSO GROUP TECHNOLOGIES LIMITED
     and Q CYBER TECHNOLOGIES LIMITED,           *[[Proposed] Order Filed Concurrently]*
16
                   Defendants.                   Date:    None Set
17                                               Ctrm:    3
                                                 Judge:   Hon. Phyllis J. Hamilton
18

19                                               Action Filed:   10/29/2019
20

21

22

23

24

25

26

27

28

---

DEFENDANTS' OPPOSITION TO                                   Case No. 4:19-cv-07123-PJH
PLAINTIFFS' MOTION TO STRIKE

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

    I.      NSO's Eighteenth Defense (Act of State Doctrine) Is legally
            sufficient and properly pleaded.......................................................................... 3

    II.     NSO's Twelfth Defense (*Forum Non Conveniens*) is legally
            sufficient and not untimely ............................................................................... 7

         A.     NSO Did Not Waive Its *Forum Non Conveniens* Defense................. 7

         B.     NSO's *Forum Non Conveniens* Defense Is Not Clearly
              Insufficient ........................................................................................ 8

    III.    NSO's Eleventh Defense (Improper Venue Due to Lack of
            Personal Jurisdiction) Was Not Waived ........................................................ 11

    IV.    NSO's Tenth Defense (International Comity) PROVIDES FAIR
            NOTICE OF a legally sufficient and applicable DEFENSE ......................... 12

    V.     NSO's Sixth Defense (Good Faith/Legitimate Justification) IS
            NOT INAPPLICABLE ................................................................................... 13

    VI.    NSO's Twenty-Third Through Thirty-Fifth Defenses PROVIDE
            FAIR NOTICE OF CONSTITUTIONAL ARGUMENTS THAT
            DO NOT DEPEND ON DETAILED FACTUAL
            ALLEGATIONS.............................................................................................. 15

         A.     Twenty-Third Defense (Punitive Damages -
              Unconstitutional) ............................................................................. 16

         B.     Twenty-Fourth and Twenty-Fifth Defenses (Liability and
              Damages Standards Unconstitutional)............................................. 16

         C.     Twenty-Sixth Defense (Post-Verdict Review
              Unconstitutional) ............................................................................. 17

         D.     Twenty-Seventh Defense (Absence of Procedural
              Safeguards) ....................................................................................... 17

         E.     Twenty-Eighth Defense (First Amendment) ..................................... 18

         F.     Twenty-Ninth Defense (Wealth or Financial Status
              Unconstitutional) ............................................................................. 18

G.      Thirtieth Defense (Out-of-State Conduct) .........................................19

H.      Thirty-First Defense (Absence of Malice).........................................19

I.       Thirty-Second Defense (Jurisdiction)...............................................20

J.       Thirty-Third Defense (No Harm to Plaintiffs) and Thirty-Fifth Defense (Non-Parties)...............................................................20

K.      Thirty-Fourth Defense (Dissimilar Conduct) ...................................21

VII.      If the Court Strikes Any of NSO's Defenses, It Should Grant Leave to Amend............................................................................21

CONCLUSION..............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allianz Global Risks U.S. Ins. Co. v. Ershigs, Inc.*,
138 F. Supp. 3d 1183 (W.D. Wash. 2015)..........................................................8, 9

*Am. Home Assurance Co. v. TGL Container Lines, Ltd.*,
347 F. Supp. 2d 749 (N.D. Cal. 2004) ...................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................3

*Bains LLC v. Arco Prods. Co.*,
405 F.3d 764 (9th Cir. 2005) ..............................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................3

*BMW of N.A., Inc. v. Gore*,
517 U.S. 559 (1996)..........................................................................16, 17, 19, 20

*Carijano v. Occidental Petrol. Corp.*,
643 F.3d 1216 (9th Cir. 2011) ........................................................................9, 10

*Chateau des Charmes Wines Ltd. v. Sabaté USA, Inc.*,
2003 WL 22682483 (N.D. Cal. Nov. 10, 2003) ..............................................7, 10

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993)............................................................................................18

*In re Compl. of Am. President Lines, Ltd.*,
890 F. Supp. 308 (S.D.N.Y. 1995) ........................................................................8

*DC Labs Inc. v. Celebrity Signatures Int'l, Inc.*,
2013 WL 4026366 (S.D. Cal. Aug. 6, 2013) .......................................................17

*DeRoburt v. Gannett Co.*,
733 F.2d 701 (9th Cir. 1984) ................................................................................6

*Durham v. Halibrand Perf. Corp.*,
2014 WL 12519938 (S.D. Cal. Dec. 9, 2014)........................................................2

*Erickson Prods. Inc. v. Welbrook Senior Living, LLC*,
2017 WL 1315572 (N.D. Cal. Apr. 7, 2017) ...................................................4, 21

*Fabian v. LeMahieu*,
2020 WL 3402800 (N.D. Cal. June 19, 2020) ............................................. *passim*

*Facebook, Inc. v. MaxBounty, Inc.*,
  274 F.R.D. 279 (N.D. Cal. 2011) ..................................................................14

*Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.*,
  2015 WL 847378 (M.D. Fla. Feb. 26, 2015) ..............................................19

*G&G Closed Cir. Events, LLC v. Nguyen*,
  2010 WL 3749284 (N.D. Cal. Sept. 23, 2010) .............................................2

*Harp v. Airblue Ltd.*,
  879 F. Supp. 2d 1069 (C.D. Cal. 2012) .......................................................10

*Hebert v. Vantage Travel Serv., Inc.*,
  334 F.R.D. 362 (D. Mass. 2019) ....................................................................8

*Holmes v. Elec. Document Processing, Inc.*,
  966 F. Supp. 2d 925 (N.D. Cal. 2013) ...................................................3, 10

*Honda Motor Co. v. Oberg*,
  512 U.S. 415 (1994) ......................................................................................17

*Int'l Ass'n of Machinists & Aerospace Workers (IAM) v. OPEC*,
  649 F.2d 1354 (9th Cir. 1981) ...................................................................5, 6

*Israel Discount Bank Ltd. v. Schapp*,
  505 F. Supp. 2d 651 (C.D. Cal. 2007) ...........................................................9

*Jansen v. Travelers Commercial Ins. Co.*,
  2017 WL 607610 (N.D. Cal. Feb. 15, 2017) ..............................................15

*Johnson v. United States*,
  576 U.S. 591 (2015) ......................................................................................16

*Kimthu Trinh v. Wells Fargo & Co.*,
  2017 WL 5548777 (S.D. Cal. Nov. 16, 2017) ...............................................2

*Kinetic Concepts, Inc. v. Kinetic Concepts, Inc.*,
  601 F. Supp. 496 (N.D. Ga. 1985) .................................................................7

*Kirola v. City & Cty. of S.F.*,
  2011 WL 89722 (N.D. Cal. Jan. 11, 2011) ..................................3, 4, 8, 20

*Knighten v. Allstate Ins. Co.*,
  2018 WL 718533 (W.D. Okla. Feb. 5, 2018) ..............................................18

*Lockman Found. v. Evangelical Alliance Mission*,
  930 F.2d 764 (9th Cir. 1991) .......................................................................10

*McKesson Corp. v. Islamic Republic of Iran*,
  672 F.3d 1066 (D.C. Cir. 2012) .....................................................................5

*Metro. Life Ins. Co. v. Neaves*,
   912 F.2d 1062 (9th Cir. 1990) ........................................................................12

*Miller v. Fuhu, Inc.*,
   2014 WL 4748299 (C.D. Cal. Sept. 22, 2014) .........................................17, 20, 21

*Mireskandari v. Daily Mail & Gen. Trust PLC*,
   2013 WL 12129642 (C.D. Cal. July 31, 2012).................................................14

*Monster Cable Prods., Inc. v. Avalanche Corp.*,
   2009 WL 650369 (N.D. Cal. Mar. 11, 2009)......................................................9

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) ..................................................................12, 13

*Occidental Petrol. Corp. v. Buttes Gas & Oil Co.*,
   331 F. Supp. 92 (C.D. Cal. 1971) ...................................................................6

