UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, et al.,<br><br>    Defendants. | Case No. 19-cv-07123-PJH<br><br>**ORDER GRANTING MOTION TO STAY, DENYING MOTION TO COMPEL, AND GRANTING MOTIONS TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 116, 117, 133, 143 |

Before the court is defendants NSO Group Technologies Ltd. ("NSO") and Q Cyber Technologies Ltd.'s (together with NSO, "defendants") motion to stay pending appeal, (Dkt. 117), and plaintiffs WhatsApp Inc. ("WhatsApp") and Facebook, Inc.'s ("Facebook" and together with WhatsApp, "plaintiffs") motion to compel discovery, (Dkt. 116). The matters are fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court rules as follows.

## BACKGROUND

On October 29, 2019, plaintiffs filed a complaint ("Compl.") alleging that defendants sent malware, using WhatsApp's system, to approximately 1,400 mobile phones and devices designed to infect those devices for the purpose of surveilling the users of those phones and devices. Dkt. 1, ¶ 1. The complaint alleges four causes of action: (1) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (2) violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502; (3) breach of contract; and (4) trespass to chattels.

On April 4, 2020, defendants filed a motion to dismiss the complaint, moving to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 12(b)(7). Dkt. 45. On July 16, 2020, the court issued an order granting in part and denying in part defendants' motion to dismiss and, as relevant to the present motion, determined that defendants could not assert any sovereign immunity derived from their clients who are sovereign nations. Dkt. 111. On July 21, 2020, defendants filed a notice of appeal, appealing the court's sovereign immunity finding. Dkt. 112.

Meanwhile, plaintiffs have attempted to take discovery of defendants and served their first requests for production on June 2, 2020. Dkt. 116. Defendants have refused to produce any documents and, as a result, plaintiffs have filed a motion to compel discovery, (id.) with the same briefing schedule as the motion to stay pending appeal.[1]

# DISCUSSION

## A. Legal Standard

As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (citations omitted). As a corollary to the divestiture rule, "where an appeal is taken from a judgment which does not finally determine the entire action, the appeal does not prevent the district court from proceeding with matters not involved in the appeal." Britton v. Co-op Banking Grp., 916 F.2d 1405, 1411 (9th Cir. 1990).

A court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Use of this power "calls for the exercise of judgment, which must weigh competing interests and

---

[1] In addition, defendants filed a second motion to dismiss plaintiffs' request for injunctive relief under Rule 12(b)(1), (Dkt. 105), and plaintiffs filed a motion to strike portions of defendants' answer, (Dkt. 140).

maintain an even balance." Id. at 254–55; see also Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983) ("[T]he district court did not abuse its discretion by staying the action pending receipt of the results of arbitration.").

In determining whether it should exercise its discretion to grant a stay, the court should consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254–55). Additionally, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 864 (9th Cir. 1979).

**B.    Analysis**

The ultimate question before the court is the extent to which defendants' appeal divests the court of jurisdiction over pretrial discovery and any pretrial proceedings. Both defendants' motion to stay pending appeal and plaintiffs' motion to compel discovery implicate this question. Defendants argue that their appeal involves claims of foreign sovereign immunity and because foreign sovereign immunity is immunity from suit, the aspects of the case involved in the appeal are quite broad. Mtn. at 2–3. In other words, if defendants prevail on their appeal, they would be able to assert sovereign immunity such that they would be free from all burdens of litigation, including discovery. Id. at 3. Plaintiffs respond that an appeal regarding the specific sovereign immunity defenses asserted by defendants does not warrant an automatic stay and those defenses only operate as affirmative defenses to liability, rather than the right not to be sued. Opp. at 1.

The Supreme Court has held that certain types of immunity cases are immediately appealable based on the collateral order doctrine. In Nixon v. Fitzgerald, 457 U.S. 731 (1982), and Mitchell v. Forsyth, 472 U.S. 511 (1985), the Court determined that orders denying individual officials' claims of absolute and qualified immunity could be

immediately appealed. In <u>Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 147 (1993), the Court held that States and state entities that claim to be "arms of the State" could also take advantage of the collateral order doctrine based on their Eleventh Amendment immunity.[2] The common element of these cases is that they involve immunity from suit rather than a defense to liability. Thus, in <u>Metcalf & Eddy</u>, the Court explained the import of <u>Fitzgerald</u> and <u>Mitchell</u>:

> We found that, absent immediate appeal, the central benefits of qualified immunity—avoiding the costs and general consequences of subjecting public officials to the risks of discovery and trial—would be forfeited . . . . "The entitlement is an <u>immunity from suit</u> rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."

