Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
    (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
               antonio.perez@davispolk.com
               craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC, and<br>META PLATFORMS INC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>                    Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – [ADDENDUM FILED UNDER SEAL AS EXHIBIT A TO THE FEBRUARY 9, 2023, DECLARATION OF JOSEPH N. AKROTIRIANAKIS]**<br><br>Date:        Feb. 16, 2023<br>Time:        2:00 p.m.<br>Courtroom:  3, 3rd Floor<br>Judge:        Hon. Phyllis J. Hamilton |

1

Plaintiffs WhatsApp LLC ("WhatsApp") and Meta Platforms, Inc. ("Meta") and Defendants NSO Group Technologies Limited ("NSO") and Q Cyber Technologies Limited ("Q Cyber") submit this Case Management Statement and Proposed Order under the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.[1]

## I.    JURISDICTION AND SERVICE

*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

**Plaintiffs' statement:**

The Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action alleges violations of federal law, namely, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*  The Court has supplemental jurisdiction over Plaintiffs' state-law causes of action—for violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") and for breach of contract—under 28 U.S.C. § 1367 because they arise from the same nucleus of operative fact as Plaintiffs' CFAA claim.  Further, the Court has diversity jurisdiction under 28 U.S.C. § 1332 because complete diversity exists between the Plaintiffs and each of the named Defendants and because the amount in controversy exceeds $75,000.  Both this Court and the U.S. Court of Appeals for the Ninth Circuit have held the Court is not deprived of subject-matter jurisdiction on the basis of Defendants' claimed derivative immunity as an agent of foreign governments.  Dkt. 111 at 10–15; Order, *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 20-16408 (9th Cir. Nov. 8, 2021), Dkt. No. 76-1. The U.S. Supreme Court denied Defendants' petition for writ of certiorari on the issue of derivative foreign sovereign immunity.  Order, *NSO Grp. Techs. Ltd. v. WhatsApp Inc.*, No. 21-1338 (S. Ct. Jan. 9, 2023).

The Court held that it has personal jurisdiction over Defendants because Defendants' contacts with California establish specific jurisdiction in this case. Dkt. 111 at 18–32.

---

[1] Plaintiffs previously submitted Separate Case Management Statements on February 6, 2020 and March 19, 2020.  Dkt. Nos. 18, 35.  The parties submitted a Joint Case Management Statement on May 21, 2020.  Dkt. No. 76.

Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the harm to Plaintiffs occurred in this District.

All Defendants have been served.

**Defendants' statement:**

*Subject matter jurisdiction.*  Defendants concede that the Ninth Circuit held in W*hatsApp Inc. v. NSO Grp. Technologies Ltd.*, 17 F.4th 930 (9th Cir. 2021), that this Court may exercise subject-matter jurisdiction over this case.  Defendants, however, maintain that the Ninth Circuit's decision is incorrect for the reasons given by Defendants and the U.S. Solicitor General in their briefs to the Supreme Court. Defendants reserve the right to argue that this Court lacked subject-matter jurisdiction in any appeal, should there be any final judgment in Plaintiffs' favor or if the governing law changes while the case is pending.

*Personal jurisdiction.*  Defendants dispute that this Court may exercise personal jurisdiction over them.  This Court did not hold that "Defendants' contacts with California establish specific jurisdiction."  It held that Plaintiffs' allegations, if assumed to be true, supported specific jurisdiction for purposes of Defendants' motion to dismiss. Specifically, the Court interpreted Plaintiffs' complaint to allege that Defendants specifically "sought out WhatsApp's California-based servers for the purpose of routing malicious code through those servers."  (Dkt. No. 111 at 24.)  Even assuming that decision was correct under Plaintiffs' allegations (which Defendants do not concede), Plaintiffs have an ongoing obligation to prove the existence of personal jurisdiction at every stage of the case. *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990). Plaintiffs will not be able to prove that Defendants specifically targeted Plaintiffs' California-based servers as opposed to servers located anywhere else in the world. Without that proof, Plaintiffs will not be able to establish personal jurisdiction. *See, e.g.*, *FPK Servs. LLC v. Does 1-10*, 2020 WL 5982061, at *1-2 (N.D. Cal. Oct. 8, 2020); *E3 Innovation Inc. v. DCL Techs. Inc.*, 2021 WL 5741442, at *9 n.11 (D. Ariz. Dec. 2, 2021); *StratusLive, LLC v. Wimr Grp., LLC*, 2020 WL 6305875, at *4-5 (E.D. Va. Oct. 14, 2020).

*Venue.*  Defendants do not agree with Plaintiffs' interpretation of the venue statute or that where allege "harm . . . occurred" is a proper basis for the laying of venue under 28 U.S.C. §

3

1391(b). But Defendants do not challenge venue separately from their challenges to the Court's subject-matter and personal jurisdiction.

*Service*. Defendants voluntarily appeared in this action by the appearance of counsel on March 6, 2020.

## II. FACTS

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

**Plaintiffs' statement:**

Defendants manufactured, distributed, and operated surveillance technology known as "spyware," designed to covertly intercept and extract information and communications from devices (collectively, "Defendants' Spyware" or "Spyware"). Defendants have marketed different types of Spyware, including spyware that could be surreptitiously installed on a victim's mobile phone without the victim taking any action, such as clicking a link or opening a message. Their Spyware includes products marketed using such brand names as "Pegasus" and "Phantom." Once installed, Defendants' Spyware could access a broad array of private information, including the mobile phone's or device's location, camera, microphone, memory and hard drive, as well as private emails, calls, texts, and messages sent via iMessage, Skype, Telegram, WeChat, Messenger, WhatsApp, and other platforms. According to public reporting, Defendants' clients included government agencies in the Kingdom of Bahrain, the United Arab Emirates, and Mexico.

Between in and around April 2019 and May 2019, Defendants used WhatsApp servers, located in the United States and elsewhere, to send their spyware to approximately 1,400 mobile phones and devices belonging to attorneys, journalist, human rights activists, government officials, and others. Unable to break WhatsApp's end-to-end encryption, Defendants developed their malware to access messages and other communications after they were decrypted on a device. Defendants' actions were not authorized by Plaintiffs and violated the WhatsApp terms of service.

In May 2019, Plaintiffs detected and stopped Defendants' unauthorized access and abuse of the WhatsApp service and computers. On October 29, 2019, Plaintiffs filed this lawsuit seeking injunctive relief and damages based on federal and state claims. The facts concerning Defendants' conduct and widespread abuses have been detailed in the Complaint in this action, and have been

4

the subject of widespread press reporting, including the "Pegasus Project," which explained how "[h]uman rights activists, journalists and lawyers across the world have been targeted by authoritarian governments using" Defendants' spyware.[2]

In November 2021, the U.S. Department of Commerce added NSO Group to the Entity List, which identifies entities reasonably believed to be involved in activities contrary to the national security or foreign policy interests of the United States and subjects those entities to strict export licensing requirements. 86 Fed. Reg. 60759 (Nov. 4, 2021).

Since the filing of the Complaint, there have been numerous reports of Defendants' continued manufacturing, distribution, and operation of surveillance technology. In an April 2022 *New Yorker* article, for example, NSO's head of product development admitted that developing a substitute after a tech company eliminated one of NSO's exploits was an "inevitability" and boasted that it would take just "two weeks to come up with a mitigation on our side, some work-around."[3] Defendants' new CEO Yaron Shohat recently reaffirmed their commitment to spyware and their flagship product Pegasus, which necessarily entails overcoming efforts by Plaintiffs and others to prevent their unauthorized access.[4] As recently as January 2023, NSO has defiantly expressed in media interviews its intention to continue selling its spyware and engaging in the conduct at issue in this Action, in service of its mission to profit by doing so.[5]

The following factual issues will need to be addressed in discovery:

- Did Defendants violate the WhatsApp Terms of Service;

- Which of Defendants' spyware products (e.g., Pegasus, Phantom, or some other surveillance technology product) was used in connection with the conduct described in the Complaint;

---

[2] *See, e.g.*, *The Pegasus Project*, The Guardian, https://www.theguardian.com/news/series/pegasus-project.
[3] Ronan Farrow, *How Democracies Spy on Their Citizens*, New Yorker (Apr. 18, 2022). https://www.newyorker.com/magazine/2022/04/25/how-democracies-spy-on-their-citizens.
[4] Byron Tau and Dustin Volz, *Head of Israeli Cyber Firm NSO Group Reaffirms Company Commitment to Spyware*, Wall Street J. (Jan. 26, 2023, 9:00 AM), https://www.wsj.com/articles/head-of-israeli-cyber-firm-nso-group-reaffirms-company-commitment-to-spyware-11674738269.
[5] *Id.*

- When and how did Defendants access and use or aid in the access and use of WhatsApp servers and the 1,400 mobile phone and devices;

- When and how did Defendants reverse-engineer the official WhatsApp app;

- What is the full scope of damages caused to Plaintiffs by Defendants' conduct and what were Defendants' profits from such conduct;

- The amount of Defendants profit from selling their spyware products designed to provide unauthorized access to WhatsApp's servers;

- The full extent of Defendants' conduct with California and the United States; and

- Defendants' ongoing efforts to manufacture, distribute, and operate Spyware and circumvent Plaintiffs' technological limitations and security measures.

**Defendants' statement:**

NSO is an Israeli technology company that designs and markets a highly-regulated technology solely to government agencies for use in counterterrorism and investigating child exploitation and other serious crimes. Q Cyber, also an Israeli corporation, is NSO's sole director and shareholder. Defendants have no offices, employees, or other presence in California.

The Complaint's allegations are limited to a specific technology called "Pegasus." Any other technology Defendants may have created is irrelevant to Plaintiffs' claims. Plaintiffs' unsupported assertions about post-Complaint conduct by Defendants are also irrelevant, prejudicial, and improper in a Case Management Statement.

Defendants license the Pegasus technology exclusively to sovereign government agencies for use in investigating and preventing terrorism and serious crime. Violent criminals and some of the world's most brutal and dangerous terrorists use Plaintiffs' services to plan and execute their crimes, while Plaintiffs disclaim responsibility and leave it to others—sovereign governments and innocent victims—to deal with the crimes facilitated by WhatsApp and Plaintiffs' other platforms. NSO's Pegasus technology allows government agencies to prevent crimes that Plaintiffs' technology would otherwise facilitate. The export of NSO's Pegasus technology is regulated under Israel's Defense Export Control Law, and Defendants' customers are exclusively government agencies. (Plaintiffs have claimed there is "public reporting" that Defendants have private

6

customers, but that claim is false, and Plaintiffs have never identified any actual reporting that supports it.)

NSO's contracts with its customers require the customers to agree that they (1) will use NSO technology "only for the prevention or investigation of crimes and terrorism and ensure that the [technology] will not be used for human rights violations" and (2) will immediately notify NSO of any potential misuse. Defendants contractually can suspend—and have suspended, and have terminated—service to customers engaged in any improper use of NSO's Pegasus technology outside these parameters. Israel may deny or revoke export licenses if the Israeli government learns of an abuse of the Pegasus technology or non-compliance with the intended use, such as a use of the technology to violate human rights.

Plaintiffs' allegations about Defendants' conduct are false. Most importantly, Defendants do not operate, and have never operated, Pegasus. Instead, Pegasus is operated exclusively by Defendants' sovereign customers, with NSO acting in a purely tech-support capacity at its customers' direction. Plaintiffs have previously admitted that Plaintiffs have no evidence to the contrary. If anyone installed Pegasus on any WhatsApp user's devices, it was not Defendants. It would have been an agency of a sovereign government. In any event, WhatsApp's Terms of Service authorizes the sending of encrypted messages over WhatsApp's servers.

Defendants did not target anyone, and in fact contractually prohibit their customers from using NSO's Pegasus technology against people who are not suspected terrorists or criminals. If a government ever misused NSO's Pegasus technology to investigate WhatsApp users other than criminals or terrorists, Defendants have no knowledge of that misuse, which would be a violation of that government's contract with NSO.

The principal factual issues presently in dispute are the following:

- Whether Defendants committed any conduct in or directed at California;
- Whether Defendants or its sovereign customers operated Pegasus;
- What WhatsApp's servers were "accessed" and by whom;
- Whether WhatsApp authorized any access to its servers;
- Whether WhatsApp's servers suffered any damage caused by Pegasus; and

7

- Whether Defendants caused Plaintiffs any injury, including reputational injury, for which damages are appropriate. (Defendants' profits, referenced in Plaintiffs' statements, are irrelevant.)
- The identities of the 1,400 "attorneys, journalist, human rights activists, government officials, and others" alleged by Plaintiffs.

### III.   LEGAL ISSUES

*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

The current legal issues in dispute before this Court are the following:

- Whether the Court has personal jurisdiction over Defendants;
- Whether Defendants' conduct violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, including subsections (a)(2), (a)(4), (a)(6), and (b);
- Whether Defendants' conduct violates the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502;
- Whether Defendants' conduct constitutes a breach of WhatsApp's Terms of Service; and
- Whether Plaintiffs are entitled to relief sought by the Complaint, including judgment on Plaintiffs' claims, the issuance of a permanent injunction, monetary damages, reasonable costs, and pre- and post-judgment interest.

### IV.   MOTIONS

*All prior and pending motions, their current status, and any anticipated motions.*

### A.      Filed and Resolved Motions

The filed and resolved motions in this case are the following:

- Plaintiffs' Administrative Motion to Reschedule the Case Management Conference, Dkt. No. 16, which the Court granted in an Order dated January 1, 2020, Dkt. No. 17;
- Plaintiffs' Application for Entry of Default, which the Clerk entered on March 2, 2020, ECF No. 22 (Clerk's Notice of Entry of Default);

8

- Defendants' Application to Set Aside Default and to Enlarge Time to File Responsive Pleading to Complaint, Dkt. No. 24, which the Court granted in part and denied in part on March 25, 2020, Dkt. No. 41;

- Plaintiffs' Ex Parte Motion for Protective Order, Dkt. No. 47-12, which the Court granted on June 16, 2020, Dkt. No. 94;

- Defendants' Motion for Sanctions, Dkt. No. 28, which the Court denied on April 13, 2020, Dkt. No. 48;

- Plaintiffs' Cross-Motion to Authorize Alternative Service Pursuant to Federal Rule of Civil Procedure 4(f)(3), which the Court denied as moot, Dkt. No. 21 (order);

- Plaintiffs' Administrative Motion to Seal Documents Related to Plaintiffs' Motion to Disqualify Defense Counsel Based on Prior Representation in a Sealed Matter, Dkt. No. 47, which the Court denied on April 22, 2020, Dkt No. 52;

- Plaintiffs' Amended Administrative Motion to Seal Confidential Material in Plaintiffs' Motion to Disqualify Defense Counsel, Dkt. No. 59, which the Court granted on May 6, 2020, Dkt. No. 67.

- Non-Party U.S. Department of Justice's Administrative Motion to Seal, Dkt. No. 60, which the Court granted on May 6, 2020, Dkt. No. 67.

- WhatsApp's Motion to Disqualify Counsel Based on Prior Representation (ECF No. 47-03), which the Court denied on June 16, 2020, Dkt. No. 94.

- Defendants' Motion to Dismiss, Dkt. No. 45, which the Court granted in part and denied in part on July 16, 2020, Dkt. No. 111.

- Defendants' Motion to Stay Discovery Pending Resolution of Motion to Dismiss, Dkt. No. 95, which the Court denied on July 16, 2020, Dkt. No. 111.

- Defendants' Motion to Shorten Time, Dkt. No. 115, which the Court denied on August 10, 2020, Dkt. No. 120.

- Defendants' Motion for Extension of Time to File a Response, Dkt. No. 119, which the Court granted on August 17, 2020, Dkt. No. 122.

1          •     Defendants' Motion to Stay Pending Appeal, Dkt. No. 117, which the Court granted

2                on September 29, 2020, Dkt. No. 155.

3   **B.**          **Previously Filed but Unresolved Motions**

4          The following motions were filed, but were administratively terminated on May 10, 2022,

5   during the stay, Dkt. No. 160, and are subject to refiling:

6          •     Defendants' Motion to Dismiss Plaintiffs' Request for Injunctive Relief, Dkt. No.

7                105

8          •     Defendants' Administrative Motion to File Under Seal, Dkt. No. 139

9          •     Plaintiffs' Motion to Strike Affirmative Defenses, Dkt. No. 140

10          **Plaintiffs' statement**

11   In meet-and-confer discussions, Defendants have indicated that the motions above may need to

12   be updated to reflect developments in the case law since their initial filing.  Rather than restarting

13   the briefing process, Plaintiffs respectfully submit that any such update could be efficiently

14   handled through short supplementary briefing, and would propose the following briefing

15   schedule:

16          •     March 1: Movants' Supplementary Briefs (not to exceed 3 pages per motion)

17          •     March 8: Non-Movants' Supplementary Briefs (not to exceed 3 pages per motion)

18          **Defendants' statement:**

19          These Motions were filed in the summer of 2020, almost two-and-a-half years ago.  They

20   were administratively terminated last year.  Defendants' position is that the Motions should be

21   updated and re-filed, so that the Court has the parties' arguments in a standard set of briefs, rather

22   than subjecting the Court and its staff to cross-referencing between multiple documents spanning

23   a broad period of time.  A briefing schedule according to the Civil Local Rules should follow the

24   refiling.  Defendants are amenable to stipulating to a reasonable briefing schedule if Plaintiffs

25   would prefer more time than provided under the Civil Local Rules.

26

27

28

**C.        Anticipated Motions**

Plaintiffs currently anticipate the need to file additional discovery motions to resolve Defendants' omnibus objections to Plaintiffs' discovery requests.  As set forth in Section VIII below, Plaintiffs respectfully request that a briefing schedule be entered for such motion.

Defendants anticipate motions (1) related to changes in the law of personal jurisdiction; (2) related to the order of proof and limitations on the availability of injunctive relief and disgorgement; and (3) judgment on the pleadings, summary judgment, or summary adjudication.

## V.        AMENDMENT OF PLEADINGS

*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

Plaintiffs believe the pleadings provide Defendants with adequate notice of all of the claims described in this Joint Statement.  Plaintiffs otherwise do not presently anticipate adding or dismissing any additional parties or claims not described herein.  Plaintiffs reserve the right to seek leave to amend in the event the Court deems an amendment necessary to pursue any of the claims described in this Joint Statement, grants in whole or in part Defendants' refiled motion to dismiss the claim for injunctive relief, agrees with Defendants' objections based on an unduly narrow reading of the complaint, or otherwise.

Defendants do not currently anticipate the addition of further parties but reserve the right promptly to seek to implead third-parties or join any necessary parties in appropriate circumstances.

## VI.        EVIDENCE PRESERVATION

*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.*

The Parties have reviewed the ESI Guidelines and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding preservation.

11

**Plaintiffs' statement:**

Plaintiffs have significant concerns about Defendants' preservation efforts in light of the documents filed under seal on September 2, 2021 (Dkt. No. 133), and public reports regarding a change-of-control in Defendants' ownership structure.  Plaintiffs wish to address these concerns with the Court.  Among other concerns, in meet-and-confer discussions Defendants' have refused to confirm whether they maintain possession of potentially responsive records, including documents and electronic communications.

**Defendants' statement:**

Concerning Defendants' ability to have an unfettered discussion with Plaintiffs' counsel about the legal status of the certain documents, Defendants respectfully refer the court to the September 2, 2020, declaration of Joseph N. Akrotirianakis (Dkt. 133-3) and the matters discussed at paragraphs 3-8 therein.  Plaintiffs' "significant concerns," however, are misplaced.  During the conference of counsel, Defendants' counsel accurately informed Plaintiffs' counsel that Defendants have complied with their preservation obligations under applicable law and the ESI Guidelines.

Moreover, the events described in the documents filed under seal on September 2, 2020 (Dkt. No. 133-6) have no detrimental impact whatsoever on the preservation of ESI, based on the content of those sealed documents.

Counsel's understanding of Rule 26(f) is that further information about Defendants' preservation efforts is not a necessary or proper subject for this Case Management Statement. Defendants recognize, however, that this is an extraordinary situation, and if the Court wishes to hear more information from counsel about the extensive ESI preservation efforts undertaken by Defendants and their counsel between the time the Complaint was filed and September 2, 2020, counsel will be prepared to address such questions at the February 16 conference.

*              *              *

For further discussion of matters related to item Section VI, the parties respectfully refer the Court to the sealed addendum hereto.

## VII.    DISCLOSURES

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.*

**Plaintiffs' statement:**

Plaintiffs served their initial disclosures on August 4, 2020.  These disclosures consisted of lists of individuals likely to have discoverable information; documents, electronically stored information, and tangible things including logs of WhatsApp signal servers and documents relating to the manner in which the exploitation and unauthorized access and abuse functions; and computation of each category of damages.

The parties met-and-conferred pursuant to Rule 26(f) before the originally scheduled Initial Case Management Conference on May 28, 2020.  *See* Dkt. No. 76 at 8, 12 (describing parties' discussions during Rule 26(f) conference).  Defendants did not comply with the deadline to produce initial disclosures within fourteen days thereafter under Rule 26(a)(1)(C), which has long since passed.  Plaintiffs have repeatedly sought compliance with this obligation.  Defendants finally served their initial disclosures on February 9, 2023, just prior to submission of this joint statement, and Plaintiffs reserve all rights.

**Defendants' statement:**

Defendants disagree with Plaintiffs' assertion that Defendants' compliance with the initial disclosure requirements of Rule 26 have been untimely.  Defendants were entitled to have their immunity arguments heard and ruled upon before participating in the action, including making initial disclosures—a position with which the Court agreed by granting Defendants' request to stay these proceedings during the pendency of Defendants' appeal.  During the parties' January 26, 2023, Rule 26(f) conference, Defendants informed Plaintiffs that Defendants would serve their initial disclosures within two weeks of the case management conference, as required by Federal Rule of Civil Procedure 26.  Defendants have now done so.

## VIII.   DISCOVERY

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered*

13

*entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ.*
*P. 26(f), and any identified discovery disputes.*

**A. Party Discovery**

**Plaintiffs' statement:**

Plaintiffs served their First Requests for Production ("RFPs") on Defendants on June 2, 2020.  Defendants served Responses and Objections ("R&Os") to the RFPs on July 6, 2020. Defendants agreed to produce various documents subject to entry of a protective order and resolution of its motion to dismiss.  Although both conditions have been satisfied, Defendants have yet to produce a single document to Plaintiffs.  Moreover, while Defendants claim that they cannot comply with their discovery obligations due to purported restrictions imposed by Israeli law, as recently as a few weeks ago, Defendants were making their officers and employees available for interviews with the press about their spyware.[6]  Defendants have expressed an intention to supplement and amend their responses and objections to Plaintiffs' discovery requests, and, while the parties will meet and confer to address those objections to the extent possible, the parties consider it likely that those responses and objections will raise issues requiring Court intervention, including for the reasons further explained in the sealed addendum hereto.  Plaintiffs respectfully submit that the nature of Defendants' anticipated objections and their claimed impact on discovery in this matter warrant more extensive briefing than contemplated in the Court's October 4, 2021, Standing Order Regarding Discovery Disputes, Protective Orders, and ESI Orders.   For that reason, and in order to achieve prompt resolution of such issues, without further delay to this litigation, Plaintiffs respectfully request that the Court enter the schedule below:

- February 23, 2023: Defendants to Serve Amended Responses and Objections
- March 30, 2023: Plaintiffs to File Motion to Compel (if needed)
- April 15, 2023: Defendants to File Opposition to Motion to Compel
- April 30, 2023: Plaintiffs to File Reply in Further Support of Motion to Compel

---

[6] *See, e.g.*, Byron Tau and Dustin Volz, *Head of Israeli Cyber Firm NSO Group Reaffirms Company Commitment to Spyware*, Wall Street J. (Jan. 26, 2023, 9:00 AM), https://www.wsj.com/articles/head-of-israeli-cyber-firm-nso-group-reaffirms-company-commitment-to-spyware-11674738269; Ronan Farrow, *How Democracies Spy on Their Citizens*, New Yorker (Apr. 18, 2022).

14

**Defendants' statement:**

Defendants timely responded and objected to Plaintiffs' Requests for Production ("RFPs"). Plaintiffs filed a motion to compel, which was denied as moot on September 29, 2020, Dkt. No. 155. During the parties' January 26, 2023, Rule 26(f) conference, Defendants informed Plaintiffs that Defendants would supplement their discovery responses following the Supreme Court's denial of Defendants' petition for a writ of certiorari. Defendants intend to do so within this month of February 2023. If any dispute remains thereafter, the Court's discovery dispute procedures and hearing timelines are provided in the Federal Rules, the Civil Local Rules, and this Court's October 4, 2021, Standing Order Regarding Discovery Disputes, Protective Orders, and ESI Orders.

**B. Third Party Discovery**

Plaintiffs served subpoenas on the following non-parties that have completed their document productions:

***Third Parties Associated with Malicious Payload Servers or Target Devices:*** 365 Group LLC; AT&T Mobility; BitPay; Choopa; Cogent; Google; GreencloudVPS; M247; PayPal; Psinet; Quadranet; Serverdroid LLC; Verisign; Vultr Holdings LLC.

***Third Parties Associated with Defendants' Reported U.S. Sales Efforts:*** Comstar Technologies; E-Tel; Los Angeles Police Department; San Diego Police Department;

In addition, Plaintiffs served subpoenas on the following non-parties that either remain outstanding, or may require Plaintiffs to make further requests:

***Third Parties Associated with Defendants and Represented by Defendants' Counsel:*** Compass Stratagem; Josh Shaner; Omri Lavie; Terrence DiVittorio; Westbridge Technologies, Inc.

***Other Third Parties:*** Francisco Partners; Amazon Web Services

The parties will be in a position to discuss further the scope of anticipated discovery and the substance of a stipulated e-discovery order after Plaintiffs receive Defendants' initial disclosures, and final responses to Plaintiffs' First Requests for Production and can evaluate the number of potential custodians and scope of discovery.

15

The parties' proposed case schedules, including proposed discovery cutoffs, are set forth in Section 17 below.   Plaintiffs' proposed case schedule includes briefing scheduled on Defendants' omnibus discovery objections.   As of the date of this Joint Case Management Statement, Plaintiffs have identified the following discovery disputes with Defendants:

- The impact (if any) of foreign law on Defendants' responses to Plaintiffs' discovery requests

## IX.   CLASS ACTIONS

*If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.*

Not applicable.

## X.   RELATED CASES

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

Apart from this action, Defendants have been named in three actions pending in the Northern District of California.   On November 23, 2021, Apple, Inc. filed a lawsuit against Defendants, alleging that Defendants designed, developed, tested, deployed, marketed, sold, operated, maintained, and facilitated the use of their technology to maliciously target and harm Apple, its products, and its users.   Complaint, *Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-cv-09078-JD (N.D. Cal. Nov. 23, 2021), ECF No. 1.   The *Apple* action was assigned to the Honorable James Donato.   NSO moved to dismiss the complaint.   Judge Donato stayed the action on April 12, 2022.   The case remains stayed, although the parties have recently requested that Judge Donato lift the stay.   Defendants' motion to dismiss was administratively terminated during the stay.

On September 13, 2022, an Apple user brought claims against Defendants and Apple based on similar conduct.   Complaint, *Corallo v. NSO Grp. Techs. Ltd.*, No. 3:22-cv-04229-RS (Sep. 13, 2022), ECF No. 1.   And on November 30, 2022, journalists in El Salvador brought claims against Defendants based on an attack levied by Defendants' spyware against them.   Complaint, *Dada v.*

16

*NSO Grp. Techs. Ltd.*, No. 3:22-cv-07513-JD (Nov. 30, 2022), ECF No. 1.   Defendants have never been served in the *Corallo* or *Dada* actions, and Defendants have not appeared in either action.

Although the *Apple* case and the *Dada* case have been marked as related to each other, it does not "appear[] likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges" than this case.   N.D. Cal. Civ. Local R. 3-12(a)(2).

## XI.   RELIEF

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

**Plaintiffs' statement:**

Plaintiffs seek the following relief:

- Judgment against Defendants that Defendants have:
    - Violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;
    - Violated the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502; and
    - Breached their contracts with WhatsApp in violation of California law.
- Permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors, and assigns, and all other persons acting in concert with or conspiracy with any of them or who are affiliated with Defendants from:
    - Accessing or attempting to access WhatsApp's and Meta's services, platforms, and computer systems;
    - Creating or maintaining any WhatsApp or Meta account, including Facebook and Instagram;
    - Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Plaintiffs' service, platform, and computer systems; and

17

- • Engaging in any activity, or facilitating others to do the same, that violates WhatsApp's or Meta's Terms of Service.
- • Compensatory, statutory, and punitive damages, as permitted by law, including disgorgement of all profits from Defendants' sale of products designed to provide unauthorized access to WhatsApp's servers, and in such amounts to be proven at trial.
- • Reasonable costs, including reasonable attorneys' fees
- • Pre-and post-judgment interest as allowed by law.

**Defendants' statement:**

Defendants have not filed any counterclaim or sought relief thereby. Defendants dispute whether Plaintiffs are entitled to any injunctive relief (either generally or the specific injunction terms described above) or that disgorgement would be available to Plaintiffs as a matter of law based on Plaintiffs' allegations.

If Plaintiffs were successful in proving that Defendants bore any liability for the events alleged in the Complaint, Defendants believe the appropriate measure of damages is: (1) any revenue lost or cost incurred because of any interruption of service caused by Defendants (if any such interruption of service in fact occurred); (2) the cost to Plaintiffs of conducting an assessment of damage caused to Plaintiffs' computers by Defendants (if, in fact, any such loss occurred); and (3) the cost to Plaintiffs of restoring their system to its condition prior to the acts for which Defendants are held liable (if in fact Plaintiffs ever restored their system to a condition prior to the events in the Complaint).

## XII.   SETTLEMENT AND ADR

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

The parties conferred regarding settlement in the Rule 26(f) conference and filed their certifications pursuant to ADR L.R. 3.5.

The parties wish to discuss ADR selection with the Court at the Case Management Conference.

Plaintiffs do not believe there is any reasonable prospect of settlement at this time.

## XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. _ _Yes _x_ No*

## XIV.   OTHER REFERENCES

Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

This case is not suitable for such reference.

## XV.   NARROWING OF ISSUES

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

Plaintiffs believe that there are certain threshold issues whose prompt resolution would expedite the progress of the litigation, including (1) the purported Israeli law restrictions on Defendants' ability to participate in discovery in U.S. courts, and (2) Defendants' improper effort to restrict discovery to particular exploits and malware brand names, notwithstanding the breadth of Plaintiffs' allegations and evidence of Defendants' broader misconduct that Plaintiffs are entitled to explore.  Plaintiffs also believe that many of the underlying facts regarding Defendants' conduct are indisputable and should be subject to admission and/or stipulation, which may likewise expedite the litigation.

Defendants believe that a ruling on whether, as a matter of law, Plaintiffs are entitled to injunctive relief or disgorgement would substantially narrow the issues to be tried, as well as the appropriate scope of discovery.

## XVI.   EXPEDITED TRIAL PROCEDURE

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. If all parties agree, they shall instead of this Statement,*

*file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64 Attachments B and D.*

The Parties do not believe this is the type of case that should be handled under the Expedited Trial Procedure of General Order No. 64.

## XVII. SCHEDULING

*Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

**Plaintiffs' statement:**

Plaintiffs propose the following schedule.  For the Court's convenience, we have noted agreed dates, the alternative proposals on dates that both parties propose should be included in the scheduling order, and Plaintiffs' proposals for certain additional dates for which defendants submit no deadline should be set.  Plaintiffs request that these additional deadlines be set for the reasons noted below.

| Deadline | Plaintiffs' Proposed Date | Defendants' Proposed Date |
|---|---|---|
| Defendants' amended R&Os to Plaintiffs' first RFPs | February 28, 2023 | |
| Substantial completion of document discovery | October 30, 2023 | None |
| Amend pleadings | November 30, 2023 | April 1, 2023 |
| Fact discovery cutoff | January 31, 2024 | March 18, 2024 |
| Designation of initial experts (identity and topics) | January 31, 2024 | None |
| Settlement conference | February 12, 2024 (Agreed) | |
| Designation of rebuttal experts (identity and topics | February 14, 2024 | None |

| Initial expert disclosures | February 26, 2024  (Agreed) |
|---|---|
| Rebuttal expert disclosures | April 8, 2024  (Agreed) |
| Completion of expert depositions and expert discovery | May 27, 2024  (Agreed) |
| Filing of dispositive motions | June 10, 2024  (Agreed) |
| Hearing on dispositive motions | July 29, 2024 (Agreed) |
| Final pretrial conference | September 9, 2024  (Agreed) |
| Trial | Late October 2024  (Agreed) |

As set forth above, Plaintiffs request that the Court set deadlines for (1) Defendants' amended responses and objections; (2) substantial completion of document discovery; and (3) designation of initial and rebuttal experts for the following reasons.

***Defendants' Amended R&Os:***  Defendants have represented that they will amend their responses and objections to Plaintiffs' discovery requests by the proposed deadline of February 28, 2023.  The Court should order them to amend their responses by that date to ensure the timely progression of discovery, and to allow time for the parties to confer in advance of the expedited schedule for Plaintiffs' motion to compel on Defendants' omnibus objections, as proposed in Section VIII above and discussed further below.  That deadline also should apply to the third parties affiliated with Defendants and represented by Defendants' counsel.

***Substantial Completion of Document Discovery:***  Given the substantial age of this case, Defendants' delay in providing even their initial disclosures, and the myriad excuses Defendants have generated for not producing documents, Plaintiffs respectfully request that the Court set an interim deadline for the substantial completion of document discovery, which will ensure all

documentary evidence is produced in a timely manner in advance of depositions.  Such interim deadlines are routinely set by judges in the Northern District in appropriate cases like this one. *See, e.g., IPLearn-Focus, LLC v. Microsoft Corp.*, No. 3:14-CV-00151-JD (N.D. Cal. Jan. 30, 2015), Dkt. No. 72; *Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.*, No. C 03-01431 SBA (EDL) (N.D. Cal. July 17, 2005), Dkt. 368.

*Designation of Initial and Rebuttal Experts:*  Plaintiffs respectfully request that the Court set interim deadlines for the indentification of initial and rebuttal experts, by name and topic, before expert reports are submitted.  The parties have agreed that expert rebuttal reports will be due approximately five weeks after receiving the initial reports.  Expert discovery in this case is likely to involve highly specialized issues, however, as well as consideration of materials designated as Highly Confidential-Attorneys Eyes Only ("HC-AEO").  Requiring the parties to exchange names and topics of their experts in advance of submitting initial reports will provide them with adequate time to identify knowledgeable rebuttal experts and obtain the necessary approvals to share HC-AEO material with those experts before the report deadlines.  Your Honor has set such deadlines in appropriate cases.  *See, e.g., Mindfabric, Inc. v. eGain Communications Corp.* 3:02-cv-05814 (N.D. Cal. Sep. 4, 2003), Dkt. No. 27.

*Motion to Compel on Defendants' Omnibus Objections:*  In addition to the schedule listed above, and consistent with Plaintiffs' position in Section VIII, Plaintiffs believe that the Court should order the following briefing schedule on Plaintiffs' motion to compel regarding Defendants' omnibus objections to Plaintiffs' outstanding discovery:

- March 30, 2023: Deadline for Plaintiffs to file motion to compel regarding Defendants' omnibus objections to Plaintiffs' outstanding discovery

    - Opposition due April 15, 2023

    - Reply due April 30, 2023

**Defendants' statement:**

***Plaintiffs' Request for "Extra" Deadlines than those provided by Rule.***  "Substantial completion of party document discovery," "Designation of initial experts (identity and topics)," and "Designation of rebuttal experts (identity and topics)" are not ordinarily included as dates in a

scheduling order and are not grounded in the Federal Rules of Civil Procedure, the Civil Local Rules, or this Court's Standing Order. During the parties' conferring in preparation of this statement, Plaintiffs were unable to reference any scheduling orders containing these dates where the parties had not jointly requested that the court impose those deadlines and did not dispute that these "extra" deadlines all arose at the joint request of the parties in the other matters Plaintiffs reference.

*Fact Discovery Period.* Defendants do not believe that Plaintiffs' requested eleven months will be sufficient to complete fact discovery, considering the complexity of the novel issues raised in this action, the issues discussed in the sealed addendum hereto, Israeli law restrictions on U.S. discovery, and the need for Defendants to obtain regulatory approval due to export control restrictions to facilitate counsel's ability to discuss with Defendants certain aspects of Defendants' technology, which consultation is necessary to counsel's effective representation of Defendants.

*The Schedule Upon Which the Parties Agree.* Counsel for the parties have spent significant time conferring concerning the proposed case schedule. In that effort, both sides made concessions, and undersigned counsel for Defendants is particularly appreciative of Plaintiffs' willingness to accommodate one personal request with respect to the trial date. The parties have agreed on all but two of the dates that are customarily part of a case scheduling order: (1) the deadline to amend pleadings; and (2) the fact discovery cutoff.

As to the latter, Defendants' reasons why a slightly expanded **fact discovery period** (until **March 18, 2024**, seven weeks longer than requested by Plaintiffs) are set forth immediately above. As to the former, it seems that Plaintiffs' request to be permitted to amend pleadings for another *nine months* (and only two months before Plaintiffs' requested discovery cutoff) runs a risk that the entire schedule will be thrown off by the need to respond to amended pleadings, raise new defenses to new allegations, take discovery on new claims, and the like. Defendants accordingly propose another five weeks within which **pleadings can be amended** (**April 1, 2023**).

The schedule upon which the parties agree is set forth below.

| Deadline | Agreed-Upon Date |
|---|---|
| Settlement Conference | On or before February 12, 2024 |
| Fact Discovery Cutoff | No agreement, positions above |
| Expert Disclosures | February 26, 2024 |
| Rebuttal Expert Disclosures | April 8, 2024 |
| Expert Discovery Cutoff | May 27, 2024 |
| Hearing On Dispositive Motions | July 29, 2024 |
| Pretrial Conference | September 9, 2024 |
| Trial | Late October 2024* |

*Defendants' counsel would not ordinarily think such a large time gap between the pretrial conference and the trial is necessary, but Defendants' lead trial counsel is unavailable to try this case in August or early September 2024, owing to a family obligation, and there are a number of Jewish holidays in October 2024 that are important religious observances for Defendants' officers, legal department, and a number of their witnesses.

## XVIII. TRIAL

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

Plaintiffs request a jury trial and respectfully submit that it is too soon to predict the trial's likely length.

Defendants estimate a 10-day trial.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed*

*class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.*

**Plaintiffs' statement:**

Plaintiffs filed their Certificate of Interested Entities on October 29, 2019, Dkt. No. 6 and hereby restate that there is no such interest to report.

**Defendants' statement:**

Defendants filed their Certificates of Interested Entities on March 6, 2020, Dkt. No. 25, and May 21, 2020, Dkt. No. 75, and hereby restate that there is no further interest to report.

## XX.   PROFESSIONAL CONDUCT

*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

Counsel for Plaintiffs and Defendants have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI.   OTHER

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

The Parties' counsel are not aware of other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

Dated:  February 9, 2023                    DAVIS POLK & WARDWELL LLP


By:   /s/ Micah G. Block
        Greg D. Andres
        Antonio J. Perez-Marques
        Craig T. Cagney
        (admitted pro hac vice)
        DAVIS POLK & WARDWELL LLP
        450 Lexington Avenue
        New York, New York 10017
        Telephone: (212) 450-4000
        Facsimile: (212) 701-5800
        Email: greg.andres@davispolk.com
                    antonio.perez@davispolk.com
                    craig.cagney@davispolk.com

        Micah G. Block (SBN 270712)
        DAVIS POLK & WARDWELL LLP
        1600 El Camino Real
        Menlo Park, California 94025
        Telephone: (650) 752-2000
        Facsimile:  (650) 752-2111
        Email:  micah.block@davispolk.com

        Attorneys for Plaintiffs WhatsApp LLC and
        Meta Platforms, Inc.


                    KING & SPALDING LLP


By:   /s/ Joseph N. Akrotirianakis
        Joseph N. Akrotirianakis
        Aaron S. Craig
        KING & SPALDING LLP
        633 West Fifth Street, Suite 1600
        Los Angeles, CA 90071
        Telephone: (213) 443-4355
        Email:

        Attorneys for Defendants NSO Group
        Technologies Limited And Q Cyber
        Technologies Limited

1

## **SEALED ADDENDUM**

2    The parties respectfully refer the Court to Exhibit A to the declaration of Joseph N.

3  Akrotirianakis in support of Defendants' Administrative Motion to File Under Seal being filed

4  concurrently herewith.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>FILER'S ATTESTATION</u>**

2
3

Pursuant to Civil L. R. 5-1(h)(3), regarding signatures, Micah G. Block hereby attests that concurrence in the filing of the document has been obtained from all of the signatories above.

4
5

Dated:  February 9, 2023 _____     _/s/ Micah G. Block_____

Micah G. Block

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28