Pages 1 - 52

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Phyllis J. Hamilton
United States Chief District Judge

WHATSAPP, INC., *ET AL.*,          )
                                   )
          Plaintiffs,              )
                                   )
     vs.                           )     **Case No. 4:19-CV-07123-PJH**
                                   )
NSO GROUP                          )
TECHNOLOGIES, LTD., *ET AL.*,      )
                                   )
          Defendants.              )
_____    )

Oakland, California
Thursday, February 16, 2023

**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

APPEARANCES ON NEXT PAGE.

TRANSCRIPTION SERVICE BY:     Dipti Patel, CET-997
                              Liberty Transcripts
                              7306 Danwood Drive
                              Austin, Texas 78759
                              (847) 848-4907

**APPEARANCES VIA ZOOM VIDEOCONFERENCE:**

For the Plaintiffs:

                    DAVIS POLK & WARDWELL LLP
                    450 Lexington Avenue
                    New York, New York 10017
        BY:  **GREG D. ANDRES, ATTORNEY AT LAW**
              **ANTONIO J. PEREZ-MARQUES, ATTORNEY AT LAW**
              **CRAIG CAGNEY, ATTORNEY AT LAW**

                    DAVIS POLK & WARDWELL LLP
                    1600 El Camino Real
                    Menlo Park, California 94025
        BY:  **MICAH G. BLOCK, ATTORNEY AT LAW**

For the Defendants:
                    KING AND SPALDING LLP
                    633 West Fifth Street, Suite 1700
                    Los Angeles, California 90071
        BY:  **JOSEPH N. AKROTIRIANAKIS, ATTORNEY AT LAW**
              **AARON S. CRAIG, ATTORNEY AT LAW**

**Thursday - February 16, 2023**                              **12:00 P.M.**

### P R O C E E D I N G S

---O0O---

**THE CLERK:**  U.S. District Court is now in session; the

Honorable Phyllis J. Hamilton presiding.

Calling Civil Case 19-7123-PJH, WhatsApp Inc., *et al.* versus

NSO Group Technologies Limited, *et al.*

Counsels, please state your appearances, beginning with

plaintiffs' counsel.

**MR. ANDRES:**  Good afternoon, Your Honor.

Greg Andres.  I'm here with my colleagues, Mr. Perez, and

Mr. Block, and Mr. Cagney, and we represent the plaintiff

WhatsApp and Meta.

**THE COURT:**  Good afternoon.

**MR. AKROTIRIANAKIS:**  Good afternoon, Your Honor.

Joe Akrotirianakis and Aaron Craig, in behalf of the

defendants.

**THE COURT:**  All right.  Good afternoon.  And shall I say

welcome back.  It's been a while.

All right.  There are four issues that I would like to spend

our time together talking about today.  The motions that you all

anticipate, I'm obviously going to attempt to streamline those

and narrow them.  You've included in your case management

statement just a whole host of motions, and I do want to talk

4

1    about them before you go ahead and file them.

2        I want to talk about the discovery that's at issue.  And

3    related to that issue is the administrative motion to seal that

4    was filed in conjunction with this case management statement that

5    we should discuss, and then we'll end up talking about scheduling

6    at the end.

7        All right.  So let's start first then with the motions that

8    you all mentioned in your case management statement.  You refer

9    to the motions that I had administratively terminated while the

10   immunity issue was being litigated.

11       And I have just a vague recollection of those motions that

12   were filed, I believe, along with the motion that I dealt with,

13   with regard to the sovereign immunity.  But I just didn't reach

14   those at that time, or -- because I'm pretty sure after I granted

15   the motion to stay, they weren't filed, right?

16       **MR. AKROTIRIANAKIS:**  No, Your Honor.

17       Joe Akrotirianakis.

18       The Court resolved the Rule 12(b) motions, and we filed a

19   subsequent motion relative to the request for injunctive relief.

20   So that was filed after the Court ruled on the 12(b) motions, but

21   before the Court ruled on the motion to stay.  And then in that

22   same period --

23       **THE COURT:**  Okay.

24       **MR. AKROTIRIANAKIS:**  In that same period, we also answered

25   following the Court's ruling on the motions to dismiss and then

1 plaintiffs filed a motion to strike certain affirmative defenses.

2 So those were the two motions.

3     **THE COURT:**  Okay.  All right.  So let's start first, then

4 with the motions that both sides have mentioned in the case

5 management statement.  There is a motion that defendant

6 anticipates with respect to plaintiffs request for injunctive

7 relief, and administrative motion to seal.

8         Is that in conjunction with the request for injunctive

9 relief motion, or something else?

10    **MR. AKROTIRIANAKIS:**  I think that one was a vestige of

11 something else.  I think the Court may have ruled on the motion

12 to stay, but didn't in the course of that ruling rule on this

13 motion to seal, Your Honor.

14    **THE COURT:**  It was some document used in support or in

15 opposition to the motion to stay.

16    **MR. AKROTIRIANAKIS:**  I'm just going from memory, Your Honor.

17    **THE COURT:**  Yeah.  I don't have any recollection of it.  Is

18 it something that still is outstanding that I need to deal with?

19    **MR. AKROTIRIANAKIS:**  Not from our perspective, Your Honor.

20    **THE COURT:**  How about from plaintiffs' perspective?

21    **MR. PEREZ:**  No, Your Honor.  I believe that was defendants'

22 motion.  And my recollection, although I'm also going from

23 memory, is that I thought it related to materials related to

24 what's been filed in the sealed addendum to the case management

25 statement for this conference.

1       **THE COURT:**  Well, it's Docket Number 139.  So it would have

2  been a little while ago.  All right.  We'll take another look at

3  that.  No one seems to think that we need to deal with it now.

4  The administrative motion to seal gets filed in conjunction with

5  this particular conference is Docket 169.

6       And what you all have referred to in your statement is at

7  Docket 139 which was terminated.  It's going to remain terminated

8  unless somebody believes that it needs to be refiled, okay?

9       **MR. PEREZ:**  Thank you, Your Honor.

10       **MR. AKROTIRIANAKIS:**  Thank you, Your Honor.

11       **THE COURT:**  All right.  And so that's Docket 105 was the

12  original or perhaps -- yeah, one of the original motions that was

13  terminated.  That was the motion, going to plaintiffs' request

14  for injunctive relief.  And then Docket 140 was plaintiffs'

15  motion, and that was to strike affirmative defenses.

16       So with respect to those two motions, both sides have

17  entered different positions on how the Court should resolve

18  those.  They have been administratively terminated.  So the

19  question is whether or not they simply need to be re-noticed, or

20  whether or not they should be refiled.

21       I believe plaintiffs' position is they should be read

22  notice, but there would need to be some supplementation.  And the

23  defendants' position is that they need to be refiled and updated

24  so that the Court doesn't have to look to two sets of briefs

25  instead of one set each.  Now, I imagine you all know which one I

7

1    think is the most efficient way to proceed.

2        **MR. ANDRES:**  Yes, Your Honor.  We do.

3        And just with respect to that, I think one issue that we

4    were hoping to do is to the extent that motions are just refiled

5    that we might be able to expedite the briefing process a little.

6    We've had some discussions with the defendants about that to

7    propose a schedule.

8        But given the fact that really all that needs to be done is

9    some refresh of the law and not a substantial amount of work with

10   respect to those briefs, we're hoping to do that a little

11   quicker.  And we'll take direction from Your Honor, but we're

12   also happy to work with the defendants to propose a schedule for

13   that.

14       **THE COURT:**  Okay.  Well, I agree with the defendant.  I want

15   one set of briefs on each motion.  I don't want to have to look

16   at supplemental briefs on each motion.  So if you want me to

17   consider them, first of all, think hard about whether or not you

18   need to have these two motions filed.

19       With regard to the defendants' motion, I haven't looked at

20   it.  Is it a motion to dismiss to strike the plaintiffs request

21   for injunctive relief?  Why is that a motion that shouldn't wait

22   for a merits determination?

23       **MR. AKROTIRIANAKIS:**  I'm sorry, Your Honor.  Do you want me

24   to respond to that now?  Or is that something you --

25       **THE COURT:**  Yes, please.

1    **MR. AKROTIRIANAKIS:** -- want me to think about?  Okay.

2    Because it affects the proportionality of discovery in this case,

3    which I think the Court will see.  Actually, the Court wouldn't

4    see because initial disclosures are not filed with the Court.

5    But in their initial disclosures, the plaintiffs detail their --

6    the amount in controversy, if you will, Your Honor.  And in

7    response to the questions that you need to answer in initial

8    disclosures, and the actual damages are minimal what they claim,

9    and we dispute even those.

10   But they really amount to, you know, the salaries and

11   payroll burden of some folks that work at WhatsApp or Facebook,

12   and who have as their job to detect and remediate vulnerabilities

13   in their software.  That's their claim for actual damages.  And

14   then they have a separate claim for reputational harm to

15   Facebook, that really is sort of something that can -- you could

16   ring fence, and in any event is going to largely involve

17   discovery flowing from plaintiffs to defendants.

18   The rest of the case is a claim in terms of the amount in

19   controversy.  And I realize that that's not the only factor in

20   proportionality, but it's a big factor.  The rest of the case is

21   a claim for injunctive relief that we think, based on the

22   pleading, where they say this vulnerability that they allege is

23   remediated, and we put a stop to this, and there's no ongoing

24   harm of any kind, let alone irreparable harm.

25   And then a claim that also relates to disgorgement.  We

1   think that the disgorgement claim, not getting into that, but I

2   think that that has some issues in and of itself.  But the

3   injunctive relief is really the driver of their amount in

4   controversy.  That was how it was explained to us during the

5   initial case management conference some two or three years ago.

6   And we think that there's a constitutional standing problem with

7   that in light of their allegations in the complaint that there is

8   no ongoing harm.

9        And so if we didn't have that in the case, it really limits

10  what is proportional to the needs of the case.  It really limits

11  a lot of things, including the ability to potentially resolve the

12  case at an earlier stage than the merit stage that Your Honor

13  refers to.

14      **THE COURT:**  We don't generally look at the remedy sought

15  before liability.

16      **MR. AKROTIRIANAKIS:**  It's true, Your Honor.  But --

17      **THE COURT:**  And I wonder if there are factual issues with

18  regard to the amount in controversy?

19      **MR. AKROTIRIANAKIS:**  Well, when I say amount in controversy,

20  Your Honor, there's not a factual issue, for example, in respect

21  of a $75,000 limit under 1332, or something like that.  What I'm

22  talking about is that the value to the plaintiff of the claim and

23  the amount in controversy in that sense, is entirely tied up in

24  the injunctive relief claim from our perspective.

25      And in terms of factual issues, I think this can be resolved

1    by the Court based on the pleadings, considering that they plead.

2    And now they have judicially admitted that the vulnerability that

3    they are -- that is the basis of the complaint is something that

4    is not subject to any sort of ongoing harm, let alone irreparable

5    harm, that being the standard for injunctive relief, of course,

6    and that this should be -- there could be dealt with at this

7    stage.  And it would -- you know, it would not be the tail

8    wagging the dog on a going forward basis.

9         Now, if there are true fact issues about it, I would agree

10   with Your Honor, that it can't be resolved.  But I will say that

11   the Court has the power to and should because it does go to the

12   Court's subject matter jurisdiction to examine this issue at this

13   or at any stage of the proceedings.

14        **THE COURT:**  I just had a recent hearing involving similar

15   issues, and it was much easier to see the full picture on a full

16   factual record, and not on the pleadings.  I'm not likely to make

17   a determination just on the pleadings.  What is the -- what does

18   plaintiffs' counsel have to say about this?

19        I'm trying to decide whether or not the motions at Docket

20   105 and 140 should even be entertained by me at this juncture.  I

21   am interested in streamlining the motion practice in this case,

22   given how long it has been pending.  So gentlemen, what's your

23   response to defense counsel's argument?

24        **MR. PEREZ:**  Yes, Your Honor.  This is Mr. Perez in case it's

25   difficult to see who is speaking.

1        **THE COURT:**  Right.

2        **MR. PEREZ:**  We agree with Your Honor that it is putting the

3    cart before the horse to think that the injunctive relief should

4    be adjudicated now on the pleadings.  I do agree with defense

5    counsel, in that the injunctive relief is central to this case.

6    It's critically important to our clients.  There is absolutely an

7    ongoing risk of harm.  That should be clear even from defendants'

8    own statements in the press and elsewhere, touting the extent to

9    which how quickly they could work around our client's efforts to

10   remedy the vulnerability at issue here.

11       There is absolutely an ongoing intent by defendants to

12   engage in precisely the same conduct going forward.  And as the

13   Court indicated, this is an issue on which there will absolutely

14   will be factual disputes with respect to the ongoing risk of

15   harm.  That's something that should be examined through

16   discovery, and the injunctive relief should be determined on the

17   merits, not on the pleadings.  So we agree with Your Honor that

18   that's an issue for another day, not something that should be

19   adjudicated now.

20       **THE COURT:**  Okay.  Yeah, I'm not inclined to entertain this

21   motion.  So if you want to bring a motion with respect to the

22   injunctive relief, you're going to have to do so during the

23   summary judgment stage.  You may not reactivate 105, essentially,

24   is what I'm saying.

25       All right.  Let's turn to 140.  And that was plaintiffs'

1    motion to strike affirmative defenses.  Same question.  How I --

2    I understand that there are oftentimes a lot of affirmative

3    defenses that ultimately don't stick, but how much of it will

4    result in additional discovery?

5        **MR. PEREZ:**  Your Honor, with the benefit of the Court's

6    guidance with respect to Docket number 105, I think we may be

7    able to forego refiling that motion.  I would like to just

8    confirm with my client if I could have that luxury that they

9    agree with that position.

10       The issue is precisely the one that Your Honor has zeroed in

11    on, which is to what extent it actually impacts the scope of

12    discovery.  My inclination sitting here today is that it is

13    likely something that could be -- those defenses could be

14    explored and then addressed on the merits.  But if I could get

15    the opportunity, I would love to be able to consult with my

16    client and confirm that I'm authorized to take that position.

17        **THE COURT:**  Okay.  The position I'm taking today is you may

18    not reactivate it.  However, if you've got a very good reason,

19    you may put that in writing in the form of, let's call it an

20    administrative motion, which is, under our local rules permitted

21    for a pretty much administrative or administerial type matter.

22    You're limited to five pages.  The opposing party gets four days

23    to respond.  And then there are no replies and I will just issue

24    a ruling on it, if you think there's some good faith reason to go

25    forward with that now, given everything else that this case is

13

1    going to entail.

2       Okay.  So for now, the previously filed motions at Dockets

3    105, 139, and 140, which were administratively terminated during

4    the course of the stay, may not be reactivated.  Number 140, I

5    will give you leave to file an administrative request to

6    reactivate if you can show some good cause for doing so.

7       All right.  Let's move to the next part of the motions.

8    Now, let's look at what you all anticipate needing to do in this

9    case going forward.  The plaintiffs' entry in the case management

10    statement is simply that you'd like a -- under the anticipated

11    motion section, you indicate that you anticipate a discovery

12    motion to resolve the defendants' omnibus objections to the

13    discovery requests that have been propounded by plaintiff.

14       **MR. PEREZ:**  Yes, Your Honor.  And let me if I can -- I'm

15    sorry, Your Honor, were you finished with the question?

16       **THE COURT:**  Yeah.

17       **MR. PEREZ:**  If I may put a finer point on it, because we're

18    mindful that the defendants have committed to file amended

19    responses and objections by the end of February, by February

20    28th.  The reason for that, as I understand it, is that many of

21    their objections in their initial responses and objections were

22    premised on their immunity defense, which has now been

23    adjudicated and rejected, as well as their desire to have a stay

24    while that was being adjudicated.  And so that's now off the

25    table.

1        There have been developments, including the developments

2    that are referred to in the sealed addendum, which I'll be

3    circumspect in referring to, but generally relate to purported

4    restrictions on their ability to participate in discovery under

5    Israeli law, that I believe they want to flesh out a bit further

6    in amended responses and objections.

7        We haven't received those responses and objections.  We

8    haven't met and conferred regarding those responses and

9    objections.  And we're mindful of the Court's standing order with

10   respect to not only our obligation to meet and confer as would be

11   typical, as well as the five-page letter.

12       What we did want to be very transparent and upfront with the

13   Court about is that this issue of the purported Israeli law

14   restrictions on discovery is in our view, inevitably going to be

15   a substantive issue that will need to be presented to and

16   adjudicated by the Court.

17       It's not a matter of custodians or date ranges are other

18   issues.  It's a real, as we understand it, substantive issue as

19   to purported conflicting legal obligations under two systems as

20   to which, as the Court knows, there's a developed body of law.

21   And I think both sides will have quite a bit to say on that.

22       And so we -- that issue will, it's not yet fully ripe.  We

23   all see it coming down the pike.  It will become ripe once we've

24   received their amended responses and objections and have met and

25   conferred regarding them.  And then the question that we did want

15

1  to raise for the Court is how the Court would like us to proceed

2  at that point, where as I said, we're mindful of the five-page

3  letter procedure that the Court has in place.

4      We could also -- we could tee up the issue of through such a

5  letter, or we could dispense with that letter phase because I

6  think the parties agree that this is going to require a bit more

7  briefing and a bit more analysis in order to really be

8  adjudicated, than a five-page joint letter would allow the Court

9  to have.

10     **THE COURT:**  Okay.  I can tell you I'm not interested in

11 having to preside over picayune objections having to do with, you

12 know, all the stuff that attorneys fight over discovery.  And

13 that's primarily what the abbreviated procedures are designed to

14 avoid is to -- what I want is the big issue.  I want the issue

15 that -- you've described two; one having to do with the immunity

16 which has been decided by the Ninth Circuit, and one having to do

17 with the international law aspect of the dispute.

18     So what I would permit is a regular motion on a 35-day

19 briefing schedule with all of our Local Rule 7-2 requirements,

20 which simply limit the brief to 25 pages.  We won't go with the

21 truncated procedure, if what you're presenting to me is the

22 international law question, which should dispose a number of the

23 anticipated objections as I understand it.  Am I correct?

24     **MR. PEREZ:**  That's exactly right, Your Honor.  And what Your

25 Honor is laying out is effectively what we favor.  That strikes us

1     as a very orderly and efficient way of addressing this.

2     **THE COURT:**  Well, what would occur is that you would receive

3     the responses and objections from the defendants by the agreed

4     upon deadline in February.  And if you are not satisfied, it

5     would be incumbent upon plaintiff to file a motion to compel

6     further responses or to overrule the objections.

7     And at that particular juncture, you can raise the

8     international law issue, although I -- as I do understand that

9     it's the defendants that's claiming, right, some sort of a bar or

10     preclusion by virtue of the origin of these documents.  So maybe

11     we should flip it.

12     **MR. PEREZ:**  Yes, Your Honor.

13     I was going to suggest the same thing.  Ordinarily, the

14     process the Court laid out would be the traditional one.  But in

15     this case, because we do really need a little more clarity from

16     defendants as to the nature of their international law-based

17     objections, it would be we believe, more orderly to have them

18     file first and us file in opposition.

19     **THE COURT:**  Okay.  So that would not be a motion to compel.

20     That would be a motion for a protective order, essentially, based

21     upon the -- I don't know, the bar that's been set by the Israeli

22     courts, I guess, on the release of certain documentation.  Am I

23     characterizing that correctly?  Your names very difficult for me.

24     **MR. AKROTIRIANAKIS:**  That's okay, Your Honor.

25     **THE COURT:**  I have to think about how you pronounce it.

1       **MR. AKROTIRIANAKIS:**  Yeah.  It's if you're just looking at

2    it, it's Akrotirianakis.

3       **THE COURT:**  Akrotirianakis.

4       **MR. AKROTIRIANAKIS:**  It is foreign, but it's also phonetic.

5    So I think that there's sort of two levels.  And I think that the

6    framework that you've described, generally speaking as a motion

7    for protective order is fine.  There is an export control

8    restriction.

9       And then there is separate to that restrictions that are

10   described in the sealed addendum, and some other documents under

11   seal, which are Docket Number 133 and it's, you know, appendages.

12   And we can address both of those, I think, in the context of a

13   motion for a protective order.

14      **THE COURT:**  Okay.

15      **MR. AKROTIRIANAKIS:**  And I think that the way, you know, I

16   guess, my thoughts on how it's best put forward to the Court

17   would be that we update our objections and responses, meet and

18   confer, and then thereafter, you know, narrow what issues we can

19   and then thereafter present that to the Court without the -- I

20   forget how the Court put it, but the things that would ordinarily

21   be referred, for example to the magistrate judge, just these sort

22   of larger issues.  And then the response by response, or request

23   by request type of objections would be raised separately in the

24   form of a motion to compel.

25      **THE COURT:**  Okay.  You know, I'm not fond of

1   request-by-request reviews of discovery.  I mean, I don't know

2   what judge is.  If you all really think that you're going to need

3   -- that you're not going to be able to resolve with once the

4   Court gives you a ruling or guidance on the larger question as to

5   what has to be produced, I don't know why we would need to

6   additionally look at question after question that's been

7   propounded to determine if it's within the proper scope.

8       You all have been practicing law long enough to know what's

9   appropriate discovery and what isn't.  I'm not even anticipating

10  at this time needing to refer it to a magistrate judge for that

11  kind of oversight.  Are you all suggesting that you need that?

12  And if you are, I would suggest that you consider whether or not

13  your clients want to hire a special master to hold your hands to

14  that extent.  I would think that you'd be able to do it

15  yourselves.

16      **MR. AKROTIRIANAKIS:**  I think that probably the Court's

17  ruling on these issues that we are discussing makes sense to not

18  sort of look too far past that, because I think that they will

19  guide us on the appropriate scope of the case and so on.  So I

20  didn't mean to imply that I don't think we're going to be able to

21  work things out.  I'm just saying that, should we not be able to

22  work things out about proportionality and the like, that we would

23  raise those separately.

24      So all I'm saying, Your Honor, is that in our motion for a

25  protective order, we would not anticipate addressing anything

1   other than the export control restrictions, and separately, on

2   the matters that are outlined in the sealed addendum to the case

3   management statement.

4       **THE COURT:**  Okay.  Okay.  Well, that sounds fine to me.  So

5   after the responses are served on plaintiffs' counsel, and they

6   have an opportunity to review them, you all will meet and confer

7   and to the extent that you cannot resolve the larger issues then

8   the defendant shall file -- there are two defendants, right?

9       **MR. AKROTIRIANAKIS:**  Yes, Your Honor.

10       **THE COURT:**  The defendants shall file a motion for a

11   protective order.  At this particular juncture, I don't know that

12   I need to set any time line for that.  You all are eager to get

13   going on discovery, right?  I would anticipate that you would

14   file it within, say two weeks of your meet and confer.  Is that

15   problematic?

16       **MR. AKROTIRIANAKIS:**  Without having my entire professional

17   schedule in mind at the moment, Your Honor, I think that's

18   probably fine.

19       **THE COURT:**  Okay.

20       **MR. AKROTIRIANAKIS:**  But I will say that we will, of course,

21   work with counsel as to their professional schedules.  And

22   likewise, I know there's also some holidays in April and so on,

23   so.

24       **THE COURT:**  Okay.  All right.  So you agreed on February

25   23rd or 28th?

1       **MR. AKROTIRIANAKIS:**  28th, Your Honor.

2       **THE COURT:**  28th.  All right.  Then how about two weeks

3  thereafter?  Meet and confer within that two-week period.  And

4  then two weeks thereafter, file the motion for a protective

5  order.  So we're talking about roughly four weeks from the

6  February 28th response deadline?

7       **MR. AKROTIRIANAKIS:**  Yes, Your Honor.

8       **THE COURT:**  Okay.  And plaintiffs' counsel, are you

9  agreeable?

10      **MR. PEREZ:**  Yes, Your Honor.

11      **THE COURT:**  Okay.  All right.  So that takes care of that

12  one.  And then we turn to the defendants' anticipated motions.

13  And you indicate -- let's see, a motion related to changes in the

14  law on personal jurisdiction.  Okay.  What's anticipated there?

15      **MR. AKROTIRIANAKIS:**  Yeah.  I think that during the pendency

16  of this case, the law as it relates to personal jurisdiction,

17  based on server location, and things like that, which were, you

18  know, the Court's order, Docket Number 111, on our motion to

19  dismiss, have been in flux.

20      And I don't believe that they have flux such that right now,

21  I would have a well-taken motion to reconsider the motion to

22  dismiss.  But that doesn't mean that the law won't change yet

23  again.  So that's all I'm referring to here, Your Honor.

24      Should the law change, we would, depending on how it

25  changed, perhaps ask the Court to reconsider its ruling on our

1  12(b)(2) motion.

2  **THE COURT:** All right. But wasn't the personal jurisdiction

3  motion? I think you point out, I mean, wasn't that a fact-based

4  motion?

5  **MR. AKROTIRIANAKIS:** So what it was, Your Honor --

6  **THE COURT:** Based upon the contacts with California?

7  **MR. AKROTIRIANAKIS:** Yeah. What the Court --

8  **THE COURT:** So isn't is not so much a matter of changing the

9  law. But what are the facts? Have you uncovered additional

10  facts that would support your position that your contacts are

11  insufficient?

12  **MR. AKROTIRIANAKIS:** So the Court interpreted the -- I was

13  reading this earlier this morning. The Court interpreted the

14  allegations in the complaint to be an allegation that the

15  defendants had sought out WhatsApp's California based servers for

16  the purpose of routing malicious code through those servers to

17  ultimately reach individual users' phones. And on that basis,

18  the Court held that the plaintiffs have demonstrated that

19  defendants expressly aimed their intentional act at the forum

20  state. That's from pages 24 and 25 of the motion to dismiss.

21  And based on the current state of the law, the Court's

22  analysis is correct. And those allegations, or that allegation,

23  if proved, would appear sufficient to establish personal

24  jurisdiction over the defendants. However, the defendants do not

25  believe that the plaintiffs' allegation, as interpreted by the

22

1    Court is true, or that plaintiffs would be able to prove it

2    following discovery or at trial.

3         And as the Court knows, you know, sometimes these personal

4    jurisdiction issues are dealt with in the context of an

5    evidentiary hearing.  Sometimes they're ruled upon based on cross

6    papers, and then the allegations in the complaint, which is how

7    the Court ruled on the issue of personal jurisdiction in this

8    case, but they now need to prove the allegations.

9         And I don't know that they will be able to because I don't

10   think that the basis for the Court's assertion of personal

11   jurisdiction is in fact the case, Your Honor.

12        **THE COURT:**  My whole point was that, wouldn't it be better

13   to deal with this on summary judgment, when you actually have a

14   factual record that establishes that there -- they can't prove --

15   they don't have sufficient evidence to prove the context that

16   they asserted or alleged in their complaint?

17        **MR. AKROTIRIANAKIS:**  I agree with that, Your Honor.

18        The motion for reconsideration that I referenced here in the

19   case management statement would be only based on a change in the

20   law.  For example, if the Ninth Circuit were to decide that even

21   as phrased by the Court, it would be insufficient based on server

22   location to assert jurisdiction over a defendant in the forum

23   state, then we would want to bring that to the Court's attention.

24        **THE COURT:**  Sure, sure.  Okay.  But you don't have anything

25   now at this point.

1    **MR. AKROTIRIANAKIS:**  That's right, Your Honor.

2    **THE COURT:**  Okay.  The second thing that you raised was a

3    motion going to the order of proof in the availability of

4    injunctive relief and disgorgement.  I think we already talked

5    about that.

6    **MR. AKROTIRIANAKIS:**  Yes, Your Honor.

7    **THE COURT:**  And then lastly, you mentioned something about

8    motion for judgment on the pleadings, motion for summary

9    judgment, motion for partial summary judgment.  Well, I

10   anticipate there will be a motion for summary judgment or a

11   motion for partial summary judgment.  I don't anticipate a motion

12   for judgment on the pleadings.  But if you have a different view,

13   tell me, and what would that be about?

14   **MR. AKROTIRIANAKIS:**  I would think that would be for

15   example, a place where you could raise a challenge to subject

16   matter jurisdiction or personal jurisdiction in a case like this,

17   Your Honor.

18   **THE COURT:**  Okay.  Okay.  All right.  But nothing specific

19   right now?

20   **MR. AKROTIRIANAKIS:**  No, Your Honor.

21   **THE COURT:**  Okay.  Great.  Thank you.  All right.  So we've

22   talked about the anticipated motions and the discovery.  And

23   we're going to start first with the big discovery issues in the

24   procedure that I've just outlined.  So that leaves the scheduling

25   of the case and the sealing motion that's currently pending.  I

1    looked at that motion, and I'm not exactly sure what's going on

2    here.  So I thought you all could tell me and make it easier for

3    me to understand?

4        **MR. AKROTIRIANAKIS:**  If I may, Your Honor.

5        **THE COURT:**  Sure.

6        **MR. AKROTIRIANAKIS:**  So before the Court is, of course, the

7    case management statement, and then there was this other --

8    originally when we started meeting and conferring about the case

9    management statement, we had an addendum to it that we were going

10   to ask the Court to have filed under seal.  And I think our

11   evolution of our thinking, we're the proponent of the sealing

12   order, was that that would better be presented to the Court, you

13   know, by way of reference in the case management statement, but

14   then appended to a declaration in support of a motion to seal.

15       Generally speaking, and this is at Docket 164, you know, we

16   have matters of foreign law that require us to seek sealing of

17   what we consider to be nontraditionally public information.  And

18   for the reasons that are set forth in the motion to seal and in

19   the declaration, I would ask the Court to seal the addendum to

20   the case management statement, as well as paragraphs three

21   through nine of my declaration in support of the motion to seal.

22       **THE COURT:**  The addendum is --

23       **MR. AKROTIRIANAKIS:**  It's Exhibit A.  It's Docket Number

24   164-3.  It's Exhibit A to my declaration, Your Honor.

25       **THE COURT:**  Okay.

1    **MR. AKROTIRIANAKIS:**  And it describes the second of the

2    foreign law aspects that I mentioned.

3        **THE COURT:**  I think that the difficulty that I'm having with

4    this is, it's not clear to me if you're seeking to seal the

5    nature of the proceedings in Israel, or the evidence that's

6    before the court in Israel.  Of course, that court can designate,

7    as I could, items that are subject to being sealed, and I would

8    expect another court to defer to that determination.  But it

9    seems to me that you are also trying to seal the proceedings.  I

10   mean, just aren't they public proceedings?

11       **MR. AKROTIRIANAKIS:**  These proceedings, Your Honor?

12       **THE COURT:**  Yeah.

13       **MR. AKROTIRIANAKIS:**  No, no, no.  I am not, nor do I believe

14   in a sealed court system, Your Honor, as an American.  But I am

15   asking the Court to seal exactly and no more than this, Docket

16   Number 164-3.

17       **THE COURT:**  Right.

18       **MR. AKROTIRIANAKIS:**  And then my declaration in support of

19   the motion to seal limited to paragraphs three, four, five, six,

20   seven, eight, and nine of that document, and nothing more, Your

21   Honor.  To the extent that other matters are before -- that are

22   brought before this Court that we think, for example, fall within

23   the category, the Court has just now identified whereas a matter

24   of comity, the Court would expect deference from a foreign court

25   or something like that, and we will raise that by way of a

1   separate request.  So this request deals only with those six

2   paragraphs.  Actually, it's also paragraph 11.

3       **THE COURT:**  No, I understood that from the motion.  It's

4   just that when I look at the material that you want to have

5   sealed, some of it seems like it's substantive information, but

6   some of it just describes the process.  And I don't quite

7   understand why that should be sealed.

8       **MR. AKROTIRIANAKIS:**  It all is really sort of wrapped up in

9   what's on page 3 of Docket 164-3, which itself is subject to

10  sealing and the rest of it is just context that we've provided so

11  that the Court can kind of understand what we're talking about.

12      **THE COURT:**  Okay.  We're talking -- okay, 163-3 and --

13      **MR. AKROTIRIANAKIS:**  I'm sorry, 164-3.

14      **THE COURT:**  164-3.  And you're looking at what page in

15  particular?  The one that has been translated?

16      **MR. AKROTIRIANAKIS:**  Yes, Your Honor.  So that is something

17  that I would not be at liberty, for example, to file before this

18  Court so that I can provide that information to your Court -- to

19  this Court, but to do so not with a request that this Court seal

20  that translation.

21      **THE COURT:**  Okay.

22      **MR. AKROTIRIANAKIS:**  And then the rest of what's on the page

23  before that, Your Honor.  And then the responding statement by

24  plaintiffs on the page following is all I think just context to

25  help the Court understand why this is pertinent.

1     **THE COURT:**  Okay.  And that context needs to be sealed I

2  understand with regard to the translated document, okay?

3     **MR. AKROTIRIANAKIS:**  Yes, Your Honor.

4     **THE COURT:**  But the context is equally subject to sealing?

5     **MR. AKROTIRIANAKIS:**  Well, I mean --

6     **THE COURT:**  I'm sure you are aware that there is public

7  interest in this case?

8     **MR. AKROTIRIANAKIS:**  Yes, Your Honor.  Of course.  And for

9  that reason, I didn't ask, for example, the Court to seal

10  anything more than, you know, seven specific paragraphs of my

11  declaration that refer, for example, to the content here.  I

12  didn't ask for it to -- you know, I've tried to be circumspect.

13  If you want me to go through line -- you know, line by line on

14  the sealed addendum and to see if there's something that

15  appropriately should be filed publicly, I'm happy to do that.

16     For example, the very line 3 on page 2 of Docket Number

17  164-3.  I think that the entire first clause of that sentence

18  possibly could be unsealed.  I don't know what sort of public

19  value there would be in that fact, which also appears in the case

20  management statement anyway, being unsealed in this document, but

21  I would be happy if the Court so requested to submit a redacted,

22  if you will, like blacked over or a redacted box over I guess is

23  the way we do it now, parts of this statement in order to address

24  that concern.

25     **THE COURT:**  Yeah.  I think any sealing should be as narrow

1    as possible.  I mean, when we look at paragraph on the second

2    paragraph starting at line 9.

3        **MR. AKROTIRIANAKIS:**  Yes.

4        **THE COURT:**  Why is that subject to sealing?

5        **MR. AKROTIRIANAKIS:**  Well, the very first clause, for

6    example, is refers to a sealed matter.  So I think that should be

7    sealed.  The next one, two, three, four -- four words probably

8    could be unsealed.  But then after that, it refers again --

9        **THE COURT:**  Are you looking at the line starting at 9?

10       **MR. AKROTIRIANAKIS:**  Yeah.  It starts with the word under.

11       **THE COURT:**  Yeah.

12       **MR. AKROTIRIANAKIS:**  Yes, Your Honor.  I think that the

13   first clause there before the first comma refers to sealed

14   matter, and it should be sealed.  And then the next, you know,

15   two words are probably okay to be unsealed.  But they don't make

16   any sense without the rest of the sentence.  And I think the rest

17   of that sentence refers to the content of sealed matter, and it

18   should itself be sealed.

19       So I'm happy to submit something like that to Your Honor.

20   Really, I am.  And I understand the concern.  And I frankly agree

21   that as much of these or any court proceedings that take place in

22   the United States should be public, but there are, you know, some

23   restrictions around that.

24       **THE COURT:**  Okay.  Why don't you take a stab at it, and also

25   go through your declaration again.

1      **MR. AKROTIRIANAKIS:**  If I might direct the Court just to one

2  thing that I think would maybe make this make more sense, if I

3  could have just a moment, Your Honor.  In my declaration -- if I

4  could direct the Court to page 3 of my declaration.

5      **THE COURT:**  Okay.

6      **MR. AKROTIRIANAKIS:**  Which is --

7      **THE COURT:**  Which paragraph?

8      **MR. AKROTIRIANAKIS:**  Paragraph seven.

9      **THE COURT:**  Okay.

10      **MR. AKROTIRIANAKIS:**  And on line 25.

11      **THE COURT:**  Okay.

12      **MR. AKROTIRIANAKIS:**  There's a reference to an order there.

13      **THE COURT:**  Yeah.

14      **MR. AKROTIRIANAKIS:**  And that order, and what its direction

15  is to my client, is what makes me have to be as circumspect as

16  I'm being in describing all of this, Your Honor.

17      **THE COURT:**  Yeah.  I don't understand it.  I don't

18  understand why that which gives away no secrets.

19      **MR. AKROTIRIANAKIS:**  It is itself sealed, Your Honor.  If I

20  may, Your Honor, I'll just -- I'll take a stab through this

21  declaration and see if there are words and sentences and things

22  that I've -- that are highlighted in the unredacted part of it

23  that I would ask the Court to have be unsealed.  And I'll do the

24  same with respect to the sealed addendum.

1      **THE COURT:**  I mean, it's one thing to seal the evidence.

2   It's another thing to seal the process that describes how the

3   evidence is handled without giving away any of the secrets.  I

4   don't get it.  Why don't you take a better -- a closer look at it

5   and try to give me something that's just a little narrower, a

6   little more narrowly tailored to cover only the words that need

7   -- absolutely need to be sealed?

8      **MR. AKROTIRIANAKIS:**  Yes, Your Honor.

9      **THE COURT:**  Okay.  Okay.  Then let's talk about the

10  schedule, then.  And I think that will be about the last thing

11  because you all aren't interested at this juncture participating

12  in any ADR, right?  Not until after you've finished some

13  discovery?

14     **MR. PEREZ:**  That's correct for plaintiffs, Your Honor.  We

15  don't see any reasonable prospect of settlement at this time.

16     **THE COURT:**  I'm just going through to make sure there's

17  nothing else that I need to talk to you about.

18     **MR. PEREZ:**  Your Honor, if I could make just one point about

19  the ceiling issues that is defendants' motion and we -- as they

20  reflected in their submission, we have not opposed that motion.

21  But in communicating the fact that we did not oppose that motion

22  for purposes of this conference, we did also say very

23  specifically that we reserve the right to revisit the propriety

24  of sealing going forward.

25     And I just wanted to make that clear on the record today,

1   because, as the Court noted, this is a matter of intense public

2   interest.  There is a strong presumption of public access.  And

3   it's clear, even from the discussion we've had today, that

4   defendants will be seeking judicial intervention in the form of

5   their discovery obligations on the basis of these sealed

6   materials, which makes the presumption of public access even

7   stronger.

8       So I just wanted to flag and be clear on the record that we

9   do anticipate that there may be further discussion as to the

10  propriety of sealing, as that issue remains a factor in the case.

11      **THE COURT:**  All right.  I did understand that.  I did

12  understand that.

13      Okay.  Now, let's look at the schedules that you all

14  proposed.  I believe the biggest distinction is between on the

15  proposed pretrial schedule is whether or not there needs to be --

16  I think there were two things interjected that I'd never heard of

17  before, or that I've never granted, I should say.

18      And that's the initial expert disclosures, which is sort of

19  a preview of expert disclosures, and the substantial completion

20  of document discovery, neither of which are things that I

21  typically order in the case, in any case.  In fact, I don't know

22  that I've ever ordered either of those things.  Parties can agree

23  to those things, and I sign off on agreements all the time.  But

24  typically, I follow the standard procedures that are set forth in

25  the federal rules and our local rules.

1   So it's plaintiff that wants those two things, right?

2        **MR. PEREZ:**  Yes, Your Honor.  And I can address them.

3        And we understand Your Honor's practices and obviously,

4   we'll proceed as the Court directs.  With respect to the

5   substantial completion, our concern is that in this case, as the

6   Court well knows, the discovery process has been very

7   challenging.  There have been a number of obstacles that have

8   been interposed with our effectual immunity.

9

10       Now, with respect to foreign law, it's not only the matter

11  of the sealed records, there's also issues as they've indicated,

12  they believe under export control laws.  And we want to make sure

13  that we get document discovery on a timely basis, before the last

14  day of fact discovery in a time period that allows the case to

15  move forward expeditiously, and gives us a realistic time period

16  to conduct depositions, particularly in a case where the

17  depositions may well involve international travel, may be time

18  consuming to arrange, may have their own purported restrictions

19  as to how they can proceed and in what manner they can proceed.

20       So we just think in this case, it makes very good sense in

21  order to get the litigation up and running again, to have a

22  prompt deadline for substantial completion of document discovery,

23  so that we get documents in hand and can proceed to a realistic

24  deposition discovery window before the fact discovery cut off.

25       **THE COURT:**  How do you define substantial completion?

1     **MR. PEREZ:**  It's a term that, you know, we have found a

2  couple instances in which the Court has entered those.  I think

3  it's probably correct that in at least some, if not all of those,

4  it's been agreed by the parties.

5     But it just -- it's a recognition that there may be

6  stragglers.  There may be documents that come off privilege logs

7  or individual pockets of documents that haven't been produced

8  yet, but that by and large, document discovery is complete.  That

9  you have completed producing documents in response to the other

10  party's requests, and likely there would be some discussion

11  between the parties as to what remains outstanding.  But it would

12  mean we have -- for all intents and purposes, we have document

13  discovery in hand, and we're ready to proceed to depositions.

14     **THE COURT:**  I think I don't like that.  It seems too

15  subjective.  And it's the kind of thing where I anticipate you

16  will be -- one side or the other will be contacting the Court.

17  They haven't complied, even though it's not the discovery cutoff

18  date.

19     Why don't we do something different.  Why don't we just set

20  a discovery cutoff date, and let's just check in 60 or 90 days

21  before.  We will have a conference, some sort of a status

22  conference or a case management conference and figure out what's

23  left.  And if need be, talk about an actual schedule for making

24  sure it gets done on time.

25     **MR. PEREZ:**  That would suit our needs perfectly, Your Honor.

34

1    Thank you.

2        **THE COURT:**   Okay.   60 or 90 days in advance?

3        **MR. PEREZ:**   We would favor 90 days, Your Honor, just to have

4    a realistic deposition discovery window if possible.

5        **THE COURT:**   Okay.   All right.   We'll do that instead.   And

6    then with regard to the initial expert disclosure versus the

7    final expert disclosure.

8        **MR. PEREZ:**   Yes, Your Honor.   And what we're anticipating

9    here is not sort of a -- some sort of abridged version of an

10   expert report.   What we're really talking about is just

11   identification of experts, so the parties can have transparency

12   among themselves as to what the anticipated areas of expert

13   testimony are.

14       This is a case that has very technical aspects.   And it will

15   be helpful to having an orderly expert discovery period, just to

16   have an indication of from each side, here are the topics on

17   which we anticipate expert testimony and who our experts are.

18   Then we also have the overlay here of these highly confidential

19   matters and sealed records, which may create additional

20   complexity around expert discovery, which would be another reason

21   to just have the experts identified a bit sooner than when their

22   actual reports are filed.

23       **THE COURT:**   Okay.   So essentially, you just want to sort of

24   separate the identification from the disclosure of the reports?

25       **MR. PEREZ:**   Exactly.   We just have in mind, you know, name

1   and basically anticipated area of testimony.  A couple sentences.

2        **THE COURT:**  Okay.  Well, that makes sense.

3        **MR. AKROTIRIANAKIS:**  Your Honor, that --

4        **THE COURT:**  That doesn't mean -- hold on.  That doesn't

5   mean, however, that between the time of the identification and

6   the time of disclosure, a party couldn't change their mind and

7   decide not to use the expert, right?

8        **MR. AKROTIRIANAKIS:**  Or to supplement the disclosure, Your

9   Honor.  If we're -- I mean, with due respect, I don't really see

10   how any of the concerns that Mr. Perez raised, would be addressed

11   by having this extra requirement.  And as the Court I think

12   intuits to your -- based on your comments to the earlier idea of

13   a substantial completion of document discovery, also not a thing

14   under the federal rules or the local rules.  It's just one more

15   thing to fight about.

16      I think that, you know, we -- I'm all for an orderly expert

17   discovery period, and for that matter a fact discovery period and

18   everything else that has to deal with this case.  But I don't

19   think that this request for an extra requirement actually

20   addresses any of the concerns that it's purportedly intended to

21   address.

22      And if we were agreeable to it, if the parties are agreeable

23   to having 100 different case dates in a schedule, as they

24   apparently have been in at least one matter before Your Honor

25   that Your Honor signed off on and is in the -- in their part of

36

1    the case management statement, okay, fine.  But this is just,

2    again, more deadlines.  You know, don't necessarily make for a

3    more orderly discovery period.  That just make for more things to

4    fight about.

5        **THE COURT:**  All right.  I think it's a -- I think it would

6    probably be a fine idea, but only if both sides agree.  And

7    there's simply not the -- I don't impose that many deadlines in

8    cases.  I expect you all to litigate the case at your pace.  But

9    simply, my job is simply to give you enough time, but no more

10   time than you need to get this case to trial.

11       **MR. PEREZ:**  Your Honor, and again, it's in that spirit, we

12   understand where the Court is leaning on this.  But it's really

13   in that spirit that we propose this deadline.  That rather than

14   have a situation where we end up pressed for time on the expert

15   discovery, we just have this interim step.  The deadline is at

16   the close of fact discovery.  By the close of fact discovery, the

17   parties will know who their experts are, and what they're

18   planning to put forth expert testimony on.

19       There is no reason in the world for the parties not to

20   exchange that information in the spirit of an orderly process.

21   So that's the reason.  You know, there shouldn't be litigation by

22   surprise, or to be put in some time pressure, where we are forced

23   to -- either side is forced to respond to unanticipated areas of

24   expert testimony.

25       **THE COURT:**  Have you all agreed that in fact, the experts

1   will be known by the time of fact discovery?

2   **MR. PEREZ:**  No, Your Honor.  That was not an agreement.  It

3   was more just a statement as to how these cases tend to progress.

4   And I would expect that roughly a year from now, when we're

5   at the conclusion of fact discovery subject to what deadline the

6   Court sets, I expect both sides will have a very good idea of

7   what expert testimony they expect to be putting forward.  And

8   there is, as I said, no reason I believe for the parties not to

9   exchange that information in the spirit of an orderly process and

10  avoiding litigation by surprise.

11  **THE COURT:**  Okay.

12  **MR. AKROTIRIANAKIS:**  Your Honor, there's no -- I mean, if

13  there was a real reason for extra deadlines like that, I'm sure

14  that Congress would have found fit to have the Rules Committee

15  include them in the rules.  I mean, if we have a deadline --

16  **THE COURT:**  Well, if not Congress, the group that publishes

17  the manual on complex litigation would have come up with it.

18  **MR. AKROTIRIANAKIS:**  Sure, Your Honor.

19  **THE COURT:**  If not Congress.

20  All right.  I'm inclined to just follow the regular

21  procedures, even though I do think that it's a good idea, but

22  only if both sides agree.  So let's talk about the deadlines.  On

23  page 20, you all have proposed some deadlines and then -- and

24  given different proposed dates.  Page 21, you have agreed upon

25  dates.  And then, what is the thing on page 24?

1    **MR. AKROTIRIANAKIS:**  On pages --

2    **THE COURT:**  You excerpted the dates that are agreed upon and

3    put them on page 24?

4    **MR. AKROTIRIANAKIS:**  Yes, Your Honor.

5    And the only as to those dates, which I think includes all

6    of the dates that are ordinarily set following these conferences,

7    there's only just the one that we have a disagreement about.  I

8    can explain it if you like, but these are all the dates that are

9    ordinarily part of that order.  And we agree on all of them

10   except for the one.

11   **THE COURT:**  Okay.  So let's look -- if you agree on all

12   these dates, then it's fine with me, except for the trial date,

13   and I'll talk to you about that.

14   **MR. AKROTIRIANAKIS:**  Oh, I'm sorry, Your Honor.  I misspoke.

15   There is one more, too.  It's the deadline to amend the

16   pleadings.

17   **THE COURT:**  Okay.  I have a standard procedure.  And that

18   is --

19   Is it 90 days, Kelly, or 60?

20   **THE CLERK:**  It's 90 days.

21   **THE COURT:**  Ninety days.

22   My standard case management order is pleadings can be

23   amended up till 90 days before the close of fact discovery.  If

24   you need to take further discovery, based upon the amendment,

25   then you still have 90 days to do so.

1    Is there any reason why that wouldn't work in this case?

2    **MR. PEREZ:**  Your Honor?

3    **MR. AKROTIRIANAKIS:**  Your Honor, it would depend on what the

4    amendment was.  If there was like, some new claim, for example,

5    that was amended or a new party.

6    I mean, a new party would say like, well, wait a minute.

7    You've taken all of this discovery.  I haven't been here for

8    this.  Then we end up with, you know, who could it be used

9    against and so on.  But if there's new claims, and there may be

10    motion practice related to those claims that would consume all or

11    a lot of that 90 days.

12    **THE COURT:**  Okay.  And what's plaintiff --

13    **MR. PEREZ:**  And Your Honor -- excuse me, Your Honor, if you

14    were speaking.

15    **THE COURT:**  Okay.

16    **MR. PEREZ:**  I was just going to say that we have a little

17    bit of a different concern, which is that our concern with

18    amendment is that we want to have documents in hand and have

19    meaningfully dug into discovery before our deadline to amend

20    comes and goes.

21    And it relates back to the issue about substantial

22    completion that if we're in as in a schedule where 90 days from

23    the close of fact discovery, we may not have received meaningful

24    document discovery.  I hope that's not where we're going to end

25    up.  But then that would be problematic for us from a perspective

1   -- from the perspective of amending.

2       **THE COURT:**  All right.  So neither one of you like my

3   standard procedure, and neither one -- neither side agrees with

4   the other.  So how are we supposed to come up with a deadline?

5       I suggest that you all meet and confer and come up with the

6   deadline.  The default is going to be 90 days before fact

7   discovery.  But if you all agree to something else, that would be

8   fine with me.  You are pretty far apart.

9       I mean, the defendant is proposing April 1st of this year.

10  That's just a few months from now.  I don't see how that possibly

11  takes into account that anything that you might learn during

12  discovery.  The plaintiffs' position of November 30th seems to me

13  to be more realistic.

14      **MR. PEREZ:**  Your Honor, the November 30th date that we

15  proposed actually isn't far off from 90 days before the close of

16  fact discovery.  And that was part of the reason we selected that

17  date.  The only distinction is that we had coupled that with the

18  substantial completion of document discovery deadline, so that we

19  would have 30 days after the substantial completion of documents

20  in which to amend.

21      But I understand that issue has already been addressed, and

22  I'm not revisiting it.  But if we're going to be having a

23  discovery conference 90 days out from the close of fact

24  discovery, perhaps we could address amendment of the pleadings at

25  that time, based on where we are in document discovery.

1     **THE COURT:**  We could, but I don't see any reason to not set

2    a date today.

3     **MR. AKROTIRIANAKIS:**  Well, honestly, Your Honor, I think

4    maybe I just have a different -- I'm thinking about it

5    differently than what Your Honor is -- if Your Honor wants to

6    have the pleadings amended 90 days before --

7     **THE COURT:**  No later than 90 days.

8     **MR. AKROTIRIANAKIS:**  Yes, Your Honor.  And should that then

9    require additional time for discovery because of those

10   amendments, then I mean, for example, if the complaint were

11   amended, then we may need to amend the answer to raise

12   affirmative defenses to new claims.  And then we may need to

13   pursue discovery in support of those affirmative defenses.

14    I don't know.  I'm just sort of conceiving of this.  But if

15   it's not going to be a problem to move the discovery cut off to

16   allow us to do that, then it kind of doesn't matter to me, apart

17   from if new parties are brought into the case late in the day,

18   that often causes all kinds of problems.

19     **THE COURT:**  So what do you want?

20     **MR. AKROTIRIANAKIS:**  Well, my early date that I had proposed

21   was based on counsel's representation in this statement that they

22   don't anticipate there being any amendments needed to the

23   pleadings.  And that the only amendments that they foresaw were,

24   for example, if you took up our motion to strike the injunctive

25   relief, and then they'd need to amend around that or something

42

1  like that.  So I didn't think that this was -- that having an

2  early deadline of having the pleadings cooked, so we know what

3  the target is that we're aiming at was that big of a deal.  But

4  if --

5      **THE COURT:**  Okay.  But the pleadings are cooked now, so to

6  speak, right?

7      **MR. AKROTIRIANAKIS:**  Yes.

8      **THE COURT:**  And if no one anticipates filing, or needing to

9  file a motion to amend, chances are that won't happen.  And keep

10  in mind that an amendment has to be either with the consent of

11  the opposing party or by motion.  So everyone will be given an

12  opportunity to be heard as to whether or not the opposing party

13  can amend.  It's just that I think it would be in a case such as

14  this, I think it's sort of unworkable to have an amendment date

15  in April, and to not permit amendment if something is discovered

16  in discovery that needs to be explored.

17      I mean, I couldn't do that.  I would not preclude a party

18  from doing that.  So they're just -- there has to be in a

19  reasonable date.  So you guys need to meet and confer.  I'm going

20  to impose my default date unless you all agree to another date

21  that's somewhere in between.

22      **MR. AKROTIRIANAKIS:**  Understanding that the court requires

23  either consent or a motion.  And if we can be heard on the need,

24  if any that exists at that time for further discovery based on

25  granting of an order, Your Honor, I don't have any problem with

1   the -- with Your Honor's default.

2      **THE COURT:**  Right.  The default date is the last date.  And

3   obviously if you discover something next month, that would

4   suggest an amendment is appropriate, that would be the time to go

5   forward with it.  And not wait until the -- till the actual

6   deadline.

7      **MR. AKROTIRIANAKIS:**  Yeah.  Honestly, Your Honor, my only

8   concern is that if someone were waiting, and I make no

9   accusation, but if someone did wait up until, you know, the end,

10  more or less -- not the end, but three months before the end, and

11  now all of a sudden, we're going to change what the case looks

12  like, well, then I may need to take discovery.  And if I'm going

13  to have the opportunity to do that, then I'm fine.

14     **THE COURT:**  Well, that person, that side, that party

15  wouldn't be permitted to amend if they sat on the information if

16  they learned -- and I've denied motions on that basis, because

17  parties weren't diligent in moving to add a party that they

18  discovered in discovery previously.  So I think you're protected

19  in that way.

20     **MR. AKROTIRIANAKIS:**  Yes, Your Honor.  Thank you.

21     **MR. PEREZ:**  And Your Honor, we're fine with the default

22  rule, just recognizing that if we do end up at that 90-day

23  deadline, and discovery hasn't progressed in the way we had

24  anticipated, we may just wish to raise to the Court whether that

25  deadline should be extended, to the extent --

1    **THE COURT:**  How about if I enlarge that deadline to 120 days

2    instead of 90?

3    **MR. PEREZ:**  That would be preferable from our perspective.

4    **THE COURT:**  And that would give you an earlier deadline too.

5    **MR. AKROTIRIANAKIS:**  Yeah, that's fine, Your Honor.

6    **MR. PEREZ:**  I'm sorry.  So I'm sorry.  I thought I thought

7    you meant later on in the discovery period.  But that would

8    actually be earlier in the discovery period.

9    **THE COURT:**  Right.

10   **MR. PEREZ:**  Correct?  Yeah.  So it might be preferable for

11   us to have the conference a bit earlier, and then the deadline

12   for amendment a bit later.  So if we did the conference 100 days

13   out from the close of fact discovery, and a deadline for

14   amendment two weeks or so after that, that would work well from

15   our perspective.  Just to ensure that discovery has progressed

16   before our deadline to amend is upon us.

17   **THE COURT:**  Okay.  So we'll go with the 90 days then, the

18   90-day deadline in advance of the fact discovery cut off, and we

19   will set the status conference for 100 -- 120 days, 30 days

20   before that.  All right.

21   **MR. PEREZ:**  Thank you, Your Honor.

22   **THE COURT:**  So you said that there was no agreement though

23   as to fact discovery.

24   **MR. AKROTIRIANAKIS:**  Yeah.  I mean, it's -- we're not far

25   apart.  It's like seven weeks, I think.  It might be six weeks.

1    But it's not super far apart, Your Honor.

2         And I think there's a -- I mean, I -- one, I don't think

3    that really is just all that far apart.  But also, you know,

4    there's a number of sort of complications in this case that don't

5    exist in almost any other case, Your Honor.  I tried to explain

6    them on the bottom of page 23 of the last paragraph there that

7    things are just I expect going to take longer than they

8    ordinarily would.

9         **THE COURT:**  Sure.  Well, you all have requested a trial

10   date.  If you don't think that you're going to have sufficient

11   time to litigate the case, you can always ask for one that's

12   later.

13        Well, I'm going to impose one a little later anyway.  I

14   require a 120-day period between dispositive motions being heard

15   and the trial date.  The first 60 days of that period gives me as

16   much time as I need to get an order out.

17        Most parties like to have an order out on dispositive

18   motions and Daubert motions that are heard at the same time,

19   before they start their pretrial preparation.  In our Court,

20   pretrial preparation starts roughly 60 days before trial, with

21   your meet and confer, followed by the filing of your papers.  So

22   you need to account for 60 days.

23        There aren't 60 days between July 29th and late October

24   2024.  I believe that's just 90 days.  So we're actually looking

25   at a trial late November.  You all have estimated ten days, two

46

1    weeks, so we probably start trying the case --

2        Kelly, do you have our trial calendar up?  We'd probably

3    start trying the case the week --

4        **THE CLERK:**  Yes, I have it up.

5        **THE COURT:**  -- the week after Thanksgiving, first two weeks

6    of December.

7        **MR. PEREZ:**  And Your Honor, to be clear, the ten days was

8    defendants estimate.  Our position has been that at this point

9    prior to discovery, we're really not in a position to estimate

10   the length of trial.

11       **THE COURT:**  Okay.  I can't imagine more than ten days, two

12   full court weeks.  So we'll set it at that.  And it can be

13   adjusted if indeed we need to do so at a later conference.

14       **MR. AKROTIRIANAKIS:**  Your Honor, did I hear you correctly to

15   say that there must be at least 120 days between --

16       **THE COURT:**  Trial and dispositive motion hearing date.

17       **MR. AKROTIRIANAKIS:**  Right.  Would the Court entertain just

18   moving the trial date back just a little bit?  The reason I ask

19   is this.  I'm on the board of my law firm and I have a

20   substantial amount of administrative responsibility that takes

21   place right there in that period of the year and that is just a

22   horrible time to have to also try the case.

23       **THE COURT:**  So what are you asking for?

24       **MR. AKROTIRIANAKIS:**  Instead of late November, could we have

25   late December?

1      **THE COURT:**  Christmas?

2      **MR. AKROTIRIANAKIS:**  Well, it's not my preferred, Your

3  Honor.  I would rather be with my family at Christmas.  And it's

4  probably hard to get a jury then, but --

5      **THE COURT:**  It's impossible to get a jury at the end of

6  December.  So no, I can't move it to the end of December.

7      **MR. AKROTIRIANAKIS:**  But what about the beginning of January

8  then?

9      **THE COURT:**  What do the -- what's plaintiffs' position?

10     **MR. PEREZ:**  We're always courteous with respect to other

11  people's obligations.  But just as a calendar matter, we would

12  have a very strong preference for the beginning of December.

13  Both in order to get this case moving more quickly, and because,

14  you know, an early January trial date is also quite problematic

15  in terms of the holidays, as compared with early December.

16     **THE COURT:**  Right.  I don't generally hold trials between

17  mid-December to mid-January.  I mean, no juror wants to come in

18  the week after -- on New Year's.  I mean, everybody's trying to

19  get back to work.  Maybe we could do it right before Thanksgiving

20  in November.

21     Can you look up that, Kelly, and go forward a little bit and

22  just push up the dates a few weeks.

23     **THE CLERK:**  So the 11th is Veterans Day.  So if you do it

24  the 12th --

25     **THE COURT:**  Is that a Monday?

1    **THE CLERK:**  That's a Monday.  Yes.  So it would be the 12th

2    to the 22nd is --

3    **THE COURT:**  And Thanksgiving is the last week?

4    **THE CLERK:**  Thanksgiving is the 28th.

5    **THE COURT:**  Okay.  So that might work, right?  Okay.  Let me

6    see what we're looking at.  November of 2024.  Okay.  So if we

7    did it -- yeah, that would be done before Thanksgiving.  Right?

8    **THE CLERK:**  Yeah.  Right.  November 12th, 2024 to November

9    22nd, 2024.  And then Thanksgiving is that following week.

10   **THE COURT:**  Right.  And we could go over to that Monday if

11   we needed to, for deliberations, for instance.  Okay.  Okay.

12   November 22nd.  Okay.  Let's see how that impacts the rest of the

13   dates.  If we do November 22nd, the dispositive motions -- yeah,

14   we could do it a week or two before the 29th of July.  I think

15   120 days would be like July --

16   **MR. AKROTIRIANAKIS:**  Your Honor.

17   **THE COURT:**  Yeah.  Like July 18.  So that's only 11 days,

18   July 18th.  That's only 11 days before your current schedule.

19   All right.  I could give you that November 12th date, instead of

20   late October.

21   **MR. AKROTIRIANAKIS:**  Or early December.  The late November

22   is actually worse for me than early December would be, Your

23   Honor.

24   **THE COURT:**  Who's speaking?

25   **MR. AKROTIRIANAKIS:**  I'm sorry.  Joe Akrotirianakis.  I had

1   raised earlier that I have some admin --

2       **THE COURT:**  Well, you pick.  Those are the two dates that

3   are available.  You pick.  Which of those are the two dates that

4   are available.  I'm not going over till January.

5       **MR. AKROTIRIANAKIS:**  Right.  So November 12th, or some date

6   early in December?

7       **THE COURT:**  November 12th, or let's give them a specific

8   date, Kelly.

9       **THE CLERK:**  December 2nd through and the week of December

10  2nd and December 9th.

11      **THE COURT:**  Okay.  You can have either time slot.

12      **MR. AKROTIRIANAKIS:**  Yeah.  I mean, the 2nd would be better,

13  Your Honor.

14      **THE COURT:**  Okay.  December 2nd, then.

15      The pretrial conference, Kelly?

16      **THE CLERK:**  November 7th.

17      **THE COURT:**  Okay.  And the dispositive motions hearing date

18  would be -- we could keep it on the 29th.

19      **THE CLERK:**  That's a Monday.

20      **THE COURT:**  Okay.  So --

21      **THE CLERK:**  So it would be July 25th or August 8th.

22      **THE COURT:**  What about August 1st?

23      **THE CLERK:**  I'm sorry, August 1st.

24      **THE COURT:**  Right.  It would be August 1st.  Okay.  So here

1    are the dates.  Expert disclosures, February 24th -- 26 -- I'm

2    sorry -- 2024.  Rebuttal expert disclosures, April 8th, 2024.

3    Expert discovery cutoff, May 27th, 2024.  Hearing on dispositive

4    motions, August 1st, 2024.  Pretrial conference, November 7th,

5    2024.  And trial would be December 2nd, 2024.  And with regard to

6    fact discovery cut off, what did we agree to?

7        **MR. AKROTIRIANAKIS:**  We didn't, Your Honor.  That's the one

8    we don't agree on.

9        **THE COURT:**  Oh, okay.  And that's between -- I'm going to

10   pick an arbitrary date, and unless you all -- in between the two

11   dates you've suggested, unless you all want to meet and confer

12   and to submit something.

13       **MR. AKROTIRIANAKIS:**  Well, in light of the slightly later

14   trial date, Your Honor, could I ask that we confer and see if we

15   can agree on something?

16       **THE COURT:**  Okay.

17       **MR. AKROTIRIANAKIS:**  Thank you.

18       **THE COURT:**  All right.  Let me know within a week.  Just

19   file an informal letter on the docket indicating what date you

20   agree to fact discovery cut off.  And then the settlement

21   conference on or before February 12th, 2024.

22       You know, I usually hear -- would like you to go to

23   settlement before you expend the resources on your dispositive

24   motions.  And I guess -- let's see.  I guess that date would --

25   that would work.  Okay, on or before.  I'm going to say February

1  2024.

2       The magistrate judges need -- I can't guarantee you a

3  specific date.  So we'll give them a month, whoever is assigned.

4  Did you all have anybody in mind, or do you want me to just

5  assign it randomly?

6       **MR. PEREZ:**  We have not discussed particular candidates,

7  Your Honor.

8       **THE COURT:**  Okay.

9       **MR. PEREZ:**  But with respect to the date, I would just note

10  that that February date comes after our proposed date for the

11  close of fact discovery, but it comes before their proposed date

12  for the close of fact discovery.  And we would suggest that it

13  would probably make sense to have the settlement conference after

14  fact discovery.

15       **THE COURT:**  After.  Yes.  Why don't you then when you submit

16  your stipulation within a week as to the discovery cutoff date,

17  also include the settlement date.  Include the month in the year

18  of 2024 that you would agree to submitting to a settlement

19  conference.

20       **MR. PEREZ:**  Yes, Your Honor.

21       **THE COURT:**  Okay.  All right.  All right.  It's been more

22  than an hour.  We've taken care of a number of matters.  We will

23  have the status conference to go over discovery.  We'll have that

24  around 120 days, I guess before the close of fact discovery.

25       So why don't you in your stipulation include that date.  And

52

1   we will hold off on issuing a case management and pretrial order

2   until we get your stipulation next week, and we'll incorporate

3   all the dates in that one order.

4        **MR. AKROTIRIANAKIS:**  Thank you, Your Honor.

5        **MR. PEREZ:**  Yes, Your Honor.  Thank you.

6        **THE COURT:**  Okay.  Now, before we conclude, is there

7   anything else?

8        **MR. AKROTIRIANAKIS:**  Not at this time, Your Honor.

9        **MR. PEREZ:**  Not from plaintiffs, Your Honor.

10       **THE COURT:**  All right.  All right.  Thank you.  And I'll see

11  you in the future.

12       **MR. PEREZ:**  Thank you, Your Honor.

13       **MR. AKROTIRIANAKIS:**  Thank you, Your Honor.

14       **THE COURT:**  All right.  You're welcome.  We're adjourned.

15            (Proceedings adjourned at 12:00 p.m.)

16                      ---oOo---

17            **C E R T I F I C A T E**

18       I, DIPTI PATEL, court-approved transcriber, certify that the

19  foregoing is a correct transcript from the official electronic

20  sound recording of the proceedings in the above-entitled matter.

21  *Dipti Patel*

22  _____

23  DIPTI PATEL, CET-997

24  LIBERTY TRANSCRIPTS                    Date:  March 18, 2023

25