JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
  *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES
LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD.,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br><br>*[Filed Concurrently with Reply Declaration of Roy Blecher]*<br><br>Date:     May 25, 2023<br>Time:    9:00 a.m.<br>Ctrm:    3<br>Judge:   Hon. Phyllis J. Hamilton<br><br>Action Filed:  10/29/2019<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................... 1

II. ARGUMENT .............................................................................................................................. 1

    A.    Israeli Law Prohibits Defendants from Disclosing the Documents Sought .................................................................................................................. 1

        1.    DECL Prohibits Defendants from Complying with the RFPs ........................................................................................................ 1

        2.    The ▇▇▇▇▇▇▇ Also Prohibits Document Production ................. 3

    B.    The *Richmark* Factors Support a Blocking Order ............................................ 4

        1.    Plaintiffs' Document Requests Are Not Important or Specific .................................................................................................. 4

        2.    The Information Plaintiffs Seek Originated Abroad ......................... 5

        3.    Plaintiffs Can Seek Discovery Through the Hague Convention .......................................................................................... 6

        4.    Israel's Case-Specific Interest Outweighs Generalized U.S. Interests ..................................................................................... 7

            a.    The United States Has No "Exceptional" Interest in Discovery ................................................................................ 7

            b.    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ...................... 9

            c.    A Protective Order Would be Inadequate ............................. 10

        5.    Defendants Face Extreme Hardship ................................................ 11

    B.    Plaintiffs Seek Irrelevant Information Disproportionate to Their Claims ............................................................................................................... 12

III. CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adlerstein v. U.S. CBP.*,
   2021 WL 6133955 (D. Ariz. Dec. 20, 2021) ...............................................................................11

*In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*,
   211 F.R.D. 374 (C.D. Cal. 2002) ..............................................................................................10

*Continental Vineyard LLC v. Vinefera Wine Co.*,
   2016 WL 302122 (N.D. Ill. Jan. 25, 2016) ................................................................................13

*In re Facebook PPC Advert. Litig.*,
   2011 WL 1324516 (N.D. Cal. Apr. 6, 2011) .............................................................................11

*Finjan, Inc. v. Zscaler, Inc.*,
   2019 WL 618554 (N.D. Cal. Feb. 14, 2019) .............................................................................11

*Hernandez v. Polanco Enters., Inc.*,
   19 F. Supp. 3d 918 (N.D. Cal. 2013) ........................................................................................15

*Ibrahim v. DHS*,
   2013 WL 1703367 (N.D. Cal. Apr. 19, 2013) ...........................................................................11

*In re Ins. Antitrust Litig.*,
   938 F.2d 919 (9th Cir. 1991), *aff'd in part, rev'd in part sub nom. Hartford
   Fire Ins. Co. v. California*, 509 U.S. 764 (1993) .......................................................................8

*Long v. Hewlett-Packard, Co.*,
   2006 WL 3751447 (N.D. Cal. Dec. 19, 2006) ..........................................................................15

*Masimo Corp. v. Mindray DS USA, Inc.*,
   2014 WL 12589321 (C.D. Cal. May 28, 2014) ........................................................................10

*Proofpoint, Inc. v. Vade Secure, Inc.*,
   2020 WL 504962 (N.D. Cal. Jan. 31, 2020) ...............................................................................6

*Reins. Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*,
   902 F.2d 1275 (7th Cir. 1990) ..................................................................................................10

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ........................................................................................ *passim*

*In re Rubber Chems.*,
   486 F. Supp. 2d at 1083 ........................................................................................................4, 5

*SEC v. Church-Koegel*,
   2021 WL 6104157 (C.D. Cal. Sept. 29, 2021) .........................................................................13

*Société Nat. Ind. Aerospatiale v. U.S. Dist. Ct.*,
   482 U.S. 522 (1987) ................................................................................................................9

*Sonner v. Premier Nutrition Corp.*,
   971 F.32d 834, 844 (9th Cir. 2020) ......................................................................................14

*In re Subpoena to Third Party Sentieon, Inc.*,
   2022 WL 17477092 (N.D. Cal. Dec. 6, 2022) ......................................................................11

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
   2019 WL 6134958 (N.D. Cal. Nov. 19, 2019) ...............................................................5, 6, 8

*Tiffany (NJ) LLC v. Qi Andrew*,
   276 F.R.D. 143 (S.D.N.Y. 2011) .............................................................................................6

*Timberlane Lumber Co. v. Bank of Am. Nat. Tr. & Sav. Ass'n*,
   749 F.2d 1378 (9th Cir. 1984) .................................................................................................8

*U.S. ex rel. Uchytil v. Avande, Inc.*,
   2018 WL 4150889 (W.D. Wash. Feb. 27, 2018) ..................................................................13

*United States v. S. Pac. Transp. Co.*,
   1995 WL 84193 (D. Or. Feb. 20, 1995) ................................................................................13

*United States v. Vetco Inc.*,
   691 F.2d 1281 (9th Cir. 1981) ...............................................................................................10

*Vallabharpurapu v. Burger King Corp.*,
   276 F.R.D. 611 (N.D. Cal. 2011) ...........................................................................................15

*Wagafe v. Trump*,
   2018 WL 1737939 (Apr. 11, 2018) .......................................................................................11

**Statutes and Rules**

Israel's Defense Export Control Law ................................................................................ *passim*

Fed. R. Civ. P. 26(b) ......................................................................................................................13

**Other Authorities**

Nicholas Confessore, *Cambridge Analytica and Facebook: The Scandal and the
   Fallout So Far*, N.Y. Times (Apr. 4, 2018) ...........................................................................12

*Study Finds*, NPR (Aug. 2, 2021), https://n.pr/3Az9v0H .............................................................12

*Why Facebook and Twitter Won't Ban Anti-Semitism*, The Atlantic (Nov. 16,
   2021), https://bit.ly/3ABxtIU ................................................................................................12

## I. INTRODUCTION

The Court should grant Defendants a protective order. First, there is no real dispute that Israeli law prohibits Defendants from producing the requested materials, or that Israeli law imposes harsh criminal penalties, including multi-year prison terms, on those who transfer documents without permission. Given the overbreadth of Plaintiffs' document requests and the State of Israel's interest in the documents sought, Defendants should not be required to choose between criminal charges in Israel and civil contempt in the United States. This is particularly true when Plaintiffs have made no attempt to seek the same discovery through the Hague Convention. Second, Plaintiffs' requests are not proportional to the needs of the case, especially now that they no longer claim inflated reputational damages. Defendants do not ask that the Court engage in a "request-by-request" analysis of Plaintiffs' discovery. Rather, they ask that the Court resolve the key disputes presented in the Motion now, because those same issues affect numerous document requests and because those issues must be analyzed under the multifactor *Richmark* test regardless.

## II. ARGUMENT

### A.   Israeli Law Prohibits Defendants from Disclosing the Documents Sought

As explained in the motion, two independent aspects of Israeli law prohibit Defendants from disclosing the information sought: (1) Israel's Defense Export Control Law ("DECL") and (2) a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Mot. 3-5, 8-9.) Plaintiffs do not seriously dispute that DECL prohibits Defendants from disclosing most of the documents sought, and their arguments about ▮▮▮▮▮▮▮ are disingenuous.

#### 1.   DECL Prohibits Defendants from Complying with the RFPs

As Defendants' motion explains, DECL prohibits NSO from transferring any "defense know-how" without a license. (Mot. 8; DECL §§ 2, 15(a).) Defendants substantiated their arguments by providing the Court with a translated version of DECL (Dkt. 45-12); explaining the applicable provisions; and identifying the specific document requests to which the statute undoubtedly applies: RFPs 1, 3, 5 7, 9, 10, 12, 14-17, 19-26, and 28. (Mot. 3-5, 8.)

Plaintiff's opposition offers no evidence or authority showing DECL is inapplicable.

*First*, contrary to Plaintiffs' suggestion, NSO made a detailed showing substantiating

1  DECL's application. Plaintiffs do not rebut (or even address) Defendants' DECL interpretation.

2  *Second*, Plaintiffs do not deny that the identified requests seek "defense know-how" subject to DECL. The requests include, for example, technical information about the "development, testing, deployment, installation, distribution, use, maintenance, troubleshooting, and/or operation" of NSO's technology (RFP 1); the "use" of its technology (RFP 3); and NSO's "identification of . . . network vulnerabilities" for its technology (RFP 5).[1] All of that is expressly "defense know-how" under DECL, which NSO is prohibited from producing. (*See* DECL § 2.)

3  *Third*, the remaining nine requests seek documents sufficient to identify various NSO personnel (RFP Nos. 2, 4, 6, 8, 11, 13, 18), to describe NSO's corporate structure (RFP No. 27), and to show certain financial information (RFP No. 29). Some documents responsive to these requests are protected by DECL and some are not, but all of them are subject to ▇▇▇. NSO is currently ▇▇▇ regarding certain employees, organizational charts, and financial information. (Mot. at 8 n.4.)

4  *Fourth*, DECL ▇▇▇ are distinct, independent prohibitions arising from separate bodies of law, and Plaintiffs are wrong to argue that ▇▇▇ somehow proves that DECL is inapplicable. The ▇▇▇ to ▇▇▇ and ▇▇▇. (*See* Dkt. 133-6, Exh. D at 1; *id.* ¶ 2.)

5  *Fifth*, NSO is only required to take "reasonable" steps to produce documents. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1479 (9th Cir. 1992). It would not be reasonable for NSO to request a DECL export license for Plaintiffs. Plaintiffs have not demonstrated that they would qualify for a DECL license. More importantly, the ▇▇▇ NSO has no way of knowing if any request for an export license to Plaintiffs would be granted.

DECL thus prohibits Defendants from producing the information sought by Plaintiffs.

---

[1] The other identified requests seek similar information.

2. **The ▮▮▮ Also Prohibits Document Production**

The ▮▮▮ independently prohibits any document production.

*First*, NSO did not prompt the ▮▮▮. NSO had no knowledge that the ▮▮▮ until NSO was ▮▮▮ on July 19, 2020. (Reply Decl. of Roy Blecher ("Supp. Blecher Decl.") ¶ 4; ECF No. 133-6 ¶ 6.) Despite spending much of their opposition arguing otherwise, Plaintiffs present no evidence to support these claims.

*Second*, contrary to Plaintiffs' suggestion, Defendants have provided the Court with a copy of ▮▮▮. That ▮▮▮ Defendants. (Dkt. 133-6, Exh. D (emphasis added).) NSO does not have access to the ▮▮▮ or all of the documents ▮▮▮ but the ▮▮▮ still in effect. (*See* Supp. Blecher Decl. ¶¶ 3, 5-6; Dkt. 179-1 ¶ 8.) That information has already been disclosed to Plaintiffs. (*See, e.g.*, Dkt. 179-1 ¶ 8.) The ▮▮▮ (*See* Dkt. 133-6, Exh. D ¶ 2.) However, the ▮▮▮ remains in effect.[3] (*Id.*; Supp. Blecher Decl. ¶ 6.) As ▮▮▮ explained, the ▮▮▮ applies ▮▮▮ which has not happened. (Dkt. 133-6, Exh. F ¶ 2.) Defendants remain ▮▮▮ (*Id.*)

---

[2] With respect to the ▮▮▮, NSO informed WhatsApp on March 30, 2023, that ▮▮▮. The reason is simple: ▮▮▮ (Supp. Blecher Decl. ¶ 5.).

[3] The ▮▮▮. The ▮▮▮ valid for ▮▮▮. (Dkt. 133-6, Exh. D at 4.) Regardless, the ▮▮▮ indicated that ▮▮▮ still in effect. (*Id.* Exh. F ¶ 2; Supp. Blecher Decl. ¶¶ 3,6.)

1   *Third*, WhatsApp's feigned ignorance about ███████████████ is
2   irrelevant to what ██████████████.  Regardless, NSO has already explained
3   that its Israeli counsel Roy Blecher ████████████████████████████
4   ██████ in February 2023. (Dkt. 179-1 ¶ 8.) The ████████████████████
5   intended to request an ████████████████████████████████████████████
6   ████████████████████████████████████████████████████████████ (*Id.*)
7   ████████████ since indicated that ████████████████████████████████
8   ████████. (Supp. Blecher Decl. ¶ 7). NSO cannot "disclose" the "nature of [the]
9   ████████████" (Opp. 5) because its knowledge is limited to what ████████
10  ████████████████████████.

11      *Fourth*, Plaintiffs are well aware that Defendants have ██████████████
12  so that it may comply with its U.S. discovery obligations." (Opp. 9.) As Defendants stated in
13  their motion, they have ████████████ identify certain employees and produce certain
14  responsive organization charts and financial information." (Mot. 8 n.4.) With that said, the
15  ████████████████████████████████████████████████████████████████████
16  ████████████████████████████ (Dkt. 133-6, Exh. F ¶ 3.) Plaintiffs do not explain why
17  ████████████ would ████████████████████████████████████████████████
18  ██.

19      Both DECL and ████████████ prohibit Defendants from complying with Plaintiffs'
20  document requests.

21      **B.   The *Richmark* Factors Support a Blocking Order**

22      Plaintiffs concede that the *Richmark* factors govern. Proper analysis of those factors makes
23  clear that Defendants should not be required to choose between criminal charges in Israel or civil
24  contempt in the United States, particularly given that Plaintiffs have made no attempt to seek the
25  documents through the Hague Convention in the four years since filing this lawsuit.

26      **1.   Plaintiffs' Document Requests Are Not Important or Specific**

27      Plaintiffs' document requests are "generalized searches for information whose disclosure
28  is prohibited under foreign law." *In re Rubber Chems.*, 486 F. Supp. 2d at 1083. Such requests

are "discouraged," *id.*, and should not be allowed here. (Mot. 9-14.)

The breathtaking scope of information Plaintiffs seek is not relevant—let alone "crucial" (Opp. 17)—to their claims. As the Complaint makes clear, Plaintiffs' claims challenge a single use of Defendants' Pegasus technology ███████ against a specifically defined set of 1,400 "Target Devices" and "Users" of WhatsApp between April and May 2019. (Compl. ¶¶ 1, 2, 24-29, 33, 38, 50-54, 56, 60.) Plaintiffs' requests, however, are not limited to WhatsApp, the relevant Pegasus technology, the 1,400 "Target Devices" or "Users," or the time period described in the Complaint. (Mot. 9-14.)[4] The requests thus seek information not relevant to Plaintiffs' claims. Even assuming minimal relevance, the information is not sufficiently important to override Defendants' obligations under Israeli law. Plaintiffs do not deny that they can prove their claims based only on evidence related to the relevant Pegasus technology, the 1,400 "Target Devices" or "Users," or the time period described in the Complaint. Plaintiffs' claims thus do not "stand or fall" on broader discovery, *Richmark*, 959 F.2d at 1475, which "go[es] beyond what is necessary to litigate the disputed issues in the case," *Sun Grp.*, 2019 WL 6134958, at *3.

Furthermore, this is not an improper "request-by-request challenge" (Opp. 19)—it is an application of *Richmark*. As Plaintiffs concede, the first two *Richmark* factors are the "importance" and "specificity" of the requests. *Richmark*, 959 F.2d at 1474-75. Because Plaintiffs failed to propound tailored requests, this factor does not favor compelled disclosure.

    2.    **The Information Plaintiffs Seek Originated Abroad**

Plaintiffs essentially concede that the information they seek originated outside the United States, (Opp. 22.), so this factor favors Defendants. Whether some of Defendants' information may be located in foreign countries other than Israel (Opp. 23) is irrelevant. *Richmark* asks not whether the information originated in Defendants' country, but whether it "originated *in the United States*." 959 F.2d at 1475 (emphasis added). Defendants have submitted evidence that all of the information originated outside the United States (Mot. 14; Dkt. 45-11 ¶ 4), and Plaintiffs submit

---

[4] Contrary to Plaintiffs' representation (Opp. 18 n.10), Plaintiffs *refused* to consider any revisions to their requests before the Court resolved this motion (Dkt. 180 ¶ 3). Plaintiffs agreed Defendants' motion should address the RFPs "as drafted." (*Id.*)

no evidence to the contrary. Their speculation that Defendants "may have" created some documents in the United States (Opp. 23), cannot overcome Defendants' evidence. Plaintiffs also speculate that Defendants "must have shared" relevant information with U.S. entities (Opp. 22), but Plaintiffs again offer no evidence of that—and those materials can be obtained from the U.S. entities if so.[5] Whether Defendants "received a license" in 2019 to "export [NSO's] technology" to the FBI (Opp. 23)—a government law-enforcement agency—is irrelevant. Such a transfer, subject to an export license issued by the Israeli government before ▮▮▮▮▮▮ would not violate Israeli law. The same is not true here.

### 3. Plaintiffs Can Seek Discovery Through the Hague Convention

Plaintiffs do not deny that the Hague Convention provides them an alternative method to seek their requested information. (Opp. 19.) They speculate regarding the "ease" of compliance, but cite no evidence or caselaw suggesting that Israeli compliance with Hague Convention is slow, cumbersome, or inadequate. They therefore fail to establish that the Hague Convention is not "substantially equivalent to the requested discovery." *Richmark*, 959 F.2d at 1475.

Defendants do not argue, as Plaintiffs claim, that an Israeli court "would strictly *prohibit* discovery" under the Hague Convention. (Opp. 19.) Defendants argue that, under Israeli law, they cannot lawfully comply with a discovery order from *this* Court. If Plaintiffs follow Hague Convention procedures, the Israeli courts would be more directly involved. This might allow Plaintiffs to design discovery requests that would provide the information sought without violating Israeli law. Without having *attempted* that approach, Plaintiffs cannot establish that it is an inadequate alternative to requiring NSO to violate Israeli law.[6] In any event, Plaintiffs *deny* that Israeli law bars production of the requested information. (Opp. 8-9.) Plaintiffs cannot argue both

---

[5] Plaintiffs' only authority, *Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 504962 (N.D. Cal. Jan. 31, 2020), involved two of three defendants that were located in the United States, and is distinguishable on that basis. *Id.* at *2.

[6] *See Sun Grp.*, 2019 WL 6134958, at *3 (requiring use of Hague Convention despite anticipated delays because the plaintiff had not established it would be ineffective); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 156 (S.D.N.Y. 2011) (requiring use of Hague Convention because plaintiffs did not prove doing so was "futile").

1  that Israeli law does not restrict Defendants' ability to comply with their requests *and* that Israeli
2  law would prevent Plaintiffs from seeking discovery through the Hague Convention.

### 4. Israel's Case-Specific Interest Outweighs Generalized U.S. Interests

For the reasons set forth in Defendants' motion, Israel's national-security interests far outweigh any attenuated interest the United States has in adjudicating conduct that occurred outside of its borders. (Mot. 15-16). Israel ████████████████████ in this lawsuit, ████████████████████████████████████████████████████████████ ████████████████████████████████████████ (Dkt. 133-6, Exh. F ¶ 3.) DECL expresses a strong interest in preventing disclosure of the information Plaintiffs seek. The United States, ██████ has never expressed any interest in this lawsuit. Its supposed opposition to NSO's technology is too generalized to overcome Israel's ████████████ interest.

### a. The United States Has No "Exceptional" Interest in Discovery

Plaintiffs attempt to gin up a "vital" national interest based primarily on the current Administration's criticisms of technology like NSO's. President Biden's Executive Order, however, does not mention Defendants and it is limited to the *United States' purchase* of "commercial spyware." (Perez-Marquis Decl. Exh. R.) In addition, the Executive Order expresses concern about commercial spyware when it is used to "gain access to *United States* Government computers or the computers of *United States* Government personnel" or is sold by an entity that lacks "authorization from the licensed end-user or the *United States*," that "has disclosed or intends to disclose non-public *United States* Government information," or "is under the direct or effective control of a foreign government or foreign person engaged in intelligence activities . . . *against the United States*." (*Id.* (emphasis added).) The Executive Order is thus focused on the use of spyware against *United States'* interests, which NSO has never been accused of—even by Plaintiffs. In fact, Pegasus *cannot* be used against U.S. phone numbers or devices in the United States. (Dkt. 45-11 ¶ 13.) Accordingly, the Executive Order demonstrates no interest in whether private litigants challenging the alleged use of surveillance technology against *foreign* residents can receive discovery in violation of foreign law.

The Commerce Department's decision to place NSO on the "Entity List" likewise reflects

no interest in discovery in this lawsuit. It simply expresses a general opposition to certain alleged uses of Defendants' technology by foreign governments. Mere opposition to a particular practice does not create a substantial interest in any private lawsuit related to that practice. Indeed, the Commerce Department's press release expresses an intent only to "use[] *export controls*" against surveillance technology, not litigation. (Perez-Marques Decl. Exh. F (emphasis added)). If anything, the press release confirms the United States does not need lawsuits brought by private litigants advancing their own business interests to achieve its purported goals. It has numerous other methods to discourage the use of Defendants' technology.[7] In sum, the United States' statements do not reflect any interest in this lawsuit.[8]

That leaves only the United States' "generalized interest" in "vindicating the rights of American plaintiffs," which is "present in any civil litigation in the United States." *Sun Grp.*, 2019 WL 6134958, at *4. That general interest is not substantial here. In the decision cited by *Richmark*, there was an "increased" interest because nineteen of the plaintiffs were U.S. states. *See In re Ins. Antitrust Litig.*, 938 F.2d 919, 933 (9th Cir. 1991), *aff'd in part, rev'd in part sub nom. Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993). Many of the corporate defendants were also American or subsidiaries of American companies. *Id.* None of those factors is present here, where Defendants have no U.S. nexus. The United States' generalized interest may be further discounted if crucial witnesses are not residents or citizens of the United States. *See Timberlane Lumber Co. v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 749 F.2d 1378, 1384 (9th Cir. 1984). Here, the primary witnesses are likely to be Israeli. Accordingly, the United States' weak generalized interest is not enough to order Defendants to violate Israeli law. *Id.*[9]

---

[7] The statements of "18 members of Congress," a tiny fraction (3.3%) of the country's 535 senators and representatives, do not reflect the policy or interests of the U.S. government.

[8] The Solicitor General's Supreme Court amicus brief in this case did not "express[] an interest in holding NSO accountable." (Opp. 12.) It opined that Defendants were not entitled to common-law sovereign immunity and did not express any view on the substance of Plaintiffs' claims. Furthermore, the brief was filed only at the Supreme Court's request, not out of any affirmative interest in the litigation.

[9] Even assuming this suit were brought to "protect the interests of WhatsApp users," the relevant pool of users is not the American public. There is no allegation that Defendants' technologies

1 ▮▮▮
2 ▮▮▮ the United States, which has never expressed direct interest in this litigation,
3 ▮▮▮
4 ▮▮▮
5 ▮▮▮ (Opp. 12) is the reason why Israel's interests outweigh the
6 United States'. ▮▮▮ the discovery sought in this lawsuit ▮▮▮
7 ▮▮▮ Such a
8 ▮▮▮ interest militates strongly against disclosure. *Richmark*, 959 F.2d at 1476.
9 This Court should not ▮▮▮
10 ▮▮▮. As discussed above, the ▮▮▮
11 ▮▮▮ (*Supra* Section II.A.2.) Plaintiffs offer no evidence to the contrary.
12 Defendants' information ▮▮▮ is "limited" (Opp. 15) because ▮▮▮
13 ▮▮▮
14 of Defendants' records proves the *legitimacy* of ▮▮▮. Nor is this a case in which
15 ▮▮▮
16 ▮▮▮ (Opp. 14 (quoting *Richmark*, 959 F.2d at 1476-77.) DECL expresses Israel's interest
17 in "national security," "foreign relations," and "other vital interests of the State." (DECL § 1.)
18 Defendants' technology is undisputedly regulated by DECL, and the information sought by
19 Plaintiffs is essential national-security information DECL protects from disclosure. (*Supra*
20 Section II.A.1). ▮▮▮ are thus a ▮▮▮
21 ▮▮▮ in DECL.
22     Plaintiffs ignore DECL when discussing Israel's interests—a striking omission. Unlike the
23 blocking statutes at issue in Plaintiffs' cases, DECL is a "substantive[] rule of law at variance with
24 the law of the United States," and deserves "deference by courts of the United States." *Société*
25 *Nat. Ind. Aerospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 544 n.29 (1987); (Opp. 14). DECL's
26 
27 ───────────
   were ever employed against the American public, only foreign populations. The U.S. government
28 has no interest in vindicating claims or protecting the privacy of foreign WhatsApp users who are
   under investigation by their governments for terrorism or serious criminal activity.

1  "primary purpose" is to protect Israel's national-security interests, not to protect Israeli "citizens
2  from discovery in foreign courts." (Opp. at 14.) It is therefore precisely the sort of "general law
3  governing the conduct of Israeli companies" that Plaintiffs claim *Richmark* requires. (*Id.*)

4      DECL also rebuts any argument that Israel lacks an interest in discovery here because
5  Defendants receive licenses "to export its goods and information to sovereign clients around the
6  world." (Opp. 16.) When Israel grants Defendants a DECL license to export their technology, it
7  does so *because* it has determined that exporting the technology to a sovereign government *will*
8  *not* endanger Israel's national security. (*See* Dkt. 45-11 ¶¶ 5-8.) And Defendants' receipt of the
9  license makes its transfer of information lawful under Israeli law. Here, in contrast, Plaintiffs—
10 who are not "sovereign[s]" (Opp. 16)—ask this Court to order Defendants to disclose such
11 information *without* the required license and even though ███████████████████████
12 ████████████████████████████████████████████████████████████ (Dkt. 133-6,
13 Exh. F ¶ 3.) None of the cases Plaintiffs cite required disclosure under such circumstances.

14                           **c.  A Protective Order Would be Inadequate**

15     Given DECL's focus on national security, foreign relations, and other vital interests, a
16 protective order would not adequately address the ███████████████████████████
17 █████████████. Foreign states have a well-recognized interest in protecting national secrets,
18 which DECL does. *See Reins. Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State*
19 *Ins.)*, 902 F.2d 1275, 1280 (7th Cir. 1990); (DECL § 1). The drastic ███████████████
20 ████████████████████████████████████ distinguish this matter from the
21 majority of cases cited by Plaintiff. Those authorities generally involve matters in which a lesser
22 governmental interest was implicated (*e.g.*, mere privacy) or matters in which the foreign
23 government did not express a strong interest in maintaining documents as confidential. *See, e.g.,*
24 *Masimo Corp. v. Mindray DS USA, Inc.*, 2014 WL 12589321, at *2 (C.D. Cal. May 28, 2014)
25 (relying on the lack of any "actual indication from the Chinese government that the source code
26 was a state secret"); *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 211 F.R.D. 374, 379 (C.D.
27 Cal. 2002) (unclear that any secrecy interests were implicated or what documents would have been
28 supplied in confidence by the Government of Singapore); *see also United States v. Vetco Inc.*, 691

F.2d 1281, 1289 (9th Cir. 1981) (matter did not involve any "public interest in keeping information secret," only private interests, and receiving party was the IRS); *Finjan, Inc. v. Zscaler, Inc.*, 2019 WL 618554, at *3 (N.D. Cal. Feb. 14, 2019) (concluding targeted discovery sought did "not violate the GDPR"); *Wagafe v. Trump*, 2018 WL 1737939, at *4 (Apr. 11, 2018), *on reconsideration*, 2018 WL 2159784 (W.D. Wash. May 10, 2018) (risks cited by government were "vague and speculative").[10] Given ████████████████████████████████████████ ████████████████████████, a protective order will not suffice.

### 5. Defendants Face Extreme Hardship

It is undisputed that the prospect of criminal prosecution "constitutes a 'weighty excuse' for nonproduction." *Richmark*, 959 F.2d at 1477. And it is undisputed that a violation of DECL ████████████ is a criminal offense punishable by imprisonment or substantial fines. (*E.g.*, DECL § 32.) Complying with Plaintiffs' requests would therefore expose Defendants to criminal prosecution in Israel. It would also expose Defendants to civil penalties and the termination of its license to do business in Israel. (DECL §§ 35-43; Dkt. 45-11 ¶ 6.) That is not a "commonplace hardship." (Opp. 21.) It is an existential threat to Defendants' business.

Nor is the risk of prosecution hypothetical. Defendants' motion established that Israel has steadily increased prosecution of DECL violations since 2007. (Mot. 17). And since ████████ ████████ producing the information requested by Plaintiffs ████████████████████ ████████████████ there is every reason to think Israel would prosecute Defendants for disclosing that information. (Dkt. 133-6, Exh. F ¶ 3.) Plaintiffs' arguments to the contrary are unsupported speculation. DECL ████████████████ contain no exception for information subject to "a strict confidentiality order" (Opp. 20), and it is hard to see how that would make any difference. The harm to Israel's national security would occur as soon as

---

[10] None of the other cases cited by Plaintiffs implicate foreign national security or foreign relations. *See Adlerstein v. U.S. CBP.*, 2021 WL 6133955, at *3 (D. Ariz. Dec. 20, 2021) (rote dispute concerning a protective order that did not implicate foreign national interests); *Ibrahim v. DHS*, 2013 WL 1703367, at *5 (N.D. Cal. Apr. 19, 2013) (no foreign national interests or even "specific, current [domestic] law enforcement techniques"); *In re Subpoena to Third Party Sentieon, Inc.*, 2022 WL 17477092, at *1 (N.D. Cal. Dec. 6, 2022) (involving commercial interests); *In re Facebook PPC Advert. Litig.*, 2011 WL 1324516, at *3 (N.D. Cal. Apr. 6, 2011) (same).

Defendants provided "defense know-how" to Plaintiffs, global communications platforms with a history of fostering antisemitism and sharing sensitive information with bad-faith actors. *See, e.g.*, Yair Rosenberg, *Why Facebook and Twitter Won't Ban Anti-Semitism*, The Atlantic (Nov. 16, 2021), https://bit.ly/3ABxtIU; Deepa Shivaram, *Antisemitic Posts Are Rarely Removed by Social Media Companies, a Study Finds*, NPR (Aug. 2, 2021), https://n.pr/3Az9v0H; Nicholas Confessore, *Cambridge Analytica and Facebook: The Scandal and the Fallout So Far*, N.Y. Times (Apr. 4, 2018), https://nyti.ms/2GVz2Hx. Plaintiffs provide no reason that Defendants' supposedly "close relationship with Israel" (Opp. 20) would prevent ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. 133-6, Exh. F ¶ 3.)

Nor is the hardship to Defendants "self-imposed." (Opp. 20.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and they obviously did not cause Israel to enact DECL. Despite that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ or violate DECL. The core of Plaintiffs' requests, however, squarely implicate the ▓▓▓▓▓▓▓▓▓▓▓▓ DECL ▓▓▓▓▓▓▓▓▓▓▓▓ exist to protect. Because Defendants cannot produce that information without becoming criminals in Israel, *Richmark* supports the issuance of a protective order.[11] *Richmark*, 959 F.2d at 1477.

### B.     Plaintiffs Seek Irrelevant Information Disproportionate to Their Claims

Plaintiffs' RFPs are improper because they seek information irrelevant to the claims described in their own Complaint. (Mot. 18-20.) Contrary to Plaintiffs' procedural objection, this is not an improper "request-by-request challenge" but an "umbrella issue" that infects the entirety of Plaintiffs' requests. (Opp. 5, 23.) It is thus one of the "larger issues" regarding the scope of discovery that are appropriate subjects for a protective order. (Dkt. 182-1 at 17:15-24.)

Plaintiffs' substantive defense of their RFPs fares no better. Plaintiffs' Complaint is clear that their claims—not just their factual allegations, but their *claims*—are limited to the alleged use

---

[11] For the same reasons, the likelihood of compliance with any order compelling production is low. Defendants could not comply without risking prison in Israel. Defendants are also unable to produce materials seized by the Israeli government. (*See* Supp. Blecher Decl. ¶ 3.) Accordingly, this factor weighs in favor of the requested protective order, regardless of any "mitigating circumstances." *Richmark*, 959 F.2d at 1478.

1  of a specific Pegasus technology to access the 1,400 Target Devices in April and May 2019.  As
2  this Court has explained, Plaintiffs "allege that [NSO] created a data program, termed Pegasus,"
3  to access 1,400 "Target Users" and "Target Devices."  (Dkt. 111 at 2-3; *see* Compl. ¶¶ 24–43.)
4  The very first paragraph in the Complaint *expressly defines* "Target Users" and "Target Devices"
5  as limited to 1,400 users and devices allegedly accessed in April and May 2019.  (Compl. ¶ 1.)
6  And Plaintiffs' claims *expressly* challenge only the alleged access to the 1,400 specific "Target
7  Devices" owned by "Target Users."  (*E.g., id.* ¶¶ 50-54, 56.)  Those clear allegations "logically
8  shape the scope of discovery." *U.S. ex rel. Uchytil v. Avande, Inc.*, 2018 WL 4150889, at *1 (W.D.
9  Wash. Feb. 27, 2018) (internal quotation marks omitted).

10    In response, Plaintiffs appear to concede that the Complaint does not describe *any* wrongful
11  conduct by Defendants outside the period January 2018 through May 2019.  (Opp. 24; *see* Mot.
12  18.)  They argue only that they can seek discovery outside of that time frame because of "their
13  claim for injunctive relief."  (Opp. 24.)  Not so.  Injunctive relief is a *remedy*, not a "claim." *SEC
14  v. Church-Koegel*, 2021 WL 6104157, at *1 (C.D. Cal. Sept. 29, 2021).  And discovery is limited
15  by Plaintiffs' "claim[s]," not the remedies they seek for those claims.  Fed. R. Civ. P. 26(b)(1); *see
16  Continental Vineyard LLC v. Vinefera Wine Co.*, 2016 WL 302122, at *2 (N.D. Ill. Jan. 25, 2016)
17  ("It is after all the parties' claims and defenses, not the remedies sought, that set the scope of
18  discovery (see Rule 26(b)(1)).").  That means Plaintiffs may receive an injunction if the evidence
19  supporting their *claims* reveals that future harm is certainly impending.  They may not assert claims
20  based entirely on allegations of *past* conduct during a specifically defined timeframe, then expand
21  the scope of discovery beyond that timeframe simply by tacking a request for injunctive relief onto
22  the end of their Complaint.  *See United States v. S. Pac. Transp. Co.*, 1995 WL 84193, at *1 (D.
23  Or. Feb. 20, 1995) (holding plaintiff "should not be allowed to 'rummage through [defendant's]
24  files to attempt to find something to support its claim for injunctive relief'").  Such a rule would
25  eviscerate the proportionality requirement of Rule 26(b).

26    Plaintiffs cite no case supporting their argument.  This Court did not endorse Plaintiffs'
27  theory of discovery when it declined to consider Defendants' motion to dismiss Plaintiffs' request
28  for injunctive relief.  This Court simply found that the availability of injunctive relief should not

---

be decided "on the pleadings." (Perez-Marques Decl. Exh. B at 10:15-16.) The Court expressed no view on the proper scope of discovery, let alone hold that Plaintiffs' request for an injunction could expand the scope of discovery beyond that relevant to Plaintiffs' actual claims.[12]

As for discovery into technology other than ▮▮▮▮▮ Pegasus described in the Complaint, Plaintiffs' response mischaracterizes their Complaint. The *only* NSO technology described in the Complaint is Pegasus. (Compl. ¶¶ 24-29.) In light of that, Plaintiffs' allegation that Defendants' customers accessed WhatsApp users' devices with "Pegasus or another remote access trojan developed by Defendants" cannot expand the scope of Plaintiffs' claims. (Compl. ¶ 32.)[13] "Pegasus" is the only "remote access trojan" Plaintiffs allege Defendants have ever used to access WhatsApp users' devices. (*Id.* ¶ 24). That is why this Court correctly interpreted Plaintiffs' claim as being that Defendants "created a data program, *termed Pegasus*," to access the Target Devices. (Dkt. 111 at 2-3 (emphasis added).) Moreover, ▮▮▮▮▮

▮▮▮▮▮

(Decl. of A. Craig Exh. B ("Shohat Decl.") ¶ 6.) That technology differs from ▮▮▮▮▮

▮▮▮▮▮ (*Id.* ¶ 5.) And because WhatsApp ▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮.

---

[12] Defendants do not "seek[] a premature ruling that disgorgement is unavailable" (Opp. 24), but rather a ruling concerning what discovery is relevant and proportionate. Discovery concerning disgorgement would substantially expand the scope of discovery. Regardless of whether disgorgement is a remedy under California law (*id.*), Plaintiffs are not entitled to disgorgement *in this case* because they have "an adequate remedy at law" in the form of compensatory damages. *Sonner v. Premier Nutrition Corp.*, 971 F.32d 834, 844 (9th Cir. 2020). Plaintiffs ignore—and thus concede—the argument.

[13] The only other allegations Plaintiffs cite either support Defendants' argument are irrelevant. Plaintiffs' allegation that "Pegasus" refers to "Pegasus and its variants" confirms that the only relevant "remote access trojan" is Pegasus. (Compl. ¶ 24.) "Pegasus and its variants" cannot credibly be read to refer to "NSO's entire suite of spyware products." (Opp. 25.) And Plaintiffs do *not* allege that Defendants have a "pattern of targeting Plaintiffs' servers using its 'spyware'" generally. (*Id.*) The allegation Plaintiffs cite alleges only that Defendants have *created* "spyware." (Compl. ¶ 24.) Pegasus is the only technology they allege has ever been used against WhatsApp users.

1    Moreover, because Pegasus ████████████████████████████████, discovery into
2    ████ Pegasus" as a whole is still overbroad; the only version of ████ Pegasus that is
3    relevant to the claims and defenses here is the version in effect in April-May 2019. (*See id.* ¶ 8.)

Plaintiffs are also wrong that their allegations are irrelevant to the scope of discovery. (Opp. 25.) Plaintiffs' "claims generally"—not just their "specific factual claims"—are expressly limited to the use of one version of Pegasus against the 1,400 Target Users and Devices. (Opp. 25 (quoting *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011)). That aside, the discovery in *Vallabharpurapu* was relevant to allegations in the plaintiffs' complaint. 276 F.R.D. at 615. *Vallabharpurapu* also limited its holding to "class action[s]," distinguishing cases that limit discovery in "individual action[s]." *Id.* at 615 n.1. Subsequent decisions have since held that *Vallabharpurapu* does not apply outside of class actions. *E.g.*, *Hernandez v. Polanco Enters., Inc.*, 19 F. Supp. 3d 918, 929 (N.D. Cal. 2013).[14] Defendants' motion cited multiple cases that have limited discovery to the technology and time period described in the complaint (Mot. 19), and Plaintiffs make no attempt to distinguish those cases.

### III.    CONCLUSION

The Court should grant Defendants' motion and issue the requested protective order.

Dated: May 1, 2023                     KING & SPALDING LLP

                                       By:   /s/ Joseph N. Akrotirianakis
                                             JOSEPH N. AKROTIRIANAKIS
                                             AARON S. CRAIG

                                             *Attorneys for Defendants* NSO GROUP
                                             TECHNOLOGIES LIMITED and Q
                                             CYBER TECHNOLOGIES LIMITED

---

[14] *Long v. Hewlett-Packard, Co.*, 2006 WL 3751447 (N.D. Cal. Dec. 19, 2006), was also a class action. The court held discovery was not limited to the computers owned by the *named plaintiffs* because the *class's* claims related to other computers. *Id.* at *2-3. The court recognized that courts apply a different rule "outside the class context" and where, as here, the plaintiff seeks discovery "as to products which [are] not at issue" in the plaintiff's allegations. *Id.* at *2.