O'Melveny

O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071-2899

T: +1 213 430 6000
F: +1 213 430 6407
omm.com

Catalina Joos Vergara
D: +1 213 430 7828
cvergara@omm.com

August 25, 2023

**PUBLIC REDACTED VERSION**

Hon. Phyllis J. Hamilton
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 3
1301 Clay Street, Oakland, CA 94612

Re:   *WhatsApp, Inc. et al. v. NSO Group Techs. Ltd. et al.,* **4:19-cv-7123 (N.D. Cal.)**

Dear Judge Hamilton:

Pursuant to the Court's Standing Order Regarding Discovery Disputes, Protective Orders, and ESI Orders effective May 12, 2021, Plaintiffs WhatsApp LLC (formerly known as WhatsApp Inc.) and Meta Platforms, Inc. (formerly known as Facebook, Inc.) (collectively, "Plaintiffs"), and Defendants NSO Group Technologies Limited's and Q Cyber Technologies Limited's (collectively, "Defendants") hereby submit this joint letter regarding a discovery dispute requiring the Court's assistance.

## I.   PLAINTIFFS' POSITION

This litigation arises from Defendants' development, testing, marketing, use, and causing the use of programs and spyware that targeted devices belonging to WhatsApp users, a group that includes attorneys, journalists, human rights activists, and government officials. Complaint ¶¶ 32, 35–48, 60–61. Plaintiffs have served Defendants with Request for Production No. 30, which seeks a full copy of the data on a specific server associated with IP address 54.93.81.200, which server is hosted by Amazon Web Services ("AWS") and subscribed to NSO Group Technologies Ltd.[1] The server was used in NSO's attack (ECF 55-2) and is believed to hold relevant data relating to the use of Defendants' spyware. The server is located in ▇▇▇ but accessible globally.

On June 12, 2023, Defendants objected to Request No. 30, refusing to produce the

---

[1] AWS offers scalable-processing and storage capabilities to its customers. It provides data storage and processing power historically maintained by companies in their own datacenters. AWS servers function similarly to digital personal storage units, housing AWS' customers' unique data much like a rented storage unit might house one's personal belongings.



requested information on various grounds. During the parties' subsequent meet-and-confer, Plaintiffs also asked Defendants to consent to AWS producing the contents of IP 54.93.81.200.[2] Defendants stood on their objections and refused to consent to AWS's production of the contents of the server. On August 11, 2023, the parties confirmed during a meet-and-confer conducted via videoconference that they were at an impasse.

Defendants should be compelled to produce all data responsive to Request No. 30. They do not deny that responsive data exists on the server, nor do they deny its relevance to Plaintiffs' claims. Nor, even, do they deny that they have access to the data requested. Instead, Defendants are withholding the information based on their assertion that they do not have "control" over the data, which they define as the "ability to exclude all others from accessing" the data. Defendants' position is contrary to well-established federal law. They do, in fact, have control over the data at issue, and they must comply with Request No. 30 in full.

Under FRCP 34, a responding party must produce documents that are in its "possession, custody, or control." In the Ninth Circuit, "control" is defined as "the legal right to obtain documents upon demand." *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir.1989). Here, Defendants maintain control over the data at issue, as they have a contract with AWS for data storage and thus have the legal right to retrieve the data at any time. The server is subscribed to NSO, lists an NSO email address (it@nsogroup.com), and has been leased to NSO since December 2018. Cloud-computing providers like AWS routinely archive their customers' data, and Defendants can access this data in the ordinary course of business. The law recognizes that a party like NSO that stores data in third-party cloud platforms has possession, custody, or control over the data. *See Zynga Game Network, Inc. v. McEachern,* 2009 WL 1108668, at *2 (N.D. Cal. Apr. 24, 2009) (ordering defendant to provide plaintiff's counsel with full access to his computers and servers, including servers defendant rented from a third party); *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 453 (C.D. Cal. 2007) (finding that certain server log data was within defendant's possession, custody, or control even though the data was stored in a third-party's systems); *see also U.S. S.E.C. v. Est. of Saviano*, 2014 WL 5090787, at *6 (E.D. Mich. Oct. 9, 2014) (holding that an order prohibiting the destruction of records "extends to the preservation and retention of Evidence in the possession or custody of third-parties, such as an internet service provider or a cloud computing provider"). Indeed, federal courts have noted that, if a party were *not* deemed to have control over its data stored on third-party cloud servers, that would create a loophole whereby a party could simply store critical "records with third parties and then resist[] production on the grounds that the third party holds that data." *Williams v. Angie's List, Inc.,* 2017 WL 1318419, at *3 (S.D. Ind. Apr. 10, 2017) (holding that defendant had control over data stored on

---

[2] Plaintiffs have served two third-party subpoenas on AWS that seek, among other things, the production of the contents of IP 54.93.81.200. In response, AWS has asserted, in part, that it is precluded from producing "communications" on the server without Defendants' consent under the Stored Communications Act. *See* 18 U.S.C. § 2702(b)(3). Although Plaintiffs dispute whether the contents of the server can be characterized in toto as "communications" under the Act, that is a question that does not require the Court's intervention at this time. Plaintiffs are seeking Defendants' consent only if it is needed to facilitate AWS's production of the data.



cloud server of a third-party platform); *see also Cyntegra, Inc. v. Idexx Lab'ys, Inc.*, 2007 WL 5193736, at *5 (C.D. Cal. Sept. 21, 2007) (sanctioning plaintiff for failing to preserve relevant materials stored on servers hosted by a third-party, and finding "[p]laintiff c[ould] not bypass this duty [to preserve] by abandoning its documents to a third-party and claiming lack of control"), *aff'd*, 322 F. App'x 569 (9th Cir. 2009).

Defendants should not be permitted to evade production of the contents of the server here by arguing that the server is hosted by AWS or that they do not have "exclusive" control (which is irrelevant to the analysis). They have a contractual right to access their data on the AWS platform and should be ordered to produce a complete image of the data stored on the server identified in Request No. 30 immediately. In the alternative, they should be ordered to provide their consent to AWS producing the data pursuant to the third-party subpoenas Plaintiffs have already served on AWS.

## II. DEFENDANTS' POSITION (INCLUDES HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY INFORMATION, to be filed under seal)

Plaintiffs' argument targets a strawman. The parties' dispute over the definition of the term "control" has nothing to do with Defendants' withholding production of the electronically stored information that is the subject of RFP No. 30. Rather, as Defendants have explained in several conferences about Plaintiffs' RFP No. 30, to the extent Defendants have access to information on the server that is the subject of this request, that information is export controlled and cannot be produced without a license from Israel's Ministry of Defense. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The export of NSO's Pegasus technology is regulated under Israel's Defense Export Control Law ("DECL"). Declaration of Shalev Hulio ("Hulio Decl.," ECF 45-11 ¶ 5). Under the DECL, NSO may not transfer "defense know-how" to Plaintiffs unless the Ministry of Defense grants a license. DECL § 15(a) (ECF 45-12). The DECL defines "[d]efense know-how" as including any "[i]nformation that is required for the development or production of defense equipment or its use, including information referring to design, assembly, inspection, upgrade and modification, training, maintenance, operation and repair of defense equipment or its handling in any other way," including "technical data or technical assistance." *Id.* § 2. A violation of that requirement is a crime under Israeli law. *Id.* §§ 32-34

NSO's Pegasus technology is regulated so strictly that Israel's Ministry of Defense requires NSO to provide documentation about its customers and prospective customers and the intended uses of Pegasus by customers and potential customers for each export of Pegasus. Hulio Decl., ECF 45-11 ¶ 6. NSO may provide its Pegasus technology only to sovereign governments and their authorized agencies for national security and law enforcement purposes, and may only do so after receiving a license from the Ministry of Defense. *Id.* ¶¶ 9-10. NSO

may not export its Pegasus technology to private entities like Plaintiffs or their attorneys.  *Id.*

      Defendants have learned that the server with IP address 54.93.81.200 is  DECL § 15(a).

      As a result, and as Defendants explained in their pending Motion for a Protective Order (ECF 176-2),  (The same is true of many other discovery requests propounded by Plaintiffs.)  Whether Defendants can properly be compelled to violate the DECL, and potentially face criminal prosecution in Israel for doing so, depends on the factors articulated in *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477 (9th Cir. 1992).  Under *Richmark*, NSO should not be required to violate foreign law unless the requested discovery is essential to Plaintiffs' claims and narrowly tailored to those claims, seeks information that originated in the United States, cannot be sought through other means, and advances the United States' sovereign interests more than it interferes with a foreign nation's interests.  *Id.* at 1475.  Here, those considerations overwhelmingly favor Defendants.  RFP No. 30 seeks information that Plaintiffs have not shown to be important to their claims.  Moreover, it seeks exclusively information that originated in Israel or other foreign countries.  And Israel's interest in preventing disclosure of its sensitive national-security information far outweighs the United States' generalized interest in enforcing Plaintiffs' discovery request seeking access to Defendants' computer code.  For these reasons, Defendants have asked this Court to enter a protective order against Defendants from having to violate Israeli law by responding to Plaintiffs' discovery requests. ECF 176-2.  Defendants' Israeli law objections to RFP No. 30 should be sustained on the same basis.

      Plaintiffs' portion of the joint letter confusingly references a separate discovery dispute between Plaintiffs and Amazon Web Services over the original server (rather than Defendants' access to the                                     ).  Plaintiffs provided no authority during the parties' meet and confer conferences for the proposition that Defendants are required to consent to Amazon Web Services' production of                                     , and Plaintiffs provide none in this joint letter.

---





Plaintiffs' demand ███████████████████████████████████████

███████████████████████████████ For the same reasons given above, the Court should not compel Defendants to become criminals under Israeli law.

Respectfully submitted,

 /s/ Catalina J. Vergara                                    /s/ Aaron Craig

O'Melveny & Myers LLP                              King & Spalding LLP

*Attorneys for Plaintiffs WhatsApp LLC*            *Attorneys for Defendants*
*(formerly known as WhatsApp Inc.)*                *NSO Group Technologies Limited's*
*and Meta Platforms, Inc.*                         *and Q Cyber Technologies Limited's*
*(formerly known as Facebook, Inc.)*