1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
     *jakro@kslaw.com*
2   AARON S. CRAIG (Bar No. 204741)
     *acraig@kslaw.com*
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone:    (213) 443-4355
5   Facsimile:    (213) 443-4310

6   Attorneys for Defendants NSO GROUP TECHNOLOGIES
    LIMITED and Q CYBER TECHNOLOGIES LIMITED
7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9
                          OAKLAND DIVISION
10

11  WHATSAPP INC., a Delaware corporation,     Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
12  corporation,                               **DEFENDANTS NSO GROUP
                                               TECHNOLOGIES LIMITED AND
13              Plaintiffs,                     Q CYBER TECHNOLOGIES LIMITED'S
                                               NOTICE OF MOTION AND MOTION TO
14       v.                                    DISMISS FOR *FORUM NON
                                               CONVENIENS*; MEMORANDUM OF
15  NSO GROUP TECHNOLOGIES LIMITED             POINTS AND AUTHORITIES IN
    and Q CYBER TECHNOLOGIES LIMITED,          SUPPORT THEREOF**
16
                Defendants.                    Date:     October 26, 2023
17                                             Time:     1:30 p.m.
                                               Ctrm:     3
18

19
                                               Action Filed:  10/29/2019
20

21

22

23
                  REDACTED VERSION OF DOCUMENT PROPOSED
24                     TO BE FILED UNDER SEAL

25

26

27

28

---

DEFENDANTS' MOTION TO DISMISS                              Case No. 4:19-cv-07123-PJH
FOR *FORUM NON CONVENIENS*

1    TO THE COURT AND PLAINTIFFS AND THEIR COUNSEL:

2    PLEASE TAKE NOTICE that on October 26, 2023, at 1:30 p.m., or as soon thereafter as

3  the matter may be heard, Defendants NSO Group Technologies Limited ("NSO") and Q Cyber

4  Technologies Limited ("Q Cyber," collectively "Defendants") will bring on for hearing before the

5  Honorable Phyllis J. Hamilton, in Courtroom 3 of the United States Courthouse located in the

6  Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland,

7  California, a motion to dismiss Plaintiffs' complaint based upon the common law doctrine of *forum*

8  *non conveniens*.

9    The motion is based on this Notice of Motion and Motion; the following Memorandum of

10  Points and Authorities; the concurrently filed declarations of Joseph N. Akrotirianakis, Roy

11  Blecher, and Chaim Gelfand; the exhibits appended to those Declarations; the pleadings, papers,

12  and records on file in this case; and such oral argument as may be presented.

13    By this Motion, Defendants respectfully request that this lawsuit be dismissed in favor of

14  proceedings in Israel.[1]

15

16  Dated:  September 8, 2023                    KING & SPALDING LLP

17

18                                        By:    */s/Joseph N. Akrotirianakis*
                                                 JOSEPH N. AKROTIRIANAKIS
19                                               AARON S. CRAIG

20                                               Attorneys for Defendants NSO GROUP
                                                 TECHNOLOGIES LIMITED and Q
21                                               CYBER TECHNOLOGIES LIMIT

22

23

24

25

26

27  ───────────────────
[1] In the alternative, the Court could stay the action for three months to give Plaintiffs an opportunity
28  to bring suit in Israel and condition dismissal on Defendants consenting to jurisdiction in Israel,
    which Defendants are willing to do.

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ............................................................................................ 1

II. BACKGROUND ........................................................................................... 2

    A.    The Plaintiffs File Suit Alleging Minimal Connections to California ............... 2

    B.    ██████████████████████████████ .................................................................. 2

    C.    The United States Subjects NSO to Export Controls ................................. 3

    D.    NSO and Its Counsel Have Been Unable to Obtain Licenses Under Israeli or U.S. Law ............................................................................... 4

    E.    ████████████████████████ ............................................................................ 4

III. ARGUMENT ............................................................................................. 5

    A.    Israel Is an Adequate Alternative Forum ................................................. 6

    B.    The "Private Factors" Favor Dismissal .................................................... 7

        1.    Critical Evidence and Witnesses Are Located in Israel ......................... 7

        2.    California Is Not Convenient for NSO, Q Cyber, or Their Witnesses ............................................................................ 8

        3.    Litigating in California Restricts All Parties' Access to Evidence ............................................................................. 9

        4.    Unwilling Witnesses Cannot Be Compelled to Testify ....................... 10

        5.    The Cost of Bringing Witnesses to Trial Would Be High ................... 12

        6.    An Israeli Judgment Would Be More Easily Enforced ....................... 12

        7.    U.S. Export Control Laws Are Hampering NSO's Defense ................ 12

    C.    The "Public Factors" Similarly Favor Dismissal ...................................... 14

        1.    Israel's Interests Substantially Outweigh Any Local Interests ........................................................................... 14

        2.    Israeli Courts Are Capable of Applying California Law ..................... 15

        3.    This District Should Not Bear the Burden of This Dispute ................. 16

IV. CONCLUSION..................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alternate Health USA Inc. v. Edalat,*
    2022 WL 767573 (C.D. Cal. Mar. 14, 2022)................................................................11, 12, 16

*Am. Dredging Co. v. Miller,*
    510 U.S. 443 (1994)..................................................................................................................5

*Argoquest v. Israel Discount Bank, Ltd.,*
    228 F. App'x 733 (9th Cir. 2007) .............................................................................................7

*Carijano v. Occidental Petroleum Corp.,*
    643 F.3d 1216 (9th Cir. 2011) ..................................................................................................6

*Cheng v. Boeing Co.,*
    708 F.2d 1406 (9th Cir. 1983) ............................................................................................8, 16

*Contact Lumber Co. v. P.T. Moges Shipping Co.,*
    918 F.2d 1446 (9th Cir. 1990) ...........................................................................................11, 15

*Cook v. Champion Tankers AS*, No. 12-CV-01965-JST,
    2013 WL 1629136, (N.D. Cal. Apr. 16, 2013) .......................................................................15

*Corrie v. Caterpillar, Inc.,*
    403 F. Supp. 2d 1019 (W.D. Wash. Nov. 22, 2005)...............................................................6, 7

*Elliott v. PubMatic, Inc.,*
    No. 21-CV-01497-PJH, 2021 WL 3616768 (N.D. Cal. Aug. 16, 2021)
    (Hamilton, J.) ..........................................................................................................................14

*Facebook, Inc. v. Studivz Ltd.,*
    No. C08-3468 JF (HRL), 2009 WL 1190802 (N.D. Cal. May 4, 2009).....................13, 15, 17

*In re Factor VIII or IX Concentrate Blood Prod. Liab. Litig.,*
    No. 05C2793, 2008 WL 4866431 (N.D. Ill. June 4, 2008) .....................................................11

*Fahrner-Miller Assocs., Inc. v. Mars Antennas & RF Sys., Ltd.,*
    No. 5:14-cv-03668-PSG, 2014 WL 6871550 (N.D. Cal. Dec. 4, 2014).....................................7

*Gonzalez-Servin v. Ford Motor Co.,*
    662 F.3d 931 (7th Cir. 2011) ..................................................................................................11

*Interface Partners Int'l Ltd. v. Hananel,*
    575 F.3d 97 (1st Cir. 2009)..............................................................................................6, 7, 11

*Israel Disc. Bank Ltd. v. Schapp*,
    505 F. Supp. 2d 651 (C.D. Cal. 2007), *aff'd sub nom. Israel Disc. Bank, Ltd. v.*
    *Schnapp*, 321 F. App'x 700 (9th Cir. 2009) .......................................................................7, 15

*Kisano Trade & Inv. Ltd. v. Lemster*,
    737 F.3d 869 (3d Cir. 2013)..............................................................................................8

*Lockman Found. v. Evangelical All. Mission*,
    930 F.2d 764 (9th Cir. 1991) .........................................................................................5, 6

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) .................................................................................. *passim*

*MGA Ent. Inc. v. Deutsche Bank AG*,
    No. CV 11-4932-GW(RZX), 2012 WL 12892902 (C.D. Cal. Feb. 27, 2012) ...................8, 9

*Nibirutech Ltd v. Jang*,
    No. C 14-3091 PJH, 2015 WL 831465 (N.D. Cal. Feb. 23, 2015) (Hamilton,
    J.)......................................................................................................................................14

*Oto v. Airline Training Ctr. Ariz., Inc.*,
    247 F. Supp. 3d 1098 (D. Ariz. 2017) ...........................................................................16

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)..........................................................................................................6

*Riot Games, Inc. v. Shanghai Moonton Tech. Co.*,
    No. CV223107MWFJPRX, 2022 WL 17326150 (C.D. Cal. Nov. 8, 2022) .....................8, 14

*Romoff v. Johnson & Johnson Consumer Inc.*,
    No. 22CV75-LL-WVG, 2022 WL 3905301 (S.D. Cal. Aug. 26, 2022)................................14

*Schijndel v. Boeing Co.*,
    263 F. App'x 555 (9th Cir. 2008) ..................................................................................8, 14

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)........................................................................................................5, 14

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
    2020 WL 12740596 (C.D. Cal. Jan. 17, 2020) ...................................................................14

*STM Grp., Inc. v. Gilat Satellite Networks Ltd.*,
    No. SACV 11-0093 DOC (RZx), 2011 WL 2940992, (C.D. Cal. July 18,
    2011) ...............................................................................................................................16

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ........................................................................................14

*Umeda v. Tesla, Inc.*,
    No 21-15286, 2022 WL 18980 (9th Cir. Jan. 3, 2022)......................................................10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States v. Pemkova*,
   731 F. App'x 620 (9th Cir. 2018) ........................................................................11

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) ...........................................................................14

*Wilson v. ImageSat Int'l N.V.*,
   No. Civ. 6176 (DLC), 2008 WL 2851511 (S.D.N.Y. July 22, 2008)......................7

**Statutes**

Israel's Defense Export Control Law ......................................................................2

Israeli Computers Law (5755-1995) .......................................................................6

**Other Authorities**

15 C.F.R. §730.5(c).................................................................................................13

15 C.F.R. §734.3(a)(1) ...........................................................................................3

15 C.F.R. §734.13(a)(1) .........................................................................................13

15 C.F.R. § 744, Supp. 4 .............................................................................3, 12, 13

15 C.F.R. §744.11(a)...............................................................................................12

15 C.F.R. §772.1 .............................................................................................3, 13

Eddy Meiri, *Foreign Judgments Enforcement in Israel*,
   31 Int'l L. Practicum 39 (2018)............................................................................12

*Eleventh Session of the Hague Conf. on Priv. Int'l L. Oct. 26, 1968*,
   T.I.A.S. No. 7444 Art. 11(a) (Oct. 7, 1972)........................................................10

Fed. R. Civ. P. 45(b)(2), (3).....................................................................................11

1

## I.     INTRODUCTION

Recent events make clear that this lawsuit should be litigated in Israel.  Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively, "NSO" or "Defendants") are Israeli companies that sell sophisticated defense, law enforcement, and antiterrorism technologies to government customers.  Given the sensitive nature of their technologies, the companies are subject to ██████████████████████ trade restrictions in both Israel and the United States.  Together, the restrictions effectively prohibit NSO from participating in this lawsuit or its own defense.  Israeli restrictions prevent NSO from providing broad swaths of information to Plaintiffs, the Court, and even its own U.S. litigation counsel.  At the same time, U.S. restrictions prevent NSO's counsel from transferring any export-regulated items or information to NSO, including information about NSO's own Pegasus technology.  NSO and its defense counsel have applied to the Israeli and U.S. governments, respectively, for export licenses so that they can participate in discovery and intelligently communicate with each other about Pegasus to prepare a defense in this action.  Neither government has granted a license.  Accordingly, NSO moves to dismiss this matter for *forum non conveniens* and to have Plaintiffs' claims heard in Israel.

*First*, U.S. courts have repeatedly recognized Israel as an adequate alternative forum. Indeed, in prior briefing, Plaintiffs all but conceded Israel was adequate.  Both Defendants are Israeli companies subject to service in Israel, and both will consent to jurisdiction in Israel.

*Second*, requiring NSO to litigate in the United States would be oppressive and vexatious. In addition to all of the burdens that international defendants generally face, the combination of ██████████████████████ Israeli export restrictions, and U.S. export restrictions has left NSO effectively unable to participate in discovery and to discuss its defense with its counsel of record in this litigation.

*Third*, California has a limited interest in this lawsuit compared to Israel, which has declared a direct and substantial interest.  ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████     Given Israel's far superior interest, this Court here should not add to its existing

1    congestion by taking on the significant burden and cost of resolving this dispute.

2          For all these reasons, NSO and Q Cyber respectfully request that this lawsuit be dismissed

3    in favor of proceedings in Israel.[2]

4    **II.   BACKGROUND**

5          **A.   The Plaintiffs File Suit Alleging Minimal Connections to California**

6          Plaintiffs WhatsApp and Facebook filed this lawsuit on October 29, 2019.  (ECF No. 1

7    ("Compl.").)   They allege that Defendants, two Israeli companies, developed and sold an

8    intelligence technology referred to as Pegasus.  (Compl. ¶¶ 5-6, 24, 27.)  Pegasus was designed to

9    permit the extraction of intelligence from foreign mobile devices.  (*Id.* ¶ 27.)

10         Plaintiffs allege that, between January 2018 and May 2019, NSO and Q Cyber created

11   WhatsApp accounts using foreign telephone numbers (*id.* ¶ 33), and ultimately "caused" Pegasus

12   to be installed on approximately 1,400 target devices (*id.* ¶ 42).   None of the target devices are

13   alleged to belong to citizens or residents of California or the United States.  (*Id.* ¶ 43.)  Plaintiffs

14   allege that their principal offices are located in California, as are an unspecified proportion of the

15   WhatsApp servers supposedly used to communicate with target devices.  *See id.* ¶¶ 3-4, 60.

16   ██████ ████████████████████████████████████████████████

17         NSO and Q Cyber's activities with respect to Pegasus are "strictly monitored and regulated

18   by the Government of Israel."  (ECF No. 45-11 ("Hulio Decl.") ¶ 5.)  Israel's Defense Export

19   Control Law ("DECL") prohibits the transfer of "defense know how," such as information about

20   Pegasus, outside of Israel unless the Israeli government grants a license.[3]  (*Id.* ¶ 6 & Exh. A.)  The

21   licensing and oversight process involves the exchange of documents and information with the

22   Israeli Ministry of Defense, including information about NSO's prospective customers,

23   information about the technology requested for export, the intended uses of Pegasus (to confirm

24   _____

25   [2] In the alternative, the Court could stay the action for three months to give Plaintiffs an opportunity
     to bring suit in Israel, dismissing this action once Plaintiffs successfully file suit.  The Court could
26   also condition dismissal on Defendants consenting to jurisdiction in Israel, which they are willing
     to do. The bottom line is that this case should proceed in Israel, not California.

27   [3] NSO previously submitted an English translation of DECL to the Court.  (ECF No. 45-12.)

28   ───────────────────────────────────────────────────────────────
     DEFENDANTS' MOTION TO DISMISS                    2                   Case No. 4:19-cv-07123-PJH
     FOR *FORUM NON CONVENIENS*

that the technology will only be used for law enforcement and antiterrorism purposes), and
investigations into potential misuses of the technology.  (*Id.* ¶¶ 6-8, 11-12.)

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

(Blecher Decl. ¶ 3.)  ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████   (*Id.* ¶ 4 & Exh. A.)  The same day, ████████████

████████████████████████████████████████████████████████████████████

████████   (*Id.* ¶ 5 & Exh. B.)  ██████████████████████████████████████

████████████████████████████████████████   (*Id.* Exh. B at 1.)  ████████████

████████████████████████████████████████████████████████.[4]   (*Id.*)

Finally, ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████   (*Id.* ¶ 6.)  Shortly
afterward, this case was stayed pending appeal.  (ECF No. 155.)

**C.      The United States Subjects NSO to Export Controls**

On November 4, 2021, while the litigation was stayed, the U.S. Department of Commerce
restricted certain U.S. exports to NSO.  *See* 15 C.F.R. § 744, Supp. 4.  The Department's Bureau
of Industry and Security ("BIS") entered the "NSO Group" on its Entity List, which prohibits any
U.S. entity from exporting items subject to Export Administration Regulations ("EAR") to NSO.
*See id.*  Under the EAR, "items" include hardware, software, technology, and related technical
information that is currently located in—or comes into—the United States. *See id.* §§ 734.3(a)(1),
772.1. BIS may grant licenses authorizing the transfer of items subject to the EAR to NSO, but it
indicated that licenses pertaining to NSO would be subject to a presumption of denial.  *See id.*
§ 744, Supp. 4.

---

[4] ████████████████████████████████████████████████████████████████████
████████████   (Blecher Decl. ¶ 7.)

**D.      NSO and Its Counsel Have Been Unable to Obtain Licenses Under Israeli or U.S. Law**

In early 2023, after the stay in this matter was lifted, the NSO Defendants and their defense counsel sought export licenses from the Israeli and U.S. governments, respectively.

On February 21, 2023, King & Spalding applied to BIS for an export license. (Akro. Decl. ¶ 2.)  The license was intended to permit King & Spalding to discuss the Pegasus software, technology, and related technical information with NSO and Q Cyber, as well as similar items and information received from third parties, so that King & Spalding could prepare NSO's defense in this litigation.  (*Id.*)  The license application was returned without action on April 20, 2023.  (*Id.*) Subsequent discussions with BIS have not resulted in a license being granted.  (*Id.*)

Similarly, on May 26, 2023, NSO's e-discovery consultant in this litigation, Deloitte, applied to BIS for a license to provide NSO and Q Cyber with industry-standard e-discovery technology.  (*Id.* ¶ 3.)  And similarly, Deloitte's application has not been granted.  (*Id.*)

On June 8, 2023, NSO applied to the Israeli Ministry of Defense ("MoD") for a license to export information relating to Pegasus to the Court, Plaintiffs, and their counsel.  (Gelfand Decl. ¶ 4.)  To date, the MoD has not granted the license to export such information to any of those recipients.  (*Id.*)

Finally, ████████████████████████████████████████████████

████ .[5]  (Blecher  Decl.  ¶  8  &  Exh.  C ███████████████████████

---

[5] ████████████████████████████████ (Blecher Decl. ¶ 8 & Exh. D

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

As relevant here, ████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11   Given the hurdles that NSO and Q Cyber face in producing evidence that will be exported

12   outside of Israel, and in communicating with their counsel of record in this litigation, they bring

13   this motion to dismiss on the grounds of *forum non conveniens*.

14   **III.   ARGUMENT**

15   Federal courts may dismiss an action on the grounds of *forum non conveniens* (1) if an

16   alternative forum has jurisdiction to hear the case and (2) if trial in the plaintiff's chosen forum

17   would cause "oppressiveness and vexation" to a defendant "out of all proportion to plaintiff's

18   convenience" *or* the chosen forum is "inappropriate because of considerations affecting the court's

19   own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549

20   U.S. 422, 429 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994)).  A party

21   moving for dismissal must therefore show "(1) the existence of an adequate alternative forum, and

22   (2) that the balance of private and public interest factors favors dismissal." *Lockman Found. v.*

23   *Evangelical All. Mission*, 930 F.2d 764, 767 (9th Cir. 1991).  Courts "frequently" apply the *forum*

24   *non conveniens* doctrine to conclude that alternative forums are more convenient. *See id.*

25

26

27

28

A.      **Israel Is an Adequate Alternative Forum**

As this Court already determined, Israel is an adequate alternative forum, and Plaintiffs have provided no evidence to the contrary. (ECF No. 111 at 30-31.)

First, an alternative forum "ordinarily" exists if the defendant is "amenable to process" there. *Lockman*, 930 F.2d at 768.  Defendants have already conceded they are subject to service of process and jurisdiction in Israel, where they are located.  (Hulio Decl. ¶ 4.)

Second, an alternative forum will almost always be deemed adequate, except in the "rare circumstances" that the remedy offered by the alternate forum is "so clearly inadequate or unsatisfactory that it is no remedy at all."  *Lockman*, 930 F.2d at 768 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981)).  The test of adequacy is "easy to pass."  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1226 (9th Cir. 2011).  A "foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001); *see Lockman*, 930 F.2d at 768-69 (finding Japan to be an adequate forum despite unavailability of RICO and Lanham Act claims, because Japanese court would consider "other tort and contract claim").  Here, Israel is an adequate forum because its courts would recognize Plaintiffs' breach of contract claim.[6] *See Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 100, 103 (1st Cir. 2009).  Further, Israeli "tort law provides adequate remedies for plaintiffs injured as a result of tortious conduct."  *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1026 (W.D. Wash. Nov. 22, 2005).  This includes tort claims pursuant to the Israeli Computers Law (5755-1995).  (Blecher Decl. ¶ 9.)   These claims would permit remedies similar to those in the United States, including damages and injunctive relief.  (*See id.*)[7]

Accordingly, courts "routinely hold that Israel is a proper forum and dismiss cases on the

---

[6] The lawsuit in Israel between NSO's employees and Plaintiffs shows that Israeli courts can entertain breach of contract claims based on WhatsApp's terms of service. (Answer at 10:8–9.)

[7] In addition, Plaintiffs argue that California law applies by virtue of WhatsApp's terms of service. If Plaintiffs succeeded in that argument, Israeli courts would be competent to apply the same U.S. and California laws under which Plaintiffs sue in this Court.  (Blecher Decl. ¶ 10.)

grounds that it would be more appropriate to hear a case in Israel." *Israel Disc. Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 659 (C.D. Cal. 2007), *aff'd sub nom. Israel Disc. Bank, Ltd. v. Schnapp*, 321 F. App'x 700 (9th Cir. 2009); *Corrie*, 403 F. Supp. 2d at 1026, *aff'd*, 503 F.3d 974 (9th Cir. 2007) ("It has been recognized in other cases that Israel's courts are generally considered to provide an adequate alternative forum for civil matters."); ECF No. 111 at 31:12-13 (acknowledging "cases finding Israel to be an available forum"); *see also, e.g.*, *Hananel*, 575 F.3d at 103; *Argoquest v. Israel Discount Bank, Ltd.*, 228 F. App'x 733 (9th Cir. 2007); *Fahrner-Miller Assocs., Inc. v. Mars Antennas & RF Sys., Ltd.*, No. 5:14-cv-03668-PSG, 2014 WL 6871550, at *2 (N.D. Cal. Dec. 4, 2014); *Wilson v. ImageSat Int'l N.V.*, No. Civ. 6176 (DLC), 2008 WL 2851511, at *6 (S.D.N.Y. July 22, 2008).

## B.       The "Private Factors" Favor Dismissal

Private factors include "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Lueck*, 236 F.3d at 1145.  These factors strongly favor dismissal in favor of Israel.

### 1.       Critical Evidence and Witnesses Are Located in Israel

First, the residence of the parties and the witnesses favors trial in Israel.  The primary consideration is the importance of the evidence located in the respective forums, not the "number of witnesses or quantity of evidence in each locale." *Id.* at 1146.  The private interest factors are not in equipoise simply because "crucial documents and witnesses exist in both fora." *Id.*

In this case, Defendants are Israeli corporations with principal places of business in Israel. (Compl. ¶¶ 5-6; Hulio Decl. ¶ 4.)  Plaintiffs allege that NSO is liable not for the actions of its customers in operating Pegasus, but for NSO's own independent conduct in developing and supposedly operating Pegasus remotely (*see* Compl. ¶¶ 35-43), all of which would have taken place within Israel.  The most significant documents and witnesses relevant to Plaintiffs' claims

are thus located in Israel.  The testimony of current and former NSO employees will be required to address Plaintiffs' allegations that: (1) NSO reverse-engineered WhatsApp code (*id.* ¶ 35); (2) NSO used WhatsApp vulnerabilities to install Pegasus remotely (*id.* ¶ 25); (3) NSO accessed WhatsApp computers and target devices in the process (*id.* ¶¶ 53, 59); (4) NSO, and not its foreign government customers, installed Pegasus on the target devices (*see id.* ¶ 42); and (5) NSO did so knowingly and with fraudulent intent (*id.* ¶¶ 54, 59).  Witnesses employed by Plaintiffs cannot address these issues, or any others related to NSO's involvement in the creation, sale, or use of Pegasus, NSO's knowledge, or NSO's intent.

In contrast, Plaintiffs' California residence "is not in and of itself sufficient to bar a district court from dismissing a case on the ground of *forum non conveniens*."  *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983).  Rather, the "fact that many important witnesses and a great deal of evidence" is located in Israel is entitled to "substantial weight."  *Schijndel v. Boeing Co.*, 263 F. App'x 555, 557 (9th Cir. 2008).  This is true even "where claims involving United States parties are involved."  *Riot Games, Inc. v. Shanghai Moonton Tech. Co.*, No. CV223107MWFJPRX, 2022 WL 17326150, at *13 (C.D. Cal. Nov. 8, 2022) (collecting cases).  This factor therefore strongly favors dismissal.

### 2. California Is Not Convenient for NSO, Q Cyber, or Their Witnesses

Second, California is not convenient for Defendants or their numerous witnesses.  This Court has already found that "the burden on [NSO] to litigate in California is substantial given that [its] witnesses and evidence are located in Israel." (ECF No. 111 at 29:15-17.)  Furthermore, many of NSO and Q Cyber's internal documents are written in Hebrew.  (Gelfand Decl. ¶ 2.)  Translating these materials into English for purposes of production and testimony would be burdensome.  The same would not be true if the matter were litigated in Israel, as many NSO employees have at least some proficiency in English (*Id.*), and Israeli courts are more likely to be proficient in English than American courts are to be proficient in Hebrew, *see Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 878 (3d Cir. 2013).  This factor thus weighs in favor of dismissal.  *MGA Ent. Inc. v. Deutsche Bank AG*, No. CV 11-4932-GW(RZX), 2012 WL 12892902, at *5 (C.D. Cal. Feb. 27, 2012)

1   (concluding that "burdensome translation efforts" was a "clear fact" weighing in favor of

2   dismissing or staying the litigation).

3           **3.    Litigating in California Restricts All Parties' Access to Evidence**

4           Third, should these claims proceed in California, all of the parties would be deprived of

5   access to critical evidence located in Israel.

6           As an initial matter, under ███████████████████████████████████████

7   ███████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████ Documents likely to be produced in this litigation

9   may show the identity of NSO's government customers who obtained a license from Israel; Israel's

10  assessment of those customers; any limited information that NSO possesses about its customers'

11  use of Pegasus; and other highly sensitive information.  These materials are directly relevant to

12  significant issues in this case, including Plaintiffs' allegation that NSO was directly involved in

13  installing Pegasus on any of the 1,400 devices alleged in the Complaint. ████████████████

14  ███████████████████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████████████████

16  ██████████████████████████ (*Id.* at 1.) ██████████████████████████████████

17  ███████████████████████████████████████████████████████████ is the fact

18  that the Protective Order in place protects the confidentiality of designated materials only during

19  the discovery phase, and any materials introduced at trial presumptively lose their protection and

20  become a matter of public record. ██████████████████████████████████████████

21  ████████████████████████████████ will be made public at trial—as this Court's Standing Order

22  recognizes.  (Standing Order Regarding Discovery Disputes, Protective Orders, and ESI Orders § 4.)

23          Moreover, Israel's DECL expressly prohibits any Israeli citizen from "[t]ransfer[ring]

24  defense know-how through any means . . . from Israel to outside of Israel, or in Israel to a person

25  who is neither an Israeli citizen or an Israeli resident, or to a foreign corporation," unless the Israeli

26  citizen has "received a license for such activity."  (DECL § 15(a).)  The DECL defines "[d]efense

27  know-how" as including any "[i]nformation that is required for the development or production of

28

defense equipment or its use, including information referring to design, assembly, inspection, upgrade and modification, training, maintenance, operation and repair of defense equipment or its handling in any other way," including "technical data or technical assistance." (*Id.* § 2.) Here, WhatsApp and Facebook's allegations—and the bulk of their discovery requests—focus on technical aspects of NSO's Pegasus technology that plainly constitute defense know-how under the DECL. Furthermore, any testimony about information covered by the DECL cannot lawfully be transferred "outside of Israel." (*Id.* § 15(a)(2).) Violations of the DECL carry criminal penalties. (*Id.* §§ 32-34.) Israeli witnesses may thus be unable to answer any questions regarding NSO's technologies if those answers are at risk of being exported. (Blecher Decl. ¶ 12 (Israel recognizes a privilege against self-incrimination. [8]) In the absence of an export license, which Defendants thus far have not been able to obtain, this Court's and the parties' access to critical documents and witnesses in Israel will be severely curtailed, and Defendants' Due Process right to defend themselves will be impaired.

In sum, should this matter continue to be litigated in California, the parties' access to proof supporting their claims and defenses will be strictly limited, which will pose "practical problems" throughout the course of discovery and trial. *Umeda v. Tesla, Inc.*, No 21-15286, 2022 WL 18980, at *1 (9th Cir. Jan. 3, 2022). These same problems would not exist in an Israeli forum, where no export license would be required for NSO and the ███████████████████████ ███████████████████████████████████ because it is comfortable with the ability of Israeli courts to preserve the confidentiality of that testimony. (*See* Blecher Decl. ¶ 12.) As a result, this factor strongly favors dismissal.

### 4.    Unwilling Witnesses Cannot Be Compelled to Testify

*Fourth*, many of the witnesses in Israel cannot be compelled to appear in person in

---

[8] The Hague Convention specifically permits witnesses to "refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence . . . under the law of the State of execution." *Convention Adopted at the Eleventh Session of the Hague Conf. on Priv. Int'l L. Oct. 26, 1968*, T.I.A.S. No. 7444 Art. 11(a) (Oct. 7, 1972).

California.  *See* Fed. R. Civ. P. 45(b)(2), (3); *United States v. Pemkova*, 731 F. App'x 620, 623 n.3 (9th Cir. 2018) ("The district court's subpoena power over witnesses located outside the country extends only to potential witnesses who are United States nationals or residents.").  As an illustration of the problems this will create, 16 of the 23 document custodians in this matter are Israelis who are no longer employed by NSO and could not be compelled to testify.  (Gelfand Decl. ¶ 3.)  In U.S. proceedings, the parties would thus be unable to compel the attendance of key trial witnesses or effectively preserve their testimony for presentation at trial.  *See Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1451 (9th Cir. 1990); *Alternate Health USA Inc. v. Edalat*, 2022 WL 767573, at *8-9 (C.D. Cal. Mar. 14, 2022).

Seeking pre-trial depositions of those witnesses under the Hague Convention would not alleviate the prejudice to NSO.  Depositions of witnesses in Israel are possible, but very rare. (Blecher Decl.¶ 11.)  *See also In re Factor VIII or IX Concentrate Blood Prod. Liab. Litig.*, No. 05C2793, 2008 WL 4866431, at *6 (N.D. Ill. June 4, 2008), *aff'd sub nom. Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931 (7th Cir. 2011) (reviewing evidence from Judge Gabriel Kling, former Deputy President of the District Court of Tel Aviv-Jaffa, to conclude that no "Israeli court [would] compel the appearance of an Israeli citizen for a deposition to be used in a trial to be conducted in the United States").

Furthermore, even if Israeli witnesses were eventually compelled to appear for depositions, the witnesses would be unable to testify about matters subject to the DECL in the absence of an export license. ████████████████████████████████ about the documents that NSO and Q Cyber have been directed to maintain as confidential.

Finally, even should the witnesses appear and provide substantive testimony, NSO would be prejudiced by the lack of "live in-person testimony," which "is preferable to video testimony or live videoconferencing testimony." *Interface Partners*, 575 F.3d at 105.  The "ability to produce live testimony can weigh strongly in favor of a particular forum." *Id.*  In comparison, these same witnesses could safely testify in an Israeli judicial proceeding, even about matters protected by the DECL.

For all these reasons, this factor favors dismissal.

**5.      The Cost of Bringing Witnesses to Trial Would Be High**

Fifth, as noted above and in prior orders, there is no dispute that the cost of transporting willing witnesses to trial in the United States would be high for NSO.  (ECF No. 111 at 29:15-17.) This is particularly true at trial, where witness testimony may be delayed or witnesses may be recalled.  Plaintiffs would not face a proportionate cost if this matter were tried in Israel, as Facebook maintains offices there and Plaintiffs are likely to have fewer witnesses than would NSO. As a result, this factor favors dismissal.

**6.      An Israeli Judgment Would Be More Easily Enforced**

Sixth, any potential judgment against NSO could be more easily enforced if entered by an Israeli court, where NSO's assets and operations are located. *See Edalat*, 2022 WL 767573, at *9 (holding judgment against Canadian defendant "would be easier to enforce if that judgment was rendered by a Canadian court," which "weighs strongly in favor of dismissal").  A judgment of this Court would not be "automatically" enforced in Israel.  *See* Eddy Meiri, *Foreign Judgments Enforcement in Israel*, 31 Int'l L. Practicum 39 (2018).  Plaintiffs would bear the burden of proving, among other conditions, that the judgment "is not in contrast to public policy."  *See id.* at 41.  Even then, an Israeli court would not enforce the judgment if "the losing party was not given a reasonable opportunity to present its case" or enforcing the judgment "might be detrimental to Israel's sovereignty or security."  *Id.*  Here, █████████████████████████████████ ████████████████████████████████  Accordingly, Plaintiffs would not be entitled to an "automatic" enforcement of any U.S. judgment—particularly one rendered in the absence of key evidence.  This factor "weighs strongly in favor of dismissal" *Edalat*, 2022 WL 767573, at *9.

**7.      U.S. Export Control Laws Are Hampering NSO's Defense**

Seventh, additional "practical" concerns favor trial in Israel.  Chief among those, NSO was placed on the Department of Commerce's BIS Entity List in late 2021.  *See* 15 C.F.R. § 744, Supp. 4.  As a result, all persons—in particular, individuals and entities in the United States—are prohibited from exporting, re-exporting, or transferring various items to NSO.  *See id.* § 744.11(a).

This includes information about NSO's own proprietary technology.  The term "export" is defined broadly as any "transmission out of the United States . . . in any manner" of an item subject to the EAR.  *Id.* § 734.13(a)(1).  This includes the "electronic transmission of non-public data that will be received abroad."  *Id.* § 730.5(c).  The list of prohibited items includes both "software" and "technology" that currently are located in, or could come into, the United States. *Id.* §§ 772.1, 734.3(a)(1).  "Technology" is defined broadly to include any "[i]nformation necessary for the 'development,' 'production,' 'use,' operation, installation, maintenance, repair, overhaul, or refurbishing . . . of an item." *Id.* § 772.1.  There is no exception for technology created and owned by NSO itself.  The practical effect of these regulations is that NSO's U.S. litigation counsel cannot communicate with NSO regarding any of NSO's own technology—the core subject matter of this litigation—or share with NSO and Q Cyber substantial amount of technical discovery received from Plaintiffs or third parties.  Exports could be permitted with a license, *id.* § 744.11(a), but the U.S. government has indicated that any such license applications will be subject to a "presumption of denial," *id.* § 744, Supp. 4.  In fact, King & Spalding applied for a license so that it could defend NSO in this litigation, and the requsted license has not been granted.  (Akro. Decl. ¶ 2.)

Even NSO's e-discovery vendor, Deloitte, has not been able to obtain a license to provide NSO with basic e-discovery software.  (*Id.* ¶ 3.)  In this age of electronic discovery—and Plaintiffs seek broad electronic discovery—document review and production are all but impossible without basic e-discovery software.

Accordingly, if this litigation were to proceed in the United States, NSO's counsel would be unable to communicate fully with its clients about the case.  That severe prejudice strongly favors dismissal.

* * *

In sum, the *forum non conveniens* "private factors" all support dismissal. *See Facebook, Inc. v. Studivz Ltd.*, No. C08-3468 JF (HRL), 2009 WL 1190802, at *3 (N.D. Cal. May 4, 2009) (finding "private interest factors" favored dismissal where foreign witnesses were more important than U.S.-based witnesses, testimony of foreign-resident witnesses could likely not "be compelled in this Court,"

and foreign judgment would be "more effective" than U.S. judgment.  Litigating this matter in the United States would effectively prohibit NSO from producing critical evidence (both documents and witnesses) and from assisting its U.S. defense counsel in preparing its defense.  This matter should therefore be dismissed and brought in Israel, an adequate alternative forum, to avoid disproportionate "oppressiveness and vexation" to NSO and Q Cyber.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (stating that dismissal is appropriate when an adequate alternative forum exists and the plaintiff's chosen forum would cause "oppressiveness and vexation" to a defendant "out of all proportion to plaintiff's convenience").

## C.    The "Public Factors" Similarly Favor Dismissal

Although the Court need not reach them, the relevant public factors include "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147; *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 12740596, at *11 (C.D. Cal. Jan. 17, 2020).  These factors all favor dismissal.

### 1.    Israel's Interests Substantially Outweigh Any Local Interests

First, there is limited local interest in this lawsuit compared to the interest of Israel.[9]  *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) (affirming dismissal for *forum non conveniens*, in part because the local interest in the case was "slight" compared to other proposed forums); *Schijndel*, 263 F. App'x at 557 (affirming dismissal for *forum non conveniens* based, in part, on conclusion that Singapore's interests outweighed local interests); *Lueck*, 236

---

[9]  The prevailing practice in the Ninth Circuit is to weigh the local and foreign interests.  *E.g.*, *Elliott v. PubMatic, Inc.*, No. 21-CV-01497-PJH, 2021 WL 3616768, at *3 (N.D. Cal. Aug. 16, 2021) (Hamilton, J.); *Nibirutech Ltd v. Jang*, No. C 14-3091 PJH, 2015 WL 831465, at *6 (N.D. Cal. Feb. 23, 2015) (Hamilton, J.).  There is a limited line of cases to the contrary stemming from *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006), which stated that the "local interest" factor did not require such a comparison.  That statement, however, was not supported by citation to any authority, *see id.*, and it does not reflect the predominant method for assessing local interest. *See, e.g.*, *Riot Games, Inc.*, 2022 WL 17326150, at *14 (weighing interests); *Romoff v. Johnson & Johnson Consumer Inc.*, No. 22CV75-LL-WVG, 2022 WL 3905301, at *6 (S.D. Cal. Aug. 26, 2022) (same).

F.3d at 1147 (affirming dismissal for *forum non conveniens* after weighing local interests against interests of New Zealand); *Israel Disc. Bank*, 505 F. Supp. 2d at 661 (concluding that "Israel, not California, has the greatest interest" in the counterclaims at issue).

California's only potential interest in this litigation is insubstantial. Although Plaintiffs are citizens of the state, that interest must be "discounted substantially" because Meta (1) is a multinational company with a significant business presence (and local counsel) in Israel,[10] (2) is currently litigating actions in Israel,[11] and (3) complains of conduct alleged to have occurred in Israel. *See Studivz*, 2009 WL 1190802, at *2; *see also Cook v. Champion Tankers AS*, No. 12-CV-01965-JST, 2013 WL 1629136, at *9 (N.D. Cal. Apr. 16, 2013) ("California has little interest in litigation arising out of events that took place in Asia and in which the vast majority of the individuals and property involved has no connection to the United States.").

In contrast, Israel has a substantial interest in this litigation. Plaintiff's claims involve the conduct of two Israeli companies that license Israeli defense technology to other governments, exclusively as allowed by the State of Israel. (Compl. ¶¶ 5-6, 24, 27; Hulio Decl. ¶¶ 5-9.) As in *Lueck*, therefore, Israel's "interest . . . regarding this suit is extremely high," 236 F.3d at 1147, because NSO's conduct is closely regulated by the Government of Israel. Furthermore, ███

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Accordingly, "the local courts in [Israel] would likely have a greater understanding of the circumstances surrounding the dispute" and a greater interest in the action. *Contact Lumber Co.*, 918 F.2d at 1453.

### 2.    Israeli Courts Are Capable of Applying California Law

Second, the parties have proceeded thus far under California law. Even assuming that

---

[10] Facebook (now Meta) maintains offices and an estimated 900 employees in Israel. (Akro. Decl. ¶¶ 4-5 & Exhs. A, B.)

[11] Meta, Facebook, and WhatsApp are currently litigating at least 15 matters in Israel, and previously litigated a suit brought by employees of NSO and Q Cyber. (*See* Blecher Decl. ¶ 13.)

California law governs and would still govern in Israel, Israel remains the most appropriate forum. *Cf. Cheng*, 708 F.2d at 1411 ("[A] Taiwan tribunal is competent to decide questions of American law, if American law should apply to the issues in this litigation.").  Israeli courts interpret and apply U.S. and California law.  (Blecher Decl. ¶ 10).  This factor thus weighs in favor of dismissal.

### 3.     This District Should Not Bear the Burden of This Dispute

The remaining factors also favor dismissal.  Although California may have an interest in unlawful conduct by companies within the forum state, "this interest is slight compared to the time and resources the district court in [Oakland] would expend if it were to retain jurisdiction over this dispute." *Lueck*, 236 F.3d at 1147; *see also Oto v. Airline Training Ctr. Ariz., Inc.*, 247 F. Supp. 3d 1098, 1109 (D. Ariz. 2017).  A trial in this matter would burden local courts and juries out of proportion to California's attenuated interest.  This suit would be expensive to try given the complicated technical matters at issue; the anticipated length of the trial; the sensitivity of the documents; the complications involved in managing discovery under potentially conflicting Israeli and U.S. legal regimes (which is already the subject of several pending motions before this Court); and the likely media interest.  Transporting all the necessary witnesses and any such evidence to California from those countries would be unnecessarily "inconvenient and expensive." *STM Grp., Inc. v. Gilat Satellite Networks Ltd.*, No. SACV 11-0093 DOC (RZx), 2011 WL 2940992, at *9 (C.D. Cal. July 18, 2011).  In a case like this one, "[w]here the local interest in [the] controversy is weak as compared to the alternative forum's interest," the "burden on local courts and juries, and the related costs, are not justified." *Edalat*, 2022 WL 767573, at *11 (C.D. Cal. Mar. 14, 2022).

The trial would also come at a time when courts in the Northern District are facing high caseloads and are still experiencing substantial delays in bringing civil matters to trial.  (Akro. Decl. ¶ 6 & Exh. C.)  According to published statistics, at the end of 2019, civil matters were brought to trial in 22.3 months (median).  (*See id.* Exh. C.)  Since the pandemic began, that figure has increased more than fifty percent to an average of 33.8 months (median) over the last three years.  (*See id.*)  The case would reach trial in less than three years in the Israeli court system.  (*See* Blecher Decl. ¶ 14.)

1        Accordingly, the factors concerning burden, congestion, and cost favor dismissal.

2                                         \*   \*   \*

3        A court in this District has held that the public factors favored dismissal of a lawsuit

4 brought by Meta for reasons that also apply here. *Studivz*, 2009 WL 1190802, at \*2. In *Studivz*,

5 Facebook (before it was Meta) brought a lawsuit in the U.S. to recover for economic injuries

6 caused by the defendant's German website, and the court concluded the lawsuit should have been

7 brought in Germany. *Id.* Although the court found "the majority of the public interest factors

8 [we]re neutral," it found the "local interest factor" favored dismissal. *Id.* at \*3. Even if U.S. law

9 applied to Facebook's claims, the court found it "far from clear that the predominantly economic

10 injury that Facebook may have sustained in California outweighs Germany's interest in deciding

11 a controversy whose outcome may affect the availability of a website used by millions of its

12 citizens." *Id.* The court "discounted substantially" Facebook's "choice of forum" because it was

13 "a multinational company with a significant business presence in Germany." *Id.* at \*2.

14        The same considerations favor dismissal here. As in *Studivz*, California has little interest

15 in this lawsuit beyond Plaintiffs' residence, because Plaintiffs do not (and cannot) allege that NSO

16 or any of its government customers took any purportedly wrongful action in California. And the

17 relevance of Plaintiffs' "choice of forum must be discounted substantially because" Meta is a

18 massive international corporation with "a significant business presence" in Israel. *Id.*

19 **IV.**     **CONCLUSION**

20        For the reasons stated above, the Court should dismiss Plaintiffs' claims for *forum non*

21 *conveniens*.

22 Dated:  September 8, 2023          KING & SPALDING LLP

23                               By:    */s/Joseph N. Akrotirianakis*

24                                    JOSEPH N. AKROTIRIANAKIS
                                        AARON S. CRAIG

25

26                                    Attorneys for Defendants NSO GROUP
                                      TECHNOLOGIES LIMITED and Q

27                                    CYBER TECHNOLOGIES LIMIT

28