Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
 (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
          antonio.perez@davispolk.com
          craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC, and<br>META PLATFORMS INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Date:    November 2, 2023<br>Time:    1:30 p.m.<br>Ctrm:    3<br>Judge:   Hon. Phyllis J. Hamilton |

1

## <u>TABLE OF CONTENTS</u>

2

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS AND ALLEGATIONS .......................................................2

    A.    Plaintiffs Bring Claims Against NSO ...........................................................2

    B.    The Court Concludes That It Has Jurisdiction over NSO, and Denies NSO's  Motion to Dismiss ...................................................2

    C.    ██████████████████████████████ ...............................4

    D.    The United States Adds NSO to the Entity List .........................................5

    E.    ████████████████████████████ ...........................6

    F.    This Court Discouraged Further Motions, Set a Trial Date, and Set a Schedule for NSO to Move for a Protective Order ....................7

    G.    NSO Waits Six More Months to File This Motion...................................8

LEGAL STANDARD...................................................................................................8

ARGUMENT ................................................................................................................9

    I.    NSO's Motion Should Be Denied as Untimely ........................................9

    II.    NSO Has Failed to Show that Israel Is an Adequate Alternative Forum ............................................................................................................12

    III.    Northern District of California Is Not an Unreasonable Forum to Litigate This Case ......................................................................................15

        A.    This Court Has Already Rejected NSO's Contentions Regarding the  Inconvenience of this Forum..............................................15

        B.    The Private Factors Counsel Against Dismissal........................................16

        C.    The Public Factors Counsel Against Dismissal.........................................23

CONCLUSION.............................................................................................................25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

P<small>AGE</small>(<small>S</small>)

C<small>ASES</small>

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
  480 U.S. 102 (1987) ........................................................................................ 16

*Bhatnagar v. Surrendra Overseas Ltd.*,
  52 F.3d 1220 (3d Cir. 1995) ........................................................................... 14

*Bluestar Genomics v. Song*,
  2023 WL 4843994 (N.D. Cal. May 25, 2023) ...................................................... 24

*Bos. Telecomms. Grp., Inc. v. Wood*,
  588 F.3d 1201 (9th Cir. 2009) ..................................................................... *passim*

*Bryant v. Mattel, Inc.*,
  2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ...................................... 9, 10, 11, 12

*Carijano v. Occidental Petrol. Corp.*,
  643 F.3d 1216 (9th Cir. 2011) ..................................................................... *passim*

*Ceramic Corp. of Am. v. Inka Mar. Corp. Inc.*,
  1 F.3d 947 (9th Cir. 1993) .......................................................................... 12, 15

*Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc.*,
  2003 WL 22682483 (N.D. Cal. Nov. 10, 2003) .............................................. 9, 12

*Cheng v. Boeing Co.*,
  708 F.2d 1406 (9th Cir. 1983) .............................................................................. 9

*Cooper v. Tokyo Elec. Power Co., Inc.*,
  166 F. Supp. 3d 1103 (S.D. Cal. 2015), *aff'd*, 860 F.3d 1193 (9th Cir. 2017) .............. *passim*

*CYBERsitter, LLC v. People's Republic of China*,
  805 F. Supp. 2d 958 (C.D. Cal. 2011) ............................................................... 22

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ........................................................................... 12

*Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G*,
  955 F.2d 368 (5th Cir. 1992) ............................................................................. 13

*Est. of I.E.H. v. CKE Restaurants, Holdings, Inc.*,
  995 F.3d 659, 664 (8th Cir. 2021) .................................................................... 10

*Est. of Klieman v. Palestinian Auth.*,
  272 F.R.D. 253 (D.D.C. 2011) ......................................................................... 22

iii

*Facebook, Inc. v. Power Ventures, Inc.*,
   252 F. Supp. 3d 765 (N.D. Cal. 2017) *aff'd*, 749 F. App'x 557 (9th Cir. 2019) ................... 24

*Facebook, Inc. v. Studivz Ltd.*,
   2009 WL 1190802 (N.D. Cal. May 4, 2009) ......................................................... 24

*Finjan, Inc. v. Cisco Sys., Inc.*,
   2019 WL 667766 (N.D. Cal. Feb. 19, 2019) ......................................................... 22

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) ......................................................................... 25

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) ..................................................................................... 9

*Gutierrez v. Advanced Med. Optics, Inc.*,
   640 F.3d 1025 (9th Cir. 2011) ....................................................................... 12

*In re Herbert*,
   2014 WL 1464837 (D. Haw. Apr. 14, 2014) ........................................................ 22

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
   2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ........................................................ 23

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ................................................................................. 3, 4

*Kinetic Concepts, Inc. v. Kinetic Concepts, Inc.*,
   601 F. Supp. 496 (N.D. Ga. 1985) .................................................................. 10

*King.com Ltd. v. 6 Waves LLC*,
   2014 WL 1340574 (N.D. Cal. Mar. 31, 2014) ..................................................... 21

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ................................................................ *passim*

*Moreno v. Omnilife USA, Inc.*,
   483 F. App'x 340 (9th Cir. 2012) ................................................................... 10

*Nibirutech Ltd. v. Jang*,
   75 F. Supp. 3d 1076 (N.D. Cal. 2014) .............................................................. 14

*MGA Entertainment Inc. v. Deutsche Bank AG*,
   2012 WL 12892902 (C.D. Cal. Feb. 27, 2012) ................................................... 20

*NSO Grp. Techs. Ltd. v. WhatsApp Inc.*,
   143 S. Ct. 562 (Jan. 9, 2023) .......................................................................... 4

*Pepper, N.A. v. Expandi Inc.*,
   2015 WL 7720922, (N.D. Cal. Nov. 30, 2015) .................................................... 16

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ................................................................................. 8, 9

iv

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) ................................................................................. 8

*Ridgway v. Phillips*,
   383 F. Supp. 3d 938 (N.D. Cal. 2019) ................................................................. 21

*Salebuild, Inc. v. Flexisales, Inc.*,
   633 F. App'x 641 (9th Cir. 2015) ................................................................. 20, 22

*Sharpe v. Jefferson Distrib. Co.*,
   148 F.3d 676 (7th Cir. 1998) ............................................................................... 10

*In re Teva Sec. Litig.*,
   512 F. Supp. 3d 321 (D. Conn. 2021) *reconsideration denied*,
   2021 WL 1197805 (D. Conn. Mar. 30, 2021) ........................................................ 23

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) .......................................................... 12, 17, 24, 25

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
   17 F.4th 930 (9th Cir. 2021) ................................................................................... 4

*Zelinski v. Columbia 300, Inc.*,
   335 F.3d 633 (7th Cir. 2003) ............................................................................... 11

### STATUTES & RULES

15 C.F.R. § 744.11 (2023) ......................................................................................... 6

86 Fed. Reg. 60759 (Nov. 4, 2021) .......................................................... 5, 6, 11, 18

Fed. R. Civ. P. 12(b) ............................................................................................. 1, 10

Fed. R. Civ. P. 12(h)(1) ............................................................................................. 10

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 21

Fed. R. Civ. P. 37(d)(1)(A)(i) .................................................................................. 21

Fed. R. Civ. P. 65(d) ................................................................................................. 23

### OTHER AUTHORITIES

11 Charles Alan Wright et al., Federal Practice and Procedure § 3828 (4th ed. 2023) ............... 11

Patrick Howell O'Neill, *Inside NSO, Israel's Billion-Dollar Spyware Giant*,
MIT Tech. Rev. (Aug. 9, 2020) .............................................................................. 14

v

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER**
**CASE NO. 4:19-CV-07123-PJH**

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiffs WhatsApp LLC and Meta Platforms, Inc. ("Plaintiffs") filed this action on October 29, 2019.  Now, after almost four years of substantial litigation and rulings by this Court, the Ninth Circuit, and the Supreme Court, Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited ("NSO") have filed a motion to dismiss under the doctrine of *forum non conveniens*.[1]  NSO's attempt to evade accountability for its conduct under U.S. law or by a U.S. court should be rejected and its motion to dismiss denied.  NSO has not met its burden to show an adequate alternative forum and that the private and public interest factors strongly favor dismissal.

*First*, NSO's *forum non conveniens* argument should be denied as untimely.  Courts have required defendants to file motions to dismiss for *forum non conveniens* in their original Rule 12(b) motions, or as soon as they have a factual basis for doing so.  Here, NSO has known of the basis for its motion—alleged restrictions on its ability to litigate—for years and sought other relief on that basis, but has never pressed its claim that they render this forum inconvenient until now.

*Second*, NSO is unable to meet its burden of establishing that Israel is an adequate alternative forum for Plaintiffs' claims.  NSO's proposed alternative— ███████████ ███████████████████████████████████████████████████—is no alternative at all.  Moreover, ███████████████████████████ ████, which raises serious questions about whether Plaintiffs could fairly seek any remedy there.

*Third*, Plaintiffs are California residents, and Plaintiffs' choice to litigate in their home forum "will not be disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial in a foreign country." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).  They do not.  This Court, analyzing all the same factors when deciding NSO's motion to dismiss for a lack of personal jurisdiction, concluded "some factors tip in defendants' favor and others tip in plaintiffs' favor," and thus do not "present a compelling case that exercising jurisdiction [in California] would be unreasonable."  Dkt. No. 111 at 31.  NSO has failed to make a clear showing, which it must, that a different result is warranted now.  NSO identifies practical difficulties with

---

[1] "Mot." shall refer to NSO's motion to dismiss for *forum non conveniens*, Dkt. No. 214-2.

litigating the case in California, but fails to explain how litigating in Israel would resolve any of these problems.  At most, restarting the case at this juncture in Israel would merely shift the inconvenience from NSO ████████████████████████████ to Plaintiffs (who are trying to hold NSO accountable).  The parties and the U.S. judicial system have dedicated substantial resources to litigating in this forum, and NSO's effort to start over on its home soil should be rejected.

## STATEMENT OF FACTS AND ALLEGATIONS

### A.  Plaintiffs Bring Claims Against NSO

Plaintiffs, two companies headquartered in Menlo Park, California, filed this lawsuit against NSO on October 29, 2019.  *See* Dkt. No. 1 ¶¶ 3–4.  Plaintiffs allege that NSO manufactures, distributes, and operates spyware designed to intercept and extract information and communications from mobile phones—including messages sent via WhatsApp.  *Id*. ¶¶ 24–29.  The complaint alleges that NSO accessed WhatsApp's computers (including computers located in California) without authorization between April and May 2019, in order to transmit its spyware and to hack approximately 1,400 mobile phones and devices belonging to, among others, attorneys, journalists, human rights activists, and government officials.  *Id*. ¶¶ 1, 11, 42.  The complaint further alleges that on May 9, 2019, NSO used WhatsApp servers to route malicious code to a U.S.-based phone with a Washington, D.C. area code.  *Id*. ¶ 38.  Plaintiffs brought claims under the Computer Fraud and Abuse Act ("CFAA") and the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), as well as for breach of contract and trespass to chattels.  *Id*. ¶¶ 49–78.

### B.  The Court Concludes That It Has Jurisdiction over NSO, and Denies NSO's Motion to Dismiss

NSO filed its first motion to dismiss on April 2, 2020.  Dkt. No. 45.  That motion argued, among other things, that it was unreasonable for a California court to exercise jurisdiction over NSO, because it supposedly did not target California and "the burden on [NSO] to litigate in California would be 'great, given that it is incorporated in [Israel], owns no property in the forum, and has no employees or persons authorized to act on its behalf there'; and 'its potential witnesses and evidence' are 'half a world away.'"  *Id.* at 17 (citation omitted).

2

NSO attached to its motion declarations from its then-CEO, Dkt. No. 45-11, and its then-CFO, Dkt. No. 45-12.  NSO's CEO, Shalev Hulio, declared that "NSO's Pegasus technology is regulated under Israel's Defense Export Control Law" and appended a copy of the law itself.  Dkt. No. 45-11 ¶ 5; *id.* Ex. A.  NSO's CFO, Nachum Falek, attached a report attesting to NSO's compliance with the restrictions imposed by the Defense Export Control Law ("DECL").  Dkt. No. 45-12 Ex. 1.  ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Despite knowledge of these facts, NSO did not raise the issue of *forum non conveniens* or a defense based on the DECL in that initial motion to dismiss.  *See* Dkt. No. 45.  Nor did it raise these issues in its *second* motion to dismiss, filed June 24, 2020, seeking dismissal of Plaintiffs' claim for injunctive relief.  *See* Dkt. No. 105.  On July 16, 2020, this Court issued a 45-page opinion largely denying NSO's initial motion to dismiss and denying its motion to stay.  Dkt. No. 111.  Among other things, the Court held that it had specific personal jurisdiction over NSO.  *Id.* at 18–32.  The Court first concluded that Plaintiffs sufficiently alleged that NSO purposefully directed its conduct to California, based on the uncontroverted allegation that NSO specifically targeted WhatsApp's signaling and relay servers—including servers in California—to transmit malicious code through those servers, and knew that the resulting harm would be suffered in California.  *Id.* at 18–25.

The Court also found that NSO failed to present a compelling case that jurisdiction would be unreasonable.  *Id.* at 28–32.  In particular, the Court considered the seven factors relevant to whether an assertion of jurisdiction would "offend traditional notions of fair play and substantial justice."  *Id.* at 5 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  In conducting this analysis, the Court found that "the burden on plaintiffs to litigate in Israel would be similarly

burdensome" as the burden on NSO to litigate in California, "as [Plaintiffs'] witnesses and evidence are located in California." *Id.* at 29.  And because NSO had already "secured U.S.-based outside counsel and a U.S.-based public relations firm for the express purpose of this lawsuit . . . the burden is somewhat mitigated." *Id.*  The Court also recognized that "California maintains a strong interest in providing an effective means of redress for its residents tort[i]ously injured in California." *Id.* at 30.  Finally, the Court reasoned that "the maintenance of this suit in a foreign country would be inconvenient for plaintiffs." *Id.*  The Court therefore concluded that "[i]n sum, some factors tip in defendants' favor and others tip in plaintiffs' favor," and "in such an instance, a defendant has not carried its burden to present a compelling case that exercising jurisdiction would be unreasonable." *Id.* at 31.[2]

---

[2] The Ninth Circuit unanimously affirmed this Court's denial of NSO's motion to dismiss, which NSO had appealed on different grounds. *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 17 F.4th 930 (9th Cir. 2021).  The U.S. Supreme Court later denied NSO's petition for writ of certiorari. *NSO Grp. Techs. Ltd. v. WhatsApp Inc.*, 143 S. Ct. 562 (Jan. 9, 2023).

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ███████████████████████████████

6       On August 6, 2020, NSO moved to stay pending appeal.  Dkt. No. 117.  On August 20,

7 2020, NSO filed its answer, which included a *forum non conveniens* defense.  Dkt. No 128.  On

8 September 2, 2020, █████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████       On September 10, 2020, Plaintiffs moved to strike Plaintiffs' *forum non conveniens*

12 defense, including because NSO had waived it.  Dkt. No. 140.  The Court subsequently granted

13 NSO's motion to stay pending its appeal from the denial of its motion to dismiss, and denied

14 Plaintiffs' motion to compel as moot.  Dkt. No. 155.  During the stay, the Court administratively

15 terminated NSO's second motion to dismiss and Plaintiffs' motion to strike.  Dkt. No. 160.

16       **D.  The United States Adds NSO to the Entity List**

17       While NSO was pursuing its appeal from the denial of its motion to dismiss, the U.S. De-

18 partment of Commerce ("Commerce Department") added NSO to the federal government's Entity

19 List.  86 Fed. Reg. 60759 (Nov. 4, 2021).  The Entity List "identifies entities for which there is

20 reasonable cause to believe, based on specific and articulable facts, that the entities have been

21 involved, are involved, or pose a significant risk of being or becoming involved in activities con-

22 trary to the national security or foreign policy interests of the United States."  *Id.*  In adding NSO

23 to the Entity List, the Commerce Department noted that "investigative information has shown"

24

25 ───────────

26 [3] ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

that NSO "developed and supplied spyware to foreign governments that used this tool to maliciously target government officials, journalists, businesspeople, activists, academics, and embassy workers."  *Id*.  As a result of its placement on the Entity List, NSO is prohibited from receiving items subject to the Export Administration Regulations ("EAR") unless the exporter secures a license.  *See* 15 C.F.R. § 744.11 (2023).  Any exporter seeking a license to transfer items subject to the EAR to NSO is subject to a presumption of denial.  86 Fed. Reg. at 60760.

1

2

3    **F. This Court Discouraged Further Motions, Set a Trial Date, and Set a Schedule**

4       **for NSO to Move for a Protective Order**

5       At the February 16, 2023 case management conference, the Court made clear that the time

6 for motions directed to the pleadings was over. In response to the suggestion that NSO would

7 refile its second motion to dismiss and Plaintiffs would refile their motion to strike, the Court

8 indicated its skepticism that "the motions . . . should even be entertained by me at this juncture,"

9 and expressed an "interest[] in streamlining the motion practice in this case, given how long it has

10 been pending." Dkt. No. 182-1 Ex. B at 10:19–22. NSO never indicated that it planned to move

11 to dismiss the case in its entirety on *forum non conveniens* grounds. *See* Dkt. No. 163 at 11.

12       Instead, the parties and the Court focused on discovery matters,

13

14

15                In response, the Court allowed NSO to file a motion for a protective

16 order

17

18

19

20                       Plaintiffs opposed NSO's motion on

21 numerous grounds. *See* Dkt. No. 181-2. In Plaintiffs' view, the proper outcome of the motion for

22 a protective order was "an order compelling NSO to provide discovery," and, if NSO refused to

23 produce any documents, "sanctions enforcing that order." *Id*. at 22.[4]

24       Despite moving for a protective order and refusing to produce any documents, NSO has

25

26 [4]

27

28

confirmed some of Plaintiffs' allegations since that motion has been pending. For instance, in

responding to Plaintiffs' requests for admission, ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████

### G. NSO Waits Six More Months to File This Motion

NSO waited more than six months after the February 16, 2023 conference to file the instant

motion. During that time, NSO has aggressively invoked this Court's powers to seek discovery,

which to date has included 178 requests for production and 175 requests for admission.

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ NSO did not apply for a license from the

Commerce Department until February 21, 2023, even though it was aware of the sanctions in place

since November 2021. *See id*. NSO also did not apply for a license from Israeli authorities until

June 8, 2023, despite knowing about its obligations under the DECL from the outset of the case.

*See id*. Furthermore, NSO does not claim that either license has been denied, asserting only that

they have not been granted to date. *See id*.

### LEGAL STANDARD

Dismissal for *forum non conveniens* is an "exceptional tool to be employed sparingly."

*Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). "[A] plaintiff's choice of forum

should rarely be disturbed." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). "[T]he court

may, in the exercise of its sound discretion, dismiss the case" but only "when an alternative forum

has jurisdiction to hear the case, and when trial in the chosen forum would 'establish . . . oppres-

siveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when

1   the 'chosen forum [is] inappropriate because of considerations affecting the court's own adminis-

2   trative and legal problems.'"  *Id.*

3         A defendant must "assert a motion to dismiss for *forum non conveniens* within a reasonable

4   time after the facts or circumstances which serve as the basis for the motion have developed and

5   become known or reasonably knowable to the defendant."  *Chateau Des Charmes Wines Ltd. v.*

6   *Sabate USA, Inc.*, 2003 WL 22682483, at *3 (N.D. Cal. Nov. 10, 2003) (quoting *In re Air Crash*

7   *Disaster Near New Orleans, Louisiana on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir. 1987)).  If

8   a plaintiff has timely moved, courts then employ a two-step analysis in determining whether to

9   dismiss based on *forum non conveniens*.  The defendant must first "satisfy a heavy burden of

10   proof" to establish that there is an adequate alternative forum where the case can be litigated.

11   *Lueck*, 236 F.3d at 1143; *Piper Aircraft*, 454 U.S. at 255 n.22.  Then, the defendant must show that

12   the balance of the applicable private and public factors "is strongly in favor of the defendant."

13   *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) (quoting *Gulf Oil Corp. v. Gilbert*, 330

14   U.S. 501, 508 (1947)).

15   **ARGUMENT**

16   **I.   NSO's Motion Should Be Denied as Untimely**

17         As a threshold matter, NSO waived any defense based on *forum non conveniens*.  Such a

18   motion must be brought "within a reasonable time after the facts or circumstances which serve as

19   the basis for the motion have developed and become known or reasonably knowable to the defend-

20   ant," and failure to do so "should weigh heavily against the granting of the motion."  *Chateau Des*

21   *Charmes Wines Ltd.*, 2003 WL 22682483, at *3; *see also Bryant v. Mattel, Inc.*, 2010 WL 3705668,

22   at *19 (C.D. Cal. Aug. 2, 2010) ("[M]otions to dismiss based on *forum non conveniens* usually

23   should be decided at an early stage in the litigation.").  NSO failed to do so, and its motion should

24   be denied on that basis alone.

25         NSO has been aware of the alleged burdens with litigating in California from the outset of

26   the case.  In fact, it asserted many of the same facts as reasons why it was unreasonable for this

27   Court to exercise jurisdiction.  *See* Dkt. No. 45 at 11–17.  Yet, it failed to assert any defense based

28

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CASE NO. 4:19-CV-07123-PJH

on *forum non conveniens* in either its *first* or its *second* Rule 12(b) motion. *See id.*; Dkt. No. 105.[5]

NSO's failure to raise its *forum non conveniens* defense in its first Rule 12(b) motion to dismiss

prevents it from moving on this issue now. *See* Fed. R. Civ. P. 12(h)(1) (waiving jurisdictional

and venue objections not asserted in initial Rule 12(b) motion); *Sharpe v. Jefferson Distrib. Co.*,

148 F.3d 676, 679–80 (7th Cir. 1998) (finding that forum-selection clause argument fell under

Rule 12(h)(1)); *Kinetic Concepts, Inc. v. Kinetic Concepts, Inc.*, 601 F. Supp. 496, 502 (N.D. Ga.

1985) (defense "analogous to a personal jurisdiction or threshold defense" was waived if not in-

cluded in Rule 12(b) motion).[6] So, too, does its failure to present such a motion after Plaintiffs

moved to strike the *forum non conveniens* defense in NSO's answer, arguing that it had *already*

been waived. Dkt. No. 139-2 at 2. Instead, NSO waited *three* more years, after appeals over

NSO's merits-based derivative immunity defense, ████████████████████████████████████

████████████████████████████, and months of discovery conferences, and even then

only filed this motion six months after this Court instructed that the time for motions directed to

the pleadings was over. *See* Dkt. No. 182-1 Ex. B at 10:19–22 (expressing an "interest[] in stream-

lining the motion practice in this case, given how long it has been pending"). Under these circum-

stances, "[t]he untimeliness of the motion is fatal." *Bryant*, 2010 WL 3705668, at *19 (rejecting

motion to dismiss for *forum non conveniens* filed six years after complaint and on the eve of trial

on untimeliness grounds); *see also Est. of I.E.H. v. CKE Restaurants, Holdings, Inc.*, 995 F.3d

659, 664 (8th Cir. 2021) (reversing dismissal for *forum non conveniens* where "[f]or 18 months,

[defendant] knew the essential facts supporting its motion to dismiss.").

　　　NSO's position that "[r]ecent events," Mot. at 1, justify its belated request for dismissal is

meritless. ████████████████████████████████████████████████████████████████████

---

[5] That omission is not the product of a mistake or oversight: in similar litigation in this district, NSO sought dismissal for *forum non conveniens* at the outset of the case. *See* Mot. to Dismiss at 5–8, *Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-cv-09078-JD (Mar. 3, 2022), Dkt. No. 28.

[6] The Ninth Circuit has not yet decided whether *forum non conveniens* is a defense subject to Rule 12(h)(1). *See, e.g., Moreno v. Omnilife USA, Inc.*, 483 F. App'x 340, 342 (9th Cir. 2012) ("[a]ssuming without deciding that waiver of a right to bring a motion to dismiss for *forum non conveniens* could occur"). Even if not, NSO's delay now extends well beyond omitting the defense from its first Rule 12(b) motion.



NSO's other basis for dismissal—the Commerce Department placing NSO on the Entity List—occurred on November 4, 2021.  Mot. at 3.  NSO waited years before seeking a license from the Commerce Department, only requesting a license in February 2023.  Mot. at 4.  NSO's failure to act and failure to obtain those licenses is not a "new" development justifying dismissal based on burdens NSO knew about for years.

NSO's delay, for what appears to be strategic reasons, belies its claim of inconvenience. "The fact that a party has been subject to ongoing litigation is itself evidence that the forum was 'if not convenient[,] at least workable' for the foreign defendant.  *Bryant*, 2010 WL 3705668, at *19 (quoting *Zelinski v. Columbia 300, Inc.,* 335 F.3d 633, 643 (7th Cir. 2003)); *see also* 11 Charles Alan Wright et al., Federal Practice and Procedure § 3828 (4th ed. 2023) ("If the litigation has progressed significantly in the federal court, a defendant's belated assertion that the forum is not a convenient one is likely to be viewed dimly by the district judge.").  In the nearly four years since Plaintiffs filed their complaint, NSO has hired U.S. counsel, and filed dozens of motions and declarations from senior NSO employees and served extensive discovery on Plaintiffs and third parties.  NSO even appealed to the Ninth Circuit and sought U.S. Supreme Court review—all without claiming that litigating in the United States was vexatious and unduly burdensome.  NSO elected to seek dismissal based on its jurisdiction and immunity defenses, and has only now re-sorted to *forum non conveniens* after those defenses have all been rejected.  Courts do not permit

defendants to test the waters in that way before seeking dismissal on grounds that the forum is purportedly too burdensome.

Moreover, this litigation's steady progress towards a December 2024 trial date undermines a key rationale for dismissal on the basis of *forum non conveniens*. "[T]he purpose of the doctrine is to *limit* the burden of the forum, not multiply the burden of having to re-start litigation in a foreign forum, divide claims, and conduct discovery anew." *Bryant*, 2010 WL 3705668, at *19. Dismissing the case after almost four years, and forcing Plaintiffs to restart in Israel at this point only "promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve." *Chateau Des Charmes Wines*, 2003 WL 22682483, at *3. Plaintiffs have already obtained 11,671 documents from third parties, and produced 6,129 documents to NSO. Moreover, the Court has developed familiarity with both the background of the case, as well as the numerous legal issues that have been raised—including in NSO's pending motion for a protective order. Dismissing the case at this point would only increase the burdens on the parties, not decrease them.

## II.    NSO Has Failed to Show that Israel Is an Adequate Alternative Forum

Even if the Court excuses NSO's improper delay, NSO fails to meet its burden of proving that Israel is an adequate alternative forum. *Lueck*, 236 F.3d at 1143. An alternative forum is adequate only if it is capable of "'provid[ing] the plaintiff with a sufficient remedy for his wrong.'" *Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)). A foreign court is not an adequate alternative forum when the relief available is "so inadequate that it is tantamount to no remedy at all." *Lueck*, 236 F.3d at 1144–45; *see also Ceramic Corp. of Am. v. Inka Mar. Corp. Inc.*, 1 F.3d 947, 949 (9th Cir. 1993) ("[T]he alternative forum must provide some potential avenue for redress."). ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Ninth Circuit has recognized that a foreign court may be inadequate if its policies favor one party over the other. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir. 2006) (recognizing that court "bias" may "provide 'no

12

remedy at all'"); *see also Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G*, 955 F.2d 368, 372 (5th Cir. 1992) (holding that a forum is inadequate if it would "result in unfair treatment" of the plaintiff).  Israel has adopted a policy of prohibiting at least NSO's technical information from disclosure on national security grounds. Dkt. No. 214-3 Ex. B at 1.  Whatever the merits of this policy, and whether or not motivated by any bias, it would render it impossible for Plaintiffs—whose suit takes aim at NSO's core product—to obtain meaningful relief if the case were transferred to Israel.

For example, just three days after this Court denied NSO's motion to dismiss and allowed discovery from NSO, Dkt. No. 111 at 45, ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████

1  ██████████████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████████

7  ███████████████████████████  For example, Amnesty International brought suit in Israel "ar-

8  guing that the Ministry of Defense should revoke NSO's license because of abuses of Pegasus.

9  But just as the case was starting, officials from Amnesty and 29 other petitioners were told to leave

10  the courtroom: a gag order was being placed on the proceedings at the ministry's urging."  Patrick

11  Howell O'Neill, *Inside NSO, Israel's Billion-Dollar Spyware Giant*, MIT Tech. Rev. (Aug. 9,

12  2020).  Months later, the Israeli court dismissed the case.  *Id*.

13      NSO's observation that in other instances Israel is an adequate alternative forum, and that

14  Israel has laws that might provide relief in other circumstances, Mot. at 6–7, is entirely beside the

15  point.  The "court makes the determination of adequacy on a case-by-case basis."  *Nibirutech Ltd*

16  *v. Jang*, 75 F. Supp. 3d 1076, 1082 (N.D. Cal. 2014); *see also Bhatnagar v. Surrendra Overseas*

17  *Ltd.*, 52 F.3d 1220, 1229 (3d Cir. 1995) (cases finding that specific country was adequate alterna-

18  tive forum were "irrelevant to the issue of whether [movant] met its burden of proof on the issue

19  here").[7]  In this specific case, ████████████████████████████████████████████

20  ██████████████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████████

23  ███████████████████████████  That is no remedy at all, and not an adequate alternative to the current

24

---

25  [7] For similar reasons, the Court has not "already determined" that Israel is an adequate alternative

26  forum.  *See* Mot. at 6–7.  As part of one argument Plaintiffs made to establish this Court's personal jurisdiction in opposition to NSO's first motion to dismiss, Plaintiffs bore the burden of showing

27  that Israel was not an available alternative forum.  The Court concluded that Plaintiffs had not carried that burden, Dkt. No. 111 at 31, ████████████████████████████

28  ████████████████████████  Furthermore, on this motion, NSO bears the burden of establishing an alternative forum is available and adequate.  *See Lueck*, 236 F.3d at 1143.

1    litigation. *Cf. Ceramic Corp.*, 1 F.3d at 949 (finding that a foreign court cannot serve as an ade-

2    quate alternative forum if the court would dismiss the action).[8]

3    **III.    Northern District of California Is Not an Unreasonable Forum to Litigate This Case**

4            Even if Israel were an adequate alternative forum—and it is not—NSO has not carried its

5    "heavy burden of proof" of showing that the Northern District of California—Plaintiffs' home

6    forum—is an unreasonable place to litigate the case. *Lueck*, 236 F.3d at 1143.  Plaintiffs' choice

7    of forum "will not be disturbed unless the 'private interest' and the 'public interest' factors strongly

8    favor trial in a foreign country."  *Id.* at 1145.  This Court has already determined that they do not,

9    *see* Dkt. No. 111 at 31, and NSO has provided no reason to reach a different conclusion here.

10           **A.  This Court Has Already Rejected NSO's Contentions Regarding the**

11               **Inconvenience of this Forum**

12           Nearly all NSO's arguments about the inconvenience of this forum have already been con-

13   sidered and rejected by this Court.  In connection with NSO's motion to dismiss, this Court con-

14   sidered seven factors bearing on whether exercising personal jurisdiction over NSO was unreason-

15   able.  *See* Dkt. No. 111 at 28 ("(1) the extent of the defendants' purposeful injection into the forum

16   state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the

17   conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating

18   the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the

19   forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alter-

20   native forum"); *see also* Dkt. No. 45 at 16–18.

21           The Court concluded that "some factors tip in defendants' favor and others tip in plaintiffs'

22   favor," and therefore they did not "present a compelling case that exercising jurisdiction would be

23   unreasonable."  Dkt. No. 111 at 28–31.  Moreover, as for the factors that overlap with the *forum*

24

25   _____

26   [8] The now-dismissed lawsuits in Israel filed against Plaintiffs do not support NSO's position. *See* Mot. at 6 n.6.  That litigation was brought *against* Plaintiffs by former and current NSO employees

27   seeking reinstatement of their personal Facebook and Instagram accounts.  *See* Declaration of Ronald A. Lehmann in Supp. of Pls.' Opp. to Mot. to Dismiss ¶¶ 3–6. ██████████████████

28   ████████████████████████████████████████████████████████████████████

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CASE NO. 4:19-CV-07123-PJH

*non conveniens* analysis, the Court found that two factors favored jurisdiction—California's interest in adjudicating the dispute, and the importance of California to Plaintiffs' interest in convenient and effective relief.  *Id*. at 28–29.  And it found that a third factor was neutral—the most efficient judicial resolution of the controversy.  *Id.*  The only overlapping factor favoring NSO—that Israel was an alternative forum—

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

It necessarily follows that the very same factors cannot "strongly favor trial in a foreign country," as required to disturb Plaintiffs' choice to proceed in their home forum.  *Lueck*, 236 F.3d at 1145.  The U.S. Supreme Court has observed that the personal jurisdiction and *forum non conveniens* analyses overlap to a substantial degree, so "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."  *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 114 (1987); *see also Pepper, N.A. v. Expandi Inc.*, 2015 WL 7720922, at *5 (N.D. Cal. Nov. 30, 2015) (finding "that California is an appropriate forum for many of the same reasons that personal jurisdiction is satisfied").  As explained below, the Court's prior analysis maps onto the *forum non conveniens* factors, and NSO fails to show that any new facts render California an inappropriate forum for this litigation.

**B.  The Private Factors Counsel Against Dismissal**

All the private interest factors still support the Court's initial conclusion that jurisdiction was not unreasonable.  These factors include "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Lueck*, 236 F.3d at 1145.  NSO cannot show that a single factor strongly favors litigating this case in Israeli courts instead.

1   ***Access to physical evidence and other sources of proof.*** ████████████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████ "'Any court . . . will

4   necessarily face some difficulty in securing evidence from abroad,' but these complications do not

5   necessarily justify dismissal." *Bos. Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1208

6   (quoting *Tuazon*, 433 F.3d at 1181).  While NSO has dedicated hundreds of pages of briefing to

7   the problems that it faces litigating in California, those problems are likely to continue in Israel.

8   *See Cooper v. Tokyo Elec. Power Co., Inc.*, 166 F. Supp. 3d 1103, 1134 (S.D. Cal. 2015), *aff'd*,

9   860 F.3d 1193 (9th Cir. 2017) (finding this factor neutral where "many of the obstacles [defendant]

10  identifies would be present no matter where the litigation takes place").  And it created many of

11  the problems of which it now complains.

12   ████████████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████

28

Second, the barriers imposed by the DECL will remain even if the case is moved to Israel. The DECL prohibits any transfer "to a person who is neither an Israeli citizen or an Israeli resident, or to a foreign corporation," even if the transfer takes place in Israel. Mot. at 9. Again, this restriction will have the same force regardless of whether the litigation takes place in Israel or in California, and would still require a license before NSO could produce the documents to Plaintiffs. Moreover, the Israeli government has granted licenses in the past for NSO to market and sell its technology all around the world, including to the United States. Declaration of Antonio J. Perez-Marques in Supp. of Pls.' Opp. to Mot. to Dismiss ("Perez-Marques Decl.") Ex. A; Dkt. No. 45-11 ¶¶ 6–9. There is no reason to believe that the chance of NSO obtaining a license has anything to do with where this litigation is proceeding, as opposed to who will be receiving the documents.

Third, transferring this litigation to Israel will not solve any of the difficulties arising from U.S. sanctions against NSO. NSO acknowledges that its placement on the Entity List prohibits *any U.S. entity* from exporting certain items to NSO, including "hardware, software, technology, and related technical information." Mot. at 3. That necessarily includes Plaintiffs. According to NSO, these regulations restrict even its U.S. counsel from "shar[ing] with NSO and Q Cyber [a] substantial amount of technical discovery received from Plaintiffs or third parties," including information about NSO's own technology. Mot. at 13. If true—which NSO has not substantiated— the very same restrictions would apply if the litigation were proceeding in Israel, because *Plaintiffs* could not produce their evidence concerning NSO's technological exploits directly to NSO. Indeed, the restrictions would be even less manageable and more burdensome in Israel, because at least in the United States, Plaintiffs can produce the documents to NSO's U.S. counsel on an attorneys'-eyes-only basis, and NSO can retain U.S. experts to review those materials as its proxy.

██████████████████████████████████████████████

██████████████████████████████████████████████

NSO also earned its spot on the Entity List through its own misconduct. It would be grossly unfair to permit NSO to use those self-imposed restrictions to force Plaintiffs into a forum where they not only still could not obtain NSO's documents, but also could not use their own documents to hold NSO to account, and as noted above have no realistic prospect of obtaining relief.

18

1    ***Residence of the parties and the witnesses.***  The Court has already ruled that "defendants'

2    evidence and witnesses are located in Israel and plaintiffs' evidence and witnesses are in Califor-

3    nia," meaning that "[t]his factor is neutral especially given the advances of modern technology."

4    Dkt. No. 111 at 30.  This conclusion aligns with a string of cases finding that the residence of the

5    parties and the witnesses does not favor either side in a cross-border litigation.  *See, e.g.*, *Cooper*,

6    166 F. Supp. 3d at 1133 ("Each side has established that it would be inconvenient for them to

7    conduct proceedings in the opposite country.  However, the Court does not find . . . this factor to

8    clearly weigh in favor of one side or the other.").

9        In arguing otherwise, NSO presents a one-sided version of the case.  ██████████████

10   ████████████████████████████████████████████████████████████████████████████████

11   ██████████████████████████████████  Documents obtained in discovery tell a different story.

12   NSO and its affiliate Westbridge Technologies marketed Pegasus in the United States and tested

13   NSO's products, including Pegasus, on phones within the United States.  *See* Dkt. No. 182-1 Ex.

14   U.  ████████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████  Dkt. No. 208 at 4.

17   And as the Court recognized in denying NSO's motion to dismiss, and as Plaintiffs have reason to

18   believe discovery (including Plaintiffs' pending motion to obtain discovery from Amazon Web

19   Services, Dkt. No. 208) will confirm, NSO specifically "sought out specific servers—including

20   servers in California—in order to transmit malicious code through those servers."  Dkt. No. 111 at

21   22.

22       NSO is also incorrect that "[t]he most significant documents and witnesses relevant to

23   Plaintiffs' claims are thus located in Israel."  Mot. at 7–8.  While NSO's documents are certainly

24   important and should be produced, Plaintiffs witnessed NSO's attack on their own computers in

25   the United States.  Plaintiffs' documentation of those attacks and their witnesses are also among

26   the most significant documents and witnesses in the case, and that evidence is primarily in the

27   United States.  *See Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1230 (9th Cir. 2011)

28   (reversing dismissal on *forum non conveniens* grounds when district court "failed to consider how

19

critical such locally-based evidence is to the litigation"); *see also Salebuild, Inc. v. Flexisales, Inc.*, 633 F. App'x 641, 643 (9th Cir. 2015) (reversing dismissal on *forum non conveniens* grounds for failure to consider that injury was suffered in the United States, among other factors).

**Forum's convenience to the litigants.**  NSO claims that "California is not convenient for Defendants or their numerous witnesses."  Mot. at 8.  "This reasoning, however, fails to consider the other side of the ledger." *Carijano*, 643 F.3d at 1230; *see also Wood*, 588 F.3d at 1208 ("These same considerations would apply, however, if [plaintiff] were to bring his case in [the foreign court].").  The Court has already found that the convenience factor is neutral, because "the burden on plaintiffs to litigate in Israel would be similarly burdensome" to NSO's burden in litigating in California.  Dkt. No. 111 at 29; *id*. at 30 ("[T]he maintenance of this suit in a foreign country would be inconvenient for plaintiffs.").

The inconvenience resulting from the need to translate documents is also the natural consequence of litigation between two parties from different countries.  For this reason, the Ninth Circuit has found that the need to translate documents does not favor either party, as "the inconvenience and costs of translation for live witness testimony would likely affect both parties in either forum." *Wood*, 588 F.3d at 1210; *accord Cooper*, 166 F. Supp. 3d at 1135.[9]  The course of discovery thus far also further weakens NSO's arguments: Plaintiffs have obtained third-party discovery showing NSO marketing its business and spyware in English, while NSO has yet to produce a single document—in Hebrew or otherwise.

**Unwilling witnesses.**  Next, NSO has not satisfied its burden of showing that litigating in Israel will increase the willingness of any witnesses to testify.  NSO's initial focus on this Court's inability to subpoena witnesses in Israel is a red herring.  In considering this factor, "the initial question is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify." *Carijano*, 643 F.3d at

---

[9] The sole case cited by NSO on this point does not carry the weight that NSO places upon it.  Mot. at 8–9.  In *MGA Entertainment Inc. v. Deutsche Bank AG*, the parties disputed whether the need to translate documents would materially change in a new forum, and the court did not even mention translation issues in ordering dismissal under *forum non conveniens*.  2012 WL 12892902, at *5 (C.D. Cal. Feb. 27, 2012).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CASE NO. 4:19-CV-07123-PJH

1231.  NSO makes no showing as to that issue.  It merely claims that 16 of its 23 document custo-

dians—none of whom NSO identified in its initial disclosures—are former employees.  *See* Mot.

at 11.  NSO describes these employees as "Israelis" but does not say where they are located.  *Id*.

NSO provides no evidence that those witnesses would be unwilling to testify.  It also fails to ex-

plain who those witnesses are, why they are significant witnesses, or why the substance of their

testimony could not be covered by a Rule 30(b)(6) deposition of NSO if necessary.  The Ninth

Circuit found that this factor cuts against dismissal when a defendant "provided very little infor-

mation that would have enabled the district court to understand why various witnesses were mate-

rial to his defense."  *Wood*, 588 F.3d at 1210.

NSO also concedes that at least seven document custodians are still current employees, and

thus their attendance at a deposition could be required as part of their employment.  Indeed, NSO

is obligated to provide the testimony of its senior management under threat of sanctions.  *See* Fed.

R. Civ. P. 37(d)(1)(A)(i) (providing for sanctions where "a party's officer, director, or managing

agent . . . fails, after being served with proper notice, to appear for that person's deposition"); *see

also King.com Ltd. v. 6 Waves LLC*, 2014 WL 1340574, at *7 (N.D. Cal. Mar. 31, 2014) (finding

that factor weighed against dismissal when important witnesses were "employed by defendants in

managerial and directorial roles").  Any newfound concerns that NSO has about sending current

employees to the United States are also disingenuous.  Discovery thus far has shown that NSO

sent its agents (some of whom are U.S. residents) to sell spyware in the United States.  *See* Perez-

Marques Decl. Ex. B.  NSO's "efforts to minimize [its] relationship with the forum state *after* the

filing of this action carry little weight."  *Ridgway v. Phillips*, 383 F. Supp. 3d 938, 947 (N.D. Cal.

2019).

NSO also overstates the difficulty of compelling testimony from Israeli witnesses, to the

extent that ever becomes necessary.  Israel is a party to the Hague Convention on the Taking of

Evidence Abroad in Civil or Commercial Matters, which allows U.S. courts to obtain documents

and testimony from Israeli witnesses.  U.S. courts have employed those procedures to successfully

obtain testimony from Israeli witnesses.  In fact, a court in this district recently issued a letter

requesting an Israeli witness to sit for a deposition in Israel.  *See Finjan, Inc. v. Cisco Sys., Inc.*,

2019 WL 667766, at *1, 5 (N.D. Cal. Feb. 19, 2019); *see also Est. of Klieman v. Palestinian Auth.*, 272 F.R.D. 253, 255–56 (D.D.C. 2011).  NSO and its declarant acknowledge such depositions are possible.  Mot. at 11; Dkt. No. 214-3 ¶ 11.  Any difficulty in compelling testimony is speculative at best, and does not strongly favor restarting this suit in Israel.

> ***Cost of bringing witnesses to trial.***  As the Court has already recognized, the cost of Plaintiffs bringing witnesses to Israel would be equivalent to the cost of NSO bringing witnesses to California.  *See* Dkt. No. 111 at 29; *see also CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 965–66 (C.D. Cal. 2011) (finding that factor did not favor dismissal because "the Court rejected those arguments when it denied [defendant's] motion to dismiss").  "Because of the nature of international litigation, each side would incur expenses related to traveling and procuring witnesses in either forum."  *Cooper*, 166 F. Supp. 3d at 1135.  Furthermore, "in this age of robust video conferencing technology, one would expect relative travel costs to be a non-issue, regardless of the precise number of witnesses present in either locale."  *Salebuild*, 633 F. App'x at 643 (quoting *In re Herbert*, 2014 WL 1464837, at *6 (D. Haw. Apr. 14, 2014)).  Given that both parties face comparable costs in transporting witnesses, this factor does not favor dismissal.

NSO offers no reason why this factor is not neutral, or even favors Plaintiffs.  Though Plaintiffs have corporate offices in Israel, most of their witnesses—the Meta employees that identified the unauthorized access and attributed it to NSO—reside outside of Israel.  By contrast, Omri Lavie, NSO's current owner and CEO, resided in the United States.  Dkt. No. 182-1 Ex. Q.  NSO affiliates Terry DiVittorio and Josh Shaner currently reside in the United States, and apparently even took trips to California to market NSO's products.  *See* Perez-Marques Decl. Ex. B.  And while NSO asserts that it is likely to have more witnesses than Plaintiffs, the record tells a different story.  Plaintiffs disclosed more individuals on their initial disclosures than NSO, which has consistently predicted a brief trial.  *See* Dkt. No. 76 at 14; Dkt. No 163 at 24.  And unlike NSO's witnesses, Plaintiffs' witnesses—both current and former—have shown a willingness to participate in this case.  There is no suggestion that NSO will produce *any* witnesses, even if the courtroom is nearby.  *See Wood*, 588 F.3d at 1210.

22

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER**
**CASE NO. 4:19-CV-07123-PJH**

1      ***Enforcement of judgment.***  NSO fails to raise any serious concerns about the enforceabil-

2      ity of a judgment against NSO.  This Court has already concluded it can enter an enforceable

3      judgment, because it held that NSO is subject to personal jurisdiction.  *See* Dkt. No. 111 at 15–32.

4      NSO argues that Israel may not recognize a final judgment, but NSO makes no effort to explain

5      why Plaintiffs would even need to enforce a final judgment in Israel.  *See HSM Holdings, LLC v.*

6      *Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at \*8 (S.D.N.Y. Mar. 10, 2021) (finding that the en-

7      forceability of judgment does not weigh against personal jurisdiction "particularly in the absence

8      of any objections from the Plaintiff, the party that would be affected by any difficulties in enforce-

9      ment").  Plaintiffs primarily seek injunctive relief, which requires only personal jurisdiction over

10     NSO.  Moreover, NSO has substantial business interests in the United States and around the world,

11     and the sole shareholder of its parent company is based in Luxembourg.  *See* Perez-Marques Decl.

12     Ex. C at 58.  NSO has not shown that those U.S. and international entities—which, to the extent

13     not located in the United States, may be subject to U.S. jurisdiction—would not abide by an in-

14     junction prohibiting them from assisting in NSO's unlawful conduct.  *See* Fed. R. Civ. P. 65(d).

15     Nor has NSO shown that it has no assets outside of Israel against which Plaintiffs could enforce

16     any money judgment.

17         Even if Plaintiffs do have to seek recognition of their judgment in Israel, NSO overstates

18     the difficulty of doing so.  At least one federal district court has accepted "the idea that a judgment

19     from this court would be difficult to enforce in Israel is . . . virtually inconceivable."  *In re Teva*

20     *Sec. Litig.*, 512 F. Supp. 3d 321, 354 (D. Conn. 2021), *reconsideration denied*, 2021 WL 1197805

21     (D. Conn. Mar. 30, 2021) (citation omitted).  If, as NSO suggests, Israeli courts cannot be trusted

22     to enforce a valid judgment entered against it by this Court, how could this Court reasonably expect

23     the Israeli courts to provide a remedy to Plaintiffs if it were to dismiss for *forum non conveniens*?

24     NSO cannot have it both ways.

25         **C.  The Public Factors Counsel Against Dismissal**

26         The public factors do not strongly favor dismissal either.  They include: (1) the local inter-

27     est in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts

28

23

**Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to Motion for Protective Order**
**Case No. 4:19-cv-07123-PJH**

1    and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a par-

2    ticular forum. *Carijano*, 643 F.3d at 1232. None supports NSO's bid for dismissal.

3          ***Local interest in the lawsuit.*** This Court already recognized California's "strong interest

4    in providing an effective means of redress for its residents tort[i]ously injured in California." Dkt.

5    No. 111 at 30. Furthermore, the U.S. "public has an interest in ensuring that computers are not

6    accessed without authorization." *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765,

7    785 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019). The Ninth Circuit has held that this

8    factor "ask[s] only if there is an identifiable local interest in the controversy, not whether another

9    forum also has an interest." *Tuazon*, 433 F.3d at 1182; *accord Wood*, 588 F.3d at 1212; *Carijano*,

10   643 F.3d at 1232. "We do not suggest that California's interest in this controversy must somehow

11   be unique or not shared with any other forum." *Wood*, 588 F.3d at 1212. Thus, the fact that Israel

12   may also have an interest does not render California an inappropriate forum.

13         *Facebook, Inc. v. Studivz Ltd.*, 2009 WL 1190802 (N.D. Cal. May 4, 2009), is not to the

14   contrary. That case involved trade dress infringement by a German company that had launched in

15   Germany "an illegal 'knock-off' version of Facebook's popular social utility website." *See id.* at

16   *1. Thus, while Plaintiffs had some relevant U.S. witnesses, that action "appear[ed] to turn prin-

17   cipally on conduct that occurred in Germany." *Id.* at *3. Not so here, where NSO engaged in

18   unauthorized cyber intrusions on servers in California that Plaintiffs captured and documented in

19   the United States. More importantly, the crucial factor driving the *Studivz* court's analysis was

20   that "Facebook currently is litigating an action in Germany that is extremely similar to the instant

21   action." *Id.* at *2. No such similar litigation exists in Israel.

22         ***Court's familiarity with governing law.*** The parties agree that U.S. law—both federal and

23   state—governs Plaintiffs' claims against NSO. *See* Mot. at 15–16. And NSO does not and cannot

24   dispute that this Court has a greater familiarity with federal and California law, so this factor

25   weighs heavily against dismissal. *See Bluestar Genomics v. Song*, 2023 WL 4843994, at *30 (N.D.

26   Cal. May 25, 2023) ("Because this Court has greater familiarity with California law than a court

27   in the United Kingdom, and because no party argues that this Court would have to apply foreign

28   law if this case were litigated here, this factor weighs against dismissal."); *accord Cooper*, 166 F.

24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CASE NO. 4:19-CV-07123-PJH

Supp. 3d at 1136.  Even if Israeli courts can "interpret and apply" U.S. law, Mot. at 16, their

familiarity with it pales in comparison to this Court's.

**Burden on local courts and juries.**  California maintains a substantial interest in this case, and this Court is well-equipped to handle the trial.  While NSO trots out a parade of horribles that it claims will accompany such a trial, Mot. at 16, it does not address how any of these inconveniences would be reduced if the case were transferred to Israel. ███████████

███████████████████████████████████████████████████

███████████████████████████████████ What's more, courts in this

district are hearing several cases against NSO,[10] and routinely hear cases involving Plaintiffs.

**Congestion in the court.**  Regardless of any alleged congestion in the Northern District of California, NSO has failed to show that the case will reach trial any sooner in Israel.  "The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984).  Here, the Court has resolved the threshold legal issues and set a trial date in Oakland for December 2, 2024, which is just over one year away.  *See* Dkt. No. 168. Crediting the unsourced assertions of NSO's declarant, and assuming Israel does not shut the case down as it has in previous cases against NSO, this litigation would take three times as long to reach trial if it were restarted in the Israeli court system.  Mot. at 16; Dkt. No. 214-3 ¶ 14.

**Costs of resolving a dispute unrelated to a particular forum.**  NSO concedes this factor is inapplicable.  "[T]here will be no cost in resolving a case unrelated to the forum—the case is related to [California] because [Plaintiffs] reside[] there" and their computers were accessed in this district.  *Tuazon*, 433 F.3d 1163, 1182 (9th Cir. 2006).

**CONCLUSION**

For the foregoing reasons, NSO's motion to dismiss for *forum non conveniens* should be denied.

---

[10] *See, e.g.*, *Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 5:21-cv-9078 (N.D. Cal.); *Corallo v. NSO Grp. Techs. Ltd.*, No. 3:22-cv-5229 (N.D. Cal.); *Dada v. NSO Grp. Techs. Ltd.*, No. 3:22-cv-7513 (N.D. Cal.).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CASE NO. 4:19-CV-07123-PJH

1

Dated:  September 29, 2023

2

DAVIS POLK & WARDWELL LLP

3

4

By:  /s/ Antonio J. Perez-Marques

Greg D. Andres

5

Antonio J. Perez-Marques
Craig T. Cagney

6

(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP

7

450 Lexington Avenue

8

New York, New York 10017
Telephone: (212) 450-4000

9

Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com

10

antonio.perez@davispolk.com
craig.cagney@davispolk.com

11

12

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP

13

1600 El Camino Real

14

Menlo Park, California 94025
Telephone: (650) 752-2000

15

Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com

16

*Attorneys for Plaintiffs WhatsApp LLC and*

17

*Meta Platforms, Inc.*

18

19

20

21

22

23

24

25

26

27

28