JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
  acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES
LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S REPLY ISO MOTION TO DISMISS FOR *FORUM NON CONVENIENS***<br><br>Date:  November 2, 2023<br>Time:  1:30 p.m.<br>Ctrm:  3<br><br>Action Filed:  10/29/2019 |

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ............................................................................................... 1

II. NSO'S MOTION IS TIMELY ........................................................................... 1

III. ISRAEL IS AN ADEQUATE ALTERNATIVE FORUM ......................................... 4

IV. WHETHER PERSONAL JURISDICTION EXISTS OVER NSO IS IRRELEVANT. ............................................................................................................................ 7

V.  THE PRIVATE FACTORS FAVOR DISMISSAL ..................................................... 7

VI. THE PUBLIC FACTORS FAVOR DISMISSAL ..................................................... 13

VII. CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Dredging Co. v. Miller*,
    510 U.S. 443 (1994)............................................................................................................7

*Am. Home Assurance Co. v. TGL Container Lines, Ltd.*,
    347 F. Supp. 2d 749 (N.D. Cal. 2004) ................................................................................2

*Apple Inc. v. NSO Grp. Techs. Ltd.*,
    No. 3:21-cv-09078-JD (N.D. Cal. Sept. 26, 2023) .............................................................4

*Asahi Metal Indus. Co. v. Superior Ct.*,
    480 U.S. 102 (1987).............................................................................................................7

*Bos. Telecommcn's Grp. v. Wood*,
    588 F.3d 1201 (9th Cir. 2009) ...........................................................................................11

C.A. 2401-12-18 Elaziz v. NSO Group et al.; C.A. 61866-08-18 Una v. NSO
    Group et al..........................................................................................................................5

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) .................................................................................. passim

*Ceramic Corp. of Am. v. Inka Mar. Corp.*,
    1 F.3d 947 (9th Cir. 1993) ..................................................................................................5

*Chateau des Charmes Wines Ltd. v. Sabaté USA, Inc.*,
    2003 WL 22682483 (N.D. Cal. Nov. 10, 2003) ..............................................................2, 3

*Duha v. Agrium, Inc.*,
    448 F.3d 867 (6th Cir. 2006) ............................................................................................12

*Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*,
    955 F.2d 368 (5th Cir. 1992) ..............................................................................................5

*Facebook, Inc. v. Studivz Ltd.*,
    2009 WL 1190802 (N.D. Cal. May 4, 2009) ...............................................................10, 13

*Finjan, Inc. v. Cisco Sys., Inc.*,
    2019 WL 667766 (N.D. Cal. Feb. 19, 2019) ....................................................................12

*Gutierrez v. Adv. Med. Optics, Inc.*,
    640 F.3d 1025 (9th Cir. 2011) ............................................................................................5

*Interface Partners Int'l Ltd. v. Hananel*,
    575 F.3d 97 (1st Cir. 2009) ...............................................................................................12

*Kisano Trade & Inv. Ltd. v. Lemster*,
　737 F.3d 869 (3d Cir. 2013)..................................................................................................11

*Lueck v. Sundstrand Corp.*,
　236 F.3d 1137 (9th Cir. 2001) ............................................................................................5, 9

*MGA Ent. Inc. v. Deutsche Bank AG*,
　2012 WL 12892902 (C.D. Cal. Feb. 27, 2012).....................................................................11

*Pepper, N.A. v. Expandi Inc.*,
　2015 WL 7720922 (N.D. Cal. Nov. 30, 2015) ........................................................................7

*Piper Aircraft Co. v. Reyno*,
　454 U.S. 235 (1981).................................................................................................5, 10, 11

*Salebuild, Inc. v. Flexisales, Inc.*,
　633 F. App'x 641 (9th Cir. 2015) .........................................................................................10

*Sussman v. Bank of Israel*,
　801 F. Supp. 1068 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993) ...........................5, 6, 7

*Tuazon v. R.J. Reynolds Tobacco Co.*,
　433 F.3d 1163 (9th Cir. 2006) ............................................................................................5, 7

*Yavuz v. 61 MM, Ltd.*,
　576 F.3d 1166 (10th Cir. 2009) ..............................................................................................2

**Statutes**

Cal. Civ. Proc. Code § 1716 ........................................................................................................13

**Other Authorities**

14D Fed. Prac. & Proc. Juris. § 3828 & n.30 (4th ed.)..................................................................2

Rule 3 ............................................................................................................................................6

Rule 12(h) .....................................................................................................................................2

## I. INTRODUCTION

Plaintiffs do not dispute the core premise of NSO's motion—that the combination of U.S. and Israeli restrictions have severely hampered NSO's ability to defend a lawsuit in the United States. Instead, in an attempt to capitalize on those restrictions, Plaintiffs insinuate that this Court should not trust the Israeli judiciary and speculate that NSO is somehow dictating policy to the Israeli courts and Israel's executive branch. But the uncontroverted evidence establishes the contrary. Ultimately, the opposition reveals Plaintiffs' true intent—to attempt to obtain judgement by default by forcing litigation in a forum where NSO cannot meaningfully defend itself.

None of Plaintiffs' arguments has merit. *First*, Plaintiffs previously abandoned their timeliness objections, and NSO brought its motion within a reasonable time after learning the relevant facts. *Second*, Plaintiffs have produced no evidence that Israel is an inadequate forum, and their unsupported accusations of bias cannot establish otherwise. *Third*, NSO is not barred from asserting a *forum non conveniens* defense simply because the Court concluded that personal jurisdiction may exist. *Fourth*, Plaintiffs do not rebut the core of NSO's motion: that the private factors strongly favor dismissal because NSO cannot adequately defend itself in this forum. Plaintiffs' primary response—that they would face some lesser burdens if required to litigate in Israel—is not sufficient to compel NSO to litigate in a forum where it cannot produce documents or witnesses in its defense. Accordingly, this case should be dismissed in favor of a suit in Israel.

## II. NSO'S MOTION IS TIMELY

As a threshold matter, Plaintiffs previously abandoned any argument that NSO's *forum non conveniens* defense is untimely. NSO asserted a defense of *forum non conveniens in* its answer. (Dkt. 128 at 10:7-14.) Plaintiffs moved to strike the defense based on many of the same arguments raised in the opposition. (Dkt. 140 at 8:16-10:13.) The motion to strike was terminated when the case was stayed pending appeal. At the February 2023 case management conference, Plaintiffs agreed that their motion to strike would not be refiled and that "those defenses could be explored [in discovery] and then addressed on the merits." (Dkt No. 182-1 Exh. B ("Hearing Tr.") at 11:25-12:16.) By agreeing that NSO's *forum non conveniens* defense should be resolved on its merits, Plaintiffs abandoned their timeliness arguments and cannot reassert them now.

1   Even had Plaintiffs not waived their procedural arguments, those arguments are meritless. A *forum non conveniens* defense cannot be waived under Rule 12(h), and there is "generally no time limit on when a motion to dismiss for forum non conveniens must be made." 14D Fed. Prac. & Proc. Juris. § 3828 & n.30 (4th ed.); *accord Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F. Supp. 2d 749, 765 (N.D. Cal. 2004); *Chateau des Charmes Wines Ltd. v. Sabaté USA, Inc.*, 2003 WL 22682483, at *3 (N.D. Cal. Nov. 10, 2003). Courts "uniformly recognize" that "an objection on *forum non conveniens* grounds is not waived by a defendant failing to raise the issue in its first responsive pleading." *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173 (10th Cir. 2009).[1] At most, a *forum non conveniens* defense need only be brought "within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable." *Chateau Des Charmes Wines*, 2003 WL 22682483, at *3. And even then, untimeliness is merely one factor to be weighed. *Id.*

Contrary to Plaintiffs' distortions of the relevant timeline, NSO brought this motion promptly after it became clear that U.S. and Israeli law would prevent NSO from defending itself.

*First*, the constraints caused by U.S. export controls were not ripe until recently. NSO was placed on the Entity List while this matter was stayed from September 2020 through early February 2023. As soon as the stay was lifted and discovery began, NSO's counsel applied for relief from U.S. export restrictions. (Akro Decl. ¶ 2.) That application was returned without action on April 20, 2023. (*Id.*) Subsequent attempts to negotiate a license have not succeeded, amounting to a denial. (*Id.*) These issues were clearly not ripe earlier in the matter. Plaintiffs acknowledge as much by suggesting that NSO should have waited to bring its motion until all of its license applications are formally denied. (Opp. 8:20-21.) Plaintiffs cannot coherently argue that NSO's motion is both premature *and* unreasonably late.

*Second*, the extent of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ did not become clear until recently. Earlier this year, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*E.g.*, Dkt.

---

[1] Plaintiffs admit that none of their authorities address *forum non conveniens*. (Opp. 10:2-8.)

184-3 ¶ 7; Dkt. 205-1 ¶ 7.) ███

███ (Dkt. Nos. 215-9, 215-10.)[2] Contrary to what NSO had hoped, ███

███ (Blecher Decl. Exh. C ¶ 4.) ███

*Third*, with respect to Israeli export restrictions, Israel has required NSO to specify the materials requested for export. (*See* ECF No. 45-12 ("DECL") § 11 (permitting regulator to limit licenses to "specific activities, transactions, equipment, know-how or services"). The scope of NSO's production obligations is not yet clear, given its pending motion for a protective order and that written discovery is nowhere near complete. Nonetheless, to avoid further delay, NSO applied for a license on June 8, 2023, as soon as it was able ███ (Gelfand Decl. ¶ 4.). That license has not been granted. (*Id.*) Plaintiffs suggest the license has not formally been denied, but a lengthy period of inaction, at a minimum, makes doubtful any meaningful license will be granted or, if it ever is, what limits would be placed upon it.

*Fourth*, NSO's e-discovery vendor applied for a U.S. export license on May 26, 2023, almost immediately ███ (Akro Decl. ¶ 3.) Thus far, that license has not been granted. (*Id.*) Plaintiffs ignore this point.

Accordingly, NSO brought this motion as soon as it became clear that its various license applications have not been—and might never be—granted. The motion is thus timely.[3] None of Plaintiff's remaining arguments proves otherwise.

The Court did not impose a bar to bringing further dispositive motions. In its February

---

[2] The unredacted versions appear at Dkt. 214-3 ("Blecher Decl.") Exhs. C, D.
[3] *See Chateau Des Charmes Wines*, 2003 WL 22682483, at *3 (finding motion filed two years after inception of litigation timely because most of the intervening period was "consumed by appellate proceedings" and the motion was filed within several months of need becoming clear).

1  2023 case management statement, NSO indicated that it may need to file one or more additional
2  dispositive motions, including a motion based on the pleadings. (Dkt. 163 at 11:5-7.) In response,
3  the Court did not restrict the parties from filing any particular type of dispositive motion. (Dkt.
4  168 at 2:11-13; Hearing Tr. 45:13-16.) Nor did the Court otherwise bar the parties from filing
5  additional motions. Rather, the Court expressed a general interest in streamlining motions practice
6  while determining whether to reactivate two previously filed motions. (Hearing Tr. 6:11-12:16.)

7  Moreover, contrary to Plaintiffs' suggestion, NSO asserted early on that "litigating in the
8  United States was vexatious and unduly burdensome." NSO included *forum non conveniens* as a
9  defense in its Answer on August 20, 2020. (Dkt. 128 at 10:7-14.) The full extent of the burden,
10 however, was not apparent until discovery commenced and it became clear NSO would not receive
11 any substantial relief from conflicting legal obligations. The *Apple* litigation does not prove
12 otherwise. While NSO made certain *fourm non conveniens* arguments in its initial motion to
13 dismiss in that matter, it did not raise in that court proceeding the arguments asserted in this motion
14 until late last month. (*Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-cv-09078-JD (N.D. Cal. Sept.
15 26, 2023), Dkt. 65.)

16 Finally, the restrictions facing NSO have prevented any "steady progress towards a
17 December 2024 trial date." (Opp. 12:3-13.) Plaintiffs acknowledge that NSO has yet to produce
18 documents or respond to interrogatories due to the prohibitions placed upon it. (Opp. 11:5-6.)
19 Plaintiffs tout their own document productions, but they have produced almost none of *their own*
20 documents to NSO. The documents Plaintiffs reference consist almost entirely of documents
21 received from third parties and forwarded on to NSO. Plaintiffs also fail to explain why the
22 documents collected from third parties could not be used in litigation in Israel. Accordingly, there
23 would be very little burden associated with refiling this litigation in Israel.

24 **III.   ISRAEL IS AN ADEQUATE ALTERNATIVE FORUM**

25 Israel qualifies as an adequate alternative forum—a test the Ninth Circuit has described as
26 "easy to pass." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1226 (9th Cir. 2011).
27 Plaintiffs cannot (and do not) dispute that Israel satisfies the threshold requirements of an adequate
28 alternative forum. Instead, Plaintiffs baselessly accuse the Israeli judiciary of being so biased that

it cannot be trusted to evaluate their claims. But because U.S. courts should avoid unnecessary condemnations of other nations' courts and legal systems, *id.*, arguments based on alleged corruption or bias do "not enjoy a particularly impressive track record," particularly if the forum in question (like Israel) has repeatedly been found adequate in "a long list of cases," *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 & n.7 (9th Cir. 2006).[4] Litigants asserting a bias argument must make a "powerful showing" that "a legal system is so fraught with corruption, delay and bias as to provide 'no remedy at all.'" *Id.* at 1179.[5] Any claim of bias must include "specific evidence," not generalized concerns or anecdotes. *Carijano*, 643 F.3d at 1226.

Plaintiffs present no such specific evidence. It has long been recognized that Israel's judicial branch is independent from its executive branch. *E.g.*, *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1077 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993). Furthermore, numerous cases have found Israel to be an adequate alternative forum. (Mot. 6:23-7:10.) Such repeated affirmations of adequacy rebut Plaintiffs' claims of inadequacy. *Tuazon*, 433 F.3d at 1179 & n.7; *accord Lueck*, 236 F.3d at 1145. Indeed, the Israeli government has not prevented suits against NSO from proceeding in Israel. Those suits have not been reflexively dismissed by Israeli courts— which Plaintiffs' Israeli counsel surely knows and Plaintiffs chose to omit from their briefing. There are currently two suits pending against NSO in Israel pertaining to the use of Pegasus, one of which has proceeded beyond a motion to dismiss.[6] Plaintiffs cannot credibly claim Israeli courts would not entertain lawsuits against NSO when Israeli courts currently *are* entertaining lawsuits

---

[4] Plaintiffs fail to cite a single case in which a *forum non conveniens* motion was denied due to "bias." *See Gutierrez v. Adv. Med. Optics, Inc.*, 640 F.3d 1025, 1030 (9th Cir. 2011) (alternative forum "declined to accept jurisdiction" entirely); *Tuazon*, 433 F.3d at 1179 (rejecting evidence that Philippine courts are inadequate); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143-45 (9th Cir. 2001) (New Zealand adequate, even though plaintiffs relegated to administrative proceedings with limited damages); *Ceramic Corp. of Am. v. Inka Mar. Corp.*, 1 F.3d 947, 949 (9th Cir. 1993) (Japan inadequate based on forum selection clause specifying Germany); *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368, 372 (5th Cir. 1992) (not addressing "bias" at all).

[5] *Tuazan* does not hold that a foreign court may be inadequate when "its policies favor one party over the other." (Opp. 12:26-27.) An alternative forum is not inadequate merely because it is "less favorable" to the plaintiff. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247 (1981).

[6] C.A. 2401-12-18 Elaziz v. NSO Group et al.; C.A. 61866-08-18 Una v. NSO Group et al.

1  against NSO.[7]

2  The ████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████  (Dkt.

5  184-3 ¶ 4.) ████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ██████ (Blecher Decl. Exh. C █████████████  Furthermore, ██████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10 ████████████████████████████  (*Id.*) ████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████  (*Id.* ¶ 3). ██████

13 ████████████████████████████████████████████████████

14 ██████ (*id.* ¶ 4); ████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████  (Dkt. 184-3 ¶ 4.)

17     Furthermore, ████████████████████████████████████

18 ████████████████████████████████████████████  NSO has presented

19 evidence that Israeli courts have specific mechanisms for handling sensitive information, such as

20 gag orders, ██████████████████████████████████████

21 (Blecher Decl. ¶ 12.)  Neither Plaintiffs nor their Israeli counsel rebut this evidence.

22     Ultimately, accusations of judicial bias are "as serious a charge as can be made against a

23 judge." *Sussman*, 801 F. Supp. at 1078.  Plaintiffs' unsupported speculation Israeli judges "would

---

[7] Plaintiffs' anecdotal evidence regarding Amnesty International does not show that Israeli courts are "so fraught with corruption, delay and bias as to provide no remedy at all." *Carijano*, 643 F.3d at 1227.  Plaintiffs provide no evidence that the dismissal of Amnesty International's claims was unwarranted.  Based on Plaintiffs' submissions, not even Amnesty International claims the proceedings were unfair or biased.  (Perez Decl. Exh. C at 28.)

1  violate their oaths of office" cannot support Plaintiffs' "preference for an American court." *Id.*

## IV. WHETHER PERSONAL JURISDICTION EXISTS OVER NSO IS IRRELEVANT.

A finding of personal jurisdiction does not, as Plaintiffs argue, preclude a party from asserting *forum non conveniens*. Challenges to jurisdiction and to forum are distinct and require separate analyses. *See, e.g., Tuazon*, 433 F.3d 1163 (independently assessing personal jurisdiction and *forum non conveniens*). *Forum non conveniens* may require dismissal "even if jurisdiction and proper venue are established." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994).

In this case, for example, the Court's determination regarding personal jurisdiction was based on considerations not relevant to *forum non conveniens*, such as "purposeful injection" and "conflict with the sovereignty of the defendant's state." (Dkt. 111 at 28-31.) The Court also did not address a number of *forum non conveniens* factors (e.g., whether unwilling witnesses can be compelled to testify, the enforceability of the judgment, the burden on local courts and juries, congestion in the court, and other practical problems). *Carijano*, 643 F.3d at 1229, 1232. Thus, the Court's prior analysis does not preclude NSO's *forum non conveniens* defense.[8]

Moreover, new burdens have arisen since the Court's jurisdictional analysis. In April 2020, the Court found certain factors—such as the burden on the parties—neutral for purposes of personal jurisdiction. (Dkt. 111 at 29-30.) Since then, NSO, its U.S. counsel, and its U.S. discovery vendor have all been unable to obtain export licenses required to mount an effective defense. (Gelfand Decl. ¶ 4; Akro Decl. ¶¶ 2-3.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Blecher Decl. ¶ 8 & Exh. C.) Plaintiffs themselves acknowledge these subsequent events must be considered when asking to be relieved of their prior concession that Israel is an adequate forum. (Opp. 14 n.7, 16:4-8.) For that reason as well, the Court's earlier personal jurisdiction ruling does not bear on NSO's motion.

## V.   THE PRIVATE FACTORS FAVOR DISMISSAL

As stated in NSO's motion, the private factors strongly favor dismissal. (Mot. 7:11-14:8.)

---

[8] Plaintiffs' cases do not hold otherwise. *Pepper, N.A. v. Expandi Inc.*, 2015 WL 7720922, at *4 (N.D. Cal. Nov. 30, 2015), analyzed personal jurisdiction and *forum non conveniens* separately. *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102 (1987), does not address *forum non conveniens* at all.

1  **Access to Evidence.** In its motion, NSO explained how litigating in Israel would improve all parties' access to significant evidence (Mot. 9:4-10:21), and that ███████████████ ███████████████████████████████████████[9] It supported its explanation with evidence from Israeli counsel, who explained that Israeli courts have procedural mechanisms to protect confidential information not be available in the United States. (Blecher Decl. ¶ 12.) These include in camera hearings, gag orders, and security clearances for counsel. (*Id.*). Neither Plaintiffs nor their Israeli counsel rebut this evidence. (Opp. 17:1-27.) To the contrary, Plaintiffs submit news reports that Amnesty International's Israeli lawsuit proceeded in exactly the fashion described—the "case was heard under a gag order" so that the parties could present sensitive evidence to the Israeli court. (Perez Decl. Exh. C at 28.)

Despite Plaintiffs' argument, a DECL license would not be required to try this case in Israel. In Israel, NSO would be free to transfer information to any Israeli subsidiaries of Facebook or WhatsApp (e.g., Facebook Israel) and to Plaintiffs' Israeli litigation counsel. (DECL § 15(a)(2).) Furthermore, NSO is far more likely to obtain a DECL license to produce information to Plaintiffs directly if the information would not be transferred outside of Israel, where Israeli courts can adequately protect defense know-how from public disclosure. (Blecher Decl. ¶ 12.) Even assuming that a DECL license were denied, however, the matter could still be adjudicated on the merits in Israel. Plaintiffs' burden in those circumstances (relying on its Israeli subsidiaries and Israeli litigation counsel to evaluate export-controlled evidence) is far less than NSO's burden now (being unable to produce evidence in its defense to anyone, including its own counsel).

As for U.S. export controls, Plaintiffs do not dispute that they bind NSO, that its U.S. litigation counsel has not be granted an export license, or that NSO and its own defense counsel thus cannot discuss key technical issues. (Mot. 12:23-13:22; Opp. 18:11-22.) Plaintiffs' only complaint appears to be that they would need to seek a U.S. export license in connection with any Israeli proceedings. Even assuming that to be true, *Plaintiffs already need the same export license*

---

[9] ███████████████████████████████████████████ (Dkt. 184-3 ¶ 4.) Plaintiffs have no evidence for their continued accusations, which have been disproven in sworn, uncontradicted testimony. (*Id.*)

*in this litigation*—to produce technical documents to NSO, to question NSO deponents about technical matters, and to introduce export-controlled evidence at trial (where NSO will be present). Despite repeatedly castigating NSO for imaginary delays in seeking export licenses, Plaintiffs have apparently never sought the necessary licenses themselves. Their opposition makes clear that their delay is deliberate. Plaintiffs are hoping that the Court will essentially force NSO to default or, at a minimum, force NSO to stay silent while relying on "U.S. experts" to address Plaintiffs' evidence. (Opp. 18:20-22.)

**Residence of Parties/Witnesses.** With respect to *forum non conveniens*, as opposed to personal jurisdiction, the Ninth Circuit has been clear that this factor is not neutral simply because documents and witnesses exist in both potential fora. *Lueck*, 236 F.3d at 1146. The same is true even if crucial documents and witnesses are located in both fora. *Id.* Rather, the Court must evaluate the significance of any anticipated evidence or witness testimony and then determine their accessibility and convenience to the forum. *Id.* If evidence in a foreign forum cannot be compelled to be brough to the United States, while evidence in the United States could be brought to court in any forum, this factor weighs in favor of dismissal. *Id.* at 1146-47. Here, the documents and testimony relevant to Plaintiffs' claims are largely located in Israel,[10] and many of those documents and witnesses cannot be compelled to the United States. (Mot. 7:23-8:8.)

Plaintiffs tout that their own U.S.-based evidence may also be "significant." Plaintiffs fail to explain, however, how their witnesses can provide competent testimony regarding (for example) how NSO developed Pegasus, whether NSO engaged in reverse-engineering of WhatsApp code, whether NSO (as opposed to its government customers) operates Pegasus, or NSO's state of mind. (Mot. 8:1-6.) Plaintiffs' own discovery responses make clear that the evidence in their possession is not sufficient to prosecute this matter. NSO recently served requests for admission concerning basic elements of Plaintiffs' claims under the CFAA and California's corollary statute. (Dkt. 224 at 1-2.) The requests seek to establish that NSO's alleged access to Plaintiffs' servers and to the

---

[10] Plaintiffs' allegations that there may be some materials on German server or that NSO may have used a U.S. server have no bearing on where the most significant witnesses are located.

"Target Devices" did not delete, alter, or remove any data owned by Plaintiffs; did not prevent Plaintiffs from accessing their own computers, systems, or data; and did not slow the operations of Plaintiffs' computers or computer systems (*i.e.*, that Plaintiffs did not suffer any of the harms required to bring a civil cause of action under the CFAA). (*Id.*)  Despite these requests pertaining to Plaintiffs' own data and systems, Plaintiffs claim they do not have enough information to respond without discovery from NSO. (*Id.* at 3.)  In total, Plaintiffs claim they are unable to answer *27 requests* without discovery from NSO. (*Id.* at 1-2.)  Regardless, Plaintiffs do not dispute that their evidence in the United States is under their control and could be brought to Israel or any other forum.  Accordingly, this factor favors dismissal.[11]

***Convenience***.  As a threshold matter, a "[f]inding that trial in the plaintiff's chosen forum would be burdensome . . . is sufficient to support dismissal on grounds of *forum non conveniens*." *Piper Aircraft*, 454 U.S. at 259.  The entire purpose of the doctrine is to permit dismissal when a plaintiff's chosen forum would burden a defendant "out of all proportion to plaintiff's convenience." *Id.* at 241.  Accordingly, this factor is not neutral simply because Plaintiffs may incur some cost or some burden in bringing witnesses to trial in Israel.  *See Carijano*, 643 F.3d at 1230 (weighing the respective burdens that the plaintiffs and the defendants would encounter).  Here, the burden on NSO to litigate in California far outweighs any burden on Plaintiffs to litigate in Israel.  Plaintiffs are vast international corporations with a significant presence in Israel (Akro Decl. ¶¶ 4-5, Exhs. A, B) and familiarity with Israeli courts (Blecher Decl. ¶ 13).  They will, therefore, face a lesser burden if required to litigate in Israel than NSO would face if required to litigate here.  *Facebook, Inc. v. Studivz Ltd.*, 2009 WL 1190802, at *2 (N.D. Cal. May 4, 2009).

Plaintiffs' own authorities demonstrate that burdens, such as the translation costs associated with each forum, must be weighed.  *E.g.*, *Bos. Telecommcn's Grp. v. Wood*, 588 F.3d 1201, 1210 (9th Cir. 2009) (reviewing evidence and concluding that "many" documents would

---

[11] Neither of Plaintiffs' cited cases involve the same circumstances.  The defendant in *Carijano* was headquartered in California and the most critical evidence was located in its residence (in NSO's case, Israel).  643 F.3d at 1230.  Similarly, the defendant in *Salebuild, Inc. v. Flexisales, Inc.*, 633 F. App'x 641, 642 (9th Cir. 2015), was located in the United States.

need to be translated into English, but that "numerous" documents would need to be translated into Slovak if litigation were moved to Slovakian court).[12]  In this case, the translation costs would be greater if this matter were litigated in the United States because U.S. courts are not fluent in both English and Hebrew, while Israeli courts typically are.  *See Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 878 (3d Cir. 2013) (finding that "documents in English need not be translated because Israel courts are typically proficient in English").  Plaintiffs do not dispute this point.  Issues of convenience thus favor NSO.

**Whether Unwilling Witnesses Can Be Compelled.**  The next factor, the "availability of compulsory process for attendance of unwilling . . . witnesses," also favors NSO.  *Piper Aircraft*, 454 U.S. at 241 n.6 (1981).  As stated in NSO's motion, there is generally no process available to compel unwilling Israeli witnesses to appear in person in California.  (Mot. 10:22-11:27.)  Depositions are not generally available and, even if they were, they would not be an adequate substitute for "live in-person testimony" at trial.  (*Id.*)

Nothing in Plaintiffs' opposition alters that conclusion.  NSO need not identify the witnesses it would call, the testimony that would be provided, or other such details.  *Piper Aircraft*, 454 U.S. at 258.  Indeed, dismissal may be required "precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview." *Id.*  NSO need only provide sufficient information to permit the Court to balance the parties' interests.  *Id.*  Even assuming that this includes allegations or a showing that witnesses would be unwilling to testify, *Carijano*, 643 F.3d at 1231, the burden is not substantial.  Circumstantial evidence of disincentives to voluntary testimony (*e.g.*, ongoing criminal investigations) are sufficient.  *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006).  And here, NSO submitted

---

[12] The case cited by NSO in its motion conducts the same comparative analysis. *MGA Ent. Inc. v. Deutsche Bank AG*, 2012 WL 12892902, at *5 (C.D. Cal. Feb. 27, 2012).  The defendants argued that many of the relevant documents would require "burdensome translation efforts" from French to English; the plaintiffs argued that the translation costs were irrelevant because English documents would need to be translated into French if the litigation were moved; and the court agreed with defendants based on the relative volume of material evidence.  *See id.* at *5 ("Defendants' evidentiary submissions more than adequately show that *much more*, of the material evidence—in the form of documents and witnesses—is located in France.").

evidence that Israeli witnesses could be subject to criminal penalties for violating DECL in the absence of appropriate licenses. (Blecher Decl. ¶ 12.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, major disincentives to voluntary testimony exist.

Plaintiffs' reliance on the possibility of depositions is inapt. The question is whether unwilling witnesses can be compelled to appear in person *at trial* so that the fact finder can evaluate credibility. *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 105 (1st Cir. 2009). Deposition testimony and letters rogatory are "less than satisfactory substitutes." *Id.* Plaintiffs concede this point by failing to address it. In any event, while some depositions may be theoretically possible, NSO presented uncontroverted evidence (1) the majority of its current document custodians are Israeli former employees not subject to deposition as current managers or directors (Gelfand Decl. ¶ 3), and (2) Israeli witnesses generally will not be compelled to appear for depositions under the Hague Convention (Blecher Decl. ¶ 11). Neither Plaintiffs nor their Israeli counsel provide any contradictory evidence. Although Plaintiffs suggest that a court in this district issued a letter of request in 2019, they provide no evidence that any deposition actually occurred or was successfully introduced at trial in lieu of in-person testimony. *See Finjan, Inc. v. Cisco Sys., Inc.*, 2019 WL 667766, at *2 (N.D. Cal. Feb. 19, 2019).

**Cost of Bringing Witnesses to Trial.** As NSO has explained, this factor favors dismissal. It would be easier for Plaintiffs to transport and lodge witnesses in Israel (where Plaintiffs maintain offices) than for NSO to transport and lodge its witnesses in California (where NSO has no presence of any kind). (Mot. 12:1-7.) In response, Plaintiffs admit they maintain corporate offices in Israel and at least some of their witnesses reside in Israel. (Opp. 22:16-18.) In contrast, NSO maintains no office in the U.S. (to alleviate logistical burdens) and no NSO witnesses reside here. Contrary to Plaintiffs' assertion, Omri Lavie is not NSO's "current CEO"; nor does he reside in the U.S. Nor are any other individuals identified by Plaintiffs current or former NSO employees.

**Enforcement of Judgment.** As explained in NSO's motion, any judgment against it would be more easily enforced in Israel. (Mot. 12:8-22.) Plaintiffs' opposition does not establish otherwise, because the issue is not whether this court can *enter* a judgment against NSO. The issue is whether a judgment against NSO would be more easily enforced in Israel if issued by an Israeli

court. Although Israeli courts may enforce U.S. judgments, NSO submitted uncontroverted authority that Israeli courts may refuse to enforce a judgment rendered against a party that was not permitted adequate opportunity to defend itself or a judgment ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ (*Id.*) Those concerns exist here, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and where Plaintiffs are clearly attempting to force NSO into judgment by default—or, at a minimum, into litigating without being able to produce evidence or participate meaningfully in its defense.

Plaintiffs' opposition fails to address either point. Instead, Plaintiffs again resort to attacks against the Israeli judiciary. That Israeli courts may seek assurances concerning the validity and fairness of foreign judgments renders them more trustworthy, not less. U.S. courts consider similar issues. *See, e.g.*, Cal. Civ. Proc. Code § 1716. Plaintiffs emphasize they seek an injunction, but they are *also* seeking a substantial damages award. (Dkt. 1, Request for Relief). NSO has consistently produced evidence confirming that it has no "substantial business interests in the United States" that could be used to satisfy a monetary judgment. (*E.g.*, Dkt. 45-11 ¶ 4.).

Plaintiffs present no evidence to contradict any of these points.[13] There is, therefore, no dispute that Israel could more easily enforce the judgment Plaintiffs seek. *See Studivz*, 2009 WL 1190802, at *3 ("With respect to the enforceability of a putative judgment, Facebook still has not suggested what more effective means there could be of protecting Facebook's United States trademark interests than by shutting off the pipeline of infringing goods at the source, i.e., Germany." (cleaned up)). These concerns cannot be ignored simply because Plaintiffs do not currently object. If that were true, the factor would be eliminated from the *forum non conveniens* test entirely because plaintiffs can rarely be expected to challenge their own choice of forum. This factor thus weighs strongly in favor of dismissal.

## VI. THE PUBLIC FACTORS FAVOR DISMISSAL

The Court need not reach the public factors if it concludes the private factors favor

---

[13] Plaintiffs' unsupported speculation that NSO could have assets outside of both the United States and Israel, or their supposition that an injunction could bind ancillary NSO affiliates, is irrelevant to determining whether the United States or Israel is better able to enforce any potential judgment.

1  dismissal.  (Mot. 5:15-21, 13:24-14:14).  Regardless, the public factors also favor dismissal.

2      ***Local Interest in Suit***.  Israel's interest in this matter far outstrips California's.  (Mot. 14:15-
3  15:21.)  Nothing in Plaintiff's opposition shifts this factor in their favor.  Plaintiffs do not dispute
4  the significance of Israel's interest, arguing instead that it is irrelevant.  Not so.  The correct inquiry
5  requires the Court to weigh the local and foreign interests (Mot. 14:16-15:3 & n.9), as it has done
6  in the past.  *E.g.*, *Elliott v. PubMatic, Inc.*, 2021 WL 3616768, at *3 (N.D. Cal. Aug. 16, 2021)
7  (Hamilton, J.); *Nibirutech Ltd v. Jang*, 2015 WL 831465, at *6 (N.D. Cal. Feb. 23, 2015)
8  (Hamilton, J.)).  Plaintiffs' reliance on a single line of cases stemming from the *Tuazon* decision
9  is misplaced for the reasons cited in NSO's motion (Mot. 14 n.9), none of which Plaintiffs rebut.

10     Nor can Plaintiffs establish that California has any meaningful interest in this case, which
11 involves foreign defendants being sued for foreign conduct related to foreign countries' alleged
12 monitoring of foreign WhatsApp users.  The mere fact that Meta, one of the largest companies in
13 the world, is headquartered in California is not sufficient to grant California a dispositive interest
14 in every case that Meta chooses to bring.  *See Studivz*, 2009 WL 1190802, at *3 (finding "the
15 predominantly economic injury that Facebook may have sustained in California" did not outweigh
16 significant foreign interest).  The Northern District "is not an international court of internet law."
17 *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *6 (N.D. Cal. Jan. 13, 2020).

18     ***Governing Law.***  NSO does not necessarily agree that California law applies, particularly
19 if this matter were litigated in Israel.  But even if California law were to govern Plaintiffs'
20 substantive claims, either forum would still need to interpret both California and Israeli law (█
21 █████████████████████) throughout discovery and trial.[14]  █████████
22 ████████████████████████, while also being perfectly
23 qualified to apply California law as necessary.  (Blecher Decl. ¶ 10); *see Cheng v. Boeing Co.*, 708
24 F.2d 1406, 1411 (9th Cir. 1983) ("Taiwan tribunal is competent to decide questions of American
25 law, if American law should apply").  Neither Plaintiffs nor their Israeli counsel submit any

---

[14] The need to apply Israeli law distinguishes this case from Plaintiffs' cases.  *E.g.*, *Bluestar Genomics v. Song*, 2023 WL 4843994, at *30 (N.D. Cal. May 25, 2023) ("no party argues that this Court would have to apply foreign law").

evidence to the contrary.

**Burden, Congestion, and Cost.** NSO does not, as Plaintiffs suggest, concede that factors relating to cost are inapplicable. Addressing the final three public factors together, NSO's motion explains why this Court should not bear the burden or cost of this suit when Israel has a substantially stronger interest. (Mot. 16:5-17:1.) With respect to burden, NSO described the extensive procedural safeguards required to try this matter given the highly sensitive nature of the potential evidence—ranging from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to NSO's trade secrets—and the level of anticipated media scrutiny. (Mot. 16:10-15.) Although Plaintiffs describe the summary as a "parade of horribles," they do not dispute that those protections would be necessary. (Opp. 25:3-9.) Furthermore, NSO has clearly explained how those burdens would be reduced in an Israeli forum, particularly with respect to any issues created by conflicting export regimes.[15] As to congestion, Plaintiffs' entire argument is premised on the matter being tried December 2024. That trial date, however, depends on the parties completing fact discovery by March 2024. (*See* Dkt. 168 at 1.) Given that none of the parties have produced any substantial quantity of their own documents, that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and that no party has taken a single deposition, discovery is all but certain to extend beyond March 2024, and there is little chance of trial occurring before 2025. Given Israel's superior interest compared to California, these burdens "are not justified." *Alternate Health USA Inc. v. Edalat*, 2022 WL 767573, at *11 (C.D. Cal. Mar. 14, 2022).

## VII. CONCLUSION

The Court should dismiss Plaintiffs' claims for *forum non conveniens*.

Dated: October 13, 2023            KING & SPALDING LLP

                                    By:   */s/Joseph N. Akrotirianakis*
                                          JOSEPH N. AKROTIRIANAKIS

                                    Attorneys for Defendants NSO GROUP TECHS.
                                    LTD. and Q CYBER TECHS. LTD.

---

[15] It is difficult to imagine how a trial before this Court could even proceed with NSO present, because virtually any information about any technology (even NSO's own technology) cannot be discussed or displayed in NSO's presence in light of its current "entity" listing.