Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
        antonio.perez@davispolk.com
        craig.cagney@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>                    Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**DISCOVERY MATTER**<br><br> Ctrm:   3<br> Judge:  Hon. Phyllis J. Hamilton<br><br><br> Action Filed: October 29, 2019 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 8, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, Plaintiffs WhatsApp Inc. ("WhatsApp") and Meta Platforms, Inc. ("Meta," and together with WhatsApp, "Plaintiffs"), will bring on for hearing before the Honorable Phyllis J. Hamilton, in Courtroom 3 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, a motion compelling Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited ("NSO") to produce documents and respond to interrogatories and requests for admission.  The parties have satisfied the requirements of Rule 37 and Civil L.R. 37-1(a) by attempting in good faith to resolve the disputed issues raised herein.

The Motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities herein, the Declaration of Craig T. Cagney in Support of the Motion ("Cagney Decl.") filed concurrently herewith, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

1   Dated:  December 21, 2023       Respectfully Submitted,

2                           DAVIS POLK & WARDWELL LLP

3

4                       By:  /s/ Micah G. Block
                          Micah G. Block (SBN 270712)

5                          DAVIS POLK & WARDWELL LLP
                          1600 El Camino Real

6                          Menlo Park, California 94025
                          Telephone: (650) 752-2000

7                          Facsimile:  (650) 752-2111
                          Email:  micah.block@davispolk.com

8

9                          Greg D. Andres
                          Antonio J. Perez-Marques

10                        Craig T. Cagney
                           (admitted *pro hac vice*)

11                        DAVIS POLK & WARDWELL LLP
                          450 Lexington Avenue

12                        New York, New York 10017
                          Telephone: (212) 450-4000

13                        Facsimile: (212) 701-5800
                        Email: greg.andres@davispolk.com

14                              antonio.perez@davispolk.com

15                              craig.cagney@davispolk.com

16                        *Attorneys for Plaintiffs*

17                        *WhatsApp LLC and Meta Platforms, Inc.*

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ........................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 2

      A.    Plaintiffs' Claims Against NSO ...................................................................... 2

      B.    The Court Denies NSO's Motion for a Protective Order ................................. 2

      C.    Plaintiffs and NSO Meet-and-Confer ............................................................. 3

LEGAL STANDARD ................................................................................................................ 4

ARGUMENT ............................................................................................................................. 4

   I.    NSO Has ███████████████████████ ............................................ 4

   II.    NSO's Objections to Producing Additional Important and Specific Discovery
       Lack Merit .............................................................................................................. 6

      A.    NSO Should Provide Discovery Concerning Any Spyware That Targets
          WhatsApp or Uses WhatsApp to Target WhatsApp Users ............................. 7

            1.    NSO Should Provide Discovery Beyond ██████████████
                 ██████ ............................................................................................. 7

            2.    NSO Should Provide Discovery on Spyware Beyond a Two-
                 Week Period in 2019 .......................................................................... 8

      B.    NSO Should Provide Discovery on the Relevant Spyware's Full
          Functionality,  Including Monitoring of Devices and Exfiltration of Data
          (RFP No. 9, 19, 24, Interrogatory No. 2) ...................................................... 9

      C.    Requests Concerning Third Parties' Use of the Relevant Spyware (RFP
          No. 25) ......................................................................................................... 12

      D.    Requests Concerning NSO's Transmission Network for the Relevant
          Spyware (RFP Nos. 22, 23, 30, 72, 73, 75, 76, 78, Interrogatory No. 10) .... 13

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

PAGE

## Cases

*Apple Inc. v. Wi-LAN Inc.*,
    2019 WL 4253833 (S.D. Cal. July 22, 2019) ............................................................ 8

*Ashker v. Alameida*,
    2007 WL 4287330 (N.D. Cal. Dec. 5, 2007) ............................................................ 9

*BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*,
    2014 WL 3965062 (N.D. Cal. Aug. 13, 2014) ...................................................... 12

*Connex R.R. LLC v. AXA Corp. Sols. Assurance*,
    2017 WL 3433542 (C.D. Cal. Feb. 22, 2017) ........................................................ 4

*Long v. Hewlett-Packard, Co.*,
    2006 WL 3751447 (N.D. Cal. Dec. 19, 2006) ........................................................ 8

*Masimo Corp. v. Mindray DS USA, Inc.*,
    2014 WL 12589321 (C.D. Cal. May 28, 2014) .................................................... 12

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ................................................................................................ 9

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) ........................................................................ 2, 3, 4

*Robin Singh Educ. Servs., Inc. v. Cepelinski*,
    2021 WL 945243 (C.D. Cal. Jan. 26, 2021) ........................................................ 13

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
    482 U.S. 522 (1987) ................................................................................................ 4

*United States v. Czubinski*,
    106 F.3d 1069 (1st Cir. 1997) .............................................................................. 11

*Vallabharpurapu v. Burger King Corp.*,
    276 F.R.D. 611 (N.D. Cal. 2011) ........................................................................... 9

*Weinstein v. Katapult Grp., Inc.*,
    2022 WL 1125768 (N.D. Cal. Apr. 15, 2022) ....................................................... 7

## Statutes & Rules

18 U.S.C. § 1030 ........................................................................................................... 2

18 U.S.C. § 1030(a)(2) ........................................................................................... 10, 11

18 U.S.C. § 1030(a)(4) .............................................................................................. 11

18 U.S.C. § 1030(a)(6) ............................................................................................................ 13

Cal. Penal Code § 502 ............................................................................................................... 2

Cal. Penal Code § 502(c)(1) ................................................................................................... 10

Cal. Penal Code § 502(c)(6) ................................................................................................... 13

**PRELIMINARY STATEMENT**

Through this motion, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. ("Plaintiffs") seek to compel Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited ("NSO") to produce important and specific discovery.

In keeping with the Court's instructions in its November 15, 2023 Order, Dkt. No. 233, Plaintiffs have conferred with counsel for NSO to discuss the discovery requests that Plaintiffs have served. Plaintiffs have made a good-faith effort to narrow the scope of their requests to minimize any burden to NSO.  In response, NSO has ███████████████████████████████ ████████████████████████████████████████████████████████████ ███████████  This Court has already rejected such limitations.  NSO should be ordered to produce, by February 15, 2024, at least ██████████████████████████████.

Notably, NSO still refuses to produce a significant portion of the important and specific discovery requested by Plaintiffs.  Principally, NSO objects to producing complete information concerning their spyware designed to intercept and extract information from mobile phones and devices as alleged in the complaint. *See* Dkt. No. 1 ¶ 24.  Instead, ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████.

NSO's interpretation of the universe of relevant documents is unsupported by the allegations in this case or the law, and should be rejected.  NSO should be compelled to produce information related to any spyware or malicious code designed to intercept or extract information from the WhatsApp application on mobile phones and devices in violation of the WhatsApp Terms of Service, including spyware transmitted or directed at WhatsApp servers, as well as any versions of their spyware that interacted with WhatsApp software in any way to surveil WhatsApp users from January 1, 2018 to the present (the "Relevant Spyware").  That includes information sufficient to understand the full operation of each piece of spyware and its ability to monitor WhatsApp users and exfiltrate data from them, which goes to the heart of Plaintiffs' claims under the federal Computer Fraud and Abuse

1

1  Act ("CFAA"), 18 U.S.C. § 1030, California Comprehensive Computer Data Access and Fraud Act

2  ("CCDAFA"), Cal. Penal Code § 502, and breach of the WhatsApp Terms of Service.

3  In addition, NSO should be required to produce discovery in response to Plaintiffs' other

4  specific requests that NSO continues to resist.  For instance, NSO should produce information allow-

5  ing Plaintiffs to understand the concealed relationship between NSO and its customers, which NSO

6  raises as a defense in this action but refuses to allow discovery into.  NSO also should provide infor-

7  mation related to the server network used to install its spyware on the target devices—including

8  because Plaintiffs have already identified at least some of the specific IP addresses and servers that

9  were used as "malicious servers" to deliver NSO's spyware to affected users.

10  **BACKGROUND**

11  **A.    Plaintiffs' Claims Against NSO**

12  Plaintiffs allege that NSO manufactures, distributes, and operates spyware designed to inter-

13  cept and extract information from mobile phones—including WhatsApp messages and other com-

14  munications after they were decrypted on a device.  Dkt. No. 1 ¶¶ 1, 24–29.  The complaint alleges

15  that NSO reverse-engineered the WhatsApp app and accessed WhatsApp's computers (including

16  computers located in California) without authorization between April and May 2019, in order to

17  transmit malicious code to approximately 1,400 mobile devices belonging to, among others, attor-

18  neys, journalists, human rights activists, and government officials, and cause them to download ad-

19  ditional NSO spyware from malicious servers.  *Id.* ¶¶ 1, 11, 32, 35, 42.  Plaintiffs' claims are under

20  the CFAA and CCDAFA, as well as for breach of the WhatsApp Terms of Service.  *Id.* ¶¶ 49–78.

21  On July 16, 2020, this Court denied NSO's motion to dismiss the complaint.  Dkt. No. 111.

22  Among other things, the Court held that Plaintiffs stated a claim for a violation of the CFAA.  *Id.* at

23  35–40.  The Ninth Circuit affirmed that NSO had no claim to sovereign immunity, *see* Dkt. No. 157,

24  and the Supreme Court denied certiorari, *see* Dkt. No. 162.

25  **B.    The Court Denies NSO's Motion for a Protective Order**

26  On March 30, 2023, NSO moved for a protective order exempting it from responding to

27  nearly all of Plaintiffs' discovery requests, based on certain Israeli law restrictions.  Dkt. No. 176.

28  Evaluating NSO's motion under the five-factor test in *Richmark Corp. v. Timber Falling Consultants,*

2

959 F.2d 1468, 1475 (9th Cir. 1992),[1] the Court denied the motion by order dated November 15, 2023.  *See* Dkt. No. 233.  With regard to factors (3), (4), and (5), respectively, the Court "agree[d] with plaintiffs that the foreign origin of discovery is not an absolute bar against production," that the Hague Convention is "something less than a true alternative means of seeking discovery in this case," and that "the United States has an interest in ensuring online safety and security and that viable claims are fully and fairly litigated."  *Id*. at 9–10.  The Court concluded NSO's motion did not permit an assessment of the "importance" and "specificity" of specific requests under factors (1) and (2), and directed Plaintiffs to file this motion.  The Court made clear that where the "requested discovery is sufficiently important and specific" under *Richmark*, "the court will order compliance with those discovery requests despite the DECL and other Israeli restrictions."  *Id.* at 10.

To date, NSO has produced just 40 documents, consisting of ███████████████████
███████████████████████████████████████████████████████████████████████████
███████.  By contrast, Plaintiffs have produced nearly 12,000 documents, including substantially all of the documents related to NSO's April and May 2019 attack on WhatsApp's servers.

**C.      Plaintiffs and NSO Meet-and-Confer**

Plaintiffs met and conferred with NSO on November 16 and 22, 2023.  *See* Cagney Decl. ¶¶ 18–19.  At NSO's request, Plaintiffs provided NSO with a letter dated November 30, 2023 memorializing certain revisions made to clarify the scope of the requests, including a new definition of "Relevant Spyware," and indicating that they would be willing to limit the discovery sought to certain portions of information contained within their original requests.  Cagney Decl. Ex. M.  The parties conferred to discuss Plaintiffs' narrowed requests on December 8, 2023.  Cagney Decl. ¶ 22.

On December 13, 2023, NSO sent a letter ████████████████████████████████████

---

[1] Those factors are "(1) the importance to the investigation or litigation of the documents or other information requested, (2) the degree of specificity of the request, (3) whether the information originated in the United States, (4) the availability of alternative means of securing the information, (5) and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."  Dkt. No. 233 at 8 (citing 959 F.2d at 1475).

1   ███████████████ Cagney Decl. Ex. P at 1.  To NSO, ████████████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████.  *Id.*  This motion followed.

**LEGAL STANDARD**

8   When the non-moving party's objection is based on a foreign law restriction on production,

9   the Court considers the factors set forth in *Richmark*, including (i) "the importance to the . . . litigation

10  of the documents or other information requested" and (ii) "the degree of specificity of the request."

11  *Société Nationale Industrielle Aérospatiale v. United States Dist. Ct. for S. Dist. of Iowa*, 482 U.S.

12  522, 544 n.28 (1987).  The first factor—importance of the documents—favors production "[w]here

13  the evidence is directly relevant."  *Richmark*, 959 F.2d at 1475.  The *Richmark* importance factor

14  closely resembles the Rule 26 relevance standard.  *See Connex R.R. LLC v. AXA Corp. Sols. Assur-*

15  *ance*, 2017 WL 3433542, at *12 (C.D. Cal. Feb. 22, 2017).  The second factor—specificity—focuses

16  on "how burdensome it will be to respond" to that request, meaning that "[g]eneralized searches for

17  information . . . are discouraged."  *Id.*

**ARGUMENT**

19  **I.   NSO Has** ████████████████████████████████

20  More than four years after this case was first filed, NSO ████████████████

21  ██████████████████████████████.  *See* Cagney Decl. Ex. P.  ████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  █████████████████████████████████████████████████ this discovery

26  is undoubtedly important and specific under *Richmark*, and NSO should be ordered to produce it by

27  February 15, 2024 ████████████████████████.  *See* Dkt. No. 233 at 10.

28  ***Requests for Production.*** ████████████████████████████████

4



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:19-CV-07123-PJH

██████████████ address the bare minimum the Court should order NSO to produce. ████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████. *See* Cagney Decl. Ex. P.  In all events, this Court has already made clear that where the "requested discovery is sufficiently important and specific" under *Richmark*, "the court will order compliance with those discovery requests despite the DECL and other Israeli restrictions."  Dkt. No. 233 at 10.  Because ██████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████, the Court should, at the very least, order compliance with these specific requests ████████████████████.

NSO should be ordered to produce this discovery by February 15, 2024.  NSO should be subject to an enforceable deadline, ████████████████████████████████████

████████████████████.  The Court set the non-expert discovery cutoff for March 11, 2024 in advance of a December 2, 2024 trial date.  Dkt. No. 168 at 1.  Plaintiffs will require at least six weeks to review this discovery and depose any available NSO witnesses.  A February 15, 2024 deadline is reasonable given that Plaintiffs first served document requests on NSO on June 2, 2020. *See* Dkt. No. 116-2.  NSO has had ample time to collect documents, ████████████████████

████████████████████, and should not be permitted to delay this case any more.

## II.    NSO's Objections to Producing Additional Important and Specific Discovery Lack Merit

Though NSO ██████████████████████████, it remains opposed to producing discovery concerning other issues that are equally important and specific, and necessary to address Plaintiffs' factual allegations and claims for relief, as well as NSO's defenses.  NSO's refusal to produce ████████████████████████████████████████

████████████████████████.  Plaintiffs are entitled to discovery regarding all "Relevant Spyware" (defined below) that targeted WhatsApp or WhatsApp users; the full functionality of that Relevant Spyware; NSO's clients' alleged use of the Relevant Spyware; and NSO's network for transmitting and installing the Relevant Spyware.

6

**A.     NSO Should Provide Discovery Concerning Any Spyware That Targets WhatsApp or Uses WhatsApp to Target WhatsApp Users**

Plaintiffs have already clarified to NSO that their requests are limited to the Relevant Spyware, which Plaintiffs define as "any NSO Spyware targeting or directed at WhatsApp servers, or us[ing] WhatsApp in any way to access Target Devices from January 1, 2018 to the present." Cagney Decl. Ex. M at 1. ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. Adopting NSO's self-serving view of what spyware is relevant would be inappropriate and inconsistent with the broad definition of relevance under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(b)(1) (discovery is proper if it "appears reasonably calculated to lead to the discovery of admissible evidence."); *see also Weinstein v. Katapult Grp., Inc.*, 2022 WL 1125768, at *1 (N.D. Cal. Apr. 15, 2022) ("[Rule] 26(b)(1) provides a broad definition of relevance for purposes of discovery.").[2]

**1.   NSO Should Provide Discovery Beyond** ██████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████ Dkt. No. 179-3 ¶¶ 6, 8 (emphasis added).  But Plaintiffs are entitled to test those statements in discovery. ████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████ Plaintiffs have no way of knowing how NSO brands its spyware, and how Pegasus is similar or different to the other spyware products that Plaintiffs have identified NSO to market and sell.  Nor do Plaintiffs know if NSO has used differently branded spyware to engage in precisely the same conduct on WhatsApp's servers.

NSO's ███████████████████████████████ also misconstrues the allegations in

---

[2] ██████████████████████████████████████████████████████████████████
████████████████████████████████████

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY
CASE NO. 4:19-CV-07123-PJH

Plaintiffs' complaint, which alleges wrongdoing not limited to Pegasus.  The complaint alleges that

NSO "caused Target Devices to download and install additional malware—**_believed to be_** Pegasus

**_or another remote access trojan developed by Defendants_**."  Dkt. No. 1 ¶ 32 (emphasis added); *see*

*also id.* ¶ 24 (defining "Pegasus <u>and its variants</u>" as "collectively, 'Pegasus'" (emphasis added)).

Plaintiffs are entitled to explore every type of spyware with the functionality that could have been

involved in those attacks (including Phantom, another brand name for what Plaintiffs believe is an

identical piece of spyware).  Moreover, the complaint alleges that NSO violated the WhatsApp Terms

of Service, which prohibit "infring[ing] the rights of WhatsApp, [WhatsApp] users, or others, includ-

ing privacy," "exploiting [WhatsApp] Services in impermissible or unauthorized manners, or in ways

that burden, impair, or harm us, [WhatsApp] Services, systems, [WhatsApp] users, or others."  Dkt.

No. 1 ¶¶ 21–22.  The WhatsApp Terms also required NSO not to: "(a) reverse engineer, alter, modify,

create derivative works from, decompile, or extract code from [WhatsApp] Services; (b) send, store,

or transmit viruses or other harmful computer code through or onto [WhatsApp] Services; (c) gain

or attempt to gain unauthorized access to [WhatsApp] Services or systems; (d) interfere with or dis-

rupt the safety, security, or performance of [WhatsApp] Services; [or] . . . (f) collect the information

of or about [WhatsApp] users in any impermissible or unauthorized manner."  *Id.* ¶ 22.

    Given these factual allegations, discovery cannot be cabined to ██████████████

████████████████████, including because NSO may have continued to abuse

Plaintiffs' platforms with either other products or an upgraded version of the same spyware.  *See*

*Long v. Hewlett-Packard, Co.*, 2006 WL 3751447, at *2–3 (N.D. Cal. Dec. 19, 2006) (granting mo-

tion to compel and rejecting argument that discovery should be limited to facts contained in the com-

plaint concerning two specific computer models owned by defendants); *see also Apple Inc. v. Wi-*

*LAN Inc.*, 2019 WL 4253833, at *5 (S.D. Cal. July 22, 2019) (ordering production of agreements

related to "comparable" technology).  NSO cannot hide relevant spyware behind different brands or

labels than those known pre-suit.

**2. *NSO Should Provide Discovery on Spyware Beyond a Two-Week Period in 2019***

    NSO's ████████████████████████████████████

████████████ is unduly narrow and ignores Plaintiffs' claims.  The complaint alleges that NSO has

8

1    engaged in a pattern of targeting Plaintiffs' servers using its "spyware," not just with Pegasus.  *See,*

2    *e.g.*, Dkt. No. 1 ¶ 24 (NSO "manufactured, distributed, and operated surveillance technology or 'spy-

3    ware' designed to intercept and extract information and communications from mobile phones and

4    devices").  Plaintiffs are entitled to take "discovery regarding their claims generally, not just the

5    specific factual claims pled in their Complaint." *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D.

6    611, 615 (N.D. Cal. 2011).  That includes discovery into any other products that accessed

7    WhatsApp's computers, but which Plaintiffs have not yet discovered.

8         Discovery into products that abused WhatsApp, violated its Terms, and surveilled WhatsApp

9    users ***after*** the 2019 attacks is particularly relevant to Plaintiffs' claim for prospective injunctive

10   relief.  The Court already acknowledged that claim should be assessed on "the full picture on a full

11   factual record, and not on the pleadings," *see* Dkt. 182-1, Ex. B at 10:15–16, 11:21–23, which means

12   discovery on that issue is necessary and important to the litigation.  *See also Weinstein*, 2022 WL

13   1125768 at *1 ("[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is

14   designed to help define and clarify the issues" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.

15   340, 351 (1978))).

16   ███████████████████████████████████

17   ███████████████████████████████    NSO recently argued that Plaintiffs' request for

18   such information was an attempt to "gain a competitive advantage" over NSO, because WhatsApp

19   would use the information to harden its security to prevent NSO's intrusions.  Cagney Decl. ¶ 22.

20   NSO's strenuous objections to producing discovery regarding whether its spyware continued to use

21   WhatsApp after the 2019 attacks speaks volumes.  Under these circumstances, "[t]here is no expla-

22   nation for Defendants' unilateral limitation on the time period" for discovery.  *Ashker v. Alameida*,

23   2007 WL 4287330, at *1 (N.D. Cal. Dec. 5, 2007).

24        **B.    NSO Should Provide Discovery on the Relevant Spyware's Full Functionality,**

25             **Including Monitoring of Devices and Exfiltration of Data (RFP No. 9, 19, 24,**

26             **Interrogatory No. 2)**

27   ███████████████████████████████████

28   ███████████████████████████████████

1  ███████████████████████████████████████████████████████████████████

2  ███████████████████████████████████████████████████████████████████

3  ████████████████████████████ Cagney Decl. Ex. P at 2.  Discovery should not be so limited.

4      As a threshold matter, discovery is necessary to determine the veracity of ████████████

5  ███████████████████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████████████

7  █████████████████████████████████

8      Furthermore, documents concerning the data and information exfiltrated from target devices

9  are an essential element of Plaintiffs' claims.  For example, the CFAA requires Plaintiffs to show

10 NSO accessed computers without authorization and "obtain[ed] . . . information from any protected

11 computer" or "obtains anything of value."  *See* 18 U.S.C. § 1030(a)(2)(C), (4).  California law also

12 prohibits "[k]nowingly access[ing] and without permission . . . us[ing] any data, computer, computer

13 system, or computer network in order to . . . wrongfully control or obtain money, property, or data."

14 CCDAFA § 502(c)(1).  Similarly, the WhatsApp Terms of Service prohibit "interfere[nce] with or

15 disrupt[ing] the safety, security, or performance of [WhatsApp] Services," as well as violations of

16 users' privacy, including "collect[ing] the information of or about users in any impermissible or un-

17 authorized manner."  Dkt. No. 1 ¶ 22.  As between the parties, only NSO has insight into what data

18 and information the Relevant Spyware was designed to collect from the target devices, and in fact

19 did collect.  If NSO has no access to that information, as NSO contends, *see* Dkt. No. 45 at 19 n.18,

20 NSO should be required to establish that fact; it does not make the request improper under *Richmark*.

21 ███████████████████████████████████████████████████████████████████

22 ██████████████████████████ ignores the scope of the allegations in Plaintiffs' complaint.  For example,

23 the complaint alleges that NSO's spyware used its access to WhatsApp's servers to extract infor-

24 mation from WhatsApp users.  *See* Dkt. No. 1 ¶ 27 (discussing how Pegasus was "designed, in part,

25 to intercept communications sent to and from a device, including communications over . . . Facebook

26 Messenger, WhatsApp, and others"); *id.* ¶ 41 ("On information and belief, after it was installed, De-

27 fendants' malware was designed to give Defendants and their customers access to information and

28 data stored on the Target Devices, including their communications.").  In addition, Section 1030(a)(2)

10

of the CFAA prohibits "access[ing] <u>a computer</u> without authorization" to "obtain[ ] . . . information from <u>any</u> protected computer," and Section 1030(a)(4) of the CFAA prohibits accessing a computer "with intent to defraud" and "by means of such conduct furthers the intended fraud and obtains any-thing of value."  Thus, both provisions prohibit accessing WhatsApp servers and using such unau-thorized access to obtain information from target devices.  *See United States v. Czubinski*, 106 F.3d 1069, 1078 (1st Cir. 1997) ("The acts of fraud we are addressing in proposed section 1030(a)(4) are essentially thefts in which someone uses a [protected] computer to wrongly obtain something of value from another," quoting 132 Cong. Rec. 7128, 7129, 99th Cong., 2d Sess. (1986)).  Further, Plaintiffs allege that NSO violated the WhatsApp Terms of Service by improperly collecting data about other WhatsApp users.  *See* Dkt. No. 1 ¶ 22.  Understanding the full functionality of NSO's spyware, and how it interacted with the target devices, is therefore important to proving Plaintiffs' claims.

Second, as this Court acknowledged in denying NSO's motion to dismiss, Plaintiffs have CFAA claims based on NSO's access to the target devices themselves, and not merely based on accessing WhatsApp servers.  *See id.* ¶¶ 53–54.  Discovery concerning how NSO's spyware interacts with the target devices, even if it does not involve WhatsApp servers, is therefore important.

NSO should therefore be compelled to provide discovery regarding the full functionality of all Relevant Spyware, and NSO's role with respect to that spyware.  Such discovery should include responses to the following requests seeking specific information about how the Relevant Spyware was installed, how it interacted with WhatsApp computers and WhatsApp users, how it monitored WhatsApp users, and how it transmitted information to NSO or its customers:

- **RFP No. 9**: Documents and Communications sufficient to show the processes, meth-ods, and Technology used by the Relevant Spyware to monitor Target Devices and exfiltrate data, including but not limited to any command and control software or payloads.

- **RFP No. 19**: Documents and Communications sufficient to show the Technology used to transmit any data or information from any Target Device containing or in-fected with the Relevant Spyware.

- **RFP No. 24**: Documents sufficient to describe the data and information NSO or NSO Customers obtained from the Target Users or the Target Devices by using Relevant Spyware.

- **Interrogatory No. 2**: Describe how each of the NSO Spyware identified in response to Interrogatory No. 1 functioned, including how it was designed to be installed on a Device, the methods used to install it on a Device, how it was used after being installed on a Device, how it exfiltrated data from a Device on which it was installed, and how it accessed or used any WhatsApp Computers.

Just as in *Masimo Corp. v. Mindray DS USA, Inc.*, another case assessing foreign law objections to producing source code, the importance factor "weighs strongly in [Plaintiffs'] favor" of production because "access to the [information] is substantially necessary to proving [Plaintiffs'] claim," and here, only NSO possesses that information.  2014 WL 12589321, at *3 (C.D. Cal. May 28, 2014). The fact that Plaintiffs seek comprehensive information about how NSO's unlawful spyware works is not a reason to rule that the requests are insufficiently specific.  In this district, at least one court has compelled discovery "specific to the elements of [Plaintiffs'] case" in the face of defendants' argument that the requests "seek too much information."  *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, 2014 WL 3965062, at *3 (N.D. Cal. Aug. 13, 2014).

### C.       Requests Concerning Third Parties' Use of the Relevant Spyware (RFP No. 25)

In addition to refusing to produce discovery regarding NSO's interactions with target users and target devices, NSO also refuses to produce discovery related to its interactions with its customers.  NSO's defenses put these relationships at issue.  NSO has long taken the position that it "do[es] not operate NSO's Pegasus technology" and that NSO instead "markets and licenses the Pegasus technology to its sovereign customers, which then operate the Pegasus technology themselves."  Dkt. No. 45-11 ¶ 14.  But NSO concedes that it at least provides "support services" to its customers.  *Id.* Plaintiffs are entitled to discovery to test NSO's defense and establish the extent of its involvement.

Moreover, this evidence is probative of the intent and knowledge of NSO and others using the spyware, including whether NSO provided unauthorized access, and NSO's liability for selling or providing those materials to third parties.  *See* 18 U.S.C. § 1030(a)(6); Cal. Penal Code § 502(c)(6). These requests are also relevant to personal jurisdiction, which NSO continues to contest.  While Plaintiffs expect the technical discovery about how the spyware works to corroborate their allegations that NSO's "program sought out specific servers—including servers in California—in order to transmit malicious code through those servers," Dkt. No. 111 at 22, Plaintiffs also expect discovery to

1  show that NSO sought to sell its products within California and the United States, providing an al-

2  ternative basis for jurisdiction if necessary.  *See Robin Singh Educ. Servs., Inc. v. Cepelinski*, 2021

3  WL 945243, at *11 (C.D. Cal. Jan. 26, 2021) (finding request for advertising data targeting California

4  was relevant).  NSO should therefore be compelled to provide the following basic information:

- **RFP No. 25**: Documents and Communications sufficient to identify the NSO Cus-
  tomers with knowledge of any of the attacks described in the Complaint, as alleged
  in Defendants' Motion to Dismiss.

    **D.**       **Requests Concerning NSO's Transmission Network for the Relevant Spyware**

           **(RFP Nos. 22, 23, 30, 72, 73, 75, 76, 78, Interrogatory No. 10)**

The final category of discovery requests seeks technical information related to the architec-

ture of NSO's network of servers used to transmit the Relevant Spyware to and through Plaintiffs'

servers and to WhatsApp users' devices.  According to the complaint, "Defendants leased and caused

to be leased servers and internet hosting services . . . in order to connect the Target Devices to a

network of remote servers intended to distribute malware and relay commands to the Target De-

vices," and "[w]hen successfully executed, the malicious code [sent through WhatsApp] caused the

Target Device to send a request to one of the malicious servers controlled by Defendants" that would

ultimately download the Relevant Spyware.  Dkt. No. 1 ¶¶ 34, 39.  Based on their pre-suit investiga-

tion, Plaintiffs were able to identify by IP address several of the malicious servers used in these

attacks, and requested copies of those servers from NSO.

████████████████████████████████████████████████████████

███████████████████████████████  Cagney Decl. ¶ 19.  Because these were the malicious

payload servers used in the attacks, the server images and other requested information would reveal

precisely what spyware or other technology was saved on these servers and how it was installed on

the target devices.  That information would be probative of whether the attacks identified by Plaintiffs

were properly attributed to NSO, whether NSO's access to WhatsApp was authorized, and whether

this Court has alternative grounds to exercise personal jurisdiction because NSO utilized U.S. or

California-based servers to install its spyware.  For instance, RFP No. 30 seeks a copy of the data on

a server associated with IP address 54.93.81.200, which is a ███████-based server hosted by U.S-

13

based Amazon Web Services ("AWS") and subscribed to NSO.  *See* Dkt. No. 208 at 1.  As Plaintiffs previously described in a joint discovery letter, ███████████████████████████████████ ███████████████████████████████████████████████  The information on that server is clearly "important" to proving Plaintiffs' claims and should be produced.  NSO ███████████████ ███████████████████████████████████████████, and should be ordered to produce them:

- **RFP No. 22**: Documents sufficient to describe the Pegasus Anonymizing Transmission Network, as described in Exhibit 10 of the Complaint.

- **RFP No. 23**: Documents and Communications Concerning the servers identified in response to Requests for Production Nos. 16, 19, 21, and 22 above, sufficient to show the contents of those servers, the third-party providers from whom those servers were leased, the locations of those servers, and whether NSO ever had possession, custody, access to, or control of those servers.[3]

- **RFP No. 30**: A complete Image of the Device or Devices that resolve to the Internet Protocol (IP) Address 54.93.81.200, including a live capture of RAM and all virtual machines, and including all of the following: log files, configuration files, Python scripts, compiled Python scripts, text files, README files, XML files, database (.db) files, JPEG files, JSON files, PEM files, proto files, shell scripts (.sh), sequel database files (.sql), and all files, including any .zip files, referenced in any of the aforementioned.[4]

- **Interrogatory No. 10**: ███████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████

- **RFA No. 38:**  Admit that You had Control over the servers that resolve to the Internet Protocol (IP) address 54.93.81.200 during the 2019 Attack Period.[5]

███████████████████████████████████████████████████████

---

[3] As set forth above, RFP Nos. 16, 19, 21, and 22 seek information about the transmission of the Relevant Spyware and Pegasus, and therefore RFP No. 23 seeks information about any server identified by NSO in response that forms part of the delivery network for that spyware.

[4] Because AWS also possesses a copy of the server image in RFP No. 30, NSO alternatively should be compelled to consent to AWS producing it in response to Plaintiffs' subpoenas.  *See* Dkt. No. 208.

[5] NSO has objected that Plaintiffs' definition of "Control" in this RFA is overbroad, ███████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████  *See* Fed. R. Civ. P. 36(a)(4).

---

14

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████   Understanding who leased the servers would shed light on the relationship between NSO and its customers.  And understanding what servers NSO controlled at what points in time would provide crucial information related to NSO's spyware operations.  NSO should therefore produce documents on whether it ever had possession of these malicious servers, and who controls them now:

- **RFP No. 72**: Documents sufficient to show whether NSO ever had possession, custody, or control of the Device or Devices that resolve to the Internet Protocol (IP) address 104.223.76.220.

- **RFP No. 73**: All Documents concerning the handover, delivery, or assignment of the Device or Devices that resolve to the Internet Protocol (IP) address 104.223.76.220 from NSO to any third party.

- **RFP No. 75**: Documents sufficient to show whether NSO ever had possession, custody, or control of the Device or Devices that resolve to the Internet Protocol (IP) address 95.179.187.227.

- **RFP No. 76**: All Documents concerning the handover, delivery, or assignment of the Device or Devices that resolve to the Internet Protocol (IP) address 95.179.187.227 from NSO to a third party.

- **RFP No. 78**: Documents sufficient to show whether NSO ever had possession, custody, or control of the Device or Devices that resolve to the Internet Protocol (IP) addresses identified in RFP Nos. 33 through 70.

- **RFP No. 79**: All Documents concerning the handover, delivery, or assignment of the Device or Devices that resolve to the Internet Protocol (IP) addresses identified in RFP Nos. 33 through 70 from NSO to any third party in its current possession, custody, or control.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court order NSO to produce the documents that it agrees are important and specific by February 15, 2024, and also produce the additional documents at issue in this motion.

1

2   Dated: December 21, 2023                     Respectfully Submitted,

3                                                DAVIS POLK & WARDWELL LLP

4
                                                 By:  /s/ Micah G. Block
5                                                     Micah G. Block (SBN 270712)
                                                      DAVIS POLK & WARDWELL LLP
6                                                     1600 El Camino Real
                                                      Menlo Park, California 94025
7                                                     Telephone: (650) 752-2000
                                                      Facsimile:  (650) 752-2111
8                                                     Email:  micah.block@davispolk.com

9
                                                      Greg D. Andres
10                                                    Antonio J. Perez-Marques
                                                      Craig T. Cagney
11                                                      (admitted *pro hac vice*)
                                                      DAVIS POLK & WARDWELL LLP
12                                                    450 Lexington Avenue
                                                      New York, New York 10017
13                                                    Telephone: (212) 450-4000
                                                      Facsimile: (212) 701-5800
14                                                    Email:  greg.andres@davispolk.com
                                                              antonio.perez@davispolk.com
15                                                            craig.cagney@davispolk.com
16

17                                                    *Attorneys for Plaintiffs*
                                                      *WhatsApp LLC and Meta Platforms Inc.*
18

19

20

21

22

23

24

25

26

27

28

                                                  16