# EXHIBIT 3

# EXHIBIT A

**Requests for Production and Plaintiffs' Responses at issue in Defendants'**
**Motion to Compel filed December 22, 2023**

**REQUEST FOR PRODUCTION NO. 118:**

All Communications between any of Plaintiffs and The Citizen Lab at the University of Toronto, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Ronald Deibert, that refer or relate to any of the Defendants.

**PLAINTIFFS' SECOND AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 118:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as seeking in-formation that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the at-torney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents referring or relating to the identity of the owners of the "approximately 1,400 Target Devices" and/or the identity of the "Target Users" referenced in Paragraph 1 of the Complaint in this action.

**PLAINTIFFS' SECOND AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents "referring or relating to the identity of the owners of the 'approximately 1,400 Target Devices' and/or the identity of the 'Target Users,'" without limitation, regardless of whether such Documents are relevant to any issue in the Action. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery. Plain-tiffs further object to this Request because the phrase "referring or relating to" is overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce, to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint.

## REQUEST FOR PRODUCTION NO. 3:

All Communications between You and any of the owners of the Target Devices and/or the Target Users referenced in Paragraph 1 of the Complaint in this action about the "infect[ion of] the Target Devices" referenced in Paragraph 1 of the Complaint in this action.

## PLAINTIFFS' SECOND AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Communications between Plaintiffs and "any of the owners of the Target Devices and/or the Target Users," without limitation, regardless of whether such Communications are relevant to any issue in the Action. Plaintiffs further object to this Request because the phrase "You" is overbroad, vague, and ambiguous. Plaintiffs further object to this Request to the extent that it seeks the production of materials that would violate the privacy interests of others.

Subject to and without waiver of these objections, Plaintiffs will produce (1) the form message sent to all affected WhatsApp users and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

All Communications referring or relating to the Target Users and/or the approximately 1,400 Target Devices referenced in Paragraph 1 of the Complaint in this action.

**PLAINTIFFS' SECOND AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Communications "referring or relating to the Target Users and/or the approximately 1,400 Target Devices" without limitation, regardless of whether such Communications are relevant to any issue in the Action. Plaintiffs further object to this Request because the phrase "referring or relating to" is overbroad, vague, and ambiguous. Plaintiffs further object to this Request to the extent that it seeks the production of materials that would violate the privacy interests of others.

Subject to and without waiver of these objections, Plaintiffs will produce (1) the form message sent to all affected WhatsApp users, (2) to the extent available, information known to Plain-tiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint, and (3) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents and Communications that refer or relate to any steps taken by Plaintiffs to identify users of the WhatsApp Service affected by any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**PLAINTIFFS' SECOND AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production. Plaintiffs further object to the Request as over-broad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery. Plaintiffs further object to this Request because the phrase "any steps taken . . . to identify users" is overbroad, vague, and ambiguous. Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Communications that refer or relate to any communication by Plaintiffs with users of Plaintiffs' services related to any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**PLAINTIFFS' SECOND AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery. Plain-tiffs further object to this Request because the phrase "any communication" is overbroad, vague, and

ambiguous. Plaintiffs further object to this Request as vague, overbroad, and premature be-cause Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) the form message sent to all affected WhatsApp users and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

## REQUEST FOR PRODUCTION NO. 113:

Documents sufficient to show how Plaintiffs identified the owners of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint in this action.

## PLAINTIFFS' SECOND AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 113:

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or

exemption from discovery. Plaintiffs further object to this Request because the phrases "sufficient to show" and "identified the owners" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce (1) to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

## REQUEST FOR PRODUCTION NO. 114:

Documents sufficient to show how Plaintiffs identified the "Target Users" referenced in Paragraph 1 of the Complaint in this action.

## PLAINTIFFS' SECOND AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 114:

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or

exemption from discovery. Plaintiffs further object to this Request because the phrases "sufficient to show" and "identified the 'Target Users'" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce (1) to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

# EXHIBIT B

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
             antonio.perez@davispolk.com
             craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS INC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES<br>LIMITED,<br><br>                    Defendants. | Case No.  4:19-cv-07123-PJH<br><br>**PLAINTIFFS WHATSAPP LLC AND META PLATFORMS INC.'S AMENDED INITIAL DISCLOSURES** |

## PLAINTIFFS WHATSAPP LLC AND META PLATFORMS INC.'S

## AMENDED INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiffs WhatsApp LLC ("WhatsApp") and Meta Platforms Inc. ("Meta," together with WhatsApp, "Plaintiffs") provide the following Initial Disclosures.

**A.     Individuals Likely to Have Discoverable Information (Fed. R. Civ. P. 26(a)(1)(A)(i))**

The following list identifies individuals presently known to Plaintiffs whom Plaintiffs may use to support their claims or defenses, excluding witnesses that Plaintiffs may use solely for impeachment.  Plaintiffs reserve the right to amend and supplement these disclosures based on their continuing investigation and discovery.[1]

**1.     Individuals currently or formerly retained, employed, or otherwise associated with Plaintiffs, who should be contacted only through Plaintiffs' counsel:**

| Name | Contact information | Subjects of Discoverable Information |
|---|---|---|
| Lander Brandt | Contact only through Plaintiffs' counsel | Plaintiffs' investigation of Defendants' exploitation of vulnerability in the WhatsApp service |
| Tom Cohen*† | Contact only through Plaintiffs' counsel | Identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service |
| Otto Ebeling*† | Contact only through Plaintiffs' counsel | Plaintiffs' investigation of Defendants' exploitation of vulnerability in the WhatsApp service |

---

[1] Plaintiffs incorporate by reference into these disclosures all individuals and entities identified in the disclosures of any other party, or called as witnesses for deposition or at trial by any other party.

| Name | Contact information | Subjects of Discoverable Information |
|---|---|---|
| Aashin Gautam | Contact only through Plaintiffs' counsel | Identification of victims of Defendants' unauthorized access and abuse of the WhatsApp service |
| Saish Gersappa | Contact only through Plaintiffs' counsel | Plaintiffs' investigation and remediation of Defendants' exploitation of vulnerability in the WhatsApp service |
| Claudiu Gheorghe* | Contact only through Plaintiffs' counsel | Plaintiffs' investigation of Defendants' exploitation of vulnerability in the WhatsApp service |
| Jesus Barcons Palau | Contact only through Plaintiffs' counsel | Plaintiffs' remediation of Defendants' exploitation of vulnerability in the WhatsApp service |
| Drew Robinson | Contact only through Plaintiffs' counsel | Plaintiffs' investigation of Defendants' exploitation of vulnerability in the WhatsApp service |
| Chris Rohlf | Contact only through Plaintiffs' counsel | Plaintiffs' investigation of Defendants' exploitation of vulnerability in the WhatsApp service |
| Michael Scott | Contact only through Plaintiffs' counsel | Identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service |
| Ke Wang* | Contact only through Plaintiffs' counsel | Data collection relating to Plaintiffs' investigation of Defendants' exploitation of vulnerability in the WhatsApp |

2

| Name | Contact information | Subjects of Discoverable Information |
|------|---------------------|-------------------------------------|
|  |  | service and identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service |
| YuanYuan Wang | Contact only through Plaintiffs' counsel | Plaintiffs' investigation and remediation of Defendants' exploitation of vulnerability in the WhatsApp service |

\* Individuals marked with asterisks are no longer employed by Plaintiffs.
† Individuals marked with daggers are located outside the United States.

**2. Other entities and individuals:**

| Name | Contact information | Subjects of Discoverable Information |
|------|---------------------|-------------------------------------|
| 365 Group LLC | 16192 Coast Highway Lewes, DE 19958 | 365 Group LLC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| Amazon Web Services, Inc. | Matthew G. Ball K&L Gates LLP Four Embarcadero Center, Suite 1200 San Francisco, CA 94111 Telephone: (415) 882-8200 matthew.ball@klgates.com | Amazon Web Services, Inc. may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| AT&T Mobility LLC | 1025 Lenox Park Blvd. Northeast Atlanta, GA 30319 | AT&T Mobility LLC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| BitPay, Inc. | 40 Technology Parkway South, Suite 300 Norcross, GA 30092 | BitPay, Inc. may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |

3

| Name | Contact information | Subjects of Discoverable Information |
|---|---|---|
| Choopa, LLC | Larry Walters, Esq. Walters Law Group 195 W Pine Ave Longwood, FL 32750 (407) 975-9150 larry@firstamendment.com | Choopa, LLC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| The Citizen Lab | Munk School of Global Affairs & Public Policy University of Toronto 315 Bloor Street West Toronto, Ontario, M5S 0A7 Canada | The Citizen Lab may have information relevant to the identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service |
| Cogent Communications, Inc. | 2450 N St., N.W. Washington, DC 20037 | Cogent Communications, Inc. may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| Compass Stratagem, LLC | Joseph N. Akrotirianakis Aaron S. Craig King & Spalding LLP 633 West Fifth Street, Suite 1700 Los Angeles, CA 90071 Telephone: (213) 443-4355 jakro@kslaw.com acraig@kslaw.com | Compass Strategem, Inc. may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| E-Tel Systems, LLC | 4701 Cox Road, Suite 285 Glen Allen, VA 23060 | E-Tel Systems, LLC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| Francisco Partners Management L.P. | Matthew G. Ball K&L Gates LLP Four Embarcadero Center, Suite 1200 San Francisco, CA 94111 Telephone: (415) 882-8200 matthew.ball@klgates.com | Francisco Partners Management L.P. may have information relevant to Defendants' business, financials, their U.S. presence and activities, and their marketing and use of spyware |

| Name | Contact information | Subjects of Discoverable Information |
|---|---|---|
| Google LLC | 2710 Gateway Oaks Drive Suite 150N Sacramento, California 95833 | Google LLC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| GreenCloudVPS JSC | 16192 Coast Highway Lewes, DE 19958 | GreenCloudVPS JSC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| Jefferies International Limited | Scott S. Balber Jared S. Stein Herbert Smith Freehills New York LLP 450 Lexington Avenue, 14th Floor New York, NY 10017 Telephone: (917) 542-7810 scott.balber@hsf.com jared.stein@hsf.com | Jefferies International Limited may have information relevant to Defendants' business, financials, their U.S. presence and activities, and their marketing and use of spyware |
| Josh Shaner | Joseph N. Akrotirianakis Aaron S. Craig King & Spalding LLP 633 West Fifth Street, Suite 1700 Los Angeles, CA 90071 Telephone: (213) 443-4355 jakro@kslaw.com acraig@kslaw.com | Mr. Shaner may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service, their U.S. presence and activities, and their marketing and use of spyware |
| Los Angeles Police Department | 200 North Spring Street Suite 1900 Los Angeles, CA 90012 | The Los Angeles Police Department may have information relevant to the marketing and use of Defendants' spyware in California |
| M247 | 2802-5 Miami CoLoHouse 36 NE 2nd Street Miami, FL 33132 | M247 may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |

5

| **Name** | **Contact information** | **Subjects of Discoverable Information** |
|---|---|---|
| Mercury Public Affairs | Joseph N. Akrotirianakis<br>Aaron S. Craig<br>King & Spalding LLP<br>633 West Fifth Street, Suite 1700<br>Los Angeles, CA 90071<br>Telephone: (213) 443-4355<br>Facsimile: (213) 443-4310<br>jakro@kslaw.com<br>acraig@kslaw.com | Mercury Public Affairs may have information relevant to Defendants' U.S. presence and activities, and their marketing and use of spyware |
| Novalpina Capital LLP | Keystone Law Limited<br>48 Chancery Lane<br>London WC2A 1JF<br>United Kingdom | Novalpina Capital LLP may have information relevant to Defendants' business, financials, their U.S. presence and activities, and their marketing and use of spyware |
| Omri Lavie | Joseph N. Akrotirianakis<br>Aaron S. Craig<br>King & Spalding LLP<br>633 West Fifth Street, Suite 1700<br>Los Angeles, CA 90071<br>Telephone: (213) 443-4355<br>jakro@kslaw.com<br>acraig@kslaw.com | Mr. Lavie may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service, their U.S. presence and activities, and their marketing and use of spyware |
| PayPal, Inc. | 2211 North First Street<br>San Jose, CA 95131 | PayPal, Inc. may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| PSI Network, Inc. | 24800 Chrisanta Drive<br>Suite 230<br>Mission Viejo, California 92691 | PSI Network, Inc. may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| QuadraNet Enterprises LLC | 530 West 6th Street, Suite 1301<br>Los Angeles, CA 90014 | QuadraNet Enterprises LLC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |

| Name | Contact information | Subjects of Discoverable Information |
|------|--------------------|--------------------------------------|
| San Diego Police Department | 1401 Broadway<br>San Diego, CA 9210 | The San Diego Police Department may have information relevant to the marketing and use of Defendants' spyware in California |
| Serverdroid LLC | 501 Silverside Road, Suite 105, Wilmington, DE 19809 | Serverdroid LLC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| Terrence DiVittorio | Joseph N. Akrotirianakis<br>Aaron S. Craig<br>King & Spalding LLP<br>633 West Fifth Street, Suite 1700<br>Los Angeles, CA 90071<br>Telephone: (213) 443-4355<br>jakro@kslaw.com<br>acraig@kslaw.com | Mr. DiVittorio may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service, their U.S. presence and activities, and their marketing and use of spyware |
| Treo Asset Management LLC | Edward Diskant<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, NY 10017-3852<br>Telephone: (212) 547-5754<br>ediskant@mwe.com | Treo Asset Management LLC may have information relevant to Defendants' business, financials, their U.S. presence and activities, and their marketing and use of spyware |
| Verisign Inc. | 12061 Bluemont Way<br>Reston, VA 20190 | Verisign Inc. may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| Verizon Wireless LLC | 180 Washington Valley Road<br>Bedminster, NJ 07921<br>Telephone: (800) 451-5242 | Verizon Wireless LLC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |

| Name | Contact information | Subjects of Discoverable Information |
|---|---|---|
| Vultr Holdings, LLC | 14 Cliffwood Ave, Suite 300 Metropark South Matawan, NJ 07747 | Vultr Holdings, LLC may have information relevant to Defendants' unauthorized access and abuse of the WhatsApp service |
| Westbridge Technologies Inc. | Joseph N. Akrotirianakis Aaron S. Craig King & Spalding LLP 633 West Fifth Street, Suite 1700 Los Angeles, CA 90071 Telephone: (213) 443-4355 jakro@kslaw.com acraig@kslaw.com | Westbridge Technologies Inc. may have information relevant to Defendants' business, financials, and marketing, as well as Defendants' U.S. presence and activities |

The foregoing disclosures do not include expert witnesses, who may be identified at a later date in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's Scheduling Order.

**B.**     **Documents, Electronically Stored Information, and Tangible Things (Fed. R. Civ. P. 26(a)(1)(A)(ii))**

The following list describes by category and location those documents, data compilations, and tangible things that Plaintiffs have in their possession, custody, or control and may use to support their claims, excluding documents, data compilations and tangible things that Plaintiffs may use solely for impeachment.

| Category | Location |
|---|---|
| Logs of WhatsApp signal servers and relay servers | Available through Plaintiffs' counsel |
| Documents relating to the manner in which the exploitation and unauthorized access and abuse functioned | Available through Plaintiffs' counsel |

8

| Documents relating to remediation of the exploitation | Available through Plaintiffs' counsel |
|---|---|
| Documents relating to the identification of Defendants as responsible for the unauthorized access and abuse of the WhatsApp service | Available through Plaintiffs' counsel |
| Documents relating to identification of victims | Available through Plaintiffs' counsel |
| WhatsApp Terms of Service | Available through Plaintiffs' counsel and publicly available |

Plaintiffs reserve the right to rely on all documents produced during the course of this litigation by other parties to the litigation and/or by any third parties. Plaintiffs' investigation regarding the facts and circumstances of this case is ongoing, and Plaintiffs will supplement these disclosures based on their continuing investigations and discovery under the Federal Rules of Civil Procedure and Orders of this Court.

**C.      Computation of each category of damages (Fed. R. Civ. P. 26(a)(1)(A)(iii))**

Plaintiffs disclose the following computation of damages arising from Defendants' conduct:

1.      Estimated minimum compensatory damages to date of approximately $1 million, including for identification and remediation of Defendants' wrongful use of Plaintiffs' source code, servers, and computers, as well as Defendants' development and exploitation of the vulnerability used in the attacks alleged in the complaint.   These estimates include, but are not limited to, employee time expended on these activities, the average cost of those employees' time, attorneys' fees incurred in connection with these activities, and other related fees and expenditures. Because Defendants' activities are continuing and ongoing, Plaintiffs reserve the right to seek damages related to the investigation and remediation of any attacks identified as the case continues.

2.      Damages based on disgorgement of unjust enrichment obtained by Defendants through the wrongful and unfair acts alleged in the complaint, including disgorgement of all of Defendants' profits derived from their deliberate, knowing, and premeditated violations of Plaintiffs' terms of service, as well as from Defendants' unlawful and uncompensated use of

Plaintiffs' services and computers.  Plaintiffs state that the documents necessary to calculate these damages are in the possession of Defendants.  Based on public news reports, however, Defendants charge their clients $650,000 to target ten devices, and, without the benefit of discovery, Plaintiffs have identified approximately 1,400 devices that were targeted in May 2019.  Plaintiffs intend to seek disgorgement of all profits Defendants derived from their unlawful activity.

3.     Punitive and exemplary damages necessary to deter Defendants' malicious, oppressive, and fraudulent misconduct, in an amount to be determined at trial.

4.     Plaintiffs also reserve their right to seek recovery of attorneys' fees and costs, and pre-and post-judgment interest.  Such fees, costs, and interest are continually being incurred and cannot reasonably be calculated at this time.

Plaintiffs' damages calculations are only preliminary estimates and are subject to supplementation and revision, including by expert testimony as appropriate.  Plaintiffs will make additional disclosure regarding their damages at the time specified by the Court for expert discovery.

Plaintiffs reserve their right to supplement their response to this category as necessary and appropriate.

Dated:   November 30, 2023                    DAVIS POLK & WARDWELL LLP

By:   /s/ Micah G. Block
      Micah G. Block (SBN 270712)
      DAVIS POLK & WARDWELL LLP
      1600 El Camino Real
      Menlo Park, California 94025
      Telephone: (650) 752-2000
      Facsimile:  (650) 752-2111
      Email: micah.block@davispolk.com

      Greg D. Andres
      Antonio J. Perez-Marques
      Craig T. Cagney
        (admitted *pro hac vice*)
      DAVIS POLK & WARDWELL LLP
      450 Lexington Avenue
      New York, New York 10017
      Telephone: (212) 450-4000
      Facsimile: (212) 701-5800
      Email: greg.andres@davispolk.com
             antonio.perez@davispolk.com
             craig.cagney@davispolk.com

      *Attorneys for Plaintiffs WhatsApp LLC and
      Meta Platforms Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2023, I caused copies of:

PLAINTIFFS' INITIAL DISCLOSURES

to be served on:

Joseph N. Akrotirianakis
Aaron S. Craig
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Email:  jakro@kslaw.com
acraig@kslaw.com

*Attorneys for Defendants*

VIA ELECTRONIC MAIL & U.S. MAIL

*/s/ Luca Marzorati*
Luca Marzorati

12

Plaintiffs' Amended Initial Disclosures
Case No. 4:19-cv-07123-PJH

# EXHIBIT C

DESIGNATED HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

# King & Spalding

King & Spalding LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
Tel: +1 404 572 4600
Fax: +1 404 572 5100
www.kslaw.com

James P. Cone
Direct Dial: +1 404 572 4664
jcone@kslaw.com

July 17, 2023

*Via E-mail*

Craig Cagney
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
United States
craig.cagney@davispolk.com

Dear Counsel:

We write to memorialize our meet and confer on July 6, 2023 from 6:00 to 7:00 EST. We suggested following the itinerary that was e-mailed on June 22, 2023, and this itinerary listed:

1. NSO's responses and objections to Plaintiffs' second set of requests for production
2. Plaintiffs' responses and objections to NSO's second set of requests for production
3. Plaintiffs' subpoenas issued to certain persons affiliated with NSO in various capacities.
4. Plaintiffs' subpoena issued to TREO

This letter addresses the first two topics.

**<u>Topic 1</u>: NSO's responses and objections to Plaintiffs' second set of requests for production**



DESIGNATED HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY



**Topic 2:  Plaintiffs' responses and objections to NSO's second set of requests for production**

NSO's second set of requests for production, specifically, RFP No. 99 and 100, request documents relating to "any use or access of the WhatsApp Service by Defendants [or Defendants' customers], directly or indirectly, including but not limited to server logs or other electronic records." You informed us that you will produce documents and the server logs that are responsive to the security vulnerability incident in 2019 described in the Complaint.  You further informed us that you are not aware of any other instances of Defendants using or accessing the WhatsApp Service, other than the one incident in 2019 described in the Complaint.  You also indicated that you were working on Search Parameters for responsive documents such as date ranges, search terms and custodians.[2]  You further informed us that, although you only know of the one incident in 2019, if you learn of any other incidents through the course of discovery, you will produce documents responsive to that.  As your present response is not compliant with Rule 34(a)(2), we ask that you amend your response to one that is compliant.  This response should state that Plaintiffs are not aware of any other responsive incident at present, but if Plaintiffs learn of any such responsive incident, they will produce all responsive documents relating thereto.

RFPs No. 102–109, request information about any security vulnerabilities that Plaintiffs allege were created or exploited by Defendants and seek documents about Plaintiffs' discovery of

---

[1] License discussions between Defendants and the Ministry of Defense are in progress, but they do not relate specifically to the device that is the subject of this request.
[2] Defendants do not concede or agree that the use of "Search Parameters" is a proper approach for responding to any of Defendants' requests for production, but are willing to confer with Plaintiffs about Plaintiffs' proposed approach once Plaintiffs have any details about the Search Parameters that they are willing to share.

DESIGNATED HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

the vulnerabilities or initial awareness, and to Plaintiffs' response to same.  You informed us that you are only aware of Defendants being involved with one vulnerability—the one described in the Complaint.  You further informed us that if or when you identify other vulnerabilities with any connection to Defendants, you will provide responsive documents and information. In order to avoid motion practice on this subject, we suggested revising your responses to these RFPs to state that there are no other responsive vulnerabilities, other than CVE-2019-3568, of which Plaintiffs are presently aware, but Plaintiffs agree to promptly provide all responsive documents related to any other responsive vulnerabilities as soon as Plaintiffs become aware of them.   You indicated to us that you would consider that solution.  Please provide us with your position.  In any event, your responses are improper under Rule 34(a)(2).  Please amend your responses to comply with Rule 34(a)(2) and let us know your position.

With respect to NSO's RFP No. 110 relating to "every iteration of WhatsApp's Terms of Service in effect in any country or territory in 2018 and/or 2019," you informed us that you are still gathering responsive documents and will produce them.  Please let us know when you will produce your responsive documents.

NSO's RFP No. 111 seeks documents relating "to Plaintiffs' enforcement of any term in WhatsApp's Terms of Service that Plaintiffs allege Defendant violated."  In response to your request for clarification, we informed you that we are seeking information as to when Plaintiffs have taken action of any sort against any other user for violation of the terms of service you allege Defendants violated.  In an effort to narrow the request, we suggested a date range of January 1, 2016 to the present.  Upon your representation that the only terms of service that Plaintiffs allege that Defendants breached are those set forth in Paragraphs 20-22 of the Complaint, we can agree to narrow our request to those terms of service.  Please provide us with your position to this narrowed request and a response that complies with Rule 34(a)(2).

With respect to NSO's, RFPs No. 113–115, and RFPs No. 2-4 in the First Set of RFPs about which we previously met and conferred, these requests relate to the identity of the owners and users of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint in this action, and how Plaintiffs identified and communicated with them.   You indicated to us that you will produce documents responsive to these requests, but that you need to "get back with us" regarding the details.  If Plaintiffs do not intend to produce documents that provide Defendants with Plaintiffs' best information about the identify of the owners and users of the approximately 1,400 Target Devices, and to do so promptly, this dispute will need to be resolved by the Court.  Plaintiffs cannot withhold this information, particularly in light of the fact that Plaintiffs' Complaint is replete with allegations about these 1,400 persons, and their initial disclosures include "Documents relating to identification of victims" as one of the categories of documents Plaintiffs may use to support their claims.  Please amend your responses to comply with Rule 34(a)(2) and let us know when these documents will be produced.

NSO's RFP No. 118 relates to communications "between any of Plaintiffs and The Citizen Lab at the University of Toronto, including any employee, contractor, or representative thereof,

DESIGNATED HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

and further including, for the avoidance of doubt, Ronald Deibert, that refer or relate to any of the Defendants." You indicated to us that you would let us know what documents Plaintiffs were willing to produce. Please amend your response to so indicate in a manner that complies with Rule 34(a)(2).

With respect to NSO's RFP No. 123, relating to communications "between any law enforcement or intelligence agency and any of Plaintiffs relating to any request made to any of Plaintiffs to assist in preventing or investigating a crime, and Documents related thereto," we asked what your basis for refusing to provide information. You indicated that you did not see the relevance to the case, and that the discovery requested was not proportional to the needs of the case. Defendants contend that Plaintiffs' refusal to cooperate with law enforcement to prevent or investigate serious crime bears directly on the issues in this case. Defendants are willing to modify their request to serious crimes involving actual or threatened death or bodily injury, terrorism, child pornography or human trafficking. Please let us know Plaintiffs' position.

With respect to NSO's RFPs No. 125–134, these RFPs relate generally to certain individuals, "identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect." You indicated to us that you will provide responsive documents pursuant to the Search Parameters. Without acknowledging or agreeing that using Search Parameters is a proper approach for responding to these requests, we are willing to confer with Plaintiffs about Plaintiffs' proposed approach once Plaintiffs have any details about the Search Parameters that they are willing to share.

With respect to NSO's RFPS No. 135–158, these RFPs all seek Plaintiffs' communications with certain third parties who have received subpoenas from Plaintiff, including, for example, Amazon Web Services, 365 Group, and AT&T Mobility. You indicated to us that these communications were not the proper subject of discovery and also asserted a work product privilege as to these communications. We contend that discussions between Plaintiffs and these third parties are relevant and proportional, and we asked for case law that indicated that such communications with these third parties would be considered work product or are otherwise privileged. We renew that request here.

NSO's RFP No. 162 requests "all Communications by or between employees of Plaintiffs that refer or relate to Defendants." You indicated that Plaintiffs' major concern with this request is the burden on gathering this information. We indicated that we would narrow the date range, and we suggest a date range between January 2018 and May 2019. Please let us know Plaintiffs' position.

DESIGNATED HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

Finally, with respect to RFPs 177 and 178, you confirmed that Plaintiffs' position about those requests is substantially the same as their position with respect to Defendants' subpoenas to the law firms representing the plaintiffs in the *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, about which we have had substantial correspondence.

Sincerely,

/S/
James P. Cone

Cc: All counsel of record.

# EXHIBIT D

| | |
|---|---|
| **From:** | Ben Lee |
| **To:** | Cagney, Craig; fb.nso |
| **Cc:** | K&S NSO; Aaron Craig |
| **Subject:** | WhatsApp LLC, et al. v. NSO Group Technologies Ltd., et al., Case No. 4:19-cv-07123-PJH (N.D. Cal.) - DRAFT Joint Letter to Court |
| **Date:** | Monday, November 6, 2023 7:28:08 PM |
| **Attachments:** | image001.png |
| | DRAFT November 10, 2023 Joint Letter for Judge Hamilton re Discovery Disputes.docx |

Counsel:

Please see Defendants' portion of a joint letter regarding Plaintiffs' responses to identified Requests for the Production of Documents.  Please provide Plaintiffs' portion by end of day on November 9 so that we may file November 10 consistent with Judge Hamilton's procedures.

---

**Benjamin Lee**

T: +1 404 572 2820  |  E: blee@kslaw.com  |  Bio  |  vCard

King & Spalding LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309



kslaw.com

---

**From:** Aaron Craig <ACraig@KSLAW.com>
**Sent:** Tuesday, October 31, 2023 3:07 PM
**To:** fb.nso <fb.nso@davispolk.com>; Cagney, Craig <craig.cagney@davispolk.com>
**Cc:** K&S NSO <K&SNSO@KSLAW.com>
**Subject:** Information regarding the identity of the 1,400 WhatsApp users

Craig:  In your letter dated August 23, 2023, you reported that Plaintiffs expected to produce to NSO, by **October 27, 2023** its information regarding the 1,400 users of WhatsApp referenced in the Complaint, including documents sufficient to identify the information known to Meta about the 1,400 target devices and victims referenced in the Complaint, including to the extent available, names, IP addresses, email addresses, and position in civil society.

Plaintiffs' amended responses served the following day, August 24, 2023, promised to produce "information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint."

Please produce this long-awaited information immediately.

—

**Aaron Craig**
*Partner*

T: +1 213 443 4311  |  E: acraig@kslaw.com  |  Bio  |  vCard

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071



kslaw.com

# KING & SPALDING

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Tel: +1 213 443 4355
Fax: +1 213 443 4310
www.kslaw.com

Aaron Craig
Direct Dial: +1 213 443 4311
ACraig@kslaw.com

November 10, 2023

***Via E-mail***
Senior District Judge Phyllis J. Hamilton
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 3
1301 Clay Street, Oakland, CA 94612

Re:   *WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.*, 4:19-CV-07123-PJH
DISCOVERY MATTER

Dear Judge Hamilton:

Pursuant to the Court's Standing Order Regarding Discovery Disputes, Protective Orders, and ESI Orders effective May 12, 2021, the parties hereby submit this Joint Letter concerning deadlocks regarding various of Defendant NSO Group Technologies Limited's ("NSO") Requests for the Production of Documents ("RFP").  The parties held meet and confer discussions of these matters on July 6, 2023 and exchanged letters dated July 17, 2023, August 3, 2023, and August 23, 2023.  As described further below, Plaintiffs' August 23, 2023 letter stated that Plaintiffs would provide certain additional documents and information sought by the at-issue RFPs by dates certain. Those dates have passed, and despite NSO's follow-up requests by email dated October 31, 2023 and again on the record at last week's November 2, 2023 hearing before the Court, Plaintiffs have neither provided the agreed upon documents and information nor indicated when they will do so. Accordingly, the parties require the Court's intervention.

I.   **RFP NOS. 2–4, 113–15, & 118**

A.   **NSO's Position**

NSO's RFP Nos. 2–4 and 113–15 seek documents concerning the identities of the owners and users of the "approximately 1,400 mobile phones and devices" that Plaintiffs allege were

November 10, 2023
Page 2

targeted using NSO's Pegasus software between April 2019 and May 2019 (Compl. ¶¶ 1, 42, 50), how Plaintiffs identified these persons, and Plaintiffs' communications with those persons.  NSO's RFP No. 118 seeks Plaintiffs' communications with The Citizen Lab at the University of Toronto—an entity that purports to have tracked instances of device access using Pegasus.

It is beyond any reasonable dispute that these documents are central to the claims and defenses at issue in this case.  In nearly every pleading filed with this Court, and again at the hearing on November 2, 2023, Plaintiffs have claimed that the 1,400 devices referenced in the Complaint belonged not to serious criminals and terrorists, but to human rights activists, journalists and lawyers.  Whether the trier of fact in this case is this Court or a jury, Defendants have the right to refute this claim, and require this information from Plaintiffs to do so.

It is frankly incredible that Plaintiffs have not produced this information with just five months remaining in discovery.  Plaintiffs' Initial Disclosures *served more than three years ago* (on August 4, 2020) identified "Documents relating to identification of victims" (*i.e.*, users of the 1,400 devices) as one of the categories of documents that "Plaintiffs have in their possession, custody, or control and may use to support their claims."  Pl. Initial Disclosures at 8.  Plaintiffs' Initial Disclosures further state that these documents are "[a]vailable through Plaintiffs' counsel." *Id.*

Moreover, Plaintiffs have promised to produce these documents.  Following a July 6, 2023 conference of counsel, Plaintiffs sent a letter dated August 3, 2023, in which they agreed to produce "documents sufficient to identify the 1,400 target devices referenced in the complaint" (which is plainly inadequate—Defendants need information about the owners and users of the devices, not the devices themselves) and Plaintiffs' "non-privileged communications with Citizens Lab prior to filing the complaint[1] that concern efforts to identify or communicate with these victims."  On August 23, 2023, Plaintiffs sent another letter promising to produce "documents sufficient to identify the information known to Meta about the 1,400 target devices and victims referenced in the Complaint, including to the extent available, names, IP addresses, email addresses, and position in civil society determined by Citizens Lab."  Finally, on August 24, 2023, Plaintiffs served amended responses and objections to RFP Nos. 2–4, 113–15, and 118, promising to produce "information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint."

Plaintiffs have refused to keep their promise.  In a letter dated August 23, 2023, Plaintiffs represented that they expected to produce the above categories of documents to Defendants by October 27, 2023.  Despite this generous amount of time Plaintiffs gave themselves, they failed to meet their own deadline.  Defendants asked on October 31, 2023 when they would receive these documents, and Plaintiffs ignored this email request.  Defendants made another such request on the record at the November 2, 2023 hearing before this Court, which has also been ignored.  Plaintiffs should be ordered to immediately produce these long-promised documents.

---

[1] Plaintiffs' communications with Citizens Lab should not be limited to those before they filed the Complaint.

November 10, 2023
Page 3

**B.      Plaintiffs' Position**

**II.      SEARCH PARAMETERS FOR RFP NOS. 99–100, 102–09, 125–34, & 162**

**A.      NSO's Position**

NSO's RFP Nos. 99 and 100 seek documents relating to alleged use or access of the WhatsApp Service by Defendants or their customers.  RFP Nos. 102–09 seek documents relating to security vulnerabilities that Plaintiffs allege were created or exploited by Defendants and Plaintiffs' discovery of and responses to those vulnerabilities.  RFP Nos. 125–34 seek documents relating to individuals identified in Plaintiffs' initial disclosures which concern any security vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including, without limitation, the CVE-2019-3568 vulnerability referenced in the Complaint (*see* Compl. ¶ 44).  RFP No. 162 seeks Plaintiffs' communications concerning the Defendants.

In the course of the parties' conferencing, Plaintiffs agreed to search for documents responsive to these requests.  Plaintiffs' August 23, 2023 letter committed to provide NSO with search parameters Plaintiffs proposed to use to identify responsive documents by August 31, 2023.  More than two months after that date, Plaintiffs still have yet to send the proposed search parameters.  If Plaintiffs are going to use "search parameters" rather than producing all responsive documents, NSO asks the Court to order Plaintiffs to send NSO these parameters by not later than November 15, 2023.

**B.      Plaintiffs' Position**

Sincerely,

Aaron Craig, Counsel for Defendants

Craig Cagney, Counsel for Plaintiff

# EXHIBIT E

# KING & SPALDING

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Tel: +1 213 443 4355
Fax: +1 213 443 4310
www.kslaw.com

Aaron Craig
Direct Dial: +1 213 443 4311
ACraig@kslaw.com

December 4, 2023

*Via E-mail*
Craig Cagney, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
craig.cagney@davispolk.com

Re:    *WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.*, 4:19-CV-07123-PJH

Dear Craig:

I write regarding several discovery issues in the above matter.

*First*, in their responses to NSO's Request for Production Nos. 3, 4, 107, 108, 113, 114 and 118, Plaintiffs state, *inter alia*, that they will produce certain "non-privileged" communications with The Citizen Lab ("Citizen Lab"). As to the narrow set of documents Plaintiffs have agreed to produce (all of which are over four years old), Plaintiffs have produced one single document, WA-NSO-00017162 (which we note is a PDF of spreadsheet, not a communication), and we demand that Plaintiffs produce all responsive documents immediately. Moreover, we fail to see any basis upon which any of Plaintiffs' communications with Citizen Lab could be privileged. We need to understand immediately whether, and if so, on what grounds, Plaintiffs is withholding responsive communications with Citizen Lab on the basis of a privilege assertion so that the Court can adjudicate this issue. Finally, Plaintiffs have agreed to produce only such documents that precede the filing of the Complaint, and we do not understand the basis for Plaintiffs' refusal to produce its communications with Citizen Lab that post-date the October 29, 2019, complaint filing. Please provide windows of your availability to meet and confer on this issue this Thursday, December 7 (after 2:00 p.m. EST), or Friday, December 8, 2023.

*Second*, you have ignored my email of November 28, 2023, asking that Plaintiffs produce its documents, in native format, identifying all 1,400 "victims." As you know, we have asked you for this many times, and have drafted a joint discovery-dispute letter to the Court on the subject. On November 12, 2023, in Plaintiffs' portion of that joint letter (which Defendants did not file in reliance on Plaintiffs' representations), you responded: "Plaintiffs agreed to provide documents sufficient to identify the 1,400 target devices referenced in the complaint, **and produced those**

December 4, 2023
Page 2

**materials to NSO on November 12, 2023**.” That was false. To date, Plaintiffs have produced a single PDF identifying fewer than 900 individuals. During our November 22, 2023, conference of counsel, you indicated that Plaintiffs were preparing to produce certain additional responsive documents. My November 28 email requested that Plaintiffs either (i) produce those additional documents by December 1, 2023, or, as applicable, (ii) state why Plaintiffs were unable to make the production by that date. Given Plaintiffs' failure to respond, we understand that Plaintiffs have now reneged on their agreements and are now unwilling to produce these documents absent an order from the Court. We intend to file a motion seeking such an order this week. Moreover, your November 12, 2023, misrepresentation justifies sanctions and we intend to seek them.

*Third*, we are in receipt your November 12, 2023, letter setting forth search parameters Plaintiffs propose to use to search for documents responsive to certain of NSO's Requests for Production. NSO reserves all rights. While NSO appreciates that your client has shared proposed search parameters, NSO will not be "endorsing" Plaintiffs' use of any particular search parameters and any discussions about those search parameters to in any limit Plaintiffs' obligation under Federal Rule 34 to conduct an appropriate search for all documents responsive to NSO's Requests for Production, subject to any agreements the parties may reach concerning the scope of the Requests themselves, or as ordered by the Court.

*Fourth*, we are reviewing your November 30, 2023, letter concerning Plaintiffs' proposed modifications to their Request for Production Nos. 1, 3, 5, 7, 9, 10, 14–17, 19–26 & 28 and Plaintiffs' Interrogatory Nos. 1–3 & 8–10. During our November 22, 2023, conference of counsel, you stated that Plaintiffs would provide revised requests, which would be followed by a conference of counsel. Instead, you have provided us with 25 new requests the afternoon of November 30, 2023 (many of which are so different from the initial requests that they should properly be served as new requests), and have threatened to move to compel responses not just to these 25 new requests, but also to 11 additional requests for production as well as one request for admission, by December 6, 2023. This is not the procedure to which we agreed on November 22, 2023. If Plaintiffs proceed with a motion to compel this week, Defendants will seek sanctions against Plaintiffs for moving to compel with respect to requests that have never been properly propounded under Rule 34 and as to which Defendants have not had a reasonable opportunity to object and respond. Alternatively, we are willing to further discuss these revised discovery requests in connection with our discussion of Plaintiffs' privilege and timing assertions concerning Citizen Lab and any further conferencing you believe is required prior to NSO bringing a motion to compel production of documents including all identifiers for the 1,400 "victims."

Sincerely,

Aaron Craig
Counsel for Defendants

# EXHIBIT F

| | |
|---|---|
| **From:** | Aaron Craig |
| **To:** | Marzorati, Luca; Cagney, Craig |
| **Cc:** | fb.nso; K&S NSO |
| **Subject:** | RE: WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al. |
| **Date:** | Friday, December 15, 2023 5:15:23 PM |
| **Attachments:** | image001.png |

Luca:

As you know, we sent NSO's further written response concerning Plaintiffs' modified document requests on December 13, 2023.

Regarding NSO's requests for Plaintiffs' communications with Citizen Lab, we met and conferred about this at length on December 8, 2023.  We respectfully disagree that there is anything more to discuss, and we intend to proceed accordingly.  It is beyond dispute that Plaintiffs' communications with this putative third-party fact witness identified in Plaintiffs' initial disclosures as having knowledge of core allege conduct challenged in this case (alleged "unauthorized access and abuse of the WhatsApp service") are relevant and that NSO's request for their production is proportional to the needs of the case.  *See, e.g., American Shooting Center, Inc. v. Secfor Int'l*, 2015 WL 11254686, at *3 (S.D. Cal. Jan. 1, 2015) (compelling production of witness communications pertaining to fact issues underlying claims and defenses); *Thomas v.* Ware, 2023 WL 2717462, at **1-2 (E.D. Cal. Mar. 30, 2023) (finding "communications regarding plaintiff's allegations" were relevant and ordering their production); *Caravels LLC v. City of Gainesville, Florida*, 2020 WL 10758492, at *4 (N.D. Fla. July 13, 2020) ("Communications between a witness in a case and a party to that same case concerning [matters that are] the subject of that litigation are obviously relevant. Other communications between that witness and that party are also plainly relevant as possible sources of impeachment evidence."); *Harper v. GEICO*, 2013 WL 12368687, at *1 (affirming magistrate's ruling compelling production of "communications and documents authored or received by individuals listed as Defendants' trial witnesses that pertain, or are relevant to the claims in this case").  Indeed, Plaintiffs have effectively conceded this point by agreeing – over four months ago – to produce pre-suit communications with Citizen Lab that Plaintiffs have since failed, inexcusably, to produce.  Post-suit communications with Citizen Lab (through the present) concerning whether and how Pegasus technology was deployed with alleged deleterious impact on Plaintiffs or users of their services are likewise plainly relevant and proportional, as the above authorities make clear.  Further where, as here, a putative witness is positioned as having knowledge that is key to the claims – here, Plaintiffs' initial disclosures claim that Citizen Lab has knowledge "relevant to the identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service" – the opposing party is entitled to production of communications evidencing "whether there is any relationship between [the witness and the party relying on him] that might affect his credibility either positively or negatively, and to investigate the nature of any such relationship." *Caravels*, 2020 WL 10758492, at *4.  This, obviously, would encompass communications that both pre-date and post-date the initiation of suit.

Finally, we disagree that we have mischaracterized Plaintiffs' position regarding its vague privilege objections to producing relevant and responsive communications with Citizen Lab.  With just three months remaining in fact discovery, Plaintiffs' delay and obfuscation as to the basis, if any, on which it intends to withhold responsive communications with its putative fact witness, Citizen Lab cannot

continue any longer than it already has.  As indicated above, NSO intends to proceed accordingly.

---

**Aaron Craig**
*Partner*

T: +1 213 443 4311  |  E: acraig@kslaw.com  |  Bio  |  vCard

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071



kslaw.com

---

**From:** Marzorati, Luca <luca.marzorati@davispolk.com>
**Sent:** Wednesday, December 13, 2023 12:24 PM
**To:** Aaron Craig <ACraig@KSLAW.com>; Cagney, Craig <craig.cagney@davispolk.com>; Mina Tunson-Stevenson <MTunson@KSLAW.com>
**Cc:** fb.nso <fb.nso@davispolk.com>; Joe Akrotirianakis <JAkro@KSLAW.com>; Ben Lee <BLee@KSLAW.com>
**Subject:** RE: WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.

| CAUTION: **MAIL FROM OUTSIDE THE FIRM** |
|---|

Aaron,

We look forward to receiving your written response.  As we mentioned during our call on Friday, we believe that the Court is expecting us to file a motion in short order, and reserve all rights to file if we do not receive your letter today.

As for your requests related to Plaintiffs' communications with Citizen Lab, we can confirm that we intend to produce non-privileged communications with Citizen Lab made prior to filing the complaint, and our review has not yet identified any privileged communications between Plaintiffs and Citizen Lab during this time period.  Although no such documents have yet been identified, your letter misrepresents our position on these documents.  There are circumstances where such communications could be potentially privileged, and we do not intend to waive any privilege that may apply.  If any such communications are redacted or withheld, we will provide a log identifying the basis for the privilege.

We have not received an explanation as to why communications between Plaintiffs and Citizen Lab made after the complaint was filed are relevant and proportional to the needs of the case.  Unlike the pre-suit communications concerning victim identification, we are not currently aware of any conversations with Citizen Lab after the complaint, or, to the extent such communications do exist, any reason why they would be probative of any issue in this case.  Please provide that explanation, and the date range NSO is seeking, so we can

evaluate your request.

We believe it would be useful to schedule a meet-and-confer to discuss this issue as well as the issues in the letter sent by Plaintiffs yesterday.  Would you please let us know times when you are available to discuss?

Thanks,
Luca
**Luca Marzorati**

**Davis Polk & Wardwell** LLP
+1 212 450 3660 office
+1 718 304 6950 mobile
luca.marzorati@davispolk.com

---

**From:** Aaron Craig <ACraig@KSLAW.com>
**Sent:** Tuesday, December 12, 2023 2:30 PM
**To:** Cagney, Craig <craig.cagney@davispolk.com>; Marzorati, Luca <luca.marzorati@davispolk.com>; Mina Tunson-Stevenson <MTunson@KSLAW.com>
**Cc:** fb.nso <fb.nso@davispolk.com>; Joe Akrotirianakis <JAkro@KSLAW.com>; blee@kslaw.com
**Subject:** RE: WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.

Craig:  Our client is reviewing our written response to Plaintiffs' requests.  I expect we will be able to provide that to you by tomorrow at the latest.

On our call, you stated that you were not aware of any privilege that would govern communications between Plaintiffs and Citizen Lab.  You further stated that there was a contract between Plaintiffs and Citizen Lab.  You refused to rule out the possibility that one or more individuals at Citizen Lab would be called as witnesses at trial.  In light of the foregoing, we ask that Plaintiffs confirm that with respect to Plaintiffs' second amended responses to Defendants' requests for production nos. 3, 4, 107, 108, 113, 114 and 118, wherein Plaintiffs promised to produce "non-privileged communications with Citizen Lab prior to filing the Complaint," that (a) Plaintiffs are not withholding any documents pursuant to any supposed privilege; (b) Plaintiffs will produce all its agreements with Citizen Lab; (c) Plaintiffs will not limit its production to documents that precede the filing of the Complaint; and (d) Plaintiffs will complete its production of these documents by next week.  If you do not so confirm by close of business tomorrow, we will assume that Plaintiffs' response is negative, and we will proceed accordingly.

Aaron

---

**From:** Cagney, Craig <craig.cagney@davispolk.com>
**Sent:** Monday, December 11, 2023 3:28 PM
**To:** Aaron Craig <ACraig@KSLAW.com>; Marzorati, Luca <luca.marzorati@davispolk.com>; Mina Tunson-Stevenson <MTunson@KSLAW.com>
**Cc:** fb.nso <fb.nso@davispolk.com>; Joe Akrotirianakis <JAkro@KSLAW.com>; Ben Lee <BLee@KSLAW.com>
**Subject:** RE: WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.

CAUTION: **MAIL FROM OUTSIDE THE FIRM**

Aaron,

During our meet and confer on Friday, you previewed NSO's position on Plaintiffs' requests, and indicated that you would be sending a letter early this week setting forth those positions in writing. Mindful of the calendar and the Court's instruction that she wants "an order" outlining the discovery NSO is required to produce, please provide NSO's written position by mid-day Pacific time tomorrow.

As discussed on the call, we again request that you identify any of these requests, or any portion thereof, as to which: (1) NSO is willing to agree that the request satisfies the "important" and "specific" factors under *Richmark*, and/or (2) NSO is willing to agree that it will produce documents without further action by the Court. On our call, we did not understand NSO to identify any such request (or portion thereof) other than RFP 26 regarding marketing materials. If NSO is prepared to do so for any other requests, please include that identification in your letter.

Regards,
Craig

**Craig Cagney**

**Davis Polk & Wardwell** LLP
+1 212 450 3162 office
+1 646 413 8148 mobile
craig.cagney@davispolk.com

---

**From:** Aaron Craig <ACraig@KSLAW.com>
**Sent:** Thursday, December 7, 2023 11:19 AM
**To:** Marzorati, Luca <luca.marzorati@davispolk.com>; Mina Tunson-Stevenson <MTunson@KSLAW.com>; Cagney, Craig <craig.cagney@davispolk.com>
**Cc:** fb.nso <fb.nso@davispolk.com>; Joe Akrotirianakis <JAkro@KSLAW.com>; blee@kslaw.com
**Subject:** RE: WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.

Luca: We're available at 2 pm PT tomorrow for this discovery call. I will circulate an invite.

Aaron

---

**From:** Marzorati, Luca <luca.marzorati@davispolk.com>
**Sent:** Wednesday, December 6, 2023 6:47 AM
**To:** Mina Tunson-Stevenson <MTunson@KSLAW.com>; Cagney, Craig <craig.cagney@davispolk.com>
**Cc:** fb.nso <fb.nso@davispolk.com>; Joe Akrotirianakis <JAkro@KSLAW.com>; Aaron Craig <ACraig@KSLAW.com>; Ben Lee <BLee@KSLAW.com>
**Subject:** RE: WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.

CAUTION: **MAIL FROM OUTSIDE THE FIRM**

Counsel,

We are in receipt of your letter dated December 4, 2023.

We are able to meet and confer regarding the issues in your letter, including Plaintiffs' discovery requests, on December 8, 2023 before 10:30 AM PT or after 12 PM PT.  To facilitate our discussion, we request that you are prepared to provide your position as to whether any of the requests in our November 30, 2023 letter, or any portion thereof, are sufficiently important and specific under *Richmark*.

Thanks,
Luca
**Luca Marzorati**

**Davis Polk & Wardwell** LLP
+1 212 450 3660 office
+1 718 304 6950 mobile
luca.marzorati@davispolk.com

---

**From:** Mina Tunson-Stevenson <MTunson@KSLAW.com>
**Sent:** Monday, December 4, 2023 10:42 PM
**To:** Cagney, Craig <craig.cagney@davispolk.com>
**Cc:** fb.nso <fb.nso@davispolk.com>; Joe Akrotirianakis <JAkro@KSLAW.com>; Aaron Craig <ACraig@KSLAW.com>; blee@kslaw.com
**Subject:** WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.

Counsel,
Please see the attached correspondence from Mr. Craig.  Thank you.

---

**Wilhelamina Tunson-Stevenson**
LPA Coordinator & Development Specialist

T: +1 213 443 4338  |  E: mtunson@kslaw.com

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071



kslaw.com

---

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message. Click here to view our Privacy Notice.

# EXHIBIT G

# King & Spalding

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Tel: +1 213 443 4355
Fax: +1 213 443 4310
www.kslaw.com

Aaron Craig
Direct Dial: +1 213 443 4311
ACraig@kslaw.com

August 18, 2023

*Via E-mail*

The Honorable Phyllis J. Hamilton
Senior United States District Judge
Oakland Courthouse, Courtroom 3
1301 Clay Street
Oakland, CA 94612

Dear Judge Hamilton:

Pursuant to the Court's standing order, the parties hereby submit this Joint Letter describing the below discovery disputes.  Counsel for the parties conferred by videoconference on July 6 and August 11, 2023, and through letters dated July 17 and August 3, 2023.  The below summarizes remaining disputes the parties have been unable to resolve.

**Dispute no. 1:  Plaintiffs' Response to NSO's RFPs No. 2-4, and 113-115**

**Defendants' Position:**  Defendants respectfully request an order compelling production of documents responsive to Requests for Production Nos. 2-4 and 113–115, which seek documents containing information identifying the *owners and users* of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint and communications with those persons.  Plaintiffs seek to provide only information identifying the "devices," but not their users or owners.

Plaintiffs have made the identities of the 1,400 "Target Users" central to their claims, alleging "Defendants caused their malicious code to be transmitted over WhatsApp servers in an effort to infect approximately 1,400" devices the "Target Users" of which "*included attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials.*"  Complaint (Dkt. No. 1) ¶ 42 (emphasis added).

Plaintiffs have claimed (over and over) that Pegasus was not used against criminals or terrorists but against human rights activists and others and have repeatedly reiterated the importance of the identities of these 1,400 individuals—often referring to them as the "victims" in filings.  For example, in the Joint Case Management Statement (Dkt. No. 76), the second paragraph of Plaintiffs' chronology of the facts begins: "Between in and around April 2019 and May 2019, Defendants used WhatsApp servers, located in the United States and elsewhere, to send their Spyware to approximately 1,400 mobile phones and devices belonging to attorneys, journalists, human rights activists, government officials and others."  Plaintiffs have employed similar rhetoric throughout the pendency of the case, *see, e.g.*, Dkt. No. 109 at 3; Dkt. No. 116 at 2; Dkt. No. 125 at 1; Dkt. No. 140 at 1; Dkt. No. 144 at 1; Dkt. No. 163 at 4; Dkt. No. 189 at 3.

Plaintiffs agreed in their initial disclosures to produce "documents relating to identification of *victims*."  Pl. Initial Discl. ¶ B.  That is exactly what Defendants are now trying to discover.  Plaintiffs are now refusing to produce the documents identifying the users or owners (i.e. the "victims") that they promised in their initial disclosures, and now agree only to produce information identifying the devices, not their users or owners.  The apparent explanation for Plaintiffs' change of heart is a realization that the 1,400 "victims" are, in fact, the terrorists and serious criminals Defendants' cyber-surveillance technology is intended to be used by foreign governments to investigate and prosecute.  Plaintiffs should be compelled to produce the information they have about the identities of the 1,400 users.

**Plaintiffs' Position**:

**Dispute no. 2:  Plaintiffs' Response to NSO's RFP No. 111**

**Defendants' Position:**  Defendants respectfully request an order compelling Plaintiffs to provide documents responsive to RFP No. 111, which seeks documents relating "to Plaintiffs' enforcement of any term in WhatsApp's Terms of Service that Plaintiffs allege Defendant violated." Defendants contend Plaintiffs' general practice is to not enforce many provisions in their terms of service, including breaches of the provisions Plaintiffs have accused NSO of breaching. These documents support NSO's defenses to Plaintiff's breach of contract claim. *See Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 181 (S.D.N.Y. 2006) (refusing full enforcement of contract term based on plaintiff's selective enforcement); *Surgidev Corp. v. Eye Tech., Inc.*, 648 F. Supp. 661, 698 (D. Minn. 1986) (holding plaintiff waived contractual provision through failure to enforce it).

Defendants have taken reasonable steps to reduce any burden to Plaintiffs. During the parties' meet and confer videoconferences, Defendants agreed to narrow their request to a date range of January 1, 2016 to the present, and to limit the terms of service at issue *only* to those set forth in paragraphs 20-22 of the Complaint: "Terms also required users to agree not to: "(a) reverse engineer, alter, modify, create derivative works from, decompile, or extract code from our Services; (b) send, store, or transmit viruses or other harmful computer code through or onto our Services; (c) gain or attempt to gain unauthorized access to our Services or systems; (d) interfere with or disrupt the safety, security, or performance of our Services; [or] . . . (f) collect the information of or about our users in any impermissible or unauthorized manner."  (Dkt. No. 1 ¶ 22.)

Despite Defendants' good-faith attempt to narrow its request—and the obvious relevance of the documents sought—Plaintiffs have categorically refused to search for or produce *any* responsive documents. The basis for that refusal is an unsubstantiated assertion of burdensomeness. But Plaintiffs chose to bring a breach of contract claim based on the terms of WhatsApp's Terms of Service and cannot thereafter be heard to complain that producing evidence directly relevant to that claim is unduly burdensome. In any event, Plaintiffs have made no effort to substantiate any burdensomeness of responding to RFP No. 111, let alone that the burden would outweigh Defendants' need for responsive documents.

**Plaintiff's Position:**

**Dispute no. 3:  Plaintiffs' Response to NSO's RFPs No. 135-158**

**Defendants' Position:**  Defendants' respectfully request an order compelling Plaintiffs to provide documents responsive to RFPs Nos. 135–158, which seek Plaintiffs' communications with 24 third parties upon which Plaintiffs served subpoenas *duces tecum*, including Amazon Web Services, 365 Group, and AT&T Mobility.  These communications comprise statements made between Plaintiffs and potential witnesses in this case about documents and other matters that Plaintiffs believe to be relevant to the parties' claims or defenses and proportional to the needs of the case, i.e., within the scope of permissible discovery under Rule 26(b)(1).  Plaintiffs refuse to produce these communications, claiming they are privileged against disclosure as "attorney work-product."  Plaintiffs, however, have not provided a privilege log or any other basis to conclude that their communications with third parties related to third-party subpoenas are somehow protected work product.  And such "routine communication[s] and negotiation with the third part[ies]" are highly unlikely to be "the proper subject for work product protection." *Wilson v. Conair Corp.*, 2015 WL 5326206, at *4-5 (E.D. Cal. Sept. 11, 2015) (ordering plaintiff to produce communications with recipients of third-party subpoenas and because the communications did not "fall within the work product doctrine").

Even if some of Plaintiffs' communications with third parties could somehow be protected work product, Plaintiffs have waived any right to work product protection by making these communications to third parties without any assurance of those communications being shielded from NSO.  "Disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." *U.S. v. Sanmina Corp.*, 968 F.3d 1107 (9th Cir. 2020).

To be clear, Defendants are not seeking Plaintiffs' attorneys' confidential mental impressions or any internal communications between or among Plaintiffs and their attorneys.  Only Plaintiff's communications *with third parties* are sought.  Those third-party communications are unlikely to include any protected work product and, even if they did, the work-product protection would have been waived, and Defendants would be entitled to the communications in any event.  Plaintiffs should therefore be ordered to produce the requested communications.

**Plaintiffs' Position:**

The parties thank the Court for its attention to these issues.

Sincerely,

Aaron Craig, Counsel for Defendants

Craig Cagney, Counsel for Plaintiff

# EXHIBIT H

**Davis Polk**

Craig Cagney
+1 212 450 3162
craig.cagney@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

August 23, 2023

Re: *WhatsApp, LLC, et al., v. NSO Group Techs. Ltd. et al.*, 4:19-cv-7123 (PJH)

<u>Via Email</u>

Aaron Craig
King & Spalding LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071

Dear Aaron:

We write to summarize and to follow up on our August 11, 2023 meet-and-confer, and to respond to certain issues that you raised in the draft of your joint letter sent on August 18, 2023.



**Davis Polk**   Aaron Craig



**NSO's Responses and Objections to Plaintiffs' Second Set of Requests for Production**

**Request for Production No. 30.**  During our August 11, 2023 meet-and-confer, we confirmed that we are at an impasse with respect to Plaintiffs' Request for Production No. 30.  Catalina Vergara of O'Melveny & Myers LLP, which is representing Plaintiffs with respect to this dispute, sent you a copy of Plaintiffs' portion of the joint letter on August 21, 2023.

**Requests for Admission Nos. 30, 34–38.**  During our August 11, 2023 meet-and-confer, you confirmed that NSO's responses and objections to Plaintiffs' Requests for Admission Nos. 30 and 34 through 38 used NSO's own definition of "Control," rather than the definition of "Control" in Plaintiffs' Requests for Admission. You explained that NSO substituted its definition because NSO believes Plaintiffs' definition is broader than the plain meaning of "Control."  You also confirmed that NSO did not have trouble understanding the RFA as Plaintiffs propounded it, and does not contend that Plaintiffs' definition of "Control" is vague, ambiguous, or unintelligible.  You further indicated that NSO may be willing to provide more information if the RFA were reformulated, but did not specify a reformulation that NSO would be willing to address.  In your follow-up email sent on August 14, 2023, you confirmed that NSO's responses and objections to Plaintiffs' Requests for Admission Nos. 36 and 37 would be the same under WhatsApp's definition of "Control."

We respectfully ask NSO to reconsider its position.  If NSO objects to the use of the word "Control" as the RFAs define it, NSO may simply qualify its response accordingly, but is nonetheless obliged to respond to the full scope of each RFA, which asks with respect to the subject matter whether NSO has the "ability, either directly or indirectly, to access, use, direct, manage, or modify, whether as a result of ownership or

**Davis Polk**    Aaron Craig

one or more contractual relationships."  Please be prepared to indicate on our next meet and confer whether or not NSO will do so.  We request that NSO serves revised responses and objections to Plaintiffs' Requests for Admission by August 29, 2023.

**Plaintiffs' Responses and Objections to NSO's Requests for Production**

*Requests for Production Nos. 99, 100, 102–109 (Access and Exploitation by Defendants)*, *Requests for Production Nos. 125–134 (Individuals Identified in WhatsApp's Initial Disclosures), 162 (Communications Relating to NSO)*.  As discussed, we will promptly serve amended responses and objections explaining how these Requests will be addressed with the production of documents as set forth in Search Parameters.  We are aiming to share our Search Parameters with you by August 31, 2023.

*Request for Production No. 110* (*WhatsApp Terms of Service*):  As discussed, we are continuing to gather responsive documents in response to Request for Production No. 110.  We are aiming to share all responsive documents with you by August 25, 2023.

*Request for Production No. 111 (Enforcement of WhatsApp's Terms of Service)*.  We explained our position as to why discovery related to the enforcement of WhatsApp's Terms of Service against other entities is not relevant or proportional to the needs of the case.  Even as narrowed, NSO's request may require Plaintiffs to search for and collect documents related to numerous additional enforcement actions, and then review them to determine their similarity to NSO's actions.  Plaintiffs preserve their objections and reserve all rights.  However, to avoid burdening the Court with a dispute, Plaintiffs will collect and produce a repository of documents that detail findings about threats that Plaintiffs detect and remove across their technologies.

*Requests for Production Nos. 2–4, 113–115 (1,400 Target Devices), 118 (Communications with Citizens Lab)*.  As discussed during the meet-and-confer, and as described in our August 3, 2023 letter, Plaintiffs will agree to produce (1) the form message sent to all affected WhatsApp users, and (2) document sufficient to identify the information known to Meta about the 1,400 target devices and victims referenced in the complaint, including to the extent available, names, IP addresses, email addresses, and position in civil society determined by Citizens Lab;  and (3) non-privileged communications with Citizens Lab prior to filing the complaint that concern efforts to identify or communicate with these victims.  We believe that this moots the first dispute raised in your draft letter sent on August 18, 2023.

Pursuant to Plaintiffs' Terms of Service and regulatory obligations, Plaintiffs must provide notice to affected users of the disclosure of their personally identifiable information, and allow time for them to take steps in the litigation to prevent disclosure.  In the absence of any such actions, Plaintiffs expect to produce this information to NSO by October 27, 2023.

*Requests for Production Nos. 135–158 (Communications with Subpoena Recipients)*.  We have reviewed NSO's portion of the joint letter and we disagree that such communications are not entitled to work product protection and that NSO has shown a substantial need for these communications.  In the interest of not burdening the Court with unnecessary disputes, however, Plaintiffs will agree to produce non-privileged communications sent to or received from the subpoena recipients, while reserving all rights and objections.  We believe that this moots the third dispute raised in your draft letter sent on August 18, 2023.

**Davis Polk**   Aaron Craig

Please let us know when you are able to meet-and-confer regarding these issues.

Very truly yours,

*/s/ Craig Cagney*

Craig Cagney

Cc:     Joseph Akrotirianakis (via email)
        Matthew Noller (via email)
        Carla Christofferson (via email)
        Christine Choi (via email)

# EXHIBIT I

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
    (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
             antonio.perez@davispolk.com
             craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email:    micah.block@davispolk.com

Ronald Lehmann
    (admitted *pro hac vice*)
FBC & CO.
146 Menachem Begin Road
Tel Aviv 6492103, Israel
Telephone: 972.3.694.4145
Facsimile: 972.3.609.1116
Email: rlehmann@fbclawyers.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and META PLATFORMS, INC., a Delaware corporation,<br><br>                              Plaintiffs,<br><br>        v.<br><br>NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD.,<br><br>                              Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES LIMITED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

1

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Civil Local Rule

2 34 of the Local Rules of Practice in Civil Proceedings before the United States District Court for

3 the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. (collec-

4 tively, "Plaintiffs"), by and through their attorneys, hereby respond and object as follows to the

5 First Set of Requests for Production of Defendant NSO Group Technologies Limited ("NSO")

6 dated March 7, 2023 (each a "Request," and collectively, the "Requests") in the above-captioned

7 action (the "Action").

8    Each response is made only for the purpose of this Action and for no other purpose.  Plain-

9 tiffs' Responses and Objections are made without in any way waiving or intending to waive (i)

10 any objections, including, without limitation, as to the competency, relevancy, materiality, propri-

11 ety, privilege, or admissibility as evidence, for any purpose, of any documents or communications

12 produced in response to the Requests and (ii) the right to object on any ground to the use of any

13 documents or communications produced in response to the Requests at any proceedings, hearings,

14 arbitration, or trial.  All evidentiary objections and grounds are expressly reserved.

15    Plaintiffs' Responses and Objections, and any production of documents or communications

16 in response to the Requests, does not waive or intend to waive (and on the contrary, reserves and

17 intends to reserve) any objections available to it, nor do Plaintiffs accept, adopt, or concede the

18 truth or validity of any characterization made in the Requests.  Moreover, no objection or limita-

19 tion, or lack thereof, made in these Responses and Objections shall be deemed an admission by

20 Plaintiffs that (i) any particular evidence exists, or is relevant, probative, nonprivileged, or admis-

21 sible in evidence; or (ii) any statement or characterization in the Requests is accurate or complete.

22    A statement that the Plaintiffs will produce information or documents in response to a par-

23 ticular Request is not to be construed as an admission that any responsive information or docu-

24 ments now exist or previously existed, or that any such information or documents are within Plain-

25 tiffs' possession, custody, or control.

26    The service of these Responses and Objections should not be construed as a waiver of any

27 right, including but not limited to, the right to assert additional objections to individual Requests

28 or to supplement or amend them as discovery and fact development progresses.

1    Subject to and without waiving any of the following objections, counsel for Plaintiffs is

2    available to meet in good faith with NSO concerning the Requests and these Responses and Ob-

3    jections.

4                                    **GENERAL OBJECTIONS**

5    The following General Objections form a part of, and are hereby incorporated into, the

6    response to each and every Request as set forth below.  Nothing in the Responses and Objections

7    to the Requests should be construed as a waiver of these General Objections.  Not listing an ob-

8    jection herein does not constitute a waiver of that objection or otherwise preclude Plaintiffs from

9    raising that objection later.  Plaintiffs' failure to object to a Request, or any future agreement to

10   produce responsive documents, is not a representation that any such documents exist or are within

11   Plaintiffs' possession, custody, or control.  Any future production pursuant to the Requests or oth-

12   erwise is not to be construed as an admission that any Request is proper.

13        1.    Plaintiffs object to the Requests and to each Definition, Instruction, and specific

14   Request contained therein to the extent that they purport to impose obligations on Plaintiffs that

15   are broader than and/or inconsistent with those required by the Federal Rules of Civil Procedure,

16   the Local Rules of the Northern District of California, or any other applicable law, rule, or court

17   order.  Plaintiffs will withhold all documents in response to the Requests that it has no obligation

18   to produce under any such applicable law, rule, or court order.

19        2.    Plaintiffs object to those portions of the Requests that are vague, ambiguous, unduly

20   broad, overly burdensome, oppressive, capable of multiple interpretations, do not identify with

21   particularity the documents sought, lack sufficient precision to allow Plaintiffs to formulate an

22   appropriate response, irrelevant to a party's claim or defense, or not proportional to the needs of

23   the case.

24        3.    Plaintiffs object to any Request seeking "any" or "all" documents or communica-

25   tions on the grounds that it is unduly broad and overly burdensome and to the extent it attempts to

26   impose obligations beyond those imposed by the Applicable Rules.  Plaintiffs cannot guarantee

27   that they will have located every single document responsive to a particular Request.  Subject to

28

3

the General Objections and any qualifications below, Plaintiffs will respond to any Request seeking "any" or "all" documents by producing the responsive, nonprivileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith.

4.     Plaintiffs object to the Requests to the extent that they are duplicative or seek documents or communications not within Plaintiffs' possession, custody, or control.  By responding to the Requests, Plaintiffs do not concede that any category of documents or communications that the Requests seek does in fact exist or that such materials are in the possession, custody, or control of Plaintiffs.

5.     Plaintiffs object to the Requests to the extent they seek documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  Plaintiffs will withhold all privileged or otherwise protected documents or communications in response to the Requests. Any production of privileged or otherwise protected documents or communications would be inadvertent and would not constitute a waiver of any claim or privilege or other exemption from production.  Plaintiffs reserve the right to obtain the return of such documents or communications and prohibit their use in any manner, and hereby request the return of any such inadvertently produced privileged documents or communications and reserve the right to object to the disclosure or use of such privileged documents or communications at any stage of these or any other proceedings pursuant to § 13 of the Stipulated Protective Order (ECF No. 132).

6.     Plaintiffs object to the Requests to the extent that they seek disclosure of documents or communications as to which Plaintiffs owe a duty of nondisclosure to a third party, or the production of which would result in the violation of any contractual obligation to a third party.

7.     Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they seek the production of non-public, proprietary, or other confidential or highly confidential information—including business, commercial, financial,

personal, consumer, customer, client, private, commercially/competitively sensitive, regulatory, and/or trade secret information—of Plaintiffs or third parties.  Plaintiffs will designate such information as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" consistent with § 5.2 of the Stipulated Protective Order (ECF No. 132).

8.      Plaintiffs object to the Requests to the extent they request documents or communications otherwise available to NSO in the public domain, or from some other source that is more convenient, less burdensome, or less expensive.

9.      Plaintiffs object to the Requests to the extent they seek documents or communications already in the possession, custody or control of NSO, or call for duplicative documents or communications.

10.     Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they purport to impose an obligation to preserve and/or produce any information or documents that are newly created or received after the receipt of the Requests, because efforts to preserve and/or produce such documents or information would be unduly burdensome and require unreasonable expense.

11.     With respect to the Definitions and Instructions in the Requests, Plaintiffs object to the extent that they purport to define those terms differently from how those terms are defined by the Applicable Rules; depart from the customary meaning of any term or provide definitions that are inaccurate; or are based on premises that are misleading, inaccurate, or incomplete.

## OBJECTIONS TO INSTRUCTIONS

1.      Plaintiffs object to Instruction No. 1, and to any Request seeking "all" documents in their possession, custody, or control, on the grounds that Plaintiffs cannot guarantee that they have located every single document responsive to a particular Request.  Plaintiffs further object to Instruction No. 1 as vague, ambiguous, unduly broad, and overly burdensome to the extent it calls for responses to Requests to be from any "affiliates, agents, attorneys, consultants, investigators, or other persons acting on" Plaintiffs' behalf regardless of whether searching such entities is reasonable or overly burdensome.

5

2.      Plaintiffs object to Instruction No. 2 to the extent that it seeks production of documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

3.      Plaintiffs object to Instruction No. 4 as unduly broad and overly burdensome to the extent it requires Plaintiffs to include on a privilege log materials other than those materials identified after a reasonable search conducted in good faith.

## OBJECTIONS TO DEFINITIONS

1.      Plaintiffs object to the definition of "all" and "any" and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Subject to the General Objections and any qualifications below, Plaintiffs will respond to any Request seeking "all" documents by producing the responsive, non-privileged documents within their possession, custody, and control that can be located after a reasonable search conducted in good faith.

2.      Plaintiffs object to the definitions of "Communication(s)" and "Documents(s)" and to any Request incorporating that definition, insofar as they are ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.

3.      Plaintiffs object to the definition of "Concerning" insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition of concerning beyond the general understanding of that term, including because it includes "relating to."  Plaintiffs will treat "Concerning" as meaning "regarding, describing, or reflecting."

4.     Plaintiffs object to the definition of "Relate(d) to," "refer to," "refer or relate to" and "reflecting," and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition beyond the general understanding of that term.  Plaintiffs will treat "Relate(d) to," "refer to," "refer or relate to" and "reflecting" as meaning "regarding, describing, or reflecting."

5.     Plaintiffs object to the definitions of "Meta," "You," "Your," and "Plaintiffs," and to any Request incorporating those definitions, on the grounds that they are unduly broad, vague, ambiguous, overly burdensome, encompass persons or entities not relevant to this action, refer to unknown persons or entities, and not proportional to the needs of the case.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST FOR PRODUCTION NO. 1:

All Documents that Plaintiffs have received pursuant to any third party subpoena served in this litigation.

### RESPONSE TO REQUEST FOR PRODUCTION FOR PRODUCTION NO. 1:

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents "that Plaintiffs have received pursuant to any third party subpoena served in this litigation," without limitation, regardless of whether such Documents are relevant to any issue in the Action.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents and communications that are responsive to this Request and are in Plaintiffs' possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 2:

All Documents referring or relating to the identity of the owners of the "approximately 1,400 Target Devices" and/or the identity of the "Target Users" referenced in Paragraph 1 of the Complaint in this action.

7

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents "referring or relating to the identity of the owners of the 'approximately 1,400 Target Devices' and/or the identity of the 'Target Users,'" without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "referring or relating to" is overbroad, vague, and ambiguous.

Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 3:**

All Communications between You and any of the owners of the Target Devices and/or the Target Users referenced in Paragraph 1 of the Complaint in this action about the "infect[ion of] the Target Devices" referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Communications between Plaintiffs and "any of the owners of the Target Devices and/or the Target Users," without limitation, regardless of whether such Communications are relevant to any issue in the Action.

1   Plaintiffs further object to this Request because the phrase "You" is overbroad, vague, and ambig-

2   uous.  Plaintiffs further object to this Request to the extent that it seeks the production of materials

3   that would violate the privacy interests of others.

4          Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

5   **REQUEST FOR PRODUCTION NO. 4:**

6          All Communications referring or relating to the Target Users and/or the approximately

7   1,400 Target Devices referenced in Paragraph 1 of the Complaint in this action.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

9          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

10  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

11  unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

12  fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

13  Communications "referring or relating to the Target Users and/or the approximately 1,400 Target

14  Devices" without limitation, regardless of whether such Communications are relevant to any issue

15  in the Action.  Plaintiffs further object to this Request because the phrase "referring or relating to"

16  is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request to the extent that it

17  seeks the production of materials that would violate the privacy interests of others.

18         Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

19  **REQUEST FOR PRODUCTION NO. 5:**

20         All Documents and Communications that refer or relate to Plaintiffs' reputation(s) between

21  January 2018 and the date of Plaintiffs' responses.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

23         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

24  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

25  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

26  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

27  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

28  Request because the phrase "refer or relate to Plaintiffs' reputation(s)" is overbroad, vague, and

9

ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications that refer or relate to the goodwill between Plaintiffs and their users and potential users between January 2018 and the date of Plaintiffs' responses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to the goodwill" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications that refer or relate to public trust placed in Plaintiffs by their users and potential users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the

10

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to public trust" is overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications that refer or relate to the possibility of Plaintiffs entering into a business transaction, directly or indirectly, with NSO or any of its affiliated companies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to," "the possibility," and "entering into a business transaction" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to the Request because it is calculated to annoy and harass.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications that refer or relate to the possibility of Plaintiffs entering into a business transaction, directly or indirectly with NSO or any of its affiliated companies Concerning Pegasus.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "refer or relate to," "the possibility," "entering into a business transaction," and "Concerning" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request. Plaintiffs further object to the Request because it is calculated to annoy and harass.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications that refer or relate to the possibility of Plaintiffs entering into a business transaction with any companies, other than NSO and its affiliated companies, that manufacture or sell Spyware or any cyber security solutions used by law enforcement agencies and/or governments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "refer or relate to," "the possibility," "entering into a business transaction," and "any companies" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2  to the Request.

3  **REQUEST FOR PRODUCTION NO. 11:**

4    All Documents and Communications that refer or relate to the possibility of Plaintiffs en-

5  tering into a business transaction with any companies, other than NSO and its affiliated companies,

6  that manufacture or sell Spyware.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

8    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

10  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

11  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

12  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

13  Request because the phrases "refer or relate to," "the possibility," "entering into a business trans-

14  action," and "any companies" are overbroad, vague, and ambiguous.  Plaintiffs further object to

15  the Request because the request of "[a]ll" Documents and Communications is unduly burdensome

16  and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

17    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

18  to the Request.

19  **REQUEST FOR PRODUCTION NO. 12:**

20    All Documents and Communications that refer or relate to the effect on the reputation of

21  any of the Plaintiffs of Facebook's violation(s) of the FTC Order.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

23    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

24  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

25  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

26  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

27  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

28  Request because the phrase "refer or relate to the effect on the reputation" is overbroad, vague,

13

and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 13:**

All non-privileged internal Communications that refer or relate to Facebook's violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll non-privileged internal Communications" is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 14:**

All Communications between any of the Plaintiffs and any government or government agency that refer or relate to Facebook's violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the

14

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 15:**

All Communications between any of the Plaintiffs and any consultant, public relations company, or crisis management company that refer or relate to Facebook's violation(s) of the FTC order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications that refer or relate to the effect on the reputation of any of the Plaintiffs of the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

2          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

3    jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

4    unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

5    fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

6    basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

7    Request because the phrases "refer or relate to the reputation" and "any of the Plaintiffs" are over-

8    broad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll"

9    Documents and Communications is unduly burdensome and unreasonable in light of the vague-

10   ness, ambiguity, and overbreadth of the rest of the Request.

11         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

12   to the Request.

13   **REQUEST FOR PRODUCTION NO. 17:**

14         All non-privileged internal Communications that refer or relate to the $5 billion fine im-

15   posed against Facebook for violation(s) of the FTC Order.

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

17         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

18   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

19   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

20   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

21   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

22   Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs

23   further object to the Request because the request of "[a]ll" non-privileged internal Communica-

24   tions is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth

25   of the rest of the Request.

26         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

27   to the Request.

28

**REQUEST FOR PRODUCTION NO. 18:**

All Communications between any of the Plaintiffs and any government or government agency that refer or relate to the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any of the Plaintiffs" and "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 19:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object

1   to the Request because the request of "[a]ll" Communications is unduly burdensome and unrea-

2   sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

3         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

4   to the Request.

5   **REQUEST FOR PRODUCTION NO. 20:**

6         All Documents and Communications related to the effect on the reputation of any of the

7   Plaintiffs of Facebook's relationship with Cambridge Analytica.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

9         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

10  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

11  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

12  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

13  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

14  Request because the phrases "related to the effect on the reputation" and "relationship" are over-

15  broad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll"

16  Documents and Communications is unduly burdensome and unreasonable in light of the vague-

17  ness, ambiguity, and overbreadth of the rest of the Request.

18        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19  to the Request.

20  **REQUEST FOR PRODUCTION NO. 21:**

21        All non-privileged internal Communications that refer or relate to Facebook's relationship

22  with Cambridge Analytica.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

24        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

25  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

26  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

27  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

28  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

1   Request because the phrases "refer or relate to" and "relationship" are overbroad, vague, and am-

2   biguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged in-

3   ternal Communications is unduly burdensome and unreasonable in light of the vagueness, ambi-

4   guity, and overbreadth of the rest of the Request.

5       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

6   to the Request.

7   **REQUEST FOR PRODUCTION NO. 22:**

8       All Communications between any of the Plaintiffs and any government or government

9   agency that refer or relate to Facebook's relationship with Cambridge Analytica.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

11      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

12  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

13  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

14  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

15  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

16  Request because the phrases "any government or government agency," "refer or relate to," and

17  "relationship" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request be-

18  cause the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of

19  the vagueness, ambiguity, and overbreadth of the rest of the Request.

20      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

21  to the Request.

22  **REQUEST FOR PRODUCTION NO. 23:**

23      All Communications with any consultant, public relations company, or crisis management

24  company that refer or relate to Facebook's relationship with Cambridge Analytica.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

26      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

27  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

28

1  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

2  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

3  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

4  Request because the phrases "any consultant, public relations company, or crisis management

5  company," "refer or relate to," and "relationship" are overbroad, vague, and ambiguous.  Plaintiffs

6  further object to the Request because the request of "[a]ll" Communications is unduly burdensome

7  and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

8       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

9  to the Request.

10  **REQUEST FOR PRODUCTION NO. 24:**

11       All Documents and Communications related to the effect on the reputation of any of the

12  Plaintiffs of Facebook's role in allowing misinformation to be published in connection with the

13  2016 U.S. presidential election.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

15       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

16  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

17  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

18  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

19  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

20  Request because the phrases "related to the effect on the reputation," "role in allowing misinfor-

21  mation to be published," and "in connection with" are overbroad, vague, and ambiguous.  Plaintiffs

22  further object to the Request because the request of "[a]ll" Documents and Communications is

23  unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the

24  rest of the Request.

25       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

26  to the Request.

27

28

20

**REQUEST FOR PRODUCTION NO. 25:**

All non-privileged internal Communications that refer or relate to Facebook's role in allowing misinformation to be published in connection with the 2016 U.S. presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to," "role in allowing misinformation to be published," and "in connection with" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 26:**

All Communications with any government or government agency that refer or relate to Facebook's role in allowing misinformation to be published in connection with the 2016 U.S. presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," "role in allowing misinformation to be published," and "in connection with" are overbroad, vague, and

21

ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 27:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Facebook's role in allowing misinformation to be published in connection with the 2016 U.S. presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," "role in allowing misinformation to be published," and "in connection with" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 29:**

All non-privileged internal Communications that refer or relate to the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 30:**

All Communications with any government or government agency that refer or relate to the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 31:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

24

**REQUEST FOR PRODUCTION NO. 32:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar against the Rohingya peoples.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "role . . . in the genocide" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 33:**

All non-privileged internal Communications that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar against the Rohingya peoples.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "role . . . in the genocide" are overbroad,

1  vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-

2  privileged internal Communications is unduly burdensome and unreasonable in light of the vague-

3  ness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to this Re-

4  quest to the extent that it seeks documents and communications not within Plaintiffs' possession,

5  custody, or control.

6          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

7  to the Request.

8  **REQUEST FOR PRODUCTION NO. 34:**

9          All Communications between any of the Plaintiffs and any government or government

10  agency that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in the gen-

11  ocide in Myanmar against the Rohingya peoples.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34**

13          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

14  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

15  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

16  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

17  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

18  Request because the phrases "any government or government agency," "refer or relate to," and

19  "role . . . in the genocide" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

20  Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable

21  in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further

22  object to this Request to the extent that it seeks documents and communications not within Plain-

23  tiffs' possession, custody, or control.

24          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

25  to the Request.

26

27

28

**REQUEST FOR PRODUCTION NO. 35:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar against the Rohingya peoples.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "role . . . in the genocide" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

Request because the phrases "related to the effect on the reputation" and "plans to use" are over-broad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vague-ness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 37:**

All non-privileged internal Communications that refer or relate to Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "plans to use" are overbroad, vague, and am-biguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 38:**

All Communications with any government or government agency that refer or relate to Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 39:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Facebook's collection of its users' email contacts without obtaining consent.

29

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 41:**

All non-privileged internal Communications that refer or relate to Facebook's collection of its users' email contacts without obtaining consent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

1   **REQUEST FOR PRODUCTION NO. 42:**

2   All Communications with any government or government agency that refer or relate to

3   Facebook's collection of its users' email contacts without obtaining consent.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

5   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

6   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

7   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

8   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

9   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

10  Request because the phrases "any government or government agency" and "refer or relate to" are

11  overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of

12  "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambi-

13  guity, and overbreadth of the rest of the Request.

14  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

15  to the Request.

16  **REQUEST FOR PRODUCTION NO. 43:**

17  All Communications with any consultant, public relations company, or crisis management

18  company that refer or relate to Facebook's collection of users' email contacts without obtaining

19  consent.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

21  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

22  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

23  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

24  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

25  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

26  Request because the phrases "any consultant, public relations company, or crisis management

27  company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object

28

31

to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 45:**

All non-privileged internal Communications that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 46:**

All Communications with any government or government agency that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of

the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 47:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of minors.

34

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 49:**

All non-privileged internal Communications that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2    to the Request.

3    **REQUEST FOR PRODUCTION NO. 50:**

4    All Communications with any government or government agency that refer or relate to the

5    role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of

6    minors.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

8    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9    jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

10    unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

11    fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

12    basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

13    Request because the phrases "any government or government agency," "refer or relate to," and

14    "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the

15    request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vague-

16    ness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request

17    to the extent that it seeks documents and communications not within Plaintiffs' possession, cus-

18    tody, or control.

19    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

20    to the Request.

21    **REQUEST FOR PRODUCTION NO. 51:**

22    All Communications with any consultant, public relations company, or crisis management

23    company that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in in-

24    creases in depression and/or suicide of minors.

25    **RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

26    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

27    jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

28

36

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 52:**

All non-privileged internal Communications that refer or relate to the Plaintiffs' serving of micro-targeted advertisements to emotionally vulnerable minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "serving of micro-targeted advertisements" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 53:**

All Communications with any government or government agency that refer or relate to the Plaintiffs' serving of micro-targeted advertisements to emotionally vulnerable minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to" and "serving of micro-targeted advertisements" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 54:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the Plaintiffs' serving of micro-targeted advertisements to emotionally vulnerable minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management

company," "refer or relate to" and "serving of micro-targeted advertisements" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 56:**

All non-privileged internal Communications that refer or relate to the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

1  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

2  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

3  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

4  Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs

5  further object to the Request because the request of "[a]ll" non-privileged internal Communica-

6  tions is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth

7  of the rest of the Request.

8      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

9  to the Request.

10  **REQUEST FOR PRODUCTION NO. 57:**

11      All Communications with any government or government agency that refer or relate to the

12  documents leaked by whistleblower Frances Haugen in October 2021.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

14      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19  Request because the phrases "any government or government agency" and "refer or relate to" are

20  overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of

21  "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambi-

22  guity, and overbreadth of the rest of the Request.

23      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

24  to the Request.

25  **REQUEST FOR PRODUCTION NO. 58:**

26      All Communications with any consultant, public relations company, or crisis management

27  company that refer or relate to the documents leaked by whistleblower Frances Haugen in October

28  2021.

40

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of Facebook and/or Instagram and/or WhatsApp by human trafficking organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

41

1   On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2   to the Request.

3   **REQUEST FOR PRODUCTION NO. 60:**

4   All non-privileged internal Communications that refer or relate to the use of Facebook

5   and/or Instagram and/or WhatsApp by human trafficking organizations.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

7   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

8   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

9   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

10  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

11  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

12  Request because the phrases "refer or relate to" and "the use of Facebook and/or Instagram and/or

13  WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

14  the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unrea-

15  sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs

16  further object to this Request to the extent that it seeks documents and communications not within

17  Plaintiffs' possession, custody, or control.

18  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19  to the Request.

20  **REQUEST FOR PRODUCTION NO. 61:**

21  All Communications with any government or government agency that refer or relate to the

22  use of Facebook and/or Instagram and/or WhatsApp by human trafficking organizations.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

24  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

25  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

26  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

27  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

28  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

1   Request because the phrases "any government or government agency," "refer or relate to," and

2   "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.

3   Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly

4   burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of

5   the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and

6   communications not within Plaintiffs' possession, custody, or control.

7           On the basis of the foregoing objections, Plaintiffs will not produce documents in response

8   to the Request.

9   **REQUEST FOR PRODUCTION NO. 62:**

10          All Communications with any consultant, public relations company, or crisis management

11  company that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by human

12  trafficking organizations.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

14          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19  Request because the phrases "any consultant, public relations company, or crisis management

20  company," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are

21  overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of

22  "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambi-

23  guity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the

24  extent that it seeks documents and communications not within Plaintiffs' possession, custody, or

25  control.

26          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

27  to the Request.

28

**REQUEST FOR PRODUCTION NO. 63:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19 and/or COVID-19 vaccines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 64:**

All non-privileged internal Communications that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19 and/or COVID-19 vaccines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of Facebook and/or Instagram and/or

44

1  WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

2  the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unrea-

3  sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

4      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

5  to the Request.

6  **REQUEST FOR PRODUCTION NO. 65:**

7      All Communications with any government or government agency that refer or relate to the

8  use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19

9  and/or COVID-19 vaccines.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

11      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

12  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

13  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

14  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

15  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

16  Request because the phrases "any government or government agency," "refer or relate to," and

17  "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.

18  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly

19  burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of

20  the Request.

21      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

22  to the Request.

23  **REQUEST FOR PRODUCTION NO. 66:**

24      All Communications with any consultant, public relations company, or crisis management

25  company that refer or relate to use of Facebook and/or Instagram and/or WhatsApp to spread mis-

26  information about COVID-19 and/or COVID-19 vaccines.

27

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 67:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of WhatsApp's 2021 privacy policy change permitting increased sharing of data with Facebook by WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2    to the Request.

3    **REQUEST FOR PRODUCTION NO. 68:**

4    All non-privileged internal Communications that refer or relate to WhatsApp's 2021 pri-

5    vacy policy change permitting increased sharing of data with Facebook by WhatsApp.

6    **RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

7    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

8    jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

9    unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

10   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

11   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

12   Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs

13   further object to the Request because the request of "[a]ll" non-privileged internal Communica-

14   tions is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth

15   of the rest of the Request.

16   On the basis of the foregoing objections, Plaintiffs will not produce documents in response

17   to the Request.

18   **REQUEST FOR PRODUCTION NO. 69:**

19   All Communications with any government or government agency that refer or relate to

20   WhatsApp's 2021 privacy policy change permitting increased sharing of data with Facebook by

21   WhatsApp.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

23   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

24   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

25   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

26   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

27   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

28   Request because the phrases "any government or government agency" and "refer or relate to" are

overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 70:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to WhatsApp's 2021 privacy policy change permitting increased sharing of data with Facebook by WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 71:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

1    unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

2    fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

3    basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

4    Request because the phrase "related to the effect on the reputation" is overbroad, vague, and am-

5    biguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and

6    Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

7    and overbreadth of the rest of the Request.

8           On the basis of the foregoing objections, Plaintiffs will not produce documents in response

9    to the Request.

10   **REQUEST FOR PRODUCTION NO. 72:**

11          All non-privileged internal Communications that refer or relate to the hacking of Amazon

12   founder Jeff Bezos' WhatsApp account in May 2018.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

14          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19   Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs

20   further object to the Request because the request of "[a]ll" non-privileged internal Communica-

21   tions is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth

22   of the rest of the Request.

23          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

24   to the Request.

25   **REQUEST FOR PRODUCTION NO. 73:**

26          All Communications with any government or government agency that refer or relate to the

27   hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

28

49

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 74:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

50

**REQUEST FOR PRODUCTION NO. 75:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 76:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of WhatsApp" are overbroad, vague,

1   and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privi-

2   leged internal Communications is unduly burdensome and unreasonable in light of the vagueness,

3   ambiguity, and overbreadth of the rest of the Request.

4           On the basis of the foregoing objections, Plaintiffs will not produce documents in response

5   to the Request.

6   **REQUEST FOR PRODUCTION NO. 77:**

7           All Communications with any government or government agency that refer or relate to the

8   use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

10          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

11  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

12  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

13  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

14  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

15  Request because the phrases "any government or government agency," "refer or relate to," and

16  "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Re-

17  quest because the request of "[a]ll" Communications is unduly burdensome and unreasonable in

18  light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

19          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

20  to the Request.

21  **REQUEST FOR PRODUCTION NO. 78:**

22          All Communications with any consultant, public relations company, or crisis management

23  company that refer or relate to the use of WhatsApp to transmit misinformation about Brazil's

24  2018 presidential election.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

26          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

27  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

28

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of WhatsApp" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

1   **REQUEST FOR PRODUCTION NO. 80:**

2        All non-privileged internal Communications that refer or relate to the use of WhatsApp by

3   JP Morgan Chase employees to circumvent federal record-keeping laws.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

5        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

6   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

7   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

8   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

9   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

10  Request because the phrases "refer or relate to" and "the use of WhatsApp" are overbroad, vague,

11  and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privi-

12  leged internal Communications is unduly burdensome and unreasonable in light of the vagueness,

13  ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to

14  the extent that it seeks documents and communications not within Plaintiffs' possession, custody,

15  or control.

16       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

17  to the Request.

18  **REQUEST FOR PRODUCTION NO. 81:**

19       All Communications with any government or government agency that refer or relate to the

20  use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

22       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

23  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

24  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

25  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

26  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

27  Request because the phrases "any government or government agency," "refer or relate to," and

28

54

"the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 82:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Boldend's development of tools capable of hacking WhatsApp.

55

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 84:**

All non-privileged internal Communications that refer or relate to Boldend's development of tools capable of hacking WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

1  **REQUEST FOR PRODUCTION NO. 85:**

2  All Communications with any government or government agency that refer or relate to

3  Boldend's development of tools capable of hacking WhatsApp.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

5  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

6  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

7  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

8  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

9  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

10  Request because the phrases "any government or government agency" and "refer or relate to" are

11  overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of

12  "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambi-

13  guity, and overbreadth of the rest of the Request.

14  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

15  to the Request.

16  **REQUEST FOR PRODUCTION NO. 86:**

17  All Communications with any consultant, public relations company, or crisis management

18  company that refer or relate to Boldend's development of tools capable of hacking WhatsApp.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

20  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

21  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

22  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

23  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

24  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

25  Request because the phrases "any consultant, public relations company, or crisis management

26  company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object

27  to the Request because the request of "[a]ll" Communications is unduly burdensome and unrea-

28  sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

57

1       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2   to the Request.

3   **REQUEST FOR PRODUCTION NO. 87:**

4       All Documents and Communications related to the effect on the reputation of any of the

5   Plaintiffs of the use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist at-

6   tacks.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

8       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

10  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

11  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

12  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

13  Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp,

14  Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

15  Request because the request of "[a]ll" Documents and Communications is unduly burdensome and

16  unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

17  Plaintiffs further object to this Request to the extent that it seeks documents and communications

18  not within Plaintiffs' possession, custody, or control.

19      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

20  to the Request.

21  **REQUEST FOR PRODUCTION NO. 88:**

22      All non-privileged internal Communications that refer or relate to the use of WhatsApp,

23  Facebook and/or Instagram to plot and/or execute terrorist attacks.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

25      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

26  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

27  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

28  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

1     basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

2     Request because the phrases "refer or relate to" and "the use of WhatsApp, Facebook and/or In-

3     stagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

4     the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unrea-

5     sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs

6     further object to this Request to the extent that it seeks documents and communications not within

7     Plaintiffs' possession, custody, or control.

8         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

9     to the Request.

10     **REQUEST FOR PRODUCTION NO. 89:**

11         All Communications with any government or government agency that refer or relate to the

12     use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist attacks.

13     **RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

14         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15     jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16     unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17     fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18     basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19     Request because the phrases "any government or government agency," "refer or relate to," and

20     "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plain-

21     tiffs further object to the Request because the request of "[a]ll" Communications is unduly bur-

22     densome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the

23     Request.  Plaintiffs further object to this Request to the extent that it seeks documents and com-

24     munications not within Plaintiffs' possession, custody, or control.

25         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

26     to the Request.

27

28

59

**REQUEST FOR PRODUCTION NO. 90:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist attacks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request. Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 91:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this

60

1  Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp,

2  Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

3  Request because the request of "[a]ll" Documents and Communications is unduly burdensome and

4  unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

5  Plaintiffs further object to this Request to the extent that it seeks documents and communications

6  not within Plaintiffs' possession, custody, or control.

7       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

8  to the Request.

9  **REQUEST FOR PRODUCTION NO. 92:**

10      All non-privileged internal Communications that refer or relate to the use of WhatsApp,

11  Facebook and/or Instagram to recruit new members to terrorist organizations.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

13      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

14  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

15  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

16  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

17  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

18  Request because the phrases "refer or relate" and "the use of WhatsApp, Facebook and/or Insta-

19  gram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the

20  request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable

21  in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further

22  object to this Request to the extent that it seeks documents and communications not within Plain-

23  tiffs' possession, custody, or control.

24      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

25  to the Request.

26  **REQUEST FOR PRODUCTION NO. 93:**

27      All Communications with any government or government agency that refer or relate to the

28  use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

61

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate," and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 94:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate," and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent

that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response

to the Request.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents and Communications related to the effect on the reputation of any of the

Plaintiffs of the use of WhatsApp, Facebook and/or Instagram to spread propaganda in support of

terrorist activities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp,

Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

Request because the request of "[a]ll" Documents and Communications is unduly burdensome and

unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

Plaintiffs further object to this Request to the extent that it seeks documents and communications

not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response

to the Request.

**REQUEST FOR PRODUCTION NO. 96:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp,

Facebook and/or Instagram to spread propaganda in support of terrorist activities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

1  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

2  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

3  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

4  Request because the phrases "refer or relate to" and "the use of WhatsApp, Facebook and/or In-

5  stagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

6  the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unrea-

7  sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs

8  further object to this Request to the extent that it seeks documents and communications not within

9  Plaintiffs' possession, custody, or control.

10         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

11  to the Request.

12  **REQUEST FOR PRODUCTION NO. 97:**

13         All Communications with any government or government agency that refer or relate to the

14  use of WhatsApp, Facebook and/or Instagram to spread propaganda in support of terrorist activi-

15  ties.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

17         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

18  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

19  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

20  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

21  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

22  Request because the phrases "any government or government agency," "refer or relate to" and "the

23  use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs

24  further object to the Request because the request of "[a]ll" Communications is unduly burdensome

25  and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

26  Plaintiffs further object to this Request to the extent that it seeks documents and communications

27  not within Plaintiffs' possession, custody, or control.

28

64

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2 to the Request.

3 **REQUEST FOR PRODUCTION NO. 98:**

4    All Communications with any consultant, public relations company, or crisis management

5 company that refer or relate to the use of WhatsApp, Facebook and/or Instagram to spread propa-

6 ganda in support of terrorist activities.

7 **RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

8    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9 jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

10 unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

11 fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

12 basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

13 Request because the phrases "any consultant, public relations company, or crisis management

14 company," "refer or relate to" and "the use of WhatsApp, Facebook and/or Instagram" are over-

15 broad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll"

16 Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

17 and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent

18 that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

19    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

20 to the Request.

21

22

23

24

25

26

27

28

1

2
Dated:  April 17, 2023

3
DAVIS POLK & WARDWELL LLP

4
By:  /s/ Antonio J. Perez-Marques

5
Greg D. Andres

Antonio J. Perez-Marques

6
Craig T. Cagney

(admitted pro hac vice)

7
DAVIS POLK & WARDWELL LLP

450 Lexington Avenue

8
New York, New York 10017

9
Telephone: (212) 450-4000

Facsimile: (212) 701-5800

10
Email: greg.andres@davispolk.com

antonio.perez@davispolk.com

11
craig.cagney@davispolk.com

12
Micah G. Block (SBN 270712)

13
DAVIS POLK & WARDWELL LLP

1600 El Camino Real

14
Menlo Park, California 94025

Telephone: (650) 752-2000

15
Facsimile: (650) 752-2111

Email: micah.block@davispolk.com

16

17
Ronald Lehmann

(admitted pro hac vice)

18
FBC & CO.

146 Menachem Begin Road

19
Tel Aviv 6492103, Israel

Telephone: 972.3.694.4145

20
Facsimile: 972.3.609.1116

Email: rlehmann@fbclawyers.com

21

22
Attorneys for Plaintiffs WhatsApp LLC and

23
Meta Platforms, Inc.

24

25

26

27

28

66

## **CERTIFICATE OF SERVICE**

I hereby certify that I am a citizen of the United States and employed in the County of New York, New York.  I am over the age of 18 years and not a party to the within-entitled action.  My business address is Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

On April 17, 2023, I served a true and correct copy of the following document(s) on the parties in the action addressed as follows:

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES LIMITED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

☐ (BY OVERNIGHT COURIER) by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered by a FedEx or UPS agent for delivery.

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) to the email addresses set forth below on this date.

Joseph N. Akrotirianakis
Aaron S. Craig
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Email: jakro@kslaw.com
        acraig@kslaw.com

*Attorneys for Defendants NSO Group*
*Technologies Limited and Q Cyber*
*Technologies Limited*

I declare under penalty of perjury that the above is true and correct.

Executed on April 17, 2023 at New York, New York.

/s/ Luca Marzorati
Luca Marzorati

PLAINTIFFS' R&OS TO FIRST SET OF REQUESTS FOR PRODUCTION
CASE NO. 4:19-CV-07123-PJH

# EXHIBIT J

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
            antonio.perez@davispolk.com
            craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and META PLATFORMS, INC., a Delaware corporation,<br><br>                              Plaintiffs,<br><br>            v.<br><br>NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD.,<br><br>                              Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES LIMITED SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

1

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Civil Local Rule

2    34 of the Local Rules of Practice in Civil Proceedings before the United States District Court for

3    the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. (collec-

4    tively, "Plaintiffs"), by and through their attorneys, hereby respond and object as follows to the

5    Second Set of Requests for Production of Defendant NSO Group Technologies Limited ("NSO")

6    dated May 1, 2023 (each a "Request," and collectively, the "Requests") in the above-captioned

7    action (the "Action").

8        Each response is made only for the purpose of this Action and for no other purpose.  Plain-

9    tiffs' Responses and Objections are made without in any way waiving or intending to waive (i)

10   any objections, including, without limitation, as to the competency, relevancy, materiality, propri-

11   ety, privilege, or admissibility as evidence, for any purpose, of any documents or communications

12   produced in response to the Requests and (ii) the right to object on any ground to the use of any

13   documents or communications produced in response to the Requests at any proceedings, hearings,

14   arbitration, or trial.  All evidentiary objections and grounds are expressly reserved.

15       Plaintiffs' Responses and Objections, and any production of documents or communications

16   in response to the Requests, does not waive or intend to waive (and on the contrary, reserves and

17   intends to reserve) any objections available to it, nor do Plaintiffs accept, adopt, or concede the

18   truth or validity of any characterization made in the Requests.  Moreover, no objection or limita-

19   tion, or lack thereof, made in these Responses and Objections shall be deemed an admission by

20   Plaintiffs that (i) any particular evidence exists, or is relevant, probative, nonprivileged, or admis-

21   sible in evidence; or (ii) any statement or characterization in the Requests is accurate or complete.

22       A statement that the Plaintiffs will produce information or documents in response to a par-

23   ticular Request is not to be construed as an admission that any responsive information or docu-

24   ments now exist or previously existed, or that any such information or documents are within Plain-

25   tiffs' possession, custody, or control.

26       The service of these Responses and Objections should not be construed as a waiver of any

27   right, including but not limited to, the right to assert additional objections to individual Requests

28   or to supplement or amend them as discovery and fact development progresses.

<div align="center">2</div>

1   Subject to and without waiving any of the following objections, counsel for Plaintiffs is

2   available to meet in good faith with NSO concerning the Requests and these Responses and Ob-

3   jections.

4   **GENERAL OBJECTIONS**

5   The following General Objections form a part of, and are hereby incorporated into, the

6   response to each and every Request as set forth below.  Nothing in the Responses and Objections

7   to the Requests should be construed as a waiver of these General Objections.  Not listing an ob-

8   jection herein does not constitute a waiver of that objection or otherwise preclude Plaintiffs from

9   raising that objection later.  Plaintiffs' failure to object to a Request, or any future agreement to

10  produce responsive documents, is not a representation that any such documents exist or are within

11  Plaintiffs' possession, custody, or control.  Any future production pursuant to the Requests or oth-

12  erwise is not to be construed as an admission that any Request is proper.

13  1.   Plaintiffs object to the Requests and to each Definition, Instruction, and specific

14  Request contained therein to the extent that they purport to impose obligations on Plaintiffs that

15  are broader than and/or inconsistent with those required by the Federal Rules of Civil Procedure,

16  the Local Rules of the Northern District of California, or any other applicable law, rule, or court

17  order.  Plaintiffs will withhold all documents in response to the Requests that it has no obligation

18  to produce under any such applicable law, rule, or court order.

19  2.   Plaintiffs object to those portions of the Requests that are vague, ambiguous, unduly

20  broad, overly burdensome, oppressive, capable of multiple interpretations, do not identify with

21  particularity the documents sought, lack sufficient precision to allow Plaintiffs to formulate an

22  appropriate response, irrelevant to a party's claim or defense, or not proportional to the needs of

23  the case.

24  3.   Plaintiffs object to any Request seeking "any" or "all" documents or communica-

25  tions on the grounds that it is unduly broad and overly burdensome and to the extent it attempts to

26  impose obligations beyond those imposed by the Applicable Rules.  Plaintiffs cannot guarantee

27  that they will have located every single document responsive to a particular Request.  Subject to

28

the General Objections and any qualifications below, Plaintiffs may respond to any Request seeking "any" or "all" documents by producing the responsive, nonprivileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith, employing search parameters (including relevant custodians and the relevant time period) for the collection and production of Plaintiffs' documents (the "Search Parameters").

4.     Plaintiffs object to the Requests to the extent that they are duplicative or seek documents or communications not within Plaintiffs' possession, custody, or control.  By responding to the Requests, Plaintiffs do not concede that any category of documents or communications that the Requests seek does in fact exist or that such materials are in the possession, custody, or control of Plaintiffs.

5.     Plaintiffs object to the Requests to the extent they seek documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  Plaintiffs will withhold all privileged or otherwise protected documents or communications in response to the Requests. Any production of privileged or otherwise protected documents or communications would be inadvertent and would not constitute a waiver of any claim or privilege or other exemption from production.  Plaintiffs reserve the right to obtain the return of such documents or communications and prohibit their use in any manner, and hereby request the return of any such inadvertently produced privileged documents or communications and reserve the right to object to the disclosure or use of such privileged documents or communications at any stage of these or any other proceedings pursuant to § 13 of the Stipulated Protective Order (ECF No. 132).

6.     Plaintiffs object to the Requests to the extent that they seek disclosure of documents or communications as to which Plaintiffs owe a duty of nondisclosure to a third party, or the production of which would result in the violation of any contractual obligation to a third party.

7.     Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they seek the production of non-public, proprietary, or

4

other confidential or highly confidential information—including business, commercial, financial, personal, consumer, customer, client, private, commercially/competitively sensitive, regulatory, and/or trade secret information—of Plaintiffs or third parties.  Plaintiffs will designate such information as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" consistent with § 5.2 of the Stipulated Protective Order (ECF No. 132).

8.      Plaintiffs object to the Requests to the extent they request documents or communications otherwise available to NSO in the public domain, or from some other source that is more convenient, less burdensome, or less expensive.

9.      Plaintiffs object to the Requests to the extent they seek documents or communications already in the possession, custody or control of NSO, or call for duplicative documents or communications.

10.      Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they purport to impose an obligation to preserve and/or produce any information or documents that are newly created or received after the receipt of the Requests, because efforts to preserve and/or produce such documents or information would be unduly burdensome and require unreasonable expense.

11.      With respect to the Definitions and Instructions in the Requests, Plaintiffs object to the extent that they purport to define those terms differently from how those terms are defined by the Applicable Rules; depart from the customary meaning of any term or provide definitions that are inaccurate; or are based on premises that are misleading, inaccurate, or incomplete.

## OBJECTIONS TO INSTRUCTIONS

1.      Plaintiffs object to Instruction No. 1, and to any Request seeking "all" documents in their possession, custody, or control, on the grounds that Plaintiffs cannot guarantee that they have located every single document responsive to a particular Request.  Plaintiffs further object to Instruction No. 1 as vague, ambiguous, unduly broad, and overly burdensome to the extent it calls for responses to Requests to be from any "affiliates, agents, attorneys, consultants, investigators,

or other persons acting on" Plaintiffs' behalf regardless of whether searching such entities is reasonable or overly burdensome.

2.      Plaintiffs object to Instruction No. 2 to the extent that it seeks production of documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

3.      Plaintiffs object to Instruction No. 4 as unduly broad and overly burdensome to the extent it requires Plaintiffs to include on a privilege log materials other than those materials identified after a reasonable search conducted in good faith.

## OBJECTIONS TO DEFINITIONS

1.      Plaintiffs object to the definition of "all" and "any" and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Subject to the General Objections and any qualifications below, Plaintiffs will respond to any Request seeking "all" documents by producing the responsive, non-privileged documents within their possession, custody, and control that can be located after a reasonable search conducted in good faith.

2.      Plaintiffs object to the definitions of "Communication(s)" and "Documents(s)" and to any Request incorporating that definition, insofar as they are ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.

3.      Plaintiffs object to the definition of "Concerning" insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition of concerning

6

beyond the general understanding of that term, including because it includes "relating to."  Plaintiffs will treat "Concerning" as meaning "regarding, describing, or reflecting."

4.      Plaintiffs object to the definition of "Relate(d) to," "refer to," "refer or relate to" and "reflecting," and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition beyond the general understanding of that term.  Plaintiffs will treat "Relate(d) to," "refer to," "refer or relate to" and "reflecting" as meaning "regarding, describing, or reflecting."

5.      Plaintiffs object to the definitions of "Meta," "You," "Your," and "Plaintiffs," and to any Request incorporating those definitions, on the grounds that they are unduly broad, vague, ambiguous, overly burdensome, encompass persons or entities not relevant to this action, refer to unknown persons or entities, and not proportional to the needs of the case.

6.      Plaintiffs object to the definition of "Security Vulnerability," and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition beyond the general understanding of that term. Plaintiffs also object to the use of the term "Security Vulnerability" or "vulnerability" with respect to Plaintiffs' applications to the extent the use those terms calls for, or purports to incorporate, any legal conclusions, including without limitation as to Defendants' authorization to access Plaintiff's systems, servers, or applications.  Plaintiffs' use of that term and their responses and objections to Defendants' requests using that term are not intended to have and shall not be construed as having any bearing on whether or not Plaintiffs had authorization to access to the affected portions of Plaintiffs' platforms.

### SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST FOR PRODUCTION NO. 99:

All Documents and Communications that refer or relate to any use or access of the WhatsApp Service by Defendants, directly or indirectly, including but not limited to server logs or other electronic records.

**RESPONSE TO REQUEST FOR PRODUCTION FOR PRODUCTION NO. 99:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs further object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "any use or access," and "other electronic records" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce server logs showing NSO's attacks as alleged in the Complaint.  Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents and Communications that refer or relate to any use or access of the WhatsApp Service through any of Defendants' customers' use of Pegasus, directly or indirectly, including but not limited to server logs or other electronic records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.   Plaintiffs

further object to this Request because the phrases "any use or access," and "other electronic records" are overbroad, vague, and ambiguous.  Plaintiffs also object to this Request to the extent it is duplicative of Request No. 99, and as vague and ambiguous to the extent it seeks anything other than the documents requested by Request No. 99 based on an alleged distinction between access by Defendants from access by others using Defendants' products.

Subject to and without waiver of these objections, Plaintiffs will produce server logs showing NSO's attacks as alleged in the Complaint.  Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents and Communications that refer or relate to the WhatsApp Security Vulnerability referred to as CVE-2019-3568 in paragraph 44 of Plaintiffs' Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents created by Plaintiffs that are in Plaintiffs' possession, custody, or control and can be located after a reasonable search conducted in good faith relating to CVE-2019-3568 in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 102:**

Documents sufficient to identify each Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request as premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.  Plaintiffs further object to this Request because the phrase "sufficient" is overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents created by Plaintiffs that are in Plaintiffs' possession, custody, or control and can be located after a reasonable search conducted in good faith relating to CVE-2019-3568 in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents and Communications that refer or relate to Plaintiffs' discovery or initial awareness (however such awareness occurred) of any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs further object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents

10

or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "initial awareness (however such awareness occurred)" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents created by Plaintiffs that are in Plaintiffs' possession, custody, or control and can be located after a reasonable search conducted in good faith relating to CVE-2019-3568 in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents and Communications that refer or relate to Plaintiffs' response to any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents created by Plaintiffs that are in Plaintiffs' possession, custody, or control and can be

11

located after a reasonable search conducted in good faith relating to CVE-2019-3568 in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents and Communications that refer or relate to Plaintiffs' public announcement of any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents created by Plaintiffs that are in Plaintiffs' possession, custody, or control and can be located after a reasonable search conducted in good faith relating to CVE-2019-3568 in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents and Communications that refer or relate to any steps taken by Plaintiffs to limit, disable, or remediate any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any steps taken . . . to limit, disable, or remediate" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents created by Plaintiffs that are in Plaintiffs' possession, custody, or control and can be located after a reasonable search conducted in good faith relating to CVE-2019-3568 in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents and Communications that refer or relate to any steps taken by Plaintiffs to identify users of the WhatsApp Service affected by any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims

13

or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery. Plaintiffs further object to this Request because the phrase "any steps taken . . . to identify users" is overbroad, vague, and ambiguous. Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Communications that refer or relate to any communication by Plaintiffs with users of Plaintiffs' services related to any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery. Plaintiffs further object to this Request because the phrase "any communication" is overbroad, vague,

14

1   and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature be-

2   cause Defendants have not yet produced any documents regarding their exploitation of Plaintiffs'

3   platforms.

4        Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

5   **REQUEST FOR PRODUCTION NO. 109:**

6        All Documents and Communications that refer or relate to any outside companies, individ-

7   uals, or other service providers that Plaintiffs retained to limit, disable, or remediate any Security

8   Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plain-

9   tiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

11       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

12  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

13  is duplicative of other Requests for Production.  Plaintiffs object to the Request as overbroad,

14  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

15  fenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

16  Plaintiffs further object to this Request to the extent that it seeks the production of materials cov-

17  ered by non-disclosure and/or confidentiality agreements with third parties and/or that would vio-

18  late the privacy interests of others.  Plaintiffs further object to this Request to the extent that it

19  purports to require the production of documents or information protected by the attorney-client

20  privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-

21  fidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the

22  phrase "any outside companies, individuals, or other service providers" is overbroad, vague, and

23  ambiguous.   Plaintiffs further object to this Request as vague, overbroad, and premature because

24  Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' plat-

25  forms.

26       Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

27

28

**REQUEST FOR PRODUCTION NO. 110:**

Documents sufficient to show every iteration of WhatsApp's Terms of Service in effect in any country or territory in 2018 and/or 2019.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents "sufficient to show every iteration of WhatsApp's Terms of Service in effect in any country or territory in 2018 and/or 2019," without limitation, regardless of whether such Documents are relevant to any issue in the Action. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery. Plaintiffs further object to this Request because the phrases "sufficient to show," "every iteration of WhatsApp's Terms of Service in effect," and "any country or territory" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce publicly available Terms of Service for WhatsApp in effect between the years of 2018 and 2019 that are responsive to this Request and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 111:**

All Documents and Communications that refer or relate to Plaintiffs' enforcement of any term in WhatsApp's Terms of Service that Plaintiffs allege Defendant violated.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 111:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad,

16

unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Plaintiffs' enforcement of any term in WhatsApp's Terms of Service that Plaintiffs allege Defendant violated," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "enforcement of any term in WhatsApp's Terms of Service" is overbroad, vague, and ambiguous.

Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 112:**

All Documents and Communications that refer or relate to any expenses that: (1) Plaintiffs claim that they incurred as a result of any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, and that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, and (2) that Plaintiffs allege were caused by Defendants and for which Plaintiffs seek recovery from Defendants in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product

doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any expenses" are overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents and communications related to Plaintiffs' damages that are responsive to this Request and are in Plaintiffs' possession, custody, or control.  Plaintiffs reserve the right to amend their production based on documents and communications from Defendants, including documents relating to Defendants' finances.

**REQUEST FOR PRODUCTION NO. 113:**

Documents sufficient to show how Plaintiffs identified the owners of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "sufficient to show" and "identified the owners" are overbroad, vague, and ambiguous.

Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

1    **REQUEST FOR PRODUCTION NO. 114:**

2        Documents sufficient to show how Plaintiffs identified the "Target Users" referenced in

3    Paragraph 1 of the Complaint in this action.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

5        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

6    jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

7    unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

8    fenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

9    Plaintiffs further object to this Request to the extent that it seeks the production of materials cov-

10   ered by non-disclosure and/or confidentiality agreements with third parties and/or that would vio-

11   late the privacy interests of others.  Plaintiffs further object to this Request to the extent that it

12   purports to require the production of documents or information protected by the attorney-client

13   privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-

14   fidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the

15   phrases "sufficient to show" and "identified the 'Target Users'" are overbroad, vague, and ambig-

16   uous.

17       Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

18   **REQUEST FOR PRODUCTION NO. 115:**

19       All Documents referring or relating to Plaintiffs' decision in May 2019 to contact the own-

20   ers of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint in

21   this action about Defendants and/or Pegasus.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

23       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

24   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

25   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

26   fenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

27   Plaintiffs further object to this Request to the extent that it seeks the production of materials cov-

28

19

ered by non-disclosure and/or confidentiality agreements with third parties and/or that would vio-late the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-fidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "referring or relating to Plaintiffs' decision" and "contact the owners of . . . the 'Target Devices'" are overbroad, vague, and ambiguous.

Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 116:**

All Communications between any of Plaintiffs and Forbidden Stories aka Freedom Voices Network, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Laurent Richard, Sandrine Rigaud, Arthur Bouvart, Paloma Dupont de Dinechin, Clement Le Merlus, Phineas Rueckert, or Audrey Travere, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 116:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-formation that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the at-torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-ity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 117:**

All Communications between any of Plaintiffs and Forbidden Stories aka Freedom Voices Network, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Laurent Richard, Sandrine Rigaud, Arthur Bouvart, Paloma Dupont de Dinechin, Clement Le Merlus, Phineas Rueckert, or Audrey Travere, that refer or relate to security monitoring tools, user monitoring tools, or other companies providing any tools to monitor users' messages or location through any of Plaintiffs' platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 117:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 118:**

All Communications between any of Plaintiffs and The Citizen Lab at the University of Toronto, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Ronald Deibert, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 118:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

21

1   materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

2   that would violate the privacy interests of others.  Plaintiffs further object to this Request to the

3   extent that it purports to require the production of documents or information protected by the at-

4   torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-

5   ity, duty of confidentiality, or exemption from discovery.

6        Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

7   **REQUEST FOR PRODUCTION NO. 119:**

8        All Communications between any of Plaintiffs and Amnesty Tech or Amnesty Interna-

9   tional, including any employee, contractor, or representative thereof, that refer or relate to any of

10   the Defendants.

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 119:**

12        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

13   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

14   formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

15   of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

16   materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

17   that would violate the privacy interests of others.  Plaintiffs further object to this Request to the

18   extent that it purports to require the production of documents or information protected by the at-

19   torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-

20   ity, duty of confidentiality, or exemption from discovery.

21        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

22   to the Request.

23   **REQUEST FOR PRODUCTION NO. 120:**

24        All Communications between any of Plaintiffs and the United States Department of Com-

25   merce Bureau of Industry and Security, including any employee, contractor, or representative

26   thereof, that refer or relate to any of the Defendants.

27

28

PLAINTIFFS' R&Os TO SECOND SET OF REQUESTS FOR PRODUCTION
CASE NO. 4:19-CV-07123-PJH

**RESPONSE TO REQUEST FOR PRODUCTION NO. 120:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents and Communications relating to investments made by any of Plaintiffs in any companies selling cyber security products or technologies or cyber intelligence products or technologies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 121:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1   On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2   to the Request.

3   **REQUEST FOR PRODUCTION NO. 122:**

4   All Documents and Communications relating to investments made by any of the directors

5   of any of Plaintiffs, including but not limited to Peter Thiel or Mark Anderson, in any companies

6   selling cyber security products or technologies or cyber intelligence products or technologies.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

8   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

10  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

11  fenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this

12  Request to the extent that it seeks the production of materials covered by non-disclosure and/or

13  confidentiality agreements with third parties and/or that would violate the privacy interests of oth-

14  ers.  Plaintiffs further object to this Request to the extent that it purports to require the production

15  of documents or information protected by the attorney-client privilege, the attorney work product

16  doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from dis-

17  covery.

18  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19  to the Request.

20  **REQUEST FOR PRODUCTION NO. 123:**

21  All Communications between any law enforcement or intelligence agency and any of

22  Plaintiffs relating to any request made to any of Plaintiffs to assist in preventing or investigating a

23  crime, and Documents related thereto.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

25  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

26  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

27  formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

28  of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

24

materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 124:**

Documents sufficient to show Plaintiffs' policies in effect at any time from 2018 to present relating to the handling of requests made by any law enforcement or intelligence agency to any of Plaintiffs to assist in preventing or investigating a crime, and Documents related to Plaintiffs' application of those policies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce publicly available policies for WhatsApp in effect between the years of 2018 and 2019 that are responsive to this Request and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 125:**

All Documents and Communications that refer or relate to Tom Cohen, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 125:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Tom Cohen," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 126:**

All Documents and Communications that refer or relate to Otto Ebeling, identified in Plaintiff's initial disclosures, related to Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 126:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

26

unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Otto Ebeling," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

## REQUEST FOR PRODUCTION NO. 127:

All Documents and Communications that refer or relate to Aashin Gautum, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 127:

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Aashin Gautum," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1    Subject to and without waiver of these objections, Plaintiffs will produce non-privileged,

2    relevant documents and communications that are responsive to this Request, are in Plaintiffs' pos-

3    session, custody, or control, and can be located after a reasonable search conducted in good faith

4    and in accordance with the Search Parameters.

5    **REQUEST FOR PRODUCTION NO. 128:**

6    All Documents and Communications that refer or relate to Saish Gersappa, identified in

7    Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, in-

8    cluding but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or

9    were otherwise involved with in any respect.

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 128:**

11   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

12   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

13   unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

14   fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

15   Documents and Communications "that refer or relate to Saish Gersappa," without limitation, re-

16   gardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further

17   object to this Request to the extent that it purports to require the production of documents or in-

18   formation protected by the attorney-client privilege, the attorney work product doctrine, or other

19   applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

20   Subject to and without waiver of these objections, Plaintiffs will produce non-privileged,

21   relevant documents and communications that are responsive to this Request, are in Plaintiffs' pos-

22   session, custody, or control, and can be located after a reasonable search conducted in good faith

23   and in accordance with the Search Parameters.

24   **REQUEST FOR PRODUCTION NO. 129:**

25   All Documents and Communications that refer or relate to Claudiu Gheorghe, identified in

26   Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, in-

27   cluding but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or

28   were otherwise involved with in any respect.

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 129:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Claudiu Gheorghe," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 130:**

All Documents and Communications that refer or relate to Jesus Barcons Palau, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 130:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Jesus Barcons Palau," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further

object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 131:**

All Documents and Communications that refer or relate to Drew Robinson, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 131:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Drew Robinson," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 132:**

All Documents and Communications that refer or relate to Michael Scott, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 132:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Michael Scott," without limitation, regardless of whether such Documents are relevant to any issue in the Action. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 133:**

All Documents and Communications that refer or relate to Ke Wang, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 133:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Ke Wang," without limitation, regardless of whether such Documents are relevant to any issue in the Action. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 134:**

All Documents and Communications that refer or relate to YuanYuan Wang, identified in Plaintiff's initial disclosures, related any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 134:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to YuanYuan Wang," without limitation, regardless of whether such Documents are relevant to any issue in the Action. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 135:**

All Communications between any of Plaintiffs and 365 Group LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 135:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 136:**

All Communications between any of Plaintiffs and Amazon Web Services, Inc., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 136:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work

product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 137:**

All Communications between any of Plaintiffs and AT&T Mobility LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 137:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 138:**

All Communications between any of Plaintiffs and Berkeley Research Group, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 138:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-tion of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 139:**

All Communications between any of Plaintiffs and Choopa, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 139:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-tion of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 140:**

All Communications between any of Plaintiffs and Cogent Communications, Inc., includ-ing any employee, contractor, or representative thereof, that refer or relate to any of the Defend-ants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 140:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 141:**

All Communications between any of Plaintiffs and Compass Stratagem, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 141:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 142:**

All Communications between any of Plaintiffs and E-Tel Systems, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 142:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

36

is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 143:**

All Communications between any of Plaintiffs and Francisco Partners Management L.P., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 143:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 144:**

All Communications between any of Plaintiffs and Google LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 144:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 145:**

All Communications between any of Plaintiffs and GreenCloud VPS JSC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 145:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 146:**

All Communications between any of Plaintiffs and Jefferies Group LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 146:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 147:**

All Communications between any of Plaintiffs and the Los Angeles Police Department, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 147:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 148:**

All Communications between any of Plaintiffs and Mercury Public Affairs, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 148:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 149:**

All Communications between any of Plaintiffs and Pacific Bell Telephone Company, Inc., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 149:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1   On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2   to the Request.

3   **REQUEST FOR PRODUCTION NO. 150:**

4   All Communications between any of Plaintiffs and PayPal Inc., including any employee,

5   contractor, or representative thereof, that refer or relate to any of the Defendants.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 150:**

7   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

8   jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

9   is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

10  sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

11  cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

12  tion of documents or information protected by the attorney-client privilege, the attorney work

13  product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

14  from discovery.

15  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

16  to the Request.

17  **REQUEST FOR PRODUCTION NO. 151:**

18  All Communications between any of Plaintiffs and PSI Network, Inc. including any em-

19  ployee, contractor, or representative thereof, that refer or relate to any of the Defendants.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 151:**

21  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

22  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

23  is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

24  sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

25  cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

26  tion of documents or information protected by the attorney-client privilege, the attorney work

27  product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

28  from discovery.

41

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2  to the Request.

3  **REQUEST FOR PRODUCTION NO. 152:**

4    All Communications between any of Plaintiffs and QuadraNet Enterprises LLC, including

5  any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 152:**

7    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

8  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

9  is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

10  sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

11  cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

12  tion of documents or information protected by the attorney-client privilege, the attorney work

13  product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

14  from discovery.

15    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

16  to the Request.

17  **REQUEST FOR PRODUCTION NO. 153:**

18    All Communications between any of Plaintiffs and the San Diego Police Department, in-

19  cluding any employee, contractor, or representative thereof, that refer or relate to any of the De-

20  fendants.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 153:**

22    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

23  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

24  is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

25  sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

26  cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

27  tion of documents or information protected by the attorney-client privilege, the attorney work

28

42

1    product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

2    from discovery.

3          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

4    to the Request.

5    **REQUEST FOR PRODUCTION NO. 154:**

6          All Communications between any of Plaintiffs and any law enforcement agency, including

7    any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 154:**

9          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

10   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

11   formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

12   of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

13   materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

14   that would violate the privacy interests of others.  Plaintiffs further object to this Request to the

15   extent that it purports to require the production of documents or information protected by the at-

16   torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-

17   ity, duty of confidentiality, or exemption from discovery.

18         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19   to the Request.

20   **REQUEST FOR PRODUCTION NO. 155:**

21         All Communications between any of Plaintiffs and Severdroid LLC, including any em-

22   ployee, contractor, or representative thereof, that refer or relate to any of the Defendants.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 155:**

24         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

25   jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

26   is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

27   sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

28

43

cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

tion of documents or information protected by the attorney-client privilege, the attorney work

product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response

to the Request.

**REQUEST FOR PRODUCTION NO. 156:**

All Communications between any of Plaintiffs and Verisign Inc., including any employee,

contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 156:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

tion of documents or information protected by the attorney-client privilege, the attorney work

product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response

to the Request.

**REQUEST FOR PRODUCTION NO. 157:**

All Communications between any of Plaintiffs and Verizon Wireless Services, LLC, in-

cluding any employee, contractor, or representative thereof, that refer or relate to any of the De-

fendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 157:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 158:**

All Communications between any of Plaintiffs and Vultur Holdings, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 158:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 159:**

All Communications that refer or relate to inquiries to Plaintiffs about Plaintiffs' ability, through any of its entities, to view or access encrypted messages sent via WhatsApp or on any of Plaintiffs' other platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 159:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 160:**

All Communications that refer or relate to Plaintiffs' use of information obtained from encrypted messages sent via WhatsApp or on any of Plaintiffs' other platforms for commercial purposes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 160:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1   On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2   to the Request.

3   **REQUEST FOR PRODUCTION NO. 161:**

4   All Communications that refer or relate to Plaintiffs' policies and decisions whether to

5   terminate user accounts on any of its entities, including WhatsApp and Facebook.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 161:**

7   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

8   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

9   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

10  fenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

11  Plaintiffs further object to this Request to the extent that it seeks the production of materials cov-

12  ered by non-disclosure and/or confidentiality agreements with third parties and/or that would vio-

13  late the privacy interests of others.  Plaintiffs further object to this Request to the extent that it

14  purports to require the production of documents or information protected by the attorney-client

15  privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-

16  fidentiality, or exemption from discovery.

17  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

18  to the Request.

19  **REQUEST FOR PRODUCTION NO. 162:**

20  All Communications by or between employees of Plaintiffs that refer or relate to Defend-

21  ants.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 162:**

23  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

24  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

25  unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

26  fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

27  Communications "by or between employees of Plaintiffs that refer or relate to Defendants," with-

28

47

out limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 163:**

All Communications that refer or relate to accounts of Defendants' employees that were terminated from any of Plaintiffs' platforms, including but not limited to WhatsApp and Facebook.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 163:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "refer or relate to," "accounts of Defendants' employees that were terminated," and "any of Plaintiffs' platforms" are overbroad, vague, and ambiguous.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 164:**

All Documents and Communications related to any alleged statements made by Defendants that refer or relate to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, including but not limited to the alleged statement made attributed to "NSO Employee 1" in Your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 164:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "related to" and "any alleged statement" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce the WhatsApp messages with "NSO Employee 1" referenced in the Complaint that are within Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 165:**

All Communications between any of Plaintiffs and any of the following current or former officials or representatives of the United States (including their staff members) that refer or relate to Defendants: Maher Bitar, Tom Malinowski, Anne Neuberger, Adam Schiff, Jake Sullivan, or Ron Wyden.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 165:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs

of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 166:**

All Communications between any of Plaintiffs and any current or former officials or representatives of the United States government (including any Congressmen or Senators) that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 166:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 167:**

All Communications between any of Plaintiffs and any congressional committees, including but not limited to the Senate Select Committee on Intelligence and the House Permanent Select Committee on Intelligence, that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 167:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 168:**

All Communications between any of Plaintiffs and any registered lobbyists in the United States that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 168:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 169:**

All Communications between any of Plaintiffs and officials of any state within the United States that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 169:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 170:**

All Communications between any of Plaintiffs and officials or representatives of any government outside of the United States that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 170:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

52

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2  to the Request.

3  **REQUEST FOR PRODUCTION NO. 171:**

4    All Communications between any of Plaintiffs and officials of any international organiza-

5  tion, public or private, that refer or relate to Defendants.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 171:**

7    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

8  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

9  formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

10  of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

11  materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

12  that would violate the privacy interests of others.  Plaintiffs further object to this Request to the

13  extent that it purports to require the production of documents or information protected by the at-

14  torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-

15  ity, duty of confidentiality, or exemption from discovery.

16    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

17  to the Request.

18  **REQUEST FOR PRODUCTION NO. 172:**

19    All Communications between any of Plaintiffs on the one hand, and journalists, members

20  of the press, or media on the other hand, that refer or relate to Defendants.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 172:**

22    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

23  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

24  formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

25  of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

26  materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

27  that would violate the privacy interests of others.  Plaintiffs further object to this Request to the

28

53

extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 173:**

All Communications between any of Plaintiffs on the one hand, and Public Relations or other media consulting companies on the other hand, that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 173:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 174:**

All Communications between any of Plaintiffs and any trade groups or industry associations that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 174:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

54

materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 175:**

All Communications between any of Plaintiffs and Apple, Inc., including any employee, contractor, or representative thereof that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 175:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 176:**

All Documents and Communications that refer or relate to communications by Plaintiffs or their representatives with any of the Plaintiffs in the case of *Dada v. NSO Group Tech. Ltd.*, United States District Court, Northern District of California Case No. 3:22-cv-07513 or their representatives.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 176:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 177:**

All Documents and Communications produced by Facebook to any of the plaintiffs in the action, *In re Facebook, Inc., Consumer Privacy User Profile* Litigation (N.D. Cal., Case No. 3:18-md-02843-VC).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 177:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

56

**REQUEST FOR PRODUCTION NO. 178:**

All Documents and Communications relating to the "discovery misconduct" referenced in Judge Vince Chhabria's February 9, 2023 Order (ECF No. 1104) in the action, *In re Facebook, Inc., Consumer Privacy User Profile Litigation* (N.D. Cal., Case No. 3:18-md-02843-VC), including without limitation (1) Facebook and its counsel's "repeated use of frivolous legal arguments to delay the production of highly probative evidence, (2) Facebook and its counsel's "misconduct as it relates to the named plaintiff's data," (3) Facebook and its counsel's "misconduct related to the Switchboard profiles," (4) Facebook and its counsel's "deposition misconduct," and (5) Facebook and its counsel's "over-designation of documents as privileged."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 178:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

Dated:  May 31, 2023

                                        DAVIS POLK & WARDWELL LLP


                                        By:  /s/ Antonio J. Perez-Marques
                                             Greg D. Andres
                                             Antonio J. Perez-Marques
                                             Craig T. Cagney
                                             (admitted *pro hac vice*)
                                             DAVIS POLK & WARDWELL LLP
                                             450 Lexington Avenue
                                             New York, New York 10017
                                             Telephone: (212) 450-4000
                                             Facsimile:  (212) 701-5800
                                             Email:  greg.andres@davispolk.com
                                                     antonio.perez@davispolk.com
                                                     craig.cagney@davispolk.com

                                             Micah G. Block (SBN 270712)
                                             DAVIS POLK & WARDWELL LLP
                                             1600 El Camino Real
                                             Menlo Park, California 94025
                                             Telephone: (650) 752-2000
                                             Facsimile:  (650) 752-2111
                                             Email:  micah.block@davispolk.com

                                             *Attorneys for Plaintiffs WhatsApp LLC and*
                                             *Meta Platforms, Inc.*

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that I am a citizen of the United States and employed in the County of

3 New York, New York.  I am over the age of 18 years and not a party to the within-entitled ac-

4 tion.  My business address is Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York,

5 New York 10017.

6        On May 31, 2023, I served a true and correct copy of the following document(s) on the

7 parties in the action addressed as follows:

8       **PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT NSO**
      **GROUP TECHNOLOGIES LIMITED SECOND SET OF REQUESTS FOR**
9       **PRODUCTION OF DOCUMENTS**

10

☐ (BY OVERNIGHT COURIER) by placing the document(s) listed above in a sealed envelope

11 and affixing a pre-paid air bill, and causing the envelope to be delivered by a FedEx or UPS

12 agent for delivery.

13

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable doc-

14 ument format (PDF) to the email addresses set forth below on this date.

15 Joseph N. Akrotirianakis
    Aaron S. Craig
16 KING & SPALDING LLP
    633 West Fifth Street, Suite 1600
17 Los Angeles, CA 90071
    Telephone: (213) 443-4355
18 Email: jakro@kslaw.com
             acraig@kslaw.com
19

20 *Attorneys for Defendants NSO Group*
*Technologies Limited and Q Cyber*
21 *Technologies Limited*

22       I declare under penalty of perjury that the above is true and correct.

23

24       Executed on May 31, 2023 at New York, New York.

25                                */s/ Luca Marzorati*
26                                Luca Marzorati

27

28

59

# EXHIBIT K

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
    (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
             antonio.perez@davispolk.com
             craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and META PLATFORMS, INC., a Delaware corporation, <br><br>                              Plaintiffs, <br><br>      v. <br><br> NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD., <br><br>                              Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **PLAINTIFFS' AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES' LIMITED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

1

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Civil Local Rule 34 of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. (collectively, "Plaintiffs"), by and through their attorneys, hereby amend their responses and objections—which were served on April 17, 2023—to the First Set of Requests for Production of Defendant NSO Group Technologies Limited ("NSO") dated March 7, 2023 (each a "Request," and collectively, the "Requests") in the above-captioned action (the "Action").

Each response is made only for the purpose of this Action and for no other purpose. Plaintiffs' Amended Responses and Objections are made without in any way waiving or intending to waive (i) any objections, including, without limitation, as to the competency, relevancy, materiality, propriety, privilege, or admissibility as evidence, for any purpose, of any documents or communications produced in response to the Requests and (ii) the right to object on any ground to the use of any documents or communications produced in response to the Requests at any proceedings, hearings, arbitration, or trial. All evidentiary objections and grounds are expressly reserved.

Plaintiffs' Amended Responses and Objections, and any production of documents or communications in response to the Requests, does not waive or intend to waive (and on the contrary, reserves and intends to reserve) any objections available to it, nor do Plaintiffs accept, adopt, or concede the truth or validity of any characterization made in the Requests. Moreover, no objection or limitation, or lack thereof, made in these Amended Responses and Objections shall be deemed an admission by Plaintiffs that (i) any particular evidence exists, or is relevant, probative, nonprivileged, or admissible in evidence; or (ii) any statement or characterization in the Requests is accurate or complete.

A statement that the Plaintiffs will produce information or documents in response to a particular Request is not to be construed as an admission that any responsive information or documents now exist or previously existed, or that any such information or documents are within Plaintiffs' possession, custody, or control.

1    The service of these Amended Responses and Objections should not be construed as a

2  waiver of any right, including but not limited to, the right to assert additional objections to indi-

3  vidual Requests or to supplement or amend them as discovery and fact development progresses.

4    Subject to and without waiving any of the following objections, counsel for Plaintiffs is

5  available to meet in good faith with NSO concerning the Requests and these Amended Responses

6  and Objections.

7                                    **GENERAL OBJECTIONS**

8    The following General Objections form a part of, and are hereby incorporated into, the

9  response to each and every Request as set forth below.  Nothing in the Amended Responses and

10  Objections to the Requests should be construed as a waiver of these General Objections.  Not

11  listing an objection herein does not constitute a waiver of that objection or otherwise preclude

12  Plaintiffs from raising that objection later.  Plaintiffs' failure to object to a Request, or any future

13  agreement to produce responsive documents, is not a representation that any such documents exist

14  or are within Plaintiffs' possession, custody, or control.  Any future production pursuant to the

15  Requests or otherwise is not to be construed as an admission that any Request is proper.

16    1.    Plaintiffs object to the Requests and to each Definition, Instruction, and specific

17  Request contained therein to the extent that they purport to impose obligations on Plaintiffs that

18  are broader than and/or inconsistent with those required by the Federal Rules of Civil Procedure,

19  the Local Rules of the Northern District of California, or any other applicable law, rule, or court

20  order.  Plaintiffs will withhold all documents in response to the Requests that it has no obligation

21  to produce under any such applicable law, rule, or court order.

22    2.    Plaintiffs object to those portions of the Requests that are vague, ambiguous, unduly

23  broad, overly burdensome, oppressive, capable of multiple interpretations, do not identify with

24  particularity the documents sought, lack sufficient precision to allow Plaintiffs to formulate an

25  appropriate response, irrelevant to a party's claim or defense, or not proportional to the needs of

26  the case.

27

28

3.      Plaintiffs object to any Request seeking "any" or "all" documents or communications on the grounds that it is unduly broad and overly burdensome and to the extent it attempts to impose obligations beyond those imposed by the Applicable Rules.  Plaintiffs cannot guarantee that they will have located every single document responsive to a particular Request.  Subject to the General Objections and any qualifications below, Plaintiffs will respond to any Request seeking "any" or "all" documents by producing the responsive, nonprivileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith.

4.      Plaintiffs object to the Requests to the extent that they are duplicative or seek documents or communications not within Plaintiffs' possession, custody, or control.  By responding to the Requests, Plaintiffs do not concede that any category of documents or communications that the Requests seek does in fact exist or that such materials are in the possession, custody, or control of Plaintiffs.

5.      Plaintiffs object to the Requests to the extent they seek documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  Plaintiffs will withhold all privileged or otherwise protected documents or communications in response to the Requests. Any production of privileged or otherwise protected documents or communications would be inadvertent and would not constitute a waiver of any claim or privilege or other exemption from production.  Plaintiffs reserve the right to obtain the return of such documents or communications and prohibit their use in any manner, and hereby request the return of any such inadvertently produced privileged documents or communications and reserve the right to object to the disclosure or use of such privileged documents or communications at any stage of these or any other proceedings pursuant to § 13 of the Stipulated Protective Order (ECF No. 132).

4

6.      Plaintiffs object to the Requests to the extent that they seek disclosure of documents or communications as to which Plaintiffs owe a duty of nondisclosure to a third party, or the production of which would result in the violation of any contractual obligation to a third party.

7.      Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they seek the production of non-public, proprietary, or other confidential or highly confidential information—including business, commercial, financial, personal, consumer, customer, client, private, commercially/competitively sensitive, regulatory, and/or trade secret information—of Plaintiffs or third parties.  Plaintiffs will designate such information as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" consistent with § 5.2 of the Stipulated Protective Order (ECF No. 132).

8.      Plaintiffs object to the Requests to the extent they request documents or communications otherwise available to NSO in the public domain, or from some other source that is more convenient, less burdensome, or less expensive.

9.      Plaintiffs object to the Requests to the extent they seek documents or communications already in the possession, custody or control of NSO, or call for duplicative documents or communications.

10.      Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they purport to impose an obligation to preserve and/or produce any information or documents that are newly created or received after the receipt of the Requests, because efforts to preserve and/or produce such documents or information would be unduly burdensome and require unreasonable expense.

11.      With respect to the Definitions and Instructions in the Requests, Plaintiffs object to the extent that they purport to define those terms differently from how those terms are defined by the Applicable Rules; depart from the customary meaning of any term or provide definitions that are inaccurate; or are based on premises that are misleading, inaccurate, or incomplete.

## OBJECTIONS TO INSTRUCTIONS

1.      Plaintiffs object to Instruction No. 1, and to any Request seeking "all" documents in their possession, custody, or control, on the grounds that Plaintiffs cannot guarantee that they

have located every single document responsive to a particular Request. Plaintiffs further object to Instruction No. 1 as vague, ambiguous, unduly broad, and overly burdensome to the extent it calls for responses to Requests to be from any "affiliates, agents, attorneys, consultants, investigators, or other persons acting on" Plaintiffs' behalf regardless of whether searching such entities is reasonable or overly burdensome.

2.      Plaintiffs object to Instruction No. 2 to the extent that it seeks production of documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

3.      Plaintiffs object to Instruction No. 4 as unduly broad and overly burdensome to the extent it requires Plaintiffs to include on a privilege log materials other than those materials identified after a reasonable search conducted in good faith.

## OBJECTIONS TO DEFINITIONS

1.      Plaintiffs object to the definition of "all" and "any" and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Subject to the General Objections and any qualifications below, Plaintiffs will respond to any Request seeking "all" documents by producing the responsive, non-privileged documents within their possession, custody, and control that can be located after a reasonable search conducted in good faith.

2.      Plaintiffs object to the definitions of "Communication(s)" and "Documents(s)" and to any Request incorporating that definition, insofar as they are ambiguous, overly broad, and

unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.

3. Plaintiffs object to the definition of "Concerning" insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition of concerning beyond the general understanding of that term, including because it includes "relating to." Plaintiffs will treat "Concerning" as meaning "regarding, describing, or reflecting."

4. Plaintiffs object to the definition of "Relate(d) to," "refer to," "refer or relate to" and "reflecting," and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition beyond the general understanding of that term. Plaintiffs will treat "Relate(d) to," "refer to," "refer or relate to" and "reflecting" as meaning "regarding, describing, or reflecting."

5. Plaintiffs object to the definitions of "Meta," "You," "Your," and "Plaintiffs," and to any Request incorporating those definitions, on the grounds that they are unduly broad, vague, ambiguous, overly burdensome, encompass persons or entities not relevant to this action, refer to unknown persons or entities, and not proportional to the needs of the case.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST FOR PRODUCTION NO. 1:

All Documents that Plaintiffs have received pursuant to any third party subpoena served in this litigation.

### RESPONSE TO REQUEST FOR PRODUCTION FOR PRODUCTION NO. 1:

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents "that Plaintiffs have received pursuant to any third party subpoena served in this litigation," without limitation, regardless of whether such Documents are relevant to any issue in the Action.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents and communications that are responsive to this Request and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents referring or relating to the identity of the owners of the "approximately 1,400 Target Devices" and/or the identity of the "Target Users" referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents "referring or relating to the identity of the owners of the 'approximately 1,400 Target Devices' and/or the identity of the 'Target Users,'" without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "referring or relating to" is overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce, to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 3:**

All Communications between You and any of the owners of the Target Devices and/or the Target Users referenced in Paragraph 1 of the Complaint in this action about the "infect[ion of] the Target Devices" referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Communications between Plaintiffs and "any of the owners of the Target Devices and/or the Target Users," without limitation, regardless of whether such Communications are relevant to any issue in the Action. Plaintiffs further object to this Request because the phrase "You" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request to the extent that it seeks the production of materials that would violate the privacy interests of others.

Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 4:**

All Communications referring or relating to the Target Users and/or the approximately 1,400 Target Devices referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Communications "referring or relating to the Target Users and/or the approximately 1,400 Target Devices" without limitation, regardless of whether such Communications are relevant to any issue in the Action.  Plaintiffs further object to this Request because the phrase "referring or relating to"

9

is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request to the extent that it seeks the production of materials that would violate the privacy interests of others.

Subject to and without waiver of these objections, Plaintiffs will produce (1) the form message sent to all affected WhatsApp users, (2) to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint, and (3) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications that refer or relate to Plaintiffs' reputation(s) between January 2018 and the date of Plaintiffs' responses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to Plaintiffs' reputation(s)" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications that refer or relate to the goodwill between Plaintiffs and their users and potential users between January 2018 and the date of Plaintiffs' responses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to the goodwill" is overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications that refer or relate to public trust placed in Plaintiffs by their users and potential users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to public trust" is overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

11

1    **REQUEST FOR PRODUCTION NO. 8:**

2    All Documents and Communications that refer or relate to the possibility of Plaintiffs en-

3 tering into a business transaction, directly or indirectly, with NSO or any of its affiliated compa-

4 nies.

5    **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

6    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

7 jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

8 unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

9 fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

10 basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

11 Request because the phrases "refer or relate to," "the possibility," and "entering into a business

12 transaction" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

13 the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in

14 light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further

15 object to the Request because it is calculated to annoy and harass.

16    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

17 to the Request.

18    **REQUEST FOR PRODUCTION NO. 9:**

19    All Documents and Communications that refer or relate to the possibility of Plaintiffs en-

20 tering into a business transaction, directly or indirectly with NSO or any of its affiliated companies

21 Concerning Pegasus.

22    **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

23    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

24 jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

25 unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

26 fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

27 basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

28

1   Request because the phrases "refer or relate to," "the possibility," "entering into a business trans-

2   action," and "Concerning" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

3   Request because the request of "[a]ll" Documents and Communications is unduly burdensome and

4   unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

5   Plaintiffs further object to the Request because it is calculated to annoy and harass.

6        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

7   to the Request.

8   **REQUEST FOR PRODUCTION NO. 10:**

9        All Documents and Communications that refer or relate to the possibility of Plaintiffs en-

10   tering into a business transaction with any companies, other than NSO and its affiliated companies,

11   that manufacture or sell Spyware or any cyber security solutions used by law enforcement agencies

12   and/or governments.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

14        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19   Request because the phrases "refer or relate to," "the possibility," "entering into a business trans-

20   action," and "any companies" are overbroad, vague, and ambiguous.  Plaintiffs further object to

21   the Request because the request of "[a]ll" Documents and Communications is unduly burdensome

22   and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

23        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

24   to the Request.

25

26

27

28

13

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications that refer or relate to the possibility of Plaintiffs entering into a business transaction with any companies, other than NSO and its affiliated companies, that manufacture or sell Spyware.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to," "the possibility," "entering into a business transaction," and "any companies" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications that refer or relate to the effect on the reputation of any of the Plaintiffs of Facebook's violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents

1   and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

2   and overbreadth of the rest of the Request.

3       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

4   to the Request.

5   **REQUEST FOR PRODUCTION NO. 13:**

6       All non-privileged internal Communications that refer or relate to Facebook's violation(s)

7   of the FTC Order.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

9       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

10   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

11   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

12   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

13   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

14   Request because the phrase "refer or relate to the effect on the reputation" is overbroad, vague,

15   and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll non-privileged

16   internal Communications" is unduly burdensome and unreasonable in light of the vagueness, am-

17   biguity, and overbreadth of the rest of the Request.

18       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19   to the Request.

20   **REQUEST FOR PRODUCTION NO. 14:**

21       All Communications between any of the Plaintiffs and any government or government

22   agency that refer or relate to Facebook's violation(s) of the FTC Order.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

24       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

25   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

26   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

27   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

28

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 15:**

All Communications between any of the Plaintiffs and any consultant, public relations company, or crisis management company that refer or relate to Facebook's violation(s) of the FTC order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications that refer or relate to the effect on the reputation of any of the Plaintiffs of the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

16

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "refer or relate to the reputation" and "any of the Plaintiffs" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 17:**

All non-privileged internal Communications that refer or relate to the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 18:**

All Communications between any of the Plaintiffs and any government or government agency that refer or relate to the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "any of the Plaintiffs" and "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 19:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management

1    company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object

2    to the Request because the request of "[a]ll" Communications is unduly burdensome and unrea-

3    sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

4         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

5    to the Request.

6    **REQUEST FOR PRODUCTION NO. 20:**

7         All Documents and Communications related to the effect on the reputation of any of the

8    Plaintiffs of Facebook's relationship with Cambridge Analytica.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

10        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

11   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

12   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

13   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

14   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

15   Request because the phrases "related to the effect on the reputation" and "relationship" are over-

16   broad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll"

17   Documents and Communications is unduly burdensome and unreasonable in light of the vague-

18   ness, ambiguity, and overbreadth of the rest of the Request.

19        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

20   to the Request.

21   **REQUEST FOR PRODUCTION NO. 21:**

22        All non-privileged internal Communications that refer or relate to Facebook's relationship

23   with Cambridge Analytica.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

25        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

26   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

27

28

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "relationship" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 22:**

All Communications between any of the Plaintiffs and any government or government agency that refer or relate to Facebook's relationship with Cambridge Analytica.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "relationship" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 23:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Facebook's relationship with Cambridge Analytica.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "relationship" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Facebook's role in allowing misinformation to be published in connection with the 2016 U.S. presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation," "role in allowing misinformation to be published," and "in connection with" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response
2  to the Request.

3  **REQUEST FOR PRODUCTION NO. 25:**

4    All non-privileged internal Communications that refer or relate to Facebook's role in al-
5  lowing misinformation to be published in connection with the 2016 U.S. presidential election.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

7    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-
8  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,
9  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-
10 fenses in this Action or proportionate to the needs of the case, including, without limitation, on the
11 basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this
12 Request because the phrases "refer or relate to," "role in allowing misinformation to be published,"
13 and "in connection with" are overbroad, vague, and ambiguous.  Plaintiffs further object to the
14 Request because the request of "[a]ll" non-privileged internal Communications is unduly burden-
15 some and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the
16 Request.

17   On the basis of the foregoing objections, Plaintiffs will not produce documents in response
18 to the Request.

19 **REQUEST FOR PRODUCTION NO. 26:**

20   All Communications with any government or government agency that refer or relate to
21 Facebook's role in allowing misinformation to be published in connection with the 2016 U.S.
22 presidential election.

23 **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

24   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-
25 jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,
26 unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-
27 fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

28

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," "role in allowing misinformation to be published," and "in connection with" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 27:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Facebook's role in allowing misinformation to be published in connection with the 2016 U.S. presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," "role in allowing misinformation to be published," and "in connection with" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 29:**

All non-privileged internal Communications that refer or relate to the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs

further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 30:**

All Communications with any government or government agency that refer or relate to the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 31:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

1   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

2   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

3   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

4   Request because the phrases "any consultant, public relations company, or crisis management

5   company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object

6   to the Request because the request of "[a]ll" Communications is unduly burdensome and unrea-

7   sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

8           On the basis of the foregoing objections, Plaintiffs will not produce documents in response

9   to the Request.

10  **REQUEST FOR PRODUCTION NO. 32:**

11          All Documents and Communications related to the effect on the reputation of any of the

12  Plaintiffs of the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar

13  against the Rohingya peoples.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

15          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

16  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

17  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

18  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

19  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

20  Request because the phrases "related to the effect on the reputation" and "role . . . in the genocide"

21  are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request

22  of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the

23  vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to this

24  Request to the extent that it seeks documents and communications not within Plaintiffs' posses-

25  sion, custody, or control.

26          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

27  to the Request.

28

**REQUEST FOR PRODUCTION NO. 33:**

All non-privileged internal Communications that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar against the Rohingya peoples.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "role . . . in the genocide" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 34:**

All Communications between any of the Plaintiffs and any government or government agency that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar against the Rohingya peoples.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

1    Request because the phrases "any government or government agency," "refer or relate to," and

2    "role . . . in the genocide" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

3    Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable

4    in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further

5    object to this Request to the extent that it seeks documents and communications not within Plain-

6    tiffs' possession, custody, or control.

7        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

8    to the Request.

9    **REQUEST FOR PRODUCTION NO. 35:**

10   All Communications with any consultant, public relations company, or crisis management

11   company that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in the

12   genocide in Myanmar against the Rohingya peoples.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

14   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19   Request because the phrases "any consultant, public relations company, or crisis management

20   company," "refer or relate to," and "role . . . in the genocide" are overbroad, vague, and ambiguous.

21   Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly

22   burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of

23   the Request.   Plaintiffs further object to this Request to the extent that it seeks documents and

24   communications not within Plaintiffs' possession, custody, or control.

25       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

26   to the Request.

27

28

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 37:**

All non-privileged internal Communications that refer or relate to Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged

1   Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

2   and overbreadth of the rest of the Request.

3         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

4   to the Request.

5   **REQUEST FOR PRODUCTION NO. 38:**

6         All Communications with any government or government agency that refer or relate to

7   Facebook's plans to use its Android app to track locations of Android users.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

9         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

10   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

11   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

12   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

13   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

14   Request because the phrases "any government or government agency," "refer or relate to," and

15   "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request be-

16   cause the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of

17   the vagueness, ambiguity, and overbreadth of the rest of the Request.

18         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19   to the Request.

20   **REQUEST FOR PRODUCTION NO. 39:**

21         All Communications with any consultant, public relations company, or crisis management

22   company that refer or relate to Facebook's plans to use its Android app to track locations of An-

23   droid users.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

25         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

26   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

27

28

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Facebook's collection of its users' email contacts without obtaining consent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and am-biguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 41:**

All non-privileged internal Communications that refer or relate to Facebook's collection of its users' email contacts without obtaining consent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 42:**

All Communications with any government or government agency that refer or relate to Facebook's collection of its users' email contacts without obtaining consent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 43:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Facebook's collection of users' email contacts without obtaining consent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of Facebook

and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 45:**

All non-privileged internal Communications that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 46:**

All Communications with any government or government agency that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 47:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2 to the Request.

3 **REQUEST FOR PRODUCTION NO. 49:**

4    All non-privileged internal Communications that refer or relate to the role of Facebook

5 and/or Instagram and/or WhatsApp in increases in depression and/or suicide of minors.

6 **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

7    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

8 jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

9 unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

10 fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

11 basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

12 Request because the phrases "refer or relate to" and "role" are overbroad, vague, and ambiguous.

13 Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Com-

14 munications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and

15 overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it

16 seeks documents and communications not within Plaintiffs' possession, custody, or control.

17    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

18 to the Request.

19 **REQUEST FOR PRODUCTION NO. 50:**

20    All Communications with any government or government agency that refer or relate to the

21 role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of

22 minors.

23 **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

24    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

25 jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

26 unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

27 fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

28

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 51:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 52:**

All non-privileged internal Communications that refer or relate to the Plaintiffs' serving of micro-targeted advertisements to emotionally vulnerable minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "serving of micro-targeted advertisements" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 53:**

All Communications with any government or government agency that refer or relate to the Plaintiffs' serving of micro-targeted advertisements to emotionally vulnerable minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to" and

"serving of micro-targeted advertisements" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 54:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the Plaintiffs' serving of micro-targeted advertisements to emotionally vulnerable minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to" and "serving of micro-targeted advertisements" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 56:**

All non-privileged internal Communications that refer or relate to the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs

further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 57:**

All Communications with any government or government agency that refer or relate to the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 58:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

1    unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

2    fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

3    basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

4    Request because the phrases "any consultant, public relations company, or crisis management

5    company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object

6    to the Request because the request of "[a]ll Communications is unduly burdensome and unrea-

7    sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

8            On the basis of the foregoing objections, Plaintiffs will not produce documents in response

9    to the Request.

10   **REQUEST FOR PRODUCTION NO. 59:**

11           All Documents and Communications related to the effect on the reputation of any of the

12   Plaintiffs of the use of Facebook and/or Instagram and/or WhatsApp by human trafficking organ-

13   izations.

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

15           Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

16   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

17   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

18   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

19   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

20   Request because the phrases "related to the effect on the reputation" and "the use of Facebook

21   and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further ob-

22   ject to the Request because the request of "[a]ll Documents and Communications is unduly bur-

23   densome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the

24   Request.  Plaintiffs further object to this Request to the extent that it seeks documents and com-

25   munications not within Plaintiffs' possession, custody, or control.

26           On the basis of the foregoing objections, Plaintiffs will not produce documents in response

27   to the Request.

28

**REQUEST FOR PRODUCTION NO. 60:**

All non-privileged internal Communications that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by human trafficking organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 61:**

All Communications with any government or government agency that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by human trafficking organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and

"the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 62:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by human trafficking organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

45

**REQUEST FOR PRODUCTION NO. 63:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19 and/or COVID-19 vaccines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 64:**

All non-privileged internal Communications that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19 and/or COVID-19 vaccines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

Request because the phrases "refer or relate to" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 65:**

All Communications with any government or government agency that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19 and/or COVID-19 vaccines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 66:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19 and/or COVID-19 vaccines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 67:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of WhatsApp's 2021 privacy policy change permitting increased sharing of data with Facebook by WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

1   On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2   to the Request.

3   **REQUEST FOR PRODUCTION NO. 68:**

4   All non-privileged internal Communications that refer or relate to WhatsApp's 2021 pri-

5   vacy policy change permitting increased sharing of data with Facebook by WhatsApp.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

7   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

8   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

9   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

10  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

11  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

12  Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs

13  further object to the Request because the request of "[a]ll" non-privileged internal Communica-

14  tions is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth

15  of the rest of the Request.

16  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

17  to the Request.

18  **REQUEST FOR PRODUCTION NO. 69:**

19  All Communications with any government or government agency that refer or relate to

20  WhatsApp's 2021 privacy policy change permitting increased sharing of data with Facebook by

21  WhatsApp.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

23  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

24  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

25  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

26  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

27  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

28

Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 70:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to WhatsApp's 2021 privacy policy change permitting increased sharing of data with Facebook by WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 71:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 72:**

All non-privileged internal Communications that refer or relate to the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

51

**REQUEST FOR PRODUCTION NO. 73:**

All Communications with any government or government agency that refer or relate to the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 74:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object

to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 75:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 76:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privi-leged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 77:**

All Communications with any government or government agency that refer or relate to the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Re-quest because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 78:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of WhatsApp" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 80:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 81:**

All Communications with any government or government agency that refer or relate to the use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 82:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of WhatsApp" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Boldend's development of tools capable of hacking WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 84:**

All non-privileged internal Communications that refer or relate to Boldend's development of tools capable of hacking WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 85:**

All Communications with any government or government agency that refer or relate to Boldend's development of tools capable of hacking WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 86:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Boldend's development of tools capable of hacking WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 87:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist attacks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

1  Request because the request of "[a]ll" Documents and Communications is unduly burdensome and

2  unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

3  Plaintiffs further object to this Request to the extent that it seeks documents and communications

4  not within Plaintiffs' possession, custody, or control.

5          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

6  to the Request.

7  **REQUEST FOR PRODUCTION NO. 88:**

8          All non-privileged internal Communications that refer or relate to the use of WhatsApp,

9  Facebook and/or Instagram to plot and/or execute terrorist attacks.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

11          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

12  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

13  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

14  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

15  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

16  Request because the phrases "refer or relate to" and "the use of WhatsApp, Facebook and/or In-

17  stagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

18  the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unrea-

19  sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs

20  further object to this Request to the extent that it seeks documents and communications not within

21  Plaintiffs' possession, custody, or control.

22          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

23  to the Request.

24  **REQUEST FOR PRODUCTION NO. 89:**

25          All Communications with any government or government agency that refer or relate to the

26  use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist attacks.

27

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 90:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist attacks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll"

Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 91:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request. Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 92:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate" and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 93:**

All Communications with any government or government agency that refer or relate to the use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate," and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 94:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate," and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp, Facebook and/or Instagram to spread propaganda in support of terrorist activities.

65

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request. Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 96:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp, Facebook and/or Instagram to spread propaganda in support of terrorist activities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request. Plaintiffs

1   further object to this Request to the extent that it seeks documents and communications not within

2   Plaintiffs' possession, custody, or control.

3        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

4   to the Request.

5   **REQUEST FOR PRODUCTION NO. 97:**

6        All Communications with any government or government agency that refer or relate to the

7   use of WhatsApp, Facebook and/or Instagram to spread propaganda in support of terrorist activi-

8   ties.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

10        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

11   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

12   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

13   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

14   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

15   Request because the phrases "any government or government agency," "refer or relate to" and "the

16   use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs

17   further object to the Request because the request of "[a]ll" Communications is unduly burdensome

18   and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

19   Plaintiffs further object to this Request to the extent that it seeks documents and communications

20   not within Plaintiffs' possession, custody, or control.

21        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

22   to the Request.

23   **REQUEST FOR PRODUCTION NO. 98:**

24        All Communications with any consultant, public relations company, or crisis management

25   company that refer or relate to the use of WhatsApp, Facebook and/or Instagram to spread propa-

26   ganda in support of terrorist activities.

27

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to" and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

68

Dated:  August 24, 2023

DAVIS POLK & WARDWELL LLP

By:  /s/ Micah G. Block

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:  micah.block@davispolk.com

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email:  greg.andres@davispolk.com
        antonio.perez@davispolk.com
        craig.cagney@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

69

## CERTIFICATE OF SERVICE

I hereby certify that I am a citizen of the United States and employed in the County of New York, New York.  I am over the age of 18 years and not a party to the within-entitled action.  My business address is Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

On August 24, 2023, I served a true and correct copy of the following document(s) on the parties in the action addressed as follows:

**PLAINTIFFS' AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES' LIMITED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

☐ (BY OVERNIGHT COURIER) by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered by a FedEx or UPS agent for delivery.

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) to the email addresses set forth below on this date.

Joseph N. Akrotirianakis
Aaron S. Craig
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Email: jakro@kslaw.com
        acraig@kslaw.com

*Attorneys for Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited*

I declare under penalty of perjury that the above is true and correct.

Executed on August 24, 2023 at New York, New York.

_/s/ Luca Marzorati_
Luca Marzorati

# EXHIBIT L

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
Email:    greg.andres@davispolk.com
              antonio.perez@davispolk.com
              craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and META PLATFORMS, INC., a Delaware corporation,<br><br>                                    Plaintiffs,<br><br>          v.<br><br>NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD.,<br><br>                                    Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES' LIMITED SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

1

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Civil Local Rule
2  34 of the Local Rules of Practice in Civil Proceedings before the United States District Court for
3  the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. (collec-
4  tively, "Plaintiffs"), by and through their attorneys, hereby amend their responses and objections—
5  which were served on May 31, 2023—to the Second Set of Requests for Production of Defendant
6  NSO Group Technologies Limited ("NSO") dated May 1, 2023 (each a "Request," and collec-
7  tively, the "Requests") in the above-captioned action (the "Action").

8    Each response is made only for the purpose of this Action and for no other purpose.  Plain-
9  tiffs' Amended Responses and Objections are made without in any way waiving or intending to
10  waive (i) any objections, including, without limitation, as to the competency, relevancy, material-
11  ity, propriety, privilege, or admissibility as evidence, for any purpose, of any documents or com-
12  munications produced in response to the Requests and (ii) the right to object on any ground to the
13  use of any documents or communications produced in response to the Requests at any proceedings,
14  hearings, arbitration, or trial.  All evidentiary objections and grounds are expressly reserved.

15    Plaintiffs' Amended Responses and Objections, and any production of documents or com-
16  munications in response to the Requests, does not waive or intend to waive (and on the contrary,
17  reserves and intends to reserve) any objections available to it, nor do Plaintiffs accept, adopt, or
18  concede the truth or validity of any characterization made in the Requests.  Moreover, no objection
19  or limitation, or lack thereof, made in these Amended Responses and Objections shall be deemed
20  an admission by Plaintiffs that (i) any particular evidence exists, or is relevant, probative, nonpriv-
21  ileged, or admissible in evidence; or (ii) any statement or characterization in the Requests is accu-
22  rate or complete.

23    A statement that the Plaintiffs will produce information or documents in response to a par-
24  ticular Request is not to be construed as an admission that any responsive information or docu-
25  ments now exist or previously existed, or that any such information or documents are within Plain-
26  tiffs' possession, custody, or control.

27

28

The service of these Amended Responses and Objections should not be construed as a waiver of any right, including but not limited to, the right to assert additional objections to individual Requests or to supplement or amend them as discovery and fact development progresses.

Subject to and without waiving any of the following objections, counsel for Plaintiffs is available to meet in good faith with NSO concerning the Requests and these Amended Responses and Objections.

## GENERAL OBJECTIONS

The following General Objections form a part of, and are hereby incorporated into, the response to each and every Request as set forth below.  Nothing in the Amended Responses and Objections to the Requests should be construed as a waiver of these General Objections.  Not listing an objection herein does not constitute a waiver of that objection or otherwise preclude Plaintiffs from raising that objection later.  Plaintiffs' failure to object to a Request, or any future agreement to produce responsive documents, is not a representation that any such documents exist or are within Plaintiffs' possession, custody, or control.  Any future production pursuant to the Requests or otherwise is not to be construed as an admission that any Request is proper.

1.      Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they purport to impose obligations on Plaintiffs that are broader than and/or inconsistent with those required by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, or any other applicable law, rule, or court order.  Plaintiffs will withhold all documents in response to the Requests that it has no obligation to produce under any such applicable law, rule, or court order.

2.      Plaintiffs object to those portions of the Requests that are vague, ambiguous, unduly broad, overly burdensome, oppressive, capable of multiple interpretations, do not identify with particularity the documents sought, lack sufficient precision to allow Plaintiffs to formulate an appropriate response, irrelevant to a party's claim or defense, or not proportional to the needs of the case.

3

3.      Plaintiffs object to any Request seeking "any" or "all" documents or communications on the grounds that it is unduly broad and overly burdensome and to the extent it attempts to impose obligations beyond those imposed by the Applicable Rules.  Plaintiffs cannot guarantee that they will have located every single document responsive to a particular Request.  Subject to the General Objections and any qualifications below, Plaintiffs may respond to any Request seeking "any" or "all" documents by producing the responsive, nonprivileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith, employing search parameters (including relevant custodians and the relevant time period) for the collection and production of Plaintiffs' documents (the "Search Parameters").

4.      Plaintiffs object to the Requests to the extent that they are duplicative or seek documents or communications not within Plaintiffs' possession, custody, or control.  By responding to the Requests, Plaintiffs do not concede that any category of documents or communications that the Requests seek does in fact exist or that such materials are in the possession, custody, or control of Plaintiffs.

5.      Plaintiffs object to the Requests to the extent they seek documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  Plaintiffs will withhold all privileged or otherwise protected documents or communications in response to the Requests.  Any production of privileged or otherwise protected documents or communications would be inadvertent and would not constitute a waiver of any claim or privilege or other exemption from production.  Plaintiffs reserve the right to obtain the return of such documents or communications and prohibit their use in any manner, and hereby request the return of any such inadvertently produced privileged documents or communications and reserve the right to object to the disclosure or use of such privileged documents or communications at any stage of these or any other proceedings pursuant to § 13 of the Stipulated Protective Order (ECF No. 132).

4

6.      Plaintiffs object to the Requests to the extent that they seek disclosure of documents or communications as to which Plaintiffs owe a duty of nondisclosure to a third party, or the production of which would result in the violation of any contractual obligation to a third party.

7.      Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they seek the production of non-public, proprietary, or other confidential or highly confidential information—including business, commercial, financial, personal, consumer, customer, client, private, commercially/competitively sensitive, regulatory, and/or trade secret information—of Plaintiffs or third parties.  Plaintiffs will designate such information as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" consistent with § 5.2 of the Stipulated Protective Order (ECF No. 132).

8.      Plaintiffs object to the Requests to the extent they request documents or communications otherwise available to NSO in the public domain, or from some other source that is more convenient, less burdensome, or less expensive.

9.      Plaintiffs object to the Requests to the extent they seek documents or communications already in the possession, custody or control of NSO, or call for duplicative documents or communications.

10.      Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they purport to impose an obligation to preserve and/or produce any information or documents that are newly created or received after the receipt of the Requests, because efforts to preserve and/or produce such documents or information would be unduly burdensome and require unreasonable expense.

11.      With respect to the Definitions and Instructions in the Requests, Plaintiffs object to the extent that they purport to define those terms differently from how those terms are defined by the Applicable Rules; depart from the customary meaning of any term or provide definitions that are inaccurate; or are based on premises that are misleading, inaccurate, or incomplete.

## OBJECTIONS TO INSTRUCTIONS

1.      Plaintiffs object to Instruction No. 1, and to any Request seeking "all" documents in their possession, custody, or control, on the grounds that Plaintiffs cannot guarantee that they

5

have located every single document responsive to a particular Request.  Plaintiffs further object to Instruction No. 1 as vague, ambiguous, unduly broad, and overly burdensome to the extent it calls for responses to Requests to be from any "affiliates, agents, attorneys, consultants, investigators, or other persons acting on" Plaintiffs' behalf regardless of whether searching such entities is reasonable or overly burdensome.

2.      Plaintiffs object to Instruction No. 2 to the extent that it seeks production of documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

3.      Plaintiffs object to Instruction No. 4 as unduly broad and overly burdensome to the extent it requires Plaintiffs to include on a privilege log materials other than those materials identified after a reasonable search conducted in good faith.

## OBJECTIONS TO DEFINITIONS

1.      Plaintiffs object to the definition of "all" and "any" and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Subject to the General Objections and any qualifications below, Plaintiffs will respond to any Request seeking "all" documents by producing the responsive, non-privileged documents within their possession, custody, and control that can be located after a reasonable search conducted in good faith.

2.      Plaintiffs object to the definitions of "Communication(s)" and "Documents(s)" and to any Request incorporating that definition, insofar as they are ambiguous, overly broad, and

unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.

3.  Plaintiffs object to the definition of "Concerning" insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition of concerning beyond the general understanding of that term, including because it includes "relating to." Plaintiffs will treat "Concerning" as meaning "regarding, describing, or reflecting."

4.  Plaintiffs object to the definition of "Relate(d) to," "refer to," "refer or relate to" and "reflecting," and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition beyond the general understanding of that term. Plaintiffs will treat "Relate(d) to," "refer to," "refer or relate to" and "reflecting" as meaning "regarding, describing, or reflecting."

5.  Plaintiffs object to the definitions of "Meta," "You," "Your," and "Plaintiffs," and to any Request incorporating those definitions, on the grounds that they are unduly broad, vague, ambiguous, overly burdensome, encompass persons or entities not relevant to this action, refer to unknown persons or entities, and not proportional to the needs of the case.

6.  Plaintiffs object to the definition of "Security Vulnerability," and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition beyond the general understanding of that term. Plaintiffs also object to the use of the term "Security Vulnerability" or "vulnerability" with respect to Plaintiffs' applications to the extent the use those terms calls for, or purports to incorporate, any legal conclusions, including without limitation as to Defendants' authorization to access Plaintiff's systems, servers, or applications. Plaintiffs' use of that term and their Amended Responses and Objections to Defendants' requests using that term are not intended to have and shall not be construed as having any bearing on whether or not Plaintiffs had authorization to access to the affected portions of Plaintiffs' platforms.

**SPECIFIC OBJECTIONS AND RESPONSES**

**REQUEST FOR PRODUCTION NO. 99:**

All Documents and Communications that refer or relate to any use or access of the WhatsApp Service by Defendants, directly or indirectly, including but not limited to server logs or other electronic records.

**RESPONSE TO REQUEST FOR PRODUCTION FOR PRODUCTION NO. 99:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs further object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery. Plaintiffs further object to this Request because the phrases "any use or access," and "other electronic records" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce (1) server logs showing NSO's attacks as alleged in the Complaint, (2) non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters relating to CVE-2019-3568, and (3) documents sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents and Communications that refer or relate to any use or access of the WhatsApp Service through any of Defendants' customers' use of Pegasus, directly or indirectly, including but not limited to server logs or other electronic records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery. Plaintiffs further object to this Request because the phrases "any use or access," and "other electronic records" are overbroad, vague, and ambiguous. Plaintiffs also object to this Request to the extent it is duplicative of Request No. 99, and as vague and ambiguous to the extent it seeks anything other than the documents requested by Request No. 99 based on an alleged distinction between access by Defendants from access by others using Defendants' products.

Subject to and without waiver of these objections, Plaintiffs will produce (1) server logs showing NSO's attacks as alleged in the Complaint, (2) non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters relating to CVE-2019-3568, and (3) documents sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents and Communications that refer or relate to the WhatsApp Security Vulnerability referred to as CVE-2019-3568 in paragraph 44 of Plaintiffs' Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents created by Plaintiffs that are in Plaintiffs' possession, custody, or control and can be located after a reasonable search conducted in good faith relating to CVE-2019-3568 in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 102:**

Documents sufficient to identify each Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request as premature because Defendants have not yet produced any

documents regarding their exploitation of Plaintiffs' platforms.  Plaintiffs further object to this Request because the phrase "sufficient" is overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce documents sufficient to identify any activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents and Communications that refer or relate to Plaintiffs' discovery or initial awareness (however such awareness occurred) of any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs further object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "initial awareness (however such awareness occurred)" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in

good faith and in accordance with the Search Parameters relating to CVE-2019-3568 and (2) documents sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents and Communications that refer or relate to Plaintiffs' response to any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters relating to CVE-2019-3568 and (2) documents sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents and Communications that refer or relate to Plaintiffs' public announcement of any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created,

exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters relating to CVE-2019-3568 and (2) documents sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents and Communications that refer or relate to any steps taken by Plaintiffs to limit, disable, or remediate any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

is duplicative of other Requests for Production.  Plaintiffs object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any steps taken . . . to limit, disable, or remediate" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters relating to CVE-2019-3568 and (2) documents sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents and Communications that refer or relate to any steps taken by Plaintiffs to identify users of the WhatsApp Service affected by any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims

or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any steps taken . . . to identify users" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Communications that refer or relate to any communication by Plaintiffs with users of Plaintiffs' services related to any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents

1   or information protected by the attorney-client privilege, the attorney work product doctrine, or

2   other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plain-

3   tiffs further object to this Request because the phrase "any communication" is overbroad, vague,

4   and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature be-

5   cause Defendants have not yet produced any documents regarding their exploitation of Plaintiffs'

6   platforms.

7            Subject to and without waiver of these objections, Plaintiffs will produce (1) the form mes-

8   sage sent to all affected WhatsApp users and (2) non-privileged communications with Citizen Lab

9   prior to filing the Complaint that concern efforts to identify or communicate with the owners of

10   the 1,400 target devices referenced in the Complaint.

11  **REQUEST FOR PRODUCTION NO. 109:**

12           All Documents and Communications that refer or relate to any outside companies, individ-

13  uals, or other service providers that Plaintiffs retained to limit, disable, or remediate any Security

14  Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plain-

15  tiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

17           Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

18  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

19  is duplicative of other Requests for Production.  Plaintiffs object to the Request as overbroad,

20  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

21  fenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

22  Plaintiffs further object to this Request to the extent that it seeks the production of materials cov-

23  ered by non-disclosure and/or confidentiality agreements with third parties and/or that would vio-

24  late the privacy interests of others.  Plaintiffs further object to this Request to the extent that it

25  purports to require the production of documents or information protected by the attorney-client

26  privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-

27  fidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the

28

phrase "any outside companies, individuals, or other service providers" is overbroad, vague, and ambiguous.   Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' plat-forms.

Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 110:**

Documents sufficient to show every iteration of WhatsApp's Terms of Service in effect in any country or territory in 2018 and/or 2019.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents "sufficient to show every iteration of WhatsApp's Terms of Service in effect in any country or territory in 2018 and/or 2019," without limitation, regardless of whether such Docu-ments are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agree-ments with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or in-formation protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "sufficient to show," "every iteration of WhatsApp's Terms of Service in effect,"  and "any country or territory" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce publicly available Terms of Service for WhatsApp in effect between the years of 2018 and 2019 that are responsive to this Request and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 111:**

All Documents and Communications that refer or relate to Plaintiffs' enforcement of any term in WhatsApp's Terms of Service that Plaintiffs allege Defendant violated.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 111:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Plaintiffs' enforcement of any term in WhatsApp's Terms of Service that Plaintiffs allege Defendant violated," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "enforcement of any term in WhatsApp's Terms of Service" is overbroad, vague, and ambiguous.

Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 112:**

All Documents and Communications that refer or relate to any expenses that: (1) Plaintiffs claim that they incurred as a result of any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, and that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, and (2) that Plaintiffs allege were caused by Defendants and for which Plaintiffs seek recovery from Defendants in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any expenses" are overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents and communications related to Plaintiffs' damages that are responsive to this Request and are in Plaintiffs' possession, custody, or control.  Plaintiffs reserve the right to amend their production based on documents and communications from Defendants, including documents relating to Defendants' finances.

**REQUEST FOR PRODUCTION NO. 113:**

Documents sufficient to show how Plaintiffs identified the owners of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

1   Plaintiffs further object to this Request to the extent that it seeks the production of materials cov-

2   ered by non-disclosure and/or confidentiality agreements with third parties and/or that would vio-

3   late the privacy interests of others.  Plaintiffs further object to this Request to the extent that it

4   purports to require the production of documents or information protected by the attorney-client

5   privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-

6   fidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the

7   phrases "sufficient to show" and "identified the owners" are overbroad, vague, and ambiguous.

8          Subject to and without waiver of these objections, Plaintiffs will produce (1) to the extent

9   available, information known to Plaintiffs sufficient to identify the victims associated with the

10  1,400 target devices referenced in the Complaint and (2) non-privileged communications with Cit-

11  izen Lab prior to filing the Complaint that concern efforts to identify or communicate with the

12  owners of the 1,400 target devices referenced in the Complaint.

13  **REQUEST FOR PRODUCTION NO. 114:**

14         Documents sufficient to show how Plaintiffs identified the "Target Users" referenced in

15  Paragraph 1 of the Complaint in this action.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

17         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

18  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

19  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

20  fenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

21  Plaintiffs further object to this Request to the extent that it seeks the production of materials cov-

22  ered by non-disclosure and/or confidentiality agreements with third parties and/or that would vio-

23  late the privacy interests of others.  Plaintiffs further object to this Request to the extent that it

24  purports to require the production of documents or information protected by the attorney-client

25  privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-

26  fidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the

27

28

1   phrases "sufficient to show" and "identified the 'Target Users'" are overbroad, vague, and ambig-

2   uous.

3        Subject to and without waiver of these objections, Plaintiffs will produce (1) to the extent

4   available, information known to Plaintiffs sufficient to identify the victims associated with the

5   1,400 target devices referenced in the Complaint and (2) non-privileged communications with Cit-

6   izen Lab prior to filing the Complaint that concern efforts to identify or communicate with the

7   owners of the 1,400 target devices referenced in the Complaint.

8   **REQUEST FOR PRODUCTION NO. 115:**

9        All Documents referring or relating to Plaintiffs' decision in May 2019 to contact the own-

10  ers of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint in

11  this action about Defendants and/or Pegasus.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

13       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

14  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

15  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

16  fenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

17  Plaintiffs further object to this Request to the extent that it seeks the production of materials cov-

18  ered by non-disclosure and/or confidentiality agreements with third parties and/or that would vio-

19  late the privacy interests of others.  Plaintiffs further object to this Request to the extent that it

20  purports to require the production of documents or information protected by the attorney-client

21  privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-

22  fidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the

23  phrases "referring or relating to Plaintiffs' decision" and "contact the owners of . . . the 'Target

24  Devices'" are overbroad, vague, and ambiguous.

25       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

26  to the Request.

27

28

**REQUEST FOR PRODUCTION NO. 116:**

All Communications between any of Plaintiffs and Forbidden Stories aka Freedom Voices Network, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Laurent Richard, Sandrine Rigaud, Arthur Bouvart, Paloma Dupont de Dinechin, Clement Le Merlus, Phineas Rueckert, or Audrey Travere, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 116:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 117:**

All Communications between any of Plaintiffs and Forbidden Stories aka Freedom Voices Network, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Laurent Richard, Sandrine Rigaud, Arthur Bouvart, Paloma Dupont de Dinechin, Clement Le Merlus, Phineas Rueckert, or Audrey Travere, that refer or relate to security monitoring tools, user monitoring tools, or other companies providing any tools to monitor users' messages or location through any of Plaintiffs' platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 117:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 118:**

All Communications between any of Plaintiffs and The Citizen Lab at the University of Toronto, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Ronald Deibert, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 118:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1       Subject to and without waiver of these objections, Plaintiffs will produce non-privileged

2   communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or

3   communicate with the owners of the 1,400 target devices referenced in the Complaint.

4   **REQUEST FOR PRODUCTION NO. 119:**

5       All Communications between any of Plaintiffs and Amnesty Tech or Amnesty Interna-

6   tional, including any employee, contractor, or representative thereof, that refer or relate to any of

7   the Defendants.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 119:**

9       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

10  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

11  formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

12  of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

13  materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

14  that would violate the privacy interests of others.  Plaintiffs further object to this Request to the

15  extent that it purports to require the production of documents or information protected by the at-

16  torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-

17  ity, duty of confidentiality, or exemption from discovery.

18      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19  to the Request.

20  **REQUEST FOR PRODUCTION NO. 120:**

21      All Communications between any of Plaintiffs and the United States Department of Com-

22  merce Bureau of Industry and Security, including any employee, contractor, or representative

23  thereof, that refer or relate to any of the Defendants.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 120:**

25      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

26  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

27  formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

28

of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the at-torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-ity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents and Communications relating to investments made by any of Plaintiffs in any companies selling cyber security products or technologies or cyber intelligence products or technologies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 121:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of oth-ers.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from dis-covery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 122:**

All Documents and Communications relating to investments made by any of the directors of any of Plaintiffs, including but not limited to Peter Thiel or Mark Anderson, in any companies selling cyber security products or technologies or cyber intelligence products or technologies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 123:**

All Communications between any law enforcement or intelligence agency and any of Plaintiffs relating to any request made to any of Plaintiffs to assist in preventing or investigating a crime, and Documents related thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 124:**

Documents sufficient to show Plaintiffs' policies in effect at any time from 2018 to present relating to the handling of requests made by any law enforcement or intelligence agency to any of Plaintiffs to assist in preventing or investigating a crime, and Documents related to Plaintiffs' application of those policies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce publicly available policies for WhatsApp in effect between the years of 2018 and 2019 that are responsive to this Request and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 125:**

All Documents and Communications that refer or relate to Tom Cohen, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 125:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Tom Cohen," without limitation, regardless of whether such Documents are relevant to any issue in the Action. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 126:**

All Documents and Communications that refer or relate to Otto Ebeling, identified in Plaintiff's initial disclosures, related to Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 126:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad,

1  unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

2  fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

3  Documents and Communications "that refer or relate to Otto Ebeling," without limitation, regard-

4  less of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object

5  to this Request to the extent that it purports to require the production of documents or information

6  protected by the attorney-client privilege, the attorney work product doctrine, or other applicable

7  privilege, immunity, duty of confidentiality, or exemption from discovery.

8         Subject to and without waiver of these objections, Plaintiffs will produce non-privileged,

9  relevant documents and communications that are responsive to this Request, are in Plaintiffs' pos-

10  session, custody, or control, and can be located after a reasonable search conducted in good faith

11  and in accordance with the Search Parameters.

12  **REQUEST FOR PRODUCTION NO. 127:**

13         All Documents and Communications that refer or relate to Aashin Gautum, identified in

14  Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, in-

15  cluding but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or

16  were otherwise involved with in any respect.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 127:**

18         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

19  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

20  unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

21  fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

22  Documents and Communications "that refer or relate to Aashin Gautum," without limitation, re-

23  gardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further

24  object to this Request to the extent that it purports to require the production of documents or in-

25  formation protected by the attorney-client privilege, the attorney work product doctrine, or other

26  applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

27

28

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 128:**

All Documents and Communications that refer or relate to Saish Gersappa, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 128:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Saish Gersappa," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 129:**

All Documents and Communications that refer or relate to Claudiu Gheorghe, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 129:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Claudiu Gheorghe," without limitation, regardless of whether such Documents are relevant to any issue in the Action. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 130:**

All Documents and Communications that refer or relate to Jesus Barcons Palau, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 130:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Jesus Barcons Palau," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 131:**

All Documents and Communications that refer or relate to Drew Robinson, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 131:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Drew Robinson," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1    Subject to and without waiver of these objections, Plaintiffs will produce non-privileged,

2  relevant documents and communications that are responsive to this Request, are in Plaintiffs' pos-

3  session, custody, or control, and can be located after a reasonable search conducted in good faith

4  and in accordance with the Search Parameters.

5  **REQUEST FOR PRODUCTION NO. 132:**

6    All Documents and Communications that refer or relate to Michael Scott, identified in

7  Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, in-

8  cluding but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or

9  were otherwise involved with in any respect.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 132:**

11    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

12  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

13  unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

14  fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

15  Documents and Communications "that refer or relate to Michael Scott," without limitation, re-

16  gardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further

17  object to this Request to the extent that it purports to require the production of documents or in-

18  formation protected by the attorney-client privilege, the attorney work product doctrine, or other

19  applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

20    Subject to and without waiver of these objections, Plaintiffs will produce non-privileged,

21  relevant documents and communications that are responsive to this Request, are in Plaintiffs' pos-

22  session, custody, or control, and can be located after a reasonable search conducted in good faith

23  and in accordance with the Search Parameters.

24  **REQUEST FOR PRODUCTION NO. 133:**

25    All Documents and Communications that refer or relate to Ke Wang, identified in Plain-

26  tiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including

27

28

but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 133:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Ke Wang," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 134:**

All Documents and Communications that refer or relate to YuanYuan Wang, identified in Plaintiff's initial disclosures, related any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 134:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to YuanYuan Wang," without limitation,

regardless of whether such Documents are relevant to any issue in the Action. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 135:**

All Communications between any of Plaintiffs and 365 Group LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 135:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1. Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 136:**

All Communications between any of Plaintiffs and Amazon Web Services, Inc., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 136:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 137:**

All Communications between any of Plaintiffs and AT&T Mobility LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 137:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 138:**

All Communications between any of Plaintiffs and Berkeley Research Group, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 138:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1. Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 139:**

All Communications between any of Plaintiffs and Choopa, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 139:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1. Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2  to the Request.

3  **REQUEST FOR PRODUCTION NO. 140:**

4      All Communications between any of Plaintiffs and Cogent Communications, Inc., includ-

5  ing any employee, contractor, or representative thereof, that refer or relate to any of the Defend-

6  ants.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 140:**

8      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

10  is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

11  sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

12  cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

13  tion of documents or information protected by the attorney-client privilege, the attorney work

14  product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

15  from discovery.

16      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

17  to the Request.

18  **REQUEST FOR PRODUCTION NO. 141:**

19      All Communications between any of Plaintiffs and Compass Stratagem, including any em-

20  ployee, contractor, or representative thereof, that refer or relate to any of the Defendants.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 141:**

22      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

23  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

24  is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

25  sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

26  cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

27  tion of documents or information protected by the attorney-client privilege, the attorney work

28

product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 142:**

All Communications between any of Plaintiffs and E-Tel Systems, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 142:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 143:**

All Communications between any of Plaintiffs and Francisco Partners Management L.P., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 143:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

sponsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 144:**

All Communications between any of Plaintiffs and Google LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 144:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 145:**

All Communications between any of Plaintiffs and GreenCloud VPS JSC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 145:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 146:**

All Communications between any of Plaintiffs and Jefferies Group LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 146:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 147:**

All Communications between any of Plaintiffs and the Los Angeles Police Department, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 147:**

2         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

3    jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

4    is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

5    sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

6    cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

7    tion of documents or information protected by the attorney-client privilege, the attorney work

8    product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

9    from discovery.

10        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

11   to the Request.

12   **REQUEST FOR PRODUCTION NO. 148:**

13        All Communications between any of Plaintiffs and Mercury Public Affairs, LLC, including

14   any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 148:**

16        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

17   jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

18   is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

19   sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

20   cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

21   tion of documents or information protected by the attorney-client privilege, the attorney work

22   product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

23   from discovery.

24        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

25   to the Request.

26

27

28

**REQUEST FOR PRODUCTION NO. 149:**

All Communications between any of Plaintiffs and Pacific Bell Telephone Company, Inc., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 149:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 150:**

All Communications between any of Plaintiffs and PayPal Inc., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 150:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2  to the Request.

3  **REQUEST FOR PRODUCTION NO. 151:**

4  All Communications between any of Plaintiffs and PSI Network, Inc. including any em-

5  ployee, contractor, or representative thereof, that refer or relate to any of the Defendants.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 151:**

7  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

8  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

9  is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

10  sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

11  cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

12  tion of documents or information protected by the attorney-client privilege, the attorney work

13  product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

14  from discovery.

15  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

16  to the Request.

17  **REQUEST FOR PRODUCTION NO. 152:**

18  All Communications between any of Plaintiffs and QuadraNet Enterprises LLC, including

19  any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 152:**

21  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

22  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

23  is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

24  sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

25  cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

26  tion of documents or information protected by the attorney-client privilege, the attorney work

27

28

product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 153:**

All Communications between any of Plaintiffs and the San Diego Police Department, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 153:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1. Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 154:**

All Communications between any of Plaintiffs and any law enforcement agency, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 154:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Plaintiffs further object to this Request to the extent that it seeks the production of

45

materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 155:**

All Communications between any of Plaintiffs and Severdroid LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 155:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 156:**

All Communications between any of Plaintiffs and Verisign Inc., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 156:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 157:**

All Communications between any of Plaintiffs and Verizon Wireless Services, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 157:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 158:**

All Communications between any of Plaintiffs and Vultur Holdings, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 158:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 159:**

All Communications that refer or relate to inquiries to Plaintiffs about Plaintiffs' ability, through any of its entities, to view or access encrypted messages sent via WhatsApp or on any of Plaintiffs' other platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 159:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2    to the Request.

3    **REQUEST FOR PRODUCTION NO. 160:**

4    All Communications that refer or relate to Plaintiffs' use of information obtained from

5    encrypted messages sent via WhatsApp or on any of Plaintiffs' other platforms for commercial

6    purposes.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 160:**

8    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9    jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

10   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

11   fenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this

12   Request to the extent that it seeks the production of materials covered by non-disclosure and/or

13   confidentiality agreements with third parties and/or that would violate the privacy interests of oth-

14   ers.  Plaintiffs further object to this Request to the extent that it purports to require the production

15   of documents or information protected by the attorney-client privilege, the attorney work product

16   doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from dis-

17   covery.

18   On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19   to the Request.

20   **REQUEST FOR PRODUCTION NO. 161:**

21   All Communications that refer or relate to Plaintiffs' policies and decisions whether to

22   terminate user accounts on any of its entities, including WhatsApp and Facebook.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 161:**

24   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

25   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

26   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

27   fenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

28

Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 162:**

All Communications by or between employees of Plaintiffs that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 162:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Communications "by or between employees of Plaintiffs that refer or relate to Defendants," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 163:**

All Communications that refer or relate to accounts of Defendants' employees that were terminated from any of Plaintiffs' platforms, including but not limited to WhatsApp and Facebook.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 163:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "refer or relate to," "accounts of Defendants' employees that were terminated," and "any of Plaintiffs' platforms" are overbroad, vague, and ambiguous.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 164:**

All Documents and Communications related to any alleged statements made by Defendants that refer or relate to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, including but not limited to the alleged statement made attributed to "NSO Employee 1" in Your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 164:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications without limitation, regardless of whether such Documents are relevant to any issue in the Action. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery. Plaintiffs further object to this Request because the phrases "related to" and "any alleged statement" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce the WhatsApp messages with "NSO Employee 1" referenced in the Complaint that are within Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 165:**

All Communications between any of Plaintiffs and any of the following current or former officials or representatives of the United States (including their staff members) that refer or relate to Defendants: Maher Bitar, Tom Malinowski, Anne Neuberger, Adam Schiff, Jake Sullivan, or Ron Wyden.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 165:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 166:**

All Communications between any of Plaintiffs and any current or former officials or representatives of the United States government (including any Congressmen or Senators) that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 166:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 167:**

All Communications between any of Plaintiffs and any congressional committees, including but not limited to the Senate Select Committee on Intelligence and the House Permanent Select Committee on Intelligence, that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 167:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 168:**

All Communications between any of Plaintiffs and any registered lobbyists in the United States that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 168:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 169:**

All Communications between any of Plaintiffs and officials of any state within the United States that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 169:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 170:**

All Communications between any of Plaintiffs and officials or representatives of any government outside of the United States that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 170:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 171:**

All Communications between any of Plaintiffs and officials of any international organization, public or private, that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 171:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 172:**

All Communications between any of Plaintiffs on the one hand, and journalists, members of the press, or media on the other hand, that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 172:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the

extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 173:**

All Communications between any of Plaintiffs on the one hand, and Public Relations or other media consulting companies on the other hand, that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 173:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 174:**

All Communications between any of Plaintiffs and any trade groups or industry associations that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 174:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs

of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 175:**

All Communications between any of Plaintiffs and Apple, Inc., including any employee, contractor, or representative thereof that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 175:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 176:**

All Documents and Communications that refer or relate to communications by Plaintiffs or their representatives with any of the Plaintiffs in the case of *Dada v. NSO Group Tech. Ltd.*,

United States District Court, Northern District of California Case No. 3:22-cv-07513 or their representatives.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 176:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 177:**

All Documents and Communications produced by Facebook to any of the plaintiffs in the action, *In re Facebook, Inc., Consumer Privacy User Profile* Litigation (N.D. Cal., Case No. 3:18-md-02843-VC).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 177:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the

extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 178:**

All Documents and Communications relating to the "discovery misconduct" referenced in Judge Vince Chhabria's February 9, 2023 Order (ECF No. 1104) in the action, *In re Facebook, Inc., Consumer Privacy User Profile Litigation* (N.D. Cal., Case No. 3:18-md-02843-VC), including without limitation (1) Facebook and its counsel's "repeated use of frivolous legal arguments to delay the production of highly probative evidence, (2) Facebook and its counsel's "misconduct as it relates to the named plaintiff's data," (3) Facebook and its counsel's "misconduct related to the Switchboard profiles," (4) Facebook and its counsel's "deposition misconduct," and (5) Facebook and its counsel's "over-designation of documents as privileged."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 178:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

Dated:   August 24, 2023

DAVIS POLK & WARDWELL LLP

By:   /s/ Micah G. Block

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:  micah.block@davispolk.com

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email:  greg.andres@davispolk.com
          antonio.perez@davispolk.com
          craig.cagney@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

61

**CERTIFICATE OF SERVICE**

I hereby certify that I am a citizen of the United States and employed in the County of New York, New York.  I am over the age of 18 years and not a party to the within-entitled action.  My business address is Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

On August 24, 2023, I served a true and correct copy of the following document(s) on the parties in the action addressed as follows:

**PLAINTIFFS' AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES' LIMITED SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

☐ (BY OVERNIGHT COURIER) by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered by a FedEx or UPS agent for delivery.

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) to the email addresses set forth below on this date.

Joseph N. Akrotirianakis
Aaron S. Craig
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Email: jakro@kslaw.com
        acraig@kslaw.com

*Attorneys for Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited*

I declare under penalty of perjury that the above is true and correct.

Executed on August 24, 2023 at New York, New York.

_/s/ Luca Marzorati_
Luca Marzorati

# EXHIBIT M

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and META PLATFORMS, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD., <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **PLAINTIFFS' SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES' LIMITED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

1

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Civil Local Rule 34 of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. (collectively, "Plaintiffs"), by and through their attorneys, hereby amend their responses and objections—which were served on April 17, 2023 and were amended for the first time and re-served on August 24, 2023—to the First Set of Requests for Production of Defendant NSO Group Technologies Limited ("NSO") dated March 7, 2023 (each a "Request," and collectively, the "Requests") in the above-captioned action (the "Action").

Each response is made only for the purpose of this Action and for no other purpose.  Plaintiffs' Second Amended Responses and Objections are made without in any way waiving or intending to waive (i) any objections, including, without limitation, as to the competency, relevancy, materiality, propriety, privilege, or admissibility as evidence, for any purpose, of any documents or communications produced in response to the Requests and (ii) the right to object on any ground to the use of any documents or communications produced in response to the Requests at any proceedings, hearings, arbitration, or trial.  All evidentiary objections and grounds are expressly reserved.

Plaintiffs' Second Amended Responses and Objections, and any production of documents or communications in response to the Requests, does not waive or intend to waive (and on the contrary, reserves and intends to reserve) any objections available to it, nor do Plaintiffs accept, adopt, or concede the truth or validity of any characterization made in the Requests.  Moreover, no objection or limitation, or lack thereof, made in these Second Amended Responses and Objections shall be deemed an admission by Plaintiffs that (i) any particular evidence exists, or is relevant, probative, nonprivileged, or admissible in evidence; or (ii) any statement or characterization in the Requests is accurate or complete.

A statement that the Plaintiffs will produce information or documents in response to a particular Request is not to be construed as an admission that any responsive information or documents now exist or previously existed, or that any such information or documents are within Plaintiffs' possession, custody, or control.

The service of these Second Amended Responses and Objections should not be construed as a waiver of any right, including but not limited to, the right to assert additional objections to individual Requests or to supplement or amend them as discovery and fact development progresses.

Subject to and without waiving any of the following objections, counsel for Plaintiffs is available to meet in good faith with NSO concerning the Requests and these Second Amended Responses and Objections.

## GENERAL OBJECTIONS

The following General Objections form a part of, and are hereby incorporated into, the response to each and every Request as set forth below.  Nothing in the Second Amended Responses and Objections to the Requests should be construed as a waiver of these General Objections.  Not listing an objection herein does not constitute a waiver of that objection or otherwise preclude Plaintiffs from raising that objection later.  Plaintiffs' failure to object to a Request, or any future agreement to produce responsive documents, is not a representation that any such documents exist or are within Plaintiffs' possession, custody, or control.  Any future production pursuant to the Requests or otherwise is not to be construed as an admission that any Request is proper.

1.      Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they purport to impose obligations on Plaintiffs that are broader than and/or inconsistent with those required by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, or any other applicable law, rule, or court order.  Plaintiffs will withhold all documents in response to the Requests that it has no obligation to produce under any such applicable law, rule, or court order.

2.     Plaintiffs object to those portions of the Requests that are vague, ambiguous, unduly broad, overly burdensome, oppressive, capable of multiple interpretations, do not identify with particularity the documents sought, lack sufficient precision to allow Plaintiffs to formulate an appropriate response, irrelevant to a party's claim or defense, or not proportional to the needs of the case.

3.     Plaintiffs object to any Request seeking "any" or "all" documents or communications on the grounds that it is unduly broad and overly burdensome and to the extent it attempts to impose obligations beyond those imposed by the Applicable Rules.  Plaintiffs cannot guarantee that they will have located every single document responsive to a particular Request.  Subject to the General Objections and any qualifications below, Plaintiffs will respond to any Request seeking "any" or "all" documents by producing the responsive, nonprivileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith.

4.     Plaintiffs object to the Requests to the extent that they are duplicative or seek documents or communications not within Plaintiffs' possession, custody, or control.  By responding to the Requests, Plaintiffs do not concede that any category of documents or communications that the Requests seek does in fact exist or that such materials are in the possession, custody, or control of Plaintiffs.

5.     Plaintiffs object to the Requests to the extent they seek documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  Plaintiffs will withhold all privileged or otherwise protected documents or communications in response to the Requests.  Any production of privileged or otherwise protected documents or communications would be inadvertent and would not constitute a waiver of any claim or privilege or other exemption from production.  Plaintiffs reserve the right to obtain the return of such documents or communications

and prohibit their use in any manner, and hereby request the return of any such inadvertently produced privileged documents or communications and reserve the right to object to the disclosure or use of such privileged documents or communications at any stage of these or any other proceedings pursuant to § 13 of the Stipulated Protective Order (ECF No. 132).

6. Plaintiffs object to the Requests to the extent that they seek disclosure of documents or communications as to which Plaintiffs owe a duty of nondisclosure to a third party, or the production of which would result in the violation of any contractual obligation to a third party.

7. Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they seek the production of non-public, proprietary, or other confidential or highly confidential information—including business, commercial, financial, personal, consumer, customer, client, private, commercially/competitively sensitive, regulatory, and/or trade secret information—of Plaintiffs or third parties. Plaintiffs will designate such information as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" consistent with § 5.2 of the Stipulated Protective Order (ECF No. 132).

8. Plaintiffs object to the Requests to the extent they request documents or communications otherwise available to NSO in the public domain, or from some other source that is more convenient, less burdensome, or less expensive.

9. Plaintiffs object to the Requests to the extent they seek documents or communications already in the possession, custody or control of NSO, or call for duplicative documents or communications.

10. Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they purport to impose an obligation to preserve and/or produce any information or documents that are newly created or received after the receipt of the Requests, because efforts to preserve and/or produce such documents or information would be unduly burdensome and require unreasonable expense.

11. With respect to the Definitions and Instructions in the Requests, Plaintiffs object to the extent that they purport to define those terms differently from how those terms are defined by

the Applicable Rules; depart from the customary meaning of any term or provide definitions that are inaccurate; or are based on premises that are misleading, inaccurate, or incomplete.

## OBJECTIONS TO INSTRUCTIONS

1.      Plaintiffs object to Instruction No. 1, and to any Request seeking "all" documents in their possession, custody, or control, on the grounds that Plaintiffs cannot guarantee that they have located every single document responsive to a particular Request.  Plaintiffs further object to Instruction No. 1 as vague, ambiguous, unduly broad, and overly burdensome to the extent it calls for responses to Requests to be from any "affiliates, agents, attorneys, consultants, investigators, or other persons acting on" Plaintiffs' behalf regardless of whether searching such entities is reasonable or overly burdensome.

2.      Plaintiffs object to Instruction No. 2 to the extent that it seeks production of documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

3.      Plaintiffs object to Instruction No. 4 as unduly broad and overly burdensome to the extent it requires Plaintiffs to include on a privilege log materials other than those materials identified after a reasonable search conducted in good faith.

## OBJECTIONS TO DEFINITIONS

1.      Plaintiffs object to the definition of "all" and "any" and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Subject to the General Objections and any qualifications below, Plaintiffs will respond to any Request seeking "all" documents

6

by producing the responsive, non-privileged documents within their possession, custody, and control that can be located after a reasonable search conducted in good faith.

2.      Plaintiffs object to the definitions of "Communication(s)" and "Documents(s)" and to any Request incorporating that definition, insofar as they are ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.

3.      Plaintiffs object to the definition of "Concerning" insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition of concerning beyond the general understanding of that term, including because it includes "relating to."  Plaintiffs will treat "Concerning" as meaning "regarding, describing, or reflecting."

4.      Plaintiffs object to the definition of "Relate(d) to," "refer to," "refer or relate to" and "reflecting," and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition beyond the general understanding of that term.  Plaintiffs will treat "Relate(d) to," "refer to," "refer or relate to" and "reflecting" as meaning "regarding, describing, or reflecting."

5.      Plaintiffs object to the definitions of "Meta," "You," "Your," and "Plaintiffs," and to any Request incorporating those definitions, on the grounds that they are unduly broad, vague, ambiguous, overly burdensome, encompass persons or entities not relevant to this action, refer to unknown persons or entities, and not proportional to the needs of the case.

**SPECIFIC OBJECTIONS AND RESPONSES**

**REQUEST FOR PRODUCTION NO. 1:**

All Documents that Plaintiffs have received pursuant to any third party subpoena served in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION FOR PRODUCTION NO. 1:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

1   unduly burdensome, and seeking information that is not relevant to any claims or defenses in this

2   Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents "that

3   Plaintiffs have received pursuant to any third party subpoena served in this litigation," without

4   limitation, regardless of whether such Documents are relevant to any issue in the Action.

5          Subject to and without waiver of these objections, Plaintiffs will produce non-privileged

6   documents and communications that are responsive to this Request and are in Plaintiffs' posses-

7   sion, custody, or control.

8   **REQUEST FOR PRODUCTION NO. 2:**

9          All Documents referring or relating to the identity of the owners of the "approximately

10  1,400 Target Devices" and/or the identity of the "Target Users" referenced in Paragraph 1 of the

11  Complaint in this action.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

13         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

14  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

15  unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

16  fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

17  Documents "referring or relating to the identity of the owners of the 'approximately 1,400 Target

18  Devices' and/or the identity of the 'Target Users,'" without limitation, regardless of whether such

19  Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the

20  extent that it seeks the production of materials covered by non-disclosure and/or confidentiality

21  agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs

22  further object to this Request to the extent that it purports to require the production of documents

23  or information protected by the attorney-client privilege, the attorney work product doctrine, or

24  other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plain-

25  tiffs further object to this Request because the phrase "referring or relating to" is overbroad, vague,

26  and ambiguous.

27

28

Subject to and without waiver of these objections, Plaintiffs will produce, to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 3:**

All Communications between You and any of the owners of the Target Devices and/or the Target Users referenced in Paragraph 1 of the Complaint in this action about the "infect[ion of] the Target Devices" referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Communications between Plaintiffs and "any of the owners of the Target Devices and/or the Target Users," without limitation, regardless of whether such Communications are relevant to any issue in the Action. Plaintiffs further object to this Request because the phrase "You" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request to the extent that it seeks the production of materials that would violate the privacy interests of others.

Subject to and without waiver of these objections, Plaintiffs will produce (1) the form message sent to all affected WhatsApp users and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

All Communications referring or relating to the Target Users and/or the approximately 1,400 Target Devices referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Communications "referring or relating to the Target Users and/or the approximately 1,400 Target Devices" without limitation, regardless of whether such Communications are relevant to any issue in the Action.  Plaintiffs further object to this Request because the phrase "referring or relating to" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request to the extent that it seeks the production of materials that would violate the privacy interests of others.

Subject to and without waiver of these objections, Plaintiffs will produce (1) the form message sent to all affected WhatsApp users, (2) to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint, and (3) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications that refer or relate to Plaintiffs' reputation(s) between January 2018 and the date of Plaintiffs' responses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to Plaintiffs' reputation(s)" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications that refer or relate to the goodwill between Plaintiffs and their users and potential users between January 2018 and the date of Plaintiffs' responses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to the goodwill" is overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications that refer or relate to public trust placed in Plaintiffs by their users and potential users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to public trust" is overbroad, vague, and ambiguous.

11

1    Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communica-

2    tions is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth

3    of the rest of the Request.

4         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

5    to the Request.

6    **REQUEST FOR PRODUCTION NO. 8:**

7         All Documents and Communications that refer or relate to the possibility of Plaintiffs en-

8    tering into a business transaction, directly or indirectly, with NSO or any of its affiliated compa-

9    nies.

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

11        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

12   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

13   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

14   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

15   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

16   Request because the phrases "refer or relate to," "the possibility," and "entering into a business

17   transaction" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

18   the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in

19   light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further

20   object to the Request because it is calculated to annoy and harass.

21        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

22   to the Request.

23   **REQUEST FOR PRODUCTION NO. 9:**

24        All Documents and Communications that refer or relate to the possibility of Plaintiffs en-

25   tering into a business transaction, directly or indirectly with NSO or any of its affiliated companies

26   Concerning Pegasus.

27

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to," "the possibility," "entering into a business transaction," and "Concerning" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request. Plaintiffs further object to the Request because it is calculated to annoy and harass.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications that refer or relate to the possibility of Plaintiffs entering into a business transaction with any companies, other than NSO and its affiliated companies, that manufacture or sell Spyware or any cyber security solutions used by law enforcement agencies and/or governments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to," "the possibility," "entering into a business transaction," and "any companies" are overbroad, vague, and ambiguous.  Plaintiffs further object to

the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications that refer or relate to the possibility of Plaintiffs entering into a business transaction with any companies, other than NSO and its affiliated companies, that manufacture or sell Spyware.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to," "the possibility," "entering into a business transaction," and "any companies" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications that refer or relate to the effect on the reputation of any of the Plaintiffs of Facebook's violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 13:**

All non-privileged internal Communications that refer or relate to Facebook's violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll non-privileged internal Communications" is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 14:**

All Communications between any of the Plaintiffs and any government or government agency that refer or relate to Facebook's violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 15:**

All Communications between any of the Plaintiffs and any consultant, public relations company, or crisis management company that refer or relate to Facebook's violation(s) of the FTC order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications that refer or relate to the effect on the reputation of any of the Plaintiffs of the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to the reputation" and "any of the Plaintiffs" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 17:**

All non-privileged internal Communications that refer or relate to the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

17

Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 18:**

All Communications between any of the Plaintiffs and any government or government agency that refer or relate to the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any of the Plaintiffs" and "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 19:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the $5 billion fine imposed against Facebook for violation(s) of the FTC Order.

1 **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

2       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

3 jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

4 unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

5 fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

6 basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

7 Request because the phrases "any consultant, public relations company, or crisis management

8 company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object

9 to the Request because the request of "[a]ll" Communications is unduly burdensome and unrea-

10 sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

11       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

12 to the Request.

13 **REQUEST FOR PRODUCTION NO. 20:**

14       All Documents and Communications related to the effect on the reputation of any of the

15 Plaintiffs of Facebook's relationship with Cambridge Analytica.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

17       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

18 jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

19 unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

20 fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

21 basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

22 Request because the phrases "related to the effect on the reputation" and "relationship" are over-

23 broad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll"

24 Documents and Communications is unduly burdensome and unreasonable in light of the vague-

25 ness, ambiguity, and overbreadth of the rest of the Request.

26       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

27 to the Request.

28

**REQUEST FOR PRODUCTION NO. 21:**

All non-privileged internal Communications that refer or relate to Facebook's relationship with Cambridge Analytica.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "relationship" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 22:**

All Communications between any of the Plaintiffs and any government or government agency that refer or relate to Facebook's relationship with Cambridge Analytica.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and

20

"relationship" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 23:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Facebook's relationship with Cambridge Analytica.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "relationship" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Facebook's role in allowing misinformation to be published in connection with the 2016 U.S. presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

1   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

2   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

3   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

4   Request because the phrases "related to the effect on the reputation," "role in allowing misinfor-

5   mation to be published," and "in connection with" are overbroad, vague, and ambiguous.  Plaintiffs

6   further object to the Request because the request of "[a]ll" Documents and Communications is

7   unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the

8   rest of the Request.

9          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

10  to the Request.

11  **REQUEST FOR PRODUCTION NO. 25:**

12          All non-privileged internal Communications that refer or relate to Facebook's role in al-

13  lowing misinformation to be published in connection with the 2016 U.S. presidential election.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

15          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

16  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

17  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

18  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

19  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

20  Request because the phrases "refer or relate to," "role in allowing misinformation to be published,"

21  and "in connection with" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

22  Request because the request of "[a]ll" non-privileged internal Communications is unduly burden-

23  some and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the

24  Request.

25          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

26  to the Request.

27

28

**REQUEST FOR PRODUCTION NO. 26:**

All Communications with any government or government agency that refer or relate to Facebook's role in allowing misinformation to be published in connection with the 2016 U.S. presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," "role in allowing misinformation to be published," and "in connection with" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 27:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Facebook's role in allowing misinformation to be published in connection with the 2016 U.S. presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this

1   Request because the phrases "any consultant, public relations company, or crisis management

2   company," "refer or relate to," "role in allowing misinformation to be published," and "in connec-

3   tion with" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

4   the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the

5   vagueness, ambiguity, and overbreadth of the rest of the Request.

6          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

7   to the Request.

8   **REQUEST FOR PRODUCTION NO. 28:**

9          All Documents and Communications related to the effect on the reputation of any of the

10   Plaintiffs of the public posting of over 530 million Facebook users' personal data in April 2021.

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

12          Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

13   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

14   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

15   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

16   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

17   Request because the phrase "related to the effect on the reputation" is overbroad, vague, and am-

18   biguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and

19   Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

20   and overbreadth of the rest of the Request.

21          On the basis of the foregoing objections, Plaintiffs will not produce documents in response

22   to the Request.

23   **REQUEST FOR PRODUCTION NO. 29:**

24          All non-privileged internal Communications that refer or relate to the public posting of

25   over 530 million Facebook users' personal data in April 2021.

26

27

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 30:**

All Communications with any government or government agency that refer or relate to the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

25

**REQUEST FOR PRODUCTION NO. 31:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the public posting of over 530 million Facebook users' personal data in April 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar against the Rohingya peoples.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "role . . . in the genocide"

are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 33:**

All non-privileged internal Communications that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar against the Rohingya peoples.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "role . . . in the genocide" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 34:**

All Communications between any of the Plaintiffs and any government or government agency that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar against the Rohingya peoples.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "role . . . in the genocide" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 35:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in the genocide in Myanmar against the Rohingya peoples.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "role . . . in the genocide" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.   Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 37:**

All non-privileged internal Communications that refer or relate to Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 38:**

All Communications with any government or government agency that refer or relate to Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

30

**REQUEST FOR PRODUCTION NO. 39:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Facebook's plans to use its Android app to track locations of Android users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "plans to use" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Facebook's collection of its users' email contacts without obtaining consent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and

1  Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

2  and overbreadth of the rest of the Request.

3  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

4  to the Request.

5  **REQUEST FOR PRODUCTION NO. 41:**

6  All non-privileged internal Communications that refer or relate to Facebook's collection

7  of its users' email contacts without obtaining consent.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

9  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

10  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

11  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

12  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

13  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

14  Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs

15  further object to the Request because the request of "[a]ll" non-privileged Communications is un-

16  duly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the

17  rest of the Request.

18  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19  to the Request.

20  **REQUEST FOR PRODUCTION NO. 42:**

21  All Communications with any government or government agency that refer or relate to

22  Facebook's collection of its users' email contacts without obtaining consent.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

24  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

25  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

26  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

27  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

28

32

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 43:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to Facebook's collection of users' email contacts without obtaining consent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 45:**

All non-privileged internal Communications that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unrea-

sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs

further object to this Request to the extent that it seeks documents and communications not within

Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response

to the Request.

**REQUEST FOR PRODUCTION NO. 46:**

All Communications with any government or government agency that refer or relate to the

use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021

United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

Request because the phrases "any government or government agency," "refer or relate to," and

"the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.

Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly

burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of

the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and

communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response

to the Request.

**REQUEST FOR PRODUCTION NO. 47:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by the perpetrators of the January 6, 2021 United States Capitol attack to organize and/or execute it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 49:**

All non-privileged internal Communications that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 50:**

All Communications with any government or government agency that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "role" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 51:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the role of Facebook and/or Instagram and/or WhatsApp in increases in depression and/or suicide of minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the

1   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

2   Request because the phrases "any consultant, public relations company, or crisis management

3   company," "refer or relate to," and "role" are overbroad, vague, and ambiguous.  Plaintiffs further

4   object to the Request because the request of "[a]ll" Communications is unduly burdensome and

5   unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

6   Plaintiffs further object to this Request to the extent that it seeks documents and communications

7   not within Plaintiffs' possession, custody, or control.

8        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

9   to the Request.

10  **REQUEST FOR PRODUCTION NO. 52:**

11       All non-privileged internal Communications that refer or relate to the Plaintiffs' serving of

12  micro-targeted advertisements to emotionally vulnerable minors.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

14       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19  Request because the phrases "refer or relate to" and "serving of micro-targeted advertisements"

20  are overbroad, vague, and ambiguous.  Plaintiffs object to the Request because the request

21  of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light

22  of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object

23  to this Request to the extent that it seeks documents and communications not within Plaintiffs'

24  possession, custody, or control.

25       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

26  to the Request.

27

28

**REQUEST FOR PRODUCTION NO. 53:**

All Communications with any government or government agency that refer or relate to the Plaintiffs' serving of micro-targeted advertisements to emotionally vulnerable minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to" and "serving of micro-targeted advertisements" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 54:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the Plaintiffs' serving of micro-targeted advertisements to emotionally vulnerable minors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to" and "serving of micro-targeted advertisements" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 56:**

All non-privileged internal Communications that refer or relate to the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 57:**

All Communications with any government or government agency that refer or relate to the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 58:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the documents leaked by whistleblower Frances Haugen in October 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of Facebook and/or Instagram and/or WhatsApp by human trafficking organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of Facebook

and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 60:**

All non-privileged internal Communications that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by human trafficking organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 61:**

All Communications with any government or government agency that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by human trafficking organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 62:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp by human trafficking organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of

"[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambi-guity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 63:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19 and/or COVID-19 vaccines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further ob-ject to the Request because the request of "[a]ll" Documents and Communications is unduly bur-densome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 64:**

All non-privileged internal Communications that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19 and/or COVID-19 vaccines.

46

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 65:**

All Communications with any government or government agency that refer or relate to the use of Facebook and/or Instagram and/or WhatsApp to spread misinformation about COVID-19 and/or COVID-19 vaccines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

1    On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2    to the Request.

3    **REQUEST FOR PRODUCTION NO. 66:**

4    All Communications with any consultant, public relations company, or crisis management

5    company that refer or relate to use of Facebook and/or Instagram and/or WhatsApp to spread mis-

6    information about COVID-19 and/or COVID-19 vaccines.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

8    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9    jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

10   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

11   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

12   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

13   Request because the phrases "any consultant, public relations company, or crisis management

14   company," "refer or relate to," and "the use of Facebook and/or Instagram and/or WhatsApp" are

15   overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of

16   "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambi-

17   guity, and overbreadth of the rest of the Request.

18   On the basis of the foregoing objections, Plaintiffs will not produce documents in response

19   to the Request.

20   **REQUEST FOR PRODUCTION NO. 67:**

21   All Documents and Communications related to the effect on the reputation of any of the

22   Plaintiffs of WhatsApp's 2021 privacy policy change permitting increased sharing of data with

23   Facebook by WhatsApp.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

25   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

26   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

27

28

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 68:**

All non-privileged internal Communications that refer or relate to WhatsApp's 2021 privacy policy change permitting increased sharing of data with Facebook by WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 69:**

All Communications with any government or government agency that refer or relate to WhatsApp's 2021 privacy policy change permitting increased sharing of data with Facebook by WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 70:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to WhatsApp's 2021 privacy policy change permitting increased sharing of data with Facebook by WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management

company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 71:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "related to the effect on the reputation" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 72:**

All non-privileged internal Communications that refer or relate to the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communica-tions is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 73:**

All Communications with any government or government agency that refer or relate to the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-fenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambi-guity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 74:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the hacking of Amazon founder Jeff Bezos' WhatsApp account in May 2018.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 75:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp"

are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 76:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 77:**

All Communications with any government or government agency that refer or relate to the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate to," and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 78:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp to transmit misinformation about Brazil's 2018 presidential election.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request. Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 80:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages. Plaintiffs further object to this

1  Request because the phrases "refer or relate to" and "the use of WhatsApp" are overbroad, vague,

2  and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privi-

3  leged internal Communications is unduly burdensome and unreasonable in light of the vagueness,

4  ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to

5  the extent that it seeks documents and communications not within Plaintiffs' possession, custody,

6  or control.

7      On the basis of the foregoing objections, Plaintiffs will not produce documents in response

8  to the Request.

9  **REQUEST FOR PRODUCTION NO. 81:**

10     All Communications with any government or government agency that refer or relate to the

11  use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

13     Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

14  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

15  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

16  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

17  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

18  Request because the phrases "any government or government agency," "refer or relate to," and

19  "the use of WhatsApp" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Re-

20  quest because the request of "[a]ll" Communications is unduly burdensome and unreasonable in

21  light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further

22  object to this Request to the extent that it seeks documents and communications not within Plain-

23  tiffs' possession, custody, or control.

24     On the basis of the foregoing objections, Plaintiffs will not produce documents in response

25  to the Request.

26

27

28

**REQUEST FOR PRODUCTION NO. 82:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp by JP Morgan Chase employees to circumvent federal record-keeping laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of WhatsApp" are overbroad, vague, and ambiguous. Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of Boldend's development of tools capable of hacking WhatsApp.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

1  Request because the phrase "related to the effect on the reputation" is overbroad, vague, and am-

2  biguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and

3  Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

4  and overbreadth of the rest of the Request.

5  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

6  to the Request.

7  **REQUEST FOR PRODUCTION NO. 84:**

8  All non-privileged internal Communications that refer or relate to Boldend's development

9  of tools capable of hacking WhatsApp.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

11  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

12  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

13  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

14  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

15  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

16  Request because the phrase "refer or relate to" is overbroad, vague, and ambiguous.  Plaintiffs

17  further object to the Request because the request of "[a]ll" non-privileged internal Communica-

18  tions is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth

19  of the rest of the Request.

20  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

21  to the Request.

22  **REQUEST FOR PRODUCTION NO. 85:**

23  All Communications with any government or government agency that refer or relate to

24  Boldend's development of tools capable of hacking WhatsApp.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

26  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

27  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

28

1  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

2  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

3  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

4  Request because the phrases "any government or government agency" and "refer or relate to" are

5  overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of

6  "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambi-

7  guity, and overbreadth of the rest of the Request.

8       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

9  to the Request.

10  **REQUEST FOR PRODUCTION NO. 86:**

11       All Communications with any consultant, public relations company, or crisis management

12  company that refer or relate to Boldend's development of tools capable of hacking WhatsApp.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

14       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19  Request because the phrases "any consultant, public relations company, or crisis management

20  company" and "refer or relate to" are overbroad, vague, and ambiguous.  Plaintiffs further object

21  to the Request because the request of "[a]ll" Communications is unduly burdensome and unrea-

22  sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

23       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

24  to the Request.

25

26

27

28

60

**REQUEST FOR PRODUCTION NO. 87:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist attacks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Documents and Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 88:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist attacks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

1   Request because the phrases "refer or relate to" and "the use of WhatsApp, Facebook and/or In-

2   stagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because

3   the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unrea-

4   sonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs

5   further object to this Request to the extent that it seeks documents and communications not within

6   Plaintiffs' possession, custody, or control.

7        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

8   to the Request.

9   **REQUEST FOR PRODUCTION NO. 89:**

10       All Communications with any government or government agency that refer or relate to the

11  use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist attacks.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

13       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

14  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

15  unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

16  fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

17  basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

18  Request because the phrases "any government or government agency," "refer or relate to," and

19  "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plain-

20  tiffs further object to the Request because the request of "[a]ll" Communications is unduly bur-

21  densome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the

22  Request.  Plaintiffs further object to this Request to the extent that it seeks documents and com-

23  munications not within Plaintiffs' possession, custody, or control.

24       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

25  to the Request.

26

27

28

**REQUEST FOR PRODUCTION NO. 90:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp, Facebook and/or Instagram to plot and/or execute terrorist attacks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any consultant, public relations company, or crisis management company," "refer or relate to," and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 91:**

All Documents and Communications related to the effect on the reputation of any of the Plaintiffs of the use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the

1   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

2   Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp,

3   Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

4   Request because the request of "[a]ll" Documents and Communications is unduly burdensome and

5   unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

6   Plaintiffs further object to this Request to the extent that it seeks documents and communications

7   not within Plaintiffs' possession, custody, or control.

8         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

9   to the Request.

10   **REQUEST FOR PRODUCTION NO. 92:**

11         All non-privileged internal Communications that refer or relate to the use of WhatsApp,

12   Facebook and/or Instagram to recruit new members to terrorist organizations.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

14         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19   Request because the phrases "refer or relate" and "the use of WhatsApp, Facebook and/or Insta-

20   gram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the

21   request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable

22   in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further

23   object to this Request to the extent that it seeks documents and communications not within Plain-

24   tiffs' possession, custody, or control.

25         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

26   to the Request.

27

28

**REQUEST FOR PRODUCTION NO. 93:**

All Communications with any government or government agency that refer or relate to the use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "any government or government agency," "refer or relate," and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request. Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 94:**

All Communications with any consultant, public relations company, or crisis management company that refer or relate to the use of WhatsApp, Facebook and/or Instagram to recruit new members to terrorist organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

1   Request because the phrases "any consultant, public relations company, or crisis management

2   company," "refer or relate," and "the use of WhatsApp, Facebook and/or Instagram" are over-

3   broad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll"

4   Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

5   and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent

6   that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

7         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

8   to the Request.

9   **REQUEST FOR PRODUCTION NO. 95:**

10         All Documents and Communications related to the effect on the reputation of any of the

11   Plaintiffs of the use of WhatsApp, Facebook and/or Instagram to spread propaganda in support of

12   terrorist activities.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

14         Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19   Request because the phrases "related to the effect on the reputation" and "the use of WhatsApp,

20   Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the

21   Request because the request of "[a]ll" Documents and Communications is unduly burdensome and

22   unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

23   Plaintiffs further object to this Request to the extent that it seeks documents and communications

24   not within Plaintiffs' possession, custody, or control.

25         On the basis of the foregoing objections, Plaintiffs will not produce documents in response

26   to the Request.

27

28

**REQUEST FOR PRODUCTION NO. 96:**

All non-privileged internal Communications that refer or relate to the use of WhatsApp, Facebook and/or Instagram to spread propaganda in support of terrorist activities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this Request because the phrases "refer or relate to" and "the use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll" non-privileged internal Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 97:**

All Communications with any government or government agency that refer or relate to the use of WhatsApp, Facebook and/or Instagram to spread propaganda in support of terrorist activities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case, including, without limitation, on the basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

1    Request because the phrases "any government or government agency," "refer or relate to" and "the

2    use of WhatsApp, Facebook and/or Instagram" are overbroad, vague, and ambiguous.  Plaintiffs

3    further object to the Request because the request of "[a]ll" Communications is unduly burdensome

4    and unreasonable in light of the vagueness, ambiguity, and overbreadth of the rest of the Request.

5    Plaintiffs further object to this Request to the extent that it seeks documents and communications

6    not within Plaintiffs' possession, custody, or control.

7        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

8    to the Request.

9    **REQUEST FOR PRODUCTION NO. 98:**

10       All Communications with any consultant, public relations company, or crisis management

11   company that refer or relate to the use of WhatsApp, Facebook and/or Instagram to spread propa-

12   ganda in support of terrorist activities.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

14       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

15   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

16   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

17   fenses in this Action or proportionate to the needs of the case, including, without limitation, on the

18   basis that Plaintiffs do not intend to seek reputational damages.  Plaintiffs further object to this

19   Request because the phrases "any consultant, public relations company, or crisis management

20   company," "refer or relate to" and "the use of WhatsApp, Facebook and/or Instagram" are over-

21   broad, vague, and ambiguous.  Plaintiffs further object to the Request because the request of "[a]ll"

22   Communications is unduly burdensome and unreasonable in light of the vagueness, ambiguity,

23   and overbreadth of the rest of the Request.  Plaintiffs further object to this Request to the extent

24   that it seeks documents and communications not within Plaintiffs' possession, custody, or control.

25       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

26   to the Request.

27

28

Dated:  September 8, 2023

DAVIS POLK & WARDWELL LLP


By:  /s/ Micah G. Block

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com


Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email: greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com


*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

69

## **CERTIFICATE OF SERVICE**

I hereby certify that I am a citizen of the United States and employed in the County of New York, New York.  I am over the age of 18 years and not a party to the within-entitled action.  My business address is Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

On September 8, 2023, I served a true and correct copy of the following document(s) on the parties in the action addressed as follows:

**PLAINTIFFS' SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES' LIMITED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

☐ (BY OVERNIGHT COURIER) by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered by a FedEx or UPS agent for delivery.

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) to the email addresses set forth below on this date.

Joseph N. Akrotirianakis
Aaron S. Craig
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Email: jakro@kslaw.com
          acraig@kslaw.com

*Attorneys for Defendants NSO Group*
*Technologies Limited and Q Cyber*
*Technologies Limited*

I declare under penalty of perjury that the above is true and correct.

Executed on September 8, 2023 at New York, New York.

_____
/s/ Luca Marzorati
Luca Marzorati

70

# EXHIBIT N

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
    (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email:    greg.andres@davispolk.com
              antonio.perez@davispolk.com
              craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and META PLATFORMS, INC., a Delaware corporation,<br><br>                              Plaintiffs,<br><br>        v.<br><br>NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD.,<br><br>                              Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES' LIMITED SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

1

1        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Civil Local Rule

2   34 of the Local Rules of Practice in Civil Proceedings before the United States District Court for

3   the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. (collec-

4   tively, "Plaintiffs"), by and through their attorneys, hereby amend their responses and objections—

5   which were served on May 31, 2023 and were amended for the first time and re-served on August

6   24, 2023—to the Second Set of Requests for Production of Defendant NSO Group Technologies

7   Limited ("NSO") dated May 1, 2023 (each a "Request," and collectively, the "Requests") in the

8   above-captioned action (the "Action").

9        Each response is made only for the purpose of this Action and for no other purpose.  Plain-

10  tiffs' Second Amended Responses and Objections are made without in any way waiving or intend-

11  ing to waive (i) any objections, including, without limitation, as to the competency, relevancy,

12  materiality, propriety, privilege, or admissibility as evidence, for any purpose, of any documents

13  or communications produced in response to the Requests and (ii) the right to object on any ground

14  to the use of any documents or communications produced in response to the Requests at any pro-

15  ceedings, hearings, arbitration, or trial.  All evidentiary objections and grounds are expressly re-

16  served.

17       Plaintiffs' Second Amended Responses and Objections, and any production of documents

18  or communications in response to the Requests, does not waive or intend to waive (and on the

19  contrary, reserves and intends to reserve) any objections available to it, nor do Plaintiffs accept,

20  adopt, or concede the truth or validity of any characterization made in the Requests.  Moreover,

21  no objection or limitation, or lack thereof, made in these Second Amended Responses and Objec-

22  tions shall be deemed an admission by Plaintiffs that (i) any particular evidence exists, or is rele-

23  vant, probative, nonprivileged, or admissible in evidence; or (ii) any statement or characterization

24  in the Requests is accurate or complete.

25

26

27

28

1    A statement that the Plaintiffs will produce information or documents in response to a par-

2 ticular Request is not to be construed as an admission that any responsive information or docu-

3 ments now exist or previously existed, or that any such information or documents are within Plain-

4 tiffs' possession, custody, or control.

5    The service of these Second Amended Responses and Objections should not be construed

6 as a waiver of any right, including but not limited to, the right to assert additional objections to

7 individual Requests or to supplement or amend them as discovery and fact development pro-

8 gresses.

9    Subject to and without waiving any of the following objections, counsel for Plaintiffs is

10 available to meet in good faith with NSO concerning the Requests and these Second Amended

11 Responses and Objections.

12                            **GENERAL OBJECTIONS**

13    The following General Objections form a part of, and are hereby incorporated into, the

14 response to each and every Request as set forth below.  Nothing in the Second Amended Responses

15 and Objections to the Requests should be construed as a waiver of these General Objections.  Not

16 listing an objection herein does not constitute a waiver of that objection or otherwise preclude

17 Plaintiffs from raising that objection later.  Plaintiffs' failure to object to a Request, or any future

18 agreement to produce responsive documents, is not a representation that any such documents exist

19 or are within Plaintiffs' possession, custody, or control.  Any future production pursuant to the

20 Requests or otherwise is not to be construed as an admission that any Request is proper.

21    1.    Plaintiffs object to the Requests and to each Definition, Instruction, and specific

22 Request contained therein to the extent that they purport to impose obligations on Plaintiffs that

23 are broader than and/or inconsistent with those required by the Federal Rules of Civil Procedure,

24 the Local Rules of the Northern District of California, or any other applicable law, rule, or court

25 order.  Plaintiffs will withhold all documents in response to the Requests that it has no obligation

26 to produce under any such applicable law, rule, or court order.

27

28

2.      Plaintiffs object to those portions of the Requests that are vague, ambiguous, unduly broad, overly burdensome, oppressive, capable of multiple interpretations, do not identify with particularity the documents sought, lack sufficient precision to allow Plaintiffs to formulate an appropriate response, irrelevant to a party's claim or defense, or not proportional to the needs of the case.

3.      Plaintiffs object to any Request seeking "any" or "all" documents or communications on the grounds that it is unduly broad and overly burdensome and to the extent it attempts to impose obligations beyond those imposed by the Applicable Rules.  Plaintiffs cannot guarantee that they will have located every single document responsive to a particular Request.  Subject to the General Objections and any qualifications below, Plaintiffs may respond to any Request seeking "any" or "all" documents by producing the responsive, nonprivileged documents within its possession, custody, and control that can be located after a reasonable search conducted in good faith, employing search parameters (including relevant custodians and the relevant time period) for the collection and production of Plaintiffs' documents (the "Search Parameters").

4.      Plaintiffs object to the Requests to the extent that they are duplicative or seek documents or communications not within Plaintiffs' possession, custody, or control.  By responding to the Requests, Plaintiffs do not concede that any category of documents or communications that the Requests seek does in fact exist or that such materials are in the possession, custody, or control of Plaintiffs.

5.      Plaintiffs object to the Requests to the extent they seek documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  Plaintiffs will withhold all privileged or otherwise protected documents or communications in response to the Requests. Any production of privileged or otherwise protected documents or communications would be inadvertent and would not constitute a waiver of any claim or privilege or other exemption from

production.  Plaintiffs reserve the right to obtain the return of such documents or communications and prohibit their use in any manner, and hereby request the return of any such inadvertently produced privileged documents or communications and reserve the right to object to the disclosure or use of such privileged documents or communications at any stage of these or any other proceedings pursuant to § 13 of the Stipulated Protective Order (ECF No. 132).

6.      Plaintiffs object to the Requests to the extent that they seek disclosure of documents or communications as to which Plaintiffs owe a duty of nondisclosure to a third party, or the production of which would result in the violation of any contractual obligation to a third party.

7.      Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they seek the production of non-public, proprietary, or other confidential or highly confidential information—including business, commercial, financial, personal, consumer, customer, client, private, commercially/competitively sensitive, regulatory, and/or trade secret information—of Plaintiffs or third parties.  Plaintiffs will designate such information as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" consistent with § 5.2 of the Stipulated Protective Order (ECF No. 132).

8.      Plaintiffs object to the Requests to the extent they request documents or communications otherwise available to NSO in the public domain, or from some other source that is more convenient, less burdensome, or less expensive.

9.      Plaintiffs object to the Requests to the extent they seek documents or communications already in the possession, custody or control of NSO, or call for duplicative documents or communications.

10.      Plaintiffs object to the Requests and to each Definition, Instruction, and specific Request contained therein to the extent that they purport to impose an obligation to preserve and/or produce any information or documents that are newly created or received after the receipt of the Requests, because efforts to preserve and/or produce such documents or information would be unduly burdensome and require unreasonable expense.

11.     With respect to the Definitions and Instructions in the Requests, Plaintiffs object to the extent that they purport to define those terms differently from how those terms are defined by the Applicable Rules; depart from the customary meaning of any term or provide definitions that are inaccurate; or are based on premises that are misleading, inaccurate, or incomplete.

## OBJECTIONS TO INSTRUCTIONS

1.     Plaintiffs object to Instruction No. 1, and to any Request seeking "all" documents in their possession, custody, or control, on the grounds that Plaintiffs cannot guarantee that they have located every single document responsive to a particular Request.  Plaintiffs further object to Instruction No. 1 as vague, ambiguous, unduly broad, and overly burdensome to the extent it calls for responses to Requests to be from any "affiliates, agents, attorneys, consultants, investigators, or other persons acting on" Plaintiffs' behalf regardless of whether searching such entities is reasonable or overly burdensome.

2.     Plaintiffs object to Instruction No. 2 to the extent that it seeks production of documents or communications prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product immunity, the joint-defense privilege, common-interest doctrine, applicable data privacy laws, regulations, policies, or rules of any jurisdiction, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

3.     Plaintiffs object to Instruction No. 4 as unduly broad and overly burdensome to the extent it requires Plaintiffs to include on a privilege log materials other than those materials identified after a reasonable search conducted in good faith.

## OBJECTIONS TO DEFINITIONS

1.     Plaintiffs object to the definition of "all" and "any" and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims

6

or defenses in this Action or proportionate to the needs of the case.  Subject to the General Objections and any qualifications below, Plaintiffs will respond to any Request seeking "all" documents by producing the responsive, non-privileged documents within their possession, custody, and control that can be located after a reasonable search conducted in good faith.

2.      Plaintiffs object to the definitions of "Communication(s)" and "Documents(s)" and to any Request incorporating that definition, insofar as they are ambiguous, overly broad, and unduly burdensome and to the extent it seeks to impose obligations on Plaintiffs beyond, or inconsistent with, the Applicable Rules and to the extent it seeks communications or documents that are not relevant to any claims or defenses in this Action or proportionate to the needs of the case.

3.      Plaintiffs object to the definition of "Concerning" insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition of concerning beyond the general understanding of that term, including because it includes "relating to."  Plaintiffs will treat "Concerning" as meaning "regarding, describing, or reflecting."

4.      Plaintiffs object to the definition of "Relate(d) to," "refer to," "refer or relate to" and "reflecting," and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition beyond the general understanding of that term.  Plaintiffs will treat "Relate(d) to," "refer to," "refer or relate to" and "reflecting" as meaning "regarding, describing, or reflecting."

5.      Plaintiffs object to the definitions of "Meta," "You," "Your," and "Plaintiffs," and to any Request incorporating those definitions, on the grounds that they are unduly broad, vague, ambiguous, overly burdensome, encompass persons or entities not relevant to this action, refer to unknown persons or entities, and not proportional to the needs of the case.

6.      Plaintiffs object to the definition of "Security Vulnerability," and to any Request incorporating that definition, insofar as it is ambiguous, overly broad, and unduly burdensome and to the extent it purports to expand the definition beyond the general understanding of that term. Plaintiffs also object to the use of the term "Security Vulnerability" or "vulnerability" with respect to Plaintiffs' applications to the extent the use those terms calls for, or purports to incorporate, any

legal conclusions, including without limitation as to Defendants' authorization to access Plaintiff's systems, servers, or applications.  Plaintiffs' use of that term and their Second Amended Responses and Objections to Defendants' requests using that term are not intended to have and shall not be construed as having any bearing on whether or not Plaintiffs had authorization to access to the affected portions of Plaintiffs' platforms.

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR PRODUCTION NO. 99:**

All Documents and Communications that refer or relate to any use or access of the WhatsApp Service by Defendants, directly or indirectly, including but not limited to server logs or other electronic records.

**RESPONSE TO REQUEST FOR PRODUCTION FOR PRODUCTION NO. 99:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs further object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "any use or access," and "other electronic records" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce (1) server logs showing NSO's attacks as alleged in the Complaint, (2) non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters relating to CVE-2019-3568, and (3) documents sufficient to identify any

1   other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or

2   WhatsApp users.

3   **REQUEST FOR PRODUCTION NO. 100:**

4       All Documents and Communications that refer or relate to any use or access of the

5   WhatsApp Service through any of Defendants' customers' use of Pegasus, directly or indirectly,

6   including but not limited to server logs or other electronic records.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

8       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9   jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent

10  that it seeks the production of materials covered by non-disclosure and/or confidentiality agree-

11  ments with third parties and/or that would violate the privacy interests of others.  Plaintiffs further

12  object to this Request to the extent that it purports to require the production of documents or in-

13  formation protected by the attorney-client privilege, the attorney work product doctrine, or other

14  applicable privilege, immunity, duty of confidentiality, or exemption from discovery.   Plaintiffs

15  further object to this Request because the phrases "any use or access," and "other electronic rec-

16  ords" are overbroad, vague, and ambiguous.  Plaintiffs also object to this Request to the extent it

17  is duplicative of Request No. 99, and as vague and ambiguous to the extent it seeks anything other

18  than the documents requested by Request No. 99 based on an alleged distinction between access

19  by Defendants from access by others using Defendants' products.

20      Subject to and without waiver of these objections, Plaintiffs will produce (1) server logs

21  showing NSO's attacks as alleged in the Complaint, (2) non-privileged, relevant documents and

22  communications that are responsive to this Request, are in Plaintiffs' possession, custody, or con-

23  trol, and can be located after a reasonable search conducted in good faith and in accordance with

24  the Search Parameters relating to CVE-2019-3568, and (3) documents sufficient to identify any

25  other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or

26  WhatsApp users.

27

28

1   **REQUEST FOR PRODUCTION NO. 101:**

2        All Documents and Communications that refer or relate to the WhatsApp Security Vulner-

3   ability referred to as CVE-2019-3568 in paragraph 44 of Plaintiffs' Complaint.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

5        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

6   jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

7   is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the

8   extent that it seeks the production of materials covered by non-disclosure and/or confidentiality

9   agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs

10   further object to this Request to the extent that it purports to require the production of documents

11   or information protected by the attorney-client privilege, the attorney work product doctrine, or

12   other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

13        Subject to and without waiver of these objections, Plaintiffs will produce non-privileged

14   documents created by Plaintiffs that are in Plaintiffs' possession, custody, or control and can be

15   located after a reasonable search conducted in good faith relating to CVE-2019-3568 in accordance

16   with the Search Parameters.

17   **REQUEST FOR PRODUCTION NO. 102:**

18        Documents sufficient to identify each Security Vulnerability on the WhatsApp Service that

19   Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

21        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

22   jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

23   is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the

24   extent that it seeks the production of materials covered by non-disclosure and/or confidentiality

25   agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs

26   further object to this Request to the extent that it purports to require the production of documents

27   or information protected by the attorney-client privilege, the attorney work product doctrine, or

28

other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request as premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.  Plaintiffs further object to this Request because the phrase "sufficient" is overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce documents sufficient to identify any activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents and Communications that refer or relate to Plaintiffs' discovery or initial awareness (however such awareness occurred) of any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs further object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "initial awareness (however such awareness occurred)" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

1    Subject to and without waiver of these objections, Plaintiffs will produce (1) non-privi-

2    leged, relevant documents and communications that are responsive to this Request, are in Plain-

3    tiffs' possession, custody, or control, and can be located after a reasonable search conducted in

4    good faith and in accordance with the Search Parameters relating to CVE-2019-3568 and (2) doc-

5    uments sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp comput-

6    ers, the WhatsApp application, or WhatsApp users.

7    **REQUEST FOR PRODUCTION NO. 104:**

8    All Documents and Communications that refer or relate to Plaintiffs' response to any Se-

9    curity Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited,

10   or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

12   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

13   jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

14   is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the

15   extent that it seeks the production of materials covered by non-disclosure and/or confidentiality

16   agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs

17   further object to this Request to the extent that it purports to require the production of documents

18   or information protected by the attorney-client privilege, the attorney work product doctrine, or

19   other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plain-

20   tiffs further object to this Request as vague, overbroad, and premature because Defendants have

21   not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

22   Subject to and without waiver of these objections, Plaintiffs will produce (1) non-privi-

23   leged, relevant documents and communications that are responsive to this Request, are in Plain-

24   tiffs' possession, custody, or control, and can be located after a reasonable search conducted in

25   good faith and in accordance with the Search Parameters relating to CVE-2019-3568 and (2) doc-

26   uments sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp comput-

27   ers, the WhatsApp application, or WhatsApp users.

28

**REQUEST FOR PRODUCTION NO. 105:**

All Documents and Communications that refer or relate to Plaintiffs' public announcement of any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters relating to CVE-2019-3568 and (2) documents sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents and Communications that refer or relate to any steps taken by Plaintiffs to limit, disable, or remediate any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

13

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any steps taken . . . to limit, disable, or remediate" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters relating to CVE-2019-3568 and (2) documents sufficient to identify any other activity, attributable to NSO, to exploit WhatsApp computers, the WhatsApp application, or WhatsApp users.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents and Communications that refer or relate to any steps taken by Plaintiffs to identify users of the WhatsApp Service affected by any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

is duplicative of other Requests for Production.  Plaintiffs further object to the Request as over-broad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any steps taken . . . to identify users" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Communications that refer or relate to any communication by Plaintiffs with users of Plaintiffs' services related to any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality

agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any communication" is overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce (1) the form message sent to all affected WhatsApp users and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents and Communications that refer or relate to any outside companies, individuals, or other service providers that Plaintiffs retained to limit, disable, or remediate any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of other Requests for Production.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client

privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any outside companies, individuals, or other service providers" is overbroad, vague, and ambiguous.   Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request.

**REQUEST FOR PRODUCTION NO. 110:**

Documents sufficient to show every iteration of WhatsApp's Terms of Service in effect in any country or territory in 2018 and/or 2019.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents "sufficient to show every iteration of WhatsApp's Terms of Service in effect in any country or territory in 2018 and/or 2019," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "sufficient to show," "every iteration of WhatsApp's Terms of Service in effect,"  and "any country or territory" are overbroad, vague, and ambiguous.

1   Subject to and without waiver of these objections, Plaintiffs will produce publicly available

2   Terms of Service for WhatsApp in effect between the years of 2018 and 2019 that are responsive

3   to this Request and are in Plaintiffs' possession, custody, or control.

4   **REQUEST FOR PRODUCTION NO. 111:**

5   All Documents and Communications that refer or relate to Plaintiffs' enforcement of any

6   term in WhatsApp's Terms of Service that Plaintiffs allege Defendant violated.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 111:**

8   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

10  unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

11  fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

12  Documents and Communications "that refer or relate to Plaintiffs' enforcement of any term in

13  WhatsApp's Terms of Service that Plaintiffs allege Defendant violated," without limitation, re-

14  gardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further

15  object to this Request to the extent that it seeks the production of materials covered by non-disclo-

16  sure and/or confidentiality agreements with third parties and/or that would violate the privacy in-

17  terests of others.  Plaintiffs further object to this Request to the extent that it purports to require

18  the production of documents or information protected by the attorney-client privilege, the attorney

19  work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemp-

20  tion from discovery.  Plaintiffs further object to this Request because the phrase "enforcement of

21  any term in WhatsApp's Terms of Service" is overbroad, vague, and ambiguous.

22  Subject to and without waiver of these objections, Plaintiffs will collect and produce doc-

23  uments filed or published July 31, 2018 or later that constitute (1) reports summarizing threats

24  that Plaintiffs have detected and removed across their technologies; and (2) court documents re-

25  flecting Plaintiffs' efforts to enforce the Terms of Service governing the use of Facebook and

26  WhatsApp.

27

28

**REQUEST FOR PRODUCTION NO. 112:**

All Documents and Communications that refer or relate to any expenses that: (1) Plaintiffs claim that they incurred as a result of any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, and that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, and (2) that Plaintiffs allege were caused by Defendants and for which Plaintiffs seek recovery from Defendants in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrase "any expenses" are overbroad, vague, and ambiguous.  Plaintiffs further object to this Request as vague, overbroad, and premature because Defendants have not yet produced any documents regarding their exploitation of Plaintiffs' platforms.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged documents and communications related to Plaintiffs' damages that are responsive to this Request and are in Plaintiffs' possession, custody, or control.  Plaintiffs reserve the right to amend their production based on documents and communications from Defendants, including documents relating to Defendants' finances.

**REQUEST FOR PRODUCTION NO. 113:**

Documents sufficient to show how Plaintiffs identified the owners of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "sufficient to show" and "identified the owners" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce (1) to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 114:**

Documents sufficient to show how Plaintiffs identified the "Target Users" referenced in Paragraph 1 of the Complaint in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "sufficient to show" and "identified the 'Target Users'" are overbroad, vague, and ambiguous.

Subject to and without waiver of these objections, Plaintiffs will produce (1) to the extent available, information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target devices referenced in the Complaint and (2) non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents referring or relating to Plaintiffs' decision in May 2019 to contact the owners of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint in this action about Defendants and/or Pegasus.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case and duplicative of other Requests. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it

purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "referring or relating to Plaintiffs' decision" and "contact the owners of . . . the 'Target Devices'" are overbroad, vague, and ambiguous.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 116:**

All Communications between any of Plaintiffs and Forbidden Stories aka Freedom Voices Network, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Laurent Richard, Sandrine Rigaud, Arthur Bouvart, Paloma Dupont de Dinechin, Clement Le Merlus, Phineas Rueckert, or Audrey Travere, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 116:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 117:**

All Communications between any of Plaintiffs and Forbidden Stories aka Freedom Voices Network, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Laurent Richard, Sandrine Rigaud, Arthur Bouvart, Paloma Dupont de Dinechin, Clement Le Merlus, Phineas Rueckert, or Audrey Travere, that refer or relate to security monitoring tools, user monitoring tools, or other companies providing any tools to monitor users' messages or location through any of Plaintiffs' platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 117:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 118:**

All Communications between any of Plaintiffs and The Citizen Lab at the University of Toronto, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Ronald Deibert, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 118:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs

of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 119:**

All Communications between any of Plaintiffs and Amnesty Tech or Amnesty International, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 119:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 120:**

All Communications between any of Plaintiffs and the United States Department of Commerce Bureau of Industry and Security, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 120:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents and Communications relating to investments made by any of Plaintiffs in any companies selling cyber security products or technologies or cyber intelligence products or technologies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 121:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case. Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or

confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 122:**

All Documents and Communications relating to investments made by any of the directors of any of Plaintiffs, including but not limited to Peter Thiel or Mark Anderson, in any companies selling cyber security products or technologies or cyber intelligence products or technologies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 123:**

All Communications between any law enforcement or intelligence agency and any of Plaintiffs relating to any request made to any of Plaintiffs to assist in preventing or investigating a crime, and Documents related thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 124:**

Documents sufficient to show Plaintiffs' policies in effect at any time from 2018 to present relating to the handling of requests made by any law enforcement or intelligence agency to any of Plaintiffs to assist in preventing or investigating a crime, and Documents related to Plaintiffs' application of those policies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or

confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce publicly available policies for WhatsApp in effect between the years of 2018 and 2019 that are responsive to this Request and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 125:**

All Documents and Communications that refer or relate to Tom Cohen, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 125:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Tom Cohen," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 126:**

All Documents and Communications that refer or relate to Otto Ebeling, identified in Plaintiff's initial disclosures, related to Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 126:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Otto Ebeling," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 127:**

All Documents and Communications that refer or relate to Aashin Gautum, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 127:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Aashin Gautum," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 128:**

All Documents and Communications that refer or relate to Saish Gersappa, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 128:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Saish Gersappa," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 129:**

All Documents and Communications that refer or relate to Claudiu Gheorghe, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 129:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Claudiu Gheorghe," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 130:**

All Documents and Communications that refer or relate to Jesus Barcons Palau, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service,

including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 130:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Jesus Barcons Palau," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 131:**

All Documents and Communications that refer or relate to Drew Robinson, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 131:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

Documents and Communications "that refer or relate to Drew Robinson," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 132:**

All Documents and Communications that refer or relate to Michael Scott, identified in Plaintiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 132:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to Michael Scott," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1  Subject to and without waiver of these objections, Plaintiffs will produce non-privileged,

2  relevant documents and communications that are responsive to this Request, are in Plaintiffs' pos-

3  session, custody, or control, and can be located after a reasonable search conducted in good faith

4  and in accordance with the Search Parameters.

5  **REQUEST FOR PRODUCTION NO. 133:**

6  All Documents and Communications that refer or relate to Ke Wang, identified in Plain-

7  tiff's initial disclosures, related to any Security Vulnerability on the WhatsApp Service, including

8  but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were

9  otherwise involved with in any respect.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 133:**

11  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

12  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

13  unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

14  fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

15  Documents and Communications "that refer or relate to Ke Wang," without limitation, regardless

16  of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this

17  Request to the extent that it purports to require the production of documents or information pro-

18  tected by the attorney-client privilege, the attorney work product doctrine, or other applicable priv-

19  ilege, immunity, duty of confidentiality, or exemption from discovery.

20  Subject to and without waiver of these objections, Plaintiffs will produce non-privileged,

21  relevant documents and communications that are responsive to this Request, are in Plaintiffs' pos-

22  session, custody, or control, and can be located after a reasonable search conducted in good faith

23  and in accordance with the Search Parameters.

24

25

26

27

28

**REQUEST FOR PRODUCTION NO. 134:**

All Documents and Communications that refer or relate to YuanYuan Wang, identified in Plaintiff's initial disclosures, related any Security Vulnerability on the WhatsApp Service, including but not limited to CVE-2019-3568, that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 134:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Documents and Communications "that refer or relate to YuanYuan Wang," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 135:**

All Communications between any of Plaintiffs and 365 Group LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 135:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

sponsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and 365 Group LLC, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 136:**

All Communications between any of Plaintiffs and Amazon Web Services, Inc., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 136:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1. Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and Amazon Web Services, Inc., or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 137:**

All Communications between any of Plaintiffs and AT&T Mobility LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 137:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1. Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and AT&T Mobility LLC, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 138:**

All Communications between any of Plaintiffs and Berkeley Research Group, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 138:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1. Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1    Subject to and without waiver of these objections, Plaintiffs will produce non-privileged

2    communications exchanged between counsel for Plaintiffs and Berkeley Research Group, LLC, or

3    its counsel, regarding any subpoenas served in this matter.

4    **REQUEST FOR PRODUCTION NO. 139:**

5    All Communications between any of Plaintiffs and Choopa, LLC, including any employee,

6    contractor, or representative thereof, that refer or relate to any of the Defendants.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 139:**

8    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9    jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

10   is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

11   sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

12   cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

13   tion of documents or information protected by the attorney-client privilege, the attorney work

14   product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

15   from discovery.

16   Subject to and without waiver of these objections, Plaintiffs will produce non-privileged

17   communications exchanged between counsel for Plaintiffs and Choopa, LLC, or its counsel, re-

18   garding any subpoenas served in this matter.

19   **REQUEST FOR PRODUCTION NO. 140:**

20   All Communications between any of Plaintiffs and Cogent Communications, Inc., includ-

21   ing any employee, contractor, or representative thereof, that refer or relate to any of the Defend-

22   ants.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 140:**

24   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

25   jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

26   is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

27

28

sponsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and Cogent Communications, Inc., or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 141:**

All Communications between any of Plaintiffs and Compass Stratagem, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 141:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and Compass Stratagem, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 142:**

All Communications between any of Plaintiffs and E-Tel Systems, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 142:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and E-Tel Systems, LLC, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 143:**

All Communications between any of Plaintiffs and Francisco Partners Management L.P., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 143:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1    Subject to and without waiver of these objections, Plaintiffs will produce non-privileged

2 communications exchanged between counsel for Plaintiffs and Francisco Partners Management

3 L.P., or its counsel, regarding any subpoenas served in this matter.

4 **REQUEST FOR PRODUCTION NO. 144:**

5    All Communications between any of Plaintiffs and Google LLC, including any employee,

6 contractor, or representative thereof, that refer or relate to any of the Defendants.

7 **RESPONSE TO REQUEST FOR PRODUCTION NO. 144:**

8    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9 jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

10 is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

11 sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

12 cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

13 tion of documents or information protected by the attorney-client privilege, the attorney work

14 product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

15 from discovery.

16    Subject to and without waiver of these objections, Plaintiffs will produce non-privileged

17 communications exchanged between counsel for Plaintiffs and Google LLC, or its counsel, re-

18 garding any subpoenas served in this matter.

19 **REQUEST FOR PRODUCTION NO. 145:**

20    All Communications between any of Plaintiffs and GreenCloud VPS JSC, including any

21 employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

22 **RESPONSE TO REQUEST FOR PRODUCTION NO. 145:**

23    Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

24 jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

25 is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

26 sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

27

28

cative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and GreenCloud VPS JSC, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 146:**

All Communications between any of Plaintiffs and Jefferies Group LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 146:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and Jefferies Group LLC, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 147:**

All Communications between any of Plaintiffs and the Los Angeles Police Department, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 147:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and the Los Angeles Police Department, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 148:**

All Communications between any of Plaintiffs and Mercury Public Affairs, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 148:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and Mercury Public Affairs, LLC, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 149:**

All Communications between any of Plaintiffs and Pacific Bell Telephone Company, Inc., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 149:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1. Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and Pacific Bell Telephone Company, Inc., or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 150:**

All Communications between any of Plaintiffs and PayPal Inc., including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 150:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1. Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative. Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work

product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and PayPal Inc., or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 151:**

All Communications between any of Plaintiffs and PSI Network, Inc. including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 151:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and PSI Network, Inc., or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 152:**

All Communications between any of Plaintiffs and QuadraNet Enterprises LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 152:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and QuadraNet Enterprises LLC, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 153:**

All Communications between any of Plaintiffs and the San Diego Police Department, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 153:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and the San Diego Police Department, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 154:**

All Communications between any of Plaintiffs and any law enforcement agency, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 154:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 155:**

All Communications between any of Plaintiffs and Severdroid LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 155:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

1      Subject to and without waiver of these objections, Plaintiffs will produce non-privileged

2   communications exchanged between counsel for Plaintiffs and Severdroid LLC, or its counsel,

3   regarding any subpoenas served in this matter.

4   **REQUEST FOR PRODUCTION NO. 156:**

5      All Communications between any of Plaintiffs and Verisign Inc., including any employee,

6   contractor, or representative thereof, that refer or relate to any of the Defendants.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 156:**

8      Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

9   jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

10  is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

11  sponsive to Request for Production No. 1 and to respond to this Request would therefore be dupli-

12  cative.  Plaintiffs further object to this Request to the extent that it purports to require the produc-

13  tion of documents or information protected by the attorney-client privilege, the attorney work

14  product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption

15  from discovery.

16     Subject to and without waiver of these objections, Plaintiffs will produce non-privileged

17  communications exchanged between counsel for Plaintiffs and Verisign Inc., or its counsel, re-

18  garding any subpoenas served in this matter.

19  **REQUEST FOR PRODUCTION NO. 157:**

20     All Communications between any of Plaintiffs and Verizon Wireless Services, LLC, in-

21  cluding any employee, contractor, or representative thereof, that refer or relate to any of the De-

22  fendants.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 157:**

24     Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

25  jections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it

26  is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents re-

27

28

sponsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and Verizon Wireless Services, LLC, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 158:**

All Communications between any of Plaintiffs and Vultur Holdings, LLC, including any employee, contractor, or representative thereof, that refer or relate to any of the Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 158:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to this Request to the extent it is duplicative of Request for Production No. 1.  Plaintiffs have agreed to produce documents responsive to Request for Production No. 1 and to respond to this Request would therefore be duplicative.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged communications exchanged between counsel for Plaintiffs and Vultur Holdings, LLC, or its counsel, regarding any subpoenas served in this matter.

**REQUEST FOR PRODUCTION NO. 159:**

All Communications that refer or relate to inquiries to Plaintiffs about Plaintiffs' ability, through any of its entities, to view or access encrypted messages sent via WhatsApp or on any of Plaintiffs' other platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 159:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 160:**

All Communications that refer or relate to Plaintiffs' use of information obtained from encrypted messages sent via WhatsApp or on any of Plaintiffs' other platforms for commercial purposes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 160:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product

1    doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from dis-

2    covery.

3        On the basis of the foregoing objections, Plaintiffs will not produce documents in response

4    to the Request.

5    **REQUEST FOR PRODUCTION NO. 161:**

6        All Communications that refer or relate to Plaintiffs' policies and decisions whether to

7    terminate user accounts on any of its entities, including WhatsApp and Facebook.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 161:**

9        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

10   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

11   unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or de-

12   fenses in this Action or proportionate to the needs of the case and duplicative of other Requests.

13   Plaintiffs further object to this Request to the extent that it seeks the production of materials cov-

14   ered by non-disclosure and/or confidentiality agreements with third parties and/or that would vio-

15   late the privacy interests of others.  Plaintiffs further object to this Request to the extent that it

16   purports to require the production of documents or information protected by the attorney-client

17   privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-

18   fidentiality, or exemption from discovery.

19       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

20   to the Request.

21   **REQUEST FOR PRODUCTION NO. 162:**

22       All Communications by or between employees of Plaintiffs that refer or relate to Defend-

23   ants.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 162:**

25       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

26   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

27

28

unduly burdensome, ambiguous and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll" Communications "by or between employees of Plaintiffs that refer or relate to Defendants," without limitation, regardless of whether such Documents are relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

Subject to and without waiver of these objections, Plaintiffs will produce non-privileged, relevant documents and communications that are responsive to this Request, are in Plaintiffs' possession, custody, or control, and can be located after a reasonable search conducted in good faith and in accordance with the Search Parameters.

**REQUEST FOR PRODUCTION NO. 163:**

All Communications that refer or relate to accounts of Defendants' employees that were terminated from any of Plaintiffs' platforms, including but not limited to WhatsApp and Facebook.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 163:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad, unduly burdensome, ambiguous, and seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the phrases "refer or relate to," "accounts of Defendants' employees that were terminated," and "any of Plaintiffs' platforms" are overbroad, vague, and ambiguous.

1   On the basis of the foregoing objections, Plaintiffs will not produce documents in response

2   to the Request.

3   **REQUEST FOR PRODUCTION NO. 164:**

4   All Documents and Communications related to any alleged statements made by Defendants

5   that refer or relate to any Security Vulnerability on the WhatsApp Service, including but not lim-

6   ited to CVE-2019-3568, including but not limited to the alleged statement made attributed to "NSO

7   Employee 1" in Your Complaint.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 164:**

9   Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

10   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as overbroad,

11   unduly burdensome, ambiguous and seeking information that is not relevant to any claims or de-

12   fenses in this Action or proportionate to the needs of the case to the extent that it seeks "[a]ll"

13   Documents and Communications without limitation, regardless of whether such Documents are

14   relevant to any issue in the Action.  Plaintiffs further object to this Request to the extent that it

15   purports to require the production of documents or information protected by the attorney-client

16   privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of con-

17   fidentiality, or exemption from discovery.  Plaintiffs further object to this Request because the

18   phrases "related to" and "any alleged statement" are overbroad, vague, and ambiguous.

19   Subject to and without waiver of these objections, Plaintiffs will produce the WhatsApp

20   messages with "NSO Employee 1" referenced in the Complaint that are within Plaintiffs' posses-

21   sion, custody, or control.

22   **REQUEST FOR PRODUCTION NO. 165:**

23   All Communications between any of Plaintiffs and any of the following current or former

24   officials or representatives of the United States (including their staff members) that refer or relate

25   to Defendants: Maher Bitar, Tom Malinowski, Anne Neuberger, Adam Schiff, Jake Sullivan, or

26   Ron Wyden.

27

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 165:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 166:**

All Communications between any of Plaintiffs and any current or former officials or representatives of the United States government (including any Congressmen or Senators) that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 166:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 167:**

All Communications between any of Plaintiffs and any congressional committees, including but not limited to the Senate Select Committee on Intelligence and the House Permanent Select Committee on Intelligence, that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 167:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 168:**

All Communications between any of Plaintiffs and any registered lobbyists in the United States that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 168:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 169:**

All Communications between any of Plaintiffs and officials of any state within the United States that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 169:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 170:**

All Communications between any of Plaintiffs and officials or representatives of any government outside of the United States that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 170:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 171:**

All Communications between any of Plaintiffs and officials of any international organization, public or private, that refer or relate to Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 171:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

1   **REQUEST FOR PRODUCTION NO. 172:**

2        All Communications between any of Plaintiffs on the one hand, and journalists, members

3   of the press, or media on the other hand, that refer or relate to Defendants.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 172:**

5        Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

6   jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

7   formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

8   of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

9   materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

10  that would violate the privacy interests of others.  Plaintiffs further object to this Request to the

11  extent that it purports to require the production of documents or information protected by the at-

12  torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-

13  ity, duty of confidentiality, or exemption from discovery.

14       On the basis of the foregoing objections, Plaintiffs will not produce documents in response

15  to the Request.

16  **REQUEST FOR PRODUCTION NO. 173:**

17       All Communications between any of Plaintiffs on the one hand, and Public Relations or

18  other media consulting companies on the other hand, that refer or relate to Defendants.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 173:**

20       Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

21  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

22  formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

23  of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

24  materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

25  that would violate the privacy interests of others.  Plaintiffs further object to this Request to the

26

27

28

1  extent that it purports to require the production of documents or information protected by the at-

2  torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-

3  ity, duty of confidentiality, or exemption from discovery.

4  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

5  to the Request.

6  **REQUEST FOR PRODUCTION NO. 174:**

7  All Communications between any of Plaintiffs and any trade groups or industry associa-

8  tions that refer or relate to Defendants.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 174:**

10  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

11  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

12  formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

13  of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of

14  materials covered by non-disclosure and/or confidentiality agreements with third parties and/or

15  that would violate the privacy interests of others.  Plaintiffs further object to this Request to the

16  extent that it purports to require the production of documents or information protected by the at-

17  torney-client privilege, the attorney work product doctrine, or other applicable privilege, immun-

18  ity, duty of confidentiality, or exemption from discovery.

19  On the basis of the foregoing objections, Plaintiffs will not produce documents in response

20  to the Request.

21  **REQUEST FOR PRODUCTION NO. 175:**

22  All Communications between any of Plaintiffs and Apple, Inc., including any employee,

23  contractor, or representative thereof that refer or relate to Defendants.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 175:**

25  Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Ob-

26  jections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking in-

27  formation that is not relevant to any claims or defenses in this Action or proportionate to the needs

28

of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 176:**

All Documents and Communications that refer or relate to communications by Plaintiffs or their representatives with any of the Plaintiffs in the case of *Dada v. NSO Group Tech. Ltd.*, United States District Court, Northern District of California Case No. 3:22-cv-07513 or their representatives.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 176:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 177:**

All Documents and Communications produced by Facebook to any of the plaintiffs in the action, *In re Facebook, Inc., Consumer Privacy User Profile* Litigation (N.D. Cal., Case No. 3:18-md-02843-VC).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 177:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

**REQUEST FOR PRODUCTION NO. 178:**

All Documents and Communications relating to the "discovery misconduct" referenced in Judge Vince Chhabria's February 9, 2023 Order (ECF No. 1104) in the action, *In re Facebook, Inc., Consumer Privacy User Profile Litigation* (N.D. Cal., Case No. 3:18-md-02843-VC), including without limitation (1) Facebook and its counsel's "repeated use of frivolous legal arguments to delay the production of highly probative evidence, (2) Facebook and its counsel's "misconduct as it relates to the named plaintiff's data," (3) Facebook and its counsel's "misconduct related to the Switchboard profiles," (4) Facebook and its counsel's "deposition misconduct," and (5) Facebook and its counsel's "over-designation of documents as privileged."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 178:**

Plaintiffs incorporate the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  Plaintiffs object to the Request as seeking information that is not relevant to any claims or defenses in this Action or proportionate to the needs of the case.  Plaintiffs further object to this Request to the extent that it seeks the production of materials covered by non-disclosure and/or confidentiality agreements with third parties and/or that would violate the privacy interests of others.  Plaintiffs further object to this Request to the extent that it purports to require the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, immunity, duty of confidentiality, or exemption from discovery.

On the basis of the foregoing objections, Plaintiffs will not produce documents in response to the Request.

Dated:  September 8, 2023

DAVIS POLK & WARDWELL LLP


By:  _/s/ Micah G. Block_

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com


Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email: greg.andres@davispolk.com
           antonio.perez@davispolk.com
           craig.cagney@davispolk.com


*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

PLAINTIFFS' SECOND AMENDED R&OS TO SECOND SET OF REQUESTS FOR PRODUCTION
CASE NO. 4:19-cv-07123-PJH

## CERTIFICATE OF SERVICE

I hereby certify that I am a citizen of the United States and employed in the County of New York, New York.  I am over the age of 18 years and not a party to the within-entitled action.  My business address is Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

On September 8, 2023, I served a true and correct copy of the following document(s) on the parties in the action addressed as follows:

**PLAINTIFFS' SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT NSO GROUP TECHNOLOGIES' LIMITED SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

☐ (BY OVERNIGHT COURIER) by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered by a FedEx or UPS agent for delivery.

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) to the email addresses set forth below on this date.

Joseph N. Akrotirianakis
Aaron S. Craig
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Email: jakro@kslaw.com
         acraig@kslaw.com

*Attorneys for Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited*

I declare under penalty of perjury that the above is true and correct.

Executed on September 8, 2023 at New York, New York.

_____
*/s/ Luca Marzorati*
Luca Marzorati

# EXHIBIT O

# THE MILLION DOLLAR DISSIDENT

## NSO Group's iPhone Zero-Days used against a UAE Human Rights Defender

By Bill Marczak and John Scott-Railton

AUGUST 24, 2016
RESEARCH REPORT #78





# Copyright

© The Citizen Lab



Licensed under the Creative Commons BY-SA 4.0 (Attribution-ShareAlike licence). Electronic version first published in 2016 by the Citizen Lab. This work can be accessed through https://citizenlab.ca/2016/08/million-dollar-dissident-iphone-zero-day-nso-group-uae/.

Document Version: 1.0

The Creative Commons Attribution-ShareAlike 4.0 license under which this report is licensed lets you freely copy, distribute, remix, transform, and build on it, as long as you:

- give appropriate credit;
- indicate whether you made changes; and
- use and link to the same CC BY-SA 4.0 licence.

However, any rights in excerpts reproduced in this report remain with their respective authors; and any rights in brand and product names and associated logos remain with their respective owners. Uses of these that are protected by copyright or trademark rights require the rightsholder's prior written agreement.

# Suggested Citation

Bill Marczak and John Scott-Railton. "The Million Dollar Dissident: NSO Group's iPhone Zero-Days used against a UAE Human Rights Defender," Citizen Lab Research Report No. 78, University of Toronto, August 2016.

## Acknowledgements

Special thanks to the team at Lookout that we collaborated with in our investigation, especially: Max Bazaliy, Andrew Blaich, Kristy Edwards, Michael Flossman, Seth Hardy, and Mike Murray. Very special thanks to our talented Citizen Lab colleagues, especially: Ron Deibert, Sarah McKune, Claudio Guarnieri, Adam Senft, Irene Poetranto, and Masashi Nishihata.

Special thanks to the teams at Apple Inc. with whom we have been in contact for their prompt and forthright engagement during the disclosure and patching process.

Special thanks to Nicholas Weaver for supplying the iPhone that we infected in Section 4.  Special thanks to Zakir Durumeric.

Special thanks to TNG and others who provided invaluable assistance, including with translation, but requested to remain anonymous. Thanks to PassiveTotal.

Citizen Lab's research into targeted threats against civil society is supported by the John D and Catherine T MacArthur Foundation.  This material is also based upon work supported by the Center for Long Term Cybersecurity (CLTC) at UC Berkeley.

## About the Citizen Lab, Munk School of Global Affairs and Public Policy, University of Toronto

**The Citizen Lab** is an interdisciplinary laboratory based at the Munk School of Global Affairs and Public Policy, University of Toronto, focusing on research, development, and high-level strategic policy and legal engagement at the intersection of information and communication technologies, human rights, and global security.

We use a "mixed methods" approach to research that combines methods from political science, law, computer science, and area studies. Our research includes investigating digital espionage against civil society, documenting Internet filtering and other technologies and practices that impact freedom of expression online, analyzing privacy, security, and information controls of popular applications, and examining transparency and accountability mechanisms relevant to the relationship between corporations and state agencies regarding personal data and other surveillance activities.

# Contents

**1. Executive Summary**     5

**2. Ahmed Mansoor Targeted With iPhone Zero-Day**     8

**3. NSO Group and the Pegasus Solution**     10

    **3.1. Pegasus Documents in Hacking Team Leak**     11
    **3.2. Device Infection**     12
    **3.3. Data Collection**     13
    **3.4. Exfiltration**     14
    **3.5. Prioritizing Stealth**     15

**4. The Trident iOS Exploit Chain and Payload**     15

    **4.1. The Trident Exploit Chain**     16
    **4.2. The Payload**     17
       4.2.1. Persistence     17
       4.2.2. Recording     17
       4.2.3. Exfiltration     17

**5. Tracking a Mobile Attack Infrastructure**     18

    **5.1. *Stealth Falcon* Leads Us to a Mobile Attack Infrastructure**     18
    **5.2. Coding the Domain Names**     20

**6. Linking NSO Group Products to the Attack on Mansoor**     23

    **6.1. Spyware Points to NSO Group's Pegasus Solution**     23
    **6.2. Historical Scanning Data Connects Mansoor Attack to NSO Group-linked Infrastructure**     23
    **6.3. Additional UAE Infrastructure**     25

**7. Evidence of Other Targets**     25

    **7.1. Mexico: Politically Motivated Targeting?**     26
    **7.2. Kenya: A Tweet Discussing the Opposition**     28

**8. Ahmed Mansoor and Previous UAE Attacks**     29

**9. Conclusion**     30

**Disclosure Timeline**     32

This report was written with the assistance of the research team at Lookout Security.

**Update (Sept 1, 2016)**: Today Apple released security updates for Desktop Safari and Mac OS X.  These updates patch the Trident vulnerabilities that identified in this report for desktop users. The Trident vulnerabilities used by NSO could have been weaponized against users of non iOS devices, including OSX. **We encourage all Apple users to install the update as soon as possible**. Citizen Lab is not releasing samples of the attack at this time to protect the integrity of still-ongoing investigations.

*This report describes how a government targeted an internationally recognized human rights defender, Ahmed Mansoor, with the Trident, a chain of zero-day exploits designed to infect his iPhone with sophisticated commercial spyware.*

# 1. Executive Summary

Ahmed Mansoor is an internationally recognized human rights defender, based in the United Arab Emirates (UAE), and recipient of the Martin Ennals Award (sometimes referred to as a "Nobel Prize for human rights").  On August 10 and 11, 2016, Mansoor received SMS text messages on his iPhone promising "new secrets" about detainees tortured in UAE jails if he clicked on an included link. Instead of clicking, Mansoor sent the messages to Citizen Lab researchers.  We recognized the links as belonging to an exploit infrastructure connected to NSO Group, an Israel-based "cyber war" company that sells *Pegasus*, a government-exclusive "lawful intercept" spyware product.  NSO Group is reportedly owned by an American venture capital firm, Francisco Partners Management.

The ensuing investigation, a collaboration between researchers from Citizen Lab and from Lookout Security, determined that the links led to a chain of zero-day exploits ("zero-days") that would have remotely jailbroken Mansoor's stock iPhone 6 and installed sophisticated spyware.  We are calling this exploit chain *Trident*.  Once infected, Mansoor's phone would have become a digital spy in his pocket, capable of employing his iPhone's camera and microphone to snoop on activity in the vicinity of the device, recording his WhatsApp and Viber calls, logging messages sent in mobile chat apps, and tracking his movements.

We are not aware of any previous instance of an iPhone remote jailbreak used in the wild as part of a targeted attack campaign, making this a rare find.

**The Trident Exploit Chain:**

- CVE-2016-4657: Visiting a maliciously crafted website may lead to arbitrary code execution

- CVE-2016-4655: An application may be able to disclose kernel memory

- CVE-2016-4656: An application may be able to execute arbitrary code with kernel privileges

Once we confirmed the presence of what appeared to be iOS zero-days, Citizen Lab and Lookout quickly initiated a responsible disclosure process by notifying Apple and sharing our findings. Apple responded promptly, and notified us that they would be addressing the vulnerabilities. We are releasing this report to coincide with the availability of the iOS 9.3.5 patch, which blocks the Trident exploit chain by closing the vulnerabilities that NSO Group appears to have exploited and sold to remotely compromise iPhones.

Recent Citizen Lab research has shown that many state-sponsored spyware campaigns against civil society groups and human rights defenders use "just enough" technical sophistication, coupled with carefully planned deception. This case demonstrates that not all threats follow this pattern.  The iPhone has a well-deserved reputation for security.  As the iPhone platform is tightly controlled by Apple, technically sophisticated exploits are often required to enable the remote installation and operation of iPhone monitoring tools. These exploits are rare and expensive. Firms that specialize in acquiring zero-days often pay handsomely for iPhone exploits.  One such firm, Zerodium, acquired an exploit chain similar to the Trident for one million dollars in November 2015.

The high cost of iPhone zero-days, the apparent use of NSO Group's government-exclusive Pegasus product, and prior known targeting of Mansoor by the UAE government provide indicators that point to the UAE government as the likely operator behind the targeting.

Remarkably, this case marks the *third* commercial "lawful intercept" spyware suite employed in attempts to compromise Mansoor.  In 2011, he was targeted with FinFisher's FinSpy spyware, and in 2012 he was targeted with Hacking Team's Remote Control System.  Both Hacking Team and FinFisher have been the object of several years of revelations highlighting the misuse of spyware to compromise civil society groups, journalists, and human rights workers.


Figure 1: Ahmed Mansoor, the "Million Dollar Dissident."

The attack on Mansoor is further evidence that "lawful intercept" spyware has significant abuse potential, and that some governments cannot resist the temptation to use such tools against political opponents, journalists, and human rights defenders. Our findings also highlight the continuing lack of effective human rights policies and due diligence at spyware companies, and the continuing lack of incentives to address abuses of "lawful intercept" spyware.

Our report proceeds as follows:

- **Section 2** provides an overview of the attack against Ahmed Mansoor.

- **Section 3** details NSO Group's tradecraft, gleaned from what appears to be a copy of NSO Group documentation leaked in the Hacking Team emails.

- **Section 4** summarizes our technical analysis of the attack against Mansoor (in collaboration with Lookout).

- **Section 5** describes how we found what appears to be the NSO Group's mobile attack infrastructure while working on our previous Stealth Falcon report.

- **Section 6** links the spyware used in the attack on Mansoor to NSO Group.

- **Section 7** outlines evidence of other individuals targeted with the infrastructure that we linked to NSO Group, including Mexican journalist Rafael Cabrera.

- **Section 8** explains how the attack on Mansoor fits into the context of ongoing attacks on UAE dissidents.

- **Section 9 concludes the report.**

# 2. Ahmed Mansoor Targeted With iPhone Zero-Day

Ahmed Mansoor is an internationally recognized human rights defender, blogger, and member of Human Rights Watch's advisory committee.  Mansoor, who is based in the UAE, was jailed for eight months in 2011 along with four other activists for supporting a pro-democracy petition.  After he was released, Mansoor's passport was confiscated, his car was stolen, and $140,000 disappeared from his bank account.  Mansoor is banned from traveling overseas, and his work continues to attract significant harassment and punishment

On the morning of August 10, 2016, Mansoor received an SMS text message that appeared suspicious. The next day he received a second, similar text. The messages promised "new secrets" about detainees tortured in UAE prisons, and contained a hyperlink to an unfamiliar website. The messages arrived on Mansoor's stock iPhone 6 running iOS 9.3.3.



Figure 2: Ahmed Mansoor received suspicious text messages in August 2016.  Credit: Martin Ennals Foundation.

Mansoor quickly forwarded the messages to Citizen Lab researchers for investigation.  He has good reason to be concerned about unsolicited messages: every year since 2011, Mansoor has been targeted with spyware attacks, including with FinFisher spyware in 2011 and Hacking Team spyware in 2012 (see **Section 8: Ahmed Mansoor and Previous UAE Attacks**).

CITIZEN LAB RESEARCH REPORT NO. 78



Figure 3: SMS text messages received by Mansoor (English: "New secrets about torture of Emiratis in state prisons").  The sender's phone numbers are spoofed.

When Mansoor's messages reached us, we recognized the links: the domain name **webadv.co** belongs to a network of domains that we believe to be part of an exploit infrastructure provided by the spyware company NSO Group (see **Section 6: Linking NSO Group Products to the Attack on Mansoor**).  We had first come across the NSO Group infrastructure during the course of our earlier research into Stealth Falcon, a UAE-based threat actor (see **Section 5: Tracking a Mobile Attack Infrastructure**). When we first found the infrastructure and connected it to NSO Group, we hypothesized that operators of the NSO Group spyware would target a user by sending them an infection link containing one of the exploit infrastructure domain names.  Though we had previously found several public occurrences of links involving these domains on Twitter (see **Section 7: Evidence of Other Targets**), none of the links we found seemed to be *active* (i.e., none produced an infection when we tested them).  In other exploit infrastructures with which we are familiar (e.g., Hacking Team's exploit infrastructure), we had noted that operators prefer to deactivate such links after a single click, or after a short period of time, perhaps in order to prevent the disclosure of the exploit to security researchers.

We accessed the link Mansoor provided us on our own stock factory-reset iPhone 5 (Mansoor had an iPhone 6) with iOS 9.3.3 (the same version as Mansoor).  When we clicked the link, we saw that it was indeed active, and watched as unknown software was remotely implanted on our phone.  This suggested that the link contained a zero-day iPhone remote jailbreak: a chain of heretofore unknown exploits used to remotely circumvent iPhone security measures.  To verify our observations, we shared our findings with Lookout Security.  Both research teams determined that Mansoor was targeted with a zero-day iPhone remote jailbreak. The chain of exploits, which we are calling the Trident, included the following (see **Section 4: The Trident iOS Exploit Chain and Payload** for more details):

- CVE-2016-4657: An exploit for WebKit, which allows execution of the initial shellcode

- CVE-2016-4655: A Kernel Address Space Layout Randomization (KASLR) bypass exploit to find the base address of the kernel

- CVE-2016-4656: 32 and 64 bit iOS kernel exploits that allow execution of code in the kernel, used to jailbreak the phone and allow software installation

The implant installed by the Trident exploit chain would have turned Mansoor's iPhone into a digital spy in his pocket. The spyware, which appears to be NSO's Pegasus spyware solution, was capable of employing his iPhone's camera and microphone to eavesdrop on activity in the vicinity of the device, recording his WhatsApp and Viber calls, logging messages sent in mobile chat apps, and tracking his movements.

# 3. NSO Group and the Pegasus Solution

The attack on Mansoor appears to have used Pegasus, a remote monitoring solution sold by NSO Group Technologies Ltd (see **Section 6: Linking NSO Group Products to the Attack on Mansoor**).  NSO Group, based in Herzelia, Israel (CR# 514395409), develops and sells mobile phone surveillance software to governments around the world.  The company describes itself as a "leader" in "mobile and cellular Cyber Warfare," and has been operating for more than six years since its founding in 2010.

NSO Group appears to be owned by a private equity firm with headquarters in San Francisco: Francisco Partners Management LLC, which reportedly acquired it in 2014 after approval from the Israeli Defense Ministry. However, as of November 2015, Francisco Partners was reportedly exploring selling NSO Group, with a stated valuation of up to $1 billion. Interestingly, Francisco Partners previously invested in Blue Coat, a company selling network filtering and monitoring solutions, whose technology has been used by repressive regimes according to previous Citizen Lab research.



Figure 4: Image from an NSO Group brochure posted on SIBAT (The International Defense Cooperation Directorate of the Israel Ministry of Defense).

NSO Group has largely avoided the kind of high profile media attention that companies like Hacking Team and FinFisher have sometimes courted. The company maintains no website, there is little concrete information about NSO Group's Pegasus product available online, and we know of no prior technical analysis of NSO Group's products or infrastructure.

Some previous media reports have linked NSO Group and Pegasus to a scandal involving potential illegal eavesdropping in Panama, and possible sales to Mexico. Other reports have suggested that NSO Group's activities have aroused concern within the United States intelligence community.

Two of NSO Group's three co-founders, Shalev Hulio and Omri Lavie, are also co-founders of mobile security company Kaymera, which promises a "Multi Layered Cyber Defense Approach" to clients. On Kaymera's website, the company reprints a Bloomberg article pointing out that they "play both sides of the cyber wars." The article also quotes NSO Group's CEO, who suggests that they entered the defense business when potential clients saw the capabilities of NSO Group's tools.



Figure 5: Kaymera's website promises comprehensive mobile security

## 3.1. Pegasus Documents in Hacking Team Leak

Much of the publicly available information about Pegasus seems to be rumor, conjecture, or unverifiable claims made to media about capabilities. However, when we examined the Hacking Team emails leaked online after a 2015 breach, we found several instances of Hacking Team clients or resellers sharing what appeared to be NSO Group's product documentation and sales pitches.

For instance, in December 2014, a reseller of surveillance technologies to the Mexican government forwarded a PDF document containing detailed technical specifications of NSO Group's Pegasus system to Hacking Team. According to the document's metadata, it appears to have been created in December 2013 by Guy

Molho, who is listed on LinkedIn as the Director of Product Management at NSO Group.

## 3.2. Device Infection

According to the purported 2013 NSO Group Pegasus documentation found in the Hacking Team materials, NSO Group offers two remote installation vectors for spyware onto a target's device: a zero-click vector, and a one-click vector. The one-click vector involves sending the target a normal SMS text message with a link to a malicious website. The malicious website contains an exploit for the web browser on the target's device, and any other required exploits to implant the spyware. In the attack against Mansoor, the Trident exploit chain was used.

To use NSO Group's zero-click vector, an operator instead sends the same link via a special type of SMS message, like a WAP Push Service Loading (SL) message. A WAP Push SL message causes a phone to automatically open a link in a web browser instance, eliminating the need for a user to click on the link to become infected. Many newer models of phones have started ignoring or restricting WAP Push messages. Mobile network providers may also decide to block these messages.



Figure 6: Diagram from purported NSO Group Pegasus documentation showing the sequence through which the spyware ("Agent") is installed on a target's mobile device. Source: Hacking Team Emails.

The documentation refers to a malicious website employed in installation of the spyware ("Agent") as an **Anonymizer**, which communicates with a **Pegasus Installation Server** located on the operator's premises. When a target visits a malicious link from their device, the Anonymizer forwards the request to the Pegasus Installation Server, which examines the target device's User-Agent header to determine if Pegasus has an exploit chain, such as the Trident, that supports the device.

If the device is supported, the Pegasus Installation Server returns the appropriate exploit to the target device through the Anonymizer and attempts an infection. If infection fails for any reason, the target's web browser will redirect to a legitimate website specified by the Pegasus operator, in order to avoid arousing the target's suspicion.

In the operation targeting Mansoor, the one-click vector was used, with anonymizer **sms.webadv.co** (see **Section 4: The Trident iOS Exploit Chain and Payload** for more details).

## 3.3. Data Collection

According to the purported NSO Group documentation, once successfully implanted on a phone using an exploit chain like the Trident, Pegasus can actively record or passively gather a variety of different data about the device. By giving full access to the phone's files, messages, microphone and video camera, the operator is able to turn the device into a silent digital spy in the target's pocket.



Figure 7: Diagram from purported NSO Group Pegasus documentation showing the range of information gathered from a device infected with Pegasus. Source: Hacking Team Emails.

In the spyware used in targeting Mansoor, we confirmed many elements of this functionality, and observed indications that the collection of the following types of data was supported, among others (see **Section 4.2: The Payload** for more details):

- Calls made by phone, WhatsApp and Viber,

- SMS messages, as well as messages and other data from popular apps like Gmail, WhatsApp, Skype, Facebook, KakaoTalk, Telegram, and others,

- A wide range of personal data, such as calendar data and contact lists, as well as passwords, including Wi-Fi passwords.

## 3.4. Exfiltration

According to the purported NSO Group documentation, an infected device transmits collected information back to a *Pegasus Data Server* at the operator's premises, via the PATN (Pegasus Anonymizing Transmission Network).  The PATN appears to be a proxy chain system similar to [Hacking Team's anonymizers](#) and [FinFisher's relays](#). The chain is intended to obfuscate the identity of the government client associated with a particular operation.  Once the collected information arrives on the Pegasus Data Server, an operator may visualize the information on a Pegasus Working Station.



Figure 8: A purported screenshot of NSO Group's Pegasus Working Station software, which visualizes location data collected from infected devices (as of March 2012).  Source: Hacking Team Emails.

The implant in the attack targeting Mansoor communicated with two PATN nodes: **aalaan.tv** and **manoraonline.net**.  The first of these, aalaan.tv, appears to be a lookalike domain for the legitimate [alaan.tv](#), a Gulf-based satellite television channel (see **Section 5.2** for more details on lookalike domains observed in apparent NSO Group infrastructure).

## 3.5. Prioritizing Stealth

One interesting design decision of NSO Group's Pegasus system, according to the purported NSO Group documentation, is that it emphasizes stealth above almost all else.  As the documentation states:

> *In general, we understand that it is more important that the source will not be exposed and the target will suspect nothing than keeping the agent alive and working.*

Certain Pegasus features are only enabled when the device is idle and the screen is off, such as "environmental sound recording" (hot mic) and "photo taking."  The documentation also states that the spyware implements a "self-destruct mechanism," which may be activated automatically "in cases where a great probability of exposing the agent exists."  However, the documentation claims that sometimes Pegasus removal can result in an infected device rebooting immediately after removal.

# 4. The Trident iOS Exploit Chain and Payload

*In this section, we describe our technical analysis of the attack on Mansoor, including the Trident iOS Exploit chain and payload. Given the accelerated timeframe of this case, we are publishing the results of a preliminary analysis.*

Recall that the investigation that led to the discovery of the Trident exploit chain began when UAE human rights activist Ahmed Mansoor forwarded to Citizen Lab two suspicious links that he received via SMS on his iPhone (**Section 2**).  Suspecting the links to be iPhone spyware associated with NSO Group (**Section 6**), we accessed them from our own stock factory-reset iPhone 5 running iOS 9.3.3.  Mansoor's device is an iPhone 6, running iOS 9.3.3; we did not have an iPhone 6 available for testing.  Although the latest iOS version when Mansoor received the links was 9.3.4, this version had been released only one week beforehand.

We accessed the links by opening Safari on our iPhone, and manually transcribing the links from the screenshots that Mansoor sent.  After about ten seconds of navigating to the URL, which displayed a blank page, the Safari window closed, and we observed no further visual activity on the iPhone's screen.  Meanwhile,

we saw that the phone was served what appeared to be a Safari exploit, followed by intermediate files (**final111**), and a final payload (**test111.tar**). The first two payloads form the Trident exploit chain, and test111.tar is the payload.

```
GET /          / HTTP/1.1
HTTP/1.1 200 OK  (text/html)
GET /          /ntf_xps.html&nocache=           HTTP/1.1
HTTP/1.1 200 OK
GET /          /ntf_gog.html?a=568_320_2_SGX543&b=1&nocache=           HTTP/1.1
GET /          //final111?&nocache=           HTTP/1.1
HTTP/1.1 200 OK
GET /          /ntf_gog.html?a=568_320_2_SGX543&b=2&nocache=           HTTP/1.1
HTTP/1.1 200 OK
GET /          /ntf_gog.html?a=568_320_2_SGX543&b=     &nocache=           HTTP/1.1
HTTP/1.1 200 OK  (application/octet-stream)
GET /          /ntf_gog.html?a=568_320_2_SGX543&b=3&nocache=           HTTP/1.1
HTTP/1.1 200 OK
GET /          /ntf_gog.html?a=568_320_2_SGX543&b=4&nocache=           HTTP/1.1
HTTP/1.1 200 OK
GET /          /ntf_xpe.html&nocache=           HTTP/1.1
HTTP/1.1 200 OK
GET /          /ntf_bed.html?s=     &d= HTTP/1.1
HTTP/1.1 200 OK
GET /          /ntf_brc.html?m=0 HTTP/1.1
HTTP/1.1 200 OK
GET /          /ntf_bed.html?s=     &d=Tring%20to%20download%20bundle%28try%3A0%29 HTTP/1.1
HTTP/1.1 200 OK
GET /          /test111.tar HTTP/1.1
```

Figure 9: Requests from our phone to sms.webadv.co as we clicked on the malicious link.  The first request is our click on the link.  The requests for ntf_bed.html, ntf_brc.html, and test111. tar are conducted by a stage2 binary (in final111)  All previous requests are conducted by Safari.

Suspecting what we had observed to be the work of a zero-day iPhone remote jailbreak, we shared the exploit and payloads with colleagues at Lookout Security, initiated a responsible disclosure process with Apple, and sent Apple the exploit and payloads.

# 4.1. The Trident Exploit Chain

*This section provides a high-level overview of the Trident exploit chain used in the attack against Mansoor.  For further details, see Lookout's report.*

When a user opens the links sent to Mansoor on an iPhone, a stage1 containing obfuscated JavaScript is downloaded. The JavaScript downloads (via XMLHttpRequest) stage2 binaries for either 32-bit (iPhone 5 and earlier) or 64-bit (iPhone 5s and later), depending on the type of device.  The stage1 employs a previously undocumented memory corruption vulnerability in WebKit to execute this code within the context of the Safari browser (CVE-2016-4657).

The stage2 exploits a function that returns a kernel memory address, from which the base address of the kernel can be mapped (CVE-2016-4655).  The stage2 then employs a memory corruption vulnerability in the kernel (CVE-2016-4656).  This last vulnerability is employed to disable code signing enforcement, allowing the running of unsigned binaries.  The stage2 downloads and installs the stage3, which is the spyware payload.

# 4.2. The Payload

*This section provides a high-level overview of the functionality of the spyware payload.  For more details, see Lookout's report.*

## 4.2.1. Persistence

The Trident is re-run locally on the phone at each boot, using the JavaScriptCore binary.  To facilitate persistence, the spyware disables Apple's automatic updates, and detects and removes other jailbreaks.

## 4.2.2. Recording

The attack payload includes a renamed copy of Cydia Substrate, a third-party app developer framework, which it uses to help facilitate recording of messages and phone calls from targeted apps.  To record WhatsApp and Viber calls, the spyware injects WhatsApp and Viber using the Cydia Substrate, hooks various call status methods, and sends system-wide notifications when call events occur; the spyware listens for these notifications and starts or stops recording as appropriate.  It appears that the payload can spy on apps including: iMessage, Gmail, Viber, Facebook, WhatsApp, Telegram, Skype, Line, KakaoTalk, WeChat, Surespot, Imo.im, Mail.Ru, Tango, VK, and Odnoklassniki.

The spyware also exfiltrates calendar and contact data, as well as passwords saved in the phone's keychain, including Wi-Fi passwords and networks.

## 4.2.3. Exfiltration

The attack payload beacons back to command and control (C2) servers delivered in stage2 of the Trident, via HTTPS.  One of the binaries in the stage2 of the link sent to Mansoor contained the following string:

```
WW91ciBHb29nbGUgdmVyaWZpY2F0aW9uIGNvZGUgaXM6NTY3ODQyOQpodHRwOi8vZ21
haWwuuY29tLz96PUZFY0NBQT09Jmk9TVRwaFlXeGhZVzR1ZEhZNk5EU
XpMREU2YldGdWIzSmhiMjVzYzVicExtNWxkRG8wTkRRNPSZzPXpwdnpQU1lTNjc0PQ==
```

The Base64 string decodes to:

```
Your Google verification code is:5678429
http://gmail.com/?z=FEcCAA==&i=MTphYWxhYW4udHY6NDQzLDE6bWFub3Jhb25saW5
lLm5ldDo0NDM=&s=zpvzPSYS674=
```

This appears designed to look like a text message from Google containing a two-factor authentication code, though legitimate Google messages of this type do not contain a link, and contain one fewer digit in the verification code.  Base64-decoding the "i" parameter of the URL yields:

```
1:aalaan.tv:443,1:manoraonline.net:443
```

These are the C2 servers for the spyware sent to Mansoor: **aalaan.tv** and **manoraonline.net**.

A similar obfuscation appears to be used for exchange of information over SMS between an infected phone and the C2 Server.  In case the spyware's C2 servers are disabled or unreachable, an operator may deliver updated C2 servers to an infection using this type of SMS, similar to FinFisher's "emergency configuration update" functionality.

# 5. Tracking a Mobile Attack Infrastructure

*This section explains how we first identified what appeared to be a mobile attack infrastructure while tracking Stealth Falcon.  We then outline some basic observations about the infrastructure, including themes in the domain names used by the attackers.  We link the infrastructure we found to NSO Group in Section 6.*

## 5.1. *Stealth Falcon* Leads Us to a Mobile Attack Infrastructure

A year or so before Ahmed Mansoor received his suspicious SMS messages, we were tracking *Stealth Falcon*, a threat actor targeting individuals critical of the UAE government at home and abroad, several of whom were later arrested. For full details on Stealth Falcon, read our May 2016 report.

In the course of our investigation, we traced Stealth Falcon's spyware to dozens of different command and control (C2) domains. One server that matched our C2 fingerprint for Stealth Falcon's custom spyware, **icloudcacher.com**, was connected

to the email address **pn1g3p@sigaint.org**, according to data in its DNS SOA record. The same email address appeared in WHOIS records for the following three domains:

```
asrarrarabiya.com
asrararabiya.co
asrararablya.com
```

These domains did not match our Stealth Falcon fingerprint. As we examined the domains, however, we found that the index page on these domains contained an iframe pointing to the website asrararabiya.com (*Asrar Arabiya*, or "Arabian Secrets" in English), which appears to be a [benign website](#) that takes a critical view of the Arab World's "dictatorships." The index page also contained a nearly invisible iframe pointing to an odd looking site, **smser.net**.

```
<iframe src="https://smser.net/9918216t/" width="1" height="1" border="0"></
iframe>
<iframe src="http://asrararabiya.com/" style="width:100%; height:1200px;
position:absolute; top:-5px; left:-5px;" border="0"></iframe>
```

Figure 10: HTML content of the index page on the three fake "Asrar Arabiya" domains.

We suspect that the three domains we identified were attempting to mislead users into believing they were visiting the legitimate asrararabiya.com website. Since we had linked the operation to Stealth Falcon, we suspected that the additional domain, **smser.net**, might be an attack domain. We visited the URL in the iframe, **https://smser.net/9918216t/**, and were redirected to **https://smser.net/redirect. aspx.**

```
<html><head><meta http-equiv='refresh' content='0;url=http://www.google.com'
/><meta http-equiv='refresh' content='1;url=http://www.google.com'
/><title></title></head><body></body></html>
```

Figure 11: HTML content of https://smser.net/redirect.aspx. The page tells the web browser to redirect the visitor to Google.

We devised a number of fingerprints for various behaviors of **smser.net**, checked [Shodan](#) and [Censys](#), and conducted our own scanning with [zmap](#) to identify related servers. We found 237 live IP addresses, and extracted their domain names from the SSL certificates returned by the each server. The SSL certificates we found included **\*.webadv.co**, **manoraonline.net**, and **aalaan.tv**, the three domains in the spyware attack sent to Mansoor.

We linked these IPs and domain names to what appears to be NSO Group exploit infrastructure.

## 5.2. Coding the Domain Names

We coded the domain names we found, and identified several common themes, perhaps indicating the type of bait content that targets would receive. Interestingly, the most common theme among the domains we identified was "News Media," perhaps indicating the use of fake news articles to trick targets into clicking on spyware links. An example of one such attack in action is the targeting of Mexican journalist Rafael Cabrera (**Section 7.1**).

We also noted the prevalence of themes we had seen in other spearphishing attacks, e.g., online accounts, document sharing, shipment tracking, corporate account portals. Another common theme was ISPs, perhaps because a target may trust an SMS appearing to come from an ISP or Telco they subscribe to.



Figure 12: Most commonly recurring domain name themes.

 Alarmingly, some of the names suggested a willingness on the part of the operators to impersonate governments and international organizations. For example, we found two domain names that appear intended to masquerade as an official site of the International Committee of the Red Cross (ICRC):  **icrcworld.com** and **redcrossworld.com**.

We also identified the domain **topcontactco.com** which may be a lookalike for **tpcontact.co.uk**, a website belonging to Teleperformance, a company that has managed UK visa application processing in many countries.

10) Once you have completed your visa application and made your appointment you must create an account on the Teleperformance website www.tpcontact.co.uk⧉.Failing to create an account on the Teleperformance website may delay your appointment at the visa application centre. Pick your resident country and click submit then Create an account. You can find your GWF xxxxxxxxx (reference) in the emails you have received from UKVI.

Figure 13: Screenshot from an article published by the UK Government on how to apply for a visa. https://www.gov.uk/government/world-location-news/how-to-apply-for-a-uk-visa

Visa applicants are required to visit the legitimate tpcontact.co.uk website as part of the online visa application process. We found similar evidence of government-themed sites hinting at Mexico and Kenya.

The following table provides further examples of themes found in the domain names.

| Type | Example | Impersonating |
|---|---|---|
| News Media | alljazeera.co | Aljazeera |
| | bbc-africa.com | BBC |
| | cnn-africa.co | CNN |
| | unonoticias.net | Las Ultimas Noticias |
| | univision.click | Univision |
| Shipment Tracking | track-your-fedex-package. org | FedEx |
| ISP / Telco | mz-vodacom.info | Vodacom (Mozambique) |
| | iusacell-movil. com.mx | Iusacell (Mexico) |
| | sabafon.info | Sabafon (Yemen) |
| | newtarrifs.net | Generic |
| Popular Online Platforms | y0utube.com.mx | YouTube |
| | fb-accounts.com | Facebook |
| | googleplay-store.com | Google |
| | whatsapp-app.com | WhatsApp |
| Account Info. (Generic) | accounts.mx | Unknown |
| | adjust-local-settings.com | |
| Government Portals | emiratesfoundation.net | The Emirates Foundation |
| | topcontactco.com | Teleperformance Visa Application Processing Portal for the UK (tpcontact. co.uk.) |
| Humanitarian organizations | icrcworld.com | International Committee of |
| | redcrossworld.com | the Red Cross |

| Type | Example | Impersonating |
|------|---------|---------------|
| **Airlines** | checkinonlinehere.com, turkishairines.info | Generic<br>Turkish Airlines |
| **Pokemon** | bulbazaur.com<br>pickuchu.com | The Pokemon Company |

Table 1: Examples of domain names and themes

We also examined the domain names for evidence of links to any specific country and found a range of countries.  Our criteria was whether the domain name contained the name of a telecom provider, ISP, local website, government service, geographic location, a country's TLD, or the name of a country.

The UAE and Mexico dominate this list, although other countries are also worth noting, including: Turkey, Israel, Thailand, Qatar, Kenya, Uzbekistan, Mozambique, Morocco, Yemen, Hungary, Saudi Arabia, Nigeria, and Bahrain.



Figure 14: Country theme based on domain name.

Citizen Lab is refraining from publishing a full list of domain names at this time given the possibility that some domains may have been used in legitimate law enforcement operations.

22

# 6. Linking NSO Group Products to the Attack on Mansoor

*In this section, we explain why we believe the attack on Ahmed Mansoor incorporated the use of NSO Group's Pegasus product.  We explain how we connected the domain name in the link that Ahmed Mansoor received, sms.webadv.co, to a network of domain names that we had mapped out while working on the May 2016 Stealth Falcon report (Section 5). We also highlight links to the UAE.*

## 6.1. Spyware Points to NSO Group's Pegasus Solution

The final payload that we identified, test111.tar, contained several files, including **libaudio.dylib**, which appeared to be the base library for call recording, **libimo. dylib**, which appeared to be the library for recording chat messages from apps, and two libraries for WhatsApp and Viber call recording: **libvbcalls.dylib**, and **libwacalls.dylib**.  In each file, we found several hundred strings containing the text "_kPegasusProtocol," the name of NSO Group's solution.

```
_kPegasusProtocolAgentControlElement_iv
_kPegasusProtocolAgentControlElement_key
_kPegasusProtocolAgentControlElement_ciphertext
_kPegasusProtocolProtocolElement_iv
_kPegasusProtocolProtocolElement_key
_kPegasusProtocolProtocolElement_ciphertext
_kPegasusProtocolResponseElement_iv
_kPegasusProtocolResponseElement_key
_kPegasusProtocolResponseElement_ciphertext
```

Figure 15: "Pegasus" strings in the payload.

## 6.2. Historical Scanning Data Connects Mansoor Attack to NSO Group-linked Infrastructure

The links sent to Mansoor used the domain **sms.webadv.co**. The network of 237 live IP addresses we mapped (**Section 5**) included **52.8.153.44**, to which **sms.webadv. co** resolves, and which returns an SSL certificate for **\*.webadv.co**. The 237 IPs also included **52.8.52.166** (**aalaan.tv**) and **162.209.103.68** (**manoraonline.net**), which were the two C2 servers in the spyware used in targeting Mansoor.

However, the 237 IPs and related domain names that we mapped did not provide insight into the identity of the threat actor. The IP addresses all appeared to be associated with cloud VPS providers, which gave no clue as to the identities of

the operators, and the WHOIS information was mostly private. We did note that several domain names had WHOIS registrants based in Israel (e.g., **thainews.asia**, **kenyasms.org**).

We examined historical scanning data to see whether we could attribute the 237 IPs to a threat actor. We noted that at least 19 of these IPs had previously returned a different distinctive Google redirect in response to a "GET /".

```
\xef\xbb\xbf<HTML><HEAD><META HTTP-EQUIV="refresh" CONTENT="0;URL=http://www.
google.com/">\r\n<TITLE></TITLE></HEAD><BODY>\r\n</BODY></HTML>
```

Figure 16: Response to an HTTP GET exhibited by 19 IPs in historical scanning data (note that the first three bytes represent the unicode byte order mark -- BOM).

These 19 IPs included an IP address that (later) resolved to **manoraonline.net**, one of the C2 servers for the spyware sent to Mansoor.

We then searched the same historical data for other IP addresses that matched this same fingerprint. Overall, between October 2013 and September 2014, we identified 83 IPs that matched the fingerprint. We found several IPs of particular interest. The IP address **82.80.202.200** matched our fingerprint from October 2013 until April 2014.

```
HTTP/1.1 200 OK
Content-Type: text/html
Last-Modified: Tue, 04 Jun 2013 15:28:04 GMT
Accept-Ranges: bytes
ETag: "09a91b3861ce1:0"
Server: Microsoft-IIS/7.5
Date: Mon, 28 Oct 2013 21:23:12 GMT
Connection: close
Content-Length: 127
\xef\xbb\xbf<HTML><HEAD><META HTTP-EQUIV="refresh" CONTENT="0;URL=http://www.
google.com/">
<TITLE></TITLE></HEAD><BODY>
</BODY></HTML>
```

The domain name **qaintqa.com** pointed to this IP address at the same time (from April 2013 to April 2016), according to DomainTools. The registrant information for this domain is:

```
Registrant Street:        Medinat Hayehudim 85
Registrant City:          hertzliya
Registrant State/Province: central
Registrant Postal Code:   46766
Registrant Country:       IL
Registrant Phone:         972542228649
Registrant Email:         lidorg@nsogroup.com
```

We also found two other IP addresses of interest that matched the fingerprint: **82.80.202.204** and **54.251.49.214** matched the fingerprint in March 2014.  The former was pointed to by **mail1.nsogroup.com** from 2014-09-24 to 2015-05-06 (PassiveTotal), the latter was pointed to by **nsoqa.com** from 2015-09-01 until present (DomainTools).  Both domains are registered to NSO Group.

Given these findings, we strongly suspected the network of domain names we uncovered was part of an exploit infrastructure for NSO Group's mobile spyware.

## 6.3. Additional UAE Infrastructure

Recall that our first window into this infrastructure came from our Stealth Falcon research, when we identified the **smser.net** domain, fingerprinted it, and traced it to 237 live IP addresses that shared the same characteristics (**Section 5.1**).

Using [PassiveTotal](), we were able to further trace **smser.net** to seven other domains, indicating Stealth Falcon targeting that appeared to use NSO Group's Pegasus solution in Qatar (**ooredoodeals.com**), UAE (**alawaeltech.com**, which [may be a fake mobile phone company based in the Emirate of Ajman]()), and Bahrain (**bahrainsms.co**).  Based on our [previously published research](), we believe there is strong circumstantial evidence to support the conclusion that the operator of Stealth Falcon is connected to an entity within the UAE Government.

We also identified five .ae TLDs that all shared the same registrant name ("Gerald Binord"), which may have been used to target people in the UAE.  We further identified another group of domains including **damanhealth.online** ("Daman Health" is a [UAE-based health insurer]()) and **uaenews.online**, which also included a domain **turkeynewsupdates.com**, suggesting an operator that is targeting both UAE and Turkey targets.

# 7. Evidence of Other Targets

In two cases, Mexico and Kenya, we found evidence of other targets who may have been targeted with NSO Group's Pegasus, based on messages they sent or received containing links that involve domain names we traced to what appears to be a mobile attack infrastructure associated with NSO Group's Pegasus (see **Section 5: Tracking a Mobile Attack Infrastructure**).

# 7.1. Mexico: Politically Motivated Targeting?

In the case of Mexico, one target appears to be the journalist Rafael Cabrera, who recently reported on the *Casa Blanca* controversy, a reported conflict of interest involving the President and First Lady of Mexico.  On August 30, 2015 the journalist Cabrera tweeted that he had received suspicious messages purporting to come from Mexican television station UNO TV.  His tweet included screencaptures of the messages, which said that Mexico's Presidency was considering defamation claims and imprisonment of reporters related to the Casa Blanca report that Cabrera had worked on.



Figure 17: Messages  purporting to come from UNO TV suggesting that a story he was linked to might result in defamation charges or incarceration. Image via Mexican journalist Rafael Cabrera's tweet.

The English translations of the messages are as follows:

UNOTV.COM/ THE PRESIDENT'S OFFICE WILL SUE FOR DEFAMATION THOSE WHO PUBLISH REPORTING ON CASA BLANCA. NOTE: [MALICIOUS LINK]

UNOTV.COM/ ON THE TOPIC OF THE CASA BLANCA, THE PRESIDENCY COULD INCARCERATE REPORTERS WHILE THEY LOOK INTO THE NAMES: [MALICIOUS LINK]

The links in the screenshots expand to **http://fb-accounts.com/1074139s/** and **http://unonoticias.net/3423768s/**.  These match two domain names we linked to the apparent NSO Group infrastructure.  A director at UNO TV responded to Cabrera's Tweet, saying that these were "...not our messages 100%."



Figure 18:  A director from UNO TV states that the suspicious SMS messages sent to Cabrera were not from his company. Image via Twitter.

We were unable to achieve a successful infection from either link sent to Cabrera, presumably because the links were several months old when we found them, and had been clicked on either by Cabrera himself, or by other interested parties who saw Cabrera's tweet.

Continuing our investigation, we made contact with Cabrera and learned that he had been recently targeted with an additional series of messages containing suspicious links.



Figure 19: Additional SMS messages sent to Rafael Cabrera containing links to the exploit infrastructure. Screenshots courtesy of Rafael Cabrera.

The English translations of the messages are as follows (clockwise from top-left):

> Facebook reports efforts to access the account of: Rafael Cabrara. Avoid account blockage, Verify at: [MALICIOUS LINK]
>
> UNOTV.COM/ CARMEN ARISTEGUI MAY RUN AS AN INDEPENDENT CANDIDATE IN 2018. DETAILS: [MALICIOUS LINK]
>
> TELCEL.COM/. DEAR CLIENT WE REMIND YOU THAT YOU HAVE AN OUTSTANDING DEBT OF $8,854.90 IN NATIONAL CURRENCY. TO VERIFY DETAILS [MALICIOUS LINK]
>
> [CL Note: this message contains highly profane sexual taunts, followed by a malicious link]

The fourth message is most noteworthy, as it contained profane and personal sexual taunts, unlike the other messages.  Each of these messages contained a link that would have led, we believe, to the infection of his iPhone with NSO Group's Pegasus spyware via the Trident exploit.

Similar SMS messages have also been reported in other online posts from Mexico.

## 7.2. Kenya: A Tweet Discussing the Opposition

In the case of Kenya, we found a past tweet containing a link to the NSO Group exploit infrastructure from June 3, 2015.  The tweet, sent by a "Senior Research Officer" in the Office of the Senate Minority Leader, references Moses Wetangula, who is the current Minority Leader of Kenya's Senate.



Figure 20: A Kenya-related link to apparent NSO Group infrastructure.

28

# 8. Ahmed Mansoor and Previous UAE Attacks

*In this section, we provide an overview of previous attacks we have documented against Ahmed Mansoor, and other UAE dissidents.  The technical sophistication of previous attacks we observed pales in comparison to the present attack.*

Ahmed Mansoor has been a frequent target of past electronic attacks.  In March 2011, he was targeted with FinFisher spyware disguised as a PDF of a pro-democracy petition he had previously signed.  The spyware arrived in the form of an executable file inside a .rar file attached to an email.  Mansoor noticed that the file was an EXE file rather than a PDF, and did not open it.  Mansoor and four other activists (the "UAE Five") were imprisoned in April 2011, and charged with insulting the leaders of the UAE.  Mansoor and the others were pardoned in November of the same year.

In July of 2012, Ahmed Mansoor's laptop was infected with Hacking Team spyware delivered via a booby-trapped Microsoft Word document exploiting an old Microsoft Office vulnerability, CVE 2010-3333.  The spyware sent information from his computer to a UAE intelligence agency, apparently operating under the auspices of the office of Sheikh Tahnoon bin Zayed al-Nahyan, a son of the founder of the UAE, and now the UAE Deputy National Security Advisor.  Attackers broke into Mansoor's email account shortly after the infection.  We assisted Mansoor in recovering from the attack.  Another UAE-based human rights activist, and a UAE-based journalist were also targeted in the same operation.

In early 2013, Mansoor was sent a link to a website that attempted to install spyware on his computer by exploiting a public Java vulnerability for which no patch had yet been issued.  He realized the link was suspicious and did not click on it.  Throughout 2013 and 2014, Mansoor was unsuccessfully targeted several times with spyware, mostly XTremeRAT, SpyNet RAT, and njRAT delivered as executable files in attachments or through Google Drive links.  In 2014, Mansoor's Twitter account was hacked.

In a campaign stretching from 2012 until 2016, UAE dissidents at home and abroad were targeted by Stealth Falcon, an attacker likely linked to a UAE government agency.  Stealth Falcon sent out links involving a fake URL shortener that employed Javascript to profile targets' computers, checked which antivirus programs they had installed, and attempted to deanonymize them if they were using Tor.  Stealth Falcon also sent out Microsoft Word documents containing custom spyware that was

installed if a user enabled macros.  Targets included five dissidents who were later arrested or convicted in absentia, as well as Rori Donaghy, a UK-based journalist who had been publishing articles about leaked emails involving members of the UAE government.

# 9. Conclusion

In this report, we identify a highly technically sophisticated attack involving a zero-day iPhone remote jailbreak -- Trident -- which installs spyware on a phone whose user clicks just once on a malicious link.  We connected the attack to NSO Group's Pegasus spyware suite, sold exclusively to government agencies by Israel-based NSO Group.  We made the connection based on our previous work tracing a group of servers that appeared to be part of an infrastructure for attacking mobile phones.  Long before Ahmed Mansoor had forwarded us any suspicious links he received, we had mapped out a set of 237 servers (**Section 5**), and linked this set to NSO Group (**Section 6**).  When Mansoor sent us screencaptures of the SMS messages containing the links, we immediately matched the links' domain name to our list of suspected servers associated with NSO Group's Pegasus.

We visited the links Mansoor sent us from a colleague's factory-reset stock iPhone, and managed to capture the exploits and payload, as the phone was infected.  We shared these artifacts with Lookout to gain more insight into the technical capabilities of the exploits and spyware, and with Apple as part of a responsible disclosure process.  Apple has been highly responsive, and has worked very quickly to develop and issue a patch in the form of iOS 9.3.5, approximately 10 days after our initial report to them.  Once an iPhone is updated to this most recent version, it will be immediately protected against the Trident exploit chain used in this attack.  While we assume that NSO Group and others will continue to develop replacements for the Trident, we hope that our experience encourages other researchers to promptly and responsibly disclose such vulnerabilities to Apple and to other vendors.

> **What Can You Do?**
>
> All iPhone owners should update to the latest version of iOS (9.3.5) immediately. If you're unsure what version you're running, you can check it yourself by tapping **Settings** > **General** > **About** > **Version**.

Citizen Lab agrees with Apple that users should avoid opening or downloading items from messages and websites unless they are certain that they come from a legitimate, trusted source. If you uncertain about the source, you should not click the link or open the file. If you believe you have been the victim of a targeted attack, should consider sharing it with a trusted expert. If you suspect you have been the target of this attack, please contact the Citizen Lab at **info@citizenlab.org**.

Zero-day exploits are expensive and rare, especially one-click remote jailbreak exploits for iPhones, like the Trident.  Such exploits can fetch hundreds of thousands or even a million dollars.  While Citizen Lab research has shown that many state-sponsored spyware campaigns against civil society groups and human rights defenders use "just enough" technical sophistication, coupled with carefully planned deception, the attack on Mansoor demonstrates that not all threats follow this pattern.

This is the third time Mansoor has been targeted with "lawful intercept" spyware; Mansoor was targeted in 2011 with spyware from FinFisher (based in Germany and the UK), in 2012 with spyware from Hacking Team (based in Italy), and now in 2016 with what appears to be spyware from NSO Group (based in Israel and reportedly owned by a US firm).  That the companies whose spyware was used to target Mansoor are all owned and operated from democracies speaks volumes about the lack of accountability and effective regulation in the cross-border commercial spyware trade.

While these spyware tools are developed in democracies, they continue to be sold to countries with notorious records of abusive targeting of human rights defenders. Such sales occur despite the existence of applicable export controls.  For example, Israel's export regime incorporates the dual-use technology controls of the Wassenaar Arrangement, including those related to "intrusion software." As such, NSO Group would presumably be required to obtain a license to export its products to the UAE.  If NSO Group did submit a license application, the human rights abuses perpetrated by the UAE, including the misuse of "lawful intercept" capabilities, must not have outweighed authorities' other motivations to approve the export.

Clearly, additional legal and regulatory scrutiny of the the "lawful intercept" market, and of NSO Group's activities in relation to the attacks we have described, is essential. Citizen Lab and others have repeatedly demonstrated that advanced

"lawful intercept" spyware enables some governments and agencies, especially those operating without strong oversight, to target and harass journalists, activists and human rights workers. If spyware companies are unwilling to recognize the role that their products play in undermining human rights, or address these urgent concerns, they will continue to strengthen the case for further intervention by governments and other stakeholders.

**Note**: We are not releasing the malicious files at this time to protect the integrity of ongoing investigations.

# Disclosure Timeline

Citizen Lab researchers received the initial suspicious link on August 10th 2016, and, shortly thereafter, contacted Lookout Security. After both teams confirmed the presence of a remote jailbreak we initiated a responsible disclosure process and contacted Apple on August 15th.

Teams from Citizen Lab and Lookout continued our analysis until the public release of iOS 9.3.5 by Apple, which closes the vulnerabilities that we disclosed.

# EXHIBIT P

 (https://citizenlab.ca)



# New York Times Front Page Coverage of Reckless Exploit

**By Miles Kenyon (https://citizenlab.ca/author/miles/)**    June 19, 2017

On June 19, 2017 Citizen Lab's Reckless Exploit (https://citizenlab.ca/2017/06/reckless-exploit-mexico-nso/) report received front page coverage on the New York Times. This research revealed that Mexican journalists and lawyers were the targets of sophisticated phishing attempts, using government-exclusive spyware produced by the NSO Group. This work was done in partnership with R3D (https://r3d.mx/), SocialTic (https://socialtic.org/), and Article 19 (https://articulo19.org/).

Privacy Policy (https://citizenlab.ca/privacy/)

Unless otherwise noted this site and its contents are licensed under a Creative Commons Attribution 2.5 Canada (https://creativecommons.org/licenses/by/2.5/ca/) license.

(http://munkschool.utoronto.ca/)

# RECKLESS EXPLOIT

## Mexican Journalists, Lawyers, and a Child Targeted with NSO Spyware

By John Scott-Railton, Bill Marczak, Bahr Abdul Razzak, Masashi Crete-Nishihata, and Ron Deibert

JUNE 19, 2017
RESEARCH REPORT #93





# Copyright

© The Citizen Lab



Licensed under the Creative Commons BY-SA 4.0 (Attribution-ShareAlike licence). Electronic version first published in 2017 by the Citizen Lab. This work can be accessed through https://citizenlab.ca/2017/06/reckless-exploit-mexico-nso/.

Document Version: 1.0

The Creative Commons Attribution-ShareAlike 4.0 license under which this report is licensed lets you freely copy, distribute, remix, transform, and build on it, as long as you:
- give appropriate credit;
- indicate whether you made changes; and
- use and link to the same CC BY-SA 4.0 licence.

However, any rights in excerpts reproduced in this report remain with their respective authors; and any rights in brand and product names and associated logos remain with their respective owners. Uses of these that are protected by copyright or trademark rights require the rightsholder's prior written agreement.

# Suggested Citation

John Scott-Railton, Bill Marczak, Bahr Abdul Razzak, Masashi Crete-Nishihata, and Ron Deibert. "Reckless Exploit: Mexican Journalists, Lawyers, and a Child Targeted with NSO Spyware," Citizen Lab Research Report No. 93, University of Toronto, June 2017.

## Acknowledgements

We thank the targets of these infection attempts who accepted to share their cases with the collaborating organizations, and with the public.

Citizen lab would like to thank the collaborating organizations including R3D, SocialTic and Article19, for their careful and important investigative work. Without their assistance, this report would not have been possible

We would like to especially thank and highlight the contribution of Luis Fernando García of R3D for his support of our investigation.

We thank Access Now, especially their Help Line team, and Amnesty International for assistance compiling evidence, and ensuring that the initial NSO case in Mexico came to our attention. With special thanks to Claudio Guarnieri, Senior Technologist at Amnesty International, and Co-Founder of Security Without Borders.

Thanks to the whole Citizen lab team, especially: Amitpal Singh, Irene Poetranto, Adam Senft, Adam Hulcoop.

## About the Citizen Lab, Munk School of Global Affairs and Public Policy, University of Toronto

**The Citizen Lab** is an interdisciplinary laboratory based at the Munk School of Global Affairs and Public Policy, University of Toronto, focusing on research, development, and high-level strategic policy and legal engagement at the intersection of information and communication technologies, human rights, and global security.

We use a "mixed methods" approach to research that combines methods from political science, law, computer science, and area studies. Our research includes investigating digital espionage against civil society, documenting Internet filtering and other technologies and practices that impact freedom of expression online, analyzing privacy, security, and information controls of popular applications, and examining transparency and accountability mechanisms relevant to the relationship between corporations and state agencies regarding personal data and other surveillance activities.

# Contents

**Key Findings**                                                                     **6**

**Summary**                                                                          **7**

**Background**                                                                       **9**

    **NSO's Spyware**                                            **9**

      NSO's Claims of Due Diligence & Lawful Use       10

    **Journalism Under Threat in Mexico**                        **11**

    **The Investigation**                                        **12**

**Part 1: The Targets**                                                              **12**

    **Targeted Journalists**                                     **13**

      Targets: Aristegui Noticias                      13

      Special Note: Targeting Mother and Child         14

      Target: Carlos Loret de Mola                     15

      Targets: Mexicanos Contra la Corrupción y la Impunidad (MCCI)    17

    **Civil Society Groups**                                     **17**

      Targeted Org: Centro Miguel Agustín Pro Juárez   18

      Targeted Org: Mexican institute for Competitiveness    18

**Part 2: Reckless Infection Attempts**                                              **19**

    **Infection Attempts Against A Minor in the United States**  **19**

    **Impersonating the United States Embassy in Mexico**        **20**

    **Fake Amber Alerts**                                        **20**

    **Messages related to personal safety**                      **21**

    **Upsetting Personal Messages**                              **22**

    **Urgent Work-related messages**                             **22**

    **Financial Concerns**                                       **23**

**Part 3: Connecting the SMSes to NSO Exploit Infrastructure**                       **23**

**Part 4: Discussion**                                                               **25**

    **Digital Targeting Mirrors Physical Risks to Journalists**  **25**

    **Reckless Targeting**                                       **25**

    **Lack of Oversight and Accountability**                     **26**

**Conclusion: The "Principle of Misuse"**                                            **27**

**Appendix A: Full Message List**                                                    **29**

## This report is Part 2 of a series on the abuse of NSO Group's spyware in Mexico

Part 1: Bittersweet: Supporters of Mexico's Soda Tax Targeted With NSO Exploit Links

**Part 2: Reckless Exploit: Mexican Journalists, Lawyers, and a Child Targeted with NSO Spyware**

Part 3: Reckless Redux: Senior Mexican Legislators and Politicians Targeted with NSO Spyware

Part 4: Reckless III: Investigation Into Mexican Mass Disappearance Targeted with NSO Spyware

Part 5: Reckless IV: Lawyers For Murdered Mexican Women's Families Targeted with NSO Spyware

Part 6: Reckless V: Director of Mexican Anti-Corruption Group Targeted with NSO Group's Spyware

Part 7: Reckless VI: Mexican Journalists Investigating Cartels Targeted with NSO Spyware Following Assassination of Colleague

Part 8: Reckless VII: Wife of Journalist Slain in Cartel-Linked Killing Targeted with NSO Group's Spyware

Update (Monday June 19 2017): According to a recent report, NSO Group may be re-branding itself as "Q Cyber Technologies" or "Q."

# Key Findings

> Over 76 messages with links to NSO Group's exploit framework were sent to Mexican journalists, lawyers, and a minor child (NSO Group is a self-described "cyber warfare" company that sells government-exclusive spyware).

> The targets were working on a range of issues that include investigations of corruption by the Mexican President, and the participation of Mexico's Federal authorities in human rights abuses.

> Some of the messages impersonated the Embassy of the United States of America to Mexico, others masqueraded as emergency AMBER Alerts about abducted children.

> At least one target, the minor child of a target, was sent infection attempts, including a communication impersonating the United States Government, while physically located in the United States.

# Summary

In the past five years it has become increasingly clear that civil society is under threat from the misuse of powerful spyware tools exclusively sold to governments. Research has repeatedly shown how governments around the world use digital spying tools designed for criminal investigations and counterintelligence to target journalists, human rights defenders, and others.

In August 2016, Citizen Lab released a report uncovering how United Arab Emirates (UAE) activist Ahmed Mansoor was targeted with "Pegasus" (sophisticated government-exclusive spyware) and "The Trident" (a chain of iOS zero day exploits) designed to infect his iPhone 6 via a malicious link in an SMS text message. We attributed Pegasus and The Trident exploit chain to an Israel-based "cyber warfare" company, NSO Group.

In February 2017 Citizen Lab, with assistance of Mexican non-governmental organizations (NGOs) R3D and SocialTic, documented how Mexican government food scientists, health, and consumer advocates also received links to infrastructure that we connected to NSO Group. We suspect that the links were designed to install Pegasus on their phones.



Figure 1: Selected Mexican NSO Targets in media, human rights and anti corruption advocacy, and public health.

This report expands the Mexican investigation and shows how 10 Mexican journalists and human rights defenders, one minor child, and one United States citizen, were targeted with NSO's Exploit Framework. Our investigation was conducted with the collaboration and assistance of R3D, SocialTic and Article 19. With their assistance, we have confirmed over 76 additional messages containing NSO exploit links. They are co-publishing an extensive investigation (in Spanish).

The targets share a basic connection: they have been involved in investigating or working on reports of high-level official corruption, or government involvement in

human rights abuses. The infection attempts often coincided with work on specific high-profile investigations and sensitive issues between January 2015 and August 2016, at which time our previous report likely led to the shutdown of the operations.

The targets received SMS messages that included links to NSO exploits paired with troubling personal and sexual taunts, messages impersonating official communications by the Embassy of the United States in Mexico, fake AMBER Alerts, warnings of kidnappings, and other threats. The operation also included more mundane tactics, such as messages sending fake bills for phone services and sex-lines. Some targets only received a handful of texts, while others were barraged with dozens of messages over more than one and a half years. A majority of the infection attempts, however, took place during two periods: August 2015 and April-July 2016 (See: Figure 2).



Figure 2: Timeline of receipt of SMSes with NSO Exploit Links

The timeline shows at least two periods of intense targeting that our collaborators have connected to key events in Mexican politics.

- **Period 1 (August 2015)** During this period the Mexican President was officially exonerated for his role in the "Casa Blanca" scandal on which Carmen Aristegui had first reported, and Carlos Loret de Mola was questioning the government's role in extrajudicial killings.

- **Period 2 (April- July 2016):** A range of key events concerning revelations of government involvement in human rights abuses and extra-judicial killings, and questions around official accounts happened during this time frame. Revelations of bribery and counter-lawsuits, and lawmaking around corruption and government accountability also occurred around this period.

Even more disturbing, we have determined that the minor child of at least one target was also sent upsetting messages with NSO exploit links, presumably in attempt to spy on the child's mother. In addition, at least one target was located within the United States during some of infection attempts.

The NSO Group, which is reportedly being offered for sale at a price of one billion dollars, claims that its products are restricted "to authorized government agencies." We have no conclusive evidence attributing these messages to specific government agencies in Mexico. However, circumstantial evidence suggests that one or more governmental of NSO's government customers in Mexico are the likely operators.

- The infrastructure and SMS content is exclusively Mexico specific
- Targets work on domestic issues of immediate concern to powerful Mexican interests, and the governmen
- Multiple government agencies in Mexico are reportedly NSO customers

Regardless of the specific client, however, the cases we outline here provide evidence that clearly shows the lack of oversight and the misuse potential of NSO Group's products, and of "government-exclusive" spyware more generally.

# Background

This section provides background on the NSO Group and its spyware suite, threats faced by journalists in Mexico, and our investigation.

## NSO's Spyware

The NSO Group is an Israel-based company that sells remote intrusion solutions to governments. NSO markets their product, known as Pegasus, as a fully featured tool to remotely compromise and then monitor mobile phones of all popular operating systems.

To remotely compromise phones, NSO's government customers trick targets to click on a link. When the link is clicked, the phone visits a server that checks the handset model (iPhone, Android, etc) and then sends the phone a remote exploit for its operating system. These servers are part of what we call NSO's Exploit Framework.



Figure 3: NSO's Exploit Framework [Source: Hacking Team E-mails]

In 2016, when human rights defender Ahmed Mansoor was sent messages with links to NSO's Exploit Framework he provided the messages to Citizen Lab. When we clicked on the messages in a controlled environment, we observed a chain of three zero day exploits used to remotely jailbreak and infect the phone with NSO's Pegasus spyware. In 2017, Lookout and Google released details on an Android version of Pegasus.

Once infected, a phone becomes a digital spy in the pocket of a victim, fully under the control of the operator. An infected phone can be configured to report back all activities on the device, from messages and calls (even those via end-to-end-encrypted messaging apps), to recording audio and taking pictures.

## NSO's Claims of Due Diligence & Lawful Use

In response to prior Citizen Lab reporting, NSO has claimed that "their mission is to help make the world a safer place, by providing authorized governments with technology that helps them combat terror and crime." The company claimed that it "fully complies with strict export control laws and regulations." Implying that they have limited ability to see exactly how their product is used, NSO Group stated that "the company does NOT operate any of its systems." Furthermore, NSO Group claims that its "products may only be used for the prevention and investigation of crimes."

NSO's mission is to help make the world a safer place, by providing authorized governments with technology that helps them combat terror and crime.

The company sells only to authorized governmental agencies, and fully complies with strict export control laws and regulations.  Moreover, the company does NOT operate any of its systems; it is strictly a technology company.

The agreements signed with the company's customers require that the company's products only be used in a lawful manner.   Specifically, the products may only be used for the prevention and investigation of crimes.

The company has no knowledge of and cannot confirm the specific cases mentioned in your inquiry.

Figure 4: NSO Group's Claims of Oversight [Source]

Despite these claims, Citizen Lab has repeatedly uncovered abuses of NSO's spyware, demonstrating a failure to control the end-uses of their products. The misuse of NSO's products is part of a larger problem, abuse of government-exclusive spyware to target individuals and organizations who are neither criminal, nor terrorists, but members of civil society. In our previous investigation of NSO use in Mexico we found targeting of civil society even included scientists. It is also worth noting that for many authoritarian or otherwise democratically-challenged governments, what constitutes a "crime" can be very broad, and include any activity that challenges powerful elites. The infection attempts against investigative journalists and civil society members in Mexico that we outline here is a case in point.

## Journalism Under Threat in Mexico

Mexico is one of the most dangerous places in the world for journalists. Reporters covering sensitive issues often face threats of kidnapping, intimidation, or physical violence as a result of their work. Mexican organized criminal groups are responsible for much of this violence. However, according to a recent report from human rights group Article 19, at least 53% of the 426 acts of violence and intimidation against journalists in 2016 were linked to officials. The report also found that virtually none of these actions resulted in legal consequences for the aggressor. In spite of these risks, reporters and editors continue to report on important issues, including corruption at the highest levels of the country. Reporters working on these topics often face threats in an attempt to intimidate them into silence.

Many Mexican journalists have stated their belief that their communications are monitored by elements within the Mexican government and security services. Prior Citizen Lab research on NSO group also included an example of a targeted Mexican journalist (Rafael Cabrera). In another case indicating surreptitious monitoring, a recording of a private phone call between Santiago Aguirre and the parent of one

of the victims of the Iguala Mass Disappearance appeared online. Aguirre is one of the targets of infection attempts using NSO exploit links that we examine here.

While these cases provide indications that Mexican journalists are under digital surveillance, their clandestine nature can make them hard to document. This report, and corresponding reporting by R3D, Social Tic, and Article 19, provide the clearest evidence yet that government-exclusive spyware is being used in an effort to infect and monitor Mexican journalists.

## The Investigation

We worked closely with Mexican NGOs R3D, SocialTic, and Article 19 to collect a large number of suspect text messages sent to journalists and members of civil society. We then compared the ultimate destination of the links with known NSO exploit servers. At the time of writing, we have collected over 76 confirmed (and previously unreported) messages sent to 11 targets. All of the targets described in this report have consented to be named. However, the text content of several messages have been redacted because of the personal or confidential information they contain.

This report includes four parts:

- **Part 1: The Targets** Describes 11 individuals targeted over a period of more than one and a half years with SMS messages containing links to NSO's Exploit Framework.

- **Part 2: Reckless Infection Attempts** Details the reckless characteristics of the infection attempts against journalists and other targets.

- **Part 3: Connecting the SMSes to NSO Exploit Infrastructure** Analyzes the connection between the SMS messages sent to the targets and server infrastructure used to operate NSO exploits.

- **Part 4: Discussion** Discusses the implications of such a reckless approach to infection attempts, and the apparent lack of oversight in the Mexican case.

# Part 1: The Targets

Six Mexican journalists and television personalities received text messages with NSO links. The minor child of one journalist was also targeted. Five members of

Mexican nongovernmental organizations also received such messages. The targets range across Mexico's political spectrum, and paint a picture of an effort to track key figures in Mexican media.

The targeting described in this report took place between January 2015 and August 2016. In the following sections, we detail the targeting of journalists and civil society groups.

# Targeted Journalists

Television personality and investigative journalist Carmen Aristegui, along with her son Emilio Aristegui (a minor), were the most heavily targeted individuals we identified. Other media targets include several journalists working with *Aristegui Noticias* (a well known Mexican news organization that emphasizes independent, investigative journalism), including Rafael Cabrera and Sebastián Barragán. From a more mainstream media direction, *Televisa* anchor Carlos Loret de Mola, was also extensively targeted. In addition, Salvador Camarena and Daniel Lizárraga, both journalists specializing in investigating corruption with [Mexicanos Contra la Corrupción y la Impunidad](#) (MCCI: Mexicans Against Corruption and Impunity), were also targeted with infection attempts. Both Camarena and Lizárraga had previously collaborated with *Aristegui Noticias*.

## Targets: Aristegui Noticias

In the past several years, *Aristegui Noticias* has been heavily involved in major investigations. In the original [Citizen Lab report on NSO Group](#), we presented evidence that journalist Rafael Cabrera (a reporter with *Aristegui Noticias*, and now *BuzzFeed*) was targeted with NSO exploit links. We now know that his colleagues Sebastián Barragán and Carmen Aristegui were also among the targets.



Figure 5: Aristegui Noticias Journalists and a minor child targeted with NSO exploit links.  Note: Rafael Cabrera now works with BuzzFeed.

*Aristegui Noticias* has conducted several investigations of corrupt practices among Mexican officials. However, the timeline of targeting with NSO links corresponds to their work on the so-called "Casa Blanca scandal".

The scandal, which was first reported on by *Aristegui Noticias*, concerns a luxurious house provided to the Mexican President Peña Nieto's wife, but paid for by the subsidiary of a Mexican company (Groupo Higa, which is led by a friend of the President, and linked to a consortium of Chinese investors). Groupo Higa was given a series of highly lucrative contracts during the period when Peña was governor of the State of Mexico. After the scandal broke, the Mexican Federal government made the unusual step of rescinding the contracts.

While three individuals working with *Aristegui Noticias* were targeted during the period, Carmen Aristegui (see above) and her son were the most heavily targeted with infection attempts.

The messages targeting *Aristegui Noticias* reporters were exceptionally varied, and covered all of the themes highlighted in **Section 3**.

## Special Note: Targeting Mother and Child

On January 12 2015, Carmen Aristegui received a text message saying that the "previous message was not sent" along with a link that led to NSO Group's Exploit Framework. Over the next year and a half, Aristegui received a further 25 messages that included NSO links purporting to come from: the US Embassy in Mexico, Amber Alerts, colleagues, people in her personal life, her bank, phone company, and notifications of kidnappings.

Emilio Aristegui, Aristegui's son, who was a minor when the messages were sent, was also intensively targeted. Emilio was located within the United States when he was targeted with many of these infection attempts.

We confirmed that over 21 messages with NSO exploit links were sent Emilio Aristegui. A further set were not confirmed as we were unable to view the original links, but are highly suspect as they used language found in other targeting, or came from the same phone number as NSO exploit link messages. Some of these infection attempts contained crude sexual taunts, others impersonated the United States' Embassy, or his mother's reporting and activities.



Figure 6: Targeting of Carmen Arístegui and her son Emilio

After heavily targeting Carmen Arístegui for more than a year, in March 2016 the operators appear to cease targeting her and instead focus their efforts on her son, Emilio (See: Figure 6). The infection attempts then focus on Emilio Arístegui for approximately three months, before returning to target both mother and son in June 2016. In July 2016, the operators alternate between targets every one to three days (see Figure 6).

We speculate that this "off center" targeting was an attempt to indirectly monitor Emilio Arístegui's mother Carmen. **This is the first example of which we are aware of a minor being targeted with infection attempts using governmental spyware.** Moreover, as we discuss below, sending Emilio Arístegui a message impersonating a United States Government communication while he was located in the United States may have violated US Law.

## Target: Carlos Loret de Mola

Carlos Loret de Mola is a well known journalist and on-air personality for the Mexican national television channel *Televisa*. The NSO messages first arrived in August 2015 during a period when he was covering a massacre that took place on May 22, 2015 at a farm known as "Rancho El Sol" in western Mexico. Loret was reporting on the possible involvement and subsequent cover up of elements of the Mexican Federal government in the disappearance of 42 persons that took place at Rancho El Sol.

On August 8, 2015, Loret published an article in which he claimed new evidence from the Mexican Federal Public Prosecutor's Office contradicted official claims at the time of the massacre, and showed Mexican security forces had actually committed extrajudicial killings. Many of the victims were killed with point-blank gunshot wounds to the back of their heads.

15



Figure 7: Televisa Journalist Carlos Loret de Mola targeted with NSO exploit links

On August 20, 2015, Loret received the following SMS message purporting to be from the US Embassy involving issues with his visa application.

| | |
|---|---|
| USEMBASSY.GOV/ DETECTAMOS UN PROBLEMA CON TU VISA POR FAVOR ACUDE PRONTAMENTE A LA EMBAJADA. VER DETALLES: [exploit link] | USEMBASSY.GOV/ WE DETECTED A PROBLEM WITH YOUR VISA PLEASE GO PROMPTLY TO THE EMBASSY. SEE DETAILS [exploit link] |

On August 29, 2016, Loret then received another SMS message, this time claiming that he was being watched by people in a suspicious van. The SMS included a link to what was purported to be pictures of the van:

| | |
|---|---|
| estas personas vinieron preguntando por usted vienen en camioneta sin placas tome foto los conoce? mire [exploit link] | these people came asking for you they come in a van without license plates i took a picture do you know them? look:[exploit link] |

From September 1 to September 6, 2015 Loret then received a further four messages with topics ranging from AMBER Alerts, service charges, to pictures of alleged rumours being spread of Loret. On March 5, 2016, Loret then received another SMS message with links to NSO infrastructure, this time with a message about the supposed death of a friend's father and the funeral details:

| | |
|---|---|
| Loret hoy fallecio mi padre estamos devastados envio datos del velatorio espero contar contigo mau[exploit link] | Loret my father died today and we are devastated I am sending you the dates for the wake I hope I can count on you mau [exploit link] |

As we detailed in our prior research, similar text messages with details of a supposed "father's death" with links to NSO infrastructure were received on July 8, 2016 by Mexican health advocate Alejandro Calvillo, and on July 13, 2016 by the Mexican health scientist Dr. Simon Barquera.

16

Finally, on April 20, 2016, Loret received another SMS message with links purporting to show inappropriate behavior:

| | |
|---|---|
| Querido Loret, fíjate que tvnotas tiene fotos tuyas donde estas con una chava cenando. Dales una checada:[exploit link] | Dear Loret, look that tvnotas has photos of you in which you are dining with a chick. Look at them:[exploit link] |

## Targets: Mexicanos Contra la Corrupción y la Impunidad (MCCI)

Shortly after Mexicanos Contra la Corrupción y la Impunidad (MCCI: Mexicans against Corruption and Impunity) was founded, Salvador Camarena and Daniel Lizárraga received text messages containing links to NSO's Exploit Framework.



Figure 8: *Mexicanos Contra la Corrupción y la Impunidad* Journalists targeted with NSO exploit links.

During the period of the targeting, Camarena and Lizárraga were working on topics that included the Panama Papers, and investigating evidence of offshore holdings linked to corrupt officials and prominent individuals in Mexico.

# Civil Society Groups

Staff and directors of two Mexican civil society organizations were also targeted using NSO exploit links: Centro Miguel Agustín Pro Juárez (Centro PRODH) and the Mexican institute for Competitiveness (IMCO).

## Targeted Org: Centro Miguel Agustín Pro Juárez

Centro PRODH is a Mexican human rights and legal aid organization. At the time of targeting with NSO exploit links they were representing the families of the 43 students disappeared in the Iguala Forced Disappearance case. The attempts at infection took place shortly before the public announcement of an investigation that cast doubt on an official account of the events.



Figure 9: *Centro PRODH* Director and staff targeted with NSO exploit links

Targets at Centro PRODH included their Director Mario Patrón as well as Stephanie Brewer and Santiago Aguirre. Patrón and Aguirre are Mexican citizens, Brewer is a United States citizen.

There is public evidence suggesting the monitoring of Centro PRODH communications, and these individuals in particular. Audio from a purported phone call between Santiago Aguirre and the parent of one of the victims of the Iguala Forced Disappearance was released in Mexican media as a video. The same video included audio of another lawyer working with the families, and seemed intended to impugn the character of the lawyer.

## Targeted Org: Mexican institute for Competitiveness

The Mexican Institute for Competitiveness is a Mexican NGO that works on supporting economic competitiveness. Legislative and policy engagement and activism around anti-corruption form a core part of their work.

From December 21 2015 to May 18 2016, IMCO staff Juan Pardinas and Alexandra Zapata received four messages containing NSO links.



Figure 10: IMCO Director and an investigator targeted with NSO exploit links

Message themes included fake news updates of stories about corruption within IMCO, messages referring to other IMCO staff, a warning of armed men outside a house, and a message about a fictitious death.

# Part 2: Reckless Infection Attempts

The journalists and human rights defenders targeted for infection with NSO links were sent a wide variety of messages designed to trick them into clicking, and being infected. Some of the tactics used by the operators are common, such as using alarming false notifications, offers of enticing information, and other personal content. What sets this targeting apart is the reckless and brazen nature of some of the lures, such as impersonating the United States Embassy. The targeting also used sexual themes and taunts, which we also highlighted in previous reporting on Mexican government food scientists, health, and consumer advocates targeted with NSO spyware.

## Infection Attempts Against A Minor in the United States

Emilio Aristegui was a minor at the time that many of the messages were sent and received. He was also residing in the United States. On June 3rd, 2016, Emilio received a message purporting to come from the US Embassy in Mexico, concerning the status of his visa (See: Figure 11). The message was sent from a Mexican number to a phone located in the US. While his mother Carmen Aristegui, and Carlos Mola also received similar messages in 2015, the fact that the message, among others, was sent to someone in the US may have violated US law (See Section 4: Reckless Targeting).

## Impersonating the United States Embassy in Mexico

On August 20, 2015, journalists Carlos Loret de Mola and Carmen Aristegui separately received alarming messages from the US Embassy in Mexico. The messages claimed that there were problems with their United States visas, and advised them to go to the US Embassy immediately.



Figure 11: Messages impersonating the United States Embassy in Mexico

The messages were fakes, and contained links to the NSO Group's Exploit Framework. Impersonating official communications from the United States Embassy is an alarming precedent, and suggests that the NSO customer had little concern for the possibility of violating diplomatic norms, such as not impersonating foreign consular activities.

## Fake Amber Alerts

On August 24, 2015 journalist Carmen Aristegui received a message purporting to be an AMBER Alert (an emergency broadcast) about the kidnapping of a nine year old boy. On September 29, 2015 another journalist, Carlos Loret de Mola, also received a fake Amber Alert, this time referring to a missing university student. By impersonating Amber Alert, the operators of the NSO deployment run the risk of sowing suspicion around real alerts, with potential consequences for actual kidnapped children.

20



Figure 12: Fake Amber Alerts with NSO exploit links

# Messages related to personal safety

Several journalist received messages purportedly warning them about threats to their personal safety. On August 29, 2015, journalist Carlos Loret de Mola received a message claiming that a group of people had come looking for him in a van with a purported link to a picture of the van. Human rights defender Juan Pardinas received a message on December 24, 2015 warning him that two armed men were waiting for him in a van at his house. On May 25, 2016 Salvador Camarena received a similar message, referring to a group of people conducting surveillance of his house. These messages appear to play on concerns for personal safety and the physical threats that journalists face in Mexico.



Figure 13: Upsetting messages about personal safety

# Upsetting Personal Messages

The operators use a variety personal and upsetting themes in their messages. Many of the messages were sexual in tone, suggesting a preference for the theme on the part of the NSO customer. Themes of the messages included:

- Crude sexual taunts and accusations

- Promises of nude pictures of a partner or spouse

- Fake stories about leaks of affairs and leaked sexual videos

- Death or loss of family members, strangers

These messages are clearly attempts to play on the emotions of the target intensified by reference to family members and partners. For example, journalists Rafael Cabrera & Salvador Camarena each separately received an identical message on the exact same day purporting to show someone having sex with their spouses.



Figure 14: Upsetting sexual taunts

# Urgent Work-related messages

Messages included urgent notifications of workplace issues including:

- Notifications of kidnappings of colleagues

- Breaking news about major issues

- Notifications of website errors

- Notifications of defamation lawsuits

Not all of the work related messages were so urgent. On June 8 and 28, 2016, human rights defender Santiago Aguirre received messages asking him to comment on the thesis of a student that was supposedly was based on Aguirre's own dissertation. Aguirre is also an instructor, and it would not be uncommon to receive such messages.



Figure 15: Urgent work-related messages sent to Carmen Aristegui

## Financial Concerns

The operators made frequent use of fake bills and other concerns to get the attention of their target including:

- A fake phone bill

- Fake credit card purchase notifications

- Fake phone sex billing notifications

These messages reflect more conventional social engineering approaches.

# Part 3: Connecting the SMSes to NSO Exploit Infrastructure

In our prior investigation of NSO targeting against Ahmed Mansoor, we scanned the Internet looking for NSO Group's exploit domain names. The targets discussed in this report were sent messages pointing to domains on this previously identified

list. In total, we identified 10 NSO exploit domains used in the targeting:

| NSO Exploit Domain | Messages |
| --- | --- |
| secure-access10[.]mx | 3 |
| network190[.]com | 3 |
| iusacell-movil[.]com.mx | 2 |
| mymensaje-sms[.]com | 1 |
| smscentro[.]com | 1 |
| unonoticias[.]net | 27 |
| fb-accounts[.]com | 5 |
| smsmensaje[.]mx | 31 |
| ideas-telcel.com[.]mx | 5 |
| twiitter.com[.]mx | 1 |

Figure 17 shows the connection between these domains and messages sent to targets in Mexico.



Figure 17: NSO Exploit Domains and Targets

Importantly, we are unsure whether the domains were all used by a single government operator, or reflect targeting by multiple government operators.

Interestingly, some of the earliest NSO Group exploit domains first served their exploits over HTTP rather than HTTPS. If NSO was using zero-day exploits at this time, their exploits may have been exposed to interception by third parties with visibility over the network traffic through which such exploits passed.

# Part 4: Discussion

## Digital Targeting Mirrors Physical Risks to Journalists

The physical threats journalists face in Mexico as a result of their work are well documented. Our investigation makes it clear that these threats extend to the digital realm. In the cases we describe in this report, the text messages included violent taunts and threats reflecting the pervasiveness of physical threats that Mexican media face. There were at least 426 documented attacks and incidents of intimidation against Mexican journalists in 2016 and more than half of them had an official origin.

The digital targeting that we describe compounds physical threats and harassment in several ways. Many of the journalists and civil society members who were targeted with infection attempts using NSO links, and their colleagues, were similarly targeted for other forms of harassment, and intimidation.

## Reckless Targeting

A feature of the Mexican case that bears special discussion is the intensity of the targeting with NSO links, as well as the often extreme content of the messages.

NSO's Pegasus solution is designed for surreptitious monitoring of phones. Getting a victim to click and then remain infected without raising suspicion is a delicate task. Contrary to this imperative, the entities operating NSO products in this case were, at best, using the tool for something closer to a digital smash-and-grab operation: the messages were both brazen and extremely obvious. Not only did most of the messages use deceptions that were easy to falsify, but the Mexican operators show a recurring preference for crude, sexual taunts, as we have noted in both prior reports. Someone clicking on them would be likely to almost immediately recognize their mistake.

The recklessness of the operation extends to impersonating official programs and entities including AMBER Alerts and the United States Embassy in Mexico, which can trigger negative consequences. Creating fake malicious AMBER Alerts threatens to reduce the credibility of real AMBER Alerts. Meanwhile, impersonating messages

from the United States Embassy runs the risk of violating diplomatic norms, and upsetting a major ally and trading partner. Were these messages sent to lower-profile private individuals, the ruse may never have been discovered. But instead, the messages were sent to very high profile and well known journalists, increasing the likelihood of discovery.

We highlighted several of these themes in previous reporting about the misuse of NSO spyware to target Mexican food scientists and health advocates. The findings in this investigation make it clear that substantial additional abuse took place.

The infection attempts against the minor child who was physically residing in the United States may have criminal ramifications. For example, under Section 18 U.S. Code § 912, impersonating a federal official is a federal criminal offense. Further, under the Computer Fraud and Abuse Act (18 U.S.C. § 1030), attempts to access a computer without authorization may be criminal offenses. Moreover, the US Wiretap Act has been previously cited with respect to other cases of cross-border targeting on US soil using commercial malware.

## Lack of Oversight and Accountability

The choice of targets, and the style of targeting, provides strong evidence that the targeting was conducted without proper oversight and judicial accountability.

Like the federal food scientists and consumer advocates who were also targeted with NSO exploit links,  the targets in this report are neither criminals nor terrorists, but widely respected journalists and human rights defenders.

The recklessness of the targeting also points to a lack of oversight. R3D, SocialTic, and Article 19 highlight the legal issues surrounding this case in their report. Mexico does not have specific legal regulations governing the use of malware, but the constitution and law (under Article 16) does authorize several legal entities to conduct intercepts. Interception of this type requires federal judicial authorization. Mexico's Centro de Investigación y Seguridad Nacional (CISEN) is authorized to conduct interceptions when there is an imminent threat to national security, Mexico's Federal police is authorized when there is probable cause to believe certain crimes are being committed, and Mexican local and federal prosecutors are similarly authorized. However, such surveillance always requires the approval of a judge. R3D provides a detailed discussion of the legal issues governing surveillance in Mexico in this report.

Our investigation also provided the first example that we are aware of in which a minor child was targeted with government exclusive spyware. Emilio Aristegui received at least 21 confirmed NSO messages, and several more that we strongly suspect to be NSO messages. The relentless targeting included many of the same upsetting and highly personal themes as the adult recipients.

It is difficult to conceive of what legitimate investigation would include these journalists, human rights defenders, and a minor child. There is no clear basis for them to be categorized as threats to national security. The same could be said for prior evidence of the NSO spyware campaign against Mexican government food scientists, health, and consumer advocates. Regardless of the legitimacy of the targets, this type of aggressive surveillance with malware may not pass the necessary and proportionate tests under Mexican law.

Furthermore, it seems unlikely that a federal judge, or other source of operational oversight, would have authorized such a politically risky act as masquerading as the United States Embassy to two of the country's highest profile journalists, or targeting an individual located within the United States.

# Conclusion: The "Principle of Misuse"

There is extensive research into the market for government-exclusive spyware and cases of abuse. Around the globe, spyware sold to governments ostensibly to track terrorists and investigate criminals is, in a growing number of documented incidents, abused for nakedly political ends.

More recently, several spyware manufacturers, including Gamma Group (FinFisher) and Hacking Team, were subject to breaches, and had their customer data posted online. Some customers appeared to be engaged in what many would consider legitimate investigations. However, the breach also revealed a global list of government customers in countries known to abuse human rights. Taken together, these findings made it clear that misuse of government-exclusive spyware is a global problem.

This report, taken together with the results of two previous investigations into NSO Group, suggest that their product and corporate behavior fits the same pattern of proliferation and misuse.

After cases of abuse come to light, spyware companies are often asked by the media for comment. Typically company executives respond with a mixture of evasiveness and allusions to their own internal due-diligence processes. The evidence, however, continues to mount that self-regulation, as well as international regulatory efforts, have failed to stop the continued proliferation and abuse of these technologies.

As a result, we think that there is evidence of an informal "principle of misuse" for government-exclusive spyware: when the technology is sold to a government without sufficient oversight, it will eventually be misused. This principle highlights the need to hold spyware manufacturers accountable for their contributions to global cyber insecurity.

In a recent publication, Citizen Lab researchers outlined a checklist of measures that could be taken to reign in such abuses. Until steps are taken to limit the possibility of abusive use, we anticipate finding more cases where highly-invasive spyware is used to stifle dissent and block opposition to powerful elites.

# Appendix A: Full Message List

| Target | Text Message Date | Text Message Original | Sender Phone Number | Text Message Translated | Link in SMS | Unshortens to |
|--------|-------------------|-----------------------|---------------------|-------------------------|-------------|---------------|
| Carmen Aristegui | 1/12/2015 | El siguiente mensaje no ha sido enviado [malicious link] | 5511393877 | The next message has not been sent [malicious link] | hxxp://bit[.]ly/1z2NQdh | hxxp://smscentro[.]com/9480260s/ |
| Carmen Aristegui | 4/12/2015 | Notificación de compra con tarjeta [REDACTED] monto $3,500.00 M.N, ver detalles en: [malicious link] | 5525715066 | Purchase notification with card [REDACTED] amount $3,500.00 M.N. see details at: [malicious link] | hxxp://smsmensaje[.]mx/1493024s/ | |
| Carmen Aristegui | 5/8/2015 | Aviso de vencimiento de pago asociado a tu servicio con cargo a tu tarjeta [REDACTED] , ver mas detalles: [malicious link] | 5525715066 | Due date payment notification associated with your service with charge to card [REDACTED] , see more details: [malicious link] | hxxp://smsmensaje[.]mx/6445761s/ | |
| Carmen Aristegui | 5/8/2015 | Haz realizado un Retiro/Compra en Tarjeta [REDACTED] M.N monto $3,500.00 verifica detalles de operacion: [malicious link] | 5525715066 | You have made a Withdrawal/Purchase in card [REDACTED] M.N. ammount $3,500.00 verify operation details: [malicious link] | hxxp://smsmensaje[.]mx/9936510s/ | |
| Carmen Aristegui | 5/11/2015 | Estimado cliente informamos que presentas un problema de pago asociado a tu servicio, ver detalles.. [malicious link] | 5525715066 | Dear client we inform you that there is a payment problem associated with your service, see details. [malicious link] | hxxp://smsmensaje[.]mx/[unavailable] | |
| Carmen Aristegui | 5/13/2015 | UNONOTICIAS. [REDACTED] [malicious link] | 5525715066 | UNONOTICIAS. [REDACTED] [malicious link] | hxxp://unonoticias[.]net/6218095s/ | |
| Carmen Aristegui | 7/26/2015 | Haz realizado un Retiro/Compra en Tarjeta [REDACTED] M.N monto $3,500.00 verifica detalles de operacion: [malicious link] | 5525715066 | You have made a Withdrawal/Purchase in card [REDACTED] M.N. ammount $3,500.00 verify operation details: [malicious link] | hxxp://smsmensaje[.]mx/9936510s/ | |
| Carmen Aristegui | 7/26/2015 | UNOTV.COM/ ANONYMUS ANUNCIA QUE ATACARA PAGINA DE ARISTEGUI VER DETALLES: [malicious link] | 5525715066 | UNOTV.COM/ ANONYMUS ANNOUNCES IT WILL ATTACK ARISTEGUI'S WEBSITE SEE DETAILS [malicious link] | hxxp://unonoticias[.]net/9250302s/ | |
| Carlos Loret de Mola | 8/20/2015 | USEMBASSY.GOV/ DETECTAMOS UN PROBLEMA CON TU VISA POR FAVOR ACUDE PRONTAMENTE A LA EMBAJADA. VER DETALLES: [malicious link] | 5585583974 | USEMBASSY.GOV/ WE DETECTED A PROBLEM WITH YOUR VISA PLEASE GO TO THE EMBASSY QUICKLY. SEE DETAILS [malicious link] | hxxp://bit[.]ly/1MAzTZ7 | hxxp://smsmensaje[.]mx/3990495s/ |
| Carmen Aristegui | 8/20/2015 | IUSACELL/ Estimado cliente su factura esta lista, agradeceremos pago puntual por $17401.25 | 5525715066 | IUSACELL/ Dear client your bill is ready, we will thank your punctual payment for $17401.25 | hxxp://iusacell-movil[.]com[.]mx/8595070s/ | |
| Carmen Aristegui | 8/20/2015 | USEMBASSY.GOV/ DETECTAMOS UN PROBLEMA CON TU VISA POR FAVOR ACUDE PRONTAMENTE A LA EMBAJADA. VER DETALLES: [malicious link] | 5525715066 | USEMBASSY.GOV/ WE HAVE DETECTED A PROBLEM WITH YOUR VISA PLEASE GO PROMPTLY TO THE EMBASSY. SEE DETAILS: [malicious link] | hxxp://bit[.]ly/1MAAWrO | hxxp://smsmensaje.mx/9439115s/ |
| Carmen Aristegui | 8/22/2015 | IUSACELL.COM/ EL SIGUIENTE MENSAJE ESTA MARCADO COMO URGENTE REVISALO DESDE NUESTRO PORTAL VER [malicious link] | 5525715066 | IUSACELL.COM/ THE FOLLOWING MESSAGE IS MARKED AS URGENT REVISE IT IN OUR WEBSITE SEE [malicious link] | hxxp://iusacell-movil[.]com[.]mx/7918310s/ | |

RECKLESS EXPLOIT

| Target | Text Message Date | Text Message Original | Sender Phone Number | Text Message Translated | Link in SMS | Unshortens to |
|--------|-------------------|----------------------|---------------------|------------------------|-------------|---------------|
| Carmen Aristegui | 8/24/2015 | ALERTA AMBER DF/ COOPERACION PARA LOCALIZAR A NINO DE 9 ANOS, DESAPARECIDO EN LA COLONIA [REDACTED] . DETALLES [malicious link] | 5525715066 | AMBER ALERT DF/ ASSISTANCE IN LOCATING A 9 YEAR OLD BOY WHO DISAPPEARED IN [redacted] NEIGHBORHOOD: [malicious link] | hxxp://bit[.] ly/1EQYOkG | hxxp://mymensaje-sms[.]com/6649365s/ |
| Carlos Loret de Mola | 8/29/2015 | estas personas vinieron preguntando por usted vienen en camioneta sin placas tome foto los conoce? mire | 5585583974 | these people came asking for you they came in a van without license plates i took a picture do you know them? look: [malicious link] | hxxp://bit[.] ly/1JDkjuX | hxxp://fb-accounts[.] com/2069487s/ |
| Emilio Aristegui | 8/30/2015 | UNOTV.COM/ POR TEMA DE CASA PRESIDENCIA PODRIA ENCARCELAR REPORTEROS MIENTRAS INVESTIGA VER NOMBRES: [malicious link] | UNKNOWN | UNOTV.COM/ BECAUSE OF THE CASA BLANCA ISSUE THE PRESIDENCY COULD JAIL REPORTERS WHILE IT INVESTIGATES SEE NAMES: [malicious link] | hxxp://bit[.] ly/1LLYT15 | hxxp://unonoticias[.] net/5819525s/ |
| Emilio Aristegui | 8/30/2015 | UNOTV.COM/ PRESIDENCIA DEMANDARÁ POR DIFAMACIÓN A QUIENES PUBLICARON REPORTAJE DE LA CASA BLANCA. NOTA: [malicious link] | UNKNOWN | UNOTV.COM/ PRESIDENCY WILL SUE FOR DEFAMATION AGAINST THOSE THAT PUBLISHED THE CASA BLANCA REPORT. STORY: [malicious link] | hxxp:// unonoticias[.] net/9804185s/ | |
| Emilio Aristegui | 8/30/2015 | UNOTV.COM/ DETIENEN A PRESUNTO LIDER DE CARTEL DE SINALOA EN RESTAURANTE LA MANCION DE [REDACTED] VER: [malicious link] | UNKNOWN | UNOTV.COM/ PRESUMPTIVE LEADER OF THE SINALOA CARTEL IS DETAINED AT RESTAURANT LA MANCION OF [REDACTED] SEE: [malicious link] | hxxp://bit[.] ly/1KufGUy | hxxps://unonoticias[.] net/1214510s/ |
| Carlos Loret de Mola | 9/1/2015 | TELCEL.COM/ Estimado cliente su factura esta proxima a vencer, agradeceremos su pago por $19750.26 Detalles: [malicious link] | 5535044351 | TELCEL.COM/ Dear client your bill will soon be due, your payment is $19750.26 Details: [malicious link] | hxxp://ideas-telcel[.]com[.] mx/7757294s | |
| Carlos Loret de Mola | 9/3/2015 | Carlos, buen día. Otra vez estan sacando chismes tuyos, supuestamente te tomaron fotos en UNIVISION mira: [malicious link] | 5535044351 | Carlos, good day. Again they are spreading rumors about you, supposedly they took pictures of you in UNIVISION look: [malicious link] | hxxp://bit[.] ly/1QbgONr | hxxp://twiitter.com[.] mx/2857663s/ |
| Carlos Loret de Mola | 9/5/2015 | TELCEL.COM/ ESTIMADO USUARIO LE RECORDAMOS QUE TIENE UN SALDO PENDIENTE DE $4280.00 M/N VERIFICA DETALLES DEL CARGO: [malicious link] | 5549576224 | TELCEL.COM/ DEAR USER WE REMIND YOU THAT YOU HAVE A PENDING BALANCE OF $4280.00 VERIFY THE DETAILS OF THE CHARGE: [malicious link] | hxxp://bit[.] ly/1JW0JFQ | hxxp://ideas-telcel. com[.]mx/2110126s/ |
| Carlos Loret de Mola | 9/6/2015 | ALERTAAMBER.COM/ SOLICITAMOS SU COOPERACION PARA LOCALIZAR A ESTUDIANTE DE LA FACULTAD DE FILOSOFIA DE LA UNAM VER FOTO [malicious link] | 5549576224 | ALALERTAAMBER.COM/ WE ASK FOR YOUR ASSISTANCE IN LOCATING A STUDENT FROM THE UNAM SCHOOL OF PHILOSOPHY SEE PHOTO [malicious link] | hxxp://bit[.] ly/1O77vPb | hxxp://smsmensaje[.] mx/1331744s/ |
| Carmen Aristegui | 10/25/2015 | Hola te envio invitacion electronica con detalles por motivo de mi fiesta de disfraces espero contar contigo alonso: [malicious link] | 5525715066 | Hi I am sending you an electronic invitation with details about my costume party I hope I can count with you alonso: [malicious link] | hxxp://tinyurl[.] com/o2tq8rl | |
| Juan Pardinas | 12/21/2015 | en la madrugada fallecio mi padre, estamos devastados, te envio los datos del velatorio, espero puedas venir: [malicious link] | 5551923720 | my father died this morning, we are devastated, I am sending you the information about the funeral, I hope you can come: [malicious link] | hxxp://bit[.] ly/1Nz2RZe | hxxps://smsmensaje[.] mx/5732641s/ |

| Target | Text Message Date | Text Message Original | Sender Phone Number | Text Message Translated | Link in SMS | Unshortens to |
|---|---|---|---|---|---|---|
| Juan Pardinas | 12/24/2015 | oiga afuera de su casa anda una camioneta con 2 vatos armados, les tome fotos vealos y cuidese: [malicious link] | 5551923720 | hey, there is a van outside your house with 2 armed dudes, I took pictures look at them and take care: [malicious link] | hxxp://bit[.]ly/1JzfmW1 | hxxps://smsmensaje[.]mx/7893029s/ |
| Carmen Aristegui | 2/9/2016 | Carmen hace 5 dias que no aparece mi hija te agradecere mucho que compartas su foto, estamos desesperados: [malicious link] | 5552899427 | Carmen my daughter has been missing for 5 days, we are desperate, I would be grateful if you help me by sharing her photo: [malicious link] | hxxp://bit[.]ly/1KDekJ9 | hxxp://smsmensaje.mx/1239663s/ |
| Carmen Aristegui | 2/10/2016 | Querida Carmen fallecio mi hermano en un accidente, estoy devastada, envio datos del velorio, espero asistas: [malicious link] | 5552899427 | Dear Carmen my brother died in an accident, I'm devastated, I send you the information about the funeral, I hope you can come: [malicious link] | hxxp://bit[.]ly/1TTjm6D | hxxp://smsmensaje.mx/6056487s/ |
| Carmen Aristegui | 2/24/2016 | UNOTV.COM/ LANZA TELEVISA DESPLEGADOS EN TODOS SUS MEDIOS;CRITICA POSTURA DE ORGANIZACION ARTICULO 19. VER: [malicious link] | 5552899427 | UNOTV.COM/ TELEVISA LAUNCHES ANNOUNCEMENTS IN ALL ITS MEDIA; CRITICIZES THE POSITION OF THE ORGANIZATION ARTICLE 19 SEE: [malicious link] | hxxp://bit[.]ly/1SU5N7q | hxxps://unonoticias[.]net/6809853s/ |
| Carlos Loret de Mola | 3/5/2016 | Loret hoy fallecio mi padre estamos devastados envio datos del velatorio espero contar contigo mau [malicious link] | 9993191309 | Loret my father died today we are devastated I am sending you the information of the wake I hope I can count on you mau [sic] [malicious link] | hxxp://tinyurl[.]com/j7luz86 | hxxps://smsmensaje[.]mx/2683786s/ |
| Emilio Aristegui | 3/18/2016 | UNOTV.COM/ EN ENTREVISTA PARA DIARIO DE EU; MIGUEL ANGEL MANCERA ACEPTA SU HOMOSEXUALIDAD. DETALLES: [malicious link] | 8120754062 | UNOTV.COM/ IN INTERVIEW WITH NEWSPAPER FROM THE U.S.; MIGUEL ANGEL MANCERA ACCEPTS HIS HOMOSEXUALITY. DETAILS: [malicious link] | hxxps://unonoticias[.]net/1419678s/ | hxxp://unonoticias[.]net/1214510s/ |
| Emilio Aristegui | 4/1/2016 | ARISTEGUI NOTICIAS ESTRENA SERVICIO DE SMS, SUSCRIBASE Y RECIBIRA RESUMEN DE LAS NOTICIAS MÁS IMPORTANTES: [malicious link] | 8114116769 | ARISTEGUI NOTICIAS RELEASES SMS SERVICE, SUBSCRIBE AND RECEIVE A SUMMARY OF MOST IMPORTANT NEWS [malicious link] | smsmensaje[.]mx [full link unavailable] | |
| Emilio Aristegui | 4/6/2016 | ARISTEGUINOTICIASONLINE. MX ESTRENA SERVICIO DE SMS. SUSCRIBASE Y RECIBIRA LAS NOTICIAS MAS IMPORTANTES: [malicious link] | 8121200623 | ARISTEGUINOTICIASONLINE. MX RELEASES SMS SERVICE. SUBSCRIBE AND RECEIVE THE MOST IMPORTANT NEWS [malicious link] | smsmensaje[.]mx [full link unavailable] | |
| Mario Patrón | 4/20/2016 | EL GOBIERNO DE MEXICO MADRUGA AL GIEI [malicious link] | 18112898080 | THE GOVERNMENT OF MEXICO TAKES GIEI OFF GUARD [malicious link] | hxxp://bit[.]ly/20Y9r10 | hxxps://secure-access10[.]mx/4257391s/ |
| Carlos Loret de Mola | 4/20/2016 | Querido Loret, fijate que tvnotas tiene fotos tuyas donde estas con una chava cenando. Dales una checada: [malicious link] | 5539326314 | Dear Loret, look tvnotas has photos of you dining with a girl. Look at them: [malicious link] | hxxp://bit[.]ly/1NlM0ME | hxxps://smsmensaje[.]mx/8643330s/ |
| Stephanie Brewer | 5/11/2016 | y segun ustedes que hace Derechos Humanos ante esto, y la dignidad de ellos que… [malicious link] | 8112487399 | And according to you what does Human Rights do about this, what about their dignity… [malicious link] | hxxp://bit[.]ly/1Nr0Vpb | hxxps://secure-access10[.]mx/7161504s/ |
| Emilio Aristegui | 5/11/2016 | UNOTV.COM/ CONFIRMA PGR QUE HIJO MAYOR DE AMLO LLEVA 48 HRS DESAPARECIDO. DETALLES: [malicious link] | 5560741842 | UNOTV.COM/ PGR CONFIRMS THAT AMLO'S ELDEST SON HAS BEEN MISSING FOR 48 HRS. DETAILS: [malicious link] | hxxp://bit[.]ly/1QYVJU9 | hxxps://unonoticias[.]net/6843502s/ |

| Target | Text Message Date | Text Message Original | Sender Phone Number | Text Message Translated | Link in SMS | Unshortens to |
|---|---|---|---|---|---|---|
| Sebastián Barragán | 5/12/2016 | Tengo pruebas clave y fidedignas en contra de servidores publicos, ayudame tiene que ver con este asunto [malicious link] | 8112889362 | I have key and thrustworthy evidence against public servants, help me it has to do with this issue [malicious link] | hxxp://bit[.]ly/1s2eguc | hxxps://secure-access10[.]mx/2618844s/ |
| Emilio Aristegui | 5/16/2016 | UNOTV.COM/ ASESINAN AL CITY MANAGER ARNE DEN RUHEN. DETALLES: [malicious link] | 8120754115 | UNOTV/ CITY MANAGER ARNE DEN RUHEN IS MURDERED. DETAILS: [malicious link] | hxxps://unonoticias[.]net/2046803s/ | |
| Alexandra Zapata | 5/17/2016 | UNOTV.COM/ REPORTAJE: LA HISTORIA DE CORRUPCION DETRAS DEL INTITUTO MEXICANO PARA LA COMPETITIVIDAD. VER: [malicious link] | 8120754119 | UNOTV.COM/ REPORT: THE STORY OF CORRUPTION BEHIND THE MEXICAN INSTITUTE FOR COMPETITIVENESS. SEE: [malicious link] | hxxps://unonoticias[.]net/6532946s/ | |
| Rafael Cabrera | 5/18/2016 | TELCEL.COM/ EL SIGUIENTE MENSAJE SE HA MARCADO COMO URGENTE Y NO SE RECIBIO COMPLETAMENTE RECUPERELO EN [malicious link] | 8121209616 | TELCEL.COM/ THE FOLLOWING MESSAGE HAS BEEN MARKED AS URGENT AND WAS NOT COMPLETELY RECEIVED. RECOVER IT AT [malicious link] | hxxp://bit[.]ly/1NzkyeZ | hxxps://smsmensaje[.]mx/8435662s/ |
| Daniel Lizárraga | 5/18/2016 | TELCEL.COM/ ESTIMADO USUARIO LE RECORDAMOS QUE PRESENTA UN ADEUDO DE $8,854.90 M/N VERIFIQUE DETALLES: [malicious link] | 8181852839 | TELCEL.COM/ DEAR USER WE REMIND YOU THAT YOU OWE $8,854.90 VERIFY THE DETAILS [malicious link] | hxxp://ideas-telcel[.]com[.]mx/1930327s | |
| Alexandra Zapata | 5/18/2016 | UNOTV.COM/ [redacted] [malicious link] | 8120531609 | UNOTV/ [redacted] [malicious link] | hxxps://unonoticias[.]net/4392216s/ | |
| Emilio Aristegui | 5/18/2016 | UNOTV.COM/ FILTRAN VIDEO DONDE LORET DE MOLA MANTIENE RELACIONES SEXUALES CON [REDACTED]. VER VIDEO [malicious link] | 8120531349 | UNOTV/ LEAKED VIDEO WHERE LORET DE MOLA HAS SEXUAL RELATIONS WITH [REDACTED]. SEE VIDEO [malicious link] | hxxps://unonoticias[.]net/4709973s/ | |
| Rafael Cabrera | 5/19/2016 | TELCEL.COM/ ESTIMADO USUARIO LE RECORDAMOS QUE PRESENTA UN ADEUDO DE $8,854.90 M/N VERIFIQUE DETALLES: [malicious link] | 8120953203 | TELCEL.COM/ DEAR USER WE REMIND YOU THAT YOU OWE $8,854.90 VERIFY THE DETAILS [malicious link] | hxxp://ideas-telcel[.]com[.]mx/3975827s | |
| Emilio Aristegui | 5/19/2016 | UNOTV.COM/ POSIBLE CORRUPCION REVELA AUDIO TELEFONICO ENTRE EPN Y PRESIDENTE DE OHL. AUDIO EN: [malicious link] | 8120531329 | UNOTV.COM/ POSSIBLE CORRUPTION REVEALED BY TELEPHONE AUDIO BETWEEN EPN AND OHL PRESIDENT AUDIO AT: [malicious link] | hxxps://unonoticias[.]net/3651023s/ | |
| Santiago Aguirre | 5/20/2016 | SrJorge soy Juan Magarino ayuda con mi hermano Heriberto se lo llevo la policia por ser maestro es un delito [malicious link] | 8122090332 | Mr Jorge I'm Juan Magarino please help with my brother Heriberto, the police took him for being a teacher this is a crime [malicious link] | hxxp://bit[.]ly/1XFaS4F | hxxps://network190[.]com/8361397s/ |
| Rafael Cabrera | 5/20/2016 | Facebook reporta intentos de acceso a la cuenta: Rafa Cabrera. Evite bloqueo de cuenta, verifique en: [malicious link] | 8120754118 | Facebook reports an attempt to access your account: Rafa Cabrera. Avoid the blocking of your account, verify in: [malicious link] | hxxps://fb-accounts[.]com/2408931s | |
| Emilio Aristegui | 5/20/2016 | TELCEL.COM/ ESTIMADO USUARIO LE RECORDAMOS QUE PRESENTA UN ADEUDO DE $10,854.90 M/N VERIFIQUE DETALLES [malicious link] | 8121228698 | TELCEL.COM/ DEAR USER WE REMIND YOU THAT YOU HAVE A DEBT OF $10,854.90 MN VERIFY DETAILS [malicious link] | hxxps://ideas-telcel[.]com[.]mx/5706662s | |

| Target | Text Message Date | Text Message Original | Sender Phone Number | Text Message Translated | Link in SMS | Unshortens to |
|---|---|---|---|---|---|---|
| Rafael Cabrera | 5/23/2016 | UNOTV.COM/ PODRIA IR CARMEN ARISTEGUI COMO CANDIDATA INDEPENDIENTE EN 2018. DETALLES: [malicious link] | 5561089094 | UNOTV.COM/ CARMEN ARISTEGUI COULD RUN AS AN INDEPENDENT CANDIDATE IN 2018. DETAILS: [malicious link] | hxxps:// unonoticias[.] net/1867745s/ | |
| Emilio Aristegui | 5/23/2016 | UNOTV.COM/ PODRIA IR CARMEN ARISTEGUI COMO CANDIDATA INDEPENDIENTE EN 2018. DETALLES: [malicious link] | 5560741842 | UNOTV.COM/ CARMEN ARISTEGUI COULD RUN AS AN INDEPENDENT CANDIDATE IN 2018. DETAILS: [malicious link] | hxxps:// unonoticias[.] net/8167459s/ | |
| Rafael Cabrera | 5/24/2016 | No tienes los huevos de ver como me fajo a tu pareja. Mira nada mas como co****s bn rico y en tu cama: [malicious link] | 3131051501 | You don't have the balls to watch how I make out with your partner. Look how we f**k so good and in your bed: [malicious link] | hxxp://bit[.] ly/246dkRy | hxxps://smsmensaje[.] mx/4667624s/ |
| Salvador Camarena | 5/24/2016 | No tienes los huevos de ver como me fajo a tu pareja. Mira nada mas como co****s bn rico y en tu cama: [malicious link] | 5562925040 | You don't have the balls to watch how I make out with your partner. Look how we f**k so good and in your bed: [malicious link] | hxxp://bit[.] ly/246doke | hxxps://smsmensaje[.] mx/4878494s/ |
| Salvador Camarena | 5/25/2016 | Afuera de tu casa esta una camioneta sospechosa y estan tomando video de la casa. Les tome foto mira: [malicious link] | 5562925040 | There is a suspicious van outside your house and they are taking video of the house. I took pictures of them look: [malicious link] | hxxp://bit[.] ly/1Xxf32k | hxxps://smsmensaje[.] mx/5478753s/ |
| Emilio Aristegui | 5/26/2016 | UNOTV.COM/ HAYAN DECAPITADO A PERIODISTA EN VERACRUZ Y DEJAN NARCOMENSAJE AMENAZADOR. FOTOS Y DETALLES: [malicious link] | 8120957553 | UNOTV.COM/ BEHEADED JOURNALIST IS FOUND IN VERACRUZ WITH THREATHNING NARCOMESSAGE. PHOTOS AND DETAILS: [malicious link] | hxxps:// unonoticias[.] net/8439927s/ | |
| Emilio Aristegui | 5/27/2016 | UNOTV.COM/ DECOMISAN CARGAMENTO DEL CIDA/ OSAMA BIN LADEN NO HA MUERTO/ DETIENEN A LUPITA DALESIO [malicious link] | 8120958612 | UNOTV.COM/ SEIZURE OF CIDA SHIPMENT/ OSAMA BIN LADEN IS NOT DEAD ALIVE/ LUPITA DALESIO DETAINED [malicious link] | hxxp://bit[.] ly/25nmH1O | hxxps://unonoticias[.] net/8592764s/ |
| Rafael Cabrera | 5/30/2016 | UNOTV.COM/ PRESIDENCIA DEMANDARA POR DIFAMACION A QUIENES PUBLICARON REPORTAJE DE LA CASA BLANCA. NOTA: [malicious link] | 5561067277 | UNOTV.COM/ THE PRESIDENCY WILL SUE FOR DEFAMATION AGAINST THE PUBLISHERS OF THE CASA BLANCA REPORT | hxxp://bit[.] ly/1hMG15k | hxxp://fb-accounts[.] com/1074139s/ |
| Rafael Cabrera | 5/30/2016 | UNOTV.COM/ POR TEMA DE CASA BLANCA PRESIDENCIA PODRIA ENCARCELAR REPORTEROS MIENTRAS INVESTIGA VER NOMBRES: [malicious link] | 5561067277 | UNOTV.COM/ BECAUSE OF THE CASA BLANCA ISSUE THE PRESIDENCY COULD INCARCERATE REPORTERS WHILE IT INVESTIGATES SEE NAMES: [malicious link] | hxxp://bit[.] ly/1LLY8oK | hxxps://unonoticias[.] net/3423768s/ |
| Emilio Aristegui | 5/30/2016 | UNOTV.COM/ EJECUTAN PERIODISTA Y DEJAN NARCOMENSAJE/ CONTINUA DOBLE NO CIRCULA/ NOVIA ENLOQUECE DE CELOS [malicious link] | 8181852839 | UNOTV.COM/ JOURNALIST EXECUTED AND NARCOMESSAGE IS LEFT/ DOUBLE NO-DRIVE DAY CONTINUES/ GIRLFRIEND GOES CRAZY WITH JEALOUSY [malicious link] | hxxp://bit[.] ly/1X9kJRJ | hxxps://smsmensaje[.] mx/4494681s/ |
| Emilio Aristegui | 6/1/2016 | UNOTV.COM/ CARMEN ARISTEGUI SE DESTAPA COMO CANDIDATA AL GOBIERNO DE LA CDMX PARA EL 2018. DETALLES: [malicious link] | 8121961566 | UNOTV.COM/ CARMEN ARISTEGUI REVEALED AS CANDIDATE FOR CDMX GOVERNMENT IN 2018. DETAILS: [malicious link] | hxxps:// unonoticias[.] net/5851721s/ | |

| Target | Text Message Date | Text Message Original | Sender Phone Number | Text Message Translated | Link in SMS | Unshortens to |
|---|---|---|---|---|---|---|
| Carmen Aristegui | 6/3/2016 | Carmen la pagina esta intermitente, esta apareciendo este error al intentar ingresar: [malicious link] | 5585401299 | Carmen the website is intermitent, this error appears when you try to get in: [malicious link] | hxxp://bit[.]ly/1WzrZ8T | hxxp://smsmensaje.mx/9371877s/ |
| Emilio Aristegui | 6/3/2016 | USEMBASSY.GOV/ DETECTAMOS UN PROBLEMA CON TU VISA POR FAVOR ACUDE PRONTAMENTE A LA EMBAJADA VER DETALLES: [malicious link] | 5560741842 | USEMBASSY.GOV/ WE HAVE DETECTED A PROBLEM WITH YOUR VISA PLEASE GO PROMPTLY TO THE EMBASSY. SEE DETAILS: [malicious link] | hxxp://bit[.]ly/1Wzryvp | hxxps://smsmensaje[.]mx/7831163s/ |
| Santiago Aguirre | 6/8/2016 | Mtro, tuve un incidente, le envio nuevamente mi tesis, basada en su tesina para que me de su comentarios [malicious link] | 8122090340 | Professor, I had a problem, I am resending my thesis, based in your dissertation so you can give me comments: [malicious link] | hxxp://bit[.]ly/292heXd | hxxps://network190[.]com/2066781s/ |
| Carmen Aristegui | 6/13/2016 | Hace 3 días que no aparece mi hija, estamos desesperados, te agradecere que me ayudes a compartir su foto: [malicious link] | 5585401299 | my daughter has been missing for 3 days, we are desperate, I would be grateful if you help me by sharing her photo: [malicious link] | hxxp://bit[.]ly/235giae | hxxp://smsmensaje.mx/5957475s/ |
| Carmen Aristegui | 6/15/2016 | Buenas tardes Carmen, unicamente paso a saludarte y enviarte esta nota de Proceso que es importante retomar: [malicious link] | 8122090316 | Good afternoon Carmen, I only came to say hello and send you this story from Proceso that is important to pick up: [malicious link] | hxxp://bit[.]ly/1twXSDl | hxxp://smsmensaje.mx/1911343s/ |
| Emilio Aristegui | 6/22/2016 | UNOTV.COM/ REVELAN VIDEO DONDE CRISTIANO RONALDO SE ENFADA Y AVIENTA MICROFONO DE REPORTERO. VIDEO EN [malicious link] | 8120957553 | UNOTV.COM/ REVEALED VIDEO WHERE CRISTIANO RONALDO GET ANGRY AND THROWS REPORTER'S MICROPHONE. VIDEO AT [malicious link] | hxxps://unonoticias[.]net/7564969s/ | |
| Santiago Aguirre | 6/28/2016 | Buen día Mtro. trabajo en mi tesis, tome como base su tesina, me interesa su opinion, le mando los adelantos [malicious link] | 8122090340 | Good day professor, I'm working in my thesis, I took your dissertation as a base, I'm interested in your opinion, I am sending you an advanced copy [malicious link] | hxxp://bit[.]ly/1U0yzVG | hxxps://network190[.]com/6214010s/ |
| Carmen Aristegui | 6/28/2016 | UNOTV.COM/ ATENTADO TERRORISTA EN ESTAMBUL DEJA 30 MUERTOS/SECUESTRAN REPORTERO DE TELEVISA/ FALLECE CHACHITA [malicious link] | 8120696998 | UNOTV.COM/ TERRORIST ATTACK IN ISTANBUL LEAVES 30 DEAD/ KIDNAPPING OF TELEVISA REPORTER/ CHACHITA DIES [malicious link] | hxxp://bit[.]ly/295RNq7 | hxxp://smsmensaje.mx/1656017s/ |
| Emilio Aristegui | 6/28/2016 | UNOTV.COM/ ATENTADO TERRORISTA EN ESTAMBUL DEJA 30 MUERTOS/SECUESTRAN REPORTERO DE TELEVISA/ FALLECE CHACHITA [malicious link] | 8122090346 | UNOTV.COM/ TERRORIST ATTACK IN ISTANBUL LEAVES 30 DEAD/ KIDNAPPING OF TELEVISA REPORTER/ CHACHITA DIES [malicious link] | hxxp://bit[.]ly/295RmfH | hxxps://smsmensaje[.]mx/5840625s/ |
| Carmen Aristegui | 7/4/2016 | UNOTV.COM/ AMARILLISMO DE ARISTEGUI VS REALIDAD/ VAN 30 DETENIDOS EN ATENTADO DE ESTAMBUL/ CHILE CAMPEON [malicious link] | 8121050415 | UNOTV.COM/ ARISTEGUI'S SENSACIONALISM AGAINST REALITY/ 30 DETAINEES IN ISTANBUL ATTACK/ CHILE IS THE CHAMPION [malicious link] | hxxp://bit[.]ly/29eWzzv | hxxps://unonoticias[.]net/9436744s/ |

| Target | Text Message Date | Text Message Original | Sender Phone Number | Text Message Translated | Link in SMS | Unshortens to |
|---|---|---|---|---|---|---|
| Emilio Aristegui | 7/4/2016 | UNOTV.COM/ AMARILLISMO DE ARISTEGUI VS REALIDAD/ VAN 30 DETENIDOS EN ATENTADO DE ESTAMBUL/ CHILE CAMPEON [malicious link] | 8120733949 | UNOTV.COM/ ARISTEGUI'S SENSACIONALISM AGAINST REALITY/ 30 DETAINEES IN ISTANBUL ATTACK/ CHILE IS THE CHAMPION [malicious link] | hxxp://bit[.]ly/29eWFqz | hxxps://unonoticias[.]net/5027740s/ |
| Emilio Aristegui | 7/12/2016 | UNOTV.COM/ FILMAN A REPORTERO Y PERIODISTA CUANDO SON LEVANTADOS POR COMANDO ARMADO EN TAMAULIPAS. VIDEO: [malicious link] | 6675198654 | UNOTV.COM/ REPORTER AND JOURNALIST ARE FILMED WHEN THE GET KIDNAPPED BY ARMED COMANDO IN TAMAULIPAS. VIDEO: [malicious link] | hxxps://unonoticias[.]net/5723329s/ | |
| Carmen Aristegui | 7/15/2016 | [Redacted] [malicious link] | 8122090286 | [Redacted] [malicious link] | hxxp://bit[.]ly/29lQvyh | hxxp://smsmensaje.mx/3376811s/ |
| Emilio Aristegui | 7/18/2016 | Hola oye abriste nuevo facebook? Me llego una solicitud de un face con tus fotos pero con otro nombre mira: [malicious link] | 3313221176 | Hi hey did you open a new facebook? I received a request of a facebook with your photos but with another name look: [malicious link] | fb-accounts[.]com [full link not available] | |
| Carmen Aristegui | 7/19/2016 | Hola buen martes. Oye que p*do con el p*to Lopez Doriga? Mira lo que escribió sobre ti hoy, urge desmentirlo: [malicious link] | 8113788852 | Hello good tuesday. Hey what the **k with f**king Lopez Doriga? Look what he wrote about you today, it is urgent to deny it: [malicious link] | hxxp://bit[.]ly/29LfZfD | hxxp://smsmensaje.mx/9093723s/ |
| Emilio Aristegui | 7/23/2016 | Amigo, hay una pseudo cuenta de fb y twitter identica a la tuya checala para que la denuncies mira checala: [malicious link] | 5560741842 | Friend, there is a pseudo account on fb and twitter identical to yours check it out so you can report it look check: [malicious link] | fb-accounts[.]com [full link not available] | |
| Carmen Aristegui | 7/25/2016 | Bienvenido Club [redacted] se ha aplicado un cargo de $875.85 a su linea, si desea cancelar ingrese a: [malicious link] | 8122090359 | Welcome to [Redacted] Club, $875.85 has been charged to your line, if you want to cancel enter to: [malicious link] | hxxp://bit[.]ly/2a0hZ2l | hxxp://smsmensaje.mx/6881768s/ |
| Emilio Aristegui | 7/28/2016 | UNOTV.COM/ VIRAL EL VIDEO DE FUERTE GOLPE QUE RECIBE EN LA CARA OSORIO CHONG PROPINADO POR MAESTRO. VIDEO: [malicious link] | 5573313263 | UNOTV.COM/ VIRAL VIDEO OF STRONG BLOW TO THE FACE RECEIVED BY OSORIO CHONG FROM TEACHER. VIDEO: [malicious link] | hxxps://unonoticias[.]net/7972736s/ | |

# EXHIBIT Q

 (https://citizenlab.ca)



›

# Report

## Slain Mexican journalist's widow targeted by spyware

**By Miles Kenyon (https://citizenlab.ca/author/miles/)**        March 20, 2019

The widow of a murdered Mexican journalist was targeted with Pegasus, a spyware product which can secretly access the contents of a phone and turn on its camera and microphone.

The Associated Press (https://www.apnews.com/96ac1993609b4e9d9bbfd3cae60e5153) reported on the Citizen Lab's revelation that unknown operators tried to spy on Griselda Triana using Pegasus 10 days after her husband Javier Valdez's murder in 2017. Triana received text messages that pretended to offer information about her husband's death, but actually would have installed the spyware on her phone.

There are 25 documented cases of abuse of Pegasus spyware in Mexico as of March 2019. NSO Group, the Israel-based company that makes Pegasus, has said that it only sells the spyware "to highly vetted intelligence and law enforcement agencies for the sole purpose of fighting terrorism and crime." However, use of the company's spyware against journalists and activists has been document by the Citizen Lab and other for more than two years in countries around the world.

"I am not a criminal or a terrorist but I have been a target of spying because I was Javier's partner," Griselda Triana told the AP. "What reasons were there to spy on me? Neither I nor my family [are] criminals, and I am sure that I do not represent any danger to national security."

Citizen Lab senior research fellow John Scott-Railton added: "We can add Griselda's name to the growing list of family members of cartel-linked killings, and their advocates, who demanded justice and got targeted with Pegasus instead."

Privacy Policy (https://citizenlab.ca/privacy/)

Unless otherwise noted this site and its contents are licensed under a Creative Commons Attribution 2.5 Canada (https://creativecommons.org/licenses/by/2.5/ca/) license.

(http://munkschool.utoronto.ca/)

# EXHIBIT R

# RECKLESS VII

## Wife of Journalist Slain in Cartel-Linked Killing Targeted with NSO Group's Spyware

By John Scott-Railton, Bill Marczak, Siena Anstis, Bahr Abdul Razzak, Masashi Crete-Nishihata, and Ron Deibert

MARCH 20, 2019
RESEARCH REPORT #117





---

# Copyright

© The Citizen Lab



Licensed under the Creative Commons BY-SA 4.0 (Attribution-ShareAlike licence). Electronic version first published in 2018 by the Citizen Lab. This work can be accessed through https://citizenlab.ca/2019/03/nso-spyware-slain-journalists-wife/.

Document Version: 1.0

The Creative Commons Attribution-ShareAlike 4.0 license under which this report is licensed lets you freely copy, distribute, remix, transform, and build on it, as long as you:

- give appropriate credit;
- indicate whether you made changes; and
- use and link to the same CC BY-SA 4.0 licence.

However, any rights in excerpts reproduced in this report remain with their respective authors; and any rights in brand and product names and associated logos remain with their respective owners. Uses of these that are protected by copyright or trademark rights require the rightsholder's prior written agreement.

---

# Suggested Citation

John Scott-Railton, Bill Marczak, Siena Anstis, Bahr Abdul Razzak, Masashi Crete-Nishihata, and Ron Deibert. "Reckless VII: Wife of Journalist Slain in Cartel-Linked Killing Targeted with NSO Group's Spyware," Citizen Lab Research Brief No. 117, March 2019.

## Acknowledgements

Citizen lab would like to thank Griselda Triana for consenting to share this case with the collaborating organizations, especially Article 19, and with the public. We are also grateful to the many other targets and victims of Pegasus for having shared the cases on which our continuing work is based.

Special thanks to the teams at R3D, SocialTic, and Article19 for their careful and important investigative work. We would like to especially thank and highlight the contribution of Luis Fernando García and his colleagues at R3D, and Article19 for their coordination in this particular case.

Thanks to the whole Citizen Lab team, especially Miles Kenyon, Adam Senft, and Mari Zhou for graphical assistance.

Thanks to Amnesty International and Access Now for assistance in earlier phases of the investigation.

## About the Citizen Lab, Munk School of Global Affairs and Public Policy, University of Toronto

**The Citizen Lab** is an interdisciplinary laboratory based at the Munk School of Global Affairs and Public Policy, University of Toronto, focusing on research, development, and high-level strategic policy and legal engagement at the intersection of information and communication technologies, human rights, and global security.

We use a "mixed methods" approach to research that combines methods from political science, law, computer science, and area studies. Our research includes investigating digital espionage against civil society, documenting Internet filtering and other technologies and practices that impact freedom of expression online, analyzing privacy, security, and information controls of popular applications, and examining transparency and accountability mechanisms relevant to the relationship between corporations and state agencies regarding personal data and other surveillance activities.

## This report is Part 8 of a series on the abuse of NSO Group's spyware in Mexico

Part 1: Bittersweet: Supporters of Mexico's Soda Tax Targeted With NSO Exploit Links

Part 2: Reckless Exploit: Mexican Journalists, Lawyers, and a Child Targeted with NSO Spyware

Part 3: Reckless Redux: Senior Mexican Legislators and Politicians Targeted with NSO Spyware

Part 4: Reckless III: Investigation Into Mexican Mass Disappearance Targeted with NSO Spyware

Part 5: Reckless IV: Lawyers For Murdered Mexican Women's Families Targeted with NSO Spyware

Part 6: Reckless V: Director of Mexican Anti-Corruption Group Targeted with NSO Group's Spyware

Part 7: Reckless VI: Mexican Journalists Investigating Cartels Targeted with NSO Spyware Following Assassination of Colleague

**Part 8: Reckless VII: Wife of Journalist Slain in Cartel-Linked Killing Targeted with NSO Group's Spyware**

*This research brief details how Griselda Triana, journalist and the wife of slain journalist Javier Valdez Cárdenas, was targeted with NSO Group's Pegasus spyware in the days after his killing.*

# Key Findings

> Griselda Triana, a journalist and the wife of slain journalist Javier Valdez, was targeted with NSO Group's Pegasus spyware following his assassination.

> Triana was targeted a week after infection attempts against two of Valdez's colleagues, Andrés Villarreal and Ismael Bojórquez.

> A total of 25 individuals are now known to have been abusively targeted with Pegasus malware in Mexico.

CITIZEN LAB RESEARCH REPORT NO. 117

# Introduction

On May 15th, 2017, journalist Javier Valdez was shot dead as he left the offices of *Riodoce*, the newspaper that he founded to investigate cartels and organized crime in Sinaloa, Mexico. His killers pulled him from his car, shot him a dozen times, and stole his files, laptop, and mobile phone. His killing has been widely reported as a cartel hit.

In the days following the killing, his colleagues Andrés Villarreal and Ismael Bojórquez received carefully crafted text messages designed to trick them into clicking on exploit links. Clicking on the links would have infected their phones with Pegasus spyware. The spyware, developed by Israeli company NSO Group, is designed to infect and remotely monitor mobile phones. In that investigation, we linked the infection attempts to a group that we call RECKLESS-1, which we linked to the Mexican government.



Figure 1: Javier Valdez Cárdenas (left)[1]. On May 15, 2017, Cárdenas was shot 12 times as he left the Ríodoce offices. Griselda Triana (right) at a march demanding justice for Javier Valdez.

With the assistance of our investigative partners R3D, SocialTic, and Article 19, we can now report that, one week after Javier Valdez Cárdenas was murdered, his wife, journalist Griselda Triana, was also targeted with multiple infection attempts using NSO Group's Pegasus malware.

---

1      Image credit: Cronica de Xalpa. Image courtesy of Griselda Triana.



Figure 2: The 25 known targets with Pegasus in Mexico as of March 2019.

Javier Valdez's colleagues were among more than two dozen Mexican and American citizens targeted with Pegasus spyware by Mexican NSO Group customers. After we identified infection attempts[2] against a Mexican journalist and government critic in 2016, Mexican civil society groups R3D, SocialTic, and Article 19 began collaborating with us to identify additional targets. This investigative partnership resulted in seven reports detailing 25 infection attempts against multiple Mexican journalists, lawyers, international investigators, public health practitioners, senior politicians, and anti-corruption activists.

# The Targeting of Griselda Triana with NSO Group's Spyware

Griselda Triana has produced and hosted the show "La otredad" (English: "Otherness") for the radio station of the Autonomous University of Sinaloa (UAS). Triana has also served as communications director for the Centre for Gender Policy and Equity Between Men and Women at UAS.

On May 25th and 26th, 2017, eleven days after her husband was slain, Triana received text messages designed to trick her into clicking on malicious links. The messages

---

2       We believe that the operator in this first case is RECKLESS-1, however we are unable to say so conclusively due to technical limitations.

arrived during a period when she recalls actively cooperating with the authorities investigating his killing, and publicly protesting his death and demanding a serious official investigation.

The first infection attempt arrived on May 25th and masqueraded as an update about the killing from Mexican news magazine _Proceso_. According to the message, the Mexican Office of the Prosecutor (PGR) had announced that his assassination was in fact an attempted carjacking. The idea was farcical and Triana did not click on the link.



Figure 3: Infection Attempts using Pegasus spyware against Griselda Triana.

A day later, Triana received a second infection attempt. The message played on her grief at the loss of her husband and hinted that she might have been attacked in the press. Again, she recalls abstaining from clicking.

Clicking on the links in either message would have resulted in the infection of her phone with NSO Group's Pegasus spyware. Griselda later provided the messages to Article 19 and R3D, who shared them with Citizen Lab researchers.

# Links to NSO Group Exploit Infrastructure

The links in the messages sent to Griselda Triana pointed to domains identified in prior Citizen Lab investigations as exploit infrastructure operated by RECKLESS-1. Both domains had been previously used to target Javier Valdez's colleagues (See: Table 1).

| savephotos[.]net |
| animal-politico[.]com |

Table 1. NSO Group Pegasus Exploit Domains Used in this Operation

In our recent publications on RECKLESS-1 and other NSO Group operators, we reported that the operator was active until June 2017, when we published a third report describing abuses of Pegasus in Mexico and pointed to further evidence indicating that the operator was the Mexican government.

While the original RECKLESS-1 infrastructure was not re-enabled, our recent scanning results indicate that Mexican government-linked NSO Group operators have been active as recently as late September 2018.

## Conclusion: Journalists in the Spyware Crosshairs

There is an undeniable pattern of abuse and due diligence failures in how NSO Group's spyware is sold and used. By the time Griselda Triana was targeted in May 2017, Mexican NSO customers had already targeted at least two dozen members of Mexican civil society with Pegasus. By then, NSO Group had already been made aware of public reports of the misuse of its products by Mexico for almost eight months. This public reporting included multiple publications by Citizen Lab and multiple front page *New York Times* stories.

The targeting of Griselda Triana increases the number of Mexican journalists targeted with Pegasus to nine and the total number of Mexican targets to 25. Taking into account investigations by Citizen Lab and Amnesty International on a Saudi Arabian government operator, there are now 11 publicly-reported cases of journalists targeted with Pegasus spyware (Figure 4). The number increases if family members, such as the minor child of Carmen Aristegui who was targeted while at boarding school in the United States, are included.

The repeated use of Pegasus to target journalists and their family members over multiple years suggests a pattern of official abuse. In Mexico, journalists appear more frequently among Pegasus targets than any other group that we have identified, such as politicians or lawyers (See: Figure 2). This pattern is disturbing as Mexican journalists are also frequent targets for physical violence and assassination.



Figure 4: Journalists and civic media targeted with NSO Group's Pegasus Spyware.

A [degree of official involvement](#) has been reported in half the killings of journalists in Mexico, making it especially troubling that family members and colleagues of a slain journalist were digitally targeted by a Mexican government-linked entity.

## Questions about Abuses to NSO Group and Novalpina Capital Remain Unanswered

Citizen Lab has sent [multiple communications to NSO Group](#), its financial partners, and its backers. These have included letters laying out our findings along with specific questions about individual cases. We have also asked questions about oversight and due diligence. These questions have largely gone unanswered.

Citizen Lab has also written to [Novalpina Capital](#), a UK-based private equity fund directed by [Stephen Peel](#). Novalpina is currently in the process of [purchasing a majority stake](#) in NSO Group. Unfortunately, Novalpina Capital has also chosen to not address the many cases of abuse identified by Citizen Lab, Amnesty International, and others.

For example, Novalpina recently wrote a letter to civil society groups stating their commitment to human rights and transparency in the spyware market and outlining their plans for NSO. Unfortunately, Novalpina's 11 page letter spends only

two paragraphs addressing, and then dismissing, the nearly three years of reports connecting NSO Group to specific abuses.

Citizen Lab has also written to Jefferies Financial Group, which is reportedly "advising and leading the financing" of the acquisition of NSO Group by Novalpina. That letter has not received a response.

# Appendix A: Full List of Messages

| Date | Original Message | Translation | Link | Unshortened Link (if applicable) |
|---|---|---|---|---|
| May 25th 2017 | PROCESO: PGR ASEGURA QUE EL MOVIL DEL ASESINATO DE JAVIER VALDEZ FUE PARA ROBARLE SU SUTOMOVIL. DETALLES: | PROCESO: PGR STATES THAT THE CELLPHONE OF ASSASSINATION VICTIM JAVIER VALDEZ WAS STOLEN FROM HIS AUTOMOBILE | http://bit[.]ly/2r1gawm | https://savephotos[.]net/eGd8iDIHg |
| May 26th 2017 | Como vez este reportaje? Cuando faltan las palabras solo ataques podemos recibir: | What do you think of this story? Sometimes when words can't be found, all you can do is attack: | https://animal-politico[.]com/5C6FIWAJ | |

# EXHIBIT S

THECITIZENLAB (https://citizenlab.ca)

☰

# Dubious Denials & Scripted Spin

## Spyware Company NSO Group Goes on 60 Minutes

**By Miles Kenyon (https://citizenlab.ca/author/miles/)**　　April 1, 2019

---

Spyware developer NSO Group is usually quick to dismiss (https://www.fastcompany.com/90322618/nso-group-pe-gasus-cyberweapon-targeted-the-widow-of-a-slain-mexican-journalist) the evidence that its customers have abused its Pegasus mobile phone spyware. This pattern of denial was repeated in a recent 60 Minutes investigation (https://www.cbsnews.com/news/interview-with-ceo-of-nso-group-israeli-spyware-maker-on-fighting-terror-khashoggi-murder-and-saudi-arabia-60-minutes/), which gives a rare look into NSO Group's management.



(https://citizenlab.ca/wp-content/webpc-passthru.php?src=https://citizenlab.ca/wp-content/uploads/2019/04/Hulio-60-Mins.jpg&nocache=1)

"Don't believe newspapers," says NSO Group CEO Shalev Hulio when asked about his role in selling NSO Group spyware to Saudi Arabia (Image: CBS 60 Minutes (https://www.cbsnews.com/news/interview-with-ceo-of-nso-group-israeli-spyware-maker-on-fighting-terror-khashoggi-murder-and-saudi-arabia-60-minutes/)).

60 Minutes correspondent Lesley Stahl got scripted spin and unsubstantiated denials when she confronted NSO Group's CEO Shalev Hulio and co-president Tami Shachar with cases of abuse drawn from the evidence-based re-search of Citizen Lab, Amnesty International, and others. Despite the misdirection, Stahl and 60 Minutes did extract some insights about the company:

- When questioned about the more than 29 publicly identified cases of abuse, NSO admits to only three

- NSO Group does not deny that it sold its Pegasus spyware to Saudi Arabia and will not explicitly deny that Jamal Khashoggi's confidants were targeted with Pegasus

- NSO Group continues to spin and misdirect questions about abuses, particularly concerning the critical issue of allowing clients to define what constitutes "terrorism" and "crime."

As a number, Citizen Lab (https://citizenlab.ca/about/#current-group), Amnesty International (https://www.amnesty.org/en/latest/research/2018/08/amnesty-international-among-targets-of-nso-powered-campaign/), security companies (https://info.lookout.com/rs/051-ESQ-475/images/lookout-pegasus-technical-analysis.pdf), Google's security team (https://android-developers.googleblog.com/2017/04/an-investigation-of-chrysaor-malware-on.html), and journalists (https://www.forbes.com/sites/thomasbrewster/2018/11/21/exclusive-saudi-dissidents-hit-with-stealth-iphone-spyware-before-khashoggi-murder/#22dd03502e8b) have all contributed to building a picture of NSO Group's powerful but abuse-prone technology. Pegasus, their signature spyware, is designed to infect and remotely monitor mobile phones. Once inside, operators have complete control of and access to everything in the phone, including encrypted messages, location data, and its microphone and camera.

## Evidence Says at Least 30 Cases of Abuse; NSO Group Admits Three

NSO's CEO claims that there have been exactly three cases of abuse in the company's history. But in Mexico alone, our research has identified more than 25 infection attempts against (https://citizenlab.ca/2019/03/nso-spyware-slain-journalists-wife/) members of civil society. These targets include the phones of:

- A prominent Mexican investigative journalist (https://citizenlab.ca/2017/06/reckless-exploit-mexico-nso/) who exposed a presidential corruption scandal and her minor child who was attending boarding school in the United States when he was targeted

- The widow of a Mexican journalist (https://citizenlab.ca/2019/03/nso-spyware-slain-journalists-wife/), targeted a week after her husband was assassinated in a cartel-linked operation

- Research scientists and health advocates (https://citizenlab.ca/2017/02/bittersweet-nso-mexico-spyware/) promoting a tax on sugary beverages to help mitigate obesity issues

- International investigators (https://citizenlab.ca/2017/07/mexico-disappearances-nso/) into the mass disappearance of 43 Mexican students



(https://citizenlab.ca/wp-content/webpc-passthru.php?src=https://citizenlab.ca/wp-content/uploads/2019/04/Ron-and-Bill-60-Mins.jpg&nocache=1)

Citizen Lab Director Ron Deibert (left) and Senior Research Fellow Bill Marczak highlight the widespread use of NSO Group's Pegasus spyware by autocratic dictators and repressive regimes (Image: CBS 60 Minutes (https://www.cbsnews.com/news/interview-with-ceo-of-nso-group-israeli-spyware-maker-on-fighting-terror-khashoggi-murder-and-saudi-arabia-60-minutes/)).

Other research groups have identified even more cases of targeting with Pegasus (https://www.amnesty.org/en/latest/research/2018/08/amnesty-international-among-targets-of-nso-powered-campaign/), namely against an Amnesty International staff member and Yahya Assiri, and Ghanem al-Dosari, a Saudi comedian (https://www.forbes.com/sites/thomasbrewster/2018/11/21/exclusive-saudi-dissidents-hit-with-

stewart-and-spyware-based-mass-blogging-document29754.8mil) and government critic allege offered targets fit within the definition of a terrorist that Hulio says his customers adopt, namely "bad guys doing bad things in order to kill innocent people, in order to change the political agenda."

## Scripted Spin versus Facts on the Sale of Pegasus to Saudi Arabia

NSO Group CEO Hulio refused to provide an answer as to whether or not NSO Group sold Pegasus to Saudi Arabia, a country with a notoriously poor human rights record and for whom terrorist offences include <u>insulting the reputation of the state (https://www.hrw.org/news/2017/11/23/saudi-arabia-new-counterterrorism-law-enables-abuse)</u>.

When pressed by Stahl as to whether the sale happened, Hulio repeatedly deflected, stating that he did not want to speak about a "specific customer," that NSO Group was "selling Pegasus in order to prevent crime and terror," and that one should not believe news reports describing a trip Hulio took to Riyadh to sell Pegasus to the Saudis for $55 million. This seemingly scripted language has been oft-repeated by Hulio and the failure to actually deny a sale to Saudi Arabia is resounding.

Recently, journalist David Ignatius <u>disclosed (https://www.washingtonpost.com/opinions/global-opinions/how-the-mysteries-of-khashoggis-murder-have-rocked-the-us-saudi-partnership/2019/03/29/cf060472-50af-11e9-a3f7-78b7525a8d5f_story.html?utm_term=.a66b0adfc811)</u> that, in fact, NSO Group has restricted its Saudi client's use of Pegasus after an internal investigation determined that its spyware was not "directly" involved in the murder of Jamal Khashoggi. Such a finding is entirely consistent with Citizen Lab and others' determinations that the Saudis were using Pegasus to spy on several of Khashoggi's colleagues. In particular, Omar Abdulaziz (whose iPhone Citizen Lab determined was targeted with NSO Group spyware) and Jamal Khashoggi were exchanging what they thought were private <u>WhatsApp messages (https://www.cnn.com/2018/12/02/middleeast/jamal-khashoggi-whatsapp-messages-intl/index.html)</u> about their plans for social media activism against Saudi autocracy.

## Evidence of Abuses versus NSO Group's Dubious Denials

Despite NSO Group's pattern of questionable denials, research by Citizen Lab and peer organizations continues to surface new abuse cases and be replicated by additional research groups which arrive at the same conclusions. In an attempt to get a clear answer from NSO Group regarding their position on our research, we have sent numerous communications to the company and its investors (previously <u>Francisco Partners (https://citizenlab.ca/2018/05/open-letter-to-francisco-partners-request-for-follow-up-on-apparent-misuse-of-sandvine-technology-and-sale-of-nso-group-to-verint-systems/)</u>, and, more recently, <u>Novalpina Capital (https://citizenlab.ca/2019/03/continued-correspondence-with-novalpina-on-nso-acquisition/)</u>. To date, NSO Group has failed to show that our research is flawed or erroneous in some way. Rather, the company continues to resort to outright denials without evidentiary support.



(https://citizenlab.ca/wp-content/webpc-passthru.php?src=https://citizenlab.ca/wp-content/uploads/2019/04/image3.png&nocache=1)

At least 25 cases of abuse (https://citizenlab.ca/2019/03/nso-spyware-slain-journalists-wife/) have been documented in Mexico by Citizen Lab and partner organizations R3D, SocialTic, and Article 19.

## Ahmed Mansoor's Targeting: Where It All Began

The 60 Minutes episode mentions our discovery that UAE dissident Ahmed Mansoor was a target of NSO spyware. In August 2016, Ahmed Mansoor sent us suspicious links (https://citizenlab.ca/wp-content/webpc-passthru.php?src=https://citizenlab.ca/wp-content/uploads/2016/08/mmd2.jpg&nocache=1) in SMSs he received on his iPhone purporting to show evidence of torture in Emirati prisons. We infected a device in a laboratory setting and were able to acquire a copy of NSO Group's Pegasus spyware. With the assistance of the security company Lookout Inc (https://info.lookout.com/rs/051-ESQ-475/images/lookout-pegasus-technical-analysis.pdf), we reverse engineered the spyware and verified that it exploited three separate unpatched software flaws in the iPhone product.

We responsibly disclosed our findings to Apple Inc., who in turn pushed out security patches (https://support.apple.com/en-us/HT201222), securing about a billion users of Apple products worldwide. The "Million Dollar Dissident (https://citizenlab.ca/2016/08/million-dollar-dissident-iphone-zero-day-nso-group-uae/)" report was the first ever published on NSO Group and is concrete evidence of the abuse of NSO Group spyware. We would not have been able to get a copy of NSO Group's Pegasus if Mansoor had not been targeted and Mansoor is neither a terrorist or a criminal. He is an award winning human rights defender (https://www.amnesty.org/en/latest/news/2015/10/ahmed-mansoor-selected-as-the-2015-laureate-martin-en-nals-award-for-human-rights-defenders/). Sadly, Mansoor was recently sentenced (https://www.amnesty.org/en/latest/news/2018/05/uae-activist-ahmed-mansoor-sentenced-to-10-years-in-prison-for-social-media-posts/) to 10 years in prison and fined approximately $270,000 USD for criticisms of the regime he posted on social media.

## From Spin to Spooks? Private Spies Targeting Citizen Lab, Litigants Against NSO Group

While NSO Group has made extensive attempts to paint themselves as concerned about accountability and abuses, we note two recent attempts (https://www.apnews.com/d1fa2715d86148a1b92aaa52188df052) to infiltrate the Citizen Lab and target our researchers by individuals with reported links to the Israeli-based private intelligence firm Black Cube. We note that the same operation targeted four other individuals (https://www.apnews.com/9bdbbfe0c8a2407aac14a1e995659de4) all of whom happen to be involved in litigation relating to NSO Group.

## *The Case of the Bumbling Spy: A Watchdog Group Gets Him on Camera*



A visitor to New York who claimed to be an investor named Michel Lambert is actually Aharon Almog-Assoulin, a retired Israeli security official.  Joseph Frederick/Associated Press

(https://citizenlab.ca/wp-content/webpc-passthru.php?src=https://citizenlab.ca/wp-content/uploads/2019/04/image5.png&nocache=1)

The New York Times report on the case of a retired Israeli security official linked to spy-for-hire firm Black Cube caught in a sting after setting up a meeting under a false identity with a Citizen Lab researcher (Image: New York Times (https://www.nytimes.com/2019/01/28/world/black-cube-nso-citizen-lab-intelligence.html)).

While it is not publicly known who hired these spies, their activities were focused on (unsuccessful) efforts to trick our researchers into providing sensitive information about our investigations into NSO Group and making statements that could be used to discredit our work.

The full episode and transcript can be found here. (https://www.cbsnews.com/news/interview-with-ceo-of-nso-group-israeli-spyware-maker-on-fighting-terror-khashoggi-murder-and-saudi-arabia-60-minutes/)

---

Privacy Policy (https://citizenlab.ca/privacy/)

Unless otherwise noted this site and its contents are licensed under a Creative Commons Attribution 2.5 Canada (https://creativecommons.org/licenses/by/2.5/ca/) license.

(http://munkschool.utoronto.ca/)

# EXHIBIT T

 (https://citizenlab.ca)

›

# New York Times

### WhatsApp Rushes to Fix Security Flaw Exposed in Hacking of Lawyer's Phone

**By** Miles Kenyon (https://citizenlab.ca/author/miles/)        May 13, 2019

A recently discovered (https://www.nytimes.com/2019/05/13/technology/nso-group-whatsapp-spying.html) security vulnerability on WhatsApp, currently used by over 1.5 billion people worldwide, has been found to have been exploited by NSO Group developed spyware. Unlike previous exploits engineered by NSO, the WhatsApp exploit does not require target interaction with the malicious code in order for the device to be compromised.

Citizen Lab researchers first discovered this exploit upon receiving information from a human rights lawyer indicating that they were contacted at odd hours from an unknown Swedish number. The lawyer, speaking under the condition of anonymity, is helping individuals abusively targeted by NSO group spyware, in their legal challenge against NSO.

WhatsApp has since rolled out a security update to address the vulnerability. Despite still being in the early stages of its investigation, a WhatsApp spokesperson did not deny that the number of users targeted with this spyware "could range in the dozens."

NSO Group's government-exclusive spyware has a track record of being used to maliciously target human rights defenders, journalists and lawyers—many in these communities now worry that they too have been targeted in similar attacks. End-to-end encryption, as implemented on WhatsApp, is used by persecuted communities and individuals around the world to communicate securely; NSO Group's latest spyware seeks to actively undermine this, targeting vulnerabilities in WhatsApp design, in an attempt to access encrypted information

Privacy Policy (https://citizenlab.ca/privacy/)

Unless otherwise noted this site and its contents are licensed under a Creative Commons Attribution 2.5 Canada (https://creativecommons.org/licenses/by/2.5/ca/) license.

(http://munkschool.utoronto.ca/)

# WhatsApp Rushes to Fix Security Flaw Exposed in Hacking of Lawyer's Phone

  



NSO Group headquarters in Herzliya, Israel. One of the firm's spyware tools was used to break into cellphones through a WhatsApp security flaw, researchers said.  Jack Guez/Agence France-Presse — Getty Images

By **Nicole Perlroth** and **Ronen Bergman**

May 13, 2019

SAN FRANCISCO — An Israeli firm accused of supplying tools for spying on human-rights activists and journalists now faces claims that its technology can use a security hole in WhatsApp, the messaging app used by 1.5 billion people, to break into the digital communications of iPhone and Android phone users.

Security researchers said they had found so-called spyware — designed to take advantage of the WhatsApp flaw — that bears the characteristics of technology from the company, the NSO Group.

WhatsApp engineers worked around the clock to patch the vulnerability and released a patch on Monday. They encouraged customers to update their apps as quickly as possible.

"WhatsApp encourages people to upgrade to the latest version of our app, as well as keep their mobile operating system up to date, to protect against potential targeted exploits designed to compromise information stored on mobile devices," the Facebook-owned company said in a statement.

ADVERTISEMENT

The WhatsApp hole was used to target a London lawyer who has been involved in lawsuits that accuse NSO Group of providing tools to hack the phones of Omar Abdulaziz, a Saudi dissident in Canada; a Qatari citizen; and a group of Mexican journalists and activists, the researchers said. The researchers believe the list of targets could be much longer.

Digital attackers could use the vulnerability to insert malicious code and steal data from an Android phone or an iPhone simply by placing a WhatsApp call, even if the victim did not pick up the call. As WhatsApp's engineers examined the vulnerability, they concluded that it was similar to other tools from the NSO Group, because of its digital footprint.

The lawyer, who spoke on the condition of anonymity because he feared retribution, said he had grown suspicious that his phone had been hacked when he started missing WhatsApp video calls from Swedish telephone numbers at odd hours. The lawyer contacted Citizen Lab at the Munk School of Global Affairs at the University of Toronto, which has helped uncover the use of NSO Group products in attacks on journalists, dissidents and activists.

Ten days ago, as Citizen Lab was looking into the incident, engineers at WhatsApp discovered what they described as abnormal voice calling activity on their systems, said a WhatsApp employee familiar with the investigation, who spoke on the condition of anonymity because the investigation was continuing.

WhatsApp alerted human-rights organizations about the threat and learned from Citizen Lab that the vulnerability had been used to

**Editors' Picks**

 Ever
Into
How
It.

 Wha
Tells
Disn
and

 Can
Scan
Fron
Chri

target the lawyer.

ADVERTISEMENT

WhatsApp said it had alerted the Justice Department to the attack. The WhatsApp flaw was first reported Monday by The Financial Times.

The products of the NSO Group, which operated in secret for years, were found in 2016 as part of a spying campaign on the iPhone of a now-jailed human-rights activist in the United Arab Emirates through undisclosed Apple security vulnerabilities. Since then, the NSO Group's spyware has been found on the iPhones of journalists, dissidents and even nutritionists.

The company has long advertised that its products are sold to government agencies solely for fighting terrorism and aiding law enforcement investigations.

The NSO Group said in a statement on Monday that its spyware was strictly licensed to government agencies and that it would investigate any "credible allegations of misuse." The company said it would not be involved in identifying a target for its technology, including the lawyer at the center of the latest accusations.

NSO's response is consistent with previous responses from the Israeli firm, which claims to have an in-house ethics committee that decides whether or not to sell to countries based on their human-rights records.

ADVERTISEMENT

But increasingly, NSO's spyware has been discovered in use by governments with questionable human-rights records like the United Arab Emirates, Saudi Arabia and Mexico.

The Israeli company sold a stake to Novalpina, a British private equity firm, in a leveraged buyout deal last year that valued it at nearly $1 billion.

The firm has been on a public-relations campaign in recent months to show its value to law enforcement, and has cited several examples of its spyware's being used, it says, to capture drug kingpins and to stop terrorist attacks.

"NSO and Novalpina have spent several months telling the world that there are adults in the room and telegraphing that they have made a commitment to close oversight," said John Scott-Railton, a senior researcher at Citizen Lab. "Yet even 24 hours ago, we observed what some believe to be an NSO infection attempt against a human-rights lawyer.

"As this case makes it very clear — if indeed this was NSO — there is still a very serious abuse problem," Mr. Scott-Railton added.

*__A correction was made on May 14, 2019__: An earlier version of this article misidentified the country from which a lawyer received telephone calls at odd hours. It was Sweden, not Norway.*

——

When we learn of a mistake, we acknowledge it with a correction. If you spot an error, please let us know at nytnews@nytimes.com.     Learn more

Nicole Perlroth reported from San Francisco, and Ronen Bergmen from Lima, Peru.

**Interested in All Things Tech?** Get the Bits newsletter for the latest from Silicon Valley and the technology industry. And sign up for the personal technology newsletter for advice and tips on the technology changing how you live.

A version of this article appears in print on May 14, 2019, Section B, Page 1 of the New York edition with the headline: Israeli Firm Used Flaw In WhatsApp for Spying. Order Reprints | Today's Paper | Subscribe

| READ 40 COMMENTS |
| :---: |

# EXHIBIT U

 (https://citizenlab.ca)

# New York Times

### WhatsApp Says Israeli Firm Used Its App in Spy Program

**By Miles Kenyon (https://citizenlab.ca/author/miles/)**       October 29, 2019

As reported in May 2019, WhatsApp identified and shortly thereafter fixed a vulnerability (https://www.ft.com/content/4da1117e-756c-11e9-be7d-6d846537acab) that allowed attackers to inject commercial spyware on to phones simply by ringing the number of a target's device. Today October 29th, WhatsApp is publicly attributing the attack to NSO Group (https://www.washingtonpost.com/opinions/2019/10/29/why-whatsapp-is-pushing-back-nso-group-hacking/), an Israeli spyware developer that also goes by the name Q Cyber Technologies.

"They get close to governments and when those governments do bad things with their products, commercial spyware companies can claim it's not their fault," Citizen Lab senior researcher John Scott-Railton told the New York Times (https://www.nytimes.com/2019/10/29/technology/whatsapp-nso-lawsuit.html).

After the incident, Citizen Lab volunteered to help WhatsApp identify cases where the suspected targets of this attack were members of civil society, such as human rights defenders and journalists. As part of our investigation into the incident, Citizen Lab has identified over 100 cases of abusive targeting of human rights defenders and journalists in at least 20 countries across the globe, ranging from Africa, Asia, Europe, the Middle East, and North America that took place after Novalpina Capital acquired NSO Group and began an ongoing public relations campaign to promote the narrative that the new ownership would curb abuses.

We continue to investigate the incident, and conduct outreach with the individuals targeted with these attacks to assist them in becoming more secure, and to better understand the cases.

---

Privacy Policy (https://citizenlab.ca/privacy/)

Unless otherwise noted this site and its contents are licensed under a Creative Commons Attribution 2.5 Canada (https://creativecommons.org/licenses/by/2.5/ca/) license.

(http://munkschool.utoronto.ca/)

Case 4:19-cv-07123-PJH Document 239-4 Filed 12/22/23 Page 557 of 593

The New York Times | https://www.nytimes.com/2019/10/29/technology/whatsapp-nso-lawsuit.html

# WhatsApp Says Israeli Firm Used Its App in Spy Program

By Nicole Perlroth

Published Oct. 29, 2019    Updated Jan. 15, 2021

SAN FRANCISCO — WhatsApp sued the Israeli cybersurveillance firm NSO Group in federal court on Tuesday, claiming the company's spy technology was used on the popular messaging service in a wide-ranging campaign targeting journalists and human-rights activists.

WhatsApp, which is owned by Facebook, claimed in the lawsuit that an NSO Group program that was intended to piggyback on WhatsApp was used to spy on more than 1,400 people in 20 countries.

The lawsuit did not say who was using NSO Group technology to target WhatsApp users. But the area codes for a number of phones that had been attacked indicated a focus on people in Mexico, Bahrain and the United Arab Emirates.

The filing of the lawsuit, believed to be the first by a tech company against a for-profit digital surveillance company, could be the "beginning of the end" of the rapid and largely unregulated adoption of these surveillance technologies, said John Scott-Railton, a senior researcher at Citizen Lab.

WhatsApp worked closely with Citizen Lab, a research group affiliated with the University of Toronto that aids victims of digital surveillance, in its investigation of the attacks, which took place from April to May.

The messaging service said the victims included 100 journalists, prominent female leaders, several people who had been targeted with unsuccessful assassination attempts, political dissidents and human rights activists — as well as their families.

The suit was filed in the United States District Court in the Northern District of California. NSO Group, which sells its surveillance technology to governments all over the world, said in a statement Tuesday that it disputed the claims in the WhatsApp lawsuit in the "strongest possible terms" and "will vigorously fight them."

NSO Group added that its technology was used by intelligence and law enforcement agencies in lawful antiterrorism efforts and crime-fighting, and it "has helped to save thousands of lives over recent years."

The investigation started after Citizen Lab charged that NSO Group's technology had been used to exploit a WhatsApp security hole to hack the phone of a London lawyer. The hole was patched in May.

The lawyer had represented several plaintiffs in lawsuits that accused NSO Group of providing tools to hack the phones of a Saudi Arabian dissident living in Canada, a Qatari citizen and a group of Mexican journalists and activists. He contacted Citizen Lab.

The researchers said they discovered that NSO technology left digital crumbs that helped them uncover the spy campaign. The weakness: Whoever was using the NSO Group hacking tools had to place a WhatsApp call to their target. Even if the target did not pick up the phone, NSO's technology would become embedded in the phone and provide access to all of its contents.

The missed calls, however, tipped off the lawyer, he told The New York Times.

After WhatsApp patched the security hole, NSO employees lamented that the company closed off a major espionage channel. An NSO employee even told a WhatsApp employee in a message: "You just closed our biggest remote for cellular," according to the WhatsApp complaint.

Citizen Lab and WhatsApp would not name the individuals targeted, citing privacy policies.

WhatsApp said in a statement that it was informing affected customers with special WhatsApp messages. The company is seeking a permanent injunction to block NSO from its service, and called on lawmakers to ban the use of cyberweapons like those sold by NSO Group to governments.

"This should serve as a wake-up call for technology companies, governments and all internet users," Will Cathcart, the head of WhatsApp, wrote in an opinion article in The Washington Post on Tuesday. "Tools that enable surveillance into our private lives are being abused and the proliferation of this technology into the hands of irresponsible companies and governments puts us all at risk."

Mr. Cathcart also urged technology firms to join a call from the United Nations special rapporteur, David Kaye, for an immediate moratorium on the sale, transfer and use of dangerous spyware.

NSO Group is one of dozens of digital spy outfits that provide technology to track everything a target does on a smartphone. Its spyware allows governments to track the location, communications, contacts and web activities of targets. But such access can be easily abused.

NSO Group has said in the past that it limits the sale of hacking tools to governments with poor human-rights records, but it has little insight into how its tools are used once they are in government hands. The company has said it only learns and investigates cases of abuse when they surface in the media.

NSO Group's technology has repeatedly been discovered on the phones of civilians.

In 2017, The Times helped uncover the use of NSO spyware on journalists, dissidents and consumer rights activists in Mexico. Since then, the spyware has been uncovered on the phone of the wife of a murdered Mexican journalist and, last year, on the phone of a close confidant of Jamal Khashoggi, a journalist whose murder was linked by United States intelligence services to the Saudi Arabian government.

The WhatsApp complaint that was filed on Tuesday claims that NSO Group is closer to the deployment of its spyware than it portrays to the public. WhatsApp traced several servers that deployed NSO's spyware back to internet addresses operated directly by NSO Group. The company leased servers — including servers in the United States — from Amazon and two other cloud services called Choopa and Quadranet, to help deploy its spyware, the lawsuit said.

Amazon did not return a request for comment.

Since NSO Group was founded in 2011, its spy technology, called Pegasus, has become the preferred mobile spy tool of many governments. An early NSO commercial proposal leaked to The Times claimed Pegasus could overcome encryption to grant "unlimited access" to everything on a target's mobile device.

"Pegasus silently deploys invisible software on the target device," the company's early pitch read. "Installation is performed remotely over-the-air, does not require any action from or engagement with the target and leaves no trace whatsoever on the device."

For years, commercial spyware makers have been unregulated, in part because governments are the clients.

"They get close to governments and when those governments do bad things with their products, commercial spyware companies can claim it's not their fault," said Mr. Scott-Railton, of Citizen Lab.

Earlier this year, Novalpina Capital, a private equity firm, acquired a stake in NSO Group. The firm has been trying to help NSO Group polish its image, highlighting the use of its technology in notable crime fighting, like the arrest of Joaquín Guzmán, the drug cartel leader known as El Chapo.

Stephen Peel, Novalpina Capital's founding partner, said in a letter to human rights groups that the company was determined to make sure its technology was used for "the prevention of harm to fundamental human rights arising from terrorism and serious crime," and not abused.

But Citizen Lab said in a statement that it had repeatedly raised questions to Novalpina about whether its public statements about human rights compliance made any difference, given how frequently NSO's spyware had been abused.

Follow Nicole Perlroth on Twitter: @nicoleperlroth

**Interested in All Things Tech?** Get the Bits newsletter for the latest from Silicon Valley. And sign up for the personal tech newsletter for advice and tips on the technology changing how you live.

A version of this article appears in print on , Section B, Page 1 of the New York edition with the headline: WhatsApp Links Firm To Spying

# EXHIBIT V

 (https://citizenlab.ca)

›

# New York Times
### I Was Hacked. The Spyware Used Against Me Makes Us All Vulnerable.

**By Miles Kenyon (https://citizenlab.ca/author/miles/)**        October 24, 2021

New York Times (https://www.nytimes.com/2021/10/24/insider/hacking-nso-surveillance.html) journalist and bureau chief, Ben Hubbard, discusses working with the Citizen Lab and discovering that he had been hacked several times by operators using NSO Group's Pegasus spyware.

Read the full story here (https://www.nytimes.com/2021/10/24/insider/hacking-nso-surveillance.html).

---

Privacy Policy (https://citizenlab.ca/privacy/)

Unless otherwise noted this site and its contents are licensed under a Creative Commons Attribution 2.5 Canada (https://creativecommons.org/licenses/by/2.5/ca/) license.

(http://munkschool.utoronto.ca/)

 *The New York Times*    https://www.nytimes.com/2021/10/24/insider/hacking-nso-surveillance.html

**TIMES INSIDER**

## *I Was Hacked. The Spyware Used Against Me Makes Us All Vulnerable.*

*Invasive hacking software sold to countries to fight terrorism is easily abused. Researchers say my phone was hacked twice, probably by Saudi Arabia.*

**By Ben Hubbard**

Published Oct. 24, 2021    Updated Nov. 8, 2021

---

**Sign up for the Israel-Hamas War Briefing.** The latest news about the
conflict. Get it sent to your inbox.

---

Times Insider explains who we are and what we do, and delivers behind-the-scenes insights into how our journalism comes together.

BEIRUT, Lebanon — In Mexico, the government hacked the cellphones of journalists and activists. Saudi Arabia has broken into the phones of dissidents at home and abroad, sending some to prison. The ruler of Dubai hacked the phones of his ex-wife and her lawyers.

So perhaps I should not have been surprised when I learned recently that I, too, had been hacked.

Still, the news was unnerving.

As a New York Times correspondent who covers the Middle East, I often speak to people who take great risks to share information that their authoritarian rulers want to keep secret. I take many precautions to protect these sources because if they were caught they could end up in jail, or dead.

But in a world where we store so much of our personal and professional lives in the devices we carry in our pockets, and where surveillance software continues to become ever more sophisticated, we are all increasingly vulnerable.

As it turned out, I didn't even have to click on a link for my phone to be infected.

To try to determine what had happened, I worked with Citizen Lab, a research institute at the Munk School of Global Affairs at the University of Toronto that studies spyware.

I hoped to find out when I had been hacked, by whom and what information had been stolen. But even with the help of professional internet sleuths, the answers were elusive.

What the investigation did find was that I had a run-in with the growing global spyware industry, which sells surveillance tools to governments to help them fight crime and track terrorists.

But the companies that sell these tools operate in the shadows, in a market that is largely unregulated, allowing states to deploy the technology as they wish, including against activists and journalists.

In 2018, I had been targeted with a suspicious text message that Citizen Lab determined had likely been sent by Saudi Arabia using software called Pegasus. The software's developer, the Israel-based NSO Group, denied its software had been used.



A screen shot from Ben Hubbard's phone of a WhatsApp message from June 2018 inviting him to a protest at the Saudi Embassy in Washington. Technology researchers later identified it as an attempt to hack his phone, likely by Saudi Arabia.

This year, a member of The Times's tech security team found another hacking attempt from 2018 on my phone. The attack came via an Arabic-language WhatsApp message that invited me by name to a protest at the Saudi Embassy in Washington.

Bill Marczak, a senior fellow at Citizen Lab, said there was no sign that either attempt had succeeded since I had not clicked on the links in those messages.

But he also found that I had been hacked twice, in 2020 and 2021, with so-called "zero-click" exploits, which allowed the hacker to get inside my phone without my clicking on any links. It's like being robbed by a ghost.

In the second case, Mr. Marczak said, once inside my phone, the attacker apparently deleted traces of the first hack. Picture a thief breaking back into a jewelry store he had robbed to erase fingerprints.

Tech security experts told me it was nearly impossible to definitively identify the culprits.

But based on code found in my phone that resembled what he had seen in other cases, Mr. Marczak said he had "high confidence" that Pegasus had been used all four times.

In the two attempts in 2018, he said, it appeared that Saudi Arabia had launched the attacks because they came from servers run by an operator who had previously targeted a number of Saudi activists.

It was not clear which country was responsible for the 2020 and 2021 hacks, but he noted that the second one came from an account that had been used to hack a Saudi activist.

I have been writing about Saudi Arabia for years and published a book last year about Crown Prince Mohammed bin Salman, the kingdom's de facto ruler, so Saudi Arabia might have reasons for wanting to peek inside my phone.

NSO denied its products had been involved in the hacks, writing in an email that I "was not a target of Pegasus by any of NSO's customers" and dismissing Mr. Marczak's findings as "speculation."

The company said it had not had the technology described in the 2018 attempts, and that I could not have been a target in 2020 or 2021 because of "technical and contractual reasons and restrictions" that it did not explain.



A protest outside the offices of NSO Group in July.  Nir Elias/Reuters

The Saudi Embassy in Washington did not respond to a request for comment.

NSO declined to say more on the record, but The Times reported that the company had canceled its contracts with Saudi Arabia in 2018 after Saudi agents killed the dissident writer Jamal Khashoggi, only to resume doing business with the kingdom the following year, adding contractual restrictions on the use of the software.

NSO shut down the Saudi system again this year after Citizen Lab found that the government had used Pegasus to hack the phones of 36 employees of the Arabic satellite network Al Jazeera.

Assigning responsibility for a particular hack is difficult, said Winnona DeSombre, a fellow at the Atlantic Council who studies commercial spyware, because many companies sell products similar to Pegasus, many countries use them and the software is designed to be covert.

She compared the process of analyzing the limited data left on compromised devices to "blind men touching the elephant."

"You can't say without the shadow of a doubt," she said.

The traces left on my phone did not indicate how long the hackers had been inside or what they took, although they could have stolen anything: photos, contacts, passwords and text messages. They would have also been able to remotely turn on my microphone and camera to eavesdrop or spy on me.

Did they steal my contacts so they could arrest my sources? Comb through my messages to see who I'd talked to? Troll through photos of my family at the beach? Only the hackers knew.

As far as I know, no harm has come to any of my sources because of information that may have been stolen from my phone. But the uncertainty was enough to make me lose sleep.

Last month, Apple fixed the vulnerability that the hackers had used to get into my phone this year, after being informed of it by Citizen Lab. But other vulnerabilities may remain.

As long as we store our lives on devices that have vulnerabilities, and surveillance companies can earn millions of dollars selling ways to exploit them, our defenses are limited, especially if a government decides it wants our data.

Now, I limit the information I keep on my phone. I store sensitive contacts offline. I encourage people to use Signal, an encrypted messaging app, so that if a hacker makes it in, there won't be much to find.

Many spyware companies, including NSO, prevent the targeting of United States phone numbers, presumably to avoid picking a fight with Washington that could lead to increased regulation, so I use an American phone number.

I reboot my phone often, which can kick out (but not keep off) some spy programs. And, when possible, I resort to one of the few non-hackable options we still have: I leave my phone behind and meet people face to face.

**Ben Hubbard** is the Beirut bureau chief. He has spent more than a dozen years in the Arab world, including Syria, Iraq, Lebanon, Saudi Arabia, Egypt and Yemen. He is the author of "MBS: The Rise to Power of Mohammed bin Salman." More about Ben Hubbard

A version of this article appears in print on , Section A, Page 2 of the New York edition with the headline: I Was Hacked, Without a Click

# EXHIBIT W

 (https://citizenlab.ca)

›

# Reuters

### How a Saudi woman's iPhone revealed hacking around the world

**By Miles Kenyon (https://citizenlab.ca/author/miles/)**          February 17, 2022

Citizen Lab researcher Bill Marczak discovered women's rights activist Loujain al-Hathloul's phone had been hacked, unfolding several legal actions against the Israeli NSO Group. "It was a game changer," Marczak told Reuters (https://www.reuters.com/technology/how-saudi-womans-iphone-revealed-hacking-around-world-2022-02-17/). "We caught something that the company thought was uncatchable."



(https://citizenlab.ca/wp-content/webpc-passthru.php?
src=https://citizenlab.ca/wp-content/uploads/2022/05/Picture1-
2.png&nocache=1)

Photograph: REUTERS/Amir Cohen

---

Privacy Policy (https://citizenlab.ca/privacy/)

Unless otherwise noted this site and its contents are licensed under a Creative Commons Attribution 2.5 Canada (https://creativecommons.org/licenses/by/2.5/ca/) license.

(http://munkschool.utoronto.ca/)

**News**Room

2/17/22 Reuters News 10:25:37

Reuters News
Copyright (c) 2022 Thomson Reuters

February 17, 2022

RPT-INSIGHT-How a Saudi woman's iPhone revealed hacking around the world

Joel Schectman

Christopher Bing

WASHINGTON, Feb 17 (Reuters)

(Repeats to additional subscribers)

By Joel Schectman and Christopher Bing

WASHINGTON, Feb 17 (Reuters) - A single activist helped turn the tide against NSO Group, one of the world's most sophisticated spyware companies now facing a cascade of legal action and scrutiny in Washington over damaging new allegations that its software was used to hack government officials and dissidents around the world.

It all started with a software glitch on her iPhone.

An unusual error in NSO's spyware allowed Saudi women's rights activist Loujain al-Hathloul and privacy researchers to discover a trove of evidence suggesting the Israeli spyware maker had helped hack her iPhone, according to six people involved in the incident. A mysterious fake image file within her phone, mistakenly left behind by the spyware, tipped off security researchers.

The discovery on al-Hathloul's phone last year ignited a storm of legal and government action that has put NSO on the defensive. How the hack was initially uncovered is reported here for the first time.

Al-Hathloul, one of Saudi Arabia's most prominent activists, is known for helping lead a campaign to end the ban on women drivers in Saudi Arabia. She was released from jail in February 2021 on charges of harming national security.[nL1N2KG29T]

Soon after her release from jail, the activist received an email from Google warning her that state-backed hackers had tried to penetrate her Gmail account. Fearful that her iPhone had been hacked as well, al-Hathloul contacted the Canadian privacy rights group Citizen Lab and asked them to probe her device for evidence, three people close to al-Hathloul told Reuters.

After six months of digging through her iPhone records, Citizen Lab researcher Bill Marczak made what he described as an unprecedented discovery: a malfunction in the surveillance software implanted on her phone had left a copy of the malicious image file, rather than deleting itself, after stealing the messages of its target.

He said the finding, computer code left by the attack, provided direct evidence NSO built the espionage tool.

"It was a game changer," said Marczak "We caught something that the company thought was uncatchable."

The discovery amounted to a hacking blueprint and led Apple Inc to notify thousands of other state-backed hacking victims around the world, according to four people with direct knowledge of the incident.

Citizen Lab and al-Hathloul's find provided the basis for Apple's November 2021 lawsuit against NSO and it also reverberated in Washington, where U.S. officials learned that NSO's cyberweapon was used to spy on American diplomats.

In recent years, the spyware industry has enjoyed explosive growth as governments around the world buy phone hacking software that allows the kind of digital surveillance once the purview of just a few elite intelligence agencies.

Over the past year, a series of revelations from journalists and activists, including the international journalism collaboration Pegasus Project, has tied the spyware industry to human rights violations, fueling greater scrutiny of NSO and its peers.

But security researchers say the al-Hathloul discovery was the first to provide a blueprint of a powerful new form of cyberespionage, a hacking tool that penetrates devices without any interaction from the user, providing the most concrete evidence to date of the scope of the weapon.

In a statement, an NSO spokesperson said the company does not operate the hacking tools it sells – "government, law enforcement and intelligence agencies do." The spokesperson did not answer questions on whether its software was used to target al-Hathloul or other activists.

But the spokesperson said the organizations making those claims were "political opponents of cyber intelligence," and suggested some of the allegations were "contractually and technologically impossible." The spokesperson declined to provide specifics, citing client confidentiality agreements.

Without elaborating on specifics, the company said it had an established procedure to investigate alleged misuse of its products and had cut off clients over human rights issues.

DISCOVERING THE BLUEPRINT

Al-Hathloul had good reason to be suspicious - it was not the first time she was being watched.

A 2019 Reuters investigation revealed that she was targeted in 2017 by a team of U.S. mercenaries who surveilled dissidents on behalf of the United Arab Emirates under a secret program called Project Raven, which categorized her as a "national security threat" and hacked into her iPhone.

She was arrested and jailed in Saudi Arabia for almost three years, where her family says she was tortured and interrogated utilizing information stolen from her device. Al-Hathloul was released in February 2021 and is currently banned from leaving the country.

Reuters has no evidence NSO was involved in that earlier hack.

Al-Hathloul's experience of surveillance and imprisonment made her determined to gather evidence that could be used against those who wield these tools, said her sister Lina al-Hathloul. "She feels she has a responsibility to continue this fight because she knows she can change things."

The type of spyware Citizen Lab discovered on al-Hathloul's iPhone is known as a "zero click," meaning the user can be infected without ever clicking on a malicious link.

Zero-click malware usually deletes itself upon infecting a user, leaving researchers and tech companies without a sample of the weapon to study. That can make gathering hard evidence of iPhone hacks almost impossible, security researchers say.

But this time was different.

The software glitch left a copy of the spyware hidden on al-Hathloul's iPhone, allowing Marczak and his team to obtain a virtual blueprint of the attack and evidence of who had built it.

"Here we had the shell casing from the crime scene," he said.

Marczak and his team found that the spyware worked in part by sending picture files to al-Hathloul through an invisible text message.

The image files tricked the iPhone into giving access to its entire memory, bypassing security and allowing the installation of spyware that would steal a user's messages.

The Citizen Lab discovery provided solid evidence the cyberweapon was built by NSO, said Marczak, whose analysis was confirmed by researchers from Amnesty International and Apple, according to three people with direct knowledge of the situation.

The spyware found on al-Hathloul's device contained code that showed it was communicating with servers Citizen Lab previously identified as controlled by NSO, Marczak said. Citizen Lab named this new iPhone hacking method "ForcedEntry." The researchers then provided the sample to Apple last September.

Having a blueprint of the attack in hand allowed Apple to fix the critical vulnerability and led them to notify thousands of other iPhone users who were targeted by NSO software, warning them they had been targeted by "state-sponsored attackers."

It was the first time Apple had taken this step.

While Apple determined the vast majority were targeted through NSO's tool, security researchers also discovered spy software from a second Israeli vendor QuaDream leveraged the same iPhone vulnerability, Reuters reported earlier this month. QuaDream has not responded to repeated requests for comment. [nL1N2U61RI]

The victims ranged from dissidents critical of Thailand's government to human rights activists in El Salvador.

Citing the findings obtained from al-Hathloul's phone, Apple sued NSO in November in federal court alleging the spyware maker had violated U.S. laws by building products designed "to target, attack, and harm Apple users, Apple products, and Apple." Apple credited Citizen Lab with providing "technical information" used as evidence for the lawsuit, but did not reveal that it was originally obtained from al-Hathloul's iPhone.

NSO said its tools have assisted law enforcement and have saved "thousands of lives." The company said some of the allegations attributed to NSO software were not credible, but declined to elaborate on specific claims citing confidentiality agreements with its clients.

Among those Apple warned were at least nine U.S. State Department employees in Uganda who were targeted with NSO software, according to people familiar with the matter, igniting a fresh wave of criticism against the company in Washington.

In November, the U.S. Commerce Department placed NSO on a trade blacklist, restricting American companies from selling the Israeli firm software products, threatening its supply chain. [nL1N2RU19S]

The Commerce Department said the action was based on evidence that NSO's spyware was used to target "journalists, businesspeople, activists, academics, and embassy workers."

In December, Democratic Senator Ron Wyden and 17 other lawmakers called for the Treasury Department to sanction NSO Group and three other foreign surveillance companies they say helped authoritarian governments commit human rights abuses.

"When the public saw you had U.S. government figures getting hacked, that quite clearly moved the needle," Wyden told Reuters in an interview, referring to the targeting of U.S. officials in Uganda.

Lina al-Hathloul, Loujain's sister, said the financial blows to NSO might be the only thing that can deter the spyware industry. "It hit them where it hurts," she said.

<^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^ Apple files lawsuit against NSO Group, saying U.S. citizens were targets [nL4N2SE31T] SPECIAL REPORT-White House veterans helped Gulf monarchy build secret surveillance unit https://www.reuters.com/investigates/special-report/usa-raven-whitehouse/ EXCLUSIVE iPhone flaw exploited by second Israeli spy firm-sources [nL1N2U61RI] EXCLUSIVE-U.S. State Department phones hacked with Israeli company spyware - sources [nL1N2SM1Z9] EXCLUSIVE-U.S. lawmakers call for sanctions against Israel's NSO, other spyware firms [nL1N2SZ1PJ] FACTBOX-Who is Saudi human rights activist Loujain al-Hathloul? [nL1N2KG29T] The Pegasus Project https://forbiddenstories.org/case/the-pegasus-project/

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^> (Reporting by Joel Schectman and Christopher Bing; editing by Kieran Murray and Edward Tobin) ((Joel.Schectman@thomsonreuters.com;))

---- **Index References** ----

Company: Public Joint Stock Company "Quadra - Power Generation"; MONARCH GULF EXPLORATION, INC.; Treasury department of CUSCAL; APPLE INC.; Pegasus Project Stadthaus Halle GmbH; AMNESTY INTERNATIONAL OF THE U. S. A., INC.; YOUNGEVITY INTERNATIONAL, INC.; United States of America; N.S.O. GROUP TECHNOLOGIES LTD; Citizen Lab; HATHOUT TRADING EST; U.S. Department of Commerce; GOOGLE LLC; DEPARTMENT OF COMMERCE & INVESTMENT

News Subject: (Cybercrime & Viruses (1CY34); Judicial Cases & Rulings (1JU36); Crime (1CR87); Lobby & Pressure Groups (1LO18); Intellectual Freedoms & Civil Liberties (1IN08); Corporate Events (1CR05); Human Rights (1HU19); Government (1GO80); Fraud (1FR30); Non-Governmental Organizations (1NO36); Social Issues (1SO05); Emerging Market Countries (1EM65); Top World News (1WO62); Legal (1LE33); Cybercrime & Viruses (1CY34); Corporate Governance (1XO27))

Industry: (Consumer Electronics (1CO61); Consumer Products & Services (1CO62); Electronics (1EL16); Internet (1IN27); Internet Security (1IN07); Mobile Phones & Pagers (1WI07); Security Software (1SE53); Telecom Consumer Equipment (1TE03); Internet (1IN27); Specialty Retailers (1SP71); Software (1SO30); Retail (1RE82); Retailers (1RE64); Consumer Products & Services (1CO62); Business Services (1BU80); I.T. in Manufacturing (1IT56); Telecom Equipment (1TE98); Publishing (1PU26); I.T. (1IT96); Electrical Retailing (1EL35); I.T. Consulting & Services (1IT92))

Region: (Africa (1AF90); Arab States (1AR46); East Africa (1EA80); Gulf States (1GU47); Israel (1IS16); Middle East (1MI23); Saudi Arabia (1SA38); Uganda (1UG45); Saudi Arabia (1SA38); Asia (1AS61); Middle East (1MI23); Americas (1AM92); USA (1US73))

Language: EN

Other Indexing: (Thailand; U.S. State Department; Democratic; White House; Israel; nL1N2SZ1PJ; FACTBOX; QuaDream; Gulf monarchy; Treasury Department; Apple Inc; Pegasus Project; Amnesty International; al-Hathloul; U.S. government; NSO Group; Citizen Lab; -Hathloul; U.S. Commerce Department; Google; Commerce Department) (Joel Schectman; Christopher Bing; Loujain al-Hathloul; Bill Marczak; Lina al-Hathloul; Ron Wyden; Kieran Murray; Edward Tobin; Ed Tobin)

Keywords: CYBER; APPLE; LOUJAIN; REPEAT,; INSIGHT,; PIX; Citizen Lab; Cyberwarfare; Espionage; Human rights in Saudi Arabia; IPhone; Loujain al-Hathloul; Malware; NSO; NSO Group; Pegasus; Security; Spyware

Word Count: 1614

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.



# EXHIBIT X

 (https://citizenlab.ca)

›

# The New Yorker

**How democracies spy on their citizens**

**By Miles Kenyon (https://citizenlab.ca/author/miles/)**     April 18, 2022

In an exclusive with the New Yorker's Ronan Farrow (https://www.newyorker.com/magazine/2022/04/25/how-democracies-spy-on-their-citizens), Citizen Lab researchers reveal the presence of Pegasus spyware on the phones of 65 activists, politicians, and civil society groups in Catalonia. The research uncovered the largest number of confirmed spyware victims and targets in a single case, including every Catalan president since 2010. Given the ever-expanding list of countries using Pegasus—including several liberal democracies—Citizen Lab fellow Elies Campo says the cases involving Catalonia "were probably just the tip of the iceberg."

Privacy Policy (https://citizenlab.ca/privacy/)

Unless otherwise noted this site and its contents are licensed under a Creative Commons Attribution 2.5 Canada (https://creativecommons.org/licenses/by/2.5/ca/) license.

(http://munkschool.utoronto.ca/)

How Democracies Spy on Their Citizens | The New Yorker

A REPORTER AT LARGE

# HOW DEMOCRACIES SPY ON THEIR CITIZENS

*The inside story of the world's most notorious commercial spyware and the big tech companies waging war against it.*

**By Ronan Farrow**

April 18, 2022



*NSO Group's software has been linked to repressive regimes, but now "all types of governments" use it, an observer said.*  Illustration by Timo Lenzen

Save this story

Listen to this story

▶                                                    0:00 / 56:54

The parliament of Catalonia, the autonomous region in Spain, sits on the edge of Barcelona's Old City, in the remains of a fortified citadel constructed by King Philip V to monitor the restive local population. The citadel was built with forced labor from hundreds of Catalans, and its remaining structures and gardens are for many a reminder of oppression. Today, a majority of Catalan parliamentarians support independence for the region, which the Spanish government has deemed unconstitutional. In 2017, as Catalonia prepared for a referendum on independence, Spanish police arrested at least twelve separatist politicians. On the day of the referendum, which received the support of ninety per cent of voters despite low turnout, police raids of polling stations injured hundreds of civilians. Leaders of the independence movement, some of whom live in exile across Europe, now meet in private and communicate through encrypted messaging platforms.

One afternoon last month, Jordi Solé, a pro-independence member of the European Parliament, met a digital-security researcher, Elies Campo, in one of the Catalan parliament's ornate chambers. Solé, who is forty-five and wore a loose-fitting suit, handed over his cell phone, a silver iPhone 8 Plus. He had been getting suspicious texts and wanted to have the device analyzed. Campo, a soft-spoken thirty-eight-year-old with tousled dark hair, was born and raised in Catalonia and supports independence. He spent years working for WhatsApp and Telegram in San Francisco, but recently moved home. "I feel in a way it's a kind of duty," Campo told me. He now works as a fellow at the Citizen Lab, a research group based at the University of Toronto that focusses on high-tech human-rights abuses.

Campo collected records of Solé's phone's activity, including crashes it had experienced, then ran specialized software to search for spyware designed to operate invisibly. As they waited, Campo looked through the phone for evidence of attacks that take varied forms: some arrive through WhatsApp or as S.M.S. messages that seem to come from known contacts; some require a click on a link, and others operate with no action from the user. Campo identified an apparent notification from the Spanish government's social-security agency which used the same format as links to malware that the Citizen Lab had found on other phones. "With this message, we have the proof that at some point you were attacked," Campo explained. Soon, Solé's phone vibrated. "This phone tested positive," the screen read. Campo told Solé, "There's two confirmed infections," from June, 2020. "In those days, your device was infected—they took control of it and were on it probably for some hours. Downloading, listening, recording."

Solé's phone had been infected with Pegasus, a spyware technology designed by NSO Group, an Israeli firm, which can extract the contents of a phone, giving access to its texts and photographs, or activate its camera and microphone to provide real-time surveillance—exposing, say, confidential meetings. Pegasus is useful for law enforcement seeking criminals, or for authoritarians looking to quash dissent. Solé had been hacked in the weeks before he joined the European Parliament, replacing a colleague who had been imprisoned for pro-independence activities. "There's been a clear political and judicial persecution of people and elected representatives," Solé told me, "by using these dirty things, these dirty methodologies."

In Catalonia, more than sixty phones—owned by Catalan politicians, lawyers, and activists in Spain and across Europe—have been targeted using Pegasus. This is the largest forensically documented cluster of such attacks and infections on record. Among the victims are three members of the European Parliament,

including Solé. Catalan politicians believe that the likely perpetrators of the hacking campaign are Spanish officials, and the Citizen Lab's analysis suggests that the Spanish government has used Pegasus. A former NSO employee confirmed that the company has an account in Spain. (Government agencies did not respond to requests for comment.) The results of the Citizen Lab's investigation are being disclosed for the first time in this article. I spoke with more than forty of the targeted individuals, and the conversations revealed an atmosphere of paranoia and mistrust. Solé said, "That kind of surveillance in democratic countries and democratic states—I mean, it's unbelievable."

[*Support The New Yorker's award-winning journalism. Subscribe today »*]

Commercial spyware has grown into an industry estimated to be worth twelve billion dollars. It is largely unregulated and increasingly controversial. In recent years, investigations by the Citizen Lab and Amnesty International have revealed the presence of Pegasus on the phones of politicians, activists, and dissidents under repressive regimes. An analysis by Forensic Architecture, a research group at the University of London, has linked Pegasus to three hundred acts of physical violence. It has been used to target members of Rwanda's opposition party and journalists exposing corruption in El Salvador. In Mexico, it appeared on the phones of several people close to the reporter Javier Valdez Cárdenas, who was murdered after investigating drug cartels. Around the time that Prince Mohammed bin Salman of Saudi Arabia approved the murder of the journalist Jamal Khashoggi, a longtime critic, Pegasus was allegedly used to monitor phones belonging to Khashoggi's associates, possibly facilitating the killing, in 2018. (Bin Salman has denied involvement, and NSO said, in a statement, "Our technology was not associated in any way with the heinous murder.") Further reporting through a collaboration of news outlets known as the Pegasus Project has reinforced the links between NSO Group and anti-democratic states. But there is evidence that Pegasus is being used in at least forty-five countries, and it and similar tools have been purchased by law-enforcement agencies in the United States and across Europe. Cristin Flynn Goodwin, a Microsoft executive who has led the company's efforts to fight spyware, told me, "The big, dirty secret is that governments are buying this stuff—not just authoritarian governments but all types of governments."

NSO Group is perhaps the most successful, controversial, and influential firm in a generation of Israeli startups that have made the country the center of the spyware industry. I first interviewed Shalev Hulio, NSO Group's C.E.O., in 2019, and since then I have had access to NSO Group's staff, offices, and technology. The company is in a state of contradiction and crisis. Its programmers speak with pride about the use of their software in criminal investigations—NSO claims that Pegasus is sold only to law-enforcement and intelligence agencies—but also of the illicit thrill of compromising technology platforms. The company has been valued at more than a billion dollars. But now it is contending with debt, battling an array of corporate backers, and, according to industry observers, faltering in its long-standing efforts to sell its products to U.S. law enforcement, in part through an American branch, Westbridge Technologies. It also faces numerous lawsuits in many countries, brought by Meta (formerly Facebook), by Apple, and by individuals who have been hacked by NSO. The company said in its statement that it had been "targeted by a number of politically motivated advocacy organizations, many with well-known anti-Israel biases," and added that "we have repeatedly cooperated with governmental investigations, where credible allegations merit, and have learned from each of these findings and reports, and improved the safeguards in our technologies." Hulio told me, "I

Case 4:19-cv-07123-PJH   Document 239-4   Filed 12/22/23   Page 576 of 593

never imagined in my life that this company would be so famous. . . . I never imagined that we would be so successful." He paused. "And I never imagined that it would be so controversial."

Hulio, who is forty, has a lumbering gait and pudgy features. He typically wears loose T-shirts and jeans, with his hair in a utilitarian buzz cut. Last month, I visited him at his duplex in a luxury high-rise in Park Tzameret, the fanciest neighborhood in Tel Aviv. He lives with his three small children and his wife, Avital, who is expecting a fourth. There's a pool on the upper level of Hulio's apartment, and downstairs, in the double-height living room, is a custom arcade cabinet stocked with retro games and bearing a cartoon portrait of him, wearing shades, next to the word "Hulio" in large eight-bit font. Avital attends to the children, frequent renovations, and an ever-shifting array of pets: rabbits remain, a parrot does not. The family has a teacup poodle named Marshmallow Rainbow Sprinkle.

Hulio, Omri Lavie, and Niv Karmi founded NSO Group in 2010, creating its name from the first letters of their names and renting space in a converted chicken coop on a kibbutz. The company now has some eight hundred employees, and its technology has become a leading tool of state-sponsored hacking, instrumental in the fight among great powers.



*"Your résumé looks terrific, but I'm just not sure we can deal with the shedding."*

Cartoon by Elisabeth McNair

    Open cartoon gallery

How democracies spy on their citizens | The New Yorker

The Citizen Lab's researchers concluded that, on July 26 and 27, 2020, Pegasus was used to infect a device connected to the network at 10 Downing Street, the office of Boris Johnson, the Prime Minister of the United Kingdom. A government official confirmed to me that the network was compromised, without specifying the spyware used. "When we found the No. 10 case, my jaw dropped," John Scott-Railton, a senior researcher at the Citizen Lab, recalled. "We suspect this included the exfiltration of data," Bill Marczak, another senior researcher there, added. The official told me that the National Cyber Security Centre, a branch of British intelligence, tested several phones at Downing Street, including Johnson's. It was difficult to conduct a thorough search of phones—"It's a bloody hard job," the official said—and the agency was unable to locate the infected device. The nature of any data that may have been taken was never determined.

The Citizen Lab suspects, based on the servers to which the data were transmitted, that the United Arab Emirates was likely behind the hack. "I'd thought that the U.S., U.K., and other top-tier cyber powers were moving slowly on Pegasus because it wasn't a direct threat to their national security," Scott-Railton said. "I realized I was mistaken: even the U.K. was underestimating the threat from Pegasus, and had just been spectacularly burned." The U.A.E. did not respond to multiple requests for comment, and NSO employees told me that the company was unaware of the hack. One of them said, "We hear about every, every phone call that is being hacked over the globe, we get a report immediately"—a statement that contradicts the company's frequent arguments that it has little insight into its customers' activities. In its statement, the company added, "Information raised in the inquiry indicates that these allegations are, yet again, false and could not be related to NSO products for technological and contractual reasons."

According to an analysis by the Citizen Lab, phones connected to the Foreign Office were hacked using Pegasus on at least five occasions, from July, 2020, through June, 2021. The government official confirmed that indications of hacking had been uncovered. According to the Citizen Lab, the destination servers suggested that the attacks were initiated by states including the U.A.E., India, and Cyprus. (Officials in India and Cyprus did not respond to requests for comment.) About a year after the Downing Street hack, a British court revealed that the U.A.E. had used Pegasus to spy on Princess Haya, the ex-wife of Sheikh Mohammed bin Rashid al-Maktoum, the ruler of Dubai, one of the Emirates. Maktoum was engaged in a custody dispute with Haya, who had fled with their two children to the U.K. Her attorneys, who are British, were also targeted. A source directly involved told me that a whistle-blower contacted NSO to alert it to the cyberattack on Haya. The company enlisted Cherie Blair, the wife of former Prime Minister Tony Blair and an adviser to NSO, to notify Haya's attorneys. "We alerted everyone in time," Hulio told me. Soon afterward, the U.A.E. shut down its Pegasus system, and NSO announced that it would prevent its software from targeting U.K. phone numbers, as it has long done for U.S. numbers.

Elsewhere in Europe, Pegasus has filled a need for law-enforcement agencies that previously had limited cyber-intelligence capacity. "Almost all governments in Europe are using our tools," Hulio told me. A former senior Israeli intelligence official added, "NSO has a monopoly in Europe." German, Polish, and Hungarian authorities have admitted to using Pegasus. Belgian law enforcement uses it, too, though it won't admit it. (A spokesperson for the Belgian federal police said that it respects "a legal framework as to the use of intrusive methods in private life.") A senior European law-enforcement official whose agency uses Pegasus said that it gave an inside look at criminal organizations: "When do they want to store the gas, to go to the place, to put

the explosive?" He said that his agency uses Pegasus only as a last resort, with court approval, but conceded, "It's like a weapon. . . . It can always occur that an individual uses it in the wrong way."

The United States has been both a consumer and a victim of this technology. Although the National Security Agency and the C.I.A. have their own surveillance technology, other government offices, including in the military and in the Department of Justice, have bought spyware from private companies, according to people involved in those transactions. The *Times* has reported that the F.B.I. purchased and tested a Pegasus system in 2019, but the agency denied deploying the technology.

Establishing strict rules about who can use commercial spyware is complicated by the fact that such technology is offered as a tool of diplomacy. The results can be chaotic. The *Times* has reported that the C.I.A. paid for Djibouti to acquire Pegasus, as a way to fight terrorism. According to a previously unreported investigation by WhatsApp, the technology was also used against members of Djibouti's own government, including its Prime Minister, Abdoulkadar Kamil Mohamed, and its Minister of the Interior, Hassan Omar.

Last year, as the Washington *Post* reported and Apple disclosed in a legal filing, the iPhones of eleven people working for the U.S. government abroad, many of them at its embassy in Uganda, were hacked using Pegasus. NSO Group said that, "following a media inquiry" about the incident, the company "immediately shut down all the customers potentially relevant to this case, due to the severity of the allegations, and even before we began the investigation." The Biden Administration is investigating additional targeting of U.S. officials, and has launched a review of the threats posed by foreign commercial hacking tools. Administration officials told me that they now plan to take new, aggressive steps. The most significant is "a ban on U.S. government purchase or use of foreign commercial spyware that poses counterintelligence and security risks for the U.S. government or has been improperly used abroad," Adrienne Watson, a White House spokesperson, said.

In November, the Commerce Department added NSO Group, along with several other spyware makers, to a list of entities blocked from purchasing technology from American companies without a license. I was with Hulio in New York the next day. NSO could no longer legally buy Windows operating systems, iPhones, Amazon cloud servers—the kinds of products it uses to run its business and build its spyware. "It's outrageous," he told me. "We never sold to any country which is not an ally with the U.S., or an ally of Israel. We've never sold to any country the U.S. doesn't do business with." Deals with foreign clients require "direct written approval from the government of Israel," Hulio said.

"I think that it is not well understood by American leaders," Eva Galperin, the director of cybersecurity at the watchdog group Electronic Frontier Foundation, told me. "They keep expecting that the Israeli government will crack down on NSO for this, whereas, in fact, they're doing the Israeli government's bidding." Last month, the Washington *Post* reported that Israel had blocked Ukraine from purchasing Pegasus, not wanting to alienate Russia. "Everything that we are doing, we got the permission from the government of Israel," Hulio told me. "The entire mechanism of regulation in Israel was built by the Americans."

N SO sees itself as a type of arms dealer, operating in a field without established norms. Hulio said, "There is the Geneva Conventions for the use of a weapon. I truly believe that there should be a convention of

countries that should agree between themselves on the proper use of such tools" for cyber warfare. In the absence of international regulation, a battle is taking place between private companies: on one side, firms like NSO; on the other, the major technology platforms through which such firms implement their spyware.

On Thursday, May 2, 2019, Claudiu Dan Gheorghe, a software engineer, was working at Building 10 on Facebook's campus in Menlo Park, where he managed a team of seven people responsible for WhatsApp's voice- and video-calling infrastructure. Gheorghe, who was born in Romania, is thirty-five, with a slight frame and dark, close-cropped hair. In a photograph he used as a professional head shot during his nine years at Facebook, he wears a black hoodie and looks a little like Elliot Alderson, the protagonist of the hacking drama "Mr. Robot." Building 10 is a two-story structure with open-plan workspaces, brightly colored accent walls, and whiteboards. Engineers, most of them in their twenties and thirties, hunch over keyboards. The word "focus" is written on a wall and stamped on magnets scattered around the office. "It often felt like a church," Gheorghe recalled. WhatsApp, which Facebook bought for nineteen billion dollars in 2014, is the world's most popular messaging application, with about two billion monthly users.

Facebook had presented the platform, which uses end-to-end encryption, as ideal for sensitive communications; now the company's security team was more than two years into an effort to reinforce the security of its products. One task entailed looking at "signalling messages" automatically sent by WhatsApp users to the company's servers, in order to initiate calls. That evening, Gheorghe was alerted to an unusual signalling message. A piece of code that was intended to dictate the ringtone contained, instead, code with strange instructions for the recipient's phone.

In a system as vast as Facebook's, anomalies were routine, and usually innocuous. Unfamiliar code can stem from an older version of the software, or it can be a stress test by Facebook's Red Team, which conducts simulated attacks. But, as engineers in Facebook's international offices awoke and began to scrutinize the code, they grew concerned. Otto Ebeling, who worked on Facebook's security team in London, told me that the code seemed "polished, slick, which was alarming." Early on the morning after the message was discovered, Joaquin Moreno Garijo, another member of the London security team, wrote on the company's internal messaging system that, owing to how sophisticated the code was, "we believe that attacker may have found a vulnerability." Programmers who work on security issues often describe their work in terms of vulnerabilities and exploits. Ivan Krstić, an engineer at Apple, compared the concept to a heist scene in the film "Ocean's Twelve," in which a character dances through a hall filled with lasers that trigger alarms. "In that scene, the vulnerability is that there exists a path through all the lasers, where it's possible to get across the room," Krstić said. "But the exploit is that somebody had to be a precise enough dancer to actually be able to do that dance."

By late Sunday, a group of engineers working on the problem had become convinced that the code was an active exploit, one that was attacking vulnerabilities in their infrastructure as they watched. They could see that data were being copied from users' phones. "It was scary," Gheorghe recalled. "Like the world is sort of shaking under you, because you built this thing, and it's used by so many people, but it has this massive flaw in it."

Case 4:19-cv-07123-PJH   Document 239-4   Filed 12/22/23   Page 580 of 593

The engineers quickly identified ways to block the offending code, but they debated whether to do so. Blocking access would tip off the attackers, and perhaps allow them to erase their tracks before the engineers could make sure that any solution closed all possible avenues of attack. "That would be like chasing ghosts," Ebeling said. "Made a decision to not roll out the server-side fix," Andrey Labunets, a WhatsApp security engineer, wrote, in an internal message, "because we don't understand the root cause the impact for users and other possible attacker numbers / techniques."

On Monday, at crisis meetings with WhatsApp's top executive, Will Cathcart, and Facebook's head of security, the company told its engineers around the world that they had forty-eight hours to investigate the problem. "What would be the scale of the victims be?" Cathcart recalled worrying. "I mean, how many people were hit by this?" The company's leadership decided not to notify law enforcement immediately, fearing that U.S. officials might tip off the hackers. "There's a risk of—you might go to someone who's a customer," he told me. (Their concerns were valid: weeks later, the *Times* has reported, the F.B.I. hosted NSO engineers at a facility in New Jersey, where the agency tested the Pegasus software it had purchased.) Cathcart alerted Mark Zuckerberg, who considered the problem "horrific," Cathcart recalled, and pressed the team to work quickly. For Gheorghe, "it was a terrifying Monday. I woke up at like 6 A.M., and then I worked until I couldn't stay awake anymore."

N SO's headquarters are in a glass-and-steel office building in Herzliya, a suburb outside Tel Aviv. The area is home to a cluster of technology firms from Israel's thriving startup sector. The beach is a twenty-minute walk away. The world's most notorious commercial hacking enterprise is remarkably unprotected: at times, a single security guard waved me through.



THE WRIGHT BROTHERS DISCOVER THE FIRST NIGHTMARE FLIGHT

Cartoon by Tim Hamilton

Open cartoon gallery

Documenta$\$0$ on Democracies Spy on Their Citizens | The New Yorker

On the building's fourteenth floor, programmers wearing hoodies gather in a cafeteria outfitted with an espresso machine and an orange juicer, or sit on a terrace with views of the Mediterranean. A poster reads "LIFE WAS MUCH EASIER WHEN APPLE AND BLACKBERRY WERE JUST FRUITS." Stairs descend to the various programming groups, each of which has its own recreational space, with couches and PlayStation 5s. The Pegasus team likes to play Electronic Arts' football game, FIFA.

Employees told me that the company keeps its technology covert through an information-security department with several dozen experts. "There is a very large department in the company which is in charge of whitewashing, I would say, all connection, all network connection between the client back to NSO," a former employee said. "They are purchasing servers, V.P.N. servers around the world. They have, like, this whole infrastructure set up so none of the communication can be traced."

Despite these precautions, WhatsApp engineers managed to trace data from the hack to I.P. addresses tied to properties and Web services used by NSO. "We now knew that one of the biggest threat actors in the world has a live exploit against WhatsApp," Gheorghe recalled. "I mean, it was exciting, because it's very rare to catch some of these things. But, at the same time, it was also extremely scary." A picture of the victims began to emerge. "Likely there are journalists human rights activists and others on the list," Labunets, the security engineer, wrote on the company's messaging system. (Eventually, the team identified some fourteen hundred WhatsApp users who had been targeted.)

By midweek, about thirty people were working on the problem, operating in a twenty-four-hour relay, with one group going to sleep as another came online. Facebook extended the team's deadline, and they began to reverse engineer the malicious code. "To be honest, it's brilliant. I mean, when you look at it, it feels like magic," Gheorghe said. "These people are very smart," he added. "I don't agree with what they do, but, man, that is a very complicated thing they built." The exploit triggered two video calls in close succession, one joining the other, with the malicious code hidden in their settings. The process took only a few seconds, and deleted any notifications immediately afterward. The code used a technique known as a "buffer overflow," in which an area of memory on a device is overloaded with more data than it can accommodate. "It's like you're writing on a piece of paper and you go beyond the bounds," Gheorghe explained. "You start writing on whatever the surface is, right? You start writing on the desk." The overflow allows the software to overwrite surrounding sections of memory freely. "You can make it do whatever you want."

I spoke with a vice-president for product development at NSO, whom the firm requested I identify only by his first name, Omer—citing, without apparent irony, privacy concerns. "You find the nooks and crannies enabling you to do something that the product designer didn't intend," Omer told me. Once in control, the exploit loaded more software, allowing the attacker to extract data or activate a camera or a microphone. The entire process was "zero click," requiring no action from the phone's owner.

The software was designed by NSO's Core Research Group, made up of several dozen software developers. "You're looking for a silver bullet, a simple exploit that can cover as much mobile devices around the world," Omer told me. Gheorghe said, "A lot of people, you know, would think about the hackers as being, like, just one person in a dark room, like, typing on a keyboard, right? That's not the reality—these people are just, like, another tech company." It is common for tech companies to hire people with backgrounds in hacking, and to offer bounties to outside programmers who identify vulnerabilities in their systems. Facebook's headquarters have the vanity address 1 Hacker Way. At both NSO and WhatsApp, the engineers closest to the coding are often described by colleagues as quirky introverts, resembling the hacker archetypes of fiction. "They are special people. Not all of them can communicate clearly with other human beings," Omer said, of the programmers who work on Pegasus. "Some of them don't sleep for two days. They get crazy when they don't sleep."

Late in the week, Facebook's security team devised an act of subterfuge: they would simulate an infected device, to get NSO's servers to send them a copy of the code. "But their software was smart enough to basically not be tricked by this," Gheorghe said. "We never really were able to get our hands on that."

Omer told me, "It's a cat-and-mouse game." Although NSO says that its customers control the use of Pegasus, it does not dispute its direct role in these exchanges. "Every day, things are being patched," Hulio said. "This is the routine work here."

At times, WhatsApp users received repeated missed calls, but the malware wasn't successfully installed. Once the engineers learned about these incidents, they were able to study what it looked like when Pegasus failed. Toward the end of the week, Gheorghe told me, "we said, O.K., we don't have a full understanding at this point, but I think we captured enough." On Friday morning, Facebook notified the Department of Justice, which is developing a case against NSO. Then the company updated its servers to block the malicious code. "Ready to roll," Gheorghe wrote on the internal messaging service that afternoon. The fix was constructed to look like routine server maintenance, so that NSO might continue to attempt attacks, providing Facebook with more data.

The next day, WhatsApp engineers said, NSO began to send what looked like decoy data packets, which they speculated were a way to determine whether NSO's activities were being watched. "In one of the malicious packets, they actually sent a YouTube link," Gheorghe told me. "We were all laughing like crazy when we saw what it was." The link was to the music video for the Rick Astley song "Never Gonna Give You Up," from 1987. Ambushing people with a link to the song is a popular trolling tactic known as Rickrolling. Otto Ebeling recalled, "Rickrolling is, I don't know, something my colleague might do to me, not some sort of semi-state-sponsored people." Cathcart told me, "There was a message in it. They were saying, We know what you did, we see you." (Hulio and other NSO employees said they could not recall Rickrolling WhatsApp.)

In the months that followed, WhatsApp began notifying users who had been targeted. The list included numerous government officials, including at least one French ambassador and the Djiboutian Prime Minister. "There wasn't, you know, overlap between this list and, like, legitimate law-enforcement outreach," Cathcart

said. "You could see, wow, there's a lot of countries all around the world. This isn't just one agency or organization in one country targeting people." WhatsApp also began working with the Citizen Lab, which warned victims of the risk that they might be hacked again, and helped them secure their devices. John Scott-Railton said, "It really was interesting how many people were upset and saddened, but in a deep way not surprised, almost relieved, as if they were getting a diagnosis for a mystery ailment they had suffered for many years."

Five people in the initial group identified by WhatsApp were Catalans, including elected lawmakers and an activist. Campo, the Catalan security researcher, realized that the cases "were probably just the tip of the iceberg." He added, "That's when I found myself in the intersection of technology—a product that I contributed to building—and my home country."

WhatsApp continued sharing information with the Department of Justice, and, that fall, the company sued NSO in federal court. NSO Group "breached our systems, damaged us," Cathcart told me. "I mean, do you just do nothing about that? No. There have to be consequences."

Hulio said, "I just remember that one day the lawsuit happened, and they shut down the Facebook account of our employees, which was a very bully move for them to do." He added, referring to scandals about Facebook's role in society, "I think it's a big hypocrisy." NSO has pushed for the suit to be dismissed, arguing that the company's work on behalf of governments should grant it the same immunity from lawsuits that those governments have. So far, the U.S. courts have rejected this argument.

WhatsApp's aggressive posture was unusual among big technology companies, which are often reluctant to call attention to instances in which their systems have been compromised. The lawsuit signalled a shift. The tech companies were now openly aligned against the spyware venders. Gheorghe described it as "the moment the whole thing just exploded."

Microsoft, Google, Cisco, and others filed a legal brief in support of WhatsApp's suit. Goodwin, the Microsoft executive, helped to assemble the coalition of companies. "We could not let NSO Group prevail with an argument that, simply because a government is using your products and services, you get sovereign immunity," she told me. "The ripple effect of that would have been so dangerous." Hulio argues that when governments use Pegasus they're less likely to lean on platform holders for wider "back door" access to users' data. He expressed exasperation with the lawsuit. "Instead of them, like, actually saying, 'O.K., thank you,' " he told me, "they are going to sue us. Fine, so let's meet in court."

Microsoft, too, has a security team that engages in combat with hackers. Although Pegasus is not designed to target users through Microsoft platforms, at least four people in Catalonia running Microsoft Windows on their computers have been attacked by spyware made by Candiru, a startup founded by former NSO employees. (A spokesperson for Candiru said that it requires its products to be used for the "sole purpose of preventing crime and terror.") In February, 2021, the Citizen Lab identified evidence of an active infection—a rarity for spyware of this calibre—on a laptop belonging to Joan Matamala, an activist closely connected to separatist politicians. Campo called Matamala and instructed him to wrap the laptop in aluminum foil, a

Case 4:19-cv-07123-PJH    Document 239-4    Filed 12/22/23    Page 584 of 593

makeshift way of blocking the malware from communicating with servers. The Citizen Lab was able to extract a copy of the spyware, which Microsoft dubbed DevilsTongue. Several months later, Microsoft released updates blocking DevilsTongue and preventing future attacks. By then, the list of activists and journalists targeted "made the hairs on the back of our neck stand on end," Goodwin said. Matamala has been targeted more than sixteen times. "I still have the aluminum paper stored here, in case we ever have a suspicion of having another infection," he told me.

Last November, after iPhone users were allegedly targeted by NSO, Apple filed its own lawsuit. NSO has filed a motion to dismiss. "Apple is a company that does not believe in theatrical lawsuits," Ivan Krstić, the engineer, told me. "We have this entire time been waiting for a smoking gun that would let us go file a suit that is winnable."



*"You still have to choose which chef you want to prepare your food."*

Cartoon by Frank Cotham



Open cartoon gallery

Apple created a threat-intelligence team nearly four years ago. Two Apple employees involved in the work told me that it was a response to the spread of spyware, exemplified by NSO Group. "NSO is a big pain point," one of the employees told me. "Even before the stuff that hit the news, we had disrupted NSO a number of times." In 2020, with the launch of its iOS 14 software, Apple had introduced a system called BlastDoor, which moved the processing of iMessages—including any potentially malicious code—into a chamber connected to the rest of the operating system by only a single, narrow pipeline of data. But Omer, the NSO V.P., told me that "newer features usually have some holes in their armor," making them "more easy to target." Krstić conceded that there was "a sort of an eye of a needle of an opening still left."

In March, 2021, Apple's security team received a tip that a hacker had successfully threaded that needle. Even cyber warfare has double agents. A person familiar with Apple's threat-intelligence capabilities said that the company's team sometimes receives tips from informants connected to spyware enterprises: "We've spent a long time and a lot of effort in trying to get to a place where we can actually learn something about what's going on deeply behind the scenes at some of these companies." (An Apple spokesperson said that Apple does not "run sources" within spyware companies.) The spyware venders, too, rely on intelligence gathering, such as securing pre-release versions of software, which they use to design their next attacks. "We follow the publications, we follow the beta versions of whatever apps we're targeting," Omer told me.

That month, researchers from the Citizen Lab contacted Apple: the phone of a Saudi women's-rights activist, Loujain al-Hathloul, had been hacked through iMessage. Later, the Citizen Lab was able to send Apple a copy of an exploit, which the researcher Bill Marczak discovered after months of scrutinizing Hathloul's phone, buried in an image file. The person familiar with Apple's threat-intelligence capabilities said that receiving the file, through an encrypted digital channel, was "sort of like getting a thing handed to you in a biohazard bag, which says, 'Do not open except in a Biosafety Level 4 lab.' "

Apple's investigation took a week and involved several dozen engineers based in the United States and Europe. The company concluded that NSO had injected malicious code into files in Adobe's PDF format. It then tricked a system in iMessage into accepting and processing the PDFs outside BlastDoor. "It's borderline science fiction," the person familiar with Apple's threat-intelligence capabilities said. "When you read the analysis, it's hard to believe." Google's security-research team, Project Zero, also studied a copy of the exploit, and later wrote in a blog post, "We assess this to be one of the most technically sophisticated exploits we've ever seen, further demonstrating that the capabilities NSO provides rival those previously thought to be accessible to only a handful of nation states." In the NSO offices, programmers in the Core Research Group printed a copy of the post and hung it on the wall.

Apple shipped updates for its platforms that rendered the exploit useless. Krstić told me that this was "a massive point of pride" for the team. But Omer told me, "We saw it coming. We just counted the days until it happened." He and others at the company said the next exploit is an inevitability. "There might be some gaps. It could take two weeks to come up with a mitigation on our side, some work-around."

During interviews in NSO's offices last month, employees exchanged nervous glances with hovering public-relations staffers as they answered questions about morale in the midst of the scandals, lawsuits, and blacklisting. "To be honest, not every time the mood is actually good," Omer said. Others claimed loyalty to the company and belief in the power of its tools to catch criminals. "The company has a very strong narrative that it tries to sell internally to the employees," the former employee told me. "You're either with them or against them."

Israel has become the world's most significant source of private surveillance technology in part because of the quality of talent and expertise produced by its military. "Because of the compulsory service, we can recruit the best of the best," the former senior intelligence official told me. "The American dream is going from M.I.T. to

Google. The Israeli dream is to go to 8200," the Israeli military-intelligence unit from which spyware venders often recruit. (Hulio, who describes himself as a mediocre student whose upbringing was "nothing fancy," often emphasizes that he did not serve in Unit 8200.) NSO has historically been regarded as an appealing job prospect for young veterans. But the former NSO employee, who quit after becoming concerned that Pegasus had facilitated Jamal Khashoggi's murder, told me that others had become disillusioned, too. "Many of my colleagues decided to leave the company at that stage," the former employee said. "This was one of the major events that I think caused many of the employees to, like, wake up and understand what's going on." In the past few years, the departures have been "like a snowball." Hulio, in response to questions about the company's problems, said, "What worries me is the vibes of the employees."

In 2019, NSO was saddled with hundreds of millions of dollars in debt as part of a leveraged-buyout deal in which a London-based private-equity firm, Novalpina, acquired a seventy-per-cent stake. Recently, Moody's, the financial-services firm, downgraded NSO's credit rating to "poor," and Bloomberg described it as a distressed asset, shunned by Wall Street traders. Two top NSO executives have left, and relations between the company and its backers have deteriorated. Infighting among Novalpina's partners led to the transfer of control of its assets, including NSO, to a consulting firm, Berkeley Research Group, which pledged to increase oversight. But a BRG executive recently claimed that coöperation with Hulio had become "virtually non-existent." Agence France-Presse has reported that tensions emerged because NSO's creditors have pressed for continued sales to countries with dubious human-rights records, while BRG has sought to pause them. "We indeed have some disputes with them," Hulio said, of BRG. "It's about how to run the business."

NSO's troubles have complicated its close alliance with the Israeli state. The former senior intelligence official recalled that, in the past, when his unit turned down European countries seeking intelligence collaboration, "Mossad said, Here's the next best thing, NSO Group." Several people familiar with those deals said that Israeli authorities provided little ethical guidance or restraint. The former official added, "Israeli export control was not dealing with ethics. It was dealing with two things. One, Israeli national interest. Two, reputation." The former NSO employee said that the state "was well aware of the misuse, and even using it as part of its own diplomatic relationships." (Israel's Ministry of Defense said in a statement that "each licensing assessment is made in light of various considerations including the security clearance of the product and assessment of the country toward which the product will be marketed. Human rights, policy, and security issues are all taken into consideration.") After the blacklisting of NSO, Hulio sought to enlist Israeli officials, including Prime Minister Naftali Bennett and Defense Minister Benny Gantz. "I sent a letter," he told me. "I said that as a regulated company, you know, everything that we have ever asked was with the permission, and with the authority, of the government of Israel." But a senior Biden Administration official said that the Israelis raised only "pretty mild complaints" about the blacklisting. "They didn't like it, but we didn't have a standoff."

In Israel's legislature, Arab politicians are leading a modest movement to examine the state's relationship with NSO. The Arab party leader Sami Abou Shahadeh told me, "We tried to discuss this in the Knesset twice . . . to tell the Israeli politicians, You are selling death to very weak societies that are in conflict, and you've been doing this for too long." He added, "It never worked, because, first and morally, they don't see any problem with that." Last fall, an investigation by the watchdog group Front Line Defenders identified Pegasus

infections on the phones of six Palestinian activists—including one whose Jerusalem residency status had been revoked. Abou Shahadeh argued that the history of Israel's spyware technology is tied to the surveillance of Palestinian communities in the West Bank, East Jerusalem, and Gaza. "They have a huge laboratory," he told me. "When they were using all the same tools for a long time to spy on Palestinian citizens, nobody cared." Asked about the targeting of Palestinians, Hulio said, "If Israel is using our tools to fight crime and terror, I would be very proud of it."

"I know there have been misuses," Hulio said. "It's hard for me to live with that. And I obviously feel sorry for that. Really, I'm not just saying that. I never said it, but I'm saying it now." Hulio said that the company has turned down ninety customers and hundreds of millions of dollars of business out of concern about the potential for abuse. But such claims are difficult to verify. "NSO wanted Western Europe mainly so they can tell guys like you, Here's a European example," the former Israeli intelligence official, who now works in the spyware sector, said. "But most of their business is subsidized by the Saudi Arabias of the world." The former employee, who had knowledge of NSO's sales efforts, said, "For a European country, they would charge ten million dollars. And for a country in the Middle East they could charge, like, two hundred and fifty million for the same product." This seemed to create perverse incentives: "When they understood that they had misuse in those countries that they sold to for enormous amounts of money, then the decision to shut down the service for that specific country became much, much harder."

Asked about the extreme abuses ascribed to his technology, Hulio invoked an argument that is at the heart of his company's defense against WhatsApp and Apple. "We have no access to the data on the system," he told me. "We don't take part in the operation, we don't see what the customers are doing. We have no way of monitoring it." When a client buys Pegasus, company officials said, an NSO team travels to install two racks, one devoted to storage and another for operating the software. The system then runs with only limited connection to NSO in Israel.

But NSO engineers concede that there is some real-time monitoring of systems to prevent unauthorized tampering with or theft of their technology. And the former employee said, of Hulio's assurances that NSO is technically prevented from overseeing the system, "That's a lie." The former employee recalled support and maintenance efforts that involved remote access by NSO, with the customer's permission and live oversight. "There is remote access," the former employee added. "They can see everything that goes on. They have access to the database, they have access to all of the data." The senior European law-enforcement official told me, "They can have remote access to the system when we authorize them to access the system."

NSO executives argue that, in an unregulated field, they are attempting to construct guardrails. They have touted their appointment of a compliance committee, and told me that they now maintain a list of countries ranked by risk of misuse, based on human-rights indicators from Freedom House and other groups. (They declined to share the list.) NSO also says that customers' Pegasus systems maintain a file that records which numbers were targeted; customers are contractually obligated to surrender the file if NSO starts an investigation. "We have never had a customer say no," Hulio told me. The company says that it can terminate systems remotely, and has done so seven times in the past few years.

The competition, Hulio argued, is far more frightening. "Companies found themselves in Singapore, in Cyprus, in other places that don't have real regulation," he told me. "And they can sell to whoever they want." The spyware industry is also full of rogue hackers willing to crack devices for anyone who will pay. "They will take your computers, they will take your phone, your Gmail," Hulio said. "It's obviously illegal. But it's very common now. It's not that expensive." Some of the technology that NSO competes with, he says, comes from state actors, including China and Russia. "I can tell you that today in China, today in Africa, you see the Chinese government giving capabilities almost similar to NSO." According to a report from the Carnegie Endowment for International Peace, China supplies surveillance tools to sixty-three countries, often through private firms enmeshed with the Chinese state. "NSO will not exist tomorrow, let's say," Hulio told me. "There's not going to be a vacuum. What do you think will happen?"

NSO is also competing with Israeli firms. Large-scale hacking campaigns, like the one in Catalonia, often use tools from a number of companies, several founded by NSO alumni. Candiru was started in 2014, by the former NSO employees Eran Shorer and Yaakov Weizman. It was allegedly linked to recent attacks on Web sites in the U.K. and the Middle East (Candiru denies the connection), and its software has been identified on the devices of Turkish and Palestinian citizens. Candiru has no Web site. The firm shares its name with a parasitic fish, native to the Amazon River basin, that drains the blood of larger fish.

QuaDream was founded two years later, by a group including two other former NSO employees, Guy Geva and Nimrod Reznik. Like NSO, it focusses on smartphones. Earlier this year, Reuters reported that QuaDream had exploited the same vulnerability that NSO used to gain access to Apple's iMessage. QuaDream, whose offices are behind an unmarked door in the Tel Aviv suburb of Ramat Gan, appears to share with many of its competitors a reliance on regulation havens: its flagship malware, Reign, is reportedly owned by a Cyprus-based entity, InReach. According to *Haaretz*, the firm is among those now employed by Saudi Arabia. (QuaDream could not be reached for comment.)

Other Israeli firms pitch themselves as less reputationally fraught. Paragon, which was founded in 2018 by former Israeli intelligence officials and includes former Prime Minister Ehud Barak on its board, markets its technology to offices within the U.S. government. Paragon's core technology focusses not on seizing complete control of phones but on hacking encrypted messaging systems like Telegram and Signal. An executive told me that it has committed to sell only to a narrow list of countries with relatively uncontroversial human-rights records: "Our strategy is to have values, which is interesting to the American market."

How Democracies Spy on Their Citizens | The New Yorker



*"If you win, the game is rigged, but if I win it's flawless and beyond critique."*

Cartoon by Suerynn Lee



Open cartoon gallery

---

In Catalonia, Gonzalo Boye, an attorney representing nineteen people targeted by Pegasus, is preparing criminal complaints to courts in Spain and other European countries, accusing NSO, as well as Hulio and his co-founders, of breaking national and E.U. laws. Boye has represented Catalan politicians in exile, including the former President Carles Puigdemont. Between March and October of 2020, analysis by the Citizen Lab found, Boye was targeted eighteen times with text messages masquerading as updates from Twitter and news sites. At least one attempt resulted in a successful Pegasus infection. Boye says that he now spends as much time as possible outside Spain. In a recent interview, he wondered, "How can I defend someone, if the other side knows exactly everything I've said to my client?" Hulio declined to identify specific customers but suggested that Spain's use of the technology was legitimate. "Spain definitely has a rule of law," he told me. "And if everything was legal, with the approval of the Supreme Court, or with the approval of all the lawful mechanisms, then it can't be misused." Pere Aragonès, the current President of Catalonia, told me, "We are not criminals." He is one of three people who have served in that role whose phones have been infected with Pegasus. "What we want from the Spanish authorities is transparency."

Last month, the European Parliament formed a committee to look into the use of Pegasus in Europe. Last week, Reuters reported that senior officials at the European Commission had been targeted by NSO spyware. The investigative committee, whose members include Puigdemont, will convene for its first session on April 19th. Puigdemont called NSO's activities "a threat not only for the credibility of Spanish democracy, but for the credibility of European democracy itself."

NSO Group also faces legal consequences in the U.K.: three activists recently notified the company, as well as the governments of Saudi Arabia and the U.A.E., that they plan to sue over alleged abuses of Pegasus. (The company responded that there was "no basis" for their claims.)

NSO continues to defend itself in the WhatsApp suit. This month, it filed an appeal to the U.S. Supreme Court. "If we need to go and fight, we will," Shmuel Sunray, NSO's general counsel, told me. Lawyers for WhatsApp said that, in their fight with NSO, they have encountered underhanded tactics, including an apparent campaign of private espionage.

On December 20, 2019, Joe Mornin, an associate at Cooley L.L.P., a Palo Alto law firm that was representing WhatsApp in its suit against NSO, received an e-mail from a woman who identified herself as Linnea Nilsson, a producer at a Stockholm-based company developing a documentary series on cybersecurity. Nilsson was cagey about her identity but so eager to meet Mornin that she bought him a first-class plane ticket from San Francisco to New York. The ticket was paid for in cash, through World Express Travel, an agency that specialized in trips to Israel. Mornin never used the ticket. A Web site for the documentary company, populated with photos from elsewhere on the Internet, soon disappeared. So did a LinkedIn profile for Nilsson.

Several months later, a woman claiming to be Anastasia Chistyakova, a Moscow-based trustee for a wealthy individual, contacted Travis LeBlanc, a Cooley partner working on the WhatsApp case, seeking legal advice. The woman sent voice-mail, e-mail, Facebook, and LinkedIn messages. Mornin identified her voice as belonging to Nilsson, and the law firm later concluded that her e-mail had come from the same block of I.P. addresses as those sent by Nilsson. The lawyers reported the incidents to the Department of Justice.

The tactics were similar to those used by the private intelligence company Black Cube, which is run largely by former officers of Mossad and other Israeli intelligence agencies, and is known for using operatives with false identities. The firm worked on behalf of the producer Harvey Weinstein to track women who had accused him of sexual abuse, and last month three of its officials received suspended prison sentences for hacking and intimidating Romania's chief anti-corruption prosecutor.

Black Cube has been linked to at least one other case involving NSO Group. In February, 2019, the A.P. reported that Black Cube agents had targeted three attorneys involved in another suit against NSO Group, as well as a London-based journalist covering the case. The lawyers—Mazen Masri, Alaa Mahajna, and Christiana Markou—who represented hacked journalists and activists, had sued NSO and an affiliated entity in Israel and Cyprus. In late 2018, all three received messages from people who claimed to be associated with a rich firm or individual, repeatedly suggesting meetings in London. NSO Group has denied hiring Black Cube to target opponents. However, Hulio acknowledged the connection to me, saying, "For the lawsuit in Cyprus, there was one involvement of Black Cube," because the lawsuit "came from nowhere, and I want to understand." He said that he had not hired Black Cube for other lawsuits. Black Cube said that it would not comment on the cases, though a source familiar with the company denied that it had targeted Cooley lawyers.

"People can survive and can adapt to almost any situation," Hulio once told me. NSO Group must now adapt to a situation in which its flagship product has become a symbol of oppression. "I don't know if we'll win, but we will fight," he said. One solution was to expand the product line. The company demonstrated for me an artificial-intelligence tool, called Maestro, that scrutinizes surveillance data, builds models of individuals' relationships and schedules, and alerts law enforcement to variations of routine that might be harbingers of crime. "I'm sure this will be the next big thing coming out of NSO," Leoz Michaelson, one of its designers, told me. "Turning every life pattern into a mathematical vector."

The product is already used by a handful of countries, and Hulio said that it had contributed to an arrest, after a suspect in a terrorism investigation subtly altered his routine. The company seemed to have given little consideration to the idea that this tool, too, might spur controversy. When I asked what would happen if law enforcement arrested someone based on, say, an innocent trip to the store in the middle of the night, Michaelson said, "There could be false positives." But, he added, "this guy that is going to buy milk in the middle of the night is in the system for a reason."

Yet the risk to bystanders is not an abstraction. Last week, Elies Campo decided to check the phones of his parents, scientists who are not involved in political activities, for spyware. He found that both had been infected with Pegasus when he visited them during the Christmas holiday in 2019. Campo told me, "The idea that anyone could be at risk from Pegasus wasn't just a concept anymore—it was my parents sitting across the table from me." On his mother's phone, which had been hacked eight times, the researchers found a new kind of zero-click exploit, which attacked iMessage and iOS's Web-browsing engine. There is no evidence that iPhones are still vulnerable to the exploit, which the Citizen Lab has given the working name Homage. When the evidence was found, Scott-Railton told Campo, "You're not going to believe this, but your mother is patient zero for a previously undiscovered exploit."

During a recent visit to NSO's offices, windows and whiteboards across the space were dense with flowcharts and graphics, in Hebrew and English text, chronicling ideas for products and exploits. On one whiteboard, scrawled in large red Hebrew characters and firmly underlined, was a single word: "War!" ♦

*Georgia Gee conducted additional research for this piece.*

An earlier version of this story misstated the time of a Pegasus infection on a device connected to the network at 10 Downing Street.

*Published in the print edition of the April 25 & May 2, 2022, issue, with the headline "The Surveillance States."*

---

# New Yorker Favorites

- The killer who got into Harvard.

- The contested legacies of Napoleon.

- Why 1956 was a radical year in hair dye.

How Democracies Spy on Their Citizens | The New Yorker

- The legends of Lizzie Borden.

- The skyscraper that could have toppled over in a windstorm.

- The day the dinosaurs died.

- Fiction by Amy Tan: "Immortal Heart"

Sign up for our daily newsletter to receive the best stories from *The New Yorker*.

---



*Ronan Farrow, a contributing writer to The New Yorker, is the author of "Catch and Kill" and "War on Peace." His reporting for The New Yorker won the 2018 Pulitzer Prize for public service.*

---

**More:**   Surveillance      Technology      Tech Companies      Cybersecurity      Israel      Spain      Intelligence      Hacking

WhatsApp      Facebook      Apple      Software

---

## WEEKLY

Enjoy our flagship newsletter as a digest delivered once a week.

**E-mail address**

| E-mail address |
|---|

| Sign up |
|---|

By signing up, you agree to our User Agreement and Privacy Policy & Cookie Statement. This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

---

## READ MORE

A REPORTER AT LARGE

### Elon Musk's Shadow Rule

How the U.S. government came to rely on the tech billionaire—and is now struggling to rein him in.

**By Ronan Farrow**

NEWS DESK

How Democracies Spy on Their Citizens | The New Yorker

## What Was Hamas Thinking?

One of the group's senior political leaders explains its strategy.

**By Adam Rasgon**

LETTER FROM ISRAEL

## In the Cities of Killing

The Hamas massacre, the assaults on Gaza, and what comes after.

**By David Remnick**

DEPT. OF CRIMINOLOGY

## The Unravelling of an Expert on Serial Killers

Stéphane Bourgoin became famous through his jailhouse interviews with murderers. Then an anonymous collective of true-crime fans began investigating his own story.

**By Lauren Collins**





Cookies Settings