JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
  acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

3UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**FILED UNDER SEAL - REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED<br>HIGHLY CONFIDENTIAL—ATTOREYS' EYES ONLY**<br><br>**DISCOVERY MATTER**<br><br>Courtroom:   3<br>Judge:         Hon. Phyllis J. Hamilton<br><br>Action Filed:   10/29/2019 |

TO THE COURT AND PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") bring this motion under Federal Rule of Civil Procedure 37(a)(3)(B)(iv) seeking an order compelling Plaintiffs WhatsApp LLC, f/k/a WhatsApp Inc. ("WhatsApp"), and Meta Platforms, Inc., f/k/a Facebook, Inc. ("Facebook" and, collectively, "Plaintiffs"), to search for and produce documents pursuant to Rule 34 that are responsive to Defendants' Request for Production Nos. 2, 3, 4, 107, 108, 113, 114, and 118. The parties have satisfied the requirements of Rule 37 and Civil L.R. 37-1(a) by attempting in good faith to resolve the disputed issues raised herein.

The motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities appended hereto, the accompanying Declaration of Aaron S. Craig and its exhibits ("Craig Decl."), the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

DATED: December 22, 2023

KING & SPALDING LLP

By: /s/ *Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
Attorneys for Defendants NSO GROUP
TECHNOLOGIES LIMITED and Q
CYBER TECHNOLOGIES LIMITED

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................................... 1

II.  BACKGROUND ........................................................................................................... 3

     A.   NSO's Attempt to Obtain Relevant Discovery Concerning Citizen Lab ......................................................................................................... 3

     B.   Counsel for the Parties Have Conferred at Length and Reached an Impasse .......................................................................................... 5

III. ARGUMENT .................................................................................................................. 6

     A.   Plaintiffs' Communications with Citizen Lab are Relevant and Proportional. .................................................................................................. 7

     B.   Plaintiffs' Internal Documents are Relevant and Proportional. ....................... 8

     C.   Plaintiffs should Be Ordered to Produce All Responsive Documents. ................................................................................................... 9

     D.   Plaintiffs Should Be Ordered to Specify the Basis for Any Privilege Claim and Promptly Identify Any Withheld Documents. ................. 9

IV.  CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Am. Shooting Ctr., Inc. v. Secfor Int'l*,
    2015 WL 11254686 (S.D. Cal. Jan. 1, 2015) ..................................................................7

*Caravels LLC v. City of Gainesville*,
    2020 WL 10758492 (N.D. Fla. July 13, 2020) ............................................................7, 8

*Davis v. E. Idaho Health Servs., Inc.*,
    2017 WL 1737723 (D. Idaho May 3, 2017) ..................................................................8

*Harper v. GEICO*,
    2013 WL 12368687 (E.D.N.Y. Oct. 9, 2013) ................................................................7

*Kellgren v. Petco Animal Supplies, Inc.*,
    2016 WL 4097521 (S.D. Cal. May 26, 2016) ................................................................8

*Nat. Imunogenics Corp. v. Newport Trial Grp.*,
    2016 WL 11520758 (C.D. Cal. Oct. 25, 2016) ..............................................................8

*Thomas v. Ware*,
    2023 WL 2717462 (E.D. Cal. Mar. 30, 2023) ...............................................................7

**Other Authorities**

Federal Rule of Civil Procedure 26 .................................................................................6, 8

https://lawandcrime.com/high-profile/judge-slaps-facebook-parent-meta-and-its-
    law-firm-with-almost-1-million-in-sanctions-over-litigation-misconduct/ ...................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

According to Plaintiffs, "Citizen Lab" is the entity that "identif[ied]" NSO as responsible for the alleged "unauthorized access and abuse of the WhatsApp service" at the center of this lawsuit. (Declaration of Aaron Craig ("Craig Decl.") Exh. B.) NSO is forced to file this motion, however, because Plaintiffs refuse to produce plainly relevant documents about their relationship with Citizen Lab. Communications and documents that Plaintiffs exchanged with Citizen Lab are requested by or responsive to no fewer than eight of NSO's requests for production—which Plaintiffs have admitted by referencing Citizen Lab communications in response to seven of these requests—but Plaintiffs have produced only a single document so far. Plaintiffs have also sought to limit, improperly, the timeframe for which they will produce communications with Citizen Lab, withholding relevant materials based on an arbitrary temporal cutoff.

Plaintiffs should be compelled to produce all responsive Citizen Lab communications and documents immediately. Those communications and documents are obviously relevant to the claims and defenses in this case. Plaintiffs' initial disclosures state that Citizen Lab has discoverable information that "Plaintiffs may use to support their claims." Plaintiffs gave Citizen Lab a contract to identify NSO as the party responsible for the events referenced in the Complaint, as well as to identify owners of the target devices. And during a conference of counsel, Plaintiffs' counsel stated that Citizen Lab witnesses may testify at trial. The communications and documents sought by this motion are, accordingly, directly relevant to the truth and reliability of Plaintiffs' allegations in this case and are necessary for NSO to defend itself against Plaintiffs' accusations. The communications and documents also bear on the competence and potential bias of one of Plaintiffs' key contractors and a likely trial witness.

Plaintiffs also refuse, without justification, to produce their internal documents that relate to identifying the users of the devices they claim were targeted by NSO's customers and communicating with them. Plaintiffs have alleged that Defendants' customers targeted 1,400 users and that those users are attorneys, journalists, human rights activists, political dissidents, etc.

1. (Compl. ¶ 42.) Defendants are allowed to test those allegations, including by discovery into Plaintiffs' internal documents about them.

NSO's requests for these communications and documents are also proportional to the needs of the case. Plaintiffs have acknowledged that at least some of their communications with Citizen Lab are discoverable, agreeing to produce "non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint." (Craig. Decl. Exh. A.) Despite making that commitment *four months ago*, Plaintiffs have produced only one responsive document, which reflects ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ That document also reveals that ▓▓▓▓▓▓▓▓▓▓ Plaintiffs' central themes in this case—that NSO's customers used Pegasus to monitor not only suspected terrorists and pedophiles and other criminals, but also "attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials" (Compl. ¶ 42). Indeed, the single responsive document Plaintiffs have produced indicates that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[1] There is no justification for Plaintiffs' failure to produce other Citizen Lab documents, and the Court should order their production immediately.

The Court should also reject Plaintiffs' refusal to produce communications with Citizen Lab that occurred after the October 29, 2019, filing of this action. There is no principled basis for that limitation. And since the lawsuit was filed, Citizen Lab has continued to publicize its crusade against NSO and Pegasus, garnering publicity and media attention for itself in the process (E.g., Craig Decl. Exhs. V-X.) NSO is entitled to discovery, among other things, to test the reliability of Citizen Lab's analyses, investigate Plaintiffs' role in Citizen Lab's ongoing campaign against NSO, and explore Citizen Lab's biases. Plaintiffs should be ordered to produce *all* relevant documents and communications with Citizen Lab, including any generated after October 29, 2019.

---

[1] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Finally, Plaintiffs should not be allowed to obfuscate or improperly withhold relevant documents on the basis of an unexplained "privilege" objection. Plaintiffs have agreed to produce only "non-privileged" communications with Citizen Lab, but they have not articulated any basis on which Plaintiffs' communications with a third-party putative fact witness could be privileged—they have, in fact, acknowledged they know of no such basis. To the extent Plaintiffs intend to withhold responsive communications of the basis of any privilege objection, they should immediately specify that basis so it can be evaluated.

## II.  BACKGROUND

### A.  NSO's Attempt to Obtain Relevant Discovery Concerning Citizen Lab

The central allegation in this case is Plaintiffs' claim that between "April 2019 and May 2019, Defendants used WhatsApp servers . . . to send malware to approximately 1,400 mobile phones and devices ("Target Devices") . . . for the purpose of conducting surveillance of specific WhatsApp users ("Target Users")." (Compl. ¶ 1.) NSO has thus sought discovery related to that allegation. NSO's Request Nos. 2, 3, 4, and 108 seek Plaintiffs' communications with or relating to the Target Users.[2] (Craig Decl. Exh. A.) Request Nos. 107, 113, and 114 seek documents and communications related to how Plaintiffs identified the Target Users and sufficient to show how Plaintiffs did so.[3] (*Id.*) Request No. 118 seeks Plaintiffs' communications with Citizen Lab that

---

[2] **Request No. 2:** All Documents referring or relating to the identity of the owners of the "approximately 1,400 Target Devices" and/or the identity of the "Target Users" referenced in Paragraph 1 of the Complaint in this action.

**Request No. 3:** All Communications between You and any of the owners of the Target Devices and/or the Target Users referenced in Paragraph 1 of the Complaint in this action about the "infect[ion of] the Target Devices" referenced in Paragraph 1 of the Complaint in this action.

**Request No. 4**: All Communications referring or relating to the Target Users and/or the approximately 1,400 Target Devices referenced in Paragraph 1 of the Complaint in this action.

**Request No. 108:** All Documents and Communications that refer or relate to any communication by Plaintiffs with users of Plaintiffs' services related to any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved with in any respect, including but not limited to CVE-2019-3568. (Craig Decl. Exh. A.)

[3] **Request No. 107**: All Documents and Communications that refer or relate to any steps taken by Plaintiffs to identify users of the WhatsApp Service affected by any Security Vulnerability on the WhatsApp Service that Plaintiffs allege Defendants created, exploited, or were otherwise involved

refer or relate to any Defendant.[4] (*Id.*) Plaintiffs objected to these requests but eventually agreed to provide some responsive documents, including certain "communications with Citizen Lab." (*Id.*) The requests in this Motion fall into two groups: requests for communications with Citizen Lab, and requests for documents relating to Plaintiffs' identification of and communications with Target Users.

To date, however, Plaintiffs have produced just one document responsive to any of these requests—a PDF image of what appears to be a spreadsheet ▮▮▮▮▮▮▮▮▮▮▮▮. The document contains a ▮▮▮▮▮▮▮▮ identifying the document as an ▮▮▮▮▮▮▮▮ and which reads:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(Craig Decl. ¶ 10.)

That document confirms Citizen Lab's direct involvement in the alleged events underlying Plaintiffs' claims. Through their counsel, Plaintiffs have confirmed that they contracted with Citizen Lab to identify and notify Target Users. Craig Decl. ¶ 6. Plaintiffs identified Citizen Lab in their initial disclosures as among the entities and individuals having discoverable information that "Plaintiffs may use to support their claims," including with respect to the alleged

---

with in any respect, including but not limited to CVE-2019-3568.

**Request No. 113:** Documents sufficient to show how Plaintiffs identified the owners of the "approximately 1,400 Target Devices" referenced in Paragraph 1 of the Complaint in this action.

**Request No. 114:** Documents sufficient to show how Plaintiffs identified the "Target Users" referenced in Paragraph 1 of the Complaint in this action. (Craig Decl. Exh. A.)

[4] **Request No. 118:** All Communications between any of Plaintiffs and The Citizen Lab at the University of Toronto, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Ronald Deibert, that refer or relate to any of the Defendants. (Craig Decl. Exh. A.)

"identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service." (Craig Decl. Exh. B.) Plaintiffs' counsel indicated Plaintiffs may call Citizen Lab witnesses to testify at trial. (Craig Decl. ¶ 6.)

In the time since Plaintiffs filed this lawsuit, Citizen Lab has continued to involve itself in matters related to this case. It has, for instance, produced numerous public reports about its claimed investigation into alleged uses of Pegasus and has published on its website reports by news media and other sources criticizing NSO. (Craig Decl. ¶ 7 and Exhs. V-X.) Citizen Lab's crusade against NSO has significantly raised Citizen Lab's public profile.

**B.      Counsel for the Parties Have Conferred at Length and Reached an Impasse**

Plaintiffs initially refused to produce any documents in response to the requests at issue in this motion. (Craig Decl. Exhs. I-J.) NSO served its First Set of Requests for Production of Documents (containing Request Nos. 2, 3, and 4) on Plaintiffs on March 8, 2023, and its Second Set of Requests for Production of Documents (containing Request Nos. 107, 108, 113, 114, and 118) on Plaintiffs on May 1, 2023. In their initial responses and objections, Plaintiffs refused to produce any documents in response to any of Request Nos. 2, 3, 4, 107, 108, 113, 114, or 118, although Plaintiffs indicated they were willing to meet and confer about these Requests. (*Id.*, Exhs. I-J.)

After a July 6, 2023, conference of counsel, and in response to a July 17, 2023, letter from NSO addressing the Requests and other discovery matters, Plaintiffs eventually agreed to produce, in response to Requests 3,4, 107, 108, 113, 114 and 118, "non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with the owners of the 1,400 target devices referenced in the Complaint." (Craig Decl. Exhs. A, K-N.)

Between November 6 and December 8, 2023, the parties exchanged further written and oral communications about Plaintiffs' discovery responses. (*Id.* ¶¶ 11-16). During a conference on December 8, Plaintiffs confirmed that Citizen Lab had assisted them in identifying individuals allegedly targeted using Pegasus, that Plaintiffs had a contract with Citizen Lab, and that Plaintiffs may call Citizen Lab witnesses at trial. (*Id.* ¶13.) NSO explained that communications that post-dated the filing of the Complaint were relevant to Citizen Lab's credibility, as one subject of such

communications was likely to be Citizen Lab's efforts to identify the owners of the target devices on Plaintiffs' behalf and to identify NSO as the responsible party. These communications would also likely provide evidence of Citizen Lab's biases against NSO, particularly in light of the contract between Plaintiffs and Citizen Lab. (*Id.* ¶15.) Plaintiffs did not articulate any reason why they should not be compelled to produce Plaintiffs' communications with Citizen Lab that were made after the filing of the Complaint. (*Id.* ¶ 15.) Plaintiffs were also unable to identify any privilege that could possibly apply to their communications with Citizen Lab. (*Id.* ¶ 14.) After additional email communications failed to resolve the parties' disagreements over these issues, NSO confirmed in writing on December 15, 2023, that the parties are at an impasse. (*Id.* Exh. F.)

Despite agreeing four months ago to produce communications with Citizen Lab, Plaintiffs have yet to produce a single such communication. Plaintiffs have produced only one document, which on its face indicates additional highly relevant documents and communications exist. (Craig Decl. ¶ 10.) This, unfortunately, is emblematic of Plaintiffs' approach to discovery in this case. Over and over, when NSO has pointed out deficiencies in Plaintiffs' discovery responses, Plaintiffs have demanded extensive conferences before agreeing to produce the requested material. They have then delayed productions for weeks or months, only producing the documents after receiving a joint discovery dispute letter or motion to compel.[5] (*Id.* ¶¶ 19-24.)

## III.  ARGUMENT

Discovery is proper if it concerns matters "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The documents sought by this motion are highly relevant to the claims and defenses in this case, and the requests are proportional. Plaintiffs should be compelled to produce the requested documents immediately.

---

[5] This discovery misconduct is perfectly consistent with Meta and Facebook's discovery "playbook." Facebook is a frequent litigant in this district, and earlier this year, Judge Chhabria sanctioned Facebook $925,000 and reprimanded it for its "unusually egregious and persistent" engagement of a "sustained, concerted, bad-faith effort to throw obstacle after obstacle in front of" its litigation opponent. https://lawandcrime.com/high-profile/judge-slaps-facebook-parent-meta-and-its-law-firm-with-almost-1-million-in-sanctions-over-litigation-misconduct/. Neither that rebuke nor the substantial fine appears to have altered Facebook's approach to discovery in litigation.

A. **Plaintiffs' Communications with Citizen Lab are Relevant and Proportional.**

There can be no dispute that communications and documents about Plaintiffs' interactions with Citizen Lab are highly relevant to the claims and defenses in this case. As explained above, Plaintiffs central theme in this case is that Pegasus is misused by NSO's customers against "civil society," and Plaintiffs have specifically identified Citizen Lab as having relevant information about that core allegation, Craig Decl. Exh. B at 4, and stated they may call Citizen Lab witnesses at trial. Plaintiffs agreed to produce certain Citizen Lab documents in response to Request No. 118 (where they are directly responsive) as well as Request Nos. 3, 4, 107, 108, 113 and 114 (where, in the absence of a court order, Plaintiffs agree to produce only these communications and not all responsive documents, which would include Plaintiffs' internal documents). Plaintiffs have since inexplicably produced only one such document, and that document confirms ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Documents and communications reflecting Plaintiffs' interactions with a potential trial witness that was directly involved in the alleged events underlying this case are obviously relevant to Plaintiffs' claims and NSO's defenses. *See, e.g., Am. Shooting Ctr., Inc. v. Secfor Int'l*, 2015 WL 11254686, at *3 (S.D. Cal. Jan. 1, 2015) (compelling production of witness communications about facts underlying claims and defenses); *Thomas v. Ware*, 2023 WL 2717462, at *1-2 (E.D. Cal. Mar. 30, 2023) (order production of "communications regarding plaintiff's allegations").[6] Such documents and communications are also relevant because they will shed light on "whether there is any relationship between" Plaintiffs and Citizen Lab "that might affect [Citizen Lab witness] credibility either positively or negatively," and will allow NSO "to investigate the nature

---

[6] *See also Caravels LLC v. City of Gainesville*, 2020 WL 10758492, at *4 (N.D. Fla. July 13, 2020) ("Communications between a witness in a case and a party to that same case concerning [matters that are] the subject of that litigation are obviously relevant. Other communications between that witness and that party are also plainly relevant as possible sources of impeachment evidence."); *Harper v. GEICO*, 2013 WL 12368687, at *1 (E.D.N.Y. Oct. 9, 2013) (compelling production of "communications and documents authored or received by individuals listed as Defendants' trial witnesses").

of any such relationship." *Caravels*, 2020 WL 10758492, at *4.

The requested discovery is also "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As an initial matter, Plaintiffs would have the burden of demonstrating any alleged lack of proportionality, and they have not made any specific proportionality objection to the documents sought by this motion. *See Kellgren v. Petco Animal Supplies, Inc*., 2016 WL 4097521, at *2 (S.D. Cal. May 26, 2016) ("The party resisting discovery generally bears the burden to show that the discovery requested is irrelevant to the issues in the case or is not proportional to the needs of the case."). Therefore, Rule 26(b)(1)'s proportionality requirement is presumptively satisfied.

That aside, discovery into Plaintiffs' relationship with trial witnesses that Plaintiffs claims have direct knowledge of the alleged conduct Plaintiffs challenge goes to the heart of the case and is therefore proportional. *See Nat. Imunogenics Corp. v. Newport Trial Grp*., 2016 WL 11520758, at *3 (C.D. Cal. Oct. 25, 2016) (holding "the importance of [the requested] discovery outweighs the burden on the parties and is proportional" when it went to allegations "at the heart of [the] case"). Moreover, Plaintiffs are a global corporation with a market value approaching $1 trillion. NSO seeks documents to which Plaintiffs have exclusive access, and Plaintiffs are more than capable of bearing the cost of this discovery. These factors further support the proportionality of NSO's requests. *See Davis v. E. Idaho Health Servs., Inc*., 2017 WL 1737723, at *4 (D. Idaho May 3, 2017) (finding party's "sole access to the requested documents" and status as "a large company able to bear the costs of such discovery" weighed in favor of discovery).

**B.    Plaintiffs' Internal Documents are Relevant and Proportional**.

Plaintiffs' internal documents responsive to Request Nos. 2-4, 107-108, and 113-114 are relevant and proportional for the same reason that Plaintiffs' communications with Citizen Lab are relevant and proportional. Plaintiffs have alleged that "Defendants" targeted 1,400 WhatsApp users and that those users are attorneys, journalists, human rights activists, political dissidents, etc. (Compl. ¶ 42.) Defendants are allowed to test those allegations, including by taking discovery into Plaintiffs' internal documents about them. Plaintiffs have put at issue the identity of the persons they allege were targeted through the use of Defendants' technology, and their efforts to identify those people and communicate with them are relevant to show the veracity of Plaintiffs' allegations

about the use of Defendants' technology and the identity of the victims. Plaintiffs' responses to these requests, offering to produce *only* communications with Citizen Lab, and *only* information "sufficient to identify" the users, are an improper limiting of this relevant and proportional discovery.

### C. Plaintiffs should Be Ordered to Produce All Responsive Documents.

As set forth above, Plaintiffs should be compelled to produce immediately the documents they long ago promised to produce. Beyond that, Plaintiffs should be compelled to produce responsive communications and documents that post-date the October 29, 2019, filing of this action, including both Plaintiffs' internal documents and their external communications with Citizen Lab and others. Plaintiffs have articulated no reason why documents and communications relating to core case issues and, with respect to Citizen Lab communications, provided to or received from Plaintiffs' trial witnesses would be irrelevant simply because the documents were created or the communications occurred after the filing of the complaint.

Plaintiffs hired Citizen Lab to claim that NSO's Pegasus technology was responsible for the events alleged in Plaintiffs' complaint and that some fraction of the owners of the target devices fall within "broad definitions of civil society." Citizen Lab is going to testify about that and other work it performed for Plaintiffs. All of Plaintiffs' communications with Citizen Lab are relevant to Citizen Lab's method for investigating uses of Pegasus, its reliability and credibility as a witness, and its potential biases against NSO or for Plaintiffs, whether they occurred before or after October 29, 2019. Further, Plaintiffs have made no showing that NSO's request for post-complaint documents is disproportionate to the needs of the case. Plaintiffs should be compelled to produce all of the responsive documents and communications, without regard to their dates of creation.

### D. Plaintiffs Should Be Ordered to Specify the Basis for Any Privilege Claim and Promptly Identify Any Withheld Documents.

Finally, Plaintiffs' responses and objections to NSO's requests suggest that Plaintiffs may withhold documents they have agreed are relevant and responsive based on some unspecified "privilege." *See* Craig Decl. Exhs. A, K-N (agreeing to produce only certain "non-privileged"

communications). NSO has repeatedly asked Plaintiffs to specify any grounds on which they claim that their communications with a third-party fact witness could be protected by privilege, but Plaintiffs have not done so. Craig Decl. ¶ 14. To the extent Plaintiffs are withholding responsive materials based on a claim of privilege, they should be ordered immediately to identify the withheld documents and articulate the basis for any privilege claim.

## IV. CONCLUSION

For the above reasons, the Court should order Plaintiffs promptly to (i) produce their internal documents, external communications with Citizen Lab, and all other documents responsive to Request Nos. 2, 3, 4, 107, 108, 113, 114, and 118, regardless of date; and (ii) identify and log any withheld material, specifying the bases for any claims that such material is privileged.

DATED: December 22, 2023

KING & SPALDING LLP

By: /s/ *Aaron S. Craig*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
Attorneys for Defendants NSO GROUP
TECHNOLOGIES LIMITED and Q
CYBER TECHNOLOGIES LIMITED