1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone: (213) 443-4355
5  Facsimile: (213) 443-4310

6  Attorneys for Defendants NSO GROUP TECHNOLOGIES
   LIMITED and Q CYBER TECHNOLOGIES LIMITED
7

                    UNITED STATES DISTRICT COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9
                          OAKLAND DIVISION
10

11  WHATSAPP INC., a Delaware corporation,          Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
12  corporation,                                     **DECLARATION OF AARON S. CRAIG
                                                      IN SUPPORT OF DEFENDANTS NSO
13                    Plaintiffs,                     GROUP TECHNOLOGIES LIMITED
                                                      AND Q CYBER TECHNOLOGIES
14          v.                                        LIMITED'S MOTION TO COMPEL
                                                      DISCOVERY**
15  NSO GROUP TECHNOLOGIES LIMITED
    and Q CYBER TECHNOLOGIES LIMITED,                **REDACTED VERSION OF DOCUMENT
16                                                    SOUGHT TO BE SEALED
                      Defendants.                     HIGHLY CONFIDENTIAL—
17                                                    ATTOREYS' EYES ONLY**

18                                                   Action Filed:   10/29/2019

19

20

21

22

23

24

25

26

27

28

---

DECLARATION OF AARON S. CRAIG                                Case No. 4:19-cv-07123-PJH

I, Aaron S. Craig, declare as follows:

1.      I am a member of the California State Bar and the bar of this court and a partner in the law firm of King & Spalding LLP, counsel to NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively "NSO" or "Defendants"), defendants in this action.  I have personal knowledge of the facts set forth herein and, except as otherwise stated, could testify competently to each fact herein.

2.      I submit this declaration in support of NSO's Motion to Compel Discovery ("Motion") filed concurrently herewith.

3.      In accordance with Rule 37(a)(1) of the Federal Rules of Civil Procedure, I hereby certify that I and other of NSO's counsel met and conferred in good faith with counsel for Plaintiffs WhatsApp LLC, f/k/a WhatsApp Inc. ("WhatsApp"), and Meta Platforms, Inc., f/k/a Facebook, Inc. ("Facebook" and, together with WhatsApp, "Plaintiffs") regarding the discovery disputes that are the subject of the accompanying Motion.  On NSO's part, this was an effort to obtain the relief requested by Motion without having to seek Court intervention.  Despite my many discussions with counsel for Plaintiffs (all as described below), Plaintiffs have refused to produce the documents requested, failed to produce responsive and highly relevant documents they committed to produce over four months ago, and asserted unspecified and unexplained "privilege" objections that leave NSO to guess as to whether all communications to which they are entitled in discovery will be produced.   As discussed below, counsel also have exchanged multiple written correspondence concerning their positions on the merits of the discovery disputes described in the Motion.

Plaintiffs' Communications with Citizen Lab are Central to the Claims and Defenses

4.      This Motion seeks an Order compelling Plaintiffs to produce all their communications with their contractor, Citizen Lab, in compliance with Defendants' Request for Production No. 118 and other requests.  Based on my review of Citizen Lab's website, media reporting, and the public statements of Citizen Lab personnel, including John Scott-Railton and Bill Marczak, Citizen Lab has been an outspoken critic of what it calls the "mercenary spyware industry" and NSO's Pegasus technology.  Based on the little information thus far disclosed by

Plaintiffs, Citizen Lab has, pursuant to a contract with Plaintiffs, undertaken extensive analysis to (a) identify the "victims" whose mobile devices were allegedly targeted by clients of NSO in April-May 2019; and (b) determine that, of the approximately 1,400 "victims," approximately 200 of them fit within Citizen Lab's "broad definition" of "civil society." These purported facts are central to Plaintiffs' narrative in this case, and Citizen Lab personnel are key witnesses.

5.      Attached hereto as **Exhibit B** is a true and correct copy of Plaintiffs' Amended Initial Disclosures dated November 30, 2023.  Plaintiffs original Initial Disclosures did not identify Citizen Lab as a witness.  Plaintiffs amended their Initial Disclosures on November 30, 2023, to add Citizen Lab as a fact witness having "information relevant to the identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service."

6.      During a conference of counsel, counsel for WhatsApp informed me and my partner, Joseph N. Akrotirianakis, that Plaintiffs have a contract with Citizen Lab.  When asked whether Plaintiffs planned to call one or more Citizen Lab employees as trial witnesses, Plaintiffs' counsel indicated that Plaintiffs may do so.  The documents that are the subject of this motion are relevant to Citizen Lab's work and methodology (and thus the credibility of their personnel as witnesses), as well as those witnesses' biases against NSO.

7.      Citizen Lab has been extremely prominent in the media in attributing to Defendants efforts made by sovereign governments to prevent terrorism and serious crime by gaining access to the mobile devices of these terrorists and criminals.  Attached as **Exhibits O-X** are reports authored by Citizen Lab attacking NSO, and articles in New York Times, New Yorker and Reuters prominently quoting and discussing Citizen Lab's work attacking NSO.  **Exhibits O-X** are all available on, and were downloaded from, Citizen Lab's website.  Additional examples are available here:  https://citizenlab.ca/category/lab-news/mentions/.  Citizen Lab has also produced or participated in countless podcasts and radio shows that have been unfairly critical of Defendants, including the 10-part "Shoot the Messenger" podcast, Boundaries of Expression's "Pegasus: the Spy in your Pocket" episode, Darknet Diaries' "Episode 100: NSO," and Reveal's "The Spy Inside Your Smartphone."   One of Citizen Lab's chief critics of NSO, John Scott-Railton, even participated in the production of a motion picture docudrama, "The Dissident," that was highly

critical of Defendants, portraying himself in the movie.  It is no exaggeration to say that Citizen Lab and several of its personnel have gained worldwide notoriety by attacking NSO and that their professional reputations hinge on proving that NSO has engaged in wrongdoing.  Much of Citizen Lab's anti-NSO work post-dates the filing of the Complaint in this action.  (*See, e.g.*, Exhibits **V-X**.)

<u>Plaintiffs' Unfulfilled Promise to Produce (Some) Communications with Citizen Lab</u>

8.      In compliance with Local Rule 37-2, attached hereto as **Exhibit A** is a copy of each of NSO's Document Requests and Plaintiffs' Second Amended Responses and Objections thereto that are at issue in NSO's Motion.

9.      NSO propounded Request No. 118 on May 1, 2023, seeking Plaintiffs' communications with Citizen Lab, a key witness in the case.  Plaintiffs' initial response was that "Plaintiffs are willing to meet and confer with NSO regarding the scope of the Request." (**Exhibit J** hereto.)  This form of response is not permitted under Rule 34.  I immediately sought to meet and confer with Plaintiffs about this response, and Plaintiffs finally made time to do so on July 6, 2023, which was memorialized in a letter from my firm dated July 17, 2023.  (**Exhibit C** hereto.) During the conference, Plaintiffs position was that they would let us know at some point in the future what documents Plaintiffs were willing to produce.  (*Id*. at 3-4.)

10.     Plaintiffs amended their response to Request No. 118 on August 24, 2023, agreeing to produce "non-privileged communications with Citizen Lab prior to filing the Complaint that concern efforts to identify or communicate with owners of the 1,400 target devices referenced in the Complaint."  (**Exhibit L** hereto.)  Plaintiffs served second amended responses on September 8, 2023, which did not change their response to Request No. 118 (**Exhibits A, N** hereto).  Plaintiffs position then is the same as its position now—they have agreed to produce only those communications between Plaintiffs and Citizen Lab that are not "privileged" and that were made before the filing of the Complaint.  And despite the fact discovery cutoff being approximately 11 weeks away, Plaintiffs have produced only one responsive document— ████████████████
████████████████████████████████████████████████████████████████

1    ████████   The document contains the following "note" at the top, ████████

2    ████████████████████

3    ████████████████████████████████

4    ████████████████████████████████

5    ████████████████████

6         11.    On November 6, 2023, Defendants sent their portion of a joint discovery dispute

7    letter to Plaintiffs (**Exhibit D** hereto).[1]  Among the disputes in that letter was Plaintiffs' deficient

8    response to Request No. 118.  Plaintiffs' response and document production on November 12,

9    2023, partially mooted the dispute (*see infra* ¶ 24), but not as to Request No. 118.

10         12.    By December 4, 2023, Plaintiffs still had not produced even the limited set of their

11    communications with Citizen Lab that they had pledged to produce months earlier in their August

12    24, 2023, Amended Response to Request No. 118.  Defendants sent Plaintiffs a letter dated

13    December 4, 2023 (**Exhibit E** hereto), addressing this and other deficiencies in Plaintiffs'

14    document production and discovery responses.

15         13.    On December 8, 2023, the parties held a further conference of counsel to discuss

16    Plaintiffs' failure to produce any of Plaintiffs' communications with Citizen Lab, as well as other

17    discovery matters.  During that conference, Plaintiffs confirmed that Citizen Lab had assisted

18    Plaintiffs in identifying individuals allegedly targeted using Pegasus and that Plaintiffs had entered

19    into a contract with Citizen Lab.  Plaintiffs admitted that they may call one or more representatives

20    of Citizen Lab to testify in this case, but Plaintiffs failed to identify any such witness.

21         14.    During the same conference, Defendants also asked Plaintiffs to specify any

22    privilege that applied to their communications with Citizen Lab.  Plaintiffs were unable to identify

23    any grounds on which any such communications could be privileged.

24         15.    During the conference of counsel on December 8, 2023, Defendants explained that

25    communications that post-dated the filing of the Complaint were relevant to Citizen Lab's

26

27    _____

28    [1] The letter was dated November 10, 2023, because that was the date Defendants planned to file the letter.

credibility, as one subject of such communications was likely to be Citizen Lab's efforts to identify the owners of the target devices on Plaintiffs' behalf and identify Defendants as the party responsible for creating the technology; further, these communications would likely provide evidence of Citizen Lab's bias as a witness in the case and prejudice against Defendants, particularly in light of the contract between Plaintiffs and Citizen Lab.  Counsel for Plaintiffs were unable to defend the temporal restriction put on their Response to Request No. 118, and failed to provide any reason why they should not be compelled to produce Plaintiffs' communications with Citizen Lab that were made after the filing of the Complaint.

16.     Both during the December 8, 2023, conference and in the email correspondence that followed, Plaintiffs refused to commit to producing, by any date certain, even the partial set of communications with Citizen Lab that Plaintiffs initially promised back in August.

17.     On December 12, 2023, NSO sent Plaintiffs an email memorializing certain matters discussed at the December 8, 2023, conference (**Exhibit F** hereto) and requested that "Plaintiffs confirm that with respect to Plaintiffs' second amended responses to Defendants' Requests for Production Nos. 3, 4, 107, 108, 113, 114 and 118, wherein Plaintiffs promised to produce 'non-privileged communications with Citizen Lab prior to filing the Complaint,' that (a) Plaintiffs are not withholding any documents pursuant to any supposed privilege; (b) Plaintiffs will produce all its agreements with Citizen Lab; (c) Plaintiffs will not limit its production to documents that precede the filing of the Complaint; and (d) Plaintiffs will complete its production of these documents by next week."  With respect to the foregoing, NSO stated that "If you do not so confirm by close of business tomorrow, we will assume that Plaintiffs' response is negative, and we will proceed accordingly."  On December 13, 2023, Plaintiffs sent an email response to NSO's December 12, 2023 email, trying to stall further (*id.*).  On December 15, 2023, Defendants responded to Plaintiffs' December 13 email (*id.*) and confirmed the parties' impasse as to the subject matters of NSO's Motion.

<u>Plaintiffs' Practice in this Case has been to Produce Documents Only When Facing a Discovery Motion</u>

18.     The Court's professionalism guidelines provide that "Every attorney who enters an appearance in this matter shall be deemed to have pledged to adhere to the [Court's Professionalism] Guidelines.  Those guidelines require that counsel "conduct discovery in a manner designed to ensure the timely, efficient, cost effective and just resolution of a dispute." https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/.[2]  As described below, however, Plaintiffs have a history in this litigation of only producing materials after being pushed to the brink of a motion to compel.

19.     Five of Plaintiffs' seven document productions have been made only after forcing Defendants to meet and confer at length, followed in most cases by Defendants having to prepare and send their portion of a joint discovery letter—despite these documents being so central to Plaintiffs' case that Plaintiffs identified some of them in their initial disclosures.  The tactic of forcing one's opponent to send emails, write letters, participate in very lengthy conferences of counsel and draft motion papers, before producing plainly relevant materials, is pure gamesmanship and in no way complies with the Court's guidelines for professional conduct, the local rules, or the federal rules.

20.     Plaintiffs' first document production in this case was made on or about June 23, 2023, consisting entirely of 14,824 pages they received from third parties pursuant to subpoenas Plaintiffs issued.  These documents were the subject of NSO's Request for Production No. 1 served March 8, 2023 (Plaintiffs' responses are at **Exhibits I, K and M** hereto).  Plaintiffs' written response to Request No. 1 agreed to produce all responsive documents, and the burden on Plaintiffs to produce these documents was nonexistent.  Yet Plaintiffs forced NSO to write a meet and confer letter on April 27, 2023, and to meet and confer about these documents on June 5, 2023.  Even then, Plaintiffs waited 18 more days before producing these documents.

[2] The same guidelines require counsel for Plaintiffs not to "withhold documents on the grounds of privilege only where appropriate" and "not delay producing documents to prevent opposing counsel from inspecting documents prior to scheduled depositions or for any other tactical reason."

21.     Plaintiffs' second document production did not come until August 28, 2023.  It consisted of seven documents (176 pages) of publicly-available WhatsApp Terms of Service and Meta Quarterly Adversarial Threat Reports.  This production was made in response in response to NSO's Request for Production No. 110 and 111 served May 1, 2023, seeking documents that relate to WhatsApp's enforcement of its Terms of Service that it contends Defendants violated (one of Plaintiffs' causes of action is that Defendants violated the WhatsApp terms of service).   Plaintiffs forced Defendants to meet and confer with Plaintiffs on July 6, 2023, about Plaintiffs' responses to these requests, and then follow up with a letter dated July 17, 2023 (**Exhibit C** hereto) (to which Plaintiffs did not respond until August 3, 2023).  Defendants finally had no choice but to send Plaintiffs their portion of a joint discovery dispute letter on August 18, 2023, about, *inter alia*, Request No. 111 (**Exhibit G** hereto).  Plaintiffs made their second document production ten days later.

22.     Plaintiffs' third document production on September 12, 2023, consisted of 87 more documents, also in response to Request No. 111 (which was one of the subjects of the August 18, 2023, joint discovery dispute letter).

23.     Plaintiffs' refusal to produce any documents concerning the identity of the "1,400 victims" referenced in Plaintiffs' Complaint required <u>two</u> separate joint discovery dispute letters. Plaintiffs' Initial Disclosures served August 4, 2020, listed "documents relating to the identification of victims" as documents Plaintiffs had in their possession and intended to use to support their claims.  Defendants requested these documents in both their First and Second Requests for Production, in Request Nos. 2, 3, 4, 107, 108, 113, 114, 115 and 118. Notwithstanding these documents being identified in Plaintiffs' own initial disclosures, Plaintiffs forced Defendants to meet and confer about these documents on a July 6, 2023, videoconference and in multiple letters and emails that followed.  Defendants then prepared and sent a joint discovery dispute letter on August 18, 2023, about these documents (**Exhibit G** hereto).

24.     On August 24, 2023, Plaintiffs attempted to moot the joint discovery letter issue about the identification of victims by amending their RFP responses to promise to produce "information known to Plaintiffs sufficient to identify the victims associated with the 1,400 target

devices referenced in the Complaint." (**Exhibits K-L** hereto.)  Concurrently, Plaintiffs sent me a letter promising to produce those documents by October 27, 2023 (**Exhibit H** hereto).  When they failed to do so, I sent another email to Plaintiffs' counsel on October 31, 2023, and Mr. Akrotirianakis advised the Court of Plaintiffs' inexplicable refusal to produce these documents during the in-person court motion to dismiss hearing on November 2, 2023.  Four days letter, Defendants sent to Plaintiffs their portion of <u>another</u> joint discovery dispute letter, again addressing Plaintiffs' failure to produce information about the identity of the 1,400 victims (**Exhibit D** hereto).  On the last day for Plaintiffs to respond to the November 6, 2023, joint letter, Plaintiffs finally produced, in their fourth document production, some information about the identity of approximately 900 of the "1,400 victims."  After additional conferences of counsel about the discrepancy between 900 and 1,400, Plaintiffs produced on December 8, 2023, their sixth document production containing one document with additional information about the alleged victims.  As the foregoing demonstrates, five of Plaintiffs' seven document productions have come only after stalling tactics that pushed Defendants to the brink of filing a motion to compel.[3]

<u>Authentication</u>

25.     Attached hereto as **Exhibit C** is a letter sent from my former associate James Cone to Plaintiffs' counsel Craig Cagney dated July 17, 2023.  I have caused to be redacted from Exhibit C Defendants' highly confidential information that is not relevant to this motion.

26.     Attached hereto as **Exhibit D** is an email transmittal and a Defendants' portion of a joint discovery dispute letter sent from my associate Ben Lee to Plaintiffs' counsel Craig Cagney on November 6, 2023.

---

[3] This discovery misconduct is perfectly consistent with Meta and Facebook's discovery "playbook." Facebook is a frequent litigant in this district, and earlier this year, Judge Chhabria sanctioned Facebook $925,000 and reprimanded it for its "unusually egregious and persistent" engagement of a "sustained, concerted, bad-faith effort to throw obstacle after obstacle in front of" its litigation opponent.  https://lawandcrime.com/high-profile/judge-slaps-facebook-parent-meta-and-its-law-firm-with-almost-1-million-in-sanctions-over-litigation-misconduct/.  Neither that rebuke nor the substantial fine appears to have altered Facebook's approach to discovery in litigation.

27.     Attached hereto as **Exhibit E** is a letter I sent to Plaintiff's counsel Craig Cagney regarding the issues in this motion on December 4, 2023.

28.     Attached hereto as **Exhibit F** is e-mail correspondence between myself and Plaintiffs' counsel Craig Cagney and Luca Marzorati sent between December 6-15, 2023.

29.     Attached hereto as **Exhibit G** is Defendants' portion of a joint discovery dispute letter I sent to Plaintiffs' counsel on August 18, 2023.

30.     Attached hereto as **Exhibit H** is a letter I received from Plaintiffs' counsel Craig Cagney on August 23, 2023.  I have caused to be redacted from Exhibit H Defendants' highly confidential information that is not relevant to this motion.

31.     Attached hereto as **Exhibit I** is a true and correct copy of Plaintiffs' initial Responses and Objections to NSO's First Requests for Production of Documents, served on NSO on April 17, 2023.

32.     Attached hereto as **Exhibit J** is a true and correct copy of Plaintiffs' initial Responses and Objections to NSO's Second Requests for Production of Documents, served on NSO on May 31, 2023.

33.     Attached hereto as **Exhibit K** is a true and correct copy of Plaintiffs' Amended Responses and Objections to NSO's First Requests for Production of Documents, served on NSO on August 24, 2023.

34.     Attached hereto as **Exhibit L** is a true and correct copy of Plaintiffs' Amended Responses and Objections to NSO's Second Requests for Production of Documents, served on NSO on August 24, 2023.

35.     Attached hereto as **Exhibit M** is a true and correct copy of Plaintiffs' Second (most recent) Amended Responses and Objections to NSO's First Requests for Production of Documents, served on NSO on September 8, 2023.  Portions of this have been excerpted in Exhibit A.

36.     Attached hereto as **Exhibit N** is a true and correct copy of Plaintiffs' Second (most recent) Amended Responses and Objections to NSO's Second Requests for Production of

1   Documents, served on NSO on September 8, 2023.  Portions of this have been excerpted in Exhibit
2   A.
3          I declare under the penalty of perjury and the laws of the United States that the foregoing
4   is true and correct this 22nd day of December 2023, at Los Angeles, California.
5
6                              _____
                                        */s/Aaron S. Craig*
                                        Aaron S. Craig
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28