JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
 *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>            Plaintiffs,<br><br>      v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>            Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S OPPOSITION TO MOTION TO COMPEL DISCOVERY**<br><br>**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**<br><br>Date:   N/A<br>Time:   N/A<br>Ctrm:   3<br><br>Action Filed:   10/29/2019 |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................ 1

III. ARGUMENT ................................................................................................................ 4

    A.    Plaintiffs' Motion Is Ambiguous as to the Requested Scope of Production and Premature ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ........................................................ 4

    B.    Plaintiffs' Remaining Discovery Requests Are Not Sufficiently Important or Specific under Richmark to Compel Production in Violation of Israeli Law. ............................................................................................................. 5

        1.    Discovery Requests Relating to Versions of Pegasus Other Than Those Described in the Complaint Are Not Important to Plaintiffs' Claims. .................................................................................................... 6

        2.    Discovery Requests Relating to Other Pegasus Technology, Other Than Those Described in the Complaint, Are Not Sufficiently Specific. ................................................................................................. 8

        3.    Defendants' Definition of "Relevant Spyware" Would Help Limit Discovery to that which is Important and Specific ................................ 9

        4.    None of Plaintiffs' Authorities Compel a Different Conclusion. ......... 10

        5.    Plaintiffs Cannot Expand Discovery by Requesting Injunctive Relief. .................................................................................................. 11

    C.    The Identities of the Specific NSO Customers Is Not Important or Specific. ........................................................................................................ 12

    D.    Discovery into NSO's "Transmission Network" Is Not Important or Specific. ........................................................................................................ 13

    E.    The Motion is Premature as to Requests Not Discussed in Cagney Decl. Exh. P. ........................................................................................................... 14

    F.    NSO Should Not Be Compelled to Produce Any Documents Before ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ............................. 14

IV. CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alcon Ent., LLC v. Automobiles Peugeot SA*,
    2021 WL 8055689 (C.D. Cal. May 7, 2021) ................................................................9

*Apple Inc. v. Wi-LAN Inc.*,
    2019 WL 4253833 (S.D. Cal. July 22, 2019) ..............................................................11

*Ashker v. Alameida*,
    2007 WL 4287330 (N.D. Cal. Dec. 5, 2007) ..............................................................12

*Bennett-Martin v. San Bernardino Valley Cmt. Coll.*,
    2018 WL 5919212 (C.D. Cal. May 15, 2018) .....................................................7, 9, 10

*Continental Vineyard LLC v. Vinefera Wine Co.*,
    2016 WL 302122 (N.D. Ill. Jan. 25, 2016) .................................................................12

*Contra Piracy v. Does 1-2919*,
    2013 WL 2403589 (N.D. Cal. May 31, 2013) ............................................................12

*Dai v. U.S. Citizenship & Immigration Servs.*,
    2017 WL 11634511 (C.D. Cal. Sept. 12, 2017) ..........................................................10

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ...................................................................................................12

*Flynn v. Liner Grode*,
    2011 WL 2847712 (D. Nev. July 15, 2011) ...............................................................13

*Hernandez v. Polanco Enters., Inc.*,
    19 F. Supp. 3d 918 (N.D. Cal. 2013) ..........................................................................11

*U.S. ex rel. Jacobs v. CDA, P.A.*,
    2016 WL 4146077 (D. Idaho Aug. 3, 2016) ...............................................................10

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
    2015 WL 1289984 (N.D. Cal. Mar. 20, 2015) ............................................................13

*Long v. Hewlett-Packard, Co.*,
    2006 WL 3751447 (N.D. Cal. Dec. 19, 2006) ............................................................11

*Manuf. Automation & Software Sys., Inc. v. Hughes*,
    2017 WL 5641120 (C.D. Cal. Sept. 21, 2017) .........................................................7, 9

*Quiroz v. Praetorian Ins. Co.*,
    2014 WL 3845418 (N.D. Cal. Aug. 5, 2014) ................................................................7

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ........................................................................................ passim

*In re Rubber Chemicals Antitrust Litig.*,
  486 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................................8

*SEC v. Church-Koegel*,
  2021 WL 6104157 (C.D. Cal. Sept. 29, 2021) ......................................................................12

*U.S. ex rel. Spay v. CVS Caremark Corp.*,
  2013 WL 4525226 (E.D. Pa. Aug. 27, 2013) ........................................................................10

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
  2019 WL 6134958 (N.D. Cal. Nov. 19, 2019) ........................................................................8

*Terpin v. AT&T Inc.*,
  2022 WL 3013153 (C.D. Cal. June 13, 2022) ......................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litigaton*,
  WL 13147214, at *3 (N.D. Cal. Apr. 26, 2011) ......................................................................8

*TIBCO Software Inc. v. GAIN Cap. Grp.*,
  2018 WL 4176622 (N.D. Cal. Aug. 31, 2018) ........................................................................9

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ..............................................................................................................12

*Uchytil on behalf of U.S. v. Avande, Inc.*,
  2018 WL 4150889, at *1 (W.D. Wash. Feb. 27, 2018) ..........................................................9

*United States v. S. Pac. Transp. Co.*,
  1995 WL 84193 (D. Or. Feb. 20, 1995) ................................................................................12

*Vallabharpurapu v. Burger King Corp.*,
  276 F.R.D. 611 (N.D. Cal. 2011) ..........................................................................................11

*Weinstein v. Katapult Grp.*,
  2022 WL 1125768 (N.D. Cal. Apr. 15, 2023) ......................................................................12

*Woodard v. Labrada*,
  2018 WL 6930767 (C.D. Cal. Jan. 11, 2018) .........................................................................9

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ................................................................................................................12

Restatement (Third) of Foreign Relations Law § 442(2)(a) (1987) .........................................6, 15

# I. INTRODUCTION

Plaintiffs WhatsApp LLC and Meta Platforms, Inc. seek to weaponize discovery, requesting unnecessary technical information regarding Pegasus to force Defendants ("NSO") into a Hobson's choice between violating this Court's discovery orders or Israeli law. Plaintiffs' discovery requests, however, are neither "important" nor "specific" enough to ask this Court to compel NSO to violate Israeli law. The governing standard is not, as Plaintiffs suggest, mere relevance. The Complaint asserts claims based on the development and deployment of a law-enforcement technology called Pegasus, *one version of which* allegedly used a specific vulnerability in WhatsApp's platform to install monitoring software on approximately 1,400 devices between April and May of 2019. Discovery should be limited to the Pegasus version described in the Complaint and to those aspects that relate directly to Plaintiffs' claims—that is, the portions that control installation and allegedly would have interacted with WhatsApp's servers. After this Court's ruling on NSO's motion for a protective order, NSO offered to ███████ ███████████████████████████████████████████████████, if Plaintiffs would limit their requests to the relevant aspects of the particular Pegasus technology and the timeframe described in the Complaint. NSO also offered to explore stipulation to certain facts. Plaintiffs refused those reasonable accommodations, instead insisting on overbroad discovery that they do not need to impose extreme and unnecessary burdens on NSO.

Accordingly, NSO respectfully requests that Plaintiffs' motion be denied. NSO remains willing ██████████████ for approval to produce the discovery outlined in its letter to Plaintiffs (Cagney Decl. Exh. P). ████████████████████████████, and there is no basis upon which to seek an order compelling NSO to violate Israeli criminal law in the interim.

# II. BACKGROUND

### A. Plaintiffs' Allegations About NSO and Pegasus

Plaintiffs allege that between "April 2019 and May 2019, Defendants used WhatsApp servers . . . to send malware to approximately 1,400 mobile phones and devices ('Target Devices')." (Compl. ¶ 1.) Plaintiffs "allege that [NSO] created a data program, termed Pegasus," to access the Target Devices. (Dkt. 111 at 2-3; *see* Compl. ¶¶ 24–43.) Plaintiffs allege that

1   someone accessed the 1,400 Target Devices "[b]etween April 29, 2019 and May 10, 2019." (Dkt.
2   111 at 4 (citing Compl. ¶ 42).) Plaintiffs admit they closed the vulnerability in their platform
3   allegedly used by Pegasus "around" May 13, 2019. (*Id.* (citing Compl. ¶ 44).) Plaintiffs,
4   sophisticated technology companies with vast resources, have not identified any subsequent
5   attempts at "using WhatsApp servers and the WhatsApp service . . . to send discrete malware
6   components ("malicious code") to Target Devices" in four-plus years since the Complaint (Compl.
7   ¶ 32). Nor have Plaintiffs identified any other NSO technology that has been used against them.
8       As the materials attached to the Complaint (and the Complaint itself) acknowledge, there
9   is no single "Pegasus." (*See generally* Compl. Exh. 10.) First, there are distinct versions of
10  Pegasus for installation on different operating systems—for example, Android or iOS. (*Id.* at 6.)
11  ████████████████████████████████████████████████████████████████████████████████████████
12  ████████████████████████████████████████████████. (Dkt. 179-3 ("Shohat Decl.")
13  ¶¶ 6,8.) Second, the software itself is further segmented into "layers." (Compl. Exh. 10 at p. 4.)
14  Each layer corresponds to a high-level function of the Pegasus system, including installation, data
15  collection, data transmission, presentation and analysis, and administration. (*Id.*) Third, within
16  the installation layer, installation can be achieved using different methods. (*Id.* at p. 7.) In this
17  case, the Complaint describes a method of remote installation using a specific vulnerability in the
18  WhatsApp platform, "CVE-2019-3568." (*See* Compl. ¶¶ 44-45.) Plaintiffs allege that the sending
19  of messages through WhatsApp computers to target devices was intended to accomplish one
20  specific purpose: to instruct the Target Devices to reach out to a (non-WhatsApp) third-party server
21  to request that other parts of Pegasus be sent to the Device. (*Id.* ¶ 32.) The gravamen of the
22  Complaint—that NSO allegedly used WhatsApp computers—thus relates *only* to the very first part
23  of the installation layer ████████████████.

24  **B.   History of Discovery and Ambiguity Regarding Plaintiffs' Motion**

25      Despite the discrete nature of Plaintiffs' claims and the brief time period during which
26  Pegasus was allegedly installed on Target Devices through WhatsApp's servers, Plaintiffs have
27  served broad written discovery. Among other things, the requests sought documents relating to all
28  "NSO Spyware" regardless of whether installation involved WhatsApp's servers (Cagney Decl.

Exh. A, RFP No. 1); all documents relating to third parties' use of "NSO Spyware" regardless of whether the third party allegedly installed Pegasus through WhatsApp's servers (*id.* RFP No. 3); documents dating back to 2014, despite the conduct described in the Complaint allegedly occurring between January 2018 and May 2019 (*id.* RFP No. 5); and information relating to all "layers" of the Pegasus architecture, regardless of whether the layer related to installation (*id.* RFP No. 20).

Soon afterward, the case was stayed while the parties litigated whether NSO was immune from suit, including the burdens associated with discovery. (*See* Dkt. 155 at 14:13-17.) During that time, ███████████████████████████████████████████████████████████████████████████████████████████████████. (*See* Dkt. 215-8.)

After the stay lifted in early 2023, NSO moved for a protective order (Dkt. 176, 179), while Plaintiffs continued to serve document requests, interrogatories, and requests for admission (Cagney Decl. ¶¶ 5-9). The Court denied NSO's motion. (Dkt. 233.) It concluded that it must analyze the language of the "specific discovery requests" at issue under *Richmark* factors (*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992)). The Court found that the first factor (the importance of the information requested) and the second factor (the specificity of the request) could not be "analyzed on a broader basis." (Dkt. 233 at 8:19-9:5.) Plaintiffs were thus instructed to file a motion to compel responses to specific requests, so that the Court could balance the importance and specificity of each request against the remaining three factors. (*Id.* at 9:18-21.) Those remaining factors were found to favor NSO, given the potential for discovery to violate Israeli export-control laws and ███████████████████████████████████████████████████████████████████████████████. (*Id.* at 9:18-21.)

After the Court's decision, the parties met and conferred. Plaintiffs narrowed their discovery requests and referred to them as "Plaintiffs' Revised Requests." (Cagney Decl. Exh. M, P). One critical dispute between the parties was the definition of the terms "NSO Spyware" and particularly "Relevant Spyware," which is included in Plaintiffs' Revised Requests for Production ("RFPs") 1, 3, 7, 9, 10, 14, 16, 19, 24 and Revised Interrogatories 1, 2, 3, and 9. Plaintiffs have offered three separate definitions of these terms: (1) in their original discovery, (2) in a November 30, 2023 letter and on page 7 of their Motion, and (3) on Page 1 of their Motion. All are too broad.

**"NSO Spyware" or "Relevant Spyware" Definitions**

| Initial Requests | Nov. 30 Letter and Motion to Compel (p. 7) | Motion to Compel (p. 1) | NSO's Proposal |
|---|---|---|---|
| NSO Spyware: "any computer code, program, malware, exploit, and/or remote access tool that enabled or was designed to enable any form of access to a mobile phone or device, its operating system or application, including but not limited to PEGASUS and Phantom and any similar software developed, marketed, sold, distributed, operated, maintained or used by NSO or NSO Customers. (Cagney Decl. Exh. A.) | Relevant Spyware: "Any NSO SPYWARE targeting or directed at WHATSAPP servers, or use WhatsApp in any way to access TARGET DEVICES from January 1, 2018 to the present" (Cagney Decl. Exh. M.) | Relevant Spyware: "Any spyware or malicious code designed to intercept or extract information from the WhatsApp application on mobile phones and devices in violation of the WhatsApp Terms of Service, including spyware transmitted or directed at WhatsApp servers, as well as any versions of their spyware that interacted with WhatsApp software in any way to surveil WhatsApp users from January 1, 2018 to the present. | The portions of Pegasus that interacted with WhatsApp servers to gain access to target devices from April 29, 2019, through May 13, 2019. (Cagney Decl. Exh. P.) |

In a December 13, 2023 letter, NSO explained that discovery should properly be limited to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Cagney Decl. Exh. P at 1-2.) NSO proposed revised responses to RFPs Nos. 1, 3, 5, 7, 9, 10, 14-17, 19-26, and 28, and to Interrogatory Nos. 1-3 and 8-10. (*Id.* at 3-10.) These proposals ████████████████████████████████████████████████████████ and the Defense Export Control Law ("DECL"). (*Id.*) NSO also offered to stipulate to facts that Plaintiffs claimed to need to prove. (*Id.*)

## III. ARGUMENT

**A. Plaintiffs' Motion Is Ambiguous as to the Requested Scope of Production and Premature ████████████████████████████████████████████.**

As a threshold matter, Plaintiffs' motion does not clearly define each request, which is critical to the Court's ability to assess importance and specificity on a request-by-request basis. On November 30, 2023, Plaintiffs revised certain requests to address some—but not all—of NSO's objections and proposed revisions (Cagney Decl. Exh. M, P), which revised requests are then

paraphrased in the Motion. (*See* Mot. 4-5.[1]) Requests Nos. 1 and 7, and 5 and 10, are simply summarized together. (*See id.*) Because Plaintiffs move to compel on the requests as revised in their Motion, it is thus unclear whether Plaintiffs have effectively abandoned several requests, whether (and to what extent) the paraphrased requests were intended to adopt NSO's most recent proposals, and which definition of "Relevant Spyware" Plaintiffs' intended to incorporate.[2] Any ambiguity in the Motion weighs against a finding that the requests are sufficiently specific.

In addition, the Court need not compel the production of documents ▮▮▮▮▮▮▮▮▮▮▮▮. As discussed above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3] There is no basis to compel the production of these materials ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Shohat Decl. ¶ 7.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Restatement (Third) of Foreign Relations Law § 442(2)(a) (1987) (if disclosure of foreign information is prohibited by foreign law, a U.S. court may require a good-faith effort to secure permission for production from foreign authorities).

### B. Plaintiffs' Remaining Discovery Requests Are Not Sufficiently Important or Specific under *Richmark* to Compel Production in Violation of Israeli Law.

The purpose of Plaintiffs' motion is to permit the Court to weigh the first two *Richmark*

---

[1] Page 5 does not set forth the full text of NSO's proposed agreements to produce, which are found in its December 13, 2023 letter. (Cagney Decl. Exh. P.)

[2] The difference between the definitions on pages 1 and 7 of the Motion is significant. Plaintiffs originally sought all documents relating to any "spyware" that targeted *either* WhatsApp computers *or* WhatsApp users. Any technology that could be used against any of WhatsApp's billions of users would fall within that request, even if the technology did not involve sending any messages through WhatsApp computers. Plaintiffs subsequently agreed to limit their Revised Requests to technology that "used WhatsApp in any way to access Target Devices." (Cagney Decl. Exh. M.) But Plaintiffs' latest definition of "Relevant Spyware" (Mot. 1), appears to revert to their original flawed definition.

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ because NSO was actively litigating issues relating to immunity from suit (including discovery) and because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

factors, importance and specificity, against the remaining factors to decide if NSO should be compelled to produce documents in violation of DECL ███████████████████. (*See* Dkt. 233 at 10:13-16.) Under the importance requirement, "courts have generally been unwilling to override foreign secrecy laws" when "the outcome of litigation does not stand or fall on the present discovery order." *Richmark*, 959 F.2d at 1475. Under the specificity requirement, courts consider "how burdensome it will be to respond to th[e] request" and will not approve a "[g]eneralized search[] for information." *Id.* Plaintiffs' requests for evidence unrelated to the version of Pegasus described in the Complaint—████████████████████████ ████ and that was allegedly installed through WhatsApp's servers to target approximately 1,400 devices between April and May 2019—do not satisfy these requirements.

  **1. Discovery Requests Relating to Versions of Pegasus Other Than Those Described in the Complaint Are Not Important to Plaintiffs' Claims.**

  Plaintiffs' claims are expressly limited to a specific use of a specific technology against a specifically defined set of WhatsApp users during a specific, narrow timeframe. The Complaint's very first paragraph explains that Plaintiffs' claims challenge the alleged use of "WhatsApp servers . . . to send malware to approximately 1,400 mobile phones and devices." (Compl. ¶ 1.) The Complaint *expressly defines* "Target Devices" as limited to those 1,400 devices and "Target Users" as limited to the users of those 1,400 devices. (*Id.*) And Plaintiffs' claims *expressly* challenge only the alleged access to the 1,400 Target Devices owned by Target Users. (*E.g.*, *id.* ¶¶ 50-54, 56.) The only technology that could have been used in connection with that alleged conduct ███ ████████████████████████████████████████. (Compl. ¶¶ 24-29, 38; Dkt. 111 at 2-4; Shohat Decl. ¶¶ 6, 8.) The Complaint does not allege the existence of any other technology that has been or could be used against Plaintiffs or their users.

  To challenge this reading of the Complaint, Plaintiffs cite their allegation that the NSO technology allegedly used in April and May 2019 is "Pegasus or another remote access trojan developed by Defendants." (Mot. 8; Compl. ¶ 32.) In context, however, Plaintiffs clearly allege that the relevant "remote access trojan" is ████████████ Pegasus. (*Id.* ¶¶ 24–29.) That is how the Court has understood Plaintiffs' claims. (Dkt. 111 at 2-4.) The only other allegations

1  Plaintiffs cite either support NSO's argument or are irrelevant. Plaintiffs' allegation that "Pegasus" refers to "Pegasus and its variants" confirms that the only relevant technology is Pegasus. (Compl. ¶ 24.) The Complaint does *not* allege that NSO has a "pattern of targeting Plaintiffs' servers using its 'spyware'" generally. (Mot. 9.) The allegation Plaintiffs cite alleges only that NSO *created* "spyware." (Compl. ¶ 24.) Pegasus is the only technology Plaintiffs allege has ever been used against WhatsApp. The attached declaration of Yaron Shohat confirms that ▇ ▇. (Shohat Decl. ¶ 5.)

Plaintiffs' breach-of-contract claim does not support broader discovery. The claim is expressly based on the alleged use of Pegasus to access 1,400 Target Devices. (*See* Compl. ¶ 32.) And all of Plaintiffs' purported *damages* relate to NSO's alleged access to WhatsApp's servers in April and May 2019. (*Id.* ¶¶ 57, 64, 73.) Plaintiffs do not identify any other way they have been harmed and cannot use discovery to expand their claims beyond the scope of the Complaint. *Quiroz v. Praetorian Ins. Co.*, 2014 WL 3845418, at *2 (N.D. Cal. Aug. 5, 2014); *Bennett-Martin v. San Bernardino Valley Cmt. Coll.*, 2018 WL 5919212, at *8 (C.D. Cal. May 15, 2018); *Manuf. Automation & Software Sys., Inc. v. Hughes*, 2017 WL 5641120, at *4 (C.D. Cal. Sept. 21, 2017).

Indeed, Plaintiffs' Motion effectively concedes they have no basis to assert claims based on any non-Pegasus NSO technology or any other version of Pegasus. Despite extensive investigation, years of public reporting on NSO, and voluminous third-party discovery into NSO's business, Plaintiffs' only argument is that NSO "may have" other technologies or versions of Pegasus. (Mot. 8.). Plaintiffs' motion is a speculative fishing expedition.

Plaintiffs claim that information about other NSO technology may be "relevant" (Mot. 8). It is not. But even if it had some minimal relevance and were otherwise proportional, it is not sufficiently *important* for its production to be compelled under *Richmark* in violation of Israeli law. Plaintiffs clearly believe they can establish their claims with evidence limited to the only NSO technology that could have been used to monitor the 1,400 Target Devices and Users— ▇ ▇. Therefore, "the outcome of litigation does not stand or fall" on discovery into other NSO technologies. *Richmark*, 959 F.2d at 1475. Because the discovery Plaintiffs seek is not "outcome determinative," *In re TFT-LCD*

1  (Flat Panel) Antitrust Litigaton, WL 13147214, at *3 (N.D. Cal. Apr. 26, 2011), and "go[es]
2  beyond what is necessary to litigate the disputed issues in this case," *Sun Grp. U.S.A. Harmony
3  City, Inc. v. CRRC Corp. Ltd.*, 2019 WL 6134958, at *3 (N.D. Cal. Nov. 19, 2019), it is not
4  sufficiently important to override NSO's obligations under Israeli law.

        **2.    Discovery Requests Relating to Other Pegasus Technology, Other Than Those Described in the Complaint, Are Not Sufficiently Specific.**

      For largely the same reasons, Plaintiffs' requests for discovery beyond ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ are not sufficiently specific under *Richmark* to compel NSO to risk criminal prosecution in Israel. The requests are overbroad because they seek information into supposed technologies that Plaintiffs do not allege exist or have ever been used against WhatsApp or WhatsApp users. Such a "generalized search[] for information whose disclosure is prohibited under foreign law [is] discouraged." *In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d 1078, 1083 (N.D. Cal. 2007).

      The overly broad scope of discovery proposed by Plaintiffs is particularly inappropriate when compared to the burdens that the broad requests would impose on NSO as the result of U.S. and Israeli legal restrictions. *First*, as the Court is aware, NSO's placement on the U.S. Department of Commerce's Bureau of Industry and Security ("BIS") Entity List has prevented NSO from obtaining U.S. e-discovery technology to comply with its U.S. discovery obligations. (Dkt. 215-1 ¶ 3.) As a result, the breadth of Plaintiffs' proposed discovery would impose a substantial burden on NSO compared to much more targeted, specific requests. *Second*, the potential review universe is already estimated at approximately 2.4 million documents. (Akro. Decl. ¶ 3.) That universe will only increase if the Court orders broader discovery into multiple NSO products, multiple versions of Pegasus, and timeframes beyond the limited period described in the Complaint.[4]

---

[4] In addition, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Shohat Decl. ¶ 8.) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*Id.*) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (Dkt. 215-9

Because the burden on NSO to search for and produce the requested materials far outweighs their importance to Plaintiffs' claims, their production should not be compelled. Plaintiffs cannot use this lawsuit to extract general information from, and impose large costs upon, an adversary. In *Hughes*, for instance, the plaintiff brought claims under the CFAA and CDAFA based on allegations that the defendants copied a specific software called the "MASS Software." 2017 WL 5641120, at *1-2. The plaintiff sought discovery "related to *any and every* agreement or license entered into . . . between Defendants and *any other person*." *Id.* at *4. The Court rejected those requests as overbroad because they were "not limited to . . . the M[ASS] Software that is the subject of the litigation." *Id.*[5] Courts similarly have rejected document requests, like Plaintiffs', that seek "discovery for a 'broader time period than that detailed in the complaint.'" *Uchytil on behalf of U.S. v. Avande, Inc.*, 2018 WL 4150889, at *1 (W.D. Wash. Feb. 27, 2018) (quoting *U.S. ex rel. Jacobs v. CDA, P.A.*, 2016 WL 4146077, at *2 (D. Idaho Aug. 3, 2016)).[6]

### 3. Defendants' Definition of "Relevant Spyware" Would Help Limit Discovery to that which is Important and Specific

The Court should use NSO's definition of "Relevant Spyware," which properly limits that term to "[t]he portions of Pegasus that interacted with WhatsApp servers to gain access to target devices." (Cagney Decl. Exh. P at 1). This translates to a portion of the installation layer of the version ▮▮▮▮▮▮▮▮▮▮ that interacted with WhatsApp computers to access target devices during the time period alleged. Plaintiffs' definition in its Motion, however, includes "any versions

---

Plaintiff's proposals to substantially expand the scope of discovery would ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the concomitant burdens on NSO.

[5] *See also Alcon Ent., LLC v. Automobiles Peugeot SA*, 2021 WL 8055689, at *1-2 (C.D. Cal. May 7, 2021) (rejecting discovery into products and conduct "divorced from the claims and defenses of this case"); *TIBCO Software Inc. v. GAIN Cap. Grp.*, 2018 WL 4176622, at *2 (N.D. Cal. Aug. 31, 2018) (limiting discovery to "the specific software identified in the . . . complaint"); *Bennett-Martin*, 2018 WL 5919212, at *7 (rejecting document requests not "tie[d]" to "the allegations or circumstances described in the [complaint]"); *Woodard v. Labrada*, 2018 WL 6930767, at *3, 5, 7 (C.D. Cal. Jan. 11, 2018) (rejecting discovery into "products" other than "the specific products implicated in this action" or "alleged to be at issue").

[6] *Accord Terpin v. AT&T Inc.*, 2022 WL 3013153, at *3-5 (C.D. Cal. June 13, 2022); *Bennett-Martin*, 2018 WL 5919212, at *8; *Dai v. U.S. Citizenship & Immigration Servs.*, 2017 WL 11634511, at *5-6 (C.D. Cal. Sept. 12, 2017); *U.S. ex rel. Spay v. CVS Caremark Corp.*, 2013 WL 4525226, at *2-3 (E.D. Pa. Aug. 27, 2013).

of their spyware that interacted with WhatsApp software in any way to surveil WhatsApp users." Documents related to other versions of Pegasus, which never interact with WhatsApp computers but potentially allow NSO licensees to access data stored on targets' personal devices (which may incidentally include WhatsApp messages), are not sufficiently "important" and "specific" to be discoverable under *Richmark*. Documents related to the functionality of Pegasus beyond the use of WhatsApp messages in installation are likewise not important and specific.

*First*, discovery is not sufficiently important under *Richmark* if the outcome of the litigation does not stand or fall on the requests or if the discovery is cumulative of existing evidence. *Richmark*, 959 F.2d at 1475. Plaintiffs purport to seek confirmation that Pegasus extracts data from Target Devices (Mot. 10), but they already have evidence that Pegasus can be configured to do so and have attached at least some of that evidence to their Complaint. (Compl. Exh. 10 at 10-15.) Moreover, NSO has offered to stipulate that Pegasus has been used by its government customers to obtain information from target devices. Given the evidence already in Plaintiffs' possession and NSO's proposed stipulation, discovery into the *technical* aspects of data extraction or related source code are not sufficiently important under *Richmark*.

*Second*, to the extent Plaintiffs' requests exceed the scope proposed by Defendants, they are not sufficiently specific or important under *Richmark*. They seek broad discovery into unnecessary technological details and software that NSO is undisputedly prohibited from producing under DECL. The materials attached to the Complaint indicate that Pegasus is segmented into "layers," each of which corresponds to a high-level function of system, including installation, data collection, data transmission, presentation and analysis, and administration. (Compl. Exh. 10 at 4.) Even assuming that Plaintiffs had established entitlement to a portion of the first installation layer, they provide no basis for any discovery into the remaining layers.

### 4. None of Plaintiffs' Authorities Compel a Different Conclusion.

None of Plaintiffs' cases provide a basis to compel NSO to produce documents that are unrelated to the ███████████████ that was allegedly installed through an exploit in WhatsApp's platform during April and May 2019—particularly when doing so would require NSO to violate ████████████████████████████████████. As a general matter, none of the cases

cited by Plaintiffs outside of their proposed legal standard apply *Richmark*. While "importance" may be related to "relevance," the former is obviously narrower. *See Richmark*, 959 F.2d at 1475 (documents not sufficiently important if the "outcome of the litigation" does not depend on them).

The specific cases themselves are also distinguishable. Plaintiffs rely on *Vallabharpurapu*, but their "claims generally"—not just their "specific factual claims"—are expressly limited to a specific subset of the Pegasus technology that was allegedly used against the 1,400 Target Devices during a circumscribed time period. *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011). Regardless, *Vallabharpurapu* only applies to class actions, not individual actions. *Id.* at 615 n.1; *see also Hernandez v. Polanco Enters., Inc.*, 19 F. Supp. 3d 918, 929 (N.D. Cal. 2013). Similarly, *Long v. Hewlett-Packard, Co.*, 2006 WL 3751447 (N.D. Cal. Dec. 19, 2006), was a class action where the court held discovery was not limited to the computers owned by the *named plaintiffs* because the *class* claims related to other computers. *Id.* at *2-3. The court recognized that a different rule would apply "outside the class context" should a plaintiff seek discovery "as to products which [are] not at issue" in the plaintiff's allegations. *Id.* at *2.

In *Apple Inc. v. Wi-LAN Inc.*, 2019 WL 4253833, at *5 (S.D. Cal. July 22, 2019), the court required Apple to produce a single agreement that was covered by at least two document requests to which Apple had agreed to respond. The court did not permit a competitor alleging claims based on a discrete technology to seek discovery regarding all "comparable technology," as Plaintiffs' motion suggests. Similarly, in *Ashker v. Alameida*, 2007 WL 4287330, at *1 (N.D. Cal. Dec. 5, 2007), the defendant *agreed* to produce documents "up to and including the present date." And in *Weinstein v. Katapult Grp.*, 2022 WL 1125768, at *3 (N.D. Cal. Apr. 15, 2023), the court *denied* a plaintiff discovery into contracts similar to his.

5.   **Plaintiffs Cannot Expand Discovery by Requesting Injunctive Relief.**

Plaintiffs cannot seek discovery to support their request for injunctive relief because they lack standing to seek that relief. (Dkts. 105, 110.) Standing must separately exist for each form of relief at all stages of the litigation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Plaintiffs do not plead any future injury that could confer standing to seek an injunction because they admit to closing the

vulnerability that allegedly permitted installation of Pegasus through their platform. (Compl. ¶ 44.) Plaintiffs cannot seek discovery to manufacture standing their allegations do not create.[7]

In any event, injunctive relief is a *remedy*, not a "claim." *SEC v. Church-Koegel*, 2021 WL 6104157, at *1 (C.D. Cal. Sept. 29, 2021). And discovery is limited by Plaintiffs' "claim[s]," not the remedies sought. Fed. R. Civ. P. 26(b)(1); *see Continental Vineyard LLC v. Vinefera Wine Co.*, 2016 WL 302122, at *2 (N.D. Ill. Jan. 25, 2016) ("It is after all the parties' claims and defenses, not the remedies sought, that set the scope of discovery (see Rule 26(b)(1))."). Plaintiffs may not assert claims based entirely on allegations of *past* conduct during a specifically defined timeframe, then expand the scope of discovery beyond that timeframe by tacking an injunctive relief request to the Complaint. *See United States v. S. Pac. Transp. Co.*, 1995 WL 84193, at *1 (D. Or. Feb. 20, 1995) (plaintiff "should not be allowed to 'rummage through [defendant's] files to attempt to find something to support its claim for injunctive relief'").

At a minimum, Plaintiffs' request for injunctive relief does not render their discovery requests sufficiently important or specific under *Richmark*. The Complaint makes clear Plaintiffs believe they can prove their claims based on evidence limited to the past use of a single Pegasus product. Additional evidence is thus not sufficiently "important" under *Richmark*.

## C. The Identities of the Specific NSO Customers Is Not Important or Specific.

Plaintiffs' RFP No. 25 is not sufficiently important or specific under *Richmark* to compel production in violation of Israeli law. *First*, contrary to Plaintiffs' argument, the request does not seek evidence as to whether NSO operates Pegasus, evidence regarding the extent of NSO's support services, or evidence of NSO's purported marketing activities in California or the United States. RFP No. 25 seeks the specific identities of government entities that allegedly tried to install Pegasus on the 1,400 Target Devices— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Dkt. 214-3 Exh. C at ¶¶ 4-5.) NSO's defense that it does not operate Pegasus after licensing it to sovereign nations can be tested without

---

[7] The Court treated NSO's motion to dismiss Plaintiffs' request for injunctive relief as premature before discovery, but standing must exist *before* discovery. *See Contra Piracy v. Does 1-2919*, 2013 WL 2403589, at *3 (N.D. Cal. May 31, 2013) ("Standing is a jurisdictional prerequisite, and this issue should be addressed at the outset, before any discovery or other proceedings.")

NSO disclosing the specific identities of any governments that may have monitored the Target Devices.[8] Neither Plaintiffs' claims nor NSO's defenses rise or fall on those identities, so they are not sufficiently important under *Richmark* to compel production.[9]

*Second*, it would be burdensome for NSO to identify which of its government licensees had "knowledge" of the attempted installations alleged in the Complaint. NSO is prohibited by the Israeli government from operating Pegasus once it is licensed. (Dkt. 45-11 ("Hulio Decl.") ¶ 14.) NSO has never installed Pegasus on a device for any operational purpose (*id.* ¶ 15), and is thus unable to identify the government licensees "with knowledge" of any specific attempted installation. To make that determination, NSO would need to disclose the identities of the 1,400 Target Users to all of its government licensees; request that any licensee voluntarily disclose its "knowledge" of an installation attempt (which could implicate intelligence gathering or ongoing investigations into terrorism and criminal activities); inform any licensee that its highly confidential documents or communications may be disclosed unless the government moves for a protective order; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Plaintiffs have not demonstrated any need for the information that would justify this burden.

### D. Discovery into NSO's "Transmission Network" Is Not Important or Specific.

Plaintiffs' requests for extensive discovery into the network of servers allegedly used to transmit and anonymize Pegasus are not sufficiently important or specific under *Richmark*. *First*, not even Plaintiffs argue that their claims "rise or fall" on this evidence. They merely argue that the discovery could be "probative," which is not sufficient under *Richmark*. This is particularly true given that NSO has already agreed to produce ▓▓▓▓▓▓▓▓▓▓▓▓ documents sufficient to show the contents of the relevant portions of servers that interacted with WhatsApp's

---

[8] NSO is not liable for merely licensing Pegasus consistent with Israeli law. The CFAA and the CDAFA do not create aiding and abetting liability, *e.g.*, *Flynn v. Liner Grode*, 2011 WL 2847712, at *3 (D. Nev. July 15, 2011), or prohibit the mere sale of technology that a third party then allegedly uses unlawfully, *e.g.*, *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, 2015 WL 1289984, at *4 (N.D. Cal. Mar. 20, 2015).

[9] Plaintiffs make passing reference to theories of personal jurisdiction (Mot. 12), but even if NSO "sought to sell its products in California and the United States," there is no plausible argument that Plaintiffs' claims could arise out of that conduct. There is no allegation that any local, state, or federal agency in California or the U.S. was involved in monitoring the 1,400 Target Devices.

servers. (Cagney Decl. Exh. P at 7.)  NSO has also offered to stipulate to other factual issues raised by Plaintiffs, including the "lessors of those servers, their location, and whether NSO ever had possession, custody, access to, or control of those servers." (*Id.*)

*Second*, Plaintiffs' requests are not sufficiently specific.  Plaintiffs' request for discovery into every server that NSO may have leased or maintained as part of its network—and their requests for the entire contents of those servers—make clear that they are simply seeking excessive information about Pegasus for use outside of the context of this litigation.  Plaintiffs' motion provides no basis for seeking *complete forensic images* of various servers and devices, which risks the production of information that is privileged, confidential, or otherwise prohibited from disclosure.  NSO should not be burdened with reviewing that vast quantity of information, particularly given its e-discovery and production burdens from U.S. and Israeli legal restrictions.

E.   **The Motion is Premature as to Requests Not Discussed in Cagney Decl. Exh. P.**

Defendants are surprised that Plaintiffs' Motion and Proposed Order includes RFPs 27, 30, 72, 73, 75, 76, 78 and 79 and RFA No. 38.  The parties did not address those requests, except in the most passing manner, in their conferences of counsel. (Akro. Decl. ¶ 2.)  While Plaintiffs' November 30 letter referenced them (among many others not included in Plaintiffs' Motion), Defendants' response (Cagney Decl. Exh. P) and the conferences of counsel focused on the nineteen document requests and the six interrogatories as to which Plaintiffs provided their revised positions.  Plaintiffs' Motion should be limited to those requests.

F.   **NSO Should Not Be Compelled to Produce Any Documents Before** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Finally, the Court should deny Plaintiffs' request that NSO be ordered to produce documents by February 15, 2024.  As the Court is aware, any document to be produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  To the extent the Court orders the production of any documents or information beyond those set forth in Cagney Decl. Exh. P. (which it should not for the reasons stated above), NSO should be provided the opportunity to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with any such additional materials. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████

██████████████████████████████. In these circumstances, the Restatement provisions cited in *Richmark* indicate that NSO should be permitted to "make a good faith effort to secure permission from the foreign authorities to make the information available"—not be immediately compelled to produce documents in violation of foreign law. Restatement (Third) of Foreign Relations Law § 442(2)(a).

Furthermore, as a practical matter, NSO would not be able to produce documents by February 15, 2024. As previously discussed, NSO is navigating difficulties caused by the lack of a BIS license for its e-discovery vendor. Furthermore, before NSO can begin reviewing documents, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Supra* Section III.B.2. Because the review universe is anticipated to consist of approximately 2.4 million documents, ████████████████████ ███████████████████ *Id.* ████████████████████████████████████████████████████████████████, NSO has conferred with Plaintiffs' counsel about modifying the case schedule, including the discovery cutoff, and intends to file a motion seeking that relief in short order.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel.

Dated:  January 9, 2024            KING & SPALDING LLP

                                                      By:   /s/Joseph N. Akrotirianakis
                                                              JOSEPH N. AKROTIRIANAKIS
                                                              AARON S. CRAIG

                                                      Attorneys for Defendants NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.