Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
             antonio.perez@davispolk.com
             craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.,<br><br>     Plaintiffs,<br><br>  v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>     Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY MEMORANDUM OF POINTS<br>AND AUTHORITIES IN SUPPORT OF<br>PLAINTIFFS' MOTION TO<br>COMPEL**<br><br>**DISCOVERY MATTER**<br><br>Date: February 8, 2024<br>Time: 1:30 p.m.<br>Ctrm: 3<br>Judge: Hon. Phyllis J. Hamilton<br><br>Action Filed: October 29, 2019 |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.       NSO Should Be Ordered to Produce the Discovery ███████████
                 ███████████ ......................................................................... 2

    II.      NSO's Opposition to Plaintiffs' Remaining Discovery Requests
              Fails to Refute the Importance and Specificity of Those Requests ......................... 4

         A.     NSO Should Be Compelled to Produce Documents
                Concerning All Relevant Spyware .................................................... 4

               1.     NSO's Objections Confirm There Must Be Other
                      Relevant Spyware ................................................ 4

               2.     All Relevant Spyware Used in the 2019 Attacks Is
                      Important and Specific ........................................ 5

               3.     All Relevant Spyware Used or Developed Since
                      2019 Is Important and Specific ......................... 6

         B.     NSO Should Be Compelled to Produce Discovery
                 Concerning the Full Functionality of the Relevant Spyware ..................... 7

         C.     NSO Should Be Compelled to Produce Discovery
                 Concerning the Transmission Network for the Relevant
                 Spyware ....................................................................................... 7

    III.     NSO Should Be Compelled to Produce Information Concerning Its
              Customers' Use of the Relevant Spyware ................................................................ 8

    IV.     Plaintiffs' Requests Are Specific, Even If NSO Has Many
              Responsive Documents ........................................................................................ 10

CONCLUSION .................................................................................................................... 10

APPENDIX A ..................................................................................................................... 12

APPENDIX B ..................................................................................................................... 15

i

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**
**CASE NO. 4:19-CV-07123-PJH**

1

# TABLE OF AUTHORITIES

2

PAGE(S)

3

### CASES

4
5

*Continental Vineyard LLC v. Vinifera Wine Co., LLC*,
    2016 WL 302122 (N.D. Ill. Jan. 25, 2016) ........................................................................ 6

6

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) ............................................................................. 1, 2, 3, 4

7
8

*SEC v. Church-Koegel*,
    2021 WL 6104157 (C.D. Cal. Sept. 29, 2021) .................................................................. 6

9

*United States v. S. Pac. Transp. Co.*,
    1995 WL 84193 (D. Or. Feb. 20, 1995) ............................................................................. 6

10

### STATUTES & RULES

11
12

18 U.S.C. § 1030 ............................................................................................................................. 9

18 U.S.C. § 1030(a)(6) .................................................................................................................... 9

13

Cal. Penal Code § 502(c)(6) ........................................................................................................... 9

14

Restatement (Third) of Foreign Relations Law § 442(2)(c) (1987) ............................................... 3

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

For four years, Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited ("NSO") essentially refused to produce discovery in this case, and took the view that they should only be required to participate in discovery to the extent permitted under Israeli law.  On November 15, 2023, the Court rejected that position, denying NSO's motion for a protective order, and indicating it would compel NSO to produce any discovery that was "important" and "specific" within the meaning of *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992).  In their motion to compel, Plaintiffs demonstrated why all their requests[1] are important and specific, and why NSO should be compelled to produce that discovery.  In response, NSO argues that the Court should not compel it to produce <u>any</u> discovery, but instead should wait ███████. NSO's position is untenable and was already rejected in the Court's November 15, 2023 order.

██████████████████████████. *See* App'x B.  The Court should therefore compel their production.  NSO's claim ███████████████████ should be rejected.  NSO has already had ample time ██████████.  This litigation has been pending for four years, and is scheduled for trial in December 2024.  This Court should not let NSO's inaction and ██████ ███████████ effectively grant NSO yet another stay.  To maintain the current schedule, NSO should be compelled to produce that discovery by February 15, 2024.

Second, NSO should be compelled to provide the remainder of Plaintiffs' requested discovery, all of which is also important and specific.  Plaintiffs seek discovery related to all "Relevant Spyware," defined as "any NSO Spyware targeting or directed at WhatsApp servers, or using

---

[1] NSO claims that Plaintiffs' motion is vague as to which requests it should be compelled to produce, even though Plaintiffs included the relevant requests in their motion.  For the avoidance of doubt, and the convenience of the Court, Appendix A contains a list of the requests that are the subject of this motion, and Appendix B ███████████████████████████████ ███████████████ "Cagney Decl." refers to the December 21, 2023 Declaration of Craig T. Cagney (Dkt. No. 235-3) and "Jan. 16 Cagney Decl." refers to the January 16, 2023 Declaration of Craig T. Cagney submitted in support of Plaintiffs' motion.

WhatsApp in any way to access Target Devices from January 1, 2018 to the present," and documents sufficient to understand how all such spyware works.  NSO argues these requests are neither important nor specific.  As to importance, NSO argues that discovery should be limited to the single series of attacks that Plaintiffs discovered pre-suit, and that Plaintiffs should accept NSO's vague offers to discuss stipulations in lieu of producing documents.  As to specificity, NSO argues that searching for all Relevant Spyware would expand the universe of responsive documents and impose an undue burden on NSO.  These arguments are meritless.  NSO misconstrues the complaint, has refused to admit any facts or elements of Plaintiffs' claims that would avoid the need for document discovery, and has not substantiated any burden.  NSO should be compelled to provide the requested discovery regarding all NSO products using WhatsApp to target users, their full functionality, the network of servers used to transmit them to target devices, and any customers that NSO claims committed the attacks alleged in the complaint—all of which are important and specific.

## ARGUMENT

**I.       NSO Should Be Ordered to Produce the Discovery** ███████████████

███████████████████████████████████

███████████████████████████████████████

███████       *See* Cagney Decl. Ex. P at 3–11.  These requests are outlined in NSO's December 13, 2023 letter, and reproduced in Appendix B for ease of reference.  Because ████████████

█████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

██████████████████████       The Court has already rejected such limitations, holding that "where the requested discovery is sufficiently important and specific, the court will order compliance with those discovery requests despite the DECL and other Israeli restrictions."  Dkt. No. 233 at 10.  NSO admits ████████████████ to produce these indisputably important and specific documents before now, explaining only that it "was actively litigating issues relating to immunity from suit," and ██████████████

2

███████████████████████ Opp. at 5 n.3.  But this Court denied the existence of

any immunity in July 2020, and █████████████████████████████████████████

█████████████████████████ *See* Apr. 24, 2023 Declaration of Antonio J. Perez-

Marques ¶ 6 (Dkt. No. 182).  NSO had four years ████████████████████, and the Court

should not delay this litigation any further simply because NSO gambled that its appeal would

succeed, and then still █████████████████████████ after its appeal failed.  *See*

*Richmark*, 959 F.2d at 1479 (rejecting argument that party acted in good faith when it "fought

disclosure for several months before raising the foreign law problem").

In any event, NSO provides no assurances that more time will result in the production of

any documents.  █████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ █████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████—NSO's position on tim-

ing would mean that the discovery process cannot begin in earnest until months after the parties

agreed—and this Court ordered—that discovery would close.  *See* Dkt. No. 168 at 1.  NSO cites

no authority for indefinitely delaying this litigation so that NSO can now—four years into the

litigation and less than a year before trial—█████████████████████████████

███████████████████.[3]  NSO should have taken these steps *before seeking a protective order* to

establish an actual conflict with Israeli law.  *See Richmark.*, 959 F.2d at 1477 ("[I]f [the company]

---

[2] ███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
████████████████████████████████████████

[3] While NSO notes that the Restatement (Third) of Foreign Relations Law recognizes a court's
discretion to direct a party to seek permission from a foreign government to comply with U.S.
discovery obligations, *see* Opp. at 5, NSO cites no authority requiring such a direction and omits
the Court's discretion to sanction the party for non-compliance despite seeking such permission.
*See, e.g.*, Restatement (Third) of Foreign Relations Law § 442(2)(c) (1987) ("[A] court or agency
may, in appropriate cases, make findings of fact adverse to a party that has failed to comply with
the order for production, even if that party has made a good faith effort to secure permission from
the foreign authorities to make the information available and that effort has been unsuccessful.").

1    could have avoided [the hardship], the fact that it finds itself in an undesirable position will not

2    work against disclosure of the requested information.").  NSO should be compelled to produce the

3    requested discovery by February 15.

4    **II.     NSO's Opposition to Plaintiffs' Remaining Discovery Requests Fails to Refute the**

5    **        Importance and Specificity of Those Requests**

6    ██████████████████████████████████████, NSO remains opposed to

7    producing a vast majority of the remaining discovery Plaintiffs seek, even after Plaintiffs' substan-

8    tial narrowing of their requests in service of a compromise.  Principally, NSO continues to argue

9    that these requests are not important or specific enough because they seek discovery on all aspects

10   of all "Relevant Spyware," rather than the ███████████████████████████████████

11   ████████████████████████████.  *See* Opp. at 5–12.  As Plaintiffs have made clear, the

12   "Relevant Spyware," as used in nine requests for production and three interrogatories in Appendix

13   A, is "any NSO Spyware targeting or directed at WhatsApp servers, or us[ing] WhatsApp in any

14   way to access Target Devices from January 1, 2018 to the present."  Cagney Decl. Ex. M at 1.

15   Discovery regarding all such Relevant Spyware is important and specific, and NSO provides no

16   legitimate justification for refusing to comply with those requests. [4]

17   **A.      NSO Should Be Compelled to Produce Documents Concerning All Relevant**

18   **         Spyware**

19   ***1.    NSO's Objections Confirm There Must Be Other Relevant Spyware***

20   NSO devotes most of its brief to contesting Plaintiffs' definition of "Relevant Spyware,"

21   claiming that it sweeps in technology unrelated to Plaintiffs' allegations.  That is not true.  If ██

22   ████████████████████████████████████████ *were* the only NSO spyware that

23   unlawfully targeted Plaintiffs' technology within the scope of Plaintiffs' claims, NSO would

24   simply agree to produce documents related to "Relevant Spyware," as Plaintiffs define it in their

25   requests, produce documents concerning ███████████████████████, and certify no other NSO

26

27   ---
     [4] Despite repeatedly raising the prospect of stipulating to certain facts, *see* Opp. at 1, NSO has

28   refused to stipulate to any of these core elements of any of Plaintiffs' claims.  Nor is "stipulation"
     necessary:  if NSO is willing to admit facts that it believes will eliminate the need for categories
     of discovery, it should simply do so.

4

spyware is responsive.  NSO has not taken that approach, and instead concedes that using Plaintiffs' definition of Relevant Spyware increases the universe of potentially responsive documents beyond ███████████████ .  *See* Opp. at 8.  The only logical conclusion is that there *is* some other NSO spyware that was "targeting or directed at WhatsApp servers, or use[d] WhatsApp in any way to access Target Devices from January 1, 2018 to the present," as to which NSO seeks to avoid producing discovery to Plaintiffs.  NSO should not be permitted to do so, and instead should be compelled to disclose all Relevant Spyware.

### 2.  All Relevant Spyware Used in the 2019 Attacks Is Important and Specific

Based on a fair reading of the complaint, discovery concerning all Relevant Spyware is important and specific to proving Plaintiffs' claims.  The complaint does not support NSO's effort to narrow discovery to ███████████████████████████████████████████████ ███████████████████████████████████████ .  As Plaintiffs set out in their opening brief, the complaint alleges that the attacks were conducted by "Pegasus *or another remote access trojan*," defined Pegasus as "Pegasus *and its variants*," and alleged that Pegasus can be installed "on mobile devices using the Android, iOS, and BlackBerry operating systems."  Dkt. No. 1 ¶¶ 24, 32 (emphasis added).  Without access to NSO's documents, Plaintiffs obviously could not definitively determine which version(s) of NSO's spyware abused WhatsApp in the attacks so far uncovered, or under what brand names NSO sold that spyware, and therefore could not and did not limit their allegations to ████████████████████ .

At a bare minimum, Plaintiffs are entitled to discovery regarding all Relevant Spyware used in the 2019 attacks.  The Court should reject NSO's self-serving attempt to add its "context" to the complaint.  Opp. at 6.  If NSO wishes to admit that █████████████████████ █████████████████—to the extent it has not effectively done so already—Plaintiffs would welcome that admission.  But it would not avoid the need for discovery into whether any other spyware was used.  For instance, NSO claims that Pegasus cannot operate within the United States or be used against U.S. phone numbers, *see* Dkt. No. 45–11 ¶ 13, but the complaint alleges NSO's spyware did target a U.S. mobile number, *see* Dkt. No. 1 ¶ 38.  Plaintiffs believe that Phantom is an identical piece of spyware used in the attacks, which NSO designed to operate in the United

States and sold under a different brand name through its affiliate Westbridge.  *See* Mot. at 8. ███

████████████████████████████████████████████████████████████████████

██████████████████████████████ Dkt. No. 249-4 ¶ 6.[5]

### 3.  All Relevant Spyware Used or Developed Since 2019 Is Important and Specific

In addition, Plaintiffs are entitled to discovery concerning any Relevant Spyware that continued to target WhatsApp servers, or use WhatsApp to target users, after the 2019 attacks, which is directly relevant, for example, to establishing Plaintiffs' claim for injunctive relief.[6]  NSO once again raises its objection to Plaintiffs' claim for injunctive relief, but the Court has made clear that objection must be decided on "the full picture on a full factual record, and not on the pleadings."  Dkt. 182-1, Ex. B at 10:15–16, 11:21–23.  Accordingly, discovery into whether any NSO spyware "target[ed] or [was] directed at WhatsApp servers, or use[d] WhatsApp in any way to access Target Devices" since 2019 (or continues to do so) is important to establishing that full record.  NSO's repeated challenges to Plaintiffs' claim for an injunction prohibiting NSO from illegally accessing their computers, and NSO's objections to discovery about any technology used or developed since 2019, only confirms that such spyware must exist.  NSO should be compelled to produce discovery about it.

---

[5] ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████  █████████████████████████████████  ███████████████████████

████████████████████████████████████████████████████████████████████

████  At a minimum, Plaintiffs are entitled to test NSO's assertion through discovery.

[6] None of the cases cited by NSO involve a court denying discovery in support of injunctive relief. In fact, only *Continental Vineyard LLC v. Vinifera Wine Co., LLC* involved a discovery motion, and it rejected misguided arguments for seeking prejudgment discovery into defendant's assets, for the purpose of enforcing the expected judgment, before that judgment was even obtained.  2016 WL 302122, at *2 (N.D. Ill. Jan. 25, 2016).  The remaining cases involve motions to dismiss injunctive relief, which were denied.  *See SEC v. Church-Koegel*, 2021 WL 6104157, at *1 (C.D. Cal. Sept. 29, 2021) (denying motion to dismiss injunctive relief and disgorgement remedy); *United States v. S. Pac. Transp. Co.* 1995 WL 84193, at *1 (D. Or. Feb. 20, 1995) (allowing claim for injunction).

1  **B.  NSO Should Be Compelled to Produce Discovery Concerning the Full**

2  **Functionality of the Relevant Spyware**

3  Just as NSO should not be able to cabin discovery to ████████████████

4  ████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████ Plain-

7  tiffs are entitled to understand the full functionality of the Relevant Spyware, both to test NSO's

8  assertions about which portions interact with WhatsApp, and to prove all elements of their claims.

9  As Plaintiffs established in their opening brief, the complaint includes claims under the CFAA and

10 CCDAFA, and for breach of WhatsApp Terms of Service that are all specifically premised on

11 NSO's spyware using its access to WhatsApp's servers to extract information from WhatsApp

12 users.  Mot. at 10–11.  Proving that unauthorized access to WhatsApp's servers was used as part

13 of an overall scheme to extract information from WhatsApp users, and that such information was

14 actually extracted from users, is important and specific to proving Plaintiffs' claims.

15 NSO's arguments ████████████████████████████████████████

16 ████████████████████████████ are unavailing.  Opp. at 9–10.  First, neither the infor-

17 mation in Plaintiffs' possession nor NSO's vague offers to stipulate ███████████████

18 ████████████████████████ substitute for technical information about what Pegasus

19 did to WhatsApp's servers or WhatsApp users and their devices.  Next, NSO's objection that █

20 ████████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████████

22 ██████████████████████████████████████ Dkt. No. 233 at 10.

23 **C.  NSO Should Be Compelled to Produce Discovery Concerning the**

24 **Transmission Network for the Relevant Spyware**

25 For similar reasons, the Court should order NSO to produce information related to the net-

26 work of servers used to transmit the Relevant Spyware to and through Plaintiffs' servers and to the

27 devices of WhatsApp users.  As Plaintiffs set out in their opening brief, understanding NSO's

28

7

transmission network is directly relevant to multiple aspects of Plaintiffs' claims, including attribution, authorization, and jurisdiction.  *See* Mot. at 13.  Here too, NSO's suggestion that ███████ ████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ is no substitute for the information Plaintiffs seek to prove their claims.  Plaintiffs' requests related to NSO's transmission network are not only directly relevant but also sufficiently specific.  Contrary to NSO's representations about Plaintiffs seeking a broad swath of information, Plaintiffs are moving to compel a complete image of only a single server—identified by IP address—connected to NSO's attacks that Plaintiffs have already concluded (████████████████, *see* Dkt. No. 208 at 4) is controlled by NSO, *see* RFP No. 30, RFA No. 38, while its remaining requests merely seek information sufficient to determine NSO's relationship to the other malicious servers used in the attacks, *see* RFPs Nos. 23, 72, 73, 75, 76, 78, and 79.[7]

## III.   NSO Should Be Compelled to Produce Information Concerning Its Customers' Use of the Relevant Spyware

NSO should also be compelled to produce discovery concerning its customers' use of the Relevant Spyware, including in response to RFP No. 3 seeking discovery "sufficient to show how NSO intended for or permitted third parties to use the Relevant Spyware," Mot. at 5 (inadvertently citing "RFP No. 2"), Cagney Decl. Ex. P at 3; and in response to RFP No. 25 seeking discovery "sufficient to identify the NSO Customers with knowledge of any of the attacks described in the Complaint."  *See* Mot. at 12–13.

This information is indisputably important.  Throughout this litigation, NSO has repeatedly sought to avoid liability on the basis that its spyware was operated by its customers, not NSO.  Dkt. No. 45 at 19 ("Defendants' customers, not Defendants, are the entities that accessed Plaintiffs' services").  Understanding the relationship between NSO and its customers is thus critically important, as NSO's own arguments implicitly concede.  Even if discovery confirms NSO only sells

---

[7] Contrary to NSO's contention, Opp. at 14, the parties conferred on these requests and RFA No. 38 in their November 22, 2023 meet and confer, and they were included in Plaintiffs' November 30, 2023 letter outlining the requests on which they planned to move.  Cagney Decl. ¶¶ 19–20. NSO's decision not to respond does not prevent an impasse.  Indeed, the parties had already submitted a joint dispute letter to the Court on some of these same requests.  *See* Dkt. No. 208.

the technology, this discovery would still be relevant to Plaintiffs' claims for trafficking in such technology and providing a means of accessing WhatsApp's computers, in violation of 18 U.S.C. § 1030(a)(6), Cal. Penal Code § 502(c)(6), and WhatsApp's Terms of Service.

Furthermore, Plaintiffs have already tailored the requests to address the alleged sensitivity of NSO's clients' identities, and to minimize ███████████████████████.  First, RFP No. 3 has been tailored to seek discovery regarding how NSO intended or permitted its customers to use the Relevant Spyware, such as marketing materials, licensing agreements, and training manuals not specific to any client. ████████████████████████████████████
████████████████████████████████████████████.

Second, RFP No. 25 merely seeks documents "sufficient to identify the NSO Customers with knowledge of any of the attacks described in the Complaint."  *See* Mot. at 13.  NSO has put its customers' use of the technology at issue through its defense that it was NSO's customers, rather than NSO, that conducted the attacks.  Although NSO concedes that discovery concerning the attacks on the 1,400 target users described in the complaint is important and specific, it refuses to produce any documents in its possession regarding its customers' actual roles in or knowledge of those attacks—even on a Highly Confidential – Attorneys' Eyes Only basis.  Plaintiffs have used these protections to produce sensitive information about NSO's victims, and they offer sufficient protection for NSO's clients, too.  Such information is important and should be produced.

In contrast to NSO's claims that it would be burdensome to determine which customers have such knowledge, Opp. at 13, NSO filed a Transparency Report in 2021 representing that "[w]here a customer is accused of misusing our technology, we investigate immediately."  Jan. 16, 2024 Cagney Decl. Ex. Q.  And in a March 1, 2019 letter sent to various NGOs, NSO's then-owner represented that NSO's "commitment to investigating such incidents was underpinned by a significant allocation of resources, and we identified three investigations over the last three years that led to NSO deciding to terminate a contract."  Jan. 16, 2024 Cagney Decl. Ex. R.  Based on these public representations, there is reason to believe NSO investigated the 1,400 incidents alleged in the complaint, and has internal documents regarding whether any of its clients were involved in

those attacks.  Such documents would "identify the NSO Customers with knowledge of any of the attacks described in the Complaint," and are important to proving Plaintiffs' allegations.

### IV.   Plaintiffs' Requests Are Specific, Even If NSO Has Many Responsive Documents

Plaintiffs have narrowly tailored their requests to specific and readily identifiable categories of documents "sufficient" to prove certain crucial issues in the case.  Other than objecting to the definition of Relevant Spyware, NSO does not contend that Plaintiffs' requests are vague or ambiguous.  Instead, it argues that the requests are not specific because the "potential review universe" for just the categories NSO has agreed to produce is allegedly 2.4 million documents, and that universe would increase if expanded to all Relevant Spyware.  This argument is meritless.

First, NSO does not state what these 2.4 million documents are, or whether there are ways to reduce the burden of review.  Even the 2.4 million figure is far from scientific:  it is based only on counsel's "estimate" of the amount of data that would remain "[a]fter processing, deduplication, and date filtering," and counsel's "estimate" of how many documents that "translates into."  Akrotirianakis Decl. ¶ 3 (Dkt. No. 249-3).  But NSO's counsel simultaneously claims ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Second, if Plaintiffs' requests result in a large number of responsive documents, that is indicative only of the scope of NSO's misconduct, not a lack of specificity in Plaintiffs' requests.  If NSO confronts a demonstrable burden ███████████████████████████████

███████████, Plaintiffs would be willing to discuss ways to tailor NSO's searches to reduce the burden.  But the sheer number of potentially responsive documents is not an excuse for refusing to produce any documents in response to Plaintiffs' requests.  The Court should overrule NSO's Israeli law objections, and compel NSO to respond to all of Plaintiffs' requests in Appendix A.

### CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to compel.

Dated:  January 16, 2024

DAVIS POLK & WARDWELL LLP

By:  */s/ Micah G. Block*
           Micah G. Block (SBN 270712)
           DAVIS POLK & WARDWELL LLP
           1600 El Camino Real
           Menlo Park, California 94025
           Telephone: (650) 752-2000
           Facsimile:  (650) 752-2111
           Email:  micah.block@davispolk.com

           Greg D. Andres
           Antonio J. Perez-Marques
           Craig T. Cagney
           (admitted *pro hac vice*)
           DAVIS POLK & WARDWELL LLP
           450 Lexington Avenue
           New York, New York 10017
           Telephone: (212) 450-4000
           Facsimile: (212) 701-5800
           Email:  greg.andres@davispolk.com
                 antonio.perez@davispolk.com
                 craig.cagney@davispolk.com

           *Attorneys for Plaintiffs WhatsApp LLC and*
           *Meta Platforms, Inc.*

# APPENDIX A

## PLAINTIFFS' DISCOVERY REQUESTS TO NSO[8]

| Category | Discovery Request (as narrowed by Plaintiffs) |
|---|---|
| **Requests concerning the Relevant Spyware's Full Functionality, Including Monitoring of Devices and Exfiltration of Data.** | **RFP No. 9**: Documents and Communications sufficient to show the processes, methods, and Technology used by the Relevant Spyware to monitor Target Devices and exfiltrate data, including but not limited to any command and control software or payloads. |
| | **RFP No. 10**: Documents and Communications sufficient to identify the mobile phone and device operating system vulnerabilities used to install the Relevant Spyware. |
| | **RFP No. 14**: Documents and Communications sufficient to show the processes, methods, and technology used to install the Relevant Spyware on the mobile phones and devices of target users, including but not limited to computer code, commands, data, or payloads transmitted or received during the installation of the Relevant Spyware. |
| | **RFP No. 16**: Documents and Communications sufficient to show the Technology used in the Relevant Spyware to communicate with WhatsApp, including WhatsApp servers, endpoints, computers and computer networks, other than the official WhatsApp application. |
| | **RFP No. 19**: Documents and Communications sufficient to show the Technology used to transmit any data or information from any Target Device containing or infected with the Relevant Spyware. |
| | **RFP No. 20**: Documents sufficient to describe the design and operation of Pegasus, including but not limited to the "layers" described in Exhibit 10 of the Complaint: installation, data collection, data, transmission, presentation and analysis, and administration. |
| | **RFP No. 21**: Documents sufficient to describe the design and operation of Pegasus' system architecture and Technology, as described in Exhibit 10 of the Complaint. |
| | **RFP No. 24**: Documents sufficient to describe the data and information NSO or NSO Customers obtained from the Target Users or the Target Devices by using Relevant Spyware. |
| | **Interrogatory No. 1**: Identify all Relevant Spyware that You directly or indirectly developed, marketed, promoted, distributed, maintained, sold, licensed, tested, deployed, operated, acquired, used, or for which You provided technical or operational support, from January 1, 2018 through the present, including but not limited to Pegasus and Phantom. Your response should identify any and all brand or marketing name(s) for each Relevant Spyware and, without limiting the foregoing, explain the differences (if any) between each Relevant Spyware. |
| | **Interrogatory No. 2**: Describe how each of the NSO Spyware identified in response to Interrogatory No. 1 functioned, including how it was designed to be installed on a Device, the methods used to install it on a Device, how it was used after being in-stalled on a Device, how it exfiltrated data from a Device on which it was installed, and how it accessed or used any WhatsApp Computers. |

---

[8] These requests are identical to those set forth in Plaintiffs' November 30, 2023 letter. *See* Cagney Decl. Ex. M.

| Category | Discovery Request (as narrowed by Plaintiffs) |
|---|---|
| Requests concerning NSO's development and role in the deployment of the Relevant Spyware. | RFP No. 1: Documents and Communications sufficient to show NSO's development, testing, deployment, installation, distribution, use, maintenance, troubleshooting, and/or operation of any NSO Spyware targeting or directed at WhatsApp servers, or using WhatsApp in any way to access Target Devices from January 1, 2018 to the present (the "Relevant Spyware"). |
| | RFP No. 5: All Documents and Communications between January 2014 and December 2019 concerning the identification of WhatsApp application or network vulnerabilities, including but not limited to any payments for bounties for WhatsApp vulnerabilities, contracts for services by vendors, or analyst work product and reports as limited through the use of search terms and custodians. |
| | RFP No. 7: Documents and Communications sufficient to show how NSO developed and tested any Exploit or Technology used in the Relevant Spyware. |
| | RFP No. 15: Documents and Communications sufficient to show analysis, reverse engineering, disassembling, or emulating of any version of the WhatsApp application, including but not limited to its Technology, application programming interfaces (APIs), decompiled code, binaries, executables, designs, specifications, or analyses of the WhatsApp application, APIs, or network protocols. |
| | RFP No. 17: Documents and Communications concerning any WhatsApp Accounts used to develop test, transmit, install, distribute, or use any NSO Spyware. |
| | Interrogatory No. 3: Describe how You developed, maintained, improved, tested, acquired, marketed, promoted, distributed, sold, licensed, deployed, operated, or provided technical or operational support for each of the Relevant Spyware identified in response to Interrogatory No. 1 from January 1, 2018 through the present, including a description of any change, upgrade, or update to each Relevant Spyware. |
| | Interrogatory No. 8: Describe how You reverse engineered the WhatsApp client, including but not limited to downloading and testing different versions of the WhatsApp client and using the WhatsApp service. |
| | Interrogatory No. 9: Identify all WhatsApp accounts associated with or used for the development, testing, or transmission of Relevant Spyware. |
| Requests concerning third parties' use of the Relevant Spyware. | RFP No. 25: Documents and Communications sufficient to identify the NSO Customers with knowledge of any of the attacks described in the Complaint, as alleged in Defendants' Motion to Dismiss. |
| Requests concerning NSO's marketing and sale of the Relevant Spyware. | RFP No. 3[9]: Documents and Communications sufficient to show how NSO intended for or permitted third parties to use the Relevant Spyware, including but not limited to marketing materials, licensing agreements, user complaints, and training manuals or documents. |
| | RFP No. 28: All Communications from January 1, 2018 to December 2019 with Westbridge Technologies relating to WhatsApp and the surveillance of WhatsApp users as limited through the use of search terms and custodians. |

---

[9] Although Plaintiffs accurately described RFP No .3 in their Motion to Compel at 5, Plaintiffs inadvertently cited RFP No. 2 rather than RFP No. 3. For the avoidance of doubt, RFP No. 2 is not included in Plaintiffs' instant motion and this reference should instead be to RFP No. 3.

| Category | Discovery Request (as narrowed by Plaintiffs) |
|---|---|
| **Requests concerning NSO's Transmission Network for the Relevant Spyware.** | **RFP No. 22**: Documents sufficient to describe the Pegasus Anonymizing Transmission Network, as described in Exhibit 10 of the Complaint. |
| | **RFP No. 23**: Documents and Communications Concerning the servers identified in response to Requests for Production Nos. 16, 19, 21, and 22 above, sufficient to show the contents of those servers, the third-party providers from whom those servers were leased, the locations of those servers, and whether NSO ever had possession, custody, access to, or control of those servers. |
| | **RFP No. 30**: A complete Image of the Device or Devices that resolve to the Internet Protocol (IP) Address 54.93.81.200, including a live capture of RAM and all virtual machines, and including all of the following: log files, configuration files, Python scripts, compiled Python scripts, text files, README files, XML files, database (.db) files, JPEG files, JSON files, PEM files, proto files, shell scripts (.sh), sequel database files (.sql), and all files, including any .zip files, referenced in any of the aforementioned. |
| | **RFA No. 38**: Admit that You had Control over the servers that resolve to the Internet Protocol (IP) address 54.93.81.200 during the 2019 Attack Period. |
| | **RFP No. 72:** Documents sufficient to show whether NSO ever had possession, custody, or control of the Device or Devices that resolve to the Internet Protocol (IP) address 104.223.76.220. |
| | **RFP No. 73:** All Documents concerning the handover, delivery, or assignment of the Device or Devices that resolve to the Internet Protocol (IP) address 104.223.76.220 from NSO to any third party. |
| | **RFP No. 75:** Documents sufficient to show whether NSO ever had possession, custody, or control of the Device or Devices that resolve to the Internet Protocol (IP) address 95.179.187.227. |
| | **RFP No. 76:** All Documents concerning the handover, delivery, or assignment of the Device or Devices that resolve to the Internet Protocol (IP) address 95.179.187.227 from NSO to a third party. |
| | **RFP No. 78:** Documents sufficient to show whether NSO ever had possession, custody, or control of the Device or Devices that resolve to the Internet Protocol (IP) addresses identified in RFP Nos. 33 through 70. |
| | **RFP No. 79:** All Documents concerning the handover, delivery, or assignment of the Device or Devices that resolve to the Internet Protocol (IP) addresses identified in RFP Nos. 33 through 70 from NSO to any third party in its current possession, custody, or control. |
| | **Interrogatory No. 10:** ███████████████████████ ███████████████████████████████ ███████████████████████ ████████████████████ |

14

**APPENDIX B**

[10]

| Discovery Request (as narrowed by Plaintiffs) | Defendants' position |
|---|---|
| ██████ | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ██████████████████████████████ |
|  | ████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
| ██████ | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████ |
|  | ████████████████████████████████ |
| ██████ | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |
|  | ████████ |
|  | ████████████████████████████████ |
|  | ████████████████████████████████ |

[10] This chart is identical to the positions set forth in NSO's December 13, 2023 letter.  *See* Cagney Decl. Ex. P.

15

| Discovery Request (as narrowed by Plaintiffs) | Defendants' position |
|---|---|
| ██████ | ████████████████████████████ |
| | ███████████████████ |
| ██████ | ████████████████████████████ |
| | ███████████████████ |
| ██████ | ██████████████████████████████ |
| | █████████████████████████████ |
| | █████████████████████████████ |
| | █████████████████████████████ |
| | ████████████████████████████ |
| | ███████████████████████████ |
| | ██████████████████████████████ |
| | ██████████████████████████ |
| ██████ | ██████████████████████████████ |
| | ██████████████████████████████ |
| | ████████████████████████████ |
| | █████████████████████████ |
| | ██████████████████████████████ |
| | ██████████████████████████████ |
| | ███████████████████ |
| | █████████████████████████████ |
| | ████████████████████████████ |
| ██████ | ██████████████████████████████ |
| | ██████████████████████████ |
| | ██████████████████████████ |
| | █████████████████████████████ |
| | █████████████████████████████ |
| | ████████████████████████████ |
| | ██████████████████████████ |
| ██████ | ██████████████████████████████ |
| | ████████████████████████████ |
| | ████████████████████████ |
| | ███████████████████████████ |

16

| Discovery Request (as narrowed by Plaintiffs) | Defendants' position |
|---|---|
| | ███████████████████████ |
| | ███████████████████████ |
| | ██████████████ |
| ██████ | ███████████████████████████ |
| | ███████████████████████████ |
| | ██████████████████████████ |
| | █████████████████████████ |
| | █████████████████████████ |
| | ██████████████████████████ |
| | █████████████████████████ |
| | ████████████████████ |
| | ████████████████████ |
| ██████ | ████████████████████████████ |
| | ███████████████████ |
| ██████ | ████████████████████████████ |
| | ███████████████████████████ |
| | ███████████████████████████ |
| | ███████████████████████████ |
| | ████████████████████████████ |
| | ███████████████████████████ |
| | ███████████████████████████ |
| | ███████████████████████████ |
| | ███████████████████████████ |
| ██████ | █████████████████████████ |
| | ██████████████████████████ |
| | ████████████████████████ |
| | ███████████████████████ |
| | ███████████ |
| | ██████████████████████████ |
| | ███████████████████████████ |
| | ██████████████████████████ |
| | ██████████████████████ |
| | █████████ |
| | ████████████████████ |
| | ████████████████████ |
| ████████████ | ████████████████████ |
| | ███████████████████ |

| Discovery Request (as narrowed by Plaintiffs) | Defendants' position |
|---|---|
| | ██████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████ █████████████ |
| ████████████████████ █ | ████████████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████████ |
| ████████████████████ █ | ████████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████████ ████ |
| ███████████████████████ █ | ██████████████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████████████ ███████ |
| ████████████████████ █ | █████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████████████ ██████████ |

| Discovery Request (as narrowed by Plaintiffs) | Defendants' position |
|---|---|
| ██████████ █ | █████████████████████████ |
| | █████████████████████████ |
| | ███████████████████ |
| | █████████████████████████ |
| | ██████████████████████████ |
| | █████████████████████████ |
| | █████████████████████████ |
| | ████████████ |