1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
    Telephone: (213) 443-4355
5  Facsimile: (213) 443-4310

6  Attorneys for Defendants NSO GROUP TECHNOLOGIES
    LIMITED and Q CYBER TECHNOLOGIES LIMITED
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  OAKLAND DIVISION

11  WHATSAPP INC., a Delaware corporation,          Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
12  corporation,                                    **DEFENDANTS NSO GROUP
                                                    TECHNOLOGIES LIMITED
13                  Plaintiffs,                      AND Q CYBER TECHNOLOGIES
                                                    LIMITED'S NOTICE OF MOTION AND
14          v.                                       MOTION FOR RELIEF FROM CASE
                                                    MANAGEMENT SCHEDULE;
15  NSO GROUP TECHNOLOGIES LIMITED                  MEMORANDUM OF POINTS AND
    and Q CYBER TECHNOLOGIES LIMITED,               AUTHORITIES IN SUPPORT**
16
                    Defendants.                     **REDACTED VERSION OF
17                                                  DOCUMENT FILED UNDER SEAL**

18                                                  Date:    February 22, 2024
                                                    Time:    1:30 p.m.
19                                                  Ctrm:    3
                                                    Judge: Hon. Phyllis J. Hamilton
20

21                                                  Action Filed:  10/29/2019

22

23

24

25

26

27

28

TO THE COURT AND PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on February 22, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard, Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") will bring on for hearing before the Honorable Phyllis J. Hamilton, in Courtroom 3 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, a motion under Civil L.R. 7 and 16-2(d) for relief from the Case Management Schedule as follows:

|  | Current Date | Requested Relief |
| --- | --- | --- |
| **Expert disclosures** | 2/26/2024 | 8/30/2024 |
| **Fact discovery cut-off** | 3/11/2024 | 9/13/2024 |
| **Rebuttal expert disclosures** | 4/8/2024 | 9/27/2024 |
| **Settlement Conference** | 5/8/2024 | Such time after discovery cutoff as is convenient for Magistrate Judge Westmore |
| **Expert discovery cut-off** | 5/27/2024 | 10/25/2024 |
| **Dispositive Motions** | 8/1/2024 | 12/2/2024 |
| **Pretrial Conference** | 11/7/2024 | 2/13/2025 |
| **Trial Date** | 12/2/2024 | 3/3/2025 |

The parties have satisfied the requirements of Civil L.R. 16(d)(2) by attempting in good faith to negotiate a mutually acceptable amendment to the current case management schedule.

The Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declarations of Joseph N. Akrotirianakis (and Exhibit), Ronni D. Solomon, Chaim Gelfand, and Daniel Whelan, all filed concurrently with this Motion; the pleadings and papers on file in this action; the arguments of counsel; and any other matter that the Court may properly consider.

1    DATED:  January 18, 2024           KING & SPALDING LLP

2

3

4                                        By:  /s/ *Joseph N. Akrotirianakis*
5                                             JOSEPH N. AKROTIRIANAKIS
                                            AARON S. CRAIG

6                                             Attorneys for Defendants NSO GROUP
7                                             TECHS. LTD. and Q CYBER TECHS.
                                            LTD.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**TABLE OF CONTENTS**</u>

**Page(s)**

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND ........................................................................................... 4

        A.      Procedural History ........................................................................... 4

        B.      ███████████████████ and Export Control Laws ................. 5

        █      ████████████████████████████ ............................. 8

        D.      Fact Discovery Is Nowhere Near Completion ................................. 12

        E.      The Parties' Pre-Motion Conferencing of Counsel ....................... 12

III.    ARGUMENT.............................................................................................. 13

IV.     CONCLUSION........................................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992) ...................................................................................13

5

*Moofly Prods., LLC v. Favila*,
    2014 WL 12560620 (C.D. Cal. Nov. 5, 2014)........................................................13

6

7

*Zivkovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) ................................................................................13

8

9

**Other Authorities**

10

15 C.F.R. § 734.3(a)(1) ........................................................................................................9

11

15 C.F.R. § 744, Supp. 4 ......................................................................................................9

12

15 C.F.R. § 772.1 ..................................................................................................................9

13

Fed. R. Civ. P. 16(b)(4).......................................................................................................13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. (together, "NSO") respectfully request that the Case Management Schedule be modified as follows:

|  | Current Date | Requested Relief |
|---|---|---|
| **Expert disclosures** | 2/26/2024 | 8/30/2024 |
| **Fact discovery cut-off** | 3/11/2024 | 9/13/2024 |
| **Rebuttal expert disclosures** | 4/8/2024 | 9/27/2024 |
| **Settlement Conference** | 5/8/2024 | Such time after discovery cutoff as is convenient for Magistrate Judge Westmore |
| **Expert discovery cut-off** | 5/27/2024 | 10/25/2024 |
| **Dispositive Motions** | 8/1/2024 | 12/2/2024 |
| **Pretrial Conference** | 11/7/2024 | 2/13/2025 |
| **Trial Date** | 12/2/2024 | 3/3/2025 |

## I.    INTRODUCTION

The parties have, in essence, agreed that it will not be possible to complete fact discovery by March 11, 2024, in spite of the parties' diligence.  None of the parties has completed document production, written discovery is not complete, and no depositions have been taken or even definitively set.  Defendants believe that they can complete their production of documents and satisfy other fact discovery obligations by September 2024.  NSO therefore requests that the current March 11, 2024, fact discovery cutoff be extended by approximately six months for four reasons, which have individually and collectively delayed NSO's ability to produce documents and other discovery in this matter.[1]

---

[1] During the parties' meeting and conferring, Plaintiffs were amenable to an extension, but of only one month.  Plaintiffs oppose NSO's requested longer extension of the case schedule.

1    *First*, NSO will be unable to complete its discovery obligations by March 11, 2024, ████

2    ████████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████ Dkt. No. 133-6 Exh. D at 1; ███

6    ████████████████████████████████████████████████████████████████████

7    ███   Dkt. No. 195-4 at 1.)

8    Before ███████████████████████████████████████████████████

9    ███████████████████████████████ Defendants were also litigating their immunity

10   from suit (and discovery) between April 2020 and January 2023, as well as their right to a

11   protective order pursuant to a motion Defendants filed in March 2023.

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18   ███   Despite NSO's best efforts since ███████████████████████████

19   ████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████

21   ████████████████████████████████ (Declaration of Chaim Gelfand ("Gelfand Decl.") ¶ 12.)

22   Critically, ██████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████

24   ██████████████████████████████████████ (*Id.* ¶¶ 5, 12.)  This prevents NSO from

25   completing its discovery obligations by the March 11, 2024, fact-discovery cutoff.

26   *Second*, almost all of the materials requested in discovery by Plaintiffs are subject to

27   Israel's Defense Export Control Law.  NSO formally applied for a license to Israel's Defense

28   Export Control Agency ("DECA") on June 8, 2023, despite the pendency of NSO's motion for a

protective order that export-controlled discovery not be had.  As of the date of this motion, NSO's requested license to disclose export-controlled materials to the Plaintiffs' counsel of record has been pending for more than seven months and has not been granted.  Nor has NSO's request for a license to disclose such information to its own U.S. litigation counsel, King & Spalding LLP.  Until NSO receives permission to disclose export-controlled information to its U.S. litigation counsel, King & Spalding LLP cannot participate in any review or analysis of any material about NSO's technology at issue in this case.  And until NSO receives permission to disclose export-controlled information to Plaintiff's counsel, no export-controlled documents can be produced.

*Third*, ████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
Without access to its own electronically stored information ("ESI"), NSO would not be able to assist in, among other things: (1) locating relevant documents, (2) consulting with its U.S. litigation counsel about the NSO documents, (3) explaining the content and context of technical documents, (4) determining whether documents were prepared by or reflected advice given by NSO in-house attorneys in anticipation of litigation, (5) determining the appropriate confidentiality levels to be applied to documents under protective orders and Israeli law, and (6) otherwise ensuring that the review and production process complies with Israeli law.  NSO's counsel will be at an enormous disadvantage if NSO is denied access to its own ESI.

*Fourth*, both parties have a substantial amount of fact discovery to complete.  Plaintiffs themselves have yet to complete even their agreed-upon document production, despite facing none of the obstacles that NSO does.  Not a single deposition has been taken or definitively scheduled,

and based on Plaintiff's January 2, 2024, document production as well as its recent non-cooperation (*see, e.g.*, Defendants' Motion to Compel Discovery, date December 22, 2023, Dkt. No. 239-2), NSO anticipates the need to seek discovery from Citizen Lab (which is affiliated with the University of Toronto) through letters rogatory.

Accordingly, NSO requests that the fact discovery cutoff be extended by approximately six months, which takes into account ███████████████████████████████ NSO's ongoing negotiations to secure Israeli export licenses, and the delays caused by ████████ ███████████████████████ Plaintiffs' proposed extension—a single month—would not leave sufficient time for NSO to navigate the various obstacles and would only result in additional motion practice this Spring.  NSO thus requests that the fact discovery cutoff be extended by approximately six months to September 13, 2024, and that subsequent case management deadlines be modified accordingly.  NSO's proposed modifications are intended to balance the additional six months that NSO needs for fact discovery with Plaintiffs' desire for the earliest possible trial date.  Plaintiffs have suffered no prejudice from the fact that the case has not yet proceeded to trial.  The amount of money at issue in this case is minimal compared to the annual revenues and profits of Plaintiffs and their parents and affiliates.[2]  Further, since Plaintiffs closed the vulnerability in May 2019, neither Plaintiffs nor their allies such as Citizen Lab have alleged that any subsequent version of Pegasus involved the sending of messages to or across WhatsApp servers.

For all these reasons, good cause exists to modify the case management schedule.

## II.     BACKGROUND

### A.     Procedural History

This case was filed on October 29, 2019.  (Dkt No. 1.)  On April 2, 2020, NSO filed a motion to dismiss on several grounds, including sovereign immunity. (Dkt No. 45.)  The Court

---

[2]  Plaintiffs abandoned their claim for "reputational damages" to avoid the need to respond to certain discovery requests about Plaintiffs' reputation that had been propounded by NSO.  The only other damages sought by Plaintiffs are for the amount it allegedly cost their employee software engineers to make a small coding change to the WhatsApp application in 2019 to eliminate the vulnerability allegedly used by NSO's customers to allow for the covert installation of Pegasus on the devices of terrorists and criminals.  Any such alleged damages are *de minimis*.

1   granted in part and denied in part the motion to dismiss on July 16, 2020.  (Dkt No. 111.)  NSO

2   appealed the denial of its sovereign immunity argument, and this Court stayed the case during

3   NSO's appeal. (Dkt. No. 155.)  This Court stayed the case in part because it concluded that NSO

4   could potentially be completely immune from suit, including the burdens of discovery, and not

5   simply immune from liability.  (*See id.* at 10.)

6       Interlocutory appellate proceedings ended when the U.S. Supreme Court denied NSO's

7   petition for a writ of certiorari on January 9, 2023.  On February 16, 2023, the Court held a Case

8   Management Conference and entered an Order setting forth a Case Management Schedule:

| Expert disclosures | 2/26/2024 |
| --- | --- |
| Fact discovery cut-off | 3/11/2024 |
| Rebuttal expert disclosures | 4/8/2024 |
| Expert discovery cut-off | 5/27/2024 |
| Dispositive Motions | 8/1/2024 |
| Pretrial Conference | 11/7/2024 |
| Trial Date | 12/2/2024 |

17   (Dkt. No. 165.)

18       Plaintiffs served broad Requests for Production ("RFPs") on June 3, 2020, May 12, 2023,

19   August 7, 2023, and August 23, 2023.  These requests require the use of search terms and other

20   standard e-discovery filtering techniques to reduce the volume of ESI for review and potential

21   production. (Declaration of Ronni D. Solomon ("Solomon Decl.") ¶ 2.)  Because of the conflicting

22   legal obligations facing NSO, NSO filed a Motion for Protective Order on March 30, 2023.  (Dkt.

23   No. 176.)  This Court denied that motion more than ten months later, on November 15, 2023.  (Dkt.

24   No. 233.)  Plaintiffs then filed a Motion to Compel discovery (Dkt. No. 235-2), which remains

25   pending.

26       **B.**  ████████████████████████ **and Export Control Laws**

27       NSO and its counsel are ████████████████████████████

28   ████████████████████████████████████████

1 ███████████████████████████████████████████████████████

2 ████████████████████████████  However, NSO's efforts have been substantial.

3 The ██████████████████████████████████████████████████

4 ███████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████

6 ███████████████████████████████████████████████████████

7 █████████████████████████████████████████████ (Gelfand Decl. ¶

8 3.)

9 The ██████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████

14 ████████  Despite NSO's diligent efforts ██████████████████

15 ███████████████████████████████████████████████████████

16 ████████████████████████████████████████████████ (Gelfand Decl.

17 ¶¶ 5, 12)

18 Immediately after NSO ███████████████████████████████████

19 ████████████████████████████████████████ *(Id.* ¶ 5.) ███████████

20 ███████████████████████████████████████████████████████

21 █████████████████████████████ (*Id.*) ██████████████████████████

22 ███████████████████████████████████████████████████████

23 ████████ (*Id.*)

24 On May 30, 2023, NSO ██████████████████████████████████

25 ██████████████████████████████████████ (*Id.* ¶ 6.) ████████████

26 ███████████████████████████████████████████████████████

27 ███████████████████████████████████████████████████████

28 ████████ (Dkt. No. 195.)  Subsequently, NSO requested, and ██████████████

1    █████████████████████████████████████████████████████████

2    ███████████████████████████████ (Gelfand Decl. ¶ 6.)

3    NSO does not have complete visibility into ████████████████████

4    █████████████████████████████████████████████████████████

5    █████████████████████████████████████████████████████████

6    █████████████████████████████████████████████████████████

7    *(Id.* ¶¶ 5, 12.)   Moreover, Hamas' attacks on October 7, 2023, ████████████

8    ████████████████████████████████ *(Id.* ¶ 8.)

9    On November 20, 2023, ████████████████████████████████

10    █████████████████████████████████████████████████████████

11    ███████████████████ *(Id.* ¶ 9.) █████████████████████████

12    ████████████████████████████████████ *(Id.* ¶¶ 9-10.) ████

13    █████████████████████████████████████████████████████████

14    ████████████████████████████ *(Id.* ¶ 11.) ████████████████

15    █████████████████████████████████████████████████████████

16    █████████████████████████████████████████████████████████

17    ███████████████████████████ *(Id.* ¶ 12.) ██████████████████

18    █████████████████████████████████████████████████████████

19    ███████████████████████████████████████████ *(Id.)*

20        With respect to Israel's Defense Export Control Law, on June 8, 2023, NSO submitted a

21 request to Israel's defense export control agency ("DECA") for an export license to disclose

22 controlled information to King & Spalding, to Plaintiffs and their counsel, and to this Court.  *(Id.*

23 ¶ 14.) ███████████████████████████████████████████████████

24    ██████ *(Id.* ¶ 15.)  In July 2023, ██████████████████████████

25    █████████████████████████████████████████████████████████

26    █████████ *(Id.* ¶ 16.) ████████████████████████████████████

27    █████████████████████████████████████████████████████████

28    █████████████████████████████████████████████████████████

1  ████

2  ████████████████████████████████████████████████

3  ███████████████ (Gelfand Decl. ¶ 17.) ████████████████████

4  ██████████████████████████████████████████████████

5  ███████████████████████ (*Id.*)  The Jewish high holidays in September 2023 and

6  especially the Hamas attacks on October 7, 2023, ████████████████████

7  ████████████████████████████████████████████ to request

8  that licenses be granted. (*Id.*) ██████████████████████

9  ██████████████████████████████████████████████████

10  ███████ to King & Spalding LLP.  (*Id.* ¶ 18.)

11  ██   ██████████████████████████████

12  In 2020, despite its potential immunity from discovery, NSO began identifying key current

13  and former employees who may have potentially responsive information as custodians for this

14  action.  (Solomon Decl. ¶ 3.). Also in 2020, NSO retained Deloitte as its e-discovery vendor to

15  provide e-discovery services such as preservation, collection, filtering, processing, searching,

16  hosting, and production services.  (*Id.* ¶ 4.)  NSO selected Deloitte based on its experience handling

17  e-discovery in comparably large and complex cases in the United States and because Deloitte has

18  a dedicated e-discovery team located in Israel.  (*Id.*)

19  At the time NSO engaged Deloitte, and continuing to date, ████████████████

20  ██████████████████████████████████████████████████

21  ███████████████████████████████████████████ (*Id.* ¶ 5.)

22  ██████████████████████████████████████████████████

23  ███████████████████████ (*See, e.g.,* █████████████████

24  ████████████████████████)

25  On June 3, 2020, Plaintiffs served their first RFPs.  (Solomon Decl. ¶ 2.)  From 2020 to

26  date, including while the litigation was stayed, Deloitte assisted NSO with preserving potentially

27  relevant ESI from NSO's key custodians, including custodial mailboxes, mobile devices, and

28

laptop computers.  (*Id.* ¶ 6.)[3]  Deloitte has preserved and stored on NSO's premises over four terabytes of ESI for the key custodians alone. (*Id.*)  This is the equivalent of almost 5,700 CDs or 850 DVDs. (*Id.*)  This volume of ESI does not include non-custodial data sources that Deloitte has assisted NSO in preserving, including but not limited to shared drives, SharePoint sites, collaboration tools, and project-management tools. (*Id.*)  NSO and its counsel estimate that, after processing, deduplicating, and date filtering the four terabytes of ESI, there will be approximately 2.4 terabytes of distinct, responsive documents.  (*Id.*)  This will translate into approximately 2.4 million documents.  (*Id.*)

In November 2021, the United States Department of Commerce restricted certain U.S. exports to NSO.  *See* 15 C.F.R. § 744, Supp. 4.  BIS placed NSO on its Entity List, which prohibits any U.S. entity from exporting items subject to Export Administration Regulations to NSO.  *See id.*  Items that cannot be sent to NSO include hardware, software, technology, and related technical information that is currently located in or comes into the United States.  *See id.* §§ 734.3(a)(1), 772.1.  BIS may grant licenses authorizing the transfer of export-controlled items to NSO, but it has indicated that licenses pertaining to NSO would be subject to a presumption of denial.  *Id.* § 744, Supp. 4.

After the stay was lifted in February 2023, NSO, King & Spalding LLP, and Deloitte began strategizing on the document production process.  (Solomon Decl. ¶ 7.)  NSO, King & Spalding LLP, and Deloitte developed a protocol for the processing, filtering, searching, review, and production of NSO's ESI in order to fulfill NSO's discovery obligations by the March 11, 2024 fact discovery deadline.  (*Id.*)  In May 2023, ████████████████████████ ████████████████████████████████████████████ ████████████  (*Id.* ¶ 8.)  This type of request is, in NSO's counsel's experience, routinely granted for e-discovery technology.  (*Id.*)

In August 2023, ██████████████████████████████████

---

[3] While the case was stayed, Deloitte continued to assist with preservation and collection activities in Israel, but processing, searching, and hosting services in Israel were suspended.



---

[4] King & Spalding access depends on the Israeli government providing King & Spalding with an export license to access NSO documents.  To date, NSO's export license application to DECA on behalf of King & Spalding has not been granted.  (Gelfand Decl. ¶ 18.)

1  ███████████████████████████████████████████████████████████

2  ███████████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████

8  ████████████████████████ (*Id.* ¶ 14.)  NSO would not be able to assist, among other things, in:

9  (1) locating relevant documents, (2) consulting with King & Spalding about documents, (3)

10  explaining the content and context of technical documents, (4) determining whether documents

11  were prepared by or reflected advice given by NSO in-house attorneys in anticipation of litigation,

12  (5) determining the appropriate confidentiality levels to be applied to documents under protective

13  orders and Israeli law, and (6) otherwise ensuring that the review and production process complies

14  with Israeli law.  (*Id.* ¶ 14; Gelfand Decl. ¶ 13.)  NSO and its counsel will be at an enormous

15  disadvantage if NSO is denied access to its own ESI stored in Relativity.

16  Since October 2023, NSO and King & Spalding LLP have tried to find another e-discovery

17  vendor in Israel who could provide Relativity or equivalent software that would allow NSO to

18  have access to its ESI.  (Solomon Decl. ¶ 15.)  Due to ████████████████████████

19  and Israeli export control laws, NSO must retain an e-discovery vendor based in Israel who can

20  host Relativity (or equivalent software) on servers in Israel, ██████████████████████

21  ████████████████████████████████████████████ (*Id.*)  NSO

22  identified and interviewed at least four other e-discovery vendors based in Israel.  (*Id.*)  One vendor

23  said it could not provide Relativity (or equivalent software) due to NSO's inclusion on the BIS

24  Entity List.  (*Id.*)  None of the other vendors except one had Relativity (or equivalent software)

25  installed on servers in Israel.  (*Id.*)  The infrastructure of the one vendor that did have Relativity

26  on servers in Israel could not support this case.  (*Id.*)  The remaining e-discovery vendors said they

27  would have to first install Relativity on servers in Israel even to provide the e-discovery services

28  associated with Relativity.  (*Id.*)  The e-discovery vendors also said it would take approximately

two months to complete the installation of Relativity.  (*Id.*)

NSO is currently attempting to both negotiate ████████ to progress any e-discovery activities as much as possible while also retaining another e-discovery vendor with the capability to host NSO's documents on Relativity in Israel (and thus provide NSO with access to its own documents).

### D.    Fact Discovery Is Nowhere Near Completion

Setting aside NSO's barriers to producing documents, the parties are still in the early stages of fact discovery.  Both parties have motions to compel further document collection and production pending.  (Dkt. 236, 240.)  Plaintiffs have not completed their own *agreed* document production, despite having no claim to immunity from discovery and not being faced with the same barriers affecting NSO.  (*See* Dkt. 250 at 7.)  No depositions have been taken.  (Declaration of Joseph N. Akrotirianakis ("Akro. Decl.") ¶ 3.)  NSO has also been attempting, without success, to locate one of Citizen Lab's key personnel, John Scott-Railton, for over five weeks.  (*Id.* ¶ 5; *see also* Declaration of Daniel Whelan ("Whelan Decl.") ¶¶ 3-8.)  Defendants intend to serve Mr. Scott-Railton with a subpoena.  (Akro. Decl. ¶ 5.)  Mr. Scott-Railton purportedly lives in Los Angeles, California, but NSO has been unable to locate him there, despite retaining an investigator with 25 years of experience as an agent for the Federal Bureau of Investigation.  (Wheelan Decl. ¶¶ 1, 6, 8.)  In the event that Mr. Scott-Railton or his relevant documents can only be accessed through Citizen Lab, at the University of Toronto, NSO will seek discovery from him and from Citizen Lab pursuant to letters rogatory.  (Akro. Decl. ¶ 6.)  That process is lengthy.  (*Id.*)

### E.    The Parties' Pre-Motion Conferencing of Counsel

NSO's counsel and Plaintiffs' counsel conferred on January 2, 2024, to discuss modifications to the case schedule.  (*Id.* ¶ 7.)  On January 5, 2024, Plaintiffs proposed extending certain discovery deadlines by one month, with no adjustment to other deadlines:

|  | Current Date | NSO's Proposal | Plaintiffs' Offer |
|---|---|---|---|
| **Expert disclosures** | 2/26/2024 | 8/30/2024 | 3/26/2024 |
| **Fact discovery cut-off** | 3/11/2024 | 9/13/2024 | 4/11/2024 |

| | | | |
|---|---|---|---|
| **Rebuttal expert disclosures** | 4/8/2024 | 9/27/2024 | 5/8/2024 |
| **Expert discovery cut-off** | 5/27/2024 | 10/25/2024 | 6/27/2024 |
| **Dispositive Motions** | 8/1/2024 | 12/2/2024 | 8/1/2024 |
| **Pretrial Conference** | 11/7/2024 | 2/13/2025 | 11/7/2024 |
| **Trial Date** | 12/2/2024 | 3/3/2025 | 12/2/2024 |

(Akro. Decl. ¶ 8.)

## III.   ARGUMENT

The Court should adopt NSO's requested case schedule because good cause supports NSO's request. *See* Fed. R. Civ. P. 16(b)(4). "The 'good cause' standard primarily considers the diligence of the party seeking the amendment of the pretrial deadlines.  A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, it was unable to meet the timetable set forth in the order." *Moofly Prods., LLC v. Favila*, 2014 WL 12560620, at *2 (C.D. Cal. Nov. 5, 2014) (citations omitted) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)).

Here, good cause exists to modify the case schedule as requested by NSO because, through no fault of NSO's, it is not possible for NSO to comply with the current deadlines for fact and expert discovery.

*First*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will prevent NSO from satisfying a March 11 (or April 11) deadline.  Through no fault of NSO's, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮  As most relevant to the case schedule, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  NSO has consistently ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    ████████████████████████████████████████████████████████

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ██████████████████████████████████████████ This makes it impossible

5    for NSO to complete document production by March 11 or April 11, 2024.

6        *Second*, King & Spalding itself cannot begin document review before it receives an export

7    license from the Government of Israel.  Almost all of the materials requested in discovery by

8    Plaintiffs are subject to Israel's Defense Export Control Law.  NSO has applied for a license for

9    King & Spalding LLP to receive such materials, ████████████████████████████

10   ██████████████████████████████████████████ Until King &

11   Spalding LLP receives the requested license, it cannot receive or review for production most of

12   the documents Plaintiffs have requested in discovery.  For that reason as well, a March 11 or April

13   11 deadline for discovery is impossible to comply with, through no fault of NSO's.

14       *Third*, since 2020, NSO has tried to work with Deloitte to collect, process, and review

15   NSO's documents. █████████████████████████████████████████████

16   ████████████████████████████ Without assistance from its client, NSO's counsel

17   lacks the knowledge and expertise required to review and interpret NSO's highly technical

18   documents—and even assuming otherwise, King & Spalding LLP is prohibited from reviewing

19   any NSO materials until ██████████████████████████████ and King

20   & Spalding LLP is granted a DECA license.  NSO's counsel also cannot effectively review

21   documents for privilege, confidentiality, or other legal bars on disclosure without NSO's input.

22   ██████████████████████████████ NSO is currently unable to participate in the

23   document review process.  That restriction will unfairly prejudice NSO's ability to participate and

24   defend itself in this action.  These obstructions to fact discovery will also interfere with NSO's

25   ability to find and prepare expert witnesses, who likewise will need access to NSO's documents.

26   NSO and King & Spalding are working diligently to find alternative e-discovery vendors and other

27   work-arounds, but seeking out those alternatives has taken a great deal of time and any new vendor

28   will require approximately two months to arrange for the appropriate hardware and software in

1   Israel, while also ensuring compliance with all export restrictions.  Despite NSO's best efforts,

2   there is no way it can complete document production by the current deadline of March 11, 2024,

3   or by Plaintiffs' proposed deadline of April 11, 2024.

4   *Fourth*, the requested extension of the case management scheduled will not prejudice

5   Plaintiffs in any way.  As described above, none of the parties have completed fact discovery.

6   Plaintiffs themselves have not completed document production, there are motions to compel

7   pending, no depositions have been taken, and NSO may need to seek discovery from Citizen Lab

8   through letters rogatory.  Moreover, Plaintiffs are massive, wealthy companies who do not need

9   the comparatively paltry retroactive damages they claim through this lawsuit.  And they have not

10  demonstrated any ongoing harm while this case proceeds because they closed the relevant

11  WhatsApp vulnerability in May 2019 and have not identified any other NSO technology that can

12  be or is being used to access WhatsApp servers.  Plaintiffs therefore will not be harmed by

13  extending the deadlines.  In contrast, NSO will be grossly prejudiced without an extension because

14  it will be almost entirely unable to participate in its own defense in this case.

15  NSO's motion also satisfies the Court's local rule for schedule modifications.  Under the

16  local rules, a motion seeking relief from a case management schedule must (1) describe the

17  circumstances which support the request, (2) affirm that the movant has met and conferred with

18  all other counsel in an effort to reach agreement, (3) be accompanied by a proposed revised case

19  management schedule, and (4) if applicable, indicate any changes required in the ADR process or

20  case schedule.  L.R. 16-2(d).  NSO has satisfied these requirements.  This motion thoroughly

21  describes the circumstances supporting relief.  NSO's counsel met and conferred with Plaintiffs'

22  counsel to reach agreement but was unable to do so.  (*Supra* at Section II.E.)  NSO has set forth

23  its proposed revised schedule.  NSO further requests that the settlement conference scheduled with

24  Magistrate Judge Westmore on May 8, 2024, be continued to a date after the fact discovery cutoff

25  that is convenient for Magistrate Judge Westmore, the parties, and their counsel.

26  For all these reasons, good cause exists to grant NSO's request.  Because of NSO's and

27  King & Spalding's diligence, they believe that they can complete their production of documents

28  and other discovery obligations in time to comply with a discovery cutoff of September 13, 2024.

1   NSO respectfully requests that the Court revise the case schedule accordingly.

2   **IV.      CONCLUSION**

3           NSO respectfully requests that the Court modify the case schedule as requested above.

4   DATED:  January 18, 2024                    KING & SPALDING LLP

5

6

7                                       By:  /s/ *Joseph N. Akrotirianakis*
                                             JOSEPH N. AKROTIRIANAKIS
8                                            AARON S. CRAIG

9                                            Attorneys for Defendants NSO GROUP TECHS.
10                                           LTD. and Q CYBER TECHS. LTD.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28