JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
*jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
*acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:     (213) 443-4355
Facsimile:      (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY OF DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED IN SUPPORT OF MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE**<br><br>**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**<br><br>Date:     February 15, 2024<br>Time:    1:00 p.m.<br>Ctrm:    3 (Videoconference Only)<br>Judge:   Hon. Phyllis J. Hamilton<br><br>Action Filed:   10/29/2019 |

I. INTRODUCTION

In spite of all their bluster, Plaintiffs do not dispute that fact discovery and various expert deadlines should be extended. (Indeed, Plaintiffs acknowledge they have not completed document production even in response to the parties' first rounds of written discovery.) Plaintiffs dispute only the length of the extension required and the concomitant effect on the remaining case schedule. Plaintiffs propose a one-month extension that would permit *them* to complete production of their "core" trial documents and certain other materials in early February and that would largely foreclose Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") from selecting among and deposing some of the 42 potential trial witnesses identified in Plaintiffs' amended initial disclosures on November 30, 2023. Plaintiffs' proposed schedule would also prohibit NSO from completing its own discovery obligations and needlessly expose NSO to the risk of criminal prosecution in Israel for violating ███████████ export-control laws. Plaintiffs' attempts to avoid litigation on the merits of their claims and to secure a judgment through procedural gamesmanship should not be permitted.

For the reasons set forth in NSO's opening brief, the Court should grant NSO's motion and adopt its proposed schedule. First, Plaintiffs concede that an extension of the discovery schedule is required and their opposition makes clear that the extension is required for them to comply with their own discovery obligations. Second, Plaintiffs offer no rebuttal to the evidence NSO has provided to the Court in support of its motion, all of which demonstrates NSO's continuous efforts to comply with its competing obligations under U.S. and Israeli law. As the authorities cited in Plaintiffs' opposition make clear, none of the factors that generally cause courts to deny requests for extensions exist in this matter. Third, Plaintiffs fail to address NSO's arguments regarding the need to seek discovery from abroad, a process in which Plaintiffs must also engage to depose many of the current and former NSO employees from whom they seek testimony. Fourth, Plaintiffs also concede that they will suffer no prejudice from NSO's requested extension, whereas, should the Court deny the motion, NSO will be substantially prejudiced and will effectively be unable to present a defense in this case.

For all these reasons, NSO respectfully requests that its motion be granted.

## II. PLAINTIFFS CONCEDE THAT AN EXTENSION IS WARRANTED

As a threshold matter, Plaintiffs concede that various fact and expert discovery deadlines should be extended. (See Opp. at 1-2.) Plaintiffs themselves require an extension to fulfill their own discovery obligations, despite facing none of the obstacles imposed on NSO. Plaintiffs have yet to complete their document production is response to NSO's first rounds of written discovery. They have only just now produced the "core documents" that they "intend to use at trial"—more than four years after filing this lawsuit and more than a year after the discovery stay was lifted. (Opp. at 1.) They estimate that they will not produce even the categories of documents they agreed to produce until early February, one month before the current fact discovery cutoff. (Opp. at 4.) Until Plaintiffs provide their initial round of documents and NSO analyzes the documents even cursorily, NSO will be unable to determine which of Plaintiffs' potential trial witnesses will need to be deposed.

Plaintiffs say nothing about the length of time it will take them to produce materials they have refused to produce, some of which are the subject of current discovery motions. (*See, e.g.*, Dkt. 240.) Nor do Plaintiffs account for the iterative nature of discovery and the potential need for additional materials after NSO reviews Plaintiffs' first complete production. Plaintiffs also provide no realistic deposition schedule for their witnesses. Plaintiffs' amended initial disclosures list twelve current or former employees as potential witnesses and identify thirty other individuals or entities who they may also call to testify at trial. (Dkt. 240-2, Ex. B at 1-8.) Given that Plaintiffs' document production remains so incomplete, there is no way that all necessary witnesses could be deposed "in early March" as Plaintiffs suggest. (*See* Opp. at 4-5.) Indeed, Plaintiffs' most recent scheduling proposals would require holding multiple depositions on one day, which would necessarily require NSO's lead counsel to choose which of these significant depositions to attend and which to miss. (Supp. Akro. Decl. ¶ 5.)

Plaintiffs' proposed extension of one month would not permit sufficient time for them to complete document production, for NSO to obtain any additional documents required, and for Plaintiffs to offer their witnesses for depositions in an orderly manner. In contrast, NSO's proposed revisions to the case management schedule would permit the parties six additional

months to complete document production, take depositions on a practical schedule, and take expert discovery, while only continuing the trial date until early March 2025. (Mot. at 1.)

## III. GOOD CAUSE EXISTS FOR NSO'S PROPOSED SCHEDULE, INCLUDING A SIX-MONTH EXTENSION OF FACT AND EXPERT DISCOVERY DEADLINES

NSO's discovery obligations are also not yet complete. As set forth in NSO's motion, NSO has diligently attempted to comply with the existing case management schedule. Despite those efforts, and through no fault of NSO's, it anticipates needing an additional six months to complete fact and expert discovery.

### A. NSO Requires Six Months to Comply with Israeli Legal Obligations

NSO requires the extension to comply with its obligations under Israeli law, which it has diligently endeavored to meet. NSO's motion lays out its efforts to produce documents under ▇▇▇ Israel's Defense Export Control Law ("DECL"). (Mot. at 6-8.) Nothing in Plaintiffs' opposition refutes that detailed showing of diligence or provides a basis to essentially force NSO into default by denying its request.

*First*, in ruling on NSO's motion for a protective order, the Court did not overrule any and all arguments arising under Israeli law. Rather, the Court concluded that NSO would be required to produce at least some discovery, despite potential restrictions under Israeli law, if the discovery requests satisfied the Ninth Circuit's test from *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992). (Dkt. 233 at 8:12-14, 9:18-21.) NSO intends to comply with both U.S. and Israeli law—at least to the extent that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—and this Court should allow NSO ▇▇▇▇▇▇ the time needed to do so. NSO should not be forced into an unnecessary choice between potential sanctions in this matter and criminal prosecution in Israel. *See* Restatement (Third) of Foreign Relations Law § 442(2)(a) (1987) (stating that if disclosure of information located outside of the United States is prohibited by foreign law or court order, a United States court may require a good-faith effort to secure permission for production from the relevant foreign authorities). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Gelfand Decl. ¶ 12.) NSO thus requires

six months for ████████████████████████████████████████; to set up the infrastructure required to move its documents to a new e-discovery vendor; to review those documents; ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████; and to ultimately produce documents to Plaintiffs. Plaintiffs' proposed extension of one month is plainly insufficient and would render it impossible for NSO to comply with Israeli law.

*Second*, NSO was not required to conduct discovery activities while this matter was stayed and while NSO litigated its potential immunity (a question sufficiently in dispute to justify the Supreme Court inviting an opinion from the Solicitor General of the United States before ruling on NSO's petition for a writ of certiorari). As this Court previously recognized, the very purpose of the stay was to preserve "the fundamental privilege of immunity from suit," including the burdens of discovery. (Dkt. 155 at 14:13-17.) Plaintiffs' argument that NSO should have been preparing for discovery ████████████████████████████████████████████████████████ ████████████████ is nonsensical, and it is further belied by Plaintiffs' own failure to marshal discovery during the stay. If the parties were required to prepare for the possibility of document production while this matter was stayed, Plaintiffs cannot explain why they only just produced their "core trial documents" more than four years into the litigation. (Opp. at 1.)

*Third*, as previously explained, NSO immediately ████████████████████████ ████████████████████████████████████████████████. (Gelfand Decl. ¶ 5.) It did not and could not have ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (*Id.* ¶ 4.) Moreover, the scope of any potential production was unclear at that time and remains unresolved to date.

*Fourth*, a review of Plaintiffs' authorities makes clear that the NSO's "hardships" are not "of its own making." In *Mosley v. Groupon, Inc.*, No. 15-CV-01205-BLF, 2016 WL 4702680, at *2 (N.D. Cal. Sept. 10, 2016), the parties failed to set a discovery cutoff in contravention of court

order and did not seek an extension of the deadline for filing dispositive motions until "the day the motions were due." The Court also denied the requested extension because it would have been forced to delay the trial by two years. *Id.* Neither of those rationales applies in this matter, where NSO sought an extension two months before the current fact discovery cutoff and the Court can presumably accommodate a trial in 2025.

In *Brooks v. Agate Res., Inc.*, 836 F. App'x 471, 473-74 (9th Cir. 2020), the district court did not abuse its discretion by denying a *sixth* extension of time for discovery, which provides no basis for denying the *first* extension request in this matter. Although the Ninth Circuit noted that "the case had been pending almost two years," *id.*, there is no indication that the litigation was stayed for the majority of that time (as is the case here) or that ███████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████ .

In *Naxos, LLC v. Am. Fam. Ins. Co.*, 2020 WL 106740, at *5 (W.D. Wash. Jan. 9, 2020), the court denied a trial continuance to a party that had previously opposed a motion to continue. The court also denied the continuance because the party had not served any written discovery in the case, had not attempted to depose the damages expert referenced in the motion, and had essentially "ignored discovery for the better part of a year before seeking scheduling relief." *Id.* That is plainly not the case in this matter, as NSO has served "231 document requests and 180 requests for admission"[1] (Opp. at 4.), diligently sought to require adequate response to those requests through countless meet and confer discussions, filed joint letters and a motion to compel when Plaintiffs' intransigence required it, and pursued critical third-party discovery from fact witnesses in the United States and abroad (as further discussed below).

In *United States v. Cathcart*, 2009 WL 1817006, at *1-2 (N.D. Cal. June 24, 2009), this Court declined to continue the deadline for dispositive motions because the movants had already

---

[1] The volume of requests was driven in substantial part by Plaintiffs' claims of over $100 million in damages resulting from purported reputational harm. Plaintiffs subsequently abandoned their arguments that they suffered reputational harm in lieu of producing discovery regarding the numerous scandals in which they have been involved and the many billions of dollars they paid to attempt to extricate themselves from those scandals.

sought modifications to the case management schedule at least once, they were informed that no further continuances would be permitted, they waited until eight days before their filing deadline to request relief, and they demonstrated no appreciable prejudice from the denial. Again, none of these factors applies here.

The unrefuted evidence submitted with NSO's motion demonstrates that, far from "dragging its feet," NSO has been actively trying to navigate the unique challenges posed by U.S. and Israeli law in this matter. And there is no dispute, as the Court knows, that the parties have been actively litigating this matter. NSO's requested continuance should thus be granted. The one-month extension proposed by Plaintiffs is plainly insufficient to permit NSO time to comply with its obligations under Israeli law.

**B.     NSO Requires Six Additional Months to Complete E-Discovery Activities**

NSO requires a six-month extension to complete e-discovery activities. As explained in NSO's motion, it has been collecting and preserving documents since 2020 with the assistance of its e-discovery vendor. (Mot. at 8-11.) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Solomon Decl. ¶ 13.) As a result, NSO has been required to locate a new e-discovery vendor capable of providing the same collection, filtering, processing, hosting, searching, and production services.[2] Plaintiffs do not dispute any of NSO's evidence on this point.

NSO cannot, as Plaintiffs suggest, simply review its own documents without the use of e-discovery software. Even Plaintiffs' "narrowed" requests seek "documents and communications" on a broad variety of topics—such as "documents and communications concerning the identification of WhatsApp application vulnerabilities" incorporated into multiple versions of Pegasus. (Dkt. 236 at 5.) These are not requests, as Plaintiffs imply, that can be satisfied by manually searching for a modest number of documents. Without access to e-discovery software,

---

[2] Since filing this motion, NSO has continued its efforts to engage a new e-discovery vendor while also complying with its obligations under U.S. and Israeli law. (*See* Supp. Akro. Decl. ¶ 3.) NSO expects to engage the new vendor within the next week and that any necessary e-discovery infrastructure will be established within a month. (*See id.*)

NSO has no meaningful ability to search its employees' documents, track and collect responsive documents, remove and log privileged documents, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and produce materials in an appropriate format.

The same is true for the requests that seek "documents sufficient to show." NSO could not satisfy a request for "documents and communications sufficient to show NSO's development, testing, troubleshooting, and maintenance" of multiple versions of Pegasus over an extended period of time (*see id.*) by identifying a few key materials and manually producing them.

Indeed, Plaintiffs purportedly narrowed requests seek items such as "complete images" of certain computers or servers. (*Id.* at 14.) NSO plainly cannot produce "complete images" of hard drives without access to modern e-discovery software that would enable counsel to review them, identify privileged materials, and designate them with the appropriate level of confidentiality.

Plaintiffs do not dispute that NSO has diligently attempted to collect and review documents with the assistance of an e-discovery vendor.[3] Accordingly, good cause exists to grant NSO's motion and permit it time to put in place an appropriate e-discovery solution.

### C. Both Parties Require Six Additional Months to Obtain Evidence Abroad

In addition to the reasons set forth above, the six-month extension requested by NSO is necessary to permit both parties to obtain evidence from abroad.

As discussed in NSO's motion and other briefing now before this Court, Plaintiffs belatedly disclosed Citizen Lab as a potential trial witness on November 30, 2023. (Dkt. 240-2, Ex. B at 4, 11.) NSO has thus sought to subpoena records from John Scott-Railton, a key Citizen Lab employee who supposedly resides in the United States, without success.[4] (Mot. at 12, 15.)

---

[3] Being forced into a potential default judgment was not one of the "penalties" imposed on NSO by the U.S. Department of Commerce. Nor could it be, given that NSO's placement on the Entity List was not the result of an open, adversarial judicial process. The current U.S. Administration's policy objectives in the Entity List designation cannot deprive NSO of its due process right to defend itself in this litigation.

[4] NSO's extensive efforts to locate Mr. Scott-Railton are described in its motion and in the supporting declaration from investigator Daniel Whelan. NSO has not been able to locate Mr. Scott-Railton since the filing of its motion. (Supp. Akro. Decl. ¶ 6). He appears to be evading service to avoid participating in this litigation, despite his central role in Plaintiffs' investigation

Because Mr. Scott-Railton continues to evade service, NSO is required to seek his documents and testimony through Citizen Lab. Because Citizen Lab is a Canadian entity, and because Citizen Lab has refused to produce documents voluntarily (Supp. Akro Decl. ¶ 6), NSO will be required to use the lengthy and cumbersome "letters rogatory" process. In their opposition, Plaintiffs do not dispute the significance of Mr. Scott-Railton's documents and testimony, nor do they dispute the difficulties associated with the letters rogatory process. Indeed, the Court itself has already concluded that international discovery mechanisms are often "cumbersome." (Dkt. 33 at 10:7-9.) By failing to address these arguments, Plaintiffs concede them.

Furthermore, Plaintiffs appear to need to invoke the Hague Convention for their own discovery. On the same day that Plaintiffs filed their opposition to this motion, Plaintiffs provided NSO the names of seven purported NSO employees they intend to depose.[5] (Supp. Akro. Decl. ¶ 4.) The testimony of any individuals who are not current officers, directors, or managing agents requires resort to the Hague Convention procedures for obtaining discovery, *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 517 (D. Idaho 2013), as it is unlikely any Israeli witness would appear voluntarily for a deposition considering the threat of criminal prosecution under ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ DECL. WhatsApp has not presented any evidence that it has begun to undertake the Hague Convention process, and that process is reasonably expected to take several months.[6]

### D. Plaintiffs Concede They Will Not Be Prejudiced by a Six-Month Discovery Extension

For the reasons set forth in NSO's motion, Plaintiffs would not suffer any appreciable

---

and his continued public commentary regarding NSO and the pending litigation. Indeed, King & Spalding was recently contacted by Canadian counsel purporting to represent Citizen Lab, Mr. Scott-Railton, and others in connection with this matter. (*See id.*) King & Spalding requested that the Canadian counsel provide Mr. Scott-Railton's current contact information, or accept service of a subpoena on his behalf, but that request was explicitly refused. (*See id.*)

[5] In point of fact, several of these individuals are either *former* NSO employees or persons of whom NSO has no record. (*See* Supp. Akro. Decl. ¶ 4.)

[6] Assuming that Plaintiffs have not obtained U.S. export licenses, it is unclear what Plaintiffs would be permitted to ask an Israeli NSO deponent. And if Plaintiffs have also not obtained a DECA license, it is unclear at best what information any NSO deponents would be able to disclose.

prejudice if discovery were continued for six months and the current trial date were extended by four months. (Mot. at 15.) In contrast, NSO would be substantially prejudiced if its motion is denied, as it would essentially be unable to complete its discovery obligations through no fault of its own. (*See id.*) Plaintiffs do not address these arguments in their opposition, do not identify any prejudice that would result under NSO's proposed case management schedule, and apparently concede that NSO would be grossly prejudiced if the requested extension were not granted.

### IV. CONCLUSION

For all these reasons, NSO respectfully requests that the Court grant its motion and adopt its proposed case management schedule.

Dated:  February 2, 2024                      KING & SPALDING LLP

By:      */s/Joseph N. Akrotirianakis*
         JOSEPH N. AKROTIRIANAKIS
         AARON S. CRAIG

         Attorneys for Defendants NSO GROUP
         TECHNOLOGIES LIMITED and Q
         CYBER TECHNOLOGIES LIMITED