JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
  *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTER ROGATORY TO THE ONTARIO (CANADA) SUPERIOR COURT OF JUSTICE FOR THE CITIZEN LAB AT THE UNIVERSITY OF TORONTO'S MUNK SCHOOL OF GLOBAL AFFAIRS**<br><br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton<br><br>Action Filed:  10/29/2019 |

TO THE COURT AND PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 28, 2024, at 1:30 p.m., or as soon hereafter as the matter may be heard, Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") will bring on for hearing before the Honorable Phyllis J. Hamilton, in Courtroom 3 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, a motion under Federal Rule of Civil Procedure 37(a)(3)(B)(iv) seeking an order to issue the accompanying Letter Rogatory to the Ontario (Canada) Superior Court of Justice seeking information from The Citizen Lab at the Munk School of Global Affairs & Public Policy of the University of Toronto, a key fact witness in this litigation.

The motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities appended hereto, the accompanying Declaration of Aaron S. Craig and its exhibits ("Craig Decl."), the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

DATED:   February 14, 2024

KING & SPALDING LLP

By:  /s/ *Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
Attorneys for Defendants NSO GROUP
TECHNOLOGIES LIMITED and Q
CYBER TECHNOLOGIES LIMITED

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") request that the Court issue the accompanying Letter Rogatory to the Ontario (Canada) Superior Court of Justice seeking information from The Citizen Lab at the Munk School of Global Affairs & Public Policy of the University of Toronto ("Citizen Lab"), which requests documents and deposition relevant to the claims and defenses in this litigation. The Letter Rogatory is attached as Exhibit A.

The issuance of this Letter Rogatory is necessary because the requested information is highly relevant to the merits of this matter, including Plaintiffs' claims that NSO's Pegasus technology was installed on mobile phones or electronic devices belonging to WhatsApp users and that some of NSO's sovereign government customers have misused Pegasus to target members of "civil society" in addition to using Pegasus for the essential and life-saving antiterrorism, national security, and law enforcement purposes for which it was designed by NSO. As discussed herein, NSO cannot obtain the requested information by any other means. Citizen Lab is based at the Munk School of Global Affairs & Public Policy of the University of Toronto, in Ontario, Canada. NSO has communicated with Citizen Lab and its legal counsel in attempts to obtain the documents, information, and testimony requested herein without resorting to the letter rogatory process, but those efforts were unsuccessful, thus necessitating this motion.

Citizen Lab is a key fact witness in this case that Plaintiffs engaged to investigate whether (i) certain WhatsApp service users were targeted by use of Pegasus and (ii) whether some targeted individuals were or are members of "civil society"—*i.e.* "attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials," as alleged in the Complaint [Dkt. 1, ¶ 42]—rather than terrorists or criminals. Documents produced by Plaintiffs confirm that Citizen Lab developed alleged facts underlying Plaintiffs' allegations that (a) Pegasus was installed on the mobile phones and devices ("Targeted Devices") of approximately 1,400 WhatsApp users ("Target Users") suspected by their governments of terrorism or serious crime; and (b) that some number of the Target Users are attorneys, journalists, human rights

activists, political dissidents, diplomats, and other senior foreign government officials. On November 30, 2023, Plaintiffs identified Citizen Lab in their Amended Initial Disclosures as a fact witness having discoverable information that "Plaintiffs may use to support their claims," including with respect to the alleged "identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service." It is now clear that Plaintiffs, Defendants, or both will call Citizen Lab to testify about its investigation at trial. Plaintiffs should not be able to put details of their investigation beyond the reach of discovery by outsourcing that investigation to a foreign entity.

Further, both before and after the filing of Plaintiffs' Complaint, Citizen Lab has pursued a public and highly critical media and investigative campaign against NSO and Pegasus raising serious questions about Citizen Lab's objectivity and the reliability of the investigation it performed for Plaintiffs upon which key allegations in Plaintiffs' Complaint are based. Citizen Lab has authored numerous publications, stretching back at least to 2016 and continuing through the present, attacking NSO and Pegasus and purporting to describe investigations concerning Pegasus's use (and alleged abuse) by certain of NSO's sovereign government clients. Citizen Lab has also appeared on the television program 60 Minutes to criticize NSO and Pegasus, provided lengthy quotes for articles published by The New York Times, The New Yorker, and Reuters discussing Citizen Lab's work attacking Pegasus, and has produced or participated in countless podcasts and radio shows critical of Defendants. One of Citizen Lab's chief NSO critics, John Scott-Railton, even participated in the production of a motion picture docudrama, "The Dissident," that was highly critical of Defendants, portraying himself in the movie. It is no exaggeration to say that Citizen Lab and several of its members have gained worldwide notoriety by attacking NSO and that their professional reputations hinge on proving that NSO has engaged in wrongdoing.

Defendant seeks documents and testimonial evidence from Citizen Lab concerning: (1) the investigation Plaintiffs engaged Citizen Lab to perform; (2) related investigations Citizen Lab has undertaken concerning NSO, Pegasus, individuals allegedly targeted using Pegasus, and/or

exploitation of security vulnerabilities in the WhatsApp service; and (3) any payments, contributions, or donations, whether monetary or in-kind donations of investigative tools or equipment, that Citizen Lab received, directly or indirectly, from Plaintiffs or their affiliates or agents. Such documents and testimony are highly relevant to explore Citizen Lab's findings which allegedly support Plaintiffs' allegations that Pegasus has been abused to target "civil society," the reliability of Citizen Lab's methods and the credibility of its allegations about NSO and Pegasus, and Citizen Lab's bias against NSO. Accordingly, NSO requests that the Court grant this motion and issue the Letter Rogatory.

## RELEVANT BACKGROUND

NSO is an Israeli technology company that designed and markets a highly-regulated technology known as "Pegasus" to government agencies for uses such as counterterrorism and investigating child exploitation and other serious crimes. NSO's customers are exclusively government agencies, and NSO licenses its Pegasus technology only to sovereign government agencies and not to any private entity. The export of NSO's Pegasus technology is regulated under Israel's Defense Export Control Law ("DECL") with oversight of the Israeli Ministry of Defense ("MoD"). Before being granted a license to use NSO's Pegasus technology, customers must demonstrate their identities and provide any other necessary documentation for the MoD's approval of the license. MoD also requires NSO to have Pegasus' end users sign certificates declaring that they will use Pegasus "only for prevention and investigation of terrorism and criminal activity."

Plaintiffs WhatsApp LLC, f/k/a WhatsApp Inc. ("WhatsApp"), and Meta Platforms, Inc., f/k/a Facebook, Inc., (together "Plaintiffs") filed this action alleging claims against NSO under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502, as well as a claim for breach of contract, based on purported breaches of WhatsApp's Terms of Service. Specifically, Plaintiffs allege that, between April 2019 and May 2019 NSO's Pegasus technology exploited a vulnerability in the WhatsApp messaging and communication service and used WhatsApp computer servers to cause

the remote installation of Pegasus on the Targeted Devices of approximately 1,400 WhatsApp Target Users. From the very outset of this case through the present, Plaintiffs have claimed over and over that Pegasus is used against attorneys, journalists, and other members of what it and Citizen Lab refer to as "civil society." *See, e*.g., Dkt. No. 1 ¶ 42; Dkt. No. 55 at 2:19-21; Dkt. No. 106 at 2:14-16; Dkt. No. 181-2 at 11:4; Dkt. No. 189 at 3:12-14; Dkt. No. 250 at 3:8-12.

NSO denies that Plaintiffs' claims are meritorious and has asserted various affirmative and other defenses to the claims.

## RELEVANT DISCOVERY BACKGROUND

Plaintiffs' Amended Initial Disclosures, served on November 30, 2023, identify Citizen Lab as a witness having information "relevant to the identification of [NSO] as responsible for unauthorized access and abuse of the WhatsApp service" that Plaintiffs may seek to use to support their claims in the litigation. Dkt. 239-3 Exh. B.

On January 2, 2024, Plaintiffs produced certain of Plaintiffs' communications with Citizen Lab exchanged between May 28, 2019 and October 28, 2019, in response to document requests NSO had previously served on Plaintiffs.[1] Among other documents, Plaintiffs produced three agreements, pursuant to which Citizen Lab agreed to investigate instances in which Citizen Lab suspects Pegasus may have been installed on certain Targeted Devices and to provide recommendations about engaging with certain Target Users. *See* Dkt. 257-3 Exhs. A, B & O; *see also id.* Exh. F (referencing Citizen Lab's "independent opinion that NSO is behind the attacks" while admitting "we [WhatsApp] do not know for certain"). Documents produced by Plaintiffs indicate that Citizen Lab recommended that such user engagement should focus on alleged Target Users deemed to be members of "civil society," a term Citizen Lab defines to include "individuals

---

[1] NSO's Document Request No. 118 sought "All Communications between any of Plaintiffs and The Citizen Lab at the University of Toronto, including any employee, contractor, or representative thereof, and further including, for the avoidance of doubt, Ronald Deibert, that refer or relate to any of the Defendants." *See* Dkt. 239-3 Exh. A. NSO also served a number of other Document Requests in response to which Plaintiffs agreed to produce communications with Citizen Lab pre-dating Plaintiffs' filing of their Complaint on October 29, 2019. *Id.*

working in advocacy, such as minority rights advocates and human rights defenders, media, members of opposition parties, and lawyers working on cases with a political dimension." *Id.* Exh. C. Citizen Lab assisted WhatsApp to obtain data on potentially impacted users who Citizen deemed "civil society," to solicit their participation in Citizen Lab research efforts, and to generate publicity concerning threats allegedly faced by members of civil society—all consistent with Citizen Lab's self-described "research mandate." *Id.*

Although only a small proportion of "civil society" targets were identified from among the approximately 1,400 users allegedly targeted with Pegasus,[2] Citizen Lab lobbied aggressively to characterize the alleged impact on "civil society" more expansively in order to "help our case that there really is a problem in how frequently NSO is used against civil society." *Id*. Exh. F. Plaintiffs eventually adopted Citizen Lab's asserted findings that certain Target Users were members of "civil society" and also adopted Citizen Lab's alarmist rhetoric concerning NSO and Pegasus, including by emphasizing in the Complaint filed in this case that alleged Target Users include "attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials" while misleadingly omitting the fact that the vast majority of the Target Users were not members of "civil society"—even under Citizen Lab's expansive definition. Dkt. No. 1 ¶ 42.

Plaintiffs' document production illuminates that Citizen Lab has information relevant to Plaintiffs' allegations both (i) that Pegasus was in fact installed on the Targeted Devices and (ii) that Plaintiffs and Citizen Lab have categorized a relatively small proportion of the Target Users as members of "civil society," subject matters on which Plaintiffs intend to introduce testimony from Citizen Lab at trial (*see* Dkt. 239-3, Exh. B at 1 & 4). Plaintiffs' document production also confirms that troves of highly relevant Citizen Lab documents relating to Citizen Lab's work underlying these key allegations have not been produced. At minimum, these include Citizen Lab's internal analyses that it chose to not share with Plaintiffs. Other materials Plaintiffs have

---

[2] A September 6, 2019 email from WhatsApp to Citizen Lab references "107 users" (of the ~1,400 Target Users) to be engaged by Citizen Lab. *See id*. Exh. H.

refused to produce include communications and documents Plaintiffs exchanged with Citizen Lab *after* filing the Complaint on October 29, 2019, as well as numerous relevant *pre*-Complaint communications and documents that are referenced in documents Plaintiffs produced, but that are absent from Plaintiffs' production.  *See, e.g.*, Dkt. 257-2 at 4–5 (and Exhibits to Dkt. 257-3 cited therein).  NSO has filed a motion to compel Plaintiffs to produce these and other documents responsive to NSO's document requests and highly relevant to the parties' claims and defenses, which motion is currently pending before the Court.  Dkt. 240.

But given Citizen Lab's pivotal role in investigating alleged installation of Pegasus on Targeted Devices and attempting to ascertain identities of Target Users (and whether any of them are members of "civil society" rather than terrorists or criminals), Citizen Lab possesses substantial documents and communications related to their work that Citizen Lab never provided to Plaintiffs, and accordingly, which NSO cannot obtain from Plaintiffs.

Citizen Lab has numerous additional and highly relevant documents concerning alleged investigations of NSO, Pegasus, and its alleged use against "civil society" amassed in generating the substantial corpus of publications Citizen Lab has authored on such topics and related public statements Citizen Lab has made in news articles, television, radio, and podcast appearances, and elsewhere.  *See* Dkt. 239-3, ¶ 7; *id*. Exhs. O–X; *see also* additional examples available at https://citizenlab.ca/category/lab-news/mentions/.  These documents are relevant to exploring the accuracy and reliability of Citizen Lab's methods and the soundness of their allegations about NSO and Pegasus—allegations that Plaintiffs have borrowed and featured in their Complaint and continue to press as a key theme in their case.

It is critical that NSO obtain adequate discovery into these matters.  NSO has attempted to obtain the relevant documents and deposition testimony it seeks without resort to the letter rogatory process.  On January 31, 2024, NSO's counsel wrote to Citizen Lab's Director and Senior Legal Advisor, identifying the categories of documents NSO seeks and the topics on which it seeks to obtain deposition testimony from Citizen Lab, explaining NSO's bases for seeking this discovery, and asking if Citizen Lab would agree to provide the requested discovery without NSO's resort to

the letter rogatory process.  *See* Declaration of Aaron Craig ("Craig Decl.") ¶ 3 & Exh. 1.  On February 1, 2024, counsel representing Citizen Lab emailed NSO's counsel and confirmed Citizen Lab's refusal to provide the requested documents and witness testimony outside of letter rogatory proceedings.  *Id.* ¶¶ 5-7 & Exh. 3.

## ARGUMENT

### I. LETTERS ROGATORY ARE THE PROPER METHOD FOR A U.S. COURT TO SEEK DISCOVERY IN A FOREIGN JURISDICTION.

A letter rogatory is a formal written request sent by a court to a foreign court asking that a witness residing within that foreign court's jurisdiction either provide documents, a deposition, or both for use in a pending action before the requesting court. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004) ("A letter rogatory is the request by a domestic court to a foreign court to take evidence from a certain witness."); *Barnes & Noble, Inc. v. LSI Corp.*, 2012 WL 1808849, at *1-*2 (N.D. Cal. 2012) (granting motion for issuance of letters rogatory seeking discovery from an entity in Taiwan); 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 2083 (3d ed. 2007).  The decision to issue such a letter is within the Court's discretion. *U.S. v. Wedding*, No. 08-2386, 2009 WL 1329146, at *1 (S.D. Cal. May 13, 2009).  The proper inquiry for issuance is whether the discovery sought complies with the liberal standard of Federal Rule of Civil Procedure 26. *DBMS Consultants Ltd. v. Comp. Assocs. Int'l, Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990); *see also Barnes & Noble*, 2012 WL 1808849, at *2 ("A court's decision whether to issue a letter rogatory [seeking deposition testimony] . . . require[s] an application of Rule 28(b) in light of the scope of discovery provided for by the Federal Rules of Civil Procedure.").

Here, Defendant's use of a letter rogatory is the appropriate and sanctioned method of obtaining discovery from Canadian residents and entities.  *See* Federal Rule of Civil Procedure 4(f)(2)(B); Federal Rule of Civil Procedure 28(b)(1)(B); the All Writs Act, 28 U.S.C. §§1651, 1781 (permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed

and its return in the same manner."). Where a document custodian is located in a nation, like Canada, that is not a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, letters rogatory are particularly appropriate. *See, e.g., Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, 2007 WL 1815472, at *1 (N.D. Cal. 2007) ("[T]he Taiwanese lawyers were residents of a foreign nation that is not a signatory to the Hague Convention. Therefore, the appropriate method for requiring their appearance is the letter rogatory."); *Netherby Ltd. v. Jones Apparel Grp. Inc.*, 2005 WL 1214345, at *1 (S.D.N.Y. 2005) (acknowledging that under Rule 28(b) of the Federal Rules of Civil Procedure, U.S. courts may issue letters rogatory for the purpose of taking discovery from Canada-based entities and granting motion for letters rogatory); *see also U.S. v. Walus*, 616 F.2d 283, 304 (7th Cir. 1980) (district court should have granted request by defendant for use of letter rogatory to obtain evidence located abroad that was relevant to defendant's case).

## II. LETTERS ROGATORY ARE APPROPRIATE UNDER CANADIAN LAW.

The Canada Evidence Act and the Ontario Evidence Act specifically provides that a court outside of Canada may serve letters rogatory upon the Ontario court. R.S.C.1985, c. C-5 §§ 46, 51; R.S.O. 1990, c. E-23 § 60. Judicial assistance between the United States and Canada is also governed by Article 5 of the Vienna Convention on Consular Relations, dated April 24, 1963 ("Vienna Convention"), which provides that a letter rogatory is an appropriate method for requesting evidence located in a foreign state. Vienna Convention, art. 5(j); properly issued letter rogatory is received by the Appropriate Judicial Authority of Canada 21 U.S.T. 77; 596 U.N.T.S. 261; and T.I.A.S. 6820. Pursuant to these authorities, once a letter rogatory is sent to the Appropriate Judicial Authority of Canada, the Judicial Authority of Canada has the power to transmit the letter to the relevant Canadian residents and entities. *Id*.; R.S.C.1985, c. C-5 §§ 46, 51.

## III. NSO SEEKS RELEVANT DISCOVERY THROUGH THE PROPOSED LETTER ROGATORY.

As this motion and the proposed Letter Rogatory attached hereto as Exhibit A demonstrate,

the discovery requested from Citizen Lab is relevant to the claims and defenses in this litigation, in particular Plaintiffs' claim that NSO's Pegasus technology is abused by certain of NSO's sovereign government clients to target "attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials," instead of (or in addition to) terrorists and criminals who threaten all society.  Plaintiffs identified Citizen Lab in their Amended Initial Disclosures as a fact witness having discoverable information that "Plaintiffs may use to support their claims," including with respect to the alleged "identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service."  And as discussed above, documents Plaintiffs have produced confirm that Citizen Lab is the source of Plaintiffs' allegations of alleged abuse of Pegasus to target "civil society" that Plaintiffs have made a core theme in this case.  Accordingly, Citizen Lab is likely to provide relevant and admissible evidence of the type sought by the requested letter rogatory.

The documents and testimony sought by the requested letter rogatory are directly relevant to explore Citizen Lab's findings which allegedly support Plaintiffs' allegations that Pegasus has been abused to target "civil society," the reliability of Citizen Lab's methods and the credibility of its allegations about NSO and Pegasus, and Citizen Lab's bias against NSO.  *See, e.g., Caravels LLC v. City of Gainesville*, 2020 WL 10758492, at *4 (N.D. Fla. July 13, 2020) (documents that "that might affect [a witness's] credibility either positively or negatively" are plainly relevant and discoverable).  Moreover, as Citizen Lab is based at the University of Toronto, in Ontario, Canada, and will not agree voluntarily to provide the requested documents and testimony, NSO can only obtain the discovery sought herein by petitioning this Court for the issuance of the letter rogatory.

IV.     **CONCLUSION**

For the foregoing reasons, NSO respectfully requests the Court approve, date, sign, and seal the proposed Letter Rogatory accompanying NSO's Motion.  The documents and topics for deposition requested by NSO are set forth on Schedules A and B to the proposed Letter Rogatory, which is attached as Exhibit A.

NSO requests that the Court issue the Letter Rogatory pursuant to Rule 28(b) of the Federal

Rules of Civil Procedure (in the form attached hereto as Exhibit A) to the Ontario Superior Court of Justice, requesting that Citizen Lab be summoned to provide the requested documents and testimony, which is more fully set forth in the attached Letter Rogatory.

NSO further requests that, after the Court has signed the Letter Rogatory, the Clerk of Court authenticate the Court's signature under the seal of this Court, and that the executed and authenticated Letter Rogatory be returned by the Clerk to counsel for NSO for delivery to the proper authority in Canada.

WHEREFORE, NSO respectfully requests that the Court grant the Motion for the Issuance of a Letter Rogatory, and execute and issue the attached Letter Rogatory.

DATED:  February 14, 2024

KING & SPALDING LLP

By:  /s/ *Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

## PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in the County of Los Angeles, State of California, in the office of a member of the bar of this Court, at whose direction this service was made. I am over the age of eighteen years and not a party to the within action.

On February 14, 2024, I served the following documents in the manner described below:

**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTER ROGATORY TO THE ONTARIO (CANADA) SUPERIOR COURT OF JUSTICE FOR THE CITIZEN LAB AT THE UNIVERSITY OF TORONTO'S MUNK SCHOOL OF GLOBAL AFFAIRS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

☑   BY ELECTRONIC MAIL: I caused the document(s) to be sent to the person(s) at their e-mail address(es). I did not receive, within a reasonable amount of time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

On the following part(ies) in this action:

**PLEASE SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on February 14, 2024, at Los Angeles, California.

By: _____
MINA TUNSON

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTER ROGATORY     11     Case No. 4:19-cv-07123-PJH

**SERVICE LIST**

Ren Buchholz
PALIARE ROLAND BARRISTERS
155 Wellington St West, 35th Floor
Toronto ON M5V 3H1
Telephone: (416) 646-6303
Email: Ren.Bucholz@paliareroland.com

Chloe Hendrie
PALIARE ROLAND BARRISTERS
155 Wellington St West, 35th Floor
Toronto ON M5V 3H1
Telephone: (416) 646-6310
Email: chloe.hendrie@paliareroland.com