UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation, | Case No. 4:19-cv-07123-PJH |
| Plaintiffs, | **LETTER ROGATORY TO THE ONTARIO SUPERIOR COURT OF JUSTICE** |
| v. | |
| NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, | Action Filed:   10/29/2019 |
| Defendants. | |

**TO THE APPROPRIATE JUDICIAL AUTHORITY OF THE PROVINCE OF ONTARIO:**

The United States District Court for the Northern District of California presents its compliments to the Ontario Superior Court of Justice and respectfully requests international judicial assistance to obtain evidence to be used in the above-captioned civil action proceeding before this Court. This Court has determined that it would further the interests of justice if, by the proper and usual process of your Court, you summon John Scott-Railton, or another designate chosen by the Defendants as a representative of The Citizen Lab at the Munk School of Global Affairs & Public Policy of the University of Toronto ("Citizen Lab"), to appear before a person empowered under Canadian law to administer oaths and take testimony forthwith, to give testimony under oath or affirmation by questions and answers upon oral examination in respect of the matters and issues identified in Schedule B, and permit the parties to create a written transcript and video recording of such testimony. This Court has also determined that it would further the interests of justice if, by the proper and usual process of your Court, you summon Citizen Lab to produce copies of the documents in their possession, custody, or control that are identified in Schedule A.

The applicants for this letter are Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO"). Counsel is available to answer any questions the Canadian Court may have.

This request is made pursuant to Rule 4(f)(2)(B) of the Federal Rules of Civil Procedure; the All Writs Act, 28 U.S.C. §1651 and 28 U.S.C. §1781 (permitting the transmittal of letters rogatory through the district courts and the Department of State); the Ontario Evidence Act, R.S.O. 1990, c. E. 23; and the Canada Evidence Act, R.S.C., 1985, c. C-5. The United States District Court for the Northern District of California is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the attendance of witnesses and production of documents both within and outside its jurisdiction. Citizen Lab is based at the University of Toronto, within the Province of Ontario in Canada. On information and belief, Citizen Lab has or is likely have possession of the documents specified in Schedule A and

knowledge of the subject matter specified in Schedule B herein.

The testimony and production of documents are intended for use at trial or directly in the preparation of trial in this, and no other, legal proceeding.  In the view of this Court, the testimony and documents requested will be relevant to claims and defenses in the case.  The requesting Court is satisfied that the evidence sought to be obtained through this request is relevant and necessary and cannot reasonably be obtained by other methods.  Because this Court lacks authority to compel participation of these persons and, such participation being necessary in order that justice be served in the above-captioned proceedings, this Court respectfully requests assistance from the Ontario Superior Court of Justice.

1. **SENDER**

Honorable Phyllis J. Hamilton

Senior United States District Judge

United States District Court for the Northern District of California

Ronald V. Dellums Federal Building & United States Courthouse

1301 Clay Street

Oakland, CA 94612


2. **PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED**

Aaron S. Craig

KING & SPALDING LLP

633 West Fifth Street, Suite 1600

Los Angeles, CA 90071

Tel:  213-443-4311

Email:  acraig@kslaw.com

3. **SPECIFICATION OF DATE BY WHICH REQUESTING AUTHORITY REQUIRES RECEIPT OF THE RESPONSE TO THE LETTER ROGATORY**

A response is requested as soon as possible, in order to ensure that the evidence may be obtained before the deadline for discovery in this case, currently set for March 11, 2024.

4. **NAMES AND ADDRESS OF THE PARTIES AND THEIR REPRESENTATIONS OF THE CASE (ARTICLE 3(B))**

The evidence requested relates to the action *WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.*, 4:19-CV-07123-PJH (N. D. Cal.), United States District Court for the Northern District of California.

**The parties and their representatives are listed herein as follows:**

a. **Plaintiffs**

WhatsApp LLC, f/k/a WhatsApp Inc., and Meta Platforms, Inc., f/k/a Facebook, Inc.
*Contacted through counsel identified below:*


Greg D. Andres

Antonio J. Perez-Marques

Craig T. Cagney

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue

New York, New York 10017

Telephone: (212) 450-3162

Email: craig.cagney@davispolk.com


Micah G. Block

DAVIS POLK & WARDWELL LLP

1600 El Camino Real

Menlo Park, California 94025

Telephone: (650) 752-2000

Email: micah.block@davispolk.com

**b. Defendants**

NSO Group Technologies Limited and Q Cyber Technologies Limited

*Contacted through counsel identified below:*

Joseph N. Akrotirianakis

Aaron S. Criag

KING & SPALDING LLP

633 West Fifth Street, Suite 1700

Los Angeles, CA 90071

Tel:  213-443-4311

Email:  acraig@kslaw.com


5. **NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS**

A. **NATURE AND PURPOSE OF THE CLAIMS**

NSO is an Israeli technology company that designed and markets a highly-regulated technology known as "Pegasus" to government agencies for uses such as counterterrorism and investigating child exploitation and other serious crimes.  NSO's customers are exclusively government agencies, and NSO licenses its Pegasus technology only to sovereign government agencies and not to any private entity.  The export of Pegasus is regulated under Israel's Defense Export Control Law ("DECL") with oversight of the Israeli Ministry of Defense ("MoD").  Before being granted a license to use Pegasus, customers must demonstrate their identities and provide any other necessary documentation for the MoD's approval of the license.  MoD also requires NSO to have Pegasus' end users sign certificates declaring that they will use Pegasus "only for prevention and investigation of terrorism and criminal activity."

Plaintiffs WhatsApp LLC, f/k/a WhatsApp Inc. ("WhatsApp"), and Meta Platforms, Inc., f/k/a Facebook, Inc., (together "Plaintiffs") filed this action alleging claims against NSO under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the California Comprehensive Computer

Data Access and Fraud Act, California Penal Code § 502, as well as a claim for breach of contract, based on purported breaches of WhatsApp's Terms of Service.  Specifically, Plaintiffs allege that, between April 2019 and May 2019 NSO's Pegasus technology exploited a vulnerability in the WhatsApp messaging and communication service and used WhatsApp computer servers to cause the remote installation of Pegasus on the mobile phones and devices ("Targeted Devices") of approximately 1,400 WhatsApp users ("Target Users").  NSO denies that Plaintiffs' claims are meritorious and has asserted various affirmative and other defenses to the claims.

## B.  CITIZEN LAB

Plaintiffs have identified Citizen Lab as an entity having information that Plaintiffs may seek to use to support their claims in the litigation, including information "relevant to the identification of [NSO] as responsible for unauthorized access and abuse of the WhatsApp service," as alleged in Plaintiffs' Complaint.  Documents produced in the litigation indicate that: (i) after discovering the vulnerability in the WhatsApp service allegedly exploited by Pegasus, Plaintiffs engaged Citizen Lab to undertake investigation and provide recommendations concerning potentially compromised WhatsApp user accounts and (ii) Citizen Lab developed the facts underlying Plaintiffs' allegations that (a) Pegasus was installed on the ~1,400 Targeted Devices belonging to Target Users suspected by their governments of terrorism or serious crime; and (b) that some number of the Target Users are "attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials."  Compl., Dkt. 1 ¶ 42.  While Plaintiffs have produced certain documents and communications relating to Citizen Lab's work, many of those documents confirm that Citizen Lab has in its exclusive possession additional related and highly relevant documents that have not been produced.

In addition to having been (i) engaged by Plaintiffs to investigate and advise on core facts underlying Plaintiffs' claims in the lawsuit and (ii) identified as a witness upon whom Plaintiffs will rely to support their claims, Citizen Lab has made numerous allegations about NSO and Pegasus based on other investigations by Citizen Lab in publications, statements in articles published by news media, and appearances on television and radio programs and podcasts, beginning as early as 2016 and continuing through the present.  Example are posted or linked to

1    Citizen Lab's website here:  https://citizenlab.ca/category/lab-news/mentions/.

2    ## C.  EVIDENCE TO BE OBTAINED AND PURPOSE

3            The evidence to be obtained consists of documents and oral testimony from Citizen Lab

4    for use at trial or in preparing for trial in this matter.  I conclude that Citizen Lab has documents

5    and information that are directly relevant to the parties' claims and defenses, including with regard

6    to Citizen Lab's work underlying Plaintiffs' allegations that Pegasus was installed on the Targeted

7    Devices and that some number of the Targeted users are attorneys, journalists, human rights

8    activists, political dissidents, diplomats, and other senior foreign government officials—

9    sometimes described by Citizen Lab as members of "civil society."   Among other things, I

10   conclude that Citizen Lab has information, not discoverable from Plaintiffs or any other source,

11   pertaining to (i) methods Citizen Lab employed in analyzing and investigating alleged installation

12   of Pegasus on devices, both pursuant to Citizen Lab's engagement by Plaintiffs and in the course

13   of work supporting Citizen Lab's research, publications, and public commentary about NSO and

14   Pegasus; (ii) findings and conclusions Citizen Lab has made in the course of such work.  I conclude

15   that such documents and information are relevant to the substance of Plaintiffs' claims and

16   allegations in the lawsuit, as well as NSO's defenses thereto, and to Citizen Lab's credibility as a

17   likely trial witness in the case.

18           Accordingly, the Court concludes that it is in the interests of justice for Citizen Lab to

19   produce the documents specified in Schedule A hereto and to provide one or more knowledgeable

20   witnesses to provide deposition testimony on the topics identified in Schedule B hereto.

21           I am mindful that some of the documents in Schedule A, and the testimony sought in

22   Schedule B, may call for confidential, or trade secret information.  This Court has issued a

23   Protective Order [Dkt. 132] that governs this case, and extends to the document productions or

24   testimony of third parties including Citizen Lab.  A copy of the governing protective order is

25   attached (Ex. 1).

26           Citizen Lab resides in Ontario, Canada and, upon information and belief, is not domiciled

27   in the United States.  Thus, this Court cannot directly compel Citizen Lab to provide the

28   requested documents and testimony.

1    It is, therefore, respectfully requested that the Ontario Superior Court of Justice compel

2  Citizen Lab to produce documents responsive to the requests for production in Schedule A to this

3  Letter Rogatory, to the extent that they are in their possession, custody, or control, and are not

4  privileged under the applicable laws of Canada or the United States. This Court also requests that

5  the Ontario Superior Court of Justice compel the appearance of Citizen Lab to designate a witness

6  to testify under oath, concerning the topics set forth in Schedule B to this Letter Rogatory.

7    The requested documents and testimony are needed for use at trial in connection with the

8  parties' claims and defenses. While this Court expresses no view at this time as to the merits in the

9  above-captioned case, it believes the evidence sought here will be relevant to and either probative

10  or disprobative of material facts relevant to the parties' claims and defenses.

11

12    ## D.  IDENTITY AND ADDRESS OF THE ENTITY TO BE EXAMINED

13    The identity and address of the person to be examined is set forth below.  The address

14  provided is based on currently available information and may be supplemented.

15    Citizen Lab at the Munk School of Global Affairs and Public Policy

16    University of Toronto

17    27 King's College Circle

18    Simcoe Hall, Room 106

19    Toronto, Ontario M5S 1A1 Canada

20

21    3359 Mississauga Road

22    W. G. Davis Building, Room 3290

23    Mississauga, Ontario L5L 1C6 Canada

24

25    1265 Military Trail

26    Bladen Wing, Room BV506

27    Toronto, Ontario M1C 1A4 Canada

28

### E. **STATEMENTS OF THE SUBJECT MATTER ABOUT WHICH THE ENTITY WILL BE EXAMINED**

This Court requests that questioning be permitted of Citizen Lab regarding the topics listed in Schedule B to this Letter Rogatory.

### F. **DOCUMENTS AND OTHER EVIDENCE TO BE EXAMINED**

It would further the interests of justice if you would summon Citizen Lab to produce or make available for inspection the documents set forth in Schedule A to this Letter Rogatory.

### G. **REQUIREMENTS THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION**

It would further the interests of justice if, by the proper and usual process of your Court, you summon Citizen Lab to appear before a person empowered under Canadian law to administer oaths and take testimony and give testimony under oath or affirmation on the topics listed in Schedule B by questions and answers upon oral examination at a convenient location in Ontario.

### H. **SPECIAL PROCEDURES AND METHODS TO BE FOLLOWED**

The examinations shall be conducted pursuant to the discovery rules as provided for in the Federal Rules of Civil Procedure of the United States, except to the extent such procedure is incompatible with the laws of Canada. This Court further requests: (1) that the examination be taken orally; (2) that the examination be taken before a commercial stenographer and videographer selected by NSO; (3) that a videographer be permitted to record the examination by audiovisual means; (4) that the stenographer be allowed to record a verbatim transcript of the examination; (5) that the examination be conducted in English, or, if necessary, with the assistance of an interpreter selected by NSO; (6) that, if the examination is conducted through an interpreter, verbatim transcripts of the proceeding in English be permitted; (7) that the witness be examined for no more than ten and a half (10.5) hours if the witness requires an interpreter or seven (7) hours if the witness does not require an interpreter; (8) that the time allotted for the examination be divided

equally between Plaintiffs and Defendant; and (9) that the witness be examined as soon as possible.

In the event that the evidence cannot be taken according to some or all of the procedures described above, this Court requests that it be taken in such manner as provided by the laws of Canada for the formal taking of testimonial evidence.

## I.  REQUEST FOR NOTIFICATION

We respectfully request that any order made by the Court will require the examining party to send notice of the time and place for the taking of testimony, and to provide copies of the transcript and video recording of such deposition and copies of the documents produced to the parties' representatives as identified in Section 5 above and to:

Honorable Phyllis J. Hamilton

Senior United States District Judge

United States District Court for the Northern District of California

Ronald V. Dellums Federal Building & United States Courthouse

1301 Clay Street

Oakland, CA 94612

## J.  REQUEST FOR ATTENDANCE OR PARTICIPATION OF JUDICIAL PERSONNEL OF THE REQUESTING AUTHORITY AT THE EXECUTION OF THE LETTER ROGATORY

None.

## K.  SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE UNDER THE LAW OF THE STATE OF ORIGIN

Under the laws of the United States, a witness has a privilege to refuse to give evidence if to do so would disclose a confidential communication between the witness and his or her attorney that was communicated specifically for the purpose of obtaining legal advice and which privilege has not been waived. United States law also recognizes a privilege against criminal self-

1   incrimination. Other limited privileges on grounds not applicable here also exist, such as

2   communications between doctors and patients, husband and wife, and clergy and penitent. Certain

3   limited immunities are also recognized outside the strict definition of privilege, such as the limited

4   protection of work product created by attorneys during or in anticipation of litigation.

5

6       **L.  REIMBURSEMENT**

7       The fees and costs incurred in the execution of this Request which are reimbursable will

8   be borne by NSO.  NSO is willing to reimburse the reimbursable fees and costs incurred by Citizen

9   Lab in complying with any order of the Ontario Superior Court of Justice giving effect to this

10  Request for International Judicial Assistance.

11

12  Dated: _____, 2024  _____

13                                                                          THE HONORABLE PHYLLIS J. HAMILTON
                                                                                  SENIOR UNITED STATES DISTRICT JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SCHEDULE A

### I.    DEFINITIONS

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Northern District of California (*see* Attachments 1 and 2). In addition, the following terms shall have the meanings set forth below whenever used in any request:

1.    The term "Agreements" includes each of the following:  (i) the Data Transfer Letter Agreement dated July 3, 2019, and executed on behalf of WhatsApp Ireland Limited, WhatsApp, Inc., and The Governing Council of the University of Toronto, as represented solely by its Citizen Lab at the Munk School of Global Affairs and Public Policy; (ii) the Framework Agreement dated September 9, 2019, and executed on behalf of WhatsApp, Inc. and The Governing Council of the University of Toronto, as represented solely by its Citizen Lab at the Munk School of Global Affairs and Public Policy; (iii) the Data Processing Agreement dated September 23, 2019, and executed on behalf of WhatsApp Ireland Limited and The Governing Council of the University of Toronto, as represented solely by its Citizen Lab at the Munk School of Global Affairs and Public Policy; (iv) the Side Letter to Amend Framework Agreement dated October 11, 2019, and executed by WhatsApp, Inc. and The Governing Council of the University of Toronto on behalf of the Citizen Lab at the Munk School of Global Affairs and Public Policy; and (v) the Side Letter to Amend Data Processing Agreement dated October 11, 2019, and executed by WhatsApp Ireland Limited and The Governing Council of the University of Toronto on behalf of the Citizen Lab at the Munk School of Global Affairs and Public Policy.

2.    The terms "all" and "any," whenever used separately, shall be construed as "any and all."

1

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all documents and information that might otherwise be construed to be outside of its scope.

4.      "Citizen Lab" means the interdisciplinary laboratory based at the Munk School of Global Affairs and Public Policy at the University of Toronto named and known as "The Citizen Lab" or "Citizen Lab," including its current and former employees, director(s), staff and research fellows, researchers, research fellows, and PhD candidates and post-doctoral fellows.

5.      "Communication(s)" means any transfer of information, ideas, opinions, inquiries or thoughts by any means, at any time or place, under any circumstances, and is not limited to written or verbal transfers between natural persons, but includes all other transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file and other writings reflecting communications.  For the avoidance of doubt, the term "Communication(s)" includes all types of electronically stored information, including emails, voicemails, Teams messages, text or iMessage messages, messages sent via WhatsApp, Signal or any other messaging application, posts to websites, Slack posts or direct messages, and/or posts or direct messages sent using other social media platforms.

6.      "Defendants" means NSO Group Technologies Limited and Q Cyber Technologies Limited, each of which, respectively, is a "Defendant."

7.      "Document(s)" means any written, printed, typed, or other visual or oral matter of any kind or nature, whether sent or received, including, without limitation, all memoranda, reports, notes, transcripts, letters, envelopes, telegrams, cables, telexes, telephone bills, messages, work papers, diaries, desk calendars, appointment books, brochures, drafts, minutes or transcriptions of meetings and other communications of every type, videos and all audio-visual or sound recordings,

magnetic tapes, video tapes, digital files, or other material on which information can be stored or obtained.  The term "Document(s)" shall also include copies of any such documents upon which appears any notation, handwriting, or other additions not on the original.  The term "Document(s)" includes all documents in your care, custody, possession or control, and all documents made available to you, whether or not such documents are in your custody or possession.  For the avoidance of doubt, the term "Document(s)" includes all types of electronically stored information, including emails, voicemails, Teams messages, text or iMessage messages, messages sent via WhatsApp, Signal or any other messaging application, posts to websites, Slack posts or direct messages, and/or posts or direct messages sent using other social media platforms.

8.      "Meta" means Plaintiff Meta Platforms, Inc., including its predecessors (including Facebook, Inc.), successors, subsidiaries, and parents, and agents, attorneys, contractors, employees, and representatives of any of the foregoing.

9.      "Pegasus" means the technology solution described in Exhibit 10 to the WhatsApp Complaint (defined below).

10.      The term "relating to" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting upon, comprising, concerning, confirming, considering, constituting, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, pertaining to, qualifying, referring to, regarding, relevant to, representing, revoking, setting forth, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

11.      The term "security vulnerability" refers to any weakness in computer code, a system, system security procedures, internal controls, or implementation that could allow for

unintended use or access, whether the product of intentional design or not.

12.     "WhatsApp" means WhatsApp LLC, including its predecessors (including WhatsApp Inc.), successors, assigns, subsidiaries, and parents, and agents, attorneys, contractors, employees, and representatives of any of the foregoing.

13.     "WhatsApp Complaint" means the complaint filed in the lawsuit styled *WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.*, 4:19-CV-07123-PJH (N. D. Cal.), a copy of which is attached hereto as Attachment 3.

14.     The terms "you" and "your" refer to Citizen Lab.

## II.     INSTRUCTIONS

1.     These Requests shall apply to all documents in your possession, custody, or control, including documents in the possession or custody of your affiliates, agents, attorneys, consultants, investigators, or other persons acting on your behalf.

2.     You are to produce all responsive documents in full, without abbreviation, expurgation, or redaction.

3.     All documents responsive to the Requests for Production set forth below (the "Requests") shall be produced in an orderly manner and with appropriate markings or other identification to enable identification of the source of the document and number of the Request(s) to which it responds, or as such documents otherwise are maintained in the usual course of business.

4.     If you believe that any of the following Requests calls for documents subject to any claim of privilege, respond and produce so much as is not objected to, state that part of each Request as to which you raise an objection and set forth the basis for your claim of privilege with respect to such documents you refuse to produce, including a statement identifying the nature of

the documents withheld.  Any materials withheld from discovery on the grounds of privilege must be set forth in a privilege log that expressly asserts the claim of privilege and describes the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable an assessment of the claim of privilege.  Such information should include all other recipients of the substance of the withheld document.

5.       The Requests set forth below seek Documents and Communications created, sent or received between January 1, 2016, and the present.

## III.    REQUESTS FOR PRODUCTION

1.       All Documents and Communications relating to any analysis, investigation, or other work performed, and any recommendations made, pursuant to any of the Agreements.

2.       All Documents and Communications sent to or received from any employee or former employee or representative of either Defendant.

3.       All Documents and Communications relating to the security vulnerability in the WhatsApp communication service described in CVE-2019-3568 (as referenced in paragraphs 25 and 44 of the WhatsApp Complaint).

4.       All Documents and Communications relating to the investigation or identification of any electronic device upon which you and/or, to your knowledge, any representative of Citizen Lab believe, or at any time believed, Pegasus was installed (any such device referred to hereinafter as a "Targeted Device").

5.       All Documents and Communications relating to any investigation or identification of the identity of the user or owner of any Targeted Device.

6.       All drafts of all Documents identifying users or owners of any Targeted Device.

7.      All Documents and Communications constituting or relating to any notice provided to or other correspondence with users or suspected users or owners or suspected owners of Targeted Devices, including, but not limited to, any such Targeted Device referenced in the Complaint.

8.      All Documents and Communications relating to any analysis performed directly or indirectly by Citizen Lab concerning whether any users or suspected users of Targeted Devices, fit within broad definitions of civil society or were or are "VIP" targets.

9.      All Documents and Communications relating to any payments, contributions, or donations, whether monetary or in-kind donations of investigative tools or equipment, that Citizen Lab received (or that the University of Toronto received for the benefit of Citizen Lab), directly or indirectly, from Meta or WhatsApp or any of their predecessors, affiliates, or agents.

## <u>SCHEDULE B</u>

### I.      DEFINITIONS

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Northern District of California (*see* Attachments 1 and 2). In addition, the following terms shall have the meanings set forth below whenever used in any request:

1.      The term "Agreements" includes each of the following:  (i) the Data Transfer Letter Agreement dated July 3, 2019, and executed on behalf of WhatsApp Ireland Limited, WhatsApp, Inc., and The Governing Council of the University of Toronto, as represented solely by its Citizen Lab at the Munk School of Global Affairs and Public Policy; (ii) the Framework Agreement dated September 9, 2019, and executed on behalf of WhatsApp, Inc. and The Governing Council of the University of Toronto, as represented solely by its Citizen Lab at the Munk School of Global Affairs and Public Policy; (iii) the Data Processing Agreement dated September 23, 2019, and executed on behalf of WhatsApp Ireland Limited and The Governing Council of the University of Toronto, as represented solely by its Citizen Lab at the Munk School of Global Affairs and Public Policy; (iv) the Side Letter to Amend Framework Agreement dated October 11, 2019, and executed by WhatsApp, Inc. and The Governing Council of the University of Toronto on behalf of the Citizen Lab at the Munk School of Global Affairs and Public Policy; and (v) the Side Letter to Amend Data Processing Agreement dated October 11, 2019, and executed by WhatsApp Ireland Limited and The Governing Council of the University of Toronto on behalf of the Citizen Lab at the Munk School of Global Affairs and Public Policy.

2.      The terms "all" and "any," whenever used separately, shall be construed as "any and all."

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all documents and information that might otherwise be construed to be outside of its scope.

4.      "Citizen Lab" means the interdisciplinary laboratory based at the Munk School of Global Affairs and Public Policy at the University of Toronto named and known as "The Citizen Lab" or "Citizen Lab," including its current and former employees, director(s), staff and research fellows, researchers, research fellows, and PhD candidates and post-doctoral fellows.

5.      "Communication(s)" means any transfer of information, ideas, opinions, inquiries or thoughts by any means, at any time or place, under any circumstances, and is not limited to written or verbal transfers between natural persons, but includes all other transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file and other writings reflecting communications.  For the avoidance of doubt, the term "Communication(s)" includes all types of electronically stored information, including emails, voicemails, Teams messages, text or iMessage messages, messages sent via WhatsApp, Signal or any other messaging application, posts to websites, Slack posts or direct messages, and/or posts or direct messages sent using other social media platforms.

6.      "Defendants" means NSO Group Technologies Limited and Q Cyber Technologies Limited, each of which, respectively, is a "Defendant."

7.      "Document(s)" means any written, printed, typed, or other visual or oral matter of any kind or nature, whether sent or received, including, without limitation, all memoranda, reports, notes, transcripts, letters, envelopes, telegrams, cables, telexes, telephone bills, messages, work papers, diaries, desk calendars, appointment books, brochures, drafts, minutes or transcriptions of meetings and other communications of every type, videos and all audio-visual or sound recordings,

magnetic tapes, video tapes, digital files, or other material on which information can be stored or obtained.  The term "Document(s)" shall also include copies of any such documents upon which appears any notation, handwriting, or other additions not on the original.  The term "Document(s)" includes all documents in your care, custody, possession or control, and all documents made available to you, whether or not such documents are in your custody or possession.  For the avoidance of doubt, the term "Document(s)" includes all types of electronically stored information, including emails, voicemails, Teams messages, text or iMessage messages, messages sent via WhatsApp, Signal or any other messaging application, posts to websites, Slack posts or direct messages, and/or posts or direct messages sent using other social media platforms.

8.      "Meta" means Plaintiff Meta Platforms, Inc., including its predecessors (including Facebook, Inc.), successors, subsidiaries, and parents, and agents, attorneys, contractors, employees, and representatives of any of the foregoing.

9.      "Pegasus" means the technology solution described in Exhibit 10 to the WhatsApp Complaint (defined below).

10.     The term "relating to" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting upon, comprising, concerning, confirming, considering, constituting, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, pertaining to, qualifying, referring to, regarding, relevant to, representing, revoking, setting forth, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

11.     The term "security vulnerability" refers to any weakness in computer code, a system, system security procedures, internal controls, or implementation that could allow for

unintended use or access, whether the product of intentional design or not.

12.     "WhatsApp" means WhatsApp LLC, including its predecessors (including WhatsApp Inc.), successors, assigns, subsidiaries, and parents, and agents, attorneys, contractors, employees, and representatives of any of the foregoing.

13.     "WhatsApp Complaint" means the complaint filed in the lawsuit styled *WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.*, 4:19-CV-07123-PJH (N. D. Cal.), a copy of which is attached hereto as Attachment 3.

14.     The terms "you" and "your" refer to Citizen Lab.

## II.     TOPICS FOR DEPOSITION

1.      Any analysis, investigation, or other work performed, and any recommendations made, by Citizen Lab pursuant to any of the Agreements.

2.      Citizen Lab's publications about Defendants and/or Pegasus, and Citizen Lab's underlying methodology.

3.      Citizen Lab's communications with any employee or former employee or representative of either Defendant.

4.      Any analysis, investigation, or other work performed by Citizen Lab relating to the security vulnerability in the WhatsApp communication service described in CVE-2019-3568 (as referenced in paragraphs 25 and 44 of the WhatsApp Complaint).

5.      Any analysis, investigation, or other work performed by Citizen Lab relating to any security vulnerability or other vulnerability in any communication service, website, computer or mobile application or platform offered by Meta.

6.      Any analysis, investigation, or other work performed by Citizen Lab to attempt to determine whether Pegasus was installed on any electronic device (any such device referred to

hereinafter as a "Targeted Device").

7.      Any analysis, investigation, or other work performed by Citizen Lab to attempt to determine the identity of the user or owner of any Targeted Device

8.      Any analysis, investigation, or other work performed by Citizen Lab to attempt to determine whether user or owner of any Targeted Device, fits within broad definitions of civil society or were or are "VIP" targets.

9.      Any payments, contributions, or donations, whether monetary or in-kind donations of investigative tools or equipment, received directly or indirectly, from Meta or WhatsApp or any of their predecessors, affiliates or agents.

10.     The authenticity of the documents produced in response to the Requests for Production set forth in Schedule A.

11.     The process of collecting documents produced in response to the Requests for Production set forth in Schedule A.

Attachment 1


# FEDERAL RULES

## OF

# CIVIL PROCEDURE

———————

DECEMBER 1, 2022



Printed for the use
of

## THE COMMITTEE ON THE JUDICIARY

## HOUSE OF REPRESENTATIVES

117TH CONGRESS ⎱
2nd Session ⎰          COMMITTEE PRINT          ⎰          No. 11

# FEDERAL RULES

## OF

# CIVIL PROCEDURE

———

DECEMBER 1, 2022



Printed for the use
of
THE COMMITTEE ON THE JUDICIARY
HOUSE OF REPRESENTATIVES

U.S. GOVERNMENT PUBLISHING OFFICE
WASHINGTON : 2023

## COMMITTEE ON THE JUDICIARY

ONE HUNDRED SEVENTEENTH CONGRESS

JERROLD NADLER, New York, *Chairman*

ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
KAREN BASS, California
HAKEEM S. JEFFRIES, New York
DAVID N. CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington
VAL BUTLER DEMINGS, Florida
J. LUIS CORREA, California
MARY GAY SCANLON, Pennsylvania
SYLVIA R. GARCIA, Texas
JOE NEGUSE, Colorado
LUCY McBATH, Georgia
GREG STANTON, Arizona
MADELEINE DEAN, Pennsylvania, *Vice-Chair*
VERONICA ESCOBAR, Texas
MONDAIRE JONES, New York
DEBORAH ROSS, North Carolina
CORI BUSH, Missouri

JIM JORDAN, Ohio, *Ranking Member*
STEVE CHABOT, Ohio
LOUIE GOHMERT, Texas
DARRELL ISSA, California
KEN BUCK, Colorado
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona
TOM McCLINTOCK, California
W. GREGORY STEUBE, Florida
TOM TIFFANY, Wisconsin
THOMAS MASSIE, Kentucky
CHIP ROY, Texas
DAN BISHOP, North Carolina
MICHELLE FISCHBACH, Minnesota
VICTORIA SPARTZ, Indiana
SCOTT FITZGERALD, Wisconsin
CLIFF BENTZ, Oregon
BURGESS OWENS, Utah

AMY RUTKIN, *Majority Staff Director and Chief of Staff*
CHRISTOPHER HIXON, *Minority Staff Director*

(II)

# FOREWORD

This document contains the Federal Rules of Civil Procedure together with forms, as amended to December 1, 2022. The rules have been promulgated and amended by the United States Supreme Court pursuant to law, and further amended by Acts of Congress. This document has been prepared by the Committee in response to the need for an official up-to-date document containing the latest amendments to the rules.

For the convenience of the user, where a rule has been amended a reference to the date the amendment was promulgated and the date the amendment became effective follows the text of the rule.

The Committee on Rules of Practice and Procedure and the Advisory Committee on the Federal Rules of Civil Procedure, Judicial Conference of the United States, prepared notes explaining the purpose and intent of the amendments to the rules. The Committee Notes may be found in the Appendix to Title 28, United States Code, following the particular rule to which they relate.

*Chairman, Committee on the Judiciary.*

DECEMBER 1, 2022.

(III)

# AUTHORITY FOR PROMULGATION OF RULES

## TITLE 28, UNITED STATES CODE

### § 2072. Rules of procedure and evidence; power to prescribe

(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

(b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

(c) Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title.

(Added Pub. L. 100–702, title IV, § 401(a), Nov. 19, 1988, 102 Stat. 4648, eff. Dec. 1, 1988; amended Pub. L. 101–650, title III, §§ 315, 321, Dec. 1, 1990, 104 Stat. 5115, 5117.)

### § 2073. Rules of procedure and evidence; method of prescribing

(a)(1) The Judicial Conference shall prescribe and publish the procedures for the consideration of proposed rules under this section.

(2) The Judicial Conference may authorize the appointment of committees to assist the Conference by recommending rules to be prescribed under sections 2072 and 2075 of this title. Each such committee shall consist of members of the bench and the professional bar, and trial and appellate judges.

(b) The Judicial Conference shall authorize the appointment of a standing committee on rules of practice, procedure, and evidence under subsection (a) of this section. Such standing committee shall review each recommendation of any other committees so appointed and recommend to the Judicial Conference rules of practice, procedure, and evidence and such changes in rules proposed by a committee appointed under subsection (a)(2) of this section as may be necessary to maintain consistency and otherwise promote the interest of justice.

(c)(1) Each meeting for the transaction of business under this chapter by any committee appointed under this section shall be open to the public, except when the committee so meeting, in open session and with a majority present, determines that it is in the public interest that all or part of the remainder of the meeting on that day shall be closed to the public, and states the reason for so closing the meeting. Minutes of each meeting for the transaction of business under this chapter shall be maintained by the committee and made available to the public, except that any portion of such minutes, relating to a closed meeting and made available to the public, may contain such deletions as may be necessary to avoid frustrating the purposes of closing the meeting.

(v)

(2) Any meeting for the transaction of business under this chapter, by a committee appointed under this section, shall be preceded by sufficient notice to enable all interested persons to attend.

(d) In making a recommendation under this section or under section 2072 or 2075, the body making that recommendation shall provide a proposed rule, an explanatory note on the rule, and a written report explaining the body's action, including any minority or other separate views.

(e) Failure to comply with this section does not invalidate a rule prescribed under section 2072 or 2075 of this title.

(Added Pub. L. 100–702, title IV, §401(a), Nov. 19, 1988, 102 Stat. 4649, eff. Dec. 1, 1988; amended Pub. L. 103–394, title I, §104(e), Oct. 22, 1994, 108 Stat. 4110.)

### §2074. Rules of procedure and evidence; submission to Congress; effective date

(a) The Supreme Court shall transmit to the Congress not later than May 1 of the year in which a rule prescribed under section 2072 is to become effective a copy of the proposed rule. Such rule shall take effect no earlier than December 1 of the year in which such rule is so transmitted unless otherwise provided by law. The Supreme Court may fix the extent such rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies.

(b) Any such rule creating, abolishing, or modifying an evidentiary privilege shall have no force or effect unless approved by Act of Congress.

(Added Pub. L. 100–702, title IV, §401(a), Nov. 19, 1988, 102 Stat. 4649, eff. Dec. 1, 1988.)

# HISTORICAL NOTE

The Supreme Court prescribes rules of civil procedure for the district courts pursuant to section 2072 of Title 28, United States Code, as enacted by Title IV "Rules Enabling Act" of Pub. L. 100–702 (approved November 19, 1988, 102 Stat. 4648), effective December 1, 1988. Pursuant to section 2074 of Title 28, the Supreme Court transmits to Congress (not later than May 1 of the year in which a rule prescribed under section 2072 is to become effective) a copy of the proposed rule. The rule takes effect no earlier than December 1 of the year in which the rule is transmitted unless otherwise provided by law.

By act of June 19, 1934, ch. 651, 48 Stat. 1064 (subsequently 28 United States Code, § 2072), the Supreme Court was authorized to prescribe general rules of civil procedure for the district courts. The rules, and subsequent amendments, were not to take effect until (1) they had been first reported to Congress by the Attorney General at the beginning of a regular session and (2) after the close of that session.

Under a 1949 amendment to 28 U.S.C., § 2072, the Chief Justice of the United States, instead of the Attorney General, reported the rules to Congress. In 1950, section 2072 was further amended so that amendments to the rules could be reported to Congress not later than May 1 each year and become effective 90 days after being reported. Effective December 1, 1988, section 2072 was repealed and supplanted by new sections 2072 and 2074, see first paragraph of Historical Note above.

The original rules, pursuant to act of June 19, 1934, were adopted by order of the Court on December 20, 1937, transmitted to Congress by the Attorney General on January 3, 1938, and became effective September 16, 1938 (308 U.S. 645; Cong. Rec., vol. 83, pt. 1, p. 13, Exec. Comm. 905; H. Doc. 460 and H. Doc. 588, 75th Cong.)

Rule 81(a)(6) was abrogated by order of the Court on December 28, 1939, transmitted to Congress by the Attorney General on January 3, 1940, effective April 3, 1941 (308 U.S. 642; Cong. Rec., vol. 86, pt. 1, p. 14, Exec. Comm. 1152).

Further amendments were adopted by the Court by order dated December 27, 1946, transmitted to Congress by the Attorney General on January 3, 1947, and became effective March 19, 1948 (329 U.S. 839; Cong. Rec., vol. 93, pt. 1, p. 41, Exec. Comm. 32; H. Doc. 46 and H. Doc. 473, 80th Cong.). The amendments affected Rules 6, 7, 12, 13, 14, 17, 24, 26, 27, 28, 33, 34, 36, 41, 45, 52, 54, 56, 58, 59, 60, 62, 65, 66, 68, 73, 75, 77, 79, 81, 84, and 86, and Forms 17, 20, 22, and 25.

Additional amendments were adopted by the Court by order dated December 29, 1948, transmitted to Congress by the Attorney General on January 3, 1949, and became effective October 20, 1949 (335 U.S. 919; Cong. Rec., vol. 95, pt. 1, p. 94, Exec. Comm. 24; H.

Doc. 33, 81st Cong.). The amendments affected Rules 1, 17, 22, 24, 25, 27, 37, 45, 57, 60, 62, 65, 66, 67, 69, 72, 73, 74, 75, 76, 79, 81, 82, and 86, and Forms 1, 19, 22, 23, and 27.

Amendment to Rule 81(a)(7) and new Rule 71A and Forms 28 and 29 were adopted by the Court by order dated April 30, 1951, transmitted to Congress by the Chief Justice on May 1, 1951, and became effective August 1, 1951 (341 U.S. 959; Cong. Rec., vol. 97, pt. 4, p. 4666, Exec. Comm. 414; H. Doc. 121, 82d Cong.).

Additional amendments were adopted by the Court by order dated April 17, 1961, transmitted to Congress by the Chief Justice on April 18, 1961, and became effective July 19, 1961 (368 U.S. 1009; Cong. Rec., vol. 107, pt. 5, p. 6524, Exec. Comm. 821). The amendments affected Rules 25, 54, 62, and 86, and Forms 2 and 19.

Additional amendments were adopted by the Court by order dated January 21, 1963, transmitted to Congress by the Chief Justice on the same day (374 U.S. 861; Cong. Rec., vol. 109, pt. 1, p. 1037, Exec. Comm. 267; H. Doc. 48, 88th Cong.), and became effective July 1, 1963, by order of the Court dated March 18, 1963 (374 U.S. 861; Cong. Rec., vol. 109, pt. 4, p. 4639, Exec. Comm. 569; H. Doc. 48, pt. 2, 88th Cong.; see also H. Doc. 67, 88th Cong.). The amendments affected Rules 4, 5, 6, 7, 12, 13, 14, 15, 24, 25, 26, 28, 30, 41, 49, 50, 52, 56, 58, 71A, 77, 79, 81, and 86, and Forms 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 18, 21, 22–A, and 22–B, and added Forms 30, 31, and 32.

Additional amendments were adopted by the Court by order dated February 28, 1966, transmitted to Congress by the Chief Justice on the same day (383 U.S. 1029; Cong. Rec., vol. 112, pt. 4, p. 4229, Exec. Comm. 2094; H. Doc. 391, 89th Cong.), and became effective July 1, 1966. The amendments affected Rules 1, 4, 8, 9, 12, 13, 14, 15, 17, 18, 19, 20, 23, 24, 26, 38, 41, 42, 43, 44, 47, 53, 59, 65, 68, 73, 74, 75, 81, and 82, and Forms 2 and 15, and added Rules 23.1, 23.2, 44.1, and 65.1, and Supplemental Rules A, B, C, D, E, and F for certain Admiralty and Maritime claims. The amendments govern all proceedings in actions brought after they became effective and also all further proceedings in actions then pending, except to the extent that in the opinion of the Court an application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies.

In addition, Rule 6(c) of the Rules of Civil Procedure promulgated by the Court on December 20, 1937, effective September 16, 1938; Rule 2 of the Rules for Practice and Procedure under section 25 of an act to amend and consolidate the acts respecting copyright, approved March 4, 1909, promulgated by the Court on June 1, 1909, effective July 1, 1909; and the Rules of Practice in Admiralty and Maritime Cases, promulgated by the Court on December 6, 1920, effective March 7, 1921, as revised, amended and supplemented, were rescinded, effective July 1, 1966.

Additional amendments were adopted by the Court by order dated December 4, 1967, transmitted to Congress by the Chief Justice on January 15, 1968 (389 U.S. 1121; Cong. Rec., vol. 114, pt. 1, p. 113, Exec. Comm. 1361; H. Doc. 204, 90th Cong.), and became effective July 1, 1968. The amendments affected Rules 6(b), 9(h), 41(a)(1), 77(d), and 81(a), and abrogated the chapter heading ''IX. Appeals'' and Rules 72–76, and Form 27.

Additional amendments were adopted by the Court by order dated March 30, 1970, transmitted to Congress by the Chief Justice on the same day (398 U.S. 977; Cong. Rec., vol. 116, pt. 7, p. 9861, Exec. Comm. 1839; H. Doc. 91–291), and became effective July 1, 1970. The amendments affected Rules 5(a), 9(h), 26, 29 to 37, 45(d), and 69(a), and Form 24.

On March 1, 1971, the Court adopted additional amendments, which were transmitted to Congress by the Chief Justice on the same day (401 U.S. 1017; Cong. Rec., vol. 117, pt. 4, p. 4629, Exec. Comm. 341; H. Doc. 92–57), and became effective July 1, 1971. The amendments affected Rules 6(a), 27(a)(4), 30(b)(6), 77(c), and 81(a)(2).

Further amendments were proposed by the Court in its orders dated November 20 and December 18, 1972, and transmitted to Congress by the Chief Justice on February 5, 1973 (409 U.S. 1132 and 419 U.S. 1133; Cong. Rec., vol. 119, pt. 3, p. 3247, Exec. Comm. 359; H. Doc. 93–46). Although these amendments were to have become effective July 1, 1973, Public Law 93–12 (approved March 30, 1973, 87 Stat. 9) provided that the proposed amendments ''shall have no force or effect except to the extent, and with such amendments, as they may be expressly approved by Act of Congress.'' Section 3 of Public Law 93–595 (approved January 2, 1975, 88 Stat. 1949) approved the amendments proposed by the Court, to be effective July 1, 1975. The amendments affected Rules 30(c), 43, and 44.1, and abrogated Rule 32(c).

On April 29, 1980, the Court adopted additional amendments, which were transmitted to Congress by the Chief Justice on the same day (446 U.S. 995; Cong. Rec., vol. 126, pt. 8, p. 9535, Exec. Comm. 4260; H. Doc. 96–306), and became effective August 1, 1980. The amendments affected Rules 4, 5, 26, 28, 30, 32, 33, 34, 37, and 45.

Section 205(a) and (b) of Public Law 96–481 (approved October 21, 1980, 94 Stat. 2330) repealed Rule 37(f) and deleted the corresponding item from the Table of Contents, to be effective October 1, 1981.

Amendments to Rule 4 were adopted by the Court by order dated April 28, 1982, transmitted to Congress by the Chief Justice on the same day (456 U.S. 1013; Cong. Rec., vol. 128, pt. 6, p. 8191, Exec. Comm. 3822; H. Doc. 97–173), and became effective August 1, 1982. However, Public Law 97–227 (approved August 2, 1982, 96 Stat. 246) provided that the amendments to Rule 4 shall take effect on October 1, 1983, unless previously approved, disapproved, or modified by Act of Congress, and further provided that this Act shall be effective as of August 1, 1982, but shall not apply to the service of process that takes place between August 1, 1982, and the date of enactment of this Act [August 2, 1982]. Section 5 of Public Law 97–462 (approved January 12, 1983, 96 Stat. 2530) provided that the amendments to Rule 4 the effective date of which was delayed by Public Law 97–227 shall not take effect. Sections 2 to 4 of Public Law 97–462 amended Rule 4(a), (c) to (e), and (g), added Rule 4(j), and added Form 18–A in the Appendix of Forms, effective 45 days after enactment of Public Law 97–462 [February 26, 1983].

Additional amendments were adopted by the Court by order dated April 28, 1983, transmitted to Congress by the Chief Justice on the same day (461 U.S. 1095; Cong. Rec., vol. 129, pt. 8, p. 10479, Exec. Comm. 1027; H. Doc. 98–54), and became effective August 1,

1983. The amendments included new Rules 26(g), 53(f), 72 through 76 and new Official Forms 33 and 34, and amendments to Rules 6(b), 7(b), 11, 16, 26(a), (b), 52(a), 53(a), (b), (c), and 67.

Additional amendments were adopted by the Court by order dated April 29, 1985, transmitted to Congress by the Chief Justice on the same day (471 U.S. 1153; Cong. Rec., vol. 131, pt. 7, p. 9826, Exec. Comm. 1156; H. Doc. 99–63), and became effective August 1, 1985. The amendments affected Rules 6(a), 45(d)(1), 52(a), 71A(h), and 83, Official Form 18–A, and Rules B(1), C(3), and E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Additional amendments were adopted by the Court by order dated March 2, 1987, transmitted to Congress by the Chief Justice on the same day (480 U.S. 953; Cong. Rec., vol. 133, pt. 4, p. 4448, Exec. Comm. 714; H. Doc. 100–40), and became effective August 1, 1987. The amendments affected Rules 4(b), (d)(1), (e), (i)(1), 5(b), (e), 6(e), 8(a), (b), (e)(2), 9(a), 11, 12(a), (b), (e) to (g), 13(a), (e), (f), 14, 15, 16(f), 17, 18, 19(a), (b), 20(b), 22(1), 23(c)(2), 23.1, 24(a), 25(b), (d), 26(b)(3), (e)(1), (2), (f)(5), (g), 27(a)(1), (b), 28(b), 30(b)(1), (2), (4), (6), (7), (c), (e), (f)(1), (g), 31(a), (b), 32(a)(4), 34(a), 35(a), (b)(1), (2), 36, 37(a)(2), (b)(2), (c), (d), (g), 38(c), (d), 41(a)(2), (b), 43(f), 44(a)(1), 44.1, 45(c), (f), 46, 49(a), 50(b), (d), 51, 53(a), (c) to (e)(1), (3), (5), 54(c), 55(a), (b), (e), 56(a), (b), (e) to (g), 60(b), 62(f), 63, 65(b), 65.1, 68, 69, 71, 71A(d)(2), (3)(ii), (e) to (g), (j), 73(b), 75(b)(2), (c)(1), (2), (4), 77(c), 78, and 81(c), and Rules B, C(3), (6), E(2)(b), (4)(b), (c), (5)(c), (9)(b), (c), and F(1) to (6) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Additional amendments were adopted by the Court by order dated April 25, 1988, transmitted to Congress by the Chief Justice on the same day (485 U.S. 1043; Cong. Rec., vol. 134, pt. 7, p. 9154, Exec. Comm. 3515; H. Doc. 100–185), and became effective August 1, 1988. The amendments affected Rules 17(a) and 71A(e).

Section 7047(b) of Public Law 100–690 (approved November 18, 1988, 102 Stat. 4401) amended Rule 35. Section 7049 of Public Law 100–690, which directed amendment of Rule 17(a) by striking "with him", and section 7050 of Public Law 100–690, which directed amendment of Rule 71A(e) by striking "taking of the defendants property" and inserting "taking of the defendant's property", could not be executed because of the intervening amendments to those Rules by the Court by order dated April 25, 1988, effective August 1, 1988.

Additional amendments were adopted by the Court by order dated April 30, 1991, transmitted to Congress by the Chief Justice on the same day (500 U.S. 963; Cong. Rec., vol. 137, pt. 7, p. 9721, Ex. Comm. 1190; H. Doc. 102–77), and became effective December 1, 1991. The amendments affected Rules 5, 15, 24, 34, 35, 41, 44, 45, 47, 48, 50, 52, 53, 63, 72, and 77, the headings for chapters VIII and IX, and Rules C and E of the Supplemental Rules for Certain Admiralty and Maritime Claims, added new Official Forms 1A and 1B, and abrogated Form 18–A.

Section 11 of Pub. L. 102–198 (approved December 9, 1991, 105 Stat. 1626) amended Rule 15(c)(3) as transmitted to Congress by the Supreme Court to become effective on December 1, 1991; provided that Forms 1A and 1B included in the transmittal shall not

be effective; and provided that Form 18–A, abrogated by the Supreme Court in the transmittal, effective December 1, 1991, shall continue in effect on or after that date.

Additional amendments were adopted by the Court by order dated April 22, 1993, transmitted to Congress by the Chief Justice on the same day (507 U.S. 1089; Cong. Rec., vol. 139, pt. 6, p. 8127, Ex. Comm. 1102; H. Doc. 103–74), and became effective December 1, 1993. The amendments affected Rules 1, 4, 5, 11, 12, 15, 16, 26, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 50, 52, 53, 54, 58, 71A, 72, 73, 74, 75, and 76, added new Rule 4.1, affected Forms 2, 33, 34, and 34A, added new Forms 1A, 1B, and 35, and abrogated Form 18–A.

Additional amendments were adopted by the Court by order dated April 27, 1995, transmitted to Congress by the Chief Justice on the same day (514 U.S. 1151; Cong. Rec., vol. 141, pt. 8, p. 11745, Ex. Comm. 804; H. Doc. 104–64), and became effective December 1, 1995. The amendments affected Rules 50, 52, 59, and 83.

Additional amendments were adopted by the Court by order dated April 23, 1996, transmitted to Congress by the Chief Justice on the same day (517 U.S. 1279; Cong. Rec., vol. 142, pt. 6, p. 8831, Ex. Comm. 2487; H. Doc. 104–201), and became effective December 1, 1996. The amendments affected Rules 5 and 43.

Additional amendments were adopted by the Court by order dated April 11, 1997, transmitted to Congress by the Chief Justice on the same day (520 U.S. 1305; Cong. Rec., vol. 143, pt. 4, p. 5551, Ex. Comm. 2795; H. Doc. 105–67), and became effective December 1, 1997. The amendments affected Rules 9 and 73, abrogated Rules 74, 75, and 76, and affected Forms 33 and 34.

An additional amendment was adopted by the Court by order dated April 24, 1998, transmitted to Congress by the Chief Justice on the same day (523 U.S. 1221; H. Doc. 105–266), and became effective December 1, 1998. The amendment affected Rule 23.

Additional amendments were adopted by the Court by order dated April 26, 1999, transmitted to Congress by the Chief Justice on the same day (526 U.S. 1183; Cong. Rec., vol. 145, pt. 6, p. 7907, Ex. Comm. 1787; H. Doc. 106–54), and became effective December 1, 1999. The amendments affected Rule 6 and Form 2.

Additional amendments were adopted by the Court by order dated April 17, 2000, transmitted to Congress by the Chief Justice on the same day (529 U.S. 1155; Cong. Rec., vol. 146, pt. 5, p. 6328, Ex. Comm. 7336; H. Doc. 106–228), and became effective December 1, 2000. The amendments affected Rules 4, 5, 12, 14, 26, 30, and 37 and Rules B, C, and E of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Additional amendments were adopted by the Court by order dated April 23, 2001, transmitted to Congress by the Chief Justice on the same day (532 U.S. 1085; Cong. Rec., vol. 147, pt. 5, p. 6126, Ex. Comm. 1575; H. Doc. 107–61), and became effective December 1, 2001. The amendments affected Rules 5, 6, 65, 77, 81, and 82.

Additional amendments were adopted by the Court by order dated April 29, 2002, transmitted to Congress by the Chief Justice on the same day (535 U.S. 1147; Cong. Rec., vol. 148, pt. 5, p. 6813, Ex. Comm. 6623; H. Doc. 107–204), and became effective December 1, 2002. The amendments affected Rules 54, 58, and 81 and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims and added new Rule 7.1.

Additional amendments were adopted by the Court by order dated March 27, 2003, transmitted to Congress by the Chief Justice on the same day (538 U.S. 1083; Cong. Rec., vol. 149, pt. 6, p. 7689, Ex. Comm. 1493; H. Doc. 108–56), and became effective December 1, 2003. The amendments affected Rules 23, 51, 53, 54, and 71A and Forms 19, 31, and 32.

Additional amendments were adopted by the Court by order dated April 25, 2005, transmitted to Congress by the Chief Justice on the same day (544 U.S. 1173; Cong. Rec., vol. 151, pt. 7, p. 8784, Ex. Comm. 1906; H. Doc. 109–23), and became effective December 1, 2005. The amendments affected Rules 6, 27, and 45, and Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Additional amendments were adopted by the Court by order dated April 12, 2006, transmitted to Congress by the Chief Justice on the same day (547 U.S. 1233; Cong. Rec., vol. 152, pt. 6, p. 7213, Ex. Comm. 7317; H. Doc. 109–105), and became effective December 1, 2006. The amendments affected Rules 5, 9, 14, 16, 24, 26, 33, 34, 37, 45, 50, and 65.1, added new Rule 5.1, affected Form 35, affected Rules A, C, and E of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and added new Rule G to such Supplemental Rules.

Additional amendments were adopted by the Court by order dated April 30, 2007, transmitted to Congress by the Chief Justice on the same day (550 U.S. 1003; Cong. Rec., vol. 153, pt. 8, p. 10612, Ex. Comm. 1377; H. Doc. 110–27), and became effective December 1, 2007. The amendments affected Rules 1 through 86 and added new Rule 5.2; Forms 1 through 35 were amended to become restyled Forms 1 through 82.

An additional amendment was adopted by the Court by order dated April 23, 2008, transmitted to Congress by the Chief Justice on the same day (553 U.S. 1149; Cong. Rec., vol. 154, pt. 8, p. 11078, Ex. Comm. 6881; H. Doc. 110–117), and became effective December 1, 2008. The amendment affected Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

Additional amendments were adopted by the Court by order dated March 26, 2009, transmitted to Congress by the Chief Justice on March 25, 2009 (556 U.S. 1341; Cong. Rec., vol. 155, pt. 8, p. 10210, Ex. Comm. 1264; H. Doc. 111–29), and became effective December 1, 2009. The amendments affected Rules 6, 12, 13, 14, 15, 23, 27, 32, 38, 48, 50, 52, 53, 54, 55, 56, 59, 62, 65, 68, 71.1, 72, and 81, added new Rule 62.1, and affected Forms 3, 4, and 60, and Rules B, C, and G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

Additional amendments were adopted by the Court by order dated April 28, 2010, transmitted to Congress by the Chief Justice on the same day (559 U.S. 1139; Cong. Rec., vol. 156, pt. 6, p. 8139, Ex. Comm. 7473; H. Doc. 111–111), and became effective December 1, 2010. The amendments affected Rules 8, 26, and 56, and Form 52.

Additional amendments were adopted by the Court by order dated April 16, 2013, transmitted to Congress by the Chief Justice on the same day (569 U.S. 1149; Cong. Rec., vol. 159, pt. 5, p. 6968, Ex. Comm. 1495; H. Doc. 113–29), and became effective December 1, 2013. The amendments affected Rules 37 and 45.

An additional amendment was adopted by the Court by order dated April 25, 2014, transmitted to Congress by the Chief Justice on the same day (572 U.S. 1217; Cong. Rec., vol. 160, pt. 11, p. 15506, Ex. Comm. 7579; H. Doc. 113–163), and became effective December 1, 2014. The amendment affected Rule 77.

Additional amendments were adopted by the Court by order dated April 29, 2015, transmitted to Congress by the Chief Justice on the same day (575 U.S. 1055; Cong. Rec., vol. 161, pt. 5, p. 6139, Ex. Comm. 1373; H. Doc. 114–33), and became effective December 1, 2015. The amendments affected Rules 1, 4, 16, 26, 30, 31, 33, 34, 37, and 55, abrogated Rule 84, and abrogated the Appendix of Forms (Forms 1 through 82).

Additional amendments were adopted by the Court by order dated April 28, 2016, transmitted to Congress by the Chief Justice on the same day (578 U.S. 1061; Cong. Rec., vol. 162, pt. 4, p. 5467, Ex. Comm. 5233; H. Doc. 114–128), and became effective December 1, 2016. The amendments affected Rules 4, 6, and 82.

An additional amendment was adopted by the Court by order dated April 27, 2017, transmitted to Congress by the Chief Justice on the same day (581 U.S.——; Cong. Rec., vol. 163, p. H4175, Daily Issue, Ex. Comm. 1255; H. Doc. 115–33), and became effective December 1, 2017. The amendment affected Rule 4.

Additional amendments were adopted by the Court by order dated April 26, 2018, transmitted to Congress by the Chief Justice on the same day (584 U.S.——; Cong. Rec., vol. 164, p. H3927, Daily Issue, Ex. Comm. 4789; H. Doc. 115–119), and became effective December 1, 2018. The amendments affected Rules 5, 23, 62, and 65.1.

An additional amendment was adopted by the Court by order dated April 27, 2020, transmitted to Congress by the Chief Justice on the same day (590 U.S.——; Cong. Rec., vol. 166, p. H4223, Daily Issue, Ex. Comm. 4923; H. Doc. 116–145), and became effective December 1, 2020. The amendment affected Rule 30.

Additional amendments were adopted by the Court by order dated April 11, 2022, transmitted to Congress by the Chief Justice on the same day (596 U.S.——; Cong. Rec., vol. 168, p. H4442, Daily Issue, Ex. Comm. 3741; H. Doc. 117–110), and became effective December 1, 2022. The amendments affected Rule 7.1 and added Supplemental Rules for Social Security Review Actions Under 42 U.S.C. § 405(g) (Rules 1 to 8).

### Committee Notes

Committee Notes prepared by the Committee on Rules of Practice and Procedure and the Advisory Committee on the Federal Rules of Civil Procedure, Judicial Conference of the United States, explaining the purpose and intent of the amendments are set out in the Appendix to Title 28, United States Code, following the particular rule to which they relate. In addition, the rules and amendments, together with Committee Notes, are set out in the House documents listed above.

# TABLE OF CONTENTS

——————

| | Page |
|---|---|
| Foreword .................................................................................................. | III |
| Authority for promulgation of rules ................................................... | V |
| Historical note ........................................................................................ | VII |

## RULES

TITLE I. SCOPE OF RULES; FORM OF ACTION

| | |
|---|---|
| Rule 1. Scope and Purpose ............................................................... | 1 |
| Rule 2. One Form of Action ............................................................. | 1 |

TITLE II. COMMENCING AN ACTION; SERVICE OF PROCESS, PLEADINGS, MOTIONS, AND ORDERS

| | |
|---|---|
| Rule 3. Commencing an Action ........................................................ | 1 |
| Rule 4. Summons .............................................................................. | 1 |
| Rule 4.1. Serving Other Process ..................................................... | 8 |
| Rule 5. Serving and Filing Pleadings and Other Papers .............. | 8 |
| Rule 5.1. Constitutional Challenge to a Statute—Notice, Certification, and Intervention ....................................................................... | 11 |
| Rule 5.2. Privacy Protection For Filings Made with the Court ...... | 11 |
| Rule 6. Computing and Extending Time; Time for Motion Papers ............... | 12 |

TITLE III. PLEADINGS AND MOTIONS

| | |
|---|---|
| Rule 7. Pleadings Allowed; Form of Motions and Other Papers ...... | 14 |
| Rule 7.1. Disclosure Statement ...................................................... | 14 |
| Rule 8. General Rules of Pleading ................................................. | 15 |
| Rule 9. Pleading Special Matters ................................................... | 16 |
| Rule 10. Form of Pleadings ............................................................. | 17 |
| Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions .................................................................... | 18 |
| Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing ................................................. | 19 |
| Rule 13. Counterclaim and Crossclaim ......................................... | 21 |
| Rule 14. Third-Party Practice ......................................................... | 22 |
| Rule 15. Amended and Supplemental Pleadings ........................... | 24 |
| Rule 16. Pretrial Conferences; Scheduling; Management ............. | 25 |

TITLE IV. PARTIES

| | |
|---|---|
| Rule 17. Plaintiff and Defendant; Capacity; Public Officers .......... | 27 |
| Rule 18. Joinder of Claims .............................................................. | 28 |
| Rule 19. Required Joinder of Parties ............................................. | 29 |
| Rule 20. Permissive Joinder of Parties .......................................... | 29 |
| Rule 21. Misjoinder and Nonjoinder of Parties ............................. | 30 |
| Rule 22. Interpleader ....................................................................... | 30 |
| Rule 23. Class Actions ..................................................................... | 31 |
| Rule 23.1. Derivative Actions ......................................................... | 35 |
| Rule 23.2. Actions Relating to Unincorporated Associations ......... | 36 |
| Rule 24. Intervention ....................................................................... | 36 |
| Rule 25. Substitution of Parties ..................................................... | 37 |

TITLE V. DISCLOSURES AND DISCOVERY

| | |
|---|---|
| Rule 26. Duty to Disclose; General Provisions Governing Discovery ........... | 37 |
| Rule 27. Depositions to Perpetuate Testimony .............................. | 46 |
| Rule 28. Persons Before Whom Depositions May Be Taken ........... | 47 |
| Rule 29. Stipulations About Discovery Procedure ......................... | 48 |
| Rule 30. Depositions by Oral Examination ..................................... | 48 |
| Rule 31. Depositions by Written Questions .................................... | 52 |
| Rule 32. Using Depositions in Court Proceedings ......................... | 53 |
| Rule 33. Interrogatories to Parties ................................................. | 55 |
| Rule 34. Producing Documents, Electronically Stored Information, and Tangible Things, or Entering onto Land, for Inspection and Other Purposes .................................................................................... | 56 |

XVI                                       CONTENTS

TITLE V. DISCLOSURES AND DISCOVERY—Continued                              Page
    Rule 35. Physical and Mental Examinations  ................................................ 58
    Rule 36. Requests for Admission ................................................................... 59
    Rule 37. Failure to Make Disclosures or to Cooperate in Discovery;
          Sanctions ...................................................................................... 60
TITLE VI. TRIALS
    Rule 38. Right to a Jury Trial; Demand ........................................................ 64
    Rule 39. Trial by Jury or by the Court ......................................................... 64
    Rule 40. Scheduling Cases for Trial ............................................................. 65
    Rule 41. Dismissal of Actions ....................................................................... 65
    Rule 42. Consolidation; Separate Trials ...................................................... 66
    Rule 43. Taking Testimony ........................................................................... 66
    Rule 44. Proving an Official Record  ............................................................. 66
    Rule 44.1. Determining Foreign Law ............................................................ 67
    Rule 45. Subpoena  ........................................................................................ 67
    Rule 46. Objecting to a Ruling or Order ...................................................... 71
    Rule 47. Selecting Jurors .............................................................................. 72
    Rule 48. Number of Jurors; Verdict; Polling .............................................. 72
    Rule 49. Special Verdict; General Verdict and Questions ........................... 72
    Rule 50. Judgment as a Matter of Law in a Jury Trial; Related Motion for
          a New Trial; Conditional Ruling ................................................. 73
    Rule 51. Instructions to the Jury; Objections; Preserving a Claim of Error .. 74
    Rule 52. Findings and Conclusions by the Court; Judgment on Partial
          Findings ....................................................................................... 75
    Rule 53. Masters ........................................................................................... 76
TITLE VII. JUDGMENT
    Rule 54. Judgment; Costs ............................................................................. 78
    Rule 55. Default; Default Judgment  ............................................................ 80
    Rule 56. Summary Judgment  ....................................................................... 80
    Rule 57. Declaratory Judgment ................................................................... 82
    Rule 58. Entering Judgment ......................................................................... 82
    Rule 59. New Trial; Altering or Amending a Judgment ............................... 83
    Rule 60. Relief from a Judgment or Order  .................................................. 83
    Rule 61. Harmless Error ............................................................................... 84
    Rule 62. Stay of Proceedings to Enforce a Judgment ................................... 84
    Rule 62.1. Indicative Ruling on a Motion for Relief That is Barred by a
          Pending Appeal ........................................................................... 85
    Rule 63. Judge's Inability to Proceed  .......................................................... 86
TITLE VIII. PROVISIONAL AND FINAL REMEDIES
    Rule 64. Seizing a Person or Property ......................................................... 86
    Rule 65. Injunctions and Restraining Orders ............................................. 86
    Rule 65.1. Proceedings Against a Security Provider ................................... 88
    Rule 66. Receivers ........................................................................................ 88
    Rule 67. Deposit into Court .......................................................................... 88
    Rule 68. Offer of Judgment  ......................................................................... 89
    Rule 69. Execution ........................................................................................ 89
    Rule 70. Enforcing a Judgment for a Specific Act ....................................... 90
    Rule 71. Enforcing Relief For or Against a Nonparty .................................. 90
TITLE IX. SPECIAL PROCEEDINGS
    Rule 71.1. Condemning Real or Personal Property ...................................... 90
    Rule 72. Magistrate Judges: Pretrial Order ................................................ 94
    Rule 73. Magistrate Judges: Trial by Consent; Appeal  .............................. 95
    Rule 74. [Abrogated.]
    Rule 75. [Abrogated.]
    Rule 76. [Abrogated.]
TITLE X. DISTRICT COURTS AND CLERKS: CONDUCTING BUSINESS;
   ISSUING ORDERS
    Rule 77. Conducting Business; Clerk's Authority; Notice of an Order or
          Judgment ..................................................................................... 96
    Rule 78. Hearing Motions; Submission on Briefs ............................................ 97
    Rule 79. Records Kept by the Clerk  ............................................................. 97
    Rule 80. Stenographic Transcript as Evidence ............................................ 98
TITLE XI. GENERAL PROVISIONS
    Rule 81. Applicability of the Rules in General; Removed Actions ................. 98
    Rule 82. Jurisdiction and Venue Unaffected .............................................. 100
    Rule 83. Rules by District Courts; Judge's Directives .................................. 100
    Rule 84. [Abrogated.]

CONTENTS                                                    XVII

TITLE XI. GENERAL PROVISIONS—Continued                      Page
    Rule 85. Title ...................................................... 100
    Rule 86. Effective Dates ............................................ 101

## APPENDIX OF FORMS

[Abrogated.]

## SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS

Rule A. Scope of Rules ................................................ 104
Rule B. In Personam Actions: Attachment and Garnishment ............. 104
Rule C. In Rem Actions: Special Provisions .......................... 105
Rule D. Possessory, Petitory, and Partition Actions ................. 107
Rule E. Actions in Rem and Quasi in Rem: General Provisions ......... 108
Rule F. Limitation of Liability ..................................... 111
Rule G. Forfeiture Actions In Rem ................................... 114

## SUPPLEMENTAL RULES FOR SOCIAL SECURITY ACTIONS UNDER 42 U.S.C. §405(g)

Rule 1. Review of Social Security Decisions Under 42 U.S.C. §405(g) ... 119
Rule 2. Complaint ................................................... 120
Rule 3. Service ..................................................... 120
Rule 4. Answer; Motions; Time ....................................... 120
Rule 5. Presenting the Action for Decision .......................... 120
Rule 6. Plaintiff's Brief ........................................... 121
Rule 7. Commissioner's Brief ........................................ 121
Rule 8. Reply Brief ................................................. 121

# RULES OF CIVIL PROCEDURE

### FOR THE

## UNITED STATES DISTRICT COURTS[1]

### Effective September 16, 1938, as amended to December 1, 2022

TITLE I. SCOPE OF RULES; FORM OF ACTION

## Rule 1. Scope and Purpose

These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015.)

## Rule 2. One Form of Action

There is one form of action—the civil action.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

TITLE II. COMMENCING AN ACTION; SERVICE OF PROCESS, PLEADINGS, MOTIONS, AND ORDERS

## Rule 3. Commencing an Action

A civil action is commenced by filing a complaint with the court.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 4. Summons

(a) CONTENTS; AMENDMENTS.
   (1) *Contents.* A summons must:
      (A) name the court and the parties;
      (B) be directed to the defendant;
      (C) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;
      (D) state the time within which the defendant must appear and defend;
      (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;
      (F) be signed by the clerk; and
      (G) bear the court's seal.

_____
[1] Title amended December 29, 1948, effective October 20, 1949.

(2) *Amendments.* The court may permit a summons to be amended.

(b) ISSUANCE. On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served.

(c) SERVICE.

(1) *In General.* A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

(2) *By Whom.* Any person who is at least 18 years old and not a party may serve a summons and complaint.

(3) *By a Marshal or Someone Specially Appointed.* At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915 or as a seaman under 28 U.S.C. §1916.

(d) WAIVING SERVICE.

(1) *Requesting a Waiver.* An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must:

(A) be in writing and be addressed:

(i) to the individual defendant; or

(ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;

(B) name the court where the complaint was filed;

(C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;

(D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;

(E) state the date when the request is sent;

(F) give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and

(G) be sent by first-class mail or other reliable means.

(2) *Failure to Waive.* If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:

(A) the expenses later incurred in making service; and

(B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

(3) *Time to Answer After a Waiver*. A defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent—or until 90 days after it was sent to the defendant outside any judicial district of the United States.

(4) *Results of Filing a Waiver*. When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.

(5) *Jurisdiction and Venue Not Waived*. Waiving service of a summons does not waive any objection to personal jurisdiction or to venue.

(e) SERVING AN INDIVIDUAL WITHIN A JUDICIAL DISTRICT OF THE UNITED STATES. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

    (A) delivering a copy of the summons and of the complaint to the individual personally;

    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

(f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

    (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

    (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

    (C) unless prohibited by the foreign country's law, by:

        (i) delivering a copy of the summons and of the complaint to the individual personally; or

        (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

(g) SERVING A MINOR OR AN INCOMPETENT PERSON. A minor or an incompetent person in a judicial district of the United States

must be served by following state law for serving a summons or like process on such a defendant in an action brought in the courts of general jurisdiction of the state where service is made. A minor or an incompetent person who is not within any judicial district of the United States must be served in the manner prescribed by Rule 4(f)(2)(A), (f)(2)(B), or (f)(3).

(h) SERVING A CORPORATION, PARTNERSHIP, OR ASSOCIATION. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

(1) in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or

(2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

(i) SERVING THE UNITED STATES AND ITS AGENCIES, CORPORATIONS, OFFICERS, OR EMPLOYEES.

(1) *United States.* To serve the United States, a party must:

(A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

(2) *Agency; Corporation; Officer or Employee Sued in an Official Capacity.* To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

(3) *Officer or Employee Sued Individually.* To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

(4) *Extending Time.* The court must allow a party a reasonable time to cure its failure to:

    (A) serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States; or

    (B) serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee.

(j) SERVING A FOREIGN, STATE, OR LOCAL GOVERNMENT.

    (1) *Foreign State.* A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608.

    (2) *State or Local Government.* A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:

        (A) delivering a copy of the summons and of the complaint to its chief executive officer; or

        (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

(k) TERRITORIAL LIMITS OF EFFECTIVE SERVICE.

    (1) *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

        (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;

        (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or

        (C) when authorized by a federal statute.

    (2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

        (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

        (B) exercising jurisdiction is consistent with the United States Constitution and laws.

(l) PROVING SERVICE.

    (1) *Affidavit Required.* Unless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit.

    (2) *Service Outside the United States.* Service not within any judicial district of the United States must be proved as follows:

        (A) if made under Rule 4(f)(1), as provided in the applicable treaty or convention; or

        (B) if made under Rule 4(f)(2) or (f)(3), by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee.

    (3) *Validity of Service; Amending Proof.* Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended.

(m) TIME LIMIT FOR SERVICE. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its

own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

(n) ASSERTING JURISDICTION OVER PROPERTY OR ASSETS.

(1) *Federal Law.* The court may assert jurisdiction over property if authorized by a federal statute. Notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule.

(2) *State Law.* On a showing that personal jurisdiction over a defendant cannot be obtained in the district where the action is brought by reasonable efforts to serve a summons under this rule, the court may assert jurisdiction over the defendant's assets found in the district. Jurisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in that district.

(As amended Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Apr. 29, 1980, eff. Aug. 1, 1980; Pub. L. 97–462, §2, Jan. 12, 1983, 96 Stat. 2527, eff. Feb. 26, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015; Apr. 28, 2016, eff. Dec. 1, 2016; Apr. 27, 2017, eff. Dec. 1, 2017.)

RULE 4 NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF SUMMONS.

(Caption)

To (*name the defendant or—if the defendant is a corporation, partnership, or association—name an officer or agent authorized to receive service*):

WHY ARE YOU GETTING THIS?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within (*give at least 30 days or at least 60 days if the defendant is outside any judicial district of the United States*) from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

WHAT HAPPENS NEXT?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

7   FEDERAL RULES OF CIVIL PROCEDURE   **Rule 4**

 If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

 Please read the enclosed statement about the duty to avoid unnecessary expenses.

 I certify that this request is being sent to you on the date below.

Date:_____

_____
(Signature of the attorney
or unrepresented party)

_____
(Printed name)

_____
(Address)

_____
(E-mail address)

_____
(Telephone number)

RULE 4 WAIVER OF THE SERVICE OF SUMMONS.

<center>(Caption)</center>

 To (*name the plaintiff's attorney or the unrepresented plaintiff*):

 I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

 I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

 I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

 I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date:_____

_____
(Signature of the attorney
or unrepresented party)

_____
(Printed name)

_____
(Address)

_____
(E-mail address)

_____
(Telephone number)

(Attach the following)

Duty to Avoid Unnecessary Expenses
of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

‘‘Good cause’’ does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

## Rule 4.1. Serving Other Process

(a) In General. Process—other than a summons under Rule 4 or a subpoena under Rule 45—must be served by a United States marshal or deputy marshal or by a person specially appointed for that purpose. It may be served anywhere within the territorial limits of the state where the district court is located and, if authorized by a federal statute, beyond those limits. Proof of service must be made under Rule 4(*l*).

(b) Enforcing Orders: Committing for Civil Contempt. An order committing a person for civil contempt of a decree or injunction issued to enforce federal law may be served and enforced in any district. Any other order in a civil-contempt proceeding may be served only in the state where the issuing court is located or elsewhere in the United States within 100 miles from where the order was issued.

(As added Apr. 22, 1993, eff. Dec. 1, 1993; amended Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 5. Serving and Filing Pleadings and Other Papers

(a) Service: When Required.

(1) *In General.* Unless these rules provide otherwise, each of the following papers must be served on every party:

(A) an order stating that service is required;

(B) a pleading filed after the original complaint, unless the court orders otherwise under Rule 5(c) because there are numerous defendants;

(C) a discovery paper required to be served on a party, unless the court orders otherwise;

(D) a written motion, except one that may be heard ex parte; and

(E) a written notice, appearance, demand, or offer of judgment, or any similar paper.

(2) *If a Party Fails to Appear.* No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.

(3) *Seizing Property.* If an action is begun by seizing property and no person is or need be named as a defendant, any service required before the filing of an appearance, answer, or claim must be made on the person who had custody or possession of the property when it was seized.

(b) SERVICE: HOW MADE.

(1) *Serving an Attorney.* If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party.

(2) *Service in General.* A paper is served under this rule by:

(A) handing it to the person;

(B) leaving it:

(i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or

(ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

(C) mailing it to the person's last known address—in which event service is complete upon mailing;

(D) leaving it with the court clerk if the person has no known address;

(E) sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing—either of which events service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served; or

(F) delivering it by any other means that the person consented to in writing—in which event service is complete when the person making service delivers it to the agency designated to make delivery.

(3) *Using Court Facilities.* [Abrogated (Apr. 26, 2018, eff. Dec. 1, 2018.)]

(c) SERVING NUMEROUS DEFENDANTS.

(1) *In General.* If an action involves an unusually large number of defendants, the court may, on motion or on its own, order that:

(A) defendants' pleadings and replies to them need not be served on other defendants;

(B) any crossclaim, counterclaim, avoidance, or affirmative defense in those pleadings and replies to them will be treated as denied or avoided by all other parties; and

(C) filing any such pleading and serving it on the plaintiff constitutes notice of the pleading to all parties.

(2) *Notifying Parties.* A copy of every such order must be served on the parties as the court directs.

(d) FILING.

(1) *Required Filings; Certificate of Service.*

(A) *Papers after the Complaint.* Any paper after the complaint that is required to be served must be filed no later than a reasonable time after service. But disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission.

(B) *Certificate of Service.* No certificate of service is required when a paper is served by filing it with the court's electronic-filing system. When a paper that is required to be served is served by other means:

(i) if the paper is filed, a certificate of service must be filed with it or within a reasonable time after service; and

(ii) if the paper is not filed, a certificate of service need not be filed unless filing is required by court order or by local rule.

(2) *Nonelectronic Filing.* A paper not filed electronically is filed by delivering it:

(A) to the clerk; or

(B) to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk.

(3) *Electronic Filing and Signing.*

(A) *By a Represented Person—Generally Required; Exceptions.* A person represented by an attorney must file electronically, unless nonelectronic filing is allowed by the court for good cause or is allowed or required by local rule.

(B) *By an Unrepresented Person—When Allowed or Required.* A person not represented by an attorney:

(i) may file electronically only if allowed by court order or by local rule; and

(ii) may be required to file electronically only by court order, or by a local rule that includes reasonable exceptions.

(C) *Signing.* A filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature.

(D) *Same as a Written Paper.* A paper filed electronically is a written paper for purposes of these rules.

(4) *Acceptance by the Clerk.* The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice.

(As amended Jan. 21, 1963, eff. July 1, 1963; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 26, 2018, eff. Dec. 1, 2018.)

**Rule 5.1. Constitutional Challenge to a Statute—Notice, Certification, and Intervention**

(a) NOTICE BY A PARTY. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:

(1) file a notice of constitutional question stating the question and identifying the paper that raises it, if:

(A) a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or

(B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and

(2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned—or on the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

(b) CERTIFICATION BY THE COURT. The court must, under 28 U.S.C. §2403, certify to the appropriate attorney general that a statute has been questioned.

(c) INTERVENTION; FINAL DECISION ON THE MERITS. Unless the court sets a later time, the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier. Before the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional.

(d) NO FORFEITURE. A party's failure to file and serve the notice, or the court's failure to certify, does not forfeit a constitutional claim or defense that is otherwise timely asserted.

(As added Apr. 12, 2006, eff. Dec. 1, 2006; amended Apr. 30, 2007, eff. Dec. 1, 2007.)

**Rule 5.2. Privacy Protection For Filings Made with the Court**

(a) REDACTED FILINGS. Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:

(1) the last four digits of the social-security number and taxpayer-identification number;

(2) the year of the individual's birth;

(3) the minor's initials; and

(4) the last four digits of the financial-account number.

(b) EXEMPTIONS FROM THE REDACTION REQUIREMENT. The redaction requirement does not apply to the following:

(1) a financial-account number that identifies the property allegedly subject to forfeiture in a forfeiture proceeding;

(2) the record of an administrative or agency proceeding;

(3) the official record of a state-court proceeding;

(4) the record of a court or tribunal, if that record was not subject to the redaction requirement when originally filed;

(5) a filing covered by Rule 5.2(c) or (d); and

(6) a pro se filing in an action brought under 28 U.S.C. §§ 2241, 2254, or 2255.

(c) LIMITATIONS ON REMOTE ACCESS TO ELECTRONIC FILES; SOCIAL-SECURITY APPEALS AND IMMIGRATION CASES. Unless the court orders otherwise, in an action for benefits under the Social Security Act, and in an action or proceeding relating to an order of removal, to relief from removal, or to immigration benefits or detention, access to an electronic file is authorized as follows:

(1) the parties and their attorneys may have remote electronic access to any part of the case file, including the administrative record;

(2) any other person may have electronic access to the full record at the courthouse, but may have remote electronic access only to:

(A) the docket maintained by the court; and

(B) an opinion, order, judgment, or other disposition of the court, but not any other part of the case file or the administrative record.

(d) FILINGS MADE UNDER SEAL. The court may order that a filing be made under seal without redaction. The court may later unseal the filing or order the person who made the filing to file a redacted version for the public record.

(e) PROTECTIVE ORDERS. For good cause, the court may by order in a case:

(1) require redaction of additional information; or

(2) limit or prohibit a nonparty's remote electronic access to a document filed with the court.

(f) OPTION FOR ADDITIONAL UNREDACTED FILING UNDER SEAL. A person making a redacted filing may also file an unredacted copy under seal. The court must retain the unredacted copy as part of the record.

(g) OPTION FOR FILING A REFERENCE LIST. A filing that contains redacted information may be filed together with a reference list that identifies each item of redacted information and specifies an appropriate identifier that uniquely corresponds to each item listed. The list must be filed under seal and may be amended as of right. Any reference in the case to a listed identifier will be construed to refer to the corresponding item of information.

(h) WAIVER OF PROTECTION OF IDENTIFIERS. A person waives the protection of Rule 5.2(a) as to the person's own information by filing it without redaction and not under seal.

(As added Apr. 30, 2007, eff. Dec. 1, 2007.)

**Rule 6. Computing and Extending Time; Time for Motion Papers**

(a) COMPUTING TIME. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.

(1) *Period Stated in Days or a Longer Unit.* When the period is stated in days or a longer unit of time:

(A) exclude the day of the event that triggers the period;

(B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and

(C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

(2) *Period Stated in Hours.* When the period is stated in hours:

(A) begin counting immediately on the occurrence of the event that triggers the period;

(B) count every hour, including hours during intermediate Saturdays, Sundays, and legal holidays; and

(C) if the period would end on a Saturday, Sunday, or legal holiday, the period continues to run until the same time on the next day that is not a Saturday, Sunday, or legal holiday.

(3) *Inaccessibility of the Clerk's Office.* Unless the court orders otherwise, if the clerk's office is inaccessible:

(A) on the last day for filing under Rule 6(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday; or

(B) during the last hour for filing under Rule 6(a)(2), then the time for filing is extended to the same time on the first accessible day that is not a Saturday, Sunday, or legal holiday.

(4) *"Last Day" Defined.* Unless a different time is set by a statute, local rule, or court order, the last day ends:

(A) for electronic filing, at midnight in the court's time zone; and

(B) for filing by other means, when the clerk's office is scheduled to close.

(5) *"Next Day" Defined.* The "next day" is determined by continuing to count forward when the period is measured after an event and backward when measured before an event.

(6) *"Legal Holiday" Defined.* "Legal holiday" means:

(A) the day set aside by statute for observing New Year's Day, Martin Luther King Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, or Christmas Day;

(B) any day declared a holiday by the President or Congress; and

(C) for periods that are measured after an event, any other day declared a holiday by the state where the district court is located.

(b) EXTENDING TIME.

(1) *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:

(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

(2) *Exceptions.* A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

(c) MOTIONS, NOTICES OF HEARING, AND AFFIDAVITS.

(1) *In General.* A written motion and notice of the hearing must be served at least 14 days before the time specified for the hearing, with the following exceptions:

(A) when the motion may be heard ex parte;

(B) when these rules set a different time; or

(C) when a court order—which a party may, for good cause, apply for ex parte—sets a different time.

(2) *Supporting Affidavit.* Any affidavit supporting a motion must be served with the motion. Except as Rule 59(c) provides otherwise, any opposing affidavit must be served at least 7 days before the hearing, unless the court permits service at another time.

(d) ADDITIONAL TIME AFTER CERTAIN KINDS OF SERVICE. When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to), 3 days are added after the period would otherwise expire under Rule 6(a).

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Dec. 4, 1967, eff. July 1, 1968; Mar. 1, 1971, eff. July 1, 1971; Apr. 28, 1983, eff. Aug. 1, 1983; Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 26, 1999, eff. Dec. 1, 1999; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2016, eff. Dec. 1, 2016.)

## TITLE III. PLEADINGS AND MOTIONS

### Rule 7. Pleadings Allowed; Form of Motions and Other Papers

(a) PLEADINGS. Only these pleadings are allowed:

(1) a complaint;

(2) an answer to a complaint;

(3) an answer to a counterclaim designated as a counterclaim;

(4) an answer to a crossclaim;

(5) a third-party complaint;

(6) an answer to a third-party complaint; and

(7) if the court orders one, a reply to an answer.

(b) MOTIONS AND OTHER PAPERS.

(1) *In General.* A request for a court order must be made by motion. The motion must:

(A) be in writing unless made during a hearing or trial;

(B) state with particularity the grounds for seeking the order; and

(C) state the relief sought.

(2) *Form.* The rules governing captions and other matters of form in pleadings apply to motions and other papers.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Apr. 28, 1983, eff. Aug. 1, 1983; Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 7.1. Disclosure Statement

(a) WHO MUST FILE; CONTENTS.

(1) *Nongovernmental Corporations.* A nongovernmental corporate party or a nongovernmental corporation that seeks to intervene must file a statement that:

(A) identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or

(B) states that there is no such corporation.

(2) *Parties or Intervenors in a Diversity Case.* In an action in which jurisdiction is based on diversity under 28 U.S.C. §1332(a), a party or intervenor must, unless the court orders otherwise, file a disclosure statement. The statement must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party or intervenor:

(A) when the action is filed in or removed to federal court, and

(B) when any later event occurs that could affect the court's jurisdiction under §1332(a).

(b) TIME TO FILE; SUPPLEMENTAL FILING. A party, intervenor, or proposed intervenor must:

(1) file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court; and

(2) promptly file a supplemental statement if any required information changes.

(As added Apr. 29, 2002, eff. Dec. 1, 2002; amended Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 11, 2022, eff. Dec. 1, 2022.)

## Rule 8. General Rules of Pleading

(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

(b) DEFENSES; ADMISSIONS AND DENIALS.

(1) *In General.* In responding to a pleading, a party must:

(A) state in short and plain terms its defenses to each claim asserted against it; and

(B) admit or deny the allegations asserted against it by an opposing party.

(2) *Denials—Responding to the Substance.* A denial must fairly respond to the substance of the allegation.

(3) *General and Specific Denials.* A party that intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds—may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

(4) *Denying Part of an Allegation.* A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

(5) *Lacking Knowledge or Information.* A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

(6) *Effect of Failing to Deny.* An allegation—other than one relating to the amount of damages—is admitted if a responsive

pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

(c) AFFIRMATIVE DEFENSES.

(1) *In General.* In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

- accord and satisfaction;
- arbitration and award;
- assumption of risk;
- contributory negligence;
- duress;
- estoppel;
- failure of consideration;
- fraud;
- illegality;
- injury by fellow servant;
- laches;
- license;
- payment;
- release;
- res judicata;
- statute of frauds;
- statute of limitations; and
- waiver.

(2) *Mistaken Designation.* If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

(d) PLEADING TO BE CONCISE AND DIRECT; ALTERNATIVE STATEMENTS; INCONSISTENCY.

(1) *In General.* Each allegation must be simple, concise, and direct. No technical form is required.

(2) *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

(3) *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

(e) CONSTRUING PLEADINGS. Pleadings must be construed so as to do justice.

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 28, 2010, eff. Dec. 1, 2010.)

**Rule 9. Pleading Special Matters**

(a) CAPACITY OR AUTHORITY TO SUE; LEGAL EXISTENCE.

(1) *In General.* Except when required to show that the court has jurisdiction, a pleading need not allege:

(A) a party's capacity to sue or be sued;

(B) a party's authority to sue or be sued in a representative capacity; or

(C) the legal existence of an organized association of persons that is made a party.

(2) *Raising Those Issues*. To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

(b) FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

(c) CONDITIONS PRECEDENT. In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

(d) OFFICIAL DOCUMENT OR ACT. In pleading an official document or official act, it suffices to allege that the document was legally issued or the act legally done.

(e) JUDGMENT. In pleading a judgment or decision of a domestic or foreign court, a judicial or quasi-judicial tribunal, or a board or officer, it suffices to plead the judgment or decision without showing jurisdiction to render it.

(f) TIME AND PLACE. An allegation of time or place is material when testing the sufficiency of a pleading.

(g) SPECIAL DAMAGES. If an item of special damage is claimed, it must be specifically stated.

(h) ADMIRALTY OR MARITIME CLAIM.

(1) *How Designated*. If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

(2) *Designation for Appeal*. A case that includes an admiralty or maritime claim within this subdivision (h) is an admiralty case within 28 U.S.C. §1292(a)(3).

(As amended Feb. 28, 1966, eff. July 1, 1966; Dec. 4, 1967, eff. July 1, 1968; Mar. 30, 1970, eff. July 1, 1970; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 11, 1997, eff. Dec. 1, 1997; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 10. Form of Pleadings

(a) CAPTION; NAMES OF PARTIES. Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.

(b) PARAGRAPHS; SEPARATE STATEMENTS. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

(c) ADOPTION BY REFERENCE; EXHIBITS. A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions

(a) SIGNATURE. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) SANCTIONS.

(1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing

party the reasonable expenses, including attorney's fees, incurred for the motion.

(3) *On the Court's Initiative*. On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) *Nature of a Sanction*. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) *Limitations on Monetary Sanctions*. The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(6) *Requirements for an Order*. An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

(d) INAPPLICABILITY TO DISCOVERY. This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.

(As amended Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing

(a) TIME TO SERVE A RESPONSIVE PLEADING.

(1) *In General*. Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

(A) A defendant must serve an answer:

(i) within 21 days after being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

(B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

(C) A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

(2) *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity*. The United States, a United States agency, or a United States officer or employee sued only in an

official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

(3) *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

(4) *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

   (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

   (B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

(b) HOW TO PRESENT DEFENSES. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

   (1) lack of subject-matter jurisdiction;
   (2) lack of personal jurisdiction;
   (3) improper venue;
   (4) insufficient process;
   (5) insufficient service of process;
   (6) failure to state a claim upon which relief can be granted; and
   (7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

(c) MOTION FOR JUDGMENT ON THE PLEADINGS. After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

(d) RESULT OF PRESENTING MATTERS OUTSIDE THE PLEADINGS. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(e) MOTION FOR A MORE DEFINITE STATEMENT. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

(f) MOTION TO STRIKE. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

    (1) on its own; or

    (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(g) JOINING MOTIONS.

    (1) *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

    (2) *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(h) WAIVING AND PRESERVING CERTAIN DEFENSES.

    (1) *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)–(5) by:

        (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or

        (B) failing to either:

            (i) make it by motion under this rule; or

            (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

    (2) *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

        (A) in any pleading allowed or ordered under Rule 7(a);

        (B) by a motion under Rule 12(c); or

        (C) at trial.

    (3) *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

(i) HEARING BEFORE TRIAL. If a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 13. Counterclaim and Crossclaim

(a) COMPULSORY COUNTERCLAIM.

    (1) *In General.* A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:

        (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

        (B) does not require adding another party over whom the court cannot acquire jurisdiction.

    (2) *Exceptions.* The pleader need not state the claim if:

        (A) when the action was commenced, the claim was the subject of another pending action; or

(B) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule.

(b) PERMISSIVE COUNTERCLAIM. A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.

(c) RELIEF SOUGHT IN A COUNTERCLAIM. A counterclaim need not diminish or defeat the recovery sought by the opposing party. It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party.

(d) COUNTERCLAIM AGAINST THE UNITED STATES. These rules do not expand the right to assert a counterclaim—or to claim a credit—against the United States or a United States officer or agency.

(e) COUNTERCLAIM MATURING OR ACQUIRED AFTER PLEADING. The court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading.

(f) [ABROGATED.]

(g) CROSSCLAIM AGAINST A COPARTY. A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant.

(h) JOINING ADDITIONAL PARTIES. Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim.

(i) SEPARATE TRIALS; SEPARATE JUDGMENTS. If the court orders separate trials under Rule 42(b), it may enter judgment on a counterclaim or crossclaim under Rule 54(b) when it has jurisdiction to do so, even if the opposing party's claims have been dismissed or otherwise resolved.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 14. Third-Party Practice

(a) WHEN A DEFENDING PARTY MAY BRING IN A THIRD PARTY.

(1) *Timing of the Summons and Complaint.* A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

(2) *Third-Party Defendant's Claims and Defenses.* The person served with the summons and third-party complaint—the "third-party defendant":

(A) must assert any defense against the third-party plaintiff's claim under Rule 12;

(B) must assert any counterclaim against the third-party plaintiff under Rule 13(a), and may assert any counterclaim against the third-party plaintiff under Rule 13(b) or

any crossclaim against another third-party defendant under Rule 13(g);

   (C) may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim; and

   (D) may also assert against the plaintiff any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

  (3) *Plaintiff's Claims Against a Third-Party Defendant.* The plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The third-party defendant must then assert any defense under Rule 12 and any counterclaim under Rule 13(a), and may assert any counterclaim under Rule 13(b) or any crossclaim under Rule 13(g).

  (4) *Motion to Strike, Sever, or Try Separately.* Any party may move to strike the third-party claim, to sever it, or to try it separately.

  (5) *Third-Party Defendant's Claim Against a Nonparty.* A third-party defendant may proceed under this rule against a nonparty who is or may be liable to the third-party defendant for all or part of any claim against it.

  (6) *Third-Party Complaint In Rem.* If it is within the admiralty or maritime jurisdiction, a third-party complaint may be in rem. In that event, a reference in this rule to the "summons" includes the warrant of arrest, and a reference to the defendant or third-party plaintiff includes, when appropriate, a person who asserts a right under Supplemental Rule C(6)(a)(i) in the property arrested.

 (b) WHEN A PLAINTIFF MAY BRING IN A THIRD PARTY. When a claim is asserted against a plaintiff, the plaintiff may bring in a third party if this rule would allow a defendant to do so.

 (c) ADMIRALTY OR MARITIME CLAIM.

  (1) *Scope of Impleader.* If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff—for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.

  (2) *Defending Against a Demand for Judgment for the Plaintiff.* The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant. In that event, the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 15. Amended and Supplemental Pleadings

(a) AMENDMENTS BEFORE TRIAL.

(1) *Amending as a Matter of Course*. A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

(3) *Time to Respond*. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

(b) AMENDMENTS DURING AND AFTER TRIAL.

(1) *Based on an Objection at Trial*. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

(2) *For Issues Tried by Consent*. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

(c) RELATION BACK OF AMENDMENTS.

(1) *When an Amendment Relates Back*. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

(2) *Notice to the United States*. When the United States or a United States officer or agency is added as a defendant by

amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency.

(d) SUPPLEMENTAL PLEADINGS. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

(As amended Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Pub. L. 102–198, §11(a), Dec. 9, 1991, 105 Stat. 1626; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

**Rule 16. Pretrial Conferences; Scheduling; Management**

(a) PURPOSES OF A PRETRIAL CONFERENCE. In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as:

(1) expediting disposition of the action;

(2) establishing early and continuing control so that the case will not be protracted because of lack of management;

(3) discouraging wasteful pretrial activities;

(4) improving the quality of the trial through more thorough preparation; and

(5) facilitating settlement.

(b) SCHEDULING.

(1) *Scheduling Order*. Except in categories of actions exempted by local rule, the district judge—or a magistrate judge when authorized by local rule—must issue a scheduling order:

(A) after receiving the parties' report under Rule 26(f); or

(B) after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference.

(2) *Time to Issue*. The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared.

(3) *Contents of the Order*.

(A) *Required Contents*. The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.

(B) *Permitted Contents*. The scheduling order may:

(i) modify the timing of disclosures under Rules 26(a) and 26(e)(1);

(ii) modify the extent of discovery;

(iii) provide for disclosure, discovery, or preservation of electronically stored information;

(iv) include any agreements the parties reach for asserting claims of privilege or of protection as trial-

preparation material after information is produced, including agreements reached under Federal Rule of Evidence 502;

(v) direct that before moving for an order relating to discovery, the movant must request a conference with the court;

(vi) set dates for pretrial conferences and for trial; and

(vii) include other appropriate matters.

(4) *Modifying a Schedule.* A schedule may be modified only for good cause and with the judge's consent.

(c) ATTENDANCE AND MATTERS FOR CONSIDERATION AT A PRETRIAL CONFERENCE.

(1) *Attendance.* A represented party must authorize at least one of its attorneys to make stipulations and admissions about all matters that can reasonably be anticipated for discussion at a pretrial conference. If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement.

(2) *Matters for Consideration.* At any pretrial conference, the court may consider and take appropriate action on the following matters:

(A) formulating and simplifying the issues, and eliminating frivolous claims or defenses;

(B) amending the pleadings if necessary or desirable;

(C) obtaining admissions and stipulations about facts and documents to avoid unnecessary proof, and ruling in advance on the admissibility of evidence;

(D) avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702;

(E) determining the appropriateness and timing of summary adjudication under Rule 56;

(F) controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37;

(G) identifying witnesses and documents, scheduling the filing and exchange of any pretrial briefs, and setting dates for further conferences and for trial;

(H) referring matters to a magistrate judge or a master;

(I) settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule;

(J) determining the form and content of the pretrial order;

(K) disposing of pending motions;

(L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems;

(M) ordering a separate trial under Rule 42(b) of a claim, counterclaim, crossclaim, third-party claim, or particular issue;

(N) ordering the presentation of evidence early in the trial on a manageable issue that might, on the evidence,

be the basis for a judgment as a matter of law under Rule 50(a) or a judgment on partial findings under Rule 52(c);

    (O) establishing a reasonable limit on the time allowed to present evidence; and

    (P) facilitating in other ways the just, speedy, and inexpensive disposition of the action.

(d) PRETRIAL ORDERS. After any conference under this rule, the court should issue an order reciting the action taken. This order controls the course of the action unless the court modifies it.

(e) FINAL PRETRIAL CONFERENCE AND ORDERS. The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice.

(f) SANCTIONS.

    (1) *In General.* On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney:

        (A) fails to appear at a scheduling or other pretrial conference;

        (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or

        (C) fails to obey a scheduling or other pretrial order.

    (2) *Imposing Fees and Costs.* Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

(As amended Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015.)

## TITLE IV. PARTIES

## Rule 17. Plaintiff and Defendant; Capacity; Public Officers

(a) REAL PARTY IN INTEREST.

    (1) *Designation in General.* An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:

        (A) an executor;

        (B) an administrator;

        (C) a guardian;

        (D) a bailee;

        (E) a trustee of an express trust;

        (F) a party with whom or in whose name a contract has been made for another's benefit; and

        (G) a party authorized by statute.

    (2) *Action in the Name of the United States for Another's Use or Benefit.* When a federal statute so provides, an action for another's use or benefit must be brought in the name of the United States.

Case 4:19-cv-07123-PJH   Document 288-1   Filed 02/14/24   Page 71 of 397

(3) *Joinder of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

(b) CAPACITY TO SUE OR BE SUED. Capacity to sue or be sued is determined as follows:

(1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

(2) for a corporation, by the law under which it was organized; and

(3) for all other parties, by the law of the state where the court is located, except that:

(A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and

(B) 28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

(c) MINOR OR INCOMPETENT PERSON.

(1) *With a Representative.* The following representatives may sue or defend on behalf of a minor or an incompetent person:

(A) a general guardian;

(B) a committee;

(C) a conservator; or

(D) a like fiduciary.

(2) *Without a Representative.* A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

(d) PUBLIC OFFICER'S TITLE AND NAME. A public officer who sues or is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 25, 1988, eff. Aug. 1, 1988; Pub. L. 100–690, title VII, § 7049, Nov. 18, 1988, 102 Stat. 4401; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 18. Joinder of Claims

(a) IN GENERAL. A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.

(b) JOINDER OF CONTINGENT CLAIMS. A party may join two claims even though one of them is contingent on the disposition of the other; but the court may grant relief only in accordance with the parties' relative substantive rights. In particular, a plaintiff may state a claim for money and a claim to set aside a conveyance that is fraudulent as to that plaintiff, without first obtaining a judgment for the money.

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

**Rule 19. Required Joinder of Parties**

(a) Persons Required to Be Joined if Feasible.

(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

(c) Pleading the Reasons for Nonjoinder. When asserting a claim for relief, a party must state:

(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and

(2) the reasons for not joining that person.

(d) Exception for Class Actions. This rule is subject to Rule 23.

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

**Rule 20. Permissive Joinder of Parties**

(a) Persons Who May Join or Be Joined.

(1) *Plaintiffs.* Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

(2) *Defendants.* Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem—may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

(3) *Extent of Relief.* Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

(b) PROTECTIVE MEASURES. The court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 21. Misjoinder and Nonjoinder of Parties

Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 22. Interpleader

(a) GROUNDS.

(1) *By a Plaintiff.* Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:

(A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or

(B) the plaintiff denies liability in whole or in part to any or all of the claimants.

(2) *By a Defendant.* A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.

(b) RELATION TO OTHER RULES AND STATUTES. This rule supplements—and does not limit—the joinder of parties allowed by Rule 20. The remedy this rule provides is in addition to—and does not supersede or limit—the remedy provided by 28 U.S.C. §§ 1335, 1397, and 2361. An action under those statutes must be conducted under these rules.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 23. Class Actions

(a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

(c) CERTIFICATION ORDER; NOTICE TO CLASS MEMBERS; JUDGMENT; ISSUES CLASSES; SUBCLASSES.

(1) *Certification Order.*

(A) *Time to Issue.* At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

(B) *Defining the Class; Appointing Class Counsel.* An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

(C) *Altering or Amending the Order*. An order that grants or denies class certification may be altered or amended before final judgment.

(2) *Notice*.

(A) *For (b)(1) or (b)(2) Classes*. For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

(B) *For (b)(3) Classes*. For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

(3) *Judgment*. Whether or not favorable to the class, the judgment in a class action must:

(A) for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and

(B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

(4) *Particular Issues*. When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

(5) *Subclasses*. When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.

(d) CONDUCTING THE ACTION.

(1) *In General*. In conducting an action under this rule, the court may issue orders that:

(A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

(B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of:

(i) any step in the action;

(ii) the proposed extent of the judgment; or

(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to

intervene and present claims or defenses, or to otherwise come into the action;

(C) impose conditions on the representative parties or on intervenors;

(D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

(E) deal with similar procedural matters.

(2) *Combining and Amending Orders.* An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

(e) SETTLEMENT, VOLUNTARY DISMISSAL, OR COMPROMISE. The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) *Notice to the Class.*

(A) *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

(B) *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

(i) approve the proposal under Rule 23(e)(2); and

(ii) certify the class for purposes of judgment on the proposal.

(2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

(3) *Identifying Agreements.* The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) *New Opportunity to Be Excluded.* If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to

request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) *Class-Member Objections.*

(A) *In General.* Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.

(B) *Court Approval Required for Payment in Connection with an Objection.* Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with:

(i) forgoing or withdrawing an objection, or

(ii) forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal.

(C) *Procedure for Approval After an Appeal.* If approval under Rule 23(e)(5)(B) has not been obtained before an appeal is docketed in the court of appeals, the procedure of Rule 62.1 applies while the appeal remains pending.

(f) APPEALS. A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered, or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

(g) CLASS COUNSEL.

(1) *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

(2) *Standard for Appointing Class Counsel.* When one applicant seeks appointment as class counsel, the court may appoint

that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

(3) *Interim Counsel*. The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

(4) *Duty of Class Counsel*. Class counsel must fairly and adequately represent the interests of the class.

(h) ATTORNEY'S FEES AND NONTAXABLE COSTS. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 24, 1998, eff. Dec. 1, 1998; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 26, 2018, eff. Dec. 1, 2018.)

## Rule 23.1. Derivative Actions

(a) PREREQUISITES. This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

(b) PLEADING REQUIREMENTS. The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

(c) SETTLEMENT, DISMISSAL, AND COMPROMISE. A derivative action may be settled, voluntarily dismissed, or compromised only

with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

(As added Feb. 28, 1966, eff. July 1, 1966; amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

**Rule 23.2. Actions Relating to Unincorporated Associations**

This rule applies to an action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties. The action may be maintained only if it appears that those parties will fairly and adequately protect the interests of the association and its members. In conducting the action, the court may issue any appropriate orders corresponding with those in Rule 23(d), and the procedure for settlement, voluntary dismissal, or compromise must correspond with the procedure in Rule 23(e).

(As added Feb. 28, 1966, eff. July 1, 1966; amended Apr. 30, 2007, eff. Dec. 1, 2007.)

**Rule 24. Intervention**

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) NOTICE AND PLEADING REQUIRED. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966;

Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 25. Substitution of Parties

(a) DEATH.

(1) *Substitution if the Claim Is Not Extinguished.* If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

(2) *Continuation Among the Remaining Parties.* After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties. The death should be noted on the record.

(3) *Service.* A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

(b) INCOMPETENCY. If a party becomes incompetent, the court may, on motion, permit the action to be continued by or against the party's representative. The motion must be served as provided in Rule 25(a)(3).

(c) TRANSFER OF INTEREST. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

(d) PUBLIC OFFICERS; DEATH OR SEPARATION FROM OFFICE. An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 17, 1961, eff. July 19, 1961; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

TITLE V. DISCLOSURES AND DISCOVERY

## Rule 26. Duty to Disclose; General Provisions Governing Discovery

(a) REQUIRED DISCLOSURES.

(1) *Initial Disclosure.*

(A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable

information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

(B) *Proceedings Exempt from Initial Disclosure.* The following proceedings are exempt from initial disclosure:

(i) an action for review on an administrative record;

(ii) a forfeiture action in rem arising from a federal statute;

(iii) a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence;

(iv) an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision;

(v) an action to enforce or quash an administrative summons or subpoena;

(vi) an action by the United States to recover benefit payments;

(vii) an action by the United States to collect on a student loan guaranteed by the United States;

(viii) a proceeding ancillary to a proceeding in another court; and

(ix) an action to enforce an arbitration award.

(C) *Time for Initial Disclosures—In General.* A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

(D) *Time for Initial Disclosures—For Parties Served or Joined Later.* A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

(E) *Basis for Initial Disclosure; Unacceptable Excuses*. A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

(2) *Disclosure of Expert Testimony*.

(A) *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) *Supplementing the Disclosure*. The parties must supplement these disclosures when required under Rule 26(e).

(3) *Pretrial Disclosures*.

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

(i) the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises;

(ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

(iii) an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

(B) *Time for Pretrial Disclosures; Objections.* Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made—except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause.

(4) *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

(b) DISCOVERY SCOPE AND LIMITS.

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

(2) *Limitations on Frequency and Extent.*

(A) *When Permitted.* By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

(B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective

order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

  (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

  (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

  (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

(3) *Trial Preparation: Materials.*

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

  (i) they are otherwise discoverable under Rule 26(b)(1); and

  (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

(C) *Previous Statement.* Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

  (i) a written statement that the person has signed or otherwise adopted or approved; or

  (ii) a contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim the person's oral statement.

(4) *Trial Preparation: Experts.*

(A) *Deposition of an Expert Who May Testify.* A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule

26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

(B) *Trial-Preparation Protection for Draft Reports or Disclosures.* Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

(C) *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

(i) relate to compensation for the expert's study or testimony;

(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

(D) *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(E) *Payment.* Unless manifest injustice would result, the court must require that the party seeking discovery:

(i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

(ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

(5) *Claiming Privilege or Protecting Trial-Preparation Materials.*

(A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(B) *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the

claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

(c) PROTECTIVE ORDERS.

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2) *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

(3) *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

(d) TIMING AND SEQUENCE OF DISCOVERY.

(1) *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

(2) *Early Rule 34 Requests.*

(A) *Time to Deliver.* More than 21 days after the summons and complaint are served on a party, a request under Rule 34 may be delivered:

(i) to that party by any other party, and

(ii) by that party to any plaintiff or to any other party that has been served.

**Rule 26**                    FEDERAL RULES OF CIVIL PROCEDURE                    44

(B) *When Considered Served.* The request is considered to have been served at the first Rule 26(f) conference.

(3) *Sequence.* Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

(A) methods of discovery may be used in any sequence; and

(B) discovery by one party does not require any other party to delay its discovery.

(e) SUPPLEMENTING DISCLOSURES AND RESPONSES.

(1) *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

(2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

(f) CONFERENCE OF THE PARTIES; PLANNING FOR DISCOVERY.

(1) *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).

(2) *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

(3) *Discovery Plan.* A discovery plan must state the parties' views and proposals on:

(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

(C) any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;

(D) any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502;

(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

(4) *Expedited Schedule.* If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule:

(A) require the parties' conference to occur less than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b); and

(B) require the written report outlining the discovery plan to be filed less than 14 days after the parties' conference, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.

(g) SIGNING DISCLOSURES AND DISCOVERY REQUESTS, RESPONSES, AND OBJECTIONS.

(1) *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

(2) *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

(3) *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on

motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 28, 2010, eff. Dec. 1, 2010; Apr. 29, 2015, eff. Dec. 1, 2015.)

## Rule 27. Depositions to Perpetuate Testimony

(a) BEFORE AN ACTION IS FILED.

(1) *Petition.* A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides. The petition must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony. The petition must be titled in the petitioner's name and must show:

(A) that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought;

(B) the subject matter of the expected action and the petitioner's interest;

(C) the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it;

(D) the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known; and

(E) the name, address, and expected substance of the testimony of each deponent.

(2) *Notice and Service.* At least 21 days before the hearing date, the petitioner must serve each expected adverse party with a copy of the petition and a notice stating the time and place of the hearing. The notice may be served either inside or outside the district or state in the manner provided in Rule 4. If that service cannot be made with reasonable diligence on an expected adverse party, the court may order service by publication or otherwise. The court must appoint an attorney to represent persons not served in the manner provided in Rule 4 and to cross-examine the deponent if an unserved person is not otherwise represented. If any expected adverse party is a minor or is incompetent, Rule 17(c) applies.

(3) *Order and Examination.* If satisfied that perpetuating the testimony may prevent a failure or delay of justice, the court must issue an order that designates or describes the persons whose depositions may be taken, specifies the subject matter of the examinations, and states whether the depositions will be taken orally or by written interrogatories. The depositions may then be taken under these rules, and the court may issue orders like those authorized by Rules 34 and 35. A reference in these rules to the court where an action is pending means, for purposes of this rule, the court where the petition for the deposition was filed.

(4) *Using the Deposition.* A deposition to perpetuate testimony may be used under Rule 32(a) in any later-filed district-court action involving the same subject matter if the deposition either was taken under these rules or, although not so taken, would be admissible in evidence in the courts of the state where it was taken.

(b) PENDING APPEAL.

(1) *In General.* The court where a judgment has been rendered may, if an appeal has been taken or may still be taken, permit a party to depose witnesses to perpetuate their testimony for use in the event of further proceedings in that court.

(2) *Motion.* The party who wants to perpetuate testimony may move for leave to take the depositions, on the same notice and service as if the action were pending in the district court. The motion must show:

(A) the name, address, and expected substance of the testimony of each deponent; and

(B) the reasons for perpetuating the testimony.

(3) *Court Order.* If the court finds that perpetuating the testimony may prevent a failure or delay of justice, the court may permit the depositions to be taken and may issue orders like those authorized by Rules 34 and 35. The depositions may be taken and used as any other deposition taken in a pending district-court action.

(c) PERPETUATION BY AN ACTION. This rule does not limit a court's power to entertain an action to perpetuate testimony.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 1, 1971, eff. July 1, 1971; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

### Rule 28. Persons Before Whom Depositions May Be Taken

(a) WITHIN THE UNITED STATES.

(1) *In General.* Within the United States or a territory or insular possession subject to United States jurisdiction, a deposition must be taken before:

(A) an officer authorized to administer oaths either by federal law or by the law in the place of examination; or

(B) a person appointed by the court where the action is pending to administer oaths and take testimony.

(2) *Definition of ''Officer.''* The term ''officer'' in Rules 30, 31, and 32 includes a person appointed by the court under this rule or designated by the parties under Rule 29(a).

(b) IN A FOREIGN COUNTRY.

(1) *In General.* A deposition may be taken in a foreign country:

(A) under an applicable treaty or convention;

(B) under a letter of request, whether or not captioned a ''letter rogatory'';

(C) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; or

(D) before a person commissioned by the court to administer any necessary oath and take testimony.

(2) *Issuing a Letter of Request or a Commission.* A letter of request, a commission, or both may be issued:

 (A) on appropriate terms after an application and notice of it; and

 (B) without a showing that taking the deposition in another manner is impracticable or inconvenient.

(3) *Form of a Request, Notice, or Commission.* When a letter of request or any other device is used according to a treaty or convention, it must be captioned in the form prescribed by that treaty or convention. A letter of request may be addressed ''To the Appropriate Authority in [name of country].'' A deposition notice or a commission must designate by name or descriptive title the person before whom the deposition is to be taken.

(4) *Letter of Request—Admitting Evidence.* Evidence obtained in response to a letter of request need not be excluded merely because it is not a verbatim transcript, because the testimony was not taken under oath, or because of any similar departure from the requirements for depositions taken within the United States.

(c) DISQUALIFICATION. A deposition must not be taken before a person who is any party's relative, employee, or attorney; who is related to or employed by any party's attorney; or who is financially interested in the action.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Apr. 29, 1980, eff. Aug. 1, 1980; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 1, 2007, eff. Dec. 1, 2007.)

## Rule 29. Stipulations About Discovery Procedure

Unless the court orders otherwise, the parties may stipulate that:

(a) a deposition may be taken before any person, at any time or place, on any notice, and in the manner specified—in which event it may be used in the same way as any other deposition; and

(b) other procedures governing or limiting discovery be modified—but a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery, for hearing a motion, or for trial.

(As amended Mar. 30, 1970, eff. July 1, 1970; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 30. Depositions by Oral Examination

(a) WHEN A DEPOSITION MAY BE TAKEN.

(1) *Without Leave.* A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.

(2) *With Leave.* A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):

 (A) if the parties have not stipulated to the deposition and:

  (i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the

plaintiffs, or by the defendants, or by the third-party defendants;

    (ii) the deponent has already been deposed in the case; or

    (iii) the party seeks to take the deposition before the time specified in Rule 26(d), unless the party certifies in the notice, with supporting facts, that the deponent is expected to leave the United States and be unavailable for examination in this country after that time; or

  (B) if the deponent is confined in prison.

(b) NOTICE OF THE DEPOSITION; OTHER FORMAL REQUIREMENTS.

  (1) *Notice in General.* A party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs.

  (2) *Producing Documents.* If a subpoena duces tecum is to be served on the deponent, the materials designated for production, as set out in the subpoena, must be listed in the notice or in an attachment. The notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition.

  (3) *Method of Recording.*

    (A) *Method Stated in the Notice.* The party who notices the deposition must state in the notice the method for recording the testimony. Unless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means. The noticing party bears the recording costs. Any party may arrange to transcribe a deposition.

    (B) *Additional Method.* With prior notice to the deponent and other parties, any party may designate another method for recording the testimony in addition to that specified in the original notice. That party bears the expense of the additional record or transcript unless the court orders otherwise.

  (4) *By Remote Means.* The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means. For the purpose of this rule and Rules 28(a), 37(a)(2), and 37(b)(1), the deposition takes place where the deponent answers the questions.

  (5) *Officer's Duties.*

    (A) *Before the Deposition.* Unless the parties stipulate otherwise, a deposition must be conducted before an officer appointed or designated under Rule 28. The officer must begin the deposition with an on-the-record statement that includes:

      (i) the officer's name and business address;

      (ii) the date, time, and place of the deposition;

      (iii) the deponent's name;

      (iv) the officer's administration of the oath or affirmation to the deponent; and

      (v) the identity of all persons present.

(B) *Conducting the Deposition; Avoiding Distortion.* If the deposition is recorded nonstenographically, the officer must repeat the items in Rule 30(b)(5)(A)(i)–(iii) at the beginning of each unit of the recording medium. The deponent's and attorneys' appearance or demeanor must not be distorted through recording techniques.

(C) *After the Deposition.* At the end of a deposition, the officer must state on the record that the deposition is complete and must set out any stipulations made by the attorneys about custody of the transcript or recording and of the exhibits, or about any other pertinent matters.

(6) *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

(c) EXAMINATION AND CROSS-EXAMINATION; RECORD OF THE EXAMINATION; OBJECTIONS; WRITTEN QUESTIONS.

(1) *Examination and Cross-Examination.* The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615. After putting the deponent under oath or affirmation, the officer must record the testimony by the method designated under Rule 30(b)(3)(A). The testimony must be recorded by the officer personally or by a person acting in the presence and under the direction of the officer.

(2) *Objections.* An objection at the time of the examination— whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

(3) *Participating Through Written Questions.* Instead of participating in the oral examination, a party may serve written questions in a sealed envelope on the party noticing the deposition, who must deliver them to the officer. The officer must ask the deponent those questions and record the answers verbatim.

(d) DURATION; SANCTION; MOTION TO TERMINATE OR LIMIT.

(1) *Duration.* Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

(2) *Sanction.* The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent.

(3) *Motion to Terminate or Limit.*

(A) *Grounds.* At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

(B) *Order.* The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). If terminated, the deposition may be resumed only by order of the court where the action is pending.

(C) *Award of Expenses.* Rule 37(a)(5) applies to the award of expenses.

(e) REVIEW BY THE WITNESS; CHANGES.

(1) *Review; Statement of Changes.* On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) *Changes Indicated in the Officer's Certificate.* The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

(f) CERTIFICATION AND DELIVERY; EXHIBITS; COPIES OF THE TRANSCRIPT OR RECORDING; FILING.

(1) *Certification and Delivery.* The officer must certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony. The certificate must accompany the record of the deposition. Unless the court orders otherwise, the officer must seal the deposition in an envelope or package bearing the title of the action and marked ''Deposition of [witness's name]'' and must promptly send it to the attorney who arranged for the transcript or recording. The attorney must store it under conditions that will protect it against loss, destruction, tampering, or deterioration.

(2) *Documents and Tangible Things.*

(A) *Originals and Copies.* Documents and tangible things produced for inspection during a deposition must, on a party's request, be marked for identification and attached to

the deposition. Any party may inspect and copy them. But if the person who produced them wants to keep the originals, the person may:

(i) offer copies to be marked, attached to the deposition, and then used as originals—after giving all parties a fair opportunity to verify the copies by comparing them with the originals; or

(ii) give all parties a fair opportunity to inspect and copy the originals after they are marked—in which event the originals may be used as if attached to the deposition.

(B) *Order Regarding the Originals.* Any party may move for an order that the originals be attached to the deposition pending final disposition of the case.

(3) *Copies of the Transcript or Recording.* Unless otherwise stipulated or ordered by the court, the officer must retain the stenographic notes of a deposition taken stenographically or a copy of the recording of a deposition taken by another method. When paid reasonable charges, the officer must furnish a copy of the transcript or recording to any party or the deponent.

(4) *Notice of Filing.* A party who files the deposition must promptly notify all other parties of the filing.

(g) Failure to Attend a Deposition or Serve a Subpoena; Expenses. A party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to:

(1) attend and proceed with the deposition; or

(2) serve a subpoena on a nonparty deponent, who consequently did not attend.

(As amended Jan. 21, 1963, eff. July 1, 1963; Mar. 30, 1970, eff. July 1, 1970; Mar. 1, 1971, eff. July 1, 1971; Nov. 20, 1972, eff. July 1, 1975; Apr. 29, 1980, eff. Aug. 1, 1980; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015; Apr. 27, 2020, eff. Dec. 1, 2020.)

## Rule 31. Depositions by Written Questions

(a) When a Deposition May Be Taken.

(1) *Without Leave.* A party may, by written questions, depose any person, including a party, without leave of court except as provided in Rule 31(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.

(2) *With Leave.* A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):

(A) if the parties have not stipulated to the deposition and:

(i) the deposition would result in more than 10 depositions being taken under this rule or Rule 30 by the plaintiffs, or by the defendants, or by the third-party defendants;

(ii) the deponent has already been deposed in the case; or

     (iii) the party seeks to take a deposition before the time specified in Rule 26(d); or

    (B) if the deponent is confined in prison.

   (3) *Service; Required Notice.* A party who wants to depose a person by written questions must serve them on every other party, with a notice stating, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs. The notice must also state the name or descriptive title and the address of the officer before whom the deposition will be taken.

   (4) *Questions Directed to an Organization.* A public or private corporation, a partnership, an association, or a governmental agency may be deposed by written questions in accordance with Rule 30(b)(6).

   (5) *Questions from Other Parties.* Any questions to the deponent from other parties must be served on all parties as follows: cross-questions, within 14 days after being served with the notice and direct questions; redirect questions, within 7 days after being served with cross-questions; and recross-questions, within 7 days after being served with redirect questions. The court may, for good cause, extend or shorten these times.

 (b) DELIVERY TO THE OFFICER; OFFICER'S DUTIES. The party who noticed the deposition must deliver to the officer a copy of all the questions served and of the notice. The officer must promptly proceed in the manner provided in Rule 30(c), (e), and (f) to:

   (1) take the deponent's testimony in response to the questions;

   (2) prepare and certify the deposition; and

   (3) send it to the party, attaching a copy of the questions and of the notice.

 (c) NOTICE OF COMPLETION OR FILING.

   (1) *Completion.* The party who noticed the deposition must notify all other parties when it is completed.

   (2) *Filing.* A party who files the deposition must promptly notify all other parties of the filing.

(As amended Mar. 30, 1970, eff. July 1, 1970; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015.)

## Rule 32. Using Depositions in Court Proceedings

 (a) USING DEPOSITIONS.

   (1) *In General.* At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

    (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;

    (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

    (C) the use is allowed by Rule 32(a)(2) through (8).

   (2) *Impeachment and Other Uses.* Any party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence.

(3) *Deposition of Party, Agent, or Designee.* An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4).

(4) *Unavailable Witness.* A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:

(A) that the witness is dead;

(B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;

(C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;

(D) that the party offering the deposition could not procure the witness's attendance by subpoena; or

(E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

(5) *Limitations on Use.*

(A) *Deposition Taken on Short Notice.* A deposition must not be used against a party who, having received less than 14 days' notice of the deposition, promptly moved for a protective order under Rule 26(c)(1)(B) requesting that it not be taken or be taken at a different time or place—and this motion was still pending when the deposition was taken.

(B) *Unavailable Deponent; Party Could Not Obtain an Attorney.* A deposition taken without leave of court under the unavailability provision of Rule 30(a)(2)(A)(iii) must not be used against a party who shows that, when served with the notice, it could not, despite diligent efforts, obtain an attorney to represent it at the deposition.

(6) *Using Part of a Deposition.* If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts.

(7) *Substituting a Party.* Substituting a party under Rule 25 does not affect the right to use a deposition previously taken.

(8) *Deposition Taken in an Earlier Action.* A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

(b) OBJECTIONS TO ADMISSIBILITY. Subject to Rules 28(b) and 32(d)(3), an objection may be made at a hearing or trial to the admission of any deposition testimony that would be inadmissible if the witness were present and testifying.

(c) FORM OF PRESENTATION. Unless the court orders otherwise, a party must provide a transcript of any deposition testimony the

party offers, but may provide the court with the testimony in non-transcript form as well. On any party's request, deposition testimony offered in a jury trial for any purpose other than impeachment must be presented in nontranscript form, if available, unless the court for good cause orders otherwise.

(d) WAIVER OF OBJECTIONS.

(1) *To the Notice.* An objection to an error or irregularity in a deposition notice is waived unless promptly served in writing on the party giving the notice.

(2) *To the Officer's Qualification.* An objection based on disqualification of the officer before whom a deposition is to be taken is waived if not made:

(A) before the deposition begins; or

(B) promptly after the basis for disqualification becomes known or, with reasonable diligence, could have been known.

(3) *To the Taking of the Deposition.*

(A) *Objection to Competence, Relevance, or Materiality.* An objection to a deponent's competence—or to the competence, relevance, or materiality of testimony—is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time.

(B) *Objection to an Error or Irregularity.* An objection to an error or irregularity at an oral examination is waived if:

(i) it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time; and

(ii) it is not timely made during the deposition.

(C) *Objection to a Written Question.* An objection to the form of a written question under Rule 31 is waived if not served in writing on the party submitting the question within the time for serving responsive questions or, if the question is a recross-question, within 7 days after being served with it.

(4) *To Completing and Returning the Deposition.* An objection to how the officer transcribed the testimony—or prepared, signed, certified, sealed, endorsed, sent, or otherwise dealt with the deposition—is waived unless a motion to suppress is made promptly after the error or irregularity becomes known or, with reasonable diligence, could have been known.

(As amended Mar. 30, 1970, eff. July 1, 1970; Nov. 20, 1972, eff. July 1, 1975; Apr. 29, 1980, eff. Aug. 1, 1980; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 33. Interrogatories to Parties

(a) IN GENERAL.

(1) *Number.* Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2).

(2) *Scope.* An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

(b) ANSWERS AND OBJECTIONS.

(1) *Responding Party.* The interrogatories must be answered:

(A) by the party to whom they are directed; or

(B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

(2) *Time to Respond.* The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(3) *Answering Each Interrogatory.* Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

(4) *Objections.* The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

(5) *Signature.* The person who makes the answers must sign them, and the attorney who objects must sign any objections.

(c) USE. An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence.

(d) OPTION TO PRODUCE BUSINESS RECORDS. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015.)

**Rule 34. Producing Documents, Electronically Stored Information, and Tangible Things, or Entering onto Land, for Inspection and Other Purposes**

(a) IN GENERAL. A party may serve on any other party a request within the scope of Rule 26(b):

(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; or

(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

(b) PROCEDURE.

(1) *Contents of the Request.* The request:

(A) must describe with reasonable particularity each item or category of items to be inspected;

(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and

(C) may specify the form or forms in which electronically stored information is to be produced.

(2) *Responses and Objections.*

(A) *Time to Respond.* The party to whom the request is directed must respond in writing within 30 days after being served or—if the request was delivered under Rule 26(d)(2)—within 30 days after the parties' first Rule 26(f) conference. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(B) *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

(C) *Objections.* An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

(D) *Responding to a Request for Production of Electronically Stored Information.* The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form—or if no form was specified in the request—the party must state the form or forms it intends to use.

(E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

(c) NONPARTIES. As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015.)

## Rule 35. Physical and Mental Examinations

(a) ORDER FOR AN EXAMINATION.

(1) *In General*. The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

(2) *Motion and Notice; Contents of the Order*. The order:

(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and

(B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

(b) EXAMINER'S REPORT.

(1) *Request by the Party or Person Examined*. The party who moved for the examination must, on request, deliver to the requester a copy of the examiner's report, together with like reports of all earlier examinations of the same condition. The request may be made by the party against whom the examination order was issued or by the person examined.

(2) *Contents*. The examiner's report must be in writing and must set out in detail the examiner's findings, including diagnoses, conclusions, and the results of any tests.

(3) *Request by the Moving Party*. After delivering the reports, the party who moved for the examination may request—and is entitled to receive—from the party against whom the examination order was issued like reports of all earlier or later examinations of the same condition. But those reports need not be delivered by the party with custody or control of the person examined if the party shows that it could not obtain them.

(4) *Waiver of Privilege*. By requesting and obtaining the examiner's report, or by deposing the examiner, the party examined waives any privilege it may have—in that action or any other action involving the same controversy—concerning testimony about all examinations of the same condition.

(5) *Failure to Deliver a Report.* The court on motion may order—on just terms—that a party deliver the report of an examination. If the report is not provided, the court may exclude the examiner's testimony at trial.

(6) *Scope.* This subdivision (b) applies also to an examination made by the parties' agreement, unless the agreement states otherwise. This subdivision does not preclude obtaining an examiner's report or deposing an examiner under other rules.

(As amended Mar. 30, 1970, eff. July 1, 1970; Mar. 2, 1987, eff. Aug. 1, 1987; Pub. L. 100–690, title VII, §7047(b), Nov. 18, 1988, 102 Stat. 4401; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 36. Requests for Admission

(a) SCOPE AND PROCEDURE.

(1) *Scope.* A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:

(A) facts, the application of law to fact, or opinions about either; and

(B) the genuineness of any described documents.

(2) *Form; Copy of a Document.* Each matter must be separately stated. A request to admit the genuineness of a document must be accompanied by a copy of the document unless it is, or has been, otherwise furnished or made available for inspection and copying.

(3) *Time to Respond; Effect of Not Responding.* A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

(4) *Answer.* If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

(5) *Objections.* The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

(6) *Motion Regarding the Sufficiency of an Answer or Objection.* The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until

a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses.

(b) EFFECT OF AN ADMISSION; WITHDRAWING OR AMENDING IT. A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Mar. 30, 1970, eff. July 1, 1970; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions

(a) MOTION FOR AN ORDER COMPELLING DISCLOSURE OR DISCOVERY.

(1) *In General*. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

(2) *Appropriate Court*. A motion for an order to a party must be made in the court where the action is pending. A motion for an order to a nonparty must be made in the court where the discovery is or will be taken.

(3) *Specific Motions*.

(A) *To Compel Disclosure*. If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.

(B) *To Compel a Discovery Response*. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

(i) a deponent fails to answer a question asked under Rule 30 or 31;

(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

(iii) a party fails to answer an interrogatory submitted under Rule 33; or

(iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

(C) *Related to a Deposition*. When taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order.

(4) *Evasive or Incomplete Disclosure, Answer, or Response*. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

(5) *Payment of Expenses; Protective Orders*.

(A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing)*. If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

(B) *If the Motion Is Denied*. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

(C) *If the Motion Is Granted in Part and Denied in Part*. If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

(b) FAILURE TO COMPLY WITH A COURT ORDER.

(1) *Sanctions Sought in the District Where the Deposition Is Taken*. If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court. If a deposition-related motion is transferred to the court where the action is pending, and that court orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of either the court where the discovery is taken or the court where the action is pending.

(2) *Sanctions Sought in the District Where the Action Is Pending*.

(A) *For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

(B) *For Not Producing a Person for Examination.* If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)–(vi), unless the disobedient party shows that it cannot produce the other person.

(C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.

(1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

(2) *Failure to Admit.* If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:

(A) the request was held objectionable under Rule 36(a);

(B) the admission sought was of no substantial importance;

(C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

(D) there was other good reason for the failure to admit.

(d) Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.

(1) *In General.*

(A) *Motion; Grounds for Sanctions.* The court where the action is pending may, on motion, order sanctions if:

(i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition; or

(ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

(B) *Certification.* A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.

(2) *Unacceptable Excuse for Failing to Act.* A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).

(3) *Types of Sanctions.* Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(e) FAILURE TO PRESERVE ELECTRONICALLY STORED INFORMATION. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

(f) FAILURE TO PARTICIPATE IN FRAMING A DISCOVERY PLAN. If a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Pub. L. 96–481, §205(a), Oct. 21, 1980, 94 Stat. 2330, eff. Oct. 1, 1981; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr.

12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 16, 2013, eff. Dec. 1, 2013; Apr. 29, 2015, eff. Dec. 1, 2015.)

## TITLE VI. TRIALS

### Rule 38. Right to a Jury Trial; Demand

(a) RIGHT PRESERVED. The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate.

(b) DEMAND. On any issue triable of right by a jury, a party may demand a jury trial by:

(1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and

(2) filing the demand in accordance with Rule 5(d).

(c) SPECIFYING ISSUES. In its demand, a party may specify the issues that it wishes to have tried by a jury; otherwise, it is considered to have demanded a jury trial on all the issues so triable. If the party has demanded a jury trial on only some issues, any other party may—within 14 days after being served with the demand or within a shorter time ordered by the court—serve a demand for a jury trial on any other or all factual issues triable by jury.

(d) WAIVER; WITHDRAWAL. A party waives a jury trial unless its demand is properly served and filed. A proper demand may be withdrawn only if the parties consent.

(e) ADMIRALTY AND MARITIME CLAIMS. These rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h).

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

### Rule 39. Trial by Jury or by the Court

(a) WHEN A DEMAND IS MADE. When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless:

(1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or

(2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

(b) WHEN NO DEMAND IS MADE. Issues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded.

(c) ADVISORY JURY; JURY TRIAL BY CONSENT. In an action not triable of right by a jury, the court, on motion or on its own:

(1) may try any issue with an advisory jury; or

(2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 40. Scheduling Cases for Trial

Each court must provide by rule for scheduling trials. The court must give priority to actions entitled to priority by a federal statute.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 41. Dismissal of Actions

(a) VOLUNTARY DISMISSAL.

(1) *By the Plaintiff.*

(A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

(B) *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

(2) *By Court Order; Effect.* Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

(b) INVOLUNTARY DISMISSAL; EFFECT. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

(c) DISMISSING A COUNTERCLAIM, CROSSCLAIM, OR THIRD-PARTY CLAIM. This rule applies to a dismissal of any counterclaim, crossclaim, or third-party claim. A claimant's voluntary dismissal under Rule 41(a)(1)(A)(i) must be made:

(1) before a responsive pleading is served; or

(2) if there is no responsive pleading, before evidence is introduced at a hearing or trial.

(d) COSTS OF A PREVIOUSLY DISMISSED ACTION. If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

(1) may order the plaintiff to pay all or part of the costs of that previous action; and

(2) may stay the proceedings until the plaintiff has complied.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Dec. 4, 1967, eff. July 1, 1968;

Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 42. Consolidation; Separate Trials

(a) CONSOLIDATION. If actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.

(b) SEPARATE TRIALS. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

(As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 43. Taking Testimony

(a) IN OPEN COURT. At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

(b) AFFIRMATION INSTEAD OF AN OATH. When these rules require an oath, a solemn affirmation suffices.

(c) EVIDENCE ON A MOTION. When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions.

(d) INTERPRETER. The court may appoint an interpreter of its choosing; fix reasonable compensation to be paid from funds provided by law or by one or more parties; and tax the compensation as costs.

(As amended Feb. 28, 1966, eff. July 1, 1966; Nov. 20, 1972, and Dec. 18, 1972, eff. July 1, 1975; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 44. Proving an Official Record

(a) MEANS OF PROVING.

(1) *Domestic Record.* Each of the following evidences an official record—or an entry in it—that is otherwise admissible and is kept within the United States, any state, district, or commonwealth, or any territory subject to the administrative or judicial jurisdiction of the United States:

(A) an official publication of the record; or

(B) a copy attested by the officer with legal custody of the record—or by the officer's deputy—and accompanied by a certificate that the officer has custody. The certificate must be made under seal:

(i) by a judge of a court of record in the district or political subdivision where the record is kept; or

67         FEDERAL RULES OF CIVIL PROCEDURE        **Rule 45**

    (ii) by any public officer with a seal of office and with official duties in the district or political subdivision where the record is kept.

  (2) *Foreign Record.*

    (A) *In General.* Each of the following evidences a foreign official record—or an entry in it—that is otherwise admissible:

      (i) an official publication of the record; or

      (ii) the record—or a copy—that is attested by an authorized person and is accompanied either by a final certification of genuineness or by a certification under a treaty or convention to which the United States and the country where the record is located are parties.

    (B) *Final Certification of Genuineness.* A final certification must certify the genuineness of the signature and official position of the attester or of any foreign official whose certificate of genuineness relates to the attestation or is in a chain of certificates of genuineness relating to the attestation. A final certification may be made by a secretary of a United States embassy or legation; by a consul general, vice consul, or consular agent of the United States; or by a diplomatic or consular official of the foreign country assigned or accredited to the United States.

    (C) *Other Means of Proof.* If all parties have had a reasonable opportunity to investigate a foreign record's authenticity and accuracy, the court may, for good cause, either:

      (i) admit an attested copy without final certification; or

      (ii) permit the record to be evidenced by an attested summary with or without a final certification.

  (b) LACK OF A RECORD. A written statement that a diligent search of designated records revealed no record or entry of a specified tenor is admissible as evidence that the records contain no such record or entry. For domestic records, the statement must be authenticated under Rule 44(a)(1). For foreign records, the statement must comply with (a)(2)(C)(ii).

  (c) OTHER PROOF. A party may prove an official record—or an entry or lack of an entry in it—by any other method authorized by law.

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 44.1. Determining Foreign Law

  A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

(As added Feb. 28, 1966, eff. July 1, 1966; amended Nov. 20, 1972, eff. July 1, 1975; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 45. Subpoena

  (a) IN GENERAL.

(1) *Form and Contents.*

    (A) *Requirements—In General.* Every subpoena must:

        (i) state the court from which it issued;

        (ii) state the title of the action and its civil-action number;

        (iii) command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises; and

        (iv) set out the text of Rule 45(d) and (e).

    (B) *Command to Attend a Deposition—Notice of the Recording Method.* A subpoena commanding attendance at a deposition must state the method for recording the testimony.

    (C) *Combining or Separating a Command to Produce or to Permit Inspection; Specifying the Form for Electronically Stored Information.* A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition, hearing, or trial, or may be set out in a separate subpoena. A subpoena may specify the form or forms in which electronically stored information is to be produced.

    (D) *Command to Produce; Included Obligations.* A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials.

(2) *Issuing Court.* A subpoena must issue from the court where the action is pending.

(3) *Issued by Whom.* The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service. An attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court.

(4) *Notice to Other Parties Before Service.* If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.

(b) SERVICE.

(1) *By Whom and How; Tendering Fees.* Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies.

(2) *Service in the United States.* A subpoena may be served at any place within the United States.

(3) *Service in a Foreign Country.* 28 U.S.C. §1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country.

(4) *Proof of Service*. Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server.

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition*. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery*. A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions*. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection*.

(A) *Appearance Not Required*. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is

neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that

the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(f) Transferring a Subpoena-Related Motion. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

(g) Contempt. The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 16, 2013, eff. Dec. 1, 2013.)

## Rule 46. Objecting to a Ruling or Order

A formal exception to a ruling or order is unnecessary. When the ruling or order is requested or made, a party need only state the

action that it wants the court to take or objects to, along with the grounds for the request or objection. Failing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 47. Selecting Jurors

(a) EXAMINING JURORS. The court may permit the parties or their attorneys to examine prospective jurors or may itself do so. If the court examines the jurors, it must permit the parties or their attorneys to make any further inquiry it considers proper, or must itself ask any of their additional questions it considers proper.

(b) PEREMPTORY CHALLENGES. The court must allow the number of peremptory challenges provided by 28 U.S.C. §1870.

(c) EXCUSING A JUROR. During trial or deliberation, the court may excuse a juror for good cause.

(As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 48. Number of Jurors; Verdict; Polling

(a) NUMBER OF JURORS. A jury must begin with at least 6 and no more than 12 members, and each juror must participate in the verdict unless excused under Rule 47(c).

(b) VERDICT. Unless the parties stipulate otherwise, the verdict must be unanimous and must be returned by a jury of at least 6 members.

(c) POLLING. After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity or lack of assent by the number of jurors that the parties stipulated to, the court may direct the jury to deliberate further or may order a new trial.

(As amended Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 49. Special Verdict; General Verdict and Questions

(a) SPECIAL VERDICT.

(1) *In General.* The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact. The court may do so by:

(A) submitting written questions susceptible of a categorical or other brief answer;

(B) submitting written forms of the special findings that might properly be made under the pleadings and evidence; or

(C) using any other method that the court considers appropriate.

(2) *Instructions.* The court must give the instructions and explanations necessary to enable the jury to make its findings on each submitted issue.

(3) *Issues Not Submitted.* A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence

but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

(b) GENERAL VERDICT WITH ANSWERS TO WRITTEN QUESTIONS.

(1) *In General.* The court may submit to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide. The court must give the instructions and explanations necessary to enable the jury to render a general verdict and answer the questions in writing, and must direct the jury to do both.

(2) *Verdict and Answers Consistent.* When the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers.

(3) *Answers Inconsistent with the Verdict.* When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may:

(A) approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict;

(B) direct the jury to further consider its answers and verdict; or

(C) order a new trial.

(4) *Answers Inconsistent with Each Other and the Verdict.* When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial.

(As amended Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 50. Judgment as a Matter of Law in a Jury Trial; Related Motion for a New Trial; Conditional Ruling

(a) JUDGMENT AS A MATTER OF LAW.

(1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

(b) RENEWING THE MOTION AFTER TRIAL; ALTERNATIVE MOTION FOR A NEW TRIAL. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the

court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

    (1) allow judgment on the verdict, if the jury returned a verdict;

    (2) order a new trial; or

    (3) direct the entry of judgment as a matter of law.

(c) GRANTING THE RENEWED MOTION; CONDITIONAL RULING ON A MOTION FOR A NEW TRIAL.

    (1) *In General.* If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial.

    (2) *Effect of a Conditional Ruling.* Conditionally granting the motion for a new trial does not affect the judgment's finality; if the judgment is reversed, the new trial must proceed unless the appellate court orders otherwise. If the motion for a new trial is conditionally denied, the appellee may assert error in that denial; if the judgment is reversed, the case must proceed as the appellate court orders.

(d) TIME FOR A LOSING PARTY'S NEW-TRIAL MOTION. Any motion for a new trial under Rule 59 by a party against whom judgment as a matter of law is rendered must be filed no later than 28 days after the entry of the judgment.

(e) DENYING THE MOTION FOR JUDGMENT AS A MATTER OF LAW; REVERSAL ON APPEAL. If the court denies the motion for judgment as a matter of law, the prevailing party may, as appellee, assert grounds entitling it to a new trial should the appellate court conclude that the trial court erred in denying the motion. If the appellate court reverses the judgment, it may order a new trial, direct the trial court to determine whether a new trial should be granted, or direct the entry of judgment.

(As amended Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 27, 1995, eff. Dec. 1, 1995; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 51. Instructions to the Jury; Objections; Preserving a Claim of Error

(a) REQUESTS.

    (1) *Before or at the Close of the Evidence.* At the close of the evidence or at any earlier reasonable time that the court orders, a party may file and furnish to every other party written requests for the jury instructions it wants the court to give.

    (2) *After the Close of the Evidence.* After the close of the evidence, a party may:

        (A) file requests for instructions on issues that could not reasonably have been anticipated by an earlier time that the court set for requests; and

(B) with the court's permission, file untimely requests for instructions on any issue.

(b) INSTRUCTIONS. The court:

(1) must inform the parties of its proposed instructions and proposed action on the requests before instructing the jury and before final jury arguments;

(2) must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered; and

(3) may instruct the jury at any time before the jury is discharged.

(c) OBJECTIONS.

(1) *How to Make.* A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection.

(2) *When to Make.* An objection is timely if:

(A) a party objects at the opportunity provided under Rule 51(b)(2); or

(B) a party was not informed of an instruction or action on a request before that opportunity to object, and the party objects promptly after learning that the instruction or request will be, or has been, given or refused.

(d) ASSIGNING ERROR; PLAIN ERROR.

(1) *Assigning Error.* A party may assign as error:

(A) an error in an instruction actually given, if that party properly objected; or

(B) a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected.

(2) *Plain Error.* A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 52. Findings and Conclusions by the Court; Judgment on Partial Findings

(a) FINDINGS AND CONCLUSIONS.

(1) *In General.* In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

(2) *For an Interlocutory Injunction.* In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action.

(3) *For a Motion.* The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion.

(4) *Effect of a Master's Findings.* A master's findings, to the extent adopted by the court, must be considered the court's findings.

(5) *Questioning the Evidentiary Support.* A party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings.

(6) *Setting Aside the Findings.* Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.

(b) AMENDED OR ADDITIONAL FINDINGS. On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

(c) JUDGMENT ON PARTIAL FINDINGS. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Apr. 28, 1983, eff. Aug. 1, 1983; Apr. 29, 1985, eff. Aug. 1, 1985; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 27, 1995, eff. Dec. 1, 1995; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 53. Masters

(a) APPOINTMENT.

(1) *Scope.* Unless a statute provides otherwise, a court may appoint a master only to:

(A) perform duties consented to by the parties;

(B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:

(i) some exceptional condition; or

(ii) the need to perform an accounting or resolve a difficult computation of damages; or

(C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

(2) *Disqualification.* A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. §455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification.

(3) *Possible Expense or Delay.* In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay.

(b) ORDER APPOINTING A MASTER.

(1) *Notice.* Before appointing a master, the court must give the parties notice and an opportunity to be heard. Any party may suggest candidates for appointment.

(2) *Contents.* The appointing order must direct the master to proceed with all reasonable diligence and must state:

    (A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c);

    (B) the circumstances, if any, in which the master may communicate ex parte with the court or a party;

    (C) the nature of the materials to be preserved and filed as the record of the master's activities;

    (D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and

    (E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(g).

(3) *Issuing.* The court may issue the order only after:

    (A) the master files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455; and

    (B) if a ground is disclosed, the parties, with the court's approval, waive the disqualification.

(4) *Amending.* The order may be amended at any time after notice to the parties and an opportunity to be heard.

(c) MASTER'S AUTHORITY.

(1) *In General.* Unless the appointing order directs otherwise, a master may:

    (A) regulate all proceedings;

    (B) take all appropriate measures to perform the assigned duties fairly and efficiently; and

    (C) if conducting an evidentiary hearing, exercise the appointing court's power to compel, take, and record evidence.

(2) *Sanctions.* The master may by order impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty.

(d) MASTER'S ORDERS. A master who issues an order must file it and promptly serve a copy on each party. The clerk must enter the order on the docket.

(e) MASTER'S REPORTS. A master must report to the court as required by the appointing order. The master must file the report and promptly serve a copy on each party, unless the court orders otherwise.

(f) ACTION ON THE MASTER'S ORDER, REPORT, OR RECOMMENDATIONS.

(1) *Opportunity for a Hearing; Action in General.* In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions.

(2) *Time to Object or Move to Adopt or Modify.* A party may file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time.

(3) *Reviewing Factual Findings.* The court must decide de novo all objections to findings of fact made or recommended by a master, unless the parties, with the court's approval, stipulate that:

   (A) the findings will be reviewed for clear error; or

   (B) the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.

(4) *Reviewing Legal Conclusions.* The court must decide de novo all objections to conclusions of law made or recommended by a master.

(5) *Reviewing Procedural Matters.* Unless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion.

(g) COMPENSATION.

(1) *Fixing Compensation.* Before or after judgment, the court must fix the master's compensation on the basis and terms stated in the appointing order, but the court may set a new basis and terms after giving notice and an opportunity to be heard.

(2) *Payment.* The compensation must be paid either:

   (A) by a party or parties; or

   (B) from a fund or subject matter of the action within the court's control.

(3) *Allocating Payment.* The court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master. An interim allocation may be amended to reflect a decision on the merits.

(h) APPOINTING A MAGISTRATE JUDGE. A magistrate judge is subject to this rule only when the order referring a matter to the magistrate judge states that the reference is made under this rule.

(As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## TITLE VII. JUDGMENT

## Rule 54. Judgment; Costs

(a) DEFINITION; FORM. "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings.

(b) JUDGMENT ON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties

does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

(c) DEMAND FOR JUDGMENT; RELIEF TO BE GRANTED. A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

(d) COSTS; ATTORNEY'S FEES.

(1) *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

(2) *Attorney's Fees.*

(A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

(B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:

(i) be filed no later than 14 days after the entry of judgment;

(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

(iii) state the amount sought or provide a fair estimate of it; and

(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

(C) *Proceedings.* Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

(D) *Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge.* By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

(E) *Exceptions.* Subparagraphs (A)–(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. §1927.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Apr. 17, 1961, eff. July 19, 1961; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993;

Apr. 29, 2002, eff. Dec. 1, 2002; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 55. Default; Default Judgment

(a) ENTERING A DEFAULT. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) ENTERING A DEFAULT JUDGMENT.

(1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

(c) SETTING ASIDE A DEFAULT OR A DEFAULT JUDGMENT. The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).

(d) JUDGMENT AGAINST THE UNITED STATES. A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 29, 2015, eff. Dec. 1, 2015.)

## Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) TIME TO FILE A MOTION. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) PROCEDURES.

(1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

    (1) defer considering the motion or deny it;

    (2) allow time to obtain affidavits or declarations or to take discovery; or

    (3) issue any other appropriate order.

(e) FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

    (1) give an opportunity to properly support or address the fact;

    (2) consider the fact undisputed for purposes of the motion;

    (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

    (4) issue any other appropriate order.

(f) JUDGMENT INDEPENDENT OF THE MOTION. After giving notice and a reasonable time to respond, the court may:

    (1) grant summary judgment for a nonmovant;

    (2) grant the motion on grounds not raised by a party; or

    (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) FAILING TO GRANT ALL THE REQUESTED RELIEF. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

(h) AFFIDAVIT OR DECLARATION SUBMITTED IN BAD FAITH. If satisfied that an affidavit or declaration under this rule is submitted

in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2010, eff. Dec. 1, 2010.)

## Rule 57. Declaratory Judgment

These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. §2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 58. Entering Judgment

(a) SEPARATE DOCUMENT. Every judgment and amended judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion:

    (1) for judgment under Rule 50(b);

    (2) to amend or make additional findings under Rule 52(b);

    (3) for attorney's fees under Rule 54;

    (4) for a new trial, or to alter or amend the judgment, under Rule 59; or

    (5) for relief under Rule 60.

(b) ENTERING JUDGMENT.

    (1) *Without the Court's Direction.* Subject to Rule 54(b) and unless the court orders otherwise, the clerk must, without awaiting the court's direction, promptly prepare, sign, and enter the judgment when:

        (A) the jury returns a general verdict;

        (B) the court awards only costs or a sum certain; or

        (C) the court denies all relief.

    (2) *Court's Approval Required.* Subject to Rule 54(b), the court must promptly approve the form of the judgment, which the clerk must promptly enter, when:

        (A) the jury returns a special verdict or a general verdict with answers to written questions; or

        (B) the court grants other relief not described in this subdivision (b).

(c) TIME OF ENTRY. For purposes of these rules, judgment is entered at the following times:

    (1) if a separate document is not required, when the judgment is entered in the civil docket under Rule 79(a); or

    (2) if a separate document is required, when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs:

        (A) it is set out in a separate document; or

        (B) 150 days have run from the entry in the civil docket.

(d) REQUEST FOR ENTRY. A party may request that judgment be set out in a separate document as required by Rule 58(a).

(e) COST OR FEE AWARDS. Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees. But if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 59. New Trial; Altering or Amending a Judgment

(a) IN GENERAL.

(1) *Grounds for New Trial*. The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

(B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

(2) *Further Action After a Nonjury Trial*. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

(b) TIME TO FILE A MOTION FOR A NEW TRIAL. A motion for a new trial must be filed no later than 28 days after the entry of judgment.

(c) TIME TO SERVE AFFIDAVITS. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

(d) NEW TRIAL ON THE COURT'S INITIATIVE OR FOR REASONS NOT IN THE MOTION. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

(e) MOTION TO ALTER OR AMEND A JUDGMENT. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Feb. 28, 1966, eff. July 1, 1966; Apr. 27, 1995, eff. Dec. 1, 1995; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 60. Relief from a Judgment or Order

(a) CORRECTIONS BASED ON CLERICAL MISTAKES; OVERSIGHTS AND OMISSIONS. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so

on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;

    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (4) the judgment is void;

    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

    (6) any other reason that justifies relief.

(c) TIMING AND EFFECT OF THE MOTION.

    (1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

    (2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

(d) OTHER POWERS TO GRANT RELIEF. This rule does not limit a court's power to:

    (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

    (2) grant relief under 28 U.S.C. §1655 to a defendant who was not personally notified of the action; or

    (3) set aside a judgment for fraud on the court.

(e) BILLS AND WRITS ABOLISHED. The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 61. Harmless Error

Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 62. Stay of Proceedings to Enforce a Judgment

(a) AUTOMATIC STAY. Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise.

(b) STAY BY BOND OR OTHER SECURITY. At any time after judgment is entered, a party may obtain a stay by providing a bond

or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security.

(c) STAY OF AN INJUNCTION, RECEIVERSHIP, OR PATENT ACCOUNTING ORDER. Unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken:

(1) an interlocutory or final judgment in an action for an injunction or receivership; or

(2) a judgment or order that directs an accounting in an action for patent infringement.

(d) INJUNCTION PENDING AN APPEAL. While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. If the judgment appealed from is rendered by a statutory three-judge district court, the order must be made either:

(1) by that court sitting in open session; or

(2) by the assent of all its judges, as evidenced by their signatures.

(e) STAY WITHOUT BOND ON AN APPEAL BY THE UNITED STATES, ITS OFFICERS, OR ITS AGENCIES. The court must not require a bond, obligation, or other security from the appellant when granting a stay on an appeal by the United States, its officers, or its agencies or on an appeal directed by a department of the federal government.

(f) STAY IN FAVOR OF A JUDGMENT DEBTOR UNDER STATE LAW. If a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give.

(g) APPELLATE COURT'S POWER NOT LIMITED. This rule does not limit the power of the appellate court or one of its judges or justices:

(1) to stay proceedings—or suspend, modify, restore, or grant an injunction—while an appeal is pending; or

(2) to issue an order to preserve the status quo or the effectiveness of the judgment to be entered.

(h) STAY WITH MULTIPLE CLAIMS OR PARTIES. A court may stay the enforcement of a final judgment entered under Rule 54(b) until it enters a later judgment or judgments, and may prescribe terms necessary to secure the benefit of the stayed judgment for the party in whose favor it was entered.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 17, 1961, eff. July 19, 1961; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 26, 2018, eff. Dec. 1, 2018.)

### Rule 62.1. Indicative Ruling on a Motion for Relief That is Barred by a Pending Appeal

(a) RELIEF PENDING APPEAL. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:

(1) defer considering the motion;

(2) deny the motion; or

(3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

(b) NOTICE TO THE COURT OF APPEALS. The movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 if the district court states that it would grant the motion or that the motion raises a substantial issue.

(c) REMAND. The district court may decide the motion if the court of appeals remands for that purpose.

(As added Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 63. Judge's Inability to Proceed

If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties. In a hearing or a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 30, 2007, eff. Dec. 1, 2007.)

## TITLE VIII. PROVISIONAL AND FINAL REMEDIES

## Rule 64. Seizing a Person or Property

(a) REMEDIES UNDER STATE LAW—IN GENERAL. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

(b) SPECIFIC KINDS OF REMEDIES. The remedies available under this rule include the following—however designated and regardless of whether state procedure requires an independent action:

- arrest;
- attachment;
- garnishment;
- replevin;
- sequestration; and
- other corresponding or equivalent remedies.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 65. Injunctions and Restraining Orders

(a) PRELIMINARY INJUNCTION.

(1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.

(2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and

that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

(b) TEMPORARY RESTRAINING ORDER.

(1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

(3) *Expediting the Preliminary-Injunction Hearing.* If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

(4) *Motion to Dissolve.* On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

(d) CONTENTS AND SCOPE OF EVERY INJUNCTION AND RESTRAINING ORDER.

(1) *Contents.* Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

(2) *Persons Bound.* The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

(e) OTHER LAWS NOT MODIFIED. These rules do not modify the following:

(1) any federal statute relating to temporary restraining orders or preliminary injunctions in actions affecting employer and employee;

(2) 28 U.S.C. §2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader; or

(3) 28 U.S.C. §2284, which relates to actions that must be heard and decided by a three-judge district court.

(f) COPYRIGHT IMPOUNDMENT. This rule applies to copyright-impoundment proceedings.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 65.1. Proceedings Against a Security Provider

Whenever these rules (including the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions) require or allow a party to give security, and security is given with one or more security providers, each provider submits to the court's jurisdiction and irrevocably appoints the court clerk as its agent for receiving service of any papers that affect its liability on the security. The security provider's liability may be enforced on motion without an independent action. The motion and any notice that the court orders may be served on the court clerk, who must promptly send a copy of each to every security provider whose address is known.

(As added Feb. 28, 1966, eff. July 1, 1966; amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 26, 2018, eff. Dec. 1, 2018.)

## Rule 66. Receivers

These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 67. Deposit into Court

(a) DEPOSITING PROPERTY. If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

(b) INVESTING AND WITHDRAWING FUNDS. Money paid into court under this rule must be deposited and withdrawn in accordance

with 28 U.S.C. §§ 2041 and 2042 and any like statute. The money must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 28, 1983, eff. Aug. 1, 1983; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 68. Offer of Judgment

(a) MAKING AN OFFER; JUDGMENT ON AN ACCEPTED OFFER. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

(b) UNACCEPTED OFFER. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

(c) OFFER AFTER LIABILITY IS DETERMINED. When one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment. It must be served within a reasonable time—but at least 14 days—before the date set for a hearing to determine the extent of liability.

(d) PAYING COSTS AFTER AN UNACCEPTED OFFER. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 69. Execution

(a) IN GENERAL.

(1) *Money Judgment; Applicable Procedure.* A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

(2) *Obtaining Discovery.* In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

(b) AGAINST CERTAIN PUBLIC OFFICERS. When a judgment has been entered against a revenue officer in the circumstances stated in 28 U.S.C. § 2006, or against an officer of Congress in the circumstances stated in 2 U.S.C. § 118,[1] the judgment must be satisfied as those statutes provide.

---

[1] Now editorially reclassified 2 U.S.C. 5503.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 30, 1970, eff. July 1, 1970; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 70. Enforcing a Judgment for a Specific Act

(a) PARTY'S FAILURE TO ACT; ORDERING ANOTHER TO ACT. If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court. When done, the act has the same effect as if done by the party.

(b) VESTING TITLE. If the real or personal property is within the district, the court—instead of ordering a conveyance—may enter a judgment divesting any party's title and vesting it in others. That judgment has the effect of a legally executed conveyance.

(c) OBTAINING A WRIT OF ATTACHMENT OR SEQUESTRATION. On application by a party entitled to performance of an act, the clerk must issue a writ of attachment or sequestration against the disobedient party's property to compel obedience.

(d) OBTAINING A WRIT OF EXECUTION OR ASSISTANCE. On application by a party who obtains a judgment or order for possession, the clerk must issue a writ of execution or assistance.

(e) HOLDING IN CONTEMPT. The court may also hold the disobedient party in contempt.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 71. Enforcing Relief For or Against a Nonparty

When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

## TITLE IX. SPECIAL PROCEEDINGS

## Rule 71.1. Condemning Real or Personal Property

(a) APPLICABILITY OF OTHER RULES. These rules govern proceedings to condemn real and personal property by eminent domain, except as this rule provides otherwise.

(b) JOINDER OF PROPERTIES. The plaintiff may join separate pieces of property in a single action, no matter whether they are owned by the same persons or sought for the same use.

(c) COMPLAINT.

(1) *Caption*. The complaint must contain a caption as provided in Rule 10(a). The plaintiff must, however, name as defendants both the property—designated generally by kind, quantity, and location—and at least one owner of some part of or interest in the property.

(2) *Contents*. The complaint must contain a short and plain statement of the following:

(A) the authority for the taking;

(B) the uses for which the property is to be taken;

(C) a description sufficient to identify the property;

(D) the interests to be acquired; and

(E) for each piece of property, a designation of each defendant who has been joined as an owner or owner of an interest in it.

(3) *Parties.* When the action commences, the plaintiff need join as defendants only those persons who have or claim an interest in the property and whose names are then known. But before any hearing on compensation, the plaintiff must add as defendants all those persons who have or claim an interest and whose names have become known or can be found by a reasonably diligent search of the records, considering both the property's character and value and the interests to be acquired. All others may be made defendants under the designation ''Unknown Owners.''

(4) *Procedure.* Notice must be served on all defendants as provided in Rule 71.1(d), whether they were named as defendants when the action commenced or were added later. A defendant may answer as provided in Rule 71.1(e). The court, meanwhile, may order any distribution of a deposit that the facts warrant.

(5) *Filing; Additional Copies.* In addition to filing the complaint, the plaintiff must give the clerk at least one copy for the defendants' use and additional copies at the request of the clerk or a defendant.

(d) PROCESS.

(1) *Delivering Notice to the Clerk.* On filing a complaint, the plaintiff must promptly deliver to the clerk joint or several notices directed to the named defendants. When adding defendants, the plaintiff must deliver to the clerk additional notices directed to the new defendants.

(2) *Contents of the Notice.*

(A) *Main Contents.* Each notice must name the court, the title of the action, and the defendant to whom it is directed. It must describe the property sufficiently to identify it, but need not describe any property other than that to be taken from the named defendant. The notice must also state:

(i) that the action is to condemn property;

(ii) the interest to be taken;

(iii) the authority for the taking;

(iv) the uses for which the property is to be taken;

(v) that the defendant may serve an answer on the plaintiff's attorney within 21 days after being served with the notice;

(vi) that the failure to so serve an answer constitutes consent to the taking and to the court's authority to proceed with the action and fix the compensation; and

(vii) that a defendant who does not serve an answer may file a notice of appearance.

(B) *Conclusion.* The notice must conclude with the name, telephone number, and e-mail address of the plaintiff's attorney and an address within the district in which the action is brought where the attorney may be served.

(3) *Serving the Notice.*

(A) *Personal Service.* When a defendant whose address is known resides within the United States or a territory subject to the administrative or judicial jurisdiction of the

United States, personal service of the notice (without a copy of the complaint) must be made in accordance with Rule 4.

(B) *Service by Publication.*

(i) A defendant may be served by publication only when the plaintiff's attorney files a certificate stating that the attorney believes the defendant cannot be personally served, because after diligent inquiry within the state where the complaint is filed, the defendant's place of residence is still unknown or, if known, that it is beyond the territorial limits of personal service. Service is then made by publishing the notice—once a week for at least 3 successive weeks—in a newspaper published in the county where the property is located or, if there is no such newspaper, in a newspaper with general circulation where the property is located. Before the last publication, a copy of the notice must also be mailed to every defendant who cannot be personally served but whose place of residence is then known. Unknown owners may be served by publication in the same manner by a notice addressed to "Unknown Owners."

(ii) Service by publication is complete on the date of the last publication. The plaintiff's attorney must prove publication and mailing by a certificate, attach a printed copy of the published notice, and mark on the copy the newspaper's name and the dates of publication.

(4) *Effect of Delivery and Service.* Delivering the notice to the clerk and serving it have the same effect as serving a summons under Rule 4.

(5) *Amending the Notice; Proof of Service and Amending the Proof.* Rule 4(a)(2) governs amending the notice. Rule 4(*l*) governs proof of service and amending it.

(e) APPEARANCE OR ANSWER.

(1) *Notice of Appearance.* A defendant that has no objection or defense to the taking of its property may serve a notice of appearance designating the property in which it claims an interest. The defendant must then be given notice of all later proceedings affecting the defendant.

(2) *Answer.* A defendant that has an objection or defense to the taking must serve an answer within 21 days after being served with the notice. The answer must:

(A) identify the property in which the defendant claims an interest;

(B) state the nature and extent of the interest; and

(C) state all the defendant's objections and defenses to the taking.

(3) *Waiver of Other Objections and Defenses; Evidence on Compensation.* A defendant waives all objections and defenses not stated in its answer. No other pleading or motion asserting an additional objection or defense is allowed. But at the trial on compensation, a defendant—whether or not it has previously appeared or answered—may present evidence on the amount of compensation to be paid and may share in the award.

(f) AMENDING PLEADINGS. Without leave of court, the plaintiff may—as often as it wants—amend the complaint at any time before the trial on compensation. But no amendment may be made if it would result in a dismissal inconsistent with Rule 71.1(i)(1) or (2). The plaintiff need not serve a copy of an amendment, but must serve notice of the filing, as provided in Rule 5(b), on every affected party who has appeared and, as provided in Rule 71.1(d), on every affected party who has not appeared. In addition, the plaintiff must give the clerk at least one copy of each amendment for the defendants' use, and additional copies at the request of the clerk or a defendant. A defendant may appear or answer in the time and manner and with the same effect as provided in Rule 71.1(e).

(g) SUBSTITUTING PARTIES. If a defendant dies, becomes incompetent, or transfers an interest after being joined, the court may, on motion and notice of hearing, order that the proper party be substituted. Service of the motion and notice on a nonparty must be made as provided in Rule 71.1(d)(3).

(h) TRIAL OF THE ISSUES.

(1) *Issues Other Than Compensation; Compensation.* In an action involving eminent domain under federal law, the court tries all issues, including compensation, except when compensation must be determined:

(A) by any tribunal specially constituted by a federal statute to determine compensation; or

(B) if there is no such tribunal, by a jury when a party demands one within the time to answer or within any additional time the court sets, unless the court appoints a commission.

(2) *Appointing a Commission; Commission's Powers and Report.*

(A) *Reasons for Appointing.* If a party has demanded a jury, the court may instead appoint a three-person commission to determine compensation because of the character, location, or quantity of the property to be condemned or for other just reasons.

(B) *Alternate Commissioners.* The court may appoint up to two additional persons to serve as alternate commissioners to hear the case and replace commissioners who, before a decision is filed, the court finds unable or disqualified to perform their duties. Once the commission renders its final decision, the court must discharge any alternate who has not replaced a commissioner.

(C) *Examining the Prospective Commissioners.* Before making its appointments, the court must advise the parties of the identity and qualifications of each prospective commissioner and alternate, and may permit the parties to examine them. The parties may not suggest appointees, but for good cause may object to a prospective commissioner or alternate.

(D) *Commission's Powers and Report.* A commission has the powers of a master under Rule 53(c). Its action and report are determined by a majority. Rule 53(d), (e), and (f) apply to its action and report.

(i) DISMISSAL OF THE ACTION OR A DEFENDANT.

(1) *Dismissing the Action.*

(A) *By the Plaintiff.* If no compensation hearing on a piece of property has begun, and if the plaintiff has not acquired title or a lesser interest or taken possession, the plaintiff may, without a court order, dismiss the action as to that property by filing a notice of dismissal briefly describing the property.

(B) *By Stipulation.* Before a judgment is entered vesting the plaintiff with title or a lesser interest in or possession of property, the plaintiff and affected defendants may, without a court order, dismiss the action in whole or in part by filing a stipulation of dismissal. And if the parties so stipulate, the court may vacate a judgment already entered.

(C) *By Court Order.* At any time before compensation has been determined and paid, the court may, after a motion and hearing, dismiss the action as to a piece of property. But if the plaintiff has already taken title, a lesser interest, or possession as to any part of it, the court must award compensation for the title, lesser interest, or possession taken.

(2) *Dismissing a Defendant.* The court may at any time dismiss a defendant who was unnecessarily or improperly joined.

(3) *Effect.* A dismissal is without prejudice unless otherwise stated in the notice, stipulation, or court order.

(j) DEPOSIT AND ITS DISTRIBUTION.

(1) *Deposit.* The plaintiff must deposit with the court any money required by law as a condition to the exercise of eminent domain and may make a deposit when allowed by statute.

(2) *Distribution; Adjusting Distribution.* After a deposit, the court and attorneys must expedite the proceedings so as to distribute the deposit and to determine and pay compensation. If the compensation finally awarded to a defendant exceeds the amount distributed to that defendant, the court must enter judgment against the plaintiff for the deficiency. If the compensation awarded to a defendant is less than the amount distributed to that defendant, the court must enter judgment against that defendant for the overpayment.

(k) CONDEMNATION UNDER A STATE'S POWER OF EMINENT DOMAIN. This rule governs an action involving eminent domain under state law. But if state law provides for trying an issue by jury—or for trying the issue of compensation by jury or commission or both— that law governs.

(*l*) COSTS. Costs are not subject to Rule 54(d).

(As added Apr. 30, 1951, eff. Aug. 1, 1951; amended Jan. 21, 1963, eff. July 1, 1963; Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 25, 1988, eff. Aug. 1, 1988; Pub. L. 100–690, title VII, §7050, Nov. 18, 1988, 102 Stat. 4401; Apr. 22, 1993, eff. Dec. 1, 1993; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 72. Magistrate Judges: Pretrial Order

(a) NONDISPOSITIVE MATTERS. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate

judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

(b) DISPOSITIVE MOTIONS AND PRISONER PETITIONS.

(1) *Findings and Recommendations.* A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement. A record must be made of all evidentiary proceedings and may, at the magistrate judge's discretion, be made of any other proceedings. The magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact. The clerk must promptly mail a copy to each party.

(2) *Objections.* Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient.

(3) *Resolving Objections.* The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

(As added Apr. 28, 1983, eff. Aug. 1, 1983; amended Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

**Rule 73. Magistrate Judges: Trial by Consent; Appeal**

(a) TRIAL BY CONSENT. When authorized under 28 U.S.C. §636(c), a magistrate judge may, if all parties consent, conduct a civil action or proceeding, including a jury or nonjury trial. A record must be made in accordance with 28 U.S.C. §636(c)(5).

(b) CONSENT PROCEDURE.

(1) *In General.* When a magistrate judge has been designated to conduct civil actions or proceedings, the clerk must give the parties written notice of their opportunity to consent under 28 U.S.C. §636(c). To signify their consent, the parties must jointly or separately file a statement consenting to the referral. A district judge or magistrate judge may be informed of a party's response to the clerk's notice only if all parties have consented to the referral.

(2) *Reminding the Parties About Consenting.* A district judge, magistrate judge, or other court official may remind the parties of the magistrate judge's availability, but must also advise them that they are free to withhold consent without adverse substantive consequences.

(3) *Vacating a Referral.* On its own for good cause—or when a party shows extraordinary circumstances—the district judge may vacate a referral to a magistrate judge under this rule.

(c) APPEALING A JUDGMENT. In accordance with 28 U.S.C. §636(c)(3), an appeal from a judgment entered at a magistrate judge's direction may be taken to the court of appeals as would any other appeal from a district-court judgment.

(As added Apr. 28, 1983, eff. Aug. 1, 1983; amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 11, 1997, eff. Dec. 1, 1997; Apr. 30, 2007, eff. Dec. 1, 2007.)

**Rule 74. [Abrogated (Apr. 11, 1997, eff. Dec. 1, 1997).]**

**Rule 75. [Abrogated (Apr. 11, 1997, eff. Dec. 1, 1997).]**

**Rule 76. [Abrogated (Apr. 11, 1997, eff. Dec. 1, 1997).]**

## TITLE X. DISTRICT COURTS AND CLERKS: CONDUCTING BUSINESS; ISSUING ORDERS

### Rule 77. Conducting Business; Clerk's Authority; Notice of an Order or Judgment

(a) WHEN COURT IS OPEN. Every district court is considered always open for filing any paper, issuing and returning process, making a motion, or entering an order.

(b) PLACE FOR TRIAL AND OTHER PROCEEDINGS. Every trial on the merits must be conducted in open court and, so far as convenient, in a regular courtroom. Any other act or proceeding may be done or conducted by a judge in chambers, without the attendance of the clerk or other court official, and anywhere inside or outside the district. But no hearing—other than one ex parte—may be conducted outside the district unless all the affected parties consent.

(c) CLERK'S OFFICE HOURS; CLERK'S ORDERS.

(1) *Hours.* The clerk's office—with a clerk or deputy on duty—must be open during business hours every day except Saturdays, Sundays, and legal holidays. But a court may, by local rule or order, require that the office be open for specified hours on Saturday or a particular legal holiday other than one listed in Rule 6(a)(6)(A).

(2) *Orders.* Subject to the court's power to suspend, alter, or rescind the clerk's action for good cause, the clerk may:

(A) issue process;

(B) enter a default;

(C) enter a default judgment under Rule 55(b)(1); and

(D) act on any other matter that does not require the court's action.

(d) SERVING NOTICE OF AN ORDER OR JUDGMENT.

(1) *Service.* Immediately after entering an order or judgment, the clerk must serve notice of the entry, as provided in Rule 5(b), on each party who is not in default for failing to appear. The clerk must record the service on the docket. A party also may serve notice of the entry as provided in Rule 5(b).

(2) *Time to Appeal Not Affected by Lack of Notice.* Lack of notice of the entry does not affect the time for appeal or relieve—or authorize the court to relieve—a party for failing to appeal within the time allowed, except as allowed by Federal Rule of Appellate Procedure (4)(a).

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Dec. 4, 1967, eff. July 1, 1968; Mar. 1, 1971, eff. July 1, 1971; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 25, 2014, eff. Dec. 1, 2014.)

## Rule 78. Hearing Motions; Submission on Briefs

(a) PROVIDING A REGULAR SCHEDULE FOR ORAL HEARINGS. A court may establish regular times and places for oral hearings on motions.

(b) PROVIDING FOR SUBMISSION ON BRIEFS. By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 79. Records Kept by the Clerk

(a) CIVIL DOCKET.

(1) *In General.* The clerk must keep a record known as the ''civil docket'' in the form and manner prescribed by the Director of the Administrative Office of the United States Courts with the approval of the Judicial Conference of the United States. The clerk must enter each civil action in the docket. Actions must be assigned consecutive file numbers, which must be noted in the docket where the first entry of the action is made.

(2) *Items to be Entered.* The following items must be marked with the file number and entered chronologically in the docket:

(A) papers filed with the clerk;

(B) process issued, and proofs of service or other returns showing execution; and

(C) appearances, orders, verdicts, and judgments.

(3) *Contents of Entries; Jury Trial Demanded.* Each entry must briefly show the nature of the paper filed or writ issued, the substance of each proof of service or other return, and the substance and date of entry of each order and judgment. When a jury trial has been properly demanded or ordered, the clerk must enter the word ''jury'' in the docket.

(b) CIVIL JUDGMENTS AND ORDERS. The clerk must keep a copy of every final judgment and appealable order; of every order affecting title to or a lien on real or personal property; and of any other order that the court directs to be kept. The clerk must keep

these in the form and manner prescribed by the Director of the Administrative Office of the United States Courts with the approval of the Judicial Conference of the United States.

(c) INDEXES; CALENDARS. Under the court's direction, the clerk must:

>  (1) keep indexes of the docket and of the judgments and orders described in Rule 79(b); and
>
>  (2) prepare calendars of all actions ready for trial, distinguishing jury trials from nonjury trials.

(d) OTHER RECORDS. The clerk must keep any other records required by the Director of the Administrative Office of the United States Courts with the approval of the Judicial Conference of the United States.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Jan. 21, 1963, eff. July 1, 1963; Apr. 30, 2007, eff. Dec. 1, 2007.)

**Rule 80. Stenographic Transcript as Evidence**

If stenographically reported testimony at a hearing or trial is admissible in evidence at a later trial, the testimony may be proved by a transcript certified by the person who reported it.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Apr. 30, 2007, eff. Dec. 1, 2007.)

## TITLE XI. GENERAL PROVISIONS

**Rule 81. Applicability of the Rules in General; Removed Actions**

(a) APPLICABILITY TO PARTICULAR PROCEEDINGS.

>  (1) *Prize Proceedings.* These rules do not apply to prize proceedings in admiralty governed by 10 U.S.C. §§ 7651–7681.
>
>  (2) *Bankruptcy.* These rules apply to bankruptcy proceedings to the extent provided by the Federal Rules of Bankruptcy Procedure.
>
>  (3) *Citizenship.* These rules apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions. The provisions of 8 U.S.C. § 1451 for service by publication and for answer apply in proceedings to cancel citizenship certificates.
>
>  (4) *Special Writs.* These rules apply to proceedings for habeas corpus and for quo warranto to the extent that the practice in those proceedings:
>
>>  (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and
>>
>>  (B) has previously conformed to the practice in civil actions.
>
>  (5) *Proceedings Involving a Subpoena.* These rules apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings.
>
>  (6) *Other Proceedings.* These rules, to the extent applicable, govern proceedings under the following laws, except as these laws provide other procedures:

(A) 7 U.S.C. §§ 292, 499g(c), for reviewing an order of the Secretary of Agriculture;

(B) 9 U.S.C., relating to arbitration;

(C) 15 U.S.C. § 522, for reviewing an order of the Secretary of the Interior;

(D) 15 U.S.C. § 715d(c), for reviewing an order denying a certificate of clearance;

(E) 29 U.S.C. §§ 159, 160, for enforcing an order of the National Labor Relations Board;

(F) 33 U.S.C. §§ 918, 921, for enforcing or reviewing a compensation order under the Longshore and Harbor Workers' Compensation Act; and

(G) 45 U.S.C. § 159, for reviewing an arbitration award in a railway-labor dispute.

(b) SCIRE FACIAS AND MANDAMUS. The writs of scire facias and mandamus are abolished. Relief previously available through them may be obtained by appropriate action or motion under these rules.

(c) REMOVED ACTIONS.

(1) *Applicability.* These rules apply to a civil action after it is removed from a state court.

(2) *Further Pleading.* After removal, repleading is unnecessary unless the court orders it. A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:

(A) 21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief;

(B) 21 days after being served with the summons for an initial pleading on file at the time of service; or

(C) 7 days after the notice of removal is filed.

(3) *Demand for a Jury Trial.*

(A) *As Affected by State Law.* A party who, before removal, expressly demanded a jury trial in accordance with state law need not renew the demand after removal. If the state law did not require an express demand for a jury trial, a party need not make one after removal unless the court orders the parties to do so within a specified time. The court must so order at a party's request and may so order on its own. A party who fails to make a demand when so ordered waives a jury trial.

(B) *Under Rule 38.* If all necessary pleadings have been served at the time of removal, a party entitled to a jury trial under Rule 38 must be given one if the party serves a demand within 14 days after:

(i) it files a notice of removal; or

(ii) it is served with a notice of removal filed by another party.

(d) LAW APPLICABLE.

(1) *"State Law" Defined.* When these rules refer to state law, the term "law" includes the state's statutes and the state's judicial decisions.

(2) *"State" Defined.* The term "state" includes, where appropriate, the District of Columbia and any United States commonwealth or territory.

(3) *"Federal Statute" Defined in the District of Columbia.* In the United States District Court for the District of Columbia, the term "federal statute" includes any Act of Congress that applies locally to the District.

(As amended Dec. 28, 1939, eff. Apr. 3, 1941; Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 1951, eff. Aug. 1, 1951; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Dec. 4, 1967, eff. July 1, 1968; Mar. 1, 1971, eff. July 1, 1971; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 82. Jurisdiction and Venue Unaffected

These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts. An admiralty or maritime claim under Rule 9(h) is governed by 28 U.S.C. § 1390.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 28, 2016, eff. Dec. 1, 2016.)

## Rule 83. Rules by District Courts; Judge's Directives

(a) LOCAL RULES.

(1) *In General.* After giving public notice and an opportunity for comment, a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice. A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§ 2072 and 2075, and must conform to any uniform numbering system prescribed by the Judicial Conference of the United States. A local rule takes effect on the date specified by the district court and remains in effect unless amended by the court or abrogated by the judicial council of the circuit. Copies of rules and amendments must, on their adoption, be furnished to the judicial council and the Administrative Office of the United States Courts and be made available to the public.

(2) *Requirement of Form.* A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply.

(b) PROCEDURE WHEN THERE IS NO CONTROLLING LAW. A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

(As amended Apr. 29, 1985, eff. Aug. 1, 1985; Apr. 27, 1995, eff. Dec. 1, 1995; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 84. [Abrogated (Apr. 29, 2015, eff. Dec. 1, 2015).]

## Rule 85. Title

These rules may be cited as the Federal Rules of Civil Procedure.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

**Rule 86. Effective Dates**

(a) IN GENERAL. These rules and any amendments take effect at the time specified by the Supreme Court, subject to 28 U.S.C. § 2074. They govern:

(1) proceedings in an action commenced after their effective date; and

(2) proceedings after that date in an action then pending unless:

(A) the Supreme Court specifies otherwise; or

(B) the court determines that applying them in a particular action would be infeasible or work an injustice.

(b) DECEMBER 1, 2007 AMENDMENTS. If any provision in Rules 1–5.1, 6–73, or 77–86 conflicts with another law, priority in time for the purpose of 28 U.S.C. § 2072(b) is not affected by the amendments taking effect on December 1, 2007.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 17, 1961, eff. July 19, 1961; Jan. 21 and Mar. 18, 1963, eff. July 1, 1963; Apr. 30, 2007, eff. Dec. 1, 2007.)

# APPENDIX OF FORMS

[Abrogated (Apr. 29, 2015, eff. Dec. 1, 2015).]

## SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS[1]

### Rule A. Scope of Rules

(1) These Supplemental Rules apply to:

(A) the procedure in admiralty and maritime claims within the meaning of Rule 9(h) with respect to the following remedies:

(i) maritime attachment and garnishment,

(ii) actions in rem,

(iii) possessory, petitory, and partition actions, and

(iv) actions for exoneration from or limitation of liability;

(B) forfeiture actions in rem arising from a federal statute; and

(C) the procedure in statutory condemnation proceedings analogous to maritime actions in rem, whether within the admiralty and maritime jurisdiction or not. Except as otherwise provided, references in these Supplemental Rules to actions in rem include such analogous statutory condemnation proceedings.

(2) The Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules.

(As added Feb. 28, 1966, eff. July 1, 1966; amended Apr. 12, 2006, eff. Dec. 1, 2006.)

### Rule B. In Personam Actions: Attachment and Garnishment

(1) WHEN AVAILABLE; COMPLAINT, AFFIDAVIT, JUDICIAL AUTHORIZATION, AND PROCESS. In an in personam action:

(a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

(b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

(c) If the plaintiff or the plaintiff's attorney certifies that exigent circumstances make court review impracticable, the clerk must issue the summons and process of attachment and garnishment. The plaintiff has the burden in any post-attachment hearing under Rule E(4)(f) to show that exigent circumstances existed.

---

[1] Title amended April 12, 2006, effective December 1, 2006.

(d)(i) If the property is a vessel or tangible property on board a vessel, the summons, process, and any supplemental process must be delivered to the marshal for service.

(ii) If the property is other tangible or intangible property, the summons, process, and any supplemental process must be delivered to a person or organization authorized to serve it, who may be (A) a marshal; (B) someone under contract with the United States; (C) someone specially appointed by the court for that purpose; or, (D) in an action brought by the United States, any officer or employee of the United States.

(e) The plaintiff may invoke state-law remedies under Rule 64 for seizure of person or property for the purpose of securing satisfaction of the judgment.

(2) NOTICE TO DEFENDANT. No default judgment may be entered except upon proof—which may be by affidavit—that:

(a) the complaint, summons, and process of attachment or garnishment have been served on the defendant in a manner authorized by Rule 4;

(b) the plaintiff or the garnishee has mailed to the defendant the complaint, summons, and process of attachment or garnishment, using any form of mail requiring a return receipt; or

(c) the plaintiff or the garnishee has tried diligently to give notice of the action to the defendant but could not do so.

(3) ANSWER.

(a) *By Garnishee*. The garnishee shall serve an answer, together with answers to any interrogatories served with the complaint, within 21 days after service of process upon the garnishee. Interrogatories to the garnishee may be served with the complaint without leave of court. If the garnishee refuses or neglects to answer on oath as to the debts, credits, or effects of the defendant in the garnishee's hands, or any interrogatories concerning such debts, credits, and effects that may be propounded by the plaintiff, the court may award compulsory process against the garnishee. If the garnishee admits any debts, credits, or effects, they shall be held in the garnishee's hands or paid into the registry of the court, and shall be held in either case subject to the further order of the court.

(b) *By Defendant*. The defendant shall serve an answer within 30 days after process has been executed, whether by attachment of property or service on the garnishee.

(As added Feb. 28, 1966, eff. July 1, 1966; amended Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 25, 2005, eff. Dec. 1, 2005; Mar. 26, 2009, eff. Dec. 1, 2009.)

**Rule C. In Rem Actions: Special Provisions**

(1) WHEN AVAILABLE. An action in rem may be brought:

(a) To enforce any maritime lien;

(b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.

Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.

Statutory provisions exempting vessels or other property owned or possessed by or operated by or for the United States from arrest

or seizure are not affected by this rule. When a statute so provides, an action against the United States or an instrumentality thereof may proceed on in rem principles.

(2) COMPLAINT. In an action in rem the complaint must:

(a) be verified;

(b) describe with reasonable particularity the property that is the subject of the action; and

(c) state that the property is within the district or will be within the district while the action is pending.

(3) JUDICIAL AUTHORIZATION AND PROCESS.

(a) *Arrest Warrant.*

(i) The court must review the complaint and any supporting papers. If the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action.

(ii) If the plaintiff or the plaintiff's attorney certifies that exigent circumstances make court review impracticable, the clerk must promptly issue a summons and a warrant for the arrest of the vessel or other property that is the subject of the action. The plaintiff has the burden in any post-arrest hearing under Rule E(4)(f) to show that exigent circumstances existed.

(b) *Service.*

(i) If the property that is the subject of the action is a vessel or tangible property on board a vessel, the warrant and any supplemental process must be delivered to the marshal for service.

(ii) If the property that is the subject of the action is other property, tangible or intangible, the warrant and any supplemental process must be delivered to a person or organization authorized to enforce it, who may be: (A) a marshal; (B) someone under contract with the United States; (C) someone specially appointed by the court for that purpose; or, (D) in an action brought by the United States, any officer or employee of the United States.

(c) *Deposit in Court.* If the property that is the subject of the action consists in whole or in part of freight, the proceeds of property sold, or other intangible property, the clerk must issue—in addition to the warrant—a summons directing any person controlling the property to show cause why it should not be deposited in court to abide the judgment.

(d) *Supplemental Process.* The clerk may upon application issue supplemental process to enforce the court's order without further court order.

(4) NOTICE. No notice other than execution of process is required when the property that is the subject of the action has been released under Rule E(5). If the property is not released within 14 days after execution, the plaintiff must promptly—or within the time that the court allows—give public notice of the action and arrest in a newspaper designated by court order and having general circulation in the district, but publication may be terminated if the property is released before publication is completed. The notice must specify the time under Rule C(6) to file a statement of interest in or right against the seized property and to answer.

This rule does not affect the notice requirements in an action to foreclose a preferred ship mortgage under 46 U.S.C. §§31301 et seq., as amended.

(5) ANCILLARY PROCESS. In any action in rem in which process has been served as provided by this rule, if any part of the property that is the subject of the action has not been brought within the control of the court because it has been removed or sold, or because it is intangible property in the hands of a person who has not been served with process, the court may, on motion, order any person having possession or control of such property or its proceeds to show cause why it should not be delivered into the custody of the marshal or other person or organization having a warrant for the arrest of the property, or paid into court to abide the judgment; and, after hearing, the court may enter such judgment as law and justice may require.

(6) RESPONSIVE PLEADING; INTERROGATORIES.

(a) *Statement of Interest; Answer.* In an action in rem:

(i) a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest:

(A) within 14 days after the execution of process, or

(B) within the time that the court allows;

(ii) the statement of right or interest must describe the interest in the property that supports the person's demand for its restitution or right to defend the action;

(iii) an agent, bailee, or attorney must state the authority to file a statement of right or interest on behalf of another; and

(iv) a person who asserts a right of possession or any ownership interest must serve an answer within 21 days after filing the statement of interest or right.

(b) *Interrogatories.* Interrogatories may be served with the complaint in an in rem action without leave of court. Answers to the interrogatories must be served with the answer to the complaint.

(As added Feb. 28, 1966, eff. July 1, 1966; amended Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule D. Possessory, Petitory, and Partition Actions

In all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel, in all actions so maintainable with respect to the possession of cargo or other maritime property, and in all actions by one or more part owners against the others to obtain security for the return of the vessel from any voyage undertaken without their consent, or by one or more part owners against the others to obtain possession of the vessel for any voyage on giving security for its safe return, the process shall be by a warrant of arrest of the vessel, cargo, or other property, and by notice in the manner provided by Rule B(2) to the adverse party or parties.

(As added Feb. 28, 1966, eff. July 1, 1966.)

**Rule E. Actions in Rem and Quasi in Rem: General Provisions**

(1) APPLICABILITY. Except as otherwise provided, this rule applies to actions in personam with process of maritime attachment and garnishment, actions in rem, and petitory, possessory, and partition actions, supplementing Rules B, C, and D.

(2) COMPLAINT; SECURITY.

(a) *Complaint.* In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

(b) *Security for Costs.* Subject to the provisions of Rule 54(d) and of relevant statutes, the court may, on the filing of the complaint or on the appearance of any defendant, claimant, or any other party, or at any later time, require the plaintiff, defendant, claimant, or other party to give security, or additional security, in such sum as the court shall direct to pay all costs and expenses that shall be awarded against the party by any interlocutory order or by the final judgment, or on appeal by any appellate court.

(3) PROCESS.

(a) In admiralty and maritime proceedings process in rem or of maritime attachment and garnishment may be served only within the district.

(b) *Issuance and Delivery.* Issuance and delivery of process in rem, or of maritime attachment and garnishment, shall be held in abeyance if the plaintiff so requests.

(4) EXECUTION OF PROCESS; MARSHAL'S RETURN; CUSTODY OF PROPERTY; PROCEDURES FOR RELEASE.

(a) *In General.* Upon issuance and delivery of the process, or, in the case of summons with process of attachment and garnishment, when it appears that the defendant cannot be found within the district, the marshal or other person or organization having a warrant shall forthwith execute the process in accordance with this subdivision (4), making due and prompt return.

(b) *Tangible Property.* If tangible property is to be attached or arrested, the marshal or other person or organization having the warrant shall take it into the marshal's possession for safe custody. If the character or situation of the property is such that the taking of actual possession is impracticable, the marshal or other person executing the process shall affix a copy thereof to the property in a conspicuous place and leave a copy of the complaint and process with the person having possession or the person's agent. In furtherance of the marshal's custody of any vessel the marshal is authorized to make a written request to the collector of customs not to grant clearance to such vessel until notified by the marshal or deputy marshal or by the clerk that the vessel has been released in accordance with these rules.

(c) *Intangible Property.* If intangible property is to be attached or arrested the marshal or other person or organization having the warrant shall execute the process by leaving with

the garnishee or other obligor a copy of the complaint and process requiring the garnishee or other obligor to answer as provided in Rules B(3)(a) and C(6); or the marshal may accept for payment into the registry of the court the amount owed to the extent of the amount claimed by the plaintiff with interest and costs, in which event the garnishee or other obligor shall not be required to answer unless alias process shall be served.

(d) *Directions With Respect to Property in Custody.* The marshal or other person or organization having the warrant may at any time apply to the court for directions with respect to property that has been attached or arrested, and shall give notice of such application to any or all of the parties as the court may direct.

(e) *Expenses of Seizing and Keeping Property; Deposit.* These rules do not alter the provisions of Title 28, U.S.C., §1921, as amended, relative to the expenses of seizing and keeping property attached or arrested and to the requirement of deposits to cover such expenses.

(f) *Procedure for Release From Arrest or Attachment.* Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules. This subdivision shall have no application to suits for seamen's wages when process is issued upon a certification of sufficient cause filed pursuant to Title 46, U.S.C. §§603 and 604 [2] or to actions by the United States for forfeitures for violation of any statute of the United States.

(5) RELEASE OF PROPERTY.

(a) *Special Bond.* Whenever process of maritime attachment and garnishment or process in rem is issued the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court. The parties may stipulate the amount and nature of such security. In the event of the inability or refusal of the parties so to stipulate the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller. The bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per cent per annum.

(b) *General Bond.* The owner of any vessel may file a general bond or stipulation, with sufficient surety, to be approved by the court, conditioned to answer the judgment of such court in all or any actions that may be brought thereafter in such court in which the vessel is attached or arrested. Thereupon the execution of all such process against such vessel shall be

---

[2] Repealed by Pub. L. 98–89, §4(b), Aug. 26, 1983, 97 Stat. 600, section 1 of which enacted Title 46, Shipping.

stayed so long as the amount secured by such bond or stipulation is at least double the aggregate amount claimed by plaintiffs in all actions begun and pending in which such vessel has been attached or arrested. Judgments and remedies may be had on such bond or stipulation as if a special bond or stipulation had been filed in each of such actions. The district court may make necessary orders to carry this rule into effect, particularly as to the giving of proper notice of any action against or attachment of a vessel for which a general bond has been filed. Such bond or stipulation shall be indorsed by the clerk with a minute of the actions wherein process is so stayed. Further security may be required by the court at any time.

If a special bond or stipulation is given in a particular case, the liability on the general bond or stipulation shall cease as to that case.

(c) *Release by Consent or Stipulation; Order of Court or Clerk; Costs.* Any vessel, cargo, or other property in the custody of the marshal or other person or organization having the warrant may be released forthwith upon the marshal's acceptance and approval of a stipulation, bond, or other security, signed by the party on whose behalf the property is detained or the party's attorney and expressly authorizing such release, if all costs and charges of the court and its officers shall have first been paid. Otherwise no property in the custody of the marshal, other person or organization having the warrant, or other officer of the court shall be released without an order of the court; but such order may be entered as of course by the clerk, upon the giving of approved security as provided by law and these rules, or upon the dismissal or discontinuance of the action; but the marshal or other person or organization having the warrant shall not deliver any property so released until the costs and charges of the officers of the court shall first have been paid.

(d) *Possessory, Petitory, and Partition Actions.* The foregoing provisions of this subdivision (5) do not apply to petitory, possessory, and partition actions. In such cases the property arrested shall be released only by order of the court, on such terms and conditions and on the giving of such security as the court may require.

(6) REDUCTION OR IMPAIRMENT OF SECURITY. Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing.

(7) SECURITY ON COUNTERCLAIM.

(a) When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given, unless the court directs otherwise.

(b) The plaintiff is required to give security under Rule E(7)(a) when the United States or its corporate instrumentality counterclaims and would have been required to give security to respond in damages if a private party but is relieved by law from giving security.

(8) RESTRICTED APPEARANCE. An appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served.

(9) DISPOSITION OF PROPERTY; SALES.

(a) *Interlocutory Sales; Delivery.*

(i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:

(A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;

(B) the expense of keeping the property is excessive or disproportionate; or

(C) there is an unreasonable delay in securing release of the property.

(ii) In the circumstances described in Rule E(9)(a)(i), the court, on motion by a defendant or a person filing a statement of interest or right under Rule C(6), may order that the property, rather than being sold, be delivered to the movant upon giving security under these rules.

(b) *Sales, Proceeds.* All sales of property shall be made by the marshal or a deputy marshal, or by other person or organization having the warrant, or by any other person assigned by the court where the marshal or other person or organization having the warrant is a party in interest; and the proceeds of sale shall be forthwith paid into the registry of the court to be disposed of according to law.

(10) PRESERVATION OF PROPERTY. When the owner or another person remains in possession of property attached or arrested under the provisions of Rule E(4)(b) that permit execution of process without taking actual possession, the court, on a party's motion or on its own, may enter any order necessary to preserve the property and to prevent its removal.

(As added Feb. 28, 1966, eff. July 1, 1966; amended Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 12, 2006, eff. Dec. 1, 2006.)

## Rule F. Limitation of Liability

(1) TIME FOR FILING COMPLAINT; SECURITY. Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court, as provided in subdivision (9) of this rule, for limitation of liability pursuant to statute. The owner (a) shall deposit with the court, for the benefit

of claimants, a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended; or (b) at the owner's option shall transfer to a trustee to be appointed by the court, for the benefit of claimants, the owner's interest in the vessel and pending freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended. The plaintiff shall also give security for costs and, if the plaintiff elects to give security, for interest at the rate of 6 percent per annum from the date of the security.

(2) COMPLAINT. The complaint shall set forth the facts on the basis of which the right to limit liability is asserted and all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited. The complaint may demand exoneration from as well as limitation of liability. It shall state the voyage if any, on which the demands sought to be limited arose, with the date and place of its termination; the amount of all demands including all unsatisfied liens or claims of lien, in contract or in tort or otherwise, arising on that voyage, so far as known to the plaintiff, and what actions and proceedings, if any, are pending thereon; whether the vessel was damaged, lost, or abandoned, and, if so, when and where; the value of the vessel at the close of the voyage or, in case of wreck, the value of her wreckage, strippings, or proceeds, if any, and where and in whose possession they are; and the amount of any pending freight recovered or recoverable. If the plaintiff elects to transfer the plaintiff's interest in the vessel to a trustee, the complaint must further show any prior paramount liens thereon, and what voyages or trips, if any, she has made since the voyage or trip on which the claims sought to be limited arose, and any existing liens arising upon any such subsequent voyage or trip, with the amounts and causes thereof, and the names and addresses of the lienors, so far as known; and whether the vessel sustained any injury upon or by reason of such subsequent voyage or trip.

(3) CLAIMS AGAINST OWNER; INJUNCTION. Upon compliance by the owner with the requirements of subdivision (1) of this rule all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.

(4) NOTICE TO CLAIMANTS. Upon the owner's compliance with subdivision (1) of this rule the court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice. The date so fixed shall not be less than 30 days after issuance of the notice. For cause shown, the court may enlarge the time within which claims may be filed. The notice shall be published in such newspaper or newspapers as the court may direct once a week for

four successive weeks prior to the date fixed for the filing of claims. The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose. In cases involving death a copy of such notice shall be mailed to the decedent at the decedent's last known address, and also to any person who shall be known to have made any claim on account of such death.

(5) Claims and Answer. Claims shall be filed and served on or before the date specified in the notice provided for in subdivision (4) of this rule. Each claim shall specify the facts upon which the claimant relies in support of the claim, the items thereof, and the dates on which the same accrued. If a claimant desires to contest either the right to exoneration from or the right to limitation of liability the claimant shall file and serve an answer to the complaint unless the claim has included an answer.

(6) Information To Be Given Claimants. Within 30 days after the date specified in the notice for filing claims, or within such time as the court thereafter may allow, the plaintiff shall mail to the attorney for each claimant (or if the claimant has no attorney to the claimant) a list setting forth (a) the name of each claimant, (b) the name and address of the claimant's attorney (if the claimant is known to have one), (c) the nature of the claim, i.e., whether property loss, property damage, death, personal injury etc., and (d) the amount thereof.

(7) Insufficiency of Fund or Security. Any claimant may by motion demand that the funds deposited in court or the security given by the plaintiff be increased on the ground that they are less than the value of the plaintiff's interest in the vessel and pending freight. Thereupon the court shall cause due appraisement to be made of the value of the plaintiff's interest in the vessel and pending freight; and if the court finds that the deposit or security is either insufficient or excessive it shall order its increase or reduction. In like manner any claimant may demand that the deposit or security be increased on the ground that it is insufficient to carry out the provisions of the statutes relating to claims in respect of loss of life or bodily injury; and, after notice and hearing, the court may similarly order that the deposit or security be increased or reduced.

(8) Objections to Claims: Distribution of Fund. Any interested party may question or controvert any claim without filing an objection thereto. Upon determination of liability the fund deposited or secured, or the proceeds of the vessel and pending freight, shall be divided pro rata, subject to all relevant provisions of law, among the several claimants in proportion to the amounts of their respective claims, duly proved, saving, however, to all parties any priority to which they may be legally entitled.

(9) Venue; Transfer. The complaint shall be filed in any district in which the vessel has been attached or arrested to answer for any claim with respect to which the plaintiff seeks to limit liability; or, if the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim. When the vessel has not been attached or arrested to answer the matters aforesaid, and suit has not been commenced

against the owner, the proceedings may be had in the district in which the vessel may be, but if the vessel is not within any district and no suit has been commenced in any district, then the complaint may be filed in any district. For the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to any district; if venue is wrongly laid the court shall dismiss or, if it be in the interest of justice, transfer the action to any district in which it could have been brought. If the vessel shall have been sold, the proceeds shall represent the vessel for the purposes of these rules.

(As added Feb. 28, 1966, eff. July 1, 1966; amended Mar. 2, 1987, eff. Aug. 1, 1987.)

### Rule G. Forfeiture Actions In Rem

(1) SCOPE. This rule governs a forfeiture action in rem arising from a federal statute. To the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply.

(2) COMPLAINT. The complaint must:

(a) be verified;

(b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;

(c) describe the property with reasonable particularity;

(d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

(e) identify the statute under which the forfeiture action is brought; and

(f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

(3) JUDICIAL AUTHORIZATION AND PROCESS.

(a) *Real Property*. If the defendant is real property, the government must proceed under 18 U.S.C. §985.

(b) *Other Property; Arrest Warrant*. If the defendant is not real property:

(i) the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control;

(ii) the court—on finding probable cause—must issue a warrant to arrest the property if it is not in the government's possession, custody, or control and is not subject to a judicial restraining order; and

(iii) a warrant is not necessary if the property is subject to a judicial restraining order.

(c) *Execution of Process*.

(i) The warrant and any supplemental process must be delivered to a person or organization authorized to execute it, who may be: (A) a marshal or any other United States officer or employee; (B) someone under contact with the United States; or (C) someone specially appointed by the court for that purpose.

(ii) The authorized person or organization must execute the warrant and any supplemental process on property in the United States as soon as practicable unless:

(A) the property is in the government's possession, custody, or control; or

(B) the court orders a different time when the complaint is under seal, the action is stayed before the warrant and supplemental process are executed, or the court finds other good cause.

(iii) The warrant and any supplemental process may be executed within the district or, when authorized by statute, outside the district.

(iv) If executing a warrant on property outside the United States is required, the warrant may be transmitted to an appropriate authority for serving process where the property is located.

(4) NOTICE.

(a) *Notice by Publication.*

(i) When Publication Is Required. A judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders. But notice need not be published if:

(A) the defendant property is worth less than $1,000 and direct notice is sent under Rule G(4)(b) to every person the government can reasonably identify as a potential claimant; or

(B) the court finds that the cost of publication exceeds the property's value and that other means of notice would satisfy due process.

(ii) Content of the Notice. Unless the court orders otherwise, the notice must:

(A) describe the property with reasonable particularity;

(B) state the times under Rule G(5) to file a claim and to answer; and

(C) name the government attorney to be served with the claim and answer.

(iii) Frequency of Publication. Published notice must appear:

(A) once a week for three consecutive weeks; or

(B) only once if, before the action was filed, notice of nonjudicial forfeiture of the same property was published on an official internet government forfeiture site for at least 30 consecutive days, or in a newspaper of general circulation for three consecutive weeks in a district where publication is authorized under Rule G(4)(a)(iv).

(iv) Means of Publication. The government should select from the following options a means of publication reasonably calculated to notify potential claimants of the action:

(A) if the property is in the United States, publication in a newspaper generally circulated in the district where the action is filed, where the property was seized, or where property that was not seized is located;

(B) if the property is outside the United States, publication in a newspaper generally circulated in a district where the action is filed, in a newspaper generally circulated in the country where the property is located, or in legal notices published and generally circulated in the country where the property is located; or

(C) instead of (A) or (B), posting a notice on an official internet government forfeiture site for at least 30 consecutive days.

(b) *Notice to Known Potential Claimants.*

(i) Direct Notice Required. The government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B).

(ii) Content of the Notice. The notice must state:

(A) the date when the notice is sent;

(B) a deadline for filing a claim, at least 35 days after the notice is sent;

(C) that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and

(D) the name of the government attorney to be served with the claim and answer.

(iii) Sending Notice.

(A) The notice must be sent by means reasonably calculated to reach the potential claimant.

(B) Notice may be sent to the potential claimant or to the attorney representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case.

(C) Notice sent to a potential claimant who is incarcerated must be sent to the place of incarceration.

(D) Notice to a person arrested in connection with an offense giving rise to the forfeiture who is not incarcerated when notice is sent may be sent to the address that person last gave to the agency that arrested or released the person.

(E) Notice to a person from whom the property was seized who is not incarcerated when notice is sent may be sent to the last address that person gave to the agency that seized the property.

(iv) When Notice Is Sent. Notice by the following means is sent on the date when it is placed in the mail, delivered to a commercial carrier, or sent by electronic mail.

(v) Actual Notice. A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.

(5) RESPONSIVE PLEADINGS.

(a) *Filing a Claim.*

(i) A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must:

(A) identify the specific property claimed;

(B) identify the claimant and state the claimant's interest in the property;

(C) be signed by the claimant under penalty of perjury; and

(D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

(ii) Unless the court for good cause sets a different time, the claim must be filed:

(A) by the time stated in a direct notice sent under Rule G(4)(b);

(B) if notice was published but direct notice was not sent to the claimant or the claimant's attorney, no later than 30 days after final publication of newspaper notice or legal notice under Rule G(4)(a) or no later than 60 days after the first day of publication on an official internet government forfeiture site; or

(C) if notice was not published and direct notice was not sent to the claimant or the claimant's attorney:

(1) if the property was in the government's possession, custody, or control when the complaint was filed, no later than 60 days after the filing, not counting any time when the complaint was under seal or when the action was stayed before execution of a warrant issued under Rule G(3)(b); or

(2) if the property was not in the government's possession, custody, or control when the complaint was filed, no later than 60 days after the government complied with 18 U.S.C. §985(c) as to real property, or 60 days after process was executed on the property under Rule G(3).

(iii) A claim filed by a person asserting an interest as a bailee must identify the bailor, and if filed on the bailor's behalf must state the authority to do so.

(b) *Answer.* A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim. A claimant waives an objection to in rem jurisdiction or to venue if the objection is not made by motion or stated in the answer.

(6) SPECIAL INTERROGATORIES.

(a) *Time and Scope.* The government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed. But if the claimant serves a motion to dismiss the action, the government must serve the interrogatories within 21 days after the motion is served.

(b) *Answers or Objections.* Answers or objections to these interrogatories must be served within 21 days after the interrogatories are served.

(c) *Government's Response Deferred.* The government need not respond to a claimant's motion to dismiss the action under Rule G(8)(b) until 21 days after the claimant has answered these interrogatories.

(7) PRESERVING, PREVENTING CRIMINAL USE, AND DISPOSING OF PROPERTY; SALES.

(a) *Preserving and Preventing Criminal Use of Property.* When the government does not have actual possession of the defendant property the court, on motion or on its own, may enter any order necessary to preserve the property, to prevent its removal or encumbrance, or to prevent its use in a criminal offense.

(b) *Interlocutory Sale or Delivery.*

(i) Order to Sell. On motion by a party or a person having custody of the property, the court may order all or part of the property sold if:

(A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;

(B) the expense of keeping the property is excessive or is disproportionate to its fair market value;

(C) the property is subject to a mortgage or to taxes on which the owner is in default; or

(D) the court finds other good cause.

(ii) Who Makes the Sale. A sale must be made by a United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates.

(iii) Sale Procedures. The sale is governed by 28 U.S.C. §§ 2001, 2002, and 2004, unless all parties, with the court's approval, agree to the sale, aspects of the sale, or different procedures.

(iv) Sale Proceeds. Sale proceeds are a substitute res subject to forfeiture in place of the property that was sold. The proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action.

(v) Delivery on a Claimant's Motion. The court may order that the property be delivered to the claimant pending the conclusion of the action if the claimant shows circumstances that would permit sale under Rule G(7)(b)(i) and gives security under these rules.

(c) *Disposing of Forfeited Property.* Upon entry of a forfeiture judgment, the property or proceeds from selling the property must be disposed of as provided by law.

(8) MOTIONS.

(a) *Motion To Suppress Use of the Property as Evidence.* If the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence. Suppression does not affect forfeiture of the property based on independently derived evidence.

(b) *Motion To Dismiss the Action.*

(i) A claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b).

(ii) In an action governed by 18 U.S.C. § 983(a)(3)(D) the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property. The sufficiency of the complaint is governed by Rule G(2).

(c) *Motion To Strike a Claim or Answer.*

   (i) At any time before trial, the government may move to strike a claim or answer:

      (A) for failing to comply with Rule G(5) or (6), or

      (B) because the claimant lacks standing.

   (ii) The motion:

      (A) must be decided before any motion by the claimant to dismiss the action; and

      (B) may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence.

(d) *Petition To Release Property.*

   (i) If a United States agency or an agency's contractor holds property for judicial or nonjudicial forfeiture under a statute governed by 18 U.S.C. §983(f), a person who has filed a claim to the property may petition for its release under §983(f).

   (ii) If a petition for release is filed before a judicial forfeiture action is filed against the property, the petition may be filed either in the district where the property was seized or in the district where a warrant to seize the property issued. If a judicial forfeiture action against the property is later filed in another district—or if the government shows that the action will be filed in another district—the petition may be transferred to that district under 28 U.S.C. §1404.

(e) *Excessive Fines.* A claimant may seek to mitigate a forfeiture under the Excessive Fines Clause of the Eighth Amendment by motion for summary judgment or by motion made after entry of a forfeiture judgment if:

   (i) the claimant has pleaded the defense under Rule 8; and

   (ii) the parties have had the opportunity to conduct civil discovery on the defense.

(9) TRIAL. Trial is to the court unless any party demands trial by jury under Rule 38.

(As added Apr. 12, 2006, eff. Dec. 1, 2006; amended Mar. 26, 2009, eff. Dec. 1, 2009.)

## SUPPLEMENTAL RULES FOR SOCIAL SECURITY ACTIONS UNDER 42 U.S.C. §405(g)[1]

### Rule 1. Review of Social Security Decisions Under 42 U.S.C. §405(g)

(a) APPLICABILITY OF THESE RULES. These rules govern an action under 42 U.S.C. §405(g) for review on the record of a final decision of the Commissioner of Social Security that presents only an individual claim.

(b) FEDERAL RULES OF CIVIL PROCEDURE. The Federal Rules of Civil Procedure also apply to a proceeding under these rules, except to the extent that they are inconsistent with these rules.

---

[1] Title is set out as presented for Congressional review; see House Document 117–110. Title appears as "Supplemental Rules for Social Security Review Actions Under 42 U.S.C. §405(g)" in the order of the Supreme Court, April 11, 2022, adopting these rules.

(As added Apr. 11, 2022, eff. Dec. 1, 2022.)

### Rule 2. Complaint

(a) COMMENCING ACTION. An action for review under these rules is commenced by filing a complaint with the court.

(b) CONTENTS.

(1) The complaint must:

(A) state that the action is brought under §405(g);

(B) identify the final decision to be reviewed, including any identifying designation provided by the Commissioner with the final decision;

(C) state the name and the county of residence of the person for whom benefits are claimed;

(D) name the person on whose wage record benefits are claimed; and

(E) state the type of benefits claimed.

(2) The complaint may include a short and plain statement of the grounds for relief.

(As added Apr. 11, 2022, eff. Dec. 1, 2022.)

### Rule 3. Service

The court must notify the Commissioner of the commencement of the action by transmitting a Notice of Electronic Filing to the appropriate office within the Social Security Administration's Office of General Counsel and to the United States Attorney for the district where the action is filed. If the complaint was not filed electronically, the court must notify the plaintiff of the transmission. The plaintiff need not serve a summons and complaint under Civil Rule 4.

(As added Apr. 11, 2022, eff. Dec. 1, 2022.)

### Rule 4. Answer; Motions; Time

(a) SERVING THE ANSWER. An answer must be served on the plaintiff within 60 days after notice of the action is given under Rule 3.

(b) THE ANSWER. An answer may be limited to a certified copy of the administrative record, and to any affirmative defenses under Civil Rule 8(c). Civil Rule 8(b) does not apply.

(c) MOTIONS UNDER CIVIL RULE 12. A motion under Civil Rule 12 must be made within 60 days after notice of the action is given under Rule 3.

(d) TIME TO ANSWER AFTER A MOTION UNDER RULE 4(c). Unless the court sets a different time, serving a motion under Rule 4(c) alters the time to answer as provided by Civil Rule 12(a)(4).

(As added Apr. 11, 2022, eff. Dec. 1, 2022.)

### Rule 5. Presenting the Action for Decision

The action is presented for decision by the parties' briefs. A brief must support assertions of fact by citations to particular parts of the record.

(As added Apr. 11, 2022, eff. Dec. 1, 2022.)

### Rule 6. Plaintiff's Brief

The plaintiff must file and serve on the Commissioner a brief for the requested relief within 30 days after the answer is filed or 30 days after entry of an order disposing of the last remaining motion filed under Rule 4(c), whichever is later.

(As added Apr. 11, 2022, eff. Dec. 1, 2022.)

### Rule 7. Commissioner's Brief

The Commissioner must file a brief and serve it on the plaintiff within 30 days after service of the plaintiff's brief.

(As added Apr. 11, 2022, eff. Dec. 1, 2022.)

### Rule 8. Reply Brief

The plaintiff may file a reply brief and serve it on the Commissioner within 14 days after service of the Commissioner's brief.

(As added Apr. 11, 2022, eff. Dec. 1, 2022.)

○

Attachment 2

# UNITED STATES DISTRICT COURT
## Northern District of California
### CIVIL LOCAL RULES

# CONTENTS

| | | |
|---|---|---|
| 1. | TITLE; SCOPE; DEFINITIONS | 9 |
| 1-1. | Title | 9 |
| 1-2. | Scope, Purpose and Construction | 9 |
| (a) | Scope | 9 |
| (b) | Supplement to Federal Rules | 9 |
| (c) | Temporary Suspension of Local Rules | 9 |
| 1-3. | Effective Date | 9 |
| 1-4. | Sanctions and Penalties for Noncompliance | 9 |
| 1-5. | Definitions | 9 |
| (a) | Clerk | 9 |
| (b) | Court | 9 |
| (c) | Day | 9 |
| (d) | Ex parte | 9 |
| (e) | File | 10 |
| (f) | Fed. R. Civ. P | 10 |
| (g) | Fed. R. Crim. P | 10 |
| (h) | Fed. R. App. P | 10 |
| (i) | Federal Rule | 10 |
| (j) | General Orders | 10 |
| (k) | General Duty Judge | 10 |
| (l) | Judge | 10 |
| (m) | Lodge | 10 |
| (n) | Meet and confer | 10 |
| (o) | Standing Orders of Individual Judges | 10 |
| (p) | Unavailability | 10 |
| 3. | COMMENCEMENT AND ASSIGNMENT OF ACTION | 11 |
| 3-1. | Regular Session | 11 |
| 3-2. | Commencement and Assignment of Action | 11 |
| (a) | Civil Cover Sheet | 11 |
| (b) | Commencement of Action | 11 |
| (c) | Assignment to a Division | 11 |
| (d) | San Francisco and Oakland | 11 |
| (e) | San Jose | 11 |
| (f) | Eureka | 11 |
| (g) | Assignment of Action to the Eureka Division | 11 |
| (h) | Transfer of Actions and Proceedings | 11 |
| 3-3. | Assignment of Action to a Judge | 12 |
| (a) | Assignment | 12 |
| (b) | Multiple Filings | 12 |
| (c) | Refiled Action | 12 |

3-4.  Papers Presented for Filing.................................................................................. 12
    (a)   First Page Requirements....................................................................... 12
    (b)   Caption for Consolidated Cases ........................................................ 13
    (c)   General Requirements .......................................................................... 13
    (d)   Citation to Authorities ......................................................................... 13

3-5.  Jurisdictional Statement ..................................................................................... 14
    (a)   Jurisdiction .............................................................................................. 14
    (b)   Divisional Assignment ......................................................................... 14

3-6.  Jury Demand........................................................................................................... 14
    (a)   Included in Pleading ............................................................................. 14
    (b)   Marking of Civil Cover Sheet Insufficient ................................... 14

3-7.  Filing and Certification in Private Securities Actions ............................. 14
    (a)   Civil Cover Sheet Notation Requirement...................................... 14
    (b)   Certification by Filing Party Seeking to Serve as Lead Plaintiff ......... 14
    (c)   Certification by Nonfiling Party Seeking to Serve as Lead Plaintiff. .......... 15
    (d)   Certification by Lawyers Seeking to Serve as Class Counsel. ..................... 15

3-8.  Claim of Unconstitutionality ............................................................................ 15
    (a)   Federal Statute ....................................................................................... 15
    (b)   State Statute ............................................................................................. 16

3-9.  Parties ....................................................................................................................... 16
    (a)   Natural Person Appearing Pro Se.................................................... 16
    (b)   Corporation or Other Entity. ............................................................. 16
    (c)   Government or Governmental Agency ......................................... 16

3-10. Ex Parte Motion to Proceed In Forma Pauperis ...................................... 16
    (a)   Motion to Proceed In Forma Pauperis .......................................... 16
    (b)   Content of Motion ................................................................................ 16
    (c)   Determination of the Motion ............................................................ 17

3-11. Failure to Notify of Address Change ............................................................ 17
    (a)   Duty to Notify ......................................................................................... 17
    (b)   Dismissal Due to Failure .................................................................... 17

3-12. Related Cases ........................................................................................................ 17
    (a)   Definition of Related Cases............................................................... 17
    (b)   Administrative Motion to Consider Whether Cases Should be Related ...... 17
    (c)   Sua Sponte Judicial Referral for Purpose of Determining Relationship ...... 17
    (d)   Content of Motion ................................................................................ 17
    (e)   Response to Motion ............................................................................. 18
    (f)   Order Granting or Denying Relationship ..................................... 18
    (g)   Effect of Order on Case Schedule ................................................... 18
    (h)   Relating Actions for Review on an Administrative Record. ................ 18

3-13. Notice of Pendency of Other Action or Proceeding ............................... 19
    (a)   Notice. ....................................................................................................... 19
    (b)   Content of Notice .................................................................................. 19
    (c)   Procedure After Filing ........................................................................ 19
    (d)   Order.......................................................................................................... 19

3-14. Disqualification of Assigned Judge ........................................................................ 19
3-15. Disclosure of Conflicts and Interested Entities or Persons ................................... 20
    (a)    Requirements. Each non-governmental party must: ........................................ 20
    (b)    Contents ........................................................................................................ 20
    (c)    Form of Certification ..................................................................................... 20

4.    PROCESS: ISSUANCE AND SERVICE .............................................................. 21
4-1. Limitation on Service by Marshal .......................................................................... 21
4-2. Service of Supplementary Material ......................................................................... 21

5.    SERVICE AND FILING OF PLEADINGS AND OTHER PAPERS ..................... 22
5-1. Electronic Case Filing ............................................................................................ 22
    (a)    Electronic Filing, Signing, or Verification. ................................................... 22
    (b)    Cases and Parties Subject to Electronic Filing. ............................................. 22
    (c)    Registration, Appearance and Access ........................................................... 22
    (d)    Filing and Service of Pleadings ..................................................................... 23
    (e)    Manual Filing ................................................................................................ 24
    (f)    Proposed Orders ............................................................................................ 24
    (g)    Exhibits ......................................................................................................... 24
    (h)    Service of Electronically Filed Documents ................................................... 25
    (i)    Signatures ...................................................................................................... 25
    (j)    Sanctions for Non-Compliance ..................................................................... 26

5-2. Manual Filing [Withdrawn] ..................................................................................... 26
5-3. Facsimile Filings [Withdrawn] ................................................................................ 26
5-4. Drop Box Filings ..................................................................................................... 26
    (a)    Documents Which May Be Filed ................................................................... 26
    (b)    Drop Box Locations and Availability ............................................................ 26
    (c)    Filing Date of Drop Box Documents ............................................................. 27

5-5. Certificate of Service .............................................................................................. 27
    (a)    Form .............................................................................................................. 27
    (b)    Sanction for Failure to Provide Certificate ................................................... 27

6.    TIME ..................................................................................................................... 28
6-1. Enlarging or Shortening Time ................................................................................. 28
    (a)    When Stipulation Permissible Without Court Order ...................................... 28
    (b)    When Court Order Necessary to Change Time ............................................... 28

6-2. Stipulated Request for Order Changing Time .......................................................... 28
    (a)    Form and Content .......................................................................................... 28
    (b)    Action by the Court ....................................................................................... 28

6-3. Motion to Change Time ........................................................................................... 28
    (a)    Form and Content .......................................................................................... 28
    (b)    Opposition to Motion to Change Time ........................................................... 29
    (c)    Delivery of Manually Filed Documents to Other Parties .............................. 29
    (d)    Action by the Court ....................................................................................... 29

7.    MOTION PRACTICE ........................................................................................... 30
7-1. Motions ................................................................................................................... 30
    (a)    Types of Motions .......................................................................................... 30
    (b)    To Whom Motions Made ............................................................................... 30
    (c)    Unassigned Case or Judge Unavailable ......................................................... 30

7-2.   Notice and Supporting Papers ................................................................................ 30
    (a)    Time ............................................................................................................ 30
    (b)    Form ........................................................................................................... 30
    (c)    Proposed Order........................................................................................... 30
    (d)    Affidavits or Declarations ......................................................................... 30

7-3.   Opposition; Reply; Supplementary Material ......................................................... 31
    (a)    Opposition .................................................................................................. 31
    (b)    Statement of Nonopposition ...................................................................... 31
    (c)    Reply .......................................................................................................... 31
    (d)    Supplementary Material ............................................................................. 31

7-4.   Brief or Memorandum of Points and Authorities.................................................. 31
    (a)    Content ....................................................................................................... 31
    (b)    Length......................................................................................................... 32

7-5.   Affidavit or Declaration ......................................................................................... 32
    (a)    Affidavit or Declaration Required.............................................................. 32
    (b)    Form ........................................................................................................... 32

7-6.   Oral Testimony Concerning Motion ...................................................................... 32
7-7.   Continuance of Hearing or Withdrawal of Motion ............................................... 32
    (a)    Before Opposition is Filed ......................................................................... 32
    (b)    After Opposition is Filed............................................................................ 32
    (c)    Keeping Track of Hearing Dates................................................................ 32
    (d)    Effect on Time for Filing Opposition or Reply ......................................... 32
    (e)    Withdrawal................................................................................................. 32

7-8.   Motions for Sanctions — Form and Timing .......................................................... 33
7-9.   Motion for Reconsideration.................................................................................... 33
    (a)    Leave of Court Requirement...................................................................... 33
    (b)    Form and Content of Motion for Leave ..................................................... 33
    (c)    Prohibition Against Repetition of Argument ............................................. 33
    (d)    Determination of Motion ........................................................................... 33

7-10. Ex Parte Motions.................................................................................................... 34
7-11. Motion for Administrative Relief............................................................................ 34
    (a)    Form and Content of Motions .................................................................... 34
    (b)    Opposition to or Support for Motion for Administrative Relief ................ 34
    (c)    Action by the Court.................................................................................... 34

7-12. Stipulations ........................................................................................................ 34
7-13. Notice Regarding Submitted Matters .......................................................... 34
7-14. Designation Not for Citation [withdrawn] ................................................. 35

10.   FORM OF PAPERS ........................................................................................... 36
10-1. Amended Pleadings ..................................................................................... 36

11.   Attorneys ............................................................................................................ 37
11-1. The Bar of this Court .................................................................................. 37
11-2. Counsel for the United States ..................................................................... 38
11-3. Pro Hac Vice ............................................................................................... 38
11-4. Standards of Professional Conduct ............................................................. 39
11-5. Withdrawal from Case ................................................................................. 40
11-6. Discipline .................................................................................................... 40
        (h)     General ......................................................................................... 40
        (i)     "Attorney" Defined ..................................................................... 41
        (j)     Standing Committee on Professional Conduct ........................... 41
        (k)     Professional Conduct Liaison Judge. ......................................... 41
        (l)     Matters Referred To The Standing Committee ........................... 41
        (m)     Costs ........................................................................................... 43

11-7. Reciprocal Discipline and Discipline Following Felony Conviction ......... 43
        (a)     Required Notice of Change in Status .......................................... 43
        (b)     Order to Show Cause ................................................................... 43

11-8. Sanctions for Unauthorized Practice ........................................................ 44
11-9. Student Practice .......................................................................................... 44
        (a)     Permission to Appear .................................................................. 44
        (b)     Permitted Activities .................................................................... 44
        (c)     Requirements for Eligibility ....................................................... 44

16.   CASE MANAGEMENT AND PRETRIAL CONFERENCES ......................... 46
16-1. Definitions ................................................................................................... 46
16-2. Order Setting Initial Case Management Conference ................................... 46
        (a)     Issuance and Service of Order .................................................... 46
        (b)     Case Management Schedule in Removed Cases ......................... 46
        (c)     Case Management Schedule in Transferred Cases ...................... 46
        (d)     Relief from Case Management Schedule ..................................... 46
        (e)     Limitation on Stipulations ........................................................... 46

16-3. Lead Trial Counsel Required to Confer ...................................................... 47
16-4. Procedure in Bankruptcy Appeals .............................................................. 47
16-5. Procedure in Actions for Review on an Administrative Record ................. 47
16-6. Procedure in U.S. Debt Collection Cases ................................................... 47
        (a)     Identification ............................................................................... 47
        (b)     Assignment .................................................................................. 47
        (c)     Collection Proceedings ................................................................ 47

16-7. Procedure in Other Exempt Cases .............................................................. 47
16-8. Alternative Dispute Resolution (ADR) in the Northern District ................ 47
        (a)     District Policy Regarding ADR .................................................... 47
        (b)     ADR Certification ........................................................................ 48
        (c)     Stipulation to ADR Process ......................................................... 48
        (d)     Selection at Case Management Conference. ................................ 48

      (e)     ADR Phone Conference ........................................................................... 49

  16-9. Case Management Statement and Proposed Order........................................ 49

      (a)     Joint or Separate Case Management Statement.................................. 49

      (b)     Case Management Statement in Class Action ..................................... 49

  16-10.      Case Management Conference ............................................................. 50

      (a)     Initial Case Management Conference ................................................. 50

      (b)     Case Management Orders .................................................................... 50

      (c)     Subsequent Case Management Conferences ....................................... 51

      (d)     Subsequent Case Management Statements ......................................... 51

23.    CLASS ACTIONS ............................................................................................... 52

  23-1. Private Securities Actions ............................................................................. 52

      (a)     Filing and Serving Required Notices ................................................. 52

      (b)     Motion to Serve as Lead Plaintiff...................................................... 52

26.    GENERAL PROVISIONS GOVERNING DISCOVERY ................................. 53

  26-1. Custodian of Discovery Documents .............................................................. 53

30.    DEPOSITIONS .................................................................................................... 54

  30-1. Required Consultation Regarding Scheduling .............................................. 54

  30-2. Numbering of Deposition Pages and Exhibits ............................................... 54

      (a)     Sequential Numbering of Pages ......................................................... 54

      (b)     Sequential Numbering of Exhibits ..................................................... 54

33.    INTERROGATORIES ......................................................................................... 55

  33-1. Form of Answers and Objections ................................................................... 55

  33-2. Demands that a Party Set Forth the Basis for a Denial of a Requested Admission ................. 55

  33-3. Motions for Leave to Propound More Interrogatories Than Permitted by Fed. R. Civ. P. 33 ... 55

34.    PRODUCTION OF DOCUMENTS AND THINGS ........................................... 56

  34-1. Form of Responses to Requests for Production ............................................. 56

36.    REQUESTS FOR ADMISSION .......................................................................... 57

  36-1. Form of Responses to Requests for Admission.............................................. 57

  36-2. Demands that a Party Set Forth the Basis for a Denial of a Requested Admission ................. 57

37.    MOTIONS TO COMPEL DISCLOSURE OR  DISCOVERY OR FOR SANCTIONS....................... 58

  37-1. Procedures for Resolving Disputes ............................................................... 58

      (a)     Conference Between Counsel Required .............................................. 58

      (b)     Requests for Intervention During a Discovery Event......................... 58

  37-2. Form of Motions to Compel .......................................................................... 58

  37-3. Discovery Cut-Off; Deadline to File Discovery Motions .............................. 58

  37-4. Motions for Sanctions under Fed. R. Civ. P. 37............................................ 59

40.    TRIAL ................................................................................................................. 60

  40-1. Continuance of Trial Date; Sanctions for Failure to Proceed........................ 60

54.    COSTS ................................................................................................................. 61

  54-1. Filing of Bill of Costs ................................................................................... 61

      (a)     Time for Filing and Content ............................................................... 61

      (b)     Effect of Service ................................................................................. 61

      (c)     Waiver of Costs .................................................................................. 61

54-2. Objections to Bill of Costs .................................................................................. 61
    (a)    Time for Filing Objections ................................................................ 61
    (b)    Meet and Confer Requirement .......................................................... 61

54-3. Standards for Taxing Costs ........................................................................... 61
    (a)    Fees for Filing and Service of Process .............................................. 61
    (b)    Reporters' Transcripts ...................................................................... 61
    (c)    Depositions ....................................................................................... 61
    (d)    Reproduction and Exemplification ................................................... 62
    (e)    Witness Expenses ............................................................................. 62
    (f)    Fees for Masters and Receivers ........................................................ 62
    (g)    Costs on Appeal ............................................................................... 62
    (h)    Costs of Bonds and Security ............................................................. 62

54-4. Determination of Taxable Costs ..................................................................... 62
    (a)    Supplemental Documentation ........................................................... 62
    (b)    Taxation of Costs ............................................................................. 62

54-5. Motion for Attorney's Fees ........................................................................... 62
    (a)    Time for Filing Motion ..................................................................... 62
    (b)    Form of Motion ................................................................................ 63

56.    SUMMARY JUDGMENT ..................................................................................... 64
56-1. Notice of Motion .......................................................................................... 64
56-2. Separate or Joint Statement of Undisputed Facts ........................................... 64
    (a)    No Separate Statement Allowed Without Court Order ........................ 64
    (b)    Procedure if Joint Statement Ordered ............................................... 64

56-3. Issues Deemed Established ........................................................................... 64
65.    INJUNCTIONS .................................................................................................. 65
65-1. Temporary Restraining Orders ...................................................................... 65
    (a)    Documentation Required ................................................................... 65
    (b)    [Withdrawn] ..................................................................................... 65
    (c)    Form of Temporary Restraining Order ............................................. 65
    (d)    Notification to Clerk ......................................................................... 65

65-2. Motion for Preliminary Injunction ................................................................ 65
65.1 SECURITY ......................................................................................................... 66
    65.1-1.    Security ........................................................................................ 66
    (a)    When Required ................................................................................. 66
    (b)    Qualifications of Surety .................................................................... 66
    (c)    Court Officer as Surety ..................................................................... 66
    (d)    Examination of Surety ...................................................................... 66

66.    PREJUDGMENT REMEDIES ............................................................................... 67
66-1. Appointment of Receiver .............................................................................. 67
    (a)    Time for Motion ............................................................................... 67
    (b)    Temporary Receiver ......................................................................... 67
    (c)    Permanent Receiver .......................................................................... 67
    (d)    Parties to be Notified ........................................................................ 67
    (e)    Bond ................................................................................................ 67

66-2. Employment of Attorneys, Accountants or Investigators ............................................. 67
66-3. Motion for Fees ......................................................................................................... 67
66-4. Deposit of Funds ....................................................................................................... 67
66-5. Reports ...................................................................................................................... 67
66-6. Notice of Hearings .................................................................................................... 67
72.  MAGISTRATE JUDGES; PRETRIAL ORDERS............................................................ 69
72-1. Powers of Magistrate Judge ..................................................................................... 69
72-2. Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge ............ 69
72-3. Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge ........ 69
    (a)    Form of Motion and Response ......................................................... 69
    (b)    Associated Administrative Motions ................................................ 69
    (c)    Record before District Judge .......................................................... 69
73.  MAGISTRATE JUDGES; TRIAL BY CONSENT ............................................................ 71
73-1. Time for Consent to Magistrate Judge ...................................................................... 71
    (a)    Cases Initially Assigned to a Magistrate Judge .............................. 71
    (b)    Cases Initially Assigned to a District Judge ................................... 71
77.  DISTRICT COURT AND CLERK .................................................................................... 72
77-1. Locations and Hours .................................................................................................. 72
    (a)    Locations ........................................................................................ 72
    (b)    Hours .............................................................................................. 72
77-2. Orders Grantable by Clerk ........................................................................................ 72
77-3. Photography and Public Broadcasting [Withdrawn] ................................................. 72
77-4. Official Notices ......................................................................................................... 72
    (a)    Bulletin Board ................................................................................ 73
    (b)    Website ........................................................................................... 73
    (c)    Newspapers .................................................................................... 73
77-5. Security of the Court .................................................................................................. 73
77-6. Weapons in the Courthouse and Courtroom .............................................................. 73
    (a)    Prohibition on Unauthorized Weapons .......................................... 73
    (b)    Use of Weapons as Evidence ......................................................... 73
77-7. Court Library ............................................................................................................. 73
77-8. Complaints Against Judges ....................................................................................... 73
79.  BOOKS AND RECORDS KEPT BY THE CLERK ........................................................... 75
79-1. Transcript and Designation of Record on Appeal ..................................................... 75
79-2. Exclusions from Record on Appeal ........................................................................... 75
79-3. Files; Custody and Withdrawal ................................................................................. 75
79-4. Custody and Retention of Trial Exhibits .................................................................. 75
    (a)    Custody of Exhibits During Trial or Evidentiary Hearing ............. 75
    (b)    Retention of Exhibits Upon Conclusion of Proceeding .................. 75
79-5. Filing Documents Under Seal in Civil Cases ............................................................ 76
83.  AMENDMENT OF THE LOCAL RULES ........................................................................ 79
83-1. Method of Amendment .............................................................................................. 79
83-2. Procedure for Public Comment on Local Rules ........................................................ 79
    (a)    Public Submissions ........................................................................ 79
    (b)    Publication ...................................................................................... 79

CIVIL LOCAL RULES

# 1.  TITLE; SCOPE; DEFINITIONS

**1-1.    Title**

These are the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California. They should be cited as "Civil L.R.___ "

**1-2.    Scope, Purpose and Construction**

**(a)    Scope**. These local rules are promulgated pursuant to 28 U.S.C. § 2071 and Fed. R. Civ. P. 83. They apply to civil actions filed in this Court. The Court also has promulgated separate local rules in the following subject areas:

**(1)**    Admiralty and Maritime;

**(2)**    Alternative Dispute Resolution;

**(3)**    Bankruptcy;

**(4)**    Criminal Proceedings;

**(5)**    Habeas Corpus Petitions; and

**(6)**    Patent.

**(b)    Supplement to Federal Rules**. These local rules supplement the applicable Federal Rules. They shall be construed so as to be consistent with the Federal Rules and to promote the just, efficient, speedy, and economical determination of every action and proceeding.

**(c)    Temporary Suspension of Local Rules.**  Any of these Local Rules may be temporarily suspended for good cause by General Order or by Order of the Chief Judge.

**1-3.    Effective Date**

These rules take effect on November 1, 2021. They govern civil cases filed on or after that date. For actions pending on November 1, 2021, if fewer than ten days remain to perform an act otherwise governed by these rules, the provisions of the local rules that were in effect on October 31, 2021, shall apply to that act.

**1-4.    Sanctions and Penalties for Noncompliance**

Failure by counsel or a party to comply with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any authorized sanction.

**1-5.    Definitions**

**(a)    Clerk**. "Clerk" refers to the Clerk or a Deputy Clerk of the Court.

**(b)    Court**. Except where the context otherwise requires, the word "Court" refers to the United States District Court for the Northern District of California and to a Judge acting on behalf of that Court with respect to a matter within the Court's jurisdiction.

**(c)    Day**. For computation of time under these local rules, "day" shall have the meaning given in Fed. R. Civ. P. 6(a).

**(d)    Ex parte**. "Without other party." Ex parte means contact with the Court without the advance knowledge or contemporaneous participation of all other parties.

**(e)** **File**. "File" means delivery to and acceptance by the Clerk of a document, including an electronic document, which is approved for filing and which will be included in the official files of the Court and noted in the docket of the case.

**(f)** **Fed. R. Civ. P**. "Fed. R. Civ. P." means the Federal Rules of Civil Procedure.

**(g)** **Fed. R. Crim. P**. "Fed. R. Crim. P." means the Federal Rules of Criminal Procedure.

**(h)** **Fed. R. App. P**. "Fed. R. App. P." means the Federal Rules of Appellate Procedure.

**(i)** **Federal Rule**. "Federal Rule" means any applicable Federal Rule.

**(j)** **General Orders**. "General Orders" are made by the Chief Judge or by the Court relating to Court administration. When the Court deems it appropriate, a General Order also may be used to promulgate modifications of these local rules. Such General Orders shall remain in effect until the rules are properly amended.

**(k)** **General Duty Judge**. The "General Duty Judge" is the Judge designated by the Chief Judge to act for the Court in matters for which there is no assigned Judge, or when the assigned Judge is unavailable. The name of the Judge serving as General Duty Judge shall be made available by the office of the Clerk.

**(l)** **Judge**. Unless the context otherwise indicates, the term "Judge," or "assigned Judge" refers to any United States District Judge, any United States Bankruptcy Judge, or to any full-time or part-time United States Magistrate Judge.

**(m)** **Lodge**. When a statute, rule, or order permits a document to be submitted to the Court but does not permit the document to be "filed" (e.g., proposed trial exhibits or deposition transcripts), the document may be "lodged" with the Clerk's office. The Clerk will stamp the document "Received" and promptly deliver it to the Chambers of the Judge for whom the document is intended.

**(n)** **Meet and confer**. "Meet and confer" or "confer" means to communicate directly and to discuss in good faith the issue(s) required under the particular Rule or order. Unless these Local Rules otherwise provide or a Judge otherwise orders, such communication may take place by telephone. The mere sending of a written, electronic, or voice-mail communication, however, does not satisfy a requirement to "meet and confer" or to "confer." Rather, this requirement can be satisfied only through direct dialogue and discussion – either in a face to face meeting or in a telephone conversation.

<div align="center">

**Commentary**
See Fed. R. Civ. P. 26(f).

</div>

**(o)** **Standing Orders of Individual Judges**. "Standing Orders" are orders by a Judge governing the conduct of a class or category of actions or proceedings assigned to that Judge. It is the policy of the Court to provide notice of any applicable Standing Orders to parties before they are subject to sanctions for violating such orders. Nothing in these local rules precludes a Judge from issuing Standing Orders to govern matters not covered by these local rules or by the Federal Rules.

**(p)** **Unavailability**. This Court is in continuous session. To the extent reasonably feasible, each active Judge of this Court will be available at his or her assigned courthouse during the normal hours the Clerk has established pursuant to Civil L.R. 77-1. A Judge who will be absent from the District for one court day or more shall post a notice to that effect on the official calendar of the Court. If a Judge is unavailable, any motion or matter requesting immediate judicial determination shall be referred to the General Duty Judge. If the General Duty Judge is unavailable, the Clerk shall assign the matter to any available Judge of this Court.

# 3.  COMMENCEMENT AND ASSIGNMENT OF ACTION

**3-1.  Regular Session**

The Court shall be in continuous session in the following locations: San Francisco Division, Oakland Division, San Jose Division, and Eureka Division. From time to time sessions may be held at other locations within the district as the Court may order.

**3-2.  Commencement and Assignment of Action**

**(a)    Civil Cover Sheet**. Every complaint, petition, or other paper initiating a civil action (except for pro se prisoner complaints and petitions) must be filed with a completed civil cover sheet on a form approved by the Court.

**Cross Reference**

See Civil L.R. 3-6(b) "*Jury Demand; Marking of Civil Cover Sheet Insufficient;*"
Civil L.R. 3-7(a) "*Civil Cover Sheet Requirement in Private Securities Actions*"

**(b)    Commencement of Action**. An action may be commenced within the meaning of Fed. R. Civ. P. 3 at any office of the Clerk for this district. In cases that permit or require manual filing, once an action is commenced, subsequent manual filings may be made in any division within the district, except that manual filings in matters assigned to the San Francisco, San Jose, or Oakland divisions may not be filed in the Eureka-McKinleyville division.

**(c)    Assignment to a Division**. The Clerk shall assign civil actions and proceedings pursuant to the Court's Assignment Plan (General Order No. 44). For those case categories which are not district-wide, the Clerk shall assign the case to the court division serving the county in which the action arises.  A civil action arises in the county where a substantial part of the events or omissions giving rise to the claim occurred, or where a substantial part of the property that is the subject of the action is situated.

**(d)    San Francisco and Oakland**. Except as provided in Civil L.R. 3-2(c), all civil actions that arise in the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo or Sonoma shall be assigned to the San Francisco Division or the Oakland Division.

**(e)    San Jose**. Except as provided in Civil L.R. 3-2(c), all civil actions that arise in the counties of Santa Clara, Santa Cruz, San Benito or Monterey shall be assigned to the San Jose Division.

**(f)    Eureka**. Except as provided in Civil L.R. 3-2(c), all civil actions that arise in the counties of Del Norte, Humboldt, Lake, and Mendocino, except for cases not assigned to the Magistrate Judges pursuant to the Court's Assignment Plan, shall be assigned to the Eureka Division.

**Cross Reference**
See General Order No. 44, Assignment Plan.

**(g)    Assignment of Action to the Eureka Division**. All cases assigned to the Eureka Division shall be assigned to the full-time Magistrate Judge presiding in that division. Such assignments are subject to the provisions of Civil L.R. 73 and require the consent of the parties. Any case for which all parties do not consent will be reassigned to a District Judge in the San Francisco, Oakland, or San Jose division.

**(h)    Transfer of Actions and Proceedings**. Whenever a Judge finds, upon the Judge's own motion or the motion of any party, that (1) a civil action has not been assigned to the

proper division within this district in accordance with this rule, or (2) that the convenience of the parties and witnesses and the interests of justice will be served by transferring the action to a different division within the district, the Judge may order such transfer, subject to the provisions of the Court's Assignment Plan.

**3-3.  Assignment of Action to a Judge**

**(a)  Assignment**. Immediately upon the filing of any civil action and its assignment to a division of the Court pursuant to Civil L.R. 3-2, the Clerk shall assign it to a Judge pursuant to the Assignment Plan of the Court (General Order No. 44). The Clerk may not make or change any assignment, except as provided in these local rules or in the Assignment Plan .

**(b)  Multiple Filings**. Any single action filed in more than one division of this Court shall be transferred pursuant to Civil L.R. 3-2(h).

**(c)  Refiled Action**. If any civil action or claim of a civil action is dismissed and subsequently refiled, the refiling party must file a Motion to Consider Whether Cases Should be Related pursuant to Civil L.R. 3-12. Upon a determination by a Judge that an action or claim pending before him or her is covered by this Local Rule, that Judge may transfer the refiled action to the Judge originally assigned to the action which had been dismissed. Any party who files an action in multiple divisions or dismisses an action and subsequently refiles it for the purpose of obtaining an assignment in contravention of Civil L.R. 3-3(b) shall be subject to appropriate sanctions.

**3-4.  Papers Presented for Filing**

**(a)  First Page Requirements**. The first page of each paper presented for filing must set forth:

**(1)**  The name, address, telephone number, email address, and state bar number of counsel (or, if pro se, the name, address, telephone number, and email address of the party) presenting the paper for filing. This information must appear in the upper left hand corner and must indicate the party represented by name as well as that party's status in the litigation (i.e., plaintiff, defendant, etc.). In multiparty actions or proceedings, reference may be made to the signature page for the complete list of parties represented;

*Cross Reference*
See Civil L.R. 3-9 "*Parties*"; Civil L. R. 3-11 "*Failure to Notify of Address Change*;" and Civil L.R. 11-3(e) "*Appearances and Service on Local Co-Counsel*.

**(2)**  If not proceeding pro se and if proceeding *pro hac vice* in conformity with Civil L.R. 11-3, following the information required in Civil L.R. 3-4(a)(1), the name, address, telephone and state bar number of the member of the bar of the Court who maintains an office within the State of California; and

**(3)**  Commencing on the eighth line of the page (except where additional space is required for counsel identification) there must appear:

**(A)**  The title of this Court, including the appropriate division or location;

**(B)**  The title of the action;

**(C)**  The case number of the action followed by the initials of the assigned District Judge or Magistrate Judge and, if applicable, the initials of the

Magistrate Judge to whom the action is referred for discovery or other pretrial activity;

**(D)**  A title describing the paper; and

**(E)**  Any other matter required by Civil L.R. 3.

**(4)**  Any complaint or Notice of Removal of Action seeking review of federal agency determinations in immigration cases, Privacy Act cases, or Administrative Procedure Act cases must include, under the title of the document, whichever of the following is applicable: "Immigration Case," "Privacy Act Case," or "Administrative Procedure Act Case."

**(5)**  **Presentation of Class Action**. If any complaint, counterclaim or cross-claim is sought to be maintained as a class action, it must bear the legend "Class Action" on its first page below the title describing the paper as a complaint, counterclaim or cross-claim.

**(b)**  **Caption for Consolidated Cases**. When filing papers in cases consolidated pursuant to Fed. R. Civ. P. 42, the caption of each paper must denote the lead case number above all consolidated case numbers. Duplicate originals, however, are not required for associated cases.

**(c)**  **General Requirements**

**(1)**  **Paper**. Papers presented for manual filing must be on 8½ inch by 11 inch white paper with numbered lines, and must be flat, unfolded (unless necessary for the presentation of exhibits), without back or cover, and firmly bound.

**(2)**  **Written Text**. Text must appear on one side only and must be double-spaced with no more than 28 lines per page, except for the identification of counsel, title of the case, footnotes, and quotations.  Unless a Judge's standing order or other instruction from the court requires otherwise,  text, including footnotes and quotations, must be:

**(A)**  in a standard, proportionally spaced font (e.g., Times New Roman or Century Schoolbook);

**(B)**  in 12 point type or larger; and

**(C)**  spaced no more than 10 characters per horizontal inch.

**(3)**  **Identification of Paper**. Except for exhibits, each paper filed with the Court must bear a footer on the lower margin of each page stating the title of the paper (e.g., "Complaint," "Defendant's Motion for Summary Judgment," etc.) or some clear and concise abbreviation. Once the Court assigns a case number to the action, that case number must be included in the footer.

**Commentary**

When a case is first filed, the footer on each page of the complaint need only bear the title of the paper (e.g., "Complaint"), but after assignment of a case number on filing, that number must be included in footers on any subsequently prepared papers (e.g., "Defendant's Motion for Summary Judgment – 21-cv-12345-ABC.")

**(d)**  **Citation to Authorities**. Unless otherwise directed by the assigned Judge, citation to authorities in any paper must include:

**(1)**  In any citation to an Act of Congress, a parallel citation to the United States Code by title, section and date;

(2)    In any citation to U.S. regulations, a citation to the Code of Federal Regulations by title and section, and the date of promulgation of the regulation;

(3)    In any citation to a U.S. Supreme Court Case, a citation to United States Reports, Lawyers' Edition, or Supreme Court Reporter. If the case is not yet available in any of those formats but is available on electronic databases, citation must indicate the database, year, and any screen or page numbers, if assigned;

(4)    In any citation to other federal courts, unless an alternate reporting service is widely available, a citation to the Federal Reporter, Federal Supplement, or Federal Rules Decisions must be used. If the case is not yet available in those formats but is available on electronic databases, citation must indicate the database, year, and any screen or page numbers, if assigned; and

(5)    In any citation to a state court, citations must include either the official reports or any official regional reporting service (e.g., West Publishing). If the case is not yet available in those formats but is available on electronic databases, citation must indicate the database, year, and any screen or page numbers, if assigned.

## 3-5.  Jurisdictional Statement

**(a)**    **Jurisdiction**. Each complaint, petition, counterclaim, and cross-claim must include a separate paragraph entitled "Jurisdiction." The paragraph will identify the statutory or other basis for federal jurisdiction and the facts supporting such jurisdiction.

**(b)**    **Divisional Assignment**. Each complaint or petition must include a paragraph entitled "Divisional Assignment." The paragraph must identify any basis for assignment to a particular location or division of the Court pursuant to Civil L.R. 3-2(c).

## 3-6.  Jury Demand

**(a)**    **Included in Pleading**. A party may demand a jury trial as provided in Fed. R. Civ. P. 38(b). When a demand for jury trial is included in a pleading, the demand must be set forth at the end of the pleading. When the demand is made by a party who is represented by counsel, the pleading must be signed by the attorney for the party making the demand. In the caption of such pleading, immediately following the title of the pleading, the following must appear: "DEMAND FOR JURY TRIAL."

**(b)**    **Marking of Civil Cover Sheet Insufficient**. Marking the civil cover sheet to indicate a demand for jury trial is not a sufficient demand to comply with this Local Rule.

**Commentary**

See *Wall v. Nat'l R.R. Passenger Corp*., 718 F.2d 906, 909 (9th Cir. 1983) (holding that "checking the jury demand box on the civil cover sheet is insufficient to meet the requirements of rule 38(b)").

## 3-7.  Filing and Certification in Private Securities Actions

**(a)**    **Civil Cover Sheet Notation Requirement**. If a complaint or other pleading contains a claim governed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995), the following must be so noted in Block VI of the civil cover sheet: "Private Securities Litigation Reform Act."

**Cross Reference**

See Civil L.R. 23-1 "*Private Securities Actions*."

**(b)**    **Certification by Filing Party Seeking to Serve as Lead Plaintiff**. Any person or group of persons filing a complaint and seeking to serve as lead plaintiff in a civil action containing a claim governed by the Private Securities Litigation Reform Act of

1995, Pub. L. No. 104-67, 109 Stat. 737 (1995), must serve and file with the initial pleading a certificate under penalty of perjury which contains the following averments:

**(1)** The party has reviewed the complaint and authorized its filing;

**(2)** The party did not engage in transactions in the securities which are the subject of the action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States;

**(3)** The party is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

**(4)** The party has made no transactions during the class period in the debt or equity securities that are the subject of the action except those set forth in the certificate (as used herein, "equity security" shall have the same meaning as that term has for purposes of section 16(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a));

**(5)** The party has not, within the three years preceding the date of the certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except as set forth in the certificate; and

**(6)** The party will not accept any payment for serving as representative on behalf of a class beyond the party's pro rata share of any recovery, unless ordered or approved by the Court pursuant to section 27(a)(4) of the Securities Act, 15 U.S.C. § 77z-1(a)(4), or section 21D(a)(4) of the Securities Exchange Act, 15 U.S.C. § 78u-4(a)(4).

**(c)** **Certification by Nonfiling Party Seeking to Serve as Lead Plaintiff.** Any party seeking to serve as lead plaintiff, but who does not also file a complaint, need not file the certification required in Civil L.R. 3-7(b), but must at the time of initial appearance state that the party has reviewed a complaint filed in the action and either:

**(1)** Adopts its allegations or, if not,

**(2)** Specifies the allegations the party intends to assert.

**(d)** **Certification by Lawyers Seeking to Serve as Class Counsel.** Each lawyer seeking to serve as class counsel in any civil action containing a cause of action governed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995), must serve and file a certificate under penalty of perjury which either:

**(1)** Affirms that the lawyer does not directly own or otherwise have a beneficial interest in securities that are the subject of the action; or

**(2)** Sets forth with specificity the extent of any such ownership or interest and explains why that ownership or interest does not constitute a conflict of interest sufficient to disqualify the attorney from representing the class.

**Cross Reference**

See also Civil L.R. 23 "*Class Actions.*"

## 3-8.    Claim of Unconstitutionality

**(a)** **Federal Statute.** In any action in which the constitutionality of an Act of Congress is questioned and neither the United States nor any officer, agency, or employee thereof is a party, counsel raising the question must file a notice of such claim with the assigned Judge (or, if no assignment has been made, the Chief Judge) and serve a copy of such notice on the United States Attorney for this district. The notice must identify the

statute and describe the basis for the claim that it is unconstitutional. The party must file the notice with a certificate of service pursuant to Civil L.R. 5-5.

**(b)**  **State Statute**. In any action in which the constitutionality of a state statute is questioned and neither the state nor an agency, officer or employee of the state is a party, counsel raising the question must file notice of such claim with the assigned Judge (or, if no assignment has been made, the Chief Judge) and serve a copy of such notice on the State Attorney General. The notice must identify the statute and describe the basis for the claim that it is unconstitutional. The party must file the notice with a certificate of service pursuant to Civil L.R. 5-5.

**Cross Reference**
See 28 U.S.C. § 2403.

## 3-9.  Parties

**(a)**  **Natural Person Appearing Pro Se**. Any party representing him or herself without an attorney must appear personally and may not delegate that duty to any other person who is not a member of the bar of this Court. A person representing him or herself without an attorney is bound by the Federal Rules, as well as by all applicable local rules. Sanctions (including default or dismissal) may be imposed for failure to comply with local rules.

**Cross Reference**
See Civil L.R. 11-1 "*The Bar of this Court.*"

**(b)**  **Corporation or Other Entity.** A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court.

**Cross Reference**
See Civil L.R. 11-1 "*The Bar of this Court.*"

**(c)**  **Government or Governmental Agency**. When these rules require an act be done personally by the party, and the party is a government or a governmental agency, the act must be done by a representative of the government or governmental agency who is knowledgeable about the facts of the case and the position of the government, and who has, to the greatest extent feasible, authority to do the required act.

**Cross Reference**
See Civil L.R. 11-2 "*Attorneys for the United States.*"
See also ADR L.R. 5-10(a)(2) and 6-9(a)(2).

## 3-10.  Ex Parte Motion to Proceed In Forma Pauperis

**(a)**  **Motion to Proceed In Forma Pauperis**. At the commencement of an action, any person wishing the Court to authorize prosecution or defense of the action without payment of fees or security, pursuant to 28 U.S.C. § 1915, must submit, with the proposed complaint, an Ex Parte Motion to Proceed In Forma Pauperis, pursuant to Civil L.R. 7-11. The Clerk shall file the complaint, assign a case number, and assign a presiding Judge.

**(b)**  **Content of Motion**. The motion must contain:

**(1)**  A request to proceed in forma pauperis;

**(2)**  An affidavit or declaration under penalty of perjury providing the information required by Title 28 U.S.C. § 1915, on a form available at the Office of the Clerk and on the Court's website, or an equivalent form; and

    **(3)**   A proposed order.

    **(c)**   **Determination of the Motion**. The Judge may grant the motion, grant the motion (subject to partial payment of fees, costs or security), or deny the motion. If the motion is granted in part or denied, the order will state that the action is dismissed unless any outstanding fees, costs, or security is paid within the time set in the order.

<div align="center">

**Commentary**

If, during the pendency of an action, any person wishes to prosecute or defend an action in forma pauperis, the person must file an Administrative Motion to Proceed In Forma Pauperis pursuant to Civil L.R. 7-11.

</div>

### 3-11.  Failure to Notify of Address Change

    **(a)**   **Duty to Notify**. An attorney or a party proceeding pro se whose address changes while an action is pending must promptly file with the Court and serve upon all opposing parties a Notice of Change of Address specifying the new address.

    **(b)**   **Dismissal Due to Failure**. The Court may, without prejudice, dismiss a complaint or strike an answer when:

        **(1)**   Mail directed to the attorney or pro se party by the Court has been returned to the Court as not deliverable; and

        **(2)**   The Court fails to receive within 60 days of this return a written communication from the attorney or pro se party indicating a current address.

### 3-12.  Related Cases

    **(a)**   **Definition of Related Cases**. An action is related to another when:

        **(1)**   The actions concern substantially the same parties, property, transaction, or event; and

        **(2)**   It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges.

    **(b)**   **Administrative Motion to Consider Whether Cases Should be Related**. Whenever a party knows or learns that an action, filed in or removed to this district is (or the party believes that the action may be) related to an action which is or was pending in this District as defined in Civil L.R. 3-12(a), the party must promptly file in the lowest-numbered case an Administrative Motion to Consider Whether Cases Should be Related, pursuant to Civil L.R. 7-11. In addition to complying with Civil L.R. 7-11, a copy of the motion, together with proof of service pursuant to Civil L.R. 5-5, must be served on all known parties to each apparently related action. A courtesy copy of the motion must be lodged with the assigned Judge in each apparently related case under Civil L.R. 5-1(d)(7).

    **(c)**   **Sua Sponte Judicial Referral for Purpose of Determining Relationship**. Whenever a Judge believes that a case pending before that Judge is related to another case, the Judge may refer the case to the Judge assigned to the lowest-numbered case with a request that the Judge assigned to the lowest-numbered case consider whether the cases are related. The referring Judge shall file and send a copy of the referral to all parties to all affected cases. The parties must file any response in opposition to or support of relating the cases pursuant to Civil L.R. 3-12(e). Alternatively, a Judge may order the parties to file a motion pursuant to Civil L.R. 3-12(b).

    **(d)**   **Content of Motion**. An Administrative Motion to Consider Whether Cases Should be Related must contain:

    **(1)**    The title and case number of each apparently related case;

    **(2)**    A brief statement of the relationship of the actions according to the criteria set forth in Civil L.R. 3-12(a).

**(e)**    **Response to Motion**. Any opposition to or support of a Motion to Consider Whether Cases Should be Related must be filed in the lowest-numbered case pursuant to Civil L.R. 7-11. The opposition or statement of support must specifically address the issues in Civil L.R. 3-12(a) and (d) and be served on all parties and lodged with the Chambers of all Judges identified in the motion. If the motion identifies more than two potentially related cases, and a party contends that not all of the cases are related, the party must address whether any of the cases are related to one another.

**(f)**    **Order Granting or Denying Relationship**. Upon a motion by a party or a referral by another Judge, after the time for filing support or opposition to the Motion to Consider Whether Cases Should Be Related has passed, the Judge in this District who is assigned to the lowest-numbered case will decide if the cases are or are not related and will notify the Clerk, who, in turn, will notify the parties.

    **(1)**    Due to the need for parties and affected Judges to have a speedy determination of the motion or referral, the Judge assigned to the lowest-numbered case shall act on the motion or referral within 14 days after the date a response is due. If the Judge assigned to the lowest-numbered case is not available for that period, the Clerk or counsel may bring the motion or referral to the General Duty Judge.

    **(2)**    If the Judge assigned to the lowest-numbered case decides that the cases are not related, no change in case assignment will be made. In cases where there are more than two potentially related cases, the Clerk shall submit the order to the Judges assigned to the other cases in order of filing with a form of order to decide within 14 days if the cases are or are not related. If no Judge relates any of the remaining cases, no change in case assignment will be made.

    **(3)**    If any Judge decides that any of the cases are related, pursuant to the Assignment Plan, the Clerk shall reassign all related higher-numbered cases to that Judge and shall notify the parties and the affected Judges accordingly.

**(g)**    **Effect of Order on Case Schedule**. The case management conference in any reassigned case will be rescheduled by the newly assigned Judge. The parties shall adjust the dates for the conference, disclosures, and report required by Fed. R. Civ. P. 16 and 26 accordingly. Unless the assigned Judge otherwise orders, upon reassignment, any deadlines set by the ADR Local Rules remain in effect and any dates for hearing noticed motions are automatically vacated and must be renoticed by the moving party before the newly assigned Judge. For cases ordered related after the initial case management conference, unless the assigned Judge otherwise orders, any deadlines established in the case management order shall continue to govern, except for the trial date, which will be rescheduled by the assigned Judge.

**(h)**    **Relating Actions for Review on an Administrative Record.** Whenever the District Court remands an action to a federal agency to conduct further administrative proceedings and, after those proceedings, the plaintiff files an action for District Court review on the post-remand administrative record, plaintiff must promptly file in the first action an Administrative Motion to Consider Whether Cases Should be Related, pursuant to Civ. L.R. 3-12(b).

### 3-13.  Notice of Pendency of Other Action or Proceeding

**(a)**   **Notice.** Whenever a party knows or learns that an action filed or removed to this district involves all or a material part of the same subject matter and all or substantially all of the same parties as another action which is pending in any other federal or state court, the party must promptly file with the Court in the action pending before this Court and serve all opposing parties in the action pending before this Court with a Notice of Pendency of Other Action or Proceeding.  If two representative (e.g., class, collective, PAGA, etc.) actions involve overlapping claims (i.e., the definitions of covered individuals overlap and the claims asserted overlap), they fall within the coverage of this rule.

**(b)**   **Content of Notice**. A Notice of Pendency of Other Action or Proceeding must contain:

   **(1)**   A description of the other action;

   **(2)**   A copy of the operative complaint in the other action; and

   **(3)**   A brief statement of:

      **(A)**   The procedural posture of the other action;

      **(B)**   The relationship of the other action to the action or proceeding pending in this district, and the nature of the overlap of subject matter and/or parties; and

      **(C)**   If the other action is pending in another U.S. District Court, whether transfer should be effected pursuant to 28 U.S.C. § 1407 (Multi District Litigation Procedures) or whether other coordination might avoid conflicts, conserve resources and promote an efficient determination of the action; or

      **(D)**   If the other action is pending before any state court, whether proceedings should be coordinated to avoid conflicts, conserve resources and promote an efficient determination of the action.

**(c)**   **Procedure After Filing**. No later than 14 days after service of a Notice of Pendency of Other Action, any party may file with the Court a statement supporting or opposing the notice. Such statement will specifically address the issues in Civil L.R. 3-13(b).

**(d)**   **Order**. After the time for filing support or opposition to the Notice of Pendency of Other Actions or Proceedings has passed, the Judge assigned to the case pending in this district may make appropriate orders.

### 3-14.  Disqualification of Assigned Judge

Whenever an affidavit of bias or prejudice directed at a Judge of this Court is filed pursuant to 28 U.S.C. § 144, and the Judge has determined not to recuse him or herself and found that the affidavit is neither legally insufficient nor interposed for delay, the Judge shall refer the request for disqualification to the Clerk for random assignment to another Judge.

**Commentary**

Recusal under 28 U.S.C. § 455 is normally undertaken by a Judge sua sponte. However, counsel may bring the issue to a Judge's attention by formal motion or raise it informally at a Case Management Conference or by a letter to the Judge, with a copy to the other parties in the case. This rule does not preclude a Judge from referring matters arising under 28 U.S.C. § 455 to the Clerk so that another Judge can determine disqualification. See also Civil L.R. 3-15.

### 3-15.  Disclosure of Conflicts and Interested Entities or Persons

**(a)  Requirements**. Each non-governmental party must:

**(1)** file a "Certification of Conflicts and Interested Entities or Persons" with its first appearance, filing, or other request addressed to the court;

**(2)** file such Certification as a separate document; and

**(3)** promptly file a supplemental Certification if any required information changes.

**(b)  Contents.**

**(1)** The Certification must disclose whether the party is aware of any conflict, financial or otherwise, that the presiding judge may have with the parties to the litigation.

**(2)** The Certification must also disclose any persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or any other entities, other than the parties themselves, known by the party to have either: (i) a financial interest of any kind in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**(3)** For purposes of this Rule, the terms "proceeding" and "financial interest" shall have the meaning assigned by 28 U.S.C. § 455 (d)(1), (3) and (4), respectively.

**(c)  Form of Certification**.

**(1)** If there is a conflict about which the party is aware, the Certification shall state:

"Pursuant to Civil L.R. 3-15, the undersigned certifies that it is believed that the court has a conflict with (List names). Signature, Attorney of Record or Pro Se Party."

**(2)** If there is an interest to be disclosed, the Certification shall state:

"Pursuant to Civil L.R. 3-15, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to,  parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: (List names and identify their connection and interest). Signature, Attorney of Record or Pro Se Party."

**(3)** If there is no conflict or interest to be disclosed, the Certification shall state:

 "Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, there is no conflict or interest (other than the named parties) to report. Signature, Attorney of Record or Pro Se Party."

# 4.   PROCESS: ISSUANCE AND SERVICE

## 4-1.   Limitation on Service by Marshal

Except for service on behalf of the United States or as required by Fed. R. Civ. P. 4(c)(2), or unless the Court orders otherwise for good cause shown, service of summons in a civil action shall not be made by the United States Marshal.

### Commentary
28 U.S.C. § 566(c) provides that the United States Marshal shall execute writs, process and orders issued under the authority of the United States.

## 4-2.   Service of Supplementary Material

Along with the complaint and the summons or request for waiver of service, a party subject to Civil L.R. 16-2(a), (b), or (c), must serve the following Supplementary Material:

**(a)**   A copy of the Order Setting Initial Case Management Conference and ADR deadlines issued pursuant to Civil L.R. 16-2(a), (b) or (c);

**(b)**   Any pertinent Standing Orders of the assigned Judge;

**(c)**   A copy of the assigned Judge's order and instructions for the preparation of a Case Management Statement or, if none, the Court's form found at, pursuant to Civil L.R. 16-10; and

**(d)**   Except in cases assigned at the time of filing to a Magistrate Judge, a copy of the form allowing a party to consent to assignment of the case to a Magistrate Judge.

### Commentary
The Clerk will provide the filing party with a copy of the Order Setting Initial Case Management Conference and ADR Deadlines, the form for Consent to Assignment of the Case to a Magistrate Judge, the form for preparation of the Case Management Statement, and any pertinent Standing Orders. The party must make copies of the schedules and forms for service. The Court's ADR processes and procedures are described in the handbook entitled "Dispute Resolution Procedures in the Northern District of California" available on the Court's ADR webpage, cand.uscourts.gov/adr. Limited printed copies of the ADR handbook are available from the Clerk's Office for parties in cases not subject to the Court's Electronic Case Filing (ECF) program under Civil L.R. 5-1(b).

# 5.  SERVICE AND FILING OF PLEADINGS AND OTHER PAPERS

## 5-1.   Electronic Case Filing

**(a)**   **Electronic Filing, Signing, or Verification.** Pursuant to Fed. R. Civ. P. 5(d)(3), papers may be filed, signed, or verified by electronic means.

**(b)**   **Cases and Parties Subject to Electronic Filing.** All cases, except where exempted by court order, are designated for participation in the Court's Electronic Case Filing ("ECF") system. Documents in sealed cases must be filed according to procedures established by the Clerk's Office and published on the Court's website. Sealed documents within unsealed cases shall be filed electronically, in compliance with Civil L.R. 79-5. Pro se parties must file case-initiating documents manually in each new action brought in the court.  After manually filing case-initiating documents, pro se parties may file subsequent documents in the same case manually, or may register for ECF and file subsequent documents in the same case electronically. Parties represented by counsel in a case involving a pro se party must file documents electronically and serve them manually on the pro se party, unless the pro se party is a registered ECF user.

<div align="center">Commentary</div>

<div align="center">Procedures and instructions for using the Court's ECF system consistent with these policies may be found on the Court's ECF webpage at <u>cand.uscourts.gov/cases-e-filing/cm-ecf/</u>. In addition to providing access to filing and retrieval of documents, the ECF webpage also contains instructions, a user manual, tutorials, an extensive listing of Frequently Asked Questions ("FAQs"), and information regarding changes in the ECF system, among other items. The initial point of contact for anyone having trouble filing a document on the ECF system is the email address or toll-free number posted on the Court's ECF webpage.</div>

**(c)**   **Registration, Appearance and Access**

   **(1)**   **Attorney's Obligation to Register.** Each attorney of record is obligated to become an ECF user and obtain a user ID and password for access to the system upon filing a case in this district or before e-filing a document in an existing case in this district. Registration shall be on a form prescribed by the Clerk, which can be found on the ECF webpage at <u>cand.uscourts.gov/cases-e-filing/cm-ecf/</u>.

   **(2)**   **Notice of Appearance**

      **(A)**   A Notice of Appearance must be e-filed whenever counsel joins a case.

      **(B)**   If counsel from the same firm replace one another as the representative of a client, a Notice of Substitution of Counsel must be e-filed.

      **(C)**   If a particular counsel ceases to be involved with a case when the party is still represented by other counsel, a Notice of Change in Counsel must be e-filed.

      **(D)**   The withdrawal of a party's sole remaining counsel is governed by Civil L.R. 11-5 and requires an order of the Court.

      **(E)**   The replacement of one firm by another as counsel for a party is governed by Civil L.R. 11-5 and requires an order of the Court.

   **(3)**   **Obligation to Keep Account Information Current.** An ECF user ID and password is the equivalent of a permanent, individual electronic signature for a registered attorney. Registered attorneys are required to keep their contact

information current and may update their email address online via the ECF webpage.

**(4)** **Authorizing Use of User ID and Password by Others.** An ECF user may authorize another person to electronically file a document using the user ID and password of the ECF user. Nevertheless, the ECF user retains full responsibility for any document so filed.

**(5)** **Access**

    **(A)** **Filing.** Only the attorney-of-record as described in section (c)(1), a person authorized by the attorney-of-record as described in section (c)(4), or a pro se party who has registered for ECF as described in section (b) may electronically file documents.

    **(B)** **Retrieval.** Any person may review at the Clerk's Office all filings, electronic or paper, that have not been sealed by the Court. Any ECF user also may access the ECF system and retrieve electronically filed documents that are not sealed, with the following exception:

        **(i)** **Exception.** Only counsel for a party, or a pro se party who is an ECF user, may access the ECF system and retrieve any electronically filed document in a Social Security appeal or certain immigration cases pursuant to Fed. R. Civ. P. 5.2(c). Any other ECF user may access and retrieve electronically only the docket for the case and any orders entered by the Court. Any person may have access to the full record at the Clerk's Office.

<div align="center">

**Commentary**
</div>

Anyone who is a PACER user (even if not an ECF user) may retrieve publicly available documents in any case electronically filed in this district or nationwide.

**(d)** **Filing and Service of Pleadings**

**(1)** **Filing Initiating Documents.** Except for manual filings by a pro se party who is filing case-initiating documents or is not a registered e-filer, all civil complaints and other case initiating documents in civil cases must be filed electronically.

**(2)** **Service and Answer.** After a defendant or third-party defendant has been served, defendant's counsel shall register to become an ECF user following the procedures outlined on the ECF webpage, and shall file the responsive pleading electronically. If the defendant or third-party defendant is pro se and is not a registered ECF user, the responsive pleading must be filed and served manually.

<div align="center">

**Cross Reference**
</div>

See Civil L.R. 5-1(i) for rules governing the filing of documents with signatures other than those of the e-filer.

**(3)** **Completion of Filing.** Electronic transmission of a document in compliance with court procedures shall, upon receipt by the Clerk of the entire document and the sending of a Notice of Electronic Filing ("NEF") by the ECF system, constitute filing of the document for all purposes and shall constitute entry of that document on the docket maintained by the Clerk pursuant to Fed. R. Civ. P. 58 and 79, and Fed. R. Crim. P. 49 and 55.

**(4)** **Deadlines.** All electronic filings of documents must be completed as described in Civil L.R. 5-1(d)(3) prior to midnight in order to be considered timely filed that day.

(5) **Technical Failure.** The Clerk shall deem the ECF system to be subject to a technical failure on a given day if the system is unable to accept filings continuously or intermittently over the course of any period of time greater than one hour after 12:00 noon that day. Filings due on the day of a technical failure which were not filed solely due to such technical failure shall be due the next court day. Such delayed filings shall be accompanied by a declaration or affidavit attesting to the filer's failed attempts to file electronically at least two times after 12:00 noon separated by at least one hour on each day of delay due to such technical failure.

(6) **Docket.** The record of filings and entries created by the ECF system for each case shall constitute the docket for that case.

**Commentary**

In addition to receiving email notifications of filing activity, parties are encouraged to check the docket in their case on the ECF system at regular intervals.

(7) **Chambers Copies.** No chambers copy or "courtesy copy" of an electronically-filed document shall be submitted to the Court, unless required by a standing order of the assigned Judge or requested by the assigned Judge in a particular case.

**(e)** **Manual Filing**

Some types of documents shall only be filed manually and not electronically unless specifically authorized by the Court. A list of such documents may be found on the ECF webpage. Such documents shall be manually filed with the Clerk and served upon the parties in accordance with the applicable Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, and Local Rules for filing and service of paper documents. Parties manually filing a document shall file electronically a Manual Filing Notification.

**(f)** **Proposed Orders**

Proposed orders submitted by an ECF user in an ECF case shall be filed in PDF format, and attached to the applicable motion or other document. In addition, proposed orders shall be submitted in a standard word processing format (such as Microsoft Word) to the specific address on the Court's website for emailing proposed orders to the assigned Judge. Proposed orders must conform to the requirements of the assigned Judge's standing orders.

**(g)** **Exhibits**

(1) **Mandatory Electronic Filing.** Unless otherwise ordered by the Court, exhibits offered during trial shall be filed on the docket within ten days of a trial verdict.

(A) The parties shall file through the CM/ECF event "Admitted Exhibits" those exhibits admitted for review by the trier of fact. These exhibits shall be accompanied by a Joint Certification of Counsel that the exhibits are true and correct copies of the exhibits submitted to the trier of fact in the matter.

(B) The parties may file any exhibits that were offered but not admitted by the judge using the CM/ECF event "Exhibits Not Admitted," which will automatically file the documents under seal. These exhibits shall be accompanied by a Joint Certification of Counsel that the exhibits are true

and correct copies of the exhibits offered but not admitted by the judge.

(2) **Redaction.** Before electronically filing exhibits under this rule, the filer must redact any information the judge ruled the public may not view. Such exhibits should be filed following the procedure in Local Rule 79-5(d).

(3) **Physical Exhibits.** When a party offers or introduces physical exhibits into evidence, they must electronically file a photograph of that physical exhibit in accordance with subsection (g)(1) of this rule.

Nothing contained in this Local Rule shall prevent the presiding judge from entering an order with respect to the handling, custody, or storage of any exhibit.

(4) **Digital Exhibits not Supported by CM/ECF.** Parties must upload electronic records that are in a format unsupported by CM/ECF (e.g., audio or video files) to an online location designated by the Clerk's Office. Parties must include the titles of exhibits filed using this method in the list of "Admitted Exhibits" filed pursuant to subsection (g)(1) of this rule.

**(h)   Service of Electronically Filed Documents**

**(1)   Generally.** Upon the filing of a document by a party, the ECF system will send to the registered attorneys for all parties in the case a Notice of Electronic Filing, which constitutes service on the receiving party. Exceptions to this are electronically filed civil complaints and other case-initiating documents, which must be served manually.

**Cross Reference**
See Civil L.R. 7-3 for rules for calculating due dates for opposition and reply briefs.

**(2)   Service on Parties Who Have Not Registered as ECF Users.** When service of a document, other than a complaint or third-party complaint, is required to be made upon a person who is not a registered ECF user in that case, a paper copy of the document shall be served on the person (as otherwise required or permitted by the Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, and Local Rules). Service of these documents may alternatively be made by electronic means (e.g., email) if the recipient consented in writing to such service.

**(3)   Service of the Court's Orders.** Orders filed by the Court in non-sealed cases will be served only via the emailed Notice of Electronic Filing. No manual service will be made by the Court except on a pro se party who is not an ECF user in a particular case.

**(i)   Signatures**

**(1)   Generally.** A document electronically filed with the Court shall be deemed to be signed by the person ("Signatory") when the document identifies the person as a Signatory and the filing complies with either subsection (2) or (3). Any filing in accordance with any of these methods shall bind the Signatory as if the document was physically signed and filed, and shall function as the Signatory's signature whether for purposes of Rule 11 of the Federal Rules of Civil Procedure, to attest to the truthfulness of an affidavit or declaration, or for any other purpose.

**(2) ECF Users.** In the case of a Signatory who is an ECF user, such document shall be deemed signed, regardless of the existence of a physical signature on the document, provided that such document is filed using the user ID and password of the Signatory.

**(3) Others.** In the case of a Signatory who is not an ECF user, or who is an ECF user but whose user ID and password are not utilized in the electronic filing of the document  (as in the case of documents requiring multiple signatures), the filer of the document shall attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document. The filer's attestation may be incorporated into the document itself, or take the form of a declaration attached to the document. The filer shall maintain records to support this concurrence for subsequent production for the Court, if so ordered, or for inspection upon request by a party, until one year after the final resolution of the action (including appeal, if any). The filer may attach a scanned image of the signature page of the document being electronically filed in lieu of maintaining the paper record for subsequent production if required.

**(4) Criminal Cases.** Notwithstanding the provisions of section 5-1(e)(3), in a criminal case, any document signed by a criminal defendant and any document containing multiple signatures shall be scanned in its entirety to ensure that all signatures are visible. Certain documents that may be used by various agencies shall also be scanned in their entirety; a list of such documents may be found on the ECF webpage.

**(j) Sanctions for Non-Compliance**

Failure of counsel to timely register or otherwise comply with ECF filing requirements may result in sanctions as the Court deems appropriate.

## 5-2.  Manual Filing [Withdrawn]

## 5-3.  Facsimile Filings [Withdrawn]

## 5-4.  Drop Box Filings

**(a) Documents Which May Be Filed**. Most documents that are required or permitted to be manually filed may be deposited in a Clerk's Office drop box, subject to the following:

**(1)** Any papers in support of or in opposition to a matter scheduled for hearing within 7 days of filing may not be filed through use of a drop box;

**(2)** Initial pleadings or other case-initiating documents that are required or permitted to be manually filed may be deposited for filing in a drop box at any courthouse of the district — and any applicable filing fee must be included, with payment only in the form of a check;

**(3)** Except for documents covered by (a)(1) above, a document required or permitted to be filed manually may be filed by deposit in a drop box at any courthouse of the district.

**(b) Drop Box Locations and Availability**. The Court will maintain drop boxes at each division of the Clerk's Office. The Clerk will regulate the hours during which materials may be filed through use of a drop box.

**Commentary**
The locations and availability of drop boxes are available on the Court's website.

**(c)** **Filing Date of Drop Box Documents**. Before a document is deposited in a drop box for filing, the back side of the last page of the document must be stamped "Received" using the device available at the drop box.

    **(1)** The document will be marked by the Clerk as "Filed" on the same date indicated by the "Received" stamp, except when the "Received" date is a weekend or Court holiday, in which case it will be marked as "Filed" on the first day following the weekend or Court holiday.

    **(2)** Where the back side of the last page of the document has not been stamped "Received" with the device available at the drop box, the Clerk will mark the document as "Filed" on the day the Clerk emptied the drop box of the document.

<div align="center">

**Commentary**

</div>

Questions regarding availability and use of the drop box should be directed to the Clerk. The Clerk's Office policy is to empty and lock the drop box at the beginning of each day when the Clerk's Office opens. When the Clerk's Office closes, the drop box is reopened so that it may be used again for filing.

## 5-5. Certificate of Service

**(a)** **Form**. Whenever any pleading or other paper presented for filing is required (or permitted by any rule or other provision of law) to be served upon any party or person, unless it is served by ECF, it must bear or have attached to it:

    **(1)** An acknowledgment of service by the person served; or

    **(2)** Certificate of service stating the date, place, and manner of service, and the name, street address, or electronic address of each person served, certified by the person who made service, pursuant to 28 U.S.C. §1746.

**(b)** **Sanction for Failure to Provide Certificate**. Failure to provide an acknowledgment or certificate of service shall not be a ground for the Clerk to refuse to file a paper or pleading. However, any such document may be disregarded by the Judge if an adverse party timely objects on the ground of lack of service.

<div align="center">

**Cross Reference**

See Fed. R. Civ. P. 4(d).

</div>

<div align="center">

**Commentary**

</div>

Pursuant to Civil L.R. 5-1, except for civil complaints and other case-initiating documents in civil cases, parties are not required to include a certificate or acknowledgment of service upon registered ECF users when a document is filed electronically. Notification to those parties will be provided by the Court's electronic filing system.

# 6.  TIME

**6-1.   Enlarging or Shortening Time**

    **(a)**   **When Stipulation Permissible Without Court Order**. Parties may stipulate in writing, without a Court order, to extend the time within which to answer or otherwise respond to the complaint, or to enlarge or shorten the time in matters not required to be filed or lodged with the Court, provided the change will not alter the date of any event or any deadline already fixed by Court order. Such stipulations shall be promptly filed pursuant to Civil L.R. 5.

    **(b)**   **When Court Order Necessary to Change Time**. A Court order is required for any enlargement or shortening of time that alters an event or deadline already fixed by Court order or that involves papers required to be filed or lodged with the Court (other than an initial response to the complaint). A request for a Court order enlarging or shortening time may be made by written stipulation pursuant to Civil L.R. 6-2 or motion pursuant to Civil L.R. 6-3. Any stipulated request or motion which affects a hearing or proceeding on the Court's calendar must be filed no later than 14 days before the scheduled event.

**6-2.   Stipulated Request for Order Changing Time**

    **(a)**   **Form and Content**. The parties may file a stipulation, conforming to Civil L.R. 7-12, requesting an order changing time that would affect the date of an event or deadline already fixed by Court order, or that would accelerate or extend time frames set in the Local Rules or in the Federal Rules. The stipulated request must be accompanied by a declaration that:

        **(1)**   Sets forth with particularity the reasons for the requested enlargement or shortening of time;

        **(2)**   Discloses all previous time modifications in the case, whether by stipulation or Court order; and

        **(3)**   Describes the effect the requested time modification would have on the schedule for the case.

    **(b)**   **Action by the Court**. After receiving a stipulated request under this Rule, the Judge may grant, deny, or modify the requested time change.

**6-3.   Motion to Change Time**

    **(a)**   **Form and Content**. A motion to enlarge or shorten time may be no more than 5 pages in length and must be accompanied by a proposed order and by a declaration that:

        **(1)**   Sets forth with particularity the reasons for the requested enlargement or shortening of time;

        **(2)**   Describes the efforts the party has made to obtain a stipulation to the time change;

        **(3)**   Identifies the substantial harm or prejudice that would occur if the Court did not change the time; and

        **(4)**   If the motion is to shorten time for the Court to hear a motion:

            **(i)**   Describes the moving party's compliance with Civil L.R. 37-1(a), where applicable, and

      **(ii)**    Describes the nature of the underlying dispute that would be addressed in the motion and briefly summarizes the position each party had taken.

   **(5)**   Discloses all previous time modifications in the case, whether by stipulation or Court order;

   **(6)**   Describes the effect the requested time modification would have on the schedule for the case.

**(b)**   **Opposition to Motion to Change Time**. Unless otherwise ordered, a party who opposes a motion to enlarge or shorten time must file an opposition not to exceed 5 pages, accompanied by a declaration setting forth the basis for opposition, no later than 4 days after receiving the motion.

**(c)**   **Delivery of Manually Filed Documents to Other Parties**. A party manually filing an administrative motion to enlarge or shorten time must deliver a copy of the motion, proposed order, and supporting declaration to all other parties on the day the motion is filed. The objecting party must deliver a copy of its opposition to all parties on the day the opposition is filed.

**(d)**   **Action by the Court**. After receiving a motion to enlarge or shorten time and any opposition, the Judge may grant, deny, modify the requested time change or schedule the matter for additional briefing or a hearing.

# 7.  MOTION PRACTICE

## 7-1.  Motions

**(a)  Types of Motions**. Any written request to the Court for an order must be presented by one of the following means:

    **(1)**  A duly noticed motion pursuant to Civil L.R. 7-2;

    **(2)**  A motion to enlarge or shorten time pursuant to Civil L.R. 6-1;

    **(3)**  When authorized, an ex parte motion pursuant to Civil L.R. 7-10;

    **(4)**  When applicable, a motion for administrative relief pursuant to Civil L.R. 7-11;

    **(5)**  A stipulation of the affected parties pursuant to Civil L.R. 7-12; or

    **(6)**  A motion regarding an Order or Recommendation of a Magistrate Judge pursuant to Civil L.R. 72-2 or 72-3.

**(b)  To Whom Motions Made**. Motions must be directed to the Judge to whom the action is assigned, except as that Judge may otherwise order. In the Judge's discretion, or upon request by counsel and with the Judge's approval, a motion may be determined without oral argument or by telephone conference call.

**(c)  Unassigned Case or Judge Unavailable**. A motion may be presented to the General Duty Judge or, if unavailable, to the Chief Judge or Acting Chief Judge when:

    **(1)**  The assigned Judge is unavailable as defined in Civil L.R. 1-5(p) and an emergency requires prompt action; or

    **(2)**  An order is necessary before an action can be filed.

## 7-2.  Notice and Supporting Papers

**(a)  Time**. Except as otherwise ordered or permitted by the assigned Judge or these Local Rules, and except for motions made during the course of a trial or hearing, all motions must be filed, served and noticed in writing on the motion calendar of the assigned Judge for hearing not less than 35 days after filing of the motion. Fed. R. Civ. P. 6(d), which extends deadlines that are tied to service (as opposed to filing), does not apply and thus does not extend this deadline.

**(b)  Form**. In one filed document not exceeding 25 pages in length, a motion must contain:

    **(1)**  On the first page in the space opposite the caption and below the case number, the noticed hearing date and time;

    **(2)**  In the first paragraph, notice of the motion including date and time of hearing;

    **(3)**  In the second paragraph, a concise statement of what relief or Court action the movant seeks; and

    **(4)**  In the succeeding paragraphs, the points and authorities in support of the motion — in compliance with Civil L.R. 7-4(a).

**(c)  Proposed Order**. Unless excused by the Judge who will hear the motion, each motion must be accompanied by a proposed order.

**(d)  Affidavits or Declarations**. Each motion must be accompanied by affidavits or declarations pursuant to Civil L.R. 7-5.

**Commentary**

The time periods set forth in Civil L.R. 7-2 and 7-3 regarding notice, response, and reply to motions are minimum time periods. For complex motions, parties are encouraged to stipulate to or seek a Court order establishing a longer notice period with correspondingly longer periods for response or reply. See Civil L.R. 1-4 and 1-5.

**7-3.   Opposition; Reply; Supplementary Material**

**(a)**   **Opposition**. Any opposition to a motion may include a proposed order, affidavits, or declarations, as well as a brief or memorandum under Civil L.R. 7-4. Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum. Pursuant to Civil L.R. 7-4(b), such brief or memorandum may not exceed 25 pages of text. The opposition must be filed and served not more than 14 days after the motion was filed. Fed. R. Civ. P. 6(d), which extends deadlines that are tied to service (as opposed to filing), does not apply and thus does not extend this deadline.

**(b)**   **Statement of Nonopposition**. If the party against whom the motion is directed does not oppose the motion, that party must file with the Court a Statement of Nonopposition within the time for filing and serving any opposition.

**(c)**   **Reply**. Any reply to an opposition may include affidavits or declarations, as well as a supplemental brief or memorandum under Civil L.R. 7-4. Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum. Pursuant to Civil L.R. 7-4(b), the reply brief or memorandum may not exceed 15 pages of text. The reply to an opposition must be filed and served not more than 7 days after the opposition was due. Fed. R. Civ. P. 6(d), which extends deadlines that are tied to service (as opposed to filing), does not apply and thus does not extend this deadline.

**(d)**   **Supplementary Material**. Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval, except as follows:

**(1)**   **Objection to Reply Evidence.** If new evidence has been submitted in the reply, the opposing party may file and serve an Objection to Reply Evidence, which may not exceed 5 pages of text, stating its objections to the new evidence, which may not include further argument on the motion. The Objection to Reply Evidence must be filed and served not more than 7 days after the reply was filed. Fed. R. Civ. P. 6(d), which extends deadlines that are tied to service (as opposed to filing), does not apply and thus does not extend this deadline.

**(2)**   Before the noticed hearing date, counsel may bring to the Court's attention a relevant judicial opinion published after the date the opposition or reply was filed by filing and serving a Statement of Recent Decision. Such Statement shall contain a citation to and provide a copy of the new opinion without argument.

**7-4.   Brief or Memorandum of Points and Authorities**

**(a)**   **Content**. In addition to complying with the applicable provisions of Civil L.R. 3-4, a brief or memorandum of points and authorities filed in support, opposition, or reply to a motion must contain:

**(1)**   On the first page in the space opposite the caption and below the case number, the noticed hearing date and time;

**(2)**   If in excess of 10 pages, a table of contents and a table of authorities;

**(3)**   A statement of the issues to be decided;

**(4)**   A succinct statement of the relevant facts; and

**(5)** Argument by the party, citing pertinent authorities.

**(b)** **Length**. Unless the Court expressly orders otherwise pursuant to a party's request made prior to the due date, briefs or memoranda filed with opposition papers may not exceed 25 pages of text and the reply brief or memorandum may not exceed 15 pages of text.

<div align="center">

**Cross Reference**

See Civil L.R. 7-11 regarding request to exceed page limitations.

**Commentary**

Although Civil L.R. 7-4(b) limits briefs to 25 pages of text, counsel should not consider this a minimum as well as a maximum limit. Briefs with less than 25 pages of text may be excessive in length for the nature of the issues addressed.

</div>

## 7-5.   Affidavit or Declaration

**(a)** **Affidavit or Declaration Required**. Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record. Extracts from depositions, interrogatory answers, requests for admission and other evidentiary matters must be appropriately authenticated by an affidavit or declaration.

**(b)** **Form**. An affidavit or declaration may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument. Any statement made upon information or belief must specify the basis therefor. An affidavit or declaration not in compliance with this rule may be stricken in whole or in part.

## 7-6.   Oral Testimony Concerning Motion

No oral testimony will be received in connection with any motion, unless otherwise ordered by the assigned Judge.

## 7-7.   Continuance of Hearing or Withdrawal of Motion

**(a)** **Before Opposition is Filed**. Except for cases where the Court has issued a Temporary Restraining Order, a party who has filed a motion may file a notice continuing the originally noticed hearing date for that motion to a later date if:

**(1)** No opposition has been filed; and

**(2)** The notice of continuance is filed prior to the date on which the opposition is due pursuant to Civil L.R. 7-3(a).

**(b)** **After Opposition is Filed**. After an opposition to a motion has been filed, the noticed hearing date may be continued to a subsequent date upon order of the assigned Judge.

**(c)** **Keeping Track of Hearing Dates**. Counsel are responsible for knowing hearing dates on motions.

**(d)** **Effect on Time for Filing Opposition or Reply**. Unless otherwise ordered by the Court, the continuance of the hearing of a motion does not extend the time for filing and serving the opposing papers or reply papers.

**(e)** **Withdrawal**. Within the time for filing and serving a reply, the moving party may file and serve a notice of withdrawal of the motion. Upon the filing of a timely withdrawal, the motion will be taken off-calendar. Otherwise, the Court may proceed to decide the motion.

### 7-8.    Motions for Sanctions — Form and Timing

Any motion for sanctions, regardless of the sources of authority invoked, must comply with the following:

**(a)**    The motion must be separately filed and the date for hearing must be set in conformance with Civil L.R. 7-2;

**(b)**    The form of the motion must comply with Civil L.R. 7-2;

**(c)**    The motion must comply with any applicable Federal Rule and must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate; and

**(d)**    Unless otherwise ordered by the Court, no motion for sanctions may be served and filed more than 14 days after entry of judgment by the District Court.

### 7-9.    Motion for Reconsideration

**(a)    Leave of Court Requirement**. Before the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order on any ground set forth in Civil L.R. 7-9 (b). No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion.

<div align="center">

**Cross Reference**

See Fed. R. Civ. P. 54(b) regarding discretion of Court to reconsider its orders prior to entry of final judgment.

**Commentary**

This local rule does not apply to motions for reconsideration of a Magistrate Judge's order pursuant to 28 U.S.C. § 636(b)(1)(A). See Civil L.R. 72.

</div>

**(b)    Form and Content of Motion for Leave**. A motion for leave to file a motion for reconsideration must be made in accordance with the requirements of Civil L.R. 7-9. The moving party must specifically show reasonable diligence in bringing the motion and one of the following:

**(1)**    That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

**(2)**    The emergence of new material facts or a change of law occurring after the time of such order; or

**(3)**    A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

**(c)    Prohibition Against Repetition of Argument**. No motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered. Any party who violates this restriction shall be subject to appropriate sanctions.

**(d)    Determination of Motion**. Unless otherwise ordered by the assigned Judge, no response need be filed and no hearing will be held concerning a motion for leave to file

a motion to reconsider. If the Judge decides to order the filing of additional papers or that the matter warrants a hearing, the Judge will fix an appropriate schedule.

### 7-10.  Ex Parte Motions

Unless otherwise ordered by the assigned Judge, a party may file an ex parte motion, that is, a motion filed without notice to opposing party, only if a statute, Federal Rule, local rule, or Standing Order authorizes ex parte filing. The motion must include a citation to the statute, rule, or order which permits the use of an ex parte motion to obtain the relief sought.

**Cross Reference**

See, e.g., Civil L.R. 65-1 "*Temporary Restraining Orders.*"

### 7-11.  Motion for Administrative Relief

The Court recognizes that during the course of case proceedings a party may require a Court order with respect to miscellaneous administrative matters, not otherwise governed by a federal statute, Federal Rule, local rule, or standing order of the assigned Judge. These motions would include matters such as motions to exceed otherwise applicable page limitations or motions to file documents under seal, for example.

**(a)**   **Form and Content of Motions**. A motion for an order concerning a miscellaneous administrative matter may not exceed 5 pages (not counting declarations and exhibits), must set forth specifically the action requested and the reasons supporting the motion, and must be accompanied by a proposed order and by either a stipulation under Civil L.R. 7-12 or by a declaration that explains why a stipulation could not be obtained. If the motion is manually filed, the moving party must deliver the motion and all attachments to all other parties on the same day that the motion is filed.

**(b)**   **Opposition to or Support for Motion for Administrative Relief**. Any opposition to or support for a Motion for Administrative Relief may not exceed 5 pages (not counting declarations and exhibits), must set forth succinctly the reasons in opposition or support, must be accompanied by a proposed order, and must be filed no later than 4 days after the motion has been filed. The opposition or support and all attachments thereto, if manually filed, must be delivered to all other parties the same day it is manually filed.

**(c)**   **Action by the Court**. Unless otherwise ordered, a Motion for Administrative Relief is deemed submitted for immediate determination without hearing on the day after the opposition is due.

### 7-12.  Stipulations

Every stipulation requesting judicial action must be in writing signed by all affected parties or their counsel. A proposed form of order may be submitted with the stipulation and may consist of an endorsement on the stipulation of the words, "PURSUANT TO STIPULATION, IT IS SO ORDERED," with spaces designated for the date and the signature of the Judge.

### 7-13.  Notice Regarding Submitted Matters

Whenever any motion or other matter has been under submission for more than 120 days, a party, individually or jointly with another party, may file with the Court a notice that the matter remains under submission, or may ask the Northern District of California Ombudsperson to provide such notice to the Court. If judicial action is not taken, subsequent notices may be filed at the expiration of each 120-day period thereafter until a ruling is made.

This rule does not preclude a party from filing an earlier notice if it is warranted by the nature of the matter under submission (e.g., motion for extraordinary relief).

**7-14.   Designation Not for Citation [withdrawn]**

# 10.  FORM OF PAPERS

## 10-1.  Amended Pleadings

Any party filing or moving to file an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference.

# 11.  ATTORNEYS

**11-1.  The Bar of this Court**

    **(a)**   **Members of the Bar**. Except as provided in Civil L.R. 11-2, 11-3, and 11-9, and Fed. R. Civ. P. 45(f), an attorney must be a member of the bar of this Court to practice in this Court and in the Bankruptcy Court of this District.

    **(b)**   **Eligibility for Membership**. To be eligible for admission to and continuing membership in the bar of this Court, an attorney must be an active member in good standing of the State Bar of California.  For any attorney admitted to the bar of this court before September 1, 1995 based on membership in the bar of a jurisdiction other than California, continuing membership in the bar of that jurisdiction is an acceptable alternative basis for eligibility.

    **(c)**   **Procedure for Admission**. Each applicant for admission must present to the Clerk a sworn petition for admission in the form prescribed by the Court. Prior to admission to the bar of this Court, an attorney must certify:

        **(1)**   Knowledge of the contents of the Federal Rules of Civil and Criminal Procedure and Evidence, the Rules of the United States Court of Appeals for the Ninth Circuit, and the Local Rules of this Court;

        **(2)**   Familiarity with the Alternative Dispute Resolution Programs of this Court;

        **(3)**   Understanding and commitment to abide by the Standards of Professional Conduct of this Court set forth in Civil L.R. 11-4; and

        **(4)**   Familiarity with the Guidelines for Professional Conduct in the Northern District of California.

    **(d)**   **Admission Fees**. Each attorney admitted to practice before this Court under this Local Rule must pay to the Clerk the fee fixed by the Judicial Conference of the United States, together with an assessment in an amount to be set by the Court. The assessment will be placed in the Court Non-Appropriated Fund for library, educational, and other appropriate uses.

    **(e)**   **Admission**. The Clerk or a Judge may admit an applicant to the bar of the Court after the applicant signs the prescribed oath and pays the prescribed fees, and after the Clerk verifies the applicant's qualifications.

    **(f)**   **Certificate of Good Standing**. A member of the bar of this Court who is in good standing may obtain a Certificate of Good Standing by presenting a written request to the Clerk and paying the prescribed fee.

    **(g)**   **Reciprocal Administrative Change in Attorney Status**. Upon notice from the State Bar of California (or the bar of another jurisdiction that is the basis for membership in the bar of this Court) that an attorney is deceased, has been placed on "voluntary inactive" status, or has resigned for reasons not relating to discipline, the Clerk will note "deceased," "resigned," or "voluntary inactive," as appropriate, on the attorney's admission record. An attorney on "voluntary inactive" status will remain inactive on the roll of this Court until such time as the State Bar or the attorney has notified the Court that the attorney has been restored to "active" status. An attorney who has resigned and wishes to be readmitted must petition the Court for admission in accordance with subparagraphs (c) and (d) of this Rule.

**(1)** The following procedure will apply to actions taken in response to information provided by the State Bar of California (or by another jurisdiction that is the basis for membership in the bar of this Court) of a suspension for (a) a period of less than 30 days for any reason or (b) a change in an attorney's status that is temporary in nature and may be reversed solely by the attorney's execution of one or more administrative actions. Upon receipt of notification from the State Bar that an attorney has been suspended for any of the following, the Clerk will note the suspension on the attorney's admission record:

**(A)** Noncompliance with Rule 9.22 child and family support;

**(B)** Failure to pass PRE;

**(C)** Failure to pay bar dues;

**(D)** Failure to submit documentation of compliance with continuing education requirements.

While suspended, an attorney is not eligible to practice in this Court or in the Bankruptcy Court of this District. In the event that an attorney files papers or otherwise practices law in this Court or in the Bankruptcy Court while an administrative notation of suspension is pending on the attorney's admission record, the Clerk will verify the attorney's disciplinary status with the State Bar (or other jurisdiction, if applicable). If the attorney is not then active and in good standing, the Chief District Judge will issue to the attorney an order to show cause in accordance with Civil L.R. 11-7(b)(1).

Upon receipt by the Court of notification from the State Bar that the attorney's active status has been restored, the reinstatement will be noted on the attorney's admission record.

**(2)** In response to information provided by the State Bar of California (or other jurisdiction that is the basis for membership in the bar of this Court) that an attorney has been placed on disciplinary probation but is still allowed to practice, the Clerk will note the status change on the attorney's admission record. An attorney with that status must, in addition to providing the notice to the Clerk required by Civil L.R. 11-7(a), report to the Clerk all significant developments related to the probationary status. Upon receipt by the Court of notification from the State Bar that the attorney's good standing has been restored, the change will be noted on the attorney's admission record.

## 11-2.   Counsel for the United States

An attorney employed or retained by the United States government or any of its agencies may, without satisfying the membership requirements of LR 11-1, practice in this Court in all actions or proceedings within the scope of his or her employment or retention by the United States.

## 11-3.   Pro Hac Vice

**(a)** **Application**. An attorney who is not a member of the bar of this Court may apply to appear pro hac vice in a particular action in this district by submitting to the Clerk, together with the written application, a true and correct copy of a certificate of good standing or other similar official document issued by the appropriate authority governing attorney admissions for the relevant bar. Said certificate or other document must be dated no more than one year prior to the date of application for admission. The applicant must also submit an oath certifying the following:

**(1)** That he or she is an active member in good standing of the bar of a United States Court or of the highest court of another state or the District of Columbia, specifying such bar;

**(2)** That he or she agrees to abide by the Standards of Professional Conduct set forth in Civil L.R. 11-4, and to become familiar with the Local Rules and Alternative Dispute Resolution Programs of this Court and, where applicable, with the Bankruptcy Local Rules;

**(3)** That an attorney, identified by name and office address, who is a member of the bar of this Court in good standing and who maintains an office within the State of California, is designated as co-counsel.

**(4)** The number of times the applicant has been granted pro hac vice admission by the Court in the 12 months preceding the application.

**(b)** **Time of Application**. An attorney seeking to appear pro hac vice must submit the application and admission fee at the time of the filing of a complaint or the attorney's first appearance in the case. A failure to meet this deadline may result in denial of the application.

**(c)** **Disqualification from Pro Hac Vice Appearance**. Unless authorized by an Act of Congress or by an order of the assigned Judge, an applicant is not eligible for permission to practice pro hac vice if the applicant:

**(1)** Resides in the State of California; or

**(2)** Is regularly engaged in the practice of law in the State of California.

This disqualification shall not be applicable if the pro hac vice applicant (i) has been a resident of California for less than one year; (ii) has registered with, and completed all required applications for admission to, the State Bar of California; and (iii) has officially registered to take or is awaiting results from the California State Bar exam.

**(d)** **Approval**. The Clerk shall present the application to the assigned Judge for approval. The assigned Judge shall have discretion to accept or reject the application, or excuse the admission fee.

**(e)** **Admission Fee**. At the time the application is submitted, an attorney requesting to practice under Civil L.R. 11-3 must pay to the Clerk the Pro Hac Vice admission fee set by the Court's fee schedule, available at cand.uscourts.gov/court-fees.  The Clerk will not present an application to the assigned Judge unless the filing fee has been paid or a request to waive the filing fee has been submitted. The fee will be placed in the Court's Non-Appropriated Fund for library, educational, and other appropriate uses. If the assigned Judge rejects the application, the fee will be refunded at the attorney's request.

**(f)** **Appearances and Service on Local Co-Counsel**. All papers filed by the attorney must indicate appearance pro hac vice. Service of papers on and communications with local co-counsel designated pursuant to Civil L.R. 11-3(a)(3) shall constitute notice to the party.

## 11-4.  Standards of Professional Conduct

**(a)** **Duties and Responsibilities**. Every member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must:

**(1)** Be familiar and comply with the standards of professional conduct required of members of the State Bar of California;

**(2)** Comply with the Local Rules of this Court;

(3)    Maintain respect due to courts of justice and judicial officers;

(4)    Practice with the honesty, care, and decorum required for the fair and efficient administration of justice;

(5)    Discharge all obligations to client(s) and the Court; and

(6)    Assist those in need of counsel when requested by the Court.

**Commentary**

The California Standards of Professional Conduct are contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto.

(b)    **Prohibition Against Bias**. The practice of law before this Court must be free from prejudice and bias. Treatment free of bias must be accorded all other attorneys, litigants, judicial officers, jurors, and support personnel. Any violation of this policy should be brought to the attention of the Clerk or any Judge for action under Civ. L.R. 11-6.

(c)    **Prohibition against Ex Parte Communication**. Except as otherwise provided by law or these Local Rules or otherwise ordered by the Court, an attorney or party to an action must refrain from contacting the assigned Judge or the Judge's law clerks or otherwise communicating with a Judge or the Judge's staff regarding a pending matter, without prior notice to opposing counsel.

**Commentary**

This rule is not intended to prohibit communications with Court staff regarding scheduling or general case management.

## 11-5.   Withdrawal from Case

(a)    **Order Permitting Withdrawal**. Counsel may not withdraw from an action until relieved by order of the Court after written notice has been provided, reasonably in advance, to the client and to all other parties who have appeared in the case.

(b)    **Conditional Withdrawal**. When withdrawal by an attorney from an action is not accompanied by simultaneous appearance of substitute counsel or agreement of the party to appear pro se, leave to withdraw may be subject to the condition that papers may continue to be served on counsel for forwarding purposes, unless and until the client appears by other counsel or pro se. When this condition is imposed, counsel must notify the party of this condition. Any filed consent by the party to counsel's withdrawal under these circumstances must include acknowledgment of this condition.

## 11-6.   Discipline

(h)    **General**. In the event that a Judge has cause to believe that an attorney (as defined in subsection (b) below) has engaged in unprofessional conduct, the Judge may, in addition to any action authorized by applicable law, do either or both of the following:

(1)    Refer the matter to the Court's Standing Committee on Professional Conduct; or

(2)    Refer the matter to the Chief District Judge. If the alleged unprofessional conduct arises in the Bankruptcy Court, the Judge shall first refer the matter to

the Chief Bankruptcy Judge, who may in turn refer it to the Chief District Judge.

**(i)** **"Attorney" Defined**. For purposes of Civil L.R. 11-6, the term "attorney" refers to any attorney who is or has been admitted to practice in any State, or admitted to membership in the bar of this Court, or admitted to practice in this Court pro hac vice pursuant to Civil L.R. 11-3. The term "attorney" may include law corporations and partnerships, when the alleged conduct occurs in the course and scope of employment by the corporation or partnership.

**(j)** **Standing Committee on Professional Conduct**. The Court will appoint, as special counsel for disciplinary proceedings pending before the Court, a Standing Committee on Professional Conduct consisting of a minimum of 7 and a maximum of 11 members, depending on the number of disciplinary matters referred to or active before the committee, and the Chief District Judge will designate one of the members to serve as Chair. All members of the Standing Committee must be members in good standing of the bar who practice regularly in this court. Members shall serve staggered 4-year terms in 2 approximately equal groups, such that the members of one group are replaced or reappointed every 2 years. The Standing Committee may organize itself and conduct its affairs by subcommittees of one or more members as it deems advisable. All final actions of the Standing Committee require a majority vote. The Standing Committee will submit a confidential report of its activities annually to the Clerk, the Chief District Judge, the Clerk of the Bankruptcy Court and Chief Bankruptcy Judge and the Professional Conduct Liaison Judge.

**(k)** **Professional Conduct Liaison Judge.** The Chief District Judge shall appoint a District Judge to oversee the administration of this Local Rule and to serve as liaison to the Standing Committee. The Chief District Judge may delegate some or all of the powers of the Chief District Judge under this rule to the Professional Conduct Liaison Judge.

**(l)** **Matters Referred To The Standing Committee**. Any Judge may enter an order of referral to the Standing Committee on Professional Conduct to initiate an investigation into a charge or information that a member of the bar of this Court, an attorney appearing pro hac vice, or an attorney employed or retained by the United States (see Civil L.R. 11-2) has engaged in unprofessional conduct in the practice of law before this Court. The Alternative Dispute Resolution Magistrate Judge may enter an order of referral based upon information provided by, and at the request of, the Alternative Dispute Resolution Department. An order of referral to the Standing Committee on Professional Conduct may be made on the public docket of an active case or may be directed to the Clerk confidentially without a case number, with a copy of the referral order served by U.S. Mail or by electronic mail on the subject attorney. Upon receipt of an order of referral, the Clerk will open a new miscellaneous case under seal, file the original order of referral and any accompanying exhibits thereto, and transmit a copy to the chair of the Standing Committee. Unless otherwise directed by the Court, the Standing Committee shall investigate the alleged or suspected unprofessional conduct in accordance with the following procedures:

**(1)** Investigations shall be conducted formally or informally as the Standing Committee deems appropriate to the circumstances of the case. Investigations shall be confidential unless the Professional Conduct Liaison Judge, upon application by the Standing Committee or the attorney who is subject to the

investigation, determines that there is a compelling reason to make the matter public.

**(2)**   At the written request of the Standing Committee, the Chief District Judge may direct the issuance of subpoenas and subpoenas duces tecum.

**(3)**   At the conclusion of its investigation, the Standing Committee may, if it deems appropriate, finally resolve any referred matter informally or by consent; if the attorney who was the subject of the investigation has admitted unprofessional conduct, however, the Standing Committee should obtain a written consent specifying a remedial plan. The Standing Committee shall prepare a final report summarizing its proceedings, its findings, any informal or stipulated resolution and its recommendation, if any, to the Court. If the Standing Committee's determination is to file a petition for formal discipline, it shall so state in the final report. The final report shall be marked "CONFIDENTIAL: ATTORNEY DISCIPLINE MATTER" and shall include a proposed order directing the Clerk to close the file. The Standing Committee shall direct the original final report to the Chief District Judge and a copy to the referring Judge. Upon filing the final report and closing the file, the Clerk shall serve the final report on the attorney under investigation.

**(4)**   If a majority of the members determine that public reprimand, suspension, disbarment, monetary sanctions or other formal discipline is warranted, and the respondent attorney does not consent, the Standing Committee shall institute a disciplinary proceeding by filing with the Clerk a sealed petition that specifies the alleged misconduct. Upon the filing of the petition, the Clerk shall assign a new civil case number to the matter and shall randomly assign it to a District Judge other than the referring Judge or the Professional Conduct Liaison Judge in the same manner as any other sealed civil action or proceeding. Unless otherwise directed by the assigned Judge, the proceeding shall then be presented by one or more members of the Standing Committee. For a matter arising in the Bankruptcy Court of this District, the assigned Judge may, sua sponte or upon motion by the respondent attorney, refer the matter to the Clerk of the Bankruptcy Court for assignment to a Bankruptcy Judge, other than the referring Judge, for hearing and a report and recommendation.

**(5)**   After a civil case is assigned under subsection (4) above, the assigned judge shall issue an order to show cause setting a date for hearing, addressed to the respondent attorney, requiring the attorney to appear and show cause why he or she should not be disciplined as stated in the Judge's order. The order shall direct that a copy thereof, together with a copy of the petition, be served on the respondent in a manner permitted by Fed. R. Civ. P. 5(b) not less than 35 days in advance of the date specified for hearing. Any response must be filed no more than 14 days later. In the event the matter cannot be resolved solely based on the petition, response, and hearing thereon, the Judge may order such additional proceedings as the circumstances warrant. Written findings of fact and an order based thereon shall be filed by the Judge when dismissing the proceeding or when imposing discipline. Documents presented for manual filing in the case shall be marked "CONFIDENTIAL: ATTORNEY DISCIPLINE MATTER." The entire case shall be maintained under seal and court proceedings shall be closed to the public unless, upon written motion from either the Standing Committee or the respondent attorney, the Judge determines that the interests of justice would be best be served by opening all or part of the proceedings to the public.   The Judge's final order, if imposing

discipline, together with portions of the file deemed by the Judge to be appropriate for public disclosure, will be unsealed and made accessible to the public on the Court's website and any other means ordered by the Judge and will be disseminated to the Judges of the Northern District of California by the Clerk 7 days after the final order is filed, absent an extension by the Court. An order imposing discipline under this Rule may be appealed to the Court of Appeals.

**(6)** Records other than court files, such as the confidential reports of the Standing Committee, shall be maintained as directed by the Chief District Judge.

**(7)** After an order imposing discipline is filed, the Standing Committee may provide the Clerk with a list of other courts before which the Standing Committee knows the respondent attorney to have been admitted to practice. The list shall be compiled from information obtained in the course of the Standing Committee's work on the case, and shall not require a separate investigation. The Clerk shall give prompt notice of the order of discipline to the disciplinary body of each such court.

**(m)** **Costs**. Out-of-pocket expenses necessarily incurred by the Standing Committee in carrying out its responsibilities under these rules, if presented for reimbursement within 90 days of the conclusion of the proceeding, will be paid by the Court.

## 11-7. Reciprocal Discipline and Discipline Following Felony Conviction

**(a)** **Required Notice of Change in Status**. Any attorney admitted to practice in this Court or any attorney appearing pro hac vice who is convicted of a felony, suspended, disbarred, or placed on disciplinary probation by any court, or who resigns from the bar of any court with an investigation into allegations of unprofessional conduct pending, must give notice to the Clerk and the Clerk of the Bankruptcy Court in writing within 14 days of such event.

**(b)** **Order to Show Cause**. Unless referred to the Standing Committee on Professional Conduct, matters subject to reciprocal discipline on the grounds listed in paragraph (a) above shall be handled as follows:

**(1)** Whenever a member of the bar of this Court or any attorney appearing pro hac vice who is convicted of a felony, disbarred, suspended for reasons other than those noted in Civil L.R. 11-1(g), or who resigns from the bar of any court with an investigation into allegations of unprofessional conduct pending, the Chief District Judge will enter an order suspending that member on an interim basis from practice before this Court and affording the member an opportunity to show cause, within 28 days, why a suspension or disbarment order should not be entered. If the attorney files a response stating that imposition of an order of suspension or disbarment from this Court is not contested, or if the attorney does not respond to the Order to Show Cause within the time specified, then the Court shall enter an order of suspension or disbarment.

**(2)** An attorney who wishes to contest reciprocal discipline must file with the Court a timely response to the order to show cause. The Chief District Judge may then act on the matter, order it randomly assigned to another Judge or refer it to the Standing Committee on Professional Conduct for report and recommendation. The response to the Order to Show Cause must set forth facts establishing one or more of the following: (a) the procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (b) there was such an infirmity of proof

establishing the misconduct as to give rise to a clear conviction that the Court should not accept as final the other jurisdiction's conclusion(s) on that subject; (c) imposition of like discipline would result in a grave injustice; or (d) other substantial reasons exist so as to justify not accepting the other jurisdiction's conclusion(s). In addition, together with the response to the Order to Show Cause, the attorney must lodge with the Court a certified copy of the entire record from the other jurisdiction or bear the burden of persuading the Court that less than the entire record will suffice. This procedure may not be used to relitigate a felony conviction.

**(3)** An attorney disbarred, suspended or placed on disciplinary probation under the reciprocal discipline provisions of this rule may seek reinstatement upon completion of the period of suspension, disbarment, or disciplinary probation by filing a petition for admission with the Clerk as provided in Civil L.R. 11-1(c) and paying the admission fee in accordance with 11-1(d). An attorney disbarred by reason of a felony conviction may not petition for reinstatement until at least one year after entry of the disbarment order.

**Cross Reference**
See Fed. R. Civ. P. 11(c), 16(f), 37.

## 11-8.   Sanctions for Unauthorized Practice

A person who exercises, or pretends to be entitled to exercise, any of the privileges of membership in the bar of this Court, when that person is not entitled to exercise such privileges, may be referred to the Standing Committee in addition to any action authorized by applicable law.

## 11-9.   Student Practice

**(a)** **Permission to Appear**. With the approval of the assigned Judge, a certified law student who complies with these Local Rules and acts under the supervision of a member of the bar of this Court may engage in the permitted activities set forth in this Local Rule.

**(b)** **Permitted Activities**. With respect to a matter pending before this Court, a certified law student may:

**(1)** Negotiate for and on behalf of the client or appear at Alternative Dispute Resolution (ADR) proceedings, provided that the activity is conducted under the general supervision of a supervising attorney;

**(2)** Appear on behalf of a client in the trial of a misdemeanor or petty offense, provided the appearance is under the general supervision of a supervising attorney who is immediately available to attend the proceeding if the Judge decides to require the presence of the supervising attorney and, if the client is a criminal defendant, the client has filed a consent with the Court; and

**(3)** Appear on behalf of a client in any other proceeding or public trial, provided the appearance is under the direct and immediate supervision of a supervising attorney, who is present during the proceedings.

**(c)** **Requirements for Eligibility**. To be eligible to engage in the permitted activities, a law student must submit to the Clerk:

**(1)** An application for certification on a form established for that purpose by the Court. The Clerk is authorized to issue a certificate of eligibility;

**(2)**   A copy of a Notice of Student Certification or Recertification from the State Bar of California, or a certificate from the registrar or dean of a law school accredited by the American Bar Association or the State Bar of California that the law student has completed at least one-third of the graduation requirements and is continuing study at the law school, (or, if a recent graduate of the law school, that the applicant has registered to take or is awaiting results of the California State Bar Examination). The certification may be withdrawn at any time by the registrar or dean by providing notice to that effect to the Court; and

**(3)**   Certification from a member of the bar of this Court that he or she will serve as a supervising attorney for the law student. The certification may be withdrawn at any time by a supervising attorney by providing notice to that effect to the Court.

**(d)**   Requirements of Supervising Attorney. A supervising attorney must:

**(1)**   Be admitted or otherwise permitted to practice before this Court;

**(2)**   Sign all documents to be filed by the student with the Court;

**(3)**   Assume professional responsibility for the student's work in matters before the Court; and

**(4)**   Assist and counsel the student in the preparation of the student's work in matters before the Court.

**(e)**   **Termination of Privilege**. The privilege of a law student to appear before this Court under this rule may be terminated by the Court at any time in the discretion of the Court, without the necessity to show cause.

# 16.   CASE MANAGEMENT AND PRETRIAL CONFERENCES

**16-1.   Definitions**

"Scheduling," "discovery," or "status" conferences under Fed. R. Civ. P. 16 and 26 shall be designated as "case management conferences" in this Court. All statements, proposed orders, or other documents prepared in connection with such conferences must be referred to as such.

**16-2.   Order Setting Initial Case Management Conference**

**(a)**   **Issuance and Service of Order**.  Once an action is initiated in this Court, the Clerk shall issue an Order Setting Initial Case Management Conference and ADR Deadlines. The Order shall set the following dates, among others: (1) the date for the Initial Case Management Conference on the assigned Judge's calendar; and (2) the deadline for filing the ADR Certification required by Civil L.R. 16-8(b). The plaintiff must serve on each defendant a copy of the Order, along with the supplementary materials specified by Civil L.R. 4-2. This Order shall not be issued in categories of cases that are excluded under the Federal Rules of Civil Procedure, these Local Rules, or an order of this Court.

**(b)**   **Case Management Schedule in Removed Cases**. When a case is removed from a state court to this Court, upon the filing of the notice of removal the Court shall issue to the removing party an Order Setting Initial Case Management Conference, as described in subsection (a), above. The removing party must serve the other parties in the case with a copy of the Order and the supplementary materials specified in Civil L.R. 4-2. Unless ordered otherwise by the Court, the filing of a motion for remand does not relieve the parties of any obligations under this rule.

**(c)**   **Case Management Schedule in Transferred Cases**. When a civil action is transferred to this district, the Court shall issue to the plaintiff an Order Setting Initial Case Management Conference, as described in subsection (a), above. The plaintiff must serve the other parties in the case with a copy of the Order and the pertinent supplementary materials specified in Civil L.R. 4-2.

**(d)**   **Relief from Case Management Schedule**. By serving and filing a motion with the assigned Judge pursuant to Civil L.R. 7, a party, including a party added later in the case, may seek relief from an obligation imposed by Fed. R. Civ. P. 16 or 26 or the Order Setting Initial Case Management Conference. The motion must:

**(1)**   Describe the circumstances which support the request;

**(2)**   Affirm that counsel for the moving party has conferred with all other counsel in an effort to reach agreement about the matter and, for each other party, report whether that party supports or opposes the request for relief;

**(3)**   Be accompanied by a proposed revised case management schedule; and

**(4)**   If applicable, indicate any changes required in the ADR process or schedule in the case.

**(e)**   **Limitation on Stipulations**. Any stipulation that would vary the date of a Case Management Conference shall have no effect unless approved by the assigned Judge before the date set for the conference. Any stipulation must comply with Civil L.R. 7-12.

**16-3.    Lead Trial Counsel Required to Confer**

Unless otherwise ordered, the conferring and planning that is mandated by Fed. R. Civ. P. 26(f) and by ADR Local Rule 3-5 must be done by lead trial counsel for each party.

**16-4.    Procedure in Bankruptcy Appeals**

Appeals from the United States Bankruptcy Court to the United States District Court are governed by the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules of this district.

<div align="center">

**Cross Reference**

See Fed. R. Bankr. P. 8001 through 8020 and B.L.R. 8001-1 through 8011-1.
</div>

**16-5.    Procedure in Actions for Review on an Administrative Record**

In actions for District Court review on an administrative record (except cases governed by the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g)), the defendant must serve and file an answer, together with a certified copy of the transcript of the administrative record, within 90 days of receipt of service of the summons and complaint. Within 28 days of receipt of defendant's answer, plaintiff must file a motion for summary judgment pursuant to Civil L.R. 7-2 and Fed. R. Civ. P. 56. Defendant must serve and file any opposition or counter-motion within 28 days of service of plaintiff's motion. Plaintiff may serve and file a reply within 14 days after service of defendant's opposition or counter-motion. Unless the Court orders otherwise, upon the conclusion of this briefing schedule, the matter will be deemed submitted for decision by the District Court without oral argument.

<div align="center">

**Cross Reference**

See Civil L.R. 3-12(h), *"Relating Actions for Review on an Administrative Record."*
</div>

**16-6.    Procedure in U.S. Debt Collection Cases**

These cases shall proceed as follows:

**(a)    Identification**. The first page of the complaint must identify the action by using the words "Debt Collection Case;"

**(b)    Assignment**. Upon filing the complaint, the matter will be assigned to a Magistrate Judge for all pre-trial proceedings; and

**(c)    Collection Proceedings**. If the United States files an application under the Federal Debt Collection Procedures Act, either pre-judgment or post-judgment, such matter will be assigned to a Magistrate Judge.

**16-7.    Procedure in Other Exempt Cases**

Unless otherwise provided in these local rules, in categories of cases that are exempted by Fed. R. Civ. P. 26(a)(1)(B) from the initial disclosure requirements of Fed. R. Civ. P. 26(a)(1), promptly after the commencement of the action the assigned Judge will schedule a Case Management Conference or issue a case management order without such conference. Discovery shall proceed in such cases only at the time, and to the extent, authorized by the Judge in the case management order.

**16-8.    Alternative Dispute Resolution (ADR) in the Northern District**

**(a)    District Policy Regarding ADR**. It is the policy of this Court to assist parties involved in civil litigation to resolve their disputes in a just, timely and cost-effective manner. The Court has created and makes available its own Alternative Dispute Resolution (ADR) programs for which it has promulgated local rules. The Court also encourages civil litigants to consider use of ADR programs operated by private entities. At any

time after an action has been filed, the Court on its own initiative or at the request of one or more parties may refer the case to one of the Court's ADR programs.

**Cross Reference**
See ADR L.R. 1-2 "*Purpose and Scope*;" ADR L.R. 2-3 "*Referral to ADR Program*."
The Court's ADR processes and procedures are described on the Court's ADR webpage:
cand.uscourts.gov/adr.

**(b)**   **ADR Certification**. In cases assigned to the ADR Multi-Option Program, no later than the date specified in the Order Setting Initial Case Management Conference and ADR Deadlines (presumptively 21 days before the date set for the initial case management conference) counsel and client must sign, serve and file an ADR Certification. The certification must be made on a form established for this purpose by the Court and in conformity with the instructions approved by the Court. Separate Certifications may be filed by each party. If the client is a government or governmental agency, the certificate must be signed by a person who meets the requirements of Civil L.R. 3-9(c). If the date of the initial case management conference is changed, unless otherwise ordered the ADR Certification deadline adjusts accordingly.

Counsel and client must certify that both have:

**(1)**   Read the document entitled "*Alternative Dispute Resolution Procedures Handbook*" on the ADR webpage, found at cand.uscourts.gov/adr;

**(2)**   Discussed with each other the available dispute resolution options provided by the Court and private entities; and

**(3)**   Considered whether their case might benefit from any of the available dispute resolution options.

Counsel must further certify that they have discussed selection of an ADR process and an appropriate deadline for an ADR session with counsel for the other parties to the case and shall indicate whether they intend to stipulate to an ADR process and deadline or prefer to discuss ADR selection with the assigned Judge at the case management conference.

**Cross Reference**
See ADR L.R. 3-5.

**Commentary**
Certification forms and the document entitled "*Alternative Dispute Resolution Procedures Handbook*" are available on the Court's ADR webpage at cand.uscourts.gov/adr. The Clerk's Office will print copies upon request for pro se parties.

**(c)**   **Stipulation to ADR Process.** If the parties agree to participate in an ADR process and they wish the Court to make an ADR referral in advance of the case management conference, they may file a Stipulation and Proposed Order selecting an ADR process.

**(d)**   **Selection at Case Management Conference.**

**(1)**   **Consideration of ADR Processes.** Counsel must include in their joint case management statement a report on the status of ADR, specifying which ADR process option they have selected and a proposed deadline by which the parties will conduct the ADR session or, if they do not agree, setting forth which option and timing each party prefers. Unless the assigned Judge already has approved a stipulation to an ADR process, counsel must be prepared to discuss all of the subjects about which they were required to meet and confer under ADR L.R. 3-5(a). If the ADR legal staff holds an ADR Phone Conference in advance of the

initial case management conference, they ordinarily will make a recommendation to the assigned Judge.

**(2)** **Selection by Stipulation or Order.** If the parties agree to a particular ADR process at the case management conference and the assigned Judge approves, the Judge will issue an order referring the case to that process. Alternatively, even if the parties do not agree, the Judge may issue an order referring the case to Early Neutral Evaluation (ENE), Mediation, or a Settlement Conference.

**(3)** **Deferred Referral or Exemption.** If, considering the views of the parties, the Judge at the case management conference concludes that the case is not ripe for an ADR referral or that no ADR process is likely to deliver benefits to the parties sufficient to justify the resources devoted to it, the Judge may defer making an ADR referral or may exempt the case from participating in any ADR process.

**(e) ADR Phone Conference.** An ADR Phone Conference conducted by a member of the ADR legal staff may be set to assist the parties or the assigned Judge in selecting or customizing an ADR process, in aid of the administration of a case that has been referred to an ADR process, or as otherwise directed by the Court. An ADR Phone Conference may be set at the request of the parties on the form established for that purpose by the Court, by referral from the assigned Judge, or at the initiative of the ADR legal staff.

**Cross Reference**
See ADR L.R. 3-5 "Selecting an ADR Process" and ADR L.R. 3-5(d) "Selection Through ADR Phone Conference."

**Commentary**
Forms for "ADR Certification," "Stipulation to an ADR Process" and "Request for ADR Telephone Conference" are available on the Court's ADR webpage at cand.uscourts.gov/adr. The Clerk's Office will print copies upon request for pro se parties for a nominal fee.

## 16-9.  Case Management Statement and Proposed Order

**(a)** **Joint or Separate Case Management Statement**. Unless otherwise ordered, no later than the date specified in Fed. R. Civ. P. 26(f), counsel must file a Joint Case Management Statement addressing all of the topics set forth in the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, which can be found on the Court's website located at cand.uscourts.gov/forms. If one or more of the parties is not represented by counsel, the parties may file separate case management statements. If a party is unable, despite reasonable efforts, to obtain the cooperation of another party in the preparation of a joint statement, the complying party may file a separate case management statement, accompanied by a declaration describing the conduct of the uncooperative party which prevented the preparation of a joint statement. Separate statements must also address all of the topics set forth in the Standing Order referenced above.

**(b)** **Case Management Statement in Class Action**. Any party seeking to maintain a case as a class action must include in the Case Management Statement required by Civil L.R. 16-9(a) the following additional information:

**(1)** The specific paragraphs of Fed. R. Civ. P. 23 under which the action is maintainable as a class action;

**(2)** A description of the class or classes in whose behalf the action is brought;

**(3)** Facts showing that the party is entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b); and

(4)   A proposed date for the Court to consider whether the case can be maintained as a class action.

### 16-10.  Case Management Conference

(a)   **Initial Case Management Conference**. Unless otherwise ordered, no later than the date specified in the Order Setting Initial Case Management Conference, the Court will conduct an initial Case Management Conference. Subject to 28 U.S.C. § 636, the assigned District Judge may designate a Magistrate Judge to conduct the initial Case Management Conference and other pretrial proceedings in the case. Unless excused by the Judge, lead trial counsel for each party must attend the initial Case Management Conference. Requests to participate in the conference remotely (e.g., telephonic or videoconference) must be filed and served at least 7 days before the conference or in accordance with the Standing Orders of the assigned Judge.

(b)   **Case Management Orders**. After a Case Management Conference, the Judge will enter a Case Management Order or sign the Joint Case Management Statement and Proposed Order submitted by the parties. This order will comply with Fed. R. Civ. P. 16(b) and will identify the principal issues in the case, establish deadlines for joining parties and amending pleadings, identify and set the date for filing any motions that should be considered early in the pretrial period, establish a disclosure and discovery plan, set appropriate limits on discovery, and refer the case to ADR unless such a referral would be inappropriate. In addition, in the initial Case Management Order or in any subsequent case management order, the Court may establish deadlines for:

(1)   Commencement and completion of any ADR proceedings;

(2)   Disclosure of proposed expert or other opinion witnesses pursuant to Fed. R. Civ. P. 26(a)(2), as well as supplementation of such disclosures;

(3)   Conclusion of pretrial discovery and disclosure;

(4)   Hearing pretrial motions;

(5)   Counsel to meet and confer to prepare joint final pretrial conference statement and proposed order and coordinated submission of trial exhibits and other material;

(6)   Filing joint final pretrial conference statement and proposed order;

(7)   Lodging exhibits and other trial material, including copies of all exhibits to be offered and all schedules, summaries, diagrams and charts to be used at the trial other than for impeachment or rebuttal. Each proposed exhibit must be premarked for identification. Upon request, a party must make the original or the underlying documents of any exhibit available for inspection and copying;

(8)   Serving and filing briefs on all significant disputed issues of law, including procedural and evidentiary issues;

(9)   In jury cases, serving and filing requested voir dire questions, jury instructions, and forms of verdict; or in court cases, serving and filing proposed findings of fact and conclusions of law;

(10)   Serving and filing statements designating excerpts from depositions (specifying the witness and page and line references), from interrogatory answers and from responses to requests for admission to be offered at the trial other than for impeachment or rebuttal;

**(11)** A date by which parties objecting to receipt into evidence of any proposed testimony or exhibit must advise and confer with the opposing party with respect to resolving such objection;

**(12)** A final pretrial conference and any necessary Court hearing to consider unresolved objections to proposed testimony or exhibits;

**(13)** A trial date and schedule;

**(14)** Determination of whether the case will be maintained as a class action; and

**(15)** Any other activities appropriate in the management of the case, including use of procedures set forth in the <u>Manual for Complex Litigation</u>.

**(c)** **Subsequent Case Management Conferences**. Pursuant to Fed. R. Civ. P. 16, the assigned Judge or Magistrate Judge may, sua sponte or in response to a stipulated request or motion, schedule subsequent case management conferences during the pendency of an action. Each party must be represented at such subsequent case management conferences by counsel having authority with respect to matters under consideration.

**(d)** **Subsequent Case Management Statements**. Unless otherwise ordered, no fewer than 7 days before any subsequent case management conference, the parties must file a Joint Case Management Statement, reporting progress or changes since the last statement was filed and making proposals for the remainder of the case development process. Such statements must report the parties' views about whether using some form of ADR would be appropriate.

# 23.  CLASS ACTIONS

## 23-1.  Private Securities Actions

**(a)**  **Filing and Serving Required Notices**. Not later than 21 days after filing the complaint in any action governed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995), the party filing that complaint and seeking to serve as lead plaintiff must serve and file a copy of any notice required by the Act.

**Cross Reference**
See Civil L.R. 3-7 "*Civil Cover Sheet and Certification in Private Securities Actions.*"

**(b)**  **Motion to Serve as Lead Plaintiff**. Not later than 60 days after publication of the notices referred to in Civil L.R. 23-1(a), any party seeking to serve as lead plaintiff must serve and file a motion to do so. The motion must set forth whether the party claims entitlement to the presumption set forth in section 27(a)(3)(B)(iii)(I) of the Securities Act or section 21D(a)(3)(B)(iii)(I) of the Securities Exchange Act or that the presumption is rebutted and the reasons therefor.

**Commentary**
A "*Model Stipulation and Proposed Consolidation Order for Securities Fraud Class Actions*" is available from the Clerk in civil actions containing a claim governed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995), and is part of the materials provided to the filing party for service on all parties in the action pursuant to Civil L.R. 4-2. See also the Court's "Forms" page at:
cand.uscourts.gov/forms.

## 26.  GENERAL PROVISIONS GOVERNING DISCOVERY

### 26-1.  Custodian of Discovery Documents

The party propounding interrogatories, requests for production of documents, or requests for admission must retain the original of the discovery request and the original response. That party shall be the custodian of these materials. Fed. R. Civ. P. 30(f) identifies the custodian of the original transcript or recording of a deposition.

**Commentary**

Counsel should consider stipulating to sharing computer-readable copies of discovery requests, such as interrogatories and requests for production of documents, as well as responses to such requests, to save costs and to facilitate expeditious pretrial discovery.

# 30.  DEPOSITIONS

**30-1.  Required Consultation Regarding Scheduling**

For the convenience of witnesses, counsel, and parties, before noticing a deposition of a party or witness affiliated with a party, the noticing party must confer about the scheduling of the deposition with opposing counsel or, if the party is pro se, the party. A party noticing a deposition of a witness who is not a party or affiliated with a party must also meet and confer about scheduling, but may do so after serving the nonparty witness with a subpoena.

**30-2.  Numbering of Deposition Pages and Exhibits**

    **(a)**  **Sequential Numbering of Pages**. The pages of the deposition of a single witness, even if taken at different times, must be numbered sequentially.

    **(b)**  **Sequential Numbering of Exhibits**. Documents identified as exhibits during the course of depositions and at trial must be numbered and organized as follows:

        **(1)**  At the outset of the case, counsel must meet and confer regarding the sequential numbering system that will be used for exhibits throughout the litigation, including trial.

        **(2)**  If the pages of an exhibit are not numbered internally and it is necessary to identify pages of an exhibit, then each page must receive a page number designation preceded by the exhibit number (e.g., Exhibit 100-2, 100-3, 100-4).

        **(3)**  To the extent practicable, any exhibit which is an exact duplicate of an exhibit previously numbered must bear the same exhibit number regardless of which party is using the exhibit. Any version of any exhibit which is not an exact duplicate must be marked and treated as a different exhibit, bearing a different exhibit number.

        **(4)**  In addition to exhibit numbers, documents may bear other numbers or letters used by the parties for internal control purposes.

# 33.  INTERROGATORIES

## 33-1.  Form of Answers and Objections

Answers and objections to interrogatories must set forth each question in full before each answer or objection.

## 33-2.  Demands that a Party Set Forth the Basis for a Denial of a Requested Admission

A demand that a party set forth the basis for a denial of an admission requested under Fed. R. Civ. P. 36 will be treated as a separate discovery request (an interrogatory) and is allowable only to the extent that a party is entitled to propound additional interrogatories.

**Cross Reference**
To the same effect, see Civil L.R. 36-2.

**Commentary**
Under Fed. R. Civ. P. 36, a party is not required to set forth the basis for an unqualified denial.

## 33-3.  Motions for Leave to Propound More Interrogatories Than Permitted by Fed. R. Civ. P. 33

A motion for leave to propound more interrogatories than permitted by Fed. R. Civ. P. 33 must be accompanied by a memorandum which sets forth each proposed additional interrogatory and explains in detail why it is necessary to propound the additional questions.

## 34.  PRODUCTION OF DOCUMENTS AND THINGS

**34-1.  Form of Responses to Requests for Production**

A response to a request for production or inspection made pursuant to Fed. R. Civ. P. 34(a) must set forth each request in full before each response or objection.

## 36.   REQUESTS FOR ADMISSION

### 36-1.   Form of Responses to Requests for Admission

Responses to requests for admission must set forth each request in full before each response or objection.

### 36-2.   Demands that a Party Set Forth the Basis for a Denial of a Requested Admission

A demand that a party set forth the basis for a denial of a requested admission will be treated as a separate discovery request (an interrogatory) and is allowable only to the extent that a party is entitled to propound additional interrogatories.

**Cross Reference**

To the same effect, see Civil L.R. 33-2.

**Commentary**

Under Fed. R. Civ. P. 36, a party is not required to set forth the basis for an unqualified denial.

# 37.  MOTIONS TO COMPEL DISCLOSURE OR DISCOVERY OR FOR SANCTIONS

## 37-1.  Procedures for Resolving Disputes

**(a)** **Conference Between Counsel Required**. The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues. If counsel for the moving party seeks to arrange such a conference and opposing counsel refuses or fails to confer, the Judge may impose an appropriate sanction, which may include an order requiring payment of all reasonable expenses, including attorney's fees, caused by the refusal or failure to confer.

**(b)** **Requests for Intervention During a Discovery Event**. If a dispute arises during a discovery event the parties must attempt to resolve the matter without judicial intervention by conferring in good faith. If good faith negotiations between the parties fail to resolve the matter, and if disposition of the dispute during the discovery event likely would result in substantial savings of expense or time, counsel or a party may contact the chambers of the assigned District Judge or Magistrate Judge to ask if the Judge is available to address the problem through a telephone conference during the discovery event.

## 37-2.  Form of Motions to Compel

In addition to complying with applicable provisions of Civil L.R. 7, a motion to compel further responses to discovery requests must set forth each request in full, followed immediately by the objections and/or responses thereto. For each such request, the moving papers must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied.

## 37-3.  Discovery Cut-Off; Deadline to File Discovery Motions

Unless otherwise ordered, as used in any order of this Court or in these Local Rules, a "discovery cut-off" is the date by which all responses to written discovery are due and by which all depositions must be concluded.

Where the Court has set a single discovery cut-off for both fact and expert discovery, no discovery-related motions may be filed more than 7 days after the discovery cut-off.

Where the Court has set separate deadlines for fact and expert discovery, no motions related to fact discovery may be filed more than 7 days after the fact discovery cut-off, and no motions related to expert discovery may be filed more than 7 days after the expert discovery cut-off.

Discovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown.

### Commentary

Counsel should initiate discovery requests and notice depositions sufficiently in advance of the cut-off date to comply with this local rule. "Discovery-related motions" encompasses all motions relating to discovery, including motions to compel or protect against discovery, motions regarding the duty to preserve documents, including spoliation motions, motions to quash or enforce subpoenas, and motions for discovery sanctions.

**37-4.  Motions for Sanctions under Fed. R. Civ. P. 37**

When, in connection with a dispute about disclosure or discovery, a party moves for an award of attorney fees or other form of sanction under Fed. R. Civ. P. 37, the motion must:

**(a)**  Comply with Civil L.R. 7-8 and Civil L.R. 7-2; and

**(b)**  Be accompanied by competent declarations which:

> **(1)**  Set forth the facts and circumstances that support the motion;
>
> **(2)**  Describe in detail the efforts made by the moving party to secure compliance without intervention by the Court; and
>
> **(3)**  If attorney fees or other costs or expenses are requested, itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed.

# 40.  TRIAL

## 40-1.  Continuance of Trial Date; Sanctions for Failure to Proceed

No continuance of a scheduled trial date will be granted except by order of the Court issued in response to a motion made in accordance with the provisions of Civil L.R. 7. Failure of a party to proceed with the trial on the scheduled trial date may result in the assessment of jury costs and the imposition of appropriate sanctions, including dismissal or entry of default. Jury costs may be also assessed for failure to provide the Court with timely notice of a settlement.

**Commentary**

Counsel should consult any Standing Orders issued by the assigned Judge with respect to the conduct of trial. Such orders are available on the individual Judges' pages of the Court's website: cand.uscourts.gov/judges.

# 54.  COSTS

## 54-1.  Filing of Bill of Costs

**(a)**   **Time for Filing and Content**. No later than 14 days after entry of judgment or order under which costs may be claimed, a prevailing party claiming taxable costs must serve and file a bill of costs. The bill must state separately and specifically each item of taxable costs claimed. It must be supported by an affidavit, pursuant to 28 U.S.C. §1924, that the costs are correctly stated, were necessarily incurred, and are allowable by law. Appropriate documentation to support each item claimed must be attached to the bill of costs.

**(b)**   **Effect of Service**. Service of bill of costs shall constitute notice pursuant to Fed. R. Civ. P. 54(d), of a request for taxation of costs by the Clerk.

**(c)**   **Waiver of Costs**. Any party who fails to file a bill of costs within the time period provided by this rule will be deemed to have waived costs.

**Commentary**
The 14-day time period set by this rule is inapplicable where a statute authorizing costs establishes a different time deadline, (e.g., 28 U.S.C. § 2412(d)(1)(B) (setting 30 days from final judgment as time limit to file for fees under Equal Access to Justice Act)).

## 54-2.  Objections to Bill of Costs

**(a)**   **Time for Filing Objections**. Within 14 days after service by any party of its bill of costs, the party against whom costs are claimed must serve and file any specific objections to any item of cost claimed in the bill, succinctly setting forth the grounds of each objection.

**(b)**   **Meet and Confer Requirement**. Any objections filed under this Local Rule must contain a representation that counsel met and conferred in an effort to resolve disagreement about the taxable costs claimed in the bill, or that the objecting party made a good faith effort to arrange such a conference.

## 54-3.  Standards for Taxing Costs

**(a)**   **Fees for Filing and Service of Process**

**(1)**   The Clerk's filing fee is allowable if paid by the claimant.

**(2)**   Fees of the marshal as set forth in 28 U.S.C. § 1921 are allowable to the extent actually incurred. Fees for service of process by someone other than the marshal acting pursuant to Fed. R. Civ. P. 4(c) are allowable to the extent reasonably required and actually incurred.

**(b)**   **Reporters' Transcripts**

**(1)**   The cost of transcripts necessarily obtained for an appeal is allowable.

**(2)**   The cost of a transcript of a statement by a Judge from the bench which is to be reduced to a formal order prepared by counsel is allowable.

**(3)**   The cost of other transcripts is not normally allowable unless, before it is incurred, it is approved by a Judge or stipulated to be recoverable by counsel.

**(c)**   **Depositions**

**(1)**   The cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case is allowable.

**(2)** The expenses of counsel for attending depositions are not allowable.

**(3)** The cost of reproducing exhibits to depositions is allowable if the cost of the deposition is allowable.

**(4)** Notary fees incurred in connection with taking depositions are allowable.

**(5)** The attendance fee of a reporter when a witness fails to appear is allowable if the claimant made use of available process to compel the attendance of the witness.

**(d)** **Reproduction and Exemplification**

**(1)** The cost of reproducing and certifying or exemplifying government records used for any purpose in the case is allowable.

**(2)** The cost of reproducing disclosure or formal discovery documents when used for any purpose in the case is allowable.

**(3)** The cost of reproducing copies of motions, pleadings, notices, and other routine case papers is not allowable.

**(4)** The cost of reproducing trial exhibits is allowable to the extent that a Judge requires copies to be provided.

**(5)** The cost of preparing charts, diagrams, videotapes, and other visual aids to be used as exhibits is allowable if such exhibits are reasonably necessary to assist the jury or the Court in understanding the issues at the trial.

**(e)** **Witness Expenses**. Per diem, subsistence, and mileage payments for witnesses are allowable to the extent reasonably necessary and provided for by 28 U.S.C. § 1821. No other witness expenses, including fees for expert witnesses, are allowable.

**(f)** **Fees for Masters and Receivers**. Fees to masters and receivers are allowable.

**(g)** **Costs on Appeal**. Other costs not provided for in these Rules but authorized under Fed. R. App. P. 39 are allowable.

**(h)** **Costs of Bonds and Security**. Premiums on undertaking bonds and costs of providing security required by law, by order of a Judge, or otherwise necessarily incurred are allowable.

## 54-4.  Determination of Taxable Costs

**(a)** **Supplemental Documentation**. The Clerk may require and consider further affidavits and documentation as necessary to determine allowable costs.

**(b)** **Taxation of Costs**. No sooner than 14 days after a bill of costs has been filed, the Clerk shall tax costs after considering any objections filed pursuant to Civil L.R. 54-2. Costs shall be taxed in conformity with 28 U.S.C. §§ 1920 and 1923, Civil L.R. 54-3, and all other applicable statutes and rules. On the bill of costs or in a separate notice, the Clerk shall indicate which, if any, of the claimed costs are allowed and against whom such costs are allowed. The Clerk shall serve copies of the notice taxing costs on all parties on the day in which costs are taxed.

## 54-5.  Motion for Attorney's Fees

**(a)** **Time for Filing Motion**. Motions for awards of attorney's fees by the Court must be served and filed within 14 days of entry of judgment by the District Court, unless otherwise ordered by the Court after a stipulation to enlarge time under Civil L.R. 6-2 or a motion under Civil L.R. 6-3.  Filing an appeal from the judgment does not extend the time for filing a motion. Counsel for the respective parties must meet and confer for

the purpose of resolving all disputed issues relating to attorney's fees before making a motion for award of attorney's fees.

**Commentary**

Fed. R. Civ. P. 54(d)(2)(B) sets a time period of 14 days from the entry of judgment to file a motion for attorney's fees. Counsel who desire to seek an order extending the time to file such a motion, either by stipulation (See Civil L.R. 6-2) or by motion (See Civil L.R. 6-3), are advised to seek such an order as expeditiously as practicable.

**(b)** **Form of Motion**. Unless otherwise ordered, the motion for attorney fees must be supported by declarations or affidavits containing the following information:

**(1)** A statement that counsel have met and conferred for the purpose of attempting to resolve any disputes with respect to the motion or a statement that no conference was held, with certification that the applying attorney made a good faith effort to arrange such a conference, setting forth the reason the conference was not held; and

**(2)** A statement of the services rendered by each person for whose services fees are claimed, together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained. Depending on the circumstances, the Court may require production of an abstract of or the contemporary time records for inspection, including *in camera* inspection, as the Judge deems appropriate; and

**(3)** A brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services.

# 56.  SUMMARY JUDGMENT

## 56-1.  Notice of Motion

Motions for summary judgment or summary adjudication and opposition to such motions must be noticed as provided in Civil L.R. 7-2 and 7-3.

## 56-2.  Separate or Joint Statement of Undisputed Facts

**(a)**  **No Separate Statement Allowed Without Court Order**. Unless required by the assigned Judge, no separate statement of undisputed facts or joint statement of undisputed facts shall be submitted.

**(b)**  **Procedure if Joint Statement Ordered**. If the assigned Judge orders the submission of a joint statement of undisputed facts, the parties shall confer and submit, on or before a date set by the assigned Judge, a joint statement of undisputed facts. If the nonmoving party refuses to join in the statement, the moving party will nevertheless be permitted to file the motion, accompanied by a separate declaration of counsel explaining why a joint statement was not filed. Whether or not sanctions should be imposed for failure to file a joint statement of undisputed facts is a matter within the discretion of the assigned Judge.

## 56-3.  Issues Deemed Established

Statements contained in an order of the Court denying a motion for summary judgment or summary adjudication shall not constitute issues deemed established for purposes of the trial of the case, unless the Court so specifies.

# 65.  INJUNCTIONS

## 65-1.  Temporary Restraining Orders

**(a)**   **Documentation Required**. A motion for temporary restraining order must be accompanied by:

**(1)**   A copy of the complaint;

**(2)**   A separate memorandum of points and authorities in support of the motion;

**(3)**   The proposed temporary restraining order and order to show cause;

**(4)**   Other supporting documents that the party wishes the Court to consider; and

**(5)**   A declaration by counsel certifying that notice has been provided to the opposing party, or explaining why such notice could not be provided.

**(b)**   **[Withdrawn]**.

**(c)**   **Form of Temporary Restraining Order**. The moving party must include both a proposed temporary restraining order and a proposed order to show cause setting the time and date for a hearing on a motion for preliminary injunction, which shall be scheduled pursuant to Fed. R. Civ. P. 65(b). Proposed orders submitted under this Rule must provide a place for the Judge to set a deadline by which the temporary restraining order and all supporting pleadings and papers must be served upon the adverse party.

**(d)**   **Notification to Clerk**.

**(1)**   The filing party should alert the Court to the filing of a motion for temporary restraining order by emailing or calling the courtroom deputy clerk for the judge assigned to the case.

**(2)**   Motions filed after hours or on weekends must follow instructions provided in ECF.

## 65-2.  Motion for Preliminary Injunction

Motions for preliminary injunctions unaccompanied by a temporary restraining order are governed by Civil L.R. 7-2.

# 65.1  SECURITY

## 65.1-1. Security

**(a)**   **When Required**. Upon demand of any party, where authorized by law and for good cause shown, the Court may require any party to furnish security for costs which can be awarded against such party in an amount and on such terms as the Court deems appropriate.

**(b)**   **Qualifications of Surety**. Every bond must have as surety either:

**(1)**   A corporation authorized by the Secretary of the Treasury of the United States to act as surety on official bonds under 31 U.S.C. §§ 9301-9306;

**(2)**   A corporation authorized to act as surety under the laws of the State of California;

**(3)**   Two natural persons, who are residents of the Northern District of California, each of whom separately own real or personal property not exempt from execution within the district. (The total value of these two persons' property should be sufficient to justify the full amount of the suretyship); or

**(4)**   A cash deposit of the required amount made with the Clerk and filed with a bond signed by the principals.

**(c)**   **Court Officer as Surety**. No Clerk, marshal or other employee of the Court may be surety on any bond or other undertaking in this Court. No member of the bar of this Court appearing for a party in any pending action may be surety on any bond or other undertaking in that action. However, cash deposits on bonds may be made by members of the bar of this Court on certification that the funds are the property of a specified person who has signed as surety on the bond. Upon exoneration of the bond, such monies shall be returned to the owner and not to the attorney.

**(d)**   **Examination of Surety**. Any party may apply for an order requiring any opposing party to show cause why it should not be required to furnish further or different security, or to require the justification of personal sureties.

# 66.   PREJUDGMENT REMEDIES

## 66-1.   Appointment of Receiver

**(a)**   **Time for Motion**. A motion for the appointment of a receiver in a case may be made after the complaint has been filed and the summons issued.

**(b)**   **Temporary Receiver**. A temporary receiver may be appointed with less notice than required by Civil L.R. 7-2 or, in accordance with the requirements and limitations of Fed. R. Civ. P. 65(b), without notice to the party sought to be subjected to a receivership or to creditors.

**(c)**   **Permanent Receiver**. Concurrent with the appointment of a temporary receiver or upon motion noticed in accordance with the requirements of Civil L.R. 7-2, the Judge may, upon a proper showing, issue an order to show cause, requiring the parties and the creditors to show cause why a permanent receiver should not be appointed.

**(d)**   **Parties to be Notified**. Within 7 days of the issuance of the order to show cause, the defendant must provide to the temporary receiver or, if no temporary receiver has been appointed, to the plaintiff, a list of the defendant's creditors, and their addresses. Not less than 14 days before the hearing on the order to show cause, notice of the hearing must be mailed to the listed creditors by the temporary receiver, or, if none, by the plaintiff.

**(e)**   **Bond**. The Court may require any appointed receiver to furnish a bond in such amount as the Court deems reasonable.

## 66-2.   Employment of Attorneys, Accountants or Investigators

The receiver may not employ an attorney, accountant, or investigator without a Court order. The compensation of all such employees shall be fixed by the Court.

## 66-3.   Motion for Fees

All motions for fees for services rendered in connection with a receivership must set forth in reasonable detail the nature of the services. The motion must include as an exhibit an itemized record of time spent and services rendered.

## 66-4.   Deposit of Funds

A receiver must deposit all funds received into the institution selected by the Court as its designated depository pursuant to 28 U.S.C. § 2041.  The account title shall include  the case name and number. At the end of each month, the receiver must deliver to the Clerk a statement of account, copies of canceled checks, and any other records of transactions.

## 66-5.   Reports

Within 30 days of appointment, a permanent receiver must serve and file with the Court a verified report and petition for instructions. The report and petition must contain a summary of the operations of the receiver, an inventory of the assets and their appraised value, a schedule of all receipts and disbursements, and a list of all creditors, their addresses and the amounts of their claims. The petition must contain the receiver's recommendation as to the continuance of the receivership and reasons therefor. At the hearing, the Judge will determine whether the receivership will be continued and, if so, will set a schedule for future reports of the receiver.

## 66-6.   Notice of Hearings

The receiver must give all interested parties notice of the time and place of hearings of the following in accordance with Civil L.R. 7-2:

**(a)**     Petitions for instructions;

**(b)**     Petitions for the payment of dividends to creditors;

**(c)**     Petitions for confirmation of sales of property;

**(d)**     Reports of the receiver;

**(e)**     Motions for fees of the receiver or of any attorney, accountant or investigator, the notice to state the services performed and the fee requested; and

**(f)**     Motions for discharge of the receiver.

# 72.  MAGISTRATE JUDGES; PRETRIAL ORDERS

## 72-1.  Powers of Magistrate Judge

Each Magistrate Judge appointed by the Court is authorized to exercise all powers and perform all duties conferred upon Magistrate Judges by 28 U.S.C. § 636, by the local rules of this Court, and by any written order of a District Judge designating a Magistrate Judge to perform specific statutorily authorized duties in a particular action.

## 72-2.  Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge

**(a)  Form of Objection.** Any objection filed pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A) must be made as a "Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge."

**(b)  Contents of Motion.** Any motion filed pursuant to this rule may not exceed 5 pages (not including declarations and exhibits) and must include:

**(1)**  A specific statement of the portions of the Magistrate Judge's findings, recommendation, or report to which an objection is made;

**(2)**  A statement of the Court action requested;

**(3)**  A statement of the reasons and authority supporting the motion; and

**(4)**  A proposed order.

**(c)  Service of Motion.** The moving party must deliver any manually filed motion and all attachments to all other parties on the same day that the motion is filed.

**(d)  Opportunity for Response; Ruling on Motion.** Unless otherwise ordered by the assigned District Judge, no response need be filed and no hearing will be held concerning the motion. The District Judge may deny the motion by written order at any time, but may not grant it without first giving the opposing party an opportunity to respond. If no order denying the motion or setting a briefing schedule is made within 14 days of filing the motion, the motion shall be deemed denied. The Clerk shall notify parties when a motion has been deemed denied.

## 72-3.  Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge

**(a)  Form of Motion and Response**. Any objection filed pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B) must be made as a "Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge." The motion must be made pursuant to Civil L.R. 7-2 and must specifically identify the portions of the Magistrate Judge's findings, recommendation, or report to which objection is made and the reasons and authority supporting the motion.

**(b)  Associated Administrative Motions**. At the time a party files a motion under Civil L. R. 72-3(a) or a response, the party may accompany it with a separately filed motion for "Administrative Motion to Augment the Record" or an "Administrative Motion for an Evidentiary Hearing." Any associated administrative motion must be made in accordance with Civil L.R. 7-11.

**(c)  Record before District Judge**. Except when the Court grants a motion under Civil L.R. 72-3(b), the Court's review and determination of a motion filed pursuant to Civil L.R. 72-3(a) shall be upon the record of the proceedings before the Magistrate Judge.

**Commentary**

Procedures governing review of a pretrial order by a Magistrate Judge on matters not dispositive of a claim or defense are governed by Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A). Procedures governing consideration of a Magistrate Judge's findings, report and recommendations on pretrial matters dispositive of a claim or defense are governed by Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B) & (C).

## 73.  MAGISTRATE JUDGES; TRIAL BY CONSENT

**73-1.  Time for Consent to Magistrate Judge**

    **(a) Cases Initially Assigned to a Magistrate Judge**. In cases that are initially assigned to a Magistrate Judge:

        **(1)** Parties must either file written consent to the jurisdiction of the Magistrate Judge, or request reassignment to a District Judge, by the deadline set by the Clerk or the Magistrate Judge.

        **(2)** If a motion that cannot be heard by the Magistrate Judge without the consent of the parties, pursuant to 28 U.S.C. § 636(c), is filed, the parties must either file written consent to the jurisdiction of the Magistrate Judge, or request reassignment to a District Judge, no later than 7 days after the motion is filed, unless otherwise directed.

    **(b) Cases Initially Assigned to a District Judge**. In cases that are assigned to a District Judge, the parties may consent at any time to the Court reassigning the case to a Magistrate Judge for all purposes, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).

# 77.   DISTRICT COURT AND CLERK

### 77-1.   Locations and Hours

**(a)    Locations**

**(1)**    The Office of the Clerk for the San Francisco Division is located at the Philip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102.

**(2)**    The Office of the Clerk for the Oakland Division is located at the Ronald V. Dellums Federal Building and United States Courthouse, 1301 Clay Street, Oakland, California 94612.

**(3)**    The Office of the Clerk for the San Jose Division is located at the Robert F. Peckham Federal Building and United States Courthouse, 280 South First Street, San Jose, California 95113.

**(4)**    The Eureka-McKinleyville United States Courthouse is located at 3140 Boeing Avenue, McKinleyville, California 95519.  There is no Office of the Clerk in the Eureka-McKinleyville Courthouse.

**(b)    Hours**. The regular hours of the Offices of the Clerk are from 9:00 a.m. to 4:00 p.m. each day except Saturdays, Sundays, and Court holidays.  For current front desk hours, see the Court's website at cand.uscourts.gov.

**Commentary**
See Civil L.R. 5-4 regarding after-hours drop box filing.

### 77-2.   Orders Grantable by Clerk

The Clerk is authorized to sign and enter orders specifically allowed to be signed by the Clerk under the Federal Rules of Civil Procedure and these local rules. The Clerk may file such orders as effective on a previous date when appropriate and as permitted by law.  In addition, the Clerk may sign and enter the following orders without further direction of a Judge:

**(a)**    Orders specifically appointing persons to serve process in accordance with Fed. R. Civ. P. 4;

**(b)**    Orders on consent noting satisfaction of a judgment, providing for the payment of money, withdrawing stipulations, annulling bonds, exonerating sureties, or setting aside a default;

**(c)**    Orders of dismissal on consent, with or without prejudice, except in cases to which Fed. R. Civ. P. 23, 23.1, or 66 apply;

**(d)**    Orders establishing a schedule for case management in accordance with Civil L.R. 16;

**(e)**    Orders relating or reassigning cases on behalf of the Executive Committee; and

**(f)**    Orders taxing costs pursuant to Civil L.R. 54-4.

**Cross Reference**
See ADR L.R. 4-11(d) "*Nonbinding Arbitration; Entry of Judgment on Award*."

### 77-3.   Photography and Public Broadcasting [Withdrawn]

### 77-4.   Official Notices

The following media are designated by this Court as its official means of giving public notice of calendars, General Orders, employment opportunities, policies, proposed modifications of

these local rules, or any matter requiring public notice. The Court may designate any one or a combination of these media for purposes of giving notice as it deems appropriate:

**(a)** **Bulletin Board**. A bulletin board for posting of official notices shall be located at the Office of the Clerk at each courthouse of this district.

**(b)** **Website**. The Court website located at cand.uscourts.gov is designated as the district's official website and may be used for the posting of official notices.

**(c)** **Newspapers**. The following newspapers are designated as official newspapers of the Court for the posting of official notices:

**(1)** The Recorder; or

**(2)** The Daily Journal; or

**(3)** The San Jose Post-Record, for matters pending in the San Jose Division, in addition to the newspapers listed in subparagraphs (1) and (2); or

**(4)** The Times Standard, for matters pending before a Judge sitting in Eureka.

## 77-5. Security of the Court

The Court, or any Judge, may from time to time make such orders or impose such requirements as may be reasonably necessary to assure the security of the Court and of all persons in attendance.

## 77-6. Weapons in the Courthouse and Courtroom

**(a)** **Prohibition on Unauthorized Weapons**. Only the United States Marshal, Deputy Marshals, and Court Security Officers are authorized to carry weapons within the confines of the courthouse, courtrooms, secured judicial corridors, and chambers of the Court. When the United States Marshal deems it appropriate, upon notice to any affected Judge, the Marshal may authorize duly authorized law enforcement officers to carry weapons in the courthouse or courtroom.

**(b)** **Use of Weapons as Evidence**. In all cases in which a weapon is to be introduced as evidence, before bringing the weapon into a courtroom, the United States Marshal or Court Security Officer on duty must be notified. Before a weapon is brought into a courtroom, it must be inspected by the United States Marshal or Court Security Officer to ensure that it is inoperable and appropriately marked as evidence, and the assigned Judge shall be notified of such inspection.

## 77-7. Court Library

The Court maintains a law library primarily for the use of Judges and personnel of the Court. In addition, attorneys admitted to practice in this Court may use the library as needed for actions or proceedings pending in the Court. The library is operated in accordance with such rules and regulations as the Court may from time to time adopt.

## 77-8. Complaints Against Judges

Pursuant to 28 U.S.C. § 351(a), any person alleging that a Judge of this Court has engaged in conduct prejudicial to the effective and expeditious administration of the business of the Court, or alleging that a Judge is unable to discharge all of the duties of office by reason of mental or physical disability, may file with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit a written complaint containing a brief statement of the facts constituting such conduct. Upon request, the Clerk of this Court will provide to any person wishing to file such a complaint:

**(a)**    A copy of the Rules for Judicial-Conduct and Judicial-Disability Proceedings promulgated by the Judicial Conference of the United States, and the Ninth Circuit Judicial Council's Local Rules for Misconduct Proceedings, both of which are available at: ca9.uscourts.gov/misconduct/judicial_misconduct.php;

**(b)**    A copy of the Ninth Circuit Judicial Council's complaint form; and

**(c)**    A pre-addressed envelope to the Clerk of Court for the Ninth Circuit Court of Appeals, marked "COMPLAINT OF MISCONDUCT" or "COMPLAINT OF DISABILITY." No judge's name may appear on the envelope.

# 79. BOOKS AND RECORDS KEPT BY THE CLERK

**79-1. Transcript and Designation of Record on Appeal**

If a party timely orders a transcript in accordance with the requirements of Fed. R. App. P. 10(b), but fails to make satisfactory arrangements to pay the court reporter at or before the time of the order, the court reporter must promptly notify the Clerk of Court and the party. Within 14 days after receipt of such notice from the court reporter, the party ordering the transcript must make satisfactory arrangements for payment. The reporters' transcript must be filed within 28 days of the date such arrangements have been made. If the party fails  to make satisfactory arrangements for payment within 14 days, the Clerk of Court shall certify to the Court of Appeals for the Ninth Circuit that the party has failed to comply with Fed. R. App. P. 10(b)(4).

<div align="center">

**Cross Reference**
See Ninth Circuit Rule 10-3 "*Ordering the Reporter's Transcript.*"

</div>

**79-2. Exclusions from Record on Appeal**

The Clerk will not include in the record on appeal the following items unless their inclusion is specifically requested in writing and supported by a brief statement of the reason therefor:

**(a)** Summonses and returns;

**(b)** Subpoenas and returns;

**(c)** Routine procedural motions and orders, such as motions for extensions of or shortening time; and

**(d)** Routine procedural notices.

**79-3. Files; Custody and Withdrawal**

All files of the Court shall remain in the custody of the Clerk. The "original copy" of a document filed via ECF is the electronic file stored on ECF. Physical documents belonging to the files of the Court may be taken from the custody of the Clerk only in extraordinary circumstances, by special order of a Judge and with a proper receipt signed by the person obtaining the record or document.

**79-4. Custody and Retention of Trial Exhibits**

**(a)** **Custody of Exhibits During Trial or Evidentiary Hearing**. Unless the Court directs otherwise, each exhibit admitted into evidence during a trial or other evidentiary proceeding shall be held in the custody of the Clerk.

**(b)** **Retention of Exhibits Upon Conclusion of Proceeding**. Unless the Court directs otherwise, the party that submitted an exhibit into evidence must maintain custody of that exhibit until:

**(1)** 14 days after expiration of the time for filing a notice of appeal, if no notice of appeal is filed in the proceeding by any party; or

**(2)** 14 days after a mandate issues from the Court of Appeals, if an appeal was taken by any party to the proceeding.

**79-5.   Filing Documents Under Seal in Civil Cases**

**(a) Right of Access.**  The public has a right of access to the Court's files.  This local rule applies in all instances where a party seeks to conceal information from the public by filing a document, or portions of a document, under seal.  A party must explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents (as opposed to merely redacting the truly sensitive information in a document).

**(b) Necessity of Filing a Motion to Seal.**  A party must file a motion to seal a document at the same time that the party submits the document.  Filing a motion to seal permits the party to provisionally file the document under seal, pending the Court's ruling on the motion to seal.  A party need not file a motion to seal if a federal statute or a prior court order in the same case expressly authorizes the party to file certain documents (or portions of documents) under seal.

**(c) Contents of Motion to Seal.**  Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable.  A motion to seal a party's own document (as opposed to a document designated as confidential by another party, as discussed in subsection (f)) must be filed as an Administrative Motion to File Under Seal in conformance with Civil L.R. 7-11. This requirement applies even if the motion is joined by the opposing party. The motion must include the following:

   **(1)** a specific statement of the applicable legal standard <u>and</u> the reasons for keeping a document under seal, including an explanation of:

     **(i)**     the legitimate private or public interests that warrant sealing;
     **(ii)**    the injury that will result if sealing is denied; and
     **(iii)**   why a less restrictive alternative to sealing is not sufficient;

   **(2)** evidentiary support from declarations where necessary; and

   **(3)** a proposed order that is narrowly tailored to seal only the sealable material, and which lists in table format each document or portion thereof that is sought to be sealed.

**(d) Procedure for Filing Declarations or Exhibits.**  Where the document to be sealed is a declaration or an exhibit to a document filed electronically, an otherwise blank page reading "EXHIBIT FILED UNDER SEAL" shall replace the exhibit in the document filed on the public docket, and the exhibit to be filed under seal shall be filed separately as an attachment to the Administrative Motion to File Under Seal.

**(e) Procedure for Filing Pleadings and Briefs**.  Only in rare circumstances should a party seek to file portions of a pleading or brief under seal.  For redacted pleadings and briefs, the following procedure applies:

   **(1)** the party shall redact the confidential information from the pleading or brief filed on the public docket; and

   **(2)** the party shall file the unredacted pleading or brief under seal, as an attachment to an Administrative Motion to File Under Seal.  The unredacted version must include

the phrase "FILED UNDER SEAL" prominently marked on the first page and must highlight the portions for which sealing is sought.

Motions to seal entire pleadings or briefs are strongly disfavored and will be granted only in extraordinary circumstances.

**(f)  Motion to Consider Whether Another Party's Material Should be Sealed.**  For any document a party ("Filing Party") seeks to seal because that document has been designated as confidential by another party or non-party (the "Designating Party"), the Filing Party must, instead of filing an Administrative Motion to File Under Seal, file an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed.

**(1)**  This motion must identify each document or portions thereof for which sealing is sought, but the Filing Party need not satisfy the showing required in subsection (c)(1) above.

**(2)**  In the event the Designating Party is not an ECF user in the case, the Filing Party must serve the motion on the Designating Party the same day the motion is filed.

**(3)**  Within 7 days of the motion's filing, the Designating Party must file a statement and/or declaration as described in subsection (c)(1).  A failure to file a statement or declaration may result in the unsealing of the provisionally sealed document without further notice to the Designating Party.

**(4)**  If any party wishes to file a response, it must do so no later than 4 days after the Designating Party files its statement and/or declaration. Responses may not exceed 5 pages absent leave of the Court.

**(5)**  In the event a single document contains various portions that more than one party bears the burden of showing is sealable, the filing party must file separate motions pursuant to 79-5(c) and 79-5(f) as appropriate.  Each party must then satisfy its own burden with respect to that portion of the document that it seeks to seal.

**(6)**  Additionally, overly broad requests to seal may result in the denial of the motion.

**(g)  Effect and Duration of Court's Ruling on Motion to Seal.**

**(1)**  When the Court grants a motion to seal or otherwise permits a document to remain under seal, the document will remain under seal until further order of the Court.

**(2)**  When the Court denies a motion to seal, it will determine whether to consider the information sought for sealing and require its public filing, permit its withdrawal without considering the information, or order any other disposition it deems proper.

**(3)**  Parties or non-parties may, at any time, file a motion requesting that the Court unseal a document.  If a motion to unseal is filed more than 3 years after the case is closed, there will be a strong presumption that the document will be unsealed.

**(h) Manual Filing of Sealed Documents.** When a pro se party who is not an e-filer wishes to manually file a document under seal, the pro se party shall place the document and the Administrative Motion to File Under Seal in a sealed envelope, marked with the case caption and the phrase "FILED UNDER SEAL."

# 83.   AMENDMENT OF THE LOCAL RULES

## 83-1.   Method of Amendment

The local rules of this Court may be modified or amended by a majority vote of the active Judges of the Court in accordance with the procedures set forth in this rule. New rules may be proposed or existing rules may be amended at the suggestion of any judge or member of the public, and will generally be vetted by the Local Rules Committee, which will make a recommendation to the Court before a vote is taken. Attorney Advisory Committees will be appointed to advise and assist the Court when called upon to do so by the Local Rules Committee.

## 83-2.   Procedure for Public Comment on Local Rules

**(a)**   **Public Submissions**. Any person may submit written suggestions for amendments to the local rules at any time. Such suggestions shall be directed to the Chief Judge, who will refer the matter to the Local Rules Committee for consideration, unless the circumstances warrant putting the matter immediately before the full Court.

**(b)**   **Publication**. Before becoming effective, any proposed substantive modification of the local rules shall be subject to public comment in accordance with Fed. R. Civ. P. 83 and posted on the Court's website. Proposed amendments for form, style, grammar, consistency, or any other non-substantive modifications, need not be submitted for public comment.

Attachment 3

COOLEY LLP
TRAVIS LEBLANC (251097) (tleblanc@cooley.com)
JOSEPH D. MORNIN (307766) (jmornin@cooley.com)
101 California Street, 5th floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

DANIEL J. GROOMS (D.C. Bar No. 219124) (*pro hac vice* forthcoming)
(dgrooms@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

Attorneys for Plaintiffs
WHATSAPP INC. and FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs WhatsApp Inc. and Facebook, Inc. (collectively, "Plaintiffs") allege the following against Defendants NSO Group Technologies Ltd. ("NSO Group") and Q Cyber Technologies Ltd. ("Q Cyber") (collectively, "Defendants"):

## INTRODUCTION

1.      Between in and around April 2019 and May 2019, Defendants used WhatsApp servers, located in the United States and elsewhere, to send malware to approximately 1,400 mobile phones and devices ("Target Devices"). Defendants' malware was designed to infect the Target Devices for the purpose of conducting surveillance of specific WhatsApp users ("Target Users"). Unable to break WhatsApp's end-to-end encryption, Defendants developed their malware in order to access messages and other communications after they were decrypted on Target Devices. Defendants' actions were not authorized by Plaintiffs and were in violation of WhatsApp's Terms of Service. In May 2019, Plaintiffs detected and stopped Defendants' unauthorized access and abuse of the WhatsApp Service and computers.

2.      Plaintiffs bring this action for injunctive relief and damages pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502, and for breach of contract and trespass to chattels.

## PARTIES

3.      Plaintiff WhatsApp Inc. ("WhatsApp") is a Delaware corporation with its principal place of business in Menlo Park, California.

4.      Plaintiff Facebook, Inc. ("Facebook") is a Delaware corporation with its principal place of business in Menlo Park, California. Facebook acts as WhatsApp's service provider for security-related issues.

5.      Defendant NSO Group was incorporated in Israel on January 25, 2010, as a limited liability company. Ex. 1. NSO Group had a marketing and sales arm in the United States called WestBridge Technologies, Inc. Ex. 2 and 3. Between 2014 and February 2019, NSO Group obtained financing from a San Francisco–based private equity firm, which ultimately purchased a controlling stake in NSO Group. Ex. 4. In and around February 2019, NSO Group was reacquired by its founders

**COMPLAINT**

and management. *Id.* NSO Group's annual report filed on February 28, 2019, listed Defendant Q Cyber as the only active director of NSO Group and its majority shareholder. Ex. 5.

6.  Defendant Q Cyber was incorporated in Israel on December 2, 2013, under the name L.E.G.D. Company Ltd. Ex. 6 and 7. On May 29, 2016, L.E.G.D. Company Ltd. changed its name to Q Cyber. Ex. 7. Until at least June 2019, NSO Group's website stated that NSO Group was "a Q Cyber Technologies company." Ex. 8. Q Cyber's annual report filed on June 17, 2019, listed OSY Technologies S.A.R.L. as the only Q Cyber shareholder and active Director. Ex. 9

7.  At all times material to this action, each Defendant was the agent, partner, alter ego, subsidiary, and/or coconspirator of and with the other Defendant, and the acts of each Defendant were in the scope of that relationship. In doing the acts and failing to act as alleged in this Complaint, each Defendant acted with the knowledge, permission, and consent of each other; and, each Defendant aided and abetted each other.

## JURISDICTION AND VENUE

8.  The Court has federal question jurisdiction over the federal causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1331.

9.  The Court has supplemental jurisdiction over the state law causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative fact as Plaintiffs' federal claims.

10.  In addition, the Court has jurisdiction over all the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 because complete diversity between the Plaintiffs and each of the named Defendants exists, and because the amount in controversy exceeds $75,000.

11.  The Court has personal jurisdiction over Defendants because they obtained financing from California and directed and targeted their actions at California and its residents, WhatsApp and Facebook. The claims in this Complaint arise from Defendants' actions, including their unlawful access and use of WhatsApp computers, several of which are located in California.

12.  The Court also has personal jurisdiction over Defendants because Defendants agreed to WhatsApp's Terms of Service ("WhatsApp Terms") by accessing and using WhatsApp. In relevant part, the WhatsApp Terms required Defendants to submit to the personal jurisdiction of this Court.

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), as the threatened and actual harm to WhatsApp and Facebook occurred in this District.

14.     Pursuant to Civil L.R. 3-2(d), this case may be assigned to either the San Francisco or Oakland division because WhatsApp and Facebook are located in San Mateo County.

## FACTUAL ALLEGATIONS

### A.     Background on Facebook

15.     Facebook is a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices. As of June 2019, Facebook daily active users averaged 1.59 billion and monthly active users averaged 2.41 billion.

16.     In October 2014, Facebook acquired WhatsApp.  At all times relevant to this action, Facebook has served as WhatsApp's service provider, which entails providing both infrastructure and security for WhatsApp.

### B.     Background on WhatsApp

#### 1.     The WhatsApp Service

17.      WhatsApp provides an encrypted communication service available on mobile devices and desktop computers (the "WhatsApp Service").  Approximately 1.5 billion people in 180 countries use the WhatsApp Service.  Users must install the WhatsApp app to use the WhatsApp Service.

18.     Every type of communication (calls, video calls, chats, group chats, images, videos, voice messages, and file transfers) on the WhatsApp Service is encrypted during its transmission between users.  This encryption protocol was designed to ensure that no one other than the intended recipient could read any communication sent using the WhatsApp Service.

#### 2.     WhatsApp's Terms of Service

19.     Every WhatsApp user must create an account and agree and consent to WhatsApp's Terms (available at https://www.whatsapp.com/legal?eea=0#terms-of-service).

20.     The WhatsApp Terms stated that "You must use our Services according to our Terms and policies" and that users agreed to "access and use [WhatsApp's] Services only for legal, authorized, and acceptable purposes."

21.     The WhatsApp Terms prohibited using the WhatsApp services in ways that (a) "violate, misappropriate, or infringe the rights of WhatsApp, our users, or others, including privacy;" (b) "are illegal, intimidating, harassing, . . . or instigate or encourage conduct that would be illegal, or otherwise inappropriate;" [or] . . . (e) "involve sending illegal or impermissible communications."

22.     The WhatsApp Terms prohibited users from "exploiting [WhatsApp's] Services in impermissible or unauthorized manners, or in ways that burden, impair, or harm us, our Services, systems, our users, or others."  The Terms also required users to agree <u>not</u> to: "(a) reverse engineer, alter, modify, create derivative works from, decompile, or extract code from our Services; (b) send, store, or transmit viruses or other harmful computer code through or onto our Services; (c) gain or attempt to gain unauthorized access to our Services or systems; (d) interfere with or disrupt the safety, security, or performance of our Services; [or] . . . (f) collect the information of or about our users in any impermissible or unauthorized manner."

23.     The WhatsApp Terms prohibited users not just from personally engaging in the conduct listed above, but also from assisting others in doing so.

**C.     Background on NSO Group and Pegasus**

24.     Defendants manufactured, distributed, and operated surveillance technology or "spyware" designed to intercept and extract information and communications from mobile phones and devices.  Defendants' products included "Pegasus," a type of spyware known as a remote access trojan.  Ex. 10 and 11.  According to Defendants, Pegasus and its variants (collectively, "Pegasus") were designed to be remotely installed and enable the remote access and control of information—including calls, messages, and location—on mobile devices using the Android, iOS, and BlackBerry operating systems.  *Id.*

25.     On information and belief, in order to enable Pegasus' remote installation, Defendants exploited vulnerabilities in operating systems and applications (e.g., CVE-2016-4657) and used other malware delivery methods, like spearphishing messages containing links to malicious code.  *Id.*

26.     According to media reports and NSO documents, Defendants claimed that Pegasus could be surreptitiously installed on a victim's phone without the victim taking any action, such as

clicking a link or opening a message (known as remote installation).[1]  *Id*.  Defendants promoted that Pegasus's remote installation feature facilitated infecting victims' phones without using spearphishing messages that could be detected and reported by the victims.

27.     According to NSO Group, Pegasus could "remotely and covertly extract valuable intelligence from virtually any mobile device."  *Id*.  Pegasus was designed, in part, to intercept communications sent to and from a device, including communications over iMessage, Skype, Telegram, WeChat, Facebook Messenger, WhatsApp, and others.  *Id*.  On information and belief, Pegasus was modular malware, which meant that it could be customized for different purposes, including to intercept communications, capture screenshots, and exfiltrate browser history and contacts from the device. *Id*.

28.     Defendants used a network of computers to monitor and update the version of Pegasus implanted on the victims' phones.  *Id*.  These Defendant-controlled computers relayed malware, commands, and data between a compromised phone, Defendants, and Defendants' customers.  This network served as the nerve center through which Defendants supported and controlled their customers' operation and use of Pegasus.  In some instances, Defendants limited the number of concurrent devices that their customers could compromise with Pegasus to 25.  Ex. 11.

29.     Defendants profited by licensing Pegasus and selling support services to their customers, which included Pegasus installation, monitoring, and training.  Ex. 10 and 11.  Defendants also offered technical support to customers using Pegasus to infect victims' phones, including: (a) technical support by email and phone; and (b) remote troubleshooting by Defendants' engineers through remote desktop software and a virtual private network.  *Id*.

---

[1] *See* Financial Times, "Israel's NSO: the business of spying on your iPhone" (May 14, 2019), *available at* https://www.ft.com/content/7f2f39b2-733e-11e9-bf5c-6eeb837566c5; Vice, "They Got Everything" (September 20, 2018), *available at* https://www.vice.com/en_us/article/qvakb3/inside-nso-group-spyware-demo.

**D.      Defendants Agreed to the WhatsApp Terms**

30.      Between January 2018 and May 2019, Defendants created and caused to be created various WhatsApp accounts and agreed to the WhatsApp Terms.  Defendants' employees and agents accepted and agreed to be bound by the Terms on behalf of Defendants.

31.      At all times relevant to this Complaint, Defendants were bound by the WhatsApp Terms.

**E.      Defendants Accessed and Used Plaintiffs' Servers Without Authorization and Infected Target Users' Devices With Malware**

**1.      Overview**

32.      Defendants took a number of steps, using WhatsApp servers and the WhatsApp Service without authorization, to send discrete malware components ("malicious code") to Target Devices. *First*, Defendants set up various computer infrastructure, including WhatsApp accounts and remote servers, used to infect the Target Devices and conceal Defendants' identity and involvement.  *Second*, Defendants used and caused to be used WhatsApp accounts to initiate calls through Plaintiffs' servers that were designed to secretly inject malicious code onto Target Devices.  *Third*, Defendants caused the malicious code to execute on some of the Target Devices, creating a connection between those Target Devices and computers controlled by Defendants (the "remote servers").  *Fourth*, on information and belief, Defendants caused Target Devices to download and install additional malware—believed to be Pegasus or another remote access trojan developed by Defendants—from the remote servers for the purpose of accessing data and communications on Target Devices.

**2.      Defendants Set Up Computer Infrastructure Used to Infect the Target Devices**

33.      Between approximately January 2018 and May 2019, Defendants created WhatsApp accounts that they used and caused to be used to send malicious code to Target Devices in April and May 2019.  The accounts were created using telephone numbers registered in different counties, including Cyprus, Israel, Brazil, Indonesia, Sweden, and the Netherlands.

34.      Beginning no later than 2019, Defendants leased and caused to be leased servers and internet hosting services in different countries, including the United States, in order to connect the

Target Devices to a network of remote servers intended to distribute malware and relay commands to the Target Devices.  This network included proxy servers and relay servers (collectively, "malicious servers").  The malicious servers were owned by Choopa, Quadranet, and Amazon Web Services ("AWS"), among others.  The IP address of one of the malicious servers was previously associated with subdomains used by Defendants.

### 3.    Defendants' Unauthorized Access of Plaintiff's Servers

35.    On information and belief, Defendants reverse-engineered the WhatsApp app and developed a program to enable them to emulate legitimate WhatsApp network traffic in order to transmit malicious code—undetected—to Target Devices over WhatsApp servers.  Defendants' program was sophisticated, and built to exploit specific components of WhatsApp network protocols and code.  Network protocols generally define rules that control communications between network computers, including protocols for computers to identify and connect with other computers, as well as formatting rules that specify how data is packaged and transmitted.

36.    In order to compromise the Target Devices, Defendants routed and caused to be routed malicious code through Plaintiffs' servers—including Signaling Servers and Relay Servers—concealed within part of the normal network protocol.  WhatsApp's Signaling Servers facilitated the initiation of calls between different devices using the WhatsApp Service.  WhatsApp's Relay Servers facilitated certain data transmissions over the WhatsApp Service.  Defendants were not authorized to use Plaintiffs' servers in this manner.

37.    Between approximately April and May 2019, Defendants used and caused to be used, without authorization, WhatsApp Signaling Servers, in an effort to compromise Target Devices.  To avoid the technical restrictions built into WhatsApp Signaling Servers, Defendants formatted call initiation messages containing malicious code to appear like a legitimate call and concealed the code within call settings.  Disguising the malicious code as call settings enabled Defendants to deliver it to the Target Device and made the malicious code appear as if it originated from WhatsApp Signaling Servers.  Once Defendants' calls were delivered to the Target Device, they injected the malicious code into the memory of the Target Device—even when the Target User did not answer the call.

38.     For example, on May 9, 2019, Defendants used WhatsApp servers to route malicious code, which masqueraded as a series of legitimate calls and call settings, to a Target Device using telephone number (202) XXX-XXXX.  On information and belief, the malicious code concealed within the calls was then installed in the memory of the Target Device.

39.     Between April and May 2019, Defendants also used and caused to be used WhatsApp's Relay Servers without authorization to send encrypted data packets designed to activate the malicious code injected into the memory of the Target Devices.  When successfully executed, the malicious code caused the Target Device to send a request to one of the malicious servers controlled by Defendants.

40.     On information and belief, the malicious servers connected the Target Devices to remote servers hosting Defendants' malware.  The malicious code on the Target Devices then downloaded and installed Defendants' malware from those servers.

41.     On information and belief, after it was installed, Defendants' malware was designed to give Defendants and their customers access to information and data stored on the Target Devices, including their communications.

42.     Between approximately April 29, 2019, and May 10, 2019, Defendants caused their malicious code to be transmitted over WhatsApp servers in an effort to infect approximately 1,400 Target Devices.  The Target Users included attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials.

43.     The Target Users had WhatsApp numbers with country codes from several countries, including the Kingdom of Bahrain, the United Arab Emirates, and Mexico.  According to public reporting, Defendants' clients include, but are not limited to, government agencies in the Kingdom of Bahrain, the United Arab Emirates, and Mexico as well as private entities.[2]

---

[2] *See* Fast Company, "Israeli cyberweapon targeted the widow of a slain Mexican journalist" (March 20, 2019), *available at* https://www.fastcompany.com/90322618/nso-group-pegasus-cyberweapon-targeted-the-widow-of-a-slain-mexican-journalist; New York Times, "Hacking a Prince, and Emir and a Journalist to Impress a Client" (August 31, 2018), *available at* https://www.nytimes.com/2018/08/31/world/middleeast/hacking-united-arab-emirates-nso-group.html; The Guardian, "Israeli firm linked to WhatsApp spyware attack faces lawsuit" (May 18, 2019), *available at* https://www.theguardian.com/world/2019/may/18/israeli-firm-nso-group-linked-to-whatsapp-spyware-attack-faces-lawsuit.

44.     On or about May 13, 2019, Facebook publicly announced that it had investigated and identified a vulnerability involving the WhatsApp Service (CVE-2019-3568).   WhatsApp and Facebook closed the vulnerability, contacted law enforcement, and advised users to update the WhatsApp app.

45.     Defendants subsequently complained that WhatsApp had closed the vulnerability. Specifically, NSO Employee 1 stated, "You just closed our biggest remote for cellular . . . It's on the news all over the world."

**F.      Defendants' Unlawful Acts Have Caused Damage and Loss to WhatsApp and Facebook**

46.     Defendants' actions and omissions interfered with the WhatsApp Service and burdened Plaintiffs' computer network.

47.     Defendants' actions injured Plaintiffs' reputation, public trust, and goodwill.

48.     Defendants have caused Plaintiffs damages in excess of $75,000 and in an amount to be proven at trial.

## FIRST CAUSE OF ACTION

### (Computer Fraud and Abuse Act, 18 U.S.C. § 1030)

49.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

50.     At various times between April 29, 2019, and May 10, 2019, Defendants accessed, used, or caused to be accessed or used Plaintiffs' Signaling Servers and Relay Servers without authorization in an effort to compromise approximately 1,400 Target Devices.

51.     Plaintiffs' Signaling Servers and Relay Servers and the Target Devices were "computers" as defined by 18 U.S.C. § 1030(e)(1).

52.     Plaintiffs' Signaling Servers and Relay Servers and the Target Devices were "protected computers" as defined by 18 U.S.C. § 1030(e)(2)(B) because they are "used in or affecting interstate or foreign commerce or communication."

53.     Defendants violated 18 U.S.C. § 1030(a)(2) because they intentionally accessed and caused to be accessed (a) Plaintiffs' computers, and (b) Target Devices, without authorization and, on information and belief, obtained data from the Target Devices.

54.     Defendants violated 18 U.S.C. § 1030(a)(4) because they knowingly and with intent to defraud accessed and caused to be accessed (a) Plaintiffs' protected computers and (b) Target Devices without authorization, and by means of such conduct furthered the intended fraud and obtained something of value.  Defendants' fraud included falsely agreeing to the WhatsApp Terms, sending unauthorized commands to Plaintiffs' computers and concealing the commands as legitimate network traffic, in order to gain access of the Target Devices without the Target Users' knowledge or consent.  As a result of the fraud, Defendants obtained money, customers, remote access and control of the Target Devices, data from the Target Devices, and unauthorized use of the WhatsApp service, the value of which exceeds $5,000.

55.     Defendants violated 18 U.S.C. § 1030(b) by conspiring and attempting to commit the violations alleged in the preceding paragraphs.

56.     Defendants' conduct caused a loss to Plaintiffs and the Target Users in excess of $5,000 during a one-year period.

57.     Defendants' actions caused Plaintiffs to incur a loss as defined in 18 U.S.C. § 1030(e)(11), including the expenditure of resources to investigate and remediate Defendants' fraud and unauthorized access.  Plaintiffs are entitled to be compensated for losses and damages, and any other amount to be proven at trial.

## SECOND CAUSE OF ACTION

(California Comprehensive Computer Data Access and Fraud Act,
California Penal Code § 502)

58.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

59.     Defendants knowingly accessed and without permission altered and used Plaintiffs' data, computer, computer system, and computer network in order to (a) devise and execute a scheme and artifice to defraud and deceive, and (b) wrongfully control and obtain money, property, and data in violation of California Penal Code § 502(c)(1).

60.     Defendants knowingly and without permission used and caused to be used WhatsApp Signaling Servers and Relay Servers, including servers located in California, in violation of California Penal Code § 502(c)(3).

61.     Defendants knowingly and without permission provided and assisted in providing a means of accessing Plaintiffs' computers, computer systems, and computer networks, including those located in California, in violation of California Penal Code § 502(c)(6).

62.     Defendants knowingly and without permission accessed and caused to be accessed Plaintiffs' computers, computer systems, and computer networks, including those located in California, in violation of California Penal Code § 502(c)(7).

63.     Defendants knowingly introduced a computer contaminant into Plaintiffs' computers, computer systems, and computer networks in violation of California Penal Code § 502(c)(8).

64.     Defendants' actions caused Plaintiffs to incur losses and damages, including, among other things, the expenditure of resources to investigate and remediate Defendants' conduct, damage to Plaintiffs' reputation, and damage to the relationships and goodwill between Plaintiffs and their users and potential users. Plaintiffs have been damaged in an amount to be proven at trial.

65.     Because Plaintiffs suffered damages and a loss as a result of Defendants' actions and continue to suffer damages as result of Defendants' actions, Plaintiffs are entitled to compensatory damages, attorneys' fees, and any other amount of damages to be proven at trial, as well as injunctive relief under California Penal Code §§ 502(e)(1) and (2).

66.     Because Defendants willfully violated California Penal Code § 502, and there is clear and convincing evidence that Defendants acted with malice and oppression and committed "fraud" as defined by section 3294 of the Civil Code, Plaintiffs are entitled to punitive and exemplary damages under California Penal Code § 502(e)(4).

## THIRD CAUSE OF ACTION

### (Breach of Contract)

67.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

68.     Access to and use of WhatsApp is governed by the WhatsApp's Terms and related WhatsApp policies.

69.     Defendants agreed to and became bound by the WhatsApp's Terms when they used WhatsApp and the WhatsApp Service.

70.     WhatsApp and Facebook have performed all conditions, covenants, and promises required of it in accordance with the WhatsApp's Terms.

71.     Defendants' violations of the WhatsApp's Terms have directly and proximately caused and continue to cause harm and injury to WhatsApp.

72.     When Defendants agreed to and became bound by the WhatsApp Terms, both Plaintiffs and Defendants knew or could have reasonably foreseen that the harm and injury to Plaintiffs was likely to occur in the ordinary course of events as a result of Defendants' breach.

73.     Defendants' actions caused Plaintiffs to incur losses and other economic damages, including, among other things, the expenditure of resources to investigate and remediate Defendants' conduct, damage to Plaintiffs' reputation, and damage to the relationships and goodwill between Plaintiffs and their users and potential users. Plaintiffs have been damaged in an amount to be proven at trial, and in excess of $75,000.

## FOURTH CAUSE OF ACTION

### (Trespass to Chattels)

74.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

75.     At all times mentioned in this Complaint, Plaintiffs had legal title to and actual possession of their computer systems.

76.     Defendants intentionally and without authorization interfered with Plaintiffs' possessory interest in their computer systems, including by accessing and using Plaintiffs' servers to transmit malicious code for the purpose of unlawfully compromising Target Users' devices, all without authorization from Plaintiffs and Target Users.

77.     Defendants' access to Plaintiffs' computer systems exceeded the scope of the conditional access that Plaintiffs grant to legitimate users of the WhatsApp Service.

78.     Defendants' actions caused Plaintiffs to incur losses and other economic damages, including, among other things, the expenditure of resources to investigate and remediate Defendants' conduct, damage to Plaintiffs' reputation, and damage to the relationships and goodwill between Plaintiffs and their users and potential users. Plaintiffs have been damaged in an amount to be proven at trial, and in excess of $75,000.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs request judgment against Defendants as follows:

1.     That the Court enter judgment against Defendants that Defendants have:

    a.  Violated the Computer Fraud and Abuse Act, in violation of 18 U.S.C. § 1030;

    b.  Violated the California Comprehensive Computer Data Access and Fraud Act, in violation California Penal Code § 502;

    c.  Breached their contracts with WhatsApp in violation of California law;

    d.  Wrongfully trespassed on Plaintiffs' property in violation of California law.

2.     That the Court enter a permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors, and assigns, and all other persons acting in concert with or conspiracy with any of them or who are affiliated with Defendants from:

    a.  Accessing or attempting to access WhatsApp's and Facebook's service, platform, and computer systems;

    b.  Creating or maintaining any WhatsApp or Facebook account;

    c.  Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Plaintiffs' service, platform, and computer systems; and

    d.  Engaging in any activity, or facilitating others to do the same, that violates WhatsApp's or Facebook's Terms;

3.     That WhatsApp and Facebook be awarded damages, including, but not limited to, compensatory, statutory, and punitive damages, as permitted by law and in such amounts to be proven at trial.

4.     That WhatsApp and Facebook be awarded their reasonable costs, including reasonable attorneys' fees.

5.     That WhatsApp and Facebook be awarded pre- and post-judgment interest as allowed by law.

6.     That the Court grant all such other and further relief as the Court may deem just and proper.

**PLAINTIFFS RESPECTFULLY DEMAND A JURY TRIAL.**

Dated:  October 29, 2019                    Respectively submitted,

                                            COOLEY LLP


                                            /s/ Travis LeBlanc
                                            Travis LeBlanc
                                            Daniel J. Grooms
                                            Joseph D. Mornin

                                            Attorneys for Plaintiffs
                                            WHATSAPP INC. and FACEBOOK, INC.

                                            Platform Enforcement and Litigation
                                            Facebook, Inc.
                                            Jessica Romero
                                            Tyler Smith
                                            Michael Chmelar
                                            Bridget Freeman

EXHIBIT 1

| Ministry of Justice | [emblem] | Registrar of Companies |
|---|---|---|

**State of Israel**
**Companies Law, 5760-1999**

# <u>Company Incorporation Certificate</u>

**This is to certify that**

> **N.S.O. GROUP TECHNOLOGIES LTD**
> [bilingual text]

**got incorporated and registered according to the Companies Law as a Limited Liability Company**

25/01/2010
10th of Sh'vat, 5770

**Company no. 514395409**

[stamp:]
Ministry of Justice
Registrar of Companies
[emblem:] State of Israel
[signature]
Einat Messika, Adv.
Registrar of Companies

[stamp:]
[logo]
Corporations Authority
A confirmation that this document has been signed electronically, it is a copy of the document (original or copy) that is in the file of the Corporations Authority on the day of the signature

[emblem:] State of Israel

Ministry of Justice

This document is a copy scanned in its entirety on the indicated day and hour, via trusted digital scanning of the document found in the file, in accordance to the inspection regulation at the Ministry of Justice.

Signed by

Ministry of Justice (institutional signature).

| |
|---|
| [stamp:]<br>[logo]<br>Corporations Authority<br>A confirmation that this document has been signed electronically, it is a copy of the document (original or copy) that is in the file of the Corporations Authority on the day of the signature |

PUBLIC0637849

EXHIBIT 2

p. 33

**From:** [redacted]
**Sent:** Wednesday, June 04, 2014 8:35 AM
**To:** [redacted]
**Subject:** FW: Meeting request from [redacted]

[redacted] Attached is the information [redacted] provided us with the other day. Please stop by after today's 8:30 meeting so we can discuss this and the AG/DAG heroin briefing tasks. Thanks.

**From:** [redacted]
**Sent:** Friday, May 30, 2014 10:14 AM
**To:** Benson, Rodney G.
**Cc:** [redacted]
**Subject:** Meeting request from [redacted]

Mr. Benson.

Hope you are well. Thank you for your service at DEA. I have a special appreciation for your work. [redacted]

[redacted] I have been a Senior Advisor at Dickstein, Shapiro. One of my clients is a company called Westbridge. It is an American owned company associated with an Israeli company called NSO. I have attached a company brochure; product presentation and company profile. I think if you will look at the product presentation you will agree that their technology has remarkable intelligence applications.

The co-founder of the company, Omri Lavie, will be in DC on June 11th and the morning of June 12th. I would respectfully request that if your schedule permits that you grant a meeting to Mr. Lavie.

While I have a previous out of town appointment on those days, my colleague, [redacted] [redacted] would be able to accompany Mr. Lavie.

I know your schedule is packed but it would be a great favor if you can find an opening to meet with the Westbridge folks.

High regards- [redacted]

[redacted]
Senior Advisor [redacted]
Dickstein Shapiro LLP
1825 Eye Street NW | Washington, DC 20006
Tel (202) [redacted] / Fax (202) [redacted]
[redacted]

* All Materials included in this email are property of NSO Group Ltd. and are strictly confidential  * 2014 *
[cid:image001.jpg@01CF4DCA.CCACE850]

2

Page 33

EXHIBIT 3

09/25/2019 - Screenshot from https://www.documentcloud.org/documents/6401851-NSO-Emails-with-DEA.html



November 2014

Dear all,

I want to take this opportunity to thank you for investing your time with us. The numerous meetings and exchanges we had with your team have provided us with valuable feedbacks and information as Westbridge further establishes itself in the US market.

As previously discussed, we are confident that there could be a great value to a future partnership between your organization and Westbridge with its unique solution.

The Westbridge team and myself are available at any time, should you have any inquiries.

Best regards,

Omri Lavie |Co-Founder, CEO

Westbridge Technologies Inc.

Copyright 2014 WestBridge. All rights reserved.                    info@westbrg.com

Page 162

EXHIBIT 4



franciscopartners.com/news/nso-group-acquired-by-its-management

**FP** FRANCISCO PARTNERS

Transformational Capital
*for technology companies*

about / **team** / investments / *news* / contact

*Press Release*

← Back to News

# NSO Group Acquired by its Management

PRESS RELEASE - FEBRUARY 14 2019

• The founders and management team of NSO Group, a cyber-technology company headquartered in Luxembourg, acquire the company

• The management team is supported by European private equity firm Novalpina Capital

The management team and founders of NSO Group today announced the acquisition of the company from global private equity firm Francisco Partners.

NSO Group develops technology that helps government intelligence and law enforcement agencies prevent and investigate terrorism and crime to save lives. Established from the combination of Israeli and European cyber technology companies, NSO Group has since become a global leader in providing cyber intelligence and analytics solutions to governments. The company has grown rapidly and finished 2018 with revenues of $250 million, and dozens of licensed customers.

The acquisition is led by NSO Group co-founders Shalev Hulio and Omri Lavie, together with members of the company's senior executive team. A significant number of employees will participate in the acquisition. The founders and management team are supported in the acquisition by Novalpina Capital, a European private equity firm. Jefferies Group LLC is advising and leading the financing.

**Shalev Hulio, Founder and Chief Executive Officer of NSO Group,** said: "This is an important and significant milestone for NSO. I am proud of what the company and our employees have achieved since we were founded in 2010. Together we have built an amazing technology company that is making the world a safer place. As we look forward, we are delighted that Novalpina is joining as our equity partner. Together we can take NSO Group to the next level, launching new cutting-edge products that help our customers reduce the threats from terrorism and crime. I want to thank Francisco Partners for its tremendous support over the past few years. Its guidance has been instrumental to the success of the company."

**Eran Gorev, Operating Partner at Francisco Partners and Chairman of NSO Group,** said: "We are very proud of the company's contribution to the global war against terrorism and crime, and the many thousands of lives that have been saved thanks to the company's technology. Since our investment in NSO Group, the company has continued to develop its outstanding technological capabilities and has more than quadrupled in size, while implementing a best-in-class business ethics framework and bringing in independent experts to ensure the company was operating in accordance with the highest ethical standards. We would like to thank all the amazing employees of NSO Group for their incredible contribution to the company and to making the world a safer place, and to wish them a highly successful future."

**Stefan Kowski, Partner at Novalpina Capital,** said: "NSO Group has an impressive management team that has developed best-in-class, proprietary technologies sold to

management team that has developed best-in-class, proprietary technologies sold to approved governments and intelligence agencies to help tackle terrorism and organised crime. We look forward to supporting NSO's leadership as they continue to grow the business."

**About NSO Group**

NSO Group is a global leader in the world of cyber-intelligence, data acquisition and analysis. The company's mission is to equip select intelligence agencies and law enforcement organizations around the world with strategic, tactical and analytical technological capabilities required to ensure the success of their operations in fighting crime and terrorism.

NSO Group solutions are developed and maintained by a team of cyber-intelligence and cellular-communication experts who operate at the forefront of their fields. Their designs constantly evolve to keep pace with an ever-changing cyber world.

NSO Group is committed to the proper use of its technology to help governments strengthen public safety and protect against major security threats. NSO Group's advanced intelligence solutions are used globally and play a major role in preventing terror activities, combating human trafficking and the war on drugs.

**About Francisco Partners**

Francisco Partners is a leading global private equity firm that specializes in investments in technology and technology-enabled services businesses. Since its launch over 18 years ago, Francisco Partners has raised over $14 billion in capital and invested in more than 200 technology companies, making it one of the most active and longstanding investors in the technology industry. The firm invests in opportunities where its deep sectoral knowledge and operational expertise can help companies realize their full potential. For more information on Francisco Partners, please visit www.franciscopartners.com.

**About Novalpina Capital**

Novalpina Capital is an independent European private equity firm that invests in middle market companies. The Firm was founded by Stephen Peel, Stefan Kowski and Bastian Lueken in 2017. The founding partners bring more than 50 years of combined experience in private equity investing, having held senior positions in the European operations of firms including TPG, Centerbridge and Platinum Equity, and worked together for nearly a decade at TPG.

**Francisco Partners**

©2019 All Rights Reserved
Sitemap
Legal
Privacy Policy

a **FINE** site

**San Francisco Office**

One Letterman Drive
Building C - Suite 410
San Francisco, CA 94129
+1 (415) 418 2900 Telephone
Google Maps

**London Office**

207 Sloane Street, 2nd Floor
London, SW1X 9QX
+44 (020) 7907 8600 Telephone
Google Maps

**New York Office**

1114 Avenue Of The Americas,
15th Floor
New York, NY 10110
+1 (646) 434 1343 Telephone
Google Maps

**General Inquiries**

Email Us
Directory

**Client Login**

Login →

■ Transformational Capital *for technology companies*

EXHIBIT 5

[emblem:]        **State of Israel**        [logo:]
**State of Israel**        **Ministry of Justice**        [text cut off]
       **Corporations Authority**        [barcode:] 17042-905
       **Registrar of Companies**

## Private Company Annual Report

(Section 141 of the Companies Law 5759-1999 (hereinafter: "the Law"))

**The data can be typed in or filled out in clear handwriting <u>without using black ink</u>.**

| Company name<br>NSO Group Technologies Ltd. | Company number<br>514395409 | Address of the registered office[1]<br>22 Galgalei Haplada, Hertsliya, Israel 4672222 |
|---|---|---|
| **Telephone** | | **Company Email (if any)** |
| **The report is updated as of (state the date of signing the report in order to submit it to the Registrar of Companies)**<br>[hw:] _7/1/19_ | | **Annual meeting was conducted on the day[2]**<br><br>7.1.2019 |

## Share Capital Distribution

| Total registered capital of the company<br><br>10,000 | Share name and its set value<br>(for shares with set value)<br>Ordinary, set value – 0.01<br>Ordinary A, set value – 0.01<br>Preferred A, set value – 0.01 | Share type<br><br>Ordinary<br>Ordinary A<br>Preferred A |
|---|---|---|
| **Number of shares in the registered capital**<br><br>Ordinary – 548,940<br>Ordinary A – 26,290<br>Preferred A – 424,770 | **Number of allotted shares**<br><br>Ordinary – 185,716<br>Ordinary A – 8,936<br>Preferred A – 295,170 | **Share value**<br><br>0.01 |

## Shareholders and their shares

| Shareholder name<br>Q Cyber Technologies Ltd | ID number[3]<br>514971522 | Address (city, street, house no., zip code)<br>22 Galgalei Haplada, Hertsliya, Israel Zip Code 4672222 |
|---|---|---|
| **Type of shares**<br>Ordinary<br>Ordinary A<br>Preferred A | **Number of shares**<br>118,263<br>8,936<br>295,170 | **Unpaid amount in exchange for the shares** |
| **Shareholder name**<br>NSO Group Technologies Ltd. | **ID number[3]**<br>514395409 | **Address (city, street, house no., zip code)**<br>22 Galgalei Haplada, Hertsliya, Israel Zip Code 4672222 |
| **Type of shares**<br>Ordinary | **Number of shares**<br>67,453 | **Unpaid amount in exchange for the shares** |

[State of Israel]
Registrar of Companies, Corporations Authority
Ministry of Justice, Corporations Authority
Public Service – Jerusalem Region

28-02-2019
RECEIVED

---

[1] Listing a P.O. Box as the company's address is not enough.

[2] The last date on which the annual meeting was conducted, indicate below in the appropriate place whether the company is exempt from conducting annual meetings according to Section 61 of the Law.

[3] A non-holder of the Israeli ID shall indicate his passport number and the country it was issued in, and in the first report of this person, a copy shall be attached, as stated in Regulation 16 of the Companies Regulations (reporting, registration details and forms), 5760-1999. If the shareholder is a corporation, a registration number of the corporation shall be indicated, and if it is a foreign corporation, the copy of incorporation certificate and the required certificates as stated in Regulation 16, shall be attached in the first report of the corporation.

[stamp:]
Corporations Authority
A confirmation that this document has been signed electronically, it is a copy of the document (original or copy) that is in the file of the Corporations Authority on the day of the signature

**State of Israel**  **State of Israel**  **Corporations Authority**
**Ministry of Justice**
**Corporations Authority**
**Registrar of Companies**

## Bearer Shares for the period

**\* Fill out if bearer shares have been issued before 17.09.2016, and the update has not been performed as stated below:**

In accordance with the Amendment no. 28 to the Companies Law 5759-1999, which came into force on 17.09.2016, bearer shares can be no longer issued. A holder of bearer shares issued on the eve of the law coming into force shall be entitled to return the banknote to the company, and the company shall cancel it and issue a share for him that is registered in the Registry of Shareholders of the Company. A bearer share that is not returned as stated shall become a frozen share, as stated in Section 308 of the Law, and it shall not grant him rights until the date stated on the share, which will be recorded in the Registry of Shareholders of the Company.

| Total bearer shares for the period | No. of shares in each note | Note no. |
|---|---|---|
|  |  |  |
|  |  |  |

## Details of active directors

| Director name | ID number | Starting date as a director (year, month, day) |
|---|---|---|
| Q Cyber Technologies Ltd | 514971522 | 19/3/2014 |
| **Address (city, street, house no., zip code)** 22 Galgalei Haplada, Hertsliya, Israel 4672222 ||| 

## Details of directors who stopped their activity (since the date of the previous annual report)

| Director name | ID number | End date as a director (year, month, day) |
|---|---|---|
| Director name | ID number | End date as a director (year, month, day) |
| Director name | ID number | End date as a director (year, month, day) |
| Director name | ID number | End date as a director (year, month, day) |

**Mark the appropriate option with X:**

No change has occurred in the details that were reported regarding the foreign directors according to Regulation 16 from the mentioned regulations.

Change has occurred in the details that were reported regarding the foreign directors, and the documents required under Regulation 16 have been attached to the annual report.

## Authorized party to report to the registrar on behalf of the company, according to Section 39 of the Law

**Filling out the details of the authorized party to report according to Section 39 in this Form will allow the party whose details are entered here to relay updates about the company in a digital manner.**
**For more information, see:** http://www.justice.gov.il/Units/RasutHataagidim/units/RashamHachvarot/TfasimNew/Pages/Online.aspx

| Full name | ID number | Position in the company |
|---|---|---|
| [hw:] [illegible] *Idisis* | *032063521* | *Financial director* |

[stamp:]
[logo]
Corporations Authority
A confirmation that this document has been signed electronically, it is a copy of the document (original or copy) that is in the file of the Corporations Authority on the day of the signature

EXHIBIT 6

[emblem:]
**State of Israel**

**State of Israel**
**Ministry of Justice – Corporations Authority**
**Registrar of Companies and Partnerships**

[logo:]
**Corporations Authority**

# Company Incorporation Certificate

This is to certify that the company:

**L.E.G.D. COMPANY LTD**

[bilingual text]

**whose number is 514971522**

got incorporated and registered on 02/12/2013 - 29th of Kislev 5774,
according to the Companies Law, 5760-1999, as a Limited Liability Company.

**Issued in Jerusalem on:**

02/12/2013
29th of Kislev 5774

[signature]
Zohar Horan
Corporations Authority
Registrar of Companies and Partnerships

[stamp:]
Ministry of Justice
Registrar of Companies
and Partnerships
[emblem:] State of Israel

[stamp:]
[logo]
Corporations Authority
A confirmation that this document has
been signed electronically, it is a copy of
the document (original or copy) that is in
the file of the Corporations Authority on
the day of the signature

[emblem:] State of Israel

Ministry of Justice

This document is a copy scanned in its entirety on the indicated day and hour, via trusted digital scanning of the document found in the file, in accordance to the inspection regulation at the Ministry of Justice.

Signed by

Ministry of Justice (institutional signature).

<table>
<tr><td>[stamp:]<br>[logo]<br>Corporations Authority<br>A confirmation that this document has been signed electronically, it is a copy of the document (original or copy) that is in the file of the Corporations Authority on the day of the signature</td></tr>
</table>

PUBLIC0637849

EXHIBIT 7

[emblem:]          **State of Israel**          [logo:]
State of Israel   **Ministry of Justice – Corporations Authority**   Corporations Authority
          **Registrar of Companies and Partnerships**

[stamp:]
**Document Start**

# **Company Name Change Certificate**

This is to certify that the company

**L.E.G.D. COMPANY LTD**

[bilingual text]

**whose number is 514971522**

has changed its name, and it shall be called from now on

**Q CYBER TECHNOLOGIES LTD**

[bilingual text]

**Issued in Jerusalem on**

29/05/2016
21st of Iyyar, 5776

[stamp:]
[emblem:] State of Israel
**Ministry of Justice**
**Registrar of Companies and Partnerships**

[signature]
Eyal Globus, Adv.
Registrar of Companies and Partnerships
Head of Corporations Authority

[stamp:]
[logo]
Corporations Authority
A confirmation that this document has
been signed electronically, it is a copy of
the document (original or copy) that is in
the file of the Corporations Authority on
the day of the signature

Issued by Eyal Goldring

EXHIBIT 8



# 06/26/19 - web.archive.org screenshot of nsogroup.com

https://www.nsogroup.com/ Go
100 captures
5 Jan 2011 – 31 Aug 2019
MAY JUN JUL
2012 26 2019 2020
About this capture

OUR TECHNOLOGY

## Helping Governments Maintain Public Safety

NSO Group, a Q Cyber Technologies company, develops best-in-class technology to help government agencies detect and prevent a wide-range of local and global threats.

Our products help government intelligence and law-enforcement agencies use technology to meet the challenges of encryption to prevent and investigate terror and crime.

NSO technology is designed by telecommunications and intelligence experts who, positioned at the forefront of their fields, are dedicated to keeping pace with the ever-changing cyber world.

LEARN MORE

EXHIBIT 9

[emblem:]

State of Israel

Ministry of Justice
Corporations Authority
Registrar of Companies

[text cut off]

[barcode:] 17903-560

## Private Company Annual Report

(Section 141 of the Companies Law 5759-1999 (hereinafter: "the Law"))

**The data can be typed in or filled out in clear handwriting without using black ink.**

| Company name | Company number | Address of the registered office[1] |
|---|---|---|
| Q Cyber Technologies Ltd | 514971522 | 22 Galgalei Haplada, Hertsliya, Israel 4672222 |

| Telephone | | Company Email (if any) |
|---|---|---|
| **The report is updated as of (state the date of signing the report in order to submit it to the Registrar of Companies)** [hw:] *16/6/19* | | **Annual meeting was conducted on the day[2]** 7.1.2019 |

## Share Capital Distribution

| Total registered capital of the company | Share name and its set value (for shares with set value) | Share type |
|---|---|---|
| 100,000 | Ordinary, set value – 0.01 | Ordinary |
| **Number of shares in the registered capital** | **Number of allotted shares** | **Share value** |
| Ordinary – 10,000,000 | Ordinary – 100,000 | 0.01 |

## Shareholders and their shares

| Shareholder name | ID number[3] | Address (city, street, house no., zip code) |
|---|---|---|
| OSY TECHNOLOGIES S.A.R.L. | B184226 | Luxembourg |
| **Type of shares** Ordinary | **Number of shares** 100,000 | **Unpaid amount in exchange for the shares** |

## Bearer Shares for the period*

**\* Fill out if bearer shares have been issued before 17.09.2016, and the update has not been performed as stated below:**
In accordance with the Amendment no. 28 to the Companies Law 5759-1999, which came into force on 17.09.2016, bearer shares can be no longer issued. A holder of bearer shares issued on the eve of the law coming into force shall be entitled to return the banknote to the company, and the company shall cancel it and issue a share for him that is registered in the Registry of Shareholders of the Company. A bearer share that is not returned as stated shall become a frozen share, as stated in Section 308 of the Law, and it shall not grant him rights until the date stated on the share, which will be recorded in the Registry of Shareholders of the Company.

---

[1] Listing a P.O. Box as the company's address is not enough.
[2] The last date on which the annual meeting was conducted, indicate below in the appropriate place whether the company is exempt from conducting annual meetings according to Section 61 of the Law.
[3] A non-holder of the Israeli ID shall indicate his passport number and the country it was issued in, and in the first registration by it a copy of the passport shall be attached, as stated in Regulation 16 of the Companies Regulations (reporting, registration details and forms), 5760-1999. If it is a corporation, the registration number of the corporation shall be indicated, and if it is a foreign corporation, the document (original or copy), authorized in required certificates as stated in Regulation 16, shall be attached in the first report of the corporation.

[stamp:]
[logo]
Corporations Authority
confirmation that this document has been signed electronically. This is a copy of the document (original or copy) that is in the file of the Corporations Authority on the day of the signature

[diagonal stamp:] Printing of the Service ~ Corporations Authority ~ Jerusalem Region
17-06-2019
RECEIVED

| Total bearer shares for the period | No. of shares in each note | Note no. |
|---|---|---|
| | | |
| | | |

## Details of active directors

| Director name | ID number | Starting date as a director (year, month, day) |
|---|---|---|
| OSY TECHNOLOGIES S.A.R.L. | B184226 | 17/3/2014 |

| Address (city, street, house no., zip code) |
|---|
| Luxembourg |

## Details of directors who stopped their activity (since the date of the previous annual report)

| Director name | ID number | End date as a director (year, month, day) |
|---|---|---|
| Director name | ID number | End date as a director (year, month, day) |
| Director name | ID number | End date as a director (year, month, day) |
| Director name | ID number | End date as a director (year, month, day) |

**Mark the appropriate option with X:**

   No change has occurred in the details that were reported regarding the foreign directors according to Regulation 16 from the mentioned regulations.

   Change has occurred in the details that were reported regarding the foreign directors, and the documents required under Regulation 16 have been attached to the annual report.

## Authorized party to report to the registrar on behalf of the company, according to Section 39 of the Law

**Filling out the details of the authorized party to report according to Section 39 in this Form will allow the party whose details are entered here to relay updates about the company in a digital manner.**
**For more information, see:** http://www.justice.gov.il/Units/RasutHataagidim/units/RashamHachvarot/TfasimNew/Pages/Online.aspx

| Full name | ID number | Position in the company |
|---|---|---|
| Yifa Idisis | 032063521 | Financial director |

**Fulfillment of the instructions of Section 171 (C) of the Law**

   The Board of Directors has approved the financial reports __ (mark **X** if done).

**Fulfillment of the instructions of Section 173 of the Law** – (mark the appropriate option with **X**)

   The financial documents have been presented at the last annual meeting as required.

   If the company is not required to conduct annual meetings according to Section 61 (A) of the Law, indicate whether the financial reports have been sent to the shareholders according to Section 61 (A) of the Law.

   The company is not required to submit financial reports at the annual meeting, as stated in Section 172 (G) of the Law.

**Controlling accountant** (mark the appropriate option with **X**).

   The company has a controlling accountant, as stated in Section 154 of the Law.

| |
|---|
| [stamp:] |
| [logo] |
| Corporations Authority |
| A confirmation that this document has been signed electronically, it is a copy of the document (original or copy) that is in the file of the Corporations Authority on the day of the signature |

EXHIBIT 10

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html



# Pegasus – Product Description

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Contents

Introduction ............................................................................................................ 1
    Overcoming Smartphone Interception Challenge ................................................ 1
    Standard Interception Solutions Are Not Enough ................................................ 1
Cyber Intelligence for the Mobile World ............................................................... 3
    Benefits of Pegasus ........................................................................................... 3
    Technology Highlights ........................................................................................ 3
    High Level Architecture ...................................................................................... 4
Agent Installation ................................................................................................. 6
    Agent Purpose ................................................................................................... 6
    Agent Installation Vectors ................................................................................... 6
    Agent Installation Flow ....................................................................................... 7
    Supported Operating Systems & Devices ............................................................ 8
    Installation Failure ............................................................................................. 8
    Remote Installation Benefits ............................................................................... 9
Data Collection .................................................................................................... 10
    Initial Data Extraction ........................................................................................ 11
    Passive Monitoring............................................................................................. 11
    Active Collection ............................................................................................... 11
    Description of Collected Data ............................................................................. 12
    Collection Buffer ............................................................................................... 15
Data Transmission .............................................................................................. 16
    Data Transmission Security ............................................................................... 17
    Pegasus Anonymizing Transmission Network ..................................................... 17
Data Presentation & Analysis ............................................................................. 18
    Rules & Alerts ................................................................................................... 21
    Data Export ....................................................................................................... 22
Agent Maintenance ............................................................................................. 23
    Agent Upgrade .................................................................................................. 23
    Agent Settings ................................................................................................... 23
    Agent Uninstall .................................................................................................. 23
Solution Architecture .......................................................................................... 25
    Customer Site .................................................................................................... 25
    Public Networks ................................................................................................ 26
    Target Devices .................................................................................................. 27
Solution Hardware .............................................................................................. 28
    Operators Terminals .......................................................................................... 28
    System Hardware .............................................................................................. 28
System Setup and Training ................................................................................. 31
    System Prerequisites ......................................................................................... 31
    System Setup .................................................................................................... 31
    Training ............................................................................................................. 31
    High Level Deployment Plan .............................................................................. 32
    System Acceptance Test (SAT) ......................................................................... 33

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

**Maintenance, Support and Upgrades** ........................................................... **34**

    Maintenance and Support ................................................................... 34

    Upgrades ......................................................................................... 34

# List of Tables

Table 1: Collection Features Description ............................................. 12
Table 2: Presentation of Collected Data .......................................... 20
Table 3: Pegasus Deployment Plan ................................................. 32

# List of Figures

Figure 1: Pegasus High Level Architecture ....................................... 5
Figure 2: Agent Installation Flow .................................................... 7
Figure 3: Agent Installation Initiation ............................................. 8
Figure 4: Collected Data ............................................................... 10
Figure 5: Data Transmission Process .............................................. 16
Figure 6: Data Transmission Scenarios ........................................... 16
Figure 7: Calendar Monitoring ....................................................... 18
Figure 8: Call Log & Call Interception ............................................ 19
Figure 9: Location Tracking ........................................................... 19
Figure 10: Solution Architecture .................................................... 25
Figure 11: Pegasus Hardware ........................................................ 29

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Introduction

Pegasus is a world-leading cyber intelligence solution that enables law enforcement and intelligence agencies to remotely and covertly extract valuable intelligence from virtually any mobile device. This breakthrough solution was developed by veterans of elite intelligence agencies to provide governments with a way to address the new communications interception challenges in today's highly dynamic cyber battlefield. By capturing new types of information from mobile devices, Pegasus bridges a substantial technology gap to deliver the most accurate and complete intelligence for your security operations.

# Overcoming Smartphone Interception Challenge

The rapidly growing and highly dynamic mobile communications market - characterized by the introduction of new devices, operating systems and applications on virtually a daily basis – requires a rethinking of the traditional intelligence paradigm. These changes in the communications landscape pose real challenges and obstacles that must be overcome by intelligence organizations and law enforcement agencies worldwide:

- **Encryption:** Extensive use of encrypted devices and applications to convey messages

- **Abundance of communication applications:** Chaotic market of sophisticated applications, most of which are IP-based and use proprietary protocols

- **Target outside interception domain:** Targets' communications are often outside the organization's interception domain or otherwise inaccessible (e.g., targets are roaming, face-to-face meetings, use of private networks, etc.)

- **Masking:** Use of various virtual identities which are almost impossible to track and trace

- **SIM replacement:** Frequent replacement of SIM cards to avoid any kind of interception

- **Data extraction:** Most of the information is not sent over the network or shared with other parties and is only available on the end-user device

- **Complex and expensive implementation:** As communications become increasingly complex, more network interfaces are needed. Setting up these interfaces with service providers is a lengthy and expensive process, and requires regulation and standardization

# Standard Interception Solutions Are Not Enough

Until the above mentioned challenges are addressed and resolved, criminal and terrorist targets are likely "safe" from standard and legacy interception systems, meaning that valuable intelligence is being lost. These standard solutions (described in the sections below) deliver only partial intelligence, leaving the organizations with substantial intelligence gaps.

## Passive Interception

Passive interception requires very deep and tight relationships with local service providers (cellular, Internet and PSTN providers) and traditionally has allowed for proper monitoring of text messages and voice calls. However, most contemporary communications is comprised of IP-based traffic, which is extremely difficult to monitor with passive interception due to its use of encryption and proprietary protocols.

Even when this traffic is intercepted, it typically carries massive amounts of technical data that is not related to the actual content and metadata being communicated. Not only does this result in frustrated analysts and wasted time wading through irrelevant data, it also provides a partial snapshot (at best) of the target's communications. In addition, the number of interfaces required to cover the relevant service providers broadens the circle of entities exposed to sensitive information and increases the chance of leakage.

## Tactical GSM Interception

Tactical GSM interception solutions effectively monitor voice calls and text messages in GSM networks. When advanced cellular technologies are deployed (3G and LTE networks), these solutions become less efficient. In such cases, it is required to violently downgrade the target to a GSM-based network, which noticeably impacts the user experience and functionality.

These solutions also require a well-trained field tactical team located near the monitored target. Thus, in the majority of cases where the target location is unknown, these solutions become irrelevant. In other cases, placing a tactical team close to the target may pose serious risk both to the team and to the entire intelligence operation.

## Malicious Software (Malware)

Malware presumably provides access to the target's mobile device. However, it is not completely transparent and requires the target's involvement to be installed on their devices. This type of engagement usually takes the form of multiple confirmations and approvals before the malware is functional. Most targets are unlikely to be fooled into cooperating with malware due to their high level of sensitivity for privacy in their communications.

In addition, such malware is likely to be vulnerable to most commercially available anti-virus and anti-spyware software. As such, they leave traces and are fairly easily detected on the device.

# Cyber Intelligence for the Mobile World

Pegasus is a world-leading cyber intelligence solution that enables law enforcement and intelligence agencies to remotely and covertly extract valuable intelligence from virtually any mobile device. This breakthrough solution was developed by veterans of elite intelligence agencies to provide governments with a way to address the new communications interception challenges in today's highly dynamic cyber battlefield.

By capturing new types of information from mobile devices, Pegasus bridges a substantial technology gap to deliver the most accurate and complete intelligence for your security operations. This solution is able to penetrate the market's most popular smartphones based on BlackBerry, Android, iOS and Symbian operating systems.

Pegasus silently deploys invisible software ("agent") on the target device. This agent then extracts and securely transmits the collected data for analysis. Installation is performed remotely (over-the-air), does not require any action from or engagement with the target, and leaves no traces whatsoever on the device.

## Benefits of Pegasus

Organizations that deploy Pegasus are able to overcome the challenges mentioned above to achieve unmatched mobile intelligence collection:

- **Unlimited access to target's mobile devices:** Remotely and covertly collect information about your target's relationships, location, phone calls, plans and activities – whenever and wherever they are

- **Intercept calls:** Transparently monitor voice and VoIP calls in real-time

- **Bridge intelligence gaps:** Collect unique and new types of information (e.g., contacts, files, environmental wiretap, passwords, etc.) to deliver the most accurate and complete intelligence

- **Handle encrypted content and devices:** Overcome encryption, SSL, proprietary protocols and any hurdle introduced by the complex communications world

- **Application monitoring:** Monitor a multitude of applications including Skype, WhatsApp, Viber, Facebook and Blackberry Messenger (BBM)

- **Pinpoint targets:** Track targets and get accurate positioning information using GPS

- **Service provider independence:** No cooperation with local Mobile Network Operators (MNO) is needed

- **Discover virtual identities:** Constantly monitor the device without worrying about frequent switching of virtual identities and   replacement of SIM cards

- **Avoid unnecessary risks:** Eliminate the need for physical proximity to the target or device at any phase

## Technology Highlights

The Pegasus solution utilizes cutting-edge technology specially developed by veterans of intelligence and law enforcement agencies. It offers a rich set of advanced features and sophisticated intelligence collection capabilities not available in standard interception solutions:

- Penetrates Android, BlackBerry, iOS and Symbian based devices

- Extracts contacts, messages, emails, photos, files, locations, passwords, processes list and more
- Accesses password-protected devices
- Totally transparent to the target
- Leaves no trace on the device
- Minimal battery, memory and data consumption
- Self-destruct mechanism in case of exposure risk
- Retrieves any file from the device for deeper analysis

# High Level Architecture

The Pegasus system is designed in layers. Each layer has its own responsibility forming together a comprehensive cyber intelligence collection and analysis solution.

The main layers and building blocks of the systems are:

- **Installations:** The Installation layer is in charge of issuing new agent installations, upgrading and uninstalling existing agents.
- **Data Collection:** The Data Collection layer is in charge of collecting the data from the installed device. Pegasus offers comprehensive and complete intelligence by employing four collection methods:
  - **Data Extraction:** Extraction of the entire data that exists on the device upon agent installation
  - **Passive Monitoring:** Monitor new arrival data to the device
  - **Active Collection:** Activate the camera, microphone, GPS and other elements to collect real-time data
  - **Event-based Collection:** Define scenarios that automatically triggers specific data collection
- **Data Transmission:** The Data Transmission layer is in charge of transmitting the collected data back to the command and control servers, using the most efficient and safe way.
- **Presentation & Analysis:** The Presentation & Analysis component is a User Interface that is in charge of presenting the collected data to the operators and analysts, turning the data into actionable intelligence. This is done using the following modules:

  - **Real-Time Monitoring:** Presents real-time collected data from specific or multiple targets. This module is highly important when dealing with sensitive targets or during operational activities, where each piece of information that arrives is crucial for decision making.
  - **Offline Analysis:** Advanced queries mechanism that allows the analysts to query and retrieve any piece of information that was collected. The advanced mechanism provides tools to find hidden connections and information.
  - **Geo-based Analysis:** Presents the collected data on a map and conduct geo-based queries.
  - **Rules & Alerts:** Define rules that trigger alerts based on specific data that arrives or event that occurred.
- **Administration:** The administration component is in charge of managing the entire system permission, security and health:

– **Permission:** The permissions mechanism allows the system administrator to manage the different users of the system. Provide each one of them the right access level only to the data they are allowed to. This allows to define groups in the organization that handle only one or more topics and other groups which handles different topics.

– **Security:** The security module monitors the system security level, making sure the collected data is inserted to the system database clean and safe for future review.

– **Health:** The health component of the Pegasus solution monitor the status of all components making sure everything is working smoothly. It monitors the communication between the different parts, the system performance, the storage availability and alerts if something is malfunction.

The system layers and components are shown in Figure 1.

**Figure 1: Pegasus High Level Architecture**



https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Agent Installation

In order to start collecting data from your target's smartphone, a software based component ("Agent") must be remotely and covertly installed on their device.

## Agent Purpose

The "Agent", a software based component, resides on the end point devices of the monitored targets and its purpose is to collect the data it was configured to. The agent is supported on the most popular operating systems: BlackBerry, Android, iOS (iPhone) and Symbian based devices.

Each agent is independent and is configured to collect different information from the device and to transmit it via specific channels in defined timeframes. The data is sent back to the Pegasus servers in a hidden, compressed and encrypted manner.

The agent continuously collects the information from the device and will transmit it once reliable internet connection becomes available.

Communications encryption, the use of many applications and other communications concealing methods are no longer relevant when an agent is installed on the device.

## Agent Installation Vectors

Injecting and installing an agent on the device is the most sensitive and important phase of intelligence operation conducted on the target device. Each installation has to be carefully planned to ensure it is successful. The Pegasus system supports various installation methods. The installation methods variety answers the different operational scenarios which are unique to each customer, resulting in the most comprehensive and flexible solution. Following are the supported installation vectors:

### Remote Installation (range free):

- **Over-the-Air (OTA):** A push message is remotely and covertly sent to the mobile device. This message triggers the device to download and install the agent on the device. During the entire installation process no cooperation or engagement of the target is required (e.g., clicking a link, opening a message) and no indication appears on the device. The installation is totally silent and invisible and cannot be prevented by the target.   This is NSO uniqueness, which significantly differentiates the Pegasus solution from any other solution available in the market.

- **Enhanced Social Engineering Message (ESEM):** In cases where OTA installation method is inapplicable[1], the system operator can choose to send a regular text message (SMS) or an email, luring the target to open it. Single click, either planned or unintentional, on the link will result in hidden agent installation. The installation is entirely concealed and although the target clicked the link they will not be aware that software is being installed on their device.

The chances that the target will click the link are totally dependent on the level of

---

[1] e.g., some devices do not support it; some service providers block push messages; target phone number in unknown.

content credibility. The Pegasus solution provides a wide range of tools to compose a tailored and innocent message to lure the target to open the message.

NOTE: Both OTA and ESEM methods require only a phone number or an email address that is used by the target. Nothing else is needed in order to accomplish a successful installation of the Pegasus agent on the device.

## Close to the target (range limited):

- **Tactical Network Element:** The Pegasus agent can be silently injected once the number is acquired using tactical network element such as Base Transceiver Station (BTS). The Pegasus solution leverages the capabilities of such tactical tools to perform a remote injection and installation of the agent. Taking a position in the area of the target is, in most cases, sufficient to accomplish the phone number acquisition. Once the number is available, the installation is done remotely.

- **Physical:** When physical access to the device is an option, the Pegasus agent can be manually injected and installed in less than five minutes. After agent installation, data extraction and future data monitoring is done remotely, providing the same features of any other installation method.

NOTE: Tactical and Physical installations are usually used where no target phone number or email address are available.

## Agent Installation Flow

Remote agent installation flow is shown in Figure 2.

**Figure 2: Agent Installation Flow**



In order to initiate a new installation, the operator of the Pegasus system should only insert the target phone number. The rest is done automatically by the system, resulting in most cases with an agent installed on the target device.

Agent installation initiation is shown in Figure 3.

**Figure 3: Agent Installation Initiation**



# Supported Operating Systems & Devices

| Operating System (OS) | OS Version | Device | Comments |
|---|---|---|---|
| Android | 2.1 – 4.2 | ▪ Samsung Galaxy series<br>▪ Sony Ericsson Xperia series<br>▪ Others (refer to note below) | Support is based on local firmware versions, which must be defined with the customer |
| iOS | 4.x – 6.1.4 | ▪ iPhone 4<br>▪ iPhone 4S<br>▪ iPhone 5 | |
| BlackBerry | 5.0 – 7.1 | ▪ Curve (8520, 9300, 9350, 9360)<br>▪ Bold (9000, 9700, 9780, 9790, 9900, 9930)<br>▪ Torch (9800, 9810, 9850, 9860)<br>▪ Pearl (9100) | |
| Symbian | Version S60 OS9 3rd edition FP1, FP2, 5th edition and Symbian^3 | Variety of devices | Support is based on local firmware versions, which must be defined with the customer |

NOTE: Android-based devices are often added to the supported list. An updated list can be sent upon customer request.

# Installation Failure

The installation can sometimes fail due to following reasons:

1. Unsupported device: the target device is not supported by the system (which appears above).

2. Unsupported OS: the operating system of the target device is not supported by the system.

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

3. Unsupported browser: the default browser of the device was previously replaced by the target. Installation from browsers other than the device default (and also Chrome for Android based devices) is not supported by the system.

In any of the above mentioned cases, if the operator initiates a remote installation to a non-supported device, operating system or browser, the injection will fail and the installation will be aborted. In these cases the process is finished with an open browser on the target device pointing and showing the URL page which was defined by the operator prior the installation.

The device, OS and browser are identified by the system using their HTTP user agent. If by any reason the user agent was manipulated by the target, the system might fail to correctly identify the device and OS and provide the wrong installation payload. In such case, the injection will fail and the installation will be aborted, showing again the above mentioned URL page.

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Data Collection

Upon successful agent installation, a wide range of data is monitored and collected from the device:

- **Textual:** Textual information includes text messages (SMS), Emails, calendar records, call history, instant messaging, contacts list, browsing history and more. Textual information is usually structured and small in size, therefore easier to transmit and analyze.

- **Audio:** Audio information includes intercepted calls, environmental sounds (microphone recording) and other audio recorded files.

- **Visual:** Visual information includes camera snapshots, photos retrieval and screen capture.

- **Files:** Each mobile device contains hundreds of files, some bear invaluable intelligence, such as databases, documents, videos and more.

- **Location:** On-going monitoring of the device location (Cell-ID and GPS).

The variety of data that is collected by the Pegasus system is shown in Figure 4.

Figure 4: Collected Data



The data collection is divided into three levels:

- Initial data extraction
- Passive monitoring
- Active collection

# Initial Data Extraction

Once the agent is successfully injected and installed on the device, the following data that resides and exists on the device can be extracted and sent to the command and control center:

- SMS records
- Contacts details
- Call history (call log)
- Calendar records
- Emails
- Instant Messaging
- Browsing history

As opposed to other intelligence collection solutions which provide only future monitoring of partial communications, Pegasus allows the extraction of all existing data on the device. As a result the organization benefits from accessing historical data about the target, which assists in building a comprehensive and accurate intelligence picture.

NOTE: Initial data extraction is an option and not a must. If the organization is not allowed to access historical data of the target, such option can be disabled and only new arrival data will be monitored by the agent.

# Passive Monitoring

From the point the agent was successfully installed it keeps monitoring the device and retrieves any new record that becomes available in real-time (or at specific condition if configured differently). Below is the full list of data that is monitored by the agent:

- SMS records
- Contacts details
- Call history (call log)
- Calendar records
- Emails
- Instant Messaging
- Browsing history
- Location tracking (Cell-ID based)

# Active Collection

In addition to passive monitoring, upon successful agent installation a wide set of active collection features becomes available. Active collection refers to active requests sent by the operator to collect specific information from the installed device. These set of features are called active, as they carry their collection upon explicit request of the operator. Active collection allows the operator to perform real-time actions on the target device, retrieving unique information from the device and from the surrounding area of the target, including:

- Location tracking (GPS based)

- Voice calls interception
- File retrieval
- Environmental sound recording (microphone recording)
- Photo taking
- Screen capturing

Active collection differentiates Pegasus from any other intelligence collection solution, as the operator controls the information that is collected. Instead of just waiting for information to arrive, hoping this is the information you were looking for, the operator actively retrieves important information from the device, getting the exact information he was looking for.

# Description of Collected Data

The different types of data available for extraction, passive monitoring and active collection with their respective features are listed in Table 1.

Table 1: Collection Features Description

| Application Type | Features Description | Data Extraction | Passive / Active Collection |
|---|---|---|---|
| Instant Messaging (IM): <br> 1. WhatsApp <br> 2. Viber <br> 3. Skype <br> 4. BlackBerry Messenger (BBM) | Agent extracts and monitors all the incoming and outgoing instant messages to/from the device. <br> Full 1-on-1 conversation extraction and monitoring including group chat. <br> Indication for file transfer (file name). | ✔ | ✔ |
| Location Tracking | The system provide two types of location information about the device: <br> GPS: <br> 1. Upon user request, a defined timeframe for sampling location is opened. GPS data is retrieved when applicable (available reception). In case GPS signal is not accessible, Cell-ID is retrieved. <br> 2. If GPS is disabled by the target, the system enable it for sampling and immediately turn it off <br><br> Cell-ID: <br> Devices constantly transmit their location (Cell-ID) every time they communicate with the server. <br> The retrieved location data is analyzed at the server and placed on map. Location-based queries and alerts are easily set. | ✔ | ✔ |
| Calendar | Agent extracts all the calendar records from the device and monitors any change or new event added to the calendar. | ✔ | ✔ |
| Contact details | Agent extracts all contacts available on the device. From this point the agent monitors any change/deletion of existing contacts and the addition of new contact. | ✔ | ✔ |

| Application Type | Features Description | Data Extraction | Passive / Active Collection |
|---|---|---|---|
| | The agent extracts and monitors all values assigned in each contact field that is available (based on vCard fields), including photo if assigned. | | |
| Environmental sound recording (microphone recording) | The user can request to turn on the device microphone and listen in real-time to the surrounding sounds. The surrounding sounds are recorded and can be analyzed and replayed at a later stage.<br><br>Turning on the microphone is based on an incoming silent call to the device from the server (PBX). Such call is allowed only after the agent assured that the device is in idle mode (device is not in active use and the screen is turned off).<br><br>Any action by the target that turns on the screen will result in immediate call hang-up and cease of capturing surrounding sounds.<br><br>No indication of the recording or the incoming silent call appears on the device at any point.<br><br>The quality of the recording depends on the device's microphone sensitivity, the surrounding noise and the device model. This sensitivity varies between the different mobile phone models and is set by the phone manufacturer.<br><br>Usually the content of a conversation held a few meters next to the device can be heard. | N/A[2] | ✔ |
| SMS | Agent extracts and monitors all the incoming and outgoing text messages (SMS). | ✔ | ✔ |
| Call Interception (call recording) – Android only | The user can request to record incoming and outgoing calls of the target device.<br><br>The calls are recorded locally on the device and then sent to the system servers upon completion. | N/A | ✔ |
| Email:<br>1. Main email application in all platforms<br>2. Gmail application in Android | Agent extracts and monitors all the emails that reside on the device.<br><br>The main email application (stock) on the device is monitored, thus all accounts which are defined there are monitored (e.g., exchange, Gmail, etc.).<br><br>For Android-based devices both the main email stock application and the Gmail application are monitored. | ✔ | ✔ |
| File retrieval | Upon user request a full list of files and folders is extracted from the device (internal storage and SD card). When the operator spots a file of interest he can immediately request to retrieve it. | N/A | ✔ |
| Photo taking | Upon user request snapshots using the front and rear camera are taken from the device and sent to the servers. The snapshots are taken only after the agent assured that the | N/A | ✔ |

[2] For active collection features, initial data is not extracted before a request is initiated by the user.

| Application Type | Features Description | Data Extraction | Passive / Active Collection |
|---|---|---|---|
| | device is in idle mode. During photo taking no indication appears on the device and flash is never used. The quality of the photo can be chosen by the operator to reduce data usage and faster photo transmission. Since flash is not used and the phone might be in motion or inside rooms with low light, the photos are sometimes out of focus. | | |
| Screen capturing | Upon user request a screen capture is taken and sent to the Pegasus servers. The device screenshots can provide insights on the applications used by the target, wallpaper image used and more intimate information about the target. | N/A | ✔ |
| Browsing history | Agent extracts and monitors the history of browsed websites from the default browser of the device. | ✔ | ✔ |
| Browsing favorites | Agent extracts and monitors the favorites websites saved in the default browser of the device. | ✔ | ✔ |
| Call history (call log) | Agent extracts the history of all incoming/outgoing calls made to/from the device. The data includes the caller and callee numbers and the duration of the call. Calling attempts which did not result with a conversation will show duration of 0 (zero) seconds. | ✔ | ✔ |
| Device information | Upon agent installation all device, network and connection details are extracted to monitor the general information of the device, including battery level. This provides a summarized view to help understand at-a-glance the device status. | ✔ | ✔ |

The above mentioned data is the potential data that could be collected by an agent. The agent will collect the data that is applicable and available on the device. If one or more of the above mentioned applications does not exist and/or removed from the device, the agent will operate in the same manner. It will collect the data from the rest of the services and applications which are in use in the device. Also, all the collected data from the removed application will still be saved on the servers or at the agent, if it was not yet transmitted back to the servers.

In addition, the above mentioned data that is collected by the agent covers the most popular applications used worldwide. Since applications popularity differs from country to country, we understands that data extraction and monitoring of other applications will be required as time evolves and new applications are adopted by targets. When such requirement is raised, we can fairly easily extract the important data from virtually any application upon customer demand and release it as a new release that will become available to the customer.

## Collection Buffer

The installed agent monitors the data from the device and transmits it to the servers. If transmission is not possible[3] the agent will collect the new available information and transmits it when connection will become available. The collected data is stored in a hidden and encrypted buffer. This buffer is set to reach no more than 5% of the free space available on the device. For example – if the monitored device has 1GB of free space, the buffer can store up to 50MB. In case the buffer has reached its limit, the oldest data is deleted and new data is stored (FIFO). Once the data has been transmitted, the buffer content is totally deleted.

.

---

[3] No data channels are available; Device is roaming; Device is shut down.

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Data Transmission

By default, the collected data (initial data extraction, passive monitoring and active collection) is sent back to the command and control center in real-time. The data is sent via data channels, where Wi-Fi is the preferred connection to use when it is available. In other cases data is transmitted via cellular data channels (GPRS, 3G and LTE). Extra thought was put into compression methods and focusing on textual content transmission whenever possible. The data footprints are very small and usually take only few hundred bytes. This is to make sure that the collected data is easily transmitted, ensuring minimal impact on the device and on the target cellular data plan.

If data channels are not available, the agent will collect the information from the device and store it in a dedicated buffer, as explained in Data Collection section.

Data transmission is automatically ceased in the following scenarios:

- **Low battery:** When the device battery level is below the defined threshold (5%) all data transmission processes are immediately ceased until the device is recharged.

- **Roaming device:** When the device is roaming, cellular data channels become pricy, thus data transmission is done only via Wi-Fi. If Wi-Fi does not exist, transmission will be ceased.

When no data channels are available, and no indication for communication is coming back from the device, the user can request the device will communicate and/or send some crucial data using text messages (SMS).

---

CAUTION: Communication and/or data transmission via SMS may incur costs by the target and appear in his billing report thus should be used sparingly.

---

The communication between the agent and the central servers is indirect (through anonymizing network), so trace back to the origin is non-feasible.

The Pegasus system data transmission process is shown in Figure 5.

**Figure 5: Data Transmission Process**



The channels and scenarios for transmitting the collected data are shown in Figure 6.

**Figure 6: Data Transmission Scenarios**



https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

## Data Transmission Security

All connections between the agents and the servers are encrypted with strong algorithms and are mutually authenticated. While data encryption is probably the most urging issue, extra care was given to ensure minimal data, battery and memory are consumed within the agents requirements. This is meant to make sure that no concerns are raised by the target.

Detecting an operating agent by the target is almost impossible. The Pegasus agent is installed at the kernel level of the device, well concealed and is untraceable by antivirus and antispy software.

The transmitted data is encrypted with symmetric encryption AES 128-bit.

## Pegasus Anonymizing Transmission Network

Agent transparency and source security are the guiding principles of the Pegasus solution. To assure that trace back to the operating organization is impossible, the Pegasus Anonymizing Transmission Network (PATN), a network of anonymizers is deployed to serve each customer. The PATN nodes are spread in different locations around the world, allowing agent connections to be redirected through different paths prior to reaching the Pegasus servers. This ensures that the identities of both communicating parties are highly obscured.

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Data Presentation & Analysis

Successful data collection from hundreds of targets and devices generates massive amounts of data for visualization, presentation and analysis. The system provides a set of operational tools to help the organization to transform data into actionable intelligence. This is to view, sort, filter, query and analyze the collected data. The tools include:

- **Geographical analysis:** Track target's real-time and historical location, view several targets on map

- **Rules and alerts:** Define rules to generate alerts upon important data arrival

- **Favorites:** Mark important and favorite events for subsequent review and deeper analysis

- **Intelligence dashboard:** View highlights and statistics of target's activities

- **Entity management:** Manage targets by groups of interest (e.g., drugs, terror, serious crime, location, etc.)

- **Timeline analysis:** Review and analyze collected data from a particular time frame

- **Advanced search:** Conduct search for terms, names, code words and numbers to retrieve specific information

The collected data is organized by groups of interest (e.g., drugs group A, terror group B, etc.) and each group consists of targets. Each target consists of several devices which some have installed agents on them.

The collected data is displayed in an easy-to-use intuitive user interface and when applicable emulates popular display of common applications. The intuitive user interface is designed for a day-to-day work. Operators can easily customize the system to fit their preferred working methods, define rules and alerts for specific topics of interest.

The operator can choose to view the entire collected data from specific target or only specific type of information such as location information, calendar record, emails or instant messages.

Pegasus calendar monitoring screen is shown in Figure 7.

**Figure 7: Calendar Monitoring**



Pegasus call log and call interception screen is shown in Figure 8.

**Figure 8: Call Log & Call Interception**



Pegasus location tracking screen is shown in Figure 9.

**Figure 9: Location Tracking**



The presentation fields of the collected data are listed in Table 2.

**Table 2: Presentation of Collected Data**

| Service / Application Type | Extracted data | Display method |
|---|---|---|
| Instant Messaging (IM):<br>1. WhatsApp<br>2. Viber<br>3. Skype<br>4. BlackBerry Messenger (BBM) | ▪ Chat participants (Names & phones)<br>▪ Conversation content<br>▪ Date & Time<br>▪ Attachments metadata (without the attachment) | ▪ Grid<br>▪ Conversation mode |
| Location Tracking | ▪ Data source (GPS/Cell-ID)<br>▪ Latitude<br>▪ Longitude<br>▪ Date & Time | ▪ Grid<br>▪ Map:<br>  - On map display<br>  - Full trail<br>  - Type of location data (GPS or Cell-ID based) |
| Calendar | ▪ Meeting subject<br>▪ Event date and start time | ▪ Grid<br>▪ Monthly calendar view (emulates popular calendar clients) |
| Contact details | ▪ Entire values stored in the contact entry including photo if available | ▪ Grid<br>▪ Contact card with the entire details |
| Environmental sound recording (microphone recording) | ▪ Recorded audio<br>▪ Recording Date & Time<br>▪ Duration | ▪ Grid<br>▪ Playback interface |
| SMS | ▪ Direction (incoming, outgoing)<br>▪ Contact name<br>▪ Phone number<br>▪ Message content<br>▪ Date & Time | ▪ Grid |
| Call Interception | ▪ Direction<br>▪ Contact name<br>▪ Phone number<br>▪ Duration<br>▪ Date & Time | ▪ Grid<br>▪ Playback interface |
| Email:<br>1. Main email application in all platforms<br>2. Gmail application in Android | ▪ From<br>▪ To<br>▪ CC<br>▪ BCC<br>▪ Subject<br>▪ Folder<br>▪ Account<br>▪ Message content<br>▪ Date & Time | ▪ Grid<br>▪ HTML (emulates popular email clients) |
| File retrieval | ▪ List of folders (tree)<br>▪ List of files (grid):<br>▪ Filename | ▪ Grid<br>▪ Tree view |

| Service / Application Type | Extracted data | Display method |
|---|---|---|
| | ■ Modified date<br>■ File size | |
| Photo taking | ■ Date & Time<br>■ Photo | ■ Grid<br>■ Photo viewer |
| Screen capturing | ■ Date & Time<br>■ Screen capture image | ■ Grid<br>■ Photo viewer |
| Browsing history | ■ Website name (as saved by the target, usually the default website name)<br>■ Website URL address | ■ List |
| Browsing favorites | ■ Website name (as saved by the target, usually the default website name)<br>■ Website URL address | ■ List |
| Call history (call log) | ■ Direction<br>■ Contact name<br>■ Phone number<br>■ Duration<br>■ Date & Time | ■ Grid |
| Device information | ■ Battery level<br>■ Connection type (e.g., 3G, WiFi)<br>■ MSISDN<br>■ IMEI<br>■ IMSI<br>■ Device Manufacturer<br>■ Device model<br>■ Operating System version<br>■ Installation date<br>■ Last communication time<br>■ Device current country<br>■ Device home country<br>■ Serving network<br>■ Home serving network | ■ Dashboard |

# Rules & Alerts

The Rules & Alerts module in the system alerts when important event takes place. Rules must be defined in advance and they help the operators to review and take actions in real-time, for example:

■ **Geo-fencing:**
  ○ Access hot zone - Alert when target reached an important location
  ○ Leave hot zone - Alert when target left a certain location
  Geo-fence alerts are based on a perimeter around a certain location, where the operator defines the size of the perimeter.

■ **Meeting detection:** Alert when two targets meet (share the same location)

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

- Connection detection:
  - ○ Alert when a message is sent from/to a specific number
  - ○ Alert when a phone call is performed from/to a specific number
- Content detection: Alert when a defined word/term/code word is used in a message

## Data Export

The system is designed as an end-to-end system, providing its users with collection and analysis tools. However, we understands that there are advanced analysis capabilities and data fusion requirements from other sources, therefore the system allows the exporting of the collected information and seamless integration with $3_{rd}$ party backend or analysis systems available.

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Agent Maintenance

Once agent is installed on a certain device, it has to be maintained in order to support new features and change its settings and configurations or to be uninstalled when it is no longer providing valuable intelligence to the organization.

## Agent Upgrade

When agents' updates are released they become available to install. These new agents are now ready for installation on new targets' devices or as upgrades for existing agents installed on target's devices. These updates provide new functionalities, bug fixing, support for new services or improve the agents overall behavior. Such updates are crucial to keep the agent functional and operational in the endless progress of the communication world and especially the smartphone arena.

There are two types of agent upgrades:

- **Optional upgrade:** agent upgrade is not mandatory by the system. The user decides when, if at all, to upgrade the agent.
- **Mandatory upgrade:** agent upgrade is mandatory by the system. The supervisor must upgrade the agent otherwise no new information will be monitored from the device.

Upgrade sometimes requires an installation of a new agent and sometimes just a small update of the existing agent. In both cases the user is the only one to decide when to conduct the upgrade, and therefore should plan this accordingly.

Once the command for upgrade was sent by the user, the process should take only few minutes. The process might take longer if the device is turned off or has bad data connection. In either case, the upgrade will be accomplished once a decent data connection becomes available.

## Agent Settings

Agent settings are set for the first time during its installation. From this point, these settings serve the agent, but can always be changed if required. The settings include the IP address for transmitting the collected data, the way commands are sent to the agent, the time until the agent is automatically uninstall itself (see self-destruct mechanism for more details) and more.

## Agent Uninstall

When the intelligence operation is done or in case where the target is no longer with interest to the organization, the software based component ("Agent") on the target's device can be removed and uninstalled. Uninstall is quick, requires a single user request and has no to minimal effect on the target device. The user issues a request for agent uninstall which is sent to the device.

Once agent is uninstalled from a certain device it leaves no traces whatsoever or indications it was ever existed there[4]. As long as the agent is operational on the device and a connection exists between him and the servers it can be easily and remotely uninstalled.

Uninstall can always be done remotely no matter what was the method used for installation. Physical uninstall is also an option, if needed.

Uninstalling an agent does not mean losing the entire collected data – the entire data that was collected during the time that the agent was installed on the device will be kept in the servers for future analysis.

## Self-Destruct Mechanism

The Pegasus system contains self-destruct mechanism for the installed agents. In general, we understand that it is more important that the source will not be exposed and the target will suspect nothing than keeping the agent alive and working. The mechanism is activated in the following scenarios:

- **Risk of exposure:** In cases where a great probability of exposing the agent exists, a self-destruct mechanism is automatically being activated and the agent is uninstalled. Agent can be once again installed at a later time.
- **Agent is not responding:** In cases where the agent is not responding and did not communicate with the servers for a long time[5], the agent will automatically uninstall itself to prevent being exposed or misused.

---

4 In some cases, uninstall can result in device reboot. If reboot takes place, it happens once agent removal is done. The device comes up clean with no agent installed.
5 The default time is 60 days, but can be reconfigured for any period of time required

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Solution Architecture

The Pegasus system's major architectural components are shown in Figure 10.

**Figure 10: Solution Architecture**



# Customer Site

NSO is responsible to deploy and configure the Pegasus hardware and software at the customer premises, making sure the system is working and functioning properly. Below are the main components installed at the customer site:

## WEB Servers

Residing at the customer's premises, the servers are responsible for the following:

- Agent installation and monitoring
- Agent maintenance: Remotely control, configure and upgrade installed agents
- Data transmission: Receive the collected data transmitted from the installed agents
- Serve the operators' terminals

## Communications Module

The communications module allows interconnectivity and internet connection to the servers.

## Cellular Communication Module

The cellular communication module enables remote installation of the Pegasus agent to the target device using cellular modems and/or SMS gateways.

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

## Permission Module

The Pegasus permission management module defines and controls the features and available content allowed for each user based on their role, rank and hierarchy.

## Data Storage

The collected data that was extracted and monitored by the agents is stored on an external storage device. The data is well backed-up and with full resiliency and redundancy to prevent failures and downtime.

## Servers Security

All the servers reside inside the customer's trusted network, behind any security measures it may deploy as well as security measures that we supply specifically for the system.

## Hardware

The system standard hardware is deployed on several servers connected together on couple of racks. The equipment takes care of advanced load balancing, content compression, connection management, encryption, advanced routing, and highly configurable server health monitoring.

## Operator Consoles

The operator's end-point terminals (PC) are the main tool which the operators activate the Pegasus system, initiate installations and commands, and view the collected data.

## Pegasus Application

The Pegasus application is the user interface that is installed on the operator terminal. It provides the operators with range of tools to view, sort, filter, manage and alert to analyze the large amount of data collected from the targets' agents.

# Public Networks

Apart from local hardware and software installation at the customer premises, the Pegasus system does not require any physical interface with the local mobile network operators. However, since agent installations and data are transferred over the public networks, we makes sure it is transferred in the most efficient and secured way, all the way back to the customer servers:

## Anonymizing Network

Pegasus Anonymizing Transmission Network (PATN) is built from anonymizing connectivity nodes which are spread in different locations around the world, allowing agent connections to be directed through different paths prior to reaching the Pegasus servers. The anonymized nodes serve only one customer and can be set up by the customer if required.

See more information in Pegasus Anonymizing Transmission Network section.

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Target Devices

The above mentioned architecture allows the operators to issue new installations, extract, monitor and actively collect data from targets' devices. See more details in Supported Operating Systems & Devices.

---

NOTE: The Pegasus is an intelligence mission-critical system, therefore it is fully redundant to avoid malfunctions and failures. The system handles large amounts of data and traffic 24 hours a day and is scalable to support customer growth and future requirements.

---

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Solution Hardware

The hardware specifications for operating the Pegasus system depends on the number of concurrent installed agents, the number of working stations, the amount of data stored and for how long should it be stored.

All the necessary hardware is supplied with the system upon deployment and may require local customization that has to be handled by the customer based on we directions. If required, hardware can be purchased by the customer based on the specifications provided by we.

## Operators Terminals

The operator terminals are standard desktop PCs, with the following specifications:

- **Processor:** Core i5
- **Memory:** 3GB RAM
- **Hard Drive:** 320GB
- **Operating System:** Windows 7

## System Hardware

To fully support the system infrastructure, the following hardware is required:

- Two units of 42U cabinet
- Networking hardware
- 10TB of storage
- 5 standard servers
- UPS
- Cellular modems and SIM cards

The system hardware scheme is shown in Figure 11.

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

**Figure 11: Pegasus Hardware**



https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html



42 U

12 U    Storage Array FS

12 U    Storage Array FS

12 U    Storage Array FS

7 U    UPS

# System Setup and Training

We are responsible for the system setup and training before its hand-over to the customer.

## System Prerequisites

Successful installation of the Pegasus system requires the following preparations of the servers' room:

- Sufficient room to contain two 42U racks cabinet, 5x5x2.5m (LxWxH)
- Air conditioned (18°C) room
- Access restriction
- Routing from end-point terminals to servers room
- Reliable cellular network reception (at least -95 dBm)
- 2 x Electrical outlets (20A) per rack
- 2 x Symmetric ATM lines from different ISP's. Each line with a bandwidth of 10MB containing 8 external static IP addresses:
  - ISP #1: Fiber optic-based network
  - ISP #2: Ethernet category-7 cable-based network

  The mission-critical system requires two parallel networks to ensure system resilience and downtime is kept to an absolute minimum.

- 2 x E1 PRI connections, each contains 10 extensions (two different service providers is recommended)
- 2 x anonymous SIM cards for each local Mobile Network Operator
- 3rd party services registration as required

## System Setup

- The solution will be deployed at the customer site by we personnel
- Deployment duration usually requires 10-15 working weeks
- Operating environment prerequisites must be met
- System setup includes hardware and software installation, and in addition integration to local environment and systems
- Support and adaptations to the different local device firmware versions

## Training

Upon system installation, we personnel will conduct full training sessions. Training can take place onsite or in any other location required by the customer, including we headquarters. Training session includes the following:

- Basic system usage
- System architecture
- Advanced system usage and roles

- Real-world simulation exercises

The recommended number of attendees is with respect to the number of installed operator consoles.

# High Level Deployment Plan

The process of adapting, installing and testing the system in a new customer site in listed in Table 3.

Table 3: Pegasus Deployment Plan



# Phase 1 – Preparations:

- Requirements for an Acceptance Test Procedure (ATP) are defined together with the customer
- Hardware and software acquisition and customization to answer customer requirements and needs
- When required, the Pegasus system is integrated with local infrastructures and systems
- System adaptations to the local mobile networks

# Phase 2 – Implementation:

- System testing
- Hardware installation
- System adaptations to local device firmware versions

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

## Phase 3 – Training and Completion:

- Detailed system training, real-life scenarios practicing and simulation
- Customer ATP as defined during phase 1

# System Acceptance Test (SAT)

We have gained substantial experience in installing and implementing the Pegasus system. The following acceptance test plan verifies that the system works as required and validates that the correct functionality has been delivered. It describes the scope of the work to be performed and the approach taken to execute the proper tests to validate that the system functions as mutually agreed with the customer.

The tests are divided into 3 stages:

- Functionality tests
- Network and providers tests
- Customer tailor specific tests

An official system hand-over from we to the customer is done once the system has been deployed, tested and demonstrated.

https://www.documentcloud.org/documents/4599753-NSO-Pegasus.html

# Maintenance, Support and Upgrades

We provides, as default, one year of maintenance, support and upgrades services. These services include:

## Maintenance and Support

We provides maintenance services and three-tier level support that includes:

- **Tier-1:** Standard system operations problems
  - Email and phone support
- **Tier-2:** Proactive resolving of technical problems
  - Dedicated engineers will inspect, examine and resolve common technical issues, putting their best efforts
  - Remote assistance using remote desktop software and a Virtual Private Network (VPN) where requested
- **Tier-3:** Bug fixing and system updates of substantial system malfunctions
- **Phone support:** In addition to the above mentioned, we provide phone and email support to any question and problem that is raised.

In addition, the customer will be able to add the following support:

- Planned or emergency onsite assistance
- Health monitoring system

## Upgrades

We have releases major upgrades to the Pegasus system few times a year. Such upgrades usually include:

- New features
- New devices/operating system support
- Tailored features based on customer requirements
- Bugs fix

EXHIBIT 11

dtd 16-01-18

129

79

CONTRACT

IDL × NCA

ExHS

21-2-19

SCANNED

CERTIFIED TRUE COPY
.................. 4/7/19
...........REGISTRAR
HIGH COURT
CRIMINAL COURT
LAW COURT COMPLEX

## AGREEMENT

This Agreement (the "**Agreement**") is entered into on December 17ᵗʰ, 2015 (the "**Effective Date**") between Infraloks Development Limited, a company incorporated under the laws of the Republic of Ghana (company registration number CA-66,115), having its registered offices at HSE number 1 plot 50, 7ᵗʰ Avenue Extension, North Ridge ACCRA, P.O. Box 30712 KIA, ACCRA (the "**Company**") and the National Communication Authority of the Republic of Ghana (the "**End-User**").

**Whereas,** the Company is engaged in the business of reselling and supplying cyber intelligence solutions developed, integrated and supplied by the NSO Group Technologies Ltd. (company registration number 514395409), an Israeli Company, having its registered offices at 9 Hamada St., Herzliya, Israel (the "**System Provider**") which has developed the System (as defined below); and

**Whereas,** the End-User is interested to purchase from the Company a License (as defined below) to use the System (as defined below), and obtain services related to it, solely for the use of the End-User as further set forth herein, and the Company has agreed to provide a License to use the System and related services to the End-User; and

**Whereas,** the parties wish to set forth the terms under which such sale and purchase shall be made.

Now, therefore, in consideration of the foregoing premises and the mutual covenants herein contained, and for other good and valuable consideration, the parties agree as follows:

1.    Definitions and Exhibits.

    1.1.   In this Agreement, unless the context otherwise requires, terms defined in the preamble and the recitals shall have the same meaning when used elsewhere in this Agreement and the following terms shall have the meanings ascribed thereto below:

        "**Agreement**" has the meaning ascribed to it in the preamble.

        "**Approval**" has the meaning ascribed to it in Section 5.1.

        "**Business Day**" means a day (other than a Friday, Saturday or Sunday) on which banks are generally open in Israel and in the Republic of Ghana for normal business.

        "**Certificate**" has the meaning ascribed to it in Section 5.1.

        "**Commissioning Notice**" has the meaning ascribed to it in Exhibit B.

        "**Company**" has the meaning ascribed to it in the preamble.

        "**Confidential Information**" means any information provided by the Company to the and/or the End-User.

        "**Deployment**" has the meaning ascribed to it in Exhibit A.

        "**Effective Date**" has the meaning ascribed to it in the preamble.

        "**End-User**" has the meaning ascribed to it in the preamble.

        "**First Installment**" has the meaning ascribed to it in Exhibit B.

        "**Force Majeure**" has the meaning ascribed to it in Section 14.

        "**Hardware Equipment**" has the meaning ascribed to it in Exhibit A.

        "**IMOD**" means the Israeli Ministry of Defense.

        "**License**" has the meaning ascribed to it in Section 2.1.

        "**Reseller**" N/A.

        "**Reseller Representative**" N/A.

        "**Reseller Appointment Letter**" N/A.



*81*

"**Reseller Appointment Letter**" N/A.

"**End-User Responsibilities**" has the meaning ascribed to it in Section 4.

"**Services**" has the meaning ascribed to it in Exhibit A.

"**SLA**" has the meaning ascribed to in Section 6.2

"**Support Period**" has the meaning ascribed to it in Section 6.1.

"**Support Period Consideration**" has the meaning ascribed to it in Exhibit B.

"**Support Services**" has the meaning ascribed to it in Section 6.

"**System**" has the meaning ascribed to it in Exhibit A.

"**System Consideration**" has the meaning ascribed to it in Exhibit B.

"**System Provider**" has the meaning ascribed to it at the preamble.

"**Training**" has the meaning ascribed to it in Exhibit A.

"**Warranty**" has the meaning ascribed to it in Exhibit A.

"**Warranty Period**" has the meaning ascribed to it in Exhibit A.

1.2. The following are the exhibits in this Agreement:

Exhibit A – Description of System and Services

Exhibit A-1 – Features and Capabilities

Exhibit A-2 – List of Hardware Equipment and Software

Exhibit B – Consideration

Exhibit C – Installation Requirements

Exhibit D – Service Level Agreement

2. Provision of License and Services.

2.1. Subject to the terms of this Agreement and the payment of the System Consideration in full, the System Provider shall provide the End-User a limited, exclusive, non-transferable, non-pledgeable and non-assignable license to use the System solely for the End-User's internal use, and for the purpose that it is intended for (the "**License**").

2.2. Subject to provisions of Sections 2.3 and 5.2 below, within one-hundred (100) Business Days following the occurrence of the later of (i) receipt by the System Provider of the Approval, (ii) the completion of the Due-Diligence Process, and (iii) the receipt by the Company of the First Installment, in full, the System Provider shall complete the Deployment and shall conduct the Training.

2.3. The provision of the System, the License and the Services by the System Provider in accordance with the time schedule set forth in Section 2.2 above and the performance by the Company of all its obligations under this Agreement is conditioned upon (i) the fulfillment by the End-User of all of the End-User Responsibilities when due, and (ii) the actual receipt by the Company of each payment of the System Consideration when due, in full.

It is hereby clarified that the Company shall not be held responsible or liable for any delay in the provision of the System, the License and/or the Services, if such delay was due to any miss-performance or delay in the fulfillment of any of the End-User Responsibilities and/or payment obligations and/or due to a delay in the performance or achievement of the pre-requisite conditions set forth in Section 5 below. In the event of a delay in the performance of any of the End-User Responsibilities and/or payment obligations and/or the performance or achievement of the pre-requisite conditions set



JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA

Case 3:19-cv-07123-JSC Document 286-1 Filed 02/29/24 Page 329 of 397

forth in Section 5 below, the Company's obligations shall be postponed by such number of days equal to number of days by which the time schedule was delayed due to acts or omissions caused by the End-User.

2.4. If any sum payable pursuant to this Agreement shall not have been paid to the Company by its due date, then, without prejudice to any other right or remedy available to the Company in accordance with the terms of this Agreement or by law, the End-User shall pay interest thereon at a daily rate of 0.04%, accumulated on a daily basis, in respect of the period starting on the due date of the delayed payment and ending on the date of the actual payment. In addition, the Company reserves the right to suspend contractual performance or the use of the System or the Services until the End-User has made payment of the overdue amount together with interest that has accrued thereupon, in full.

2.5. So long as the System Consideration is not received by the Company, in full, and so long as the Company has not provided the Commissioning Notice, the End-User shall not be entitled to use the System and no license to use the System shall be deemed granted.

3. Consideration; Payment Terms.

3.1. In consideration for the provision of the License, the System and the Services, the End-User shall pay the Company the System Consideration as set forth in Exhibit B.

3.2. The System Consideration shall be paid by the End-User to the Company in installments as set forth in Exhibit B.

3.3. The System Consideration, the Support Period Consideration and any other payments made to the Company under this Agreement are exclusive of all state, provincial, municipal or other government, excise, use, sales, VAT or like taxes, tariffs, duties or surcharges, now in force or as may be enacted in the future, which shall be borne by the Company, provided, however that the Company shall bear all income taxes imposed on the Company in connection with this Agreement. Each payment under this Agreement shall be paid by the End-User against an invoice to be issued by the Company.

3.4. Any and all amounts paid to the Company under this Agreement are non-refundable, and may not be claimed or reclaimed by the End-User.

4. The End-User's Responsibilities. The End-User undertakes to perform all of the following obligations in a timely manner (the "**End-User Responsibilities**"):

4.1. fulfillment of all of the technical and installation requirements listed in Exhibit C at the End-User's site, prior to the delivery of the Hardware Equipment;

4.2. obtainment and maintenance of all permits and approvals required to be obtained from any regulatory and governmental authority relating to the End-User, under any and all applicable legal requirements for the performance of this Agreement;

4.3. delivery of the Certificate to the Company;

4.4. provision of any and all applicable information and documents required by the System Provider for the performance of the Due-Diligence Process, on a timely manner; and

4.5. provision of any and all additional required conditions to enable the performance of the Company's obligations under this Agreement when due, including without limitation, release of the Hardware Equipment from custom (if required) and assuring availability of the End-User's personnel for participation in the Training.

5. Pre-Conditions.

5.1. The provision of the License, the System and the Services and the performance by the Company of its obligations under this Agreement are subject to (i) the receipt by the System Provider of the original certificate indicating the identity of the End-User, in accordance with the requirements of the IMOD (the "**Certificate**"), (ii) the receipt by the System Provider of the approval of the IMOD for the provision of the License, System



and the Services as set forth herein (the "**Approval**"), (iii) the completion of a due-diligence process to the Company by the System Provider (the "**Due-Diligence Process**").

5.2. For the avoidance of any doubt, no products, licenses, equipment or services shall be provided by the Company under this Agreement until the Certificate is delivered to the System Provider and the Approval is obtained. In the event that the Certificate is not received by the System Provider and/or the Approval is not obtained within six (6) months as of the date hereof, or in the event that the System Provider receives, earlier, a formal notice from the IMOD that the application for the Approval is denied, or in the event that the Approval is canceled, terminated or suspended, the Company shall have the right to terminate this Agreement by providing the End-User a written notice, and such termination shall not be considered a breach of this Agreement, and the Company shall not be held responsible or liable in connection with such termination. Further, the Company hereby acknowledges and agrees that the actual performance of the activities contemplated herein is conditioned upon the completion of the Due Diligence Process to the System Provider's full satisfaction which otherwise may terminate this Agreement at its sole discretion, by providing the Company a written notice, and such termination shall not be considered a breach of this Agreement, and the Company shall not be held responsible or liable in connection with such termination.

6. Technical Support and Maintenance Services. Following the expiration of the Warranty Period, the End-User shall be entitled to purchase technical support and maintenance services (the "**Support Services**") under the following terms:

6.1. The End-User may purchase Support Services for periods of twelve (12) month each (each such period – a "**Support Period**").

6.2. The Support Services shall be provided in accordance with the System Provider's standard services level agreement, as may be amended from time to time. A copy of the System Provider's current service level agreement is attached hereto as Exhibit D (the "**SLA**").

6.3. The consideration for the Support Services for each Support Period and the payment terms of such consideration are as set forth in Exhibit B.

7. Additional Remedy. In the event a breach has occurred, in addition to the Company's rights and remedies under applicable law and this Agreement, the Company may suspend or cancel the License or the provision of any of the Services, or take such actions necessary to prevent access to the System until such time as it has received confirmation to its satisfaction that such breach was cured. The Company shall not be liable towards the End-User for any claim, losses or damages whatsoever related to its decision to suspend or cancel the provision of any of the Services, the License, or to prevent access to the System under this section.

8. Intellectual Property Rights. All the rights pertaining to the System, the Services and the License, including, but not limited to, all patents, trademarks, copyrights, service marks, trade names, technology, know how, moral rights and trade secrets, all applications for any of the foregoing, and all permits, grants and licenses or other rights relating to the System and the Services are and shall remain the sole property of the System Provider.

The End-User hereby acknowledges that, other than as set forth in Section 2.1, no title to the System (including the software embedded therein) is transferred to it under this Agreement or in connection hereof and it is not granted any right in the System, including without limitation, intellectual property right.

The End-User shall not, whether directly or indirectly either by themselves or through any other person, reproduce, modify, disassemble or reverse-engineer the System (including any software contained therein).

9. Confidentiality. The End-User undertakes to keep the Confidential Information in strict confidence and not to disclose it to any third party without the prior written consent of the

System Provider; provided, however, that the End-User may disclose such information to its respective employees and consultants having a need to know such information in order to carry out the provisions of this Agreement. The End-User warrants that any such employees and consultants to which Confidential Information is disclosed will be bound and will abide by terms no less onerous than those contained herein and shall be responsible for any breach of confidentiality by such employees and consultants.

Following the termination of this Agreement for any reason, or upon the Company's first written demand, the End-User shall return to the Company all Confidential Information, including all records, products and samples received, and any copies thereof, whether in its possession or under its control, and shall erase all electronic records thereof, and shall so certify to the Company in writing

10.   Limited Warranty. It should be noted that the System Provider does not warrant that the License, the System and the Services provided hereunder will be uninterrupted, error-free, or completely secure. The System Provider does not make, and hereby disclaims, any and all implied warranties, including implied warranties of merchantability, fitness for a particular purpose and non-infringement. Except as otherwise expressly set forth in this Agreement (including any exhibits), the System Provider does not make and hereby disclaims all express warranties. All products, the System and Services provided pursuant to this Agreement are provided or performed on an "as is", "as available" basis.

11.   Limitation of Liability. In no event shall the Company be liable for any consequential, incidental, special, indirect or exemplary damages whatsoever, including lost profits, loss of business, loss of revenues, or any other type of damages, whether arising under tort, contract or law. The Company's aggregate liability under this Agreement shall be limited to the consideration actually received by the Company under this Agreement.

12.   Governing Law and Jurisdiction. This Agreement shall be governed, construed and enforced in accordance with the laws of the Republic of Ghana.
      Any controversy or claim arising under, out of, or in connection with this Agreement, its validity, its interpretation, its execution or any breach or claimed breach thereof, are hereby submitted to the sole and exclusive jurisdiction of the competent courts in the Republic of Ghana.

13.   Assignment. This Agreement and the rights and obligations hereunder are not transferable, pledgeable or assignable, by either party without the prior written consent of the other party. However, the System Provider may assign its rights and obligations to a parent, affiliate or subsidiary company and, in the case of a merger or acquisition, to a successor company upon notice to the Company, and provided that the rights of the Company shall not be derogated pursuant to such assignment.

14.   Force Majeure. The System Provider and the Company shall not be liable for any failure to perform its obligations under this Agreement due to any action beyond its control, including without limitation: (i) acts of God, such as fires, floods, electrical storms, unusually severe weather and natural catastrophes; (ii) civil disturbances, such as strikes and riots; (iii) acts of aggression, such as explosions, wars, and terrorism; (iv) acts of government, including, without limitation, the actions of regulatory bodies which significantly inhibits or prohibits the System Provider and the Company from performing its obligations under this Agreement (each, a "**Force Majeure**").
      In the event of a Force Majeure, the performance of the Company's obligations shall be suspended during the period of existence of such Force Majeure as well as the period reasonably required thereafter to resume the performance of the obligation.

15.   No Third Party Beneficiary. This Agreement shall not confer any rights or remedies upon any person other than the parties to this Agreement and their respective successors and permitted assigns.

16.   Complete Agreement. This Agreement and the Exhibits hereto constitute the full and entire understanding and agreement between the parties with regard to the subject matters hereof and

thereof and any other written or oral agreement relating to the subject matter hereof existing between the parties is expressly canceled.

17.  Representations. N/A.

18.  No Set-Off. Notwithstanding any right available to the End-User under law, the End-User shall not be entitled to set-off any amounts due to the Company under this Agreement.

19.  Severability. Should any court of competent jurisdiction declare any term of this Agreement void or unenforceable, such declaration shall have no effect on the remaining terms hereof.

20.  Interpretation. The titles and headings of the various sections and paragraphs in this Agreement are intended solely for reference and are not intended for any other purpose whatsoever or to explain, modify, or place any construction on any of the provisions of this Agreement.

21.  No Waiver. The failure of either party to enforce any rights granted hereunder or to take action against the other party in the event of any breach hereunder shall not be deemed a waiver by that party as to subsequent enforcement of rights or subsequent actions in the event of future breaches.

22.  Notices. All notices and demands hereunder shall be in writing and shall be served by personal service or by mail at the address of the receiving party set forth in this Agreement (or at such different address as may be designated by such party by written notice to the other party). All notices or demands by mail shall be certified or registered mail, return receipt requested, by nationally-recognized private express courier, or sent by electronic transmission, with confirmation received, to the telecopy numbered specified below, and shall be deemed complete upon receipt.

JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA

**In Witness Whereof,** the parties hereto have executed this Agreement the day and year first above written.

_____  17-12-2015

**Infraloks Development Limited**

By:

Mr. George Derek Oppong

Position: Director, Business Development

_____  17-12-2015

**National Communication Agency**

By:

Mr. William Tevie

Position: Director General

JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA

## Exhibit A

### Description of the System and Services

The System:

The System Provider's Pegasus system is comprised of the following (the "**System**"):

(a) the features and capabilities detailed in the table attached hereto as <u>Exhibit A-1</u>, operational with respect to the Republic of Ghana mobile numbers (residing in the Republic of Ghana), using the System Provider's supported devices running the System Provider's certified versions of Blackberry, Android and iOS operating systems, including **25** concurrent targets; and

(b) the hardware equipment (the "**Hardware Equipment**") and software which are required for the installation of the System, including **5** control stations, as listed in <u>Exhibit A-2</u> attached hereto.

The Services:

The services related to the System include the following (the "**Services**"):

(a) Deployment of the System at the End-User's site for use with respect to the Republic of Ghana mobile numbers residing in the Republic of Ghana (as set forth in Section (a) above) (the "**Deployment**");

(b) **Two (2)** week training course and one (1) week on-site handover, which shall be held in English (the "**Training**");

(c) 12 months warranty (the "**Warranty Period**") commencing at the date of the provision of the Commissioning Notice, which shall be provided in accordance with the Company's SLA.

No warranty is provided by the System Provider with respect to the hardware components of the System. To the extent permissible, Hardware Equipment warranty will be provided by the System Provider back to back with the warranty provided by the suppliers of the Hardware Equipment.

JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA JUDICIAL SERVICE OF GHANA

## Exhibit A-1
### Features and Capabilities

## Supported OS:

| Operating System | Versions | Supported Browsers for Installation |
|---|---|---|
| iOS | 7.x – 9.1 | Safari<br>• Clicking on a link will always result in Safari browser |
| Android | 4.x – 5 | • Native browser (Webkit based)<br>• Chrome versions 18 up to 45 (excl. 18.0.1025.166)<br>• Focus mainly on Samsung Galaxy devices |
| BlackBerry | 5.x – 7.1 | Native browser (Webkit based) |



## Installation:

| Feature | | Description | Comments | Supported in | | |
|---|---|---|---|---|---|---|
| | | | | BlackBerry | Android | iOS |
| Remote Installation | Push Message | Infection is done by silently pushing an installation to the device. This method does not require the target engagement. | • Works on most BlackBerry devices • Works on a variety of Android devices (OS 4.x). Depends on the local ROM settings | V | V | |
| | Crafted Message (SMS, Email and other 3rd party applications) | An innocent message is sent to the target device which contains text and link. The message content and link lure the target to click (only once) and browse to an innocent website. Clicking the link triggers a silent installation which runs in the background. | | V | V | V |
| Infection Assisting Tools | MMS Fingerprint | Reveal the target device and OS version by sending an MMS to the device. No user interaction, engagement or message opening is required to receive the device fingerprint. | This feature may be blocked by the local mobile network operator. Feature implementation subjects to site survey results. Note: MMS content appears on the target device. | V | V | V |
| | Sender ID Spoofing | Set an alphanumeric sender identification for SMS and MMS. | This feature may be blocked by the local mobile network operator. Feature implementation subjects to site survey results. | V | V | V |
| | Control link URL | Set any DNS to be used as the installation link | Domains to be defined and purchased by the customer | V | V | V |

| | Feature | Description | Comments | Supported in | | |
|---|---|---|---|---|---|---|
| | | | | BlackBerry | Android | iOS |
| **Agent Survivability** | Persistency | The installed collection tool survives device reboot. | Device reboot refers to:<br>• Device restart<br>• Device turn off<br>• Device battery drain | V | V | V |
| | **Factory Reset** | The agent collection tool endures device factory reset. | Factory reset, also known as master reset, restores the device original manufacturer settings resulting in permanent erasing all of the information stored on the device. | | V | |
| | **Blocking OS Upgrade** | The agent collection tool blocks the user from upgrading the OS version. | The device acts like it has the latest OS version or is not allowed to perform off-the-air OS upgrade.<br>Note: Physical OS upgrade is still available. | V | V | V |
| **Agent Uninstall** | Uninstall | Permanently remove the agent collection tool | Done remotely without any user interaction | V | V | V |

## Collection:

| Feature[1] | | Description | Comments | Supported in | | |
|---|---|---|---|---|---|---|
| | | | | BlackBerry | Android | iOS |
| Historical Data Extraction: Extract all existing data from the device. Gain access to historical data. | Contact details | Extracts all contacts available on the device including their assigned photos | Extraction is done for all available (non-empty) fields. | V | V | V |
| | SMS | Extracts all incoming and outgoing text messages (SMS) from the device | | V | V | V |
| | iMessage | Extracts all incoming and outgoing iMessages from the device | Messages sent only between iOS devices | | | V |
| | Emails | Extracts all emails that exist on the device | Extracts only from the device stock application and Gmail application. Emails are presented in HTML format. | V | V | V |
| | Call Log | Extracts the history of all incoming/outgoing calls made to/from the device | | V | V | V |
| | WhatsApp Call Log | Extracts the history of all incoming/outgoing calls made to/from the device using WhatsApp | | | V | |
| | Skype Call Log | Extracts the history of all incoming/outgoing calls made to/from the device using Skype | | | V | V |

[1] Due to some limitations and restrictions of the operating system, certain devices might not support all listed features.

| Feature | | Description | Comments | Supported in | | |
|---|---|---|---|---|---|---|
| | | | | BlackBerry | Android | iOS |
| | Calendar | Extracts all calendar records that exist on the device | | V | V | V |
| | Browsing History | Extract the entire list of browsed websites that exists on the device | Extracts only from the device native browser application | | V | V |
| | BBM (BlackBerry messenger) | Extracts all existing incoming and outgoing instant messages from the device, including personal and group chat | Extracts only instant messages (text) | V | | |
| | WhatsApp | | | V | V | V |
| | Viber | | | | V | V |
| | Skype | | | | V | V |
| | Facebook Messenger | | | | V | V |
| | Kakao Talk | | | | V | V |
| | Telegram | | | V | V | V |
| | Line | | | | | V |
| | Odnoklassniki | | | V | V | V |
| | WeChat | | | | V | V |
| | Tango | | | V | V | V |
| | VKontakte | | | | V | V |
| | Mail.Ru | | | | V | V |
| Data Monitoring: Real-time monitor of new data that arrives/sent to/from the | Contact details | Monitors addition, deletion and editing of contacts on the device | | V | V | V |
| | SMS | Monitors incoming and outgoing text messages | | V | V | V |
| | iMessage | Monitors incoming and outgoing iMessages | Messages sent only between iOS devices | | | V |

| device | Feature | Description | Comments | Supported in | | |
|---|---|---|---|---|---|---|
| | | | | BlackBerry | Android | iOS |
| | Emails | Monitors incoming and outgoing emails | Monitors only the device stock application and Gmail application. Emails are presented in HTML format. | V | V | V |
| | Call Log | Monitors incoming and outgoing call records | | V | V | V |
| | WhatsApp Call Log | Monitors incoming and outgoing call records of WhatsApp application | | | V | |
| | Skype Call Log | Monitors incoming and outgoing call records of Skype application | | | V | V |
| | Calendar | Monitors addition and editing of calendar records on the device | | V | V | V |
| | Browsing History | Monitors new browsed websites | Monitors only the device native browser application | | V | V |
| | BBM (BlackBerry Messenger) | Monitors incoming and outgoing instant messages, including personal and group chat | Monitors only instant messages (text). Indication for file transfer appear and their retrieval is possible using file retrieval feature. | V | | |
| | WhatsApp | | | V | V | V |
| | Viber | | | | V | V |
| | Skype | | | | V | V |
| | Facebook Messenger | | | | V | V |
| | Kakao Talk | | | | V | V |
| | Telegram | | | V | V | V |
| | Line | | | | | V |
| | Odnoklassniki | | | V | V | V |
| | WeChat | | | | V | V |
| | | | | V | V | V |

| Feature | Description | Comments | Supported in | | |
|---|---|---|---|---|---|
| | | | BlackBerry | Android | iOS |
| Tango | | | | V | V |
| VKontakte | | | | V | V |
| Mail.Ru | | | | V | V |
| surespot | | | | V | V |
| USSD | Monitors incoming network messages from the device | | V | V | V |
| Call recording (call interception) | Record incoming and outgoing voice calls made to/from the device | Calls are recorded locally on the device and then sent to the system servers. | V | V | V |
| Device Information | Monitors general details about the device, network and connection | | V | V | V |
| Cell-ID Location | Monitors the device cell-ID within every connection to the command and control servers | | V | V | V |
| Keystroke logging | Monitors keystroke typing by the regular keyboard | Helps monitoring texting in unsupported applications and even usernames and passwords for sensitive accounts. | | V | |
| **Active Data Collection:** User request's real-time actions on target device → Front Camera Snapshot | Take a snapshot using the device front camera | No indication appears on the device and flash is never used. | | V | V |
| Back Camera Snapshot | Take a snapshot using the device rear camera | No indication appears on the device and flash is never used. | V | V | V |
| Screenshot capturing | Capture a screenshot of the device | | V | V | V |
| File System listing | Retrieve a full list of files and | | V | V | V |



| Feature | Description | Comments | Supported in | | |
|---|---|---|---|---|---|
| | | | BlackBerry | Android | iOS |
| | folder in target device | | | | |
| File retrieval | Retrieve any file from the target device including photos, documents, audio and video | File retrieval is allowed from the device internal storage and SD card. | V | V | V |
| GPS Location | Locate device using the device GPS chip | | V | V | V |
| Room Tap (environmental sound recording) | Turn on the microphone and listen in real-time to the surrounding sounds of the device. The surrounding sounds are recorded and saved for later playback and analysis. | Turning on the microphone is done by issuing an incoming silent call to the device. No indication of the recording or the silent call appears on the device at any point. The quality of the recording depends on the device's microphone sensitivity, the surrounding noise and the device model. | V | V | V |



## Data Transmission:

| Feature | | Description | Comments | Supported in | | |
|---|---|---|---|---|---|---|
| | | | | BlackBerry | Android | iOS |
| Data Transmission: Channels used to exfiltrate the collected data back to the command and control servers | GPRS/UTMS/LTE | Transmit collected data using cellular data channels | Data is sent in very small packets. This has very small impact on target's data plan. | V | V | V |
| | Wi-Fi | Transmit collected data using Wi-Fi | Has no impact on target's data plan at all. | V | V | V |

## Presentation:

| Feature | Collected Data | Displayed As |
|---|---|---|
| Contact details | Entire values stored in the contact entry including photo if available | • Grid<br>• Contact card with the entire details |
| SMS | • Type (SMS / USSD)<br>• Direction (incoming, outgoing)<br>• Contact name<br>• Phone number<br>• Message content<br>• Date & Time | • Grid |
| USSD | | |
| iMessage | | |
| Emails | • From<br>• To<br>• CC<br>• Subject<br>• Folder<br>• Account<br>• Message content<br>• Date & Time | • Grid<br>• Full HTML presentation (emulates popular email clients) |
| Call Log<br>(Cellular calls, WhatsApp, Skype) | • Direction<br>• Contact name<br>• Phone number<br>• Duration<br>• Date & Time | • Grid |
| Calendar | • Meeting subject<br>• Location<br>• Event date and start time | • Grid<br>• Monthly calendar view (emulates popular calendar clients) |



| Feature | Collected Data | Displayed As |
|---|---|---|
| **Browsing History** | • Website name (as saved by the target, usually the default website name)<br>• Website URL address | • List |
| **BBM (BlackBerry Messenger)** | • Type of application<br>• Chat participants (Names & phones)<br>• Conversation content<br>• Date & Time<br>• Attachments metadata (without the attachment) | • Grid<br>• Conversation mode |
| **WhatsApp** | | |
| **Viber** | | |
| **Skype** | | |
| **Facebook Messenger** | | |
| **Kakao Talk** | | |
| **Telegram** | | |
| **Line** | | |
| **Odnoklassniki** | | |
| **WeChat** | | |
| **Tango** | | |
| **VKontakte** | | |
| **Mail.Ru** | | |
| **surespot** | | |
| **Call recording**<br>**(call interception)** | • Direction<br>• Contact name<br>• Phone number<br>• Duration<br>• Date & Time | • Grid<br>• Playback interface |



| Feature | Collected Data | Displayed As |
|---|---|---|
| Device and Network Information | • Battery level<br>• Last location<br>• Connection type (e.g., 3G, WiFi)<br>• MSISDN<br>• IMEI<br>• IMSI<br>• Device Manufacturer<br>• Device model<br>• Operating System version<br>• Installation type (remote, physical or other)<br>• Installation date<br>• Last communication time<br>• Next communication expected<br>• Device current country<br>• Device home country<br>• Serving network<br>• Home serving network | • Dashboard |
| GPS/Cell-ID Location | • Data source (GPS/Cell-ID)<br>• Latitude<br>• Longitude<br>• Enter Time & Date<br>• Leave Time & Date | • Grid<br>• Map:<br>  – On map display<br>  – Full trail<br>  – Type of location data (GPS or Cell-ID based) |
| Keystroke logging | Text typed using the keyboard | • List |
| Front Camera Snapshot | • Date & Time<br>• Photo<br>• Source of photo | • Grid<br>• Photo viewer |
| Back Camera Snapshot | | |
| Screenshot capturing | | |



| Feature | Collected Data | Displayed As |
|---|---|---|
| File System listing | • List of folders (tree)<br>• List of files (grid):<br>  – Filename<br>  – Modified date<br>  – File size<br>  – Retrieval status | • Grid<br>• Tree view |
| File retrieval | | |
| Room Tap (environmental sound recording) | • Recorded audio<br>• Recording Date & Time<br>• Duration | • Grid<br>• Playback interface |
| | | |

## Rules & Alerts:

| Rule Type | Alert When | Alert Description |
|---|---|---|
| Geo Fence - Access hotspot | Alert when target entered an important area | Geo-fence alerts are based on a perimeter around a certain location, where the operator defines the size of the perimeter. |
| Meeting detection | Alert when two targets meet | The alert occurs in two target are at the same perimeter as defined by the user. The alert will take place also if targets visited the same location in different times. |
| Connection detection | Alert when a message is sent from/to a specific number | Alert when target is corresponding with a certain number as defined by the user. |
| | Alert when a phone call is performed from/to a specific number | Alert when target conducts/receives a phone call to/from a certain number as defined by the user. |

## Exhibit A-2

### List of Hardware Equipment and Software

The System Provider shall supply the following hardware equipment and software, or similar, to enable the commissioning of the system.

Disclaimer: This list may change per Network\Regulation\System\Country feature support changes.

| Item Description | Manufacturer | QTY | Device Model |
|---|---|---|---|
| PowerEdge R730xd Server | Dell | 1 | R730XD |
| Intel Xeon E5-2643 v3 3.4GHz,20M Cache,9.60GT/s QPI,Turbo,HT,6C/12T (135W) | | | |
| Max Mem 2133MHz | | | |
| R730/xd PCIe Riser 2, Center | | | |
| R730/xd PCIe Riser 1, Right | | | |
| PowerEdge R730xd Shipping EMEA1 | | | |
| (English/French/German/Spanish/Russian/Hebrew) | | | |
| Bezel | | | |
| Chassis with up to 24, 2.5" Hard Drives | | | |
| DIMM Blanks for System with 2 Processors | | | |
| Performance Optimized | | | |
| 2133MT/s RDIMMs | | | |
| 8 X 8GB RDIMM, 2133MT/s, Dual Rank, x8 Data Width | | | |
| 2 X Standard Heatsink for PowerEdge R730/R730xd | | | |
| Upgrade to Two Intel Xeon E5-2643 v3 3.4GHz,20M Cache,9.60GT/s QPI,Turbo,HT,6C/12T (135W) | | | |
| iDRAC8 Enterprise, integrated Dell Remote Access Controller, Enterprise | | | |
| 2 X 300GB 15K RPM SAS 6Gbps 2.5in Hot-plug Hard Drive,13G | | | |
| 16 X 500GB 7.2K RPM NLSAS 6Gbps 2.5in Hot-plug Hard Drive,13G | | | |
| PERC H730 Integrated RAID Controller, 1GB Cache | | | |
| Performance BIOS Settings | | | |
| Dual, Hot-plug, Redundant Power Supply (1+1), 750W | | | |
| 2 X C13 to C14, PDU Style, 10 AMP, 0.6m Power Cord | | | |
| PowerEdge Server FIPS TPM | | | |
| Intel Ethernet i350 QP 1Gb Network Daughter Card | | | |
| Intel Ethernet I350 QP 1Gb Server Adapter | | | |

| Item Description | Manufacturer | QTY | Device Model |
|---|---|---|---|
| PowerEdge R730/R730xd Motherboard<br>No Media Required<br>No Operating System<br>OpenManage Essentials, Server Configuration Management<br>Electronic System Documentation and OpenManage DVD Kit, PowerEdge R730/xd<br>OEM Order<br>Not Selected in this Configuration<br>Asset Service - System & Shipbox Label (Model, Svc Tag, Order Information, Basic Config Details)<br>ReadyRails Sliding Rails With Cable Management Arm<br>RAID 1+RAID 5 for H330/H730/H730P (2 + 3-22 HDDs or SSDs)<br>Base Warranty<br>1Yr Parts Only Warranty (Emerging Only)<br>INFO 1Yr ProSupport and Next Business Day On-Site Service (Emerging Only)<br>3Yr ProSupport and Next Business Day On-Site Service (Emerging Only)<br>Consolidation Fee<br>EX-Works | | | |
| PowerEdge R730 Server<br>Intel Xeon E5-2620 v3 2.4GHz,15M Cache,8.00GT/s QPI,Turbo,HT,6C/12T (85W)<br>Max Mem 1866MHz<br>R730/xd PCIe Riser 2, Center<br>R730 PCIe Riser 3, Left<br>R730/xd PCIe Riser 1, Right<br>PowerEdge R730 Shipping EMEA1<br>(English/French/German/Spanish/Russian/Hebrew)<br>Bezel<br>Chassis with up to 8, 3.5" Hard Drives<br>DIMM Blanks for System with 2 Processors<br>Performance Optimized<br>2133MT/s RDIMMs<br>2 X 8GB RDIMM, 2133MT/s, Dual Rank, x8 Data Width<br>2 X Standard Heatsink for PowerEdge R730/R730xd<br>Upgrade to Two Intel Xeon E5-2620 v3 2.4GHz,15M Cache,8.00GT/s QPI,Turbo,HT,6C/12T (85W) | Dell | 2 | R730 |

| Item Description | Manufacturer | QTY | Device Model |
|---|---|---|---|
| iDRAC8 Enterprise, integrated Dell Remote Access Controller, Enterprise<br>2 X 300GB 10K RPM SAS 6Gbps 2.5in Hot-plug Hard Drive,3.5in HYB CARR<br>PERC H730 Integrated RAID Controller, 1GB Cache<br>Performance BIOS Settings<br>DVD+/-RW, SATA, Internal<br>Dual, Hot-plug, Redundant Power Supply (1+1), 750W<br>C13 to C14, PDU Style, 10 AMP, 0.6m Power Cord<br>European Power Cord 220V<br>PowerEdge Server FIPS TPM<br>Intel Ethernet i350 QP 1Gb Network Daughter Card<br>Intel Ethernet I350 QP 1Gb Server Adapter<br>PowerEdge R730/R730xd Motherboard<br>No Media Required<br>No Operating System<br>OpenManage Essentials, Server Configuration Management<br>Electronic System Documentation and OpenManage DVD Kit, PowerEdge R730/xd<br>OEM Order<br>Not Selected in this Configuration<br>Asset Service – System & Shipbox Label (Model, Svc Tag, Order Information, Basic Config Details)<br>ReadyRails Sliding Rails With Cable Management Arm<br>RAID 1 for H330/H730/H730P (2 HDDs or SSDs)<br>Base Warranty<br>1Yr Parts Only Warranty (Emerging Only)<br>INFO 1Yr ProSupport and Next Business Day On-Site Service (Emerging Only)<br>3Yr ProSupport and Next Business Day On-Site Service (Emerging Only)<br>Consolidation Fee<br>EX-Works | | | |
| PowerEdge R730 Server<br>Intel Xeon E5-2650 v3 2.3GHz,25M Cache,9.60GT/s QPI,Turbo,HT,10C/20T (105W)<br>Max Mem 2133MHz<br>R730/xd PCIe Riser 2, Center<br>R730 PCIe Riser 3, Left<br>R730/xd PCIe Riser 1, Right | Dell | 2 | R730 |

| Item Description | Manufacturer | QTY | Device Model |
|---|---|---|---|
| PowerEdge R730 Shipping EMEA1 | | | |
| (English/French/German/Spanish/Russian/Hebrew) | | | |
| Bezel | | | |
| Chassis with up to 8, 3.5" Hard Drives | | | |
| DIMM Blanks for System with 2 Processors | | | |
| Performance Optimized | | | |
| 2133MT/s RDIMMs | | | |
| 8 X 16GB RDIMM, 2133 MT/s, Dual Rank, x4 Data Width | | | |
| 2 X Standard Heatsink for PowerEdge R730/R730xd | | | |
| Upgrade to Two Intel Xeon E5-2650 v3 2.3GHz,25M Cache,9.60GT/s | | | |
| QPI,Turbo,HT,10C/20T (105W) | | | |
| iDRAC8 Enterprise, integrated Dell Remote Access Controller, Enterprise | | | |
| VFlash, 8GB SD Card for iDRAC Enterprise | | | |
| 2 X 300GB 10K RPM SAS 6Gbps 2.5in Hot-plug Hard Drive,3.5in HYB CARR | | | |
| PERC H730 Integrated RAID Controller, 1GB Cache | | | |
| Emulex LPE12002 Dual Channel 8Gb PCIe Host Bus Adapter, Low Profile | | | |
| Performance BIOS Settings | | | |
| DVD+/-RW, SATA, Internal | | | |
| Dual, Hot-plug, Redundant Power Supply (1+1), 750W | | | |
| C13 to C14, PDU Style, 10 AMP, 0.6m Power Cord | | | |
| PowerEdge Server FIPS TPM | | | |
| Intel Ethernet i350 QP 1Gb Network Daughter Card | | | |
| Intel Ethernet I350 QP 1Gb Server Adapter | | | |
| PowerEdge R730/R730xd Motherboard | | | |
| No Media Required | | | |
| No Operating System | | | |
| Electronic System Documentation and OpenManage DVD Kit, PowerEdge R730/xd | | | |
| OEM Order | | | |
| Not Selected in this Configuration | | | |
| Asset Service - System & Shipbox Label (Model, Svc Tag, Order Information, Basic | | | |
| Config Details) | | | |
| ReadyRails Sliding Rails With Cable Management Arm | | | |
| RAID 1 for H330/H730/H730P (2 HDDs or SSDs) | | | |
| Base Warranty | | | |
| 1Yr Parts Only Warranty (Emerging Only) | | | |



| Item Description | Manufacturer | QTY | Device Model |
|---|---|---|---|
| INFO 1 Yr ProSupport and Next Business Day On-Site Service (Emerging Only) 3Yr ProSupport and Next Business Day On-Site Service (Emerging Only) Consolidation Fee EX-Works | | | |
| PowerEdge KVM 1081AD - 8 Port Keyboard/Video/Mouse Analog Switch, EUCEM 8x USB Server Interface Pod, includes 2 CAT 5 Cables, TAA | Dell | 1 | 1081AD |
| 1U KMM (Touchpad, US/International Keyboard and Widescreen 18.5" LED) with ReadyRails - Kit | Dell | 1 | |
| FAS8020A-001-R6  FAS8020 High Availability System 7-Mode 2 X6226-R6-C  Chassis,FAS8020,AC PS,-C     1 X6554-R6-C  Cable,Cntlr-Shelf/Switch,15m,LC/LC,Op,-C  4 X6559-R6-C  Cable,SAS Cntlr-Shelf/Shelf-Shelf/HA,5m,-C  8 X6562-R6-C  Cable,Ethernet,5m RJ45 CAT6,-C   4 X6585-R6-C  Cable,Ethernet,3m RJ45 CAT6,-C   1 X2065A-EN-R6-C  HBA SAS 4-Port Copper 3/6 Gb QSFP PCIe,EN,-C 2 X5515A-R6-C  Rackmount Kit,4N2,DS14-Middle,-C,R6  1 X5526A-R6-C  Rackmount Kit,4-Post,Universal,-C,R6  2 X6596-R6-C  SFP+ FC Optical 16Gb,-C   4 DOC-8020-C  Documents,8020,-C   1 X1973A-R6-C  Flash Cache 512GB PCIe Module 2,-C  2 X800-42U-R6-C  Power Cable,In-Cabinet,C13-C14,-C  6 DS2246-1014-24S-0P-R6-C DSK SHLF,24x600GB,10K,0P,-C  2 SW-2-8020A-CIFS-C SW-2,CIFS,8020A,-C   2 SW-2-8020A-FCP-C SW-2,FCP,8020A,-C   2 SW-2-8020A-ISCSI-C SW-2,iSCSI,8020A,-C   2 SW-2-8020A-NFS-C SW-2,NFS,8020A,-C   2 OS-ONTAP-CAP2-0P-C OS Enable,Per-0.1TB,ONTAP,Perf-Stor,0P,-C 288 | NetApp | 1 | FAS8020 |

| Item Description | Manufacturer | QTY | Device Model |
|---|---|---|---|
| Digi PortServer TS 16 port rackmountable RJ-45 Serial to Ethernet Terminal Server | Digium | 2 | TS 16 |
| One (1) span digital T1/E1/J1/PRI PCI-Express x1 card | Digium | 2 | |
| Cisco 2921<br>Cisco 2921 Security Bundle w/SEC license PAK<br>SMARTNET 8X5XNBD Cisco 2921 Security<br>Four port 10/100/1000 Ethernet switch interface card<br>Cisco 2901-2921 IOS UNIVERSAL<br>Data Paper PAK for Cisco 2901-2951<br>Cisco 2921/2951 AC Power Supply<br>Console Cable 6ft with RJ45 and DB9F<br>Cisco Config Pro Express on Router Flash<br>Insert Packout - PI-MSE<br>IP Base License for Cisco 2901-2951<br>Blank faceplate for HWIC slot on Cisco ISR<br>512MB DRAM for Cisco 2901-2921 ISR (Default)<br>256MB Compact Flash for Cisco 1900 2900 3900 ISR<br>Security License for Cisco 2901-2951<br>Blank faceplate for DW slot on Cisco 2951 and 3925<br>Removable faceplate for SM slot on Cisco 290039004400 ISR | Cisco | 3 | 2921 |
| Cisco 3750X<br>Catalyst 3750X 48 Port Data IP Base<br>SMARTNET 8X5XNBD Catalyst 3750X 48 Port Data IP Base for 36 Months<br>Catalyst 3K-X 350W AC Secondary Power Supply<br>CAT 3750X IOS UNIVERSAL WITH WEB BASE DEV MGR<br>Cisco StackWise 50CM Stacking Cable<br>Catalyst 3750X and 3850 Stack Power Cable 30 CM<br>Catalyst 3K-X 10G Network Module<br>Catalyst 3K-X 350W AC Power Supply<br>Insert Packout - PI-MSE | Cisco | 2 | Cisco 3750X |

| Item Description | Manufacturer | QTY | Device Model |
|---|---|---|---|
| Catalyst 2960-X 48 GigE 4 x SFP LAN Base<br>SMARTNET 8X5XNBD Cat 2960-X Stk 24 GigE4xSFP LAN Base (36 Months)<br>Insert Packout - PI-MSE | Cisco | 2 | Cisco 2960-X |
| Cinterion MC55i Modem | Cinterion | 9 | MC55i |
| Optiplex 7010 MT<br>· OptiPlex 7010 MT : Mini-Tower<br>· Windows 8<br>· 3rd Gen Intel Core i7-3770 (Quad Core, 3.40GHz Turbo, 8MB, w/ HD4000 Graphics<br>· 8GB (2X4GB) 1600 MHz DDR3 Non-ECC<br>· UK/Irish (QWERTY) Dell KB212-B QuietKey USB Keyboard Black<br>· 1TB 3.5inch Serial ATA III (7.200 Rpm) Hard Drive<br>· Dell Optical (Not Wireless), Scroll USB (3 buttons scroll) Black Mouse<br>· 16XDVD+/-RW Drive<br>· Internal Dell Business Audio Speaker<br>· 3Yr ProSupport and Next Business Day On-Site Service (Emerging Only) | Dell | 15 | |
| Dell Professional P2314H 58.4cm(23") LED monitor VGA,DVI-D,DP (1920x1080) Black UK | Dell | 30 | |
| APC NetShelter SX 42U Deep Enclosure 1200X600 with Roof and Sides Black | APC | 2 | AR3300 |
| Rack PDU 2G, Metered, ZeroU, 32A, 230V, (36) C13 & (6) C19 | APC | 4 | AP8853 |
| PDU Cord Retention Kit for Full-Height & 48U, Basic & LCD-Metered PDU (1 per PDU | APC | 4 | AP9569 |
| Horizontal Cable Organizer 1U w/brush strip | | 10 | AR8429 |
| Cat7 patch cord,0.5m,BLue | | 20 | |
| Cat7 patch cord,1m,BLue | | 40 | |

| Item Description | Manufacturer | QTY | Device Model |
|---|---|---|---|
| Cat7 patch cord,2m,BLue | | 60 | |
| Cat 7 patch cord,5m,BLACK | | 20 | |
| Cat 7 patch cord,10m,Grey | | 10 | |
| 48 port Cat 6 patch Panel HD Netkey | | 4 | |
| duplex patch cord,10m - Patch cord Fiber OM3 LC LC 10m | | 10 | |
| Console Cable 6ft with RJ45 and DB9F | | 2 | |
| Blank plate 1U(10 per pack total 4 packs) | | 40 | |
| Power Cord, C13 to C14, 5m | | 20 | |
| Power Cord, C13 to C14, 3m | | 40 | |
| APC Smart-UPS SRT 5000VA RM 230V | APC | 4 | SRT5KRMXLI |
| APC Smart-UPS SRT 5kVA Output HW Kit | APC | 4 | SRT001 |
| SRT001 Kit installation | APC | 4 | |
| power cable 3 meters for ups + Sicon 32A | APC | 4 | |
| APC Smart-UPS SRT 192V 5kVA and 6kVA RM Battery Pack | APC | 4 | SRT192RMBP |
| Office Pro Plus 2013 | Microsoft | 15 | |
| VPP L3 VMware vSphere 5 Enterprise for 1 processor Production Support/Subscription for VMware vSphere 5 Enterprise for 1 processor | Vmware | 4 processors | |
| VPP L3 VMware vCenter Server 5 Standard for vSphere 5 (Per Instance) | Vmware | 1 Instances | |





| Item Description | Manufacturer | QTY | Device Model |
|---|---|---|---|
| Veeam Backup & Replication Enterprise for Vmware and Hyper-V per Socket License | Veeam | 6 Sockets | |
| Microsoft Windows Server 2012 R2 Standard Edition 2 Socket License | Microsoft | 2 | |
| MS SQL 2014 Server Standard core 2 socket License | Microsoft | 2 | |
| Nagios XI (Enterprise version with 100 Nodes license) | Nagios | 1 | |

Exhibit B

Considerations

## Considerations Amounts

| Definition | Consideration for | Amount in USD |
|---|---|---|
| "System Consideration" | provision of the License, System and Services. | 8,000,000 (eight million) |
| "Support Period Consideration" | any one Support Period. | 22 % of the System Consideration. |

### Payment Terms

System Consideration

The System Consideration shall be paid by the End-User to the Company in three (3) installments as follows:

(a) 50% of the System Consideration shall be paid by January 28ᵗʰ, 2016 (the "First Installment").

(b) 35% of the System Consideration shall be paid upon the provision of the Hardware Equipment to the End-User's site.

(c) 15% of the System Consideration shall be paid upon the provision of a written notice by the Company to the End-User confirming that the Deployment of the System at the End-User's site was completed (the "Commissioning Notice").

Support Period Consideration

The Support Period Consideration shall be paid in one payment, in advance of each Support Period.

## Exhibit C

### Installation Requirements

The End-User shall ensure that the following pre-requisites are ready 2 weeks prior to the System installation (aligned to SW version).

Disclaimer: This list may change per Network\Regulation\System feature support changes.

| Prerequisite | Equipment | Remarks |
|---|---|---|
| Internet Connection | 2 symmetric ATM lines each 20MB (from 2 different ISP's) with static IP's of 8 external addresses | 2 lines are required for redundancy. The minimum requirement might be even lower - depends on the number and type of end stations. |
| Cellular Reception | Stable Cellular Reception | ~-95 db |
| Air Condition | 18 Degrees | None |
| Electricity | 4 power socket - 220V | Server room and operational room drawings are required to accurately specify all wall outlets location. Power generator and Facility environment against hazard dangers are optional |
| Area needed for server room | 5X5M, Height 2.5 M | There are 2 48U racks with the following dimensions: Height 2258.00 mm, Width 600.00 mm, Depth 1070.00 mm |
| Area needed for operator room | 10X10M, Height 2.5 M | Can be divided into separate rooms |
| Patch panel | Depends on the number of stationary stations. Wires from the end stations to the patch panel in the rack | |
| SIMs | 2 SIM cards for each network | It is mandatory to use a 3rd party to order the SIMs , also use a postpaid account |
| Security | Lockable doors | |
| Untraceable payment method | 1 X named credit card with 4000$ balance 1 X Passport scan on the same name as a credit card 1 X Prepaid no name local SIM card 1 X Utility bill with address on the same name as Passport | It is recommended to use a 3rd party, The passport, credit card and utility bill should not be related to the organization |

### Exhibit D
### Service Level Agreement

1.  Introduction

    This Service Level Agreement (the "**SLA**") is an agreement between NSO Group Technologies Ltd. (hereinafter the "**Company**") and Infralok Development Limited (hereinafter the "**Reseller**").

    The purpose of this SLA is to specify the services and commitments with respect to the software technical support, location support and/or hardware replacement services for the purchased products.

1.1.  Objectives of the Service Level Agreement

    To create an environment which is conducive to a co-operative and productive relationship between the Company, the End User, and the Reseller to ensure effective support for the End User.

    To document the responsibilities of all the parties involved in the SLA.

    To ensure the Company provides high quality service to the Reseller and the End User.

    To define the service to be delivered by the Company and the level of service which can be expected by the End User, thereby reducing the risk of misunderstandings.

    To institute a formal system of objective service level monitoring ensuring that reviews of the SLA are based on factual data.

    To provide a common understanding of service requirements/capabilities and of the principals involved in the measurement of service levels.

    To provide for all parties to this SLA a single, easily referenced document, which caters for all objectives as listed above.





2.    Definitions

**Hardware Replacement** means a HW replacement service for the hardware products purchased by the Reseller from the Company, whereby the Company delivers a replacement to the End User's site before the End User returns the faulty hardware.

All Hardware Replacements shall take effect after the Company receives relevant alerts and all required information, and determines that the hardware issue is related to a malfunction of one of the hardware components.

**Business Day** means a normal working day in the time zone where the End User is located.

**Device Number** means a unique identifier of a hardware device, which can be located on a label on a Hardware product:

- Media Access Control (**MAC**) Address,
- Serial Number (**S/N**),
- Service Tag Number (**STN**)
- International Mobile Station Equipment Identity (**IMEI**)

**Documentation** means the User and Technical manuals provided by the Company for use with the purchased software and hardware products.

**Enhancement** means all software changes, including new releases, new versions, product improvements, system modifications, updates, upgrades and service packs.

**Error** means an error in one or more of the Company's products, which degrades the product functionality in accordance with the Severity definitions, as compared to the product functionality and performance specifications described in the official user guides provided by the Company.

**Hardware** means a computing device and/or its component with a specific function and limited configuration ability. The Hardware is sold by the Company to the Reseller for the sole purpose of executing the specific Software product/s supplied with it.

**Information** means any idea, data and program, technical, business or other intangible information, however conveyed.

**Problem Resolution** means the use of reasonable commercial efforts to resolve the reported problem. These methods may include, but are not limited to: configuration changes, patches that fix an issue, replacing a failed hardware component, reinstalling the software, etc.

**Force Majeure** has the meaning ascribed to it in the Agreement between the parties.

**Response** means addressing the initial request and commencement of work pertaining to the issue.

**Response Time** means the amount of time elapsed between the initial contact by the Reseller or the End User with the Company's Technical Support Team and the returned response to the Reseller or the End User by the Company's support staff.

**Resolution Time** means the amount of time elapsed between the initial contact by the Reseller or the End User with the Company's Technical Support Team till the issue reported is resolved wither by permanent fix or a workaround till a permanent fix would be available.

**Security Code** means a specific code dedicated to the End User's account in the Company's Technical Support Center. This code must be provided by the End User each time the End User approaches the Company's support staff.

**Support** means the technical Support and Hardware replacement services provided by the Company to the End User as set forth in this SLA.

**Support case** means a single issue opened in the Company's Case Management System. The case number identifies the Service Request.

**Field Service Engineer** means an engineer that provides the following onsite services: installation, field configuration, operates system to demonstrate equipment on test devices and to analyze malfunctions, interprets maintenance manuals, schematics, and diagrams, and repairs electronic equipment, such as computer, computing device or component, utilizing knowledge of electronics and using standard test instruments and hand tools.

**System** means the Hardware, Software and Documentation that have been provided to the Reseller and/or the End User by the Company.

**Workaround** means a change in the followed procedures or data to avoid error without substantially impairing use of the product.

Case 4:19-cv-00123-JSC Document 281-1 Filed 02/19/24 Page 363 of 397

3.      Company's Obligations

3.1.    Maintenance and Support

The Services shall include warranty, support and maintenance of the System as further detailed below, via support center.

The Company shall provide the End User with technical support for the System, consisting of: (a) first level to fourth level ("**Tier1 to Tier4**" as described in section 6.2) support via the Company's support center, and (b) SW updates and SW upgrades of the System, which, for the avoidance of any doubt, shall not be specifically adjusted to comply with any End-User Adjustments (as such term is defined in the Agreement which this SLA is attached to). The Services shall only be provided to the End User

System support and maintenance covers both SW and HW provided by the company. In case of 3rd party HW supplier, the company will contact the 3rd party and ensure proper support provided to the End User.

Maintenance will cover the following:

a. **SW upgrades** – periodical SW releases to add new features and bug fixes. Installing a new SW upgrade is communicated in advance to schedule the best time for the end-user and minimize the system downtime

b. **SW updates** – special SW packages provided to fix specific critical bug outside the periodical SW release. SW updates are also provided when a new OS version is introduced for a specific platform (e.g new iOS version).

c. **Monitoring system** – connected to our 24/7 NOC room and monitored around the clock. The monitoring system is configured to do the following:
   a. Connected to all the major HW components in the system, providing real-time status of the system.
   b. Monitors SW components such as tunnels, VPS servers alerting when any component goes down
   c. Checks for white accounts balances and alerts when it is below a predefined threshold

   For further details, see the enclosed "System monitoring capabilities and requirements" appendix.

d. **24/7 support** – A dedicated NOC center is operated to provide 24/7 support. Tickets can be submitted via phone call, dedicated website or email. The NOC representatives follow our support procedures to ensure each ticket is being handled according to the SLA.

End user should report issues with the system, using an agreed form or tool specifying all predefined data and providing all the required operational and technical information

The Company shall not be obligated to provide the Services in case of misuse, abuse, neglect, alteration, modification, improper installation of the System, use of the System for purposes other than those authorized by the Company, or repairs by anyone other than the Company or its authorized representatives without the Company prior written approval. The Company shall not be obligated to provide the Services in connection with the End-User Adjustments.

3.2.    Software Support

For End Users covered under a valid Support offering, Software Support will be provided pursuant to the terms of **Section 6 "Software Support Procedure"**. The scope of commitment

in case of System failure requiring a software repair or fix is to preserve the System at the fully functional condition as per the acceptance data of the System by the End User.

Software fixes are generally delivered in a secure format, delivered by the Company or in special occasions by the Reseller and/or the End User or third party partner if it is agreed for a particular case. In addition, permanent fixes are developed for known non-critical issues. These are incorporated into service pack updates that are periodically distributed. The version updates may include additional features, bug fixes and/ or services.

The Company agrees to provide Support, where appropriate to the End User, which may include but is not limited to, the following actions:

(a) Provide the End User with access to product update releases and related Documentation, upon general commercial release.

(b) Provide the End User with access to Technical Support Team representatives, who will work with the End User to diagnose issues, and provide Problem Resolutions, including escalating the issue as needed.

3.3.    Hardware Replacement

For End Users covered under a valid Support offering, the Company will use commercially reasonable efforts to provide Hardware replacement in accordance with the terms set forth in **Section 5 "Hardware Replacement Procedure"**. Provision of hardware Replacement is subject to the following limitations:

(a) The Company will provide Hardware Replacement for up to three (3) years after hardware installation at the End User's Site or according to standard Hardware in case of a 3rd party supplier.

(b) Hardware shall be repaired or replaced with same or similar products when needed, at the Company's discretion.

3.4.    On-site Hardware Support

For End Users covered under a valid Support offering, upon the End User's request, after the Company determines that the hardware issue is related to a malfunction of one of the hardware components, the Company will decide whether to dispatch a representative to the site.

**Provision of on-site support is subject to the following limitations:**

(a) On-site Hardware Support does not include on-site service for Software troubleshooting or any Software or training related issues.

(b) On-site Hardware Support service may not dispatch a representative on-site to perform Hardware replacement outside of the End User's Site address for the Hardware.

(c) On-site service response times may be dependent upon the End User's Site address for the Hardware, the timely arrival of replacement parts at the End User's Site, and accessibility to the Site.

3.5.    On-site Software Support

On-site Software Support applies only in cases of Severity 1 issues which can't be solved remotely (based on the Company's customer support staff judgment). After the Company confirms that the matter is a Severity 1 issue, the Company and the End User will work diligently, with highly skilled engineers to resolve the critical situation and to restore operation.



In case the criticality of the issue remains or no progress is made, the Company will decide whether to dispatch a representative to the End User's Site or use a partner Support representative.

3.6.     Exclusions

### Support does not include the following items or actions:

(a) Step-by-step installation of Software or Service Packs.

(b) On-site services (outside the ones described in this SLA), Professional Services, Managed Services, or Educational Services.

(c) Modification of software code, IT Network architecture changes, Security-policy configuration, Audits, or Security design.

### The Company shall have no obligation to Support:

(a) An altered, damaged, or modified product or any portion of the product incorporated with or into other software, hardware, or products not specifically approved in advance in writing by the Company.

(b) Product problems caused by the Reseller's and/or the End User's negligence, misuse, misapplication, or use of the product in a way other than as specified in the System user manual, or any other causes beyond the control of the Company.

(c) Product installed on any computer hardware that is not supported by the Company.

(d) Product not purchased from the Company.

(e) Products subjected to unusual physical or electrical stress, misuse, negligence or accident, or used in ultra-hazardous activities.

### The Company shall have no obligation to Support the End User if:

(a) Appropriate payment for Support has not been received by the Company and the Reseller and/or the End User is unable to show reasonable proof of such payment; or

(b) The End User's annual Support term has expired without renewal.



5.    Hardware Replacement Procedure

The Company uses equipment from leading vendors, surveillance, network servers and software remedies. With each manufacturer, the Company has a contract for Service and Customer technical support.

For End Users covered under a valid Support offering, the Company will provide the following Hardware Support:

(a) The Company will attempt to diagnose and resolve Hardware problems over the phone or via remote access. Upon determination that an issue is related to a malfunction of one of the Hardware components, the Hardware Replacement process will be initiated by the Company.

(b) The Company will either issue a replacement for the faulty part or a full Hardware product replacement.

(c) The Company will send the required hardware to the End User's Site location within thirty (30) business days of Hardware Replacement process initiation. The time to ship the required hardware is dependent also on the export procedures that the Company must comply with, as well as the import procedures on the End User's side.

(d) The End User must ship back the faulty Hardware product (or replaceable unit) suitably packaged, as specified by the Company in a letter shipped with the replacement, to a location designated by the Company.

(e) Return shipment of the faulty Hardware should be made within five (5) business days of the arrival of the replacement. Transportation costs for return shipment shall be borne by the End User.

(f) Transportation costs incurred in connection with the delivery of a repaired or replacement item to the End User by the Company shall be borne by the Company; provided, however, that if the Company determines, in its sole discretion, that the allegedly defective item is not covered by the terms and conditions of the Hardware Support described in this SLA or that a claim is made after the Hardware Support period expired, the cost of the repair or replacement by the Company, including all shipping expenses, shall be reimbursed by the End User.

(g) The Company shall have no obligation to Support and Replace Hardware not monitored by Monitoring Client installed on the System and connected to the Company's Technical Support Center.

**The Company shall have no obligation to Support:**

(a) An altered, damaged, or modified product or any portion of the product incorporated with or into other software, hardware, or products not specifically approved in writing by the Company.

(b) Product problems caused by the End User's negligence, misuse, misapplication, or use of the product other than as specified in the System user manual, or any other causes beyond the control of the Company.

(c) Products subjected to unusual physical or electrical stress, misuse, negligence or accident, or used in ultra-hazardous activities.

(d) Untrained personnel from the End User are operating the system.



6.     Software Support Procedure

(a) Upon initiation of initial contact with the Company's Technical Support Center, the End User must authenticate its identity by providing a valid **Security Code**. The Company shall have no obligation to provide Support if the End User does not provide the code.

(b) A Technical Support representative will validate the **Security Code** and start gathering details relevant to the question or issue. The Company shall have no obligation to provide Support services if the End User does not provide the relevant information.

(c) A unique Support Case number [**Trouble Ticket**] will be assigned and delivered to the End User either verbally or via email. This number will be used to track any given issue from initial contact to final Problem Resolution.

(d) If appropriate, an issue will be reproduced in the Company's labs. Additional testing and problem duplication may take place in a network laboratory environment. Further investigation, including additional troubleshooting or debugging activity may be required. Based on the results of the Test Lab investigation, an issue may be resolved, or, if an anomaly is identified, elevated to the appropriate Company's Team for final Problem Resolution.

(e) The Company agrees to use commercially reasonable efforts to work with the End User on Problem Resolution for an issue in accordance with the specifications of this SLA. Timely efforts must be made by all parties involved. If communication from the End User ceases without notice, after five (5) business days, the Company may, upon notice, close a Support Case due to inactivity on the part of the End User.

(f) The End User agrees to grant access via dedicated secured VPN tunnel, upon receiving a request from the Company for addressing issues reported by the End User. Thus, the Company will have access to the System for a limited period of time in order to reach Problem Resolution. The Company shall have no obligation to provide Support services if the End User does not provide the VPN connection to the System.

(g) The End User agrees to grant access via dedicated secured VPN tunnel, upon the Company's request, for the purpose of Software updates and upgrades or for fixing problems detected during the system operation. Thus, the Company will have access to the System for a limited period of time in order to update/upgrade the System. The Company shall have no obligation to apply any updates/upgrades if the End User does not provide the VPN connection to the System.

(h) The Company shall have no obligation to provide Support services if Internet access / 3G issues occur at the End User's Site.

**Exceptions**:

In some cases, the Company may not be able to resolve the issue until the access network is stable (for example when the service provider installs firewalls over a period of time or there is a poor 3G coverage or poor Internet access). In these cases, the Problem Resolution period will be paused until the network is stable again.

Opening a support ticket regarding authentication of an inbound roamer identity, will require the customer to provide a valid (activated) IMSI and MSISDN of the specific MNO from the specific country.

*Note:* System will present targets' information only if such information is available, based on global roaming agreements. SAI (Send Authentication Info) and MSISDN by IMSI, information may not be retrieved if target is hosted by an operator that blocks such queries or in lack of roaming agreements with the telecom gateway.

**Technical Support Center:**

For End Users covered under a valid Support offering, the Company will provide the following Software Support:



(a) The Company will provide the End User with access to the Company's Technical Support Center 24 hours a day, 7 days a week, 365 days a year.

(b) The Company will provide the End User with assistance in operating, managing and configuring the System as well as resolving any Software technical issues.

(c) The End User is able to submit an unlimited number of support cases by phone, email, and web (Case Management System).

6.1.    Support Levels and Support Level activities:

**Tier 1 Support** – Technical support that is provided by an Engineer trained by the Company. Support activities at this level should include basic software and hardware installations, upgrades, basic troubleshooting, configuration changes and/or operation optimization.

**Tier 2 Support** – Technical support level that is provided by a Field Service Engineer. Support activities at this level should include all Tier 1 activities, customization management, configuration changes and diagnostics or advanced troubleshooting.

**Tier 3 Support** – Technical support level that is provided by a Technical Support Specialist. Support activities at this level should include all Tier 1 and Tier 2 activities, in-depth System instructions, advanced diagnostics, and troubleshooting at R&D level. This level of support shall be initiated by a request to the System Support Team.

**Activities:**

(a) Providing initial client contact

(b) Establishing problem logs and tracking

(c) Providing "how to" support

(d) Determining if an issue is documented

(e) Maintaining configuration knowledge

(f) Working with the End User to duplicate and reproduce problems

(g) Providing internal problem determination and verification

(h) Performing remote diagnosis

**Tier 4 Support** – Technical support level that is provided by an R&D Engineer. Support activities at this level should include design level consultation and solutions, software R&D diagnostics, and high level of software and hardware fixes and solutions. This level support shall be initiated by a request to the Technical Support Team.

**Activities:**

(a) Isolating, tracking and fixing operational issues

(b) Working with the End User to duplicate and reproduce problems

(c) Technical evaluation and allocation of defect reports within R&D

(d) Providing system fixes if and when deemed necessary

(e) Performing remote diagnosis

(f) System upgrades

6.2.    Severity Levels

**Severity Level 1 - Critical Business Impact**: Complete System failure in which no field procedure resolves the reported issue. A problem has made a critical application function unusable or unavailable and no workaround exists.

**Severity Level 2 - Serious Business Impact**: The System is able to work, but is producing major errors in certain requests sent. A problem has made a critical application function unusable or unavailable but a workaround exists.



**Severity Level 3 - Minor Business Impact**: The system has problems, which do not affect its main functions. A problem has diminished critical or important application functionality or performance but the functionality still performs as specified in the user documentation.

(a) **For Severity Level 1**: the Company's System Support Team and the End User agree to dedicate full time and all the necessary resources to solve the case. Top priority is to restore/improve service, not to debug the problem.

(b) **For Severity Level 2 and 3**: the Company's System Support Team and the End User agree to use their technical resources in order to restore an acceptable level of service or bring relevant information

6.3.     Contacting the Technical Support Center

**Service Availability**: The services of the helpdesk shall be available by way of CRM tool, email, telephone at all times 24 hours a day, 7 days a week.

**Report of System failure:** The End User shall notify the Company in writing (via e-mail or CRM tool) using the "Customer Support Ticket" form, or by telephone promptly following the discovery of any verifiable and reproducible failure of the System. This SLA does not apply to bug reports or feature requests that are cosmetic or do not otherwise impair the operation of the System. Such bugs reports or feature requests are typically prioritized for handling in some future regularly scheduled product release.

**Email Support**

The Company's Technical Support Center responds to all support requests sent via email. Generally, this is used as a backup in case the End User is unable to access the Case Management System. Email: helpdesk@globalhelp.support

**Telephone Support**

The Company's support engineers are available by telephone to receive support requests.

Phone: +44-20-3695-4101

**Skype**

NOC-HelpDesk

**Contact Support via the web portal**

The end user can also open a ticket to the Company's Technical Support Center via a dedicated web portal that is connected to a CRM tool. Access is secured with a username and password which the Company will provide.

6.4.     Response Time and Resource Commitment

**Severity 1**

(a) Response Time: 1 hour
(b) Commitment – the Company and the End User will commit the necessary resources around the clock for Problem Resolution to obtain workaround or reduce the severity. Top priority is to



restore/improve service, not to debug the problem. If a workaround could not be provided, the task will be transferred to Supplier's R&D Team for further investigation.

**Severity 2**

(a) Response Time – 1 hour
(b) Commitment - the Company and the End User will commit the necessary resources during normal business hours for Problem Resolution to obtain workaround or reduce the severity. Top priority is to restore/improve service, not to debug the problem.

**Severity 3**

(a) Response Time – 4 hours
(b) Commitment – the Company's Technical Support Team and the End User agree to use their technical resources during normal business hours for Problem Resolution to obtain workaround or reduce the severity. Top priority is to restore an acceptable level of service or bring relevant information.

**NOTE**: In case of Hardware problems, the faulty parts will be shipped and time for shipment will be defined for each specific case. In case of severe software problems, the time for resolution will be defined on a case-by-case basis. The Company will use commercially reasonable efforts to provide Hardware replacement in accordance with the terms set forth in **Section 5 "Hardware Replacement Procedure"**.

6.5.   Resolution Time and Resource Commitment

**Severity 1**

(a) Resolution Time: 2 business days
(b) Commitment – the Company and the End User will commit the necessary resources around the clock for Problem Resolution to obtain workaround or reduce the severity. Top priority is to restore/improve service.

**Severity 2**

(a) Resolution Time – 10 business days
(b) Commitment - the Company and the End User will commit the necessary resources during normal business hours for Problem Resolution to obtain workaround or reduce the severity. Top priority is to restore/improve service.

**Severity 3**

(c) Resolution Time – the 2nd scheduled SW release
(d) Commitment – the Company's Technical Support Team and the End User agree to use their technical resources during normal business hours for Problem Resolution to resolve the issue in the next scheduled SW release. This will be communicated by the Company to the End user.

7. Clarifications

- The System will extract target 3G keys only if such information is available, based on global roaming agreements. This information may not be retrieved if the target is hosted by an operator that blocks such queries or in lack of roaming agreements with the telecom gateway.

- The System will not extract targets 3G keys from and in specific countries such as the USA and Israel.

- The installation of the system may involve the deployment of a dedicated SS7 telecom gateway at one or more of the mobile operators in the country. The End User shall be responsible for providing access and permissions to the sites where the equipment is to be installed, including the allocation of necessary space, power and ventilation required for the installation of the equipment.

- In case of a cloud-based implementation, i.e., no SS7 gateway implemented at a local telecom operator, billing records of targets may be affected and interception of incoming SMS will be restricted.

- Operating-wise, it is recommended that system queries be used with caution and on highly important cases, this in order to minimize risk of exceeding acceptable threshold in the foreign network for such activity.

The Company reserve the right to end the System's life upon a six months prior notice, with effect not before the lapse of 5 (five) years of a sale of a license to the System to the Reseller and/or the End User. Operation of the System during its life period is conditioned upon timely and full payment of maintenance and support fees during the entire period.

Exhibit 1

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
             antonio.perez@davispolk.com
             craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp Inc. and
Facebook, Inc.*

[Additional counsel listed on signature page.]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **STIPULATED PROTECTIVE ORDER** <br><br> Ctrm:    3 <br> Judge:   Hon. Phyllis J. Hamilton <br><br> Action Filed: October 29, 2019 |

WHEREAS, it may be necessary or desirable to take discovery of confidential, proprietary, or private information;

WHEREAS, the parties agree that a protective order is appropriate to prevent the dissemination and unnecessary disclosure of such information on the public record; and

WHEREAS, such information likely will include, among other things, information about sensitive products and/or services, proprietary design and development materials of products and/or services, source code, strategic decision-making information, and marketing and sales information;

IT IS HEREBY STIPULATED, and subject to the Court's approval, pursuant to Federal Rule of Civil Procedure 26(c), that the following provisions shall govern the handling of such confidential, proprietary, and other private information and documents in these proceedings.

1. <u>PURPOSES AND LIMITATIONS</u>

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting and defending this litigation may be warranted. Accordingly, the parties hereby stipulate to the following Stipulated Protective Order. The parties acknowledge that this Stipulated Protective Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 14.3 below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2. <u>DEFINITIONS</u>

2.1 <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Stipulated Protective Order.

-1-

2.2 <u>"CONFIDENTIAL" Information or Items</u>: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3 <u>Counsel (without qualifier)</u>: Outside Counsel of Record and House Counsel (as well as their support staff).

2.4 <u>Designated House Counsel</u>: House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information in this matter.

2.5 <u>Designated House Consultant</u>: a person with specialized technical expertise and current employee of a Party.

2.6 <u>Designating Party</u>: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.7 <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.8 <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.9 <u>"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items</u>: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.10 "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics, and technical data and logs related thereto; disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.11 House Counsel: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.12 Non-Party: any natural person, partnership, corporation, association, government, or other legal entity not named as a Party to this action (for the avoidance of doubt, at the time of entry of this Protective Order, United States Department of Justice shall be considered a Non-Party for purposes of this Protective Order).

2.13 Outside Counsel of Record: attorneys, as well as their employees, who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are employed by a law firm which has appeared on behalf of that party.

2.14 Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs), but not including entities that have appeared other than as a Plaintiff or Defendant, such as the United States Department of Justice, which appeared as an "Interested Party" with respect to Plaintiffs' Motion to Disqualify, or King & Spalding LLP, which appeared other than as Defendants' Outside Counsel of Record, but as a "Miscellaneous" Party with respect to Plaintiffs' Motion to Disqualify.

2.15 Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.16 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.17 <u>Protected Material</u>: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or as "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.18 <u>Receiving Party</u>: a Party that receives Disclosure or Discovery Material from a Producing Party.

3.    SCOPE

The protections conferred by this Stipulated Protective Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulated Protective Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Stipulated Protective Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. However, if the accuracy of information is confirmed only through the review of Protected Material, then the information shall not be considered to be in the public domain. For example, unsubstantiated media speculation or rumors that are later confirmed to be accurate through access to Protected Material are not "public domain" information. Such information is explicitly included in the definition of "Protected Material" set forth in Section 2.17 above. Any use of Protected Material at trial shall be governed by a separate agreement or order.

4.    <u>DURATION</u>

Even after final disposition of this litigation, the confidentiality obligations imposed by this Stipulated Protective Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1)

-4-

1     dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment

2     after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this

3     action, including the time limits for filing any motions or applications for extension of time pursuant

4     to applicable law and the time limits for filing a petition for writ of certiorari to the Supreme Court

5     of the United States, if applicable.

6     5.     <u>DESIGNATING PROTECTED MATERIAL</u>

7         5.1     <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or

8     Non-Party that designates information or items for protection under this Stipulated Protective Order

9     must take care to limit any such designation to specific material that qualifies under the appropriate

10     standards. To the extent it is practical to do so, the Designating Party must designate for protection

11     only those parts of material, documents, items, or oral or written communications that qualify – so

12     that other portions of the material, documents, items, or communications for which protection is not

13     warranted are not swept unjustifiably within the ambit of this Stipulated Protective Order.

14         Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown

15     to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily

16     encumber or retard the case development process or to impose unnecessary expenses and burdens on

17     other parties) expose the Designating Party to sanctions.

18         If it comes to a Designating Party's attention that information or items that it designated for

19     protection do not qualify for protection at all or do not qualify for the level of protection initially

20     asserted, that Designating Party must promptly notify all other parties that it is withdrawing the

21     mistaken designation.

22         5.2     <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Stipulated

23     Protective Order, or as otherwise stipulated or ordered, Disclosure or Discovery Material that

24     qualifies for protection under this Stipulated Protective Order must be clearly so designated before

25     the material is disclosed or produced.

26         Designation in conformity with this Stipulated Protective Order requires:

(a) <u>for information in documentary form</u> (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains Protected Material.

(b) <u>for testimony given in deposition or other pretrial or trial proceedings</u>, that the Designating Party either (1) identifies on the record or (2) identifies, in writing, within 21 days of receipt of the final transcript, that the transcript shall be treated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

Parties shall give the other parties notice if they reasonably expect a deposition or other pretrial or trial proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition or other pretrial or trial proceedings shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that was not designated on the record pursuant to subparagraph 5.2(b) above shall be treated during the 21-day period for designation as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety. After the expiration of that period or as of such earlier time that such transcript is designated, the transcript shall be treated only as actually designated.

(c) <u>for information produced in some form other than documentary and for any other tangible items</u>, that the Producing Party affix in a prominent place on the exterior of the container or

-6-

containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE."  If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

      5.3   <u>Inadvertent Failures to Designate</u>.  An inadvertent failure to designate qualified information or items does not waive the Designating Party's right to secure protection under this Stipulated Protective Order for such material.  Upon correction of a designation, the Receiving Party must make all reasonable efforts to assure that the material is treated in accordance with the provisions of this Stipulated Protective Order.

      In the event that Disclosure or Discovery Material that is subject to a "CONFIDENTIAL", "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY", or "HIGHLY CONFIDENTIAL – SOURCE CODE" designation is inadvertently produced without such designation, the Producing Party that inadvertently produced the document shall give written notice of such inadvertent production (the "Inadvertent Production Notice") and shall reproduce copies of the Discovery Material that contain the appropriate confidentiality designation.  Upon receipt of such Inadvertent Production Notice and reproduction of Discovery Materials, the Party that received the inadvertently produced document, material, or testimony shall promptly destroy the inadvertently produced document, material, or testimony and all copies thereof, or return such together with all copies of such documents, material, or testimony to counsel for the Producing Party. Should the Receiving Party choose to destroy such inadvertently produced document, material, or testimony, the Receiving Party shall notify the Producing Party in writing of such destruction within 14 days of receipt of written notice of the inadvertent production and reproduction of Discovery Materials.  This provision is not intended to apply to any inadvertent production of any document, material, or testimony protected by attorney-client or work product privileges.

6.     <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

    6.1     <u>Timing of Challenges</u>.  Any Party or Non-Party may challenge a designation of confidentiality at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

    6.2     <u>Meet and Confer</u>.  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Stipulated Protective Order.  The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

    6.3     <u>Judicial Intervention</u>.  If the Parties cannot resolve a challenge without court intervention, the Challenging Party shall file a motion to challenge confidentiality under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier.  Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph.  The burden of persuasion in any such challenge proceeding shall be on

the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. All parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7. ACCESS TO AND USE OF PROTECTED MATERIAL

7.1 Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation and associated appeals. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Stipulated Protective Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of Section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Stipulated Protective Order.

7.2 Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Stipulated Protective Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the Court and its personnel;

-9-

(e) court reporters and their staff;

(f) professional jury or trial consultants including mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order;

(h) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(i) any mediator who is assigned to this matter, and his or her staff, who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b) Designated House Counsel of the Receiving Party (1) who has no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed;

-10-

(c) Designated House Consultant of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed;

(d) Experts (as defined in this Stipulated Protective Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(3), below, have been followed;

(e) the Court and its personnel;

(f) court reporters and their staff;

(g) professional jury or trial consultants (including mock jurors who have signed a confidentiality agreement in the case of "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" Information or Items, but excluding mock jurors in the case of "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items), and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(h) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(i) any mediator who is assigned to this matter, and his or her staff, who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

7.4     Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Designated House Counsel, Designated House Consultant, and Experts.

(a)(1) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Designated House Counsel any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to paragraph 7.3(b) first must make a

written request to the Designating Party that (1) sets forth the full name of the Designated House Counsel and job title of the proposed recipient, and (2) describes the Designated House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision making. Any Designated House Counsel who receives "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information pursuant to this Order must disclose any relevant changes in job duties or responsibilities that occur prior to the date that is 60 days after final disposition of litigation, and must do so within seven days prior to such changes taking effect.

(a)(2) Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to a Designated House Consultant any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to Section 5, first must make a written request to the Designating Party that (1) sets forth the full name and job title of the proposed recipient, (2) describes the recipient's current and reasonably foreseeable future primary job duties and responsibilities and (3) identifies with particularity the information or item that the Party seeks to disclose to Designated House Consultant. Any Designated House Consultant who receives "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information pursuant to this Order must disclose any relevant changes in job duties or responsibilities that occur prior to the date that is 60 days after final disposition of litigation, and must do so within seven days prior to such changes taking effect.

(a)(3) Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Stipulated Protective Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to Section 5, first must make a written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information that the Receiving Party seeks permission to

disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the Expert has provided professional services, including in connection with a litigation, at any time during the preceding five years and the party to the litigation for whom such work was done, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.  With regard to the information sought through part (5) of this disclosure, if the Expert believes any of this information is subject to a confidentiality obligation to a third party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

(b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Designated House Counsel, Designated House Consultant, or Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party.  Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection.  If no agreement is reached, the Party seeking to make the disclosure to Designated House Counsel, Designated House Consultant, or the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court to do so.  Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to Designated House Counsel, Designated House Consultant, or the Expert is reasonably necessary, assess the risk of harm that the

-13-

1  disclosure would entail, and suggest any additional means that could be used to reduce that risk.  In

2  addition, any such motion must be accompanied by a competent declaration describing the parties'

3  efforts to resolve the matter by the agreement (i.e., the extent and the content of the meet and confer

4  discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve

5  the disclosure.  In any such proceeding, the Party opposing disclosure to the Expert shall bear the

6  burden of proving that the risk of harm that the disclosure would entail (under the safeguards

7  proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

8  8.     <u>PROSECUTION BAR</u>

9         Absent written consent from the Producing Party, any individual bound by this agreement

10  who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY

11  CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of

12  patents or patent applications relating to the subject matter of the suit as well as the subject matter of

13  the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL

14  – SOURCE CODE" information to which access is received, before any foreign or domestic agency,

15  including the United States Patent and Trademark Office ("the Patent Office").  For purposes of this

16  paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise

17  affecting the scope or maintenance of patent claims.  Prosecution includes, for example, original

18  prosecution, reissue, and reexamination and other post-grant proceedings.  To avoid any doubt,

19  "prosecution" as used in this paragraph does not include representing a party challenging a patent

20  before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte*

21  reexamination, *inter partes* reexamination, post grant review, covered business method patent

22  review, or *inter partes* review).  This Prosecution Bar shall begin when access to "HIGHLY

23  CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE

24  CODE" information is first received by the affected individual and shall end two (2) years after final

25  termination of this action.

26

27

28

9.     SOURCE CODE

(a) To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, and technical data and logs related thereto, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

(b) Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information including the Prosecution Bar set forth in Paragraph 8, and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" information may be disclosed, as set forth in Paragraphs 7.3 and 7.4.

(c) Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours (9:00 am to 6:00 pm local time) or at other mutually agreeable times, at an office of the Producing Party's Outside Counsel of Record (unless precluded by law) or another mutually agreed upon location.  The computer containing source code ("Source Code Computer") will be made available upon reasonable notice to the Producing Party, which shall not be less than five (5) business days in advance of the requested inspection.  The Source Code Computer shall be made available for inspection in a room without Internet access or network access to other computers ("Source Code Room"), and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.  Each day that source code

-15-

is viewed, all persons viewing source code shall sign a log that will include the names of all persons who enter the room to view the source code and the times when they enter and depart.

(d) The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary to attach to filings, pleadings, expert reports, or other papers, or for use as an exhibit at deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance.  Using the software available on the Source Code Computer, the Receiving Party shall create PDFs of the printed copies the Receiving Party is requesting and save them in a folder on the desktop named "Print Requests" with a subfolder identifying the date of the request.  The PDF printouts must include identifying information including the full file path and file name, page number, line numbers, and date.  The request for printed source code shall be served via an email request identifying the subfolders of the "Print Requests" folder that the Receiving Party is requesting.  Within five (5) business days of such request, the Producing Party shall provide one copy of all such source code on non-copyable paper including Bates numbers and the label "HIGHLY CONFIDENTIAL - SOURCE CODE."  If the request is served after 5:00 p.m. Pacific Time, it shall be deemed served the following business day.  The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure set forth in Section 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

(e) The Receiving Party shall maintain a log of all paper copies of the source code. The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored.  Upon one (1) day's advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.  The Receiving Party shall maintain all paper copies of any printed portions of the Source Code in a secured, locked area.  The Receiving Party shall not create any electronic or other images, or make electronic copies, of the source code from any paper copy of the source code for use in any manner (including by way of example only, the Receiving Party may not scan the source code to a PDF or

-16-

photograph it), and shall not convert any of the information contained in the paper copies into any electronic format.  Images or copies of source code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers.  The Receiving Party shall only request additional paper copies if such additional copies are (1) necessary to attach to court filings, pleadings, or other papers (including a testifying Expert's expert report), (2) necessary for deposition, or (3) necessary for trial.  The Receiving Party shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance.  To the extent a deposition is likely to involve source code, the Party taking the deposition shall provide at least seven (7) days written notice of that fact, and the Producing Party will make a source code computer available at the deposition, minimizing the need for additional paper copies of source code.  The Producing Party is not required to create a new Source Code Computer for the purpose of depositions.  Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

(f) The Producing Party shall install on the Source Code Computer tools that are sufficient for viewing the code produced. The Receiving Party's Outside Counsel and/or experts/consultants may request that commercially available software tools for viewing and searching source code be installed on the Source Code Computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the source code consistent with all of the protections herein. The Producing Party shall approve reasonable requests for additional commercially available software tools. The Receiving Party must provide the Producing Party with the CD, DVD, file path, or Advanced Package Tool package containing such licensed software tool(s) at least six business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.  The Producing Party shall make reasonable attempts to install the requested software but will not be held responsible for the proper setup, functioning, or support of

any software requested by the Receiving Party. By way of example, the Producing Party will not compile or debug software for installation.

(g) No recordable media or recordable devices, including, without limitation, sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Room.

(h) The Receiving Party's Outside Counsel and/or experts/consultants shall be entitled to take hand-written notes relating to the source code but may not copy the source code into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer.

(i) The Receiving Party's Outside Counsel and any person receiving a copy of any source code must maintain and store any paper copies of the source code at their offices in a manner that prevents duplication of or unauthorized access to the source code, including, without limitation, storing the source code in a locked room or locked cabinet at all times when it is not being reviewed. Absent good cause shown, no more than a total of five (5) persons identified by the Receiving Party, excluding Outside Counsel, shall have access to a Producing Party's source code.

10. **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

10.1 If a Party is served with a subpoena, discovery request, motion to disclose a Designating Party's information or court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE", that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena, discovery request, motion or court order;

(b) promptly notify in writing the party who caused the subpoena, discovery request, motion or order to issue in the other litigation that some or all of the material covered by the subpoena, discovery request, or order is subject to this Stipulated Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

-18-

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

   If the Designating Party timely seeks a protective order, the Party served with the subpoena, discovery request, or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the Court from which the subpoena, discovery request, or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

  10.2 The provisions set forth herein are not intended to, and do not, restrict in any way the procedures set forth in Federal Rule of Civil Procedure 45(d)(3) or (f).

11. <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

   (a) The terms of this Stipulated Protective Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Stipulated Protective Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

   (b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

    1. promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party; and

2. promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested.

(c) If the Non-Party fails to object or seek a protective order from this court within a reasonable period of time after receiving the notice and accompanying information, including but not limited to any contractual notice period in an agreement between the Producing Party and the Non-Party covering the confidentiality and/or disclosure of the information requested, the Producing Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Producing Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

12. <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Stipulated Protective Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

13. <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). A Producing Party may assert privilege or protection over produced documents at any time by notifying the Receiving Party in writing of the assertion of privilege or protection. In addition, information that contains privileged

-20-

matter or attorney work product shall be returned or destroyed immediately by the Receiving Party if such information appears on its face to have been inadvertently produced or if requested. After being notified, a Receiving Party must promptly return or destroy the specified information until the claim is resolved.

Pursuant to Federal Rule of Evidence 502(d) and (e), the inadvertent production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere inadvertent production of privileged or work-product-protected documents in this case as part of a production is not itself a waiver in this case or any other federal or state proceeding.

14.    MISCELLANEOUS

14.1    Right to Further Relief. Nothing in this Stipulated Protective Order abridges the right of any person to seek its modification by the Court in the future.

14.2    Right to Assert Other Objections. By stipulating to the entry of this Stipulated Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Stipulated Protective Order.

14.3    Export Control. [*To be determined.*]

14.4    Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file any Protected Material in the public record in this action. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(e) is denied by the court, then the Receiving Party may file the Protected

-21-

Material in the public record pursuant to Civil Local Rule 79-5(e)(2) unless otherwise instructed by the court.

14.5 <u>Privilege Logs</u>. The parties shall exchange their respective privilege logs at a time to be agreed upon by the parties following the production of documents, or as otherwise ordered by the Court.

15. <u>FINAL DISPOSITION</u>

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Outside Counsel of Record are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and Expert work product, even if such materials contain Protected Material, with the exception of paper copies of source code. Any such archival copies that contain or constitute Protected Material remain subject to this Stipulated Protective Order as set forth in Section 4 (DURATION).

DATED: August 28, 2020

DATED: August 28, 2020

By: /s/ Joseph N. Akrotirianakis

By: /s/Micah G. Block

Attorneys for Plaintiffs WhatsApp Inc. and Facebook, Inc.

Attorneys for Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited

**<u>FILER'S ATTESTATION</u>**

Pursuant to Civil L. R. 5-1(i)(3), regarding signatures, Micah G. Block hereby attests that concurrence in the filing of the document has been obtained from all of the signatories above.

Dated: August 28, 2020

/s/ Micah G. Block

Micah G. Block

* * *

IT IS SO ORDERED, this 31st day of August 2020.

HONORABLE PHYLLIS J. HAMILTON
United States District Judge

-23-

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHRN DISTRICT OF CALIFORNIA

WHATSAPP INC., a Delaware corporation,
and FACEBOOK, INC., a Delaware
corporation,

              Plaintiffs,

    v.

NSO GROUP TECHNOLOGIES LIMITED
and Q CYBER TECHNOLOGIES LIMITED,

              Defendants

Case No. 4:19-cv-07123-PJH

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____, declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California in the case of *WhatsApp Inc. and Facebook, Inc. v. NSO Group Technologies Limited and Q Cyber Techologies Limited*, Case No. 4:19-cv-07123-PJH. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order. I further agree to submit to the jurisdiction of the United States District Court for the Northern  District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.


Printed name: _____

Title: _____

Address: _____

Signature: _____

Date: _____