# Exhibit A

Sheri Pan (SBN 316136)
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile:  (415) 636-5965
sheri@zwillgen.com

Marc J. Zwillinger (*pro hac vice*)
Steven L. Lane (*pro hac vice*)
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298
marc@zwillgen.com
steven.lane@zwillgen.com

Attorneys for Foreign Non-Party
**The Citizen Lab**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, *et al.*,<br><br>Defendants. | Case No. 4:19-CV-07123-PJH<br><br>Hon. Phyllis J. Hamilton<br>United States District Judge<br><br>**FOREIGN NON-PARTY THE CITIZEN LAB'S PROPOSED OPPOSITION TO DEFENDANTS' MOTION FOR ISSUANCE OF LETTER ROGATORY**<br><br>Date: March 28, 2024<br>Time: 1:30pm<br>Courtroom: 3, 3rd floor |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND............................................................................................... 3

I.     Citizen Lab's Tangential Involvement in the Parties' Dispute ................................. 3

II.    NSO's Belated and Overbroad Discovery Requests to Citizen Lab ......................... 5

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ........................................................................................................................ 9

I.     Through Its Wildly Overbroad Requests, NSO Seeks Discovery
       That Is Not Relevant, Much Less Important, to the Litigation ................................. 9

II.    The Sought Discovery Imposes Impermissible and Undue Burdens
       on Citizen Lab ........................................................................................................ 13

III.   The Remaining *Richmark* Factors Warrant Denying NSO's Motion .................... 16

       A.  Factor 3: NSO Seeks Discovery Located Abroad ........................................... 16

       B.  Factor 4:  Defendants Already Possess Any Relevant, Proportional
           Discovery Involving Citizen Lab ................................................................... 16

       C.  Factor 5: Issuance of the Letter Rogatory Would Undermine
           Canadian Interests ......................................................................................... 17

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Actava TV, Inc. v. Matvil Corp.,*
    2021 ONCA 105 ................................................................................17-19

*Antamex Int'l, Inc. v. Zurich Am. Ins. Co.,*
    2022 WL 20679662 (D.N.J. Aug. 1, 2022) ............................................ 8

*Apple Inc. v. NSO Grp. Techs. Ltd.,*
    No. 3:21-CV-09078-JD (N.D. Cal.) .................................................... 13

*Apple Inc. v. NSO Grp. Techs. Ltd.,*
    2024 WL 251448 (N.D. Cal. Jan. 23, 2024) ...................................... 13

*Asis Internet Servs. v. Optin Glob., Inc.,*
    2007 WL 1880369 (N.D. Cal. June 29, 2007) ................................. 7, 9

*Bickley v. Schneider Nat., Inc.,*
    2011 WL 1344195 (N.D. Cal. Apr. 8, 2011)..............................13-14, 15

*Calixto v. Watson Bowman Acme Corp.,*
    2009 WL 3823390 (S.D. Fla. Nov. 16, 2009) ..................................... 7

*Campbell v. Facebook Inc.,*
    2015 WL 4463809 (N.D. Cal. July 21, 2015) ................................... 15

*Gardner v. Starkist Co.,*
    2021 WL 303426 (N.D. Cal. Jan. 29, 2021) ....................................... 7

*Globe and Mail v. Canada (Attorney General),*
    2010 SCC 41 ....................................................................................... 18

*Gonzales v. Google, Inc.,*
    234 F.R.D. 674 (N.D. Cal. 2006) ...................................................... 13

*In Re Apple, Inc.,*
    149 F. Supp. 3d 341 (E.D.N.Y 2016)........................................... 14, 15

*In re Bofi Holding, Inc. Sec. Litig.,*
    2021 WL 3700749 (S.D. Cal. July 27, 2021).................................... 12

*In re Rubber Chems. Antitrust Litig.,*
    486 F. Supp. 2d 1078 (N.D. Cal. 2007)............................................ 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    2011 WL 13147214 (N.D. Cal. Apr. 26, 2011)................................. 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ........................................................................... 7

*Int'l Swimming League, Ltd. v. Fed'n Internationale de Natation*,
    2020 WL 7042861 (N.D. Cal. Dec. 1, 2020) .............................. 9-10

*Luminati Networks Ltd. v. Code200, UAB*,
    2021 WL 2819457 (E.D. Tex. Feb. 1, 2021) ...................................... 7

*Merck Sharp & Dohme Corp. v. Sandoz, Inc.*,
    2013 WL 12203112 (D.N.J. June 7, 2013) ...................................... 10

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ......................................................................... 13

*Parent v. R.*,
    2014 QCCS 132 ................................................................................ 18

*Pearlstein v. BlackBerry Ltd.*,
    332 F.R.D. 117 (S.D.N.Y. 2019) ................................................ 9, 12

*R. v. National Post*,
    2010 SCC 16 .................................................................................... 18

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) ....................................... 8-10, 16-17

*Seoul Semiconductor Co. v. Nichia Corp.*,
    590 F. Supp. 2d 832 (E.D. Tex. 2008) .......................................... 7, 8

*Shopify (USA), Inc. v. Express Mobile, Inc.*,
    2019 WL 5893235 (N.D. Cal. Nov. 12, 2019) .................................. 8

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
    482 U.S. 522 (1987) ................................................................... 8, 17

*Viasat, Inc. v. Space Sys./loral, Inc.*,
    2013 WL 12061801 (S.D. Cal. Jan. 14, 2013) ......................... 7, 16, 17

Rules

Fed. R. Civ. P. 26 ..................................................................7-8, 12, 13, 17

Ontario *Rules of Civil Procedure* Rule 30.10.......................................18-19

Ontario *Rules of Civil Procedure* Rule 31.10.......................................... 19

Other Authorities

Raphael Satter, *AP Exclusive: Undercover Spy Exposed in NYC Was 1 of Many*,
AP News (Feb. 11, 2019), https://apnews.com/general-news-
9bdbbfe0c8a2407aac14a1e995659de4 ............................................................................................. 15

[PROPOSED] OPPOSITION TO MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

# PRELIMINARY STATEMENT[1]

The letter rogatory requested by Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") should not issue.  NSO seeks discovery that the Court has already determined to be an "ancillary part of this case" and that would impose unique burdens and harms both on Citizen Lab, a foreign non-party, and on the spyware victims who have participated as subjects in research studies with Citizen Lab.  The sprawling discovery NSO seeks on matters unrelated whatsoever to the present litigation suggests the letter rogatory is being requested for an improper purpose: either to gather information for unrelated litigation between NSO and other parties, or to prevent Citizen Lab and others from being able to detect and mitigate the effect of NSO's products.  In light of this Court's recent order concluding that communications between Plaintiffs and Citizen Lab postdating the complaint are irrelevant to the claims and defenses here (*see* ECF No. 292 at 5-6), NSO has not remotely carried its burden to justify the issuance of the proffered letter rogatory, which calls for information that post-dates the complaint and pertains to Citizen Lab's work with any person who was believed to have been targeted by Pegasus from 2016 to the present, even if such target was unrelated to WhatsApp systems.

Citizen Lab is, at most, a marginal player in the parties' dispute.  Over the course of a few months in 2019, Citizen Lab helped Plaintiffs identify users of some of the approximately 1,400 devices targeted by NSO and then notify those users that their devices may have been compromised.  When helping to identify those users, Citizen Lab relied on information given to it by WhatsApp and did not examine any of the 1,400 devices at issue in this case.  Moreover, Plaintiffs are not relying on Citizen Lab to identify NSO as responsible for the attack.  Plaintiffs also have already produced all responsive communications with Citizen Lab and have committed to work with Defendants to resolve outstanding document production disputes.  No further discovery from Citizen Lab is relevant, much less proportional to the needs of the case.  When NSO's discovery requests are further evaluated through the lens of comity, as they must, given

---

[1] Citizen Lab and its undersigned counsel represent that they have authored this brief.  No party or counsel for any party made any monetary contribution to fund the preparation or submission of this brief.

[PROPOSED] OPPOSITION TO MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

1    that Citizen Lab is a foreign nonparty over whom this Court lacks jurisdiction, the basis for NSO's

2    motion vanishes entirely.

3          NSO's arguments in favor of discovery fall flat.  In a flagrant distortion of the record, NSO

4    asserts that Plaintiffs "engaged" Citizen Lab "to investigate whether . . . certain WhatsApp service

5    users were targeted by use of Pegasus" and that Citizen Lab "agreed to investigate instances in

6    which Citizen Lab suspects Pegasus may have been installed on certain Targeted Devices."  Defs.'

7    Mot. for The Issuance of Letter Rogatory to The Ontario (Canada) Superior Court of Justice for

8    the Citizen Lab at The University of Toronto's Munk School of Global Affairs (the "Motion")

9    (ECF No. 288) at 1, 4.  NSO claims information about that purported investigation is discoverable.

10   But NSO's factual predicate is false: as NSO's own cited sources make clear, Citizen Lab

11   performed no analysis for Plaintiffs of whether Pegasus was installed on any Target Device.[2]

12         NSO also claims it needs extensive discovery, spanning *eight years*, about Citizen Lab's

13   work on Pegasus and NSO that is *entirely unrelated* to the allegations here.  NSO claims this

14   information goes to the reliability of Citizen Lab's investigative methods, including for identifying

15   members of civil society.  But NSO's position is flawed several times over.  Because WhatsApp

16   did not rely on Citizen Lab to attribute the hack here to NSO, Citizen Lab's analyses of NSO's

17   involvement in other hacks, and the reliability of those analyses, are wholly irrelevant.  NSO also

18   cannot explain why extensive discovery about *any* entity's views, including Citizen Lab's, about

19   the composition of "civil society" is relevant, material, or proportional here.  It is not.  As this

20   Court conclusively held, Plaintiffs' "'civil society' allegation appears to be an ancillary part of this

21   case – rather than relating to one of the elements of the asserted claims or defenses in this case."

22   *See* Order (ECF No. 292) at 6.

23         The consequences of permitting NSO's overreach are grave.  NSO seeks, among other

24   things, information about how Citizen Lab identifies victims of NSO's exploits and Citizen Lab's

25   communications with those victims.  That information, which has nothing to do with the claims

26   and defenses here and is generally protected by confidentiality agreements with research subjects,

27

28   _____
     [2] Capitalized terms not otherwise defined have the meanings assigned in Plaintiffs' complaint.

would expose those victims to a concrete risk of harm and harassment.  Its disclosure would also impose an impermissible and existential burden on a foreign non-party by threatening to chill all of Citizen Lab's future work to help victims detect and deter spyware attacks by perpetrators such as NSO.  If ultimately permitted, the discovery NSO seeks would require Citizen Lab to turn over all of its research and development to the makers of the spyware that Citizen Lab is trying to detect.  That is tantamount to permitting a burglar to seek discovery from an alarm company to learn about each and every time the alarm company has detected a theft so the burglar can better defeat the alarm systems in the future.  The information NSO seeks from Citizen Lab lies far outside the bounds of permissible discovery, both under the Federal Rules of Civil Procedure and well-established principles of international comity.  NSO's motion for the issuance of a letter rogatory as to Citizen Lab should be denied.

## **RELEVANT BACKGROUND**

### I.     **Citizen Lab's Tangential Involvement in the Parties' Dispute**

As Plaintiffs have explained, Citizen Lab's only involvement in this matter was to work with Plaintiffs "to assist in identifying some of the Target Users," and to notify those users that NSO may have compromised their mobile devices. Pls.' Opp. to Defs.' Mot. to Compel (ECF No. 250) at 2.  Based on information that Plaintiffs provided, Citizen Lab determined that the Target Users included attorneys, journalists, human rights activists, and government officials. *See id.* "Citizen Lab's work to identify Target Users and notify those users of NSO's attack concluded before Plaintiffs filed their complaint on October 29, 2019." *Id.*  Plaintiffs, moreover, "have produced all communications between Plaintiffs and Citizen Lab relevant to Citizen Lab's role related to the case, which occurred entirely before the complaint was filed." *Id.* at 5.  Critically, "Plaintiffs did *not* rely on Citizen Lab to identify NSO as responsible for the unauthorized access and abuse of WhatsApp's computers, nor did Plaintiffs 'hire' Citizen Lab." *Id.* (emphasis added).[3]

---

[3] NSO cites one document to suggest Citizen Lab had an "independent" opinion that NSO was responsible for the attack at issue whereas Plaintiffs were less confident about that matter. *See* Mot. at 4 (citing ECF No. 257-3, Ex. F).  To the extent accurate, that dynamic indicates that Plaintiffs were *not* relying on Citizen Lab's analysis attributing NSO to the attack here.

[PROPOSED] OPPOSITION TO MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

1    *Contra* Mot. at 6 (alleging Citizen Lab had a "pivotal" role in "investigating alleged installation

2    of Pegasus on Targeted Devices").

3         Undeterred, NSO claims Plaintiffs "produced three agreements, pursuant to which Citizen

4    Lab agreed to investigate instances in which Citizen Lab suspects Pegasus may have been installed

5    on certain Targeted Devices." Mot. at 4. NSO cites generically to those agreements without any

6    pin-citations. The reason is clear: ***nothing*** in those documents reflects an agreement between

7    Citizen Lab and Plaintiffs for Citizen Lab to "investigate instances in which Citizen Lab suspects

8    Pegasus may have been installed on certain Targeted Devices." Instead, the agreements

9    established the terms by which WhatsApp would disclose information about Target Users to

10   Citizen Lab and by which Citizen Lab would advise and support WhatsApp in its efforts to engage

11   with certain users about the incident and assist those users in mitigating the impact of the incident.

12        NSO later asserts that Plaintiffs' "***document production*** illuminates that Citizen Lab has

13   information relevant to Plaintiffs' allegations . . . that Pegasus was in fact installed on the Targeted

14   Devices." Mot. at 5 (emphasis added). Yet NSO fails to cite a single produced document for that

15   proposition. Instead, NSO cites Plaintiffs' amended initial disclosures, whose content NSO

16   misdescribes. Whereas NSO repeatedly asserts that those initial disclosures "identify Citizen Lab

17   as a witness ***having information*** 'relevant to the identification of [NSO] as responsible for

18   unauthorized access and abuse of the WhatsApp service' that Plaintiffs may seek to use to support

19   their claims in the litigation" (Mot. at 4 (emphasis added)), the disclosures state only that "The

20   Citizen Lab ***may have information***" about that subject (*see* ECF No. 239-4 at 17 (emphasis

21   added)). In any event, Plaintiffs "have already produced 5,026 internal communications and

22   hundreds of technical documents showing ***Plaintiffs'*** real-time attribution of the attack to NSO."

23   Pls.' Opp. to Defs.' Mot. to Compel (ECF No. 250) at 7 (emphasis added).

24        Setting aside Citizen Lab's non-involvement in the investigation of any devices in this

25   matter, the one area where Citizen Lab played a role—identifying victims as members of civil

26   society—has already been determined to be ancillary to the case. Precisely one sentence in the

27   complaint alleges that "[t]he Target Users included attorneys, journalists, human rights activists,

28   political dissidents, diplomats, and other senior foreign government officials." Compl. ¶ 42. And

4

1  that single sentence does not relate to a necessary element of the claim or an asserted defense, as

2  this Court recently held in denying Defendants' motion to compel further discovery from Plaintiffs

3  about their communications with Citizen Lab.  The Court pointed out that "defendants have not

4  explained how the 'civil society' allegation relates to any of the specific three causes of action that

5  remain operative in the case, or any of the specific affirmative defenses asserted in response."

6  Order (ECF No. 292) at 6.  Rather, far from being a "core allegation" in this litigation, the Court

7  concluded that Plaintiffs' "civil society" allegation is merely "an ancillary part of this case," as

8  Defendants themselves acknowledged in their motion to compel discovery on this issue from

9  Plaintiffs.  *Id.*  That same discovery topic is even less appropriate when directed at a foreign non-

10  party.  But as set forth more fully below, the bulk of the discovery NSO seeks through its proposed

11  letter rogatory either relates to that topic, or to Citizen's Lab work with victims of NSO spyware

12  that is unrelated to the claims Plaintiffs have brought here.  *See* Mot. at 9 ("The documents and

13  testimony sought by the requested letter rogatory are directly relevant to explore Citizen Lab's

14  findings which allegedly support Plaintiffs' allegations that Pegasus has been abused to target

15  'civil society' . . . .").

16  **II.    NSO's Belated and Overbroad Discovery Requests to Citizen Lab**

17  A full *year* after the case reactivated in this Court, and mere weeks before the previous

18  fact-discovery deadline, NSO's counsel first attempted to seek discovery from Citizen Lab that it

19  now describes as "critical."  Mot. at 6.  NSO's counsel contacted Citizen Lab directly to ask if it

20  would voluntarily provide documents and testimony in this matter.  *See* Decl. of Aaron S. Craig in

21  Support of [Defendants'] Motion for Issuance of Letter Rogatory to The Ontario Superior Court

22  of Justice for The Citizen Lab at The University of Toronto's Munk School of Global Affairs

23  ("Craig Decl.") (ECF No. 288-2), Ex. 1.  Counsel for Citizen Lab responded the following day

24  asking NSO's counsel to treat Citizen Lab as a represented party and stating that, "[s]hould your

25  client decide to pursue letters rogatory, we intend to resist their recognition in Ontario as overbroad

26  and inconsistent with our domestic discovery regime."  Craig Decl., Ex. 2.  In response, NSO's

27  counsel asked Citizen Lab to confirm if it "will not provide any document(s) or make any

28  witness(es) available for deposition" absent letters rogatory.  *See id.*  Counsel for Citizen Lab

1   "confirm[ed] that the Citizen Lab and the University will provide documents or testimony in

2   response to U.S. legal process only to the extent required to do so under Canadian law."  *See id.*

3          Through its proposed letter rogatory, NSO seeks expansive document discovery and

4   deposition testimony from Citizen Lab almost exclusively on matters ancillary or entirely

5   unrelated to this litigation.  NSO's document requests rely on several expansive definitions[4] and

6   seek documents over an *eight-year period* relating to, *inter alia*, Citizen Lab's investigation of *any*

7   devices on which Pegasus was installed at any time (beyond the 1,400 devices at issue here); the

8   identity of the users of those devices; communications with those users; and Citizen Lab's analysis

9   of whether those users were members of civil society.  *See generally* Proposed Letter Rogatory to

10  The Ontario Superior Court of Justice (ECF No. 288-1), Schedule A.  NSO's proposed deposition

11  topics are equally sprawling.  *See id.*, Schedule B.  Only one document request and deposition

12  topic are arguably limited to Citizen Lab's role in this matter.  *See id.* at Schedule A, Request No.

13  1 (seeking "All Documents and Communications relating to any analysis, investigation, or other

14  work performed, and any recommendations made, pursuant to any of" five agreements between

15  affiliates of Plaintiffs and Citizen Lab); *see id.* at Schedule B, Topic No. 1 (similar).  But Plaintiffs

16  have already "produced all communications between Plaintiffs and Citizen Lab relevant to Citizen

17  Lab's role related to the case," Pls.' Opp. to Defs.' Mot. to Compel (ECF No. 250) at 5, and have

18  agreed to work with Defendants to address alleged gaps in their production, *see* Order (ECF No.

19  292) at 5-6.

20

21

---

22  [4] To take just a few examples, "Citizen Lab" is defined to include "current and former employees,
    director(s), staff and research fellows, researchers, research fellows, and PhD candidates and post-

23  doctoral fellows."; "Meta" means "Plaintiff Meta Platforms, Inc., including its predecessors
    (including Facebook, Inc.), successors, subsidiaries, and parents, and agents, attorneys,

24  contractors, employees, and representatives of any of the foregoing."  And the term "relating to"
    means "in any way, directly or indirectly, alluding to, amending, assisting with, canceling,

25  commenting upon, comprising, concerning, confirming, considering, constituting, contradicting,
    describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying,

26  pertaining to, qualifying, referring to, regarding, relevant to, representing, revoking, setting forth,
    showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving

27  the subject matter of the specified request."

28

[PROPOSED] OPPOSITION TO MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

## **LEGAL STANDARD**

This Court has the discretion and inherent authority to issue a letter rogatory. *See Asis Internet Servs. v. Optin Glob., Inc.*, No. C-05-05124 JCS, 2007 WL 1880369, at \*3 (N.D. Cal. June 29, 2007). A letter rogatory or letter of request "is the request by a domestic court to a foreign court to take evidence from a certain witness." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004). A letter rogatory may also be used to request the production of documents. *See Asis*, 2007 WL 1880369, at \*3.

In considering whether to issue a letter rogatory, a "court should determine both whether the discovery sought falls within the scope of discovery authorized by the Federal Rules [of Civil Procedure], as well as whether considerations of comity warrant the requested discovery." *Viasat, Inc. v. Space Sys./loral, Inc.*, No. 12-CV-0260-H (WVG), 2013 WL 12061801, at \*4 (S.D. Cal. Jan. 14, 2013); *see also Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 WL 3823390, at \*18 (S.D. Fla. Nov. 16, 2009) (same); *Seoul Semiconductor Co. v. Nichia Corp.*, 590 F. Supp. 2d 832, 834 (E.D. Tex. 2008) (same); *Luminati Networks Ltd. v. Code200, UAB*, No. 2:19-CV-00396-JRG, 2021 WL 2819457, at \*1 (E.D. Tex. Feb. 1, 2021) ("Courts consider five [comity] factors in assessing the propriety of issuing a Letter Rogatory"). Although some courts in this district have suggested that the party resisting the issuance of a letter rogatory must show good cause for the letter not to issue, *see, e.g., Gardner v. Starkist Co.*, No. 19-CV-02561-WHO, 2021 WL 303426, at \*2 (N.D. Cal. Jan. 29, 2021), good cause exists when the discovery sought, as here, lies beyond the scope of permissible discovery, *see Asis*, 2007 WL 1880369, at \*3-4.

Under the Federal Rules, nonprivileged matter is discoverable only if it is "relevant to any party's claim or defense" and "proportional to the needs of the case," a standard that considers "the importance of the discovery in resolving the issues" and "whether the burden . . . of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Also under Rule 26, the Court *must* limit the requested discovery if it "can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ P.

1    26(b)(2)(C).  In addition, Rule 26(c) empowers courts to, for good cause, "issue an order to protect

2    a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

3         Comity considerations are also integral to an analysis of whether a letter rogatory should

4    issue.  The Supreme Court has directed lower courts to "exercise special vigilance to protect

5    foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place

6    them in a disadvantageous position." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*

7    *for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).  Accordingly, the Ninth Circuit's longstanding

8    teaching that "nonparties subject to discovery requests deserve extra protection from the courts,"

9    *Shopify (USA), Inc. v. Express Mobile, Inc.*, No. 19-MC-80251-TSH, 2019 WL 5893235, at *2

10   (N.D. Cal. Nov. 12, 2019) (citation omitted), holds true especially for *foreign* non-parties.  *See*

11   *Seoul*, 590 F. Supp. 2d at 834–35 (concluding that, "when requesting burdensome discovery from

12   a [foreign] citizen, the Supreme Court's policy as articulated in *Societe Nationale Industrielle*

13   *Aerospatiale* favors placing the burden on the party requesting discovery" to "not only show why

14   the request is relevant, but also why it is not unduly burdensome to a foreign party"); *see also*

15   *Antamex Int'l, Inc. v. Zurich Am. Ins. Co.*, No. 20-15232 (JHR/AMD), 2022 WL 20679662, at *6

16   (D.N.J. Aug. 1, 2022) (noting that moving party had failed to "address any of the *Societe Nationale*

17   [comity] factors to support their request for issuance of a letter of request for [a foreign nonparty's]

18   deposition" and concluding that "principles of international comity do not support Plaintiffs'

19   request at this time"), *reconsideration denied*, No. 20-15232 (JHR/AMD), 2022 WL 20679664

20   (D.N.J. Nov. 9, 2022).

21        In this Circuit, courts consider several factors in any comity analysis.  *See Richmark Corp.*

22   *v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992).  They are primarily: **(i)** the

23   importance to the investigation or litigation of the documents or other information requested;

24   **(ii)** the degree of specificity of the request; **(iii)** whether the information originated in the United

25   States;  **(iv)** the availability of alternative means of securing the information; and **(v)** the extent to

26   which noncompliance with the request would undermine important interests of the United States,

27   or compliance with the request would undermine important interests of the state where the

28

[PROPOSED] OPPOSITION TO MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

information is located.  *See id.* at 1475–76.  Courts consider two additional factors[5] when a foreign entity is already subject to the court's jurisdiction and the court is faced with the decision whether, as a matter of comity, to compel that entity's compliance with discovery orders under the Federal Rules of Civil Procedure or instead rely on a form of international process.  Here, however, Citizen Lab is not subject to this Court's jurisdiction, as NSO concedes, so the only means to potentially obtain discovery from Citizen Lab is through the letter rogatory process.  *See* Mot. at 9; Proposed Letter Rogatory to The Ontario Superior Court of Justice (ECF No. 288-1), at 6.

Because the *Richmark* factors overlap with the discovery standards under the Federal Rules, Citizen Lab addresses them together.

## ARGUMENT

## I.   Through Its Wildly Overbroad Requests, NSO Seeks Discovery That Is Not Relevant, Much Less Important, to the Litigation

NSO makes scant effort to tether its exceedingly broad requests for discovery from Citizen Lab to the complaint's allegations.  The information NSO seeks from Citizen Lab is not relevant under Rule 26, let alone sufficiently important to warrant discovery under *Richmark*.  This Court, moreover, has already ruled that much of the information NSO now seeks from Citizen Lab is neither relevant nor discoverable from Plaintiffs.  That ruling applies with greater force to NSO's efforts to obtain the same or similar information from a foreign entity that is not a party to this litigation.

Although relevance under Rule 26 is a broad standard, it is not "unlimited."  *See Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 121 (S.D.N.Y. 2019), *on reconsideration in part*, No. 13-CV-07060 (CM)(KHP), 2019 WL 5287931 (S.D.N.Y. Sept. 20, 2019); *see also Asis*, 2007 WL 1880369, at *3-4; *Int'l Swimming League, Ltd. v. Fed'n Internationale de Natation*, No. 18-CV-07394-JSC, 2020 WL 7042861, at *3 (N.D. Cal. Dec. 1, 2020) (denying motion to issue letters rogatory as to

---

[5] Those factors are the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, and the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.  *See Richmark*, 959 F.2d at 1475.

document requests that sought "marginally relevant" information and therefore "d[id] not warrant the burden on a third party").  And, as here, when discovery is sought from a foreign non-party, the question under *Richmark* and its progeny is whether the outcome of the litigation will "stand or fall" on the sought discovery.  *Richmark*, 959 F.2d at 1475.  *See also In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007) ("Here, plaintiff has failed to persuade me of the importance of the EC documents."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-CV-01827-SI, 2011 WL 13147214, at *4 (N.D. Cal. Apr. 26, 2011) ("Case law teaches that where the disputed documents are cumulative or not 'outcome-determinative' or 'directly relevant,' a court should be cautious about requiring disclosure in the face of comity objections.").  Accordingly, "where the relevancy or materiality of the testimony sought is doubtful, the court should not grant the application for letters rogatory."  *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, No. CV 12-3289 (PGS), 2013 WL 12203112, at *3 (D.N.J. June 7, 2013) (citation omitted).

NSO's discovery requests are irrelevant, facially overbroad, and plainly not geared towards eliciting outcome-determinative information.  Several examples illustrate the point:

- NSO seeks documents over an eight-year period, from January 1, 2016 through the present—even though Citizen Lab's work with Plaintiffs to identify and notify certain Target Users took place during a few months in 2019.  *See* Proposed Letter Rogatory to The Ontario Superior Court of Justice (ECF No. 288-1), Schedule A.

- NSO seeks "[a]ll documents and communications relating to the security vulnerability in the WhatsApp communication service described in CVE-2019-3568 (as referenced in paragraphs 25 and 44 of the WhatsApp Complaint)"—even though Plaintiffs did not rely on Citizen Lab to identify NSO as responsible for the unauthorized access and abuse of WhatsApp's computers.  *See* Proposed Letter Rogatory to The Ontario Superior Court of Justice (ECF No. 288-1), Schedule A, Document Request No. 3; *see also id.* at Schedule B, Deposition Topic No. 4.

- NSO seeks deposition testimony about "[a]ny analysis, investigation, or other work performed by Citizen Lab relating to any security vulnerability or other vulnerability in any communication service, website, computer or mobile application or platform offered

10

by Meta"—even though NSO concedes that Plaintiffs' claims relate to a specific security vulnerability exploited during a "specific, narrow timeframe" and even though, again, Plaintiffs did not rely on Citizen Lab to identify NSO as responsible for the unauthorized access and abuse of WhatsApp's computers.  *See id.* at Schedule B, Deposition Topic No. 5; *see also* Defs.' Opp. to Pls.' Mot. to Compel (ECF No. 252) at 6.

- NSO seeks information about "any electronic device upon which you and/or, to your knowledge, any representative of Citizen Lab believe, or at any time believed, Pegasus was installed"—even though NSO admits Plaintiffs' claims are "expressly limited" to "a specific use of a specific technology" against "specifically defined set of WhatsApp users" during a limited time frame.  *See* Proposed Letter Rogatory to The Ontario Superior Court of Justice (ECF No. 288-1), Schedule A, Document Request No. 4; *see also id.* at Schedule B, Deposition Topic No. 5; *see also* Defs.' Opp. to Pls.' Mot. to Compel (ECF No. 252) at 6.

- NSO likewise seeks information about Citizen Lab's identification of and communications with users of *any* electronic devices on which Citizen Lab believed Pegasus was installed, and its analysis of whether those users were members of civil society—even though Plaintiffs' claims here are limited to the 1,400 Target Devices.  *See* Proposed Letter Rogatory to The Ontario Superior Court of Justice (ECF No. 288-1), Schedule A, Document Request Nos. 5-8; *see also id.* at Schedule B, Deposition Topic Nos. 7-8.

This Court's recent ruling denying NSO's motion to compel further discovery from Plaintiffs establishes that the bulk of the discovery NSO now seeks from Citizen Lab is irrelevant and plainly not aimed at obtaining outcome-derivative information.  According to NSO, the documents and testimony it now seeks are "highly relevant to explore Citizen Lab's findings which allegedly support Plaintiffs' allegations that Pegasus has been abused to target civil society."  Mot. at 3.  But Plaintiffs' complaint includes only one sentence alleging that certain Target Users included "attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials."  Compl. ¶ 42.  And, more importantly, this Court has already squarely rejected Defendants' contention that Plaintiffs' "civil society" allegation is a "core" part of the case,

[PROPOSED] OPPOSITION TO MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

observing that "defendants have not explained how the 'civil society' allegation relates to any of the specific three causes of action that remain operative in the case, or any of the specific affirmative defenses asserted in response."  Order (ECF No. 292) at 6.  Instead, because "the 'civil society' allegation appears to be an ancillary part of this case," the Court concluded that discovery of information bearing on whether some users of the 1,400 devices at issue in the complaint belong to civil society is irrelevant and therefore unwarranted under Rule 26(b)(1).  *See id.* at 5-6.  Moreover, NSO has already received Plaintiffs' communications with Citizen Lab about Citizen Lab's assistance to Plaintiffs in identifying and in notifying certain Target Users.  Given the minimal relevance of Citizen Lab's views on the boundaries of "civil society" and the extensive information NSO has already received about that subject in connection with the allegations here, the Court should not countenance NSO's demand for further discovery from foreign non-party, Citizen Lab, on that ancillary question, which amounts to an attempted end-run around the Court's ruling that such information is not discoverable.

NSO claims Citizen Lab's technical work concerning NSO and Pegasus—but unrelated to the allegations here—is relevant because it purportedly goes to the reliability of Citizen Lab's investigative methods and conclusions, as well as Citizen Lab's purported bias against NSO.  *See, e.g.*, Mot. at 2, 3.  But NSO's argument rests on the false premise that Plaintiffs relied on Citizen Lab for any technical analysis of the 1,400 devices at issue here.  They did not.  As a result, Citizen Lab's technical and analytical methods with respect to NSO or Pegasus generally (and the reliability of those methods, including whether they reflect any purported bias) have no bearing on the claims and defenses here.  *Cf. Pearlstein*, 332 F.R.D. at 121 (discovery from a non-party about a "different type of product" than the one at issue in the complaint was not proportional to the needs of the case); *see also In re Bofi Holding, Inc. Sec. Litig.*, 2021 WL 3700749, at *5 (S.D. Cal. July 27, 2021) (concluding that party's asserted need to "test the reliability" of witness statements did not excuse party's underlying obligation demonstrate the relevance of communications between witnesses and plaintiffs).  In any event, as Plaintiffs have explained, NSO is free to test the reliability of any Citizen Lab analysis it may believe is relevant using documents in the public

[PROPOSED] OPPOSITION TO MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

1  record, the extensive record developed here, and NSO's own data.  *See* Pls.' Opp. to Defs.' Mot.

2  to Compel (ECF No. 250) at 6.

3        Given the lack of a logical explanation for why discovery of Citizen Lab's investigation of

4  unrelated Pegasus victims is needed here, NSO's attempt to seek such discovery may be motivated

5  by the desire to seek an advantage in a different litigation, which is yet another reason to deny

6  NSO's motion.  *See* Fed. R. Civ. P. 26(g)(1)(B)(ii) (discovery requests may "not be interposed for

7  any improper purpose").  NSO is facing claims similar to those here in a case brought by Apple

8  Inc.  *See Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-CV-09078-JD (N.D. Cal.).  Unlike the

9  complaint here, Apple's complaint at least references Citizen Lab's analysis of an NSO exploit in

10  2021.  *See id.*, Complaint ¶ 48, ECF No. 1.  Recently, the *Apple* court denied NSO's motion to

11  dismiss, *see id.*, 2024 WL 251448 (N.D. Cal. Jan. 23, 2024), and NSO has since answered the

12  complaint, *see id.*, ECF No. 89.  Accordingly, NSO's demand *here* for sweeping discovery from

13  Citizen Lab about its work related to NSO and Pegasus, but unrelated to Plaintiffs' allegations,

14  suggests an abuse of the letter rogatory process.  *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*,

15  437 U.S. 340, 352 n.17 (1978)) ("[W]hen the purpose of a discovery request is to gather

16  information for use in proceedings other than the pending suit, discovery properly is denied.").

17  **II.    The Sought Discovery Imposes Impermissible and Undue Burdens on Citizen Lab**

18        NSO's proposed letter rogatory seeks highly proprietary and victim-related information that

19  threatens Citizen Lab's continued operations.  Under Rule 26, in addition to assessing relevance,

20  the Court must also examine whether "the burden . . . of the proposed discovery outweighs its likely

21  benefit."  Fed. R. Civ. P. 26(b)(1).  Here, the burden to Citizen Lab should not be measured solely

22  in terms of the expenses related to collecting eight years' worth of information that would be

23  responsive to NSO's wide-ranging discovery requests, but also its overall effect on Citizen Lab's

24  operations.  *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) (non-party

25  subpoena recipient's potential loss of goodwill that would result from subpoena compliance was a

26  cognizable burden); *Bickley v. Schneider Nat., Inc.*, No. C 08-5806 JSW JL, 2011 WL 1344195, at

27  *4 (N.D. Cal. Apr. 8, 2011) (quashing subpoenas directed towards plaintiffs' former employers

28  when permitting the subpoenas would have burdened plaintiffs' privacy rights and had a "chilling

1  effect" on plaintiffs' future employment prospects); *cf. In Re Apple, Inc.*, 149 F. Supp. 3d 341, 371-

2  73 (E.D.N.Y 2016) (rejecting notion that burden on third parties is limited to unreimbursed financial

3  costs).

4       Citizen Lab is based at the University of Toronto.  As described on the home page of its

5  website, Citizen Lab's mission includes: "investigating digital espionage against civil society,

6  documenting Internet filtering and other technologies and practices that impact freedom of

7  expression online, analyzing privacy, security, and information controls of popular applications, and

8  examining transparency and accountability mechanisms relevant to the relationship between

9  corporations and state agencies regarding personal data and other surveillance activities."[6]

10      In no uncertain terms, NSO seeks all of Citizen Lab's documents and communications

11  between 2016 and 2024 (and related testimony) concerning Citizen Lab's efforts to identify and

12  communicate with any user whose devices Citizen Lab believes have been compromised by

13  Pegasus.  NSO also seeks documents and communications (and related testimony) about any

14  analysis, investigation, or other work Citizen Lab has performed to attempt to determine whether

15  Pegasus was installed on any electronic device.  In effect, NSO seeks the entirety of Citizen Lab's

16  proprietary research and analysis as it relates to NSO as well as the identities of all individuals whose

17  devices Citizen Lab believes have been impacted by Pegasus.

18      Setting aside that that information has no connection to the litigation here, its disclosure would

19  subject Citizen Lab to burdens fundamentally different in kind from those ordinarily borne by non-

20  parties subject to discovery requests.  That is because NSO is openly hostile to Citizen Lab, which

21  it clearly views as a threat because Citizen Lab detects NSO software and warns the public about its

22  activities.  In its motion, NSO paints Citizen Lab as having pursued a "highly critical media and

23  investigative campaign against NSO and Pegasus" and "authored numerous publications, stretching

24  back at least to 2016 and continuing through the present, attacking NSO and Pegasus and purporting

25  to describe investigations concerning Pegasus's use (and alleged abuse) by certain of NSO's

26  sovereign government clients."  Mot. at 2.  Against that backdrop of antagonism, allowing NSO to

27

28  _____

[6] *See* The Citizen Lab, *About The Citizen Lab*, https://citizenlab.ca/about/.

14

have unfettered discovery into Citizen Lab's research into NSO would roll back years of progress, expose individuals already victimized by NSO's activities to the risk of further harassment,[7] impinge upon academic freedom, and severely chill Citizen Lab's forward-looking initiatives.

Accepting NSO's view that Citizen Lab is essentially its sworn adversary because Citizen Lab exposes NSO's use of Pegasus on a global basis, permitting NSO to seek all of Citizen Lab's research and detection analysis would undoubtedly compromise Citizen Lab's ability to detect NSO's software in the future.  The same is true if NSO were provided a full view into Citizen Lab's engagement with research subjects and others who have been targeted by Pegasus, as well as those victims' identities.  Citizen Lab is obligated under its research ethics protocol and its agreements with research subjects—templates of which Plaintiffs have produced to NSO as exhibits to their agreements with Citizen Lab—to maintain the confidentiality of subjects' information.  Individuals impacted by NSO's activities in the future would be unwilling to work with Citizen Lab, knowing that doing so could result in further disclosure of sensitive information through NSO's discovery tactics.  *Cf. Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH (MEJ), 2015 WL 4463809, at *4 (N.D. Cal. July 21, 2015) (endorsing argument that foreign companies may be "less forthcoming with [a regulator] in the future if they know that their communications will be judged and dissected for entirely unrelated purposes in a United States court").  The immediate and irreversible impact of allowing such discovery on Citizen Lab's operations is both foreseeable and cognizable.  *See Gonzales*, 234 F.R.D. at 684; *Bickley*, 2011 WL 1344195, at *4; *cf. In Re Apple, Inc.*, 149 F. Supp. 3d at 371-73 (finding that reputational and mission-related burdens on Apple, even if not easily quantifiable, should be considered in determining burden of a demand on a third-party).

---

[7] NSO's discovery requests seeking to identify users or owners of any devices on which Citizen Lab believes Pegasus may have been installed give Citizen Lab concern, especially considering reporting suggesting that undercover operations have been launched against NSO's critics.  *See* Raphael Satter, *AP Exclusive: Undercover Spy Exposed in NYC Was 1 of Many*, AP News (Feb. 11, 2019), https://apnews.com/general-news-9bdbbfe0c8a2407aac14a1e995659de4.

[PROPOSED] OPPOSITION TO MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

**III.    The Remaining *Richmark* Factors Warrant Denying NSO's Motion**

**A.  Factor 3: NSO Seeks Discovery Located Abroad**

As the *Richmark* court explained, "[t]he fact that all the information to be disclosed (and the people who will be deposed or who will produce the documents) are located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business."  959 F.2d at 1475.  In pursuing its letter rogatory, NSO effectively acknowledges that the discovery it seeks is not located in the United States.  This factor accordingly weighs against disclosure.

**B.  Factor 4:  Defendants Already Possess Any Relevant, Proportional Discovery Involving Citizen Lab**

The only arguably relevant discovery NSO seeks from Citizen Lab—concerning its work with Plaintiffs under several data sharing agreements—is duplicative of discovery Plaintiffs have already produced, so does not justify the issuance of a letter rogatory.  *See* Proposed Letter Rogatory to The Ontario Superior Court of Justice (ECF No. 288-1), Schedule A, Document Request No. 1; *see id.* at Schedule B, Deposition Topic No. 1.  As Plaintiffs explained, "Plaintiffs have produced all communications between Plaintiffs and Citizen Lab relevant to Citizen Lab's role related to the case, which occurred entirely before the complaint was filed."  Pls.' Opp. to Defs.' Mot. to Compel (ECF No. 250) at 5.  *See also Viasat*, 2013 WL 12061801 at *7 (denying request for letter rogatory that sought "unnecessarily duplicative information which Plaintiffs can request from the United States-based Defendants," such as documents that the domestic defendants likely possessed).  To the extent NSO seeks Citizen Lab's uniquely held internal documents concerning Citizen Lab's work with Plaintiffs under the various data sharing agreements, NSO has failed to offer any non-conclusory explanation for why those documents are relevant.  *See supra* Argument § II.  And, in any event, on relevance grounds, this Court recently held that NSO is not entitled to documents that allegedly bear on Plaintiffs' "civil society allegation."  Order (ECF No. 292) at 6.

The fourth *Richmark* factor also weighs heavily against NSO's request for documents and communications "sent to or received from any employee or former employee or representative of

either Defendant."  Proposed Letter Rogatory (ECF No. 288-1), Schedule A, Document Request No. 2; *see also id.* Schedule B, Deposition Topic No. 3.  Presumably, any communications between Citizen Lab or its employees and NSO, and documents exchanged thereby, are already available to Defendants, who provide no explanation about why they require production of materials already in their possession from a non-resident non-party.  Because such discovery is "unreasonably cumulative" and "can be obtained from some other source that is more convenient, less burdensome, or less expensive," it should not be permitted.  Fed. R. Civ. P. 26(b)(2)(C)(i).  *See also Viasat*, 2013 WL 12061801, at *7.

### C.  Factor 5: Issuance of the Letter Rogatory Would Undermine Canadian Interests

Under the fifth factor in the *Richmark* analysis, the Court must balance the "interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would 'affect important substantive policies or interests' of either the United States" or the country in which the foreign entity is located.  *Richmark*, 959 F.2d at 1476.  In assessing the strength of the foreign country's interests, courts consider the "expressions of interest by the foreign state, the significance of disclosure in the regulation of the activity in question, and indications of the foreign state's concern for confidentiality *prior to the controversy*."  *Id.* (cleaned up).  This analysis derives from the Supreme Court's mandate that lower courts should "demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state" and should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."  *Aerospatiale*, 482 U.S. at 546.

Issuance of the requested letter rogatory would impinge on Canadian sovereign interests in at least three respects.

*First*, requiring a non-party to disclose sensitive, confidential information that "strike[s] at the heart" of the non-party's business operations contravenes Canadian public policy.  *Actava TV, Inc. v. Matvil Corp.,* 2021 ONCA 105, ¶¶ 82, 93-97 (reversing order enforcing letter of request from U.S.) (Lane Decl,, Ex. B).  NSO's request does exactly that.  As discussed, NSO seeks sensitive,

confidential information, spanning years, about Citizen Lab's research capabilities and its methods to detect Pegasus, as well as the Lab's work publishing cyber threat information while protecting victims and other sources of information.  NSO also seeks sensitive, confidential information that could expose individuals who have been targeted by spyware attacks in the past, some of whom face threats to their personal safety and security.  Yet the sought information is far afield from the claims and defenses in this case.  Accordingly, any potential benefit of the information sought in this case (which would be negligible) is significantly outweighed by risks associated with permitting NSO's sought discovery.  *Actava*, ¶ 88.

**Second**, Citizen Lab's relationship, as both researcher and journalist, with spyware victims (many who have participated as human subjects in Citizen Lab's research) is subject to zealous protection in Canada.  *See*, *e.g*, *Parent v. R.*, 2014 QCCS 132, ¶ 123 (holding that "academic freedom and the importance of institutions of higher learning and academic research are key components of a democracy that values freedom of thought and expression") (Lane Decl., Ex. E). In particular, Canadian law recognizes case-by-case relationships of privilege between researchers and research participants and between journalists and journalistic sources.  A researcher-participant and journalist-source privilege will be recognized when: **(i)** the relationship originates in a confidence that the source's identity will not be disclosed, **(ii)** the element of confidentiality is essential to the full and satisfactory maintenance of the parties' relationship, **(iii)** the relationship— like that which exists between researcher and research participant and journalist and source—is one that, in the eyes of the community, ought to be sedulously fostered, and **(iv)** the injury resulting from disclosure is greater than any benefit gained for the correct disposal of the litigation.  *R. v. National Post*, 2010 SCC 16, ¶¶ 52-53, 55-64 (Lane Decl., Ex. C); *Globe and Mail v. Canada (Attorney General)*, 2010 SCC 41, ¶¶ 22-24, 57-66 (Lane Decl., Ex. D).  Here, as demonstrated by template research and consent agreements produced by Plaintiffs in discovery, Citizen Lab has strong arguments for invoking the privilege.

**Third**, Canada's sovereign interest in enforcing its own discovery rules also weighs against issuance of a letter rogatory.  *See Actava*, ¶¶ 97-98 (reversing enforcement of U.S. letter of request for third-party discovery as, among other things, inconsistent with Canadian sovereignty as reflected

18

in Ontario's discovery laws). Rule 30.10 of Ontario's *Rules of Civil Procedure* governs documentary production from non-parties. Under that provision, "[t]he moving party must establish that the documents requested are relevant to a material issue in the action and that it would be unfair to require the moving party to proceed to trial without having discovery of them." *Actava*, ¶¶ 94. *See also* Lane Decl., Ex. F. Canadian courts apply a more stringent standard of relevance than U.S. courts, and they generally do not permit third-party discovery, which is instead available "only in exceptional cases." *Id.* ¶ 95. Further, under Rule 31.10 of the Ontario *Rules of Civil Procedure*, examination of non-parties is permitted only with leave of the court and only if the court is satisfied that the moving party has been unable to obtain the information from other persons whom the moving party is entitled to examine or from the person they seek to examine. *See* Lane Decl., Ex. G. For the same reasons, discussed above, that the broad discovery sought by NSO is impermissible under U.S. law, it would likewise be impermissible under Canadian law.

## CONCLUSION

NSO's motion for the issuance of a letter rogatory as to Citizen Lab should be denied.

DATED: February 28, 2024              **ZWILLGEN PLLC**

By:  /s/ *Steven L. Lane*
     Steven L. Lane (*pro hac vice*)
     steven.lane@zwillgen.com

     Attorney for Foreign Non-Party
     **The Citizen Lab**