JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
 *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR ISSUANCE OF LETTER ROGATORY TO THE ONTARIO (CANADA) SUPERIOR COURT OF JUSTICE FOR THE CITIZEN LAB AT THE UNIVERSITY OF TORONTO'S MUNK SCHOOL OF GLOBAL AFFAIRS**<br><br>Ctrm:  3<br>Judge:  Hon. Phyllis J. Hamilton<br><br>Action Filed:  10/29/2019 |

**TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ................................................................................................................ 1

II.   PLAINTIFFS LACK STANDING TO OPPOSE NSO'S MOTION ............................. 2

III.  CITIZEN LAB HAS NOT ESTABLISHED GOOD CAUSE TO DENY NSO'S MOTION ................................................................................................................................ 2

    A.    NSO Seeks Relevant Discovery About Issues on Which Citizen Lab May Testify at Trial ............................................................................................................. 2

    B.    NSO's Requests Are Proportionate. ................................................................. 6

    C.    International Comity Does Not Support Denying NSO's Motion. ..................... 9

IV.  CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Apple, Inc.*,
    149 F. Supp. 3d 341 (E.D.N.Y. 2016) ........................................................................................8

*In re Bofi Holding, Inc. Sec. Litig.*,
    2021 WL 3700749 (S.D. Cal. July 27, 2021) .............................................................................4

*U.S. v. Bundy*,
    2016 WL 9076301 (D. Or. July 22, 2016) ..............................................................................3, 5

*Campbell v. Facebook Inc.*,
    2015 WL 4463809, at *4 (N.D. Cal. July 21, 2015) ..................................................................8

*Contratto v. Ethicon, Inc.*,
    227 F.R.D. 304 (N.D. Cal. 2005) ...............................................................................................7

*Diamond State Ins. Co. v. Rebel Oil Co.*,
    157 F.R.D. 691 (D. Nev. 1994) ..................................................................................................7

*Doe v. Kaiser Found. Health Plan, Inc.*,
    2023 WL 8714880 (N.D. Cal. Dec. 17, 2023) ............................................................... 2, 7, 8, 9

*Gardner v. Starkist Co.*,
    2021 WL 303426 (N.D. Cal. Jan. 29, 2021) ..............................................................................2

*Glass Egg Digital Media v. Gameloft, Inc.*,
    2019 WL 2499710 (N.D. Cal. June 17, 2019) ...........................................................................2

*Gonzales v. Google, Inc.*,
    234 F.R.D. 674 (N.D. Cal. 2006) ...............................................................................................8

*Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*,
    2018 WL 197544 (N.D. Cal. May 14, 2018) .............................................................................8

*Lantheus Medical Imaging, Inc. v. Zurich American Ins. Co.*,
    841 F. Supp. 2d 769 (S.D.N.Y. 2010) ......................................................................................14

*Mi Familia Vota v. Hobbs*,
    343 F.R.D. 71 (D. Ariz. 2022) ...................................................................................................7

*MicroTechnologies, LLC v. Autonomy, Inc.*,
    2016 WL 1273266 (N.D. Cal. Mar. 14, 2016) ...........................................................................7

*Nalco Co. v. Turner Designs, Inc.*,
    2014 WL 1311571 (N.D. Cal. Mar. 31, 2014) ...........................................................................4

*Nat. Immunogenics Corp. v. Newport Trial Grp.*,
   2016 WL 11520758 (C.D. Cal. Oct. 25, 2016)................................................................3

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978).......................................................................................................3

*Pasadena Oil & Gas Wyo. LLC v. Mont. Oil Props. Inc.*,
   320 F. App'x 675 (9th Cir. 2009) ..................................................................................8

*Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*,
   663 F.2d 371 (2d Cir. 1981).................................................................................3, 4, 5

*Positive Techs., Inc. v. Sony Elecs. Inc.*,
   2012 WL 12919551 (N.D. Cal. June 25, 2012) ............................................................4

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ...............................................................................10, 12

*In re Rubber Chems. Antitrust Litig.*,
   486 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................................10

*Seoul Semiconductor Co. v. Nichia Corp.*,
   590 F. Supp. 2d 832 (E.D. Tex. 2008) ..........................................................................6

*Viasat, Inc. v. Space Systems/Loral, Inc.*,
   2013 WL 12061801 (S.D. Cal. Jan. 14, 2013)....................................................6, 9, 14

*Wells Fargo & Co. v. ABD Ins.*,
   2012 WL 6115612 (N.D. Cal. Dec. 10, 2012) ...............................................................2

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)............................................................................................................4

I. **INTRODUCTION**

The Court should reject Plaintiffs' and Citizen Lab's oppositions to NSO's motion for issuance of a letter rogatory.

*Plaintiffs'* opposition is procedurally defective because it asserts only relevance and burden arguments that Plaintiffs lack standing to assert in relation to discovery sought from a non-party.

*Citizen Lab's* opposition ("CL Opp.") is meritless. It relies on arguments that are better directed to the Canadian courts, and in all events it fails to show good cause to deny NSO relevant discovery relating to Citizen Lab's "identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service" (Dkt. 239-3, Exh. B at 4) and Citizen Lab's contention that NSO's technology has been misused to target members of "civil society" (Compl. ¶ 42).

In an apparent disagreement with the very idea of discovery, Citizen Lab says that granting NSO's motion would be "tantamount to permitting a burglar to seek discovery from an alarm company." (CL Opp. at 3.) Of course, NSO rejects the premise that it can properly be analogized to a burglar or Citizen Lab to an alarm company, and this is a civil case rather than a criminal prosecution. But even taking the hypothetical on its terms, an accused burglar would obviously be entitled to discovery from an alarm company that was identified by the prosecution as a witness the prosecution would call to identify the defendant as "responsible for" an alleged burglary, particularly when there was a history of the alarm company's animosity and bias in respect of this "burglar" and other reasons to doubt the reliability of the alarm company's conclusions. Likewise here, Plaintiffs have disclosed Citizen Lab as (1) having "discoverable information" identifying "Defendants as responsible for [the alleged] unauthorized access and abuse of the WhatsApp service"; and (2) a witness "whom Plaintiffs may use to support their claims." (Dkt. 239-3, Exh. B at 1, 4.) Citizen Lab cannot avoid that plainly relevant discovery through accusations of misconduct against NSO that prejudge the merits of Plaintiffs' claims.

NSO's proposed Letter Rogatory seeks discovery concerning Citizen Lab's knowledge relevant to the case-dispositive issue of whether NSO is responsible for any alleged "unauthorized access and abuse of the WhatsApp service" and to any other testimony or other evidence Plaintiffs may seek to introduce either through Citizen Lab or based on Citizen Lab's work. The discovery

NSO seeks is relevant and proportional to case-dispositive issues and NSO's defenses, and it is consistent with international comity. Most of Citizen Lab's objections can and should be directed to a Canadian court, not this Court, and all are meritless.

In sum, NSO has established that the requested Letter Rogatory comports with the liberal discovery standards of Rule 26 and with comity considerations, and Citizen Lab has failed to make the required showing of good cause to deny the motion. The Court should grant NSO's motion.

## II. PLAINTIFFS LACK STANDING TO OPPOSE NSO'S MOTION

Plaintiffs oppose NSO's motion only to the "limited" extent that the Letter Rogatory seeks "post-complaint communications between Plaintiffs and Citizen Lab," contending that such discovery is "irrelevant" and that NSO should not "burden a foreign non-party with requests for irrelevant discovery." (Dkt. 293 at 1 & n.1.) But Plaintiffs, as parties, lack standing to oppose discovery requests *directed to a non-party* on the bases of relevance or burden, which are the only objections articulated by Plaintiffs. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8714880, at *3 (N.D. Cal. Dec. 17, 2023); *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019); *Wells Fargo & Co. v. ABD Ins*., 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012). Plaintiffs' arguments must therefore be rejected. In addition, whether any burden on Citizen Lab is reasonable can and should be adjudicated in Canada; it is not pertinent to whether the Court should issue a letter rogatory.

## III. CITIZEN LAB HAS NOT ESTABLISHED GOOD CAUSE TO DENY NSO'S MOTION

Citizen Lab has an uphill battle to oppose NSO's motion, because "motions requesting issuance of a letter of request or letter rogatory should generally be granted." *Gardner v. Starkist Co.*, 2021 WL 303426, at * 2 (N.D. Cal. Jan. 29, 2021). To succeed in opposing such a motion, "[t]he opposing party must show good reason for a court to deny an application for a letter rogatory." *Id.* (quotation marks omitted). Citizen Lab cannot satisfy that burden.

### A. NSO Seeks Relevant Discovery About Issues on Which Citizen Lab May Testify at Trial.

Contrary to Citizen Lab's core argument, NSO seeks discovery that is directly relevant to

outcome-determinative issues in this case.[1]

*First*, despite Citizen Lab's contention that "Plaintiffs did not rely on Citizen Lab to identify NSO as responsible for the unauthorized access and abuse of WhatsApp's computers" or "for any technical analysis of the 1,400 devices at issue here" (CL Opp. at 10-12), Plaintiffs have said the exact opposite. Plaintiffs' Amended Initial Disclosures state that they may call Citizen Lab witnesses "to support their claims" and that Citizen Lab has "information relevant to ***the identification of Defendants as responsible for unauthorized access and abuse of the WhatsApp service***"—*i.e.*, the core alleged conduct underpinning *all* of Plaintiffs' claims. (Dkt. 239-3, Exh. B at 1, 4 (emphasis added)). Indeed, before the Complaint was even filed, Citizen Lab—independent of Plaintiffs—identified NSO as responsible for the conduct alleged. (*See* Dkt. 257-3, Exh. F; *see also* Dkt. 288 (citing this same document).) There is thus every reason to believe Citizen Lab has information identifying NSO "as responsible for unauthorized access and abuse of the WhatsApp service" (Dkt. 239-3, Exh. B at 4.) That information is relevant and discoverable, whether or not Plaintiffs intend to "rely on" Citizen Lab to establish this central piece of their case. *See Nat. Immunogenics Corp. v. Newport Trial Grp.*, 2016 WL 11520758, at *3 (C.D. Cal. Oct. 25, 2016) (compelling discovery relevant to allegations "at the heart of [the] case").

Similarly, if Plaintiff will call Citizen Lab to testify concerning NSO's alleged "responsib[ility] for unauthorized access and abuse of the WhatsApp service" or to introduce other evidence derived from Citizen Lab sources or their work (Dkt. 239-3, Exh. B), then NSO must be permitted to explore related discovery. *See Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981) (where plaintiff sought to introduce evidence of special damages, defendant "was entitled to rebut that evidence and to discovery . . . for the purpose of doing so"); *U.S. v. Bundy*, 2016 WL 9076301, at *2 (D. Or. July 22, 2016) (holding defendants were "entitled

---

[1] Citizen Lab's speculation that some of the discovery sought through the Letter Rogatory may also have relevance to *other* litigation in which NSO is involved (CL Opp. at 13) does not support denial of NSO's Motion. The Letter Rogatory seeks discovery that is relevant to core issues in this case and that NSO intends for use in defending the claims against it here, unlike in *Oppenheimer Fund, Inc. v. Sanders*, where the information request at issue was lodged "to facilitate the sending of notice rather than to define or clarify issues in the case." 437 U.S. 340, 351 (1978).

to reasonable discovery" relevant to evidence opponent intended to introduce at trial); *cf. In re Bofi Holding, Inc. Sec. Litig.*, 2021 WL 3700749, at *4 (S.D. Cal. July 27, 2021) (witness's "knowledge of the underlying facts" is relevant). NSO would also be entitled to introduce counter or contextualizing evidence concerning matters such as "the reliability of Citizen Lab's [underlying] investigative methods and conclusions, as well as Citizen Lab's . . . bias against NSO." (*See* CL Opp. at 4); *Penthouse*, 663 F.2d at 391.

Discovery into such topics would necessarily be relevant, regardless of whether the methods and conclusions underlying Plaintiffs' evidence derived specifically from Citizen Lab's "technical analysis of the 1,400 devices at issue here." (CL Opp. at 10-12.)[2] Even if, as Citizen Lab insists, its conclusion that NSO was responsible for the conduct alleged by Plaintiffs is not based on that "technical analysis" (*id.*), then presumably it must be based on Citizen Lab's *other* "work concerning NSO and Pegasus," about which the Letter Rogatory also seeks discovery. To the extent Plaintiffs intend to introduce Citizen Lab testimony or Citizen Lab–derived evidence of NSO's alleged responsibility for the alleged attack, NSO is entitled to discovery into whatever investigations and conclusions underlie such evidence. NSO needs that discovery to assess Citizen Lab's and Plaintiffs' analyses and rebut their conclusions.[3]

*Second*, Citizen Lab acknowledges that its investigation and conclusions constitute the support for Plaintiffs' allegation that the "Target Users included attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials." (CL Opp. at 3-4; *see* Compl. ¶ 42.) There can be no serious dispute that discovery on this topic is relevant both to Plaintiffs' allegations and to matters on which Citizen Lab will likely be called to

---

[2] *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."); *Nalco Co. v. Turner Designs, Inc.*, 2014 WL 1311571, at *1 (N.D. Cal. Mar. 31, 2014) (Rule 26 relevance standard applies to third-party discovery requests).

[3] Citizen Lab's conclusory assertion that unspecified documents "in the public record," documents produced by Plaintiffs, or "NSO's own data" may also bear on the reliability of Citizen Lab's relevant analyses cannot shield from discovery *other* relevant material in Citizen Lab's sole possession. *Cf. Positive Techs., Inc. v. Sony Elecs. Inc.*, 2012 WL 12919551, at *2 (N.D. Cal. June 25, 2012) (awarding sanctions for failure to comply with discovery obligation where party produced publicly available documents but withheld additional relevant and responsive material).

testify. To the extent Plaintiffs introduce evidence on that issue at trial, it must come from Citizen Lab or derive from Citizen Lab's work, as Plaintiffs relied entirely on Citizen Lab to identify Target Users as falling within "civil society." (*See* CL Opp. at 3.) In addition, NSO is entitled to present its defense that any use of its technology was conducted by government users consistent with those governments' laws. In order to present that argument and to respond to Plaintiffs' assertions about "civil society," NSO must be allowed to explore in discovery the reliability of Plaintiffs' and Citizen Lab's conclusions. *See Penthouse*, 663 F.2d at 391; *Bundy*, 2016 WL 9076301, at *2. Because Plaintiffs delegated this task to a Canadian entity (and thus out of the direct reach of U.S. discovery), the only way for NSO to gain insight into Citizen Lab's process is through a Letter Rogatory.

Contrary to Citizen Lab's arguments, the Court did not hold in its February 23 order (Dkt. 292) that discovery into Citizen Lab's work is "irrelevant" or "not discoverable." Plaintiffs themselves *concede* the relevance of discovery concerning Citizen Lab's work on that subject by producing "all communications between plaintiffs and Citizen Lab relevant to Citizen Lab's role related to the case, which [Plaintiffs represented] occurred entirely before the complaint was filed." (Dkt. 292 at 6.) Instead, the Court denied only NSO's request for Plaintiffs' **"post-complaint"** communications with Citizen Lab. *Id.*

The Court also expressed doubt that Plaintiffs' "civil society" allegation is relevant to the elements of Plaintiffs' claims or to NSO's defenses. *Id.* In relation to the elements of Plaintiffs' claims, the relevance of this allegation appears dubious indeed. Plaintiffs have nonetheless made the "civil society" issue a focal point of their case, repeating it again and again in their complaint and literally dozens of other filings. If they are allowed to do the same at trial, discovery into the bases for, and reliability of, Plaintiffs' allegation (which Citizen Lab concedes rests entirely on its own work) will be relevant to NSO's defenses. Among other things, such discovery would be relevant to NSO's Sixth Separate and Additional Defense that "Plaintiffs' claims are barred on the grounds that Defendants acted in good faith and pursuant to legitimate law enforcement, national security, intelligence and business justifications" (*i.e.*, assisting NSO's government clients' efforts to combat crime and terrorism, rather than abusively targeting "civil society" as Plaintiffs and

Citizen Lab allege). (Dkt. 128 at 9.) Such discovery could also be probative of whether NSO engaged in any "fraudulent," "intimidating," "harassing," "malicious," or "oppress[ive]" conduct, and thus relevant to the elements of Plaintiffs' CFAA and CDAFA claims, breach of contract claim, and request for punitive damages. (*See id.* at 12, 14; Compl. ¶¶ 21 54, 66.)

In sum, the discovery NSO seeks from Citizen Lab is relevant to claims and defenses in this case, thereby satisfying Rule 26. Nothing more is required to issue a letter rogatory.

**B.      NSO's Requests Are Proportionate.**

In contrast to the clear relevance and importance of the discovery NSO seeks, Citizen Lab cannot establish that it will suffer any undue burden from the discovery. In fact, Citizen Lab's burden arguments are not properly directed to this Court at all. NSO does not seek an order compelling Citizen Lab to provide the requested discovery. It simply seeks a letter rogatory that will allow it to seek that discovery in Canadian court. Citizen Lab thus can and should raise any burden arguments in Canada, not here. Citizen Lab cites a decision from a Texas district court suggesting that "policy" considerations favor requiring a party seeking discovery from a foreign entity to show that the requested discovery is "not unduly burdensome." (CL Opp. at 8 (citing *Seoul Semiconductor Co. v. Nichia Corp.*, 590 F. Supp. 2d 832, 835 (E.D. Tex. 2008)).) But courts in the Ninth Circuit have rejected the proposition that a "higher standard is necessary for the issuance of letters rogatory than that needed for discovery upon a domestic company," and they "routinely issue letters rogatory where the movant makes a reasonable showing that the evidence sought may be material, or may lead to the discovery of material evidence." *Viasat, Inc. v. Space Systems/Loral, Inc.*, 2013 WL 12061801, at *3 (S.D. Cal. Jan. 14, 2013).

In any event, Citizen Lab identifies no undue burden from the requested discovery. It makes passing reference to "expenses" it would incur in responding to the discovery requests, but ordinary discovery costs are not an undue burden, and Citizen Lab makes no attempt to substantiate or quantify the amount of such expenses. (CL Opp. at 13.)[4] Citizen Lab thus has not satisfied its

---

[4] Citizen Lab also complains that the Letter Rogatory employs "expansive definitions." (CL Opp. at 6 & n.6.) But the cited examples—defining "Citizen Lab" to include various individuals through which it acts, defining "Meta" to include its affiliated entities (one of whom is a Plaintiff in this case) as well as its representatives and agents, and providing that the term "relating to"

burden to show that complying with the discovery sought by the Letter Rogatory would subject Citizen Lab to an "undue" financial burden. *See MicroTechnologies, LLC v. Autonomy, Inc.*, 2016 WL 1273266, at *1-2, *4 (N.D. Cal. Mar. 14, 2016) (issuing letter rogatory where the opposing foreign party failed to make a persuasive showing of undue burden); *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 98 (D. Ariz. 2022) (ordering response to subpoena where recipient failed to establish how voluminous responsive discovery would be, how difficult it would be to comply, and whether compliance would impose large costs); *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 696 (D. Nev. 1994) (holding a "generalized and unsupported allegation of undue burden is insufficient to prevent enforcement" of a subpoena).

Citizen Lab also asserts in conclusory fashion that its research and analysis concerning NSO and Pegasus is "proprietary" (CL Opp. at 13-14), but it fails to establish that any of the information NSO seeks is sufficiently sensitive to preclude disclosure entirely. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8714880, at *5 (N.D. Cal. Dec. 17, 2023) (enforcing subpoena where party resisting production "failed to meet its burden . . . to show how what, if any, specific, substantiated trade secrets or confidential information are actually at stake here"); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308 (N.D. Cal. 2005) (holding that a party seeking protection must make a specific factual showing that materials constitute a trade secret or other confidential research, development, or commercial information). Nor does Citizen Lab cite any support for its speculation that permitting NSO to take discovery about the methods through which Citizen Lab claims to be able to "detect NSO's software" would "compromise" Citizen Lab's "detection" capabilities going forward. (CL Opp. at 15.) Citizen Lab is free to designate materials it produces as Attorney's Eyes Only under the Protective Order in this case, which would keep its materials from reaching any NSO technical personnel. Citizen Lab's unsupported and speculative claims of theoretical harm are insufficient to block relevant discovery. *See Contratto*, 227 F.R.D. at 308 ("[B]road allegations of harm with respect to either the document as a whole, or categories of documents" will not shield materials from production); *accord Diamond State*, 157 F.R.D. at 696.

---

encompasses various commonly accepted meanings of that term—are neither atypical nor shown to impose any burden on Citizen Lab.

And, as shown above, the discovery sought by the Letter Rogatory goes to the heart of core case issues. (*Supra* at III.A.) By identifying Citizen Lab as a witness Plaintiff may call to testify about NSO's alleged "responsibil[ity] for unauthorized access and abuse of the WhatsApp service" (Dkt. 293-3, Exh. B at 4), Plaintiffs have placed at issue the reliability and validity of Citizen Lab's analyses and methods. NSO has a clear and substantial need for this discovery that far outweighs Citizen Lab's generalized and unsubstantiated claims as to the sensitivity of some unspecified portion of the responsive material. Thus, even if the Court were to credit Citizen Lab's vague and conclusory arguments, those arguments would not support a refusal to issue the Letter Rogatory. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685-86 (N.D. Cal. 2006) (observing "there is no absolute privilege for trade secrets and similar confidential information," and ordering production of documents for which requesting party demonstrated substantial need).[5]

Citizen Lab's generalized claim that portions of the discovery NSO seeks could be subject to confidentiality provisions in Citizen Lab's "research ethics protocol" or unspecified "agreements with research subjects" is also unavailing. Documents subject to confidentiality requirements and other such sensitive materials are routinely produced in litigation, where "district courts can enter protective orders allowing discovery but limiting the use of the discovered documents." *Kaiser Found.*, 2023 WL 8714880, at *5 (quoting *Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*, 2018 WL 197544, at *6 (N.D. Cal. May 14, 2018), and *Pasadena Oil & Gas Wyo. LLC v. Mont. Oil Props. Inc.*, 320 F. App'x 675, 677 (9th Cir. 2009)). Here, the Court has entered

---

[5] Citizen Lab's assertion that discovery would cause "[i]ndividuals impacted by NSO's activities in the future [to] be unwilling to work with Citizen Lab" (CL Opp. at 15) is likewise speculative and unsubstantiated. Regardless, Citizen Lab's *private* interest in maximizing the number of "research subjects" "[]willing to work with Citizen Lab" is nowhere near akin to the *nation state* interest in "effective regulation" and candor in regulated entities' communications with regulators that the court in *Campbell v. Facebook Inc.* found supported denying a motion to compel production of materials shared with foreign regulators. 2015 WL 4463809, at *4 (N.D. Cal. July 21, 2015) (cited at CL Opp. at 15). Further, *In re Apple, Inc.*, 149 F. Supp. 3d 341 (E.D.N.Y. 2016) (cited at CL Opp. at 14-15), in which the government sought an order compelling Apple to "bypass security on" a customer's iPhone to facilitate a search of its contents, is inapposite. NSO is not asking this Court to compel Citizen Lab to do *anything*; it is instead seeking issuance of a letter rogatory to enable NSO to pursue discovery from Citizen Lab before a Canadian court, which will evaluate whether that discovery complies with Canadian law before compelling production.

a protective order (Dkt. 132), and Citizen Lab does not claim that order would be insufficient to address any confidentiality concerns. *See Kaiser Found.*, 2023 WL 8714880, at *6 (party resisting third-party discovery "bears the burden to demonstrate that the protective order will not sufficiently address the asserted privacy interests." (internal quotation marks omitted)). Indeed, Plaintiffs have already produced "an analysis from Citizen Lab providing in-depth open-source information on the identities of over 200 Target Users who Citizen Lab identified as members of 'civil society,'" and other materials identifying alleged Target Users, dispelling Citizen Lab's concerns about the production of "victim-related" material. (Dkt. 250 at 3; Dkt. 251 ¶¶ 6-7.)[6]

### C. International Comity Does Not Support Denying NSO's Motion.

Citizen Lab also opposes the Letter Rogatory on the basis of international "comity." The relevant comity factors are (1) "the importance to the litigation of the documents or other information requested," (2) "the degree of specificity of the request," (3) "[w]hether the information originated in the United States," (4) the "availability of alternative means of securing the information," and (5) the "extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Viasat*, 2013 WL 12061801, at *4 (cleaned up). None of these factors provides good cause to deny NSO's motion. The discovery NSO seeks is important for all the reasons given above. It is also specific and consistent with the other comity factors.

#### 1. NSO's Requests Are Specific.

NSO's discovery requests are sufficiently specific to warrant issuance of the Letter Rogatory. Tellingly, Citizen Lab raises no objection as to the specificity of many of the document requests and deposition topics set forth in the Letter Rogatory, including those seeking documents and information concerning:

- Citizen Lab's "analysis, investigation, or other work performed, and any

---

[6] The article cited in footnote 7 of Citizen Lab's opposition is rank hearsay and in no way suggests that discovery is likely to subject Citizen Lab or any of its "research subjects" to any risk or harm.

recommendations made, pursuant to" its agreements with Plaintiffs governing work by Citizen Lab related to issues in this case (Dkt. 288-1 Schedule A, Request 1; *id.* Schedule B, Topic 1);

- Citizen Lab's communications with current or former NSO employees (*id.* Schedule A, Request 2; *id.* Schedule B, Topic 3);

- "Citizen Lab's publications about Defendants and/or Pegasus, and Citizen Lab's underlying methodology" (*id.* Schedule B, Topic 2);

- Notifications and related correspondence with users of Targeted Devices, including those referenced in the Complaint (*id.* Schedule A, Request 7);[7]

- Payments, contributions, or donations received from Plaintiffs or their affiliates (*id.* Schedule A, Request 9; *id.* Schedule B, Topic 9); and

- Citizen Lab's collection of responsive documents and the authenticity of documents produced in response to the Letter Rogatory (*id.* Schedule B, Topics 11 and 10).

Each of the above categories is facially specific, as Citizen Lab concedes by failing to object on specificity grounds. *See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (specificity factor favored disclosure where entity opposing discovery "ha[d] not made this factor an issue"); *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1083 (N.D. Cal. 2007) (same).

While Citizen Lab argues that some of NSO's requests are "overbroad" (CL Opp. at 10-11), their arguments principally challenge the relevance of NSO's requests rather than their specificity. Anyway, none of these arguments has merit. To take one example, Citizen Lab does not contend (and could not do so credibly) that NSO's request for documents and testimony about the specific vulnerability Plaintiffs allege NSO's Pegasus software exploited (Dkt. 288-1 Schedule A, Request 3; *id.* Schedule B, Topic 4), is insufficiently "specific." Instead, Citizen Lab objects

---

[7] Citizen Lab's brief repeatedly acknowledges that providing such notice was part of its role related to this case. (*See* CL Opp. at 1 ("Citizen Lab helped Plaintiffs identify users of some of the approximately 1,400 devices targeted by NSO and then notify those users that their devices may have been compromised."); *see also id.* at 2-4, 10 & 12.)

to this request on grounds that "Plaintiffs did not rely on Citizen Lab to identify NSO as responsible for the unauthorized access and abuse of WhatsApp's computers." (CL Opp. 10.) But that is a relevance argument, which is meritless for the reasons given above. (*Supra* at III.A.) Whether or not Plaintiffs "rel[ied] on Citizen Lab to identify NSO as responsible for the [alleged] unauthorized access and abuse," Plaintiffs Amended Initial Disclosures state that Citizen Lab has "discoverable information" on precisely that topic. (*See* Dkt. 239-3, Exh. B at 4.) Such information is directly relevant to the most central issue in this case, whether or not Plaintiffs hired Citizen Lab to create it, and the reliability of Citizen Lab's investigations necessarily affects the reliability of Plaintiffs' own. The fact that Plaintiffs amended their Initial Disclosures on November 30, 2023, to add Citizen Lab strongly suggests that they plan to introduce Citizen Lab testimony or other evidence derived from Citizen Lab's work investigating whether NSO accessed Target Devices, identifying Target Users, and any technical steps involved. If that turns out to be true, NSO's need for this discovery will be especially acute—regardless of whether that work was undertaken specifically in connection with Plaintiffs' engagement of Citizen Lab to identify and notify Target Users who fall within "civil society."

Citizen Lab also objects to requests addressing its analyses of (i) vulnerabilities in Plaintiffs' services and platforms and (ii) devices on which Citizen Lab believed Pegasus to have been installed, citing NSO's arguments that Plaintiffs' claims relate only to "a specific use of a specific technology" to attack one "specific security vulnerability" in the WhatsApp service. (CL Opp. at 10-11.) But this Court rejected NSO's arguments and declined to adopt its view that discovery must be tailored to the specific WhatsApp vulnerability or the specific Pegasus technology identified in the Complaint. (Dkt. 292 at 3.) The Court instead adopted Plaintiffs' position that "relevant spyware" includes "any NSO spyware targeting or directed at Whatsapp servers, or using Whatsapp in any way to access Target Devices." (*Id.*) It follows that NSO's requests are likewise not required to be limited to documents and information concerning Pegasus or the CVE-2019-3568 vulnerability. Moreover, nothing in Plaintiffs' Amended Initial Disclosures identifying Citizen Lab as a witness suggests that the "discoverable information" Citizen Lab may possess relates solely to Pegasus and the CVE-2019-3568 vulnerability.

Citizen Lab's remaining "overbreadth" objections—that NSO's discovery should be limited to the "few months in 2019" during which Citizen Lab says it identified certain Target Users deemed members of "civil society" and to Citizen Lab's investigation and analysis relating to the "1,400 Target Devices" referenced in Plaintiffs' Complaint (CL Opp. at 10-11)—are also disguised relevance objections that lack merit for reasons previously explained. By seeking to inject the "civil society" issue (which derives entirely from Citizen Lab's work) into this case, Plaintiffs have placed at issue the reliability and soundness of Citizen Lab's claims that Pegasus has been wrongfully deployed against "attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials." (Compl. ¶ 42.) And while pressing that theme will not help Plaintiffs prove the elements of their claims, it will have the effect of prejudicing the jury against NSO. To the extent Plaintiffs are permitted to make their "civil society" allegations a part of their case, NSO must be permitted to explore the underlying bases and validity (if any) of those allegations. Because Plaintiffs made the unusual choice to not only delegate this work to an external organization, but to select a *foreign* one (perhaps in anticipation of this precise litigation scenario), NSO requires the Letter Rogatory process as its only possible avenue to obtain discovery into how Citizen Lab did its job.

### 2. The Other Comity Factors Do Not Establish Good Cause to Deny the Motion.

Citizen Lab's arguments that other comity factors show that the Letter Rogatory should not issue are meritless and should be rejected.

*First*, the fact that the discovery sought by the Letter Rogatory is located in Canada rather than the United States (CL Opp. at 16) is no bar to NSO's request. The letter rogatory process, endorsed by the laws of the United States and Canada, exists precisely for the purpose of facilitating discovery from foreign sources; if the foreign location of discovery were a bar to letters rogatory, then no letter rogatory would *ever* issue. *See Richmark*, 959 F.2d at 1478 (holding that if the foreign origin of discovery were "alone sufficient, a foreign corporation could avoid its discovery obligations in almost every case"). Moreover, this Court has already held that the fact that requested discovery is located abroad carries little weight in a comity analysis. (*See* Dkt. 233

at 9-10 (holding "the foreign origin of discovery is not an absolute bar against production" and declining to place weight on the "non-U.S. origin" factor when analyzing Plaintiffs' request for discovery from Israeli sources).)

*Second*, Citizen Lab's claim that NSO already possesses all relevant, proportional discovery sought by the Letter Rogatory (CL Opp. at 16-17) would be laughable were this not such a serious matter. Among other things, the Letter Rogatory seeks "Citizen Lab's internal analyses that it chose to not share with Plaintiffs" and which, accordingly, have not been produced and could only be produced by Citizen Lab or its representatives. (Dkt. 288 at 5.) Citizen Lab admits that such documents exist (CL Opp. at 16), and, as explained above, they relate to core and outcome-determinative case issues and to testimony Plaintiffs intend to introduce through Citizen Lab to support their claims. The Court has not barred discovery on these topics, and if the Court might allow Plaintiffs plan to press the allegation about "civil society"—derived entirely from Citizen Lab's work—fairness requires that NSO be permitted appropriate discovery into the bases for Plaintiffs' allegations, much of which is uniquely in Citizen Lab's possession.[8]

*Finally*, Citizen Lab's arguments about "Canadian interests" (CL Opp. at 17-19) mischaracterize the relief sought by NSO and ignore the basic principles governing letters rogatory. Citizen Lab's arguments about Canadian interests are properly decided in Canada, not by this Court. Citizen Lab's arguments that: (1) NSO seeks disclosure of "sensitive, confidential information" in contravention of "Canadian public policy"; (ii) Citizen Lab may be able to invoke a privilege purportedly recognized under Canadian law; and (iii) Canada has a "sovereign interest in enforcing its own discovery rules" in relation to NSO's requests (*id.*) all address whether or the extent to which NSO's requests ultimately should be enforced through a *Canadian court order* compelling Citizen Lab to provide the requested discovery. NSO's motion does not, and could not, seek such relief from this Court. Instead, NSO's motion merely seeks issuance of a letter

---

[8] Citizen Lab knows better than NSO which current and former NSO employes and representatives Citizen Lab has communicated with and is better positioned than NSO to identify such communications, some or all of which may not be available to NSO. Citizen Lab has not shown that such discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive." (CL Opp. at 17.)

rogatory—*i.e.*, "a formal request from a court in which an action is pending, to a foreign court to perform some judicial act." *Viasat*, 2013 WL 12061801, at *2 (quoting *Lantheus Medical Imaging, Inc. v. Zurich American Ins. Co.*, 841 F. Supp. 2d 769, 775 (S.D.N.Y. 2010)). "Where U.S. courts issue and then transmit letters rogatory directly to foreign courts for enforcement, courts in the receiving country enforce the letters rogatory pursuant to domestic statute or common law." *Lantheus*, 841 F. Supp. 2d at 777. Through this process, the issues of Canadian law and policy Citizen Lab references will be addressed by a *Canadian court* presented with the Letter Rogatory for enforcement. *Id.*

In deciding NSO's motion, it is, respectfully, not this Court's role to issue an advisory opinion on those Canadian law and policy issues. *See Viasat*, 2013 WL 12061801, at *2 (court exercising discretion to issue a letter rogatory should not "attempt to predict whether that evidence will actually be obtained"). Instead, the Court's role is to assess "whether the discovery sought falls within the scope of discovery authorized by the Federal Rules, as well as whether considerations of comity warrant the requested discovery." *Id.* at *4. As shown above, those standards are easily satisfied here. Were the Court to wade into the Canadian legal and policy issues that Citizen Lab raises, the Court would undermine the Canadian "sovereign interest in enforcing its own discovery rules" that Citizen Lab itself invokes.

## IV. CONCLUSION

For the reasons stated above and in NSO's motion, this Court should issue the requested Letter Rogatory to the Ontario (Canada) Superior Court of Justice.

DATED: March 6, 2024

KING & SPALDING LLP

By: /s/Joseph N. Akrotirianakis
   JOSEPH N. AKROTIRIANAKIS
   AARON S. CRAIG

   Attorneys for Defendants NSO GROUP
   TECHNOLOGIES LIMITED and Q
   CYBER TECHNOLOGIES LIMITED