Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.,<br><br>                Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>                Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' RESPONSE TO ORDER ON MOTION FOR ISSUANCE OF LETTER ROGATORY**<br><br>Action Filed: October 29, 2019 |

Plaintiffs WhatsApp LLC and Meta Platforms, Inc. ("Plaintiffs") write in response to the Court's request for an explanation as to whether and how Plaintiffs plan to rely on the fact that users targeted by Defendants' spyware ("Target Users") are members of civil society. *See* Dkt. No. 299 at 3.

Plaintiffs agree with the Court that the identities of the Target Users "are not relevant to the claims or defenses to be presented at trial." *Id.* Plaintiffs can prove their claims without introducing the identities of the Target Users. However, Defendants ("NSO") have raised an affirmative defense that depends, in part, on the purported identities of the Target Users: that NSO "acted in good faith and pursuant to legitimate law enforcement, national security, intelligence and business justifications." *See* Dkt. No. 128 at 9. NSO's defense is legally and factually unsound. For those reasons, Plaintiffs would not intend to call Citizen Lab witnesses or seek to present evidence as to the identities of the Target Users as part of their case-in-chief, unless NSO attempts to justify its unlawful conduct as related to legitimate law enforcement activity.

NSO has persistently sought to present itself as engaged in law enforcement activities and claimed its spyware is used to target only terrorists and other bad actors. *See, e.g.*, Dkt. No. 45 at 7; Dkt. No. 288 at 3. This is not true. To the extent the Court allows NSO to introduce evidence and arguments that its spyware was only used for purportedly legitimate law enforcement purposes, Plaintiffs would seek to introduce evidence that the Target Users included attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials. Dkt. No. 1 ¶ 42. Such evidence would moreover support Plaintiffs' requests for equitable remedies and monetary damages. Even in that event, Plaintiffs have produced detailed and sufficient information showing what Plaintiffs know about the identities of the Target Users, and how they know it, and NSO has not established that it is entitled to more information (let alone from a nonparty).

## I. Plaintiffs Can Establish Their Claims Without the Identities of the Target Users

Plaintiffs can prove that NSO violated the Computer Fraud and Abuse Act ("CFAA"), the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), and the WhatsApp Terms of Service, all without evidence about the identities of the Target Users. Plaintiffs' CFAA

1

and CDAFA claims center on NSO circumventing Plaintiffs' technological restrictions to access and send malicious code through Plaintiffs' servers to the Target Users. *See* Dkt. No. 1 ¶¶ 32–39. Similarly, Plaintiffs' claim for breach of the WhatsApp Terms of Service focuses on NSO's actions in reverse-engineering WhatsApp's client app, and sending malicious code through Plaintiffs' servers, among other violations. *See id.* ¶ 22.[1] No element of any of Plaintiffs' claims depends on the Target Users' identities. Plaintiffs accordingly do not currently intend to call any witness from Citizen Lab at trial, or to use any of Citizen Lab's documents that Plaintiffs have not already produced.[2]

## II.     NSO Cannot Defend Itself Based on the Identities of the Target Users

Though the identities of the Target Users are not necessary to prove the elements of Plaintiffs' claims, NSO has repeatedly focused on the identities of the Target Users throughout the litigation to justify its conduct. For example, in moving to dismiss the case, NSO claimed that its spyware was used "to investigate crimes and prevent acts of terror." Dkt. No. 45 at 7. Later, in its answer, NSO invoked the identities of the Target Users as part of its affirmative defense of "Good Faith / Legitimate Justification," which stated that "Plaintiffs' claims are barred on the grounds that Defendants acted in good faith and pursuant to legitimate law enforcement, national security, intelligence and business justifications." Dkt. No. 128 at 10. NSO has repeated its claim that the Target Users were criminals and terrorists throughout its filings in this case, without ever producing factual support. *See, e.g.*, Dkt. No. 215 at 1; Dkt. No. 252 at 13; Dkt. No. 258 at 9; Dkt. No. 265 at 4 n.2; Dkt. No. 288 at 1.[3]

---

[1]  The WhatsApp Terms of Service also prohibit using the WhatsApp service in ways that are "intimidating" or "harassing." *See id.* ¶ 21. If the Court disagrees with Plaintiffs and authorizes discovery relating to the identities of the Target Users, Plaintiffs may seek to show that NSO's spyware led to the intimidation or harassment of the Target Users, in violation of the WhatsApp Terms of Service.

[2]  Plaintiffs may call a Citizen Lab witness if the Court authorizes discovery from Citizen Lab.

[3]  Plaintiffs' complaint included facts about the identities of the Target Users, *see* Dkt. No. 1 ¶ 42, in order to provide appropriate context for NSO's actions, and in response to NSO's public statements about the identities of its victims. For instance, even before the complaint was filed, NSO founder Shalev Hulio claimed that NSO's products targeted only "terrorists,

This affirmative defense—which NSO cites as a reason to permit discovery regarding the identities of the Target Users, *see* Dkt. No. 298 at 5—lacks legal merit. NSO's subjective "good faith" is legally irrelevant to whether it violated the CFAA, CDAFA, or the WhatsApp Terms of Service. *See* Dkt. No. 140 at 14–15. The Ninth Circuit has ruled that a subjective belief that spyware would only be used for law enforcement purposes is not a defense to a CFAA or CDAFA claim. *See United States v. Christensen*, 828 F.3d 763, 794 (9th Cir. 2015) (holding that "it did not matter whether [defendant] believed [his co-defendant] intended to market . . . to law enforcement"). NSO's affirmative defense also relies on a nonexistent *foreign* law enforcement exception: the CFAA exempts "any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency *of the United States*," but does not exempt foreign law enforcement activity. 18 U.S.C. § 1030(f) (emphasis added). What's more, NSO is not itself a foreign law enforcement agency, or a law enforcement agency at all.[4] Even if, as NSO claims, "any use of its technology was conducted by government users consistent with those governments' laws," Dkt. No 298 at 5, NSO would not be insulated from liability.

NSO's affirmative defense based on the identities of the Target Users also lacks a factual basis. NSO's former CEO has disclaimed that NSO knows the identities of any of the Target Users, and claimed that NSO plays no role in operating the Pegasus technology, and lacks any knowledge of Pegasus being installed on a particular device. *See* Dkt. No. 45-11 ¶¶ 14–16. NSO has not produced a single document showing that any of the Target Users were criminals or terrorists, and has refused to produce documents that would reveal its customer list. *See* Dkt. No. 249-2 at 12–13. Earlier this year, NSO argued that it would be nearly impossible to determine even which of its customers were involved in accessing the mobile devices of the Target Users.

---

arch-terrorists, criminals and crime bosses." Ronen Bergman, Weaving a Cyber Web, Yedioth Ahronoth, https://www.ynetnews.com/articles/0,7340,L-5444998,00.html (Jan. 11, 2019).

[4] Plaintiffs moved to strike NSO's affirmative defense. *See* Dkt. No. 140 at 14. The Court declined to rule on Plaintiffs' motion, *see* Dkt. No. 182-1 at 15, but Plaintiffs intend to reassert it at the proper juncture.

3

1  *Id.* at 13.  If NSO refuses to disclose what it knows about the identities of the Target Users, it
2  should not be permitted to mount a defense based on this information.

3  For the same reasons, the Court should preclude NSO from offering defenses or arguments
4  at trial to suggest that its products are used exclusively for legitimate law enforcement purposes,
5  such as preventing terrorism and human trafficking, while suggesting that Plaintiffs' products en-
6  able these and other social evils by allowing for encrypted communication.  Such arguments have
7  no bearing on NSO's liability, no connection to any cognizable defense, and would waste the
8  Court's time and confuse the jury.  *See* Fed. R. Evid. 403.

9  **III.    If the Court Allows NSO to Explore the Identities of the Target Users, Plaintiffs**
10 **Should Be Able to Show That Certain Target Users Were Members of Civil Society**

11 If the Court grants this discovery from Citizen Lab, or allows NSO to defend itself based
12 on the identities of the Target Users, Plaintiffs should be able to present evidence to rebut NSO's
13 claims.  As Plaintiffs have explained, *see* Dkt. No. 250 at 2, Citizen Lab assisted in identifying
14 certain Target Users as part of Plaintiffs' effort to notify Target Users that they were victims of
15 NSO's hacking.  Based on information that Plaintiffs provided, Citizen Lab determined that ap-
16 proximately 105 Target Users appear to be members of civil society, whose public roles raise
17 serious questions as to whether they were targeted for political or other reasons, as opposed to
18 legitimate law enforcement purposes.  Citizen Lab determined that another 102 Target Users are
19 government or religious officials.  This information has been produced in discovery.  To the extent
20 NSO is permitted to trade on the identities of the Target Users in its defense, fairness dictates that
21 Plaintiffs have the opportunity to rebut that defense with contrary evidence.

22 Finally, the identities of Target Users may support Plaintiffs' requests for injunctive relief
23 and for punitive damages.  The fact that NSO's spyware affirmatively harmed the public by tar-
24 geting journalists, human rights activists, and opposition politicians supports Plaintiffs' position
25 that the balance of the equities tips in Plaintiffs' favor and an injunction is in the public interest.
26 *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Although not necessary to
27 Plaintiffs' ability to recover, the identities of the Target Users also help establish that NSO's profits
28 were gained unjustly, and bear on Plaintiffs' request for punitive damages.  *See* Cal. Penal Code

4

§ 502(e)(4) (allowing punitive damages when a defendant's tortious wrongdoing rises to the level of "oppression, fraud, or malice").

## IV.   NSO Is Not Entitled to Additional Discovery from Citizen Lab

Regardless of whether the Court affirms its conclusion that allegations related to the identities of the Target Users "are not relevant to the claims or defenses to be presented at trial," Dkt. No. 299 at 3, NSO has not shown a need for the further discovery that its motion for issuance of a letter rogatory seeks. Plaintiffs have already produced documents that contain identifying information for each Target User, and the sources supporting Citizen Lab's categorization of certain Target Users as members of civil society. Plaintiffs have also produced communications with Citizen Lab, and documents related to Plaintiffs' response to NSO's unauthorized intrusions. This information is sufficient for NSO to confirm or rebut Citizen Lab's categorizations. NSO has also noticed the depositions of Plaintiffs' current and former employees who interfaced with Citizen Lab, and can ask them questions about their interactions with Citizen Lab to the extent they believe it is relevant.

If the Court allows additional discovery related to the identities of the Target Users, exploration of whether Citizen Lab's identifications of the Target Users were accurate should suffice. Plaintiffs have already produced information to NSO that should allow NSO to evaluate the accuracy of Citizen Lab's identifications. By contrast, evidence that Citizen Lab harbored a potential bias against NSO is not relevant and would only waste time at trial. *Cf.* Fed. R. Evid. 403. And even if Citizen Lab's bias were relevant, NSO can argue it through ample public evidence, including Citizen Lab's extensive public reporting on NSO's wrongdoing. No further discovery from Plaintiffs or Citizen Lab is proportional to the needs of the case.

PLAINTIFFS' RESPONSE TO ORDER ON MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

Dated: April 5, 2024

DAVIS POLK & WARDWELL LLP

By: */s/ Micah G. Block*
    Micah G. Block (SBN 270712)
    DAVIS POLK & WARDWELL LLP
    1600 El Camino Real
    Menlo Park, California 94025
    Telephone: (650) 752-2000
    Facsimile:  (650) 752-2111
    Email: micah.block@davispolk.com

    Greg D. Andres
    Antonio J. Perez-Marques
    Craig T. Cagney
    (admitted *pro hac vice*)
    DAVIS POLK & WARDWELL LLP
    450 Lexington Avenue
    New York, New York 10017
    Telephone: (212) 450-4000
    Facsimile: (212) 701-5800
    Email: greg.andres@davispolk.com
           antonio.perez@davispolk.com
           craig.cagney@davispolk.com

    *Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*