Sheri Pan (SBN 316136)
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile:  (415) 636-5965
sheri@zwillgen.com

Marc J. Zwillinger (*pro hac vice*)
Steven L. Lane (*pro hac vice*)
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298
marc@zwillgen.com
steven.lane@zwillgen.com

Attorneys for Foreign Non-Party
**The Citizen Lab**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, *et al.*,<br><br>Defendants. | Case No. 4:19-CV-07123-PJH<br><br>Hon. Phyllis J. Hamilton<br>United States District Judge<br><br>**FOREIGN NON-PARTY THE CITIZEN LAB'S RESPONSE PURSUANT TO ORDER ON MOTION FOR ISSUANCE OF LETTER ROGATORY**<br><br>Action Filed:  October 29, 2019 |

Foreign non-party The Citizen Lab respectfully submits this response pursuant to the Court's March 26, 2024 "Order re Motion for Issuance of Letter Rogatory" (ECF No. 299), which invited the parties and The Citizen Lab to address the relevance of, and the need for discovery relating to, Plaintiffs' allegation that "a relatively small proportion" of those targeted by NSO's Pegasus spyware via WhatsApp ("Target Users") are members of "civil society." As this Court already recognized, Plaintiffs' "civil society"-related allegation is not relevant to the parties' claims or defenses. **Underscoring that fact, the parties have now both made clear that neither intends to offer primary evidence at trial about the identities of the Target Users unless the other does so.** As NSO's main justification for seeking discovery from The Citizen Lab was Plaintiffs' pre-trial disclosures, Plaintiffs have eliminated that ground by making it abundantly clear that they do not intend to present evidence about the identities of the Target Users in their case-in-chief. For that reason, discovery concerning Plaintiffs' civil society allegation should now be recognized as irrelevant and disproportionate to the needs of the case. Moreover, Plaintiffs have already produced to NSO detailed information about the identities of the Target Users, and NSO has not shown a need for the further discovery that it seeks from The Citizen Lab, a foreign non-party, on this or any other issue. Finally, NSO's requested discovery on the Target Users and other spyware victims would impose unique burdens and harms both on The Citizen Lab and on the spyware victims who have participated as subjects in research studies with The Citizen Lab. The Court should deny NSO's motion in its entirety.

## ARGUMENT

**I.  Each Party Has Disclaimed the Need to Present Evidence About the Identities of the Target Users Unless the Other is Permitted to Do So.**

Information about The Citizen Lab's limited role[1] in helping identify recipients of NSO's spyware is not a key element of this case that would justify discovery through the Letters Rogatory

---

[1] As The Citizen Lab has previously explained, Plaintiffs did not rely on The Citizen Lab for any technical analysis of the 1,400 devices at issue here. *See* The Citizen Lab's Opp'n to Defs' Mot. (ECF No. 294-2) at 12. And, in any event, this Court already denied the portion of Defendants' letter-rogatory motion concerning Plaintiffs' allegations that NSO's spyware was installed on the targeted devices. *See* ECF No. 299 at 1-2.

procedure. As the Court has already correctly determined, Plaintiffs' allegation that the Target Users include members of "civil society" is "an ancillary part of this case." *See* Order (ECF No. 292) at 6. Plaintiffs allege in a single sentence of their complaint that "[t]he Target Users included attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials." Compl. ¶ 42. Neither that single sentence, nor the similar statements that Plaintiffs have made in other filings, relates to a necessary element of any of their claims. Indeed, as Plaintiffs reaffirm in their Response to the Court's March 26 Order, they "can prove that NSO violated the Computer Fraud and Abuse Act ("CFAA"), the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), and the WhatsApp Terms of Service, all without evidence about the identities of the Target Users." Pls.' Resp. (ECF No. 300) at 1. **Plaintiffs further disclaim any intent "to call Citizen Lab witnesses or seek to present evidence as to the identities of the Target Users as part of their case-in-chief,"** unless Defendants are permitted to present such evidence in support of their justification defense, discussed below. *Id.* (emphasis added).

Defendants concede that the civil society allegation is irrelevant to the elements of Plaintiffs' claims. *See* Defs.' Reply in Supp. of Mot. for Issuance of Letter Rogatory (ECF No. 298) at 5 ("In relation to the elements of Plaintiffs' claims, the relevance of this allegation appears dubious indeed."). Nevertheless, they contend that "**if**" Plaintiffs are allowed to make the "civil society" issue "a focal point of their case" at trial, then "discovery into the bases for, and reliability of, Plaintiffs' allegation . . . will be relevant to NSO's defenses." *Id.* (emphasis added). Specifically, Defendants assert that, **if** Plaintiffs were to focus on victim identity evidence at trial, such evidence "**would**" also be relevant to their justification defense—*i.e.*, Defendants' contention they "acted in good faith and pursuant to legitimate law enforcement, national security, intelligence and business justifications." *Id.* (emphasis added).[2] But Plaintiffs have now made clear that they

---

[2] Discovery in support of this purported defense would also be inappropriate because, as Plaintiffs persuasively argue, the defense is a nonstarter, both legally and factually. CFAA's law enforcement exception applies only to the activities of domestic law enforcement or intelligence agencies; it is plainly inapplicable to the conduct of a foreign private entity like NSO. *See* 18 U.S.C. § 1030(f) (exempting "lawfully authorized investigative, protective, or intelligence activity of a law

2

do not intend to present evidence about the identities of the Target Users in their case-in-chief, much less make it a "focal point" of their case at trial.[3] Accordingly, Defendants have no need to offer evidence in response.

Because both parties have disclaimed the intent to present evidence about the identities of the Target Users unless the other does so, it is clear that The Citizen Lab's role is not key to either party's case. Accordingly, additional discovery on the issue would be neither relevant nor proportionate to the needs of the case.[4]

## II. NSO Has Already Received Ample Discovery About the Identities of the Target Users.

Defendants' motion should also be denied because Defendants have already received Plaintiffs' communications with The Citizen Lab about The Citizen Lab's assistance to Plaintiffs in identifying and in notifying certain Target Users. Plaintiffs have already produced documents that contain identifying information for each Target User, along with the sources supporting The Citizen Lab's categorization of certain Target Users as members of civil society. *See* Pls.' Resp. (ECF No. 300) at 5. Plaintiffs have likewise already produced their pre-complaint communications with The Citizen Lab, as well as documents relating to Plaintiffs' response to NSO's unauthorized intrusions. *See id.*; *see also* Pls.' Opp'n to Defs.' Mot. to Compel (ECF No. 250) at 5 ("Plaintiffs have produced all communications between Plaintiffs and Citizen Lab relevant to Citizen Lab's role related to the case, which occurred entirely before the complaint was filed."). This information, together with

---

enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States"). Moreover, Defendants have provided no information suggesting that any of them are or were the targets of legitimate law enforcement activities that would support such a defense. *See* Pls.' Resp. (ECF No. 300) at 3.

[3] Both parties state that victim identity evidence "could" also be probative of whether NSO engaged in fraudulent, intimidating, harassing, malicious, or oppressive conduct, an issue that could bear on Plaintiffs' request for punitive damages. Defs.' Reply (ECF No. 298) at 6; *see also* Pls.' Resp. (ECF No. 300) at 4-5 (stating that "the identities of Target Users may support Plaintiffs' requests for injunctive relief and for punitive damages"). But Plaintiffs have made clear that such information is "not necessary to Plaintiffs' ability to recover." *Id.* at 4.

[4] Defendants seek information from The Citizen Lab not only about the Target Users, but also about known and suspected victims of *other* intrusions involving the Pegasus spyware. *See* Letter Rogatory (ECF No. 288-1) at 5-6. Discovery about victims of different attacks would be even more clearly irrelevant and disproportionate here.

3
RESPONSE PURSUANT TO ORDER ON MOTION FOR ISSUANCE OF LETTER ROGATORY
CASE NO. 4:19-CV-07123-PJH

publicly available information about the Target Users, is sufficient to permit Defendants to confirm or rebut Plaintiffs' categorizations of them as attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials, in the event that the need later arises. Additional information about what The Citizen Lab thinks about these Target Users is not relevant. Moreover, NSO has noticed the depositions of Plaintiffs' current and former employees who interfaced with The Citizen Lab, and can question them about their interactions with The Citizen Lab to the extent they believe those interactions have some import. *See id.* Given the minimal relevance of The Citizen Lab's views on the boundaries of "civil society" and the extensive information NSO has already received about the Target Users, the Court should reject NSO's demand for further discovery from foreign non-party The Citizen Lab.

**III.    The Requested Discovery Would Impose Impermissible Burdens on The Citizen Lab that Far Outweigh any Benefit.**

The discovery NSO seeks would subject The Citizen Lab to undue and impermissible burdens, as The Citizen Lab explained in its opposition to NSO's motion. *See* ECF No. 294-2. The surviving portion of NSO's proposed letter rogatory seeks a broad range of information (and related testimony) about the Target Users and other known or suspected victims of NSO's spyware, spanning a period of more than eight years. The disclosure of such sensitive victim-related information would threaten The Citizen Lab's continued operations in support of its mission, which entails investigating digital espionage against civil society, documenting the effects of online technologies and practices on freedom of expression, analyzing the privacy, security, and information controls of popular applications, and examining transparency and accountability mechanisms relevant to the relationship between corporations and state agencies regarding personal data and other surveillance activities.[5]

Particularly given NSO's animosity toward The Citizen Lab, *see* Defs.' Mot. for the Issuance of Letter Rogatory (ECF No. 288) at 2, allowing Defendants to have broad discovery into The Citizen Lab's work relating to NSO spyware victims would roll back years of progress, expose

---

[5] *See* The Citizen Lab, *About The Citizen Lab*, https://citizenlab.ca/about/.

4

individuals already victimized by NSO's activities to the risk of further harassment, including from their own governments, impinge upon academic freedom, and severely chill The Citizen Lab's forward-looking initiatives. Importantly, The Citizen Lab is obligated under its research ethics protocol and its agreements with research subjects—templates of which Plaintiffs have produced to Defendants as exhibits to their agreements with The Citizen Lab—to maintain the confidentiality of subjects' information.[6] Individuals impacted by NSO's activities in the future would very likely be unwilling to work with The Citizen Lab if doing so could result in further disclosure of their sensitive information to NSO in discovery. The immediate and irreversible impact of allowing broad victim-related discovery on The Citizen Lab's operations is both foreseeable and cognizable. These burdens would greatly outweigh any marginal benefit that the requested discovery might offer and provide an additional reason for denying Defendants' motion for the issuance of a letter rogatory in its entirety. *See* Fed. R. Civ. P. 26(b)(1); *see also Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) (non-party subpoena recipient's potential loss of goodwill that would result from subpoena compliance was a cognizable burden); *Bickley v. Schneider Nat'l, Inc.*, No. C 08-5806 JSW (JL), 2011 WL 1344195, at *4 (N.D. Cal. Apr. 8, 2011) (quashing subpoenas that would have burdened plaintiffs' privacy rights and had a "chilling effect" on plaintiffs' future employment prospects).

## **CONCLUSION**

For the foregoing reasons, and the additional reasons stated in The Citizen Lab's opposition to NSO's motion (ECF No. 294-2), NSO's motion for a letter rogatory as to The Citizen Lab should be denied.

---

[6] Those agreements also provide a strong basis for The Citizen Lab to invoke the researcher-participant and journalist-source privileges available under Canadian law, calling into question whether the information NSO seeks is even discoverable. *See* The Citizen Lab's Opp'n to Defs' Mot. (ECF No. 294-2) at 18.

1  DATED: April 12, 2024            **ZWILLGEN PLLC**

                                    By: /s/ *Steven L. Lane*
                                    Steven L. Lane (*pro hac vice*)
                                    steven.lane@zwillgen.com

                                    Attorney for Foreign Non-Party
                                    **The Citizen Lab**