UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, et al.,<br><br>    Defendants. | Case No. 19-cv-07123-PJH<br><br>**ORDER DENYING MOTION FOR ISSUANCE OF LETTER ROGATORY**<br><br>Re: Dkt. No. 288, 303 |

    Before the court is NSO's motion for the issuance of a letter rogatory to the Ontario, Canada Superior Court of Justice, seeking discovery from The Citizen Lab at the Munk School of Global Affairs & Public Policy of the University of Toronto. The court previously issued an order denying the motion in part, and calling for further briefing on the remainder of the motion. See Dkt. 299.

    In particular, the court directed the parties and non-party Citizen Lab to file supplemental briefs addressing NSO's argument that the issuance of a letter rogatory was warranted based on Citizen Lab's possession of "information relevant to plaintiffs' allegation[] . . . that plaintiffs and Citizen Lab have categorized a relatively small proportion of the Target Users as members of 'civil society,' subject matter[] on which plaintiffs intend to introduce testimony from Citizen Lab at trial." See Dkt. 299 at 1-2 (citing Dkt. 288 at 7).

    The court's previous order noted that the complaint does not use the term "civil society," but makes the related allegation that "[t]he Target Users included attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign

government officials." Dkt. 1, ¶ 42. Citizen Lab defines "civil society" to include "individuals working in advocacy, such as minority rights advocates and human rights defenders, media, members of opposition parties, and lawyers working on cases with a political dimension." See Dkt. 288 at 6-7; Dkt. 303-3 at 28.

The court initially concluded that the 'civil society'-related allegations appeared to be "an ancillary part of this case," as they did not directly relate to any of the asserted claims or defenses. See Dkt. 292 at 6. In its first ruling on the present motion, the court indicated that it was "inclined to follow its earlier ruling and conclude that these [civil society] allegations are not relevant to the claims or defenses to be presented at trial," but first directed plaintiffs to file a supplemental brief either explaining "the reasons why these allegations have appeared in court filings and how they will be used at trial," or disclaiming reliance on the 'civil society' allegations and conceding any related evidence would not be presented at trial. See Dkt. 299 at 3. The court also directed NSO and Citizen Lab to file responsive briefs. The briefing is now complete, and having considered the parties' and non-party's arguments, the court rules as follows.

As an initial matter, there appears to be no dispute that the issuance of a letter rogatory is within the court's discretion, and that the relevant standard is whether the discovery sought falls within the scope of discovery authorized by Federal Rule of Civil Procedure 26. See, e.g., Asis Internet Services v. Optin Global, Inc., 2007 WL 1880369 (N.D. Cal. June 29, 2007) (citing cases).

Plaintiffs' brief argues that they "can establish their claims without the identities of the target users." See Dkt. 300 at 2. Plaintiffs acknowledge that "[n]o element of any of plaintiffs' claims depends on the target users' identities." See id. at 3. Plaintiffs further argue that they "do not currently intend to call any witness from Citizen Lab at trial, or to use any of Citizen Lab's documents that plaintiffs have not already produced." See id.

Plaintiffs then argue that NSO has "repeatedly focused on the identities of the target users" to justify their conduct, claiming that "the target users were criminals and terrorists throughout its filings in this case, without ever producing factual support." See

Dkt. 300 at 3 (citing Dkt. 215 at 1, Dkt. 252 at 13, Dkt. 258 at 9, Dkt. 265 at 4, n.2, Dkt. 288 at 1). Plaintiffs argue that NSO's asserted affirmative defense of "good faith / legitimate justification" is both legally and factually unsound, and asks the court to preclude NSO from asserting it. See Dkt. 300 at 3-5. Plaintiffs emphasize that "NSO has not produced a single document showing that any of the target users were criminals or terrorists." See id. at 4.

Plaintiffs then argue that "if the court allows NSO to explore the identities of the target users, plaintiffs should be able to show that certain target users were members of civil society." Dkt. 300 at 5.

NSO's brief starts by arguing that plaintiffs have improperly used their brief as a "pseudo-motion in limine to exclude certain arguments at trial." See Dkt. 303-2 at 3. NSO then argues that it is "entitled to explain its business and technology at trial," and specifically, "should be allowed to introduce res gestae evidence that explains to the jury Pegasus's real purpose: to enable sovereign governments that have not built their own technology to conduct the same sort of intelligence-gathering, law-enforcement, [and] counterterrorism investigations routinely conducted in the United States by our own government." See id. at 4.

NSO then describes the type of additional information that it seeks to obtain through the requested letter rogatory. NSO explains that plaintiffs have produced a spreadsheet from Citizen Lab with a list of names of 105 individuals who were categorized as members of 'civil society' (as that term is defined by Citizen Lab, set forth above), and another list of names of 102 individuals categorized as 'VIP' targets, mostly consisting of government officials. See Dkt. 303-3, Ex. 1. NSO argues that, for approximately 40% of the names on those lists, Citizen Lab's level of confidence for the categorization was something less than "high," and NSO seeks further information about why Citizen Lab's level of confidence was less than "high" for those individuals. See Dkt. 303-2 at 7.

Citizen Lab's brief argues that "NSO's main justification for seeking discovery from

Citizen Lab was plaintiffs' pretrial disclosures," and that "plaintiffs have eliminated that ground by making it abundantly clear that they do not intend to present evidence about the identities of the target users in their case-in-chief." See Dkt. 302 at 2.  Citizen Lab further argues that "plaintiffs have already produced documents that contain identifying information for each target user, along with the sources supporting Citizen Lab's categorization of certain target users as members of civil society," and that "additional information about what Citizen Lab thinks about these target users is not relevant." See id. at 4-5.

As an initial matter, the court concludes that the 'civil society' related allegations are not relevant to plaintiffs' case-in-chief, and thus, NSO's original stated reason for seeking discovery from Citizen Lab – namely, that "plaintiffs and Citizen Lab have categorized a relatively small proportion of the Target Users as members of 'civil society,' subject matter[] on which plaintiffs intend to introduce testimony from Citizen Lab at trial" – is no longer applicable.  See Dkt. 288 at 7 (emphasis added).

That said, through the course of this briefing, the parties have clarified that the 'civil society'-related allegations may be relevant to NSO's affirmative defense that it "acted in good faith and pursuant to legitimate law enforcement, national security, intelligence and business justifications." See Dkt. 128 at 10.  And while plaintiffs argue that the court should preclude NSO's affirmative defense as lacking legal or factual support, the court agrees with NSO that it would be premature to order that remedy, which is more properly suited to a motion in limine.

Thus, rather than analyzing the extent to which plaintiffs intend to rely on the 'civil society'-related allegations, the proper analysis for the court to undertake is the extent to which plaintiffs' allegation in the complaint that "[t]he Target Users included attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials" (Dkt. 1, ¶ 42) and similar statements in pleadings about 'civil society' relate to NSO's affirmative defense that it "acted in good faith and pursuant to legitimate law enforcement, national security, intelligence and business justifications."

Additionally, the court notes that the scope of requested discovery sought by NSO in its proposed letter rogatory is plainly overbroad. See Dkt. 288-1, Schedule A (document requests), Schedule B (deposition topics). Instead, if the court orders discovery at all, it will be limited to the type of information described in NSO's brief – namely, "how Citizen Lab conducted its analysis or came to its conclusions" as reflected in the referenced spreadsheet. See Dkt. 303-2 at 3-4.

As a general matter, the court is unpersuaded that the 'civil society'-related allegations are directly relevant to NSO's affirmative defense. In hypothetical terms, a given individual may be the proper subject of law enforcement or national security efforts even if that individual is also an attorney, journalist, etc. In other words, proving that a given individual is a member of 'civil society' does not necessarily negate NSO's affirmative defense as to that individual.

However, the court understands that plaintiffs have raised the 'civil society' issue because they may argue that any purported law enforcement or national security justifications were pretextual, and to that extent, the 'civil society' allegations may indeed become relevant. And, as mentioned above, NSO seeks this letter rogatory based on the argument that Citizen Lab has information as to "whether some targeted individuals were or are members of 'civil society' – i.e. 'attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials,' as alleged in the Complaint [Dkt. 1, ¶ 42] – rather than terrorists or criminals." See Dkt. 288 at 1. To that end, Citizen Lab has pointed out that "plaintiffs have already produced documents containing identifying information for each target user." See Dkt. 300 at 3, Dkt. 302 at 4.

Thus, NSO now has sufficient information to identify which of the 105 individuals on the 'civil society' spreadsheet (and/or which of the 102 individuals on the 'VIP' spreadsheet) it has reason to believe are criminals and/or terrorists. Identifying such individuals would serve to streamline and narrow the scope of any discovery needed from non-party and foreign entity Citizen Lab. For the other individuals – i.e., the individuals for which NSO does not claim to have evidence of criminal/terrorist activity – there is no

5

need to scrutinize Citizen Lab's categorization of them.

In other words, to the extent that NSO believes that its evidence of the target users' alleged criminal/terrorist activity by may be undermined by Citizen Lab's categorization of certain individuals as members of 'civil society' (and/or 'VIPs'), the court will potentially allow discovery into the basis of Citizen Lab's categorization of those individuals.  However, plaintiffs have argued that "NSO has not produced a single document showing that any of the target users were criminals or terrorists," and NSO did not respond to that argument in its brief.  See Dkt. 300 at 4.  In the absence of any specific evidence of criminal/terrorist activity (or other law enforcement justification), the court fails to see the relevance of scrutinizing the categorization of each of the approximately 200 names on Citizen Lab's spreadsheet.

Moreover, plaintiffs have already produced an email exchange where plaintiffs' counsel asks Citizen Lab "what criteria does CL use to determine if a target is civil society or not," and Citizen Lab responds with an explanation of how they define the term 'civil society' and how they collect information about the targets' employment, political, and social activities.  See Dkt. 303-3, Ex. 2.  NSO appears to seek more granular information about why certain individuals were categorized a certain way, or why the confidence level for those categorizations was less than "high," which would only become relevant if NSO were to present evidence that those specific individuals were involved in criminal/terrorist activity.  To the extent that NSO chooses to rely on more generalized evidence that its software was licensed for law enforcement purposes, the already-produced evidence from plaintiffs regarding Citizen Lab is more than sufficient for the parties to present their arguments on NSO's affirmative defense.

Accordingly, NSO's motion for issuance of a letter rogatory is DENIED without prejudice to being renewed if NSO were to come forward with evidence that specific individuals on Citizen Lab's 'civil society' or 'VIP' lists were involved with criminal/terrorist activity.  To be clear, NSO is not required to definitively prove its affirmative defense at this stage of the case, and even if NSO fails to come forward with such evidence, the

affirmative defense will not be stricken in the absence of a fully-briefed motion on that issue. Instead, in order for the court to determine whether some of the discovery sought by the requested letter rogatory is relevant, the court simply requires NSO to make some initial showing that it has evidence for its "good faith / legitimate justification" affirmative defense as to any of the 207 specific individuals on the 'civil society' and 'VIP' lists, in order to show that the additional evidence from foreign non-party Citizen Lab would indeed be relevant as to those individuals.

Before seeking to renew its motion, NSO must first provide any such discovery (i.e., evidence showing alleged criminal/terrorist activity by the 'civil society or 'VIP' individuals) to plaintiffs, along with notice that it intends to renew this motion for issuance of a letter rogatory as to those individuals, and plaintiffs shall then have seven (7) days to provide notice to NSO as to whether they concede the relevance of the requested discovery from Citizen Lab as to those individuals, or whether they continue to dispute the discovery's relevance.

In either instance, NSO may then file a renewed motion with the court – to be filed as a joint discovery letter, with both NSO and plaintiffs stating their positions, as well as Citizen Lab. Any renewed motion will be decided on the papers, without a hearing.

Finally, NSO's motion to seal (Dkt. 303) is GRANTED.

**IT IS SO ORDERED.**

Dated: May 2, 2024

                /s/ *Phyllis J. Hamilton*
              PHYLLIS J. HAMILTON
              United States District Judge