# KING & SPALDING

Aaron Craig
King & Spalding LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Direct Dial: +1 213 443 4311
ACraig@kslaw.com

June 12, 2024

The Honorable Phyllis J. Hamilton, Senior United States District Judge
Ronald V. Dellums Federal Building & United States Courthouse
1301 Clay Street, Courtroom 3
Oakland, CA 94612

Re:   Discovery Matter in *WhatsApp LLC, et al. v. NSO Group et al.*, 4:19-CV-07123-PJH

Dear Judge Hamilton:

Pursuant to the Court's standing orders, the parties submit this joint letter concerning the production of documents associated with WhatsApp witness Susan Glick. The parties have exchanged extensive correspondence and have held three conferences, most recently on May 29, 2024. Despite these efforts, the parties require the Court's intervention.

## I.   NSO'S POSITION

NSO seeks the production of 13 specific documents (the "Glick Google/Quip Docs") that are embedded by hyperlinks in emails that WhatsApp has already produced. The emails belong to WhatsApp's former public policy manager, Susan Glick—an important witness who was centrally involved in Plaintiffs' efforts to identify and notify the approximately 1,400 users referenced in the Complaint. NSO needs these 13 documents to prepare for and conduct Ms. Glick's deposition, which has now been postponed twice as a result of Plaintiffs' refusal to produce her documents. The documents are plainly relevant to this case—they are part and parcel of materials whose relevance Plaintiffs have conceded by producing them. Moreover, at the February 15, 2024, hearing on discovery motions, *Plaintiffs' counsel agreed on the record to conduct reasonable searches for such linked documents* as requested (Exh. A at 49:10-11), and the Court denied NSO's motion to compel in part on the basis of that representation (*see* ECF No. 292 at 5-6.) Plaintiffs now refuse to honor that pledge, asserting a belated relevance objection and a privilege objection (without a privilege log). Plaintiffs cannot refuse to participate in discovery while NSO navigates its obligations under Israeli law. NSO is diligently attempting to satisfy those obligations on the timeline previously explained to both Plaintiffs and to the Court—and regardless, it is well-recognized that parties' discovery obligations are independent.

### A.   Background

In early March, the parties agreed to schedule Ms. Glick's deposition for May 8, 2024, with Plaintiffs to complete production of Ms. Glick's custodial documents beforehand. After NSO expressed concerns regarding the paucity of Plaintiffs' production of Ms. Glick's custodial documents, Plaintiffs produced 351 documents from Ms. Glick's files on April 23, 2024. The

Page 2

production was incomplete, however, as multiple emails contained embedded links to internal Google Docs and Quip Docs that were not produced.  NSO had previously raised Plaintiffs' failure to produce such hyperlinked materials in their December 2023 motion to compel and at the February 15, 2024 discovery hearing.  (*See* ECF No. 257-2 at 4, 6; Exh. A at 47-48.)  In response, Plaintiffs' counsel represented to the Court at the February 15 hearing that "*if there's an email that refers to a [linked Google Doc] or some other documents, we are happy to look for those.*"  (Exh. A at 49:10-11.)

NSO thus requested the missing Glick Google/Quip Docs on April 24 and 26, 2024.  It informed Plaintiffs that Ms. Glick's deposition could not proceed without them.  On May 2, 2024, NSO identified the emails containing 13 still-unproduced Glick Google/Quip Docs by Bates number.  In response, Plaintiffs confirmed that they would produce these documents to the extent not "privileged."  On May 4, 2024, Plaintiffs' counsel wrote that they were "working to complete the production of any outstanding documents" identified in NSO's May 2 email, and on May 6, 2024, Plaintiffs' counsel confirmed that they would "produce the documents as soon as we are able."  In reliance on Plaintiffs' promises, Defendants agreed to reschedule Ms. Glick's deposition to June 4, 2024, "provided that the missing [Glick Google/Quip Docs] are produced 10 days in advance."

On Friday, May 24, 2024, Plaintiffs produced more documents, but not the Glick Google/Quip Docs.  On May 29, 2024, the parties held a videoconference.  Despite their prior assurances, Plaintiffs *for the first time* asserted that the Glick Google/Quip Docs are not discoverable.

### B.    Discussion

As a threshold matter, Plaintiffs' complaint that NSO has yet to produce documents is irrelevant.  *See Choudhuri v. Wells Fargo Bank, N.A.*, WL 1738034, at *2 (N.D. Cal. May 4, 2017) ("Plaintiff's obligation to provide documents is independent of Defendant's discovery obligations.")

With respect to the seven supposedly privileged Glick Google/Quip Docs, Plaintiffs have not provided a log substantiating whatever privilege claims they are asserting, leaving NSO (and the Court) unable to meaningfully evaluate the claims of privilege.  Indeed, NSO has not received *any* privilege log to date.  Even in response to this letter motion, Plaintiffs refuse to provide the basic information that would be contained in a privilege log.  Plaintiffs fail to identify the attorneys who supposedly revised each of the seven documents; the client (Meta or WhatsApp) represented; the nature of the seven documents; the subject matter of the seven documents; the persons or entities who received or sent the document; or the date the document was generated, prepared, or dated.  *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).  Plaintiffs' refusal to produce a log within a reasonable period of time, coupled with their refusal to provide the factual basis supporting their claim, require that the seven documents be produced.  *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (in the absence of a log, or the "particulars typically contained in a privilege log," boilerplate objections of privilege are "presumptively insufficient").

With respect to the remaining documents withheld, Plaintiffs' newly concocted relevance

objection is meritless.  Plaintiffs' base their objection solely on the Court's May 2, 2024, Order (ECF No. 305) denying, without prejudice, NSO's request for a letter rogatory to take discovery from non-party Citizen Lab.  Of course, that Order was issued (in part) on Plaintiffs' representations that they had produced—or would produce—the very documents now at issue. Furthermore, that Order did not purport to circumscribe the scope of *party* discovery, nor did the Court hold that victim identification was irrelevant.  Rather, the Order states plainly that the Court may grant NSO's request to pursue third-party discovery about "victim identification" from Citizen Lab upon submission of "evidence showing alleged criminal/terrorist activity by the 'civil society' or 'VIP' individuals."  NSO has since uncovered a huge amount of such evidence, even using only publicly available, English-language sources.  NSO provided that information to Plaintiffs on May 30, under the process set forth in the Court's May 2, 2024, Order, and Defendants intend to renew their motion for letter rogatory shortly.  The Court's Order denying without prejudice the letter rogatory cannot be fairly read as excluding from party discovery information about the identification and notification of the targets.  Indeed, evidence regarding the nature of the users allegedly surveilled by Pegasus is relevant to multiple disputed issues—ranging from whether any access to WhatsApp servers was "authorized" under the CFAA as part of legitimate law enforcement or intelligence activities to Plaintiffs' own requests for equitable remedies.[1]

Plaintiffs' sudden reversal of their agreement to produce the Glick Google/Quip Docs is unsupported by case law.  The sole authority provided by Plaintiffs in pre-filing correspondence is *Nichols v. Noom Inc.*, 2021 WL 948646 (S.D.N.Y. Mar. 11, 2021), which merely addressed whether one party would be required to collect hyperlinked documents a second time using a particular collection tool.  *See id.* at *1.  Of importance here, the *Nichols* court had previously permitted requests for production of hyperlinked documents on an as-needed basis (*id.*), which is precisely the relief NSO seeks.  NSO's request is also consistent with this Court's recent handling of hyperlinked documents in a number of recent cases.  *See, e.g.*, *In re Uber Technologies, Inc. Passenger Sexual Assault Litig.*, 2024 WL 1772832, at *4 (N.D. Cal. April 23, 2024) (permitting parties to request up to 200 hyperlinked documents); *In Re Social Media Adolescent Addiction/Personal Injury Products Liability Litig.*, 2024 WL 1786293, at *8 (N.D. Cal. Feb. 20, 2024) (allowing requests of up to 500 hyperlinked documents); *In Re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, at *1 (N.D. Cal. June 2, 2023).  Plaintiffs should be ordered to produce the 13 Glick Google Docs so that Ms. Glick's deposition can go forward on July 17, 2024—the date set forth in Defendants' new subpoena to Ms. Glick.

## II.    PLAINTIFFS' POSITION

To date, Plaintiffs have produced over 24,000 documents, including over 500 documents from Susan Glick.  NSO has produced only 17 documents of its own.  Despite NSO's almost complete lack of participation in discovery, it asks this Court to compel Plaintiffs to produce privileged and irrelevant documents.  NSO's request should be denied.

Ms. Glick, a former public policy manager at WhatsApp, helped plan WhatsApp's outreach to the WhatsApp users targeted by NSO's spyware over a two-month period from late July 2019

---

[1] Plaintiffs' suggestion, *infra*, that they can avoid this discovery by moving to strike a single affirmative defense is thus incorrect.

to late September 2019.  The documents that NSO seeks are being withheld either (a) because they are privileged or (b) because they contain irrelevant and sensitive information about the victims of NSO's attack.[2]  Plaintiffs are currently working on their privilege log for their entire collection of thousands of documents, which will substantiate Plaintiffs' privilege claims.  Additionally, as the Court knows, Plaintiffs have already provided information about each of the 1,400 WhatsApp users that NSO targeted.  In light of the Court's recent ruling that Plaintiffs' productions about each of the victims were sufficient unless NSO produces specific evidence about them—which it has not—Plaintiffs are withholding documents containing yet more sensitive information about those users.  Of note, NSO's complaints about Plaintiffs' document production come against the background that NSO has produced only 17 documents from its own files, has not produced a single email from any NSO employee, has not offered a single date when its witnesses can be deposed, and has not produced its own privilege log.

### A.    Background

Ms. Glick played no role in uncovering NSO's attack on Plaintiffs' computers, attributing the attack to NSO, or identifying the victims of the attack.  Plaintiffs did not include Ms. Glick on their initial disclosures, and do not expect to call Ms. Glick at trial.

NSO first informed Plaintiffs of its intent to depose Ms. Glick in January 2024.  Given her lack of substantive involvement in the case, Plaintiffs had not yet collected documents from Ms. Glick.  After Plaintiffs' counsel obtained Ms. Glick's consent to represent her in this action, the parties agreed to schedule Ms. Glick's deposition on May 8, 2024.  Though NSO never requested Ms. Glick's documents, Plaintiffs voluntarily collected emails and centralized files from Ms. Glick.  By April 1, 2024, Plaintiffs produced over 200 documents sent from, to, or copying Ms. Glick, including 142 emails with Citizen Lab.  On April 23, 2024, just four days after NSO's counsel first raised concerns about the lack of documents from Ms. Glick, Plaintiffs produced another 351 documents from Ms. Glick, including 7 more emails with Citizen Lab, and offered to find alternate dates if NSO wanted to postpone Ms. Glick's deposition.

On May 2, 2024, this Court denied NSO's motion for issuance of letter rogatory.  *See* Dkt. No. 305.  The next day, Plaintiffs' counsel informed NSO's counsel that it was "discussing with our client how yesterday's order from Judge Hamilton impacts our production obligations with respect to information related to victim identification and outreach, and Citizen Lab's role in this case."  On May 29, 2024, Plaintiffs' counsel explained that, in light of the Court's order, Plaintiffs' document production related to the victims of NSO's attack was "more than sufficient" as "[t]he burden of reviewing and producing such additional documents related to victim identification easily outweighs the minimal benefit to NSO, given that the Court has deemed this topic not relevant at this juncture."

### B.    Discussion

---

[2]   The emails that NSO flagged on May 10, 2024 contain links to 15 unique centralized files. Plaintiffs have produced two of these documents (WA-NSO-00155463, WA-NSO-00155470), but are withholding six that are privileged, six that are irrelevant, one that is both.

### 1.  NSO Has Not Shown The Relevance or Proportionality of Additional Discovery About the Victims of Its Attack

Plaintiffs have provided NSO with detailed information about the victims of NSO's attack. *See* Dkt. No. 250 at 6. Plaintiffs have also produced hundreds of technical documents detailing how Plaintiffs were able to identify the WhatsApp numbers that NSO attacked, as well as documents showing Plaintiffs' outreach to the victims of NSO's attack.

Based on the Court's May 2, 2024 order, Plaintiffs are withholding seven documents with sensitive information about the identities of the victims, pending the Court's determination as to the relevance of additional discovery on this topic. In its order, the Court acknowledged that the identities of the victims "are not relevant to plaintiffs' case-in-chief" and was "unpersuaded" that information about the victims' identities was "directly relevant to NSO's affirmative defense." Dkt. No. 305 at 4, 5. As the Court recognized, any information that Plaintiffs and Citizen Lab possess about the identities of NSO's victims has little bearing on whether NSO actually hacked their phones as part of some "law enforcement or national security efforts." *Id*. at 5. Before ordering more discovery about the victims' identities, the Court directed NSO to produce "specific evidence" that any of the victims were hacked as part of an investigation into "criminal/terrorist activity (or other law enforcement justification)." *Id.* at 6. Because NSO has yet to produce such evidence, Plaintiffs' burden of producing more victim identification documents from yet another document custodian outweighs any benefit to NSO of receiving documents that the Court has deemed irrelevant.[3] If the Court concludes that these documents are relevant based on NSO's factually and legally deficient "law enforcement" defense, Plaintiffs request leave to move to strike that defense before producing any additional documents.

### 2.  Plaintiffs Will Provide a Privilege Log

Plaintiffs are withholding an additional seven centralized files collected from Ms. Glick as privileged. These documents were extensively reviewed and revised by Plaintiffs' in-house counsel, and many of them are prominently marked as privileged on their face. NSO first requested a privilege log on April 24, 2024—and demanded that Plaintiffs produce it within two days. In response, Plaintiffs advised NSO that they had no objection to producing a privilege log, but could not produce one on the accelerated time frame that NSO demanded. Plaintiffs have collected over 100,000 documents, and are working on a privilege log for the many documents that they have properly withheld as privileged. On May 29, 2024, Plaintiffs offered to produce a privilege log for the documents that NSO seeks in this motion, but NSO rejected that offer, canceled Ms. Glick's deposition, and served this joint letter. Plaintiffs expect to produce a privilege log covering all documents from all custodians in the coming weeks.

---

[3]  NSO cites cases concerning parties' obligations to collect documents hyperlinked in documents that have previously been produced. But those cases have no bearing here: Plaintiffs have agreed to collect all the hyperlinked documents that NSO requested, but are withholding certain hyperlinked documents on privilege and relevance grounds. None of the cases cited by NSO obligate Plaintiffs to produce privileged or irrelevant documents just because they are referenced in produced emails.

Page 6

Sincerely,

Aaron Craig, Counsel for Defendants

Craig Cagney, Counsel for Plaintiff

# EXHIBIT A

Pages 1 - 73

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Phyllis J. Hamilton, Judge

WHATSAPP, INC., et al.,           )
                                  )
          Plaintiffs,             )
                                  )
  VS.                             )    **NO. C 19-07123 PJH**
                                  )    **SEALED PAGES 9 to 42**
NSO GROUP TECHNOLOGIES            )    **AND PAGES 54 to 73**
LIMITED, et al.,                  )
                                  )
          Defendants.             )
_____  )
                                  Oakland, California
                                  Thursday, February 15, 2024

**SEALED TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    DAVIS POLK AND WARDELL LLP
                    450 Lexington Avenue
                    New York, New York  10017
          BY:  **ANTONIO PEREZ-MARQUES, ATTORNEY AT LAW**
               **CRAIG CAGNEY, ATTORNEY AT LAW**
               **GREG D. ANDRES, ATTORNEY AT LAW**

                    DAVIS POLK AND WARDELL LLP
                    1600 El Camino Real
                    Menlo Park, California  94025
          BY:  **MICAH G. BLOCK, ATTORNEY AT LAW**

                    **O'MELVENY and MYERS LLP**
                    7 Times Square
                    New York, New York  10036
          BY:  **JEFFREY A.N. KOPCZYNSKI, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

```
 1   APPEARANCES:  (continued, via videoconference)

 2   For Defendants:
                            KING & SPALDING LLP
 3                          633 West Fifth Street - Suite 1700
                            Los Angeles, California  90071
 4                  BY:  JOSEPH AKROTIRIANAKIS, ATTORNEY AT LAW
                         AARON S. CRAIG, ATTORNEY AT LAW
 5   For Bill Marczak:
                            ZWILLGEN PLLC
 6                          1900 M Street, NW - Suite 250
                            Washington, D.C.  20036
 7                  BY:  MARC J. ZWILLINGER, ATTORNEY AT LAW
                         STEVEN L. LANE, ATTORNEY AT LAW
 8
     Also Present:          MICHAEL CHMELAR
 9                          JESSICA ROMERO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   the 1,400 names; and I think we are entitled to know why it is

2   that they believe that these 200 or 100 -- depending on what

3   point in time you are asking -- are people that shouldn't have

4   been targeted using NSO software.

5        **THE COURT:**  Haven't you already been given the

6   information about how they identified the devices?  Isn't that

7   in that 5,000 plus document production?

8        **MR. AKROTIRIANAKIS:**  It isn't, Your Honor.  I mean,

9   what we have -- what we have is what we have, and what it --

10  and it does not include WhatsApp messages, for example, even

11  though the e-mails that they did give us make clear that there

12  are WhatsApp messages.

13       There are no Google docs even though the e-mails that they

14  have given us make clear that they were using Google docs,

15  having regular weekly updates.  The updates aren't there.

16       They had set up an e-mail address internally that is CL,

17  Citizen Lab, dash inquiries at WhatsApp.com.  There is no

18  e-mail at all to or from that address even though the parties

19  discuss in their e-mail the use of that e-mail alias for

20  updates.

21       They didn't even provide a signed copy of their contract

22  with Citizen Lab, and they haven't provided anything around

23  what they refer to in the e-mails as a tracker.

24       So that's just like a large handful of -- of documentation

25  that we know exists from what they did provide that they didn't

PROCEEDINGS

```
 1    provide.

 2        What it looks like they did is that they did an e-mail

 3    search and nothing else.  And I don't know if that means

 4    that -- that they are refusing to produce those things or if

 5    they failed to preserve them notwithstanding their relevance

 6    to -- to the case, Your Honor.

 7        But, their specific responses to our discovery requests

 8    don't obligate them to do anything.

 9        And so what the Court should order is that they respond to

10    the requests saying what they are going to provide consistent

11    with the scope of relevance under Rule 26 and then to actually

12    provide those documents.

13        I mean, if the Court reads the requests in this case and

14    the responses, the responses are basically:  "Well, I don't

15    care what the request says.  All we are going to give you is

16    our external communications with Citizen Lab, no internal

17    documents; and we are going to limit that arbitrarily to the

18    date of the complaint without any principled basis or legal

19    basis for doing that."

20        And it is not to say that there is any kind of claim of

21    privilege here, Your Honor.  They are just saying that they are

22    not going to do it.

23            THE COURT:  Okay.  All right.  Response.

24            MR. ANDRES:  Yes, Your Honor, Greg Andres, good

25    afternoon.
```

**PROCEEDINGS**

 1        So, just to reorient a little, we have produced the

 2   documents pre-complaint that relate to the communications with

 3   Citizen Lab and our investigation document.

 4        So that is complete if not substantially complete.  I

 5   can't say with certainty there might not be other documents.

 6   We did produce 5,000 documents.

 7        And that pre-complaint issue is now moot to the extent

 8   that Counsel is referring to issues within those documents that

 9   refer to other documents.

10        So if there's an e-mail that refers to a G-doc or some

11   other documents, we are happy to look for those.  I think we

12   are available to meet and confer on those; but really what's

13   being asked is specific questions about specific documents.

14   And, again, we are happy to meet and confer on that.  I think

15   that's the appropriate way forward with respect to any

16   pre-complaint issues with the production.

17        We made the production, albeit after the motion was filed.

18   I believe it was around the holidays.  It was December 22nd and

19   a motion came in.  We produced them in January.  So that bucket

20   I think is moot, and we are happy to meet and confer.

21        The second issue, Your Honor, is with respect to the

22   post-complaint documents that have been requested, which we

23   have not produced or reviewed because we don't believe that NSO

24   has established relevance of those documents and hasn't met its

25   burden and here is why.

```
 1  the other Zoom link for the other webinar.
 2            THE CLERK:  Yes.
 3            THE COURT:  Okay.
 4                (Proceedings adjourned at 2:53 p.m.)
 5                       ---oOo---
 6
 7
 8                 CERTIFICATE OF REPORTER
 9        I certify that the foregoing is a correct transcript
10  from the record of proceedings in the above-entitled matter.
11
12  DATE:   March 1, 2024
13
14
15
16       _____
17        Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
18        United States District Court - Official Reporter
19
20
21
22
23
24
25
```