# EXHIBIT A

**Pages 1 - 73**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Phyllis J. Hamilton, Judge

| | |
|---|---|
| WHATSAPP, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| VS. ) | **NO. C 19-07123 PJH** |
| ) | **SEALED PAGES 9 to 42** |
| NSO GROUP TECHNOLOGIES ) | **AND PAGES 54 to 73** |
| LIMITED, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Oakland, California
Thursday, February 15, 2024

**SEALED TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
        DAVIS POLK AND WARDELL LLP
        450 Lexington Avenue
        New York, New York  10017
  **BY: ANTONIO PEREZ-MARQUES, ATTORNEY AT LAW**
      **CRAIG CAGNEY, ATTORNEY AT LAW**
      **GREG D. ANDRES, ATTORNEY AT LAW**

        DAVIS POLK AND WARDELL LLP
        1600 El Camino Real
        Menlo Park, California  94025
  **BY: MICAH G. BLOCK, ATTORNEY AT LAW**

        **O'MELVENY and MYERS LLP**
        7 Times Square
        New York, New York  10036
  **BY: JEFFREY A.N. KOPCZYNSKI, ATTORNEY AT LAW**

    **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

```
 1   APPEARANCES:   (continued, via videoconference)

 2   For Defendants:
                            KING & SPALDING LLP
 3                          633 West Fifth Street - Suite 1700
                            Los Angeles, California  90071
 4                     BY:  JOSEPH AKROTIRIANAKIS, ATTORNEY AT LAW
                            AARON S. CRAIG, ATTORNEY AT LAW
 5   For Bill Marczak:
                            ZWILLGEN PLLC
 6                          1900 M Street, NW - Suite 250
                            Washington, D.C.  20036
 7                     BY:  MARC J. ZWILLINGER, ATTORNEY AT LAW
                            STEVEN L. LANE, ATTORNEY AT LAW
 8
     Also Present:          MICHAEL CHMELAR
 9                          JESSICA ROMERO
```

1   █████████████████████████████████████████████████
2  ███████████████████████████████████  ████████████
3  █████████████████████████████████████████████████
4  ████████████████████████
5      ████████████  █████
6      ████████████  ███████████████████████████████
7  █████████████████████████████████████████████████
8  █████████████████████████████████████████████
9  █████████████████████████████████████████████
10 █████████████████████████████████████████████████
11 █████████████████████████████████████████████████
12 █████████████████████████████████████████████
13 ██████
14     ████████████  ████  ████████████
15     ████████████  ████████████

16      (The following proceedings were unsealed by Order of
17   the Court:)
18      **THE COURT:** Okay. Now, this is the NSO motion to
19 compel. This motion relates to documents regarding Plaintiffs'
20 relationship with Citizen Lab and with internal documents that
21 identify users of the devices claimed to have been improperly
22 accessed.
23      With regard to the objection of WhatsApp, that this issue
24 should have followed a robust meet-and-confer and a joint
25 letter as it's not a *Richmark* type issue, I agree, that should

1  have been the appropriate route taken.  Nonetheless, it's
2  before me and I'm prepared to discuss it with you and to make a
3  determination.
4  But in the future, please follow the regular proceeding
5  particularly in an important case such as this where some of
6  the information was provided before this hearing.
7  So obviously I expect you all to meet and confer in good
8  faith and try to resolve as many of these things as you can.
9  Now, with regard to the merits, it appears that Plaintiff
10  has produced all communications with Citizen Labs [sic]
11  occurring before the complaint was filed but not after.
12  So I will like you to explain the significance of the
13  before and after distinction.
14  Additionally, it appears that Plaintiff has produced the
15  best information regarding the identities of the owners of
16  the -- and users of the 1,400 targeted devices and has revealed
17  or produced over 5,000 internal communications showing its
18  effort to, you know, attribute the attack appropriately.
19  So, what's -- so with the later produced discovery, what
20  is still at -- at issue in this regard with regard to the
21  second item and that is the identity of the users?  You already
22  have that, don't you, Mr. Akrotirianakis?
23  **MR. AKROTIRIANAKIS:**  I don't know that we do,
24  Your Honor.  There is -- in the documents that we have
25  received -- well, first of all, we have received documents I

1  think that -- in terms of Citizen Lab documents that are -- its
2  identification of which of the people are claimed to be other
3  than terrorists and criminals, and that's a number where they
4  have been all over the map.  It is also a number, Your Honor,
5  where -- and I would direct the Court specifically to Exhibit F
6  of the Knoller declaration that's filed together with our reply
7  brief, which, of course, we were only able to file it with the
8  reply brief because this information wasn't provided prior to
9  the -- to the motion being made -- where it is very clear that
10 Citizen Lab has its own agenda about, you know, what those
11 targets are.
12      There's a large debate about, you know, who should be
13 considered to be, quote-unquote, civil society, which is a
14 Citizen Lab term for this; and they talk in the parties'
15 correspondence about, you know, why Citizen Lab wants to blow
16 the number up, so to speak, to suit its own purposes.
17      Now, in the -- the claims that internal communications
18 have already been produced, we have the list of custodians
19 that -- that WhatsApp has chosen for this case.  And, of
20 course, we have now some of the e-mails of people who are
21 corresponding with Citizen Lab and the people who are
22 corresponding with Citizen Lab are not listed as custodians.
23      I don't know if that was -- if that was deliberate or not,
24 but what we do have is two arbitrary limitations.  One is this
25 significance of the before and after distinction, which I would

1   submit to the Court that there isn't, you know, any principled
2   distinction as to why they -- if -- communications that
3   occurred prior to the complaint are relevant and proportional,
4   why post-complaint Citizen Lab documents wouldn't also be
5   proportional.
6       And here, the central part of the narrative that has been
7   advanced -- it's all over the complaint.  I expect that it's
8   going to be a large part of the trial -- is this idea that --
9   that our clients' software is being used or misused other than
10  in compliance with the end user certificates that our client
11  gets from its customers, and that it is -- you know, the proof
12  of that is that there's all these people out there that -- that
13  are not -- well, that have been identified by Citizen Lab as
14  members of civil society.
15      So I do think that this is critical information for us to
16  have both in discovery and to present at trial, and I think
17  they are arbitrarily limiting it based on their own wanting to
18  cherry pick so they can put forward their case and without
19  allowing us to test it in discovery.
20          **THE COURT:**  But this whole -- I'm at a loss as to
21  really understanding what the significance of the allegation
22  that the -- that the spyware was used to target members of
23  civil society.  That's not something that's part of the
24  Plaintiffs' -- the elements of the claims, is it?
25          **MR. AKROTIRIANAKIS:**  Much more of the complaint is

1  about that than the matters we have just been discussing,
2  Your Honor, relative to their motion to --
3         **THE COURT:**  How is that an element of what they have
4  to prove?
5         **MR. AKROTIRIANAKIS:**  Well, if what you're saying,
6  Your Honor, is that you are not going to allow them to present
7  at trial who the --
8         **THE COURT:**  No, I haven't said anything like that.
9  I'm not saying one way or the other.  I don't understand where
10 it -- where this term fits within the elements of what need to
11 be proven for their claims.
12        **MR. AKROTIRIANAKIS:**  Well, I don't think it is
13 pertinent to what needs to be proven for their claims, but it
14 is, nonetheless, relevant under Rule 26 to the claims that they
15 are making in the case because their narrative for their claims
16 is that NSO's software was abused by NSO's customers in order
17 to spy on people who they shouldn't have been spying on.
18       And the reason that they shouldn't have been spying on
19 those people is because those people, according to Citizen Lab,
20 are not terrorists and suspected criminals but instead, are
21 dissidents, journalists, attorneys, things like that,
22 Your Honor.
23       And if that's what we are going to have at the trial, I
24 think that we are entitled to test that now.  I think that we
25 are entitled to know how it is that -- that Facebook identified

1  the 1,400 names; and I think we are entitled to know why it is
2  that they believe that these 200 or 100 -- depending on what
3  point in time you are asking -- are people that shouldn't have
4  been targeted using NSO software.
5      **THE COURT:**  Haven't you already been given the
6  information about how they identified the devices?  Isn't that
7  in that 5,000 plus document production?
8      **MR. AKROTIRIANAKIS:**  It isn't, Your Honor.  I mean,
9  what we have -- what we have is what we have, and what it --
10 and it does not include WhatsApp messages, for example, even
11 though the e-mails that they did give us make clear that there
12 are WhatsApp messages.
13     There are no Google docs even though the e-mails that they
14 have given us make clear that they were using Google docs,
15 having regular weekly updates.  The updates aren't there.
16     They had set up an e-mail address internally that is CL,
17 Citizen Lab, dash inquiries at WhatsApp.com.  There is no
18 e-mail at all to or from that address even though the parties
19 discuss in their e-mail the use of that e-mail alias for
20 updates.
21     They didn't even provide a signed copy of their contract
22 with Citizen Lab, and they haven't provided anything around
23 what they refer to in the e-mails as a tracker.
24     So that's just like a large handful of -- of documentation
25 that we know exists from what they did provide that they didn't

1  provide.
2  What it looks like they did is that they did an e-mail
3  search and nothing else.  And I don't know if that means
4  that -- that they are refusing to produce those things or if
5  they failed to preserve them notwithstanding their relevance
6  to -- to the case, Your Honor.
7  But, their specific responses to our discovery requests
8  don't obligate them to do anything.
9  And so what the Court should order is that they respond to
10  the requests saying what they are going to provide consistent
11  with the scope of relevance under Rule 26 and then to actually
12  provide those documents.
13  I mean, if the Court reads the requests in this case and
14  the responses, the responses are basically:  "Well, I don't
15  care what the request says.  All we are going to give you is
16  our external communications with Citizen Lab, no internal
17  documents; and we are going to limit that arbitrarily to the
18  date of the complaint without any principled basis or legal
19  basis for doing that."
20  And it is not to say that there is any kind of claim of
21  privilege here, Your Honor.  They are just saying that they are
22  not going to do it.
23        **THE COURT:**  Okay.  All right.  Response.
24        **MR. ANDRES:**  Yes, Your Honor, Greg Andres, good
25  afternoon.

1           So, just to reorient a little, we have produced the
2   documents pre-complaint that relate to the communications with
3   Citizen Lab and our investigation document.
4           So that is complete if not substantially complete.  I
5   can't say with certainty there might not be other documents.
6   We did produce 5,000 documents.
7           And that pre-complaint issue is now moot to the extent
8   that Counsel is referring to issues within those documents that
9   refer to other documents.
10          So if there's an e-mail that refers to a G-doc or some
11  other documents, we are happy to look for those.  I think we
12  are available to meet and confer on those; but really what's
13  being asked is specific questions about specific documents.
14  And, again, we are happy to meet and confer on that.  I think
15  that's the appropriate way forward with respect to any
16  pre-complaint issues with the production.
17          We made the production, albeit after the motion was filed.
18  I believe it was around the holidays.  It was December 22nd and
19  a motion came in.  We produced them in January.  So that bucket
20  I think is moot, and we are happy to meet and confer.
21          The second issue, Your Honor, is with respect to the
22  post-complaint documents that have been requested, which we
23  have not produced or reviewed because we don't believe that NSO
24  has established relevance of those documents and hasn't met its
25  burden and here is why.

1  　　　　If we step back for a second and understand the role of
2  Citizens Lab [sic] in this case, they are a -- they are an
3  interdisciplinary lab at the University of Toronto that have
4  connections in the civil rights community and other folks
5  around the world.
6  　　　　Their role in this case was to help identify the victims
7  and contact them to let them know that they had been attacked
8  in this spyware attack.
9  　　　　So that was their role and they did that pre-complaint.
10 And that's why those documents are relevant and that's why we
11 produced them.
12 　　　　We don't believe that NSO has established in any
13 meaningful way what the relevance of post-complaint
14 communications are, which is really all that's at issue here.
15 　　　　I did hear -- although I can't say that I understand
16 entirely -- this campaign or the relevance of some campaign of
17 Citizens Lab [sic] with respect to NSO.
18 　　　　Meta and WhatsApp brought this case, and we did it to
19 defend our users.  And so with respect to any bias that they
20 claim is a basis for these documents, Citizen's Lab [sic]
21 criticism of NSO is not a secret.  They are open and
22 transparent about that, and the documents that Counsel has
23 cited in its brief about that criticism are the very documents
24 that they can use to challenge any bias here if, in fact,
25 that's even relevant.  It is not clear to me that it is.

```
 1        So, again, in short, produce the pre-complaint
 2   communications investigation documents.  If there are others
 3   out there, we are happy to meet and confer with the Defendants
 4   to finish that process.
 5        As you have already noted, that process was abandoned by
 6   the Defendants before they filed their complaint.  We are where
 7   we are.  We are not complaining about that.
 8        With respect to the post-complaint communications, our
 9   view is that the Defendants haven't established their
10   relevance.  So thank you, Your Honor.
11            THE COURT:  All right.
12            MR. AKROTIRIANAKIS:  Your Honor?
13            THE COURT:  Go ahead.
14            MR. AKROTIRIANAKIS:  After the Court issued its
15   ruling -- and a lot of this comes -- a lot of this -- the
16   subject of this motion comes from this fact -- on November 30th
17   of last year, they served amended initial disclosures; and they
18   identified Citizen Lab as a witness that has information
19   relevant to the identification of Defendants as responsible for
20   unauthorized access and abuse of the WhatsApp service.
21        So what Mr. Andres just said is different from what they
22   have said in their initial disclosures.  He is now trying to
23   say that, oh, well, it's not that.  It's just the
24   identification of these people -- or the informing the people
25   that -- that -- that they were -- that they were targeted.
```

```
 1    That's not what they said in their initial disclosures talking
 2    about this.
 3         The -- the role of Citizen Lab is, as they say,
 4    apparently; and the post-complaint documents may well inform
 5    the bias that we have heard that -- about already Citizen Lab
 6    having and bringing it to bear in this investigation as
 7    described in their initial disclosures that was apparently
 8    outsourced to Citizen Lab.
 9         And, you know, I don't think that we need to sort of take
10    their word on this.  As you say, that's not the point of
11    discovery.
12              THE COURT:  Okay.  So essentially you are seeking the
13    post-complaint information about communications between
14    WhatsApp and Citizen Labs to further explore Citizen Lab's bias
15    against your client and that's relevant because bias of a
16    witness is always relevant.  Is that your argument?
17              MR. AKROTIRIANAKIS:  That's one part of it,
18    Your Honor.  And the other part is after the complaint was
19    filed, there's anything about Citizens Lab's [sic] methodology
20    for doing any of the things that it was asked to do, that it
21    contracted with the Plaintiffs to do, then I think we are
22    entitled to that because it impeaches their conclusion, as
23    described in their initial disclosures, that Citizen Lab has
24    information about the Defendants being responsible for the
25    unauthorized access and abuse of the WhatsApp service.
```

1    It goes beyond just bias, Your Honor.  It's their bias and
2  flaws in their methodology.  Those are the two main areas I
3  think that are important.
4         **THE COURT:**  Okay.  But they are just a witness.  They
5  didn't bring a case against you.
6         **MR. AKROTIRIANAKIS:**  Right.  And this motion to compel
7  is not directed to Citizen Lab.  It is directed to the
8  Plaintiff in this case who did bring a case against us and
9  asking them to review their documents and to provide the ones
10 that -- that are appropriate discovery in light of their
11 initial disclosures.
12    It's not a big lift.  They know who was communicating with
13 Citizen Lab.  They have apparently, you know, gone around that
14 in terms of selecting their custodians in this case; but they
15 know who was communicating with Citizen Lab, Your Honor.
16    They just refuse to turn it over for a period of time that
17 in another period of time they concede is relevant.
18         **THE COURT:**  Okay. All right.  All right.  Let's turn
19 from this to the last motion because I have another
20 2:00 o'clock matter that's waiting in the wings.  I would like
21 to wrap this up in the next five minutes or so.
22    I will ask our Citizen Lab representative.  I guess that's
23 Mr. Lane --
24         **THE CLERK:**  Yes.
25         **THE COURT:**  -- to excuse himself at this time, and we

1  the other Zoom link for the other webinar.
2         **THE CLERK:** Yes.
3         **THE COURT:** Okay.
4              (Proceedings adjourned at 2:53 p.m.)
5                        ---oOo---

8                    **CERTIFICATE OF REPORTER**
9         I certify that the foregoing is a correct transcript
10 from the record of proceedings in the above-entitled matter.

12 DATE:   March 1, 2024

16 _____
                 *Marla Knox*
17      Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
          United States District Court - Official Reporter