

1900 M Street NW, Suite 250  
Washington, DC 20036

**Phone:** +1 202 296 3585  
**Website:** www.zwillgen.com

June 27, 2024

The Honorable Phyllis J. Hamilton  
Senior United States District Judge  
United States District Court for the  
Northern District of California

Re:   *WhatsApp LLC, et al. v. NSO Group Technologies Limited et al.*, 4:19-CV-07123-PJH  
DISCOVERY MATTER

**FILED UNDER SEAL**

Dear Judge Hamilton:

Pursuant to Fed. R. Civ. P. 26 and 45, nonparty Dr. William Marczak moves to quash Defendants' document and deposition subpoenas to him. *See* Exhs. A & B. Alternatively, Dr. Marczak seeks a protective order under Rule 26(c) limiting the substantive scope of any discovery from him to the scope of discovery, if any, that the Court permits from The Citizen Lab. Plaintiffs do not oppose these requests. Defendants oppose these requests.

### I.   DR. MARCZAK'S POSITION

The Court should quash Defendants' subpoenas to Dr. Marczak. In recent months, Defendants have aggressively pursued discovery from foreign nonparty The Citizen Lab and nonparty Dr. Marczak, a computer scientist, researcher, and independent contractor for The Citizen Lab. The only basis for that discovery is a single allegation in Plaintiffs' complaint that some of the individuals whose devices were penetrated through Defendants' software "included attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials." Dkt. 1, ¶ 42 (the "civil society allegation"). Defendants have misleadingly sought to recast that allegation as "core" to this case—and to Defendants' meritless "law enforcement" affirmative defense—to justify burdening Dr. Marczak and The Citizen Lab with roving and harassing discovery.

The Court has repeatedly rejected Defendants' efforts in rulings Defendants brazenly disregard and distort *infra*. Earlier this year, in addressing the parties' dueling motions to compel, the Court concluded that the civil society allegation is, at best, an "ancillary" part of the case, rejecting Defendants' contrary characterization. Dkt. 292 at 6. The next month, the Court partially denied Defendants' motion for a letter rogatory as to The Citizen Lab, holding that Plaintiffs—not The Citizen Lab—were the appropriate target for discovery about whether Pegasus was installed on any of the Target Devices. Dkt. 299 at 2-3. Then, in May, the Court *fully* denied Defendants' motion. The Court reaffirmed its initial ruling that Plaintiffs' civil society allegation was not relevant to Plaintiffs' case in chief and described Defendants' requested discovery from The Citizen Lab as "plainly overbroad." Dkt. 305 at 5. Addressing Defendants' purported defense that they acted in good faith to promote law-enforcement objectives, the Court explained that "the already-produced evidence from plaintiffs regarding Citizen Lab is more than sufficient for the parties to present their arguments on NSO's affirmative defense." *Id.* at 6. Against that backdrop,

the Court permitted Defendants to renew their letter-rogatory motion only if they presented evidence that "specific individuals on Citizen Lab's 'civil society' or 'VIP' lists were involved with criminal/terrorist activity." *Id.* Even then, any potential discovery from The Citizen Lab would be limited to "those individuals." *Id.* at 7.

The net result is that this Court has already determined the maximum potential scope of discovery from The Citizen Lab under Rule 26 having considered the same fundamental arguments Defendants raise *infra*. That scope is exceedingly limited and, as mentioned, hypothetical only. Although Defendants have renewed their letter-rogatory motion, they have fallen woefully short of their burden on that renewed motion. *See* Dkt. 314 at 4-9. Regardless, at this stage, no discovery from The Citizen Lab is justified under this Court's orders. Necessarily, then, no discovery from nonparty Dr. Marczak is warranted, given that his only possible relevance to this case is through his work for The Citizen Lab. That dynamic is readily apparent from the *complete overlap* between the document requests propounded to Dr. Marczak and the overly broad document requests and deposition topics in Defendants' proposed letter rogatory to The Citizen Lab. *Compare* Ex. A *with* Dkt. 288-1, Schedules A & B.

As a result, *all* the subjects about which Defendants claim to need discovery from Dr. Marczak (*see infra*), including those Defendants claim are "plainly relevant," were encompassed in Defendants' proposed letter rogatory that this Court already rejected as "plainly overbroad." To take just a few examples, Defendants' proposed letter rogatory sought information about "Citizen Lab's publications about Defendants and/or Pegasus, and Citizen Lab's underlying methodology" (Dkt. 288-1, Schedule B, Topic 2), and here, too, Defendants claim a need for discovery about Dr. Marczak's publications concerning Pegasus's technical functionality. Likewise, the proposed letter rogatory sought documents relating to "the investigation or identification of any electronic device upon which you and/or, to your knowledge, any representative of Citizen Lab believe, or at any time believed, Pegasus was installed." Dkt. 288-1, Schedule A, Topic 4. And, here, Defendants insist Dr. Marczak's "digital investigation" work is fair game for discovery even though that work is unrelated to the intrusions alleged in the complaint and the Court already ruled that Defendants had failed to show why discovery from The Citizen Lab about whether Pegasus was installed on Targeted Devices would not be duplicative of discovery already obtained from Plaintiffs, or be more easily obtained from them. *See* Dkt. 299 at 2. In no uncertain terms, the Court rejected those discovery requests as to The Citizen Lab by carving out only a small, distinct zone of potential discovery from The Citizen Lab. Defendants' position *infra* attempts an audacious end run around this Court's prior rulings.

Defendants' subpoenas to Dr. Marczak should be quashed for a simple reason: they are coextensive with discovery Defendants have sought from The Citizen Lab that this Court has already determined is irrelevant and "plainly overbroad" under Rule 26. Like The Citizen Lab, Dr. Marczak is not a party to this litigation and had limited involvement, if any, in categorizing Targeted Users as members of civil society or "VIP targets." And "[w]here the information sought is not relevant to a claim or defense then any burden whatsoever imposed would be by definition 'undue.'" *Unsworth v. Musk*, No. 19-MC-80224-JSC, 2019 WL 5550060, at *6 (N.D. Cal. Oct. 28, 2019) (cleaned up). Defendants' unexpected position that the scope of allowable discovery from an independent contractor for The Citizen Lab is broader than whatever the Court allows from The Citizen Lab itself reveals their actual goal: to harass and burden their perceived critics.

The only hypothetical subject this Court left open for possible discovery from The Citizen

Lab, which concerns Defendants' purported law-enforcement defense, does not justify discovery from Dr. Marczak. Although Defendants have now renewed their letter rogatory motion, they have not met their burden of presenting "evidence that specific individuals on Citizen Lab's 'civil society' or 'VIP' lists were involved with criminal/terrorist activity" that could support a plausible defense. Dkt. 305 at 6. If this Court denies Defendants' renewal motion as to The Citizen Lab, Defendants' coextensive discovery demands from Dr. Marczak must likewise be rejected in full.

Alternatively, a protective order limiting the substantive scope of any discovery from Dr. Marczak would be appropriate if this Court determines the subpoenas should not be quashed. *See* Fed. R. Civ. P. 26(c)(1)(D); *Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) ("Requests to non-parties should be narrowly drawn to meet specific needs for information."). Allowing Defendants to enforce their subpoenas unchecked would unduly burden and prejudice Dr. Marczak, both because Defendants seek discovery on subjects this Court has *already determined* are irrelevant and overbroad and because Dr. Marczak would undoubtedly need to expend significant resources producing documents and preparing for Defendants' unfettered deposition—a fact that is facially apparent from the concededly wide-ranging deposition Defendants seek of Dr. Marczak.[1] Permitting Defendants' discovery would run roughshod over Rule 45's mandate that the subpoenaing party "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

In the unlikely event that the Court permits limited discovery from The Citizen Lab, any discovery from Dr. Marczak should be limited to the same subjects. The Court should enter a protective order restricting the scope of any potential document production or deposition of Dr. Marczak to his role, if any, in categorizing as members of "civil society" or "VIP Targets" specific individuals whom Defendants have shown to the Court's satisfaction were involved in criminal or terrorist activity based on information supporting a plausible legitimate law enforcement defense. The protective order should also postpone Dr. Marczak's deposition until at least 30 days after its ruling on Defendants' renewed letter-rogatory motion.

## II.     PLAINTIFFS' POSITION

Plaintiffs agree with Dr. Marczak's position that NSO's subpoenas should be quashed. Despite failing to fulfill its own discovery obligations, NSO continually seeks discovery related to Citizen Lab, a nonparty that Plaintiffs do not intend to call at trial. Now, NSO attempts to obtain documents and testimony from Dr. Marczak, a researcher for Citizen Lab. Plaintiffs' understanding is that Dr. Marczak played only a limited role with respect to victim identification and outreach. For these reasons and the ones stated by Dr. Marczak above, Plaintiffs believe that NSO's subpoenas to Mr. Marczak should be quashed.

The Court has already repeatedly cast doubt on the relevance of Citizen Lab to this case. In its May 2, 2024 order, the Court ruled that the identities of NSO's victims "are not relevant to

---

[1] Dr. Marczak, having already shortened his portion of this submission at Defendants' request, respectfully requests that this Court consider this submission in full so that all stakeholders may be heard, as with the nine-page joint letter brief on Defendants' renewed letter-rogatory motion (Dkt. No. 314). Alternatively, Dr. Marczak requests that this Court permit the parties to brief the issues herein more fully, with whatever factual declarations the Court would find helpful.

3

plaintiffs' case-in-chief" or "directly relevant to NSO's affirmative [law enforcement] defense." Dkt. No. 305 at 4, 5. The Court also recognized that any information that Plaintiffs and Citizen Lab possess about the identities of NSO's victims has little bearing on NSO's law enforcement defense, which would necessarily rely on information produced by NSO showing that its targets engaged in criminal or terrorist activity. *Id*. at 5. In response to the Court's request for evidence that specific individuals on Citizen Lab's "'civil society' or 'VIP' lists were involved with criminal/terrorist activity," *id*. at 6, NSO submitted only Internet-search results about certain victims, and admitted that it cannot produce information of its own about why any victim was targeted. *See* Dkt. No. 313-2 at 4–5.[2]

Even if the Court allows additional discovery from Citizen Lab, NSO does not need documents or testimony from Dr. Marczak. The Court has already established that discovery from Citizen Lab, in the event that it is permitted, "will be limited to . . . 'how Citizen Lab conducted its analysis or came to its conclusions.'" Dkt. No. 305 at 5. As Dr. Marczak's counsel describes above, Dr. Marczak did not play a significant role in Citizen Lab's work on victim identification and outreach, which Plaintiffs largely coordinated with other Citizen Lab researchers. Though NSO describes Dr. Marczak as a "key participant" in Citizen Lab's work for Plaintiffs, the documents they cite merely include Dr. Marczak on a list of Citizen Lab employees permitted to access certain information provided by Plaintiffs. *See* Dkt. 257-3, Exh. A at WA-NSO-0006567 & Exh. B at WA-NSO-00065869. As such, Dr. Marczak is unlikely to have any information beyond what NSO could obtain from Citizen Lab.

Allowing NSO to obtain irrelevant and unnecessary discovery from Dr. Marczak also poses distinct harms to Plaintiffs. For example, the burden of NSO's irrelevant and unnecessary discovery requests to Dr. Marczak falls not only on him but also on Plaintiffs, who will be obliged to participate in any deposition of Dr. Marczak to ensure a balanced record. That burden is entirely unnecessary and disproportional to the needs of the case. The subpoenas should be quashed.

## III. DEFENDANTS' POSITION

Defendants object to *Plaintiffs* providing a statement of position. As a general rule, parties do not have standing to quash a subpoena directed to a third party absent a claim of privilege relating to the discovery sought. *Akkawi v. Sadr*, No. 2:20-CV-1034 MCE AC, 2023 WL 7388550, at *1 (E.D. Cal. Nov. 8, 2023).[3]

Addressing the substance of Dr. Marczak and Plaintiffs' arguments, both Citizen Lab and Plaintiffs have assisted Dr. Marczak in evading his obligations to produce documents and to appear for a deposition for nearly five months. His request to quash Defendants' document and deposition subpoenas, or for a protective order, should be denied. What the Court should quash are the

---

[2] Plaintiffs again seek leave to renew their motion to strike NSO's defenses that rely on victim identification. *See* Dkt. No. 306 at 5; Dkt. No. 307-2 at 5; Dkt. No. 313-2 at 6. This joint letter marks the fourth discovery dispute brought to the Court since June 12, 2024—and all four would be resolved if the Court strikes certain of NSO's defenses as legally and factually insufficient.

[3] Given the repetitive nature of their arguments, Defendants asked Plaintiffs and Marczak to collectively reduce their submissions to half of the available space in the five-page letter. They declined, and indicated that they would request additional space from the Court.

repeated efforts of Citizen Lab and Plaintiffs to conceal the information they are desperately seeking to withhold about their investigation into NSO and the "Target Users."

<u>Dr. Marczak is a Percipient Witness Defendants Intend to Call at Trial</u>. Dr. Marczak resides within this judicial district (Berkeley, CA), works as a computer science researcher for Citizen Lab (and other entities), and has researched the technologies at issue in this case for many years. Defendants have subpoenaed Dr. Marczak to appear at trial, and Defendants believe that his trial testimony will support their defenses—which are not limited to the content of the Citizen Lab "civil society" and "VIP" lists. (At the Court's request, Defendants would provide a list of additional topics about which they intend to examine Dr. Marczak. Defendants should be entitled to do so *in camera*, however, as Dr. Marczak and Plaintiffs are not entitled to discover Defendants' strategy in advance of the deposition.)

<u>Defendants Offered to Narrow the Scope of the Subpoena Drastically, and Dr. Marczak Refused to Discuss Narrowing</u>. In February and March 2024, counsel conferred about narrowing the scope of the subpoena. Defendants' most recent proposal was to limit the subpoena to:

*All Documents in Dr. Marczak's possession, custody or control that were created, sent, or received on or before October 29, 2019, and that relate to any or all of the following:*

- *Work that Dr. Marczak and/or Citizen Lab performed pursuant to any or all of [the five separate 2019 contractual agreements between WhatsApp and Citizen Lab];*

- *The alleged use of Pegasus to gain access to the "Target Devices" as defined in the Complaint;*

- *The identities of any of the "Target Users" as defined in the Complaint and whether or not they fall within "civil society" and/or are "VIP targets";*

- *Communications with any of the "Target Users" as defined in the Complaint.*

After the Court issued its Order relating to the Citizen Lab Letter Rogatory (Dkt No. 299), Dr. Marczak's attorneys rejected Defendants' offer on March 29, 2024, and refused to discuss any further narrowing of the subpoena.

<u>Dr. Marczak's Digital Investigation Work About the Alleged Attack on the 1,400 Target Users is Discoverable</u>. In addition to percipient knowledge about NSO, Dr. Marczak was also a key participant in Citizen Lab's "digital investigation" work for Plaintiffs regarding the alleged attack on the 1,400 target users at issue in this litigation and the WhatsApp vulnerability allegedly used in that attack. (*See* Dkt. 257-3, Exh. A at WA-NSO-00065767 & Exh. B at WA-NSO-00065869.) Dr. Marczak, a PhD in computer science, holds himself out as conducting "digital investigations." (*See* https://billmarczak.org/.) Late last year, Plaintiffs identified "Citizen Lab" as a potential trial witness in their Amended Initial Disclosures to testify about identification of Defendants as responsible for "unauthorized access and abuse of the WhatsApp service." That testimony would be that of Dr. Marczak, who has submitted testimony in other U.S. lawsuits opining on the issue whether particular devices were accessed using Pegasus. (*See, e.g.*, Dkt No. 44-1, *Elatr v. NSO Group Tech. Ltd. et al.*; Case No. 1:23-cv-779-LMB-LRV (E.D. Va.).)

Contrary to what Dr. Marczak claims, Defendants seek discovery only into Dr. Marczak's work about the vulnerability at issue in this case and its alleged use against the Target Users (as well as his bias and other areas relevant to any witness' testimony), and not his work on other vulnerabilities or other versions of Pegasus. This is demonstrated by NSO's offer to limit the scope of the subpoena (*supra*), which Dr. Marczak rejected.

Plaintiffs disclaim a "current" intention to call Dr. Marczak/Citizen Lab at trial in order to attempt to defeat discovery; notably, however, Plaintiffs have not amended their initial disclosures to remove Citizen Lab. And Plaintiffs' relationship with Citizen Lab covers areas plainly relevant to the case beyond those acknowledged by Dr. Marczak above, and by Plaintiffs in other filings. Plaintiffs relied on Citizen Lab to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in early May 2019, in the wake of publicity surrounding the existing ("zero-day") WhatsApp vulnerability allegedly exploited using Pegasus. Plaintiffs also asked Citizen Lab to reach out to the "civil society targets" in order to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. 307-3.) Dr. Marczak himself has authored numerous publications and made public statements alleging Pegasus was used against "civil society" and purporting to describe Pegasus' technical functionality. (*See, e.g.*, Dkt. 240-2, Exhs. O, P, R, S, V, W, X.) That work forms the basis of Plaintiffs' allegations that Pegasus is "misused" against members of "civil society" and other "VIPs." As a result, Dr. Marczak's work underlies numerous aspects of Plaintiffs' claims and Defendants' counterarguments—ranging from Plaintiffs' claims that NSO breached the WhatsApp terms of service because Pegasus is "illegal, or otherwise inappropriate" and used to "intimidate" or "harass" users (*see* Compl. ¶¶ 20-23); to Defendants' affirmative defenses (*see* Dkt. No. 314 at 2); to Plaintiffs' requested remedies (*see id.*). Plaintiffs' suggestion that they, Citizen Lab, and Dr. Marczak can avoid discovery on these relevant topics by moving to strike a single affirmative defense is plainly incorrect.

This Court has already recognized that discovery from Citizen Lab itself is relevant. In its May 2, 2024, order (Dkt. No. 305), the Court determined that information about the categorization of individuals as "civil society" or "VIPs" may be relevant—at a minimum—to Defendants' Sixth Affirmative Defense that Plaintiffs' claims are barred on the grounds that Defendants acted in good faith and pursuant to legitimate law enforcement, national security, intelligence and business justifications. (*Id.* at 5:13-16.) The Court further stated that it would "potentially allow discovery into the basis of Citizen Lab's categorization of" "certain individuals as members of 'civil society' (and/or 'VIPs')," if Defendants come forward with "evidence of criminal/terrorist activity (or other law enforcement justification)" relating to such persons. (*Id.* at 6:4-9.) Far from foreclosing discovery on these subjects (as Dr. Marczak suggests), the Court invited Defendants to renew their motion for a letter rogatory seeking related discovery upon providing the "initial showing" about the targets. (*Id.* at 6:24-27.) Defendants have since *made* that showing, even without the benefit of requested discovery into these matters and even being forced to rely only on publicly-available, English-language sources. Defendants recently submitted evidence that at least 26 "civil society" individuals and 23 "VIPs" on the lists Dr. Marczak helped compile are, in fact, linked to terrorism or serious criminal activity. (*See* Dkt. 314 at 2-3.)

To date, neither Citizen Lab nor Plaintiffs have attempted to rebut Defendants' showing that the "civil society" and "VIP" lists are replete with legitimate intelligence targets and criminals/terrorists (*id.* at 4-9), nor have Citizen Lab, Plaintiffs, or Dr. Marczak made any attempt

6

to defend the accuracy of Citizen Lab and WhatsApp's work. Instead, they have primarily faulted Defendants for not addressing the legal basis for the Sixth Affirmative Defense (*id.*)—which the Court expressly held Defendants need not do at this stage. (Dkt. No. 305 at 6:27-28.) While Plaintiffs and Citizen Lab criticize Defendants for not providing more information to the Court about whether Pegasus was being used in the course of law enforcement or intelligence investigations, Plaintiffs have designated the lists of target users, including Citizen Lab's lists, as "Highly Confidential Attorneys' Eyes Only," meaning that even if Defendants' attorneys knew which person on Citizen Lab's list was being investigated by which sovereign customer (they do not), Defendants' attorneys would be precluded from sharing the names with NSO's customers to seek the very information that Plaintiffs claim is needed to justify discovery.

Ultimately, Dr. Marczak does not deny—under oath or otherwise—that he has investigated purported misuses of Pegasus; that he was part of the effort ████████████████████████ ██████████████████████ that he participated in the creation of the "civil society" and "VIP" lists; or that he communicated with persons on those lists about the alleged use of Pegasus to target their devices. For reasons explained above, these are appropriate subjects of discovery in this case, including from Dr. Marczak—the only Citizen Lab employee within the Court's subpoena power.

Defendants dispute Dr. Marczak's claim that the discovery sought would be duplicative of discovery Defendants have received from Plaintiffs because (1) Plaintiffs are refusing to produce a substantial amount of their communications with Citizen Lab, even during the short time window that they agreed to produce such communications (see Dkt. No.307-2); and (2) the documents produced by Plaintiffs provide no visibility into Citizen Lab's internal processes and the work Dr. Marczak performed.

In response to the claim that Dr. Marczak does not have much knowledge about this case, if that turns out to be the case, the deposition would indeed be short, which would mean the burden on Dr. Marczak would be relatively minimal, and Defendants' use of one of their depositions would have been wasted. But Dr. Marczak, Citizen Lab, and Plaintiffs should not be permitted to continue delaying this discovery—particularly given that the process of obtaining related information from Citizen Lab in Canada may not be complete by the scheduled close of fact discovery due to the stalling tactics of Plaintiffs and Citizen Lab. Accordingly, Dr. Marczak's motion to quash Defendants' document and deposition subpoenas should be denied.

Dr. Marczak has also failed to demonstrate grounds for a protective order limiting the scope of discovery pursuant to Defendants' subpoenas. A person seeking a protective order "has the burden of proving good cause, which requires a showing that specific prejudice or harm will result if the protective order is not granted." *Blankenchip v. Citimortgage, Inc.*, 2015 WL 5009079, at *2 (E.D. Cal. Aug. 20, 2015) (quotations and citations omitted). Dr. Marczak's principal objection is that the subpoenas seek information that is purportedly "irrelevant." But that objection is meritless for reasons shown above—the discovery sought is relevant to Plaintiffs' own claims, Plaintiffs' requested remedies, and Defendants' defenses in this case. In any event, Dr. Marczak fails to "explain why the asserted lack of relevance of the requested [discovery] would subject [him] to 'annoyance, embarrassment, oppression, or undue burden or expense,' the only grounds for granting a protective order." *Id.* at *3 (denying protective order); *see also* Rule 26(c)(1). While Dr. Marczak asserts in wholly conclusory fashion that he would "need to expend significant

resources producing documents and preparing for" the requested deposition, he makes no effort to substantiate those claims. "Generalized statements of harm"—all Dr. Marczak offers—"are not good enough." *Blankenchip*, 2015 WL 5009079, at *2. Dr. Marczak has earned money and fame by making claims about alleged acts of NSO and its clients. Any burden, annoyance, or expense[4] Dr. Marczak is facing is not "undue"—it is a direct result of his work and his publicizing of that work. Dr. Marczak also omits from this letter that Defendants attempted to negotiate the scope of the subpoena to address some of his concerns, which was rejected in a bid to avoid the subpoena entirely. Dr. Marczak's alternative request for a protective order should be denied accordingly. *See id.*

Sincerely,

Steve Lane, Counsel for Nonparty Dr. William Marczak

Craig Cagney, Counsel for Plaintiff

Aaron Craig, Counsel for Defendants

---

[4] Notably, Dr. Marczak's carefully-worded statement does not indicate he is bearing any legal expense; Defendants believe that Citizen Lab is paying for Dr. Marczak's legal representation in this matter.