JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
*jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
*acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S OPPOSITION TO PLAINTIFFS' MOTION FOR ISSUANCE OF A LETTER ROGATORY PURSUANT TO THE HAGUE CONVENTION** <br><br> Ctrm:  3 <br> Judge:  Hon. Phyllis J. Hamilton <br><br> Action Filed:  10/29/2019 <br><br> **REDACTED** |

I.      **INTRODUCTION**

Conspicuously, Plaintiffs' Motion contradicts claims it made to the Court when opposing Defendants' motion to dismiss for *forum non conveniens*. Plaintiffs vigorously (and successfully) opposed *that* motion by arguing that Plaintiffs' evidence was located in the United States. Despite those representations to the Court, Plaintiffs have now filed two motions seeking to obtain evidence located in Israel—this one seeking testimony from as many as eleven Israeli witnesses, and a second motion seeking production of a computer server preserved in Israel (Dkt. No. 332).

Plaintiffs' Motion omits several salient facts. No depositions have been taken in this case to date. The parties have conferred at great length regarding depositions, and Defendants have agreed to produce three corporate officer/fact witnesses for depositions, as well as a corporate designee on appropriate topics to be requested by Plaintiffs under Rule 30(b)(6). The depositions of two third-party fact witnesses located in the U.S. (and who are also represented by Defendants' counsel) have been requested and dates have been provided. Plaintiffs nonetheless filed this Motion, without meeting and conferring with Defendants, to demand, improperly, as many as *eleven additional depositions* of Israeli witnesses (for a total of *seventeen* depositions).

The Court should deny Plaintiffs' Motion, or in the alternative, limit the letter rogatory to the two current employees. First, the eleven additional depositions requested are cumulative of the six depositions for which dates have been offered to Plaintiffs. Contrary to Plaintiffs' supposition, the senior employees offered by NSO were all employed by NSO in relevant positions during the discovery period defined by the Court. Moreover, international comity prohibits Plaintiffs from seeking broad swaths of depositions on topics that can be addressed by existing witnesses. Second, Plaintiffs seek to depose two Israeli witnesses who were not even employed by Defendants during the relevant time. Third, Plaintiffs seek an order that would authorize as many as eleven depositions, in addition to the six that are already slated to move forward by agreement, which would plainly violate the limits set forth in Federal Rule of Civil Procedure 30(a). Fourth, Plaintiffs request that their own attorneys be appointed as deposition officers, which is expressly prohibited by Federal Rule of Civil Procedure 28(c). Fifth, and finally, to the extent that Plaintiffs prematurely request a blanket approval of all questions to be asked at these

depositions under *Richmark*, such a request is premature and improper. For all these reasons, the Motion should be denied.

## II. BACKGROUND

Over the last several months, the parties have repeatedly discussed deposition scheduling. Plaintiffs have consistently refused to produce their witnesses at times convenient for Defendants' counsel and, in some cases, have refused to provide dates for witnesses at all. (*See* Declaration of Aaron Craig ("Craig Decl.") ¶ 2.) As an example, NSO has been attempting to depose former WhatsApp employee Susan Glick for months, having served three subpoenas, only to be told that Ms. Glick's only availability is now limited to the week of September 9, 2024—the final week of fact discovery, thus necessitating a fourth subpoena. (*Id.* ¶ 3.) WhatsApp has also failed to provide dates for at least three requested current or former employees of Plaintiffs (Claudiu Gheorghe, Jonathan Lee, and Michael Scott) despite repeated requests, while also reneging on multiple deposition dates for a fourth witness (current WhatsApp employee Carl Woog). (*Id.* ¶ 4.)

At the same time, Plaintiffs identified *fifteen* different current and former NSO employees—not including Rule 30(b)(6) designee(s) or third-party deponents—and demanded NSO's "position" as to all of them. (*Id.* ¶ 5.) In response, NSO stated that only six of the fifteen were even current NSO employees. (*Id.*) On April 29, 2024, Plaintiffs asked which of the six were current officers, directors, or managing agents of NSO, as those depositions could be arranged by notice. (*Id.* ¶ 6.) Plaintiffs demanded a response within two days, to "avoid an unnecessary burden on both the U.S. and Israeli courts," and reserved their right to seek letters rogatory as to the remaining witnesses in the interim. (*Id.*)

In response, NSO agreed to produce three senior executives for deposition on notice: its chief executive officer (Yaron Shohat), its Vice President Research & Development (Tamir Gazeli), and its Vice President, Client Executives (Ramon Eshkar). (*Id.* ¶ 7.) NSO's counsel has also asked repeatedly for Plaintiffs' Rule 30(b)(6) deposition topics so that discovery could proceed in the efficient spirit of the Federal Rules. (*Id.* ¶ 9.) With respect to the other witnesses about which Plaintiffs inquired, Plaintiffs did not request additional information or NSO's final position as to any. (*Id.* ¶ 8.)

On June 26, 2024, Plaintiffs filed the current application for letters rogatory without any attempt to meet and confer with Defendants. (*Id.* ¶ 10.) After this motion was filed, *Defendants* asked for a conference of counsel. (*Id.* ¶ 11.) Defendants informed Plaintiffs that at least two of the proposed Israeli deponents, Michael Herman and Guy Mohlo, were not employed by Defendants during the "relevant" time period established by the Court. (*Id.*) Accordingly, Defendants requested that Plaintiffs withdraw their application as to those two individuals. (*Id.*) Plaintiffs have refused to respond to that request. (*Id.*)

## III. ARGUMENT

The party seeking to pursue discovery through the Hague Evidence Convention bears the burden of demonstrating that proceeding in that manner is necessary and appropriate. *See DataQuill Ltd. v. High Tech Computer Corp.*, No. 08CV543-IEG(WVG), 2010 WL 11493082, at *1 (S.D. Cal. Oct. 28, 2010) (citing *Pronova BioPharma Norge AS v. Teva Pharmaceuticals USA, Inc.*, 708 F. Supp. 2d 450, 452 (D. Del. 2010)).

Any application seeking discovery under the Hague Convention must comply with the scope of discovery authorized by Rule 26. (*See* Dkt. No. 299 at 1; Dkt. No. 305 at 2.) Discovery must be both relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Court must also limit "unreasonably cumulative or duplicative discovery." Fed. R. Civ. P. 26(b)(2)(C)(i). Finally, Rule 26 incorporates Rule 30's limit on the number of depositions that may be taken. *See* Fed. R. Civ. P. 26(b)(2)(A).

Rule 26, however, is not the only consideration for a court to permit a letter rogatory. *See Radware, Ltd. v. A10 Networks, Inc.*, No. C-13-02021, 2014 WL 631537, at *2 (N.D. Cal. Feb. 18, 2014) (Mot. at 6.) "Ultimately, a court's decision whether to issue a letter rogatory requires an application of Rule 28(b) in light of the scope of discovery provided for by the Federal Rules of Civil Procedure." *See also Asis Internet Servs. v. Optin Glob., Inc.*, No. C-05-05124 JCS, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007). "Rule 28(b) must be read together with Rule 26(c), Federal Rules of Civil Procedure, which permits a court to make any order 'which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Evanston Ins. Co. v. OEA, Inc.*, C–02–01505 DFL (PAN), 2006 WL 1652315, at *2

(E.D. Cal. June 13, 2006) (quoting Fed. R. Civ. P. 26(c)). "Factors relevant to the Court's decision include '*considerations of comity*, the relative interests of the parties including the interest in avoiding abusive discovery, and the ease and efficiency of alternative formats for discovery.'" *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003).

A. **Plaintiffs' Request Should Be Denied Because the Discovery Sought Can Be Obtained from Deponents Who Have Already Agreed to Appear**

Plaintiffs are currently slated to take at least six depositions of NSO employees, corporate representatives, or third parties formerly employed by NSO corporate affiliates in the United States. NSO has agreed to produce at least three of its most senior officers or managing agents, including its current chief executive officer (Mr. Shohat) and two vice presidents (Mr. Gazneli and Mr. Eshkar). NSO may also produce additional personnel as corporate representatives once it receives Plaintiffs' proposed topics for a deposition under Rule 30(b)(6)—which Plaintiffs have refused to provide despite several requests. These six depositions are likely to address all of the significant topics identified by Plaintiffs in their request for a letter rogatory.

*Technical Topics / Research and Development*. NSO has agreed to produce its Vice President of Research and Development, Mr. Gazneli, to testify as a fact witness (consistent with any U.S. and Israeli legal restrictions on his testimony). Mr. Gazneli has been employed by NSO in various research-and-development positions since late 2015. NSO has also agreed to produce Rule 30(b)(6) designees to testify on what will presumably include a range of technical topics (again, to the extent consistent with U.S. and Israeli legal restrictions). Plaintiffs thus fail to explain why they also require depositions from *former* NSO employees Ory Samorodnitzky, Tomer Timor, Nir Peisakhov, Michael Herman, Yossi Mosingo, Shalev Hulio, and Alon Yudis, all of whom Plaintiffs identify as witnesses with knowledge of technical topics.

*NSO Sales Strategies and Business Operations*. NSO has agreed to produce its chief executive officer (Mr. Shohat) and its Vice President, Client Executives (Mr. Eshkar) to testify as fact witnesses. Mr. Shohat has been employed with NSO, first as chief operating officer and now as chief executive officer, since May 2018. Mr. Eshkar has been employed by NSO, first as a director and now as a vice president, since July 2015. NSO has also agreed to produce Rule

30(b)(6) designees to testify on what will presumably include a wide range of questions regarding its sales strategy, its marketing and business operations, its lack of involvement with the actual operation of its military and intelligence products, and related issues. Plaintiffs have also been provided, at Plaintiffs' request, with deposition dates for two former sales employees of NSO affiliate Westbridge Technologies (Mr. DiVittorio and Mr. Shaner), who Plaintiffs will presumably question about any efforts to market or license its products to potential customers, particularly in the United States. Together with any corporate representatives, Plaintiffs do not explain why these existing witnesses are insufficient and why they also require depositions from *former* NSO employees Tomer Timor, Shalev Hulio, Tami Mazel, or Guy Mohlo.

*Customer Relationship and Contracts*. Again, based on the witnesses that NSO has already agreed to produce and the corporate designees that it expects to produce, Plaintiffs fail to explain why they need additional depositions from any other current or former NSO employees to adequately address issues relating to NSO's customer relationships or customer contracts.

Given the six pending depositions, Plaintiffs' request that the Court authorize eleven *additional* depositions of Israeli citizens—most of whom are *former* NSO employees—should be denied. First, the proposed depositions are duplicative and cumulative of depositions that the parties have already agreed should proceed. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Contrary to Plaintiffs' suggestion, all of the fact witnesses being offered by NSO had relevant roles at the company during the period to which this Court has confined discovery—April 29, 2018, to May 10, 2020. (*See* Dkt. No. 292 at 4.) Plaintiffs may therefore obtain the testimony that they seek from existing witnesses. Their application for a letter rogatory identifies no unique knowledge that the agreed-upon witnesses cannot provide. Second, even assuming that the eleven Israeli deponents possess some unique knowledge, considerations of international comity should bar the issuance of the requested letter rogatory. Plaintiffs have not identified any specific, unique information that the eleven Israeli witnesses possess, above and beyond the agreed-upon witnesses, that is "important" enough to warrant seeking to compel foreign citizens (and former employees) into depositions. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). To the contrary, the information described by Plaintiffs is available to them through

1  alternative means—the existing six depositions that the parties have agreed shall proceed.
2  ███████████████████████████████████████████████████████
3  ███████████████████████████████████████████████████████
4  ███████████████████████████ (See Dkt. No. 214-3 Ex. C.)[1,2]

5  None of the Plaintiffs' cited authorities compel a different result. *In re Cathode Ray Tube
6  (CRT) Antitrust Litigation*, No. 3:07-CV-05944SC, 2015 WL 13655172 (N.D. Cal. Sept. 18, 2015)
7  involved depositions of party officers or managing agents, not requests for letters rogatory to
8  depose foreign citizens and former employees. The specific questions under consideration were
9  (1) whether a corporate representative could be deposed a second time in her individual capacity
10 and (2) whether the organization's chief executive officer should be compelled to sit for a
11 deposition over "apex rule" objections. Neither question is relevant here, particularly given that
12 NSO has agreed to produce its current chief executive officer. *Omnitracs, LLC v. Platform
13 Science, Inc.*, No. 20-CV-958-CAB-DDL, 2023 WL 2626273 (S.D. Cal. Mar. 24, 2023) involved
14 an *uncontested* motion. *See id.* at *1. Finally, *MGI Digital Tech. S.A. v. Duplo U.S.A.*, No.
15 822CV00979DOCKESX, 2023 WL 6814579 (C.D. Cal. Aug. 24, 2023), involved two former
16 employees of the plaintiff living in France. *See id.* at *1. Both were alleged to be inventors of a
17 patented technology at issue. *See id.* at *3-5. The parties did not dispute that one of the witnesses
18 possessed relevant and important information, and the plaintiff / opposing party did not suggest
19 any alternative means for obtaining the information possessed by either witness. The holding is
20 accordingly inapplicable here, where any information that is both important and relevant can be
21 obtained from current NSO employees.
22 Accordingly, Plaintiffs' request for a letter rogatory should be denied in its entirety—or, in

---

[1] Even assuming that the Plaintiffs had identified specific, unique *topics* that certain witnesses could address, and that the depositions were to proceed in some fashion, Defendants reserve their right to object to individual *questions* that may violate U.S. law, Israeli law, or a witness' right against self-incrimination. *See infra* Section III.E.

[2] There is no dispute that the witnesses sought are believed to reside in Israel, which also favors a more limited scope of discovery. *See Richmark*, 959 F.2d at 1475.

the alternative, limited to the current NSO employees identified in its disclosures (Avi Itzhak, Sarit Gil).

### B. Plaintiffs' Application Should Be Denied as to Mr. Herman and Mr. Mohlo—Both of Whom Left NSO Before the Start of the Relevant Period

The Court previously defined the relevant time period for discovery as April 29, 2018, to May 10, 2020. (Dkt. No. 292 at 4.) Two of the Israeli witnesses identified by Plaintiffs in their Motion, Michael Herman and Guy Mohlo, were not employed by NSO or Q Cyber during that time period and had left NSO before it began. Mr. Herman permanently left NSO on March 29, 2018, and Mr. Mohlo did so on January 12, 2018, both before the time period previously established by the Court as relevant for discovery. (Craig Decl. ¶ 12.) Accordingly, Plaintiffs' request for a letter rogatory as to Mr. Herman and Mr. Mohlo should be denied.

### C. Plaintiffs' Remaining Requests Should Be Limited to Four Witnesses

Federal Rule of Civil Procedure 30(a)(2) presumptively limits each side to ten depositions. Plaintiffs concede this limit. (*See* Mot. at 1 n.2.) As discussed above, Defendants have offered deposition dates for its CEO and two vice presidents: Mr. Shohat, Mr. Gazeli and Mr. Eshkar. Plaintiffs are also taking depositions of two third-party witnesses represented by Defendants' counsel—Terrence DiVittorio and Josh Shaner—and deposition dates for those witnesses have been offered to Plaintiffs. Moreover, if Plaintiffs intend to take a Rule 30(b)(6) deposition (despite not having provided topics), that would be at least these six depositions, leaving four of the ten.

Nevertheless, Plaintiffs ask the Court to issue this letter rogatory authorizing testimony from eleven additional witnesses. This request is premature under Rule 30(a)(2). "A party seeking to exceed the presumptive limit of ten depositions bears the burden of making a 'particularized showing' of the need for additional depositions" and can only ask for leave to take more than ten depositions after the party has exhausted the ten permitted under Rule 30(a)(2). *See Premier Constr. & Remodel, Inc. v. Mesa Underwriters Specialty Ins. Co.*, No. EDCV182582JGBKKX, 2019 WL 8138041, at *4 (C.D. Cal. Nov. 14, 2019) (collecting authorities). This is because, "to justify more than ten depositions," the Court "will examine the necessity of depositions already taken." *Id.* at *5. Plaintiffs state they have sought a letter rogatory as to all eleven individuals

because the Hague Convention process is lengthy and uncertain, and suggest that they will not actually take all of the depositions ordered. (S*ee* Mot. at 1 n.2). Plaintiffs provide no authority for such a "preemptive" order. .

Even if a "preemptive" order like that requested were permissible, Plaintiffs' request to depose eleven Israeli citizens, knowing that they would only be permitted to proceed with four depositions, is unduly burdensome. NSO will be forced to expend resources preparing all eleven deponents for possible deposition, as all eleven are current or former NSO employees. Furthermore, the majority of the Israeli citizens identified by Plaintiffs are *former* employees, who will be more difficult to locate, engage, and prepare than would be current employees. Plaintiffs' request also imposes an unwarranted burden on the Israeli citizens Plaintiffs seek to depose and the Israeli authority that would receive any letters rogatory issued. Their application for a letter rogatory is accordingly unduly burdensome and abusive under Rules 26, 28, and 30.

Given that Plaintiffs have identified at least six depositions that will move forward by agreement and notice and acknowledge the limit of ten depositions. The request for eleven additional depositions (beyond the six) is unduly burdensome, cumulative, and duplicative, and any letter rogatory, if not denied outright for the reasons above, should be limited under Rules 26, 28, and 30 to at most four additional deponents, and those who are current employees of the Defendants.

D.     **Plaintiffs' Request to have Their Own Attorneys Appointed as Deposition Officers Should be Denied**

The Federal Rules expressly prohibit depositions from being taken before a party's attorney. Fed. R. Civ. P. 28(c) ("A deposition must not be taken before a person who is any party's . . . attorney [or] who is related to or employed by any party's attorney . . . ."). The Court should deny Plaintiffs' demand that their own attorneys "be appointed as attorneys or juridicial officers to preside over the testimony given at the deposition." (Mot. App. A, § 12.)

E.     **Any Additional Ruling Under *Richmark* Is Premature**

Finally, even assuming that international comity does not completely preclude the depositions sought, Plaintiffs' seeming request that the Court issue a blanket *ex ante* approval of

any questions that might be asked within certain broad topics under *Richmark* is premature. As the Court previously held, *Richmark* requires consideration of the *specific* discovery at issue. (Dkt 233 at 10; Dkt. 292 at 2-3.) Here, Plaintiffs have provided only general topics of examination, many of which could encompass questions that, if posed by Plaintiffs' counsel, would constitute a violation of U.S. export control laws and the giving of answers to which would require witnesses to violate Israeli export control laws.[3] Plaintiffs fail to explain how or why a U.S. court could order an individual foreign citizen testifying in a foreign country in a proceeding before a foreign authority to testify broadly and without regard to the specific question at issue, especially when Plaintiffs' "topics" plainly encompass issues the giving of testimony that would constitute a violation of Israeli criminal law, i.e., Israel's Defense Export Control Law. Accordingly, Plaintiffs cannot rely on this Court's prior rulings, which dealt with broad document requests to named corporate parties, to preempt objections to specific deposition questions under the various U.S. and Israeli restrictions that have been discussed with the Court at length. Any concerns regarding deposition testimony will need to be addressed on a question-by-question basis—as is the accepted practice. *See Vasquez v. Leprino Foods Co.*, No. 117CV00796AWIBAM, 2019 WL 1934015, at *4 (E.D. Cal. May 1, 2019) (addressing on a question-by-question basis, defendants' motion to compel answers to deposition questions).

IV.   **CONCLUSION**

For the foregoing reasons, NSO respectfully requests that the Court deny Plaintiffs' motion for a letter rogatory. In the alternative, NSO respectfully requests that any letter rogatory be limited to the two current employees of Defendants and that Plaintiffs' request be denied to the extent that it improperly attempts to limit the rights afforded to Israeli witnesses (e.g., by having a neutral deposition officer or by improperly seeking to prevent counsel for Defendants or, as applicable,

---

[3] Plaintiffs have not explained how they would be permitted to ask any current NSO employees questions about technological issues, given NSO's placement on the BIS Entity List. The BIS Entity List's prohibitions extend to technology transfers or exports involving even NSO's own technology (a fact that has severely constrained Defendants' counsel in their representation of Defendants).

for the witness, from objecting and instructing not to answer on the grounds that certain questions may implicate U.S. or Israeli legal restrictions or other applicable privileges).

DATED: July 10, 2024                                KING & SPALDING LLP

By: /s/Joseph N. Akrotirianakis
    JOSEPH N. AKROTIRIANAKIS
    AARON S. CRAIG

    Attorneys for Defendants NSO GROUP
    TECHNOLOGIES LIMITED and Q
    CYBER TECHNOLOGIES LIMITED