JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
 acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S OPPOSITION TO MOTION TO COMPEL DISCOVERY REGARDING AWS SERVER**<br><br>**UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**<br><br>Date:  August 1, 2024<br>Time:  1:30 p.m.<br>Ctrm:  3<br><br>Action Filed:  10/29/2019 |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 2

    A. Facts Relevant to the AWS Server and this Dispute About It ............................ 2

    B. The Court's Denial of Motion to Compel Discovery as to RFP 30 and RFA 38 ................................................................................................................ 4

    C. Plaintiffs Never Met and Conferred re a Supposed Violation of Preservation Obligations, and They are Ignoring Local Rules re Motions for Sanctions ......................................................................................................... 5

III. ARGUMENT ........................................................................................................................ 6

    A. The Motion is an Improper Request for Reconsideration in Violation of Civil L.R. 7-9 ........................................................................................................ 6

    B. The Court Should Not Contradict Its Prior Ruling and Order Discovery on RFP 30 or RFA 38 ........................................................................................... 7

    C. There is No Deficiency in Defendants' RFA Responses, Nor any Inconsistency in their RFA Responses ................................................................ 8

        1. RFAs 44, 46, 48, 49, 50 and 52 are Properly Denied. ............................ 9

        2. Defendants Lacked Information to Respond to RFAs 38, 43, 45, 47 and 51. ..................................................................................................... 9

    D. The Court Should Deny Plaintiffs' Improper Request for a "Sanctions Finding" ............................................................................................................. 11

IV. CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3D Systems, Inc. v. Wynne*,
  No. 21-cv-1141, 2024 WL 710886 (S.D. Cal. Feb. 21, 2024) ................................................. 12

*Hamilton v. Oswego Community Unit Sch. Dist. 308*,
  No. 20-cv-0292, 2022 WL 580783 (N.D. Ill. Feb. 22, 2022) .................................................. 12

*Jones v. Riot Hosp. Grp. LLC*,
  2024 WL 927669 (9th Cir. Mar. 5, 2024) ............................................................................... 14

*Oracle America, Inc. v. Hewlett Packard Enter. Co.*,
  328 F.R.D. 543 (N.D. Cal. Aug. 17, 2018) ........................................................................ 12, 13

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ................................................................................................... 4

*Winters v. Textron, Inc.*,
  187 F.R.D. 518 (M.D. Pa. 1999) ............................................................................................. 13

*World Trade Centers Ass'n, Inc. v. Port Auth. of New York and New Jersey*,
  15-civ-7411, 2018 WL 1989616 (S.D.N.Y. April 2, 2018) .................................................... 12

**Other Authorities**

Fed. R. Civ. P. 37(e) ................................................................................................................ 11, 12

Stevenson & Fitzgerald, *Rutter Group Prac. Guide: Federal Civ. Pro. Before
  Trial* (The Rutter Group 2023) 11:2074 .................................................................................... 9

I.  **INTRODUCTION**[1]

Defendants have preserved a complete backup copy of the version of the AWS server that contained computer code and/or other information relating to Pegasus (or any other Relevant Spyware). While the Court has already twice ruled that the information on the AWS server is not discoverable to Plaintiffs, Defendants' preservation of this information conclusively shows that the only new relief sought by Plaintiffs—a "finding" that Defendants have not complied with their preservation obligations—is without merit.

Plaintiffs' outrageous motion violates the Court's rules and the Local Rules. If the issues in the instant motion seem familiar to the Court, it is because Plaintiffs have already twice moved to compel with respect to RFP 30 and RFA 38, and the Court *denied* both motions —the second time with prejudice, in its February 15, 2024, Order (Dkt. No. 292 at 3:11-16 and 5:14-20). Somehow, Plaintiffs fail even to mention the existence of the December 21, 2023, motion the Court heard on February 15, 2024 (Dkt. No. 235-2, the "Prior Motion"), or the Court's denial of the portion of it relevant here. This is in spite of Plaintiffs including in their Motion an extremely incomplete section headed: "Plaintiffs' Efforts to Obtain Information Regarding the AWS Server." Plaintiffs now furtively seek reconsideration of the denial of the Prior Motion (without any new facts or law), in violation of Local Rule 7-9. Moreover, Plaintiffs filed this Motion without meeting and conferring with Defendants at all about any request to find NSO in violation of its preservation obligation, again ignoring the Court's Standing Order.

The Court correctly denied Plaintiffs' first two motions as to RFP 30—seeking "a complete image" of the AWS Server. The computer code that *formerly* resided on the AWS Server, over two years before Plaintiffs propounded RFP 30, is export-controlled technology subject to Israel's Defense Export Control Law ("DECL") that Israel's Defense Export Control Agency would be

---

[1] Defendants are filing this Opposition in the public record. To the extent Plaintiffs' Motion and supporting materials (Dkt. 331-332) were filed under seal because of materials previously designated confidential by Defendants, Defendants have no objection to the Court making Plaintiffs' filings available to the public. Defendants note, however, that Plaintiffs have represented that certain material in its Motion may have been designated as confidential by Amazon Web Services. While Defendants did not see any AWS confidential information in Plaintiffs' filing, Defendants do not purport to speak for Amazon Web Services.

extremely unlikely to approve for export to Defendants' counsel, Plaintiffs' counsel, Plaintiffs, or the Court. The Court recognized in its ruling that providing other materials sufficient to show the functionality of the Relevant Spyware would be adequate for Plaintiffs' litigation needs. The Court should not change its ruling. Moreover, if Plaintiffs successfully persuade the Court to change its ruling as to the part of its Order denying in part the Prior Motion, Defendants should likewise be able to challenge the portions of the Court's ruling that the parties have interpreted as *granting* in part the Prior Motion, which would invite further motion practice.

Finally, the AWS Server has not contained Pegasus *code* or any material comprising, or related to, "Relevant Spyware" since January 2021, more than two years before Plaintiffs propounded RFP 30. And Defendants have preserved (and are maintaining in their offices in Israel) the entire contents of the AWS Server as it existed between November 2020 and January 2021, i.e., the most recent iteration of the AWS Server that contained any Pegasus computer code or other materials comprising or related to Relevant Spyware. This is dispositive of the request for a "sanctions finding" because there has been no violation of Defendants' preservation obligations. Nor is there any inconsistency between Defendants' RFA responses. The Motion should therefore be denied.

## II.   BACKGROUND

### A.   FACTS RELEVANT TO THE AWS SERVER AND THIS DISPUTE ABOUT IT

Companies such as Amazon Web Services ("AWS") lease server space to customers around the world. Each of AWS's physical servers has a unique IP address. Customers can use leased server space for any purpose, and, importantly, can (and do) change the information that they store on leased AWS servers as suits their business needs. Defendants have leased server space from AWS and other vendors over the years. With respect to these servers, Defendants have made changes throughout those leases as to what they choose to do with them.

In 2020, Plaintiffs served a subpoena on Amazon Web Services, requesting, *inter alia,* a copy of the server with the IP address 54.93.81.200 (the "AWS Server"). Defendants infer that Amazon Web Services has not provided Plaintiffs with a copy of the AWS Server. At certain

1  times prior to January 2021, the AWS Server was being used by NSO's research and development
2  department, to house computer code that comprised part of the Pegasus system. That code is very
3  carefully export-controlled by the Israeli Ministry of Defense, and those export controls apply to
4  code stored on a server in a foreign country, accessible only to Israeli engineers, just as they would
5  to such a server located in Israel (or anywhere else). (Declaration of Chaim Gelfand ("Gelfand
6  Decl.") ¶¶ 11-15.)

7  NSO preserved a copy of the AWS Server on November 9, 2020, and no change was made
8  to the AWS Server's content between November 2020 and January 2021. (Gelfand Decl. ¶¶ 6-7.)
9  The preserved copy of all the code and other information relating to Pegasus (or any other
10 "Relevant Spyware") most recently stored on the AWS Server is being preserved at NSO's offices
11 in Israel. (*Id.*)

12 Between January 2021 and December 2021, NSO's best information is that the AWS
13 Server was leased to NSO but was unused and contained no data. (Gelfand Decl. ¶¶ 8-9.) From
14 December 2021 to October 24, 2023, NSO's in-house information technology ("IT") department
15 (i.e., the people who fix NSO employees' computers when they are malfunctioning) used the AWS
16 Server as part of setting up and maintaining the internal computer networks used by NSO's
17 corporate employees, and other "back office" operations. (Gelfand Decl. ¶ 9.) This is consistent
18 with Plaintiffs' information that NSO's IT department was the lessor of the AWS Server (see
19 Cagney Decl. Exh. E at 5, Request for Admission 42 ("Admit that IP address 54.93.81.200 is
20 registered or subscribed to the email address IT@nsogroup.com"). For the avoidance of doubt,
21 between December 2021, and October 24, 2023, the AWS Server was not used at all by NSO's
22 research and development department (or by any other department at NSO besides the IT
23 department), and it did not include, during this period, any Pegasus computer code, any computer
24 code related to any other NSO technology that NSO offers to its customers, or any other computer
25 code or scripts having anything whatsoever to do with Pegasus or other "Relevant Spyware" (as
26 defined by the Court) or any other product that NSO offers to its customers. (Gelfand Decl. ¶ 9.)

27 Defendants' counsel was imprecise in their portion of a joint letter to the Court on August
28 25, 2023. Defendants' counsel stated in the joint letter that the AWS Server contained computer

code that comprises part of the Pegasus system. That information was accurate as to NSO's preserved copy of the information on the AWS Server, but more than two years out of date with respect to the AWS Server itself.[2]

## B. THE COURT'S DENIAL OF MOTION TO COMPEL DISCOVERY AS TO RFP 30 AND RFA 38

After a hearing held November 2, 2023, the Court denied without prejudice Plaintiffs' first motion to compel production of the AWS Server on November 15, 2023 (Dkt. No. 233 at 10:17-23). The Court invited Plaintiffs to file a new motion seeking the same relief under the factors set forth in *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992).

Plaintiffs then did so, filing the Prior Motion on December 21, 2023, seeking to compel discovery as to several discovery requests, *including RFP 30 and RFA 38*. The Prior Motion was organized into four categories:

1. Definition of Relevant Spyware;
2. Whether Discovery should include Full Functionality (including Monitoring of Devices and Exfiltration);
3. Requests about the Identity of NSO's Customers;
4. Requests seeking Technical Information related to the Architecture of NSO's Network of Servers

(Prior Motion, Dkt. No. 235-2.)

Category 4 in the Prior Motion unequivocally included RFP 30 and RFA 38. Plaintiffs argued, on pages 13-14 of the Prior Motion, that discovery should be compelled with respect to RFP 30. (Indeed, RFP 30 was discussed at greater length than any other request in category 4!) RFA 38 was also included in the Prior Motion. (Dkt. No. 235-2 at 14:19-20.)

---

[2] Defendants' counsel obviously had no intent to deceive the Court or Plaintiffs' counsel. The precisely correct information is indeed far more favorable to Defendants' position with respect to the issues in this Motion, because at the time Plaintiffs propounded RFP 30 on May 12, 2023, the AWS Server contained only irrelevant material belonging to NSO's IT department and relating to its office computers and network, and nothing to do with Pegasus or any other Relevant Spyware. (Gelfand Decl. ¶¶ 6-9.) In any event, undersigned counsel apologizes to the Court for the inadvertent lack of precision.

In their Opposition to the Prior Motion, Defendants argued against the Motion's category 4 insofar as it sought information about Defendants' servers and architecture, because producing complete forensic images of various servers would violate Israeli legal restrictions and the requests otherwise failed under the *Richmark* factors. (Dkt. 249-2 at 13-14.)

Plaintiffs argued on reply that, with respect to category 4, the Court should compel discovery with respect to RFP 30 and RFA 38 as "directly relevant" and sufficiently "specific" under *Richmark*. (Dkt. No. 260-3 at 7-8 and Appendix A at 14.)

At the February 15, 2024, hearing on the Prior Motion, Plaintiff's counsel then specifically *argued for the production of the AWS Server*. (Declaration of Aaron Craig ("Craig Decl.") ¶ 2 and Exh. A at 39:10 to 40:7.)

The Court ruled on the Prior Motion by addressing "those requests with reference to the four categories set forth in the parties' briefs [including] (4) whether defendants' server architecture must be disclosed." (Dkt. 292 at 3:11-16.) With respect to *all requests in category 4*, the Court denied Plaintiffs' Prior Motion. This undoubtedly included RFP 30 and RFA 38. The Court held that its order compelling discovery with respect to categories 1 and 2 (where, as the Court ruled, the *Richmark* factors favored Plaintiffs) would give Plaintiffs the ability to understand the fuller picture of how NSO's technology functioned. In so doing, the Court declined to order Defendants to turn over a server filled with computer code directly protected by Israel's Defense Export Control Law.

Incredibly, Plaintiffs omitted any discussion of the Prior Motion (or the Court's ruling denying the Prior Motion as to RFP 30 and RFA 38) from the Motion at issue, including in the section of their brief titled, "Plaintiffs' Efforts to Obtain Information Regarding the AWS Server."

C. **PLAINTIFFS NEVER MET AND CONFERRED RE A SUPPOSED VIOLATION OF PRESERVATION OBLIGATIONS, AND THEY ARE IGNORING LOCAL RULES RE MOTIONS FOR SANCTIONS**

Plaintiffs never met and conferred with Defendants concerning any supposed violation of their preservation obligations. Prior to June 27, 2024, the parties never once discussed any

allegation that Defendants violated their preservation obligations. (Craig Decl. ¶ 3.) When Defendants received Plaintiffs' 5-page portion of a draft 10-page joint letter on June 27, 2024, Defendants asked Plaintiffs twice to meet and confer about the new (and very surprising) contention that Defendants violated their preservation obligations. (Craig Decl. Exh. B (June 28, 2024, email) and Exh. C (July 1, 2024, email)). Plaintiffs refused both of Defendants' requests for a conference of counsel. (Craig Decl. ¶ 3.)

To the extent the Motion seeks a finding that would be a predicate for sanctions, the Motion also disregards Local Rule 7-8, which states that any motion for sanctions must be set for hearing in conformance with Civil L.R. 7-2, i.e., on 35 days' notice with a fourteen-day period in which to file an opposition. While counsel for Defendants have never before seen a party ask for a "finding" that is a predicate to a sanctions motion, such a finding would have no purpose other than to be used in a sanctions motion and it therefore must comport with Local Rule 7-8. This Motion was set on 27 days' notice and Plaintiffs have purported to give Defendants only seven days to oppose, and therefore violates Civil L.R. 7-8.[3]

## III.   ARGUMENT

### A.   THE MOTION IS AN IMPROPER REQUEST FOR RECONSIDERATION IN VIOLATION OF CIVIL L.R. 7-9

It is beyond any dispute that Plaintiffs' Prior Motion sought an Order compelling discovery as to both RFP 30 and RFA 38, and the Court denied the Prior Motion as to those requests. That Plaintiffs are running this issue back without obtaining leave of court to do so—and without even mentioning the Prior Motion—is bewildering.

As discussed at length *supra*, the Prior Motion, the Opposition to it, Plaintiffs' Reply brief, and the oral presentation before the Court all included arguments as to RFP 30, the request seeking a copy of the AWS Server. RFP 30 was in fact the principal focus of the "category 4" part of the Prior Motion. In oral argument on the Prior Motion's category 4, Plaintiffs' counsel informed the Court that what was being sought was: "we have identified particular servers by their roughly 12

---

[3] Plaintiffs should be very familiar with the Civil L.R. 7-8 process given their history of being sanctioned in this District.

1  digit IP addresses.  These are servers that our engineers have identified as being involved in the
2  particular attacks.  One of them, a server hosted . . . by Amazon Web Services . . . ." (Craig Decl.
3  Exh. A at 39:7-12.)  Each brief on the Prior Motion also referenced RFA 38.

4  It is also beyond any dispute that the Court *denied* Plaintiffs' Motion as to the requests in
5  category 4.  While the Court's Order did not specifically reference RFP 30 or RFA 38, it also did
6  not reference any other specific requests in its discussion of *any* of the four issues or categories
7  and instead addressed the requests by category. (Dkt. No. 292.)  There is no plausible way to read
8  the Court's Order except as denying the motion to compel discovery as to RFP 30, RFA 38, and
9  all other of Plaintiffs' requests in "category 4."

10  Local Rule 7-9 includes a procedural and a substantive component.  The procedural
11  component is that leave of court must first be obtained before filing a motion for reconsideration.
12  L.R. 7-9(a).  A party requesting leave must also satisfy the substantive requirement of showing "a
13  material difference in fact or law . . . from that which was presented to the Court before entry of
14  the interlocutory order for which reconsideration is sought," "the emergence of new material facts
15  or a change in law" or "a manifest failure by the Court to consider material facts or dispositive
16  legal arguments."  L.R. 7-9(b).  Plaintiffs have disregarded Local Rule 7-9 in its entirety.
17  Defendants have repeatedly informed the Court that Plaintiffs are litigating this case as though the
18  normal rules don't apply to them—while this is only the latest example, it is among the most
19  egregious.

20  The Court should deny the Motion for failure to comply with Local Rule 7-9.  Moreover,
21  the facts and law are identical now to when Plaintiffs filed the Prior Motion on December 21, 2023.
22  All the discovery responses, including those that Plaintiffs believe show a supposed inconsistency,
23  were served on Plaintiffs long before December 21, 2023.

24  **B.    THE COURT SHOULD NOT CONTRADICT ITS PRIOR RULING AND
25            ORDER DISCOVERY ON RFP 30 OR RFA 38**

26  The Court should not reverse course and order Defendants to turn over the information
27  previously housed on the AWS Server over two years before Plaintiffs propounded RFP 30.  The
28  reasons why the Court denied the "category 4" part of Plaintiffs' Prior Motion in February are

equally true and applicable now. The information previously on the AWS Server includes the Pegasus code, which is at the core of Israel's export control concerns. Such an order would set up an irreconcilable conflict for Defendants between complying with its discovery obligations in the United States and complying with Israel's DECL.

There is no need for the Court to put Defendants in such a position. Defendants are in the process of getting final approval to produce—and anticipate producing in the next several weeks—documents showing the full functionality of what the Court has defined as the "Relevant Spyware." Plaintiffs have given the Court no reason to depart from its prior Order, which struck the proper balance of the *Richmark* factors as to discovery related to the AWS server.

If the Court were to reverse itself as to its February 23, 2024, Order (Plaintiffs may claim, implausibly, that the Court would merely be filling in a gap or resolving an ambiguity in its prior order—but there is no such gap or ambiguity), this would bring further chaos to this litigation. Defendants have been preparing to produce documents consistent with the Court's ruling on Plaintiffs' Prior Motion: *Granted* with respect to each of the requests (as modified by the Court's rulings about time and "relevant spyware") in categories 1 and 2, and *denied* with respect to each of the requests in categories 3 and 4. (Dkt. No. 292.)[4]

In any event, Defendants incorporate by reference their opposition to the Prior Motion (Dkt. No. 249-2, 249-3 and 249-4), and ask the Court to deny the instant Motion with respect to RFP 30 and RFA 38 for the same reasons it denied that same relief in February.

### C. THERE IS NO DEFICIENCY IN DEFENDANTS' RFA RESPONSES, NOR ANY INCONSISTENCY IN THEIR RFA RESPONSES

Defendants' denials of Plaintiffs' Requests for Admission were directly responsive to the requests as Plaintiffs phrased those requests. The responses were neither evasive nor improper. If Plaintiffs had wanted Defendants to answer different requests, Plaintiffs' three excellent law firms

---

[4] If the Court grants the instant Motion, Defendants intend to challenge whether the Prior Motion did in fact compel further discovery with respect to each of the requests in categories 1 and 2 (as the Order did not use the word "granted" in its discussion of categories 1 and 2), just as Plaintiffs appear to be challenging here whether the Court actually denied the Prior Motion as to these two requests from category 4.

would have drafted the requests differently.

If requests for admissions are completely denied, "a motion to determine the sufficiency of the denial is improper.  The truth of the matter must be proved at trial, whereafter the discovering party's only remedy is to move for payment of the expenses of such proof."  Stevenson & Fitzgerald, *Rutter Group Prac. Guide:  Federal Civ. Pro. Before Trial* (The Rutter Group 2023) 11:2074 at 11-341.  With respect to RFAs 44, 46, 48, 49, 50 and 52, Defendants denied those requests and therefore a motion to determine the sufficiency of those denials is improper.  Nonetheless, Defendants will indulge Plaintiffs and explain their denial.

### 1. RFAs 44, 46, 48, 49, 50 and 52 are Properly Denied.

Each of RFAs 44, 46, 48, 49, 50 and 52 asked whether (44) or assumed that (46, 48, 49, 50 and 52) the AWS Server contains (present tense) Pegasus computer code.[5]  Cagney Decl. Exhs. E-F.  While the AWS Server did contain Pegasus computer code prior to January 2021, it did not at any time thereafter.  As of September 28, 2023, the date Plaintiffs propounded these requests, and November 22, 2023, the date of the responses, the AWS Server did not contain Pegasus computer code.  Defendants' denial of the requests was accurate and proper.  If Plaintiffs wanted to propound requests that asked or assumed that Pegasus computer code was located on the AWS Server at an earlier point in time about which Defendants had information, they could have done so (and could still do so).  Plaintiffs phrased their RFAs in the present tense, however, and Defendants accurately denied those Requests because the statement they were asked to admit was inaccurate and untrue on the dates the requests were asked and answered.

### 2. Defendants Lacked Information to Respond to RFAs 38, 43, 45, 47 and 51.

After a reasonable and good faith search that included speaking with every person at NSO who is reasonably understood (even potentially) to remember or have records about NSO's history with the AWS Server (Gelfand Decl. ¶ 8), Defendants do not have information showing it first

---

[5] Whether the AWS server presently contains Pegasus code is irrelevant to Plaintiffs' claims (which relate to a time period long past), and Defendants' relevancy objections to RFAs requesting admissions about the server's present contents should be sustained.

leased the AWS Server, whether there were any time periods between the start and end of the lease that the lease term was interrupted, or what information was contained on the AWS Server or how Defendants used the AWS Server between April 29, 2019, and May 10, 2019. (Gelfand Decl. ¶ 10.) RFAs 38, 45, 47 and 51 each asked Defendants to admit certain things about the content of the AWS Server in 2019. NSO made a reasonable and diligent good faith search for information about the content of the AWS Server in 2019 or whether it controlled the AWS Server from April 29, 2019, to May 10, 2019, but could not locate such information. (*Id.*)

RFA 38 was part of the Prior Motion and the Court denied it. Nevertheless, Defendants will explain here that they lacked information after a reasonable and diligent good faith search about whether they had control of the AWS Server between April 29, 2019, and May 10, 2019. (Gelfand Decl. ¶ 10.) As such, they could neither truthfully admit nor deny RFA 38. (Cagney Decl. Exh B.) This response was proper.

RFA 43 asked Defendants to admit they have leased the AWS Server since December 2018. After making a reasonable and diligent good faith search, Defendants could not locate any information about when they started leasing the AWS Server or if the lease was continuous through the date of the RFAs. (Gelfand Decl. ¶ 10.) Plaintiffs now inform Defendants and the Court that they obtained a document (by subpoena to Amazon Web Services) showing that that NSO leased the AWS Server from December 6, 2018, through at least October 5, 2020. The existence of such a document makes one question why Plaintiffs felt the need to propound RFA 43 in the first place.[6] Moreover, Plaintiffs never informed Defendants' counsel of such a document during the "multiple discussions" and "multiple emails and letters" between counsel. (Cagney Decl. ¶ 14.) While counsel for Defendants have now located the document in question, they note that it constitutes a single page within a 14,824-page document production. And as Plaintiffs well know, Defendants' counsel are precluded by the United States BIS Entity List from sharing any technical information

---

[6] It is true that RFA 43 covers a wider time period than the document produced by Amazon Web Services. If there is an issue in the litigation requiring Plaintiffs to prove that Defendants leased the AWS Server continuously between October 5, 2020, and August 25, 2023 (which Defendants doubt), however, Plaintiffs could presumably propound another subpoena on AWS, as Defendants lack complete information about the duration of the lease. (Gelfand Decl. ¶ 10.)

1  with NSO and thus cannot give NSO access to Plaintiffs' document productions, so this document does not call into question Defendants' response that they lacked information to admit or deny it after a reasonable and diligent good faith search.

Finally, RFAs 45, 47, and 51 ask whether (45) or assume that (47, 51) computer code comprising part of the Pegasus System resided on the AWS Server between April 29, 2019, and May 10, 2019.  Defendants do not maintain records of what information is contained on the servers they lease from third parties such as AWS on particular dates, and Defendants could not locate such information after a reasonable good faith search.  (Gelfand Decl. ¶ 10.)  Therefore, Defendants accurately responded that they lacked information sufficient to enable them truthfully to admit or deny the request.

### D. THE COURT SHOULD DENY PLAINTIFFS' IMPROPER REQUEST FOR A "SANCTIONS FINDING"

Plaintiffs never met and conferred with Defendants about any supposed violation of any preservation obligation, despite Defendants twice asking Plaintiffs to do so, first on June 28, 2024, and again on July 1, 2024.  (Craig Decl. Exhs. B-C.)  Such a conference of counsel is a prerequisite to filing a discovery motion under the Court's Standing Order.  The Motion should be denied for this reason alone.

To the extent the Motion requests a "sanctions finding," it must comply with L.R. 7-8, which requires that such a motion be noticed pursuant to L.R. 7-2, i.e., filed and served on 35 days' notice with the opposing party having 14 days to file its opposition.  The Court cannot sanction Defendants, nor can it make a finding that is a predicate to a sanctions motion, unless the motion is made pursuant to L.R. 7-2, which the instant Motion was not.

Alternatively, the Court should simply deny the Motion for a "finding" relating to NSO's preservation obligations because such a finding is not authorized by Federal Rule of Civil Procedure 37(e), which is the sole and exclusive standard for determining consequences for alleged preservation lapses.  The rule is clear that Plaintiffs must meet their burden to establish each and every one of the threshold factors in order to obtain any spoliation "finding," and if any of the threshold prerequisites in Rule 37(e) are not met, *the court's analysis stops,* and sanctions cannot

be imposed. *Oracle America, Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 552 (N.D. Cal. Aug. 17, 2018) (refusing to continue analysis under Rule 37(e) and denying any relief because requesting party failed to demonstrate one of the threshold requirements); *see also Hamilton v. Oswego Community Unit Sch. Dist. 308*, No. 20-cv-0292, 2022 WL 580783, *2 (N.D. Ill. Feb. 22, 2022). The threshold factors require a showing (1) that the alleged spoliation involves ESI; (2) that the ESI at issue is lost; (3) that the ESI should have been preserved in the anticipation or conduct of litigation; (4) that the ESI at issue cannot be restored or replaced through additional discovery; and (5) that the producing party failed to take reasonable steps to preserve the ESI at issue. *Oracle America*, 328 F.R.D. at 548-549.

One of the threshold factors under Rule 37(e) requires that Plaintiffs demonstrate that the ESI at issue is "irretrievably" lost. *3D Systems, Inc. v. Wynne*, No. 21-cv-1141, 2024 WL 710886 (S.D. Cal. Feb. 21, 2024); *see also Oracle America*, 328 F.R.D. at 552. Thus, a requesting party cannot obtain relief under Rule 37(e), "where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian." *Oracle America*, 328 F.R.D. at 552; Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment ("Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.") The same principle applies with respect to alleged spoliation resulting from the migration of ESI from one location to another. A requesting party cannot obtain relief under Rule 37(e) without a showing that ESI was irretrievably destroyed during a migration of the ESI at issue. *World Trade Centers Ass'n, Inc. v. Port Auth. of New York and New Jersey*, 15-civ-7411, 2018 WL 1989616, at *11-12 (S.D.N.Y. April 2, 2018).

As set forth in the accompanying declaration, NSO confirms to the Court (and to Plaintiffs) that it has preserved *in its entirety* the content of the AWS Server that contained the most recent Pegasus code and related material. (Gelfand Decl. ¶¶ 6-7.) Defendants have also separately preserved, in their entirety, all relevant versions of Pegasus and "Relevant Spyware" (as defined by the Court). Plaintiffs' have submitted no evidence to show that any discoverable ESI is missing. Therefore, Plaintiffs cannot and have not carried their burden to show that the server is "irretrievably lost" as required under the threshold factors of Rule 37(e). *3D Systems, Inc. v.*

*Wynne*, No. 21-cv-1141, 2024 WL 710886 (S.D. Cal. Feb. 21, 2024); *see also Oracle America*, 328 F.R.D. at 552. Thus, the Court's analysis relating to NSO's preservation obligation should end and sanctions should be denied.

As stated above, Defendants separately preserved the relevant versions of Pegasus as part of their litigation preservation obligations. Plaintiffs present zero evidence that the AWS Server played any role in installing Pegasus on any of the Target Devices. Plaintiffs' counsel somehow asserts this as fact (Motion at 4:3-4 and 6:15-16), but that claim is false, and it is supported by no declaration from any expert witness or employee of WhatsApp or Facebook. And when Plaintiffs propounded RFP 30 in 2023, the AWS Server was being used by NSO's internal IT department for purposes that have no relevance to any of the issues in this case, and NSO's IT usage of the AWS Server did not result in the creation of data or include any storage of data on the server that could have been preserved. (Gelfand Decl. ¶ 9.) Nonetheless, Defendants did preserve the information on the AWS Server as it existed in late 2020 and early 2021. (Gelfand Decl. ¶ 6.)

Plaintiffs' suggestion that the AWS Server was somehow more available outside of Israel changes nothing. The applicable standard is not whether ESI is more available or less available. The sanctions standard is whether the AWS Server is "irretrievably" lost, which it is clearly not based on the evidence before the Court. Additionally, Plaintiffs' claim about availability is not supported by the facts. The information on the AWS Server is equally subject to Israel's DECL whether located inside or outside of Israel. (Gelfand Decl. ¶¶ 11-15.) In addition to the AWS Server not having been irretrievably lost, the Court has twice denied Plaintiffs' requests for it.

Plaintiffs cite *Winters v. Textron, Inc.*, 187 F.R.D. 518, 520 (M.D. Pa. 1999) in support of the Motion. That case involved a claim that a golf cart had a manufacturing or design defect that caused an injury to the plaintiff's finger. The court sanctioned the defendant for selling the golf cart at issue to a third party, which third party then took the golf cart to a foreign country. It is not surprising that the *Winters* court sanctioned a party who sold a crucial piece of evidence to a third party and released it from its control. The facts of this case bear no resemblance to *Winters*, however. Defendants have not sold to a third party the Pegasus code or any other information contained on the AWS Server. The defendant in *Winters* was not sanctioned for moving evidence

1  from one foreign country to another. It was sanctioned for selling the golf cart to a third party without any way of getting it back. Here, Defendants have a preserved copy of all the relevant information that was housed on the AWS Server, and are preserving that information in Israel.[7]

Defendants asked Plaintiffs to meet and confer about this issue to see whether Plaintiffs knew of any case law of which Defendants are unaware, and Plaintiffs refused to confer. If Plaintiffs' purpose for not conferring with Defendants was to sandbag Defendants by withholding until its reply some case unknown to Defendants, the Court should have none of it.

## IV.  CONCLUSION

Because the Motion has no substantive merit, and because of the many procedural violations committed by Plaintiffs in presenting it to the Court, the Court should deny it.

Dated:  July 12, 2024                                KING & SPALDING LLP

By:    /s/Joseph N. Akrotirianakis
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG

Attorneys for Defendants NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

---

[7] The only other case cited by Plaintiffs, *Jones v. Riot Hosp. Grp. LLC*, 2024 WL 927669 (9th Cir. Mar. 5, 2024) is even more inapposite. In *Jones*, the court found that the plaintiff had intentionally deleted relevant text messages and coordinated with witnesses to delete their text messages to deprive the defendant of the use of those text messages in the litigation. Because the deletion was intentional, the district court sanctioned the plaintiff by dismissing the case, and the 9th Circuit affirmed. Here, Defendants have not deleted *anything*—to the contrary, they continue to preserve the contents of the AWS Server that contained Pegasus code and related information. There has been no intent or action taken to deprive Plaintiffs of any information in this litigation to which the Court rules they are entitled.