JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
 acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DECLARATION OF CHAIM GELFAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY REGARDING AWS SERVER**<br><br>Date:   August 1, 2024<br>Time:  1:30 p.m.<br>Ctrm:   3<br><br>Action Filed:   10/29/2019 |

# DECLARATION OF CHAIM GELFAND

I, Chaim Gelfand, declare as follows:

1. I am an attorney licensed to practice law in Israel, and I am employed by NSO Group Technologies Limited ("NSO") as its Vice President for Compliance and Deputy General Counsel. I have served in that position (or similar positions) since I joined NSO in January 2020. I have personal knowledge of the facts set forth herein and, except as otherwise stated, could testify competently to each fact herein.

2. I submit this declaration in support of NSO's Opposition to Plaintiffs' Motion to Compel Discovery Regarding AWS Server ("Opposition") filed concurrently herewith.

Background Concerning NSO's Use of Third-Party Servers

3. In the course of its business, NSO leases storage on servers hosted by third parties such as Amazon Web Services to host NSO's confidential business information. NSO does not, in the ordinary course of its business, keep records concerning the specific purposes for which it leases third-party servers, what information is contained on those servers on particular dates, or how information housed on those servers changes over time. NSO periodically stops research and development usesof the leased third-party servers pursuant to company policy and to safeguard the information hosted on the server.

Chronology of Uses of the Amazon Web Services Server

4. At the direction of NSO's outside legal counsel in the United States, and in conjunction with NSO's research and development department, I and NSO's legal department more generally have investigated the uses NSO made of the server that NSO leased from Amazon Web Services with the IP address 54.93.81.200 (the "AWS Server"). This investigation included interviewing at least eight witnesses, including NSO's head of research and development Tamir Gazneli and two other employees on Mr. Gazneli's team, at least one person on the Client Services department who we were told could have relevant information about the AWS Server, and at least two members of NSO's information technology ("IT") department (including the Chief Information Officer). It also involved undertaking a comprehensive search for records about the use of the AWS Server.

5. I understand that WhatsApp propounded Request for Production 30 on May 12, 2023, seeking a complete image of the AWS Server, including "log files, configuration files, Python scripts, compiled Python scripts, text files, README files, XML files, database (.db) files, JPEG files, JSON files, PEM files, proto files, shell scripts (.sh) sequel database files (.sql) and all files, including any zip files, referenced in any of the aforementioned."

6. Based on the investigation described above, I have concluded that at no time since January 2021 has the AWS Server contained any Pegasus code, Python scripts, configuration files, or anything else sought by Request for Production 30. It is true that the type of information sought by Plaintiffs' Request for Production 30 was formerly housed on the AWS Server by NSO's research and development department for some periods prior to January 2021. Starting in January 2021 (that is, more than two years before NSO received Request for Production 30), however, NSO changed the purpose for which it used the AWS Server pursuant to company policy. Nevertheless, before removing the Pegasus materials from the AWS Server in January 2021, NSO made, and has continuously maintained in its offices in Israel, a complete preserved backup copy of the version of the AWS Server that contained Pegasus code and related materials.

7. The preservation copy of the AWS Server was made November 9, 2020. No changes were made to the AWS Server between November 9, 2020, and the date in January 2021 when NSO stopped using the AWS Server for research and development purposes. Therefore, the preservation copy contains the "final" version of the AWS Server before NSO removed the Pegasus code and other related information belonging to and used by NSO's research and development department. I confirmed this week that the preservation copy of the AWS Server is still perfectly preserved.

8. NSO is not able to determine the exact date that the AWS Server *first* contained Pegasus Code and the other information set forth in Request for Production 30. NSO simply does not maintain such records, and nobody interviewed has a recollection of this information. The investigation NSO has undertaken to respond to Request for Production 30 involved speaking with every person at NSO who is reasonably understood (even potentially) to remember this information or have any records about it, and that investigation has uncovered no information as to when NSO started using the AWS Server for research and development purposes that included Pegasus code.

1  As indicated above, however, NSO is able to determine, and has determined that the *last* such date
2  was at the latest in January 2021.

3      9.    Through its investigation, NSO learned that the AWS Server was unused between
4  January 2021 and December 2021.  Starting in December 2021, and continuously thereafter through
5  October 24, 2023, the AWS Server was used by NSO's IT Department to transfer data related to
6  NSO's internal communications/computer network used by NSO's corporate employees, and other
7  "back office" operations.  For the avoidance of doubt, between December 2021 and October 24,
8  2023, the AWS Server was being used exclusively by NSO's IT Department and not by NSO's
9  research and development department (or any other department), and it did not include, during this
10  period, any Pegasus computer code, any computer code related to any other NSO technology that
11  NSO offers to its customers, or any other computer code or scripts having anything whatsoever to
12  do with Pegasus (or any other "Relevant Spyware" (as defined by the Court) or any other technology
13  that NSO offers to its customers).

14      10.    NSO, though its investigation, was also unable to determine the following information
15  relevant to WhtasApp's requests for admission:  (1) when NSO first started to lease the AWS server;
16  (2) whether there were any time periods between the start of the lease and October 24, 2023 that
17  NSO's lease of the server was interrupted; (3) what information was contained on the AWS Server
18  or how NSO was using the AWS Server between April 29, and May 10, 2019.   Our investigation
19  was unable to answer these questions, and therefore NSO was unable to admit or deny Plaintiffs'
20  Requests for Admission relating to these facts.

21      <u>Applicability of Israel's Defense Export Control Law to the AWS Server in Germany</u>

22      11.    Prior to joining NSO, I was a partner in Shibolet & Co., one of Israel's largest, full
23  service multidisciplinary law firms.  And prior to my partnership in Shibolet & Co., I was in-house
24  counsel to a large Israeli defense contractor.  My areas of legal expertise include Israel's Defense
25  Export Control Law ("DECL"), and I have been recognized as a leader within Israel with respect to
26  defense and dual use export controls regulations.

27      12.    The purpose of the DECL is "to regulate State control over the export of defense
28  equipment, the transfer of defense know-how, and the provision of defense services for reasons of

national security, foreign relations of the State and its international obligations, and to protect the State's other essential interests." DECL Article 1.

13. The DECL regulates export of (i) controlled defense equipment; (ii) controlled defense services; and (iii) controlled defense know-how. NSO has been informed by Israel's Ministry of Defense that Pegasus (and all of NSO's other cyber-intelligence products it offers its customers) is regulated as "controlled defense know-how." Therefore, it cannot be exported without a license.

14. During the time the AWS Server contained Pegasus code and related information, it was accessible only by NSO employees in Israel.

15. Based on my legal experience outlined above, I have long since understood that, with respect to Pegasus or other NSO controlled defense know-how located in "the cloud" outside of Israel, where only NSO employees in Israel can access such information, the transfer of such controlled defense know-how to a non-Israeli citizen would be viewed by Israel's Ministry of Defense, Defense Export Control Agency ("DECA"), as a regulated export requiring an export license. Any transfer of such defense know-how without an export license would violate the DECL. My understanding in this regard has been confirmed by a legal opinion NSO has received from its outside counsel within Israel during the pendency of this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 12, 2024.

CHAIM GELFAND