Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
        antonio.perez@davispolk.com
        craig.cagney@davispolk.com
        luca.marzorati@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL REGARDING AWS SERVER**<br><br>**DISCOVERY MATTER**<br><br>Date:   August 1, 2024<br>Time:  1:30 p.m.<br>Ctrm:  3<br>Judge:  Hon. Phyllis J. Hamilton<br><br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

P<small>AGE</small>

TABLE OF CONTENTS.................................................................................................................... i

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ....................................................................................................................................3

    I. NSO Should Be Compelled to Revise Its RFA Responses Based on Its
        Misrepresentations in the AWS Dispute Letter ............................................................3

           A.     NSO's Description of the AWS Server in the AWS Dispute Letter Was
                    Not True ........................................................................................................3

           B.     NSO Should Be Compelled to Revise Its Responses to Plaintiffs'
                    Request for Admission Nos. 44, 46, 48, 49, 50, and 52....................................4

           C.     NSO Should Be Compelled to Supplement Its Responses to Plaintiffs'
                    Request for Admission Nos. 38, 43, 45, 47, and 51 .........................................5

    II.     NSO Should Be Compelled to Produce the Information That It Removed from
           the AWS Server, Including the Pegasus Code...............................................................6

           A.     The Pegasus Code That NSO Removed from the AWS Server Is Part of
                    the "Full Functionality of the Relevant Spyware" ...........................................6

           B.     The Pegasus Code That NSO Removed from the AWS Server Is Specific
                    and Important to Plaintiffs' Claims..................................................................7

    III.    The Court Should Impose Sanctions If NSO Refuses to Produce the Contents of
           the AWS Server ..............................................................................................................9

CONCLUSION ...............................................................................................................................10

---

**PRELIMINARY STATEMENT**

Plaintiffs WhatsApp LLC and Meta Platforms, Inc. ("Plaintiffs") seek discovery related to a server with the IP address 54.93.81.200 that Amazon Web Services ("AWS") leased to Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited ("NSO") and was used by NSO in the 2019 attack.  As alleged in Plaintiffs' complaint, NSO's malicious code caused the mobile devices of WhatsApp users to involuntarily connect to this server (the "AWS Server"), among others, and download and install NSO spyware.  Dkt. No. 1 ¶¶ 39, 40.  On June 6, 2020, Plaintiffs issued a subpoena to AWS seeking information about the AWS Server, including an image of the server and activity logs.  Plaintiffs provided NSO with contemporaneous notice of that subpoena, and served NSO that same month with broad discovery requests regarding all technology used to install spyware on victims' devices.  *See* Dkt. No. 116-2 at 4–7.  On October 5, 2020, AWS produced a document showing that the AWS Server was located in Germany, and confirming that, since December 6, 2018, the AWS Server had been leased by NSO using the name "NSO Technologies Group Ltd.," an Israeli phone number, and an "nsogroup.com" email address.

Since discovery opened, Plaintiffs have produced technical information related to NSO's malicious code, AWS's response to the subpoena, and tens of thousands of other documents.  NSO has refused to produce the contents of the AWS Server, or even concede its relevance to the case.  Instead, NSO has made conflicting statements about the AWS Server to the Court and to Plaintiffs.  In an August 25, 2023 discovery letter related to the AWS Server (the "AWS Dispute Letter"), NSO told the Court that the AWS Server contained "computer code that comprises part of the Pegasus system" and that "[t]he Pegasus code resides on the German AWS server."  Dkt. No. 208 at 4.  However, in discovery responses dated November 22, 2023, NSO denied that Pegasus code resided on the AWS Server.  *See* Dkt. No. 331-4, Ex. F at 8–9.  For the next seven months, NSO refused to explain this inconsistency, and insisted that both its statements in the AWS Dispute Letter and its discovery responses were accurate.  In light of this refusal, Plaintiffs filed a motion to compel (the "Motion") requesting that NSO produce the AWS Server and supplement its RFA responses to explain the inconsistency.  *See* Dkt. No. 331-2.

In its opposition to Plaintiffs' motion to compel (the "Opposition"), NSO finally acknowledges its inconsistent positions.  NSO admits that its statement to the Court in the AWS Dispute Letter—that the AWS Server currently contained "computer code that comprises part of the Pegasus system" and that "[t]he Pegasus code resides on the German AWS server," Dkt. No. 208 at 4—was, in part, not true.  *See* Dkt. No. 339 at 3.  As NSO admits for the first time in its Opposition, at the time NSO was served with Plaintiffs' document requests and notice of the AWS subpoena in June 2020, the AWS Server still contained Pegasus code.  *See id.* at 2–3.  But as early as January 2021, NSO wiped the contents of the AWS Server and moved all of the code that had been on the AWS Server back to Israel.  Dkt. No. 339-1 ¶ 6.  This transfer came after NSO made clear that Israeli law prevented it from producing any documents in this litigation.  *See* Dkt. No. 133.

Having moved the contents of the AWS Server to Israel, NSO now claims that Israeli law prohibits their production.  *See* Dkt. No. 339 at 5.  That conclusion is not only wrong as a matter of law, but ignores what this Court has already ruled: that NSO must produce documents, including computer code, reflecting the "full functionality of the relevant spyware" used to target Plaintiffs' servers.  Dkt. No. 292 at 4. NSO concedes that the AWS Server used in the attacks contained code for such spyware, *see* Dkt. No. 339 at 2–3, and thus it must be produced.  Moreover, NSO's admission that it wiped the contents of the AWS Server sometime after January 2021—at least one year after this litigation began—shows a shocking disregard of NSO's preservation obligations.

*First*, the Court should compel NSO to revise its RFA responses related to the AWS Server within 14 days of the Court granting Plaintiffs' motion.  NSO denied certain RFAs that asked about the representations it made in the AWS Dispute Letter.  Now that it has admitted that these representations were false, it should provide fulsome responses to the RFAs in order to give Plaintiffs sufficient information about the AWS Server.  NSO should also supplement its responses to RFAs that it denied based on a lack of information, as the new facts it gathered for its Opposition confirm that it did not conduct a reasonable inquiry when it first responded to these RFAs.  *Second*, the Court should order NSO to produce the contents of the AWS Server as they existed in May 2019, including the Pegasus code hosted on that server, and provide consent to AWS to produce any copies of the AWS Server remaining in its possession within 14 days of the Court granting Plaintiffs' motion.  If NSO

2

then fails to do so, Plaintiffs should be granted leave to seek sanctions for NSO's decision to move the contents of the AWS Server to Israel in order to avoid its discovery obligations and its refusal to produce the contents of the AWS Server.

<strong>ARGUMENT</strong>

**I.    NSO Should Be Compelled to Revise Its RFA Responses Based on Its Misrepresentations in the AWS Dispute Letter**

In its Opposition, NSO admits that its statements about the AWS Server in the AWS Dispute Letter were not accurate.  *See* Dkt. No. 339 at 3, 4 n.2.  NSO's Opposition also includes new information about the AWS Server, which it had refused to provide to Plaintiffs over the last seven months. *See* Dkt. No. 339-1 ¶¶ 4–10.  Taken together, these facts confirm that NSO's responses to RFA Nos. 44, 46, 48, 49, 50, and 52 were misleading, and that NSO did not conduct a reasonable inquiry in responding to RFA Nos. 38, 43, 45, 47, and 51.  NSO should not be able to benefit from its misleading statements and subsequent refusals to clarify, and the Court should compel NSO to revise its responses to these RFAs.

**A.    NSO's Description of the AWS Server in the AWS Dispute Letter Was Not True**

As explained above, NSO made irreconcilable statements about the AWS Server in the AWS Dispute Letter and in its responses to Plaintiffs' RFAs.  Plaintiffs repeatedly asked NSO to explain the inconsistencies between its representations in the AWS Dispute Letter (that parts of Pegasus resided on the AWS Server) and its RFA responses (that Pegasus did not reside on the AWS Server). Dkt. No. 331-3 ¶¶ 14–17.  NSO's counsel insisted that its representations in the AWS Dispute Letter were true "on or about" the time they were made on August 25, 2023.  *Id*. ¶ 14.

In the Opposition, NSO's counsel has now admitted that its statement in the AWS Dispute Letter was *not* true.  *See* Dkt. No. 339 at 3 ("Defendants' counsel was imprecise in their portion" of the AWS Dispute Letter); *id*. at 4 n.2 (admitting that the AWS Dispute Letter contained an "inadvertent lack of precision" because "the AWS Server contained . . . nothing to do with Pegasus or any other Relevant Spyware" at that time).  In fact, the information that NSO provided in the AWS Dispute Letter was "more than two years out of date."  *Id*. at 4.  Further, NSO's counsel never corrected

3

1   its misrepresentation to the Court after being served with identical RFAs, or when Plaintiffs' counsel

2   highlighted the discrepancy more than seven months ago, and instead continued to insist to Plaintiffs

3   that both sets of representations were accurate without explanation.  *See* Dkt. No. 331-3 ¶ 14.

4      **B.  NSO Should Be Compelled to Revise Its Responses to Plaintiffs' Request for**

5            **Admission Nos. 44, 46, 48, 49, 50, and 52**

6         On September 28, 2023, Plaintiffs served RFA Nos. 44, 46, 48, 49, 50, and 52, which were

7   based on the exact language that NSO used in the AWS Dispute Letter.  For instance, in RFA No.

8   44, Plaintiffs asked NSO to admit that "computer code comprising part of the Pegasus System resides

9   on the [AWS Server]."  Dkt. No. 331-4, Ex. E at 5.  In other words, Plaintiffs phrased these RFAs in

10  the present tense because NSO had phrased its representations in the AWS Dispute Letter about the

11  AWS Server in the present tense.

12        NSO has since admitted that its underlying statements in the AWS Dispute Letter on which

13  the RFAs were based were not true.  NSO cannot hide behind semantics to avoid admitting relevant

14  RFAs.  NSO issued blanket denials of requests to admit statements it made in the AWS Dispute

15  Letter, about the AWS Server housing Pegasus code, and related requests to admit that NSO had

16  created and tested that code, and used it to install Pegasus on mobile devices.  Dkt. No. 331-4, Ex. F

17  at 6–16.  As Plaintiffs established in the Motion, the Federal Rules of Civil Procedure prohibit such

18  "evasive or incomplete" responses to discovery requests.  Dkt. No. 331-2 at 5–6.  "A denial must

19  fairly respond to the substance of the matter; and when good faith requires that a party qualify an

20  answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny

21  the rest."  Fed. R. Civ. P. 36(a)(4).  NSO was obligated to respond fairly to the substance of the RFAs,

22  and should have admitted the portions of the RFAs that were true (with qualifications if necessary),

23  rather than issue blanket denials because they incorporated NSO's own misstatements made in the

24  AWS Dispute Letter, which only NSO knew were inaccurate.

25        NSO's attempt to blame Plaintiffs' counsel for the way the RFAs were drafted, *see* Dkt. No.

26  339 at 9, should be rejected.  The issue here is not the result of how Plaintiffs drafted the RFAs, but

27

28

rather NSO's misrepresentations about the AWS Server.  Now that NSO has admitted its misrepresentation to the Court, it should revise its RFA responses to incorporate the new information it provided.

**C.    NSO Should Be Compelled to Supplement Its Responses to Plaintiffs' Request for Admission Nos. 38, 43, 45, 47, and 51**

NSO's Opposition confirms that it did not conduct a reasonable inquiry into the facts surrounding the AWS Server before responding to Plaintiffs' RFAs.  Throughout the meet-and-confer process, NSO's counsel refused to explain how NSO could tell the Court that NSO kept Pegasus code on the AWS Server (as NSO represented in the AWS Dispute Letter) but simultaneously lack knowledge about when NSO leased the AWS Server and whether it had stored Pegasus code on the AWS Server (as NSO represented in response to Plaintiffs' RFA Nos. 38, 43, 45, 47, and 51).  *See* Dkt. No. 331-3 ¶¶ 14–17.  In a declaration accompanying the Opposition, NSO's Vice President for Compliance and Deputy General Counsel claims that NSO lacks any information or records about when NSO began storing Pegasus code on the AWS Server, and whether NSO was storing Pegasus code on the AWS Server at the time Plaintiffs uncovered the attacks in May 2019.  *See* Dkt. No. 339-1 ¶ 10.  This purported ignorance about the AWS Server should be rejected by the Court as another attempt by NSO to ignore its discovery obligations.  NSO leased the AWS server for years and used it in the attack described in the complaint.  NSO's lack of relevant documents only underscores Plaintiffs' need for a copy of the AWS Server.

NSO's contention that it was never informed about the records Plaintiffs obtained from AWS, Dkt. No. 339 at 10, is also untrue.  In a December 6, 2023 letter, Plaintiffs informed NSO that they had produced AWS subscriber records on June 23, 2023, identified the Bates numbers for these documents, and noted that "[t]hose subscriber records show that IP address 54.93.81.200 had been leased by and subscribed to 'NSO Technologies Group Ltd.' and list email address 'it@nsogroup.com' . . . since December 6, 2018." Dkt. No. 331-3 ¶ 15.  Plaintiffs' counsel expressly asked for an explanation of the discrepancy, and met and conferred on the topic, and NSO's counsel refused to provide any of the "clarifications" it now offers the Court.  *See id*. ¶¶ 15–17.  NSO's claim that it was not aware of

this document until Plaintiffs filed their Motion, and its subsequent ability to produce detailed information about its investigation, confirms that its original investigation was insufficient, casts significant doubt on the sufficiency of any current investigation supporting its professed lack of knowledge, and signals that NSO lacks any real intent to participate in discovery in this case.  NSO should be compelled to provide complete and accurate responses to RFA Nos. 38, 43, 45, 47, and 51.

## II.   NSO Should Be Compelled to Produce the Information That It Removed from the AWS Server, Including the Pegasus Code

On February 23, 2024, the Court ordered NSO to produce information concerning the full functionality of any NSO spyware targeting or directed at WhatsApp servers, or using WhatsApp in any way to access Target Devices.  *See* Dkt. No. 292 at 3–4.  That broad definition clearly includes a copy of the Pegasus code that NSO admits it removed from the AWS Server, which was actually used in the attacks.  *See* Dkt. No. 55-2 ¶¶ 3, 5 (declaration from Plaintiffs' engineer explaining role of AWS Server in attacks).  But NSO has refused to produce a copy of the AWS Server based on its misinterpretation of the Court's Order.  The Court should clarify that NSO cannot evade its production obligations based on its self-serving interpretations.

### A.   The Pegasus Code That NSO Removed from the AWS Server Is Part of the "Full Functionality of the Relevant Spyware"

Compelling NSO to produce the Pegasus code and other relevant information that it removed from the AWS Server is consistent with the Court's February 23, 2024 Order.  In that order, the Court ordered NSO to produce information concerning the full functionality of any NSO spyware targeting or directed at WhatsApp servers, or using WhatsApp in any way to access Target Devices.  Dkt. No. 292 at 3–4.  NSO concedes that the AWS Server housed Pegasus code.  Dkt. No. 339 at 2–3.  And Plaintiffs have produced discovery showing that the AWS Server was specifically used in the attack.  Access to the information and Pegasus code on the AWS Server would give Plaintiffs crucial insight into the functionality of the spyware that Plaintiffs have identified as actually targeting Plaintiffs' servers in May 2019.  Indeed, it is hard to imagine how Plaintiffs could understand "the full functionality of the relevant spyware," Dkt. No. 292 at 4, without the code for NSO's spyware actually stored in this server used in the May 2019 attacks.  Notwithstanding the fact that NSO moved this

6

1    code off of the AWS Server and back to Israel in an attempt to avoid producing it after Plaintiffs

2    uncovered the AWS Server's importance, the contents of the AWS Server remain responsive to the

3    discovery that NSO has been ordered to produce.

4         Relying on an incorrect reading of the Court's February 23, 2024 Order, NSO claims that the

5    Court denied Plaintiffs' request to produce the code that NSO removed from the AWS Server.  *See*

6    Dkt. No. 339 at 6–8.  NSO nonetheless admits that "the Court's Order did not specifically reference"

7    RFP No. 30 in its ruling.  *Id*. at 7.  Nor does RFP No. 30 seek information about NSO's "server

8    architecture information," which the Court denied at this point.  *See* Dkt. No. 292 at 5.  Instead, RFP

9    No. 30 seeks a copy of the Pegasus computer code that was housed on a server that Plaintiffs linked

10   to NSO's unauthorized access to WhatsApp's servers, so that Plaintiffs can understand its full func-

11   tionality.  Dkt. No. 331-4, Ex. C at 4.  What's more, the Court denied discovery related to NSO's

12   server architecture because "it appears that plaintiffs would be able to glean the same information

13   from the full functionality of the alleged spyware, as discussed in category (2) above."  Dkt. No. 292

14   at 5.  NSO should be compelled to produce the copy of the AWS Server in its possession, and consent

15   to AWS's production of any copy that may remain in its possession, custody, or control.[1]

16        **B.    The Pegasus Code That NSO Removed from the AWS Server Is Specific and**

17               **Important to Plaintiffs' Claims**

18        Even if the code that NSO removed from the AWS Server did not show the "full functionality

19   of the relevant spyware," the underlying *Richmark* factors point in favor of ordering production of

20   the contents of the AWS Server.  The Court's February 23, 2024 Order leaves no room for interpre-

21   tation, and NSO's attempt to relitigate the merits of its *Richmark* motion should be rejected.

22        As a starting point, the AWS Server was located in Germany and in the possession of a third

23   party that was not subject to the purported Israeli law restrictions that NSO has invoked, which is

24

25   [1]  Because the Court's February 23, 2024 Order compelled production of the code that NSO re-
     moved from the AWS Server, Plaintiffs' request is not an improper motion for reconsideration,

26   *see* Dkt. No. 339 at 6–7, but rather seeks clarification and a more specific order addressing RFP
     No. 30 given NSO's position that the AWS Server is not covered by the Court's February 23,

27   2024 Order.  In addition, most of the relief that Plaintiffs sought in their Motion—including an
     order compelling NSO to supplement or revise its responses to various Requests for Admission—

28   has never been considered by the Court.  As such, Local Rule 7-9 has no bearing here.

likely why NSO moved the contents of the server.  (Though NSO claims to have received a legal opinion that the transfer of Pegasus code from a server located in Germany would implicate Israel's Defense Export Control Law ("DECL"), *see* Dkt. No. 339-1 ¶ 15, the Pegasus code would not have been subject to the other restrictions that NSO has invoked to avoid participating in discovery.)  As such, Plaintiffs had a genuine path to obtaining the AWS Server *from AWS*.  But NSO refused to give AWS consent to produce the AWS Server's contents, despite NSO's obligation to produce the contents of the server as relevant discovery within its possession, custody, or control.

In its Opposition, NSO claims that the contents of the AWS Server are "at the core of Israel's export control concerns" and that an order compelling production "would set up an irreconcilable conflict for Defendants between complying with its discovery obligations in the United States and complying with Israel's DECL."  Dkt. No. 339 at 8.  This argument has already been considered and rejected by the Court.  Nine months ago, the Court analyzed whether compliance with Israeli law might "excuse non-compliance with discovery orders," and concluded that "[t]o the extent that plaintiffs are able to identify discovery that is sufficiently specific and important to the asserted claims in this case, the court will not excuse non-production of that discovery."  Dkt. No. 233 at 8, 9.  The Court's order was clear: NSO must produce specific and important documents even if production is barred by Israeli law.  Under the *Richmark* framework that the Court adopted, the contents of the AWS Server are specific and important discovery.  As the documents produced by Plaintiffs to NSO have shown, the victims of NSO's attack were forcibly connected to the AWS Server moments after receiving unusual call offers, and the AWS Server facilitated the download and installation of the spyware on the victim's devices.  *See* Dkt. No. 1 ¶¶ 39, 40.

NSO responds that ordering production of the AWS Server "would bring further chaos to this litigation."  Dkt. No. 339 at 8.  Whatever that means, NSO cannot be excused from participating in discovery here.  In the 16-month period since this case has returned to the district court, NSO has produced just 17 of its own documents, refused to respond to any of Plaintiffs' interrogatories, provided evasive responses to RFAs based on NSO's own representations to the Court, and has offered to make just three of its employees available for depositions at the end of the fact discovery period.

1   It should come as no surprise to NSO that Plaintiffs seek computer code showing how Pegasus inter-

2   acted with WhatsApp's servers, which is crucial to understand "the full functionality of the relevant

3   spyware," Dkt. No. 292 at 4, especially when Plaintiffs promptly informed NSO of their understand-

4   ing that the Court's February 23, 2024 Order required NSO to produce a copy of the AWS Server.

5   **III.    The Court Should Impose Sanctions If NSO Refuses to Produce the Contents of the**

6   **AWS Server**

7        By providing new facts about its removal of the Pegasus code and related materials from the

8   AWS Server in January 2021, NSO crystallizes the case for sanctions against it if it now fails to

9   produce the information it removed from the AWS Server.  According to its Vice President for Com-

10  pliance and Deputy General Counsel, NSO "remov[ed] the Pegasus materials from the AWS Server

11  in January 2021."  Dkt. No. 339-1 ¶ 6.  NSO claims that it preserved the Pegasus code and related

12  materials that were on the server as of November 9, 2020 "as part of their litigation preservation

13  obligations," but later moved this information to Israel.  Dkt. No. 339 at 13.[2]

14       NSO's main argument to avoid sanctions is that the Pegasus code is not "lost" within the

15  meaning of Rule 37(e).  This interpretation ignores the practical impact of NSO's actions.  For one,

16  NSO's decision to remove the code and other files deprived Plaintiffs of the ability to obtain the code

17  directly from AWS, a U.S. company subject to this Court's jurisdiction and not subject to the pur-

18  ported Israeli law restrictions.  The Court could compel NSO to provide AWS with its consent under

19  its *Richmark* analysis.  Now, according to NSO, the only copy of that code and files from the AWS

20  Server are in Israel, subject to Israeli law, and NSO clearly states that the Israeli government will

21  *never* approve NSO producing it.  Given NSO's stated intention to never produce the Pegasus code,

22  and its inability to identify a substitute, it may be effectively lost, which will prejudice Plaintiffs.

23

24  _____

25  [2]   NSO's insistence that the AWS Server played no role in installing Pegasus on any of the Target
       Devices, *id*. at 13, betrays an ignorance of the evidence that Plaintiffs have produced in discovery
26     showing otherwise, as well as a declaration from one of Plaintiffs' engineers filed on April 23,
       2020 that stated that malicious code sent during the attack "was designed to cause a WhatsApp
27     user's mobile device to connect to a remote server not associated with WhatsApp," and listed the
       IP address of the AWS Server, Dkt. No. 55-2 ¶¶ 3, 5.
28

9

Even if NSO does produce the information it preserved from the AWS Server in November 2020—which it states it will not do—that production may not reflect the contents of the server during the May 2019 attack.  *See* Fed. R. Civ. P. 37(e) advisory committee's note ("[L]oss from one source may often be harmless *when substitute information can be found elsewhere*." (emphasis added)). There can be no doubt that the contents of the AWS Server were the subject of a pending discovery request.  The contents of the AWS Server was squarely responsive to document requests that Plaintiffs served in June 2020.  *See* Dkt. No. 116-2 at 7.  And Plaintiffs had identified the relevance of the AWS Server in its opposition to NSO's motion to dismiss in April 2020.  *See* Dkt. No. 55-2 ¶¶ 3–5.

In arguing otherwise, NSO relies on cases where a party actually produced substitute information for whatever might have been deleted.  In *World Trade Centers Association, Inc. v. Port Authority of New York & New Jersey*, the plaintiff merely produced fewer relevant documents for the time period after certain hard drives were wiped, and there was no evidence that any relevant discovery created before the hard drives were wiped was not produced.  No. 15 Civ. 7411 (LTS) (RWL), 2018 WL 1989616, at *12 (S.D.N.Y. Apr. 2, 2018).  NSO has admitted there were relevant documents on the AWS Server—Pegasus code—but as of today, NSO has produced no technical documents, let alone any that would substitute for the Pegasus code it removed from the AWS Server. Moreover, NSO has stated that Israeli law restrictions prohibit it from producing any of the Pegasus code.  *See* Dkt. No. 339 at 8.  If NSO fails to remedy that deficiency, a range of potential sanctions would be appropriate to mitigate the prejudice to Plaintiffs.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court order NSO to, within 14 days of this Court's order, revise the RFA responses that relied on its misrepresentations in the AWS Dispute Letter, produce the Pegasus code and other files it removed from the AWS Server, and consent to AWS producing any copy of the AWS Server that remains in its possession, custody, or control.

Dated: July 15, 2024                              Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: /s/ Micah G. Block
        Micah G. Block (SBN 270712)
        DAVIS POLK & WARDWELL LLP
        1600 El Camino Real
        Menlo Park, California 94025
        Telephone: (650) 752-2000
        Facsimile:  (650) 752-2111
        Email: micah.block@davispolk.com

        Greg D. Andres
        Antonio J. Perez-Marques
        Craig T. Cagney
        Luca Marzorati
         (admitted *pro hac vice*)
        DAVIS POLK & WARDWELL LLP
        450 Lexington Avenue
        New York, New York 10017
        Telephone: (212) 450-4000
        Facsimile: (212) 701-5800
        Email: greg.andres@davispolk.com
           antonio.perez@davispolk.com
           craig.cagney@davispolk.com
           luca.marzorati@davispolk.com

        *Attorneys for Plaintiffs*
        *WhatsApp LLC and Meta Platforms, Inc.*