UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WHATSAPP INC., et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, et al.,<br><br>       Defendants. | Case No. 19-cv-07123-PJH<br><br>**ORDER RE DISCOVERY LETTER BRIEFS, MOTION FOR ISSUANCE OF LETTER ROGATORY, MOTION TO COMPEL, AND VARIOUS MOTIONS TO SEAL**<br><br>Re: Dkt. No. 306, 307, 308, 313, 314, 319, 320, 323, 324, 331, 332, 335, 341, 345, 346 |

Before the court are four discovery letter briefs filed by the parties and by non-party William Marczak, plaintiffs' motion for issuance of a letter rogatory, and plaintiffs' motion to compel discovery.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court rules as follows.

A.    Discovery letter briefs

The court starts with the four discovery letter briefs, as they all relate to a similar issue – namely, the discoverability of information about the alleged victims in this case.

In the first discovery letter brief, NSO seeks the production of certain documents that were embedded by hyperlinks in emails, while plaintiffs argue that the documents are either privileged or irrelevant or both.  See Dkt. 306.

In the second discovery letter brief, NSO seeks the production of plaintiffs' pre-litigation communications with non-party Citizen Lab.  See Dkt. 308.

In the third discovery letter brief, NSO renews its motion for issuance of a letter

1    rogatory to Citizen Lab.  <u>See</u> Dkt. 314.

2        Finally, in the fourth discovery letter brief, non-party William Marczak, a computer

3    scientist who served as an independent contractor for Citizen Lab, seeks to quash NSO's

4    subpoena to him.  <u>See</u> Dkt. 324.

5        As mentioned above, NSO previously filed a motion for issuance of a letter

6    rogatory seeking information from non-party Citizen Lab, which the court denied without

7    prejudice to being renewed upon a threshold evidentiary showing.  <u>See</u> Dkt. 305.  In the

8    third discovery letter brief, NSO argues that it has made that showing for all individuals on

9    the 'civil society' and 'VIP' lists.  <u>See</u> Dkt. 314.  NSO acknowledges that it has "not

10   received <u>any</u> information" from its "sovereign customers about the identity of the targets,"

11   but rather relies upon "public sources of information" such as Internet links.  <u>See</u> <u>id.</u>

12   (emphasis in original).  NSO further argues that "the VIP list is almost entirely comprised

13   of persons who, by virtue of their positions in government or military organizations, are

14   the subject of legitimate intelligence investigations."  <u>See</u> <u>id</u>. at 3.

15        Plaintiffs respond by arguing that "there is no defense or exception to the CFAA

16   [Computer Fraud and Abuse Act] or any other claim in this case that allows hacking of

17   victims who have been accused of wrongdoing in blog posts and the like."  <u>See</u> Dkt. 314

18   at 4.  Plaintiffs acknowledge that "the CFAA has an exception that applies to legitimate

19   U.S. law enforcement activity (18 U.S.C. § 1030(f))," but argue that "NSO does not and

20   cannot invoke that U.S. law-enforcement exception."  <u>See</u> <u>id.</u>  Specifically, plaintiffs

21   emphasize that NSO relies on speculation as to whether certain individuals "might have

22   been 'appropriate targets' for surveillance," which "says nothing about whether NSO's

23   unauthorized access was actually pursuant to any legitimate and authorized law

24   enforcement, national security, or intelligence investigation."  <u>See</u> <u>id</u>. at 5.  Plaintiffs also

25   point out that "[h]aving repeatedly asserted that Pegasus technology is used only to

26   combat terrorism and criminal activity, NSO now claims that anyone in any government

27   or military organization is a valid target."  <u>See</u> <u>id</u>. at 6.  Plaintiffs ultimately argue that

28   NSO's affirmative defense should be stricken, and they seek leave to renew their motion

1    to strike.  See id. at 6.

2          As before, the court believes that it would be premature to preclude certain

3    affirmative defenses as lacking legal or factual support, as that remedy is more properly

4    suited to a motion in limine.  See Dkt. 305 at 4.  However, the court does find it proper to

5    discern the boundaries of NSO's asserted affirmative defense, especially in light of the

6    numerous related disputes that have arisen.

7          As discussed above, in addition to arguing that the affirmative defense should be

8    stricken in its entirety, plaintiffs also argue that any exception for law enforcement activity

9    must be tied to the asserted claims under the CFAA, and further argue that the statutory

10   exception applies only to United States law enforcement activity.

11         NSO does not appear to respond to that argument in its portion of the discovery

12   letter brief.  In fact, NSO provides no statutory basis for its asserted affirmative defense.

13         In the absence of any authority showing an expanded law enforcement exception,

14   the court construes NSO's sixth affirmative defense as congruent with the exception

15   provided for in 18 U.S.C. 1030(f), which reads as follows:

16         This section does not prohibit any lawfully authorized investigative,
           protective, or intelligence activity of a law enforcement agency of the United
17         States, a State, or a political subdivision of a State, or of an intelligence
           agency of the United States.
18

19         Because NSO has not made even an initial showing that the above exception

20   applies to any of the alleged victims in this case, the court concludes that the discovery

21   sought in relation to those alleged victims would be disproportionate to the needs of the

22   case.  As mentioned above, the parties' disputes over victim-related information has

23   spurred not only the four current discovery letter briefs, but also multiple previous rounds

24   of discovery disputes.  In other words, the parties' repeated disputes over victim-related

25   information have made plain just how disproportional the requested discovery is to the

26   needs of the case.  The court has already held that the identity of the victims is not

27   relevant to plaintiffs' case-in-chief, and plaintiffs have now represented to the court that

28   they do not intend to call Citizen Lab at trial.  See Dkt. 308 at 4.  Based on that

United States District Court
Northern District of California

1    representation, the court concludes that the pursuit of further discovery related to Citizen

2    Lab and the identification of the alleged victims would not be proportional to the needs of

3    the case at this time.  At the time of trial, the court will account for this limitation when

4    determining the admissibility of evidence.  Accordingly, the requests for relief sought in

5    the parties' first, second, and third discovery letter briefs are DENIED, and the request for

6    relief sought in non-party William Marczak's discovery letter brief is GRANTED.[1]

7    B.    Plaintiffs' motion for issuance of a letter rogatory

8         Next, plaintiffs have filed a motion for issuance of a letter rogatory pursuant to the

9    Hague Convention, seeking discovery from NSO witnesses in Israel.  See Dkt. 320.

10   NSO's response points out that no depositions have been taken in this case (at the time

11   of the letter brief's filing), and that the discovery sought can be obtained from deponents

12   who have already agreed to appear.  See Dkt. 336 at 7.

13        The court concludes that, before going through the burdensome process of

14   seeking discovery through the Hauge Convention, it would be more prudent for plaintiffs

15   to first take the depositions of the witnesses that have already agreed to appear.  While

16   plaintiffs provide authority that the Israeli witnesses need not possess "unique"

17   information in order to justify discovery, in this instance, the court finds that it would not

18   be proportional to the needs of the case to seek non-unique discovery from Israel via the

19   Hague Convention.  Accordingly, plaintiffs' motion for issuance of a letter rogatory is

20   DENIED at this time.

21   C.    Plaintiffs' motion to compel

22        Finally, plaintiffs have filed a motion to compel production of the Amazon Web

23   Services ("AWS") web server.  See Dkt. 332.  Plaintiffs also ask that NSO be required to

24   revise its RFA responses and to provide a "full explanation" regarding the preservation of

25   the server "so that sanctions may follow if appropriate."  See id. at 7.

26   _____

27   [1] NSO argues that Marczak's relevant testimony is "not limited to the content of the
     Citizen Lab 'civil society' and 'VIP' lists," but does not provide any basis for the court to
28   conclude that Marczak has any relevant testimony beyond his work for Citizen Lab and/or
     unrelated to the identity of the alleged victims in this case.  See Dkt. 324 at 5.

United States District Court
Northern District of California

1    In its opposition, NSO represents that it has "preserved" the "entire contents of the

2    AWS server as it existed between November 2020 and January 2021, i.e., the most

3    recent iteration of the AWS server that contained any Pegasus computer code or other

4    materials comprising or related to Relevant Spyware." See Dkt. 339 at 5.  NSO further

5    argues that plaintiffs have improperly filed a motion for reconsideration in the form of a

6    motion to compel.

7    As an initial matter, the court disagrees that plaintiffs' motion seeks, in substance,

8    reconsideration of the court's previous order regarding NSO's server information.

9    Instead, the court views the present motion as seeking clarification rather than

10   reconsideration, as the court's previous order did not specifically mention the AWS server

11   (rather, it referred only generally to "server architecture") nor the specific request for

12   production at issue on this motion (namely, RFP no. 30).

13   NSO argues that, if the court were to grant the relief sought by plaintiffs' motion,

14   then it would "challenge whether the prior motion did in fact compel further discover with

15   respect to each of the requests in categories 1 and 2 (as the order did not use the word

16   'granted' in its discussion of categories 1 and 2)." See Dkt. 339 at 11, n. 4.  The court

17   agrees with NSO that the previous order did not use the word "granted" in the same

18   specific paragraph as the discussions of categories 1 and 2, and now clarifies that the

19   previous order did indeed intend to grant plaintiffs' requested relief with respect to

20   categories (1) and (2), as reflected in the order's language that "those documents are

21   sufficiently important and specific such that compliance with discovery obligations may

22   not be excused." See Dkt. 292 at 3-4.  The court believes that such clarification will

23   obviate the need for further motion practice on the issue.

24   The need for clarification of the court's previous order regarding category (4) is

25   evidenced by the argument made in NSO's proffered sur-reply[2] that the "previous order's

26   reference to 'full functionality' was not intended to require NSO to produce Pegasus

27

28

---

[2] NSO's motion for leave to file a sur-reply (Dkt. 346) is GRANTED.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   computer code." Dkt. 346-1 at 3. The court takes this opportunity to clarify that the

2   previous order's reference to 'full functionality' was indeed intended to require NSO to

3   produce Pegasus computer code. The basis for the court's denial of category (4) was

4   that production of the AWS server in its entirety could have resulted in the disclosure of

5   information about NSO products completely unrelated to Pegasus, and because "[b]ased

6   on the information presented to the court" at the time, it appeared "that plaintiffs would be

7   able to glean the same information from the full functionality of the alleged spyware, as

8   discussed in category (2) above." See Dkt. 292 at 5.

9          Rather than arguing that the Pegasus code housed in the AWS server is

10  duplicative of the discovery that will otherwise be provided to plaintiffs, NSO argues that

11  production is not warranted because the Pegasus code "is very carefully export-

12  controlled by the Israeli Ministry of Defense." See Dkt. 339 at 6. However, the court

13  already balanced those considerations as part of the Richmark analysis, and concluded

14  that, in spite of the export controls and other restrictions, that production of "information

15  sufficient to show the full functionality of all relevant spyware" was "not excused" because

16  "that information is sufficiently important and specific" to require production under

17  Richmark. See Dkt. 292 at 5.

18         Accordingly, the court now clarifies that its previous order, dated February 23,

19  2024, should be read to encompass Pegasus computer code, as well as code that shows

20  the full functionality of any other "relevant spyware." To the extent that information on the

21  AWS server as of November 2020, and which has since been moved to a different

22  server, reflects such computer code, the court orders production of that code under

23  Richmark, as the information is sufficiently important and specific to require production

24  despite the existence of foreign legal restrictions. To be clear, the court is not re-

25  balancing the Richmark factors on this motion, it is simply reiterating the balance that was

26  struck in the previous order. The information showing the full picture of how Pegasus

27  functions – which squarely includes Pegasus computer code – is discoverable under

28  Richmark despite the various restrictions that have been cited.

1    Regarding NSO's responses to plaintiffs' requests for admission, the court first

2    recognizes that the Federal Rules of Civil Procedure impose upon parties a duty to

3    supplement discovery responses if the party learns that the response is incomplete or

4    incorrect.  See Fed. R. Civ. Pro. Rule 26(e)(1).  Given the additional information about

5    the AWS server contained within this motion's briefing, the court concludes that

6    supplementation of NSO's responses to plaintiffs' requests for admission is warranted.

7    Accordingly, NSO is directed to provide supplemental responses to all of the requests for

8    admission cited in plaintiffs' motion, namely, RFA nos. 38 and 43-52.  To the extent that

9    NSO argues that certain RFAs were properly denied – for instance, because they were

10   phrased in the present tense – NSO need not necessarily amend those responses.  The

11   purpose of the court's order is simply to ensure that the RFA responses contain all of the

12   updated information that was provided in NSO's opposition brief.

13   To the extent that plaintiffs' motion seeks a "sanctions finding" or any related relief,

14   the court finds that request to be premature and/or improper in light of NSO's

15   representation that it preserved the relevant information on the AWS server.

16   Accordingly, plaintiffs' motion to compel is GRANTED in part and DENIED in part.

17   The motion is granted to the extent that plaintiffs seek production of information related to

18   the "relevant spyware" (including Pegasus computer code) that was housed on the AWS

19   web server and was subsequently preserved.  The motion is also granted to the extent

20   that plaintiffs seek to have NSO provide supplemental responses to RFA nos. 38 and 43-

21   52.  The motion is denied to the extent that plaintiffs seek sanctions-related relief.  NSO

22   shall provide supplementary responses to the RFAs within 21 days of the date of this

23   order.  Regarding the information previously stored on the AWS web server and

24   subsequently preserved, the court recognizes that NSO must comply with certain

25   procedures before production, and thus will not set a separate deadline beyond the

26   obligations imposed by the federal rules and this case's schedule.

27   In connection with the discovery motions, the parties have filed various motions to

28   seal.  See Dkt. 307, 313, 319, 323, 331, 335, 341, 345.  The motions to seal are

1    GRANTED under the "good cause" standard.

2                                    **CONCLUSION**

3           For the foregoing reasons, the relief requested by the parties' first three discovery

4    letter briefs (Dkt. 306, 308, 314) is DENIED, and the relief requested by non-party William

5    Marczak (Dkt. 324) is GRANTED.  Plaintiffs' motion for issuance of a letter rogatory (Dkt.

6    320) is DENIED, and plaintiffs' motion to compel (Dkt. 332) is GRANTED in part and

7    DENIED in part.

8           **IT IS SO ORDERED.**

9    Dated:  August 1, 2024

10                                    _____/s/ *Phyllis J. Hamilton*_____

11                                    PHYLLIS J. HAMILTON
                                      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28