UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, et al.,<br><br>    Defendants. | Case No. 19-cv-07123-PJH<br><br>**ORDER RE DISCOVERY LETTER BRIEFS, MOTIONS TO SEAL**<br><br>Re: Dkt. No. 359, 360, 365, 366 |

    Before the court are two discovery disputes between the parties. See Dkt. 360, 366. In the first letter brief, filed on August 13, NSO seeks three categories of relief: (1) supplemental responses to RFPs seeking the location of plaintiffs' servers and identification of limitations on access to plaintiffs' servers, (2) a supplemental response to a RFP seeking plaintiffs' communications with law enforcement, and (3) production of a privilege log. See Dkt. 360.

    As an initial matter, plaintiffs represent in their portion of the letter that they intend to produce a privilege log in advance of the first deposition of plaintiffs' witnesses, and based on that representation, the court DENIES as moot the relief sought in category (3).

    With regard to category (1) above, NSO explains that it seeks "documents plaintiffs may use to support their allegations that NSO accessed or used Whatsapp computers or servers located in California, documents sufficient to identify the limitations on access to Whatsapp servers plaintiffs believe NSO circumvented, and documents sufficient to show the areas of Whatsapp servers plaintiffs believe NSO accessed that are not generally accessible to Whatsapp users." Dkt. 360 at 1. NSO argues that its counsel

1  have "combed through Plaintiffs' document production and could locate no documents
2  showing that NSO had accessed or used any WhatsApp computers or servers located in
3  California, or documents sufficient to identify the limitations on access to WhatsApp
4  servers they contend NSO circumvented, or documents sufficient to show the areas of
5  WhatsApp servers they contend NSO accessed that are not generally accessible to
6  WhatsApp users." See id. at 1-2.

7  Plaintiffs make a number of arguments in response.  First, they argue that they
8  have "no obligation to identify where in Plaintiffs' document production the responsive
9  documents are located." See Dkt. 360 at 4.  Second, plaintiffs argue that they "have
10 already agreed to produce 'non-privileged, relevant documents' that they 'may use to
11 support their claims in this case' in response to RFP No. 231," and that "[i]f, after
12 discovery is completed, NSO still believes there is no evidence on these topics, it may
13 make that argument through a dispositive motion." Id. at 4-5.  Finally, plaintiffs argue that
14 NSO did not previously object to the search parameters proposed by plaintiffs, and that
15 "NSO cannot seek a re-do of discovery at this late stage." Id. at 4.

16 Ultimately, while the court disagrees with plaintiffs' latter point that NSO is seeking
17 a "re-do of discovery," the court finds it significant that each of the topics sought by this
18 category of requests relate to issues on which plaintiffs bear the burden of proof.  As
19 NSO argues, "plaintiffs' theory of 'purposeful direction' personal jurisdiction hinges on a
20 contention that defendants supposedly accessed their servers located in California," and
21 [l]ikewise, the circumvention of limitations on access to servers and the accessing of
22 areas of servers not generally accessible to the public are key elements of proof of a
23 CFAA violation." See Dkt. 360 at 2.  Thus, if plaintiffs' production is indeed deficient, they
24 will not have sufficient evidence to prove their claims.  Because of that, the court
25 concludes that there will be no prejudice to NSO caused by the lack of supplemental
26 responses.  The court also notes that the Federal Rules of Civil Procedure permit
27 plaintiffs to produce documents as they are kept in the usual course of business, and a
28 producing party has no responsibility to highlight significant documents for the receiving

party.  Thus, the court DENIES the relief sought by NSO as part of category (1).

Turning to category (2), NSO argues that "[d]ocuments produced by plaintiffs show that months before the filing of the complaint, they communicated with DOJ (including the FBI) about defendants," and that "the materials sought are highly relevant to the core issues in the case – including plaintiffs' investigation of the alleged monitoring of its users and how plaintiffs intend to prove that NSO or Pegasus were involved in any such monitoring."  See Dkt. 360 at 2.  NSO further argues that "defendants have the right to see plaintiffs' communications with FBI that would shed light on the meaning of the heavily redacted documents FBI provided to plaintiffs and the reasons why FBI provided them."  Id. at 2-3.

In response, plaintiffs argue that they "did not rely on this material to identify 'targeted users' or attribute the attack to NSO prior to plaintiffs filing the complaint," but rather they "independently attributed the attack to NSO" and "received these materials well after the complaint had been filed."  See Dkt. 360 at 5.  Plaintiffs further argue that "any communications Plaintiffs had with third party law enforcement agencies (prior to filing or after filing) are irrelevant to any claims or defenses in this action."  See id.  With regard to redactions, plaintiffs argue that they "received these documents with redactions, and produced them to NSO in the same form in which the documents were received."  See id.

As with category (1), the documents sought in category (2) relate to issues on which plaintiffs bear the burden of proof.  While NSO argues that the "core issues in the case" include "plaintiffs' investigation of the alleged monitoring of its users," the court does not entirely agree with that framing – the core issue is whether NSO did indeed monitor plaintiffs' users, and plaintiffs must ultimately provide proof of that allegation, but plaintiffs need not meet any specific legal elements with regard to their investigation.  Accordingly, as with category (1), the court concludes that any failure to provide supplemental responses will cause prejudice only to plaintiffs – not to defendants – and thus, the court DENIES the relief sought by NSO as part of category (2).

In the second discovery letter brief, filed by plaintiffs on August 21 with responses from NSO on August 22 and 23, plaintiffs seek authorization to disclose information designated by NSO as "highly confidential" to their designated experts. See Dkt. 366. Plaintiffs argue that they have complied with their obligations under Section 7.4 of the Stipulated Protective Order, but that NSO refuses to allow the "FTI Designees" to review highly confidential information. See Dkt. 366 at 2-3.

NSO argues that disclosure to the FTI designees is not reasonably necessary, and further argues that plaintiffs have not complied with the procedure set forth by the protective order. First, NSO argues that plaintiffs have already designated technical experts from Intuity Consultants, and now wish to designate additional experts from FTI (one testifying expert from FTI, and six additional experts from FTI to assist the testifying expert). Defendants argue that, rather than designating the six additional experts, the previously-designated experts should be used to assist the testifying expert. See Dkt. 369 at 2-3. NSO also argues that plaintiffs may be trying to "injure defendants by trying to spread their highly confidential materials and information as widely as possible," or "retaining as many experts as possible to make them unavailable to defendants," or "shopping for a better opinion." See id. at 3.

With regard to the protective order procedures, NSO argues that plaintiffs have not made sufficiently specific disclosures regarding the FTI designees' prior engagements. See Dkt. 369 at 3-4. Plaintiffs respond by arguing that they have provided the same level of detail that NSO provided for its own experts, and that the protective order allows for such limited disclosures where the expert believes that disclosure of client identities would violate a confidentiality obligation to a third-party. See Dkt. 366 at 2.

As to whether disclosure is "reasonably necessary" under the protective order, the court concludes that disclosure of the technical information to two staffs of experts (five experts from Intuity Consultants, along with the seven proposed experts from FTI) is reasonable given the highly technical nature of the facts at issue in this case. Moreover, the court finds no basis to conclude that plaintiffs' designation of the FTI designees is

based on an improper motive such as seeking to widely disseminate NSO's proprietary information or to preclude the FTI experts from being retained by defendants.

The protective order provides that "the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert." See Dkt. 132 at 15.  In this instance, defendants have not met their burden of proving that the risk of harm outweighs plaintiffs' need to disclose the protected material, and thus, the relief sought by plaintiffs is GRANTED in part.  The court concludes that plaintiffs appear to have fully complied with the protective order's procedures, the only exception being FTI designee Eric Lunser, for whom no information is provided regarding prior engagements.  See Dkt. 365, Ex. C.  Because NSO's letter brief was filed after plaintiffs' letter brief, it is unclear how plaintiffs respond to Lunser's omission.

Disclosure of information designated 'highly confidential' to the FTI designees, other than Lunser, is authorized based on the current designation.  As mentioned above, because of the sequential nature of the parties' letter briefs (in violation of the court's procedures for discovery disputes), it is unclear whether plaintiffs have since corrected the omission of Lunser, or whether Lunser had no representations to disclose, or whether the disclosure remains deficient.  Accordingly, the parties are directed to meet and confer regarding Lunser's designation as an expert, keeping in mind that the court has found the level of specificity with regard to the other FTI designees to be sufficient.

Finally, the parties' motions to seal (Dkt. 359, 365) are GRANTED.

**IT IS SO ORDERED.**

Dated:  August 27, 2024

       /s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge