# KING & SPALDING

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, California 90071 USA

September 17, 2024

The Honorable Phyllis J. Hamilton, Senior U.S. District Judge
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 3
1301 Clay Street, Oakland, CA 94612

Re:  Discovery Matter in *WhatsApp, Inc. et al. v. NSO Group Techs., Ltd. et al.*, 4:19-cv-7123

Dear Judge Hamilton:

Pursuant to the Court's Standing Order, the Parties hereby submit this joint letter brief.

**I.      NSO's Position**

Plaintiffs should be compelled to provide Rule 30(b)(6) testimony with respect to (1) 18 topics identified in NSO's Amended Rule 30(b)(6) Deposition Notice ("Notice") and to (2) time periods other than April and May 2019. As to the first category—despite multiple letters, conferences of counsel, and NSO agreeing to rephrase its topics—Plaintiffs have flatly refused to provide corporate testimony on 18 topics, addressing: (i) facts relevant to whether the exercise of personal jurisdiction over Defendants is proper; (ii) facts central to elements of Plaintiffs' claims; (iii) facts relevant to NSO's defenses; and (iv) facts underlying Plaintiffs' claims of injury/damages.[1] With respect to the second category of disputed topics, the Court should overrule Plaintiffs' improper objections as to 14 other topics set forth in the Notice.[2] Plaintiffs' primary objections seek to limit Plaintiffs' testimony to a two-month period in April and May 2019, despite Plaintiffs seeking and obtaining discovery from NSO well beyond that period, despite Plaintiffs seeking damages based on costs allegedly incurred after May 2019, and despite Plaintiffs' assertions that NSO has continued the conduct alleged in the Complaint through the present (which forms the basis for Plaintiffs' improper request for injunctive relief). Plaintiffs' blanket reliance on *Google LLC v. Sonos, Inc.*, 2022 WL 16554695 (N.D. Cal. Oct. 31, 2022) is misplaced. NSO is not seeking Plaintiffs' legal conclusions or a witness to identify "all facts" that support a legal theory. *See id.* at *4. NSO merely seeks to discover the facts in Plaintiffs' possession, custody, or control from which the parties can then make legal arguments. *See id.* And NSO has already

---

[1] On August 23, 2024, NSO proposed to revise Topics 10, 11, 14, 15, 21, and 40 to address concerns Plaintiffs raised (letter attached as Exhibit A hereto), but Plaintiffs have not agreed to provide testimony on those revised topics.
[2] A summary list of the disputed Topics at issue in this letter brief and a copy of Plaintiffs' Responses and Objections to the Notice are attached as Exhibit B hereto.

Page 2

amended its proposed 30(b)(6) areas of examination to make that clear. Accordingly, NSO respectfully requests that the Court grant this motion.

> **A. Plaintiffs should be compelled to designate a witness on Areas 3, 10 (rev'd), 11 (rev'd), 14-15 (rev'd), 16, 21 (rev'd), 23, 26, 29, 32, 36, 40 (rev'd), 42 & 45-48.**

**Topics 3, 10, 14 – Personal Jurisdiction**. Plaintiffs have the burden to prove at trial facts supporting this Court's exercise of personal jurisdiction over Defendants. *See Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1194 (9th Cir. 1988). Plaintiffs conducted a non-privileged investigation of the conduct they attribute to NSO as support for their clams, and NSO is entitled to take discovery regarding that investigation to determine if there are additional facts—beyond the two categories that Plaintiffs cite below—that the parties may use to argue for or against personal jurisdiction. Plaintiffs should not be permitted artificially to limit NSO's scope of discovery only to those facts that Plaintiffs find most convenient. Plaintiffs should thus be compelled to produce a witness to testify on Notice Topics 3, 10, and 14 (as revised), which seek testimony concerning Defendants' alleged conduct claimed to support personal jurisdiction.

**Topics 10-11 (as revised), 23, 40 (as revised) – Plaintiffs' core allegations**. Topics 10, 11, 23, and 40 seek testimony directly relevant to elements of Plaintiffs claims for relief. Revised Topic 10 seeks testimony about "Defendants' alleged access of Plaintiffs' computers, computer systems, and computer networks" that is relevant to Plaintiffs' claims under the Computer Fraud and Abuse Act ("CFAA") and the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"). *See, e.g.*, 18 U.S.C. § 1030(a)(2)(1) (requiring proof that "Defendant accessed a computer"); California Penal Code § 502(c)(1) (same). Revised topics 11 ("Defendants' alleged introduction of a computer contaminant into Plaintiffs' computers, computer systems, and computer networks.") and 40 (The alleged "reverse-engineer[ing of] the WhatsApp app" and "emulat[ion of] legitimate WhatsApp network traffic in order to transmit malicious code.") likewise go directly to elements of Plaintiffs' CDAFA claims. *See, e.g.,* California Penal Code § 502(c)(8) (proscribing the introduction of "any computer contaminant into any computer, computer system, or computer network"). Topic 23 ("Defendants' alleged action with malice and oppression and alleged commission of fraud" is relevant to Plaintiffs' request for punitive damages under California Penal Code § 502(e)(4) (requiring "clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice"). These topics seek testimony about facts that are undeniably relevant to core issues and are thus appropriate subjects for discovery. Plaintiffs should be compelled to produce a witness to testify on these topics.

**Topics 26, 29, 32, 36, 42 – Facts relevant to NSO's counterarguments and defenses**. These topics seek testimony about facts relevant to NSO's counterarguments and defenses. Topic 42 (Plaintiffs' enforcement of allegedly breached Terms of Service) is relevant to NSO's waiver

Page 3

defense.[3] Topics 26 (Plaintiffs' compliance with requests from law enforcement/intelligence agencies), 29 (whether WhatsApp's encrypted platform hampers efforts to stop crime, terrorism and child exploitation imagery), 32 (whether Plaintiffs notified sovereign governments whose law enforcement and intelligence gathering efforts may have been compromised by Plaintiffs' notification of suspected Pegasus "victims"), and 36 (Plaintiffs' attempts to acquire Pegasus for their own use), all relate to NSO's unclean hands defense.  Topics 26, 29, and 32 are likewise relevant to NSO's good faith/legitimate law enforcement/national security justification defense. The information sought is also relevant to establishing that Plaintiffs are not entitled to remedies that they seek—including punitive damages and injunctive relief.  Punitive damages generally require proof of malice, fraud, or oppression and are intended to punish "despicable" conduct that consciously disregards the legal rights or safety of others.  Cal. Penal Code § 502(e)(4); Cal. Civ. Code § 3294.  An injunction cannot be issued if it would disserve the public interest.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Here, Plaintiffs would not be entitled to either remedy if the facts demonstrate that NSO provides beneficial lawful-intercept technologies to government agencies whose investigations were stymied by WhatsApp's notification of the targets.  NSO is entitled to depose Plaintiffs concerning facts that are relevant to these defenses and remedies.  Plaintiffs should produce a witness on these Topics.

**Topics 15, 16, 21, 45, 46 – Facts underlying the injuries, losses and damages claimed**. Loss and damage are elements of Plaintiffs' claims.  18 U.S.C. § 1030(a)(5)(C).  They are also necessary to prove Plaintiffs' alleged standing.  *Id.* § 1030(g).  Topics 15, 16, 21, 45 and 46 seek testimony about the *factual bases* for Plaintiffs' claims that they have suffered loss or damage as the result of Defendants' conduct.  Rule 30(b)(6) depositions to explore such facts are frequently ordered.  *See, e.g., Southern Natural Resources, LLC v. Nations Energy Solutions, Inc.*, 2023 WL 3801980, at *4 (S.D. Cal. June 2, 2023) (ordering plaintiff "to produce a 30(b)(6) representative to testify to the topic of "The factual basis for [plaintiff's] calculation of damages"); *Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, 2014 WL 12591805, at *4 (C.D. Cal. May 29, 2014).  More than two weeks after Defendants' sent their portion of this letter, Plaintiffs finally agreed to produce a witness to testify about "the actions Plaintiffs took, and the time Plaintiffs' employees spent, responding to NSO's exploit in May 2019," purportedly in response to topics 15, 16, 45, and 46.  If those are the only facts upon which Plaintiffs will rely to prove loss and damage, then this new agreement to make a designation would be sufficient, but Plaintiffs should not be allowed to engage in sharp practices such as limiting these four topics to the actions Plaintiffs took and the

---

[3] The WhatsApp Terms of Service's inclusion of a boilerplate "no waiver" clause does not shield Plaintiffs from discovery, as such clauses can be waived by conduct.  *See, e.g. Lion Enters., Inc. v. Gerhardt*, 907 F.2d 154 (9th Cir. 1990) (affirming waiver ruling); *Bettelheim v. Hagstrom Food Stores, Inc.*, 113 Cal. App. 2d 873, 878, 249 P.2d 301, 305 (1952).  Further, *Mahoney v. Depuy Orthopaedics, Inc.* provides Plaintiffs no help.  There, the court was unpersuaded that defendant's election not to insist on the application of a permissive forum selection clause in a single unrelated action rendered defendant's effort to enforce the forum provision in the action at bar improperly "selective." *Mahoney*, 2007 WL 3341389, at *9 (E.D. Cal. Nov. 8, 2007).  That ruling does not make discovery about Plaintiffs' enforcement of WhatsApp's Terms of Service (or absence thereof) irrelevant to NSO's waiver defense.

time they spent responding to NSO's exploit in May 2019, while keeping open the possibility of introducing other evidence and argument to support their claims of loss and damage.

**Topics 47 & 48 – Plaintiffs' discovery responses**. "It is a regular and common practice to follow up on written discovery responses at deposition." *Corker v. Costco Wholesale Corp.*, 2021 WL 84471, at *2 (W.D. Wash. Jan. 11, 2021) (ordering 30(b)(6) testimony about responses to 11 interrogatories and 40 requests for production). Plaintiffs should provide a witness on Topics 47 and 48, which seek testimony about Plaintiffs' responses to NSO's interrogatories 1-5 and requests for admission 89-100, 104, 108, 112, 116, 120, 124, 128, 132, 136, 140, 145-47, 149-55, 157-71, 173-75, and 179-80.

### B. Plaintiffs' "Narrowing" of Topics 1, 4-9, 13, 17-20, & 24-25 should be overruled.

*Finally*, Plaintiffs seek to limit their testimony in response to Topics 1, 4-9, 13, 17-20, and 24-25 to facts and circumstances either (i) relating to NSO's alleged "unauthorized access to Plaintiffs' computers in April and May 2019" or (ii) existing as of April and May 2019. But there is no basis to impose such a limitation. Although Plaintiffs' Complaint fails to identify any alleged unauthorized access of Plaintiffs' computers outside the April to May 2019 time period (and affirmatively pleads that Plaintiffs closed the vulnerability allegedly exploited by May 13, 2019), Plaintiffs nevertheless seek injunctive relief enjoining NSO from accessing Plaintiffs' systems and engaging in other conduct *in the future*. *Compare* Compl. ¶ 44 *with id.* Request for Relief item 2 at p. 14. Where a party seeks injunctive relief aimed at preventing ongoing or future conduct, discovery concerning whether the conduct sought to be enjoined *is ongoing* or is threatened in the future is relevant and should be permitted. *See, e.g., Perez v. Blue Mountain Farms*, 2015 WL 11112413, at *2-3 (W.D. Wash. Sept. 28, 2015); *Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *10 (May 2, 2024). To the extent that Plaintiffs claim knowledge of any alleged "unauthorized access" of Plaintiffs' systems (or attempts at same) beyond those alleged to have occurred between April and May 2019, NSO is entitled to depose Plaintiffs to discover the bases for any such claims.

### II. Plaintiffs' Position

NSO's motion to compel additional Rule 30(b)(6) testimony should be denied because the topics are improper. Plaintiffs designated corporate representatives to testify about the facts for which Plaintiffs are appropriate witnesses, but NSO's remaining topics seek testimony on either Plaintiffs' legal theories or information about Defendants' own activities and are therefore improper. *See, e.g., Google LLC v. Sonos, Inc.*, 2022 WL 16554695 at *3 (N.D. Cal. Oct. 31, 2022). Furthermore, requiring Plaintiffs to prepare a non-lawyer witness to testify as to every fact that may be used to support Plaintiffs' legal theories would be unduly burdensome and disproportional to the needs of the case. *See* Fed. R. Civ. P. 26(c)(1) (permitting order "prescribing a discovery method other than the one selected by the party seeking discovery" to "protect a party or person from . . . undue burden or expense"). Portions of those topics may be appropriate for expert discovery or written contention interrogatories, and some are already addressed in Plaintiffs' expert reports, but they are not proper topics for deposition pursuant to Rule 30(b)(6).

Plaintiffs invited NSO to revise their topics to better address facts they believe are appropriate subjects of Rule 30(b)(6) testimony, but NSO has refused to do so. NSO's motion should be denied.

**Topics 3, 10, 14:** Plaintiffs designated a witness to provide testimony on "NSO's unauthorized access to Plaintiffs' computers in April and May 2019, including the contact of such Spyware with California-based infrastructure including a QuadraNet server in California," and "the general location of WhatsApp signaling servers and relay servers, and whether any California or U.S.-based servers were involved in NSO's unauthorized access to Plaintiffs' computers in April and May 2019." These are the only facts relevant to personal jurisdiction for which Plaintiffs are appropriate fact witnesses, and NSO already questioned their corporate representative on these topics. Whether NSO intentionally targeted those servers, and whether NSO has any other relevant contacts with the United States or California, are matters within NSO's knowledge, custody, or control. Plaintiffs' legal theories about how they might establish personal jurisdiction, including any investigation into NSO's activities in connection with preparing the complaint or responding to NSO's motion to dismiss are not proper Rule 30(b)(6) subjects, *see Sonos,* 2022 WL 16554695, at *3-4, and educating a non-lawyer to testify about all of NSO's forum contacts and Plaintiffs' legal theories about how they satisfy the legal standards for personal jurisdiction would be unduly burdensome.

**Topics 10-11 (as revised), 23, 40 (as revised):** Plaintiffs have designated multiple witnesses to testify about "Plaintiffs' understanding of the operation of the NSO Spyware involved in NSO's unauthorized access to Plaintiffs' computers in April and May 2019," as well as other changes in WhatsApp's code that Plaintiffs believe impacted Defendants' conduct, and produced an expert report about this. NSO has already deposed multiple witnesses about these facts. But the full functionality of that Spyware, how it operated on Plaintiffs' computers, how long it was doing so, how NSO developed it, and whether it did so through reverse-engineering, are matters within NSO's knowledge, possession, custody, or control. This is evidenced by NSO deponents, including their CEO and VP of R&D who testified that NSO reverse-engineered WhatsApp; that NSO installed Pegasus by exploiting WhatsApp; and about NSO's process of developing the malware, among other inculpatory things. NSO nonetheless demands more testimony focused on legal standards of Plaintiffs' claims. For example, NSO demands additional testimony on Topic 23, concerning "Defendants' alleged action with malice and oppression and alleged commission of fraud." How Plaintiffs intend to use the facts to argue specific elements of their claims is not an appropriate topic for Rule 30(b)(6) testimony, and it would be unduly burdensome to prepare a witness to do so. *See Sonos,* 2022 WL 16554695, at *3-4 ("Plaintiff is asking for testimony that forms the basis of defendant's 'belief' regarding infringement and fair use. The facts that form those 'beliefs' are legal conclusions and an improper topic for a Rule 30(b)(6) deposition. . . . Even if the topic could somehow be read as seeking the factual bases for Sonos's 'understanding' . . . it would still be an improper attempt to discover legal conclusions and/or protected information.").

Page 6

**Topics 26, 29, 32:** Topics 26 ("WhatsApp's policies and practices in 2018-present in complying with requests of law enforcement and/or intelligence agencies"), 29 ("Plaintiffs' efforts from 2018-present to address whether WhatsApp's encrypted platform hampers efforts to stop crime, terrorism and child exploitation imagery"), and 32 ("Plaintiffs' decision to notify or not notify governments about Plaintiffs' decision to notify Target Users about their mobile devices possibly being the subject of an attempt to install Pegasus") are not relevant to Plaintiffs' claims or any defense that is not facially illegitimate. Unclean hands requires an "immediate and necessary relation to the equity that [plaintiff] seeks in respect of the matter in litigation," *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016), and NSO has never provided support for their position that any of Plaintiffs' alleged actions, including any conduct covered by Topics 26, 29, and 32, relate to, let alone excuse, NSO's unauthorized access to Plaintiffs' computers. Nor do these Topics relate to whether NSO can prove its attacks were part of a "lawfully authorized investigative, protective, or intelligence activity of a [U.S.] law enforcement agency." 18 U.S.C. § 1030(f).

**Topic 36:** Plaintiffs have already designated a witness on their "efforts to obtain a copy of Pegasus in connection with investigating and remediating" Defendants' exploit. NSO fails to explain what other "efforts by Plaintiffs to attempt to acquire Pegasus or a license to use Pegasus or to obtain Pegasus code 'in the wild'" are relevant to the claims or defenses in this case, or excuse NSO from liability under any purported "unclean hands" defense.

**Topic 42:** Testimony about ***all*** of "Plaintiffs' enforcement[s] of any of the specific provisions of WhatsApp's Terms of Service" has no bearing on NSO's alleged waiver defense. *See, e.g.*, *Mahoney v. Depuy Orthopaedics, Inc.*, 2007 WL 3341389, at *9 (E.D. Cal. Nov. 8, 2007) ("[T]he events of a completely unrelated case are irrelevant to DePuy exercising the contractual rights it has with Mahoney in this case."). That is especially true here, because WhatsApp's Terms of Service contain a non-waiver provision. Dkt. No. 55-4 at 5. NSO has never cited any relevant contrary authority. Preparing a witness about Plaintiffs' enforcement decisions concerning its millions, if not billions, of users is disproportionate to the needs of the case.

**Topics 15, 16, 45, 46:** Plaintiffs have designated a witness to provide testimony regarding how they responded to Defendants' exploit, and the time spent by their employees in doing so. Otherwise, these topics, either seek Plaintiffs' legal theories concerning what facts satisfy the elements of "loss" (Topic 15) or "damage" (Topic 16) within the meaning of the CFAA and CDAFA, or seek expert discovery regarding Plaintiffs' calculation of damages now set forth in their expert report (Topics 45 and 46), which include disgorgement of ill-gotten gains that depends on information in NSO's possession. Plaintiffs have invited NSO to revise its topics to describe any other facts, not legal theories or expert discovery, that it seeks, but NSO has refused to do so.

**Topic 21:** Plaintiffs will provide testimony as to code changes, including those in 2018 and 2019 that Plaintiffs believe impacted Defendants' conduct, but the total "number of changes

Page 7

to WhatsApp code caused by discovery of Vulnerabilities[4] implemented by WhatsApp per year from 2018-present" is not relevant to any claim or defense in this case, including to damages. NSO does not argue otherwise. Preparing a witness on every change to WhatsApp's code over six years is unduly burdensome and not proportional to the needs of the case.

**Topics 47 and 48:** Testimony about Plaintiffs' responses to NSO's contention interrogatories (Topic 47) are improper topics for Rule 30(b)(6) testimony, for the reasons explained above.[5] As to Topic 48, NSO's demand for testimony on 52 RFAs fails to describe with reasonable particularity the topics on which any corporate representative must be prepared to testify. Nor has NSO met its burden to show that testimony on all these RFAs is proportional to the needs of the case. For example, Plaintiffs have admitted some of these RFAs, in whole or in part; NSO fails to explain why it needs additional testimony on admitted facts. In other cases, Plaintiffs objected to the RFAs on various grounds, or denied the RFAs for reasons addressed by the Rule 30(b)(6) testimony Plaintiffs have already agreed to provide.[6] Plaintiffs invited NSO to more particularly identify the discovery responses or facts on which it seeks testimony, but NSO has refused.

**Scope of Plaintiffs' Designations:** As noted above, Plaintiffs agreed to provide testimony regarding their "understanding of the operation of the NSO Spyware involved in NSO's unauthorized access to Plaintiffs' computers in April and May 2019," when it filed the Complaint. Plaintiffs have also designated a witness on security updates in 2018 and 2019 that block NSO's exploit. Despite NSO admitting that it was using WhatsApp to exploit mobile devices between 2018 and at least May 2020, only Defendants know the full extent of their unlawful conduct.[7] To the extent Plaintiffs gained any additional understanding about NSO's activities based on information received after filing the Complaint, Plaintiffs are not percipient witnesses with respect to such information, and their understanding is based on NSO's admissions. Instead, Plaintiffs have produced documents sufficient to identify any activity observed by Plaintiffs that it now understands may be relevant or attributable to NSO's conduct, provided testimony about what Plaintiffs observed, and have disclosed their expert's opinions on what the discovery record reveals about NSO's conduct. Accordingly, NSO's request should be denied.

---

[4] NSO has defined "Vulnerability" as "an error, flaw or mistake in computer software or code that permits or causes an unintended behavior to occur," without any limitation to issues in this case.

[5] Many of these contention interrogatories prematurely sought expert discovery. Plaintiffs intend to amend and supplement their responses by the close of discovery.

[6] For example, Plaintiffs denied RFA No. 91, which asked Plaintiffs to admit that "Plaintiffs alone decide where Plaintiffs' servers are located," and Plaintiffs' corporate representative explained during his deposition that Plaintiffs' lease some of their relay servers.

[7] NSO has admitted using Plaintiffs' computers for their products as early as mid-2018 and into May 2020, but its witnesses have refused to answer questions about their use before or after those time periods, including whether they continue to use Plaintiffs' computers today.

Sincerely,

Joseph N. Akrotirianakis, Counsel for Defendants

Craig Cagney, Counsel for Plaintiffs