# KING & SPALDING

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, California 90071 USA

September 20, 2024

The Honorable Phyllis J. Hamilton, Senior U.S. District Judge
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 3
1301 Clay Street, Oakland, CA 94612

Re:     Discovery Matter in *WhatsApp, Inc. et al. v. NSO Group Techs., Ltd. et al.*, 4:19-cv-7123

Dear Judge Hamilton:

Pursuant to the Court's Standing Order, the Parties hereby submit this joint letter brief regarding a dispute requiring the Court's assistance.  The parties met and conferred as to this issue on September 13, 2024, but are at an impasse.

## I.     NSO's Position

Plaintiffs' misrepresentations to the Court recently led it to reconsider part of its August 27, 2024 discovery order (denying NSO's motion to compel a privilege log).  Unfortunately, recent events have revealed another basis for the Court to reconsider a separate holding in that same order.

It is undisputed that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  While Plaintiffs claimed to the court last month that ██████████████████████████ were "irrelevant" to any issue in the case, Plaintiffs' expert reports and recent discovery responses revealed that Plaintiffs and their experts are relying not only on ████████████████████████████████████████, but also on ████████████████████████████████████████████████.  In light of this, the Court should reconsider its prior order and compel Plaintiffs to produce to Defendants ████████████████████████████████████████████████████.

NSO previously sought to compel the production of the plaintiffs' communications with law enforcement and all other documents exchanged between the plaintiffs, their counsel, and law

---

[1] File path metadata associated with documents Plaintiffs received from DOJ and recently produced references a "feb_2023_release." This suggests that DOJ sent Plaintiffs files during or after February 2023, making the lack of notice of a subpoena even more perplexing.

enforcement.  In its August 27, 2024 discovery order, the Court denied NSO's motion to compel Plaintiffs to produce their communications with law enforcement agencies, ████████, that refer or relate to Defendants.  (Dkt. 370 at 3.)  In so ruling, the Court accepted Plaintiffs' representation that "any communications Plaintiffs had with third party law enforcement agencies (prior to filing or after filing) are irrelevant to any claims or defenses in this action." *Id.*  The Court concluded that Plaintiffs' failure to produce the communications could only prejudice Plaintiffs (as opposed to NSO), because any relevant material contained therein would "relate to issues on which plaintiffs bear the burden of proof."  *Id.*

Subsequent developments have shown Plaintiffs' representation to have been inaccurate, warranting reconsideration of the Court's ruling.  Specifically, *on August 30, 2024*—just three days after entry of the August 27 order—Plaintiffs served reports of two experts who intend to offer opinions based upon ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ *See* Exh. 1 [Youssef Rpt.], ¶ 78 ████████

████████████████████████████████████████ (emphasis added); *see also* Exh. 2 [Vance Corrected Rpt.], at 7.  Plaintiffs' Responses and Objections to NSO's Second Set of Interrogatories, served on September 13, 2024, reference and rely upon the same unproduced communications.  *See* Exh. 3 [Pl. R&Os to Second Set of Interrogatories] at 5-6 & 9 ████████

████ ; *id.* at 12 & 14 ████████████████████████

████████████ . Plaintiffs' new reliance on information obtained through ████████

████████ to support proffered expert testimony and Plaintiffs' responses to NSO's Interrogatories is a material difference in the relevant facts that were the basis of the Court's August 27 order, and reconsideration under Civil L.R. 7-9(b)(1) is therefore warranted.  Plaintiffs have also refused to provide deposition discovery about this topic; Defendants' Rule 30(b)(6) notice of deposition of Plaintiffs included topic 33: "Plaintiffs' Communications with the United States Department of Justice or Federal Bureau of Investigation or other law enforcement agencies about Defendants and/or Pegasus."  Plaintiffs objected to this topic and refused to provide a witness, which is one of the subjects of the joint letter brief filed September 17, 2024 (Dkt. 381).

NSO submits that Plaintiffs' and their experts' reliance on double hearsay derived from these un-produced communications is improper in any event, but Plaintiffs certainly should not be permitted to cherry-pick and introduce certain information ████████████████████████

Page 3

███████████████ that they contend favors them, while withholding other relevant (and potentially exculpatory) portions.  *See Stone Brewing Co., LLC v. MillerCoors LLC*, 2019 WL 4450754, at *6 (S.D. Cal. Sept. 17, 2019) (party "cannot cherry pick which documents to produce"). Accordingly, Plaintiffs should produce *all* responsive communications with law enforcement that refer or relate to Defendants.

Defendants disagree that the August 13, 2024 joint letter discloses ███████████ ██████████████████████.  Had Plaintiffs done so, and had they further disclosed that this fact would be *relied upon by their experts, as well as referenced by Plaintiffs in their unverified interrogatory responses*, the Court likely would have ruled that Plaintiffs cannot choose to disclose this ██████████████████ while concealing all others.

Defendants do not understand why Plaintiffs are misrepresenting to the Court that Defendants have not produced in discovery a copy of the AWS server (9311 separate files) as the Court ordered Defendants to do; pursuant to the Court's August 1, 2024 order, Defendants produced this massive amount of information several weeks ago on August 23, 2024 (and well in advance of the 30(b)(6) deposition of Defendants) to Plaintiffs' attorney of record in this action at counsel's office in Israel, the only country where Defendants were permitted to produce the AWS server in accordance with Israeli law and the authorizations the Defendants have from the Israeli Government.  The server image was produced designated "Highly Confidential" but not "Source Code," so Plaintiffs can share this discovery with all persons permitted to view it under the Protective Order once they obtain an export license from the Israeli government.  Plaintiffs' lengthy discussion of whether Defendants' counsel can or cannot verify whether certain files relied on by Plaintiffs' experts originated from the AWS server is totally irrelevant to this motion. Defendants are asking the Court to reconsider its order that Plaintiffs need not produce ████ ███████████████████ now that Plaintiffs and their experts have expressly relied on one such communication (following Plaintiffs' representation to the Court that such communications were irrelevant to any issue in the case).

Finally, Plaintiffs' contention that Defendants have failed to show that ████ ███████████████████ are relevant is facetious; Defendants do not know what these communications contain because Plaintiffs are improperly concealing almost all of them, while cherry-picking others to have their experts rely upon.

## II.    Plaintiffs' Position

NSO's motion for reconsideration is baseless, and should be denied.  NSO identifies no facts that were not already before the Court during the original dispute, and fails to provide any reason for this Court to reconsider its conclusion that Plaintiffs' communications with law enforcement are irrelevant, or at most, "relate to issues on which plaintiffs bear the burden of proof" such that the scope of production will not cause prejudice to defendants.  (Dkt. No. 370 at 3.)

#99047009v13

Contrary to NSO's erroneous contention, Plaintiffs made no misrepresentations but rather fully disclosed to both NSO and the Court their understanding of the origin of the files in the parties' August 13, 2024 joint letter. (Dkt. No. 359-2.) In that letter, Plaintiffs explained that



(Dkt. No. 359-2 at 5 (emphasis added)). Plaintiffs' expert reports and interrogatory responses revealed nothing new. Both merely relied on the very same representations from Plaintiffs' counsel about the source of the files, not any underlying communications with ███████████████████████. *See* Exh. 1 [Youssef Rpt.], ¶ 78

Defendants further disregard that they are fully able to verify for themselves whether the files at issue originate from the AWS server: Defendants have the code from the AWS server in their possession and control, yet have refused, in violation of the Court's order, to produce it in any form in which it can be used in this litigation.

Indeed, Plaintiffs would not need to rely on ████████████████████████████ to NSO if NSO had complied with its own discovery obligations and produced the contents of the AWS server and relevant spyware, including Pegasus, as the Court compelled it to do. (Dkt. No. 358 at 7.) NSO has failed and refused to do so.[2] NSO claims in its portion of the letter (*supra* at 3) that it "produced" the AWS server files to Plaintiffs' counsel in Israel, but Plaintiffs have no

---

[2] Access to ███████████████████████████████ does not resolve the unfair prejudice to Plaintiffs from NSO's failure to produce whatever it has retained from the server, nor from its broader failure to produce the source code showing the full functionality of all Relevant Spyware.

Page 5

way of accessing what was produced or verifying that contention, much less using those supposedly "produced" files in deposition discovery, court filings, or for any other purpose of the litigation.  While these and other deficiencies of NSO's production will be addressed in Plaintiffs' forthcoming motion for sanctions, the Court ordered NSO to produce the AWS Server, as well as the source code showing the full functionality of all its Relevant Spyware, "***despite the existence of foreign legal restrictions***." (Dkt. No. 358 at 6.)  NSO's alleged attempt to produce the AWS Server files ***subject*** to those very same restrictions, in an effort to shift its own legal obligations onto Plaintiffs, is a violation of this Court's order.  Israeli counsel is prohibited by Israeli law from sharing the materials outside of Israel or to anyone who is not an Israeli citizen, including Plaintiffs, their litigation counsel, their experts, and the Court.[3]  NSO's suggestion that Plaintiffs need only obtain their own Israeli export license, *supra* at 3, ignores that the Court granted NSO a six-month extension of discovery for the purpose of giving NSO an opportunity to obtain such a license, which they had claimed to be doing, to manage its own conflicting legal obligations.  Its failure or inability to do so does not excuse its compliance with this Court's orders.

NSO fails to show that the contents of Plaintiffs' counsel's communications with the ███ ████████████████████████ are relevant or proportional to the needs of the case. Nor has NSO attempted to show that any other communication between Plaintiffs and law enforcement is relevant at all.  The request for reconsideration should be denied.

Sincerely,

Aaron Craig, Counsel for Defendants

Craig Cagney, Counsel for Plaintiffs

---

[3] Israeli counsel only entered an appearance in this litigation to be able to review and provide Plaintiffs with advice on the Israeli court orders that NSO designated Highly Confidential-Attorneys Eyes Only, which now appears to have been a deliberate effort by the Israeli government to frustrate discovery in this case after NSO's counsel asked Israel to "'come to the rescue' in the legal battle with WhatsApp."  Harry Davies & Stephanie Kirchgaessner, *Israel Tried to Frustrate US Lawsuit Over Pegasus Spyware, Leak Suggests*, The Guardian (July 25, 2024), https://www.theguardian.com/news/article/2024/jul/25/israel-tried-to-frustrate-us-lawsuit-over-pegasus-spyware-leak-suggests.

# Exhibit 1

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

# Exhibit 2

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

# Exhibit 3

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email:    greg.andres@davispolk.com
              antonio.perez@davispolk.com
              craig.cagney@davispolk.com
              luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC, a Delaware corporation, and META PLATFORMS, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD., <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED & Q CYBER TECHNOLOGIES LIMITED'S SECOND SET OF INTERROGATORIES** |

NSO_WHATSAPP_00046368.  Plaintiffs also refer Defendants to all evidence cited or referenced in Plaintiffs' expert reports.  Plaintiffs may also use the testimony of any witnesses deposed in the case, Plaintiffs' expert witnesses, and/or the witnesses identified in Plaintiffs' Rule 26(a) disclosures to support this contention.  Without limiting the foregoing, Plaintiffs provide the following illustrative examples of evidence supporting this contention, which is not intended to be exhaustive.

Defendants' witnesses have admitted ███████████████████████████████████ ██████████████████████████████████████████████████.  According to Tamir Gazneli, who provided Rule 30(b)(6) testimony on behalf of Defendants on this topic, ████████ ██████████████████████████████████████████████████.  *See* Gazneli Dep. Tr. 84:7–11.  Mr. Gazneli confirmed that ███████████████████████████████████ ██████████████████████████████ *Id.* 84:17–20.  Mr. Gazneli also confirmed that ███████ ███████████████████████████████████████████████ *id.* 82:9 – 83:17, that ███████████████████████████████████ *id.*, and ███████████████████ *Id.* 103:9–14.  Mr. Gazneli confirmed that ███████████ ███████████████████████████████████████████████ *See id.* 83:10–11.

Several WhatsApp messages sent to and from NSO's employees and agents ████████ ██████████████████████████████████████████████ *See, e.g.*, SHANER_WHATSAPP_00001416.  These text messages also contain statements by NSO's employees and agents about ████████████████████ ████████ ██████ ██████████ *See,   e.g.*,   SHANER_WHATSAPP_00001194–SHANER _WHATSAPP_00001196.

███████████████████████████████████████████████ ███████████████████████████████████████████████



1  also record ███████████████████████████████████████████

2  █████████████████████████████ *See, e.g.*, WA-NSO-00017151 ████████

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████

5  ███████████████████████████████

6  Plaintiffs observed ████████████████████████████████████

7  █████████████████ *See* WA-NSO-00017211 through WA-NSO-00017581.  Claudiu Gheor-

8  ghe testified that █████████████████████████████████████

9  ████████████████████████████████████████████████████████

10  ██████████████████████████████████████████ Gheorghe Dep. Tr.

11  232:23–233:25.

12  Mr. Gheorghe also recalled learning that █████████████████

13  ████████████████████████████ Specifically, Mr. Gheorghe explained that ████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ██████████████████ Gheorge Dep. Tr. 233:7 – 236:8.

19  The █████████████████████████████ that Defendants have produced ██████

20  ██████████████████ indicate that ██████████████████████████

21  ███████████████████████ For example, NSO-WHATSAPP-00045678 ██████████

22  ████████████████████████████████████████████ *see* Gazneli Dep. Tr. 88:18,

23  and which states that ███████████████████████████████████

24  ████████████████████████████████████████████████████████

25  █████████████████████████████████████████ NSO-WHATSAPP-00045678.

26  Ms. Gil confirmed that ████████████████████████████████████

27  ████████████████████████████████████████████████████████

28  █████████████ *see* Gil Dep. Tr. 108:12–109:1; 111:24–112:1; 183:17–21, ██████████

1    Dep. Tr. 84:7–11.  Mr. Gazneli confirmed that ███████████████████████

2    ████████████████████████████████████████████████████████████████████

3    ████████████  *Id.* 84:17–20.  Mr. Gazneli also confirmed that ██████████

4    ████████████████████████████████████████████████████████████████████

5    *id.* 82:9 – 83:17, that ████████████████████████████████████████████████

6    ██████████████████████  *id.*, and ████████████████████████████████████

7    ███████████████████  *Id.* 103:9–14.  Mr. Gazneli confirmed that ███████

8    ████████████████████████████████████████████████████████████████████

9    ████████████████████████████  *See id.* 83:10–11.

10        Several WhatsApp messages sent to and from NSO's employees and agents ██████

11   ████████████████████████████████████████████████████████████████████

12   ██████████████████  *See, e.g.*, SHANER_WHATSAPP_00001416.  These text messages also

13   contain statements by NSO's employees and agents about ████████████████████

14   ██████  ████  ██████████  *See,   e.g.*,   SHANER_WHATSAPP_00001194–SHANER

15   _WHATSAPP_00001196.

16        ████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18   also record ████████████████████████████████████████████████████████

19   ████████████████████████  *See, e.g.*, WA-NSO-00017151 ██████████████████

20   ████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████

22   ██████████████████████████████.

23        Plaintiffs observed ██████████████████████████████████████████████

24   ████████████████████  *See* WA-NSO-00017211 through WA-NSO-00017581.  Claudiu Gheor-

25   ghe testified that ██████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████  Gheorghe Dep. Tr.

28   232:23–233:25.

9

adverse inferences the Court may grant due to Defendants' failure to produce responsive documents on this topic in response to Plaintiffs' Requests and the Court's orders.

As Claudiu Gheorge testified as Plaintiffs' corporate representative, █████████

████████████████████████████████████████

███████████████████████████ Gheorghe Dep. Tr. 206:8-17. ████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████. *See* WA-NSO-00166473. ████████

████████████████████ are reflected in the document bearing Bates stamp WA-

NSO-00166473. ██████████████████████████

█████████████████████████████████ also record ████

████████████████████████████████ *See, e.g.,* WA-NSO-

00017133 █████████████████████████████████

████████████████████████████████████████

█████████ *see also* WA-NSO-00017131 ████████████ WA-NSO-00017132

██████████ WA-NSO-00017134 ██████ WA-NSO-00017140 ████████

███████ WA-NSO-00017151 ████████

This response is not intended to be exhaustive.  Plaintiffs reserve the right to supplement and/or amend this response to incorporate the testimony of any remaining witnesses and other discovery, and Plaintiffs reserve the right to use any evidence in the record to prove these facts, or any other facts, at trial.

**INTERROGATORY NO. 9:**

Identify the IP Address for each WhatsApp Relay Server and/or WhatsApp Signaling Server located outside of California that (1) You used as part of Your network between April 19, 2018, and May 10, 2020; and (2) You contend Defendants used to send a message, data, code, or any other signal or information to a Target Device or any other device as part of the operation of any Relevant NSO Product, between April 19, 2018, and May 10, 2020.

1

2

3

4 ███████ *See* WA-NSO-00166473. ███████████

5 █████████ are reflected in the document bearing Bates stamp WA-NSO-00166473.

6

7 ██████████████████████████ also record ████████

8 ███████████████ *See, e.g.,* WA-NSO-00017133

9

10 ████ █████ █████ █████ █████ █████

11 ██████ *see also* WA-NSO-00017131 ██████████ WA-NSO-00017132

12 ████████ WA-NSO-00017134 █████ WA-NSO-00017140 ███████

13 ██████ WA-NSO-00017151 ████████.

14     This response is not intended to be exhaustive.  Plaintiffs reserve the right to supplement

15 and/or amend this response to incorporate the testimony of any remaining witnesses and other

16 discovery, and Plaintiffs reserve the right to use any evidence in the record to prove these facts, or

17 any other facts, at trial.

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 4

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**