1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
    Telephone:    (213) 443-4355
5  Facsimile:    (213) 443-4310

6  Attorneys for Defendants
    NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

11

12  WHATSAPP INC., a Delaware corporation,      Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
13  corporation,                                 **DEFENDANTS' NOTICE OF MOTION
                                                  AND MOTION TO DISMISS OR FOR**
14                 Plaintiffs,                    **SUMMARY JUDGMENT FOR LACK OF
                                                  PERSONAL JURISDICTION AND FOR**
15          v.                                    **PARTIAL SUMMARY JUDGMENT;
                                                  POINTS AND AUTHORITIES**
16  NSO GROUP TECHNOLOGIES LIMITED
    and Q CYBER TECHNOLOGIES LIMITED,            *[Filed concurrently with Declarations of Yaron
17                                                Shohat, Terrence McGraw, and Joseph N.
                   Defendants.                    Akrotirianakis and [Proposed] Order]*
18
                                                  Date:  November 1, 2024
19                                                Time:  1:30 p.m.
                                                  Place:  Courtroom 3, Ronald V. Dellums
20                                                        Federal Building & U.S. Courthouse,
                                                        1301 Clay Street, Oakland, California
21

22                                                Action Filed: 10/29/2019

23

24

25

26      **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

27

28

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION ........................................................................................................... 1

POINTS AND AUTHORITIES ............................................................................................. 1

BACKGROUND ..................................................................................................................... 3

ARGUMENT ........................................................................................................................... 7

I.  Plaintiffs cannot prove that NSO is subject to personal jurisdiction in California. ............................................................................................................ 8

A.  NSO did not purposefully direct any case-related conduct toward California. ............................................................................................. 9

B.  NSO is not subject to nationwide jurisdiction under Rule 4(k)(2). ............. 17

II.  NSO is entitled to summary judgment on all claims based on the operational use of Pegasus by NSO's government customers. ............................. 18

A.  Plaintiffs have no evidence NSO ever unlawfully used Pegasus. ................ 18

B.  The act of state doctrine bars Plaintiffs' claims based on the operational use of Pegasus by NSO's government customers. ..................... 19

III.  NSO is entitled to summary judgment on Plaintiffs' CFAA claim. ..................... 20

A.  Plaintiffs cannot pursue a "without authorization" claim or a claim based on WhatsApp's terms of service. ............................................... 21

B.  Plaintiffs cannot pursue an "exceeds authorized access" claim. ................. 22

C.  CFAA's law-enforcement exception shields NSO's R&D after December 2018. ............................................................................................. 23

IV.  NSO is entitled to summary judgment on Plaintiffs' CDAFA claim because Plaintiffs cannot prove NSO knowingly took any action in California. ................................................................................................................ 24

CONCLUSION ..................................................................................................................... 25

i

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*42 Ventures, LLC v. Mav,*
   2021 WL 5985018 (9th Cir. Dec. 16, 2021) ........................................................ 12

6

*Abu v. Dickson,*
   107 F.4th 508 (6th Cir. 2024) ............................................................................ 23

7

8

*AdvanFort Co. v. Cartner,*
   2015 WL 12516240 (E.D. Va. Oct. 30, 2015) ..................................................... 19

9

*Aldrich v. NCAA,*
   484 F. Supp. 3d 779 (N.D. Cal. 2020) ................................................................ 15

10

11

*Alhathloul v. DarkMatter Grp.,*
   2023 WL 2537761 (D. Or. Mar. 16, 2023) .................................................. 13, 17

12

13

*Allergan, Inc. v. Athena Cosmetics,*
   738 F.3d 1350 (Fed. Cir. 2013)........................................................................... 25

14

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,*
   94 F.3d 586 (9th Cir. 1996)................................................................................. 14

15

16

*Apple Inc. v. Allan & Assocs. Ltd.,*
   445 F. Supp. 3d 42 (N.D. Cal. 2020) ............................................................ 15, 16

17

18

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
   874 F.3d 1064 (9th Cir. 2017)............................................................................... 9

19

*Bagdasaryan v. City of L.A.,*
   2018 WL 6113104 (C.D. Cal. Oct. 22, 2018) ..................................................... 21

20

21

*Berardinelli v. Castle & Cooke Inc.,*
   587 F.2d 37 (9th Cir. 1978).................................................................................... 1

22

23

*Bluestar Genomics v. Song,*
   2023 WL 4843994 (N.D. Cal. May 25, 2023) ..................................................... 16

24

*Broidy Cap. Mgmt., LLC v. Qatar,*
   2018 WL 9943551 (C.D. Cal. Aug. 22, 2018)..................................................... 11

25

26

*Broidy Cap. Mgmt., LLC v. Qatar,*
   982 F.3d 582 (9th Cir. 2020)......................................................................... 19, 20

27

28

ii

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*,
   334 F.3d 390 (4th Cir. 2003) ............................................................................ 13, 14

*Cargnani v. Pewag Austria G.m.b.H.*,
   2007 WL 415992 (E.D. Cal. Feb. 5, 2007) ............................................................ 17

*Chronic Tacos Enters., Inc. v. Chronic Tacos Huntington Beach, Inc.*,
   2011 WL 6010265 (C.D. Cal. Nov. 28, 2011) ....................................................... 21

*Churchill Vill., LLC v. Gen. Elec. Co.*,
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ................................................................ 24

*City of L.A. v. Bank of Am. Corp.*,
   2015 WL 4880511 (C.D. Cal. May 11, 2015) ....................................................... 21

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. Mar. 14, 2016) ................................................... 15

*CrossFit, Inc. v. Fitness Trade sp. z o.o.*, 2020 WL 6449155,
   (S.D. Cal. Nov. 2, 2020). ............................................................................. 13, 17

*CZ Servs., Inc. v. Anthem Ins. Cos.*,
   2022 WL 4126281 (N.D. Cal. Sept. 9, 2022) ....................................................... 16

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................................. 8

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ......................................................................... 1, 8

*Doe v. Yardi Sys. Inc.*,
   2024 WL 1601787 (C.D. Cal. Mar. 27, 2024) ..................................................... 13

*Du Daobin v. Cisco Sys.*,
   2 F. Supp. 3d 717 (D. Md. 2014) ....................................................................... 20

*In re Dynamic Access Memory*,
   2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) ....................................................... 16

*English v. Gen. Dynamics Mission Sys.*,
   2019 WL 2619658 (C.D. Cal. May 8, 2019) ....................................................... 25

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) ......................................................................... 22

*Freeman v. 3Commas Techs. OU*,
   2024 WL 1880147 (N.D. Cal. Mar. 25, 2024) ............................................... 12, 13

*GeoSolutions B.V. v. Sina.com Online*,
   700 F. Supp. 3d 821 (N.D. Cal. Oct. 27, 2023) ........................................... 13, 15

iii

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) ................................................................................... 18

*Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*,
  458 F. Supp. 3d 1202 (N.D. Cal. 2020) ................................................................... 18

*GreatFence.com, Inc. v. Bailey*,
  726 F. App'x 260 (5th Cir. 2018) ............................................................................. 11

*Guar. Rate, Inc. v. Conn*,
  264 F. Supp. 3d 909 (N.D. Ill. 2017) ....................................................................... 11

*Haisten v. Grass Valley Med. Reimb. Fund, Ltd.*,
  784 F.2d 1392 (9th Cir. 1986)..................................................................................... 8

*Hasson v. FullStory, Inc.*,
  114 F.4th 181 (3d Cir. 2024).............................................................................. 11, 16

*Holland Am. Line Inc. v. Wartsila N.A., Inc.*,
  485 F.3d 450 (9th Cir. 2007)............................................................................... 17, 18

*Hungerstation LLC v. Fast Choice LLC*,
  2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ................................................ 12, 14, 17

*Hungerstation LLC v. Fast Choice LLC*,
  857 F. App'x 349 (9th Cir. 2021) ........................................................ 9, 11, 13, 17

*IAM v. OPEC*,
  649 F.2d 1354 (9th Cir. 1981)....................................................................... 2, 19, 20

*Karp v. Buchem*,
  2018 WL 4944995 (C.D. Cal. Mar. 23, 2018) ......................................................... 11

*Kazakhstan v. Ketebaev*,
  2017 WL 6539897 (N.D. Cal. Dec. 21, 2017) ......................................................... 13

*Kiwijet, LLC v. Mena Technics Co.*,
  2022 WL 20401312 (C.D. Cal. Dec. 16, 2022) ......................................................... 1

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
  2015 WL 4755335 (N.D. Cal. Aug. 11, 2015)......................................................... 15

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009)................................................................................... 21

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*,
  2013 WL 12072526 (S.D. Cal. June 26, 2013)................................................... 24, 25

*Man-D-Tec, Inc. v. Nylube Prods. Co.*,
  2012 WL 1831521 (D. Ariz. May 18, 2012) ........................................................... 13

iv

*Michael Grecco Prods. Inc. v. ImageSelect B.V.*,
  2024 WL 1640911 (C.D. Cal. Mar. 11, 2024) ................................................................ 18

*MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*,
  2024 WL 3408221 (N.D. Cal. July 12, 2024) ................................................................ 15

*Naicom Corp. v. Dish Network Corp.*,
  2024 WL 1363462 (D.P.R. Mar. 29, 2024) .................................................................... 24

*Natkin v. Am. Osteopathic Ass'n*,
  2024 WL 3510926 (D. Or. July 23, 2024) ..................................................................... 21

*Nowak v. Xapo, Inc.*,
  2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ........................................................ 24, 25

*Oman v. Delta Air Lines, Inc.*,
  889 F.3d 1075 (9th Cir. 2018) .............................................................................. 24, 25

*In re Philippine Nat'l Bank*,
  397 F.3d 768 (9th Cir. 2005) ................................................................................. 19, 20

*Phillips Petrol. Co. v. Shutts*,
  472 U.S. 797 (1985) ...................................................................................................... 24

*Platinum Performance, Inc. v. Pro Dev., GmbH*,
  2009 WL 10676261 (C.D. Cal. Jun 3, 2009) ................................................................ 18

*Prevail Legal, Inc. v. Gordon*,
  2021 WL 1947578 (N.D. Cal. May 14, 2021) ............................................................... 13

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) .............................................................................. 15, 16

*Rosen v. Terapeak, Inc.*,
  2015 WL 12724071 (C.D. Cal. Apr. 28, 2015) ............................................................. 13

*Ross v. Abbott Vascular Inc.*,
  2022 WL 20275185 (N.D. Cal. Mar. 3, 2022) ........................................................ 13, 17

*Sajfr v. BBG Comms., Inc.*,
  2012 WL 398991 (S.D. Cal. Jan. 10, 2012) .................................................................. 25

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .......................................................................................... 8

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.*,
  899 F.3d 1064 (9th Cir. 2018) ...................................................................................... 19

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
  277 F. Supp. 3d 521 (S.D.N.Y. 2017) ........................................................................... 13

v

*St Andrews Links Ltd. v. Source & Design Int'l (UK) LTD,*
2022 WL 11902199 (N.D. Cal. Oct. 20, 2022) ....................................................... 18

*Stoliarov v. Marshmello Creative, LLC,*
2021 WL 1781870 (C.D. Cal. Apr. 7, 2021) ........................................................ 1, 8

*Sullivan v. Oracle Corp.,*
51 Cal. 4th 1191 (2011) ...................................................................................... 24

*Tangle, Inc. v. Buffalo Games, LLC,*
2023 WL 5672178 (N.D. Cal. Sept. 1, 2023) ...................................................... 16

*Terpin v. AT&T Mobility, LLC,*
399 F. Supp. 3d 1035 (C.D. Cal. 2019) ......................................................... 24, 25

*Travelers Prop. Cas. Co. of Am. v. Apex Shipping Co. (NYC),*
2020 WL 5608476 (N.D. Cal. Aug. 31, 2020) .................................................... 18

*United States v. Nosal,*
676 F.3d 854 (9th Cir. 2012) (en banc).......................................................... 22, 23

*Van Buren v. United States,*
593 U.S. 374 (2021) ........................................................................................ 22, 23

*Vista v. USPlabs, LLC,*
2014 WL 5507648 (N.D. Cal. Oct. 30, 2014) ...................................................... 8

*Walden v. Fiore,*
571 U.S. 277 (2014) .................................................................................... 2, 9, 11

*Williams v. Yamaha Motor Co.,*
851 F.3d 1015 (9th Cir. 2017)............................................................. 14, 15, 16, 17

*X Corp. v. Ctr. for Countering Digital Hate Ltd.,*
2024 WL 1245993 ...................................................................................... 11, 17

*Yamashita v. LG Chem, Ltd.,*
62 F.4th 496 (9th Cir. 2023) ......................................................................... 16, 17

*Zarif v. Hwareh.com, Inc.,*
2024 WL 1268167 (S.D. Cal. Mar. 25, 2024) ............................................... 13, 14

**Statutes**

18 U.S.C. § 1030(a) .......................................................................................... 21

18 U.S.C. § 1030(a)(2)........................................................................................ 8

18 U.S.C. § 1030(e)(6)............................................................................. 2, 20, 22

18 U.S.C. § 1030(f) ................................................................................................... *passim*

Cal. Penal Code § 502(c) ................................................................................................. 25

**Other Authorities**

Fed. R. Civ. P. 4(k)(2) ............................................................................................. 17, 18

Fed. R. Civ. P. 12(b)(2) ..................................................................................................... 1

Fed. R. Civ. P. 56 .............................................................................................................. 1

**PLEASE TAKE NOTICE** that on November 1, 2024, at 1:30 p.m., Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. (collectively "NSO") will bring on for hearing before the Honorable Phyllis J. Hamilton, United States District Judge, in the United States Courthouse, 1301 Clay Street, Courtroom 3, Oakland, California, a motion to dismiss or for summary judgment for lack of personal jurisdiction and for partial summary judgment. The motion is based on the following Points and Authorities; the Declarations of Yaron Shohat, Terrence McGraw, and Joseph N. Akrotirianakis (and the exhibits to those Declarations); the pleadings, papers, and records on file in this case; and such oral argument as may be presented.

*First*, NSO moves to dismiss under Rule 12(b)(2), or for summary judgment under Rule 56, because the Court lacks personal jurisdiction over NSO. Courts have treated such motions both as motions for summary judgment, *Stoliarov v. Marshmello Creative, LLC*, 2021 WL 1781870 (C.D. Cal. Apr. 7, 2021), and as motions to dismiss, *Kiwijet, LLC v. Mena Technics Co.*, 2022 WL 20401312 (C.D. Cal. Dec. 16, 2022).[1] However the Court characterizes this motion, it should "make any necessary factual findings and decide the jurisdictional issue" as a matter of law. *Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 39 (9th Cir. 1978). **Second**, NSO moves for partial summary judgment under Rule 56 on: (1) all of Plaintiffs' claims based on the *use* of Pegasus; (2) Plaintiffs' Computer Fraud and Abuse Act ("CFAA") claim; and (3) Plaintiffs' California Comprehensive Computer Data Access and Fraud Act ("CDAFA") claim.

## POINTS AND AUTHORITIES

Plaintiffs' claims challenge actions Israeli corporations took in Israel to design a technology licensed to foreign governments to use to investigate foreign crimes. The only connection this case has to California (or even the United States) is that Plaintiffs, like nearly every other large tech company, placed their headquarters in the Bay Area. For that reason, California has never had any basis to exercise personal jurisdiction over NSO. To argue otherwise, Plaintiffs told this Court that NSO's "Pegasus" technology "*sought out specific* [WhatsApp] servers—including servers *in California*—in order to transmit malicious code through those servers." (Dkt. 111 at 22 (emphases

---

[1] When a defendant moves to dismiss pre-trial for lack of personal jurisdiction, "the mode of [the motion's] determination is left to the trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

1    added).) The Court denied NSO's motion to dismiss and allowed this action to proceed on the basis

2    of that assertion. But that assertion was false. And instead of correcting it, Plaintiffs have engaged

3    in an abusive fishing expedition—plumbing NSO's most sensitive documents for something,

4    *anything*, that could tie NSO to California. They found nothing.

5          So now, after more than four and a half years, the record proves what Plaintiffs must have

6    known all along: ████████████████████████████████████████████████████

7    ██████████. Almost none of WhatsApp's servers ███████████████. And wherever they

8    were, ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████ which cannot support

12   jurisdiction over NSO. *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Plaintiffs cannot identify any

13   other proper basis for personal jurisdiction over NSO. Therefore, the Court should dismiss all of

14   Plaintiffs' claims for lack of personal jurisdiction.

15         NSO is also entitled to partial summary judgment on the merits of most claims. *First*, NSO

16   is entitled to summary judgment on all of Plaintiffs' claims to the extent they rest on the *use* of

17   Pegasus to monitor WhatsApp *users'* devices. NSO *never* ████████████████████████

18   ████████████████████████████████████████████████ Plaintiffs have no

19   evidence otherwise. Moreover, the "act of state" doctrine bars Plaintiffs from "question[ing] the

20   legality" of a foreign government's "sovereign act" of using Pegasus. *IAM v. OPEC*, 649 F.2d

21   1354, 1359 (9th Cir. 1981). *Second*, NSO is entitled to summary judgment on Plaintiffs' claim

22   under the Computer Fraud and Abuse Act ("CFAA"). This Court already held that Plaintiffs cannot

23   pursue a claim under CFAA's "without authorization" prong (Dkt. 111 at 37), and there is no basis

24   for Plaintiffs to revive that claim now. Nor can Plaintiffs pursue a claim under CFAA's "exceeds

25   authorized access" prong, because NSO ████████████████████████████████████

26   ████████████████████████████████ 18 U.S.C. § 1030(e)(6). And in all events,

27   Plaintiffs cannot challenge any of NSO's research and development ("R&D") for Pegasus after

28   December 2018 because it ██████████████████████████

1    ███████ *Id.* § 1030(f).  ***Third***, NSO is entitled to summary judgment on Plaintiffs' claim under the

2    California Comprehensive Computer Data Access and Fraud Act ("CDAFA").  CDAFA does not

3    apply to conduct outside of California, and Plaintiffs have no evidence that NSO took any actions

4    prohibited by CDAFA within California.

5                                                    <u>**Background**</u>

6          **A.  NSO's business.**  NSO is an Israeli technology company that designs and markets to

7    government agencies a highly regulated technology only for use in investigating crimes and

8    terrorism. (Shohat Decl. ¶¶ 3-4.)  This case involves an NSO product called "Pegasus."  NSO licenses

9    Pegasus exclusively to select government agencies approved by the Government of Israel, never to

10   any private customer.  (Shohat Decl. ¶ 9; Akro. Exh. H at 138:12-15; Akro. Exh. I at 93:13-19.)[2]

11         A Pegasus license includes █████████████████████████████████████████

12   ████████████████████████ (Shohat Exhs. A & B at 9, 14-15.)  Maintaining and updating

13   Pegasus requires continuous R&D.  (Shohat Decl. ¶ 15; Akro. Exh. H at 104:3-13.)  NSO, however,

14   *never operates* Pegasus—only its government customers may do so.  (Shohat Decl. ¶¶ 14-16, Exh.

15   A ¶ 2.4, Exh. B ¶ 2.4; Akro. Exh. H at 234:8-236:10, Exh. I at 316:11-317:2.)  NSO requires its

16   government customers to agree that they will ████████████████████████████

17   ██████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████

20   ██████████████████████████████████████████████████████

21   ████████████████████████████████████ (Shohat Exh. A ¶ 18.5, Exh. B

22   ¶ 19.5.)  NSO can suspend or terminate service to customers that misuse its technology, and it has

23   done so.  (Shohat Decl. ¶ 12; Akro. Exh. H at 21:16-25, 26:23-31:17, 181:10-15.)

24         NSO has no presence or operations in the United States.  (Shohat Decl. ¶ 4; Akro. Exh. H

25   at 87:14-89:1.)  In the past, an independent Delaware company called Westbridge Technologies

---

[2] Israel strictly regulates Pegasus and must approve each request for a license.  (Shohat Decl. ¶¶ 5-7.) Israel requires NSO's government customers to execute end-use certificates on a government-to-government basis, promising to use Pegasus only for the ██████████████████████████████ (Akro. Exh. N; Shohat Decl. ¶ 6.)

1   Inc. marketed NSO's products to potential U.S. government customers.  Westbridge was within the
2   same broad corporate family as NSO and Q Cyber but was not a parent or subsidiary of either
3   entity.   (Shohat Exh. C; Akro. Exh. H at 81:9-14; Akro. Exh. G at 123:5-14.)   NSO's and
4   Westbridge's interactions were governed by a contract that ████████████████████████
5   ████████████████████████████████   (Shohat Exh. D ¶ 12.)  NSO did not control or
6   direct any of Westbridge's marketing efforts.  (Akro. Exh. G at 155:14-20, 287:4-17, 290:2-7, Exh.
7   J at 288:9-293:1, 314:14-315:5, 333:7-12, Exh. H at 140:6-141:6; Shohat Decl. ¶ 20.)  Westbridge
8   had its own operations, employees, executives, offices, bank accounts, and other corporate
9   formalities.  (Akro. Exh. G at 84:20-21, 270:2-271:14, 272:17-275:14, Exh. J at 32:6-33:21, 273:6-
10  277:19; Shohat Decl. ¶ 20.)  NSO was not Westbridge's ████████████lier (Shohat Exh. D ¶ 2.1),
11  and Westbridge also ████████████████████████████████████████████████████████
12  ████   (Shohat Exh. E at 8; Akro. Exh. G at 158:16-159:10, 242:15-243:8.)
13          Westbridge's marketing efforts for Pegasus were largely unsuccessful.  (Akro. Exh. G at
14  177:2-13; Akro. Exh. J at 64:22-25.) ████████████████████████████████████████████
15  ████████████████████████████   (Akro. Exh. J at 211:4-10, 318:22-319:5.)
16  Westbridge alone made the decision to market ████████████, with no input from NSO.  (Akro.
17  Exh. J at 288:9-290:24, 315:2-5.)  No ████████████████████████████ (Akro. Exh. G at
18  236:16-22.)  Westbridge did ████████████████████████████████████████ (Akro.
19  Exh. G at 264:7-18, Exh. O.)  The ████████████████████████████████████████████
20  ████████████████████████████   (Akro. Exh. N, Exh. G at 332:3-333:21.)
21          **B.  NSO's Pegasus technology.**  Pegasus includes ████████████████████████
22  ████████████████████████████████████████████████████████████████████████████
23  ████████████████████████████████████   (McGraw Decl. ¶¶ 38, 45; Akro. Exh. I at
24  30:7-23, 42:23-43:5.)  The Pegasus "agent" ████████████████████████████████████████
25  ████████████████████████████   (Shohat Decl. ¶ 13; Akro. Exh. I at 316:3-7, 327:11-328:14.)
26      ████████████████████████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████████████████████
28

4

1                        (Akro. Exh. I at 67:15-24.)[3]

2

3

4              (McGraw Decl. ¶¶ 30-39.)  As Plaintiffs admitted,

5

6  (Akro. Exh. P at 4.)

7              (McGraw Decl. ¶¶ 80-85; Akro. Exh. L at 183:1-184:7.)   Nor had NSO

8                   (Akro. Exh. K at 200:25-201:10.)

9

10              (McGraw Decl. ¶ 74).

11

12

13          (*Id.* ¶¶ 20-28, 41-54.)

14                    (*Id.*)

15     ***Signaling Servers.*** WhatsApp signaling servers

16           (McGraw Decl. ¶ 20.)  In 2019, all of WhatsApp's signaling

17 servers were              (Akro. Exh. L at 184:21-185:9.)

18

19                   (Akro.

20 Exh. L at 86:1-19.)  At that point,

21       (McGraw Decl. ¶ 21; Akro. Exh. L at 89:4-90:6, 96:25-98:16, 102:4-104:15,

22 129:15-20.)

23         (*Id.*)

24     ***Relay Servers.*** WhatsApp's relay servers      (McGraw

25 Decl. ¶¶ 14, 26.)  In 2019, WhatsApp's relay servers

26            (Akro. Exh. L at 82:15-17, 132:22-133:10.)

27

28 [3] NSO does not now have any             (Akro. Exh. H at 51:23-52:3.)





1    WhatsApp's █████████████████████████████████████████████

2    ██████ using an algorithm ███████████████████ (Akro. Exh. L at 81:17-82:21.) The signaling

3    server ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████ (Akro. Exh. L at 117:21-121:20; McGraw Decl. ¶¶ 28, 47.)  The signaling server

6    then ██████████████████████████████████████████████████████████

7    ██████ as Plaintiffs' corporate designee testified, ████████████████████████

8    ██████ (Akro. Exh. L at 118:19-119:25; McGraw Decl. ¶¶ 28, 47.)  The WhatsApp application

9    ████████████████████████████████████████████████████████████

10   ███████████████████████████████████ (Akro. Exh. L at 120:1-121:2, Exh. I at

11   319:7-19;  McGraw Decl. ¶¶ 28, 50.)   Just like ██████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████ (McGraw Decl. ¶¶ 48-54; Akro. Exh. I at 323:9-325:22.)[4]  Thus,

14   it was always ████████████████████████████████████████

15   As designed, ███████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ██████████ (McGraw  Decl.  ¶¶ 65-79.) █████████████████████

18   ████████████████████████████████████████████ (*Id.* ¶¶ 34, 37, 39, 69;

19   Akro. Exh. K at 200:25-201:10, 202:10-18.)  Nor did Pegasus █████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████ (McGraw  Decl.  ¶¶ 65-79.)   Pegasus ██████████████

22   ████████████████████████████ (*id.* ¶¶ 39, 65-79), and thus █████████████

23   ████████████████████████████████████████████████ (Akro. Exh. L at

24   129:15-130:23.  The only difference between ████████████████████████

25   ████████████████████████████████████████████████████████ Plaintiffs

26   may not have liked ████████████████████████████████████████

27   ███████████████████ (McGraw Decl. ¶ 67.)

28   ───────────────────
     [4] ███████████████████████████████████████████. (McGraw Decl. ¶ 45; Akro. Exh. I at 258:17-260:2.)

**C. The Court's motion to dismiss order.**  Plaintiffs filed their complaint in October 2019. NSO moved to dismiss on multiple grounds, including that it is not subject to personal jurisdiction in California and that Plaintiffs did not plead a CFAA violation.  In opposing NSO's personal jurisdiction argument, Plaintiffs argued (among other things) that NSO (1) targeted California by using third-party servers located there and (2) deliberately "sought out specific [WhatsApp signaling and relay] servers . . . in California." (Dkt. 111 at 21-22.)  With respect to third-party servers, Plaintiffs submitted declarations asserting that Pegasus's code "included" the "IP address of a remote server" to which Pegasus "cause[d] a WhatsApp user's mobile device to connect." (Dkt. 55-2 ¶ 3.)  Plaintiffs said this IP address "was located in Los Angeles, California." (Dkt. 55-6 ¶ 2.)

This Court denied NSO's motion in part.  As to personal jurisdiction, the Court held that any use of third-party servers in California could not create personal jurisdiction. (Dkt. 111 at 20-21.)  But the Court found that Plaintiffs had adequately alleged that NSO specifically "*sought out WhatsApp's California-based servers*," which was sufficient to support personal jurisdiction at the pleadings stage. (*Id.* at 24.)  Discovery has proven false Plaintiffs' allegations about WhatsApp's California-based servers.[5]  As to CFAA, the Court held Plaintiffs had *not* stated a claim under CFAA's "without authorization" prong because WhatsApp's TOS "authorized" NSO "to send messages using the WhatsApp app." (*Id.* at 37.)  The Court found that Plaintiffs had adequately pleaded a violation of CFAA's "exceeds authorized access" prong by alleging that NSO "evad[ed] WhatsApp's securities features" to "access a portion" of WhatsApp's servers that NSO "did not have permission to access." (*Id.* at 37-38.)  Discovery has proven that allegation untrue as well.

## Argument

The Court should dismiss Plaintiffs' claims.  Plaintiffs cannot meet their burden of proving NSO is subject to personal jurisdiction in California.  Although this Court held at the motion to dismiss stage that Plaintiffs had adequately *pleaded* jurisdictional facts, the Court's ruling depended

---

[5] It seems clear that Plaintiffs must have known, when they filed their complaint, that none of WhatsApp's signaling servers ███████████████████████████████████████ ████████████████████████████████████████ Plaintiffs' failure to correct the false impression their allegations created is consistent with other of their conduct in this litigation. (*E.g.*, Dkt. 377.)  The Court need not find that Plaintiffs acted deliberately, however; it need only conclude Plaintiffs have not proven the truth of their allegations.

1   on an untrue allegation—that NSO deliberately "sought out specific [WhatsApp] servers" in

2   California (Dkt. 111 at 22).  Plaintiffs then conducted a yearslong fishing expedition that confirmed,

3   contrary to Plaintiffs' allegations, that NSO did not and could not purposefully target any

4   California-based WhatsApp servers.  Because Plaintiffs cannot prove NSO purposefully directed

5   its alleged conduct at California servers, their primary theory of personal jurisdiction collapses.

6   Their backup theories fare no better.  This Court thus lacks personal jurisdiction over NSO.

7           The Court need go no further to adjudicate this case. But if the Court chooses to address

8   issues beyond jurisdiction, it should also grant NSO partial summary judgment on: (1) all claims

9   based on the *use* of Pegasus by NSO's customers, because Plaintiffs cannot attribute that conduct

10  to NSO and the act of state doctrine bars any such claim; (2) Plaintiffs' CFAA claim, because they

11  cannot prove that NSO accessed WhatsApp's servers "without authorization" or in a way that

12  "exceed[ed] authorized access," and NSO's R&D after December 2018 was all "lawfully authorized

13  investigative, protective, or intelligence activity" of the FBI, 18 U.S.C. § 1030(a)(2), (f); and (3)

14  Plaintiffs' CDAFA claim, because they cannot prove NSO targeted any California computer.

15  **I.       Plaintiffs cannot prove that NSO is subject to personal jurisdiction in California.**

16          Plaintiffs "bear the burden" to prove that the Court may exercise personal jurisdiction over

17  NSO at all stages of the case, including "on [a] motion for summary judgment." *Vista v. USPlabs,*

18  *LLC*, 2014 WL 5507648, at *4 (N.D. Cal. Oct. 30, 2014); *see Data Disc, Inc. v. Sys. Tech. Assocs.,*

19  *Inc.*, 557 F.2d 1280, 1289 n.6 (9th Cir. 1977).   Plaintiffs must "prov[e] jurisdiction by a

20  preponderance of the evidence." *Stoliarov, LLC*, 2021 WL 1781870, at *2 n.3; *see Haisten v. Grass*

21  *Valley Med. Reimb. Fund, Ltd.*, 784 F.2d 1392, 1396 n.1 (9th Cir. 1986).  Because Plaintiffs cannot

22  do so, the Court should dismiss their claims.

23          As a matter of federal due process, personal jurisdiction exists only if NSO's contacts with

24  California support either general or specific personal jurisdiction. *Schwarzenegger v. Fred Martin*

25  *Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004).  Plaintiffs have never argued that NSO, an Israeli

26  corporation, is subject to general jurisdiction in California. *Daimler AG v. Bauman*, 571 U.S. 117,

27  137 (2014).  Therefore, Plaintiffs must prove *specific* jurisdiction by proving that NSO "either

28  'purposefully direct[ed] [its] activities' toward the forum or 'purposefully avail[ed] [it]self of the

1   privileges of conducting activities in the forum.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874

2   F.3d 1064, 1068 (9th Cir. 2017).  The "purposeful direction analysis" applies in cases, like this one,

3   based on allegations that a defendant "engaged in tortious conduct from a location outside of the

4   United States by remotely accessing servers located in the United States." *Hungerstation LLC v.*

5   *Fast Choice LLC*, 857 F. App'x 349, 351 (9th Cir. 2021).[6]

6       **A.**    **NSO did not purposefully direct any case-related conduct toward California.**

7       To satisfy the purposeful direction test, also known as the "effects" test, Plaintiffs must

8   prove that NSO "expressly aimed" case-related conduct "at the forum state." *Axiom Foods*, 874

9   F.3d at 1069 (cleaned up).  This analysis focuses on "the defendant's contacts with the forum State

10  itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.  "Due

11  process requires that a defendant be haled into court in a forum State based on his own affiliation

12  with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting

13  with other persons affiliated with the State." *Id.* at 286.  So Plaintiffs may not establish personal

14  jurisdiction simply by claiming that NSO targeted *them*—they must prove that NSO targeted

15  *California*. *Id.*; *Axiom Foods*, 874 F.3d at 1069-70; (Dkt. 111 at 24).  They cannot do so.

16      **1.**    **NSO did not target WhatsApp's California servers.**

17      At the motion to dismiss stage, this Court found Plaintiffs had adequately pleaded specific

18  jurisdiction by alleging that NSO "sought out specific [WhatsApp] servers—including servers in

19  California—in order to transmit malicious code through those servers."  (Dkt. 111 at 22.)  But

20  discovery has exposed that allegation as false.  The undisputed record proves that NSO did not ███

21  ███████ target specific WhatsApp signaling or relay servers anywhere, much less in California.

22      First, NSO could not have targeted WhatsApp signaling servers in California because ███

23  ██████████████████████████████████  At the relevant times, all of WhatsApp's

24  signaling servers were ████████████████  (Akro. Exh. L at 184:21-185:9.)

25      Second, NSO did not purposefully use California relay servers as opposed to servers located

26  anywhere else.  At the relevant times, WhatsApp had ██████████████ of relay servers

27

28  ─────────────────────
[6] This Court previously held Plaintiffs could not establish purposeful availment (Dkt. 111 at 26-27), and Plaintiffs have no evidence supporting a different conclusion now.

1  ████████████████████████████████████████████████████

2  ███████       (Akro. Exh. L at 82:15-17, 134:11-19.)   And   ████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ███████████████████████████████   (Akro. Exh. L at 119:3-121:2.)   █████████

6  ████████████████████████████████████████████████████

7  ████████       (McGraw Decl. ¶¶ 47, 51-52.)   A WhatsApp user   ████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████   (Akro. Exh. L at 82:3-5.)   And once the

10  signaling server   ██████████████████████████████████████████████

11  ████████████████████████████████████████████████████

12  (Akro. Exh. L at 82:3-21, 120:21-122:20; McGraw Decl. ¶¶ 28, 50.)

13  Pegasus   ███████████████       (McGraw Decl. ¶¶ 48-54.)   Because WhatsApp's own

14  signaling servers   ██████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████████████   (*Id*. ¶¶ 50-52.)   And once   █████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████   (*Id*.)   To the contrary, Plaintiffs' own

19  evidence shows that   ██████████████████████████████████████████

20  ████████████████████████████████████   (*Id*.)   That makes perfect sense: NSO's

21  only motivation would be   ████████████████████████████████████

22  (McGraw Decl. ¶¶ 43, 48, 53.)   A server's presence in California could not have made any

23  difference to NSO (Akro. Exh. I at 325:9-22), and Plaintiffs have no evidence suggesting otherwise.

24  These undisputed facts confirm that NSO did *not* "s[eek] out WhatsApp's California-based

25  servers," as Plaintiffs falsely told the Court.  (Dkt. 111 at 24.)  When NSO designed Pegasus, and

26  when NSO's government customers used Pegasus, they did not direct their actions toward any

27  particular WhatsApp server, much less specific servers in California.  Rather, ████████████████

28  ████████████████████████████████████████████████████

DEFENDANTS' MOT. FOR SUMMARY JUDGMENT                          Case No. 4:19-cv-07123-PJH

████████████   In these circumstances, where "there is no . . . evidence that the defendants played any role in selecting the server's location," a "server's location" cannot "establish personal jurisdiction." *GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018).

That is true even when the defendant is accused of accessing the plaintiff's own servers. As long as a defendant, like NSO, has no control over where the plaintiff's servers are located and does not purposefully target specific servers based on their location, the servers' location is due entirely to the plaintiff's own "unilateral activity," *Walden*, 571 U.S. at 286 (cleaned up), and is thus too "'random,' 'fortuitous,' [and] 'attenuated'" to support specific jurisdiction, *Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *7 (C.D. Cal. Aug. 22, 2018); *Karp v. Buchem*, 2018 WL 4944995, at *3 (C.D. Cal. Mar. 23, 2018).[7]

Here too, ███████████████████████████ is purely "fortuitous" and does not show that NSO purposefully directed any conduct toward California. To the extent that ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████  Such "'unilateral activity' of a plaintiff" cannot support specific jurisdiction over NSO in California. *Walden*, 571 U.S. at 286.

**2.    NSO's alleged use of third-party servers cannot support jurisdiction.**

In this Court's motion to dismiss order, the Court rejected Plaintiffs' argument that NSO "expressly aimed [its] conduct at [California]" by allegedly "leas[ing] third-party servers" there. (Dkt. 111 at 20-21.)  Despite that ruling, Plaintiffs appear to continue to argue that NSO targeted California by ████████████████████████████████████████ But the evidence does not support the assertion that NSO used any California-based third-party servers,

---

[7] *See also Hungerstation*, 857 F. App'x at 351 (defendant's access to plaintiff's data on U.S. servers did not support jurisdiction because "the location of the servers was fortuitous"); *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 2024 WL 1245993, at *10 (same, when there "[was] no support for the notion that [defendant] specifically sought out any particular servers within the forum"); *Guar. Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 921-22 (N.D. Ill. 2017) (access to plaintiff's servers inadequate because the "role [the] servers play in [plaintiff's] network is the result of conduct by [plaintiff]"); *cf. Hasson v. FullStory, Inc.*, 114 F.4th 181, 191 (3d Cir. 2024) ("transmitting computer code to a browser that happens to be in [the forum]" is not "sufficient to establish express aiming").

1    and even if it did, "'the mere location of a third party or its servers is insufficient to give rise to

2    personal jurisdiction.'" (Dkt. 111 at 21 (quoting *Hungerstation LLC v. Fast Choice LLC*, 2020 WL

3    137160, at *5 (N.D. Cal. Jan. 13, 2020), *aff'd*, 857 F. App'x 349).)

4          Plaintiffs contend that ███████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████ (Dkt. 55-2;

6    McGraw Decl. ¶ 56.)  Plaintiffs contend that ███████████████ was registered to a company

7    called QuadraNet, which listed its address as being in Los Angeles, California.  (*Id.*)  Plaintiffs

8    infer from QuadraNet's location that the QuadraNet *server* was located in California.

9          As a factual matter, that conclusion does not follow.  The IP address's supposed association

10   with California means only that the server *owner* (QuadraNet) is based in California, not that the

11   physical *server* is in California.  (McGraw Decl. ¶¶ 60-61.)  Cloud providers and web hosts often

12   use *virtual* IP addresses, which do not relate to any specific piece of hardware.[8]  (*Id.*)  Requests to

13   the address can be routed to any one of numerous servers in any number of locations.  (*Id.*)  For

14   example, Google has a single virtual IP address that routes communications to hundreds of servers

15   around the world.  (*Id.*)  WhatsApp ███████████████████████████████████████████

16   █████████████████████████ (*Id.* ¶¶ 21, 42, 52; Akro. Exh. L at 91:25-92:25.)  For that reason,

17   Plaintiffs cannot prove the QuadraNet IP address was associated with an actual server in California.

18   (*See* Akro. Exh. L at 203:22-205:20.)  That alone dooms Plaintiffs' argument.[9]

19         Even if Plaintiffs could prove that one QuadraNet server was in California, this Court already

20   held that would not support specific jurisdiction over NSO.  (Dkt. 111 at 20-21.)  In opposition to

21   NSO's motion to dismiss, Plaintiffs submitted the same evidence on which they now appear to rely.

22   They submitted a declaration that Pegasus "was designed to cause a WhatsApp user's mobile device

23

24   [8] This is also why Plaintiffs initially thought ████████████████████████████████████

25   ████████ (Akro. Exh. W at 3.)  Plaintiffs have subsequently acknowledged that they were mistaken as
     to the AWS server, which was located in Germany.  (Dkt. No. 331 at 1:21-22.)

26   [9] *42 Ventures, LLC v. Mav*, 2021 WL 5985018, at *1 (9th Cir. Dec. 16, 2021) (third-party servers could

27   not support personal jurisdiction when plaintiff "did not allege that the servers were in fact located
     in the United States, as opposed to merely operated by U.S.-based companies"); *Freeman v. 3Commas*

28   *Techs. OU*, 2024 WL 1880147, at *2 (N.D. Cal. Mar. 25, 2024) (same, where it was "not clear whether
     . . . the data server provider is located in California, or the server itself is located in California").

                                             12

to connect to" the QuadraNet IP address (Dkt. 55-2 ¶¶ 3-4), which Plaintiffs claimed "was located in Los Angeles, California" (Dkt. 55-6 ¶ 2).  The Court held that evidence could not support specific jurisdiction because "the connection between defendants and any leased server located in California is fortuitous.  Neither party controlled where the third parties placed their servers and the servers were not the ultimate target of [NSO's alleged] intentional act."  (Dkt. 111 at 21.)

That conclusion remains correct.  Courts agree that personal jurisdiction does not exist "over a private foreign entity solely because that entity engaged in tortious conduct from a location outside of the United States by remotely accessing servers located in the United States." *Hungerstation*, 857 F. App'x at 351.  "Likewise, no authority supports the proposition that the act of using a third-party company's server in the United States to host illegally-obtained information, without more, is sufficient to convey personal jurisdiction." *Id.*  Numerous courts had so held when this Court issued its earlier decision,[10] and that consensus has only grown stronger since.[11]

Those cases govern here because Plaintiffs have no evidence that NSO "made a deliberate decision to locate [any] server in California." *Freeman*, 2024 WL 1880147, at *2.  "There is no [evidence] that [NSO] agreed that [QuadraNet] would host the data in California, or even knew where the data would be hosted." *Id.*  The record reflects only that ███████████████████ ███████████████████████████████████████████████████████. (Akro. Exh. Q.)  There is no evidence that NSO ██████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

---

[10] *E.g., Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.,* 334 F.3d 390, 402 (4th Cir. 2003); *Kazakhstan v. Ketebaev,* 2017 WL 6539897, at *6-7 (N.D. Cal. Dec. 21, 2017); *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 590 (S.D.N.Y. 2017); *Rosen v. Terapeak, Inc.*, 2015 WL 12724071, at *9 (C.D. Cal. Apr. 28, 2015); *Man-D-Tec, Inc. v. Nylube Prods. Co.*, 2012 WL 1831521, at *2 (D. Ariz. May 18, 2012).

[11] *E.g., Doe v. Yardi Sys. Inc.*, 2024 WL 1601787, at *3 (C.D. Cal. Mar. 27, 2024); *Zarif v. Hwareh.com, Inc.*, 2024 WL 1268167, at *5 (S.D. Cal. Mar. 25, 2024); *Alhathloul v. DarkMatter Grp.*, 2023 WL 2537761, at *6-7 (D. Or. Mar. 16, 2023); *GeoSolutions B.V. v. Sina.com Online*, 700 F. Supp. 3d 821, 828-29 (N.D. Cal. Oct. 27, 2023); *Ross v. Abbott Vascular Inc.*, 2022 WL 20275185, at *6 (N.D. Cal. Mar. 3, 2022); *Prevail Legal, Inc. v. Gordon*, 2021 WL 1947578, at *5-6 (N.D. Cal. May 14, 2021); *CrossFit, Inc. v. Fitness Trade sp. z o.o.*, 2020 WL 6449155, at *5-6 (S.D. Cal. Nov. 2, 2020).

1    ██████████████████████████████████████   (Akro. Decl. ¶ 12; Shohat Decl. ¶ 22; McGraw

2    Decl. ¶¶ 57-59.)   Therefore, the presence of a QuadraNet server in California would be entirely

3    "fortuitous."   (Dkt. 111 at 21); *see Zarif*, 2024 WL 1268167, at *5 (defendant did not "target"

4    California by using web host's California servers because web host, "not [d]efendant, chose to

5    locate its servers in California," so the servers' location "was merely 'random' or 'fortuitous'").

6         Furthermore, "the level of contact created by the connection between an out-of-state

7    defendant and a web server located within a forum" is "de minimis."   *Carefirst*, 334 F.3d at 402.

8    NSO never operated any third-party server.   (Akro. Exh. I at 285:7-9.)   Plaintiffs claim only that

9    NSO *leased* them and that NSO's government customers used them "to send malware and other

10   commands to users' devices but not WhatsApp's servers," so the servers were mere waypoints

11   between governmental Pegasus users and foreign targets with no connection to California.   (Dkt.

12   111 at 21.)   Even if Plaintiffs could prove (and they cannot) that Pegasus transferred some data

13   through third-party servers in California, such transient contacts with California would still be too

14   insignificant to establish purposeful direction.   (*Id.*); *Carefirst*, 334 F.3d at 402.   A contrary ruling

15   would create a dangerous precedent, moreover, under which "the Northern District of California

16   always would have jurisdiction in any case where a party hosts its data with a Silicon Valley

17   company."   *Hungerstation*, 2020 WL 137160, at *6.   This District "is not an international court of

18   internet law," and Plaintiffs should not be permitted to treat it like one.   *Id.* (cleaned up).

19              **3.       Westbridge's actions cannot support specific jurisdiction over NSO.**

20        Unable to support specific jurisdiction with NSO's own conduct, Plaintiffs appear to seek

21   to rely on *Westbridge*'s marketing activities in California.   But Westbridge was a distinct entity

22   from NSO, and Plaintiffs have no evidence that could justify attributing Westbridge's conduct to

23   NSO for purposes of personal jurisdiction.

24        To begin, Plaintiffs cannot attribute Westbridge's conduct to NSO unless Westbridge and

25   NSO were alter egos.   *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th

26   Cir. 1996).   Before the Supreme Court's decision in *Daimler*, the Ninth Circuit allowed courts to

27   exercise "general jurisdiction . . . under an agency theory."   *Williams v. Yamaha Motor Co.*, 851

28   F.3d 1015, 1021 (9th Cir. 2017).   But *Daimler* "invalidated [that] 'agency' test," *id.*, a holding that

1    "applies no less in the context of specific jurisdiction," *id.* at 1024.  Accordingly, "the agency test

2    cannot be the basis of this Court's exercise of specific jurisdiction," and Plaintiffs must prove that

3    Westbridge and NSO were alter egos. *MSP Recovery Claims, Series LLC v. Actelion Pharms. US,*

4    *Inc.*, 2024 WL 3408221, at *4 (N.D. Cal. July 12, 2024).[12]  Plaintiffs cannot do so.

5         To prove that two entities are alter egos, a plaintiff must prove "that there is such unity of

6    interest and ownership that the separate personalities of the two entities no longer exist." *Williams*,

7    851 F.3d at 1021.  That requires proof of the parent company's "pervasive control over the subsidiary,

8    such as when a parent corporation *dictates every facet* of the subsidiary's business—from broad

9    policy decisions to routine matters of day-to-day operation." *Ranza v. Nike, Inc.*, 793 F.3d 1059,

10   1073 (9th Cir. 2015) (emphasis added).  Under this test, no reasonable jury could find that NSO

11   and Westbridge were alter egos.  Even "a parent-subsidiary relationship is insufficient, on its own,

12   to justify imputing one entity's contacts with a forum state to another for the purpose of establishing

13   personal jurisdiction," *Ranza*, 793 F.3d at 1070, and ████████████████  They were

14   ████████████████████████████████████████████████████████████

15   ██████████ that "is insufficient to disregard the corporate form." *Apple Inc. v. Allan & Assocs.*

16   *Ltd.*, 445 F. Supp. 3d 42, 53 (N.D. Cal. 2020).[13]  In addition, Plaintiffs cannot prove that NSO and

17   Westbridge "failed to respect corporate formalities." *Id.*  Among other things, Westbridge and

18   NSO ████████████████████████████████████████████████████

19   ████████████████████████████████████ *Apple*, 445 F. Supp. 3d at 53; (*see* Akro.

20   Exh. G at 270:2-271:14, 272:17-275:14, Exh. J at 273:6-277:19; Shohat Decl. ¶ 20).  "This

21   evidence establishes that [NSO and Westbridge] are not alter egos." *Apple*, 445 F. Supp. 3d at 53.

22        Additionally, Plaintiffs cannot prove, as they would have to, that NSO "dictate[d] every

23   facet of" Westbridge's "day-to-day operation." *Ranza*, 793 F.3d at 1073-74.  Westbridge

24   ████████████████████████████████████████████████████████████

25   ██████████ *Id.* at 1074; (*see* Akro. Exh. G at 290:2-7, Exh. J at 288:9-293:1, 314:14-315:5).

---

26   [12] *Accord Aldrich v. NCAA*, 484 F. Supp. 3d 779, 794 (N.D. Cal. 2020); *Corcoran v. CVS Health*

27   *Corp.*, 169 F. Supp. 3d 970, 982 (N.D. Cal. Mar. 14, 2016); *Los Gatos Mercantile, Inc. v. E.I.*
     *DuPont De Nemours & Co.*, 2015 WL 4755335, at *5 (N.D. Cal. Aug. 11, 2015).

28   [13] *Ranza*, 793 F.3d at 1073 ("Total ownership and shared management personnel are alone
     insufficient to establish the requisite level of control."); *GeoSolutions*, 700 F. Supp. 3d at 828 (same).

1    Therefore, the mere fact that Westbridge ████████████████████████ is insufficient

2    as a matter of law to attribute its conduct to NSO.  *Ranza,* 793 F.3d at 1075.

3          The same would be true even if specific jurisdiction could be based on agency after *Daimler*.

4    "[U]nder any standard for finding an agency relationship, the parent company must have the right

5    to substantially control its subsidiary's activities." *Williams*, 851 F.3d at 1024-25; *accord Bluestar*

6    *Genomics v. Song*, 2023 WL 4843994, at *23 (N.D. Cal. May 25, 2023).  In practice, this "agency

7    analysis" is "identical" to the test for "alter-ego liability" because it requires "parental control of

8    the subsidiary's internal affairs or daily operations."  *Apple*, 445 F. Supp. 3d at 56 (cleaned up); *see*

9    *In re Dynamic Access Memory*, 2005 WL 2988715, at *7-8 (N.D. Cal. Nov. 7, 2005) (Hamilton,

10   J.) (rejecting specific jurisdiction based on agency when "each foreign parent defendant who

11   maintains an American subsidiary also maintains an independent and separate existence, controls

12   its own day to day activities, controls its own books, and maintains its own revenues").  Plaintiffs

13   cannot prove any such control by NSO over Westbridge.   Westbridge ████████████████

14   ████████████████████ and Plaintiffs have "no evidence [NSO] directed [Westbridge] to

15   sell [Pegasus] in California," *Tangle, Inc. v. Buffalo Games, LLC*, 2023 WL 5672178, at *6 (N.D.

16   Cal. Sept. 1, 2023), or that NSO "ordered or required" any of Westbridge's activities, *CZ Servs.,*

17   *Inc. v. Anthem Ins. Cos.*, 2022 WL 4126281, at *2 (N.D. Cal. Sept. 9, 2022).  Without such evidence

18   that NSO "actively directed [Westbridge's] advertising and sales efforts," NSO cannot be subject

19   to specific jurisdiction based on those efforts.  *Williams*, 851 F.3d at 1023 n.3.

20         Finally, Westbridge's marketing cannot support specific jurisdiction because Plaintiffs'

21   claims do not "arise out of or relate to" it.  *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir.

22   2023) (cleaned up).  The "'effects test' can only be satisfied if the plaintiff can point to contacts

23   which demonstrate that the defendant *expressly aimed its tortious conduct* at the forum, and thereby

24   made the forum the focal point of *the tortious activity.*"  *Hasson*, 114 F.4th at 192 (cleaned up).

25   Westbridge's marketing is not the "tortious activity" Plaintiffs challenge, *id.*, and ████████

26   ███████████████████████████████████████████████████████████████████

27   ██████.  (*See* Akro. Exh. J at 202:6-20, 205:19-206:1; *cf.* Akro. Exh. H at 155:10-24, 171:23-

28   172:1.)  And Westbridge's marketing to ███████████████████████ failed, so no

1   California-based potential customer ever used Pegasus either.  That marketing, therefore, has no

2   connection to the conduct that Plaintiffs claim to be unlawful and lacks the "close relation" to

3   Plaintiffs' claims necessary to support specific jurisdiction.  *Yamashita*, 62 F.4th at 506.

4   **B.**     **NSO is not subject to nationwide jurisdiction under Rule 4(k)(2).**

5          Plaintiffs also previously argued that NSO is subject to nationwide jurisdiction under Rule

6   4(k)(2).  But "[t]he Ninth Circuit has urged cautious application of Rule 4(k)(2)," *Hungerstation*,

7   2020 WL 137160, at *7, which permits jurisdiction only if a defendant has "significant" and

8   "extensive contacts" with the United States as a whole, *Holland Am. Line Inc. v. Wartsila N.A.,*

9   *Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).  NSO lacks such contacts.

10         ***First***, Courts routinely reject Rule 4(k)(2) jurisdiction based on a defendant's alleged use

11  of U.S.-based servers.  *Hungerstation*, 857 F. App'x at 350-51; *X Corp.*, 2024 WL 1245993, at *6-

12  11; *Alhathloul*, 2023 WL 2537761, at *6-8; *CrossFit*, 2020 WL 6449155, at *9-10; *Sonterra*, 2020

13  WL 137160, at *7.  As with NSO's alleged use of California servers, Plaintiffs have no evidence

14  that NSO purposefully targeted either WhatsApp or third-party servers based on their location in

15  the United States, so any contacts between NSO and U.S.-based servers "are too weak to satisfy

16  the due process demands of personal jurisdiction."  *Ross*, 2022 WL 20275185, at *6.

17         ***Second***, Plaintiffs cannot attribute Westbridge's U.S. marketing to NSO because

18  Westbridge was not NSO's alter ego or agent for purposes of personal jurisdiction.  If NSO *were*

19  Westbridge's alter ego, then NSO would be subject to *general* jurisdiction in Westbridge's home

20  state of Delaware.  *Williams*, 851 F.3d at 1021.  NSO would then be "subject to jurisdiction in

21  an[other] state's courts of general jurisdiction," Fed. R. Civ. P. 4(k)(2)(A), and Rule 4(k)(2) would

22  not apply, *Cargnani v. Pewag Austria G.m.b.H.*, 2007 WL 415992, at *10 (E.D. Cal. Feb. 5, 2007).

23         That aside, Westbridge's marketing activities in the United States are neither substantial

24  enough nor closely enough related to Plaintiffs' claims to support jurisdiction under Rule 4(k)(2),

25  even if they were attributed to NSO.  Plaintiffs do not challenge Westbridge's marketing standing

26  alone, and they do not claim any U.S. government agency violated the law by licensing and using

27  Pegasus.  (Nor could Plaintiffs , since CFAA does not apply to U.S. law-enforcement activities.  18

28  U.S.C. § 1030(f).)   Moreover, Westbridge's marketing and selling of NSO's products do not

17

1   constitute "extensive contacts" with the United States because NSO "also marketed in other

2   countries." *Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*, 458 F. Supp.

3   3d 1202, 1212 (N.D. Cal. 2020), *rev'd on other grounds*, 2021 WL 5861279 (9th Cir. Dec. 10,

4   2021).  Out of all of NSO's Pegasus contracts, ███████████████████████████████████

5   ████████████████  (Akro. Exh. H at 148:16-21.)  That ████████ is too limited a contact with the

6   United States to support jurisdiction "on a national scale."  *Glencore Grain Rotterdam B.V. v.*

7   *Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002) ("seven East Cost shipments"

8   were too "few in number" to trigger Rule 4(k)(2)).[14]  And again, if contacts ██████████████

9   ███  *were* sufficient to create personal jurisdiction, then NSO would be subject to specific

10  jurisdiction in ███████████████  and Rule 4(k)(2) would not apply.  *Platinum Performance, Inc.*

11  *v. Pro Dev., GmbH*, 2009 WL 10676261, at *6 (C.D. Cal. Jun 3, 2009).

12  **II.    NSO is entitled to summary judgment on all claims based on the operational use of**

13  **Pegasus by NSO's government customers.**

14        Plaintiffs alleged in their Complaint that NSO itself operates Pegasus, another claim that

15  discovery proved to be untrue.  Plaintiffs, however, continue to assert claims based on the use of

16  Pegasus to monitor the targets of governmental investigations. NSO is entitled to summary

17  judgment on all of these claims.  As a threshold matter, Plaintiffs have no evidence that NSO ever

18  operated Pegasus to access any target user's device.  Even if Plaintiffs had such evidence, the act

19  of state doctrine would bar any claim challenging foreign governments' use of Pegasus.

20        **A.    Plaintiffs have no evidence NSO ever unlawfully used Pegasus.**

21        Plaintiffs' claims against NSO related to the use of Pegasus fail for the simple reason that

22  they cannot attribute any use of Pegasus to NSO.  ██████████████████████████████████

23  ████████████████████████████████████  (Shohat Exh. A ¶ 2.4, Exh. B ¶ 2.4.)  Plaintiffs

24

25

26  ────────────────

    [14] *Holland*, 485 F.3d at 462 ("isolated incident" in Florida insufficient under Rule 4(k)(2)); *accord*

27  *Michael Grecco Prods. Inc. v. ImageSelect B.V.*, 2024 WL 1640911, at *9-10 (C.D. Cal. Mar. 11, 2024); *St Andrews Links Ltd. v. Source & Design Int'l (UK) LTD*, 2022 WL 11902199, at *4-5

28  (N.D. Cal. Oct. 20, 2022); *Travelers Prop. Cas. Co. of Am. v. Apex Shipping Co. (NYC)*, 2020 WL 5608476, at *6 (N.D. Cal. Aug. 31, 2020).

1   know that the users of Pegasus are ███████ (Akro. Exh. R[15]), and they have no evidence
2   from which a reasonable jury could find that ███████████████████████████████
3   ██████████████████████████████████████ Without evidence of any such conduct
4   *by* NSO, Plaintiffs cannot pursue a claim *against* NSO for the use of Pegasus.

**B.   The act of state doctrine bars Plaintiffs' claims based on the operational use of Pegasus by NSO's government customers.**

7   Even if Plaintiffs could attribute governments' use of Pegasus to NSO, the act of state
8   doctrine prohibits U.S. courts from resolving any claim based on that conduct.  The act of state
9   doctrine bars lawsuits that "question the legality of the sovereign acts of foreign states." *IAM*, 649
10   F.2d at 1359.  It applies, at a minimum, when "(1) there is an official act of a foreign sovereign
11   performed within its own territory; and (2) the relief sought or the defense interposed in the action
12   would require a court in the United States to declare invalid the foreign sovereign's official act."
13   *Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064, 1069 (9th Cir. 2018) (cleaned up).  The
14   "doctrine is to be applied pragmatically and flexibly, with reference to its underlying
15   considerations."  *In re Philippine Nat'l Bank*, 397 F.3d 768, 773 (9th Cir. 2005) (cleaned up).
16   "Thus, even when an act of a foreign state affects property outside of its territory, the considerations
17   underlying the act of state doctrine may still be present" when justified by an "underlying
18   governmental interest."  *Id.* at 773-74 (cleaned up).[16]  A "private litigant may raise the act of state
19   doctrine, even when no sovereign state is a party to the action."  *IAM*, 649 F.2d at 1359.

20   The act of state doctrine applies to foreign governments' use of Pegasus.  NSO exclusively
21   licensed Pegasus to governments and government agencies, and a government's use of Pegasus is
22   an "official, sovereign act[]."  *Sea Breeze Salt*, 899 F.3d at 1069.  When a government engages in
23   "clandestine surveillance and espionage," it "employ[s] powers that . . . are peculiar to sovereigns."
24   *Broidy Cap. Mgmt., LLC v. Qatar*, 982 F.3d 582, 594 (9th Cir. 2020) (cleaned up).  Even though
25   Plaintiffs contend that some uses of Pegasus occasionally sent messages through WhatsApp servers

---

26   [15] *See, e.g.,* Akro. Exh. S ███████████ Exh. T ███████ Exh. U
27   ████████, Exh. V ██████████
28   [16] *See AdvanFort Co. v. Cartner*, 2015 WL 12516240, at *7 (E.D. Va. Oct. 30, 2015) ("the fact that a government entity acted outside the physical boundaries of the sovereign will not automatically defeat the doctrine's application where the decision . . . is 'governmental' in nature").

DEFENDANTS' MOT. FOR SUMMARY JUDGMENT                    Case No. 4:19-cv-07123-PJH

1  in the United States, ████████████████████████████████████████████

2  █████████████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████ does not rob

4  those governments' actions of their sovereign nature or eliminate their "governmental interest" in

5  not having those actions questioned in U.S. courts.  *Philippine Nat'l Bank*, 397 F.3d at 773; *cf.*

6  *Broidy*, 982 F.3d at 594 (nation's "surveillance and espionage against a national of another nation

7  in that other nation" is sovereign conduct).

8       Plaintiffs' claims would improperly require this Court to "question the legality of . . .

9  sovereign acts" by finding that governments' uses of Pegasus were illegal.  *IAM*, 649 F.2d at 1359.

10 The district court's decision in *Du Daobin v. Cisco Sys.*, 2 F. Supp. 3d 717 (D. Md. 2014), is

11 instructive.  There, the plaintiffs sued Cisco for allegedly designing and selling a "surveillance

12 program" that China "used to detect, monitor, detain, suppress, and torture dissidents."  *Id.* at 720.

13 The court held the act of state doctrine barred the lawsuit.  Although the plaintiffs sued only Cisco,

14 they "effectively ask[ed] the [c]ourt to decide that the Chinese government, with substantial

15 assistance from Cisco, has engaged in multiple violations of international law."  *Id.* at 726.  The act

16 of state doctrine prohibited such "judicial interference" in the "official actions of the Chinese

17 government."  *Id.*  Likewise here, Plaintiffs "ask[] the Court to decide the extent to which" NSO's

18 "technology can be used . . . by foreign governments."  *Id.*  The act of state doctrine forbids that result.

19 **III.    NSO is entitled to summary judgment on Plaintiffs' CFAA claim.**

20       In addition to the other defects identified above, Plaintiffs' CFAA claim cannot proceed for

21 other reasons.  First, as this Court already held, Plaintiffs cannot prove a claim under CFAA's

22 "without authorization" prong because NSO's alleged agreement to WhatsApp's TOS establishes

23 that NSO *had* authorization to access WhatsApp's servers.  (Dkt. 111 at 37.)  Second, Plaintiffs

24 cannot prove a claim under CFAA's "exceeds authorized access" prong because they have no

25 evidence that NSO circumvented any technical restrictions on WhatsApp's servers to "obtain or

26 alter information in" the servers that NSO was "not entitled so to obtain or alter."  18 U.S.C.

27 § 1030(e)(6).  Third, NSO's R&D after December 2018 was all ████████████████████

28 ████████████████████████████, which CFAA does not prohibit.  *Id.* § 1030(f).

A.     **Plaintiffs cannot pursue a "without authorization" claim or a claim based on WhatsApp's terms of service.**

CFAA prohibits certain forms of computer access either "without authorization" or in a way that "exceed[s] authorized access."  18 U.S.C. § 1030(a).  In this Court's motion to dismiss order, the Court dismissed Plaintiffs' CFAA claims to the extent they alleged that NSO accessed WhatsApp's servers "without authorization" because Plaintiffs contend that NSO agreed to WhatsApp's TOS, which gave NSO "authorization to send messages . . . over WhatsApp's servers."  (Dkt. 111 at 37.)  The Court limited Plaintiffs to proceeding under CFAA's "exceeds authorized access prong."  (*Id.* at 39.)  Plaintiffs did not amend their complaint.

Despite this, Plaintiffs ███████████ continue to assert that ███████████ ███████████ This Court's order forecloses that claim.  When a court dismisses a claim and the plaintiff does not amend its complaint, the plaintiff "cannot simply resurrect [that] claim[]" after discovery.  *Chronic Tacos Enters., Inc. v. Chronic Tacos Huntington Beach, Inc.*, 2011 WL 6010265, at *2 (C.D. Cal. Nov. 28, 2011).[17]  Nor may a plaintiff "amend [its] complaint through an opposition to a motion for summary judgment."  *Id.*; *accord City of L.A. v. Bank of Am. Corp.*, 2015 WL 4880511, at *5 (C.D. Cal. May 11, 2015).  Thus, this Court's motion to dismiss order limits Plaintiffs to an "exceeds authorized access" claim; without having amended their complaint, they may not reassert the "without authorization" claim this Court rejected.

That aside, this Court's reasoning remains fatal to any "without authorization" claim.  The Court correctly applied Ninth Circuit law holding that "a person uses a computer 'without authorization'" only "when the person has not received permission to use the computer *for any purpose.*"  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (emphasis added).  As long as a defendant "is authorized to use a computer for certain purposes," its access to the computer cannot be "without authorization"—even if the defendant violates limits the computer's owners placed on the defendant's access.  *Id.* at 1133.  Plaintiffs have pleaded that NSO agreed to WhatsApp's TOS, which authorized NSO to access WhatsApp's servers.  (Dkt. 111 at 37.)

---

[17] *Accord Natkin v. Am. Osteopathic Ass'n*, 2024 WL 3510926, at *4 (D. Or. July 23, 2024); *Bagdasaryan v. City of L.A.*, 2018 WL 6113104, at *14-15 (C.D. Cal. Oct. 22, 2018).

DEFENDANTS' MOT. FOR SUMMARY JUDGMENT                    Case No. 4:19-cv-07123-PJH

1  Accordingly, Plaintiffs cannot claim NSO "access[ed] a computer without any permission at all,"

2  and NSO is entitled to summary judgment on Plaintiffs' "without authorization" claim to the extent

3  that it survived the motion to dismiss. (*Id.*)

4      Indeed, Plaintiffs cannot pursue *any* CFAA claim based on NSO's alleged breach of

5  WhatsApp's TOS. Even the "exceeds authorized access" prong does not apply to "violations of

6  corporate computer use restrictions." *United States v. Nosal*, 676 F.3d 854, 862-63 (9th Cir. 2012)

7  (en banc); *accord Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016)

8  ("violation of the terms of use of a website—without more—cannot establish liability under the

9  CFAA"). NSO is entitled to summary judgment on any claim that it violated CFAA by accessing

10  a computer in violation of WhatsApp's TOS.

11      **B.**    **Plaintiffs cannot pursue an "exceeds authorized access" claim.**

12      Plaintiffs also cannot prove that NSO violated CFAA's "exceeds authorized access" prong

13  because they have no evidence that NSO used its "access" to Plaintiffs' servers "to obtain or alter

14  information" on the servers that NSO was "not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

15  Pegasus did not ██████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ██████████████████████████████████████████ Plaintiffs admit ██████████

18  ████████████████████████████████████████████████████████████████

19  (Akro. Exh. L at 183:7-184:7, 250:22-251:24, Exh. K at 249:7-250:10.) Nor did NSO "introduce"

20  ████████████████████████████████████████ (Akro. Exh. K at 200:25-201:10.) Instead,

21  Plaintiffs argue that ██████████████████████████████████████████████████

22  But CFAA does not apply to computer users that merely "misuse [their] access" to a computer.

23  *Van Buren v. United States*, 593 U.S. 374, 381 (2021). It prohibits only "the unauthorized

24  *procurement* or *alteration* of information." *Nosal*, 676 F.3d at 863 (emphasis added). NSO did not

25  ████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████

27      More than that, Plaintiffs cannot prove that NSO ever "entere[d] a part of the [servers] to

28  which [it] lack[ed] access privileges." *Van Buren*, 593 U.S. at 388. The ████████████████

1　██████████████████████████████████████████████████

2　(Akro. Exh. L at 129:15-130:23; McGraw Decl. ¶¶ 68-70, 73.)   And ████████████

3　██████████████████████████████████████████████████

4　██████████████████████████████████████████████████

5　████████████   (McGraw Decl. ¶¶ 65-79.)  The fact that ███████████████

6　██████████████████████████████████████████ *Abu v.*

7　*Dickson*, 107 F.4th 508, 515 (6th Cir. 2024).

8　　　　　Plaintiffs contend that NSO, ██████████████████████████████

9　███████████████   That makes no sense (McGraw Decl. ¶ 79), and it exposes the fatal

10　flaw in Plaintiffs' theory.  At bottom, Plaintiffs' claim is that ████████████████

11　██████████████████████████████████████████████████

12　████████████████████████   But CFAA enforces only "technological access barriers"

13　on particular *areas* of a computer, *Nosal*, 676 F.3d at 863, not "purpose-based limits" on the *use* of

14　a computer, *Van Buren*, 593 U.S. at 396.  Because NSO was ██████████████████

15　██████████████████████████████████████████████████

16　██████████████████████████████████████████████████

17　████████████████████   *Abu*, 107 F.4th at 518-19.  Because NSO did not

18　██████████████████████████████████████████████████

19　█████████████████████████████   cannot support a CFAA claim.

20　　　**C.**　　**CFAA's law-enforcement exception shields NSO's R&D after December 2018.**

21　　　　　NSO is entitled to summary judgment on any CFAA claim based on its R&D activities after

22　December 2018 because those activities were ██████████████████████████

23　██████████████████████████████████   18 U.S.C. § 1030(f).  When

24　the ████████████████   in December 2018, one of the █████████████████

25　███████████   which required NSO to maintain Pegasus in an operational state ███████████

26　(Akro. Exh. N.)  Moreover, ███████████████████████████████

27　████████████████████   (Akro. Exh. M at 212:1-15.)  Accordingly, NSO's R&D

28　activities after December 2018 were required, authorized, and paid for ██████████████

1   ████████████████████████████████████████   *Naicom Corp. v. Dish*

2   *Network Corp.*, 2024 WL 1363462, at *29 (D.P.R. Mar. 29, 2024).

3        In *Naicom*, private defendants "assisted federal law enforcement" by "penetrat[ing]" the

4   plaintiff's "servers and computers" and assisting with the execution of search warrants on the

5   plaintiff's computers.  *Id.* at *1, 5-6.  The plaintiff claimed these actions violated CFAA, but the

6   court dismissed the CFAA claim under § 1030(f), finding that the defendants' "conduct was

7   'lawfully authorized investigative . . . activity.'"  *Id.* at *29.  The court rejected the plaintiff's

8   argument that the defendants were acting for their own private motives, holding that "the relevant

9   inquiry is whether the [private] [d]efendants had authorization to access the information" from the

10   federal government.  *Id.* at *29 n.17.  ████████████████████████████

11   ████████████████████████████████████████████████████████

12   **IV.    NSO is entitled to summary judgment on Plaintiffs' CDAFA claim because Plaintiffs**

13   **cannot prove NSO knowingly took any action in California.**

14        Finally, NSO is entitled to summary judgment on Plaintiffs' CDAFA claim, which requires

15   Plaintiffs to prove NSO intentionally and unlawfully accessed a computer *located in California*.

16   California recognizes a "presumption against extraterritorial application," under which California

17   statutes cannot apply "to occurrences outside the state" unless a contrary intent is "clearly expressed

18   or reasonably to be inferred from the language of the act or from its purpose, subject matter or

19   history."  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (cleaned up).  The Due Process

20   Clause of the U.S. Constitution also prohibits California from regulating foreign conduct. *Phillips*

21   *Petrol. Co. v. Shutts*, 472 U.S. 797, 818 (1985); *Churchill Vill., LLC v. Gen. Elec. Co.*, 169 F. Supp.

22   2d 1119, 1126-27 (N.D. Cal. 2000).  For those reasons, California law does not apply when "the

23   liability-creating conduct occurs outside of California."  *Oman v. Delta Air Lines, Inc.*, 889 F.3d

24   1075, 1079 (9th Cir. 2018).

25        Because CDAFA contains no express language suggesting it applies extraterritorially, it

26   does not govern conduct outside of California.  *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *6 (N.D.

27   Cal. Nov. 20, 2020); *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047-48 (C.D. Cal. 2019);

28   *M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013).

And while CDAFA covers several forms of computer-related misconduct, the minimum requirement for its prohibitions is "knowing[]" access to a computer.  Cal. Penal Code § 502(c).  For that conduct to occur within California, the defendant must knowingly access a computer *in California*.  Otherwise, "the liability-creating conduct" would "occur[] outside of California," and CDAFA would not apply.  *Oman*, 889 F.3d at 1079.[18]  That is true even when the plaintiff lives in California, because "the concept of extraterritoriality . . . concerns legislation that regulates *conduct that occurs in a foreign jurisdiction—regardless of the plaintiff's residency.*"  *English v. Gen. Dynamics Mission Sys.*, 2019 WL 2619658, at *6 (C.D. Cal. May 8, 2019) (cleaned up).[19]

This rule dooms Plaintiffs' CDAFA claim because they cannot prove NSO knowingly accessed any California-based WhatsApp server.  As discussed above, WhatsApp ███████ ███████████████  and NSO ████████████████████████████ ████████████████████  Accordingly, any access to California servers by NSO would not have been "knowing[]," as CDAFA requires.  Moreover, any connection between NSO and California-based WhatsApp servers would be purely fortuitous, and such incidental contact with California would not "show a sufficient nexus between California and [NSO's] alleged wrongful conduct" to permit application of California law.  *Nowak*, 2020 WL 6822888, at *6 (CDAFA did not apply to hacking of plaintiff's Bitcoin account even though account was in California); *see Sajfr v. BBG Comms.*, *Inc.*, 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (California law did not apply to foreign calls "routed through switches in the United States" and "rated and billed from San Diego").

### Conclusion

The Court should grant NSO's motion and enter judgment in NSO's favor.

Dated: September 27, 2024                    KING & SPALDING LLP

                                             By: *Joseph N. Akrotirianakis*
                                             JOSEPH N. AKROTIRIANAKIS
                                             AARON S. CRAIG
                                             *Attorneys for Defendants*

---

[18] *See Terpin*, 399 F. Supp. 3d at 1047 (dismissing CDAFA claim because plaintiff did "not allege that the hacks . . . occurred in California"); *M Seven*, 2013 WL 12072526, at *3 (CDAFA did not apply to hacking of Korean computer).

[19] *See Allergan, Inc. v. Athena Cosmetics*, 738 F.3d 1350, 1358-59 (Fed. Cir. 2013) (California law did not apply to foreign sales, even if sales "cause[d] [plaintiff] an injury . . . in California").

DEFENDANTS' MOT. FOR SUMMARY JUDGMENT                    Case No. 4:19-cv-07123-PJH