Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date:   November 1, 2024 <br> Time:   1:30 p.m. <br> Ctrm:   3 <br> Judge:  Hon. Phyllis J. Hamilton <br> Action Filed: October 29, 2019 |

**[REDACTED VERSION]**

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

BACKGROUND ...........................................................................................................................3

LEGAL STANDARD....................................................................................................................5

ARGUMENT .................................................................................................................................5

     I. NSO IS LIABLE ON PLAINTIFFS' BREACH OF CONTRACT CLAIM.......................5

         A.    NSO Agreed to the Terms.............................................................................6

         B.    NSO Breached the Contract ...........................................................................8

         C.    Plaintiffs Fulfilled Its Obligations and Suffered Damages From NSO's Breaches .......................................................................................................11

     II.    NSO IS LIABLE ON PLAINTIFFS' CFAA CLAIMS.............................................11

         A.    NSO Violated § 1030(a)(2) and § 1030(a)(4) of the CFAA ........................11

             1.    NSO Intentionally Accessed WhatsApp's Servers and the Target Devices..................................................................................12

             2.    NSO Accessed WhatsApp Servers and the Official Client on Target Devices Without Authorization or Exceeded Any Purported Authorized Access ............................................13

                 a)    NSO Bypassed the Restrictions Built Into the Official Client.................................................................15

                 █    ████████████████████████████.........17

                 █    ██████████████████████████████████ ..............................................................18

                 d)    NSO Exceeded Any Purported Authorization to Access WhatsApp's Servers...............................................19

                 e)    NSO Accessed Target Devices Without Authorization.........20

              3.    NSO Obtained Information in Violation of § 1030(a)(2) .................20

              4.    NSO Defrauded Plaintiffs and WhatsApp Users in Violation of § 1030(a)(4) ...................................................................................22

         B.    NSO Conspired with Clients to Use Its Technology in Violation of § 1030(b).......................................................................................................23

C.     NSO Trafficked in Password-Like Information in Violation of § 1030(a)(6) ......................................................................................................24

D.     NSO Caused Plaintiffs a Loss of More than $5,000 ....................................25

III.    NSO IS LIABLE ON PLAINTIFFS' CDAFA CLAIM .............................................25

CONCLUSION ....................................................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Alvarez v. Hill*,
    518 F.3d 1152 (9th Cir. 2008) ...................................................................................... 24

*Artifex Software, Inc. v. Hancom, Inc.*,
    2017 WL 4005508 (N.D. Cal. Sept. 12, 2017) ............................................................ 11

*AWR Corp. v. ZTE, Corp.*,
    2011 WL 13217534 (C.D. Cal. June 13, 2011) .............................................................. 6

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ......................................................................... 25

*E.D.C. Techs., Inc. v. Seidel*,
    216 F. Supp. 3d 1012 (N.D. Cal. 2016) ......................................................................... 5

*Facebook, Inc. v. MaxBounty, Inc.*,
    274 F.R.D. 279 (N.D. Cal. 2011) ................................................................................. 22

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ............................................................... 14, 18, 19, 25

*Facebook, Inc. v. Sluchevsky*,
    2020 WL 5823277 (N.D. Cal. Aug. 28, 2020) ............................................................ 11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ................................................................... 13, 14, 20

*HUD v. Rucker*,
    535 U.S. 125 (2002) ....................................................................................................... 21

*In re: Lenovo Adware Litig.*,
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ............................................................ 23

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ...................................................................................... 13

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ....................................................................... 25

*MetroPCS v. Rivera*,
    220 F. Supp. 3d 1326 (N.D. Ga. 2016) ........................................................................ 24

*Mobile Active Def., Inc. v. L.A. Unified Sch. Dist.*,
    2016 WL 7444876 (C.D. Cal. Apr. 6, 2016) ................................................................ 24

*Multiven, Inc. v. Cisco Sys., Inc.*,
    725 F. Supp. 2d 887 (N.D. Cal. 2010) ......................................................................... 22

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ........................................................................... 23

iii

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................. 6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   402 F. Supp. 3d 615 (N.D. Cal. 2019) .................................................. 11

*SEC v. McCarthy*,
   322 F.3d 650 (9th Cir. 2003) ............................................................... 21

*Shurgard Storage Ctrs., Inc.  v. Safeguard Self Storage, Inc.*,
   119 F. Supp. 2d 1121 (W.D. Wash. 2000) ............................................. 22

*Silicon Image, Inc. v. Analogix Semiconductor*,
   642 F. Supp. 2d 957 (N.D. Cal. 2008) .................................................. 11

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ................................................................. 5

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ................................................................. 5

*Temurian v. Piccolo*,
   2019 WL 5963831 (S.D. Fla. Nov. 13, 2019) ........................................ 24

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) .............................................. 14, 15, 17, 21

*Tompkins v. 23andMe, Inc.*,
   2014 WL 2903752 (N.D. Cal. June 25, 2014) ........................................ 6

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2016) ............................................................... 25

*United States v. Morris*,
   928 F.2d 504 (2d Cir. 1991) .......................................................... 20, 21

*United States v. Nosal*,
   844 F.3d 1024 (9th Cir. 2016) ............................................. 14, 17, 19, 22

*United States v. Phillips*,
   477 F.3d 215 (5th Cir. 2007) ............................................................... 19

*United States v. Valle*,
   807 F.3d 508 (2d Cir. 2015) ............................................................... 14

*Van Buren v. United States*,
   593 U.S. 374 (2021) ................................................ 12, 13, 14, 17, 19, 24

## STATUTES & RULES

18 U.S.C. § 1029 ......................................................................................... 24

California Comprehensive Data Access and Fraud Act ("CDAFA"), Cal. Pen. Code § 502 .......... 25

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 ................................. passim

Fed. R. Civ. P. 56 ......................................................................................... 5

1

## <u>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT</u>

2   PLEASE TAKE NOTICE THAT, on November 1, 2024 at 1:30 pm in Courtroom 3 of the

3 U.S. District Court for the Northern District of California, Plaintiffs WhatsApp LLC ("WhatsApp")

4 and Meta Platforms, Inc. ("Meta"; together with WhatsApp, "Plaintiffs") will and hereby do move

5 for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Defendants'

6 liability to Plaintiffs on their claims for (1) breach of contract; (2) violation of the Computer Fraud

7 and Abuse Act ("CFAA"), 18 U.S.C. § 1030; and (3) violation of the California Comprehensive

8 Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502.  This Motion is based

9 upon this Notice of Motion and Motion, the accompanying Memorandum of Points and

10 Authorities, the Declarations of Micah G. Block and Meghan Andre and all exhibits thereto, the

11 pleadings and papers on file in this action, and on such other written and oral argument as may be

12 presented to the Court.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

On October 29, 2019, Plaintiffs WhatsApp and Meta filed their Complaint against Defendants NSO Group and Q Cyber (collectively, "NSO"), alleging violations of the Computer Fraud and Abuse Act ("CFAA") and California Comprehensive Data Access and Fraud Act ("CDAFA"), and contractual breaches of WhatsApp's Terms of Service.  By its Order dated July 16, 2020, the Court held that Plaintiffs' allegations, if proven, sufficed to establish liability on those claims, as well as personal jurisdiction.  Now, with fact discovery completed, the undisputed evidence—including the deposition testimony of Defendants' own percipient and corporate representative witnesses, and Defendants' limited production of internal documents[1]—has confirmed the truth of those allegations.  Because the undisputed evidence establishes Defendants' liability on all claims, summary judgment should be entered for Plaintiffs, leaving only the amount of damages to be tried.

As a threshold matter, NSO admits that ██████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Defendants have admitted that ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████—all in violation of federal and state law and the plain language of WhatsApp's Terms of Service.  NSO's documents reflect that ████████████████████████████

---

[1] Subject to further conferring with NSO, Plaintiffs intend to file a separate motion for sanctions in light of NSO's violation of the Court's discovery orders, including through its failure to produce categories of documents, such as source code, which the Court ordered Defendants to produce. Because summary judgment is warranted on the undisputed facts, Plaintiffs' motion is not contingent on the Court granting the relief in Plaintiffs' anticipated sanctions motion.  Nonetheless, sanctions are warranted given the scope of NSO's misconduct and its prejudicial impact on Plaintiffs' ability to prosecute this case.

1

1 ██████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████

3       The purpose of NSO's conduct is also undisputed:  to extract valuable information from

4 WhatsApp servers and target devices, and do so secretly, in a manner intentionally designed to

5 deceive and evade detection by not only the owners of the target devices, but by WhatsApp itself.

6 NSO has admitted that ███████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 █████████████████████ Indeed, NSO has admitted that, ████████████████████

9 ████████████████████████████████ NSO also admits ████████████

10 ███████████████████████████████████████████████████

11 ██████████████████████████████████████████████

12       Even after WhatsApp detected and blocked the exploit described in the Complaint in May

13 2019, NSO admits that ██████████████████████████████████████████████████

14 █████████████████████ ████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████ NSO's witnesses have ███████████████████████████

17 ████████████████████████████ All of these facts are undisputed, drawn principally

18 from the corporate representative testimony of NSO's own witnesses, which is binding on

19 Defendants.

20       These undisputed facts, and others set forth herein, leave no triable issue as to Defendants'

21 liability on any claim.  NSO's admitted actions ██████████████████████████████

22 violate the plain terms of the WhatsApp Terms of Service and constitute contractual breaches as a

23 matter of law.  The undisputed evidence establishes that NSO accepted those Terms, ████████

24 ███████████████████████████████████████████████ ████████████████

25 _____

26 [2] These newly discovered facts stand in stark contrast to NSO's arguments, ████████████████

27 ██████████████████████████████████████████████████████████████

28 ██████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████—establishes violations of the CFAA and CDAFA.  NSO's access to WhatsApp servers and

4 the target devices was unauthorized and exceeded any authorized access, ██████████.  And as

5 to Plaintiffs' claim under CFAA § 1030(a)(6), for trafficking in password or similar information,

6 NSO admits ████████████████████████████████████████████

7      In short, discovery confirmed the very allegations this Court already ruled were sufficient

8 for liability—as well as revealing new, undisputed facts further establishing liability.  Judgment as

9 a matter of law should be entered in Plaintiffs' favor as to liability on all their claims.

10 **BACKGROUND**

11      WhatsApp provides an encrypted communication service available on mobile devices and

12 desktop computers.[3]  *See* Ex. 1 (Youssef Rep.) at 10.[4]  WhatsApp users must first install the

13 legitimate WhatsApp client application ("Official Client"), and agree to the WhatsApp Terms of

14 Service ("Terms") before using WhatsApp.  Ex. 2 (Lee Dep.) at 176:5-179:4; *see also* Ex. 3 (Woog

15 Dep.) at 177:7-23; Ex. 1 (Youssef Rep.) at 26-27.  WhatsApp signaling servers authenticate the

16 Official Client based on an encrypted key created during registration, and then provide a temporary

17 token used to access WhatsApp's relay servers.  Ex. 4 (Gheorghe Dep.) at 117:21-119:25, 136:5-

18 137:13.  The signaling servers start the call between users, and the relay servers "handl[e] the

19 realtime traffic between devices during a call."  *Id.* at 31:14-17, 33:10-21.

20      NSO's principal spyware product is called "Pegasus."  *See, e.g.*, (Dkt. No. 182-1, Ex. Q)

21 (noting NSO's "key surveillance product" is Pegasus).  NSO uses ████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████

25 _____

26 [3] Meta served as WhatsApp's service provider, which entails providing both infrastructure and
security for WhatsApp.  *See* Ex. 4 (Gheorghe Dep.) at 36:17-37:9; 92:18-21.

27 [4] Citations to "Ex._" refer to the exhibits submitted in connection with the Declaration of Micah G.
Block filed contemporaneously herewith, except as otherwise noted.

28



In September 2018 and again in December 2018, Plaintiffs made security updates to WhatsApp's servers that

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ██████████████████████████████████████████

4      After detecting NSO's malicious messages in May 2019, Plaintiffs' employees invested

5 significant time investigating the source of the exploit and remediating it by making changes to its

6 servers and the Official Client.  Ex. 4 (Gheorghe Dep.) at 29:22-25; Ex. 12 (Trexler Rep.) at 21-31.

7 ████████████████████████████████████████████████████████

8 ███████████████████████████████████████████████

9 Plaintiffs also disabled NSO's WhatsApp accounts, ██████████████████████████

10 ██████, and filed this lawsuit.  (Dkt. No. 1).  NSO then █████████████████████

11 ████████████████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ██████████████████████████████████████████████

14 ███████████████████████████████████████

15 **LEGAL STANDARD**

16      A motion for summary judgment must be granted where there is "no genuine dispute as to

17 any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a),

18 (c).  As the party bearing the burden of proof at trial, Plaintiffs "must affirmatively demonstrate that

19 no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty*

20 *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In response to such showing, NSO must set forth

21 "*specific facts* showing that there is a genuine issue for trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

22 *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).

23 **ARGUMENT**

24 **I.   NSO IS LIABLE ON PLAINTIFFS' BREACH OF CONTRACT CLAIM**

25      There is no genuine dispute as to any element of Plaintiffs' breach of contract claim, which

26 requires proof of: "(1) the existence of the contract, (2) plaintiff's performance or excuse for

27 nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  *E.D.C. Techs.,*

28 *Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1015 (N.D. Cal. 2016).  NSO admits it ████████████

5

1  ████████, and thus agreed to the Terms ████████.  NSO ████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████, which all violate the Terms.

4  NSO's breaches indisputably damaged Plaintiffs, and Plaintiffs are entitled to summary judgment.

5      **A.  NSO Agreed to the Terms**

6      NSO admits ████████████████████████████████████████

7  ████████████████████  *See, e.g.*, Ex. 6 (Gazneli Dep.) at 272:9-276:18; Ex. 8 (Eshkar

8  Dep.) at 17:13-23, 21:13-24; Ex. 14 (PX2039) at -490.  There is no genuine dispute that ████

9  ████████ agreed to the Terms, a necessary step in the WhatsApp registration process, which is

10 sufficient to have bound NSO to the Terms.  *See AWR Corp. v. ZTE, Corp.*, 2011 WL 13217534, at

11 *2–3 (C.D. Cal. June 13, 2011) (employees can bind employers to agreements "incidental to and

12 reasonably proper in the performance of an assigned task." (citation omitted)).

13     Plaintiffs have established—and NSO does not dispute—that agreeing to the Terms is

14 necessary to create a WhatsApp account and use WhatsApp.  During the registration process, a

15 prospective user is notified about and required to consent to the Terms.  *See* Ex. 2 (Lee Dep.) at

16 176:5-1:4 ("[I]n order to proceed with the registration flow, you have to click a button . . . to

17 demonstrate agreement of the terms of service, and to continue with the registration process.");

18 *accord* Ex. 3 (Woog Dep.) at 177:7-23; Ex. 1 (Youssef Rep.) at 26-27; *see Tompkins v. 23andMe,*

19 *Inc.*, 2014 WL 2903752, at *8-9 (N.D. Cal. June 25, 2014) (parties "accepted the TOS when they

20 created accounts" by "click[ing] a box . . . that appeared near a hyperlink to the TOS to indicate

21 acceptance of the TOS").  There is no genuine dispute that ████████████████████

22 *See* Ex. 8 (Eshkar Dep.) at 70:16-72:25; Ex. 16 (Shaner Dep.) at 326:9-327:9.  In addition, the

23 Terms provide that a user "agrees to [WhatsApp's] Terms of Service by installing, accessing, or

24 using our apps [and] services."  Ex. 11 (WA-NSO-00014825) at -825; *see Nguyen v. Barnes &*

25 *Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("explicit textual notice that continued use will act

26 as a manifestation of the user's intent to be bound" suffices).

27     *First*, it is undisputed that ████████████████████████████

28 ████████████████████████████████████████████████████████

6



1

2

3

4

5

6

7

8

9

10    ████ According to WhatsApp's business records, ████████ the phone numbers used in the

11    May 2019 attacks with WhatsApp from October 2018 to May 2019.  Ex. 18 (WA-NSO-00192176).

12    *Second*, ████████████████████████████

13

14

15

16

17

18

19

20

21

22

23

24

25    ——————————————

26    [6] ████████████████████████████

27    ████████████████████████████████  *See* Andre

      Decl. ¶ 9, Ex. A; Block Decl. ¶ 18 Ex. 23 (WA-NSO-00195067); Ex. 17

28    (NSO_WHATSAPP_00044814).

7

1　████████████████████████████████████████████████████

2　████████████████████████████████████████████████

3　████████████████████████████████████████████████

4　████████████████████████████████████████████████

5　██████████████████████████████████████████████████

6　████████████████████████████████████████████████

7　████████████████████████████████ Block Decl. ¶¶ 36-37; Andre Decl. ¶¶ 3-8, Ex. A.

8　**B.  NSO Breached the Contract**

9　The undisputed facts show that NSO violated the Terms in multiple ways.  Indeed, ████

10　████████████████████████████████████████████████

11　██████████████████████████████████████████████████

12　Ex. 6 (Gazneli Dep.) at 222:1-224:16.  It is therefore unsurprising that ███████████████

13　████████████████████████████████████████ breached those Terms.

14　*Reverse-Engineering*:  The Terms prohibit, "directly or through automated means . . .

15　reverse engineer[ing], alter[ing], modify[ing], creat[ing] derivative works from, decompil[ing], or

16　extract[ing] code from [WhatsApp's] Services."  Ex. 11 (WA-NSO-00014825) at -827.  NSO

17　violated these provisions by █████████████████████████████████

18　████████████████████████████████████████████████

19　████████████████████████████████████████████

20　████████████████████████████████████████████

21　██████████████████████████████████████████████████

22　████████████████████████████████████████████

23　████████████████████████████████████████████

24　████████████████████████████████████████ According to ████████

25　████████████ NSO ███████████████████████████████████

26　████████████████████████████████████████████

27　*Sending Harmful Computer Code*:  The Terms prohibit "directly or through automated

28　means . . . send[ing], stor[ing], or transmit[ting] viruses or other harmful code through or onto

8

1 | [WhatsApp's] Services." Ex. 11 (WA-NSO-00014825) at -827.  By its own admission, NSO

2 | ████████████████████████████████████████████████████████████

3 | ████████████████████████████████████████████████████████████

4 | ████████████████████████████████████████████████████████████

5 | ████████████████████████████████████████████████████████████

6 | ████████████████████████████████████████████████████████████

7 | **_Collecting User Information_**:  The Terms prohibit, "directly or through automated means,"

8 | using or assisting others in using WhatsApp to "collect the information of or about [WhatsApp's]

9 | users in any impermissible or unauthorized manner."  Ex. 11 (WA-NSO-00014825) at -827.  The

10 | undisputed facts show that NSO violated this term.  NSO admits that ████████████████████

11 | ████████████████████████████████████████████████████████████

12 | ████████████████████████████████████████████████████████████

13 | ████████████████ NSO admits ████████████████████████████████

14 | ████████████████████████████████████████████████████████████

15 | ████████████ And NSO admits ████████████████████████████████

16 | ████████████████████████████████████████████████████████████

17 | ████████████████████████

18 | NSO concedes it ████████████████████████████████████████████

19 | ████████████████████████████████████████████████████████████

20 | ████████████████████████████████████████████████████████████

21 | ████████████████████████████████████████████████████████████

22 | ████████████████████████████████████████████████

23 | ████████████████ And WhatsApp users could not have consented because NSO concedes ██

24 | ████████████████████████████████████████████████████████████

25 | ████████████████████████████████████████████

26 |

27 | [7]

28 | ██████████████████████████████████ Ex. 1 (Youssef Rep.) at 14, n.42

1    ***Accessing or Attempting to Access WhatsApp Without Authorization***:  The Terms state

2    that WhatsApp must be accessed and used "only for legal, authorized, and acceptable purposes."

3    Ex. 11 (WA-NSO-00014825) at -827.  The terms also prohibit "gain[ing] or attempt[ing] to gain

4    unauthorized access to [WhatsApp's] Services or systems."  *Id.*   As demonstrated below, *see infra*

5    § II.A.2, the undisputed facts show that NSO violated these terms.

6         NSO admits ███████████████████████████████████████████████

7    ████████████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████

10   ████████████████████████████████████████  NSO knew ██████████

11   ███████████████████████████████████████

12        WhatsApp also implemented security measures in September and December 2018 that

13   ████████████████████████████████████████████████  *See infra*

14   § II.A.2.b; Ex. 1 (Youssef Rep.) at 38; Ex. 25 (Vance Rep.) at 6-10.  ████████████

15   ███████████████████████████████████████████████████

16   ████████████████████████████████████████████

17        There is no dispute that NSO ████████████████████████████████

18   ████████████████████  *See infra* § II.A.2.c.  As part of remediating NSO's May 2019 attacks,

19   Plaintiffs "purge[d]" the WhatsApp accounts of the attacker phone numbers used in the May 2019

20   attacks, as well as other accounts affiliated with NSO.  *See* Exs. 18 & 19 (WA-NSO-00192176);

21   *see* Ex. 15 (SHANER_WHATSAPP_00001480) at -481 (████████████████████████

22   ████████████████████████).  Plaintiffs then filed this lawsuit alleging that NSO's access was

23   unauthorized and violated the Terms and federal and state law.  (Dkt. No. 1).  Yet, NSO admits █

24   ████████████████████████████████████████  *See* Ex. 6 (Gazneli Dep.) at 270:16-

25   271:13.  There is thus no genuine dispute NSO "gain[ed] or attempt[ed] to gain unauthorized access

26   to [WhatsApp's] Services" in violation of the Terms.  Ex. 11 (WA-NSO-00014825) at -827.

27        ***Using WhatsApp for Illegal Purposes***:  Finally, the Terms prohibit using WhatsApp in

28   ways that "are illegal."  *Id*.  As explained in Section II and III, *infra*, NSO's use of WhatsApp

10

violated the CFAA and CDAFA, and breached the Terms for that reason as well.

**C.  Plaintiffs Fulfilled Their Obligations and Suffered Damages From NSO's Breaches**

There is no genuine dispute that WhatsApp fulfilled its contractual obligations by providing its services, *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277, at *7 (N.D. Cal. Aug. 28, 2020), and suffered damages from NSO's breaches.  Plaintiffs incurred costs investigating and remediating NSO's breaches, *see, e.g.*, Ex. 33 (Robinson Dep.) at 287:2-295:11; *infra* § II.D, which are recoverable as damages.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 659 (N.D. Cal. 2019).  ███████████████████████████████

███████████, *see* Ex. 26 (Trexler Supp. Rep.) at 2-3; Ex. 27 (PX2045); which Plaintiffs are entitled to have disgorged as contract damages.  *See, e.g.*, *Artifex Software, Inc. v. Hancom, Inc*., 2017 WL 4005508, at *4 (N.D. Cal. Sept. 12, 2017).  And California law permits recovery of nominal damages based on the breach alone.  *See Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 964 (N.D. Cal. 2008).  Thus, for the foregoing reasons, the Court should grant partial summary judgment finding NSO liable on Plaintiffs' claim for breach of contract.

**II.  NSO IS LIABLE ON PLAINTIFFS' CFAA CLAIMS**

The undisputed facts show that Defendants violated the CFAA.  NSO admits that ████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████  NSO is therefore liable for knowingly and intentionally accessing WhatsApp's servers and users' devices without authorization or in excess of any purported authorization; conspiring with its customers to do the same; and trafficking in password-like information that provided such unauthorized access.

**A.  NSO Violated § 1030(a)(2) and § 1030(a)(4) of the CFAA**

Section 1030(a)(2) prohibits "intentionally access[ing] a computer without authorization or

11

exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).  Section 1030(a)(4) prohibits "knowingly and with intent to defraud, access[ing] a protected computer without authorization or exceed[ing] authorized access" and thereby furthering "the intended fraud and obtain[ing] anything of value." 18 U.S.C. § 1030(a)(4).  The undisputed facts show NSO violated both provisions.

### 1.  NSO Intentionally Accessed WhatsApp's Servers and the Target Devices

There is no genuine dispute that NSO knowingly and intentionally accessed WhatsApp's servers and the target devices ███████████████████. *See Van Buren v. United States*, 593 U.S. 374, 387 (2021) ("'[A]ccess' references the act of entering a computer 'system itself' . . . .").

As to WhatsApp's servers, Mr. Gazneli explained that ████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████ NSO admits that █████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ NSO also admits ██████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████ ███████████████████████ The undisputed evidence shows that NSO used U.S.-based WhatsApp

12

1   relay servers at least 176 times in May 2019 alone, including relay servers in San Jose and Los

2   Angeles, California.  *See* Ex. 28 (WA-NSO-00166473); Ex. 4 (Gheorghe Dep.) at 206:8-17

3   (explaining that servers located in "the San Jose and Los Angeles metro areas . . . were involved in

4   [the] attacks.").  NSO knew █████████████████████████████████████████████████

5   ████████████████████   *See* Ex. 1 (Youssef Rep.) at 37; Ex. 29 (Youssef Rebuttal) at 21.

6         NSO refused to produce documents regarding Pegasus's full functionality, in violation of

7   this Court's Orders (Dkt. Nos. 292, 358), ████████████████████████████████████

8   ███████████████████████████████   NSO admits, however, that ████████████████

9   █████████████████████████████████████   Ex. 20 (Defs.' Resps. to

10  Pls.' First RFAs) at 18-19.  Indeed, ████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████

12  ███████████████████████   NSO also admits ████████████████████████████████

13  ██████████████████████████████████████████████████

## 2.   NSO Accessed WhatsApp Servers and the Official Client on Target Devices Without Authorization or Exceeded Any Purported Authorized Access

16        The undisputed evidence demonstrates that NSO accessed WhatsApp's servers and user

17  devices "without authorization," or at least exceeded any alleged authorization NSO purports to

18  have had.  18 U.S.C. § 1030(a)(2) & (a)(4).

19        "The 'without authorization' clause . . . protects computers themselves by targeting so-

20  called outside hackers—those who 'acces[s] a computer without any permission at all.'"  *Van*

21  *Buren*, 593 U.S. at 389-90 (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir.

22  2009)).  "[T]he CFAA's prohibition on accessing a computer 'without authorization' is violated

23  when a person circumvents a computer's generally applicable rules regarding access permissions,

24  such as username and password requirements, to gain access to a computer."  *hiQ Labs, Inc. v.*

25  *LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022).  By contrast, "the 'exceeds authorized access'

26  clause . . . target[s] so-called inside hackers—those who access a computer with permission, but

27  then 'exceed the parameters of authorized access by entering an area of the computer to which

28  [that] authorization does not extend.'"  *Van Buren*, 593 U.S. at 389-90 (quoting *United States v.*

13

*Valle*, 807 F.3d 508, 524 (2d Cir. 2015)).  "[A]n individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him."  *Id.* at 396.

"[L]iability under both clauses stems from a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within the system," based on either "technological (or 'code-based') limitations on access," or "limits contained in contracts or policies."  *Id.* at 390 & n.8.  "The operative question is whether 'the conduct at issue is analogous to 'breaking and entering.''"  (Dkt. No. 111 at 35); *accord hiQ Labs*, 31 F.4th at 1197.  "[A] defendant can run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been revoked explicitly," and "[o]nce permission has been revoked, technological gamesmanship or the enlisting of a third party to aid in access will not excuse liability."  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067-68 (9th Cir. 2016); *see also United States v. Nosal* ("*Nosal II*"), 844 F.3d 1024, 1035-36 (9th Cir. 2016) ("unauthorized access" includes "getting into the computer after categorically being barred from entry").  Furthermore, "deceit vitiates consent" if the deceptive conduct "relates to the essential nature of his access."  *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1073-74 (9th Cir. 2004) ("us[ing] someone else's password to break into a mail server and then claim[ing] the server 'authorized' his access" is "the paradigm of what [the CFAA] sought to prohibit").

The undisputed evidence demonstrates that ███████████████████████████ ███████████████████████████ (Dkt. No. 111 at 37), but rather an "outside hacker[]," *Van Buren*, 593 U.S. at 389-90, accessing WhatsApp's servers and target devices "without authorization."  NSO admits ███████████████████

███████████████████████████████████████████████████████

██████████████  *See infra* § II.A.2.a.  The record further demonstrates that WhatsApp server updates made in September and December 2018 ████████████████████████

███████████████████████████████████████.  *See infra* § II.A.2.b.  NSO admits that ████████████████████████████████████

███████████████████████████████████████████████████████

14

1    ██████████████        *See id.*  Additionally, NSO now admits that ████████████

2    ████████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████

4    ███████████████████████        *See infra* § II.A.2.c.  NSO's access was without authorization under

5    well-established precedent,[8] but at a minimum, exceeded any authorization NSO purportedly had.

6         *a)*  ***NSO Bypassed the Restrictions Built Into the Official Client***

7         The undisputed evidence demonstrates that ████████████████████████

8    ████████████████████████████  gained unauthorized access to WhatsApp's servers.  *See Theofel*,

9    359 F.3d at 1073 ("deceit vitiates consent" if it "relates to the essential nature of his access").

10        WhatsApp's "client application is an official application built by WhatsApp to run on

11   mobile devices."  Ex. 4 (Gheorghe Dep.) at 78:23-79:1.  The Official Client accesses WhatsApp's

12   signaling servers using a "proprietary . . . noise protocol" that authenticates the Official Client

13   based on "an identity key that's stored on the client device" and "obtained through the registration

14   process to WhatsApp," which should "never leave the client device."  *Id.* at 135:20-140:1.  Once

15   authenticated by the signaling servers, the Official Client receives a temporary authorization token

16   that permits access to WhatsApp's relay servers.  *See id.* at 134:20-135:19.  Due to these access

17   restrictions, NSO concedes that ████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████████████████  Ex. 6 (Gazneli Dep.) at 278:16-279:6.

20        As this Court recognized previously, "[b]y creating WhatsApp accounts and accepting the

21   terms of service, defendants, as is true of any WhatsApp user, had authorization to send messages

22   _____

23   [8] The Court's order on NSO's motion to dismiss concluded that the complaint did not state a
     "without authorization" claim, based on the understanding that NSO implemented its attacks by

24   "sen[ding] messages using the WhatsApp app." (Dkt. No. 111 at 37.)  But discovery has revealed
     NSO

25   ████████████████████████████████████████████████████████  (Dkt. No. 1 ¶ 35).

26   ████████████████████████████  These facts, and the newly discovered evidence that NSO ██████████████

27   ████████, *see infra* § II.A.2.b-c, demonstrate NSO's liability on Plaintiffs' "without authorization"
     claim. (Dkt. No. 1 ¶¶ 53-54).  To the extent pursuing that claim now requires reconsidering the
     Court's prior order or deeming the pleadings amended to conform to the evidence, Plaintiffs

28   respectfully request that the Court construe this motion as seeking that relief.

1    ***using the WhatsApp app***, which would be transmitted over WhatsApp's servers."  (Dkt. No. 111 at

2    37 (emphasis added)).  Here, NSO █████████████████████████████████

3    because the Official Client is the first line of defense for WhatsApp's servers.  WhatsApp

4    "designed it[s code] and . . . wrote it, assuming that the messages being sent are a part of the

5    WhatsApp network and that they're official clients built by the WhatsApp team."  Ex. 4 (Gheorghe

6    Dep.) at 279:25-280:10.  As NSO admits, ████████████████████████████████



23                  To circumvent these technical limitations, NSO █████████████████

1 ████████████████████████████████████████████████████████████

2 ███████████ NSO's circumvention of the "technological (or 'code-based') limitations on access"

3 built into the Official Client was without authorization.  *See Van Buren*, 593 U.S. at 390 n.8.

4 Like in *Nosal II*, it is no defense that NSO used "legitimate access credentials" ███████

5 ███████████████████████████████████████, because NSO "had no mantle or

6 authority to override [WhatsApp's] authority to control access to its computers and confidential

7 information" ████████████████████████.  *Nosal II*, 844 F.3d at 1035.  NSO

8 knew █████████████████████████████████████████████████ *Cf.*

9 *Theofel*, 359 F.3d at 1073-74 (concluding "Defendants had at least constructive knowledge" that

10 subpoena used to procure emails was "invalid" and "deceptive").  In a document evaluating ████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 █████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ███████████████ NSO also ████████████████████████████████████████

19 ███████████████████████████████████████████████

20 ███████████████████████████████████

21 Despite NSO's attempts to avoid detection, the undisputed evidence shows that in 2018,

22 ████████████████████████████████████████████████

23 Specifically, in September and again in December 2018, Plaintiffs implemented security updates to

24 WhatsApp's server code ████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ██████████████████████ *See* Ex. 25 (Vance Rep.) at 8-10; Ex. 1 (Youssef Rep.) at 37-39.

27 NSO's own expert admits ████████████████████████████████████

28 ████████████████████ Ex. 30 (McGraw Rebuttal) at 26-27 (citation omitted).  ████████████

17



1

2

3

4

5

6

7

8

9

10

11  Nevertheless, after Plaintiffs' security updates further confirmed that

12

13

14

15

16

17

18

19  Because "technological gamesmanship

20  . . . will not excuse liability" after authorization has been clearly revoked, *Power Ventures*, 844

21  F.3d at 1067, NSO had no authorization for the May 2019 attacks.

22

23

24  NSO admits

25

26  In remediating the May 2019 attacks, Plaintiffs disabled the attackers' WhatsApp

27  accounts, as well as all Meta-affiliated accounts associated with known NSO employees.  *See* Ex.

28  18 (WA-NSO-00192176) (identifying 58 accounts purged in June and July 2019); (Dkt. No. 221-2

18

1 (identifying litigation filed in Israel over Plaintiffs disabling NSO employee accounts)).  Plaintiffs

2 also filed this litigation alleging NSO's access was unauthorized and seeking to permanently enjoin

3 NSO from accessing WhatsApp.  (Dkt. No. 1).  Yet, NSO now admits ███████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ███████████████   *See Nosal II*, 844 F.3d at 1035-36; *Power Ventures*, 844 F.3d at 1067.

8 　　　　　　　**d)  NSO Exceeded Any Purported Authorization to Access WhatsApp's Servers**

9 　　　　Setting aside that NSO had no authorization to access WhatsApp's servers for ██████

10 ████, summary judgment would still be warranted because NSO exceeded any purported

11 authorized access by circumventing WhatsApp's "technological (or 'code-based') limitations on

12 access" and "limits contained in contracts or policies."  *See Van Buren*, 593 U.S. at 390 n.8.

13 　　　　There is no dispute that ████████████████████████████████████

14 ████████████████████████████████████████ (Dkt. No.

15 111 at 37).  As explained above, the Official Client contains technological, code-based limitations

16 preventing users from ██████████████████████████████████

17 ████████████████████████████ *See supra*

18 § II.A.2.a.  NSO knew ████████████████████████, *see* Ex. 24

19 (PX2033) at -959, and has admitted that ████████████████████

20 ████████████████████, *see supra* § II.A.2.a.

21 　　　　NSO also deliberately circumvented technological, code-based limitations on WhatsApp's

22 servers.  As demonstrated above, NSO knew ████████████████████

23 ████████████████████████████████████████

24 ████████████████████ As the Ninth Circuit has

25 made clear, "[o]nce permission has been revoked, technological gamesmanship . . . will not excuse

26 liability."  *Power Ventures*, 844 F.3d at 1067.  Thus, the mere fact that NSO was ████████

27 ████████████████████ does not mean its access

28 was within the scope of any purported authorization.  *See United States v. Phillips*, 477 F.3d 215,

19

220 (5th Cir. 2007) ("[C]onduct, like 'password guessing' or finding 'holes in ... programs,' that uses computer systems not 'in any way related to their intended function' amounts to obtaining unauthorized access." (quoting *United States v. Morris*, 928 F.2d 504, 510 (2d Cir. 1991))).

### e)   NSO Accessed Target Devices Without Authorization

There is no genuine dispute that NSO caused target devices to be accessed without authorization.  Any claim by NSO that ███████████████████████████████ ████████ is legally irrelevant.  First, because NSO's access to WhatsApp servers was without authorization, the fact that ███████████████████████████ is not a defense to liability.  Once NSO's access to WhatsApp's servers is shown to be without authorization, ███ ███████████████████ does not matter.  *See* 18 U.S.C. § 1030(a)(2), (4); *see also Morris*, 928 F.2d at 511.  Moreover, NSO █████████████████████████████████ █████████████████████████████████████████████

NSO's documents explain ██████████

The undisputed evidence shows that NSO █████████████████████████ NSO admits ███████████

### 3.   NSO Obtained Information in Violation of § 1030(a)(2)

NSO used its unauthorized access to obtain "information from any protected computer."  18 U.S.C. § 1030(a)(2)(C).  A "protected computer" is one "used in or affecting interstate or foreign commerce or communication," *id.* § 1030(e)(2)(B), and includes "effectively any computer connected to the Internet."  *hiQ Labs*, 31 F.4th at 1195. ███████████████ ██████████████████████  *See* Ex. 6 (Gazneli Dep.) at 107:5-18.

20



1    ██████ *See id.* at 294:10-15.  NSO also █████████████████████████████

2    ██████████████████████████████████████████████████████████████

3    ██████████████████████████████████████████████████████████████

4    █████████████████████████ NSO also █████████████████████████████

5    ██████████████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████

7    NSO also admits ████████████████████████████████████████

8    ██████████████████████████████████████████████████████████████

9    ████████████████████████████████ The product description for

10   Pegasus (Dkt. No. 1-1, Ex. 10), ████████████████████████████████

11   ██████████████ describes the many types of data and information Pegasus exfiltrates from target

12   devices.  And ██████████████████████████████████████████

13   ██████████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████████

16   ██████████████████████████████████████████████████

17   ██████████████████████████████████████████████████

18   It makes no difference whether the information came from the servers or the target devices,

19   because Section 1030(a)(2)(C) prohibits "access[ing] *a computer*" and "thereby" obtaining

20   information "from *any protected computer*," not the same computer.  "It is a well-established

21   canon of statutory interpretation that the use of different words or terms within a statute

22   demonstrates that Congress intended to convey a different meaning for those words."  *SEC v.*

23   *McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003).  By requiring unauthorized access to "a *computer*,"

24   but information from "any *protected computer*," Congress made clear the "protected computer"

25   need not be the same "computer" accessed without authorization.  *See Theofel*, 359 F.3d at 1078

26   ("The civil remedy extends to '[a]ny person,'" and "'any' has an expansive meaning, that is, 'one

27   or some indiscriminately of whatever kind.'" (quoting first 18 U.S.C. § 1030(g), then *HUD v.*

28   *Rucker*, 535 U.S. 125, 131 (2002))); *Morris*, 928 F.2d at 511 ("Congress was punishing those . . .

21

who, with access to some computers that enable them to communicate on a network linking other computers, gain access to other computers to which they lack authorization . . . .").

Furthermore, the term "computer" is not limited to a single device, but "includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(1).  Given this broad definition, "[t]he CFAA's restrictions have been applied to computer networks, databases and cell phones." *Nosal II*, 844 F.3d at 1032 n.2.  There is no genuine dispute that WhatsApp is a communications network, and ███████████████████████ ████████████████████████████████████

### 4.  NSO Defrauded Plaintiffs and WhatsApp Users in Violation of § 1030(a)(4)

Section 1030(a)(4) requires proof that a defendant accessed a computer "with intent to defraud" and "by means of such conduct furthers the intended fraud and obtains anything of value," which may include the use of a computer if valued at "more than $5,000 in any 1-year period."  18 U.S.C. § 1030(a)(4).  "[F]raud 'under the CFAA only requires a showing of unlawful access; there is no need to plead the elements of common law fraud to state a claim under the Act.'"  *Facebook, Inc. v. MaxBounty*, *Inc.*, 274 F.R.D. 279, 284 (N.D. Cal. 2011) (citations omitted); *see Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1126 (W.D. Wash. 2000) ("fraud" means "wrongdoing" and does not require proof of common law fraud).  For example, in *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887 (N.D. Cal. 2010), a former employee acted with "intent to defraud" when he used a co-worker's passwords to access Cisco's computer network, with knowledge of Cisco's policy prohibiting such access.  *Id.* at 892-94.

There is no dispute that ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ NSO admits ██████████████ ████████████████████████████████████████████ By means of this deceptive conduct, NSO ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████



**B.  NSO Conspired with Clients to Use Its Technology in Violation of § 1030(b)**

NSO cannot evade liability by ███████████████████████ Section 1030(b) imposes liability on any person that conspires to commit or attempts to commit a CFAA violation.  *See* 18 U.S.C. § 1030(b).  A conspiracy "requires 'specific allegations of an agreement and common activities.'"  *In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *6 (N.D. Cal. Oct. 27, 2016) (quoting *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835 (N.D. Cal. 2014)). There is no dispute that NSO ███████████████████████████

NSO admits it ████████████████████████████████████ ████████████████████████████ NSO admits ████████████████ ████████████████████████ And NSO admits ██████ ███████████████████████████

NSO also engaged in "common activities" that furthered the CFAA violations.  *Lenovo*, 2016 WL 6277245, at *6.  In addition to ██████████████ NSO admits █ ███████████████████████████ █ ██████████ NSO also admits █ ████████████████████████████ ████████████████████████████

_____

[9] That infrastructure included at least one California-based server, the IP address of which ███████ ███████████████  *See* Dkt. 55-6 (Mornin Decl.) ¶ 2; Dkt. No. 55-2 (Gheorge Decl.) ¶¶ 3-4; Ex. 29 (Youssef Rebuttal) at 22.

1  ████████████████████████████████████████████████████████████████

2  ███████████████   NSO is thus liable for ███████████████ as a co-conspirator.

3  **C.  NSO Trafficked in Password-Like Information in Violation of § 1030(a)(6)**

4  CFAA Section 1030(a)(6) prohibits "knowingly and with intent to defraud" trafficking "in

5  any password or similar information through which a computer may be accessed without

6  authorization."[10]  The CFAA defines "traffic" as to "transfer, or otherwise dispose of, to another, or

7  obtain control of with intent to transfer or dispose of."  18 U.S.C. § 1029(e)(5).

8  NSO's technology constitutes "password or similar information."  Indeed, NSO admits ███

9  ████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████   NSO also admits that ████████

11  ██████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████

13  ██████████   Courts have deemed technologies circumventing similar access restrictions to be

14  "password or similar information" under the CFAA.  *See Temurian v. Piccolo*, 2019 WL 5963831,

15  at *6 (S.D. Fla. Nov. 13, 2019) ("(API) information" transmitted to "gain access" to bitcoin

16  account); *Mobile Active Def., Inc. v. L.A. Unified Sch. Dist.*, 2016 WL 7444876, at *7 (C.D. Cal.

17  Apr. 6, 2016) ("top secret, confidentially held URL"); *MetroPCS v. Rivera*, 220 F. Supp. 3d 1326

18  (N.D. Ga. 2016) (unlocked mobile devices); *see also Van Buren*, 593 U.S. at 390 n.9 (§ 1030(a)(6)

19  "turns on whether a user's credentials allow him to proceed past a computer's access gate").

20  There is also no genuine dispute that NSO trafficked ██████████████████████

21  ██████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████

25  _____

26  [10] Although the Complaint did not identify § 1030(a)(6), "[a] complaint need not identify the statutory or constitutional source of the claim."  *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir.

27  2008).  Defendants were on notice Plaintiffs were pursuing claims under the CFAA, and based on "knowingly and without permission provid[ing] and assist[ing] in providing a means of accessing

28  Plaintiffs' computers, computer systems, and computer networks."  (Dkt. No. 1 ¶¶ 24, 29, 61).

1 ██████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 **D.  NSO Caused Plaintiffs a Loss of More than $5,000**

6 Plaintiffs have standing for a civil claim because they suffered at least $5,000 of "loss."  *See*

7 18 U.S.C. §§ 1030(g), (c)(4)(A)(i)(I).  "Loss" includes "any reasonable cost to any victim,

8 including the cost of responding to an offense, conducting a damage assessment, and restoring the

9 data, program, system, or information to its condition prior to the offense."  *Id.* § 1030(e)(11);

10 *Power Ventures*, 844 F.3d at 1066 (concluding time "analyzing, investigating, and responding to

11 [defendant's] actions" was "loss").  The undisputed evidence shows that Plaintiffs' employees

12 worked tirelessly to investigate the exploit and develop fixes for WhatsApp's servers and the

13 Official Client to block NSO's unauthorized access.  *See* Ex. 4 (Gheorghe Dep.) at 208:19-209:11,

14 272:13-280:12; Ex. 33 (Robinson Dep.) at 287:2-295:11.  The undisputed cost exceeded $5,000.

15 *See* Ex. 12 (Trexler Rep.) at 21-31; ████████████████████████████

16 **III. NSO IS LIABLE ON PLAINTIFFS' CDAFA CLAIM**

17 Plaintiffs also are entitled to summary judgment on their CDAFA claim.  *See* Cal. Pen.

18 Code § 502.  CDAFA is "a state law counterpart to the CFAA."  *Meta Platforms, Inc. v. Brand-*

19 *Total Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022).  While "[t]he statutes are different," and

20 CDAFA is broader in many respects, *see United States v. Christensen*, 828 F.3d 763, 789 (9th Cir.

21 2016), a CFAA violation will establish a CDAFA violation "because the necessary elements of

22 [CDAFA] do not differ materially from the necessary elements of the CFAA."  *BrandTotal*, 605 F.

23 Supp. 3d at 1260 (quoting *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020)).  For

24 the reasons described in Section II *supra*, the undisputed facts show NSO willfully and fraudulently

25 violated CDAFA, and Plaintiffs are entitled to summary judgment on that claim, too.

26 <u>**CONCLUSION**</u>

27 For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion

28 for partial summary judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  September 27, 2024

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  /s/ Micah G. Block

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
        antonio.perez@davispolk.com
        craig.cagney@davispolk.com
        luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH