Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
Email:   greg.andres@davispolk.com
            antonio.perez@davispolk.com
            craig.cagney@davispolk.com
            gina.cora@davispolk.com
            luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone:  (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and*
*Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC, and<br>META PLATFORMS, INC.,<br><br>                Plaintiffs,<br><br>        v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>                Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DISCOVERY MATTER**<br><br>Date:   November 7, 2024<br>Time:   1:30 PM<br>Courtroom 3<br>Before the Honorable Phyllis J. Hamilton |

**[REDACTED VERSION]**

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 7, 2024 at 1:30 PM, or as soon as the matter may be heard, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. ("Plaintiffs") will bring on for hearing before the Honorable Phyllis J. Hamilton, in Courtroom 3 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, a motion for sanctions (the "Motion").

This Motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities herein, the Declaration of Micah G. Block in Support of the Motion ("Block Decl.") filed concurrently herewith, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

Dated: ___October 2, 2024___

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

By: _/s/ Micah G. Block_

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
        antonio.perez@davispolk.com
        craig.cagney@davispolk.com
        gina.cora@davispolk.com
        luca.marzorati@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .......................................................................................................2

A.   Plaintiffs File This Action and Seek Discovery from NSO ............................2

B.   ███████████████████████████████████████████.....3

C.   The November 2023 Order: The Court Orders NSO to Produce Specific and  Important Documents, Despite Any Israeli Law Restrictions.................5

D.   The February 2024 Order: The Court Orders NSO to Produce Documents It  Concedes Are Sufficiently Important and Specific, as well as Documents  Regarding "Relevant Spyware," Despite Israeli Law Restrictions ...................................................................................................6

E.   The August 2024 Order: The Court Clarifies That NSO Must Produce Pegasus Code Despite Israeli Law Restrictions ............................................7

F.   NSO Refuses to Produce Information It Agreed to Produce, and Information  Regarding the Full Functionality of the Relevant Spyware........7

G.   Procedural History ..........................................................................................8

ARGUMENT...........................................................................................................8

I. NSO Refused to Comply with the Court's Discovery Orders .............................9

A.   NSO Refused to Produce Computer Code Showing the Full Functionality of the  Relevant Spyware .....................................................................................9

1.   NSO Refused to Produce Code Showing Full Functionality of Relevant Spyware .............................................................................10

2.   NSO Refused to Produce Code to Plaintiffs' Counsel in the United States ..................................................................................10

3.   NSO's Corporate Designee on Technical Issues Consulted Source Code In  Preparation for Testimony, Underscoring the Code's Importance and Usefulness ................................................................12

B.   NSO Refused to Produce Communications That the Court Ordered Produced .........................................................................................................12

C.   NSO Refused to Produce Financial Documents That the Court Ordered Produced .........................................................................................................13

D.   NSO Refused to Answer Deposition Questions ...........................................14

II.     NSO's Refusal to Comply with the Court's Orders Requires Terminating Sanctions ..................................................................................................15

        A.      NSO Willfully Refused to Comply with the Court's Order...........................16

        B.      Terminating Sanctions Are Appropriate .......................................................18

                1.      Expeditious Resolution of Litigation ................................................19

                2.      Court's Need to Manage Its Docket...................................................19

                3.      Risk of Prejudice to Plaintiffs ..........................................................20

                4.      Disposition on the Merits...................................................................21

                5.      Availability of Less Drastic Sanctions...............................................21

        C.      If the Court Finds That Terminating Sanctions Are Not Appropriate, It Should Order Evidentiary Sanctions...............................................................23

CONCLUSION .........................................................................................................................25

1

**TABLE OF AUTHORITIES**

2

<span style="font-variant: small-caps">Cases</span>

3

<span style="font-variant: small-caps">Page(s)</span>

4

5

*Adriana Int'l Corp. v. Thoeren*,
    913 F.2d 1406 (9th Cir. 1990) ............................................................ 18

6

*Allen v. Bayer Corp. (In re Phenylpropanolamine (PPA) Prods. Liab. Litig.)*,
    460 F.3d 1217 (9th Cir. 2006) ....................................................... 19, 20

7

*Arellano v. Blahnik*,
    2019 WL 2710527 (S.D. Cal. June 28, 2019) ...................................... 19

8

9

*Choudhuri v. Wells Fargo Bank, N.A.*,
    2017 WL 5598685 (N.D. Cal. Nov. 21, 2017) ................................. 19, 23

10

*Computer Task Group, Inc. v. Brotby*,
    364 F.3d 1112 (9th Cir. 2004) ............................................................ 22

11

*Conn. Gen. Life. Ins. Co. v. New Images of Beverly Hills*,
    482 F.3d 1091 (9th Cir. 2007) ............................................................ 16

12

13

*Converse v. Vizio, Inc.*,
    2019 WL 3322383 (W.D. Wash. July 23, 2019) ................................. 12

14

*Detoy v. City & Cnty. of San Francisco*,
    196 F.R.D. 362 (N.D. Cal. 2000) ....................................................... 15

15

16

*Gibson v. Chrysler Corp.*,
    261 F.3d 927 (9th Cir. 2001) ............................................................. 23

17

18

*Guifu Li v. A Perfect Day Franchise, Inc.*,
    281 F.R.D. 373 (N.D. Cal. 2012) ......................................................... 9

19

*Henry v. Gill Indus., Inc.*,
    983 F.2d 943 (9th Cir. 1993) ............................................................. 16

20

21

*Hernandez v. Lynch*,
    2019 WL 6998774 (C.D. Cal. June 18, 2019) ..................................... 15

22

*Hester v. Vision Airlines, Inc.*,
    687 F.3d 1162 (9th Cir. 2012) ..................................................... 21, 22

23

24

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    2012 WL 7783405 (C.D. Cal. Apr. 23, 2012) ..................................... 11

25

26

*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
    2019 WL 356805 (N.D. Ill. Jan. 29, 2019) ......................................... 15

27

28

v

*Newpark Mall LLC v. Crge Newpark Mall, LLC,*
2016 WL 742009 (N.D. Cal. Feb. 25, 2016) ................................................................. *passim*

*Rambus Inc. v. Hynix Semiconductor Inc.,*
2007 WL 9653194 (N.D. Cal. Sept. 25, 2007) ................................................................. 11

*Richmark Corp. v. Timber Falling Consultants,*
959 F.2d 1468 (9th Cir. 1992) ............................................................................. 5, 16, 18

*Sayta v. Martin,*
2019 WL 666722 (N.D. Cal. Feb. 19, 2019) ................................................................. 11

*Seven Seas Cruises S. DE R.L. v. V. Ships Leisure Sam,*
2010 WL 5187680 (S.D. Fla. Dec. 10, 2010) ................................................................. 12

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,*
357 U.S. 197 (1958) ......................................................................................................... 9

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ....................................................................................................... 21

*Transamerica Life Ins. Co. v. Arutyunyan,*
93 F.4th 1136 (9th Cir. 2024) ....................................................................................... 20

*Vasquez v. Leprino Foods Co.,*
2019 WL 1934015 (E.D. Cal. May 1, 2019) ................................................................. 15

*Wanderer v. Johnston,*
910 F.2d 652 (9th Cir. 1990) ........................................................................................... 9

*White v. Gonzales,*
2024 WL 1659896 (N.D. Cal. Apr. 16, 2024) ......................................................... 20, 21

*Wilson v. Allison,*
2023 WL 7174235 (N.D. Cal. Oct. 30, 2023) ............................................................... 20

*Wyle v. R.J. Reynolds Indus., Inc.,*
709 F.2d 585 (9th Cir. 1983) ......................................................................................... 23

*Yourish v. Cal. Amplifier,*
191 F.3d 983 (9th Cir. 1999) ......................................................................................... 19

<span style="text-align:center; display:block">S<small>TATUTES</small> & R<small>ULES</small></span>

Fed. R. Civ. P. 30(b)(6) .................................................................................................. 12

Fed. R. Civ. P. 30(c)(2) .................................................................................................. 15

Fed. R. Civ. P. 37(b)(2)(A) ..................................................................................... 8, 16, 23

Fed. R. Civ. P. 34(b)(2)(E)(ii) ........................................................................................ 11

1

O<small>THER</small> A<small>UTHORITIES</small>

2
3
4

Harry Davies & Stephanie Kirchgaessner, *Israel Tried to Frustrate US Lawsuit Over Pegasus Spyware, Leak Suggests*, The Guardian (July 25, 2024, 12:00 PM), https://www.theguardian.com/news/article/2024/jul/25/israel-tried-to-frustrate-us-lawsuit-over-pegasus-spyware-leak-suggests ...................................................................................................................4, 16, 17

5
6

*Israel's Attempt to Sway WhatsApp Case Casts Doubt on Its Ability to Deal with NSO Spyware Cases*, Amnesty Int'l (July 25, 2024), https://www.amnesty.org/en/latest/news/2024/07/israels-attempt-to-sway-whatsapp-case-casts-doubt-on-its-ability-to-deal-with-nso-spyware-cases ...........4

7
8
9

Phineas Rueckert and Karine Pfenniger, *Israel Maneuvered to Prevent Disclosure of State Secrets Amid WhatsApp vs NSO*, Forbidden Stories (July 25, 2024), https://forbiddenstories.org/actualites_posts/israel-maneuvered-to-prevent-disclosure-of-state-secrets-amid-whatsapp-vs-nso- lawsuit ....................................................................................................................................4, 16

10

Restatement (Third) of Foreign Relations Law § 442(1)(b) (1987) ..................................................16

11

Restatement (Third) of Foreign Relations Law § 442(2)(b) ............................................................16

12

Restatement (Third) of Foreign Relations Law § 442 cmt. h ..........................................................16

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**PRELIMINARY STATEMENT**

At the February 15, 2024 hearing, the Court noted that if Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited ("NSO") failed to comply with their discovery obligations, the Court "would not feel at all reluctant to impose sanctions." Ex. B (Feb. 15, 2024 Hr'g Tr.) at 70:20–23. Discovery is now closed, and NSO has refused to comply with its obligations in violation of this Court's Orders. For example, NSO has refused to produce internal email communications and has refused to produce the Pegasus source code as ordered by the Court. The discovery NSO has refused to produce goes to issues at the heart of this case, and NSO's violations have accordingly prejudiced Plaintiffs. Sanctions are warranted.

In March 2023, NSO moved for a protective order seeking what the Court described as "near-total insulation against producing any discovery in this case" on the basis of purported obligations under Israeli law. Dkt. No. 233 at 8. The Court denied that motion on November 15, 2023 (the "November 2023 Order"), balancing NSO's purported foreign-law restrictions against its U.S. discovery obligations, and concluding that foreign law did not excuse discovery as to materials that were sufficiently specific and important. *Id*. at 8–11. Plaintiffs then moved to compel the production of specific categories of information. Dkt. No. 235-2. The Court granted Plaintiffs' motion on February 23, 2024 (the "February 2024 Order"), and ordered NSO to produce various categories of specific and important information, including documents and communications related to any of NSO's spyware targeting or directed at WhatsApp servers, or using WhatsApp in any way to access WhatsApp's users' devices. Dkt. No. 292 at 3–5. After NSO ignored the February 2024 Order and continued opposing the production of its computer code, Plaintiffs again moved to compel and the Court granted Plaintiffs' motion on August 1, 2024 (the "August 2024 Order"), confirming that NSO was obligated to produce the source code for its spyware. Dkt. No. 358 at 4–7. NSO still did not comply.

NSO has violated those Orders and refused to comply with its discovery obligations. NSO's many willful violations include the following:

- NSO did not produce "Pegasus computer code, as well as code that shows the full functionality of any other 'relevant spyware,'" Dkt. No. 358, in a manner that can be used in

this litigation;

- NSO did not produce any internal communications, *see* Dkt. 292 at 3; and

- NSO misused the Court's previous Orders *mandating* NSO to produce documents from a certain date range, *see* Dkt. No. 292 at 4, as a supposed Court-ordered *limitation* on the scope of NSO's testimony, and refused to answer fundamental questions going to the heart of this case— █████████████████████████████████████████ █████████████████, *see* Ex. N (Gazneli Tr.) at 271:9–20.

To be sure, as set forth in Plaintiffs' motion for summary judgment, even the limited discovery suffices to enter judgment for Plaintiffs on all claims as a matter of law. If the Court concludes that judgment cannot be entered for Plaintiffs as a matter of law as a result of NSO's refusal to produce discovery and comply with this Court's Orders, sanctions are warranted—up to and including terminating sanctions. NSO's discovery violations were willful, and unfairly skew the record on virtually every key issue in the case, from the merits, to jurisdiction, to damages, making a full and fair trial on the facts impossible. NSO cannot be permitted to advance arguments untested through full discovery or to hide behind the standard of proof, or a purported absence of evidence, when, in violation of multiple Court Orders, it created those very issues by refusing to produce the evidence that would assist Plaintiffs in carrying their burden.

The Court was clear about NSO's discovery obligations, and NSO has willfully defied the Court's Orders. To the extent NSO's discovery violations now preclude judgment for Plaintiffs as a matter of law, the most severe sanction of terminating sanctions is warranted.

## BACKGROUND

### A.    Plaintiffs File This Action and Seek Discovery from NSO

Plaintiffs filed their complaint on October 29, 2019, which centered on—but was not limited to—NSO's attacks that abused WhatsApp servers in April and May of 2019. Dkt. No. 1 ¶ 42. As alleged in the complaint, NSO unlawfully used WhatsApp to install NSO's spyware on the mobile devices of approximately 1,400 WhatsApp users. *See id.* Plaintiffs uncovered NSO's intrusions in May 2019, and traced the activity back to third-party servers registered in NSO's name.

2



Plaintiffs served their first set of requests for production on June 2, 2020.  Dkt. No. 116-2.



² ███████████████████████████

³ Harry Davies & Stephanie Kirchgaessner, *Israel Tried to Frustrate US Lawsuit Over Pegasus Spyware, Leak Suggests*, The Guardian (July 25, 2024, 12:00 PM), https://www.theguardian.com/news/article/2024/jul/25/israel-tried-to-frustrate-us-lawsuit-over-pegasus-spyware-leak-suggests; *see also* Phineas Rueckert & Karine Pfenniger, *Israel Maneuvered to Prevent Disclosure of State Secrets Amid WhatsApp vs NSO*, Forbidden Stories (July 25, 2024), https://forbiddenstories.org/actualites_posts/israel-maneuvered-to-prevent-disclosure-of-state-secrets-amid-whatsapp-vs-nso-lawsuit; Amnesty International, *Israel's Attempt to Sway WhatsApp Case Casts Doubt on Its Ability to Deal with NSO Spyware Cases* (July 25, 2024), https://www.amnesty.org/en/latest/news/2024/07/israels-attempt-to-sway-whatsapp-case-casts-doubt-on-its-ability-to-deal-with-nso-spyware-cases.

⁴ Davies & Kirchgaessner, *supra* note 3.

██████████████████████████████████████████████████████████████████

**C.    The November 2023 Order: The Court Orders NSO to Produce Specific and Important Documents, Despite Any Israeli Law Restrictions**

On March 30, 2023, NSO moved for a protective order seeking an exemption from responding to nearly all of Plaintiffs' discovery requests based on certain Israeli law restrictions.  Dkt. No. 176.  The parties' briefs focused on applying the Ninth Circuit's decision in *Richmark Corp. v. Timber Falling Consultants*, which established that "a foreign-law prohibition will not always excuse compliance with a discovery order."  959 F.2d 1468, 1474 (9th Cir. 1992).

In the November 2023 Order, the Court denied NSO's motion.  Dkt. No. 233 at 8.  Relying on the *Richmark* factors, the Court concluded that "[t]o the extent that plaintiffs are able to identify discovery that is sufficiently specific and important to the asserted claims in this case, the court will not excuse non-production of that discovery."  *Id.* at 9.  The Court thus invited Plaintiffs to submit a motion to compel specific discovery from NSO, so that the Court could "order compliance with those discovery requests despite the DECL [Israeli Defense Export Control Law] and other Israeli restrictions."  *Id.* at 10.  ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████

██ ████████████████████████████████████████████████████

██████████████████████████████████████████████

██ ████████████████████████████████████████████████████

██████████████████████████████████████████████████

██ ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

██ ████████████████████████████████████████████████████

██████████████████████████████████████████████

██ ████████████████████████████████████████████████████

1  ████████████████████████████████████████

2  █ ████████████████████████████████████████

3  ███████████████████████

4  Dkt. No. 235-4, Ex. P at 3–8. ██████████████████████████

5  ███████ Plaintiffs filed a motion to compel.  Dkt. No. 235-2.

6  **D.   The February 2024 Order: The Court Orders NSO to Produce Documents It**

7  **Concedes Are Sufficiently Important and Specific, as well as Documents**

8  **Regarding "Relevant Spyware," Despite Israeli Law Restrictions**

9  Having already ruled that Israeli law restrictions do not insulate NSO from discovery, the

10  Court entered the February 2024 Order, which compelled NSO to produce certain documents.  The

11  Court began the February 2024 Order by ordering NSO to produce the documents it conceded were

12  important and specific.  Dkt. No. 292 at 3.  Turning to the disputed categories, the Court adopted

13  Plaintiffs' definition of "Relevant Spyware," as "any NSO spyware targeting or directed at Whatsapp

14  servers, or using Whatsapp in any way to access Target Devices."  *Id.* at 3.  In response to the parties'

15  dispute over the timeframe for document production, the Court concluded that "at this stage of the

16  case, the *Richmark* factors weigh in favor of production for 'all relevant spyware' for a period . . .

17  from April 29, 2018 to May 10, 2020."  *Id.* at 4.  In doing so, the Court left open whether Plaintiffs

18  could expand the timeframe of this request, noting: "[i]f, after reviewing the relevant spyware from

19  that timeframe, plaintiffs are able to provide evidence that any attack lasted beyond that timeframe,

20  plaintiffs may seek further discovery at that time."  *Id.*  The Court rejected NSO's argument that any

21  document production "should be limited to the installation layer of the alleged spyware," and ordered

22  NSO to "produce information concerning the full functionality of the relevant spyware," including

23  how NSO spyware accessed users' devices and extracted information from those devices.  *Id.*

24  The Court also ordered NSO to supplement its responses and objections to Plaintiffs' requests

25  for admission ████████████████████████████████████████

26  ████████████████████████████████  *Id.* at 7.  On August 25, 2023, NSO

27  represented to the Court ████████████████████████████████

28

6

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████████

6 ██████████████   The Court did not impose any sanction "in light of NSO's representation that it pre-

7 served the relevant information on the AWS server."  Dkt. No. 358 at 7.

8 **E.    The August 2024 Order: The Court Clarifies That NSO Must Produce Pegasus**

9 **Code Despite Israeli Law Restrictions**

10 On August 1, 2024, in response to another motion to compel, the Court "clarif[ied] that the

11 previous order's reference to 'full functionality' was indeed intended to require NSO to produce

12 Pegasus computer code."  Dkt. No. 358 at 6.  In so doing, the Court rejected NSO's argument that

13 the Court did not previously order NSO to produce Pegasus code.  Dkt. No. 345 at 1.

14 **F.    NSO Refuses to Produce Information It Agreed to Produce, and Information**

15 **Regarding the Full Functionality of the Relevant Spyware**

16 NSO has only produced approximately 4,868 documents.  Block Decl. ¶ 10.  ██████████

17 ██████████████████████████████████████████████████████████

18 ██████████████████████████████████████████████████████████

19 ██████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 Further, NSO refused to produce any computer code to Plaintiffs' counsel in the United

22 States.  ████████████████████████████████████████████████████

23 ██████████████████████████████████████████████████████████

24 ██████████████████████████████████████████████████████████

25 ██████████████   *See* Ex. H (Aug. 23, 2024 Ltr. from R. Blecher to R. Lehmann).[5]  ████████

26 _____

[5]  Israeli counsel's appearance in this proceeding, in turn, was necessary to permit their access to
27   the Highly Confidential – Attorneys' Eyes Only documents as to which their advice was sought.
   *See* Dkt. No. 132 § 7.3(a).

28

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████   ██████████████████████████████████████

████████████████████████████████████████████████████

### G.   Procedural History

On September 12, 2024, Plaintiffs sent NSO a letter outlining deficiencies in NSO's production to date, and requested that NSO remedy these deficiencies. Ex. K (Sept. 12, 2024 Ltr. from C. Cagney to A. Craig). On September 20, 2024, NSO provided a letter response, which did not address all the deficiencies raised by Plaintiffs. Ex. L (Sept. 20, 2024 Ltr. from A. Craig to C. Cagney). Plaintiffs moved to enlarge time to file discovery-related motions, in order to allow the parties to exhaust the meet-and-confer process before bringing disputes to the Court. *See* Dkt. No. 388. The Court granted Plaintiffs' motion on September 27, 2024, and gave the parties until October 2, 2024 to file any discovery-related motions. *See* Dkt. No. 394. The parties met-and-conferred on September 30, 2024, but could not resolve all disputes. Block Decl. ¶¶ 17–19. This motion followed.

## ARGUMENT

Under Rule 37 of the Federal Rules of Civil Procedure, "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Those orders may include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," or "rendering a default judgment against the disobedient party." *Id*.

---

6   On September 20, 2024, NSO's counsel in the United States told Plaintiffs' counsel in the United States that ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Ex. L (Sept. 20, 2024 Ltr. from A. Craig to C. Cagney) at 1–2.

## I.     NSO Refused to Comply with the Court's Discovery Orders

"As a condition precedent to imposing sanctions pursuant to Federal Rule of Civil Procedure 37 the Defendants must have violated a Court Order."  *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012); *see also Wanderer v. Johnston*, 910 F.2d 652, 657 (9th Cir. 1990) (explaining that sanctions are appropriate where a party or someone under the party's control fails to produce documents or things as ordered by the court).  The motives behind a party's noncompliance with a court order—including its intention to comply with another country's laws—do not excuse the noncompliance, and "are relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply." *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958).  Here, NSO has violated the Court's Orders by refusing to produce computer code showing the full functionality of its spyware, any internal communications, or financial information beyond attorney-created representations.  Moreover, NSO's refusal to answer deposition questions on purported relevance grounds, as instructed by NSO's counsel, misinterprets the Court's Orders and violates the Federal Rules of Civil Procedure.

### A.     NSO Refused to Produce Computer Code Showing the Full Functionality of the Relevant Spyware

In a case centered on NSO's development and deployment of computer code to access Plaintiffs' servers, NSO refused to produce the computer code itself.  The August 2024 Order required NSO to produce the computer code underpinning any of NSO's spyware targeting or directed at WhatsApp servers, or using WhatsApp in any way to access Target Devices, despite NSO's continued insistence that Israeli law prevented the code from being exported beyond Israel's borders.  *See* Dkt. No. 358 at 6.  In response, NSO refused to produce a single line of computer code to Plaintiffs within the United States—                                                                                       

                                                                *See* Ex. N (Gazneli Tr.) at 12:8–13:2, 15:5–12 (

                                          ).  Instead,

### 1.   NSO Refused to Produce Code Showing Full Functionality of Relevant Spyware

Plaintiffs have discovered that NSO's Pegasus spyware █████████████████

████████████████████████████████ ███ ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Therefore, NSO has not,

and has not purported to, comply with the Court's Orders that it produce code reflecting the "full

functionality" of Pegasus and all other "relevant spyware."  Dkt. No. 358 at 6.

### 2.   NSO Refused to Produce Code to Plaintiffs' Counsel in the United States

Not only has NSO refused to produce all of the required code, but its purported production

of a portion of the required code is insufficient and violates this Court's orders. ███████████

████████████████████████████████████████████████████

That falls far short of what this Court ordered and what the Federal Rules of Civil Procedure require.

This Court has rejected NSO's argument ████████████████████████████

████████████████████████████████████████████████████

████, and held that NSO was obligated to produce discovery "despite the DECL and other Israeli

restrictions."  Dkt. No. 233 at 10.

NSO's representation is questionable given its extensive use outside of Israel, but in any

event, the Court held that export control restrictions do not excuse NSO's obligation to produce the

---

[7] ████████████████████████████████████████████

code in this U.S. litigation.  In the August 2024 Order, the Court explained that it "already balanced those considerations as part of the *Richmark* analysis, and concluded, in spite of the export controls and other restrictions, that production of 'information sufficient to show the full functionality of all relevant spyware' was 'not excused' because 'that information is sufficiently important and specific' to require production under *Richmark*."  Dkt. No. 358 at 6 (citing Dkt. 292 at 5).

NSO violated the August 2024 Order. ██████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████ When presented with this deficiency, ███████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████ Ex. J (Sept. 4, 2024 Ltr. from A. Craig to C. Cagney) at

2.  NSO's other suggestion—███████████████████████████████—finds no prece-

dent in any U.S. litigation, and ignores the Court's *Richmark* analysis, which required production

"despite" (not subject to) Israeli law restrictions.

Moreover, ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███ violates the requirement that documents be produced in "reasonably usable form."  Fed. R. Civ.

P. 34(b)(2)(E)(ii) ("If a request does not specify a form for producing electronically stored infor-

mation, a party must produce it in a form or forms in which it is ordinarily maintained or in a reason-

ably usable form.").  District courts have repeatedly ruled that producing documents in foreign loca-

tions falls short of the requirements under the Federal Rules.  *See Rambus Inc. v. Hynix Semiconduc-

tor Inc.*, 2007 WL 9653194, at *6 (N.D. Cal. Sept. 25, 2007) (finding that defendant's offer for plain-

tiffs to inspect computer code in Korea was not reasonable and imposed an undue burden on plain-

tiff); *Sayta v. Martin*, 2019 WL 666722, at *2 (N.D. Cal. Feb. 19, 2019) ("Mr. Sayta does not have

the right to determine unilaterally where production will be made or to demand that Mr. Martin travel

to India in order to inspect documents."); *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 2012 WL

7783405, at *1 (C.D. Cal. Apr. 23, 2012) ("In the court's view, requiring plaintiff's counsel to view

the source code at a distant location or in a relatively inaccessible environment, and prohibiting them from copying for possible future use the portions they deem to be relevant, is impractical.").

### 3. NSO's Corporate Designee on Technical Issues Consulted Source Code In Preparation for Testimony, Underscoring the Code's Importance and Usefulness

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████.  While in this case NSO's production obligation stems from a Court order, ████████████████████████████████████████████████████

████████████████████████  *See Converse v. Vizio, Inc.*, 2019 WL 3322383, at *2 (W.D. Wash. July 23, 2019) (ordering production of non-privileged documents reviewed by corporate representative to prepare for Rule 30(b)(6) deposition); *accord Seven Seas Cruises S. DE R.L. v. V. Ships Leisure Sam*, 2010 WL 5187680, at *3 (S.D. Fla. Dec. 10, 2010).

### B. NSO Refused to Produce Communications That the Court Ordered Produced

In December 2023, ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████  Dkt. No. 235-4, Ex. P at 3–8.  In the February 2024 Order, the Court ordered NSO to produce all of these communications by the close of fact discovery.  Dkt. No. 292 at 3.

Now that fact discovery has closed, NSO has not complied with the February 2024 Order.  As

to several categories, NSO has not produced a single responsive document.  For example, NSO has not produced any communications with Westbridge, its affiliated U.S. sales agent who marketed NSO's products in California (among other places).[8]  Nor has NSO produced any communications regarding ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████    More broadly, NSO has refused to produce internal communications, as the Court ordered, but instead produced isolated documents from NSO's centralized files.  ██████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████    *See* Block Decl. ¶ 10.  NSO has not explained ██████████████████████

████████████████████████████████████████

        Moreover, NSO's testimony shows that responsive communications existed and likely contained relevant information.  For example, ███████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████    Ex. O (Eshkar Tr.) at 65:10–66:20, 97:1–16, 191:21–192:2.  Mr. Gazneli testified ████████████████████████████████████████████████████████

███████████████████████████████████████████████████    Ex. N (Gazneli Tr.) at 133:4–11.  ████████████████████████████████    and the Court ordered NSO to produce them, but NSO refused to do so.

**C.**    **NSO Refused to Produce Financial Documents That the Court Ordered Produced**

        NSO also refused to produce key "financial information," Dkt. No. 176-2 at 8, including one of the most important financial documents that Plaintiffs requested: a list of the prices that NSO used when selling Pegasus spyware.  This price list—a document that NSO kept in the ordinary course of business, ███████████████████████████████████████████████████████████

---

[8]    Westbridge and two of its former employees (all of whom are represented by NSO's counsel) have produced certain relevant communications with NSO.  This limited production confirms that NSO's employees did communicate internally about relevant topics, and thus that NSO has violated the February 2024 Order by refusing to produce additional responsive documents.

1  ████████████—would have helped Plaintiffs' experts link NSO's profit and revenue to NSO's sale

2  of spyware.  It would also have helped Plaintiffs' experts attempt to test or verify ████████████

3  ████████████████████.  Both Mr. Shohat and Sarit Bizinsky Gil, NSO's Vice

4  President of Global Business Operations, testified ████████████████████████

5  ████████████████████ Ex. P (Shohat Tr.) at 98:14–99:24; Ex. Q (Gil Tr.) at 99:12–

6  100:13 ████████████████████████████████████

7  ████████████████████████████████████).  Ms. Gil

8  testified ████████████████████████████████████

9  ████████████████████████████████████

10  ████████████████████████████████████

11  ████████████████████ Ex. Q (Gil Tr.) at 98:25–104:18.  NSO's refusal to

12  produce ████████ frustrated Plaintiffs' ability to develop expert reports, and has prejudiced Plain-

13  tiffs' attempts to seek the proper damages for NSO's unauthorized access to Plaintiffs' computers.

14  **D.    NSO Refused to Answer Deposition Questions**

15  NSO improperly treated the Court's Orders *granting* certain of Plaintiffs' requests for discov-

16  ery as if they were a protective order *limiting* discovery to those requests. ████████████

17  ████████████████████████████████████

18  ████████████████████████████████████

19  ████████████████████████████████ ████

20  ████████████████████████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████

24  ████████████████████████████████████

25  ████████████████████████████████████

26  ████████████████████████████████████

27  ████████████████████████████████████

28

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████

4 █████████████████████████████████

"As a rule, instructions not to answer questions at a deposition are improper." *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 365 (N.D. Cal. 2000). "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). NSO improperly treated the February 2024 Order, which *granted Plaintiffs' motion to compel* the production of certain categories of documents across certain timeframes, as a protective order. None of the Court's discovery Orders, including the February 2024 Order, discussed depositions or set limits on deposition topics. Courts have consistently refused to classify such orders as "limitation[s] ordered by the court" under Rule 30(c)(2). *See, e.g.*, *Vasquez v. Leprino Foods Co.*, 2019 WL 1934015, at *5 (E.D. Cal. May 1, 2019) (holding that counsel improperly instructed a witness not to answer based on relevance where "the Court did not define or otherwise specify any limit on the [] deposition" of that witness); *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 2019 WL 356805, at *4–5 (N.D. Ill. Jan. 29, 2019) (holding that court's order denying certain document requests did not apply to deposition questioning and did not provide counsel with justification to instruct witness not to answer questions); *Hernandez v. Lynch*, 2019 WL 6998774, at *3 (C.D. Cal. June 18, 2019) (where "discovery order did not address the scope of the depositions . . . Counsel may not instruct deponent not to answer questions on the grounds that they are attempting to enforce a court order under Rule 30(d)(3)").

## II.   NSO's Refusal to Comply with the Court's Orders Requires Terminating Sanctions

Terminating sanctions, in the form of a default judgment against NSO, are appropriate here because NSO disregarded multiple Orders involving discovery going to the heart of the case. The appropriateness of such sanctions is underscored by public reporting—which NSO has not denied—reflecting its own role in bringing about the purported restrictions on its ability to participate in discovery. Setting the public reporting to the side, NSO's conduct shows it has willfully chosen not to

comply with the Court's discovery Orders.  Terminating sanctions are therefore appropriate.

**A.     NSO Willfully Refused to Comply with the Court's Order**

A court can terminate an action under Rule 37(b)(2)(A)(v) for a willful violation of a court's order.  All that is required to show willfulness, bad faith, or fault is "disobedient conduct not shown to be outside the control of the litigant."  *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993).  Even though NSO has invoked foreign law obstacles to complying with the Court's Orders, the Court can order terminating sanctions and default judgment given the nature of NSO's non-compliance.  *See* Restatement (Third) of Foreign Relations Law § 442(1)(b) (1987) ("Failure to comply with an order to produce information may subject the person to whom the order is directed to sanctions, including finding of contempt, dismissal of a claim or defense, or default judgment, or may lead to a determination that the facts to which the order was addressed are as asserted by the opposing party."); *see also Conn. Gen. Life. Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1095 (9th Cir. 2007) (the phrase "terminating sanctions" means a default judgment under Rule 37).

A court can impose sanctions "on a party that has failed to comply with the order for production . . .  in cases of deliberate concealment or removal of information or of failure to make a good faith effort" to secure permission from the foreign government to disclose the information.  Restatement (Third) of Foreign Relations Law § 442(2)(b); *see also Richmark*, 959 F.2d at 1479.  The party asserting the blocking statute as a defense must "make an affirmative showing of its good faith in seeking permission to disclose the information."  *Id.*; see also Restatement (Third) of Foreign Relations Law § 442 cmt. h (requiring "serious efforts before appropriate authorities of states with blocking statutes to secure release or waiver from a prohibition against disclosure.").

NSO cannot show it made good-faith efforts ███████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████  That alone is enough for this Court to conclude that NSO's violation of this Court's Order was willful.  Further, public reporting that NSO ████████████████████████████
██████████████████████████████████████████████████████████████████████[9]

---

[9]   *See* Davies & Kirchgaessner, Rueckert & Pfenniger, Amnesty International, *supra* note 3.

NSO has not engaged on this issue.  At the direction of counsel, NSO's witnesses, including their

Chief Executive Officer, ███████████████████████████████████████████████████████

██████████████████████████████ Ex. P (Shohat Tr.) at 250:3–9 ████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

████████████████████████████████

    NSO's conduct in discovery indicates that it is hiding behind Israeli law restrictions.  For

instance, ███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ In doing so, NSO deliberately took steps to

impede Plaintiffs' access to relevant discovery—indeed, discovery that the Court had specifically

ordered NSO to produce.

    In addition, the record calls into question NSO's candor when it attempted to narrow the time

frame for document discovery. ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

---

[10]  Davies & Kirchgaessner, *supra* note 3.

17

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ███████████████████████████████████████████████████

4 ███████████████████████████████████████████████████

5 ███████████████████████████████████████████████████

6 ███████████████████████████████████████████████████

7 █████████████████████████████████████████████

NSO's conduct mirrors that of the defendant in *Richmark*, where the Ninth Circuit upheld the most severe sanction available based on the defendant's failure to make an affirmative showing of a good-faith effort to obtain a waiver from the Chinese government.[11]  The defendant in that case invited the foreign government to block U.S. discovery by "point[ing] out to the Ministry the legal provision it felt barred disclosure." *Richmark*, 959 F.2d at 1479.  If the press reports are true, this is precisely what NSO did in this case.  Given the absence of any good-faith effort, the district court in *Richmark* "acted within its discretion in sanctioning [defendant] for its noncompliance." *Id.*  Even ignoring the public reports, NSO's refusal to provide information about ███████████████ ████████████████████████ prevents NSO from showing a good-faith effort.  For this reason, the Court should find that NSO willfully refused to comply with the Court's discovery Orders.

**B.    Terminating Sanctions Are Appropriate**

Because NSO's discovery violations were willful and NSO acted in bad faith, the Court can proceed to weighing five factors in determining whether to impose terminating sanctions: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).  Here, all factors favor imposing terminating sanctions.

---

[11]  The defendant in *Richmark* had already been subject to a default judgment for failing to appear. *Id.* at 1471–72.  The Ninth Circuit's decision affirmed the district court's contempt order for the defendant's refusal to provide post-judgment discovery.

18

### 1.  *Expeditious Resolution of Litigation*

The public interest in resolving litigation expeditiously weighs in favor of terminating sanctions here.  *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999).  Plaintiffs filed their complaint on October 29, 2019, Dkt. No. 1, and first served discovery on June 2, 2020, Dkt. No. 116-2.  NSO has refused to comply, and has repeatedly sought to delay participating in discovery.  Most recently, on February 15, 2024, NSO requested an additional six months to complete fact discovery, which it claimed was necessary to comply with the foreign law issues that had prevented it from producing documents to date.  *See* Dkt. No. 292 at 7.  Even with the benefit of added time, NSO has refused to comply with the Court's discovery Orders.  Under these circumstances, this factor favors dismissal.  *See Choudhuri v. Wells Fargo Bank, N.A.*, 2017 WL 5598685, at *6 (N.D. Cal. Nov. 21, 2017) ("case has been pending for over two years, and [party's] failure to cooperate in discovery has already resulted in two postponements of the deadlines"); *Arellano v. Blahnik*, 2019 WL 2710527, at *8 (S.D. Cal. June 28, 2019) ("this factor weighs decidedly in favor of dismissal" when "[t]here have been multiple requests for extensions and modification of scheduling orders in this case as a result of party's failure to engage in discovery").  NSO's "delay in reaching the merits . . . is costly in money, memory, manageability, and confidence in the process."  *Allen v. Bayer Corp. (In re Phenylpropanolamine (PPA) Prods. Liab. Litig.)*, 460 F.3d 1217, 1227 (9th Cir. 2006).

### 2.  *Court's Need to Manage Its Docket*

Second, terminating sanctions would serve the Court's interest in managing its docket.  Since this litigation returned to this Court in January 2023, the parties have repeatedly sought the Court's intervention, in large part based on NSO's refusal to meaningfully participate in discovery.[12]  Courts faced with far fewer discovery disputes than present here have found sufficient grounds for terminating sanctions.  *See Newpark Mall LLC v. Crge Newpark Mall, LLC*, 2016 WL 742009, at *5 (N.D.

---

[12] *See, e.g.*, Dkt. No. 170 (NSO's motion for protective order to avoid producing documents); Dkt. No. 176 (NSO's amended motion for protective order to avoid producing documents); Dkt. No. 209 (joint letter brief regarding NSO's failure to produce documents); Dkt. No. 215 (NSO's motion to dismiss for *forum non conveniens*); Dkt. No. 235 (Plaintiffs' motion to compel production of documents); Dkt. No. 318 (Plaintiffs' motion to obtain depositions of NSO's employees); Dkt. No. 335 (Plaintiffs' motion to compel discovery regarding the AWS server).

Cal. Feb. 25, 2016) (finding that factor favored terminating sanctions where defendants' behavior necessitated extensive motion practice on discovery issues); *White v. Gonzales*, 2024 WL 1659896, at *4 (N.D. Cal. Apr. 16, 2024) (finding that factor favored terminating sanctions where "court has had to address multiple notices and motions of discovery disputes and issue multiple orders").

### 3. Risk of Prejudice to Plaintiffs

Third, NSO's refusal to comply with the Court's Orders has prejudiced Plaintiffs' ability to litigate their case. A party suffers prejudice if the violation of the court orders impairs its ability to go to trial or threatens to interfere with the rightful decision of the case. *Allen*, 460 F.3d at 1227. Generally, "failure to comply with an order to produce specific discovery materials creates a sufficient risk of prejudice to satisfy this factor." *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1147 (9th Cir. 2024); *accord Allen*, 460 F.3d at 1227. The risk of prejudice to Plaintiffs is particularly high when, as here, NSO has refused to produce documents or allow testimony on issues central to the case. *See Wilson v. Allison*, 2023 WL 7174235, at *3 (N.D. Cal. Oct. 30, 2023) (imposing terminating sanctions when defendants were deprived of opportunity to "fully understand [plaintiff's] claims and learn what evidence supports his claims"); *see also Arutyunyan*, 93 F.4th at 1147 (justifying terminating sanctions where particular discovery materials "could reasonably be thought to contain relevant information").

For instance, NSO's refusal to comply with the August 2024 Order to produce computer code shields from discovery the full functionality of NSO's spyware, including how it targets Plaintiffs' servers. Moreover, NSO's withholding of discovery may frustrate Plaintiffs' ability to respond to whatever defenses NSO may assert. As a further example, NSO's refusal to produce internal communications unfairly limits Plaintiffs' inquiry into how NSO developed its sophisticated attacks targeting Plaintiffs' computers, including as to the full extent of NSO's theft, misappropriation, and/or reverse-engineering of Plaintiffs' technology. NSO's refusal to answer questions about its research methods has also deprived Plaintiffs of information that may show NSO's violations of federal or state law, and/or additional breaches of the WhatsApp Terms of Service. Ex. N (Gazneli Tr.) at 141:2–142:4. Finally, NSO's refusal to provide discovery beyond May 10, 2020 is directly relevant

20

to the parties' dispute regarding the appropriateness of injunctive relief, which is based on a substantial risk of future harm.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).  Here,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████

### 4.  *Disposition on the Merits*

As the Court has previously recognized, public policy usually supports disposing of cases on the merits and weighs against imposing terminating sanctions.  *See Newpark Mall*, 2016 WL 742009, at *5.  However, "[d]istrict courts in this circuit [] have found that disposition of cases on their merits is not furthered by litigants who refuse to provide discovery needed for preparation of a defense against his claim."  *White*, 2024 WL 1659896, at *5.  Here, NSO has taken several steps to prevent a decision on the merits, including the multiple discovery violations described above.  ███████████ ███████████████████████████████████  In addition, NSO's conduct throughout the discovery period, such as its refusal to provide crucial evidence or non-executive witnesses for depositions, has frustrated a merits-based decision.  NSO should not be able to prevent the full and fair resolution of this case, and then avoid sanctions on that same basis.

### 5.  *Availability of Less Drastic Sanctions*

A court considering this factor may examine: (1) whether the court has considered lesser sanctions; (2) whether the court tried lesser sanctions; and (3) whether the court warned the recalcitrant party about the possibility of case-dispositive sanctions.  *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1170 (9th Cir. 2012).  More broadly, this is not a case where additional court orders may spur NSO into compliance.  NSO has already been ordered to produce the discovery at issue here, and refused to comply with these Orders.  The Court even warned NSO of the risks of refusing to comply with its Orders.  That warning was unheeded, and NSO's refusal to comply was willful.  There is no reason to think that yet another Order seeking NSO's compliance will change its behavior.

NSO has also attempted to find loopholes in this Court's orders, ███████████████

1

2                                                                          NSO did that without notice to Plaintiffs,

3   and without seeking leave or clarification from the Court, even though the Court had just recently

4   clarified the scope of its previous Order on "relevant spyware."  As this Court has previously recog-

5   nized, there is no need to "impose less drastic sanctions" when "there do not appear to be any less

6   drastic sanctions available."  *Newpark Mall*, 2016 WL 742009, at *5 (ordering terminating sanctions

7   where "[d]efendants did not respond to the discovery requests; they were ordered to do so, but still

8   failed to respond; the discovery cutoff date has passed; and defendants provided no good cause for

9   their failure to comply with the discovery requests"); *see also Hester*, 687 F.3d at 1170 ("[I]n light

10  of the defendant's 'willful disobedience,' the district court 'could reasonably conclude that additional

11  lesser sanctions would be pointless'" (quoting *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112,

12  1116–17 (9th Cir. 2004)).  Providing NSO with more time to remedy its failure would add time and

13  cost to this litigation, with no clear benefit.

14         NSO's violation of Court Orders infects almost every aspect of the case.  Lesser sanctions

15  cannot fully address the unfair prejudice because there is no apparent means to determine precisely

16  what NSO has withheld or destroyed, and the categories of information that it refused to produce—

17  such as the computer code itself—go to the heart of the case.  Moreover, it is difficult for Plaintiffs

18  or the Court to craft a lesser sanction, given that NSO has not fully revealed how it may seek to

19  defend the case.  Because NSO has refused to comply with Court Orders encompassing a broad range

20  of discovery, the corresponding sanction should itself be all-encompassing.

21         Finally, the Court explicitly warned NSO months ago about potential sanctions.  At the Feb-

22  ruary 15, 2024 conference, the Court said it "would not feel at all reluctant to impose sanctions if

23  [NSO] decide[s] they don't want to do it[,] if I give them the amount of time so that they can do it."

24  Ex. B (Feb. 15, 2024 Hr'g Tr.) at 70:20–23.[13]  NSO elected to ignore this Court's Orders going to

25

26  [13]  In addition, with respect to the Pegasus code in particular, the Court denied Plaintiffs' prior mo-
        tion for sanctions on the assumption that NSO had preserved, and would produce, the Pegasus
27      code itself.  *See* Dkt. No. 358 at 7.  This specific warning counsels in favor of sanctions now that
        NSO has refused to produce this code in the United States.

28

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 4:19-CV-07123-PJH

1  discovery at the heart of this matter anyway.  This Court imposed terminating sanctions under similar

2  circumstances in *Newpark Mall*, where "the court previously explicitly advised defendants that fail-

3  ure to comply with discovery well might result in the filing of a motion for default judgment," and

4  defendants nonetheless failed to comply with their discovery obligations.  2016 WL 742009, at \*5.

5  **C.    If the Court Finds That Terminating Sanctions Are Not Appropriate, It Should**

6  **Order Evidentiary Sanctions**

7       If the Court does not find terminating sanctions to be appropriate, it should nonetheless direct

8  that certain facts are established.  Rule 37(b)(2)(A) allows the Court to "direct[] that the matters

9  embraced in the order or other designated facts be taken as established for purposes of the action, as

10  the prevailing party claims" or "prohibit[] the disobedient party from supporting or opposing desig-

11  nated claims or defenses, or from introducing designated matters in evidence."  *See Choudhuri*, 2017

12  WL 5598685, at \*8–9 (imposing evidentiary sanctions based on party's failure to "make a meaningful

13  production of documents").  In order to establish issue sanctions, the disobeying party's noncompli-

14  ance need not be willful or in bad faith.  *See, e.g.*, *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585,

15  589 (9th Cir. 1983).  Adverse findings on factual issues would be particularly appropriate here be-

16  cause there is a "reasonable assumption that the party resisting discovery is doing so because the

17  information sought is unfavorable to its interest.  In such a case, the sanction merely serves as a

18  mechanism for establishing facts that are being improperly hidden by the party resisting discovery."

19  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001).

20       NSO argues that there is insufficient evidence in the record to grant summary judgment, but

21  this is the very evidence NSO has refused to provide.  Even on the current discovery record, NSO is

22  wrong, but NSO should not benefit from its discovery misconduct.  Giving any credence to NSO's

23  arguments, and to whatever arguments NSO may advance in opposition to Plaintiffs' motion for

24  summary judgment, would unfairly prejudice Plaintiffs, and allow NSO to profit unfairly from its

25  misconduct.  The Court should thus direct the following facts as established.

26       ***Targeting of Plaintiffs' California-based servers.*** ████████████████

27  ████████████████████████████████████████████████

28

23

████████████████████████████████ NSO's argument is meritless and the Court previously rejected it.  *See* Dkt. No. 111 at 23 (rejecting NSO's jurisdictional argument based on absence of "allegation or argument that NSO selected the location of the server").  At the summary judgment stage, NSO again challenges jurisdiction while refusing to produce discovery that may help Plaintiffs establish jurisdiction.  For example, NSO refused to produce documents or answer questions about NSO's research efforts, which may show NSO exploring the location of WhatsApp's servers.  Ex. N (Gazneli Tr.) at 141:21–142:4 ████████████████████.  Having shielded discovery into its research, NSO should not be able to obtain favorable rulings from the limited information in the record.  The Court should find that NSO targeted Plaintiffs' California-based servers.

***Location of third-party servers***. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ The Court ultimately ruled that NSO could withhold discovery on its server architecture "at this time," on the assumption that NSO would provide information regarding "the full functionality of the alleged spyware."  Dkt. No. 292 at 5.  As explained above, NSO has refused to provide discovery regarding "the full functionality" of Pegasus ████████ ████████████████████████, refused to produce agreed-upon documents, and instructed witnesses not to answer deposition questions.  ████████████████████████████████████████████████████ Ex. N (Gazneli Tr.) at 131:11–13. ████████████████████████████████████████████████████ ████████████████████████████████████████ Here too, NSO highlights the lack of evidence while refusing to produce the evidence itself.[14]  The Court should

────────────────

[14] ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████

1    find that NSO knowingly stored Pegasus code on California-based servers.

2    ***Relationship with Westbridge*.**  In its motion for summary judgment, ███████████

3    ████████████████████████████████████████████████████████████████

4    ███████████████████████████    NSO wishes this was the case but saying it does not

5    make it so.  On one hand, Westbridge produced limited documents, which showed NSO and West-

6    bridge employees routinely colluding.  On the other hand, NSO refused to provide communications

7    between NSO and Westbridge, which would further support the agency and/or alter ego relationship

8    between Westbridge and NSO.  Because NSO refused to produce this discovery despite being ordered

9    by the Court to do so, the Court should find that Westbridge was an alter ego of NSO, and that

10   Westbridge employees were agents of NSO and acting at NSO's direction.

11   ***Use of Pegasus by NSO's customers*.**  ███████████████████████████

12   ███████████████████████████████████████    Plaintiffs cannot

13   test this assertion because NSO refused to produce any information about its customers' roles and

14   responsibilities with respect to the operation of Pegasus.  ███████████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████    The Court should there-

17   fore preclude NSO from arguing that its customers operated Pegasus.

18   ***Additional issues to be determined*.**  NSO has yet to respond to Plaintiffs' motion for sum-

19   mary judgment or disclose defenses it may seek to assert at trial. Accordingly, Plaintiffs cannot iden-

20   tify at this time all the ways NSO may attempt to unfairly benefit from its violations of the Court's

21   Orders.  Plaintiffs therefore respectfully request leave to seek further relief if necessary.

22                                **CONCLUSION**

23          NSO violated this Court's discovery Orders going to information at the core of this litigation

24   and did so willfully.  For the reasons stated above, if the Court finds that the limited discovery pro-

25   duced in this case does not suffice for the entry of judgment as a matter of law, it should enter a

26   default judgment against NSO, or enter other appropriate relief.

27

28

1

Dated:  __October 2, 2024__                    Respectfully submitted,

2

DAVIS POLK & WARDWELL LLP

3

4

By:  _/s/ Micah G. Block_

5

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com

6

7

8

9

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
        antonio.perez@davispolk.com
        craig.cagney@davispolk.com
        gina.cora@davispolk.com
        luca.marzorati@davispolk.com

10

11

12

13

14

15

16

17

18

19

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

20

21

22

23

24

25

26

27

28

26