October 2, 2024

    Re:    *WhatsApp LLC. v. NSO Group Technologies Limited*, 4:19-CV-07123-PJH
            DISCOVERY MATTER

The Honorable Phyllis J. Hamilton
United States District Court for the Northern District of California
1301 Clay Street
Oakland, CA 94612

Dear Judge Hamilton:

Plaintiffs WhatsApp LLC and Meta Platforms, Inc. (together "Plaintiffs"), and third parties Westbridge Technologies Inc. ("Westbridge"), Joshua Shaner, and Terry Divittorio (collectively with Westbridge, "Third Parties") submit this joint letter regarding Plaintiffs' intention to move to compel non-party Westbridge to produce responsive and non-privileged documents. The parties met and conferred by videoconference on this issue several times since the subpoena was served on June 5, 2020, including on August 11, 2023, June 26, 2024, and September 30, 2024.  Plaintiffs explained their position in letters, including on August 3, 2023, August 23, 2023, February 13, 2024, April 5, 2024, April 29, 2024, and June 11, 2024.

***Plaintiffs' Position***:

Westbridge[1] is the U.S. affiliate of Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. (together, "Defendants" or "NSO") and a distributor of NSO's spyware products in the United States.  Westbridge was served with a subpoena on June 5, 2020 at its corporate headquarters in Bethesda, Maryland.  Among other things, the subpoena, as modified during the parties' meet and confers, sought "All documents and communications with Defendants concerning: (a) the development, marketing, testing, or deployment of any spyware or exploit, including but not limited to Pegasus and Phantom, that (directly or indirectly) targets or monitors the data, devices, or personal information of any Facebook or WhatsApp users; and (b) the development, marketing, testing, or deployment of any spyware or exploit, including but not limited to

---

    [1] This letter seeks relief only as to Westbridge.  Plaintiffs object to the participation of third parties Joshua Shaner and Terry Divittorio, who each produced documents pursuant to subpoenas separately served on each of them.  Although all three third parties share the same counsel with Defendants, Defendants' counsel should not be permitted to mix-and-match its clients to satisfy their separate discovery obligations, particularly while simultaneously insisting, on the merits, that each is separate and wholly independent from Defendants.

Pegasus and Phantom, designed or intended to access, transmit, modify, collect, or otherwise process any data using Plaintiffs' servers or apps."

On March 1, 2023, Westbridge agreed to produce communications with Defendants "during the period January 2018 through May 2019 in Westbridge's possession, custody, and control, if any exist, concerning the development, marketing, testing, or deployment of the Pegasus technology alleged to have been used with respect to the 'Target Devices' described in the Complaint." Following this Court's February 23, 2024 Order compelling NSO to produce the same communications (Dkt. No. 292), Plaintiffs made clear that any limitation to the "Target Devices," rather than all "Relevant Spyware," was improper, and asked Westbridge's counsel (which is also counsel to Defendants) to describe the searches conducted for its productions.

In a June 18, 2024 letter, Defendants indicated that "NSO has possession of certain Westbridge email accounts" and "NSO is in the process of reviewing those accounts to determine whether they include any information that Westbridge agreed to produce in its responses" to the subpoena, but "because those accounts are stored in Israel, they will require the same process of review and approval by the Government of Israel as other NSO documents." On September 15, 2024, Westbridge completed this production.

Despite agreeing to produce its communications with Defendants from at least January 2018 through May 2019, Westbridge's production still contained few substantive email communications from that time period. Defendants' own production is similarly lacking in communications with Westbridge.

After reviewing the production made on September 15, and in light of representations that Westbridge made about the completeness of its production of communications in a prior draft of this letter served on September 16, Plaintiffs sought to confer with Westbridge to try to resolve, or narrow, this dispute. Indeed, Plaintiffs specifically referenced Westbridge's production in its motion to enlarge its time to file discovery disputes (Dkt. No. 388 at 1-2) as a reason why they needed to confer further, and the Court granted that motion (Dkt. No. 394). While that motion was pending, Westbridge refused Plaintiffs' requests to meet and confer on this issue.

After the Court granted Plaintiffs' motion to enlarge time, Plaintiffs immediately sought to meet and confer again on this issue and Westbridge agreed. During those recent meet-and-confer discussions, **Westbridge confirmed that it possesses additional responsive documents that it is withholding**, including (to quote Westbridge's counsel) "a spreadsheet that appears to set forth the phone numbers and monthly SIM card costs for various SIM cards used with sales phones" and contains "the area code 202 number" that NSO used as part of its unauthorized access of Plaintiffs' servers. *See* Dkt. No. 1 ¶ 38. Because the 202 number was one of the 1,400 Target Devices described in the complaint, and the withheld document apparently confirms it was a

"sales phone" owned and paid for by Westbridge, it is responsive to Plaintiffs' request for documents and communications "concerning the . . . marketing, testing, or deployment of the Pegasus technology alleged to have been used with respect to the 'Target Devices' described in the Complaint."

Plaintiffs understand that Westbridge identified this additional document after searching specifically for the 202 number, something that Westbridge's search terms apparently did not include even though the 202 number was referenced in the complaint as one of the 1,400 Target Devices targeted by NSO in May 2019, and was a focal point of Plaintiffs' subpoenas to the Third Parties.  Moreover, despite Plaintiffs' repeated requests, Westbridge has refused to disclose the manner in which it searched its email records for responsive communications.  Westbridge's counsel confirmed in meet-and-confer discussions that it ran "key-word searches" and reviewed only communications that contained those "key words," but Westbridge refuses to disclose the "key words."  And Westbridge's view (described below) that the withheld spreadsheet above is not "responsive" raises further questions about the responsiveness criteria Westbridge applied to the hits on those "key words."

"[S]electing search terms and data custodians should be a matter of cooperation and transparency among parties and non-parties." *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) (citation omitted).  What is now clear is that either Westbridge's undisclosed "key words," its responsiveness criteria, or both are unduly narrow.  They did not capture the document noted above, and communications produced by non-party Westbridge employees Terrence DiVittorio and Joshua Shaner[2] indicate that there was a significant number of communications between Westbridge and NSO about Relevant Spyware from January 2018 through May 2019.  The paltry number of substantive emails or communications produced by Westbridge from that time period, and the confirmation that a search for just the 202 number referenced in the complaint uncovered additional, responsive documents, demonstrates the deficiency of Westbridge's still-undisclosed searches.

Westbridge's failure to produce all responsive communications is material and prejudicial to Plaintiffs, including because Defendants have moved for summary judgment arguing, among other things, that Westbridge is not an alter ego of Defendants and Westbridge's efforts to sell NSO's products in the United States and California were not subject to NSO's control.  Plaintiffs are entitled to discover Westbridge's communications with Defendants to develop the record regarding the level of day-to-day control Defendants actually exercised over Westbridge.  Neither Defendants nor Westbridge should be

---

[2] Westbridge cannot avoid its obligations under the subpoena to produce its own business records by relying on productions made by its former employees DiVittorio and Shaner that happened to be retained on their personal devices.

permitted to make representations about Westbridge's relationship to Defendants without providing full discovery about that relationship.

Westbridge should be compelled to produce all its communications with Defendants from January 2018 through May 2019 that relate to Relevant Spyware.  In the current draft of this letter, Westbridge claims it is no longer asserting any Israeli law objections to production.  But to the extent Westbridge seeks to assert any such limitation again in the future (and if that is even a relevant objection for a U.S. company served with a subpoena in the United States), this Court should compel Westbridge to produce those communications under *Richmark*, just as it compelled NSO to produce the same communications that NSO had agreed were important and specific.  (Dkt. No. 292 at 3; Dkt. No. 260-3 at 17).

***Third Parties' Position:***

Plaintiffs' motion to obtain discovery from third parties' is untimely and should be denied.  In the event that the Court believes Plaintiffs' motion is timely, the Third Parties ask the Court to permit it to file an opposition describing in detail the efforts of Westbridge Technologies Josh Shaner, and Terry DiVittorio ("Third Parties") to provide all agreed documents that the Third Parties were able to locate after reasonable and diligent searches.

The Third Parties have filed a motion for clarification that the Court's Order extending time to file discovery motions to October 2, 2024, should not apply to motions against third parties.  [Dkt. No. 404.]  The Court's Order indicates that it intended only to allow discovery motions brought by the parties against each other relating to the sufficiency of the "opposing party's productions," [Dkt No. 394 at 1:24-26], and Plaintiffs' motion to extend time (as well as their proposed reply) focused entirely on Defendants' production efforts to date and made no mention of bringing motions against third parties. [Dkt Nos. 388, 392-1.]  If the Court finds that motions against third parties filed after September 20, 2024 are timely (which it should not), the Third Parties will then provide their opposition explaining why their production of 2,042 documents comprising 6,183 pages is both fully responsive to what Westbridge agreed to produce in response to Plaintiffs' subpoena *and constitutes everything responsive in the possession not only of Westbridge itself, but also of former Westbridge employees Terry DiVittorio and Josh Shaner, that they were able to find after an exhaustive search.*  In other words, should the Court issue an order compelling additional production of documents, the compliance with that order would be a statement that all documents that the Third Parties agreed to produce and were able to locate after reasonable and diligent searches have already been produced.  For the avoidance of doubt, there are no Israeli law objections applicable to this dispute.

Plaintiffs could easily have filed this motion before September 20, as a joint letter was fully briefed far in advance of that date.  On September 7, 2024, Plaintiffs sent to the Third

Parties their portion of a joint discovery dispute letter, which included all of the issues related to Westbridge contained above.  The Third Parties, including Westbridge, provided Plaintiffs with their portion of the joint letter brief on September 16, 2024—four full days before the discovery motion cutoff.  Plaintiffs could have filed the joint letter at any time between September 16, 2024 and September 20, 2024.  Plaintiffs simply chose not to, possibly because their argument that Westbridge produced "few substantive email communications" does not provide a basis for an order compelling more discovery.

Westbridge has searched all of its emails and other files for documents responsive to what they agreed to produce, and Westbridge has in fact produced all such responsive documents (including emails).  Plaintiffs refuse to accept that Defendants and Westbridge simply did not communicate frequently with each other by email.  Rather, as the 2,000+ pages of mobile messages produced by Mr. Shaner and Mr. DiVittorio reveal, Defendants communicated primarily by mobile message with those Westbridge employees.  Westbridge itself had no record of most of those communications, but Westbridge produced all the records of such communications that it had, as did Mr. Shaner and Mr. DiVittorio.  In the event the Court thinks this Motion is timely and seeks a further response, the Third Parties will provide one.

Plaintiffs appear to believe they have a "smoking gun":  the fact that Westbridge counsel informed them there exists a spreadsheet exists listing SIM card numbers (including the "202 number") and the monthly costs thereof.  That does not mean, as Plaintiffs conclude, that "Westbridge confirmed that it possesses additional responsive documents that it is withholding."  (Bolded in original.)  **This singular document is not responsive to Westbridge's agreement to produce documents "concerning the development, marketing, testing or deployment of [Pegasus]."**[3]  An internal document showing the amount of money that Westbridge spent on SIM cards is not responsive to the agreed-upon scope of the subpoena.  Nonetheless, in an attempt to resolve this dispute, Westbridge agreed to Plaintiffs' counsel's request that Westbridge search its document repositories using "the 202 number" itself as the search term.  Westbridge reported back that this *single document* exists.  While plainly non-responsive, Westbridge agreed to provide the document to Plaintiffs if it would resolve the dispute.  Plaintiffs rejected that very reasonable offer, electing to file this joint letter instead, and claiming that the existence of the document somehow proved that Westbridge's document searching was inadequate.  It does not, and Plaintiffs' motion should be denied.

Moreover, because deposition and document discovery obtained from Plaintiffs shows that Plaintiffs' theory of personal jurisdiction (that Defendants knowingly targeted Plaintiffs'

---

[3] Notably, Plaintiffs' subpoena to Westbridge included two document requests relating to the "202 number": Documents relating to the purchase, use or termination of it, and documents sufficient to describe all persons who used it.  Westbridge objected to those requests, and Plaintiffs dropped them.

servers located in California) is completely counterfactual, the Court should hold any motion seeking third party discovery in abeyance until after such time as it rules on Defendants' motion to dismiss and for summary judgment for lack of personal jurisdiction [Dkt. No. 396-2].  Plaintiffs have the burden of proof as to personal jurisdiction, which proof plaintiffs typically possess before filing a case in a particular forum in order to support the jurisdictional allegations in their complaint.  Any notion that jurisdictional discovery is needed five years into the litigation—particularly against a third party that is plainly not an alter ego of Defendants [Dkt. No. 396-2 at 14-16]—is one the Court should flatly reject.

Respectfully submitted,

By: /s/   *Micah G. Block*
Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:   (212) 701-5800
Email: greg.andres@davispolk.com
           antonio.perez@davispolk.com
           craig.cagney@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:   (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*

By: /s/   *Aaron S. Craig*
Joseph N. Akrotirianakis (SBN 197971)
Aaron S. Craig (SBN 204741)
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile:   (213) 443-4310
Email: jakro@kslaw.com
           acraig@kslaw.com

*Attorneys for Third Parties Westbridge Technologies, Joshua Shaner, and Terry Divittorio*