| | |
|---|---|
| **KING & SPALDING** | King & Spalding LLP<br>633 West Fifth Street<br>Suite 1600<br>Los Angeles, California 90071 USA |

October 2, 2024

The Honorable Phyllis J. Hamilton, Senior U.S. District Judge
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 3
1301 Clay Street, Oakland, CA 94612

Re:     Discovery Matter in *WhatsApp, Inc. et al. v. NSO Group Techs., Ltd. et al.*, 4:19-cv-7123

Dear Judge Hamilton:

Pursuant to the Court's Standing Order, the Parties hereby submit this joint letter brief regarding a discovery dispute.

### I.     NSO's Position – Plaintiffs Should be Sanctioned for Failing to Preserve Relevant Communications and Data on Employee Fact Witnesses' Mobile Phones.

Several of Plaintiffs' employee witnesses (including three listed on Plaintiffs' Initial Disclosures) recently testified that, during the time period relevant to this action, they used their personal and company-issued mobile phones to communicate with colleagues by text and WhatsApp messages about the matters that are the subject of the action. Those witnesses also testified that they were never asked to have their devices imaged to preserve those potentially relevant communications, and at least one of them (Aashin Gautam), has replaced the device that he used during 2019. *See* Exhs. 1-5. During the parties' September 30, 2024, conference, Plaintiffs' counsel refused to answer NSO's questions regarding the preservation of relevant mobile communications from Plaintiffs' productions. Instead, counsel blithely asserted "we don't have a preservation problem" and refused to provide any information about what, if any, preservation efforts Plaintiffs undertook with respect to mobile devices. Plaintiffs still refuse to provide a straight answer as to whether they have done anything to preserve the mobile devices of the witnesses identified in their initial disclosures beyond merely asking the witnesses to try their best to not lose their phones or any of the data on them. Even after multiple exchanges of this brief, Plaintiffs continue to use meaningless jargon like "warehousing of retired devices," instead of actually explaining to the Court and to Defendants what, if anything, they did to preserve employees' devices that they used for mobile messaging about matters related to this litigation (some of which were personal devices owned by the employees, *see* Exh. 4 at 31-32). If Plaintiffs

did in fact preserve the mobile devices of all of their witnesses, they have done nothing to explain the discrepancy between that and the testimony of their witnesses.[1]

The recent deposition testimony, coupled with Plaintiffs' failure to produce *any* WhatsApp messages or other text messages of *any* of their witnesses, strongly suggests that Plaintiffs failed to preserve this evidence. While NSO cannot know the full scope of relevant communications that were lost due to Plaintiffs' spoliation, at minimum, such communications likely relate to Plaintiffs' damages claim and were responsive to numerous of Defendants' well-taken production requests. NSO asks the Court to sanction Plaintiffs for failing to preserve these relevant data.

By way of example, Plaintiffs claim they are entitled to hundreds of thousands of dollars in damages in the form of compensation paid to 22 employees for work spent identifying and remediating gaping vulnerabilities in WhatsApp's code, and that sums paid for the time of those employees constitutes "loss" for purposes of the Computer Fraud and Abuse Act.[2] Defendants contend that not all the time spent by these employees is properly compensable as damages or loss. The mobile messages of these 22 individuals, including Andrew Robinson, Yuanyuan Wang, and Aashin Gautam (whose phones were not imaged, (Exhs. 1-3)), are relevant to show that the time spent by these employees on the days in question is not recoverable damages or loss. This is not duplicative of emails or other forms of discovery—Plaintiffs' employees use mobile communications for matters that they omit from those other methods of communication.

More broadly, the mobile messages of Plaintiffs' employees who worked on Plaintiffs' security vulnerability response and/or are listed on Plaintiffs' Initial Disclosures also fall within the scope of documents properly requested by Defendants in this litigation, including:

- RFP Nos. 101, 103-06, 125-34, 179-85, & 226-29 (Plaintiffs' investigation and remediation of security vulnerabilities allegedly exploited by Pegasus);
- RFP No. 112 (expenses plaintiffs claim to have incurred because of Defendants' conduct, including alleged exploitation of WhatsApp security vulnerabilities);
- RFP No. 162 (communications about Defendants);
- RFP Nos. 233-34 (documents supporting allegations that NSO used computers or servers located in California);
- RFP Nos. 99-100, 236-38 & 240 (NSO's alleged exceeding/circumvention of access limitations); and

---

[1] To the extent that Plaintiffs contend that they satisfied their preservation obligations merely by "issuing legal holds," as opposed to actually preserving the relevant mobile communications, that effort is plainly inadequate. *See, e.g., Hunters Capital, LLC v. City of Seattle*, 2023 WL 184208, at *7, *10 (W.D. Wash. Jan. 13, 2023) (sanctioning party where mobile communications were not preserved despite party's issuance of "a significant number of legal holds").

[2] Plaintiffs claim salaries, overhead and stock options in connection with 22 of their employees as damages. *See* Exhibit 6 (Trexler Exhibit 3.1).

- RFP Nos. 266-72 (concerning Plaintiffs' security measures and testing).

Plaintiffs' arguments that they had no duty to preserve this information because they unilaterally decided that they wouldn't produce it, is circular and wholly unpersuasive. Plaintiffs are not the arbiter of their preservation and production obligations. Nor does Plaintiffs' production of "tens of thousands of pages" of other documents excuse Plaintiffs' failure to preserve relevant mobile communications. *See also Youngevity Int'l v. Smith*, 2020 WL 7048687, at *4 (S.D. Cal. July 28, 2020) (awarding sanctions "because the ESI produced is no substitute for the potentially relevant information within lost text messages."); *accord Hunters Capital*, 2023 WL 184208, at *8 (awarding sanctions where party's "reconstruction of thousands of missing text messages, although helpful, cannot replace the text messages that it has not recovered").

Plaintiffs' argument that this motion should have been brought earlier is rich. Defendants only discovered the factual basis for this motion during depositions of Plaintiffs' witnesses—depositions that Plaintiffs prevented taking place until the last four weeks of the discovery period. (*See* Dkt. No. 391-2, describing Plaintiffs' unilateral postponing of eight depositions sought by Defendants beginning in January 2024). Had Plaintiffs not engaged in such gamesmanship, Defendants would have learned the truth months before, and would have promptly filed this motion.

Plaintiffs argue below that Defendants have failed to identify a "specific deficiency" in Plaintiffs' production. All of Defendants' production requests defined "Documents" as synonymous in meaning with FRCP 34(a)(1)(A), which definition clearly includes mobile communications ("electronically stored information … stored in any medium from which information can be obtained"). Plaintiffs then framed their RFP responses as follows: "Plaintiffs will produce non-privileged documents and communications related to Plaintiffs' damages that are responsive to this Request and are in Plaintiffs' possession, custody, or control." (RFP No. 112) However, and unbeknownst to Defendants until the belated depositions of Plaintiffs' employees began in late August 2024, Plaintiffs failed to produce, search for, or even preserve the mobile communications of the witnesses identified in their initial disclosures in responding to these requests.[3] That is a specific deficiency.

Plaintiffs' insinuation that NSO acquiesced to a proposal under which Plaintiffs would neither preserve nor produce relevant mobile communications is simply wrong as a matter of law and fact. *First*, under Rule 34, Plaintiffs had the obligation to conduct a reasonable search for documents (including mobile communications) responsive to NSO's requests. Plaintiffs could not avoid that obligation by unilaterally proposing, or even obtaining NSO's consent to, restrictive

---

[3] Defendants strenuously dispute Plaintiffs' claim that Defendants have long known that Plaintiffs were not preserving or producing mobile communications messages. Plaintiffs have produced many documents setting forth messages between employees that could have come from mobile devices. Defendants learned very recently that they did not come from mobile devices, but from an internal WhatsApp system known as "Workchat."

Page 4

search parameters (and NSO gave no such consent). *See S.E.C. v. Keener*, 2021 WL 4990955, at *1 (S.D. Fla. July 27, 2021) (holding that a party cannot avoid its obligations under Rule 34 by delegating selection of search terms to the requesting party or the court); *see also Measured Wealth Priv. Client Grp. LLC v. Foster*, 2021 WL 309033, at *3 (S.D. Fla. Jan. 29, 2021) (party cannot use search parameters to "exclude relevant discovery"). *Second*, NSO never agreed to or accepted Plaintiffs' search proposal, precisely because back in November 2023, NSO had no idea what forms of relevant communications Plaintiffs used or which Plaintiffs' employees were parties to those communications.

Under Federal Rule of Civil Procedure 37(e), sanctions are appropriate where "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Plaintiffs should have preserved the mobile communication messages of the witnesses on Plaintiffs' initial disclosures even before it filed this case. "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (N.D. Cal. 2022); *accord Hunters Capital*, 2023 WL 184208, at *7 ("Clearly, the parties had a duty to preserve relevant evidence, including text messages, as soon as a claim was identified."). Long before the litigation was filed, Plaintiffs knew the identity of the witnesses set forth on their Initial Disclosures and for whose time damages are now sought.

Where, as here, a party has notice that evidence is relevant to anticipated litigation, but fails to take reasonable steps to preserve it, the lost evidence is *presumed* to go to the merits of the case and to be adverse to the non-preserving party. *See Hunters Capital*, 2023 WL 184208, at *5 (citing *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009)). Plaintiffs' failure to preserve has prejudiced NSO, which is deprived of the non-preserved information and thus forced to rely on incomplete evidence to defend itself. *See Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995) (spoliation has threatened to interfere with the rightful decision in the case because it may "[force the plaintiff] to rely on incomplete and spotty evidence."). Further, where "a party is on notice that documents potentially are relevant but fails to take the steps necessary to preserve them," the Court may reasonably infer that the non-preserving party acted with intent. *RG Abrams Insurance v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 508 (C.D. Cal. 2022) (citing cases).

If the Court concludes that Plaintiffs' failure to preserve relevant communications and data from phones or other mobile devices was intentional, Rule 37(e)(2) authorizes a range of sanctions, including dismissal of the action, presuming the lost information to have been unfavorable to Plaintiffs, and instructing the jury, should the case reach trial, that it may or must presume that the information was unfavorable to Plaintiffs. *See* Fed. R. Civ. P. 37(e)(2); *RG Abrams*, 342 F.R.D. at 520-21 (adopting *irrebuttable* presumption, for purposes of any pre-trial, trial, or post-trial motions, that lost text messages were unfavorable to non-preserving party and ordering mandatory adverse inference instruction to jury). NSO submits that any or all of those Rule 37(e)(2) sanctions

would be appropriate here. If the Court finds that Plaintiffs' spoliation was *not* intentional, at the very minimum, the Court should impose sanctions sufficient to cure the prejudice to NSO. Fed. R. Civ. P. 37(e)(1). Such sanctions should include denying Plaintiffs' motion for summary judgment, precluding Plaintiffs from presenting testimonial evidence from witnesses whose mobile devices were not preserved, and permitting NSO to present the jury with evidence and argument concerning Plaintiffs' spoliation and instructing the jury that it may consider that evidence in rendering its decision on the claims, any or all of which would be appropriate here. *See Miramontes v. Peraton, Inc.*, 2023 WL 3855603, at *7 (N.D. Tex. June 6, 2023) (denying spoliating party's summary judgment motion as sanction, where lost information could have raised a dispute of material facts); *see also Youngevity*, 2020 WL 7048687, at *5 (noting discretion to preclude spoliating party from presenting certain evidence; allowing other party to present argument and evidence of non-preservation and issuing jury instruction). Finally, the Court should award monetary sanctions, including the attorneys' fees and other costs NSO has incurred as the result of the spoliation, including those incurred in connection with this request for sanctions. *See Youngevity*, 2020 WL 7048687, at *5 (awarding such monetary sanctions and affording movant 21 days to file fee motion).

Finally, Plaintiffs' suggestion that this motion was brought to deflect from their own, concurrently-filed sanctions motion, is preposterous. In fact, Plaintiffs' sanctions motion is itself an attempt to deflect attention away from the fact that Plaintiffs have allowed the court to harbor under what appears to be an obvious misrepresentation, for over four years, that this court has personal jurisdiction in this matter because Defendants knowingly targeted servers in California—a fact that is contrary to all available evidence.

If the Court decides that Civil Local Rule 7-8 is not superseded by the Court's directive to the parties to file letter briefs about discovery disputes rather than noticed motions (Feb. 15, 2024 Tr. at 42-43), the Court should direct Defendants to file a noticed motion.

## II.     Plaintiffs' Position

NSO's transparent attempt to manufacture a basis for spoliation sanctions should be rejected. Plaintiffs provided their document collection parameters in November 2023, but NSO only raised issues regarding the preservation of mobile messages last week, *see* Dkt. No. 391 at 5 n.1, named four specific individuals for the first time on September 30, and expanded their request to encompass 22 individuals just hours ago. Now, NSO purports to seek *sanctions* based on groundless speculation about supposed spoliation of documents they never timely pursued. The fact that NSO requested these documents only after Plaintiffs told NSO of Plaintiffs' anticipated motion for sanctions is telling. NSO's demands should be rejected.

Plaintiffs are willing to explain their preservation of mobile devices , but the Court need not reach that issue. The threshold question is whether the additional discovery that NSO seeks is proportional to the needs of the case. It is not. Any such records would be cumulative to the tens of thousands of pages of discovery Plaintiffs have already produced on the topics NSO asserted

were relevant. In any event, NSO's accusations of spoliation are wrong. Plaintiffs complied with their preservation obligations (as Plaintiffs' counsel told NSO's counsel on the parties' September 30 meet-and-confer), including by issuing legal holds and preserving mobile devices.

*Background*. On November 12, 2023, Plaintiffs disclosed their collection protocol for custodial documents. In that letter, Plaintiffs identified document custodians and stated that "for the time period from April 1, 2019 to October 29, 2019, Plaintiffs intend to review and produce emails hitting on" 10 search terms listed in the letter. NSO never provided a substantive response. Nor did it object to Plaintiffs' protocol. During the discovery period, Plaintiffs agreed to add certain additional custodians and repeatedly fielded NSO's *ad hoc* requests for additional documents. In sum, Plaintiffs made 38 document productions totaling over 29,000 documents.

*Argument*. NSO's request for wide-ranging mobile data is untimely, the request is disproportionate to the needs of the case, and NSO has no reason to accuse Plaintiffs of any preservation failure.

*First*, NSO's request is stale. As described above, Plaintiffs' initial proposal for search parameters, provided in November 2023, made clear that Plaintiffs would be collecting and reviewing email and centralized files. NSO refused to engage on Plaintiffs' search parameters, which "should be a matter of cooperation and transparency among parties and non-parties." *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013). Since then, NSO never asked Plaintiffs to collect and search a wide range of mobile messages until this week (after the close of document discovery) during a meet-and-confer. NSO now argues that WhatsApp messages would be responsive to various requests for productions that NSO served on **May 1, 2023**, and to which Plaintiffs first responded on **May 31, 2023**. *See* RFP No. 99–101, 103–106, 112, 125–134, 179–185.

NSO has long known that Plaintiffs did not agree to collect and produce mobile messages. In addition to the protocol discussed above, Plaintiffs objected to NSO's overbroad definition of "Documents," and told NSO that Plaintiffs would collect and produce documents by "employing search parameters . . . for the collection and production." Moreover, on May 29, 2024, Plaintiffs specifically told NSO that "Plaintiffs also object to these additional searches [of WhatsApp messages] as unduly burdensome and disproportional to the needs of the case" given that "Plaintiffs have collected and produced the emails, Workplace chats, Quips, Tasks, and SEVs through which their custodians primarily communicated for general business purposes, and specifically in connection with responding to NSO's attacks."[4] (NSO's reference to a recently served damages expert report is irrelevant. NSO requested damages-related documents in Request for Production No. 112 (served on May 1, 2023), and Plaintiffs produced the vast majority of responsive documents by April 2024.)

---

[4] Plaintiffs provided their position in response to NSO's request for Plaintiffs' WhatsApp messages with Citizen Lab. The Court previously denied NSO's motion for additional victim-related discovery. *See* Dkt. No. 358 at 3.

The Local Rules require a party seeking sanctions to move "as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate." N.D. Cal. Civ. L.R. 7-8(c)(2). NSO's monthslong delay in filing this motion violates this rule. *See, e.g.*, *Siebert v. Gene Sec. Network, Inc.*, 2014 WL 5808755, at *2 (N.D. Cal. Nov. 6, 2014) (denying motion for sanctions filed "eight months after the allegedly offending conduct").[5]

*Second*, NSO cannot meet the threshold requirement of showing that WhatsApp messages from the identified witnesses are relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). NSO asserts that the witnesses it identifies in its letter (Messrs. Robinson, Wang and Gautam) may have WhatsApp messages related to damages because they participated in investigation and remediation processes that partially underlie Plaintiffs' damages requests. But NSO offers only conclusory assertions as to why any of those individuals' WhatsApp messages would be relevant and non-duplicative of the tens of thousands of documents Plaintiffs have already produced. None of this justifies the requested expansion of Plaintiffs' search protocol to cover the expense of imaging and reviewing the contents of these witnesses' mobile devices.

Plaintiffs' produced documents include extensive detail regarding the technical investigation and remediation process.[6] As those documents show, Plaintiffs' engineers primarily used Workchat (an internal chat system) and Tasks (an internal project management tool) to communicate regarding their technical investigation of and response to NSO's attack. *See, e.g.*, Ex. 1 (Wang Dep. Tr.) 39:22–40:10 (describing that WhatsApp engineers primarily used Workchat in 2019). Plaintiffs produced responsive and non-privileged Workchats, Tasks, and emails consistent with the search parameters they disclosed to NSO. NSO questioned Plaintiffs' witnesses extensively about these documents and had a full opportunity to explore the details of those witnesses' participation in Plaintiffs' investigation and remediation processes. NSO has not identified any aspect of those processes that the produced communications did not capture. Plaintiffs stand by the evidentiary basis for their expert's analysis and calculations in this respect, and NSO has had a full opportunity to explore it in discovery.

*Third*, NSO's speculation about a failure to preserve is spurious and incorrect. As noted above, NSO has not shown any reason for this Court to examine Plaintiffs' preservation practices, or entertain sanctions. NSO is only entitled to discovery related to Plaintiffs' preservation practices if they can identify a "specific deficiency" in Plaintiffs' discovery responses. *Uschold v. Carriage Servs., Inc.*, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019). They have not done so.

---

[5] NSO's request is also improper in form. *See* N.D. Cal. L.R. 7-8 (requiring motion for sanctions to be separately filed and in compliance with Civil Local Rule 7-2); Judge Phyllis J. Hamilton, Standing Order Regarding Discovery Disputes, Protective Orders, and ESI Orders ("The Joint Letter may not exceed five pages.").

[6] To the extent NSO seeks WhatsApp messages related to victim identification and outreach from Mr. Gautam, the Court has already denied that relief. *See* Dkt. No. 358 at 4 ("[T]he court concludes that the pursuit of further discovery related to Citizen Lab and the identification of the alleged victims would not be proportional to the needs of the case at this time.").

Nonetheless, in the brief time since NSO raised this issue, Plaintiffs have confirmed the preservation of mobile devices (including by warehousing of retired devices) from the individuals that NSO listed earlier this week (including Messrs. Robinson, Wang, and Gautam) before NSO further broadened its position to encompass 22 custodians just hours before the filing deadline. Plaintiffs have not undertaken the expense and burden of imaging those retired devices or its employees' current devices.  They had no reason to, because those devices are outside the scope of Plaintiffs' collection protocol to which NSO never objected.  Notably, NSO never asked any witness whether they had deleted any WhatsApp message or any other document.  There is no reason whatsoever to speculate that any spoliation has occurred.

Sincerely,

Aaron Craig, Counsel for Defendants

Craig Cagney, Counsel for Plaintiffs

# Exhibit 1

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# Exhibit 2

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# Exhibit 3

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# Exhibit 4

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

# Exhibit 5

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# Exhibit 6

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**