1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
     *jakro@kslaw.com*
2   AARON S. CRAIG (Bar No. 204741)
     *acraig@kslaw.com*
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone:    (213) 443-4355
5   Facsimile:    (213) 443-4310

6   Attorneys for Defendants
    NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12   WHATSAPP INC., a Delaware corporation,        Case No. 4:19-cv-07123-PJH
     and FACEBOOK, INC., a Delaware
13   corporation,                                  **DEFENDANTS' OPPOSITION TO
                                                   PLAINTIFFS' MOTION FOR PARTIAL
14                    Plaintiffs,                  SUMMARY JUDGMENT**

15        v.                                       *[Filed concurrently with Declarations of
                                                   Terrence McGraw, Tamir Gazneli, Joseph N.
16   NSO GROUP TECHNOLOGIES LIMITED               Akrotirianakis, Col. Ty M. Shepard, and John
     and Q CYBER TECHNOLOGIES LIMITED,            Town and their attached exhibits]*
17
                      Defendants.                  Date:  November 7, 2024
18                                                 Time:  1:30 p.m.
                                                   Place: Courtroom 3, Ronald V. Dellums
19                                                        Federal Building & U.S. Courthouse,
                                                         1301 Clay Street, Oakland, California
20

21                                                 Action Filed: 10/29/2019

22

23

24

25   **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

26

27

28

───────────────────────────────────────────────

DEFENDANTS' OPPOSITION TO PLAINTIFFS'                     Case No. 4:19-cv-07123-PJH
MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page(s)

Introduction ................................................................................................................. 1

Argument ...................................................................................................................... 3

    I.      The Court lacks personal jurisdiction over NSO. ..................................... 3

    II.     Plaintiffs are not entitled to summary judgment on their breach of contract claim. 3

          A.     Plaintiffs do not prove NSO agreed to the WhatsApp TOS. ..............................3

          B.     There is a material dispute over whether NSO breached the TOS...................6

          C.     There is a material dispute over whether any breach damaged Plaintiffs. ........8

    III.    Plaintiffs are not entitled to summary judgment on their CFAA claims.................. 9

          A.     NSO did not access "target devices" at all. ....................................................9

          B.     NSO did not access WhatsApp servers "without authorization." ................... 10

          C.     NSO did not "exceed authorized access" to WhatsApp servers. ................... 15

          D.     NSO did not conspire with its government customers to violate CFAA. ....... 18

          E.     Plaintiffs cannot assert or prove a "password-trafficking" claim....................21

          F.     There is a material dispute over NSO's intent. ............................................... 22

          G.     There is a material dispute over whether Plaintiffs suffered "damage" or "loss." ...................................................................................................... 23

    IV.    Plaintiffs are not entitled to summary judgment on their CDAFA claim. ............. 24

    V.     There is a material dispute over whether Plaintiffs have unclean hands. .............. 25

Conclusion ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. v. City of Santa Clara*,
   2015 WL 5350412 (N.D. Cal. Sept. 14, 2015) ............................................................... 5

*Abu v. Dickson*,
   107 F.4th 508 (6th Cir. 2024) ............................................................ 14, 17, 22

*Albert's Organics, Inc. v. Holzman*,
   2020 WL 3892861 (N.D. Cal. July 10, 2020) ............................................................ 25

*Alvarez v. Hill*,
   518 F.3d 1152 (9th Cir. 2008) ............................................................ 21

*Andrews v. Sirius XM Radio Inc.*,
   932 F.3d 1253 (9th Cir. 2019) ............................................................ 24

*Apache Stronghold v. United States*,
   101 F.4th 1036 (9th Cir. 2024) ............................................................ 21

*Artifex Software, Inc. v. Hancom, Inc.*,
   2017 WL 4005508 (N.D. Cal. Sept. 12, 2017) ............................................................ 9

*Ash v. N. Am. Title Co.*,
   223 Cal. App. 4th 1258 (2014) ............................................................ 8

*AtPac, Inc. v. Aptitude Sols., Inc.*,
   730 F. Supp. 2d 1174 (E.D. Cal. 2010) ............................................................ 24

*Barrilleaux v. Mendocino Cty.*,
   2018 WL 3585133 (N.D. Cal. July 26, 2018) ............................................................ 15

*Benjamin v. B&H Educ., Inc.*,
   877 F.3d 1139 (9th Cir. 2017) ............................................................ 5

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ............................................................ 3, 4, 5

*Bettelheim v. Hagstrom Food Stores, Inc.*,
   113 Cal. App. 2d 873 (1952) ............................................................ 8

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
   2021 WL 3173736 (S.D.N.Y. July 26, 2021) ............................................................ 24

*Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*,
   2023 WL 5278654 (D. Md. Aug. 16, 2023) ............................................................ 10

*Brewster v. City of L.A.*,
    672 F. Supp. 3d 872 (C.D. Cal. 2023) ............................................................... 25

*CBS Inc. v. Merrick*,
    716 F.2d 1292 (9th Cir. 1983).............................................................................. 7

*CCC Info. Servs., Inc. v. Tractable, Inc.*,
    2023 WL 415541 (N.D. Ill. Jan. 25, 2023) ........................................................ 24

*Chabolla v. ClassPass Inc.*,
    2023 WL 4544598 (N.D. Cal. June 22, 2023) ..................................................... 4

*Chegg, Inc. v. Doe*,
    2023 WL 4315540 (N.D. Cal. July 3, 2023) ...................................................... 17

*Chisolm v. 7-Eleven, Inc.*,
    814 F. App'x 194 (9th Cir. 2020) ........................................................................ 5

*Cohodes v. Mimedx Grp.*,
    2024 WL 4353634 (N.D. Cal. Sept. 24, 2024) ................................................. 23

*In re Cty. of Orange*,
    219 B.R. 543 (C.D. Cal. Bankr. 1997) ................................................................ 8

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015)............................................................................. 6

*Delacruz v. St. Bar of Cal.*,
    2018 WL 3077750 (N.D. Cal. Mar. 12, 2018) .................................................. 18

*Dresser-Rand Co. v. Jones*,
    957 F. Supp. 2d 610 (E.D. Pa. 2013) ................................................................ 10

*EEOC v. Aramco*,
    499 U.S. 244 (1991)................................................................................... 19, 20

*El Omari v. Buchanan*,
    2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) .................................................. 24

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016)..................................................................... 14, 15

*Gonzales v. Koranda*,
    2024 WL 3861988 (E.D. Cal. Aug. 19, 2024) ................................................. 21

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ............................................................................. 9

*IAM v. OPEC*,
    649 F.2d 1354 (9th Cir. 1981)............................................................................ 20

*IJLSF, LLC v. It's Just Lunch Int'l*,
 2021 WL 3012850 (Cal. Ct. App. July 16, 2021) ................................................................ 8

*Jackson v. Amazon.com, Inc.*,
 65 F.4th 1093 (9th Cir. 2023) ..................................................................................... 4, 5, 6

*Joffe v. Google, Inc.*,
 746 F.3d 920 (9th Cir. 2013) .......................................................................................... 21

*Kiser v. Moyal*,
 2024 WL 4229936 (M.D. La. Sept. 18, 2024) ................................................................ 17

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
 2015 WL 1289984 (N.D. Cal. Mar. 20, 2015) ................................................................ 10

*Lews Jorge Const. Mgmt. v. Pomona Unif. Sch. Dist.*,
 34 Cal. 4th 960 (2004) ...................................................................................................... 9

*Lukasian House, LLC v. Ample Int'l, Inc.*,
 2012 WL 13009130 (C.D. Cal. Apr. 20, 2012) ............................................................... 24

*LVRC Holdings LLC v. Brekka*,
 581 F.3d 1127 (9th Cir. 2009) ................................................................................. *passim*

*Marshall v. Hipcamp Inc.*,
 2024 WL 2325197 (W.D. Wash. May 22, 2024) ............................................................... 3

*Massel v. SuccessfulMatch.com*,
 2024 WL 802194 (N.D. Cal. Feb. 27, 2024) ..................................................................... 4

*MetroPCS v. Rivera*,
 220 F. Supp. 3d 1326 (N.D. Ga. 2016) ........................................................................... 21

*Microsoft Corp. v. AT&T Corp.*,
 550 U.S. 437 (2007) ......................................................................................................... 19

*Morrison v. Nat'l Australia Bank*,
 561 U.S. 247 (2009) ......................................................................................................... 19

*Nadarajah v. Gonzales*,
 443 F.3d 1069 (9th Cir. 2006) ......................................................................................... 20

*Navajo Nation v. U.S. Forest Serv.*,
 535 F.3d 1058 (9th Cir. 2008) ......................................................................................... 21

*NetApp, Inc. v. Nimble Storage, Inc.*,
 41 F. Supp. 3d 816 (N.D. Cal. 2014) .............................................................................. 18

*Nexans Wires S.A. v. Sark-USA, Inc.*,
 319 F. Supp. 2d 468 (S.D.N.Y. 2004) ............................................................................ 24

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ................................................................................. 4

*Patel v. City of Long Beach*,
    564 F. App'x 881 (9th Cir. 2014) .......................................................................... 21

*Pickern v. Pier 1 Imports*,
    457 F.3d 963 (9th Cir. 2006) ................................................................................ 15

*Progressive Sols., Inc. v. Stanley*,
    2018 WL 1989547 (N.D. Cal. Mar. 8, 2018) .......................................................... 5

*Rocha v. Urban Outfitters, Inc.*,
    2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ............................................................ 4

*Sadlock v. Walt Disney Co.*,
    2023 WL 4869245 (N.D. Cal. July 31, 2023) ......................................................... 4

*Satcom Sol. & Res. LLC v. Pope*,
    2020 WL 4511773 (D. Colo. Apr. 20, 2020) ........................................................ 18

*Sellers v. JustAnswer LLC*,
    73 Cal. App. 5th 444 (2021) ................................................................................... 4

*Shaw v. United States*,
    580 U.S. 63 (2016) ............................................................................................... 23

*Sonico v. Charter Commc'ns, LLC*,
    2021 WL 268637 (S.D. Cal. Jan. 27, 2021) ........................................................... 5

*Sprint Sols. Inc. v. Pac. Cellupage Inc.*,
    2014 WL 12607836 (C.D. Cal. Apr. 28, 2014) ..................................................... 22

*Sylabs, Inc. v. Rose*,
    2024 WL 4312719 (N.D. Cal. Sept. 26, 2024) ..................................................... 24

*Temurian v. Piccolo*,
    2019 WL 5963831 (S.D. Fla. Nov. 13, 2019) ...................................................... 21

*Tenderloin Hous. Clinic, Inc.*,
    38 Cal. 4th 23, 50 (2006) ....................................................................................... 9

*Tijerina v. Alaska Airlines, Inc.*,
    2024 WL 270090 (S.D. Cal. Jan. 24, 2024) ........................................................... 5

*Union Pump Co. v. Centrifugal Tech. Inc.*,
    404 F. App'x 899 (5th Cir. 2010) ........................................................................... 5

*United States v. Ali*,
    718 F.3d 929 (D.C. Cir. 2013) ............................................................................. 19

*United States v. Bollinger*,
798 F.3d 201 (4th Cir. 2015)................................................................................. 20

*United States v. Clark*,
435 F.3d 1100 (9th Cir. 2006)............................................................................... 19

*United States v. Miller*,
953 F.3d 1095 (9th Cir. 2020)............................................................................... 23

*United States v. Nosal*,
844 F.3d 1024 (9th Cir. 2016)............................................................ 11, 12, 13, 14

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) (en banc)...................................................... 2, 16, 17

*United States v. Saini*,
23 F.4th 1155 (9th Cir. 2022) ............................................................................... 23

*United States v. Sidorenko*,
102 F. Supp. 3d 1124 (N.D. Cal. 2015) ................................................................ 20

*United States v. Thomas*,
877 F.3d 591 (5th Cir. 2017)................................................................................. 11

*United States v. Toscanino*,
500 F.2d 267 (2d Cir. 1974).................................................................................. 20

*United States v. Vasquez-Velasco*,
15 F.3d 833 (9th Cir. 1994)................................................................................... 19

*United States v. Weingarten*,
632 F.3d 60 (2d Cir. 2011).................................................................................... 20

*Van Buren v. United States*,
593 U.S. 374 (2021) .............................................................................. 2, 17, 21, 24

*Wages v. IRS*,
915 F.2d 1230 (9th Cir. 1990)................................................................................. 3

*Williams v. DDR Media, LLC*,
2023 WL 2314868 (N.D. Cal. Feb. 28, 2023) ........................................................ 4

*X Corp. v. Bright Data Ltd.*,
2024 WL 2113859 (N.D. Cal. May 9, 2024) .......................................................... 8

*Yukos Cap. S.A.R.L. v. Feldman*,
977 F.3d 216 (2d Cir. 2020).................................................................................. 23

vi

**Statutes**

18 U.S.C. § 1029 .............................................................................................. 22

18 U.S.C. § 1030(a)(2) ................................................................................. 2, 10

18 U.S.C. § 1030(a)(4) ................................................................................. 2, 10

18 U.S.C. § 1030(a)(6) ............................................................................... 21, 22

Cal. Civ. Code § 3300 ...................................................................................... 8

Cal. Penal Code § 502(e)(1) ........................................................................... 25

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................ 5

Fed. R. Civ. P. 32(a)(3) ................................................................................... 5

Fed. R. Civ. P. 37(c)(1) ................................................................................... 5

Fed. R. Civ. P. 56(d) ....................................................................................... 7

Fed. R. Civ. P. 56(f)(1) ................................................................................... 6

Fed. R. Evid. 1002 .......................................................................................... 5

**INTRODUCTION**

Plaintiffs provide WhatsApp, an encrypted messaging service that terrorists, human traffickers, and other criminals use to plan and commit serious crimes. Plaintiffs know this, but they purposely collect no information about who their users are and trumpet that they have no ability to review the messages or calls of the criminals to whom they provide powerful encryption technology, free of charge. As a result, governments that wish to stop crime and terrorism must use surveillance technology like Pegasus, a product NSO created and licenses exclusively to governments. Pegasus provides those governments—and only governments, never NSO—access to criminals' mobile devices to obtain evidence that services like WhatsApp would otherwise hide.

During the period relevant here, Pegasus functioned in part by sending WhatsApp messages to the mobile phones of targets of government investigations. When the target device processed the messages, the processing would cause the target device to download surveillance software from the government's servers. The government would then use the software to collect evidence from the target's device. Plaintiffs admit ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████.

Yet Plaintiffs, who have never sued anyone who used WhatsApp to promote terrorism, plan mass shootings, or exploit children for sex, has sued NSO for designing Pegasus and licensing it to governments who wish to stop those crimes. Cutting through Plaintiffs' obfuscation and technical jargon, the gist of their complaint is simple: Pegasus sent messages over WhatsApp that Plaintiffs did not *want* sent. Plaintiffs claim this harmless conflict with their subjective desires breached WhatsApp's Terms of Service ("TOS") and violated the Computer Fraud and Abuse Act ("CFAA") and California Comprehensive Computer Data Access and Fraud Act ("CDAFA").

Those claims are bunk, both legally and factually. And the thread holding them together is Plaintiffs' mischaracterization of how Pegasus worked. In Plaintiffs' telling, NSO created a phony WhatsApp program that sent phony WhatsApp messages disguised as real ones, messages that WhatsApp's servers would have rejected had they not been disguised. That is pure fantasy. The

1   truth, as revealed in the very evidence Plaintiffs cite, is that NSO ███████

2   ████████████████████████████  ████████████████████████

3   █████████████████████████████████████████.  Pegasus then ████████

4   █████████████████████████████████████████████████████

5   ██████████████████.  Those ███████████████████████████

6   █████████████████████████████████████████████████████

7   Although the ██████████████████████████████████████████

8   ███████.[1]  The reason WhatsApp ████████████████████████

9   █████████████.  It is that WhatsApp ████████████████████

10  ████████████████████████████████████████████.

11      For that reason alone, Plaintiffs cannot prove their claims.  But even if Plaintiffs' fictional

12  description of Pegasus were true, they *still* could not prove that Pegasus's use of WhatsApp servers

13  was "unauthorized" in any relevant sense.  That is because Plaintiffs *concede* that, at a minimum,

14  NSO was *always* allowed to ████████████████████████████████████

15  ████████████████████.   That permission, however limited, gave NSO "authorized access" both to

16  WhatsApp's servers as a whole and to the areas of those servers that process WhatsApp messages.

17  18 U.S.C. § 1030(a)(2), (a)(4).[2]  Even if Plaintiffs could prove NSO used its authorized access in

18  an unauthorized *way* or for an unauthorized *purpose*, that is not illegal hacking actionable under

19  CFAA.[3]  At worst, it might constitute a breach of WhatsApp's TOS, *if* Plaintiffs could prove NSO

20  agreed to the TOS and the TOS prohibited its conduct.  But Plaintiffs cannot prove that, either.

21      For all those reasons—plus, more fundamentally, the fact that this Court lacks personal

22  jurisdiction over NSO—the Court should grant NSO's pending motion for summary judgment.

23  (Dkt. 396-2.)  At least, though, the Court should deny Plaintiffs' motion and hold that a reasonable

24  jury could find in NSO's favor on all of Plaintiffs' claims.

25

26  [1] And ████████████████████████████████.  (Akro. Exh. A at 127:9-129:24, 131:2-132:16, 139:51-140:2, 151:16-152:9.)

27  [2] Unless noted, all statutory citations are to Title 18, U.S. Code and all emphases thereto are added.
    [3] *Van Buren v. United States*, 593 U.S. 374, 389-90 (2021); *United States v. Nosal* (*Nosal I*), 676

28  F.3d 854, 862-63 (9th Cir. 2012) (en banc); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133-35 (9th Cir. 2009).

1

**ARGUMENT**

2

**I.      The Court lacks personal jurisdiction over NSO.**

3

The Court should deny Plaintiffs' motion because, as explained in NSO's motion, Plaintiffs

4

cannot prove NSO purposefully directed any case-related conduct at California or the United States.

5

(Dkt. 396-2 at 8-18.)  This Court thus "lacks personal jurisdiction" over NSO and cannot "enter[]

6

a final judgment against [it]."  *Wages v. IRS*, 915 F.2d 1230, 1234 n.5 (9th Cir. 1990).

7

**II.     Plaintiffs are not entitled to summary judgment on their breach of contract claim.**

8

Plaintiffs cannot prove as a matter of law what they identify as the elements of their breach

9

claim.  (Dkt. 399-2 ("MSJ") at 5.[4])  A reasonable jury could find that (1) NSO never agreed to the

10

WhatsApp TOS, (2) NSO did not breach the TOS, (3) Plaintiffs waived the contractual provisions

11

they seek to enforce, and (4) any breach did not cause damage to Plaintiffs.

12

**A.      Plaintiffs do not prove NSO agreed to the WhatsApp TOS.**

13

Plaintiffs' evidence is not sufficient to prove NSO agreed to the WhatsApp TOS.  They rely

14

on a bare assertion "that agreeing to the Terms is necessary to create a WhatsApp account." (MSJ

15

6.) "[T]he act of setting up an account," however, "is insufficient evidence that [a user] manifested

16

assent to the terms of use." *Marshall v. Hipcamp Inc.*, 2024 WL 2325197, at *5 (W.D. Wash. May

17

22, 2024).  Rather, to prove consent to a company's TOS, the company must prove "a consumer

18

has actual knowledge" or "inquiry notice" of the contract's terms.  *Berman v. Freedom Fin.

19

Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).  Plaintiffs do not claim, and submit no evidence,

20

that NSO had actual knowledge of the WhatsApp TOS.  So they must rely on inquiry notice, which

21

requires them to prove that "(1) [they] provide[d] reasonably conspicuous notice of the terms to

22

which the consumer will be bound; and (2) the consumer t[ook] some action, such as clicking a

23

button or checking a box, that unambiguously manifest[ed] his or her assent to those terms." *Id.*

24

Plaintiffs do not submit sufficient evidence on either requirement for inquiry notice. The

25

"inquiry notice standard demands conspicuousness tailored to the ordinary user, not to the expert

26

user," and determining whether notice is conspicuous requires a fact-specific, detail-oriented

27

assessment how contractual terms are presented to a consumer. *Id.* at 856-57.  Any notice "must

28

---

[4] MSJ and evidentiary citations omit internal quotation marks and alterations and add emphasis.

be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it," which requires a factfinder to analyze the font, size, and color of a disclosure, as well as how the disclosure compares to the surrounding text and the overall design of a webpage.  *Id.*  A factfinder must also consider whether the terms are disclosed in a pop-up window or indirectly through a hyperlink, and whether the hyperlink is made "readily apparent" through "design elements" such as "the use of a contrasting font color (typically blue) and the use of all capital letters."  *Id.*  But even a "conspicuous hyperlink" in "close proximity … to relevant buttons" is insufficient when other design elements suggest a lack of conspicuousness.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177-79 (9th Cir. 2014).  Courts do not hesitate to find disclosures inadequate when they fail these requirements.[5]

Plaintiffs submit *no* evidence from which a factfinder could determine that they provided "reasonably conspicuous notice" of the WhatsApp TOS.  *Berman*, 30 F.4th at 856.  Plaintiffs do not submit any images of the WhatsApp sign-up process at any time, let alone from 2018-2019.  They provide no evidence of whether or how a user is informed that creating a WhatsApp account constitutes consent to the TOS; of the font, size, or color of any notice; of how any notice is presented within the context of the WhatsApp application or website; or of whether or how the hyperlink to the TOS was highlighted for users.  Without such evidence, Plaintiffs cannot prove they adequately disclosed the WhatsApp TOS.  *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099-1100 (9th Cir. 2023) ("Amazon failed to meet its burden to demonstrate mutual assent" when it "did not provide the court with a copy or description of any [contract] notice").

Plaintiffs similarly lack evidence that WhatsApp users "unambiguously manifest[] their] assent" to the TOS.  *Berman*, 30 F.4th at 856.  Plaintiffs' assertion that users "have to click a button" (MSJ 6) is insufficient.  "[M]erely clicking on a button … does not signify a user's agreement to anything," so "[t]he presence of an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound is critical."  *Berman*, 30 F.4th at 857-58 (cleaned

---

[5] *Massel v. SuccessfulMatch.com*, 2024 WL 802194, at *5 (N.D. Cal. Feb. 27, 2024); *Rocha v. Urban Outfitters, Inc.*, 2024 WL 393486, at *4-5 (N.D. Cal. Feb. 1, 2024); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *9-11 (N.D. Cal. July 31, 2023); *Chabolla v. ClassPass Inc.*, 2023 WL 4544598, at *4-7 (N.D. Cal. June 22, 2023); *Williams v. DDR Media, LLC*, 2023 WL 2314868, at *5 (N.D. Cal. Feb. 28, 2023); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 480-82 (2021).

1   up).[6]  The notice must be conspicuous, and it "must explicitly notify a user of the legal significance

2   of the action she must take to enter into a contractual agreement." *Id.* at 858.  But Plaintiffs submit

3   no evidence of the content or presentation of any supposed notice that "click[ing] a button" will

4   "demonstrate agreement of the [TOS]."  (MSJ 6.)  Without such evidence, Plaintiffs cannot prove

5   WhatsApp users unambiguously consent to the TOS.  *Jackson*, 65 F.4th at 1099-1100.

6        What little evidence Plaintiffs do submit is inadmissible.  First, Plaintiffs cannot rely on

7   Meghan Andre as a declarant because they did not disclose her as a witness under Rule 26.  (Akro.

8   Exh. G.)  As a result, they are "not allowed to use" her "to supply evidence on [their] motion."  Fed.

9   R. Civ. P. 37(c)(1); *Chisolm v. 7-Eleven, Inc.*, 814 F. App'x 194, 196 (9th Cir. 2020); *Benjamin v.*

10  *B&H Educ., Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017).[7]  Next, Plaintiffs cannot rely on the

11  testimony of their own corporate designee, Jonathan Lee, because it was not based on his personal

12  knowledge.  *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010);

13  *Tijerina v. Alaska Airlines, Inc.*, 2024 WL 270090, at *2-3 (S.D. Cal. Jan. 24, 2024).[8]  Mr. Lee

14  testified he has no personal knowledge of the sign-up process and was "entirely relying" on

15  "verbal[]" descriptions by two WhatsApp employees.  (Block Exh. 2 at 175:2-10, 176:23-177:13,

16  185:14-19.)  His testimony about those descriptions, therefore, is hearsay that Plaintiffs may not

17  use for their own motion.  Plaintiffs also may not rely on their experts' reports because they are all

18  unsworn.  (Block Exhs. 1, 12, 25, 26, 29); *Progressive Sols., Inc. v. Stanley*, 2018 WL 1989547, at

19  *8 (N.D. Cal. Mar. 8, 2018); *A.C. v. City of Santa Clara*, 2015 WL 5350412, at *9 n.4 (N.D. Cal.

20  Sept. 14, 2015).  And to the extent Plaintiffs' witnesses purport to describe the "contents" of the

21  WhatsApp application or website, that testimony violates the Best Evidence Rule.  Fed. R. Evid.

22  1002; *Sonico v. Charter Commc'ns, LLC*, 2021 WL 268637, at *6 (S.D. Cal. Jan. 27, 2021).

23        Even if it were admissible, Plaintiffs' evidence does not provide *any* information about how

24  WhatsApp visually notified users of its TOS, much less show that any such notice was conspicuous.

---

[6] Plaintiffs say a TOS provision provides this notice (MSJ 6), but that is circular. That provision
could bind WhatsApp users only if they agreed to the TOS in the first place, so notice must come
from *outside* the TOS. *Jackson*, 65 F.4th at 1100-01; *Berman*, 30 F.4th at 857-58.

[7] The failure to disclose Ms. Andre is anything but harmless; NSO would have taken her deposition
to learn what basis, if any, she has for her claims.

[8] *See* Fed. R. Civ. P. 32(a)(3) (only "[a]n adverse party" may use corporate designee testimony).

1   They simply assert *that* users agreed to the TOS, which is a bare legal conclusion.  *Jackson*, 65

2   F.4th at 1099-1100; (*see* Dkt. 399-5; Block Exh. 8 at 70:16-72:25; Exh. 16 at 326:9-327:9).  Mr.

3   Lee testified he did not even *review* any evidence and so knows nothing about the appearance of

4   WhatsApp's sign-up process.  (Block Exh. 2 at 176:23-177:3, 180:22-25.)  Moreover, he admitted

5   that users did not need to click on or read the TOS to sign up.  (*Id.* at 177:15-178:8.)[9]

6   In sum, Plaintiffs' evidence is insufficient to prove it properly notifies consumers that

7   signing up for WhatsApp constitutes consent to the WhatsApp TOS.  Plaintiffs thus cannot receive

8   summary judgment on whether NSO agreed to the TOS.  If anything, *NSO* is entitled to summary

9   judgment on that issue. Fed. R. Civ. P. 56(f)(1).

10   **B.      There is a material dispute over whether NSO breached the TOS.**

11   Plaintiffs also cannot prove as a matter of law that NSO breached the TOS.  As an adhesion

12   contract, the TOS must be interpreted against Plaintiffs.  *Daniel v. Ford Motor Co.*, 806 F.3d 1217,

13   1225 (9th Cir. 2015).  So interpreted, there is a dispute whether the TOS prohibited NSO's conduct.

14   **1.**  Plaintiffs first claim NSO breached TOS provisions against "reverse-engineering" or

15   "decompiling" the WhatsApp application (in tech-speak, the "WhatsApp client").  (MSJ 8.)  But

16   reverse-engineering, as commonly understood, involves commercial competition through

17   "manufacturing a similar product."  Oxford English Dictionary, *"Reverse-Engineer."*  NSO did not

18   do that.  Moreover, Plaintiffs cannot prove NSO ████████████████████████████████████

19   ████████████████████████.  Plaintiffs' corporate designee testified that the WhatsApp

20   client ████████████████████████████████████.  (Akro Exh. B at 111:15-113:11.)  Then,

21   ████████████████████████████████████████████████.  (*Id.* at

22   113:6-114:6; McGraw Exh. B ¶ 51.)  If NSO ████████████████████████████

23   ████████████████████████████████████, then Plaintiffs have no basis to argue NSO

24   was bound by any contractual prohibition on such conduct.  But Plaintiffs submit no evidence as to

25   ████████████████████████████████████████████████████████

26

27   [9] Plaintiffs reference the deposition testimony of NSO employee Ramon Eshkar and third-party witness Joshua Shaner, but neither testified they agreed to WhatsApp's TOS or that signing up for

28   WhatsApp required them to do so.  (MSJ 6; Block Exh. 8 at 70:16-72:25; Exh. 16 at 326:9-327:9.)  Also, Mr. Shaner worked for Westbridge (not NSO) so his testimony cannot prove what *NSO* did.

1    ████, so they cannot prove as a matter of law that NSO was prohibited from doing so at that time.

2         Plaintiffs also claim NSO breached TOS provisions prohibiting collecting user data "in any

3    impermissible or unauthorized manner"; requiring WhatsApp use "only for legal, authorized, and

4    acceptable purposes"; and prohibiting "illegal" uses.  (MSJ 8-11.)  But because NSO never operated

5    Pegasus (Akro. Exh. H ¶ 14), it never took or assisted any of the actions Plaintiffs contend would

6    violate these provisions.  Moreover, the words "impermissible," "unauthorized," and "acceptable"

7    are vague and must be interpreted against Plaintiffs.  While Plaintiffs claim ████████████████

8    ████████████████████████████████████████████████████████████████████████████████

9    ████████████████████.  (*Id.* ¶¶ 6-12.)  In addition, WhatsApp's system ████████████

10   ████████████████████, and NSO's conduct did not violate any law.  (*Infra* 9-23.)

11        Similarly, a jury could find NSO did not send "viruses or other harmful code" through

12   WhatsApp.  (MSJ 8-9.)  NSO, as distinct from its government customers, *never* transmitted *any*

13   code to nonconsenting WhatsApp users.  And "harmful code" is a subjective term that does not

14   naturally cover Pegasus.  Pegasus is a law-enforcement tool, at heart no different than wiretaps and

15   other lawful intercept tools used by governments throughout history.  (Town Exh. A ¶¶ 27-41, 64;

16   McGraw Exh. A ¶¶ 19-26.)  Indeed, the United States and other democracies commonly use digital

17   surveillance tools just like Pegasus.  (Shepard Exh. A ¶¶ 26-33; Town Exh. A ¶¶ 27, 48-53, 67-68;

18   Akro. Exhs. I-J.)  Such tools are not "viruses" and do not "harm[]" computers.

19        **2.**  Even if NSO had breached any TOS provisions, Plaintiffs do not argue they are entitled to

20   summary judgment on NSO's affirmative defense that Plaintiffs waived those provisions.  "The

21   existence of waiver is usually a fact question," *CBS Inc. v. Merrick*, 716 F.2d 1292, 1295 (9th Cir.

22   1983), and the facts would support a finding of waiver because there is no evidence Plaintiffs have

23   *ever* enforced *any* of the relevant TOS provisions against *any* WhatsApp user.  NSO sought discovery

24   about WhatsApp's enforcement of those provisions, and Plaintiffs failed to provide a single example

25   of enforcement.  (Akro. Decl. ¶ 12 & Exh. K.)[10]  That failure is particularly conspicuous when the

26   conduct that Plaintiffs claim violates the TOS is so widespread.  ████████████████████████

27   ───────────────

28   [10] Plaintiffs have also improperly refused to provide testimony relevant to waiver, which is the
     subject of a discovery dispute. (Dkt. 381.)  The Court should not grant Plaintiffs summary judgment
     on breach of contract without allowing additional discovery on waiver.  Fed. R. Civ. P. 56(d).

1　██████████████████████.  (McGraw Exh. B ¶¶ 51-52; Akro. Exh. B at 108:15-

2　110:1.)  Governments use WhatsApp in ways that would breach the TOS.  (Shepard Exh. A ¶¶ 34-

3　37; McGraw Exh. A ¶¶ 39-40.)  Criminals use WhatsApp to commit "impermissible," "unauthorized,"

4　and "illegal" acts.  (Shepard Exh. A ¶¶ 23-25, 37; Town Exh. A ¶¶ 61-62; McGraw Exh. A ¶ 152.)

5　Yet Plaintiffs have never enforced the TOS against *any* of that conduct.  A jury could find that non-

6　enforcement to be "so inconsistent with the intent to enforce the right as to induce a reasonable belief

7　that it has been relinquished."  *In re Cty. of Orange*, 219 B.R. 543, 563 (C.D. Cal. Bankr. 1997); *see*

8　*IJLSF, LLC v. It's Just Lunch Int'l*, 2021 WL 3012850, at *13-14 (Cal. Ct. App. July 16, 2021).[11]

9　　　　　**C.　　There is a material dispute over whether any breach damaged Plaintiffs.**

10　　　　　Finally, a reasonable jury could find that NSO's alleged breach of the WhatsApp TOS did not

11　damage Plaintiffs.  "[A] breach of contract without damage is not actionable."  *X Corp. v. Bright Data*

12　*Ltd.*, 2024 WL 2113859, at *10 (N.D. Cal. May 9, 2024) (cleaned up).  And while "nominal damages

13　may be available in the absence of actual damages, damages are not recoverable which are not

14　causally connected with the breach."  *Id.* (cleaned up).  The necessary causal connection is proximate

15　causation: foreseeable damages that, "in the ordinary course of things, would be likely to result" from

16　a breach.  Cal. Civ. Code § 3300; *see Ash v. N. Am. Title Co.*, 223 Cal. App. 4th 1258, 1268 (2014).

17　　　　　The only damages Plaintiffs claim NSO caused are "costs" they allegedly incurred in

18　"investigating and remediating" the vulnerability Pegasus used.  (MSJ 11.)  But even if fixing a

19　vulnerability *WhatsApp itself created* could qualify as damage—which is dubious—it is not the

20　kind of damage that would ordinarily follow from a breach of the TOS provisions on which

21　Plaintiffs rely.  Plaintiffs would not ordinarily suffer *any* harm from conduct aimed at WhatsApp's

22　*users*.[12]  The only TOS provision Plaintiffs invoke that could plausibly involve harm to Plaintiffs

23　are the prohibitions against reverse-engineering and decompiling the WhatsApp client.  But those

24　prohibitions are plainly designed to protect WhatsApp's trade secrets and intellectual property, so

---

25

26　[11] That WhatsApp's TOS include a boilerplate "no waiver" clause does not preclude waiver because

27　"[e]ven a waiver clause may be waived."  *Bettelheim v. Hagstrom Food Stores, Inc.*, 113 Cal. App.
2d 873, 878 (1952); *see* 13 Williston on Contracts § 39:36 (4th ed.).  Whether such a waiver occurred
here "is a question of fact to be determined by a jury."  *IJLSF*, 2021 WL 3012850, at *13.

28　[12] Plaintiffs agreed early in the case they would not claim reputational injury to support any legal
or equitable relief, in order to avoid producing discovery related to reputation.  (Akro Decl. ¶ 17.)

1   the foreseeable harms from a breach would be those ordinarily flowing from IP infringement: lost

2   profits, market dilution, and the like.  Plaintiffs claim no such damages.

3       Instead, Plaintiffs seek to recover costs far removed from any alleged breach.  NSO's

4   alleged ████████████████████████████████████ did not harm Plaintiffs at all.

5   Plaintiffs claim they were harmed only because NSO ████████████████████████████

6   ████████████████████████████████████, *then* licensed Pegasus to foreign

7   governments, which *then* used Pegasus, which *then* led WhatsApp to discover a preexisting

8   vulnerability in its system.  A jury could find that chain of events too long and unforeseeable to

9   satisfy proximate causation.  Restatement (First) of Contracts § 330 cmt. b; *Lews Jorge Const.*

10  *Mgmt. v. Pomona Unif. Sch. Dist.*, 34 Cal. 4th 960, 976-77 (2004).  Indeed, a reasonable jury could

11  find even *but-for* causation lacking, since NSO did not create the vulnerability, and Plaintiffs look

12  for and fix vulnerabilities in the ordinary course of their business, found the vulnerability here

13  through a project unrelated to NSO, and would have fixed the vulnerability ████████████████

14  ████████████ (Akro. Exh. B at 200:25-201:10, 302:8-310:21; Exh. C at 44:24-48:21.)

15      Plaintiffs also claim they are entitled to disgorgement (MSJ 11), but this is not a *fait*

16  *accompli*.  Under the case they cite, disgorgement is proper when the defendant not only "obtained

17  a benefit" but also deprived the plaintiff of "a corresponding benefit."  *Artifex Software, Inc. v.*

18  *Hancom, Inc.*, 2017 WL 4005508, at *4 (N.D. Cal. Sept. 12, 2017).  Plaintiffs were not deprived of

19  any corresponding benefit, and they do not argue otherwise.  The disgorgement they seek would also

20  be "grossly disproportionate" and an "unwarranted windfall," since they do not claim to have suffered

21  any meaningful harm from any breach.  *Tenderloin Hous. Clinic, Inc*., 38 Cal. 4th 23, 50 (2006).

22  **III.   Plaintiffs are not entitled to summary judgment on their CFAA claims.**

23      As explained in NSO's motion, NSO is entitled to summary judgment on Plaintiffs' CFAA

24  claims because Plaintiffs cannot prove NSO accessed any computer "without authorization" or in a

25  way that "exceed[ed] authorized access."  (Dkt. 396-2 at 21-23.)  At a minimum, however, a jury

26  could conclude NSO did not violate CFAA, a criminal statute that must be interpreted narrowly

27  "under the rule of lenity."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1200-01 (9th Cir. 2022).

28      **A.   NSO did not access "target devices" at all.**

9

Plaintiffs have no evidence NSO "accessed … target devices." (MSJ 12.) The undisputed record proves NSO's government customers alone operate Pegasus and make all decisions about how to do so. (Akro Exh. H ¶¶ 14-16; Dkt. 396-2 at 18-19.) Plaintiffs know the only devices to which NSO sent messages were those under NSO's own control. Indeed, Plaintiffs effectively *concede* NSO ███████████████████████████████████████████ (MSJ 20.) Plaintiffs argue that fact "is legally irrelevant" because NSO ██████████████, but all that shows (if anything) is that NSO ████████████████████████. Similarly, Plaintiffs' argument that NSO ███████████████████████████████████████ (*id.*) in no way suggests that NSO ever *operated* the technology.

That likely explains why Plaintiffs furtively pivot to asserting "NSO *caused* target devices to be accessed" by its government customers. (*Id.*) That is also false—NSO simply provides a tool, which its government customers alone decide to use or not—but it would not support a CFAA claim even if it were true. The CFAA provisions Plaintiffs invoke apply only when the defendant *himself* "accesses a computer without authorization or exceeds authorized access." § 1030(a)(2), (a)(4). They do not apply when the defendant allegedly causes *someone else* to access a computer.[13]

**B.     NSO did not access WhatsApp servers "without authorization."**

Plaintiffs also claim NSO unlawfully sent messages over WhatsApp servers, but the evidence proves NSO's use of those servers was not "without authorization." § 1030(a)(2), (a)(4).

**1.** As explained in NSO's motion, Plaintiffs cannot use a motion for summary judgment to resurrect the "without authorization" claim this Court previously dismissed. (Dkt. 396-2 at 21.) A "person uses a computer 'without authorization'" only "when the person has not received permission to use the computer *for any purpose*." *Brekka*, 581 F.3d at 1135 (emphasis added). As this Court correctly held, Plaintiffs cannot claim *both* that NSO agreed to WhatsApp's TOS *and* that NSO completely lacked authorization to use WhatsApp's servers for any purpose. (Dkt. 111 at 37.) Indeed, Plaintiffs *assert* NSO "had authorization to send messages … over WhatsApp's servers." (MSJ 15-16.) That forecloses their "without authorization" claim. (Dkt. 111 at 37.)

---

[13] *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, 2015 WL 1289984, at *4-5 & n.2 (N.D. Cal. Mar. 20, 2015); *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, 2023 WL 5278654, at *5 (D. Md. Aug. 16, 2023); *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013).

**2.**   Despite conceding NSO was authorized to send WhatsApp messages, Plaintiffs claim NSO ███████████████████████.   They argue NSO's authorization was ███████████████████████████████████████████████████████████████████████████. (MSJ 15-17.)   That theory is legally and factually baseless.

**a.**   There is no legal basis for Plaintiffs' theory of "limited" authorization.   Under CFAA, a person accesses a computer "without authorization" when they access the computer "without *any* permission *at all*."   *Brekka*, 581 F.3d at 1133 (9th Cir. 2009) (emphasis added).   As a result, someone can violate CFAA's "without authorization" prong only if they have "*no rights, limited or otherwise*" to access the computer.   *Id.* (emphasis added).   If they have even "limited" rights to access the computer, their access legally *cannot* be "without authorization" even if they "violate[] those limitations."   *Id.*   In other words, "access without authorization must be an all-or-nothing proposition."   *United States v. Thomas*, 877 F.3d 591, 596 (5th Cir. 2017).   For purposes of CFAA's "access" provisions, "degrees of authorization" simply do not exist.   *Id.*

That rule dooms Plaintiffs' theory.   Plaintiffs claim NSO had at least *some* authorization to send messages over WhatsApp servers.   (MSJ 15-16.)   Even if NSO's authorization had been ██████████████████████—and it was not—that still would not mean NSO had "no rights, limited or otherwise," to use WhatsApp servers.   *Brekka*, 581 F.3d at 1133.   For NSO's access to be "without authorization," it must have been prohibited from sending *any* WhatsApp messages through *any* means, ████████████████████.   And even under Plaintiffs' argument, NSO *always* had the right to send messages ████████████████.   That right, however "limited," means NSO's access to WhatsApp servers could not be "without authorization."   *Id.*

NSO's conceded authorization to access WhatsApp servers ████████████████ distinguishes *Nosal II*, the only case Plaintiffs cite for their theory.   (MSJ 17.)   In *Nosal II*, the defendant's "computer access was *categorically revoked*" by his former employer.   *United States v. Nosal*, 844 F.3d 1024, 1038 (9th Cir. 2016) (emphasis added).   The defendant thus had "no authorization to access [the employer's] computer system" *at all*, through *any* means.   *Id.* at 1036.   So, in the passage Plaintiffs pluck from context, the Ninth Circuit enforced the employer's "authority to control access to its computers and confidential information by *completely* excluding

1  "former employees *whose access had been categorically revoked*." *Id.* at 1035 (emphasis added).

2  But the court made clear that, when a person's access has been limited but *not* "categorically

3  revoked," he cannot be sued for "violating use restrictions" on his access. *Id.* at 1038.

4       Unlike in *Nosal II*, any requirement that NSO ███████████████████████████

5  ████████, if it existed, would not "categorically" prohibit NSO from using WhatsApp

6  servers. *Id.* It would be a mere "use restriction," *id.*, that ███████████████████████████

7  █████████████████. Even if NSO ████████████████████████████████████████, it still

8  did not access WhatsApp servers "without authorization." *Brekka*, 581 F.3d at 1133.

9       **b.** Plaintiffs' theory is also factually incorrect. For all their talk about a requirement to ███

10  ████████████████████████████████████████, Plaintiffs never identify the *source* of that

11  requirement. They simply say it exists because WhatsApp ████████████████████████████

12  ████████████████████████████. (MSJ 15). But those dots do not connect. That WhatsApp

13  █████████████████████████████████████████████████████████████████████████████

14  ███████████████████████████. The existence of Google's "official" web browser, Chrome,

15  does not mean, for example, that Microsoft Edge users are not authorized to run Google searches.

16       Indeed, Plaintiffs concede Pegasus accessed WhatsApp servers ███████████████████

17  ████████████████████████████. (MSJ 17.) They accuse NSO of █████████████████

18  █████████████████████████████████████████████████████████████████████████████

19  ████ (*id.*), but that is false and irrelevant. As the witness Plaintiffs cite clearly testified, ███

20  █████████████████████████████████████████████████████████████████████████████

21  █████ (Gazneli Decl. ¶ 5; *see* Akro. Exh. E at 185:16-188:11.) Even if NSO ████████████

22  █████████████████████████████████, Plaintiffs still do not identify *any* prohibition on doing

23  so. The NSO document they cite does not discuss ████████████████████████████████████

24  ██████████████████. (Block Exh. 24.) It discusses only ████████████████████████████

25  █████████████████████████████████████████████████████████████████████████████

26  █████████████████████████████████████████████. (*Id.* at -8958-8962.) But WhatsApp

27  ████████████████████████████████████. (McGraw Exh. A ¶¶ 130, 136-38; Exh. B ¶¶ 27-29.)

28       **c.** Plaintiffs also claim NSO acted "without authorization" because it ███████████████

█████████████████████████████████████████████. (MSJ 16.)  But here too, Plaintiffs cannot explain *why* ███████████████ constitutes accessing WhatsApp servers "without authorization."  Even if WhatsApp's client or servers ████████████████████████████ ████—that would be a purpose-based "use restriction," not a complete technological bar on *access*.  *Nosal II*, 844 F.3d at 1038.  Under Plaintiffs' theory, NSO still had the authority ██████ ██████████████████████, which means NSO did not lack *all* "rights, limited or otherwise," to use WhatsApp servers.  *Brekka*, 581 F.3d at 1133.

Moreover, Plaintiffs identify no prohibition on the messages Pegasus sent.  Each WhatsApp message is ██████████████████████████████████████—think of an order form at a deli, with fields allowing a customer to choose between ham or turkey and mayonnaise or mustard.  (McGraw Exh. A ¶¶ 54, 77.)  Pegasus's █████████████████ ████████████████████████ (*id.*; Akro. Exh. E at 299:21-300:4), which was ████████ ███████████████████████████████████████████████████████████ (Akro. Exh. A at 139:51-140:2.)  Put differently, █████████████████████████████████ █████████████████████████████████████████████████████████████████ (*Id.*; McGraw Exh. A ¶ 138.)

Even if that ██████████████████████████████ ████████████████, that does not mean WhatsApp servers ███████████████████.  To the contrary, Plaintiffs admit WhatsApp servers ████████████████████████. (Akro. Exh. A at 141:22-143:22; Exh. C at 161:3-169:24.)  Plaintiffs' corporate designee even testified that WhatsApp ██████████████████████████████████████████████ ██████████████████████████████████████████████ (Akro. Exh. B at 148:12-149:20, 308:19-309:1; Exh. M at 4; McGraw Exh. B ¶ 28.)  Similarly, Plaintiffs complain that Pegasus ███████████████████████████████████████████ ███████████████ (Akro. Exh. E at 298:15-17), and WhatsApp servers ██████████████ ███████████████████████████████████████████████████████ (Akro. Exh. A at 185:3- 188:25; McGraw Exh. B ¶ 31.)  WhatsApp servers thus █████████████████████████ █████████████████████. (McGraw Exh. A ¶¶ 130, 136-38; Exh. B ¶¶ 27-29; Gazneli Decl. ¶ 9.)

1    Neither did the WhatsApp *client*.  The testimony Plaintiffs cite reflects only that ███

2    ████████████████████████████████████████████.  (MSJ 16.)  As explained, however,

3    that WhatsApp ███████████████████████████████████████████████████████

4    ████████████████████████████████.  Indeed, Pegasus ████████████████████████

5    ████████████████████████████ those messages.  (Gazneli Decl. ¶ 9.)

6    At bottom, Plaintiffs' claim is simply that they did not *want* WhatsApp users to ███

7    ███████████████████████████████████████████████████████████████.  They

8    give the game away when they say they "*assume[d]* that the messages being sent are a part of the

9    WhatsApp network and that they're official clients." (MSJ 16.)  CFAA does not protect a computer

10   owner's *preferences* or *assumptions*, and "us[ing] [a] computer contrary to the [owner's] interests"

11   is not illegal.  *Brekka*, 581 F.3d at 1133.  Whatever WhatsApp *wanted* its users to do, its ████

12   ████████████████████████████ *Abu v. Dickson*, 107 F.4th 508, 515 (6th Cir.

13   2024).  That means WhatsApp's "system authorize[ed] the access." *Id.*

14   **3.** Plaintiffs double down on their baseless theory of "limited" authorization by arguing

15   they "revoked" NSO's authorization (1) in 2018 by █████████████████████████████

16   ████████████████████████████████, and (2) in 2019 by filing this lawsuit.  (MSJ

17   17-19.)  As Plaintiffs characterize WhatsApp's 2018 updates, █████████████████████

18   ████████████████████████.  Plaintiffs do not claim that "categorically revoked" NSO's access to

19   WhatsApp servers for *all* purposes, as is obvious from the fact that NSO ████████████████

20   ████████████ *Nosal II*, 844 F.3d at 1038.  The same is true of this lawsuit, which challenges one

21   *way* NSO allegedly used WhatsApp servers, not NSO's right to use those servers to send ordinary

22   WhatsApp messages.  That distinguishes *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058

23   (9th Cir. 2016), where Facebook "explicitly revoked authorization for *any* access" by sending a

24   cease-and-desist letter and blocking the defendant's IP address, which removed the defendant's

25   "permission to access Facebook's computers *at all*." *Id.* at 1067-69 (second emphasis added).  This

26   case involves no such categorical revocation of access to WhatsApp servers.

27   At a minimum, any revocation was not sufficiently "explicit[]," *id.* at 1068,

28   "[u]nequivocal," or "particularized," *Nosal II*, 844 F.3d at 1028, 1036.  WhatsApp's 2018 updates

1   ███████████████████████████. Plaintiffs admit WhatsApp was ████████████

2   ██████████████████████████████████████████████████████████████████████████

3   ████████████████████████████ (Akro. Exh. L at 6; *see* McGraw Exh. B ¶ 87.)  Nor

4   could NSO have known ██████████████████████████████████████████████████████

5   ████████.[14]  With the 2018 updates, the only ██████████████████████████████

6   ████████████████████ (Block Exh. 25 at 9-10.)  That ████████ means only that ████████

7   ███████████████████████████; it contains no explanation ████████, much less an

8   explicit statement that NSO's access to WhatsApp servers had been completely revoked.  (McGraw

9   Exh. B ¶¶ 87-91, 98.)  *Power Ventures* recognized that such a nonspecific "block" would not trigger

10  CFAA's restriction on "unauthorized use" because it does not provide sufficient "notice that … the

11  block was imposed and that authorization was revoked."  844 F.3d at 1068 n.5.

12       This lawsuit likewise did not clearly or unequivocally revoke *all* of NSO's authorization to

13  use WhatsApp servers.  The Complaint challenged only Pegasus as it existed in 2019, not *all* uses

14  of WhatsApp servers through *any* means for *any* purpose.  Plaintiffs' inclusion of an injunction in

15  their prayer for relief cannot plausibly be read as an explicit revocation akin to the cease-and-desist

16  letter and IP block in *Power Ventures*, particularly when Plaintiffs did not seek a preliminary

17  injunction or claim NSO's use of WhatsApp servers other than through Pegasus was unauthorized.

18       In any event, Plaintiffs cannot seek summary judgment based on a legal theory and factual

19  assertions they did not plead in the Complaint.  If Plaintiffs wanted to claim NSO violated CFAA

20  by ████████████████████████████████████ they had to file an amended complaint

21  alleging as much.  They may not raise unpleaded theories and allegations for the first time on

22  summary judgment.  *Pickern v. Pier 1 Imports*, 457 F.3d 963, 968-69 (9th Cir. 2006); *Barrilleaux

23  v. Mendocino Cty.*, 2018 WL 3585133, at *9 (N.D. Cal. July 26, 2018).

24       **C.**   **NSO did not "exceed authorized access" to WhatsApp servers.**

25       **1.** Plaintiffs' argument that NSO "exceed[ed] authorized access" to WhatsApp servers (MSJ

26  19-20) ignores that the statutory definition of that phrase limits it to "the unauthorized procurement

---

[14] Plaintiffs ███████████████████████████████████████████████████████

████████████████████ (McGraw Exh. B ¶¶ 95-97; Akro. Exh. B at 134:4-144:22.)

or alteration of information," not merely the unapproved use of a computer. *Nosal I*, 676 F.3d at 862. Under CFAA, "exceeds authorized access" means "to access a computer with authorization *and* to use such access *to obtain or alter information in the computer* that the accesser is not entitled so *to obtain or alter*." § 1030(e)(6). Plaintiffs do not argue NSO "obtain[ed] or alter[ed]" information from WhatsApp servers it was "not entitled" to access. *Id.* To the contrary, Plaintiffs admit NSO did not ███████████████████████████████████████████████████████████████████████ ███ (Akro. Exh. B at 249:7-250:10; Exh. C at 183:7-184:7, 250:22-251:24; Exh. N at 4.)

Elsewhere, Plaintiffs claim NSO received ███████████████████████████████ ████████████████████████████████████████████████ (MSJ 20-21), but they do not argue NSO ████████████████████████████████ § 1030(e)(6). That is because ████████████ ████████████████████████████████. Whenever a WhatsApp user ████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████. (Gazneli Decl. ¶ 11.) That is a ████████████████████████████████████████████ ███████████████████████████████████████████████████████████. (*Id.*) (As an easy proof, try using WhatsApp to call a landline.) When Pegasus initiated a WhatsApp call, therefore, it ████████████████████████████████████████████████████████████████████████ ██████ (*Id.*; Akro. Exh. E at 294:10-15, 296:15-19; McGraw Exh. A ¶ 75.)

Plaintiffs also claim NSO received ███████████████████████████████████████████ ██████ (MSJ 21), but that is false because NSO never operated Pegasus. More fundamentally, that ████████████████████████████████████, and § 1030(e)(6) defines "exceeds authorized access" to require a defendant to "obtain or alter information in *the computer*"—the *same* computer—the defendant "access[ed]." § 1030(e)(6). [15] Plaintiffs thus cannot prove NSO exceeded authorized access to a WhatsApp server without proving NSO "obtain[ed] or alter[ed] information" *on the server* that it was "not entitled so to obtain or alter." *Id.* Plaintiffs cannot make that showing.

**2.** Plaintiffs also ignore that CFAA's "exceeds authorized access" prong applies only when

---

[15] Plaintiffs argue in support of their § 1030(a)(2)(C) claim that "Section 1030(a)(2)(C) prohibits … obtaining information 'from *any* protected computer,'" whether or not it was the unlawfully accessed computer. (MSJ 21.) While that may be true of § 1030(a)(2)(C), it is *not* true of § 1030(e)(6)'s separate definition of "exceeds authorized access."

a defendant "access[es] a computer with permission but then … enter[s] an *area of the computer* to which that authorization does not extend." *Van Buren*, 593 U.S. at 389-90 (cleaned up and emphasis added). As with the "without authorization" prong, "authorization" to enter a particular area of a computer is an all-or-nothing inquiry: "one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* If "a user is permitted to be on a particular 'area within the system' for *some* purposes," then "the user's access to the [area] is 'authorized'" for *all* purposes. *Abu*, 107 F.4th at 508 (emphasis added).

For that reason, Plaintiffs' assertion that NSO was authorized to send WhatsApp messages ██████████████████ is just as fatal to their "exceeds authorized access" claim as to their "without authorization" claim. Plaintiffs admit NSO was at least authorized to access the "areas" of WhatsApp servers a WhatsApp message passes through ██████████████████████. And there is no dispute that ████████████████████████████████. Although Plaintiffs object to ██████████████████████, they do not dispute that ████████████████████████████████████. (Akro Exh. C 129:15-130:23; McGraw Exh. A ¶¶ 123-34, Exh. B ¶¶ 41, 93; Gazneli Decl. ¶ 10.) Plaintiffs' argument is only that NSO ██████████████ ████████—yet another "purpose-based limit[] on access" that cannot support a CFAA claim. *Van Buren*, 593 U.S. at 396. Therefore, even if Pegasus ████████████ ████████████████████ (MSJ 19), NSO did not thereby access any "*area* of the [server] to which [its] authorization d[id] not extend." *Van Buren*, 593 U.S. at 390 (cleaned up).[16]

**3.** In all events, however, the undisputed evidence proves NSO did *not* circumvent restrictions on access to WhatsApp servers. Plaintiffs invoke "WhatsApp's Terms and policies" (MSJ 19), but those are irrelevant because the "exceeds authorized access" prong applies only to "technological access barriers," not contractual "use restrictions." *Nosal I*, 676 F.3d at 863; *see Chegg, Inc. v. Doe*, 2023 WL 4315540, at *2 (N.D. Cal. July 3, 2023). And, as explained above, Pegasus messages ████████████████████████████████.

---

[16] *Kiser v. Moyal*, 2024 WL 4229936, at *9 (M.D. La. Sept. 18, 2024) (even if defendant "violated the 'understanding' that [its] improper behavior could not continue, this does not mean that [it] exceeded [its] authorized access to the computer … under *Van Buren*").

1   (*Supra* 12-14; Gazneli Decl. ¶ 9.)   That NSO ███████████████████████████

2   ████████████████████████████████████████████████████████████

3   (MSJ 19)—████████████████████████████████████████████████████

4   ████████████████████████████████████. (*Supra* 15.)

**D.      NSO did not conspire with its government customers to violate CFAA.**

6       With no evidence NSO ever operated Pegasus, Plaintiffs argue NSO conspired with its

7   government customers.  But the evidence does not support a finding that NSO agreed to violate

8   CFAA with its customers.  In fact, it would be impossible for NSO to do so because CFAA does

9   not apply to a foreign government's use of Pegasus to monitor a foreign device.  The act of state

10  doctrine also bars any claim based on foreign governments' use of Pegasus.[17]

11      **1.** Because "CFAA is a federal criminal statute," Plaintiffs' conspiracy claim requires proof

12  that NSO "agreed with at least one other person *to violate the law*."  *Satcom Sol. & Res. LLC v.*

13  *Pope*, 2020 WL 4511773, at *10 (D. Colo. Apr. 20, 2020) (cleaned up and emphasis added).  It is

14  not sufficient for Plaintiffs to assert only that NSO agreed that its government customers would use

15  Pegasus.  (MSJ 23.)  Plaintiffs must submit "facts showing a knowing agreement with another to

16  commit [an] *unlawful* act."  *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835 (N.D.

17  Cal. 2014) (cleaned up and emphasis added); *accord Delacruz v. St. Bar of Cal.*, 2018 WL 3077750,

18  at *8 (N.D. Cal. Mar. 12, 2018).  Plaintiffs have no such facts.

19      Plaintiffs cannot prove as a matter of law that NSO knowingly agreed with its government

20  customers to *violate CFAA*.  NSO's contracts require governments to agree they will ██████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████. (Akro. Exh. H ¶ 12.)  The government of Israel

24  also reviews and approves every Pegasus license, and it independently requires NSO's government

25  customers to promise to use Pegasus only for the ████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ───────────────────────

28  [17] To the extent Plaintiffs contend that NSO conspired ████████████████████████

████████████████████████████████████████████

18

1 ████████████ (Akro. Exh. H ¶¶ 5-7; Exhs. I-J.)  NSO investigates reports of misuse and suspends

2 or terminates service to customers that misuse its technology.  (Akro. Exh. D at 21:16-25, 26:23-

3 31:17, 181:10-15; Exh. H ¶ 12.)  Those facts show that NSO, far from *agreeing* with its government

4 customers to violate the law, affirmatively *prohibits* and *punishes* any such unlawful conduct.

5 **2.**  Moreover, any use of Pegasus by a foreign government *could not* violate CFAA because

6 CFAA does not apply to that purely extraterritorial conduct.[18]  Under the presumption against

7 extraterritoriality, "[w]hen a statute gives no clear indication of an extraterritorial application, it has

8 none."  *Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 248 (2009).  Even when a statute *does*

9 "specifically address[] an issue of extraterritorial application," the presumption still limits "the

10 *extent* of the statutory exception."  *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455-56 (2007).

11 This ensures courts do not apply statutes in ways that risk "unintended clashes between our laws

12 and those of other nations."  *EEOC v. Aramco*, 499 U.S. 244, 248 (1991).

13 CFAA applies extraterritorially in one limited respect: Its definition of "protected

14 computer" includes a "computer located outside the United States" if it affects "interstate or foreign

15 commerce or communication of the United States."  § 1030(e)(2)(B).  But that does not

16 unambiguously prohibit access to foreign computers *by foreign actors*, let alone by foreign

17 *governments*.  The presumption against extraterritoriality thus compels reading CFAA to prohibit

18 only unauthorized access to a foreign computer *by U.S. nationals* or *from within the United States*.

19 That reading finds further support in the *Charming Betsy* canon, which creates a "judicial

20 presumption that 'an act of Congress ought never to be construed to violate the law of nations if

21 any other possible construction remains.'"  *United States v. Ali*, 718 F.3d 929, 935 (D.C. Cir. 2013);

22 *see United States v. Vasquez-Velasco*, 15 F.3d 833, 839 (9th Cir. 1994).  Under international law,

23 there are "five general principles that permit extraterritorial criminal jurisdiction," *United States v.*

24 *Clark*, 435 F.3d 1100, 1106 & n.8 (9th Cir. 2006), none of which empower the United States to

25 criminalize foreign governments' access to foreign computers.  *See* Restatement (Third) of Foreign

26 Relations Law § 402 & comments a-g; *id.* § 404.

27

28 ───────────────
[18] It is undisputed that Pegasus ████████████████████████████████████
████████████████ (Akro. Exh. E at 316:3-7, 327:11-328:14; Exh. H ¶ 13.)

19

Any different conclusion would have absurd and outrageous consequences, effectively making it illegal for any foreign government to access the computer of a criminal within its own borders—even with a warrant in full compliance with local law.  (That would, for example, make it a federal crime for an English police officer to search the phone of a foreign terrorist in London, with a warrant.)  When CFAA exempts *U.S.* law-enforcement activities from liability, § 1030(f), it defies belief that Congress would have intended to criminalize all such activities by *foreign* governments.[19]  The Court should not interpret CFAA to create such an extreme "clash[] between our laws and those of other nations."  *Aramco*, 499 U.S. at 248.

Such an interpretation would also raise serious constitutional questions under the Foreign Commerce Clause and Due Process Clause.  The Foreign Commerce Clause allows Congress "to regulate Commerce *with* foreign Nations."  U.S. Const. art. I, § 8, cl. 3 (emphasis added).  The "use of the word 'with'" is a "textual limitation" that "requires a nexus *between* the United States and a foreign country."  *United States v. Bollinger*, 798 F.3d 201, 214 (4th Cir. 2015) (emphasis added).  A foreign government's use of Pegasus to monitor a foreign resident's device lacks the required nexus with the United States.  Prohibiting such purely foreign conduct would also likely violate the Due Process Clause, which similarly prohibits extraterritorial application of federal criminal statutes absent "a sufficient nexus between the defendant and the United States."  *United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1132-33 (N.D. Cal. 2015).  To "avoid" those constitutional "doubts," *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), this Court should interpret CFAA to prohibit only unauthorized access to a foreign computer *by U.S. nationals* or *from within the United States*.  *See United States v. Weingarten*, 632 F.3d 60, 70-71 (2d Cir. 2011) (narrowly interpreting statute to avoid Foreign Commerce Clause concerns).

**3.**  The act of state doctrine independently bars any claim based on foreign governments' use of Pegasus.  As explained in NSO's motion for summary judgment, such a claim would improperly require this Court to "question the legality of the sovereign acts of foreign states."  *IAM*

---

[19]  The fact that § 1030(f) specifically addresses only U.S. law-enforcement activity strongly suggests Congress did not intend CFAA to apply to foreign governments in the first place.  *Cf. United States v. Toscanino*, 500 F.2d 267, 279-80 (2d Cir. 1974) (holding lack of reference to foreign wiretaps in Wiretap Act was evidence it "has no application outside of the United States").

1    *v. OPEC*, 649 F.2d 1354, 1359 (9th Cir. 1981); (Dkt. 396-2 at 19-20).

2    **E.**    **Plaintiffs cannot assert or prove a "password-trafficking" claim.**

3    Plaintiffs cannot pursue a claim under CFAA § 1030(a)(6) because they concede they did

4 not plead that claim in their complaint or in any post-complaint filing. (MSJ 24 n.10.) Without

5 having previously given NSO notice of their "password-trafficking" theory, Plaintiffs may not raise

6 it for the first time on summary judgment. *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th

7 Cir. 2014); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008), *overruled on*

8 *other grounds by Apache Stronghold v. United States*, 101 F.4th 1036 (9th Cir. 2024). Plaintiffs

9 argue otherwise based on *Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008), but *Alvarez* held only that

10 "[a] complaint need not identify the statutory or constitutional source of the claim raised *in order*

11 *to survive a motion to dismiss*." *Id.* at 1158 (emphasis added). The *Alvarez* plaintiff "specifically

12 raised" his claim "in his post-complaint filings, thereby apprising [defendants of the claim] *before*

13 *summary judgment*." *Id.* (emphasis added). Plaintiffs here did no such thing. *See Gonzales v.*

14 *Koranda*, 2024 WL 3861988, at *8 (E.D. Cal. Aug. 19, 2024) (distinguishing *Alvarez*).

15    Plaintiffs' claim is meritless anyway. Section 1030(a)(6) prohibits "knowingly and with

16 intent to defraud traffic[king] … in any password or similar information." CFAA does not define

17 "password," so courts "must give the term its ordinary meaning." *Joffe v. Google, Inc.*, 746 F.3d

18 920, 927 (9th Cir. 2013). In CFAA's "computing context," *Van Buren*, 593 U.S. at 388, the

19 ordinary meaning of "password" is "a sequence of letters, numbers, symbols or other characters

20 used to gain access to a computer, computer system, network, file, program, or function," Fed.

21 Crim. Jury Instr. 7th Cir. 1030[3] (2023 ed.) (citing dictionaries). No English speaker would say

22 Pegasus or its access vectors are "password[s] or similar information" under that definition.

23 Pegasus ██████████████████████████████████████. It is not a

24 sequence of characters. Nor is it "information"—much less information "similar" to a sequence of

25 characters. That distinguishes Pegasus from the "(API) information" and "URL" in the Rule

26 12(b)(6) cases Plaintiffs cite, both of which plausibly *are* sequences of characters. (MSJ 24.)[20]

---

27   
28 [20] Moreover, the parties in *Temurian v. Piccolo*, 2019 WL 5963831, at *6 (S.D. Fla. Nov. 13, 2019), "d[id] not dispute" that API information "constitutes 'password or similar information.'" *MetroPCS*

1    Plaintiffs argue Pegasus is like a password because it lets government users "access" a

2    computer (*id.*), but that does not make something similar to a *password* unless it is equivalent to "a

3    sequence of letters, numbers, symbols or other characters."  Fed. Crim. Jury Instr. 7th Cir. 1030[3].

4    A human hacker can gain access to a computer, but that doesn't turn a person into a password or

5    hiring a hacker into password trafficking.  A keyboard and mouse can also be used to access a

6    computer, but a keyboard or a mouse is not a password either.  Indeed, it is hard to imagine *any*

7    form of unauthorized access under § 1030(a)(2) and § 1030(a)(4) that would *not* qualify as

8    "similar" to a "password" under Plaintiffs' reading of § 1030(a)(6).  But § 1030(a)(6) is a distinct

9    provision with a distinct meaning and scope, and it does not cover Pegasus.

10   **F.    There is a material dispute over NSO's intent.**

11   Plaintiffs also cannot prove as matter of law that NSO accessed any computer with the *mens*

12   *rea* CFAA requires.   Section 1030(a)(2) requires proof that NSO "*intentionally* access[ed] a

13   computer without authorization or exceed[ed] authorized access."  That intent element requires not

14   merely the general intent to access a computer, but the specific intent "to act without authorization

15   or to exceed authorization."  *Abu*, 107 F.4th at 514, 516-17.   And there is a material dispute over

16   whether NSO *intended* to act without authorization or to exceed authorization.  NSO correctly

17   believed that Pegasus ████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████

19   ████. (Akro. Exh. H ¶¶ 5-12; Gazneli Decl. ¶ 9.)  For the same reasons, there is a material dispute

20   whether NSO "knowingly" acted without authorization or exceeded authorization.  § 1030(a)(4).

21   There is also a material dispute whether NSO acted with "intent to defraud" under

22   § 1030(a)(4) and § 1030(a)(6), which requires "an intent to deceive [and] cheat."  Model Crim. Jury

23   Instr. 9th Cir. 4.13; *id.* 15.26, 15.30.  CFAA's "intent to defraud" requirement is "the same as the

24   standard used for 18 U.S.C. § 1029 relating to credit card fraud."  S. Rep. No. 99-432, at 10 (1986).

25   And "intent to defraud" under § 1029 "requires an intent to deceive *and* cheat, which means … the

26   ───────────────

*v. Rivera*, 220 F. Supp. 3d 1326, 1331 (N.D. Ga. 2016), was an uncontested default judgment, and

27   the complaint alleged not that "unlocked mobile devices" were passwords (MSJ 24), but that the
     "confidential codes/passwords" *stored on* the devices were passwords.  Complaint ¶ 103, *MetroPCS*,

28   No. 1:16-cv-00323, ECF No. 1; *cf. Sprint Sols. Inc. v. Pac. Cellupage Inc.*, 2014 WL 12607836, at
     *11-12 (C.D. Cal. Apr. 28, 2014) (sale of unlocked phones not "trafficking in a password").

1    intent to deprive a victim of money or property by deception."  *United States v. Saini*, 23 F.4th

2    1155, 1160 (9th Cir. 2022).  To the extent older district court cases interpreted "intent to defraud"

3    differently (MSJ 22), those cases cannot survive the Ninth Circuit's holding that "the plain and

4    ordinary meaning" of the phrase is "intent to deceive *and* cheat."  *Saini*, 23 F.4th at 1160-61.[21]

5         Plaintiffs do not argue, and cannot prove as a matter of law, that NSO intended to "deprive

6    a victim of money or property."  *Id.*  There is no evidence NSO took or intended to take *any* money

7    or property from WhatsApp or anyone else.[22]  Nor can Plaintiffs prove "deception" as a matter of

8    law.  Pegasus did not ███████████████████████████████████████████████████████████

9    ███████████████████████████████████████████ (MSJ 22) because those ███████████████

10   ████████████████████████████████ (Gazneli Decl. ¶¶ 4-9).  Moreover, Pegasus did not

11   ███████████████████████████. In ███████████████████████████████████████████████

12   ███████████████████████████████████████████████████████████████████████████████

13   ███████████████████████████████ (Akro. Exh. A at 139:51-140:2.)  In ████████████

14   ███████████████████████████████████████████████████████ (Akro. Exh.

15   E at 268:17-269:5), ███████████████████████ *WhatsApp itself* decided to encrypt the

16   contents of *every* message sent by *any* WhatsApp user (Akro. Ex. B at 122:2-126:9).  Pegasus thus

17   ███████████████████████████████████████████████████████████████████████████████

18   ████████████████. (McGraw Exh. A ¶¶ 84, 136-38; Exh B. ¶¶ 23-32, 42-44.)[23]

19        **G.    There is a material dispute over whether Plaintiffs suffered "damage" or "loss."**

20        Finally, a jury could conclude Plaintiffs did not suffer "damage" or "loss" as CFAA defines

21   those terms.  Under CFAA, "damage" requires "impairment to the integrity or availability of data,

22   a program, a system, or information."  § 1030(e)(8).  Plaintiffs do not claim to have suffered

23   "damage," since they admit ████████████████████████████████████████████████████

24   ──────────────────────────────────────────────────────────────────────────────────
     [21] *See Shaw v. United States*, 580 U.S. 63, 72 (2016) (same for bank fraud statute); *United States v.*
25   *Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020) (same for wire fraud statute).
     [22] Because NSO ████████████████████████████████████████████████████████████████
26   ███████████████████████████████████████████████████ (MSJ 22) is irrelevant
     [23] Whether ████████████████████████████████████████████████████████████████████
27   when NSO never made any false statements to hide its conduct.  *See Yukos Cap. S.A.R.L. v.*
     *Feldman*, 977 F.3d 216, 233 (2d Cir. 2020) (under CFAA, "[a] misunderstanding would not rise to
28   the level of deceit" absent "intentionally misl[eading]" statements); *Cohodes v. Mimedx Grp.*, 2024
     WL 4353634, at *6 (N.D. Cal. Sept. 24, 2024) ("Having an ulterior motive" is not "deceit.").

1  ████████████████████████████.  (Akro. Exh. B at 249:7-250:10; Exh. C at 183:7-

2  184:7, 250:22-251:24; Exh. N at 4.)  Plaintiffs instead claim "loss" in the form of investigation and

3  repair costs.  (MSJ 25.)  But "[t]he term 'loss' likewise relates to costs caused by harm to computer

4  data, programs, systems, or information services."  *Van Buren*, 593 U.S. at 391-92 (citing

5  § 1030(e)(11)).  So "loss" is *also* "[l]imit[ed]" to "technological harms—such as the corruption of

6  files."  *Id.*  As a result, "costs of responding to an offense" qualify as "loss" only in "situations

7  involving *damage to* or *impairment of* the protected computer."  *Better Holdco, Inc. v. Beeline

8  Loans, Inc.*, 2021 WL 3173736, at *3 (S.D.N.Y. July 26, 2021) (emphasis added).[24]

9  Plaintiffs' investigation and repair costs are not "loss" under that definition.  Because

10  WhatsApp's servers undisputedly suffered no damage or impairment, Plaintiffs' investigation did

11  not involve "investigating or remedying *damage* to a computer."  *Nexans Wires S.A. v. Sark-USA,

12  Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) (emphasis added); *Better Holdco*, 2021 WL

13  3173736, at *4 (investigation is not "loss" absent "alleg[ation] that [plaintiff] lost service or access

14  to its data, or that its systems were otherwise harmed").[25]  Nor were Plaintiffs "*restoring*" their system

15  "to its condition *prior to* the offense," § 1030(e)(11), because ██████████████████

16  ████████████.  Instead, Plaintiffs ██████████████████████████.  (Akro.

17  Exh. B at 200:25-201:10; McGraw Exh. A ¶ 102.)  Because that vulnerability ████████ and was

18  not "caused by computer intrusions," fixing it does not fall within CFAA's "narrow conception of

19  loss."  *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262-63 (9th Cir. 2019).

20  **IV.   Plaintiffs are not entitled to summary judgment on their CDAFA claim.**

21  As explained in NSO's motion, *NSO* is entitled to summary judgment on Plaintiffs' CDAFA

22  claim because CDAFA does not apply to conduct outside of California.  (Dkt. 396-2 at 24-25.)

23  Moreover, Plaintiffs cannot state a CDAFA claim based on any use of Pegasus to access WhatsApp

24

25  [24] CFAA's examples of loss reflect the same limitation, referring to "*damage* assessments" and
"*restoring* the data, program, system, or information." § 1030(e)(11).

26  [25] *Sylabs, Inc. v. Rose*, 2024 WL 4312719, at *2-3 (N.D. Cal. Sept. 26, 2024); *Lukasian House,

27  LLC v. Ample Int'l, Inc.*, 2012 WL 13009130, at *3 (C.D. Cal. Apr. 20, 2012); *AtPac, Inc. v.
Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1184-85 (E.D. Cal. 2010); *El Omari v. Buchanan*, 2021

28  WL 5889341, at *14 (S.D.N.Y. Dec. 10, 2021); *CCC Info. Servs., Inc. v. Tractable, Inc.*, 2023 WL
415541, at *3 (N.D. Ill. Jan. 25, 2023).

1    users' devices because a CDAFA claim can only be brought by a computer's "owner or lessee,"

2    Cal. Penal Code § 502(e)(1), and Plaintiffs do not own or lease WhatsApp users' devices.  In all

3    events, however, Plaintiffs do not argue they should receive summary judgment on their CDAFA

4    claim if they do not receive it on their CFAA claims.  (MSJ 25.)  Plaintiffs are not entitled to

5    summary judgment on their CFAA claims, so the same is true for their CDAFA claim.

6    **V.     There is a material dispute over whether Plaintiffs have unclean hands.**

7         Finally, Plaintiffs are not entitled to summary judgment because they do not seek judgment

8    on NSO's affirmative defenses, including unclean hands.   "[U]nclean hands may provide a

9    complete defense to an action in law," *Albert's Organics, Inc. v. Holzman*, 2020 WL 3892861, at

10   *5 (N.D. Cal. July 10, 2020) (Hamilton, J.) (cleaned up), when the plaintiff "dirtied [his hands] in

11   acquiring the right he now asserts," *Brewster v. City of L.A.*, 672 F. Supp. 3d 872, 1003 (C.D. Cal.

12   2023).  Here, logs produced by Plaintiffs ███████████████████████████████████████████

13   ██████████████████████████████████████████, when Plaintiffs began investigating

14   Pegasus.  (Akro. Exh. O at 25.)  That appears to refer to Meta employee Michael Scott, whose ██

15   █████████████████████████████████████████████████████████████████████████████████

16   (Block Exh. 12 at 24.)  In addition, Plaintiffs' corporate designee Andrew Robinson testified ██

17   █████████████████████████████████████████████████.  (Akro. Exh. B at 375:9-

18   377:24.)   Neither Mr. Scott, Mr. Robinson, nor any other employee of Plaintiffs ████████

19   █████████████████████████████████████████████████████████████████████████████████

20   ████.  Accordingly, it appears that Plaintiffs, when gathering evidence for this lawsuit, violated

21   CFAA and CDAFA ██████████████████████████████████████████████████████████████

22   ████████████████.  That supports NSO's unclean hands defense.

**CONCLUSION**

23

24        The Court should deny Plaintiffs' motion.

25   Dated: October 11, 2024                    KING & SPALDING LLP

26                                             By: */s/ Joseph N. Akrotirianakis*

27                                             JOSEPH N. AKROTIRIANAKIS
                                              AARON S. CRAIG
28                                             *Attorneys for Defendants*