Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
            antonio.perez@davispolk.com
            craig.cagney@davispolk.com
            gina.cora@davispolk.com
            luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** <br><br> Date:   November 7, 2024 <br> Time:   1:30 p.m. <br> Ctrm:   3 <br> Judge:  Hon. Phyllis J. Hamilton <br> Action Filed: October 29, 2019 |

**[REDACTED VERSION]**

# TABLE OF CONTENTS

PAGE

BACKGROUND ..................................................................................................2

LEGAL STANDARD............................................................................................3

ARGUMENT .....................................................................................................4

    I. NSO IS SUBJECT TO PERSONAL JURISDICTION .......................................4

        A.    NSO Consented to Jurisdiction ................................................4

        B.    NSO Purposefully Directed Its Conduct at Plaintiffs' Servers .......................5

        C.    NSO Purposefully Availed Itself of Doing Business in California ...............10

            1.    NSO Leased and Used a California Server for Its Customers ..........11

            2.    NSO Attempted to Create a Market for Its Spyware in California....12

            3.    Plaintiffs' Claims Arise from NSO's Business Activities in California ........................................................................16

    II.    NSO IS LIABLE FOR PEGASUS AND ITS USE ...................................16

        A.    NSO Is Liable for Its Own Conduct .............................................16

        B.    The Identity of NSO's Customers Provides No Defense.............................18

    III.    NSO IS LIABLE ON PLAINTIFFS' CFAA CLAIMS............................................20

        A.    Discovery Confirms NSO Accessed WhatsApp's Servers Without Authorization ............................................................21

        B.    This Court Can Still Consider Plaintiffs' Without Authorization Theory .....22

        C.    NSO Exceeded Any Purported Authorization .................................23

        D.    NSO Cannot Evade Liability Based on a "Law Enforcement Defense" .......24

    IV.    NSO IS LIABLE ON PLAINTIFFS' CDAFA CLAIM ............................................25

CONCLUSION....................................................................................................25

i

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH

# TABLE OF AUTHORITIES

<u>CASES</u>

PAGE(S)

*Abu v. Dickson*,
   107 F.4th 508 (6th Cir. 2024) ........................................................................ 23

*In re Apple Inc. Device Performance Litig.*,
   347 F. Supp. 3d 434 (N.D. Cal. 2018).......................................................... 18

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
   480 U.S. 102 (1987)........................................................................................ 14

*AWR Corp. v. ZTE, Corp.*,
   2011 WL 13217534 (C.D. Cal. June 13, 2011) ............................................ 5

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ........................................................... 4, 6, 10

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021) ......................................................................... 16

*Berkeley Lights, Inc. v. AbCellera Biologics Inc.*,
   2021 WL 4497874 (N.D. Cal. Jan. 29, 2021)............................................... 12

*Bluestar Genomics v. Song*,
   2023 WL 4843994 (N.D. Cal. May 25, 2023) .............................................. 13

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
   334 F.3d 390 (4th Cir. 2003) ........................................................................ 12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)......................................................................................... 3

*Chronic Tacos Enterprises, Inc. v. Chronic Tacos Huntington Beach, Inc.*,
   2011 WL 6010265 (C.D. Cal. Nov. 28, 2011) ............................................. 22

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020)........................................................... 15

*City of Los Angeles v. Bank of Am. Corp.*,
   2015 WL 4880511 (C.D. Cal. May 11, 2015)............................................... 22

*Credit Suisse v. U.S. Dist. Court*,
   130 F.3d 1342 (9th Cir. 1997) ...................................................................... 19

*Daewoo Elecs. Am., Inc. v. Opta Corp.*,
   875 F.3d 1241 (9th Cir. 2017) ...................................................................... 15

*DBSI, Inc. v. Oates*,
   2020 WL 5517305 (D. Ariz. Sept. 14, 2020) ................................................ 9

ii

*Desertrain v. City of Los Angeles*,
  754 F.3d 1147 (9th Cir. 2014) ........................................................................ 23

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013) .............................................................................. 4

*Du Daobin v. Cisco Systems, Inc.*,
  2 F.Supp.3d 717 (D.D.C. 2014) .................................................................... 20

*E3 Innovation Inc. v. DCL Techs. Inc.*,
  2021 WL 5741442 (D. Ariz. Dec. 2, 2021) .................................................... 7

*Facebook, Inc. v. ConnectU LLC*,
  2007 WL 2326090 (N.D. Cal. Aug. 13, 2007) ............................................... 9

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ...................................................................... 22

*Facebook, Inc. v. Rankwave Co.*,
  2019 WL 8895237 (N.D. Cal. Nov. 14, 2019) .......................................... 9, 10

*Facebook, Inc. v. Sahinturk*,
  2022 WL 1304471 (N.D. Cal. May 2, 2022) ................................................... 7

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) ........................................................................... 8, 11, 16

*Ghazizadeh v. Coursera, Inc.*,
  2024 WL 3455255 (N.D. Cal. June 20, 2024) ................................................ 5

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) ...................................................................... 10

*Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*,
  458 F. Supp. 3d 1202 (N.D. Cal. 2020) ....................................................... 10

*Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*,
  2021 WL 5861279 (9th Cir. Dec. 10, 2021) ................................................. 10

*GreatFence.com, Inc. v. Bailey*,
  726 F. App'x 260 (5th Cir. 2018) ................................................................... 7

*Hanson v. Denckla*,
  357 U.S. 235 (1958) ...................................................................................... 11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ......................................................................... 7

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ........................................................................ 10

*Hungerstation LLC v. Fast Choice LLC*,
  2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ................................................. 12

iii

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH

*Hydentra HLP Int'l v. Sagan Ltd.*,
    783 F. App'x 663 (9th Cir. 2019) .......................................................................... 10

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 2429593 (N.D. Cal. Aug. 24, 2007) .................................................. 22, 23

*In re Lenovo Adware Litig.*,
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ........................................................ 17

*Li v. Amazon.com Servs. LLC*,
    2023 WL 8720669 (N.D. Cal. Dec. 18, 2023) ......................................................... 5

*McKesson Corp. v. Islamic Republic of Iran*,
    672 F.3d 1066 (D.C. Cir. 2012) ........................................................................... 19

*Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*,
    2022 WL 6281793 (S.D. Cal. Oct. 7, 2022) ............................................................ 4

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ................................................................. 25

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ..................................................................... 17

*Nowak v. Xapo, Inc.*,
    2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ....................................................... 25

*Oregon Int'l Airfreight Co. v. Bassano*,
    2022 WL 2068755 (D. Or. May 16, 2022) ............................................................... 9

*In re Philippine National Bank*
    397 F.3d 768 (9th Cir. 2005) ................................................................................ 20

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ................................................................................. 7

*Rabkin v. Dean*,
    856 F. Supp. 543 (N.D. Cal. 1994) ....................................................................... 18

*Risk v. Kingdom of Norway*,
    707 F. Supp. 1159 (N.D. Cal. 1989) ...................................................................... 18

*Roche v. Hyde*,
    51 Cal. App. 5th 757 (2020) .................................................................................... 5

*Rodriguez v. Lockheed Martin Corp.*,
    627 F.3d 1259 (9th Cir. 2010) ........................................................................... 24-25

*Royal Wulff Ventures LLC v. Primero Mining Corp.*,
    938 F.3d 1085 (9th Cir. 2019) .............................................................................. 20

*Ryanair DAC v. Booking Holdings Inc.*,
    636 F. Supp. 3d 490 (D. Del. 2022) ...................................................................... 17

iv

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH

*Ryanair DAC v. Booking Holdings Inc.*,
   2024 WL 3732498 (D. Del. June 17, 2024) ............................................... 18

*Sadlock v. Walt Disney Co.*,
   2023 WL 4869245 (N.D. Cal. July 31, 2023) ............................................ 5

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) ................................................................................ 19

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ............................................................ 7, 10

*In re Schwarzkopf*,
   626 F.3d 1032 (9th Cir. 2010) ............................................................... 15

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.*,
   899 F.3d 1064 (9th Cir. 2018) ............................................................... 19

*Seattle Sperm Bank, LLC v. Cryobank Am., LLC*,
   2018 WL 3769803 (W.D. Wash. Aug. 9, 2018) ....................................... 9

*Sinatra v. National Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ......................................................... 14, 15

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2003) ............................................................... 21

*Timberlane Lumber Co. v. Bank of America, N.T. and S.A.*,
   549 F.2d 597 (9th Cir. 1976) ................................................................. 19

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2016) ................................................................. 18

*United States v. Morris*,
   928 F.2d 504 (2d Cir. 1991) ............................................................ 23, 24

*United States v. Nosal*,
   844 F.3d 1024 (9th Cir. 2016) ........................................ 9, 10, 21, 22, 23, 24

*United States v. Phillips*,
   477 F.3d 215 (5th Cir. 2007) ................................................................. 23

*Van Buren v. United States*,
   593 U.S. 374 (2021) ......................................................................... 17, 23-24

*W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*,
   493 U.S. 400 (1990) ................................................................................ 20

*Walden v. Fiore*,
   571 U.S. 277 (2014) .............................................................................. 7-8

*Wehlage v. EmpRes Healthcare, Inc.*,
   791 F. Supp. 2d 774 (N.D. Cal. 2011) ................................................... 15

v

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ........................................................................ 13, 14, 15

## STATUTES & RULES

California Comprehensive Data Access and Fraud Act ("CDAFA"), Cal. Pen. Code § 502........... 18

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030................................................ *passim*

Fed. R. Civ. P. 4(k)(2) ........................................................................................... 9, 10, 15

Fed. R. Civ. P. 56(a) ....................................................................................................... 3

## OTHER AUTHORITIES

2 W. LaFave Subst. Crim. L. § 13.1(a) (3d ed.) .............................................................. 17

Plaintiffs' Motion for Partial Summary Judgment established NSO's liability under the Computer Fraud and Abuse Act ("CFAA"), California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), and for contractual breaches of WhatsApp's Terms of Service.  NSO admits ██████████████████████████████████████████████████████████████ ████████.  NSO also admits ██████████████████████████████████████ ████████████████.  NSO even admitted ██████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████  NSO disputes none of those facts, but attempts to avoid liability by challenging personal jurisdiction and asserting various defenses under the CFAA and CDAFA.  None has merit, and NSO's motion should be denied.

Discovery has established that personal jurisdiction over NSO exists for several independent reasons.  *First*, discovery proves NSO consented to jurisdiction by accepting the amended forum selection clause in WhatsApp's 2020 Terms of Service.  *Second*, contrary to NSO's contentions, the undisputed evidence shows ████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████.  There is no dispute that those servers were located in the United States, including California, and the Court has already rejected NSO's argument that NSO needed to have selected those particular servers *based on their location*.  Dkt No. 111 at 23.  *Finally*, NSO purposefully availed itself of the privilege of doing business in California. Not only did NSO enter into a contract with WhatsApp governed by California law, but it leased a California server ████████████████████ that it hardcoded into more than 700 malicious messages sent during the attack.  NSO also partnered with a California private equity firm, which ██████ ███████████████████████████████████████████████████████████████ ████████████████ to create a market for Pegasus in California ████████████████████.

NSO's other arguments are similarly unavailing.  NSO is still liable even if ████████ ███████████████████████████████████████████████████████████████ ██████████████████████ NSO is solely responsible for ████████████████████ ██████████ and thus is liable for ████████████████████████████, for conspiring with its



1

1   customers, and for trafficking in "password or similar information."  18 U.S.C. § 1030(a)(6) & (b).

2       The act of state doctrine does not apply.  NSO has produced no evidence that any (let alone

3   all) its customers were foreign sovereigns, and finding NSO liable does not require invalidating any

4   sovereign's official action taken within its own borders, which makes the doctrine inapplicable.

5       The  undisputed  evidence  shows  that  NSO  accessed  WhatsApp's  servers  without

6   authorization and exceeded any authorization it purportedly had to obtain information NSO was "not

7   entitled so to obtain."  *Id.* § 1030(e)(6).  NSO's argument that ███████████████ is

8   meritless.  There is no evidence that its independent development of Pegasus was, in fact, ███████

9   ██████████ or ███████████ "lawfully authorized investigative" activity.  *Id.* § 1030(f).

10      Finally, to the extent NSO's motion is based on a claim of lack of evidence, that argument

11  should be rejected for the reasons Plaintiffs explained in its Motion for Sanctions.  *See* Dkt. No. 406.

12  Accordingly, NSO's motion for summary judgment should be denied.

13                              **BACKGROUND**

14      To use WhatsApp, users must install the legitimate WhatsApp client application ("Official

15  Client"), and agree to the WhatsApp Terms of Service ("Terms").  *See* Ex. 1 (Lee Dep.) at 174:4-

16  179:18; *see also* Ex. 2 (Woog Dep.) at 177:7-23; Youssef Decl., Ex. B at 26-27.[1]  During registration,

17  an encrypted key is created on the Official Client, which it uses to gain access to the signaling servers,

18  and obtain from them a temporary token used to access the relay servers.  Ex. 3 (Gheorghe Dep.) at

19  117:21-119:25, 136:5-137:13.  WhatsApp's signaling servers start the call, and the relay servers

20  support the "realtime traffic" during the call.  *Id.* at 31:14-17, 33:10-21.  WhatsApp's signaling

21  servers are all located in the United States, although none are in California.  Ex. 4 (Palau Dep.) at

22  89:7-93:14.  WhatsApp's relay servers are located in the United States and around the world,

23  including in Los Angeles and San Jose, California.  Ex. 3 (Gheorghe Dep.) at 206:8-17.

24      ███████████████████████████, Ex. 5 (Gazneli Dep.) at 42:23-

25  43:5, ███████████████████, *id.* at 30:3-31:13; Ex. 6 (Defs.' Supp. Resps. to Pls.'

26  ─────────────────────

27  [1] Citations to "Br." refer to NSO's motion, Dkt. No. 396, and citations to "Ex." refer to the Exhibits
    to the Declaration of Micah G. Block submitted herewith.  All emphases have been added unless
28  otherwise indicated.

2

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH

First Interrogs.) at 9-13. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████. Ex. 5 (Gazneli

Dep.) at 157:7-164:9, 237:10-238:16, 278:16-279:6. ██████████████████

███████████████████████████████████████████████████████████████

███████████████████████████  *Id.* at 278:16-23. █████████████████

████████████████████████████████. *See* Ex. 7 (Eshkar Dep.) at 39:15-17, 151:3-153:8.

███████████████████████████████████████████████████

██████████████████████████████████████████████████████. *See* Ex.

5 (Gazenli Dep.) at 189:25-196:6; Ex. 3 (Gheorghe Dep.) at 103:14-104:7. █████████████

████████████████████████████████████████. *See* Youssef Decl.,

Ex. B at 38; Ex. 5 (Gazneli Dep.) at 254:14-17; Ex. 8 (PX2007). ███████████████████

████████████████████████████████████ Ex. 5 (Gazneli Dep.) at 256:16-258:5.

█████████████████████████████████████ *Id.* at 258:17-22; *see* Ex. 6

(Defs.' Supp. Resps. to Pls.' First Interrogs.) at 8. ████████████████████████

██████████████████████ *See* Ex. 9 (Shohat Dep.) at 69:13-18.

   After detecting those May 2019 attacks, Plaintiffs implemented security updates for their

servers and the Official Client, ████████████████████████ *See* Ex. 3 (Gheorghe Dep.) at

29:22-25; Trexler Decl., Ex. B at 21-31; Ex. 10 (PX2058) at -513; Ex. 11 (PX2039). █████████████

████████████████████████ *see, e.g.*, Ex. 12 (SHANER_WHATSAPP_00001480), and filed this

lawsuit.  Dkt. No. 1. ██████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████ Ex. 5 (Gazneli Dep.) at 45:15-46:16, 267:2-10.

## LEGAL STANDARD

   The moving party is entitled to summary judgment only if, after viewing the evidence and

drawing all reasonable inferences in the light most favorable to the non-moving party, there are no

genuine disputes of material fact.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  When a defendant moves based on a lack of jurisdiction, the court still must construe

3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH

the evidence "in the light most favorable to the party opposing the motion," and find jurisdiction "if no genuine issue of material fact remains that [the plaintiff] has established personal jurisdiction by a preponderance of the evidence."  *Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2022 WL 6281793, at *11 (S.D. Cal. Oct. 7, 2022) (citation omitted).  Any material disputed facts must be resolved "either at a hearing on the issue of jurisdiction or in the course of trial on the merits." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (citation omitted).

## ARGUMENT

## I.   NSO IS SUBJECT TO PERSONAL JURISDICTION

The undisputed evidence demonstrates jurisdiction over NSO.  Specific jurisdiction exists if (1) NSO purposefully directed its activities toward the forum or purposely availed itself of the privileges of conducting activities in the forum, and (2) Plaintiffs' claims arise out of or relate to those activities.  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).[2] The undisputed evidence shows several independent bases for jurisdiction.  First, NSO consented to jurisdiction by accepting the 2020 amendments to the Terms.  *See infra* § I.A.   Second, NSO purposefully directed its conduct at California because its "program sought out specific servers— including servers in California—in order to transmit malicious code through those servers."  Dkt. No. 111 at 22; *see infra* § I.B.  Finally, NSO purposefully availed itself by leasing and repeatedly using a California server, ███████████████████████████████████████ ███████████████, and by creating a market for its spyware products in California.  *See infra* § I.C.

### A.   NSO Consented to Jurisdiction

NSO consented to jurisdiction ████████████████████████████████████ █████████████████████████████████.[3]  NSO admits █████████████████████████, *see, e.g.*, Ex. 7 (Eshkar Dep.) at 17:13-23, 21:13-24, which required agreeing to the Terms, *see* Ex. 1 (Lee Dep.) at 174:4-179:18.  NSO is therefore bound by at least the 2016

---

[2] The Court has twice concluded exercising jurisdiction is reasonable.  Dkt. No. 111 at 31; Dkt. No. 233 at 7-8.  NSO makes no further arguments about reasonableness, and waives any it might have.

[3] Plaintiffs preserve for appeal their contention that the forum selection clause in the 2016 Terms also covered this dispute.  *See, e.g.*, Dkt. No. 55 at 10-12.

4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH

Terms, *see AWR Corp. v. ZTE*, *Corp.*, 2011 WL 13217534, at *2–3 (C.D. Cal. June 13, 2011); Dkt. No. 401 at 6-8, which NSO does not deny (Br. at 21).   The 2016 Terms permitted WhatsApp to amend them and provided that "continued use of [WhatsApp's] Services confirms [the user's] acceptance of [the] Terms, as amended."  Ex. 13 (WA-NSO-00014825) at -832.  Such provisions are routinely enforced.  *See Ghazizadeh v. Coursera, Inc.*, 2024 WL 3455255, at *13 (N.D. Cal. June 20, 2024) (using services after email notice is "sufficient to demonstrate manifestation of consent to the updated terms"); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *13 (N.D. Cal. July 31, 2023).

On January 28, 2020, WhatsApp amended the forum selection clause to state: "[Y]ou agree that you and WhatsApp will resolve any Claim relating to, arising out of, or in any way in connection with our Terms, us, or our Services (each, a 'Dispute,' and together, 'Disputes') exclusively in the United States District Court for the Northern District of California . . . and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating all such Disputes."  Ex. 14 (WA-NSO-00195067) at -071.  NSO admits that this revised language "covers 'any Claim,' period," and "expand[s] coverage . . . to the two way 'you and WhatsApp will resolve any claim' between the parties" in California.  Dkt. No. 62 at 3.  In a declaration filed on April 2, 2020, NSO's counsel admitted he became aware of this amendment in February 2020, after it was posted on WhatsApp's website.  Dkt. No. 45-1; *see Roche v. Hyde*, 51 Cal. App. 5th 757, 797 (Cal. Ct. App. 2020) (attorney's knowledge is imputed to its client).  NSO admits ███████████████████████████ ████████████████████████, Ex. 5 (Gazneli Dep.) at 267:2-271:8, and its documents show it ████████████████████████████████████████.[4]  Dkt. No. 401-1 (Block Decl.) ¶ 18 & Ex. 23; Dkt. No. 401-3 (Andre Decl.) ¶ 9 & Ex. A.  NSO thus accepted the amended forum selection clause and consented to this Court's jurisdiction.  *See Li v. Amazon.com Servs. LLC*, 2023 WL 8720669, at *7 (N.D. Cal. Dec. 18, 2023) (amendment applies to preexisting disputes).

### B.  NSO Purposefully Directed Its Conduct at Plaintiffs' Servers

The "purposeful direction" test requires that the defendant "(1) committed an intentional act,

---

[4] NSO has ████████████████████████████████████████ ████████████████████████████████████████████████████.  *See* Dkt. No. 408 at 1-2.

(2) expressly aimed at the forum state, [and] (3) caus[ed] harm that the defendant knows is likely to be suffered in the forum state." *See Axiom Foods*, 874 F.3d at 1069 (citation omitted).  The Court found these elements satisfied by Plaintiffs' allegations that: (1) NSO "target[ed] WhatsApp's systems and servers . . . to disseminate malicious code and malware" and "designed and manufactured a program to exploit WhatsApp's app, servers, and infrastructure," Dkt. No. 111 at 18-19; (2) NSO's "program sought out specific servers—including servers in California—in order to transmit malicious code through those servers," *id.* at 21-22; and (3) NSO "would have known they were harming plaintiffs" at "their principal place of business in California," *id.* at 25.  Plaintiffs' Motion demonstrates that ███████████████████████.  In its motion, NSO only disputes ██████████ ██████████████████████████████████████████████████████████████

It is undeniable that NSO ████████████████████████████████████████████████ ██████████████████████████████████████████████████.  Ex. 5 (Gazneli Dep.) at 184:6-10; *see also id.* at 277:17-278:2; 282:1-10; 325:23-326:19.  That is why ██████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████ *id.* at 68:10-69:21, and the ████████████████████ ████████████████ *id.* at 145:23-146:12.  NSO then ████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████ *id.* at 279:16-282:10 ██████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████ *id.* at 276:19-278:2.  NSO also ████████████████████ ██████████████████████████████████████████████████████████.  *See id.* at 254:2-260:2; Ex. 6 (Defs.' Supp. Resps. to Pls.' First Interrogs.) at 10-12.

There is no dispute about the servers' locations.  Br. at 5-6, 9.  WhatsApp's signaling servers were exclusively in the United States.  Ex. 4 (Palau Dep.) at 89:7-93:14.  And NSO used U.S.-based relay servers at least 176 times out of 379 attacks (46%) recorded by Plaintiffs' server logs over just ten days in May 2019, including using relay servers located in California 43 times (11%).  *See* Ex. 15 (WA-NSO-00166473); Ex. 3 (Gheorghe Dep.) at 206:8-17; Br. at 6.

There is no requirement that NSO ████████████████████████ as NSO insists.

6

Br. at 2.[5]  This Court already concluded it is irrelevant whether NSO "selected the location of the server," and rejected NSO's arguments that "the location of the server is fortuitous and their claims would have been the same if the servers were located in Cleveland, Paris, or Timbuktu."  Dkt. No. 111 at 23.  The Court's rationale relied on well-established Ninth Circuit authority, all of which remains good law and NSO ignores.  The Ninth Circuit has held that whether conduct is "expressly aimed" at the forum "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue."  *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004)).  And the Ninth Circuit has held that "the conduct prohibited [by the CFAA] is analogous to that of 'breaking and entering,'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022) (citation omitted).  This Court thus reasonably concluded that "[b]y sending malicious code to the California-based servers, defendants allegedly caused a digital transmission to enter California, which then effectuated a breaking and entering of a server in California."  Dkt. No. 111 at 23.  In the four years since that decision, courts have followed this Court's rationale,[6] and none have disagreed with it.

NSO's connection with California is thus not dependent on Plaintiffs' "unilateral activity," and NSO's reliance on *Walden v. Fiore*, 571 U.S. 277 (2014), continues to be misplaced.  Br. at 11.  In *Walden*, DEA agents seized Nevada residents' property in Georgia, who then unilaterally returned to Nevada and sued there.  571 U.S. at 280-81.  The Supreme Court found no jurisdiction because the defendants "never traveled to, conducted activities within, contacted anyone in, or *sent anything or anyone to Nevada*."  *Id.* at 288-89.  This case is completely different.  NSO did not merely target Plaintiffs, who happened to be California residents, but intentionally reached into California to access WhatsApp's servers located here.  And as discussed in more detail below, NSO also leased a California server, whose IP address NSO hardcoded into over 700 messages sent over WhatsApp servers, ███████████████████████████████████.  *See infra* § I.C.1.  As this Court

---

[5] *GreatFence.com, Inc. v. Bailey* is not to the contrary.  726 F. App'x 260, 261 (5th Cir. 2018); *see* Br. at 11.  Defendants there did not direct any conduct at the forum servers, and had not "played any role in selecting [their website hosting company's] server's location."  726 F. App'x at 261

[6] *See, e.g.*, *Facebook, Inc. v. Sahinturk*, 2022 WL 1304471, at *4 (N.D. Cal. May 2, 2022); *E3 Innovation Inc. v. DCL Techs. Inc.*, 2021 WL 5741442, at *9 (D. Ariz. Dec. 2, 2021).

recognized, Dkt. No. 111 at 24 n.7, *Walden* did not address these "very different questions whether and how a defendant's virtual 'presence' and conduct" "committed via the Internet or other electronic means" "translate into 'contacts' with a particular State."   *Walden*, 571 U.S. at 290 n.9.   NSO identifies no authority undermining this Court's correct conclusion that "[b]y sending the malicious code, defendants electronically entered the forum state seeking out plaintiffs' servers," and thus "created a connection with the forum beyond an individualized targeting theory."   Dkt. No. 111 at 24-25; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 371 (2021) (rejecting arguments that *Walden* precluded jurisdiction where plaintiffs unilaterally brought their vehicles to Montana and Minnesota because of defendants' own contacts with the forum).   NSO therefore cannot complain that Plaintiffs unilaterally decided where to locate their own servers, because ███████ █████████████████████████████████████████████████████████████████████.

NSO also contends that Plaintiffs unilaterally directed NSO's messages to these U.S.- and California-based servers, but that is false.   As a threshold matter, NSO violated this Court's orders by not producing its Pegasus code, nor any discovery showing how it selected the WhatsApp servers.   NSO therefore, █████████████████████████████████████, *cf.* Dkt. No. 397-2 (McGraw Decl.) ¶ 49, and instead relies on evidence concerning how WhatsApp's *Official Client* ordinarily selects servers.   *See, e.g.*, Ex. 3 (Gheorghe Dep.) at 103:14-104:7; Br. at 4-5.   To be sure, ordinarily, the *Official Client* chooses which relay server to use.   Ex. 3 (Gheorghe Dep.) at 120:21-121:17.   But as shown in Plaintiffs' Motion, NSO ████████████████████████████████████████ ████████████████████████████.   *See* Ex. 5 (Gazneli Dep.) at 157:7-22, 161:20-162:3, 186:10-17.   Although NSO █████████████████████████████████████████████████ ██████████████████████████████████   Youssef Decl. ¶¶ 8-15.

The undisputed evidence shows that ██████████████████████████████████ ████████████████.   First, NSO admits █████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████   Ex. 5 (Gazneli Dep.) at 189:25-196:22.   An NSO document indicates that, █████████████████████████████████████████████████ ██████████████████████████.   Ex. 16 (PX2033).   Then, ███████████████████████

1  ██████████████████████████████████████████████████████████

2  ██████████ . *See* Ex. 5 (Gazneli Dep.) at 254:14-23, 259:21-260:2; Ex. 6 (Defs.' Supp. Resps. to

3  Pls.' First Interrogs.) at 10-12.  Because NSO ███████████████████████████████

4  ██████████████████████████████████████████████████████████

5  ███████ (Br. at 10), ████████████████████████████████████████████

6  ██████████████████ . *See* Ex. 5 (Gazneli Dep.) at 157:7-20, 186:10-17; Dkt. No. 401 at 15-18.

7      NSO also knew or should have known the locations of WhatsApp's relay and signaling

8  servers.  It is well known, and would have been known to NSO, that Plaintiffs are located in

9  California, and at least some of its servers were likely there.[7]  *See Facebook, Inc. v. Rankwave Co.*,

10  2019 WL 8895237, at *6 (N.D. Cal. Nov. 14, 2019) (considering it a "well-known fact that Facebook

11  is headquartered in California").  The Terms also indicated that WhatsApp's notice address was in

12  California.  *See* Ex. 13 (WA-NSO-00014825) at -834. ███████████████████████

13  ██████████████████████████████████ , Dkt. No. 339-1, ████████████

14  █ Dkt. No. 397-2 ¶¶ 48-52, ████████████████████████████████████

15  ██████████████████████████████████████████████████████████

16  ████████████████████████████ . *See* Youssef Decl. ¶¶ 8-15, Ex. B at 37, Ex. C at

17  21.  If NSO, in fact, ██████████████████████████████████ , Ex. 5 (Gazneli

18  Dep.) at 323:23-325:8, that could only result from willful blindness, which is no defense.  *See United*

19  *States v. Nosal* ("*Nosal II*"), 844 F.3d 1024, 1039-40 (9th Cir. 2016); *Facebook, Inc. v. ConnectU*

20  *LLC*, 2007 WL 2326090, at *6 (N.D. Cal. Aug. 13, 2007) ("remaining ignorant of Facebook's precise

21  location" did not "warrant[ ] a different result").

22      In addition, it is undisputed that ████████████████████████████

23  ████████████████████████████████████████████████████ Ex. 5 (Gazneli

24  Dep.) at 276:19-278:2.  NSO ████████████████████████████████████

25  █████████████████████████████████ . Br. at 9.  That is irrelevant, because

26  ────────────────────

27  [7] *See, e.g.*, *Oregon Int'l Airfreight Co. v. Bassano*, 2022 WL 2068755, at *4 (D. Or. May 16, 2022); *DBSI, Inc. v. Oates*, 2020 WL 5517305, at *3 (D. Ariz. Sept. 14, 2020); *Seattle Sperm Bank, LLC*

28  *v. Cryobank Am., LLC*, 2018 WL 3769803, at *1 (W.D. Wash. Aug. 9, 2018).

9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH

Plaintiffs' CFAA claim arises under federal law and Rule 4(k)(2) permits jurisdiction based on NSO's contacts with the United States as a whole.  *See* Fed. R. Civ. P. 4(k)(2); *Hydentra HLP Int'l v. Sagan Ltd.*, 783 F. App'x 663, 665 (9th Cir. 2019).  Because the "[t]he due process analysis under Rule 4(k)(2) is nearly identical," except it "consider[s] contacts with the nation as a whole," *Axiom Foods*, 874 F.3d at 1072 (citation omitted), targeting U.S. servers—including the signaling servers—suffices for the same reasons this Court found jurisdiction in California.[8]

NSO has not met its burden under Rule 4(k)(2) to identify another state where it is subject to jurisdiction.  *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).  NSO provides no evidence that ████████ supports jurisdiction in ████████████ when ████████████████████, *see* Ex. 17 (DIVITTORIO_WHATSAPP_00000003), ████████████████, *see* Ex. 9 (Shohat Dep.) at 172:8-16.  NSO argues that it *would* be subject to jurisdiction in Delaware if Westbridge were its alter ego, but that does not address where NSO itself is subject to jurisdiction, and NSO disputes that Westbridge is its alter ego.  NSO is wrong, *see infra* § I.C.2, but the Court need not even reach that issue to find jurisdiction.[9]

## C.  NSO Purposefully Availed Itself of Doing Business in California

When a defendant does business in the forum, it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  NSO admits ████████████████████████████████, and thus ████████ consented to the Terms, including its California choice-of-law provision, and a forum selection clause governing at least NSO's disputes with WhatsApp.  *See supra* § I.A; Ex. 13 (WA-NSO-00014825)

---

[8] NSO's cases do not show that Rule 4(k)(2) requires more extensive contacts for specific jurisdiction.  *See Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*, 458 F. Supp. 3d 1202, 1212 (N.D. Cal. 2020) (finding jurisdiction unreasonable when defendant only selected app store's option to sell mobile app in United States, among other countries), *rev'd and remanded*, 2021 WL 5861279 (9th Cir. Dec. 10, 2021) (remanding for discovery because "[t]he question of jurisdiction in the Internet age is not well-settled"); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002) (concluding seven shipments years before suit were too "few in number and old in vintage" to exercise *general* jurisdiction).

[9] In the event the Court concludes that NSO is not subject to jurisdiction in California, but is subject to jurisdiction in another state, Plaintiffs respectfully request a transfer to that state's courts.

at -830-31; *Rankwave*, 2019 WL 8895237, at *5-6.  The Court acknowledged this "would be relevant if it were combined with other facts to demonstrate that defendants purposefully availed themselves of California law."  Dkt. No. 111 at 27.  Discovery has now confirmed that NSO did purposefully avail itself by doing business in California related to Plaintiffs' claims.  *See Ford Motor Co.*, 592 U.S. at 359, 362.  First, NSO leased a California-based server ██████ that NSO then hardcoded into 720 payloads used in the May 2019 attacks.  Second, NSO partnered with a California firm to secure the funding to develop its products and to help market its products in California.

### 1.  NSO Leased and Used a California Server for Its Customers

The undisputed evidence shows that NSO purposefully leased and used a California server in the attack.  Records created during the May 2019 attack revealed that the data initially sent to the WhatsApp servers by the Malware Vectors contained IP addresses that represented servers, *see* Ex. 18 (Robinson Dep.) at  231:4-235:2, 337:22-340:4, ████████████████████████████ ████████████████████████████████████████ Ex. 6 (Defs.' Supp. Resps. to Pls.' First Interrogs.) at 12.  NSO had hardcoded each IP address into the data sent ██████████████.  Dkt. No. 55-2 ¶ 4.  One IP address used at least 700 times was 104.223.76.220, which is a QuadraNet server in California.  *See* Dkt. No. 55-2 ¶ 4; Dkt. No. 55-6 ¶ 2 (showing server's coordinates in LA, and evidence of QuadraNet's LA-based data center).  NSO provides no evidence that the server was located elsewhere.[10]  Br. at 12.

The Court previously construed the pleadings as failing to allege that NSO "controlled where the third parties placed their servers," Dkt. No. 111 at 21, but discovery revealed that █████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████ Ex. 9 (Shohat Dep.) at 68:1-16.  NSO could determine the server's location from the IP address alone.  *See* Dkt. 55-6 (Mornin Decl.) ¶ 2.

NSO's ███████████████████████████████████ is misleading.  The

---

[10] The same information correctly placed the AWS server in Germany.  Dkt. No. 55-2 ¶ 5 & Ex. 6.

11

1    QuadraNet server ███████████████████████████████████████████████

2    ████████████████████████ Ex. 19 (WA-NSO-00014771).  NSO ████████████

3    ████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████

6    ████████████████ Ex. 7 (Eshkar Dep.) at 151:3-155:1; *see* Ex. 5 (Gazneli Dep.) at 293:8-15.

7    Moreover, NSO ███████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████

9    █████████████████████████████████████████ *See* Ex. 20 (WA-NSO-

10   00000019); Ex. 21 (WA-NSO-00000023) at -33-35.  NSO admits ████████████

11   ████████████████████ Ex. 7 (Eshkar Dep.) at 151:3-155:1, and produced documents indicating ████

12   ████████████████████.  *See, e.g.*, Ex. 22 (NSO_WHATSAPP_00007959).  ████████

13   ████████████████████████████████████████████████████████████████

14   ██████████████████████████ NSO therefore knowingly leased and repeatedly used a California-

15   based server in the May 2019 attack.[11]

### 2.   NSO Attempted to Create a Market for Its Spyware in California

16

17        The undisputed evidence shows that NSO purposefully availed itself of the privilege of doing

18   business in California to obtain funding to develop the Malware Vectors and to market them.

19        In 2014, NSO sold a stake in its business to California-based firm Francisco Partners L.P.

20   ("FP") ██████████████.  Ex. 23 (WA-NSO-00067661) at 682; Ex. 24 (WA-NSO-00069802).  FP

21   owned NSO until February 2019, ███████████████████████ and was ████████████

22   ████████████████████████████████████████████████ *id.* at 42:13-

23   43:13, 141:7-22; Ex. 25 (WA-NSO-00067809) at 11 █████████████████████;

24   *see Berkeley Lights, Inc. v. AbCellera Biologics Inc.*, 2021 WL 4497874, at *3 (N.D. Cal. Jan. 29,

25

---

26   [11] NSO's cases are completely distinguishable.  *See, e.g.*, *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (defendant hired a website hosting company that independently used forum servers); *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *1-2 (N.D. Cal. Jan. 13, 2020), *aff'd*, 2021 WL 1697886 (9th Cir. Apr. 29, 2021) (defendant incidentally used non-parties' forum servers while infringing plaintiff's trademarks).

27

28

---

12

2021) (concluding that "business dealings" with, and "acquisition of financing" from, "California companies" was conduct "purposefully directed at California"). ████████████

████████████████████████████████████████████████████████████

██████████████████ Ex. 5 (Gazneli Dep.) at 299:21-300:15, 256:16-258:9; Ex. 9 (Shohat Dep.) at 68:22-69:18; *see, e.g.*, Ex. 26 (FPM-00015812) at -890 ████████████████████

██████████████.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████ Ex. 9 (Shohat Dep.) at 95:6-13; *id.* at 137:3-11 ████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████ Dkt. No. 396-3 (Shohat Decl.), Ex. D § 2.1. ███████████████████

████████████████████████ *See* Ex. 27 (Shaner Dep.) at 45:22-46:18, 204:19-205:15.

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████. Ex. 28 (NSO_WHATSAPP_00046430); Ex. 29 (PX2023) (brochure for "Phantom"); Ex. 9 (Shohat Dep.) at  157:10-12 ████████████████████████████████████ ██████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████. *See* Ex. 27 (Shaner Dep.) at 289:12-290:24, 200:3-14, 211:4-21 █████████████████████████████████

██████████████████████████; Ex.  17  (DIVITTORIO_WHATSAPP_00000003) ████████████

████████████████████████████████████████████████.

The Court need not find that Westbridge is NSO's alter ego to find that NSO did business in California, as NSO contends.  Br. at 14.  The "alter ego test [is] for 'imput[ing]' *general* jurisdiction" from one entity to another.  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citation omitted).  *Specific* jurisdiction may be based on Westbridge's marketing activity for NSO if

13

"the 'agent act[s] on the principal's behalf and subject to the principal's control.'" *Bluestar Genomics v. Song*, 2023 WL 4843994, at *23 (N.D. Cal. May 25, 2023) (quoting *Williams*, 851 F.3d at 1025). Indeed, the Supreme Court has acknowledged "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" can "indicate an intent or purpose to serve the market in the forum State." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987) (plurality opinion); *see also Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988) (Swiss clinic subject to jurisdiction because it "instructed [an agent] to advertise [in California] and approved the ads placed"); *Williams*, 851 F.3d at 1023 n.3 (affirming *Sinatra* after *Daimler* because defendant in *Sinatra* "actively directed [agent's] advertising and sales efforts").

The preponderance of the evidence shows that Westbridge acted on NSO's behalf and that NSO directed and controlled Westbridge's marketing activities. ██████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████. Dkt. No. 396-3 (Shohat Decl.), Ex. D § 2.1; Ex. 27 (Shaner Dep.) at 45:22-46:18, 204:19-205:15. ████████████████████████████ Ex. 30 (DiVittorio Dep.) 132:17-134:1, 192:5-10, 200:9-17. ██████████████████████████ *See* Ex. 27 (Shaner Dep.) at 33:22-36:21; Ex. 31 (NSO_WHATSAPP_00046461). ██████████████████████ ██████████████████ *See, e.g.*, Ex. 27 (Shaner Dep.) at 152:3-8 ████████████████████ ████████████████████████████████████████████████████████████████████ ██ ████████████████████ Ex. 17 (DIVITTORIO_WHATSAPP_00000003); Ex. 32 (DIVITTORIO_ WHATSAPP_00000123). █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ *See* Ex. 27 (Shaner Dep.) at 148:19-152:13, 116:11-118:3; Ex. 9 (Shohat Dep.) at 170:1-171:10; *see, e.g*, Ex. 33 (SHANER_WHATSAPP_00001484); Dkt. No. 401-1, Ex. 36. ██████████████████████████ *See* Ex. 30 (DiVittorio Dep.) at 163:7-16, 212:4-214:8; Ex. 34 (DIVITTORIO_WHATSAPP_00000120) █████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████ Ex. 30 (DiVittorio Dep.) at 248:22-249:15, █████████████████████ █████████████████████████ Ex. 35 (Gil Dep.) at 64:11-68:19.  Westbridge's sales efforts

14

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Dkt. No. 396-5 (Akro. Decl.), Ex. N; Ex. 9 (Shohat Dep.) at 143:15-

3 144:23.   Westbridge sales agents admitted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Ex. 27 (Shaner Dep.) at 180:25-

5 184:9.   The preponderance of the evidence demonstrates that NSO directed and controlled

6 Westbridge's sales efforts, which suffices for specific jurisdiction in California.  *See Williams*, 851

7 F.3d at 1023 n.3 (citing *Sinatra*, 854 F.2d at 1197).  Westbridge's efforts to create a market for NSO's

8 products in the United States generally also suffice under Rule 4(k)(2).

9       Even if it were necessary (it is not) to determine whether Westbridge is NSO's alter ego, the

10 preponderance of the evidence shows that it was.  An alter ego relationship exists when "there is such

11 a unity of interest and ownership that the individuality, or separateness, of the said person and

12 corporation has ceased" and "adherence to the fiction of the separate existence of the corporation

13 would . . . sanction a fraud or promote injustice."  *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir.

14 2010).  Courts consider several factors indicative of "a unity of interest and ownership." *City & Cnty.*

15 *of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020) (citing *Daewoo*

16 *Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1250 (9th Cir. 2017)).  Several are present here: (1)

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. 9 (Shohat Dep.) at 76:1-77:1; Ex.

18 36 (PX2009); (2) NSO and Westbridge ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. 9 (Shohat Dep.) at 73:20-25,

20 137:12-14,  142:2-143:14;  (3) ▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮  Ex. 30 (DiVittorio Dep.) at 87:11-19;  (4) ▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* at 98:13-99:8,

23 132:17-134:1, 192:5-10, 200:9-17; and (5) ▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at 94:2-13, 275:15-18, ▮▮▮▮▮▮

25 ▮▮▮▮▮▮  Ex. 27 (Shaner Dep.) at 180:25-184:9, and ▮▮▮▮▮▮▮▮,

26 Ex. 37 (PX2050).  It would be "an inequitable result" if Westbridge's sales efforts were "treated as

27 those of the corporation alone," *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 782 (N.D.

28 Cal. 2011), when ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15

██████████████████████████████████████████████████.  *See* Ex. 9 (Shohat Dep.) at 140:6-23.  This record establishes that Westbridge was NSO's alter ego. At a minimum, it shows that NSO cannot prevail on summary judgment on an argument that Westbridge was *not* its alter ego.

### 3.  Plaintiffs' Claims Arise from NSO's Business Activities in California

Plaintiffs' claims arise from or at least relate to NSO's California business activities.  A "strict causal relationship" is not required, and it is sufficient if the claims "relate to" the forum contacts. *Ford Motor*, 592 U.S. at 359, 362.  For example, in *Ford Motor*, the defendant was subject to suit for motor vehicle accidents in Montana and Minnesota because it "had systematically served a market [there] for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States," even though the plaintiffs had unilaterally brought the vehicles to those states.  *Id.* at 365.  Here, Plaintiffs' claims directly arise from NSO's leasing and use of a California server more than 700 times in the attack.  They also relate to the California funding NSO obtained to ████████████ ██████████████████████████████ and NSO's efforts to market them in California and the United States, including ██████████████████████████ ████████████  These contacts suffice for jurisdiction.  *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 981 (9th Cir. 2021) (marketing mostly "to an international or Australian audience does not alter the jurisdictional effect of marketing targeted specifically at the United States").

## II.  NSO IS LIABLE FOR PEGASUS AND ITS USE

### A.  NSO Is Liable for Its Own Conduct

Plaintiffs' Motion shows that NSO is liable under the CFAA and CDAFA for accessing WhatsApp's servers and the target devices without authorization.  NSO argues ████████████ ████████████████████████████████████████████████ ██████████████████████████  Both arguments are meritless.

*First*, NSO admits ██████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████  Ex. 9 (Shohat Dep.) at 68:22-69:18; Ex. 5 (Gazneli Dep.) at 272:11-274:1, 289:22-290:24.  NSO's claim ██████████████████████████ ████████████████████████████████████████████████

1 ████████████████████████████████████████████.  *See infra* § III.A-

2 B; Dkt. No. 401 at 13-20.  The CFAA prohibits the *manner* in which information is obtained, even

3 if the defendant has authorization to obtain it in other ways.  *See Van Buren v. United States*, 593

4 U.S. 374, 385 (2021) (CFAA "forecloses" any "defense" that defendant "was 'entitled to obtain' the

5 information if he had the right to access personnel files through another method").

6     *Second*, NSO is solely responsible for Pegasus's unauthorized access to WhatsApp's servers.

7 *See, e.g.*, *Ryanair DAC v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 502 (D. Del. 2022)

8 ("[L]iability can be based on 'the principal's active role in the CFAA violator's conduct' by directing,

9 encouraging, or inducing a CFAA violation" (citation omitted)); 2 W. LaFave Subst. Crim. L.

10 § 13.1(a) (3d ed.) (principal is liable for "acts or omissions" by one from whom he "withheld facts").

11 NSO ██████████████████████████████████████████████

12 ███████ Ex. 9 (Shohat Dep.) at 70:5-71:21 ████████████████████

13 ██████████████████████████████████████████████████

14 ██████████████████████████████████████████████████

15 ████████████ Ex. 27 (Shaner Dep.) 82:24-89:25, 111:20-116:25; Ex. 38 (PX2051); Dkt. No. 1-

16 1 at 37-38 ███████████████████████████. In other words, ████████████

17 ██████████████████████████████████████████████████

18 ██████████████████████████████████████████████████

19 ██████████████████████████████████████████████████

20 ██████████ Ex. 9 (Shohat Dep.) at 68:1-16.  NSO ██████████████████

21 ██████████████████████████████████████████████████

22 ████████████████████████████████ *Id.*; *see* Ex. 5 (Gazneli Dep.) at 265:1-

23 267:25 ██████████████████████████████████████ NSO ███████

24 ████████████████████████████████████ Ex. 7 (Eshkar Dep.) at

25 39:15-17, 151:3-153:8, ████████████████████████████████████

26 ████████████████████████. *See* Dkt. No. 1-1 at 37-38, 46-47.

27     *Third*, NSO is liable for conspiring with its customers to access target devices without

28 authorization.  *See* 18 U.S.C. § 1030(b); Dkt. No. 401 at 23-24.  A conspiracy "requires 'specific

allegations of an agreement and common activities.'"  *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *6 (N.D. Cal. Oct. 27, 2016) (quoting *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835 (N.D. Cal. 2014)).   In *Ryanair DAC v. Booking Holdings Inc.*, the Court denied defendants' motion for summary judgment on a conspiracy claim where there were agreements that necessarily "require[d] circumventing" access limitations, and "defendants knew or should have known that its vendors were accessing protected portions of the Ryanair website without authorization."  2024 WL 3732498, at *23 (D. Del. June 17, 2024).  ██████████████████

██████████████████████, *see* Ex. 6 (Defs.' Supp. Resps. to Pls.' First Interrogs.) at 15-16, ████████████████████████████

████████████████████  ██████████████████████

████████████████████████████████████████████████

████████████████████████ Ex. 5 (Gazneli Dep.) at 258:1-5; Ex. 6 (Defs.' Supp. Resps. to Pls.' First Interrogs.) at 15-16; Ex. 7 (Eshkar Dep.) at 39:15-17, 151:3-153:8.[12]

        *Finally*, NSO is liable for trafficking in "password or similar information" that provides unauthorized access to WhatsApp's servers and users' target devices.  18 U.S.C. § 1030(a)(6); Cal. Penal Code § 502(c)(6); Dkt. No. 401 at 24-25.  NSO admits ██████████████████

████████████████ Ex. 5 (Gazneli Dep.) at 247:4-17.  And NSO admits ██████████████████

████████████████████████████ *See* Ex. 7 (Eshkar Dep.) at 81:5-87:3 ████████████████████; Ex. 9 (Shohat Dep.) at 70:5-71:21; Ex. 6 (Defs. Supp. Resps. to Pls.' First Interrogs.) at 15-16; Ex. 39 (PX2045).

## B.  The Identity of NSO's Customers Provides No Defense

        NSO's unsubstantiated allegations that its customers are all sovereigns is no defense.  Even

---

[12] NSO is liable even if its co-conspirators are immune.  *See Rabkin v. Dean*, 856 F. Supp. 543, 551 (N.D. Cal. 1994); *Risk v. Kingdom of Norway*, 707 F. Supp. 1159, 1167–69 (N.D. Cal. 1989). NSO's belief that they would use the spyware only for law enforcement purposes is not a defense, *see United States v. Christensen*, 828 F.3d 763, 794 (9th Cir. 2015), including because there is no foreign law enforcement exemption under the CFAA.  *Cf.* 18 U.S.C. § 1030(f); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 448–49 (N.D. Cal. 2018).

if they were sovereigns, the act of state doctrine would not apply, because it only "bars suit where '(1) there is an official act of a foreign sovereign performed within its own territory; and (2) the relief sought or the defense interposed [in the action would require] a court in the United States to declare invalid the [foreign sovereign's] official act.'" *Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064, 1069 (9th Cir. 2018) (quoting *Credit Suisse v. U.S. Dist. Court*, 130 F.3d 1342, 1346 (9th Cir. 1997)) (alterations in original).  None of these criteria are applicable here.

*First*, NSO provided no discovery regarding the identity of its customers ██████████, or that any, let alone all, were foreign sovereigns.  NSO relies solely on ████████████ ███████████████████████████████████████████████ *See* Br. at 19 & n.15; Dkt. No. 396-5 (Akro. Decl.), Ex. S-V.  That is not proof that any NSO customer was a sovereign.

*Second*, there is no evidence that Plaintiffs' claims concern any "official act," which are "actions that, by their nature, could only be undertaken by a sovereign power."  *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1073-74 (D.C. Cir. 2012).  NSO is a private company, and its unilateral development, testing, marketing, and use of its own commercial spyware cannot constitute "official acts."  Nor do those activities become "official acts" simply because a sovereign uses that spyware, or based on NSO's say-so.[13]  *See Saudi Arabia v. Nelson*, 507 U.S. 349, 360–61 (1993) ("[T]he issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'"); *see also, e.g.*, *McKesson*, 672 F.3d at 1073-74 (Iran's hostile takeover of a board of directors was not an "official act"); *Timberlane Lumber Co. v. Bank of Am., N.T. and S.A.*, 549 F.2d 597, 606 (9th Cir. 1976) ("[T]he [act of state] doctrine does not bestow a blank-check immunity upon all conduct blessed with some imprimatur of a foreign government.").

*Third*, NSO has provided no evidence that any conduct was undertaken by a sovereign "within its own territory," and in fact, the evidence shows the opposite is true.  *Sea Breeze*, 899 F.3d at 1069. NSO developed the technology in Israel, WhatsApp's servers were accessed in the United States, *see*

---

[13] NSO also concedes ████████████████████████████████ ██████████████████████████ Ex. 9 (Shohat Dep.) at 24:1-7, 29:24-32:14.

19

Ex. 15 (WA-NSO-00166473), victims were located in dozens of countries, *see* Ex. 40 (WA-NSO-00192007) at -015-16, ███████████████████████████████████████, Ex. 39 (PX2045).   NSO's reliance on *In re Philippine National Bank*, 397 F.3d 768 (9th Cir. 2005) is misplaced.   The Ninth Circuit applied the act of state doctrine to extraterritorial conduct in *Philippine National* only "in the extraordinary circumstances of th[at] case," where the Philippines seized its former President's property held by a state-owned bank's foreign branch.   *Id.* at 773-74.   NSO has provided no evidence of any similar "extraordinary" or even legitimate "underlying governmental interest" justifying applying the act of state doctrine to the extraterritorial conduct here.   *Id.*

Finally, the doctrine "does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid."   *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 409-10 (1990).   In other words, it applies only "where resolution of a plaintiff's claims would *require* a court to evaluate a foreign sovereign's compliance *with its own laws*."   *Royal Wulff Ventures LLC v. Primero Mining Corp.*, 938 F.3d 1085, 1093 (9th Cir. 2019).   Unlike in *Du Daobin v. Cisco Systems, Inc.*, where the claims required a finding "that the Chinese government, with substantial assistance from Cisco, has engaged in multiple violations of international law," 2 F. Supp. 3d 717, 726 (D. Md. 2014), NSO would be liable under U.S. law even if its customers' actions were valid under foreign law.

## III.   NSO IS LIABLE ON PLAINTIFFS' CFAA CLAIMS

As demonstrated in Plaintiffs' Motion, NSO violated the CFAA when it accessed WhatsApp's servers and target devices without authorization or in excess of any purported authorization.   NSO does not and cannot dispute that ████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████, Dkt. No. 401 at 15-17; ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████, *id.* at 17-18; and ██████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████, *id.* at 18-19. ████████████

20

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-CV-07123-PJH

1   ███████████████████████ does not whitewash any of NSO's unlawful conduct.

2   **A.  Discovery Confirms NSO Accessed WhatsApp's Servers Without Authorization**

3   The Court's Order on NSO's motion to dismiss concluded that the complaint did not state a

4   "without authorization" claim as to WhatsApp's servers, based on the understanding that NSO

5   implemented its attacks by "send[ing] messages using the WhatsApp app."  Dkt. No. 111 at 37.  The

6   undisputed evidence developed through discovery confirms █████████████████████

7   █████████████████████████████████████████████████████████

8   █████████████████████████████████████████████████████████

9   █████████████████████████████████████████████████████████

10  ████████████████████████████ Dkt. No. 1 ¶¶ 35, 53-54; Ex. 5 (Gazneli Dep.) at 161:20-

11  162:3, 298:12-300:23, 301:18-302:19, 304:23-305:19; *see also* Dkt. No. 401 § II.A.2.a.  NSO knew

12  ███████████████████████████, *see* Ex. 16 (PX2033) at -959, ██████████

13  █████████████████████████████████████████████████████████

14  ████████████████████████████ Ex. 5 (Gazneli Dep.) at 161:20-162:3, 278:16-23.

15  "[D]eceit vitiates consent," *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004), and NSO's

16  ██████████████████████████ is not a defense.  *See Nosal II*, 844 F.3d at 1035.

17  It therefore makes no difference that ██████████████████████████

18  █████████████████████████████████████████████████████████

19  ████████████████████████████████████.  NSO provides no evidence of

20  any general authorization "to access WhatsApp's servers."  Br. at 21.  As this Court recognized, "[b]y

21  creating WhatsApp accounts and accepting the terms of service, defendants, as is true of any

22  WhatsApp user, had authorization to send messages *using the WhatsApp app*."  Dkt. No. 111 at 37.

23  The Terms only provide authorization "to use our Services"—defined as "*our apps*, services,

24  features, software, or website"—not to use WhatsApp's servers by any means.  Ex. 13 (WA-NSO-

25  00014825) at -825, -828.  That is confirmed on a technological level, because the authentication keys

26  needed to access WhatsApp servers are created when the Official Client is downloaded, installed,

27  and registered.  Ex. 3 (Gheorghe Dep.) at 135:20-140:1.

28  In addition, discovery has revealed new and previously unknown facts that ████████████

21

1 ████████████████████████████████████████████████████████

2 ██████████████████████████████.   *See* Dkt. No. 401 § II.A.2.b-c.   NSO admits ██

3 ████████████████████████████████████████████████████████

4 ██████   *See* Ex. 5 (Gazneli Dep.) at 254:2-259:9.   ████████████████████

5 ██████████████████████████   *Id.* at 254:2-258:16.                              Ex. 5

6 (Gazneli Dep.) at 262:2-263:9.   Plaintiffs also ██████████████████████████

7 ██████   *see* Exs. 41 & 42 (WA-NSO-00192176); Ex. 12 (SHANER_WHATSAPP_00001480) at -

8 481, and filed this lawsuit, Dkt. No. 1.   Yet, NSO admits ████████████████████

9 ████████████████████████████████.   *See* Ex. 5 (Gazneli Dep.) at

10 270:16-271:13.   "[U]nauthorized access" includes "getting into the computer after categorically

11 being barred from entry," *Nosal II*, 844 F.3d at 1034-36, and "technological gamesmanship . . . will

12 not excuse liability." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016).

13 **B.  This Court Can Still Consider Plaintiffs' "Without Authorization" Theory**

14 NSO argues that the Court's Order concluding that Plaintiffs' complaint had not adequately

15 alleged a "without authorization" theory, Dkt. No. 111, "forecloses" NSO's liability on any "without

16 authorization" theory regardless of the evidence.[14]  Br. at 21.  Not so.  Courts deem new evidence to

17 be "part of the complaint" where the other party was on notice of the theory and there was no

18 prejudice, undue delay, bad faith, or dilatory motive.  *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL

19 2429593, at *5-6 (N.D. Cal. Aug. 24, 2007).  NSO had clear notice that Plaintiffs were exploring

20 their "without authorization" theory in discovery.[15]  And of course, NSO has long known that ██

21 ████████████████████████████████████████████.

22 NSO's cases only concern attempts to revive meritless claims, without new evidence.  *See*

23 *Chronic Tacos Enters., Inc. v. Chronic Tacos Huntington Beach, Inc.*, 2011 WL 6010265, at *2 (C.D.

24 Cal. Nov. 28, 2011); *City of L.A. v. Bank of Am. Corp.*, 2015 WL 4880511, at *5 (C.D. Cal. May 11,

---

[14] The Court sustained Plaintiffs' "without authorization" theory as to the target devices (Dkt. No. 111 at 39-40), and NSO does not dispute that they were accessed without authorization.  Br. at 20.

[15] *See, e.g.*, Dkt. No. 235-2 at 2, 10-11 (seeking information regarding "without authorization" claim); Dkt. No. 319-2 at 1-2, app'x A (same); Dkt. No. 235-4, Ex. M at 2 (seeking "the TECHNOLOGY used in the RELEVANT SPYWARE to communicate with WhatsApp").

22

2015).   Plaintiffs' meritorious "without authorization" claim is backed by legal authority and undisputed evidence.  To the extent necessary, Plaintiffs respectfully request that the Court either deem the pleadings amended to conform to the evidence or grant reconsideration to revisit this issue on this full record.  *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (holding that new claims raised at summary judgment "should be allowed . . . by amendment"); *JDS Uniphase*, 2007 WL 2429593, at *5-6 ("deem[ing]" new alleged misstatements "part of the complaint").

## C.  NSO Exceeded Any Purported Authorization

Even if NSO had any authorization, NSO exceeded it by circumventing limitations built into the Official Client and WhatsApp's servers.  This admitted conduct was not merely a "violation of the terms of use . . . without more," as NSO contends (Br. at 22), but a circumvention of "technological (or 'code-based') limitations on access," *Van Buren*, 593 U.S. at 390 n.8.

NSO first circumvented the technological limitations built into the Official Client.  WhatsApp "designed it[s code] and . . . wrote it, assuming that the messages being sent are a part of the WhatsApp network and that they're official clients built by the WhatsApp team."  Ex. 3 (Gheorghe Dep.) at 279:25-280:10.   NSO circumvented those code-based limitations by ██████████ ████████████████████████████████████████████████████████████████████ ██    Ex. 5 (Gazneli Dep.) at 298:12-300:23, 301:18-302:19, 304:23-305:19.

NSO also circumvented the servers' technological limitations.  NSO knew ████████ ████████████████████████████████████████████████████████████ Ex. 8 (PX2007) at -098.  Finding new ways to engage in the same activity is not ██████████ ██████████████████████████ as NSO claims.  Br. at 23; *see also United States v. Phillips*, 477 F.3d 215, 220 (5th Cir. 2007) ("finding 'holes in . . . programs,' . . . amounts to obtaining unauthorized access" (quoting *United States v. Morris*, 928 F.2d 504, 510 (2d Cir. 1991))).  Unlike the IT worker in *Abu v. Dickson*, who "lack[ed] notice that his access [was] unauthorized," 107 F.4th 508, 516 (6th Cir. 2024), NSO ████████████████████████████████ ██████████████ Ex. 16 (PX2033) at -958-60; Ex. 5 (Gazneli Dep.) at 206:12-208:15.

By circumventing these technological limitations on access, NSO was able "to obtain or alter information in the computer that [NSO] was not entitled so to obtain or alter."   18 U.S.C.

23

§ 1030(e)(6).  *Van Buren* does not require proof that NSO accessed parts of WhatsApp's servers that it could not with the Official Client, as NSO argues (Br. at 22-23), but merely that it "obtains *information* located in particular areas of the computer—*such as files, folders, or databases*—that are off limits to [NSO]."  593 U.S. at 396.  That information need not come from the servers alone, because the CFAA prohibits using unauthorized access to "a *computer*" to obtain information from "any *protected computer*," not necessarily the same computer, 18 U.S.C. § 1030(a)(2)(C), (4); *see also Morris,* 928 F.2d at 511; Dkt. No. 401 at 21-22.  In any event, the CFAA defines "computer" to "include[ ] any data storage facility or communications facility directly related to or operating in conjunction with such device."  18 U.S.C. § 1030(e)(1); *see Nosal II*, 844 F.3d at 1032 n.2; Dkt. No. 401 at 22.  NSO admits that, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Ex. 5 (Gazneli Dep.) at 294:10-15; 300:24-304:22; 306:12-307:15.   NSO  also  admits ██████████████████████████████████████████████████████████████████████████████████████████████████  *see id.* at 189:25-194:5, a██████████████████████████, *see id.* at 158:14-160:17.  And of course, ███████████████████████████████████████████████  *See* Ex. 27 (Shaner Dep.) at 123:3-23, 193:4-195:14, 296:6-298:16; Dkt. No. 1-1, Ex. 10; Ex. 43 (Defs.' Resps. to Pls.' First RFAs) at 13-16.  NSO is therefore liable even under an "exceeds authorized access" theory.

### D.  NSO Cannot Evade Liability Based on a "Law Enforcement Defense"

NSO claims that ███████████████████████, and therefore it cannot be liable for maintaining Pegasus afterwards.  NSO fails to prove ███████████████████████  NSO has not ███████████████████████████████████████████████████████, Ex. 30 (DiVittorio Dep.) at 264:7-18, ██████████████████████████████████████████████████.  *See* Akro. Decl., Ex. N, O.  NSO therefore cannot show ███████████████████████████████.

A government contract provides a defense only if "(1) the United States set forth 'reasonably precise

24

specifications'; (2) 'the equipment conformed to those specifications'; and (3) the supplier provided the United States with adequate warnings of the dangers." *Rodriguez v. Lockheed Martin Corp.*, 627 F.3d 1259, 1266 (9th Cir. 2010). ██████████████████████████████ ███████████████████████████████████████████████████████████ Akro. Decl., Ex. N, ████████████████████████████████████████████████████ ███████████████████████████████████████ Ex. 7 (Eshkar Dep.) at 122:24-125:24; Ex. 35 (Gil Dep.) at 88:25-89:14.  There also is no evidence █████ ████████████████████████████████████████████████████████. Ex. 9 (Shohat Dep.) at 68:1-16.  Furthermore, ████████████████████████████. Ex. 39 (PX2045).  NSO's ███████████████████████████████████████ ████████████████████████████████████████████.[16]

## IV. NSO IS LIABLE ON PLAINTIFFS' CDAFA CLAIM

NSO is liable under CDAFA for the same reasons.  *See supra* §§ II, III; Dkt. No. 401 at 25; *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022).  NSO concedes that the CDAFA applies if NSO "knowingly access[ed] a computer *in California*."  Br. at 25.  There is no dispute that it did. ███████████████████████████████ ████████████.  *See supra*  § I.B; Ex. 15 (WA-NSO-00166473); Ex. 3 (Gheorghe Dep.) at 206:8-19; Ex. 5 (Gazneli Dep.) at 258:6-22.  NSO had ████████████████████████████ ████████████████████████████████████████████████████████████ ████████.  *See supra* § I.B.  In addition, NSO also knowingly used the California-based QuadraNet server over 700 times.  *See supra* § I.C.2; Dkt. No. 55-2.  There is therefore a "'sufficient nexus between California and [NSO's] alleged wrongful conduct' to permit application of California law." Br. at 25 (quoting *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *6 (N.D. Cal. Nov. 20, 2020)).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny NSO's motion for summary judgment.

---

[16] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

1

Dated:   October 11, 2024

Respectfully Submitted,

2

DAVIS POLK & WARDWELL LLP

3

By:  /s/ Micah G. Block

4

Greg D. Andres
Antonio J. Perez-Marques

5

Craig T. Cagney
Gina Cora

6

Luca Marzorati

7

(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP

8

450 Lexington Avenue
New York, New York 10017

9

Telephone: (212) 450-4000
Facsimile: (212) 701-5800

10

Email: greg.andres@davispolk.com

11

antonio.perez@davispolk.com
craig.cagney@davispolk.com

12

gina.cora@davispolk.com
luca.marzorati@davispolk.com

13

14

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP

15

1600 El Camino Real
Menlo Park, California 94025

16

Telephone: (650) 752-2000
Facsimile:  (650) 752-2111

17

Email: micah.block@davispolk.com

18

*Attorneys for Plaintiffs*

19

*WhatsApp LLC and Meta Platforms, Inc.*

20

21

22

23

24

25

26

27

28

26