Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com
         gina.cora@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC., a Delaware<br>corporation,<br><br>               Plaintiffs,<br><br>      v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>           Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DECLARATION OF DANA TREXLER IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>  Action Filed: October 29, 2019 |

1    I, Dana Trexler, declare as follows:

2    1.    I submit this declaration in support of Meta Platforms, Inc. and WhatsApp LLC's

3    (collectively, "Plaintiffs") Motion for Partial Summary Judgment ("Plaintiffs' Motion") and in

4    Opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment ("NSO's

5    Motion") in the above-captioned action (the "Action").

6    2.    I am a Managing Director at Stout Risius Ross, LLC, and lead its national

7    intellectual property disputes and valuations practice.  I have been engaged by Plaintiffs to serve as

8    a damages expert in this Action.

9    3.    Attached as **Exhibit A** is a true and correct copy of my curriculum vitae.

10   4.    Attached as **Exhibit B** is a true and correct excerpt of the expert report I submitted

11   on August 30, 2024 (the "Opening Report"), which was attached as Exhibit 12 to the Declaration of

12   Micah G. Block in Support of Plaintiffs' Motion (Dkt. No. 401-1 (the "Block Declaration")).

13   5.    Attached as **Exhibit C** is a true and correct excerpt of the supplemental expert report

14   I submitted on September 21, 2024 (the "Supplemental Report"), which was attached as Exhibit 26

15   to the Block Declaration.

16   6.    I have personal knowledge of the facts set forth in this declaration and of the

17   opinions and bases for the opinions set forth in my Opening and Supplemental Reports, including

18   the excerpts in Exhibits B and C, and if called upon as a witness, I could and would testify

19   truthfully to them.

20   I declare under penalty of perjury that the foregoing is true and correct.

21   Executed on October 9, 2024 in Bald Head Island, North Carolina.

22

23

24   Dana Trexler

25

26

27

28

# EXHIBIT A

# Dana Trexler, CPA/CFF
Managing Director





**Philadelphia, PA USA**
Office: +1 267.571.4563
dtrexler@stout.com

## Education

M.B.A., The Wharton School,
University of Pennsylvania

B.S., Accounting,
Bucknell University

## Designations

Certified Public Accountant (CPA)
Certified in Financial Forensics (CFF)

## Practice Areas

Intellectual Property Disputes
Trade Secrets & Restrictive Covenants
Complex Business Litigation
Investigations
Transaction Disputes

## Industry Focus

Aerospace, Defense & Transportation
Consumer, Retail, Food & Beverage
Healthcare & Life Sciences

Dana Trexler, a Managing Director in the Disputes, Claims, & Investigations group, is the National Practice Leader for Stout's Intellectual Property Group. Ms. Trexler has nearly 30 years of experience providing litigation consulting services calculating and testifying to the damages in intellectual property (patent, trademark, copyright, and trade secret) and complex commercial disputes (breach of contract, employment, Lanham Act, post-acquisition, working capital, earn-out, unfair competition).

As a seasoned testifier, Ms. Trexler assists attorneys and clients to evaluate and prepare economic damages in the form of lost profits, reasonable royalties, unjust enrichment, disgorged profits, out-of-pocket costs, among other damage remedies. Ms. Trexler also has extensive experience assessing incremental costs and cost allocations. In addition to her testimony experience in legal matters before the court, Ms. Trexler represents clients in Alternative Dispute Resolution (arbitration) proceedings.

Ms. Trexler has testified as an expert witness in bench and jury trials in state and federal courts in the United States including the District of Delaware, Eastern District of Pennsylvania, District of New Jersey, Northern District of Illinois, Middle District of Florida, Middle District of Pennsylvania, and Western Division of Virginia. She has also testified in the Court of Chancery of the State of Delaware, and Superior Court of the State of Delaware.

Ms. Trexler's investigative accounting experience includes conducting fraud and forensic accounting investigations, health care fraud and abuse investigations, and contract compliance examinations ("royalty audits"); and preparing business interruption and property damage claims.

Ms. Trexler has consulted for clients in many sectors including: aerospace, biotechnology, consumer products; education; financial services; food and beverage; gaming; health care; high technology manufacturing; hospitality; media and entertainment; medical device; pharmaceutical; professional services; real estate; retail; software; and telecommunications, among others.

Prior to joining the firm, Ms. Trexler was a Partner at an advisory and accounting firm. Prior to that, she was a Principal in the Forensic, Valuation and Litigation Services Practice of a regional accounting firm. Her background also includes 18 years at a Big 4 accounting firm, where she was a Director in the Forensic Services Group and assisted clients in litigation and contract compliance matters, as well as helped to establish and lead the Corporate Intelligence practice. A frequent speaker, Ms. Trexler has presented a range of forensic accounting and litigation topics to various professional organizations.

# Dana Trexler, CPA/CFF
Managing Director



Plastics & Packaging
Technology, Media & Telecommunications

Ms. Trexler is a Certified Public Accountant (CPA) and is Certified in Financial Forensics (CFF).  Ms. Trexler is also named in the IAM Patent 1000: The World's Leading Patent Professionals.

## Professional Memberships

- American Institute of Certified Public Accountants
- Pennsylvania Institute of Certified Public Accountants
- Licensing Executive Society (LES)
- American Bar Association

## Employment History

- Stout – Managing Director, Disputes, Compliance & Investigations (June 2020-Present)
- EisnerAmper LLP – Partner, Financial Advisory Services (August 2012 – June 2020)
- ParenteBeard LLC – Principal, Forensics, Litigation and Valuation Services (February 2012- August 2012)
- PricewaterhouseCoopers LLP – Director, Forensic Services (2004 to February 2012)
- PricewaterhouseCoopers LLP – Manager, Forensic Services (1999 to 2004)
- Coopers & Lybrand/PricewaterhouseCoopers LLP – Senior Associate, Forensic Services (1997 to 1999)
- Coopers & Lybrand – Senior Associate, Assurance (1996 to 1997)
- Coopers & Lybrand – Associate, Assurance (1994 to 1996)

## Testimony Experience

Seaport Global Holdings, LLC v. PowerPay, LLC (Civil Action No. 23-1422), United States District Court for the Eastern District of Pennsylvania, 2024 (Deposition)

Gamon Plus, Inc. and Gamon International, Inc. v. Campbell Soup Company, Meijer, Inc., The Kroger Co., and Trinity Manufacturing (1:15-cv-08940), United States District Court for the Northern District of Illinous, Eastern Division, 2024 (Deposition)

Francesca Gregorini v. Apple Inc., M. Night Shyamalan, Blinding Edge Pictures, Inc., Uncle George Productions, Escape Artists LLC, Dolphin Black Productions, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, Steve Tisch, and Does 1-10 (2:20-cv-00406-SSS-JC), United States District Court for the Central District of California, Western Division, 2024 (Deposition)

Allergan, Inc., Allergan Pharmaceuticals Ireland Unlimited Company, and Allergan USA, Inc. V. Revance Therapeutics, Inc., and Ajinomoto Althea, Inc. D/B/A Ajinomoto Bio-Pharma Services (21-1411-RGA), United States States District Court for the District of Delaware, 2024 (Deposition)

# Dana Trexler, CPA/CFF
Managing Director



---

Kira Baccari v. Kristopher Baccari, Shannon Baccari, and A Wildlife Pro, LLC (22-2337), United States District Court for the Eastern District of Pennsylvania, 2024 (Deposition)

Osram Sylvania, Inc. v. Ledvance LLC (1:20-cv-09858-RA), United States District Court for the Southern District of New York, 2024 (Deposition)

Polysciences, Inc. v. Joseph T. Masrud, Matthew Griffin, and Serochem, LLC (2:20-cv-03649 PBT), United States District Court for the Eastern District of Pennsylvania, 2023 (Deposition)

Carl Zeiss Meditec, Inc. v. Topcon Medical Systems, Inc., Topcon Healthcare Solutions, Inc., Tobias Kurzke, Greg Hoffmeyer, Genivieve Fay, Katalin Spencer, Terry Keith Brock, Charles Guibord, Jr., Joseph Ciccanesi, and Michael Chen (4:19-cv-04162-YGR (LB)), United States District Court for the Northern District of California, Oakland Division, 2023 (Deposition)

WhereverTV, Inc. v. Comcast Cable Communications, LLC (2:18-cv-00529-JLB-NPM), United States District Court for the Middle District of Florida, Fort Myers Division, 2023 (Trial)

Ecolab Inc, and Nalco Company, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water v. Anthony Ridley and ChemTreat, Inc. (1:22-cv-00050-TRM-SKL), United States District Court for the Eastern District of Tennessee, Chattanooga Division, 2023 (Deposition)

Invacare Corporation v. Sunrise Medical (US) LLC (1:21-cv-00823-UNA), United States District Court of Delaware, 2023 (Deposition)

North Shore Window & Door, Inc. v. Andersen Corporation and Fenetres MQ, Inc. (19-CV-6194), United States District Court for the Eastern District of New York, 2023 (Deposition)

AVCO Corporation v. Precision Airmotive LLC (4:12-cv-01313-MWB-KM), United States District Court for the Middle District of Pennsylvania, 2022 (Trial)

Chimney Rock, Inc. v. Regency Centers Corporation (Case 3:21-CV-11190), United States District Court for the District of New Jersey, 2022 (Deposition)

Assure Holding, Inc., f/k/a Assure South, Inc., and AssuredPartners NL, LLC v. Forum Benefit, LLC f/k/a Palmetto Benefit Management, Inc., and Brian Stritt (Case No. Case No. 2019-CP-42-00832), State of South Carolina County of Spartanburg in the Court of Common Pleas, 2022 (Deposition)

Arthur J. Gallagher & Co. v. Don Tarantino, Bernadette Heater, Michael Machette, and Spencer Brush (Case No. 20-cv-05505-ECM), United States District Court for the District of Northern District of California, 2022 (Deposition)

Island Intellectual Property LLC v. TD Ameritrade, Inc., TD Ameritrade clearing, Inc., TD Ameritrade Trust Company; TD Ameritrade Holding Corp., and The Charles Schwab Corporation (Case No. 2:21-cv-00273-JRG), United States District Court for the Eastern District of Texas Marshall Division, 2022 (Deposition)

---

# Dana Trexler, CPA/CFF
Managing Director



Crown Packaging Technology, Inc. and CarnaudMetalBox Engineering Ltd. v. Belvac Production Machinery, Inc. (6:18-cv-00070-NKM-RSB), United States District Court for the Western Division of Virginia, Lynchburg Division, 2022 (Trial)

ImmerVision, Inc. v. LG Electronics U.S.A., Inc. and LG Electronics, Inc. (C.A. No. 18-cv-01631-MN-CJB and C.A. No. 18-cv-01630-MN-CJB), United States District Court for the District of Delaware, 2022 (Deposition)

Ice Intermediate, Inc. and InMoment, Inc. v. John R. Sperry, individually, as Trustee for the John R. and Ellen M. Sperry Revocable Living Trust, and as Beneficiary of NTC & Co, FBO: John Rulon Sperry A/C 031038009839, Sperry Capital, LLC, Kurtis Williams, individually and as Trustee of Mountain West Entrust IRA FBO Kurtis Williams, Kurtis Willams and Nicole Williams as Joint Tenants, and Halosight, Inc. (C.A. No. 2021-0174-JTL), Court of Chancery of the State of Delaware, 2022 (Deposition)

Firtiva Corporation v. Funimation Global Group, LLC (Case No. 2:21-cv-111), United States District Court for the Eastern District of Texas, Marshall Division, 2022 (Deposition)

Remy Holdings International, LLC v. Fisher Auto Parts, Inc. (CV No. 5:19-cv-00021), United States District Court for the Western District of Virginia, Harrisonburg Division, 2022 (Trial)

City of Wilmington v. New Castle County (AAA Case No. 01-19-0000-8779), American Arbitration Association, 2021 (Deposition)

WhereverTV, Inc. v. Comcast Cable Communications, LLC (2:18-cv-00529-JLB-NPM), United States District Court for the Middle District of Florida, Fort Myers Division, 2021 (Deposition)

Crown Packaging Technology, Inc. and CarnaudMetalBox Engineering Ltd. v. Belvac Production Machinery, Inc. (6:18-cv-00070-NKM-RSB), United States District Court for the Western Division of Virginia, Lynchburg Division, 2021 (Deposition)

Remy Holdings International LLC v. Fisher Auto Parts, Inc. (5-19-cv-00021), United States District Court for the Western District of Virginia, Harrisonburg, Division, 2021 (Deposition)

In the Matter of the Thomas R. Tomei Trust (CP-0120-2013), Superior Court of New Jersey, Camden County Chancery Division/Probate Part, 2021 (Deposition)

USCC Services, LLC v. Assurant Service Protection, Inc., d/b/a Assurant Solutions, American Security Insurance Company, American Bankers Insurance Company of Florida, Federal Warranty Service Corporation, Sureway, Inc., United Service Protection, Inc. and Signal, LP and American Security Insurance Company, Standard Guaranty Insurance Company, American Bankers Insurance Company of Florida, Federal Warranty Service Corporation, Sureway Inc., Assurant Service Protection Inc., United Service Protection, Inc., and The Signal LP v. United States Cellular Corporation, and USCC Services, LLC (01-19-0001-2564), under the Commercial Rules of the American Arbitration Association, 2021 (Deposition)

Frank Pecora, Individually and Derivately as a Member of 41 West LLC, 349/351 West 46th Street LLC, ORA LLC , Pecora Realty LLC, and 1365 Empire LLC, and Individually and Derivately as a Shareholder of 173-175 East 91 91 Realty Corp.  v. Antonino Percora; TPEC Inc.; 1 Garvies Point, LLC; PEC, LLC 679 LLC; 536 Ninth, LLC; P&G Lex, LLC; TP 9th Avenue, LLC; TPEC Condo, LLC f/k/a 416 W. 46 LLC; PGS, LLC; TPEC LLC; Forte Italia, LLC; P&M

**Dana Trexler, CPA/CFF**
Managing Director



148 LLC; Gustoso, LLC; Magna Restaurant, LLC; TPEC Corp. Farrington; TPEC Corp. Rock; John Does Companies Nos. 1-10 and Jone Doe Companies Nos. 1-10., Supreme Court of the State of New York, County of New York, 2021 (Deposition)

Claim Watcher, LLC, Homestead Insurance Company, Homestead Smart Health Plans LLC, INDECS Corporation, and Homestead Strategic Holdings Inc., v. UPMC, Individually and t/a the UPMC Health System, UPMC Health Coverage, Inc., and UPMC Susquehanna (MA-001-19 ), Commonwealth of Pennsylvania Department of State, 2020 (Arbitration Hearing)

SmartSand, Inc., v. U.S. Well Services, LLC (N19C-01-144-PRW), Superior Court of the State of Delaware, 2020 (Trial)

SmartSand, Inc., v. U.S. Well Services, LLC (N19C-01-144-PRW), Superior Court of the State of Delaware, 2020 (Deposition)

Kenneth Segal and Adam Segal, as trustee for and on behalf of, The Karen and Kenneth Segal Descendents Trust and Segal and Morel, Inc. v. Strausser Enterprises, Inc. and Gary Strausser and Leonard Mellon, United States District Court For the Eastern District of Pennsylvania, 2020 (Deposition)

Optical Air Data Systems, LLC v. Gulfstream Aerospace Corporation (01-19-0001-0519), Under the Commercial Rules of the American Arbitration Association, 2020 (Arbitration Hearing)

AVCO Corporation v. Precision Airmotive LLC (4:12-cv-01313-MWB-KM), United States District Court for the Middle District of Pennsylvania, 2020 (Hearing)

Aldo U.S. Inc. v. Damco USA, Inc. (01-18-0003-4095), International Centre for Dispute Resolution, American Arbitration Association Commercial Rules, 2020 (Arbitration Hearing)

Larry G. Junker v. Medical Components, Inc. and Martech Medical Products, Inc., United States District Court for the Eastern District of Pennsylvania, 2020 (Trial)

DePuy Synthes Sales, Inc. and Medical Devices Business Services, Inc. v. Orthofix Medical, Inc. Scott Mackey and Miranda Middleton, United States District Court for the Eastern District of Texas Sherman Division, 2020 (Deposition)

Charles F. Dunleavy v. Ocean Power Technologies, Inc. (No. 01-18-0003-2374), American Arbitration Association, New Jersey, 2019 (Arbitration)

Evemeta, LLC v. Siemens Convergence Creators Corporation and Synacor, Inc. (No. 651484/2016), Supreme Court of the State of New York, County of New York, 2019 (Deposition)

Smart Vent Products, Inc. v. Crawl Space Door System, Inc., d/b/a Crawl Space Door Systems, Inc. (1:13-cv-05691-JBS-KMW), United States District Court for the District of New Jersey, 2019 (Trial)

United States of America v. Yu Xue, a/k/a "Joyce," Tao Li, Yan Mei, Tian Xue, Lucy Xi, a/k/a "Lu Xi (Criminal N. 16-22), United States District Court for the Eastern District of Pennsylvania, 2019 (Evidentiary Hearing)

# Dana Trexler, CPA/CFF
Managing Director



Lynn E. Talley, D.O. v. Christiana Care Health System; Mathew K. Hoffman, MD; and Kenneth L. Silverstein, MD (1:17-cv-00926-CJB), United States District Court in and for the District of Delaware, 2019 (Deposition)

GC2 Incorporated v. International Game Technology PLC, International Game Technology, IGT, DoubleDown Interactive LLC, Masque Publishing, Inc., WD Encore Software, LLC, DOE Defendants 1-100, DOE Defendants 101-2,000,000 (1:16-cv-08794), United States District Court for the Northern District of Illinois Eastern Division, 2019 (Trial)

Optical Air Data Systems, LLC v. L-3 Communications Corporation, Display Systems Division; and L-3 Communications Avionics System, Inc. (N17C-05-619 EMD), In the Superior Court of the State of Delaware, 2019 (Trial)

Lenwood Hamilton, a/k/a Hard Rock or Skip Hamilton v. Lester Speight, a/k/a Rasta the Urban Warrior a/k/a Augustus "Cole Train" Cole, Epic Games, Inc., Microsoft, Inc. a/k/a Microsoft Corporation, Microsoft Studios, a division or subsidiary or trade name of Microsoft, Inc., a/k/a Microsoft Corporation, The Coalition, a trade name of Microsoft Canada Development Centre d/b/a Microsoft Vancouver ("MCDC"), where MCDC is a wholly-owned subsidiary of Microsoft, Inc. a/k/a Microsoft Corporation (2:17-cv-0169-AB), United States District Court for the Eastern District of Pennsylvania, 2018, (Deposition)

Ball Metal Beverage Container Corp. v. Crown Packaging Technology, Inc. and Crown Cork & Seal USA, Inc. (3:12-cv-0033), United States District Court for the Southern District of Ohio Western Division at Dayton, 2018 (Deposition)

GC2 Incorporated v. International Game Technology PLC, International Game Technology, IGT, DoubleDown Interactive LLC, Masque Publishing, Inc., WD Encore Software, LLC, DOE Defendants 1-100, DOE Defendants 101-2,000,000 (1:16-cv-08794), United States District Court for the Northern District of Illinois Eastern Division, 2018 (Deposition)

Optical Air Data Systems, LLC v. L-3 Communications Corporation, Display Systems Division; and L-3 Communications Avionics System, Inc. (N17C-05-619 EMD), In the Superior Court of the State of Delaware, 2018 (Deposition)

Christina Grace and Ken Potter, Individually and on Behalf of all Others Similarly Situated v. Apple Inc. (5:17-cv-00551-LHK), United States District Court for the Northern District of California San Jose Division, 2018 (Deposition)

Plastipak Packaging, Inc. v. Niagara Bottling, LLC (1:17-cv-1463-AJT/MSN), United States District Court for the Eastern District of Virginia, 2018 (Deposition)

Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Company (1:16-cv-01241-TWT), United States District Court for the Northern District of Georgia Atlanta Division, 2018 (Deposition)

SwimWays Corporation and Kelsyus LLC v. Aqua-Leisure Industries, Inc. (2:16-cv-00260-RGD-DEM), United States District Court for the Eastern District of Virginia, 2017 (Deposition)

The Ashcroft Group, LLC v. Rubicon Waste, LLC (01-45-0005-6066), American Arbitration Association, Louisville, Kentucky, 2017 (Deposition)

# Dana Trexler, CPA/CFF
Managing Director



---

AVCO Corporation v. Turn and Bank Holdings, Inc. and Precision Airmotive v. AvStar Fuel Systems, Inc. (4:12-cv-01313-MWB-KM), United States District Court for the Middle District of Pennsylvania, 2017 (Deposition)

Eagle Force Holdings, LLC and EF Investments, LLC v. Stanley V. Campbell (C.A. NO. 10803-VCMR), Court of Chancery of the State of Delaware, 2017 (Trial)

Centrak, Inc. v. Sonitor Technologies, Inc. (C.A. No. 14-183-RGA), United States District Court for the District of Delaware, 2016 (Deposition)

Connectus LLC d/b/a eDegree Advisor v. Ampush Media, Inc., and DGS EDU, LLC (8:15-cv-02778-VMC-JSS), United States District Court for the Middle District of Florida, Tampa Division, 2016 (Deposition)

SwimWays Corporation and Kelsyus LLC v. Bestway (USA), Inc. (1:16-cv-608-LMB-IDD), United States District Court of Eastern District of Virginia, Norfolk Division, 2016 (Deposition)

TL of Florida, Inc. v. Terex Corporation, d/b/a Terex Construction Americas (1:13-cv-020009-LPS), United States District Court of District of Delaware, 2016 (Deposition)

inTEAM Associates, LLC, as successor-in-interest to School-Link Technologies, Inc. v. Heartland Payment Systems, Inc. (11523-VCN), Court of Chancery of the State of Delaware, 2016 (Trial)

inTEAM Associates, LLC, as successor-in-interest to School-Link Technologies, Inc. v. Heartland Payment Systems, Inc. (11523-VCN), Court of Chancery of the State of Delaware, 2016 (Deposition)

TJ Trucking, Inc. d/b/a Eagle Trucking Company v. Comcast Corporation, Court of Common Pleas of Montgomery County, Pennsylvania, 2016 (Report Only)

Metal Services LLC, d/b/a Phoenix Services LLC v. ArcelorMittal Burns Harbor LLC, American Arbitration Association, Porter County, Indiana, 2015 (Arbitration Hearing)

Metal Services LLC, d/b/a Phoenix Services LLC v. ArcelorMittal Burns Harbor LLC, American Arbitration Association, Porter County, Indiana, 2015 (Deposition)

City of Lebanon, Jonestown Borough, North Cornwall Township, North Lebanon Township, North Londonderry Township, Northern Lebanon School District, Palmyra Area School District, South Lebanon Township, South Londonderry Township, Swatara Township, Union Township, and West Lebanon Township v. Cornwall Borough, Heidelberg Township, North Annville Township, West Cornwall Township, and Bethel Township (2012-01222), Court of Common Pleas of Lebanon County, Pennsylvania, 2015 (Trial)

Revolution Retail Systems, LLC v. Sentinel Technologies, Inc., Tidel, Inc., Tidel Engineering, LP (10605-VCP), Court of Chancery of the State of Delaware, 2015 (Trial)

Revolution Retail Systems, LLC v. Sentinel Technologies, Inc., Tidel, Inc., Tidel Engineering, LP (10605-VCP), Court of Chancery of the State of Delaware, 2015 (Deposition)

Branch Banking and Trust Company v. Maxim Integrated Products, Inc. (2:12-cv-00945-JFC), United States District Court of Eastern District of Pennsylvania, 2014 (Deposition)

---

# Dana Trexler, CPA/CFF
Managing Director



City of Lebanon, Jonestown Borough, North Cornwall Township, North Lebanon Township, North Londonderry Township, Northern Lebanon School District, Palmyra Area School District, South Lebanon Township, South Londonderry Township, Swatara Township, Union Township, and West Lebanon Township v. Cornwall Borough, Heidelberg Township, North Annville Township, West Cornwall Township, and Bethel Township (2012-01222), Court of Common Pleas of Lebanon County, Pennsylvania, 2014 (Deposition)

Allscripts Healthcare, LLC v. Etransmedia Technology, Inc. (31 117 00223 13), American Arbitration Association, 2014 (Arbitration)

Synthes, Inc., Synthes USA HQ, Inc., Synthes USA, LLC, Synthes USA Sales, LLC, and Synthes USA Products, LLC v. Emerge Medical, Inc., f/k/a Emerge Surgical, Inc., John P. Marotta, Zachary W. Stassen, Eric W. Brown, Charles Q. Powell, and John Does 1-10 (2:11-cv-01566-RB), United States District Court of Eastern District of Pennsylvania, 2013 (Deposition)

## Publications

"How to Attract and Retain Young Women in Accounting", *Philadelphia Business Journal*, May 25, 2017

"How Did They Get That Number? An expert witness talks about the art of calculating damages in IP litigation", *Metropolitan Corporate Counsel*, June 25, 2017

"The Benefits of Game Theory in Negotiations and Mediations", co-authored with Gary H. Levin of BakerHostetler, *The Legal Intelligencer*, October 6, 2015

"Compliance Monitoring Just Makes Good Business Sense", *Pennsylvania Institute of Certified Public Accountants Journal*, Spring 2013

"Expert Discusses Contract Audit and IP Damages Calculation", *Metropolitan Corporate Counsel*, Volume 21, No. 2, February 2013

"Franchisors: Exercise Your Contractual Rights", *E-Commerce Law & Strategy*, Volume 24, Number 11, March 2008

## Speeches and Seminars

"Damages/License Negotiations", Georgia Intellectual Property Springposium, April 2022.

"Case Study: Damages in IP Litigation", Florida Bar IP Symposium, April 22, 2021

"Damages in Intellectual Property Litigation" presented at a law firm CLE, May 10, 2018

"IP Damages and Licensing Negotiations", Florida Bar IP Symposium, April 12, 2018

"Hot Topics in Patent Damages – A Damages Expert's Perspective" presented at presented at a law firm CLE, March 5, 2018

"Seeking Expert Advice – How to Deal with Survey, Industry and Damage Experts in Trademark and Copyright Cases" presented at West Legal Edcenter Webinar, January 22, 2018

**Dana Trexler, CPA/CFF**
Managing Director



"Creating Value When "There's No There There": Intellectual Property/Alternative Assets" presented at TMA Mid-Atlantic Regional Symposium, June 8, 2017

"Fraud Awareness for Nonprofit Organizations" presented at EisnerAmper LLP, Philadelphia, PA, February 2, 2017

"Apple v. Samsung: Takeaways From the Smartphone Wars" presented at Philadelphia Bar Association, January 25, 2017

"Use and Abuse of Expert Witnesses in Trademark and Copyright Litigation" presented at Clear Law Institute, Webinar, January 9, 2017

"Forensic Accounting Webinar" presented at McDevitt & Kline LLC, Philadelphia, Pennsylvania, December 9, 2016

"Show Me the Money – A Primer on Lanham Act Damages" presented at New York Intellectual Property Lawyers, Association, Uniondale, New York, November 10, 2016

"Hot Topics in IP Damages: Evolving Case Law" presented at CenterForce IP Strategy Summit, New York, New York, October 27, 2016

"How to Effectively Explain Damages to a Jury" presented at DRI Business Litigation Seminar,  Nashville, Tennessee, May 5, 2016

"The Yates Memo – What You and Your Audit Committee Need to Know" presented at The Institute of Internal Auditors Philadelphia Chapter, Philadelphia, Pennsylvania, April 29, 2016

"Effective Uses of Financial Experts" presented at Legal Intelligencer Litigation Summit, Philadelphia, April 6, 2016

"Forensic Accounting & Litigation: Hot Buttons in 2016 LIVE Webcast" presented at The Knowledge Group, March 17, 2016

"Threat and Fraud Analytics" presented at The Institute of Internal Auditors Philadelphia Chapter, Philadelphia, PA, November 23, 2015

"Accountant's Role in Forensic Investigations and Disputes" presented at Brindisi Tax Academy, Radnor, PA, November 19, 2015

"Effective Uses of Financial Experts" presented at Pennsylvania Bar Institute 9th Annual Intellectual Property Law Institute, Philadelphia, PA, April 29, 2015

"Hot Topics in Corporate Internal Investigations" presented at Legal Intelligencer Litigation Summit, Philadelphia, April 10, 2015

"Trends in IP Damages" presented at CenterForce IP Strategy Summit: Enforcement – NYC, March 26, 2015

"Foreign Corrupt Practices Act: The Law, Current Trends, and Compliance" presented at New Jersey Legal Journal – In House Counsel Seminar, September 16, 2014

"Management 101 Concepts and Applications: Building a Successful Company in Today's World" presented at Bucknell Professional Network, September 9, 2014

"Deal Valuation & Maximizing Potential" presented at Boston Patent Law Association - License Committee Seminar, May 1, 2014

# Dana Trexler, CPA/CFF
Managing Director



"Deposing Financial Experts" presented at Pennsylvania Bar Association, April 23, 2014

"Trends and Considerations in Intellectual Property Damage Calculations" presented at Philadelphia Bar Association, Intellectual Property Committee, October 9, 2013

"Vetting and Screening Third Parties: How to Uncover Corrupt Behavior and Prevent Vicarious Liability" presented at American Conference Institute Foreign Corrupt Practices Association Boot Camp, San Francisco, CA, September 27, 2011

"Dana Trexler Smith on Third-Party Risks in an Era of Increased Anti-corruption Enforcement" presented on Bulletproof Blog™, February 3, 2011

"Raising Awareness of Fraud & Integrity Issues" presented at PricewaterhouseCoopers' Year-end Alumni Event, December 3, 2010

"Hot Topics in Bribery and Foreign Corruption Panel Session" presented at PricewaterhouseCoopers' Year-end Alumni Event, December 7, 2009

# EXHIBIT B

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| WHATSAPP INC. and<br>META PLATFORMS, INC.,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES<br>LIMITED and Q CYBER<br>TECHNOLOGIES LIMITED,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Case No. 19-cv-07123-PJH |

---

**EXPERT REPORT OF DANA TREXLER, CPA/CFF**

August 30, 2024

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

---

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**                                                                Page 1

## I. INTRODUCTION

1. On October 29, 2019, WhatsApp Inc. ("WhatsApp") and Meta Platforms, Inc. ("Meta")[1] (collectively, "Plaintiffs") filed a complaint against NSO Group Technologies Limited ("NSO") and Q Cyber Technologies Limited ("Q Cyber") (collectively, "Defendants") alleging that Defendants used WhatsApp servers to send malware to mobile phones and devices for the purpose of extracting data from other WhatsApp users' target devices and conducting surveillance on those users.[2] As a result of Defendants' alleged conduct, Plaintiffs assert that Defendants violated the Computer Fraud and Abuse Act (in violation of 18 U.S.C. § 1030) and the California Comprehensive Computer Data Access and Fraud Act (in violation of California Penal Code § 502), and breached the terms of service with WhatsApp to which Defendants became bound upon their creation of WhatsApp accounts.[3]

2. This report contains my opinions with respect to the economic remedy amounts, along with the bases for these opinions, to be expressed at trial with respect to the claims filed by Plaintiffs against Defendants.

3. My analyses and opinions assume Defendants will be found liable for the alleged conduct. This assumption is necessary as a basis for my analysis. I have not been engaged to provide opinions on issues relating to liability; therefore, I offer no opinions on liability in this report and do not intend to express any such opinions at trial.

---

[1] Facebook Inc. changed its name to Meta Platforms Inc. in October 2021. *See* Chris Stokel-Walker, *Why Facebook Changed Its Name to Meta and What is the Metaverse?*, NewScientist (Oct. 21, 2021), https://www.newscientist.com/article/2295438-why-has-facebook-changed-its-name-to-meta-and-what-is-the-metaverse/#:~:text=Here%27s%20everything%20you%20need%20to,as%20Meta%20on%2028%20October. (accessed February 2024); Scott Nover, Why Facebook Changed Its Name, Quartz (Oct. 29, 2021), https://qz.com/2081663/why-facebook-changed-its-name-to-meta (accessed February 2024).
[2] Complaint (Dkt. No.1), ¶ 1.
[3] Complaint (Dkt. No.1), ¶¶ 2, 49-78, Request for Relief section, ¶ 1. The Court subsequently dismissed Plaintiffs' fourth cause of action, Trespass to Chattels. *See* Order Granting in Part and Denying in Part Motion to Dismiss and Denying Motion to Stay Discovery (Dkt. No.111).

## II.    BASIS FOR ANALYSIS

4.    The analysis and opinions in this report are based on the information and documentation identified to date, my education, my experience in performing similar financial analyses and economic damage calculations, documents and testimony in the record, accepted damages methodologies and approaches, and applications of relevant case law.

5.    I am a Managing Director at Stout Risius Ross, LLC, an advisory firm that, among other services, provides business, economic, financial, and consulting services to clients in a variety of industries. I lead Stout's national intellectual property disputes and valuations practice. I am a Certified Public Accountant and Certified in Financial Forensics. My education includes a Master in Business Administration from The Wharton School of the University of Pennsylvania and a Bachelor of Science degree in Accounting from Bucknell University. My curriculum vitae is attached as **EXHIBIT A.**

6.    In forming my opinions, I considered various documents produced by the parties and non-parties, deposition testimony, and certain legal documents from this case. Specifically, I considered the documents identified throughout this report and the accompanying exhibits. A list of the documents that I considered in forming my opinions is provided in **EXHIBIT B.** The documents and information used in my analysis and report are the types of documents and information upon which experts in my field typically rely when performing such an analysis. In addition to the documents produced by the parties, I considered relevant publicly available information of the type typically relied upon by experts in this field. I also spoke with the following individuals:

- Cortney Padua, Security Engineer within the Cross-Meta Security Detection and Response Team at Meta;[4]

- Michael Scott, Threat Investigator within the Espionage Team at Meta;

- Drew Robinson, Security Engineer at Meta;

- Aashin Guatam, Director of Product Management at WhatsApp;

- Otto Ebeling, former Security Engineer at Meta (UK);

---

[4] Deposition of Cortney Padua, 13:120-121.

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**

- Jesus Barcons Palau, Software Engineer at Meta;

- Claudiu Gheorghe, former Software Engineering Manager at Meta;

- YuanYuan Wang, Software Engineering Manager at Meta;

- ████████, Payroll Manager at Meta;

- ████████████, Equity Programs Analyst within the Securities and Disclosure Equity Operations Group at Meta; and

- ████████████, Director in Global Equity Programs at Meta.

7.    I understand that discovery is ongoing; therefore, this report is based on information available to date. As discussed in more detail in this report, Defendants have not produced the relevant information sought by Plaintiffs through discovery. Further, depositions of all of the parties' witnesses have yet to be completed as of the date of this report, including that of Sarit Bizinsky Gil, Defendants' designated witness for financial, contract, and other relevant topics.

8.    Should additional information, testimony, or documents that affect my analysis or opinions become available after the issuance of my report, I reserve the right to supplement or update my analysis and/or opinions. Additionally, I reserve the right to supplement or update my report based on information, testimony, or documents that have become available within only a short period of time prior to the issuance of this report, as I have had insufficient time to analyze such new information.[5]

9.    I reserve the right to prepare supplemental materials such as summaries, graphical exhibits, or charts for trial, as well as to provide opinions and other materials in response to any additional expert opinions.

10.    This report is prepared in accordance with the American Institute of Certified Public Accountants ("AICPA") Statement on Standards for Forensic Services. The work performed does not include the performance of an audit, review, or compilation of financial statements in accordance with

---

[5] On August 26, 2024, four days before the deadline for this report, NSO produced a document (NSO_WHATSAPP_00045858) that appears to ████████████████████████. Further, I understand that two of Defendants' witnesses were deposed on August 27, 2024 (Ramon Eshkar) and August 29, 2024 (Yaron Shohat). I have yet to have the opportunity to review these transcripts and incorporate any relevant information into my analysis.

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**                                    Page 4

Generally Accepted Auditing Standards ("GAAS") or with attest standards established by the AICPA.

11.    My firm is being compensated at a rate of $795 per hour for my time in this matter, regardless of the outcome of this litigation.

## III.    SUMMARY OF OPINIONS

12.    Assuming Defendants are found  liable, it is my opinion that the Plaintiffs' expenditure of resources for their response totals ████████ and a reasonable estimation of Defendants' profits earned in connection with the targeting of 1,500 devices through Defendants' Exploit ranges from ████████████████████████████████████████████████████████████ ████████████████████████████

**Table 1: Summary of Plaintiffs' Claimed Damages and Available Equitable Recoveries[6]**

| Category | Amount |
|---|---|
| Plaintiffs' Response Expenses | ████████ |
| Defendants' Profits Subject to Disgorgement | |
| ████████████████ | ████████████████ |
| ████████████████ | ████████████████ |

13.    Plaintiffs' response costs reflect labor expenditures related to internal efforts to identify, evaluate and remediate Defendants' improper use of WhatsApp servers and targeting of select WhatsApp users.[7] The estimate for Plaintiffs' response expense is conservative, as the calculations only consider the low-end of employee estimates, exclude certain employees who worked on the response for whom I do not have estimated hours, and while employees expressed that they worked

---

[6] **EXHIBIT 1.1; EXHIBIT 1.2.** I reserve the right to supplement or amend this report to account for damages to which Plaintiffs assert they are entitled for Defendants' use of Plaintiffs' computers beyond the 1,500 targeted devices discussed in this report.  At this time, it is my understanding Defendants have provided insufficient information from which to calculate profits subject to disgorgement that are attributable to Defendants' use of Plaintiffs' computers beyond the 1,500 targeted devises discussed in this report.  I understand Plaintiffs reserve any and all rights to seek damages relating to Defendants' use of their servers, including the period during, before, and after 2019.

[7] This report does not calculate or express an opinion on litigation or other legal costs to which Plaintiffs may be entitled and which Plaintiffs may seek to recover from Defendants.  I am informed that Plaintiffs do not waive any rights with regard to seeking such costs or others from Defendants.

security patches to stop NSO.[95] On May 13, 2019, Plaintiffs publicly announced their discovery and remediation of the exploit.[96]

47.    As a result of Defendants' alleged conduct, Plaintiffs assert the following causes of action against Defendants:[97]

- Violation of the Computer Fraud and Abuse Act (18 U.S.C. §1030);

- Violation of the California Comprehensive Computer Data Access and Fraud Act (California Penal Code §502); and

- Breach of Contract in connection with WhatsApp terms.

## VIII.    QUANTIFICATION OF PLAINTIFFS' CLAIMED DAMAGES AND AVAILABLE REMEDIES

48.    I understand that Plaintiffs seek to recover damages in the form of their actual losses (i.e., compensatory damages) and disgorgement of Defendants' ill-gotten gains. In this instance, the ill-gotten gains reflect the profits that Defendants derived from their alleged conduct. I offer no opinion on whether either remedy is available on Plaintiffs' causes of action, which I understand is a legal question. I have only been asked to calculate Plaintiffs' actual losses and Defendants' ill-gotten gains.

49.    As the determination of Plaintiffs' actual losses considers labor cost expenditures, and Defendants' profits reflect those earned from the licensing of NSO's spyware, it is my opinion that these two categories are not duplicative of one another, and therefore, may be additive.

50.    Accordingly, I quantify Plaintiffs' actual damages in the form of the expenditure of resources to respond to and remediate Defendants' conduct described in the Complaint and Defendants' profits derived from targeting WhatsApp.

---

[95] *See e.g.*, WA-NSO-00018457-463.
[96] WhatsApp Reveals Major Security Flaw That Could Let Hackers Access Phones, CBS News (May 14, 2019), https://www.cbsnews.com/sanfrancisco/news/whatsapp-reveals-major-security-flaw-that-could-let-hackers-access-phones/ (accessed February 2024).
[97] Complaint (Dkt. No.1), ¶¶ 2, 49-78, Request for Relief section, ¶ 1. Plaintiffs originally alleged that Defendants wrongfully trespassed on Plaintiffs' property, in violation of California law. The Court subsequently dismissed Plaintiffs' fourth cause of action, Trespass to Chattels. *See* Order Granting in Part and Denying in Part Motion to Dismiss and Denying Motion to Stay Discover (Dkt. No.111).

A. PLAINTIFFS' EXPENDITURE OF RESOURCES FOR RESPONSE

51. I understand that on or around April 23, 2019, Plaintiffs began logging activity on servers in connection with a security review.[98] On May 2, 2019, one of WhatsApp's engineers discovered in that logging a malformed and potentially malicious message.[99] Over the following days, WhatsApp and Meta engineers and others investigated the source of the malicious message and its impact on Plaintiffs' systems.[100] Between May 10, 2019 and May 13, 2019, Plaintiffs applied software patches to their relay servers and signaling servers and published a security patch for users' WhatsApp client applications to successful resolve the exploit.[101] On May 13, 2019, Plaintiffs publicly announced their discovery and remediation of the exploit.[102] I understand that Plaintiffs continued to perform ongoing work related to the exploit after the security patch was implemented on May 13, 2019.[103]

52. I understand that Plaintiffs' employees investigated Defendants' Exploit, determined its impact on Plaintiffs' systems, developed and implemented the security patches to resolve the exploit, and performed ongoing work to fully understand the source of the attack, the methods used and full nature of the vulnerability, and the impact on WhatsApp users.[104] As such, the cost incurred by Plaintiffs response to the exploit includes the labor cost associated with certain of Plaintiffs' employees involved in the investigation, remediation, and ongoing efforts surrounding Defendants' alleged conduct, which occurred beginning on or around April 23, 2019, and continued through the latter part of 2019.

53. In the following sections, I describe and quantify select labor hours and associated costs for this work.

---

[98] See e.g., WA-NSO-00018457-463.
[99] See WA-NSO-00017583-604 at 593. See also WA-NSO-00166464.
[100] See WA-NSO-00017583-604 at 593-601. See also WA-NSO-00164559-566.
[101] See WA-NSO-00017583-604 at 601-603.
[102] https://www.cbsnews.com/sanfrancisco/news/whatsapp-reveals-major-security-flaw-that-could-let-hackers-access-phones/ (accessed February 2024).
[103] Discussion with Cortney Padua, Michael Scott, Drew Robinson, Aashin Guatam, Otto Ebeling, Jesus Palau, Claudiu Gheorghe, and YuanYuan Wang. See also WA-NSO-00164559-566.
[104] Discussion with Cortney Padua, Michael Scott, Drew Robinson, Aashin Guatam, Otto Ebeling, Jesus Palau, Claudiu Gheorghe, and YuanYuan Wang. See also WA-NSO-00018457-463.

    *1. Plaintiffs' Employee Labor*

54.    To determine Plaintiffs' labor costs incurred in connection with investigating Defendants' Exploit, determining its impact on Plaintiffs' systems, developing and implementing the security patch to resolve it, and any associated ongoing work after implementing the security patch, I relied on information from discussions with the following individuals, who were involved with these efforts:

- Cortney Padua, Security Engineer within the Cross-Meta Security Detection and Response Team at Meta;[105]

- Michael Scott, Threat Investigator within the Espionage Team at Meta;

- Drew Robinson, Security Engineer at Meta;

- Aashin Guatam, Director of Product Management at WhatsApp;

- Otto Ebeling, former Security Engineer at Meta (UK);

- Jesus Barcons Palau, Software Engineer at Meta;

- Claudiu Gheorghe, former Software Engineering Manager at Meta; and

- Yuan Yuan Wang, Software Engineering Manager at Meta.

55.    My discussions with each of these individuals include an overview of each of their then-in-effect positions and responsibilities, a description of the work they performed in connection with Defendants' Exploit when they performed this work, and an estimation of the amount of time spent in connection with this work. I describe the information represented to me by these individuals in more detail in the following sections.

    *a. Cortney Padua*[106]

56.    Cortney Padua is currently a Security Engineer on the Cross-Meta Security Detection and Response Team at Meta.[107] At the time of Defendants' Exploit, Ms. Padua was a Security Engineer on the Computer Emergency Response Team at Meta.

---

[105] Deposition of Cortney Padua, August 20, 2024, pp. 114, 120-121.
[106] Discussion with Cortney Padua; Deposition of Cortney Padua, August 20, 2024, pp. 24-25, 49-52, 60-61.
[107] Deposition of Cortney Padua, August 20, 2024, pp. 114, 120-121.

57.     Ms. Padua described her role in the process as including:[108]

- General coordination and support of the response team and strategizing remediation steps and timelines.[109]

- Reviewing WhatsApp logs to gather evidence of Defendants' Exploit and determine population of targeted users.[110]

- Formatting data contained in these WhatsApp logs for further review and analysis by internal data teams.[111]

- Ongoing review of WhatsApp logs to monitor for potential ongoing exploitation of WhatsApp servers.[112]

- Assisting with eDiscovery preservation of WhatsApp logs obtained during the investigation and remediation.[113]

- Supporting reporting efforts, including drafting summaries and presentations of the subject incident.

58.     Ms. Padua estimates that she worked approximately the following number of hours during the noted periods on these tasks:

- May 2 through May 7, 2019 - 24 hours.

- May 8 through May 16, 2019 - 36 hours.

- May 20 through May 28, 2019 - 24 hours.

- Mid-June - 12 hours.

59.     Based on my discussion with Ms. Padua, she estimates that she worked a total of 96 hours in relation to Defendants' Exploit. Using Ms. Padua's estimates, 44 hours are allocated to the period May 2 through May 13,[114] and 52 hours are allocated to the period after May 13.[115]

---

[108] Discussion with Cortney Padua.
[109] See also Deposition of Cortney Padua, August 20, 2024, pp. 24-25, 60-61.
[110] See also Deposition of Cortney Padua, August 20, 2024, pp. 49-52, 60-61.
[111] See also Deposition of Cortney Padua, August 20, 2024, pp. 49-52, 60-61.
[112] See also Deposition of Cortney Padua, August 20, 2024, p. 105.
[113] See also Deposition of Cortney Padua, August 20, 2024, pp. 49-52.
[114] 60 hours during the 11-workday period May 2 through May 16 = 5.5 hours per workday x 8 workdays between May 2 and May 13.
[115] 96 total hours less 44 hours between May 2 and May 13.

### b. Michael Scott[116]

60.    Michael Scott is currently a Threat Investigator on the Espionage Team at Meta, which was also his title at the time of Defendants' Exploit.

61.    Mr. Scott described his role as including:

- Analyzing data to assist in understanding the exploit and determining how it was conducted.

- Reviewing and analyzing WhatsApp logs to obtain information such as IP addresses and phone numbers that could help identify targeted WhatsApp users. The identification of targeted users also considered research of publicly available information and other profile information maintained by Meta (e.g., Facebook and Instagram profile information).

- Efforts related to determining the source of the exploit, including cross referencing current information from WhatsApp logs (e.g., IP addresses, domains, and phone numbers) with previously identified information for suspected "test accounts" used by attackers prior to the exploit, which included suspected accounts associated with NSO. Identifying the source of the exploit and related accounts to assist in disabling accounts and preventing those accounts from accessing WhatsApp.

- Attempting to map attackers with victims, including the determination of countries of origin for attacker accounts.

62.    Mr. Scott represented that in relation to Defendants' Exploit, he spent nearly all his working time on these efforts over a 2 to 3-month period beginning in or around April/May 2019. Mr. Scott further stated that ongoing work continued for "months and months," but did not provide an estimate of the portion of his time spent on these ongoing efforts. Using the low end of Mr. Scott's estimate (i.e., 2 months), 64 hours are allocated to the period May 2 through May 13,[117] and 256 hours are allocated to the period after May 13[118] in relation to Defendants' Exploit.

### c. Drew Robinson[119]

63.    Drew Robinson is currently a Security Engineer at Meta. At the time of Defendants' Exploit, Mr. Robinson was a Security Investigator at Meta.

---

[116] Discussion with Michael Scott.
[117] 8 hours per workday x 8 workdays between May 2 and May 13.
[118] 320 hours over a 2-month period (160 work hours in a month [40 hours per week x 4 weeks] x 2 months) less 64 hours between May 2 and May 13.
[119] Discussion with Drew Robinson.

64.     Mr. Robinson described his role as including:

- Serving as the "on call" for malware analysis and working with WhatsApp engineers to immediately analyze WhatsApp logs to evaluate the "payload" used to deliver the malware to victims.

- Performing various analyses of WhatsApp logs and server information to extract the payloads that had been deployed to help identify the source of the payload (i.e., the orchestrator of the attack).

- Assisting with identification of targeted WhatsApp users and map them back to the malware users. This included analyzing country codes associated with targeted accounts and the nature of the accounts (based in part on publicly available information and Facebook and Instagram profile information).

- Assisting WhatsApp engineers in developing and deploying the security patch.

- Ongoing monitoring for future attacks/exploits and further analysis of ways that NSO was targeting Plaintiffs' services.

- Continued assistance with victim identification.

- Supporting Plaintiffs' legal department and responding to requests for information.

65.     Mr. Robinson represented that he initially worked full time on the exploit for 3 weeks up to the deployment of the security patch, which he conservatively estimated to approximate 120 hours. Mr. Robinson estimated that he worked another 150-200 hours after the security patch was implemented. Using Mr. Robinson's estimates, 64 hours are allocated to the period May 2 through May 13,[120] and 150 hours are allocated to the period after May 13 in relation to Defendants' Exploit.

    *d. Aashin Guatam*[121]

66.     Aashin Guatam is currently a Director of Product Management at WhatsApp. At the time of Defendants' Exploit, Mr. Guatam was a Director of Customer Operations at WhatsApp.

67.     Mr. Guatam described his role as including:

---

[120] 8 hours per workday x 8 workdays between May 2 and May 13.
[121] Discussion with Aashin Guatam.

- Overall project management of the plan implemented by Plaintiffs to resolve Defendants' Exploit, including post-fix identification of and communication with targeted users, external communication strategy, and legal pursuits.

- Working with and guiding technical teams, operations teams, legal teams, and others to understand the attack and identify the victims of the exploit. This included identifying the targeted accounts and mapping them to the real-life users. The accounts were mapped to real-life users using information from WhatsApp accounts, associated social media accounts, and other publicly available information.

- Developing a victim outreach strategy and working with technical teams, operations teams, legal teams, and others to notify the identified victims of the exploit.

68.    Mr. Guatam represented to me that he spent, on average, 50% of his working hours from May/June to November 2019 working on this matter. As such, I have considered the low end of Mr. Guatam's estimate (i.e., beginning in June) that he worked 480 hours (6 months [June through November] multiplied by 160 working hours per month multiplied by 50%). Using Mr. Guatam's estimate, all 480 hours are allocated to the period after May 13 in relation to Defendants' Exploit.

    *e.  Otto Ebeling*[122]

69.    Otto Ebeling currently owns a cyber security consulting company that is sometimes contracted by Plaintiffs. At the time of responding to Defendants' Exploit, Mr. Ebeling was a Security Engineer at Meta, based in the United Kingdom.

70.    Mr. Ebeling described his role as including:

- Investigating initial reports relayed to him from WhatsApp engineers to ascertain if a vulnerability existed. This included determining whether the suspicious activity was benign or malicious.

- Understanding Defendants' Exploit and how it worked.

- Determining how to respond to and prevent Defendants' Exploit. Mr. Ebeling consulted with WhatsApp engineers that ultimately created and implemented the security patch.

- Monitoring applicable information to confirm the security patches were working as intended after they were implemented by Plaintiffs' employees.

---

[122] Discussion with Otto Ebeling.

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**                      Page 27

- Determining if Defendants were exploiting any other unknown vulnerabilities. This included reviewing and analyzing certain software code.

71. Mr. Ebeling represented to me that during the initial remediation work of resolving Defendants' Exploit, he spent all his working hours for 3 weeks on this project. Mr. Ebeling also informed me that he spent one-third (33%) to one-half (50%) of his working time for the second half of 2019 working on ongoing matters associated with Defendants' Exploit. Using Mr. Ebeling's estimates, 64 hours are allocated to the period May 2 through May 13,[123] and 320 hours[124] are allocated to the period after May 13 in relation to Defendants' Exploit.

*f. Jesus Barcons Palau*[125]

72. Jesus Barcons Palau is currently a Software Engineer at Meta, which was also his title at the time of Defendants' Exploit in May 2019.

73. Mr. Palau described his role as including:

- Consulting with security professionals to investigate abnormal "stanzas"[126] in data passing through WhatsApp servers. This included identifying and investigating stanzas that did not conform with specifications established by WhatsApp. After certain abnormal stanzas were identified, Mr. Palau worked to implement processes to detect other non-conforming and potentially malicious stanzas in data.

- Implementing code to detect malicious stanzas not adhering to WhatsApp specifications.

- Implementing measures to assure that invalid stanzas were blocked from WhatsApp servers.

74. Mr. Palau informed me that during the initial response efforts, he spent all his working time, and additional overtime hours, on this project. Mr. Palau represented to me that he spent more than 100% of his working hours from April 29 through May 10 on response efforts. Using Mr. Palau's estimates, 56 hours are allocated to the period May 2 through May 10[127] in relation to Defendants' Exploit.

---

[123] 8 hours per workday x 8 workdays between May 2 and May 13.
[124] 6 months multiplied by 160 working hours in a month multiplied by 1/3 of his working time.
[125] Discussion with Jesus Palau.
[126] Stanza is "a general term in WhatsApp for metadata -- for a type of metadata that is sent from a client to a server." Claudiu Gheorghe Deposition, 24:19-24.
[127] 8 hours per workday x 7 workdays between May 2 and May 10.

g. *Claudiu Gheorghe*[128]

75.    Claudiu Gheorghe was a Software Engineering Manager at Meta at the time of Defendants' Exploit in May 2019.

76.    Mr. Gheorghe described his role as including:

- Coordinating the investigation and remediation of Defendants' Exploit. Mr. Gheorghe orchestrated efforts among engineering teams, security teams, and legal teams.

- Supervising Meta engineers to execute the investigation and remediation of Defendants' Exploit. This included effectively allocating staffing resources to execute this project. Mr. Gheorghe performed a managerial role in connection with leading coordination for the investigation and remediation of Defendants' Exploit.

- Identifying victims of Defendants' Exploit.

- Assisting in drafting a white paper regarding Defendants' Exploit.

77.    Mr. Gheorghe represented to me that during the initial remediation work of resolving Defendants' Exploit, he spent all his working hours from May 2, 2019 through May 13, 2019 on this project. After the patch was implemented on May 13, 2019, Mr. Gheorghe informed me that he spent 50% of his time on this project for two more weeks. Using Mr. Gheorghe's estimates, 64 hours are allocated to the period May 2 through May 13,[129] and 40 hours are allocated to the period after May 13[130] in relation to Defendants' Exploit.

h. *YuanYuan Wang*[131]

78.    YuanYuan Wang is currently a Software Engineering Manager at Meta, which was also his title at the time of Defendants' Exploit in May 2019.

79.    Mr. Wang described his role as including:

- Confirming that the exploit was occurring. This included identifying abnormal patterns through his knowledge of the WhatsApp architecture.

---

[128] Discussion with Claudiu Gheorghe.
[129] 8 hours per workday x 8 workdays between May 2 and May 13.
[130] 80 hours over a 2-week period (2 weeks x 40 hours per week) x 50%.
[131] Discussion with YuanYuan Wang.

- Organizing and providing applicable information regarding Defendants' Exploit to security teams at Meta.

- Consulting with security teams at Meta to identify the software code permitting Defendants' Exploit.

- Understanding the software code relevant to Defendants' Exploit.

- Consulting with security teams at Meta to improve and secure the applicable software code. This fixed the software code permitting Defendants' Exploit.

80. Mr. Wang represented to me that during the initial remediation work of resolving Defendants' Exploit, he spent all his working hours from May 2, 2019 through May 13, 2019 on this project. Using Mr. Wang's estimate, 64 hours are allocated to the period May 2 through May 13[132]in relation to Defendants' Exploit.

### i.   Other Employees Identified by Claudiu Gheorghe[133]

81. In addition to the discussions I had with the above-noted individuals, Claudiu Gheorghe identified 14 other Meta professionals that participated in the investigation and response efforts.[134] As discussed, Mr. Gheorghe was a Software Engineering Manager at Meta who performed a managerial role leading coordination across multiple teams in connection with addressing Defendants' Exploit in May 2019.

82. Mr. Gheorghe provided descriptions of roles and estimates of hours worked for each of the Meta employees he identified as participating in the investigation and response efforts from May 2, 2019 through May 13, 2019. This is reflected in **EXHIBIT 2.2** to my report.

### 2.   Plaintiffs' Employee Labor Cost

83. After identifying the employees involved in responding to Defendants' Exploit, and their respective estimated labor hours, I determined the cost of this labor. To determine the cost of labor of each applicable employee, I multiplied each applicable employee's burdened labor rate by the number of hours worked on responding to Defendants' Exploit.

---

[132] 8 hours per workday x 8 workdays between May 2 and May 13.
[133] Discussion with Claudiu Gheorghe.
[134] **EXHIBIT 2.2.**

84.    The calculation of an employee's burdened labor rate not only considers the employee's salary, but also considers other expenditures paid by an employer to, or on behalf of, an employee. These additional expenditures can be paid directly to an employee (e.g., performance bonus or retirement contributions) or paid on behalf of an employee (e.g., the employer's share of healthcare insurance premiums or payroll taxes). In addition to base salary, the inclusion of an employer's additional expenditures to, or on behalf of, an employee reflects the employer's total economic cost incurred in connection with the subject employee's time.

85.    To calculate each employee's burdened labor rate, I relied on data provided by Plaintiffs detailing payroll information for specific employees which included wages, employee and employer payroll taxes, and certain employer-paid benefits. I also obtained employee bonus information and the amount of employer-paid health benefits. For purposes of determining a compensation rate for individual employees, I considered the following costs incurred by Plaintiffs:

- Salary

- Performance bonus

- Employer payroll taxes

- Employer portion of health benefits

- Restricted Stock Unit ("RSU") grants

86.    As detailed in **EXHIBIT 3.1**, I considered the above amounts and determined an hourly-equivalent compensation rate for each of the individuals discussed in the preceding section. I determined Plaintiffs' relevant expenditures by multiplying each applicable employee's hours spent on resolving Defendants' Exploit and for related ongoing work by their burdened labor rate. As summarized in the following table, Plaintiffs' expenditures to respond to Defendants' Exploit total ███████.

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**                    Page 31

**Table 3: Plaintiffs' Labor Expenses to Respond to Defendants' Exploit [135]**

| Employee Name | 2019 Title | Hours Worked | Hourly Rate | Cost of Labor |
|---|---|---|---|---|
| Cortney Padua | Security Engineer | 96 | ███ | ███ |
| Michael Scott | Threat Investigator | 320 | ███ | ███ |
| Drew Robinson | Security Investigator | 214 | ███ | ███ |
| Aashin Guatam | Director of Customer Ops. | 480 | ███ | ███ |
| Otto Ebeling | Security Engineer | 384 | ███ | ███ |
| Jesus Palau | Software Engineer | 56 | ███ | ███ |
| Claudiu Gheorghe | Software Engineering Manager | 104 | ███ | ███ |
| YuanYuan Wang | Software Engineering Manager | 64 | ███ | ███ |
| | | | **Cost of Labor** | ███ |
| | | **Cost of Labor (Additional Employees Identified by Mr. Gheorghe)** | | ███ |
| | | | **Total Cost of Labor** | ███ |

87.    The estimate included in Table 3 is conservative, as the calculations only consider the low-end of employee estimates, exclude certain employees who worked on the response for whom I do not have estimated hours, and while employees expressed that they worked extended hours and weekends, I do not include such extended hours and weekends in my calculations.

88.    While these individuals were salaried employees and were not paid on an hourly basis, the hourly equivalent labor rate provides a means to determine the cost of their respective time to Plaintiffs with respect to responding to Defendants' Exploit. While some of these individuals perform security-related tasks in the ordinary course of their employment by Plaintiffs, they would have directed this time to other efforts in the absence of Defendants' alleged conduct. Accordingly, these efforts and associated cost are reflective of an "opportunity cost" to Plaintiffs. Further, as this was a required effort in light of Defendants' Exploit, in the absence of these employees, Plaintiffs would have needed to expend resources to obtain these types of services from third parties.

### B. Defendants' Ill-Gotten Gains Subject to Disgorgement

89.    In this instance, Defendants' ill-gotten gains subject to disgorgement reflect the profit that Defendants derived from their unauthorized access to Plaintiffs' systems, including the use of Defendants' Exploit. I understand that Plaintiffs allege that Defendants' Exploit for the WhatsApp Service was ████████████████████████████████████████████████████████

---

[135] **Exhibits 1.1, 2.1, and 2.2.**

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**                    Page 32

█████████████████████████████████████, and that both Defendants' development and sale of that exploit violated its Terms of Service and federal and state law. Accordingly, I estimate Defendants' ill-gotten gains resulting from the development and licensing of Pegasus ████ █████████████████████, and any other spyware targeting Plaintiffs' systems based on the information available to date.

90.    As discussed in further detail, Plaintiffs assert that Defendants have not produced all relevant information, and depositions of Defendants' witnesses have only recently occurred[136] or are scheduled to occur after the date of this report. Accordingly, I reserve the right to update my analysis based on such information.

91.    Specifically, I understand that Plaintiffs requested from Defendants the information to evaluate Defendants' ill-gotten gains from targeting Plaintiffs' systems. As of the date of this report, I understand that Defendants have not produced certain financial information, ██████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████

92.    Given the absence of certain information requested from Defendants, my assessment of Defendants' profits recognized in conjunction with the alleged conduct relies on the documents produced to date and reasonable assumptions regarding certain information contained in those documents. Additional documents produced by Defendants (or other parties) and future deposition testimony may impact my analysis, assumptions, and conclusions.

93.    The following sections address my determination of Defendants' ill-gotten gains subject to disgorgement based on the information reasonably available to me to date.

       *1.   Total Reported Revenue from the Sale and License of the Pegasus Product*

94.    As an initial matter, I consider the reported revenues for Pegasus contained in certain financial information produced to date. ██████████████████████████████████████████

---

[136] Given the timing of Defendants' depositions, I have not fully evaluated the testimony or its impact on my analysis.



123. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, based
on the information contained in Table 8, a reasonable estimation of Defendants' profits earned in
connection with the targeting of 1,500 devices through Defendants' Exploit ranges from ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮

C.  DEFENDANTS' USE OF PLAINTIFFS' SYSTEMS

124. Counsel for Plaintiffs asked me to determine whether the use of Plaintiffs' systems for purposes
of Defendants' Exploit was worth more than $5,000 in one year to Defendants or their customers.
To do so, I consider the customer ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮

125. I first consider that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[188] **EXHIBITS 4 AND 4.1.**
[189] WA-NSO-00074412-414 at 413-414.

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**                    Page 46

126.    I next consider that the Defendants produced a document which appears to ████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████.[190] Table
9 summarizes ████████████████████████████████████████████████████████
████████

██████████████████████████████████████████████
████████████████████
████████      ████████      ████████      ████████
████████      ████████      ████████      ████████
████████      ████████      ████████      ████████
████                                       ████████

127.    From this data, it is my opinion that the use of Plaintiffs' systems for purposes of Defendants'
Exploit was ████████████████████████████████████, which exceeds $5,000 in one year.

*    *    *    *    *    *

---

[190] *See* NSO_WHATSAPP_00045858.
[191] NSO_WHATSAPP_00045858.
[192] ████████████████████████████████████████████████████████████
[193] ██████████████████████████████████████████

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**                    Page 47

128.    The procedures performed were limited to those described herein based on the documents provided to date and other information obtained. Information obtained after the date of this report, or within a short period of time prior to its issuance, may affect this analysis and this effect may be material. If requested, I will update my analysis.

129.    My procedures were performed solely with respect to the above referenced litigation. This report is not to be reproduced, distributed, disclosed, or used for any other purpose.

**STOUT**

_____
Dana M. Trexler, CPA/CFF                                        August 30, 2024

# EXHIBIT C

FILED UNDER SEAL