Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com
         gina.cora@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., a Delaware corporation, | Case No. 4:19-cv-07123-PJH |
| Plaintiffs, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, | Date:   November 7, 2024<br>Time:  1:30 p.m.<br>Ctrm:  3 |
| Defendants. | Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

**[REDACTED VERSION]**

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .......................................................................................................1

LEGAL STANDARD....................................................................................................................1

ARGUMENT ...............................................................................................................................1

I.     THE COURT HAS PERSONAL JURISDICTION OVER NSO...............................1

II.    NSO IS LIABLE ON PLAINTIFFS' BREACH OF CONTRACT CLAIM..............2

     A.    NSO Agreed to the Terms................................................................2

     B.    NSO Breached the Contract ............................................................3

     C.    Plaintiffs Did Not "Waive" Any Known Rights...............................5

     D.    Plaintiffs Suffered Damages ...........................................................5

III.   NSO IS LIABLE ON PLAINTIFFS' CFAA CLAIMS.......................................5

     A.    NSO Violated § 1030(a)(2) and § 1030(a)(4) of the CFAA ...........5

          1.    NSO Intentionally Accessed WhatsApp's Servers and the Target Devices.......................................................5

          2.    NSO Accessed WhatsApp Servers and the Official Client on Target Devices Without Authorization or Exceeded Any Purported Authorized Access ...........................................7

             a)    The Terms of Service Did Not Authorize NSO's Access........7

             b)    NSO Bypassed the Restrictions Built Into the Official Client.....................................................................9

             c)    NSO ███████████████████ ..................................10

             d)    NSO Exceeded Any Purported Authorization ......................11

          3.    NSO Defrauded Plaintiffs and WhatsApp Users in Violation of § 1030(a)(4) ...................................................12

     B.    NSO Conspired with Its Clients to Use Its Technology in Violation of § 1030(b).........................................................................13

     C.    NSO Trafficked in Password-Like Information in Violation of § 1030(a)(6) ..........................................................................14

     D.    NSO Caused Plaintiffs a Loss of More than $5,000 ....................15

IV.   NSO IS LIABLE ON PLAINTIFFS' CDAFA CLAIM ...........................................15

i

V.      NSO PROVIDES NO EVIDENCE SUPPORTING AN UNCLEAN HANDS
        DEFENSE ........................................................................................................15

CONCLUSION ........................................................................................................15

1

## TABLE OF AUTHORITIES

2

<u>CASES</u>

3

<u>PAGE(S)</u>

4

5

*Andrews v. Sirius XM Radio Inc.*,
    932 F.3d 1253 (9th Cir. 2019) ................................................................. 15

6

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ...................................................... 14

7

8

*Artifex Software, Inc. v. Hancom, Inc.*,
    2017 WL 4005508 (N.D. Cal. Sept. 12, 2017) ........................................... 5

9

*Auntie Anne's, Inc. v. Wang*,
    2014 WL 11728722 (C.D. Cal. July 16, 2014) ........................................... 5

10

11

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ....................................................................... 3

12

*Cahill v. Golden Gate Bridge, Highway & Transp. Dist.*,
    2016 WL 1070655 (N.D. Cal. Mar. 18, 2016) ............................................ 2

13

14

*Cannon v. Santos*,
    2009 WL 10701940 (N.D. Ga. Aug. 6, 2009) ............................................. 3

15

*CBS, Inc. v. Merrick*,
    716 F.2d 1292 (9th Cir. 1983) .................................................................... 5

16

*Creative Computing v. Getloaded.com, L.L.C.*,
    386 F.3d 930 (9th Cir. 2004) ............................................................... 5, 15

17

18

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ........................................... 4, 9, 10, 11, 15

19

*Guangzhou Yuchen Trading Co. v. Dbest Prods. Inc.*,
    2023 WL 2626373 (C.D. Cal. Feb. 24, 2023) ............................................ 9

20

21

*Hansen v. United States*,
    7 F.3d 137 (9th Cir. 1993) .......................................................................... 9

22

*Ingram v. Pac. Gas & Elec. Co.*,
    2014 WL 295829 (N.D. Cal. Jan. 27, 2014) .............................................15

23

*Jackson v. Amazon.com, Inc.*,
    65 F.4th 1093 (9th Cir. 2023) ..................................................................... 3

24

25

*Laatz v. Zazzle, Inc.*,
    2024 WL 377970 (N.D. Cal. Jan. 9, 2024) ................................................. 3

26

*Mahoney v. DePuy Orthopaedics, Inc.*,
    2007 WL 3341389 (E.D. Cal. Nov. 7, 2007) .............................................. 5

27

*Martinez v. Mcnabb*,
    2004 WL 103541 (Cal. Ct. App. Jan. 23, 2004) ........................................ 5

28

*Marshall v. Hipcamp Inc.*,
    2024 WL 2325197 (W.D. Wash. May 22, 2024) ........................................................ 3

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ............................................................. 5, 15

*Multiven, Inc. v. Cisco Sys.*,
    725 F. Supp. 2d 887 (N.D. Cal. 2010) .................................................................. 15

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ............................................................................. 3

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ......................................................................... 1, 3

*Norse v. City of Santa Cruz*,
    629 F.3d 966 (9th Cir. 2010) ............................................................................. 2

*Perez-Encinas v. Amerus Life Ins. Co.*,
    468 F. Supp. 2d 1127 (N.D. Cal. 2006) ................................................................ 4

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
    632 F. Supp. 3d 1108 (S.D. Cal. 2022) ................................................................ 2

*Plumley v. S. Container, Inc.*,
    2001 WL 1188469 (D. Me. Oct. 9, 2001), *aff'd*, 303 F.3d 364 (1st Cir. 2002) ............ 2

*Rainey v. Am. Forest & Paper Ass'n*,
    26 F. Supp. 2d 82 (D.D.C. 1998) ....................................................................... 9

*Ryanair DAC v. Booking Holdings Inc.*,
    636 F. Supp. 3d 490 (D. Del. 2022) .................................................................... 6

*Ryanair DAC v. Booking Holdings Inc.*,
    2024 WL 3732498 (D. Del. June 17, 2024) .......................................................... 15

*S.F. Baykeeper v. W. Bay Sanitary Dist.*,
    791 F. Supp. 2d 719 (N.D. Cal. 2011) ................................................................. 2

*Sellers v. JustAnswer LLC*,
    73 Cal. App. 5th 444 (2021) ............................................................................. 3

*Sylabs, Inc. v. Gregory Rose*,
    2024 WL 4312719 (N.D. Cal. Sept. 26, 2024) ..................................................... 15

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ...................................................................... 8, 10

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
    252 F. App'x 123 (9th Cir. 2007) ...................................................................... 3

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2016) ............................................................................. 6

*United States v. Morris*,
    928 F.2d 504 (2d Cir. 1991) ............................................................................. 14

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ............................................................................. 6

*United States v. Nosal,*
    844 F.3d 1024 (9th Cir. 2016) ............................................................... 8, 11

*United States v. Phillips,*
    477 F.3d 215 (5th Cir. 2007) ...................................................................... 12

*United States v. Saini,*
    23 F.4th 1155 (9th Cir. 2022) ...................................................................... 12

*Van Buren v. United States,*
    593 U.S. 374 (2021) ................................................................... 7, 11, 14, 15

*Wages v. I.R.S.,*
    915 F.2d 1230 (9th Cir. 1990) ...................................................................... 2

## STATUTES & RULES

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 ................................................ *passim*

28 U.S.C. § 1605(a)(2), (5) ............................................................... 14

Cal. Civ. Code § 1638 ...................................................................... 4

California Comprehensive Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 ......... 14

Fed. R. Civ. P. 30(b)(6) ............................................................... 2, 9

Fed. R. Civ. P. 56(e) ......................................................................2

There is no genuine dispute regarding NSO's liability under the CFAA and CDAFA, and for contractual breaches of WhatsApp's Terms.  NSO admits that ██████████████████████ ████████████████████████████████████████.  NSO admits █████████ ████████████████████████████████████████████████████████. ████████████████████████████████████████████████████.  NSO admits that, ████████████████████████████████████████████████ NSO admits ████████████████ ████████████████████████████████████████████████████ NSO admits ████████████████ ████████████████████████████████████████████████████ ████████████████████████  These facts are undisputed and dispositive.  The Court has already ruled that they suffice to establish liability.  NSO is liable as a matter of law.

In its opposition, NSO raises no genuine dispute regarding the facts that establish its liability. Instead, NSO asserts legal arguments unsupported by evidence and contrary to controlling law. Moreover, for the reasons presented in Plaintiffs' Motion for Sanctions, Dkt. No. 406, NSO should not be allowed to oppose summary judgment via self-serving declarations or a purported lack of evidence when it has withheld the underlying evidence in violation of the Court's orders.

## LEGAL STANDARD

Because Plaintiffs have carried their "burden of production" to show that there is no genuine dispute as to NSO's liability, summary judgment must be granted if NSO "fails to produce enough evidence to create a genuine issue of material fact."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citations omitted).

## ARGUMENT

### I.  THE COURT HAS PERSONAL JURISDICTION OVER NSO

The undisputed evidence cited in Plaintiffs' Motion establishes jurisdiction over NSO for the reasons explained in Plaintiffs' opposition, Dkt. No. 422, to NSO's cross-motion, Dkt. No. 397.  If NSO is permitted to incorporate its personal-jurisdiction arguments by reference, the Court should also permit Plaintiffs to do the same.  In any event, the Court can reach the merits before resolving

1

1  personal jurisdiction.  *See Wages v. I.R.S.*, 915 F.2d 1230, 1235 (9th Cir. 1990).

2  **II.  NSO IS LIABLE ON PLAINTIFFS' BREACH OF CONTRACT CLAIM**

3  **A.  NSO Agreed to the Terms**

4  NSO contends that the "evidence is not sufficient to prove NSO agreed to the WhatsApp

5  [Terms]" because there is supposedly "no evidence" NSO had actual knowledge of the Terms.  Opp.

6  3.  That argument is contrary to the undisputed facts and foreclosed by controlling law.  NSO's

7  documents and testimony show that ████████████████████████████████████████████████

8  ████████.  Moreover, the legal sufficiency of "clicking" to manifest consent is well established.

9  Plaintiffs have carried their burden of producing undisputed facts sufficient to show that users

10  must accept the Terms to create a WhatsApp account, and that NSO agreed to the Terms accordingly.

11  Mot. 6-8.  After downloading and opening the Official Client, "[t]he welcome screen includes links

12  to the terms of service and the privacy policy," and "[t]he user is then given the opportunity to agree

13  to the terms of service[] and continue with the registration flow."  Ex. 2 (Lee Dep.) at 174:4-13.  At

14  that point in the account-creation process, "in order to proceed with the registration flow, you have

15  to click a button . . . to demonstrate agreement of the terms of service."  *Id.* at 180:4-12.  Only "[i]f

16  the user chooses to agree to the terms of service and continue" would they be able to register a phone

17  number and create an account.  *Id.* at 174:4-21.[1]  NSO admits ████████████████████████████

18  ████████████████████████, Ex. 8 (Eshkar Dep.) at 70:16-72:25, ████████████████████████████

19  ████████████████████████████████████, Dkt No. 401-3 (Andre Decl.) ¶¶ 3-8, Ex. A.[2]

20  These undisputed facts suffice to bind a user to the Terms under controlling case law.  *See*

21

22  ─────────────────

[1] Plaintiffs can rely on Jonathan Lee's Rule 30(b)(6) testimony at summary judgment.  *See Plumley*

23  *v. S. Container, Inc.*, 2001 WL 1188469, at *4 (D. Me. Oct. 9, 2001), *aff'd*, 303 F.3d 364 (1st Cir. 2002).  Lee testified to "the company's knowledge," *Persian Gulf Inc. v. BP W. Coast Prods. LLC*,

24  632 F. Supp. 3d 1108, 1127-28 (S.D. Cal. 2022), which Plaintiffs "will be able to prove through admissible evidence" at trial, if necessary.  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir.

25  2010).  If necessary, Plaintiffs request the opportunity to do so now.  *See* Fed. R. Civ. P. 56(e).

[2] NSO's suggestion that Plaintiffs needed to add Meghan Andre to their initial disclosures is

26  "unreasonable and burdensome (and rarely, if ever, done in practice)."  *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 734-35 (N.D. Cal. 2011).  Plaintiffs' experts already submitted

27  declarations verifying their reports and curing any admissibility concerns.  *See* Dkt. Nos. 422-3, 422-4, 422-5; *Cahill v. Golden Gate Bridge, Highway & Transp. Dist.*, 2016 WL 1070655, at *5

28  (N.D. Cal. Mar. 18, 2016) ("subsequent verification" permits use of expert reports).

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (contract enforceable when "users must check a box explicitly stating 'I agree' in order to proceed"); *see also Laatz v. Zazzle, Inc.*, 2024 WL 377970, at *7 (N.D. Cal. Jan. 9, 2024) ("hyperlinks constitute reasonably conspicuous notice of terms" and "clicking a button such as the 'Create Account' button is sufficient to manifest assent"); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471-72 (2021) (surveying "overall trend" that where a user is "signing up for an ongoing account," "any textual notice [is] sufficient to bind a consumer").[3]   Further, NSO's documents show ███████████████████████ ██████████████████████ *Compare* Ex. 24 at -959[4] *with* Ex. 11 at -827.

    NSO fails to produce any *evidence* creating any material dispute about its knowledge of the Terms, which it "must" do to defeat summary judgment. *Nissan Fire*, 210 F.3d at 1103.  There is no *evidence* that NSO was unaware that it was agreeing to the Terms when ██████████████ ████████████████████████████████████████████████████████ ██, *see* Ex. 6 (Gazneli Dep.) at 81:3-7; Ex. 17, ██████████████████████████, *see* Ex. 27.[5]   In fact, in opposing summary judgment on the CFAA claims, NSO asserts it *did* agree to the Terms.  Opp. 10-11.  NSO cannot argue inconsistent facts at summary judgment.  *See, e.g.*, *SEC v. Johnson,* 2022 WL 423492, at *5 (C.D. Cal. Jan. 26, 2022) ("[T]he Court cannot consider any inconsistent facts Defendant produces to establish a genuine dispute of material facts."); *cf. Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007).

    **B.  NSO Breached the Contract**

    Plaintiffs' Motion showed that NSO breached numerous provisions of the Terms.  Mot. 8-10.  NSO cannot avoid summary judgment by contorting the Terms' plain meaning, because the contract language should be given "the meaning a layperson would ordinarily attach to it."  *Perez-Encinas v.*

---

[3] NSO's cases are inapposite.  *See Marshall v. Hipcamp Inc.*, 2024 WL 2325197, at *5 (W.D. Wash. May 22, 2024) (allowing users to continue using Apple or Facebook); *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1098 (9th Cir. 2023) (addressing amended terms); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (browsewrap agreement); *Berman*, 30 F.4th at 856-58 (same).

[4] Unless otherwise indicated, all emphases have been added.

[5] If NSO believed the appearance of the "button" created a genuine dispute, it could have obtained a publicly available screenshot and submitted it with its opposition.  *See* Youssef Decl. 4-6.  It did not, because the appearance makes clear NSO had adequate notice it was consenting to the Terms.

3

1  *AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006) (citing Cal. Civ. Code § 1638).

2  **1.** The Terms prohibit, "**reverse engineer[ing]**" and "**decompil[ing], or extract[ing] code**

3  from [WhatsApp's] Services."   Ex. 11 at -827.   NSO has admitted ███████████████

4  ████████████████████████████████████████████████████████████

5  █████████.  Ex. 6 (Gazneli Dep.) at 66:2-77:2, 225:5-227:5.  And although NSO argues the term

6  "reverse-engineering" is ambiguous, Opp. 6, ████████████████████████████

7  ██████████████████████████████ Ex. 6 (Gazneli Dep.) at 144:10-147:9.  NSO's

8  own documents show ████████████████████████████████████████

9  ███████████████████████████████████. Ex. 24 at -959. NSO

10  understood that ███████████████████████████████████. *Id.*; Ex. 6

11  (Gazneli Dep.) at 153:2-17, 231:22-25.  NSO also *argues* that ████████████████████

12  ██████████████████████████████████. Opp. 6. But it provides

13  no *evidence* to substantiate that claim.  To the contrary, NSO said █████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████ Ex. 6. (Gazneli Dep.) at 66:19-71:5, 246:7-247:1.

16  **2.** The Terms prohibit using, "or assisting others in using," WhatsApp (i) to "**collect the**

17  **information of or about [WhatsApp's] users in any impermissible or unauthorized manner**,"

18  (ii) to "**gain or attempt to gain unauthorized access** to [WhatsApp's] Services or systems," or

19  (iii) in ways that "**are illegal.**"  Ex. 11 at -827.  NSO argues that it never operated Pegasus itself.

20  Opp. 7.  That is false, but also not a defense, because the Terms prohibit "assist[ing] others to" breach

21  the Terms.   Ex. 11 at -827; *see* Mot. 23-24 (citing evidence of NSO ████████████████).

22  "Impermissible" and "unauthorized" are not vague, as NSO claims (Opp. 7), but require WhatsApp's

23  or users' permission. *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067-68 (9th Cir.

24  2016).  NSO provides no evidence it had either. *See* Mot. 9-11; *infra* § III.A.1.

25  **3.** The Terms prohibit sending "**viruses or other harmful code**" via WhatsApp. Ex. 11 at -

26  827. NSO admits ████████████████, but argues that "'harmful code' is a subjective term." Opp.

27  7. It is not, and easily covers ████████████████████████████████████████

28  ████████████████████████████████████████████████ Ex. 6 (Gazneli

Dep.) at 300:16-19; 311:13-312:15; Ex. 5 (Defs.' Supp. Resps. to Pls.' First Interrogs.) at 11.

### C.  Plaintiffs Did Not "Waive" Any Known Rights

NSO's waiver argument is meritless.  Waiver requires an "intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it."  *CBS, Inc. v. Merrick*, 716 F.2d 1292, 1295 (9th Cir. 1983).  Selective enforcement is not a waiver.  *See Mahoney v. Depuy Orthopaedics, Inc.*, 2007 WL 3341389, at *9 (E.D. Cal. Nov. 8, 2007); *Martinez v. McNabb*, 2004 WL 103541, at *8 (Cal. Ct. App. Jan. 23, 2004).  Plaintiffs could not waive before learning of NSO's breaches, and NSO cites no evidence they waived after.  NSO's cases concerning parties that waived after learning of a breach do not apply.  Opp. 8.  Moreover, NSO's records show █████████ █████████████████████████████████████████.  *See* Ex. 24 at -958-60; Ex. 6 (Gazneli Dep.) at 206:12-208:1.  The non-waiver provision, *see* Ex. 11 at -832, also precludes a waiver.  *See Auntie Anne's, Inc. v. Wang*, 2014 WL 11728722, at *14 (C.D. Cal. July 16, 2014).

### D.  Plaintiffs Suffered Damages

NSO's breaches damaged Plaintiffs.  *See* Mot. 11.  NSO does not dispute Plaintiffs incurred investigation costs, but argues that they were not foreseeable or caused by NSO.  Opp. 8-9.  That claim is meritless.  NSO knew █████████████████████████████████.  Ex. 37 (Gazneli Dep.) at 214:12-18.  That NSO exploited preexisting code does not break the "causal chain." *See Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935–36 (9th Cir. 2004).  NSO also concedes (Opp. 9) that disgorgement "can satisfy the 'damages' element," which only requires that NSO "obtained a benefit they would not have otherwise obtained and profited from that benefit without providing a corresponding benefit to" Plaintiffs.  *Artifex Software, Inc. v. Hancom, Inc.*, 2017 WL 4005508, at *4 (N.D. Cal. Sept. 12, 2017); *see* Mot. 11.  Finally, even if there were "no appreciable detriment" to WhatsApp (which there was), Plaintiffs would be entitled to nominal damages.  *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1258 (N.D. Cal. 2022).

## III. NSO IS LIABLE ON PLAINTIFFS' CFAA CLAIMS

### A.  NSO Violated § 1030(a)(2) and § 1030(a)(4) of the CFAA

#### 1.  NSO Intentionally Accessed WhatsApp's Servers and the Target Devices

Plaintiffs' Motion showed that NSO intentionally accessed WhatsApp's servers and the target

5

1    devices.  Mot. 12-13.  NSO offers two responses.  Both lack merit.

2          First, NSO claims it lacked intent because ███████████████████ (Opp. 22), but

3    it provides no *evidence* that ████████████████████.  NSO admits █████████████

4    ███████████████████████████████████████████████████████████████

5    ████████.  Mot. 9.  NSO points to ██████████████████████████████████████,

6    but provides no evidence that ██████████████████████████████████████████

7    ██████████████████████████████████.  Opp. 22 (citing Akro Decl., Ex. H).  NSO

8    also points to ██████████████████████████████████████████████████████

9    *id.*, but ██████████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████████████

11   ███████████████████████████████████████████████████████████████

12   █████████████████████████████████████████ ██████ ███████████████████

13   █████████████████████████  NSO's belief that its customers would obtain such

14   authorization is not a defense.  *See United States v. Christensen*, 828 F.3d 763, 794 (9th Cir. 2015).

15         Second, NSO contends there is "no evidence NSO 'accessed . . . target devices.'"  Opp. 10.

16   That contention fails.  NSO admits its ██████████████████████████████████████

17   ███████████████████████████████████████████████████████████ Ex. 6

18   (Gazneli Dep.) at 82:14-83:11.  NSO was the principal behind ██████████████████, and ██

19   ████████████████████ does not cut off NSO's liability.  "Numerous courts have recognized that

20   vicarious or indirect liability under section 1030(g) extends to parties who direct, encourage, or

21   induce others to commit acts that violate the statute."  *Ryanair DAC v. Booking Holdings Inc.*, 636

22   F. Supp. 3d 490, 499 (D. Del. 2022).[7]  NSO admits ██████████████████████████████

23   ███████████████████████████████████████████████████████████████

24   ██████████████████████████████████████████████████████ and ████████████,

25   _____

26   [6] Ex. 38 (Shohat Dep.) at 29:24-32:14, 180:6-185:16 (admitting ███████████████████████████████

27   [7] NSO relies on cases where outsiders induced insiders to obtain information from computers for
     them.  Opp. 10 n.13 (citing cases).  *United States v. Nosal* ("*Nosal I*"), 676 F.3d 854, 863 (9th Cir.

28   2012), concluded those cases involved no CFAA violation because the insider *had* authorization.

1     ███████████████████████████████████████████████████████████████

2     ███████████████████████████ Gazneli Decl. ¶ 4.  In other words, ████████████

3     ███████████████████████████████████████████████████████████████

4     ███████████████████████████████████████████████████████████████

5     ███████████████████████████ Ex. 10 (Shohat Dep.) at 68:1-16.  NSO ███████████

6     ████████████████████, Ex. 6 (Gazneli Dep.) at 66:2-77:2, 226:2-227:5; NSO ███████

7     █████████████████, Ex. 31; NSO ███████████████████, Ex. 38 (Shohat Dep.) at

8     143:15-144:23; NSO ███████████████████████████████████████

9     Dkt. No. 1-1 at 37-38, 46-47; NSO ████████████████████████, Ex. 8 (Eshkar

10    Dep.) at 39:15-17, 151:3-153:8; and NSO ████████████████, Ex. 5 (Defs.' Supp. Resps. to

11    Pls.' First Interrogs.) at 15-16.  NSO is therefore liable for ████████████████.

12          Moreover, NSO admits ██████████████████████████ Opp. 10.

13    That alone suffices for liability because NSO ██████████████████ through unauthorized

14    ██████████████████, 18 U.S.C. § 1030(a)(2), and also obtained the use of WhatsApp's

15    computers through fraud, *id.* § 1030(a)(4).  The CFAA "forecloses" any "defense" that NSO "was

16    'entitled to obtain' the information . . . through another method," such as direct access to the device.

17    *Van Buren v. United States,* 593 U.S. 374, 385 (2021); *see* Mot. 20-23; Dkt. No. 422 at 16-17.

18          **2.  NSO Accessed WhatsApp Servers and the Official Client on Target Devices**

19                **Without Authorization or Exceeded Any Purported Authorized Access**

20          NSO's access to WhatsApp's servers and user devices was unauthorized because NSO

21    (i) ████████████████████████████; (ii) █████████████████

22    ████████████████ and (iii) ███████████████████

23    ████████████████████.  *See* Mot. 13-20.  NSO provides no

24    evidence creating a genuine dispute as to any one of these grounds, let alone all of them.

25          *a)*  **The Terms of Service Did Not Authorize NSO's Access**

26          Despite NSO's contention that there is no evidence NSO agreed to the Terms, Opp. 3, it

27    nonetheless argues that its agreement to those Terms "forecloses" any "without authorization" claim.

28    Opp. 10.  NSO cannot have it both ways.  If it did not agree, as NSO claims, it had no authorization.

1   But as explained above, there is no genuine dispute NSO *did* accept the Terms.  *See supra* II.A.

2   There is no inconsistency in Plaintiffs' position that (as NSO paraphrases it) "NSO agreed to

3   WhatsApp's [Terms] and that NSO completely lacked authorization to use WhatsApp's servers."

4   Opp. 10.  The Terms only authorize NSO "to use our Services," defined as "our ***apps***, services,

5   features, software, or website."  Ex. 11 at -825, -828.  The Court recognized that WhatsApp users

6   only have authorization to send messages "using the WhatsApp app," Dkt. No. 111 at 37, and NSO's

7   own documents indicate NSO understood ███████████████████████████████

8   ███████.  *See* Ex. 24 at -959.  Even on a technological level, the authentication keys

9   needed to access WhatsApp servers are created only on the Official Client when it is downloaded,

10  installed, and registered.  Ex. 4 (Gheorghe Dep.) at 135:20-140:1.  NSO admits ██████████

11  ███████████████████████████.  Ex. 6 (Gazneli Dep.) at 278:16-279:6.

12  WhatsApp's servers were also designed to work only with the Official Client.  Ex. 4 (Gheorghe Dep.)

13  at 279:25-280:10.  NSO thus █████████████████████████████████████████

14  ████████████████████.  Ex. 6 (Gazneli Dep.) at 279:16-282:10.

15  Thus, neither NSO nor any other user ever had any "degree[ ] of authorization" to access

16  WhatsApp's servers themselves.  Opp. 11.  The Terms only authorize users to use *the Official Client*,

17  and *the Official Client* had the technological permissions necessary to access WhatsApp's servers.

18  NSO's argument that its ███████████████████████████████████████

19  ███████████████████████████ is essentially the same argument the former

20  employee made in *Nosal II* that his use of a current employee's password only violated a "limit" on

21  that employee's authorization.  *See United States v. Nosal* ("*Nosal II*"), 844 F.3d 1024, 1035-37 (9th

22  Cir. 2016).  The Ninth Circuit rejected that argument as "ignor[ing] common sense and turn[ing] the

23  statute inside out," because the current employee "had no mantle or authority to override [the

24  employer's] authority to control access to its computers and confidential information by giving

25  permission to former employees."  *Id.*  NSO similarly had no authority ███████████████

26  ███████████████.  *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1073-74 (9th Cir.

27  2004) ("us[ing] someone else's password" and "claim[ing] the server 'authorized' his access" is the

28  "paradigm" of what the CFAA prohibits).

8

1   In addition, even if the Terms granted NSO some limited authorization to access WhatsApp's

2   servers (they did not), that authorization can be— ███████████ *see infra* § III.A.2.b—revoked.

3   *Power Ventures*, 844 F.3d at 1067-68 ("[A] defendant can run afoul of the CFAA when he or she has

4   no permission to access a computer *or* when such permission has been revoked explicitly.").

### *b)* NSO Bypassed the Restrictions Built Into the Official Client

6   The undisputed evidence demonstrates that NSO circumvented technological limitations built

7   into the Official Client ████████████████████████. Mot. 15-17. NSO attempts

8   to create a dispute of fact about ██████████████ by presenting Tamir Gazneli's self-serving

9   declaration, which claims that ████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████ Gazneli Decl. ¶ 5. Mr. Gazneli's declaration contradicts his own sworn

12  testimony, in his capacity as NSO's corporate representative, that ██████████████████

13  ████████████████████████ Ex. 6 (Gazneli Dep.) at 159:12-

14  162:3. Mr. Gazneli's declaration neither addresses this contradiction, nor attaches any documentary

15  evidence—such as the Pegasus code NSO was ordered to produce (which it did not)—to support his

16  new contention that NSO ████████████████████. Mr. Gazneli's declaration

17  therefore cannot create a genuine dispute of fact. *See Hansen v. United States*, 7 F.3d 137, 138 (9th

18  Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary

19  judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of

20  material fact."); *Rainey v. Am. Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998) (excluding

21  affidavit at summary judgment contrary to Rule 30(b)(6) testimony); *Guangzhou Yuchen Trading

22  Co. v. DBest Prods. Inc.*, 2023 WL 2626373, at *2 (C.D. Cal. Feb. 24, 2023) (same).

23  Even if Mr. Gazneli's declaration were considered, it does not create any material dispute of

24  fact. NSO admits ████████████████████ Gazneli Decl. ¶ 5, and that

25  ████████████████████████████████████████. Opp.

26  14. Mr. Gazneli does not explain how ████████████████

27  ████████████████████████ *Cf.* Akro. Decl., Ex. A (Palau Dep.) at 129:8-20, 131:5-23

28  ("[U]nder no circumstances" would "one of our official clients" "send something like that" and

9

1   "[t]his is obviously a malicious client").  Taken as true, NSO either ████████████

2   ████████████████████████████████████████████████████████

3   ████████, Ex. 6 (Gazneli Dep.) at 159:12-162:3, or ████████████████████

4   ████████████████████████████████████, *see* Youssef Decl. ¶¶ 6-13.

5   Either way, NSO accessed WhatsApp servers by deceit, ████████████████████

6   ████████████████.  *Theofel*, 359 F.3d at 1072-74 (access is unauthorized if defendant

7   knew "plaintiff was mistaken as to the nature and quality of the invasion intended" (citation omitted)).

8           *c)*   **NSO** ████████████████████████████████████

9           Even if NSO could credibly argue that its access was authorized at some point, Plaintiffs

10   revoked that authorization no later than when this action was filed.  NSO ████████████

11   ████████████████████████████████████████████████████████

12   ████████████████████████   Contrary to NSO (Opp. 14-15), that revocation was

13   "categorical," "explicit," "unequivocal," and "particularized."

14           Plaintiffs' security updates ████████████████████████.  NSO's own

15   records show that the 2018 security updates ████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████.  Ex. 6 (Gazneli Dep.) at 254:2-23, 256:16-25, 258:1-16.  Similarly, NSO's own

18   records show that the 2019 updates ████████████████████████

19   ████████████████████   *Id.* at 262:3-265:4.  Those changes are no less

20   categorical simply because they did not interfere with WhatsApp's billions of users' ability to use

21   the Official Client to "send ordinary WhatsApp messages," Opp. 14, and did not anticipate NSO's

22   "technological gamesmanship."  *See Power Ventures*, 844 F.3d at 1067.

23           Plaintiffs' revocation was also explicit, unequivocal, and particularized.  NSO does not

24   dispute that ████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   Mot. 17; Opp. 15.  NSO immediately understood ████████████████████

27   ████████████████████, Opp. 15, but that ████████████████████

28   ████████████████████   Ex. 9; Ex. 6 (Gazneli Dep.) at 254:2-23; Ex. 25 (Vance Rep.) at

                                                                10

7-10.  Plaintiffs ████████████████ in May 2019, but also disabled NSO's known accounts and filed a lawsuit alleging violations of federal and state law, and WhatsApp's Terms, and seeking to enjoin NSO from "[a]ccessing or attempting to access WhatsApp's and Facebook's service, platform, and computer systems," and from "creating or maintaining any WhatsApp or Facebook account."  Dkt. No. 1 at 14; *see* Mot. 18-19.  These steps are indistinguishable from the cease and desist letter and IP blocks deemed sufficient to revoke access in *Power Ventures*.  *See* 844 F.3d at 1067 & n.3. ████████████████████████████████.[8]

### d)  NSO Exceeded Any Purported Authorization

Even if there were a dispute of fact regarding ████████████████████████, NSO still exceeded authorized access ████████████████████ ████████████████████████  None of NSO's arguments to the contrary have merit.

First, NSO's argument that it did not obtain information *from WhatsApp servers* that it was "not entitled so to obtain" (Opp. 16) fails.  There is no requirement that the information only come from the servers.  NSO's contention that Section 1030(e)(6) requires the information to come from the same computer accessed without authorization is incorrect.  Regardless, NSO does not dispute that "computer" is defined to "include[ ] any data storage facility or communications facility directly related to or operating in conjunction with such device," 18 U.S.C. § 1030(e)(1), and thus includes "computer networks."  *Nosal II*, 844 F.3d at 1032 n.2.  NSO also does not dispute that WhatsApp is a communications network, and the target devices are "directly related to or operating in conjunction with" the servers.  Mot. 22.  Thus, NSO's admission ███████████████████████ ████████████████████████████████████ Ex. 6 (Gazneli Dep.) at 306:12-307:15, suffices to prove NSO exceeded authorized access.  NSO also ██████████████████████████.  NSO claims ██████ ████████████████████████████████ Opp. 16.  Even if that were true, it is no "defense" that NSO "was 'entitled to obtain' the information . . . through

---

[8] Plaintiffs only learned of ████████████████ at Mr. Gazneli's deposition on September 4, 2024.  If necessary, the Court should deem the complaint amended to conform to the evidence.

another method." *Van Buren*, 593 U.S. at 385.  And NSO does not dispute █████████
████████████████████████████████████████████████████████.  Mot. 20-21.

Second, NSO argues it ████████████████████████████████████████████,
but that is not what the CFAA requires.  *Van Buren* made clear that NSO must "obtain[ ] *information*
located in particular areas of the computer—such as files, folders, or databases—that are off limits
to" NSO.  593 U.S. at 396.  As shown above, NSO did ████████████████████████████
███████████████████████████████████████████.

Third, NSO argues it did not circumvent any technological limitations.  NSO is wrong.  NSO
admits ███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████ Opp. 13-14; *see* Akro. Decl., Ex. A (Palau Dep.) at 129:8-
20, 131:5-23 ("[U]nder no circumstances" would the Official Client "send something like that" and
"[t]his is obviously a malicious client").  The Official Client could ███████████████████
███████████████████████████████████████████████ (Opp. 13) ██████████.
NSO also ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████, *infra* § III.A.3.  "[F]inding 'holes in . . . programs,' . . . amounts to obtaining
unauthorized access," *United States v. Phillips*, 477 F.3d 215, 220 (5th Cir. 2007), not █████████
████████████████████████████████, as NSO claims. Opp. 17-18.

### 3.  NSO Defrauded Plaintiffs and WhatsApp Users in Violation of § 1030(a)(4)

Plaintiffs' Motion established that NSO violated CFAA § 1030(a)(4).  Mot. 22-23.  NSO
argues that "intent to defraud" should be construed as requiring "an intent to deceive and cheat," as
in other statutes, meaning "the intent to deprive a victim of money or property by deception."  Opp.
22-23 (citing *United States v. Saini*, 23 F.4th 1155, 1160 (9th Cir. 2022)).  NSO cites no case applying
that standard to the CFAA.  Even if it does apply, it is easily met.

NSO  claims ████████████████████████████████████████████████████████
██████████████████████ Opp. 12.  This argument is misleading and does not create a dispute

12

1  of fact.  NSO knew that ███████████████████████████████, *see, e.g.*, Ex. 24

2  at -958. ████████████████████

3  ██████████████████████████████████ (which was "an old feature" that "was

4  not in use at the time of the attack," Ex. 39 (Gheorghe Dep.) at 150:13-153:1).  NSO also repeatedly

5  changed the fields in which it hid code.  *See* Ex. 25 (Vance Rep.) at 8-10 (demonstrating ████████

6  ████████████████████████████████.  NSO also ███████████████

7  ████████████████, *see, e.g.*, Ex. 24 at -961 ████████████

8  ████████████████████████ Ex. 6 (Gazneli Dep.) at 236:8-237:1; *see, e.g.*, Ex. 41 at -121

9  ███████████████████████████████████████████████████████

10 ██████████████████████████  And if Mr. Gazneli were credited, NSO also

11 ██████████████████████████████████████ Gazneli Decl. ¶ 5.

12      NSO's reliance on Meta employee testimony that they knew Pegasus's messages were not

13 from an Official Client once they discovered them, Opp. 13, is misplaced because it ignores that the

14 messages were hidden in obscure fields and contained encrypted code "not meant to be easily . . .

15 readable by a human."  Ex. 39 (Gheorghe Dep.) at 198:13-25.  NSO also ████████████████

16 ███████████████████████████████████████████████████████

17 ███████████████████████████████████████████████████████

18 ███████████████████████████████████████████████████████

19 ███████████████ Youssef Decl., Ex. A at 33-34; Ex. 40 at -132

20 █████████████████████████

21      NSO's contention that it did not intend to take "money or property" from WhatsApp or target

22 users (Opp. 22-23 & n.22) is equally meritless.  The "object of the fraud" can include "the use of the

23 computer" if the value exceeds more than $5,000 in one year.  18 U.S.C. § 1030(a)(4).  NSO admits

24 ███████████████████████████████████████████████████████

25 ██████████████████████.  *See* Mot. 11.  And Pegasus's purpose is to "Turn Your Target's Smartphone into

26 an Intelligence Gold Mine," by "remotely and covertly extract[ing] *all* data."  Ex. 31; Mot. 22-23.

27      **B.  NSO Conspired with Its Clients to Use Its Technology in Violation of § 1030(b)**

28      NSO is liable for conspiracy because it agreed with its customers to use Pegasus and

supported their use.  Mot. 23-24.  NSO's response that it did not intend for its customers to violate

the CFAA is meritless.  NSO argues ███████████████████████████████████████████████

███████████████████████████████████████ Opp. 18-21.  But NSO relies ████████████████

███████████████████ Akro Decl., Ex. H ¶ 12, and provides no evidence that ████████████████

████████████████████████ Even if they did, the customers ████████████████████████████

███████████████████████████ and NSO does not explain how they could have installed Pegasus

on user devices via WhatsApp without violating the CFAA, which has no foreign law enforcement

exception.  It is well established that the CFAA applies extraterritorially.  *See, e.g.*, *In re Apple Inc.*

*Device Performance Litig.*, 347 F. Supp. 3d 434, 448 (N.D. Cal. 2018) (citing cases).  In either case,

██████████████████████████████████████████████████████████████████████████████.

Even if NSO's customers were foreign sovereigns (and NSO provides no evidence they are), the act

of state doctrine does not apply because accessing WhatsApp's U.S. computers is not an official act

that they took within their own borders.  *See* Dkt. No. 422 at 18-20; *cf.* 28 U.S.C. § 1605(a)(2), (5)

(permitting claims against foreign sovereigns for acts in the United States).  NSO claims Congress

did not "intend[] to criminalize all such activities by foreign governments," Opp. 20, but in fact,

foreign government agents are often prosecuted under the CFAA.  *See* Exs. 42-46.

**C.  NSO Trafficked in Password-Like Information in Violation of § 1030(a)(6)**

Plaintiffs' Motion demonstrates that NSO is also liable for trafficking in "password or similar

information."  Mot. 24-25.[9]  NSO's only argument against liability is that Pegasus is not "a sequence

of letters, numbers, symbols or other characters."  Opp. 21.  This argument ignores that § 1030(a)(6)

"turns on whether a user's credentials allow him to proceed past a computer's access gate."  *Van*

*Buren*, 593 U.S. at 390 n.9.  NSO has admitted that ████████████████████████████████████

████████████████████████████████████████████████████████████ Ex. 6 (Gazneli Dep.)

at 247:4-17.  NSO also ████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Mot. 24-25.

---

[9] Plaintiffs repeatedly confirmed their pursuit of a claim under § 1030(a)(6).  *See, e.g.*, Dkt. No. 163 at 8; Dkt. No. 236 at 12; Dkt. No. 261 at 9.  If necessary, Plaintiffs request leave to amend.  There is no prejudice given the identical claim under CDAFA § 502(c)(6).  Dkt. No. 1 ¶ 61.

**D.  NSO Caused Plaintiffs a Loss of More than $5,000**

NSO argues that Plaintiffs' investigation and remediation costs do not constitute "loss" because ███████████████████████████████████████████████████████████████

█████████████  Opp. 23-24.  This argument is meritless.  The Ninth Circuit has held that the "costs [of] analyzing, investigating, and responding to" a defendants' actions constitute "loss." *Power Ventures*, 844 F.3d at 1066; *see* 18 U.S.C. § 1030(e)(11).[10]  Even if "damage" were required, it encompasses "impairment . . . as when an intruder retrieves password information from a computer and the rightful computer owner must take corrective measures 'to prevent the infiltration and gathering of confidential information.'"  *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 894-95 (N.D. Cal. 2010) (citing 18 U.S.C. § 1030(e)(8)).  There is no genuine dispute that NSO's actions impaired the integrity of the WhatsApp program and system, and required "corrective measures 'to prevent the infiltration and gathering of confidential information.'"  *Id.*  The attendant costs are still "loss" even if the exploited code was preexisting.  *See Creative Computing*, 386 F.3d at 935-36.

**IV.  NSO IS LIABLE ON PLAINTIFFS' CDAFA CLAIM**

Because Plaintiffs are entitled to summary judgment on their CFAA claims, they are also entitled to summary judgment on their parallel CDAFA claims.  *See* Mot. 25.

**V.  NSO PROVIDES NO EVIDENCE SUPPORTING AN UNCLEAN HANDS DEFENSE**

NSO misconstrues the unclean hands defense, which requires proof that Plaintiffs acted with "fraud or deceit" in acquiring their claims or in a manner that renders it inequitable to assert them. *Ingram v. Pac. Gas & Elec. Co.*, 2014 WL 295829, at *7 (N.D. Cal. Jan. 27, 2014).  NSO provides no proof of fraud or deceit.  Plaintiffs did not acquire their claims by ████████████████████

█████████████████████████████  *See* Opp. 25.  Nor would that render Plaintiffs' suit inequitable.

**CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment as to NSO's liability.

---

[10] *See also Ryanair DAC v. Booking Holdings Inc.*, 2024 WL 3732498, at *13 (D. Del. June 17, 2024) ("loss" does not require "impairment of the protected computer or loss of data"); *Sylabs, Inc. v. Rose*, 2024 WL 4312719, at *3 (N.D. Cal. Sept. 26, 2024) (same).  *Van Buren* did not exclude investigative costs "that the statute specifically incorporates."  *BrandTotal*, 605 F. Supp. 3d at 1265.  *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019), did not involve investigation costs at all.

Dated:  October 18, 2024                    Respectfully Submitted,

                                            DAVIS POLK & WARDWELL LLP

                                            By:  /s/ Micah G. Block
                                                 Greg D. Andres
                                                 Antonio J. Perez-Marques
                                                 Craig T. Cagney
                                                 Gina Cora
                                                 Luca Marzorati
                                                   (admitted *pro hac vice*)
                                                 DAVIS POLK & WARDWELL LLP
                                                 450 Lexington Avenue
                                                 New York, New York 10017
                                                 Telephone: (212) 450-4000
                                                 Facsimile: (212) 701-5800
                                                 Email: greg.andres@davispolk.com
                                                      antonio.perez@davispolk.com
                                                      craig.cagney@davispolk.com
                                                      gina.cora@davispolk.com
                                                      luca.marzorati@davispolk.com

                                                 Micah G. Block (SBN 270712)
                                                 DAVIS POLK & WARDWELL LLP
                                                 1600 El Camino Real
                                                 Menlo Park, California 94025
                                                 Telephone: (650) 752-2000
                                                 Facsimile:  (650) 752-2111
                                                 Email: micah.block@davispolk.com

                                                 *Attorneys for Plaintiffs*
                                                 *WhatsApp LLC and Meta Platforms, Inc.*