MATTHEW H. DAWSON (Bar No. 307350)
*mdawson@kslaw.com*
KING & SPALDING LLP
50 California Street No. 3300
San Francisco, CA 94111
Telephone:    (415) 318-1200

Attorneys for Third Parties
WESTBRIDGE TECHNOLOGIES, INC.,
JOSH SHANER and TERRY DiVITTORIO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY OF THIRD PARTIES WESTBRIDGE TECHNOLOGIES, JOSH SHANER AND TERRY DIVITTORIO IN SUPPORT OF MOTION FOR CLARIFICATION WITH RESPECT TO COURT'S ORDER RE ADMINISTRATIVE MOTIONS [DKT. NO 394]**<br><br>Date:  November 7, 2024<br>Time:  1:30 p.m.<br>Place: Courtroom 3, Ronald V. Dellums Federal Building & U.S. Courthouse, 1301 Clay Street, Oakland, California<br><br>Action Filed: 10/29/2019 |

I.  **THIS MOTION FOR CLARIFICATION IS PROPER AND SHOULD BE GRANTED.**

The Court should grant the Motion for Clarification and order that discovery motions filed with respect to third parties after September 20, 2024, are untimely. Plaintiffs' discovery dispute with Westbridge that is the subject of an October 2, 2024, joint letter brief (Dkt. No. 409) was not referenced in Plaintiffs' administrative motion to extend the filing deadline. In fact, Westbridge was mentioned only once in that motion—as part of a recitation of all of the document productions made by Defendants and third parties in the case since August 1, 2024. (*See* Dkt. 388 at 1:26-2:5.) The subsequent sentence, however, makes the subject of Plaintiffs' administrative motion plain: "In light of those productions, as well as the compressed scheduled [sic] for depositions, expert discovery, and dispositive motions, Plaintiffs are continuing to evaluate *Defendants'* compliance with their discovery obligations." (*Id.* at 2:5-7 (emphasis added).)[1] Plaintiffs' administrative motion further discussed their desired relief as seeking more discovery from *Defendants*: "Even if Plaintiffs' discovery-related motions result in *Defendants* producing additional documents, Plaintiffs intend to proceed with filing their motion for summary judgment according to the Court's schedule." (Dkt. 388 at 2:23-25 (emphasis added).)

Plaintiffs' proposed reply brief in support of their administrative motion to enlarge time also effectively concedes that any dispute with Westbridge could have, and should have, been filed by the original September 20 motion deadline. (*See generally* Dkt. No. 392-1.) Indeed, Plaintiffs' proposed reply brief confirms that the purpose of Plaintiffs' request was to allow them to file a motion for sanctions against Defendants. (*See generally id.*)

The Court's Order provided Plaintiffs with the relief they sought: allowing the parties additional time to file "mutual" discovery motions against each other. (*See* Dkt. No. 394.) The Court did not address the filing of motions against third parties, and the Third Parties' current Motion should be granted to clarify that the Court's Order re Administrative Motions (Dkt. No. 394) did not provide Plaintiffs with the relief to extend time to file motions against third parties—

---

[1] Plaintiffs' opposition misleadingly quotes only the first five words of that sentence. (*See* Opp. at 2:21-22.)

relief Plaintiffs never actually sought.[2]

## II. PLAINTIFFS' MOTION AGAINST WESTBRIDGE IS UNTIMELY BECAUSE IT COULD AND SHOULD HAVE BEEN FILED BEFORE SEPTEMBER 20.

With respect to the timeliness of Plaintiffs' motion to compel even more documents from Westbridge (Dkt. No. 409), there are only two facts that matter, and Plaintiffs concede both. First, the dispute with Westbridge was fully briefed on September 16, 2024. (Dkt. No. 404-1, Dawson Decl. ¶ 2.) Second, Plaintiffs elected to not file it by the normal deadline provided by the local rules. (*Id.*) Plaintiffs contest neither of those facts. They claim (Opp. at 3:8-10) that they used the time provided by the Court to narrow the dispute against Westbridge, but that is simply not true, and Plaintiffs' evidentiary citation to the "declaration of Micah Block ¶¶ 4-5" does not support it. Mr. Block merely says the parties had an additional conference on September 30. The scope of the dispute as briefed on September 16, 2024, including the relief sought, is identical to that filed on October 2. The only difference is that Plaintiffs have added an argument based on a statement that was made by Westbridge counsel (a statement made during an attempt to settle the discovery dispute) regarding the existence of *one* unproduced and *non-responsive* document. The dispute presented to the Court on October 2 seeks identical relief to the motion that was fully briefed four days before the Local Rules deadline to file discovery motions, and Plaintiffs could and should have filed it on time.

## III. PLAINTIFFS' MOTION IS FUTILE BECAUSE WESTBRIDGE HAS CONDUCTED A REASONABLE, DILIGENT SEARCH AND PRODUCED EVERYTHING RESPONSIVE TO THE SUBPOENA.

Finally, Plaintiffs' opposition makes certain assertions about the timing and content of document productions. To avoid confusion, Westbridge provides the following chronology of productions relating to Westbridge documents. The chronology demonstrates that Westbridge has conducted a reasonable, diligent, and proportional search and has produced everything that it agreed to produce in response to Plaintiffs' subpoena:

---

[2] Because the Court's Order was silent about extending the deadline to file discovery motions against third parties (and because Plaintiffs never requested that relief) the instant motion is not a motion for reconsideration, and Civil Local Rule 7-9 does not apply to it.

- **June 5, 2020**: Plaintiffs served a subpoena on Westbridge setting forth 14 requests, two of which related to a 202-area code telephone number ("the (202) number") and sought information about Westbridge's "purchase" and "use" of that number.

- **July 13, 2020**: Westbridge objected to all 14 requests.

- **August 17, 2020**: After a meet and confer process, Plaintiffs agreed to withdraw five requests, including the two relating to the (202) number, and Westbridge provided amended objections and responses to the other nine requests.

- **March 1, 2023**: After additional conferences of counsel, Westbridge served further amended responses, agreeing to search for and produce materials relating to its marketing and promotional activities with respect to the Accused Technologies in the case.

- **August 20, 2023**: After a diligent, reasonable, and good faith search, Westbridge produced to Plaintiffs 504 documents (3,717 pages)—including emails, Microsoft Word documents, PDFs, Powerpoint files, Excel files, and files in other formats—from the documents that had been preserved and imaged immediately following Westbridge's receipt of Plaintiffs' subpoena.

- **November 2023 - February 2024**: Former Westbridge employees Terry DiVittorio and Josh Shaner produced 1,455 mobile communications (2,089 pages) from their mobile devices that were imaged immediately following their receipt of Plaintiffs' subpoenas. Documents from these productions were used extensively in the depositions of Defendants' employees as well as the former employees of Westbridge.

- **July - September 2024**: Westbridge and Defendants reviewed and produced additional documents—namely emails of former Westbridge employees from addresses with "qtechnologies.com" or "q.co" suffixes. After the application of search terms and a subsequent document review, Westbridge produced 81 responsive emails (375 pages) to Plaintiffs on September 15.

- **October 7, 2024**: In June 2020, Plaintiffs had also propounded a document request (RFP No. 28) to *Defendants*, *relating to a different subject from the ones sought in the Westbridge subpoena*: "All Communications with Westbridge Technologies relating to

WhatsApp and Facebook and the surveillance of Facebook and WhatsApp users." (Dkt. No. 429-4 at Exh. 4, RFP No. 28.) On October 7, 2024, Defendants produced 43 documents in response to that request—pursuant to a process described in Defendants' Opposition to the Plaintiffs' Motion for Sanctions. (Dkt. No. 429-3, Craig Decl. ¶¶ 19-20.) Like the September 15, 2024, Westbridge document production, the emails from Defendants' October 7, 2024, production contained communications made to the "qtechnologies.com" and "q.co" email addresses of former Westbridge employees.

As this chronology makes clear, Westbridge has conducted a reasonable, diligent, and proportional search and has produced all responsive results, i.e., those that relate to Westbridge's marketing and promotion of the Accused Technologies. Separately, Defendants have produced their documents responsive to RFP No. 28 (i.e., "communications with Westbridge Technologies relating to WhatsApp and Facebook and the surveillance of Facebook and WhatsApp users"). Both Westbridge and Defendants have searched all their email domains, including the "qtechnologies.com" and "q.co" email addresses of the former Westbridge employees, to comply with their discovery obligations.

Plaintiffs appear to argue that because certain documents produced by Defendants were not also produced by Westbridge, this proves the existence of an unsearched repository of Westbridge emails. There is no such repository. Plaintiffs' arguments to the contrary completely ignore the fact that the subpoena to Westbridge requested (and Westbridge agreed to produce) a different set of documents from what Plaintiffs requested of NSO. The Westbridge subpoena requested documents relating to marketing and promotion of Pegasus/Phantom, whereas RFP No. 28 to Defendants sought communications relating to WhatsApp and Facebook and the surveillance of Facebook and WhatsApp users. Those are different requests, so the emails and other documents responsive to those requests were naturally different.

Nor did Westbridge admit that it has located, but refused to produce, responsive documents. The evidence "supporting" this assertion is a statement by Westbridge's counsel describing a document showing how much Westbridge was paying per month for SIM cards (including one for the (202) number). This document is not responsive to what Westbridge agreed to produce in

response to the subpoena: documents relating to the marketing and promotion of the Accused Technologies.[3] This is particularly true given that, in 2020, Plaintiffs *abandoned* their request to Westbridge for documents relating to the "purchase" and "use" of the (202) number. In any event, Westbridge offered this document to Plaintiffs if it would resolve the dispute, and Plaintiffs refused.

Because Westbridge has conducted a reasonable, diligent, and proportional search, and produced all of the responsive documents it agreed to produce in response to Plaintiffs' subpoena,[4] Plaintiffs' substantive letter motion regarding Westbridge is futile.

For all these reasons, the Third Parties respectfully request that their motion for clarification be granted.

Dated: October 23, 2024

KING & SPALDING LLP

By: */s/ Matthew H. Dawson*
MATTHEW H. DAWSON

*Attorneys for Third Parties Westbridge Technologies Inc., Josh Shaner and Terry DiVittorio*

---

[3] Westbridge will bring a copy of the document in question to the November 7, 2024, hearing so that the Court can inspect it if it wishes to do so and determine whether it should be produced to Plaintiffs.

[4] Westbridge's production was comprised of 585 documents (4,092 pages) relating to the marketing and promotion of the Accused Technologies. Former Westbridge employees Josh Shaner and Terry DiVittorio have also produced all their mobile communications between themselves and NSO relating to the marketing and production of the Accused Technologies, and Plaintiffs extensively deposed both witnesses (and Defendants' witnesses) about those topics, using those documents.