Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email:    greg.andres@davispolk.com
          antonio.perez@davispolk.com
          craig.cagney@davispolk.com
          gina.cora@davispolk.com
          luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC, and<br>META PLATFORMS, INC.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>  and Q CYBER TECHNOLOGIES LIMITED,<br><br>                    Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>**DISCOVERY MATTER**<br><br>Date:   November 7, 2024<br>Time:   1:30 PM<br>Courtroom 3<br>Before the Honorable Phyllis J. Hamilton |

# TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................................................2

    I.    NSO Refused to Comply with the Court's Discovery Orders .....................................2

        A.    NSO Did Not Produce Code for the Full Functionality of the Relevant Spyware ...........................................................................................................2

            1.    Failure to Produce Code Usable in This Litigation Violates This Court's Orders .....................................................................................3

            2.    The ▮▮▮▮▮▮▮▮▮▮▮ Does Not Fully Show How Pegasus Functioned ...........................................................................4

            3.    NSO Did Not Produce Code Responsive to RFPs No. 14 and 16 .......5

        B.    NSO Refused to Produce Communications That the Court Ordered Produced .................................................................................................................6

        C.    NSO Refused to Produce Financial Documents That the Court Ordered Produced .................................................................................................................8

        D.    NSO Refused to Answer Deposition Questions .............................................9

    II.    NSO's Refusal to Comply with the Court's Orders Requires Terminating Sanctions ..................................................................................................................10

        A.    NSO Failed to Show A Good Faith Attempt to Comply with the Court's Orders ................................................................................................10

        B.    NSO's Israeli Law Obligations Do Not Provide a Basis to Avoid Sanctions ......................................................................................................12

        C.    NSO's Violations Prejudiced Plaintiffs, and Terminating Sanctions Are Warranted ...............................................................................................12

    III.    Alternatively, the Court Should at Least Order Evidentiary Sanctions .....................14

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

C<small>ASES</small>

P<small>AGE</small>(<small>S</small>)

*Adriana Int'l Corp. v. Lewis & Co.*,
   913 F.2d 1406 (9th Cir. 1990) .................................................................................................. 12

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
   602 F.2d 1062 (2d Cir. 1979) .................................................................................................... 15

*Detoy v. City & Cnty. of S.F.*,
   196 F.R.D. 362 (N.D. Cal. 2000) ............................................................................................. 10

*Gibson v. Chrysler Corp.*,
   261 F.3d 927 (9th Cir. 2001) .................................................................................................... 14

*Hernandez v. Lynch*,
   2019 WL 6998774 (C.D. Cal. June 18, 2019) ......................................................................... 9

*Hynix Semiconductor, Inc. v. Rambus Inc.*,
   591 F. Supp. 2d 1038 (N.D. Cal. 2006) .................................................................................. 14

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) .................................................................................................... 12

*LegalForce RAPC Worldwide P.C. v. GLOTRADE*,
   2019 WL 5423463 (N.D. Cal. Oct. 23, 2019) .......................................................................... 2

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ...................................................................................................... 9

*Linde v. Arab Bank, PLC*,
   269 F.R.D. 186 (E.D.N.Y. 2010) ....................................................................................... 12, 14

*N. Am. Watch Corp. v. Princess Ermine Jewels*,
   786 F.2d 1447 (9th Cir. 1986) .................................................................................................... 8

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
   427 U.S. 639 (1976) ..................................................................................................................... 8

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ............................................................................................ 10, 11

*In re Sealed Case*,
   932 F.3d 915 (D.C. Cir. 2019) ................................................................................................. 12

*Seoul Semiconductor Co. v. Feit Elec. Co.*,
   2024 WL 1136525 (C.D. Cal. Jan. 9, 2024) .............................................................................. 4

*Societe Internationale Pour Participations Et. Commerciales, S.A. v. Rogers*,
   357 U.S. 197 (1958) ................................................................................................................... 11

*Strategic Partners, Inc. v. FIGS, Inc.*,
    2021 WL 4813646 (C.D. Cal. Aug. 12, 2021) ............................................................................. 7

*Toro v. Centene Corp.*,
    2020 WL 1643861 (N.D. Cal. Apr. 2, 2020) .............................................................................. 2

*Transamerica Life Ins. Co. v. Arutyunyan*,
    93 F.4th 1136 (9th Cir. 2024) ............................................................................................ 12, 13

*United States v. Rylander*,
    460 U.S. 752 (1983) ..................................................................................................................... 12

*United States v. Sumitomo Marine & Fire Ins. Co.*,
    617 F.2d 1365 (9th Cir. 1980) .................................................................................................... 15

*Zamora v. Wendy's Int'l, LLC*,
    2020 WL 3469331 (N.D. Cal. June 25, 2020) ............................................................................. 2

STATUTES & RULES

86 Fed. Reg. 60759 (Nov. 4, 2021) ...................................................................................................... 3

Fed. R. Civ. P. 30 ............................................................................................................................ 9, 10

Fed. R. Civ. P. 34 ................................................................................................................................. 4

OTHER AUTHORITIES

Restatement (Third) of Foreign Relations Law of the United States § 442
    (Am. Law. Inst. 1987) ........................................................................................................... 3, 11

  This Court has repeatedly ordered NSO to comply with its discovery obligations "despite the DECL and other Israeli restrictions." Dkt. No. 233 at 10. In its November 2023 Order, the Court concluded that Israeli law did not excuse NSO from producing specific and important discovery. *Id*. at 8–11. The Court's February 2024 Order required NSO to produce documents "sufficient to show the full functionality of all relevant spyware." Dkt. No. 292 at 3–5. Most recently, the Court's August 2024 Order reiterated that NSO had to produce "information showing the full picture of how Pegasus functions—which squarely includes Pegasus computer code." Dkt. No. 358 at 6. Plaintiffs' motion for sanctions (the "Motion") shows that NSO refused to comply with this Court's Orders. NSO's attempts to justify its conduct and to avoid sanctions should be rejected.

  NSO's opposition (the "Opposition") confirms its indifference to the Court's Orders. Although the Court told the parties in early November 2023 that "[d]iscovery for all purposes is now open," Dkt. No. 256 at 67:16, NSO apparently did not begin searching for responsive documents until after this Court issued its February 23, 2024 Order. NSO now admits that it (i) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; (ii) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; (iii) used deficient search terms of its own design, which it refused to disclose to Plaintiffs, then decided that none of the thousands of documents hitting on those terms were responsive; (iv) refused to disclose the price list for its spyware; and (v) refused to answer deposition questions, despite having no basis for doing so under Rule 30. For this conduct, sanctions are appropriate.

  To justify its conduct, NSO argues that the requirements of Israeli law excuse its violation of the Court's Orders, and preclude sanctions. The Court considered and rejected this very argument in the November 2023, February 2024, and August 2024 Orders. *See* Dkt. No. 233 at 8-11; Dkt. No. 292 at 3–5; Dkt. No. 358 at 4–7. NSO deliberately violated those Orders.

  NSO's violation of Court Orders has denied Plaintiffs access to relevant discovery, resulting in unfair prejudice. NSO's opposition to Plaintiffs' motion for summary judgment underscores that prejudice, and the need for sanctions. NSO seeks to rely on "lack of evidence" arguments and self-serving declarations on topics it has deprived Plaintiffs of the ability to test through discovery. While Plaintiffs believe even the limited record suffices to enter judgment for Plaintiffs on all claims, if the

case cannot be resolved as a matter of law in Plaintiffs' favor, NSO's deliberate violations of the Court's Orders warrant terminating sanctions.

## ARGUMENT

### I. NSO Refused to Comply with the Court's Discovery Orders

NSO violated the Court's Orders by refusing to produce code showing the full functionality of its spyware, as well as other documents and communications that the Court ordered NSO to produce. *See* Dkt. No. 405-2 at 8–14. NSO's witnesses also refused to answer deposition questions, often after instruction by counsel, despite lacking any valid basis to do so. *See id.* at 14–15. Purporting to explain this misconduct, NSO claims that it tried to comply with the Court's Orders, but Israeli law frustrated it. *See* Dkt. No. 429-2 at 8–10. NSO's Opposition shows that claim to be false. NSO does not claim that Israel blocked it from producing anything it tried to produce. For example, NSO does not claim it made any attempt to produce its full Pegasus code. Similarly, NSO ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (only after this Court's August 1, 2024 Order) because NSO ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Opposition at least strongly suggests that NSO made almost no effort to comply with the Court's Orders.[1]

### A. NSO Did Not Produce Code for the Full Functionality of the Relevant Spyware

NSO's admission that it only ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—confirms its violation of this Court's Orders. First, NSO's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ignores this Court's *Richmark* rulings. Second, NSO has admitted that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. No. 358 at 6. Third, NSO's failure to produce sufficient code independently violates the Court's Orders mandating NSO's compliance with Plaintiffs' Requests for Production ("RFPs").

---

[1] NSO starts its brief by arguing that Plaintiffs failed to comply with Civil Local Rule 7-2, including by not counting the 10-line notice of motion within the 25-page limit. NSO identifies no prejudice from Plaintiffs' pagination, nor does it cite a single case where a motion has been struck for this reason. Courts in this District routinely consider—and grant—motions with separately paginated notices. *See, e.g.*, *Zamora v. Wendy's Int'l, LLC*, 2020 WL 3469331, at *1 n.1 (N.D. Cal. June 25, 2020); *Toro v. Centene Corp.*, 2020 WL 1643861, at *1 n.1 (N.D. Cal. Apr. 2, 2020); *LegalForce RAPC Worldwide P.C. v. GLOTRADE*, 2019 WL 5423463, at *1 n.1 (N.D. Cal. Oct. 23, 2019).

### 1. Failure to Produce Code Usable in This Litigation Violates This Court's Orders

NSO violated this Court's Orders by failing to make its code available for use in this litigation. Its belted ████████████████████████████████ ████████████—ignores the *Richmark* dispute that the Court already resolved. In March 2023, NSO moved for a "protective order sparing Defendants from violating Israeli law by responding to Plaintiffs' RFPs." Dkt. No. 179-2 at 9. The Court denied NSO's motion, and ordered it to comply with "sufficiently important and specific" discovery requests "despite the DECL and other Israeli restrictions." Dkt. No. 233 at 10. The Court subsequently ruled that "in spite of the export controls and other restrictions, [] production of 'information sufficient to show the full functionality of all relevant spyware' was 'not excused' because 'that information is sufficiently important and specific' to require production under *Richmark*." Dkt. No. 358 at 6 (quoting Dkt. No. 292 at 5).

The plain language of the Court's Order required NSO to produce code in this litigation "in spite of" DECL or other restrictions. NSO now argues that ████████████████████████ ████████████████████ Dkt. No. 429-2 at 9. However, that "production" does not make code available in this litigation. If NSO believed that ████████████████████████████████, it is unclear why it argued that it should not be required ████████████████████ Dkt. No. 184-2 at 7, and then sought a six-month extension ████████, *see* Dkt. No. 264-2 at 1–4.

NSO also faults *Plaintiffs* for failing to obtain ████████████. Dkt. No. 429-2 at 9–10. NSO has the responsibility "to secure release or waiver from a prohibition against disclosure" when a foreign law obstacle exists. Restatement (Third) of Foreign Relations Law of the United States § 442 cmt. h (Am. L. Inst. 1987). NSO failed to do so, and refused to produce code that can be used in this litigation. Indeed, NSO's counsel has admitted ████████████████████████████[2]

NSO asserts that ████████████████████████████████████ ████████ Dkt. No. 429-2 at 10, but that proposal ignores reality. NSO suggests that Plaintiffs should

---

[2] There is no equivalence between NSO's failure ████████████████ and Plaintiffs' disclaimer of any liability for determining which of its documents produced to NSO's U.S. counsel in this U.S. litigation can be shared with NSO under the U.S. Department of Commerce's sanctions against NSO. *See* Dkt. No. 429-2 at 10 & n.10. Those sanctions are unique to NSO because the Commerce Department concluded NSO has been engaged "in activities contrary to the national security or foreign policy interests of the United States." 86 Fed. Reg. 60759 (Nov. 4, 2021).

█████████████████████████████████ ███████████████████████████████████████████████████, and "testify about it." *Id.* Yet NSO's head of compliance opines that ██████████████████ ██████████████████████████████ Dkt. No. 429-19 ¶ 7, and NSO's witnesses refused to testify on that basis, *see* Dkt. No. 429-2 at 21 (acknowledging that █████████████ ██████████████████████████████████████).

NSO's remaining arguments rely on technicalities that do not excuse its conduct. NSO first argues that neither Plaintiffs' RFPs nor the Court's Orders specified a location for production. *Id.* at 9. Yet Plaintiffs sought, and the Court ordered, NSO to produce code "despite the DECL and other Israeli restrictions." Dkt. No. 233 at 10. NSO's "production" is defective not only because ████ ████████████, but also because it cannot be used in this litigation in the United States. NSO separately concedes that Rule 34 forbids making code available for inspection only in a distant foreign location ████████████. *See* Dkt. No. 405-2 at 11–12 (citing cases). NSO claims that this rule has no application here, as █████████████████████████████████████████████. *See* Dkt. No. 429-2 at 11. That response ignores the central point: its code can be reviewed *only* █ █████████████████████████████████████████████████████████ █████████. In the sole case that NSO relies upon, it was "not clear that the location where the accused products are made available for review has any particular bearing on Defendant's ability to accomplish its goal of inspecting the accused products." *Seoul Semiconductor Co. v. FEIT Elec. Co.*, 2024 WL 1136525, at *6 (C.D. Cal. Jan. 9, 2024). By contrast here, Plaintiffs cannot █████████ █████, nor present the fruits of that review in this case.

### 2. The ███████████████████ Does Not Fully Show How Pegasus Functioned

Even if NSO █████████████████████████████████, that alone would not comply with this Court's Orders. Dkt. No. 358 at 6. Although Plaintiffs' U.S. counsel cannot review ███████████ █████████████████████████████████████████████████████████████████████ █ NSO admitted ███████████████████████████████████████████████████████ █████████████████████████████████████████████ Dkt. No. 208 at 4 (emphasis added). Mr.

Gazneli ███████████████████████████████. *See* Dkt. No. 429-4, Ex. 2 at 287:11–12. Mr. Gazneli also ███████████████████████████████████████████████████████████████████████████. *See* Dkt. No. 405-4, Ex. N at 322:10–21 ██████████); *id*. at 322:22–323:1 ████████████████████████████████). Even Mr. Gazneli's declaration submitted with the Opposition █████████████████████████████████ Dkt. No. 429-18 ¶ 7.

NSO's claim that it was not required to produce any code on "devices *other than* the AWS server," Dkt. No. 429-2 at 4, cannot be reconciled with the Court's Orders. In February 2024, the Court ordered NSO to produce documents responsive to 12 of Plaintiffs' RFPs, many of which called for code. Dkt. No. 292 at 3; *see also* Dkt. No. 429-3 at 8–9 (listing RFPs). If there was any ambiguity about the Court's February 2024 Order—and there was none—the Court removed it in the August 2024 Order, stating that "information showing the full picture of how Pegasus functions—which squarely includes Pegasus code—is discoverable under *Richmark* despite the various restrictions that have been cited." Dkt. No. 358 at 6. Accordingly, the Court "clarifie[d] that its previous order, dated February 23, 2024, should be read to encompass Pegasus code, as well as code that shows the full functionality of any other 'relevant spyware,'" and additionally granted Plaintiffs' motion to compel production of the AWS Server "[t]o the extent that information . . . reflects such computer code." *Id.*

### 3. NSO Did Not Produce Code Responsive to RFPs No. 14 and 16

By refusing to produce code showing the full functionality of the Relevant Spyware, NSO also violated its obligations under Plaintiffs' RFPs Nos. 14 and 16. NSO agreed to produce documents responsive to those RFPs, and the Court's February 2024 Order mandated that these "documents must indeed be produced." Dkt. No. 292 at 3. RFP No. 14 requires NSO to produce documents "sufficient to show the processes, methods, and technology used to install the Relevant Spyware on the mobile phones and devices of target users, including but not limited to computer code, commands, data, or payloads transmitted or received during the installation of the Relevant Spyware." Dkt. No.

429-3 at 8. Despite NSO's pledge to comply, and this Court's Order mandating compliance, it did not produce any code showing, e.g., how the Relevant Spyware was installed on mobile devices. RFP No. 16 requires NSO to produce documents "sufficient to show the technologies used in the Relevant Spyware to communicate with WhatsApp, including WhatsApp servers, endpoints, computers, and computer networks, other than the official WhatsApp application." *Id*. Though NSO opposes summary judgment based on a declaration that NSO ███████████████████████████ █████████████████████████████████████████████████████████████████████████████ ████████████████████████ Dkt. No. 419-4 ¶ 4, NSO never produced any information showing that ████████████████. The record refutes NSO's self-serving declaration, but in any event NSO's contention confirms its failure to produce what RFPs Nos. 14 and 16 require.

**B.    NSO Refused to Produce Communications That the Court Ordered Produced**

NSO not only failed to produce sufficient code in response to RFP Nos. 14 and 16, but also failed to produce *all* internal communications concerning the identification of WhatsApp application vulnerabilities incorporated into the Relevant Spyware (RFP No. 5), and *all* communications with Westbridge related to WhatsApp (RFP No. 28). Dkt. No. 405-2 at 12–13; *see* Dkt. No. 292 at 3 (ordering NSO to produce agreed-upon documents). Indeed, NSO admits that it did not produce *any* communications in response to these RFPs before the close of fact discovery. *See* Dkt. No. 429-2 at 16.

***RFP No. 5***. RFP No. 5 calls for NSO to produce "all documents and communications concerning the identification of WhatsApp application vulnerabilities incorporated into the Relevant Spyware," as limited by search terms and custodians. Dkt. No. 235-4, Ex. P at 4. NSO claims that it lacks any responsive documents. Dkt. No. 429-2 at 18.

NSO's failure to locate responsive documents reflects the deficiency of its unilateral search terms, not the absence of responsive records. Mr. Gazneli ████████████████████████ █████████████, *see* Dkt. No. 405-2 at 13, and that ███████████████████████████████ ███████████████████████████████████████ Dkt. No. 399-4, Ex. 6 at 300:15. Yet NSO did not search for documents dated before April 2018. Dkt. No. 429-3 ¶ 25. Moreover, NSO limited its search by applying search terms of its own design that it never disclosed until its Opposition, and that

6

1  are facially deficient.  For example, NSO failed to include ████████████████

2  ████████████████████████████████████████████████, and used qualifiers to

3  limit hits on █████████████████████████████████████████████████████████

4  ██████████████████████████.  *See* Dkt. No. 429-18 ¶ 25.  NSO's deficient search terms

5  found 6,437 hits, yet NSO claims none were responsive despite the terms they included.  *Id.* ¶ 26.

6        NSO further claims that it lacks responsive communications to RFP No. 5 because NSO "like

7  other companies in their industry, ████████████████████████████████████████

8  Dkt. No. 429-2 at 18.  NSO's documents belie that claim.  For example, Exhibit 36 to the Craig

9  Declaration discusses ██████████████████████████████████████████████████

10 █████████████████████████████████████████████ Dkt. No. 429-9, Ex. 36 at 1.

11 The document then discusses how █████████████████████████████████████

12 ███████  That is squarely responsive to RFP No. 5, and exactly the kind of document that NSO now

13 says it avoided creating.  What's more, even if NSO ████████████████████████████, it

14 beggars belief to suggest that NSO never communicated about them.  Therefore, the Court should

15 not credit NSO's self-serving representation that no communications responsive to RFP No. 5 exist,

16 and should find that NSO violated the Court's Orders requiring it produce such communications.  *See*

17 *Strategic Partners, Inc. v. FIGS, Inc.*, 2021 WL 4813646, at *11 (C.D. Cal. Aug. 12, 2021) (refusing

18 to credit party's representation that it had no responsive documents in light of convincing contrary

19 evidence).

20       **RFP No. 28.**  RFP No. 28 includes "all communications with Westbridge that relate to Peg-

21 asus' interactions with or use of WhatsApp servers to gain access to target devices that Defendants

22 are able to locate after a reasonable and proportionate search."  Dkt. No. 235-4, Ex. P at 8.

23       NSO admits that it did not produce documents responsive to RFP No. 28 by the close of fact

24 discovery.  Dkt. No. 429-2 at 19.  This failure made it impossible for Plaintiffs to use any such doc-

25 uments in the depositions of NSO or Westbridge employees, or in their summary judgment motion.

26 NSO produced responsive documents on October 7, 2024, well after the close of fact discovery, and

27 weeks after Plaintiffs deposed NSO and Westbridge employees.  Dkt. No. 429-3 ¶ 19.  In addition,

28 NSO also used inadequate search terms in searching for documents responsive to RFP No. 28.  For

1  example, NSO did not search for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮ NSO's belated production of communications with Westbridge. *See id*. Further, with-
3  out the ability to question witnesses about this document production, Plaintiffs were unable to further
4  test NSO's compliance. In any case, "[b]elated compliance with discovery orders does not preclude
5  the imposition of sanctions." *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451
6  (9th Cir. 1986) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

      **C.    NSO Refused to Produce Financial Documents That the Court Ordered Produced**

8        NSO does not contest that it maintains a "price list" and refused to produce it. Dkt. No. 429-
9  2 at 20–21. Instead, NSO claims that the Court never ordered production of financial information,
10 *id*. at 20—a claim that ignores NSO's own representations to the Court. When it initially moved to
11 avoid all discovery obligations in March 2023, NSO stated that it "would not otherwise oppose pro-
12 ducing" financial documents, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. No. 176-2 at 8. At that time,
13 NSO represented that it was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 8 n.1; *accord* Dkt. No. 184-2 at 2.
15 NSO later argued that "the Court need not compel the production of documents ▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 249-2 at 5. The Court ultimately ordered NSO to produce
17 documents that it "already conceded" are "sufficiently important and specific under *Richmark*," Dkt.
18 No. 292 at 3, which includes financial documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

19       The few financial documents that NSO has produced provide no substitute for the price list.
20 Dkt. No. 405-2 at 13–14. NSO relies on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[3] That is no substitute for the underlying documents, which NSO
26 failed to produce, in violation of the Court's Orders.

---

[3] NSO's request to delay disputes related to its production of the price list, Dkt. No. 429-2 at 20–21, ignores the Local Rules on timing of discovery-related motions. *See* N.D. Cal. Civ. L.R. 37-3.

**D.   NSO Refused to Answer Deposition Questions**

NSO's Opposition does not identify any permissible basis for its counsel to instruct its witnesses not to answer deposition questions, or for its witnesses to refuse to answer questions on their own accord. NSO disregards this Court's *Richmark* analysis by claiming that ▮▮▮▮▮▮▮▮▮▮▮▮ outweigh the discovery obligations this Court imposed. Dkt. No. 429-2 at 22. The Court has already rejected this exact proposition, and ordered NSO to participate in discovery despite Israel's "demonstrated interest in limiting discovery." Dkt. No. 233 at 10. The Court should find that the NSO's misconduct violates its Orders, and warrants sanctions against NSO.[4]

Contrary to NSO's argument, none of the Court's Orders constitute a "limitation ordered by the court" that would allow NSO's counsel to instruct its witnesses not to answer deposition questions. Fed. R. Civ. P. 30(c)(2); *see* Dkt. No. 405-2 at 15. An instruction to "enforce a limitation ordered by the court" under Rule 30(c)(2) applies "to any limitation imposed by the court *in connection with a deposition*." Fed. R. Civ. P. 30, Advisory Committee's Notes to 2000 Amendment (emphasis added). As NSO admits, nothing in the Court's Orders said anything about limiting depositions. *See* Dkt. No. 429-2 at 3. Moreover, the Court cabined NSO's production of documents to April 2018 to May 2020 because of the potential burden of producing documents, *see* Dkt. No. 292 at 4—a concern that does not apply to answering deposition questions. The cases that Plaintiffs cite in their Motion establish that court rulings setting the bounds of *document discovery* are not court-ordered limitations under Rule 30, and do not support counsel instructing witnesses not to answer deposition questions. *See* Dkt. No. 405-2 at 15 (citing cases).[5]

---

[4] NSO's suggestion that its violations of Rule 30 did not violate any Court Order ignore its obligation to participate in deposition discovery under, for example, the Case Management and Pretrial Order. *See* Dkt. No. 168 at 1 (providing for "[d]epositions" without any scope limitations). In addition, Rule 30(d)(2) independently authorizes the Court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). The Court also retains the inherent authority to sanction abusive litigation practices, including a party's refusal to answer deposition questions. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

[5] Unlike objecting counsel in *Hernandez v. Lynch*, NSO's instructions were not the result of a "good faith misinterpretation." Dkt. No. 429-2 at 23 (quoting 2019 WL 6998774, at *4 (C.D. Cal. June 18, 2019)). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. No. 429-19 ¶¶ 6–7.

Unable to point to any "limitation imposed by the Court," NSO advances a new argument: that it unilaterally cabined its witnesses' deposition testimony to avoid "serious harm." Dkt. No. 429-2 at 22. The phrase "serious harm" does not appear in Rule 30, and the case that introduced this language limited the permissible bases for an instruction not to answer to those found in Rule 30(d)(3). *See Detoy v. City & Cnty. of S.F.* 196 F.R.D. 362, 366 (N.D. Cal. 2000) ("A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3) (that the deposition is being conducted in bad faith or to annoy, embarrass or oppress the deponent or party.)").

Without any valid defense under U.S. law for its misconduct, NSO again tries to relitigate the Court's *Richmark* rulings. NSO first claims that its witnesses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. No. 429-2 at 21–22. NSO next recounts the harms that may occur if ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ *See id.* at 22. The Court has already rejected these arguments, and ordered NSO to comply with its discovery obligations in this lawsuit, notwithstanding any Israeli law restrictions. If NSO claims that it could not comply with the Court's Orders because of its Israeli law obligations, that does not cure NSO's noncompliance, but factors into the proper sanction, as discussed below.

## II. NSO's Refusal to Comply with the Court's Orders Requires Terminating Sanctions

NSO's arguments that it should not be sanctioned for its violations also lack merit. First, NSO has not made "an *affirmative showing* of its good faith in seeking permission to disclose" information barred by Israeli law. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1479 (9th Cir. 1992). Second, NSO's contention that its violations of the Court's Orders did not prejudice Plaintiffs not only disregards binding precedent holding that failing to produce discovery is inherently prejudicial, but also fails on its own terms. Third, NSO incorrectly opposes evidentiary sanctions as "counterfactual," Dkt. No. 429-2 at 24, ignoring the thrust of Plaintiffs' argument: that evidentiary sanctions are warranted in the very areas where NSO prevented full development of the record.

### A. NSO Failed to Show A Good Faith Attempt to Comply with the Court's Orders

NSO's efforts to comply with its Israeli obligations do not "affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with [NSO's]

failure to comply." *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 208 (1958); *see also* Dkt. No. 405-2 at 16 (citing Restatement (Third) of Foreign Relations Law of the United States § 442(1)(b) (Am. L. Inst. 1987)).  NSO can only avoid sanctions if it can "make an *affirmative showing* of its good faith in seeking permission to disclose the information." *Richmark*, 959 F.2d at 1479.  NSO fails to make such a showing here.

*First*, NSO never engaged with Plaintiffs (or the Court) about its deficient plans for responding to the Court's Orders, and produced almost no information about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even in *Richmark*—where the Ninth Circuit upheld the imposition of sanctions—the foreign defendant provided the Court with the request it sent to the foreign government, as well as the foreign government's response.  *Id*.  Here, NSO refuses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. No. 429-19 ¶ 8.  In fact, NSO confirms ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See id*. ¶ 9.

*Second*, NSO's representations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are contradictory.  In the Opposition, NSO admits that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 429-2 at 7.[6]  Elsewhere, NSO denied ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 405-4, Ex. A at 5–7.  These representations are impossible to reconcile.  NSO's contradictions undermine any inference of good faith, especially absent any meaningful documentary record.

*Third*, NSO identifies no inaccuracies in the public reporting describing NSO's efforts to avoid discovery.  *See* Dkt. No. 405-2 at 4, 4 n.3.  Though NSO calls these reports "error-riddled" and based on unverified information, Dkt. No. 429-2 at 7, 7 n.7, it fails to address the reporting that its

---

[6] *The Guardian*, whose reporting NSO admits is "not inconsistent" with NSO's conduct, Dkt. No. 429-2 at 7, reported that the initial meeting took place in early June 2020.  *See* Dkt. No. 405-2 at 4.

U.S. counsel at King & Spalding contacted U.S. counsel for the Israeli government asking it to "come to the rescue" to prevent discovery. This reporting further undermines any suggestion that NSO can show good faith in seeking permission to comply with this Court's Orders.

### B. NSO's Israeli Law Obligations Do Not Provide a Basis to Avoid Sanctions

NSO separately argues that it should not face sanctions because complying with the Court's orders would violate Israeli law. *See, e.g.*, *id*. at 11. The Court has already thrice rejected NSO's argument that its Israeli law obligations excuse it from discovery. *See* Dkt. No. 233 at 8; Dkt. No. 292 at 3–5; Dkt. No. 358 at 4–7. NSO does not and cannot dispute that courts *can* impose sanctions on parties that violate U.S. discovery obligations in light of competing foreign-law demands. *See In re Sealed Case*, 932 F.3d 915, 940 (D.C. Cir. 2019) (affirming contempt orders against banks who claimed Chinese law prevented them from producing documents, and failed to demonstrate good faith); *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 197 (E.D.N.Y. 2010) ("[W]here defendant has articulated no reason for its recalcitrance other than the [foreign law] grounds already rejected, significant sanctions are both 'just' and 'commensurate' with defendant's non-compliance.").

NSO also argues that compliance with this Court's Orders would be impossible. *See* Dkt. No. 429-2 at 11. NSO's fear of violating another country's laws does not amount to impossibility. *See Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (upholding sanctions against party that failed to produce documents purportedly held by a foreign court, as defendant "did not demonstrate that production from that court would be impossible"). None of the cases NSO cites, *see* Dkt. No. 429-2 at 11, involve a conflict of law. *See, e.g.*, *United States v. Rylander*, 460 U.S. 752, 757 (1983) (allowing party to raise impossibility defense "because he lacked possession or control").

### C. NSO's Violations Prejudiced Plaintiffs, and Terminating Sanctions Are Warranted

Terminating sanctions are appropriate. *See* Dkt. No. 405-2 at 18–23. Of the five applicable factors, NSO offers no response to four. NSO contests only the fifth factor, and does so only by asserting that Plaintiffs suffered no prejudice. Dkt. No. 429-2 at 11. NSO's argument lacks merit.

*First*, it is well-established in the Ninth Circuit that "[f]ailure to produce documents as ordered . . . is considered sufficient prejudice" to warrant terminating sanctions. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990); *see also Transamerica Life Ins. v. Arutyunyan*, 93

1  F.4th 1136, 1147 (9th Cir. 2024) ("failure to comply with an order to produce specific discovery
2  materials creates a sufficient risk of prejudice").
3      *Second*, the limited discovery that NSO provided about its spyware does not excuse NSO's
4  failure to provide code, or eliminate the unfair prejudice to Plaintiffs.  As Mr. Gazneli ▮
5  ▮
6  ▮
7  ▮.  Moreover, NSO unfairly seeks to profit from its violations.  For example, NSO claims
8  ▮, and whether NSO
9  ▮
10 ▮.  *See generally* Dkt. No. 396-2; Dkt. No. 419-2; Dkt. No. 433-2.
11 NSO's code (and communications) would give Plaintiffs further insight into these areas.  NSO's
12 refusal to produce that evidence, in violation of the Court's Orders, is unfair and prejudicial.
13     *Third*, ▮ does not eliminate the prejudice from NSO's
14 refusal to produce all the code that the Court ordered.  As noted above, NSO has admitted that ▮
15 ▮ *See supra*
16 Argument § I.A.  In addition, there is no evidence that what NSO purported to ▮
17 ▮
18 ▮
19 ▮
20 ▮ As previously noted, ▮
21 ▮
22 ▮ *Id*. at 4 n.1.  Further, Plaintiffs ▮
23 ▮
24 ▮
25 ▮
26 ▮
27 ▮ *See* Dkt. No. 382-2 at 2–3.
28

1    *Fourth*, NSO's witnesses' refusal to answer deposition questions, and NSO's counsel's in-
2    structions not to answer, similarly deprived Plaintiffs of crucial information.  For instance, NSO's
3    counsel instructed Mr. Gazneli not to answer questions about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See id*. at 17–18.  NSO contends that there is no
9    prejudice because Mr. Gazneli ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but
10   NSO ignores that Mr. Gazneli ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Dkt. No. 399-4, Ex. 6 at 149:1–10.  More broadly, Plaintiffs cannot know
12   (and cannot be expected to know) "how an answer . . . would have been relevant," Dkt. No. 429-2 at
13   21, because of NSO's refusal to answer questions.  *See Hynix Semiconductor, Inc. v. Rambus Inc.*,
14   591 F. Supp. 2d 1038, 1060 (N.D. Cal. 2006), *rev'd on other grounds*, 645 F.3d 1336 (Fed. Cir. 2011)
15   (party that failed to provide evidence "is in a much better position" to show what was not produced).
16   The Court should find that NSO's violations of the Court's Orders prejudiced Plaintiffs, and that
17   terminating sanctions are warranted.

18   **III.    Alternatively, the Court Should at Least Order Evidentiary Sanctions**

19          If the Court does not find terminating sanctions to be warranted, it should enter evidentiary
20   sanctions to address NSO's violations.  Dkt. No. 405-2 at 23–25.  As set out in the Motion, eviden-
21   tiary sanctions are appropriate for "establishing facts that are being improperly hidden by the party
22   resisting discovery."  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001); *see also Linde*,
23   269 F.R.D. at 203 (imposing evidentiary sanctions based on "the high likelihood that the withheld
24   documents" confirm plaintiffs' allegations).

25          Ignoring this case law, NSO objects that directed findings on issues it has obscured would
26   contradict skewed conclusions that NSO seeks to draw from Plaintiffs' own documents.  For instance,
27   NSO argues that the Court should not find that NSO targeted Plaintiffs' California-based servers, or
28   that NSO knowingly stored Pegasus code on California-based servers, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

|   |   |
|---|---|
| 1 | ███████████████████████████████████ *See* Dkt. No. 429-2 at 24–25.  That |
| 2 | misses the point.  NSO has refused to produce discovery that the Court ordered, which would likely |
| 3 | have provided evidence on these issues.  NSO should not be permitted to advance its own inferences |
| 4 | from an evidentiary record that is incomplete because of NSO's misconduct.  Similarly, NSO argues |
| 5 | that the Court should allow NSO to argue ██████████████████████████████ |
| 6 | ████████████████████████████████████.  *See id.* at 25.  Regardless of |
| 7 | what ████████████████████████████████████████████ |
| 8 | ████████████████████████████████████████████ |
| 9 | ████████████████.  Only NSO has that evidence, and NSO has refused to produce it. |
| 10 | Moreover, NSO's arguments ignore that the entire purpose of evidentiary sanctions is to "ensure that |
| 11 | a party will not be able to profit from its own failure to comply." *United States v. Sumitomo Marine* |
| 12 | *& Fire Ins.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (quoting *Cine Forty-Second St. Theatre Corp. v.* |
| 13 | *Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)).  Having refused to comply with |
| 14 | this Court's Orders and thereby stymied Plaintiffs' ability to develop certain facts, NSO should not |
| 15 | be permitted to argue that evidentiary sanctions would be "counterfactual." Dkt. No. 429-2 at 24. |

### CONCLUSION

For the reasons stated in the Motion and above, the Court should find that NSO willfully violated this Court's Orders, and that terminating sanctions are warranted.  The Court should enter default judgment against NSO, or order other appropriate relief.

| | |
|---|---|
| Dated: October 23, 2024 | Respectfully submitted,<br><br>DAVIS POLK & WARDWELL LLP<br><br>By: */s/ Micah G. Block*<br>　　Micah G. Block (SBN 270712)<br>　　DAVIS POLK & WARDWELL LLP<br>　　1600 El Camino Real<br>　　Menlo Park, California 94025<br>　　Telephone: (650) 752-2000<br>　　Facsimile: (650) 752-2111<br>　　Email: micah.block@davispolk.com<br><br>　　Greg D. Andres<br>　　Antonio J. Perez-Marques<br>　　Craig T. Cagney<br>　　Gina Cora<br>　　Luca Marzorati<br>　　　(admitted *pro hac vice*)<br>　　DAVIS POLK & WARDWELL LLP<br>　　450 Lexington Avenue<br>　　New York, New York 10017<br>　　Telephone: (212) 450-4000<br>　　Facsimile: (212) 701-5800<br>　　Email: greg.andres@davispolk.com<br>　　　　　antonio.perez@davispolk.com<br>　　　　　craig.cagney@davispolk.com<br>　　　　　gina.cora@davispolk.com<br>　　　　　luca.marzorati@davispolk.com<br><br>　　*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.* |