1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
    Telephone:    (213) 443-4355
5  Facsimile:    (213) 443-4310

6  Attorneys for Defendants
    NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11

12  WHATSAPP INC., a Delaware corporation,        Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
13  corporation,                                  **REPLY IN SUPPORT OF DEFENDANTS'**
                                                  **MOTION TO DISMISS OR FOR**
14                      Plaintiffs,               **SUMMARY JUDGMENT FOR LACK OF**
                                                  **PERSONAL JURISDICTION AND FOR**
15         v.                                     **PARTIAL SUMMARY JUDGMENT**

16  NSO GROUP TECHNOLOGIES LIMITED
    and Q CYBER TECHNOLOGIES LIMITED,
17                                                Date:   November 7, 2024
                        Defendants.               Time:  1:30 p.m.
18                                                Place: Courtroom 3, Ronald V. Dellums
                                                        Federal Building & U.S. Courthouse,
19                                                      1301 Clay Street, Oakland, California
20
21                                                Action Filed: 10/29/2019
22

23

24

25

26

27

28

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................. 1

    I.    NSO is not subject to personal jurisdiction............................................... 1

        A.    NSO did not consent to jurisdiction. ....................................... 1

        B.    NSO did not purposefully direct case-related conduct toward California. .............. 3

        C.    NSO did not purposefully avail itself of conducting business in California........... 6

        D.    NSO is not subject to nationwide jurisdiction under Rule 4(k)(2). ......................... 8

    II.    NSO is entitled to summary judgment on Plaintiffs' CFAA claims............................ 9

        A.    NSO did not access WhatsApp servers "without authorization." ........................... 9

        B.    NSO did not "exceed authorized access" to WhatsApp servers. ......................... 11

        C.    Plaintiffs cannot assert or prove a "password-trafficking" claim.......................... 13

        D.    Plaintiffs cannot challenge the actions of NSO's government customers. ............ 13

        E.    CFAA shields NSO's R&D activities after December 2018. ............................... 15

    III.    NSO is entitled to summary judgment on Plaintiffs' CDAFA claim........................... 15

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu v. Dickson*,
   107 F.4th 508 (6th Cir. 2024) ...................................................................................... 10, 11, 13

*Adam v. Barone*,
   2020 WL 4584182 (N.D. Cal. Aug. 10, 2020) ........................................................................ 1

*Al-Safin v. Circuit City Stores*,
   394 F.3d 1254 (9th Cir. 2005) .................................................................................................. 3

*Allez Med. Apps., Inc. v. Allez Spine, LLC*,
   2007 WL 927905 (Cal. Ct. App. Mar. 29, 2007) ..................................................................... 3

*Austin v. Georgetown Univ.*,
   2021 WL 2953231 (N.D. Cal. July 14, 2021) .......................................................................... 5

*Axiom Foods v. Acerchem Int'l*,
   874 F.3d 1064 (2017) ............................................................................................................ 4, 5

*Berkeley Lights, Inc. v. AbCellera Biologics Inc.*,
   2021 WL 4497874 (N.D. Cal. Jan. 29, 2021) .......................................................................... 7

*Berman v. Freedom Fin. Network*,
   30 F.4th 849 (9th Cir. 2022) ..................................................................................................... 2

*Broidy Cap. Mgmt. v. Qatar*,
   2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) .......................................................................... 4

*Broidy Cap. Mgmt. v. Qatar*,
   982 F.3d 582 (9th Cir. 2020) ............................................................................................. 14, 15

*Cardell Fin. Corp. v. Suchodolski Assocs.*,
   2012 WL 12932049 (S.D.N.Y. July 17, 2012) ......................................................................... 1

*Chegg, Inc. v. Doe*,
   2023 WL 4315540 (N.D. Cal. July 3, 2023) .......................................................................... 10

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) ...................................................................................... 8

*Costa v. Road Runner Sports*,
   84 Cal. App. 5th 224 (2022) ................................................................................................. 2, 3

*Daobin v. Cisco Sys.*,
   2 F. Supp. 3d 717 (D. Md. 2014) ........................................................................................... 14

ii

*E3 Innovation Inc. v. DCL Techs. Inc.*,
2021 WL 5741442 (D. Ariz. Dec. 2, 2021) ................................................................ 4

*Facebook, Inc. v. ConnectU LLC*,
2007 WL 2326090 (N.D. Cal. Aug. 13, 2007) .......................................................... 5

*Facebook, Inc. v. Sahinturk*,
2022 WL 1304471 (N.D. Cal. May 2, 2022) ............................................................. 4

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
907 F.2d 911 (9th Cir. 1990) ...................................................................................... 1

*GeoSolutions B.V. v. Sina.com Online*,
700 F. Supp. 3d 821 (N.D. Cal. 2023) ....................................................................... 7

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) ................................................................................. 4, 6

*Hungerstation LLC v. Fast Choice LLC*,
857 F. App'x 349 (9th Cir. 2021) ............................................................................... 9

*IAM v. OPEC*,
649 F.2d 1354 (9th Cir. 1981) .................................................................................. 14

*IDS Inc. v. AMResorts, LP*,
2024 WL 4228238 (C.D. Cal. July 9, 2024) .............................................................. 8

*Jackson v. Amazon.com*,
65 F.4th 1093 (9th Cir. 2023) .................................................................................... 2

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 2429593 (N.D. Cal. Aug. 24, 2007) .......................................................... 9

*Johnson v. TheHuffingtonPost.com*,
21 F.4th 314 (5th Cir. 2021) ...................................................................................... 4

*Lehman Bros. Holdings v. LendingTree, LLC*,
2021 WL 1087695 (D. Minn. Mar. 22, 2021) ........................................................... 1

*Li v. Amazon.com Servs. LLC*,
2023 WL 8720669 (N.D. Cal. Dec. 18, 2023) ........................................................... 2

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) .............................................................................. 9, 13

*McKee v. Audible, Inc.*,
2018 WL 2422582 (C.D. Cal. Apr. 6, 2018) ............................................................. 3

*My Daily Choice v. Butler*,
2021 WL 3475547 (D. Nev. Aug. 6, 2021) ............................................................... 3

iii

*NetApp, Inc. v. Nimble Storage, Inc.*,
  41 F. Supp. 3d 816 (N.D. Cal. 2014) ................................................................. 13

*Patel v. City of Long Beach*,
  564 F. App'x 881 (9th Cir. 2014) ................................................................. 1, 13

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ......................................................................... 8

*Roche v. Hyde*,
  51 Cal. App. 5th 757 (2020) ........................................................................... 2

*Rodriguez v. Lockheed Martin Corp.*,
  627 F.3d 1259 (9th Cir. 2010) ....................................................................... 15

*Ryanair DAC v. Booking Holdings Inc.*,
  2024 WL 3732498 (D. Del. June 17, 2024) ..................................................... 13

*Sea Breeze Salt v. Mitsubishi*,
  899 F.3d 1064 (9th Cir. 2018) ....................................................................... 14

*Sunderland v. PharmaCare U.S.*,
  2024 WL 2116069 (S.D. Cal. May 10, 2024) .................................................... 8

*Teradyne, Inc. v. Astronics Test Sys.*,
  2020 WL 8173024 (C.D. Cal. Nov. 6, 2020) ..................................................... 8

*United States v. Nosal* (*Nosal II*),
  844 F.3d 1024 (9th Cir. 2016) ............................................................... 5, 10, 11

*Van Buren v. United States*,
  593 U.S. 374 (2021) .............................................................................. 9, 11

*Viking River Cruises v. Moriana*,
  569 U.S. 639 (2022) ...................................................................................... 3

*Walden v. Fiore*,
  571 U.S. 277 (2014) ...................................................................................... 4

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ..................................................................... 7, 8

*X Corp. v. Bright Data Ltd.*,
  2024 WL 2113859 (N.D. Cal. May 9, 2024) ...................................................... 3

*X Corp. v. Ctr. for Countering Digital Hate*,
  2024 WL 1245993 (N.D. Cal. Mar. 26, 2024) .................................................... 4

*Yeager v. Airbus Grp. SE*,
  2021 WL 750836 (C.D. Cal. Jan. 26, 2021) ...................................................... 4

iv

*In re Zappos.com*,
    893 F. Supp. 2d 1058 (D. Nev. 2012) ........................................................................................ 3

**Statutes**

Cal. Penal Code § 502(c) ............................................................................................................. 15

Cal. Penal Code § 502(e)(1) ........................................................................................................ 15

**Other Authorities**

Fed. R. Civ. P. 4(k)(2) ................................................................................................................... 8

Plaintiffs' overlong opposition (*see* Opp. 26[1]) makes multiple concessions that conclusively establish NSO's entitlement to dismissal or judgment.  It is undisputed that NSO did not target WhatsApp's servers based on their locations, which proves NSO is not subject to personal jurisdiction.  And Plaintiffs concede NSO was authorized to send WhatsApp messages and did not access any area of WhatsApp servers other than those that WhatsApp messages pass through, which proves NSO did not violate CFAA or CDAFA.  Plaintiffs' contrary arguments rest on severe mischaracterizations of the record.  The Court should grant NSO's motion.

## ARGUMENT

### I.    NSO is not subject to personal jurisdiction.

Plaintiffs' opposition confirms they misled the Court when they represented that NSO specifically "sought out WhatsApp's California-based servers" for purposes of personal jurisdiction. (Dkt. 111 at 24.) Because the evidence undisputedly proves that allegation false, NSO is not subject to personal jurisdiction.  Nothing in Plaintiffs' opposition establishes otherwise.

#### A.    NSO did not consent to jurisdiction.

This Court already held NSO did not consent to jurisdiction because the forum-selection clause "that w[as] in effect at the time of [NSO's] alleged conduct" did "not apply to claims WhatsApp has with its users." (Dkt. 111 at 16-18.)  Plaintiffs argue they amended the TOS to expand the forum-selection clause in 2020, *after* filing suit.  But personal "jurisdiction is determined at the time of filing the lawsuit," *Adam v. Barone*, 2020 WL 4584182, at *4 (N.D. Cal. Aug. 10, 2020), so "[o]nly contacts occurring *prior to* the event causing the litigation may be considered," *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).[2]

That rule applies "[f]or purposes of jurisdiction based on consent." *Cardell Fin. Corp. v. Suchodolski Assocs.*, 2012 WL 12932049, at *15 (S.D.N.Y. July 17, 2012).  With respect to consent through the appointment of a registered agent in a state, courts have held that post-filing consent "is not material to the jurisdictional analysis" because "personal jurisdiction is not based on contacts occurring after the filing of the complaint." *Lehman Bros. Holdings v. LendingTree, LLC*, 2021

---

[1] All citations omit quotation marks and alterations and, unless otherwise noted, add emphasis.

[2] Plus, Plaintiffs may not oppose summary judgment with a legal theory they never raised before summary judgment. *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014).

1   WL 1087695, at *4 & n.2 (D. Minn. Mar. 22, 2021). Plaintiffs cite no case applying a different

2   rule to forum-selection clauses.[3] Therefore, any conduct by NSO after Plaintiffs filed suit in

3   2019—including alleged agreement to the 2020 TOS—cannot support personal jurisdiction.

4   That aside, Plaintiffs submit no evidence NSO agreed to *any* version of the TOS. They

5   argue NSO created WhatsApp accounts, but that is insufficient as a matter of law unless they

6   "provide[d] reasonably conspicuous notice of the terms" and "the consumer t[ook] some action …

7   that unambiguously manifest[ed] his or her assent." *Berman v. Freedom Fin. Network*, 30 F.4th

8   849, 856 (9th Cir. 2022). As explained in NSO's cross-opposition, Plaintiffs submit *no* evidence

9   on this point, so they do not prove NSO *ever* agreed to the TOS. (Dkt. 419-2 at 3-6.)

10  Plaintiffs also submit no evidence NSO agreed to the *2020* TOS. Plaintiffs must prove NSO

11  "receive[d] a reasonable notice of the proposed modified term and a reasonable opportunity to reject

12  [it]" by "provid[ing] the court with a copy or description of [the] notice." *Jackson v. Amazon.com*,

13  65 F.4th 1093, 1099-1100 (9th Cir. 2023). Plaintiffs do not do that.[4] Instead, they contend "NSO's

14  *counsel* … became aware of th[e] amendment" when preparing NSO's motion to dismiss. (Opp.

15  5.) But they cite no authority for attributing a lawyer's awareness of a contract modification to his

16  client for purposes of *enforcing* that modification in an already-pending lawsuit.[5] *Costa v. Road

17  Runner Sports*, 84 Cal. App. 5th 224 (2022), rejected an indistinguishable argument. The *Costa*

18  defendant sought to enforce an arbitration clause in its TOS, arguing the plaintiff "obtained imputed

19  knowledge of the arbitration provision *through his counsel in the course of litigation*" and then

20  "manifested his assent to the arbitration provision by failing to cancel his … membership." *Id.* at 234

---

[3] In *Li v. Amazon.com Servs. LLC*, 2023 WL 8720669, at *6 (N.D. Cal. Dec. 18, 2023), the parties disputed whether a forum-selection clause applied to *conduct* occurring before its enactment, not to a *lawsuit filed* before its enactment. And the court did "not reach" even that irrelevant retroactivity question; it relied solely on conduct postdating the clause. *Id.* at *7.

[4] NSO certainly did not prevent Plaintiffs from presenting evidence of *their own process* for notifying users of WhatsApp's TOS or TOS modifications (e.g., screenshots or sample notices). (*Contra* Opp. 5 n.4.) Absent that evidence, merely identifying phone numbers in a database reflecting purported TOS acceptance is insufficient. Nor did NSO prevent Plaintiffs from linking phone numbers to database entries. They easily could have granted their multiple Designated House Counsel access to the relevant database at any point over the last five weeks. (Dkt. No. 408 at 3.)

[5] The only case Plaintiffs cite, *Roche v. Hyde*, 51 Cal. App. 5th 757 (2020), has nothing to do with that issue. The question in *Roche* was whether a party had constructive knowledge of *facts* disclosed to its attorney during contract negotiations by the attorney. *Id.* at 795-97.

DEFENDANTS' REPLY ISO MSJ                          Case No. 4:19-cv-07123-PJH

1    (emphasis original).  The court rejected the argument "that a client's assent to the *actual formation*

2    *of a contract* can be based on knowledge imputed from his attorney."  *Id.* (emphasis original).

3    Because an arbitration clause is a "kind of forum-selection clause," *Viking River Cruises v.*

4    *Moriana*, 569 U.S. 639, 653 (2022), the same result is required for the forum-selection clause here.

5         In all events, enforcing the 2020 forum-selection clause would be unconscionable.  The

6    TOS are adhesive, the forum-selection clause was amended unilaterally, and it is entirely one-sided—

7    WhatsApp retains the right, "in [its] sole discretion," to sue users outside of California.  (Block

8    Exh. 14 at -195071.)  Such a one-sided clause is "illusory and … unenforceable." *In re Zappos.com*,

9    893 F. Supp. 2d 1058, 1066 (D. Nev. 2012).  At a minimum, WhatsApp's "unilateral modification"

10   cannot "operate retroactively" in a lawsuit filed *before* the modification.  *My Daily Choice v. Butler*,

11   2021 WL 3475547, at *6 (D. Nev. Aug. 6, 2021).  WhatsApp amended its forum-selection clause

12   only *after* suing NSO and realizing the clause did *not* create consent to jurisdiction.  (Dkt. 111 at 16-

13   18.)  There is no case "where a party was permitted unilaterally to amend a contract midway through

14   litigation concerning that contract" in that way.  *Al-Safin v. Circuit City Stores*, 394 F.3d 1254, 1260

15   n.5 (9th Cir. 2005).  "Rather, courts addressing whether an arbitration agreement can be amended

16   after it has been challenged during litigation have declined to permit the amendment." *Id.*[6]

17        This Court should reach the same conclusion.  If Plaintiffs' argument succeeded, WhatsApp

18   and other companies could sue their users in states lacking personal jurisdiction, then retroactively

19   manufacture consent by unilaterally amending the contract while notifying no one but their users'

20   lawyers.  The Court should not reward or encourage such abuse of online adhesion contracts.[7]

21        **B.    NSO did not purposefully direct case-related conduct toward California.**

22        Although Plaintiffs previously misled this Court to find jurisdiction by claiming NSO

23   "sought out WhatsApp's California-based servers" (Dkt. 111 at 24), they no longer rely on that

24   false assertion.  The undisputed evidence proves NSO did *not* target California-based WhatsApp

25   servers as opposed to servers anywhere else in the world.  (MSJ 9-11.)  Instead, Plaintiffs claim (1)

26   ───────────────

     [6] *E.g.*, *Allez Med. Apps., Inc. v. Allez Spine, LLC*, 2007 WL 927905, at *1, 7 (Cal. Ct. App. Mar.

27   29, 2007); *cf. McKee v. Audible, Inc.*, 2018 WL 2422582, at *6 (C.D. Cal. Apr. 6, 2018) (rejecting
     class action waiver added to TOS after class action was filed).

28   [7] *See X Corp. v. Bright Data Ltd.*, 2024 WL 2113859, at *15 (N.D. Cal. May 9, 2024) (refusing
     to enforce provision company "stuck … into its Terms *after* it already filed an initial complaint").

DEFENDANTS' REPLY ISO MSJ                                    Case No. 4:19-cv-07123-PJH

NSO "sought out WhatsApp servers" generally, and (2) some of those servers happened to be in California. (Opp. 6.) That cannot support specific jurisdiction, which must exist based on "the defendant's connections *with the forum State itself*," not "contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). *Walden* forecloses Plaintiffs' argument that jurisdiction exists based on a combination of Plaintiffs' "own forum connections" and "evidence suggesting [NSO] knew of those connections." *Axiom Foods v. Acerchem Int'l*, 874 F.3d 1064, 1069 (2017).

This Court did not hold otherwise. Although the Court held jurisdiction could exist even if NSO did not "select[] the location of [WhatsApp's] servers"—meaning NSO did not have to control where WhatsApp puts its servers—it found jurisdiction only because Plaintiffs alleged NSO "*sought out* WhatsApp's California-based servers." (Dkt. 111 at 23-24.) The Court thus made clear that NSO *did* have to "target [the] server *based on its location*." (Opp. 6-7); *accord Hasson v. FullStory, Inc.*, 114 F.4th 181, 191-92 (3d Cir. 2024). Other courts hold the same (MSJ 11), and Plaintiffs cite no contrary case.[8] Because NSO did not "specifically s[eek] out any particular servers within the forum," *X Corp. v. Ctr. for Countering Digital Hate*, 2024 WL 1245993, at *10 (N.D. Cal. Mar. 26, 2024), the "location of [WhatsApp's] servers [is] 'random,' 'fortuitous,' [and] 'attenuated' to [NSO's] purported actions," *Broidy Cap. Mgmt. v. Qatar*, 2018 WL 9943551, at *7 (C.D. Cal. Aug. 22, 2018). Otherwise, anyone who sends a WhatsApp message anywhere in the world could be subject to jurisdiction in whatever state WhatsApp decided to locate the server the message passes through.

Indeed, Plaintiffs assert NSO configured Pegasus to "access" WhatsApp servers "*no matter where they were*," proving NSO's conduct had *nothing* to do with California as a state. (Opp. 8.)[9] Plaintiffs argue NSO "knew or should have known the locations of WhatsApp's relay and signaling servers" (Opp. 9), but none of WhatsApp's signaling servers and only a tiny fraction of its relay servers were in California (MSJ 5). The undisputed evidence is that NSO *did not* know where

---

[8] *Facebook, Inc. v. Sahinturk*, 2022 WL 1304471, at *4 (N.D. Cal. May 2, 2022), was a *default judgment* in which the defendant allegedly "s[ought] out" California-based servers *and* targeted California through "cybersquatting" and "develop[ing] … a business across multiple clone websites" directed at California. *E3 Innovation Inc. v. DCL Techs. Inc.*, 2021 WL 5741442, at *9 & n.11 (D. Ariz. Dec. 2, 2021), held specific jurisdiction *did not* exist because the defendant did not target "servers located in Arizona."

[9] *E.g.*, *Walden*, 571 U.S. at 290; *Johnson v. TheHuffingtonPost.com*, 21 F.4th 314, 321-22 & n.9 (5th Cir. 2021); *Yeager v. Airbus Grp. SE*, 2021 WL 750836, at *6 (C.D. Cal. Jan. 26, 2021).

1   WhatsApp's servers were located because it made no difference to how Pegasus worked.  (Akro.
2   Exh. I at 323:23-325:22.)  Plus, mere knowledge of the servers' locations would be irrelevant unless
3   NSO targeted servers *because of* their location.  *Axiom*, 874 F.3d at 1069.  Constructive knowledge
4   based on speculation about what NSO "should have known" is even less relevant.  *Austin v.*
5   *Georgetown Univ.*, 2021 WL 2953231, at *4-5 (N.D. Cal. July 14, 2021).[10]

6       For these reasons, NSO would not be subject to specific jurisdiction in California *even if*
7   Plaintiffs could prove Pegasus "decided which servers [to] use[]."  (Opp. 8.)  Plaintiffs' failure to
8   dispute that Pegasus did not select servers based on their location (Opp. 9) is dispositive.  Even if
9   it were not, the evidence proves NSO did *not* control which WhatsApp servers any Pegasus message
10  passed through.  Plaintiffs claim NSO "used the WIS" rather than the "official" WhatsApp client "to
11  access WhatsApp's servers" (Opp. 8), but that is false.  As the witness Plaintiffs cite testified, "WIS
12  *created* the WhatsApp messages" Pegasus sent, but "those messages were *sent* … using a genuine
13  WhatsApp client."  (Gazneli Decl. ¶ 5; *see* Block Exh. 5 at 185:16-188:1.)  Nor is it true that Pegasus
14  did, or could, "select WhatsApp relay servers."  (Opp. 8.)  When Pegasus sent a call request,
15  *WhatsApp's signaling servers* generated a list of five available IP addresses, with no influence from
16  Pegasus. (Akro. Exh. L at 81:17-82:21, 117:21-121:20.)[11]  Pegasus was limited to using one of those
17  five *WhatsApp-selected* addresses, and it did not control which address was used.  (Gazneli Decl.
18  ¶ 15.)  It let the "official" WhatsApp client choose, using *WhatsApp's own* algorithm for selecting
19  relay servers based on performance.  (*Id.*; Supp. McGraw Decl. ¶¶ 8-11, Exh. Y ¶¶ 66-67.)[12]

20      Indeed, it is misleading for Plaintiffs to describe Pegasus's use of a particular relay server as
21  NSO's "choice" at all.  The selection and use of WhatsApp servers happened *during* the operation

---

[10] Plaintiffs' "willful blindness" cases are inapposite. *United States v. Nosal* (*Nosal II*), 844 F.3d 1024 (9th Cir. 2016), had nothing to do with jurisdiction. *Facebook, Inc. v. ConnectU LLC*, 2007 WL 2326090, at *6 (N.D. Cal. Aug. 13, 2007), applied the pre-*Walden* "individualized targeting" test that *Walden* "abrogated" (Dkt. 111 at 24).

[11] Plaintiffs claim Heaven directed target devices *away* from WhatsApp relay servers *to* a server controlled by NSO, which would not be "select[ing] WhatsApp relay servers."  (Opp. 8.)

[12] As explained in NSO's opposition to Plaintiffs' sanction motion, NSO did not "refuse[] to disclose how [Pegasus] selected [relay] servers."  (Opp. 8.)  NSO produced source code from an AWS server showing exactly that.  Plaintiffs *already had* logs (from the FBI) from that server, which confirm Pegasus selected relay servers with WhatsApp's performance-based algorithm.  (Supp. McGraw Decl. ¶¶ 8-11.)  NSO also provided sworn declarations from Tamir Gazneli, whom Plaintiffs deposed.

DEFENDANTS' REPLY ISO MSJ                                    Case No. 4:19-cv-07123-PJH

of Pegasus by an NSO customer, *after* NSO wrote, licensed, and relinquished control of the software. (Gazneli Decl. ¶ 15.) NSO could not know in advance which IP addresses WhatsApp's signaling servers would offer or where the corresponding relay servers would be. Pegasus thus relied on WhatsApp's "official" client to apply WhatsApp's own algorithm for choosing the relay server with the best performance.[13] (*Id.*; Supp. McGraw Decl. ¶¶ 8-11, Exh. Y ¶¶ 66-67.)

Similarly misleading is Plaintiffs' argument that "NSO recorded the IP addresses for the relay server options that it received from the signaling servers." (Opp. 9.) Because WhatsApp alone controlled which IP addresses *its* signaling servers generated, NSO could not know whether addresses available in the past would remain available *in the future*, let alone where the corresponding relay servers would be. (Gazneli Decl. ¶ 15.) And the log reflected *past* uses of Pegasus, not addresses it would use in the future. (Supp. McGraw Decl. ¶ 13.) "[L]earning of the [servers'] location after the fact does not" support specific jurisdiction. *Hasson*, 114 F.4th 191-92.

### C.  NSO did not purposefully avail itself of conducting business in California.

This Court already correctly rejected Plaintiffs' arguments for "purposeful availment" jurisdiction, and it should adhere to that decision. (Dkt. 111 at 25-28.)

**1.** This Court already held NSO's use of a third-party QuadraNet server in California could not support specific jurisdiction. (*Id.* at 20-21, 28.) Plaintiffs previously submitted the same evidence that Pegasus "hardcoded [an] IP address" associated with "a QuadraNet server." (Opp. 11; *see* Dkts. 55-2, 55-6.) This Court held that could not support specific jurisdiction because it does not suggest NSO "controlled where the third parties placed their servers." (Dkt. 111 at 21.)

That remains true. There is still no evidence NSO controlled where QuadraNet placed its server; Plaintiffs argue only that NSO *knew* the server was in California. (Opp. 11-12.) But even if Plaintiffs could prove NSO knew the QuadraNet IP address was associated with a server in California—and they cannot (MSJ 12)—it would remain the case that QuadraNet alone chose its server's location. Nor is there any evidence NSO *requested* a California server or leased the server *because* it was in California. Without such evidence, mere use—even knowing use—of a third-

---

[13] Plaintiffs' statistics regarding the number of times WhatsApp's algorithm selected a California or U.S. relay server are thus irrelevant. (Opp. 6.) They are also misleading. The activities in question were almost certainly carried out by NSO's government customers, not NSO.

DEFENDANTS' REPLY ISO MSJ                                    Case No. 4:19-cv-07123-PJH

party server in California cannot support specific jurisdiction.  (Dkt. 111 at 20-21.)  Courts are unanimous on this point (MSJ 12-14), which is why Plaintiffs cite *no authority* for their argument.

Plaintiffs also do not rebut the Court's ruling that QuadraNet's server was "not the ultimate target of [NSO's alleged] intentional act."  (Dkt. 111 at 21.)  By the time Pegasus's government users sent any data through a third-party server, WhatsApp's servers' role in the process had already ended.  (McGraw Decl. ¶ 80.)  "The leased servers were utilized to send malware and other commands to users' devices but not WhatsApp's servers," and none of those users were in California. (Dkt. 111 at 21.)  Such "attenuated alleged California contacts" cannot support personal jurisdiction.  *GeoSolutions B.V. v. Sina.com Online*, 700 F. Supp. 3d 821, 828-29 (N.D. Cal. 2023).

**2.** This Court also rejected Plaintiffs' attempt to base specific jurisdiction on NSO's funding from Francisco Partners.  (Dkt. 111 at 28.)  That funding ended in February 2019, and there is still no evidence "the funding was instrumental to [NSO's] alleged conduct."  (*Id.*)  The testimony Plaintiffs cite does not even *mention* Francisco Partners, much less prove their funding was used to develop Heaven or Eden.  (Block Exh. 5 at 256:16-258:9, 299:21-300:15; Exh. 9 at 68:22-69:18.)  Even if it had been, Plaintiffs cite no authority that a company is subject to jurisdiction in the home state of an investor merely because it uses investor funding in its business.[14]

**3.**  Plaintiffs cannot attribute Westbridge's conduct to NSO because the evidence is overwhelming that Westbridge was not NSO's alter ego or agent.  (MSJ 14-16.)

Plaintiffs argue the Supreme Court's rejection of agency jurisdiction in *Daimler* applies only to general jurisdiction, but the case Plaintiffs cite held it "applies no less in the context of specific jurisdiction."  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).  Thus, Plaintiffs must prove NSO and Westbridge were alter egos.  (MSJ 14-15.)  Plaintiffs do not come close.  (Opp. 15.)  They do not deny NSO and Westbridge had separate offices, bank accounts, corporate records, boards of directors, and so on.  (MSJ 15.)  Plaintiffs claim only that NSO and Westbridge shared a parent company, one officer, and some employees,[15] all of which is

---

[14] *Berkeley Lights, Inc. v. AbCellera Biologics Inc.*, 2021 WL 4497874, at *3-6 (N.D. Cal. Jan. 29, 2021), held the court *lacked* personal jurisdiction, including because the plaintiff's claims did "not arise out of or relate to [the defendant's] acquisition of funding in California."  So too here.

[15] This assertion is false.  Plaintiffs' argument shows at most that Defendants' and Westbridge's employees occasionally helped each other, not that they had the *same* employees.  (Opp. 15.)

DEFENDANTS' REPLY ISO MSJ                                Case No. 4:19-cv-07123-PJH

1   insufficient as a matter of law to prove an alter ego relationship.  *Ranza v. Nike, Inc.*, 793 F.3d

2   1059, 1073-74 (9th Cir. 2015); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983-84 (N.D.

3   Cal. 2016).  It is also insufficient that Westbridge received "financing" from its parent, which *was*

4   *not NSO* anyway.  *Ranza*, 793 F.3d at 1073-74.[16]  Receiving financing from a parent is not

5   undercapitalization or commingling of funds.  *Teradyne, Inc. v. Astronics Test Sys.*, 2020 WL

6   8173024, at *10 (C.D. Cal. Nov. 6, 2020).  The Ninth Circuit has also rejected Plaintiffs' argument

7   that Westbridge should be treated as NSO's alter ego because it was NSO's "marketing conduit."

8   *Ranza*, 793 F.3d at 1075.  Plaintiffs cite no case finding alter ego on similar facts.

9       Plaintiffs also cite no case finding agency in these circumstances, because they cannot prove

10  agency as a matter of law.  At a minimum, they would have to prove NSO "substantially

11  control[led]" and "actively directed" Westbridge's "sales efforts."  *Williams*, 851 F.3d at 1023 n.3,

12  1025.  But *every witness* testified clearly that NSO did not control or direct *any* of Westbridge's

13  marketing and did not instruct Westbridge to market Pegasus in California.  (MSJ 4.)  Plaintiffs'

14  arguments could show, at most, that NSO knew about and *assisted* some of Westbridge's marketing

15  (Opp. 14-15), which legally does not constitute *control* or *direction*.  *IDS Inc. v. AMResorts, LP*,

16  2024 WL 4228238, at *11-12 (C.D. Cal. July 9, 2024); *Sunderland v. PharmaCare U.S.*, 2024 WL

17  2116069, at *4 (S.D. Cal. May 10, 2024).

18      **D.    NSO is not subject to nationwide jurisdiction under Rule 4(k)(2).**

19      Plaintiffs argue for nationwide jurisdiction only in passing, by claiming NSO programmed

20  Pegasus to contact the WhatsApp domain name, which resulted in WhatsApp routing messages to

21  U.S. signaling servers.  (Supp. McGraw Exh. Y ¶ 58.)  That does not reflect purposeful direction

22  toward the United States for the same reasons that NSO's supposed transmission of data through

23  relay servers does not reflect purposeful direction toward California.  Moreover, courts uniformly

24  reject the use of U.S. servers as a basis for nationwide jurisdiction.  (MSJ 17-18.)  The Ninth Circuit

25  has held Rule 4(k)(2) jurisdiction does not exist "over a private foreign entity solely because that

---

26      [16] Plaintiffs insinuate Westbridge received funding from Q Cyber Technologies Ltd., the Israeli
27  Defendant in this action, but Westbridge is also related to Q Cyber Technologies (Luxembourg), a
    distinct company *not* a party to this action.  (Shohat Exh. C; Supp. Akro. Exh. Z at 282:6-19.)
28  Plaintiffs cannot prove Westbridge received funding from the Defendant Q Cyber rather than the
    Luxembourgian Q Cyber, and there is no evidence NSO provided any funding at all.

1   entity engaged in tortious conduct from a location outside of the United States by remotely

2   accessing servers located in the United States." *Hungerstation LLC v. Fast Choice LLC*, 857 F.

3   App'x 349, 351 (9th Cir. 2021).[17]  Plaintiffs cite no case holding otherwise.

4   **II.   NSO is entitled to summary judgment on Plaintiffs' CFAA claims.**

5          Plaintiffs' opposition confirms they cannot prove a CFAA violation as a matter of law.

6   Plaintiffs concede NSO "had authorization to send messages" over WhatsApp servers.  (Opp. 21.)

7   They also concede "the messages Pegasus sent passed through the exact same areas of WhatsApp's

8   servers as any other WhatsApp message."  (*Id.*)  Those concessions prove NSO did not lack

9   "permission to use" WhatsApp servers "for *any* purpose," *LVRC Holdings LLC v. Brekka*, 581 F.3d

10  1127, 1135 (9th Cir. 2009), and did not "enter[] an area of" the servers "to which [its] authorization

11  d[id] not extend," *Van Buren v. United States*, 593 U.S. 374, 390 (2021).

12         **A.   NSO did not access WhatsApp servers "without authorization."**

13         **1.**  This court correctly dismissed Plaintiffs' "without authorization" claim four years ago,

14  and Plaintiffs identify no valid basis for resurrecting it.[18]  Plaintiffs still concede NSO "had

15  authorization to send messages using the WhatsApp app" (Opp. 21), which remains fatal to their

16  claim because a "person uses a computer 'without authorization'" only "when the person has not

17  received permission to use the computer *for any purpose*."  *Brekka*, 581 F.3d at 1135.  Because

18  Plaintiffs admit NSO was authorized to use WhatsApp servers for *some* purposes, NSO could not

19  access WhatsApp servers "without authorization."

20         There is no legal basis for Plaintiffs' theory that NSO's authorization was somehow

21  "limit[ed]" to sending messages with the "official" WhatsApp app.  (Opp. 20; *see* Dkt. 419-2 at 10-

22  12.)  Someone can violate CFAA's "without authorization" prong only if they have "*no* rights,

23  *limited or otherwise*" to access the computer *at all*.  *Brekka*, 581 F.3d at 1135.  So, for NSO's

24  access to be "without authorization," it must have been prohibited from sending *any* WhatsApp

25  _____

26  [17] It is not correct that the *Hungerstation* defendant "incidentally used non-parties' forum
    servers."  (Opp. 12 n.11.)  The defendant allegedly stole the plaintiff's "confidential source code
27  and proprietary business information" by hacking into the forum server.  857 F. App'x at 351.

    [18] *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 2429593, at *5-6 (N.D. Cal. Aug. 24, 2007),
28  allowed plaintiffs to amend an *existing* claim.  Plaintiffs *have no* claim that NSO accessed its servers
    "without authorization" because the Court dismissed that claim.  (MSJ 21.)

1    messages through *any* means, *including* the "official" client.  And even under Plaintiffs' argument,

2    NSO *always* had the right to send messages with the "official" client.  Any requirement that NSO

3    *only* use the "official" client would be a mere "use restriction[]" that limited but did not

4    "categorically revoke[]" NSO's right to use WhatsApp servers.  *Nosal II*, 844 F.3d at 1038.

5         **2.**   For that reason, NSO would be entitled to summary judgment on Plaintiffs' "without

6    authorization" claim *even if* it had "bypass[ed]" the "official" client by using "WIS[] to send

7    messages that are not permitted by the Official Client."  (Opp. 21.)  But NSO did *not* do that, and

8    Plaintiffs' contrary assertions misstate the record.  (*Supra* 5; Dkt. 419-2 at 12; Gazneli Decl. ¶¶ 4-8.)

9         Additionally, Plaintiffs do not identify any actual requirement to send messages only using

10   the "official" client.  They cite the TOS, but that language is a *disjunctive* authorization to use "our

11   apps, services, features, software *or* website." (Opp. 21.)  Authorization to use WhatsApp's "apps"

12   *or* "services" is not a requirement to use its "services" *with* its "apps."[19]  Plaintiffs next claim "the

13   authentication keys needed to access WhatsApp servers are created when the Official Client is

14   downloaded," but *concede* NSO used "real authentication keys."  (*Id.*)  And the NSO document

15   they cite does not discuss any *actual* WhatsApp restrictions.  (Block Exh. 16.)  It speculates how

16   WhatsApp *could* detect Pegasus messages *if* it looked for them (*id.* at -8958-8962), but WhatsApp

17   *did not* look for or block those messages (McGraw Decl. ¶¶ 75-79).  Plaintiffs admit WhatsApp

18   servers had *no* technological restrictions blocking Pegasus messages.  (Supp. Akro. Exh. AA at

19   141:22-143:22; Exh. BB at 161:3-169:24.)  Neither did the "official" WhatsApp client, which

20   Pegasus *used* to send messages.  Because WhatsApp's "code allow[ed]" the messages, its "system

21   authoriz[ed] the access."  *Abu v. Dickson*, 107 F.4th 508, 515 (6th Cir. 2024).

22        **3.**   Plaintiffs double down on their baseless theory of "limited" authorization by arguing

23   they "revoked" NSO's authorization.  (Opp. 20.)  As explained in NSO's opposition to Plaintiffs'

24   MSJ, none of their supposed revocations "categorically revoked" NSO's right to send *all* WhatsApp

25   messages through *any* means. *Nosal II*, 844 F.3d at 1038; (Dkt. 419-2 at 14-15).  At most, Plaintiffs

26   argue they forbade particular *ways* of using WhatsApp servers (Opp. 21), which is not the kind of

27

28   _____

     [19] Besides, whether a defendant "flouted [the plaintiff's] terms of use … has no bearing on whether
     it has violated the CFAA." *Chegg, Inc. v. Doe*, 2023 WL 4315540, at *2 (N.D. Cal. July 3, 2023).

1    *complete* revocation that can trigger CFAA's "without authorization" prong (Dkt. 419-2 at 14-15).

2    WhatsApp's "2018 security upgrades" (Opp. 22), moreover, had *nothing to do with NSO*. The

3    upgrades addressed "an issue identified … by an external security researcher," and their effect on

4    Pegasus was "[u]nbeknownst to WhatsApp." (Supp. Akro. Exh. CC at 6.) NSO also could not

5    have interpreted the 2018 updates as a revocation because the "403" error code it received gave no

6    "notice that … authorization was revoked." *Facebook*, 844 F.3d at 1068 n.5; (Supp. McGraw Exh.

7    Y ¶¶ 87-91, 98).[20]

8    **B.    NSO did not "exceed authorized access" to WhatsApp servers.**

9    Plaintiffs' concession that NSO did not "access[] parts of WhatsApp's servers that it could

10   not with the Official Client" (Opp. 24) dooms their "exceeds authorized access" claim. A defendant

11   "exceeds authorized access" only when he "access[es] a computer with permission but then …

12   enter[s] *an area of the computer* to which that authorization does not extend." *Van Buren*, 593 U.S.

13   at 389-90. That is an all-or-nothing inquiry: "one either can or cannot access certain areas within

14   the system." *Id.* Thus, if "a user is permitted to be on a particular 'area within the system' for *some*

15   purposes," then "the user's access to the [area] is 'authorized'" for *all* purposes. *Abu*, 107 F.4th at 508.

16   Plaintiffs concede (1) NSO was authorized to access the "areas" of WhatsApp servers

17   WhatsApp messages pass through, and (2) those are the *only* areas of the servers NSO accessed.

18   So even if Pegasus had sent a *kind* of message that WhatsApp prohibited, NSO did not thereby

19   access any inaccessible *area* of a server. Plaintiffs argue *Van Buren* does not require access to off-

20   limits *areas* of a computer, but it unambiguously does. 593 U.S. at 389-90. Even the language

21   Plaintiffs quote provides that the "information" a defendant accesses must be "located in *particular*

22   *areas of the computer* … that are off-limits to him." *Id.* at 396. Plaintiffs do not claim NSO

23   accessed "information" stored in any off-limits "areas" of WhatsApp servers. *Id.*

24   In fact, Plaintiffs do not identify *any* "information" on WhatsApp servers that NSO

25   "obtain[ed] or alter[ed]." 18 U.S.C. § 1030(e)(6). They argue "information need not come from

26   the servers alone" because § 1030(a)(2)(C) "prohibits using unauthorized access to 'a *computer*' to

27

28   [20] Plaintiffs provide no proper authentication of, or foundation for, Block Exhibits 12, 41, or 42.
     Nor does anything in those exhibits reflect a categorical, "particularized" revocation of *all* access
     affirmatively communicated to NSO. *Nosal II*, 844 F.3d at 1036-38.

DEFENDANTS' REPLY ISO MSJ                                    Case No. 4:19-cv-07123-PJH

obtain information from 'any *protected computer*,' not necessarily the same computer." (Opp. 23.) But § 1030(a)(2)(C) first requires the defendant to "exceed[] authorized access" to a "computer," and § 1030(e)(6)'s definition of "exceeds authorized access" requires a defendant to "obtain or alter information in *the computer*"—the *same* computer—the defendant "access[ed]." So, to prove a § 1030(a)(2)(C) claim on an "exceeds authorized access" theory, a plaintiff must *first* prove the defendant "exceed[ed] authorized access" to a computer by "obtain[ing] or alter[ing] information in th[at] computer," § 1030(e)(6), and *then* prove the defendant *also* "obtain[ed] … information from any protected computer," § 1030(a)(2)(C).

Plaintiffs assert NSO "obtained certain information directly from WhatsApp's servers" (Opp. 23), but do not explain what they mean. If they are referencing "information regarding whether a user has an active WhatsApp account" (Dkt. 399-2 at 20-21), that cannot support their claim because *every WhatsApp user* is "entitled" to receive that information. § 1030(e)(6). Whenever *any* WhatsApp user sends a call request, a WhatsApp server checks whether the callee has a WhatsApp account and provides that information to the caller's device. (Gazneli Decl. ¶ 11.) In that regard, Pegasus was no different than any other WhatsApp user.

Plaintiffs' claim that Pegasus "altered information" on WhatsApp servers misstates the evidence. (Opp. 24.) Plaintiffs' *own corporate designees* admit Pegasus did not "corrupt," "alter," "impair," or "delete" any information on WhatsApp servers. (Akro. Exh. K at 249:7-250:10; Exh. L at 183:7-184:7, 250:22-251:24.) Contrary to Plaintiffs' misrepresentations, Pegasus did not "forc[e] WhatApp's servers, which ordinarily only propose five relay servers, to add a sixth controlled by NSO." (Opp. 24.) As NSO's witness testified, WhatsApp signaling servers *always* proposed five relay servers "no matter what is sent from the client." (Block Exh. 5 at 193:2-10.) Some Pegasus *messages*—not WhatsApp servers—sent *to target devices* information about an external server controlled by NSO's government customers, causing the target device to connect to that server. But the instruction to connect to that server came from the Pegasus message, *not* from the list of servers generated by WhatApp's signaling server. (Gazneli Decl. ¶ 13.) Similarly, Pegasus did not make WhatsApp servers send a forged server response. (Opp. 24.) *Pegasus* "sen[t] a message that appear[ed] to be a server response"—it did not force the WhatsApp server to do

1    anything.  (Block Exh. 5 at 158:15-160:13; Gazneli Decl. ¶ 14.)

2         Finally, there is no evidence NSO "circumvent[ed]" any "technological (or 'code-based')

3    limitations on access" to WhatsApp servers.  (Opp. 23.)  Neither the "official" WhatsApp client nor

4    WhatsApp servers *had* technological restrictions blocking Pegasus messages.  (*Supra* 10.)  Plaintiffs

5    may have "assum[ed]" WhatsApp users would not send such messages (Opp. 23), but CFAA does

6    not protect Plaintiffs' *assumptions*, and "us[ing] [a] computer contrary to the [owner's] interests"

7    is not illegal.  *Brekka*, 581 F.3d at 1133.  Whatever WhatsApp *wanted* its users to do, its "code

8    allow[ed]" Pegasus to send every message it sent.  *Abu*, 107 F.4th at 515.  That is dispositive.

9         **C.    Plaintiffs cannot assert or prove a "password-trafficking" claim.**

10        Plaintiffs cannot pursue a claim under CFAA § 1030(a)(6) because they did not plead that

11   claim in their complaint or in any post-complaint filing.  *Patel*, 564 F. App'x at 882.  But even if

12   Plaintiffs could raise their claim now, Pegasus is not a "password or similar information."

13   § 1030(a)(6).  A "password" is "a sequence of letters, numbers, symbols or other characters," Fed.

14   Crim. Jury Instr. 7th Cir. 1030[3] (2023 ed.), and Pegasus plainly is not.  (Dkt. 419-2 at 21-22.)

15        **D.    Plaintiffs cannot challenge the actions of NSO's government customers.**

16        Plaintiffs do not dispute that NSO itself never operated Pegasus against a WhatsApp user's

17   *device* without consent.  (MSJ 18-19.)  Their claim NSO should still be held liable for accessing

18   WhatsApp's *servers* during the development and marketing of Pegasus fails for the reasons above.

19        Plaintiffs' attempts to attribute customer conduct to NSO are similarly meritless.

20        **1.** Plaintiffs cannot prove NSO unlawfully conspired with its government customers

21   because they do not argue, much less prove, that NSO "knowing[ly] agree[d]" with its customers

22   "to commit [an] *unlawful* act." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835 (N.D.

23   Cal. 2014).[21]  They argue NSO agreed its government customers would use Pegasus (Opp. 18),

24   which is not enough unless they also prove NSO *knew* and *agreed* its government customers'

25   _____

26   [21] *Ryanair DAC v. Booking Holdings Inc.*, 2024 WL 3732498 (D. Del. June 17, 2024), is not to
     the contrary.  There, the plaintiff sent the defendants cease-and-desist letters revoking their
27   authorization and informing them that their vendors' conduct was illegal. *Id.* at *18.  That gave the
     defendants "know[ledge] that neither the[y] nor their agents had authorization" to access the
28   plaintiff's computers, supporting a finding that the defendants "had the specific intent to 'further
     the substantive offense' under the CFAA." *Id.* at *22-23.  There is no such evidence here.

conduct *violated CFAA*.    No such evidence exists.    NSO *prohibits* unlawful conduct by contractually requiring its government customers to "fully comply" with the law, and it suspends or terminates customers that misuse its technology.  (Shohat Decl. ¶ 12.)  Plaintiffs' argument that NSO's government customers did not know how Pegasus worked (Opp. 17) also prevents Plaintiffs from proving NSO's *customers* knowingly agreed to violate the law.

**2.**    Foreign governments' use of Pegasus *could not* violate CFAA, which does not apply to such purely extraterritorial conduct.  As explained in NSO's opposition to Plaintiffs' MSJ, the presumption against extraterritoriality, international law, and constitutional avoidance prohibit applying CFAA to a foreign government's access to foreign computers.  (Dkt. 419-2 at 19-20.)

**3.**    The act of state doctrine separately bars any claim challenging NSO's government customers' use of Pegasus.  (MSJ 19-20.)  That doctrine is not limited to "evaluat[ing] a foreign sovereign's compliance *with its own laws*."  (Opp. 20.)  It applies "*whenever* the federal courts must question the *legality* of the sovereign acts of foreign states."  *IAM v. OPEC*, 649 F.2d 1354, 1358 (9th Cir. 1981).    *IAM* applied the doctrine to a lawsuit challenging foreign governments' conduct under U.S. antitrust law.  *Id.* at 1356.  So did *Sea Breeze Salt v. Mitsubishi*, 899 F.3d 1064, 1071-7 2 (9th Cir. 2018).  And the plaintiff in *Daobin v. Cisco Sys.*, 2 F. Supp. 3d 717, 719 (D. Md. 2014), sued under federal, Maryland, and California law, not "international law[]." (Opp. 20.)

As in those cases, the doctrine applies here. Plaintiffs call the fact that all of NSO's customers are governments "unsubstantiated" (Opp. 18), but that is nonsense.  Numerous witnesses testified under oath that NSO licenses its technology only to governments (*e.g.*, Shohat Decl. ¶ 9; Akro. Exh. G at 176:2-9; Exh. H at 138:12-15), and there is no contrary evidence.  Plaintiffs also cannot dispute that a government's use of Pegasus is an "official public act[]" (Dkt. No. 111 at 11), since the Ninth Circuit has held that "clandestine surveillance and espionage" are "powers … 'peculiar to sovereigns.'"  *Broidy Cap. Mgmt. v. Qatar*, 982 F.3d 582, 594 (9th Cir. 2020).  Nor can Plaintiffs argue NSO's government customers did not act "within [their] own territory." (Opp. 19.)  Plaintiffs' assertions that targets "were located in dozens of countries" and that "at least 45 different customers licensed" Pegasus *support* a conclusion that "dozens of countries" licensed Pegasus to monitor targets within their borders.  (*Id.*)  Anyway, Plaintiffs concede the act of state

14

doctrine can protect extraterritorial conduct, which is appropriate here given the core government interest in "clandestine surveillance and espionage." *Broidy*, 982 F.3d at 594.

### E.    CFAA shields NSO's R&D activities after December 2018.

Plaintiffs cannot hold NSO liable for its R&D activities after the FBI licensed Pegasus. Section 1030(f) is not a "defense" on which NSO bears the burden of proof.  (Opp. 24.)  It is a substantive limitation on CFAA's scope, describing conduct the statute "does not prohibit." § 1030(f).  Plaintiffs' only case addressed a distinct "government contractor defense" unrelated to CFAA, *Rodriguez v. Lockheed Martin Corp.*, 627 F.3d 1259, 1266 (9th Cir. 2010), and Plaintiffs cite no basis to graft that defense's limits onto CFAA.  Anyway, the evidence the FBI licensed Pegasus—sworn testimony and government documents confirming the license (Akro. Exh G at 236:16-22; Exh. H at 148:16-21; Exhs. N, O)—is clear and unrebutted.  So is the evidence the FBI contracted for "maintenance" services including ongoing R&D.  (Akro. Exh G. at 332:3-333:21; Exh. N.)  Those services are all U.S. law enforcement not subject to CFAA.  (MSJ 23-24.)

### III.    NSO is entitled to summary judgment on Plaintiffs' CDAFA claim.

Plaintiffs do not dispute CDAFA applies only to computers within California.  (Opp. 25.) For the reasons above, Plaintiffs cannot prove NSO "knowingly" accessed any California-based WhatsApp server.  Cal. Penal Code § 502(c); (*supra* 3-6).  Plaintiffs also reference the QuadraNet server, but accessing that server could not violate CDAFA because NSO and its government customers were authorized to do so.  Plus, NSO's government customers alone used the QuadraNet server, and they did so only *after* WhatsApp's role in the Pegasus installation had ended.  (McGraw Decl. ¶ 80.)  The QuadraNet server thus has no bearing on Plaintiffs' CDAFA claim.[22]

### CONCLUSION

The Court should grant NSO's motion and enter judgment in NSO's favor.

Dated: October 18, 2024

KING & SPALDING LLP

By: *Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG

---

[22] Plaintiffs cannot challenge NSO's customers' access to target devices under CDAFA because Plaintiffs are not the "owner[s] or lessee[s]" of target devices.  Cal. Penal Code § 502(e)(1).