Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
    (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
             antonio.perez@davispolk.com
             craig.cagney@davispolk.com
             gina.cora@davispolk.com
             luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and
Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC, and<br>META PLATFORMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DISCOVERY MATTER**<br><br>Date:    November 7, 2024<br>Time:    1:30 PM<br>Courtroom 3<br>Before the Honorable Phyllis J. Hamilton |

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 7, 2024 at 1:30 PM, or as soon as the matter may be heard, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. ("Plaintiffs") will bring on for hearing before the Honorable Phyllis J. Hamilton, in Courtroom 3 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, a motion for sanctions (the "Motion").

This Motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities herein, the Declaration of Micah G. Block in Support of the Motion ("Block Decl.") filed concurrently herewith, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

Dated:  October 2, 2024                    Respectfully submitted,

                                           DAVIS POLK & WARDWELL LLP


                                           By:  /s/ Micah G. Block
                                                Micah G. Block (SBN 270712)
                                                DAVIS POLK & WARDWELL LLP
                                                1600 El Camino Real
                                                Menlo Park, California 94025
                                                Telephone: (650) 752-2000
                                                Facsimile:  (650) 752-2111
                                                Email: micah.block@davispolk.com

                                                Greg D. Andres
                                                Antonio J. Perez-Marques
                                                Craig T. Cagney
                                                Gina Cora
                                                Luca Marzorati
                                                  (admitted *pro hac vice*)
                                                DAVIS POLK & WARDWELL LLP
                                                450 Lexington Avenue
                                                New York, New York 10017
                                                Telephone: (212) 450-4000
                                                Facsimile: (212) 701-5800
                                                Email: greg.andres@davispolk.com
                                                        antonio.perez@davispolk.com
                                                        craig.cagney@davispolk.com
                                                        gina.cora@davispolk.com
                                                        luca.marzorati@davispolk.com

                                                *Attorneys for Plaintiffs WhatsApp LLC and*
                                                *Meta Platforms, Inc.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

    A.    Plaintiffs File This Action and Seek Discovery from NSO ............................2

    B.    ████████████████████████████████████████ ......3

    C.    The November 2023 Order: The Court Orders NSO to Produce Specific and  Important Documents, Despite Any Israeli Law Restrictions.................5

    D.    The February 2024 Order: The Court Orders NSO to Produce Documents It  Concedes Are Sufficiently Important and Specific, as well as Documents  Regarding "Relevant Spyware," Despite Israeli Law Restrictions ...........................................................................................6

    E.    The August 2024 Order: The Court Clarifies That NSO Must Produce Pegasus Code Despite Israeli Law Restrictions................................................7

    F.    NSO Refuses to Produce Information It Agreed to Produce, and Information  Regarding the Full Functionality of the Relevant Spyware........7

    G.    Procedural History ........................................................................................8

ARGUMENT..............................................................................................................................8

    I. NSO Refused to Comply with the Court's Discovery Orders .............................................9

    A.    NSO Refused to Produce Computer Code Showing the Full Functionality of the  Relevant Spyware ....................................................................9

        1.    NSO Refused to Produce Code Showing Full Functionality of Relevant Spyware .............................................................................10

        2.    NSO Refused to Produce Code to Plaintiffs' Counsel in the United States ...............................................................................................10

        3.    NSO's Corporate Designee on Technical Issues Consulted Source Code In  Preparation for Testimony, Underscoring the Code's Importance and Usefulness ................................................................12

    B.    NSO Refused to Produce Communications That the Court Ordered Produced ......................................................................................................12

    C.    NSO Refused to Produce Financial Documents That the Court Ordered Produced ......................................................................................................13

    D.    NSO Refused to Answer Deposition Questions ...........................................14

II.   NSO's Refusal to Comply with the Court's Orders Requires Terminating
      Sanctions ................................................................................................15

      A.    NSO Willfully Refused to Comply with the Court's Order...........................16

      B.    Terminating Sanctions Are Appropriate ........................................................18

            1.    Expeditious Resolution of Litigation ................................................19

            2.    Court's Need to Manage Its Docket..................................................19

            3.    Risk of Prejudice to Plaintiffs .........................................................20

            4.    Disposition on the Merits..................................................................21

            5.    Availability of Less Drastic Sanctions..............................................21

      C.    If the Court Finds That Terminating Sanctions Are Not Appropriate, It
            Should Order Evidentiary Sanctions...............................................................23

CONCLUSION ................................................................................................................25

1

## TABLE OF AUTHORITIES

2

C<small>ASES</small>

3

P<small>AGE(S)</small>

4

5
*Adriana Int'l Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990) ......................................................... 18

6
*Allen v. Bayer Corp. (In re Phenylpropanolamine (PPA) Prods. Liab. Litig.)*,
7
   460 F.3d 1217 (9th Cir. 2006) ...................................................... 19, 20

8
*Arellano v. Blahnik*,
   2019 WL 2710527 (S.D. Cal. June 28, 2019) ................................... 19

9
*Choudhuri v. Wells Fargo Bank, N.A.*,
10
   2017 WL 5598685 (N.D. Cal. Nov. 21, 2017) ............................... 19, 23

11
*Computer Task Group, Inc. v. Brotby*,
   364 F.3d 1112 (9th Cir. 2004) ......................................................... 22

12
*Conn. Gen. Life. Ins. Co. v. New Images of Beverly Hills*,
13
   482 F.3d 1091 (9th Cir. 2007) ......................................................... 16

14
*Converse v. Vizio, Inc.*,
   2019 WL 3322383 (W.D. Wash. July 23, 2019) ............................... 12

15
*Detoy v. City & Cnty. of San Francisco*,
16
   196 F.R.D. 362 (N.D. Cal. 2000) ..................................................... 15

17
*Gibson v. Chrysler Corp.*,
   261 F.3d 927 (9th Cir. 2001) ........................................................... 23

18

19
*Guifu Li v. A Perfect Day Franchise, Inc.*,
   281 F.R.D. 373 (N.D. Cal. 2012) ....................................................... 9

20
*Henry v. Gill Indus., Inc.*,
21
   983 F.2d 943 (9th Cir. 1993) ........................................................... 16

22
*Hernandez v. Lynch*,
   2019 WL 6998774 (C.D. Cal. June 18, 2019) ................................... 15

23
*Hester v. Vision Airlines, Inc.*,
24
   687 F.3d 1162 (9th Cir. 2012) ..................................................... 21, 22

25
*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
   2012 WL 7783405 (C.D. Cal. Apr. 23, 2012) ................................... 11

26
*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
27
   2019 WL 356805 (N.D. Ill. Jan. 29, 2019) ....................................... 15

28

v

*Newpark Mall LLC v. Crge Newpark Mall, LLC,*
  2016 WL 742009 (N.D. Cal. Feb. 25, 2016) ....................................................... *passim*

*Rambus Inc. v. Hynix Semiconductor Inc.,*
  2007 WL 9653194 (N.D. Cal. Sept. 25, 2007) ............................................................ 11

*Richmark Corp. v. Timber Falling Consultants,*
  959 F.2d 1468 (9th Cir. 1992) ............................................................... 5, 16, 18

*Sayta v. Martin,*
  2019 WL 666722 (N.D. Cal. Feb. 19, 2019) ............................................................ 11

*Seven Seas Cruises S. DE R.L. v. V. Ships Leisure Sam,*
  2010 WL 5187680 (S.D. Fla. Dec. 10, 2010) ............................................................ 12

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,*
  357 U.S. 197 (1958) ......................................................................................... 9

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ........................................................................................ 21

*Transamerica Life Ins. Co. v. Arutyunyan,*
  93 F.4th 1136 (9th Cir. 2024) ........................................................................ 20

*Vasquez v. Leprino Foods Co.,*
  2019 WL 1934015 (E.D. Cal. May 1, 2019) ............................................................ 15

*Wanderer v. Johnston,*
  910 F.2d 652 (9th Cir. 1990) .......................................................................... 9

*White v. Gonzales,*
  2024 WL 1659896 (N.D. Cal. Apr. 16, 2024) .................................................. 20, 21

*Wilson v. Allison,*
  2023 WL 7174235 (N.D. Cal. Oct. 30, 2023) ......................................................... 20

*Wyle v. R.J. Reynolds Indus., Inc.,*
  709 F.2d 585 (9th Cir. 1983) .......................................................................... 23

*Yourish v. Cal. Amplifier,*
  191 F.3d 983 (9th Cir. 1999) ......................................................................... 19


STATUTES & RULES

Fed. R. Civ. P. 30(b)(6) ....................................................................................... 12

Fed. R. Civ. P. 30(c)(2) ....................................................................................... 15

Fed. R. Civ. P. 37(b)(2)(A) ........................................................................ 8, 16, 23

Fed. R. Civ. P. 34(b)(2)(E)(ii) ........................................................................... 11

vi

1

<div align="center">

OTHER AUTHORITIES

</div>

Harry Davies & Stephanie Kirchgaessner, *Israel Tried to Frustrate US Lawsuit Over Pegasus Spyware, Leak Suggests*, The Guardian (July 25, 2024, 12:00 PM), https://www.theguard-ian.com/news/article/2024/jul/25/israel-tried-to-frustrate-us-lawsuit-over-pegasus-spyware-leak-suggests ...................................................................................................................4, 16, 17

*Israel's Attempt to Sway WhatsApp Case Casts Doubt on Its Ability to Deal with NSO Spyware Cases*, Amnesty Int'l (July 25, 2024), https://www.amnesty.org/en/latest/news/2024/07/israels-attempt-to-sway-whatsapp-case-casts-doubt-on-its-ability-to-deal-with-nso-spyware-cases ............4

Phineas Rueckert and Karine Pfenniger, *Israel Maneuvered to Prevent Disclosure of State Secrets Amid WhatsApp vs NSO*, Forbidden Stories (July 25, 2024), https://forbiddenstories.org/actualites_posts/israel-maneuvered-to-prevent-disclosure-of-state-secrets-amid-whatsapp-vs-nso- lawsuit ...................................................................................................................4, 16

Restatement (Third) of Foreign Relations Law § 442(1)(b) (1987) ..................................................16

Restatement (Third) of Foreign Relations Law § 442(2)(b) ..........................................................16

Restatement (Third) of Foreign Relations Law § 442 cmt. h ..........................................................16

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

At the February 15, 2024 hearing, the Court noted that if Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited ("NSO") failed to comply with their discovery obligations, the Court "would not feel at all reluctant to impose sanctions." Ex. B (Feb. 15, 2024 Hr'g Tr.) at 70:20–23. Discovery is now closed, and NSO has refused to comply with its obligations in violation of this Court's Orders. For example, NSO has refused to produce internal email communications and has refused to produce the Pegasus source code as ordered by the Court. The discovery NSO has refused to produce goes to issues at the heart of this case, and NSO's violations have accordingly prejudiced Plaintiffs. Sanctions are warranted.

In March 2023, NSO moved for a protective order seeking what the Court described as "near-total insulation against producing any discovery in this case" on the basis of purported obligations under Israeli law. Dkt. No. 233 at 8. The Court denied that motion on November 15, 2023 (the "November 2023 Order"), balancing NSO's purported foreign-law restrictions against its U.S. discovery obligations, and concluding that foreign law did not excuse discovery as to materials that were sufficiently specific and important. *Id*. at 8–11. Plaintiffs then moved to compel the production of specific categories of information. Dkt. No. 235-2. The Court granted Plaintiffs' motion on February 23, 2024 (the "February 2024 Order"), and ordered NSO to produce various categories of specific and important information, including documents and communications related to any of NSO's spyware targeting or directed at WhatsApp servers, or using WhatsApp in any way to access WhatsApp's users' devices. Dkt. No. 292 at 3–5. After NSO ignored the February 2024 Order and continued opposing the production of its computer code, Plaintiffs again moved to compel and the Court granted Plaintiffs' motion on August 1, 2024 (the "August 2024 Order"), confirming that NSO was obligated to produce the source code for its spyware. Dkt. No. 358 at 4–7. NSO still did not comply.

NSO has violated those Orders and refused to comply with its discovery obligations. NSO's many willful violations include the following:

- NSO did not produce "Pegasus computer code, as well as code that shows the full functionality of any other 'relevant spyware,'" Dkt. No. 358, in a manner that can be used in

1

1   this litigation;

2   • NSO did not produce any internal communications, *see* Dkt. 292 at 3; and

3   • NSO misused the Court's previous Orders *mandating* NSO to produce documents from a

4   certain date range, *see* Dkt. No. 292 at 4, as a supposed Court-ordered *limitation* on the

5   scope of NSO's testimony, and refused to answer fundamental questions going to the

6   heart of this case—such as whether NSO is continuing to look for new ways to exploit

7   WhatsApp to this day, *see* Ex. N (Gazneli Tr.) at 271:9–20.

8   To be sure, as set forth in Plaintiffs' motion for summary judgment, even the limited discov-

9   ery suffices to enter judgment for Plaintiffs on all claims as a matter of law.  If the Court concludes

10   that judgment cannot be entered for Plaintiffs as a matter of law as a result of NSO's refusal to pro-

11   duce discovery and comply with this Court's Orders, sanctions are warranted—up to and including

12   terminating sanctions.  NSO's discovery violations were willful, and unfairly skew the record on

13   virtually every key issue in the case, from the merits, to jurisdiction, to damages, making a full and

14   fair trial on the facts impossible.  NSO cannot be permitted to advance arguments untested through

15   full discovery or to hide behind the standard of proof, or a purported absence of evidence, when, in

16   violation of multiple Court Orders, it created those very issues by refusing to produce the evidence

17   that would assist Plaintiffs in carrying their burden.

18   The Court was clear about NSO's discovery obligations, and NSO has willfully defied the

19   Court's Orders.  To the extent NSO's discovery violations now preclude judgment for Plaintiffs as a

20   matter of law, the most severe sanction of terminating sanctions is warranted.

21   <center>**BACKGROUND**</center>

22   **A.    Plaintiffs File This Action and Seek Discovery from NSO**

23   Plaintiffs filed their complaint on October 29, 2019, which centered on—but was not limited

24   to—NSO's attacks that abused WhatsApp servers in April and May of 2019.  Dkt. No. 1 ¶ 42.  As

25   alleged in the complaint, NSO unlawfully used WhatsApp to install NSO's spyware on the mobile

26   devices of approximately 1,400 WhatsApp users.  *See id.*  Plaintiffs uncovered NSO's intrusions in

27   May 2019, and traced the activity back to third-party servers registered in NSO's name.

28

<center>2</center>

Plaintiffs served their first set of requests for production on June 2, 2020.  Dkt. No. 116-2.

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 4:19-CV-07123-PJH



² ████████████████████████████████████████████████████████████████████

³ Harry Davies & Stephanie Kirchgaessner, *Israel Tried to Frustrate US Lawsuit Over Pegasus Spyware, Leak Suggests*, The Guardian (July 25, 2024, 12:00 PM), https://www.theguard-ian.com/news/article/2024/jul/25/israel-tried-to-frustrate-us-lawsuit-over-pegasus-spyware-leak-suggests; *see also* Phineas Rueckert & Karine Pfenniger, *Israel Maneuvered to Prevent Dis-closure of State Secrets Amid WhatsApp vs NSO*, Forbidden Stories (July 25, 2024), https://for-biddenstories.org/actualites_posts/israel-maneuvered-to-prevent-disclosure-of-state-secrets-amid-whatsapp-vs-nso-lawsuit; Amnesty International, *Israel's Attempt to Sway WhatsApp Case Casts Doubt on Its Ability to Deal with NSO Spyware Cases* (July 25, 2024), https://www.am-nesty.org/en/latest/news/2024/07/israels-attempt-to-sway-whatsapp-case-casts-doubt-on-its-ability-to-deal-with-nso-spyware-cases.

⁴ Davies & Kirchgaessner, *supra* note 3.

███████████████████████████████████████████████████

**C.    The November 2023 Order: The Court Orders NSO to Produce Specific and Important Documents, Despite Any Israeli Law Restrictions**

On March 30, 2023, NSO moved for a protective order seeking an exemption from responding to nearly all of Plaintiffs' discovery requests based on certain Israeli law restrictions.  Dkt. No. 176.  The parties' briefs focused on applying the Ninth Circuit's decision in *Richmark Corp. v. Timber Falling Consultants*, which established that "a foreign-law prohibition will not always excuse compliance with a discovery order."  959 F.2d 1468, 1474 (9th Cir. 1992).

In the November 2023 Order, the Court denied NSO's motion.  Dkt. No. 233 at 8.  Relying on the *Richmark* factors, the Court concluded that "[t]o the extent that plaintiffs are able to identify discovery that is sufficiently specific and important to the asserted claims in this case, the court will not excuse non-production of that discovery."  *Id.* at 9.  The Court thus invited Plaintiffs to submit a motion to compel specific discovery from NSO, so that the Court could "order compliance with those discovery requests despite the DECL [Israeli Defense Export Control Law] and other Israeli restrictions."  *Id*. at 10.  In subsequent discussion, NSO conceded that some documents and communications were sufficiently specific and important under *Richmark*.  On December 13, 2023, NSO agreed to produce certain discovery, including:

- documents and communications sufficient to show NSO's development, testing, troubleshooting, and maintenance of Pegasus for Android 2019 (RFP Nos. 1, 7);
- documents and communications concerning the identification of WhatsApp application vulnerabilities incorporated into Pegasus for Android 2019 (RFP Nos. 5, 10);
- documents and communications sufficient to show the role of WhatsApp servers and/or the WhatsApp application in Pegasus for Android 2019 being installed on the mobile phones and devices of certain users by NSO's customers (RFP No. 14);
- documents and communications sufficient to show any analysis, disassembling, or emulating of the WhatsApp application by NSO (RFP Nos. 15, 16);
- documents and communications sufficient to identify any WhatsApp accounts NSO used

to develop, test, transmit, or distribute Pegasus for Android 2019 (RFP No. 17); and

- communications with Westbridge Technologies, Inc. ("Westbridge") that relate to Pegasus for Android 2019 (RFP No. 28).

Dkt. No. 235-4, Ex. P at 3–8.  For other categories of documents where the parties did not reach agreement, Plaintiffs filed a motion to compel.  Dkt. No. 235-2.

### D.   The February 2024 Order: The Court Orders NSO to Produce Documents It Concedes Are Sufficiently Important and Specific, as well as Documents Regarding "Relevant Spyware," Despite Israeli Law Restrictions

Having already ruled that Israeli law restrictions do not insulate NSO from discovery, the Court entered the February 2024 Order, which compelled NSO to produce certain documents.  The Court began the February 2024 Order by ordering NSO to produce the documents it conceded were important and specific.  Dkt. No. 292 at 3.  Turning to the disputed categories, the Court adopted Plaintiffs' definition of "Relevant Spyware," as "any NSO spyware targeting or directed at Whatsapp servers, or using Whatsapp in any way to access Target Devices."  *Id.* at 3.  In response to the parties' dispute over the timeframe for document production, the Court concluded that "at this stage of the case, the *Richmark* factors weigh in favor of production for 'all relevant spyware' for a period . . . from April 29, 2018 to May 10, 2020."  *Id.* at 4.  In doing so, the Court left open whether Plaintiffs could expand the timeframe of this request, noting: "[i]f, after reviewing the relevant spyware from that timeframe, plaintiffs are able to provide evidence that any attack lasted beyond that timeframe, plaintiffs may seek further discovery at that time."  *Id.*  The Court rejected NSO's argument that any document production "should be limited to the installation layer of the alleged spyware," and ordered NSO to "produce information concerning the full functionality of the relevant spyware," including how NSO spyware accessed users' devices and extracted information from those devices.  *Id.*

The Court also ordered NSO to supplement its responses and objections to Plaintiffs' requests for admission related to one server (the "AWS Server") on which certain Pegasus code was stored, in order to correct misstatements NSO had made to the Court.  *Id*. at 7.  On August 25, 2023, NSO represented to the Court that the AWS Server contained "computer code that comprises part of the

6

Pegasus system" and that "[t]he Pegasus code resides on the German AWS server, but only NSO's engineers in Israel have access to it." Dkt. No. 208 at 4. On November 22, 2023, NSO gave contradictory responses to Plaintiffs' requests for admission related to the AWS Server, and refused to correct the responses despite Plaintiffs' repeated requests. *See* Dkt. No. 332 at 6–7. Only after Plaintiffs took the issue to the Court did NSO admit its previous representations were inaccurate. *See* Dkt. 339 at 7. The Court did not impose any sanction "in light of NSO's representation that it preserved the relevant information on the AWS server." Dkt. No. 358 at 7.

### E.    The August 2024 Order: The Court Clarifies That NSO Must Produce Pegasus Code Despite Israeli Law Restrictions

On August 1, 2024, in response to another motion to compel, the Court "clarif[ied] that the previous order's reference to 'full functionality' was indeed intended to require NSO to produce Pegasus computer code." Dkt. No. 358 at 6. In so doing, the Court rejected NSO's argument that the Court did not previously order NSO to produce Pegasus code. Dkt. No. 345 at 1.

### F.    NSO Refuses to Produce Information It Agreed to Produce, and Information Regarding the Full Functionality of the Relevant Spyware

NSO has only produced approximately 4,868 documents. Block Decl. ¶ 10. In large part, these documents contain internal product and testing updates (many of which are near duplicates). NSO did not produce any emails or communications collected from any of its employees. NSO's privilege log lists just four documents. *See* Ex. L (Sept. 20, 2024 Ltr. from A. Craig to C. Cagney) at 4. NSO has refused to log documents withheld (or destroyed) pursuant to the Seizure Order.

Further, NSO refused to produce any computer code to Plaintiffs' counsel in the United States. Instead, on August 23, 2024, NSO's counsel in Israel sent Plaintiffs' counsel in Israel ████ ████████████████████████████████████████████████████████████████████ ████████████████████████ a link, which they represented provided access to certain computer code from the AWS Server. *See* Ex. H (Aug. 23, 2024 Ltr. from R. Blecher to R. Lehmann).[5] In sending

---

[5] Israeli counsel's appearance in this proceeding, in turn, was necessary to permit their access to the Highly Confidential – Attorneys' Eyes Only documents as to which their advice was sought. *See* Dkt. No. 132 § 7.3(a).

this information to Israeli counsel, NSO's counsel emphasized the near-total restrictions on Plaintiffs'

ability to use it for litigation purposes, averring that it was ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ Plaintiffs' counsel in the United States have been denied any access

to these materials.[6]  Nor can the materials be used in depositions of NSO's witnesses, accessed by

Plaintiffs' experts, shared with this Court, or published to a jury in the Northern District of California.

### G. Procedural History

On September 12, 2024, Plaintiffs sent NSO a letter outlining deficiencies in NSO's produc-

tion to date, and requested that NSO remedy these deficiencies.  Ex. K (Sept. 12, 2024 Ltr. from C.

Cagney to A. Craig).  On September 20, 2024, NSO provided a letter response, which did not address

all the deficiencies raised by Plaintiffs.  Ex. L (Sept. 20, 2024 Ltr. from A. Craig to C. Cagney).

Plaintiffs moved to enlarge time to file discovery-related motions, in order to allow the parties to

exhaust the meet-and-confer process before bringing disputes to the Court.  *See* Dkt. No. 388.  The

Court granted Plaintiffs' motion on September 27, 2024, and gave the parties until October 2, 2024

to file any discovery-related motions.  *See* Dkt. No. 394.  The parties met-and-conferred on Septem-

ber 30, 2024, but could not resolve all disputes.  Block Decl. ¶¶ 17–19.  This motion followed.

### ARGUMENT

Under Rule 37 of the Federal Rules of Civil Procedure, "[i]f a party . . . fails to obey an order

to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the

action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  Those orders may

include "directing that the matters embraced in the order or other designated facts be taken as estab-

lished for purposes of the action, as the prevailing party claims," or "rendering a default judgment

against the disobedient party."  *Id.*

---

[6]  On September 20, 2024, NSO's counsel in the United States told Plaintiffs' counsel in the United States that if ████████████████████████████████████████████████ ████████████████████████████████████████████████ Ex. L (Sept. 20, 2024 Ltr. from A. Craig to C. Cagney) at 1–2.

8

1     **I.      NSO Refused to Comply with the Court's Discovery Orders**

2             "As a condition precedent to imposing sanctions pursuant to Federal Rule of Civil Procedure

3     37 the Defendants must have violated a Court Order."  *Guifu Li v. A Perfect Day Franchise, Inc.*,

4     281 F.R.D. 373, 390 (N.D. Cal. 2012); *see also Wanderer v. Johnston*, 910 F.2d 652, 657 (9th Cir.

5     1990) (explaining that sanctions are appropriate where a party or someone under the party's control

6     fails to produce documents or things as ordered by the court).  The motives behind a party's noncom-

7     pliance with a court order—including its intention to comply with another country's laws—do not

8     excuse the noncompliance, and "are relevant only to the path which the District Court might follow

9     in dealing with [the party's] failure to comply."  *Societe Internationale Pour Participations Industri-*

10    *elles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958).  Here, NSO has violated the Court's

11    Orders by refusing to produce computer code showing the full functionality of its spyware, any in-

12    ternal communications, or financial information beyond attorney-created representations.  Moreover,

13    NSO's refusal to answer deposition questions on purported relevance grounds, as instructed by

14    NSO's counsel, misinterprets the Court's Orders and violates the Federal Rules of Civil Procedure.

15            **A.      NSO Refused to Produce Computer Code Showing the Full Functionality of the**

16                    **Relevant Spyware**

17             In a case centered on NSO's development and deployment of computer code to access Plain-

18    tiffs' servers, NSO refused to produce the computer code itself.  The August 2024 Order required

19    NSO to produce the computer code underpinning any of NSO's spyware targeting or directed at

20    WhatsApp servers, or using WhatsApp in any way to access Target Devices, despite NSO's contin-

21    ued insistence that Israeli law prevented the code from being exported beyond Israel's borders.  *See*

22    Dkt. No. 358 at 6.  In response, NSO refused to produce a single line of computer code to Plaintiffs

23    within the United States—including the code that NSO's chief technical witness relied on to provide

24    answers at his deposition.  *See* Ex. N (Gazneli Tr.) at 12:8–13:2, 15:5–12 (acknowledging review of

25    computer code).  Instead, NSO made a purported production to Plaintiffs' counsel in Israel ▓▓▓▓▓

26    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and is therefore unusable in this litigation.

27

28

### 1.  *NSO Refused to Produce Code Showing Full Functionality of Relevant Spyware*

Plaintiffs have discovered that NSO's Pegasus spyware (marketed as "Phantom" within the United States) relied on at least three distinct installation vectors[7] that targeted and used WhatsApp's servers: (1) "Heaven," which operated from early 2018 to December 2018; (2) "Eden," which operated from January to May 2019; and (3) "Erised," which began operating in early 2020.  *See* Ex. N (Gazneli Tr.) at 256:23–25, 258:6–12, 263:6–9, 265:5–10.  Hence, the "relevant spyware" includes *at least* the code for Pegasus, Phantom, and the Heaven, Eden, and Erised installation vectors.  NSO produced none of it.  Even NSO's "production" in Israel is insufficient: NSO has described this production as "code from the Amazon Web Server," *see* Ex. L (Sept. 20, 2024 Ltr. from A. Craig to C. Cagney) at 1, but it has also said that the AWS Server only "house[d] computer code that comprised *part* of the Pegasus system."  Dkt. No. 339 at 3; *see also* Ex. N (Gazneli Tr.) at 319:23–323:5 (admitting that certain aspects of Pegasus code were not on the AWS Server).  Therefore, NSO has not, and has not purported to, comply with the Court's Orders that it produce code reflecting the "full functionality" of Pegasus and all other "relevant spyware."  Dkt. No. 358 at 6.

### 2.  *NSO Refused to Produce Code to Plaintiffs' Counsel in the United States*

Not only has NSO refused to produce all of the required code, but its purported production of a portion of the required code is insufficient and violates this Court's orders.  NSO sent a production *only* to Plaintiffs' counsel in Israel, ██████████████████████████████████████  That falls far short of what this Court ordered and what the Federal Rules of Civil Procedure require. This Court has rejected NSO's argument that it should be relieved of its obligation to produce code that, according to NSO, "is very carefully export controlled by the Israeli Ministry of Defense," Dkt. 339 at 6, and held that NSO was obligated to produce discovery "despite the DECL and other Israeli restrictions."  Dkt. No. 233 at 10.

NSO's representation is questionable given its extensive use outside of Israel, but in any event, the Court held that export control restrictions do not excuse NSO's obligation to produce the

---

[7]  An installation vector is "the method, to deliver that [Pegasus] agent on to the device."  Ex. P (Shohat Tr.) at 47:8–9.

code in this U.S. litigation.  In the August 2024 Order, the Court explained that it "already balanced those considerations as part of the *Richmark* analysis, and concluded, in spite of the export controls and other restrictions, that production of 'information sufficient to show the full functionality of all relevant spyware' was 'not excused' because 'that information is sufficiently important and specific' to require production under *Richmark*."  Dkt. No. 358 at 6 (citing Dkt. 292 at 5).

NSO violated the August 2024 Order.  The purported production in Israel (the contents of which Plaintiffs cannot verify) is neither available to Plaintiffs' U.S.-based counsel, nor to its experts, and (according to NSO) cannot be used in the litigation or in trial.  Block Decl. ¶ 11.  Even the Court is prohibited from reviewing it.  When presented with this deficiency, NSO blamed the Court's denial of NSO's motion to dismiss, saying "NSO sought to avoid these issues by asking the Court to dismiss the lawsuit so it could be refiled in Israel." Ex. J (Sept. 4, 2024 Ltr. from A. Craig to C. Cagney) at 2.  NSO's other suggestion—that Plaintiffs obtain an Israeli export control license—finds no prece-dent in any U.S. litigation, and ignores the Court's *Richmark* analysis, which required production "despite" (not subject to) Israeli law restrictions.

Moreover, NSO's decision to produce some unspecified subset of the Pegasus code in Israel without any means for U.S. counsel to review or bring it to the United States and use it in this litiga-tion violates the requirement that documents be produced in "reasonably usable form."  Fed. R. Civ. P. 34(b)(2)(E)(ii) ("If a request does not specify a form for producing electronically stored infor-mation, a party must produce it in a form or forms in which it is ordinarily maintained or in a reason-ably usable form.").  District courts have repeatedly ruled that producing documents in foreign loca-tions falls short of the requirements under the Federal Rules.  *See Rambus Inc. v. Hynix Semiconduc-tor Inc.*, 2007 WL 9653194, at *6 (N.D. Cal. Sept. 25, 2007) (finding that defendant's offer for plain-tiffs to inspect computer code in Korea was not reasonable and imposed an undue burden on plain-tiff); *Sayta v. Martin*, 2019 WL 666722, at *2 (N.D. Cal. Feb. 19, 2019) ("Mr. Sayta does not have the right to determine unilaterally where production will be made or to demand that Mr. Martin travel to India in order to inspect documents."); *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 2012 WL 7783405, at *1 (C.D. Cal. Apr. 23, 2012) ("In the court's view, requiring plaintiff's counsel to view

the source code at a distant location or in a relatively inaccessible environment, and prohibiting them from copying for possible future use the portions they deem to be relevant, is impractical.").

### 3. NSO's Corporate Designee on Technical Issues Consulted Source Code In Preparation for Testimony, Underscoring the Code's Importance and Usefulness

NSO's witnesses have acknowledged the importance of the unproduced code. For example, Tamir Gazneli, NSO's Vice President of Research and Development, admitted that there was no substitute for reviewing the computer code in order to understand NSO's technology. *See* Ex. N (Gazneli Tr.) at 152:21–23 ("Q: So we would need to look at the source code to understand that level of detail?  A: Yes."); *id.* at 202:25–203:7 ("A: Yes, as I said before, I don't recall the specific part which was used.  Q: So we would need the source code for that?  A: Yes.").

In fact, Mr. Gazneli admitted that he reviewed computer code to prepare for his corporate representative testimony under Rule 30(b)(6). *See* Ex. N (Gazneli Tr.) at 12:8–13:2 ("So I reviewed the code, part of the fingerprinting."); *id.* at 15:5–12 ("I reviewed the code that was relevant for the specific timeframe we are talking about."). While in this case NSO's production obligation stems from a Court order, Mr. Gazneli's consultation of this code underscores its usefulness and the resulting prejudice to Plaintiffs. *See Converse v. Vizio, Inc.*, 2019 WL 3322383, at *2 (W.D. Wash. July 23, 2019) (ordering production of non-privileged documents reviewed by corporate representative to prepare for Rule 30(b)(6) deposition); *accord Seven Seas Cruises S. DE R.L. v. V. Ships Leisure Sam*, 2010 WL 5187680, at *3 (S.D. Fla. Dec. 10, 2010).

### B. NSO Refused to Produce Communications That the Court Ordered Produced

In December 2023, NSO agreed that certain categories of internal communications were relevant and specific under *Richmark*, including communications regarding the identification of WhatsApp application vulnerabilities (later identified as Heaven, Eden, and Erised), and communications with Westbridge related to Pegasus's interactions with WhatsApp. Dkt. No. 235-4, Ex. P at 3–8. In the February 2024 Order, the Court ordered NSO to produce all of these communications by the close of fact discovery. Dkt. No. 292 at 3.

Now that fact discovery has closed, NSO has not complied with the February 2024 Order. As

to several categories, NSO has not produced a single responsive document.  For example, NSO has not produced any communications with Westbridge, its affiliated U.S. sales agent who marketed NSO's products in California (among other places).[8]  Nor has NSO produced any communications regarding how it identified the WhatsApp application vulnerabilities used in Heaven, Eden, or Erised, or the WhatsApp accounts that it used to develop, test, transmit, or distribute spyware through these installation vectors.  More broadly, NSO has refused to produce internal communications, as the Court ordered, but instead produced isolated documents from NSO's centralized files.  These centralized files largely consist of internal product and testing updates (many of which are near duplicates of other documents); they are not the internal communications that the Court has ordered produced.  *See* Block Decl. ¶ 10.  NSO has not explained the impact of the Seizure Order on its limited preservation, collection, and production of documents.

Moreover, NSO's testimony shows that responsive communications existed and likely contained relevant information.  For example, Mr. Eshkar testified that he "communicate[s] with [] coworkers at NSO using email," and communicated with customers regarding research and development efforts and service availability. Ex. O (Eshkar Tr.) at 65:10–66:20, 97:1–16, 191:21–192:2.  Mr. Gazneli testified that individuals involved in the development of the Heaven installation vector for Pegasus, which used WhatsApp's servers, would have received information by email.  Ex. N (Gazneli Tr.) at 133:4–11.  NSO agreed these communications were relevant and specific, and the Court ordered NSO to produce them, but NSO refused to do so.

**C.    NSO Refused to Produce Financial Documents That the Court Ordered Produced**

NSO also refused to produce key "financial information," Dkt. No. 176-2 at 8, including one of the most important financial documents that Plaintiffs requested: a list of the prices that NSO used when selling Pegasus spyware.  This price list—a document that NSO kept in the ordinary course of business, unlike the attorney-created and untestable representations about NSO finances that NSO

---

[8]    Westbridge and two of its former employees (all of whom are represented by NSO's counsel) have produced certain relevant communications with NSO.  This limited production confirms that NSO's employees did communicate internally about relevant topics, and thus that NSO has violated the February 2024 Order by refusing to produce additional responsive documents.

has produced—would have helped Plaintiffs' experts link NSO's profit and revenue to NSO's sale of spyware.  It would also have helped Plaintiffs' experts attempt to test or verify the attorney-created financial document that NSO has provided.  Both Mr. Shohat and Sarit Bizinsky Gil, NSO's Vice President of Global Business Operations, testified to the existence of a "price list which is a general guideline for [NSO's] sales people."  Ex. P (Shohat Tr.) at 98:14–99:24; Ex. Q (Gil Tr.) at 99:12–100:13 ("[t]here were several price lists that existed [between 2018 and 2020]" that were stored in the form of an "Excel spreadsheet" and "a PDF" saved on NSO employees' computers).  Ms. Gil testified (1) that this price list "is composed of the various products and their prices," (2) that "[a]t that time of 2018 to 2020, the price list was also per region, so could be different prices for different geographies," and (3) that the price list includes prices "for a certain amount of concurrent targets, installations . . . [and] prices for covert vectors."  Ex. Q (Gil Tr.) at 98:25–104:18.  NSO's refusal to produce a price list frustrated Plaintiffs' ability to develop expert reports, and has prejudiced Plaintiffs' attempts to seek the proper damages for NSO's unauthorized access to Plaintiffs' computers.

### D.    NSO Refused to Answer Deposition Questions

NSO improperly treated the Court's Orders *granting* certain of Plaintiffs' requests for discovery as if they were a protective order *limiting* discovery to those requests.  Specifically, NSO's counsel instructed NSO's witnesses not to answer deposition questions on any topic outside of the topics where this Court had affirmatively granted Plaintiffs' requests for production.  For instance, NSO's counsel instructed Mr. Gazneli not to answer questions about NSO's research methods.  Ex. N (Gazneli Tr.) at 142:1–142:4 ██████████████████████████████

████████████████████████████████  NSO's counsel also instructed Mr. Gazneli not to answer questions about NSO's use of WhatsApp as an installation vector beyond May 10, 2020.  *See id.* at 44:25–45:8 (instructing witness not to answer question about work on 2020 installation vector); *see also id.* at 46:13–15 ("You can answer to the extent it is within the time period April 29, 2018 to May 10, 2020.").  While Mr. Gazneli confirmed that NSO continued using WhatsApp to install its spyware as of May 10, 2020, he refused to answer as to whether NSO continued doing so thereafter, or indeed continues doing so to this day.  *See id.* at 266:23–267:4 ("Q And

14

I understand you are only answering questions up to May 2020.  Is that right?  A Yes.  Q And up to that date in May 2020, did ERISED remain in use?  A Yes."); *id.* at 271:9–20 ("Q And as to [whether] NSO *continues* to make available to its customers a 0 click exploit that uses WhatsApp servers, you are not willing to tell me. . . . A I can't tell you." (emphasis added)).

"As a rule, instructions not to answer questions at a deposition are improper."  *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 365 (N.D. Cal. 2000).  "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2).  NSO improperly treated the February 2024 Order, which *granted Plaintiffs' motion to compel* the production of certain categories of documents across certain timeframes, as a protective order.  None of the Court's discovery Orders, including the February 2024 Order, discussed depositions or set limits on deposition topics.  Courts have consistently refused to classify such orders as "limitation[s] ordered by the court" under Rule 30(c)(2).  *See, e.g.*, *Vasquez v. Leprino Foods Co.*, 2019 WL 1934015, at *5 (E.D. Cal. May 1, 2019) (holding that counsel improperly instructed a witness not to answer based on relevance where "the Court did not define or otherwise specify any limit on the [] deposition" of that witness); *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 2019 WL 356805, at *4–5 (N.D. Ill. Jan. 29, 2019) (holding that court's order denying certain document requests did not apply to deposition questioning and did not provide counsel with justification to instruct witness not to answer questions); *Hernandez v. Lynch*, 2019 WL 6998774, at *3 (C.D. Cal. June 18, 2019) (where "discovery order did not address the scope of the depositions . . . Counsel may not instruct deponent not to answer questions on the grounds that they are attempting to enforce a court order under Rule 30(d)(3)").

## II.    NSO's Refusal to Comply with the Court's Orders Requires Terminating Sanctions

Terminating sanctions, in the form of a default judgment against NSO, are appropriate here because NSO disregarded multiple Orders involving discovery going to the heart of the case.  The appropriateness of such sanctions is underscored by public reporting—which NSO has not denied— reflecting its own role in bringing about the purported restrictions on its ability to participate in discovery.  Setting the public reporting to the side, NSO's conduct shows it has willfully chosen not to

comply with the Court's discovery Orders.  Terminating sanctions are therefore appropriate.

**A.    NSO Willfully Refused to Comply with the Court's Order**

A court can terminate an action under Rule 37(b)(2)(A)(v) for a willful violation of a court's order.  All that is required to show willfulness, bad faith, or fault is "disobedient conduct not shown to be outside the control of the litigant."  *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993). Even though NSO has invoked foreign law obstacles to complying with the Court's Orders, the Court can order terminating sanctions and default judgment given the nature of NSO's non-compliance. *See* Restatement (Third) of Foreign Relations Law § 442(1)(b) (1987) ("Failure to comply with an order to produce information may subject the person to whom the order is directed to sanctions, including finding of contempt, dismissal of a claim or defense, or default judgment, or may lead to a determination that the facts to which the order was addressed are as asserted by the opposing party."); *see also Conn. Gen. Life. Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1095 (9th Cir. 2007) (the phrase "terminating sanctions" means a default judgment under Rule 37).

A court can impose sanctions "on a party that has failed to comply with the order for production . . .  in cases of deliberate concealment or removal of information or of failure to make a good faith effort" to secure permission from the foreign government to disclose the information.  Restatement (Third) of Foreign Relations Law § 442(2)(b); *see also Richmark*, 959 F.2d at 1479.  The party asserting the blocking statute as a defense must "make an affirmative showing of its good faith in seeking permission to disclose the information."  *Id.*; see also Restatement (Third) of Foreign Relations Law § 442 cmt. h (requiring "serious efforts before appropriate authorities of states with blocking statutes to secure release or waiver from a prohibition against disclosure.").

NSO cannot show it made good-faith efforts to secure permission from the Israeli government to make relevant discovery available, as it refused to provide documents or answer questions about any such efforts.  That alone is enough for this Court to conclude that NSO's violation of this Court's Order was willful.  Further, public reporting that NSO ██████████████████████████

████████████████████████████████████████████████████████████████████[9]

---

[9]    *See* Davies & Kirchgaessner, Rueckert & Pfenniger, Amnesty International, *supra* note 3.

NSO has not engaged on this issue. At the direction of counsel, NSO's witnesses, including their Chief Executive Officer, refused to answer questions about ███████████████████████ ████████████████████████████ Ex. P (Shohat Tr.) at 250:3–9 (███████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████[10] ████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████

NSO's conduct in discovery indicates that it is hiding behind Israeli law restrictions. For instance, NSO admitted that it transferred relevant discovery—including portions of Pegasus code— off of the AWS Server (which was located in Germany) years after this litigation was filed. *See* Dkt. No. 339-1 ¶ 6. NSO moved the code that was on the AWS Server to Israel, where NSO asserts that it is now protected by the Israeli law restrictions. *Id*. In doing so, NSO deliberately took steps to impede Plaintiffs' access to relevant discovery—indeed, discovery that the Court had specifically ordered NSO to produce.

In addition, the record calls into question NSO's candor when it attempted to narrow the time frame for document discovery. NSO asserted that Plaintiffs only had claims with respect to a single version of Pegasus that was only in use in April and May 2019. *See* Dkt. No. 179-2 at 12–14, Dkt. No. 249-2 at 6–9. In a declaration in support of this argument, Mr. Shohat stated, "the 'Pegasus' technology that was in use during the April 2019 to May 2019 time period covered by Plaintiffs'

---

[10]    Davies & Kirchgaessner, *supra* note 3.

Complaint, and which had the ability to be used in the manner described in the Complaint, was a specific version of the 'Pegasus' technology used only on Android devices and only in or around April and May 2019.  Earlier and later versions of Pegasus operated differently and are not relevant to the issues in WhatsApp's lawsuit against NSO."  Dkt. No. 179-3 ¶ 8.  Discovery has shown NSO was using WhatsApp servers to install its spyware from early 2018 until at least May 2020, meaning Mr. Shohat's statement is false.  It is, at a minimum, less-than-forthcoming for NSO to limit its productions to a limited timeframe, while knowing that its attacks materially exceeded that timeframe.

NSO's conduct mirrors that of the defendant in *Richmark*, where the Ninth Circuit upheld the most severe sanction available based on the defendant's failure to make an affirmative showing of a good-faith effort to obtain a waiver from the Chinese government.[11]  The defendant in that case invited the foreign government to block U.S. discovery by "point[ing] out to the Ministry the legal provision it felt barred disclosure."  *Richmark*, 959 F.2d at 1479.  If the press reports are true, this is precisely what NSO did in this case.  Given the absence of any good-faith effort, the district court in *Richmark* "acted within its discretion in sanctioning [defendant] for its noncompliance."  *Id.*  Even ignoring the public reports, NSO's refusal to provide information about ███████████████████ ████████████████████ prevents NSO from showing a good-faith effort.  For this reason, the Court should find that NSO willfully refused to comply with the Court's discovery Orders.

**B.    Terminating Sanctions Are Appropriate**

Because NSO's discovery violations were willful and NSO acted in bad faith, the Court can proceed to weighing five factors in determining whether to impose terminating sanctions: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).  Here, all factors favor imposing terminating sanctions.

---

[11]   The defendant in *Richmark* had already been subject to a default judgment for failing to appear.  *Id.* at 1471–72.  The Ninth Circuit's decision affirmed the district court's contempt order for the defendant's refusal to provide post-judgment discovery.

### 1. *Expeditious Resolution of Litigation*

The public interest in resolving litigation expeditiously weighs in favor of terminating sanctions here. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Plaintiffs filed their complaint on October 29, 2019, Dkt. No. 1, and first served discovery on June 2, 2020, Dkt. No. 116-2. NSO has refused to comply, and has repeatedly sought to delay participating in discovery. Most recently, on February 15, 2024, NSO requested an additional six months to complete fact discovery, which it claimed was necessary to comply with the foreign law issues that had prevented it from producing documents to date. *See* Dkt. No. 292 at 7. Even with the benefit of added time, NSO has refused to comply with the Court's discovery Orders. Under these circumstances, this factor favors dismissal. *See Choudhuri v. Wells Fargo Bank, N.A.*, 2017 WL 5598685, at *6 (N.D. Cal. Nov. 21, 2017) ("case has been pending for over two years, and [party's] failure to cooperate in discovery has already resulted in two postponements of the deadlines"); *Arellano v. Blahnik*, 2019 WL 2710527, at *8 (S.D. Cal. June 28, 2019) ("this factor weighs decidedly in favor of dismissal" when "[t]here have been multiple requests for extensions and modification of scheduling orders in this case as a result of party's failure to engage in discovery"). NSO's "delay in reaching the merits . . . is costly in money, memory, manageability, and confidence in the process." *Allen v. Bayer Corp. (In re Phenylpropanolamine (PPA) Prods. Liab. Litig.)*, 460 F.3d 1217, 1227 (9th Cir. 2006).

### 2. *Court's Need to Manage Its Docket*

Second, terminating sanctions would serve the Court's interest in managing its docket. Since this litigation returned to this Court in January 2023, the parties have repeatedly sought the Court's intervention, in large part based on NSO's refusal to meaningfully participate in discovery.[12] Courts faced with far fewer discovery disputes than present here have found sufficient grounds for terminating sanctions. *See Newpark Mall LLC v. Crge Newpark Mall, LLC*, 2016 WL 742009, at *5 (N.D.

---

[12] *See, e.g.*, Dkt. No. 170 (NSO's motion for protective order to avoid producing documents); Dkt. No. 176 (NSO's amended motion for protective order to avoid producing documents); Dkt. No. 209 (joint letter brief regarding NSO's failure to produce documents); Dkt. No. 215 (NSO's motion to dismiss for *forum non conveniens*); Dkt. No. 235 (Plaintiffs' motion to compel production of documents); Dkt. No. 318 (Plaintiffs' motion to obtain depositions of NSO's employees); Dkt. No. 335 (Plaintiffs' motion to compel discovery regarding the AWS server).

Cal. Feb. 25, 2016) (finding that factor favored terminating sanctions where defendants' behavior necessitated extensive motion practice on discovery issues); *White v. Gonzales*, 2024 WL 1659896, at *4 (N.D. Cal. Apr. 16, 2024) (finding that factor favored terminating sanctions where "court has had to address multiple notices and motions of discovery disputes and issue multiple orders").

### 3. Risk of Prejudice to Plaintiffs

Third, NSO's refusal to comply with the Court's Orders has prejudiced Plaintiffs' ability to litigate their case. A party suffers prejudice if the violation of the court orders impairs its ability to go to trial or threatens to interfere with the rightful decision of the case. *Allen*, 460 F.3d at 1227. Generally, "failure to comply with an order to produce specific discovery materials creates a sufficient risk of prejudice to satisfy this factor." *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1147 (9th Cir. 2024); *accord Allen*, 460 F.3d at 1227. The risk of prejudice to Plaintiffs is particularly high when, as here, NSO has refused to produce documents or allow testimony on issues central to the case. *See Wilson v. Allison*, 2023 WL 7174235, at *3 (N.D. Cal. Oct. 30, 2023) (imposing terminating sanctions when defendants were deprived of opportunity to "fully understand [plaintiff's] claims and learn what evidence supports his claims"); *see also Arutyunyan*, 93 F.4th at 1147 (justifying terminating sanctions where particular discovery materials "could reasonably be thought to contain relevant information").

For instance, NSO's refusal to comply with the August 2024 Order to produce computer code shields from discovery the full functionality of NSO's spyware, including how it targets Plaintiffs' servers. Moreover, NSO's withholding of discovery may frustrate Plaintiffs' ability to respond to whatever defenses NSO may assert. As a further example, NSO's refusal to produce internal communications unfairly limits Plaintiffs' inquiry into how NSO developed its sophisticated attacks targeting Plaintiffs' computers, including as to the full extent of NSO's theft, misappropriation, and/or reverse-engineering of Plaintiffs' technology. NSO's refusal to answer questions about its research methods has also deprived Plaintiffs of information that may show NSO's violations of federal or state law, and/or additional breaches of the WhatsApp Terms of Service. Ex. N (Gazneli Tr.) at 141:2–142:4. Finally, NSO's refusal to provide discovery beyond May 10, 2020 is directly relevant

to the parties' dispute regarding the appropriateness of injunctive relief, which is based on a substantial risk of future harm. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Here, NSO has admitted that it continued unlawfully using WhatsApp to install its spyware even after this litigation had been filed, and that it continued doing so at least through May 10, 2020. *See* Ex. N (Gazneli Tr.) at 266:23–267:4, 271:9–20. ████████████████████████████

████████████████████████████

### 4. *Disposition on the Merits*

As the Court has previously recognized, public policy usually supports disposing of cases on the merits and weighs against imposing terminating sanctions. *See Newpark Mall*, 2016 WL 742009, at *5. However, "[d]istrict courts in this circuit [] have found that disposition of cases on their merits is not furthered by litigants who refuse to provide discovery needed for preparation of a defense against his claim." *White*, 2024 WL 1659896, at *5. Here, NSO has taken several steps to prevent a decision on the merits, including the multiple discovery violations described above. ███████████████ ██████████████████████████████████ In addition, NSO's conduct throughout the discovery period, such as its refusal to provide crucial evidence or non-executive witnesses for depositions, has frustrated a merits-based decision. NSO should not be able to prevent the full and fair resolution of this case, and then avoid sanctions on that same basis.

### 5. *Availability of Less Drastic Sanctions*

A court considering this factor may examine: (1) whether the court has considered lesser sanctions; (2) whether the court tried lesser sanctions; and (3) whether the court warned the recalcitrant party about the possibility of case-dispositive sanctions. *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1170 (9th Cir. 2012). More broadly, this is not a case where additional court orders may spur NSO into compliance. NSO has already been ordered to produce the discovery at issue here, and refused to comply with these Orders. The Court even warned NSO of the risks of refusing to comply with its Orders. That warning was unheeded, and NSO's refusal to comply was willful. There is no reason to think that yet another Order seeking NSO's compliance will change its behavior.

NSO has also attempted to find loopholes in this Court's orders, such as its decision to make

21

a "production" that it represents includes code from the AWS Server to Plaintiffs' Israeli counsel in a manner ██████████████████████████ NSO did that without notice to Plaintiffs, and without seeking leave or clarification from the Court, even though the Court had just recently clarified the scope of its previous Order on "relevant spyware." As this Court has previously recognized, there is no need to "impose less drastic sanctions" when "there do not appear to be any less drastic sanctions available." *Newpark Mall*, 2016 WL 742009, at *5 (ordering terminating sanctions where "[d]efendants did not respond to the discovery requests; they were ordered to do so, but still failed to respond; the discovery cutoff date has passed; and defendants provided no good cause for their failure to comply with the discovery requests"); *see also Hester*, 687 F.3d at 1170 ("[I]n light of the defendant's 'willful disobedience,' the district court 'could reasonably conclude that additional lesser sanctions would be pointless'" (quoting *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116–17 (9th Cir. 2004)). Providing NSO with more time to remedy its failure would add time and cost to this litigation, with no clear benefit.

NSO's violation of Court Orders infects almost every aspect of the case. Lesser sanctions cannot fully address the unfair prejudice because there is no apparent means to determine precisely what NSO has withheld or destroyed, and the categories of information that it refused to produce—such as the computer code itself—go to the heart of the case. Moreover, it is difficult for Plaintiffs or the Court to craft a lesser sanction, given that NSO has not fully revealed how it may seek to defend the case. Because NSO has refused to comply with Court Orders encompassing a broad range of discovery, the corresponding sanction should itself be all-encompassing.

Finally, the Court explicitly warned NSO months ago about potential sanctions. At the February 15, 2024 conference, the Court said it "would not feel at all reluctant to impose sanctions if [NSO] decide[s] they don't want to do it[,] if I give them the amount of time so that they can do it." Ex. B (Feb. 15, 2024 Hr'g Tr.) at 70:20–23.[13] NSO elected to ignore this Court's Orders going to

---

[13] In addition, with respect to the Pegasus code in particular, the Court denied Plaintiffs' prior motion for sanctions on the assumption that NSO had preserved, and would produce, the Pegasus code itself. *See* Dkt. No. 358 at 7. This specific warning counsels in favor of sanctions now that NSO has refused to produce this code in the United States.

discovery at the heart of this matter anyway.  This Court imposed terminating sanctions under similar circumstances in *Newpark Mall*, where "the court previously explicitly advised defendants that fail-ure to comply with discovery well might result in the filing of a motion for default judgment," and defendants nonetheless failed to comply with their discovery obligations.  2016 WL 742009, at *5.

### C.    If the Court Finds That Terminating Sanctions Are Not Appropriate, It Should Order Evidentiary Sanctions

If the Court does not find terminating sanctions to be appropriate, it should nonetheless direct that certain facts are established.  Rule 37(b)(2)(A) allows the Court to "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" or "prohibit[] the disobedient party from supporting or opposing desig-nated claims or defenses, or from introducing designated matters in evidence."  *See Choudhuri*, 2017 WL 5598685, at *8–9 (imposing evidentiary sanctions based on party's failure to "make a meaningful production of documents").  In order to establish issue sanctions, the disobeying party's noncompli-ance need not be willful or in bad faith.  *See, e.g.*, *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).  Adverse findings on factual issues would be particularly appropriate here be-cause there is a "reasonable assumption that the party resisting discovery is doing so because the information sought is unfavorable to its interest.  In such a case, the sanction merely serves as a mechanism for establishing facts that are being improperly hidden by the party resisting discovery."  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001).

NSO argues that there is insufficient evidence in the record to grant summary judgment, but this is the very evidence NSO has refused to provide.  Even on the current discovery record, NSO is wrong, but NSO should not benefit from its discovery misconduct.  Giving any credence to NSO's arguments, and to whatever arguments NSO may advance in opposition to Plaintiffs' motion for summary judgment, would unfairly prejudice Plaintiffs, and allow NSO to profit unfairly from its misconduct.  The Court should thus direct the following facts as established.

***Targeting of Plaintiffs' California-based servers.***  NSO argues that the Court lacks personal jurisdiction over NSO because "NSO did not *and could* not target specific WhatsApp signaling or

relay servers anywhere." Dkt. No. 396-2 at 9. NSO's argument is meritless and the Court previously rejected it. *See* Dkt. No. 111 at 23 (rejecting NSO's jurisdictional argument based on absence of "allegation or argument that NSO selected the location of the server"). At the summary judgment stage, NSO again challenges jurisdiction while refusing to produce discovery that may help Plaintiffs establish jurisdiction. For example, NSO refused to produce documents or answer questions about NSO's research efforts, which may show NSO exploring the location of WhatsApp's servers. Ex. N (Gazneli Tr.) at 141:21–142:4 (███████████████████████████). Having shielded discovery into its research, NSO should not be able to obtain favorable rulings from the limited information in the record. The Court should find that NSO targeted Plaintiffs' California-based servers.

   ***Location of third-party servers***. Similarly, NSO tries to minimize its connection with its servers in California. Dkt. No. 396-2 at 11–14. During the 2019 attack, Plaintiffs discovered that NSO directed target devices to fetch code from certain servers, including a server located in California leased by Quadranet. Dkt. Nos. 55-2 at 2, 55-6 at 2. NSO repeatedly opposed discovery into its servers, including this Quadranet server. The Court ultimately ruled that NSO could withhold discovery on its server architecture "at this time," on the assumption that NSO would provide information regarding "the full functionality of the alleged spyware." Dkt. No. 292 at 5. As explained above, NSO has refused to provide discovery regarding "the full functionality" of Pegasus (including the installation vectors targeting WhatsApp), refused to produce agreed-upon documents, and instructed witnesses not to answer deposition questions. The limited information that NSO provided about its server architecture aligns with its secrecy in setting up the servers, as "the goal is deniability of the customer and includes the deniability of the company." Ex. N (Gazneli Tr.) at 131:11–13. NSO does not deny its affiliation with Quadranet, but merely states that "[t]here is no evidence" that NSO had any contract, communications, or control over the server. Dkt. No. 396-2 at 13. Here too, NSO highlights the lack of evidence while refusing to produce the evidence itself.[14] The Court should

---

[14]  NSO employed similar phrasing in denying that it continued to target WhatsApp in 2020—a denial that has been proven false by discovery. *See* Dkt. No. 110 at 2 ("Plaintiffs do not dispute that they have not identified any instance where NSO allegedly targeted Plaintiffs' servers before that time, nor have they made any allegation or identified any evidence that NSO attempted to target their servers since then.").

find that NSO knowingly stored Pegasus code on California-based servers.

**Relationship with Westbridge**. In its motion for summary judgment, NSO asserts that "Plaintiffs have no evidence that could justify attributing Westbridge's conduct to NSO for purposes of personal jurisdiction." Dkt. No. 396-2 at 14. NSO wishes this was the case but saying it does not make it so. On one hand, Westbridge produced limited documents, which showed NSO and Westbridge employees routinely colluding. On the other hand, NSO refused to provide communications between NSO and Westbridge, which would further support the agency and/or alter ego relationship between Westbridge and NSO. Because NSO refused to produce this discovery despite being ordered by the Court to do so, the Court should find that Westbridge was an alter ego of NSO, and that Westbridge employees were agents of NSO and acting at NSO's direction.

**Use of Pegasus by NSO's customers**. NSO asserts that its "government customers alone operate Pegasus and make all decisions about how to do so." Dkt. No. 396-2 at 18. Plaintiffs cannot test this assertion because NSO refused to produce any information about its customers' roles and responsibilities with respect to the operation of Pegasus. NSO's witnesses also ███████ ██████████████████████████ *See* Ex. O (Eshkar Tr.) at 216:23–217:11 ████████ ██████████████████████ related to WhatsApp installation vector). The Court should therefore preclude NSO from arguing that its customers operated Pegasus.

**Additional issues to be determined**. NSO has yet to respond to Plaintiffs' motion for summary judgment or disclose defenses it may seek to assert at trial. Accordingly, Plaintiffs cannot identify at this time all the ways NSO may attempt to unfairly benefit from its violations of the Court's Orders. Plaintiffs therefore respectfully request leave to seek further relief if necessary.

## CONCLUSION

NSO violated this Court's discovery Orders going to information at the core of this litigation and did so willfully. For the reasons stated above, if the Court finds that the limited discovery produced in this case does not suffice for the entry of judgment as a matter of law, it should enter a default judgment against NSO, or enter other appropriate relief.

1

Dated:  October 2, 2024            Respectfully submitted,

2

DAVIS POLK & WARDWELL LLP

3

4

By:  /s/ Micah G. Block
Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com

5

6

7

8

9

Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
  (admitted pro hac vice)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
        antonio.perez@davispolk.com
        craig.cagney@davispolk.com
        gina.cora@davispolk.com
        luca.marzorati@davispolk.com

10

11

12

13

14

15

16

17

18

19

*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 4:19-CV-07123-PJH