JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
 *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:  (213) 443-4355
Facsimile:  (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF DANA TREXLER, CPA/CFF**<br><br>Date:  February 13, 2025<br>Time:  2:00 p.m.<br>Place:  Courtroom 3, Ronald V. Dellums Federal Building & U.S. Courthouse, 1301 Clay Street, Oakland, California<br><br>Action Filed: 10/29/2019<br><br>**FILED UNDER SEAL**<br><br>**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]** |

**PLEASE TAKE NOTICE** that on February 13, 2025 at 2:00 p.m., Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. (collectively "NSO") will bring on for hearing before the Honorable Phyllis J. Hamilton, United States District Judge, in the United States Courthouse, 1301 Clay Street, Courtroom 3, Oakland, California, a motion to strike the Supplemental Expert Report of Dana Trexler, CPA/CFF ("Supplemental Trexler Report" or "Trexler Supp."). NSO's Motion is based on this Notice of Motion, the following Points and Authorities, the accompanying Declaration of Aaron S. Craig and exhibits thereto, and such other written or oral argument as may be presented at or before the time this Motion is taken under submission by the Court.

## POINTS AND AUTHORITIES

Plaintiffs served the Rule 26 disclosure of their damages expert Dana Trexler on August 30, 2024. The report disclosed three opinions: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The very same day that rebuttal reports were due (and the day that Defendants' rebuttal expert, Greg Pinsonneault, served his rebuttal to Ms. Trexler's initial report), Ms. Trexler filed a "supplemental" report that *completely changed* the methodology by which she calculated Defendants' revenues—this time using a document that Defendants had produced several days prior to her initial report and ***upon which Ms. Trexler had relied for other purposes in her initial report!***

As a result of this sequence of events, particularly the fact that Plaintiffs waited until the evening that Mr. Pinsonneault's rebuttal report was due before serving a "supplemental" Trexler report with an entirely new and different methodology for calculating Defendants' revenues, the approximately $25,000 spent by Defendants on the portion of Mr. Pinsonneault's initial report rebutting Plaintiffs' initial disgorgement opinions were completely wasted. The timing of Ms. Trexler's supplemental report, and Plaintiffs' failure even to notify Defendants that a supplemental report was coming, reflect rank gamesmanship on Plaintiffs' part. In addition to the wasted time

and expense of Mr. Pinsonneault's rebuttal of Ms. Trexler's now discarded initial disgorgement opinion, Plaintiffs' conduct has necessitated Mr. Pinsonneault's preparation of two further supplemental reports. There is no justification, much less the required "substantial justification" for Plaintiffs' delay until the evening rebuttal reports were due to provide Defendants with notice of the Supplemental Trexler Report, and Plaintiffs' misconduct has inflicted clear harm on Defendants. Accordingly, the Court should strike the Supplemental Trexler Report.

### Background

Plaintiffs served the expert report of Dana Trexler, CPA/CFF, on the last day allowed by the Court's scheduling order, August 30, 2024. (Craig Decl., Exh. A.) The report disclosed three opinions which she summarized on pages 4–5 of her initial report. First, Ms. Trexler opined that ███████████████████████████████████████████ (*Id.* ¶ 12.) Second, she disclosed her opinion that ███████████████████████████████████████████ (*Id.* ¶ 122 and Table 8 at 44-45.) ███████████████████████████████████████████ (*Id.* ¶¶ 110-114.) Third, Ms. Trexler opined that ███████████████████████████████████████████ (*Id.* ¶ 126.)

Ms. Trexler's third opinion (Craig Decl. Exh. A ¶¶ 124-127) ████████ a spreadsheet produced by Defendants setting forth the revenues Defendants obtained from each customer who had licensed any of Defendants' products during the period for which the Court ordered that discovery be had—April 29, 2018 through May 10, 2020 (the "NSO Revenue Spreadsheet") (Craig Decl. ¶ 5 & Exh. B). Defendants produced the NSO Revenue Spreadsheet to Plaintiffs on August 26, 2024. (Craig Decl. ¶ 5.)

1    Moreover, in Ms. Trexler's analysis of ███████████████
████████████████████████████████████████████, but for reasons
known only to her, ████████████████████████████████████████
████████████████████████████████████████████. Her report provides:



(Craig Decl. Exh. A ¶ 96.) Indeed, Ms. Trexler devoted over two full pages, █████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████ (*Id.* ¶¶ 96-99.)

Between August 30, 2024 and September 21, 2024, Plaintiffs' counsel did not tell Defendants' counsel that Ms. Trexler would be supplementing her report with a complete overhaul of her analysis of Defendants' revenues and profits allegedly subject to disgorgement, despite knowing that Defendants' deadline to rebut Ms. Trexler's report was September 21, 2024. (Craig Decl. ¶ 8.) Plaintiffs' counsel also did not ask Defendants' counsel any questions about the NSO Revenue Spreadsheet after receiving it on August 26, 2024, such as what the different rows and columns represented (which Defendants' counsel would have readily answered). (*Id.* ¶ 9.) Plaintiffs took the deposition of NSO employee Sarit Gil in London on September 6, 2024, during which Ms. Gil answered all of Plaintiffs' counsel's questions about the NSO Revenue Spreadsheet. (*Id.* ¶ 10.)

Ms. Trexler's description in her initial report of the NSO Revenue Spreadsheet was accurate. The NSO Revenue Spreadsheet sets forth an anonymizing account number for each NSO customer (Column A), the revenues earned by Defendants in each quarter between 2Q18 and 2Q20

1  (Columns C-K), the product in question (whether Pegasus or other of Defendants' non-Pegasus
2  products) (Column L). (Craig Decl. ¶ 5.) It also identifies, for the Pegasus contracts, which
3  installation vectors the customer had licensed the right to use (Columns R-U). (*Id.*) It also
4  identifies, for each Pegasus account, the source of the information about the installation vectors
5  (Column Q). (*Id.*)

6  On September 21, 2024, Defendants disclosed to plaintiff the rebuttal report of Defendants'
7  economist, Greg Pinsonneault, rebutting Ms. Trexler's initial report. (Craig Decl. Exh. C.) Mr.
8  Pinsonneault explained several basic flaws in Ms. Trexler's methodology, including but not limited
9  to ███████████████████████████████████████████████████
10 ███████████████████████████████████████████████████████████████
11 ███████████████████████████████████████████████████████████████
12 ███████████████████████████████████████████████████████████████
13 ████████████████████ (*Id.* ¶¶ 68–81.) In his rebuttal, Mr. Pinsonneault performed an alternate
14 calculation of Defendants' revenues associated with the Accused Technology between January 1,
15 2019 and May 19, 2019, based on the NSO Revenue Spreadsheet. (*Id.* ¶¶ 97-113).

16 Ms. Trexler disclosed her brand-new disgorgement methodology on September 21, 2024 in
17 a "supplemental" report served at 9:14 PM (Craig Decl. ¶ 7 & Exh. D). In her supplemental report,
18 Ms. Trexler ████████████████████████████████████████████████
19 ███████████████████████████████████████████████████████████████
20 ███████████████████████████████████████████████████████████████
21 ███████████████████████████████████████████████████████████████
22 ████████████████████████ (Craig Decl. Exh. D ¶ 6.) Her supplemental report ████████
23 ███████████████████████████████████████████████████████████████
24 ████████████████████████████ Ms. Trexler's pretextual justification for not using her new
25 methodology in her initial report appears to be ████████████████████████
26 ███████████████████████████████████████████████████████████████
27 ████████████████████████████ Ms. Trexler's supplemental report does not reference the fact that
28 neither she nor Plaintiffs' counsel ever asked Defendants' counsel to answer any questions Ms.

Trexler had about the NSO Revenue Spreadsheet, nor does the supplemental report make any effort to justify the 15-day delay between Ms. Gil's deposition and the service of Ms. Trexler's supplemental report—time when Plaintiffs knew Defendants would be preparing a rebuttal to Ms. Trexler's initial report.

<u>**Argument**</u>

**I.      Overview of Pertinent Legal Standards**

Federal Rule of Civil Procedure 26 provides that expert disclosures must be made *at the times directed by the Court*. *See* Fed. R. Civ. P. 26(a)(2)(D). Rule 37, in turn, provides that if a party fails to provide the information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added). When considering whether an untimely expert report is substantially justified or harmless, the Court may consider various factors, including: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). The party offering an expert report after the deadline has the burden to prove that its delay was substantially justified or harmless. *Duarte Nursery, Inc. v. United States Army Corps of Engineers*, 2017 WL 3453206, at *7 (E.D. Cal. Aug. 11, 2017). The Court has "particularly wide latitude . . . to issue sanctions under Rule 37(c)(1)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (affirming exclusion of expert testimony due to untimely report).

Rule 26(e) addresses supplementation of expert reports. "Supplementing an expert report under Rule 26 means correcting inaccuracies, or filling the interstices of an incomplete report based on *information that was not available* at the time of the initial disclosure." *Duarte Nursery*, 2017 WL 3453206, at *6 (emphasis added; quotation omitted). The Ninth Circuit has cautioned that Rule 26(e) is not "a loophole" through which a party can change its expert disclosures "after the court's deadline for doing so has passed." *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. App'x 496, 500 (9th Cir. 2009) (affirming exclusion of untimely expert declarations). In particular,

1  Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." *Duarte Nursery*, 2017 WL 3453206, at *6 (quotation omitted). Accordingly, "courts have rejected supplemental expert reports that . . . were significantly different from the expert's original report and effectively altered the expert's theories." *Id.*; *accord Sherwin–Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 4742494, at *3 (S.D. Cal. Aug. 11, 2015).

**II.    The Court Should Strike the Untimely Supplemental Trexler Report.**

This Court's February 23, 2023 Order re Motions to Compel and Motion for Relief from Case Management Order directed the parties to make their Rule 26 expert disclosures by August 30, 2024. *See* Dkt. 292 at 7. The untimely Supplemental Trexler Report, dated September 21, 2024 is not a proper supplemental disclosure as allowed under Rule 26(e)(1) because it seeks to alter Plaintiffs' disgorgement theories and calculations and does so based on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs cannot carry their burden to show that their delay in offering the new disgorgement opinions and calculations in the Supplemental Trexler Report was substantially justified or harmless. For these reasons, and as explained more fully below, the Court should strike the Supplemental Trexler Report.

**A.    The Supplemental Trexler Report Is Not Authorized By Rule 26(e).**

The Supplemental Trexler Report is not a proper supplement under Rule 26. It does not correct inaccuracies or fill in interstices of an earlier incomplete report. Instead, it *belatedly offers an entirely new theory and calculation of profits allegedly subject to disgorgement*, and it does so based on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. "Rule 26(e) . . . does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label." *Linder v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 640 (D. Haw. 2008); *see also Gerawan Farming, Inc. v. Rehrig Pacific Co.*, 2013 WL 1982797, at *5 (E.D. Cal. May 13, 2013) (purported "supplemental" report that generate[d] an entirely new damages calculation" was not authorized under Rule 26(e)). Less still does Rule 26(e) "permit parties to add new opinions to an expert report

*based on evidence that was available to them at the time the initial expert report was due.*" *Toomey v. Nextel Communications, Inc.*, 2004 WL 5512967, *4 (N.D. Cal. Sept. 23, 2004) (emphasis added); *see also Pac. Info. Res., Inc. v. Musselman*, 2008 WL 2338505, at *1 (N.D. Cal. June 4, 2008) (report was not a proper Rule 26(e) supplement where analysis did not address newly available information and instead should have been included in initial report).

Ms. Trexler's contention that her "supplemental" report ████████████ ████████████████████████████████████ (*see* Craig Decl. Exh. D ¶ 2) is not well taken. As even a cursory review of the Supplemental Trexler Report makes clear, Ms. Trexler's belated re-do of her calculations of purported "profits subject to disgorgement" ████████ ███████████████████████ that was produced to Plaintiffs prior to their submission of Ms. Trexler's initial report, and which Ms. Trexler cites and discusses in that initial report. *See id.*, ¶ 6–7 ████████████████████████████████████████ ████████████████████████ which was produced prior to initial report and cited therein); *see also* Craig Decl. Exh. A ¶ 8 n.5, ¶¶ 96–99 & ¶ 126. And while, Ms. Trexler claims that ████████████████████████████████████████████████ ████████████████████████████████████████████ that does not justify her belated replacement of her opinion regarding profits subject to disgorgement where the new opinion is based on information previously available to her. Rule 26(e) does not authorize supplementation to address "failures of omission because the expert did an inadequate or incomplete preparation." *Duarte Nursery*, 2017 WL 3453206, at *6; *see also Cave Consulting Group, Inc. v. OptumInsight, Inc.*, 2018 WL 1938555, at *3 (N.D. Cal. Apr. 25, 2018) (striking supplemental reports); *Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998) (denying leave to submit supplemental report where expert's failure to include opinions in initial report "was one of omission: the information was there to review. He didn't review it in detail before expressing his opinion."); *Sherwin–Williams*, 2015 WL 4742494, at *6 (Rule 26(e) "does not justify supplementing a report because of a party's lack of due diligence"); *accord Ibekwe v. White*, 2016 WL 6963051, at *4 (Feb. 23, 2016) (Rule 26(e) did not authorize expert to belatedly submit report changing opinions based on medical records available at time of initial report).

**B.   Plaintiffs Cannot Show Substantial Justification for Belatedly Rewriting Ms. Trexler's Disgorgement Opinions.**

Because the new disgorgement opinions and calculations in the Supplemental Trexler Report are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs' delay in offering these new opinions well after the expert disclosure deadline is not substantially justified. *See, e.g., Ibekwe*, 2016 WL 6963051, at *4 (delay in submission of supplemental report not justified where medical records supplying basis for "supplement" were previously available); *Pac. Info. Res.*, 2008 WL 2338505, at *2 (no substantial justification where analyses in report did not address newly available information and instead should have been included in initial report). With adequate diligence, Ms. Trexler could and should have submitted these opinions and calculations with her initial report.

Indeed, to the extent that Ms. Trexler was unable to understand the relevant portions of the NSO Revenue Spreadsheet, Plaintiffs could have sought clarification regarding those contents of the NSO Revenue Spreadsheet from Defendants, but they failed to do so. Worse still, even after obtaining the deposition testimony that Ms. Trexler now contends helped her to understand portions of the NSO Revenue Spreadsheet underlying her revamped disgorgement opinions, Plaintiffs concealed from Defendants their intention to "supplement" Ms. Trexler's opinions until serving the Supplemental Trexler Report at 9:14 PM on the same day that rebuttal reports were due. Plaintiffs had to have known well in advance of that time that they would be seeking to replace Ms. Trexler's disgorgement opinions but kept silent while Defendants incurred approximately $25,000 in expenses relating to Mr. Pinsonneault's rebuttal of initial disgorgement opinions (Craig Decl. ¶ 13) that the Supplemental Trexler Report, if not stricken, would moot. This Court should not countenance such gamesmanship and sandbagging by Plaintiffs. *See Duarte Nursery*, 2017 WL 3453206, at *6.

**C.   Plaintiffs' Attempt To Replace Ms. Trexler's Disgorgement Opinions Is Not Harmless.**

Plaintiffs' belated attempt to offer entirely new and different opinions and calculations concerning disgorgement is also not "harmless." *Id.*, at *6–7 (belated "supplemental reports" that

significantly altered calculation of alleged civil penalties were not harmless); *accord Ibekwe*, 2016 WL 6963051, at *4 (finding information in belated "supplemental" report that "dramatically affect[ed the] theory of damages" was "highly prejudicial" and granting motion to exclude same).

Here, the prejudice to NSO is particularly acute. Plaintiffs submitted the Supplemental Trexler Report on the *night that rebuttal reports were due* under the schedule established by the Court. By then, NSO had already incurred approximately $25,000 in expenses in connection with engaging an expert to rebut the disgorgement opinions in Ms. Trexler's Initial Report that she now seeks to abandon and replace. Such imposition of litigation expenses incurred in connection with an expert's shifting opinions can constitute prejudice sufficient to warrant striking a proposed supplemental expert report. *See Rovid v. Graco Children's Products Inc.*, 2018 WL 5906075, at *10 (N.D. Cal. Nov. 9, 2018) (striking report where opponent incurred burden and expense of engaging experts to respond to initial report "only for those expert reports to be effectively nullified by [] rebuttal report's about-face"); *see also Gerawan Farming*, (belated report that altered expert's opinions was not harmless where opponent "wasted resources reviewing and preparing for [expert's] old opinions").

Had Plaintiffs and Ms. Trexler exercised reasonable diligence, or even spoken up about their intention to re-do Ms. Trexler's disgorgement opinions in the ample time they had to do so before rebuttal reports were due, the prejudice their actions have caused Defendants could have been avoided. The Court should not reward Plaintiffs' sharp practices and should strike the Supplemental Trexler Report.

### Conclusion

For the reasons shown above, the Court should strike the Supplemental Trexler Report.

Dated: December 18, 2024

KING & SPALDING LLP

By: */s/ Aaron S. Craig*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*

JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
  acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DECLARATION OF AARON S. CRAIG IN SUPPORT OF DEFENDANTS' ADMINISTRATIVE MOTION TO SEAL AND IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF DANA TREXLER, CPA/CFF**<br><br>Action Filed:  10/29/2019 |

I, Aaron S. Craig, declare as follows:

1. I am a member of the California State Bar and the bar of this court. I am a partner in the law firm of King & Spalding LLP and counsel to NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively "NSO" or "Defendants") in this action. I have personal knowledge of the facts set forth herein and, except as otherwise stated, could testify competently to each fact herein.

2. I submit this declaration pursuant to Northern District of California Civil Local Rules 7-11 and 79-5(d) in support of Defendants' Administrative Motion to Seal filed concurrently herewith. I also submit this declaration in support of Defendants' Motion to Strike the Supplemental Expert Report of Dana Trexler, CPA/CFF.

3. Attached hereto as **Exhibit 1** is a true and correct copy of the unredacted version of Defendants' Motion to Strike the Supplemental Report of Dana Trexler, CPA/CFF (the "Motion to Strike").

4. Attached hereto as **Exhibit A** is a true and correct copy of the Expert Report of Dana Trexler, CPA/CFF, which Plaintiffs in this action served on Defendants on August 30, 2024. Plaintiffs designated Ms. Trexler's August 30, 2024 report as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order (Dkt. No. 132) in this action. In addition, Exhibit A contains discussion of confidential and competitively sensitive documents and information produced by Defendants and designated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order, including Exhibit B discussed below.

5. Attached hereto as **Exhibit B** is a true and correct printed copy of a Microsoft Excel spreadsheet which Defendants produced to Plaintiffs in native format bearing control number NSO_WHATSAPP_00045858 on August 26, 2024. Exhibit B sets forth the revenues Defendants obtained from each customer who had licensed any of Defendants' products during the period for which the Court ordered that discovery be had—April 29, 2018 through May 10, 2020. It sets forth an anonymizing account number for each NSO customer (Column A), the revenues earned by Defendants in each quarter between 2Q18 and 2Q20 (Columns C-K), the product in question

1  (whether Pegasus or other of Defendants' products) (Column L).  It also identifies, for the Pegasus contracts, which installation vectors the customer had licensed the right to use (Columns R-U).  It also identifies, for each Pegasus account, the source of the information about the installation vectors (Column Q).  The information contained in Exhibit B is commercially sensitive, and NSO has kept it confidential, including by designating the document "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order (Dkt. No. 132) in this action.  Public disclosure of Exhibit B could harm NSO competitively.

6. Attached hereto as **Exhibit C** is a true and correct copy of excerpts of the Rebuttal Expert Report of Gregory A. Pinsonneault, which Defendants served on Plaintiffs on September 21, 2024.  Exhibit C contains discussion of confidential and competitively sensitive documents and information produced by Defendants and designated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order, including Exhibit B discussed above.  Portions of Exhibit C also discuss testimony from Defendants witnesses that reveal commercially and competitively sensitive technical, financial and other business information of Defendants, the public disclosure of which could harm Defendants.  In addition, Exhibit C includes discussion and rebuttal of information contained in Ms. Trexler's August 30, 2024 report, which Plaintiffs designated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order.

7. Attached hereto as **Exhibit D** is a true and correct copy of the Supplemental Expert Report of Dana Trexler, CPA/CFF, which Plaintiffs in this action served on Defendants at 9:14 PM PT, on September 21, 2024, which is also the date on which reports rebutting initial expert reports were due in this action.  Plaintiffs designated Ms. Trexler's September 21, 2024 report as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order.  In addition, Exhibit D contains discussion of confidential and competitively sensitive documents and information produced by Defendants and designated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order, including Exhibit B discussed above.

8. Between August 30, 2024, when Plaintiffs served Ms. Trexler's initial report, and September 21, 2024, when Plaintiffs served the "supplemental" Trexler report, Plaintiffs' counsel did not notify Defendants that they would be serving another report from Ms. Trexler which would replace her analysis and opinions concerning of Defendants' revenues and profits allegedly subject to disgorgement set forth in Ms. Trexler's August 30, 2024 initial report.

9. Plaintiffs' counsel also did not ask me or any of my colleagues any questions about Exhibit B after receiving it on August 26, 2024, such as what the different rows and columns represented. Had Plaintiffs' counsel sought any such clarification, I would have readily provided it.

10. Plaintiffs deposed NSO employee Ms. Sarit Gil in London on September 6, 2024, during which Ms. Gil answered all of Plaintiffs' counsel's questions about Exhibit B.

11. The Motion to Strike contains discussion of Exhibits A–D hereto, which as discussed in paragraphs 4–7 above, either constitute or address confidential and commercially sensitive information produced by Defendants and designated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order.

12. In addition, Exhibits A and D to the Motion to Strike are excerpts of documents Plaintiffs designated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order, and Exhibit C includes discussion of portions of Exhibit A that Plaintiffs designated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order.

13. I am familiar with the invoices of Defendants' rebuttal expert Greg Pinsonneault and I have reviewed those invoices. I estimate that the work done by Mr. Pinsonneault and his staff to rebut Dana Trexler's disgorgement calculation set forth in her initial report cost Defendants approximately $25,000 in expert fees.

///

///

///

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of December 2024, at Los Angeles, California.

          */s/ Aaron S. Craig*
          AARON S. CRAIG

# Exhibit A

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

# Exhibit B

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

# Exhibit C

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

# Exhibit D

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**