1  Greg D. Andres
   Antonio J. Perez-Marques
2  Gina Cora
   Craig T. Cagney
3  Luca Marzorati
     (admitted *pro hac vice*)
4  DAVIS POLK & WARDWELL LLP
   450 Lexington Avenue
5  New York, New York 10017
   Telephone: (212) 450-4000
6  Facsimile: (212) 701-5800
   Email:   greg.andres@davispolk.com
7           antonio.perez@davispolk.com
            gina.cora@davispolk.com
8           craig.cagney@davispolk.com
            luca.marzorati@davispolk.com
9
   Micah G. Block (SBN 270712)
10 DAVIS POLK & WARDWELL LLP
   900 Middlefield Road, Suite 200
11 Redwood City, CA 94063
   Telephone: (650) 752-2000
12 Facsimile:  (650) 752-2111
   Email:   micah.block@davispolk.com
13
   *Attorneys for Plaintiffs WhatsApp LLC and Meta
14 Platforms, Inc.*

15                    UNITED STATES DISTRICT COURT

16                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

17                            OAKLAND DIVISION

18 WHATSAPP LLC.                              )
   and META PLATFORMS, INC.,                  )
19                                            )  Case No. 4:19-cv-07123-PJH
                      Plaintiffs,             )
20                                            )  **PLAINTIFFS' OPPOSITION TO**
            v.                                )  **DEFENDANTS' MOTION TO**
21                                            )  **SUBSTITUTE EXPERT**
   NSO GROUP TECHNOLOGIES LIMITED             )
22 and Q CYBER TECHNOLOGIES LIMITED,          )  Date:  January 16, 2025
                                              )  Time:  1:30 p.m.
23                    Defendants.             )  Ctrm:  3
                                              )  Before the Honorable Phyllis J. Hamilton
24                                            )
                                                 Action Filed: Oct. 29, 2019

**PRELIMINARY STATEMENT**

On November 7, 2024, months after the agreed-upon deadline for disclosure of expert reports, and just weeks before the close of expert discovery, John "Jay" Town—one of the experts proffered by Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. ("NSO")—told NSO's lawyers that he was withdrawing as an expert witness in order to seek a presidentially appointed position. Yet NSO did not disclose Mr. Town's withdrawal to Plaintiffs WhatsApp LLC and Meta Platforms, Inc. until November 27, 2024. Over the course of the three weeks when NSO kept silent, Plaintiffs prepared for Mr. Town's deposition, which was scheduled for December 10, 2024, before NSO cancelled it. NSO now seeks to substitute a new expert, Joshua Minkler, for Mr. Town. Especially now that the Court has found that NSO is liable on all of Plaintiffs' claims, and the only remaining issue for the jury to decide is the amount that NSO owes Plaintiffs, NSO's motion to substitute should be denied.

Because NSO's proposed expert substitution would disrupt the agreed-upon case schedule, NSO must show good cause for its substitution—an inquiry that "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Courts measure diligence by evaluating how long it took a party to provide notice that their expert withdrew. Here, NSO neglected to inform Plaintiffs or the Court of Mr. Town's withdrawal for three weeks. On its own, NSO's lack of diligence dooms its motion.

Allowing NSO to substitute its expert and alter the case schedule would prejudice Plaintiffs. Plaintiffs need to focus on preparing for the March 3, 2025, trial to determine the amount of damages that NSO owes in this case, rather than re-opening expert discovery to review Mr. Minkler's expert report (served on December 18, 2024), potentially prepare a rebuttal report, prepare to depose Mr. Minkler, and take his deposition (which could necessitate travel). Plaintiffs' prejudice is compounded here because Mr. Minkler's proposed testimony is duplicative and legally irrelevant. NSO has offered multiple experts describing what they see as the public policy benefits of NSO's Pegasus spyware. None of these individuals have ever used Pegasus, and NSO has refused to disclose its customers or otherwise substantiate its say-so that such customers are engaged in (foreign) law enforcement activities, and it has offered no legal basis as to why these issues are relevant to any claim

1

Pls.' Opp. to Defs.' Mot. to Substitute Expert | Case No. 4:19-cv-07123-PJH

or defense in the case—especially after the Court found NSO liable on all of Plaintiffs' claims. Allowing NSO to offer yet another expert report on this topic would just add to the expert opinions that the Court should exclude.

## BACKGROUND

This Court originally ruled that expert discovery should end on May 27, 2024. Dkt. No. 168 at 1. On January 18, 2024, NSO informed the Court that it "will be unable to complete its discovery obligations" under the existing schedule and moved to modify the case schedule—including by extending the expert disclosure date to August 30, 2024, and the expert discovery cutoff to October 25, 2024. Dkt. No. 264-2 at 1. The Court granted NSO's motion. Dkt. No. 292. The Court later ordered rebuttal expert disclosures to be served by September 21, 2024. Dkt. No. 357 at 6.

NSO served an affirmative expert report from John "Jay" Town on August 30, 2024. Dkt. No. 480-1 ¶ 2. On October 23, 2024, Plaintiffs agreed to depose Mr. Town on December 10, 2024, and arranged their schedule accordingly. *Id.* Two days later, the parties filed a stipulation and proposed order to extend the expert discovery cutoff to December 16, 2024. Dkt. No. 450 at 1–3. The stipulation states, in relevant part, that "due to the schedules of experts and the Parties' counsel, the Parties agree that additional time is required to complete expert discovery." *Id.* at 2. On November 8, 2024, this Court entered the proposed order. Dkt. No. 462 at 6.

On November 7, 2024, Mr. Town informed NSO's counsel that he was withdrawing from this matter. Dkt. No. 480-1 ¶ 3. NSO did not inform Plaintiffs of Mr. Town's withdrawal until the afternoon of November 27, 2024, three weeks later. On that day, NSO's counsel sent a letter to Plaintiffs' counsel notifying them that Mr. Town "has given notice that he needs to withdraw from this matter and will be unavailable to testify at the March 3, 2024, trial of this matter because he will be beginning a presidentially-appointed position in the federal government, which he expects to commence in January 2025." Dkt. No. 480-4 at 1.[1] In the same letter, NSO noted its intent to substitute Mr. Minkler for Mr. Town, and stated that "[i]f Mr. Minkler is unavailable for deposition during the

---

[1] As of December 23, 2024, there has been no announcement of Mr. Town's nomination or appointment to any government position.

current expert discovery period, the relief requested by NSO's contemplated motion would also include a request for an extension of the expert discovery period for the limited purpose of permitting a deposition of Mr. Minkler." *Id.*

On December 20, 2024, this Court granted Plaintiffs' motion for partial summary judgment, finding NSO liable on Plaintiffs' claims. *See* Dkt. No. 494. The Court "directed [the parties] to meet and confer to determine if any expert-related motions are mooted by this order, and to notify the court by January 17, 2025 which, if any, expert-related motions need to be resolved by the court prior to the trial on damages." *Id*. at 16. Given the Court's ruling, Plaintiffs' counsel asked NSO's counsel to confirm that NSO was not proceeding with their motion to substitute, but NSO asserted that "Mr. Minkler's testimony will be relevant to the remedies being sought by Plaintiffs" and "demanded that Plaintiffs "proceed with [the motion] on the timeframes set forth under the current case schedule." Decl. of Gina Cora in Supp. of Pls.' Opp. ¶ 11. Plaintiffs thus filed this opposition.

## ARGUMENT

When, as here, a motion to substitute an expert necessitates a change to the pretrial schedule, courts evaluate the motion under Federal Rule of Civil Procedure 16(b). *See, e.g.*, *Fujifilm Corp. v. Motorola Mobility LLC*, 2014 WL 8094582, at *1 (N.D. Cal. Nov. 19, 2014). Under that Rule, a pretrial schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This "'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609; *see also Fujifilm*, 2014 WL 8094582, at *1 ("Good cause requires a showing of diligence."). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609. "If that party was not diligent, the inquiry should end." *Id*.

### I.   NSO Did Not Diligently Inform the Court or Plaintiffs of Mr. Town's Withdrawal

NSO waited nearly three weeks after learning of Mr. Town's withdrawal before sending any notice that Mr. Town's deposition was not moving forward. NSO admits that Mr. Town withdrew on November 7, 2024, Dkt. No. 480-1 ¶ 3, which is the same day that the parties appeared before the Court for a hearing on dispositive motions, *see* Dkt. No. 460. NSO waited until November 27, 2024,

the day before Thanksgiving, to inform Plaintiffs that Mr. Town had withdrawn and that NSO intended to substitute Mr. Minkler. Dkt. No. 480-1 ¶ 7.

Because NSO delayed informing Plaintiffs of the expert substitution, it did not act diligently. Courts have repeatedly found that parties who kept the information about an expert's withdrawal to themselves cannot be found to have acted diligently. For instance, in *Fidelity National Financial, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, 308 F.R.D. 649, 653 (S.D. Cal. 2015), the district court found that an expert's withdrawal should have been

> a red flag . . . for both [the party] and its counsel. Diligent counsel would have recognized that substituting a new expert and reopening discovery nearly three years after the discovery deadline would be a major setback to the parties' trial preparations and the Court's pretrial case management. In order to mitigate this impact, [defendants'] counsel should have notified [plaintiffs] and the Court *immediately* upon learning of [the expert's] withdrawal.

Similarly, a court in this district ruled that a party "has not shown diligence in seeking to substitute a new expert" where it did not inform opposing counsel "when they became aware of the need to replace an expert." *Gbarabe v. Chevron Corp.*, 2017 WL 956628, at *17 (N.D. Cal. Mar. 13, 2017).

By contrast, courts have allowed expert substitutions in situations where counsel informed the opposing party as soon as an expert withdrew, rather than waiting until a replacement was found, and prejudice to the opposing party was otherwise remediable. *See, e.g., Jones v. Nat'l R.R. Passenger Corp.*, 2022 WL 689000, at *3 (N.D. Cal. Feb. 23, 2022) (allowing substitute when counsel "confer[red]" with [opposing party] immediately upon learning that [expert] would no longer adhere to his agreement with her"); *Landes v. Skil Power Tools*, 2013 WL 6859837, at *3 (E.D. Cal. Dec. 30, 2013) (allowing substitute when counsel "confer[red] with Defendants immediately upon learning that [expert] would no longer adhere to his agreement with Plaintiff).

NSO ignores this authority establishing that diligence is measured from the time counsel learns of the expert's withdrawal, not from the time counsel "finalize[s]" its engagement with the proposed replacement expert—which is what NSO did here. (*See* Dkt. No. Dkt. No. 480-1 ¶ 7 ("We finalized Mr. Minkler's engagement on November 26, 2024. The next day, I sent a letter to Plaintiff's counsel Greg Andres, informing Plaintiffs of NSO's need and intent to substitute Mr. Minkler for

Mr. Town.").)[2] Even in the cases that NSO relies upon, *see* Dkt. No. 480 at 3, the party's diligence was measured from the point when the initial expert withdrew, not the point when a substitute expert was retained. *See Ford v. Munks*, 2013 WL 6236766, at *3 (N.D. Cal. Dec. 2, 2013) (describing "the focus of the diligence inquiry" under Rule 16(b) as "on the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading"). Because NSO "was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

## II. Plaintiffs Will Suffer Prejudice from the Substitution

Plaintiffs will be prejudiced if the Court grants NSO's motion. "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion." *Id*. Here, Plaintiffs will suffer prejudice not only from the significant modifications to the case schedule that NSO acknowledges must be made, but also because Mr. Minkler's opinions are duplicative of NSO's other experts and irrelevant to the narrow issue of the proper remedy, which is the only one that remains in the case.

### A. Plaintiffs Will Suffer Prejudice from the Disrupted Case Schedule

Allowing the substitution would require significant changes to the case schedule and cause substantial unfair prejudice to Plaintiffs. "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion." *Id*. Plaintiffs have already incurred time and expense in preparing for Mr. Town's deposition—including in the nearly three-week period where NSO knew that Mr. Town was withdrawing as an expert witness but did not tell Plaintiffs. To require Plaintiffs to expend resources preparing to depose Mr. Minkler, particularly after the close of expert discovery, "would be extremely prejudicial, particularly because it would require counsel to devote time to expert issues which should be spent preparing for trial." *Fidelity National Fund*, 308 F.R.D. at 655.

Looking forward, NSO underestimates the impact of an expert substitution on the entire case schedule, including potentially the trial date. As the Court has recognized, "if defendants' motion to

---

[2] NSO's motion for substitution and the supporting declaration do not reveal when NSO's counsel first spoke to Mr. Minkler, when Mr. Minkler agreed to accept the engagement, or when NSO notified Mr. Minkler that he had been retained (which, presumably was prior to the engagement being "finalized"). (*See* Dkt. No. 480-1 ¶¶ 3-7.)

substitute is granted, it would necessarily disrupt the case schedule." Dkt. No. 486 at 1; *see also Johnson*, 975 F.2d at 610 ("A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril'" (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)))). NSO served Mr. Minkler's expert report on December 18, 2024—more than three months after the agreed-upon deadline for affirmative expert reports and two days after the close of expert discovery. Cora Decl. ¶ 8. This delay alone prejudices Plaintiffs. *See Fujifilm*, 2014 WL 8094582, at *2 (finding "that [party] is likely to suffer substantial prejudice as a result of this substitution," which would have an expert serve an expert report after the close of expert discovery).

The modifications to the case schedule that Mr. Minkler's substitution would also necessarily entail would prejudice Plaintiffs. NSO's proposed schedule suggests that Plaintiffs take Mr. Minkler's deposition by January 8, 2024. Dkt. No. 480 at 4. Mr. Minkler served his report on December 18, 2024, leaving Plaintiffs with a maximum of 11 business days across the end-of-year holidays to digest Mr. Minkler's report and prepare for his deposition. Over these 11 days, Plaintiffs must draft other expert-related discovery motions, *Daubert* motions, motions *in limine*, and their trial brief, among others. This timing prejudices Plaintiffs' ability to prepare for the deposition. Moreover, if Mr. Minkler's report were allowed, Plaintiffs should in fairness be permitted an opportunity to have an expert rebut those opinions. NSO's schedule does not leave time for that process.

A court in this district rejected a similar last-ditch attempt to replace an expert, which would have required opposing counsel to take unreasonable efforts and still risked derailing the case schedule. *See Gbarabe*, 2017 WL 956628, at *18 (rejecting expert substitution that would require party to review expert's report, take expert's deposition, serve rebuttal report, file a *Daubert* motion, and file supplemental briefing). NSO's request to extend the case schedule is especially unpersuasive given that they had previously requested, and received, a six-month extension of the trial date, and still failed to comply with numerous Court orders. *See* Dkt. No. 405-2 at 9–15; *see also Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 2022 WL 19975413, at *1 (N.D. Cal. Sept. 21, 2022) (refusing to further modify case schedule to accommodate party's new expert where party had "previously received a generous extension of time to work with their substitute expert"); *Gbarabe*, 2017 WL

956628, at *17 (finding that party seeking to substitute expert did not show good cause to amend the scheduling order where "plaintiff has been given numerous extensions of the class certification deadlines in this case.").[3]

### B. The Prejudice to Plaintiffs Is Compounded Because Mr. Minkler's Opinions Are Irrelevant and Would Be Duplicative of NSO's Other Expert Witness

Plaintiffs' prejudice of having to disrupt the case schedule to permit Mr. Minkler's substitution would be compounded by the fact that Mr. Minkler's proposed testimony is irrelevant to the damages issues that remain in this case and, in any case, duplicative of another NSO expert.

Although NSO's motion is careful not to reveal the subject matter of Mr. Minkler's testimony, Mr. Minkler's report is about, in the abstract, the purported benefits to law enforcement if it could use a tool like Pegasus. (*See, e.g.*, Cora Decl., Ex. A (Minkler Report) ¶ 40 ("Based on my experience, federal law enforcement *could* lawfully employ Pegasus or similar software capabilities in the United States within [Title III and FISA] parameters." (emphasis added).) His opinions are not based on any firsthand experience with the use of Pegasus by NSO's customers or himself, but rather on his 26 years as a prosecutor in Indianapolis. *See id.* Mr. Minkler's proffered testimony was irrelevant to the merits issues that the Court has already adjudicated and likewise irrelevant to the amount of damages that NSO owes Plaintiffs based on the Court's finding of liability.

Even if the Court were to disagree with Plaintiffs and want to permit expert testimony on the theoretical "law enforcement" purpose of Pegasus, then NSO has another expert (i.e., Col. Ty M. Shepard) who is proffering that same testimony, just based on his military background. For instance, Mr. Minkler's proposed testimony would discuss "the lawful interception and surveillance of communications by federal law enforcement officers," *Id.* at ¶ 1, while Col. Shepard's report asserts that "[g]overnment agencies use surveillance tools like Pegasus," Dkt. No. 419-6 ¶ 27. Mr. Minkler would offer opinions regarding "the unique investigatory challenges presented to state and federal law enforcement by end-to-end encryption and endpoint encryption," Cora Decl., Ex. A (Minkler

---

[3] If the Court grants NSO's motion to substitute, it should nonetheless order NSO to pay for all fees and costs associated with rebutting the substitute report, and deposing Mr. Minkler after the agreed-upon close of expert discovery. *Fujifilm*, 2014 WL 8094582, at *2.

7

Pls.' Opp. to Defs.' Mot. to Substitute Expert | Case No. 4:19-cv-07123-PJH

Report) ¶ 1, again duplicating Col. Shepard's report, which states that "[v]arious threat actors . . . routinely use encrypted messaging applications, including WhatsApp, to conceal their activities from detection by military, national security, and law-enforcement agencies," Dkt. No. 419-6 ¶ 23. Mr. Minkler's final proffered opinion, about "the benefits of tools such as Pegasus in law enforcement and national security operations," Cora Decl., Ex. A (Minkler Report) ¶ 1, parrots Col. Shepard's opinion that "tools like Pegasus provide intelligence insight to the U.S. and allied national security agencies," Dkt. No. 419-6 ¶ 27. Because Mr. Minkler's expert report is redundant to Col. Shepard's, NSO would not suffer prejudice if it is limited to just one expert on this topic.

## CONCLUSION

For the reasons stated above, the Court should deny NSO's motion to substitute an expert.

| | | |
|---|---|---|
| 1 | Dated:  December 23, 2024 | Respectfully Submitted, |
| 2 | | |
| 3 | | DAVIS POLK & WARDWELL LLP |
| 4 | | By:  /s/ Antonio J. Perez-Marques |
| 5 | |      Greg D. Andres |
|   | |      Antonio J. Perez-Marques |
| 6 | |      Gina Cora |
| 7 | |      Craig T. Cagney |
|   | |      Luca Marzorati |
| 8 | |        (admitted *pro hac vice*) |
|   | |      DAVIS POLK & WARDWELL LLP |
| 9 | |      450 Lexington Avenue |
|   | |      New York, New York 10017 |
| 10 | |      Telephone: (212) 450-4000 |
|    | |      Facsimile: (212) 701-5800 |
| 11 | |      Email:  greg.andres@davispolk.com |
| 12 | |                antonio.perez@davispolk.com |
|    | |                gina.cora@davispolk.com |
| 13 | |                craig.cagney@davispolk.com |
|    | |                luca.marzorati@davispolk.com |
| 14 | | |
| 15 | |      Micah G. Block (SBN 270712) |
|    | |      DAVIS POLK & WARDWELL LLP |
| 16 | |      900 Middlefield Road, Suite 200 |
|    | |      Redwood City, CA 94063 |
| 17 | |      Telephone: (650) 752-2000 |
|    | |      Facsimile:  (650) 752-2111 |
| 18 | |      Email: micah.block@davispolk.com |
| 19 | | *Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.* |