# KING & SPALDING

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, California 90071 USA

December 23, 2024

The Honorable Phyllis J. Hamilton, Senior U.S. District Judge
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 3
1301 Clay Street, Oakland, CA 94612

Re:     Discovery Matter in *WhatsApp, Inc. et al. v. NSO Group Techs., Ltd. et al.*, 4:19-cv-7123

Dear Judge Hamilton:

Pursuant to the Court's Standing Order, the Parties hereby submit this joint letter brief regarding the deposition of Plaintiffs' expert witness David Youssef.

### I.     NSO's Position – NSO Is Entitled to Sanctions and Additional Time to Depose Plaintiffs' Expert David Youssef Because of His Deposition Misconduct.

The Court should reopen Mr. Youssef's deposition and provide NSO additional time to question Mr. Youssef. The Court should also compel Mr. Youssef to provide certain materials he is required to provide under Rule 26(a)(2)(B) that have not been provided to NSO.

Contrary to Plaintiffs' argument below, the Court's summary judgment order does not make this motion moot because Mr. Youssef is likely to testify about remedy issues. Mr. Youssef's is expected to testify about at least: (i) Plaintiffs' claims for compensatory damages (the alleged compromising of WhatsApp servers that Plaintiffs seek damages for remediating); (ii) punitive damages (that NSO's conduct constitutes fraud); and (iii) injunctive relief (that enjoining the installation of Pegasus by sending messages across WhatsApp's servers is not against the public interest). Defendants have asked Plaintiffs by email whether they will forego calling Mr. Youssef as a witness (which would in fact moot this motion), and Plaintiffs have refused to respond. Because Plaintiffs will not meet and confer, and because December 23, 2024 is the deadline for filing this motion, Defendants have no choice but to file it, and the motion is not premature.

Under Rule 30, "[t]he court ***must*** allow additional time … if needed to fairly examine the deponent or if the deponent … impedes or delays the examination." Fed. R. Civ. P. 30(d)(1) (emphasis added). In addition, under Rule 37(a), "[a] party seeking discovery may move for an order compelling an answer" when "a deponent fails to answer a question." Fed. R. Civ. P. 37(a)(3)(B)(i). For purposes of this rule, "an evasive or incomplete answer must be treated as a failure to answer." *Hernandez v. Barr*, 2019 WL 4543101, at *7 (C.D. Cal. Apr. 12, 2019) (cleaned up) (quoting Fed. R. Civ. P. 37(a)(4)), *aff'd*, 2019 WL 6998774 (C.D. Cal. June 18, 2019).

These rules support reopening Mr. Youssef's deposition because he repeatedly failed to provide straightforward, responsive answers to simple, straightforward questions. Instead, he gave evasive, nonresponsive "filibuster" narratives that delayed the deposition and prevented NSO from discovering information to which it is entitled. He did this throughout his deposition, the transcript of which is attached as **Exhibit A**. NSO provides a few illustrative examples here.

*First*, across six transcript pages, Mr. Youssef refused to answer directly whether he "underst[ood] the FBI was a customer of NSO" or whether he was "provided end user license agreements signed by the [FBI]." (Tr. at 238:3-243:6.) These questions are not "technically incomprehensible" as Plaintiffs claim below, and they are relevant because they undermine his testimony that the FBI would never "collect[] information" with technology like Pegasus. (Tr. at 237:5-16.). This is relevant to punitive damages—whether NSO acted in reckless disregard of WhatsApp's rights—as well as the propriety of injunctive relief—whether an injunction would hurt the public interest. *Second*, across five pages, he refused to answer directly whether "Pegasus messages cause[d] the WhatsApp servers to execute code that those servers would not normally execute." (Tr. at 332:23-337:13.) These questions bear directly on whether actions taken by Plaintiffs' engineers for which compensatory damages are being claimed were actually caused by NSO. They also bear directly on Mr. Youssef's opinion that NSO's conduct was "fraudulent," which NSO understands to be a predicate for WhatsApp's punitive damages claim. *Third*, across ten pages, he refused to answer directly whether his reports "refer to 403 errors," he "reviewed the 403 error messages," or he knew "the content of the [403] message." (Tr. at 288:14-297:6.) These questions are relevant to his opinion that NSO accessed WhatsApp servers without authorization solely because it received a contentless "403" message in 2018, which Plaintiffs intend to use to support their claims of fraud and punitive damages.

In all these instances (plus many others), Mr. Youssef provided nonresponsive boilerplate narratives rather than direct answers to simple questions. Plaintiffs' counsel exacerbated this obstruction by making baseless "asked and answered" objections and improperly instructing Mr. Youssef that he need not answer yes-or-no questions with yes-or-no answers.[1] Courts routinely reopen depositions in response to similar misconduct. For example, the court in *Carter v. Telecare Corp.*, 2019 WL 6703392, at *6 (C.D. Cal. Aug. 16, 2019) reopened a deposition when the witness, like Mr. Youssef, "refused to answer simple, straightforward questions, necessitating that certain questions be asked numerous times." Like Mr. Youssef, the witness frequently "seemed to respond to a different question than the one asked, became argumentative in response to simple questions, and refused to answer yes or no to a yes or no question and made otherwise nonresponsive remarks." *Id.* at *8 (cleaned up). The court in *Newmark* likewise reopened a deposition when the

---

[1] *See Glaukos Corp. v. Ivantis, Inc.*, 2020 WL 1625836, at *8 (C.D. Cal. Mar. 2, 2020) (sanctioning such objections); *Newmark Grp. v. Avison Young (Canada) Inc.*, 2022 WL 1157476, at *4-6 (D. Nev. Apr. 19, 2022) (same); *Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2017 WL 10574264, at *8 (June 29, 2017), *aff'd in relevant part*, 2017 WL 10562691 (C.D. Cal. Aug. 7, 2017) (same).

witness, like Mr. Youssef, "repeatedly failed to answer questions" by giving "lengthy non-responsive answers." 2022 WL 1157476, at *1.

Courts have reopened depositions when witnesses fail to answer yes-or-no questions directly, just like Mr. Youssef did.[2] When asked a yes-or-no question, a "deponent ***must*** answer 'yes' or 'no.'" *Natural-Immunogenics*, 2017 WL 10562691, at *5 (emphasis in original). "A narrative is not an appropriate response to a 'yes or no' question," and "[w]hen a question asks for specific information, the deponent [must] answer the question in a concise responsive manner." *Calderon*, 2007 WL 735773, at *2.[3] Mr. Youssef repeatedly violated that rule by "provid[ing] lengthy unresponsive statements" in response to "questions that clearly called for 'yes, no, or I do not know' or 'true or false' answers." *Petricevic*, 2021 WL 11716432, at *4. Those improper "narrative responses to 'yes' or 'no' questions" required NSO "to ask a number of additional questions in [its] reasonable quest to obtain an unambiguous answer to the questions." *Miller*, 205 F.R.D. at 541. But NSO's "simple questions" often were "***never*** answered," despite numerous attempts across multiple transcript pages. *Newmark*, 2022 WL 1157476, at *3-5 (emphasis added).

Mr. Youssef has been identified as an expert in the technical matters underlying Plaintiffs' claims. If his opinions are reliable, "[t]here is no reason that [he] should be evasively answering these basic questions about his methodology." *Realtime Data*, 2017 WL 11574028, at *8. His refusal to answer straightforward questions in a straightforward way exposes the baselessness of his opinions—and, accordingly, of Plaintiffs' CFAA claims—and "prevents a meaningful cross-examination of the basis of [his] opinions." *Id.* For example, Mr. Youssef's obstruction prevented NSO from receiving clear answers to the questions he evaded and from being able to question him about his opinions on, among many other topics, (1) whether Pegasus altered, damaged, or deleted data from WhatsApp servers, (2) personal jurisdiction, (3) NSO's use of WhatsApp relay servers, (4) the supposed "exploits" and "access credentials" Mr. Youssef discusses in his report, and (5) Mr. Youssef's definitions of "reverse engineering" and "lawful intercept." (Tr. at 353:19-357:8.) For these reasons, NSO is entitled to reopen Mr. Youssef's deposition and receive appropriate answers to questions he evaded and prevented NSO from asking.

The Court should also compel Mr. Youssef to provide the following, all of which is required under Rule 26(a)(2)(B) but which he admitted in his deposition have not been provided:

---

[2] *E.g.*, *Carter*, 2019 WL 6703392, at *8; *Natural-Immunogenics*, 2017 WL 10562691, at *6; *Petricevic v. Shin*, 2021 WL 11716432, at *4 (D. Haw. Mar. 9, 2021); *Realtime Data, LLC v. Oracle Am.*, 2017 WL 11574028, at *3, 7-8 (E.D. Tex. Mar. 30, 2017); *Calderon v. Symeon*, 2007 WL 735773, at *2 (D. Conn. Feb. 2, 2007); *Miller v. Waseca Med. Ctr.*, 205 F.R.D. 537, 541 (D. Minn. 2002); *see also Van Osten v. Home Depot*, 2020 WL 6449204, at *3 (S.D. Cal. Nov. 3, 2020) (extending deposition "delayed by non-responsive answers"); *Doe I v. Exxon Mobil Corp.*, 539 F. Supp. 4d 59, 73-75 (D.D.C. 2021) (reopening deposition where witness "provided nonresponsive and evasive answers").

[3] If a deponent's counsel believes a yes-or-no question is "misleading," he "may object to the form of the question" and "ask the deponent on cross-examination for a more complete answer." *Natural-Immunogenics*, 2017 WL 10562691, at *5. But "[d]irecting" the deponent "not to answer 'yes' or 'no' and instead directing him to answer 'yes' or 'no' questions fully," as Plaintiffs' counsel did here, "is improper." *Natural-Immunogenics*, 2017 WL 10574264, at *8 (C.D. Cal. June 29, 2017).

(i) all publications Mr. Youssef authored in the previous 10 years (Tr. 124:22-127:15); (ii) a list of all cases in which, during the previous 4 years, Mr. Youssef testified as an expert at trial or by deposition (Tr. 104:25-107:10); and (iii) a statement of the compensation paid for his testimony in the case (Tr. 55:3-73:1).[4]  Plaintiffs admit below they have not complied with these requirements; the Court should not rely on Plaintiffs' promise to supplement, and should grant the motion and order them to do so.

In response to Plaintiffs' footnoted claim that Defendants failed to meet and confer, the parties met and conferred about Mr. Youssef's nonresponsiveness, and Defendants' need for more deposition time, both throughout the deposition and immediately after.  *See, e.g.,* Exhibit A at 329.

Finally, NSO is entitled to monetary sanctions under Rule 37(a), which provides that, when a motion to compel deposition answers "is granted," a "court ***must*** … require the party or deponent whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. R. 37(a)(5)(A) (emphasis added).

## II. Plaintiffs' Position

On December 10, 2024, NSO deposed David Youssef, Plaintiffs' chief technical witness, for over seven and a half hours.  During his deposition, Mr. Youssef complied with his Rule 30 obligations and responded truthfully and accurately to each of NSO's questions.  Contrary to NSO's position, Plaintiffs' counsel did not prohibit Mr. Youssef from answering any questions, nor did Plaintiffs' counsel interpose any inappropriate commentary.  Unsatisfied with its ability to obtain trial-friendly soundbites on complex technical issues, NSO now needlessly burdens the Court with this dispute and seeks to force Plaintiffs to incur the expense and time associated with reopening Mr. Youssef's deposition.  Because Mr. Youssef complied with all of his obligations under Rule 30, NSO's request should be denied.  Moreover, now that NSO has been found liable on all of Plaintiffs' claims, additional discovery on technical issues would be irrelevant and unnecessary.  The Court should therefore deny NSO's motion for additional time.

### A. NSO's Motion Is Likely Moot and Certainly Premature

The Court's December 20, 2024 decision granting Plaintiffs' motions for summary judgment and evidentiary sanctions, *see* Dkt. No. 494, should moot NSO's request to obtain additional deposition testimony from Mr. Youssef.  The Court's ruling states that "a trial will proceed only on the issue of damages." *Id*. at 16.  Mr. Youssef's report is silent on the amount of time that Plaintiffs' engineers spent remediating NSO's attack, which forms the basis for compensatory damages.  More importantly, NSO's basis for seeking additional deposition time relates to issues that the Court has already adjudicated, such as whether NSO's spyware exceeded

---

[4] Defendants' experts have done more than merely provide their hourly rate, as Plaintiff claims below.  Defendants' experts have responded to questions in deposition asking the total amount of compensation they or their firms have received in this matter.  Mr. Youssef refused to do the same.

authorized access or whether NSO reverse-engineered WhatsApp in violation of WhatsApp's Terms of Service.

Moreover, the Court's order directed the parties to "meet and confer to determine if any expert-related motions are mooted by" the December 20, 2024 decision. *Id.* The parties have not yet done so.[5]

NSO asserts that Plaintiffs have refused to forgo calling Mr. Youssef, absent any conversation or insight into NSO's position. Of course, Plaintiffs cannot agree to forgo calling Mr. Youssef under any circumstance, including, for example, if NSO is permitted to call its technical expert. Plaintiffs believe it is inappropriate for NSO to be raising this dispute to the Court at this time but have provided their portion of this joint letter because if Plaintiffs did not provide it, NSO would file its letter anyway, just without any response from Plaintiffs. Plaintiffs reserve all rights regarding the appropriate scope of the upcoming damages-only trial.[6]

### B. NSO Lacks Good Cause To Extend Mr. Youssef's Deposition

Federal Rule of Civil Procedure 30(d)(1) limits a deposition to one day of seven hours absent agreement between the parties or a court order. Mr. Youssef has already sat for a seven-and-a-half-hour deposition. "The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order." Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment; *see Lin v. Solta Med., Inc.*, 2024 WL 2845531, at *1 (N.D. Cal. June 5, 2024).

*First*, Mr. Youssef answered every question that NSO's counsel asked—and there is no allegation that Mr. Youssef was instructed not to answer a single question. *Cf.* Dkt. No. 405-2 at 14–15 (describing NSO counsel's instructions to NSO's witnesses not to answer deposition questions based on NSO's relevance objections). This fact alone distinguishes many of the cases

---

[5] There is no basis for NSO to assert that Plaintiffs "will not meet and confer" regarding the scope of the damages-only trial. The Court issued its ruling on Friday, December 20, 2024. On Sunday, December 22, 2024, Plaintiffs' counsel emailed NSO's counsel regarding "the parties' need to meet and confer regarding the scope of damages trial before we should burden the Court with any further briefing on expert-discovery issues." NSO's counsel responded by stating that they "would like to confer about the remedies being sought by Plaintiffs at the earliest possible time," but did not propose a time. As of the filing of this joint letter on Monday, December 23, 2024, the parties have not yet met-and-conferred, but there is no reason for NSO to assert that Plaintiffs "will not meet and confer."

[6] NSO's request should separately be denied because NSO failed to meet-and-confer, or otherwise raise this issue, with Plaintiffs' counsel before providing their portion of the joint letter. *See* Fed. R. Civ. P. 37(a)(1) (requiring motion to compel to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action"); *see also* N.D. Cal. Civ. R. 37-1(a). There is no basis for NSO's statement the parties conferred "immediately after" the deposition.

Page 6

that NSO relies upon. *See Carter v. Telecare Corp.*, 2019 WL 6703392, at *6 (C.D. Cal. Aug. 16, 2019) (finding that deponents' counsel's "improper coaching and instructions not to answer legitimate questions" caused deponent to "follow[] counsel's lead and deliberately refuse[] to answer simple, straightforward questions").

*Second*, Mr. Youssef swore an oath to provide truthful testimony—not testimony that would be most helpful to NSO's case. For instance, in the hopes of bolstering their now-rejected argument that NSO did not exceed authorized access, NSO's counsel repeatedly asked Mr. Youssef whether NSO's Pegasus went to "parts" of WhatsApp's servers that ordinary WhatsApp messaging traffic did not transit. *See, e.g.*, Tr. at 328:2–5, 330:4–6, 331:11–13. Relying on his extensive technical experience, Mr. Youssef continuously answered that the word "parts" lacks any technical meaning, and therefore made it impossible to answer the question. *Id*. at 330:7–15, 331:16–19, 332:14–16. Mr. Youssef nonetheless proceeded to describe the way that NSO's Pegasus interacted with WhatsApp servers. *Id*. at 328:8–341:5. NSO should not be rewarded with additional deposition time for repeatedly asking a poorly worded and technically imprecise question.[7]

In fact, the portions of the transcript that NSO cites illustrate Mr. Youssef's attempts to comply with his obligations. For instance, in response to NSO's questions about whether Mr. Youssef was aware that the FBI was at one point a customer of NSO, Mr. Youssef responded repeatedly that NSO did not provide a customer list and that an opinion about the identity of NSO's customers was outside the scope of his expert report. *See, e.g.*, Tr. at 239:11–14, 243:3–6. When asked whether NSO executed code on Plaintiffs' servers, Mr. Youssef repeatedly responded by explaining the process by which NSO's code was used in the May 2019 attacks. Tr. at 335:9–14. And the transcript directly contradicts the argument that Mr. Youssef refused to answer questions about the 403 errors. *See* Tr. at 293:7–13 ("[F]ollowing changes that WhatsApp made to their server environment to essentially, cut off pre-Eden exploit steps that NSO was engaging in led to NSO receiving a 403 error, which meant that their malware was forbidden from accessing those same resources on WhatsApp servers that they were previously accessing.").

*Third*, to the extent that NSO's counsel did not complete his examination within seven and a half hours, that is a product of his own time-wasting. NSO's counsel repeatedly made extensive commentary on the record threatening Mr. Youssef with additional deposition time if he did not provide alternative answers to NSO's counsel's questions. *See, e.g.*, Tr. at 102:8–10 (speech

---

[7] NSO cites no case law forcing an expert witness to answer "yes or no" to technically incomprehensible questions. In *Natural-Immunogenics Corp. v. Newport Trial Group*, a special master merely ordered the lay witness to answer yes-or-no questions in light of, among other things, "lengthy, argumentative and suggestive objection[s]" by counsel at the previous deposition. 2017 WL 10574264, at *8 (C.D. Cal. June 29, 2017). And in *Newmark Group v. Avison Young (Canada) Inc.*, the Rule 30(b)(6) deponent was clearly unprepared and read "nonresponsive speeches" from a prepared outline. 2022 WL 1157476, at *3 (D. Nev. Apr. 19, 2022). By contrast, Mr. Youssef's answers reflected the specific, detailed analysis he performed in his technical report.

ending with "We're not going to waste all the time right now with this game playing"); Tr. at 184:13–15 (speech ending with "I'm just telling you what's going to happen if we don't start having actual answers to my questions."); Tr. at 271:22–24 (speech ending with "Otherwise, we're not going to be leaving and we're going to hold this deposition open until all my questions are answered."). Similarly, NSO's counsel repeatedly asked the same questions—sometimes verbatim. *See, e.g.*, Tr. at 183:24–188:9 (asking whether WhatsApp servers executed any code written by NSO at least *seven* consecutive times). Mr. Youssef's deposition could have certainly been completed in under seven and a half hours had NSO's counsel not repeated questions in the hope of getting Mr. Youssef to change his answer. *See* N.D. Cal. Guidelines for Professional Conduct § 9 ("A lawyer should avoid repetitive or argumentative questions or those asked solely for purposes of harassment.").

### C. Plaintiffs Have Complied With Their Obligations Under Rule 26(a)(2)(B)

NSO's requests to compel Mr. Youssef to provide additional disclosures under Rule 26(a)(2)(B) are also baseless. Mr. Youssef's report lists the cases for which he testified at trial or by deposition during the previous 4 years and a statement of his compensation.[8] These disclosures comply with Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(B).[9]

Based on NSO's requests, Plaintiffs will provide NSO with a list of publicly available writings *published by his employer*, FTI Consulting, that Mr. Youssef wrote *on behalf of his employer*. Plaintiffs will also supplement the previous disclosure with the names of cases in which Mr. Youssef testified as an expert since serving his expert report in this matter.

For the reasons stated above, NSO's requested relief should be denied.

Sincerely,

Aaron Craig, Counsel for Defendants

Craig Cagney, Counsel for Plaintiffs

---

[8] Like NSO's experts, Mr. Youssef included his hourly rate in his report. Courts have held that an hourly rate has complied with the disclosure requirement. *See, e.g.*, *Monster Energy Co. v. Vital Pharms., Inc.*, 2022 WL 17218077, at *27 (C.D. Cal. Aug. 2, 2022).

[9] Mr. Youssef did not "refuse" to answer questions about the total amount of compensation he or his firms have received in this matter: he said that he did not "have that information as I sit here today." Tr. at 55:25–56.1