1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
     *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
     *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone:    (213) 443-4355
5  Facsimile:    (213) 443-4310

6  Attorneys for Defendants
   NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  WHATSAPP INC., a Delaware corporation,        Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
13  corporation,                                   **REPLY IN SUPPORT OF DEFENDANTS'
                                                    MOTION TO SUBSTITUTE EXPERT**
14                    Plaintiffs,
                                                    Date:  January 16, 2025
15           v.                                     Time: 1:30 p.m.
                                                    Place: Courtroom 3, Ronald V. Dellums
16  NSO GROUP TECHNOLOGIES LIMITED                         Federal Building & U.S. Courthouse,
    and Q CYBER TECHNOLOGIES LIMITED,                      1301 Clay Street, Oakland, California
17
18                    Defendants.                   Action Filed: 10/29/2019

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2

I.    INTRODUCTION ........................................................................................ 1

II.   ADDITIONAL FACTS FOLLOWING THE FILING OF THE MOTION ....................... 3

III.  ARGUMENT .............................................................................................. 3

      A.  The Parties Agree that the Standard for Granting the Motion is Good Cause, which is
          Measured by Diligence of the Moving Party, and not the Substance of the Substitute
          Expert's Opinions ............................................................................... 3

      B.  Every Case Cited by Both Parties That Provides Information About the Diligence of
          the Moving Party Supports Granting the Motion............................................ 4

      C.  There is No Evidence that the Substitution Would Prejudice Plaintiffs, and the Trial
          Date Need Not Be Moved ...................................................................... 9

      D.  The Fact the Motion Would Necessitate Amending the Case Schedule is Not Grounds
          for Denying the Motion ....................................................................... 10

      E.  Defendants Should Not be Required to Pay Any of Plaintiffs' Costs......................... 10

      F.  Plaintiffs are not Entitled to a Rebuttal Report .......................................... 10

      G.  Mr. Minkler's Testimony is Neither Irrelevant Nor Duplicative................................ 11

IV.   CONCLUSION ........................................................................................ 13

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Estate of Clifford v. Placer Cty.*,
  2018 WL 746475 (E.D. Cal. Feb. 6, 2018) .............................................................. 5

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) .......................................................................................... 12

*Fidelity Nat. Fin., Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*,
  308 F.R.D. 649 (S.D. Cal. 2016) .................................................................. 1, 3, 6

*Ford v. Munks*,
  2013 WL 6236766 (N.D. Cal. Dec. 2, 2013) .......................................................... 8

*Fujifilm Corp. v. Motorola Mobility LLC*,
  2014 WL 8094582 (N.D. Cal. Nov. 19, 2024) ............................................... 3, 6, 11

*Gbarabe v. Chevron Corp.*,
  *2017 WL 956628 (N.D. Cal. Mar. 13, 2017)* .......................................................... 7

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021) ................................................................................ 11

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) .............................................................................. 3, 8

*Jones v. Nat'l R.R. Passenger Corp.*,
  2022 WL 689000 (N.D. Cal. Feb. 23, 2022) .................................................... 3, 5, 6

*Kaepplinger v. Michelotti*,
  2021 WL 2633312 (N.D. Ill. June 25, 2021) ...................................................... 5, 9

*Landes v. Skil Power Tools*,
  2013 WL 6859837 (E.D. Cal. Dec. 13, 2013) ..................................................... 6, 7

*Neaman v. United States*,
  2018 WL 797419 (D. Nev. Feb. 7, 2018) ............................................................... 6

*In re Northrop Grumman Corp. ERISA Litig.*,
  2016 WL 6826171 (C.D. Cal. Apr. 7, 2016) ........................................................... 4

*Resolute Forest Prods, Inc. v. Greenpeace Int'l*,
  2022 WL 19975413 (N.D. Cal. Sep. 21, 2022) ....................................................... 8

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
  No. CV1806825GWRAOX, 2020 WL 8125550 (C.D. Cal. July 27, 2020) ......................... 13

ii

1    **I.    INTRODUCTION**

2       The parties are in agreement about the legal standard for granting a motion to substitute an

3    expert—good cause, primarily in the form of the moving party's reasonable diligence.  The parties

4    are also in agreement about the body of case law in this Circuit applicable to this motion.  Because

5    courts almost never deny motions to substitute an expert who has withdrawn of their own volition

6    and through no fault of the moving party (Defendants have located only one such case, *Fidelity*

7    *Nat. Fin., Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*, 308 F.R.D. 649 (S.D. Cal. 2016), the

8    extraordinary facts of which make it easily distinguishable), the Court should grant Defendants'

9    motion.

10       Where the parties disagree is how to evaluate the moving party's diligence.  Plaintiffs

11   contend that "courts measure diligence by evaluating how long it took a party to provide notice that

12   their expert withdrew."  But no court has ever held that diligence requires giving notice some fixed

13   number of days after learning of the expert's withdrawal—not as a rule, or even a guiding

14   principle—let alone "immediately."  Plaintiffs have invented this supposed rule by taking sentence

15   fragments out of context from two cases, both of which actually support granting this Motion.  The

16   cases cited by the parties shows that courts measure diligence by evaluating in its totality the

17   conduct of the party seeking to replace its expert.  And, even if there were a maximum number of

18   days beyond which a party would be deemed "not diligent," that number would be much greater

19   than the twenty days at issue here.  This is demonstrated by case after case granting substitutions

20   where such notice came after a period of months, and even years.

21       It is undisputed that Defendants learned of Mr. Town's need to withdraw on November 7,

22   immediately began an urgent search for a replacement the following day.  Defendants then located

23   Mr. Minkler, reached agreement to engage him as an expert, and notified Plaintiffs, all within

24   twenty days.  Under every case cited by both parties, this record constitutes ample diligence.

25       Plaintiffs create a false dichotomy by casting this dispute as whether "diligence" requires

26   giving notice the day (hour? minute?) a party receives notice of their expert's withdrawal, versus

27   giving notice after a substitute expert is located.  Either way, based on the body of cases both parties

28   agree apply to this dispute, Defendants acted diligently.  Plaintiffs position is wrong for the

DEFENDANTS' REPLY IN SUPPORT OF                                    Case No. 4:19-cv-07123-PJH
MOTION TO SUBSTITUTE EXPERT

1   additional reason that giving notice of an expert's withdrawal, before a party has obtained a

2   substitute, would be meaningless.  A motion seeking leave to substitute an expert will never be

3   filed until a party has identified and reached agreement with a replacement.  Put another way, a

4   dispute requiring a motion for leave to substitute an expert would never be ripe until a replacement

5   expert is located, and therefore giving notice merely that the first expert has withdrawn is

6   meaningless in these circumstances.

7          Moreover, Plaintiffs have submitted no declaration or other evidence that they have incurred

8   any costs or other form of prejudice related to the deposition of Jay Town at any time, and certainly

9   not between November 7, 2024 (when Defendants first learned of Mr. Town's withdrawal) and

10  November 27, 2024 (when Defendants reached agreement with Mr. Minkler and notified

11  Plaintiffs).  The one declaration submitted by Plaintiffs makes no mention of any prejudice to

12  Plaintiffs whatsoever – nor could it, given that Mr. Town's deposition was not scheduled to occur

13  for another two weeks and that any advance preparations would almost certainly be applicable to

14  Mr. Minkler's deposition as well.

15         Plaintiffs' other arguments about the subject matter of Mr. Minkler's opinion have no

16  bearing on whether a substitution should be allowed.  The Court should not allow Plaintiffs to file

17  a "mini-*Daubert*" motion or motion in limine in an opposition brief, which would unfairly limit

18  Defendants' ability to oppose such a motion based on the reduced page limits and time periods the

19  local rules provide for reply briefing.  Moreover, Plaintiffs are wrong that Mr. Minkler's opinions

20  are irrelevant or duplicative of those of Col. Shepard.  Mr. Minkler's opinions relate to how the

21  ubiquity of criminals' use of end-to-end encrypted communications technologies, without access

22  by law enforcement to technologies that can intercept those communications, has upset a delicate

23  balance that has existed in the United States for generations; and to how technologies like Pegasus

24  restore that balance for American investigatory agencies and prosecutors.  Col. Shepard's opinions

25  pertain to the use of surveillance technology in military and intelligence operations around the

26  world to fight terrorism, governments' compliance with terms of service of technology providers,

27  and safeguards imposed on the use and operation of Pegasus.  Both Mr. Minkler's testimony and

28  Col. Shepard's testimony are relevant to punitive damages and to the equitable remedies of

1  disgorgement and injunctive relief sought by Plaintiffs.

2  **II.      ADDITIONAL FACTS FOLLOWING THE FILING OF THE MOTION**

3        On December 18, 2024, Defendants served Mr. Minkler's expert report. (Dkt. No. 496-1).

4  The report contains substantially the same opinions as those given by Mr. Town in his expert report.

5  (Dkt. 480-2). Plaintiffs have identified no meaningful differences between the two sets of opinions.

6  **III.     ARGUMENT**

7        **A.      The Parties Agree that the Standard for Granting the Motion is Good Cause,**

8                 **which is Measured by Diligence of the Moving Party, and not the Substance**

9                 **of the Substitute Expert's Opinions**

10       When an expert becomes available through no fault of the moving party, a motion to allow

11  a substitution shall be granted for good cause, which focuses primarily on the moving party's

12  reasonable diligence. *Jones v. Nat'l R.R. Passenger Corp.*, 2022 WL 689000, at *2 (N.D. Cal. Feb.

13  23, 2022); *Fujifilm Corp. v. Motorola Mobility LLC*, 2014 WL 8094582, at *2 (N.D. Cal. Nov. 19,

14  2024). "The good cause standard primarily considers the diligence of the party seeking the

15  amendment. The district court may modify the pretrial schedule if it cannot reasonably be met

16  despite the diligence of the party seeking the extension." *Fidelity Nat. Financial, Inc. v. National*

17  *Union Fire Ins. Co.*, 308 F.R.D. 649, 652 (S.D. Cal. 2015) (quoting *Johnson v. Mammoth*

18  *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

19       Courts almost never deny a motion to substitute where the expert's withdrawal is of the

20  expert's own volition and the party is not at fault. Here, because Mr. Town withdrew as expert on

21  November 7, 2024, more than two months after the August 30, 2024, deadline for initial expert

22  disclosures, no amount of diligence would have allowed Defendants to have disclosed Mr. Minkler

23  before the Court's deadline. Because the schedule could not reasonably be met despite Defendants'

24  diligence, the Court may modify it. *Fidelity Nat. Financial, Inc.* 308 F.R.D. at 652.

25       Courts do not analyze at the motion to substitute stage whether the replacement expert's

26  testimony would be "irrelevant" or "duplicative," and Plaintiffs arguments about the substance of

27  Mr. Minkler's opinions are improper. Plaintiffs can properly make those arguments by filing

28  motions to exclude or limit Mr. Minkler's testimony, which would give Defendants the resources

provided by this Court's local rules (fourteen days, 25 pages) to respond to them. Defendants' very limited addressing of these subjects below is *not* a full statement of their arguments as to why Mr. Minkler's testimony properly relates to the remedies Plaintiffs seek, including the public interest factor for injunctive relief and the propriety of punitive damages, unjust enrichment, and disgorgement.

**B.    Every Case Cited by Both Parties That Provides Information About the Diligence of the Moving Party Supports Granting the Motion**

All the cases cited that provide chronological information about the diligence of the moving party show that NSO acted diligently and support granting the Motion. While Plaintiffs interpret "diligence" as synonymous with "immediate notice to the non-moving party," no case has so held, and such a holding would be impossible for future litigants to meet or future courts to apply.

The parties' cases demonstrate that courts freely allow a party to substitute an expert whose withdrawal was not the fault of the moving party, provided the moving party has acted with reasonable diligence—not "immediacy."  It also shows that locating a substitute expert and notifying the non-moving party within twenty days constitutes reasonable diligence by any measure.  Again, Plaintiffs' contention that a party learning of their expert's withdrawal must immediately notify the non-moving party or else forfeit their right to seek leave of court to appoint a substitute expert is without any precedent.

Cases Cited By Defendants:

***In re Northrop Grumman Corp. ERISA Litig.*, 2016 WL 6826171 (C.D. Cal. Apr. 7, 2016)**:  The plaintiffs' expert died on September 25, 2011, after the filing of summary judgment motions and motions to strike experts.  For reasons not entirely clear, the court did not decide those dispositive motions until November 24, 2015.  The plaintiffs waited another full month, and then disclosed a replacement expert to defendants on December 24, 2015, and filed a motion to substitute on January 20, 2016.  The court granted the motion because the "plaintiffs have acted diligently in seeking this substitution and their four-year delay has not prejudiced [d]efendants."  The Court also held that: "reopening discovery to allow for the single deposition of a replacement expert will not likely upend the parties' trial preparations."

1    ***Kaepplinger v. Michelotti***, **2021 WL 2633312 (N.D. Ill. June 25, 2021):** Plaintiff's expert

2    stopped responding to inquiries from plaintiff's counsel in September 2019. Plaintiff disclosed the

3    replacement expert on March 8, 2021, and filed a motion to substitute on March 12, 2021. The

4    court found this delay to be reasonably diligent and granted the motion to substitute. *Id.* *2. While

5    the court noted that plaintiff's delay should be treated as shorter than the actual 18-month gap due

6    to various changes in the case schedule, the court also noted that: "by mid-October 2020, Dr.

7    Nagle's non-responsiveness had driven Plaintiffs' counsel to the point of emailing him, 'Please

8    respond. Otherwise, I will have to come visit you either at work or at your home.'" The court

9    found the nearly six-month delay between mid-October 2020 and March 8, 2021, to be reasonably

10   diligent.

11       Importantly, the court rejected the defendant's argument that the plaintiff's counsel was not

12   diligent because he prioritized securing a substitute expert over notifying the defendant's counsel:

13   "The Court also finds reasonable Plaintiffs' counsel's explanation at the motion hearing that he

14   believed securing a substitute expert as quickly as possible was the most efficient way forward."

15   *Id.* at *6. The court should reject Plaintiffs' identical argument here.

16       ***Estate of Clifford v. Placer Cty.***, **2018 WL 746475 (E.D. Cal. Feb. 6, 2018)**: Plaintiff's

17   expert notified plaintiff's counsel in March 2016 of his unwillingness to serve as expert, and

18   counsel retained a new expert and filed a motion to substitute the following month (no precise dates

19   are given). The court further noted that "counsel indicates he knew there were some prior

20   acrimonious exchanges between [the expert] and his client" earlier than March 2016. Nevertheless,

21   the court granted the motion, finding the plaintiff to have been reasonably diligent.

22       ***Jones v. Nat'l R.R. Passenger Corp.***, **2022 WL 689000 (N.D. Cal. Feb. 23, 2022)**: The

23   plaintiff waited until February 7, 2022, to notify the defendant of his intent to substitute two experts,

24   one of whom had passed away and the other of whom notified plaintiff of his unwillingness to serve

25   as an expert. While the opinion does not specifically indicate the date counsel learned that his first

26   expert passed away and his second one withdrew, it references discussions and stipulations by the

27   parties about expert deposition scheduling in December 2021, at least six weeks prior to February

28   7, 2022. The Court easily found that the plaintiff was reasonably diligent, despite an imminent trial

date and the lapse of at least six weeks between counsel learning of his experts' unavailability and notifying Defendants.

Plaintiffs describe *Jones* in a misleading way by omitting key important language in their attempt to imply that reasonable diligence requires immediate notification of opposing counsel.

| Actual Case Language | Plaintiffs' Misleading Citation |
|---|---|
| According to Jones, her counsel began searching for a new expert witness and conferring with Defendants immediately upon learning that Dr. Freeman would no longer adhere to his agreement with her. Courts have found good cause exists to modify a scheduling order in such situations. *Jones*, 2022 WL 689000 at *3. | *See, e.g., Jones v. Nat'l R.R. Passenger Corp.*, 2022 WL 689000, at *3 (N.D. Cal. Feb. 23, 2022) (allowing substitute when counsel "confer[red]" with opposing party immediately upon learning that [expert] would no longer adhere to his agreement with her.") Opp. 5:18-20 (mismatched quotation marks in original). |

By omitting the court's reference to the fact that counsel "immediately" began searching for a new expert witness, and conferring with the defendants, Plaintiffs distort *Jones*' meaning by trying to make it sound dissimilar to Defendants' conduct, when in fact, the chronology above indicates that plaintiffs' counsel knew of the death and withdrawal of his experts *no less than six weeks* before notifying opposing counsel. The facts of *Jones*, and that court's opinion, equally describe what Defendants did here—immediately start searching for an expert witness and conferring with Plaintiffs once a substitute expert has been found. Plaintiffs repeat this deception in misdescribing the case of *Landes v. Skil Power Tools*, 2013 WL 6859837 (E.D. Cal. Dec. 13, 2013), as set forth *infra*.[1]

<u>Additional Cases Cited by Plaintiffs</u>

<u>The cases cited by Plaintiffs also support granting the Motion.</u>

***Fidelity Nat. Fin., Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*, 308 F.R.D. 649**

---

[1] In two additional cases, courts granted motions to substitute without expressly discussing when the moving party first learned that the original expert would withdraw or when the non-moving party was notified. *See generally Fujifilm Corp. v. Motorola Mobility LLC*, 2014 WL 8094582 (N.D. Cal. Nov. 19, 2024); *Neaman v. United States*, 2018 WL 797419 (D. Nev. Feb. 7, 2018).

**(S.D. Cal. 2016)**:  The court denied the defendant's motion to substitute because (a) the defendant waited *nine months* after learning of expert's withdrawal on May 16, 2014, to notify plaintiff of the withdrawal on March 31, 2015; (b) the decision to not notify plaintiff and the court appeared to be a tactical choice to wait until seeing the court's dispositive motion rulings; and (c) the defendant refused the plaintiff's offer to stipulate to a replacement expert whose testimony would be limited to the original expert's opinions and deposition testimony.  None of those rationales are applicable here, where the time period in question is twenty days instead of nine months, there was no tactical choice involved, and Defendants have voluntarily limited the scope of Mr. Minkler's opinion to substantially that of Mr. Town.

*Gbarabe v. Chevron Corp., 2017 WL 956628 (N.D. Cal. Mar. 13, 2017)*:  This is not a case where the expert withdrew voluntarily—the party made the decision to withdraw the expert—and the decision is thus of no persuasive value.  Here, defendant's decision to substitute its expert came after (and because of) a successful *Daubert* challenge to that original expert relating to the expert's alteration and fabrication of data: "the Court finds that defendant's successful *Daubert* challenge to Professor Abowei does not constitute good cause for the proposed substitution."  *Id.* at *18.  That alone distinguishes this case from the situation related to Mr. Town and Mr. Minkler, where the withdrawal was initiated by Mr. Town because of his professional unavailability, not by Defendants.  With respect to the diligence of the moving party, the Court further found plaintiff to have not been diligent because it waited to withdraw its expert on October 15, 2016, while it should have known of the fatal flaws with the expert's report (fabricating data) as early as April 2016—six months before.  Here, Mr. Town's withdrawal was communicated to Plaintiffs within twenty days of counsel's knowledge, and immediately after Defendants engaged Mr. Minkler.

*Landes v. Skil Power Tools, 2013 WL 6859837 (E.D. Cal. Dec. 30, 2013)*:  The court granted the motion to substitute expert.  While the opinion does not provide any chronology of when plaintiff knew about the withdrawal and when it notified the defendant and the court, the opinion states that: "Plaintiff purports to have begun searching for a new expert witness and conferring with Defendants immediately upon learning that Dr. Gass would no longer adhere to his agreement with Plaintiff."  This fairly describes Defendants' conduct in this case, where Defendants

1    began searching for a replacement witness immediately upon receiving notice from Mr. Town, and

2    then immediately notified Plaintiffs once Mr. Minkler agreed to testify for Defendants.  However,

3    Plaintiffs misleadingly omit the "searching for a new expert witness" language from its description

4    of this case.   Plaintiffs instead misdescribe *Landes* as: "allowing substitute when counsel

5    "confer[red] with Defendants immediately upon learning that [expert] would no longer adhere to

6    his agreement with Plaintiff."  Plaintiffs' omission of the fact that counsel immediately started

7    searching for a substitute expert (as here) is extremely misleading.  *Landes* does not say that

8    reasonable diligence requires immediacy, and it further takes into account that the party's process

9    may first involve searching for a replacement witness to see if a suitable one can be located.  *Landes*

10   supports granting the Motion.

11       ***Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992)**:  This case relates

12   to the standard for amending the scheduling order to join an additional defendant and has nothing

13   to do with substituting experts.

14       ***Ford v. Munks*, 2013 WL 6236766 (N.D. Cal. Dec. 2, 2013):** Like *Mammoth Recreations,*

15   this case relates to the standard for amending the scheduling order to join an additional defendant,

16   not to substitute an expert.  Moreover, in *Ford,* the moving party was not diligent.  The plaintiff

17   knew of the additional defendant and his role in causing the plaintiff's injuries from the outset of

18   the matter, but did not seek leave to name the additional defendant until more than five weeks after

19   the deadline for doing so had passed.

20       ***Resolute Forest Prods, Inc. v. Greenpeace Int'l*, 2022 WL 19975413 (N.D. Cal. Sep. 21,**

21   **2022)**:  This opinion does not address motions to substitute experts.  Rather, the plaintiff moved for

22   a second time to continue the deadline for providing expert disclosures, and the court found that

23   the plaintiff had not shown good cause for such an extension.  This is completely unrelated to the

24   facts here.

25                              *        *        *

26       Accordingly, the case law cited by both parties demonstrates that courts rarely ever deny a

27   motion to substitute where the expert's withdrawal is of their own volition and the party is not at

28   fault.  Rather, courts freely allow a party to substitute an expert whose withdrawal was not the

1   party's fault, provided the party acts with reasonable diligence.  The case law also shows that
2   locating a substitute expert and notifying the non-moving party within twenty days constitutes
3   reasonable diligence.  Moreover, there is no support for Plaintiffs' contention that a party learning
4   of their expert's withdrawal must immediately notify the non-moving party or else forfeit their right
5   to seek leave of court to appoint a substitute expert.

6       **C.    There is No Evidence that the Substitution Would Prejudice Plaintiffs, and**
7           **the Trial Date Need Not Be Moved**

8       Plaintiffs have provided no evidence of prejudice.  Plaintiffs provided only one
9   declaration—of Davis & Polk attorney Gina Cora—in support of their Opposition (Dkt. No. 496).
10  That declaration provides no evidence or even argument that Plaintiffs have suffered any prejudice
11  because of the substitution.  It is true that Plaintiffs may choose to take a deposition of Mr. Minkler
12  before trial.  Any such costs, however, would be offset by the cancellation of Mr. Town's deposition
13  in the wake of his withdrawal (notice of which was provided well before the scheduled deposition
14  date).  Nor can Plaintiffs claim prejudice because they would need to depose Mr. Minkler closer to
15  trial than Mr. Town.  That fact is inherent in every situation where a party requires leave of court
16  to substitute an expert, and yet courts routinely grant motions to substitute, as described above.
17  "The Court acknowledges that substitution will necessarily result in some amount of prejudice to
18  Defendants, especially where, as here, it occurs after all expert reports and depositions have been
19  completed. This is unavoidable, however, in every case where an expert can no longer testify in the
20  latter stages of a case, no matter the reason for the substitution." *Kaepplinger*, 2021 WL 2633312
21  at *5.  Such prejudice, which happens in every case, does not justify denying a motion to substitute
22  an expert who has withdrawn through no fault of the party.

23      Defendants attempted to minimize the impact on the case schedule by proposing a shortened
24  briefing schedule that could have resulted in a deposition of Mr. Minkler in late December or early
25  January.  Plaintiffs' tactical decision to refuse (and then oppose) that briefing schedule was beyond
26  Defendants' control.  It is beyond reasonable dispute that Defendants have done everything within
27  their control to minimize the impact of this unforeseen substitution on the case schedule.

28      Even with Plaintiffs' lack of cooperation, however, this motion will not require moving the

9

1   trial date.  If the Court grants this motion on or before January 16, the deposition of Mr. Minkler

2   could take place the following week, and briefing on any motions related to Mr. Minkler could

3   follow in late January and February.  If the Court grants the motion earlier, this will provide even

4   more time for deposition and motion practice.

5          **D.     The Fact the Motion Would Necessitate Amending the Case Schedule is Not**

6                   **Grounds for Denying the Motion**

7          Motions to substitute necessarily require amending of the case schedule—if they did not,

8   such a motion would be unnecessary.  In every case cited above where the motion was granted, the

9   Court modified the case schedule in the weeks leading up to trial.  The fact that granting

10  Defendants' motion would require an adjustment to the case schedule here is not grounds for

11  denying the motion.  Defendants acted diligently and the motion should be granted.

12         Plaintiffs will not be unduly prejudiced.  Plaintiffs argue that they do not have the resources

13  to prepare for trial and take Mr. Minkler's deposition.  However, Plaintiffs' have nearly infinite

14  resources to devote to this case, as measured by the fact that *eleven* different lawyers have appeared

15  for Plaintiffs at depositions to date.  Moreover, the fact that the Court has narrowed the issues to be

16  tried means that fewer witnesses will appear and the parties require less time to prepare for the trial.

17  Plaintiffs plainly can take a deposition of Mr. Minkler at some point in the next two months.

18         **E.     Defendants Should Not be Required to Pay Any of Plaintiffs' Costs**

19         Plaintiffs ask that if the Motion is granted, Defendants be made to pay for the costs of Mr.

20  Minkler's deposition.  If Plaintiffs had already taken the deposition of prior expert Jay Town, that

21  request might have some merit.  But no deposition of Mr. Town took place – Defendants notified

22  Plaintiffs of the withdrawal well before the scheduled date of his deposition.  Requiring Defendants

23  to pay for the deposition of Mr. Minkler would confer a windfall on Plaintiffs.  Defendants are

24  willing to schedule the deposition of Mr. Minkler at a mutually agreeable location, consistent with

25  the parties' existing agreement that expert depositions take place in New York, Atlanta, or San

26  Francisco.  But forcing Defendants to pay any of Plaintiffs' fees or costs is unwarranted.

27         **F.     Plaintiffs are not Entitled to a Rebuttal Report**

28         Plaintiffs also make reference (Opp. fn. 3) to rebutting Mr. Minkler's opinion.  Because the

10

1   opinions of Mr. Minkler are substantially the same as those of Mr. Town, and because Plaintiffs'

2   expert Anthony Vance has already served a rebuttal report to Mr. Town's initial report, no further

3   rebuttal report would be necessary or proper.

4          **G.     Mr. Minkler's Testimony is Neither Irrelevant Nor Duplicative**

5          Finally, courts should not rule on *Daubert* or *in limine* challenges to an expert at the motion

6   to substitute stage without full briefing on the qualifications or methodology of the expert.  *Fujifilm*,

7   2014 WL 8094582 at *2 ("Without appropriate briefing, I cannot say at this time how I would

8   rule").   The Court should not entertain Plaintiffs' cloaked motion to exclude Mr. Minkler's

9   testimony in its opposition, where Defendants do not have fourteen days and twenty-five pages to

10  explain their position.   Nevertheless, Defendants hereby provide a very brief rebuttal to Plaintiffs'

11  improper argument.

12         *First*, Mr. Minkler's testimony is relevant to several issues that remain in dispute even after

13  the Court's order on summary judgment and sanctions.   The plaintiffs seek punitive damages in

14  connection with their state-law statutory claim, which requires them to prove that NSO "has been

15  guilty of oppression, fraud, or malice."  *See, e.g.*, *Hardeman v. Monsanto Co.*, 997 F.3d 941, 971

16  (9th Cir. 2021).   This requires an examination of the nature of NSO's conduct, whether it falls so

17  far outside the norm as to require additional punishment, and whether NSO took steps to mitigate

18  any actual, known risks.  *See id.*  Mr. Minkler will thus testify, like Mr. Town would have, that the

19  development and manufacturing of lawful surveillance technologies is beneficial to domestic law

20  enforcement agents at the state and federal levels, rather than the "malicious" activity that the

21  plaintiffs and their experts attempt to portray.  (*See* Dkt. No. 496-1 Ex. A ("Minkler Report") at

22  ¶1.)  He will also explain that law enforcement agencies in the United States and abroad are

23  routinely permitted to intercept electronic communications using various technologies and that the

24  use of Pegasus, or similar technology, could be approved consistent with U.S. law based on his

25  experience – including as the presidentially-appointed United States Attorney for the Southern

26  District of Indiana.  (*Id.* ¶¶ 5, 35-40.)  Furthermore, Mr. Minkler will explain that domestic law

27  enforcement's need for technologies such as Pegasus is driven in large part by criminals' use of

28  encrypted messaging applications, such as WhatsApp, with the companies themselves informing

users that they are unable to comply with lawful government requests for the content of user messages. (*See, e.g.*, *id.* at ¶¶ 41-42.) Finally, Mr. Minkler will also testify as to the public benefits of Pegasus and similar technologies, which bear directly on the public harm that would result from an injunction interfering with the operation of Pegasus or with the ongoing law enforcement investigations in which it is currently being used. (*See id.* ¶¶ 55-62); *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (setting forth the factors that a court must consider when weighing an injunction). His testimony is thus relevant to numerous issues that remain undecided in this matter.

*Second*, Mr. Minkler's testimony is not duplicative of Col. Shepard's, as has been made clear in their respective disclosures. Mr. Minkler will testify, among other things, that the United States permits the lawful interception of electronic communications under federal law; that foreign governments also permit law enforcement agencies to intercept electronic communications; that Pegasus or similar technologies could be used consistent with U.S. federal laws; that the end-to-end encryption offered by companies such WhatsApp stymies domestic law enforcement investigations, even if law enforcement obtains a court order for the content of a suspect's encrypted communications; that law enforcement agencies need access to technologies such as Pegasus to correct the imbalance that has recently been created by companies such as WhatsApp; and that Pegasus has been successfully deployed for those very purposes. (*See generally* Minkler Report, Dkt. No. 496-1.) In contrast, Col. Shepard will testify that United States and its allies have used surveillance tools like Pegasus in military and intelligence operations; that the United States and its allies have benefitted from such information, including information that U.S. allies or partner nations obtained using Pegasus itself; that a large market for commercial and open-source tools like Pegasus exists and is beneficial; that the disclosure of the use of such tools to companies like WhatsApp is *not* standard practice; and that NSO has taken steps to mitigate any potential risks from its technology. (*See generally* Dkt. No. 419-6 ("Shepard Report").) Accordingly, the opinions of Mr. Minkler and Col. Shepard are not duplicative.[2]

---

[2] Some minimal overlap between the two sets of opinions is not ground for exclusion, even at the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO SUBSTITUTE EXPERT                    Case No. 4:19-cv-07123-PJH

1

**IV.    CONCLUSION**

2

       For the reasons set forth above, and in its opening brief, NSO respectfully requests that its

3

motion to substitute be granted.

4

5

  Dated: January 2, 2025                   KING & SPALDING LLP

6

                              By:*/s/Joseph N. Akrotirianakis*

7

                            JOSEPH N. AKROTIRIANAKIS
                            AARON S. CRAIG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

appropriate juncture (which this is not).  *E.g.*, *Santa Clarita Valley Water Agency v. Whittaker Corp.*, No. CV1806825GWRAOX, 2020 WL 8125550, at *3 (C.D. Cal. July 27, 2020) (noting that evidence is not inadmissible simply because it may be cumulative; that "some overlap" between expert opinions has been permitted; and that courts generally do not resolve such objections until just short of or even during trial).  Even assuming otherwise, it should be NSO (and not the plaintiffs) that chooses which expert to present on which topics.