JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
 acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:    (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DANA TREXLER, CPA/CFF**<br><br>Date:  February 13, 2025<br>Time: 2:00 p.m.<br>Place:  Courtroom 3, Ronald V. Dellums Federal Building & U.S. Courthouse, 1301 Clay Street, Oakland, California<br><br>Action Filed: 10/29/2019<br><br>**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]** |

**PLEASE TAKE NOTICE** that on February 13, 2025, at 2:00 p.m., before the Honorable Phyllis J. Hamilton, Senior United States District Judge, in the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Courtroom 3, Oakland, California, Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. (collectively "Defendants") will and hereby do move this Court for an order excluding certain opinions of Plaintiffs' expert witness, Dana Trexler, CPA/CFF. Specifically, Defendants move to exclude Ms. Trexler's opinions that Plaintiffs' labor costs purportedly incurred in responding to Defendants' alleged exploitation of security vulnerabilities in WhatsApp's computer systems and code include: (i) the amounts set forth in Exhibit 2.2 to Ms. Trexler's August 30, 2024, report; and (ii) alleged expenses associated with restricted stock units granted to certain of Plaintiffs' employees. Defendants also move to exclude Ms. Trexler's opinions about Defendants' profits, because Plaintiffs are not legally entitled to disgorgement as a matter of law. Defendants move to exclude this evidence under Federal Rules of Evidence 702 and 402.

NSO's Motion is based on this Notice of Motion, the following Points and Authorities, the accompanying Declaration of Aaron S. Craig ("Craig Decl.") and exhibits thereto, and such other written or oral argument as may be presented.

Dated: January 9, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.    BACKGROUND ............................................................................................................... 2

III.    LEGAL STANDARDS .................................................................................................... 5

IV.    ARGUMENT .................................................................................................................... 5

        A.    Ms. Trexler's ███████████████████████████
              ███████ Is Not Supported By Sufficient Facts or Data. ................................ 6

        B.    Ms. Trexler's ███████████████████████████
              ███ Should Be Excluded. ............................................................................. 6

            1.    Ms. Trexler's ███████████████████████ Is Not Supported by
                  Sufficient Facts or Data. ................................................................................ 7

            2.    Ms. Trexler's ███████████████████ Is Not the Product of Reliable
                  Principles and Methods. ................................................................................ 9

            3.    ███████████████████████████ Does Not Fit the Facts. .............. 10

        C.    Disgorgement Is Not Available to Plaintiffs, So Ms. Trexler's Opinions About
            Defendants' Profits Are Irrelevant. ....................................................................... 10

V.    CONCLUSION ............................................................................................................... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ary v. Target Corp.*,
  2023 WL 2622142 (N.D. Cal. Mar. 23, 2023) .......................................................................... 11

*Bakst v. Comm. Mem. Health Sys., Inc.*,
  2011 WL 13214315 (C.D. Cal. Mar. 7, 2011) .......................................................................... 11

*Clark v. Eddie Bauer LLC*,
  2024 WL 177755 (9th Cir. Jan. 17, 2024) ............................................................................... 11

*Cruz v. PacifiCare Health Sys., Inc.*,
  30 Cal. 4th 303 (2003) ............................................................................................................. 10

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ............................................................................................................ 5, 10

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) .................................................................................................................. 5

*Guzman v. Polaris Indus. Inc.*,
  49 F.4th 1308 (9th Cir. 2022) .................................................................................................. 10

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  28 F.4th 35 (2022) ................................................................................................................... 10

*IntegrityMessageBoards.com v. Facebook, Inc.*,
  2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ........................................................................... 11

*Kenney v. Fruit of the Earth, Inc.*,
  2023 WL 3565076 (S.D. Cal. Apr. 3, 2023), *aff'd*, 2024 WL 4578981 (9th Cir.
  Oct. 25, 2024) ..................................................................................................................... 10, 11

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................. 5, 9

*Liu v. SEC*,
  591 U.S. 71 (2020) ................................................................................................................... 10

*Medoff v. Minka Lighting, LLC*,
  2023 WL 4291973 (C.D. Cal. May 8, 2023) ........................................................................... 11

*Mesfun v. Hagos*,
  2005 WL 5956612 (C.D. Cal. Feb. 16, 2005) ......................................................................... 11

*Miller v. Four Winds Int'l Corp.*,
   2012 WL 465445 (D. Idaho Feb. 13, 2012) ............................................................................. 11

*Newkirk v. ConAgra Foods, Inc.*,
   727 F. Supp. 2d 1006 (E.D. Wash. 2010) ............................................................................. 8, 9

*Rabin v. Google LLC*,
   2023 WL 4053804 (N.D. Cal. June 15, 2023) ......................................................................... 11

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ............................................................................................. 10, 11

*Toy v. Am. Family Mut. Ins. Co.*,
   2014 WL 12888386 (D. Colo. Jan. 31, 2014) ............................................................................ 6

*United States v. W.R. Grace*,
   504 F.3d 745 (9th Cir. 2007) .............................................................................................. 5, 10

**Other Authorities**

Fed R. 30(b)(6) ................................................................................................................. 1, 2, 3, 6

Fed. R. Evid. 402 ..................................................................................................................... 2, 11

Fed. R. Evid. 702 .................................................................................................................. *passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Among the damages Plaintiffs seek to recover in this action are alleged labor costs Plaintiffs claim to have incurred in connection with their response to Defendants' use of security vulnerabilities in WhatsApp's systems and code. Plaintiffs' expert, Dana Trexler CPA/CFF, proposes to testify about the bases for these claimed labor costs, but her proposed testimony on these topics falls short, in several respects, of the standards for admissibility under Federal Rule of Evidence 702. Ms. Trexler also purports to provide an opinion about Defendants' profits that are subject to disgorgement when that remedy is unavailable to Plaintiffs as a matter of law. These opinions should be excluded.

Ms. Trexler includes in her calculation of the labor costs Plaintiffs seek to recover ▮▮▮▮ ▮▮▮▮ However, Ms. Trexler ▮▮▮▮ ▮▮▮▮, and the Rule 30(b)(6) witness Plaintiffs designated to testify about their employees' time spent on the response efforts ▮▮▮▮ ▮▮▮▮. Accordingly, Ms. Trexler's opinion ▮▮▮▮ ▮▮▮▮ is not supported by sufficient facts or data to satisfy Rule 702.

Ms. Trexler also proposes to testify ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮. Ms. Trexler's proposed testimony on this subject fails to satisfy the standards for admissibility under Federal Rule of Evidence 702 for each of three reasons. *First*, Ms. Trexler fails to cite facts or data sufficient to support her opinion that ▮▮▮▮ ▮▮▮▮. *Second*, Ms. Trexler's opinion that ▮▮▮▮ ▮▮▮▮ is not the product of reliable principles and methods. *Third*, the

opinion is not reliably applied to the facts of the case.

Finally, Ms. Trexler provides an opinion about Defendants' profits for purposes of a disgorgement analysis. She does not provide any opinion about whether disgorgement is an appropriate remedy here. And as a matter of law, disgorgement is not available to Plaintiffs, and therefore Ms. Trexler's opinions about disgorgement and NSO's profits are irrelevant and should be excluded under Federal Rule of Evidence 402.

## II. BACKGROUND

Ms. Trexler's August 30, 2024, report includes an opinion regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Craig Decl. Exh. A, ¶ 52; *id.*, ¶¶ 51–88.) Ms. Trexler assigns ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.*, ¶ 83 and Exhs. 2.1 & 2.2.) She then ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*, ¶ 86 and Table 3.)

Ms. Trexler's calculation of Plaintiffs' alleged labor costs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.*, ¶¶ 81–82 and Exh. 2.2.) Moreover, the Rule 30(b)(6) witness Plaintiffs designated to testify about "the time spent by Plaintiffs' employees in responding to Defendants' exploit" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Craig Decl. Exh. B at 273:3–17 (setting forth

---

[1] These 14 employees are: Aby John, Andy Yang, Andrey Labunets, Aravind Thangavel, Brendon Tiszka, Igor Milyakov, John Altenmeller, Jon Sheller, Meng Zheng, Mingsong Bi, Nasren Jaleel, Roger Shen, Saish Gersappa and Xi Deng. (Craig Decl. Exh. A, Exh. 2.2.)

1  scope of witness' designation); *id.* at 279:13–15; *id.* at 279:23–280:7; *id.* at 295:25–301:18.)

2  Plaintiffs' Rule 30(b)(6) designee was able to testify only ███████████████

3  ████████████████████████████████████████████████████████████

4  ███████████████. (*See id.* at 296:22–297:5; *id.* at 297:15–298:20.) The Rule 30(b)(6) designee

5  was otherwise totally unable to answer any questions about 14 employees that Ms. Trexler believes

6  worked on the exploit. To be clear, there is a group of eight employees of Plaintiffs about whom

7  Defendants are not seeking to exclude Ms. Trexler's opinion by this motion, but there is simply no

8  factual basis to support Ms. Trexler' opinion about the second group of 14 employees that were

9  unknown to Plaintiffs' Rule 30(b)(6) designee.

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████ (Craig Decl.

13 Exh. A, ¶ 85.) ██████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████ (*Id.*, Exh. 3.1.4.) ████████████████

16 ████████████████████████████████████████████████████████████

17 █████████████████████████████████ (*Id.*)

18 ████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████

20 ██████████████████████ However, Meta's 2018 Annual Report on U.S. Securities and

21 Exchange Commission ("SEC") Form 10-K, states that, as of December 31, 2018, the company

22 had $8.96 billion in unrecognized compensation expense relating to previously granted RSUs and

23 that Meta expected to recognize that expense "over a weighted-average period of three years based

24 on vesting under the award service conditions."[2] Similarly, Meta's 2019 Annual Report identifies

25 $12.21 billion of unrecognized RSU-related compensation expense that the company expected to

26 recognize "over a weighted-average period of three years based on vesting under the award service

---

[2] SEC Form 10-K for year ended December 31, 2018, at 80, available at https://www.sec.gov/Archives/edgar/data/1326801/000132680119000009/fb-12312018x10k.htm.

1  conditions."[3]

2  ███████████████████████████████████████████████

3  ███████████████████████████████████████████████

4  ███████████████████████████████████████████████

5  ███████████████████████████████████████████████

6  ███████████████████████████████████████████████

7  ████████████████████████████ per Meta's 2019 Annual Report, such

8  expenses would not have been fully recognized by Meta during 2019, but instead would have been

9  recognized "over a weighted-average period of three years based on vesting under the award service

10 conditions."[4]

11      In addition, although Ms. Trexler states ████████████████████

12 ███████████████████████████████████████████████

13 (Craig Decl. Exh. A, ¶ 84), ████████████████████████████████

14 ███████████████████████████████████████████████

15 ████████████  Granting stock units to an employee does not require an employer to pay

16 any money to the employee.

17      Ms. Trexler's ████████████████████████████████████

18 ███████████████████████████████████████████ (*See*

19 Craig Decl. Exh. C, ¶¶ 62–63 and Figures 9 & 10; *see also* Craig Decl. Exh. A, Exhs. 2.1, 2.2, &

20 3.1.) ██████████████████████████████████████████

21 ███████████████████████████████████████████████

22 █████████  (*See* Craig Decl. Exh. C, ¶ 63 and Figure 10.)

23      Ms. Trexler's initial and supplemental reports both include sections purporting to calculate

24 Defendants' profits for licensing certain Pegasus systems. While the initial report is limited to

25 April and May 2019, and the supplemental report covers 2018, 2019, and 2020, and while Ms.

---

[3]  SEC Form 10-K for year ended December 31, 2019, at 98, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001326801/000132680120000013/fb-12312019x10k.htm.

[4]  *Id.*

Trexler's methodology for calculating profits in her supplemental report is completely different from her methodology in her initial report, all of Ms. Trexler's opinions about Defendants' profits relate solely to the remedy of disgorgement. (Craig Decl. Exh. A, ¶¶ 89–123; Craig Decl. Exh. F, ¶¶ 7–8, 14–48.)

### III.  LEGAL STANDARDS

Plaintiffs bear the burden to establish that Ms. Trexler's testimony is "based on sufficient facts or data," and is the "product of reliable principles and methods" that have been "reliably applied … to the facts of the case." Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *United States v. W.R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007).

It is the trial judge's responsibility to act as a "gatekeeper" by ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also W.R. Grace*, 504 F.3d at 759. The Court's gatekeeping function exists to ensure that an expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). To this end, the Court must conduct a "holistic" analysis of the expert's testimony for "overall sufficiency of the underlying facts and data, and the reliability of the methods, as well as the fit of the methods to the facts of the case." *W.R. Grace*, 504 F.3d at 762, 765. Where the proposed testimony fails to satisfy these standards, the Court can, and should, exclude it. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### IV.  ARGUMENT

Ms. Trexler's inclusion of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not supported by sufficient facts or data to satisfy Rule 702. Further, Ms. Trexler's proposed testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not supported by sufficient facts or data; nor is that opinion the product of reliable principles and methods reliably applied to the facts of this case. Accordingly, this Court should exclude Ms. Trexler's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589–

90. **Finally**, because disgorgement is unavailable to Plaintiffs as a matter of law, Ms. Trexler's opinions about Defendants' profits should also be excluded.

### A. Ms. Trexler's ▮▮▮▮▮ Is Not Supported By Sufficient Facts or Data.

Ms. Trexler's opinion ▮▮▮▮▮ is not supported by sufficient facts or data to satisfy Rule 702. Ms. Trexler ▮▮▮▮▮ (*See* Craig Decl. Exh. A, ¶¶ 81–82.) Instead, she asserts she spoke with former WhatsApp employee Claudiu Gheorghe, whose knowledge of these 14 employees is unknown, and who was *not* Plaintiff's corporate designee on "the time spent by Plaintiffs' employees in responding to Defendants' exploit." Further, the 30(b)(6) witness Plaintiffs did designate as to this subject ▮▮▮▮▮ (*See* Craig Decl. Exh. B at 279:13–15; *id.* at 279:23–280:7; *id.* at 295:25–301:18.) Plaintiffs' Rule 30(b)(6) witness was only able to confirm ▮▮▮▮▮ (as opposed to the 64 hours counted by Ms. Trexler for ▮▮▮ ). (*See id.* at 296:22–297:5; *id.* at 297:15–298:20; Craig Decl. Exh. A, Exh. 2.2.)

Accordingly, Ms. Trexler's opinion ▮▮▮▮▮ lacks sufficient factual support to be reliable and admissible under Rule 702. *Cf. Toy v. Am. Family Mut. Ins. Co.*, 2014 WL 12888386, at *6 (D. Colo. Jan. 31, 2014) (examining related 30(b)(6) testimony in assessing whether proposed opinion testimony had sufficient factual support for admission).

### B. Ms. Trexler's ▮▮▮▮▮ Should Be Excluded.

The Court should also exclude Ms. Trexler's opinion that alleged RSU-related expenses should be included in her Labor Cost Opinion. Her inclusion of such expenses is not supported by

sufficient facts or data, is not the product of reliable principles and methods, and does not fit the facts of this case.

        **1.**     **Ms. Trexler's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Is Not Supported by Sufficient Facts or Data.**

Ms. Trexler fails to cite facts or data sufficient to support her inclusion of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

*First*, Ms. Trexler fails to cite facts or data sufficient to show ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*See* Craig Decl. Exh. A, Exh. 3.1.4, n.1.) But nothing in that document, nor any other facts Ms. Trexler cites, supports the conclusion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*See* Craig Decl. Exh. D.) To the contrary, Meta's SEC filings indicate that Meta recognizes compensation relating to RSU grants "over a weighted-average period of approximately three years based on vesting under the award service conditions,"[5] suggesting that RSU-related expenses recognized during 2019 would not have been incurred based on work performed during that year, but would instead relate to RSUs granted in prior years based on work performed in prior years. Further, to the extent that the data set forth in WA-NSO-00192854 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ it would be inappropriate ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ given Meta's statements in its SEC filings that the company recognizes RSU expenses over a weighted-average

---

[5] *See* SEC Form 10-K for year ended December 31, 2018, at 80, available at https://www.sec.gov/Archives/edgar/data/1326801/000132680119000009/fb-12312018x10k.htm; *see also* SEC Form 10-K for year ended December 31, 2019, at 98, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001326801/000132680120000013/fb-12312019x10k.htm.

1   period of approximately three years, rather than in the years that grants are made. For the above
2   reasons, Ms. Trexler has not shown that the data set forth in WA-NSO-00192854 offers reliable
3   support for her opinion █████████████████████████████████████████████████
4   ████████████████████████████████████████ *See Newkirk v. ConAgra Foods, Inc.*, 727 F.
5   Supp. 2d 1006, 1016 (E.D. Wash. 2010) (where expert fails to cite reliable supporting data or facts,
6   the opinion "fail[s] the first step of the *Daubert* inquiry").
7   **Second**, Ms. Trexler fails to show that the data set forth in WA-NSO-00192854 ████
8   ████████████████████████████████████████████████████ This is critical,
9   because Ms. Trexler states that ████████████████████████████████████████████
10  ██████████████████████████████████████████████████████████████████████
11  ██████████████████████████ (Craig Decl. Exh. A, ¶ 84.) But Ms. Trexler has not
12  shown that the amounts set forth in WA-NSO-00192854 ████████████████████████
13  ████████████████████████████. For this reason too, Ms. Trexler's opinion ████
14  ████████████████████████████████████████ lacks sufficient support for admission.
15  *See Newkirk*, 727 F. Supp. 2d at 1016.
16  **Third**, Ms. Trexler ████████████████████████████████████████████████
17  ██████████████████████████████████████████████████████████████████████
18  ██████████████████████████████████████████████████████████████████████
19  ██████████████████████████████████████████████████████████. (Craig Decl.
20  Exh. A, Exh. 3.1.4, n.2.) Ms. Trexler cites no facts or data of any kind to support ██████
21  ██████████████████████████████████████████████ Without citation to any such
22  factual support, Ms. Trexler's ████████████████████████████████████████████
23  ██████████████████████████████████████████████████████████████████████
24  is wholly unreliable. *See Newkirk*, 727 F. Supp. 2d at 1017 ("without citation to any source, the
25  Court must conclude that those foundational statements are not based on sufficient facts or data").
26  For all these reasons, Ms. Trexler's ████████████████████████████████████
27  ██████████████████ not supported by sufficient facts or data as required by Rule 702.
28  Accordingly, the Court should exclude ████████████████████████████████████

▮

**2.     Ms. Trexler's ▮ Is Not the Product of Reliable Principles and Methods.**

As explained above, it is entirely unclear what the ▮ ▮ ▮ Ms. Trexler fails to show that ▮ ▮, (*see* Craig Decl. Exh. A, ¶ 86), ▮ ▮. *See supra* at 7–8. Nor does she show that the ▮ ▮ ▮ (Craig Decl. Exh. A, ¶ 84.) *See supra* at 8. Accordingly, Ms. Trexler's ▮ ▮ is not the product of reliable principles and methods. *See Newkirk*, 727 F. Supp. 2d at 1018 (to meet the reliability standard, an expert's opinions must "logically derive from the stated bases").

Further, when assessing the reliability of proposed expert testimony, one important consideration is whether the expert's methodology is one that is "generally accepted" by other experts in the relevant field. *Kumho*, 526 U.S. at 151. Here, Defendants' expert Gregory Pinsonneault testified that, in the 50 to 75 cases in which he has been engaged as an expert and in which issues concerning fully burdened labor costs have been present, he cannot recall a single case in which any expert—for any party—included RSU-related expenses in their calculation of burdened labor cost ▮. (*See* Craig Decl. Exh. E at 319:17–320:10.) He has never done it, and before this case, he has never seen an opposing expert attempt it. (*Id.*) This strongly suggests that Ms. Trexler's ▮ ▮ is not "generally accepted" and thus is not sufficiently reliable for admission under Rule 702.

In fulfilling its gate-keeping role, the Court should exclude this unreliable and misleading testimony. *See Newkirk*, 727 F. Supp. 2d at 1018.

1    **3.** ███████████████████████████████████ **Does Not Fit the Facts.**

Finally, in the absence of a showing that ████████████████████████████████████████████████████████████████████████████████████████████████████████ Ms. Trexler's opinion does not "fit," and is not reliably applied to, the facts of this case. *See Daubert*, 43 F.3d at 1320 (noting that the requirement of "fit" or "helpfulness" demands "a valid scientific connection to the pertinent inquiry as a precondition to admissibility"). Where, as here, the methods underlying an expert's opinion do not fit the facts of the case, the proposed testimony falls short of the reliability threshold imposed by Rule 702 and *Daubert* and should be excluded. *See W.R. Grace*, 504 F.3d at 765.

**C.    Disgorgement Is Not Available to Plaintiffs, So Ms. Trexler's Opinions About Defendants' Profits Are Irrelevant.**

Ms. Trexler provides several calculations of Defendants' profits, all of which are for the sole purpose of determining the amount she contends should be disgorged from Defendants to Plaintiffs. (Craig Decl. Exhs. A, F.) But the remedy of disgorgement is not available to Plaintiffs in this case. Because Plaintiffs cannot receive disgorgement, and Defendants' profits are not relevant to any other issue in the case, Ms. Trexler's opinions about those profits are irrelevant and should be excluded.

Disgorgement is an equitable remedy,[6] the availability of which depends on the "traditional equitable principles" that govern in "federal court." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). "[S]tate law can neither broaden nor restrain a federal court's power to issue equitable relief." *Id.* Accordingly, even when a state "authorize[s] its courts to give equitable relief," a federal court may not award that relief "if an adequate legal remedy exists." *Id.* at 842-44; *accord Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312-13 (9th Cir. 2022). That includes the equitable remedy of disgorgement: "[W]here monetary damages provide an adequate remedy, a federal court may not consider the merits of equitable claims for … disgorgement…." *Kenney v. Fruit of the Earth, Inc.*, 2023 WL 3565076, at *3 (S.D. Cal. Apr. 3, 2023), *aff'd*, 2024 WL 4578981

---

[6] *Liu v. SEC*, 591 U.S. 71, 79-81 (2020); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 39 (2022); *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 307 (2003).

(9th Cir. Oct. 25, 2024); *see Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *2 (9th Cir. Jan. 17, 2024) (rejecting disgorgement claim for absence of "proof of inadequate legal remedies"); *Rabin v. Google LLC*, 2023 WL 4053804, at *13 (N.D. Cal. June 15, 2023) (same); *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *12 (C.D. Cal. May 8, 2023) (same); *Ary v. Target Corp.*, 2023 WL 2622142, at *5 (N.D. Cal. Mar. 23, 2023); *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *5-6 (N.D. Cal. Nov. 6, 2020) (same).

That rule forecloses Plaintiffs from recovering disgorgement. Plaintiffs' "complaint does not allege that [they] lack[] an adequate legal remedy," *Sonner*, 971 F.3d at 844, and they have not otherwise proved that damages are inadequate to remedy their claimed harms. To the contrary, the only harm Plaintiffs claim to have suffered because of Defendants' alleged actions is the ▇▇▇ they allegedly expended to investigate and remediate the vulnerability in WhatsApp. Plaintiffs' claim for money damages fully remedies that alleged harm. Therefore, Plaintiffs have an adequate legal remedy and cannot seek the equitable remedy of disgorgement. *E.g.*, *Clark*, 2024 WL 177755, at *2; *Kenney*, 2023 WL 3565076, at *3.

Because Plaintiffs cannot recover disgorgement, Ms. Trexler's opinions on Defendants' profits are irrelevant. Ms. Trexler offers those opinions solely to support Plaintiffs' improper disgorgement claim (Craig Decl. Exh. A, ¶¶ 89–123; Craig Decl. Exh. F, ¶¶ 7–8, 14–48), and Defendants' profits are not relevant to any other issue in the case. Ms. Trexler's opinions on profits thus would not assist the jury in deciding any relevant issue and should, therefore, be excluded under Rule 402. *See Bakst v. Comm. Mem. Health Sys., Inc.*, 2011 WL 13214315, at *12 (C.D. Cal. Mar. 7, 2011) (excluding as irrelevant expert opinion on unavailable remedies); *Mesfun v. Hagos*, 2005 WL 5956612, at *14-15 (C.D. Cal. Feb. 16, 2005) (excluding as irrelevant expert opinion on unavailable defense); *cf. Miller v. Four Winds Int'l Corp.*, 2012 WL 465445, at *3 (D. Idaho Feb. 13, 2012) (excluding as irrelevant testimony on unavailable remedies).

## V. CONCLUSION

For the reasons shown above, the Court should exclude Ms. Trexler's opinions ▇▇▇

| | | |
|---|---|---|
| 1 | ██████████████████████████████ | The Court should also |
| 2 | exclude Ms. Trexler's opinions about NSO's profits. | |

Dated: January 9, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*