1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
     *jakro@kslaw.com*
2   AARON S. CRAIG (Bar No. 204741)
     *acraig@kslaw.com*
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone:    (213) 443-4355
5   Facsimile:    (213) 443-4310

6   Attorneys for Defendants
    NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  WHATSAPP INC., a Delaware corporation,      Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
13  corporation,                                **MOTION TO EXCLUDE OR LIMIT THE
                                                OPINIONS OF PLAINTIFFS' PROPOSED
14                Plaintiffs,                    EXPERT ANTHONY VANCE, PH.D.**

15        v.                                     Date:  February 13, 2025
                                                Time:  2:00 PM
16  NSO GROUP TECHNOLOGIES LIMITED               Place: Courtroom 3, Ronald V. Dellums
    and Q CYBER TECHNOLOGIES LIMITED,                   Federal Building & U.S. Courthouse,
17                                                      1301 Clay Street, Oakland, California
                  Defendants.
18                                              Action Filed: 10/29/2019
19

20

21

22

23

24

25

26

27

28

1   **PLEASE TAKE NOTICE** that on February 13, 2025 at 2:00 p.m., or at such other date

2   and time convenient to (and ordered by) the Court, in Courtroom 3, of the United States Courthouse,

3   1301 Clay Street, Oakland, California, Defendants NSO Group Technologies Ltd. and Q Cyber

4   Technologies Ltd. (collectively "NSO") will, and hereby do, move this Court for an order excluding

5   or limiting the testimony of Anthony Vance, Ph.D.  NSO seeks to exclude this evidence under

6   Federal Rules of Evidence 403, 702, and interpretive case law (i.e., *Daubert*-related).

7   This Motion is based on this Notice of Motion and the attached Memorandum of Points and

8   Authorities; the concurrently filed Declaration of Joseph N. Akrotirianakis and the exhibits

9   appended thereto; any other evidence received in connection with the hearing on this motion; all

10  matters of record in the Court's files in this action; and such other evidence and written or oral

11  argument as the Court may wish to consider and direct the parties to submit.

12

13  Dated: January 9, 2025                  KING & SPALDING LLP

14                                          By: */s/ Joseph N. Akrotirianakis*

15                                          JOSEPH N. AKROTIRIANAKIS
                                            AARON S. CRAIG
16                                          *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION .................................................................................................... 1

II.  BACKGROUND .................................................................................................... 1

III.  ARGUMENT ......................................................................................................... 3

    A.  Dr. Vance Is Not Qualified to Offer Opinions on Legal, Law Enforcement, Military, or Intelligence Topics.................................................................... 3

        1.  Dr. Vance Is Not Qualified to Offer Legal Opinions. ..................................... 4

        2.  Dr. Vance Is Not Qualified to Offer Opinions on Law Enforcement, Military, or Intelligence Topics, Including Related Lawful Intercept and Surveillance Technologies. .......................................................... 6

    B.  Many of Dr. Vance's Opinions Are Not Relevant or Helpful. ............................... 7

        1.  The Court's Order on Liability Renders Many of Dr. Vance's Opinions Irrelevant. ........................................................................ 8

        2.  Dr. Vance's Opinions on "Hacking" and "Compromising the WhatsApp Platform" Are Both Irrelevant and Prejudicial............................. 8

        3.  Many of Dr. Vance's Opinions Are Unhelpful to the Trier of Fact, as They Fail to Apply Any Expertise. ....................................................... 10

    C.  Many of Dr. Vance's Opinions Are Unreliable or Otherwise Improper................ 14

        1.  Dr. Vance's Opinions Regarding the Data Sources Available to Law Enforcement Are Not Based on Facts or Data. ............................................ 14

        2.  Dr. Vance's Opinion That the Plaintiffs Respond to "All" Lawful Requests for Data Is Not Reliable.................................................................. 14

        3.  Dr. Vance's Opinion That the Harms of Pegasus Outweigh the Benefits Is Not Reliable. ................................................................... 16

        4.  Dr. Vance's Opinions Regarding the Executive Order Cited in His Rebuttal Report Are Not Reliable................................................................. 17

        5.  Dr. Vance's Opinions Regarding the Sufficiency of Pegasus' Safeguards Are Not Reliable......................................................................... 18

IV.  CONCLUSION..................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baldonado v. Wyeth*,
  No. 04 C 4312, 2012 WL 1802066 (N.D. Ill. May 17, 2012)...........................................12, 13

*Banga v. Kanios*,
  No. 16-CV-04270-RS, 2023 WL 1934484 (N.D. Cal. Jan. 24, 2023)........................................7

*Beech Aircraft Corp. v. United States*,
  51 F.3d 834 (9th Cir. 1995)..................................................................................................10

*Berry v. City of Detroit*,
  25 F.3d 1342 (6th Cir. 1994)..............................................................................................3, 7

*Cholakyan v. Mercedes-Benz, USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ...............................................................................10, 11, 13

*City of Huntington v. AmerisourceBergen Drug Corp.*,
  No. CV 3:17-01362, 2021 WL 1320716 (S.D.W. Va. Apr. 8, 2021) ......................................11

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)......................................................................................................3, 8, 17

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997)..............................................................................................................14

*Grasshopper House, LLC v. Clean & Sober Media LLC*,
  No. 218CV00923SVWRAO, 2019 WL 12074086 (C.D. Cal. July 1, 2019) ..........................15

*Howard v. Cty. of Riverside*,
  2014 WL 12589650 (C.D. Cal. May 2014) .....................................................................10, 13

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)........................................................................................................14, 18

*Lanard Toys Ltd. v. Anker Play Prods., LLC*,
  2020 WL 6873647 (C.D. Cal. Nov. 12, 2020)..................................................................11, 12

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
  2014 WL 3417941 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016)..........10

*Marcus v. Air & Liquid Sys. Corp.*,
  No. 22-CV-09058-HSG, 2024 WL 3171840 (N.D. Cal. June 24, 2024)...................................3

*Moore v. Intuitive Surgical, Inc.*,
  995 F.3d 839 (11th Cir. 2021)..............................................................................................3, 7

*Ryanair DAC v. Booking Holdings Inc.*,
    No. CV 20-1191-WCB, 2024 WL 3732498 (D. Del. June 17, 2024)...........................................4

*Smith v. Wyeth-Ayerst Lab'ys Co.*,
    278 F. Supp. 2d 684 (W.D.N.C. 2003) ...................................................12

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012)...........................................9

*United States v. Tamman*,
    782 F.3d 543 (9th Cir. 2015)...........................................6

*United States v. W.R. Grace*,
    504 F.3d 745 (9th Cir. 2007)...........................................14

*Van Buren v. United States*,
    593 U.S. 374 (2021) ...........................................9

*Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*,
    521 F. Supp. 3d 1135 (D. Utah 2021) ...........................................4, 5

**Statutes**

18 U.S.C. § 1030(e)(6) ...........................................9

**Other Authorities**

Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6273 (2d ed.)...........................................10, 13

Fed. R. Evid. 403 ...........................................10

Fed. R. Evid. 702 ........................................... *passim*

Fed. R. Evid. 703 ...........................................10, 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs' proposed expert, Anthony Vance, Ph.D., is an academic cybersecurity researcher with a history of having his expert opinions limited.  In this matter, Dr. Vance submitted both an opening report and a rebuttal report.  The latter purported to rebut all three of NSO's experts across a variety of opinions and fields of expertise.  As in prior matters, Dr. Vance has again overreached, and the majority of his opinions should be limited or excluded.

*First*, in his attempts to rebut NSO's experts, Dr. Vance offers opinions well outside his stated expertise.  Dr. Vance is not qualified to offer opinions on law enforcement, military, or intelligence topics.  Nor is he qualified to offer legal opinions, as both he and his counsel repeatedly acknowledged throughout his deposition.

*Second*, given the Court's recent order on liability, many of Dr. Vance's technical cybersecurity opinions are no longer relevant to any issue in the case.  Even assuming otherwise, a number of Dr. Vance's opinions would not be helpful to the trier of fact at a damages trial or even at a proceeding before the Court related to Plaintiffs' claim for the equitable remedies of disgorgement and injunctive relief.  Multiple of Dr. Vance's opinions do not stem from the application of any specialized expertise.

*Third*, many of Dr. Vance's opinions are not reliable, as his conclusions do not rely on sufficient facts or data and are not the product of any objective, reliable methodology.

For all these reasons, NSO respectfully requests that its motion be granted.

### II.    BACKGROUND

The plaintiffs first disclosed Anthony Dr. Vance as a potential expert on July 10, 2024. (Akro. Decl. Ex. A.)  They sought permission for Dr. Vance to review highly confidential information "reflecting the operation, capabilities, design, installation, maintenance, and use" of NSO's technologies.  (*Id.*)  By the plaintiffs' own description, Dr. Vance was expected to provide "*technical expertise* necessary to assist counsel." (*Id.*)

The plaintiffs then disclosed a second set of technical experts from FTI Consulting, including David Youssef.  (*Id.* Ex. B.)

On August 30, 2024, the plaintiffs formally disclosed Dr. Vance's affirmative opinions. (*See id.* Ex. C ("Dr. Vance Opening Report").)  Dr. Vance's stated field of expertise was "cybersecurity, which involves the protection of organizations' data, system, and networks."  (*Id.* § II.C.)  Dr. Vance's affirmative opinions thus involved assessments of WhatsApp's technology, its cybersecurity practices, and NSO's technology.  (*See generally id.*)

On the same date, NSO formally disclosed its own expert witnesses and their affirmative opinions.  (Akro. Decl. ¶ 5.)  Among them were Terrence McGraw (an expert on technical cybersecurity issues), retired Colonel Ty Shepard (an expert on surveillance technologies in military and intelligence operations), and John Town (an expert on U.S. law enforcement practices, law enforcement investigations, and lawful intercept technologies).[1]  (*See id.*)

On September 21, 2024, Dr. Vance issued a rebuttal expert report.  (*See* Akro. Decl. Ex. D.) In addition to addressing the opinions of NSO's technical cybersecurity expert, Dr. Vance also purported to address the opinions offered by NSO's military, intelligence, and law enforcement experts.  (*See generally id.*)

Dr. Vance appeared for a deposition on November 14, 2024.  (Akro. Decl. ¶ 7 & Ex. E ("Vance Tr.".)

On December 19, 2024, the Court issued an order on the parties' pending motions for summary judgment, partial summary judgment, and sanctions.  (*See generally* Dkt. No. 494.)  The order resolved "all issues regarding liability" and directed a trial on the issue of damages.  (*Id.* at 16:1-6.).

On December 30, 2024, counsel for the parties met and conferred regarding trial planning and the effect of the Court's order.  (Akro. Decl. ¶ 8.)  The Plaintiffs acknowledged that some of the opinions offered by their experts could now be moot, but were not prepared to discuss which opinions they still considered relevant.  (*Id.*)  They suggested that Dr. Vance's opinions may no longer be relevant to their case in chief, but that they believed his opinions necessary to rebut

---

[1] Mr. Town subsequently withdrew from the matter.  NSO has filed a motion to substitute Joshua Minkler, whose opinions are substantially similar to Mr. Town's.  (*See* Dkt. Nos. 480, 501.)

1  testimony from NSO's experts.  (*Id.*)[2]  If compromise could be reached, the Plaintiffs indicated that

2  they would provide a proposal regarding the voluntary exclusion of various experts.  (*Id.*)

3      As of this filing, no such proposal had been received.  (*Id.*)  Accordingly, NSO moves to

4  exclude or limit the opening and rebuttal opinions of Dr. Anthony Dr. Vance, as described below.

5  ## III.  **ARGUMENT**

6      Trial courts are intended to exercise a "gatekeeping role" with respect to expert testimony.

7  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  A putative expert must be

8  "qualified . . . by knowledge, skill, experience, training, or education," and the proponent must

9  demonstrate to the court "that it is more likely than not that: (a) the expert's scientific, technical, or

10  other specialized knowledge will help the trier of fact to understand the evidence or to determine a

11  fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

12  of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the

13  principles and methods to the facts of the case."  *See* Fed. R. Evid. 702.  In short, (1) experts must

14  be qualified to offer specific opinions, (2) those opinions must be relevant, and (3) the opinions

15  must be reliable.  *E.g.*, *Marcus v. Air & Liquid Sys. Corp.*, No. 22-CV-09058-HSG, 2024 WL

16  3171840, at *1 (N.D. Cal. June 24, 2024).

17  ### A.    **Dr. Vance Is Not Qualified to Offer Opinions on Legal, Law Enforcement,**

18  ### **Military, or Intelligence Topics**

19      Qualification is the "first prong of the admissibility inquiry," and is distinct from issues of

20  helpfulness or reliability.  *See Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 851 (11th Cir. 2021).

21  Any purported expert must be "qualified . . . by knowledge, skill, experience, training, or

22  education."  Fed. R. Evid. 702.  Opinions issued by an unqualified expert must be excluded,

23  regardless of whether relevant and reliable.  *See Moore*, 995 F.3d at 851.  Furthermore, the "issue

24  with regard to expert testimony is not the qualifications of a witness in the abstract, but whether

25  those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City*

26  *of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).  Ultimately, "the proponent has the burden of

27

28  ---

[2] The plaintiffs also suggested that their primary technical cybersecurity expert, David Youssef, may not be required to testify at all.  (Akro. Decl. ¶ 8.)

1  establishing that the pertinent admissibility requirements are met by a preponderance of the

2  evidence."  Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments.

3    Here, Dr. Vance is an academic whose stated research interests are "[b]ehavioral and

4  organizational cybersecurity" and "[n]euroscience applications to cybersecurity."  (Vance Opening

5  Report Ex. B at p. 2.)  These research streams examine how individuals respond to, and eventually

6  begin to ignore, security warnings.  (Vance Tr. at 87:4-89:20.)  Dr. Vance's only stated fields of

7  expertise are "cybersecurity, software exploitation, and unauthorized access."  (Vance Opening

8  Report § II.C.)  Dr. Vance has been qualified as an expert in two prior matters – both times as a

9  "technical expert" in the field of "cybersecurity."  *See Ryanair DAC v. Booking Holdings Inc.*, No.

10  CV 20-1191-WCB, 2024 WL 3732498, at *47 (D. Del. June 17, 2024); *Vox Mktg. Grp., LLC v.*

11  *Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1148 (D. Utah 2021); Vance Tr. 142:4-24 (describing

12  scope of expert engagement in *Vox* litigation).  In both cases, portions of his opinions were excluded

13  or limited, and the *Ryanair* court refused to qualify Dr. Vance as an expert outside the realm of

14  cybersecurity so that he could rebut an opposing expert.[3]  *Ryanair*, 2024 WL 3732498, at *47-*51;

15  *Vox*, 521 F. Supp. 3d at 1148-49.

16    And yet in this matter, just as in *Ryanair*, Dr. Vance's rebuttal report expresses a series of

17  opinions that he is not qualified to offer.

18      **1.**  **Dr. Vance Is Not Qualified to Offer Legal Opinions.**

19    Dr. Vance's rebuttal report contains a series of legal opinions.[4]  He opines that "millions of

20  WhatsApp users live in jurisdictions where they have a legal right to privacy" and refers to various

21

22  [3] The *Ryanair* court declined to recognize Dr. Vance as an expert on the travel industry (e.g., the
licensing and competition that occurs between Ryanair and online travel agents) simply because he

23  held an academic post within a "business school" and claimed general "business expertise."  As the
court noted, "Ryanair offered Dr. Vance as an expert in cybersecurity. In that capacity, he teaches

24  at a business school and advises businesses on cybersecurity measures."  *Ryanair*, 2024 WL
3732498, at *50.

25  [4] During his deposition, Dr. Vance clarified that his uses of terms such as "authorized" and
"unauthorized" were not intended to offer a legal opinion, but rather that he was using terms of art

26  from the cybersecurity field.  (Vance Tr. 140:2-141:4, 141:18-23.)  Assuming NSO's technical
cybersecurity witnesses are permitted to do the same, NSO will not move to exclude Dr. Vance's

27  opinions on that narrow basis.  To the extent that the plaintiffs express concern about the use of
those terms by NSO's witnesses, NSO requests that all experts in this matter be given the same

28  instructions as to terms such as "authorized," "unauthorized," and "exceeds authorized access."

international and domestic laws (Vance Rebuttal § II.A.1); he opines on the legal effect of NSO being placed on the U.S. Department of Commerce's Entity List (Vance Rebuttal § II.D.2); he opines that an executive order issued by President Biden "bars commercial spyware generally" and would prohibit the lawful deployment of Pegasus by U.S. law enforcement (*id.*); he argues that government agencies cannot "authorize" NSO's development activities (Vance Rebuttal § II.E); and he again interprets NSO's placement on the Entity List, an executive order issued by President Biden, and the intent of the U.S. Treasury Department in sanctioning unrelated third parties (Vance Rebuttal § III.F).

Dr. Vance is not qualified by "knowledge, skill, experience, training, or education" as a lawyer. Indeed, during his deposition, Dr. Vance acknowledged that he was not a lawyer and his counsel objected that he was "not a legal expert" numerous times throughout the deposition. (*E.g.*, Vance Tr. at 18:18-20:4, 50:10-18.)

Even when questioned *on his own opinions* identified above, he was unable to provide answers due to his lack of legal qualifications.

When asked about his opinion on privacy rights and the scope of such rights, he was unable to answer questions – including whether any of the privacy rights identified would prohibit law enforcement from lawful surveillance – because he was "not a lawyer" and did not "want to opine on that issue." (*See* Vance Tr. 230:21-231:3.) When pressed, Dr. Vance acknowledged that he is "not an expert in the right to privacy in the United States" and that he was "also unfamiliar with the legal implications of the privacy rights of the citizens around the world." (*Id.* 233:19-234:12.) In response to questions regarding lawful intercept regimes in the United States and elsewhere, Dr. Vance repeatedly declined to offer an opinion on the basis that he was not a lawyer. (*E.g.*, Vance Tr. 111:7-17, 112:13-21.)

When asked about the legal effect of NSO being placed on the U.S. Department of Commerce's Entity List, Dr. Vance confirmed that he was merely quoting a *New Yorker* article. (*Id.* 333:18-334:16.) He did not know the committee that oversees the list, the process for being placed on the list, the investigation performed (if any) when a decision is made, or whether the subject entity has any ability to defend itself in an adjudicative proceeding. (*Id.* 335:20-337:24.)

1    Dr. Vance has never published on the Entity List, is not an expert in U.S. export control laws, and

2    is not an expert in international trade law.  (*Id.* 337:25-338:2, 338:23-339:4.)  The same issues

3    render Dr. Vance unqualified to discuss the intent or effect of the U.S. Treasury Department

4    sanctioning third parties.  (*See* Vance Rebuttal § III.F.)

5         When asked about the executive order issued by President Biden and described in his report

6    as barring "commercial spyware generally," Dr. Vance's counsel repeatedly objected that the

7    questions called for a legal conclusion.  (*See id.* 274:18-25, 277:13-18.)  Dr. Vance himself

8    ultimately confirmed that he was only able to answer the questions posed by "reading a statement

9    out of the document . . . just like anybody else who can read would do."  (*See id.* 277:24-278:10.)

10        Experts who are not lawyers are generally not qualified to testify as to a "matter of law

11   amounting to a legal conclusion."  *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015)

12   (affirming trial court's exclusion of proposed expert, who was not an attorney, with respect to the

13   interpretation of "SEC rules and regulations").  Dr. Vance's attempts to offer legal opinions must

14   therefore be prohibited and his related opinions excluded.

15            **2.      Dr. Vance Is Not Qualified to Offer Opinions on Law Enforcement,**

16                   **Military, or Intelligence Topics, Including Related Lawful Intercept and**

17                   **Surveillance Technologies.**

18        Dr. Vance's rebuttal report also contains a series of opinions regarding law enforcement,

19   military, and intelligence investigations, as well as lawful intercept, surveillance technologies, and

20   their purported misuse against "civil society" and "vulnerable populations."  This includes opinions

21   that vulnerable populations have been targeted by technologies like Pegasus (Vance Rebuttal

22   §§ II.A.1, II.D.1); that law enforcement has ample access to data in criminal investigations even

23   without obtaining encrypted messages (Vance Rebuttal § II.A.2); that the plaintiffs comply with all

24   lawful requests for data from law enforcement and other government agencies (Vance Rebuttal

25   § II.B); and that Pegasus is not equivalent to legitimate lawful intercept technologies (Vance

26   Rebuttal § II.C.1).

27        Again, Dr. Vance evinces no qualifications that would permit him to offer opinions on law

28   enforcement, lawful intercept technologies, military or intelligence efforts, related surveillance

1    technologies, or their purported misuse against "vulnerable populations."  He is an academic

2    professor and researcher who was put forward as a technical cybersecurity expert.  (*See infra*

3    Section III.A.)  He has never held a position in a law enforcement, antiterrorism, military, or

4    intelligence organization.  (Vance Tr. 130:1-12.)  He has never participated in a law enforcement,

5    antiterrorism, military, or intelligence investigation or operation—with the exception of a single

6    legal case in which he served as an expert and law enforcement may have relied on his analysis and

7    conclusions.  (*Id.* 130:14-21, 131:13-20.)  Due to his lack of law enforcement experience, Dr. Vance

8    did "not know the specific intercept technologies" used to obtain the types of evidence listed in his

9    report.  (*Id.* 247:13-248:6.)  In his role as an academic, he has never published regarding law

10   enforcement investigations, antiterrorism investigations, military operations, or intelligence

11   operations.  (*Id.* 133:8-12.)  He has never published regarding lawful intercept technologies, the

12   differences between lawful intercept technologies and exploitation software, the benefits or risks

13   of end-to-end encryption, civil society, or vulnerable populations.  (*Id.* 107:8-108:4, 108:25-109:8,

14   126:18-23, 128:20-129:2, 129:17-25.)  In short, Dr. Vance has no specialized knowledge, skill,

15   experience, training, or education that would qualify him as an expert on these topics.  *See Berry*,

16   25 F.3d at 1351 (relevant inquiry is not whether an expert is qualified "in the abstract, but whether

17   those qualifications provide a foundation for a witness to answer a specific question").[5]

18       Dr. Vance's opinions on these subjects must therefore be excluded regardless of whether

19   the same opinions are relevant or reliable (which at least many are not).  *Moore*, 995 F.3d at 851.

20       **B.    Many of Dr. Vance's Opinions Are Not Relevant or Helpful.**

21       The party proposing an expert witness must demonstrate, among other things, that that the

22   purported testimony "will help the trier of fact to understand the evidence or to determine a fact in

23   issue."  Fed. R. Evid. 702(a).

24

25

26   [5] Dr. Vance's references to some undefined overlap between cybersecurity and law enforcement
     fail for the same reasons.  *See Banga v. Kanios*, No. 16-CV-04270-RS, 2023 WL 1934484, at *1
27   (N.D. Cal. Jan. 24, 2023) (finding that a proposed expert, although "a qualified and experienced
     accountant," was not qualified under Rule 702 to opine on topics such as "entry into, and earnings
28   within, the legal job market" due to lack of *specific* vocational training and experience).

1.   **The Court's Order on Liability Renders Many of Dr. Vance's Opinions Irrelevant.**

Expert testimony that "does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.   On December 20, 2024, the Court resolved "all issues regarding liability" against NSO and directed that trial proceed "on the issue of damages."  (Dkt. No. 494 at 16:1-6.)  Accordingly, a number of the affirmative and rebuttal opinions disclosed by Dr. Vance are no longer relevant to issues of damages or to equitable relief.

This includes Dr. Vance's opinions that WhatsApp changes to its server code interrupted the operation of Pegasus (Vance Opening Report § VI); that NSO circumvented WhatsApp's changes (*id.* § VII); that NSO or its software conducted the May 2019 attacks (*id.* § VIII); that NSO used or tested their products against WhatsApp servers or clients (*id.* § IX); that installation of Pegasus on target devices in May 2019 was for the purpose of extracting information (*id.* § X); that NSO is not authorized to exploit the software or systems of companies like the Plaintiffs (Vance Rebuttal Report § II.E); and that the WhatsApp "platform" was "compromised" (*id.* § III.B).[6]  The plaintiffs themselves have argued that any expert testimony unrelated to issues of damages – such as technical testimony, testimony regarding authorized access, and testimony regarding reverse engineering—is now "irrelevant and unnecessary."  (Dkt. No. 498 at 4-5.)  While meeting and conferring, the plaintiffs conceded that Dr. Vance's opinions may only be necessary to rebut certain testimony from NSO experts.  (*See* Akro. Decl. ¶ 8.)  The plaintiffs, however, have not formally withdrawn any of Dr. Vance's irrelevant opinions that relate solely to issues of liability, so NSO now moves to exclude them.

2.   **Dr. Vance's Opinions on "Hacking" and "Compromising the WhatsApp Platform" Are Both Irrelevant and Prejudicial.**

Assuming that the Court's order on liability did not moot Dr. Vance's technical opinions, his opinions that NSO "hacked" WhatsApp and that it "compromised the WhatsApp platform" should nonetheless be excluded.

---

[6] The opinions in Sections XII and XIII of Dr.Vance's opening report are not relevant to any damages issues to be tried to a jury, but could be relevant to the plaintiffs' entitlement to equitable remedies of disgorgement and injunctive relief.

*First*, the opinions are neither relevant nor helpful to any issue in the case.  The Court only awarded the plaintiffs partial summary judgment on their claim that NSO violated the Computer Fraud and Abuse Act ("CFAA") by exceeding its authorization.  (Dkt. No. 494 at 12:25-27.) Various aspects of that claim require evidence that NSO accessed a computer and obtained or altered information to which it was not entitled, *see* 18 U.S.C. § 1030(e)(6), and that NSO accessed particular areas of computer (such as files, folders, or databases) to which its access did not extend, *see Van Buren v. United States*, 593 U.S. 374, 378 (2021).  Violating use restrictions is not sufficient.  *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012).  Dr. Vance's opinions that the use of Pegasus "compromised" the "WhatsApp platform" (without further assessment of the "individual components" at issue) and that Pegasus could have compromised the WhatsApp servers merely because its use violated the terms of service are thus irrelevant.  (*See* Vance Rebuttal Report § III.B.)

Dr. Vance acknowledged at his deposition that his opinions on "hacking" and "compromise" are not synonymous with liability under the CFAA and that he has no opinion on whether "hacking" falls under the CFAA.[7]  (Vance Tr. 320:14-321:4.)  Dr. Vance was clear that his opinion is that Pegasus constitutes "hacking," which he distinguished from "any claims relative to the CFAA."  (*Id.* 326:4-24.)  More importantly, Dr. Vance acknowledged that there was no evidence that Pegasus "compromised different components of the [WhatsApp] server," but stated that he would still consider the servers compromised "even if different sections of the server were not accessed."  (*Id.* 323:4-324:6.)  His opinions on "hacking" and the "compromise of the WhatsApp platform" are thus so far divorced from the CFAA legal standard that they are neither helpful nor relevant.

*Second*, even assuming that the opinions have some probative value, that value is substantially outweighed by the risk of unfair prejudice (based on the use of the pejorative term "hacking") and the risk of confusing the issues at trial and misleading the jury (e.g., given Dr. Vance's use of the misleading term "compromised," the jurors could mistakenly assume that Dr. Vance was referring to some compensable harm to the server or a related loss, rather than to issues

---

[7] Similar concerns arise from the use of terms such as "authorized" or "unauthorized."  (*Supra* n.4.)

of authorization and access).[8]  *See* Fed. R. Evid. 403; *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995) (determining helpfulness, in part, by comparing probative value and prejudicial effect).

Dr. Vance's opinions regarding "hacking" and the "compromise of the WhatsApp platform" should therefore be excluded.

### 3.    Many of Dr. Vance's Opinions Are Unhelpful to the Trier of Fact, as They Fail to Apply Any Expertise.

Setting aside relevance, expert opinions are "helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion." *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *13 n.8 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016).  An expert opinion that "merely summarizes the record evidence and gratuitously interprets it . . . is not clearly grounded in any expertise at all." *Id.*; *see also Beech*, 51 F.3d at 842 (affirming exclusion of experts who would have testified regarding what could be heard in a tape-recorded conversation because the trier of fact was capable of hearing the tape recording itself); *Howard v. Cty. of Riverside*, 2014 WL 12589650, at *2 (C.D. Cal. May 2014) (excluding expert's "descriptions of evidence" and "summary of . . . witness statements"); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 546-47 (C.D. Cal. 2012) (excluding expert declaration where expert did not "exercise[] independent judgment" and instead "took" another expert's "conclusions, engaged in little, if any, evaluation of their merits, and reproduced [them] wholesale"); Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6273 (2d ed.) ("Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury."). Expert testimony that "merely regurgitates factual information that is better presented directly to

---

[8] To the extent that Dr. Vance's testimony was intended to convey some harm to the Plaintiffs' reputations, or to the reputation of WhatsApp's "platform," it is irrelevant.  The Plaintiffs expressly abandoned all such theories of recovery (both legal and equitable) in order to avoid producing discovery related to their reputations.  (Akro. Decl. ¶ 9.)  Even if Vance's testimony was not *intended* to convey those harms, it still clearly risks confusing the issues at trial and misleading the jury.  Either way, it should be excluded.

the jury" is properly excluded. *See City of Huntington v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2021 WL 1320716, at *2 (S.D.W. Va. Apr. 8, 2021).

Here, a number of Dr. Vance's opinions consist of him merely reviewing and recounting the contents of non-technical email and communications.

*First*, in Section VI of his Opening Report, for example, Dr. Vance reviews a series of non-technical emails (which are cut and pasted into his report) to confirm that NSO would be required to periodically update the relevant versions of Pegasus in response to changes made by WhatsApp.

*Second,* the entirety of Section VII consists of Dr. Vance summarizing or reproducing non-technical email (which is not helpful to the trier of fact) to offer an opinion on NSO's "intention" to circumvent changes made by WhatsApp to its server code (which is not a permissible subject for expert testimony). *See, e.g.*, *Lanard Toys Ltd. v. Anker Play Prods., LLC*, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind.").

*Third*, in Section VIII of his Opening Report, Dr. Vance concludes that the May 2019 attacks were performed by NSO technology – primarily by recounting non-technical testimony and sworn statements from NSO personnel and buttressing his conclusions by cutting and pasting more non-technical email into the body of his report.

*Fourth*, in Section X of his Opening Report, Dr. Vance opines that the purpose of installing Pegasus on the target devices described in the Complaint was to extract information from the devices. To reach that conclusion, he relies heavily on summarized testimony from NSO personnel regarding the general purpose of Pegasus and quotations from marketing documents describing Pegasus' capabilities. A trier of fact would not require expert testimony to understand any of this evidence.

*Fifth*, in Section XII of his Opening Report, Dr. Vance attempts to attribute "suspicious activity" after May 2019 to NSO. His opinion is based in large part on analysis performed by "Plaintiffs' engineers," which Dr. Vance relies on without any attempt at independent verification. The portions of his opinion that rely on the work of other potential experts or technical witnesses, without any evaluation of the merits, should be excluded. *See Cholakyan*, 281 F.R.D. at 546-47.

*Sixth*, in Section XIII of his Opening Report, Dr. Vance opines that NSO is "likely to target WhatsApp or Plaintiffs' other products in the future." He reaches this conclusion by cutting and pasting, and then interpreting, a handful of non-technical NSO communications and quotations that NSO personnel provided in press interviews. (*See* Vance Opening Report § XIII.) None of these materials are technical in nature, such that a trier of fact would require expert assistance to consider them.

Indeed, in forming his opinion on NSO's future intentions, Dr. Vance does not apply any particular expertise. He does not apply his purported expertise in "cybersecurity" to determine whether WhatsApp and Facebook's knowledge of NSO (and its methodologies, associated IP addresses, etc.) would make it more or less likely for NSO to "target" WhatsApp in the future. He does not apply any supposed "business" expertise to conduct a market analysis demonstrating whether NSO's existing products are sufficient to compete in the marketplace for lawful-intercept technologies without an installation vector that makes use of WhatsApp (or any other product or application). Nor does Dr. Vance apply any supposed "law enforcement, military, or intelligence" expertise to assess whether an installation vector making use of WhatsApp would continue to be important to NSO's government customers in their investigations or whether WhatsApp and Facebook's familiarity with NSO's technologies would present insurmountable concerns about operational security to those government agencies.

Furthermore, to the extent that Dr. Vance intends to testify about NSO's intent or motives, such testimony is not permissible. *See Lanard*, 2020 WL 6873647, at *7. Because Dr. Vance is not relying on any "personal knowledge of the internal motivation for any of the Defendant's actions," he has no more basis for opining on that motivation than the jury. *See Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *8 (N.D. Ill. May 17, 2012); *Smith v. Wyeth-Ayerst Lab'ys Co.*, 278 F. Supp. 2d 684, 700 (W.D.N.C. 2003) (holding that expert testimony on "corporate intent" is "inadmissible" because "the question of intent is to be determined by the jury, not experts"). Given that Section XIII consists of Dr. Vance gratuitously interpreting non-technical evidence, that he does not apply any discernable expertise to reach his opinion, and that the ultimate

subject of his opinion is barred, the proposed testimony set forth in Section XIII of his Opening Report should be excluded.

*Seventh*, in Sections II.D.2 and III.F of his Rebuttal Report, Dr. Vance offers opinions regarding NSO's placement on the U.S. Department of Commerce's Entity List, an executive order dealing with commercial spyware, and U.S. Treasury Department sanctions. With respect to the Entity List, Dr. Vance admitted that he was drawing on public reporting and that his opinion on the associated legal implications was actually "a quote from a New Yorker article." (Vance Tr. 333:18-334:16.) With respect to the executive order, Dr. Vance did not interpret or analyze the order himself; rather he conceded that he was merely citing the White House's press release about the executive order. (*See id.* 278:11-23, 286:13-22.) His discussion of sanctions issued by the U.S. Treasury Department is similarly limited to quoting government press releases. (Vance Rebuttal Report § III.F & n.121.) Dr. Vance's attempts to adopt the hearsay statements or legal opinions of third parties, without any additional expert analysis of his own, are improper and his opinions on the Entity List, the Executive Order, and the Treasury Department press release should be excluded. *See Howard*, 2014 WL 12589650, at *2; *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 546-47 (C.D. Cal. 2012) Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6273 (2d ed.) ("Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury.").

Furthermore, in his final rebuttal opinion, Dr. Vance cites all three U.S. government actions as evidence that the "United States appears to share [his] view . . . that imposing liability on commercial spyware vendors would [not] somehow harm the interests of U.S. law enforcement and terrorism." (Vance Rebuttal § III.F.) Dr. Vance should not be permitted to testify to the U.S. government's views, intents, or motives, absent some personal knowledge of the U.S. government's internal motivations. *See Baldonado*, 2012 WL 1802066, at *8.

For all these reasons, Dr. Vance's opinions described above should be excluded or limited to the admissible portions that reflect his actual application of some qualifying expertise.

1          **C.        Many of Dr. Vance's Opinions Are Unreliable or Otherwise Improper.**

2          Finally, the Court must ensure that any expert testimony is "based on sufficient facts or

3    data," that "the testimony is the product of reliable principles and methods," and that "the expert's

4    opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed.

5    R. Evid. 702(b)-(d).   The Court's gatekeeping function exists to ensure that an expert witness

6    "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an

7    expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). To this

8    end, the Court must conduct a "holistic" analysis of the expert's testimony for "overall sufficiency

9    of the underlying facts and data, and the reliability of the methods, as well as the fit of the methods

10   to the facts of the case." *United States v. W.R. Grace*, 504 F.3d 745, 762, 765 (9th Cir. 2007).

11   Should the proposed testimony fail to satisfy these standards, the Court can and should exclude

12   it.  *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

13                 **1.        Dr. Vance's Opinions Regarding the Data Sources Available to Law**

14                         **Enforcement Are Not Based on Facts or Data.**

15          In Section II.A.2 of his Rebuttal Report, Dr. Vance opines that "[l]aw enforcement has

16   ample alternative data sources," even without access to the communications sent over encrypted

17   services like WhatsApp's.  Dr. Vance then identifies a list of potential data sources available to law

18   enforcement.  (*See* Vance Rebuttal Report § II.A.2.)  Dr. Vance's opinions in this regard are not

19   supported by any appreciable facts or data.  He admittedly has no specialized experience in law

20   enforcement on which he can draw to support such an opinion, unlike NSO's former expert Jay

21   Town and its proposed expert Joshua Minkler.  (*See* Vance Tr. 130:1-12, 130:14-21, 131:13-20.).

22   Nor does Dr. Vance's report cite any facts or data in support of his opinions.  (*See* Vance Rebuttal

23   Report § II.A.2.)  Accordingly, the plaintiffs cannot satisfy their burden that Dr. Vance's opinion

24   is reliable.

25                 **2.        Dr. Vance's Opinion That the Plaintiffs Respond to "All" Lawful**

26                         **Requests for Data Is Not Reliable.**

27          In Section II.B of his Rebuttal Report, Dr. Vance opines that the "Plaintiffs Comply with

28   *All* Lawful Government Data Requests" (emphasis added).  His report does not disclose any

1   methodology for forming his opinion, beyond reviewing two documents prepared by Meta and

2   WhatsApp, respectively. (*See* Vance Rebuttal Report § II.B.)  It does not appear that Dr. Vance

3   independently requested data from Meta or WhatsApp to verify how many government requests

4   for data they receive, verified which requests were lawful, or verified that any requests to which

5   the plaintiffs did not respond were not lawful (i.e., that the plaintiffs otherwise responded to *all*

6   *lawful* requests). (*See id.*)  Instead, he selectively quotes from two documents prepared by

7   Plaintiffs. (*See id.*)  Although an expert may rely on some unverified or inaccurate information

8   from their client, "assumptions based on conclusory statements of the expert's client, rather than

9   on the expert's independent evaluation are not reasonable." *Grasshopper House, LLC v. Clean &*

10  *Sober Media LLC*, No. 218CV00923SVWRAO, 2019 WL 12074086, at *3 (C.D. Cal. July 1, 2019)

11  (cleaned up).

12      Furthermore, the two documents cited do not provide sufficient facts or data for Dr. Vance's

13  opinions.

14      With respect to Meta, Dr. Vance quotes a public Meta transparency post. (Vance Rebuttal

15  Report § II.B & n.21.)  The Meta document cited makes clear that Meta, in addition to reviewing

16  for legal sufficiency, may "reject or require greater specificity on requests" it determines are

17  "overly broad or vague." (*Id.*)  Accordingly, the materials reviewed by Dr. Vance indicate that

18  Meta may only comply with "some" of the government's request, and it provides no responsive

19  data whatsoever in nearly a quarter of cases. (Vance Rebuttal Report § II.B n.21 (citing

20  https://transparency.meta.com/reports/government-data-requests).  Dr. Vance does not provide any

21  analysis of the undetermined number of cases in which Meta arbitrarily limits a government request

22  and does not provide any analysis of the nearly 25 percent of requests that Meta declined to answer

23  at all—or what "data" Meta provides in cases where it provides any. (Vance Rebuttal Report §

24  II.B.)  Accordingly, the facts and data on which Dr. Vance relies do not support (and in fact directly

25  contradict) his opinion that Meta responds to "all" lawful government requests for data.

26      With respect to WhatsApp, Dr. Vance again cites only a single public webpage. (*See id.* &

27  n.22.)  The page provides no information about the number of requests that WhatsApp receives or

28  how many responses it sends. (*See id.* (citing https://faq.whatsapp.com/1206094619954598)).  Dr.

1    Vance also acknowledges in his rebuttal report that neither Meta nor WhatsApp comply with any

2    government request (lawful or not) for the content of WhatsApp users' messages.  (Vance Rebuttal

3    Report § II.B.)   Thus, Dr. Vance cites no support whatsoever for his opinion that WhatsApp

4    complies with "all" lawful government requests for data.

5         As a result, the plaintiffs cannot carry their burden of proving that Dr. Vance's opinion in

6    Rebuttal Section II.B is supported by a sufficient basis, was obtained using a reliable method, or

7    reflects a reliable application of any such method to the facts of the case.  *See* Fed. R. Evid. 702(b)-

8    (d).  The opinions must therefore be excluded.

9              **3.      Dr. Vance's Opinion That the Harms of Pegasus Outweigh the Benefits**

10                       **Is Not Reliable.**

11        In Section II.D.1 of his Rebuttal Report, Dr. Vance opines that "the harms caused by

12   Pegasus outweigh any supposed benefits."  His opinions, however, are not based on sufficient data

13   or on any discernable, reliable methodology.

14        First, despite purporting to weigh the benefits and harms of Pegasus, Dr. Vance made no

15   attempt to identify or quantify any of the legitimate and beneficial uses of the technology.  He

16   testified that identifying such legitimate, beneficial uses was beyond the scope of his testimony and

17   his report.  (Vance Tr. 151:14-154:1; 222:4-12.)  This alone renders any opinion about the *weight*

18   of such benefits, as compared to any harms, unsupported and unreliable.

19        Second, Dr. Vance applied no objective methodology for identifying and quantifying any

20   perceived harms.  His report cherry picks press reports of Pegasus being used to monitor "members

21   of civil society."  (*See* Vance Rebuttal Report § II.D.1.)  But Dr. Vance has made no attempt to

22   estimate or catalogue the total number of purported "misuses" in any objective fashion, in part

23   because he admitted that he was not qualified to offer an opinion on whether any particular use of

24   Pegasus was lawful or not.  (Vance Tr. 223:5-224:2.)

25        Third, Dr. Vance did not establish any objective criteria for his "weighing" process.  He

26   was unable to say if the benefits of Pegasus would outweigh the harms if it was used lawfully or

27   legitimately in 99 percent or even in 99.9 percent of cases.  (*Id.* 267:19-268:21.)  He also testified

28

MOTION TO EXCLUDE OPINIONS OF A. VANCE                          Case No. 4:19-cv-07123-PJH

1  that data about "the use of Pegasus" and the "outcomes of Pegasus" were "outside the scope of his

2  report." (*Id.* 262:11-17.)

3      Given Dr. Vance's deliberate failure to identify any benefits of Pegasus, his lack of

4  objective methodology for determining any harms, and his lack of objective criteria for weighing

5  the two, his ultimate opinions are not based on sufficient data and were not generated using any

6  sort of reliable methodology.  Accordingly, Dr. Vance's subjective opinions regarding the benefits

7  and harms of Pegasus, or their respective weights, should be excluded.  *See Daubert*, 509 U.S. at

8  590 (holding that an expert's "knowledge" must amount to more than "subjective belief or

9  unsupported speculation").

10     **4.      Dr. Vance's Opinions Regarding the Executive Order Cited in His**

11              **Rebuttal Report Are Not Reliable.**

12     In Rebuttal Sections II.D.2, III.F, and throughout his Rebuttal Report, Dr. Vance offers

13  opinions regarding an executive order that the Biden Administration issued in connection with

14  commercial spyware.  (*See, e.g.*, Vance Rebuttal Report § II.D.2.)  Setting aside his lack of any

15  legal expertise, his opinion must also be based on sufficient facts and data.  *See* Fed. R. Evid.

16  702(b).  As recent amendments to Rule 702 make clear, the initial inquiry into sufficiency affects

17  the admissibility of the opinion itself, not just its weight.  *See id.*, Advisory Committee Notes to

18  2023 Amendments (rejecting cases concluding "that arguments about the sufficiency of an expert's

19  basis always go to weight and not admissibility").

20     Here, Dr. Vance offers an unambiguous opinion that the executive order in question "barred

21  commercial spyware generally."  (Vance Rebuttal Report § II.D.2.)  He then uses the executive

22  order to rebut an opinion from NSO expert Jay Town that Pegasus or similar software could be

23  lawfully deployed by American law enforcement.  (*See id.*)  None of Dr. Vance's opinions,

24  however, are based on the *actual executive order*.  (*See* Vance Tr. 284:6-7 ("I don't cite the

25  executive order in my report.").)  Indeed, the executive order is not listed among the materials that

26  Dr. Vance considered when forming his opinions.  (*See* Vance Rebuttal Report App. A.)  Instead,

27  Dr. Vance cites to a White House *press release* about the order.  (*See* Vance Rebuttal Report

28  § II.D.2 n.65.)  When confronted with the actual executive order at his deposition, Dr. Vance

1    admitted that "[i]t does not bar spyware as a category." (Vance Tr. 285:8-17.) Moreover, because

2    he did not cite the actual order, Dr. Vance's admitted that he did not assess any of the factors set

3    forth in the order to determine whether it would be applicable to NSO or to Pegasus.[9] (*Id.* 286:13-

4    22.)

5          Dr. Vance cannot be permitted to introduce expert opinions about an executive order that

6    he has not actually cited or analyzed. Certainly, no expert in the legal field would offer an opinion

7    about a legal document without having read the actual document first. *See Kumho Tire Co.*, 526

8    U.S. at 152.

9          **5.     Dr. Vance's Opinions Regarding the Sufficiency of Pegasus' Safeguards**

10         **Are Not Reliable.**

11         In Section II.D.4 of his Rebuttal Report, Dr. Vance opines that the "safeguards and policies

12   of Pegasus are insufficient." His report, however, sets forth no reliable methodology for making

13   that determination. Dr. Vance does not identify any industry standards or practices for establishing

14   safeguards. (*See* Vance Rebuttal Report § II.D.4.) When asked what "guardrails for spyware" he

15   would propose, he refused to answer the question as "outside the scope of [his] report." (Vance Tr.

16   283:18-284:1.) Even if Dr. Vance had identified appropriate safeguards for products similar to

17   Pegasus, he would be unable to evaluate NSO's compliance with those benchmarks. When

18   deposed, Dr. Vance admitted that he did not review any of the limitations that NSO imposes on its

19   government customers. (*Id.* 219:23-220:10.) He also claimed that end user license certifications,

20   one of the safeguards that NSO and the Government of Israel employ, were "not the focus of [his]

21   report." (*Id.* 220:11-15, 221:3-6.) Accordingly, Dr. Vance's opinion that NSO's safeguards are

22   somehow insufficient is not based on sufficient data and was not the result of a reliable

23   methodology. It should therefore be excluded.

24

25

26

27

28   ───────────────
     [9] Because Vance failed to determine whether the order was actually applicable to NSO, his opinions
     are also irrelevant and his references to the order are unduly prejudicial.

IV.   **CONCLUSION**

For the foregoing reasons, NSO respectfully requests that its motion be granted and that the Court exclude or limit the opinions in Dr. Vance's opening report and rebuttal reports as set forth above.

Dated: January 9, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*

MOTION TO EXCLUDE OPINIONS OF A. VANCE                    Case No. 4:19-cv-07123-PJH