Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
          antonio.perez@davispolk.com
          gina.cora@davispolk.com
          craig.cagney@davispolk.com
          luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GREGORY A. PINSONNEAULT**<br><br>Date:   February 13, 2024<br>Time:   1:30 p.m.<br>Ctrm:  3<br>Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

**[PUBLIC REDACTED VERSION]**

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

BACKGROUND ...........................................................................................................................2

    I.    Mr. Pinsonneault's Background.................................................................................2

    II.    Plaintiffs Serve Damages Expert Reports..................................................................2

    III.    Mr. Pinsonneault's Opinions ...................................................................................3

        A.    Mr. Pinsonneault's Opinions Regarding Plaintiffs' Labor Costs ...................3

        B.    Mr. Pinsonneault's Opinions Regarding NSO Profits Derived From Its Illegal Covert Android Exploit ....................................................................4

LEGAL STANDARD.....................................................................................................................5

ARGUMENT ................................................................................................................................5

    I.    Mr. Pinsonneault's Opinions Regarding the Proper Measure of "Actual Damages" Should Be Excluded ...............................................................................5

        A.    Mr. Pinsonneault Cannot Offer Legal Conclusions as to the Proper Measure of Compensatory Damages ............................................................6

        B.    Mr. Pinsonneault Lacks Expertise To Opine That Certain Labor Costs Should Be Excluded...................................................................................8

    II.    Mr. Pinsonneault's Opinion Regarding The Amount of NSO's Illegal Profits Should Be Excluded.................................................................................13

        A.    Mr. Pinsonneault Uses an Unreliable Methodology To Estimate the Amount That NSO Spent on Covert Android-Related Research and Development ..............................................................................................14

        B.    Mr. Pinsonneault Lacks Sufficient Facts and Data To Estimate the Number of Employees Who Worked on Covert Android-Related Research and Development............................................................................15

CONCLUSION...........................................................................................................................18

i

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GREGORY A. PINSON-NEAULT - CASE NO. 4:19-CV-07123-PJH

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69*,
    815 F.3d 1195 (9th Cir. 2016) ................................................................................ 9

*Am. Transp. Sys., Inc. v. Prevost Car US Inc.*,
    2024 WL 5185314 (C.D. Cal. Oct. 9, 2024) ........................................................ 16

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    2013 WL 5955666 (N.D. Cal. Nov. 6, 2013) .......................................................... 8

*Banga v. Kanios*,
    2021 WL 4133754 (N.D. Cal. Sept. 10, 2021) ...................................................... 11

*Barber v. United Airlines, Inc.*,
    17 F. App'x 433 (7th Cir. 2001) .......................................................................... 16

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*,
    853 F. Supp. 2d 181 (D. Mass. 2012) *aff'd sub nom.*
    *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
    752 F.3d 82 (1st Cir. 2014) .................................................................................. 16

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
    923 F. Supp. 2d 1245 (S.D. Cal. 2013) ................................................................ 15

*Calico Brands, Inc. v. Ameritek Imps., Inc.*,
    2007 WL 9658317 (C.D. Cal. Nov. 27, 2007) ........................................................ 8

*In re Conagra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) .......................................................................... 11

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) .............................................................................. 16

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ............................................................................... 5, 10, 12

*GPNE Corp. v. Apple, Inc.*,
    2014 WL 3870256 (N.D. Cal. Aug. 6, 2014) ........................................................ 11

*Grodzitsky v. Am. Honda Motor Co.*,
    957 F.3d 979 (9th Cir. 2020) ................................................................................ 14

*Gunaratna v. Dennis Gross Cosmetology LLC*,
    2023 WL 2628620 (C.D. Cal. Mar. 15, 2023) ........................................................ 8

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) .................................................................................. 6

*Harbor Compliance Corp. v. Firstbase.Io, Inc.*,
    2024 WL 1442165 (E.D. Pa. Apr. 3, 2024) ............................................................ 7

ii

*Highfields Cap. I, LP v. SeaWorld Ent., Inc.*,
   2022 WL 1037210 (S.D. Cal. Mar. 25, 2022) ........................................... 7

*Hsin Lin v. Solta Med., Inc.*,
   2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) ......................................... 15

*Lantec, Inc. v. Novell, Inc.*,
   306 F.3d 1003 (10th Cir. 2002) ............................................................ 16

*LinkCo, Inc. v. Fujitsu Ltd.*,
   2002 WL 1585551 (S.D.N.Y. July 15, 2002) ............................................. 7

*McMillan v. Weeks Marine, Inc.*,
   478 F. Supp. 2d 651 (D. Del. 2007) ...................................................... 11

*Mighty Enters. v. She Hong Indus. Co.*,
   745 F. App'x 706 (9th Cir. 2018) ......................................................... 11

*Mullins v. Premier Nutrition Corp.*,
   178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) .............................................. 12

*NetFuel, Inc. v. Cisco Sys.*,
   2020 WL 1274985 (N.D. Cal. Mar. 10, 2020) .......................................... 14

*Pavo Sols. LLC v. Kingston Tech. Co.*,
   2019 WL 8138163 (C.D. Cal. Nov. 20, 2019), *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022) .............. 10

*In re Ripple Labs, Inc. Litig.*,
   2024 WL 4583525 (N.D. Cal. Oct. 24, 2024) ............................................ 5

*Siring v. Or. State Bd. of Higher Educ.*,
   927 F. Supp. 2d 1069 (D. Or. 2013) ...................................................... 10

*Stephens v. Union Pac. R.R. Co.*,
   935 F.3d 852 (9th Cir. 2019) ......................................................... 5, 15

*TAKTL, LLC v. IWR, N. Am., LLC*,
   2024 WL 4415194 (W.D. Pa. Oct. 4, 2024) .............................................. 7

*United States v. Cerna*,
   2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) ......................................... 12

*United States v. Diaz*,
   876 F.3d 1194 (9th Cir. 2017) ............................................................ 6

*United States v. Duncan*,
   42 F.3d 97 (2d Cir. 1994) ................................................................. 6

*United States v. Hankey*,
   203 F.3d 1160, 1168 (9th Cir. 2000) .................................................... 12

*United States v. Middleton*,
   231 F.3d 1207 (9th Cir. 2000) ............................................................ 7

*United States v. Tin Yat Chin*,
   371 F.3d 31 (2d Cir. 2004) ............................................................... 16

iii

*United States v. Valencia-Lopez*,
   971 F.3d 891 (9th Cir. 2020) ............................................................................. 12

*Wendell v. GlaxoSmithKline L.L.C.*,
   858 F.3d 1227 (9th Cir. 2017) ..................................................................... 13, 14

*White v. Ford Motor Co.*,
   312 F.3d 998 (9th Cir. 2002) ............................................................................... 8

*Zimmer Surgical, Inc. v. Stryker Corp.*,
   365 F. Supp. 3d 466 (D. Del. 2019) .................................................................. 10

### STATUTES & RULES

Fed. R. Civ. P. 26(e) ......................................................................................................... 3

Fed. R. Evid. 702 ........................................................................... 5, 8, 10, 12, 13, 15, 16

Fed. R. Evid. 703 ............................................................................................................. 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY

PLEASE TAKE NOTICE THAT, on February 13, 2025 at 1:30 p.m. in Courtroom 3 of the U.S. District Court for the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. will and hereby do move to exclude portions of the expert testimony of Gregory A. Pinsonneault. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Micah G. Block and all exhibits thereto, the pleadings and papers on file in this action, and on such other written and oral argument as may be presented to the Court.

v

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GREGORY A. PINSONNEAULT - CASE NO. 4:19-CV-07123-PJH

## MEMORANDUM OF POINTS AND AUTHORITIES

On December 20, 2024, this Court granted Plaintiffs WhatsApp LLC and Meta Platforms, Inc.'s ("Plaintiffs") motion for partial summary judgment and ruled that Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. ("NSO") were liable on all of Plaintiffs' claims. *See* Dkt. No. 490. The Court then scheduled a trial solely on the issue of the proper damages, which is scheduled to commence on March 3, 2025. At this damages-only trial, NSO will rely on the testimony of Gregory A. Pinsonneault, its damages expert. Certain aspects of Mr. Pinsonneault's testimony improperly attempt to rehabilitate NSO's failures to comply with its discovery obligations and relitigate the Court's ruling on liability. The Court should exclude Mr. Pinsonneault from offering testimony in support of these opinions to ensure that the scope of his testimony complies with the requirements of Federal Rule of Evidence 702 and *Daubert*.

*First*, the Court should exclude Mr. Pinsonneault's legal opinions regarding the addressable scope of compensatory damages. Plaintiffs' damages expert has calculated ███████████ ██████████████████████████. Mr. Pinsonneault is free to offer alternative calculations but should not be permitted to ████████████████████████████████ ████████████████ These are improper legal opinions that invade the exclusive province of this Court and the jury.

*Second*, Mr. Pinsonneault should not be permitted to weave into his testimony opinions about topics unrelated to damages and outside his expertise. Throughout the course of his expert report, Mr. Pinsonneault purports ███████████████████████████████ ██████████████████████. Mr. Pinsonneault lacks any qualifications to offer expert opinions on these topics, and such testimony should therefore be excluded.

*Third*, the Court should exclude Mr. Pinsonneault's opinion regarding ████████████ ████████. This Court has already concluded that NSO failed to comply with its discovery obligations; one aspect of NSO's failure was its refusal to produce detailed financial information. Mr. Pinsonneault attempts to take unfair advantage of the evidentiary gap NSO created by inventing a methodology to estimate NSO's profits from its unlawful conduct directed at WhatsApp. Mr. Pinsonneault's methodology—████████████████████████—lacks any indicia of

reliability, ignores key evidence in the record, and relies on cherry-picked information on issues which NSO improperly withheld discovery from Plaintiffs. The Court should prevent Mr. Pinsonneault from offering this testimony to the jury.

At bottom, the Court should permit Mr. Pinsonneault to offer only those opinions that rely on his expertise and a sound methodology. The portions of Mr. Pinsonneault's proposed testimony that stray past these clearly established lines should be excluded. These portions include, but are not limited to: Mr. Pinsonneault's opinions on Plaintiffs' labor costs (Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 47–67); Mr. Pinsonneault's opinions on NSO's profits subject to disgorgement (*Id.* ¶¶ 114–127, Dkt. No. 490-4, Ex. D (Pinsonneault Second Supp. Rep.), ¶¶ 18–23); and Mr. Pinsonneault's opinions regarding restricted stock units (*see* Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 278:11–14; 281:9–18).

## BACKGROUND

### I.  Mr. Pinsonneault's Background

Mr. Pinsonneault is the managing director and chief executive officer of LitiNomics, Inc., a financial and economic consulting firm that primarily focuses on litigation consulting. Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) 487-5 ¶ 4; Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 53:5–54:1. Mr. Pinsonneault's work has focused on litigation consulting for over two decades. Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 6; Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 54:2–17.

### II.  Plaintiffs Serve Damages Expert Reports

On August 30, 2024, Plaintiffs served the affirmative expert report of their damages expert, Dana Trexler (the "Trexler Report"). *See* Dkt. No. 487-3. The Trexler Report calculated ██████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████ After Ms. Trexler submitted her initial report, Plaintiffs deposed Sarit Bizinsky Gil, NSO's corporate representative witness on damages issues, which provided insight into a document that NSO had produced just days before the expert report deadline. In light of this new

information, Ms. Trexler submitted a supplemental report (the "Trexler Supplemental Report"), which included a revised estimate of ██████████████████████████████████.[1]

## III.    Mr. Pinsonneault's Opinions

Mr. Pinsonneault has submitted three expert reports in this matter.[2]  Throughout these reports, Mr. Pinsonneault raises numerous disagreements with Ms. Trexler and offers his own affirmative opinions. As detailed below, Plaintiffs now seek to exclude certain of Mr. Pinsonneault's opinions.

### A.  Mr. Pinsonneault's Opinions Regarding Plaintiffs' Labor Costs

Mr. Pinsonneault opines that Plaintiffs' █████████████████████ ███████████, Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 67, lower than the ██████ ██████████████. Dkt. No. 487-3 ¶ 86.  Mr. Pinsonneault arrives at this lower number because he believes that Ms. Trexler's ████████████████████████████████████████████████ ████████████████████████████████████████████████ Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) at 21.

Mr. Pinsonneault offers three reasons ███████████████████████████.  First, he ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████ Id. ¶ 49.  Second, Mr. Pinsonneault opines that █████████████████ ██████████████████████████████████████████████████████ ██████████ Id. ¶¶ 55–63. Third, he opines that █████████████████

---

[1]  The procedural history underpinning the expert reports in this case is set forth in greater detail in Plaintiffs' motion to strike the second supplemental report of Mr. Pinsonneault.  Dkt. No. 490-3.

[2]  NSO served Mr. Pinsonneault's initial rebuttal report on September 21, 2024.  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.).  NSO  then served Mr. Pinsonneault's supplemental report on November 8, 2024.  Dkt. No. 490-4, Ex. B.  NSO later served Mr. Pinsonneault's second supplemental report on November 21, 2024.  Dkt. No. 490-4, Ex. D.  Plaintiffs have moved to strike Mr. Pinsonneault's second supplemental report as untimely and beyond the allowed scope of a supplemental report under Federal Rule of Civil Procedure 26(e).  See Dkt. No. 490-3.

1 ██████████████████████████████████. *Id.* ¶ 65.  Mr. Pinsonneault calculates

2 that these exclusions reduce ███████████████████████. *Id.* ¶ 67.

3         Mr. Pinsonneault offers other critiques of Ms. Trexler's calculation of █████████

4 but does not calculate the impact of these criticisms.  For example, he opines ████████████

5 ████████████████████████████████████████████████████████████████

6 █████████ *Id.* ¶ 51.  Mr. Pinsonneault ████████████████████████████████.

7 He also states ██████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████████

9 *Id.* ¶ 54.

10         **B.  Mr. Pinsonneault's Opinions Regarding NSO Profits Derived From Its Illegal Cov-**

11             **ert Android Exploit**

12         Mr. Pinsonneault also offers opinions ██████████████████████████████

13 █████████████, which NSO used to access WhatsApp's servers and deliver Pegasus spyware

14 to WhatsApp users' devices.  *See id.* ¶ 91.  To calculate ██████████████████████, Mr.

15 Pinsonneault purports to █████████████████████████████████████████████████

16 █████████████████████ that NSO disclosed on August 26, 2024, four days before Plain-

17 tiffs were required to serve affirmative expert reports.  Dkt. No. 487-3 ¶ 8 n.5; *see* Dkt. No. 487-4.

18         The first step in Mr. Pinsonneault's calculations is determining the appropriate period in

19 which to calculate NSO's profits subject to disgorgement.  ████████████████████████

20 ████████████████████████████████████████████████████████████████

21 Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 97.  In his supplemental report, Mr. Pinsonneault

22 criticized Ms. Trexler for ██████████████████████████████████████████████.

23 Dkt. No. 490-4, Ex. B (Pinsonneault Supp. Rep) ¶¶ 13–14.  In his second supplemental report, Mr.

24 Pinsonneault ██████████████████████████████████████████████████████

25 ████████████████████████████████████████████ Dkt. No. 490-4, Ex. D

26 (Pinsonneault Second Supp. Rep.) ¶ 6.

27

28

1    For each time period, Mr. Pinsonneault ████████████████████████████████

2    ██████████████████████████████████ Mr. Pinsonneault applies ███████████████

3    ███████████████████████████████████████████████████████████████████████

4    ███████████████████████████████████████████ *See, e.g.*, Block Decl. Ex. B (Pinson-

5    neault Rebuttal Rep.) at Figure 16 and Schedule 2.0, n. a, b. ████████████████████

6    ███████████████████████████████████████████████████████████████████████

7    █████████████████████ *Id.* ¶ 124.

## LEGAL STANDARD

The proponent of expert testimony bears the burden of establishing the testimony's admissibility by a preponderance of the evidence, including that: "(1) the expert's scientific, technical, or other special knowledge will help the trier of fact understand the evidence or determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). As the gatekeepers of the admissibility of expert testimony, courts must first determine whether the testimony is reliable and trustworthy and then decide whether it is relevant to the task at hand. *In re Ripple Labs, Inc. Litig.*, 2024 WL 4583525, at *1 (N.D. Cal. Oct. 24, 2024). The court may look to many factors to determine reliability, including whether an expert has adequately accounted for obvious alternative explanations, *id.* at 2, or whether the expert's opinion rests on "facts or data in the case that the expert has been made aware of or personally observed," not merely assumptions and speculation. *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856–57 (9th Cir. 2019).

## ARGUMENT

**I.**   ██████████████████████████████████████████████████████

██████████████████████████

In her report, Ms. Trexler calculates █████████████████████████████████

███████████████████████████████ Dkt. No. 487-3 ¶ 50. Ms. Trexler states

that ██████████████████████████████████████████████████████████████████

██████████████████████████████ *Id*. ¶ 48.  In response to Ms. Trexler's opinion, Mr. Pinson-

neault challenges certain aspects of Ms. Trexler's calculations.  *See* Block Decl. Ex. B (Pinsonneault

Rebuttal Rep.) ¶¶ 55–62 ████████████████████████████████████████████████████

████.  However, Mr. Pinsonneault also goes further and ███████████████████████████

█████████████ *Id*. ¶¶ 47–54.  In doing so, Mr. Pinsonneault exceeds the scope of an expert witness

and goes outside the bounds of his own economics expertise.  The Court should strike these opinions

and only allow the jury to consider Mr. Pinsonneault's disagreements with Ms. Trexler's calculation

of labor costs.

   **A.  Mr. Pinsonneault Cannot Offer Legal Conclusions as ███████████████████**

   **████████████████████**

   The Ninth Circuit "has repeatedly affirmed that 'an expert witness cannot give an opinion as

to her legal conclusion, i.e., an opinion on an ultimate issue of law.'"  *United States v. Diaz*, 876 F.3d

1194, 1197 (9th Cir. 2017) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998,

1016 (9th Cir. 2004)).  "This prohibition of opinion testimony on an ultimate issue of law recognizes

that, '[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in

making a decision, but rather attempts to substitute the expert's judgment for the jury's.'"  *Id.*  (quot-

ing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).  "Similarly, instructing the jury as to

the applicable law is the distinct and exclusive province of the court."  *Hangarter*, 373 F.3d at 1016.

Mr. Pinsonneault violates this rule in two ways.

   *First*, Mr. Pinsonneault ████████████████████████████████████████████████

████████████████████████████████████████████████████████████.  As a

threshold matter, Mr. Pinsonneault is wrong.  Contrary to Mr. Pinsonneault's suggestion, ██████

████████████████████████████████████████████████.  Block Decl.

Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 48–49.  The Computer Fraud and Abuse Act ("CFAA") de-

fines loss to include "any reasonable cost to any victim, including the cost of responding to an of-

fense, conducting a damage assessment, and restoring the data, program, system, or information to

its condition prior to the offense."  18 U.S.C. § 1030(e)(11).  Plaintiffs' notification of victims, which

allowed Plaintiffs to gather additional technical information regarding NSO's attack, fits comfortably within courts' interpretation of this definition. *See, e.g.*, *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008) ("where the offender has actually accessed protected information, discovering who has that information and what information he or she has is essential to remedying the harm").

In any event, the question of ███████████████████████████████████████████ ████████████████████████████ not for Mr. Pinsonneault. A damages expert cannot ██████ ██████████████████████████████████████ Such opinions are "attorney argument dressed up as an expert opinion," which "must be excluded." *Lin v. Solta Medical, Inc.*, 2024 WL 5199905, at *12 (N.D. Cal. Dec. 23, 2024); *see Highfields Cap. I, LP v. SeaWorld Ent., Inc.*, 2022 WL 1037210, at *12 (S.D. Cal. Apr. 6, 2022) (excluding damages opinion "at least in part based upon the premise that Plaintiffs had a duty to mitigate damages"); *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *3 (S.D.N.Y. July 16, 2002) (barring damages expert from testifying about proper theory of damages). Similarly, damages experts cannot opine on whether plaintiffs have provided a sufficient factual basis to establish their damages. *See, e.g.*, *TAKTL, LLC v. IWR, N. Am., LLC*, 2024 WL 4415194, at *8 (W.D. Pa. Oct. 4, 2024) (excluding testimony that plaintiffs had not "establish[ed] reasonable certainty that a damage even occurred"); *Harbor Compliance Corp. v. Firstbase.io, Inc.*, 2024 WL 1442165, at *14 (E.D. Pa. Apr. 3, 2024) (excluding testimony that plaintiffs "failed in proving damages with 'reasonable certainty'").

*Second*, Mr. Pinsonneault improperly opines that ████████████████████████████ ██████████████████████████████████████ In his report, Mr. Pinsonneault states that ██████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 50. Later, Mr. Pinsonneault claims that ███████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████ *Id.* ¶ 54. Mr. Pinsonneault's opinion is an impermissible legal opinion.

7

The Ninth Circuit evaluated—and rejected—the precise argument that Mr. Pinsonneault advances.  In *United States v. Middleton*, the defendant charged with violating the CFAA argued that there was no evidence that an employee "was diverted from his other responsibilities or that such a diversion caused [the victim company] a financial loss."  231 F.3d 1207, 1214 (9th Cir. 2000).  The Ninth Circuit rejected this argument and found that these labor costs were properly considered damages under the CFAA, reasoning that the victim "would have had to pay a similar amount had it hired an outside contractor to repair the damage."  *Id.*  "[B]eing versed in the case law is not likely to provide any tangible benefit to the expert, because he is precluded from offering an opinion about the law." *Calico Brands, Inc. v. Ameritek Imports, Inc.*, 2007 WL 9658317, at *2 (C.D. Cal. Nov. 27, 2007).  The fact that Mr. Pinsonneault misstates the law is yet another reason to exclude his opinion.

**B.  Mr. Pinsonneault Lacks Expertise To Opine ███████████████████████ ████████**

Mr. Pinsonneault is not qualified to give certain opinions about ████████████████ ███████ because those opinions exceed the scope of his own expertise.  As described above, Mr. Pinsonneault opines (1) ███████████████████████████████████████████████ ██████ Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 49, (2) █████████████████ ████████████████████████████ *id.* ¶ 54, and (3) ████████████████████ █████████████████████████████████ Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 278:11–14; 281:9–18.  Yet by Mr. Pinsonneault's own admissions, he lacks the expertise necessary to offer any of these conclusions.  As a result, Mr. Pinsonneault should not be permitted to testify on these issues at trial.

Whether a witness can be qualified as an expert is determined by whether the witness has the "knowledge, skill, experience, training, or education" as to the subject matter he or she seeks to opine.  Fed. R. Evid. 702.  "Under Federal Rule of Evidence 702, experts may not make expert conclusions about areas outside their expertise." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2013 WL 5955666, at *2 (N.D. Cal. Nov. 6, 2013) (citing *White v. Ford Motor Co.*, 312 F.3d 998, 1008–09 (9th Cir. 2002)).  "Courts regularly find that an expert's qualifications in one field do not automatically translate to

8

qualification to opine in a separate field, even if those fields are related in some general sense." *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 2628620, at *10 (C.D. Cal. Mar. 15, 2023). While Plaintiffs do not contest for purposes of this motion Mr. Pinsonneault's qualifications to calculate the ███████████████████████, Mr. Pinsonneault lacks the qualifications to opine on topics beyond this scope.

*First*, Mr. Pinsonneault lacks the expertise to opine ███████████████████████ ███████████████████████████ By his own admission, Mr. Pinsonneault disclaimed any expertise ███████████████████████████████████ ████████████████ Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 216:8–217:4, 217:17–21. And Mr. Pinsonneault disclaimed any expertise regarding ████████████████████████ ████████████████████████████████████████████████ ████████ *Id.* at 223:4–7. Mr. Pinsonneault did not review any documents ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ *Id.* at 224:12–15. Those reasons alone are enough to exclude Mr. Pinsonneault's opinion.

Mr. Pinsonneault's experience as a damages expert does not provide him any insight into ███████████████████████████████████████████. Courts routinely police expert opinions that cross the line into opining on the proper response. For instance, in *A.G. v. Paradise Valley Unified School District No. 69*, the Ninth Circuit endorsed the opinions of plaintiff's behavioral psychologist expert on issues related to the plaintiff's behavior but found that the district court improperly relied on the expert's testimony regarding what services were "not legally required by federal or state statute." 815 F.3d 1195, 1207 (9th Cir. 2016).

Relatedly, Mr. Pinsonneault lacks the expertise to opine ███████████████████ ████████████████ In his initial rebuttal report, Mr. Pinsonneault speculates that ████████ ████████████████████████████████████████████████ ████████████ Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 49. But that is not an *expert* opinion, it is simply an opinion. At his deposition, Mr. Pinsonneault stated that he based this opinion

1  on █████████████████████████████████████████████████████████

2  ███████████ Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 231:23–232:4.  When asked about what

3  expertise he brought to bear in making this opinion, Mr. Pinsonneault admitted ████████████

4  ████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████ *Id.* at 233:20–234:15.

6        Normally, "[t]echnical experts generally may not testify about 'motives, intent, or state of

7  mind,' as determinations on those issues are reserved for the jury." *Pavo Sols. LLC v. Kingston Tech.*

8  *Co.*, 2019 WL 8138163, at *13 (C.D. Cal. Nov. 20, 2019), *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022); *see*

9  *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony

10  as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts

11  of the case . . . and permitting expert testimony on this subject would be merely substituting the

12  expert's judgment for the jury's and would not be helpful to the jury." (quoting *Siring v. Or. State*

13  *Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013))). Here, Mr. Pinsonneault compounds

14  the problem because he lacks any relevant experience that would allow him to furnish an opinion

15  about ███████████████████████ The fact that Mr. Pinsonneault █████████████

16  █████████████████████████████████████████████████████████████████████████

17  ████████, any more than calculating damages for a case involving spyware makes him an expert on

18  how to hack WhatsApp's servers.

19       *Second*, Mr. Pinsonneault lacks the expertise to offer an opinion ███████████████

20  ████████████████████████████████████ or whether ██████████████████

21  ████████████████████ At his deposition, Mr. Pinsonneault █████████████

22  ████████████████████ Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 56:13–14.  Though

23  he has ██████████████████████████, Mr. Pinsonneault does not ████████████

24  ████████████████████████████████████████████. *Id.* at 55:14–

25  56:10. ████████████████████████████████████████████████████

26  ████████ *Id.* at 56:15–22.  Nonetheless, Mr. Pinsonneault claimed ████████████

27

28

1 ████████████████████████████████████████████████████████████

2 █████████████.  *Id*. at 248:5–14.

3      As a threshold matter, none of the evidence supports Mr. Pinsonneault's conclusions.  Mr.

4 Pinsonneault's opinions therefore are irrelevant because they do not have a valid connection to the

5 pertinent expertise and will not help the trier of fact understand the evidence or determine a fact in

6 issue.  Fed R. Evid. 702(a); *Daubert*, 509 U.S. at 591–92.  In the words of Mr. Pinsonneault, NSO's

7 CEO ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████

9 ████████████████████ Block Decl. Ex. B (Pinsonneault Rebuttal Rep.)  ¶¶ 52, 53. ████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████ *Id*. ¶¶ 51, 54.[3]

13      Moreover, Mr. Pinsonneault's expertise as a damages expert does not give █████████

14 ████████  *See, e.g.*, *GPNE Corp. v. Apple, Inc.*, 2014 WL 3870256, at *7 (N.D. Cal. Aug. 6, 2014)

15 (excluding damages expert from offering "technical testimony outside the scope of [damages ex-

16 pert's] expertise"); *Banga v. Kanios*, 2021 WL 4133754, at *3 (N.D. Cal. Sept. 10, 2021) (excluding

17 damages expert from testifying about plaintiff's likely future earnings); *see also McMillan v. Weeks*

18 *Marine*, Inc., 478 F. Supp. 2d 651, 659 (D. Del. 2007) (same). ████████████████████

19 ████████████████████, *see Mighty Enters., Inc. v. She Hong Indus. Co.*, 745 F. App'x 706,

20 709 (9th Cir. 2018), as "[a]n expert's sole or primary reliance on the opinions of other experts raises

21 serious reliability questions," *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014).

22      *Third*, Mr. Pinsonneault opines that █████████████████████████████████

23 ████████████████████████████████████████████████████ *See* Block

24 Decl., Ex. C (Pinsonneault Dep. Tr.) at 278:11–14; 281:9–18.  Courts can sometimes admit expert

25 _____

26 [3]  Mr. Pinsonneault also opines █████████████████████████████████ Block Decl.

27 Ex. B (Pinsonneault Rebuttal Rep.) ¶ 75.  For these same reasons, Mr. Pinsonneault lacks the
expertise to offer this opinion.

28

testimony based on an expert's extensive experience.  *See, e.g.*, *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) (allowing government law enforcement agents to testify about gang and drug investigations "based on their experience rather than based on any systematic methodology" because of their "'years of experience and special knowledge.'").  When experts rely on their expertise as opposed to a systematic methodology, they "must describe their relevant background and explain how that background informed the opinions they offer."  *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016).  Importantly, experts relying on their experience must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinions, and how that experience is reliably applied to the facts**.**"  Fed. R. Evid. 702 advisory committee's note (2000); *see United States v. Cerna*, 2010 WL 11627594, at *6 (N.D. Cal. Dec. 17, 2010) (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)).  A court cannot rely on a potential expert's general qualifications to establish the reliability of their testimony.  *See, e.g.*, *United States v. Valencia-Lopez*, 971 F.3d 891, 901 (9th Cir. 2020), *Cerna*, 2010 WL 11627594, at *13.

Mr. Pinsonneault does not explain ███████████████████████████████████████ ██████████████████████████████████████████████████████████████████.  Moreover, he offers no evidentiary or factual basis to tie ██████████████████████████████ ████████████████████ *See Daubert*, 509 U.S. at 591 (requiring expert testimony to be "sufficiently tied to the facts of the case").  Perhaps Mr. Pinsonneault ████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████

Though Mr. Pinsonneault may have experience in *calculating* labor costs, he does not have any experience in determining, ████████████████████████████████████████████████ ██████ Moreover, he offers no evidentiary or factual basis ██████████████████████ ██████████████████████████████████ *See* Fed. R. Evid. 702 advisory committee's note (2000); *Cerna, 2010 WL 11627594 at *6.*  Allowing him to give the jury blanket statements ████████

1   ███████████████████████████████████████████████ would be unreliable, unfair

2   and distracting, particularly where there is no practical way for Plaintiffs to adequately challenge

3   those statements on cross-examination, which would require reviewing the facts and distinguishing

4   features of the dozens of unrelated cases he purports to describe.  Therefore, Mr. Pinsonneault does

5   not employ a reliable methodology or explain how his general experience in other cases supports his

6   ███████████████████████████████████████.  He should not be permitted to

7   offer ████████████████████████████████████.

8   **II.    Mr. Pinsonneault's Opinion Regarding The Amount of NSO's Illegal Profits Should**

9        **Be Excluded**

10       Both damages experts ████████████████████████████████████████████

11  ██████████████████████ *See* Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 91 (determining the

12  ████████████████████████████████████████████████████████████████████████

13  ██████████; Dkt. No. 487-6 ¶ 7 (providing ███████████████████████

14  ████████████████████████████).  As Mr. Pinsonneault acknowledged during his deposition,

15  any estimate of ████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████

17  ██████████████████████.  Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 306:5–307:11.  However,

18  contrary to the Court's order, NSO refused to produce that financial information in discovery.  *See*

19  Dkt. No. 405-2 at 13–14 (describing NSO's refusal to produce financial documents that the Court

20  ordered NSO to produce).  As a result, █████████████████████████████████████

21  ██████████████████████████████ Without any financial information ████████

22  ██████████████████████████████████████████████████, Ms. Trexler cal-

23  culated ██████████████████████████████████████████████████████████████

24  ████████████████████████.  Dkt. No. 487-3 ¶¶ 119, 121; *see* Dkt. No. 487-6 ¶ 43.  By

25  contrast, Mr. Pinsonneault refuses to acknowledge the lack of financial disclosures by NSO and uses

26  an ████████████████████████████████████████████████████████████████████

27

28

1   ███████████████████████.  Mr. Pinsonneault's calculation ██████████████ should thus

2   be excluded.

3   **A.  Mr. Pinsonneault Uses an Unreliable Methodology To Estimate the Amount That**

4   ██████████████████████████████████████████

5   Mr. Pinsonneault uses an unreliable methodology to calculate ████████████████

6   ███████████████████████████████████████████████████████████

7   ████████  Therefore, his opinion on ███████████████████████ should be excluded.

8   An expert's opinion must be "the product of reliable principles and methods."  Fed. R. Evid.

9   702.  Under *Daubert*, "the district court judge must ensure that all admitted expert testimony is both

10  relevant and reliable."  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017).  To

11  assess reliability, the district court can examine the expert's principles and methodologies, including

12  "whether the theory or technique employed by the expert is generally accepted in the scientific com-

13  munity; whether it's been subjected to peer review and publication; whether it can be and has been

14  tested; and whether the known or potential rate of error is acceptable."  *Grodzitsky v. Am. Honda*

15  *Motor Co.*, 957 F.3d 979, 985 (9th Cir. 2020) (quoting *Wendell*, 858 F.3d at 1232).

16  There is no such support for Mr. Pinsonneault's proposed method of ████████████

17  ████████████  In his report, Mr. Pinsonneault assumes ████████████████████

18  ███████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████

21  ████████████████  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.), Figure 15 (calculating

22  the 27.1% figure) and Schedule 2.0 n. F (calculating NSO's R&D related to Covert Android).

23  There is no evidence that NSO apportioned ████████████████.  *See* Dkt. No. 487-

24  3 ¶ 121 ████████████████████████████████████████████████

25  ███████████████████████████████████████████████████████████

26  ████████████████████).  None of Mr. Pinsonneault's reports provide any justification for this

27  methodology—indeed, Mr. Pinsonneault does not even attempt to explain his basis for using this

28

method.  *See* Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 122–123.  Moreover, Mr. Pinson-

neault's methodology ignores evidence in the record showing ███████████████████

██████████████████████████  *See* Dkt. No. 487-3 ¶ 121; *see*

*also* Block Decl., Ex. A (Gazneli Dep. Tr.) at 106:4–107:4 (███████████████

████████████████████; Block Decl., Ex. D (NSO_WHATSAPP_00000287)

███████████████████████████████████████████████████

████.

    Mr. Pinsonneault's ███████████████████ therefore falls short of the re-

liability standard imposed by *Daubert*.  Courts have rejected similar methods of simplistic calculation

premised on unsupported assumptions.  For instance, where an expert "failed to provide the 'meth-

odology' underlying his apportionment amount or explain how he arrived at that figure based on the

facts of this case, his apportionment opinion is not backed by 'sufficient facts or data' or by 'reliable

principles and methods'" and was excluded.  *NetFuel, Inc. v. Cisco Sys. Inc.*, 2020 WL 1274985, at

*9 (N.D. Cal. Mar. 17, 2020); *see also Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 923 F.

Supp. 2d 1245, 1255 (S.D. Cal. 2013) (rejecting damages theory assuming that $1 of infringing sales

corresponds $1 of lost profits).  Mr. Pinsonneault cannot cure NSO's failure to produce detailed

financial information by ████████████████████████████████████

████.

### B.  Mr. Pinsonneault Lacks Sufficient Facts and Data To ███████████████

███████████████████████████████████

    Even if Mr. Pinsonneault's headcount-based estimate is methodologically sound (which it is

not), Mr. Pinsonneault lacks "sufficient facts or data" to determine ██████████████

████████████████████.  To satisfy this standard, "the expert's opinion must rest on

'facts or data in the case that the expert has been made aware of or personally observed,' not merely

assumptions and speculation."  *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019)

(quoting Fed. R. Evid. 703).  Here, the facts and data that Mr. Pinsonneault relies upon are inherently

unreliable, and Mr. Pinsonneault ignores countervailing evidence in reaching his conclusion.  His

15

1   estimate ███████████████████████████████████████████████████

2   █████████████████████████████████████████████, should thus be ex-

3   cluded.

4        To reach his opinion included in his initial rebuttal report, Mr. Pinsonneault relies primarily

5   on a single conversation with a single NSO employee—Tamir Gazneli, NSO's head of R&D—who

6   apparently told Mr. Pinsonneault that ████████████ worked on C████████████████████

7   ███████████████.[4] Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 122.  Mr. Pinson-

8   neault's conversation with Mr. Gazneli does not constitute "sufficient facts or data" on which expert

9   testimony be based.  Fed. R. Evid. 702.  For this reason, courts routinely exclude expert opinions

10  derived primarily from conversations with party witnesses, especially in the face of contradictory

11  information in the record.  For example, recently, a court in the Central District of California excluded

12  a damages expert's opinion that was "primarily based on a conversation with Plaintiff's CEO" where

13  "the record before the Court lacks any other evidence to support this opinion." *Am. Transp. Sys., Inc.*

14  *v. Prevost Car US Inc.*, 2024 WL 5185314, at *4 (C.D. Cal. Oct. 9, 2024); *see also United States v.*

15  *Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) (excluding expert opinion based on short conversation

16  to the exclusion of other significant data); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1025–26 (10th

17  Cir. 2002) (upholding exclusion of economic expert who "attempted to spin anecdotes from a handful

18  of personal conversations" into expert opinion).

19        Mr. Pinsonneault's single conversation with Mr. Gazneli suffers from the same defect.  Block

20  Decl. Ex. B (Pinsonneault Rebuttal Rep.), Schedule 2.1, n. F (████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████ and, moreover, is not reliable.  During his deposition, Mr. Gazneli ████

23  _____

24  [4]  To update the disgorgement analysis in his second supplemental report, Mr. Pinsonneault had to
     include the number of employees who worked on Covert Android R&D in the additional time

25  periods.  Mr. Pinsonneault does not cite to a conversation with Mr. Gazneli, and merely states
     that he "understand[s] the maximum number of R&D employees involved in covert Android in-

26  stallation vectors was 30 in 2018 and 34 in 2020."  Dkt. No. 492-4, Schedule S2.1 n. F. An
     "understanding" is not facts or data—it is mere speculation that cannot be relied upon.  *See Hsin*

27  *Lin v. Solta Medical, Inc.*, 2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) at *12 ("As pure specu-
     lation, it is not helpful to the jury . . .").

28
                                                    16

1    ███████████████████████████████████████████████████████

2    ███████████████████████████████████████████ Block Decl., Ex. A (Gazneli

3    Dep. Tr.) at 52:19–24.  Still, Mr. Pinsonneault bases his entire analysis on Mr. Gazneli's estimate.

4        Furthermore, Mr. Pinsonneault's reliance ██████████████████████ makes his

5    opinions even more unreliable in light of the contradictory evidence in the record, which Mr. Pinson-

6    neault ignored.  Because expert testimony must be "based on sufficient facts or data," Fed. R. Evid.

7    702, experts cannot only consider the evidence that supports their position.  Courts exclude expert

8    testimony where experts cherry-pick facts to bolster their expert opinion.  *See, e.g.*, *Barber v. United*

9    *Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001); *Concord Boat Corp. v. Brunswick Corp.*, 207

10   F.3d 1039, 1055–57 (8th Cir. 2000); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse*

11   *First Bos.*, 853 F. Supp. 2d 181, 188 (D. Mass. 2012) (precluding expert testimony that "cherry-

12   picked" certain data points) *aff'd sub nom. Bricklayers & Trowel Trades Int'l Pension Fund v. Credit*

13   *Suisse Sec. (USA) LLC*, 752 F.3d 82 (1st Cir. 2014).

14       Here, Mr. Pinsonneault seemingly ignored documents in the record that contradict his esti-

15   mates of ████████████████████████████████████████████████████████.

16   For instance, Mr. Pinsonneault concludes ████████████████████████████████

17   ██████████████████████████████████████████████████████

18   ███████████████████████ *See e.g.*, Block Decl. Ex. E (WA-NSO-00074999) at -043;

19   Block Decl. Ex. F (JEFF00007831) at -836; Block Decl. Ex. F (FPM-00026827) at -844.  Similarly,

20   Mr. Pinsonneault relies on his conversation with Mr. Gazneli to conclude that ████████████

21   ██████████████████████████████████████████████████████

22   ██████████████████████████████████████████ These docu-

23   ments, if considered, would alter the ██████████████████████, and underscores

24   the unreliability of his approach as a whole.

25       This same document, the spreadsheet on which Mr. Pinsonneault relies, indicates that there

26   were ██████████████████████████████.  Mr. Pinsonneault

27   provides no explanation for why ████████████████████████████████

28

17

1  ████████████, which only adds to the argument that Mr. Pinsonneault's methodology and

2  analysis are unreliable.

3  ## CONCLUSION

4      For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to

5  exclude portions of Mr. Pinsonneault's expert testimony.

6

7  Dated:  January 9, 2025                    Respectfully Submitted,

8                                             DAVIS POLK & WARDWELL LLP

9
                                             By:  /s/ Micah G. Block
10                                                Greg D. Andres
                                                 Antonio J. Perez-Marques
11                                               Gina Cora
                                                 Craig T. Cagney
12                                               Luca Marzorati
                                                   (admitted *pro hac vice*)
13                                               DAVIS POLK & WARDWELL LLP
                                                 450 Lexington Avenue
14                                               New York, New York 10017
                                                 Telephone: (212) 450-4000
15                                               Facsimile: (212) 701-5800
                                                 Email: greg.andres@davispolk.com
16                                                      antonio.perez@davispolk.com
17                                                      gina.cora@davispolk.com
                                                        craig.cagney@davispolk.com
18                                                      luca.marzorati@davispolk.com
19
                                                 Micah G. Block (SBN 270712)
20                                               DAVIS POLK & WARDWELL LLP
                                                 900 Middlefield Road, Suite 200
21                                               Redwood City, California 94063
                                                 Telephone: (650) 752-2000
22                                               Facsimile:  (650) 752-2111
                                                 Email: micah.block@davispolk.com
23

24                                               *Attorneys for Plaintiffs*
25                                               *WhatsApp LLC and Meta Platforms, Inc.*

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GREGORY A.
PINSONNEAULT - CASE NO. 4:19-CV-07123-PJH