JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
 *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:    (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>            Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>            Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF PLAINTIFFS' PROPOSED EXPERT DAVID J. YOUSSEF**<br><br>Date:  February 13, 2025<br>Time:  2:00 p.m.<br>Place:  Courtroom 3, Ronald V. Dellums Federal Building & U.S. Courthouse, 1301 Clay Street, Oakland, California<br><br>Action Filed: 10/29/2019 |

1    **PLEASE TAKE NOTICE** that on February 13, 2025, at 2:00 p.m., or at such other date

2  and time convenient to (and ordered by) the Court, in Courtroom 3, of the United States Courthouse,

3  1301 Clay Street, Oakland, California, Defendants NSO Group Technologies Ltd. and Q Cyber

4  Technologies Ltd. (collectively "NSO") will, and hereby do, move this Court for an order excluding

5  or limiting the testimony of Mr. David J. Youssef.  NSO seeks to exclude this evidence under

6  Federal Rules of Evidence 403, 702, and interpretive case law (i.e., *Daubert*-related).

7    This Motion is based on this Notice of Motion and the attached Memorandum of Points and

8  Authorities; the concurrently filed Declaration of Joseph N. Akrotirianakis ("Akro. Decl.") and the

9  exhibits appended thereto; any other evidence received in connection with the hearing on this

10 motion; all matters of record in the Court's files in this action; and such other evidence and written

11 or oral argument as the Court may wish to consider and direct the parties to submit.

13  Dated: January 9, 2025               KING & SPALDING LLP

14                                       By: */s/ Joseph N. Akrotirianakis*

15                                       JOSEPH N. AKROTIRIANAKIS
                                         AARON S. CRAIG
16                                       *Attorneys for Defendants*

MOTION TO EXCLUDE OPINIONS OF DAVID
YOUSSEF                                              Case No. 4:19-cv-07123-PJH

1

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................. 1

II.   BACKGROUND ............................................................................. 1

III.  LEGAL STANDARDS.................................................................... 3

IV.   ARGUMENT ................................................................................. 3

    A.    The Court should exclude Mr. Youssef's opinions as irrelevant. ............................ 4

    B.    The Court should exclude many of Mr. Youssef's opinions as unhelpful, unsupported, rooted in unreliable methodology, and unfairly prejudicial. ............. 7

        1.    Mr. Youssef's implications that Pegasus damaged WhatsApp's servers or service are factually unsupported.................................... 7

        2.    Mr. Youssef's characterization of Pegasus as "spyware" is unhelpful, unreliable, and prejudicial. ........................................... 12

        3.    Mr. Youssef's prediction that NSO intends to (and will) create more WhatsApp-based delivery vectors is impermissible, unqualified, and not based on reliable methodology. ............................... 13

        4.    Mr. Youssef's opinion that Pegasus "successfully exploited 1,500 target devices" is unsupported. ....................................... 16

        5.    Mr. Youssef's opinion that Pegasus messages were "camouflaged" is not supported by reliable methodology. ....................................... 17

V.    CONCLUSION ............................................................................. 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aguilar v. Int'l Longshoremen's Union Loc. No. 10*,
 966 F.2d 443 (9th Cir. 1992) ............................................................................................... 10

5

*Baldonado v. Wyeth*,
6
 No. 04 C 4312, 2012 WL 1802066 (N.D. Ill. May 17, 2012) ......................................... 13, 14

7

*In re ConAgra Foods, Inc.*,
 302 F.R.D. 537 (C.D. Cal. 2014) ......................................................................................... 14
8

9

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 579 (1993) ........................................................................................................... 3, 4

10

*Est. of Gaither ex rel. Gaither v. D.C.*,
11
 831 F. Supp. 2d 56 (D.D.C. 2011) ....................................................................................... 14

12

*Gen. Elec. Co. v. Joiner*,
 522 U.S. 136 (1997) ............................................................................................................... 3
13

14

*Grajeda v. Vail Resorts Inc.*,
 No. 2:20-CV-00165, 2023 WL 2613543 (D. Vt. Mar. 23, 2023) ......................................... 12

15

*Kumho Tire Co. v. Carmichael*,
16
 526 U.S. 137 (1999) ......................................................................................................... 3, 15

17

*Lanard Toys Ltd. v. Anker Play Prods., LLC*,
 2020 WL 6873647 (C.D. Cal. Nov. 12, 2020) ...................................................................... 13
18

19

*Marion Healthcare, LLC v. S. Ill. Healthcare*,
 No. 3:12-CV-871-MAB, 2020 WL 1527771 (S.D. Ill. Mar. 31, 2020), *aff'd sub*
20
 *nom. Marion HealthCare, LLC v. S. Ill. Hosp. Servs.*, 41 F.4th 787 (7th Cir.
 2022) ...................................................................................................................................... 7

21

*P.S. ex rel. Nelson v. The Farm, Inc.*,
22
 658 F. Supp. 2d 1281 (D. Kan. 2009) ................................................................................... 15

23

*Primavera Familienstifung v. Askin*,
 130 F. Supp. 2d 450 (S.D.N.Y.), *abrogated on other grounds by Casey v.*
24
 *Merck & Co.*, 653 F.3d 95 (2d Cir. 2011) ............................................................................. 18

25

*Ryanair DAC v. Booking Holdings Inc.*,
26
 No. CV 20-1191-WCB, 2024 WL 3732498 (D. Del. June 17, 2024) ................................... 14

27

*Smith v. Wyeth-Ayerst Lab'ys Co.*,
 278 F. Supp. 2d 684 (W.D.N.C. 2003) ................................................................................. 14
28

ii

*United States v. Nosal*,
  676 F.3d 854 (9th Cir. 2012) ........................................................................... 5

*United States v. W.R. Grace*,
  504 F.3d 745 (9th Cir. 2007) ........................................................................... 3

**Statutes**

18 USC 1030(e)(8) ............................................................................................ 10

**Other Authorities**

Fed. R. Evid. 402 ........................................................................................ 1, 3, 4

Fed. R. Evid. 403 .................................................................................. 1, 3, 10, 13

Fed. R. Evid. 702 ..................................................................................... *passim*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   <u>INTRODUCTION</u>**

Plaintiffs' proposed expert, Mr. David J. Youssef, has submitted an opening report (Declaration of Joseph Akrotirianakis ("Akro. Decl.") Exh. B, "Youssef Report") concerning the technical operation of Plaintiffs' and Defendants' software, and a rebuttal report (Akro. Decl. Exh. C, "Youssef Rebuttal") purporting to rebut the opinions of Plaintiffs' technical expert (Colonel Terrence McGraw) regarding the same. Mr. Youssef provided deposition testimony about his opinions on December 10, 2024 (Akro. Decl., Exh. A, "Youssef Tr.").

Shortly thereafter (on December 19, 2024), the Court partial granted summary judgment resolving "all issues regarding liability" and ordering a trial on the issue of damages. (Dkt. No. 494.). In a letter brief resisting NSO's efforts to obtain additional discovery from Mr. Youssef, Plaintiffs argued that the Court's summary judgment order renders any such discovery on technical issues irrelevant. (Dkt. 498 at 4-5.)

If the Court agrees with Plaintiffs that Mr. Youssef's technical opinions are irrelevant to the upcoming trial on damages, it should exclude those opinions under Federal Rules of Evidence 402 ("[i]rrelevant evidence is not admissible") and 702 (will not "help the trier of fact to understand the evidence or to determine a fact in issue"). If the Court believes that at least some of Mr. Youssef's technical opinions remain relevant, it should exclude the other, irrelevant opinions for the same reasons. Moreover, the Court should exclude several of Mr. Youssef's opinions under Rules 702 and 403 for a separate, independent reason: they are too vague to be helpful, unmoored from the facts of this case, the products of unreliable methodology, and unfairly prejudicial.

**II.   <u>BACKGROUND</u>**

On September 1, 2024, Plaintiffs served an opening expert report from Mr. Youssef. (Youssef Report.).[1] In that report, Mr. Youssef characterized his background as a "cybersecurity professional in both private industry and academia." (Akro Decl. Exh. B ¶ 13.)  Mr. Youssef also offered various technical opinions about (1) the operation of WhatsApp's VoIP system (*id.* at ¶¶ 37-

---

[1] Mr. Youssef's original opening report was served on August 30, 2024, but Plaintiffs served a corrected version on September 1, 2024. This motion addresses the corrected version as the operative opening report.

40) and (2) the use he believed NSO's Pegasus software made of that system (*id.* at ¶¶ 41-125). Mr. Youssef opined that (3) Pegasus "conceal[ed]" the nature of its activity from WhatsApp's VoIP system (*id.* at ¶¶ 126-130) and (4) thereby "circumvent[ed] … technological limitations" in it (*id.* at ¶ 134). Finally, Mr. Youssef offered (5) his understanding of NSO's software development efforts (*id.* at ¶ 133-41), including changes NSO made in 2018 and 2019 (*id.* at ¶¶ 145-55), and (6) his opinion that NSO knew (or should have been aware) that Pegasus would access WhatsApp servers in the United States and/or California (*id.* at ¶¶ 142-44).

On September 21, 2024, Plaintiffs served a rebuttal report from Mr. Youssef, in which Mr. Youssef purported to rebut the opinions of NSO's expert, Colonel Terrence McGraw (Akro. Decl. Exh. D). Therein, Mr. Youssef opined on (7) the operation of Pegasus (Akro. Decl. Exh. C ¶¶ 27-67), (8) NSO's purported awareness of where WhatsApp's servers were located (*id.* at ¶¶ 68-75), (9) Pegasus's use of WhatsApp's VoIP servers (*id.* at ¶¶ 76-83), (10) the degree of damage or loss WhatsApp purportedly incurred (*id.* at ¶¶ 84-87), and (11) whether NSO was like other software tool providers who should not be held liable for their customers' use of those tools (*id.* at ¶¶ 88-99).

On December 10, 2024, Defendants deposed Mr. Youssef.  But rather than provide direct answers to simple questions at his deposition (such as whether WhatsApp servers ever executed any NSO code), Mr. Youssef filibustered with nonresponsive boilerplate narratives using vague, derogatory language, such as accusing NSO of "compromising," "abusing," "impairing," and "exploiting" WhatsApp's servers.

On December 19, 2024, the Court issued a partial summary judgment order resolving "all issues regarding liability" and ordering a trial on the issue of damages.  (Dkt. No. 494, "SJ Order".)

On December 23, 2024, the parties filed a joint letter brief (Dkt. 498) in which NSO sought to reopen Mr. Youssef's deposition for questioning about issues related to Plaintiffs' claims for compensatory damages, punitive damages, and injunctive relief. (*Id.* at 1.) Plaintiffs opposed that request on the basis that, "now that NSO has been found liable on all of Plaintiffs' claims, additional discovery on technical issues would be irrelevant and unnecessary." (*Id.* at 4.)

1    ### III.    LEGAL STANDARDS

2    Under Federal Rule of Evidence 702, Plaintiffs bear the burden of establishing that Mr.

3    Youssef's testimony (1) "will help the trier of fact to understand the evidence or to determine a fact

4    in issue," (2) is "based on sufficient facts or data," (3) is the "product of reliable principles and

5    methods," and (4) that those principles and method have been "reliably applied … to the facts of

6    the case." Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90

7    (1993); *United States v. W.R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007). These criteria are aimed to

8    ensure that an expert "employs in the courtroom the same level of intellectual rigor that

9    characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526

10   U.S. 137, 152 (1999).

11   To ensure that all expert testimony presented to the jury "both rests on a reliable foundation

12   and is relevant to the task at hand," the court acts as a "gatekeeper" against any expert testimony

13   that fails to satisfy the criteria of Rule 702. *Daubert*, 509 U.S. at 597; *see also W.R. Grace*, 504

14   F.3d at 759. In performing this task, the Court must conduct a "holistic" analysis of the expert's

15   testimony for "overall sufficiency of the underlying facts and data, and the reliability of the

16   methods, as well as the fit of the methods to the facts of the case." *W.R. Grace*, 504 F.3d at 762,

17   765.  Where the proposed testimony fails to satisfy these standards, the Court can, and should,

18   exclude it.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

19   Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its

20   probative value is substantially outweighed by a danger of one or more of the following: unfair

21   prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

22   presenting cumulative evidence." Fed. R. Evid. 403.

23   ### IV.    ARGUMENT

24   The Court should exclude all (or many) of Mr. Youssef's opinions under Rules 402 and 702

25   as irrelevant because those opinions do not relate to causation and remedies issues, which are the

26   only issues for trial. Moreover, even if relevant, the Court should exclude many of Mr. Youssef's

27   opinions under Rule 702 for being unhelpful, unsupported by facts, and the product of unreliable

28   methodology, and/or under Rule 403 for being unfairly prejudicial and confusing.

3

**A.      The Court should exclude Mr. Youssef's opinions as irrelevant.**

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Accordingly, now that the Court has granted summary judgment on all issues of liability and ordered trial only on damages issues, the Court should exclude (under Rules 402 and 702) those of Mr. Youssef's technical opinions that are not relevant to damages or other remedies.

Plaintiffs' position appears to be that *none* of Mr. Youssef's opinions are relevant to damages. As noted above, Plaintiffs' have opposed NSO's attempts to reopen Mr. Youssef's deposition on the basis that, "now that NSO has been found liable on all of Plaintiffs' claims, additional discovery on technical issues would be irrelevant and unnecessary." (Dkt. 498 at 4.) Indeed, Plaintiffs have argued that the court's finding of liability "should moot NSO's request to obtain additional deposition testimony from Mr. Youssef." (*Id.* at 4.) As Plaintiffs point out, for example, "Mr. Youssef's report is silent on the amount of time that Plaintiffs' engineers spent remediating NSO's attack, which forms the basis for compensatory damages." (*Id.*). Moreover, Plaintiff observed that certain issues on which Mr. Youssef opined, "such as whether NSO's spyware exceeded authorized access or whether NSO reverse-engineered WhatsApp," have "already been adjudicated." (*Id.* at 4-5.)

To the extent the Court agrees with Plaintiffs' apparent position that Mr. Youssef's technical opinions are irrelevant, it should exclude Mr. Youssef's testimony from the damages trial altogether, under Rules 402 and 702.

If the Court disagrees with Plaintiffs that all of Mr. Youssef's opinions are irrelevant, then it should at least exclude those of Mr. Youssef's opinions that the Court *does* agree have been rendered irrelevant. Defendants submit that those opinions should include at least:

1. Mr. Youssef's opinions that NSO or its customers accessed WhatsApp servers without authorization or exceeded authorized access. (*See*, *e.g.*, Akro. Decl. Exh. B ¶¶ 3, 26, 156; Akro. Decl. Exh. C ¶¶ 3, 8, 76-83, 88-92; Akro. Decl. Exh. A at 76:2-88:24). These opinions are relevant only to liability under the Computer Fraud and Abuse Act (CFAA), which is not at issue in the damages trial.

2. Mr. Youssef's opinions that Pegasus circumvented WhatsApp's technological limitations. (*See*, *e.g.*, Akro. Decl. Exh. B ¶¶ 9, 134, 139, 154, 156; Akro. Decl. Exh. C ¶¶ 8, 25, 58, 66, 77-83, 90, 100, 103; Akro. Decl. Exh. A at 92:12-6, 135:6-21, 225:2-233:11.) These opinions similarly relate only to liability under the CFAA (specifically, whether Pegasus exceeded authorized access), which is not at issue in the damages trial.

3. Mr. Youssef's various opinions that Pegasus accessed WhatsApp servers in a way WhatsApp had not "intended." (*See*, *e.g.*, Akro. Decl. Exh. B ¶¶ 6, 122, 131; Akro. Decl. Exh. C ¶¶ 53, 76-79, 84, 101; Akro Decl. Exh. A at 76:2-88:24, 172:16-173:8; 225:2-236:14.) This opinion is not relevant to damages. Indeed, it is not even relevant to CFAA liability because using a computer system inconsistently with the owner's subjective intentions is not a basis for liability under the CFAA's "exceeded authorized access" prong. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) ("we hold that the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions."). Because this opinion is irrelevant to damages, it should be excluded.

4. Mr. Youssef's various opinions that Pegasus "exploited," "hacked," "abused," or "weaponized" WhatsApp's service. (*See*, *e.g.*, Akro. Decl. Exh. A at 96:16-98:19, 104:10-24, 135:6-21, 153:13-155:15; 162:4-164:6, 170:13-174:9; 180:12-189:17, 196:25-202:18, 207:5-209:19; 222:13-236:14, 240:12-13; 246:7-247:18; 274:8-276:23; 285:4-287:20; 299:5-300:4; 307:4-7; 326:19-328:20; 332:23-338:17, 352:16-353:8.) It is unclear what Mr. Youssef intended these vague pejoratives to mean (he provided no definition), but it is clear he intended these descriptions to establish that Pegasus accessed WhatsApp servers without authorization, not the calculation of compensatory damages. These opinions should therefore be excluded from the damages trial as irrelevant.

5. Mr. Youssef's opinions that NSO knew (or should have been aware) that Pegasus would access WhatsApp servers in the United States and/or California (Akro. Decl. Exh. B ¶¶ 142-44; Akro. Decl. Exh. C ¶¶ 68-75). These opinions relate only to the issue of jurisdiction, which the Court decided in its summary judgment order (SJ Order at 6.)

5

6. Mr. Youssef's opinions regarding the operation of WhatsApp's VoIP system (Akro. Decl. Exh. B ¶¶ 37-40.) These opinions serve only as background for understanding whether Pegasus circumvented WhatsApp's technical limitations or otherwise exceeded authorized access. Because the Court has already resolved those issues, these opinions are no longer relevant.

7. Mr. Youssef's opinions about NSO's software development efforts, including that NSO reverse engineered WhatsApp software (Akro. Decl. Exh. B ¶¶ 133-41) and made changes to its software in 2018 (*id.* at ¶¶ 145-49). The Court's summary judgment order resolved these issues, including that of reverse-engineering (SJ Order at 14) and that NSO made software changes in 2018 (*id.* at 12.).

8. Mr. Youssef's opinion that NSO is unlike other software tool providers that should not be held liable for their customers' use of those tools. (Akro. Decl. Exh. C ¶¶ 88-99.). This issue is irrelevant because the Court has resolved the issue of liability.

9. Mr. Youssef's opinion that Pegasus is "spyware." (Akro. Decl. Exh. B ¶¶ 108-17.) This opinion has no relevance to any issue, let alone to damages. The irrelevance is particularly acute because Mr. Youssef appears to have applied the "spyware" label primarily to the Pegasus *agent*, which is software that never interacted with a WhatsApp server and is therefore irrelevant to WhatsApp's purported damages. *See, e.g.*, Akro. Decl. Exh. A at 269:7-10 ("the Pegasus agent … would be the actual spyware that would be deployed on a target phone following successful exploitation"); *see also id.* at 343:9-10 ("the Pegasus agent or the spyware, as I call it in my report"), 286:3 ("what they sell is this Pegasus agent, this spyware"). Mr. Youssef opinion that the Pegasus *agent* is spyware (rather than the installation vectors at issue in this case) is of little or no relevance to damages and is likely to confuse the jury.

10. Mr. Youssef's "opinion that [Pegasus] was used to successfully exploit at least 1,500 targeted devices." (Akro. Decl. Exh. B ¶¶ 11.) This opinion is not only false (as described below), but it has no bearing on the issue of damages because it describes the purported impact of Pegasus *on third parties*, not on Plaintiffs. The Court has also

6

1   limited discovery into how these alleged victims were identified, reasoning that "the

2   identity of the victims is not relevant to plaintiffs' case-in-chief" and forecasting that,

3   "[a]t the time of trial, the court will account for this limitation when determining the

4   admissibility of evidence." (Dkt. 358 at 3-4.)  The Court should accordingly exclude

5   Mr. Youssef's (false) opinion that Pegasus "successfully exploited at least 1,500 target

6   devices."

7   **B.      The Court should exclude many of Mr. Youssef's opinions as unhelpful,**

8   **unsupported, rooted in unreliable methodology, and unfairly prejudicial.**

9        In addition to excluding Mr. Youssef's opinions as irrelevant, the Court should further

10  exclude many of Mr. Youssef's opinions under Rules 702 and 403 for the additional independent

11  reasons that they are unhelpful, factually unsupported, rooted in unreliable methodology, and/or

12  unfairly prejudicial. These include at least Mr. Youssef's (1) implications that Pegasus harmed

13  WhatsApp's servers, (2) description of NSO's software as "spyware," (3) speculation that NSO

14  intends to (and will) use WhatsApp for future installation vectors, (4) misrepresentation that

15  Pegasus successfully exploited 1,500 target devices, and (5) miscasting of Pegasus compliance with

16  WhatsApp server rules as a form of "camouflage."

17  **1.      Mr. Youssef's implications that Pegasus damaged WhatsApp's servers**

18  **or service are factually unsupported.**

19       The Court should exclude Mr. Youssef's many vague and prejudicial opinions implying

20  that Pegasus somehow damaged the WhatsApp servers or service. These include at least Mr.

21  Youssef's false and/or vague opinions that Pegasus (1) altered or deleted data from WhatsApp

22  servers, (2) "compromised," "hacked," "exploited," or "abused" those servers, and (3) "impaired

23  the integrity of" the servers. Such opinions should be excluded under Rules 702 and 403 because

24  they are not tied to the facts of this case and are unfairly prejudicial. *Marion Healthcare, LLC v. S.*

25  *Ill. Healthcare*, No. 3:12-CV-871-MAB, 2020 WL 1527771, at *6 (S.D. Ill. Mar. 31, 2020), *aff'd*

26  *sub nom. Marion HealthCare, LLC v. S. Ill. Hosp. Servs.*, 41 F.4th 787 (7th Cir. 2022) (excluding

27  expert testimony relying on "assumptions … not based on evidence in the record").

28

MOTION TO EXCLUDE OPINIONS OF DAVID
YOUSSEF

The evidence is uniform that Pegasus's use of WhatsApp's servers was innocuous to the operation of WhatsApp's servers and service. In Mr. Youssef's own words, Pegasus "was designed to … avoid inflicting collateral damage to the [WhatsApp] services," and it used those services "without causing destruction." (Akro Decl. Exh. C ¶ 86.) As WhatsApp's internal investigation of the May 2019 incident concluded, "[t]he WhatsApp servers were not compromised by this attack." (Akro. Decl., Exh. F at 4.)  Consistent with this conclusion, WhatsApp's 30(b)(6) designee (Claudiu Gheorghe) agreed at his deposition that Pegasus "d[id] not impair the availability of the [WhatsApp] servers" (Akro. Decl. Exh. H at 183:11-12) or even "slow[] down the WhatsApp servers" (*Id.* at 250:14-15). Facebook security engineer Drew Robinson testified that Pegasus exploit commands were not executed on WhatsApp servers (Akro. Decl. Exh. I at 250:3-10, 268:13-14), and Mr. Youssef confirmed he was unaware of any fact to the contrary (Akro. Decl. Exh. A at 179:23-180:4). Mr. Gheorghe further testified that Pegasus "did not corrupt any data on the [WhatsApp] servers" (Akro Decl. Exh. H at 184:6-7) and "didn't delete any of WhatsApp's data from WhatsApp's servers" (*Id.* at 250:22-251:1). Thus, Pegasus caused no damage to WhatsApp's servers or services.

Notwithstanding the uniformity of this evidence and Mr. Youssef's own admissions that Pegasus avoided any "collateral damage" to WhatsApp's servers, Mr. Youssef's reports and deposition testimony include a slew of vague, baseless, and prejudicial opinions insinuating that Pegasus nevertheless somehow damaged WhatsApp's servers or service. Below are salient (but not exhaustive) examples. The Court should order that Mr. Youssef may not make any representation that Pegasus damaged WhatsApp's servers or service, including at least the representations below.

**1.** Mr. Youssef's opening report (at 34) includes a section title falsely representing that Pegasus "Altered, Damaged, or Deleted Data *from WhatsApp Servers*" (emphasis added). That opinion should be excluded under Rule 702 because it is not tied to the facts of this case, which uniformly contradict the opinion. As WhatsApp's 30(b)(6) designee (Claudiu Gheorghe) testified, Pegasus "did not corrupt any data on the [WhatsApp] servers" (Akro. Decl. Exh. H at 184:6-7) and "didn't delete any of WhatsApp's data from WhatsApp's servers" (*Id.* at 250:22-251:1). Mr. Youssef's report cites no evidence to the contrary. Indeed, the section bearing the objectionable

1    title—*i.e.*, that Pegasus "Altered, Damaged, or Deleted Data from WhatsApp Servers" (Akro. Decl.

2    Exh. B ¶¶ 131-32)—fails to identify any data purportedly "Altered, Damaged, or Deleted Data from

3    WhatsApp Servers." Instead, it only cites evidence that data was purportedly altered "*on Target*

4    *Devices*." Mr. Youssef's opinion that Pegasus altered, damaged, or deleted data from WhatsApp

5    servers should therefore be excluded under Rule 702 as unsupported and not based on the facts of

6    this case.

7        **2.** As discussed in the previous section, Mr. Youssef also opined repeatedly that NSO

8    "compromised," "hacked," "exploited," or "abused" WhatsApp's servers. *See supra* § IV.A. That

9    opinion should be excluded under Rules 702 or 403 as either untethered from the facts of this case

10   or too vague to help the trier of fact.

11       For example, Mr. Youssef's opinion that Pegasus "compromised the WhatsApp server"

12   (Akro. Decl. Exh. A at 200:8-9)—indeed, that the "servers were absolutely compromised" (*id.* at

13   202:3)—contradicts WhatsApp's own internal conclusion that "[t]he WhatsApp servers were not

14   compromised." (Akro. Decl. Exh. F at 4.) If Mr. Youssef intended "compromised" to mean

15   something different than it means in WhatsApp's internal documents, Mr. Youssef has not said.

16   Indeed, Mr. Youssef has made no serious effort to explain what he means by "compromising" at

17   all: he has cited no accepted understanding of that term in any industry or field of study, let alone

18   tied any such understanding to the facts of this case. Whatever he means, Mr. Youssef's opinion

19   that the WhatsApp servers were "compromised" is difficult to reconcile with the undisputed

20   evidence (cited above) that Pegasus did not impair the availability of WhatsApp servers, slow them

21   down, delete or alter data on them, or execute any foreign code on them.[2]

22       The fairest reading of Mr. Youssef's opinion is that he uses "compromised" simply as a

23   pejorative shorthand to describe Pegasus sending messages over the WhatsApp service that

24   WhatsApp did not want users to send. (*See, e.g.*, Akro. Decl. Exh. A at 186:4-8 (Mr. Youssef

---

[2] To the extent that Mr. Youssef's "compromised" testimony is intended to convey that the reputation of the WhatsApp platform, system or servers has been impaired, such testimony would be improper end run around an agreement made by the parties. Plaintiffs agreed to not introduce evidence or argument about any possible injuries to their reputation in support of any theory of recovery (both legal and equitable), in order to avoid responding to discovery propounded by Defendants related to Plaintiffs' reputation. Akro. Decl. ¶ 12.

opining that Pegasus "compromised" the WhatsApp servers because it used them "to deliver malicious code via WhatsApp servers … to WhatsApp client applications").) To the extent that is Mr. Youssef's meaning, his opinion should be excluded as unhelpful to the trier of fact because the fact that Pegasus sent installation messages through WhatsApp servers is undisputed, and irrelevant to the damages trial. To whatever extent the opinion is relevant, Mr. Youssef should precluded (under Rule 403) from expressing it in terms of "compromise," because using that term risks leaving the misimpression that Pegasus somehow damaged the functioning of WhatsApp's servers or service, when the undisputed evidence is that no such damage occurred.

Similar problems attend the other vague pejoratives Mr. Youssef uses (apparently interchangeably) to describe Pegasus's access to WhatsApp servers—*e.g.*, "hacked," "exploited," "abused," *etc*. These terms are equally vague, and Mr. Youssef provides no explanation of what they mean either. Instead, Mr. Youssef appears to simply use these phrases interchangeably as shorthand for the fact that Plaintiffs did not want Pegasus sending installation messages over WhatsApp servers. The opinions using these alternative phrases should therefore be excluded for the same reasons as Mr. Youssef's vague "compromised" language.

**3.** The Court should likewise exclude Mr. Youssef's false opinion that Pegasus "impaired the integrity of WhatsApp servers." (Akro. Decl. Exh. C ¶ 84.) The phrase "impairment to the integrity" is a legal term from the CFAA's definition of "damage." 18 USC 1030(e)(8). Consequently, if Youssef is offering a legal opinion on whether Pegasus impaired the integrity of WhatsApp's servers, that opinion should be excluded. *See Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) ("matters of law" are "inappropriate subjects for expert testimony"). If Mr. Youssef is instead using the phrase in some other way, the opinion should be excluded under Rules 702 or 403 as unsupported, vague, and confusing.

As with Mr. Youssef's vague or false representation that Pegasus "compromised" WhatsApp servers, his representation that Pegasus "impaired the integrity of WhatsApp servers" contradicts WhatsApp's admissions that Pegasus "d[id] not impair the availability of the [WhatsApp] servers" (Akro. Decl. Exh. H at 183:11-12), "did not corrupt any data on the [WhatsApp] servers" (*Id.* at 184:6-7), and did not "slow[] down the WhatsApp servers" (*Id.* at

250:14-15), and that "[t]he WhatsApp servers were not compromised." (Akro. Decl., Exh. F.) Given these admissions, it is difficult to understand what Mr. Youssef could possibly mean when he opines that Pegasus "impaired the integrity of WhatsApp servers." Mr. Youssef's opinion that Pegasus "impaired the integrity of WhatsApp servers" is therefore unsupported and untethered from the facts of this case.  Again, if Mr. Youssef means that the reputation of WhatsApp was affected, this testimony would be an end-run around the parties' agreement that Plaintiffs would not introduce evidence or argument about injuries to their reputation so as to avoid responding to Defendants' discovery about Plaintiffs' reputation.  (Akro. Decl. ¶ 12.)

Once again, Mr. Youssef provides little help to discern the meaning of his opinion. He does not provide any express definition of "impaired the integrity" of a server. And he does not cite any accepted definition from any industry, literature, or academic circle (let alone tie that definition to the facts of this case). The best Mr. Youssef offers is that Pegasus "impaired the integrity" of the WhatsApp servers because it "leveraged" those servers "without raising an alarm." (Akro. Decl. Exh. C ¶ 86.) But all permitted uses of a server "leverage" the server "without raising an alarm," and Mr. Youssef fails to explain why Pegasus's permitted use was different. Mr. Youssef's opinion that Pegasus "impaired the integrity of WhatsApp servers" is therefore not only unsupported, but moreover too vague to help the trier of fact. And to whatever extent it might be relevant to damages (it is not), the opinion should be excluded as unfairly prejudicial and likely to cause confusion because the phrasing ("impairing the integrity" of a server) is likely to falsely imply damage to the server.

\*      \*      \*

In sum, the evidence is uniform that Pegasus used WhatsApp servers only as a conduit through which to exchange messages with target devices, and Pegasus did not damage WhatsApp's servers or service in any way. The Court should therefore preclude Mr. Youssef from offering any contrary opinion. The prohibition should include (but not be limited to) opinions that Pegasus (1) altered, damaged, or deleted data from WhatsApp servers, (2) "compromised," "hacked," "exploited," or "abused" WhatsApp servers, or (3) "impaired the integrity of … WhatsApp servers."

2. **Mr. Youssef's characterization of Pegasus as "spyware" is unhelpful, unreliable, and prejudicial.**

The Court should also preclude Mr. Youssef's opinion that Pegasus should be labeled "spyware" (Akro. Decl. Exh. B ¶¶ 108-17) because applying that pejorative to Pegasus is (1) not helpful to the trier of fact, (2) not the product of reliable principles, and (3) unfairly prejudicial and confusing.

*First*, Mr. Youssef's opinion that Defendants' software is "spyware" should be precluded under Rule 702 because it will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(d). Mr. Youssef provides no explanation—neither in his reports nor in his deposition testimony—of what evidence or disputed fact would be clarified by an expert opinion that NSO's Pegasus software should be saddled with the "spyware" pejorative. That is because the "spyware" label would not lend additional clarity to any evidence or disputed fact in this case—doubly so now that the trial has been limited to damages.

*Second*, Mr. Youssef's opinion that Defendants' software is "spyware" should further be precluded under Rule 702 because it is not "the product of reliable principles and methods." Fed. R. Evid. 702(c). Mr. Youssef supports his opinion by reasoning that Pegasus satisfies a definition of "spyware" that Mr. Youssef appears to have simply made up (*i.e.*, any software that "involves secretly installing malicious software on a device without the knowledge of its user, which then monitors, captures, and extracts the user's activity on the device"). (Akro. Decl. Exh. B ¶ 108.) Mr. Youssef does not argue that his definition of "spyware" is accepted by anyone else (such as by members of any relevant industry or academic field). Nor does Mr. Youssef cite any evidence of such acceptance. Mr. Youssef's opinion that certain NSO software satisfies his own personal definition of "spyware"—without regard to whether it satisfies anyone else's—is not the product of reliable principles and methods. *See Grajeda v. Vail Resorts Inc.*, No. 2:20-CV-00165, 2023 WL 2613543, at *6 (D. Vt. Mar. 23, 2023) ("Courts have, however, required identification of the custom, practice, or experience that led to [an expert's] conclusion or provided a basis for [an expert's] opinion.").

*Third*, to whatever extent it is relevant to any issue, Mr. Youssef's opinion that Defendants' software is "spyware" should be precluded under Rule 403 because "its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. As discussed above, the "spyware" label has no probative value because it is unclear what relevance it could have to any pertinent fact dispute. On the other hand, the label is unfairly prejudicial because it implies that NSO's Pegasus software is inherently improper and thus risks misleading the jury. Consequently, to whatever extent the opinion is relevant, it should be excluded under Rule 403.

In sum, Mr. Youssef's characterization of some portion of NSO's software as "spyware," based on a definition Mr. Youssef appears to have made up, should be excluded under Rule 702 as unhelpful and unreliable, and under Rule 403 as unfairly prejudicial and confusing.

### 3. Mr. Youssef's prediction that NSO intends to (and will) create more WhatsApp-based delivery vectors is impermissible, unqualified, and not based on reliable methodology.

The Court should further exclude Mr. Youssef's opinions that Defendants have the "intent … to circumvent WhatsApp's security mechanisms" and his prognostication that therefore, "Defendants are likely to continue targeting, researching, and developing exploits for WhatsApp Servers." (Akro. Decl. Exh. B ¶¶ 154-55; *see also id.* at ¶ 11 ("Defendants will continue to develop exploits targeting [WhatsApp] servers and client applications."), ¶ 153 ("[I]t is my opinion that Defendants are likely to continue to target WhatsApp in the future.").) The Court should exclude these opinions as unreliable because they (1) constitute improper speculation about NSO's intent and (2) are not based on any reliable methodology, but instead, on Mr. Youssef's guesswork.

*First*, Mr. Youssef's opinions about NSO's intentions should be excluded as impermissible expert testimony on a defendant's intent. "Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Lanard Toys Ltd. v. Anker Play Prods., LLC*, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) (collecting cases). Where nothing suggests the expert "has personal knowledge of the internal motivation for any of the Defendant's actions," the expert has no more basis for opining on the motivation than the jury. *Baldonado v. Wyeth*, No. 04 C 4312,

2012 WL 1802066, at *8 (N.D. Ill. May 17, 2012). Thus, expert testimony on intent is improper because "the jury is fully capable of considering the issue of intent based on the evidence presented at trial." *Id.*; *see, e.g., Smith v. Wyeth-Ayerst Lab'ys Co.*, 278 F. Supp. 2d 684, 700 (W.D.N.C. 2003) (holding that expert testimony on "corporate intent" is "inadmissible" because "the question of intent is to be determined by the jury, not experts"). Here, Mr. Youssef does not purport to have any personal knowledge about NSO's intentions for the future. Rather, he simply speculates about those intentions, based on the facts of the case and his own intuition about what might motivate NSO. His testimony regarding NSO's intentions is therefore improper.

*Second*, Mr. Youssef's predictions about NSO's future product strategy are further inadmissible under Rule 702 because both because Mr. Youssef is unqualified to provide that opinion and because he has not based that opinion on any reliable methodology.

At the threshold, Mr. Youssef is unqualified to opine on NSO's future business activities. To provide an expert opinion, one must have the requisite qualifications. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 550 (C.D. Cal. 2014). That includes expert opinions on matters of business. *See, e.g., Ryanair DAC v. Booking Holdings Inc.*, No. CV 20-1191-WCB, 2024 WL 3732498, at *50 (D. Del. June 17, 2024) (excluding business-related expert testimony of Plaintiffs' other expert Anthony Vance because he is not an expert on business matters). Here, Mr. Youssef has no qualifications in business (much less in the lawful intercept industry), so he is unqualified to analyze NSO's business model or to speculate about the company's future strategic product direction. Nor is Mr. Youssef qualified to opine on WhatsApp's "worldwide popularity" or on how that popularity might affect NSO's motivations to use WhatsApp as a delivery mechanism. Plaintiffs did not disclose Mr. Youssef as an expert in these subjects, so the Court should exclude his opinions concerning them.

Even if Mr. Youssef were qualified to opine on business matters, the Court should exclude his predictions regarding NSO's future business choices for the second, independent reason that the predictions are not based on any reliable methodology. Courts exclude expert predictions that are based on the expert's experience alone rather than on any reliable methodology. *See, e.g., Est. of Gaither ex rel. Gaither v. D.C.*, 831 F. Supp. 2d 56, 68–70 (D.D.C. 2011) (excluding expert

1   opinion because the predictive opinion did not "offer some indication of the 'error rate' of [the

2   expert's] predictive methodology"); *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281,

3   1289 (D. Kan. 2009) (excluding opinions for failure to establish reliability and scientific validity;

4   "There is simply nothing to counter the possibility that Dr. Fraser simply made up these opinions

5   and method from whole cloth."). While "an expert might draw a conclusion from a set of

6   observations based on extensive and specialized experience," there must still be some evidence that

7   his methodology was reliable, such as evidence that the methodology was used by "other experts

8   in the industry" or that "articles or papers … validate the expert's approach." *Kumho Tire Co. v.*

9   *Carmichael*, 526 U.S. 137, 157 (1999). Thus, "nothing in either *Daubert* or the Federal Rules of

10  Evidence requires a district court to admit opinion evidence that is connected to existing data only

11  by the ipse dixit of the expert." *Id.*

12      But that is all Mr. Youssef provides here. To support his opinion that NSO will develop

13  new delivery vectors that utilize WhatsApp, Mr. Youssef offers three disjointed and context-free

14  observations: (1) "Defendants' business model" allegedly "requires them to continuously identify

15  new software vulnerabilities," (2) following the 2018 code changes, Defendants purportedly

16  "attempted to either salvage or repurpose aspects of the 'heaven' exploit," and (3) "the worldwide

17  popularity of WhatsApp" makes WhatsApp "a natural target." (Akro. Decl. Exh. B ¶¶ 153-155.)

18  But these three observations are a far cry from a predictive "methodology" sufficient to pass muster

19  under *Daubert*.

20      For example, Mr. Youssef fails to identify or consider even a single reason why NSO might

21  *not* develop new delivery vectors using WhatsApp. Missing is any expert-level analysis of NSO's

22  product strategy. Such an analysis would include consideration and analysis of myriad business and

23  technology factors, such as NSO's resources, NSO's risk tolerance, NSO's resource allocation

24  strategy, lawful intercept industry market conditions, the competitive landscape, the technological

25  landscape, the availability of alternative vectors, costs associated with developing and maintaining

26  different vectors, comparative market values of different delivery vectors, demand from law

27  enforcement and intelligence agencies, and so forth. Mr. Youssef's methodology—consisting of

28

15

1    three observations and a hunch—falls woeful short of the sort of rigorous predictive methodology

2    that would entitle him to prognosticate about the future in the presence of the jury.

3         The Court should therefore preclude Mr. Youssef from offering any version of an opinion

4    that NSO intends to or will develop delivery vectors using WhatsApp. In particular, the Court

5    should exclude (1) Mr. Youssef's opinion that NSO *intends* to develop additional WhatsApp-based

6    vectors because it constitutes an impermissible opinion about someone else's subjective intent, and

7    (2) Mr. Youssef's opinion that NSO *will* develop such vectors because Mr. Youssef is unqualified

8    to predict NSO's future business direction and because his cursory predictive methodology is

9    unreliable.

10                **4.    Mr. Youssef's opinion that Pegasus "successfully exploited 1,500 target**

11                        **devices" is unsupported.**

12        The Court should exclude Mr. Youssef's "opinion that [Pegasus] was used to successfully

13   exploit at least 1,500 targeted devices" (Akro. Decl. Exh. B ¶¶ 11; *see also id.* ¶¶ 118-20) not only

14   because it is irrelevant (as discussed supra in § IV.A) but moreover because the opinion is

15   unsupported by the facts of the case and thus fails the requirements of Rule 702.

16        The evidence is clear that the around 1,500 users WhatsApp identified as victims are those

17   users who received an initial Pegasus exploit message, not those whose devices were "*successfully*

18   *exploit[ed]*," as Youssef opines. As WhatsApp engineer Mr. Barcons Palau explained (Akro. Decl.,

19   Exh. G at 205:15-207:18), the users that WhatsApp identified as "victims" were simply those who

20   received the first message of the Pegasus exploit (*i.e.*, the "call offer stanza"). But because the

21   Pegasus exploit was "a multistage" process that could (and often did) fail in subsequent stages,

22   simply receiving the initial exploit message did not mean that the receiver's device was successfully

23   exploited. (*Id.*; *see also* Akro. Decl. Exh. H at 232:20-21 ("this exploit is not always reliable," and

24   "sometimes it would work, sometimes not").)  As Mr. Barcons Palau testified, "not all those devices

25   [that received the initial exploit message] are actually … victims" because "the complex multistep

26   attack" was "not always complete[d] successfully." (Akro. Decl. Exh. G at 207:12-18.)

27        Because of this uncertainty, WhatsApp could only guess at whether any Hummingbird (i.e.,

28   covert Android) exploit chain was successfully executed on any given device. (Akro. Decl. Exh. H

                                              16

at 231:10-236:8.) Moreover, it had no way at all to determine whether even a successful exploitation resulted in the installation of the Pegasus agent or whether that agent was ever used to exfiltrate any data from those devices. (*Id.* at 238:10-12 ("I don't have any information that shows -- that confirms -- as evidence of the data exfiltration from the phone").)

Mr. Youssef's "opinion that [Pegasus] was used to successfully exploit at least 1,500 targeted devices" (Akro. Decl. Exh. B ¶ 11) should therefore be excluded as unsupported by the facts of the case.

### 5. Mr. Youssef's opinion that Pegasus messages were "camouflaged" is not supported by reliable methodology.

The Court should also exclude Mr. Youssef's opinion that Pegasus's compliance with the rules of the WhatsApp servers was a form of "camouflage." (Akro. Decl. Exh. B ¶ 100). That opinion is not only irrelevant to the question of damages, but it is also illogical because it casts Pegasus's compliance with server rules as a form of subterfuge. Mr. Youssef's opinion in this regard should therefore be excluded under Rule 702 as neither sufficiently tied to the facts of this case nor the product of reliable methodology.

All Pegasus messages complied with the technical rules imposed by WhatsApp servers. (Akro Decl. Exh. D ¶¶ 125-138; Akro. Decl. Exh. E ¶¶ 31-32, 44.) To be sure, the Pegasus messages included some Pegasus-specific content that other clients would not have sent, but WhatsApp's servers undeniably permitted that content. Indeed, Mr. Youssef admitted that, had the Pegasus messages not complied with the WhatsApp servers' technical rules, the servers would not have processed those messages. (Akro. Decl. Exh. A at 219:3-21 ("the relay server was able to understand the headers in that packet and process it"); (Akro. Decl. Exh. B ¶ 127 (NSO "creat[ed] messages that appeared to be from a legitimate WhatsApp Client.").) Consequently, compliance with the technical rules was a prerequisite for *any application* to use the WhatsApp servers.

Nevertheless, Mr. Youssef casts this compliance with the server's technical rules as a form of subterfuge. Mr. Youssef equates compliance with the server's access rules as "reproduc[ing] transmission properties *of the WhatsApp Client Application*" and thus creating the false impression that the messages came "from a legitimate WhatsApp Client." (Akro. Decl. Exh. B ¶¶ 126-27.) In

Mr. Youssef's view, Pegasus's compliance with the WhatsApp server rules thus constituted "camouflaging manipulated voice call messages as legitimate messages from a user running the WhatsApp Client Application." (*Id.* at ¶ 100.)

Mr. Youssef's view is nonsensical and confusing. Because WhatsApp's servers were not programmed to determine whether any message came from an official WhatsApp client, it was logically impossible to "trick" those servers into determining that a given message came from an official WhatsApp client. Mr. Youssef appears to be imbuing WhatsApp's servers with certain assumptions found nowhere in their code. The only limitations found in that code were the technical rules with which Pegasus complied. Compliance with a server's technical access rules cannot be a form of "camouflage."

The Court should reject any testimony from Mr. Youssef that NSO "camouflaged" or otherwise concealed the content of Pegasus messages by complying with the WhatsApp servers' access rules. Such an opinion should be excluded under Rule 702 because it is neither helpful to the trier of fact nor the product of reliable principles. *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y.), *abrogated on other grounds by Casey v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011) (failing to "articulate industry customs or standards for consideration" is "so vague as to be unhelpful to the jury").

## V.    <u>CONCLUSION</u>

The Court should exclude or limit Mr. Youssef's opinions as irrelevant because they do not relate to the issue of damages, which is the only issue for trial. The Court should further exclude those of Mr. Youssef's opinions discussed above in Section IV.B as unhelpful, unsupported by sufficient evidence or facts, the product of unreliable methodology, and/or unfairly prejudicial.

Dated: January 9, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*

JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*