JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
*jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
*acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,

Plaintiffs,

v.

NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,

Defendants.

Case No. 4:19-cv-07123-PJH

**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE THE SECOND SUPPLEMENTAL REBUTTAL EXPERT REPORT OF GREGORY A. PINSONNEAULT**

Date: February 13, 2025
Time: 2:00 p.m.
Place: Courtroom 3, Ronald V. Dellums Federal Building & U.S. Courthouse, 1301 Clay Street, Oakland, California

Action Filed: 10/29/2019

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. RELEVANT BACKGROUND ..... 3

A. On August 30, 2024, Plaintiffs Submitted an Expert Report Calculating "Disgorgement" Profits For The Period From April to May 2019. ..... 3

B. Defendants Timely Submitted Mr. Pinsonneault's Rebuttal Report Rebutting Plaintiffs' August 30 Report. ..... 4

C. The Same Day Rebuttal Reports Were Due, Plaintiffs Served A New Report Replacing Ms. Trexler's "Disgorgement" Opinion And Expanding The Time Period For Her Calculation Of Defendants' Profits. ..... 4

D. Mr. Pinsonneault Submitted A Supplement Rebutting Ms. Trexler's New "Disgorgement" Opinion and Reserving The Right To Apply His Previously-Disclosed Methods To Calculate Profits Over Additional Time Periods, If Needed. ..... 6

E. Shortly After Plaintiffs Revealed A "Gotcha" Strategy at Mr. Pinsonneault's Deposition, He Submitted The November 27 Supplement. ..... 6

F. Defendants Offered a Further Deposition Regarding The November 27 Supplement, But Plaintiffs Declined To Schedule One. ..... 7

III. ARGUMENT ..... 7

A. Mr. Pinsonneault's Supplement Is a Timely Rule 26(e)(2) Supplemental Disclosure. ..... 8

B. Defendants' Submission of the November 27 Supplement Was Justified and Harmless To Plaintiffs. ..... 12

C. Plaintiffs' Request for a Further Deposition Should Be Denied. ..... 14

IV. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnew v. Cater*,
2022 WL 313756, at *2 n.3 (N.D. Ill. Feb. 2, 2022) .... 11

*Allstate Ins. Co. v. Maytag Corp.*,
1999 WL 203349 (N.D. Ill. Mar. 30, 1999) .... 8

*Burger v. Excel Contractors, Inc.*,
2013 WL 5781724 (D. Nev. Oct. 25, 2013) .... 12, 13, 14

*Charter School Solutions v. GuideOne Mut. Ins. Co.*,
2019 WL 5258055 (W.D. Tex. June 28, 2019) .... 1, 10, 12

*Clark v. California*,
2010 WL 11636687 (N.D. Cal. Mar. 18, 2010) .... 8, 10, 11

*Confederated Tribes of Siletz Indians of Ore. v. Weyerhauser Co.*,
2003 WL 23715981 (D. Ore. Jan. 21, 2003) .... 9, 12

*Gerawan Farming, Inc. v. Rehrig Pacific Co.*,
2013 WL 1982797 (E.D. Cal. May 13, 2013) .... 10

*Hubbs v. Big Lots Stores, Inc.*,
2019 WL 12536593, at *5 (C.D. Cal. July 2, 2019) .... 11

*Innovation Ventures, LLC v. NVE, Inc.*,
90 F. Supp. 3d 703 (E.D. Mich. 2015) .... 9

*Lanard Toys Ltd. v. Novelty, Inc.*,
375 F. App'x 705 (9th Cir. 2010) .... 12

*Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.*,
2019 WL 3554938 (S.D. Cal. Aug. 5, 2019) .... 9

*Linder v. Meadow Gold Dairies, Inc.*,
249 F.R.D. 625 (D. Haw. 2008) .... 10

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Systems, Inc.*,
2008 WL 4601038 (N.D. Cal. Oct. 15, 2008) .... 1, 8, 10

*Miller v. Pfizer, Inc.*,
356 F.3d 1326 (10th Cir. 2004) .... 9

*O'Connor v. Boeing North American, Inc.*,
2005 WL 6035243 (C.D. Cal. Sept. 12, 2005) .... 9

*Pickens v. U.S.*,
750 F. Supp. 2d 1243 (D. Ore. 2010) ... 11

*Qualcomm Inc. v. Broadcom Corp.*,
2006 WL 5201392 (N.D. Cal. Dec. 14, 2006) ... 12, 13

*Rollins v. Mr. Heather, Inc.*,
2018 WL 11454741 (N.D. Ala. Sept. 11, 2018) ... 9, 11

*Talbert v. City of Chicago*,
236 F.R.D. 415 (N.D. Ill. 2006) ... 12

*Wechsler v. Macke Intern. Trade, Inc.*,
221 F.R.D. 619 (C.D. Cal. 2004) ... 11

*Wilson v. Sundstrand Corp.*,
2003 WL 22012673 (N.D. Ill. Aug. 25, 2003) ... 9, 11

**Other Authorities**

Fed. R. Civ. P. 26(a) ... 1, 8, 9, 14

Fed. R. Civ. P. 26(e) ... *passim*

Fed. R. Civ. P. 37 ... 1, 12, 14

## I. INTRODUCTION

Plaintiffs move the Court to strike a narrowly-focused supplemental report from Defendants' expert, Gregory A. Pinsonneault,[1] that contains ***no new or different opinions*** from his prior disclosures and simply presents calculations of Defendants' profits for additional time periods over which Plaintiffs now claim (contrary to their own allegations and the initial report of their damages expert, Dana Trexler) to seek disgorgement. The additional calculations presented in Mr. Pinsonneault's November 27 Supplement use ***the same methodology and data disclosed in his earlier reports***. Plaintiffs' motion is meritless and should be denied. Supplementing a damages opinion with additional calculations using previously-disclosed methods and data is plainly permissible under Federal Rule 26(e), especially where, as here, the expert has provided notice of his intent to do so if needed. *See, e.g. Charter School Solutions v. GuideOne Mut. Ins. Co.*, 2019 WL 5258055, at *4 (W.D. Tex. June 28, 2019) (report that merely included "new calculations" consistent with prior opinion "plainly supplement[ed]" earlier report as permitted by Rule 26(e)); *Medtronic Vascular, Inc. v. Abbott Cardiovascular Systems, Inc*., 2008 WL 4601038, at *1 (N.D. Cal. Oct. 15, 2008) (a supplement that "does not constitute a substantive revision of [the expert's earlier] report" and does not "offer new opinions or conclusions" is appropriate under Rule 26(e)). Because Defendants disclosed Mr. Pinsonneault's November 27 Supplement well before their Rule 26(a)(3) pretrial disclosures were due, it is timely under Rule 26(e)(2). *See* Fed. R. Civ. P. Rule 26(e)(2) (providing that supplements to expert disclosures "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due"). For this reason alone, Plaintiffs' motion should be denied.

But if the Court concludes that the November 27 Supplement does not fall within Rule 26(e) or is otherwise not timely under the case schedule, Plaintiffs' motion still should be denied because Defendants were substantially justified in submitting the November 27 Supplement when they did, and the timing of its submission is entirely harmless to Plaintiffs. *See* Fed. R. Civ. P. 37(c)(1) (providing that even late-disclosed information may be used at trial where failure to comply with

[1] The Second Supplemental Rebuttal Expert Report of Gregory A. Pinsonneault dated November 27, 2024 (hereinafter, the "November 27 Supplement").

the schedule "was substantially justified or is harmless").  Indeed, it was Plaintiffs' decision to completely overhaul and replace Ms. Trexler's initial August 30, 2024, disgorgement opinion through an entirely new report served on September 21, 2024, the same night that Mr. Pinsonneault's initial rebuttal was due (and with no prior notice to Defendants), that necessitated the supplementation about which Plaintiffs now complain.  Plaintiffs' gamesmanship prejudiced Defendants by forcing them to incur significant expense for Mr. Pinsonneault to prepare an initial rebuttal to Ms. Trexler's August 30, 2024, disgorgement opinion that was mooted when Plaintiffs belatedly replaced it with Ms. Trexler's new September 21 report and further required Mr. Pinsonneault to prepare another report rebutting that Ms. Trexler's new opinions.  Mr. Pinsonneault's November 8, 2024, supplement rebutting Ms. Trexler's September 21 report noted his disagreement with her inclusion of profits earned during time periods outside of the period spanning from January 1, 2019, through May 19, 2019, and accordingly, did not include such calculations in his November 8 supplement.  But he made clear that, if the Court held that profits for any additional time periods were subject to disgorgement, those profits should be calculated using the same methods disclosed in his initial report, and he expressly reserved the right to perform those calculations to the extent needed.

At Mr. Pinsonneault's November 20, 2024, deposition, Plaintiffs' counsel posed questions revealing a disingenuous strategy by which they would seek to prevent him from testifying about the appropriate calculation of Defendants' profits for periods other than January 1, 2019, through May 19, 2019, even though he had clearly disclosed the methods and data that he would use to perform such calculations and confirmed his intention to supplement his disclosures with such calculations if needed.  Just one week after his deposition, Defendants provided Plaintiffs with Mr. Pinsonneault's November 27 Supplement setting forth his calculations for the additional periods that Plaintiffs claim are relevant.  Several weeks then remained in the period to complete expert depositions, and Defendants offered to make Mr. Pinsonneault available for a further deposition on the narrow subject of the November 27 Supplement.  Plaintiffs declined to take Defendants up on their offer.

In these circumstances, the timing of the November 27 Supplement was both substantially

justified and harmless to Plaintiffs. The November 27 Supplement involved no surprise or prejudice to Plaintiffs, as it simply set forth calculations Mr. Pinsonneault had previously reserved the right to perform if needed, using methods and data already disclosed. Defendants provided the November 27 Supplement within one week after Plaintiffs' deposition examination alerted Defendants that Plaintiffs would seek to exclude the calculations (simply because they had not been expressly set forth in a report), and did so with ample time for Plaintiffs depose Mr. Pinsonneault about these further calculations to the extent they thought it necessary to do so. Accordingly, any claimed prejudice was easily cured here, and the broader case schedule was not disrupted. Finally, under the circumstances summarized above (and described more fully below), there is no basis to infer (nor was there) any bad faith or willfulness on Defendants' part concerning the November 27 Supplement.

For all of these reasons, and as set for the more fully below, Plaintiffs' motion should be denied.

## II. RELEVANT BACKGROUND

### A. On August 30, 2024, Plaintiffs Submitted an Expert Report Calculating "Disgorgement" Profits For The Period From April to May 2019.

Plaintiffs' Complaint alleged that Defendants engaged in the conduct challenged in this case during a narrow window of time between "April 2019 and May 2019." (Complaint, Dkt. 1, ¶¶ 1, 33, 37, 39, 42, 50.) Plaintiffs never amended their Complaint.

On August 30, 2024, the deadline for submission of affirmative expert reports, Plaintiffs served Defendants with a report from Ms. Trexler addressing damages issues and including an opinion purporting to quantify profits earned by Defendants which Plaintiff claim should be disgorged. (*See* Craig Decl. ¶ 3; Dkt. 487-3, ¶¶ 89–123.) Consistent with the allegations in Plaintiffs' Complaint, Ms. Trexler's August 30 report focused on the time period between April 2019 and May 2019 when calculating the profits allegedly subject to disgorgement. (Dkt. 487-3, ¶ 116 ("***Defendants' alleged conduct and targeting of the 1,500 specific devices occurred during April and May 2019***. ***Accordingly***, for purposes of determining profit on Defendants' revenues calculated in the preceding section, ***I considered available profit information for 2019***.").)

      **B. Defendants Timely Submitted Mr. Pinsonneault's Rebuttal Report Rebutting Plaintiffs' August 30 Report.**

In accordance with the case schedule, on September 21, 2024, Defendants served Plaintiffs with Mr. Pinsonneault's Rebuttal Expert Report. (*See* Craig Decl. ¶ 4 & Dkt. 487-5.) Mr. Pinsonneault's September 21 Rebuttal Report addressed numerous flaws in Ms. Trexler's August 30 Report, including with respect to her purported calculation of Defendants' profits allegedly "subject to disgorgement," and showed his own calculation of the maximum revenues attributable to the conduct challenged in the Complaint that could relate to Plaintiffs' request for disgorgement. (Dkt. 487-5, ¶¶ 68–84, ¶¶ 97–113.) Consistent with Ms. Trexler's own calculations in her August 30 Report, Mr. Pinsonneault focused on the early 2019 time period. (*Id.*, ¶ 97.) While noting that Plaintiffs appeared to seek, and Ms. Trexler's August 30 Report calculated, only allegedly relevant profits earned between April and May 2019, Mr. Pinsonneault conservatively considered the period spanning from January 1, 2019, through May 19, 2019. (*Id.*)

**C. The Same Day Rebuttal Reports Were Due, Plaintiffs Served A New Report Replacing Ms. Trexler's "Disgorgement" Opinion And Expanding The Time Period For Her Calculation Of Defendants' Profits.**

Unbeknownst to Defendants, as Mr. Pinsonneault was preparing his September 21 Rebuttal Report, Plaintiffs were working with Ms. Trexler on a "supplemental" report that would replace her August 30 disgorgement opinion *in toto*, which, once served, would moot the substantial work Mr. Pinsonneault had undertaken to prepare his opinions rebutting that opinion (and the expense Defendants incurred in connection therewith). (*See* Craig Decl. ¶¶ 5–9 & Dkt. 487-6.) Plaintiffs served Defendants with a copy of Ms. Trexler's "supplemental" report late in the evening of September 21, 2024—the same day that Mr. Pinsonneault's Rebuttal Report was due and was served on Plaintiffs. (*See* Craig Decl. ¶ 6.)

Ms. Trexler's September 21 Report employed an entirely new and different methodology for calculating Defendants' alleged profits subject to disgorgement, but it did so based entirely on information contained in a document (the "NSO Revenue Spreadsheet") that Defendants had produced to Plaintiffs on August 26, 2024. (*See* Craig Decl. ¶ 7; Dkt. 487-6, ¶ 6 (explaining that

NSO_WHATSAPP_ 00045858 (which Ms. Trexler calls "Defendants' Spreadsheet") is the basis for her new calculation of profits purportedly subject to disgorgement).) In the section of Ms. Trexler's August 30 Report setting forth her disgorgement opinion, she acknowledged her receipt of the NSO Revenue Spreadsheet and devoted over two full pages to discussing it. (*See* Craig Decl. Dkt. 487-3, ¶¶ 96–99.) She also relied on the NSO Revenue Spreadsheet for a different opinion included in her August 30 Report. (*Id.,* ¶¶ 124–27.) But for reasons known only to her, Ms. Trexler declined to use the NSO Revenue Spreadsheet to determine Defendants' revenues associated with licensing Pegasus for purposes of the August 30 disgorgement opinion. (*Id.*, ¶¶ 89–123.)

In addition to completely changing the methodology underlying her disgorgement opinion, Ms. Trexler's September 21 Report also significantly expanded the time period over which she calculated Defendants' profits purportedly subject to disgorgement from April – May 2019 (in her August 30 Report) to a much broader period spanning from the second quarter of 2018 to the second quarter of 2020. (*See* Dkt. 487-6, Exh. 1.) Again, the source of information Ms. Trexler used for these expanded calculations was the NSO Revenue Spreadsheet that she discussed extensively, but did not use to calculate the disgorgement profits, in her August 30 Report. (*Id.* ¶ 6.)

Mr. Pinsonneault's methodology for determining the maximum revenue earned by NSO that can be fairly attributed to the accused technologies in his September 21, 2024, report, can be described at a high level as follows.

- Determine the accounts from whom a Pegasus customer had a license to use the covert Android installation vectors during the applicable time period and determine the total revenue received by NSO from each such account;
- For each account, apply a "Covert Android Allocation Value" to allocate a portion of the total base license revenue to the covert Android installation vector;
- For maintenance revenue, apply a "maintenance related portion factor" to that revenue.

(Dkt. 487-5 ¶¶ 97-113.) Mr. Pinsonneault then used corporate financial statements of the Defendants to calculate Defendants' costs associated with that revenue, and ultimately, Defendants' profits. (*Id.*) Mr. Pinsonneault's supplemental reports, including the second supplemental report

under attack here, uses the exact same methodology as the one set forth in his initial report for determining NSO's revenues and profits that can be fairly attributed to the accused technologies. (Dkt. No. 490-4 Exhs. B and D.)

**D. Mr. Pinsonneault Submitted A Supplement Rebutting Ms. Trexler's New "Disgorgement" Opinion and Reserving The Right To Apply His Previously-Disclosed Methods To Calculate Profits Over Additional Time Periods, If Needed.**

Ms. Trexler's untimely September 21 re-do of her disgorgement opinion made it impossible for Mr. Pinsonneault to include all of the opinions and calculations set forth in his supplemental reports in his September 21 Rebuttal Report and necessitated supplementation of that report. On November 8, 2024, Mr. Pinsonneault submitted a supplemental report responding to and rebutting the new disgorgement methodology and opinions set forth in Ms. Trexler's September 21 Report. (*See* Craig Decl. ¶ 10; *see also* Dkt. 490-4, Exh. B.) Plaintiffs do not contend (nor credibly could they, given the circumstances) that Mr. Pinsonneault's November 8 Supplement was untimely.

In addition to addressing Ms. Trexler's new methodologies and conclusions regarding disgorgement set forth in her September 21 Report, Mr. Pinsonneault noted his disagreement with Ms. Trexler's inclusion of "profits earned by Defendants outside of the period January-May 2019" when calculating profits allegedly subject to disgorgement. (Dkt. 490-4 Exh. B ¶ 13; *see also id.* ¶¶ 14–17 & 24.) However, Mr. Pinsonneault stated that "If the court determines it is appropriate to include revenue outside of the January 1, 2019 through May 19, 2019 time period, ***I reserve the right to apply the same methodology that I apply in my Initial Rebuttal Report*** to such time periods that the court determines are appropriately included." (*Id.* ¶ 24 (emphasis added).)

**E. Shortly After Plaintiffs Revealed A "Gotcha" Strategy at Mr. Pinsonneault's Deposition, He Submitted The November 27 Supplement.**

Although Mr. Pinsonneault's November 8 Supplement thus made clear the methodology and information he would use to calculate any profits potentially relevant to Plaintiffs' request for disgorgement for periods outside of January 1, 2019, through May 19, 2019, that the Court might rule should be included, at Mr. Pinsonneault's deposition on November 20, 2024, Plaintiffs'

counsel posed a series of questions signaling Plaintiffs' intent to argue that Mr. Pinsonneault should be precluded from testifying about such calculations simply because he had not reduced them to writing in a report. (*See* Dkt. 490-4 Exh. C at 12:22 – 14:18, 15:3–14, 16:15–24.) (Plaintiffs' current motion confirms the sharp practices foreshadowed by their examination of Mr. Pinsonneault.) Accordingly, in an abundance of caution, and within *just one week* following his deposition, Mr. Pinsonneault prepared (and Defendants served on Plaintiffs) his November 27 Supplement, which set forth the calculations of Defendants' relevant profits for the full time period addressed in Ms. Trexler's September 21 Report, using the same methodology described in his September 21 Report. (*See* Craig Decl. ¶ 11; Dkt. 490-4 Exh. D ¶¶ 3–23.) In addition to using the same methodology described in his September 21 Report, Mr. Pinsonneault's November 27 Supplement confirms that the calculations set forth therein are based on the same information that Mr. Pinsonneault disclosed in his September 21 Report and November 8 Supplement. (*See* Dkt. 490-4 Exh. D ¶ 24; Dkt. 490-4 Exh. B ¶ 25.)

### F. Defendants Offered a Further Deposition Regarding The November 27 Supplement, But Plaintiffs Declined To Schedule One.

When serving Mr. Pinsonneault's November 27 Supplement, Defendants' counsel offered to make Mr. Pinsonneault available for a further deposition concerning the November 27 Supplement and noted that Mr. Pinsonneault was "widely available" during the remainder of the period allotted for expert depositions, which extended to December 16, 2024. (Craig Decl. ¶ 12 & Exh. A.) Plaintiffs did not seek to schedule such a deposition. (*See* Craig Decl. ¶ 12.)

## III. ARGUMENT

Plaintiffs' motion to strike Mr. Pinsonneault's November 27 Supplement is meritless and should be denied. The November 27 Supplement does not contain any new opinions that differ from those in Mr. Pinsonneault's prior disclosures; it simply sets forth calculations of Defendants' profits for additional time periods ***using the same methods and information disclosed in his prior September 21 Report and November 8 Supplement***. Such supplemental disclosures fall comfortably within the ambit of Rule 26(e) and are thus timely if disclosed before the party's pretrial disclosures are due, which the November 27 Supplement was. Further, the timing of the

November 27 Supplement was justified and is harmless to Plaintiffs because Mr. Pinsonneault signaled his intention, and expressly reserved his right, to submit the additional calculations contained therein. Because those calculations simply apply the methods and data that Mr. Pinsonneault previously disclosed to additional time periods that Plaintiffs contend are relevant for purposes of their disgorgement claim, as he expressly reserved the right to do if needed, there is no surprise or prejudice to Plaintiffs. Moreover, Defendants provided the November 27 Supplement with ample time remaining in the period for expert depositions and offered to make Mr. Pinsonneault available for an additional deposition addressing the November 27 Supplement. Plaintiffs never responded to that offer and cannot now be heard either to claim prejudice or insist on an additional deposition now that the expert deposition period has closed and the parties are busy with pretrial preparations. Finally, Defendants were justified in submitting the November 27 Supplement after Plaintiffs' deposition examination telegraphed their intention to argue that Defendants should be barred from presenting the calculations set forth therein just because they had not been expressly set forth in Mr. Pinsonneault's prior reports. For each and all of these reasons, and as discussed more fully below, Plaintiffs' motion should be denied.

### A. Mr. Pinsonneault's Supplement Is a Timely Rule 26(e)(2) Supplemental Disclosure.

Under Federal Rule of Civil Procedure 26(e), a party is permitted, and indeed required, to supplement an expert disclosure if it "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). "The purpose of the rule is to prevent surprise or ambush at trial." *Medtronic Vascular*, 2008 WL 4601038, at *1. While parties "may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report," a supplement that "does not constitute a substantive revision of [the expert's earlier] report" and does not "offer new opinions or conclusions" is appropriate under Rule 26(e). *Id.* at *1–2 (finding supplemental disclosure authorized under Rule 26(e) where expert's initial report was not deficient and supplement could not be deemed to "ambush" opponent); *see also Clark v. California*, 2010 WL 11636687, at *2 (N.D. Cal. Mar. 18, 2010) (supplement that "contain[ed] very little, if any new opinion information" was appropriate under Rule 26(e)); *Allstate*

*Ins. Co. v. Maytag Corp*., 1999 WL 203349, at *6 (N.D. Ill. Mar. 30, 1999) (noting that a revised expert report that is consistent with the core opinions expressed in an earlier report will likely qualify as a proper supplement under Rule 26(e)); *Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc*., 2019 WL 3554938, at *5 (S.D. Cal. Aug. 5, 2019) (distinguishing Rule 26(e) supplementation from "new opinion"); *O'Connor v. Boeing North American, Inc*., 2005 WL 6035243, at *10–11 (C.D. Cal. Sept. 12, 2005) (same).

Supplementation is often appropriate to address unexpected challenges to an expert report because a party "cannot always anticipate every possible challenge to the report." *Miller v. Pfizer, Inc*., 356 F.3d 1326, 1332 (10th Cir. 2004); *see also Confederated Tribes of Siletz Indians of Ore. v. Weyerhauser Co*., 2003 WL 23715981, at *2 (D. Ore. Jan. 21, 2003) (declining to strike supplement "generated in direct response to Defendant's attack upon the original expert reports"); *Rollins v. Mr. Heather, Inc*., 2018 WL 11454741, at *10 (N.D. Ala. Sept. 11, 2018) (denying motion to strike where supplement was "not an attempt to cure a major omission of [expert's] initial analysis or report; instead, the report is a direct response to Defendants' unanticipated challenge to that initial report."); *accord Innovation Ventures, LLC v. NVE, Inc*., 90 F. Supp. 3d 703, 710 (E.D. Mich. 2015). Notably, this includes challenges raised by the opponent at the expert's deposition. *See Rollins*, 2018 WL 11454741, at *9 (supplemental report was appropriately submitted where opponent's "line of questioning during the deposition" alerted party of possible need to supplement); *Wilson v. Sundstrand Corp*., 2003 WL 22012673, at *7-8 (N.D. Ill. Aug. 25, 2003) (same).

Supplemental expert disclosures need only "be disclosed by the time the party's pretrial disclosures are due" (*i.e.*, thirty days before trial, *see* Fed. R. Civ. P. 26(a)(3)) in order to be timely. Fed. R. Civ. P. 26(e)(2).

Mr. Pinsonneault's November 27 Supplement is a timely and proper Rule 26(e) supplement. It does not offer any new or different opinions.[2] It only sets forth additional calculations that are

[2] This is a critical point differentiating Mr. Pinsonneault's November 27 Supplement from the purported "supplemental" report that Ms. Trexler submitted late the same evening that Defendants served Mr. Pinsonneault's September 21 Rebuttal Report. Ms. Trexler's September 21 report

fully consistent with Mr. Pinsonneault's prior disclosures. Indeed, the calculations set forth in the November 27 Supplement merely apply the same methodologies described in Mr. Pinsonneault's initial report to additional time periods that Plaintiffs contend are relevant to their request for disgorgement, and Mr. Pinsonneault expressly stated that he would perform those calculations (and reserved his right to do so), if it became necessary. (Dkt. 490-4 Exh. D ¶¶ 3–22 (calculating relevant profits over additional time periods using previously-disclosed methodology); *id.* ¶ 23 (noting continuing disagreement, consistent with prior disclosures, that such additional time periods are relevant); *see also* Dkt. 490-4 Exh. B ¶ 24 (reserving rights to perform such calculations if needed, despite view that the additional time periods are not relevant).) Such a report simply including "new calculations" consistent with a prior report "plainly 'supplements'" the earlier report and thus falls within Rule 26(e). *Charter School Solutions.*, 2019 WL 5258055, at *4 (denying motion to strike supplemental report).

The November 27 Supplement does not change or materially expand the opinions set forth in Mr. Pinsonneault's prior report, and there is no threat or credible claim of "ambush" or surprise to Plaintiffs where the November 27 Supplement simply sets forth additional calculations Mr. Pinsonneault reserved the right to perform based on methods and data that had been previously disclosed to Plaintiffs. This is classic Rule 26(e) supplementation. *See Medtronic Vascular*, 2008 WL 4601038, at *1–2 (supplemental report that neither "offer[ed] new opinions or conclusions" or amounted to a "substantive revision" of prior report fell within Rule 26(e)); *Clark*, 2010 WL 11636687, at *2 (supplement that "contain[ed] very little, if any new opinion information" was appropriate under Rule 26(e)); *see also Charter School Solutions*, 2019 WL 5258055, at *4.

Plaintiffs' argument that Mr. Pinsonneault's reservation of rights was somehow improper

---

discarded her initial disgorgement opinion wholesale and sought to replace it with an entirely new and different opinion based on different methodologies and information—albeit information that was previously available to Ms. Trexler in a document she cited and discussed at length in her initial report. Unlike Mr. Pinsonneault's November 27 Supplement, Ms. Trexler's September 21 report is a quintessential attempt "to offer new opinions under the guise of the supplement label," which warrants striking her September 21 report. *Linder v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 640 (D. Haw. 2008); *Gerawan Farming, Inc. v. Rehrig Pacific Co.*, 2013 WL 1982797, at *5 (E.D. Cal. May 13, 2013) (purported "supplemental" report that generate[d] an entirely new damages calculation" was not authorized under Rule 26(e)); *see also generally* Dkt. 487-2.

or prevents the November 27 Supplement from qualifying as Rule 26(e) supplementation is meritless. Court's routinely permit supplementation of expert reports pursuant to reservations of rights. *See, e.g., Wechsler v. Macke Intern. Trade, Inc.*, 221 F.R.D. 619, 623 (C.D. Cal. 2004) (supplemental damages computation was appropriate under Rule 26(e) where expert reserved the right to present it if necessary and explained how the computation would be performed); *see also Pickens v. U.S.*, 750 F. Supp. 2d 1243, 1251 (D. Ore. 2010) (denying motion to strike supplement submitted per prior reservation of rights). Plaintiffs' cases are not to the contrary. The Illinois district court in *Agnew v. Cater* (cited Dkt. 490-3 at 8) stated that it would "not allow retained experts to untimely ***change their opinions resulting in prejudice*** to the opposing party." 2022 WL 313756, at *2 n.3 (N.D. Ill. Feb. 2, 2022) (emphasis added). As discussed herein, Mr. Pinsonneault's November 27 Supplement neither changes his previously disclosed opinions nor presents any prejudice to Plaintiffs. *Hubbs v. Big Lots Stores, Inc*. (cited Dkt. 490-3 at 8–9) addresses designation of experts, not a reservation of rights to supplement an expert report, if needed, and is thus inapposite. 2019 WL 12536593, at *5 (C.D. Cal. July 2, 2019) (addressing "Defendants' effort to reserve the right to designate a rebuttal expert until a later date").

Finally, it was appropriate for Mr. Pinsonneault to submit the November 27 Supplement promptly after Plaintiffs' examination at his deposition on November 20, 2024, alerted Defendants for the first time that Plaintiffs would argue that Defendants should be precluded from presenting Mr. Pinsonneault's calculations of relevant profits over additional time periods, even though he had disclosed the methods and data he would use and reserved his right to do so, if needed. *See Rollins*, 2018 WL 11454741, at *9 (finding it appropriate for expert to supplement disclosure where opponent's "line of questioning during [expert's] deposition" suggested need to do so); *Wilson v. Sundstrand Corp*., 2003 WL 22012673, at *7-8 (supplemental disclosure prompted by opponents' deposition examination was proper under Rule 26(e)).

Because Mr. Pinsonneault's November 27 Supplement is an appropriate supplemental disclosure under Rule 26(e), and because Defendants submitted it well before the deadline for pretrial disclosures and within the expert discovery period, the November 27 Supplement is timely. *See* Fed. R. Civ. P. 26(e)(2). On that basis alone, Plaintiffs' motion should be denied. *See Clark*,

2010 WL 11636687, at *2; *Charter School Solutions*, 2019 WL 5258055, at *4.

**B. Defendants' Submission of the November 27 Supplement Was Justified and Harmless To Plaintiffs.**

Because the November 27 Supplement is a timely supplement under Rule 26(e), the Court need not consider alternate grounds for denying Plaintiffs' motion. But in the event that the Court concludes that the November 27 Supplement is not a timely Rule 26(e) supplement, Plaintiffs' motion still should be denied because the timing of its submission was both substantially justified and harmless to Plaintiffs under the circumstances of this case. *See* Fed. R. Civ. P. 37(c)(1); *Burger v. Excel Contractors, Inc.*, 2013 WL 5781724, at *4–5 (D. Nev. Oct. 25, 2013) (finding supplemental expert disclosure was not timely, but denying motion to strike where its submission was harmless). When considering whether an untimely expert report is substantially justified or harmless, the Court may consider various factors, including: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).

Here, those considerations confirm that the timing of Defendants' submission of the November 27 Supplement was both substantially justified and harmless to Plaintiffs. As noted, there is no prejudice to Plaintiffs, because the November 27 Supplement offers no new or different opinions, but instead simply sets forth additional calculations using the same methods and data that Mr. Pinsonneault previously disclosed. *See Confederated Tribes*, 2003 WL 23715981, at *2 (finding no prejudice to opponent where supplement was consistent with earlier report and was submitted several months before trial was scheduled to begin); *Talbert v. City of Chicago*, 236 F.R.D. 415, 425 (N.D. Ill. 2006) (opponent not prejudiced by supplemental report that did not offer new or different opinions, but merely addressed matters raised at expert's deposition). Nor can Plaintiffs claim any surprise. Mr. Pinsonneault's November 8 Report made clear that he would perform the calculations set forth in the November 27 Supplement, if needed, and he promptly did so and submitted the November 27 Supplement within just one week after his November 20 deposition examination alerted Defendants to Plaintiffs' "gotcha" strategy. *See Qualcomm Inc. v.*

*Broadcom Corp.*, 2006 WL 5201392, at *3 (N.D. Cal. Dec. 14, 2006) (denying motion to strike where party "unambiguously informed" opponent that report "would require supplementation").

Further, Plaintiffs had ample ability and opportunity to cure any conceivable prejudice associated with the timing of submission of the November 27 Supplement. It was served on Plaintiffs with more than two weeks remaining in the period for expert depositions, and Defendants offered to make Mr. Pinsonneault available for a further deposition and noted his wide availability in the remaining deposition period. (Craig Decl. Exh. A.) Plaintiffs thus had every opportunity to "cure" any claimed prejudice, but elected not to do so. This further supports denial of Plaintiffs' motion. *See also Qualcomm*, 2006 WL 5201392, at *4 (noting lack of prejudice where party offered a supplemental deposition, but opponent "chose not to do so, foregoing the very discovery it now argues the Supplemental Report necessitates"); *see also Burger*, 2013 WL 5781724, at *4 (finding any prejudice was "easily cured" where report was submitted well before the close of expert depositions).

Nor, given the circumstances described above, is there any credible argument that the timing of the November 27 Supplement threatens disruption of the trial (which is scheduled to begin March 3, 2025) or was the product of bad faith or willfulness on Defendants' part. To the contrary, Defendants and Mr. Pinsonneault transparently disclosed his intention to perform the calculations set forth in the November 27 Supplement, if such calculations were needed, in his November 8 Report. Defendants then promptly provided Plaintiffs with the November 27 Supplement setting forth those additional calculations (using the same methods and data Mr. Pinsonneault previously disclosed) within just one week after Plaintiffs' questioning of Mr. Pinsonneault at his deposition alerted Defendants that Plaintiffs would take the position that those calculations needed to be set forth in a written report. That is the anthesis of bad faith or willfulness. *See Burger*, 2013 WL 5781724, at *4 (finding "no indication of bad faith or willfulness" where "the expert specifically referenced all of the supplemental information in his initial report and appears to have made a concerted effort to timely disclose how the information affected his opinion, which, based on the undersigned's review of the supplements, is very little").

For all these reasons, Defendants' submission of the November 27 Supplement when they

did was both substantially justified and harmless to Plaintiffs. Thus, even if the Court deems the November 27 Supplement not to have been timely submitted in accordance with Rule 26(e), Plaintiffs' motion to strike should be denied. *See Burger*, 2013 WL 5781724, at *4–5 (denying motion to strike untimely expert disclosure due to absence of harm to opponent).

**C. Plaintiffs' Request for a Further Deposition Should Be Denied.**

Finally, Plaintiffs' alternative request "to depose Mr. Pinsonneault again, at a time of Plaintiff' choosing" and "at NSO's expense" (Dkt. 490-3 at 10) should be denied. Defendants previously offered to make Mr. Pinsonneault available for a further deposition during the expert deposition period, but Plaintiffs chose not to take a deposition. Plaintiffs should not be permitted to prejudice Defendants by disrupting their pretrial preparation work during this busy period with a further Pinsonneault deposition now. Alternatively, given the narrow focus of Mr. Pinsonneault's November 27 Supplement and the fact that the calculations set forth therein were prepared using methods and data disclosed to Plaintiffs before they deposed Mr. Pinsonneault on November 20, 2024, any further deposition of Mr. Pinsonneault should be limited to one hour of examination time. In no event should Defendants be ordered to pay Plaintiffs' attorneys' fees and costs associated with a further Pinsonneault deposition. As shown herein, Defendants' submission of the November 27 Supplement was timely and appropriate under Rule 26(e) and thus entailed no failure to disclose information under Rule 26(a) or (e). And to the extent any such failure occurred, it was caused by Plaintiffs' belated service of the supplemental Trexler report, substantially justified, and harmless to Plaintiffs for the reasons discussed above. Accordingly, there is no basis under Rule 37 or otherwise for award any fees or costs to Plaintiffs.

## IV. CONCLUSION

For the reasons shown above, the Court should deny Plaintiffs' Motion to Strike the Second Supplemental Pinsonneault Report.

Dated: January 13, 2025

KING & SPALDING LLP

By: */s/ Aaron S. Craig*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*