Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         gina.cora@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC. and META PLATFORMS, INC.,<br><br>  Plaintiffs,<br><br>  v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>  Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF DANA TREXLER**<br><br>Date:  February 13, 2025<br>Time:  2:00 p.m.<br>Ctrm:  3<br>Before the Honorable Phyllis J. Hamilton<br><br>Action Filed: Oct. 29, 2019 |

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................3

    I.    NSO Produces Documents and Deponents After the Expert Disclosure Deadline .....3

    II.    Plaintiffs Serve Their Affirmative Damages Expert Report, Noting NSO's Ongoing Productions ...................................................................................................3

    III.    Plaintiffs Depose NSO's Corporate Representative on Damages Issues After the Affirmative Expert Report Deadline...........................................................................4

    IV.    Plaintiffs Serve a Supplemental Affirmative Damages Expert Report Based on This New Information, and NSO Responds .............................................................5

    V.    NSO Serves a Supplemental Damages Report Responding to the Trexler Supplemental Report........................................................................................................6

LEGAL STANDARD......................................................................................................................6

ARGUMENT ...................................................................................................................................6

    I.    The Trexler Supplemental Report Is a Proper Supplemental Report .........................6

        A.    The Trexler Supplemental Report Relies on Ms. Gil's Deposition Testimony ..............................................................................................................7

        B.    Deposition Testimony Explaining Technical Documents Constitutes New Information ........................................................................................................9

    II.    The Court Should Not Strike the Trexler Supplemental Report...............................10

CONCLUSION..............................................................................................................................13

# TABLE OF AUTHORITIES

CASES

PAGE(S)

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
  2018 WL 1938555 (N.D. Cal. Apr. 25, 2018) ............................................................................. 9

*Damaj v. Farmers Ins. Co.*,
  164 F.R.D. 559 (N.D. Okla. 1995) ............................................................................................ 9

*Ferman v. Double J Marine, LLC*,
  2016 WL 9330712 (E.D. La. Jul. 6, 2016) .......................................................................... 9, 10

*Keener v. United States*,
  181 F.R.D. 639 (D. Mont. 1998) ............................................................................................. 12

*Lanard Toys Ltd. v. Novelty, Inc.*,
  375 F. App'x 705 (9th Cir. 2010) ............................................................................................ 11

*Luke v. Fam. Care & Urgent Med. Clinics*,
  323 F. App'x 496 (9th Cir. 2009) ........................................................................................ 6, 12

*Munchkin, Inc. v. Playtex Prods., LLC*,
  600 F. App'x 537 (9th Cir. 2015) .............................................................................................. 6

*OmniSource Corp. v. Heat Wave Metal Processing, Inc.*,
  2015 WL 3452918 (E.D.N.C. May 29, 2015) ......................................................................... 10

*Rooney v. Sierra Pac. Windows.*,
  2011 WL 2149097 (N.D. Cal. June 1, 2011) ........................................................................... 11

*Schnatter v. 247 Grp., LLC*,
  343 F.R.D. 325 (W.D. Ky. 2022) .............................................................................................. 9

*Sherwin-Williams Co. v. JB Collision Servs., Inc.*,
  2015 WL 4742494 (S.D. Cal. Aug. 11, 2015) ........................................................................... 9

*Therapure Biopharma Inc. v. DynPort Vaccine Co., LLC*,
  2021 WL 2719060 (D. Md.  June 30. 2021) ...................................................................... 10, 12

*Wertz v. Target Corp.*,
  2009 WL 635655 (E.D. Cal. Mar. 10, 2009) ........................................................................... 10

*White v. Wal-Mart Stores E., L.P.*,
  2018 WL 5083891 (W.D. Ky. Oct. 18, 2018) ........................................................................... 9

STATUTES & RULES

Fed. R. Civ. P. 26(a)(2)(D) ............................................................................................................. 6

Fed. R. Civ. P. 26(e) ........................................................................................................... 6, 10, 12

Fed. R. Civ. P. 26(e)(1)(A) .................................................................................................................. 6
Fed. R. Civ. P. 26(e)(2) ........................................................................................................................ 6

**PRELIMINARY STATEMENT**

Plaintiffs WhatsApp LLC and Meta Platforms, Inc. properly served a supplemental expert report (the "Trexler Supplemental Report") after the affirmative expert report deadline. The Trexler Supplemental Report is based on new information that Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively, "NSO") did not provide until after Plaintiffs served their damages expert's initial report: specifically, the deposition testimony of Sarit Bizinsky Gil, NSO's corporate representative on damages issues. NSO's motion to strike the Trexler Supplemental Report is therefore baseless and should be denied.

On August 26, 2024, just days before the deadline for parties to serve affirmative expert reports, NSO made their first (and only) substantial document production to Plaintiffs. Buried in the 4,500 documents that NSO produced was a spreadsheet (the "NSO Profit Spreadsheet") that purported to calculate ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████ *See* Dkt. No. 487-4. The spreadsheet was tailor-made for this litigation and lacked any context. It did not identify its author, and lacked any explanation of its source(s), assumptions, or the reasons for those assumptions.

Given the timing of the production and the lack of context for the NSO Profit Spreadsheet, Plaintiffs' damages expert (Dana Trexler) noted the existence of the NSO Profit Spreadsheet in her initial expert report served on August 30, 2024 (the "Trexler Report"). In the Trexler Report, Ms. Trexler concluded that there was insufficient information in the record to allow a reliable analysis of the NSO Profit Spreadsheet. Ms. Trexler also noted in the Trexler Report that NSO had offered Ms. Gil for deposition after Ms. Trexler's report was due, and reserved the right to update her damages analysis based on Ms. Gil's testimony if it provided information to allow an analysis of the NSO Profit Spreadsheet. On September 6, 2024, NSO produced Ms. Gil and Plaintiffs deposed her, learning for the first time NSO's positions regarding the provenance, inputs, assumptions, and calculations in the NSO Profit Spreadsheet, which Ms. Gil admitted having created at the direction of NSO's counsel in this litigation via a methodology previously unknown—and unknowable—to Plaintiffs. Based on the explanation in Ms. Gil's testimony, Ms. Trexler prepared a supplemental report (the

1

Pls.' Opp. to Defs.' Mot. to Strike Trexler Supplemental Report | Case No. 4:19-cv-07123-PJH

"Trexler Supplemental Report"), which Plaintiffs served on September 21, 2024. *See* Dkt. No. 487-6.

NSO's argument that Ms. Trexler could or should have revised her damages analysis and report upon receipt of the NSO Profit Spreadsheet should be rejected. The NSO Profit Spreadsheet was nearly unintelligible without the deposition testimony from Ms. Gil, the spreadsheet's author. Courts have consistently recognized that subsequent deposition testimony, like the technical explanations that Ms. Gil provided regarding the NSO Profit Spreadsheet, provide sufficient ground to supplement an expert report, as Ms. Trexler did here.

NSO's claims of prejudice and harm are meritless. *First*, NSO is incorrect that Ms. Trexler discarded the opinions in the Trexler Report. *See* Dkt No. 487-6 ¶ 2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). *Second*, any purported prejudice to NSO is of NSO's making. NSO offers no explanation as to why it refused to disclose financial statements underpinning the NSO Profit Spreadsheet, why it withheld the NSO Profit Spreadsheet until mere days before the deadline for affirmative expert reports, or why it failed to produce its corporate representative witness on damages until after Ms. Trexler's initial deadline—despite the fact that discovery began in February 2023.

NSO's argument that Ms. Trexler did not need to rely on Ms. Gil's testimony to analyze the NSO Profit Spreadsheet ignores that NSO's own damages expert, Gregory Pinsonneault, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ He also had two months to respond to the Trexler Supplemental Report, whereas Plaintiffs submitted the Trexler Supplemental Report two weeks after Ms. Gil's deposition.

Lastly, NSO tellingly raised no objection or concern regarding the Trexler Supplemental Report until December 3, 2024, some 10 weeks after they received it, but just a day *after* Plaintiffs indicated their intent to strike Mr. Pinsonneault's belated, post-deposition *second* supplemental report—all of which calls into question whether NSO's motion stems from any good-faith concern regarding harm or prejudice, or instead from a desire to retaliate.

For all of these reasons, Plaintiffs respectfully request that the Court deny NSO's motion to strike.

# BACKGROUND

## I. NSO Produces Documents and Deponents After the Expert Disclosure Deadline

On January 18, 2024, NSO moved to modify the Court-ordered case schedule and requested a six-month extension of the fact discovery cut-off from March 11, 2024, to September 13, 2024. Dkt. No. 265 at 1. The Court granted NSO's request in order to give NSO additional time to comply with its Israeli law obligations. *See* Dkt. No. 292. The Court then set August 30, 2024 as the affirmative expert disclosure deadline. *Id.* Under this schedule, the final two weeks of the 19-month-long fact discovery period would fall *after* affirmative expert reports were served.

By August 1, 2024, Plaintiffs had substantially completed their production of documents, but NSO had only produced 17 of its own documents. *See* Dkt. No. 388 at 1–2. NSO did not produce the vast majority of its documents—approximately 4,500 documents—until late August 2024, just before the deadline for affirmative expert disclosures. *See id.* At this time, NSO produced the NSO Profit Spreadsheet, which seemed to offer NSO's proposed calculations of certain of its profits relevant to this litigation. NSO produced another approximately 330 documents between September 3, 2024 and September 13, 2024. Dkt. No. 388-1 ¶ 2.

Plaintiffs first identified Ms. Gil as a potential deponent on April 5, 2024, but NSO only offered its witnesses, including Ms. Gil, for depositions between August 27, 2024 and September 6, 2024. *See* Dkt. No. 388-1 ¶ 3. NSO offered Ms. Gil, its corporate representative witness on damages issues, to sit for a deposition on September 6, 2024, nearly a week *after* the affirmative expert disclosure deadline. *See id.*

## II. Plaintiffs Serve Their Affirmative Damages Expert Report, Noting NSO's Ongoing Productions

On August 30, 2024, Plaintiffs served the affirmative expert report of their damages expert, Dana Trexler (the "Trexler Report"). *See* Dkt. No. 487-3. The Trexler Report states that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " *Id.* ¶ 7. The Trexler Report also notes that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " *Id.* Relying on the information that NSO and its

3

Pls.' Opp. to Defs.' Mot. to Strike Trexler Supplemental Report | Case No. 4:19-cv-07123-PJH

affiliates had produced by mid-August 2024, the Trexler Report calculates ███████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ *Id.* ¶ 89. The Trexler Report acknowledges the NSO Profit Spreadsheet, which NSO produced on August 26, 2024, but does not use it to calculate ████████████████████████████ because of its "recent production" as well as its "limited information available with respect to amounts contained therein, and the pending deposition of Defendants' CFO." *Id.* ¶ 99.

### III. Plaintiffs Depose NSO's Corporate Representative on Damages Issues After the Affirmative Expert Report Deadline

After Ms. Trexler submitted the Trexler Report on August 30, 2024, Plaintiffs deposed Ms. Gil, NSO's corporate representative witness on damages issues, in London on September 6, 2024. Ms. Gil's testimony provided an explanation of the NSO Profit Spreadsheet that NSO produced on August 26, 2024, just days before the submission of the Trexler Report. Dkt. No. 487-3 ¶ 8 n.5. For instance, Ms. Gil provided the following information regarding the NSO Profit Spreadsheet:



1  ▮ ████████████████████████████████████████████
2     ████████████████████████████████████████████
3     ████████████████████████████████████████████
4  ▮ ████████████████████████████████████████████
5     ███████████
6  ▮ ████████████████████████████████████████████
7     ████████████████████████████████████████████
8     ████████████████████████████████████████████
9  ▮ ████████████████████████████████████████████
10    ████████████████████████████████████████████
11    ██████████████████████████████████████
12 ▮ ████████████████████████████████████████████
13    ████████████████████████████████████████████
14    ████████████████████████████████████████████
15    ██████████
16 ▮ ████████████████████████████████████████████
17    ██████████████████████████████████████████

**IV.  Plaintiffs Serve a Supplemental Affirmative Damages Expert Report Based on This New Information, and NSO Responds**

In light of this new information, on September 21, 2024, Ms. Trexler submitted the Trexler Supplemental Report with a revised estimate of ███████████████████████ ██████. *See* Dkt. No. 487-6. This revised estimate included revenue calculations based on the NSO Profit Spreadsheet and concluded that NSO's ████████████████████████ █████████████████████ *Id.* ¶ 8.

NSO's expert, Mr. Pinsonneault, prepared a rebuttal to the Trexler Supplemental Report. NSO served that report on November 8, 2024.[1] *See* Dkt. No. 490-4, Ex. B.

---

[1] The procedural and factual background related to the expert reports of Ms. Trexler and Mr. Pinsonneault are set forth in greater detail in Plaintiffs' motion to strike the second supplemental report of

V. **NSO Serves a Supplemental Damages Report Responding to the Trexler Supplemental Report**

NSO and Plaintiffs negotiated for Ms. Trexler to be deposed on November 13, 2024. On November 8, 2024, NSO informed Plaintiffs that it would forgo her deposition. Block Decl. ¶ 5. Plaintiffs deposed NSO's damages expert, Mr. Pinsonneault, on November 19, 2024. Seven days later, on November 27, 2024, NSO served Mr. Pinsonneault's Second Supplemental Report, which is the subject of another pending motion. *See* Dkt. 490-3. On December 2, 2024, Plaintiffs' counsel asked NSO to confer regarding Plaintiffs' anticipated motion to strike Mr. Pinsoneault's Second Supplemental Report. Block Decl. ¶ 7. The next day, NSO responded by raising its intention to move to strike the Trexler Supplemental Report for the first time. *Id*. ¶ 8

## LEGAL STANDARD

Expert reports must be submitted "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Experts can further supplement or correct their report if they later "learn[] that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). An expert's "duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). Supplementation under Rule 26(e) "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009); *see also Munchkin, Inc. v. Playtex Products, LLC*, 600 F. App'x 537, 538 (9th Cir. 2015).

## ARGUMENT

I. **The Trexler Supplemental Report Is a Proper Supplemental Report**

NSO produced Ms. Gil for deposition on September 6, 2024, seven days after Plaintiffs served the Trexler Report. Dkt. No. 492 ¶¶ 4–5. A proper supplemental report is one that fills the interstices of a report based on new information. *Luke*, 323 F. App'x 496 at 500; *Munchkin*, 600 F. App'x at

---

Mr. Pinsonneault, Dkt. No. 490-3, and Plaintiffs' *Daubert* motion seeking to strike portions of Mr. Pinsonneault's testimony, Dkt. No. 508-3.

538. The Trexler Supplemental Report relies extensively on the new information provided in Ms. Gil's deposition and therefore is a proper supplemental report. *Id.*

### A. The Trexler Supplemental Report Relies on Ms. Gil's Deposition Testimony

The Trexler Supplemental Report relies extensively on information that was not available at the time that Plaintiffs served the Trexler Report: namely, Ms. Gil's deposition testimony explaining the NSO Profit Spreadsheet. The Trexler Report acknowledges the existence of the NSO Profit Spreadsheet but does not use it to calculate NSO's ▮▮▮▮ because Ms. Trexler lacked the necessary information to understand reliably how the revenue and profit figures in the spreadsheet had been calculated. *See* Dkt. No. 487-3 ¶ 99.[2] At her deposition on September 6, 2024, Plaintiffs obtained this information from Ms. Gil, and Plaintiffs accordingly served the Trexler Supplemental Report on September 21, 2024. Relying on the information that Ms. Gil provided, the Trexler Supplemental Report includes supplemental analyses and opinions regarding the proper calculation of NSO's ▮▮▮▮. *See, e.g.*, Dkt. No. 487-6 ¶¶ 5–6. Though these opinions used figures in the NSO Profit Spreadsheet, Ms. Trexler's *understanding* of those numbers came ▮▮▮▮. *Id.* ¶¶ 11–12.

Neither Plaintiffs nor Ms. Trexler could understand the NSO Profit Spreadsheet without ▮▮▮▮. At her deposition, Ms. Gil ▮▮▮▮. Block Decl., Ex A (Gil Dep. Tr.) at 159:8–160:4. Instead, ▮▮▮▮. *Id.* at 158:19–159:10. Ms. Gil's testimony ▮▮▮▮ For example, Ms. Gil testified that ▮▮▮▮. *Id.* at 159:17–160:7. Instead, Ms. Gil ▮▮▮▮. *Id.*

---

[2] Contrary to NSO's claim, Ms. Trexler did not decline to use the NSO Profit Spreadsheet "for reasons known only to her." Dkt. No. 487, Ex. 1 at 3. She stated the reasons in her report. *See* Dkt. No. 487-3 ¶ 99 ("Based on the recent production of this document, limited information available with respect to amounts contained therein, and the pending deposition of Defendants' CFO, I have not used [the NSO Profit Spreadsheet] for purposes of determining profits specifically attributable to Defendants' Exploit.").

1  at 175:21–177:23. This is an assumption that is not discernable from the NSO Profit Spreadsheet on
2  its own.  In fact, NSO only revealed these ████████████████████████
3  ████████████████████████████████████. Dkt No. 490-4, Ex. D ¶ 9.  As another ex-
4  ample, Ms. Gil also included ██████ ███████████████████████████████
5  ███████  The NSO Profit Spreadsheet contains no explanation of what the ██████████
6  ████████████████████████████████. See Dkt. No. 487-3 ¶ 97 n. 140 ("████████████
7  ███████████████████████████████████████████████████████████████████
8  ████████████████████████"). Only after Ms. Gil testified to the "███████████████"
9  was Ms. Trexler able to understand what this column and its values meant.  See Block Decl., Ex A
10 (Gil Dep. Tr.) at 210:24–214:16.
11      As further evidence that the NSO Profit Spreadsheet was █████████████████
12 ███████████████████████████████████████████████████████████████████
13 ███████████  Mr. Pinsonneault's initial report includes ████████████████████████
14 ████████████████████████████████.  See e.g., Dkt. No. 508-4, Ex. B (Pinsonneault
15 Rebuttal Rep.) at 37–41 (██████████████████████████████████████████████).
16 Moreover, Mr. Pinsonneault had ████████████████████████████████████████████
17 ██████.  Id. ¶ 96 & n.174.  He had ███████████████████ ████████████████████████,
18 Block Decl., Ex B (Pinsonneault Dep. Tr.) at 30:2–12, and yet █████████████████████
19 ███████████████████████████████████████████████████████████████████
20 █████████████████████. Dkt. No. 490-4, Ex. D (Pinsonneault Second Supp. Rep.) ¶ 9 & n.12.
21 ███████████████████████████████████████████████████████████████████
22 ███████████████████████████████████████████████████████████████████
23 ██████████████████████████████████████████.
24      NSO's suggestion that "adequate diligence" would have required Ms. Trexler or Plaintiffs'
25 counsel to seek "clarification" from NSO or its counsel lacks any support in logic or case law.  NSO
26 produced the NSO Profit Spreadsheet on August 26, 2024, without any context and just four days
27 before the affirmative expert disclosure deadline.  Unsurprisingly, NSO fails to identify any prece-
28 dent or discovery device allowing a party to ask opposing counsel "clarification" questions regarding

a recently produced document and obtain responses within days. Instead, Plaintiffs adhered to the proper method for obtaining such information: deposition of fact witnesses. *Damaj v. Farmers Ins. Co.*, 164 F.R.D. 559, 560 (N.D. Okla. 1995) (" . . . the purpose of a deposition is to find out what the witness saw, heard and knows, or what the witness thinks"); *see also Schnatter v. 247 Group, LLC*, 343 F.R.D. 325, 331 (W.D. Ky. 2022) ("A Rule 30(b)(6) witness . . . 'has a duty to reasonably obtain information from corporate documents, current or prior corporate employees, or any other sources reasonably available to the corporation.'" (quoting *White v. Wal-Mart Stores East, L.P.*, 2018 WL 5083891, at *3 (W.D. Ky. Oct. 18, 2018))).

The cases that NSO cites do not impose such draconian obligations on a party or expert. For instance, NSO cites *Sherwin-Williams Co. v. JB Collision Services, Inc.*, for the proposition that "Rule 26(e) 'does not justify supplementing a report because of a party's lack of due diligence,'" Dkt. No. 487, Ex. 1 at 7 (citing 2015 WL 4742494, at *6 (S.D. Cal. Aug. 11, 2015)). In *Sherwin-Williams*, the defendants not only had *all* of the information "well before production of the initial report," but "failed to diligently retain an expert, obtain samples, conduct testing, and have their expert perform the necessary analyses." 2015 WL 4742494, at *3. These egregious facts bear no resemblance to Plaintiffs' conduct here, where Ms. Trexler dutifully submitted a report on the affirmative expert disclosure date, noted the existence of the NSO Profit Spreadsheet and lack of explanation or testimony regarding its contents, and disclosed that she needed additional explanation in order to assess or offer any opinion of the NSO Profit Spreadsheet.

### B. Deposition Testimony Explaining Technical Documents Constitutes New Information

A supplemental report "can be appropriate 'in light of newly discovered evidence'—as opposed to new arguments or expert interpretations—where the party seeking to supplement the report is not at fault for failure to identify the evidence earlier." *Cave Consulting Group, Inc. v. OptumInsight, Inc.*, 2018 WL 1938555 at *4 (N.D. Cal. Apr. 25, 2018) (quoting *Ferman v. Double J Marine, LLC*, 2016 WL 9330712, at *2 (E.D. La. Jul. 6, 2016)). Here, the Trexler Supplemental Report relies on Ms. Gil's deposition testimony—evidence that was undisputedly unavailable before August 30, 2024, when Plaintiffs served the Trexler Report.

Courts have consistently recognized that deposition testimony given after an expert report amounts to new evidence allowing supplementation of that expert report. For instance, in *Therapure Biopharma Inc.*, the Court addressed the propriety of supplemental reports which plaintiffs asserted "'address[ed] new information learned through depositions that *were not completed until after the witnesses' initial and rebuttal reports were served.*'" *Therapure Biopharma Inc. v. DynPort Vaccine Co. LLC*, 2021 WL 2719060, at *2 (D. Md. June 30, 2021) (emphasis in original). One of plaintiff's experts supplemented his report after defendants' corporate representative was deposed and "provided the company's official position" on defendants' technical information. *Id.* at *5. Defendant argued that the supplemental report was improper because it had previously produced the underlying documents, meaning "the corporate testimony was not new information." *Id.* The court rejected this argument, reasoning that the corporate testimony "qualifies as material facts not previously known to [plaintiff's] expert." *Id.* "To correct and complete his initial report," plaintiffs' expert considered the defendant's "official position provided by [the corporate representative] during his deposition, which had not previously been disclosed." *Id.* at *6 (quoting *OmniSource Corp. v. Heat Wave Metal Processing, Inc.*, 2015 WL 3452918, at *10 (E.D.N.C. May 29, 2015)). Similarly, in *Ferman*, the court specifically allowed an expert to supplement a report to account for the deposition of a witness taken after the initial report, which the court characterized as "newly discovered evidence." 2016 WL 9330712, at *2; *see also OmniSource Corp*, 2015 WL 3452918, at *10 (a supplemental report was proper because the expert relied on new information, including "deposition transcripts of key witnesses"). As in all these cases, Ms. Gil's deposition testimony provided Plaintiffs with new information, despite the fact that the NSO Profit Spreadsheet was produced just four days before Plaintiffs served the Trexler Report.

## II. The Court Should Not Strike the Trexler Supplemental Report

Because the Trexler Supplemental Report relied heavily on Ms. Gil's deposition testimony, which was not available when Plaintiffs served the Trexler Report, the Trexler Supplemental Report is a proper supplemental report. *See* Fed. R. Civ. P. 26(e). Even if the Court were to disagree with Plaintiffs' perspectives, it should not strike the Trexler Supplemental Report. "Exclusion" of an expert report is a "harsh remedy.'" *Wertz v. Target Corp.*, 2009 WL 635655, at *3 (E.D. Cal. Mar.

10, 2009); *see also Rooney v. Sierra Pac. Windows*, 2011 WL 2149097, at *3 (N.D. Cal. June 1, 2011) ("Evidentiary preclusion is a harsh sanction."). Plaintiffs' expert should not be punished for failing to incorporate NSO's complex financial documents served just four days before the expert disclosure deadline, especially given NSO's repeated refusal to comply with its discovery obligations. *See, e.g.*, Dkt. No. 494 at 9 ("Overall, the court concludes that defendants have repeatedly failed to produce relevant discovery and failed to obey court orders regarding such discovery."). "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). In the event that the Court reaches this analysis, these factors all counsel against striking the Trexler Supplemental Report.

*First*, NSO suffered no "prejudice" because Ms. Trexler continues to rely on the analysis in the Trexler Report. NSO claims that it suffered harm because it wasted resources in responding to the Trexler Report, but the Trexler Supplemental Report did not render that effort wasted or futile. The Trexler Supplemental Report "███████████████████████████████████████████████████████████████████████████████████████." Dkt. No. 487-6 ¶ 2. That the "████████████████████████████████████████████████████████████████████████" does not mean that Ms. Trexler discarded the opinions in the Trexler Report. *Id.* ¶ 6.

Moreover, by its own reasoning, NSO's alleged harm is of its own making. NSO postulates that a delay in disclosure caused it to incur costs to create portions of an expert report that was no longer necessary. NSO is the singular cause of any such delay. As noted, NSO disclosed the NSO Profit Spreadsheet four days before Ms. Trexler's initial report was due. Because NSO did not produce the NSO Profit Spreadsheet earlier, Ms. Trexler conducted ████████████████████ based on other available information at that time. Had NSO disclosed the NSO Profit Spreadsheet earlier, Ms. Trexler may not have had a need to supplement the Trexler Report. NSO's theory of harm therefore

applies against them and supports a finding that Plaintiffs were prejudiced by NSO's delays and gamesmanship.

Regarding "surprise," NSO cannot credibly claim to have been surprised that Plaintiffs offered expert opinions regarding testimony that NSO provided after the deadline for affirmative expert disclosures—especially when Ms. Gil's deposition focused largely on obtaining an explanation of the NSO Profit Spreadsheet. Ms. Trexler also clearly stated in the Trexler Report ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Dkt. No. 487-3 ¶¶ 7–8. Lastly, the Trexler Supplemental Report was promptly submitted two weeks after Ms. Gil's deposition, so NSO cannot credibly claim surprise from a much belated supplement. *See Therapure*, 2021 WL 2719060, at *6 (ruling that defendants could not claim surprise because the supplemental report was produced on the supplementation deadline and approximately two to three weeks after the corporate designee's testimony).

*Second*, NSO had a full opportunity to cure any harm they may have suffered. In the more than two months following the submission of the Trexler Supplemental Report, Mr. Pinsonneault submitted two supplemental reports responding to Ms. Trexler's analysis of the NSO Profit Spreadsheet. He submitted the first supplemental report on November 8, 2024 and the second on November 27, 2024. NSO also declined to depose Ms. Trexler.

*Third*, since NSO premises its theory of harm solely on the incurrence of costs associated with preparing portions of Mr. Pinsonneault's initial report, NSO does not claim that Ms. Trexler's Supplemental Report altered any other reports, motions, or hearings. NSO does not claim that Ms. Trexler's opinions will disrupt the trial. Lastly, NSO accuses Plaintiffs, without any evidence, of concealing Ms. Trexler's report until the expert rebuttal deadline. In fact, Ms. Trexler worked diligently to prepare her report, and Plaintiffs worked diligently to disclose it. Block Decl. ¶ 4.

At bottom, this is not the scenario that the Federal Rules of Civil Procedure aim to protect against. Rule 26(e) prevents experts from serving additional reports that add new or refined opinions or analyses in response to rebuttal opinions or challenges raised in their depositions. *See Luke*, 323 F. App'x at 499–500; *see also Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998) ("The experienced expert could simply 'lie in wait' so as to express his genuine opinions only after plaintiff

discloses hers."). Here, Ms. Trexler did nothing of the sort. She disclosed the need to learn more information about the NSO Profit Spreadsheet when submitting the Trexler Report, learned that information from Ms. Gil's testimony seven days later, and then incorporated that information into the Trexler Supplemental Report two weeks after that, all before NSO had submitted any damages rebuttal report. She did not try and hide her opinions from NSO, as NSO had two months to review her supplemental report before her deposition. And she did not try and buttress her opinions against criticisms, as no rebuttal report had yet been filed. (In stark contrast, NSO only served Mr. Pinsonneault's second supplemental report after his deposition. *See* Dkt. No. 492 ¶¶ 9–10.)

## CONCLUSION

For the reasons stated above, the Plaintiffs respectfully request that the Court deny NSO's motion to strike Ms. Trexler's supplemental expert report.

Dated: January 13, 2025                 Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: /s/ Micah G. Block
    Greg D. Andres
    Antonio J. Perez-Marques
    Gina Cora
    Craig T. Cagney
    Luca Marzorati
     (admitted *pro hac vice*)
    DAVIS POLK & WARDWELL LLP
    450 Lexington Avenue
    New York, New York 10017
    Telephone: (212) 450-4000
    Facsimile: (212) 701-5800
    Email: greg.andres@davispolk.com
           antonio.perez@davispolk.com
           gina.cora@davispolk.com
           craig.cagney@davispolk.com
           luca.marzorati@davispolk.com

    Micah G. Block (SBN 270712)
    DAVIS POLK & WARDWELL LLP
    900 Middlefield Road, Suite 200
    Redwood City, CA 94063
    Telephone: (650) 752-2000
    Facsimile: (650) 752-2111
    Email: micah.block@davispolk.com

    *Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*