1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone:   (213) 443-4355
5  Facsimile:   (213) 443-4310

6  Attorneys for Defendants NSO GROUP TECHNOLOGIES
   LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DECLARATION OF JOSEPH N. AKROTIRIANAKIS IN SUPPORT OF JOINT STIPULATION AND ORDER RE CONTINUANCE OF TRIAL AND CERTAIN PRETRIAL DEADLINES AND REQUEST FOR STATUS CONFERENCE [BASED ON UNAVAILABILITY OF COUNSEL DUE TO EATON WILDFIRE]**<br><br>Judge:   Hon. Phyllis J. Hamilton<br><br>Action Filed:   10/29/2019 |

I, Joseph N. Akrotirianakis, declare as follows:

1. I am an attorney licensed to practice law in the State of California. I am a partner in the law firm of King & Spalding LLP, and I am lead counsel for Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively "NSO Defendants") in the above-entitled action. Except as otherwise stated, I have personal knowledge of the facts set forth below and could competently testify to each fact averred.

2. This declaration supplements my declarations of January 11 and 13, 2025 (Dkt. Nos. 520-1 & 522), the contents of which remain accurate and are incorporated by reference. As I stated therein, I reside in Altadena, California, and the Eaton fire started approximately three blocks from our home.

3. We were ordered to evacuate on the evening of January 7, shortly after the fire began. The fire subsequently destroyed most of the town of Altadena, an unincorporated area of Los Angeles County. The below maps taken from a website published by the County of Los Angeles, say it better than I could describe it. Most of what is shown in the first image is within the bounds of the town of Altadena (with some of Pasadena around the edges and the Angeles National Forest in green at the top).

4. The red outline approximates the footprint of the fire at its greatest extent. The red houses are structures that burned, almost all of them to ashes. The black houses are surviving structures. The other colors are varying degrees of damage. The areas without houses are where the inspectors and search and rescue teams (i.e., cadaver dogs) have not yet reached. My home is in one of many "uninspected" areas.

5. The second image is just an enlargement of an area in the bottom left of the first image, and it is intended to illustrate the neighborhood destruction in Altadena, i.e., many entire and successive blocks without remaining structures. As has been seen on the news (and with my eyes), many neighborhoods are now just brick chimneys and the burnt shells of cars sitting where garages and driveways used to be.

6. The third image was published by CNN on the morning of the making of this declaration. It presages, based on satellite imagery, what inspectors are expected to find in the as-

yet uninspected areas of Altadena.  Shown in red are structures likely damaged or destroyed and in gray structures likely not damaged or destroyed.  This is consistent with my own observations in the uninspected areas.







7.      Depending how "destructiveness" is measured, the Eaton Fire is now the second most destructive wildfire in the history of California and the most destructive in the history of Southern California. On the morning of the making of this declaration, CNN reported that the Eaton Fire "is only 45% contained." Moreover, additional "Santa Ana" winds are forecasted next week with "red flag" (fire risk) warnings expected.

8.      Altadena has been without any utilities (gas, water, power) for many days. With respect to gas service, SoCalGas has not stated when it will be restored but has stated that it can be restored only on an individual residence-by-residence basis, that each residence may take two hours to restore, and that it may be "weeks" before gas service is restored.

9.      The Pasadena Water & Power Department, which supplies water (but not power) to relevant parts of Altadena has warned that the Eaton Fire caused damage to several City of Pasadena reservoirs and pump stations, impacting water quality, and that even once water service is restored, water may not be used for drinking, cooking, brushing teeth, washing dishes, making ice, etc., until further notice.

10. Southern California Edison, which supplies power to relevant parts of Altadena, has stated that, as of the day of the making of this declaration, 62,200 customers are without power, without indication when power will be restored.

11. There has been no official announcement from the County of Los Angeles (which governs Altadena, as an unincorporated area) when evacuation orders for my "Evacuation Zone" will be lifted and those orders are being actively enforced by the National Guard, stationed at every intersection entering upper Altadena (where I live). Unofficial sources have referenced "weeks," "another month," or "months." I presently have no ability to access my home. Once I am able to return to our home, I do not know what condition I will be returning to with respect to damage to or habitability or what will have to be done before I can move our family out of the two hotel rooms in which we are presently living and back into our home.

12. I have relocated five times since the initial evacuation order. There is an incredible shortage of furnished housing. In spite of my efforts to do so, I have been unable to locate furnished housing within any reasonable distance of my children's school, and my family and I expect to be living in two hotel rooms for the foreseeable future. In the circumstances, I continue to have extremely limited ability to perform any work on Defendants' pretrial filings due to matters related to the Eaton Fire.

13. Other lawyers and staff working on this matter for Defendants have been and continued to be affected by the Eaton Fire. Additionally, with more "Santa Ana" winds forecasted, Southern California Edison has announced that more "Public Safety Power Shutoffs" are expected.

14. In the current circumstances, Defendants cannot be prepared to try this case on the current schedule. I am confident that Defendants could be prepared to try the case with a four-week continuance of the trial and the related deadlines described in the stipulation this declaration accompanies. A continuance of that length would, however, leave the trial in the middle of the Passover, Good Friday, and Easter observances. My clients' employee witnesses and house counsel would not be able to travel or work on certain days during this period because of their religious observance of Passover (sundown April 11 through April 20, 2025). Members of Defendants' trial team who share the same faith would have similar issues.

15. In observance of Good Friday and Easter, I have historically not worked beginning early in the evening of Holy Thursday through Easter Sunday (observed this year April 17-20) in order to attend religious services on Thursday evening, Friday afternoon, Friday Evening, Saturday evening, and Sunday morning.

16. Because of these religious observances, Defendants respectfully request a continuance of the trial until April 28, 2025.

17. In addition to the alterations of the case schedule described in my January 11, 2025, declaration (Dkt. No. 520-1), this Court on January 14, 2025, issued an order (Dkt. No. 527) continuing the following dates: the deadline for the filings required by paragraph B.3 of the Court's Civil Pretrial Instructions, entitled "Final Pretrial Conference," were continued until Thursday, January 23, 2025, the deadline for the filings required by paragraph B.5 of the Court's Civil Pretrial Instructions were continued until February 6, 2025, the deadlines for the Ominbus sealing motions described on described on page 15 of the Court's December 20, 2024, Order re Motions for Summary Judgment, Motion for Sanctions, and Discovery Letter Briefs (Dkt. No. 494) were continued until January 24 and January 31, 2025; and the deadlines related to Defendants' substitution of its expert witness set forth in the Court's January 10, 2025 Order re Motion to Substitute Expert, Discovery Letter Brief (Dkt. No. 519) were continued to January 23, 2025 (for deposition of Mr. Minkler), January 30, 2025 (to file a Daubert motion or motion in limine pertaining to Mr. Minkler's testimony), February 6, 2025 (for oppositions to such motions), January 23, 2025 for any rebuttal expert report; January 29, 2025 (to depose that rebuttal expert (if any); February 3, 2025 (to file a Daubert motion or motion in limine pertaining that rebuttal testimony); and February 7, 2025 (to oppose any such motions). The Court also issued an order (Dkt. No. 529) on January 16, 2025 continuing the pretrial conference to February 27, 2025 and the trial date to March 10, 2025.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of January 2025.

        /s/ *Joseph N. Akrotirianakis*
        Joseph N. Akrotirianakis