Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         gina.cora@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94053
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE THE SECOND SUPPLEMENTAL REBUTTAL EXPERT REPORT OF GREGORY A. PINSONNEAULT** <br><br> Date:  April 10, 2025 <br> Time:  2:00 p.m. <br> Ctrm:  3 <br> Judge: Hon. Phyllis J. Hamilton <br> Action Filed: October 29, 2019 |

**[PUBLIC REDACTED VERSION]**

# TABLE OF CONTENTS

PAGE

ARGUMENT ................................................................................................................................2

    I.    The November 27 Pinsonneault Report Is Not a Proper Supplemental Report ..........2

        A.    NSO Admits That the November 27 Pinsonneault Report Failed to Comply with the Case Schedule ................................................................2

        B.    The November 27 Pinsonneault Report Did Not Fill a Gap in Mr. Pinsonneault's Previous Reports Based on New Information .........................3

        C.    Experts Cannot Submit Supplemental Reports to Update Calculations Unless There Was Error ................................................................................5

        D.    An Expert's Reservation of Rights Is Only Effective if It Complies with the Federal Rules of Civil Procedure ............................................................6

    II.    NSO's Failure to Comply with Rule 26(e) Was Not Justified or Harmless ................6

        A.    Plaintiffs Face Prejudice from the November 27 Pinsonneault Report ...........6

        B.    The November 27 Pinsonneault Report Harmed Plaintiffs, and Such Harm Could Not Be Cured with a Subsequent Deposition ..............................8

CONCLUSION ............................................................................................................................10

i

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE THE SECOND SUPPLEMENTAL EXPERT REPORT OF GREGORY PINSONNEAULT - CASE NO. 4:19-cv-07123-PJH

# TABLE OF AUTHORITIES

C<small>ASES</small>

P<small>AGE</small>(S)

*Cambridge Lane, LLC v. J-M Mfg. Co., Inc.*,
    2024 WL 4101940 (C.D. Cal. Aug. 2, 2024) .......................................................................... 3, 4

*Charter School Sols. v. GuideOne Mut. Ins. Co.*,
    2019 WL 5258055 (W.D. Tex. June 28, 2019) ......................................................................... 5

*Chinitz v. Intero Real Est. Servs.*,
    2020 WL 7391299 (N.D. Cal. July 22 2020) ............................................................................ 4

*Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*,
    2003 WL 23715981 (D. Or. Jan. 21, 2003) ........................................................................... 5, 8

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*,
    397 F.3d 1217 (9th Cir. 2005) ................................................................................................... 8

*Jean Royère SAS v. Edition Mod.*,
    2023 WL 9019058 (C.D. Cal. Dec. 11 2023) ............................................................................ 3

*Keener v. United States*,
    181 F.R.D. 639 (D. Mont. 1998) ............................................................................................... 3

*Kennedy v. Allied Mut. Ins. Co.*,
    952 F.2d 262 (9th Cir. 1991) ..................................................................................................... 8

*Luke v. Family Care & Urgent Med. Clinics*,
    323 F. App'x 496 (9th Cir. 2009) .......................................................................................... 1, 3

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*,
    2008 WL 4601038 (N.D. Cal. Oct. 15, 2008) .................................................................. 5, 7, 10

*Miller v. Pfizer, Inc.*,
    356 F.3d 1326 (10th Cir. 2004) ................................................................................................. 5

*Munchkin, Inc. v. Playtex Prods., LLC*,
    600 F. App'x 537 (9th Cir. 2015) .............................................................................................. 3

*Neothermia Corp. v. Rubicor Med., Inc.*,
    345 F. Supp. 2d 1042 (N.D. Cal. 2004) ................................................................................... 10

*Pickens v. United States*,
    750 F. Supp. 2d 1243 (D. Or. 2010) .......................................................................................... 6

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
    2021 WL 2577536 (N.D. Cal. June 23, 2021) ................................................................... 4, 5, 7

ii

P<small>LAINTIFFS'</small> R<small>EPLY IN</small> S<small>UPPORT OF</small> M<small>OTION TO</small> S<small>TRIKE THE</small> S<small>ECOND</small> S<small>UPPLEMENTAL</small> E<small>XPERT</small> R<small>EPORT OF</small> G<small>REGORY</small> P<small>IN-</small>
<small>SONNEAULT</small> - C<small>ASE</small> N<small>O</small>. 4:19-<small>CV</small>-07123-PJH

*In re Qualcomm Antitrust Litig.*,
    2023 WL 7393012 (N.D. Cal. Nov. 7 2023) ................................................................... 4

*Rovid v. Graco Child.'s Prods., Inc.*,
    2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) ............................................................. 4, 9

*Shahbaz v. Johnson & Johnson*,
    2020 WL 5894590 (C.D. Cal. July 31, 2020) .......................................................... 4, 10

*Wechsler v. Macke Int'l Trade, Inc.*,
    221 F.R.D. 619 (C.D. Cal. 2004) ................................................................................ 6

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) .................................................................................... 7

STATUTES & RULES

Fed. R. Civ. P. 26 ............................................................................................................. 2
Fed. R. Civ. P. 26(a)(2)(D)(ii) ......................................................................................... 2
Fed. R. Civ. P. 26(e) .................................................................................. 1, 2, 3, 4, 5, 7, 10
Fed. R. Civ. P. 26(e)(1)(A) ............................................................................................. 3
Fed. R. Civ. P. 37(c)(1) ................................................................................................... 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

NSO has long known that its Pegasus spyware accessed WhatsApp's servers from 2018 until at least 2020 and not—as it told the Court—"[f]or approximately 40 days in Spring 2019." Dkt. No. 105 at 1. Once discovery revealed the extent of NSO's misconduct, Plaintiffs put ███████ ███████████████████████████████████████████████████████████████████████████████ ████████████ For its part, NSO made the tactical decision to have their damages expert (Gregory A. Pinsonneault) offer █████████████████████████████████████████████████████████████. Through Mr. Pinsonneault, ███████████████████████████████████████████████████████ █████████████████████████████████. After Plaintiffs deposed Mr. Pinsonneault, NSO changed its position on that issue. In the November 27 Pinsonneault Report, which NSO served after Mr. Pinsonneault's deposition, █████████████████████████████████████████████████████ ███████████████. The Federal Rules of Civil Procedure and the Court's schedule do not permit that kind of shifting-sands approach to litigation.

NSO cannot—and does not—dispute that the November 27 Pinsonneault Report came after the applicable deadlines for rebuttal reports. Its only argument against striking the report is to contend that it is a proper supplement under Rule 26(e). That argument ignores the governing standard for supplemental reports in the Ninth Circuit: an expert can only supplement an incomplete report in order to fill the interstices based on information that was not available at the time of the initial report. *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). Nearly every district court in the Ninth Circuit faced with a supplemental expert report—including this Court—applies this standard, which counsels strongly against allowing purported supplements (like Mr. Pinsonneault's) that do not turn on later-arising evidence. Yet NSO fails to cite *Luke* or its progeny even once.

NSO disregards the *Luke* standard because it dooms NSO's argument. The November 27 Pinsonneault Report ███████████████████████████████████████████████████████████████ ████████████████████████████████████. NSO maintains that Mr. Pinsonneault's previous reports were ██████████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████.

1

According to NSO, it submitted the November 27 Pinsonneault Report ███████████ ███. Dkt. No. 523 at 7. That is not a proper basis for supplementation under Rule 26(e) or the cases interpreting it. The apparent truth is that the November 27 Pinsonneault Report ███████ ████████████████████████████████████████████████████████████ ███████████████████████████████. That also is not a proper basis to re-open expert discovery and inject new opinions. NSO must live with its decision.

NSO cannot meet its burden of showing that its belated service of the November 27 Pinsonneault Report was either substantially justified or harmless to Plaintiffs. NSO suggests that Plaintiffs should have taken Mr. Pinsonneault's deposition a second time after receiving that post-deposition "supplement." This would have placed an unreasonable burden on Plaintiffs given the length of Mr. Pinsonneault's report and the Court's schedule, especially with the many competing case-related priorities just months before trial (including the depositions of the main technical witnesses).

The November 27 Pinsonneault Report should therefore be stricken.

## ARGUMENT

### I. The November 27 Pinsonneault Report Is Not a Proper Supplemental Report

NSO argues that the November 27 Pinsonneault Report was a proper supplemental report under Rule 26. It was not. The Ninth Circuit allows an expert to update an otherwise accurate expert report only in response to new information, not in response to a party second-guessing their own damages strategy.

#### A. NSO Admits That the November 27 Pinsonneault Report Failed to Comply with the Case Schedule

NSO served the November 27 Pinsonneault Report more than two months after the deadline for rebuttal expert reports and more than two months after Plaintiffs served the Trexler Supplemental Report. NSO does not argue that the November 27 Pinsonneault Report met the Court's rebuttal expert report disclosure deadline. Nor does NSO argue that the November 27 Pinsonneault Report was timely under the rule allowing a rebuttal within 30 days after an affirmative report. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (allowing "30 days after the other party's disclosure" to provide rebuttal

2

Plaintiffs' Reply in Support of Motion to Strike the Second Supplemental Expert Report of Gregory Pinsonneault - Case No. 4:19-cv-07123-PJH

evidence "on the same subject matter identified by another party").[1] Given these facts, the November 27 Pinsonneault Report must be struck unless it is a proper supplemental disclosure under Rule 26(e). *See* Dkt. No. 523 at 8 (citing Fed. R. Civ. P. 26(e)(1)(A)). As explained below, it is not.

### B. The November 27 Pinsonneault Report Did Not Fill a Gap in Mr. Pinsonneault's Previous Reports Based on New Information

NSO's opposition brief entirely ignores the standard governing supplemental expert reports in the Ninth Circuit, which Plaintiffs cited on the first page of their motion to strike. In *Luke*, the Ninth Circuit stated that "Rule 26(e) creates a 'duty to supplement,' not a right. Nor does Rule 26(e) create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." 323 F. App'x at 500 (quoting Fed. R. Civ. P. 26(e)(2)). It then held that "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Id.* (alteration in original) (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)). In *Luke*, the Ninth Circuit upheld a district court's exclusion of an untimely declaration from the plaintiff's expert witness that "impermissibly attempted to fix the weakness" in the plaintiff's case. *Id.*

Though *Luke* was an unpublished opinion, it has become the touchstone of the analysis for courts in this Circuit. *See, e.g.*, *Munchkin, Inc. v. Playtex Prods., LLC*, 600 F. App'x 537, 538 (9th Cir. 2015) (citing *Luke* in ruling that expert report was "not a mere supplementation within the meaning of the Rules"); *Cambridge Lane, LLC v. J-M Mfg. Co.*, 2024 WL 4101940, at *10 (C.D. Cal. Aug. 2, 2024) (citing *Luke* in excluding plaintiff's expert reports served after expert depositions that responded to defendant's arguments); *Jean Royère SAS v. Edition Mod.*, 2023 WL 9019058, at *2 (C.D. Cal. Dec. 11, 2023) (citing *Luke* in excluding expert reports where "the revisions are clearly an attempt to strengthen [expert's] opinions, and are, as such, inappropriate supplementation); *In re Qualcomm Antitrust Litig.*, 2023 WL 7393012, at *3 (N.D. Cal. Nov. 7, 2023) (citing *Luke* in

---

[1] The November 27 Pinsonneault Report came 67 days after the report it purported to rebut.

3

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE THE SECOND SUPPLEMENTAL EXPERT REPORT OF GREGORY PINSONNEAULT - CASE NO. 4:19-CV-07123-PJH

excluding supplemental report filed after deadline where "all information at issue now was in the record"); *Shahbaz v. Johnson & Johnson*, 2020 WL 5894590, at *7 (C.D. Cal. July 31, 2020) (citing *Luke* in excluding plaintiffs' "late expert report" served in response to purported "new issues" that defendants failed to identify); *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *3–4 (N.D. Cal. July 22, 2020) (citing *Luke* in excluding expert reply declaration purporting to supplement report by addressing "challenges to the [expert's] conclusions"). In *Cambridge Lane*, the court not only relied on *Luke* to strike an untimely expert report, but also commented on its persuasive value, noting that it has been cited approvingly by "several other courts within this district – and, for what it is worth, many others throughout this circuit and around the country," as well as "two subsequent Ninth Circuit panels . . . one of which was a published opinion." 2024 WL 4101940, at *7 n.6.

Similarly, this Court applied the analysis in *Luke* when denying a purported supplemental report served after the deadline for expert reports. In *Rovid v. Graco Children's Products Inc.*, plaintiffs submitted an admittedly untimely expert report "prepared and submitted because defendants' expert 'challenged the completeness, accuracy, and reliability of the measurements reported in' [plaintiffs' expert]'s initial and rebuttal reports." 2018 WL 5906075, at *11 (N.D. Cal. Nov. 9, 2018) (citation omitted). After quoting extensively from *Luke*, this Court concluded that *Luke*'s logic "applies here." *Id.*  In *Rovid*, the proposed supplement did not "correct[] inaccuracies" and the expert's earlier report was not "incomplete" because of "newly discovered information." *Id.*  Hence the supplemental report was improper under Rule 26(e), and the Court struck it. *Id.*

Another court in this District invoked *Luke* to strike a damages expert's report in a similar posture. *See Plexxikon Inc. v. Novartis Pharms. Corp.*, 2021 WL 2577536, at *4 (N.D. Cal. June 23, 2021). In *Plexxikon*, the damages expert originally calculated damages through the end of 2018, and admitted at his deposition that he did not calculate any damages after 2018. *Id.* at *2–4. After the defendant moved to exclude the plaintiff from presenting evidence or argument regarding post-2018 damages, the expert submitted an additional report calculating damages for 2019. *Id.* at *3. But the court rejected the argument that the expert's belated damages report was merely a "recalculat[ion]" because it "did not simply update the damages calculation based on amended data, but expanded the

4

Plaintiffs' Reply in Support of Motion to Strike the Second Supplemental Expert Report of Gregory Pinsonneault - Case No. 4:19-cv-07123-PJH

application of [the expert]'s damages model to the circumstances existing in 2019." *Id*. at *5. For this reason, the court struck the damages report. *Id*. at *7.

### C. Experts Cannot Submit Supplemental Reports to Update Calculations Unless There Was Error

Not only do NSO's leading cases ignore the *Luke* standard, but they fit comfortably within the two requirements of supplementation under Rule 26(e): responding to new information or correcting errors. In *Charter School Solutions v. GuideOne Mutual Insurance Co.*, the supplemental expert report did indeed "plainly supplement" the initial report because it corrected errors in the initial report. 2019 WL 5258055, at *3 (W.D. Tex. June 28, 2019) (explaining that the supplemental report "corrected [the expert's] calculation of the cost to repair the roof by removing certain taxes he had inadvertently added, which were inapplicable because [p]laintiff is a non-profit"). The same fact pattern arose in *Medtronic Vascular, Inc. v. Abbott Cardiovascular Systems, Inc.*, where the expert was deposed, realized his "honest mistakes," and "merely correct[ed] numerical errors." 2008 WL 4601038, at *2 (N.D. Cal. Oct. 15, 2008). The supplemental reports in *Charter School Solutions* and *Medtronic Vascular* were proper because supplemental reports *must* be issued to correct material errors under Rule 26(e). Yet Mr. Pinsonneault ███████████████████. The ██ ███████ in the November 27 Pinsonneault Report were instead ███████████████ ████████████ once NSO appreciated the risks of this strategy after Mr. Pinsonneault's deposition.

Even in cases departing from the *Luke* standard, which governs here, courts rarely allow supplementation when the opposing party has established an expert's conscious decision not to offer an opinion, as opposed to more general criticism. In *Miller v. Pfizer, Inc.*, the court allowed a supplemental report in response to "assertions by opposing experts that there are gaps in the expert's chain of reasoning." 356 F.3d 1326, 1332 (10th Cir. 2004); *see also Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, 2003 WL 23715981, at *2 (D. Or. Jan. 21, 2003) (allowing supplemental report in response to motion to strike). Here, the November 27 Pinsonneault Report ███████

5

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE THE SECOND SUPPLEMENTAL EXPERT REPORT OF GREGORY PINSONNEAULT - CASE NO. 4:19-cv-07123-PJH

██████████████████████████████████████████. It was in response to a gap in NSO's case.

### D. An Expert's Reservation of Rights Is Only Effective if It Complies with the Federal Rules of Civil Procedure

Mr. Pinsonneault's ███████████████████████ does not exempt him from the normal rules governing supplemental expert reports. In all the cases cited by NSO, the expert reserved the right to update the expert report in response to *new documents*. *See, e.g.*, *Wechsler v. Macke Int'l Trade, Inc.*, 221 F.R.D. 619, 623 (C.D. Cal. 2004) (reserving rights to update "if necessary, if and when documents [from defendants] . . . are made available to me."); *Pickens v. United States*, 750 F. Supp. 2d 1243, 1251 (D. Or. 2010) (reserving rights "pursuant to receipt of new material) (alteration in original). These reservations of rights align with *Luke*'s interpretation of Rule 26(e), which allows a supplemental expert report based on information that was not available at the time of the initial expert report. By contrast, Mr. Pinsonneault's purported reservation of rights is not contingent on new information becoming available. By reserving the right to update his report if the Court agreed with Plaintiffs on the proper time period to measure NSO's unlawful profits, Mr. Pinsonneault improperly attempted to expand his rights to supplement under the Federal Rules.

## II. NSO's Failure to Comply with Rule 26(e) Was Not Justified or Harmless

Plaintiffs' motion to strike established that NSO cannot meet its burden of showing that its failure to comply with Rule 26(e) was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); *see* Dkt. No. 490-3 at 9–10. Without the November 27 Pinsonneault Report, NSO ████ ████████████████████████████████████████. Plaintiffs' damages expert—who ████████████ ████████████—would thus have the only word on the matter, which will be of central importance at the forthcoming damages-only trial.

### A. Plaintiffs Face Prejudice from the November 27 Pinsonneault Report

To avoid the automatic sanction of exclusion, NSO must prove that their violation of Rule 26(e) was substantially justified or is harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,

6

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE THE SECOND SUPPLEMENTAL EXPERT REPORT OF GREGORY PINSONNEAULT - CASE NO. 4:19-CV-07123-PJH

259 F.3d 1101, 1006 (9th Cir. 2001). NSO cannot meet that burden. As courts have recognized, expert reports submitted after an expert was deposed give rise to prejudice. *See Medtronic Vascular*, 2008 WL 4601038, at *3 (finding "no real dispute that [recipient] suffered some prejudice as a result of [late] submission of the supplemental report"). Here, because NSO submitted the November 27 Pinsonneault Report after Mr. Pinsonneault's deposition, it prejudiced Plaintiffs.

The November 27 Pinsonneault Report also prejudiced Plaintiffs by injecting ▅▅▅▅▅▅ ▅▅▅▅▅ into the record just days before the close of expert discovery, and after Plaintiffs had successfully established a one-sided record on a central issue for the jury to decide. At the conclusion of Mr. Pinsonneault's deposition on November 20, 2024, the record was clear: ▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. That day, Mr. Pinsonneault testified under oath ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. *See* Block Decl. Ex. A (Pinsonneault Dep. Tr.) at 155:5–6. The jury would therefore only hear a single expert opinion ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅: the opinion of Plaintiffs' expert. NSO's attempt to avoid this outcome through a belated expert report undoes Plaintiffs' careful lawyering, and prejudices Plaintiffs' case at trial.

Indeed, NSO's decision to have Mr. Pinsonneault submit a belated expert report to plug holes in NSO's trial presentation constitutes sufficient prejudice. In *Plexxikon*, the court found that prejudice from an "expanded damages model" that calculates damages for additional years was "readily apparent," especially when the party serving the belated report "only belatedly realized its oversight in failing to consider damages" for later years. 2021 WL 2577536, at *6. Even one of the pre-*Luke* cases relied upon by NSO acknowledges that courts have struck expert reports where the proffering party "belatedly plug[s] those holes with a new expert opinion." *Confederated Tribes of Siletz Indians of Or.*, 2003 WL 23715981, at *2; *see also Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) (describing "sham affidavit" rule where party attempts to manufacture "'an issue of fact by an affidavit contradicting his prior deposition testimony'") (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).

7

Plaintiffs' Reply in Support of Motion to Strike the Second Supplemental Expert Report of Gregory Pinsonneault - Case No. 4:19-cv-07123-PJH

NSO cannot take shelter by arguing that the November 27 Pinsonneault Report was served sufficiently in advance of trial to blunt any prejudice. The prejudice from the November 27 Pinsonneault Report flows not from the fact that it was served just over three months before trial was then slated to begin, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

Nothing in Mr. Pinsonneault's report reduced the surprise and associated prejudice. The November 7 Pinsonneault Report ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Dkt. No. 490-4, Ex. B ¶ 24. As described above, this reservation of rights exceeds the limits of the Federal Rules. What's more, the Court has not yet been asked to make such a determination—and thus Mr. Pinsonneault did not supplement his report in response to any such determination. NSO's decision to backtrack on its stated intention regarding supplementation adds an additional layer to Plaintiffs' surprise. Far from waiting for judicial guidance, NSO's counsel recognized the risk of not having a fallback position if the jury rejected NSO's now-debunked telling of the facts.

**B.  The November 27 Pinsonneault Report Harmed Plaintiffs, and Such Harm Could Not Be Cured with a Subsequent Deposition**

NSO cannot prove that the November 27 Pinsonneault Report is harmless because responding to it would force Plaintiffs to unnecessarily expend additional resources. Mr. Pinsonneault was deposed on November 20, 2024, which proceeded as part of a carefully negotiated schedule. Plaintiffs and their experts underwent significant efforts to prepare for Mr. Pinsonneault's deposition, including analyzing Mr. Pinsonneault's two previous reports and conducting his deposition. NSO suggests that Plaintiffs could have simply deposed Mr. Pinsonneault after receiving the November 27 Pinsonneault Report, but that proposal would involve Plaintiffs redoubling the efforts they recently made to take Mr. Pinsonneault's deposition and expending significant resources to do so. Put in NSO's own words, "[s]uch imposition of litigation expenses incurred in connection with an expert's shifting opinions can constitute prejudice sufficient to warrant striking a proposed supplemental expert report." Dkt. No. 487-2 at 9 (citing to *Rovid*, 2018 WL 5906075, at *10).

8

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE THE SECOND SUPPLEMENTAL EXPERT REPORT OF GREGORY PINSONNEAULT - CASE NO. 4:19-cv-07123-PJH

NSO's suggestion that Plaintiffs' harm was easily curable ignores the practical difficulty of further deposing Mr. Pinsonneault. NSO served its latest report from Mr. Pinsonneault on the night of November 27, 2024, the eve of Thanksgiving. Even after Plaintiffs' counsel analyzed the ▮ report over the Thanksgiving holiday, just 11 business days remained before the close of expert discovery on December 16, 2024. The parties had already scheduled the depositions of the key technical expert witnesses—the two most important expert witnesses in the case—over these 11 business days, and were otherwise preparing for trial. As this Court recognized in *Rovid*, the offer to have an expert sit for a deposition ignores all "other prejudice," including the need to file a motion to strike the belated expert report (as well as oppose NSO's motion to strike, which NSO only raised after Plaintiffs' indicated they would move to strike the November 27 Pinsonneault Report). "Those litigation activity expenses constitute sufficient prejudice." *Rovid*, 2018 WL 5906075, at *12. Whether or not it was deliberate, the timing of NSO's service of the November 27 Pinsonneault Report allowed them to capitalize on the compressed schedule—which itself was a result of their request to extend the fact discovery period and move the trial date.

More fundamentally, NSO's late change in its damages strategy is unfair in a way that additional depositions or other discovery cannot address, even if it did not come at a busy time in the case. Parties are entitled to rely on the Court's schedule and adversaries' strategic decisions in preparing a case for trial. Plaintiffs did so here. After analyzing Mr. Pinsonneault's reports, Plaintiffs prepared for and took his deposition. At that deposition, Plaintiffs elicited important concessions, which formed a crucial part of the pretrial record and helped to narrow the scope of evidence and issues for the jury to address. Allowing NSO to serve an additional expert report would allow it to inject new issues into the case without regard for the case schedule or Federal Rules. *See Shahbaz*, 2020 WL 5894590, at *7 (striking a supplemental report that caused a litigation disadvantage because it improperly attempted to rebut defendants' legal argument); *see also Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1045 (N.D. Cal. 2004) (noting similarities between Rule 26(e) and

9

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE THE SECOND SUPPLEMENTAL EXPERT REPORT OF GREGORY PINSONNEAULT - CASE NO. 4:19-CV-07123-PJH

patent rules designed to prevent "shifting sands" approach to claim construction).[2]  The Court should not allow NSO to use such tactics.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the November 27 Report of Gregory A. Pinsonneault.

---

[2] Should the Court not strike the November 27 Pinsonneault Report, it should allow Plaintiffs to depose Mr. Pinsonneault again, at a time of Plaintiffs' choosing, before trial.  *See Medtronic Vascular*, 2008 WL 4601038, at *3 (ordering offending party "to bear the cost of deposition, plus the [opposing side's] reasonable costs (including attorney's fees) of preparing for and taking this continued deposition" after finding prejudice due to a supplemental report's submission after the expert was already deposed).

10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE THE SECOND SUPPLEMENTAL EXPERT REPORT OF GREGORY PINSONNEAULT - CASE NO. 4:19-CV-07123-PJH

| | |
|---|---|
| Dated: January 23, 2025 | Respectfully Submitted,<br><br>DAVIS POLK & WARDWELL LLP<br><br>By: /s/ Micah G. Block<br>Greg D. Andres<br>Antonio J. Perez-Marques<br>Gina Cora<br>Craig T. Cagney<br>Luca Marzorati<br>  (admitted *pro hac vice*)<br>DAVIS POLK & WARDWELL LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 450-4000<br>Facsimile: (212) 701-5800<br>Email: greg.andres@davispolk.com<br>         antonio.perez@davispolk.com<br>         gina.cora@davispolk.com<br>         craig.cagney@davispolk.com<br>         luca.marzorati@davispolk.com<br><br>Micah G. Block (SBN 270712)<br>DAVIS POLK & WARDWELL LLP<br>900 Middlefield Road<br>Redwood City, CA 94063<br>Telephone: (650) 752-2000<br>Facsimile: (650) 752-2111<br>Email: micah.block@davispolk.com<br><br>*Attorneys for Plaintiffs*<br>*WhatsApp LLC and Meta Platforms, Inc.* |

11

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE THE SECOND SUPPLEMENTAL EXPERT REPORT OF GREGORY PINSONNEAULT - CASE NO. 4:19-CV-07123-PJH