JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
 acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:    (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S ADMINISTRATIVE MOTION TO CONTINUE BRIEFING DEADLINES AND HEARING DATE ON PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION (ECF NO. 558)**<br><br>Judge:   Hon. Phyllis J. Hamilton<br><br>Action Filed:   10/29/2019 |

Monday, Plaintiffs filed a Motion for Permanent Injunction ("Motion," Dkt. No. 558), despite the fact no trial or other evidentiary hearing has been held. Defendants intend to oppose the motion, and the law is clear that the Court cannot enter a permanent injunction without first holding an evidentiary hearing. Defendants submit that an evidentiary hearing on Plaintiffs' requested equitable remedies should be held concurrently with or following the April 28 trial. That would permit the jury to decide remaining legal issues before the Court decides any equitable issues. From a practical perspective, moreover, Defendants' witnesses and counsel – and presumably the Court – cannot be prepared to conduct an evidentiary hearing beginning on April 10 (the noticed hearing date ). Defendants thus request that the Court set the remaining briefing schedule following the evidentiary hearing, and oral argument after briefing has been completed.

### I. An Evidentiary Hearing Is a Prerequisite to Entry of a Permanent Injunction

It is well-settled throughout the federal courts, including the Ninth Circuit, that "the entry or continuation of an injunction requires a hearing." *Charlton v. Estate of Charlton*, 841 F.2d 988 (9th Cir. 1988). "Other than a temporary restraining order, no injunctive relief may be entered without a hearing. A hearing on the merits—*i.e.,* a trial on liability—does not substitute for a relief-specific evidentiary hearing unless the matter of relief was part of the trial on liability, or unless there are no disputed factual issues regarding the matter of relief." *United States v. Microsoft*, 253 F.3d 34, 101 (D.C. Cir. 2001) (citations omitted); *see also Moltan Co. v. Eagle–Picher Indus.,* 55 F.3d 1171, 1175 (6th Cir. 1995) ("An evidentiary hearing is ordinarily required prior to the issuance of a permanent injunction.")

In a conference of counsel, when asked Plaintiffs' position why this motion is procedurally proper, Plaintiffs' only response was that the Motion could be brought prior to an evidentiary presentation because the Court had granted summary judgment on liability. (Craig Decl. ¶ 2.) But even a summary adjudication of liability "does not substitute for a relief-specific evidentiary hearing." *Microsoft*, 253 F.3d at 101. Plaintiffs' Motion does not address in any respect the procedural propriety of the Court entering permanent injunctive prior to, and without, an evidentiary hearing. Entry of such an injunction would be contrary to law.

The law is plain that an evidentiary hearing is required, unless the facts relating to entry of

an injunction are undisputed. While the Court determined for purposes of summary judgment that there were no disputed issues of fact related to Defendants' retroactive *liability*—whether Defendants violated the CFAA, CDAFA and WhatsApp's Terms of Service in the past—that ruling does not mean there are no disputed issues fact relating to Plaintiffs' requested prospective injunction. Defendants dispute virtually every "fact" in Plaintiffs' Motion. As examples only:

- Whether WhatsApp made changes in 2018 to block NSO's access to Plaintiffs' servers and to permanently disable the Heaven installation vector (Mot. 4:14-18) (Defendants proffer that WhatsApp witnesses will testify the 2018 changes were made completely independently of Pegasus and without knowledge of Pegasus);
- Whether Defendants have (or intend to build) any installation vector for Pegasus that uses WhatsApp's technology (Defendants' CEO testified that the answer is 'no,' *see* Dkt. No. 396-5, Akro Decl. Exh. H at 51:23-52:2);
- Whether Defendants operate Pegasus (Defendants proffer that NSO witnesses will testify that Defendants do not operate Pegasus);
- Who the users of Pegasus are and the purposes for which Pegasus is used (Defendants proffer that the users of Pegasus are exclusively agencies of sovereign governments (such as the FBI) who contract to use Pegasus solely to investigate and prevent terrorism and serious crime);
- Whether Plaintiffs knew that the users of Pegasus were sovereign governments (the answer is yes, *see* Dkt. No. 396-5, Akro. Decl. Exhs. S-V; Glick Tr. 61:3-4);
- Whether the targets of Pegasus identified in the Complaint included terrorists and criminals (Defendants proffer that the Pegasus "targets" users identified by Citizen Lab as "civil society" included terrorists (including an Al-Qaeda terrorist) and criminals, and that Plaintiffs were aware of this but notified those targets anyway);
- Whether statements that Omri Lavie (not an officer of either Defendant) allegedly made on a podcast, are attributable to Defendants or represent their views;
- Whether Defendants were sanctioned for not providing information about their activities beyond May 2020 (Mot. 4 n.3) (they were not); and

- Whether Defendants "blocked from discovery" information about NSO's relationship with its customers (Mot. 12 n.5) (the Court denied Plaintiffs' motion to compel on this subject).

Disputes of fact about Defendants' post-complaint conduct bear directly on the question of whether Plaintiffs face a risk of future harm and whether Defendants' ongoing conduct, which is an element in the permanent injunction analysis (*see* Motion at 10-12). Disputes of fact about whether Pegasus operators were exclusively sovereign governments using Pegasus to investigate and prevent terrorism and serious crime weigh heavily in determining whether the overly broad injunction Plaintiffs request is in the public interest. The Plaintiffs' proposed injunction terms are also facially overbroad and are not tailored to the facts of the case. As just one example, Plaintiffs' proposed injunction relates to numerous technologies and platforms never at issue in the case (e.g., Facebook, Instagram, Messenger, Meta AI, Threads, Meta Horizon Platforms). Because there are many disputes of fact regarding the claims in Plaintiffs' Motion and the scope of their proposed injunction—the "matter of relief"—an evidentiary hearing is a prerequisite to entry of a permanent injunction. *Microsoft*, 253 F.3d at 101.

## II. Plaintiffs Have Shown No Urgency in Seeking an Injunction and Will Not Be Prejudiced by a Short Continuance

Diligence is a factor in the granting of equitable relief, and Plaintiffs' lack of diligence should factor into Plaintiffs' request to obtain a permanent injunction prior to the presentation of evidence in a trial or hearing. The events described in the Complaint took place in April and May 2019. In the next almost six years (including more than five years of litigation), Plaintiffs never sought a preliminary injunction. Even after the Court granted partial summary judgment on December 19, 2024, Plaintiffs, with all their resources, waited over nine weeks to file this Motion. Considering Plaintiffs' extreme lack of urgency, the Court should not rush to hold a hearing on a permanent injunction Motion without first holding an evidentiary hearing, even if doing so were not directly proscribed by the law of the Ninth Circuit and other circuits. Plaintiffs will suffer no prejudice if the Court follows the universal procedure of waiting until after the presentation of witness testimony and other evidence before deciding whether to enter a permanent injunction and

the scope of any such injunction. In contrast, NSO would be severely prejudiced by a rushed hearing on a motion that could affect the future of its business.

If the trial and evidentiary hearing on equitable relief were to conclude on or about May 5, the Court could order the remaining injunction briefing to be filed on May 15 and 22, and could hear argument from counsel thereafter. That minimal delay, which would permit the Court to hold the required evidentiary hearing concurrently with or just following trial, will prejudice no one.

### III.     Legal Issues Should Be Decided Before Equitable Ones

It is black-letter law that where there are common issues of fact, "legal claims involved in the action must be determined prior to any final court determination of [] equitable claims." *Dairy Queen v. Wood*, 369 U.S. 469, 479 (1962). Here, there are many common issues of fact between Plaintiffs' legal claims for damages and punitive damages and their equitable claims for disgorgement and injunctive relief. For example, a finding of malice, oppression, or fraud is required for the punitive damages Plaintiffs allege. The same evidence bears on whether an injunction is in the public interest or whether the balance of hardships supports an injunction, particularly given the fact that Defendants have long abandoned the use of any version of Pegasus that involves exploiting vulnerabilities in the WhatsApp code base. The degree to which Plaintiffs hinder or cooperate with law enforcement and law enforcement's need for tools like Pegasus given the ubiquity of end-to-end encryption is also relevant to both analyses. There are likewise issues common to the questions of legal damages and equitable disgorgement. Because legal issues must be determined first, the Court should not hear the Motion before all legal issues have been decided.

### IV.     Holding the Evidentiary Hearing During or After Trial Is Most Efficient

It would be most efficient to hold the required evidentiary hearing simultaneously with, or immediately following, the trial. Witnesses from both sides will be traveling from Israel and across the United States to testify in Oakland the week of April 28. The testimony provided during the jury trial is likely to overlap in substantial part with the evidence relating to Plaintiffs' requests for equitable remedies such as disgorgement and injunctive relief. The Court can, and should, make determinations concerning equitable relief after witness testimony—the credibility of which the Court would then evaluate—rather than relying on documents, declarations, and snippets of

deposition testimony taken out of context.

Finally, if Plaintiffs suggest an evidentiary hearing should be held beginning April 10 (or a date before April 28), that suggestion is inefficient and unworkable. As previously noted, the religious holidays of Passover, Good Friday, and Easter will be observed between the evening of April 11 and April 20, 2025. Israeli witnesses would be unable to appear at an evidentiary hearing to begin April 10. Even were that not the case, witnesses should not be asked to travel 16+ hours in each direction more than once to testify. Moreover, Defendants' counsel would suffer hardship preparing for a separate and unexpected evidentiary proceeding while also preparing for the April 10 pretrial conference and the April 28 trial. Indeed, at the pretrial conference (scheduled for the same day for which Plaintiffs' noticed their motion), the parties and the Court will already be addressing at least six *Daubert* motions, 20 motions in limine, and issues about the conduct of the April 28 trial – including whether Plaintiffs' equitable request for disgorgement is proper and if so, whether that request for relief is tried to the jury (as Plaintiffs seem to believe) or to the Court (as is the case with disgorgement and other claims of entitlement to equitable relief. Adding to this an additional oral argument (and possibly an evidentiary hearing) on Plaintiffs' Motion for permanent injunction would presumably exceed the resources the Court has available on that day.

### V.  Conclusion

Defendants have a right to an evidentiary hearing because virtually all facts underlying Plaintiffs' Motion are disputed. Plaintiffs have demonstrated no urgency seeking injunctive relief, and a delay until after the trial will not be prejudicial. Moreover, it is black-letter law that legal issues should be tried before equitable ones, and holding an April 10 evidentiary hearing would be extremely inefficient. The Court should set a briefing schedule to follow a trial/evidentiary hearing starting April 28, and should set argument on Plaintiffs' Motion on a date thereafter.

DATED: February 26, 2025

KING & SPALDING LLP

By: /s/Aaron S. Craig
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
Attorneys for NSO GROUP TECHS. LTD
and Q CYBER TECHS. LTD