Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
             antonio.perez@davispolk.com
             gina.cora@davispolk.com
             craig.cagney@davispolk.com
             luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

Joseph N. Akrotirianakis (Cal. Bar No. 197971)
Aaron S. Craig (Cal. Bar No. 204741)
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Email: jakro@kslaw.com
            acraig@kslaw.com

*Attorneys for Defendants NSO Group*
*Technologies Limited and Q Cyber*
*Technologies Limited*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**JOINT PRETRIAL STATEMENT**<br><br>Pretrial Conference Date: April 10, 2025<br>Time:   2:00 p.m.<br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton<br>Trial Date: April 28, 2025 |

Pursuant to the Court's Case Management and Pretrial Order, Dkt. No. 168, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. ("Plaintiffs") and Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited ("Defendants," and with Plaintiffs, the "Parties"), respectfully submit this Joint Pretrial Statement.

## BRIEF DESCRIPTION OF THE SUBSTANCE OF THE
## CLAIMS AND DEFENSES WHICH REMAIN TO BE DECIDED

### I. Plaintiffs' Position

The Court has already ruled that Defendants are liable for violating the Computer Fraud and Abuse Act ("CFAA"), the California Comprehensive Data Access and Fraud Act ("CDAFA"), and for breaching the WhatsApp Terms of Service. Dkt. No. 494 at 12–15.

In its order granting Plaintiffs' motion for partial summary judgment, the Court first found that Defendants violated Sections 1030(a)(2) and 1030(a)(4) of the CFAA, holding that Defendants exceeded authorized access to Plaintiffs' computers by using its WhatsApp Installation Server ("WIS") to "sen[d] messages through WhatsApp servers that caused Pegasus to be installed on target users' devices," and that the WIS then obtained information by "having it sent from the target users, through the What[s]App servers, and back to the WIS." *Id.* at 12–13. The Court next found that Defendants violated the CDAFA "for the same reasons as the CFAA claim." *Id.* at 13.

The Court also found Defendants liable for breaching the WhatsApp Terms of Service. *Id.* at 13–15. The Court recognized that Plaintiffs' "breach of contract claim is based on violation of the terms of service, specifically the provisions prohibiting users from 'reverse engineering' or 'decompiling' Whatsapp products, from sending 'harmful code' through Whatsapp, and from collecting user information, from accessing or attempting to access Whatsapp without authorization, and from using Whatsapp for illegal purposes." *Id.* at 13. In evaluating NSO's argument, the Court noted that "NSO offers only about two pages of opposition regarding breach." *Id.* at 14; *see* Dkt. No. 419-2 at 6–8 (two pages in Defendants' opposition to Plaintiffs' motion for summary judgment addressing "whether NSO breached the TOS").

The Court's summary judgment order started by rejecting NSO's first argument: "that plaintiffs cannot prove when they reverse-engineered or decompiled the Whatsapp program," which

failed because Defendants "offer no evidence as to when they did such reverse-engineering or decompiling." Dkt. No. 494 at 14; *see* Dkt. No. 419-2 at 6–7 (portion of Defendants' opposition advancing this argument). The Court then turned to Defendants' remaining arguments regarding breach: (1) that Defendants did not violate the prohibitions on collecting user information, accessing or attempting to access WhatsApp without authorization, using WhatsApp for illegal purposes, or sending harmful code because "Pegasus was operated by their clients," (2) that the terms in the WhatsApp Terms of Service were "vague and ambiguous," and (3) that Plaintiffs waived those contractual provisions. Dkt. No. 494 at 14 (citing Dkt. No. 419-2 at 15–17).

The Court found "no merit in the arguments raised by defendants," which spanned across all five provisions that Plaintiffs asserted Defendants had breached. *Id*. at 14. The Court then concluded "that plaintiffs have sufficiently established breach." *Id*. at 15.[1] The Court also found that "defendants do not dispute that plaintiffs incurred costs investigating and remediating defendants' breaches," thus satisfying the element of damages. *Id*. at 15. The Court separately found that Defendants should be sanctioned for "repeatedly fail[ing] to produce relevant discovery and fail[ing] to obey court orders regarding such discovery." *Id*. at 9. The Court agreed to "impose evidentiary sanctions when appropriate." *Id*.

The only remaining issues are the amount of damages that Defendants owe Plaintiffs (including compensatory damages, punitive damages, and attorneys' fees) and the proper injunctive relief. Plaintiffs seek compensatory damages for Defendants' violations of the CFAA and the CDAFA, and Defendants' breaches of the WhatsApp Terms of Service. Plaintiffs further seek punitive damages under CDAFA § 502(e)(4), pre- and post-judgment interest, and reasonable costs and attorneys' fees. Plaintiffs have also sought a permanent injunction enjoining Defendants from accessing or using Plaintiffs' platforms or technologies in any way, among other activity. *See* Dkt. No. 557-3. Plaintiffs may also seek further relief as necessary and appropriate in connection with

---

[1] Earlier in its order, the Court had found that Defendants violated laws governing unauthorized access to computers, and thus committed illegal conduct, providing further evidence that the Court concluded that Defendants breached the corresponding portions of the WhatsApp Terms of Service. *See* Dkt. No. 494 at 13 (noting that WhatsApp Terms of Service prohibit "accessing or attempting to access Whatsapp without authorization" and "using Whatsapp for illegal purposes").

the Court's Order granting Plaintiffs' motion for discovery sanctions. Dkt. No. 494 at 9. Plaintiffs believe that a jury should determine the damages issues at trial, and that the Court can rule on Plaintiffs' motion for a permanent injunction at the pretrial conference or otherwise without the need for an evidentiary hearing, because Plaintiffs' motion relies on undisputed facts.

## II.    Defendants' Position

Although Defendants respectfully disagree with the Court's summary judgment decision, Defendants agree that this Court concluded that Defendants are liable for violating the CFAA and CDAFA and for breaching WhatsApp's Terms of Service.

Defendants disagree that the Court's grant of summary judgment on Plaintiffs' breach of contract claim was based on anything other than reverse engineering and decompiling. Plaintiffs' contrary argument mischaracterizes the Court's order. In the portion of the order Plaintiffs quote, the Court was merely and unambiguously describing Plaintiffs' *allegations*: that Plaintiffs' "*claim* [was] based on . . . the provisions prohibiting users from "reverse engineering" or "decompiling" Whatsapp products, from sending "harmful code" through Whatsapp, and from collecting user information, from accessing or attempting to access Whatsapp without authorization, and from using Whatsapp for illegal purposes." (Dkt. 494 at 13 (emphasis added).) The Court went on to summarize Defendants' positions on those arguments, further making clear that the Court was merely describing the background of the dispute by neutrally describing the parties' arguments. In actually *finding* a violation of WhatsApp's terms, however, the Court relied *solely* on Defendants' alleged "reverse-engineering and/or decompiling" of WhatsApp's software. (Dkt. 494 at 14-15.) If the Court had intended to rely on Plaintiffs' other arguments, the summary judgment order would be plainly insufficient to support that conclusion because the Court made no factual findings one way or the other on whether NSO violated any provisions of the Terms other than those prohibiting decompiling and reverse-engineering.

Throughout this case, Plaintiffs have consistently claimed that they were entitled to an award of disgorgement, and that the issue of disgorgement was properly presented to the jury. That led NSO to incur substantial legal and expert expenses opposing disgorgement. On March 12, 2025—the day before the last day to file this document—Plaintiffs suddenly and without explanation

informed Defendants by email that they have abandoned their request for disgorgement. In reliance on Plaintiffs' representation that they are no longer seeking disgorgement in any respect, Defendants have deleted from this joint pretrial order and Defendants' trial brief substantial arguments for why Plaintiffs are not entitled to disgorgement as a matter of law. In the event that Plaintiffs attempt to renounce their representation, Defendants reserve all rights to raise arguments opposing disgorgement.

The remaining issues are: (1) whether Plaintiffs are entitled to compensatory damages and, if so, in what amount; (2) whether Plaintiffs are entitled to punitive damages and, if so, in what amount; (3) whether Plaintiffs are entitled to interest, costs, and/or attorney fees and, if so, in what amount; and (4) whether Plaintiffs are entitled to a permanent injunction and, if so, the scope of any injunction.

Furthermore, the Court already issued a ruling on Plaintiffs' motion for sanctions. (Dkt. 494.) It imposed certain evidentiary sanctions that Plaintiffs requested and denied the remainder of their motion. (*See id.* at 16.) The deadline for Plaintiffs to seek additional sanctions has long since passed (*see* Civil L.R. 37-3) and Plaintiffs have not obtained leave to file a motion for reconsideration (*see* Civil L.R. 7-9).

## DETAILED STATEMENT OF ALL RELIEF SOUGHT, ITEMIZING ALL ELEMENTS OF DAMAGES CLAIMED

### I.    Plaintiffs' Position

Plaintiffs seek both monetary and equitable relief. Plaintiffs explain the legal basis for their monetary damages in greater detail in their concurrently filed trial brief, and set forth the basis for injunctive relief in greater detail in their motion for permanent injunction, *see* Dkt. No. 558-3.

***Compensatory Damages.*** At the jury trial, Plaintiffs will seek an award of damages that is at least adequate to compensate them for the investigative and remediation costs incurred by Plaintiffs as a result of Defendants' violations of CFAA and CDAFA, and breaches of the WhatsApp Terms of Service. Plaintiffs' damages expert has calculated that Plaintiffs spent at least $444,719 in responding to NSO's attack. As explained in connection with Plaintiffs' motion for summary judgment, Dkt. No. 436-3 at 15 & n.10, and again in Plaintiffs' trial brief, Plaintiffs can recover these investigative costs as "loss" under the CFAA. *See Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F.

Supp. 3d 1218, 1265 (N.D. Cal. 2022) ("There is no indication that the *Van Buren* Court would place investigative costs as falling outside the scope of 'the cost of responding to an offense' that the statute specifically incorporates.").

The amount that Plaintiffs seek in compensatory damages is conservative. As set forth in Plaintiffs' trial brief, Plaintiffs' damages expert properly included restricted stock units awarded for work performed in 2019 to her calculation of Plaintiffs' labor costs. In addition, the evidence establishes that all the employees for which Plaintiffs seek response costs were involved in Plaintiffs' response. Contrary to NSO's contention, Plaintiffs' Rule 30(b)(6) witness said nothing that contradicted the evidence that Plaintiffs' damages expert relied upon.

***Punitive Damages.*** Plaintiffs also seek punitive damages to be determined by the trier of fact. *See* Cal. Penal Code § 502(e)(4). As explained in greater detail in Plaintiffs' trial brief, California law does not impose a standalone requirement that Plaintiffs prove that Defendants' conduct was "willful" in order to recover punitive damages. *See id.* § 502(e)(4) (requiring plaintiff to "prove[] by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice"). Contrary to Defendants' argument below, Plaintiffs do not seek to recover punitive damages for conduct outside of California or for harm to third parties such as WhatsApp users.

***Injunction.*** As set out in Plaintiffs' motion for permanent injunction, Plaintiffs also seek injunctive relief from the Court to stop Defendants from accessing Plaintiffs' servers or target users' devices. Plaintiffs' motion sets forth the basis for the injunctive relief that Plaintiffs seek, and Plaintiffs reserve the right to respond to any of the arguments set forth below in Plaintiffs' forthcoming reply brief in support of their motion.

Plaintiffs' motion for permanent injunction seeks an order binding Defendants; Defendants' officers, agents, servants, employees, and attorneys; and all other persons who are in active concert or participation with Defendants and Defendants' officers, agents, servants, employees, and attorneys (collectively, the "Prohibited Parties") with respect to all of Plaintiffs' computer systems and platforms (collectively, "Plaintiffs' Platforms"). Plaintiffs' Platforms include but are not limited to the WhatsApp, Facebook, Instagram, Messenger, Meta AI, Threads, and Meta Horizon platforms, as well as each of those platforms' related client applications.

Plaintiffs request that the Prohibited Parties be immediately and permanently enjoined from:

a. Developing, using, selling, offering for sale, distributing, transferring, or licensing, whether directly or through a third party, intermediary, or proxy, any technology that uses Plaintiffs' Platforms in any way, including as a method or approach used to install and deploy the technology (an "installation vector"), without first requesting and obtaining Plaintiffs' express written permission;

b. Developing, using, selling, offering for sale, distributing, transferring, or licensing, whether directly or through a third party, intermediary, or proxy, any technology that emulates Plaintiffs' Platforms in any way, including but not limited to the WhatsApp Installation Server ("WIS"), without first requesting and obtaining Plaintiffs' express written permission;

c. Collecting, or assisting others in collecting, data or information from Plaintiffs' Platforms, whether directly or through a third party, intermediary, or proxy, without first requesting and obtaining Plaintiffs' express written permission;

d. Reverse engineering or decompiling code from Plaintiffs' Platforms, whether directly or through a third party, intermediary, or proxy, without first requesting and obtaining Plaintiffs' express written permission;

e. Sending, storing, or transmitting viruses or other harmful code through Plaintiffs' Platforms, whether directly or through a third party, intermediary, or proxy, without first requesting and obtaining Plaintiffs' express written permission;

f. Using Plaintiffs' Platforms for illegal purposes, including violating the Computer Fraud and Abuse Act or the California Comprehensive Computer Data Access and Fraud Act, whether directly or through a third party, intermediary, or proxy, without first requesting and obtaining Plaintiffs' express written permission; and

g. Creating accounts, whether directly or through a third party, intermediary, or proxy, on Plaintiffs' Platforms, without first requesting and obtaining Plaintiffs' express written permission.

Plaintiffs also request that the Prohibited Parties delete and destroy any and all computer code or technologies that use, access, or depend on Plaintiffs' Platforms, including the WhatsApp Installation Server ("WIS"), to delete all data obtained or derived from Plaintiffs' Platforms, and to

disable customer access to any and all computer code or technologies that use, access, or depend on Plaintiffs' Platforms. Plaintiffs' proposed injunction also requires Defendants to affirm their compliance with the injunction. *See* Dkt. No. 558-3 at 3.

*Attorneys' Fees.* Because Plaintiffs prevailed on their claim against NSO under CDAFA, the Court may award Plaintiffs reasonable attorneys' fees. *See* Cal. Penal Code § 502(e)(2); *Swearingen v. HAAS Automation, Inc.*, 2010 WL 1495204, *2 (S.D. Cal. Apr. 14, 2010) (holding that CDAFA allows prevailing plaintiffs to recover attorneys' fees); *Meta Platforms, Inc. v. Soc. Data Trading Ltd.*, 2022 WL 18806267, at *5 (N.D. Cal. Nov. 15, 2022) (awarding attorneys' fees, including for work done before filing complaint), *report and recommendation adopted*, 2022 WL 18806265 (N.D. Cal. Dec. 8, 2022); *see also Ubisoft, Inc. v. Kruk*, 2021 WL 3472833, at *6 (C.D. Cal. July 9, 2021) (awarding attorneys' fees for work done to investigate and identify perpetrators).

Plaintiffs intend to make a motion for attorneys' fees after the conclusion of trial, consistent with the federal and local rules, which require motions for attorneys' fees to be served and filed within fourteen days of judgment. *See* Fed. R. Civ. P. 54(d)(2)(B); N.D. Cal. L.R. 54-5(a). Courts have consistently ruled that "[r]equests for attorneys' fees should typically be decided after all relevant motions in the case have been resolved so that the court knows who prevailed and may accurately determine the hours billed by the attorneys." *Taddeo v. Am. Invsco Corp.*, 2015 WL 1202660, at *1 (D. Nev. Mar. 17, 2015); *see also Lima v. Wachovia Mortg. Corp.*, 2010 WL 1223234, at *7 (N.D. Cal. Mar. 25, 2010); *Gemini Ins. Co. v. Kukui'ula Dev. Co. (Hawaii), LLC*, 2013 WL 1103338, at *1 (D. Haw. Feb. 28, 2013). Plaintiffs also intend to seek an award of pre- and post-judgment interest, and any further relief that the Court may deem proper and just.

## II.   Defendants' Position

The only issues properly presented to the jury are compensatory damages and punitive damages. (Plaintiffs previously—and incorrectly—contended that the jury could consider disgorgement, but Plaintiffs have now abandoned their disgorgement claim.) Plaintiffs' other requests (for an injunction, attorney fees, interest, costs) are properly addressed post-trial.

*Compensatory Damages.* Plaintiffs are not entitled to compensatory damages for their alleged remediation expenditures because Defendants did not cause those expenditures and because

the expenditures do not qualify as "loss" under the CFAA or CDAFA. *Van Buren v. United States*, 593 U.S. 374, 391-92 (2021) (emphasis added). Plaintiffs' calculation of compensatory damages is also improperly inflated because (1) in calculating the value of employees' time it improperly includes the value of stock options granted to employees several years prior to 2019; and (2) it includes the time of twelve employees[2] with whom Plaintiffs' Rule 30(b)(6) witness was completely unfamiliar, thus preventing Defendants from taking any discovery about their role in any "responding" to Pegasus. Defendants' arguments on these points are presented in their concurrently-filed trial brief.

**Punitive Damages**. Plaintiffs are not entitled to punitive damages. A CDAFA plaintiff may recover punitive damages only if it proves *both* that (1) the defendant's CDAFA violation was "willful" *and* (2) the defendant acted with "oppression, fraud, or malice." Cal. Penal Code § 502(e)(4); *see also* Cal. Civ. Code § 3294.

Plaintiffs' assertion that Penal Code § 502(e)(4) does not require a determination of willfulness as an element of punitive damages is perplexing. The statute unambiguously requires "a *willful violation* of the provisions of subdivision (c), where it is proved by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice." Cal. Penal Code § 502(e)(4) (emphasis added). Courts have interpreted that clear language as providing that a court may "award punitive or exemplary damages" under CDAFA only "[i]f the violation was *willful*, *and* it is proved by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice." *Local Ventures & Invs., LLC v. Open Found.*, 2019 WL 7877936, at *7 (N.D. Cal. May 13, 2019) (emphasis added); *see also Mintz v. Bartelstein*, 2012 WL 12865276, at *5 (C.D. Cal. Nov. 15, 2012) ("Section 502(e)(4) provides that punitive damages are available where a defendant commits a '*willful violation*' of the statute *and* 'has been guilty of oppression, fraud, or malice as defined in subdivision (c) of Section 3294 of the Civil Code.'" (emphasis added)); *Instant Infosystems, Inc. v. Open Text, Inc.*, 2021 WL 1540615, at *16 (Cal. Ct. App. 2021) (under CDAFA, jury was required to find defendant "*willfully* engaged in the offending conduct with malice, oppression, or fraud"

---

[2] Aby John, Andy Yang, Aravind Thangavel, Igor Milyakov, John Altenmueller, John Sheller, Ming Yang, Mingsong Bi, Nasrin Jaleel, Roger Shen, Saish Gersappa and Xi Deng.

(emphasis added)); *CCDB Partners v. DKS Sys., LLC*, 2019 WL 13218559, at *5 (D. Minn. Dec. 12, 2019) ("A court may award punitive damages [under CDAFA] if a party shows 'by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice' in a *willful violation* of subdivision (c)." (emphasis added, alterations omitted)); *Wyatt Tech. Corp. v. Smithson*, 2006 WL 5668246, at *11 (C.D. Cal. Aug. 14, 2006) ("Punitive damages are recoverable [under CDAFA] for willful violations."), *rev'd in part on other grounds*, 345 F. App'x 236 (9th Cir. 2009).

Plaintiffs cannot make these required showings with clear and convincing evidence, as Defendants explain in their concurrently filed trial brief. Plaintiffs also cannot recover punitive damages for conduct outside of California or for harm to third parties such as WhatsApp users. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-22 (2003); *Philip Morris USA v. Williams*, 549 U.S. 346, 353-54 (2007).

*Injunction*. Plaintiffs are not entitled to a permanent injunction for multiple reasons explained in Defendants' concurrently filed trial brief and forthcoming opposition to Plaintiffs' motion for a permanent injunction. To summarize, Plaintiffs cannot receive an injunction on their breach of contract claim as a matter of law. Cal. Civ. Proc. Code § 526(b)(5); Cal. Civ. Code § 3423(e). Plaintiffs cannot receive an injunction on their other claims because they cannot satisfy the requirements for a permanent injunction. *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013). And even if Plaintiffs could receive some injunction, the injunction they seek is grossly overbroad and would prohibit vast swaths of lawful conduct that are not and have never been at issue in this case.

## STATEMENT OF ALL RELEVANT UNDISPUTED FACTS TO WHICH THE PARTIES WILL STIPULATE FOR INCORPORATION INTO THE TRIAL RECORD WITHOUT THE NECESSITY OF SUPPORTING TESTIMONY OR EXHIBITS

1.  Plaintiff WhatsApp LLC is a Delaware corporation with its principal place of business in Menlo Park, California.

2.  Plaintiff Meta Platforms, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California.

3.  Facebook, Inc. acquired WhatsApp in 2014.

9

4. On October 28, 2021, Facebook, Inc. renamed itself as Meta Platforms, Inc.

5. Defendant NSO Group Technologies Limited was incorporated in Israel on January 25, 2010.

6. Defendant Q Cyber Technologies Limited was incorporated in Israel on December 2, 2013, under the name L.E.G.D. Company Ltd. On May 29, 2016, L.E.G.D. Company Ltd. changed its name to Q Cyber Technologies Limited.

7. Defendants develop and market a suite of technology products under the brand name "Pegasus."

8. A Pegasus system consists of both software and hardware.

9. The Pegasus "agent" is software that runs on a mobile phone or device ("target device") and is capable of collecting and extracting certain information from the target device.

10. The Pegasus "installation vectors" refers to software code that is used to install the Pegasus agent.

11. Defendants developed installation vectors that they referred to collectively as the "Hummingbird" vectors. These vectors were internally referenced as "Heaven" and "Eden."

### STATEMENT OF ALL RELEVANT DISPUTED FACTS WHICH REMAIN TO BE DECIDED

**I.    Plaintiffs' Position**

1. The amount of compensatory damages that Defendants owe Plaintiffs for Defendants' violation of the CFAA, CDAFA, and breach of the WhatsApp Terms of Service.

2. Whether Defendants acted with "oppression, fraud or malice" in violating the CDAFA.

3. If Defendants acted with "oppression, fraud or malice," the amount of punitive damages, if any, that Defendants owe Plaintiffs for Defendants' violation of the CDAFA.

**II.    Defendants' Position**

1. Whether Defendants' conduct caused Plaintiffs any actual damages.

2. The amount of compensatory damages, if any, that Defendants owe Plaintiffs for violation of the CFAA, CDAFA, and breach of the WhatsApp Terms of Service.

3.    Whether Defendants committed a "willful" violation of CDAFA or are guilty of "oppression, fraud or malice" with respect to a violation of CDAFA.

4.    If Defendants have been guilty of "oppression, fraud or malice," and committed a "willful" violation of CDAFA, the amount of punitive damages, if any, that Defendants should owe Plaintiffs.

5.    Such issues of fact as the Court may need to resolve in order to determine the appropriate scope of equitable relief, including at least[3] the following:

      a.    Whether, for each element of the injunction requested by Plaintiffs, that Plaintiffs will suffer irreparable harm without it

      b.    Whether, for each element of the injunction requested by Plaintiffs, the balance of hardships resulting from issuance or non-issuance of that injunction favors Plaintiffs or Defendants

      c.    Whether, for each element of the injunction requested by Plaintiffs, that injunction is in the public interest

      d.    Whether any injunctive relief should be ordered and, if so, its scope.

## STATEMENT OF STIPULATIONS REQUESTED OR PROPOSED

1.    Plaintiffs do not intend to seek reputational damages or other damages related to goodwill, public trust and good will, and the relationships and goodwill between Plaintiffs and their users and potential users.  Plaintiffs do not intend to make arguments about injury to Plaintiffs' reputation or goodwill in support of the injunctive relief that Plaintiffs' seek.

2.    The Parties are continuing to work together to reach agreement on additional stipulations regarding, among other things, the authenticity of documents, and the admissibility of documents prepared by the parties' experts.

---

[3] Plaintiffs seek an injunction "with respect to all of Plaintiffs' computer systems and platforms" . . . "include[ing] but are not limited to the WhatsApp, Facebook, Instagram, Messenger, Meta AI, Threads, and Meta Horizon platforms, as well as each of those platforms' related client applications." Only WhatsApp, as a "platform" or "related client application," has in any way been involved in this case.

## BRIEF STATEMENT OF DISPUTED POINTS OF
## LAW CONCERNING LIABILITY AND RELIEF

**I.    Plaintiffs' Position**

The Court's order on summary judgment has already decided the parties' disputed points of law concerning liability on the CFAA, CDAFA, and breach of contract claims.  *See* Dkt. No. 494. The remaining legal issues to be decided are:

1.    Whether Plaintiffs are entitled to a permanent injunction for Defendants' violations of the CFAA and CDAFA and breaches of the WhatsApp Terms of Service.

2.    Whether Plaintiffs are entitled to reasonable costs and attorneys' fees.

**II.    Defendants' Position**

Although Defendants respectfully disagree with the Court's summary judgment decision and believe it was erroneously decided, Defendants agree that this Court decided that Defendants are liable for violating the CFAA and CDAFA and for breaching WhatsApp's Terms of Service.  The remaining legal issues to be decided are: (1) whether Plaintiffs are entitled to compensatory damages and, if so, in what amount; (2) whether Plaintiffs are entitled to punitive damages and, if so, in what amount; (3) whether Plaintiffs are entitled to interest, costs, or attorney fees and, if so, in what amount; and (4) whether Plaintiffs are entitled to a permanent injunction and, if so, the scope of any injunction.

## STATEMENT RE ORDERING OF TRIAL AND OF WHETHER BIFURCATION OR A
## SEPARATE TRIAL OF SPECIFIC ISSUES IS FEASIBLE AND DESIRED

**I.    Plaintiffs' Position**

Given that all issues of liability have been decided, Plaintiffs do not believe that bifurcation of the jury trial is feasible or desirable.  Defendants have not met their burden of establishing that bifurcation would improve "convenience," "avoid prejudice," or "expedite and economize" the trial. *See* Fed. R. Civ. P. 42(b).  Instead, Defendants seek to create at least three separate trials where only one is required.  This is the antithesis of efficiency.

*First*, as set forth in greater detail in Plaintiffs' trial brief, Plaintiffs do not need to prove that Defendants' conduct caused Plaintiffs any actual damages because the existence of damages has

already been found by the Court.  The Court could not have reached the conclusion that Defendants violated the CFAA or breached their contract with Plaintiffs *unless* there were damages.  *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I);1030(g); *id.* § 1030(g); *see also* Dkt. No. 494 at 15 ("as to damages, defendants do not dispute that plaintiffs incurred costs investigating and remediating defendants' breaches, which are sufficient to establish the fourth and final element of a breach of contract claim"). On that basis alone, Plaintiffs are entitled at a minimum to nominal damages for Defendants' violation of the CFAA, CDAFA, and breach of the WhatsApp Terms of Service, and thus are also able to recover punitive damages.  Accordingly, in all events, the jury will be tasked with considering whether NSO's was "guilty of oppression, fraud, or malice," Cal. Penal Code § 502(e), and there is no need to defer consideration of that question, or punitive damages more broadly, until a subsequent phase of the trial.

*Second*, Defendants' proposal ignores the overlap between issues that Defendants propose be presented at different stages of the case.  "[W]hen there is overlap between issues, a court will typically not grant bifurcation." *Illumina, Inc. v. Natera, Inc.*, 2018 WL 3632142, at *2 (N.D. Cal. July 31, 2018); *see also Est. of Hill by & through Grube v. NaphCare, Inc.*, 2022 WL 2177679, at *3 (E.D. Wash. June 14, 2022) ("[G]iven the overlap of evidence discussed below, the Court believes bifurcation of the issues would instead thwart judicial economy in this case.").  For instance, Plaintiffs may show evidence that Defendants marketed and specifically licensed the ability to access WhatsApp with a zero-click installation vector—evidence that will likely overlap with the evidence of Defendants' profits earned from those versions of its Pegasus spyware.  It would be inefficient to divide the evidence across different phases, and confusing for the jury.

*Third*, Defendants' appeal to California law has no place here.  The Ninth Circuit has squarely held that California's rule on the bifurcation of cases involving punitive damages does not apply in federal court.  *Am. Computech, Inc. v. Nat'l Med. Care, Inc.*, 959 F.2d 239, at *8 (9th Cir. 1992); *see also Hamm v. Am. Home Prods. Corp.*, 888 F. Supp. 1037, 1038 (E.D. Cal. 1995) ("[T]here is ample precedent holding that bifurcation is a procedural issue for purposes of *Erie* analysis").  What's more, the policy concerns motivating bifurcation under California law do not apply here.  For instance, California courts have bifurcated consideration of punitive damages to avoid considerations

of defendants' financial condition infecting the jury's consideration of the defendants' *liability*.  *See Adams v. Murakami*, 54 Cal. 3d 105, 121 (1991) ("evidence of his financial condition could be introduced with the likely result that it would inflame the passion and prejudice of the jury to tip their judgment in favor of liability").  That consideration is moot here, given that liability has already been established.  In addition, the rule favoring bifurcation is "a codification of the presumption that evidence of a defendant's *wealth* can induce factfinders to abandon their objectivity and return a verdict based on passion and prejudice."  *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1241 (Cal. Ct. App. 1991) (emphasis added); *see also Torres v. Auto. Club of So. California*, 15 Cal. 4th 771, 778 (1997) ("Bifurcation minimizes potential prejudice by preventing jurors from learning of a defendant's 'deep pockets' before they determine these threshold issues."). In his deposition, Defendants' chief executive officer testified that previous equity awards had no value and that Defendants lacked the cash flow to service their debt.  There is thus no reason to schedule a separate phase of the damages-only trial to let Defendants advance these arguments.

     *Fourth*, Defendants' request for bifurcation would likely further delay the resolution of this case.  Plaintiffs filed their complaint on October 29, 2019, and have waited over five years to reach a jury trial.  "Granting bifurcation at this late date would require this court to calendar a second jury trial in what is already an impacted trial schedule—thus guaranteeing yet more delay."  *Lam Rsch. Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 867 (N.D. Cal. 2014).

     *Finally*, as set forth in Plaintiffs' motion for permanent injunction, Dkt. No. 557-3, and Plaintiffs' opposition to Defendants' administrative motion to postpone the hearing on Plaintiffs' motion, Dkt. No. 568-3, the Court can enter a permanent injunction *without* the need for any evidentiary hearing.  The facts underpinning Plaintiffs' motion for permanent injunction are not in dispute, and there is no genuine issue of material fact to be decided.  *See id*. at 1–4.

## II.    Defendants' Position

     "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b).  In the interests of convenience and judicial economy and to avoid unwarranted prejudice to Defendants, the issues to be tried in this case should be sequenced as follows:

*First*, a trial should proceed to address the issues of (i) whether Defendants' conduct caused Plaintiffs any actual damages (here, compensatory damages are the only actual damages claimed); (ii) the amount of any compensatory damages caused by Defendants that Plaintiffs may recover; and (iii) whether Defendants committed a willful violation of CDAFA and whether Defendants have been guilty of oppression, fraud, or malice.  During this phase of proceedings, no evidence concerning Defendants' revenues, profits, or financial condition should be offered or received.

*Second*, if the jury returns a verdict awarding Plaintiffs any compensatory damages *and* finding that Defendants committed a willful violation of CDAFA and whether Defendants have been guilty of oppression, fraud, or malice, a brief trial should immediately proceed before the same jury to determine whether any punitive damages should be awarded and, if so, in what amount.  Plaintiffs' suggestion that a second jury trial would need to be calendared is nonsense; the punitive damages phase would proceed immediately following the verdict, if the jury finds willfulness and malice, oppression or fraud.

The second phase of proceedings would address Defendants' revenues and profits earned in connection with licensing Pegasus, and Defendants' financial condition.  Plaintiffs assert that the evidence in this trial would overlap with the first, but their own description of the evidence proves that false.  The evidence in the first phase would be directed to compensatory damages and whether Defendants have been guilty of oppression, fraud, or malice.  The only evidence admitted in the second phase would be evidence of Defendants' profits earned from the versions of Pegasus at issue, and their financial condition, which are unrelated to the compensatory damages and willfulness, malice, oppression and fraud issues.

The evidence and attorney argument on punitive damages in the second trial will not take much (if any) additional time beyond that required for Plaintiff's proposal.  In contrast, it would be waste the jury's time to hear evidence and argument about the amount of punitive damages if the jury were to find either that Plaintiffs are not entitled to compensatory damages or that Defendants did not act willfully or have not been guilty of oppression, fraud, or malice.  Moreover, the financial issues relating to the calculation of punitive damages could possibly prejudice the jury.

Further, under Plaintiffs' proposal, Defendants would be required to produce confidential information about their current financial condition to their competitor before trial, even though that evidence will never be used unless the jury returns findings that would support punitive damages. Bifurcating the trial would mean that Defendants need not produce evidence of their current financial condition to their competitor until after the jury finds willfulness and malice, oppression, or fraud, which is proper for California claims such as the CDAFA claim that is the only claim under which punitive damages are available. *See Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1306 (2013) (holding defendant may produce current financial information "following the jury's finding regarding [defendant's] malice, oppression, or fraud").

*Third*, the jury should be dismissed and the remaining equitable issues should be tried to the Court, including (i) whether any injunctive relief is appropriate and, if so, the scope of such relief; and (ii) whether Plaintiffs are entitled to attorney fees and, if so, in what amount.

The sequencing proposed above will promote the efficient and economic conduct of proceedings and will maximize convenience to the Court, jury, and parties. As a matter of efficiency and convenience, the issue of whether, and in what amount, Plaintiffs have suffered any actual damages (here, compensatory damages are the only actual damages claimed) should be tried before issues relating to Plaintiffs' claim for punitive damages. It is well settled that "[a]n award of actual damages, even if nominal, is ***required*** to recover punitive damages." *Sole Energy Co. v. Petrominerals Corp*., 128 Cal. App. 4th 212, 238 (2005) (emphasis added) (affirming JNOV striking punitive damages award where plaintiffs failed to prove actual damages); *accord Jackson v. Johnson*, 5 Cal. App. 4th 1350, 1358 (1992); *Esparza v. Specht*, 55 Cal. App. 3d 1, 6 (1976). Thus, if Plaintiffs fail to prove that Defendants caused them to suffer actual damages, there will be no need for trial regarding punitive damages issues. In addition, Plaintiffs may not recover punitive damages under CDAFA unless they first prove willfulness and "by clear and convincing evidence" that Defendants have "been guilty of oppression, fraud, or malice." Cal. Penal Code § 502(c), (e)(4); Cal. Civ. Code § 3294(a). If Plaintiffs fail to do so, then there will be no need to burden the Court, jury, and parties with presentation of additional evidence concerning a punitive damages claim.

For these reasons, the most efficient, economic, and convenient course is for a trial on issues of causation, actual damages, and whether Defendants' conduct meets the standards for an award of punitive damages to proceed first, and for trial of additional issues relating to the punitive damages claims to follow, if necessary.[4]

The sequencing that Defendants propose is also necessary to avoid unfair prejudice to Defendants from presentation of evidence concerning Defendants' revenues, profits, and financial condition unless and until the jury first finds that all prerequisites to an award of punitive damages are satisfied. *See, e.g., Sturm v. Davlyn Inv., Inc.*, 2013 WL 8604661, at *6 (C.D. Cal. No. 6, 2013) ("Evidence of Defendants' financial condition is irrelevant to ***liability*** for punitive damages and would be unfairly prejudicial" if presented without a prior determination of such liability (emphasis added)); *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 13153235, at * (N.D. Cal. Nov. 30, 2011) (recognizing "risk of undue prejudice and confusion" from admission of evidence regarding defendant's financial condition and bifurcating trial to separate "issue of punitive damages from liability and compensatory damages"); *Williams*, 2003 WL 25781909, at *6 (granting motion to "bifurcate issues involving punitive damages" in "to avoid the potential for unfair prejudice").

Notably, the threat of unfair prejudice to a defendant from presentation of evidence concerning the defendant's profits and financial condition without a prior determination that the requirements for punitive damages have been shown prompted the California legislature to enact a law ***requiring*** that, upon application of any defendant, a "court ***shall*** . . . . preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict

---

[4] *See, e.g., Brighton Collectibles, Inc. v. Renaissance Grp. Int'l*, 2008 WL 5500659, at *6 (S.D. Cal. May 13, 2008) (granting motion to "bifurcate any financial information or finding of punitive damages until the jury makes the appropriate threshold determination for punitive damages" by returning "a verdict for Plaintiff awarding actual damages and finding that [defendant] is guilty of malice, oppression or fraud"); *Stringer v. City of Pablo*, 2009 WL 5215396, at *7 (N.D. Cal. Dec. 28, 2009) ("[S]tructuring the punitive damages phase of trial in this manner promotes judicial economy because until the jury determines that punitive damages should be awarded, evidence regarding Defendants' finances is unnecessary."); *see also Williams v. MacGillivray*, 2003 WL 25781909, at *6 (S.D. Cal. Aug. 25, 2003) (finding that bifurcating punitive damages issues would promote judicial economy); *EEOC v. The Copley Press, Inc.*, 2006 WL 5201348 at *3 (S.D. Cal. Oct. 12, 2006) (granting motion to bifurcate punitive damages issue); *Harper v. City of L.A.*, 2006 WL 5537591, at *1-2 (C.D. Cal. Jan. 9, 2006) (same).

17

for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294." Cal. Civ. Code § 3295(d) (emphasis added). Although Plaintiffs suggest that this rule is *limited* to when the defendant has "deep pockets," no authority creates any such limitation—Section 3295(d) is unambiguous and categorical.[5] Although this Court is not *bound* by Section 3295(d) and retains discretion concerning bifurcation under Rule 42(b), the concerns that prompted the California legislature to enact the ***mandatory*** evidentiary restrictions set for in Section 3295(d) support the conclusion that Defendants' proposed sequencing should be adopted in order to avoid undue prejudice to Defendants.

Finally, interests of judicial economy and convenience for the Court, jury, and parties, will be served if the Court separately addresses the equitable issues that it (rather than the jury) must decide. For the foregoing reasons, Defendants submit that the trial of issues remaining for decision in this case should be sequenced in the three phases outlined above.

## STATEMENT SUMMARIZING THE STATUS OF SETTLEMENT NEGOTIATIONS AND INDICATING WHETHER FURTHER NEGOTIATIONS ARE LIKELY TO BE PRODUCTIVE

Following Defendants' appeal of the Court's denial of their motion to dismiss, the parties attempted mediation via a telephone conference with Robert Kaiser, Circuit Mediator for the U.S. Court of Appeals for the Ninth Circuit, on August 19, 2020. At mediation, the Parties were unable to reach a settlement. Subsequently, the Parties unsuccessfully engaged in settlement discussions in

---

[5] *See also Torres v. Automobile Club of So. Cal.*, 15 Cal. 4th 771, 777–78 (1997) ("As an evidentiary restriction, section 3295(d) requires a court, upon application of any defendant, to bifurcate a trial so that the trier of fact is not presented with evidence of the defendant's wealth and profits until after the issues of liability, compensatory damages, and malice, oppression, or fraud have been resolved against the defendant."); *Coll. Hosp. Inc. v. Super. Ct.*, 8 Cal. 4th 704, 712 (1994) (noting Section 3295(d)'s purpose of minimizing unwarranted prejudice to defendants; *Adams v. Murakami*, 54 Cal. 3d 105, 121–22 (1991) (noting that any failure to follow the procedure required by Section 3295(d) presents a "serious risk of prejudice"); *Westrec Marina Mgmt., Inc. v. Jardine Ins. Brokers Orange Cty., Inc.*, 85 Cal. App. 4th 1042, 1049 (2000) ("Upon a defendant's motion, a trial *must* be bifurcated when a plaintiff seeks punitive damages." (emphasis added)); *City of El Monte v. Super. Ct.*, 29 Cal. App. 4th 272, 274–75 (1994) (Section 3295(d) "affects the order of proof at trial, precluding the admission of evidence of defendants' financial condition until after the jury has returned a verdict for plaintiffs awarding actual damages and found that one or more defendants were guilty of 'oppression, fraud or malice,' in accordance with Civil Code section 3294").

18

1   December 2020.   On January 22, 2024, the Parties held a further settlement conference with

2   Magistrate Judge Sallie Kim, but were unable to reach a settlement.  *See* Dkt. No. 452.

Dated:   March 13, 2025

DAVIS POLK & WARDWELL LLP

By:   */s/ Greg D. Andres*
        Greg D. Andres
        Antonio J. Perez-Marques
        Craig T. Cagney
        Gina Cora
        Luca Marzorati
         (admitted *pro hac vice*)
        DAVIS POLK & WARDWELL LLP
        450 Lexington Avenue
        New York, New York 10017
        Telephone: (212) 450-4000
        Facsimile: (212) 701-5800
        Email: greg.andres@davispolk.com
              antonio.perez@davispolk.com
              gina.cora@davispolk.com
              craig.cagney@davispolk.com
              luca.marzorati@davispolk.com

        Micah G. Block (SBN 270712)
        DAVIS POLK & WARDWELL LLP
        900 Middlefield Road, Suite 200
        Redwood City, California 94063
        Telephone: (650) 752-2000
        Facsimile:  (650) 752-2111
        Email:  micah.block@davispolk.com

        *Attorneys for Plaintiffs*
        *WhatsApp LLC and Meta Platforms, Inc.*

KING & SPALDING LLP

By:   */s/ Joseph N. Akrotirianakis*
        Joseph N. Akrotirianakis
        Aaron S. Craig
        KING & SPALDING LLP
        633 West Fifth Street, Suite 1600
        Los Angeles, CA 90071
        Telephone: (213) 443-4355
        Email: jakro@kslaw.com
              acraig@kslaw.com

        *Attorneys for Defendants NSO Group*
        *Technologies Limited and Q Cyber*
        *Technologies Limited*

**FILER'S ATTESTATION**

Pursuant to Civil L. R. 5-1(i)(3), regarding signatures, Greg D. Andres hereby attests that concurrence in the filing of the document has been obtained from all of the signatories above.

Dated:    March 13, 2025                              /s/ Greg D. Andres

Greg D. Andres