1  Greg D. Andres
Antonio J. Perez-Marques
2  Gina Cora
Craig T. Cagney
3  Luca Marzorati
   (admitted *pro hac vice*)
4  DAVIS POLK & WARDWELL LLP
5  450 Lexington Avenue
New York, New York 10017
6  Telephone: (212) 450-4000
Facsimile: (212) 701-5800
7  Email:   greg.andres@davispolk.com
            antonio.perez@davispolk.com
8            gina.cora@davispolk.com
            craig.cagney@davispolk.com
9            luca.marzorati@davispolk.com
10
11  Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
12  900 Middlefield Road, Suite 200
Redwood City, California 94063
13  Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
14  Email:   micah.block@davispolk.com
15
*Attorneys for Plaintiffs*
16  *WhatsApp LLC and Meta Platforms, Inc.*

17                    UNITED STATES DISTRICT COURT

18              FOR THE NORTHERN DISTRICT OF CALIFORNIA

19                          OAKLAND DIVISION

20

| | |
|---|---|
| 21  WHATSAPP LLC and | ) Case No. 4:19-cv-07123-PJH |
|     META PLATFORMS, INC., | ) |
| 22  | ) **PLAINTIFFS' TRIAL BRIEF** |
|                    Plaintiffs, | ) |
| 23  | ) Pretrial Conference Date: April 10, 2025 |
|     | ) Time:   2:00 p.m. |
| 24        v. | ) Ctrm:  3 |
|     | ) Judge:  Hon. Phyllis J. Hamilton |
| 25  NSO GROUP TECHNOLOGIES LIMITED | ) Trial Date: April 28, 2025 |
|     and Q CYBER TECHNOLOGIES LIMITED, | ) |
| 26  | ) |
|                    Defendants. | ) |
| 27  | ) |
| 28  | ) |

1

**TABLE OF CONTENTS**

2

_____

3                                                                                                                              PAGE

4    I.      INTRODUCTION ........................................................................................................1

5    II.     FACTS .......................................................................................................................2

6    III.    THE COURT'S GRANT OF PARTIAL SUMMARY JUDGMENT TO PLAINTIFFS .......3

7    IV.     ISSUES REMAINING TO BE TRIED ....................................................................5

8            A.      Plaintiffs Are Entitled to Recover Compensatory Damages........................................5

9            B.      Plaintiffs Are Entitled to Punitive Damages ...............................................................10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' TRIAL BRIEF- CASE NO. 4:19-CV-07123-PJH

1

**TABLE OF AUTHORITIES**

2

3

PAGE(S)

4

CASES

5

*Allen v. Gardner*,
    272 P.2d 99 (Cal. Dist. Ct. App. 1954) ........................................................................... 8

6

*In re Angelia P.*,
    623 P.2d 198 (Cal. 1981) ............................................................................................... 11

7

8

*Apple Inc. v. NSO Grp. Techs. Ltd.*,
    2024 WL 251448 (N.D. Cal. Jan. 23, 2024) .................................................................. 7

9

*Brandon & Tibbs v. George Kevorkian Acct. Corp.*,
    277 Cal. Rptr. 40 (Ct. App. 1990) ................................................................................. 8

10

11

*Clougher v. Home Depot, U.S.A, Inc.*,
    696 F. Supp. 2d 285 (E.D.N.Y. 2010) ........................................................................... 9

12

*Copart, Inc. v. Sparta Consulting, Inc.*,
    277 F. Supp. 3d 1127 (E.D. Cal. 2017) ................................................................. 6, 8, 9

13

14

*Craigslist, Inc. v. Mesiab*,
    2010 WL 5300883 (N.D. Cal. Nov. 15, 2010), *report and recommendation adopted*,
    2010 WL 5300881 (N.D. Cal. Dec. 20, 2010) .............................................................. 11

15

16

*Facebook, Inc. v. Holper*,
    2022 WL 17167958 (N.D. Cal. Sept. 27, 2022), *report and recommendation adopted as
    modified*, 2022 WL 17169836 (N.D. Cal. Nov. 22, 2022) ............................................ 6

17

18

*Facebook, Inc. v. Power Ventures, Inc.*,
    252 F. Supp. 3d 765 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) .................... 6, 9

19

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ....................................................................................... 6

20

21

*GHK Assocs. v. Mayer Grp., Inc.*,
    274 Cal. Rptr. 168 (Ct. App. 1990) ............................................................................... 8

22

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021) ........................................................................................ 11

23

24

*Johnson v. Ford Motor Co.*,
    113 P.3d 82 (Cal. 2005)................................................................................................. 11

25

26

*Lima v. Wachovia Mortg. Corp.*,
    2010 WL 1223234 (N.D. Cal. Mar. 25, 2010) ............................................................... 2

27

28

*Meta Platforms, Inc. v. Arowokoko*,
    2023 WL 3035454 (N.D. Cal. Feb. 24, 2024) ................................................................................ 8

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022).......................................................................................... 6

*Mintz v. Bartelstein*,
    2012 WL 12865276 (C.D. Cal. Nov. 15, 2012) ............................................................................ 10

*Oracle USA, Inc. v. Rimini St., Inc.*,
    191 F. Supp. 3d 1134 (D. Nev. 2016)............................................................................................. 7

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007).......................................................................................................................... 11

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    214 F. Supp. 3d 808 (N.D. Cal. 2016), *aff'd*, 890 F.3d 828 (9th Cir. 2018) ................................ 8

*Ryanair DAC v. Booking Holdings, Inc.*,
    2024 WL 3732498 (D. Del. June 17, 2024) ................................................................................ 6, 7

*Samson v. Wells Fargo Bank, N.A.*,
    2021 WL 958572 (C.D. Cal. Feb. 1, 2021) .................................................................................. 11

*Schachter v. Citigroup, Inc.*,
    218 P.3d 262 (Cal. 2009) ................................................................................................................. 9

*SuccessFactors, Inc. v. Softscape, Inc.*,
    544 F. Supp. 2d 975 (N.D. Cal. 2008) ........................................................................................... 7

*Sylabs, Inc. v. Rose*,
    2024 WL 4312719 (N.D. Cal. Sept. 26, 2024) .............................................................................. 6

*Taddeo v. Am. Invsco Corp.*,
    2015 WL 1202660 (D. Nev. Mar. 17, 2015) ................................................................................... 2

*Talkdesk, Inc. v. Pham*,
    2024 WL 4866690 (C.D. Cal. Aug. 9, 2024) ................................................................................. 2

*Tyan, Inc. v. Garcia*,
    2017 WL 1658811 (C.D. Cal. May 2, 2017) ............................................................................... 8, 9

*United States v. Velasquez-Reyes*,
    427 F. 3d 1227 (9th Cir. 2005) ...................................................................................................... 10

*Van Buren v. United States*,
    593 U.S. 374 (2021) ......................................................................................................................... 6

*WalkMe Ltd. v. Whatfix, Inc.*,
    2024 WL 3364019 (N.D. Cal. July 9, 2024) .................................................................................. 6

*Woods v. Vector Mktg. Corp.*,
    2015 WL 2453202 (N.D. Cal. May 22, 2015)............................................................................... 10

STATUTES & RULES

18 U.S.C. § 1030 ................................................................................................................ *passim*

Cal. Civ. Code § 3300 ................................................................................................................. 8

Cal. Penal Code § 502(c) .......................................................................................................... 10

Cal. Penal Code § 502 ..................................................................................................... *passim*

Cal. Penal Code § 3294(c) ........................................................................................................ 10

PLAINTIFFS' TRIAL BRIEF - CASE NO. 4:19-CV-07123-PJH

## I.     INTRODUCTION

Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. ("NSO") developed, marketed, licensed, and used spyware called Pegasus, which used a manipulated version of the WhatsApp application to access and to send malicious code through WhatsApp's servers, all for the purpose of surveilling WhatsApp users.  This Court has already ruled that NSO's conduct violated the Computer Fraud and Abuse Act ("CFAA"), the California Comprehensive Data Access and Fraud Act ("CDAFA"), and the WhatsApp Terms of Service.  Dkt. No. 494 at 12–16.  The sole issue for the forthcoming jury trial is the amount of damages owed by NSO to Plaintiffs WhatsApp LLC and Meta Platforms, Inc. ("Plaintiffs") as a result of these violations.  Plaintiffs are entitled to compensatory and punitive damages.

**Compensatory damages.**  Plaintiffs are entitled to recoup, as compensatory damages, the costs they incurred in investigating NSO's attacks and restoring Plaintiffs' servers and applications to their pre-attack state.  All three claims on which NSO has been found liable authorize Plaintiffs to recover compensatory damages consisting of the costs of their response, and subsections of the CFAA and the CDAFA specifically authorize the recovery of such costs.  The evidence shows that NSO's attacks required Plaintiffs to conduct a comprehensive technical investigation, with engineers working around the clock to determine the root cause of the malicious activity and how to stop it.  Within two weeks of discovering the attacks, Plaintiffs had attributed the attacks to NSO and published updated versions of the WhatsApp application to close the vulnerability that NSO exploited, and later notified the WhatsApp users that NSO targeted.  At trial, the jury will hear testimony from Dana Trexler, a Certified Public Accountant and Plaintiffs' damages expert.  Ms. Trexler investigated the costs associated with Plaintiffs' response to NSO's attacks, including by speaking with the central individuals involved in Plaintiffs' response.  Based on this investigation, Ms. Trexler conservatively estimates that Plaintiffs paid 22 employees a total of $444,719 to respond to NSO's attacks.  NSO should reimburse Plaintiffs for these response costs.

**Punitive damages.**  Plaintiffs are entitled to punitive damages for NSO's violation of the CDAFA.  Cal. Penal Code § 502(e)(4).  In finding NSO liable, the Court determined that NSO acted with fraudulent intent when it redesigned Pegasus to evade detection after Plaintiffs first fixed the

1   security breach—and after Plaintiffs filed this lawsuit.  *See* Dkt. No. 494 at 12.  At trial, Plaintiffs

2   will prove that NSO is "guilty of oppression, fraud, or malice," which allows the jury to award puni-

3   tive damages.  Plaintiffs will ask the jury to impose punitive damages sufficient to deter NSO from

4   conducting similar acts in the future.[1]

5   **II.     FACTS**

6       It is undisputed that NSO developed, marketed, licensed, and used spyware technology called

7   Pegasus.  Pegasus was the main spyware product in NSO's full-service spyware operation that in-

8   cluded creating WhatsApp user accounts for its customers, anonymously leasing the servers used to

9   install Pegasus on target devices and to deliver the stolen data to customers, and researching and

10  developing methods to circumvent security updates by WhatsApp, among others.  NSO customers

11  only needed to enter a target device phone number and NSO took care of the rest.  Once installed,

12  Pegasus provided virtually unlimited access to the target's mobile device.  NSO designed Pegasus to

13  secretly collect the target's location, communications, and contacts—and it had the ability to activate

14  the target device's camera and microphone—all without the target ever becoming aware.

15      Prior to April 2018, NSO researched, developed, and tested technically complex methods

16  used to install Pegasus on a target device (the "Malware Vectors").  NSO referred to its most com-

17  petitively valuable Malware Vectors as "zero-click" vectors because NSO used those vectors to in-

18  stall Pegasus on a target's mobile device without the need for the target to take any action, such as

19  clicking on a URL link or opening a message.  From 2018 until at least 2020, NSO used zero-click

20  Malware Vectors that exploited WhatsApp as the method to install Pegasus on a target device, in-

21  cluding on behalf of its customers.  In order to develop these zero-click Malware Vectors, NSO un-

22  lawfully created its own version of the official WhatsApp client (which NSO called the "WhatsApp

23  Installation Server" or "WIS") and sent malware through WhatsApp's servers to WhatsApp users'

24  _____

25  [1] The CDAFA also allows Plaintiffs to recover their attorneys' fees.  Cal. Penal Code § 502(e)(2).
    Plaintiffs request the opportunity to move for attorneys' fees after the conclusion of the trial.  *See*
26  *Taddeo v. Am. Invsco Corp.*, 2015 WL 1202660, at *1 (D. Nev. Mar. 17, 2015) ("Requests for attor-
    neys' fees should typically be decided after all relevant motions in the case have been resolved so
27  that the court knows who prevailed and may accurately determine the hours billed by the attorneys.");
    *see also Lima v. Wachovia Mortg. Corp.*, 2010 WL 1223234, at *7 (N.D. Cal. Mar. 25, 2010).
28

PLAINTIFFS' TRIAL BRIEF - CASE NO. 4:19-CV-07123-PJH

1    devices, eventually triggering the devices to install Pegasus and giving NSO and its customers full

2    access to those devices.  NSO would frequently update these Malware Vectors in response to

3    WhatsApp's own security updates, building technical workarounds so that it could continue to exploit

4    WhatsApp's infrastructure.  Indeed, in September 2018 and again in December 2018, Plaintiffs made

5    security updates to WhatsApp's servers that prevented NSO's access to WhatsApp servers and target

6    devices, and which then temporarily disabled NSO's Malware Vector.  However, by February 2019,

7    NSO further updated its spyware to circumvent those security updates.

8        In early May 2019, WhatsApp discovered NSO's unauthorized activity on its servers.

9    WhatsApp then attributed that activity to NSO, issued a technical update stopping NSO's attacks,

10    and notified impacted users.  It is undisputed that NSO had been using WhatsApp as an installation

11    vector for Pegasus at least a year before being caught and had modified its Malware Vectors on

12    multiple occasions.  Even after WhatsApp detected and blocked the exploit in May 2019, NSO de-

13    veloped yet another Malware Vector that also used WhatsApp servers to install Pegasus.  Discovery

14    has revealed that NSO kept using WhatsApp as an installation vector even after Plaintiffs filed this

15    litigation.

16    **III.    THE COURT'S GRANT OF PARTIAL SUMMARY JUDGMENT TO PLAINTIFFS**

17        Plaintiffs moved for partial summary judgment on September 27, 2024, *see* Dkt. No. 399-2,

18    and moved for sanctions on October 2, 2024, *see* Dkt. No. 405-2.  On December 20, 2024, the Court

19    granted Plaintiffs' motion for partial summary judgment and granted in part Plaintiffs' motion for

20    sanctions.  *See* Dkt. No. 494 at 16.[2]  In its December 20, 2024 order, the Court recognized that the

21    factual record showed that NSO's "relevant software products, collectively referred to as 'Pegasus,'

22    allow defendants' clients to use a modified version of the Whatsapp application – referred to as the

23    'Whatsapp Installation Server,' or 'WIS.'"  *Id*. at 2.  The Court further explained that "[t]he WIS,

24    among other things, allows defendants' clients to send 'cipher' files with 'installation vectors' that

25    ultimately allow the clients to surveil target users."  *Id*.

26

27    _____

28    [2] The Court denied NSO's motion for summary judgment.  *Id*.

PLAINTIFFS' TRIAL BRIEF - CASE NO. 4:19-CV-07123-PJH

1    After reviewing the undisputed factual record, the Court found NSO violated two CFAA pro-

2   visions: (i) Section 1030(a)(2), which prohibits "intentionally access[ing] a computer without author-

3   ization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected

4   computer," 18 U.S.C. § 1030(a)(2)(C), and (ii) Section 1030(a)(4), which prohibits "knowingly and

5   with intent to defraud, access[ing] a protected computer without authorization or exceed[ing] author-

6   ized access" and thereby furthering "the intended fraud and obtain[ing] anything of value." 18 U.S.C.

7   § 1030(a)(4). Specifically, the Court found that NSO exceeded its authorized access by utilizing the

8   WIS, which "sent messages through WhatsApp servers that caused Pegasus to be installed on target

9   users' devices." Dkt. No. 494 at 12. The WIS was able to "obtain information directly from the

10  target users' devices," and "also obtain[ed] information about the target users' device[s] via the

11  Whatsapp servers." *Id*.; *see also id*. at 12–13 ("[T]he WIS was then able to obtain protected infor-

12  mation by having it sent from the target users, through the What[s]app servers, and back to the

13  WIS."). The Court further found that this information was valuable because of "defendants' clients'

14  willingness to pay for Pegasus," and that NSO possessed the requisite intent because it "redesigned

15  Pegasus to evade detection after plaintiffs first fixed the security breach." *Id.* at 12. The Court

16  rejected NSO's arguments that it was not liable because (according to NSO) its customers operated

17  Pegasus, and the Court explained that Section 1030(b) of the CFAA assigns liability to co-conspira-

18  tors. *Id.* at 13.

19   The Court next held that NSO was liable for violating the CDAFA. As the Court acknowl-

20  edged, "[t]he CDAFA is the [California] state-law equivalent of the CFAA, with the additional re-

21  quirement that a computer be unlawfully accessed in California." *Id*. at 13. According to the Court,

22  "plaintiffs' evidence regarding California relay servers is sufficient, even without more," to establish

23  that NSO unlawfully accessed a California-based server. *Id*. The Court then held that NSO violated

24  the CDAFA "for the same reasons as the CFAA claim." *Id*.

25   Finally, the Court held that NSO was liable for breach of contract for violating the WhatsApp

26  Terms of Service. *Id*. at 13–14. First, NSO could not reasonably dispute "that agreeing to the terms

27  of service was necessary to create a WhatsApp account and to use WhatsApp." *Id*. at 14. Second,

28  NSO failed to dispute that Plaintiffs had performed their obligations under the Terms. *Id*. Third,

1   NSO could not dispute that it breached the Terms by "'reverse engineering' or 'decompiling'

2   Whatsapp products," "sending 'harmful code' through Whatsapp," "collecting user information,"

3   "accessing or attempting to access Whatsapp without authorization," and "using Whatsapp for illegal

4   purposes." *Id*. at 13. Fourth, NSO could not dispute that Plaintiffs incurred costs investigating and

5   remediating NSO's exploit. *Id*. at 14–15. With all the elements established, the Court concluded

6   that Plaintiffs were entitled to summary judgment on Plaintiffs' claim for breach of contract. *Id*. at

7   15.

8           In holding that NSO was liable for breach of contract and for violating the CFAA, the Court

9   already determined NSO's conduct caused Plaintiffs a baseline level of damages. *See* 18 U.S.C.

10  § 1030(a)(4) (requiring loss of at least $5,000 to establish liability under Section 1030(a)(4) of the

11  CFAA); *id*. § 1030(c)(4)(A)(i)(I), (g) (civil CFAA actions like Plaintiffs' require loss "aggregating

12  at least $5,000 in value"); Dkt. No. 494 at 15 (holding that Plaintiffs' "costs investigating and reme-

13  diating defendants' breaches . . . are sufficient to establish the fourth and final element of a breach of

14  contract claim").

15          These facts are undisputed, and the jury should be instructed as to the facts underpinning

16  NSO's liability.

17  **IV.    ISSUES REMAINING TO BE TRIED**

18          As an initial matter, the Court should instruct the jury on the undisputed facts, including that

19  NSO has already been found liable for breach of contract and violation of the CFAA and the CDAFA,

20  the elements of the causes of action on which NSO has been found liable, and that all that remains

21  for the jury is the question of damages. At trial, Plaintiffs will prove the amount of compensatory

22  and punitive damages to which they are entitled.

23          **A.    Plaintiffs Are Entitled to Recover Compensatory Damages**

24          NSO's liability on Plaintiffs' CFAA and CDAFA claims allows Plaintiffs to recoup the costs

25  spent paying Plaintiffs' employees to respond to NSO's attacks. The Court has already determined

26  that Plaintiffs can recover at least these costs for NSO's breaches of the WhatsApp Terms of Service.

27  *See* Dkt. No. 494 at 15.

28

1      **CFAA.**  The CFAA allows a plaintiff "who suffers damage or loss . . . to obtain compensatory

2      damages."  18 U.S.C. § 1030(g).  The CFAA defines "damage" as "any impairment to the integrity

3      or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  The CFAA

4      defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense,

5      conducting a damage assessment, and restoring the data, program, system, or information to its con-

6      dition prior to the offense, and any revenue lost, cost incurred, or other consequential damages in-

7      curred because of interruption of service."  *Id*. § 1030(e)(11).  These definitions "specify what a

8      plaintiff in a civil suit can recover."  *Van Buren v. United States*, 593 U.S. 374, 391 (2021).  "Loss"

9      under the CFAA does not require damage or "impairment of the protected computer or loss of data."

10     *Ryanair DAC v. Booking Holdings Inc.*, 2024 WL 3732498, at *13 (D. Del. June 17, 2024); *Sylabs,*

11     *Inc. v. Rose*, 2024 WL 4312719, at *3 (N.D. Cal. Sept. 26, 2024).  Plaintiffs can recover these inves-

12     tigative costs as "loss" under the CFAA.  *See Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp.

13     3d 1218, 1265 (N.D. Cal. 2022) ("There is no indication that the *Van Buren* Court would place in-

14     vestigative costs as falling outside the scope of 'the cost of responding to an offense' that the statute

15     specifically incorporates.").[3]

16     Money spent "analyzing, investigating, and responding" to a computer attack falls within the

17     CFAA's definition of "loss."  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir.

18     2016); *see also, e.g.*, *Facebook, Inc. v. Holper*, 2022 WL 17167958, at *8 (N.D. Cal. Sept. 27, 2022)

19     (including "cost of [plaintiff's] efforts to investigate and stop [defendant's] conduct"), *report and*

20     *recommendation adopted as modified*, 2022 WL 17169836 (N.D. Cal. Nov. 22, 2022); *WalkMe Ltd.*

21     *v. Whatfix, Inc.*, 2024 WL 3364019, at *7 (N.D. Cal. July 9, 2024) (including "time to investigate

22     and document subsequent intrusions," suspend an account, and send a cease-and-desist letter); *Co-*

23     *part, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1162 (E.D. Cal. 2017) (including

24

---

25     [3] In finding NSO liable for violating the CFAA, the Court necessarily concluded that NSO caused

26     Plaintiffs "damage or loss."  This is a prerequisite for bringing a civil action under the CFAA.  18
       U.S.C. § 1030(g); *id*. § 1030(a)(4).  More specifically, a civil action like the one that Plaintiffs brought

27     requires a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in
       value."  18 U.S.C. § 1030(c)(4)(A)(i)(I).  NSO's liability on Plaintiffs' CFAA claims thus establishes

28     this minimum amount of loss.

PLAINTIFFS' TRIAL BRIEF - CASE NO. 4:19-CV-07123-PJH

"expended resources investigating defendants' unauthorized access to its computer systems"). Because these costs constitute "loss," Plaintiffs can recover them as "compensatory damages" under the CFAA. *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 780 (N.D. Cal. 2017) (ordering defendant to pay plaintiff for costs "analyzing, investigating, and responding" to defendant's actions), *aff'd*, 749 F. App'x 557 (9th Cir. 2019). Plaintiffs can also recover damages for costs incurred even after the unlawful activity stops. *See id.* at 777.

The CFAA also authorizes Plaintiffs to recover money spent "discovering the identity of the offender or the method by which the offender accessed the protected information." *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008); *see also Ryanair DAC*, 2024 WL 3732498, at *14 (allowing recovery for time spent "identifying the perpetrator or the method by which the offender accessed the protected information" and "the cost of resecuring [a plaintiff's] systems."). Investigation and identification costs are particularly reasonable "where the offender has actually accessed protected information, [because] discovering who has that information and what information he or she has is essential to remedying the harm." *SuccessFactors,* 544 F. Supp. 2d at 981. The CFAA also allows for recovery of the costs associated with contacting affected users. *See Apple Inc. v. NSO Grp. Techs. Ltd.*, 2024 WL 251448, at *4 (N.D. Cal. Jan. 23, 2024).

Apple's recent litigation against NSO illustrates the scope of Plaintiffs' potential recovery under the CFAA. There, the court specifically found that the plaintiff's costs of "devot[ing] personnel, resources, and time to identifying and investigating [NSO's] attacks and exploits, developing and deploying security patches and software upgrades; communicating with . . . personnel and users regarding such attacks, exploits, patches, and upgrades, increasing security measures to detect and prevent future attacks; and assessing and responding to legal exposure" all fell "precisely" within the CFAA's definition of "loss." *Id*. Plaintiffs can recover for these same activities in this case.[4]

**CDAFA.** The CDAFA provides that a plaintiff "who suffers damage or loss" may bring a claim for "compensatory damages." Cal. Penal Code § 502(e)(1). Under the CDAFA,

---

[4] Apple voluntarily dismissed its case after NSO's motion to dismiss was denied. *See* Order re Voluntarily Dismissal and Sealing, *Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-cv-09078-JD (N.D. Cal. Nov. 12, 2024), Dkt. No. 103.

1    "compensatory damages" include "any expenditure reasonably and necessarily incurred by the owner

2    or lessee to verify that a computer system, computer network, computer program, or data was or was

3    not altered, damaged, or deleted by the access." *Id.*; *see Oracle USA, Inc. v. Rimini St., Inc.*, 191 F.

4    Supp. 3d 1134, 1146 (D. Nev. 2016) ("[T]he CDAFA allows for the recovery of all compensatory

5    damages, including economic damages.").

6         Available damages under the CDAFA closely track what can be recovered under the CFAA.

7    *See, e.g.*, *Tyan, Inc. v. Garcia*, 2017 WL 1658811, at *16 (C.D. Cal. May 2, 2017) (awarding same

8    damages for CFAA and CDAFA). Courts have ruled that the CDAFA, like the CFAA, allows the

9    jury to award the costs of technological recovery and repair. *Id.* And like the CFAA, "[i]nvestigation

10   expenses are recoverable" under the CDAFA. *Copart,* 277 F. Supp. at 1162. Thus, Plaintiffs can

11   recover all the labor costs they seek under the CDAFA as well.

12        **Breach of contract.** This Court has recognized that Plaintiffs can recover response cost

13   damages for NSO's breach of contract. *See* Dkt. No. 494 at 15 (ruling that "plaintiffs incurred costs

14   investigating and remediating defendants' breaches, which are sufficient to establish" damages under

15   breach of contract). Under California law, the general rule is that "the party injured by a breach

16   should receive nearly as possible the equivalent of the benefits of performance. The aim is to put the

17   injured party in as good a position as he would have been had performance been rendered as prom-

18   ised." *Brandon & Tibbs v. George Kevorkian Acct. Corp.*, 277 Cal. Rptr. 40, 47 (Ct. App. 1990);

19   *see* Cal. Civ. Code § 3300. Under similar facts, a court in this District held that allegations of "sig-

20   nificant time and expense spent investigating and taking enforcement actions against Defendants"

21   for their violation of the plaintiff's terms of service were "foreseeable consequential damages [that]

22   are cognizable under a breach of contract theory." *Meta Platforms, Inc. v. Arowokoko*, 2023 WL

23   3035454, at *8 (N.D. Cal. Feb. 24, 2024); *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for*

24   *Med. Progress*, 214 F. Supp. 3d 808, 831 (N.D. Cal. 2016) (ruling that expenditures of "additional

25   extensive resources on security and IT services" were foreseeable under contract provision requiring

26   defendant to follow the law).

27        When assessing the amount of damages for breach of contract, California law "requires only

28   that some reasonable basis of computation of damages be used, and the damages may be computed

even if the result reached is an approximation." *GHK Assocs. v. Mayer Grp., Inc.*, 274 Cal. Rptr. 168, 179–80 (1990) (citing *Allen v. Gardner*, 272 P.2d 99, 102 (Cal. Dist. Ct. App. 1954) ("[J]ustice and public polic[y] require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." (citation omitted))).

\*        \*        \*

At trial, Plaintiffs will prove by a preponderance of the evidence that they are entitled to $444,719 in response costs. Plaintiffs' damages expert, Ms. Trexler, will testify that she performed her response cost calculations by analyzing the hours worked by employees in responding to NSO's attacks as well as the employees' rates of compensation. Her analysis of the hours that Plaintiffs' employees spent responding to NSO's attacks is the exact method used by plaintiffs in *Power Ventures*, where the court relied on an expert report estimating the labor cost of plaintiffs' response. 252 F. Supp. 3d at 780; *see also Copart*, 277 F. Supp. 3d at 1162 (awarding CFAA and CDAFA investigation expenses based on hours worked); *Tyan*, 2017 WL 1658811, at \*16 (awarding damages on CFAA and CDAFA claims based on, among other things, "increased payroll costs for recovery"). In analyzing the hours spent by Plaintiffs' employees in responding to NSO's attacks, Ms. Trexler properly considered estimates gathered through interviews with Plaintiffs' employees. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed").

As for employees' rates of compensation, Ms. Trexler's analysis appropriately considers all forms of compensation, including base wages, bonuses, and other compensation such as restricted-stock-unit ("RSU") awards—which together represent the full cost of employment to Plaintiffs for the relevant period. *See Talkdesk, Inc. v. Pham*, 2024 WL 4866690, at \*10 (C.D. Cal. Aug. 9, 2024) (agreeing that an appropriate remedy in a labor dispute could include "restoring stock" that was granted to an employee as part of their compensation); *Clougher v. Home Depot, U.S.A, Inc.*, 696 F. Supp. 2d 285, 293 (E.D.N.Y. 2010) (including stock options in plaintiff's compensation calculation); *Schachter v. Citigroup, Inc.*, 218 P.3d 262, 268 (Cal. 2009) (defining "wages" as including "contingent future rights of full ownership in . . . restricted stock").

9

1

### B.      Plaintiffs Are Entitled to Punitive Damages

2

The CDAFA allows Plaintiffs to recover punitive damages when a "defendant has been guilty

3
of oppression, fraud, or malice."  Cal. Penal Code § 502(e)(4).[5]  Fraud is "an intentional misrepre-

4
sentation, deceit, or concealment of a material fact known to the defendant with the intention on the

5
part of the defendant of thereby depriving a person of property or legal rights or otherwise causing

6
injury."  *Id.* § 3294(c)(3).  Oppression is "despicable conduct that subjects a person to cruel and

7
unjust hardship in conscious disregard of that person's rights."  *Id.* § 3294(c)(2).  Malice is "conduct

8
which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is

9
carried on by the defendant with a willful and conscious disregard of the rights or safety of others."

10
*Id.* § 3294(c)(1).

11
A plaintiff must establish oppression, fraud, or malice by clear and convincing evidence.  Cal.

12
Civil Code § 3294(a).  "[C]lear and convincing evidence demands a degree of certainty greater than

13

14
[5] NSO has asserted, mistakenly, that Cal. Penal Code § 502(e)(4) imposes a separate requirement that
15
Plaintiffs prove that NSO's conduct was "willful."  It does not.  Section 502(e)(4) provides that: "In
any action brought pursuant to this subdivision for a willful violation of the provisions of subdivision
16
(c), *where it is proved by clear and convincing evidence that a defendant has been guilty of oppres-*
*sion, fraud, or malice* as defined in subdivision (c) of Section 3294 of the Civil Code, the court may
17
additionally award punitive or exemplary damages.  Cal. Penal Code § 502(e)(4) (emphasis added).
18
The word "willful" is not part of the clause describing what must be "proved" against a defendant
for punitive damages to be awarded.  That clause requires proof of "oppression, fraud, or malice."
19
Indeed, in a case from which NSO selectively quotes in its portion of the Joint Pretrial Statement—
*Mintz v. Bartelstein*—the court recognizes that what distinguishes an ordinary violation of the
20
CDAFA from one that warrants punitive damages is the "showing of malice, oppression, or fraud,"
21
without mention of willfulness.  2012 WL 12865276, at *5 (C.D. Cal. Nov. 15, 2012).  The omission
of willfulness from the recitation of what a plaintiff must prove to obtain punitive damages accords
22
with the provision read as a whole.  Each provision of Section 502(c) of the CDAFA requires conduct
done "knowingly" to establish liability, Cal. Penal Code § 502(c), and the Ninth Circuit, among other
23
courts, has acknowledged that knowing conduct constitutes willfulness.  *See, e.g.*, *United States v.*
*Velasquez-Reyes*, 427 F.3d 1227, 1230 (9th Cir. 2005) ("[T]he common law definition of 'willful'
24
encompasses 'knowing.'"); *Woods v. Vector Mktg. Corp.*, 2015 WL 2453202, at *4 (N.D. Cal. May
25
22, 2015) ("California courts have defined willful as intentional.").  It follows—as *Mintz* stated and
the statute expressly provides—that all that distinguishes a case warranting punitive damages, and
26
all that must be proven to obtain them once liability has been established, is oppression, fraud, or
malice.  2012 WL 12865276, at *5 (C.D. Cal. Nov. 15, 2012).  It further follows that, to the extent
27
there were a separate requirement of willfulness, that requirement would be satisfied here by the
Court's ruling on summary judgment, which found NSO liable for knowing violations of the
28
CDAFA.  *See* Dkt. No. 494 at 12–13; Cal. Penal Code § 502(c).

10

1    that involved with the preponderance standard, but less than what is required by the standard of proof

2    beyond a reasonable doubt.  This intermediate standard 'requires a finding of high probability.'"

3    *Samson v. Wells Fargo Bank, N.A.*, 2021 WL 958572, at *5 (C.D. Cal. Feb. 1, 2021) (quoting *In re*

4    *Angelia P.*, 623 P.2d 198, 204 (Cal. 1981)), *rev'd on other grounds*, 2022 WL 3282255 (9th Cir.

5    2022).

6         A defendant was found to have acted with malice when he "knowingly developed and mar-

7    keted software with the sole purpose of circumventing the security measures put in place by [plaintiff]

8    and did so with the knowledge that they were acting in violation of" plaintiffs' terms of service.

9    *Craigslist, Inc. v. Mesiab*, 2010 WL 5300883, at *14 (N.D. Cal. Nov. 15, 2010), *report and recom-*

10   *mendation adopted*, 2010 WL 5300881 (N.D. Cal. Dec. 20, 2010).  The Ninth Circuit also affirmed

11   a punitive damages award when it found that there was substantial evidence that "Monsanto acted

12   with malice by, among other things, ignoring Roundup's carcinogenic risks."  *Hardeman v. Mon-*

13   *santo Company*, 997 F.3d 941, 970 (9th Cir. 2021).  This substantial evidence included "internal

14   emails" showing "that Monsanto was consciously aware of the potential health risks associated with

15   Roundup."  *Id.* at 971.

16        In determining the size of a punitive damages award, the jury may properly consider whether

17   "the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public," as

18   that shows the conduct "was particularly reprehensible."  *Philip Morris USA v. Williams*, 549 U.S.

19   346, 355 (2007); *see also Johnson v. Ford Motor Co.*, 113 P.3d 82, 92 (Cal. 2005).[6]  Misconduct is

20   more reprehensible when "it was part of a repeated corporate practice rather than an isolated inci-

21   dent."  *Johnson*, 113 P.3d at 85.

22                                        *         *         *

23        At trial, Plaintiffs will prove by clear and convincing evidence that NSO acted with oppres-

24   sion, fraud, or malice.  The limited discovery that NSO provided in this litigation shows that NSO's

25

26   ─────────────────────

27   [6] Plaintiffs seek damages only for harm from NSO's conduct in California—specifically, NSO's ac-
     cess to and sending of malicious code through WhatsApp's servers in California, as the Court already
     found in its Order granting Plaintiffs' Motion for Summary Judgment.  *See* Dkt. No. 494 at 6 ("de-

28   fendants' Pegasus code was sent through plaintiffs' California-based servers); *id*. at 13.

engineers closely monitored WhatsApp's own security updates—some of which blocked NSO's Malware Vectors—and frequently updated NSO's spyware to circumvent changes to WhatsApp. After such updates, NSO continued to redeploy its spyware to exploit WhatsApp. Based on these facts, the Court has already found that NSO acted with fraudulent intent when it "redesigned Pegasus to evade detection after plaintiffs first fixed the security breach." Dkt. No. 494 at 12. NSO also took extensive steps to conceal its activity from Plaintiffs, because it knew that WhatsApp would shut down NSO's malicious activity if it discovered it. Finally, the purpose of Pegasus is to allow for the unfettered surveillance of WhatsApp users through almost every available means: In addition to harming WhatsApp, NSO's extended pattern of unlawful conduct posed a substantial risk of harm to thousands of WhatsApp users, which the jury may properly consider in assessing the "reprehensibility" of NSO's conduct and, accordingly, the appropriate size of a punitive damages award against NSO. The jury should therefore award Plaintiffs punitive damages to punish NSO and to deter similar acts in the future.

PLAINTIFFS' TRIAL BRIEF - CASE NO. 4:19-CV-07123-PJH

1

2    Dated:   March 13, 2025                    Respectfully submitted,

3                                               DAVIS POLK & WARDWELL LLP

4                                         By:   */s/ Greg D. Andres*
                                               Greg D. Andres
5                                              Antonio J. Perez-Marques
                                               Gina Cora
6                                              Craig T. Cagney
                                               Luca Marzorati
7                                                (admitted *pro hac vice*)
                                               DAVIS POLK & WARDWELL LLP
8                                              450 Lexington Avenue
                                               New York, New York 10017
9                                              Telephone: (212) 450-4000
                                               Facsimile: (212) 701-5800
10                                             Email: greg.andres@davispolk.com
                                                       antonio.perez@davispolk.com
11                                                     gina.cora@davispolk.com
                                                       craig.cagney@davispolk.com
12                                                     luca.marzorati@davispolk.com

13
                                               Micah G. Block (SBN 270712)
14                                             DAVIS POLK & WARDWELL LLP
                                               900 Middlefield Road, Suite 200
15                                             Redwood City, California 94063
                                               Telephone: (650) 752-2000
16                                             Facsimile:  (650) 752-2111
                                               Email: micah.block@davispolk.com
17

18                                             *Attorneys for Plaintiffs*
                                               *WhatsApp LLC and Meta Platforms, Inc.*
19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' TRIAL BRIEF - CASE NO. 4:19-CV-07123-PJH