# EXHIBIT I

**Triangle Holdings SA**
*Société Anonyme*
*Registered office : 412F, route d'Esch*
*L-1470 Luxembourg*

R.C.S. Luxembourg B 192115 (the "**Company**")

---

**BUSINESS ETHICS COMMITTEE CHARTER**
**Adopted by Board resolution on 20 December, 2017**

---

**Art. 1 -    Overall Purpose**

1.1  The Business Ethics Committee (BEC) was established in July 2015 by the board of directors of the Company (the "**Board**") for implementation across the group of companies the Company belongs to (the "**Group**") with the authority, responsibility and specified duties as described in this Charter, as approved by the Board, and as separately instructed from time to time by the Board. This Charter may be amended from time to time by the Board.

1.2  The BEC assesses and vets potential engagements and sales through a multilayered process named the Business Ethics Framework (the "**BEF**") ensuring that only vetted government agencies are approved to use the Group's technology for legitimate and legal purposes in an ethical manner.

1.3  The BEC uses the BEF to enable the Company to identify, assess and manage, the legal, ethical and reputational risk of supplying its solutions to its customers:

- Legal Risk

Legal risk is concerned with whether there are any laws prohibiting the supply of a particular solution to a customer or proscribing certain activities in relation to such a sale

- Ethical Risk

Ethical risk is concerned with whether the Company thinks it is appropriate to supply a particular solution to a customer, by assessing such factors as the respect for the rule of law and the likelihood of the solution being misused, notwithstanding the legality of a proposed sale

- Reputational Risk

Reputational risk is concerned with the external view of the supply of a particular solution to a customer, notwithstanding the legality and propriety of the proposed sale.

1.4  The BEC shall also conduct annual reviews of the BEF and process to include a review of its decisions and re-approval of the country lists, moving any countries to take account of changes in

Highly Confidential                                                                                                                    FPM-00021841

circumstances.

1.5  The BEC shall provide a report to the Board at each quarterly Board meeting or at such other times as the Board shall require summarizing the activity of the BEC since the last Board meeting and on a year to date basis, including by category the number of applications considered by the BEC, the decisions by the BEC (approvals, declines, deferrals), and the applications which were declined.

**Art. 2 -    Composition of the BEC**

2.1  The BEC shall consist of not less than ten members.

2.2  As of the date of this Charter, the BEC shall be comprised of the following members:
- Chief Executive Officer of the Group;
- General Counsel of the Group;
- Chief Financial Officer of the Group;
- Two members of the Board selected and appointed by the Board;
- Compliance Manager of the Group; and
- Four Independent Advisors.

2.3 Independent Advisors shall be appointed by the Board in consultation with the CEO of the Group and the General Counsel of the Group.

2.4  Each member of the BEC shall serve until the earlier of his or her resignation or removal by the Board.  Each Management member or Board member of the BEC shall automatically be removed from the BEC at such time as they cease to be an officer or director of the Company.

2.5  Any vacancies on the BEC shall be filled by the Board.

**Art. 3 -    Organization and Meetings of the BEC**

3.1  The BEC shall meet when required but not less than four times a year.  Notice and the agenda for each meeting shall be provided to each member at least 48 hours in advance of each meeting, provided that attendance in person by a member shall constitute waiver of notice.

3.2  The presence of a majority of the members of the BEC shall constitute a quorum, provided that such majority includes at least the Chief Executive Officer of the Group, the General Counsel of the Group and at least three of the Independent Advisors.

3.3  Decisions of the BEC to approve an application shall be validly taken by the unanimous approval of the members present and eligible to vote, or in lieu of a meeting, by the unanimous written consent of all members of the BEC.

3.4  Any member of the BEC may submit to the Board an appeal of any decision of the BEC for which at least one member dissents.  The Board shall have 30 days from submission of the appeal to either affirm or reverse the decision of the BEC.  If the Board does not act within such 30 day period, the decision of the BEC shall be deeded affirmed and final.

Highly Confidential                                                                                                                              FPM-00021842

3.5 The BEC shall appoint a secretary who shall record the minutes and decisions of the BEC. In the absence of the appointment of a secretary, the General Counsel of the Group shall record the minutes.

3.6 Any member of the BEC that has a personal or professional financial or other material interest in a transaction or contract that is the subject of a decision by the BEC, other than by virtue of being an employee, director, officer or consultant of the Group, shall notify the other BEC members of such interest and shall be recused from the deliberation and not eligible to vote on any decision on that matter.

3.7 The BEC shall have the authority to select and retain legal counsel or other independent advisors to assist the BEC in any matter.

**Art. 4 -  Customer Selection**

4.1 The BEC shall set clear guidelines for certain key criteria that it must assess in evaluating whether to proceed to contract with potential customers.

4.2 The criteria include but are not limited to:

   a. Whether the government entity acquiring the product has a legitimate intelligence gathering or law enforcement mission that is rationally connected to lawful use of the product;

   b. Whether the potential customer or another government entity in that country has misused the product, or a similar product, in the past;

   c. Whether the country is under any relevant export restrictions from the European Union, the United States, Israel or the United Nations; and

   d. Whether the country or specific government entity acquiring the product has a history of human rights abuse, unlawful surveillance, and/or corruption issues.

4.3 In addition to establishing guidelines for such customer criteria, the BEC may impose terms and conditions on the approval of any customers or products, including to restrict the capabilities of products made available to particular countries.

4.4 Each calendar year, the BEC shall adopt a list of countries based on indices published by the World Bank which is categorized into 4 bands: A, B, C and D.

4.4.A Group A countries shall be members of the European Union and/or the Organisation for Economic Co-operation and Development. Group D countries shall be those which are subject to UN, EU, Israeli or US (including those which are subject to U.S. International Traffic in Arms Regulations restrictions or embargoes). The remaining countries will be ranked based on the average score (the "**Country Score**") for each country using the most recent version of the following indices from the World Bank Worldwide Development Indicators:

   i. Voice & Accountability;

   ii. Political Stability and Absence of Violence/Terrorism;

- 3 -

Highly Confidential

FPM-00021843

      iii.    Rule of law; and

      iv.    Control of Corruption.

4.4.B    **Group A.** The BEC shall require specific approval by the BEC for sales to all countries, even those in Group A. The BEC shall require country reports be prepared for Group A customers. After reviewing details of the potential sale and the relevant compliance report (which shall include the information as set out in paragraph 4.5), the BEC may vote to:

      i.    approve the sale;

      ii.    reject the sale; or

      iii.    defer the sale pending further due diligence enquiries or pending a specific event that is to occur in the near-future.

4.4.C    **Group B-C.** The terms Group B country and Group C country shall only be used to help identify the relative ranking of a country on the country list. For the purpose of approval and diligence, Group B countries and Group C countries shall follow the same process, including informal solicitation of input from appropriate government sources. After reviewing details of the potential sale and the relevant compliance report (which shall include the information as set out in paragraph 4.5), the BEC may vote to:

      i.    approve the sale;

      ii.    reject the sale; or

      iii.    defer the sale pending further due diligence enquiries or pending a specific event that is to occur in the near-future.

4.4.D    **Group D.** The initial list of Group D countries shall be Crimea (Ukraine), Russia, Cuba, Iran, Lebanon, Peoples Republic of China, North Korea, Sudan, Syria, West Bank/Gaza Burma (Myanmar), Venezuela, Afghanistan, Central African Republic, Cyprus; Democratic Republic of Congo, Eritrea, Haiti, Iraq, Libya, Somalia, and Zimbabwe. No sales or marketing activity shall take place in any Group D country whatsoever. This initial list shall be reviewed by the BEC at least annually and shall be modified by the BEC as needed.

4.5 The compliance report that is submitted to the BEC with each application shall include:

    a.    the Country Score for the previous 4 years;

    b.    a summary of the country including its political situation;

    c.    relevant extracts from the most recently published US State Department Human Rights report;

    d.    a summary of any government feedback (where sought); and

    e.    any other relevant information.

Highly Confidential                                                                                                                                      FPM-00021844

**Art. 5 -   Partner Selection**

5.1 The BEC must approve any entity or person to be appointed by the Company as a sales or distribution agent, reseller or finder (each, a "Partner"), including the fee and other compensatory arrangements paid by the Company or any customer to such Partner, pursuant to the Group's anti-bribery and corruption policy. Before approving any such appointment, the BEC must receive from the Company a report confirming the Partner's acceptance of, and compliance with, the Company's anti-corruption policies.

**Art. 6 -   Documentation and retention**

The Company shall document and maintain diligence performed on potential customers, resellers, agents and representatives and the BEC shall periodically audit, or oversee an audit, of the Company's compliance with these documentation requirements.

**Art. 7 -   Misuse of the Company's product**

7.1 The BEC must be informed of any arrangement under which the Company cannot immediately terminate or suspend maintenance and support of its products in the event of suspected misuse of the product.

7.2 In the event of any allegation of misuse by an end-user, the BEC must be convened to discuss the matter. Where the BEC determines that any allegation is credible, the General Counsel, or a designee who reports to the General Counsel, shall conduct an investigation into the matter, with a formal report of findings to be presented to the BEC. The BEC shall determine, as soon as practicable, whether the Company should suspend all new sales and/or existing maintenance to some or all end-users residing in the country in question while such investigation is ongoing.

7.3 Following the submission of the formal report of findings referred to in Articles 7.2, the BEC will determine the course of action to follow which may include the suspension or termination of any affected agreement.

7.4 The BEC shall receive quarterly reports on the anonymous whistle-blower hotline established by the Company to report misuse or misappropriation of the Company's products.

**Art. 8 -   Opportunity Renewal**

The BEC shall review decisions and re-approvals (including renewals of maintenance and support) every twelve months to account for quickly changing political circumstances, or more frequently where determined by the BEC.

**Art. 9 -   Standard Contractual Language**

The Company's standard contracts shall contain the following clauses relating to the ethical conduct of end users. The BEC's prior approval shall be required if an end user does not agree to the inclusion of such provisions in its contract with the Company or the Company's appointed reseller:

    a. **Lawful Use.** All sales contracts shall require that the end-user represents and warrants, or the reseller represents and warrants, that the end-user will only use the Company's

Highly Confidential                                                                                                              FPM-00021845

products for lawful means and for legitimate law enforcement or intelligence purposes;

b. **End User Undertaking.** All sales contracts shall require that a breach of the end-user's undertakings in its export certificate is a breach of the contract;

c. **Misuse**. All sales contracts shall require that end-users commit to use the product only in a manner consistent with law and for legitimate law enforcement or intelligence purposes; and further, that end-users commit NOT to use the product(s) to violate human rights, free expression, or protected political activity.

d. **Termination**. All sales contracts shall allow the Company to immediately suspend use of the product in the event of a material breach of the contract, including use of the product not consistent with the ethical obligations set out in the contract;

e. **Operations.** All sales contract shall include explicit contractual language to the effect that the company and its affiliates have no operational role once the relevant product is sold to an end-user; and

f. **Documentation.** All customers shall have formal contracts containing the key representations concerning limitations of usage and legality of usage.

Highly Confidential                                                                                                    FPM-00021846