JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
 acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:    (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>          Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS' MOTIONS IN LIMINE NOS. 1-10**<br><br>**[REDACTED] VERSION OF DOCUMENT FILED UNDER SEAL**<br><br>Pretrial Conference Date: April 10, 2025<br>Time: 2:00 p.m.<br>Ctrm: 3<br>Judge: Hon. Phyllis J. Hamilton<br>Trial Date: April 28, 2025 |

1      **PLEASE TAKE NOTICE** that on April 10, 2025, at 2:00 p.m., Defendants NSO Group

2   Technologies Ltd. and Q Cyber Technologies Ltd. (collectively "NSO") will bring on for hearing

3   before the Honorable Phyllis J. Hamilton, United States District Judge, in the United States

4   Courthouse, 1301 Clay Street, Courtroom 3, Oakland, California, Defendants' Motions in Limine

5   Nos. 1 through 10.  NSO's Motions are based on this Notice, the following Points and Authorities,

6   the accompanying Declaration of Joseph N. Akrotirianakis and exhibits thereto, and such other

7   written or oral argument as may be presented at or before the time these Motions are taken under

8   submission by the Court.

9

10   Dated: March 13, 2025                    KING & SPALDING LLP

11                                            By: */s/Joseph N. Akrotirianakis*
                                              JOSEPH N. AKROTIRIANAKIS
12                                            AARON S. CRAIG
                                              *Attorneys for Defendants*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.      BACKGROUND ................................................................................................. 1

        DEFENDANTS' MOTION NO. 1: ................................................................. 1

        DEFENDANTS' MOTION NO. 2: ................................................................. 3

        DEFENDANTS' MOTION NO. 3: ................................................................. 5

        DEFENDANTS' MOTION NO. 4: ................................................................. 7

        DEFENDANTS' MOTION NO. 5: ................................................................. 8

        DEFENDANTS' MOTION NO. 6: ............................................................... 12

        DEFENDANTS' MOTION NO. 7: ............................................................... 14

        DEFENDANTS' MOTION NO. 8: ............................................................... 17

        DEFENDANTS' MOTION NO. 9: ............................................................... 18

        DEFENDANTS' MOTION NO. 10: ............................................................. 20

II.     CONCLUSION ............................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*,
  2018 WL 5886663 (S.D. Fla. Nov. 9, 2018)...................................................................12

5

6

*Adams v. United States*,
  2009 WL 1324227 (D. Idaho May 7, 2009) ....................................................................8

7

8

*Bal Seal Eng'g, Inc v. Nelson Prods., Inc*,
  2019 WL 7865198 (C.D. Cal. Oct. 17, 2019) .................................................................4

9

*Bayless v. Bos. Sci. Corp.*,
  2021 WL 2459275 (M.D. Fla. May 24, 2021) ...............................................................12

10

11

*Benjamin v. B&H Educ., Inc.*,
  877 F.3d 1139 (9th Cir. 2017)..........................................................................................4

12

13

*Corallo v. NSO Grp. Techs. Ltd.*,
  No. 3:22-cv-05229-RS (N.D. Cal.) .................................................................................12

14

*Cox v. Cnty. of San Joaquin*,
  2022 WL 4664181 (E.D. Cal. Sept. 30, 2022) ...............................................................11

15

16

*Dada v. NSO Grp. Techs. Ltd.*,
  No. 3:22-cv-07513-JS (N.D. Cal.) ..................................................................................12

17

*De Anza Santa Cruz Mobile Ests. Homeowners Ass'n v. De Anza Santa Cruz
  Mobile Ests.*,
  94 Cal. App. 4th 890 (2001) ....................................................................................15, 20

18

19

*Dukes v. Wal-Mart Stores, Inc.*,
  2013 WL 1282892 (N.D. Cal. Mar. 26, 2013) ...............................................................16

20

21

*Emuveyan v. Ewing*,
  2022 WL 464306 (D. Utah Feb. 15, 2022) ..............................................................15, 20

22

23

*Faigin v. Kelly*,
  184 F.3d 67 (1st Cir. 1999) .............................................................................................20

24

25

*Fluor Corp. v. Zurich Am. Ins. Co.*,
  2021 WL 3021973 (E.D. Mo. July 16, 2021) .................................................................20

26

27

*Garcia v. LQ Mgmt., LLC*,
  2022 WL 1115207 (C.D. Cal. Mar. 29, 2022) ...............................................................11

28

ii

*Gonzalez v. City of Phoenix*,
   2024 WL 1195512 (D. Ariz. Mar. 20, 2024) ........................................................... 13

*Halem Indus., Inc. v. Fasco Indus., Inc.*,
   865 F.2d 268 (Fed. Cir. 1988).......................................................................... 16, 20

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001)...................................................................................... 6

*Jacobs v. Alexander*,
   2016 WL 4440957 (E.D. Cal. Aug. 22, 2016) ........................................................... 8

*Khashoggi v. NSO Group Techs. Ltd.*,
   No. 1:23-cv-779 (E.D. Va.)....................................................................................... 13

*Mariscal v. Graco, Inc.*,
   2014 WL 4245949 (N.D. Cal. Aug. 27, 2014)..................................................... 6, 17

*Martinelli v. Penn Millers Ins. Co.*,
   269 F. App'x 226 (3d Cir. 2008) .............................................................................. 19

*Mfg. Automation & Software Sys., Inc. v. Hughes*,
   2019 WL 266970 (C.D. Cal. Jan. 15, 2019) ............................................................ 20

*NSO Group Technologies Ltd. et al.*, Case No. 5:21-cv-9078-JD .............................. 12

*Nunez v. Coloplast Corp.*,
   2020 WL 2315077 (S.D. Fla. May 11, 2020) ........................................................... 12

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir.
   2010) ......................................................................................................................... 18

*In re Pac. Pictures Corp.*,
   679 F.3d 1121 (9th Cir. 2012).................................................................................. 16

*Pellegrini v. Gooder*,
   2012 WL 12893745 (C.D. Cal. Dec. 6, 2012) ......................................................... 20

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007).................................................................................................. 13

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
   277 F.R.D. 676 (S.D. Fla. 2012) ................................................................................ 9

*Renfroe v. Quality Loan Serv. Corp. of Washington*,
   2017 WL 8777463 (E.D. Wash. Oct. 26, 2017)......................................................... 4

*Resolution Trust Corp. v. S. Union Co.*,
   985 F.2d 196 (5th Cir. 1993)..................................................................................... 11

iii

*Rodman v. Safeway, Inc.*,
   2015 WL 5315940 (N.D. Cal. Sept. 11, 2015) .............................................................. 4

*Rogers v. Bank of Am., N.A.*,
   2014 WL 4681031 (D. Kan. Sept. 19, 2014) .............................................................. 4

*Sackman v. Liggett Grp., Inc.*,
   173 F.R.D. 358 (E.D.N.Y. 1997) ......................................................................... 16

*Sullivan v. Dollar Tree Stores, Inc.*,
   623 F.3d 770 (9th Cir. 2010) .......................................................................... 19, 20

*Tacori Enters. v. Beverlly Jewellery Co.*,
   253 F.R.D. 577 (C.D. Cal. Sept. 7, 2008) .................................................................. 9

*United States v. Cameron-Ehlen Grp., Inc.*,
   2023 WL 36174 (D. Minn. Jan. 4, 2023) ................................................................. 20

*United States v. CNA Fin. Corp.*,
   2005 WL 8159495 (D. Alaska Dec. 28, 2005) ............................................................ 9

*United States v. Johnson*,
   820 F.2d 1065 (9th Cir. 1987) ......................................................................... 16

*United States v. Pac. Gas & Elec. Co.*,
   178 F. Supp. 3d 927 (N.D. Cal. 2016) .................................................................. 19

*Walker v. Life Ins. Co. of the Sw.*,
   2014 WL 12577139 (C.D. Cal. Apr. 3, 2014) ......................................................... 6, 17

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) .......................................................................... 3

*Zackaria v. Wal-Mart Stores, Inc.*,
   2011 WL 6065169 (C.D. Cal. Dec. 5, 2011) ............................................................ 13

**Statutes**

50 U.S.C. § 4821 .......................................................................................... 19

Cal Bus. & Prof. Code 17200 *et seq.* ....................................................................... 12

Cal. Civ. Code § 3294 ............................................................................... 1, 9, 17

Cal. Pen. Code § 502(e)(4) .................................................................................. 1

**Other Authorities**

Fed. R. Civ. P. 26 ....................................................................................... 3, 4

Fed. R. Civ P. 30(b)(6) ........................................................................................ 8, 9, 11

Fed. R. Civ. P. 37 .................................................................................................. 3, 11

Fed. R. Evid. 401, 402 and 403 ............................................................................ *passim*

Fed. R. Evid. 802 ...................................................................................................... 7

Fed. R. Evid. 803 .................................................................................................... 16

NSO'S MOTIONS IN LIMINE                                          Case No. 4:19-cv-07123-PJH

1  **I.      BACKGROUND**

2        The Court granted summary judgment as to liability on Plaintiffs' CFAA, CDAFA, and

3  breach of contract claims. The issues remaining for the jury to decide are (1) Plaintiffs'

4  compensatory damages, if any; (2) whether Plaintiffs have established a willful CDAFA violation,

5  Cal. Pen. Code § 502(e)(4), and malice, fraud, or oppression, *id.*; Cal. Civ. Code § 3294; and (3) if

6  so, the amount of punitive damages, if any.  (*See* Dkt. 494 at 16.)  The Court should exclude the

7  evidence described in NSO's Motions *in Limine* Nos. 1 through 10 because such evidence is

8  irrelevant and inadmissible, Fed. R. Evid. 401, 402; should be excluded under Rule 403 as unfairly

9  prejudicial, confusing of the issues, misleading to the jury, or wasting of time; or is otherwise

10  inadmissible.

11                          **DEFENDANTS' MOTION NO. 1:**

12        **Exclude Evidence of Purported Injury to WhatsApp's Reputation**

13        In the Complaint, Plaintiffs alleged that Defendants caused "damage to Plaintiffs'

14  reputation, and damage to the relationships and goodwill between Plaintiffs and their users and

15  potential users." (Compl. ¶¶ 64, 73, 78.)  Defendants served discovery seeking information about

16  Plaintiffs' reputation and goodwill, so that Defendants could present their position about whether

17  NSO's alleged conduct had any negative effect on Plaintiffs' reputation or goodwill.  The discovery

18  Defendants served included requests concerning the record $5 billion fine the FTC levied against

19  Plaintiffs, Plaintiffs' sharing of user data with Cambridge Analytica, Plaintiffs' role in developing

20  and using tools similar to Pegasus, and other issues relevant to Plaintiffs' reputation and goodwill

21  in the specific area of maintaining the privacy of data that users have entrusted to Plaintiffs, among

22  other of Plaintiffs' numerous scandals.

23        To avoid responding to that discovery, Plaintiffs confirmed in early 2024 that they were

24  abandoning not just their claim for reputational damages, but any and all allegations about harm to

25  their reputation or goodwill.  Plaintiffs' counsel represented that "we are not seeking to admit

26  evidence of reputational harm or loss of goodwill to obtain money damages, and we have now

27  confirmed that we are also not seeking to use such evidence to obtain equitable relief.  Nor do we

28

1   intend to use such evidence to otherwise inject those issues into the litigation for any part of our

2   case-in-chief." (Akro. Decl. Exh. A.)

3        This motion is necessary because Plaintiffs removed a stipulation confirming their

4   agreement from the Joint Pretrial Statement and have furtively attempted to renege on their

5   agreement by couching arguments about their reputation and goodwill in other terms. For example,

6   in responding to questions about whether Pegasus messages crossing WhatsApp servers caused any

7   harm to the system (which is relevant to whether Defendants caused Plaintiffs' alleged damages),

8   Plaintiffs' expert David Youssef testified that █████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████

10  ██████ Plaintiffs make similar assertions in their motion for a permanent injunction. (Dkt. 557-3 at

11  18.)  Unless Plaintiffs can prove—contrary to the testimony of all of Plaintiffs' percipient

12  witnesses—that Pegasus caused some technological impairment of their server or systems, Mr.

13  Youssef's testimony is simply a disguised way of saying the *reputation* of Plaintiffs' technology

14  was impaired.

15       Such testimony, whether by Mr. Youssef or by Plaintiffs' employees, violates the parties'

16  agreement and has no place in the upcoming trial.  Plaintiffs abandoned their claims related to

17  reputation and goodwill to avoid providing discovery to Defendants, and it would be fundamentally

18  unfair to allow Plaintiffs to renege now, when Defendants have been denied the evidence needed

19  to rebut any assertion of reputational harm.  Defendants cannot anticipate or list here all the different

20  ways Plaintiffs might couch arguments about reputational harm using words other than "reputation"

21  and "goodwill," so Defendants request an order prohibiting Plaintiffs and their witnesses from

22  arguing harm to reputation and goodwill, however those arguments are phrased.

23       This motion in limine is brought only after Plaintiffs refused—without explanation—to

24  stipulate, as part of the parties' Joint Pretrial Statement, that they had "agreed not to introduce

25  evidence of reputational harm or loss of goodwill to obtain money damages or equitable relief, and

26  not to use such evidence to otherwise inject those issues into the litigation for any part of Plaintiffs'

27  case-in-chief." (Akro. Decl. ¶ 4.)

28  ///

**DEFENDANTS' MOTION NO. 2:**

**Exclude Testimony of Witnesses Not Disclosed During Discovery Period**

The Court should preclude Plaintiffs from calling at trial any witness not properly listed in their Rule 26(a)(1) disclosures.

Rule 26(a)(1) requires a party to disclose any witness it "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1). The party "must . . . provide to the other parties . . . the name and, if known, the address and phone number of each individual likely to have discoverable information." *Id.* (emphasis added). The Rule further provides that a party has a duty to supplement earlier disclosures when incorrect or incomplete. *Id.* If a "party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This is an "automatic sanction" of exclusion that provides a "strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion." *Id.* Advisory Comm. Note to 1993 Amendment, Subd. (c); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Plaintiffs should not be allowed to call as a witness any person not identified as required in Plaintiffs' Rule 26(a)(1) disclosures. This includes, for example, summary judgment declarant Meghan Andre. Plaintiffs submitted a declaration from Ms. Andre with their motion for partial summary judgment, which contained Ms. Andre's description of a search she said she performed of WhatsApp's records related to WhatsApp's Terms of Service. (Dkt. 401-3.) Despite Rule 26's requirements, Plaintiffs had never disclosed Ms. Andre as a witness. (Dkt. 421-3, Exh. G.) Plaintiffs made no attempt to justify their failure to disclose Ms. Andre when they amended their initial disclosures on August 2, 2024, and no substantial justification is conceivable. This case had been pending for several years, during which Plaintiffs have had ample time to evaluate their witnesses and comply with their disclosure obligations.

Plaintiffs should also be precluded from calling as a witness any individual employee or representative of the twenty-seven corporate entities listed in their Second Amended Initial

1    Disclosures.  Rule 26(a)(1) requires the disclosure of "individuals," and does not "permit the non-

2    specific listing of a corporation on a witness list as sufficient notice of a previously undisclosed

3    individual employee's testimony at trial."  *Bal Seal Eng'g, Inc v. Nelson Prods., Inc*, 2019 WL

4    7865198, at *5 (C.D. Cal. Oct. 17, 2019); *see also Renfroe v. Quality Loan Serv. Corp. of*

5    *Washington*, 2017 WL 8777463, at *3 (E.D. Wash. Oct. 26, 2017) (Defendants violated Rule 26

6    by failing "to disclose the names and contact information for specific individuals from Fannie Mae

7    and Nationstar"); *Rogers v. Bank of Am., N.A.*, 2014 WL 4681031, at *6 (D. Kan. Sept. 19, 2014)

8    (finding "initial disclosures generically listing custodian of records or corporate representatives to

9    be insufficient compliance with Rule 26(a)(1)(A)(i)").

10          Plaintiffs' failure to disclose witnesses is anything but harmless.  By disclosing Ms. Andre

11    after fact discovery had closed, and by generically listing more than two dozen corporate entities

12    in their disclosures, Plaintiffs deprived Defendants of any opportunity to depose Ms. Andre or other

13    individuals about their claims or to gather responsive evidence.  As a result, allowing Plaintiffs to

14    call Ms. Andre (or any other undisclosed witness) would prejudice NSO.  *Benjamin v. B&H Educ.,*

15    *Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017) (finding plaintiff had not shown their failure to disclosure

16    a witness was substantially justified or harmless when the plaintiff waited until summary judgment

17    stage to identify likely witnesses); *Rodman v. Safeway, Inc.*, 2015 WL 5315940, at *2-3 (N.D. Cal.

18    Sept. 11, 2015) (finding that the plaintiff's failure to timely disclose a witness was neither

19    substantially justified nor harmless when the witness was disclosed after discovery closed and

20    parties' pretrial disclosures were filed).  That prejudice cannot be cured. *See Rodman*, 2015 WL

21    5315940, at *3.

22          Accordingly, the Court should exclude any witness not properly identified in Plaintiffs'

23    Rule 26(a)(1) disclosures, including but not limited to Ms. Andre and any individual employee or

24    individual representative of the twenty-seven corporate entities listed in Plaintiffs' initial

25    disclosures.

26    / / /

27    / / /

28    / / /

**DEFENDANTS' MOTION NO. 3:**

**Exclude Evidence of the Identities and Occupations of ~1,400 Targets Referenced in**

**Complaint**

Plaintiffs' Complaint alleges that in April and May 2019, approximately 1,400 WhatsApp users were targeted by Defendants' customers with Pegasus, including "attorneys, journalists, human rights activists, political dissidents, diplomats, and other senior foreign government officials." (Compl. ¶ 42.) Plaintiffs' only information about the occupations of the targets of NSO's customers came from Plaintiffs' consultant, Citizen Lab. Accordingly, Defendants sought discovery on this allegation from Plaintiffs and Citizen Lab, which Plaintiffs and Citizen Lab refused to provide. Defendants then filed motions to compel directed at Plaintiffs and Citizen Lab. (*See* Dkts. 239-2, 239-3, 306, 308, 314.)

Plaintiffs strenuously resisted Defendants' efforts to obtain discovery on these issues. To argue that the discovery was irrelevant, Plaintiffs represented that they would not "call Citizen Lab witnesses or seek to present evidence as to the identities of the Target Users as part of their case-in-chief." (Dkt. 300 at 1; *see also id.* at 2 ("No element of any of Plaintiffs' claims depends on the Target Users' identities.").) The Court denied Defendants' motions "[b]ased on that representation." (Dkt. 358 at 3-4.) The Court held that it would account for the limitation on Defendants' ability to obtain discovery on these matters "[a]t the time of trial . . . when determining the admissibility of evidence." (Dkt. 358 at 4; *see also* Dkt. 299 at 3 ("[I]f plaintiffs do not wish to rely on the 'civil society'-related allegations, then discovery will be denied and the allegations *will not be admitted at trial*." (emphasis added)).)

Despite Plaintiffs' representations to the Court and the Court's reliance on them, Plaintiffs have spent substantial time and effort discussing the purported use of Pegasus by NSO's customers to monitor members of "civil society," including in depositions (of NSO's chief executive officer and NSO's law-enforcement and military experts) and in their own expert reports. Plaintiffs appear poised to argue that NSO should be held liable for punitive damages, in large part, because they believe that Pegasus has been misused against members of civil society. And Plaintiffs appear

1   poised to argue that their evidence is merely rebuttal to NSO's case in chief, as opposed to evidence

2   required affirmatively to support Plaintiffs' own demand for punitive damages.

3       The Court should not countenance this gamesmanship and should preclude Plaintiffs from

4   introducing, at any stage of the trial, any evidence or argument that Pegasus was used to target

5   "civil society" or any other evidence derived from Citizen Lab's work and conclusions.  Defendants

6   anticipate Plaintiffs will try to claim that some of the targets of NSO's clients were innocent

7   members of "civil society" in order to distract the jury from the following facts: (i) technologies

8   like Pegasus are essential tools deployed by sovereign governments to combat terrorism and crime

9   that end-to-end encrypted communications technologies are used to promote; and (ii) far from

10  enabling or condoning alleged instances of abuse of customer Pegasus, Defendants go to

11  considerable lengths to ensure that their technology is used only for its intended counterterrorism

12  and law enforcement purposes—including by contractually obligating clients to use the technology

13  only for such purposes and discontinuing customer access where improper use of the technology

14  has been confirmed.  (*E.g.*, Dkt. 396-2 at 3; Dkt. 396-3 ¶ 12, Exh. A ¶ 18.5, & Exh. B ¶ 19.5.; Dkt.

15  396-4 Exh. H at 21:16-25, 26:23-31:17, 181:10-15.)  Any such attempt by Plaintiff would be

16  improper and unfair to Defendants.  That is so for multiple reasons.

17      ***First***, Plaintiffs (and Citizen Lab) vigorously argued, and the Court agreed, that such

18  evidence is not relevant to Plaintiffs' claims.  (*E.g.*, Dkt. 305 at 4 ("[T]he court concludes that the

19  'civil society' related allegations are not relevant to plaintiffs' case-in-chief.").)  Plaintiffs are

20  judicially estopped from arguing otherwise now.  *Hamilton v. State Farm Fire & Cas. Co.*, 270

21  F.3d 778, 782-84 (9th Cir. 2001).  ***Second***, the evidence should be excluded under Rule 403,

22  because allowing it to be presented to the jury after denying Defendants' discovery motions would

23  be fundamentally unfair.  By disclaiming any intent to introduce evidence of the targets' identities,

24  Plaintiffs' deprived Defendants of the discovery Defendants would need to impeach Plaintiffs' and

25  Citizen Lab's claims.  Plaintiffs should not be permitted to renege on their representations now.

26  (Dkt. 299 at 3); *see Walker v. Life Ins. Co. of the Sw.*, 2014 WL 12577139, at *12-13 (C.D. Cal.

27  Apr. 3, 2014) (excluding evidence where court denied related discovery); *Mariscal v. Graco, Inc.*,

28  2014 WL 4245949, at *2 (N.D. Cal. Aug. 27, 2014) (prejudice warranting exclusion of evidence

1   exists where opponent has been denied the opportunity for adequate discovery).  ***Third***, documents

2   and communications generated by Citizen Lab (which is beyond the Court's subpoena power and

3   which Plaintiffs have represented will not be called to testify at trial) are inadmissible hearsay that

4   do not fall within any exception, and Plaintiffs did not produce any evidence generated by anyone

5   other than Citizen Lab that could plausibly support its "civil society" theory.  Fed. R. Evid. 802.

6   <u>**DEFENDANTS' MOTION NO. 4:**</u>

7   <u>**Exclude Argument that NSO "Used" Pegasus**</u>

8       Throughout this case, Plaintiffs have falsely and inflammatorily asserted that Defendants,

9   rather than their sovereign government customers, installed and operated Pegasus on devices of

10  nonconsenting WhatsApp users.  (*E.g.*, Compl. ¶¶ 1, 32, 42.) ██████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████   But Plaintiffs have never identified any factual support for

15  these allegations—because there is none.  (*Compare* Dkt. 396-2 at 2, 18-19 (Defendants' summary

16  judgment motion noting the absence of any evidence supporting these allegations), *with* Dkt. 418-

17  3 at 1, 17-18 (Plaintiffs' opposition brief identifying no such evidence, only arguing that NSO is

18  nevertheless "responsible" and "liable" for *its customers'* use of Pegasus).)  Indeed, Plaintiffs' own

19  ████████████████████████████████████████████████████████

20  ████████████████████   In the absence of any factual support, the Court should not permit the

21  jury to hear baseless, inflammatory, and false speculation that NSO operates Pegasus or views and

22  collects information from target users.

23      The uncontroverted record evidence confirms that Defendants *did not and do not* operate

24  Pegasus technology.   NSO markets and licenses the Pegasus technology to its government

25  customers, which then operate the Pegasus technology themselves, to advance their own sovereign

26  interests of fighting terrorism and serious crime.  (Dkt. 396-3 ¶ 14; Dkt. 396-5, Exh. H. at 234:8-9,

27  Exh. I at 316:11-317:2.) Defendants do not participate in any governmental customer's installation

28  of the Pegasus technology on any target device; indeed, they are legally and contractually

1    prohibited from doing so. (Dkt. 396-3 ¶ 14; *id.*, Exh. A ¶ 2.4, Exh. B ¶ 2.4.) NSO provides technical

2    support to assist governmental customers in setting up and maintaining Pegasus, but not in

3    operating Pegasus. (*Id.* ¶ 15, Exh. A at 9, 14-15 & Exh. B at 9, 14-15.) Accordingly, Defendants

4    have never participated in any governmental customer's installation of the Pegasus agent on any

5    target device, and Defendants have never installed Pegasus on any device other than for research

6    or sales/demonstration purposes—which was always done with the knowledge and consent of the

7    device owner. (*Id.* ¶¶ 14, 16.)

8        Plaintiffs' assertion that NSO is *liable for* its customers' actions as a co-conspirator does

9    not change this conclusion. Although NSO disputes that Plaintiffs have submitted any evidence

10   sufficient to prove a conspiracy, the existence of a conspiracy would not change *which parties*

11   actually operated Pegasus. Whether NSO conspired with its customers by licensing Pegasus (it did

12   not) is relevant only to liability, which this Court resolved on summary judgment and is not relevant

13   to the issues to be determined by the jury. Fed. R. Evid. 401, 402. The conspiracy question is

14   distinct from the factual question of whether NSO *itself* operated Pegasus. The undisputed evidence

15   shows that NSO did not do so, and Plaintiffs do not even have a good faith basis to claim otherwise.

16       Accordingly, allowing Plaintiffs to repeat the false statements of Mr. Woog and others in

17   trial testimony would mislead the jury, confuse the issues, and otherwise subject Defendants to

18   unfair prejudice. Fed. R. Evid. 403. Plaintiffs should accordingly be precluded from arguing or

19   eliciting testimony that NSO used Pegasus. *See, e.g.*, *Jacobs v. Alexander*, 2016 WL 4440957, at

20   *10 (E.D. Cal. Aug. 22, 2016) (excluding argument and testimony for which "there is not a scintilla

21   of evidence"); *Adams v. United States*, 2009 WL 1324227, at *2-4 (D. Idaho May 7, 2009)

22   (excluding "evidence, testimony or argument . . . that have no support in the record").

23                    **DEFENDANTS' MOTION NO. 5:**

24       **Exclude Testimony on Topics about which Plaintiffs Refused to Produce a Rule**

25                         **30(b)(6) Witness**

26       The Court should exclude evidence of topics for which Plaintiffs refused to provide

27   knowledgeable, prepared Rule 30(b)(6) witnesses. When litigants refuse to designate a witness in

28   response to proper topics in a Rule 30(b)(6) notice of deposition, courts have a variety of sanctions

available to them, including precluding the party from eliciting testimony on those subjects. *E.g.*, *Tacori Enters. v. Beverly Jewellery Co.*, 253 F.R.D. 577, 583 (C.D. Cal. Sept. 7, 2008) (precluding defendant from presenting evidence regarding topics that would have been covered in deposition where counsel had interfered with prior deposition of corporate designee); *QBE Ins. Corp. v. Jorda Enters., Inc*., 277 F.R.D. 676, 678 (S.D. Fla. 2012).

NSO timely served on Plaintiffs a deposition notice setting forth several unobjectionable topics relevant to the remedies being sought by Plaintiffs for which Plaintiffs refused to produce a witness. After Plaintiffs objected to these topics and refused to produce a witness, even after substantial attempts at compromise, NSO proceeded with the 30(b)(6) deposition as to the topics to which Plaintiffs agreed. NSO also filed a motion to compel (Dkt. 381),[1] which the Court denied as moot due to its summary judgment order (Dkt. 494 at 15). The Court's mootness finding necessarily means that it viewed the topics at issue to be irrelevant to the trial of the remaining disputed issues. And Plaintiffs, having refused to prepare a 30(b)(6) witness and then obtained a mootness denial of Defendants' motion to compel, should not be able to introduce evidence on those topics at trial. Plaintiffs' "self-help" should not go without consequence. The appropriate remedy is for the Court to refuse to allow Plaintiffs' witnesses to testify as to three of these subjects, as set forth below.

1.    <u>Defendants' actions constituting malice, oppression, or fraud (Topic 23)</u>

Plaintiffs alleged "there is clear and convincing evidence that Defendants acted with malice and oppression and committed 'fraud' as defined by section 3294 of the Civil Code." (Compl. ¶ 66.) NSO's 30(b)(6) topic no. 23 was "Defendants' alleged action with malice and oppression and alleged commission of fraud." (Dkt. 381-2 at 2, 29). Plaintiffs objected that the topic would be the subject of expert testimony or that was essentially a contention interrogatory, neither of which is a proper basis to refuse to provide a Rule 30(b)(6) witness as to the *factual bases* for Plaintiffs' allegations of malice, oppression, or fraud. *See United States v. CNA Fin. Corp.*, 2005 WL 8159495, at *1 (D. Alaska Dec. 28, 2005) (ordering plaintiff to designate 30(b)(6) witness on "[a]ll bases for the [plaintiff's] position that punitive damages are appropriate in this case"). It would be unfair for

---

[1] Plaintiffs never moved for a protective order.

the Court to allow Plaintiffs to refuse to designate a witness on this topic, to deny Defendants' motion to compel, and then to allow Plaintiffs to present the testimony they refused to provide in discovery.  To be clear, NSO is aware of no conduct that was malicious, oppressive, or fraudulent, but this Motion is still necessary to prevent Plaintiffs from sandbagging NSO at trial after refusing to designate a witness on this subject.

2. <u>Plaintiffs' cooperation with law enforcement and efforts to address whether WhatsApp hampers efforts to stop crime, terrorism, and child exploitation imagery (Topics 26 and 29)</u>

NSO's 30(b)(6) deposition notice included topic 26: "WhatsApp's policies and practices in 2018-present in complying with requests of law enforcement and/or intelligence agencies with respect to WhatsApp traffic and WhatsApp's 'willingness to action highly dangerous content.'"  It also included topic 29:  "Plaintiffs' efforts from 2018-present to address whether WhatsApp's encrypted platform hampers efforts to stop crime, terrorism and child exploitation imagery." (Dkt. 381-2 at 2, 32-34.)  Plaintiffs refused to designate a witness, relying primarily on relevance objections.  (*Id.*)

These topics are relevant to issues facing both the jury and this Court.  NSO anticipates Plaintiffs arguing that punitive damages are warranted because the use of Pegasus by NSO's customers is inherently oppressive and malicious, in that there is no need for law enforcement to have intelligence tools like Pegasus because Plaintiffs are making efforts to take action against terrorism and child exploitation imagery and cooperate with law enforcement.  These issues may also become relevant to Plaintiffs' requested equitable remedies of disgorgement and the scope of any possible injunction.  It would be manifestly unfair to allow Plaintiffs to refuse to provide a corporate designee on these topics and then allow Plaintiffs to testify about their policies and practices in taking action against dangerous content and cooperating with law enforcement.

3. <u>Damages theories other than "the actions Plaintiffs took, and the time Plaintiffs' employees spent, responding to NSO's exploit in May 2019" (Topics 15, 16, 45, and 46)</u>

NSO propounded four topics related to Plaintiffs' claims for compensatory damages: topics 15, 16, 45 and 46. (Dkt. 381-2 at 2-3, 23-25, and 44-45.) While Plaintiffs originally refused to designate a witness about any aspect of these topics, they ultimately relented and agreed to produce a witness to testify *only* about "the actions Plaintiffs took, and the time Plaintiffs' employees spent, responding to NSO's exploit in May 2019." (*Id.*) Plaintiffs should not now be allowed to introduce evidence or argument of any compensatory damages other than the actions Plaintiffs took and the time Plaintiffs' employees spent responding to NSO's exploit in May 2019. For example, actions Plaintiffs took doing things other than responding to NSO's exploit, or responding to any NSO exploit other than the one in May 2019, should be excluded.

Plaintiffs should also be limited to the testimony given on these topics by their 30(b)(6) designee, Andrew Robinson. Plaintiffs' expert, Dana Trexler, calculates sums associated with the time of 22 employees of Plaintiffs to reach her compensatory damages figure of $444,719. Plaintiff's 30(b)(6) witness concerning "the time spent by Plaintiffs' employees in responding to Defendants' exploit" testified that ████████████████████████████ ████████████████████████ or even the employees' titles. (Akro Decl. Exh. E, Robinson Tr. at 295:25-301:12.) As to another employee, ████████████ ████████████████████████████████████████ ████████████████████████ (*Id.*) Plaintiffs should not be allowed to supplement the testimony of their partially educated 30(b)(6) witness.[3] The refusal to produce an educated Rule 30(b)(6) witness is a weighty one and should not be without consequence.

---

████████████████████████████████████████████████

[3] *See Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) ("When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all"); *Cox v. Cnty. of San Joaquin*, 2022 WL 4664181, at *2 (E.D. Cal. Sept. 30, 2022) ("Producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)"); *Garcia v. LQ Mgmt., LLC*, 2022 WL 1115207, at *8 (C.D. Cal. Mar. 29, 2022) ("[A] party served with a Rule 30(b)(6) notice may be sanctioned for producing a partially educated witness with selective knowledge that only benefits the corporate party.")

Plaintiffs should be prohibited from eliciting witness testimony about topics 23, 26, 29 and undisclosed damages theories, and from producing testimony to fill in gaps for which their 30(b)(6) designee was uneducated and unprepared.

///

### DEFENDANTS' MOTION NO. 6:

### Exclude Evidence About Other Lawsuits Against NSO and the Use of Pegasus Being Related to the Death of Jamal Khashoggi

Several now-dismissed lawsuits were filed in this district and elsewhere against Defendants, asserting unrelated and unproven claims. The Court should exclude reference to other litigation involving Defendants because it would be irrelevant to the issues for this jury to decide, and the mention of other litigation creates substantial risk of undue prejudice. Courts routinely exclude evidence of other litigation involving the parties or related claims under Rules 401, 402, or 403 because "the minimal value, if any, of such proof is substantially outweighed by the risk of unfair prejudice to [a defendant] arising from the admission of evidence of allegations in other lawsuits filed against it."[4] The same rationale applies here for the same reasons. Discussion of other lawsuits, moreover, would confuse the issues, mislead the jury, and waste time. Fed. R. Evid. 403.

In an action in this District before Judge Donato, another plaintiff voluntarily dismissed a complaint alleging Defendants "sen[t] abusive data . . . through Apple servers" to "deploy their Pegasus spyware" against target users using Apple devices in violation of the CFAA, Cal Bus. & Prof. Code 17200 *et seq*., and the Apple Terms of Service. Dkt. 1 ¶¶ 46, 50-51, *Apple Inc. v. NSO Group Technologies Ltd. et al.*, Case No. 5:21-cv-9078-JD (N.D. Cal.) ("*Apple*"). Judge Donato and Judge Seeborg dismissed other actions filed against NSO in this district. *Dada v. NSO Grp. Techs. Ltd.*, No. 3:22-cv-07513-JS (N.D. Cal.) ("*Dada*"); *Corallo v. NSO Grp. Techs. Ltd.*, No. 3:22-cv-05229-RS (N.D. Cal.) ("*Corallo*"). Finally, Judge Leonie Brinkema dismissed under Rule

---

[4] *A.T.O. Golden Constr. Corp. v. Allied World Ins. Co*., 2018 WL 5886663, at *9 (S.D. Fla. Nov. 9, 2018); *Nunez v. Coloplast Corp.*, 2020 WL 2315077, at *14 (S.D. Fla. May 11, 2020) (excluding evidence of "other [pelvic] mesh litigation" against defendant and other mesh manufacturers, reasoning "[t]here is no bona fide relevance to this case."); *Bayless v. Bos. Sci. Corp.*, 2021 WL 2459275, at *1 (M.D. Fla. May 24, 2021) (requiring the parties to "sanitize the evidence to remove reference to other [pelvic mesh] litigation.").

12(b)(2) a lawsuit brought in the Eastern District of Virginia by Hanan Elatr, the widow of slain *Washington Post* columnist Jamal Khashoggi. *Khashoggi v. NSO Group Techs. Ltd.*, No. 1:23-cv-779 (E.D. Va.) ("*Khashoggi*"). Ms. Elatr alleged Pegasus "aided in the collection of information that ultimately led to the assassination of Jamal Khashoggi." (*Khashoggi*, Dkt. 50 at 3.)

The unproven allegations in these and other legal proceedings are inadmissible hearsay. *E.g.*, *Gonzalez v. City of Phoenix*, 2024 WL 1195512, at *20 (D. Ariz. Mar. 20, 2024); *Zackaria v. Wal-Mart Stores, Inc.*, 2011 WL 6065169, at *3 (C.D. Cal. Dec. 5, 2011), Even were they not, other legal proceedings against NSO are not "of consequence" and do not make "more or less probable" any material fact concerning the remaining issues in this case and are thus inadmissible. Fed. R. Evid. 401, 402; Dkt. 494, Order at 12-13, 15. The *Apple*, *Dada*, and *Corallo* cases involved different installation vectors relating to the iOS operating system, not Android. *Apple*, Compl. ¶ 51, Dkt. 1; *Corallo*, Compl. ¶ 39, Dkt. 1; *Dada*, Am. Compl. ¶ 63. And the plaintiff in *Khashoggi* alleged that UAE government agents "manually" installed Pegasus on her phone. *Khashoggi*, Compl. ¶ 106, Dkt. 1. Those lawsuits are wholly unrelated to the use of WhatsApp's servers.

The lawsuits are also irrelevant to damages, whether compensatory or punitive. Compensatory damages awardable under the CFAA and CDAFA relate solely to Plaintiffs' investigation and response costs. The existence of other lawsuits has no relevance those costs or whether those costs were caused by NSO. Nor can lawsuits involving other plaintiffs be relevant to punitive damages, because "the Due Process Clause prohibits[] inflicting punishment for harm caused strangers to the litigation." *Philip Morris USA v. Williams*, 549 U.S. 346, 357 (2007).

Evidence of other unrelated lawsuits also is also inadmissible under Rule 403 because the risk of unfair prejudice and confusion of the issues would substantially outweigh even if there were any negligible probative value. For example, the shocking and sensational (and unproven) allegations in *Khashoggi* falsely accuse Defendants of participation in the assassination of a journalist, which could serve only to inflame the passions of the jury and unfairly prejudice it against NSO.

Moreover, reference to Mr. Khashoggi should be excluded in its entirety. Mr. Khashoggi was a Saudi journalist who wrote criticisms of the Kingdom of Saudi Arabia and other Middle East

1    governments.   Mr. Khashoggi is believed to have been assassinated in 2018 at the Saudi consulate

2    in Istanbul.   Although NSO and Pegasus had nothing whatsoever to do with Mr. Khashoggi's

3    killing, Defendants anticipate that Plaintiffs may attempt to introduce unproven and debunked

4    allegations that Pegasus was involved in it.

5         *Khashoggi* was dismissed at the pleading stage, and no discovery was taken.   According to

6    public reporting, however, Mr. Khashoggi visited the Saudi consulate in September 2018 to obtain

7    a Saudi document stating that he was divorced, so that he could marry his Turkish fiancée, Hatice

8    Cengiz.  Mr. Khashoggi was told he would have to return to pick up the document and arranged to

9    do so on October 2, 2018.[5]  Mr. Khashoggi never left the Saudi embassy after arriving on October

10   2 and is widely believed to have been killed there.   But his killers knew Mr. Khashoggi would be

11   at the Istanbul consulate because he made (and kept) an appointment to be there, not from any use

12   of Pegasus.  Exposing the jury to assertions about Jamal Khashoggi, even though they are easily

13   debunked, would unfairly prejudice Defendants.   The Court should exclude such inflammatory

14   allegations under Rules 401, 402, and 403.

15                    **DEFENDANTS' MOTION NO. 7:**

16   **Exclude Evidence of** ████████████████████████ **and Related Information**

17        The Court should exclude as irrelevant and unfairly prejudicial evidence relating to ██

18   ████████████████████  Related press coverage should also be excluded on the

19   additional basis that it is inadmissible hearsay, and the Court should exclude reference to any stolen

20   privileged documents.

21        As the Court knows, ████████████████████████████████████

22   ███████████████████████████████████████████████

23   ███████████████████████████████████████████████

24   ████████████████  (Dkt. 214-3 ¶ 5 & Exh. B.) ████████████████

25   ███████████████████████████████████████████████

26   (*Id.* ¶¶ 4-6 & Exh. B.) ████████████████████████

27   _____

28   [5] *See, e.g.*, Jamal Khashoggi:  All you need to know about Saudi journalist's death, Feb. 24, 2021, https://www.bbc.com/news/world-europe-45812399 (visited Jan. 3, 2025).

1    ███████ (*id.* Exh. C, D), and they plainly ██████████████████████████████

2    ████████████████ (*id.* Exh. C ¶ 4(c)-(e)).

3    ████████████████, Plaintiffs have repeatedly maligned both NSO and NSO's trial

4    counsel, ████████████████████████████. (*See, e.g.*, Plaintiffs' Motion for

5    Sanctions (Dkt. 405-2) at 3-5.)  Worse, Plaintiffs have relied on a handful of press clippings

6    ████████████████████████████████████████—which

7    Plaintiffs admit could be incorrect—to insinuate that NSO and its trial counsel may have made

8    misrepresentations to the Court.  (*See id.*; Dkt. 464 at 84:9-11 ("Public reporting has also suggested,

9    *whether it's true or not, I can't say*, that the NSO specifically went to the Israeli government to

10   seek some protection."); *id.* at 84:24-25 ("So again, that's what's been reported in the press, I can't

11   verify that's true.").)[6]  When NSO addressed this misleading portrayal (*id.* at 91:5-25), Plaintiffs'

12   counsel then attempted to make arguments based on what appears to be a privileged King &

13   Spalding LLP memorandum ████████████████████ (*id.* at 93:5-6).  NSO

14   asserted a claim of continuing privilege over that document months earlier (Akro. Decl. ¶ 2), but

15   Plaintiffs' counsel still tried to use it in open court.

16          The Court should exclude any evidence relating to ████████████████████,

17   as well as ██████████████████████.

18          *First,* ██████████████████████████████████████

19   are not relevant to any issue remaining to be tried by the jury.  Fed. R. Evid. 401.  They are not

20   relevant to Plaintiffs' claims for compensatory damages, which are narrowly focused on

21   investigation costs.  Nor are they relevant to Plaintiffs' claims for punitive damages, which are

22   based on NSO's development and licensing of three versions of Pegasus between 2018 and 2020.[7]

---

[6] The press coverage ramped up sharply shortly after Facebook and WhatsApp claim to have discovered the materials themselves, and Plaintiffs refused to produce any of their communications with the press about these materials.  (*See* Akro. Decl. ¶ 3.)

[7] To the extent Plaintiffs falsely claim that █████████████████████████████ ████████████, they would remain irrelevant.  *See Emuveyan v. Ewing*, 2022 WL 464306, at *3 (D. Utah Feb. 15, 2022) (rejecting "the idea that a party's discovery misconduct (or a court's findings as to such misconduct) is relevant to a punitive damages' claim"); *De Anza Santa Cruz Mobile Ests. Homeowners Ass'n v. De Anza Santa Cruz Mobile Ests.*, 94 Cal. App. 4th 890, 921 (2001) (reversing award of punitive damages that was premised on "improper evidence of defendant's litigation

1  Plaintiffs themselves have conceded as much by refusing to produce related documents and

2  communications on the basis they were irrelevant.  (*See* Akro. Decl. ¶ 3.)

3        *Second*, any limited probative value would be substantially outweighed by the danger of

4  unfair prejudice, confusing the issues, undue delay, and wasting time.  Fed. R. Evid. 403.  Allowing

5  Plaintiffs to introduce media speculation regarding the origins of ███████████████████

6  ████████—and to imply that NSO was seeking to avoid discovery obligations in this lawsuit—

7  risks a jury decision prompted by an "emotional response" rather than consideration of the actual

8  evidence.  *See United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir. 1987) ("Unfair prejudice is

9  measured by the degree to which a jury responds negatively to some aspect of the evidence

10 unrelated to its tendency to make a fact in issue more or less probable.").  It would also needlessly

11 confuse the issues before the jury, particularly given that NSO is ████████████████████

12 ████████████████████████████████████████████████.  (*See* Dkt. 214-3

13 Exh. C ¶ 4, Exh. D.).

14       *Third*, the press articles on which Plaintiffs rely are inadmissible hearsay.  Fed. R. Evid. 803.

15       *Fourth*, the materials posted to ednakarnaval.com and later recirculated by additional media

16 outlets are not authenticated.  But even if they were, any privileged materials (such as memoranda

17 from King & Spalding LLP) would remain protected by the attorney-client privilege and the

18 attorney work-product doctrine.  *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012)

19 (involuntary disclosures do not waive attorney-client privilege); *Dukes v. Wal-Mart Stores, Inc.*,

20 2013 WL 1282892, at *6 (N.D. Cal. Mar. 26, 2013) (leak of memorandum did not waive privilege

21 where company "took reasonable steps to clearly mark the Memo as privileged and to maintain it

22 in a secure location and limit its dissemination"); *Sackman v. Liggett Grp., Inc.*, 173 F.R.D. 358,

23 365 (E.D.N.Y. 1997) ("assertion of privilege . . . is not waived through public disclosure of a stolen

24 privileged document").  NSO informed Plaintiffs, in writing and with citations to relevant legal

25 authorities, that any such King & Spalding memoranda would be privileged.  (Akro. Decl. ¶ 2.)

26 Despite this, and without challenging NSO's assertion of privilege, Plaintiffs attempted to introduce

27

28 conduct"); *Halem Indus., Inc. v. Fasco Indus., Inc.*, 865 F.2d 268 at *2 (Fed. Cir. 1988) (discovery
   conduct "might support a discovery sanction but is not a proper basis for punitive damages").

argument regarding privileged materials at the court hearing in November 2024.  (*See* Dkt. 464 at 93:5-6.)  They should be prevented from attempting to do so before the jury.

███████████████████████████████, the purportedly hacked materials posted to ednakarnaval.com, and any related press articles are wholly irrelevant to the remaining issues for trial, including the amount of any compensatory or other damages Plaintiffs seek to recover (or whether any injunction should be ordered).  They are also unfairly prejudicial and consist mostly of hearsay or privileged information.  All such evidence should be excluded.

### **DEFENDANTS' MOTION NO. 8:**

### **Exclude Evidence of "Black Cube" and Its Purported "Intimidation"**

Black Cube is an Israeli private intelligence firm unassociated with any party to this case. Non-party, non-witness Citizen Lab claims previously to have been "intimidated" by Black Cube and has speculated in the press that Black Cube was acting on behalf of NSO.  Plaintiffs' 30(b)(6) designee, Andrew Robinson, testified that he read a *New York Times* article and had conversations with Plaintiffs' prior counsel in this litigation, to the effect that ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████ Mr. Robinson testified that ██████████████████ ████████████████████████████████████████████████████████████████ Beyond Mr. Robinson's speculation, there is no evidence of any connection between NSO and Black Cube or any interactions between Black Cube and Citizen Lab, and in same article Mr. Robinson referenced, NSO denied any connection. The Court should exclude the Black Cube evidence for several reasons.

*First*, it is inflammatory, and its admission would unfairly prejudice Defendants.  *Walker*, 2014 WL 12577139, at *12-13; *Mariscal*, 2014 WL 4245949, at *2.  *Second*, the Black Cube evidence is irrelevant to the remedies available to Plaintiffs—it does not address costs Plaintiffs purportedly incurred with their investigation of the incident—and it is therefore inadmissible.  Fed. R. Evid. 401, 402. Further, without any evidence that NSO has connections with Black Cube, unsubstantiated speculation about Black Cube cannot be offered as evidence of action by NSO at all, let alone evidence that NSO acted with oppression, fraud, or malice.  Cal. Civ. Code § 3294.

1  Finally, Citizen Lab's out-of-court statements and the *New York Times* article discussing Black

2  Cube are inadmissible hearsay. *See In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *8 (N.D.

3  Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010).   The Court should exclude evidence

4  concerning Black Cube.

**DEFENDANTS' MOTION NO. 9:**

**Exclude Evidence of the Entity List and President Biden's Executive Order**

7       The Court should exclude introduction of testimony regarding (1) the U.S. Department of

8  Commerce, Bureau of Industry and Security ("BIS") placing NSO Group Technologies Ltd. on the

9  "Entity List" and (2) former President Biden's March 27, 2023, Executive Order announcing that

10  the U.S. government would not use certain kinds of commercial spyware.

11      ***Entity List.***  Evidence related to NSO being added to the BIS Entity List—which counsel

12  for Plaintiffs have insisted upon referencing as the "black list," is irrelevant and unfairly prejudicial,

13  and it is inadmissible under Federal Rules 401, 402, and 403.  To begin with, BIS does not regulate

14  either NSO's business or the use of NSO's technology by others.  BIS's jurisdiction is limited to

15  exports and transfers of certain goods and technologies.  The companies on the Entity List are not

16  "blacklisted," but subject to licensing requirements for the exporting or transferring of certain

17  items.[8]  The exporting and transferring of items to NSO is irrelevant to this dispute.  Moreover,

18  NSO was added to the Entity List in November 2021, over two years after this case was filed.

19      Even if evidence of the Entity List or BIS's rationale for adding NSO had some minimal

20  relevance, any "probative value is substantially outweighed by a danger of … unfair prejudice" to

21  NSO.   Fed. R. Evid. 403.   References to the Entity List (particularly referring to it as a

22  "blacklisting") are likely to mislead the jury by leading them to adopt BIS's assessment onto the

23  distinct facts of this case.  The Entity List is developed by the Department of Commerce based on

24  its assessment of U.S. national security standards, while this case deals with computer fraud and

25  breach of contract allegations.  The jury, however, would likely not be able to distinguish between

---

[8] Bureau of Industry and Security, FAQ, *Can I purchase items from a company that is listed on the Entity List?*,   https://www.bis.gov/faqs/can-i-purchase-items-company-listed-entity-list   (last accessed Jan. 3, 2025). A company's inclusion on the Entity List "does not create a prohibition on purchases" from that company. *Id.*

BIS's conclusions—reached under a different legal standard and for a different purpose—and the issues in this case. *See United States v. Pac. Gas & Elec. Co.,* 178 F. Supp. 3d 927, 947-48 (N.D. Cal. 2016) (precluding references to the conclusions and opinion contained in the National Transportation Safety Board report written regarding the defendant where the ultimate issue of NTSB's investigation was not at issue in the case and finding that "admitting the NTSB's conclusions invites the jury to improperly substitute the NTSB's findings" for its own); *Martinelli v. Penn Millers Ins. Co*., 269 F. App'x 226, 229 (3d Cir. 2008) (affirming district court's exclusion of EEOC determination after considering that the fact that it "originated from an authoritative government agency could confuse and mislead the jury and unfairly prejudice [defendant]").[9]

Exposing the jury to NSO's inclusion on the Entity List is especially unfair because NSO had no opportunity to challenge its inclusion on the Entity List, to present any evidence or arguments in its support before being added to the Entity List, or to prove that it did not have a role in any foreign government's misuse of its technology before being added to the Entity List. A request for removal has been made and is currently pending before the Commerce Department. Companies added to the Entity List are exempt from the Administrative Procedure Act's requirement of opportunity for public participation (50 U.S.C. § 4821), meaning that no hearing was held where NSO could present a defense to inclusion on the Entity List. *See Sullivan v. Dollar Tree Stores, Inc*., 623 F.3d 770, 778 (9th Cir. 2010) (excluding Department of Labor report because report's "exhibits are not attached. Its author is unidentified and unknown, making it impossible to assess the author's skill or experience. No hearing was held."). Accordingly, the Court should preclude Plaintiffs from introducing any evidence related to NSO's placement on the Entity List.

***Executive Order.*** Likewise, evidence regarding former President Biden's March 2023 Executive Order is irrelevant and prejudicial. Plaintiffs will try to argue that the Order banned the use of Pegasus in the United States, but that is false. The Order does not mention NSO and does not bar commercial spyware generally. Indeed, it lays out the criteria for determining how certain

---

[9] BIS's decision followed unproven public reporting that Uganda used Pegasus against mobile phones with Ugandan numbers, in Uganda, and that the mobile phones were used by civilian employees of the U.S. Embassy in Uganda. Those reports should also be excluded because they are hearsay, irrelevant, and unduly prejudicial.

1  spyware can be used responsibly.  It would be extremely prejudicial to reference the Order without

2  discussing what Defendants have done both before and after the Executive Order to avoid, mitigate,

3  or remove the risks surveillance technologies can pose as identified in the Order.  Moreover, like

4  the BIS's decision, the Order was not a result of an adjudicative process in which NSO could

5  present a defense or an explanation. *Sullivan*, 623 F.3d at 778. This Court should preclude Plaintiffs

6  from introducing any evidence related to the Executive Order.

7  **DEFENDANTS' MOTION NO. 10:**

8  **Exclude Evidence of Pretrial Sanctions**

9  Evidence concerning pretrial sanctions is irrelevant to the damages available to Plaintiffs

10  and is, therefore, inadmissible. Fed. R. Evid. 402.  District courts have consistently granted motions

11  *in limine* regarding references to pretrial sanctions. *Emuveyan*, 2022 WL 464306, at *3; *De Anza*

12  *Santa Cruz Mobile Ests. Homeowners Ass'n*, 94 Cal. App. 4th at 921; *Halem Indus.*, 865 F.2d at *2;

13  *see also*, *e.g.*, *Pellegrini v. Gooder*, 2012 WL 12893745, at *1 (C.D. Cal. Dec. 6, 2012) (granting

14  motion *in limine* "to exclude all references to the sanction previously imposed on the [d]efendants

15  with regard to discovery disclosures" because it was "not relevant"); *United States v. Cameron-*

16  *Ehlen Grp., Inc.*, 2023 WL 36174, at *8 (D. Minn. Jan. 4, 2023) (granting motion *in limine* to

17  exclude discovery sanctions).

18  Even if the circumstances involving any pretrial sanctions were deemed minimally relevant,

19  their probative value is outweighed by the danger that presenting them to the jury would be

20  confusing, misleading, and would risk significantly and unfairly prejudicing the jury against

21  Defendants.[10]

22  

23  [10] *See Fluor Corp. v. Zurich Am. Ins. Co.*, 2021 WL 3021973, at *5-6 (E.D. Mo. July 16, 2021)
   (holding that references to such sanctions should be precluded from trial for having limited

24  probative value and risk of unfair prejudice to defendant); *Faigin v. Kelly*, 184 F.3d 67, 79 (1st Cir.
   1999) (affirming trial court's exclusion of evidence of sanction order because the probative value

25  was outweighed by the risk that the jury would "give special weight to the judicial finding merely
   because they are judicial findings" and because "courts, recognizing the attendant danger of jury

26  confusion and unfair prejudice, frequently have approved the exclusion of judicial findings,
   convictions, and similar evidence on Rule 403 grounds"); *Mfg. Automation & Software Sys., Inc.*

27  *v. Hughes*, 2019 WL 266970, at *6 (C.D. Cal. Jan. 15, 2019) (excluding references and evidence

28  of discovery sanctions because it "would be improper to provide an additional remedy, in addition
   to the sanction").

1    Moreover, any mention of the discovery sanctions would need to be supplemented with the

2    explanation that Defendants were bound by Israeli legal restrictions that prevented them from

3    producing certain computer code in the United States, which would only confuse the jury, unduly

4    delay the trial, and waste time.  (*See* Defs.' MIL No. 7.)  As a result, any probative value of

5    mentioning discovery sanctions is far outweighed by the risk of confusing and distracting the jury

6    and unfairly prejudicing Defendants.

## II.    <u>CONCLUSION</u>

8    For the foregoing reasons, the Court should grant NSO's Motions *in Limine* Nos. 1-10.

Dated: March 13, 2025                KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG

*Attorneys for Defendants*
NSO GROUP TECHS. LTD. and
Q CYBER TECHS. LTD.

NSO'S MOTIONS IN LIMINE                                Case No. 4:19-cv-07123-PJH