1    JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
       *jakro@kslaw.com*
2    AARON S. CRAIG (Bar No. 204741)
       *acraig@kslaw.com*
3    KING & SPALDING LLP
     633 West Fifth Street, Suite 1600
4    Los Angeles, CA 90071
     Telephone: (213) 443-4355
5    Facsimile: (213) 443-4310

6    Attorneys for Defendants
     NSO GROUP TECHNOLOGIES LIMITED and
7    Q CYBER TECHNOLOGIES LIMITED

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                           OAKLAND DIVISION

11

12   WHATSAPP INC., a Delaware corporation,     Case No. 4:19-cv-07123-PJH
     and FACEBOOK, INC., a Delaware
13   corporation,                               **DEFENDANTS' OPPOSITION TO
                                                PLAINTIFFS' MOTION FOR
14                        Plaintiffs,           PERMANENT INJUNCTION**

15          v.                                  **FILED UNDER SEAL**

16   NSO GROUP TECHNOLOGIES LIMITED             **[REDACTED VERSION OF DOCUMENT
     and Q CYBER TECHNOLOGIES LIMITED,          SOUGHT TO BE SEALED]**
17
                          Defendants.           Judge: Hon. Phyllis J. Hamilton
18
                                                Action Filed: 10/29/2019
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

    A.    Plaintiffs File a Complaint Concerning One Version of Pegasus. ........................ 2

    B.    The Parties Engage in Discovery. ............................................................... 2

    C.    The Court Grants Partial Summary Judgment to Plaintiffs. ................................ 3

III.  ARGUMENT ..................................................................................................... 3

    A.    Plaintiffs' Motion Is Premature and Procedurally Improper ............................. 3

    B.    California Law Bars Any Injunction on Plaintiffs' Contract Claim. ..................... 6

    C.    Plaintiffs Are Not Entitled to a Permanent Injunction on Any Claim. ................ 11

        1.    Plaintiffs Have Not Proved Irreparable Injury. ...................................... 11

        2.    Plaintiffs Have Not Proved They Lack an Adequate Legal Remedy......... 14

        3.    The Balance of Hardships Does Not Favor an Injunction. ....................... 16

        4.    The Public Interest Would Be Disserved by an Injunction........................ 19

    D.    Plaintiffs' Requested Injunction Is Wildly Overbroad............................................ 20

IV.   CONCLUSION .................................................................................................. 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*ACT 898 Prods. v. WS Indus.*,
   5      774 F. App'x 1012 (9th Cir. 2019) ................................................................... 11, 14

6    *Allen v. Campbell*,
   7      2021 WL 737123 (D. Idaho Feb. 25, 2021) ............................................................ 5

8    *Allied Portables, LLC v. Youmans*,
      2015 WL 6813669 (M.D. Fla. Nov. 6, 2015) ................................................... 12, 16

9
   10   *Aubin v. Bonta*,
      665 F. Supp. 3d 1097 (N.D. Cal. 2023) ................................................................... 5

11   *Bansbach Easylift of N.A. v. Reve*,
      2009 WL 10670230 (M.D. Fla. Mar. 25, 2009) ............................................... 12, 16
12

13   *Bass v. First Pac. Networks, Inc.*,
      219 F.3d 1052 (9th Cir. 2000) ................................................................................. 6

14
   15   *Benn v. Allstate Ins. Co.*,
      569 F. Supp. 3d 1029 (C.D. Cal. 2021) ........................................................... 6, 7, 8

16   *Big Country Foods, Inc. v. Bd. of Educ.*,
      868 F.2d 1085 (9th Cir. 1989) ............................................................................... 14
17

18   *Cal. Physicians Serv. v. Healthplan Servs.*,
      2021 WL 879797 (N.D. Cal. Mar. 9, 2021) ..................................................... 6, 9, 10

19
   20   *Castellano Cosmetic Surgery Ctr. v. Rashae Doyle, P.A.*,
      2021 WL 3188432 (M.D. Fla. July 28, 2021) ................................................. 12, 13, 16

21   *Charlton v. Estate of Charlton*,
      841 F.2d 988 (9th Cir. 1988) ................................................................................... 4
22

23   *Chegg v. Doe*,
      2023 WL 7392290 (N.D. Cal. Nov. 7, 2023) .......................................................... 13

24
   25   *Cisneros v. U.D. Registry, Inc.*,
      39 Cal. App. 4th 548 (1995) ............................................................................... 9, 12

26   *Colonial Life & Acc. Ins. Co. v. Stentorians-L.A. Cty. Black Fire Fighters*,
      2014 WL 794571 (C.D. Cal. Feb. 24, 2014) ..................................................... 9, 10
27

28   *Connerly v. Schwarzenegger*,
      146 Cal. App. 4th 739 (2007) ................................................................................ 14

ii

*Corelogic Sols., LLC v. Geospan Corp.*,
   2020 WL 7786537 (C.D. Cal. Aug. 21, 2020) ........................................................................ 18

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,
   789 F.3d 1075 (9th Cir. 2015) ............................................................................................... 12

*Dairy Queen v. Wood*,
   369 U.S. 469 (1962) ................................................................................................................. 4

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
   345 F. Supp. 3d 1207 (E.D. Cal. 2018) .................................................................................. 6

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*,
   466 F.3d 391 (6th Cir. 2006) ................................................................................................... 5

*Densmore v. Manzarek*,
   2008 WL 2209993 (Cal. Ct. App. May 29, 2008) ............................................................. 6, 7

*Dominguez v. Andrew Corp.*,
   2007 WL 4259480 (N.D. Cal. Dec. 4, 2007) ......................................................................... 8

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ............................................................................................................... 12

*Energy Power Co. v. Xiaolong Wang*,
   2013 WL 6234625 (D. Mass. Dec. 3, 2013) ........................................................................ 13

*In re Estate of Ferdinand Marcos Human Rights Litig.*,
   94 F.3d 539 (9th Cir. 1996) ................................................................................................... 23

*Facebook, Inc. v. ILikeAd Media Int'l Co.*,
   2022 WL 2289058 (N.D. Cal. Mar. 15, 2022) ....................................................................... 7

*Facebook, Inc. v. Power Ventures, Inc.*,
   252 F. Supp. 3d 765 (N.D. Cal. 2017) ............................................................................ 13, 18

*Facebook, Inc. v. Sluchevsky*,
   2020 WL 5823277 (N.D. Cal. Aug. 28, 2020) .............................................................. 7, 13, 16

*Fansler Found. v. Am. Realty Investors, Inc.*,
   2007 WL 1302742 (E.D. Cal. May 2, 2007) ........................................................................ 14

*Flow Control Indus. Inc. v. AMHI Inc.*,
   278 F. Supp. 2d 1193 (W.D. Wash. 2003) ............................................................................. 6

*Geertson Seed Farms v. Johanns*,
   570 F.3d 1130 (9th Cir. 2009) ................................................................................................. 5

*Haskell v. Brown*,
   677 F. Supp. 2d 1187 (N.D. Cal. 2009) ............................................................................... 19

iii

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir. 2013)........................................................................ 12, 13, 14

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ...................................................................... 16, 19, 20

*DK Holdings v. Miva, Inc.*,
    2016 WL 4943048 (S.D. Cal. Sept. 16, 2016) ............................................................ 8

*Hunter v. Super. Ct.*,
    36 Cal. App. 2d 100 (1939).......................................................................................... 8

*Int'l Medcom, Inc. v. S.E. Int'l, Inc.*,
    2015 WL 7753267 (N.D. Cal. Dec. 2, 2015) ..................................................... 8, 9, 10

*Jarvis v. State Farm Gen. Ins. Co.*,
    2024 WL 4003319 (C.D. Cal. July 26, 2024) .................................................. 9, 12, 14

*Joshua David Mellberg LLC v. Will*,
    2019 WL 6711480 (D. Ariz. Nov. 25, 2019) ............................................................ 12

*Katzman v. Allstate Ins. Co.*,
    2010 WL 11515454 (C.D. Cal. Feb. 22, 2010)............................................................ 7

*Keene v. City & Cty. of S.F.*,
    2025 WL 341831 (9th Cir. Jan. 30, 2025) .................................................................. 6

*L.A. Mem'l Coliseum Comm'n v. NFL*,
    634 F.2d 1197 (9th Cir. 1980)................................................................................... 11

*Long Beach Drug Co. v. United Drug Co.*,
    13 Cal. 2d 158 (1939) ............................................................................................ 7, 8

*Lydo Enters., Inc. v. City of Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984).................................................................................. 12

*In re MacBook Keyboard Litig.*,
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)........................................................... 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009).................................................................................... 23

*Marriott v. Cnty. of Montgomery*,
    426 F. Supp. 2d 1 (N.D.N.Y. 2006) ........................................................................... 6

*Meta Platforms, Inc. v. Ates*,
    2023 WL 4035611 (N.D. Cal. May 1, 2023) ............................................................ 13

*Meta Platforms, Inc. v. Nguyen*,
    2023 WL 8686878 (N.D. Cal. Aug. 22, 2023) .................................................... 13, 22

iv

*Meta Platforms, Inc. v. Nguyen*,
2023 WL 8686924 (N.D. Cal. Aug. 22, 2023)................................................................... 7

*Mulcahy v. Cheetah Learning LLC*,
386 F.3d 849 (8th Cir. 2004)............................................................................................ 22

*Mycogen Corp. v. Monsanto Co.*,
28 Cal. 4th 888 (Cal. Ct. App. 2002) ................................................................................ 9

*Nida v. Allcom*,
2020 WL 2405251 (C.D. Cal. Mar. 11, 2020) ................................................................ 15

*Open Text, S.A. v. Box, Inc.*,
36 F. Supp. 3d 885 (N.D. Cal. 2014) ............................................................................... 12

*PDF Print Commc'ns Inc. v. Fed. Mut. Ins. Co.*,
2022 WL 2189631 (C.D. Cal. Mar. 29, 2022) .............................................................. 7, 8

*Price v. City of Stockton*,
390 F.3d 1105 (9th Cir. 2004).......................................................................................... 20

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991)............................................................................................ 11

*Rep. of the Philippines v. Pimentel*,
553 U.S. 851 (2008).......................................................................................................... 22

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992)............................................................................................ 2

*San Miguel Pure Foods Co. v. Ramar Int'l Corp.*,
625 F. App'x 322 (9th Cir. 2015) .................................................................................... 12

*Simon Prop. Grp., LP v. mySIMON, Inc.*,
282 F.3d 986 (7th Cir. 2002)............................................................................................ 12

*Sims Snowboards, Inc. v. Kelly*,
863 F.2d 643 (9th Cir. 1988).............................................................................................. 6

*Softketeers, Inc. v. Regal W. Corp.*,
2023 WL 2024701 (C.D. Cal. Feb. 7, 2023)............................................................... 17, 18

*Sprint Nextel Corp. v. Welch*,
2014 WL 68957 (E.D. Cal. Jan. 8, 2014).................................................................. 12, 21, 22

*Sprint Sols., Inc. v. Cell Wholesale, Inc.*,
2015 WL 13919095 (C.D. Cal. Dec. 10, 2015) .......................................................... 21, 22

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009)..................................................................................... 19, 20

v

*Thayer Plymouth Ctr. v. Chrysler Motors Corp.*,
    255 Cal. App. 2d 300 (1967) ............................................................................... 8

*Ubisoft, Inc. v. Kruk*,
    2021 WL 3472833 (C.D. Cal. July 9, 2021) ...................................................... 20

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
    982 F.2d 363 (9th Cir. 1992) .............................................................................. 15

*Union Oil Co. of Cal. v. Greka Energy Corp.*,
    165 Cal. App. 4th 129 (Cal. Ct. App. 2008) ...................................................... 9

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) .......................................................................... 4, 5

*ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*,
    2024 WL 1984897 (W.D.N.Y. May 6, 2024) ........................................... 9, 12, 16

*W. Watersheds Project v. Abbey*,
    719 F.3d 1035 (9th Cir. 2013) ........................................................................... 11

*Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*,
    2003 WL 27384425 (C.D. Cal. Mar. 31, 2003) .............................................. 9, 10

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ..................................................................................... 16, 19

*White v. Univ. of Cal.*,
    2012 WL 12335354 (N.D. Cal. Oct. 9, 2012) .................................................. 23

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ......................................................................................... 12, 19

**Statutes**

Cal. Civ. Code § 526(b)(5) ...................................................................................... 6, 7

Cal. Civ. Code § 3386(b) ............................................................................................ 10

Cal. Civ. Code § 3390(e) .................................................................................... 8, 9, 10

Cal. Civ. Code § 3423(e) ........................................................................................... 6, 7

**Other Authorities**

Fed. R. Civ. P. 19 ...................................................................................................... 22

Fed R. Civ. P. 65(d) .................................................................................................. 22

1

## I.    INTRODUCTION

2      Plaintiffs seek an extraordinarily overbroad injunction that does not track their claims in

3 this case, the Court's summary judgment order, or the conduct that this Court found to be unlawful.

4 As the Court has recognized, this case involves three defunct versions of NSO's "Pegasus"

5 technology.  The Court ruled that those versions violated the CFAA and CDAFA because they

6 installed Pegasus on end devices by sending emulated messages through WhatsApp servers.  The

7 Court also held that NSO breached WhatsApp's Terms of Service by decompiling and reverse-

8 engineering WhatsApp to design the vectors at issue.  But Plaintiffs' proposed injunction goes far

9 beyond those narrow holdings.  Instead of seeking to enjoin the use of WhatsApp servers to install

10 Pegasus, Plaintiffs seek an injunction that reaches the use of *any* technology to collect data from

11 the phones of *any* user of *any* of Plaintiffs' platforms, without regard to whether that technology

12 uses WhatsApp servers in any way.  Such an injunction would prohibit lawful conduct that

13 Plaintiffs have never challenged in this case.  It would force NSO out of business.  And, it would

14 arrogate to this Court the power to dictate permissible law-enforcement, counterterrorism, and

15 military surveillance techniques for every country in the world.  If the Court issues the injunction

16 Plaintiffs request, it will unilaterally force numerous foreign governments to "go dark" on lawful,

17 authorized surveillance of criminal and terrorist suspects in their own countries.  That result is both

18 bad for the world and beyond the legal limits of what a U.S. court could properly enjoin.

19      Plaintiffs' injunction is improper and overbroad for other reasons, as well.  ***First***,

20 Defendants NSO Group and Q Cyber ("NSO") are entitled to an evidentiary hearing before the

21 entry of any injunction.  ***Second***, California law does not permit WhatsApp to seek an injunction

22 for the breach of its terms of service, negating many of the proposed injunction terms.  ***Third***,

23 WhatsApp and Facebook are not entitled to the extraordinary remedy of an injunction.  Plaintiffs

24 cannot establish irreparable harm, having long ago disclaimed any loss of goodwill or reputational

25 harm so as to avoid discovery into their numerous scandals and lawsuits.  To the contrary, Plaintiffs

26 can be adequately compensated by monetary damages, and there is no reasonable risk of future

27 harm.  ***Fourth***, Plaintiffs' injunction is not tethered to the facts of this case, let alone tailored to

28 them.  For all these reasons and others, no injunction should issue.

1    **II.    BACKGROUND**

2        **A.    Plaintiffs File a Complaint Concerning One Version of Pegasus.**

3        Plaintiffs filed their complaint on October 29, 2019 (Dkt. 1).  NSO voluntarily appeared in

4    March 2020 (Dkt. 23).  The complaint alleged that NSO had unlawfully installed one version of its

5    Pegasus technology via WhatsApp servers "in and around April 2019 and May 2019."  (Dkt. 1 ¶ 1.)

6    NSO moved to dismiss the complaint (Dkt. 45) and later moved to dismiss Plaintiffs' request for

7    injunctive relief for lack of standing (Dkt. 105).  At that stage of the case, NSO argued only that

8    *Plaintiffs' allegations* did not support a conclusion that "NSO has unlawfully accessed WhatsApp's

9    servers or users' devices since May 13, 2019."  (Dkt. 105 at 5.)  The Court denied NSO's motion

10   pending discovery.  (Dkt. 165.)

11       **B.    The Parties Engage in Discovery.**

12       At the start of discovery, NSO moved for a protective order under *Richmark Corp. v. Timber*

13   *Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992), arguing it should not have to produce information

14   ████████████████████████████████████████.  (Dkt. 186.)  This Court denied "a

15   blanket order excusing [NSO] from all discovery," but it "concluded that [NSO] may be partially

16   excused from certain discovery obligations."  (Dkt. 292 at 2 (citing Dkt. 233).)  The Court held it

17   would consider individual motions to compel to decide whether Plaintiffs sought information that

18   was "sufficiently important and specific" ████████████████████████.  (Dkt. 233 at 10.)

19       Plaintiffs then filed a motion to compel evidence of NSO's technology.  The Court granted

20   that motion but limited the "documents that must be produced" in several important respects.  (Dkt.

21   292 at 3-4.)  First, the Court limited discovery to NSO technologies "targeting or directed at

22   WhatsApp servers, or using WhatsApp in any way to access Target Devices."  (*Id.* at 3.)  Second,

23   the Court limited "the timeframe of documents that must be produced" to the period "from April

24   29, 2018, to May 10, 2020."  (*Id.* at 4.)  The Court held that "[i]f, after reviewing the relevant

25   spyware from that timeframe, plaintiffs are able to provide evidence that any attack lasted beyond

26   that timeframe, plaintiffs may seek further discovery at that time."  (*Id.*)

27       NSO complied with the Court's order ████████████████████████████

28   ████████████████████████████████████████████████████████████

1    ███████████████████████████████████. (Shohat Decl. ¶ 6.) Those three vectors

2    were internally referenced as Heaven, Eden, and Erised. (*Id.*)  Heaven, Eden, and Erised made use

3    of preexisting vulnerabilities that have all been eliminated and can no longer be exploited by anyone

4    – including NSO and its government customers.  (Gazneli Decl. ¶ 5.)

5          Under the Court's limitation on the "timeframe" for discovery, NSO properly did not

6    produce discovery related to versions of Pegasus after May 10, 2020.  (Dkt. 292 at 4.)  The Court

7    invited Plaintiffs to move to compel based on "evidence that any attack lasted beyond that

8    timeframe," (*id*), but Plaintiffs never filed such a motion to compel.  Accordingly, the Court never

9    ordered NSO to produce evidence of Pegasus versions beyond May 10, 2020.  Nonetheless, NSO's

10   CEO testified unambiguously that NSO no longer has *any* "installation vector for Pegasus . . . that

11   uses [Plaintiffs'] technology in any way."  (Dkt. No. 396-5, Akro. Decl. Exh. H at 51:23-52:2; *see

12   also* Shohat Decl. ¶ 8.)  That testimony is uncontroverted.

13         **C.    The Court Grants Partial Summary Judgment to Plaintiffs.**

14         After the close of discovery, the parties cross-moved for summary judgment.  Plaintiffs

15   sought partial summary judgment *only* on liability.  Accordingly, they submitted evidence solely

16   related to their claims about NSO's past conduct.  This Court relied on that evidence of past conduct

17   in granting Plaintiffs' motion, making a small number of findings that held NSO liable on narrow

18   grounds.  With respect to Plaintiffs' CFAA and CDAFA claims, the Court found NSO liable *solely*

19   because the relevant Pegasus vectors "obtain[ed] information about the target user's device via the

20   WhatsApp servers."  (Dkt. 494 at 12-13.)  With respect to Plaintiffs' contract claims, the Court

21   found NSO violated WhatsApp's Terms of Service ("Terms") *solely* by "reverse-engineering

22   and/or decompiling" the "WhatsApp software."  (*Id.* at 14-15.)[1]

23   **III.    ARGUMENT**

24         **A.    Plaintiffs' Motion Is Premature and Procedurally Improper.**

25         As this Court recently stated, the "general practice" in federal court is to resolve motions

26   _____

27         [1] Contrary to Plaintiffs' motion, the Court did *not* find that NSO breached the Terms by "sending
     'harmful code,'" "collecting user information," "accessing or attempting to access WhatsApp
     without authorization," or "using WhatsApp for illegal purposes."  (*Id.* at 13.)  In that section of
28   the order, the Court simply described *Plaintiffs' claims*.  In finding liability, the Court relied only
     on its finding that NSO decompiled and/or reverse-engineered WhatsApp.  (*Id.* at 14-15.)

1    for injunctive relief "after trial." (Dkt. 577 at 2.)  That is because the entry of an injunction generally

2    requires an evidentiary hearing.  *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988).

3    Plaintiffs do not disagree—nor could they.  It "is a cardinal principle of our system of justice that

4    factual disputes must be heard in open court and resolved through trial-like evidentiary

5    proceedings."  *United States v. Microsoft Corp.*, 253 F.3d 34, 101 (D.C. Cir. 2001).  That

6    "significant procedural step" may be eliminated *only* when the adverse party waives its right to a

7    hearing or when there are no factual disputes.  *Charlton*, 841 F.2d at 989.  NSO has neither waived

8    nor received such a hearing; a summary adjudication of liability "does not substitute for a relief-

9    specific evidentiary hearing." *Microsoft*, 253 F.3d at 101.[2]

10        Plaintiffs nonetheless claim this Court can enter a permanent injunction without giving NSO

11    any opportunity to present evidence because, Plaintiffs say, the relevant facts are undisputed.  That

12    is simply false.  As previously discussed in NSO's Administrative Motion to Continue (Dkt. No.

13    560 at 1-3), most of the significant "facts" Plaintiffs cite in their motion are disputed, and NSO

14    would submit evidence to dispute them at a hearing.  NSO would also present evidence on other

15    points, which Plaintiffs would no doubt dispute.

16    • Plaintiffs argue that they are at risk of future harm because one of NSO's co-founders

17        publicly disagreed with the Court's ruling on liability and defended the company's products

18        as "important and essential" (Mot. 9).  NSO disputes that those statements reflect any risk

19        of future harm.  A statement merely disagreeing with the Court's order in no way suggests

20        that NSO would *defy* that order. NSO's CEO will testify that NSO has no intention of

21        developing any technology that uses WhatsApp as an installation vector (Shohat Decl. ¶ 9).[3]

22    • Plaintiffs argue they are at risk of future harm because NSO continues to market and sell

23        "Pegasus" generally (Mot. 9).  That is false.  Pegasus is an entire suite of products, the

24        existing versions of which do not use WhatsApp as an installation vector (Shohat Decl. ¶ 5).

---

26    [2] It is also black-letter law that where there are common issues of fact, "legal claims involved in
27    the action must be determined prior to any final court determination of [] equitable claims."  *Dairy
      Queen v. Wood*, 369 U.S. 469, 479 (1962).  That requires this Court to wait until after the trial on
      Plaintiffs' claim for legal damages to address injunctive relief.

28    [3] By presenting evidence in opposition to Plaintiffs' motion, NSO does not waive its right to an
      evidentiary hearing.  *Charlton*, 841 F.2d at 989.

NSO's witnesses will testify that the three versions of Pegasus deemed relevant by the Court are no longer operational and cannot be revived (Gazneli Decl. ¶ 5), and that NSO currently has no products that use Plaintiffs' technologies as an installation vector (Shohat Decl. ¶ 8).

- Plaintiffs argue they are at risk of future harm because there is no evidence that NSO has deleted the "WIS" (Mot. 12 -13). NSO disputes that risk. Its witnesses will testify at hearing that the WhatsApp vulnerabilities underlying Heaven, Eden, and Erised have all been closed, that NSO has no ability to re-open them with or without the "WIS," and that NSO does not have (or intend to build) any installation vector for Pegasus that uses WhatsApp as an installation vector (Gazneli Decl. ¶¶ 3-5; Dkt. No. 396-5, Akro Decl. Exh. H at 51:23-52:2; Shohat Decl. ¶¶ 8-9).

- NSO intends to introduce evidence at hearing that, as explained in more detail below, Plaintiffs' overbroad proposed injunction would force NSO out of business by prohibiting legal conduct. (Shohat Decl. ¶¶ 10-13). Plaintiffs would presumably dispute that hardship.

- NSO will also introduce evidence at hearing regarding the public benefits of technologies like Pegasus, which aid governments in identifying, investigating, thwarting, and prosecuting criminals and terrorists who use encryption technology to commit crimes ((Dkt. No. 421-4 ¶ 5 & Ex. A ("Shepard Statement") ¶¶ 23-30; Minkler Decl. Exh. A ("Minkler Statement") ¶¶ 1, 35, 41-49, 55-62). Plaintiffs would presumably disagree.

Given these plain disputes of fact, the Court must hold a hearing before imposing any injunction in this action. *Microsoft*, 253 F.3d at 101. Plaintiffs present no post-*Microsoft* authority to the contrary.[4] The Court should deny Plaintiffs' motion for that reason alone.

---

[4] *See Geertson Seed Farms v. Johanns*, 570 F.3d 1130, 1139-40 (9th Cir. 2009) (noting that proceedings seeking injunctions under National Environmental Policy Act are exempt from the *Microsoft* rule for "normal" injunctive requests and that, regardless, the district court held two hearings on the scope of injunctive relief and took live testimony); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 466 F.3d 391, 394 (6th Cir. 2006) (permanent injunction entered following a hearing "consolidated with a trial on the merits"); *Aubin v. Bonta*, 665 F. Supp. 3d 1097, 1100 (N.D. Cal. 2023) (the parties *agreed* to a procedural proposal resulting in cross-motions for summary judgment or, in the alternative, on a preliminary injunction); *Allen v. Campbell*, 2021 WL 737123, at *3 (D. Idaho Feb. 25, 2021) (holding, contrary to Plaintiffs' representation, a hearing at which the "parties presented various exhibits, witnesses, and

5

### B.    California Law Bars Any Injunction on Plaintiffs' Contract Claim.

Much of Plaintiffs' requested injunction relates to their claim for breach of contract, but they may not receive *any* injunction related to that claim.  Accordingly, this Court should deny these parts of Plaintiffs' proposed injunction—including Paragraphs 3(a), 3(e), and 4 (to the extent the provisions prohibit more than the conduct found to violate CFAA and CDAFA), as well as Paragraphs 3(b), 3(c), 3(d), and 3(g).

As a general matter, "California law precludes a court from ordering an injunction to prevent the breach of a contract." *Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1038 (C.D. Cal. 2021).  Two separate California statutes expressly provide that "[a]n injunction *cannot be granted* . . . [t]o prevent the breach of a contract the performance of which would not be specifically enforced." Cal. Civ. Proc. Code § 526(b)(5) (emphasis added); Cal. Civ. Code § 3423(e) ("An injunction may not be granted . . . [t]o prevent the breach of a contract the performance of which would not be specifically enforced").  That prohibition on injunctive relief for breach of contract claims applies in federal court. *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988).[5]

Plaintiffs do not so much as acknowledge Civil Procedure Code § 526(b)(5) or Civil Code § 3423(e).  Instead, they rely entirely on the "general grounds permitting an injunction" in other contexts. *Cal. Physicians Serv. v. Healthplan Servs.*, 2021 WL 879797, at *4 (N.D. Cal. Mar. 9, 2021).  "That will not do." *Id.*[6]  Plaintiffs' entitlement to injunctive relief on their contract claim depends

---

arguments"); *Marriott v. Cnty. of Montgomery*, 426 F. Supp. 2d 1, 10-11 (N.D.N.Y. 2006) (class action involving a motion for "a permanent injunction identical to the preliminary injunction," with no record of any hearing being requested by either party); *Flow Control Indus. Inc. v. AMHI Inc.*, 278 F. Supp. 2d 1193, 1202 (W.D. Wash. 2003) (no indication of hearing request).

[5] A "federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state." *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000); *see Keene v. City & Cty. of S.F.*, 2025 WL 341831, at *1 (9th Cir. Jan. 30, 2025) ("California law governs . . . whether injunctive relief is appropriate.").

[6] The cases Plaintiffs cite do not support a contrary conclusion. *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1225-26 (E.D. Cal. 2018), simply mentioned in dicta that it could be "possible for plaintiffs . . . to obtain monetary damages and injunctive relief for the subsequent use or disclosure of a trade secret as part of a breach of contract/settlement claim." *Deerpoint* did not acknowledge or discuss Civil Procedure Code § 526(b)(5) or Civil Code § 3423(e), and it cited a *concurring opinion* from an unpublished California case. *Id.* (citing *Densmore v. Manzarek*, 2008 WL 2209993, at *47 (Cal. Ct. App. May 29, 2008) (Egerton, J., concurring in part and dissenting in part)).  The actual opinion in *Densmore* affirmed an injunction

---

DEFENDANTS' OPPOSITION TO                                    CASE NO. 5:24-cv-04660-EJD
MOTION FOR PERMANENT INJUNCTION

1    entirely on Civil Procedure Code § 526(b)(5) and Civil Code § 3423(e), so Plaintiffs must prove

2    they are entitled to an injunction under those statutes. *Id.*  They do not even try, so they have

3    waived any such argument.

4        Even had they tried, Plaintiffs could not justify an injunction for breach of contract.  To do

5    so, Plaintiffs must prove that WhatsApp's Terms could "be specifically enforced."  Cal. Civ. Proc.

6    Code § 526(b)(5); Cal. Civ. Code § 3423(e).  That requires Plaintiffs to prove that they could

7    receive "specific performance" of the Terms.  *E.g.*, *Long Beach Drug Co. v. United Drug Co.*, 13

8    Cal. 2d 158, 168-70 (1939); *Katzman v. Allstate Ins. Co.*, 2010 WL 11515454, at *2 (C.D. Cal. Feb.

9    22, 2010).  Plaintiffs cannot do so.

10       ***First***, specific performance is available only for "affirmative covenants" in a contract—that

11   is, requirements *affirmatively to perform* some act, such as selling a house or other piece of property.

12   *Long Beach Drug*, 13 Cal. 2d at 168.  Only when a contract has such "affirmative covenants" may a

13   plaintiff receive an injunction preventing the violation of a corresponding "negative covenant."  *Id.*[7]

14   When a plaintiff seeks only "to prohibit future breaches of contract," injunctive relief is unavailable.

15   *PDF Print Commc'ns Inc. v. Fed. Mut. Ins. Co.*, 2022 WL 2189631, at *4 (C.D. Cal. Mar. 29, 2022);

16   *see Benn*, 569 F. Supp. at 1038; *Katzman*, 2010 WL 11515454, at *2; *Long Beach*, 13 Cal. 2d at 170.

17       Plaintiffs do not seek specific performance of the Terms and identify no provision that *could*

18   be subject to specific performance.  The Terms contain no "affirmative covenants" requiring NSO

19   affirmatively to engage in any particular conduct.  *Long Beach*, 13 Cal. 2d at 168.  Plaintiffs seek

20   only to enforce *negative* covenants *prohibiting* certain conduct.  (Mot. 22.)  "[T]here could be no

21   decree of specific performance" with respect to those prohibitions, and so no injunction either.

22   *Long Beach*, 13 Cal. 2d at 170.

23

24   under California's unfair competition law, not for breach of contract.  2008 WL 2209993, at *26-27.
     Other cases are unpublished default judgments that likewise did not engage with Civil Procedure

25   Code § 526(b)(5) or Civil Code § 3423(e).  *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at
     *11 (N.D. Cal. Aug. 22, 2023); *Facebook, Inc. v. ILikeAd Media Int'l Co.*, 2022 WL 2289058, at

26   *1 (N.D. Cal. Mar. 15, 2022); *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277, at *10 (N.D. Cal.

27   Aug. 28, 2020).
         [7] For example, if the defendant breaches a contract to sell the plaintiff real property, the plaintiff

28   could receive specific performance compelling the sale of the real property and an injunction
     prohibiting the defendant from selling the real property to anyone else.

7

*Second*, specific performance is not available when it would be impractical because the performance "cannot be consummated by one transaction, but will be continuous and require protracted supervision." *Long Beach Drug*, 13 Cal. 2d at 171.[8]  Courts likewise disfavor "injunctions that would require supervision from the court for many years or for an indefinite period." *Benn*, 569 F. Supp. 3d at 1038 (cleaned up).  Here, WhatsApp's Terms do not contemplate a single transaction but instead create an ongoing relationship of indefinite length between WhatsApp and its users.  Plaintiffs, accordingly, seek to impose *continuing* obligations requiring NSO to refrain *forever* from creating WhatsApp accounts, using Plaintiffs' platforms, decompiling or reverse-engineering WhatsApp, and so on.  Such an injunction "to prohibit future breaches of contract" is "unworkable and entirely unpoliceable" because it "would require detailed or day to day judicial supervision of" NSO's operations.  *PDF Print Commc'ns*, 2022 WL 2189631, at *4.  Indeed, Plaintiffs' proposed injunction expressly *anticipates* such supervision.  (Dkt. 558-3 ¶ 7.)  Such "long-term, continuous" contractual obligations should not be imposed through specific performance or an injunction.  *Dominguez*, 2007 WL 4259480, at *4.

*Third*, a party may not receive specific performance of "[a]n agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable."  Cal. Civ. Code § 3390(e).  "A greater degree or amount of certainty is required in the terms of an agreement which is to be specifically performed in equity than is necessary in a contract which is the basis of an action at law for damages."  *Hunter v. Super. Ct.*, 36 Cal. App. 2d 100, 111 (1939); *accord Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, 2015 WL 7753267, at *2-3 (N.D. Cal. Dec. 2, 2015); 58 Cal. Jur. 3d Specific Performance § 15. The contractual provisions Plaintiffs seek to enforce lack the "definiteness" required to support "a prohibitory injunction."  *Hunter*, 36 Cal. App. 2d at 111.  For example, Plaintiffs seek to enforce provisions prohibiting "harmful code" and "illegal" conduct.  (Mot. 22.)  But the Terms do not define those or other key terms.  Parties can reasonably disagree over what conduct is "harmful" or "illegal," illegality can vary from jurisdiction to jurisdiction, and

---

[8] *Accord PDF Print Commc'ns*, 2022 WL 2189631, at *4; *DK Holdings v. Miva, Inc.*, 2016 WL 4943048, at *5-6 (S.D. Cal. Sept. 16, 2016); *Dominguez v. Andrew Corp.*, 2007 WL 4259480, at *4 (N.D. Cal. Dec. 4, 2007); *Thayer Plymouth Ctr. v. Chrysler Motors Corp.*, 255 Cal. App. 2d 300, 303-04 (1967); 58 Cal. Jur. 3d Specific Performance § 43.

1    the relevant provisions do not specify any "precise act" NSO must perform.  Cal. Civ. Code § 3390(e).

2    Such nonspecific provisions may not be enforced through specific performance or an injunction.[9]

3          **Fourth**, "a party may not obtain both specific performance and damages for the same breach

4    of contract, either in single or multiple actions." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888,

5    905 (Cal. Ct. App. 2002); *see* 58 Cal. Jur. 3d Specific Performance § 3.  Because Plaintiffs are

6    seeking damages for breach of WhatsApp's Terms, they may not also seek specific performance.

7          **Finally**, even if specific performance were not categorically unavailable, Plaintiffs cannot

8    satisfy the multi-factor test governing whether specific performance is appropriate.  To receive

9    specific performance, a plaintiff must prove: "(1) the inadequacy of [its] legal remedy; (2) an

10   underlying contract that is both reasonable and supported by adequate consideration; (3) the

11   existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable

12   the court to know what it is to enforce; and (5) a substantial similarity of the requested performance

13   to that promised in the contract." *Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*,

14   2003 WL 27384425, at *24 (C.D. Cal. Mar. 31, 2003); *see also Union Oil Co. of Cal. v. Greka*

15   *Energy Corp.*, 165 Cal. App. 4th 129, 134 (Cal. Ct. App. 2008).  Plaintiffs make no attempt to

16   satisfy these elements, and they cannot do so.

17         Plaintiffs plainly have an adequate legal remedy in the form of money damages. They are

18   seeking damages for NSO's past conduct, and "[i]njunctions should not be granted as punishment

19   for past acts." *Cisneros v. U.D. Registry, Inc*., 39 Cal. App. 4th 548, 574 (1995).  As for future

20   harm, Plaintiffs claim "only the potential harm of future breaches of contract," which is

21   "insufficient" to demonstrate "irreparable injury which cannot be remedied through money

22   damages." *Jarvis v. State Farm Gen. Ins. Co.*, 2024 WL 4003319, at *6 (C.D. Cal. July 26, 2024);

23   *see also ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, 2024 WL 1984897, at *2-3 (W.D.N.Y. May

24

---

25      [9] *See Cal. Physicians*, 2021 WL 879797, at *4 (denying injunction for contract that "did not

26   define" the "core term" to be enforced); *Int'l Medcom*, 2015 WL 7753267, at *2-3 (denying
     injunction for contract that did "not define" the relevant terms or "clarify" what those terms

27   specifically required); *Colonial Life & Acc. Ins. Co. v. Stentorians-L.A. Cty. Black Fire Fighters*,
     2014 WL 794571, at *8 (C.D. Cal. Feb. 24, 2014) (denying specific performance of contract

28   requiring defendant to "reasonably cooperate with and assist [plaintiff] in transitioning the
     collection of . . . insurance premiums" because that requirement was not "sufficiently certain").

9

6, 2024) (under California law, denying injunction because "past and future breaches [of contract] are adequately compensated through money damages").

Next, WhatsApp's Terms are neither "reasonable" nor "sufficiently definite to enable the court to know what it is to enforce." *Warner Bros.*, 2003 WL 27384425, at *24. The Terms are not reasonable because (as the Court has held) they are a "contract of adhesion" that NSO "had no ability to negotiate." (Dkt. No. 111 at 27.) A "one-sided" contract should not be enforced through specific performance. 58 Cal. Jur. 3d Specific Performance § 32. And the Terms are not sufficiently definite because, as explained above, they use vague, undefined language that does not require any "precise act." Cal. Civ. Code § 3390(e); *see Cal. Physicians*, 2021 WL 879797, at *4; *Int'l Medcom*, 2015 WL 7753267, at *2-3; *Colonial Life*, 2014 WL 794571, at *8.

The Terms also lack mutuality of remedies. A contract has sufficient mutuality to support specific performance when the plaintiff's "concurrent or future performance" of the contract "is assured." Cal. Civ. Code § 3386(b). The opposite is true here, where the injunction Plaintiffs seek would prohibit NSO from ever again using WhatsApp and thus would guarantee that Plaintiffs will *not* perform their end of the bargain under WhatsApp's Terms, which require WhatsApp to provide access to its platform. For NSO to be bound by the Terms, NSO must be a party to them and entitled to use WhatsApp. If Plaintiffs bar NSO from signing up for and using WhatsApp, then NSO is not a party to the Terms and cannot be bound by (or violate) their restrictions in the future. Plaintiffs cannot have it both ways.

For similar reasons, there is no "substantial similarity of the requested performance to that promised in the contract." *Warner Bros.*, 2003 WL 27384425, at *24. There is no conceivable contractual basis for Plaintiffs to seek *both* (1) to prohibit NSO from using WhatsApp *and* (2) to prohibit future violations of the Terms. If NSO cannot use WhatsApp, then it cannot be bound by the Terms' prohibitions on otherwise lawful conduct such as decompiling or reverse-engineering.[10] Moreover, Plaintiffs seek to prohibit NSO from using *any* of Plaintiffs' platforms, not just WhatsApp. (Mot. 19-20.) But WhatsApp's Terms say nothing about Plaintiffs' other platforms,

---

[10] Plaintiffs admit someone can download, decompile, and reverse-engineer WhatsApp without ever agreeing to WhatsApp's Terms. (Dkt. 419-5, Exh. B at 111:15-114:6.) That would not even arguably be illegal.

DEFENDANTS' OPPOSITION TO
MOTION FOR PERMANENT INJUNCTION

CASE NO. 5:24-cv-04660-EJD

1    which are not at issue in this case.  Plaintiffs submit no evidence that NSO has ever agreed to or

2    breached the terms governing platforms other than WhatsApp.

3                **C.    Plaintiffs Are Not Entitled to a Permanent Injunction on Any Claim.**

4            In any event, Plaintiffs cannot receive a permanent injunction for *any* of their claims because

5    they lack evidence to satisfy the requirements for such relief.  To receive "a permanent injunction,

6    a party must show '(1) that it has suffered an irreparable injury; (2) that remedies available at law,

7    such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

8    balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4)

9    that the public interest would not be disserved by a permanent injunction.'"  *W. Watersheds Project*

10   *v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013).  Plaintiffs do not and cannot make these showings.

11               **1.    Plaintiffs Have Not Proved Irreparable Injury.**

12           Plaintiffs have not met their "burden to demonstrate irreparable harm" because they do not

13   claim to have suffered any injury other than financial loss, and "'economic injury alone does not

14   support a finding of irreparable harm, because such injury can be remedied by a damage award.'"

15   *ACT 898 Prods. v. WS Indus.,* 774 F. App'x 1012, 1015-16 (9th Cir. 2019) (quoting *Rent-A-Center,*

16   *Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).  Plaintiffs'

17   only alleged harms are investigatory and remediation expenses.  (Dkt. 494 at 15.)  Plaintiffs do not

18   claim any form of non-monetary injury, such as reputational harm or loss of goodwill.  In fact, they

19   have expressly abandoned any claim to such harms "in support of . . . injunctive relief." (Dkt. 591

20   at 12; *see also* Akro. Decl. Exh. A; Dkt. 180-2, Exh. B.)

21           It is "well-established" that "monetary injury is not normally considered irreparable."  *L.A.*

22   *Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980).  That is true even where

23   (unlike here) a plaintiff proves it is likely to suffer monetary harm in the future.  *See In re MacBook*

24   *Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (holding even "continuing"

25   monetary harm is not irreparable).  Plaintiffs do not claim or prove that any injury they assert they

26   could suffer in the future would be any different than the monetary harm they claim to have suffered

27   in the past.  Even if Plaintiffs could prove that such "future harm" were likely, that harm could "be

28

DEFENDANTS' OPPOSITION TO                                    CASE NO. 5:24-cv-04660-EJD
MOTION FOR PERMANENT INJUNCTION

redressed by money damages." *Jarvis*, 2024 WL 4003319, at *6.[11]

In addition, Plaintiffs filed this case more than five years ago, and they *never* previously sought an injunction. That "failure to pursue a preliminary injunction," which Plaintiffs make no effort to explain,[12] "undermines their allegation of irreparable harm today." *Joshua David Mellberg LLC v. Will*, 2019 WL 6711480, at *14 (D. Ariz. Nov. 25, 2019).[13]

Because Plaintiffs cannot show irreparable injury through evidence, they assert that *any* past CFAA violation is *always* irreparable injury that supports injunctive relief. (Mot. 8.) That is absurd on its face: "Injunctions should not be granted as punishment for past acts." *Cisneros*, 39 Cal. App. 4th at 574. And the Supreme Court and Ninth Circuit have repeatedly held that courts *may not* presume irreparable injury from the mere fact of a statutory violation.[14]

As a result, the Ninth Circuit has held that a finding of irreparable injury must *always* be "grounded in evidence" specific to each case. *Herb Reed*, 736 F.3d at 1250. Courts may not rely, as Plaintiffs do here, on "platitudes," "cursory or conclusory" assertions of harm, or "citation to a different case with a different record." *Id.* Applying these rules, courts have not hesitated to deny injunctions when a past CFAA violation does not cause future irreparable injury. *Sprint Nextel Corp. v. Welch*, 2014 WL 68957, at *7-9 (E.D. Cal. Jan. 8, 2014), *report and recommendation adopted*, 2014 WL 2106683 (E.D. Cal. May 20, 2014).[15]

Sure enough, then, none of the cases Plaintiffs cite adopts or supports a rule of *per se*

---

[11] *See ValveTech*, 2024 WL 1984897, at *2-3 (denying injunction under California law because "past and future breaches [of contract] are adequately compensated through money damages," and "bare concern" over future use of "[p]roprietary [i]nformation . . . cannot justify injunctive relief").

[12] Plaintiffs might try to argue that they were unaware of Erised at the time they filed suit, but that would be insufficient, when they did not seek any injunction when they *did* learn about Erised, long ago.

[13] *See Simon Prop. Grp., LP v. mySIMON, Inc.*, 282 F.3d 986, 990-91 (7th Cir. 2002) (holding abandonment of preliminary injunction "strongly undermines" claim of "irreparable harm"); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (treating five-year delay as undermining request for injunction); *Open Text, S.A. v. Box, Inc.*, 36 F. Supp. 3d 885, 909 (N.D. Cal. 2014) (finding delay in seeking relief undermined claim of irreparable harm).

[14] *E.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-94 (2006); *Winter v. NRDC, Inc.*, 555 U.S. 7, 22-24 (2008); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 327 (9th Cir. 2015); *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090-91 (9th Cir. 2015); *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1248-50 (9th Cir. 2013).

[15] *E.g.*, *Castellano Cosmetic Surgery Ctr. v. Rashae Doyle, P.A.*, 2021 WL 3188432, at *10 (M.D. Fla. July 28, 2021); *Allied Portables, LLC v. Youmans*, 2015 WL 6813669, at *4 (M.D. Fla. Nov. 6, 2015); *Bansbach Easylift of N.A. v. Reve*, 2009 WL 10670230, at *5 (M.D. Fla. Mar. 25, 2009).

12

irreparable injury for CFAA violations.  Most of those cases are unpublished default judgments (initiated by Plaintiffs), which provide negligible precedential value because they are decided on the plaintiff's allegations without adversarial argument.  *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686878 (N.D. Cal. Aug. 22, 2023); *Meta Platforms, Inc. v. Ates*, 2023 WL 4035611 (N.D. Cal. May 1, 2023).  Those cases also involved *non-monetary* injuries, such as "harm to [Meta's] reputation [and] good will."  *Nguyen*, 2023 WL 8686878, at *8; *Ates*, 2023 WL 4035611, at *8.[16]  In *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 783 (N.D. Cal. 2017), the defendants *conceded* "that Facebook ha[d] suffered irreparable harm."  The defendants, moreover, violated the CFAA not just by accessing Facebook's computers, but by using that access to steal Facebook's proprietary data, which the defendants then posted on their own website.  *Id.* at 768-69.  The court thus found irreparable harm not simply from "unauthorized access of computers," but also from "the acquisition of [Facebook's] data."  *Id.* at 782.[17]

Here, by contrast, Plaintiffs do not claim, much less prove, that NSO violated the CFAA to steal, exploit, or retain any of Plaintiffs' proprietary data.  To the contrary, Plaintiffs have admitted that NSO did *not* remove any of Plaintiffs' data from their servers.  (*See* Dkt. No. 419-5, Exh. B at 249:7-250:10, Exh. C at 183:7-184:7, 250:22-251:24, Exh. N. at 4.)  As already discussed, Plaintiffs have promised to not claim—or submit evidence of—harm to their reputation or goodwill in pursuit of an injunction.  (Dkt. 591 at 12.)  The cases Plaintiffs cite, therefore, are the exact sort of "different case[s] with a different record" that the Ninth Circuit has held cannot support a finding of irreparable injury.  *Herb Reed*, 736 F.3d at 1250.

What matters is the record in *this* case.  And in this case, Plaintiffs utterly lack the "proof of a loss of clients, goodwill, or [other] actual, imminent harm stemming from [NSO]'s prior alleged [CFAA] violations" that are required for irreparable injury.  *Castellano*, 2021 WL 3188432,

---

[16] In *Energy Power Co. v. Xiaolong Wang*, 2013 WL 6234625, at *10 (D. Mass. Dec. 3, 2013), the defendant's CFAA violation "prevented [the plaintiff] from enjoying the uninterrupted use of its property" and "hampered [plaintiff] from further developing [its] product resulting in the loss of goodwill."  Here, Plaintiffs admit NSO did not impair WhatsApp's performance (Dkt. 396-5, Exh. L at 183:1-184:7), and they do not claim NSO prevented development of any product.

[17] *See also Chegg v. Doe*, 2023 WL 7392290, at *8 (N.D. Cal. Nov. 7, 2023) (involving "theft of Chegg's content"); *Sluchevsky*, 2020 WL 5823277, at *9 (involving "scraping of HTTP data").

13

1    at *10.  Plaintiffs' assertions of irreparable injury thus have no "ground[ing] in evidence," and

2    cannot support an injunction.  *Herb Reed*, 736 F.3d at 1250.

3                    **2.      Plaintiffs Have Not Proved They Lack an Adequate Legal Remedy.**

4           For similar reasons, Plaintiffs also have not proved they lack an adequate legal remedy.

5    This Court's summary judgment order focused exclusively on a limited aspect of NSO's past

6    conduct during a narrow time period, without making any findings about NSO's current or future

7    conduct.  And Plaintiffs claim to have suffered only monetary harm from that past conduct.  Such

8    monetary harm can be fully remedied through damages.  *ACT 898 Prods.*, 774 F. App'x at 1012.

9           Plaintiffs also submit no evidence that they are likely to suffer *future* harm that cannot be

10   remedied through damages.  They do not claim that any future harm would be different from the

11   financial losses they claim to have suffered in the past, so such "future harm" could also "be redressed by

12   money damages."  *Jarvis*, 2024 WL 4003319, at *6.  That aside, Plaintiffs do not and cannot establish

13   a "significant threat" of *any* future harm.  *Big Country Foods, Inc. v. Bd. of Educ.*, 868 F.2d 1085, 1088

14   (9th Cir. 1989).  "The threat of 'irreparable harm' must be imminent . . . as opposed to a mere possibility

15   of harm some time in the future: 'An injunction cannot issue in a vacuum based on the proponents'

16   fears about something that may happen in the future.  It must be supported by *actual evidence* that

17   there is a realistic prospect that the party enjoined intends to engage in the prohibited activity.'"

18   *Fansler Found. v. Am. Realty Investors, Inc.*, 2007 WL 1302742, at *3 (E.D. Cal. May 2, 2007) (emphasis

19   added); *see also Connerly v. Schwarzenegger*, 146 Cal. App. 4th 739, 750 (2007) ("[I]njunctions

20   cannot be predicated on the proponent's fear of something that may happen in the future.").

21          Plaintiffs have no such evidence—only speculation based on facts with no connection to

22   Plaintiffs.  Plaintiffs assert that NSO still licenses "Pegasus" (Mot. 9-10), but this case is not about

23   Pegasus generally.  Pegasus is brand name encompassing multiple different technologies.  (Shohat

24   Decl. ¶¶ 3, 5.)  This case involves only the three covert Android installation vectors "targeting or

25   directed at WhatsApp servers, or using WhatsApp in any way to access Target Devices" between

26   April 2018 and May 2020.  (Dkt. 292 at 3.)  Those three vectors existed for only short periods of

27   time.  (Gazneli Decl. ¶¶ 3-5.)  The vulnerabilities those vectors used are closed, and NSO cannot

28   reopen them.  (*Id.* ¶ 5.)  Nor do Plaintiffs contend that WhatsApp has any other vulnerabilities NSO

                                                          14

1  could use.  Other versions of Pegasus do not use WhatsApp as an installation vector (*id.* ¶¶ 3-4;

2  Shohat Decl. ¶ 8) and are accordingly irrelevant.  They certainly pose no risk to Plaintiffs.

3      Plaintiffs' assertion that NSO developed Erised in late 2019, after this suit was filed, distorts

4  the relevant timeline.  (Mot. 10-11.)  NSO was not *served* with the lawsuit when it was filed.  NSO

5  voluntarily appeared in March 2020 (Dkt. 32), and it did not receive a ruling on its motion to dismiss

6  until July 2020 (Dkt. 111). So it is unremarkable, and hardly indicative of an intent to violate the

7  law, that Erised was operational in May 2020.  Nor does NSO's motion to dismiss Plaintiffs' request

8  for injunctive relief suggest any ill intent by NSO.  (Mot. 16-17.)  *Plaintiffs* had the burden to *plead*

9  facts supporting their standing to seek injunctive relief, so NSO filed that motion based solely on

10  *Plaintiffs' allegations*.  That is utterly routine motion practice, not an indication that NSO would

11  act unlawfully in the future, and Plaintiffs' arguments that NSO's motions directed to the pleadings

12  contained "admissions" are disingenuous.

13      Equally baseless are Plaintiffs' complaints that NSO did not produce evidence of Pegasus

14  versions after May 2020.  (Mot. 11-12, 17.)  This Court limited discovery to evidence "from April

15  29, 2018 to May 10, 2020."  (Dkt. 292 at 4.)  NSO produced an enormous amount of evidence

16  showing the full functionality of the relevant Pegasus versions during that timeframe (*e.g.*, Dkts.

17  429-3–16),                                          .  Plaintiffs *never*

18  moved to compel discovery related to any versions of Pegasus after May 2020, despite the Court

19  having invited them to do so if Plaintiffs believed it warranted.  (Dkt. 292 at 4.)  Accordingly, this

20  Court never ordered NSO to produce evidence after May 2020.  The Court may not make any

21  inferences against NSO as a result of its non-production of evidence that the Court never ordered

22  NSO to produce                                          *Unigard Sec. Co. v.*

23  *Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 367-68 (9th Cir. 1992); *Nida v. Allcom*, 2020 WL

24  2405251, at *6 (C.D. Cal. Mar. 11, 2020).

25      In any event, NSO's CEO testified without contradiction that NSO does not have any

26  "installation vector for Pegasus . . . that uses [Plaintiffs'] technology in any way."  (Dkt. No. 396-

27  5, Exh. H at 51:23-52:2; *see also* Shohat Decl. ¶ 8.)  That fact should be dispositive.  The mere fact

28  that NSO's business involves creating lawful surveillance tools for governments (Mot. 9-10) in no

1  way suggests that NSO will again create a *WhatsApp* installation vector when this Court has found

2  such conduct to violate the law.[18]

3      Plaintiffs seek to go beyond WhatsApp by invoking their "other technologies" (Mot. 11),

4  but this case has never involved those technologies, and the record contains no evidence about them.

5  Whether or not those technologies are "widespread"—a point on which Plaintiffs submit no evidence

6  (Mot. 12)—has nothing to do with whether NSO will again engage in the only conduct Plaintiffs

7  challenged: *using WhatsApp servers* to *install* Pegasus on user devices.  (Dkt. 494 at 12-13.)

8      Nor are Plaintiffs harmed by NSO's mere possession of the "WIS."  (Mot. 12-13.)  The

9  "WIS"—which is properly referred to as the Android Backend Server ("ABS")—is a multipurpose

10  technology with many uses other than crafting WhatsApp messages.  (Gazneli Decl. ¶¶ 5-6.)  That

11  NSO used the ABS to craft WhatsApp messages *in the past* does not mean NSO will continue to do

12  so despite this Court's summary judgment order.  *ValveTech*, 2024 WL 1984897, at *2-3; *Bansbach*

13  *Easylift*, 2009 WL 10670230, at *5; *Castellano*, 2021 WL 3188432, at *10; *Allied Portables*, 2015

14  WL 6813669, at *4 (M.D. Fla. Nov. 6, 2015).  Even the unpublished default judgment Plaintiffs

15  cite requires proof of a "reasonable likelihood of defendant's future violations," *Sluchevsky*, 2020

16  WL 5823277, at *9, and Plaintiffs offer no evidence that NSO will again use the ABS in any way

17  that harms Plaintiffs.  Without any such evidence, there is no basis for Plaintiffs' speculation that

18  they will have to file multiple lawsuits or monitor NSO's conduct in the future.  (Mot. 13-16.)

19      **3.      The Balance of Hardships Does Not Favor an Injunction.**

20      The Court must balance any hardship to Plaintiffs if the injunction is withheld versus the

21  hardship NSO will suffer in the injunction is granted.  *Weinberger v. Romero-Barcelo*, 456 U.S.

22  305, 312 (1982).  Plaintiffs fail to identify any specific hardship that they would face if an injunction

23  were denied, beyond cursory references to ongoing irreparable harm.  (Mot. 17.)  NSO, by contrast,

24  would suffer significant hardship from Plaintiffs' requested injunction.

25      ***First***, the "threat of being driven out of business" constitutes irreparable harm, *hiQ Labs,*

26

27  ————————————
   [18] Neither do statements by a single NSO co-founder disagreeing with the Court's order.  (Mot.
   9.)  Even if those statements could be attributed to NSO as an entity (which NSO denies), *every*

28  party that suffers a finding of liability presumably disagrees with the finding.  A mere statement of
   disagreement cannot be treated as evidence that a party is likely to defy a court order.

1   *Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022),[19] and Plaintiffs' requested injunction

2   would put NSO's entire enterprise at risk.  Pegasus is NSO's flagship product.  (Shohat Decl. ¶ 10.)

3   This case involves only a very limited subset of Pegasus versions that were installed through

4   WhatsApp servers years ago.[20]  (Gazneli Decl. ¶¶ 3-5.)  Yet Plaintiffs' injunction encompasses

5   multiple Meta platforms that have nothing to do with this lawsuit and would broadly prohibit

6   collecting data from all those platforms—whether or not the collection was performed using a

7   version of Pegasus installed through WhatsApp.  (Dkt. No. 558-3 ¶¶ 2, 3(c).)  There is no longer

8   any version of Pegasus installed through WhatsApp (Shohat Decl. ¶ 8), so Plaintiffs' injunction

9   would only interfere with the operation of products that have not even been alleged to be unlawful.

10      The injunction is so overbroad, it would prohibit NSO from engaging in entirely lawful

11  conduct to assist authorized government investigations that have nothing to do with the conduct the

12  Court held unlawful—namely, the installation of Pegasus through WhatsApp servers.  Such an

13  injunction would force NSO out of business.  (Shohat Decl. ¶¶ 10-11.)  NSO has competitors that offer

14  products, similar to Pegasus, that permit the remote collection of information from mobile devices.

15  (*Id.*)  Those competing products can collect WhatsApp messages, among other social media messages.  (*Id.*)

16  The proposed injunction, however, apparently would ban NSO from using *any* technology to collect

17  information off user devices if the information is stored on one of Plaintiffs' platforms—even if the

18  collection method never touched WhatsApp servers (or any other servers located in the United

19  States).  If NSO were banned from offering versions of Pegasus that could collect such data, even

20  versions as to which there is no claim of a violation of U.S. or California law, it would impose a

21  unique competitive disadvantage on NSO and undermine its entire business model.  (*Id.*)

22  _____

23      [19] This is true even if the conduct at issue is unlawful.  *See Softketeers, Inc. v. Regal W. Corp.*,
    2023 WL 2024701, at *11 (C.D. Cal. Feb. 7, 2023) (finding "considerable hardship" from injunction

24  requiring destruction of unlawful software, which "would essentially shut down the [defendant]").

    [20] During discovery, Plaintiffs limited their claims to any "spyware" that targets or is directed

25  at *WhatsApp servers* or that *uses WhatsApp* to target WhatsApp users—*i.e.*, they agreed that this
    lawsuit did not involve every NSO product that might collect WhatsApp messages from an end-

26  user device, regardless of how installed.  (Dkt. No. 235-2 at 7; Dkt. No. 249-2 at 5 n.2.)  The Court
    endorsed that more limited scope of discovery (Dkt. No. 292 at 3) and eventually found NSO liable

27  based on the exchange of information that occurred between Pegasus and the target devices via
    WhatsApp's servers *during the installation process* (Dkt. No. 494 at 12).  The Court made no

28  finding that versions of Pegasus installed through other means were unlawful.

17

At a minimum, the proposed injunction would result in lawful versions of Pegasus abruptly becoming unavailable to customers.  (Gazneli Decl. ¶ 7; Shohat Decl. ¶¶ 11-12.)  In addition to losing its revenues, NSO would likely violate its contracts with the government customers who rely on its products to fight crime and terrorism.  (Shohat Decl. ¶¶ 11-12.) Those customers would seek other options to avoid disruptions to their law-enforcement investigations, military operations, and intelligence activities.  (*Id.*)  Plaintiffs' injunction thus has the potential to cause NSO "irreversible loss of data, contracts, customers, and market share," *Softketeers*, 2023 WL 2024701, at *11, in addition to jeopardizing the jobs of NSO's 380 employees (Shohat Decl. ¶ 13).  Plaintiffs are thus "simply incorrect that the 'only' hardship that Defendants will suffer from this injunction is preventing them 'from engaging in further illegal activity.'"  *Softketeers*, 2023 WL 2024701, at *11.  Such "dire ramifications" weigh "strongly against" the injunction proposed.  *Id.*

**Second**, the proposed injunction would prohibit NSO and its employees from "using Plaintiffs' Platforms *in any way*."  (Mot. 19.)  This would prohibit NSO employees from using WhatsApp for internal communications, which NSO employees currently do.  (Dkt. 399-4, Exh. 6 at 252:12-253:14; *id.* Exh. 8 at 65:10-66:20; *id.* Exh. 21 at 91:10-92:4.)  Moreover, the injunction is not limited to a prohibition on *commercial* uses, so it would forbid NSO employees from using Facebook, Instagram, WhatsApp, and other platforms even in their personal capacity—a substantial and unwarranted hardship.  *See Corelogic Sols., LLC v. Geospan Corp.*, 2020 WL 7786537, at *3 (C.D. Cal. Aug. 21, 2020) (TRO that would affect defendants' personal devices and email accounts "would clearly impose significant hardships").  Facebook has conceded as much in another matter by revising injunction terms to prohibit only *commercial* activities.  *See Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 781 (N.D. Cal. 2017).

**Third**, the proposed injunction would chill NSO's ability to find legal representation across a variety of commercial, transactional, and litigation matters.  Plaintiffs' injunction would bar NSO's "attorneys" from using any of their various social media platforms in any way, whether personal or commercial.  (Mot. 2 n.1, 19.)  The injunction would thus prohibit any NSO attorney from maintaining personal and professional accounts on Facebook, Instagram, WhatsApp, and Plaintiffs' other platforms.  Such a restriction would clearly create impediments to NSO retaining

1 counsel, even in matters completely unrelated to this litigation or to Plaintiffs.

2         **4.**        **The Public Interest Would Be Disserved by an Injunction.**

3         Finally, when "exercising their sound discretion, courts of equity should pay particular

4 regard for the public consequences in employing the extraordinary remedy of injunction."

5 *Weinberger*, 456 U.S. at 312.  While the evaluation of relative hardships "focuses on the parties,

6 the public interest inquiry primarily addresses impact on non-parties rather than parties, and takes

7 into consideration the public consequences in employing the extraordinary remedy of injunction."

8 *hiQ Labs*, 31 F.4th at 1202 (cleaned up).  When "the impact of an injunction reaches beyond the

9 parties, carrying with it a potential for public consequences, the public interest will be relevant."

10 *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009).

11         Plaintiffs' injunction would clearly affect non-parties and cause negative public

12 consequences.  Although Plaintiffs continue to dispute the point, NSO witnesses will testify that its

13 products are licensed only to government entities for purposes of combating serious crime,

14 antiterrorism efforts, and military and intelligence operations.  (Shohat Decl. ¶¶ 3-4.)  Versions of

15 Pegasus that do not use WhatsApp are currently being used by governments around the world in

16 sensitive law-enforcement, military, and intelligence operations.  (*Id.* ¶¶ 10-12.)  Licensees of Pegasus

17 have included multiple Western and Western-style democracies, U.S. allies (including at least two

18 licenses financed by the United States), and the FBI.  (Minkler Statement ¶ 54.)  NSO's witnesses

19 will explain the vital function that Pegasus and similar technologies play in today's law-enforcement

20 and antiterrorism operations, given terrorists' and criminals' undisputed abuse of ubiquitous

21 encrypted messaging services.  (Shepard Statement ¶¶ 23-30; Minkler Statement ¶¶ 1, 35, 41-49, 55-62.)

22 The public clearly has interests in such national defense and law enforcement operations.  *See Winter*,

23 555 U.S. at 24 (recognizing public interest in national defense); *Haskell v. Brown*, 677 F. Supp. 2d

24 1187, 1203 (N.D. Cal. 2009) (recognizing public interest in "swiftly and accurately solving crimes").

25         Plaintiffs' proposed injunction would hobble the lawful law enforcement and anti-terrorism

26 efforts of sovereign nations around the globe.  The most egregious provision (¶ 3(c)) would prohibit

27 the collection from target devices of messages sent and received by terrorists and criminals using

28 any of Plaintiffs' services—*even using versions of Pegasus that do not touch WhatsApp servers*.

1    Such an injunction would cause law enforcement and national security agencies around the globe

2    who rely on Pegasus to "go dark" on ongoing investigations into suspected criminals and terrorists

3    within their own territories.  By requiring NSO to cut off access to all versions of Pegasus (even

4    those not adjudged to violate the law) within thirty days, the Court would be impairing active law-

5    enforcement, military, and intelligence operations around the world.  And WhatsApp's proposal

6    that NSO delete "all data obtained or derived" from Plaintiffs' platforms is practically impossible

7    (Gazneli Decl. ¶ 8) and would result in lawfully obtained evidence being destroyed.  For example,

8    if Plaintiffs had obtained such an injunction years ago, it would have required NSO to ensure that

9    Mexico destroyed the evidence that proved essential to arresting and extraditing El Chapo.  (*See*

10   Minkler Statement ¶ 62.)  The injunction would have a similar effect on other countries now.

11       Plaintiffs cite no public interest sufficient to overcome these extreme consequences.

12   Certainly, any interest in user privacy must be balanced against law-enforcement and national-

13   security issues.  And while the court in *hiQ Labs,* acknowledged an interest in "thwarting denial-

14   of-service attacks and blocking abusive users, identity thieves, and other ill-intentioned actors," 31

15   F.4th at 1202, that interest is inapplicable here, as NSO does not mount denial-of-service attacks or

16   engage in identity theft.  Regardless, *hiQ Labs* found that the interest in thwarting such actors was

17   outweighed by the risks associated with "giving companies like LinkedIn free rein to decide, on

18   any basis, who can collect and use data." *Id.* at 1202.  A similar risk exists here, as Plaintiffs have

19   purposefully ensured that neither they nor law enforcement can access their users' messages, even

20   subject to lawful process.  Plaintiffs' injunction would only further that goal.

21       **D.    Plaintiffs' Requested Injunction Is Wildly Overbroad.**

22       Even if Plaintiffs had shown an entitlement to *some* injunction—and they have not—the

23   injunction they seek far exceeds any relief that the Court's summary judgment order could support.

24   Injunctions "must be narrowly tailored . . . to remedy only the specific harms shown by the

25   plaintiffs, rather than to enjoin all possible breaches of the law." *Price v. City of Stockton*, 390 F.3d

26   1105, 1117 (9th Cir. 2004) (cleaned up); *Ubisoft, Inc. v. Kruk*, 2021 WL 3472833, at *5 (C.D. Cal.

27   July 9, 2021).  It is an abuse of discretion to issue an overbroad injunction. *Stormans*, 586 F.3d at

28   1140.  The injunction Plaintiffs request is overbroad and improper in numerous respects.

*First*, Plaintiffs seek to enjoin broad swaths of entirely lawful and unharmful conduct. Their proposed injunction would bar NSO (and others not before the Court) from "[c]ollecting, or assisting others in collecting, data or information from Plaintiffs' Platforms;" from "[d]eveloping, using, selling, offering for sale, distributing, transferring, or licensing . . . *any* technology that uses Plaintiffs' Platforms in *any* way;" and even from "[c]reating accounts . . . on Plaintiffs' Platforms." (Dkt. 558-3 ¶¶ 3(a), (c), (g) (emphasis added)). But none of that conduct is even arguably illegal, and it was not found by the Court to be so. The injunction would also prohibit an enormous amount of ordinary unobjectionable conduct, such as NSO's use of WhatsApp for lawful business communications and personal use of Plaintiffs' platforms by NSO's employees (and lawyers).[21]

Plaintiffs also seek to enjoin conduct that this Court never found unlawful. Plaintiffs seek to preclude Defendants from "[d]eveloping, using, selling, offering for sale, distributing, transferring, or licensing" the ABS, but the Court did not find the mere existence of the ABS to be unlawful. The Court instead held that NSO violated the CFAA and CDAFA by *using* the ABS to craft Pegasus messages sent over WhatsApp servers. (Dkt. No. 494 at 12:7-18.) And the ABS, contrary to Plaintiffs' mischaracterization, does not "emulate[] Plaintiffs' Platforms." As NSO's witnesses will testify, the ABS is used for many purposes unrelated to WhatsApp. (Gazneli Decl. ¶ 5.) The ABS thus can be used for many lawful and harmless purposes other than crafting Pegasus messages to be sent over WhatsApp. (*Id.*) Now that Plaintiffs have closed the vulnerabilities once used by Heaven and Eden, there is no evidence that the ABS threatens them harm.

Similarly, Plaintiffs seek to enjoin under WhatsApp's Terms "[s]ending, storing, or transmitting viruses or other harmful code through Plaintiffs' Platforms" and "using Plaintiffs' Platforms for illegal purposes." For the reasons above, Plaintiffs cannot receive *any* injunction to enforce the Terms. But even if they could, this Court did not hold that NSO violated the Terms by

---

[21] *See Sprint Nextel*, 2014 WL 68957, at *9 (rejecting injunction that "would prohibit innocuous activity such as 'purchasing . . . directly or indirectly, any Sprint Products,' or "accessing . . . the software contained in any Sprint Phones"); *Sprint Sols., Inc. v. Cell Wholesale, Inc.*, 2015 WL 13919095, at *14 (C.D. Cal. Dec. 10, 2015) (rejecting as "vastly overbroad" injunction that would enjoin "innocuous activities such as 'acquiring . . . directly or indirectly, any new Sprint phone,' 'contacting or communicating with Sprint or any Sprint employees,' or 'advertising any products or services that have any purported connection to Sprint'").

21

1    "transmitting viruses or other harmful code" or by "using Plaintiffs' Platforms for illegal purposes."

2    The Court recognized that Plaintiffs *claimed* NSO did that. (Dkt. 494 at 13.) But it *held* only that

3    NSO breached the Terms by "reverse-engineering and/or decompiling" the "WhatsApp software."

4    (*Id.* at 14-15.) Plaintiffs' injunction improperly extends beyond that conduct.

5         ***Second***, Plaintiffs' proposed injunction improperly applies to many platforms other than

6    WhatsApp, including "Facebook, Instagram, Messenger, Meta AI, Threads, and Meta Horizon

7    platforms, as well as each of those platforms' related client applications." (Dkt. 558-3 at 1.) But

8    this case has always been limited *solely* to WhatsApp. Plaintiffs have never claimed or proved

9    NSO used, exploited, or interacted with Plaintiffs' other platforms *at all*, much less in any illegal

10   or harmful way. For this reason, too, the proposed injunction is overbroad. *Sprint Nextel*, 2014

11   WL 68957, at *9; *Sprint Sols.*, 2015 WL 13919095, at *14.[22]

12        ***Third***, Plaintiffs' proposed injunction is overbroad in seeking to enjoin the use of Plaintiffs'

13   platforms for *any* "illegal purposes, including violating the [CFAA] or [CDAFA]." Plaintiffs

14   challenged, and this Court addressed, only one specific *way* of using WhatsApp's servers.

15   Prohibiting other unspecified "illegal" conduct is improperly overbroad, burdensome, and vague.

16   *Mulcahy*, 386 F.3d at 852 n.1. Even cases Plaintiffs cite have rejected similar attempts by Plaintiffs

17   to enjoin "any activity that violates the CFAA or [C]DAFA." *Nguyen*, 2023 WL 8686878, at *9.

18        ***Fourth***, Plaintiffs' proposed injunction improperly applies to NSO's government

19   customers. This Court previously recognized that any injunction in this case must be tailored so as

20   not to affect NSO's government customers. Otherwise, those customers would be necessary parties

21   who cannot be sued due to their sovereign immunity, requiring dismissal under Rule 19. (Dkt. 111

22   at 34); *see Rep. of the Philippines v. Pimentel*, 553 U.S. 851, 865 (2008). But Plaintiffs' requested

23   injunction defines "Prohibited Parties" to include "all other persons who are in active concert or

24   participation with Defendants," without excluding NSO's government customers. (Dkt. 558-3 ¶ 2.)

25   Although Rule 65(d) "makes [an] injunction . . . binding upon persons 'in active concert or

26   participation with' parties who have actual notice of the injunction," that does not change the fact

---

27   [22] *See also Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 n.1 (8th Cir. 2004) (rejecting

28   injunction prohibiting "using . . . materials that were not before the court" because "blanket injunctions to obey the law are disfavored").

22

that "injunctive relief cannot reach non-parties that are entitled to sovereign immunity." *White v. Univ. of Cal.*, 2012 WL 12335354, at *10 (N.D. Cal. Oct. 9, 2012) (cleaned up) (quoting *In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 545 (9th Cir. 1996)).  An injunction cannot be enforced against an immune sovereign, and it is an abuse of discretion to issue an unenforceable injunction. *Estate of Ferdinand Marcos*, 94 F.3d at 544-48.  Accordingly, Plaintiffs' proposed injunction cannot be issued unless it excludes NSO's government customers.

*Finally*, Plaintiffs overreach by asking the Court to require all "Prohibited Parties . . . to delete and destroy any and all computer code or technologies that use, access, or depend on Plaintiffs' Platforms, including the [ABS], to delete all data obtained or derived from Plaintiffs' Platforms, and to disable customer access to any and all computer code or technologies that use, access, or depend on Plaintiffs' Platforms."  (Dkt. 558-3 at 2.)  Such mandatory injunctions are highly disfavored and "are not granted unless extreme or very serious damage will result." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  Here, where Plaintiffs no longer face any threat of harm from the technologies challenged in this case, Plaintiffs cannot come close to the threshold of proof needed to support such a sweeping and burdensome injunction.  Moreover, Plaintiffs' request would require NSO and its customers to delete code and technology that can no longer harm Plaintiffs, code and technology used solely for lawful purposes, and data obtained lawfully and without harm to Plaintiffs.  Plaintiffs may not receive such an onerous mandatory injunction. *Id.*

## IV.   CONCLUSION

The Court should deny Plaintiffs' motion for a permanent injunction.

Dated: March 14, 2025                    KING & SPALDING LLP

By:   *   /s/ Joseph N. Akrotirianakis   *
     JOSEPH N. AKROTIRIANAKIS
     AARON S. CRAIG

     *Attorneys for Defendants*
     NSO GROUP TECHS. LTD. and
     Q CYBER TECHS. LTD.