1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1600
4  Los Angeles, CA 90071
   Telephone: (213) 443-4355
5  Facsimile: (213) 443-4310

6  Attorneys for Defendants
   NSO GROUP TECHNOLOGIES LIMITED and
7  Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DECLARATION OF YARON SHOHAT IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION**<br><br>Action Filed: 10/29/2019<br><br>**FILED UNDER SEAL**<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

DECLARATION OF YARON SHOHAT                              Case No. 4:19-cv-07123-PJH

I, Yaron Shohat, hereby declare as follows:

1. I am a citizen and resident of Israel. I am the Chief Executive Officer ("CEO") of Defendants NSO Group Technologies Limited ("NSO") and Q Cyber Technologies Limited ("Q Cyber," collectively "Defendants"). Q Cyber is NSO's sole director and shareholder. As Defendants' CEO, I am an employee of Q Cyber.

2. I have personal knowledge of the facts set forth herein and, except as otherwise stated, could testify competently to each of those facts.

3. NSO is a technology company that designs and licenses technologies to governments and government agencies for national security and law enforcement purposes. Among these products are a suite of different technologies and functions that are collectively branded and marketed as "Pegasus."

4. NSO markets and licenses its Pegasus technology exclusively to sovereign governments and authorized agencies for the purposes above, and it does so only after receiving required export control licenses from the Israeli Ministry of Defense. NSO does not now market or sell, and has never marketed or sold, its Pegasus technology for use by any private entity.

5. The different technologies marketed under the "Pegasus" brand name provide NSO's foreign sovereign customers the ability to collect evidence and intelligence from different mobile devices. One subset of those technologies permitted governments and government agencies to collect evidence and intelligence from mobile devices that run the Android operating system and operate as "zero click," meaning the end user of the mobile device is not required to take any action, such as opening a link, for installation of Pegasus. These "covert Android" technologies are completely different from the Pegasus technologies that can gather evidence and intelligence from devices running other (i.e., non-Android) operating systems or that require some engagement by the end user of the mobile device (i.e., "one click").

6. I understand that earlier in the course of the lawsuit, the Court issued rulings that determined which NSO technologies were relevant to Plaintiffs' claims. Based on those rulings,

[redacted]

[redacted].

1

1    7.    Had the Court expanded those rulings, and the scope of information that NSO was required to produce, ███████████████████████████████████████████.

8.    My prior testimony that NSO no longer has any installation vectors for Pegasus that use WhatsApp, WhatsApp's servers, or WhatsApp's client application remains accurate. NSO currently has no products, either in use or development, that use WhatsApp as an installation vector.

9.    Although NSO respectfully disagrees with the Court's order on summary judgment, and intends to appeal that ruling, NSO does not currently and will not in the future offer versions of Pegasus that use WhatsApp as an installation vector, absent a different ruling.

10.    Pegasus is NSO's flagship product. It exists, however, in a competitive market. NSO has competitors that offer products, similar to Pegasus, that permit the remote collection of information from mobile devices. Those competing products can and do collect WhatsApp messages, among other social media messages. If NSO were banned from offering versions of Pegasus that allow its government customers to collect the same messages, even Pegasus versions that have not been found to violate the law, it would quickly lose market share to competitors.

11.    NSO's government customers rely on Pegasus to fight crime and terrorism and are likely to shift quickly to competing products that offer the widest range of capabilities. NSO's inability to match its competitors' offerings would result in a competitive disadvantage and loss of customers that NSO would be unlikely ever to overcome.

12.    At a minimum, the injunction proposed by Plaintiffs would force changes to NSO's existing Pegasus products, including those that have not been part of this lawsuit. If all versions of Pegasus were rendered unavailable for any substantial period of time, NSO would be at risk of going out of business. In addition, NSO would be at risk of violating its contracts with the government customers who rely on its products to fight terrorism and investigate and prosecute crime. And, even if the disruption were not permanent, those customers would be likely to seek other options to avoid even temporary disruptions to their law-enforcement investigations, military operations, and intelligence activities. Once a customer transitions to a new competing solution, and begins collecting evidence or data, they would be unlikely to transition back to NSO's products.

13. NSO currently employs approximately 380 personnel, the vast majority of whom have responsibilities relating to NSO's Pegasus products. Should NSO lose revenues, contracts, or customers, the employment of all those people would be at risk.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct this 10th of March 2025, at Herzliya, Israel.

_____
YARON SHOHAT