1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
     *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
     *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1600
4  Los Angeles, CA 90071
   Telephone: (213) 443-4355
5  Facsimile: (213) 443-4310

6  Attorneys for Defendants
   NSO GROUP TECHNOLOGIES LIMITED and
7  Q CYBER TECHNOLOGIES LIMITED

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                         OAKLAND DIVISION
11

12  WHATSAPP INC., a Delaware corporation,      Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
13  corporation,                                 **DECLARATION OF JOSEPH N.
                                                 AKROTIRIANAKIS IN SUPPORT OF
14                 Plaintiffs,                    DEFENDANTS' OPPOSITION TO
                                                 MOTION TO EXCLUDE THE EXPERT
15        v.                                     TESTIMONY OF JOSHUA J. MINKLER**

16  NSO GROUP TECHNOLOGIES LIMITED             Action Filed: 10/29/2019
    and Q CYBER TECHNOLOGIES LIMITED,
17
                   Defendants.
18

19

20

21

22

23

24

25

26

27

28

---

DECLARATION OF JOSEPH N. AKROTIRIANAKIS                    Case No. 4:19-cv-07123-PJH

1    I, Joseph N. Akrotirianakis, declare as follows:

2    1.    I am a member of the California State Bar and the bar of this court. I am a partner

3    in the law firm of King & Spalding LLP and am lead counsel to NSO Group Technologies Limited

4    and Q Cyber Technologies Limited (collectively "NSO or "Defendants") in this action. I have

5    personal knowledge of the facts set forth herein and, except as otherwise stated, could testify

6    competently to each fact herein.

7    2.    On February 11, 2025, Joshua J. Minkler gave a deposition in this matter.  Attached

8    as **Exhibit A** are excerpts of the transcript of that deposition.

9    I declare under penalty of perjury that the foregoing is true and correct.  Executed this 20th

10    of March 2025, in New York, New York.

11

12    /s/Joseph N. Akrotirianakis
      JOSEPH N. AKROTIRIANAKIS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

DECLARATION OF JOSEPH N. AKROTIRIANAKIS                    Case No. 4:19-cv-07123-PJH

# Exhibit A

**REDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

1                UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      OAKLAND DIVISION

4    _____

5                                    )
     WHATSAPP LLC, a Delaware        )
6    corporation, and META PLATFORMS,)
     INC., a Delaware corporation,   ) CASE NO.:
7                                    ) 4:19-CV-07123-
                    Plaintiffs,      ) PJH
8                                    )
              v.                     )
9                                    )
     NSO GROUP TECHNOLOGIES LIMITED  )
10   and Q CYBER TECHNOLOGIES        )
     LIMITED,                        )
11                                   )
                    Defendants.      )
12   _____)

13

14       ** THIS TRANSCRIPT IS MARKED CONFIDENTIAL

15           PURSUANT TO PROTECTIVE ORDER **

16

17              DEPOSITION OF JOSHUA MINKLER

18                      VOLUME I

19               LOS ANGELES, CALIFORNIA

20              TUESDAY, FEBRUARY 11, 2025

21

22

23

24   REPORTED BY:   NATALIE PARVIZI-AZAD, CSR, RPR, RSR
                     CSR NO. 14125
25   JOB NO.:       571437

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    2

```
1                    UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                       OAKLAND DIVISION

4       _____

5                                   )
        WHATSAPP LLC, a Delaware     )
6       corporation, and META PLATFORMS, )
        INC., a Delaware corporation,   ) CASE NO.:
7                                   ) 4:19-CV-07123-
                       Plaintiffs,   ) PJH
8                                   )
                v.                  )
9                                   )
        NSO GROUP TECHNOLOGIES LIMITED )
10      and Q CYBER TECHNOLOGIES    )
        LIMITED,                    )
11                                  )
                       Defendants.   )
12      _____)

13

14

15

16       DEPOSITION OF JOSHUA MINKLER, VOLUME I

17       TAKEN ON BEHALF OF THE PLAINTIFFS

18       IN LOS ANGELES, CALIFORNIA, BEGINNING AT

19       9:20 A.M. AND ENDING AT 7:15 P.M., ON

20       TUESDAY, FEBRUARY 11, 2025, BEFORE

21       NATALIE PARVIZI-AZAD, CERTIFIED SHORTHAND

22       REPORTER NUMBER 14125.

23

24

25
```

```
1              LOS ANGELES, CALIFORNIA
2        TUESDAY, FEBRUARY 11, 2025, 9:20 A.M.
3
4            THE VIDEOGRAPHER:  Here begins Media      09:20:00
5    Number 1 in the videotaped deposition of Joshua    09:20:00
6    Minkler in the matter of "WhatsApp, LLC versus NSO  09:20:03
7    Group Technologies, Ltd." in the United States     09:20:09
8    District Court for the northern District of        09:20:10
9    California.  Case number 4:19-CV-07123-PJH.        09:20:12
10           Today's date is February 11th, 2025.  The  09:20:22
11   time on the video monitor is 9:20 a.m.  The        09:20:26
12   videographer today is Charlie McGrath, representing 09:20:30
13   Planet Depos.                                       09:20:32
14           This video deposition is taking place at   09:20:33
15   King & Spalding, LLP.  633 West 5th Street, Suite   09:20:38
16   1600, Los Angeles, California 90071.                09:20:43
17           Would counsel please voice identify        09:20:47
18   themselves and state whom they represent.          09:20:51
19           MR. ANDRES:  Greg Andres and Luca          09:20:53
20   Marzorati for Meta and WhatsApp.                    09:20:57
21           MR. AKROTIRIANAKIS:  Joe Akrotirianakis on  09:21:00
22   behalf of the defendants.                           09:21:01
23           THE VIDEOGRAPHER:  The court reporter       09:21:04
24   today is Natalie Parvizi representing Planet Depos. 09:21:04
25   The witness will now be sworn.                      09:21:07
```

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                        6

```
 1              THE CERTIFIED STENOGRAPHER:  My name is
 2   Natalie Parvizi-Azad.  I'm a certified shorthand
 3   reporter with the State of California, CSR number
 4   14125.
 5              Will you please raise your right hand to
 6   be sworn?
 7
 8              JOSHUA MINKLER,
 9    having declared under penalty of perjury to tell
10    the truth, was examined and testified as follows:
11
12                   EXAMINATION
13   BY MR. ANDRES:
14      Q.   Good morning, Mr. Minkler.              09:21:33
15      A.   Good morning.                           09:21:34
16      Q.   You understand that you're here today to  09:21:35
17   be deposed today in connection with the plaintiffs  09:21:42
18   WhatsApp and Meta, also known as Facebook on one  09:21:45
19   hand and NSO Group Technologies and Q Cyber     09:21:47
20   Technologies on the other hand.                 09:21:49
21              Do you understand that?              09:21:51
22      A.   I understand.                           09:21:52
23      Q.   During the course of the day today, I'm  09:21:52
24   going to refer to the defendants as "NSO."      09:21:59
25              Do you understand that?              09:22:02
```

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    18

| | | |
|---|---|---|
| 1 | referred to specifically in your expert report; is | 09:36:29 |
| 2 | that correct? | 09:36:33 |
| 3 | A.    I have not referred to that in my expert | 09:36:33 |
| 4 | report. | 09:36:36 |
| 5 | Q.    Okay.  So that's one data breach.  This | 09:36:36 |
| 6 | data says "data breaches."  Are there other data | 09:36:40 |
| 7 | breach investigations that you were involved in or | 09:36:43 |
| 8 | supervised? | 09:36:46 |
| 9 | A.    That's the primary one.  I'm trying to | 09:36:47 |
| 10 | think of another right now.  Anthem is the one that | 09:36:55 |
| 11 | quickly comes to mind. | 09:37:03 |
| 12 | Q.    There's also a reference to supervising | 09:37:05 |
| 13 | significant cyber-crimes investigations.  Can you | 09:37:08 |
| 14 | explain what that investigation that refers to? | 09:37:10 |
| 15 | A.    Child exploitation crimes.  There were | 09:37:12 |
| 16 | quite a few that I supervised that our office | 09:37:23 |
| 17 | investigated.  Those are the major cyber crimes | 09:37:26 |
| 18 | investigations that I was involved in supervising. | 09:37:30 |
| 19 | Q.    Why do you consider those to be | 09:37:34 |
| 20 | cyber-crime investigations as opposed to child | 09:37:38 |
| 21 | exploitation investigations? | 09:37:42 |
| 22 | A.    Most of those cases used the internet and | 09:37:42 |
| 23 | computers and required somewhat sophisticated | 09:37:49 |
| 24 | techniques to gather evidence from computers and the | 09:37:57 |
| 25 | internet. | 09:38:04 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    33

| | | |
|---|---|---|
| 1 | that in the justice manual.  But when you go to the | 09:56:24 |
| 2 | US Attorney's Office, there are meetings for extra | 09:56:27 |
| 3 | large, large, medium, and small offices; is that | 09:56:30 |
| 4 | right? | 09:56:34 |
| 5 | A.   That is correct. | 09:56:34 |
| 6 | Q.   And you went in the medium bucket? | 09:56:35 |
| 7 | A.   That's correct. | 09:56:39 |
| 8 | Q.   Okay.  You served as the chief of the drug | 09:56:41 |
| 9 | and violent crime unit and were assigned as an | 09:56:51 |
| 10 | OCDETF assistant US attorney from 2010 to 2011; is | 09:56:58 |
| 11 | that correct? | 09:57:03 |
| 12 | A.   Yes. | 09:57:03 |
| 13 | Q.   And during that time you were involved in | 09:57:04 |
| 14 | investigations that had -- that used Title 3 | 09:57:07 |
| 15 | surveillance? | 09:57:11 |
| 16 | A.   Yes. | 09:57:11 |
| 17 | Q.   Do you know approximately how many Title 3 | 09:57:12 |
| 18 | applications you've presented to a federal judge? | 09:57:16 |
| 19 | A.   During that time period or overall? | 09:57:20 |
| 20 | Q.   Overall. | 09:57:25 |
| 21 | A.   In excess of 30. | 09:57:26 |
| 22 | Q.   In excess of 30.  And is that 30 separate | 09:57:37 |
| 23 | applications?  I think you what I mean.  You have an | 09:57:41 |
| 24 | initial application, if you need a renewal, et | 09:57:46 |
| 25 | cetera.  So let me ask that question differently. | 09:57:49 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                              34

| | | |
|---|---|---|
| 1 | How many investigations involve Title 3 | 09:57:50 |
| 2 | applications, whether it's the first, second, or | 09:57:53 |
| 3 | third renewal, what have you.  How many | 09:57:57 |
| 4 | investigations had Title 3 surveillance authority? | 09:58:00 |
| 5 | A.   More than ten, but less than 15. | 09:58:04 |
| 6 | Q.   Okay.  And that's during the whole course | 09:58:13 |
| 7 | of your time as a federal law enforcement official? | 09:58:16 |
| 8 | A.   Yes. | 09:58:19 |
| 9 | Q.   Okay.  Okay.  So you were the chief of the | 09:58:19 |
| 10 | drug and violent crime section.  Can you tell me | 09:58:25 |
| 11 | what your work involved there? | 09:58:29 |
| 12 | A.   I supervised assistant United States | 09:58:30 |
| 13 | attorneys that were assigned those cases, and I also | 09:58:37 |
| 14 | carried a case load of my own of drug, violent | 09:58:40 |
| 15 | crime, and organized crime cases. | 09:58:46 |
| 16 | Q.   Okay.  And when you say "organized crime," | 09:58:50 |
| 17 | because I'm here in New York.  We have a diffedrent | 09:58:52 |
| 18 | -- you mean gangs or transnational organized crime | 09:58:54 |
| 19 | families? | 09:58:59 |
| 20 | MR. AKROTIRIANAKIS:  Object to the form of | 09:58:59 |
| 21 | the question. | 09:59:01 |
| 22 | A.   Gangs to include Mexican drug trafficking | 09:59:01 |
| 23 | organizations. | 09:59:09 |
| 24 | Q.   Okay.  And you did similar work from your | 09:59:10 |
| 25 | time in 1994 to 2010 as an assistant US attorney? | 09:59:15 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    72

| | | |
|---|---|---|
| 1 | as a lawyer, not as an academic, as I believe you're | 11:26:39 |
| 2 | using the term. | 11:26:47 |
| 3 | Q.   Have you ever done any academic research | 11:26:47 |
| 4 | with respect to Title 3? | 11:26:49 |
| 5 | A.   No. | 11:26:50 |
| 6 | Q.   Let's turn to paragraph 38 -- | 11:26:50 |
| 7 | MR. AKROTIRIANAKIS:  Object to -- | 11:26:54 |
| 8 | Q.   -- of your report? | 11:26:55 |
| 9 | MR. AKROTIRIANAKIS:  I'm going to | 11:26:56 |
| 10 | interpose a late objection.  Excuse me, Counsel.  I | 11:26:57 |
| 11 | get to interpose objections. | 11:27:00 |
| 12 | Even when Mr. Minkler answers the question | 11:27:01 |
| 13 | faster than I can interpose them before he answers, | 11:27:05 |
| 14 | but I will object to form of the question again and | 11:27:08 |
| 15 | the use of "academic" in this context. | 11:27:12 |
| 16 | Q.   I ask you to turn to paragraph 38 of your | 11:27:14 |
| 17 | report. | 11:27:18 |
| 18 | A.   Yes. | 11:27:21 |
| 19 | Q.   Paragraph 38 refers to the Foreign | 11:27:21 |
| 20 | Intelligence Surveillance Act; is that correct? | 11:27:29 |
| 21 | A.   It does. | 11:27:30 |
| 22 | Q.   And then it sites a number of sections | 11:27:31 |
| 23 | of -- of section -- of Title 50; is that correct? | 11:27:34 |
| 24 | A.   It does. | 11:27:39 |
| 25 | Q.   Have you read each of those sections of | 11:27:39 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                               73

| | | |
|---|---|---|
| 1 | the code? | 11:27:42 |
| 2 | A.  I have not. | 11:27:43 |
| 3 | Q.  And then, it says -- in the first | 11:27:46 |
| 4 | sentence, it says -- it says, "FISA is another means | 11:27:50 |
| 5 | by which intelligence agencies can lawfully | 11:27:55 |
| 6 | intercept communications." | 11:28:00 |
| 7 | Is that right? | 11:28:02 |
| 8 | MR. AKROTIRIANAKIS:  Object to the form of | 11:28:03 |
| 9 | the question.  Counsel has misread the document. | 11:28:04 |
| 10 | Q.  Second lines says, "Another mean by which | 11:28:06 |
| 11 | intelligence agencies can lawfully intercept | 11:28:17 |
| 12 | communications." | 11:28:21 |
| 13 | A.  I do see that. | 11:28:22 |
| 14 | Q.  And what are you referring to when you say | 11:28:22 |
| 15 | "intelligence agencies"? | 11:28:25 |
| 16 | A.  In my training and experience, it would be | 11:28:26 |
| 17 | the FBI. | 11:28:28 |
| 18 | Q.  Does it include -- and so, you never | 11:28:29 |
| 19 | served in the FBI; is that correct? | 11:28:39 |
| 20 | A.  I did not. | 11:28:40 |
| 21 | Q.  And you never applied for a FISA award; is | 11:28:41 |
| 22 | that correct? | 11:28:49 |
| 23 | A.  I have not. | 11:28:49 |
| 24 | Q.  Have you ever appeared in front of the | 11:28:50 |
| 25 | FISA Court? | 11:28:51 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                                    74

| | | |
|---|---|---|
| 1 | A.   I have never. | 11:28:52 |
| 2 | Q.   And what's your basis of knowledge as it | 11:28:52 |
| 3 | relates to FISA? | 11:28:55 |
| 4 | A.   I supervised national security | 11:28:57 |
| 5 | investigations.  Those national security | 11:29:00 |
| 6 | investigations utilized FISA and the lawful | 11:29:06 |
| 7 | intercepts obtained through FISA were shared with | 11:29:17 |
| 8 | me, as was the process the agent went through to | 11:29:23 |
| 9 | obtain the FISA warrant. | 11:29:32 |
| 10 | Q.   How many national security investigations | 11:29:34 |
| 11 | involving FISA warrants have you been involved in? | 11:29:39 |
| 12 | A.   Two. | 11:29:43 |
| 13 | Q.   And when were those investigations? | 11:29:44 |
| 14 | A.   2015 through 2016, and in 2018 | 11:29:46 |
| 15 | through 2020. | 11:30:06 |
| 16 | Q.   In paragraph 38, you list several | 11:30:07 |
| 17 | requirements under FISA. | 11:30:13 |
| 18 |      Do you see that? | 11:30:16 |
| 19 | A.   I do. | 11:30:16 |
| 20 | Q.   And as you sit here today, are those all | 11:30:19 |
| 21 | of the statutory requirements necessary for the | 11:30:25 |
| 22 | issuance of a FISA warrant? | 11:30:28 |
| 23 | A.   I do not know. | 11:30:30 |
| 24 | Q.   You understand that the purpose of FISA | 11:30:32 |
| 25 | legislation was to provide judicial and | 11:30:50 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    76

| | | |
|---|---|---|
| 1 | the question. | 11:32:21 |
| 2 | A.    I did not use Pegasus as a federal law | 11:32:21 |
| 3 | enforcement officer between 1994 and 2020, nor have | 11:32:28 |
| 4 | I ever been involved in the use of Pegasus. | 11:32:35 |
| 5 | Q.    You've never been involved in the use of | 11:32:40 |
| 6 | Pegasus ever; correct? | 11:32:46 |
| 7 | A.    That is correct. | 11:32:47 |
| 8 | Q.    Are you aware of Pegasus being deployed in | 11:32:47 |
| 9 | the United States? | 11:32:51 |
| 10 | A.    ███████████████████████ | 11:32:52 |
| 11 | ████████████████████████████████ | 11:33:17 |
| 12 | ████████████████████████████ | 11:33:22 |
| 13 | ██████████ | 11:33:33 |
| 14 | Q.    Can you explain how Pegasus can be | 11:33:33 |
| 15 | lawfully installed in the United States? | 11:33:36 |
| 16 | MR. AKROTIRIANAKIS:  Object to the form of | 11:33:43 |
| 17 | the question. | 11:33:43 |
| 18 | A.    If a valid Title 3 warrant or valid | 11:33:43 |
| 19 | warrant was obtained under 18 USC 2510, or if a | 11:33:56 |
| 20 | valid warrant was obtained by the FBI from the FISA | 11:34:03 |
| 21 | court, which authorized the interception of | 11:34:13 |
| 22 | communications, Pegasus could be lawfully deployed | 11:34:18 |
| 23 | in the United States under those circumstances. | 11:34:25 |
| 24 | Q.    If -- if Pegasus is installed through | 11:34:28 |
| 25 | hacking or computer intrusion, would that be a | 11:34:37 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    77

| | | |
|---|---|---|
| 1 | lawful use of Pegasus? | 11:34:40 |
| 2 | MR. AKROTIRIANAKIS:  Object to the form of | 11:34:43 |
| 3 | the question. | 11:34:45 |
| 4 | A.   If a federal judge authorized the end user | 11:34:45 |
| 5 | of Pegasus to install that through an intrusion, in | 11:34:58 |
| 6 | my opinion, that would be legal. | 11:35:09 |
| 7 | Q.   That's not a hack -- what you described is | 11:35:12 |
| 8 | not what's commonly referred to as "hack" or what | 11:35:17 |
| 9 | you've referred to as a "hack;" correct? | 11:35:20 |
| 10 | MR. AKROTIRIANAKIS:  Object to the form of | 11:35:22 |
| 11 | the question. | 11:35:22 |
| 12 | A.   Correct.  A hack, in my opinion, would be | 11:35:22 |
| 13 | something that was done without authority from a | 11:35:28 |
| 14 | federal judge. | 11:35:37 |
| 15 | Q.   And you're aware that in this case, since | 11:35:37 |
| 16 | the issuance of your report, Judge Hamilton has | 11:35:42 |
| 17 | found that NSO violated the CFAA. | 11:35:47 |
| 18 | Are you aware of that? | 11:35:50 |
| 19 | A.   I am aware of that, though I have not read | 11:35:51 |
| 20 | the order. | 11:35:56 |
| 21 | Q.   And you're aware that she also ruled that | 11:35:57 |
| 22 | NSO violated the Companion California Statute? | 11:36:00 |
| 23 | A.   I am aware of that. | 11:36:05 |
| 24 | Q.   And why is it that you didn't read the | 11:36:06 |
| 25 | opinion? | 11:36:09 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                              79

| | | |
|---|---|---|
| 1 | to a device that is encrypted. | 11:38:06 |
| 2 | Q.   Does that refer to a particular program or | 11:38:16 |
| 3 | company or anyone that has similar software | 11:38:18 |
| 4 | capabilities? | 11:38:24 |
| 5 | MR. AKROTIRIANAKIS:  Object to the form of | 11:38:26 |
| 6 | the question. | 11:38:27 |
| 7 | A.   It does not. | 11:38:27 |
| 8 | Q.   Can I ask you to take a look at | 11:38:33 |
| 9 | paragraph 36 on page 16? | 11:38:38 |
| 10 | It reads: "However, federal laws provide | 11:38:39 |
| 11 | avenues for law enforcement to lawfully intercept | 11:38:44 |
| 12 | communications using tools like Pegasus, including | 11:38:47 |
| 13 | Title 3 wiretaps and FISA warrants." | 11:38:52 |
| 14 | Can you explain what that paragraph means? | 11:38:55 |
| 15 | A.   Yes.  If -- | 11:38:57 |
| 16 | Q.   Please -- please explain. | 11:39:07 |
| 17 | A.   If there's a valid Title 3 or FISA warrant | 11:39:08 |
| 18 | for communications that are encrypted, in my | 11:39:15 |
| 19 | opinion, Title 3 and FISA would be a proper avenue | 11:39:25 |
| 20 | authorizing law enforcement to use Pegasus. | 11:39:37 |
| 21 | Q.   Are you aware of any Title 3 wiretap order | 11:39:41 |
| 22 | ordering the use of Pegasus or any NSO product? | 11:39:45 |
| 23 | A.   I am not. | 11:39:48 |
| 24 | Q.   Are you aware of any FISA warrant | 11:39:51 |
| 25 | approving the use of Pegasus or any NSO product? | 11:39:54 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    82

| | | |
|---|---|---|
| 1 | Q.   What are the criminal and civil penalties | 11:43:12 |
| 2 | for abuse of Title 3 and FISA warrants? | 11:43:18 |
| 3 | A.   Criminal penalties would be a criminal | 11:43:30 |
| 4 | conviction.  It's a federal crime, and I believe the | 11:43:34 |
| 5 | penalty could be up to 20 years in prison. | 11:43:44 |
| 6 | In terms of civil rights of action, I know | 11:43:49 |
| 7 | there are civil rights of action.  I'm not sure what | 11:43:51 |
| 8 | the possible penalties are. | 11:43:55 |
| 9 | Q.   But you know that one of the safeguards -- | 11:43:58 |
| 10 | one of the possible causes of action is the CFAA; | 11:44:01 |
| 11 | right?  Computer Fraud and Abuse Act? | 11:44:05 |
| 12 | A.   Correct. | 11:44:08 |
| 13 | Q.   Let me go now to your education and | 11:44:08 |
| 14 | educational background.  You attended Indiana | 11:44:19 |
| 15 | University School of Law and graduated in 1988; is | 11:44:23 |
| 16 | that correct? | 11:44:25 |
| 17 | A.   That is correct. | 11:44:25 |
| 18 | Q.   Is it fair to say you took criminal law | 11:44:25 |
| 19 | classes when you were in law school? | 11:44:28 |
| 20 | A.   I did. | 11:44:29 |
| 21 | Q.   And did any of those classes cover federal | 11:44:30 |
| 22 | law and electronic surveillance? | 11:44:34 |
| 23 | A.   They did not. | 11:44:37 |
| 24 | Q.   Did you take criminal procedure in law | 11:44:37 |
| 25 | school? | 11:44:42 |

| | | |
|---|---|---|
| 1 | in or was involved in in any way? | 13:06:43 |
| 2 | A.  I had no role in that case. | 13:06:44 |
| 3 | Q.  And in preparing your expert report, did | 13:06:46 |
| 4 | you talk to anybody involved in that case? | 13:06:50 |
| 5 | A.  I did not. | 13:06:51 |
| 6 | Q.  And were you involved in writing this | 13:06:52 |
| 7 | lawful access policy or post on the DOJ website? | 13:06:55 |
| 8 | A.  No. | 13:07:00 |
| 9 | Q.  Did you talk to the authors? | 13:07:00 |
| 10 | A.  I did not. | 13:07:02 |
| 11 | Q.  And so, to the extent that you relied on | 13:07:03 |
| 12 | it, it was based on the fact that you read it? | 13:07:08 |
| 13 | A.  That's correct. | 13:07:10 |
| 14 | Q.  Anything else you did with respect to that | 13:07:11 |
| 15 | article that is relevant for your expert report? | 13:07:13 |
| 16 | MR. AKROTIRIANAKIS:  Object to the form of | 13:07:17 |
| 17 | the question. | 13:07:17 |
| 18 | A.  No. | 13:07:17 |
| 19 | Q.  Okay.  Next is a citation to executive | 13:07:18 |
| 20 | order, President Biden, March 27, 2023. | 13:07:25 |
| 21 | Do you see that? | 13:07:28 |
| 22 | A.  I do. | 13:07:29 |
| 23 | Q.  Can you tell me what that is? | 13:07:30 |
| 24 | A.  It's a lengthy document.  Obviously the | 13:07:33 |
| 25 | executive order itself would be the best source of | 13:07:38 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    100

| | | |
|---|---|---|
| 1 | information.  But my understanding, it was an | 13:07:41 |
| 2 | executive order directed toward the use of spyware | 13:07:44 |
| 3 | as defined by that order. | 13:07:58 |
| 4 |     Q.   And could I ask you to look at Tab 16? | 13:08:01 |
| 5 |         (Exhibit 2106 marked.) | 13:08:04 |
| 6 | BY MR. ANDRES: | 13:08:04 |
| 7 |     Q.   Okay.  If I could just direct your -- and | 13:08:34 |
| 8 | this is a document that you reviewed and relied on | 13:08:36 |
| 9 | for your expert report? | 13:08:40 |
| 10 |         MR. AKROTIRIANAKIS:  Object to the form of | 13:08:42 |
| 11 | the question. | 13:08:43 |
| 12 |     A.   Yes, this is a document I considered. | 13:08:43 |
| 13 |     Q.   If you look at the second full paragraph | 13:08:49 |
| 14 | towards the end, one, two, three, four, five, six, | 13:08:51 |
| 15 | seven, eight lines down.  It says: "Foreign | 13:08:55 |
| 16 | governments and persons have deployed commercial | 13:08:58 |
| 17 | spyware against United States government | 13:09:02 |
| 18 | institutions, personnel, information, and | 13:09:03 |
| 19 | information systems, presenting significant | 13:09:06 |
| 20 | counterintelligence and security risks to the United | 13:09:09 |
| 21 | States government." | 13:09:12 |
| 22 |         Do you see that? | 13:09:14 |
| 23 |     A.   I see that. | 13:09:14 |
| 24 |     Q.   And then, it says:  "Foreign governments | 13:09:17 |
| 25 | and persons have also used commercial spyware for | 13:09:22 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                                   101

| | | |
|---|---|---|
| 1 | improper purposes such as to target and intimidate | 13:09:25 |
| 2 | perceived opponents, curb dissent, limit freedom of | 13:09:29 |
| 3 | expression, peacefully assemble or -- or | 13:09:36 |
| 4 | association, peaceful assembly or association, and | 13:09:37 |
| 5 | enable other human rights abuses or suppression of | 13:09:41 |
| 6 | civil liberties, and track or target United States | 13:09:45 |
| 7 | persons without proper legal authorization, | 13:09:49 |
| 8 | safeguards or oversight." | 13:09:51 |
| 9 | Do you see that? | 13:09:53 |
| 10 | A.    I do. | 13:09:53 |
| 11 | Q.    It's your understanding that NSO is a | 13:09:54 |
| 12 | provider of commercial spyware; correct? | 13:10:00 |
| 13 | MR. AKROTIRIANAKIS:  Object to the form of | 13:10:04 |
| 14 | the question. | 13:10:05 |
| 15 | A.    I struggle with the term "spyware."  They | 13:10:05 |
| 16 | do provide a technology which allows the end user to | 13:10:22 |
| 17 | intercept and have access to encrypted | 13:10:37 |
| 18 | communications. | 13:10:39 |
| 19 | Q.    And so, you don't think that the -- that | 13:10:49 |
| 20 | the reference to commercial spyware in this | 13:10:52 |
| 21 | executive order relates directly to NSO? | 13:10:55 |
| 22 | MR. AKROTIRIANAKIS:  Object to the form of | 13:11:03 |
| 23 | the question.  Misstates his testimony. | 13:11:05 |
| 24 | A.    I'm uncertain of whether or not the author | 13:11:19 |
| 25 | of this executive order specifically directed it to | 13:11:22 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    102

| | | |
|---|---|---|
| 1 | NSO and Pegasus.  I'll leave it at that. | 13:11:27 |
| 2 |      Q.   Do you know that the Commerce Department | 13:11:35 |
| 3 | put NSO on the blacklist; correct? | 13:11:38 |
| 4 |           MR. AKROTIRIANAKIS:  Object to the form of | 13:11:41 |
| 5 | the question. | 13:11:41 |
| 6 |      A.   I know that the Commerce Department put | 13:11:41 |
| 7 | NSO on the banned entity list, yes. | 13:11:51 |
| 8 |      Q.   Okay.  If you look on page 2, President | 13:11:58 |
| 9 | Biden's executive order says:  "I hereby establish | 13:12:04 |
| 10 | as the policy of the United States Government that | 13:12:08 |
| 11 | it shall not make operational use of commercial | 13:12:11 |
| 12 | spyware that poses significant counterintelligence | 13:12:15 |
| 13 | or security risks to the United States Government or | 13:12:18 |
| 14 | significant risks of improper use by a foreign | 13:12:20 |
| 15 | government or foreign person." | 13:12:24 |
| 16 |           Do you see that? | 13:12:25 |
| 17 |      A.   I do. | 13:12:25 |
| 18 |      Q.   If NSO was considered commercial spyware, | 13:12:26 |
| 19 | its use in the United States would be prohibited by | 13:12:32 |
| 20 | this executive order; correct? | 13:12:36 |
| 21 |           MR. AKROTIRIANAKIS:  Object to the form of | 13:12:38 |
| 22 | the question.  Misstates the document. | 13:12:39 |
| 23 |      A.   Not necessarily. | 13:12:40 |
| 24 |      Q.   Why not? | 13:12:44 |
| 25 |      A.   My reading of the executive order has a | 13:12:45 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    103

| | | |
|---|---|---|
| 1 | section which allows for any manufacturer to take | 13:12:56 |
| 2 | subsequent corrective or remedial measures to | 13:13:04 |
| 3 | mitigate the risks identified, and thus, exclude it | 13:13:10 |
| 4 | from coverage under this order. | 13:13:19 |
| 5 | Q.   And where is that in the order? | 13:13:22 |
| 6 | A.   I'm looking at page 4. | 13:13:24 |
| 7 | Q.   Okay. | 13:13:46 |
| 8 | A.   (iii) or 3.  In determining whether it | 13:13:57 |
| 9 | poses significant counterintelligence or security | 13:14:10 |
| 10 | risks, or poses a significant risk of improper use | 13:14:14 |
| 11 | by a foreign government, et cetera, et cetera, et | 13:14:15 |
| 12 | certa.  "Whether the entity has taken appropriate | 13:14:19 |
| 13 | measures to remove such risk, such as cancelling | 13:14:20 |
| 14 | relevant licensing agreements or contracts that | 13:14:23 |
| 15 | present such risks; taking other verifiable action | 13:14:26 |
| 16 | to prevent continuing uses that present such risks; | 13:14:29 |
| 17 | or cooperating with the United States Government in | 13:14:35 |
| 18 | efforts to counter improper use." | 13:14:38 |
| 19 | Q.   And what remedial action that you're aware | 13:14:41 |
| 20 | of has NSO taken that would qualify this exception? | 13:14:43 |
| 21 | A.   My understanding is that they have taken | 13:14:56 |
| 22 | remedial actions to limit the risks that the end | 13:14:59 |
| 23 | user would -- trying to find the specific | 13:15:11 |
| 24 | language -- to prevent the improper use. | 13:15:24 |
| 25 | Q.   And what remedial actions are those? | 13:15:31 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    104

| | | |
|---|---|---|
| 1 | A.    There is end use language.  It's my | 13:15:33 |
| 2 | understanding there are contracts.  There is -- in a | 13:15:42 |
| 3 | report I have reviewed, Transparency Report I | 13:15:48 |
| 4 | believe it was referred to, which would be the best | 13:15:54 |
| 5 | source of the steps -- they have taken due diligent | 13:15:58 |
| 6 | steps to prevent this technology from being used | 13:16:04 |
| 7 | improperly.  And my understanding is that prior to | 13:16:12 |
| 8 | this technology being exported to the United States | 13:16:24 |
| 9 | or other countries, the Israeli Ministry of Defense | 13:16:35 |
| 10 | would need to make a determination that the use of | 13:16:39 |
| 11 | this technology was proper.  I would consider those | 13:16:46 |
| 12 | remedial steps which would qualify under this | 13:16:58 |
| 13 | section. | 13:17:01 |
| 14 | Q.   And that information is -- your | 13:17:01 |
| 15 | understanding about that information is based on the | 13:17:04 |
| 16 | documents that NSO showed you? | 13:17:07 |
| 17 | A.    Those documents that I referred -- and | 13:17:11 |
| 18 | they would be the best source -- are a -- I believe | 13:17:15 |
| 19 | it was referred to as a Transparency Report which | 13:17:19 |
| 20 | was prepared by NSO. | 13:17:22 |
| 21 | Q.   And you never -- you never talked to | 13:17:25 |
| 22 | anybody at NSO; is that correct? | 13:17:28 |
| 23 | A.    That is correct. | 13:17:31 |
| 24 | Q.   And as a prosecutor, you're familiar with | 13:17:34 |
| 25 | the concept of corroboration; is that correct? | 13:17:36 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                          119

| | | |
|---|---|---|
| 1 | gathering depending on who the client was? | 13:38:21 |
| 2 | MR. AKROTIRIANAKIS:  Object to the form of | 13:38:24 |
| 3 | the question. | 13:38:24 |
| 4 | A.   That would be relevant.  That would be a | 13:38:32 |
| 5 | relevant factor, yes. | 13:38:34 |
| 6 | Q.   Would you come to a different conclusion | 13:38:34 |
| 7 | if, for example, the client was Iran versus it being | 13:38:40 |
| 8 | Spain? | 13:38:41 |
| 9 | A.   Yes. | 13:38:41 |
| 10 | Q.   And that's not information that you had? | 13:38:41 |
| 11 | A.   This is the -- this is the one agreement | 13:38:52 |
| 12 | that I had to consider in preparing my report and | 13:38:54 |
| 13 | opinion. | 13:38:58 |
| 14 | Q.   That's the one agreement that NSO decided | 13:38:58 |
| 15 | to give you? | 13:39:00 |
| 16 | MR. AKROTIRIANAKIS:  Object to the form of | 13:39:02 |
| 17 | the question. | 13:39:02 |
| 18 | A.   It's the one exhibit I considered. | 13:39:02 |
| 19 | Q.   You didn't ask for any other contracts? | 13:39:06 |
| 20 | A.   I did not. | 13:39:14 |
| 21 | Q.   In the course of preparing your expert | 13:39:14 |
| 22 | report, did you ever review WhatsApp's terms of | 13:39:17 |
| 23 | service? | 13:39:19 |
| 24 | A.   I have reviewed WhatsApp's terms of | 13:39:20 |
| 25 | service.  I don't know if I -- I did not review it | 13:39:33 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                              124

| | | |
|---|---|---|
| 1 | A.   I am not. | 13:46:41 |
| 2 | Q.   Did you review the report of NSO's expert, | 13:46:41 |
| 3 | Colonel Ty Shepard? | 13:46:47 |
| 4 | A.   I did not review that report. | 13:46:48 |
| 5 | Q.   How about the report of NSO's expert, | 13:46:50 |
| 6 | Gregory Pinsonneault? | 13:46:54 |
| 7 | A.   I did not review that report. | 13:46:56 |
| 8 | Q.   How about the expert report of NSO expert | 13:46:57 |
| 9 | Terry McGraw? | 13:47:01 |
| 10 | A.   I did not review that report. | 13:47:03 |
| 11 | Q.   Did you review the transcript of any of | 13:47:06 |
| 12 | those individual's testimonies? | 13:47:08 |
| 13 | A.   I did not. | 13:47:11 |
| 14 | Q.   And is it fair to say that you're not | 13:47:11 |
| 15 | offering an opinion about NSO's access in this case | 13:47:17 |
| 16 | was authorized? | 13:47:20 |
| 17 | A.   I am not offering that opinion. | 13:47:21 |
| 18 | Q.   You're not offering any opinion about | 13:47:25 |
| 19 | whether NSO's access was legally obtained? | 13:47:28 |
| 20 | A.   I am not offering an opinion on that | 13:47:33 |
| 21 | issue. | 13:47:38 |
| 22 | Q.   Is it fair to say that you're not offering | 13:47:38 |
| 23 | any opinion about whether NSO targeted California | 13:47:41 |
| 24 | servers in this case? | 13:47:44 |
| 25 | A.   I am not offering an opinion on that. | 13:47:46 |

| | | |
|---|---|---|
| 1 | enforcement agencies in other countries. | 15:26:54 |
| 2 | Q. And what's the basis you have to conclude | 15:26:59 |
| 3 | that that use of Pegasus by law enforcement in other | 15:27:01 |
| 4 | countries was lawful? | 15:27:06 |
| 5 | A. It would be by reading that source | 15:27:07 |
| 6 | material. | 15:27:16 |
| 7 | Q. Right. So in other words, you're not | 15:27:18 |
| 8 | giving legal opinion about the legality of some law | 15:27:20 |
| 9 | enforcement effort in Saudi Arabia or anywhere else; | 15:27:23 |
| 10 | is that correct? | 15:27:29 |
| 11 | A. That's correct. | 15:27:29 |
| 12 | Q. You're not qualified to testify about the | 15:27:30 |
| 13 | lawfulness of some law enforcement technique in a | 15:27:33 |
| 14 | foreign country? | 15:27:36 |
| 15 | A. I would agree that. I think the exception | 15:27:37 |
| 16 | would be 2008 in the Republic of Mexico. I had some | 15:27:54 |
| 17 | limited knowledge of how Mexican law enforcement | 15:28:03 |
| 18 | agencies were using information which DEA shared | 15:28:13 |
| 19 | with them in my investigation. And again, I had a | 15:28:20 |
| 20 | limited understanding that that use was lawful. | 15:28:24 |
| 21 | Q. Okay. Let's skip ahead to paragraph 6 on | 15:28:27 |
| 22 | page 2. It says, "With over 30 years of law | 15:28:35 |
| 23 | enforcement experience, I have led more than 50 | 15:28:42 |
| 24 | investigations resulting in the prosecution of more | 15:28:45 |
| 25 | than 500 criminal defendants in federal court." | 15:28:47 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                                    168

```
 1        Q.   During the time that you worked on the        15:38:45
 2   AGAC or the US Attorney, and then you had a high         15:38:48
 3   ranging position in the Justice Department, did you      15:38:52
 4   ever advocate for a change in the law that would         15:38:54
 5   allow for the surveillance of end-to-end encryption?     15:38:59
 6             MR. AKROTIRIANAKIS:  Object to the form of     15:39:06
 7   the question.                                            15:39:07
 8        A.   I did not advocate for that.  It certainly     15:39:07
 9   was discussed in the committee meetings, and we did      15:39:17
10   discuss cases that occurred where there was              15:39:21
11   encryption in law enforcement and could not gain         15:39:36
12   access to the device because of the encryption,          15:39:39
13   yeah.                                                    15:39:48
14             It was certainly discussed, and at least       15:39:49
15   my recollection is that everyone discussing that,        15:39:52
16   favored some technology or some option for law           15:40:06
17   enforcement where they could where they could get        15:40:12
18   access to encrypted devices.                             15:40:21
19        Q.   I'm just wondering, there's a repeated         15:40:22
20   reference to the need for this type of surveillance,     15:40:25
21   but there has not been any change in law by Congress     15:40:29
22   or any proposed legislation or anything to ban           15:40:33
23   end-to-end encryption or otherwise; is that correct?     15:40:37
24             MR. AKROTIRIANAKIS:  Object to the form of     15:40:41
25   the question.  No foundation.                            15:40:41
```

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    173

| | | |
|---|---|---|
| 1 | of communications in criminal prosecution." | 15:46:15 |
| 2 | When you refer to that, you're talking | 15:46:17 |
| 3 | about your own cases where you used Title 3 -- or | 15:46:19 |
| 4 | you got Title 3 orders from a court; right? | 15:46:27 |
| 5 | MR. AKROTIRIANAKIS:  Objection to the form | 15:46:30 |
| 6 | of the question. | 15:46:31 |
| 7 | A.  Either the cases that -- that I prosecuted | 15:46:31 |
| 8 | or the prosecutions I supervised. | 15:46:35 |
| 9 | Q.  You're not talking about any type of study | 15:46:38 |
| 10 | about the number of Title 3s that are authorized | 15:46:41 |
| 11 | nationwide throughout -- through the Department of | 15:46:45 |
| 12 | Justice; correct? | 15:46:49 |
| 13 | A.  I am not talking about that. | 15:46:49 |
| 14 | Q.  And you're aware that that information is | 15:46:50 |
| 15 | reported by the Department to Congress and | 15:46:53 |
| 16 | otherwise? | 15:46:55 |
| 17 | A.  I am aware of that. | 15:46:56 |
| 18 | Q.  And you didn't look at any of that | 15:46:57 |
| 19 | information? | 15:46:59 |
| 20 | A.  I have not looked at that since 2020, but | 15:47:00 |
| 21 | I used to look at that information, yes.  I looked | 15:47:13 |
| 22 | at it and actually had to provide the reporting at | 15:47:15 |
| 23 | times. | 15:47:17 |
| 24 | Q.  Yeah.  But -- but you didn't use that | 15:47:17 |
| 25 | information or rely on it in the content of your | 15:47:19 |

| | | |
|---|---|---|
| 1 | expert report? | 15:47:22 |
| 2 | A.    I -- I was aware of the volume and use of | 15:47:24 |
| 3 | Title 3, electronic surveillance prior to 2020.  I | 15:47:42 |
| 4 | did not review those materials in the preparation of | 15:47:48 |
| 5 | my report, but I was aware of that, so that was my | 15:47:52 |
| 6 | experience that I did have. | 15:47:59 |
| 7 | Q.    You didn't list in the documents that you | 15:48:00 |
| 8 | relied on any reports about Title 3s or anything | 15:48:02 |
| 9 | like that? | 15:48:06 |
| 10 | A.    That's correct. | 15:48:06 |
| 11 | Q.    And aside from the information that you | 15:48:06 |
| 12 | gained in the cases that you worked on or the cases | 15:48:09 |
| 13 | that you supervise, you didn't use some particular | 15:48:13 |
| 14 | methodology to reach your opinions with respect to | 15:48:17 |
| 15 | the need or use of wiretaps? | 15:48:21 |
| 16 | A.    I did not. | 15:48:24 |
| 17 | Q.    Okay.  So let's look at paragraph 9 which | 15:48:24 |
| 18 | involves a case in 1998 where you led a team adjoin | 15:48:31 |
| 19 | FBI, and looks like local police department or | 15:48:39 |
| 20 | Indianapolis Police Department.  "Violent organized | 15:48:42 |
| 21 | group of drug distributors operating in the | 15:48:46 |
| 22 | Brightwood neighborhood." | 15:48:50 |
| 23 | Do you see that? | 15:48:51 |
| 24 | A.    I do. | 15:48:52 |
| 25 | Q.    And apparently in the course of that | 15:48:52 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    180

| | | |
|---|---|---|
| 1 | with me.  But I'm sure that I did look at the press | 15:55:01 |
| 2 | release in this case, for the date probably. | 15:55:08 |
| 3 |     Q.   And if you look at the last sentence ahead | 15:55:10 |
| 4 | of paragraph 13, there are actually quotes that you | 15:55:15 |
| 5 | include from messages that one of the defendants | 15:55:19 |
| 6 | said.  How did you remember those?  Is that by | 15:55:21 |
| 7 | memory as well? | 15:55:22 |
| 8 |     A.   Yeah, I went to the sentencing in this | 15:55:23 |
| 9 | matter, and I do recall that particular message that | 15:55:24 |
| 10 | Fogle sent, "The younger the better." | 15:55:32 |
| 11 |     Q.   So you are quoting from a sentencing | 15:55:36 |
| 12 | that's more than ten years ago that you attended? | 15:55:39 |
| 13 |     A.   I do recall that statement.  I can recall | 15:55:41 |
| 14 | the agent testifying at the sentencing as to that | 15:55:49 |
| 15 | communication.  Yes, I can recall that. | 15:55:53 |
| 16 |     Q.   But you didn't get a copy of the public | 15:55:58 |
| 17 | transcript to check the accuracy of that or didn't | 15:56:01 |
| 18 | get any -- did these guys go to trial? | 15:56:04 |
| 19 |     A.   No, that was - both were guilty pleas.  I | 15:56:06 |
| 20 | did attend Fogle's sentencing.  There was testimony | 15:56:12 |
| 21 | at the sentencing, and at that sentencing that | 15:56:19 |
| 22 | testimony was introduced. | 15:56:27 |
| 23 |     Q.   And so, these guys got approximately 15 | 15:56:30 |
| 24 | and 27 years respectively.  What is it exactly that | 15:56:34 |
| 25 | you were unable to succeed at because of the lack of | 15:56:43 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                              182

| | | |
|---|---|---|
| 1 | That's my familiarity there. | 15:58:29 |
| 2 |     Q.   But your concern about obtaining encrypted | 15:58:29 |
| 3 | message is resolved through the issuance of a search | 15:58:33 |
| 4 | warrant; correct? | 15:58:37 |
| 5 |     A.   In -- those messages that we obtained on | 15:58:38 |
| 6 | that date, the Fogle case, were not encrypted. | 15:58:52 |
| 7 |     Q.   Right.  So my question was: Isn't it | 15:59:05 |
| 8 | possible to get encrypted messages from a phone if | 15:59:08 |
| 9 | you do a search warrant on that phone? | 15:59:10 |
| 10 |     A.   I am familiar -- not the Fogle case -- | 15:59:12 |
| 11 | yes, it is possible to do that.  Yeah. | 15:59:19 |
| 12 |     Q.   Right.  So my only point is that Pegasus | 15:59:22 |
| 13 | and self help and violating the law are not the only | 15:59:25 |
| 14 | ways to secure encrypted messages from a target's | 15:59:28 |
| 15 | phone? | 15:59:33 |
| 16 |     MR. AKROTIRIANAKIS:  Object to the form of | 15:59:33 |
| 17 | the question. | 15:59:43 |
| 18 |     A.   In -- in 2015 when this investigation was | 15:59:43 |
| 19 | done, the messages were not encrypted.  My | 15:59:49 |
| 20 | understanding is that in 20 cases, that I'm familiar | 15:59:55 |
| 21 | with, were in 2018, 2019, and 2020 where in -- in my | 16:00:04 |
| 22 | personal experience as a supervisor, encrypted | 16:00:12 |
| 23 | communications were used and there were times when | 16:00:18 |
| 24 | we were unable to access those communications | 16:00:24 |
| 25 | because they were encrypted, even with a search | 16:00:26 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                               183

| | | |
|---|---|---|
| 1 | warrant. | 16:00:29 |
| 2 | Q.   Okay.  Let's go to paragraph 13.  This is | 16:00:33 |
| 3 | the terrorism case that I think you've been | 16:00:40 |
| 4 | referring to with Akram Musleh; is that correct?  Is | 16:00:43 |
| 5 | that how you pronounce that? | 16:00:47 |
| 6 | A.   Musleh; correct. | 16:00:47 |
| 7 | Q.   This is the one terrorism case that you | 16:00:48 |
| 8 | worked on that I think you testified about; is that | 16:00:50 |
| 9 | correct? | 16:00:54 |
| 10 | A.   That is correct. | 16:00:54 |
| 11 | Q.   And you supervised it? | 16:00:55 |
| 12 | A.   Yes. | 16:00:57 |
| 13 | Q.   And this involved electronic surveillance? | 16:00:57 |
| 14 | A.   It did. | 16:00:59 |
| 15 | Q.   And it led to the successful prosecution | 16:01:02 |
| 16 | of this individual who was affiliated with ISIS? | 16:01:04 |
| 17 | A.   Without the electronic surveillance, this | 16:01:10 |
| 18 | individual could not have been prosecuted. | 16:01:14 |
| 19 | Q.   Right.  But in other words, there were | 16:01:16 |
| 20 | lawful means, without Pegasus, to obtain electronic | 16:01:18 |
| 21 | surveillance and make an arrest of this individual; | 16:01:24 |
| 22 | is that correct? | 16:01:26 |
| 23 | A.   That is correct. | 16:01:26 |
| 24 | Q.   And he was sentenced to 100 months | 16:01:28 |
| 25 | imprisonment; is that right? | 16:01:34 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                              185

| | | |
|---|---|---|
| 1 | your expert report? | 16:02:38 |
| 2 | A.   This one I -- A, I have personal | 16:02:40 |
| 3 | recollection of this case, it was fairly significant | 16:02:45 |
| 4 | and important.  I believe on this one as well, I did | 16:02:47 |
| 5 | review the press release for the dates, the spelling | 16:02:54 |
| 6 | of the names.  But I do recall this prosecution and | 16:02:59 |
| 7 | being briefed on it regularly. | 16:03:04 |
| 8 | Q.   And you didn't list the press release on | 16:03:08 |
| 9 | the documents that you relied on in this case; is | 16:03:11 |
| 10 | that -- is that -- | 16:03:16 |
| 11 | A.   That is correct.  The press release is not | 16:03:16 |
| 12 | in there.  But I did -- I did review the press | 16:03:19 |
| 13 | release to provide the specific dates and spellings | 16:03:22 |
| 14 | of names.  But I do recall in this case -- | 16:03:30 |
| 15 | Q.   Aside from looking at the press release, | 16:03:33 |
| 16 | you didn't look at any court documents -- you didn't | 16:03:35 |
| 17 | look at any court documents; did you? | 16:03:37 |
| 18 | A.   No, I don't have access to those anymore. | 16:03:39 |
| 19 | Q.   Well, they're on the public records? | 16:03:43 |
| 20 | A.   I think some of them may be.  I think some | 16:03:48 |
| 21 | of them may be.  Some of them probably -- this would | 16:03:50 |
| 22 | come from my recollection. | 16:03:53 |
| 23 | Q.   You didn't talk to the AUSAs involved in | 16:03:54 |
| 24 | this case; did you? | 16:04:01 |
| 25 | A.   I did not. | 16:04:01 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025

186

| 1 | Q. You didn't talk to the agents? | 16:04:03 |
| 2 | A. I did not. | 16:04:04 |
| 3 | Q. Okay. Paragraph 15 says: "In each of | 16:04:04 |
| 4 | these instances, intercepted communications were | 16:04:10 |
| 5 | critical to the investigation and prosecution of | 16:04:13 |
| 6 | these crimes. Today, many of these communications | 16:04:15 |
| 7 | likely would have been encrypted, impairing or | 16:04:18 |
| 8 | impeding the investigations and prosecutions." | 16:04:22 |
| 9 | Right? Did you read that? | 16:04:26 |
| 10 | A. Yes. | 16:04:29 |
| 11 | Q. What is the basis for you to possibly be | 16:04:29 |
| 12 | speculating about what would have happened with | 16:04:31 |
| 13 | these defendants and these cases today? | 16:04:34 |
| 14 | MR. AKROTIRIANAKIS: Object to the form of | 16:04:37 |
| 15 | the question. | 16:04:37 |
| 16 | A. I read, again, publicly available material | 16:04:37 |
| 17 | which indicates that in drug cases, in child sexual | 16:04:51 |
| 18 | crimes to include child exploitation crimes, and in | 16:05:00 |
| 19 | terrorism cases, increasingly those individuals used | 16:05:05 |
| 20 | counter-surveillance measures that include | 16:05:18 |
| 21 | end-to-end encryption. And personal experience, in | 16:05:22 |
| 22 | the cases I supervised, led me to believe that there | 16:05:24 |
| 23 | was, during 2019 and 2020, increased use of | 16:05:36 |
| 24 | end-to-end encryption. | 16:05:48 |
| 25 | Q. You read a doc? What document did you | 16:05:54 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                              199

| | | |
|---|---|---|
| 1 | Chris Tate case? | 16:22:45 |
| 2 | A.    Again, this case is a case I recalled that | 16:22:48 |
| 3 | happened while I was United States Attorney.  My | 16:22:56 |
| 4 | recollection of the date is not included.  I believe | 16:23:02 |
| 5 | it was in 2019 and 2020 again. | 16:23:08 |
| 6 | Q.    And you didn't rely on any documents to -- | 16:23:18 |
| 7 | to include the information in paragraph 18? | 16:23:21 |
| 8 | A.    This is -- this was based on my | 16:23:23 |
| 9 | recollection of the case and trial testimony in the | 16:23:25 |
| 10 | case as relayed to me by the assistants who were | 16:23:34 |
| 11 | prosecuting the case. | 16:23:37 |
| 12 | Q.    And what year did you say this was? | 16:23:38 |
| 13 | A.    I -- again, I'm -- my understanding was it | 16:23:39 |
| 14 | was 2018, 2019, 2020.  The trial might have taken | 16:23:46 |
| 15 | place after I left, but I'm -- I'm reasonably | 16:23:51 |
| 16 | certain it happened while I was there. | 16:23:55 |
| 17 | Q.    Okay.  So -- and you left in 2020, so -- | 16:23:58 |
| 18 | A.    The end of November 2020. | 16:24:02 |
| 19 | Q.    So four or more years old? | 16:24:03 |
| 20 | A.    Yes, correct. | 16:24:05 |
| 21 | Q.    And as you sat down to write this report, | 16:24:06 |
| 22 | you remembered the testimony such that you could | 16:24:08 |
| 23 | quote it by saying "because you guys weren't | 16:24:16 |
| 24 | supposed to hear his phone calls on FaceTime." | 16:24:17 |
| 25 |         You remembered that testimony without | 16:24:20 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                          200

```
 1   relying on any source document?                        16:24:22
 2        A.   I -- I didn't rely on any source document,   16:24:25
 3   and I'm not sure that quote is verbatim, but that      16:24:36
 4   is -- that is the quote that I recall from the         16:24:46
 5   trial.                                                 16:24:50
 6        Q.   You didn't check it against anything?        16:24:50
 7        A.   I don't believe -- no, I did not compare     16:24:52
 8   the transcript of the trial to it.                     16:24:55
 9        Q.   And this individual, Danielle Dowling.  Is   16:24:57
10   she a cooperating witness?                             16:25:06
11        A.   She was.                                     16:25:07
12        Q.   And she testified at the trial?             16:25:08
13        A.   I believe she did, yes.  Yes, that is        16:25:10
14   correct.  That's correct.                              16:25:12
15        Q.   And how many days did she take the stand?    16:25:13
16        A.   That, I don't recall.                        16:25:16
17        Q.   Were you present for the testimony?          16:25:18
18        A.   I was not present.  This quote, I believe    16:25:19
19   was relayed to me by either one of the -- by one of    16:25:24
20   the agents during the trial, I believe.  That's my     16:25:31
21   recollection.                                          16:25:35
22        Q.   And who is that agent?                       16:25:35
23        A.   I believe it's Matt Holbrook, but again,     16:25:36
24   it was -- it was some time ago.                        16:25:44
25        Q.   And there are a number of different quotes   16:25:46
```

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                                210

| | | |
|---|---|---|
| 1 | quote was relayed to me after -- from either the | 16:38:20 |
| 2 | agent or the AUSA, and I do recall that quote. | 16:38:25 |
| 3 | Again, it's not verbatim, but that is the | 16:38:28 |
| 4 | sum and substance of the quote.  I do remember the | 16:38:33 |
| 5 | grammatically incorrect statements about that and | 16:38:38 |
| 6 | the use of FaceTime.  I do recall that. | 16:38:43 |
| 7 | Q.   You didn't do anything -- you could have | 16:38:49 |
| 8 | gotten transcript from this case and checked that | 16:38:51 |
| 9 | testimony.  You didn't do that? | 16:38:54 |
| 10 | A.   I did not do that. | 16:38:54 |
| 11 | Q.   And as you sit here today, you can't | 16:38:56 |
| 12 | testify under oath that that is a verbatim quote? | 16:38:58 |
| 13 | A.   I cannot. | 16:39:01 |
| 14 | Q.   And yet, you put it in quotation marks | 16:39:05 |
| 15 | with the understanding that it would be conveyed as | 16:39:09 |
| 16 | a verbatim quote? | 16:39:11 |
| 17 | MR. AKROTIRIANAKIS:  Object to the form of | 16:39:12 |
| 18 | the question.  Misstates the witness's testimony. | 16:39:13 |
| 19 | A.   I guess it wasn't my understanding it | 16:39:15 |
| 20 | would be conveyed as a verbatim quote.  That is my | 16:39:17 |
| 21 | recollection of what was relayed to me of what the | 16:39:20 |
| 22 | trial testimony was. | 16:39:25 |
| 23 | Q.   I don't understand that. | 16:39:26 |
| 24 | A.   Yeah. | 16:39:26 |
| 25 | Q.   You put something in quotes.  What -- what | 16:39:28 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    236

| | | |
|---|---|---|
| 1 | that can be utilized to monitor end-to-end | 17:33:11 |
| 2 | encryption, that technology could be used by the | 17:33:18 |
| 3 | Department of Justice, including the FBI.  Clearly | 17:33:26 |
| 4 | they decided in '22 not to use it.  Could they -- | 17:33:31 |
| 5 | could they have a different opinion based on a | 17:33:39 |
| 6 | necessity to use it?  Yes. | 17:33:45 |
| 7 | Q.   Where in your opinion about the benefit of | 17:33:48 |
| 8 | tools such as Pegasus in law enforcement and | 17:33:52 |
| 9 | national security does it say "in the future"? | 17:33:54 |
| 10 | MR. AKROTIRIANAKIS:  Object to the form of | 17:34:00 |
| 11 | the question. | 17:34:02 |
| 12 | A.   I believe my report would be -- is | 17:34:02 |
| 13 | addressed to the benefits of tools such as Pegasus | 17:34:09 |
| 14 | in law enforcement and national security operations. | 17:34:14 |
| 15 | And those benefits would be current and clearly in | 17:34:18 |
| 16 | the future. | 17:34:22 |
| 17 | Q.   Right.  But as of the New York Times | 17:34:29 |
| 18 | article that you're relying on for your opinion, you | 17:34:31 |
| 19 | had information that you failed to disclose in your | 17:34:34 |
| 20 | report that the Department of Justice has decided | 17:34:36 |
| 21 | not to use Pegasus? | 17:34:38 |
| 22 | MR. AKROTIRIANAKIS:  Object to the form of | 17:34:41 |
| 23 | the question. | 17:34:42 |
| 24 | A.   My understanding is the Department of | 17:34:42 |
| 25 | Justice does not have any devices to include Pegasus | 17:34:51 |

| | | |
|---|---|---|
| 1 | A.   I did not. | 18:20:06 |
| 2 | Q.   Did you talk to anybody at Vodafone? | 18:20:06 |
| 3 | A.   I did not. | 18:20:09 |
| 4 | Q.   All you did was read it; is that correct? | 18:20:09 |
| 5 | A.   That's correct. | 18:20:11 |
| 6 | MR. AKROTIRIANAKIS:  Object to the form of | 18:20:12 |
| 7 | the question. | 18:20:12 |
| 8 | Q.   You didn't do any analysis of the | 18:20:12 |
| 9 | information in the report? | 18:20:14 |
| 10 | A.   I did not do any independent analysis of | 18:20:16 |
| 11 | the information in the report. | 18:20:18 |
| 12 | Q.   Paragraph 53 talks about the Money Clip | 18:20:26 |
| 13 | investigation and you testified about that already; | 18:20:29 |
| 14 | correct? | 18:20:32 |
| 15 | A.   That is Correct. | 18:20:32 |
| 16 | Q.   Paragraph 54 talks about Pegasus being | 18:20:32 |
| 17 | used in Germany, Spain, Belgium, Poland, and | 18:20:34 |
| 18 | Hungary. | 18:20:38 |
| 19 | Do you see that? | 18:20:38 |
| 20 | A.   I do see that. | 18:20:39 |
| 21 | Q.   And that information is based on a New | 18:20:45 |
| 22 | Yorker article; is that correct? | 18:20:48 |
| 23 | A.   That is correct. | 18:20:48 |
| 24 | Q.   You've been hired by NSO to serve as its | 18:20:48 |
| 25 | expert witness, and the only basis for your | 18:20:52 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                                          262

| | | |
|---|---|---|
| 1 | information that other countries used Pegasus is an | 18:20:55 |
| 2 | article in the New Yorker; is that correct? | 18:20:57 |
| 3 | MR. AKROTIRIANAKIS:  Object to the form of | 18:21:01 |
| 4 | the question.  That misstates the witness's | 18:21:01 |
| 5 | testimony and the report. | 18:21:03 |
| 6 | A.   I -- I believe in the Transparency Report | 18:21:07 |
| 7 | -- well, in the Transparency Report, at a minimum, | 18:21:16 |
| 8 | it does describe other countries that use Pegasus. | 18:21:20 |
| 9 | Q.   I assume that when you're using your | 18:21:24 |
| 10 | expert report and making propositions, you're citing | 18:21:26 |
| 11 | to the most impactful source to support your | 18:21:29 |
| 12 | information; isn't that a fair assumption? | 18:21:35 |
| 13 | MR. AKROTIRIANAKIS:  Object to the form of | 18:21:39 |
| 14 | the question. | 18:21:48 |
| 15 | A.   Most impactful source, I -- I'm not sure I | 18:21:48 |
| 16 | would agree with that.  I would tell you on -- based | 18:21:52 |
| 17 | on both the public reporting and my review of the | 18:21:56 |
| 18 | Transparency Report, that I am aware that Pegasus | 18:22:03 |
| 19 | has been used by several -- by western style | 18:22:07 |
| 20 | democracies. | 18:22:16 |
| 21 | Q.   And you didn't cite to the Transparency | 18:22:17 |
| 22 | Report in paragraph 55? | 18:22:21 |
| 23 | A.   I did not. | 18:22:22 |
| 24 | Q.   You have the ability, as an expert witness | 18:22:23 |
| 25 | on behalf of NSO, to ask NSO or its counsel any | 18:22:25 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    264

| | | |
|---|---|---|
| 1 | continue to evolve in their communication to avoid | 18:24:15 |
| 2 | detection." | 18:24:18 |
| 3 | Do you see that? | 18:24:19 |
| 4 | A.    I do. | 18:24:19 |
| 5 | Q.    Who are the criminals or terrorists that | 18:24:20 |
| 6 | you interviewed to gain the basis of this | 18:24:22 |
| 7 | information? | 18:24:25 |
| 8 | MR. AKROTIRIANAKIS:  Object to the form of | 18:24:29 |
| 9 | the question.  Assumes a fact not in evidence. | 18:24:29 |
| 10 | A.    I have interviewed criminals.  I have not | 18:24:32 |
| 11 | interviewed terrorists, but I'm familiar with | 18:24:38 |
| 12 | terrorist investigations.  And based on that | 18:24:43 |
| 13 | experience, that is the source of my information | 18:24:49 |
| 14 | that criminals and terrorists continue to evolve | 18:24:54 |
| 15 | their communications to avoid detection. | 18:25:03 |
| 16 | Q.    Who are the criminals that you interviewed | 18:25:04 |
| 17 | that you -- who's information you relied on in | 18:25:08 |
| 18 | paragraph 55? | 18:25:10 |
| 19 | MR. AKROTIRIANAKIS:  Object to the form of | 18:25:11 |
| 20 | the question.  Assumes a fact not in evidence.  And | 18:25:12 |
| 21 | it misstates the witness's testimony. | 18:25:14 |
| 22 | A.    I took proffers throughout my career on | 18:25:15 |
| 23 | the cases I led.  I don't recall the names of all | 18:25:25 |
| 24 | the individuals I proffered.  I -- I was made aware | 18:25:32 |
| 25 | as a supervisor, First Assistant US Attorney of the | 18:25:39 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    265

| | | |
|---|---|---|
| 1 | results of proffers.  Based on that experience, my | 18:25:42 |
| 2 | understanding is that criminals continue to evolve | 18:25:49 |
| 3 | their -- what I refer to as counter-surveillance | 18:25:56 |
| 4 | measures in communications to avoid detection. | 18:26:00 |
| 5 | It is also my understanding, again, from | 18:26:05 |
| 6 | participating in meetings with the FBI and | 18:26:10 |
| 7 | discussing investigative techniques and proffers of | 18:26:17 |
| 8 | terrorists and national security investigations, | 18:26:33 |
| 9 | that their methods to avoid detection continue to | 18:26:38 |
| 10 | evolve. | 18:26:45 |
| 11 | Q.   Can you look at paragraph 56? | 18:26:46 |
| 12 | A.   Yes. | 18:26:50 |
| 13 | Q.   Paragraph 56, you cite to a statement from | 18:26:52 |
| 14 | Attorney General William Barr on the introduction of | 18:26:58 |
| 15 | the Lawful Access Bill to the Senate. | 18:27:02 |
| 16 | Do you see that? | 18:27:03 |
| 17 | A.   I do. | 18:27:03 |
| 18 | Q.   Other than read the Attorney General's | 18:27:03 |
| 19 | statement, did you do any other exploration on this | 18:27:08 |
| 20 | topic? | 18:27:12 |
| 21 | MR. AKROTIRIANAKIS:  Object to the form of | 18:27:14 |
| 22 | the question. | 18:27:14 |
| 23 | A.   Not of the statement made by Attorney | 18:27:14 |
| 24 | General Barr when introducing the bill to the | 18:27:24 |
| 25 | senate.  That's -- that's -- reading that statement | 18:27:27 |

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                      284

```
1    colleagues, want providers who manage encrypted data      18:58:10

2    to be able to decrypt that data and provide it to         18:58:13

3    law enforcement in response to US legal process;          18:58:17

4    right?                                                    18:58:21

5            MR. ANDRES:  Objection to the form of the         18:58:21

6    question.                                                 18:58:22

7        A.   Only in response to US legal process, I          18:58:23

8    believe is the statement.                                 18:58:26

9        Q.   Okay.  They want it, they don't have it;         18:58:27

10   right?                                                    18:58:30

11       A.   My understanding is that law enforcement         18:58:30

12   would like to have access to encrypted                    18:58:35

13   communications, and they do not have it.                  18:58:47

14       Q.   Okay.  Now, counsel is asking a question,        18:58:50

15   I think it might have been one which I accused him         18:58:50

16   of being rude.  But I think that it didn't come out       18:58:52

17   -- it might have been because of the interruptions,       18:58:54

18   it might have been because of the bombasity of the        18:58:57

19   entire situation.  But I would like you to explain        18:59:00

20   what you were trying to explain about the quotations      18:59:02

21   in some of the paragraphs of your report, okay?           18:59:05

22           So my question for you is: When you were          18:59:07

23   quoting in your report, and counsel was asking if         18:59:11

24   you were quoting from a source, what were you trying      18:59:15

25   to quote?                                                 18:59:18
```

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    285

```
1        A.   The source was either the AUSA or agent       18:59:18
2    that was familiar with the publicly available          18:59:31
3    information at the trial.  And they were, to the        18:59:33
4    best of my recollection, relaying to me what was        18:59:45
5    said or what the trial testimony was.  So my use of     18:59:47
6    quotes was the information they provided to me about    18:59:52
7    what the witness had said.                              18:59:59
8        Q.   Okay.  And counsel talked about sum and        19:00:03
9    substance to you, were you trying to relate thereby     19:00:08
10   what you understood to be the sum and substance of      19:00:11
11   the source information that you were quoting the        19:00:13
12   relation to you?                                        19:00:17
13       A.   Yes.                                           19:00:17
14       Q.   All right.  Now, you referred to the           19:00:18
15   necessity requirement in connection with the use of    19:00:22
16   electronic interceptions of -- I'm sorry,               19:00:30
17   interceptions -- or I'm going to ask it again.         19:00:33
18            You referred to the necessity requirement      19:00:37
19   under Title 3.                                          19:00:38
20            Do you remember that?                          19:00:39
21            MR. ANDRES:  Objection.  Objection as to       19:00:41
22   form.                                                   19:00:43
23       A.   I did -- I did talk about the necessity        19:00:44
24   requirement, yes.                                       19:00:46
25       Q.   All right.  What is your understanding of      19:00:47
```

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    297

1              CERTIFIED STENOGRAPHER'S CERTIFICATE

2    STATE OF CALIFORNIA   )
                           ) SS.
3    COUNTY OF LOS ANGELES )

4

5         I, NATALIE PARVIZI-AZAD, HERBY CERTIFY:

6         I AM A DULY QUALIFIED CERTIFIED SHORTHAND

7    REPORTER IN THE STATE OF CALIFORNIA, HOLDER OF

8    CERTIFICATE NUMBER CSR 14125 ISSUED BY THE COURT

9    REPORTERS BOARD OF CALIFORNIA AND WHICH IS IN FULL

10   FORCE AND EFFECT.   (BUS. & PROF. § 8016)

11        I AM NOT FINANCIALLY INTERESTED IN THIS

12   ACTION AND NOT A RELATIVE OR EMPLOYEE OF ANY

13   ATTORNEY OF THE PARTIES, OR OF ANY OF THE PARTIES.

14   (CIV. PROC. § 2025.320(A))

15        I AM AUTHORIZED TO ADMINISTER OATHS OR

16   AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL

17   PROCEDURE, SECTION 2093 (B) AND PRIOR TO BEING

18   EXAMINED, THE DEPONENT WAS FIRST PLACED UNDER OATH

19   OR AFFIRMATION BY ME.  (CIV. PROC. §§ 2025.320,

20   2025.540(A))

21        I AM THE CERTIFIED OFFICER THAT

22   STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

23   FOREGOING PROCEEDING AND THE FOREGOING TRANSCRIPT

24   IS A TRUE RECORD OF THE TESTIMONY GIVEN.  (CIV.

25   PROC. §  2025.540(A))

Confidential - Pursuant to PO
Transcript of Joshua Minkler
Conducted on February 11, 2025                    298

```
1           I HAVE NOT, AND SHALL NOT, OFFER OR PROVIDE

2    ANY SERVICES OR PRODUCTS TO ANY PARTY'S ATTORNEY

3    OR THIRD PARTY WHO IS FINANCING ALL OR PART OF THE

4    ACTION WITHOUT FIRST OFFERING SAME TO ALL PARTIES

5    OR THEIR ATTORNEYS ATTENDING THE PROCEEDING AND

6    MAKING SAME AVAILABLE AT THE SAME TIME TO ALL

7    PARTIES OR THEIR ATTORNEYS.  (CIV. PROC §

8    2025.320(B))

9           I SHALL NOT PROVIDE ANY SERVICE OR PRODUCT

10   CONSISTING OF THE CERTIFIED STENOGRAPHER'S

11   NOTATIONS OR COMMENTS REGARDING THE DEMEANOR OF

12   ANY WITNESS, ATTORNEY, OR PARTY PRESENT AT THE

13   PROCEEDING TO ANY PARTY OR ANY PARTY'S ATTORNEY OR

14   THIRD PARTY WHO IS FINANCING ALL OR PART OF THE

15   ACTION, NOR SHALL I COLLECT ANY PERSONAL

16   IDENTIFYING INFORMATION ABOUT THE WITNESS AS A

17   SERVICE OR PRODUCT TO BE PROVIDED TO ANY PARTY OR

18   THIRD PARTY WHO IS FINANCING ALL OR PART OF THE

19   ACTION.  (CIV. PROC. § 2025.320(C))

20

21   DATED:  February 14, 2025

22

23

24   _____
              NATALIE PARVIZI-AZAD, CSR NO.14125
25
```