Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
            antonio.perez@davispolk.com
            gina.cora@davispolk.com
            craig.cagney@davispolk.com
            luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>                    Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF PLAINTIFFS' PROPOSED EXPERT ANTHONY VANCE, PH.D.**<br><br>Date:    April 10, 2025<br>Time:   2:00 p.m.<br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

**[PUBLIC REDACTED VERSION]**

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

BACKGROUND ...............................................................................................................2

LEGAL STANDARD........................................................................................................5

ARGUMENT .....................................................................................................................6

I.    All of Dr. Vance's Opinions Are Appropriately Based on His Qualifications as a Cybersecurity and Software Exploitation Expert..........................................................6

    A.    Dr. Vance Is Qualified To Rebut Irrelevant Testimony from NSO's Experts on Law Enforcement, Military, and Intelligence Topics, if Such Testimony Is Found Admissible. ..................................................................6

    B.    Dr. Vance Is Not Offering Legal Opinions.......................................................9

II.   The Challenged Opinions Remain Relevant and Helpful in the Damages-Only Trial. ...............................................................................................................11

    A.    Dr. Vance's Opinions Remain Relevant Given Plaintiffs Seek Punitive Damages and Dr. Vance's Rebuttal Opinions to NSO's Policy Arguments Are Only Relevant If, Over Plaintiffs' Objection, NSO Is Permitted To Offer Them at Trial. ................................................................12

    B.    Dr. Vance's Opinions on "Hacking" and "Compromising the WhatsApp Platform" Are Relevant and There Is No Risk of Unfair Prejudice...............13

    C.    All of Dr. Vance's Opinions Apply His Expertise. ......................................15

III.  Dr. Vance's Opinions Are Reliable and Proper........................................................20

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

PAGE(S)

<u>CASES</u>

*Banga v. Kanios*,
2023 WL 1944484 (N.D. Cal. Jan 24, 2023) ............................................................... 7

*Beech Aircraft Corp. v. United States*,
51 F.3d 834 (9th Cir. 1995) ...................................................................................... 17

*Benefit Cosmetics LLC v. e.l.f. Cosmetics, Inc.*,
2024 WL 3558848 (N.D. Cal. July 25, 2024) ........................................................... 19

*Brice v. Haynes Invs., LLC*,
548 F. Supp. 3d 882 (N.D. Cal. 2021) ...................................................................... 13

*Brooks v. Thomson Reuters Corp.*,
2023 WL 5667884 (N.D. Cal. Aug. 9, 2023) ............................................................ 22

*Cholakyan v. Mercedes-Benz, USA, LLC*,
281 F.R.D. 534 (C.D. Cal. 2012) .............................................................................. 17

*City of Pomona v. SQM North America Corp.*,
750 F.3d 1036 (9th Cir. 2014) .................................................................................. 20

*Cohen v. Trump*,
2016 WL 4543481 (S.D. Cal. Aug. 29, 2016) ........................................................... 21

*Craigslist, Inc. v. Mesiab*,
2010 WL 5300883 (N.D. Cal Nov. 15, 2010) ............................................................ 12

*Daubert v. Merrell Dow Pharms., Inc*,
509 U.S. 579 (1993) .......................................................................................... *passim*

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) .................................................................................... 20

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) .................................................................................. 20

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..................................................................... 12

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2000) ................................................................................. 5, 9

*Howard v. Cnty. of Riverside*,
2014 WL 12589650 (C.D. Cal. May 7, 2014) ...................................................... 15–16

*Kitsch LLC v. Deejayzoo, LLC*,

ii

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF PLAINTIFFS' PROPOSED
EXPERT ANTHONY VANCE, PH.D. - CASE NO. 4:19-CV-07123-PJH

2023 WL 9423840 (C.D. Cal. Dec. 21, 2023) ............................................................. 19

*Lanard Toys Ltd. v. Anker Play Prod., LLC*,
    2020 WL 6873647 (C.D. Cal. Nov. 12, 2020) ................................................... 18–19

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
    2014 WL 34117941 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016) .......... 17

*M. G. v. Bodum USA, Inc.*,
    2021 WL 718839 (N.D. Cal. Feb. 24, 2021) ..................................................... 19

*Messick v. Novartis Pharm. Corp.*,
    747 F.3d 1193 (9th Cir. 2014) ................................................................... 5

*Northrup v. Werner Enter., Inc.*,
    2015 WL 4756947 (M.D. Fla. Aug. 11, 2015) ..................................................... 6

*Pooshs v. Phillip Morris USA, Inc.*,
    287 F.R.D. 543 (N.D. Cal. 2012) ................................................................. 5

*Powers v. McDonough*,
    2024 WL 3491008 (S.D. Cal. Jul. 19, 2024) ..................................................... 7

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ............................................................... 5, 20

*Racies v. Quincy Bioscience, LLC*,
    2016 WL 5725079 (N.D. Cal. Sept. 30, 2016) ................................................... 5

*Ringcentral, Inc. v. Nextiva, Inc.*,
    2021 WL 12171869 (N.D. Cal. June 25, 2021) ................................................... 6

*In re Roundup Prods. Liability Litig.*,
    390 F. Supp. 3d 1102 (N.D. Cal. 2018) ......................................................... 7

*Ryanair DAC v. Booking Holdings, Inc.*,
    2024 WL 3732498 (D. Del June 17, 2024) ....................................................... 3

*Scott v. Ross*,
    140 F.3d 1275 (9th Cir. 1998) ................................................................. 23

*Smilovits v. First Solar, Inc.*,
    2019 WL 6875492 (D. Ariz. Dec. 17, 2019) ..................................................... 6

*Stilwell v. Smith & Nephew, Inc.*,
    482 F.3d 1187 (9th Cir. 2007) ................................................................. 20

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*,
    296 F. Supp. 3d 1142 (N.D. Cal. 2017) ......................................................... 19

*United States v. Tamman*,
    782 F.3d 543 (9th Cir. 2015) ................................................................... 9

iii

*Van Buren v. United States*,
   593 U.S. 374 (2021) ................................................................................................ 14

*Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*,
   521 F. Supp. 3d 1135 (D. Utah 2021) ................................................................... 3

STATUTES & RULES

Cal. Civil Code § 3294 ............................................................................................... 12

Cal. Penal Code § 502 ................................................................................................ 12

Fed. R. Civ. P. 26 ......................................................................................................... 6

Fed. R. Evid. 403 .................................................................................................... 14–15

Fed. R. Evid. 702 ................................................................................................. *passim*

Fed. R. Evid. 703 ......................................................................................................... 17

Fed. R. Evid. 704 ......................................................................................................... 18

OTHER AUTHORITIES

Meta, "Government Requests for User Data," https://transparency.meta.com/reports/government-data-requests/ ...................................................................................................... 23

Peter Swire, Senate Judiciary Committee hearing, "Going Dark: Encryption, Technology, and the Balance Between Public Safety and Privacy" (Jul. 8, 2015) .............................................. 17

Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6273 (2d ed) ...................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court should deny Defendants' motion to limit or exclude the opinions of Plaintiffs' expert, Anthony Vance, Ph.D.  As an initial matter, Defendants do not attack Dr. Vance's qualifications as an expert in cybersecurity and software exploitation—which is the basis for which Dr. Vance's testimony will be offered.  Defendants admit, for example, that Dr. Vance is "an academic cybersecurity researcher."  Defendants argue instead that Dr. Vance's testimony should be excluded because he is not an expert in "military" or "law enforcement matters" and therefore he is not qualified to rebut the testimony of Defendants' purported experts on these topics. Defendants' military and law enforcement policy arguments are irrelevant and should be excluded from the damages-only trial.  If they are excluded, then Dr. Vance's rebuttal opinions on these points would be moot and not offered at trial.  If Defendants' policy expert opinions are not excluded, then Dr. Vance is qualified to explain to the jury, based on his expertise in cybersecurity and software exploitation, why these policy arguments are misleading, confusing, and/or wrong.

The Court should deny Defendants' attempt to exclude or limit the opinions of Dr. Vance for three primary reasons.

*First*, Dr. Vance is qualified to give expert opinions in cybersecurity and software exploitation—a fact that Defendants do not dispute—and *all* of his offered opinions (both affirmative and rebuttal) are rooted in his extensive expertise in these areas.  NSO's argument that Dr. Vance is not qualified to offer opinions on "legal, law enforcement, military, or intelligence topics," is a nonstarter because NSO admits that Dr. Vance does not hold himself out as an expert in these topics and Plaintiffs are not offering him as an expert in these areas.  It is well established, moreover, that a rebuttal witness's area of expertise need not match the area of expertise of the opposing party's expert.

*Second*, other than Dr. Vance's opinions that rebut Plaintiffs' policy arguments, which may be relevant depending on the scope of the trial, Dr. Vance's opinions are relevant because they help

1

explain to the jury why Plaintiffs are entitled to punitive damages and establish the basis for the jury to find that Defendants acted with "oppression, fraud, or malice."[1]

*Third*, Defendants attack the reliability of Dr. Vance's rebuttal opinions related to their experts' policy arguments, but Defendants' arguments are meritless.  (Defendants do not attack the reliability of Dr. Vance's affirmative opinions.)  Defendants principally complain that Dr. Vance relies on public sources in rendering his rebuttal opinions, but, as Dr. Vance testified during his deposition, he did not have access to the information that Defendants resisted producing in this case—e.g., NSO's customers and NSO's customers' use of Pegasus.  *See, e.g.*, Tr. at 186:9–187:15; 221:7–222:3; 287:8–16.[2]  As such, Dr. Vance was limited to using publicly available sources for his rebuttal opinions to Defendants' law enforcement and military expert opinions.  Tr. at 119:3–25.  Defendants should not be able to take advantage of their own abusive discovery practices.

## BACKGROUND

### I.    Dr. Vance's Background

Dr. Vance received a Bachelor of Science in Information Systems and a Master of Information Systems from Brigham Young University.  Vance Rep. Appx. B; Tr. at 40:17–24.  He received three PhDs: in Management Science from Université Paris–Dauphine, in Computer Information Systems from Georgia State University, and in Information Processing Science from the University of Oulu.  Vance Rep. Appx. B; Tr. at 41:2–8.  He is a tenured professor in the Department of Business Information Technology of the Pamplin College of Business at Virginia Tech.  Vance Rep. Appx. B.  His research interests include behavioral and organizational cybersecurity and neuroscience applications to cybersecurity.  *Id*.  Dr. Vance has published

---

[1] Again, Defendants' experts' policy arguments are irrelevant and should be excluded, *see* Dkt Nos. 504-3, 513-3, 572-3, 592-3, and if those opinions are excluded, then Dr. Vance's rebuttal opinions on these policy topics would be moot and could also be excluded.  (Please note that Dr. Vance also rebuts certain non-policy related opinions of Defendants' technical expert, Terrence McGraw.)

[2] Dr. Vance's deposition transcript is attached as Exhibit A to the Declaration of Gina Cora and cited herein as "Tr."  Dr. Vance's expert report and rebuttal report were previously filed under seal at Dkt. Nos. 507-2 and 507-3 and are cited herein as "Vance Rep." and "Vance Rebuttal Rep."

2

1  extensively on the threats posed by software exploitations and cybersecurity measures businesses

2  can take.  *Id*; Tr. at 87:8–89:20; 94:4–101:4.

3          Two courts have found Dr. Vance to be an expert in the field of cybersecurity.  *See Ryanair*

4  *DAC v. Booking Holdings, Inc.*, 2024 WL 3732498, at *47 (D. Del June 17, 2024); *Vox Mktg. Grp.,*

5  *LLC v. Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1148 (D. Utah 2021).[3]

6      **II.     Dr. Vance's Affirmative Expert Report**

7          Plaintiffs served NSO with Dr. Vance's expert report on August 30, 2024.  In his report, Dr.

8  Vance offered the following opinions: (1) Plaintiffs took reasonable steps to secure the WhatsApp

9  platform to prevent against unauthorized activity; (2) Plaintiffs made at least two changes to the

10  WhatsApp servers in December 2018 that prevented, restricted, or interrupted the operation of NSO

11  Malware; (3) Defendants took steps to circumvent WhatsApp's December 2018 changes to the

12  WhatsApp servers that had prevented, restricted, or interrupted the operation of NSO Malware;[4] (4)

13  the May 2019 attacks described in the Complaint were conducted by NSO Malware; (5) Defendants

14  used or tested NSO Malware against WhatsApp servers and Target Devices themselves; (6) the

15  May 2019 attacks described in the Complaint were part of an exploit chain used to install Pegasus

16  or similar NSO Malware on target devices for the purpose of extracting information from those

17  devices; (7) Plaintiffs took reasonable steps to remediate the May 2019 attacks;  (8) Defendants

18  _____

19  [3] Defendants misrepresent the court's decision in *Ryanair* by stating that the court "refused to
    qualify Dr. Vance as an expert outside the realm of cybersecurity so that he could rebut an

20  opposing expert."  *See* Dkt. No. 509 at 4.  In fact, the court found that Dr. Vance's opinions "based
    on his cybersecurity experience" *could* rebut defendants' travel industry expert:  "Given the overlap

21  between the technical and business issues in this case (such as whether the purpose of myRyanair's
    restrictions on screen scraping is primarily competitive or primarily serves a security purpose), Dr.

22  Vance's rebuttal is proper *even though his expertise is not the same as Mr. O'Neil-Dunne's*."
    *Ryanair*, 2024 WL 3732498, at *49 (emphasis added).

23

24  [4] Although David Youssef will serve as Plaintiffs' primary expert explaining NSO's technical
    intrusions into Plaintiffs' servers, NSO refused to allow Mr. Youssef to review its Highly

25  Confidential – Attorneys' Eyes Only material, including documents confirming that NSO was
    behind the attacks described in the complaint, that NSO used those attacks to install Pegasus on

26  target devices, and that NSO had previously circumvented WhatsApp's security measures
    implemented in 2018 in order to carry out those attacks in May 2019.  *See* Dkt. No. 365-2 at 1–3.

27  Because Dr. Vance was permitted to review these materials, his expert report included opinions on
    these topics.  *See* Vance Rep. at 6–22.

28

3

used or attempted to use malware to access WhatsApp servers or Target Devices after Plaintiffs remediated the May 2019 attacks; and (9) Defendants are likely to target WhatsApp or Plaintiffs' other products in the future.  *See* Vance Rep. at 2.

### III.    Dr. Vance's Rebuttal Report

Plaintiffs served NSO with Dr. Vance's rebuttal report on September 21, 2024.  That report rebuts the expert reports of three of Defendants' experts: Terrence McGraw, Col. Ty M. Shepard (Ret.), and John "Jay" Town.  On January 10, 2025, the Court found that NSO could substitute Mr. Town with Joshua J. Minkler.  Dkt. No. 519 at 1.  The parties reached an agreement whereby Dr. Vance did not need to submit a new rebuttal report to Mr. Minkler's report and instead could rely on his previously disclosed rebuttal opinions to Mr. Town's report.  *See* Dkt. No. 538 at 3.

In his rebuttal report, Dr. Vance identified opinions related to both the policy implications of Pegasus and several issues relating to the May 2019 attacks described in the Complaint.

His rebuttal opinions on the policy implications of Pegasus are the following: (1) WhatsApp users have legitimate needs for end-to-end encryption (E2EE); (2) Plaintiffs comply with all lawful government requests; (3) Pegasus is exploitation software and not equivalent to legitimate lawful intercept technologies; (4) Pegasus is a dangerous exploitation tool used against vulnerable populations and civil society around the world; and (5) NSO is not authorized to exploit the software or systems of companies like Plaintiffs'.  *See* Vance Rebuttal Rep. at 1.

With respect to the May 2019 attack on WhatsApp, Dr. Vance's rebuttal report offered the following opinions: (1) Plaintiffs demonstrated due diligence to protect WhatsApp servers from attacks; (2) the WhatsApp platform was compromised in the May attack; (3) the May 2019 attacks were caused by Defendants and Plaintiffs' response was reasonable; (4) WhatsApp showed due diligence in responding to the May 2019 attack; (5) Plaintiffs demonstrated good judgment in waiting to fully block the May 2019 attack; and (6) Exploitation Vendors should be held accountable for the harm they cause to victim organizations, such as in the case of Defendants' May 2019 attack.  *Id.*

**LEGAL STANDARD**

A witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2000); *Racies v. Quincy Bioscience, LLC*, 2016 WL 5725079, at *3 (N.D. Cal. Sept. 30, 2016) (finding that courts should consider a purported expert's "knowledge, skill, experience, training, and education in the subject matter of his asserted expertise"). The fields of knowledge which an expert witness may draw upon are not merely "'scientific' or 'technical' but extend to all specialized knowledge." Fed. R. Evid. 702 advisory committee notes.

If a witness is qualified as an expert, the person "may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that (1) the expert's scientific, technical, or other special knowledge will help the trier of fact understand the evidence or determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 546 (N.D. Cal. 2012) (citing to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

Courts, therefore, begin from a presumption that expert testimony is admissible. *Pooshs*, 287 F.R.D. at 546; *see also* Fed. R. Evid. 702 advisory committee notes to 2000 amendment ("[R]ejection of expert testimony is the exception rather than the rule"). The Ninth Circuit has emphasized *Daubert*'s guidance that Rule 702 "should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (citing *Daubert*, 509 U.S. at 588); *see also Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (noting that the trial court is a "gatekeeper, not a fact finder" (internal quotations omitted)). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how to accord weight to that testimony." *Id*. at 565.

5

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF PLAINTIFFS' PROPOSED EXPERT ANTHONY VANCE, PH.D. - CASE NO. 4:19-CV-07123-PJH

1

## <u>ARGUMENT</u>

2    **I.    All of Dr. Vance's Opinions Are Appropriately Based on His Qualifications as a**

3    **Cybersecurity and Software Exploitation Expert.**

4         Defendants do not dispute that Dr. Vance is qualified to provide expert opinions on

5    cybersecurity and software exploitation.  *See* Dkt. No. 509 at 4.  Instead, Defendants attack Dr.

6    Vance's qualifications to opine on "legal, law enforcement, military, or intelligence topics."  Dkt.

7    No. 509 at 3.  But Plaintiffs are not offering Dr. Vance as an expert on any of these topics, and Dr.

8    Vance does not hold himself out to be such an expert.  Defendants acknowledge both of these

9    points.  *Id.* at 5–7.  At bottom, Defendants' argument is that only a law enforcement or military

10   expert is qualified to rebut the opinions of Defendants' purported experts on these points.

11   Defendants are wrong.  Experts can have "divergent areas of expertise," but both be "qualified to

12   testify regarding . . . the issues at hand."  *Ringcentral, Inc. v. Nextiva, Inc.*, 2021 WL 12171869, at

13   *3 (N.D. Cal. June 25, 2021) (rejecting argument that a rebuttal expert had no basis to rebut "a

14   cybercrime consultant and former FBI agent expert" "because he lack[ed] experience in law

15   enforcement and computer forensics"); *see also Smilovits v. First Solar, Inc.*, 2019 WL 6875492, at

16   *14 (D. Ariz. Dec. 17, 2019) ("There is no requirement that a rebuttal witness's area of expertise

17   match the area of expertise of the opposing party's initial expert." (quoting *Northrup v. Werner*

18   *Enter., Inc.*, 2015 WL 4756947, at *3 (M.D. Fla. Aug. 11, 2015))); Fed. R. Civ. P. 26(a)(2)(D)(ii)

19   (rebuttal expert disclosure requires "evidence on the same subject matter identified by another

20   party," not same expertise).   The Court should thus reject Defendants' arguments that Dr. Vance is

21   unqualified to offer any of his opinions.

22        **A.  Dr. Vance Is Qualified To Rebut Irrelevant Testimony from NSO's Experts on**

23        **Law Enforcement, Military, and Intelligence Topics, if Such Testimony Is Found**

24        **Admissible.**

25         If the Court determines that the opinions of Defendants' purported policy experts are

26   relevant and admissible in the damages-only trial, Dr. Vance is qualified to rebut them.  While

27   experts are expected to opine only within their area of expertise, excluding otherwise admissible

28   testimony because "proffered experts touched briefly on matters that are intertwined with, if not

6

directly covered by, their areas of expertise would be unjust."  *Powers v. McDonough*, 2024 WL 3491008 at *4 (S.D. Cal. Jul. 19, 2024); *see also In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) (noting that "so long as the expert's testimony is 'within the reasonable confines of his subject area,' a lack of particularized expertise generally goes to the weight of the testimony, not its admissibility").

Here, Dr. Vance's rebuttal opinions to NSO's policy arguments are based upon his areas of expertise—cybersecurity and software exploitation—and his opinions, like his research, touch on related topics, like law enforcement, national security, and the effect of software exploitation on vulnerable populations.  At his deposition, Dr. Vance testified to speaking at various conferences sponsored by intelligence agencies "because there is significant overlap between cybersecurity and law enforcement interests."[5]  Tr. at 134:3–135:11.  Furthermore, while Dr. Vance is not an expert in national security, which this case does not involve, he testified that many of the topics he speaks about "relate to cybersecurity as it is applied in national security."  *Id*.  Dr. Vance also repeatedly explained at his deposition that he studies, teaches, and has written about how incidents of software exploitation have affected vulnerable populations.  *See, e.g.*, Tr. at 123:9–129:8 (testifying that his research and courses cover software exploitation against vulnerable populations in depth and that he has published on this topic).

The broad meanings of "cybersecurity" and "software exploitation" also illustrate the wide scope of Dr. Vance's qualifications.  Cybersecurity is "the protection of organizations' data, systems, and networks from unauthorized access and other attacks."  Vance Rep. at 3.  One meaning of "cybersecurity" is "how individuals use information security tools or follow information security policies or how organizations make decisions relative to cybersecurity."  Tr. at 41:15–20.  Software exploitation is "a technique hackers use to gain some kind of access in a

---

[5] Defendants attempt to minimize Dr. Vance's testimony regarding his experience with the intersection of cybersecurity and law enforcement by relying on *Banga v. Kanios*, 2023 WL 1934484 at *1 (N.D. Cal. Jan 24, 2023), in which a proposed expert accountant was not qualified to opine on the legal job market.  *See* Dkt. No. 509 at 7 n.5.  That case is inapposite because Dr. Vance's experience in cybersecurity and software exploitation overlaps with law enforcement, as he testified, but an accountant's expertise does not relate to the legal job market.

7

system beyond what is designed by the developers of those software tools." Tr. at 56:5–13. It makes sense that, as Dr. Vance testified, his research, teaching, and publications in cybersecurity and software exploitation involve the same issues addressed in the rebuttal opinions that NSO seeks to exclude.

The Court should reject Defendants' baseless argument that Dr. Vance is not qualified to opine that Pegasus is not equivalent to legitimate lawful intercept technologies. *See* Dkt. No. 509 at 6 (citing Vance Rebuttal Rep. § II.C.1). Dr. Vance offers this opinion to rebut the testimony of NSO's experts, Col. Shepard, Mr. Minkler, and Mr. McGraw, who opine that NSO's technology is the equivalent of, or could be the equivalent of, lawful intercept tools. *See, e.g.*, Dkt. No. 505-2, Ex. A (Shepard Rep.) ¶ 26; Dkt. No. 572-4, Ex. A (Minkler Rep.) ¶¶ 36, 40; Dkt. No. 513-4, Ex. A (McGraw Rep.) ¶ 150. Setting aside that Defendants offer law-enforcement-related expert opinions from both Col. Shepard and Mr. McGraw, despite them admitting to *not* being law enforcement experts themselves, *see* Dkt. No. 504-3 at 8; Dkt. No. 513-3 at 15, it is perfectly within Dr. Vance's expertise in software exploitation to explain why Pegasus is not akin to a "lawful intercept tool" but rather a cyberweapon. Indeed, Dr. Vance's rebuttal report demonstrates how his rebuttal opinion relies on his qualifications:

> First, Pegasus is not the modern-day equivalent of a wiretap, but rather is an exploitation tool designed to gain unauthorized access or hack victims' devices. Second, Pegasus is fundamentally different from lawful intercept and surveillance tools that passively collect information, and which are subject to statutory rules about what communications and court review can be intercepted. In contrast, Pegasus actively exploits software vulnerabilities to gain total control of targeted devices. In other words, Pegasus is hacking software that enables not only surveillance of a device, but also persistent and broad control of victims' devices. Accordingly, it is extremely dangerous because of the exploits it uses and the unfettered access and control of victims' devices it enables.

(Vance Rebuttal Rep. at 6.) This explanation of the difference between a wiretap and Pegasus is clearly based on Dr. Vance's expertise as a software exploitation expert, expertise that Defendants do not contest. Accordingly, the Court should reject Defendants' request to exclude Dr. Vance's rebuttal opinions based on their myopic view of the scope of Dr. Vance's expertise as a scholar of

8

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF PLAINTIFFS' PROPOSED
EXPERT ANTHONY VANCE, PH.D. - CASE NO. 4:19-CV-07123-PJH

cybersecurity and software exploitation, and, if the Court does not exclude Defendants' experts'

opinions on these topics, permit Dr. Vance to rebut those opinions.

### B.  Dr. Vance Is Not Offering Legal Opinions.

NSO incorrectly argues that "Dr. Vance's rebuttal report contains a series of legal

opinions."  *See* Dkt. No. 509 at 4–5.  In fact, none of Dr. Vance's rebuttal opinions are legal

conclusions.  Instead, NSO confuses the basis for Dr. Vance's opinion with the opinion itself. [6]

For example, Defendants argue that Dr. Vance is not qualified to opine that millions of

WhatsApp users live in jurisdictions where they have a legal right to privacy, *see* Dkt. No. 509 at 4,

but this is just one reason, based on cited authority, among many that Dr. Vance describes to

support his rebuttal opinion that "WhatsApp users have legitimate needs for end-to end encryption

("E2EE").[7]  *See* Vance Rebuttal Rep. at 2.  Dr. Vance offers this opinion to rebut NSO's experts'

opinions that WhatsApp's E2EE enables illegal activity.  *See* Vance Rebuttal Rep. at 2 (first citing

Dkt. No. 505-2, Ex. A (Shepard Rep.) at 6; and then citing Dkt. No. 513-4, Ex. A (McGraw Rep.)

at 33).  Dr. Vance, as an expert in cybersecurity and software exploitation, is qualified to opine on

the purpose and utility of E2EE.  Dr. Vance testified to covering E2EE in his courses and that the

topic is a foundational control in the cybersecurity realm.  Tr. at 107:12–108:24.  Moreover, if

Defendants' experts are permitted to opine that WhatsApp's E2EE encryption enables criminal

---

[6] Defendants' invocation of *United States v. Tamman* is misplaced.  *See* Dkt. No. 509 at 6, citing *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015).  In *Tamman*, the court upheld the district court's conclusion that the offered expert opinion "provided only a recitation of facts and the legal conclusion that Tamman acted in conformity with unidentified SEC rules and regulations and otherwise did not break the law."  *Id.* at 553.  Dr. Vance provides no legal conclusion whatsoever, let alone on whether NSO broke the law.  *See Hangarter*, 373 F.3d at 1016–17 (rejecting argument that expert witness inappropriately reached legal conclusions where the testimony did not reach an ultimate issue of law).

[7] Dr. Vance relies on several sources across the United States and Europe which explicitly guarantee a right to privacy, including the *Charter of Fundamental Rights of the European Union*, the GDPR, HIPPA, and COPPA, which guarantee the right to privacy.  Vance Rebuttal Rep. at 3.  Because Dr. Vance relied on these sources, and not on his own knowledge of what privacy rights entail, during his deposition, Dr. Vance testified that he does not know when these privacy rights yield to law enforcement or national security interests, because that would require him to make a legal conclusion.  Tr. at 235:8–236:14.

9

activity—which they should not be—then Dr. Vance's rebuttal opinion based on his expertise would be particularly helpful.[8]

Indeed, at his deposition, counsel for NSO asked Dr. Vance a series of questions trying to equate the abuse of Pegasus by NSO's customers with the use of WhatsApp's E2EE "to commit or facilitate a crime." Tr. at 215:16–216:9. In response to this line of questioning, Dr. Vance explained "[t]he difference is . . . that WhatsApp is a communication tool. NSO makes . . . cyber weapons. [NSO] makes tools that are used to compromise the organizations of companies around the world and to compromise the devices of individuals around the world. It is literally the definition of a cyber weapon." *Id.* at 216:15–20. This example illustrates why Dr. Vance's rebuttal opinions based on his relevant expertise are important if Defendants' unqualified experts are permitted to offer irrelevant opinions; Dr. Vance is qualified to understand and explain the difference between a communication tool that uses E2EE and a cyberweapon. It is squarely within his area of expertise as an expert in cybersecurity and software exploitation.

Defendants' other arguments are equally meritless. For example, Dr. Vance offers a rebuttal opinion that Pegasus is a dangerous exploitation tool used against vulnerable populations and civil society around the world. He supports this opinion by discussing NSO being on the U.S. Department of Commerce's Entity List and President Biden's executive order banning commercial spyware. *See* Vance Rebuttal Rep. § II.D. NSO challenges the support for Dr. Vance's opinion, *see* Dkt. No. 509 at 5–6, 17–18, but Dr. Vance's opinion on this topic is necessary to rebut Defendants' policy experts who opine that "[t]ools like Pegasus provide intelligence insight to the

---

[8] Notably, Defendants argue that Dr. Vance is not qualified to offer this opinion, but offer Mr. McGraw, who is not an academic or researcher but rather a cybersecurity consultant, to opine—without any qualification or basis—that "████████████████████████████████████████████████████████████████████████████████████████████." Dkt. No. 513-4, Ex. A (McGraw Rep.) ¶ 152. Likewise, Defendants offer Mr. Minkler to opine on child sexual exploitation and terrorism cases (that he was not involved in) to demonstrate the purported challenges law enforcement face due to E2EE, *see, e.g.,* Dkt. No. 572-4, Ex. A (Minkler Rep.) ¶¶ 45–48; Dkt. No. 572-4, Ex. B (Minkler Tr.) at 250:1–252:12, but Mr. Minkler admitted at his deposition that he has never prosecuted any child sexual exploitation case or any terrorism case in which the use of E2EE prevented law enforcement from intercepting and deciphering communications, Dkt. No. 572-4, Ex. B (Minkler Tr.) at 278:12–22.

10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF PLAINTIFFS' PROPOSED EXPERT ANTHONY VANCE, PH.D. - CASE NO. 4:19-CV-07123-PJH

U.S. and allied national security agencies," Dkt. No. 505-2, Ex. A (Shepard Rep.) ¶ 28, if they are permitted to offer such opinions. Dr. Vance is qualified as an academic and expert in cybersecurity and software exploitation to review and rely on public government materials related to commercial spyware. As Defendants recognized, Dr. Vance, appropriately acknowledged that he is not an expert or qualified to testify about "the legal effect of NSO being placed on the U.S. Department of Commerce's Entity List." Dkt. No. 509 at 5. Dr. Vance does not need that qualification to rely on the publicly known fact that NSO in on that blacklist. Defendants could cross-examine him at trial about the "committee that oversees the list, the process for being placed on the list," *id.*, but Dr. Vance is certainly qualified to testify to the fact that "the U.S. government has sanctioned NSO Group specifically and barred commercial spyware generally." Vance Rebuttal Rep. at 10–13.

Finally, as Defendants acknowledge and Dr. Vance testified, Dr. Vance is not expressing an opinion in this case "about whether access was either authorized or unauthorized as that term is used in the Computer Fraud and Abuse Act." Tr. at 141:18–23; *see* Dkt. No. 509 at 4 n.4. Dr. Vance explained that "unauthorized access is a term of art in cybersecurity and has been since the early '70s, whereas the [CFAA] is a 1980s law that's subsequent." Tr. at 140:7–12. Because Dr. Vance uses the terms "authorized" and "unauthorized" in a technical, rather than legal, sense, Defendants have not moved to exclude Dr. Vance's opinion on this basis. *See* Dkt. No. 509 at 4 n.4. Defendants nevertheless state that "[t]o the extent that the plaintiffs express concern about the use of those terms by NSO's witnesses, NSO requests that all experts in this matter be given the same instruction." *Id.* There is no equivalence, however, between Dr. Vance's use of industry terms of art and Mr. McGraw ███████████████████████████████████████████████ See Dkt. No. 513-4, Ex. A (McGraw Rep.) ¶ 123 ("███████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████"); *see also* Dkt. No. 513 at 7–8.

## II.    The Challenged Opinions Remain Relevant and Helpful in the Damages-Only Trial.

NSO argues that certain opinions offered by Dr. Vance are not relevant or helpful, but Dr. Vance's opinions will help explain to the jury why Plaintiffs are entitled to punitive damages. To the extent the Court determines the policy opinions of NSO's purported experts are admissible, Dr.

Vance's rebuttal opinions on these points are also relevant.  If the Court grants Plaintiffs' pending motions to exclude Defendants' experts' policy opinions, Dr. Vance's rebuttal opinions to those opinions would no longer be necessary.  *See* Dkt Nos. 504-3, 513-3, 572-3, 592-3 at 14–20.

**A.  Dr. Vance's Opinions Are Relevant Given Plaintiffs Seek Punitive Damages and Dr. Vance's Rebuttal Opinions to NSO's Policy Arguments Are Only Relevant If, Over Plaintiffs' Objection, NSO Is Permitted To Offer Them at Trial.**

NSO argues that certain of Dr. Vance's opinions are no longer relevant because the Court resolved all issues regarding liability and directed that the trial proceed on the issues of damages alone. Dkt. No 509 at 8.  The opinions of Dr. Vance that NSO seeks to exclude, however, are relevant to Plaintiffs' claim for punitive damages.[9]

At trial, Plaintiffs intend to seek punitive damages under CDAFA.  *See* Cal. Penal Code § 502(e)(4) (allowing court to award "punitive or exemplary damages" for violation of CDAFA); *see also Greenley v. Kochava*, Inc., 684 F. Supp. 3d 1024, 1044 (S.D. Cal. 2023) (noting that CDAFA provides relief in the form of punitive damages).  In order to be awarded punitive damages, Plaintiffs must demonstrate that NSO acted with "oppression, fraud, or malice." Cal. Penal Code § 502(e)(4).  "Oppression" is defined as "despicable conduct" with a "conscious disregard" for the rights of others.  Cal. Civil Code § 3294(c)(2).  "Fraud" is defined as "intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with intention on the part of the defendant or thereby depriving a person of property or legal rights or otherwise causing injury."  *Id.* § 3294(c)(3).  Malicious conduct is described as "conduct which is intended by the defendant to cause injury to plaintiff."  *Id.* § 3294(c)(1); *Craigslist, Inc. v. Mesiab*, 2010 WL 5300883, at *14 (N.D. Cal Nov. 15, 2010) (finding that a company acted maliciously in developing software meant to circumvent security measures).

---

[9] NSO maintains that Dr. Vance's opinions that "Defendants used or attempted to use malware to access WhatsApp servers or Target Devices after Plaintiffs remediated the May 2019 attacks" (Vance Rep. § XII) and that "Defendants are likely to target WhatsApp or Plaintiffs' other products in the future" (Vance Rep. § XIII) "could be relevant to injunctive relief."  Dkt. No. 509 at 8.  As described in their pending motion for a permanent injunction, the Court should grant Plaintiffs' requested injunction absent any additional hearing.  *See* Dkt. No. 558.

12

The opinions that NSO seeks to exclude explain the story of why NSO acted with "oppression, fraud, or malice." For example, in his opening report, Dr. Vance outlines two changes in WhatsApp's source code which prevented or restricted the operation of NSO's malware, as well as NSO's circumvention of those changes. *See* Vance Rep. at 6–11. This conduct demonstrates NSO's "willful and conscious disregard" because NSO was put on notice that it was not authorized to access WhatsApp's servers and continued to find ways to exploit the platform. Likewise, Dr. Vance's opinions show that NSO intentionally targeted the WhatsApp platform because "NSO knowingly used WhatsApp servers to transmit malicious traffic without WhatsApp's authorization." Vance Rebuttal Rep. at 19.

Regarding Dr. Vance's rebuttal opinions to Defendants' policy experts, Plaintiffs agree that those opinions are irrelevant if the policy opinions of Defendants' purported experts are excluded, as they should be. *See, e.g.*, *Brice v. Haynes Invs.*, LLC, 548 F. Supp. 3d 882, (N.D. Cal. 2021); *Daubert*, 509 U.S. at 591–92 (noting that to provide an expert opinion, an expert's knowledge must contain a "connection to the pertinent inquiry").

**B. Dr. Vance's Opinions on "Hacking" and "Compromising the WhatsApp Platform" Are Relevant and There Is No Risk of Unfair Prejudice.**

Defendants seek to preclude Dr. Vance from using the word "hacked" and opining that Defendants "compromised" the WhatsApp platform, as irrelevant and unhelpful to the jury, but their argument does not make sense. Defendants recognize that Dr. Vance does not use those terms synonymously with liability under the CFAA and that he has no opinion on whether "hacking" falls under the CFAA. *See* Dkt. No. 509 at 9 (citing Tr. at 320:14–321:4).[10] Defendants express concern that the terms are "divorced from the CFAA legal standard," Dkt. No. 509 at 9, but the Court has already determined liability, and so there should be less concern, not more, with Dr. Vance using terms that have common meaning that jurors can understand.

---

[10] Defendants are seeking to seal portions of page 321 of Dr. Vance's transcript, and so it is not included within Exhibit A to the Cora Declaration but is available at Dkt. No. 507-5.

13

Indeed, Defendants themselves routinely use the word "hacked" and recently included the word in their proposed voir dire questions.  *See* Dkt. No. 579, question No. 32 ("Have you or someone close to you ever been *hacked* or had your/their identity stolen online . . .?" (emphasis added)).  Presumably, Defendants are proposing a question using that word because they believe jurors will understand it.  Defendants have also acknowledged that the CFAA makes "illegal *hacking* actionable" in its opposition to Plaintiffs' motion for partial summary judgment.  Dkt. No. 419-2 at 2 (emphasis added); *see also Van Buren v. United States*, 593 U.S. 374, 378 (2021) (describing the CFAA as Congress's response to "a series of highly publicized hackings" that "captured the public's attention" and using the term "hacking" throughout the opinion).  Thus, it is both helpful and relevant for Dr. Vance to use the word "hacked."

Defendants' Rule 403 argument seeking to preclude these terms is equally baseless.  The probative value of Dr. Vance being able to use plain, commonly understood words is not "substantially outweighed by a danger of" "unfair prejudice, confusing the issues, and misleading the jury."  Fed. R. Evid. 403.  Defendants are silent as to what is their Rule 403 argument as to the word "hacking," *see* Dkt. No. 509 at 9–10, likely because that word is not confusing, concisely explains what Defendants did, and is an alternative to "unauthorized access," which has both technical and legal meanings.  *See supra* at 11; Tr. at 318:7–23 (Dr. Vance explaining that he prefers to use the term "hacking" over "unauthorized access" because "in [his] view, it means the same thing as the cybersecurity usage of the term 'unauthorized access'"); *id.* at 320:14–321:4 ("This is classic hacking.  This is a severe instance of the abuse of WhatsApp's system to send malware to victims' target devices, but what I am not doing is making an opinion about whether this hacking falls under the CFAA. I'll leave that to others to make that conclusion.").  Moreover, if Defendants want to preclude Dr. Vance from using both "hacking" and terms like "unauthorized access," it begs the question of what words Dr. Vance could use to succinctly describe the conduct at issue in this case.

As to the term "compromise," Defendants make a puzzling argument that the word could result in jurors mistakenly assuming that "Dr. Vance was referring to compensable harm to the server or a related loss, rather to issues of authorization and access."  Dkt. No. 509 at 9–10.  Dr.

14

1  Vance does not offer an opinion on the amount of monetary damages, and it seems very unlikely

2  that jurors will be confused about that. For this reason, there is no basis for the Court to preclude

3  Dr. Vance from using these terms under Rule 403. *See* Fed. R. Evid. 403 ("The court may exclude

4  relevant evidence if its probative value is substantially outweighed by a danger of one or more of

5  the following: unfair prejudice, confusing the issues, misleading the jury . . . .")

6      **C. All of Dr. Vance's Opinions Apply His Expertise.**

7          In Part III.B.3 of its motion, NSO argues that certain of Dr. Vance's opinions "are unhelpful

8  to the trier of fact, as they fail to apply any expertise," *see* Dkt. No. 509 at 10–13, but the arguments

9  that NSO advances in this section of its motion are misleading, if not frivolous, and the Court

10 should reject them.

11         *First*, many of Defendants' arguments fault Dr. Vance for having reviewed the evidence in

12 this case and describing it as support for the proffered opinions in his report—despite the fact that,

13 under Rule 702, the proponent of expert testimony must demonstrate that "testimony is based on

14 sufficient *facts or data*" and that "the expert's opinion reflects a reliable application of the

15 principles and methods *to the facts of the case*." *See* Fed. R. Evid. 702 (emphasis added).[11] As

16 explained in a case cited by Defendants, "[the expert's] descriptions of evidence in the case file are

17 relevant to explain how he formed his opinions and the basis for his opinions." *Howard v. Cnty. of

18 Riverside*, 2014 WL 12589650, at *2 (C.D. Cal. May 7, 2014).[12]

19 _____

20 [11] Notably, certain portions of the report of Mr. McGraw, one of Defendants' experts that Dr. Vance
   rebuts, also cites and summarizes record evidence in support of his opinions. *See, e.g.*, Dkt. No. 513-
21 4, Ex. A (McGraw Rep.) § VI(A)(1), (opining that "████████████████████████████████
   ████████████████████████" based solely on 30(b)(6) testimony); *id.* § VI(C) (opining that "████
22 ██████████████████████████████" based on documents produced by WhatsApp, 30(b)(6) testimony, and
   broad statements about the goals of law enforcement and intelligence gathering surveillance); Dkt.
23 No. 513-4, Ex. B (McGraw Rebuttal Rep.) § II(B) (rebutting Plaintiffs' expert, Mr. Youssef, solely
   on the basis that of deposition testimony and a single document produced by Plaintiffs); *id.* § III(C),
24 opining that ████████████████████████████████████████████████████████████████
   ████████ by relying on deposition testimony and a single document produced by Plaintiffs. These
25 sections of Mr. McGraw's report stand in contrast to Col. Shepard's report, which does not cite any
   evidence in explaining his opinions, and Mr. Minkler's report, which cites virtually none. *See* Dkt
26 Nos. 504-3, 572-3.

27 [12] Defendants' description of the *Howard* case as "excluding experts' description of evidence and
28 summary . . . of witness statements" is also misleading in its incompleteness. *See* Dkt. No. 509 at

Defendants argue that Dr. Vance's opinions purportedly "consist of him merely reviewing and recounting the contents of nontechnical email and communications," Dkt. No. 509 at 11, and then enumerate seven of such purported instances, *see id.* at 11–14. Despite this misleading language, Defendants clearly recognize that Dr. Vance analyzes, cites, or relies on the evidence in reaching his opinions. For example, after loosely describing Dr. Vance's opinion in Section X of his Report, NSO writes "*[t]o reach that conclusion*, he relies heavily on summarized testimony from NSO personnel regarding the general purpose of Pegasus and quotations from marketing documents describing Pegasus capabilities." *Id.* (emphasis added). Likewise, NSO describes Dr. Vance as "summarizing or reproducing nontechnical email [sic] . . . *to offer an opinion* on NSO's 'intention' to circumvent changes made by WhatsApp to its server code." *Id.* (emphasis added). In another instance, NSO writes that "Dr. Vance *concludes* that the May 2019 attacks were performed by NSO technology—*primarily by* recounting non-technical testimony and sworn statements from NSO personnel." *Id.* (emphasis added); *see also id.* at 12 ("Dr. Vance *opines* that . . . . He reaches this conclusion by cutting and pasting, and then interpreting, a handful of non-technical NSO communications . . .") (emphasis added). NSO's own words show that NSO understands what is obvious and should be uncontroversial: In his Report, Dr. Vance applies the facts of the case in his analysis to reach his opinions.[13] Had Dr. Vance offered his opinions without relying on evidence in

---

10 (quotatings omitted). The experts' descriptions of the evidence were excluded *as hearsay* at summary judgment because they were being offered for the truth of the matter asserted, to create a disputed issue of fact. *See Howard*, 2014 WL 12589650, at *2 (C.D. Cal. May 7, 2014) ("Plaintiff . . . relies on Mr. Clark's description of these witness statements as evidence that there is a genuine issue of material fact as to whether Deputy Santos gave commands. Mr. Clark's summary of the witness statements is hearsay. Under Federal Rule of Evidence 802, hearsay may not be offered for the truth of the matter asserted; i.e., that some eyewitnesses did not hear Deputy Santos give commands to Plaintiff to exit the shed." (cleaned up)).

[13] The language that Dr. Vance uses in his Report also makes clear that the purpose of describing or citing evidence is to support or explain his opinions, not to introduce hearsay. As just one example, NSO mischaracterizes it as improper for Dr. Vance "in Section VI of his Opening Report . . . [to] review[ ] a series of non-technical emails" produced by NSO "to confirm that NSO would be required to periodically update the relevant versions of Pegasus in response to changes made by WhatsApp." *Id.* at 11. Dr. Vance's "review" of this evidence in Section VI of his Report, however, is to support his opinion that "WhatsApp made at least two changes to the WhatsApp servers in December 2018 that prevented, restricted, or interrupted the operation of NSO Malware." Vance Rep. at 6. Dr. Vance explains in his report: "*The above NSO communications*, which took

16

the record, NSO would have argued that those opinions should be excluded because Dr. Vance lacked "sufficient facts or data" for giving them. *See* Fed. R. Evid. 702.

None of the authority on which Defendants rely supports their argument that Dr. Vance's testimony is unhelpful to the trier of fact because he describes record evidence. For example, Defendants rely on *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 546 (C.D. Cal. 2012), *see* Dkt. No. 509 at 10, but omit that the challenged expert in that case had tried to pass off another expert's analysis as his own. *See Cholakyan*, 281 F.R.D. at 546 ("The evidence he has adduced does not adequately demonstrate that Waters exercised independent judgment; rather, it strongly suggests he took Potok's conclusions, engaged in little, if any, evaluation of their merits, and reproduced Potok's declaration wholesale (*including its typographical errors*) as his own work. The court cannot rely on such 'testimony.'"). Defendants' other cited authority is inapposite because, for instance, Dr. Vance is not "gratuitously interpret[ing]" the "record evidence." Dkt. No. 509 at 10 (citing *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 34117941, at *13 n.8 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016)); *see also* Dkt. No. 509 at 10 (citing Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6273 (2d ed) for Rule 703, *not Rule 702* at issue, as describing as inadmissible instances where "the expert adds nothing to the out-of-court statements other than transmitting them to the jury.") Dr. Vance also applies his expertise when analyzing the record evidence, unlike a situation where an expert is proffered "to testify as to what could be heard in a tape recorded conversation" preceding an airplane crash, when "hearing is within the ability and experience of the trier of fact," who in that case was the trial judge. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995); *see* Dkt. No. 509 at 10 (citing *Beech*); see also Fed. R. Evid. 703 (permitting an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed").

---

place shortly after the remediation of the 'T33535414 – Malformed Whatsapp voip_settings' vulnerability *establish[] that* WhatsApp's changes to the WhatsApp client application and WhatsApp servers prevented, restricted, or interrupted the operation of NSO malware prior to May 2019." *Id.* at 8 (emphasis added).

*Second*, NSO misrepresents the basis for Dr. Vance's opinion that "Defendants used or attempted to use malware to access WhatsApp servers or Target Devices after Plaintiffs remediated the May 2019 attacks." Vance Rep. Sect. XII at 24. NSO argues that Dr. Vance's "opinion is based in large part on analysis performed by 'Plaintiffs' engineers,' which Dr. Vance relies *on without any attempt at independent verification*." Dkt. No. 509 at 11 (emphasis added). This statement is false. In his report, Dr. Vance devotes a few sentences to describing the analysis of Plaintiffs' engineers and cites to contemporaneous evidence supporting his description of their work. *See* Vance Rep. at 24–25. Following those sentences, Dr. Vance writes: "This suspicious activity is *confirmed* by source code obtained from the AWS Server. . . ." *Id.* at 25 (emphasis added). Dr. Vance's report goes on to discuss his analysis of the code obtained from the AWS Server as compared to the observations of Plaintiffs' engineers, and concludes that "[t]he close correspondence between the" code on the AWS Server and "the pattern of suspicious activity observed by Plaintiffs' engineers documented above conclusively establishes that Defendants used or attempted to use malware to access WhatsApp servers or Target Devices after Plaintiffs remediated the May 2019 attacks." *Id.* at 26. As is clear from Dr. Vance's Report, there is no "portion of his opinion that rel[ies] on the work of other potential experts or technical witnesses, without any evaluation of the merits," Dkt. No. 509 at 11, and it is disingenuous for NSO to make such a representation to the Court.

*Third*, NSO argues that Dr. Vance should be precluded from opining both that NSO intentionally circumvented WhatsApp's December 5, 2018 changes to the WhatsApp client application (offered in Section VII of Dr. Vance's Report) and that Defendants are likely to target WhatsApp or Plaintiffs' other products in the future (offered in Section XIII of his Report), because these are purportedly impermissible expert opinions as to intention. *See* Dkt. No. 509 at 11–13. Defendants are incorrect. As an initial matter, the outright statutory bar to expert testimony on mental state is under Rule 704(b), which applies to criminal cases only. *See* Fed. R. Evid. 704(b). Plaintiffs rely on one case for the proposition that "[c]ourts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." Dkt. No. 509 at 11 (quoting *Lanard Toys*

*Ltd. v. Anker Play Prod., LLC*, 2020 WL 6873647, at *4 (C.D. Cal. Nov. 12, 2020).[14]  Whether courts exclude evidence regarding intentionality of action, or likelihood of future action, in civil cases depends upon the facts of the particular case and the contours of the expert's opinion.  *See, e.g. United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1194 (N.D. Cal. 2017) (rejecting Rule 702 challenge to expert testimony, explaining that the expert testimony at issue was "not the type of 'motivation' or 'state of mind' testimony that courts have excluded" because the expert testified as to a company's  likely course of action, based on the expert's experience and his "review of the record evidence").

Here, there is no basis to exclude Dr. Vance's opinions offered in Sections VII and XIII of his Report.  In Section VII of his Report, Dr. Vance opines on NSO's pattern of conduct (i.e., evading December 5, 2018 changes to the WhatsApp client application) by reviewing relevant evidence.[15]  With his expertise in cybersecurity and software exploitation, Dr. Vance can reliably opine on technical matters and NSO's conduct, and the jury can then draw its own inference regarding whether Defendants acted with the "oppression, fraud, or malice" necessary to award

---

[14] *Lanard Toys* was a trademark infringement case in which the statutory element—"likelihood of customer confusion" between two competing marks—asks how laypeople would view the marks, an inquiry within the ability of the average juror by definition.  *See Lanard Toys*, 2020 WL 6873647, at *6; *cf. M. G. v. Bodum USA, Inc.*, 2021 WL 718839, at *20 (N.D. Cal. Feb. 24, 2021) (concluding that the "consumer expectation test" for a product liability claim "does not require expert testimony").  That case is readily distinguishable from Dr. Vance's opinions, but even in the trademark context NSO appeals to, courts nevertheless admit opinions like Dr. Vance's.  *See, e.g., Benefit Cosmetics LLC v. e.l.f. Cosmetics, Inc.*, 2024 WL 3558848, at *5 (N.D. Cal. July 25, 2024) (excluding expert opinion that "customers *will* readily differentiate between products" but declining to exclude opinion on "*likelihood* of confusion") (emphases added).  Unlike in *Lanard Toys*, Dr. Vance's opinions do not attempt to predict what a hypothetical, generic layperson might think.  Instead, Dr. Vance assesses patterns of behavior by an identifiable, sophisticated cyberattacker.  NSO's business operations and the industry in which it operates are well outside the scope of the average juror's knowledge, and Dr. Vance has "substantial relevant experience that could help the jury understand" the relevant evidence because of his work in industry and academia.  *See Kitsch LLC v. Deejayzoo, LLC*, 2023 WL 9423840, at *9 (C.D. Cal. Dec. 21, 2023).

[15] Defendants imply that it was improper for Dr. Vance to rely on "non-technical" documents. *See, e.g.*, Dkt. No. 509 at 11.  Defendants are incorrect. S*ee, e.g., Daubert*, 509 U.S. 579 at 595 (recognizing that "sufficient facts or data" is context-specific; experts may rely upon evidence "of a type reasonably relied upon by experts in the particular field").

19

punitive damages. *See supra* Part II.A.  In Section XIII of Dr. Vance's Report, Dr. Vance is not opining that NSO *will* continue to attack Plaintiffs, but rather that NSO's business practices foster an environment in which NSO has incentives to do so, a dynamic that bears directly on whether "strong medicine is required" to deter NSO from continuing to violate the law. *BMW of N. Am. v. Gore*, 517 U.S. 559, 576–77 (1996).

The Ninth Circuit acknowledged that expert testimony sometimes "requires sound judgment in the face of uncertainty." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1028 (9th Cir. 2022).  Here, Dr. Vance "use[d his] knowledge and experience as a basis for weighing known factors along with the inevitable uncertainties" to the field of commercial spyware and unlawful hacking. *Id.* at 1029 (quoting *Primiano*, 598 F.3d at 567).  *Elosu*'s logic applies with equal force because NSO operates in "a field characterized by" not just uncertainty, but *secrecy*. *Id.* at 1028; *see* Vance Rep., at 27 (quoting NSO's former head of sales on the "cat and mouse game" that NSO "survive[s]" within).  It distorts the Rule 702 standard to suggest that Dr. Vance cannot incorporate NSO's internal communications into his analysis when NSO's business model depends on operational security (i.e., secrecy) and covering its tracks.

## III.    Dr. Vance's Opinions Are Reliable and Proper.

NSO argues that certain of Dr. Vance's rebuttal opinions related to NSO's experts' policy opinions on law enforcement and military matters are unreliable.  NSO does not argue that any of Dr. Vance's affirmative opinions are unreliable, nor does it argue that any of Dr. Vance's rebuttal opinions unrelated to NSO's policy arguments are unreliable. *See* Dkt. No. 509 at 14–18.

Testimony is considered reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 565).  Dr. Vance relies on his own knowledge, as well as sources that are reliable and can be useful in developing opinions in the cybersecurity realm.  The test for reliability is "not the correctness of the expert's conclusions but the soundness of his methodology." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (footnote omitted) (quoting *Daubert,* 43 F.3d 1311, 1318 (9th Cir. 1995)).  The Advisory Committee Notes to the recent amendments to Rule 702 explain that while "the

preponderance standard [in Rule 702] applies to the three reliability-based requirements" of the rule, "once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence."  Fed. R. Evid. 702 advisory committee notes to 2023 amendment.

To the extent the Court does not exclude the policy opinions of Defendants' experts, and thus moot Defendants' attacks on the reliability of Dr. Vance's rebuttal opinions, the Court should reject these attacks—which are cloaked as admissibility arguments but really "go only to the weight of the evidence." *Id*; *see also Cohen v. Trump*, 2016 WL 4543481, at *12 (S.D. Cal. Aug. 29, 2016) ("Each of the rebuttal reports focuses on the various claims made by Plaintiff's experts, and rebuts them on the basis of each rebuttal expert's own areas of expertise . . . . As such, the Court finds that the bulk of Plaintiff's objections to Defendant's rebuttal testimony go to weight, not admissibility.")

*First*, Dr. Vance has a reliable basis to opine on the alternative data sources law enforcement agencies can use.  Defendants argue that Dr. Vance's opinions on this topic "are not supported by appreciable facts or data" and that Section II.A.2 of Dr. Vance's Rebuttal Report does not "cite any facts or data in support of his opinions."  Dkt. No. 509 at 14.  Both of these statements are false.  In Section II.A.2 of his Rebuttal Report, Dr. Vance explains that law enforcement agencies have legal methods for collecting data, including "cell phone carrier records, cell phone tower records, SMS messages, internet service provider logs, email, social media account records, GPS location data, and many more."  Vance Rebuttal Rep. at 3–4.  Dr. Vance also opines that there are "numerous alternative sources of surveillance data readily available to be acquired through legal means" which "undermines the argument for the necessity of exploitation tools such as Pegasus used to compromise individuals' personal devices and communications."  Vance Rep. at 4.  Dr. Vance *cites* to the Senate Judiciary Committee testimony of Peter Swire, a Professor of Law and Ethics at the Georgia Institute of Technology.  *See* Vance Rep. at 4 (citing Peter Swire, Huang Professor of Law & Ethics., Senate Judiciary Committee Hearing, "Going Dark: Encryption, Technology, and the Balance Between Public Safety and Privacy" (Jul. 8, 2015) (stating that "we are in a Golden Age of Surveillance" in which national security agencies lose specific capabilities

21

due to encryption, but also have "massive gains" from several newer tools)).  Defendants also ignore Dr. Vance's testimony that he has spoken at various conferences sponsored by intelligence agencies "because there is significant overlap between cybersecurity and law enforcement interests."  Tr. at 133:18–136:19.  Thus, in addition to his own expertise, Dr. Vance relies on a reputable source in concluding that there are several alternative tools that law enforcement agencies can use in investigations.  *See Brooks v. Thomson Reuters Corp.*, 2023 WL 5667884, at *5 (N.D. Cal. Aug. 9, 2023) (noting that "reliance on legal scholarship," such as "cites . . . to legislators' comments," "is a method traditionally used in the field of academic research" and denying *Daubert* motion to strike expert testimony of university professor).

*Second*, it hypocritical for Defendants to attack the reliability of Dr. Vance's opinion that Plaintiffs comply with all lawful government data requests, based on Plaintiffs' internal documents, including Meta's biannual transparency report.  Dr. Vance offers this opinion to rebut the opinions put forth by Mr. McGraw and Col. Shepard that encryption prevents governments from accessing vital data.  *See* Vance Rebuttal Rep. at 4.  Defendants attack Dr. Vance's methodology, but their own experts provide no methodology in coming to their conclusions.  Mr. McGraw notes that the

████████████████████████████████████████████████████████████

████████████."  Dkt. No. 513-4 (McGraw Rep.) ¶ 153.  He provides no citation for the statement and does not explain why it is relevant to his conclusion that companies like NSO should not be held liable for the actions of their users.  *Id.*  Likewise, Col. Shepard argues that "encrypted messaging application providers such as WhatsApp do not help the government obtain access to encrypted communications, even with lawful processes issued by courts."  Dkt. No. 505-2, Ex. A (Shepard Rep.) ¶ 34.  He does not cite to any sources or explain his methodology for coming to this conclusion.

On the other hand, Dr. Vance cites directly to Meta's biannual transparency report, as well as WhatsApp FAQ.  *See* Vance Rep. at 4.  As Dr. Vance testified, Meta's transparency report "documents legal requests that [Meta] has responded to for various governments around the world."

Tr. at 242:8–18.[16]  NSO criticizes Dr. Vance for not analyzing certain sub-categories of information in this document, but that is an issue of weight, not exclusion, and is better suited to cross-examination.  *See, e.g.*, Fed. R. Evid. 702 advisory committee notes to 2023 amendment.  If, as Defendants argue, "plaintiffs cannot carry their burden of proving that Dr. Vance's opinion in Rebuttal Section II.B" is reliable, Dkt. No. 509 at 21, then Defendants surely have not carried their burden with respect to the opinions Dr. Vance sought to rebut, *see* Dkt Nos. 504-3, 513-3, as well as several others.  *See, e.g.*, Dkt. No. 572-3 at 16–17.

*Third,* Dr. Vance has a reliable basis to opine that the harms caused by Pegasus outweigh any supposed benefits.  *See* Vance Rebuttal Rep. at 10. Defendants attack Dr. Vance for "not establish[ing] any objective criteria for his 'weighing' process," Dkt. No. 509 at 16, but Dr. Vance testified during his deposition that the frequent subject of his university teaching is how to weigh the benefits and costs to society and vulnerable populations of end-to-end encryption and spyware like Pegasus.  Tr. at 107:12–108:24, 123:20–124:3.  Dr. Vance testified to how he considers the costs and benefits of spyware and privacy interests, and how those apply to the circumstances relevant to this case.  *See, e.g.*, Tr. at 212:13–217:1.  Rather than being unsupported speculation, as Defendants contest, Dr. Vance's opinion is appropriately based on his knowledge and experience as an academic who researches, writes, and teaches about the very questions on which he is opining.  *See Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998) (holding expert who "ha[d] studied and written about the [field]" was properly admitted as an expert).  Defendants also ignore that because NSO did not produce discovery about its customers or victims of its spyware in discovery, Dr. Vance did not have access to that information from NSO.  *See* Dkt. No. 592-3 at 1–4; Tr. at 186:3–187:15 (noting that "NSO has not been forthcoming about their customers and specifics").  Defendants also fail to recognize that their own experts—whose opinions Dr. Vance is rebutting on this topic—opine on the benefits of Pegasus without undertaking any "attempt to identify or

---

[16] *See* Meta, "Government Requests for User Data," https://transparency.meta.com/reports/government-data-requests/, which Dr. Vance discusses on page 4 of his Rebuttal Report.

quantify" any harms of the spyware, as Defendants' experts were also deprived of the list of NSO's customers.  Dkt. No. 509 at 16; *see, e.g.*, Dkt. No. 504-3 at 2.

*Fourth*, the Court should reject Defendants' argument that Dr. Vance's rebuttal opinion that the U.S. government barred the use of commercial spyware generally is not based on "sufficient facts and data."  *See* Dkt. No. 509 at 17.  In support of this rebuttal opinion, Dr. Vance relies on a press release published by the White House that describes the executive order prohibiting the U.S. government from using commercial spyware tools that pose significant counterintelligence or security risks, as opposed to the executive order itself.  *See id.* at 17–18; Tr. at 278:11–23. Defendants' argument is that Plaintiffs cannot establish sufficient facts and data for Dr. Vance's opinion because "[n]one of Dr. Vance's opinions . . . are based on the *actual executive order*," *id.*, as opposed to the White House press release explaining that executive order.  *See* Dkt. No. 509 at 17.  Defendants do not cite any authority that supports that position.  They selectively quote from the Advisory Committee Notes to 2023 Amendments to Rule 702, to argue that "the initial inquiry into sufficiency affects the admissibility of the opinion itself, not just its weight," *id.*, but that authority is clear that "if the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility."  *See* Fed. R. Evid. 702 advisory committee notes to 2023 amendment.  To the extent NSO's experts' policy opinions are not excluded from the damages-only trial, as they should be, the Court should permit Dr. Vance to rebut them, and Defendants may cross examine him regarding his reliance on the White House press release rather than the executive order itself.

*Fifth*, the Court should reject NSO's attempt to exclude Dr. Vance's opinion that the "safeguards and policies of Pegasus are insufficient."  *See* Dkt. No. 509 at 18 (quoting Vance Rebuttal Rep. at 14).  Dr. Vance offers this opinion to rebut Col. Shepard's opinion that "NSO employs a number of safeguards to limit misuse of its surveillance tool Pegasus."  Vance Rebuttal Rep. at 14.  Defendants claim that Dr. Vance's report "sets forth no reliable methodology" for making this determination, but that is not true.  Dr. Vance explains: "I have not seen evidence of the existence of these [purported] safeguards or how effectively they operate nor were they

24

produced with Shepard's report. *However, even if the safeguards that Shepard claims do exist*, the numerous instances of abuses of Pegasus around the world documented in the section above and in similar public sources indicate that these supposed safeguards are woefully inadequate." *Id.* (emphasis added); *see also* Tr. at 285:8–286:12 (outlining that there is "persistent and continued misuse of Pegasus against vulnerable groups contrary to public statements of NSO that it has such guardrails"). Dr. Vance also testified that his assessment was based on the review of the evidence made available to him, including the documents that were produced, public reporting, and statements made by the United States government. Tr. at 228:16–229:23. The Court should therefore reject Defendants' attempt to exclude Dr. Vance's rebuttal opinion on NSO's safeguards as unreliable, particularly given that NSO has refused to provide evidence of its "safeguards" in discovery, beyond the unverified statements in its own marketing materials.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Exclude or Limit the Opinions of Plaintiffs' Proposed Expert Anthony Vance, Ph.D.

Dated:   March 20, 2025

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:   /s/ Greg D. Andres
Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
       antonio.perez@davispolk.com
       gina.cora@davispolk.com
       craig.cagney@davispolk.com
       luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*