Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
          antonio.perez@davispolk.com
          gina.cora@davispolk.com
          craig.cagney@davispolk.com
          luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF PLAINTIFFS' PROPOSED EXPERT DAVID J. YOUSSEF**<br><br>Date:    April 10, 2025<br>Time:    2:00 p.m.<br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

**[PUBLIC REDACTED VERSION]**

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ..........................................................................................................................2

    I.     Mr. Youssef's Expertise and Experience.....................................................................2

    II.    Mr. Youssef's Opinions ..............................................................................................3

    III.   NSO Deposes Mr. Youssef .........................................................................................4

ARGUMENT ...............................................................................................................................5

    I.     Mr. Youssef's Opinions Remain Relevant to the Jury's Determination of Punitive Damages ......................................................................................................5

    II.    The Court Should Not Exclude Any of Mr. Youssef's Opinions Under Rule 702 or Otherwise .............................................................................................................9

          A.    The Court Should Not Exclude Mr. Youssef's Opinions Regarding the Impact of NSO's Pegasus on Plaintiffs' Servers ............................................10

          B.    Mr. Youssef's Use of the Word "Spyware" Is Consistent With The Cybersecurity Industry And the Court's Order On Summary Judgment.......13

          C.    Mr. Youssef's Opinions Regarding NSO's Continued Attempts to Target Plaintiffs Rest On a Reliable Methodology .................................................15

          D.    Mr. Youssef's Opinion Regarding the Number of Victims Finds Support in the Record ...................................................................................................16

          E.    Mr. Youssef's Opinions On "Camouflaging" of Pegasus Messages Rest On Undisputed Facts And a Reliable Methodology. ....................................18

CONCLUSION............................................................................................................................19

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*,
  117 Cal. Rptr. 2d 685 (Cal. Ct. App. 2002) .......................................... 14

*Baldonado v. Wyeth*,
  2012 WL 1802066 (N.D. Ill. May 17, 2012) .......................................... 15

*Cioli v. Kenourgios*,
  211 P. 838 (Cal. Ct. App. 1922) ...................................................... 7

*Craigslist, Inc. v. Mesiab*,
  2010 WL 5300883 (N.D. Cal. Nov. 15, 2010), *report and recommendation adopted*,
  2010 WL 5300881 (N.D. Cal. Dec. 20, 2010) ...................................... 6, 8

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................. 9, 17

*DePaepe v. Gen. Motors Corp.*,
  141 F.3d 715 (7th Cir. 1998) ......................................................... 15

*Elosu v. Middlefork Ranch Inc.*,
  26 F.4th 1017 (9th Cir. 2022) ...................................................... 12, 17

*Food Pro Int'l, Inc. v. Farmers Ins. Exch.*,
  89 Cal. Rptr. 3d 1 (Cal. Ct. App. 2008) ............................................. 14

*Gutierrez v. Wells Fargo & Co.*,
  2010 WL 1233810 (N.D. Cal. Mar. 26, 2010) ........................................ 16

*Heiting v. Container Store, Inc.*,
  2024 WL 4289890 (C.D. Cal. Sept. 25, 2024) ......................................... 7

*J.V. v. Pomona Unified Sch. Dist.*,
  2017 WL 11636026 (C.D. Cal. May 2, 2017) .......................................... 17

*Old Chief v. United States*,
  519 U.S. 180 (1997) ................................................................... 9

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
  2021 WL 2340144 (N.D. Cal. June 8, 2021) .......................................... 10

*Primavera Familienstifung v. Askin*,
  130 F. Supp. 2d 450 (S.D.N.Y. 2001) ................................................ 19

*Sidibe v. Sutter Health*,
  103 F.4th 675 (9th Cir. 2024) ........................................................ 9

*Simon v. San Paolo U.S. Holding Co.*,
    113 P.3d 63 (Cal. 2005) ............................................................................................ 7, 8

*Spinks v. Equity Residential Briarwood Apartments.*,
    90 Cal. Rptr. 453 (Cal. Ct. App. 2009) ........................................................................ 6

*Sprint/United Mgmt. Co. v. Mendelsohn*,
    552 U.S. 379 (2008) ..................................................................................................... 9

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) .......................................................................................... 7, 8, 18

*TXO Prod. Corp. v. All. Res. Corp.*,
    509 U.S. 443 (1993) ..................................................................................................... 8

*United States v. Zarate-Morales*,
    377 Fed. App'x 696 (9th Cir. 2010) ........................................................................... 12

*Van Buren v. United States*,
    593 U.S. 374 (2021) ................................................................................................... 11

<u>STATUTES & RULES</u>

Cal. Penal Code § 502(e)(4) ............................................................................................ 6

Fed. R. Evid. 403 ........................................................................................................... 9

Fed. R. Evid. 702 ........................................................................................................... 9

<u>OTHER AUTHORITIES</u>

*Spyware*, Merriam-Webster, https://www.merriam-webster.com/dictionary/spyware ................... 14

*Spyware*, Nat'l Inst. Stds. Techs. Comput. Sec. Rsch. Ctr., https://csrc.nist.gov/glossary/term/spy-ware ..................................................................................................................................... 14

*Spyware*, OWASP, https://owasp.org/www-community/attacks/Spyware ...................................... 14

## PRELIMINARY STATEMENT

NSO has failed to provide any valid basis to exclude any of the opinions of Plaintiffs' primary technical expert, David Youssef. In its motion, NSO does not take issue with Mr. Youssef's qualifications or expertise—nor can it, given Mr. Youssef's extensive experience in the cybersecurity field. Instead, NSO makes two arguments based largely on a misinterpretation of the Court's order that granted Plaintiffs' motion for summary judgment and held NSO liable for violating the Computer Fraud and Abuse Act ("CFAA"), the California Comprehensive Data Fraud Act ("CDAFA"), and breaching the WhatsApp Terms of Service.

*First*, NSO argues that Mr. Youssef's opinions are no longer relevant because the Court has entered liability in Plaintiffs' favor. *See* Dkt. No. 494 at 16. Although some of Mr. Youssef's opinions were solely relevant to establishing the elements of Plaintiffs' claims, the jury must still decide whether NSO acted with "oppression, fraud, or malice" to determine whether NSO's conduct warrants awarding punitive damages to Plaintiffs and must also determine the amount of such damages. The technical background of NSO's attacks—i.e., the facts regarding NSO's conduct that gave rise to liability—is necessary to the jury's consideration of those questions. To be sure, the *extent* of Mr. Youssef's testimony may be limited now that NSO has been found liable. Mr. Youssef no longer needs to offer testimony going to every element of Plaintiffs' claims or NSO's meritless defenses. But especially in light of NSO's proposal to call 19 witnesses, Plaintiffs are entitled to show the jury what NSO did, and Mr. Youssef's testimony is therefore relevant. As such, NSO's motion to exclude Mr. Youssef's testimony in its entirety should be rejected.

*Second*, NSO moves to exclude several of Mr. Youssef's opinions that NSO claims are contradicted by the evidence. But NSO's arguments are based on a misreading of the Court's summary judgment order. In finding NSO liable, the Court rejected NSO's arguments about the supposed harmlessness of its attacks. *Compare* Dkt. No. 419-2 at 1–2 (arguing in opposition to Plaintiffs' motion for summary judgment that ███████████████████████████ ████████████ *with* Dkt. No. 494 at 16 (holding NSO liable on all counts). In trying the question of whether NSO acted with "oppression, fraud, or malice," NSO will be free to cross-examine Mr.

1

Pls.' Opp. to Defs.' Mot. to Exclude or Limit the Opinions of David J. Youssef · Case No. 4:19-cv-07123-PJH

Youssef on his opinions, but its professed disagreements with his opinions would go at most to the weight of Mr. Youssef's testimony, not the admissibility of his opinions.

## BACKGROUND

### I.    Mr. Youssef's Expertise and Experience

Mr. Youssef ███████████████████████████████████████████

████████████████████ Tr. at 128:1–7.[1]  He ████████████████████████████████

████████ Youssef Rep. ¶ 16. ██████████████████████████████████

████████████████████████████████████████████████████████████████

██ *Id.* ¶ 16.

Mr. Youssef ████████████████████████████████████████████

████████████████████████████████████████████ *Id.* ¶ 14. ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ *Id.*  He also ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ *Id.*  During ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ *Id.* ¶ 15; *see also* Tr. at 133:13–15 ██████████████████

████████████████████████████████████████

Mr. Youssef is ████████████████████████████ Youssef Rep. ¶ 12.  He

█████████████████████████████████████████████████. *Id.* ¶

13. ████████████████████████████████████████████████████████

████████████████ Tr. at 12:19–24. ██████████████████████████████

████████████████████████████████████████████████████████ Tr. at

---

[1]    Excerpts from Mr. Youssef's deposition transcript are attached as Exhibit A to the Declaration of Micah G. Block and cited herein as "Tr."  Mr. Youssef's expert report and rebuttal report were previously filed under seal at Dkt. No. 512-3 and Dkt. No. 512-4 and are cited herein as "Youssef Rep." and "Youssef Rebuttal Rep."

12:25–13:7.  He ███████████████████████████████████████████████

██████████████████████ Tr. at 125:1–3.

███████████, Mr. Youssef █████████████████████████████████████

███████████████████████████ Tr. at 139:20–140:5.  He is also ██████████████

███████████████████████ Tr. at 139:22–23, 142:14–22.

## II.    Mr. Youssef's Opinions

Plaintiffs served NSO with Mr. Youssef's expert report (the "Youssef Report") on August 30, 2024.  In his report, Mr. Youssef provides technical opinions on:

- The exploit chain used by ██████████████████, laying out the eight-step process through which the vectors hacked Plaintiffs' servers to deliver malware, Youssef Rep. ¶¶ 41–94;

- How NSO exploited WhatsApp's infrastructure, including how NSO simulated genuine WhatsApp activity to manipulate Plaintiffs' servers and overcome technical barriers, *id.* ¶¶ 95–107;

- The capabilities of NSO's malicious software, its potential impact on victims, and how it fits the cybersecurity industry's understanding of "spyware," *id.* ¶¶ 108–25;

- The evidence showing that NSO's malware was designed to evade detection and counter-measures by Plaintiffs, their servers, and third parties, *id.* ¶¶ 126–32;

- Indicators that NSO reverse-engineered Plaintiffs' software and specifically designed the ██████████████████ to work against Plaintiffs' infrastructure, including NSO's practice of updating their malicious software to regain functionality when Plaintiffs' code updates blocked NSO's unlawful activity, *id.* ¶¶ 133–49; and

- NSO's continued efforts to hack Plaintiffs' servers after Plaintiffs blocked the Eden vector in May 2019, and the objective facts that show why an advanced threat actor like NSO would be unlikely to stop attempting to hack an attractive target like WhatsApp without a significant deterrent in place, *id.* ¶¶ 150–55.

To reach these opinions, Mr. Youssef ████████████████████████████████████
████████████████████████████████████████ *Id.* ¶¶ 18–19, App. C.  He also ████████████
████████████████████████████████████ *Id.* ¶ 19.[2]

Plaintiffs served NSO with Mr. Youssef's Rebuttal Report (the "Youssef Rebuttal Report") on September 21, 2024.  In this report, Mr. Youssef responds to NSO's purported technical expert Terrence McGraw and incorporates new information Plaintiffs learned through their September 4, 2024, deposition of NSO's Vice President of Research & Development, Tamir Gazneli.  Mr. Gazneli's deposition testimony ████████████████████████.  *See, e.g.*, Youssef Rebuttal Rep. ¶ 29 █████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
███████████████████████████████; *id.* ¶ 48 █████████████████████████████
█████████████████████████████████████████████████████████  Mr. Youssef also pointed out inaccuracies in the McGraw Report that the Court later confirmed in its ruling on summary judgment.  *Compare id.* ¶ 80 ██████████████████████████████
██████████████████████████████████████████████████████████████████
████████████████████████, *with* Dkt. No. 494 at 12 ("[T]he fact that defendants rede-signed Pegasus to evade detection after plaintiffs first fixed the security breach is enough to prove intent [to defraud].").

**III.    NSO Deposes Mr. Youssef**

NSO deposed Mr. Youssef for more than seven and a half hours on December 10, 2024.  In his deposition, Mr. Youssef defended the opinions laid out in his reports.  On December 19, 2024, the Court granted partial summary judgment for Plaintiffs, finding NSO liable on all claims and or-dering a jury trial on damages.  Dkt. No. 494.

---

[2]   Although Mr. Youssef will serve as Plaintiffs' primary expert explaining NSO's technical intru-sions into Plaintiffs' servers, NSO refused to allow Mr. Youssef ███████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████  *See* Dkt. No. 365-2 at 1–3.  Because Dr. Vance was permitted to review these materials, his expert report included opinions on these topics.  *See* Dkt. No. 507-2 (Vance Rep.) at 6–22.

Four days after the Court granted Plaintiffs' motion for summary judgment, NSO raised a discovery dispute via joint letter, asserting that NSO was entitled to sanctions and additional time to depose Mr. Youssef because of his "deposition misconduct." Dkt. No. 498 at 1–4. As Plaintiffs explained in their portion of the joint letter, NSO had no basis for seeking additional deposition time from Mr. Youssef "relate[d] to issues that the Court has already adjudicated, such as whether NSO's spyware exceeded authorized access or whether NSO reverse-engineered WhatsApp in violation of WhatsApp's Terms of Service." *Id.* at 4–5. Moreover, NSO lacked good cause to extend Mr. Youssef's deposition. *Id.* at 5–7.

On January 10, 2025, the Court denied NSO's motion for additional time, ruling that there was no need for NSO to further depose Mr. Youssef. Dkt. No. 519 at 3. In that decision, the Court noted that NSO's request for additional time to depose Mr. Youssef was "almost certainly moot. Given that the court has already issued a ruling resolving all issues of liability, the court cannot envision a circumstance in which either party will be permitted to put on testimony from their technical experts." *Id.* at 4. At that point, Plaintiffs had not yet fully briefed the basis for an award of punitive damages, and the Court left the door open for a trial beyond the parties' damages experts: "If the court ultimately determines that testimony of technical experts will be presented, the court will further consider defendants' request at that time." *Id.*

## ARGUMENT

### I.    Mr. Youssef's Opinions Are Relevant to the Jury's Determination of Punitive Damages

NSO's primary argument for excluding Mr. Youssef's testimony has no connection to Mr. Youssef's qualifications, expertise, or methodology, but instead stems from the Court's decision finding NSO liable on Plaintiffs' claims. In NSO's view, Mr. Youssef's technical opinions have no relevance to the upcoming damages-only trial. *See* Dkt. No. 512 at 4–7. NSO's position reflects a cramped view of relevance, and in particular disregards the factual issues that the jury must consider to assess the appropriateness, and amount, of punitive damages. Mr. Youssef's technical opinions are relevant to the jury's understanding of those factual issues.[3]

---

[3]    Though Mr. Youssef's testimony remains relevant for the upcoming damages-only trial, Plaintiffs maintain that the Court's summary judgment order moots NSO's request for additional deposition testimony from Mr. Youssef. *See* Dkt. No. 498 at 4–7. NSO only sought additional deposition

5

Pls.' Opp. to Defs.' Mot. to Exclude or Limit the Opinions of David J. Youssef - Case No. 4:19-cv-07123-PJH

Mr. Youssef's testimony will help the jury understand the details of NSO's unlawful conduct so it can properly assess whether NSO acted with "oppression, fraud, or malice" in violating the California Comprehensive Computer Data and Fraud Act.  *See* Cal. Penal Code § 502(e)(4) ("[W]here it is proved by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice . . . the court may additionally award punitive or exemplary damages.").  This involves consideration of, among other things, whether NSO "acted with intent to cause injury," whether NSO's conduct was "despicable and was done with a willful and knowing disregard of the rights or safety of another," and whether NSO's conduct "was despicable and subjected [WhatsApp] to cruel and unjust hardship in knowing disregard of its rights."  *See* CACI No. 3945; *see also Spinks v. Equity Residential Briarwood Apartments.*, 90 Cal. Rptr. 453, 494 (Cal. Ct. App. 2009) (finding "triable issue on the question of whether defendants acted with malice" when "a reasonable jury could find that defendants acted with conscious disregard for plaintiff's rights").

The following nonexhaustive examples illustrate the relevance of Mr. Youssef's opinions to the jury's consideration of punitive damages:

- ***The normal operation of WhatsApp's platform* (Youssef Rep. ¶¶ 37–40.)**  To understand NSO's substantial effort to develop its spyware and unlawfully attack WhatsApp's servers, the WhatsApp Official Client, and the target devices, the jury must hear testimony about how WhatsApp normally works, including the technological barriers built into the system.  That NSO understood WhatsApp's complex architecture on an intimate level evinces NSO's "knowing, deliberate, willful and conscious disregard of [Plaintiffs'] rights."  *See Craigslist, Inc. v. Mesiab*, 2010 WL 5300883, at *14 (N.D. Cal. Nov. 15, 2010), *report and recommendation adopted*, 2010 WL 5300881 (N.D. Cal. Dec. 20, 2010).

- ***The operation of NSO's exploit chain* (Youssef Rep. ¶¶ 41–99, 157; Youssef Rebuttal Rep. ¶¶ 27–67, 76–83, 101, 103.)**  Although the Court already found that NSO used the ▮▮▮▮▮▮▮▮ to deliver spyware to target devices, the jury must understand *how*

time to question Mr. Youssef on issues that relate solely to NSO's liability.  *See id.* at 2 (requesting more time to ask Mr. Youssef whether "Pegasus messages cause[d] the WhatsApp servers to execute code that those servers would not normally execute").  In all events, NSO lacks good cause to extend Mr. Youssef's deposition.  *Id*. at 5–7.

NSO's exploit chain operated, including the ways in which NSO circumvented Plaintiffs' technological barriers.  The fact that NSO's exploit chain worked according to NSO's careful design and not by "mere accident" goes to the "reprehensibility" of NSO's tortious conduct. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

- ***The capabilities of NSO's malware* (Youssef Rep. ¶¶ 28–31, 105–17, 121–25, 131–32, 158; Youssef Rebuttal Rep. ¶¶ 88–99.)**  The jury needs a thorough understanding of the scope of information that NSO's spyware harvests, which includes private, encrypted messages, to determine whether and to what extent NSO should be punished for deploying that spyware. Courts have already recognized that "secretly record[ing] conversations" and "allow[ing] third parties to eavesdrop" on conversations—two core functions of Pegasus—can support punitive damages under California law.  *See, e.g.*, *Heiting v. Container Store, Inc.*, 2024 WL 4289890, at *1, 3 (C.D. Cal. Sept. 25, 2024).

- ***NSO's efforts to avoid detection and conceal their malware from WhatsApp and the owners of target devices* (Youssef Rep. ¶¶ 126–30, 159.)**  NSO's efforts to avoid detection and conceal their malware are relevant to NSO's "conscious disregard of the rights" of WhatsApp. *Simon v. San Paolo U.S. Holding Co.*, 113 P.3d 63, 75 (Cal. 2005).  And California courts have long recognized "secrecy and circumvention" as a sign of fraud.  *See Cioli v. Kenourgios*, 211 P. 838, 842 (Cal. Ct. App. 1922) (describing how "indications of covered tracks and studious concealments" evinces the intent to defraud).

- ***The effect of NSO's malware on WhatsApp's servers* (Youssef Rep. ¶¶ 100–04; Youssef Rebuttal Rep. ¶¶ 84–87, 104.)**  The Court already found as a matter of law that NSO harmed WhatsApp for purposes of the CFAA, but the jury must understand the extent of the harm to WhatsApp's servers in order to assess punitive damages. "[T]he actual or potential harm suffered by the plaintiff" is key to the determination of punitive damages.  *Simon*, 113 P.3d at 75.

- ***NSO's efforts to surmount additional technological barriers added by Plaintiffs* (Youssef Rep. ¶¶ 145–149, 156; Youssef Rebuttal Rep. ¶ 100.)**  The jury must understand exactly what NSO did to evade additional technological hurdles imposed by Plaintiffs on the multiple

7

occasions where Plaintiffs deployed a fix, only for NSO to circumvent it.  That NSO's "conduct involved repeated actions" and was not an "isolated incident" goes to, at least, the "degree of reprehensibility."  *Simon*, 113 P.3d at 75 (quoting *State Farm*, 538 U.S. at 419).

- ***The number of NSO's targets*** **(Youssef Rep. ¶¶ 118–20, 161.)**  The jury may properly consider both "*potential* harm" and "the possible harm to other victims" to levy punitive damages against NSO.  *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 460 (1993) (emphasis in original).  Understanding that NSO targeted at least 1,500 users in just a few weeks using a single installation vector, as Mr. Youssef will explain, underscores the breadth of NSO's misconduct.

- ***NSO's reverse-engineering of WhatsApp software*** **(Youssef Rep. ¶¶ 133–44, 160; Youssef Rebuttal Rep. ¶¶ 68–75, 102.)**  The jury must understand the effort NSO took to reverse-engineer Plaintiffs' technology to create a WhatsApp-specific vector to fully understand the scope of NSO's unlawful hacking.  A court in this district found "malice" to support an award of punitive damages where the defendant "knowingly developed and marketed software with the sole purpose of circumventing the security measures put in place by [the plaintiff]."  *Craigslist, Inc.*, 2010 WL 5300883, at *14.

- ***WhatsApp's attractiveness as a target and NSO's continued attempts to exploit Plaintiffs' servers after May 2019*** **(Youssef Rep. ¶¶ 32–36, 150–55.)**  To determine the proper size of an award to deter NSO's unlawful activity, the jury must understand that NSO continued hacking Plaintiffs even after the filing of this lawsuit.  NSO's "continued efforts" to hack WhatsApp "after representing to [Plaintiffs] that [it] had stopped" demonstrates that NSO has "acted reprehensibly."  *Craigslist, Inc.*, 2010 WL 530083, at *14.

Punitive damages are for the jury to determine even after liability has been established.  Because, as explained above, the technical details of NSO's conduct bear directly on issues that courts in the Ninth Circuit recognize as relevant to punitive damages under California law, Mr. Youssef's expert testimony is relevant and helpful to the jury in that determination.

8

Pls.' Opp. to Defs.' Mot. to Exclude or Limit the Opinions of David J. Youssef - Case No. 4:19-cv-07123-PJH

## II.    The Court Should Not Exclude Any of Mr. Youssef's Opinions Under Rule 702 or Otherwise

Mr. Youssef's opinions are rooted in sound methodology and the evidence in the record, and they are consistent with the Court's ruling granting Plaintiffs' motion for summary judgment.  The Court should deny NSO's motion to exclude Mr. Youssef's testimony, as his opinions satisfy *Daubert* and Rule 702.  The opinions NSO challenges speak clearly to important factual issues for punitive damages: (1) the effects of Pegasus and ███████████████ on Plaintiffs' servers; (2) the capabilities and purpose of the malware NSO forced through Plaintiffs' servers; (3) the attractiveness of WhatsApp as a target for hackers and NSO's relentlessness in attacking the platform; (4) the number of targets NSO attacked; and (5) NSO's efforts to conceal its unlawful activities.  NSO's arguments regarding the admissibility of Mr. Youssef's opinions impermissibly seek to relitigate factual and legal issues already settled by the Court.  In addition, NSO's objections to Mr. Youssef's opinions, and his methodology, go only to the weight of Mr. Youssef opinions and not their admissibility.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of attacking expert testimony that survives Rule 702.[4]  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)

### A.    The Court Should Not Exclude Mr. Youssef's Opinions Regarding the Impact of NSO's Pegasus on Plaintiffs' Servers

NSO first argues that the Court should preclude Mr. Youssef from invoking certain phrases because they contradict the purportedly "uniform" evidence that "Pegasus used WhatsApp servers only as a conduit through which to exchange messages with target devices, and Pegasus did not damage WhatsApp's servers or service in any way."  Dkt. No. 512 at 7–11.  NSO's arguments not

---

[4]    NSO's fallback argument that Rule 403 somehow justifies exclusion of Mr. Youssef's opinions similarly fails.  Rule 403 "requires a fact-specific, context-specific inquiry."  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).  Rule 403 only contemplates the exclusion of evidence "if its probative value is *substantially* outweighed" by the "danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403 (emphasis added).  In the context of Rule 403, unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).  When a fact goes to an essential aspect of the trial, however, "[t]here is nothing unfair about admitting evidence of precisely that."  *Sidibe v. Sutter Health*, 103 F.4th 675, 702 (9th Cir. 2024).

only ignore the Court's ruling finding NSO liable, but also fail to meet the standard to exclude an expert's testimony.

*First*, the Court should not prohibit Mr. Youssef from offering opinions regarding whether NSO "altered," "damaged," or "deleted" data from WhatsApp servers and target devices. *See* Youssef Rep. ¶¶ 131–32. NSO argues that Mr. Youssef fails to identify any data that NSO altered, damaged, or deleted specifically from the WhatsApp servers, and that snippets of deposition testimony from Plaintiffs' lay witnesses signal that Plaintiffs' computers were not damaged. Dkt. No. 512 at 8–9. Here, NSO mischaracterizes Mr. Youssef's report and fails to acknowledge other considerations that support Mr. Youssef's conclusion. For instance, Mr. Youssef describes how NSO's malware ████████████████████████████████████████████████ ███████████████████████████████████████. Youssef Rep. ¶ 104. As a legal matter, the existence of contrary evidence does not make an opinion "unsupported and not based on the facts of the case." Dkt. No. 512 at 9. Indeed, courts routinely deny *Daubert* motions premised on "facts that [an expert] may not have considered in his analysis." *Plexxikon Inc. v. Novartis Pharms. Corp.*, 2021 WL 2340144, at *4 (N.D. Cal. June 8, 2021). Even taking NSO's skewed view of the facts, a similar analysis should govern here, and the Court should refuse to exclude Mr. Youssef's opinions regarding the impact of NSO's Pegasus on Plaintiffs' servers.

Mr. Youssef's opinions are consistent with the Court's findings on liability. NSO's arguments in support of exclusion, however, rely on an inconsistent reading of the record and the Court's ruling on summary judgment. For example, NSO insists that "[t]he evidence is uniform that Pegasus's use of WhatsApp's servers was innocuous," despite the Court finding as a matter of law that the activity was unlawful and caused harm to Plaintiffs. *See, e.g.*, Dkt. No. 494 at 5–6, 9–10 (finding NSO "caused harm" to Plaintiffs for purposes of the *Calder* test); *id.* at 12 (finding NSO liable on Plaintiffs' CFAA claim); *id.* at 15 ("[D]efendants do not dispute that [P]laintiffs incurred costs investigating and remediating defendants' breaches.").

*Second*, the Court should not prohibit Mr. Youssef from offering opinions regarding whether NSO "compromised," "hacked," "exploited," or "abused" WhatsApp's servers. *See* Dkt. No. 512 at

10

Pls.' Opp. to Defs.' Mot. to Exclude or Limit the Opinions of David J. Youssef · Case No. 4:19-cv-07123-PJH

9. Though NSO may not want the jury to hear those terms, it has no valid basis to exclude Mr. Youssef's opinions that include them.

Here too, NSO relies on the existence of supposedly contradictory evidence in the record. And while NSO acknowledges that Mr. Youssef may "mean something different" when he describes what it means to be "compromised," NSO ignores that Mr. Youssef actually explained his analysis in his deposition. *See* Tr. at 201:3–17 ████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████ To the extent that NSO finds Mr. Youssef's statements "difficult to reconcile" with Plaintiffs' internal documents, Dkt. No. 512 at 9, that is only an opportunity for cross-examination, not grounds for exclusion.

Along the same lines, the Court should not exclude Mr. Youssef from using the term "hack" to describe conduct the Court already ruled violated the CFAA and CDAFA. The CFAA is unquestionably an anti-hacking statute. The Supreme Court described the CFAA as Congress's response to "a series of highly publicized *hackings*" that "captured the public's attention." *Van Buren v. United States*, 593 U.S. 374, 378 (2021) (emphasis added). The CFAA's scope encompasses what hackers do: "The statute is concerned with what a person does on a computer; it does not excuse *hacking* into an electronic personnel file if the *hacker* could have walked down the hall to pick up a physical copy." *Id.* at 385–86 (emphases added). And the CFAA's provisions form "a scheme 'aimed at avoiding the typical consequences of *hacking*.'" *Id.* at 376 (emphasis added). Even NSO acknowledged that the CFAA makes "illegal hacking actionable" in its opposition to Plaintiffs' motion for partial summary judgment. Dkt. No. 419-2 at 2. NSO recently proposed a voir dire question, to which Plaintiffs did not agree, asking potential jurors whether they have been "hacked." Dkt. No. 579 at 5 ("Have you or someone close to you ever been hacked . . . ?"). Thus, it is not "untethered from the facts of this case" for Mr. Youssef to refer to NSO's conduct as "hacking" when the Court has already ruled that NSO violated two anti-hacking statutes. *Compare* Dkt. No. 512 at 9, *with* Dkt. No. 494 at 12–13. Nor can Mr. Youssef's use of the term pose unfair prejudice to NSO when NSO itself intends to

voluntarily put the word "hacking" in the ears of the entire venire before Plaintiffs make their opening statement.

All in all, to whatever extent NSO believes that Mr. Youssef's characterizations differ from those of other witnesses, or particular documents, that is a matter for cross-examination at trial. NSO confronted many lay witnesses with the slideshow that NSO draws from heavily in its *Daubert* motion, but the record remains unclear on who created that slide and what that person meant when they wrote it. *See* Block Decl. Ex. B (Gheorghe Dep. Tr.) at 171:23–25 (answering "[s]o I did not author these slides, especially not this one, so I cannot know what the author meant with this slide" when asked about another slide in the same slideshow); Block Decl. Ex. C (Robinson Dep. Tr.) at 206:24–25 ("I don't know if I recall or I recognize this specific presentation."); Block Decl. Ex. D (Barcons Dep. Tr.) at 116:15–16 ("'Compromised' may mean very different things."); *id.* at 195:12–15 ("I mean, perhaps – perhaps I was present, but I don't recall being present on the preparation of this deck. I think I would remember. I don't think I was doing that."); Block Decl. Ex. E (Wang Dep. Tr.) at 139:24–140:11 ("I do not remember this. . . There are many presentations. I do not have memory of this particular one.").

In any event, Ninth Circuit precedent expressly holds that experts do not have to echo a party's lay witnesses in every respect, a proposition that should be obvious given that the purpose of expert testimony is to "explain matters outside the expected knowledge of the average juror." *United States v. Zarate-Morales*, 377 Fed. App'x 696, 698 (9th Cir. 2010). In *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2022), the district court had excluded an expert opinion on the grounds that it was "directly contradicted by multiple eye-witness accounts." *Id.* at 1027. But the Ninth Circuit reversed because the lower court's "singular focus" on those perceived incompatibilities "misse[d] the point of [the expert]'s hypothesis." *Id.* The Court should reject NSO's invitation to prohibit Mr. Youssef from offering his expert testimony to the jury because of a perceived inconsistency with snippets of Plaintiffs' internal documents.

**B.    Mr. Youssef's Use of the Word "Spyware" Is Consistent with the Cybersecurity Industry and the Court's Order on Summary Judgment**

NSO's argument that Mr. Youssef's opinion that NSO's malware is "spyware" is vague, unreliable, or unfairly prejudicial falls apart for three reasons.

*First*, Mr. Youssef explains clearly—in a paragraph NSO notably fails to cite anywhere in its motion—how he arrived at his opinion that Pegasus is "spyware." ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ Youssef Rep. ¶ 7.  NSO argues that Mr. Youssef "appears to have simply made up" this analysis, Dkt. No. 512 at 12, but it closely mirrors common dictionary definitions of "spyware."  *Compare* Youssef Rep. ¶ 7, *with Spyware*, Merriam-Webster, https://www.merriam-webster.com/dictionary/spyware ("[S]oftware that is installed in a computer or mobile device without the user's knowledge and that transmits information about the user's activities.").  The definition Mr. Youssef employs also comports with sources from across the cybersecurity industry, including the sources NSO's technical expert cites as authorities in the field, and governmental standard-setters.[5]

*Second*, the term "spyware" is both relevant and helpful to the jury because in simple terms it describes and orients the jury as to what Pegasus and ███████████████ do and why they exist, issues that are integral to the question of punitive damages.  Especially because Mr. Youssef offers a reliable framework for his conclusion that NSO's Pegasus *is* spyware, using this more familiar label will undoubtedly help the jury and streamline the trial.  *See, e.g.*, Youssef Rep. ¶¶ 41–42

---

[5]   *See, e.g.*, *Spyware*, Nat'l Inst. Stds. Techs. Comput. Sec. Rsch. Ctr., https://csrc.nist.gov/glossary/term/spyware; (defining "spyware" as "[s]oftware that is secretly or surreptitiously installed onto an information system to gather information on individuals or organizations without their knowledge; a type of malicious code"); *Spyware*, OWASP, https://owasp.org/www-community/attacks/Spyware ("Spyware is a program that captures statistical information from a user's computer and sends it over [the] internet without user acceptance.").  NSO's proposed technical expert Mr. McGraw cites NIST six times and OWASP four times in his attempt to rebut Plaintiffs' experts, and Mr. Youssef's definition of "spyware" mirrors the NIST and OWASP formulations.  *See* Dkt. No. 513-4 Ex. B (McGraw Rebuttal Rep.) ¶¶ 75, 78, 80, 110–14.

13

1  ███████████████████████████████████████; *id.* ¶¶ 47–48 ███████████████

2  ███████████████████████; *id.* ¶ 60 ████████████████████████████████████

3  ████████████████████████████████████████████████████████; *id.* ¶ 84

4  ████████████████████████████████████████████████; *id.* ¶ 122

5  ██████████████████████████████████████████████████.  But the jury

6  can more easily digest what it means to ████████████████████████████████████

7  ███████████████████ and then make its decision on whether NSO's mass deployment of such

8  software is "reprehensible" or "fraudulent" to "a level which decent citizens should not have to tol-

9  erate."  *See id.* ¶ 7; *Food Pro Int'l, Inc. v. Farmers Ins. Exch.*, 89 Cal. Rptr. 3d 1, 16 (Cal. Ct. App.

10  2008) (quoting *Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 117 Cal. Rptr. 2d 685,

11  710 (Cal. Ct. App. 2002)).  The term "spyware," therefore, has great probative value as an explana-

12  tory device for complicated technical concepts.  In fact, this is precisely the kind of circumstance in

13  which expert testimony is helpful, because there are complicated, technical details that the jury must

14  understand in order to render its collective judgment on whether NSO's "tortious conduct rises to

15  levels . . . which decent citizens should not have to tolerate." *Am. Airlines, Inc.*, 117 Cal. Rptr. 2d at

16  710.

17  *Third*, there is no "unfair prejudice" to NSO in the term "spyware."  There is no "prejudice"

18  in expert testimony that accurately applies industry terminology to facts the Court already found

19  established.  *See* Dkt. No. 494.  And although NSO challenges the word "spyware" as implying "that

20  NSO's Pegasus software is inherently improper," that is an issue the jury must decide in connection

21  with determining punitive damages.  In short, Mr. Youssef's opinion on "spyware" applies an indus-

22  try definition to the facts of the case as supported by the evidence and found by the Court.  "Spyware"

23  explains what Pegasus and ████████████████████ do, and the jury can properly rely on the term

24  to determine punitive damages.  The Court should not exclude Mr. Youssef's opinion that Pegasus

25  is "spyware."

26

27

28

**C.      Mr. Youssef's Opinions Regarding NSO's Continued Attempts to Target Plaintiffs Rest on a Reliable Methodology**

The Court should not exclude Mr. Youssef's opinions regarding NSO's continued actions following Plaintiffs' remediations. *See* Dkt. No. 512 at 13–16.  In this section of the Youssef Report, Mr. Youssef opines that NSO is ███████████████████████████████ and that ██████████████████████ for NSO.  Youssef Rep. ¶¶ 153, 155.  Mr. Youssef puts these opinions forward by applying his cybersecurity expertise to the evidence in this case.

NSO incorrectly describes Mr. Youssef's expert opinion as an opinion "about NSO's intentions."  Dkt. No. 512 at 13.  The Youssef Report states that ████████████████████████ ████████████████████████████████████████████████████████████████ Youssef Rep. ¶ 154.  As this assessment shows, ███████████████████████████████ ██████████████████████████████.  *Id.* ¶¶ 150–55.  His opinion is consistent with ████████████████████████████████████████████████████████████████ ████████████████████████████████████████.  *See, e.g.*, Dkt. No. 399-4, Ex. 24, at 1████████████████████████████████████████; *id.* Ex. 9, at 1–2████████████████████████████████████████ In his deposition, Mr. Youssef ████████████████████████████████████████████████████████ Tr. at 157:9–18.  Mr. Youssef ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Tr. at 158:16–20.

Mr. Youssef can justifiably opine on technical matters so the jury can then draw its own inferences about intent.  The case law NSO cites proves the point.  *See Baldonado v. Wyeth*, 2012 WL 1802066, at *8 (N.D. Ill. May 17, 2012) (citing *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998)).  In *DePaepe*, the Seventh Circuit recognized that the jury can properly make certain inferences from expert opinions even when the inferences themselves would not be the proper

15

subject for expert opinion, like a party's subjective intent. *See* 141 F.3d at 720 (describing how "the expert "could give an opinion as an engineer that reducing the padding saved a particular amount of money" and that "he might testify as an engineer that [the defendant]'s explanation for the decision was not sound," and from those two expert opinions "the jury might infer that money was the real reason" for the defendant's design choice).

In addition, and contrary to NSO's argument, Mr. Youssef applied a reliable methodology to explain why WhatsApp remains an attractive target for hackers like NSO. *See* Youssef Rep. ¶ 155. As NSO recognizes, Mr. Youssef relied upon (1) NSO's business model, (2) NSO's response to WhatsApp code changes, and (3) the popularity of WhatsApp to reach his conclusion. *See* Dkt. No. 512 at 15. In its motion, NSO faults Mr. Youssef for not examining internal NSO strategy documents that detail "NSO's resources, NSO's risk tolerance, NSO's resource allocation strategy," as well as "costs associated with developing and maintaining different vectors, comparative market values of different delivery vectors, demand from law enforcement and intelligence agencies, and so forth." *Id.* at 15. This criticism ignores that NSO refused to provide *any* of this information in discovery. In all events, a "failure to consider" all possible alternatives does not render a "methodology unreliable under *Daubert*." *Gutierrez v. Wells Fargo & Co.*, 2010 WL 1233810, at *12 (N.D. Cal. Mar. 26, 2010).

### D.   Mr. Youssef's Opinion Regarding the Number of Victims Finds Support in the Record

To the extent that NSO has a dispute with Mr. Youssef's description of the 1,500 target devices implicated in NSO's attacks, *see* Dkt. No. 512 at 16–17, that does not provide a basis to exclude Mr. Youssef from offering his opinions to the jury. The Youssef Report carefully described the available evidence that shows how NSO interacted with the target devices. *See* Youssef Rep. ¶ 11

███████████████████████████████████████████

*id.* ¶ 118 ███████████████████████████████

███████████████████████████████████████████

*id.* ¶ 161 ████████████████████████████

███████████████████████████████████████████.

16

Pls.' Opp. to Defs.' Mot. to Exclude or Limit the Opinions of David J. Youssef - Case No. 4:19-cv-07123-PJH

NSO admits that these 1,500 Target Devices all "received an initial Pegasus exploit message," but quibbles with Mr. Youssef's conclusion that they were "successfully exploited." Dkt. No. 512 at 16. For one, this ignores what the Court found in its order on summary judgment: that NSO obtained information "directly from the target users' devices" in violation of the laws of the United States and California. Dkt. No. 494 at 12. Even NSO has acknowledged the obvious truth that its end-stage payload—the Pegasus spyware—was installed on Target Devices, using WhatsApp servers, via the ████████████████████████ *See* Dkt. No. 604-2 at 17 ████████████████████ ████████████████████████████████████████████████ Dkt. No. 399-4 Ex. 6 ████████████████ at 82:14–83:11 ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ Moreover, NSO could have asked Mr. Youssef about the meaning of his terminology at his deposition and will have the opportunity to cross-examine Mr. Youssef regarding his terminology at trial.

Any daylight between Mr. Youssef's opinions and individual pieces of evidence is a question of weight and not admissibility. If NSO wants to argue the significance of Mr. Youssef's opinion, the proper techniques are "vigorous cross-examination" or "the presentation of contrary evidence." *Daubert*, 509 U.S. at 596. An expert is not required to agree in all respects with every lay witness. *See Elosu*, 26 F.4th at 1027 (finding error when the district court excluded an expert for purportedly being "directly contradicted by multiple eye-witness accounts"). In fact, the expert's ability to disagree with lay witnesses is important *because* it allows the expert to apply independent judgment and expertise. *See, e.g.*, *J.V. v. Pomona Unified Sch. Dist.*, 2017 WL 11636026, at *22 (C.D. Cal. May 2, 2017) ("An expert may not present testimony that merely 'parrots' the opinion of others, without providing an independent evaluation of the evidence.").[6]

---

[6] NSO also refused to produce information regarding its customers and Pegasus targets. Because NSO denied Plaintiffs (and by extension, Mr. Youssef) the opportunity to prove through discovery the number of successful end-stage installations, the Court should reject NSO's challenge to the basis of Mr. Youssef's opinion on the number of targets when he relied on all the evidence he could access.

1

2

**E.    Mr. Youssef's Opinions on "Camouflaging" of Pegasus Messages Rest on Undisputed Facts and a Reliable Methodology**

Finally, NSO's efforts to exclude Mr. Youssef from opining that NSO's installation vectors "camouflaged" its malware should likewise be rejected.  NSO claims that Mr. Youssef's opinion is "nonsensical" and "confusing" because "[a]ll Pegasus messages complied with the technical rules imposed by WhatsApp servers."  Dkt. No. 512 at 17–18.  But the Court has already rejected this argument.  At the summary judgment stage, NSO attempted to avoid liability by claiming that Pegasus messages "passed through the Whatsapp servers just like any other message would."  Dkt. No. 494 at 11.  The Court nonetheless found NSO liable.  *Id*. at 12.  While NSO disagrees with the Court's ruling, this disagreement provides no basis to exclude Mr. Youssef's testimony.

Moreover, NSO's focus on the term "camouflaging" ignores the context of Mr. Youssef's opinions.  The opinion on "camouflaging" malware is one of Mr. Youssef's several opinions address-ing the ███████████████████  *See* Youssef Rep. ¶¶ 126–30.  These opinions ex-plain how ████████████████████████████████████████████

████████████████████████████████████████████

*Id.* ¶ 126.  These opinions rest on Mr. Youssef's assessment of qualitative, objective characteristics of the malicious messages NSO created with the WIS.  The specific opinion on "camouflage" de-scribes ██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████  *Id.* ¶ 128.  NSO's ████

████████████████████████████████████████████

███████████████████████████████  *Id.*  That is a reasonable assessment of objective indicia, and it is not "nonsensical or confusing" to anyone other than NSO.  The concept of "camouflage" is directly relevant to punitive damages, as it is proof that the harm NSO caused "was the result of intentional malice, trickery, or deceit."  *State Farm*, 538 U.S. at 419.

NSO cites no case law supporting its position that the Court should bar Mr. Youssef from describing NSO's conduct with reference to "camouflage."  NSO cites a single out-of-circuit case

18

Pls.' Opp. to Defs.' Mot. to Exclude or Limit the Opinions of David J. Youssef - Case No. 4:19-cv-07123-PJH

involving an expert who proffered an opinion the court viewed as "not so much testimony about industry custom or practice" as much as "the state of the law." *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001). Mr. Youssef's opinion that NSO "camouflaged" malware is not an opinion on "the state of the law," but an apt and substantively grounded description that the jury will understand.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny NSO's motion to exclude or limit the opinions of David Youssef.

Dated:  March 20, 2025

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  /s/ Micah G. Block
     Greg D. Andres
     Antonio J. Perez-Marques
     Gina Cora
     Craig T. Cagney
     Luca Marzorati
       (admitted *pro hac vice*)
     DAVIS POLK & WARDWELL LLP
     450 Lexington Avenue
     New York, New York 10017
     Telephone: (212) 450-4000
     Facsimile: (212) 701-5800
     Email: greg.andres@davispolk.com
            antonio.perez@davispolk.com
            gina.cora@davispolk.com
            craig.cagney@davispolk.com
            luca.marzorati@davispolk.com

     Micah G. Block (SBN 270712)
     DAVIS POLK & WARDWELL LLP
     900 Middlefield Road, Suite 200
     Redwood City, California 94063
     Telephone: (650) 752-2000
     Facsimile:  (650) 752-2111
     Email: micah.block@davispolk.com

     *Attorneys for Plaintiffs*
     *WhatsApp LLC and Meta Platforms, Inc.*