Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         gina.cora@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION**<br><br>Date:    April 10, 2025<br>Time:   9:30 am<br>Ctrm:  3<br>Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................2

I.    Plaintiffs Move for a Permanent Injunction Based on the Undisputed Facts .............2

    A.    NSO Has Not Identified Any Relevant Disputed Fact ...................................2

    B.    The Declarations from NSO's Executives Do Not Create Any Factual Disputes........................................................................................................3

II.    Plaintiffs Satisfy the Requirements for Injunctive Relief ..........................................4

    A.    Plaintiffs Have Proved Irreparable Harm for Which Monetary Damages Are Inadequate ....................................................................................5

        1.    Plaintiffs Are Likely to Suffer Future Harm .......................................5

        2.    There Is No Adequate Legal Remedy for Plaintiffs' Future Harm......6

    B.    The Balance of Hardships Favors an Injunction ...............................................8

    C.    An Injunction Is in the Public Interest ..............................................................9

III.    The Scope of the Proposed Injunction Is Appropriate ...............................................10

    A.    California Law Does Not Preclude the Relief Plaintiffs Seek ......................11

    B.    Plaintiffs' Injunction Is Narrowly Tailored to NSO's Misconduct ..............12

IV.    The Court Should Issue a Permanent Injunction at the April 10 Pretrial Conference, Without Holding an Evidentiary Hearing...............................................15

CONCLUSION ...............................................................................................................15

# TABLE OF AUTHORITIES

<u>CASES</u>

<u>PAGE(S)</u>

*Adobe Sys., Inc. v. Taveira*,
  2009 WL 506861 (N.D. Cal. Feb. 27, 2009) ................................................................. 7

*Apple Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 943 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011). ........... 14

*Cal. Physicians Serv., Inc. v. Healthplan Servs., Inc.*,
  2021 WL 879797 (N.D. Cal. Mar. 9, 2021) ................................................................. 11

*Capitol Recs., Inc. v. Thomas-Rasset*,
  692 F.3d 899 (8th Cir. 2012) ....................................................................................... 12

*Charlton v. Est. of Charlton*,
  841 F.2d 988 (9th Cir. 1988) ......................................................................................... 2

*Chegg, Inc. v. Doe*,
  2023 WL 7392290 (N.D. Cal. Nov. 7, 2023) ................................................................. 7

*Corelogic Sols., LLC v. Geospan Corp.*,
  2020 WL 7786537 (C.D. Cal. Aug. 21, 2020) ............................................................... 9

*Craigslist, Inc. v. Kerbel*,
  2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) ................................................................. 7

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D. Cal. 2010) ....................................................................... 12

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ......................................................................................... 8

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) ......................................................................................... 7

*In re Est. of Ferdinand Marcos Hum. Rts. Litig.*,
  94 F.3d 539 (9th Cir. 1996) ......................................................................................... 14

*Facebook, Inc. v. Power Ventures, Inc.*,
  252 F. Supp. 3d 765 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019). .............. *passim*

*Haskell v. Brown*,
  677 F. Supp. 2d 1187 (N.D. Cal. 2009) ....................................................................... 10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ....................................................................................... 9

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  273 F. Supp. 3d 1099 (N.D. Cal. 2017) ......................................................................... 9

ii

*Keene v. City & Cnty. of San Francisco*,
  2025 WL 341831 (9th Cir. Jan. 30, 2025) ...................................................... 5

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ........................................................................ 15

*McComb v. Jacksonville Paper Co.*,
  336 U.S. 187 (1949) ....................................................................................... 12

*Meta Platforms, Inc. v. Ates*,
  2023 WL 4035611 (N.D. Cal. May 1, 2023) ................................................. 12

*Meta Platforms, Inc. v. Nguyen*,
  2023 WL 8686878 (N.D. Cal. Aug. 22, 2023) ...............................................14

*Meta Platforms, Inc. v. Nguyen*,
  2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) ............................................... 12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) .......................................................... 7

*Michener v. Wells Fargo Home Mortg.*,
  2012 WL 3027538 (N.D. Cal. July 24, 2012) ............................................... 11

*NLRB v. Express Pub. Co.*,
  312 U.S. 426 (1941) ....................................................................................... 14

*Russ. Media Grp., LLC v. Cable Am., Inc.*,
  598 F.3d 302 (7th Cir. 2010) ........................................................................ 12

*Softketeers, Inc. v. Regal W. Corp.*,
  2023 WL 2024701 (C.D. Cal. Feb. 7, 2023) ...................................................8

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .......................................................................... 4

*Sprint Nextel Corp. v. Welch*,
  2014 WL 68957 (E.D. Cal. Jan. 8, 2014), *report and recommendation adopted*, 2014 WL
  2106683 (E.D. Cal. May 20, 2014) ............................................................6, 14

*Sprint Sols., Inc. v. Cell Wholesale, Inc.*,
  2015 WL 13919095 (C.D. Cal. Dec. 10, 2015) ............................................. 13

*United States v. Holtzman*,
  762 F.2d 720 (9th Cir. 1985) ................................................................... 11, 13

*United States v. Marc*,
  2020 WL 6064793 (M.D. Fla. Sept. 1, 2020) ................................................. 8

*United States v. U.S. Gypsum Co.*,
  340 U.S. 76 (1950) ......................................................................................... 13

*White v. Univ. of Cal.*,
  2012 WL 12335354 (N.D. Cal. Oct. 9, 2012), *aff'd*, 765 F.3d 1010 (9th Cir. 2014) ................ 14

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................................ 10

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    75 F.4th 995 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 824 (2024) ................................ 6

### STATUTES & RULES

18 U.S.C. § 1030(g) ............................................................................................................ 5

Cal. Civ. Code § 3423(e) .................................................................................................... 11

Cal. Civ. Proc. Code § 526(b)(5) ...................................................................................... 11

Cal. Penal Code § 502(e)(1) ............................................................................................... 5

Fed. R. Civ. P. 65 ...........................................................................................................9, 14

### INTRODUCTION[1]

NSO's opposition confirms that an evidentiary hearing is unnecessary and the Court should enter a permanent injunction before the upcoming damages-only trial. The Court has already found NSO liable for violating federal and state law, and there are no disputed facts relevant to the injunction. NSO retains the technology that enabled its unlawful attacks and it continues to market and sell Pegasus, deploy zero-click installation vectors, and devote extensive resources to making sure these vectors are not discovered. Indeed, in a declaration filed with its opposition, NSO's CEO admits NSO continues to access Plaintiffs' platforms and its business depends on collecting private messages from Plaintiffs' users. *See* Dkt. No. 605-2 ¶¶ 10–12. NSO has no intention of stopping the conduct at the heart of this case without being ordered to do so.

NSO's arguments in opposition are unpersuasive. *First*, NSO argues that an injunction is unnecessary because Plaintiffs and the Court can rely on NSO's assurances that it will not hack into Plaintiffs' users' devices *through* Plaintiffs' servers again. There is no basis to trust NSO, which has repeatedly circumvented Plaintiffs' updated security measures, and continues to collect private messages from Plaintiffs' users. NSO has been found liable for such conduct, and should be enjoined from continuing it. *Second*, NSO relies on unconvincing policy arguments about the purported importance of its (illegal) work. The Court ruled that these policy arguments are irrelevant to the case. Additionally, NSO has failed to produce any evidence to support its self-serving assertions as to its spyware's alleged use in combatting crime and terrorism. *Third*, NSO argues that the Court's injunction should be limited to only the precise misconduct that was the focus of the Court's ruling finding NSO liable. This argument ignores the overwhelming evidence establishing a pattern of NSO developing and deploying *new* exploits to circumvent WhatsApp's security measures. Well-established case law encourages courts to craft common-sense remedies designed to prevent future misconduct. *Finally*, NSO's lengthy discussion of two California statutes supposedly limiting the availability of

---

[1] Based on the Court's order on sealing, Dkt. No. 633, Plaintiffs believe that there is no basis to maintain any of the documents cited herein under seal. Before filing this brief, Plaintiffs notified NSO that Plaintiffs intended to publicly file the cited documents to comply with this Court's order. NSO responded by requesting that Plaintiffs maintain these documents under seal so that NSO could further evaluate its options.

injunctive relief for breach of contract claims has no tangible impact here, because all of the relief that Plaintiffs seek—including prohibitions on conduct that violates the WhatsApp Terms of Service ("Terms")—is available and warranted for NSO's violations of the CFAA and CDAFA.

Having found that NSO has repeatedly violated federal and state law, this Court should issue a permanent injunction to prevent future illegal activity. Because the Court has already made a finding on the undisputed facts, no further evidence is necessary for the issuance of an injunction.

## ARGUMENT

### I.    Plaintiffs Move for a Permanent Injunction Based on the Undisputed Facts

Plaintiffs are entitled to a permanent injunction based on the undisputed facts. Nothing in NSO's opposition raises a factual dispute that warrants an evidentiary hearing.

#### A.    NSO Has Not Identified Any Relevant Disputed Fact

NSO concedes, as it must, that *no* evidentiary hearing is required when "there are no factual disputes." Dkt. No. 605 at 4; *see, e.g., Charlton v. Est. of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988). With only one inconsequential exception, Plaintiffs' motion relies exclusively on undisputed facts from the summary judgment record. *See* Dkt. No. 569 at 2 & n.2.[2] Those undisputed facts establish that the Court should enjoin NSO from continuing its illegal conduct.

In its opposition and throughout this litigation, NSO has admitted to the core of its misconduct. NSO admits that its installation vectors used WhatsApp servers from April 2018 to May 2020, Dkt. No. 605 at 14, in order "to achieve execution on the target's mobile device," Dkt. No. 605-3 ¶ 3. And NSO admits that its WhatsApp-based installation vectors remained "operational in May 2020," months after NSO appeared in this litigation. Dkt. No. 605 at 15. In addition, NSO does not dispute the key facts that establish Plaintiffs' risk of ongoing and future harm: NSO continues to (i) market and sell Pegasus spyware, *see* Dkt. No. 557-3 at 9; (ii) rely on zero-click installation vectors for Pegasus, *see id.*; (iii) employ a massive research-and-development team that searches for new covert installation vectors, *see id.* at 10; (iv) work to conceal zero-click installation vectors from the

---

[2]    The exception is a recent statement from Omri Lavie (NSO's co-founder and current owner) denouncing the Court's decision holding NSO liable. *See* Dkt. No. 557-3 at 6. Even if this statement does not alone prove that NSO would defy the Court's order, *see* Dkt. No. 605 at 4, it shows that NSO will continue its misconduct in the absence of one.

platforms they exploit, *see id.*, and (v) retain (and refuse to delete) the technology that enabled its unlawful access to Plaintiffs' servers, *see id*. at 12–13.

NSO also acknowledges that it continues to collect data from the WhatsApp mobile client application without authorization, and has no intention of stopping unless it is compelled by the Court to do so. Yaron Shohat, NSO's CEO, states that NSO's Pegasus spyware and its competitors "permit the remote collection of information from mobile devices," including "WhatsApp messages, among other social media messages," and that a prohibition on collecting Plaintiffs' users' data would impact "all versions of Pegasus." Dkt. No. 605-2 ¶¶ 10, 12. This ongoing collection of information was NSO's undisputed goal in hacking Plaintiffs' platforms in violation of the CFAA and the CDAFA.

To justify a hearing and delay entry of the injunction, NSO resorts to manufacturing irrelevant "disputes," including: Plaintiffs' knowledge that NSO was attacking it when WhatsApp made security updates in 2018, *see* Dkt. No. 560 at 2; the identity of NSO's clients, their role in operating Pegasus, and Plaintiffs' knowledge of these facts, *see id.*; the purposes for which Pegasus is used, *see id.*; and NSO's conduct during discovery in this litigation, *see id.* at 2–3. To the extent these are actual disputes, none of them needs to be resolved before the Court can enter an injunction. The Court has already found that the purpose of Pegasus is irrelevant to this case. *See* Dkt. No. 358 at 3 ("the identity of the victims is not relevant to plaintiffs' case-in-chief"); *see also* Dkt. No. 292 at 6 ("the 'civil society' allegation appears to be an ancillary part of this case—rather than relating to one of the elements of the asserted claims or defenses in this case"). In finding NSO liable, the Court rejected NSO's law-enforcement defense. Dkt. No. 494 at 11; *see also* Dkt. No. 358 at 3 ("NSO has not made even an initial showing that [CFAA's law enforcement] exception applies to any of the alleged victims in this case"). The Court can enjoin NSO's misconduct without relying on NSO's discovery misconduct or recent statements. As explained below, *see infra* § II.B, even if the Court credits NSO's position on any purported disputes of fact, it would not warrant denying an injunction.

## B.    The Declarations from NSO's Executives Do Not Create Any Factual Disputes

The declarations submitted by NSO previewing the testimony that its executives would offer confirm that no hearing is necessary. Tamir Gazneli (NSO's vice president, research and develop-

ment) would purportedly testify that Plaintiffs closed the vulnerabilities that NSO previously exploited. *See* Dkt. No. 605-3 ¶ 5. Yet, NSO also admits that it repeatedly developed new exploits to circumvent Plaintiffs' updated security measures. *See* Dkt. No. 557-3 at 8–11. Mr. Shohat would testify that NSO does not *currently* have a WhatsApp-based installation vector, and does not *intend* to build another WhatsApp-based installation vector. *See* Dkt. No. 605-2 ¶¶ 8–9.[3] But NSO acknowledges that it is in a "cat and mouse game," Dkt. No. 399-4, Ex. 14 at 2, whereby it continuously seeks to develop new exploits. It is undisputed that NSO maintains the resources, expertise, tools, and motivation to find new vulnerabilities in Plaintiffs' platforms and build new installation vectors to exploit these vulnerabilities. As Mr. Gazneli put it, "[t]his is [NSO's] business." *Id.*, Ex. 6 at 266:10. NSO's assertions moreover beg the question of why NSO resists being enjoined from activities that it claims it has "no intention" and "no ability" to conduct. Dkt. No. 605 at 4–5.

Although the Court need not evaluate the credibility of NSO's executives in order to enjoin NSO from future misconduct, neither the Court nor Plaintiffs should be expected to rely on NSO's self-serving statements. NSO continued to use a WhatsApp-based installation vector after Plaintiffs brought suit. Dkt. No. 605 at 15. The Court later ruled that "defendants have repeatedly failed to produce relevant discovery and failed to obey court orders regarding such discovery," including by failing to produce Pegasus computer code. Dkt. No. 494 at 9. And while NSO now attempts to cabin the case to "only the <u>three</u> covert Android installation vectors . . . between <u>April 2018 and May 2020</u>," Dkt. No. 605 at 14 (emphasis added), it previously asserted that "the <u>only</u> version of Android Pegasus that is relevant to the claims and defenses here is the version in effect in <u>April-May 2019</u>," Dkt. No. 190 at 19 ((emphasis added)).

## II.    Plaintiffs Satisfy the Requirements for Injunctive Relief

This Court should analyze Plaintiffs' motion for injunctive relief under the familiar four-factor test. *See* Dkt. No. 557-3 at 6–7. "[T]raditional principles governing equitable remedies in federal courts" apply when a party seeks an injunction under either federal or state law. *Sonner v. Premier*

---

[3]    NSO does not explain how it obtained the authority to discuss NSO's current operations. Until just months ago, NSO represented that it was barred from disclosing such information. *See generally* Dkt. No. 430 at 28. Yet both Mr. Gazneli and Mr. Shohat describe NSO's current product offerings in their declarations. *See, e.g.*, Dkt. No. 605-2 ¶ 8; Dkt. No. 605-3 ¶ 7.

*Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *accord Keene v. City & Cnty. of San Francisco*, 2025 WL 341831, at *1 (9th Cir. Jan. 30, 2025) (applying four-factor test).  NSO does not dispute that both federal law (the CFAA) and California law (the CDAFA) authorize injunctive relief.  18 U.S.C. § 1030(g); Cal. Penal Code § 502(e)(1); *see* Dkt. No. 557-3 at 6.

### A.    Plaintiffs Have Proved Irreparable Harm for Which Monetary Damages Are Inadequate

The undisputed facts establish that NSO poses a significant threat of ongoing and prospective harm to Plaintiffs, Plaintiffs' platforms, and Plaintiffs' users.  The undisputed facts also demonstrate that Plaintiffs would face irreparable harm if the Court fails to enjoin NSO's misconduct.  Courts have consistently recognized the harms that Plaintiffs are likely to suffer as ones that cannot be remedied by monetary damages.

### 1.    Plaintiffs Are Likely to Suffer Future Harm

NSO does not contest the undisputed facts that entitle Plaintiffs to an injunction, but nonetheless argues that the threat of future harm to Plaintiffs is speculative.  *See* Dkt. No. 605 at 14–16.  Even assuming *arguendo* that NSO is not currently using a WhatsApp-based installation vector, that does not eliminate the threat of future harm.  Indeed, courts have found that companies in the business of accessing computers without authorization pose a risk of ongoing harm to their targets, even when they claimed to have stopped their attacks.  Dkt. No. 557-3 at 11 (citing cases).  NSO's proven ability to develop sophisticated installation vectors targeting Plaintiffs' platforms cements the risk of future harm.  For example, NSO quickly circumvented security measures that Plaintiffs instituted in 2018, and NSO still possesses all the tools, resources, and incentives to restart these efforts.  *See* Dkt. No. 557-3 at 9–13.

NSO's argument in response rests on an unreasonably restricted view of what constitutes "risk to Plaintiffs."  Dkt. No. 605 at 15.  Regardless of whether NSO uses installation vectors targeting Plaintiffs and Plaintiffs' platforms, NSO still (according to its CEO) collects the private messages of Plaintiffs' users, and this collection is central to NSO's business model.  *See* Dkt. No. 605-2 ¶ 10.  NSO has already been found liable for collecting data from Plaintiffs' users, and its ongoing collection shows the harm to Plaintiffs and Plaintiffs' users that the injunction seeks to prevent.

The cases that NSO cites in which courts have found no irreparable harm all lack the facts established here.  For instance, in *Sprint Nextel Corp. v. Welch*, the court found "the allegations of Defendant's misconduct are vague, especially when considering the fact that Plaintiffs should have access to records that would identify specific misconduct by Defendant." 2014 WL 68957, at *9 (E.D. Cal. Jan. 8, 2014), *report and recommendation adopted*, 2014 WL 2106683 (E.D. Cal. May 20, 2014).  The remaining cases that NSO cites, *see* Dkt. No. 605 at 16, all involve singular instances of past unauthorized access.  Because NSO repeatedly targeted Plaintiffs, Plaintiffs' servers, and Plaintiffs' mobile client even after this litigation was filed—pursuant to a business model that depends on continuously developing new means of unauthorized access—these cases are inapposite.

NSO's argument that Plaintiffs' purported delay in seeking a permanent injunction precludes a finding of irreparable harm lacks merit.  NSO first disclosed that its attacks had continued during the pendency of this lawsuit in September 2024.  *See* Dkt. No. 399-4, Ex. 6 at 271:3–8.  In all events, the Ninth Circuit has questioned whether "a delay has equal bearing in the permanent injunction context (where the injunction protects established rights that a jury found were violated)" as compared to the preliminary injunction context.  *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1006 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 824 (2024).

### 2.    There Is No Adequate Legal Remedy for Plaintiffs' Future Harm

Contrary to NSO's position, Plaintiffs' claimed injuries are ones that have anchored permanent injunctions nearly identical to the one that Plaintiffs seek here.  While NSO claims that Plaintiffs' only alleged harms are monetary "investigatory and remediation expenses," Dkt. No. 605 at 11–12, Plaintiffs have identified at least three separate bases for equitable relief.

*First*, courts have recognized that the nature of computer hacking elevates its status into the realm of irreparable harm.  "Numerous courts have found that unauthorized access of computers and the acquisition of data . . . constitute irreparable harm." *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019).[4]  Based on this principle, "courts in this district . . . have granted injunctive relief upon a showing that a defendant

---

[4]    This harm is based on the nature of computer hacking violations, and thus beyond the "mere fact of a statutory violation."  Dkt. No. 605 at 12.

1  continued to access a plaintiff's computers, in an unauthorized manner, regardless of [a victim's]

2  attempts to halt the access." *Chegg, Inc. v. Doe*, 2023 WL 7392290, at *8 (N.D. Cal. Nov. 7, 2023);

3  *see also* Dkt. No. 557-3 at 11 (citing cases).

4        In response, NSO asserts that injunctive relief is only appropriate when the malicious actor

5  acquired, stole, exploited, or retained the plaintiff's proprietary data. Dkt. No. 605 at 13 & n.17.

6  NSO is wrong, and the case law provides no support for the limitation that NSO posits. *See, e.g.*,

7  *Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *2 (N.D. Cal. Aug. 2, 2012) (enjoining defendant

8  who posted ads on plaintiff's platform, and who was not alleged to have stolen, exploited, or retained

9  proprietary data). An injunction would in any event be warranted under NSO's proposed rule: the

10 undisputed facts show that NSO extracted and decompiled WhatsApp code, and used this code to

11 build the WIS. *See* Dkt. No. 557-3 at 12–13. NSO also used a technically sophisticated process to

12 harvest authentication credentials from legitimate WhatsApp accounts. *See id*. at 23. NSO does not

13 deny that it still possesses this code, or that the WIS remains capable of "crafting WhatsApp mes-

14 sages," asserting only that it has added functionality to the WIS and folded its features into a different

15 system (the ABS). Dkt. No. 605 at 16; *see* Dkt. No. 605-3 ¶ 6. The undisputed facts about NSO's

16 exploitation of WhatsApp code place NSO squarely within the ambit of cases finding irreparable

17 harm for which monetary damages are insufficient.

18       *Second*, the need for Plaintiffs to file multiple lawsuits against NSO establishes irreparable

19 harm. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D.

20 Cal. 2007) ("[T]he very need to file multiple lawsuits as a consequence of StreamCast's inducement

21 is itself supportive of an irreparable harm finding"); *see also* Dkt. No. 557-3 at 14 (citing cases).

22 NSO's opposition confirms that its violations continue to this day. *See* Dkt. No. 605-2 ¶ 10 (ac-

23 knowledging that Pegasus and its competitors "can and do collect WhatsApp messages"). Plaintiffs

24 could therefore bring a standalone lawsuit against NSO today, based solely on the declarations that

25 NSO filed. Injunctive relief is meant to prevent such repetitious litigation.

26       *Third*, "[w]hile economic injury is generally not considered irreparable, it is where the under-

27 lying injury does not readily lend itself to calculable money damages." *Epic Games, Inc. v. Apple,*

28 *Inc.*, 67 F.4th 946, 1003 (9th Cir. 2023) (subsequent history omitted); *see Adobe Sys., Inc. v. Taveira*,

2009 WL 506861, at *7 (N.D. Cal. Feb. 27, 2009) (granting permanent injunction where "harm to plaintiff . . . may be difficult to calculate"). That is the case here. So long as NSO remains able to collect data from Plaintiffs' users, Plaintiffs will likely be forced to spend additional resources detecting and preventing such unauthorized activity by NSO. Dkt. No. 557-3 at 14–15. And given NSO's sophistication and commitment to "operational security" (i.e., secrecy), determining the security-related costs attributable to NSO's activity will be costly and unnecessarily burdensome.

### B.    The Balance of Hardships Favors an Injunction

The hardship that Plaintiffs face from NSO's continued access to Plaintiffs' platforms, continued collection of Plaintiffs' users' data, and the threat that NSO will continue its attacks on Plaintiffs and Plaintiffs' infrastructure outweigh any hardship that NSO will face from simply following the law. *See* Dkt. No. 557-3 at 17–18. In *Power Ventures*, the mere "probability that Defendants will engage in similar conduct in the future" tipped the balance of hardships in the plaintiff's favor. 252 F. Supp. 3d at 784. Here, there is a *certainty* that NSO continues to engage in similar, if not the same, misconduct. *See* Dkt. No. 605-2 ¶ 10. NSO's arguments to the contrary, *see* Dkt. No. 605 at 16–19, do not warrant a different conclusion.

*First*, NSO claims that it faces an existential risk if it can no longer access Plaintiffs' platforms and surreptitiously collect private messages. Dkt. No. 605 at 16–18. If true, this assertion strongly suggests that NSO's entire business is built on illegal conduct. Relying on *Softketeers, Inc. v. Regal West Corp.*, NSO argues that the threat of being driven out of business still influences the balance of hardships "even if the conduct at issue is unlawful." Dkt. No. 605 at 17 & n.19 (quoting 2023 WL 2024701, at *11 (C.D. Cal. Feb. 7, 2023) (subsequent history omitted)). In *Softketeers*, the district court expressed concern about shuttering a warehousing business for using infringing software. Yet unlike NSO, the warehousing business could have installed a new, compliant software. In contrast, NSO's entire business model relies on surreptitiously collecting information from mobile devices, which was the central goal of NSO's illegal conduct. *See United States v. Marc*, 2020 WL 6064793, at *8 (M.D. Fla. Sept. 1, 2020) (enjoining operation of business that "fundamentally depends" on illegal conduct). As a general matter, "harm caused by illegal conduct does not merit significant equitable protection." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017).

*Second*, NSO asserts hardship from having its employees banned from using Plaintiffs' platforms—including communicating with other NSO employees about NSO business over WhatsApp. Dkt. No. 605 at 18. Yet by using WhatsApp, these NSO employees necessarily agreed to the Terms, which prohibit the unauthorized access and data collection at the core of NSO's business. In essence, NSO's employees seek an exemption from complying with a contract they agreed to, and continue to benefit from.[5] On this point, the balance of equities favors Plaintiffs.

*Third*, NSO suggests that the proposed injunction would impair its ability to "find legal representation" because NSO attorneys cannot maintain accounts on Plaintiffs' platforms. Dkt. No. 605 at 18–19. The proposed injunction tracks the text of Rule 65. For the avoidance of doubt, Plaintiffs agree to clarify the proposed permanent injunction to exclude NSO's outside counsel. As for NSO's internal counsel, NSO "brought this risk upon [itself] by violating the law," and "the balance would not shift in favor of Defendants even if there were evidence to support this speculative claim." *Power Ventures*, 252 F. Supp. 3d at 785.

## C.    An Injunction Is in the Public Interest

The public has an interest in ensuring compliance with computer hacking statutes and that contract terms are upheld and respected. *See* Dkt. No. 557-3 at 18–19. An injunction would also advance the public's "substantial interest in . . . blocking abusive users, identity thieves, and other ill-intentioned actors." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022).[6] Here, the Court not only found NSO liable, but also concluded that NSO acted with an intent to defraud. Dkt. No. 494 at 10–15. The public interest therefore favors enjoining NSO's misconduct.

NSO's description of the proposed injunction's "negative public consequences," Dkt. No. 605 at 19, lacks any evidentiary foundation. NSO has failed to produce any evidence that its attacks on Plaintiffs, Plaintiffs' platforms, and Plaintiffs' users prevented any crime or terrorism. In fact,

---

[5]  Unlike the sole case that NSO cites, Plaintiffs do not seek access to NSO's personal devices. *Corelogic Sols., LLC v. Geospan Corp.*, 2020 WL 7786537, at *3 (C.D. Cal. Aug. 21, 2020).

[6]  The courts in *hiQ* expressed concern about giving companies "the blanket authority to block viewers from accessing information publicly available on its website for any reason." *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1119 (N.D. Cal. 2017); *accord* 31 F.4th at 1202. But that worry has no purchase here: WhatsApp messages are not publicly available, or even accessible to Plaintiffs.

NSO has previously claimed that it was unable to provide this information. *See* Dkt. No. 252 at 12–13 (arguing that NSO should not have to produce the "specific identities of government entities"); *id.* at 13 (explaining logistical difficulty in determining targets of attacks on Plaintiffs' servers). NSO instead relies on its executives' unsupported say-so. *See, e.g.,* Dkt. No. 605-2 ¶¶ 3, 4.

The limited evidence that NSO has produced does not support NSO's statements about its customers. NSO has only confirmed a single customer's use of Pegasus: the use by the ruler of Dubai against the attorneys of his ex-wife Princess Haya. Dkt. No. 436-4, Ex. 38 at 31:18–32:14. The FBI may have been authorized to purchase Pegasus, *see* Dkt. No. 396-5, Ex. N, but the FBI director testified that it never used Pegasus "operationally" or "in any investigation" at all, Dkt. No. 422-2, Ex. 44 at 37, let alone with respect to any of the attacks that took place using Plaintiffs' platforms. In addition, neither of NSO's "policy" experts have any knowledge of NSO's use of Pegasus to access Plaintiffs' platforms or the mobile devices of Plaintiffs' users. *See* Dkt. No. 505 at 6; Dkt. No. 573 at 8. NSO hopes to persuade the Court with an unfounded expert opinion that Pegasus played a role in the capture of a Mexican drug lord. Dkt. No. 605 at 20. But NSO failed to produce any discovery related to this supposed event, and NSO's own expert admits he lacks first-hand knowledge and instead relies "on public reporting" as his proof. Dkt. No. 605-4 ¶ 62.

As the cases cited by NSO show, courts recognize a public interest in stopping crime or terrorism when there is detailed evidence submitted by government or law enforcement. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("[T]he record contains declarations from some of the Navy's most senior officers, all of whom underscored the threat posed by enemy submarines and the need for extensive sonar training to counter this threat."); *Haskell v. Brown*, 677 F. Supp. 2d 1187, 1200–1201 (N.D. Cal. 2009) (relying on declaration with specific statistics about number of arrests that stemmed from DNA testing) (subsequent history omitted). NSO's supposed government and law enforcement customers are secret, so there can be no such information provided here.

## III.     The Scope of the Proposed Injunction Is Appropriate

Finally, the scope of the proposed injunction is appropriate given the extent of NSO's misconduct. Dkt. No. 557-3 at 19–25. NSO's main argument is that California law does not allow injunctions for breach of contract claims. This assertion does not help NSO, as each of the provisions

of the proposed injunction is appropriate based on NSO's violation of the CFAA and the CDAFA. More broadly, NSO misinterprets the proper analysis for evaluating the propriety of an injunction: the question is not whether each provision precisely matches the Court's findings on liability, but whether the provision is "necessary and appropriate in the public interest to . . . prevent 'continued violations' of the law." *Power Ventures*, 252 F. Supp. 3d at 784 (quoting *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985)).  The injunction that Plaintiffs seek here meets this standard, and NSO's specific objections to the scope of the injunction all lack merit.

### A.    California Law Does Not Preclude the Relief Plaintiffs Seek

NSO dedicates much of its opposition to a discussion of two California statutes that, in its view, "negate" much of Plaintiffs' proposed injunction.  *See* Dkt. No. 605 at 6–11 (discussing Cal. Civ. Proc. Code § 526(b)(5) and Cal. Civ. Code § 3423(e)).  As a threshold matter, it is unclear whether these laws apply here.  This Court has previously found that California statutes did not provide "the correct legal standard" for a motion for a preliminary injunction.  *Michener v. Wells Fargo Home Mortg.*, 2012 WL 3027538 at *3–5 (N.D. Cal. July 24, 2012); *see also Cal. Physicians Serv., Inc. v. Healthplan Servs., Inc.*, 2021 WL 879797, at *2 (N.D. Cal. Mar. 9, 2021) (declining to make conclusions about interplay between Cal. Civ. Proc. Code § 526(b)(5) and federal law).  At most, the California statutes limit a plaintiff's ability to obtain injunctive relief *solely* on a breach of contract claim—and have no impact on the ability to obtain an injunction under CFAA or CDAFA for three reasons.

*First*, the Court appropriately recognized that NSO's violations of the Terms (including NSO's account creation and use of the WIS) were integral parts of its violations of the CFAA and the CDAFA.  NSO built the WIS—which was used to unlawfully access Plaintiffs' servers—by reverse-engineering and decompiling WhatsApp code.  Dkt. No. 494 at 12–14.  NSO's creation of WhatsApp accounts was likewise a crucial part of this scheme.  *See id*. at 14.  None of the provisions of the proposed injunction solely relates to Plaintiffs' contract claim.  Where, as here, the conduct to be enjoined is closely tethered to the statutory violation, the Court is not barred from issuing the injunction simply because the conduct also independently violates a contractual obligation.

*Second*, there is ample precedent for ordering each provision of the proposed injunction based

on NSO's violation of the CFAA and the CDAFA. For instance, in *Craigslist, Inc. v. Naturemarket, Inc.*, this Court enjoined a defendant who developed, advertised, and sold software to automate posting ads on plaintiff's website in violation of the CFAA, the CDAFA, and the plaintiff's terms of service. 694 F. Supp. 2d 1039, 1046, 1055–59 (N.D. Cal. 2010). The Court entered an injunction similar to the one here, which included prohibitions on "creating accounts" and "accessing or using [plaintiff's] website for any commercial purpose whatsoever." *Id*. at 1046–47. In fact, courts have entered injunctions forcing defendants to adhere to a platform's terms of service (which Plaintiffs do not request here) in connection with violations of federal and state anti-hacking laws. *See, e.g.*, *Meta Platforms, Inc. v. Ates*, 2023 WL 4035611 (N.D. Cal. May 1, 2023 (enjoining defendant from violating "Instagram's Terms, Meta's Commercial Terms, and related policies" based on violation of contract and CDAFA); *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *11 (N.D. Cal. Nov. 21, 2023) (enjoining defendant from violating Meta's Terms based on violation of contract, CFAA, and CDAFA). The fact that conduct independently violates a contract is not a reason to exclude it from an injunction.[7]

*Third*, NSO's attempt to limit the injunction to solely the specific installation vector discussed in the Court's summary judgment ruling ignores the purpose of injunctive relief. A district court has the discretion to issue a broad injunction in cases where "a proclivity for unlawful conduct has been shown." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) (finding broad injunction justified based on defendant's "record of continuing and persistent violations" of law); *see also Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899, 906 (8th Cir. 2012) ("[A] court may in appropriate circumstances enjoin conduct that allowed the prohibited actions to occur, even if that conduct 'standing alone, would have been unassailable.'"); *Russ. Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 306–07 (7th Cir. 2010) (upholding injunction "to prevent the evasion of the core prohibition in the decree and to extirpate any lingering effects of the violation sought to be remedied").

### B.  Plaintiffs' Injunction Is Narrowly Tailored to NSO's Misconduct

---

[7] Were it otherwise, CFAA and CDAFA violators could avoid injunctive relief for all attacks on WhatsApp, as the Terms allow its use "only for legal, authorized, and acceptable purposes" and prohibit using WhatsApp in ways that "are illegal." *See* Dkt. No. 1 ¶¶ 20–21. This would be illogical particularly because CDAFA, a California statute, provides for injunctive relief.

NSO's specific criticisms of injunction's scope, *see* Dkt. No. 605 at 20–23, fare no better.

*First*, the Court can—and should—enjoin NSO from conduct even if the Court has not found it to be unlawful.  Injunctions may cover acts "entirely proper when viewed alone" if doing so will prevent future violations.  *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88–89 (1950).  Indeed, "it is well established that 'federal courts have the equitable power to enjoin otherwise lawful activity if they have jurisdiction over the general subject matter and if the injunction is necessary and appropriate in the public interest to correct or dissipate the evil effects of past unlawful conduct' or to prevent 'continued violations' of the law."  *Power Ventures*, 252 F. Supp. 3d at 784 (quoting *Holtzman*, 762 F.2d at 726).  So, while account creation may be "ordinary" and "unobjectionable," Dkt. No. 605 at 21, when performed by a normal WhatsApp user, it is likely to be malicious in light of the undisputed facts about NSO's exploit.  For instance, NSO has admitted that it signed up for WhatsApp accounts in order to harvest WhatsApp credentials to gain access to Plaintiffs' platforms and to users' devices.  Dkt. No. 399-4, Ex. 6  at 278:16–279:6.  In this context, preventing NSO from creating new accounts is warranted to prevent further violations of the CFAA and CDAFA.[8]

Moreover, the Court has already ruled that NSO's collection of data and sending of harmful code violated the Terms.  Dkt. No. 494 at 13–15.  As Plaintiffs have explained elsewhere, *see* Dkt. No. 591 at 1–2, the Court recognized that Plaintiffs' "breach of contract claim is based on violation of the terms of service," including "provisions prohibiting users . . . from sending 'harmful code' through Whatsapp, and from collecting user information."  Dkt. No. 494 at 13.  The Court found "no merit in the arguments raised by defendants" in response, including (1) that NSO did not violate these prohibitions because "Pegasus was operated by [its] clients," (2) that the Terms were "vague and ambiguous," and (3) that Plaintiffs waived enforcement of those provisions.  *Id.* at 14 (citing Dkt. No. 419-2 at 15–17).  The injunction's prohibitions on collecting data and sending harmful code are thus anchored in the Court's findings about NSO's misconduct.

---

[8]   NSO has not shown that any of its collection of data from WhatsApp users is "innocuous."  *Cf. Welch*, 2014 WL 68957, at *9 (narrowing injunction to permit defendants to "borrow[] someone else's Sprint phone to make a phone call"), *report and recommendation adopted*, 2014 WL 2106683 (E.D. Cal. May 20, 2014); *Sprint Sols., Inc. v. Cell Wholesale, Inc.*, 2015 WL 13919095, at *14 (C.D. Cal. Dec. 10, 2015) (same).

*Second*, the Court should enjoin NSO from misconduct on all Plaintiffs' platforms. "A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941). Despite what NSO says now, this case has not "always been limited *solely* to WhatsApp." Dkt. No. 605 at 22. Plaintiffs—WhatsApp *and* Facebook (now Meta Platforms)—alleged that "Pegasus was designed, in part, to intercept communications sent to and from a device, including communications over . . . Facebook Messenger, WhatsApp, and others." Dkt. No. 1 ¶ 27. The 2019 complaint accordingly sought to enjoin NSO from accessing "WhatsApp's and Facebook's service, platform, and computer systems." *Id.* at 14. NSO's marketing materials trumpet its ability to collect documents from WhatsApp and Plaintiffs' other platforms. *See, e.g.*, Dkt. No. 1-1 at 85 (touting Pegasus's ability to collect from Facebook Messenger). Plaintiffs' focus on NSO's WhatsApp-based installation vectors was the result of NSO's own arguments to limit the scope of discovery and does not limit the scope of the injunction that the Court can order. *See Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 953 (N.D. Cal. 2009) (extending permanent injunction to material that was not included within the scope of discovery), *aff'd*, 658 F.3d 1150 (9th Cir. 2011).

*Third*, enjoining NSO from "using Plaintiffs' Platforms for illegal purposes" is not overbroad. NSO overlooks that the Terms include a specific provision prohibiting WhatsApp users from using WhatsApp for illegal purposes. *See* Dkt. No. 494 at 13. Based on the Court's clear finding that NSO violated the CFAA and the CDAFA, the evidence establishes that NSO violated this contractual provision as well. *See* Dkt. No. 591 at 2 & n.1. This is therefore "specific activity" that the Court found that NSO engaged in, unlike in *Meta Platforms v. Nguyen*, 2023 WL 8686878, at *9 (N.D. Cal. Aug. 22, 2023).

*Fourth*, there is no basis to circumscribe the injunction based on NSO's unsupported assertions about the identities of its customers. In both cases that NSO cites, the sovereign appeared in the litigation to assert its own immunity. *See In re Est. of Ferdinand Marcos Hum. Rts. Litig.*, 94 F.3d 539, 543 (9th Cir. 1996) (foreign nation); *White v. Univ. of Cal.*, 2012 WL 12335354, at *1

14

(N.D. Cal. Oct. 9, 2012) (Indian tribe), *aff'd*, 765 F.3d 1010 (9th Cir. 2014). The purported government customers of NSO remain unknown and have not asserted any interest here. In addition, the Court has already determined that seeking injunctive relief consistent with Federal Rule of Civil Procedure 65 (as Plaintiffs do now) means "that plaintiffs are not seeking injunctive relief against defendants' foreign sovereign customers." Dkt. No. 111 at 34.

*Fifth*, Plaintiffs have shown that the Court should order NSO to delete and disable customer access to computer code and data that uses Plaintiffs' platforms. Dkt. No. 557-3 at 24–25. In its opposition, NSO cites cases questioning the use of mandatory *preliminary* injunctions, which, unlike most other preliminary injunctions, do not preserve the status quo. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). NSO cites no case extending this concern to a permanent injunction, and ignores that numerous courts have required the deletion of data in response to computer-hacking violations. *See* Dkt. No. 557-3 at 24–25 (citing cases).

## IV.    The Court Should Issue a Permanent Injunction at the April 10 Pretrial Conference, Without Holding an Evidentiary Hearing

Because the Court should grant Plaintiffs' motion for a permanent injunction based on the undisputed facts, there is no need to hold an evidentiary hearing. Resolving Plaintiffs' motion at the April 10, 2025 pre-trial conference will also ensure that the damages-only trial proceeds on schedule. NSO gave notice of its intention to call 19 individuals at the five-day trial, at least of 12 of whom NSO represents will provide testimony about issues related to injunctive relief. *See* Dkt. No. 584 at 1–4. NSO has proposed that all of this testimony will take place in the "third phase" of what it envisions to be a multi-phase trial, after a jury has determined whether Plaintiffs are entitled to damages during the first phase, and the amount of punitive damages during the second phase. *See* Dkt. No. 591 at 14–16. NSO has not proposed how to efficiently schedule witness testimony that bears on multiple phases of the trial, nor has it explained how these three phases will all take place in the five days that the Court has reserved for trial. *See* Dkt. No. 529.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and enter a permanent injunction.

Dated: ___March 25, 2025___

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: _/s/ Antonio J. Perez-Marques_____

    Greg D. Andres
    Antonio J. Perez-Marques
    Gina Cora
    Craig T. Cagney
    Luca Marzorati
     (admitted *pro hac vice*)
    DAVIS POLK & WARDWELL LLP
    450 Lexington Avenue
    New York, New York 10017
    Telephone: (212) 450-4000
    Facsimile: (212) 701-5800
    Email: greg.andres@davispolk.com
        antonio.perez@davispolk.com
        gina.cora@davispolk.com
        craig.cagney@davispolk.com
        luca.marzorati@davispolk.com

    Micah G. Block (SBN 270712)
    DAVIS POLK & WARDWELL LLP
    900 Middlefield Road, Suite 200
    Redwood City, California 94063
    Telephone: (650) 752-2000
    Facsimile:  (650) 752-2111
    Email: micah.block@davispolk.com

    *Attorneys for Plaintiffs*
    *WhatsApp LLC and Meta Platforms, Inc.*