JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
  acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:     (213) 443-4355
Facsimile:     (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>                    Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY IN SUPPORT OF DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DANA TREXLER, CPA/CFF**<br><br>Date:   April 10, 2025<br>Time:  2:00 p.m.<br>Place:  Courtroom 3, Ronald V. Dellums Federal Building & U.S. Courthouse, 1301 Clay Street, Oakland, California<br><br>Action Filed: 10/29/2019<br><br>**FILED UNDER SEAL**<br><br>**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]** |

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 1

        A.      Ms. Trexler Should Not Be Permitted to Pad Her Labor Cost Opinion with
                Unsubstantiated Employee Time. ........................................................................ 1

        B.      Ms. Trexler's "RSU Expense" Opinion Should Be Excluded. ................................ 4

III.    CONCLUSION .............................................................................................................. 9

REPLY IN SUPPORT OF MOTION TO EXCLUDE                            Case No. 4:19-cv-07123-PJH
CERTAIN OPINIONS OF DANA TREXLER

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Claar v. Burlington N.R.R. Co.*,
5
   29 F.3d 499 (9th Cir. 1994) ................................................................................. 4

6

*Clougher v. Home Depot, U.S.A, Inc.*,
   696 F. Supp. 2d 285 (E.D.N.Y. 2010) ................................................................. 6
7

*Facebook, Inc. v. Power Ventures, Inc.*,
8
   252 F. Supp. 3d 765 (N.D. Cal. 2017) ................................................................. 2

9

*Goldie v. Hartford Ins. Co.*,
10
   2006 WL 8451352 (C.D. Cal. Feb. 16, 2006) ..................................................... 2

11

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
   605 F. Supp. 3d 1295 (N.D. Cal. 2022) ............................................................... 7
12

13
*Kampe v. Volta*,
   2024 WL 308262 (N.D. Cal. Jan. 26, 2024) ....................................................... 5

14

*Munguia-Brown v. Equity Residential*,
15
   2023 WL 1868875 (N.D. Cal. Jan. 24, 2023) ..................................................... 2

16

*Newkirk v. ConAgra Foods, Inc.*,
   727 F. Supp. 2d 1006 (E.D. Wash. 2010) ........................................................... 8
17

18
*Schachter v. Citigroup, Inc.*,
   47 Cal. 4th 610 (2009) ......................................................................................... 6

19

*SEC v. Jasper*,
20
   678 F.3d 1116 (9th Cir. 2012) ............................................................................. 5

21

*SEC v. Worldcom, Inc.*,
   2003 WL 22004827 (S.D.N.Y. Aug. 26, 2003) ................................................. 6
22

23
*Talkdesk, Inc. v. Pham*,
   2024 WL 4866690 (C.D. Cal. Aug. 9, 2024) ..................................................... 5

24

*Williamson v. Google LLC*,
25
   2018 WL 11414609, at *2 (N.D. Cal. May 24, 2018) ......................................... 2

**Other Authorities**

26

27
Rule 30(b)(6) ................................................................................................ 1, 2, 4, 8

28
Rule 702 .............................................................................................................. 1, 2, 3

1    **I.    INTRODUCTION**

2        Contrary to the misleading and unpersuasive arguments advanced in Plaintiffs' opposition,

3    Defendants' motion to exclude certain of Ms. Trexler's damages opinions presents more than mere

4    disagreements with Ms. Trexler's analyses to be addressed through cross-examination.    The

5    opinions Defendants seek to exclude are: (1) that Plaintiffs should be compensated for the time of

6    employees about whom their Rule 30(b)(6) designee knew nothing whatsoever, and (2) that it is

7    appropriate to include Restricted Stock Units ("RSUs") granted years before the events at issue in

8    this case when calculating the hourly rates of Plaintiffs' engineers.    These opinions are unsupported

9    by sufficient facts or data, fail to fit the actual facts of this case, and otherwise lack sufficient

10    reliability for admission under Rule 702.

11        Ms. Trexler includes in her damages calculation the claimed value of *480 hours* of employee

12    time that is not connected to Defendants' alleged conduct or Plaintiffs' response thereto by *any*

13    *factual support* whatsoever.    Plaintiffs' Rule 30(b)(6) designee on the subject could only confirm

14    that ████████████████████████████████████████████████, and Ms.

15    Trexler points only to naked speculation from another individual, someone *other* than the person

16    Plaintiffs designated to provide their binding testimony on the subject, to support the 480 hours.

17    Ms. Trexler also includes alleged "expenses" relating to restricted stock units ("RSUs") granted to

18    certain employees that (1) are likewise untethered to Plaintiffs' work in response to Defendants'

19    alleged conduct; (2) fail to satisfy *her own stated criteria* for inclusion in a calculation of burdened

20    labor rates, much less generally accepted methods for calculating the same; and (3) lack sufficient

21    supporting facts and fail to fit the facts of this case.    The Court should exclude these unsupported

22    and unreliable opinions.

23    **II.    ARGUMENT**

24        **A.    Ms. Trexler Should Not Be Permitted to Pad Her Labor Cost Opinion with**

25            **Unsubstantiated Employee Time.**

26        Nearly one quarter ($105,469) of the $444,719 in alleged labor costs Ms. Trexler opines

27    Defendants caused Plaintiffs to incur relates to time that Plaintiffs merely assert was spent by

28    fourteen employees purportedly responding to Defendants' use of security vulnerabilities in

1

WhatsApp's code.  (*See* Dkt. 502-3 ("Trexler Report"), Exh. 2.2.)  Ms. Trexler's inclusion of 480 hours attributed to those fourteen employees in her labor cost estimate is at odds with the testimony of Plaintiffs' designated Rule 30(b)(6) witness and is therefore not supported by sufficient facts or data to satisfy Rule 702.  This portion of her opinion should be excluded.  (Mot. 6.)

Plaintiffs' arguments opposing exclusion are wholly unpersuasive strawman arguments that should be rejected.  Contrary to Plaintiffs' mischaracterizations, Defendants have not argued that Ms. Trexler was required to "personally interview" each of the fourteen employees listed on Exhibit 2.2 to her report to include their time in her labor cost opinion.  (Opp. 3, 5.)  That is not the issue here.[1]  The issue is whether Ms. Trexler can reliably ignore the testimony of Plaintiffs' own 30(b)(6) witness on the exact subject-matter of her report in favor of another, non-designated witness's unsworn and unsubstantiated speculation.  *Plaintiffs* designated Andrew Robinson as their representative to testify about "the time spent by Plaintiffs' employees in responding to Defendants' exploit," and he could only confirm that ████████████████████████████████████████ ████████████████████.  (*See* Mot. 6.)

That testimony binds Plaintiffs, and Ms. Trexler cannot properly ignore it.  While a "Rule 30(b)(6) deposition is not a memory test," Plaintiffs' own cases confirm that the Rule requires a party "to prepare the designees so that they may give knowledgeable and *binding* answers for the corporation."  *Goldie v. Hartford Ins. Co.*, 2006 WL 8451352, at *2 (C.D. Cal. Feb. 16, 2006) (emphasis added).  The 30(b)(6) witness in *Goldie* testified knowledgably "regarding a multitude of subjects over a two-day period," and was unable to answer only a few questions.  2006 WL 8451352, at *2.  Similarly, the party challenging the sufficiency of 30(b)(6) witness testimony in *Williamson v. Google LLC* identified "only one instance" in which the witness was unprepared to answer a question.  2018 WL 11414609, at *2 (N.D. Cal. May 24, 2018).  Here, Plaintiffs designated Mr. Robinson to testify on their behalf about "the time spent by Plaintiffs' employees

---

[1] Even in the cases Plaintiffs cite, the expert received hour estimates *directly from the employees who worked those hours.  See Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 780 (N.D. Cal. 2017) (employee's *own estimate* of *the time he spent* on tasks supported expert opinion about the value of that work); *Munguia-Brown v. Equity Residential*, 2023 WL 1868875, at *2–3 (N.D. Cal. Jan. 24, 2023) (expert interviewed representative sample of employees about the amount of time they spent on specified tasks).

1    in responding to Defendants' exploit."  And for ███████████ Mr. Robinson could

2    not testify as to ████████████████████████████████████████████

3    ████████████████████████████████ Mr. Robinson failed to support

4    inclusion of ████████████████ reflected on Ms. Trexler's Exhibit 2.2.  (Mot. 2-3.)[2]  That

5    goes well beyond failing a "memory test," and the deficiencies of Mr. Robinson's testimony on

6    these critical points underpinning Ms. Trexler's labor cost calculation are far more substantial than

7    the immaterial quibbles in *Goldie* and *Williamson*.

8            Even if Plaintiffs' defenses of Mr. Robinson were persuasive, however, Ms. Trexler would

9    still lack any *other* reliable support for her calculation.  She ignores Mr. Robinson's binding

10    testimony in favor of supposed unsworn, out-of-court statements from Claudiu Gheorghe, who

11    supposedly "performed a managerial role" coordinating Plaintiffs' response to the "exploit" but

12    was not designated to testify for Plaintiffs on the time spent on that response.  (Trexler Report

13    ¶¶ 81-82.)  According to Ms. Trexler, Mr. Gheorghe told her informally whether each of the

14    fourteen employees spent 100%, 50%, or 25% of their time working on the response.  (*Id.* ¶ 82 &

15    Exh. 2.2.)  Ms. Trexler then multiplied that percentage estimate by an assumed 64 hours for each

16    employee.  (*Id.* Exh. 2.2.)  Setting aside the fact that her 64-hour assumption has no basis in the

17    record, neither Ms. Trexler nor Mr. Gheorghe has identified any support for his off-the-record

18    estimates of what percentage of time each employee devoted to the response over an eleven-day

19    period nearly six years ago.  *See Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998)

20    ("An opinion based on . . . unsubstantiated and undocumented information is the antithesis of the

21    scientifically reliable expert opinion admissible under *Daubert* and Rule 702.").  Plaintiffs cite

22    deposition testimony in which Mr. Gheorghe identified certain employees as having *worked on* the

23    response efforts (Opp. 4-5), but that testimony does not contain any details about what those

24    employees did or how long they spent doing it.  If Mr. Gheorghe actually had information about

25    how long these employees worked on this project, it is unfair for Plaintiffs to have concealed this

---

[2] Relatedly, Defendants' Motion in Limine No. 5 seeks to exclude evidence or argument about the employees for whom Mr. Robinson could not explain who they were, what they did, or how much time it took them.  (Dkt. 596-3 at 10-11.)  Granting that part of MIL No. 5 would moot the portion of this motion to exclude Ms. Trexler's opinions relating to those employees.

REPLY IN SUPPORT OF MOTION TO EXCLUDE                    Case No. 4:19-cv-07123-PJH
CERTAIN OPINIONS OF DANA TREXLER

1    information from Defendants in discovery and preventing any cross-examination about it by
2    designating a different Rule 30(b)(6) witness who knew nothing about it.

3         Mr. Gheorge's "unsupported speculation" is not a reliable basis for expert opinion.  *Claar*
4    *v. Burlington N.R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994).  It certainly is not reliable enough to
5    justify entirely ignoring Mr. Robinson's binding 30(b)(6) testimony.  Because Ms. Trexler points
6    to nothing beyond Mr. Gheorghe's unsupported hearsay speculation and ignores the binding Rule
7    30(b)(6) testimony on the same subject, her inclusion of the fourteen employees' time in her labor
8    cost calculation is not supported by sufficient facts or data.  That opinion should be excluded.

9         **B.    Ms. Trexler's "RSU Expense" Opinion Should Be Excluded.**

10        Ms. Trexler also improperly **i**nflates the purported labor costs Plaintiffs claim to have
11   incurred in response to Defendants' "exploit" by including $178,764 relating to RSUs granted to
12   Plaintiffs' employees in her calculation of "burdened labor rate[s]."  (*See* Mot. 4; Dkt. 502-5 ¶¶ 62-
13   63.)  Ms. Trexler's definition of a burdened labor rate comprises (1) "the employee's salary" and
14   (2) "other expenditures *paid by an employer* to, or on behalf of, an employee." (Trexler Report,
15   ¶ 84 (emphasis added).)  But Ms. Trexler's RSU amounts simply are not sums "paid by an employer
16   to, or on behalf of, an employee."  And the best cases Plaintiffs could find in support for their
17   position that such amounts are properly compensable as damages for time spent by a plaintiff's
18   employees (and properly considered by experts in making such a calculation) are completely off
19   topic.  Ms. Trexler's inclusion of these RSU amounts in her estimate of Plaintiffs' alleged labor
20   costs to respond to the exploit is not supported by sufficient facts or data, does not fit the actual
21   record facts, and is not a reliable means of estimating the claimed costs.  Plaintiffs' contrary
22   arguments lack merit.

23        First, the "RSU Expense" amounts Ms. Trexler includes in her burdened labor rate estimates
24   fail to satisfy *Ms. Trexler's own articulated standard* because they do not reflect amounts Plaintiffs
25   "paid" to or on behalf of the employees that received them.  (*See* Opp. 8 (noting Plaintiffs'
26   "disagree[ment]" but failing to show that any cost is "paid" by the employer when RSUs are granted
27   to an employee or exercised by that employee).)  The fact that some accounting rules require
28   recording RSUs as a company expense is irrelevant to the question of whether RSUs can be

included properly as part of a "burdened labor rate" used to calculate damages. Plaintiffs' authorities (Opp. 11) offer them no help on this point. The language Plaintiffs quote from *Kampe v. Volta*, 2024 WL 308262, at *3-4 (N.D. Cal. Jan. 26, 2024), was part of "an overview of [the] plaintiffs' allegations," not the Court's holding. This is obvious from the fact that the opinion *cited to the paragraphs of the complaint* it was summarizing immediately following the language Plaintiffs quote, as is common practice in the first section of orders on motions to dismiss. *Id.* Plaintiffs should not have tried to pass off this language as a judicial holding, especially since the court *dismissed the complaint*. *Id.* at *36. In any event, the allegations in *Kampe* had nothing to do with whether RSUs were properly included as part of the compensation of a plaintiff's employees being sought as damages; it was simply about whether the company's misstatement of the grant date of the RSUs in their financial statements constituted securities fraud.

*SEC v. Jasper*, 678 F.3d 1116 (9th Cir. 2012), was another securities law case about the propriety of an employer's accounting practices, which had nothing to do with calculating employee compensation or burdened labor rates for purposes of awarding damages for employee time. The case addressed SEC rules for accounting for backdated "in the money" stock options, all of which were issued with the exercise price below the market price—which is different from Plaintiffs' RSUs. *Id.* at 1120. *Jasper* thus does not support the proposition that Plaintiffs paid anything when issuing the RSUs Trexler includes in her labor cost calculation. The granting of RSUs involves no monetary cost to an employer, which accounts for their popularity among employers. *Jasper* has no bearing on the question whether such RSUs are properly included as damages for the time spent by Plaintiffs' employees.

Second, Plaintiffs fail to show that Ms. Trexler's inclusion of the RSU amounts in her burdened labor rate estimates is a reliable or accepted method of calculating labor costs. None of the four authorities Plaintiffs cite (Opp. 10) supports including RSU amounts as part of the damages recoverable by a plaintiff for time spent by their employees. *Talkdesk, Inc. v. Pham*, 2024 WL 4866690, at *10 (C.D. Cal. Aug. 9, 2024), addressed an employer's request for disgorgement of stock acquired through the exercise of options that were obtained by fraud, a request the court declined to grant. It had nothing to do with calculating either the total compensation or the hourly

1   rate paid by a plaintiff to its employees for the purpose of calculating damages to award a plaintiff

2   for its employees' time.  Neither did *Clougher v. Home Depot, U.S.A, Inc.*, 696 F. Supp. 2d 285,

3   293 (E.D.N.Y. 2010), which addressed the issue of whether assistant store managers were exempt

4   from overtime under New York and federal wage laws.  The court denied both sides' motions for

5   summary judgment based on pervasive factual disputes.  The court noted that the plaintiffs had

6   received higher salaries than nonexempt workers, as well as bonuses and stock options, but held

7   that compensation alone is never dispositive.  *Clougher* involved no determination of whether

8   RSUs are properly included in either the total compensation of employees or their hourly rates for

9   the purposes of calculating damages.

10   Plaintiffs then cite *SEC v. Worldcom, Inc.*, 2003 WL 22004827 (S.D.N.Y. Aug. 26, 2003),

11   which *is not a judicial decision at all*.  It is a report prepared by a "Corporate Monitor" and thus

12   lacks any precedential value.  That report, moreover, addressed whether the Worldcom board of

13   directors breached their fiduciary duties by awarding hundreds of millions of dollars in bonuses

14   and stock options to executives engaged in massive accounting fraud.  There is nothing in the report

15   about whether stock options can be properly included in the compensation of a plaintiff's

16   employees for whom some amount of their time is sought as damages.  Plaintiffs' final case,

17   *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 613 (2009), held that a voluntary incentive

18   compensation plan offering stock options in lieu of cash compensation did not violate California

19   law requiring that all compensation must be paid upon termination because those options were not

20   "earned, unpaid wages."  It did not involve determining the recoverable compensation for time

21   spent by a plaintiff's employees. To the extent *Schachter* has any persuasive value, it supports

22   *Defendants* because it held that shares of restricted stock *did not* constitute wages.  47 Cal. 4th at 619.

23   The fact that these cases were the very best Plaintiffs could find shows how far Ms. Trexler's

24   opinion goes beyond what has ever been attempted before by a damages expert.  That conclusion

25   is strengthened by Mr. Pinsonneault's testimony that, in the 50 to 75 cases in which he has been

26   engaged as an expert and in which issues concerning fully burdened labor costs have been present,

27   *he cannot recall a single case* in which any expert for any party included RSU-related expenses in

28   their calculation of burdened labor cost.  (Dkt. 506-6 at 319:17-320:10.)  While Plaintiffs imply

6

1   (Opp. 11) that Mr. Pinsonneault's testimony is mere "say-so" the Court should ignore under *JH*
2   *Kelly, LLC v. AECOM Tech. Servs., Inc.*, 605 F. Supp. 3d 1295 (N.D. Cal. 2022), that case does
3   not help them.   In *JH Kelly*, the proponent of the expert testimony provided evidence that the
4   expert's disputed methodology was accepted in the relevant industry, had been "published in
5   numerous peer-reviewed scientific journals," had been "tested and meets the standards of the
6   reviewers and readers of those scientific journals," and had a "known rate of error reported by way
7   of the statistical standard deviation accompanying the formulas he use[d]."   *Id.* at 1309 (cleaned
8   up).   Plaintiffs provide no analogous support for their contention that inclusion of RSUs as part of
9   a recoverable burdened labor cost damages calculation has *ever* been accepted, much less widely.
10  Mr. Pinsonneault's substantial experience further supports that Ms. Trexler's methodology *is not*
11  generally accepted and should be excluded.

12      *Third*, Plaintiffs confirm that the data Ms. Trexler used in determining the RSU amounts
13  included in her quantification of alleged labor costs *does not* reflect what her labor cost opinion
14  purports to measure: expenses that Plaintiffs incurred because of work the employees did
15  responding to the exploit in 2019.   Instead, Plaintiffs say the amounts listed in the "RSU
16  Spreadsheet" that Ms. Trexler considered "are those *paid to* Plaintiffs' employees *in 2019*."  (Opp.
17  7) (emphasis added.)  But, as Plaintiffs' own documents confirm, ██████████████████
18  ████████████████████████████████████████████████████████████
19  ████████████████████████████████████.  (*See* Mot. 7 (citing SEC filings
20  stating that Meta recognizes compensation expense relating to RSU grants "over a weighted-
21  average period of approximately three years based on vesting under the award service conditions";
22  Craig Decl. Exh. A (WA-NSO-00192854) ██████████████████████████
23  ██████; Craig Decl. Exh. B (WA-NSO-00192851) ██████████████████████
24  ████████████████████████████████████████████████████████████
25  ██████████████████████████   Data relating to RSUs granted several years prior to 2019, in
26  consideration of work done by the employees in those earlier years, cannot supply sufficient factual
27  support for an opinion purporting to quantify Plaintiffs' labor costs relating to the 2019 response
28  work (nor does an opinion including expenses relating to those earlier grants "fit" the actual facts).

1   Ms. Trexler's opinion including those RSU amounts should be excluded on that basis as well.  *See*

2   *BladeRoom Grp. Ltd. v. Facebook, Inc*., 2018 WL 1611835, at *4 (N.D. Cal. Apr. 3, 2018) (an

3   opinion that "lacks valid factual support" should be excluded); *Newkirk v. ConAgra Foods, Inc.*,

4   727 F. Supp. 2d 1006, 1016 (E.D. Wash. 2010) (where expert fails to cite reliable supporting facts,

5   the opinion "fail[s] the first step of the *Daubert in*quiry").

6        Finally, Ms. Trexler's calculation of an "Hourly RSU Expense" for each employee

7   identified in her report simply assumes, without basis, that each employee worked 2,080 hours in

8   2019.  (Trexler Report, Exh. 3.1.4.)  Ms. Trexler incorporates her "Hourly RSU Expense" within

9   each employee's "Total Hourly Rate" to arrive at her labor cost figure.  (*Id.*, Exh. 3.1 & Exhs. 2.1

10  and 2.2.)  Given Ms. Trexler's election to convert alleged RSU expense to an hourly rate, the

11  number of hours actually worked (the denominator in Ms. Trexler's formula) is critical—the more

12  hours actually worked, the lower the hourly rate, and thus the lower the contribution to total alleged

13  labor costs.  Accordingly, it is far from a "needless" or "meaningless abstraction" (Opp. 8-9) to

14  determine the number of hours the employees in question *actually worked*.  While Plaintiffs may

15  not have compensated those employees based on the number of hours they worked, Ms. Trexler

16  values the cost of their labor based on assumptions about the number of hours they worked.

17  Accordingly, those assumptions are a significant driver of the resultant total labor costs calculated

18  using Ms. Trexler's methodology.

19       Ms. Trexler arrived at the 2,080 hours worked figure simply by assuming that each

20  employee worked 40-hour weeks over 52 weeks per year (40 x 52 = 2,080).  (Trexler Report, Exh.

21  3.1.4 n.2.)  Plaintiffs cite cases endorsing the assumption of a "typical" 2,080 work year under the

22  circumstances of those cases (Opp. 9 n.4), but here, Plaintiffs' Rule 30(b)(6) designee on the topic

23  testified that ████████████████████████████████████████.  (Craig Decl.

24  Exh. C at 36:24 - 37:12; *see also id.* at 294:3-11 ████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████.)  Given this testimony, Ms. Trexler's naked assumption that these employees

27  worked "typical" 40-hour weeks—and her use of that unsupported assumption as a key input to her

28  labor cost calculation—are not reliable and do not fit the facts of this case. *See Newkirk*, 727 F.

8

Supp. 2d at 1017 (excluding opinion where "without citation to any source, the [c]ourt must conclude that those foundational statements are not based on sufficient facts or data").

For all of the above reasons, Ms. Trexler's RSU expense opinion fails to satisfy the standards for admissible expert testimony and should therefore be excluded.

## III.  **CONCLUSION**

As shown above and in Defendants' opening brief, the Court should exclude Ms. Trexler's challenged opinions.

Dated: March 27, 2025                          KING & SPALDING LLP

                                               By: */s/ Joseph N. Akrotirianakis*
                                               JOSEPH N. AKROTIRIANAKIS
                                               AARON S. CRAIG
                                               *Attorneys for Defendants*

9