Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
        antonio.perez@davispolk.com
        craig.cagney@davispolk.com
        gina.cora@davispolk.com
        luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

#### OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.,<br><br>          Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>          Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' OPPOSITION TO<br>DEFENDANTS' MOTIONS *IN LIMINE***<br><br>Pretrial Conference Date: April 10, 2025<br>Time:  2 p.m.<br>Ctrm:  3<br>Judge:  Hon. Phyllis J. Hamilton<br>Trial Date: April 28, 2025 |

**[PUBLIC REDACTED VERSION]**

# **TABLE OF CONTENTS**

P<small>AGE</small>

1. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of Injury to WhatsApp's Reputation ......................................................................................1

2. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Testimony of Witnesses Not Disclosed During Discovery Period...............................................................2

3. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of the Identities and Occupations of the ~1,400 Targets Referenced in the Complaint ................................2

4. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Argument that NSO Used Pegasus ......................................................................................4

5. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Testimony on Topics About Which Plaintiffs Allegedly Refused to Produce a Rule 30(b)(6) Witness................5

6. Plaintiffs' Response to NSO's Motion *in Limine* Evidence About Other Lawsuits Against NSO and the Use of Pegasus Being Related to the Death of Jamal Khashoggi....10

7. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of █████ █████████████████████ and Related Information....................................................10

8. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of Black Cube and Its Intimidation ......................................................................................12

9. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of the Entity List and the Executive Order ......................................................................12

10. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of Pretrial Sanctions ......................................................................................14

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Alexander v. FBI*,
486 F.R.D. 137 (D.D.C. 1998) ...................................................... 9

*Angelo v. Thomson Int'l, Inc.*,
2024 WL 3202513 (E.D. Cal. June 27, 2024) .............................. 13

*Dalmacio v. BMW of N. Am., LLC*,
2023 WL 4626691 (C.D. Cal. June 12, 2023) ................................ 5

*Double Zero Inc. v. Harvest Textile Corp.*,
2015 WL 12781048 (C.D. Cal. June 25, 2015) ........................... 5, 6

*Estakhrian v. Obenstine*,
2016 WL 6868178 (C.D. Cal. Feb. 29, 2016), *report and recommendation adopted*,
2016 WL 6275599 (C.D. Cal. May 17, 2016) ............................... 14

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ................................. 14

*Franklin v. Ryko Corporation*,
2008 WL 11334493 (C.D. Cal. Oct. 22, 2008) ............................... 8

*Giganews, Inc. v. Perfect 10, Inc.*,
2019 WL 1422723 (C.D. Cal. Mar. 13, 2019) ................................ 6

*Goldie v. Hartford Ins. Co.*,
2006 WL 8451352 (C.D. Cal. Feb. 16, 2006) ................................ 9

*Google LLC v. Sonos, Inc.*,
2022 WL 16554695 (N.D. Cal. Oct. 31, 2022) ............................... 7

*Hana Fin., Inc. v. Hana Bank*,
735 F.3d 1158 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015) .................................. 6, 7

*Iljas v. Ripley Ent. Inc.*,
2019 WL 13399751 (N.D. Cal. Sept. 11, 2019) .............................. 5

*Jackson v. Cnty. of San Bernardino*,
194 F. Supp. 3d 1004 (C.D. Cal. 2016) ...................................... 10

*Jacobs v. Alexander*,
2016 WL 4440957 (E.D. Cal. Aug. 22, 2016) ................................ 5

*J.P. Morgan Chase Bank v. Liberty Mut. Ins. Co.*,
209 F.R.D. 361 (S.D.N.Y. 2002) ................................................ 8

*Magadia v. Wal-Mart Assocs., Inc.*,
2018 WL 6003376 (N.D. Cal. Nov. 15, 2018) ................................ 4

ii

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*,
  134 F.R.D. 275 (N.D. Cal. 1991), *rev'd on other grounds*,
  765 F. Supp. 611 (N.D. Cal. 1991) ............................................................. 8

*Mixed Chicks LLC v. Sally Beauty Supply LLC*,
  879 F. Supp. 2d 1093 (C.D. Cal. 2012) ...................................................... 5

*Morris v. Long*,
  2012 WL 3276938 (E.D. Cal. Aug. 9, 2012), *aff'd*,
  592 F. App'x 579 (9th Cir. 2015) ............................................................... 6

*Multiven, Inc. v. Cisco Sys., Inc.*,
  725 F. Supp. 2d 887 (N.D. Cal. 2010) ....................................................... 2

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
  72017 WL 8186294 (N.D. Cal. July 25, 2017) ........................................... 9

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
  277 F.R.D. 676 (S.D. Fla. 2012) ............................................................... 6

*Sentinel Offender Servs., LLC v. G4S Secure Sols. (USA) Inc.*,
  2016 WL 9454422 (C.D. Cal. Jan. 21, 2016) ............................................. 6

*Serna v. Costco Wholesale Corp.*,
  2024 WL 4720884 (C.D. Cal. Sept. 16, 2024) ......................................... 12

*Sierra Club v. BNSF Ry. Co.*,
  2016 WL 4528452 (W.D. Wash. Aug. 30, 2016) ....................................... 7

*Simon v. San Paolo U.S. Holding Co.*,
  113 P.3d 63 (Cal. 2005) ....................................................................... 1, 2

*Snapp v. United Transp. Union*,
  889 F.3d 1088 (9th Cir. 2018) ................................................................. 9

*State Farm Fire & Cas. for Robinson v. Helen of Troy, LLC*,
  2017 WL 2774072 (W.D. Wash. June 27, 2017) ...................................... 14

*Synergy Hematology-Oncology Med. Assocs. Inc. v. Abbott Labs., Inc.*,
  2023 WL 4761550 (C.D. Cal. June 6, 2023) .............................................. 9

*Tacori Enters. v. Beverlly Jewellery Co.*,
  253 F.R.D. 577 (C.D. Cal. 2008) ............................................................. 6

*United States v. CNA Fin. Corp.*,
  2005 WL 8159495 (D. Alaska Dec. 28, 2005) ........................................... 6

*United States v. Hitt*,
  981 F.2d 422 (9th Cir. 1992) ............................................................... 3, 4

*Van v. Language Line Servs., Inc.*,
  2016 WL 3566980 (N.D. Cal. June 30, 2016) ......................................... 10

*Venture Corp. Ltd. v. Barrett,*
  2015 WL 2088999 (N.D. Cal. May 5, 2015), *aff'd,*
  694 F. App'x 597 (9th Cir. 2017) ........................................................................ 7

*Vogue Recovery California LLC v. CMJ Recovery CA LLC,*
  2024 WL 1422649 (C.D. Cal. Mar. 21, 2024) ...................................................... 9

*Waymo, LLC v. Uber Techs., Inc.,*
  2018 WL 646701 (N.D. Cal. Jan. 30, 2018) ......................................................... 3

*Zucchella v. Olympusat, Inc.,*
  2023 WL 9379193 (C.D. Cal. Dec. 6, 2023) ......................................................... 8

STATUTES & RULES

18 U.S.C. § 1030 ..................................................................................................... 2

Fed. R. Civ. P. 30 ............................................................................................ 5, 7, 9

Fed. R. Civ. P. 37 ............................................................................................ 13, 14

Fed. R. Evid. 403 ................................................................................................. 3, 5

Fed. R. Evid. 801 .................................................................................................... 11

Plaintiffs WhatsApp LLC and Meta Platforms, Inc. respectfully submit this memorandum of law in opposition to NSO Group Technologies Limited and Q Cyber Technologies Limited's (together, "NSO") motions *in limine*.

### 1. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of Injury to WhatsApp's Reputation

Plaintiffs are not seeking damages based on reputational harm. Therefore, Plaintiffs do not oppose NSO's first motion *in limine* provided that both parties are precluded from introducing evidence, testimony, or argument regarding WhatsApp and Meta's reputation. As Plaintiffs explained in their Motions *in Limine*, evidence of irrelevant disputes, allegations, and controversies involving Plaintiffs or their officers, including "the record $5 billion fine the FTC levied against plaintiffs" that NSO references in its present motion (Mot. at 1), is irrelevant, inadmissible character evidence, and unfairly prejudicial. *See* Pls.' Mot. at 13–14.[1] Plaintiffs did not "renege" on any agreement relating to reputational harm (Mot. at 2), but have made clear to NSO that they are not seeking reputational damages or offering evidence of reputational harm during Plaintiffs' case-in-chief, as NSO itself acknowledges. *See id.* at 1–2.

Although Plaintiffs agree that evidence relating to Plaintiffs' reputation is irrelevant to the forthcoming damages trial, NSO should not be permitted to exclude relevant and admissible evidence under the guise that it is "reputational" in nature. For instance, NSO claims that testimony from Plaintiffs' expert David Youssef on how NSO "compromised the integrity of [WhatsApp's] server" is a "disguised way of saying the *reputation* of Plaintiffs' technology was impaired." *Id.* at 2 (emphasis in original). Not so. Mr. Youssef testified that NSO compromised the "integrity" of Plaintiffs' server—not by impairing some public reputation—but by ███████████ █████████████████████████████████████████████████████████████ Dkt. No. 596-11 at 333:22–334:13. His testimony therefore goes directly to damages and would aid the jury in understanding the nature of NSO's conduct and the resulting harm to Plaintiffs' servers, including to assess punitive damages. *See Simon v. San Paolo U.S. Holding Co.*, 113 P.3d

---

[1] Citations to "Mot." refer to NSO's Motions *in Limine* (Dkt. No. 596-3), while citations to "Pls.' Mot." refer to Plaintiffs' Motions *in Limine* (Dkt. No. 592-3).

63, 75 (Cal. 2005) ("[T]he actual or potential harm suffered by the plaintiff" is key to the determination of punitive damages.).[2]

Accordingly, the Court should preclude both parties from introducing evidence, testimony, or argument regarding Plaintiffs' reputation as set forth with specificity in Plaintiffs' Motions *in Limine*. *See* Pls.' Mot. at 13–14.

### 2. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Testimony of Witnesses Not Disclosed During Discovery Period

NSO's second motion *in limine* should be denied as moot because Plaintiffs do not intend to call any witness at trial who was not identified on Plaintiffs' initial disclosures or whom NSO did not have an opportunity to depose. NSO should also be prohibited from calling any witness at trial who was not identified on its initial disclosures and made available for deposition.

### 3. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of the Identities and Occupations of the ~1,400 Targets Referenced in the Complaint

Plaintiffs do not intend to affirmatively introduce evidence, argument, or testimony about the identities and occupations of WhatsApp users targeted in NSO's attacks (the "Target Users"). NSO should also be prohibited from introducing evidence, argument, or testimony about the identities and occupations of the Target Users because it is not relevant to a defense in a damages-only trial, as Plaintiffs showed in their Motions *in Limine*. *See* Pls.' Mot. at 10–13.

The identities of the Target Users—whether they are purported "bad actors" or "civil society" members—are irrelevant to the forthcoming damages trial and are therefore inadmissible. *See id.* Plaintiffs do not seek damages on behalf of the Target Users, nor do the identities of the Target Users bear on Plaintiffs' costs in responding to NSO's attacks or whether NSO acted with

---

[2] NSO's suggestion that "integrity" is synonymous with "reputation" or "goodwill" is also belied by the CFAA's definition of "damage" and the weight of authority interpreting the same. *See* 18 U.S.C. § 1030(e)(8) (defining "damage" to mean any "impairment to the *integrity* . . . of data, a program, a system, or information" (emphasis added)); *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010) (explaining "an impairment to the integrity of data" can occur "when an intruder retrieves password information from a computer and the rightful computer owner must take corrective measures to prevent the infiltration and gathering of confidential information" (citation omitted)).

"oppression, fraud, or malice" for the purposes of punitive damages.  *Id.*  Indeed, even before the Court found NSO liable on Plaintiffs' claims, Plaintiffs maintained that they would not present evidence about the identities of the Target Users as part of their case-in-chief, unless "NSO attempts to justify its unlawful conduct as related to legitimate law enforcement activity."  Dkt. No. 300 at 1.  This holds true today.

However, NSO has made clear that it intends to distract the jury from the sole issue of damages by claiming that the Target Users were criminals and terrorists.  *See* Pls.' Mot. at 10. Indeed, in its recent pretrial filings, NSO makes unsubstantiated and irrelevant claims about the identities of the Target Users.  For instance, in its pretrial brief, NSO claims that a Target User "was arrested when caught in a car full of explosives" and that another was an "Al-Qaeda recruiter" based on inadmissible hearsay from two online sources lacking any indicia of trustworthiness.  Dkt. No. 596-2 at 4.[3]

As explained in Plaintiffs' Motions *in Limine*, NSO should not be permitted to turn the upcoming damages trial into a sideshow of irrelevant issues.  Pls.' Mot. at 11–12.  Introducing evidence regarding the purported use of WhatsApp by bad actors, including characterizing the Target Users as terrorists and child molesters, would create a substantial danger that a jury would evaluate damages based on an emotional or otherwise improper reaction to NSO's irrelevant and unfounded accusations.  *See Waymo LLC v. Uber Techs., Inc.*, 2018 WL 646701, at *22 (N.D. Cal. Jan. 30, 2018) (excluding under Rule 403 "salacious and inflammatory details about [defendant] that have no discernible relevance to the claims in this case in an apparent bid to poison the judge, if not the jury, against [defendant]"); *see also United States v. Hitt*, 981 F.2d 422, 424 (9th Cir.

---

[3] As support for its unfounded claims that two Target Users were terrorists, NSO cites to an "OpIndia" article and a video sourced from "MEMRI."  OpIndia has been widely criticized as a platform for fake news and Islamophobia.  *See, e.g.*, Vittoria Elliot & David Gilbert, *A Far-Right Indian News Site Posts Racist Conspiracies. US Tech Companies Keep Platforming It*, WIRED (May 22, 2024), https://www.wired.com/story/india-opindia-google-facebook-advertising/. MEMRI has been criticized for intentionally mistranslating Arabic videos to advance Islamophobic narratives.  *See, e.g.*, Brain Whitaker, *Arabic under fire*, THE GUARDIAN (May 15, 2007), https://www.theguardian.com/commentisfree/2007/may/15/arabicunderfire (discussing MEMRI's translations of a young girl's words that turned "I'm going to draw a picture" into "I'll shoot," and "I'll become a martyr" into "I will commit martyrdom").

1992) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.").

### 4. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Argument that NSO Used Pegasus

NSO's fourth motion *in limine*—which seeks to exclude arguments and evidence that NSO used Pegasus—should be denied because it is inconsistent with the Court's summary judgment ruling finding NSO liable for hacking WhatsApp's servers and breaching WhatsApp's Terms of Service. NSO should not be permitted to relitigate the Court's ruling under the guise of a motion *in limine*. *See Magadia v. Wal-Mart Assocs., Inc.*, 2018 WL 6003376, at *2 (N.D. Cal. Nov. 15, 2018) ("[T]he Court has already ruled on these matters in its summary judgment orders. Thus, testimony on these issues would have no probative value, and would merely waste time." (citations omitted)).

This Court has already concluded that NSO—not its customers—"exceeded [its] authorization" to access Plaintiffs' servers in violation of the CFAA and the CDAFA. *See* Dkt. No. 494 at 12–13. The Court thus held NSO directly liable for its use of Pegasus, finding, for instance, that the fact that NSO "redesigned Pegasus to evade detection after Plaintiffs first fixed the security breach [was] enough to prove intent." *Id.* at 12. Further, the Court found that NSO's argument that its government customers, not NSO, operated Pegasus was a "separate argument" inapplicable to the Court's liability finding and otherwise fully addressed by co-conspirator liability under Section 1030(b) of the CFAA. *Id.* at 11. Consistent with the Court's summary judgment ruling, NSO should not be permitted to deny its use of Pegasus, particularly when NSO successfully argued that its customers' identities were "not sufficiently important" to warrant discovery and that "[n]either Plaintiffs' claims nor NSO's defenses rise or fall on those identities." Dkt. No. 249-2 at 12–13.

Moreover, there is no dispute that NSO itself operated Pegasus. NSO has admitted that its customers' role in Pegasus's installation and extraction processes was minimal, i.e., in the words of NSO's CEO, such processes were "a matter for NSO and the system to take care of, not a matter for customers to operate." Dkt. No. 467 at 7. NSO has also admitted that it used Pegasus via

4

WhatsApp's servers to access devices it purportedly controlled, marketed Pegasus's capabilities to its customers, installed the relevant technology and provided the relevant server infrastructure for its customers, and provided its customers with continual technical support. *See id.* While NSO claims that its use of Pegasus on its own devices was only "for research or sales/demonstration purposes" (Mot. at 8), that ignores the use admitted above in connection with customer implementations. Moreover, NSO admitted that ███████████████████████████████████ ████████████████████████████████████ *See* Dkt. No. 418-5, Ex. 5 at 290:13–17 ███████████████████████████████████████████ ██████████████████████████████████████████████████ ; *id.* at 290:18–24 █████████████████████████ ██████████████████████████████████████████████ .

Finally, there is no basis to exclude this evidence under Rule 403. *See* Mot. at 8. As support for its Rule 403 argument, NSO cites to cases where evidence was excluded because it lacked any support in the record. *See* Mot. at 8 (citing *Jacobs v. Alexander*, 2016 WL 4440957, at \*10 (E.D. Cal. Aug. 22, 2016)). Here, by contrast, NSO has admitted that it operated Pegasus (as explained above) and the Court has already found it liable for its own misconduct.

### 5.  Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Testimony on Topics About Which Plaintiffs Allegedly Refused to Produce a Rule 30(b)(6) Witness

NSO's fifth motion *in limine* seeks to exclude relevant and admissible evidence on the purported basis that Plaintiffs declined to produce a witness on certain improper Rule 30(b)(6) topics (which NSO propounded over seven months ago, and to which Plaintiffs timely objected). NSO's motion is misplaced and untimely. Plaintiffs were not obligated to produce a witness on topics that improperly sought Plaintiffs' legal theories or information irrelevant to any claim or defense in this case, and a motion *in limine* is not the proper vehicle for NSO, belatedly, to litigate disagreements with Plaintiffs' objections to its 30(b)(6) notice. *See* Civil Pretrial Instructions (Hamilton, J.) at 2 ("Motions in limine are limited to motions to exclude specific items of evidence on a ground and upon such authority as would be sufficient to sustain an objection to such evidence at trial. The court will not generally consider a motion presenting a purely legal issue in the guise of

a motion in limine.").

First, NSO's motion should be denied because it raises issues for which a motion *in limine* is not the proper vehicle.  A motion *in limine* cannot be used as a "substitute for motions to compel discovery or for discovery sanctions that should have been brought earlier." *See Iljas v. Ripley Ent. Inc.*, 2019 WL 13399751, at *2 (N.D. Cal. Sept. 11, 2019) (citing *Mixed Chicks LLC v. Sally Beauty Supply LLC*, 879 F. Supp. 2d 1093, 1095 (C.D. Cal. 2012)); *Dalmacio v. BMW of N. Am., LLC*, 2023 WL 4626691, at *5 (C.D. Cal. June 12, 2023) ("[T]he Court concludes the MIL is, in fact, an untimely discovery motion."); *Double Zero Inc. v. Harvest Textile Corp.*, 2015 WL 12781048, at *3 (C.D. Cal. June 25, 2015) (denying motion *in limine* which "amount[ed] to little more than an untimely request for a discovery sanction that Plaintiff could have (and should have) sought months ago"); *Morris v. Long*, 2012 WL 3276938, at *5 (E.D. Cal. Aug. 9, 2012) ("Plaintiff's argument, in essence, is that such evidence cannot be used to establish any aspect of the reasonableness [element] . . . . [T]his is not a proper motion in limine . . . ." (internal quotation marks omitted)), *aff'd*, 592 F. App'x 579 (9th Cir. 2015).

NSO's motion violates that rule.  That NSO previously filed a motion to compel, which the Court denied as moot, does not compel a contrary result.  *See* Dkt. No. 494 at 15.  To the extent NSO wished to maintain its motion to compel—for purposes of a damages trial—notwithstanding the Court's ruling on liability, the appropriate measure would have been to seek reconsideration, explaining that NSO sought further discovery for the forthcoming damages trial.  NSO did not seek reconsideration of the Court's ruling, nor does NSO cite to any authority stating a party can revive a dismissed discovery motion through a motion *in limine*.  Indeed, none of the cases NSO cites in its motion concern a motion *in limine*.  *See, e.g.*, *Tacori Enters. v. Beverly Jewellery Co.*, 253 F.R.D. 577, 578 (C.D. Cal. 2008) (evaluating motions for monetary and preclusion sanctions); *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 680 (S.D. Fla. 2012) (similar); *United States v. CNA Fin. Corp.*, 2005 WL 8159495, at *1 (D. Alaska Dec. 28, 2005) (evaluating motion for protective order).

The relief NSO seeks is also improper for a motion *in limine* to the extent it seeks to preclude Plaintiffs from introducing any evidence about how NSO acted with "oppression, fraud or

6

malice" (*see* Mot. at 9–10), because that is an improper request for a dispositive ruling through a motion *in limine*.  "To preclude [a] plaintiff from introducing evidence of damages would essentially result in a dispositive sanction, as [the] plaintiff would likely be unable to demonstrate that it suffered damages."  *Sentinel Offender Servs., LLC v. G4S Secure Sols. (USA) Inc.*, 2016 WL 9454422, at *5 (C.D. Cal. Jan. 21, 2016) (citation omitted); *see also Giganews, Inc. v. Perfect 10, Inc.*, 2019 WL 1422723, at *7 (C.D. Cal. Mar. 13, 2019) ("The Court denies the motion to strike the punitive damages claim, as this is really a motion for summary adjudication not properly raised in a motion in limine.").  Motions *in limine* are not a substitute for dispositive motions.  *See Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) ("A motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed."), *aff'd*, 574 U.S. 418 (2015); *Venture Corp. Ltd. v. Barrett*, 2015 WL 2088999, at *4 (N.D. Cal. May 5, 2015) (denying motions *in limine* as "untimely dispositive motions"), *aff'd*, 694 F. App'x 597 (9th Cir. 2017).

     *Second*, even if NSO's motion was a proper motion *in limine*, it should be denied because the Rule 30(b)(6) topics at issue improperly sought testimony on Plaintiffs' legal theories or topics irrelevant to any claim or defense in this case.  NSO first contends that Plaintiffs refused to produce a witness on a topic seeking the factual bases for "Defendants' alleged action with malice and oppression and alleged commission of fraud."  Mot. at 9–10.  But the manner in which Plaintiffs intend to use facts to support elements of their punitive damages claim is a legal conclusion and therefore not an appropriate topic for Rule 30(b)(6) testimony.  *See, e.g., Google LLC v. Sonos, Inc.*, 2022 WL 16554695, at *3–4 (N.D. Cal. Oct. 31, 2022) ("Plaintiff is asking for testimony that forms the basis of defendant's 'belief' regarding infringement and fair use. The facts that form those 'beliefs' are legal conclusions and an improper topic for a Rule 30(b)(6) deposition. . . . Even if the topic could somehow be read as seeking the factual bases for [defendant's] 'understanding' . . . it would still be an improper attempt to discover legal conclusions and/or protected information.").  Contrary to NSO's claim, "[a] party may properly resist a Rule 30(b)(6) deposition on the grounds that the information sought is more appropriately discoverable through contention interrogatories and/or expert discovery."  *Sierra Club v. BNSF Ry. Co.*, 2016 WL

4528452, at *3 (W.D. Wash. Aug. 30, 2016) (citation omitted).  Plaintiffs did so here.  *See* Dkt. No. 381-2 at 24–25.  NSO failed to serve a contention interrogatory on this topic, and it otherwise had every opportunity to seek such information through expert discovery.

NSO next claims that Plaintiffs refused to produce a witness on two topics concerning Plaintiffs' "cooperation with law enforcement" and their efforts to "address whether WhatsApp's encrypted platform hampers efforts to stop crime, terrorism and child exploitation imagery."  Mot. at 10.  These topics were and remain irrelevant to any issue in this case, including Plaintiffs' entitlement to punitive damages.  Plaintiffs do not intend to argue at trial that punitive damages are warranted because Plaintiffs take action against "terrorism and child exploitation imagery."  *Id.* Nor is the "need for law enforcement to have tools like Pegasus" at issue in this case.  *Id.*  The sole issue for trial is the amount of damages Plaintiffs are entitled to as a result of NSO's—not its hypothetical customers'—violations of federal and state law, and breach of WhatsApp's Terms of Service.  Evidence and argument about the speculative benefit of Pegasus to law enforcement agencies would do nothing more than "create unnecessary sideshows and mini-trials of little, if any, relevance," and should therefore be excluded from trial.  *Zucchella v. Olympusat, Inc.*, 2023 WL 9379193, at *4 (C.D. Cal. Dec. 6, 2023).

Finally, NSO argues that Plaintiffs declined to designate a witness on four topics it propounded concerning compensatory damages.  *See* Mot. at 11.  These four topics improperly sought Plaintiffs' legal theories concerning what facts satisfy the elements of "loss" (Topic 15) or "damage" (Topic 16) as used in the CFAA and CDAFA, or expert discovery regarding Plaintiffs' calculation of damages (Topics 45 & 46).  *See* Dkt. No. 381 at 6.  Plaintiffs' objections were proper.  *See Franklin v. Ryko Corporation*, 2008 WL 11334493, at *10 (C.D. Cal. Oct. 22, 2008) ("[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." (quoting *J.P. Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002))); *see also McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 288 (N.D. Cal. 1991) ("[N]either party to this action may pursue the bases for the other's contentions through 30(b)(6) depositions, but, instead, may use appropriately framed and timed contention

8

interrogatories for this purpose."), *rev'd on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991). Moreover, NSO cannot be heard to complain that it was denied discovery when Plaintiffs responded to NSO's contention interrogatories on these topics by directing NSO to relevant discovery and testimony supporting Plaintiffs' losses and damages, in addition to providing a narrative response setting forth the factual bases for Plaintiffs' entitlement to damages. *See* Ex. 1 (Pls.' Supp. Resps. & Objs. to NSO's First Set of Interrogs.) at 20–28.

NSO also argues that Plaintiffs should be limited to testimony on these topics given by one of Plaintiffs' 30(b)(6) witnesses, Andrew Robinson, who NSO claims was "partially educated" because he was unfamiliar with some of the employees who responded to NSO's attacks. Mot. at 11. Mr. Robinson's incomplete recall is not a basis for limiting Plaintiffs' presentation of evidence at trial because "[a] Rule 30(b)(6) deposition is not a 'memory test.'" *Goldie v. Hartford Ins. Co.*, 2006 WL 8451352, at *2 (C.D. Cal. Feb. 16, 2006) (quoting *Alexander v. FBI*, 486 F.R.D. 137, 143 (D.D.C. 1998)). Indeed, Rule 30(b)(6) testimony is "not binding against the organization in the sense that the testimony can be *corrected, explained and supplemented*, and the entity is not 'irrevocably' bound to what the fairly prepared and candid designated deponent happens to remember during the testimony." *Synergy Hematology-Oncology Med. Assocs. Inc. v. Abbott Labs., Inc.*, 2023 WL 4761550, at *1 (C.D. Cal. June 6, 2023) (emphasis added) (quoting *Snapp* v. *United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018)). To the extent NSO doubts the strength of the testimony of Plaintiffs' witnesses, its recourse is cross-examination, not exclusion. *See PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, 2017 WL 8186294, at *3 (N.D. Cal. July 25, 2017) (denying motion *in limine* where party's arguments "raise[d] issues for cross-examination that go to the weight, not the admissibility" of testimony); *Vogue Recovery California LLC v. CMJ Recovery CA LLC*, 2024 WL 1422649, at *1 (C.D. Cal. Mar. 21, 2024) (similar).

Accordingly, NSO's fifth motion should be denied as an improper motion *in limine* and on the merits.

1

2

3

      **6.  Plaintiffs' Response to NSO's Motion *in Limine* Evidence About Other Lawsuits Against NSO and the Use of Pegasus Being Related to the Death of Jamal Khashoggi**

4

5

6

     Plaintiffs do not oppose NSO's sixth motion *in limine* provided that both parties are precluded from introducing evidence, testimony, or argument regarding irrelevant legal proceedings.

7

8

      **7.  Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of ███████ ██████████████████████ and Related Information**

9

10

11

12

13

14

15

16

17

18

19

20

     NSO's seventh motion *in limine*—which seeks to exclude evidence concerning the ████ ██████████████████ and related press coverage—should be denied.  While Plaintiffs do not intend to affirmatively offer evidence of the ████████████████ during their case-in-chief, such evidence may become relevant and admissible during trial, including to impeach the credibility of NSO's witnesses and to rebut NSO's presentation of evidence.  *See Jackson v. Cnty. of San Bernardino*, 194 F. Supp. 3d 1004, 1014 (C.D. Cal. 2016) (declining to rule on motion *in limine* where "Defendants may open the door at trial and the [evidence] may become relevant and/or admissible for impeachment or rebuttal"); *see also Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *1 (N.D. Cal. June 30, 2016) ("Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to . . . trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." (citation omitted)).

21

22

23

24

25

26

27

28

     Throughout this case, NSO has refused to produce discovery, and its witnesses have refused to testify, on the basis of purported Israeli law restrictions that ██████████████████████ ██████████ at issue in NSO's motion.  *See, e.g.*, Dkt. No. 471-3, Ex. N at 142:1–142:4 █████████ ████████████████████████████████████████ █████████████████████; Dkt. No. 429-2 at 21–22 █████████████ ██████████████████████████████████████████████ ██████████.  Plaintiffs' discovery requests and deposition questions were and remain relevant to understanding the extent of NSO's unlawful conduct for the purpose of punitive damages,

including the research techniques NSO utilized to find vulnerabilities in WhatsApp's servers and

NSO's continued use of Pegasus after the filing of Plaintiffs' Complaint.  If, at trial, NSO or its

witnesses offer testimony and argument inconsistent with their blanket refusals to provide relevant

information, or which the information they have withheld might rebut, Plaintiffs should be

permitted to impeach their credibility, including through prior deposition testimony, which may

implicate ███████████  NSO has repeatedly invoked in this case.

Moreover, NSO has made clear that it intends to deflect from its own misconduct by

offering irrelevant evidence and argument about how Pegasus is purportedly used by law

enforcement agencies and necessary to stop terrorism, child exploitation, and other crime.  *See* Mot.

at 5–7.  Here too, NSO witnesses have refused to testify regarding the purported identities of

Pegasus licensees, how NSO evaluated them, and the manner in which they used—and misused[4]—

Pegasus on the basis of NSO's asserted Israeli law concerns.  *See, e.g.*, Dkt. No. 592-4, Ex. 2 at

20:18–21 █████████████████████████████████████

████████████████████████████████████ ; *id.*, Ex. 3 at 156:3–8 ██████

████████████████████████████████████████████████

██████████████████████████████████████████████ .

Plaintiffs maintain that evidence and argument regarding the identities of NSO's customers and the

hypothetical benefit of Pegasus to law enforcement should be excluded because it is irrelevant,

unfairly prejudicial, and would present a substantial risk of jury confusion.  *See* Pls.' Mot. at 1–5.

But, if NSO is permitted to present at trial argument regarding the identities of its customers and

their implementations of Pegasus, Plaintiffs should be permitted to rebut NSO's claims, which,

again, may implicate ███████████ and NSO's related withholding of discovery.

NSO's arguments to the contrary are without merit.  *See* Mot. at 15–17.  NSO cannot

reasonably claim that it would be prejudicial for Plaintiffs to rebut arguments NSO may make by

showing how NSO withheld relevant evidence.  Nor would press articles relating to ██████

---

[4] NSO has admitted that Pegasus was abused by at least 10 customers so severely that NSO
disconnected their access, but NSO witnesses have declined to testify as to these investigations,
with the exception of one that was confirmed to exist through public reporting.  *See* Pls.' Mot. at 7.

1    ███████████████████████ necessarily present hearsay concerns.  For example, there

2    would be no hearsay problem if such articles were used to impeach instead of to provide the truth

3    of their contents.  *See* Fed. R. Evid. 801(c)(2).  Finally, Plaintiffs do not possess, nor would they

4    seek to introduce, any confidential privileged material belonging to NSO's counsel.

5        **8.   Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of Black Cube**

6             **and Its Intimidation**

7        NSO's eighth motion *in limine* should be denied as moot because Plaintiffs do not intend to

8    introduce evidence at trial regarding Black Cube or its ties to NSO.

9        **9.   Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of the Entity**

10            **List and the Executive Order**

11       Plaintiffs do not oppose NSO's ninth motion *in limine* provided that both parties are

12   precluded from offering evidence, argument, or testimony about the purported benefit of Pegasus to

13   law enforcement, including in investigating terrorism, child exploitation, and other crimes.  As

14   Plaintiffs demonstrated in their Motions *in Limine* (Pls.' Mot. at 4–6), evidence regarding the

15   speculative benefit of Pegasus to law enforcement is irrelevant to Plaintiffs' entitlement to

16   compensatory and punitive damages, and would otherwise improperly "appeal to a jury's concern

17   for community safety" and thereby "encourage the jury to make a decision on an improper basis."

18   *Serna v. Costco Wholesale Corp.*, 2024 WL 4720884, at *3 (C.D. Cal. Sept. 16, 2024).

19       To the extent NSO is permitted to introduce such irrelevant policy arguments, Plaintiffs

20   should be permitted to rebut NSO's claims, including through the U.S. Department of Commerce's

21   Entity List (the "Entity List") and the March 27, 2023 Executive Order banning commercial

22   spyware (the "Executive Order").  Introduction of evidence concerning the Entity List and the

23   Executive Order—including through testimony proffered by Plaintiffs' expert Dr. Anthony

24   Vance—would contradict the policy arguments raised by NSO's experts that "[t]ools like Pegasus

25   provide intelligence insight to the U.S. and allied national security agencies."  Dkt. No. 505-2, Ex.

26   A ¶ 28.  For instance, NSO's addition to the Entity List was "based on evidence that [NSO]

27   developed and supplied spyware to foreign governments that used these tools to *maliciously* target

28   government officials, journalists, businesspeople, activists, academics, and embassy workers."

PTX-0365 (emphasis added).  As to the Executive Order, while NSO argues it is irrelevant because "[t]he Order does not mention NSO and does not bar commercial spyware generally" (Mot. at 19), it undisputedly applies to NSO.[5]  Evidence that the U.S. government placed prohibitions on its use of spyware that has been misused by foreign actors, including the Pegasus spyware, would be relevant to rebut NSO's repeated assertion that its spyware is beneficial to law enforcement or otherwise in the public interest.  *See* Mot. at 6.[6]

NSO argues that evidence regarding the Entity List should be excluded because the Department of Commerce's conclusions in listing NSO were "reached under a different legal standard and for a different purpose."  Mot. at 18–19.  This argument is unavailing given that the hypothetical use of Pegasus by law enforcement similarly holds no legal or factual significance to this case (and no one asserts that the Entity List determination is dispositive here).  In finding NSO liable for violating the CFAA and CDAFA, this Court rejected NSO's argument that its customers, which it has repeatedly claimed are law enforcement agencies, should be held responsible, and did not sustain NSO's purported law enforcement defense.  *See* Dkt. No. 494 at 11.  NSO cannot be heard to argue that the Entity List and Executive Order are legally and factually unrelated to the case, while simultaneously raising arguments that implicate similar considerations relating to the purported public benefit of spyware.[7]

---

[5] In the press release accompanying the Executive Order, the White House referenced the U.S. Department of Commerce having, in November 2021, added four foreign commercial entities "to the Entity List for engaging in the proliferation and misuse of cyber intrusion tools contrary to the national security or foreign policy interests of the United States."  PTX-0364.  One of those four referenced entities was NSO.  *See* PTX-0365.

[6] Specifically, the Executive Order prohibits the operational use of commercial spyware that "poses risks to national security or has been misused by foreign actors to enable human rights abuses around the world."  PTX-0364.  As noted, NSO's placement on the Entity List—which predated the Executive Order—was "based on evidence that [NSO] developed and supplied spyware to foreign governments that used these tools to maliciously target government officials."  PTX-0365.

[7] NSO also argues that the Entity List and Executive Order should be excluded because "no hearing was held where NSO could present a defense."  Mot. at 19–20.  The mere fact that a hearing was not held is insufficient to exclude this evidence, particularly when the "other arguments raised by [NSO] are immaterial to [the] trustworthiness [of the documents], and instead implicate only the weight of such evidence."  *Angelo v. Thomson Int'l, Inc.*, 2024 WL 3202513, at *11 (E.D. Cal. June 27, 2024) (rejecting argument that a Food and Drug Administration report and analysis should be excluded because there was no "oral hearing or adequate substitute," and explaining that "a formal

In sum, Plaintiffs maintain that all evidence concerning the hypothetical benefit of Pegasus to law enforcement should be excluded at trial. To the extent it is not, Plaintiffs should be permitted to rebut NSO's policy arguments through the Entity List and the Executive Order.

**10. Plaintiffs' Response to NSO's Motion *in Limine* to Exclude Evidence of Pretrial Sanctions**

NSO's tenth motion *in limine* seeks to exclude evidence of the sanctions the Court imposed on NSO for "repeatedly fail[ing] to produce relevant discovery and fail[ing] to obey court orders regarding such discovery." Dkt. No. 494 at 6; *see* Mot. at 20.

Plaintiffs intend to reference the Court's sanctions findings for the limited purpose of instructing the jury that it must draw an adverse inference that facts NSO did not disclose were unfavorable to NSO. *See* Dkt. No. 587-3, Instruction No. 13. This includes NSO's refusal to (1) produce the source code for its Pegasus spyware; (2) produce internal communications; (3) produce key financial information; and (4) answer certain deposition questions, including about its customers and their use of Pegasus. *Id.*; *see also* Dkt. No. 471-3 (outlining NSO's discovery deficiencies).

Federal Rule of Civil Procedure 37(b)(2)(A) permits the Court to "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" or "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). In analogous circumstances, courts have ordered adverse inference instructions where, as here, a party failed to produce relevant discovery in violation of a court order. *See First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *7 (N.D. Cal. Oct. 7, 2016) (ordering "adverse-inference jury instruction as a sanction" where party "was repeatedly ordered to produce and failed to produce" discovery); *State Farm Fire & Cas. for Robinson v. Helen of Troy, LLC*, 2017 WL 2774072, at *2 (W.D. Wash. June 27, 2017) (holding jury could be given an adverse inference instruction for defendants' failure to produce documents, and noting the

hearing is not necessary when other indicia of trustworthiness are present" (quoting Wright & Miller, Federal Rules of Evidence § 6889 (2024 ed.))).

14

instruction would permit the jury to "infer from the Defendants' violation of this Court's [discovery] order that the documents would have content favorable to [Plaintiff] and unfavorable to Defendants."); *Estakhrian v. Obenstine*, 2016 WL 6868178, at *13 (C.D. Cal. Feb. 29, 2016) (ordering "adverse inference jury instruction" where defendant "refused to disclose to Plaintiffs relevant documents he had in his possession"), *report and recommendation adopted*, 2016 WL 6275599 (C.D. Cal. May 17, 2016).

NSO's complaints of unfair prejudice are misplaced. It would surely be prejudicial to NSO for the jury to understand NSO's discovery behavior, but that prejudice is entirely fair. In fact, an adverse inference instruction is necessary to mitigate the unfair prejudice to *Plaintiffs* from NSO's refusal to produce discovery on facts relevant to Plaintiffs' damages claim or to rebutting NSO's defense. For instance, NSO's failure to produce internal communications deprived Plaintiffs of information regarding the full extent of NSO's reverse engineering of Plaintiffs' technology, which is relevant to whether NSO acted with malice, oppression, or fraud for the purposes of punitive damages. *See* Dkt. No. 471-3 at 10, 20. Moreover, in its present motions and elsewhere, NSO has repeatedly raised irrelevant arguments regarding its government customers and their use of Pegasus despite refusing to produce information about its customers' roles and responsibilities with respect to the operation of Pegasus. *Id.* at 25. Accordingly, NSO should not be permitted to unfairly benefit from its violations of the Court's Orders at Plaintiffs' detriment, and its motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny NSO's motions *in limine*.

Dated:   March 27, 2025

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

By:   /s/ Micah G. Block
Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
         antonio.perez@davispolk.com
         craig.cagney@davispolk.com
         gina.cora@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*