1    JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
      *jakro@kslaw.com*
2    AARON S. CRAIG (Bar No. 204741)
      *acraig@kslaw.com*
3    KING & SPALDING LLP
      633 West Fifth Street, Suite 1700
4    Los Angeles, CA 90071
      Telephone:    (213) 443-4355
5    Facsimile:    (213) 443-4310

6    Attorneys for Defendants NSO GROUP TECHNOLOGIES
      LIMITED and Q CYBER TECHNOLOGIES LIMITED
7

8                        UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                              OAKLAND DIVISION

11   WHATSAPP INC., a Delaware corporation,       Case No. 4:19-cv-07123-PJH
      and FACEBOOK, INC., a Delaware
12   corporation,                                 **REPLY IN SUPPORT OF DEFENDANTS'**
                                                   **MOTION TO EXCLUDE OR LIMIT**
13                  Plaintiffs,                    **OPINIONS OF ANTHONY VANCE, PH.D.**

14          v.                                     Date:    April 10, 2025
                                                   Time:    2 PM
15   NSO GROUP TECHNOLOGIES LIMITED               Place:   Courtroom 3, Ronald V. Dellums
      and Q CYBER TECHNOLOGIES LIMITED,                    Federal Building & U.S. Courthouse,
16                                                          1301 Clay Street, Oakland, California
                    Defendants.
17                                                 Judge:   Hon. Phyllis J. Hamilton

18                                                 Action Filed:   10/29/2019

19

20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.  DR. VANCE IS NOT QUALIFIED TO OFFER HIS WIDE-RANGING
    REBUTTAL OPINIONS. ............................................................................... 2

    A.  Dr. Vance Undisputedly Lacks Expertise to Opine on Legal
        Issues. ................................................................................................. 2

    B.  Dr. Vance Has No Expertise in Law Enforcement, Military, or
        Intelligence. ....................................................................................... 4

II.  MANY OF DR. VANCE'S OPINIONS ARE NOT RELEVANT OR
     HELPFUL. ................................................................................................... 6

    A.  Dr. Vance's Opinions Are Not Relevant to Any Damages Issues. ......... 6

    B.  Dr. Vance's "Hacking" and "Compromising" Opinions Should
        Be Excluded. ...................................................................................... 7

    C.  Many of Dr. Vance's Opinions Fail to Apply Any Expertise. ............... 8

        1.  Dr. Vance Parrots Documents Without Applying
            Expertise. ................................................................................. 9

        2.  Dr. Vance Uses No Expertise in Trying to Read Minds. ............... 10

III.  MANY OF DR. VANCE'S OPINIONS ARE UNRELIABLE OR
      IMPROPER. ................................................................................................ 11

    A.  Dr. Vance Has No Basis for Opining That Data Sources Available
        to Law Enforcement Are True Alternatives to Technology Like
        Pegasus. .............................................................................................. 11

    B.  Dr. Vance Unreliably Opines That Plaintiffs Respond to "All"
        Lawful Requests for Data. .................................................................. 12

    C.  Dr. Vance Unreliably Opines That Pegasus' Harms Outweigh Its
        Benefits. .............................................................................................. 13

    D.  Dr. Vance Unreliably Opines on an Executive Order He Has Not
        Even Read. .......................................................................................... 14

    E.  Dr. Vance Unreliably Opines on Pegasus' Safeguards. ......................... 15

CONCLUSION ....................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Avila v. Willits Envt'l Remediation Tr.*,
633 F.3d 828 (9th Cir. 2011) ...................................................4

*Baldonado v. Wyeth*,
2012 WL 1802066 (N.D. Cal. May 17, 2012) ...................................10

*Beech Aircraft Corp. v. United States*,
51 F.3d 834 (9th Cir. 1995) ...................................................10, 11

*Berry v. City of Detroit*,
25 F.3d 1342 (6th Cir. 1994) ...................................................5

*Caldwell v. City of S.F.*,
2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) ...................................6, 9

*Cholakyan v. Mercedes-Benz, USA, LLC*,
281 F.R.D. 534 (C.D. Cal. 2012) ...................................................9

*Dep't of Toxic Substances Control v. Technichem, Inc.*,
2016 WL 1029463 (N.D. Cal. Mar. 15, 2016) ...................................3, 9

*Domingo ex rel. Domingo v. T.K.*,
289 F.3d 600 (9th Cir. 2002) ...................................................14, 15

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ...................................................11

*Gold v. Lumber Liquidators, Inc.*,
323 F.R.D. 280 (N.D. Cal. 2017) ...................................................10

*Grasshopper House, LLC v. Clean & Sober Media LLC*,
2019 WL 12074086 (C.D. Cal. July 1, 2019) ...................................12

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ...................................................4

*Hardeman v. Monsanto Co.*,
997 F.3d 941 (9th Cir. 2021) ...................................................14, 15

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ...................................................1, 11, 14

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
2014 WL 3417941 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016) ...................................................9

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)................................................................7

*Medo v. Super. Ct.*,
    251 Cal. Rptr. 924 (Cal. Ct. App. 1988)................................................7

*Powers v. McDonough*,
    2024 WL 3491008 (C.D. Cal. July 19, 2024)............................................5

*QR Spex Inc. v. Motorola, Inc.*,
    2004 WL 5642907 (C.D. Cal. Oct. 28, 2004)............................................11

*Robinson v. GD Searle & Co.*,
    286 F. Supp. 2d 1216 (N.D. Cal. 2003)................................................12

*Ryanair DAC v. Booking Holdings Inc.*,
    2024 WL 3732498 (D. Del. June 17, 2024)..............................................2

*Scentsational Techs., LLC v. Pepsi, Inc.*,
    2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018)............................................6

*Siqueiros v. Gen. Motors LLC*,
    2022 WL 74182 (N.D. Cal. Jan. 7, 2022)................................................9

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health &
    Welfare Fund v. Teikoku Pharma USA*,
    296 F. Supp. 3d 1142 (N.D. Cal. 2017)................................................10

*Williams v. Illinois*,
    567 U.S. 50 (2012)....................................................................6

**Other Authorities**

Fed. R. Evid. 702 ....................................................................2, 6, 12

**<u>INTRODUCTION</u>**

Dr. Vance is a textbook example of why district courts have a "gatekeeping obligation" to screen out opinions for which a proffered expert has no expertise and no reliable foundation or methodology. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Every time Dr. Vance has offered an expert opinion, courts have limited or excluded his opinions. Plaintiffs nevertheless disclosed Dr. Vance as their original technical cybersecurity expert. As even a cursory review of his opening report reveals, his cybersecurity opinions suffer from major deficiencies—as he largely just cuts and pastes *other* people's statements and conclusions into his report without independent verification or application of any expertise. Plaintiffs themselves must have recognized at least some of these deficiencies, as they located and disclosed a second technical cybersecurity expert (David Youssef) to address many of the same issues. Indeed, Plaintiffs now admit that they did not intend Dr. Vance to issue a number of his "affirmative" cybersecurity opinions at all, and that he did so only because Mr. Youssef was not yet approved to view materials designated under the protective order.[1] As a result, Dr. Vance's cybersecurity opinions largely do not apply any expertise (and are mostly irrelevant anyway).

NSO subsequently disclosed its own affirmative experts, who have decades of experience in law enforcement, military, and intelligence operations. Plaintiffs had no comparable expert— and so, faced with an impending deadline for rebuttal reports, they tasked Dr. Vance with refuting all three experts despite his having no experience or expertise in those areas. And it shows. Because Dr. Vance strays far from his limited cybersecurity expertise, he is forced to parrot documents and statements made by others without applying any expertise (he has none) or employing any discernible methodology (much less a reliable one).

Plaintiffs chose to forego naming an expert qualified to rebut NSO's law enforcement and military intelligence experts. Plaintiffs must accept the consequences of that strategic gamble. They have not met their burden to show Dr. Vance's opinions are based on actual expertise or are

---

[1] NSO objected to providing its highly confidential, export-controlled information to Mr. Youssef because it had already approved disclosure to Dr. Vance and to a third cybersecurity expert. (*See* Dkt. 369 at 1-2.)

1   "reliable," as Rule 702 requires.  The Court should not allow Dr. Vance to testify on matters for

2   which he has no expertise, applies no expertise, or has no reliable foundation.

3                                           **ARGUMENT**

4   **I.    DR. VANCE IS NOT QUALIFIED TO OFFER HIS WIDE-RANGING**

5          **REBUTTAL OPINIONS.**

6          Dr. Vance is an academic with research interests in "[b]ehavioral and organizational

7   cybersecurity" and "[n]euroscience applications to cybersecurity," *i.e.*, how people respond

8   neurologically to corporate cybersecurity warnings.  (Dkt. 509-4 ("Vance Opening Report") Ex.

9   B at 2.)  Given these narrow research interests, Dr. Vance has a history of overreaching with his

10  rebuttal opinions.  In one case, he was qualified only as a "technical expert" in "cybersecurity,"

11  and the court rejected his attempt to opine on "the travel business" based on supposed experience

12  as "'a business professor'" who "advise[s] businesses on cybersecurity measures."  *Ryanair DAC*

13  *v. Booking Holdings Inc.*, 2024 WL 3732498, at *50-51 (D. Del. June 17, 2024).[2]  Here too, Dr.

14  Vance should be required to stay within the confines of his academic research.  The Court should

15  not allow him to offer rebuttal opinions in the areas of law, law enforcement, the military, or

16  intelligence for which he admits he has no expertise.

17         **A.    Dr. Vance Undisputedly Lacks Expertise to Opine on Legal Issues.**

18         Plaintiffs do not dispute that Dr. Vance lacks expertise to opine on a range of different

19  laws, executive actions, and their legal effects.  (Mot. at 4-6.)  Dr. Vance admits he is "not a

20  lawyer" (Dkt. 509-6 ("Vance Tr.") at 18:24-19:12), and his counsel repeatedly emphasized at his

21  deposition that he "is not a legal expert" (*e.g.*, *id.* at 18:18-20:4, 50:10-18).  Plaintiffs instead

22  contend that Dr. Vance's opinions about *legal* protections for privacy rights and the *legal* effect of

23  executive actions are not really *legal* opinions.  (Dkt. 623-3 ("Opp.") at 9-11.)  That is incorrect.

24         Dr. Vance's opinion on whether WhatsApp users have a "legal right to privacy," including

25

26  ─────────────────
    [2] Contrary to Plaintiffs' suggestion (Opp. 3 n.3), the *Ryanair* court excluded the rebuttal opinions
27  that Dr. Vance attempted to offer as an expert on the travel industry: "Dr. Vance's opinions
    regarding Ryanair's licensing fee and whether Ryanair and the OTAs are competitors are excluded
28  as falling outside the field of Dr. Vance's expertise."  *Ryanair*, 2024 WL 3732498, at *50.

─────────────────

"legal protections" and how "[t]hese rights are enforced" under "federal laws" and in other countries (Dkt. 509-5 ("Vance Rebuttal") § II.A.1) is an obvious legal opinion—not an "opin[ion] on the purpose and utility of E2EE [end-to-end encryption]" (Opp. at 9). Dr. Vance opines E2EE is useful only "because technology advances at a faster rate than do legal protections." (Vance Rebuttal § II.A.1.) In other words, his opinion is predicated on the scope of such legal protections—on which he is unable to answer questions and admits he is "not an expert." (Vance Tr. at 230:21-231:3, 233:19-234:12.) That readily distinguishes his opinions from those of NSO's experts, who permissibly ground their opinions on E2EE in their own decades of experience and personal knowledge of how E2EE has been used to stymie investigations. (*See* Dkt. 613 at 16 (Mr. Minkler has decades of law-enforcement experience where E2EE hindered investigations, including "'quite a few' child exploitation" and terrorism cases); Dkt. 619-2 at 13-15 (Mr. McGraw has decades of cybersecurity, military, and intelligence experience).)

Dr. Vance similarly lacks expertise to opine on the legal effect of NSO's placement on the Commerce Department's Entity List, an executive order on commercial spyware, and Treasury Department sanctions against unrelated third parties. (Mot. 5-6.) Plaintiffs' suggestion (Opp. 11) that Dr. Vance "does not need that qualification to rely on [these] publicly known fact[s]" is doubly wrong. *First*, Dr. Vance opines not merely on the *fact* of these executive actions (which would not require any expert testimony at all), but on the *legal* "consequences of being added to the Entity List" (Vance Rebuttal § II.D.2); *how* the executive order "is designed to prohibit" software like Pegasus (*id.*); and *what* "the U.S. Treasury is seeking to sanction" (*id.* § III.F). As Dr. Vance's counsel repeatedly objected at his deposition, all of these opinions "ask[] for a legal conclusion" that Dr. Vance is not qualified to offer. (*E.g.*, Vance Tr. at 274:18-25, 277:13-18.) *Second*, Dr. Vance has no specialized expertise as to these facts. As Plaintiffs admit, he merely "relied on [other] sources." (Opp. 9 n.7.) Because he merely quotes one *New Yorker* article and "read[s] a statement out of the document . . . like anybody else who can read would do" (Vance Tr. at 277:24-278:10, 333:18-334:16), he was unable to answer follow-up questions (*e.g.*, *id.* at 335:20-337:24). Dr. Vance thus will "do[] no more than regurgitate information given to him by other sources." *Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1 (N.D. Cal. Mar.

15, 2016). Either Dr. Vance is testifying about legal matters beyond his expertise, or he is merely reciting facts without offering any opinion at all. Either warrants exclusion.

Dr. Vance also undisputedly lacks expertise to offer a legal opinion that "even if intelligence agencies typically do not follow terms of service agreements . . . that would not authorize NSO to develop exploits that circumvent them." (Vance Rebuttal § II.E.)

Finally, Plaintiffs' suggestion (Opp. 11) that Dr. Vance can "use[] the terms 'authorized' and 'unauthorized' in a technical, rather than legal, sense," but NSO's expert Mr. McGraw cannot, is arbitrary and wrong. Mr. McGraw offers only technical opinions about how the relevant versions of Pegasus functioned and whether they affected WhatsApp's servers. (*See* Dkt. 619-2 at 24.) His agreement with the Court's holding that NSO had authorization to access WhatsApp's servers is unremarkable, as his report makes clear that his opinions regarding authorization are only based on his assessment of technical access barriers. (Dkt. 513-4, Ex. A ¶ 123.) While those opinions may "concern[] an ultimate issue," it is "well-established" that such opinions are not "objectionable." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

## B.    Dr. Vance Has No Expertise in Law Enforcement, Military, or Intelligence.

Dr. Vance's academic research into the neurological responses triggered by corporate cybersecurity warnings likewise does not qualify him to opine on the areas of law enforcement, the military, and intelligence. As NSO demonstrated (Mot. 6-7), Dr. Vance is not qualified to opine that specific vulnerable populations have been targeted by technologies like Pegasus (Vance Rebuttal §§ II.A.1, II.D.1); that tools like Pegasus are unnecessary because law enforcement has ample access to data in criminal investigations even without obtaining encrypted messages (*id.* § II.A.2); that plaintiffs comply with all lawful requests for data from law enforcement and other government agencies (*id.* § II.B); or that Pegasus is not equivalent to legitimate lawful intercept technologies (*id.* § II.C.1).

Plaintiffs misconstrue the appropriate legal standard in asserting that Dr. Vance can opine on these topics even though they are undisputedly outside his expertise. (Opp. 6-9.) Experts *always* must have "special training or knowledge" in the areas on which they opine. *E.g.*, *Avila v. Willits Envt'l Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) ("[L]ack of specialization may

go to weight only 'as long as an expert stays within the reasonable confines of his subject area.'"); *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) (expert qualifications must "provide a foundation for [the] witness to answer a specific question"). As Plaintiffs' own authority explains, experts cannot opine even on areas "intertwined" with their expertise where, as here, those areas are "central to [the] expert's testimony." *Powers v. McDonough*, 2024 WL 3491008, at *4 (C.D. Cal. July 19, 2024).

Dr. Vance's expertise—in neurological responses triggered by corporate cybersecurity—does not qualify him to opine on law enforcement, the military, or intelligence. Vance's own definitions of "cybersecurity" focus on the protection of "organizations' data," employee compliance with corporate "information security policies," and how organizations set internal information-security policies as a result. (Mot. 7.) None of those definitions makes any reference to cybersecurity as applied to governments or government agencies operating in law enforcement, military, or intelligence fields. Vance has never held any position in these areas, has participated in only one case in these areas, and has never published in these areas. (Vance Tr. at 107:8-108:4, 126:18-23, 128:20-131:20, 133:8-12.) Even the supposed qualifications Plaintiffs tout (Opp. 7) drive this point home: Dr. Vance has spoken at national-security conferences *only about employees' "access rights" to employer information*—which he admits is only "broadly relevant to" national security, not to any specific opinion he offers here. (Dkt. 624-2 ("Vance Supp. Tr.") at 134:3-135:17.) Moreover, he "do[es] not write about civil society" (*id.* at 126:18-23), and his research "do[es] not address" vulnerable populations but instead involves "vulnerable groups" defined at such a high level of abstraction that he believes "[m]ost people are vulnerable to one extent or another" (*id.* at 124:4-16, 128:18-129:3). This provides no basis for his opinions that specific vulnerable populations—including "journalists, human rights activities and lawyers, religious leaders, [and] diplomats"—have been targeted by technologies like Pegasus. (Vance Rebuttal § II.A.1, II.D.1.)

Nor is Dr. Vance qualified to opine that Pegasus is not equivalent to lawful intercept technologies, given his admissions that he does not "know the specific intercept technologies" (*id.* at 247:25-248:7), has never "written about that specifically," and in his courses has merely

"debated with [his] students" the "the various equities involved" (*id.* at 108:25-109:21). Plaintiffs quote at length from Dr. Vance's rebuttal report, but the quoted section does not mention any of his experience or expertise. (Vance Rebuttal § II.C.1.) If anything, it illustrates that Dr. Vance uses his own say-so—simply stating his conclusion without any explanation or supporting expertise—to assert that wiretapping as an interception technique is different from Pegasus.

Plaintiffs may want to rebut Defendants' experts, but that does not relax Rule 702's rigorous requirements for expert testimony. Because Dr. Vance lacks expertise in areas that are central to many of his opinions, the Court should exclude those rebuttal opinions.

## II.   MANY OF DR. VANCE'S OPINIONS ARE NOT RELEVANT OR HELPFUL.

### A.   Dr. Vance's Opinions Are Not Relevant to Any Damages Issues.

Nine of Dr. Vance's opinions are not relevant to any remaining damages issues. (Mot. 8.) Those opinions are that (1) WhatsApp's changes to its server code interrupted Pegasus' operation (Vance Opening Report § VI); (2) NSO circumvented those changes (*id.* § VII); (3) NSO or its software conducted the May 2019 attacks (*id.* § VIII); (4) NSO or its clients used or tested their products against WhatsApp servers or clients (*id.* § IX); (5) Pegasus was installed on target devices in May 2019 to extract information (*id.* § X); (6) NSO engaged in "suspicious activity" after June 2019 (*id.* § XII); (7) NSO is "likely to target WhatsApp or Plaintiffs' other products in the future" (*id.* § XIII); (8) NSO is not authorized to exploit the software or systems of companies like Plaintiffs (Vance Rebuttal Report § II.E); and (9) the WhatsApp "platform" was "compromised" (*id.* § III.B). With one exception discussed below, Plaintiffs make no attempt to explain how any of these topics relate to damages. They do not.

Plaintiffs' response that these opinions "explain the story of why NSO acted with 'oppression, fraud, or malice'" (Opp. 13) is precisely why they should be excluded. It is well established that experts are not a proper "vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's 'story.'" *Scentsational Techs., LLC v. Pepsi, Inc.*, 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018) (citing cases); *accord*, *e.g.*, *Williams v. Illinois*, 567 U.S. 50, 80 (2012) (experts cannot "act as mere conduits for hearsay"); *Caldwell v. City of S.F.*, 2021 WL 1391464, at *5 (N.D. Cal. Apr.

13, 2021) ("[C]ourts have rejected attempts to use experts as mere 'conduits' for otherwise inadmissible evidence.").  "The appropriate way to adduce factual details of specific past events is . . . through persons who witnessed those events"—not experts like Dr. Vance, who did not. *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).  Indeed, Plaintiffs' and NSO's fact witnesses can readily address the lone opinion Plaintiffs specifically defend—that NSO supposedly "circumvent[ed]" "two changes in WhatsApp's source code."  (Opp. 13.)  All nine of these opinions thus should be excluded as they will not help the jury.

**B.    Dr. Vance's "Hacking" and "Compromising" Opinions Should Be Excluded.**

NSO also explained how Dr. Vance's opinions that NSO "hacked" WhatsApp and "compromised[3] the WhatsApp platform" are irrelevant and prejudicial.  (Mot. 8-10).  Plaintiffs agree that "Dr. Vance does not use those terms synonymously with liability under the CFAA." (Opp. 13.)  In fact, he expressly distinguishes "hacking" from Plaintiffs' "claims relative to the CFAA" (Vance Tr. at 326:4-24) and considers servers compromised "even if different sections of the server were not accessed" (*id.* at 323:4-324:6), whereas Plaintiffs' claims undisputedly "require evidence that NSO accessed a computer" improperly (Mot. 9).  Because neither opinion relates to NSO's liability, neither opinion will help the jury assess damages for that liability.  (*Id.*)

Plaintiffs speculate that lay "jurors will understand" what is meant by these terms.  (Opp. 13-14.)  That is highly unlikely.  But in any event, what matters is whether these terms will help the jury decide the remaining issues.  Saying that NSO "hacked" WhatsApp or "compromised" its servers will not help the jury decide damages or punitive damages when, undisputedly, neither term describes the actual conduct for which NSO has been held liable.  *See*, *e.g.*, *Medo v. Super. Ct.*, 251 Cal. Rptr. 924, 926 (Cal. Ct. App. 1988) ("Punitive damages . . . must be tied to oppression, fraud or malice in the conduct which gave rise to liability in the case.").

---

[3] Defendants' MIL No. 1 seeks to preclude such language because it appears to circumvent Plaintiffs' agreement to not introduce evidence of reputational harm or lost goodwill.  Unless Plaintiffs can show that "compromising" means that Pegasus caused some technological damage or impairment to their servers or infrastructure (which they cannot, because their employees testified to the contrary), "compromising" can only mean that Plaintiffs' reputations have somehow been compromised.

At minimum, any probative value here is significantly outweighed by the risks of unfair prejudice and jury confusion. (Mot. 10.) Plaintiffs have no response to NSO's argument that "the pejorative term 'hacking'" unfairly prejudices NSO when Dr. Vance could use instead a more neutral term such as "surveillance." (*Id.*) And while Plaintiffs suggest "hacking" "is an alternative to 'unauthorized access,' which has both technical *and legal* meaning" (Opp. 13 (emphasis added)), the jury could easily be misled by a word with "legal meaning" that *sounds like* it gives rise to liability but does not. Similarly, while Dr. Vance does not opine on the amount of damages, his repeated references to "compromised" servers improperly invite the jury to compensate Plaintiffs or punish NSO for that conduct. Plaintiffs' contrary argument (Opp. 14-15) ignores that they intend to use this testimony as the linchpin in their case to "explain the story of why NSO acted with 'oppression, fraud, or malice'" (Opp. 13).

Accordingly, Dr. Vance's "hacking" and "compromised" opinions should be excluded.

### C.    Many of Dr. Vance's Opinions Fail to Apply Any Expertise.

NSO identified eight distinct sets of opinions where Dr. Vance improperly "regurgitates factual information" from non-technical emails and communications, without applying any expertise. (Mot. 10-13.) Specifically, Dr. Vance opines, without adding any of his own expertise, that: (1) NSO must periodically update Pegasus in response to changes by WhatsApp (Vance Opening Report § VI); (2) NSO's "intention" was to circumvent those changes (*id.* § VII); (3) NSO performed the May 2019 "attacks" (*id.* § VIII); (4) Pegasus was installed on target devices to extract information from those devices (*id.* § X); (5) "suspicious activity" after May 2019 was caused by NSO (*id.* § XII); and (6) NSO is "likely to target WhatsApp or Plaintiffs' other products in the future" (*id.* § XIII). He also offers opinions on (7) the legal effect of NSO's placement on the Commerce Department Entity List, an executive order on commercial spyware, and Treasury Department sanctions (Vance Rebuttal Report §§ II.D.2 and III.F); and (8) the United States' "view" of the benefits and "harm[s]" of remedial relief in this case (*id.* § III.F.).

Plaintiffs largely do not dispute that Dr. Vance parrots other sources to form these opinions. Instead, Plaintiffs misstate the law in trying to justify all eight opinions, including opinions (2), (6), and (8), where Dr. Vance improperly attempts to read the mind of others.

1.      **Dr. Vance Parrots Documents Without Applying Expertise.**

The relevant inquiry is not whether "Dr. Vance applies the facts of the case in his analysis." (Opp. 16.)  It is whether he "draws on some special skill, knowledge, or experience" in interpreting that evidence.  *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *13 n.8 (N.D. Cal. July 11, 2014) (cleaned up), *aff'd*, 653 F. App'x 553 (9th Cir. 2016); *see also*, *e.g.*, *Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022) ("An expert . . . may not restate or summarize record evidence and then state a conclusion without applying a methodology that . . . evinces his/her expertise."); *Caldwell*, 2021 WL 1391464, at *5 (excluding expert testimony where there "[wa]s no indication of how [the expert] applied his purported expertise to synthesize or analyze the facts upon which he relied"); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 546 (C.D. Cal. 2012) (excluding expert testimony that "engaged in little, if any, evaluation of [the] merits" of underlying document he proffered as his own opinion).

Moreover, Plaintiffs misunderstand NSO's objection to Dr. Vance's attempts to attribute "suspicious activity" after May 2019 to NSO.  (Opp. 18.)  Dr. Vance is allowed to use his own expertise to analyze the AWS server logs.  What he cannot do—and what he does do—is "regurgitate information" from reports prepared by Plaintiffs' engineers without purporting to apply any expert analysis to those reports.  *Technichem, Inc.*, 2016 WL 1029463, at *1.  Because Dr. Vance "offers no independent analysis" of those reports, but instead "took [their] conclusions, engaged in little, if any, evaluation of their merits, and reproduced [their conclusions] wholesale," he has impermissibly "served as a mouthpiece for others."  *Cholakyan*, 281 F.R.D at 546-47.

Plaintiffs otherwise do not identify a single instance where Dr. Vance purports to apply his own expertise to interpret the non-technical documents he parrots.  (*See* Opp. 16-17.)  He does not do so, as NSO catalogued at length.  (Mot. 11-13.)  Dr. Vance's failure to apply expertise to such evidence stands in stark contrast to NSO's own experts, who permissibly reviewed multiple sources, then *applied their expertise* in synthesizing that evidence with their own extensive personal experience and knowledge to reach an opinion.  (*E.g.*, Dkt. 612-2 at 14, 17 (Minkler); Dkt. 616-2 at 14-15 (Shepard); Dkt. 619-2 at 17-18 (McGraw)).  Because Dr. Vance merely repeats information without applying any expertise, all eight sets of opinions are "within the ability and

1    experience of the trier of fact" and hence are not "a proper subject for expert testimony." *Beech*

2    *Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995).

3                    **2.    Dr. Vance Uses No Expertise in Trying to Read Minds.**

4                Plaintiffs have no response to NSO's argument that Dr. Vance cannot "testify to the U.S.

5    government's views, intents, or motives, absent some personal knowledge."  (Mot. 13 (citing

6    *Baldonado v. Wyeth*, 2012 WL 1802066, at *8 (N.D. Cal. May 17, 2012)).  This is a further basis

7    for excluding his opinions on NSO's placement on the Commerce Department's Entity List, an

8    executive order on spyware, and Treasury Department sanctions.  (Vance Rebuttal § III.F.)

9                Dr. Vance also offers two other impermissible opinions on NSO's motives: that non-

10   technical "communications show NSO's intention to circumvent" changes made to WhatsApp's

11   server code (Vance Report § VII), and that NSO is "likely to target WhatsApp or Plaintiffs' other

12   products in the future" based on a handful of non-technical communications and statements from

13   press interviews (*id.* § XIII).  Plaintiffs cannot seriously dispute that "[c]ourts routinely exclude

14   expert testimony as to intent, motive, or state of mind as issues better left to a jury," since they

15   have taken exactly that position elsewhere.  (Dkt. 572-3 at 17 (quoting *Gold v. Lumber Liquidators,*

16   *Inc.*, 323 F.R.D. 280, 294 (N.D. Cal. 2017) (quotation marks omitted).)

17               Plaintiffs' primary authority (Opp. 19) does not help them.  That case agrees experts cannot

18   "opine on what [someone] subjectively decided, thought, believed, or intended."  *United Food &*

19   *Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*,

20   296 F. Supp. 3d 1142, 1194 & n.60 (N.D. Cal. 2017).  While that court permitted an expert to

21   apply his own personal experience in launching generic drugs to opine that two companies "were

22   prepared" to launch generics, the court indicated it would sustain trial objections if the expert's

23   testimony veered into "purely speculative opinions on the subjective motivations or beliefs" of

24   others.  *Id.*  That holding plainly excludes Dr. Vance's opinion that NSO "intentionally" circumvented

25   changes to WhatsApp server code.  (*See* Vance Report § VII.)   Nor does it permit Dr. Vance to

26   review a non-technical email and press statement, form an opinion regarding NSO's subjective

27   "priorities," and then use those subjective motives as a basis to speculate about NSO's future

28   intent.  (*See* Vance Report § XIII.)  Contrary to Plaintiffs' assertions, Section XIII of Dr. Vance's

report repeatedly states what he believes NSO intends to do "in the future." (Vance Report at 26, 28.)  And those statements are not based on the "weighing of known factors" that are set forth in "broadly accepted scientific principles and professional standards."  *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1029 (9th Cir. 2022).  Dr. Vance merely speculates as to NSO's intent based on "statements," "private communications," and a "report" he did not independently verify. (*See* Vance Report §§ VII, XIII.)  His opinions are thus "within the ability and experience of the trier of fact" and will not help the jury.  *Beech*, 51 F.3d at 842; *see also QR Spex Inc. v. Motorola, Inc.*, 2004 WL 5642907, at *10 (C.D. Cal. Oct. 28, 2004) (excluding "opinion as to [company's] possible future intent").

## III.   MANY OF DR. VANCE'S OPINIONS ARE UNRELIABLE OR IMPROPER.

NSO also identified five of Dr. Vance's opinions that are unreliable or otherwise improper. (Mot. 14-18.)  Plaintiffs contend these defects go to only to weight (Opp. 21), but nothing in their opposition changes that, when Dr. Vance steps outside his narrow field of expertise, he consistently offers unsupported and unreliable opinions that display none of the "intellectual rigor that characterizes the practice of an expert" in these fields.  *Kumho Tire*, 526 U.S. at 152.  The Court should exercise its "gatekeeping obligation" to exclude these opinions.  *Id.* at 147.

### A.   Dr. Vance Has No Basis for Opining That Data Sources Available to Law Enforcement Are True Alternatives to Technology Like Pegasus.

Dr. Vance provides no reliable basis for his opinion that "[l]aw enforcement has ample alternative data sources" even without access to E2EE communications.  (Vance Rebuttal § II.A.2.) Dr. Vance has no law-enforcement experience.  And while he lists potential data sources that are available, he cites nothing to support his opinion that those data sources are true "alternatives" to E2EE intercept technologies, much less that the availability of those "alternative sources . . . undermines the argument for the necessity" of tools such as Pegasus.  (*Id.*)

Plaintiffs respond that Dr. Vance cites the Senate testimony of a single law professor and "has spoken at various conferences." (Opp. 21.)  But he cites that Senate testimony for a *different* proposition—that law enforcement today operates in a "'golden age of surveillance'"—not for his unsubstantiated opinion that other data sources are true alternatives that undermine the need for

Pegasus. (*See* Vance Rebuttal § II.A.2.) The Senate testimony does not support this latter opinion anyway. The testimony is outdated, as it was given in July 2015 when end-to-end encryption was still in its infancy. *See* Peter Swire, Senate Judiciary Committee Hearing, "Going Dark: Encryption, Technology, and the Balance Between Public Safety and Privacy," at 7-8 (July 8, 2015), https://www.judiciary.senate.gov/imo/media/doc/07-08-15%20Swire%20Testimony.pdf (noting a "vanishingly small" number of E2EE users). The testimony is also inapposite, as it focused solely on end-to-end encryption of "email," where—unlike with WhatsApp—law enforcement usually can still "access the plaintext of the content." *Id.* Dr. Vance's conference talks are even further afield. As explained above, he has spoken at conferences only about employees' "access rights" to employer information (Vance Supp. Tr. at 134:3-135:17), which is irrelevant to his opinion here.

Because no facts or data support Dr. Vance's opinion that law enforcement has "ample alternative[s]" to tools such as Pegasus, that opinion is *ipse dixit* and should be excluded.

## B. Dr. Vance Unreliably Opines That Plaintiffs Respond to "All" Lawful Requests for Data.

Dr. Vance also has no sufficient basis for opining that "Plaintiffs Comply with *All* Lawful Government Data Requests." (Vance Rebuttal § II.B (emphasis added).) As NSO showed (Mot. 14-16), Dr. Vance bases this opinion entirely on two self-serving documents provided by Plaintiffs—and even those do not support his opinion, as they expressly state that Plaintiffs will not produce the content of "WhatsApp user's private messages" and may "reject or require greater specificity" on certain requests (Vance Rebuttal § II. B & n.21). Contrary to Plaintiffs' argument (Opp. 23), an expert may not reliably base an opinion solely on client documents that flatly contradict the expert's testimony. *See, e.g., Grasshopper House, LLC v. Clean & Sober Media LLC*, 2019 WL 12074086, at *3 (C.D. Cal. July 1, 2019) ("[A]ssumption[s] based on conclusory statements of the expert's client, rather than on the expert's independent evaluation are not reasonable."); *Robinson v. GD Searle & Co.*, 286 F. Supp. 2d 1216, 1221 (N.D. Cal. 2003) (excluding expert opinion that was "contradicted by" the record because it "lacks sufficient factual basis as required under Rule 702 and is therefore inadmissible"); Fed. R. Evid. 702(b) (expert testimony must be "based on sufficient facts or data").

1    Unable to meaningfully defend Dr. Vance's unsupported opinions, Plaintiffs primarily try

2  to deflect the Court's attention to NSO's experts.  (Opp. 22.)  But unlike Dr. Vance, neither Mr.

3  McGraw nor Col. Shepard (nor any other NSO expert) relies solely on party documents without

4  any analysis—much less documents that contradict their proffered opinions.  In fact, Plaintiffs'

5  quibbles that these experts do not show their work are incorrect.  Col. Shepard expressly explains

6  that "in [his] experience"—experience that involves personally witnessing threat actors using

7  encrypted messaging applications—"many encrypted messaging application providers such as

8  WhatsApp do not help the government obtain access to encrypted communications."  (Dkt. 505-

9  2, Ex. A ¶ 34; *see id.* ¶ 24).  And Mr. McGraw disclosed the source for his statement that the CEO

10 of Telegram was recently arrested for allowing his platform to be used for criminal activity (*see*

11 Dkt. 513-4, App'x 2 (citing AP News article on arrest of Telegram CEO))—and that arrest

12 manifestly supports his opinion that "WhatsApp and similar E2EE messaging platforms have been

13 used by all types of criminals and terrorists worldwide" (*id.* ¶ 152).

14    Dr. Vance should not be allowed to proffer his unsupported opinion that "Plaintiffs Comply

15 with All Lawful Government Data Requests."

16    **C.    Dr. Vance Unreliably Opines That Pegasus' Harms Outweigh Its Benefits.**

17    NSO further showed that Dr. Vance unreliably opines that "the harms caused by Pegasus

18 outweigh any supposed benefits."  (Mot. 16-17.)  Not only does Dr. Vance fail to identify any

19 benefits, but he applied no objective methodology for identifying and quantifying perceived harms

20 and no objective criteria for his "weighing" process.  Plaintiffs do not (and cannot) dispute that

21 Dr. Vance did not even try to identify any benefits of Pegasus, as that was beyond the scope of his

22 testimony and report.[4]  (Vance Tr. at 151:14-154:1, 222:4-12.)  On this basis alone, his opinion

23

24 [4] Had Dr. Vance undertaken this analysis, the record is replete with evidence of Pegasus's benefits.
   NSO testified that the three versions of Pegasus at issue were successfully used numerous times
25 by governments to fight crime and terrorism (*see* Dkt. 399-4 Ex. 6 at 82:14-83:10 (providing
   estimated figures regarding successful installations), and Plaintiffs have evidence regarding
26 approximately 1,400 of those target users (*see*, *e.g.*, Compl. ¶ 42) that Dr. Vance could have
   assessed for beneficial uses.  At a minimum, Dr. Vance could have assessed the same public reports
27 regarding beneficial uses of Pegasus as did NSO's experts (*see* Dkt. 572-4, Ex. A ¶¶ 54, 62), given
   that he relies on public reporting to cherry-pick potential misuses of the technology.
28

purporting to *weigh* benefits he did not even consider is inherently flawed and unreliable.

Plaintiffs' responses to the second and third flaws in Dr. Vance's "methodology" fail in any event.  (Opp. 23.)  While Plaintiffs contend Dr. Vance "researches, writes, and teaches" about this issue, Dr. Vance expressly *denied* ever researching or writing about the costs and benefits of tools like Pegasus.  (*See* Vance Tr. at 107:12-108:4 ("I do not talk about end-to-end encryption in my research" and "haven't written directly about that").)  Dr. Vance may have discussed these costs and benefits at a high level in his classes, but that does not make him an expert or his bottom-line conclusions reliable.  Plaintiffs cite no testimony—there is none—where Dr. Vance purports to explain *how* he selects which harms are relevant (he arbitrarily includes harms allegedly caused by NSO's clients) and *how* he "weighs" those harms against Pegasus' benefits (which he did not even consider).  (*See id.* at 212:13-217:1.)  The Ninth Circuit has explained that "'*any* step that renders the analysis unreliable . . . *renders the expert's testimony inadmissible*.'"  *Hardeman v. Monsanto Co.*, 997 F.3d 941, 961 n.12 (9th Cir. 2021) (citation omitted).  Here, two steps in Dr. Vance's methodology are unreliable and amount to nothing more than his own say-so.

**D.    Dr. Vance Unreliably Opines on an Executive Order He Has Not Even Read.**

NSO also showed (Mot. 17-18) that Dr. Vance unreliably opines that an executive order from the Biden Administration refutes NSO's experts' opinions on the use and benefits of tools such as Pegasus.  (*See* Vance Rebuttal § II.D.2, III.F.)  Plaintiffs do not dispute that Dr. Vance never actually considered the executive order on which he opines—he simply read a press release about it.  (*Id.* § II.D.2.)  Plaintiffs' apparent view (Opp. 24) that an expert can reliably opine on executive order he has not even read is wrong.  Dr. Vance must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. at 152.  This includes using materials "of the kind traditionally used by experts in the field."  *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002).  Neither Dr. Vance nor Plaintiffs point to any evidence that experts on U.S. military and intelligence policy traditionally read press releases on executive orders, rather than the executive orders themselves.  Plaintiffs have therefore failed to meet their burden of showing that this opinion is reliable.

1     **E.    Dr. Vance Unreliably Opines on Pegasus' Safeguards.**

2         Finally, NSO explained (Mot. 18) how Dr. Vance offers no reliable methodology for his

3     opinion that the "safeguards and policies of Pegasus are insufficient." (*See* Vance Rebuttal

4     § II.D.4.)  In addition to failing to identify any industry standards or practices in this area, Dr.

5     Vance could not answer what "guardrails for spyware" might be sufficient (Vance Tr. at 283:18-

6     284:1), and did not review any guardrails for NSO's government customers' use of Pegasus (*id.* at

7     219:23-220:15, 221:3-6).  Plaintiffs ignore the first two flaws in Dr. Vance's analysis—but the

8     unreliability of his analysis at these two steps, standing alone, "'renders [his] analysis unreliable'"

9     and his "'*testimony inadmissible*.'"  *Hardeman*, 997 F.3d at 961 n.12 (citation omitted).

10        Even as to the third step, Plaintiffs' suggestion that other evidence of NSO's guardrails was

11    not "available to" Dr. Vance is false.  (Opp. 25.)  Dr. Vance could have relied on the copious

12    evidence—including public reporting—cited in the reports of Mr. Minkler, Col. Shepard, and

13    NSO's former expert Jay Town.  (*See* Dkt. 572-4 Ex. A at 15 (Minkler Report); Dkt. 505-2 Ex. A,

14    App'x I (Shepard Report); Dkt. 480-2 Ex. A, ¶¶ 69-72 (Town Report).)  Dr. Vance also could have

15    relied on evidence of such guardrails from the materials he considered for his own report, such as

16    testimony from knowledgeable NSO executives and employees such as Shalev Hulio, Yaron

17    Shohat, and Tamir Gazneli.  (*See* Vance Report App'x A.)  Had he considered this evidence, he

18    could have undertaken a reliable analysis that weighed competing considerations, the costs of

19    implementing even more safeguards, and the risks and severity of any abuses by third parties.  But

20    he did not do that.  His unadorned assertion that NSO's safeguards are "insufficient" merely

21    because they have not completely eliminated third-party abuses is "'*ipse dixit*'" and should be

22    excluded accordingly.  *Domingo*, 289 F.3d at 607 (citation omitted).

23                                            **CONCLUSION**

24        NSO respectfully requests that the Court grant its motion.

25    DATED: March 27, 2025                    KING & SPALDING LLP

26                                             By: */s/Joseph N. Akrotirianakis*

27                                                 JOSEPH N. AKROTIRIANAKIS
                                                   AARON S. CRAIG
28                                                 Attorneys for Defendants