1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
   *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
   *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1600
4  Los Angeles, CA 90071
   Telephone:    (213) 443-4355
5  Facsimile:    (213) 443-4310

6  Attorneys for Defendants NSO GROUP TECHNOLOGIES
   LIMITED and Q CYBER TECHNOLOGIES LIMITED
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  OAKLAND DIVISION

11  WHATSAPP INC., a Delaware corporation,    Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
12  corporation,                              **OPPOSITION TO PLAINTIFFS'
                                              MOTIONS *IN LIMINE***
13              Plaintiffs,
                                              Date:    April 10, 2025
14        v.                                  Time:    2:00 p.m.
                                              Place:   Courtroom 3, Ronald V. Dellums
15  NSO GROUP TECHNOLOGIES LIMITED                     Federal Building & U.S. Courthouse,
    and Q CYBER TECHNOLOGIES LIMITED,                  1301 Clay Street, Oakland, California
16
                Defendants.                   Judge:   Hon. Phyllis J. Hamilton
17

18                                            Action Filed: October 29, 2019
19

20

21

22

23

24

25

26

27

28

---

DEFENDANTS' OPPOSITION TO                                Case No. 4:19-cv-07123-PJH
PLAINTIFFS' MILS

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

OPPOSITION TO PLAINTIFFS' MIL NO. 1 ........................................................................ 2

OPPOSITION TO PLAINTIFFS' MIL NO. 2 ........................................................................ 8

OPPOSITION TO PLAINTIFFS' MIL NO. 3 ...................................................................... 11

OPPOSITION TO PLAINTIFFS' MIL NO. 4 ...................................................................... 13

OPPOSITION TO PLAINTIFFS' MIL NO. 5 ...................................................................... 15

OPPOSITION TO PLAINTIFFS' MIL NO. 6 ...................................................................... 17

OPPOSITION TO PLAINTIFFS' MIL NO. 7 ...................................................................... 19

OPPOSITION TO PLAINTIFFS' MIL NO. 8 ...................................................................... 20

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aidini v. Costco Wholesale Corp.*,
2017 WL 10775082 (D. Nev. Apr. 12, 2017) ............................................................................9

*Bader Farms, Inc. v. BASF Corp.*,
39 F.4th 954 (8th Cir. 2022) ...................................................................................................14

*In re Bard IVC Filters Prods. Liab. Litig.*,
2018 WL 934795 (D. Ariz. Feb. 15, 2018) ..................................................................... *passim*

*Bollinger v. Oregon*,
305 F. App'x 344 (9th Cir. 2008) ..............................................................................................5

*Bryant v. OptumRX Pharm., Inc.*,
2017 WL 5714721 (C.D. Cal. May 10, 2017) ..........................................................................4

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
2017 WL 1215838 (S.D. Cal. Apr. 3, 2017) .............................................................................6

*Chiu v. Wadsworth*,
2003 WL 150095 (Cal. Ct. App. Jan. 22, 2003) ....................................................................14

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
532 U.S. 424 (2001) ...............................................................................................................25

*Creative Computing v. Getloaded.com LLC*,
386 F.3d 930 (9th Cir. 2004) ..................................................................................................16

*Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*,
2023 WL 9687511 (C.D. Cal. Dec. 15, 2023) ........................................................................20

*Doe v. Bridges to Recovery, LLC*,
2020 WL 12918321 (C.D. Cal. Apr. 22, 2020) ........................................................................9

*Doe v. Bridges to Recovery, LLC*,
2021 WL 4690830 (C.D. Cal. May 19, 2021) ..........................................................................9

*In re Facebook Biometric Info. Privacy Litig.*,
No. 15-cv-03747 (N.D. Cal.) ...................................................................................................19

*In re Facebook Privacy Litig.*,
No. 10-cv-02389 (N.D. Cal.) ...................................................................................................20

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
No. 3:18-md-02843 (N.D. Cal.) ...............................................................................................19

*In re Facebook, Inc. Internet Tracking Litig.*,
   No. 5:12-md-02314 (N.D. Cal.)........................................................................20

*In re Facebook, Inc. Sec. Litig.*,
   No. 5:18-cv-01725 (N.D. Cal.) ........................................................................19

*Forbes v. Cty. of Orange*,
   2013 WL 12165672 (C.D. Cal. Aug. 4, 2023)..................................................20

*Gametech Int'l, Inc. v. Trend Gaming Sys., LLC*,
   232 F. App'x 676 (9th Cir. 2007) .......................................................................5

*Gardner v. Fed. Express Corp.*
   2015 WL 5821428 (N.D. Cal. Oct. 6, 2015).....................................................17

*Giganews, Inc. v. Perfect 10, Inc.*,
   2017 WL 10560607 (C.D. Cal. Nov. 27, 2017)................................................10

*Giganews, Inc. v. Perfect 10, Inc.*,
   2019 WL 1422723 (C.D. Cal. Mar. 13, 2019) ..................................................10

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
   508 F. Supp. 2d 295 (D. Vt. 2007)....................................................................23

*Green v. Howser*,
   942 F.3d 772 (7th Cir. 2019) ............................................................................14

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ...........................................................5, 10, 18, 21

*Hovey v. Ayers*,
   458 F.3d 892 (9th Cir. 2006) ............................................................................22

*Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*,
   185 F. Supp. 2d 1103 (C.D. Cal. 2001) ............................................................23

*J.C. v. Cty. of L.A.*,
   2020 WL 2124027 (C.D. Cal. Feb. 11, 2020)...........................................3, 13, 17

*Krause v. Hawaiian Airlines, Inc.*,
   2019 WL 13225251 (E.D. Cal. June 7, 2019) ..................................................23

*L.D. v. EzyRoller, LLC*,
   2024 WL 5416670 (C.D. Cal. Nov. 25, 2024)..........................................4, 8, 17

*In re Leap Wireless Int'l, Inc.*,
   301 B.R. 80 (Bankr. S.D. Cal. 2003) ..........................................................22, 23

*Mindlab Media, LLC v. LWRC Int'l, LLC*,
   2013 WL 1688309 ............................................................................................20

*Mitchell v. City of Tukwila,*
  2013 WL 6631898 (W.D. Wash. Dec. 17, 2013) ..................................................................4

*Multimedia Patent Trust v. Apple Inc.,*
  2012 WL 12868264 (S.D. Cal. Nov. 20, 2012) ............................................................4, 7, 11

*Nigro v. Sears, Roebuck & Co.,*
  784 F.3d 495 (9th Cir. 2015) ...............................................................................................7

*Old Chief v. United States,*
  519 U.S. 172 (1997) ...........................................................................................................19

*Philip Morris USA v. Williams,*
  549 U.S. 346 (2007) ...........................................................................................................21

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress,*
  480 F. Supp. 3d 1000 (N.D. Cal. 2019) .........................................................................10, 11

*Retamosa v. Target Corp.,*
  2021 WL 4499236 (C.D. Cal. May 4, 2021) .................................................................9, 25

*Rogers v. Raymark Indus., Inc.,*
  922 F.2d 1426 (9th Cir. 1991) ..........................................................................................22

*Rubalcava v. City of San Jose,*
  2024 WL 2031641 (N.D. Cal. May 6, 2024) ...................................................................12

*Sabo v. Fiskars Bands, Inc.,*
  2015 WL 12750276 (D. Idaho Dec. 4, 2015) .....................................................................4

*Saenz v. Reeves,*
  2013 WL 2481733 (E.D. Cal. June 10, 2013) ....................................................................4

*Seal4safti, Inc. v. Cal. Expanded Metal Prods. Co.,*
  2022 WL 2199031 (C.D. Cal. Jan. 19, 2022) .................................................................7, 8

*Seals v. Mitchell,*
  2011 WL 1399245 (N. D. Cal. Apr. 13, 2011) .................................................................20

*Serna v. Costco Wholesale Corp.,*
  2024 WL 4720884 (C.D. Cal. Sept. 16, 2024) ..............................................................9, 25

*Sidibe v. Sutter Health,*
  103 F.4th 675 (9th Cir. 2024) ..............................................................................................6

*Sugar Ass'n, Inc. v. McNeil-PPC, Inc.,*
  2008 WL 4755611 (C.D. Cal. Jan. 7, 2008) ......................................................................6

*United States v. Butler,*
  2025 WL 621892 (N.D. Cal. Feb. 26, 2025) ......................................................................4

*United States v. Facebook, Inc.*,
No. 19-cv-2184 (D.D.C.) ...................................................................................19

*United States v. Haischer*,
780 F.3d 1277 (9th Cir. 2015) ......................................................................6, 18

*United States v. Middleton*,
231 F.3d 1207 (9th Cir. 2000) ............................................................................15

*United States v. Ward*,
747 F.3d 1184 (9th Cir. 2014) ............................................................................18

*V3 World Mgmt., Inc. v. Synergy Worldwide, Inc.*,
2019 WL 2325968 (D. Utah May 31, 2019)........................................................23

*Valentine v. Gen. Nutrition Ctrs.*,
2010 WL 11596537 (C.D. Cal. Apr. 16, 2010) .....................................................7

*Van Buren v. United States*,
593 U.S. 374 (2021)..............................................................................................15

*R.V. ex rel. Venancio v. Walmart, Inc.*,
2024 WL 3526873 (C.D. Cal. July 22, 2024).........................................................9

*W. Watersheds Proj. v. Abbey*,
719 F.3d 1035 (9th Cir. 2013) ...........................................................................2, 5

*Walker v. Life Ins. Co. of the Sw.*,
2014 WL 12577139 (C.D. Cal. Apr. 3, 2014) ......................................................12

*Waymo LLC v. Uber Techs., Inc.*,
2018 WL 646701 (N.D. Cal. Jan. 30, 2018) .....................................................9, 10

*Yang Ming Marine Transp. Corp. v. Okamoto Freighters Ltd.*,
259 F.3d 1086 (9th Cir. 2001) ..........................................................................1, 16

**Statutes**

18 U.S.C. § 1030.....................................................................................1, 14, 15, 16

Cal. Civ. Code § 3294(c) ............................................................................................5

Cal. Civ. Code § 3300 .................................................................................................1

Cal. Penal Code § 502(e)(1)...............................................................................1, 16

**Other Authorities**

Fed. R. Evid. 401 ...................................................................................................5, 14

Fed. R. Evid. 403 ....................................................................................... *passim*

Fed. R. Evid. 404 ...................................................................................................................20

## **INTRODUCTION**

Plaintiffs' motions *in limine* ("MILs") represent a brazen attempt to deprive NSO of any opportunity to defend itself at trial.  Plaintiffs seek to pursue a claim for compensatory damages while prohibiting NSO from arguing that it did not cause all of those alleged damages, that Plaintiffs did not act reasonably in incurring all of their alleged damages, or that Plaintiffs did not reasonably attempt to mitigate their damages.  Plaintiffs seek to pursue a claim for punitive damages by claiming NSO acted with oppressive, fraudulent, or malicious intent, while prohibiting NSO from proving or arguing that it lacked such intent.  And Plaintiffs seek injunctive relief while prohibiting NSO from proving or arguing that the overbroad injunction Plaintiffs seek is unnecessary to prevent harm to Plaintiffs and would undermine important public interests.  The "show" trial Plaintiffs envisage is one in which they inflame the jury against NSO by accusing it of all sorts of intentional, dangerous misconduct, and NSO is not allowed to say *anything* in response.

Such a one-sided show trial would obviously benefit Plaintiffs, but it would be unlawful and grossly unfair to NSO.  The evidence Plaintiffs seek to exclude does not violate any rule of evidence, and it is directly relevant to the remaining issues for trial.

***First***, the evidence is relevant to compensatory damages.  For all of their claims, Plaintiffs may recover only "reasonable" costs caused by NSO.  18 U.S.C. § 1030(c)(4)(A), (e)(11), (g); Cal. Penal Code § 502(e)(1); Cal. Civ. Code § 3300.  In addition, Plaintiffs cannot recover contract damages for costs they reasonably could have avoided or mitigated.  *E.g. Yang Ming Marine Transp. Corp. v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1095 (9th Cir. 2001).  The evidence they seek to exclude goes directly to whether they actually incurred all the costs they seek, whether they reasonably incurred or mitigated those costs, and whether NSO caused those costs.

***Second***, the evidence is relevant to punitive damages.  To receive punitive damages, Plaintiffs must prove NSO acted willfully and "prove[] by clear and convincing evidence that [NSO] has been guilty of oppression, fraud, or malice."  Cal. Penal Code § 502(e)(4).  The jury thus will need to decide (among other things) whether NSO intended to harm others, disregarded their safety, or engaged in objectively despicable conduct.  *See, e.g.*, Cal. Civ. Code § 3294(c) (defining "malice," "oppression," and "fraud").  The evidence Plaintiffs seek to exclude is directly

relevant to whether NSO acted with the intent necessary to support a claim for punitive damages by designing a government surveillance technology that harmlessly used WhatsApp servers to further the investigation of suspected criminals and terrorists.

**Third**, the evidence is relevant to injunctive relief. Although injunctive relief is an issue for the Court, related evidence should be presented if the Court intends to hold an evidentiary hearing concurrently with the trial or to submit special interrogatories to the jury. (*See* Dkt. 577 at 2.) To receive injunctive relief, Plaintiffs must prove (1) they "suffered an irreparable injury," (2) damages are "inadequate to compensate for that injury," (3) the "balance of hardships" support an injunction, and (4) "the public interest would not be disserved by a permanent injunction." *W. Watersheds Proj. v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013). The evidence Plaintiffs seek to exclude is relevant to whether they can satisfy any of those elements. (*See generally* Dkt. 604-2.)

For these reasons, plus the others below, the Court should deny all of Plaintiffs' MILs.

## OPPOSITION TO PLAINTIFFS' MIL NO. 1

### NSO's Customers

Plaintiffs' MIL No. 1, in combination with their MIL No. 2, seeks to create a show trial in which Plaintiffs make inflammatory and untrue accusations about NSO, its conduct, and its intentions, while NSO is prohibited from providing the jury with even the most basic information about its business and technology. Such a one-sided trial has no basis in the law, the record, or basic fairness. To defend itself at trial and make the case comprehensible to the jury, NSO must be able to rebut Plaintiffs' self-serving narrative and explain the nature of its business and technology, including the undisputed fact that NSO licenses its technology exclusively to sovereign governments and government agencies. The Court should deny Plaintiffs' MIL No. 1.

Plaintiffs misrepresent the history of discovery into this issue. NSO has not taken the position that "[w]hether Pegasus was used by foreign governments, militaries, or law enforcement agencies" is irrelevant. (Mot. 2.) NSO argued that the *precise identities* of those governments were insufficiently *important* to override NSO's Israeli-law obligations, and this Court agreed. (Dkt. 292 at 5.) But NSO has long maintained that the *fact* that its only customers are governments is relevant. This Court recognized that NSO has "raised the actions of [its] third-party clients as a

defense," so the Court permitted Plaintiffs "to discover information about what actions were taken by those third parties." (*Id.*[1])  NSO is thus entitled to explain its business and technology through "generalized evidence that its software was licensed for law enforcement purposes." (Dkt. 305 at 6.)

Plaintiffs do not claim NSO has withheld discovery into the fact *that* its customers are exclusively governments and government agencies.  NSO witnesses with personal knowledge uniformly testified that NSO licenses Pegasus only to governments.  (*E.g.*, Dkt. 396-3 ¶¶ 5-14; Dkt. 396-5, Exh. H at 138:12-15; *id.*, Exh. I at 93:13-19.)  NSO also produced examples of its customer contracts, which (while redacting customer identities) make clear that the customers are governments who may only use Pegasus for the prevention and investigation of crimes and terrorism.  (*E.g.*, Dkt. 396-3 ¶ 10, Exhs. A-B.)  Even as to specific customers, fact and expert witnesses have identified multiple such customers by name.  (*See, e.g.*, Dkt. 396-5, Exh. G at 177:2-10; Dkt. 418-5, Exh. 30 at 217:3-13; Dkt. 616-2 at 5.)  Plaintiffs' own documents identify at least four countries as NSO customers.  (Dkt. 396-5, Exhs. S-V.)  NSO's customers have also been discussed in public news reports on which the parties' experts may rely.  (*E.g.*, Dkt. 612-2 at 13-14, 18-19; Dkt. 616-2 at 10-11.)  And NSO has produced documents showing the FBI's licensing of Pegasus, in addition to testimony from witnesses with first-hand knowledge of the FBI's and license.  (*E.g.*, Dkt. 396-5, Exh. G at 264:7-18, 332:3-333:21; *id.*, Exhs. N, O.)[2]  It is, in short, undisputed that NSO licenses Pegasus exclusively to government entities.  Plaintiffs want to hide that fact from the jury so that they can insinuate, falsely and without evidence, that NSO either uses Pegasus itself or licenses its technology to private actors for pecuniary gain.  While the truth may be inconvenient for Plaintiffs, that truth is neither irrelevant nor unduly prejudicial.

Evidence that NSO's customers are exclusively governments and government agencies is relevant to multiple issues at trial.  Most fundamentally, that evidence will "contextualize the case for the jury and provide necessary background."  *J.C. v. Cty. of L.A.*, 2020 WL 2124027, at *2

---

[1] The Court also noted that Plaintiffs had refused NSO's "offer[] to stipulate that Pegasus has been used by its government customers to obtain information from target devices." (*Id.* (cleaned up).)

[2] The FBI has publicly admitted to licensing Pegasus.  *E.g.*, Yonah Jeremy Bob, *FBI Chief: We Bought NSO's Pegasus to Do Counterintelligence*, The Jerusalem Post (Mar. 8, 2022), https://www.jpost.com/international/article-700689.

(C.D. Cal. Feb. 11, 2020).  Plaintiffs will spend the trial accusing Pegasus of being dangerous "spyware" and NSO of being a rogue "hacker" out to steal (or help others to steal) innocent civilians' private data.  (*See* Dkt. 595 at 2, 10-12; Mot. 2-3.)  To counter that narrative, NSO must introduce its own evidence of why it created Pegasus and Pegasus' intended use.  *See L.D. v. EzyRoller, LLC*, 2024 WL 5416670, at *4 (C.D. Cal. Nov. 25, 2024) (defendant's "motivations for creating the product" at issue, "as well as the context underlying [its] creation," were "relevant background"); *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2 (D. Ariz. Feb. 15, 2018) (denying MIL to exclude "evidence regarding the nature, quality, and usefulness of [defendants'] products . . . and the fact that their products are designed to promote health and saves lives" because "evidence regarding the nature of [d]efendants' business is relevant to the jury's understanding of the issues" and necessary "to rebut [p]laintiffs' themes").  Plaintiffs cannot properly ask this Court to exclude "evidence [that] shows the context of the events that are at the heart of this case."  *Mitchell v. City of Tukwila*, 2013 WL 6631898, at *2 (W.D. Wash. Dec. 17, 2013).[3]

Evidence that NSO's customers are exclusively governments and government agencies is also relevant to punitive damages.  Even if Plaintiffs were correct that evidence relevant to punitive damages is limited to evidence of "the conduct which gave rise to liability" (Mot. 2[4]), the conduct for which NSO was found liable includes the April-May 2019 use, by NSO's sovereign customers, of a government surveillance technology that briefly functioned in part by sending messages through WhatsApp servers.  Whether Plaintiffs are entitled to punitive damages thus depends on NSO's *intent* in designing, testing, and licensing that technology—whether NSO engaged in that

---

[3] *See also United States v. Butler*, 2025 WL 621892, at *1 (N.D. Cal. Feb. 26, 2025) (denying MIL to exclude "statements [that] are needed for context"); *Bryant v. OptumRX Pharm., Inc.*, 2017 WL 5714721, at *2 (C.D. Cal. May 10, 2017) (admitting "background facts"); *Saenz v. Reeves*, 2013 WL 2481733, at *5 (E.D. Cal. June 10, 2013) (holding party "should not be precluded from offering background facts regarding the events at issue"); *Multimedia Patent Trust v. Apple Inc.*, 2012 WL 12868264, at *2 (S.D. Cal. Nov. 20, 2012) (denying MIL because "the parties in this case should be able to present themselves to the jury and give a general background of their company"); *Sabo v. Fiskars Bands, Inc.*, 2015 WL 12750276, at *9 (D. Idaho Dec. 4, 2015) (finding evidence "relevant" because it "provides context to the facts of the case").

[4] Plaintiffs cite no case excluding or limiting evidence on this basis.  They cite only general descriptions of the standard for awarding punitive damages.

conduct willfully and with malicious, oppressive, or fraudulent intent.  Cal. Penal Code § 502(e)(4).

And *that* depends (among other things) on whether NSO acted with the purpose of injuring Plaintiffs

or depriving them of property, whether NSO's conduct was "despicable," and whether NSO

disregarded known risks of harm.  Cal. Civ. Code § 3294(c); *Hardeman v. Monsanto Co.*, 997 F.3d

941, 971 (9th Cir. 2021).  Evidence related to NSO's government customers bears on all those issues.

Plaintiffs will tell the jury that it should award them punitive damages because NSO

peddles "spyware" that "posed a substantial risk of harm to thousands of WhatsApp users."  (Dkt.

595 at 2, 10-12.)  NSO must be able to respond by proving that, in fact, it designed and licensed

surveillance technology solely for investigatory use by governments and government agencies

approved by Israel's defense ministry.  *In re Bard*, 2018 WL 934795, at *2.  Such evidence is

relevant because it makes "less probable," Fed. R. Evid. 401, the conclusion that NSO used

WhatsApp servers despicably or with malicious, oppressive, or fraudulent intent as opposed to

with the intent of helping governments protect their citizens from crimes and terrorism.  *See*

*Bollinger v. Oregon*, 305 F. App'x 344, 345 (9th Cir. 2008) ("[D]efendants' testimony about their

mental states and subjective beliefs was relevant and admissible because [plaintiff sought punitive

damages]."); *Hardeman*, 997 F.3d at 971 (intent "can be 'proved either expressly through direct

evidence or by implication through indirect evidence'").

For similar reasons, evidence that NSO's customers are exclusively governments and

government agencies is relevant to injunctive relief.  To receive an injunction, Plaintiffs must

prove, among other things, "that the public interest would not be disserved by" an injunction.  *W.*

*Watersheds Proj.,* 719 F.3d at 1054.  The balance of public interests would look quite different if

NSO carelessly licensed its technology to any private actor willing to pay, as compared to the truth

that NSO licenses its technology only to vetted and approved governments.  Evidence that an

injunction would interfere with such governments' law-enforcement, counterterrorism, and

intelligence investigations plainly bears on whether the injunction disserves the public interest.

The clear probative value of this evidence is not outweighed—much less "substantially"

so—by any risk of "unfair prejudice."  Fed. R. Evid. 403.  Exclusion under Rule 403 "is an

extraordinary remedy to be used sparingly." *Gametech Int'l, Inc. v. Trend Gaming Sys., LLC*, 232

F. App'x 676, 678 (9th Cir. 2007) (cleaned up).  For Rule 403 to apply, "the danger of [unfair] prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *Id.* (cleaned up).  Evidence that NSO's customers are governments and government agencies comes nowhere close to satisfying that stringent test.  Allowing the parties "to present themselves to the jury and give a general background of themselves" does not threaten "any undue prejudice." *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 2017 WL 1215838, at *18 (S.D. Cal. Apr. 3, 2017).  And allowing NSO to counter Plaintiffs' attacks on NSO's conduct and intentions is "prejudicial" only in the sense that *all* "[r]elevant evidence is inherently prejudicial." *Sidibe v. Sutter Health*, 103 F.4th 675, 702 (9th Cir. 2024) (cleaned up).  If NSO's evidence makes an award of punitive damages less likely, that is because it is *relevant*—not because it is unfairly prejudicial. *See Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, 2008 WL 4755611, at *1 (C.D. Cal. Jan. 7, 2008) ("That evidence may decimate an opponent's case is no ground for its exclusion under Rule 403." (cleaned up)).[5]  By contrast, exclusion would unfairly prejudice NSO by allowing Plaintiffs to inflame the jury's emotions against NSO without any response.

Plaintiffs argue otherwise only by claiming that "NSO has provided no factual basis to allege the identities of any of its customers" (Mot. 3), which is false for the reasons discussed above.  In light of the undisputed evidence that NSO licenses Pegasus only to governments and does not operate Pegasus itself, it simply is not true that Pegasus's use of WhatsApp "servers was not authorized by any law enforcement agency." (Mot. 2.)  (Plaintiffs cite no evidence for their contrary assertion.)  Nor is it true that Plaintiffs seek to hold only "NSO, not its customers," liable. (Mot. 2.)  Plaintiffs do not challenge merely NSO's initial design and testing of Pegasus.  The damages Plaintiffs seek were all allegedly caused by NSO's customers' *use* of Pegasus to access roughly 1,400 user devices.  Because Plaintiffs claim NSO should pay damages for its customers' uses of Pegasus, NSO is entitled to introduce evidence about its customers' governmental status and the purposes for which they use Pegasus.  (Dkt. 292 at 5; Dkt. 305 at 6.)

---

[5] *Cf. United States v. Haischer*,  780 F.3d 1277, 1282 (9th Cir. 2015) ("Probative evidence that incidentally happens to make a . . . defendant more sympathetic is not properly subject to exclusion under Rule 403.").

Finally, Meta's attempt to license Pegasus is admissible and relevant. NSO has evidence of this attempt,[6] some of which has been presented to the Court through a declaration from a witness with personal knowledge that Facebook (now Meta) approached NSO to license Pegasus but was refused. (Dkt. No. 45-11 ¶ 10.) Plaintiffs characterize that declaration as "self-serving" (Mot. 3), but "declarations are often self-serving," and "properly so." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). Because the testimony about Facebook's licensing attempt is "based on personal knowledge, legally relevant, and internally consistent," it may not be excluded even if it were "uncorroborated and self-serving." *Id.* at 498. Whether to "discount[]" such testimony "is properly a task left to the jury, not the Court." *Valentine v. Gen. Nutrition Ctrs.*, 2010 WL 11596537, at *6 (C.D. Cal. Apr. 16, 2010); *see Seal4safti, Inc. v. Cal. Expanded Metal Prods. Co.*, 2022 WL 2199031, at *10-11 (C.D. Cal. Jan. 19, 2022) (whether testimony is "self-serving" or "unreliable" is a "topic[] for cross-examination"). The testimony corroborates the fact that NSO licenses only to governments. It is relevant to compensatory damages because it suggests Plaintiffs knew about Pegasus before 2019 but did not take reasonable steps to avoid their claimed harms. And it is relevant to punitive damages because Meta's attempt to license Pegasus undermines Plaintiffs' trial themes that Pegasus is reprehensible "spyware." Plaintiffs should not be permitted to smear NSO's technology while hiding the fact that Plaintiffs tried to license it.

At a minimum, Plaintiffs' blanket request to exclude *all* evidence and argument about NSO's customers is too broad and general to be resolved through an MIL. This Court's Civil Pretrial Instructions limit MILs to "motions to exclude specific items of evidence." (Dkt. 168 § A(9).) Plaintiffs, by contrast, seek to exclude an entire broad category of evidence and arguments that vary widely in their content. That is improper. If Plaintiffs believe particular pieces of evidence or argument about the government nature of NSO's customers should be excluded, Plaintiffs may object to them on a case-by-case basis at trial. *See Multimedia Patent Trust*, 2012 WL 12868264, at *2 (denying MIL to exclude background evidence because "the exclusion of this

---

[6] Plaintiffs never *sought* discovery into Facebook's attempt to license Pegasus, so they cannot in good faith accuse NSO of failing to provide such discovery. (Mot. 3.)

evidence should . . . be made on a case by case basis in th[e] trial").

### **OPPOSITION TO PLAINTIFFS' MIL NO. 2**

**Use of Pegasus to Investigate, Prevent, and Punish Terrorism and Serious Crime**

As with MIL No. 1, Plaintiffs' MIL No. 2 is an overbroad attempt to prohibit NSO from providing the jury basic background information about NSO's business and technology that NSO needs to rebut Plaintiffs' inflammatory trial themes. The Court should deny that request.

Plaintiffs first misstate the record. NSO has introduced undisputed evidence that it licenses Pegasus solely for governments to investigate, prevent, and punish serious crime. (*E.g.*, Dkt. 396-3 ¶¶ 9, 12, 14-16, Exhs. A-B.) NSO contractually requires its customers to use Pegasus only for those purposes, and it suspends or terminates customers who do not do so. (*E.g.*, Dkt. 396-3 ¶¶ 12, Exh. A ¶ 18.5, Exh. B ¶ 19.5; Dkt. 396-5, Exh. H at 21:16-25, 26:23-31:17, 181:10-15.) NSO's expert witnesses have first-hand experience with governments using Pegasus or similar technology for exactly those purposes. (*E.g.*, Dkt. 612-2 at 10-20; Dkt. 616-2 at 4, 10-12; Dkt. 619-2 at 14-15.) Public news reports, on which the parties' experts may rely in appropriate circumstances, likewise confirm the use of Pegasus for law-enforcement purposes. (*E.g.*, Dkt. 612-2 at 13-14, 18-19; Dkt. 616-2 at 10-11.) If Plaintiffs want to challenge this evidence, they may do so through "cross-examination, not exclusion." *Seal4safti*, 2022 WL 2199031, at *11.

Evidence that NSO designed Pegasus to be used to investigate serious crime and terrorism—and that governments in fact use Pegasus for that purpose—is relevant background evidence that NSO needs to provide context to the jury and respond to Plaintiffs' trial narrative. (*Supra* 3-4); *e.g.*, *EzyRoller*, 2024 WL 5416670, at *4; *In re Bard*, 2018 WL 934795, at *2. Such evidence is also relevant to punitive damages and injunctive relief. NSO's purpose in designing and licensing Pegasus goes directly to whether NSO used WhatsApp servers with the despicable intent required for punitive damages or with the noble intention of helping governments protect their citizens from crimes and terrorism. (*Supra* 4-5.) And the fact that governments use NSO's technology for important and beneficial investigations goes directly to whether the injunction Plaintiffs seek would disserve the public interest. (*Supra* 5.) Plaintiffs would suffer no "unfair prejudice" from such evidence, much less unfair prejudice that "substantially outweighs" the

evidence's significant probative value.  Fed. R. Evid. 403; (*see supra* 5-6).  Allowing Plaintiffs to present only their side of the story, however, would gravely and unfairly prejudice NSO.

Plaintiffs cite no case to the contrary.  Several of the cases they cite addressed specifically "Golden Rule" or "Reptile" arguments, which are arguments *plaintiffs* make in personal injury cases that the jury should subject *defendants* to "a heightened standard of care" of a "concern for community safety."  *Serna v. Costco Wholesale Corp.*, 2024 WL 4720884, at *3 (C.D. Cal. Sept. 16, 2024); *accord Retamosa v. Target Corp.*, 2021 WL 4499236, at *1 (C.D. Cal. May 4, 2021).[7] The evidence and arguments Plaintiffs seek to exclude are not "Golden Rule" or "Reptile" arguments.  Even if they were, courts strongly disfavor motions that, like Plaintiffs' MIL, seek to exclude such arguments through "a broad prospective order untethered to any specific statements the other side will make."  *Aidini*, 2017 WL 10775082, at *1.[8]

Plaintiffs mischaracterize *Doe v. Bridges to Recovery, LLC*, 2021 WL 4690830 (C.D. Cal. May 19, 2021), which did not exclude evidence related to "the issue of 'sexual exploitation,'" let alone do so on grounds relevant to this case.  (Mot. 6.)  *Doe* was a personal injury case in which the plaintiff accused her doctor of sexual abuse.  *Doe v. Bridges to Recovery, LLC*, 2020 WL 12918321, at *1 (C.D. Cal. Apr. 22, 2020). The court precluded the plaintiff's expert from "*characteriz[ing]* the [doctor's] conduct as 'sexual exploitation'" because "[i]t [was] the jury's task to decide whether [his] conduct rose to that level."  2021 WL 4690830, at *8 (emphasis added).  But the court allowed the expert to testify on that *issue* by "opin[ing] that [the plaintiff] lacked capacity to consent" and "explain[ing] the facts that support that opinion."  *Id.*  Here, the purpose for which NSO designed and governments use Pegasus is not among the ultimate questions the jury must decide, but it is relevant to factual questions directly bearing on the right to punitive damages.[9]

---

[7] A "reptile" argument is one in which a plaintiff seeks to poison the jury through "venomous remarks" about the defendant.  *Aidini v. Costco Wholesale Corp.*, 2017 WL 10775082, at *1 (D. Nev. Apr. 12, 2017).  Plaintiffs are the ones making arguments like that in this case.

[8] *See also R.V. ex rel. Venancio v. Walmart, Inc.*, 2024 WL 3526873, at *7 (C.D. Cal. July 22, 2024) (denying MIL to "bar any 'Golden Rule' or 'Reptile' theory arguments").

[9] *Waymo LLC v. Uber Techs., Inc.*, 2018 WL 646701, at *21-22 (N.D. Cal. Jan. 30, 2018),

Plaintiffs also mischaracterize *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 480 F. Supp. 3d 1000, 1007 (N.D. Cal. 2019), in which the plaintiffs sued the defendants for secretly filming the plaintiffs' staff members.  The court precluded the defendants from arguing that their videos exposed illegal conduct *by the plaintiffs* because the plaintiffs had dropped any claim to which the videos' "newsworthiness and social utility" could be relevant.  *Id.* at 1010-11.  The court also held that the videos' contents were not relevant to the defendants' intent in filming them, which had to be "established based on evidence defendants knew . . . prior to the first surreptitious recording."  *Id.* at 1011.  But the court allowed the defendants to "present evidence of what they knew, what they believed, and how they carried out their journalistic endeavors . . . consistent with their intent."  *Id.*  The court also denied the plaintiffs' motion to preclude the defendants from "characteriz[ing] their conduct as a journalistic enterprise" because that narrative was "central to the context of and the background to th[e] case."  *Id.* at 1010.[10]

Unlike in *Planned Parenthood*, NSO does not accuse Plaintiffs of a crime.  NSO seeks only to prove its intent in designing and licensing Pegasus, and the purpose for which NSO licenses and its government customers use Pegasus is relevant to that intent.  Unlike in *Planned Parenthood*, which excluded evidence that could not reveal anything about the relevant intent, the evidence here either predates or supports "by implication" NSO's theory of its intent in designing and licensing Pegasus.  *Hardeman*, 997 F.3d at 971.  And, unlike in *Planned Parenthood*, the "social utility" of NSO's technology, 480 F. Supp. 3d at 1010, is relevant to whether NSO's conduct was reprehensible and to whether an injunction would disserve the public interest.  The

---

precluded the plaintiff from accusing the defendant of discovery misconduct based on its "consideration of an . . . [i]nitiative to review its process for retaining documents" that it "*never implemented*."  NSO does not accuse Plaintiffs of misconduct.  If anything, *Waymo* supports NSO's MIL No. 10 to exclude *Plaintiffs'* attempts "to poison the judge, if not the jury, against" NSO through a "litany of recurring grievances" that NSO "supposedly obstructed discovery."  *Id.*
[10] The plaintiff in *Giganews, Inc. v. Perfect 10, Inc.*, 2019 WL 1422723 (C.D. Cal. Mar. 13, 2019), sued the defendant for fraudulently transferring assets to avoid paying an earlier judgment for copyright infringement.  *See Giganews, Inc. v. Perfect 10, Inc.*, 2017 WL 10560607, at *1-2 (C.D. Cal. Nov. 27, 2017).  Whether "evidence that child pornography was uploaded to [the plaintiff's] servers" had no possible relevance to that fraudulent-transfer claim.  2019 WL 1422723, at *5.  By contrast, the facts that criminals use WhatsApp to commit crimes and that governments use Pegasus to investigate those crimes are relevant to Plaintiffs' requested remedies.

1   purpose and use of Pegasus is also "central to the context of and the background to this case" and

2   necessary to counter Plaintiffs' "narratives." *Id.* Even under *Planned Parenthood*, therefore, the

3   evidence Plaintiffs challenge is relevant and not excludable under Rule 403.

4        Finally, *In re Bard* **rejected** arguments akin to Plaintiffs' by denying an MIL to exclude

5   "evidence regarding the nature, quality, and usefulness of [defendants'] products, the

6   conscientiousness of their employees, references to their mission statement, and the fact that their

7   products are designed to promote health and saves lives." 2018 WL 934795, at *2. The court held

8   that "evidence regarding the nature of [d]efendants' business is relevant to the jury's understanding

9   of the issues in this case," and that the defendants "must be permitted to rebut [p]laintiffs' themes

10  . . . that [d]efendants knowingly disregarded [public] safety." *Id.* The court held it would "draw

11  appropriate lines" as to relevance "on the basis of objections made during trial." *Id.*

12       This Court should take the same approach here. Evidence of the purposes for which NSO

13  designed Pegasus and for which NSO's government customers use Pegasus is "relevant to the

14  jury's understanding of the issues" and essential "to rebut Plaintiffs' themes." *Id.* If Plaintiffs

15  believe that individual pieces of evidence or argument are objectionable, the Court may address

16  those objections on a case-by-case basis at trial. But Plaintiffs are not entitled to blanket exclusion

17  through an MIL. *Id.*; *Multimedia Patent Trust*, 2012 WL 12868264, at *2.

18                    **OPPOSITION TO PLAINTIFFS' MIL NO. 3**

19                         **NSO's Customer Due Diligence**

20       The Court should reject Plaintiffs' MIL No. 3 to exclude evidence and argument about

21  NSO's screening of its potential customers and regulation of its existing customers' use of Pegasus.

22  Such evidence is clearly relevant to punitive damages, and Plaintiffs (contrary to what they now

23  argue) took discovery on NSO's due diligence practices, in response to which NSO produced

24  dozens of documents setting forth its policies and practices. Plaintiffs' MIL boils down to a

25  complaint that NSO should have produced the specific identities of its customers, even though the

26  Court ruled that it was not required to do so.

27       Evidence that NSO and the Government of Israel screen Pegasus customers, place use

28  restrictions on their licenses, and suspend or terminate licenses for misuse is relevant to punitive

damages.  As Plaintiffs' Trial Brief acknowledges, one factor for the jury to consider in assessing punitive damages is whether NSO consciously disregarded the rights or safety of others.  (Dkt. 595 at 10.)  NSO's screening and diligence process obviously makes it less probable that NSO consciously intended to harm others, disregard their safety, or engaged in objectively reprehensible conduct by licensing Pegasus to government agencies to use to fight crime and terrorism.  *See Rubalcava v. City of San Jose*, 2024 WL 2031641, at *10 (N.D. Cal. May 6, 2024) (finding evidence of defendant's policies "directly relevant" to intent for punitive damages); *Walker v. Life Ins. Co. of the Sw.*, 2014 WL 12577139, at *12 (C.D. Cal. Apr. 3, 2014) (finding evidence that defendant "believed" its conduct complied with "regulations" was "relevant to [its] intent . . . with respect to the availability of punitive damages").[11]  Moreover, the evidence is uniform that this screening and diligence process is applied to all NSO's potential government customers—which necessarily includes the governments that sought to surveil the roughly 1,400 investigatory targets identified by Plaintiffs.  (*E.g.*, Dkt. 45-11 ¶¶ 5-9, 11-13.)  NSO should not be precluded from providing this necessary background for the jury.  (*Supra* 3-4.)

Plaintiffs were not denied discovery on this topic.  The record is replete with evidence of NSO's and Israel's screening and regulation procedures, which were disclosed in sworn testimony at the very inception of this lawsuit.  (*See* Dkt. 45-11.)  NSO's witnesses have repeatedly testified to their personal knowledge of the procedures designed to prevent misuses of Pegasus and to the investigation of any alleged misuses.  (*E.g.*, Dkt. 45-11 ¶¶ 5-9, 11-13; Dkt 396-3 ¶¶ 5-15; Dkt. 396-5, Exh. G at 300:4-305:15; *id.*, Exh. H at 20-22, 25-32, 180-82.)  NSO's CEO also testified as a 30(b)(6) representative about investigations into alleged misuses.  (Dkt. 396-5, Exh. H at 25:20-26:1.)  NSO described the activities of its internal business ethics committee (including former high-ranking U.S. national security officials), the licensing process required by Israel, and the certifications obtained from any government customer.  (*E.g.*, Dkt. 399-4, Exh. 5 at 14-17.)  And NSO produced documents pertaining to its diligence processes, which its experts repeatedly

---

[11] NSO's due diligence practices are also relevant to injunctive relief.  The fact that NSO engages in substantial efforts to prevent misuse of its technology bears directly on whether an injunction is needed to protect Plaintiffs from future harm or to serve the public interest.

discuss in their disclosures.  (*E.g.*, Dkt. 572-4 Exh. A ¶¶ 28, 32-34 & App'x B.)  Ultimately, Plaintiffs' true complaint is that NSO did not produce privileged details of its investigations or name its customers, neither of which it was required to do.  (Dkt. 292 at 5.)[12]  There is thus no basis to exclude all evidence regarding NSO's and Israel's diligence processes.

*Third*, Plaintiffs fail to identify any actual "unfair prejudice" or "jury confusion" that evidence of NSO's due diligence practices could cause under Rule 403.  As discussed above, that evidence is far from speculative, and it is highly probative to whether Plaintiffs may recover punitive damages.

## **OPPOSITION TO PLAINTIFFS' MIL NO. 4**

### **NSO's Lack of Control Over Its Customers**

The Court should deny Plaintiffs' MIL No. 4 to exclude evidence and argument about NSO's lack of control over its customers.  That evidence and argument is helpful background for the jury, relevant to punitive damages, and necessary to respond to Plaintiffs' attempts to hold NSO liable in damages for the actions of its customers.

The fact that NSO's customers, and not NSO, select the targets on whom Pegasus will be used is relevant "to contextualize the case for the jury and provide necessary background."  *J.C.*, 2020 WL 2124027, at *2.  Likewise the fact that NSO's customers alone obtain information from target devices, to which NSO has no access.  The undisputed fact that NSO does not operate Pegasus or control its customers' use of Pegasus is an essential aspect of NSO's business, which NSO is entitled to explain to the jury.  That is particularly true given that Plaintiffs seek to hold NSO liable in damages for its customers' alleged use of Pegasus to access roughly 1,400 user devices.  Plaintiffs cannot fairly argue that NSO should pay damages for its customers' actions because it allegedly "conspired with its customers" (Mot. 8), while also precluding NSO from

---

[12] Plaintiffs also argue they were denied discovery into customer "targets." (Mot. 7-8.)  That has nothing to do with NSO, which undisputedly does not collect information about customer targets. (*E.g.*, Dkt. 396-5, Exh. H at 236:2-10.)  It also ignores that Plaintiffs themselves spent an extended period of time investigating the roughly 1,400 targets at issue—who were Plaintiffs' own users.  If Plaintiffs were unable to identify their own users, that provides no basis to exclude evidence helpful to NSO.

1   offering evidence regarding who does what vis-à-vis its customers.[13]

2   NSO's lack of control over its customers is also relevant to punitive damages.  As explained

3   above, the access to WhatsApp servers for which Plaintiffs seek punitive damages includes the

4   access that occurred during the alleged use of Pegasus by NSO's customers.  (*Supra* 4.)  That NSO

5   does not control (or even have advance knowledge of) any particular customer use of Pegasus is

6   relevant to whether *customers*' uses of Pegasus reflect despicable conduct or malicious,

7   oppressive, or fraudulent intent *by NSO*.  That would be true even if Plaintiffs were correct that

8   this Court had found NSO and its customers to be co-conspirators, because punitive damages

9   should be "separately assess[ed] . . . against co-conspirators based upon their individual degree of

10  culpability."  *Bader Farms, Inc. v. BASF Corp.*, 39 F.4th 954, 973 (8th Cir. 2022) (cleaned up);

11  *accord Green v. Howser*, 942 F.3d 772, 781 (7th Cir. 2019).[14]  NSO's lack of control over its

12  customers makes Plaintiffs' assertions that *NSO* intended to harm others, disregard their safety, or

13  engage in objectively reprehensible conduct "less probable."  Fed. R. Evid. 401.  Plaintiffs can

14  make their case that NSO's manufacture and license of Pegasus to sovereign governments to

15  prevent and investigate crimes and terrorism warrants imposing punitive damages without

16  concealing the truth that NSO does not choose the targets on whom Pegasus is used.

17  Plaintiffs' argument that NSO "resisted providing Plaintiffs any discovery regarding its

18  interactions with its customers" (Mot. 9) misstates the record.  All NSO has withheld is the *specific*

19  *identities* of its customers—which this Court ruled was proper.  (*Supra* 2-3; Dkts. 292, 305.)  This

20  Court held that Plaintiffs and NSO could address "what *actions* were taken by" NSO's customers

21  without discovery into their *identities*.  (Dkt. 292 at 5.)[15]  And NSO has provided testimony and

22

---

23  [13] Plaintiffs misstate the Court's summary judgment order, which made no factual findings on
     conspiracy.  The Court referenced CFAA's conspiracy provision, but it did not hold NSO *liable*

24  under that provision—it found liability under sections 1030(a)(2) and (a)(4), not section 1030(b).
     (Dkt. 494 at 10, 12.)  Even if the Court had found a conspiracy, that finding would not preclude

25  NSO from proving it does not *control* its customers, because conspiracy does not require control.
     [14] *See also Chiu v. Wadsworth*, 2003 WL 150095, at *17 (Cal. Ct. App. Jan. 22, 2003) ("[A] jury

26  may apportion punitive damages among joint tortfeasors in various amounts according to their
     individual culpability.")

27  [15] The Court also noted that Plaintiffs had refused NSO's "offer[] to stipulate that Pegasus has been

28  used by its government customers to obtain information from target devices."  (*Id.* (cleaned up).)

other evidence regarding its relationships with its customers, including extensive testimony from senior executives delineating the precise roles between NSO and its customers. (*E.g.*, Dkt. 396-3 & Exhs. A-B; Dkt. 399-4, Exh. 8.) Plaintiffs cannot explain why they would also need to know customer *identities* to address whether NSO *controls* its customers. Those issues are unrelated.

### OPPOSITION TO PLAINTIFFS' MIL NO. 5

### WhatsApp's Inadequate Security Measures

Evidence regarding the state of WhatsApp's security measures in 2018 and 2019 is relevant to Plaintiffs' claims for compensatory damages, the causation of those damages, mitigation of those damages, and punitive damages. The evidence is thus admissible, and Plaintiffs provide no explanation as to why any of it would require a "series of mini-trials."

*First*, the evidence Plaintiffs seek to exclude is relevant to compensatory damages. The CFAA allows recovery only for "technological harms[,] such as the corruption of files," which Plaintiffs admittedly have not suffered. *Van Buren v. United States*, 593 U.S. 374, 391-92 (2021); (*see* Dkt. 596-2 at 6 (compiling authorities)). Even assuming otherwise, a CFAA plaintiff can recover remediation expenses only "for restoring the data, program, system, or information to its condition *prior to the offense*." 18 U.S.C. § 1030(e)(11) (emphasis added).[16] The statute does not permit the recovery of costs to *improve* the system *beyond* its prior state. *See United States v. Middleton*, 231 F.3d 1207, 1213 (9th Cir. 2000) (affirming jury instruction because it referred only to "making the system as secure as it was before, not making it more secure than it was before"). To recover compensatory damages, then, Plaintiffs must offer evidence regarding the state of WhatsApp's security both before and after any claimed recovery costs. Plaintiffs understand this requirement, as their *affirmative* expert disclosures included an opinion describing WhatsApp's security and concluding that it was reasonable. (*See* Dkt. 507-2 § V.) NSO must be permitted to rebut that evidence and the resulting conclusion. And the fact that NSO did not create the vulnerability at issue bears directly on the magnitude of the recoverable costs.

---

[16] The CFAA's "[p]rovisions defining 'damage' and 'loss' specify what a plaintiff in a civil suit can recover." *Van Buren*, 593 U.S. at 391.

*Second*, evidence of WhatsApp's security practices is relevant to whether any of Plaintiffs' claimed costs were *caused* by NSO. As explained in NSO's trial brief, the time and money that Plaintiffs spent improving their system were the direct result (as a matter of both proximate and but-for causation) of the fact that WhatsApp's code contained vulnerabilities that Plaintiffs would have paid the same amount to fix regardless of anything NSO did. (Dkt. 596-2 § III.A.) Plaintiffs were already paying employees to remediate such vulnerabilities, including the vulnerability underlying Heaven and Eden, which had long been publicly disclosed. (*E.g.*, Dkt. 513-4, Exh. A ¶¶ 145-47, Exh. B ¶¶ 71-84.) For those reasons, NSO did not proximately cause most if not all of Plaintiffs' alleged labor costs.[17]

*Third*, evidence of WhatsApp's insufficient security measures is relevant to whether Plaintiffs' claimed costs were "reasonable" or "necessary" and whether Plaintiffs adequately mitigated their damages. *See* 18 U.S.C. § 1030(e)(11) ("loss" must be "reasonable"); Cal. Penal Code § 502(e)(1) (damages must be "reasonably and necessarily incurred"); *Yang Ming Marine*, 259 F.3d at 1095 (a "nonbreaching party to a contract has a duty to take reasonable steps to mitigate its damages"). Specifically, in assessing compensatory damages, the jury should take into account that Plaintiffs' remediation efforts and associated costs were unreasonable because Plaintiffs chose to expand their costs drastically by leaving the vulnerability open in noncompliance with industry standards. (*See* Dkt. 513-4, Exh. B ¶¶ 110-19.)

*Fourth*, the fact that NSO did not create the vulnerability at issue is relevant to punitive damages, as it bears directly on whether NSO's conduct was reprehensible. A reasonable jury

---

[17] Plaintiffs' sole case, *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930 (9th Cir. 2004), does not require a different conclusion. It held only that the plaintiff's evidence, though "arguable," supported the jury verdict—it did not categorically reject any particular evidence or argument. *Id.* at 935-36. Unlike the defendant in *Creative Computing*, NSO does not contend Plaintiffs' alleged damages are barred as a matter of law, only that NSO is entitled to argue to the jury that it did not cause all of those damages. Moreover, *Creative Computing* merely held that the plaintiffs' negligence in leaving open a vulnerability did not necessarily break the causal chain. *Id.* That has little to do with NSO's argument, which is not that Plaintiffs *should have* but *did not* take additional steps to protect their system. NSO's argument is that Plaintiffs *already were* paying their employees to find and remediate preexisting vulnerabilities such as the vulnerability at issue here, so Plaintiffs would have incurred the same costs regardless of anything NSO did.

could conclude it is more reprehensible to *create* a vulnerability—the classic sense of "hacking"—than merely to *use* a vulnerability it was well known Plaintiffs had coded into their own system.

*Fifth*, Plaintiffs fail to explain why any of this evidence would necessitate "mini-trials." Unlike in *Gardner v. Fed. Express Corp*. 2015 WL 5821428, at *3 (N.D. Cal. Oct. 6, 2015), the evidence does not relate to an inconsequential issue.  The very point of the trial is to determine whether, and to what extent, Plaintiffs' claimed damages were caused by NSO.  That central issue will require proof as to the state of WhatsApp's security both before and after any remediation efforts—and whether WhatsApp is claiming costs for improvements, as opposed to remediation. No "mini-trial" will be necessary.

## OPPOSITION TO PLAINTIFFS' MIL NO. 6

### The Use of WhatsApp by Criminals, Terrorists, and Other Bad Actors

Similar to Plaintiffs' MIL Nos. 1 and 2, their MIL No. 6 is yet another improper attempt to prevent NSO from presenting relevant evidence and rebutting Plaintiffs' core trial themes.

*First*, NSO is permitted to introduce evidence "to contextualize the case for the jury and provide necessary background." *J.C.*, 2020 WL 2124027 at *2; (*see supra* 3-4).  Plaintiffs intend to portray NSO as a "spyware" developer whose "malicious activity" exposed thousands of innocent WhatsApp users to "unfettered surveillance." (Dkt. 595 at 11-12.)  The very title of their MIL characterizes the use of Pegasus as an "NSO attack" against WhatsApp users.  (Mot. 10.) NSO must be able to rebut those arguments by introducing its own evidence that it created Pegasus to restore governments' and law enforcement's ability to investigate crimes planned and promoted using end-to-end encryption services such as WhatsApp.  *E.g.*, *EzyRoller*, 2024 WL 5416670, at *4; *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2.  NSO must also be able to rebut any argument that it "attacked" innocent WhatsApp users, when in reality it was providing a product to enable sovereign governments to prevent or investigate terrorism and serious crime.

*Second*, evidence that WhatsApp is used by criminals and terrorists is relevant to punitive damages.  Plaintiffs will argue to the jury that NSO's "malicious activity" posed a substantial risk of harm to WhatsApp users, which the jury should "consider in assessing the 'reprehensibility' of NSO's conduct and . . . the appropriate size of a punitive damages award." (Dkt. 595 at 12.)  The

jury cannot possibly assess the "risk of harm" to WhatsApp users without also understanding *which* WhatsApp users were at any real risk of surveillance: the suspected criminals and terrorists who use end-to-end encryption to shield their communications. Contrary to Plaintiffs' suggestion, NSO has never argued that the identities of WhatsApp's "target users" are irrelevant to damages. (Mot 11.) Rather, in its motion to exclude Plaintiffs' expert David Youssef, NSO stated the general rule that the amount of a punitive damages award cannot reflect harm to third parties. (Dkt. 512 at 6.) That is a different issue than whether creating a substantial risk of harm to third parties can inform the threshold finding of reprehensibility—it clearly can. *Hardeman*, 997 F.3d at 971-72; 9th Cir. Model Jury Instr. 5.5.[18] Accordingly, evidence as to *which* third-parties may face any substantial risk of being surveilled with Pegasus is relevant to the jury's assessment of punitive damages.

*Third*, this evidence is relevant to injunctive relief. Evidence that WhatsApp and similar platforms are used by criminals and terrorists to conceal and promote their activities, and that Pegasus was designed to assist governments in lawfully collecting those communications, affects the balance of public interests and bears on the question whether an injunction would disserve the public interest. (*See supra* 5.)

*Fourth*, this evidence is not subject to the "extraordinary remedy" of exclusion under Rule 403. *Mende*, 43 F.3d at 1302. Evidence that criminals and terrorists use WhatsApp is highly probative to the key issues outlined above—providing the jury with critical context, rebutting Plaintiffs' false characterizations of NSO and its business, punitive damages, and injunctive relief. This alone weighs against exclusion, as it substantially increases the level of "unfair prejudice" required for exclusion. *Haischer*, 780 F.3d at 1281-82. Nor is the evidence speculative. NSO's experts will testify *based on their specialized experience* that criminals, terrorists, and other threat actors use WhatsApp and similar encryption technologies to shield themselves from investigation.

---

[18] *United States v. Ward*, 747 F.3d 1184 (9th Cir. 2014), is totally inapposite. It discussed whether a variance between the allegations of a criminal indictment and the proof offered at the subsequent criminal trial was prejudicial. *Id.* at 1189-90. The court summarized a prior opinion, which found no prejudice when the indictment alleged that the defendant took money from "Mr. McCallum," but the evidence at trial showed that the defendant actually met with "Mr. McCallum and his partner" and took the money from the partner. *Id.* at 1190.

(Dkt. 505-2 ¶¶ 23-25; Dkt. 513-4, Exh. A ¶¶ 153-54; Dkt. 572-4, Exh. A ¶¶ 41-49.[19]) Plaintiffs' own employees will confirm that WhatsApp knows its platform is often used for serious criminal activity, such as recruiting terrorists, planning terrorist attacks, or distributing child pornography. (*E.g.*, Dkt 596-10, Exh. F at 37:18-46:13.) And Plaintiffs' employees can testify about their own research into the identities of the "target users." (*E.g.*, Dkt. 502-3 ¶¶ 56-77 (describing Plaintiffs' employees' alleged role in identifying targets).)

Finally, there is no undue risk of confusing the issues, misleading the jury, or creating unfair prejudice. Unlike the parties in the authorities Plaintiffs cite, NSO is not trying to introduce irrelevant yet "inflammatory" details about Plaintiffs, to inject irrelevant evidence that is subject to "raging [public] debates," or to elicit an "emotional" reaction from the jury. (Mot. 12.[20]) NSO seeks only to help the jury understand the value its technology has to governments that need tools for law enforcement and intelligence investigations. At most, any request to exclude this evidence should be handled on a case-by-case basis at trial. (*See supra* 7.)

### OPPOSITION TO PLAINTIFFS' MIL NO. 7

### Plaintiffs' History of Privacy Violations

While NSO does not affirmatively intend to offer evidence of Plaintiffs' numerous privacy-related disputes, lawsuits, and controversies, such evidence would become relevant if Plaintiffs open the door to it at trial. Meta has long faced significant privacy concerns, including its nonconsensual use and sharing of private user data and its failures to protect users from data breaches.[21] Plaintiffs would open the door to evidence of these repeated failures to protect user

---

[19] None of these experts was retained to review the list of "target users" compiled by Plaintiffs and their opinions were not based on any review of that list, so their testimony is not speculative simply because they have not reviewed the list. (*Contra* Mot. 11-12.)

[20] *Waymo*, *Planned Parenthood*, and *Giganews* are distinguishable for the reasons given above. (*Supra* 9-10.) Plaintiffs merely cite *Old Chief v. United States*, 519 U.S. 172, 180 (1997), for the general definition of "unfair prejudice," but it is similarly distinguishable because it required exclusion of the full, inflammatory details of the defendant's prior criminal conviction. NSO does not seek to introduce any remotely analogous evidence about Plaintiffs.

[21] *E.g.*, *United States v. Facebook, Inc.*, No. 19-cv-2184 (D.D.C.); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-02843 (N.D. Cal.); *In re Facebook, Inc. Sec. Litig.*, No. 5:18-cv-01725 (N.D. Cal.); *In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-03747 (N.D.

privacy if they argued, for example, that (1) they brought this lawsuit out of a concern for user privacy or (2) NSO harmed their reputations for privacy. Courts routinely allow evidence of prior lawsuits when a party opens the door to them. *E.g.*, *Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 2023 WL 9687511, at *1 (C.D. Cal. Dec. 15, 2023); *Mindlab Media, LLC v. LWRC Int'l, LLC*, 2013 WL 1688309, a *6 (C.D. Cal. Apr. 15, 2013).

If Plaintiffs open the door, evidence of their history of privacy violations would not be improper character evidence. Rule 404 prohibits the use of character evidence "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404. This Rule is commonly used to exclude evidence of a plaintiff's litigiousness, as in the cases Plaintiffs cite. *Seals v. Mitchell*, 2011 WL 1399245, at *5 (N. D. Cal. Apr. 13, 2011); *Forbes v. Cty. of Orange*, 2013 WL 12165672, at *13 (C.D. Cal. Aug. 4, 2023). Here, NSO would not introduce Plaintiffs' prior lawsuits and reputation as evidence of Plaintiffs' litigiousness or as evidence that Plaintiff acted "in accordance with the character trait." Instead, NSO would introduce that evidence only to respond to Plaintiffs' own assertions about user privacy. In those circumstances, moreover, it would not be unfairly prejudicial or misleading for the jury to hear evidence introduced solely in rebuttal to Plaintiffs' own self-serving assertions about user privacy.

Because NSO will not introduce the challenged evidence unless Plaintiffs open the door, and the Court can address any related objections at trial, the Court should deny Plaintiffs' MIL No. 7.

## OPPOSITION TO PLAINTIFFS' MIL NO. 8

### NSO's Expert Witnesses

Plaintiffs admit their MIL No. 8 merely recycles arguments from their *Daubert* motions. (Mot. 14.) NSO has already explained why those arguments fail. (*See* Dkts. 616-2 (Shepard), 612-2 (Minkler), 619-2 (McGraw).) Plaintiffs intend to argue that NSO's conduct in developing and licensing Pegasus "posed a substantial risk of harm to" others (Dkt. 595 at 12), and NSO must

---

Cal.); *In re Facebook Privacy Litig.*, No. 10-cv-02389 (N.D. Cal.); *In re Facebook, Inc. Internet Tracking Litig.*, No. 5:12-md-02314 (N.D. Cal.); *see also* Lily Hay Newman, *WhatsApp's New Privacy Policy Just Kicked In. Here's What You Need to Know*, Wired (May 15, 2021), https://www.wired.com/story/whatsapp-privacy-policy-facebook-data-sharing/.

be allowed to rebut that evidence by showing that its conduct in fact *prevented* such harm.

**Col. Shepard.**   Col. Shepard opines, among other things, that (1) NSO offers essential lawful-intercept technologies that allow law enforcement to track suspected criminals and terrorists (Dkt. 505-2 ("Shepard Rpt.") ¶ 28); and (2) unlike some of its competitors, NSO uses a number of guardrails to protect against potential misuse of Pegasus (*id.* ¶¶ 38-44).  This testimony is relevant and presents no risk of unfair prejudice or jury confusion.

*First*, Col. Shepard's testimony is relevant to whether NSO's conduct in designing and licensing Pegasus is so reprehensible that it warrants punitive damages.  (Dkt. 616-2 at 15-17.)  In considering punitive damages, the jury must make a number of factual determinations regarding NSO's intent and the blameworthiness of its conduct.  (*Supra* 4-5.)  Col. Shepard's opinions rebut Plaintiffs' arguments on these points and will help the jury decide whether NSO had any intent to harm, engaged in reprehensible conduct, or posed a substantial risk of harm to the public.  Understanding how the "U.S. and allied national security agencies" can use "[t]ools like Pegasus" to "successfully disrupt attempts to injure or kill people, damage or destroy critical infrastructure, and otherwise threaten public safety" (Shepard Rpt. ¶ 28) will help the jury decide whether NSO's intent was to harm others or instead to protect the public from harm.  Similarly, to rebut Plaintiffs' claim that NSO acted despicably and ignored known risks, the jury should hear Col. Shepard's opinion that NSO uses a number protections against potential misuse of Pegasus.  (Shepard Rpt. ¶¶ 38-44.)  And to decide whether NSO's conduct would be "despised by most ordinary decent people," *Hardeman*, 997 F.3d at 971 (cleaned up), the jury should hear his opinions that NSO's technologies allow governments to track suspected criminals and terrorists.

Plaintiffs' contrary arguments fail.  Col. Shepard's testimony on the well-established fact that "threat actors" use encrypted messaging applications to undermine U.S. national security will help the jury decide whether NSO's conduct in developing and licensing a technology to intercept such messages protected the public from harm or instead risked harming the public.  Plaintiffs' objection (Opp. 15) ignores that the question is whether NSO's conduct "posed a grave risk to *the public*," not to WhatsApp users specifically.  *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) (emphasis added).  Col. Shepard's opinion that the United States and its allies make

"routine use of tools like Pegasus" (Shepard Rpt. ¶ 1) speaks to this same issue. And his opinion that intelligence agencies "do not follow ordinary terms of service" when pursuing security and safety threats (*id.* ¶¶ 36-37) is relevant to whether NSO engaged in objectively despicable conduct when it allegedly violated WhatsApp's terms of service. Plaintiffs' suggestion (at 16) that "Col. Shepard has provided no evidentiary foundation" for these opinions is baseless. Col. Shepard has extensive *personal experience* with all the issues he addresses. (*E.g.*, Dkt. 616-3 at 69:23-74:4, 84:1-86:1, 102:16-22).

*Second*, Col. Shepard's opinions are relevant to injunctive relief. (Dkt. 616-2 at 18-19.) They inform whether the public interest favors an injunction that would effectively prohibit NSO from licensing Pegasus to governments and force those governments to abandon ongoing investigations of terrorists and criminals. (*Supra* 5.)

*Finally*, Plaintiffs point to no significant risk of unfair prejudice or jury confusion from Col. Shepard's opinions, much less a risk that would "substantially outweigh" those opinions' significant "probative value." Fed. R. Evid. 403. Allowing the jury to hear that NSO uses more safeguards than its competitors and that Pegasus is a critical tool for law enforcement will not "invite the jury to make" an improper "judgment call." (Mot. 17.) It will properly help the jury decide whether NSO acted with intent to harm Plaintiffs or disregarded threats to the public so reprehensibly that punitive damages are warranted.[22] Anyway, the Court could eliminate any risk of prejudice or confusion through a limiting instruction. *See Hovey v. Ayers*, 458 F.3d 892, 913 (9th Cir. 2006) ("We presume that juries follow their instructions.").

Nor is exclusion warranted simply because Col. Shepard was not able to disclose certain classified information. (Mot. 17.) As Plaintiffs' own authority recognizes, the remedy for nondisclosure "is a motion to compel." *In re Leap Wireless Int'l, Inc.*, 301 B.R. 80, 83 (Bankr. S.D. Cal. 2003). Exclusion "is appropriate only when the failure to provide an adequate expert

---

[22] That easily distinguishes Plaintiffs' only case, where the court excluded expert testimony based on conditions in the wrong industry and the wrong time period because it was "one step removed" from the issues in the case and would have "confused" the jury. *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430-31 (9th Cir. 1991).

report is in violation of an order compelling discovery"—which Plaintiffs neither received nor sought. *Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*, 185 F. Supp. 2d 1103, 1107 (C.D. Cal. 2001).[23]  *In re Leap* is not to the contrary.  That "unusual" case excluded expert testimony only where there was "extremely limited" time to "cure" the nondisclosures, 301 B.R. at 83-85 & n.4, whereas here Col. Shepard disclosed his opinions in August 2024.  Because Plaintiffs could have moved to compel disclosure long ago but chose not to, exclusion is not appropriate.

There is no risk that the jury will be confused by any absence of confidential information. No undisclosed information is necessary to understand Col. Shepard's opinions or their basis— and Plaintiffs do not argue otherwise. Col. Shepard thoroughly explained the tangential "discussions" Plaintiffs reference. (Dkt. 504-4 at 69:23-71:2.)  And his supposed inability to disclose information about the third parties mentioned at page 17 line 22-23 of Plaintiffs' Motion is immaterial, as the jury need not know "the specific *identities* of the third parties" to decide "what role defendants played in any use of alleged spyware" (Dkt. 292 at 5).  Because Col. Shepard can "provide sufficient information to establish . . . the facts or data upon which his opinion is based," exclusion is not warranted.  *V3 World Mgmt., Inc. v. Synergy Worldwide, Inc.*, 2019 WL 2325968, at *1-2 (D. Utah May 31, 2019); *accord Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 334-35 (D. Vt. 2007).

**Mr. Minkler**.  Mr. Minkler opines, among other things, that tools such as Pegasus benefit law enforcement by filling a fast-growing gap in surveillance needs regarding end-to-end encryption.  (Dkt. 572-4 Exh. A ("Minkler Rpt.") ¶¶ 41-49, 60-62.)  This testimony is highly relevant to punitive damages and injunctive relief and presents no Rule 403 issues.

*First*, Mr. Minkler's opinions on how tools such as Pegasus help protect public safety are essential to remaining issues in this case, including whether NSO had the reprehensible intent and conduct required for punitive damages.  (Dkt. 612-2 at 8-11.)  His opinions will help the jury decide whether NSO's intent was to harm Plaintiffs or instead to protect the public by developing

---

[23] *Accord Krause v. Hawaiian Airlines, Inc.*, 2019 WL 13225251, at *4 (E.D. Cal. June 7, 2019) (denying exclusion of expert where party "move[d] to strike the disclosure in its entirety—rather than promptly seeking to compel supplemental disclosures")

a technology that has already "been beneficially deployed in several high-profile investigations" into suspected criminals and terrorists. (Minkler Rpt. ¶ 62.) Plaintiffs want the jury to consider only their assertion that Pegasus "posed a substantial risk of harm" to the public, without any understanding of its *benefits*. (Dkt. 565 at 12.) But the jury cannot properly decide NSO's intent or whether its conduct was reprehensible without considering both sides of the equation.

None of Plaintiffs' opposing arguments is persuasive. Mr. Minkler's opinions do not simply "relate to [conduct by] U.S. law enforcement." (Mot. 18.) They relate to *NSO* and whether the tools it developed benefit law enforcement. Nor are Mr. Minkler's opinions "about speculative, hypothetical uses of Pegasus." (Mot. 19.) As he made clear at his deposition, he discusses benefits to law enforcement that he knows from first-hand experience are *already occurring*. (Dkt. 612-3 at 236:12-16.) Mr. Minkler provides specific examples of how Pegasus "has been beneficially deployed in several high-profile investigations" (Minkler Rpt. ¶ 62), notes the undisputed evidence that the FBI licensed Pegasus during the time period relevant here, and indicates that other U.S. government agencies procured Pegasus licenses on behalf of U.S. partners (*id.* ¶¶ 33, 54, 62). This all corroborates his opinion—based on decades of experience—that Pegasus does, in fact, fill a gap in law-enforcement needs. All of these opinions (*e.g.*, *id.* ¶¶ 28, 33-40, 55-62) are relevant to whether Pegasus harms or protects the public, whether NSO had the requisite intent, and whether its conduct in designing and licensing Pegasus was so "despicable" or "reprehensible" that punitive damages can be assessed against it.

*Second*, Mr. Minkler's opinions, like Col. Shepard's, are relevant to whether the public interest favors injunctive relief. (Dkt. 612-2 at 11-12.) His opinions show how an injunction could disserve the public interest by depriving law enforcement of a valuable tool for investigating, apprehending, and prosecuting terrorists and other serious criminals.

*Finally*, Mr. Minkler's opinions raise no Rule 403 issues. Plaintiffs' contrary arguments are all premised on the erroneous view that Mr. Minkler's testimony about the benefits of tools such as Pegasus are irrelevant. As explained, Mr. Minkler's opinions are highly probative on issues relevant to punitive damages and injunctive relief. Plaintiffs also ignore the unique, policy-infused nature of punitive damages and injunctive relief. Punitive damages are "an expression of

[the jury's] moral condemnation" that intrinsically requires the jury to weigh policy by determining how much "deterrence," "punishment," or "'expressi[on]'" is needed in a particular case. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 & n.5, 438-39 (2001). None of Plaintiffs' cited cases involved punitive damages. (Mot. 19-20.) And the Rule 403 cases they cite are inapposite because the evidence at issue was "irrelevant," *Retamosa*, 2021 WL 4499236, at *1 (cleaned up), or "improper[ly]" aimed to "convince [the jury] that a heightened standard of care was owed" by the defendant, *Serna*, 2024 WL 4720884, at *3.

**Mr. McGraw.** Plaintiffs' attempt to exclude testimony on "policy matters" from "other experts" (Mot. 20) likewise fails. The only other expert Plaintiffs mention is Mr. McGraw, and his opinions will help the jury understand the history, legitimacy, and value of Pegasus and other surveillance technology. (*See* Dkt. 619-2 at 18-23.) Plaintiffs specifically object (at 20) to only (1) Mr. McGraw's understanding that "NSO is a lawful-intercept software developer providing a capability to vetted and approved government customers" (Dkt. 513-4, Exh. B ¶ 99) and (2) his statement that the lawful-intercept "industry specializes in finding vulnerabilities in common technologies" to "enable lawful surveillance of criminals and terrorists" (Dkt. 513-4, Exh. A ¶ 39). But the former simply reflects Mr. McGraw's understanding of undisputed facts confirmed by deposition testimony, and the latter is merely a background statement about the lawful-intercept industry that he is well-qualified to offer given his 20 years of cybersecurity experience (*id.* ¶¶ 4-12 & App'x 1). NSO is entitled to explain its business and technology through such "generalized evidence that its software was licensed for law enforcement purposes." (Dkt. 305 at 6.)

## CONCLUSION

The Court should deny Plaintiffs' MILs.


DATED: March 27, 2025                      KING & SPALDING LLP

                                           By: */s/Joseph N. Akrotirianakis*
                                           JOSEPH N. AKROTIRIANAKIS
                                           AARON S. CRAIG
                                           *Attorneys for Defendants*