Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         gina.cora@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>                    Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE COL. TY SHEPARD**<br><br>Date:   April 10, 2025<br>Time:   2:00 p.m.<br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ...............................................................................................................1

ARGUMENT .........................................................................................................................................2

    I.    Col. Shepard's Opinions Should Be Excluded Because He Considered and Relied on Undisclosed Classified Information in Forming His Opinions. ..................2

    II.    Col. Shepard Is Not Qualified To Offer His Proffered Opinions................................8

    III.    Col. Shepard's Opinions Should Be Excluded Because They Are Not Reliable.........9

    IV.    Col. Shepard's Testimony Should Be Excluded Because His Opinions Will Not Help the Jury Determine Damages or the Court Determine Injunctive Relief..........13

        A.    Col. Shepard's Opinions Are Irrelevant to Punitive Damages. ..........13

        B.    Col. Shepard's Opinions Are Irrelevant to Injunctive Relief and, in Any Case, Should Not Be Heard by the Jury. ...............................15

CONCLUSION ....................................................................................................................................15

# TABLE OF AUTHORITIES

CASES

PAGE(S)

*Avila v. Willits Env't Remediation Tr.*,
   633 F.3d 828 (9th Cir. 2011) .................................................................................... 8, 11

*In re Bard IVC Filters Prods. Liab. Litig.*,
   2018 WL 934795 (D. Ariz. Feb. 15, 2018) ............................................................... 13, 14

*Brice v. Haynes Invs., LLC*,
   548 F. Supp. 3d 882 (N.D. Cal. 2021) ............................................................................ 13

*Buell-Wilson v. Ford Motor Co.*,
   73 Cal. Rptr. 3d 277 (Ct. App.), *as modified on denial of reh'g* (Apr. 10, 2008),
   *review granted and opinion superseded*, 187 P.3d 887 (Cal. 2008) ............................ 14

*Burrows v. BMW of N. Am., LLC*,
   2018 WL 6314187 (C.D. Cal. Sept. 24, 2018) ................................................................ 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ...................................................................................................... 12

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) ........................................................................................ 10

*GPNE Corp. v. Apple, Inc.*,
   2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ................................................................. 5

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
   508 F. Supp. 2d 295 (D. Vt. 2007) .................................................................................. 5

*Hadley v. Kellogg Sales Co.*,
   2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) .............................................................. 14

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ......................................................................................... 14

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
   87 F. Supp. 3d 928 (N.D. Cal. 2015) ............................................................................... 7

*Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*,
   185 F. Supp. 2d 1103 (C.D. Cal. 2001) ........................................................................... 7

*Krause v. Hawaiian Airlines, Inc.*,
   2019 WL 13225251 (E.D. Cal. June 7, 2019) ................................................................. 7

*In re Leap Wireless Int'l, Inc.*,
   301 B.R. 80 (Bankr. S.D. Cal. 2003) ............................................................... 3, 5, 6, 7, 8

*Lin v. Solta Med., Inc.*,
   2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) ........................................................... 2, 10

*Longoria v. Kodiak Concepts LLC*,
   2021 WL 1100373 (D. Ariz. Mar. 23, 2021) ............................................................................ 5

*Medo v. Super. Ct.*,
   251 Cal. Rptr. 924 (Cal. Ct. App. 1988) ............................................................................... 13

*Mims v. Fed. Express Corp.*,
   2015 WL 12711651 (C.D. Cal. Jan. 15, 2015) ...................................................................... 13

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
   533 F. Supp. 3d 802 (N.D. Cal. 2021), *aff'd*, 2022 WL 3572943
   (9th Cir. Aug. 19, 2022) ....................................................................................................... 15

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ......................................................................................... 10, 11

*Ralston v. Smith & Nephew Richards, Inc.*,
   275 F.3d 965 (10th Cir. 2001) ................................................................................................ 8

*Riley v. Volkswagen Grp. of Am., Inc.*,
   51 F.4th 896 (9th Cir. 2022) ................................................................................................. 14

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................................................................. 13

*United States v. Cerna*,
   2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) ...................................................................... 9

*United States v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000) ................................................................................................ 9

*United States v. Valencia-Lopez*,
   971 F.3d 891 (9th Cir. 2020) .................................................................................................. 9

*V3 World Mgmt., Inc. v. Synergy Worldwide, Inc.*,
   2019 WL 2325968 (D. Utah May 31, 2019) .......................................................................... 9

*Woodall v. Walt Disney Co.*,
   2025 WL 659750 (C.D. Cal. Feb. 5, 2025) ................................................................. 3, 6, 7, 8

STATUTES & RULES

Fed. R. Civ. P. 26 ........................................................................................................... 1, 3, 6, 7

Fed. R. Civ. P. 37 ..................................................................................................................... 6, 7

Fed. R. Evid. 403 ......................................................................................................................7, 8

Fed. R. Evid. 702 ................................................................................................................ *passim*

Fed. R. Evid. 705 ........................................................................................................................1, 5

**PRELIMINARY STATEMENT**

The Court should exclude Col. Shepard's opinions under Federal Rule of Evidence 702 and *Daubert* for the reasons discussed in Plaintiffs' opening motion, which NSO fails to legitimately rebut. The four principal reasons to exclude Col. Shepard's testimony are the following.

*First*, Col. Shepard bases his opinions on "classified" information that has not been disclosed to Plaintiffs and, throughout his deposition, refused to answer specific questions because he characterized the question as calling for purportedly classified information. NSO argues that the information Col. Shepard withholds is about "ancillary" details that are "immaterial." That is not so. For instance, Col. Shepard opines that "the United States and its allies widely use surveillance tools like Pegasus," Report ¶ 23, but testified that he cannot identify which allies use Pegasus because that information is "classified." *See, e.g.*, Tr. at 91:25–93:19.[1] NSO's argument is that Plaintiffs do not need to know anything more than the fact that Col. Shepard says U.S. allies use Pegasus—but without more detail, Plaintiffs and the Court cannot meaningfully evaluate the foundation for Col. Shepard's opinions. Moreover, the Federal Rules do not permit NSO to set the limits of Col. Shepard's disclosures. Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires the expert's report to contain "the facts or data considered by the witness in forming" his opinions; Federal Rule of Evidence 702 requires expert testimony to be "based on sufficient facts or data," and Federal Rule of Evidence 705 provides that an expert "may be required to disclose [the underlying] facts and data [for his opinion] on cross-examination." For these reasons, courts faced with similar disclosure violations have excluded the proffered expert's testimony, and the Court should do so here.

*Second*, Col. Shepard is not qualified under Rule 702 to give expert testimony on any of the opinions he is offering. While NSO argues that Col. Shepard is qualified simply because of his years of military experience, that is not the standard for expert qualification under *Daubert* and its progeny. Moreover, Plaintiffs and the Court cannot meaningfully evaluate Col. Shepard's qualifications

---

[1] Col. Shepard's expert report is attached as Exhibit A to the Declaration of Gina Cora and cited herein as "Report." Col. Shepard's deposition transcript is attached as Exhibit B and cited herein as "Tr." Plaintiffs' Motion to Exclude Col. Shepard, Dkt. No. 504-3, is cited herein as "Mot." NSO's opposition, Dkt. No. 616-1, is cited herein as "Opp."

because he has withheld significant details from the experiences that form the basis of his opinions claiming that they are "classified."

*Third*, Col. Shepard's opinions should be excluded because they are unreliable. In arguing otherwise, NSO ignores Col. Shepard's deposition testimony and invokes his general military experience as a basis for his opinions. This precludes NSO from meeting its burden to establish reliability under Rule 702. For example, Col. Shepard opines that "many non-government users routinely engage in activities that are inconsistent with the Terms of Service and without adverse action by providers." Report ¶¶ 36–37. After Plaintiffs argued in their motion that Col. Shepard failed to provide any description or example of any violation of any terms of service, let alone the WhatsApp Terms of Service by a government actor, NSO's response is to evoke Col. Shepard's decades of military experience and state that of course he has a basis for his opinion. But that is not how Rule 702 works. Likewise, the Court should reject NSO's argument that Col. Shepard was only "speaking colloquially" when testifying that ▮ of "threat actors" use encrypted messaging applications, because there is "no reliable methodology or basis for [his] conclusory statements," as this Court recently found when excluding an expert seeking to testify about "probably 99 percent" of a market. *Lin v. Solta Med., Inc.*, 2024 WL 5199905, at *12 (N.D. Cal. Dec. 23, 2024).

*Fourth*, Col. Shepard's testimony is entirely irrelevant to punitive damages and injunctive relief, and NSO is wrong to argue otherwise. It is well-established that punitive damages are assessed based on the defendant's "conduct" at issue in the case, and Col. Shepard's testimony does not relate to any actual facts at issue. He read a handful of documents produced in discovery, which primarily consisted of NSO's marketing materials, and admitted to not reading the Complaint. Because his testimony is divorced from the facts, it is too speculative to be relevant to injunctive relief, and in any case, injunctive relief is a question for the Court.

## ARGUMENT

### I. Col. Shepard's Opinions Should Be Excluded Because He Considered and Relied on Undisclosed Classified Information in Forming His Opinions.

The Court should exclude Col. Shepard's opinions because he considered and relied on classified information in forming his opinions and he will not disclose that information, which, contrary

2

to NSO's position, violates the expert disclosure requirements of Federal Rule of Civil Procedure 26(a)(2)(B) and is, as a court found as recently as February 2025, a basis for exclusion of the expert's opinion. *See Woodall v. Walt Disney Co.*, 2025 WL 659750, at *2 (C.D. Cal. Feb. 5, 2025) (excluding expert testimony based on expert's failure to disclose "confidential" documents).

As an initial matter, Col. Shepard's refusal to discuss "classified" information goes well beyond the "few isolated instances" that NSO claims, Opp. at 5, and it is implausible for NSO to deny that Col. Shepard's opinions "inextricably rel[y]" on the withheld information, Opp. at 7 (quoting *In re Leap Wireless Int'l, Inc.*, 301 B.R. 80, 84 (Bankr. S.D. Cal. 2003)). NSO acknowledges that Col. Shepard's opinions are almost entirely based on his military experience, Opp. at 2–5, and, as Col. Shepard testified, he "███████████████" on a lot of "classified" information. *See, e.g.*, Tr. at 336:7–337:7 ("████████████████████████████████████████████████████████████████████████████████"). Col. Shepard was unable to disclose many details of the experiences on which he bases his opinions because they are "classified."

Faced with this record, NSO's response is to misconstrue Col. Shepard's deposition testimony, mischaracterize the information he would not disclose as "ancillary details that are immaterial, if not irrelevant to Col. Shepard's actual opinions," and baselessly shift the burden to Plaintiffs to "explain why they need classified information to further probe Col. Shepard's opinions." Opp. at 5.

The transcript makes plain that Col. Shepard withheld critical information, forming the bases of his opinions because of its purportedly classified nature. For example, Col. Shepard testified that

- He cannot explain the basis of his first-hand knowledge that ████████████ ████████████ because the information is classified, Tr. at 69:23–72:24;
- He cannot testify to the specifics of the ████████████████████████ ████████████████████████ because the information is classified, Tr. 80:11–82:24, 95:7–17;
- He cannot ██████ ████████████████████ because the information is classified, Tr. 85:17–87:16; 91:25–93:19 ("████████ ████████████████████

3

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE COL. TY SHEPARD - CASE NO. 4:19-CV-07123-PJH

1 ▮▮▮"), 119:23–121:1, *see also* Tr. at 93:20–95:6 (▮
2 ▮▮▮);[2]

3 • He cannot discuss ▮▮▮
4 ▮▮▮ because they are classified, Tr. at 98:15–106:2, 111:19–114:19,
5 116:9–118:3;

6 • He cannot discuss the ▮▮▮ he refers to in his report
7 because they are classified, Tr. at 198:5–22;

8 • Information ▮▮▮ ▮▮▮ is classified, 277:10–24, 299:1–12;

9 • Information ▮▮▮
10 ▮▮▮
11 ▮▮▮ is classified, Tr. at 307:10–308:8;

12 • The names of the "▮▮▮" are "classified," Tr. at 314:11–
13 318:1, *see also* Report at ¶ 26;

14 • He cannot provide the names of the ▮▮▮
15 ▮▮▮
16 ▮▮▮, Tr. 318:5–320:10; and

17 • Analysis done about ▮▮▮ is
18 classified, Tr. at 411:7–413:20.

19 This information Col. Shepard refused to disclose as classified is plainly central both to his experi-
20 ence and the opinions he is proffering, which are (1) threat actors use encrypted messaging applica-
21 tions to undermine U.S. and allied national security; (2) the United States and its allies widely use
22 surveillance tools like Pegasus to protect national security; (3) the United States and its allies draw
23 on a large market of cyber surveillance tools, which need to be maintained as confidential; (4)

---

[2] Col. Shepard did not, as NSO insinuates, discuss any details regarding ▮▮▮
▮▮▮. Opp. at 5. Col. Shepard merely used them as an example of
▮▮▮ Tr. at 85:3–86:3.
Tr. at 86:4–87:16 (▮▮▮
▮▮▮).

4

government agencies routinely ignore terms of service; and (5) many cyber surveillance tools do not have the safeguards like those used by Pegasus. *See* Report ¶¶ 23–45.

NSO's attempts to argue that the withheld information is "ancillary" and "immaterial" to Col. Shepard's opinions is disingenuous. Opp. at 5. For example, NSO argues that "the relevant fact is that U.S. allies have used Pegasus to investigate and prevent terrorism and serious crime," and the "specific identities of which allies have done so is not material." Opp. at 5. This argument overlooks that Plaintiffs and the Court must evaluate the foundation of Col. Shepard's opinion. *See Longoria v. Kodiak Concepts LLC*, 2021 WL 1100373, *14 (D. Ariz. Mar. 21 2021) ("It doesn't matter that the data on which [the expert] relied was 'confidential'—it still need[s] to be disclosed . . . so [the opposing party] and the Court [can] meaningfully evaluate the foundation for [the expert's] opinions."). NSO, moreover, misconstrues the Court's order ruling that Defendants "need not disclose the identities of their third-party clients." Opp. at 5 (citing Dkt. No. 292 at 5). In so ruling, the Court did not permit Defendants to inject expert testimony on the topic of their third-party clients while also refusing expert discovery on those clients' identities—which is what NSO is trying to do. While NSO wants to rewrite the Federal Rules to put a burden on Plaintiffs to "explain why they need classified information to further probe Col. Shepard's opinions," Opp. at 5, the answer is obvious: In addition to testing the foundation for the admissibility of his expert opinions, Plaintiffs also need to be able to effectively cross-examine Col. Shepard at trial. Plaintiffs should not be left "with the bare option of . . . to trust but not to verify." *In re Leap*, 301 B.R. at 85; *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *2-6 (N.D. Cal. Apr. 16, 2014) ("[Defendant] cannot cross-examine [expert] on his assertions, all of which fundamentally reduce to taking his opinion based on 30 years of experience for granted."); *see also* Fed. R. Evid. 705 (An "expert may be required to disclose" the "[underlying] facts or data [for the expert's opinion] on cross-examination.").[3]

---

[3] NSO is wrong to rely on *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295 (D. Vt. 2007), which is distinguishable. Opp. at 7. There, the expert developed a model "as a way of checking his conclusions in the course of his regular work, not for use in litigation;" the expert had not "document[ed] how each individual input was derived" in that back-up model; and doing so "would have taken so much time that he would have had to close his business for a month." *Green Mountain Chrysler*, 508 F. Supp. 2d at 334. The court ruled that the back-up model "merely confirm[ed]" the expert's "initial analysis, conducted by means of [another] method, which appears sufficiently documented and explicated." *Id.*

NSO's argument that exclusion under Rule 702 would not be the proper remedy for Col. Shepard's inability to disclose classified information is also wrong. As an initial matter, courts routinely exclude expert testimony that is based on undisclosed confidential information. *See, e.g., Burrows v. BMW of N. Am., LLC*, 2018 WL 6314187, at *2 (C.D. Cal. Sept. 24, 2018) (finding that expert's reliance on unproduced confidential documents and the expert's refusal to "discuss them at his deposition" is an independent basis for exclusion); *Avago Techs. Gen. IP ETE Ltd. v. Elan Microelectronics Corp.*, 5:04-cv-05385 (N.D. Tex. Apr. 15, 2009) (Dkt. No. 640) (excluding defendant's expert to the extent he relied on confidential undisclosed studies); *In re Leap.*, 301 B.R. at 85 (striking expert report for relying on "confidential information which cannot be tested . . . . in preparing his report and arriving at his conclusion"). In *Woodall*, the court granted a *Daubert* motion to exclude the plaintiff's expert testimony because she "based her opinion" on "confidential agreements" that she would not disclose, in violation of Federal Rule of Civil Procedure 26(a)(2)(B), which "provides that an expert report must include 'the facts or data considered by the witness in forming them.'" *Woodall*, 2025 WL 659750, at *2 (quoting Fed. R. Civ. P. 26(a)(2)(B)).[4] In reaching that conclusion, the Court explained that "[t]he intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id.* at *1 (quoting Fed. R. Civ. P. 26, Advisory Committee Notes).[5] The same reasoning applies here and warrants the same result: exclusion of Col. Shepard's opinions.

NSO erroneously argues that exclusion is inappropriate because Plaintiffs did not move to compel Col. Shepard to disclose the classified information. This is another attempt to shift NSO's expert disclosure obligations onto Plaintiffs. As explained in *Woodall*, Rule 26(a)(2)(B)(ii)

---

[4] *Woodall* is generally consistent with *In re Leap* and expressly cites the case. *See Woodall*, 2025 WL 659750, at *2.

[5] NSO omits this element—"the facts or data considered by the witness in forming" her opinions—from its discussion of Rule 26(a)(2)(B) and instead focuses on a different element of Rule 26(a)(2)(B), which is "a complete statement of all opinions the witness will express and basis and reasons for them." *See* Opp. at 6. Presumably, NSO wants to avoid focusing on the expert's obligation to disclose "facts or data" under these circumstances.

1  requires the expert's report to contain "the facts or data considered by the witness in forming" his
2  opinions, and Col. Shepard's expert report did not do this because he did not disclose the classified
3  sources. *Id.* That obligation is not contingent on a motion to compel. Moreover, "failure[s] to dis-
4  close" information required under Rule 26(a) are governed by Rule 37(c), which, in turn, provides
5  that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e),
6  the party is not allowed to use that information or witness to supply evidence on a motion, at a
7  hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P.
8  37(c). Under its plain language, Rule 37(c) does not require a motion to compel, and indeed the
9  court in *Woodall* applied Rule 37(c) when excluding the expert testimony, without any discussion
10 of a motion to compel.[6] *See Woodall*, 2025 WL 659750, at *2 (not referencing any motion to com-
11 pel). Here, too, Col. Shepard's failure to disclose the classified information is not "substantially
12 justified or harmless," because NSO chose to inject his expert testimony into this case in a manner
13 that necessarily limits Plaintiffs' and the Court's ability to evaluate the foundation of Col. Shep-
14 ard's testimony and Plaintiffs' ability to cross-examine him at trial.[7]

---

[6] Indeed, courts in the Ninth Circuit routinely decide Rule 26 deficiencies together with *Daubert* motions. *See, e.g.*, *Woodall*, 2025 WL 659750, at *2 (collecting cases); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 949 (N.D. Cal. 2015) (finding that an expert was precluded from relying on phone conversations he had with witnesses because he failed to timely disclose the conversations under Rule 26 and the opposing party only learned about them during the witnesses' deposition, without reference to any prior motion to compel). NSO relies on two inapposite cases to argue that Plaintiffs were required to compel these required disclosures. In both cases, the courts denied "exclusionary sanctions" in circumstances where the expert report was nonexistent or woefully deficient and the opposing party delayed in taking action. *See Krause v. Hawaiian Airlines, Inc.*, 2019 WL 13225251, at *4 (E.D. Cal. June 7, 2019) (the retained expert produced "no written report whatsoever" and the court found "perhaps equally dubious" the defendant's decision to wait and move to strike rather than compel); *Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*, 185 F. Supp. 2d 1103, 1107 (C.D. Cal. 2001) (finding expert reports failed to comply with Rule 26 in many ways and court was "persuaded by plaintiffs' argument that defendants now attempt to exploit plaintiff's failure to comply with [Rule 26] in order to designate rebuttal experts that should have been designated long ago.") Here, Plaintiffs were not aware of Col. Shepard's reliance on "classified" information until his deposition, and, in any case, seeking to compel the "classified" information would have been futile given Col. Shepard's testimony that he could not share classified information absent the recipient having security clearance. *See, e.g.*, Tr. 318:5–320:10.

[7] As the courts in *In re Leap* and *Woodall* found, Rule 403 is an alternative basis to exclude Col. Shepard's testimony for his failure to disclose classified sources. The court in *Woodall* explains:

> Moreover, while [the expert's] opinion based on the undisclosed confidential agreements may be probative, its probative value is substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403. *See In re Leap Wireless*

Accordingly, the Court should exclude Col. Shepard's testimony because he considered and relied on classified information in forming his opinions.

## II. Col. Shepard Is Not Qualified To Offer His Proffered Opinions.

Col. Shepard must be "qualified . . . by knowledge, skill, experience, training, or education" to give the opinions that he is offering in this case. Fed. R. Evid. 702. Experts are not qualified to offer any opinion related to the field simply because they have general experience in the field. *See Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) ("lack of specialization may go to weight only 'as long as an expert stays within the reasonable confines of his subject area'") (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969–70 (10th Cir. 2001)).

As NSO acknowledges, Col. Shepard's purported qualifications are rooted only in his experience. *See* Opp. at 2–5. Col. Shepard himself explained that he is "operational" and not "academic." Tr. at 175:9–17. It is not possible for Plaintiffs and the Court to meaningfully evaluate Col. Shepard's "operational"-based qualifications because he withholds significant details from the experiences he argues form the basis of his opinions as "classified" information. For example, NSO argues that Col. Shepard is qualified to opine on the "routine use of tools like Pegasus" and the "marketplace for such commercial tools," Report ¶¶ 26–32, because of his "specialized experience," which NSO argues includes "███████████████████████████████████" and being "███████████████████████████████████," Opp. at 4. However, as discussed above, Col. Shepard refused to discuss these very details because they are "classified." *See supra* at 3–5. He likewise refused to testify about the "██████" purportedly ███████████████ as "classified." *See* Tr. at 80:6–81:11

---

*Int'l, Inc.*, 301 B.R. 80, 84–85 (Bankr. S.D. Cal. 2003) (finding where expert declined to disclose the underlying facts or data for his opinion at his deposition and at trial that '[a]lthough this evidence may be probative, its probative value is substantially outweighed by the danger of unfair prejudice,' reasoning '[t]he Court is left with a report which inextricably relies on confidential information for the conclusions reached by the witness' and '[t]he Court and [opposing party] are left with the bare option of, to paraphrase, to trust but not to verify').

*Woodall*, 2025 WL 659750, at *2. NSO does not address this Rule 403 argument in its opposition brief. *Compare* Opp. at 5–7 *with* Mot. at 7 n. 5 (requesting that the Court apply *In re Leap* and exclude Col. Shepard's testimony under Rule 403, if it does not exclude it under Rule 702).

1  ("█████████████████████████████████
2  ███████████████████████████████"). In another example, NSO also argues that
3  Col. Shepard is qualified because he "███████████████████████████
4  ██████████████████████████████████." Opp. at 3.  Col.
5  Shepard, again, would not testify about conversations he had with "████████████"
6  because they are "Classified." Tr. at 98:19–103:21 ("████████████████
7  ██████████████████████████████████████
8  █████████"). Col. Shepard explained that he could only "████████████
9  ██████████████████████████████████████
10 ██████████████████████████████████████
11 ████████." Tr. at 106:16–20.

12  These examples show why Col. Shepard's failures to provide information are inextricably linked to his purported qualifications, rendering him unqualified. *See United States v. Valencia-Lopez*, 971 F.3d 891, 901 (9th Cir. 2020) (finding that general law enforcement expertise is not sufficient when the expert "never explained the methodology, if any, that he relied on to arrive at the near-zero probability of drug trafficking organizations using coerced couriers"); *United States v. Cerna*, 2010 WL 11627594, at *6 (N.D. Cal. Dec. 17, 2010) (Experts relying on their experience must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinions, and how that experience is reliably applied to the facts." (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000))).[8]

**III.   Col. Shepard's Opinions Should Be Excluded Because They Are Not Reliable**

The five opinions Col. Shepard offers are unreliable and should be excluded.

---

[8] NSO's reliance on an out-of-circuit case, *V3 World Mgmt., Inc. v. Synergy Worldwide, Inc.*, *see* Opp. at 7, is inapposite because the expert was an attorney being offered as an "industry standards expert" who "declined to disclose the details of his professional experience . . . due to the attorney-client privilege." 2019 WL 2325968, at *1, 2 (D. Utah May 31, 2019).  Col. Shepard is not an "industry-standard" expert.  Moreover, unlike the expert in *V3 World*, he does not have "sufficient information to establish his qualifications and the facts or data upon which his opinion[s] [are] based," *id.* at *2, particularly absent the withheld information.

1 *First*, Col. Shepard's opinion that "Threat Actors Use Encrypted Messaging Applications to Undermine U.S. and Allied National Security" is unreliable because his testimony fails to bridge the analytical gap between his experience and the conclusions reached. *See* Report ¶¶ 23–25; Mot. at 7–8. For example, Col. Shepard testified that based on his personal experience, "▮▮▮▮▮▮" or "▮▮▮▮▮▮" of "threat actors" used encrypted messaging applications without any support. Tr. at 173:7–175:19; Mot. at 8. NSO is wrong to dismiss this language as Col. Shepard "speaking colloquially" and Plaintiffs' argument as a "red herring." Opp. at 9. "District courts have a longstanding responsibility to screen expert testimony, and to prevent unfounded or unreliable opinions from contaminating a jury trial." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022). In exercising that gatekeeping role, the Court should preclude Col. Shepard from presenting his opinion, based on this unsupported figure, to the jury from the elevated status of an expert. *See also Lin*, 2024 WL 5199905, at *12 (excluding expert from testifying because "she offers no reliable methodology or basis for her conclusory statements," including testimony that "probably 99 percent of their market -- are not doctors like me").

*Second*, Col. Shepard's opinion concerning the "routine use of tools like Pegasus . . . by the U.S. and allied countries" as well as the "operational gaps that the lack of such tools would create in attempting to counter threat actors using encrypted messaging applications," Report ¶ 1, is unreliable. Col. Shepard's testimony that there are instances where the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not, as NSO argues, consistent with his opinion that "The U.S. and its Allies Widely Use Surveillance Tools like Pegasus." Opp. at 10; Report at 8. Col. Shepard was very clear that he has no firsthand knowledge of the ▮▮▮▮▮▮▮▮▮▮▮▮. Tr. at 82:13–83:9, 244:21–245:12. The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Opp. at 10; Tr. at 83:5–85:2, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Opp. at 10; Tr. at 84:7–14, does not support Col. Shepard's opinion that the United States "widely use[s] surveillance tools like Pegasus," Report at 8. Col. Shepard's testimony on this topic is wholly speculative and should be excluded. *Ollier v. Sweetwater Union*

10

*High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (An expert's opinions are "inherently unreliable" if they do not rest on a sufficient factual foundation and are "speculative.").

Col. Shepard's opinion regarding "U.S. allies" use of Pegasus or similar technologies is likewise inadmissible. As already discussed, Col. Shepard refused to provide the identities of many of the allies he claimed used Pegasus because the information is "classified." *See supra* at 3–5. Further, Col. Shepard has also not reviewed the ███████████████████████. Tr. at 287:10–12. In refusing to produce this list during discovery, NSO argued that "[n]either Plaintiffs' claims nor NSO's defenses rise or fall on those identities" of NSO's customers. Dkt. No. 249-2 at 13. Despite this, NSO is now trying to inject expert testimony on this topic into the damages trial, impeding Plaintiffs' cross-examination of Col. Shepard both because NSO did not produce its customer list and Col. Shepard maintains that the identity of many of the customers he is aware of are classified.

*Third*, Col. Shepard has no reliable basis to opine on the "the marketplace for such commercial [surveillance] tools and the need to maintain them as confidential." Report ¶ 1; *see also* Report ¶¶ 18, 31–35. Col. Shepard's general cybersurveillance knowledge is an insufficient basis for his marketplace opinions. While Col. Shepard claims that he is "familiar with the marketplace of commercial and non-commercial cyber-security tools, including Pegasus, used by the United States and its allies/partners," Report ¶ 18, his deposition testimony undermines this supposed familiarity. As stated above, Col. Shepard testified that he has no firsthand knowledge or experience with the United States licensing Pegasus and refused to disclose the U.S. allies that he says supposedly licensed NSO's spyware (a topic on which NSO has also withheld discovery) claiming such information is "classified." *See* Tr. at 82:13–83:9, 244:21–245:12. More specifically, Col. Shepard testified that he has ██████████████████████████████████████. Tr. at 246:2–247:19. As NSO recognizes, an expert's testimony must "stay[] within the reasonable confines of his subject area," *Avila*, 633 F.3d at 839 (citation omitted), and Col. Shepard's does not.

*Fourth*, Col Shepard does not have a reliable basis to opine that "[i]ntelligence agencies typically do not follow ordinary terms of service when acting in a governmental capacity and pursuing major security and safety threats," and that "many non-government users routinely engage in activities that are inconsistent with the Terms of Service and without adverse action by providers."

1  Report ¶¶ 36–37.  Col. Shepard fails to provide any description or example of any violation of any
2  terms of service, let alone the WhatsApp Terms of Service by a government actor, and NSO does
3  not argue otherwise.  Opp. at 13–14.  Rather, NSO seeks to rely on Col. Shepard's general military
4  experience, which is an insufficient basis for something he claims "routinely" happens.  Opp. at
5  13–14; Report ¶ 37.  Col. Shepard merely recites general examples of actions that he believes vio-
6  late the Terms of Service.  Tr. at 250:21–251:23; Tr. at 384:6–10.

7        *Even if this was a sufficient basis—which it is not—Col. Shepard clearly testified that he
8  had not read the WhatsApp Terms of Service in connection with his engagement and had no under-
9  standing of whether the WhatsApp Terms of Service prevented the conduct he described.  Tr. at
10  251:24–252:18; *see also* Tr. at 384:17–20 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.").  Because Col.
12  Shepard has no idea what the WhatsApp Terms of Service permit or prohibit, he has no basis to
13  opine on compliance with these terms of service.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
14  509 U.S. 579, 590 (1993) (noting that expert testimony based on mere "subjective belief or unsup-
15  ported speculation" is inadmissible).

16        *Finally*, Col. Shepard has no basis to opine that "many cyber surveillance tools do not have
17  the safeguards that Pegasus does."  *See* Report ¶¶ 38–45.  Col. Shepard's report merely rehashes
18  NSO's marketing materials and does not name or describe the safeguards of any other tool.  *See id.*
19  Despite NSO's statements to the contrary, Opp. at 14, Col. Shepard clearly testified that he did not
20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Tr. at 402:21–
21  403:2 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.").  NSO also ignores the fact that Col.
22  Shepard's opinion necessarily requires him to have compared Pegasus' safeguards with other cyber
23  surveillance tools.  Opp. at 14.  Such a comparison requires a level of familiarity where Col. Shep-
24  ard would—at a minimum—be able to name the other "cyber surveillance tools" even if they are in
25  a foreign language.  Opp. at 14.

### IV. Col. Shepard's Testimony Should Be Excluded Because His Opinions Will Not Help the Jury Determine Damages or the Court Determine Injunctive Relief

#### A. Col. Shepard's Opinions Are Irrelevant to Punitive Damages.

Col. Shepard's opinions, which all relate to NSO's policy arguments regarding Pegasus's purported beneficial use for governments and law enforcement, "have no relevance to the legal and factual matters to be resolved by the jury" in the damages-only trial and thus should be excluded. *Brice v. Haynes Invs., LLC*, 548 F. Supp. 3d 882, 903 (N.D. Cal. 2021). NSO's argument that Col. Shepard's testimony is relevant to the availability of punitive damages and injunctive relief, *see* Opp. at 15–19, ignores binding authority and does not withstand scrutiny.

Regarding punitive damages, NSO incorrectly maintains that without Col. Shepard's testimony, the "jury cannot properly determine whether NSO's conduct in licensing Pegasus was so reprehensible it warrants imposition of punitive damages." *Id.* at 15. In making this argument, NSO ignores the law, including from the Supreme Court, establishing that "[p]unitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud or malice in the conduct which gave rise to liability in the case." *Medo v. Super. Ct.*, 251 Cal. Rptr. 924, 926 (Cal. Ct. App. 1988); *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–23 (2003) (noting that with punitive damages, "[a] defendant should be punished for the *conduct* that harmed the plaintiff" (emphasis added)). Col. Shepard has no knowledge of facts about the conduct at issue in this case (i.e., NSO's attacks on WhatsApp's servers). *See* Tr. 240:12–25 (███████████████████ ███████████████████); Report at 17 (listing five "additional documents" that Col. Shepard reviewed that were produced in this litigation); Tr. at 345:12–346 (███████████████████ ███████████). Ignoring relevant authority, NSO seeks to expand the scope of the conduct at issue relevant to the jury's assessment of punitive damages to include NSO's corporate character. *See* Opp. at 16–17. NSO's arguments may be relevant to why NSO is not a "reprehensible defendant," but they are irrelevant to the availability of punitive damages, because "[p]unitive damages are a means to punish reprehensible conduct, not a reprehensible defendant." *Mims v. Fed. Express Corp.*, 2015 WL 12711651, at *9 (C.D. Cal. Jan. 15, 2015); *see In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2 (D. Ariz. Feb 15, 2018) ("Countering Plaintiffs' punitive damages arguments

does not mean . . . that Defendants can present irrelevant evidence or try this case on the basis of corporate character.").[9]

Colonel Shepard's testimony, moreover, is not akin to the type of expert testimony on "a challenged product or technology" for punitive damages that courts allow.  *See* Opp. at 9.  In the cases NSO cites, courts allowed expert testimony on the harms that the plaintiff allegedly suffered due to the challenged product or technology.  *See Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 899, 901 n.4 (9th Cir. 2022) (describing expert testimony that "increased NOx emissions increase the risk of harm to human health" in a case brought by class-action opt-out plaintiffs about "emissions defeat devices installed" in their cars); *Hadley v. Kellogg Sales Co.*, 2019 WL 3804661, at *16–17 (N.D. Cal. Aug. 13, 2019) (court crediting that plaintiff's expert "admitted that he could not find one study that finds that cereal consumption increases the risk of coronary heart disease, diabetes, or obesity" in case where plaintiff, "a frequent cereal eater for many years" sued Kellogg alleging misleading "heart healthy" cereal packaging); *Buell-Wilson v. Ford Motor Co.*, 73 Cal. Rptr. 3d 277, 290, 312 (Ct. App.), *as modified on denial of reh'g* (Apr. 10, 2008), *review granted and opinion superseded*, 187 P.3d 887 (Cal. 2008) (determining that the jury properly weighed for punitive damages each party's "expert testimony concerning the design and safety issues of the Explorer" in a case where a husband and wife sued Ford "as a result of [a] rollover and roof crush of her Ford Explorer . . . that left her a paraplegic").  Col. Shepard's proffered testimony is distinguishable from the testimony at issue in these cases, because, in each of these cases, there was close a connection between the *harm alleged to be* caused by the conduct at issue and the expert testimony relevant to punitive damages.  Col. Shepard's opinions, however, are not about the conduct at issue, or about any harm suffered by Plaintiffs.  They are not even about a "product or technology."  Opp. at 17.

---

[9] Defendants are wrong to rely on *Hardeman v. Monsanto* to suggest that Col. Shepard's testimony is permissible indirect evidence of NSO's intent. Opp. at 16 (citing *Hardeman v. Monsanto Co.*, 997 F.3d 941, 971 (9th Cir. 2021)).  In that case, the court explained that "malice may be proved either expressly through direct evidence or by implication through indirect evidence from which the jury draws inferences," and then determined that "[s]ubstantial evidence of Monsanto's malice was presented to the jury, supporting [the] punitive damages" awarded.  *Hardeman*, 997 F.3d. at 971.  This decision does not stand for the proposition that a defendant may disprove malice by introducing speculative expert testimony, untethered to the conduct at issue, about purported benefits of its product to society at large.  This is what NSO seeks to do through Col. Shepard.

### B. Col. Shepard's Opinions Are Irrelevant to Injunctive Relief and, in Any Case, Should Not Be Heard by the Jury.

The undisputed facts, based on the Court's decision on summary judgment, permit the Court to grant Plaintiffs' pending motion for injunctive relief without holding an evidentiary hearing. *See* Dkt. Nos 557-3, 637. Setting that aside, NSO argues that Col. Shepard's opinions are relevant to injunctive relief because they speak to the "public interest," *see* Opp. at 18, but his opinions are too speculative for this to be true. *See Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 533 F. Supp. 3d 802, 816–17 (N.D. Cal. 2021) (holding that public interest favored injunction prohibiting defendant's surreptitious video recordings and rejecting defendant's argument that such recordings serve the public interest by assisting in government investigations where defendants "do not . . . identify any [materials] . . . that led directly to any [government] prosecutions or regulatory actions" and "there is at most a weak connection between those [government] activities and the specific [materials] covered by the Preliminary Injunction" (emphasis added)), *aff'd*, 2022 WL 3572943 (9th Cir. Aug. 19, 2022).

In any case, NSO admits that "the "entitlement to injunctive relief is a question for the Court," not the jury, but insinuates that the jury should nevertheless hear Col. Shepard's testimony because "[i]t remains relevant to punitive damages." Opp. at 18. If the Court concludes, as it should, that Col. Shepard's testimony is not relevant to punitive damages, then NSO must concede there is no basis for the jury to hear his testimony.[10] *See also* Dkt. No. 592-3 at 14–17.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to exclude the expert opinions of Col. Ty Shepard.

---

[10] NSO references the Court's order directing the parties to "consider whether an evidentiary hearing or special interrogatories to the jury is the appropriate procedure for resolving any factual disputes," Dkt. No. 577 at 2, but omits that NSO did not propose any special interrogatories to the jury in connection with its pretrial filings," *see, e.g.*, Dkt. Nos. 587-5, 589-2.

| | |
|---|---|
| Dated: March 27, 2025 | Respectfully Submitted,<br><br>DAVIS POLK & WARDWELL LLP<br><br>By: /s/ Greg D. Andres<br>　　　Greg D. Andres<br>　　　Antonio J. Perez-Marques<br>　　　Gina Cora<br>　　　Craig T. Cagney<br>　　　Luca Marzorati<br>　　　  (admitted *pro hac vice*)<br>　　　DAVIS POLK & WARDWELL LLP<br>　　　450 Lexington Avenue<br>　　　New York, New York 10017<br>　　　Telephone: (212) 450-4000<br>　　　Facsimile: (212) 701-5800<br>　　　Email: greg.andres@davispolk.com<br>　　　　　　antonio.perez@davispolk.com<br>　　　　　　gina.cora@davispolk.com<br>　　　　　　craig.cagney@davispolk.com<br>　　　　　　luca.marzorati@davispolk.com<br><br>　　　Micah G. Block (SBN 270712)<br>　　　DAVIS POLK & WARDWELL LLP<br>　　　900 Middlefield Road, Suite 200<br>　　　Redwood City, California 94063<br>　　　Telephone: (650) 752-2000<br>　　　Facsimile: (650) 752-2111<br>　　　Email: micah.block@davispolk.com<br><br>　　　*Attorneys for Plaintiffs*<br>　　　*WhatsApp LLC and Meta Platforms, Inc.* |