JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
 *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:  (213) 443-4355
Facsimile:  (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DAVID J. YOUSSEF**<br><br>Date:  April 10, 2025<br>Time:  2:00 p.m.<br>Place:  Courtroom 3, Ronald V. Dellums Federal Building & U.S. Courthouse, 1301 Clay Street, Oakland, California<br><br>**FILED UNDER SEAL**<br><br>**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]**<br><br>Action Filed: 10/29/2019 |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................... 1

II. ARGUMENT ...................................................................................................................... 1

    A. The Court should exclude Mr. Youssef's challenged opinions as irrelevant. .......... 1

        1. Plaintiffs are judicially estopped from arguing that Mr. Youssef's opinions are relevant. ................................................................................ 2

        2. Plaintiffs do not dispute that certain challenged opinions are irrelevant. ....................................................................................................... 4

    B. Mr. Youssef's Opinions should be excluded as unhelpful, unsupported, unreliable, and unfairly prejudicial. ............................................................................ 5

        1. Mr. Youssef's implications that Pegasus damaged WhatsApp's servers lack factual support. ............................................................................ 6

        2. Mr. Youssef's description of Pegasus as "spyware" is unreliable and unfairly prejudicial. ................................................................................ 10

        3. Mr. Yousef's prediction that NSO intends to (and will) create more WhatsApp-based delivery vectors is rank speculation. ................................. 11

        4. Mr. Youssef's opinion that Pegasus successfully exploited 1,500 target devices lacks factual support. ............................................................. 13

        5. Mr. Youssef's opinion that Pegasus "camouflaged" its messages is unsupported and unhelpful. ............................................................................ 13

III. CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baumann v. Am. Family Mut. Ins. Co.*,
 836 F.Supp.2d 1196 (D. Col. 2011) .................................................................................... 8

*Claar v. Burlington N. R. Co.*,
 29 F.3d 499 (9th Cir. 1994) ................................................................................................ 11

*DePaepe v. Gen. Motors Corp.*,
 141 F.3d 715 (7th Cir. 1998) .............................................................................................. 12

*Elosu v. Middlefork Ranch Inc.*,
 26 F.4th 1017 (9th Cir. 2022) ............................................................................................. 10

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*,
 402 F.3d 1092 (11th Cir. 2005) ............................................................................................ 9

*Hamilton v. State Farm Fire & Cas. Co.*,
 270 F.3d 778 (9th Cir. 2001) ................................................................................................ 2

*Hynix Semiconductor Inc. v. Rambus Inc.*,
 2009 WL 230039 (N.D. Cal. Jan. 27, 2009), *aff'd*, 645 F.3d 1336 (Fed. Cir. 2011) ................................................................................................................................... 4

*Kroeger v. Vertex Aerospace LLC*,
 2020 WL 3546086 (C.D. Cal. June 30, 2020) ............................................................... 5, 10

*Lanard Toys Ltd. v. Anker Play Prods., LLC*,
 2020 WL 6873647 (C.D. Cal. Nov. 12, 2020) ................................................................... 11

*New Hampshire v. Maine*,
 532 U.S. 742 (2001) ............................................................................................................. 2

*Ollier v. Sweetwater Union High Sch. Dist.*,
 768 F.3d 843 (9th Cir. 2014) ................................................................................................ 9

*Ramachandran v. City of Los Altos*,
 2022 WL 316679 (N.D. Cal. Feb. 2, 2022) .......................................................................... 8

*Ryanair DAC v. Booking Holdings Inc.*,
 2024 WL 3732498 (D. Del. June 17, 2024) ....................................................................... 12

*Sanderson v. Int'l Flavors & Fragrances, Inc.*,
 950 F. Supp. 981 (C.D. Cal. 1996) ............................................................................... 11, 12

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
 318 F. Supp. 2d 879 (C.D. Cal. 2004) .................................................................................. 9

**Statutes**

18 U.S.C. § 1030 ................................................................................................................. 7

**Other Authorities**

Fed. R. Evid. 403 ................................................................................................................ 8

Fed. R. Evid. 702 .......................................................................................................... 3, 11

Rule 30(b)(6) ...................................................................................................................... 7

## I. INTRODUCTION

As explained in NSO's motion, many of Mr. Youssef's opinions are irrelevant or otherwise unhelpful to the jury, unsupported, unreliable, or unfairly prejudicial. Nothing in Plaintiffs' opposition alters that conclusion.

*First*, Plaintiffs should be bound to their prior representations to the Court that all of Mr. Youssef's testimony has been rendered irrelevant by the Court's liability ruling. Plaintiffs cannot be allowed to shield Mr. Youssef from his discovery obligations by convincing the Court that none of his opinions remain relevant (as Plaintiffs did) and move to exclude NSO's technical expert testimony on the same basis (as Plaintiffs did), only then to reverse course and introduce Mr. Youssef's testimony at trial. NSO was denied the opportunity fully and fairly to depose Mr. Youssef, including on topics relating to damages. NSO should not be required to do so on the eve of trial.

*Second*, NSO identified ten of Mr. Youssef's opinions as no longer relevant. Plaintiffs fail to explain why NSO is wrong about any of them. Instead, they focus on different opinions they believe remain relevant. The ten opinions NSO did challenge should therefore be excluded.

*Third*, at least five of Mr. Youssef's opinions should be excluded on the independent grounds that they are unhelpful to the factfinder, unsupported by facts or data, otherwise unreliable, or unfairly prejudicial. Mr. Youssef has no factual support for his insinuations that Pegasus somehow damaged WhatsApp's servers. His opinion that Pegasus should be considered spyware is unreliable and unfairly prejudicial. His opinion that NSO will continue to make use of installation vectors involving WhatsApp is rank speculation, and his opinion that the prior vectors were used to successfully install Pegasus nearly 1,500 times is unsupported. Finally, his opinion that NSO "camouflaged" Pegasus is not supported by any reliable methodology.

## II. ARGUMENT

### A. The Court should exclude Mr. Youssef's challenged opinions as irrelevant.

Three months ago, Plaintiffs argued strenuously—and successfully—that *all* of Mr. Youssef's opinions are "irrelevant and unnecessary" in light of the Court's summary judgment order. (Dkt. 498 at 4.) The Court denied NSO additional time to depose Mr. Youssef on the basis

of those arguments. (Dkt. 519 at 3.)  Accordingly, in early January, NSO moved to exclude at least ten of Mr. Youssef's opinions as irrelevant.  (Mot. 4-7.)  But Plaintiffs now reverse their position and argue that at least some of Mr. Youssef's opinions remain relevant to the damages trial.  (Opp. 1, 5-8.)

This Court should not accept Plaintiffs' about-face.  *First*, because Plaintiffs successfully shielded Mr. Youssef from discovery by arguing that his opinions are irrelevant, Plaintiffs are judicially estopped by arguing the opposite now.  *Second*, Plaintiffs largely do not dispute NSO's arguments that the ten challenged opinions are irrelevant.  Instead, they argue that nine broad categories of opinions—most not challenged by NSO on relevance grounds—*are* relevant.  (Opp. 6-8.)  To the extent Plaintiffs do not defend the opinions NSO challenged as irrelevant, Plaintiffs have waived any such defense.  And any remaining opinions remain irrelevant for the reasons set forth in NSO's motion.  This Court should therefore exclude at least the ten challenged opinions.

### 1. Plaintiffs are judicially estopped from arguing that Mr. Youssef's opinions are relevant.

Judicial estoppel bars Plaintiffs from arguing that any of Mr. Youssef's opinions are relevant. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Courts apply the doctrine where: (1) the party's position is "clearly inconsistent" with an earlier position, (2) "the party has succeeded in persuading a court to accept that party's earlier position," and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 782-83 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

Those requirements are satisfied here. When NSO moved for additional deposition time with Mr. Youssef, it argued that Mr. Youssef's testimony was relevant because he "is likely to testify about remedy issues," such as "whether Pegasus altered, damaged, or deleted data from WhatsApp servers." (Dkt. 498 at 1-3.) Plaintiffs argued otherwise, contending that the Court's summary judgment order rendered Mr. Youssef's testimony "irrelevant and unnecessary." (*Id.* at

4.) The Court adopted Plaintiffs' position and consequently denied NSO's request to reopen Mr. Youssef's deposition. (Dkt. 519 at 3.)[1] Yet now, Plaintiffs intend to call Mr. Youssef at trial to testify about the very same "technical issues" (Dkt. 498 at 4) they previously told this Court were irrelevant. (Opp. 1, 8; Dkt. 580 at 2.)

That conduct satisfies all three elements for judicial estoppel. *First*, Plaintiffs' current position (Mr. Youssef's opinions are relevant to damages issues) is clearly inconsistent with Plaintiffs' earlier position (Mr. Youssef's opinions are *not* relevant to damages issues). Indeed, Plaintiffs argue in the pending opposition that Mr. Youssef's technical opinions should not be excluded because they are "necessary to the jury's consideration" (Opp. 1), whereas they previously argued that Mr. Youssef's deposition should not be reopened because his technical opinions were "irrelevant and unnecessary" to the jury's consideration (Dkt. 498 at 4).

*Second*, Plaintiffs succeeded in persuading the Court to accept their earlier position that Mr. Youssef's testimony was "irrelevant and unnecessary." (Dkt. 498 at 4.) This Court denied NSO's motion to reopen Mr. Youssef's deposition on the basis of Plaintiffs' position that "the dispute is almost certainly moot" because the Court's "ruling resolving all issues of liability" rendered technical opinions irrelevant. (Dkt. 519 at 3.) Indeed, the Court stated outright that "no testimony from plaintiffs' technical expert will be presented." (*Id.*)

*Third*, Plaintiffs would derive an unfair advantage and impose an unfair detriment on NSO if not estopped. NSO moved for additional deposition time with Mr. Youssef on December 23, 2024. (Dkt. 498.) Three months have passed, and it is now the eve of trial, with jury selection scheduled to begin April 28, 2025. NSO has already submitted a large portion of its pre-trial filings, including its witness list, its exhibit list, its *Daubert* motions, its motions in limine, its jury instructions, and various other materials that all depended on having a complete, accurate understanding of the testimony that Plaintiffs' experts intended to provide. NSO has been forced to do all this without the benefit of the additional deposition testimony it sought from Mr. Youssef, and the substantial

---

[1] Plaintiffs have taken the same position in moving to exclude the opinions of NSO's technical expert as irrelevant under the Court's summary judgment order. (Dkt. 513-3 at 1 ("All of Mr. McGraw's opinions should be excluded under Federal Rule of Evidence 702 because they advance contentions not relevant to the determination of damages.").)

1  filings and looming trial date make it too late to reopen Mr. Youssef's deposition now. It would
2  be unfair for Plaintiffs to gain the advantage of shielding Mr. Youssef from discovery by arguing
3  that his opinions are irrelevant, only to then benefit from his opinions at trial by arguing that they
4  are relevant after all. *See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 2009 WL 230039, at *9
5  (N.D. Cal. Jan. 27, 2009) (applying estoppel in the context of arguments about the admissibility of
6  experts), *aff'd*, 645 F.3d 1336 (Fed. Cir. 2011).

    Plaintiffs try to head off this estoppel issue by reimagining their earlier position as limited
to opposing additional deposition time only *"on issues that relate solely to NSO's liability."* (Opp.
5, 6 n.3.) But that reimagination is pure fantasy. In the parties' joint letter brief, NSO argued
expressly that Mr. Youssef's opinions were relevant to "punitive damages," and it specifically
named some of those opinions (e.g., "NSO's use of WhatsApp relay servers"). (Dkt. 498 at 1, 3.)
In response, Plaintiffs did not concede that Mr. Youssef's testimony was indeed relevant to punitive
damages (as they now argue). Nor did they offer to reopen Mr. Youssef's deposition on opinions
relevant to that topic. Instead, they argued that NSO's motion was wholesale "moot" because Mr.
Youssef's technical opinions were *entirely* irrelevant. (*Id.* at 4.) That directly contradicts Plaintiffs'
new position that Mr. Youssef's opinions on (for example) "[t]he technical background of NSO's
attacks" are relevant to punitive damages.

    Plaintiffs are estopped from arguing that any of Mr. Youssef's opinions are now relevant,
including the ten opinions that NSO has urged the Court to exclude as irrelevant. (Mot. 4-7.) For
example, the Court should bar Plaintiffs' relevance arguments concerning Mr. Youssef's labeling
of Pegasus as "spyware" (Opp. 13-14), his use of other pejoratives like "hack" (*id.* at 11), and his
opinions on reverse-engineering (*id.* at 3). With Plaintiffs' arguments on these issues barred, the
Court should exclude the corresponding opinions as irrelevant.

### 2.  The challenged opinions are irrelevant.

    Even if Plaintiffs were not judicially estopped from arguing that Mr. Youssef's opinions are
relevant, Plaintiffs do not defend many of the ten opinions NSO challenges as irrelevant. Rather
than addressing those ten opinions, Plaintiffs list their own set of nine general topics that they say
*are* relevant to punitive damages. (Opp. 6-8.) But NSO has not argued that all testimony on those

4

nine general topics is irrelevant, and Plaintiffs make no effort to tie those topics to the ten opinions NSO *has* challenged. Plaintiffs' arguments are therefore largely unresponsive.

To begin, Plaintiffs do not defend the relevance of Mr. Youssef's use of undefined pejoratives, such as those used in his opinions that NSO (1) "exploited," "hacked," "abused," or "weaponized" WhatsApp;[2] (2) used WhatsApp in a way that was not "intended"; or (3) "impaired the integrity of WhatsApp servers." (Mot. 5.) Plaintiffs therefore concede the irrelevance of these opinions. *See Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (collecting cases for proposition that failure to respond to an argument in an opening brief constitutes waiver). In other places, Plaintiffs narrow or recharacterize Mr. Youssef's opinions. For example, Plaintiffs argue that Mr. Youssef can opine on "the number of NSO targets" (Opp. 8), but NSO challenged his distinct (and false) opinion that Pegasus "*successfully exploited* at least 1,500 target devices" (Mot. 6-7 (cleaned up and emphasis added)). Here too, by not offering any response to the actual opinions NSO challenges, Plaintiffs have waived any defense of those opinions.

Plaintiffs dispute few of NSO's arguments directly, and the arguments they raise lack merit. For example, Plaintiffs argue that Mr. Youssef's testimony "about NSO's software development efforts" is relevant. (Opp. 8.) But Plaintiffs cannot take that position while simultaneously moving to exclude *NSO's* expert from opining on that same topic. (Dkt. 513-3 at 12-13.) Either that topic is relevant or it is not—Plaintiffs cannot have it both ways.

In sum Plaintiffs are not only estopped from arguing that *any* of Mr. Youssef's opinions are relevant, but their arguments with respect to the ten opinions NSO specifically challenges are either waived or meritless. The Court should exclude those opinions.

**B.    Mr. Youssef's Opinions should be excluded as unhelpful, unsupported, unreliable, and unfairly prejudicial.**

Relevance aside, at least five of Mr. Youssef's proposed opinions should be excluded as unhelpful, unsupported, unreliable, and unfairly prejudicial. (Mot. 7-18.) Plaintiffs' responsive

---

[2] Outside of Plaintiffs' relevance sections, Plaintiffs discuss some of the pejoratives—*e.g.*, "hack" (Opp. 11), "spyware" (*id.* at 14), and some others (*id.* at 11)—but to whatever extent those arguments relate to relevance, they are both judicially estopped and wrong for the reasons explained in the corresponding sections below.

arguments lack merit.

### 1.  Mr. Youssef's assertions that Pegasus damaged WhatsApp's servers lack factual support.

As NSO explained, all the evidence in this case—including the testimony of WhatsApp's 30(b)(6) witness Claudiu Gheorghe and Facebook's security engineer Drew Robinson—is uniform that Pegasus's use of WhatsApp's serves did not harm those servers. (Mot. 7-11.) The evidence is consistent that Pegasus did not "compromise" those servers, "impair them," "slow" them, "corrupt" or "delete" data on them, or cause them to execute any code WhatsApp had not itself written. (*Id.*) Consequently, it is not merely that some evidence contradicts Mr. Youssef's opinions that Pegasus damaged WhatsApp's servers—it is that those opinions have *no factual basis at all*.

#### a.  Mr. Youssef has no evidence that Pegasus "altered," "damaged," or "deleted" data from WhatsApp servers.

The Court should exclude Mr. Youssef's opinion that Pegasus "[a]ltered, [d]amaged, or [d]eleted data from WhatsApp servers." (Youssef Rep. at 34.) Mr. Youssef cites *no evidence* to support that opinion, and the only evidence on the topic—including the testimony of Plaintiffs' 30(b)(6) witnesses—confirms that the opinion is objectively wrong.

Plaintiffs mischaracterize NSO's argument as relying solely on "the existence of contrary evidence," which Plaintiffs argue does not render an opinion unsupported. (Opp. 10.) But NSO's argument is not merely that some evidence *contradicts* Mr. Youssef's opinion; it is that *no* evidence *supports* the opinion. Mr. Youssef identifies *no factual foundation* for his opinion that Pegasus altered, damaged, or deleted data from WhatsApp servers. Attempting to show otherwise, Plaintiffs cite paragraph 104 of Mr. Youssef's report (Opp. 10), but that paragraph only proves NSO's point. While the topic sentence asserts that Pegasus "manipulate[d] WhatsApp Servers and . . . Target Devices," the rest of the paragraph discusses manipulation only of *target devices*—not of WhatsApp *servers*. It contains no opinion that Pegasus "altered, damaged, or deleted data from WhatsApp servers," much less factual support for such an opinion.

Next, Plaintiffs fault NSO for representing "that '[t]he evidence is uniform that Pegasus's use of WhatsApp's servers was innocuous,' despite the Court finding as a matter of law that the

6

activity was unlawful and caused harm to Plaintiffs." (Opp. 10.) But there is no inconsistency between NSO's representation and the Court's liability ruling. Civil liability under CFAA liability requires *either* "damage" to infrastructure (*e.g.,* costs from impaired servers/service) *or* "loss" (*e.g.*, costs from investigating and remediating). 18 U.S.C. § 1030(g); *see also* 18 U.S.C. § 1030(e)(8), (e)(11) (defining "damage" and "loss"). The Court's liability ruling relied only on "loss": (1) the Court made no reference to any "damage" to WhatsApp infrastructure, and (2) when finding harm (for the breach-of-contract claim), the Court relied exclusively on Plaintiffs' "costs investigating and remediating." (Dkt. 494 at 15.) There is no inconsistency between the Court's finding that Plaintiffs incurred a "loss" by paying for investigation and remediation and NSO's position that Pegasus did not "damage" any *WhatsApp server*.[3]

Finally, Plaintiffs imply that the Court should disregard the binding testimony of Plaintiffs' own 30(b)(6) representatives—who testified that Plaintiff's infrastructure was not damaged—because those are "lay" witnesses and Mr. Youssef is an expert. (Opp. 10.) That argument is both misleading and irrelevant. It is misleading because the "lay" witnesses Plaintiffs appear to reference (Messrs. Gheorghe and Robinson) are Plaintiffs' own lead technical witnesses, both designated under Rule 30(b)(6) to speak for the Plaintiffs on technical issues. Though both are *fact* witnesses, each is perfectly competent to testify to the *fact* that no data on the WhatsApp servers were altered, damaged, or deleted. And when they do, they are expressing *Plaintiffs'* position. Moreover, the argument is irrelevant because, as an expert, Mr. Youssef cannot offer opinions unless evidence supports them, and neither Mr. Youssef nor Plaintiffs identify any evidence *supporting* his testimony. None exists.

### b.  Mr. Youssef's use of pejoratives to describe Pegasus's access to WhatsApp servers is unsupported and unhelpful.

As explained in NSO's motion, Mr. Youssef's application of various pejorative terms (like "hacked," "exploited," or "abused") to describe Pegasus's access to WhatsApp servers is

---

[3] The same goes for the Court's conclusion that NSO "caused harm" in California for purposes of personal jurisdiction. That ruling too refers to effects on Plaintiffs' *business* (*e.g.*, remediation costs), not harm to Plaintiffs' *servers* (let alone harm in the form of altering, damaging, or deleting data from those servers).

7

unsupported and unhelpful because those terms are both disconnected from any technical meaning and needlessly inflammatory. (Mot. 9-10.) Mr. Youssef cites no accepted meaning of those terms in any industry or field, let alone explains how the facts here fit that meaning. Instead, he appears to deploy this language merely to confuse and inflame by implying falsely that Pegasus somehow damaged WhatsApp's infrastructure or service. The testimony should therefore be excluded as unsupported and unhelpful. *See Baumann v. Am. Family Mut. Ins. Co.*, 836 F.Supp.2d 1196 (D. Col. 2011) (excluding expert's description of software as "incredibly confused and convoluted" because the description "was inflammatory, and thus would not assist jury"); *Ramachandran v. City of Los Altos*, 2022 WL 316679, at *3 (N.D. Cal. Feb. 2, 2022) (excluding rhetorical phrases under FRE 403 as "likely to confuse or mislead the jury").

Plaintiffs argue "Mr. Youssef actually explained his analysis in his deposition" (Opp. 11), but the testimony they cite proves the opposite (Dkt. 625-4 ("Youssef Tr.") at 201:3-17). Rather than explain his analysis, the testimony merely shows Mr. Youssef bouncing from one vague pejorative to another, without definitions, reason, or explanation. Mr. Youssef opens with a bare conclusion that WhatsApp's servers were "absolutely compromised," but he provides no explanation of what that term means or why it applies. (*Id.* at 201:9-10.) Next, Mr. Youssef pivots to the equally empty conclusion that Pegasus carried out "the exploitation of the servers," again without explaining what he means by that term, why he applied it, or what relation it bears to "compromised." (*Id.* at 201:10-13.) Mr. Youssef then swaps pejoratives once more, equating "exploitation" with "abuse" without explaining what either term means, why either applies, or why they are synonyms. (*Id.* at 201:13-16.) Together, then, the cited "analysis" is merely a set of three conclusory statements that WhatsApp servers were "compromised" because they were "exploit[ed]" and therefore "abuse[d]," all without explanation of what any of those terms mean, why they apply, or how they relate.

The only fact Mr. Youssef recites in this entire soliloquy is that Pegasus used WhatsApp to "transmit malicious code" to target devices. (*Id.* at 201:16.) But if that is all Mr. Youssef meant by "compromised," "exploit[ed]," and "abuse[d]"—and that appears to be the case—he could make that point more clearly and less prejudicially without resort to these undefined pejoratives, which

8

only serve to inflame the jury.

Turning to the word "hacking," Plaintiffs cite various third parties using that word in relation to the CFAA. (Opp. 11.) But these third-party uses are irrelevant to Mr. Youssef's opinions because he did not cite any of them, much less explain what they meant or apply their understanding in his opinions. Moreover, even if the Court's order were understood to imply that "hacking" occurred, that would still not mean that WhatsApp's *servers* were "hacked," because the Court did not find that NSO "hacked" WhatsApp's *servers*. It held, rather, that Pegasus obtained information from target devices *via* those servers. (Dkt. 494 at 12.)

Finally, Plaintiffs again argue that NSO's objections go only to the weight of Mr. Youssef's testimony. (Opp. 12.) Plaintiffs are again wrong, and for the same reason: NSO's argument is not that Mr. Youssef's opinion is *contradicted* by some evidence, but that it is *unsupported* by substantial (or any) evidence. Applying baseless, inflammatory pejoratives with false implications is not a matter for cross-examination; it is a matter of admissibility. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (rejecting expert testimony based on mere "subjective belief or unsupported speculation" as "inherently unreliable"); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 922 (C.D. Cal. 2004) (excluding expert testimony based on "assumptions" that "are unsupported"); *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) ("[A] trial court may exclude expert testimony that is 'imprecise or unspecific,' or whose factual basis is not adequately explained." (cleaned up)).

Once again, Plaintiffs resort to heaping doubt upon their own internal analysis documents and their own technical 30(b)(6) witnesses, none of whom disagreed with anything in those internal analysis documents. (Opp. 12.) For example, even though an internal WhatsApp presentation concluded unequivocally that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Plaintiffs argue that none of their corporate witnesses recalled the author of that statement, so the jury cannot know what the author meant by ▬▬▬▬▬ (Dkt. 512-7 at 5.) These arguments miss the point entirely. Again, the point is not that some documents contradict Mr. Youssef's opinions, but that *no* documents *support* them. It is not that the jury will not know what WhatsApp's internal analysis

9

meant by ▮▮▮▮▮ but that it will not know what *Mr. Youssef* meant by it.  An expert may not offer an opinion that is baseless.

Finally, Plaintiffs again argue that experts are allowed to disagree with "lay" witnesses, apparently including Plaintiffs' own 30(b)(6) witnesses on technical issues. (Opp. 12.)  But they mischaracterize *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2022), which did not, in fact, allow an expert witness to "contradict[] … multiple eye-witness accounts" (Opp. 12).  To the contrary, *Elosu* allowed the expert to testify because "[h]is theory was . . . *fully consistent* with the eyewitness testimony." *Id.* at 1027 (emphasis added).  In any event, NSO is—once again—not moving to exclude Mr. Youssef's opinion because it contradicts some witness testimony; NSO is moving to exclude the opinion because it has *no support* in the record.

### c. Plaintiffs do not oppose exclusion of Mr. Youssef's false opinion that Pegasus "impaired the integrity of WhatsApp servers."

As explained in the Motion, Mr. Youssef's opinion that Pegasus "impaired the integrity of WhatsApp servers" is untethered to the facts of this case (as well as inconsistent with Plaintiffs' agreement not to make any claim of reputational harm). (Mot. 10-11.)  Plaintiffs offer no response to this argument, and they thus concede the point. *See Kroeger*, 2020 WL 3546086, at *8.  The Court should grant this portion of NSO's motion as unopposed.

### 2. Mr. Yousef's description of Pegasus as "spyware" is unreliable and unfairly prejudicial.

As NSO argued, the Court should exclude Mr. Youssef's characterization of Pegasus as "spyware" because (1) it is not helpful to the jury in determining any disputed issue, (2) it is based on a definition of "spyware" that Mr. Youssef appears to have simply made up, and (3) its probative value is substantially outweighed by unfair prejudice. (Mot. 12-13.)

Plaintiffs provide no compelling response.

*First*, Plaintiffs respond that the "spyware" label is "helpful" as an "explanatory device for complicated technical concepts." (Opp. 12-13.)  But the fact that Mr. Youssef had to introduce his own definition of "spyware" belies the argument that the term is a useful "explanatory device" for the average juror.  And even if it were a useful explanatory device, many other phrases would be

even more useful while being less prejudicial. For example, Mr. Youssef could refer to Pegasus as "intercept" or "surveillance" technology. It is for the jury to decide whether Pegasus is inherently improper or, instead, has social utility in law enforcement and anti-terrorism efforts. Calling it "spyware" is simply another prong of Mr. Youssef's misleading name-calling effort, calculated to prejudice the jury without engaging on the relevant issues.

*Second*, Plaintiffs argue that Mr. Youssef's definition of "spyware" is consistent with those found in an online dictionary and various industry "sources." (Opp. 14.) That argument is irrelevant because Mr. Youssef does not cite any of those sources in his report, let alone purport to apply them in his opinion. Plaintiffs' attorneys cannot cure that failure by citing their own independent research in an opposition brief. *See Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 994-95 (C.D. Cal. 1996) (excluding expert testimony where "none of plaintiff's experts said he relied on any of" the "secondary sources mentioned in plaintiff's opposition," much less "explained precisely how he went about reaching his conclusions" (cleaned up)); *cf. Claar v. Burlington N. R. Co.*, 29 F.3d 499, 502-03 (9th Cir. 1994) ("Coming to a firm conclusion first and then doing research to support it is the antithesis of" methods acceptable under Rule 702).

### 3. Mr. Youssef's prediction that NSO intends to (and will) create more WhatsApp-based delivery vectors is rank speculation.

As NSO explained, Mr. Youssef's prediction that NSO will continue to utilize WhatsApp is impermissible speculation about another party's intent. (Mot. 13-16.) Even if it were not, the opinion is entirely unqualified and not the product of reliable methodology. (*Id.*)

Plaintiffs do not dispute that an expert may not opine about another party's intent. Instead, they deny that this is what Mr. Youssef is doing. (Opp. 15.) To support that assertion, however, Plaintiff quote a portion of Mr. Youssef's report in which he *confirms* he is opining about "Defendants' . . . intent." (Youssef Rep. ¶ 154.) That is unquestionably improper. *E.g.*, *Lanard Toys Ltd. v. Anker Play Prods., LLC*, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) (collecting cases). Plaintiffs argue "Mr. Youssef can justifiably opine on technical matters so the jury can then draw its own inferences about intent" (Opp. 15-16), but that is not what Mr. Youssef is doing. Instead, Mr. Youssef is opining *directly* about what NSO has the "intent" to do. (Youssef Rep.

¶¶ 154-55.) The case Plaintiffs cite, *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998), thus supports *NSO* by holding that experts may not opine on a defendant's intent.

Plaintiffs say Mr. Youssef's prediction is "consistent with NSO's internal documents" (Opp. 15), but an expert cannot opine about a party's subjective intent even if that opinion is consistent with documentary evidence. Moreover, the documents Plaintiffs cite are irrelevant to Mr. Youssef's opinions because he did not purport to rely on those documents. (Youssef Rep. ¶¶ 150-54). Plaintiffs even assert that Mr. Youssef did not have *access* to NSO's internal strategy documents. (Opp. 16.) So this is simply another improper attempt by Plaintiffs' lawyers to backfill Mr. Youssef's unsupported opinions with evidence he did not rely upon to form those opinions. *See Sanderson*, 950 F. Supp. at 994-95. Plaintiffs' characterizations of NSO's internal documents cannot change the facts that Mr. Youssef is not qualified to discern NSO's intent and that he neither described nor applied any reliable methodology to form an opinion about that intent. (Mot. 14-16.)

Nor can Plaintiffs defend Mr. Youssef's speculation by claiming it is partially based on his equally speculative opinion that "WhatsApp is a 'high priority' target" for NSO because of its "wide-spread global adoption." (Opp. 15.) That opinion *itself* is unsupported speculation about NSO's intent. As NSO explained, such "disjointed and context-free observations" cannot form the foundation of a reliable analysis. (Mot. 15-16 (listing factors Mr. Youssef failed to consider, including NSO's resources, risk tolerance, resource allocation, industry conditions, competitive landscape, technological landscape, etc.).) Plaintiffs argue Mr. Youssef relied on such factors because he did not have access to NSO's internal strategy documents (Opp. 16), but if Mr. Youssef needed additional documents to form a supported opinion about NSO's future conduct, then Plaintiffs should have moved to compel them during discovery. That Mr. Youssef allegedly lacked the documents he needed to form an opinion does not give him license to provide that opinion with no basis. *See DePaepe*, 141 F.3d at 720 (7th Cir. 1998) ("[T]he whole point of *Daubert* is that experts can't 'speculate.' They need analytically sound bases for their opinions.").[4]

---

[4] Mr. Youssef would not be qualified to testify about NSO's business records anyway because he is not a business expert with any expertise in predicting a company's future business decisions. *See Ryanair DAC v. Booking Holdings Inc.*, 2024 WL 3732498, at *50 (D. Del. June 17, 2024) (excluding expert who lacked "relevant expertise to offer the business-related opinions that he offered").

12

### 4. Mr. Youssef's opinion that Pegasus successfully exploited 1,500 target devices lacks factual support.

As NSO explained, Mr. Youssef's opinion that Pegasus *successfully exploited* 1,500 devices is unsupported because the evidence shows that is the number of users who received a Pegasus message, not the number whose devices were successfully exploited. (Mot. 15-16.) There is no evidence that Pegasus was successfully installed on *any* of those devices, much less *all* of them— and neither Mr. Youssef nor Plaintiffs identify any factual basis for asserting otherwise.

Because Mr. Youssef cites *no evidence* that 1,500 users were successfully exploited, the deficiency with his opinion goes to admissibility, not weight. The Court's finding at summary judgment that Pegasus collected information "from the target users' devices" is not to the contrary because it was merely describing how Pegasus works in general and would, at most, require that *one* device was exploited, not 1,500. (Dkt. 494 at 12.) While Plaintiffs once again blame NSO for a lack of discovery on this issue, it was the Plaintiffs who argued against permitting more discovery into this issue, causing the Court to hold that "the identity of the victims is not relevant to plaintiffs' case-in-chief." (*see e.g.*, Dkt. 358 at 3.) And in any event, as explained above, an expert's failure to obtain sufficient evidence to support his opinion is not license to provide an unsupported opinion.

### 5. Mr. Youssef's opinion that Pegasus "camouflaged" its messages is unsupported and unhelpful.

Mr. Youssef opines that Pegasus's compliance with the rules of WhatsApp servers was a form of "camouflage," but that opinion is not based on reliable methods or principles, and it simply serves to inflame the jury with vague innuendo of wrongdoing. (Mot. 18-19.) Instead, the opinion is merely prejudicial terminology without definition or explanation. (*Id.*)

Plaintiffs again overread the Court's liability ruling, this time interpreting it to find that Pegasus "camouflaged" its messages. (Opp. 18.) But the Court's finding was that Pegasus obtained information from target devices through the WhatsApp servers (Dkt. 494 at 12), not that it "camouflaged" its messages to do so.

Plaintiffs accuse NSO of ignoring "the context of Mr. Youssef's [camouflage] opinions," which was his opinion that Pegasus messages "appeared to be from a legitimate WhatsApp Client."

13

(Opp. 18.) That opinion is unsupported because the evidence is clear that Pegasus messages differed from normal WhatsApp messages in obvious ways. (*See* Dkt. 419-5, Exh. A, 131:16-19, 132:3-4; Dkt. 513-4, Exh. A ¶ 138.) That both types of messages nonetheless complied with WhatsApp's server rules does not mean the Pegasus messages were "camouflaged" or that they "appeared to be from a legitimate WhatsApp Client." (Opp. 18.) Indeed, Mr. Youssef does not identify any server functionality designed to determine whether a properly formatted and credentialed message came from a "legitimate WhatsApp Client" rather than from anywhere else. Pegasus cannot have misled a server into reaching a wrong conclusion, when the server was not programmed to make that conclusion at all.

### III. CONCLUSION

The Court should grant NSO's motion and exclude Mr. Youssef's opinions in full or in part.

Dated: March 27, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*