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007)........................................................................16, 17, 20

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) .................................................................................9

*QS Wholesale, Inc. v. World Mktg., Inc.*,
   2014 WL 12586120 (C.D. Cal. Jan. 7, 2014) .................................................19

*In re Roundup Prods. Liab. Litig.*,
   385 F. Supp. 3d 1042 (N.D. Cal. 2019) ........................................................18

*Royal Wulff Ventures LLC v. Primero Mining Corp.*,
   938 F.3d 1085 (9th Cir. 2019) .......................................................................6

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993)...................................................................................5

*Savage v. Citibank N.A.*,
   2015 WL 4880858 (N.D. Cal. Aug. 14, 2015) ....................................... *passim*

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.*,
   899 F.3d 1064 (9th Cir. 2018) ...............................................................4, 5, 6

*SecuriMetrics, Inc. v. Hartford Cas. Ins. Co.*,
   2005 WL 2463749 (N.D. Cal. Oct. 4, 2005)...........................................1, 2, 15

*Smith v. Wade*,
   461 U.S. 30 (1983) ..................................................................................18

*Smith v. Wal-Mart Stores*,
   2006 WL 2711468 (N.D. Cal. Sept. 20, 2006) ..................................... *passim*

*Solis v. Zenith Cap., LLC,*
    2009 WL 1324051 (N.D. Cal. May 8, 2009) .................................................21

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) ..................................................................................18

*State Farm Mut. Auto Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) ...............................................................16, 17, 18, 21

*Timberlane Lumber Co. v. Bank of Am., N.T. & S.A.,*
    549 F.2d 597 (9th Cir. 1976) .....................................................................5

*United States v. Sum of $70,990,605,*
    4 F. Supp. 3d 189 (D.D.C. 2014) ..........................................................4, 14

*Vanguard LED Displays, Inc. v. Daktronics, Inc.,*
    2017 WL 10295954 (M.D. Fla. 2017) .......................................................11

*Vista v. USPLabs, LLC,*
    2014 WL 5507648 (N.D. Cal. Oct. 30, 2014) ............................................12

*W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp., Int'l,*
    493 U.S. 400 (1990) .................................................................................6, 7

*Weddle v. Bayer AG Corp.,*
    2012 WL 1019824 (S.D. Cal. Mar. 26, 2012) .................................. *passim*

*West v. Multibanco Comermex, S.A.,*
    807 F.2d 820 (9th Cir. 1987) .....................................................................6

*Westfall v. MERS, Inc.,*
    2016 WL 1241520 (S.D. Cal. Mar. 30, 2016) .............................................2

*Yavuz v. 61 MM, Ltd.,*
    576 F.3d 1166 (10th Cir. 2009) ...........................................................7, 10

**Statutes and Rules**

18 U.S.C. § 1030(f).........................................................................................14

Fed. R. Civ. P. 15(a)(3)......................................................................................2

**Other Authorities**

5C Wright & Miller, Fed. Prac. & Proc.
    § 1380.........................................................................................................1
    § 1381.............................................................................................. *passim*
    § 1383...................................................................................15, 17, 18, 19
    § 3828.......................................................................................................10

**INTRODUCTION**

Plaintiffs' motion to strike is a transparent and improper attempt to prevent Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively "NSO") from presenting valid defenses to Plaintiffs' legally and factually unsupported claims.  Because all of NSO's defenses are proper and adequately pleaded, the Court should deny the motion to strike.

Plaintiffs take an unreasonably expansive view of the scope of their claims (*see* Dkt. No. 116 at 16–19) yet, at the same time, seek to deny NSO the right to pursue eighteen affirmative defenses of which NSO has given fair notice to Plaintiffs.  Such motions to strike are "viewed with disfavor" and "infrequently granted" because they can be abused in precisely this way.  5C Wright & Miller, Fed. Prac. & Proc. § 1380.  NSO's defenses are legally proper, responsive to Plaintiffs' allegations, and are pleaded in sufficient detail to provide Plaintiffs with fair notice.  Plaintiffs cannot meet the "high standard" required to prove otherwise.  *SecuriMetrics, Inc. v. Hartford Cas. Ins. Co.*, 2005 WL 2463749, at *6–7 (N.D. Cal. Oct. 4, 2005).  Accordingly, the Court should deny Plaintiffs' motion.

**BACKGROUND**

NSO is an Israeli technology company that, *inter alia*, designs and markets technology that government agencies use to investigate and prevent terrorism and other serious crimes.  (Compl. ¶¶ 5, 6, 43; Dkt. No. 45-11.) Plaintiffs' lawsuit seeks to hold NSO liable for acts taken by and on behalf of foreign sovereigns to advance their national security and law enforcement interests.

Plaintiffs challenge the design, marketing, and use of NSO's Pegasus technology to allegedly access the mobile devices of 1,400 WhatsApp users between April 2019 and May 2019. (Compl. ¶¶ 1, 24–43.)  But NSO does not use Pegasus to access user devices.  (*E.g.*, Answer ¶¶ 1, 11, 34–45.)  Instead, it licenses the technology to foreign government agencies that use it to conduct lawful national-security and law-enforcement operations within their own territories. (Dkt. No. 45-11; Dkt. No. 111 at 11; Compl. ¶ 43.)  None of the WhatsApp users allegedly monitored by NSO's customers were in the United States (Compl. ¶ 43), and neither NSO nor its customers committed any relevant acts in the United States (Answer ¶¶ 1, 11, 34–45, 60).

NSO moved to dismiss Plaintiffs' complaint on April 2, 2020.  (Dkt. No. 45.)  On July 16,

the Court dismissed Plaintiffs' claim for trespass to chattels but otherwise denied the motion to dismiss.  (Dkt. No. 111.)  In so doing, the Court assumed the truth of factual allegations that NSO denies.  (*Compare id.* at 7 ("the court is to accept as true all the factual allegations in the complaint"), *with* Answer ¶¶ 15–48 (denying factual allegations).)  Plaintiffs survived the motion to dismiss only by including in the Complaint allegations they will be unable to prove about the interactions between the uses of Defendants' technology in question and Plaintiffs' California servers.  The Court granted Plaintiffs leave to amend their complaint within 21 days.  (Dkt. No. 111 at 45.)  Plaintiffs declined to amend their complaint.  NSO timely filed its answer on August 20, fourteen days after Plaintiffs' deadline to file an amended complaint lapsed.  Fed. R. Civ. P. 15(a)(3).[1]

NSO has filed an appeal from the portion of this Court's denial of NSO's foreign sovereign immunity defense.  (Dkt. No. 112.)  That appeal automatically stays all proceedings in this Court that require NSO's involvement.  (Dkt. No. 117.)  Instead of honoring the stay, Plaintiffs filed their motion to strike eighteen of NSO's affirmative defenses on September 10.  (Dkt. No. 140.)  NSO files this opposition to protect its interests, but it maintains its position that the case has been stayed, so this Court should not entertain Plaintiffs' motion until the conclusion of NSO's appeal.[2]

## ARGUMENT

The Court should deny Plaintiffs' motion because Plaintiffs cannot meet the "high standard required" to show that any of NSO's affirmative defenses should be stricken. *SecuriMetrics, Inc.*, 2005 WL 2463749, at *6–7.  Motions to strike defenses "are disfavored," *G&G Closed Cir. Events, LLC v. Nguyen*, 2010 WL 3749284, at *1 (N.D. Cal. Sept. 23, 2010), and must be denied "if the

---

[1] Although Plaintiffs do not claim any prejudice or seek any relief as a result, they argue that NSO's answer was untimely.  (Mot. 1, 5.)  Not so.  When a court grants a plaintiff leave to amend, and the plaintiff declines to file an amended complaint, the deadline for an answer is "determined from the last date the . . . amended complaint could have been filed under Rule 15(a)(3)."  *Durham v. Halibrand Perf. Corp.*, 2014 WL 12519938, at *3 (S.D. Cal. Dec. 9, 2014); *accord Kimthu Trinh v. Wells Fargo & Co.*, 2017 WL 5548777, at *7 (S.D. Cal. Nov. 16, 2017); *Westfall v. MERS, Inc.*, 2016 WL 1241520, at *7 (S.D. Cal. Mar. 30, 2016).

[2] Similarly, NSO maintains that the Court does not have either subject-matter or personal jurisdiction.

insufficiency of the defense is not clearly apparent," *Fabian v. LeMahieu*, 2020 WL 3402800, at *4 (N.D. Cal. June 19, 2020) (internal quotation marks omitted); 5C Wright & Miller § 1381.  "If there is *any doubt* whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion."  *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (emphasis added) (internal quotation marks omitted).  In other words, Plaintiffs' motion cannot be granted "unless it appears to a certainty that [P]laintiffs would succeed despite any state of the facts which could be proved in support of the defense."  *Kirola v. City & Cty. of S.F.*, 2011 WL 89722, at *1 (N.D. Cal. Jan. 11, 2011) (internal quotation marks omitted).

Plaintiffs have not shown that it is "clearly apparent" that any of NSO's affirmative defenses is insufficient.  *Fabian*, 2020 WL 3402800, at *4.  "'The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.'"  *Id.* (quoting *G&G*, 2010 WL 3749284, at *1).  Contrary to plaintiffs' claim that the *Twombly/Iqbal* plausibility standard controls this inquiry, "[t]he better view" is that *Twombly* and *Iqbal* do not apply to affirmative defenses.  5C Wright & Miller § 1381 (citing cases).  Those cases interpreted Rule 8(a), which governs plaintiffs' allegations, not Rule 8(b), which governs defenses.  *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Even if *Twombly* and *Iqbal* were applied, however, NSO's answer contains more than enough information to give Plaintiffs "fair notice" of its defenses.  *Fabian*, 2020 WL 3402800, at *4.  Whether those defenses will prove to be meritorious depends on factual disputes and substantial legal issues that cannot be resolved on a motion to strike.  *Kirola*, 2011 WL 89722, at *1; 5C Wright & Miller § 1381.

In addition, Plaintiffs do not claim—let alone show—that they would be prejudiced by any of NSO's defenses.  Without a "showing of prejudice," there is no basis to strike the defenses.  *Fabian*, 2020 WL 3402800, at *4.

## I.   NSO'S EIGHTEENTH DEFENSE (ACT OF STATE DOCTRINE) IS LEGALLY SUFFICIENT AND PROPERLY PLEADED

Plaintiffs' challenge to NSO's defense based on the act of state doctrine misunderstands the doctrine and misstates the relevant facts.  The parties agree on the elements of the act of state

doctrine; it applies when "(1) there is an official act of a foreign sovereign performed within its own territory; and (2) the relief sought or the defense interposed in the action would require a court in the United States to declare invalid the foreign sovereign's official act." *Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064, 1069 (9th Cir. 2018) (internal quotation marks and alterations omitted). Both elements of the doctrine are adequately pleaded, because NSO contends that the conduct alleged in the complaint actually was performed by or on behalf of foreign governments in its own territory. In any event, the doctrine is not "clearly" inapplicable at this early stage of the case, as would be required to strike NSO's defense. *Fabian*, 2020 WL 3402800, at *4; *cf. United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 204–06 (D.D.C. 2014) (holding act of state defense should not be resolved before summary judgment).

*First*, Plaintiffs' claims involve "an official act of a foreign sovereign performed within its own territory." *Sea Breeze Salt*, 899 F.3d at 1069. Plaintiffs challenge the use of NSO's Pegasus technology against devices of WhatsApp users in foreign countries. (*E.g.*, Compl. ¶¶ 1, 43.) That conduct was carried out by foreign sovereigns, acting within their own territories, while conducting national security and law enforcement investigations. (Compl. ¶ 43; Dkt. No. 111 at 11; Dkt. No. 45-11.) None of those sovereigns performed any actions in the United States, and neither did NSO. (*See, e.g.*, Answer ¶¶ 1, 11, 34–45, 60 (denying allegations that NSO took actions in United States); Dkt. No. 45-11 ¶ 4.) None of the WhatsApp users allegedly targeted by NSO's sovereign customers were located in the United States. (Compl. ¶ 43; Dkt. No. 45-11 ¶ 13.)

In response, Plaintiffs recite their allegations that "NSO transmitted and caused the transmission of malicious code to servers in the United States." (Mot. 6.) But NSO denies those allegations. (*See* Answer ¶¶ 1, 11, 34–45, 60.) Plaintiffs have not proved that NSO or its customers accessed any servers in the United States, and the Court cannot resolve the factual question on a motion to strike. *Kirola*, 2011 WL 89722, at *1; 5C Wright & Miller § 1381; *cf. Erickson Prods. Inc. v. Welbrook Senior Living, LLC*, 2017 WL 1315572, at *2 (N.D. Cal. Apr. 7, 2017) (Hamilton, J.) (holding defendant was "entitled to plead" challenged defense because "the court cannot make a factual determination on its merits at this stage of the litigation"). Moreover, some of the actions challenged by Plaintiffs—such as the alleged sale and installation of Pegasus

1   (Dkt. No. 116 at 13–15; Dkt. No. 125 at 8–9)—plainly occurred entirely overseas at the direction

2   of foreign sovereigns in their own territories.  (Answer at 9:15–16; Dkt. No. 45-11 ¶¶ 3, 4, 9, 13–15.)[3]

3        Plaintiffs also argue that the act of state doctrine cannot apply to "actions of a private

4   company like NSO" (Mot. 7), but that is both wrong and irrelevant.  A "private litigant may raise

5   the act of state doctrine, even when no sovereign state is a party to the action."  *Int'l Ass'n of*

6   *Machinists & Aerospace Workers (IAM) v. OPEC*, 649 F.2d 1354, 1359 (9th Cir. 1981),

7   *disapproved on other grounds by Siderman de Blake v. Rep. of Argentina*, 965 F.2d 699, 707 n.8

8   (9th Cir. 1992).  The challenged act need not be carried out by a foreign sovereign itself; because

9   "a government must always act through agents, it makes no difference for act of state purposes

10  whether that agent is an individual, an agency, or a majority-owned and controlled corporation, so

11  long as the acts in question are official, sovereign acts."  *Sea Breeze Salt*, 899 F.3d at 1069; *cf.*

12  *Timberlane Lumber Co. v. Bank of Am., N.T. & S.A.*, 549 F.2d 597, 606 (9th Cir. 1976) ("A

13  corollary to the act of state doctrine . . . is the often-recognized principle that corporate conduct

14  which is compelled by a foreign sovereign is also protected from antitrust liability, as if it were an

15  act of the state itself."), *superseded by statute on other grounds*, 15 U.S.C. § 6a.

16       Here, NSO "acted as [an] agent[] of foreign sovereign governments in respect of all

17  conduct alleged in the Complaint."  (Answer at 9:15–16.)  That conduct was designed "to fight

18  terrorism and serious crime, which are official public acts."  (Dkt. No. 111 at 11.)[4]  As this Court

19  recognized, Plaintiffs have not argued "that [NSO] operated outside [its] official capacity" in any

20  respect.  (*Id.*)  In any event, the core of Plaintiffs' complaint—the use of Pegasus to target 1,400

21  devices—was carried out directly by foreign sovereigns, not by NSO.  (Dkt. No. 45-11 ¶¶ 3, 4, 9,

22

23  _____

[3] To the extent the Court believes that Defendants failed to plead that their sovereign customers
24  performed all acts within their own territory, Defendants request leave to amend this affirmative
    defense to make that allegation explicit.

25  [4] This fact distinguishes *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066 (D.C. Cir.
26  2012), on which Plaintiffs rely (Mot. 7).  In that case, the court held that "Iran's hostile takeover
    of a board of directors was not an . . . 'official act.'"  (Mot. 7.)  Law-enforcement and antiterrorism
27  investigations like those at issue here, in contrast, are quintessential official acts.  *See Saudi Arabia*
    *v. Nelson*, 507 U.S. 349, 361 (1993) ("[A] foreign state's exercise of the power of its police has
28  long been understood . . . as peculiarly sovereign in nature.").

13–15.)[5]   Therefore, at least some of the conduct Plaintiffs challenge was "official, sovereign" conduct subject to the act of state doctrine.  *Sea Breeze Salt*, 899 F.3d at 1069.

*Second*, Plaintiffs' claims would require this Court "to declare invalid the foreign sovereign's official act." *Id.* (alteration omitted).  This prong of the act of state doctrine is satisfied "whenever the federal courts must question the legality of the sovereign acts of foreign states." *IAM*, 649 F.2d at 1359.  That is the case here, where Plaintiffs challenge the alleged use of Pegasus against WhatsApp users.   (Compl. ¶ 1.)   Because that conduct was performed by foreign sovereigns, the "outcome of the case turns upon" a finding that foreign sovereigns broke the law by using Pegasus to access WhatsApp users' devices.  *W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990).[6]

Plaintiffs are wrong in arguing that the act of state doctrine does not apply unless a foreign sovereign will be bound by the judgment (Mot. 7–8), because the doctrine applies "whenever the federal courts must question the legality of the sovereign acts of foreign states," *IAM*, 649 F.2d at 1359, whether or not the foreign sovereign will be bound by the judgment.  *See Royal Wulff Ventures LLC v. Primero Mining Corp.*, 938 F.3d 1085, 1093 (9th Cir. 2019) (in suit against private companies, rejecting argument "that the act of state doctrine applies only where United States courts would be required to declare the foreign government's action 'null and void,' not unlawful in any other way"); *DeRoburt v. Gannett Co.*, 733 F.2d 701, 703 (9th Cir. 1984) (in suit against private company, holding act of state doctrine would "clearly" bar claims that "involve serious intrusion into the propriety of the acts and policies of a foreign state"); *Occidental Petrol. Corp.*

---

[5] Plaintiffs have argued that NSO can be held liable for "enabling" its customers' actions.  (Dkt. No. 125 at 9.)  That is wrong (Dkt. No. 142 at 10), but it proves Plaintiffs are challenging the conduct of foreign sovereigns.

[6] That is also true with respect to the conduct that Plaintiffs mistakenly claim NSO did not perform at the direction of foreign sovereigns, such as designing and marketing Pegasus.  Plaintiffs cannot show injury without connecting NSO's alleged conduct to foreign sovereigns' ultimate use of Pegasus on WhatsApp users' devices.  (Dkt. No. 142 at 10.)  In these circumstances, "when the causal chain between defendant's alleged conduct and plaintiff's injury [can]not be determined without an inquiry into the motives of the foreign government," the act of state doctrine applies. *West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 828 (9th Cir. 1987) (internal quotation marks and alteration omitted).

1   *v. Buttes Gas & Oil Co.*, 331 F. Supp. 92, 111 (C.D. Cal. 1971) (recognizing act of state defense

2   should not be struck merely because plaintiffs "do not seek damages from [the sovereign]" because

3   claim still required finding that sovereign violated law).  Here, the act of state doctrine applies

4   because the "legality" of NSO's sovereign customers' conduct is "a question to be decided in the

5   present suit."  *W.S. Kirkpatrick*, 493 U.S. at 406.  Therefore, NSO's act of state defense is not

6   clearly insufficient and should not be stricken.

7   **II.   NSO'S TWELFTH DEFENSE (*FORUM NON CONVENIENS*) IS LEGALLY**

8   **SUFFICIENT AND NOT UNTIMELY**

9       **A.   NSO Did Not Waive Its *Forum Non Conveniens* Defense**

10       Plaintiffs' motion to strike appears to be an effort to influence the Court's thinking about a

11   possible future *forum non conveniens* motion, because there is no legal basis to strike this defense.

12       Plaintiffs argue, based on a single case they admit does not accurately state the law in this

13   district, that NSO waived its *forum non conveniens* defense by not raising it in a motion to dismiss.

14   (Mot. 9–10).  But as Plaintiffs begrudgingly concede in a footnote, courts in this district hold that

15   the defense of *forum non conveniens* is not waived by a failure to raise it in a pre-answer motion

16   to dismiss.  (Mot. 10 n.2); *see Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F.

17   Supp. 2d 749, 765 (N.D. Cal. 2004) ("[A] motion to dismiss on forum non conveniens grounds is

18   not a motion to dismiss for improper venue under Rule 12(b)(3) and is therefore not subject to

19   waiver under Rule 12(h)."); *Chateau des Charmes Wines Ltd. v. Sabaté USA, Inc.*, 2003 WL

20   22682483, at *3 (N.D. Cal. Nov. 10, 2003) ( "a defendant's failure to bring a motion to dismiss on

21   grounds of forum non conveniens before answering the complaint does not result in a waiver").

22   Indeed, courts "uniformly recognize" that "an objection on *forum non conveniens* grounds is not

23   waived by a defendant failing to raise the issue in its first responsive pleading."  *Yavuz v. 61 MM,*

24   *Ltd.*, 576 F.3d 1166, 1173 (10th Cir. 2009) (citing cases).[7]

25       This rule makes sense because the information necessary to raise a *forum non conveniens*

26

27

28   [7] The only waiver case Plaintiffs cite did not address a *forum non conveniens* defense at all.  *Kinetic Concepts, Inc. v. Kinetic Concepts, Inc.*, 601 F. Supp. 496, 500–02 (N.D. Ga. 1985).

defense is often not available before discovery. "[T]he factors of equity and convenience, such as the location of important witnesses and evidence, which control a *forum non conveniens* motion may not be apparent without time-consuming investigation and, frequently, discovery." *Allianz Global Risks U.S. Ins. Co. v. Ershigs, Inc.*, 138 F. Supp. 3d 1183, 1187 (W.D. Wash. 2015) (quoting *Snam Progetti S.p.A. v. Lauro Lines*, 387 F. Supp. 322, 323 (S.D.N.Y. 1974)). Because *forum non conveniens* defenses often depend on "factual matters outside the pleadings," *In re Compl. of Am. President Lines, Ltd.*, 890 F. Supp. 308, 314 (S.D.N.Y. 1995), it is appropriate to raise them on summary judgment rather than in a motion to dismiss.

NSO thus did not waive its *forum non convenience* defense. Plaintiffs' motion to strike the defense on waiver grounds should be denied.

**B.   NSO's *Forum Non Conveniens* Defense Is Not Clearly Insufficient**

For the same reasons a *forum non conveniens* defense cannot be waived, a motion to strike such a defense before "the close of discovery" is "premature." *Hebert v. Vantage Travel Serv., Inc.*, 334 F.R.D. 362, 376 (D. Mass. 2019). *Forum non conveniens* depends on a large number of fact-specific factors that often cannot be fully analyzed "without time-consuming investigation and, frequently, discovery." *Allianz Global Risks*, 138 F. Supp. 3d at 1187. A motion to strike the defense should accordingly be denied when "investigation" relevant to the defense is "ongoing." *Hebert*, 334 F.R.D. at 376–77; *see* 5C Wright & Miller § 1381 ("[A] motion to strike will not be granted . . . if it raises factual issues that should be determined on a hearing on the merits."). It is not surprising, then, that Plaintiffs do not cite a single case striking a *forum non conveniens* defense.

Plaintiffs' motion should be denied because they cannot show that they will inevitably defeat the defense "despite any state of the facts which could be proved" through discovery. *Kirola*, 2011 WL 89722, at *1. For example, this Court has already found that "the burden on [NSO] to litigate in California is substantial given that their witnesses and evidence are located in Israel." (Dkt. No. 111 at 29.) This is an important *forum non conveniens* factor. Although the Court found that this burden did not render personal jurisdiction over NSO unreasonable, it did so in part because of considerations that are not part of the *forum non conveniens* analysis. (*Compare id.* at 29–30 (considering "purposeful injection" and "conflict with the sovereignty of the

defendant's state"), *with Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1229, 1232 (9th Cir. 2011) (not including those among factors for *forum non conveniens*).)   The Court also found several *forum non conveniens* factors neutral—including the burden on the parties and the location of witnesses and evidence (Dkt. No. 111 at 29–30)—that could prove to tip in NSO's favor after discovery.   *See Allianz Global Risks*, 138 F. Supp. 3d at 1187 (recognizing that "the factors of equity and convenience, such as the location of important witnesses and evidence, . . . may not be apparent without time-consuming investigation and, frequently, discovery").   And the Court did not address several *forum non conveniens* factors, namely "whether unwilling witnesses can be compelled to testify," "the cost of bringing witnesses to trial," "the enforceability of the judgment," "the court's familiarity with the governing law," "the burden on local courts and juries," "congestion in the court," and "other practical problems."   *Carijano*, 643 F.3d at 1229, 1232.   At this early stage of the case, Plaintiffs cannot show that all these factors "clearly" defeat NSO's motion.   *Fabian*, 2020 WL 3402800, at *4; *see Monster Cable Prods., Inc. v. Avalanche Corp.*, 2009 WL 650369, at *3 (N.D. Cal. Mar. 11, 2009) (denying motion to strike *forum non conveniens* defense when defendant's answer "denie[d] plaintiffs allegations that defendant 'has on a continual basis committed infringing and diluting acts . . . within the Northern District of California' and that defendant has engaged in 'business interactions purposefully elicited by [defendant] with or directed to residents of said District'").

Nor can Plaintiffs clearly establish that Israel is not an adequate alternative forum.   To the contrary, this Court has already found that Israel appears to be an adequate alternative forum (Dkt. No. 111 at 31), and rightly so.   *See, e.g., Israel Discount Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 659 (C.D. Cal. 2007) (finding Israel an adequate alternative forum).   A forum is "[o]rdinarily" adequate "when the defendant is 'amenable to process'" there.   *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).   NSO, as a citizen of Israel, is amenable to process in Israel.   And there is no doubt that Israel can "provide 'some remedy'" for Plaintiffs' claims, which is all that is required for Israel to be an adequate forum.   *Carijano*, 643 F.3d at 1225–26.   That requirement is "easy to pass," *id.* (internal quotation marks omitted), and it is satisfied here.   The lawsuit currently proceeding in Israel between NSO's employees and Plaintiffs shows that Israeli courts can

entertain breach of contract claims based on Plaintiffs' terms of service.  (Answer at 10:8–9; Mot. 10.)  That is enough to show Israel is an adequate forum.[8]  *See Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768–69 (9th Cir. 1991) (finding Japan to be an adequate forum despite unavailability of RICO and Lanham Act claims, because Japanese court would consider "other tort and contract claims").[9]

Finally, NSO's supposed "delay" in asserting its defense does not foreclose the defense. (Mot. 10.)  In fact, NSO did not delay at all: as explained, its answer is the appropriate place to raise the defense, which requires further factual development.  *Supra* at 7–8.  But even if NSO could have raised the defense earlier, there "is no time limit on when a motion to dismiss for forum non conveniens must be made."  5C Wright & Miller § 3828; *Yavuz*, 576 F.3d at 1173.  Even the case Plaintiffs cite to argue that a *forum non conveniens* motion must be brought "within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed" found such a motion timely nearly *two years* after the case began.  *Chateau des Charmes Wines*, 2003 WL 22682483, at *3–4.  In contrast, NSO has raised its defense just five months after being served with the Complaint.  Plaintiffs cite no authority that, in these circumstances, a *forum non conveniens* defense is so clearly insufficient as to support a motion to strike.

For these reasons, Plaintiffs' motion to strike NSO's *forum non conveniens* defense should be denied.

---

[8] At a minimum, it shows that NSO's argument that Israel is an adequate alternative forum is not "clearly insufficient." *Fabian*, 2020 WL 3402800, at *4.  If there is "any doubt" about whether Israel is an adequate available forum, the motion to strike cannot be granted.  *Holmes*, 966 F. Supp. 2d at 930.

[9] Plaintiffs provide no evidence to back up their speculation that Israel would "refus[e] to entertain claims against NSO based on abuses of its spyware."  (Mot. 11.)  Identifying a single lawsuit that NSO won in Israel (Mot. 11 n.3) does not show that Israeli courts are "so fraught with corruption, delay and bias as to provide no remedy at all."  *Carijano*, 643 F.3d at 1227 (internal quotation marks omitted).  Facebook occasionally wins lawsuits in the United States, but that does not mean the United States is an inadequate forum for plaintiffs who sue Facebook.  Nor does it matter whether full discovery will be available to Plaintiffs in Israel (Mot. 11), since "[d]ifferences in discovery procedures do not provide a sufficient basis for finding an alternative forum to be inadequate."  *Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069, 1074 (C.D. Cal. 2012).

1    **III.    NSO'S ELEVENTH DEFENSE (IMPROPER VENUE DUE TO LACK OF**

2    **PERSONAL JURISDICTION) WAS NOT WAIVED**

3          Plaintiffs' motion to strike NSO's improper venue defense misapprehends the nature of the

4    defense.  Plaintiffs argue that NSO waived an improper venue defense under Rule 12(b)(3) (Mot.

5    12), but Rule 12(b)(3) is not the basis for NSO's defense.  NSO contends that venue is improper

6    "because no Defendant is subject to the Court's personal jurisdiction."  (Answer at 10:3; *see also*

7    *id.* ¶ 13 ("Defendants deny that they are subject to personal jurisdiction of this Court and on that

8    basis deny that venue is proper in this Judicial District.").)  Because NSO challenged personal

9    jurisdiction in its motion to dismiss (Dkt. No. 45), it preserved a challenge to venue due to lack of

10   personal jurisdiction.  *Cf. Vanguard LED Displays, Inc. v. Daktronics, Inc.*, 2017 WL 10295954,

11   at *3 (M.D. Fla. 2017) (holding defendant must move to dismiss for lack of personal jurisdiction

12   to preserve challenge to venue based on lack of personal jurisdiction).

13         Plaintiffs argue that this interpretation of the defense renders it "redundant," but they do

14   not identify any prejudice they will suffer as a result.  (Mot. 13 n.5.)  Absent some prejudice, the

15   mere possibility that NSO's improper venue defense will prove to be redundant of its personal

16   jurisdiction defense does not justify striking it.  *Fabian*, 2020 WL 3402800, at *4; *see Savage v.*

17   *Citibank N.A.*, 2015 WL 4880858, at *4 (N.D. Cal. Aug. 14, 2015) (declining to strike "redundant"

18   defenses because "there is no prejudice to Plaintiff from maintaining such defenses in the

19   pleadings").

20         Nor is the defense insufficient merely because the Court denied NSO's motion to dismiss

21   for lack of personal jurisdiction.  (Mot. 13 n.5.)  The Court's decision assumed the truth of

22   allegations about how NSO's technology interacts with Plaintiff's servers; NSO denies those

23   allegations and Plaintiffs will be unable to prove them.  (*Compare* Dkt. No. 111 at 21–25 (relying

24   on allegation that NSO accessed servers in California), *with* Answer ¶ 60 (denying that

25   allegation).)  As Plaintiffs acknowledge by seeking jurisdictional discovery, they have a continuing

26   burden to prove that personal jurisdiction exists.  (Dkt. No. 116 at 19.)  If, as NSO expects, the

27   evidence does not support Plaintiffs' jurisdictional allegations, NSO can challenge personal

28

jurisdiction in a motion for summary judgment or at trial.[10]  *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990); *Vista v. USPLabs, LLC*, 2014 WL 5507648, at *4 (N.D. Cal. Oct. 30, 2014).  That evidentiary dispute cannot be resolved on a motion to strike.

## IV.    NSO'S TENTH DEFENSE (INTERNATIONAL COMITY) PROVIDES FAIR NOTICE OF A LEGALLY SUFFICIENT AND APPLICABLE DEFENSE

NSO's answer, combined with the allegations in Plaintiffs' complaint, provides fair notice of its international comity defense.  International comity requires dismissal when a case is more "properly adjudicated in a foreign state."  *Mujica v. AirScan Inc.*, 771 F.3d 580, 599 (9th Cir. 2014) (internal quotation marks omitted).[11]  When deciding whether to apply international comity, a court "consider[s] the respective interests of the United States and the foreign country" and asks whether the foreign forum is adequate.  *Id.* at 603.  The Ninth Circuit considers five nonexclusive factors when assessing U.S. interests: "(1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) the foreign policy interests of the United States, and (5) any public policy interests."  *Id.* at 604.  The analysis of the foreign country's interests "essentially mirrors the consideration of U.S. interests."  *Id.* at 607.

These factors are all adequately addressed by the answer and complaint.  First, as explained above, NSO contends that all of the conduct Plaintiffs challenge occurred overseas, and any factual dispute over that claim cannot be resolved before discovery.  *Supra* at 4; (*see* Answer ¶¶ 1, 11, 34–45, 60 (denying allegations that NSO took actions in United States).  Second, NSO is an Israeli corporation. (Compl. ¶¶ 5–6; Answer ¶¶ 5–6; Answer at 10:10.)  Third, the Court's inquiry into the character of the conduct tests "the connection between the conduct and core prerogatives of the sovereign" by asking "whether the action is civil or criminal; whether it sounds in tort, contract, or property; and whether the conduct is a regulatory violation or is a violation of international

---

[10] Plaintiffs do not move to strike NSO's personal jurisdiction defense as insufficient.

[11] NSO need not show, as Plaintiffs suggest (Mot. 13), a "true conflict" between domestic and foreign law.  *Mujica*, 771 F.3d at 602 ("[T]he district court erred when it required the existence of a true conflict when it analyzed the application of international comity.")  Plaintiffs' arguments about extraterritoriality are similarly irrelevant.

norms against torture, war crimes, or slavery." *Mujica*, 771 F.3d at 606.  This is a civil action, sounding in tort and contract, challenging alleged conduct that is not "a violation of international norms against torture, war crimes, or slavery." *Id.*  That alleged conduct, as already explained, has no substantial connection to the United States and, therefore, does not bear on the United States' "core prerogatives." *Id.*  Fourth and fifth, litigating the case in the United States is contrary to foreign and public policy.  Plaintiffs' claims will impair foreign sovereigns' ability to investigate and prevent serious crime because NSO's alleged acts were undertaken "as [an] agent[] of foreign sovereign governments" to assist sovereign conduct that was "lawful under the laws of the states where those actions occurred." (Answer at 9:15–16, 9:26 –27.)  Finally, Israel's interests favor litigation in Israel because, among other things, "Israeli law prohibits certain evidence from leaving Israel pursuant to Israel's export control laws."  (Answer at 10:13–14; *accord* Mot. 11.) Israel is also an adequate alternative forum.  *Supra* at 9–10.

Because all of the elements of an international comity defense are addressed by the complaint and answer, Plaintiffs have fair notice of the defense.  And because those factors plausibly favor NSO, the defense should not be stricken as clearly insufficient.

## V. NSO'S SIXTH DEFENSE (GOOD FAITH/LEGITIMATE JUSTIFICATION) IS NOT INAPPLICABLE

NSO's good faith/legitimate justification defense should not be stricken because it applies to Plaintiffs' claims for at least two reasons.

*First*, Plaintiffs have alleged that NSO acted "wrongfully," "with intent to defraud," or  "to defraud and deceive."  (Compl. ¶¶ 54, 59.)  Plaintiffs' request for punitive damages similarly requires proof that NSO acted with "malice," "oppression," or "fraud."  (Compl. ¶ 66; Mot. 19.) NSO's defense applies because it counters these elements of Plaintiffs' claims and request for punitive damages.

This is not merely an argument that Plaintiffs cannot satisfy their burden of proof.  Some courts have interpreted "intent to defraud" in the CFAA to encompass mere "wrongdoing."[12]  *See*

---

[12] The Ninth Circuit has not adopted this interpretation, and NSO does not agree that it is correct.

*Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 284 (N.D. Cal. 2011).  Plaintiffs, therefore, are likely to argue that they can make out a prima facie case that NSO acted with intent to defraud simply by showing that the Pegasus program sent messages over WhatsApp's servers.  If the Court adopts that argument, NSO must be able to counter Plaintiffs' case by submitting evidence that it did not act wrongfully because it "acted in good faith and pursuant to legitimate law enforcement, national security, intelligence and business justifications."  (Answer at 9:6–7.)  This is a proper affirmative defense.  *See Sum of $70,990,605*, 4 F. Supp. 3d at 204 n.12 (explaining "an affirmative defense . . . functions to bar liability in the face of the plaintiff's prima facie case").[13]

*Second*, the CFAA contains an exception for "any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States."  18 U.S.C. § 1030(f).  NSO's defense alleges that it acted "pursuant to legitimate law enforcement, national security, [and] intelligence . . . justifications."  (Answer at 9:7.)  NSO intends to argue that the CFAA's law-enforcement exception should be extended to protect the "lawfully authorized investigative, protective, or intelligence activity" of foreign government agencies.  18 U.S.C. § 1030(f).  This legal question should not be resolved on a motion to strike.  *See Mireskandari v. Daily Mail & Gen. Trust PLC*, 2013 WL 12129642, at *1 (C.D. Cal. July 31, 2012) ("If there is any doubt as to whether the allegations a party seeks to strike may raise an issue of fact *or law*, the motion should be denied." (emphasis added)); 5C Wright & Miller § 1381 ("[E]ven when the defense seems to present a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as best determined only after further development by way of discovery and a hearing on

---

But NSO expects Plaintiffs to attempt to rely on it.

[13] Even if the defense "merely contend[ed] that NSO's 'good faith' will prevent Plaintiffs from proving the relevant scienter" (Mot. 15), it should not be stricken for that reason absent a "showing of prejudice."  *Fabian*, 2020 WL 3402800, at *4.  Plaintiffs identify no prejudice they will suffer if the defense is not stricken.  *See Savage*, 2015 WL 4880858, at *4 (declining to strike defenses that were "not true affirmative defenses" because "there is no prejudice to Plaintiff from maintaining such defenses in the pleadings").

the merits, either on a summary judgment motion or at trial.").

## VI.   NSO'S TWENTY-THIRD THROUGH THIRTY-FIFTH DEFENSES PROVIDE FAIR NOTICE OF CONSTITUTIONAL ARGUMENTS THAT DO NOT DEPEND ON DETAILED FACTUAL ALLEGATIONS

NSO's Twenty-Third through Thirty-Fifth Defenses mount constitutional challenges to the imposition of damages in certain circumstances.  Such constitutional challenges to punitive damages are proper affirmative defenses.  *Smith v. Wal-Mart Stores*, 2006 WL 2711468, at *6 (N.D. Cal. Sept. 20, 2006); *Weddle v. Bayer AG Corp.*, 2012 WL 1019824, at *5 (S.D. Cal. Mar. 26, 2012).  Whether NSO will succeed on the defenses is irrelevant because Plaintiffs argue that they should be stricken for failure to provide notice, not because they are legally insufficient.

Plaintiffs' argument that NSO has not alleged sufficient facts to support its constitutional defenses is inapt because the defenses present purely legal questions that do not depend on detailed factual allegations.  Whether NSO ultimately raises these arguments, and whether they are successful, will depend on circumstances that develop during or after trial and cannot be alleged at this preliminary stage.  *See* 5C Wright & Miller § 1383 ("the rules do not condemn the pleading of conclusions of law," so "a motion to strike a conclusion under Rule 12(f) should be granted only in an exceptional case").[14]  Nonetheless, as explained below, NSO's answer and Plaintiffs' complaint provide whatever minimal facts are necessary to provide fair notice of the defenses.[15]  Therefore, the Court should not strike any of the defenses.

---

[14] For the same reason, NSO will be able to raise these challenges to a damages award whether or not the Court strikes them as affirmative defenses.  *See SecuriMetrics*, 2005 WL 2463749, at *5 (striking defense of "failure to state a claim for punitive damages" but "recogniz[ing] Defendant's right to challenge Plaintiff's claims for relief and punitive damages either by way of motion or at trial").

[15] Throughout their arguments on these defenses, Plaintiffs rely almost exclusively on *Jansen v. Travelers Commercial Ins. Co.*, 2017 WL 607610 (N.D. Cal. Feb. 15, 2017) (Mot. 3, 16–20).  But the defense in *Jansen* claimed only that "punitive and exemplary damages violate the California Constitution," without identifying any basis for the argument.  *Id.* at *4 n.6.  In contrast, NSO's defenses identify specific constitutional requirements that punitive damages would violate and explain why they would violate them.  In these circumstances, *Jansen* recognizes that constitutional challenges to punitive damages are proper affirmative defenses.  *Id.* at *3; *see Weddle*, 2012 WL 1019824, at *5; *Smith*, 2006 WL 2711468, at *6.

1    In addition, Plaintiffs do not claim or show they will suffer any prejudice from any of these

2    defenses.  That requires the denial of their motion.  *Fabian*, 2020 WL 3402800, at *4.

3    **A.     Twenty-Third Defense (Punitive Damages - Unconstitutional)**

4    Although Plaintiffs focus their argument on the Eighth Amendment (Mot. 16), the Fifth

5    and Fourteenth Amendments undisputedly impose constitutional limitations on the size of punitive

6    damages awards in private civil suits.  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408,

7    416–17 (2003); *BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 568, 574–85 (1996).  This defense asserts

8    that a punitive damages award that exceeds those limitations would be unconstitutional.  Whether

9    a punitive damages award is unconstitutionally excessive cannot be determined until the size of

10   the award is determined after trial.  *See BMW*, 517 U.S. at 580–85 (requiring consideration of

11   "ratio" of punitive damages "to actual harm" and comparison of punitive damages to comparable

12   awards").[16]  Therefore, the Court should not strike this defense.  *See Smith*, 2006 WL 2711468, at

13   *6 (sustaining defense that "claim for punitive damages . . . violates the due process clause, . . .

14   and violates the Eighth Amendment proscription against excessive fines" (alterations omitted)).

15   **B.     Twenty-Fourth and Twenty-Fifth Defenses (Liability and Damages
         Standards Unconstitutional)**

16

17   No factual allegations are necessary to explain these purely legal defenses.  Both assert that

18   California's standards for awarding and calculating punitive damages are unconstitutionally

19   vague.  The test for whether a statute is unconstitutionally vague is well-established.  *See Johnson*

20   *v. United States*, 576 U.S. 591, 595 (2015) (holding the "well-recognized" due process prohibition

21   on vagueness bars laws "so vague that [they] fail[] to give ordinary people fair notice of the

22   conduct [they] punish[], or so standardless that [they] invite[] arbitrary enforcement").  These

23   requirements apply to punitive damages awards.  *Philip Morris USA v. Williams*, 549 U.S. 346,

24   352 (2007); *State Farm*, 538 U.S. at 416; *BMW*, 517 U.S. at 574.  NSO contends that California's

25

26   _____

27   [16] *BMW* also requires consideration of "the degree of reprehensibility of the defendant's conduct."
     517 U.S. at 575.  This factor is addressed by NSO's assertion that it "acted in good faith and
     pursuant to legitimate law enforcement, national security, intelligence and business justifications."

28   (Answer at 9:6–7.)

1    standards are unconstitutional because they are "unduly vague and subjective, and permit arbitrary,

2    capricious, excessive and disproportionate punishment."  (Answer at 12–13); *see Philip Morris*,

3    549 U.S. at 352 (requiring "fair notice" and prohibiting "arbitrary determination[s] of an award's

4    amount" based on "a decisionmaker's caprice" (internal quotation marks omitted)); *State Farm*,

5    538 U.S. at 416 (prohibiting "arbitrary" damages awards); *BMW*, 517 U.S. at 574 (requiring "fair

6    notice . . . of the severity of the penalty").

7         Therefore, Plaintiffs have fair notice of NSO's defense.  *See Weddle*, 2012 WL 1019824,

8    at *5 (holding defense that defendants "cannot be held liable for punitive damages because

9    California's laws are too vague, they deny due process, . . . [and] they violate the Fourteenth

10   Amendment" gave fair notice); *Smith*, 2006 WL 2711468, at *6 (sustaining defense that "claim

11   for punitive damages" was "void for vagueness"); *DC Labs Inc. v. Celebrity Signatures Int'l, Inc.*,

12   2013 WL 4026366, at *5–6 (S.D. Cal. Aug. 6, 2013) (sustaining defense that "California laws are

13   'too vague to permit the imposition of punitive damages'"); *Miller v. Fuhu, Inc.*, 2014 WL

14   4748299, at *2 (C.D. Cal. Sept. 22, 2014) (declining to strike "due process" defense to punitive

15   damages).

16        **C.    Twenty-Sixth Defense (Post-Verdict Review Unconstitutional)**

17        This defense explains NSO's argument that California law "doe[s] not provide a

18   meaningful constraint on the discretion of juries to impose punishment."  (Answer at 13:12-13.)

19   A failure to provide such a constraint violates due process.  *See Philip Morris*, 549 U.S. at 352

20   (holding due process requires states to "insist[] upon proper standards that will cabin the jury's

21   discretionary authority" to impose punitive damages); *cf. Honda Motor Co. v. Oberg*, 512 U.S.

22   415, 426–29 (1994) (invalidating Oregon's limits on post-verdict review of punitive damages).

23   Therefore, Plaintiffs have fair notice of the defense. *See Weddle*, 2012 WL 1019824, at *5; *Smith*,

24   2006 WL 2711468, at *6; *Miller*, 2014 WL 4748299, at *2.  Whether NSO will succeed on the

25   defense is an "issue[] of law" that should not be resolved "on a motion to strike."  5C Wright &

26   Miller § 1381; *see id.* § 1383.  In any event, Plaintiffs do not claim that this defense prejudices

27   them.  *Fabian*, 2020 WL 3402800, at *4; *Savage*, 2015 WL 4880858, at *4.

28        **D.    Twenty-Seventh Defense (Absence of Procedural Safeguards)**

1   This defense provides fair notice of NSO's argument that California's punitive damages

2   laws effectively "impose criminal penalties without the requisite protections." *Weddle*, 2012 WL

3   1019824, at *5; *see State Farm*, 538 U.S. at 428 ("Great care must be taken to avoid use of the

4   civil process to assess criminal penalties that can be imposed only after the heightened protections

5   of a criminal trial have been observed, including, of course, its higher standards of proof."). 

6   Whether NSO will succeed on this argument is an "issue[] of law" that should not be resolved "on

7   a motion to strike."  5C Wright & Miller § 1381; *see id.* § 1383.  In any event, Plaintiffs do not

8   claim or show that this defense prejudices them.  *Fabian*, 2020 WL 3402800, at *4; *Savage*, 2015

9   WL 4880858, at *4.  Therefore, the Court should not strike the defense.  *See Knighten v. Allstate*

10   *Ins. Co.*, 2018 WL 718533, at *1, 3 (W.D. Okla. Feb. 5, 2018) (denying motion to strike defense

11   that award of punitive damages requires "'beyond a reasonable doubt' burden of proof").

12   ### E.       Twenty-Eighth Defense (First Amendment)

13   Plaintiffs' own allegations support this defense.  Plaintiffs have been clear that they seek

14   to hold NSO liable for its marketing of Pegasus.  (Compl. ¶ 26, Exh. 10; Dkt. No. 116 at 7, 13–15;

15   Dkt. No. 125 at 8–9.)  NSO's marketing is commercial speech protected by the First Amendment.

16   *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 557, 566 (2011).  Punishing NSO for that speech

17   would violate the First Amendment.  *E.g.*, *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S.

18   410, 412, 424–28 (1993); *see Smith v. Wade*, 461 U.S. 30, 50 (1983) (recognizing that First

19   Amendment imposes limits on punitive damages).  Plaintiffs have fair notice of this defense, so it

20   should not be stricken.

21   ### F.       Twenty-Ninth Defense (Wealth or Financial Status Unconstitutional)

22   This defense gives fair notice of NSO's argument that it would violate due process to

23   impose punitive damages on the basis of its wealth or financial status.  *See State Farm*, 538 U.S.

24   at 427 ("The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages

25   award."); *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 777 (9th Cir. 2005) ("The wealth of a

26   defendant cannot justify an otherwise unconstitutional punitive damages award, and cannot make

27   up for the failure of other factors, such as 'reprehensibility,' to constrain significantly an award

28   that purports to punish a defendant's conduct." (internal quotation marks omitted)); *In re Roundup*

*Prods. Liab. Litig.*, 385 F. Supp. 3d 1042, 1048 & n.5 (N.D. Cal. 2019) (reducing punitive damages as unconstitutional because defendant's "wealth [did not] support such a high ratio of punitive to compensatory damages"); *QS Wholesale, Inc. v. World Mktg., Inc.*, 2014 WL 12586120, at *7 (C.D. Cal. Jan. 7, 2014) (holding "wealthy defendants are equally entitled to due process," and "[w]ealth cannot be 'an open ended basis for inflating awards'").

Whether NSO will succeed on this argument is an "issue[] of law" that depends on future developments and should not be resolved "on a motion to strike." 5C Wright & Miller § 1381; *see id.* § 1383. In any event, Plaintiffs do not claim or show that this defense prejudices them. *Fabian*, 2020 WL 3402800, at *4; *Savage*, 2015 WL 4880858, at *4. Therefore, the court should not strike the defense. *See Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.*, 2015 WL 847378, at *5 (M.D. Fla. Feb. 26, 2015) (denying motion to strike defense that awarding punitive damages based on defendant's "wealth[] and corporate status" would violate due process).

## G.     Thirtieth Defense (Out-of-State Conduct)

NSO's answer and Plaintiffs' complaint amply support NSO's defense that Plaintiffs pursuit of punitive damages would be objectionable if "based on … out-of-state conduct, profits and aggregate financial status." (Answer at 14:3–4.) NSO is an Israeli company that denies taking any actions in the United States. (Answer ¶¶ 1, 11, 34–45, 60.) Therefore, NSO contends that any damages would necessarily be imposed for entirely out-of-state conduct and profits, which is unconstitutional. *See BMW*, 517 U.S. at 572–73 ("Alabama does not have the power . . . to punish BMW for conduct that was lawful where it occurred and that had no impact on Alabama or its residents."). Plaintiffs accordingly have fair notice of NSO's defense that imposing punitive damages for such out-of-state conduct would violate the Constitution. *See Weddle*, 2012 WL 1019824, at *5 (holding affirmative defense that defendants "cannot be held liable for punitive damages because California's laws . . . deny due process, . . . they violate the Fourteenth Amendment, and they place an unreasonable burden on interstate commerce" gave fair notice of defense); *Smith*, 2006 WL 2711468, at *6 (same).

## H.     Thirty-First Defense (Absence of Malice)

Plaintiffs concede that one basis for awarding punitive damages under California law is

malice (Mot. 19), and this defense adequately responds to that requirement.

In addition, NSO has alleged that it "acted in good faith and pursuant to legitimate law enforcement, national security, intelligence and business justifications," which provides fair notice of the basis for this defense.  (Answer at 9:6–7.)  NSO need not "allege facts showing that punitive damages *will be* awarded without a showing of malicious intent" (Mot. 19 (emphasis added)), since that cannot be known before trial.  But this defense adequately pleads that *if* punitive damages were awarded without such a showing, the award would be unconstitutional.  *See Philip Morris*, 549 U.S. at 353 (due process prohibits punitive damages without showing "reprehensibility of the defendant's conduct"); *Weddle*, 2012 WL 1019824, at *5; *Smith*, 2006 WL 2711468, at *6; *Miller*, 2014 WL 4748299, at *2.

## I.     Thirty-Second Defense (Jurisdiction)

As with NSO's Thirtieth Defense, the answer supports NSO's claim that it did not take any actions within California or the United States.  *Supra* at 19; (Answer ¶¶ 1, 11, 34–45, 60.)  The fact that "the complaint alleges conduct in the United States and California" (Mot. 19) merely creates a factual dispute that cannot be resolved on a motion to strike.  *Kirola*, 2011 WL 89722, at *1; 5C Wright & Miller § 1381.  Similarly, as explained above, the Court's denial of NSO's motion to dismiss for lack of personal jurisdiction (Mot. 19) does not prevent NSO from later arguing that the evidence does not show any conduct in the United States or California.  *Supra* at 11–12.  Therefore, Plaintiffs have fair notice of this defense.  *See Weddle*, 2012 WL 1019824, at *5; *Smith*, 2006 WL 2711468, at *6; *Miller*, 2014 WL 4748299, at *2.

## J.     Thirty-Third Defense (No Harm to Plaintiffs) and Thirty-Fifth Defense (Non-Parties)

Plaintiffs have fair notice of these defenses because the answer denies that NSO took any actions that harmed Plaintiffs.  (Answer ¶¶ 46–48, 57, 64–66, 73.)  These defenses thus adequately plead that if punitive damages were based on conduct that harmed third parties and/or did not harm Plaintiffs, such an award would be unconstitutional.  *See Philip Morris*, 549 U.S. at 353–54 (prohibiting punitive damages based on harm to nonparties); *BMW*, 517 U.S. at 572–73 ("Alabama does not have the power . . . to punish BMW for conduct . . . that had no impact on Alabama or its

residents."); *Weddle*, 2012 WL 1019824, at *5; *Smith*, 2006 WL 2711468, at *6; *Miller*, 2014 WL 4748299, at *2.

### K.    Thirty-Fourth Defense (Dissimilar Conduct)

Plaintiffs have fair notice of this defense because the answer denies that NSO used Pegasus to access WhatsApp users' devices, the only conduct that allegedly injured Plaintiffs.  (*E.g.*, Answer ¶¶ 1, 33–42.)  As NSO has previously argued, its other alleged conduct did not injure Plaintiffs.  (Dkt. No. 133-14 at 12–13; Dkt. No. 142 at 10.)  This defense thus adequately pleads that if punitive damages were based on conduct dissimilar to the conduct that allegedly harmed Plaintiffs, such an award would be unconstitutional.  *See State Farm*, 538 U.S. at 422–23 ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); *Weddle*, 2012 WL 1019824, at *5; *Smith*, 2006 WL 2711468, at *6; *Miller*, 2014 WL 4748299, at *2.

## VII.    IF THE COURT STRIKES ANY OF NSO'S DEFENSES, IT SHOULD GRANT LEAVE TO AMEND

For the reasons given above, the Court should deny Plaintiffs' motion in its entirety.  But if the Court were to strike any of NSO's defenses, it should do so with leave to amend.  "If the court chooses to strike a defense, leave to amend should be freely given so long as there is no prejudice to the opposing party."  *Solis v. Zenith Cap., LLC*, 2009 WL 1324051, at *3 (N.D. Cal. May 8, 2009) (Hamilton, J.).  Plaintiffs do not claim they would suffer any prejudice from granting NSO leave to amend, and an amended answer could cure any deficiencies.  *See Erickson Prods.*, 2017 WL 1315572, at *2 (Hamilton, J.) ("The court is not generally inclined to deny leave [to amend an answer] on the basis of futility . . . .").  Accordingly, the Court should grant NSO leave to amend any affirmative defenses it decides should be stricken.

//

//

//

//

//

1

## <u>CONCLUSION</u>

2        For the foregoing reasons, the Court should deny Plaintiffs' motion to strike.  If the Court

3 strikes any of NSO's affirmative defenses, it should grant NSO leave to amend.

4

5 DATED:  September 24, 2020                KING & SPALDING LLP

6

7

8                                          By:  /s/ *Joseph N. Akrotirianakis*
                                                JOSEPH N. AKROTIRIANAKIS
9                                               AARON S. CRAIG
                                                Attorneys for Defendants NSO GROUP
10                                              TECHNOLOGIES LIMITED and Q
                                                CYBER TECHNOLOGIES LIMITED
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28