506 U.S. at 143–44 (quoting <u>Mitchell</u>, 472 U.S. at 526).

The Ninth Circuit has held that orders denying motions to dismiss for lack of jurisdiction under the Foreign Sovereign Immunity Act ("FSIA") are also immediately appealable under the collateral order doctrine. <u>Doe v. Holy See</u>, 557 F.3d 1066, 1074 (9th Cir. 2009) (per curiam) (citing <u>Schoenberg v. Exportadora de Sal, S.A.</u>, 930 F.2d 777, 779 (9th Cir. 1991)). "An interlocutory appeal insures that 'a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided [in the FSIA].'" <u>Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Ct. for Cent. Dist. of Cal.</u>, 859 F.2d 1354, 1358 (9th Cir. 1988) (per curiam) (quoting 28 U.S.C. § 1604). Thus, the reason foreign sovereign immunity under the FSIA is immediately appealable is because it is immunity from suit.[3]

---

[2] The term Eleventh Amendment immunity is a shorthand for state sovereign immunity. <u>Del Campo v. Kennedy</u>, 517 F.3d 1070, 1075 (9th Cir. 2008). Eleventh Amendment immunity is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Instead, immunity is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution and which they retain today[,] except as altered by the plan of the Convention or certain constitutional amendments." <u>Id.</u> (alteration in original) (citations and quotation marks omitted).

[3] The reason that cases involving immunity from suit are immediately appealable under the collateral order doctrine is because the value of immunity "is for the most part lost as litigation proceeds past motion practice." <u>Metcalf & Eddy</u>, 506 U.S. at 145. Conversely, when an immunity is simply a defense to liability, "the benefits of immunity are not lost if

4

Plaintiffs acknowledge this line of cases and characterize them as relating to status-based immunities, e.g., absolute immunity, qualified immunity, Eleventh Amendment immunity, and double jeopardy. Opp. at 4. Nonetheless, they argue that defendants cannot avail themselves of these status-based immunities because the foreign sovereign immunity on which defendants rely is not immunity from suit. Id. at 5–6. As plaintiffs point out, not all types of immunities necessarily require immunity from suit. For example, in Alaska v. United States, 64 F.3d 1352, 1356 (9th Cir. 1995), the Ninth Circuit noted that "federal sovereign immunity is a defense to liability rather than a right to be free from trial" and held that an order denying federal sovereign immunity was not immediately appealable under the collateral order doctrine.

With that framing in mind, the court must determine whether either of the two types of foreign sovereign immunities asserted by defendants would qualify as immunity from suit, i.e., Compania Mexicana (foreign sovereign immunity), Fitzgerald (absolute immunity), Mitchell (qualified immunity), and Metcalf & Eddy (Eleventh Amendment), or immunity from liability, i.e., Alaska (federal sovereign immunity).

### 1. Foreign Official Immunity

In its prior order, the court examined whether defendants could assert a common law foreign official immunity. Dkt. 111 at 10–12. Beginning with the Supreme Court's opinion in The Schooner Exchange v. McFaddon, 7 Cranch 116, 3 L.Ed. 287 (1812), up until the enactment of the FSIA in 1976, the doctrine of foreign sovereign immunity was entirely a matter of common law. See Samantar v. Yousuf, 560 U.S. 305, 311 (2010). The Schooner Exchange "came to be regarded as extending virtually absolute immunity to foreign sovereigns." Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 486 (1983) (citations omitted). The enactment of the FSIA generally "codifie[d], as a matter of federal law, the restrictive theory of sovereign immunity." Id. at 488. Yet, until the

---

review is postponed." Alaska, 64 F.3d at 1356. It is not for this court to decide whether defendants meet the collateral order doctrine, but if they prevail on appeal, that decision would necessarily entail a holding that their immunity entails the immunity from suit, not just immunity from liability.

Supreme Court's decision in Samantar, lower courts disputed whether a foreign official could assert the FSIA's immunity from suit. See, e.g., Chuidian v. Philippine Nat. Bank, 912 F.2d 1095, 1103 (9th Cir. 1990).

While Samantar held that the FSIA did not apply to foreign officials, 560 U.S. at 325, the Court did not consider whether a foreign official could still assert a common law foreign official immunity, id. at 325–26 (remanding to consider whether official may be entitled to immunity under the common law). In Yousuf v. Samantar, 699 F.3d 763, 774 (4th Cir. 2012), the Fourth Circuit determined that a foreign official could assert common law foreign official immunity and in Doğan v. Barak, 932 F.3d 888, 894 (9th Cir. 2019), the Ninth Circuit adopted the same rule.

Plaintiffs contend that Doğan did not purport to confer a "right not to be tried" upon common law foreign official immunity. Opp. at 6. Plaintiffs also distinguish defendants' citation of Compania Mexicana, 859 F.2d 1354, as only relating to the FSIA. Id. Defendants respond that Doğan expressly held that common law foreign official immunity is immunity from suit rather than a defense to liability. Reply at 3.

Doğan, 932 F.3d at 891, dealt with whether a former Israeli Minister of Defense could assert common law foreign official immunity as a defense against claims arising under the Alien Tort Claims Act, the Torture Victim Protection Act ("TVPA"), and the Anti-Terrorism Act. Citing the Restatement (Second) of Foreign Relations Law, the court determined that the defendant could assert common law foreign sovereign immunity. Id. at 893–94. Then, the Ninth Circuit examined whether the TVPA abrogated common law foreign official immunity. Id. at 894. While it cited several reasons why the TVPA did not abrogate foreign official immunity, as relevant here, the court stated, "[b]ecause the whole point of immunity is to enjoy 'an immunity from suit rather than a mere defense to liability,' the [plaintiffs'] reading of the TVPA would effectively extinguish the common law doctrine of foreign official immunity." Id. at 895 (quoting Compania Mexicana, 859 F.2d at 1358). While dicta, the Doğan court considered foreign official immunity to be immunity from suit rather than a defense to liability.

6

Other cases indicate that if it applies,[4] foreign official immunity would be virtually absolute because it derives from the immunity of the foreign sovereign. As discussed, foreign sovereign immunity is "virtually absolute." Verlinden, 461 U.S. at 486. In turn, foreign officials derive their immunity from the immunity of the sovereign so long as the official's act was performed as an act of that sovereign. After remand from the Supreme Court, the Fourth Circuit in Yousuf v. Samantar noted that

> [C]onduct-based immunity for a foreign official derives from the immunity of the State: "The doctrine of the imputability of the acts of the individual to the State . . . in classical law . . . imputes the act solely to the state, who alone is responsible for its consequence. In consequence any act performed by the individual as an act of the State enjoys the immunity which the State enjoys."

699 F.3d at 774 (second and third alterations in original) (quoting Hazel Fox, The Law of State Immunity, 455 (2d ed. 2008)); see also Matar v. Dichter, 563 F.3d 9, 14 (2d Cir. 2009) ("[E]ven if Dichter, as a former foreign official, is not categorically eligible for immunity under the FSIA[,] . . . he is nevertheless immune from suit under common-law principles that pre-date, and survive, the enactment of that statute." (emphasis added)).

In Mireskandari v. Mayne, 2016 WL 1165896, at *17–20 (C.D. Cal. Mar. 23, 2016), the district court determined that four individuals who worked for a foreign government were foreign officials acting in their official capacities such that they could assert common law sovereign immunity. The district court determined for each defendant that they were immune from suit and it could not exercise subject matter jurisdiction over the claims asserted against them. On appeal, the Ninth Circuit affirmed the district court's dismissal of the defendants based on common law foreign sovereign immunity. Mireskandari v. Mayne, 800 Fed. App'x 519, 519–20 (9th Cir. 2020) (citing Doğan, 932 F.3d at 893–94).

---

[4] To reiterate, this entire analysis assumes that defendants would prevail on appeal. With regard to immunity defenses, the collateral order doctrine presupposes that there is immunity from suit, as opposed to a defense to liability. Indeed, in Metcalf & Eddy, the Court reasoned that if Eleventh Amendment immunity was "merely a defense to liability," then the litigant asserting the immunity "arguably would not be entitled to avail itself of the collateral order doctrine." 560 U.S. at 145 (citing Van Cauwenberghe v. Biard, 486 U.S. 517, 526–527 (1988)).

7

The foregoing demonstrates that, if defendants prevail in establishing common law foreign official immunity, that immunity would operate as immunity from suit, not simply immunity from liability.

### 2. Derivative Foreign Sovereign Immunity

This court's prior order also determined that defendants could not avail themselves of any derivative sovereign immunity. Dkt. 11 at 13–15. The court first noted that the Ninth Circuit has not adopted a rule of derivative foreign sovereign immunity whereby a contractor could derive immunity from a foreign sovereign based on the Supreme Court's decision in Yearsley v. W.A. Ross Construction Co., 309 U.S. 18 (1940), and applied by the Fourth Circuit in Butters v. Vance International, Inc., 225 F.3d 462, 466 (4th Cir. 2000). The court also determined that, even if the Ninth Circuit were to adopt the Butters rule, defendants still could not avail themselves of the rule because they are foreign contractors trying to assert foreign sovereign immunity as opposed to a U.S. contractor asserting foreign sovereign immunity. Dkt. 111 at 14–15.

In passing, plaintiffs cite Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016), for the proposition that federal contractors do not share the government's unqualified immunity from liability and litigation and Martin v. Halliburton, 618 F.3d 476 (5th Cir. 2010), for the proposition that denial of derivative sovereign immunity is not subject to immediate review under the collateral order doctrine. Opp. at 5 n.4. In response, defendants cite cases where contractors asserting derivative sovereign immunity were able to assert immunity from suit, not just immunity from liability. Reply at 6.

The parties cite two types of domestic derivative immunity as persuasive: federal sovereign immunity and state sovereign immunity. With respect to the former, a few appellate decisions[5] have recognized the Supreme Court's decision in Yearsley, as

---

[5] The Ninth Circuit has also recognized the Yearsley contractor immunity, though the proper scope remains an open question. In Cabalce v. Thomas E. Blanchard & Associates, Inc. the court noted that, "[w]e have held that derivative sovereign immunity, as discussed in Yearsley, is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'" 797 F.3d 720, 732 (9th Cir. 2015) (quoting In re Hanford Nuclear Reservation Litig., 534 F.3d 986, 1001

8

1 establishing a derivative immunity for federal contractors. See Ackerson v. Bean
2 Dredging LLC, 589 F.3d 196, 204–07 (5th Cir. 2009). As previously discussed, federal
3 sovereign immunity is not appealable under the collateral order doctrine, Alaska, 64 F.3d
4 at 1357, and it follows that derivative federal contractor immunity, which is narrower than
5 federal sovereign immunity, Campbell-Ewald, 136 S. Ct. at 672, is likewise not
6 appealable under the collateral order doctrine. Indeed, in a federal contractor case, the
7 Fifth Circuit has held that "a denial of [derivative] sovereign immunity is not subject to
8 immediate review under the collateral order doctrine." Martin, 618 F.3d at 485 (alteration
9 in original) (quoting United States v. Rose, 587 F.3d 695, 705 (2009) (per curiam)).
10 Thus, if derivative foreign sovereign immunity is similar to derivative federal sovereign
11 immunity, then plaintiffs have a plausible argument that derivative foreign sovereign
12 immunity is not immunity from suit.

13     With respect to state sovereign immunity, the Ninth Circuit has previously
14 permitted interlocutory review under the collateral order doctrine to determine whether a
15 private company contracted by a state or state entity could assert derivative state
16 sovereign immunity. See Del Campo, 517 F.3d 1070. Defendants cite Del Campo as
17 demonstrating that derivative sovereign immunity is immunity from suit, because if it were
18 otherwise, then the defendant would not have been able to appeal under the collateral
19 order doctrine. Reply at 6–7. Presumably, if state sovereign immunity is similar to
20 foreign sovereign immunity, then comparison to Del Campo is helpful to defendants.

21     In some respects, this discussion is academic because it presupposes that the
22 Ninth Circuit, on appeal in this case, would adopt a rule similar to the Fourth Circuit's rule
23 in Butters. In Butters, the court cited Yearsley for the proposition that "contractors and
24 common law agents acting within the scope of their employment for the United States

---

(9th Cir. 2008)). In Gomez v. Campbell-Ewald Co., 768 F.3d 871, 879 (9th Cir. 2014), the Ninth Circuit characterized Yearsley as establishing "a narrow rule regarding claims arising out of property damage caused by public works projects." However, on appeal to the Supreme Court, the Court rejected this interpretation, noting "[c]ritical in Yearsley was not the involvement of public works, but the contractor's performance in compliance with all federal directives." Campbell-Ewald, 136 S. Ct. at 673 n.7.

1    have derivative sovereign immunity. 225 F.3d at 466. This might suggest that a similar
2    derivative sovereign immunity is not immediately appealable and not a complete defense,
3    as recognized in Alaska and Martin. Yet, the contractor in Butters derived its immunity
4    not from the United States, but from the Kingdom of Saudi Arabia, which was immune
5    from suit under the FSIA. Id. at 465 (citing 28 U.S.C. § 1604). Unlike federal sovereign
6    immunity, foreign sovereign immunity under the FSIA is appealable under the collateral
7    order doctrine, Compania Mexicana de Aviacion, 859 F.2d at 1358, and is a complete
8    defense from suit.

In sum, it is not clear whether this case is closer to derivative federal sovereign immunity (immunity from liability) or foreign sovereign immunity (immunity from suit). The lack of clarity illustrates the hazard of opining on an issue that the Ninth Circuit has not adopted, hence this court's prior determination. However, it is plausible that, if the Ninth Circuit were to adopt the Butters' rule, the contractor immunity would be immunity from suit because it derives from a foreign sovereign and not the federal government.

### 3.  Whether the Court Retains Any Jurisdiction

Having determined that either of defendants' sovereign immunity defenses could provide immunity from suit, the court turns to plaintiffs' arguments that, notwithstanding such a finding, the court can still exercise jurisdiction. First, plaintiffs contend that even if the immunity defenses asserted by defendants provide a right not to be tried, there is no blanket rule that any and all discovery should be denied pending appeal. Opp. at 6. They argue that courts have allowed discovery to proceed even where doing so imposed some burdens of litigation on a defendant that otherwise has the right not to be tried. Id. at 6–7.

Plaintiffs cite J.P. by & through Villanueva v. County of Alameda, 2018 WL 3845890, at *3 (N.D. Cal. Aug. 13, 2018), as an example where a court permitted discovery to proceed because the prejudice to the plaintiff of an open-ended stay. J.P. dealt with qualified immunity, which is immunity from liability, and not immunity from suit. See id. ("[I]f the County Defendants are correct that they are immune from liability and the

10

Ninth Circuit so finds, then, in fact, there will be no prejudice as the case will not be allowed to proceed against them."). Here, defendants have a plausible contention that, if they prevail on appeal, they are immune from suit and the prejudice to them is entirely different than the lack of prejudice in J.P.

Plaintiffs also cite Schering Corp. v. First DataBank Inc., 2007 WL 1747115, at *4 (N.D. Cal. June 18, 2007), where the district court found that, despite an interlocutory appeal of a denial of an anti-SLAPP motion to strike, the court retained jurisdiction over pretrial and case-management issues including discovery. The court recognized that California law treated anti-SLAPP immunity as akin to substantive immunity from suit, id. (citing Batzel v. Smith, 333 F.3d 1018 (9th Cir. 2003)),[6] but reasoned that "because discovery and other pretrial matters are not relevant to the subject of the appeal—[the defendant's] claim of immunity under the anti-SLAPP statute—this Court retains jurisdiction over all other matters." In support of this conclusion, the Schering court cited the Ninth Circuit's opinion in United States v. Claiborne, 727 F.2d 842 (9th Cir. 1984). There, the court determined that it was harmless error for a trial court to hear pretrial motions even where the defendant raised a meritorious "right not to be tried" claim. Id. at 844. The Schering court acknowledged that the anti-SLAPP statute provided a "right not to be dragged through the courts," but determined that harm to the defendant in complying with "pretrial procedures would be negligible or at least must be evaluated matter by matter." 2007 WL 1747115, at *4 (citation omitted).

The Schering court's reasoning is not persuasive considering dicta from the Supreme Court. In discussing qualified immunity, the Court in Mitchell noted that motivating concerns in applying immunity were "not limited to liability for money damages; they also include[d] 'the general costs of subject officials to the risks of

---

[6] After the Ninth Circuit's decision in Batzel, the California legislature amended the anti-SLAPP law and "effectively stripped the right of immediate appealability from all cases in which the trial court determined a public interest exception applie[d]." Breazeale v. Victim Servs., Inc., 878 F.3d 759, 767 (9th Cir. 2017) (citing Cal. Civ. Proc. Code § 425.17(e)). This change in the law does not impact the Schering court's reasoning at the time it issued its opinion.

11

trial . . . ." 472 U.S. at 526 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982)). "Indeed, Harlow emphasizes that even such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" Id. (alteration in original) (quoting Harlow, 457 U.S. at 817). Thus, even in cases involving immunity from liability, as opposed to immunity from suit, imposing discovery on officials is to be avoided.

That concern is more acute in cases involving immunity from suit  For example, the Metcalf & Eddy court, examining Eleventh Amendment immunity, stated "the value to the States of their Eleventh Amendment immunity, like the benefit conferred by qualified immunity to individual officials, is for the most part lost as litigation proceeds past motion practice." 506 U.S. at 145 (footnote omitted) (emphasis added); see also Town of Browning v. Sharp, 2015 WL 1246543, at *2 (D. Mont. Mar. 17, 2015) (retaining jurisdiction but noting that the "case ha[d] not proceeded beyond motion practice, so the value of Defendants' sovereign immunity will not be lost even if the Ninth Circuit reverses this Court's decision").

Finally, Claiborne, 727 F.2d at 851, upon which Schering relies, determined it was harmless error for a district court to retain jurisdiction and decide pre-trial motions while a double jeopardy collateral order appeal was pending. Neither Claiborne nor Schering dealt with foreign sovereign immunity and their persuasiveness is limited.

Next, plaintiffs argue that defendants have the burden of establishing the factual predicates for their immunity defenses and those claimed immunities require discovery in order to make factual findings regarding NSO's conduct. Opp. at 7. The Supreme Court considered a similar argument in Metcalf & Eddy. There, the respondent argued that "a distinction should be drawn between cases in which the determination of a State or state agency's claim to Eleventh Amendment immunity is bound up with factual complexities whose resolution requires trial and cases in which it is not." Metcalf & Eddy, 506 U.S. at 147. The Court rejected this argument, id., noting that the sovereignty inquiry would likely not be fact intensive. The Court also cited with approval its reasoning in Mitchell,

12

see id., that the "question of immunity is separate from the merits of the underlying action for purposes of the [collateral appeal doctrine], even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue," Mitchell, 472 U.S. at 528–29.

Despite plaintiffs' contention that there have been no factual findings, (Opp. at 7), that any of defendants' conduct met the requirements for foreign official or derivative sovereign immunity, the court's prior order did, in fact, consider evidence outside the pleadings in arriving at its determinations. Specifically, the court determined that defendants met the first and second factors of the foreign official immunity test, but defendants did not demonstrate that judgment in the case would bind their foreign sovereign clients. Dkt. 111 at 11–12. The court also determined that defendants failed to meet the requirements for derivative foreign sovereign immunity (assuming such immunity is even available). Id. at 14. While plaintiffs point out that the court stated: "the boundary between defendants' conduct and their clients' conduct is not clearly delineated or definitively resolved," (id. at 19), it does not follow that this court or the Ninth Circuit cannot determine the initial questions of subject matter jurisdiction based on the declarations submitted in support of defendants' motion to dismiss. This is because the question of immunity is separate from the merits of the underlying action. See Mitchell, 472 U.S. at 528–29.

Finally, plaintiffs argue there is no reason to stay discovery as to those claims to which NSO has no arguable immunity, namely the breach of contract claim, which plaintiffs contend is based on NSO's own conduct in reverse engineering the WhatsApp app, developing spyware in the first instance, testing it on WhatsApp's systems, and marketing it. Opp. at 8. Defendants contend that their appeal challenges the entire complaint and will argue that they are immune from suit on all of plaintiffs' claims. Reply at 9.

The district court in J.P., 2018 WL 3845890, at *2, dealt with a similar issue as certain defendants in that case argued that all claims asserted against them were at

issue in the appeal.  The court reasoned that "[b]ecause the County Defendants' appeal presumptively pertains to all claims against them, the stay is granted as to them," id., and in a footnote the court went on to state: "[n]otwithstanding the foregoing, it is not clear from the County Defendants' filings whether all claims are, in fact, impacted.  Whether the Ninth Circuit actually decides to exercise jurisdiction over all of the claims asserted against the County Defendants is an entirely separate matter," id. at *2 n.2.  This reasoning is applicable here.  As the court previously noted "the boundary between defendants' conduct and their clients' conduct is not clearly delineated or definitively resolved," (Dkt. 111 at 19), thus it is unclear whether the breach of contract claim falls within the scope of immunity asserted.  Because defendants' appeal presumptively pertains to all of plaintiffs' claims, it is appropriate here to stay all claims until resolution of defendants' appeal.

To summarize the foregoing, if the Ninth Circuit determines that this court erred in finding defendants could not assert foreign official immunity or derivative sovereign immunity, then they would have been immune from all of plaintiffs' claims from the outset.  Permitting this case to proceed through discovery, in the meantime, would undermine the fundamental privilege of immunity from suit.

### 4. Motions to File Under Seal

Both defendants, (Dkt. 133), and plaintiffs, (Dkt. 143), filed administrative motions to file under seal relating to the motion to compel arbitration.  Defendants seek to file under seal portions of their opposition brief to the motion as well as declarations and exhibits filed in support of the opposition.  Dkt. 133 at 1.  Plaintiffs request portions of their reply brief be filed under seal because it refers to material that defendants designated as high confidential pursuant to a protective order between the parties and approved by the court.  Dkt. 143 at 1.  Neither party opposes the motions.

There is a general presumption in favor of public access to federal court records.  Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003).  "[T]he proponent of sealing bears

14

the burden with respect to sealing.  A failure to meet that burden means that the default posture of public access prevails."  Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1182 (9th Cir. 2006).  When a request to seal documents is made in connection with a motion, the court must determine whether the parties are required to overcome that presumption with "compelling reasons" or with "good cause."  A party seeking to seal materials submitted with a motion that is "more than tangentially related to the merits of the case"—regardless whether that motion is "technically dispositive"—must demonstrate that there are compelling reasons to keep the documents under seal.  Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1101–02 (9th Cir. 2016).  Conversely, if the motion is only tangentially related to the merits, "a 'particularized showing,' under the 'good cause' standard of Rule 26(c) will 'suffice[] to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions."  Kamakana, 447 F.3d at 1180 (alteration in original) (quoting Foltz, 331 F.3d at 1135, 38).

Here, plaintiffs' motion to compel discovery is only tangentially related to the merits and the good cause standard applies.  Defendants contend, and the court agrees, that the documents to be sealed contain highly sensitive, non-public information.  Dkt. 133 at 3.  Further, the material to be sealed in the briefs is narrowly tailored that seeks to seal only sealable material.  Accordingly, the court GRANTS the parties' motions.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to stay pending appeal is GRANTED, plaintiffs' motion to compel discovery is DENIED WITHOUT PREJUDICE, and the parties' motions to file under seal are GRANTED.  Defendants' motion to dismiss plaintiffs' claim for injunctive relief and all other litigation is STAYED pending resolution of defendants' appeal by the Court of Appeal.

**IT IS SO ORDERED.**

Dated: September 29, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge