Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         gina.cora@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>　　　　　　Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE JOSHUA J. MINKLER**<br><br>Date:　April 10, 2025<br>Time:　2:00 p.m.<br>Ctrm:　3<br>Judge:　Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .................................................................................................................................3

    I.    Mr. Minkler's Testimony Should Be Excluded Because His Opinions Are Irrelevant to the Issues Remaining to Be Decided in This Case. ...............................3

        A.    Mr. Minkler's Opinions Are Irrelevant to Punitive Damages. ............3

        B.    Mr. Minkler's Opinions Are Irrelevant to Injunctive Relief and, in Any Case, Should Not Be Heard by the Jury........................................5

    II.    Mr. Minkler Is Not Qualified to Opine on Whether U.S. or Foreign Law Enforcement Could Legally Use Pegasus. ...............................................................6

    III.    Mr. Minkler's Opinions Should Be Excluded Because They Are Not Reliable. ..........9

    IV.    Mr. Minkler's Testimony Should Be Excluded under Rule 403 Because of the Substantial Risk of Unfair Prejudice, Confusing the Jury, and Wasting Time..........14

CONCLUSION ............................................................................................................................15

# TABLE OF AUTHORITIES

C<small>ASES</small>

P<small>AGE</small>(<small>S</small>)

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960 (9th Cir. 2013) ................................................................................................ 9

*Avila v. Willits Env't Remediation Tr.*,
    633 F.3d 828 (9th Cir. 2011) ................................................................................................ 6

*In re Bard IVC Filters Prods. Liab. Litig.*,
    2018 WL 934795 (D. Ariz. Feb 15, 2018) ............................................................................ 4

*Brice v. Haynes Invs., LLC*,
    548 F. Supp. 3d 882 (N.D. Cal. 2021) .................................................................................. 3

*Buell-Wilson v. Ford Motor Co.*,
    73 Cal. Rptr. 3d 277 (Ct. App. 2008), *as modified on denial of reh'g* (Apr. 10, 2008),
    *review granted and opinion superseded*, 187 P.3d 887 (Cal. 2008) .................................... 4

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
    532 U.S. 424 (2001) ............................................................................................................ 15

*DePaepe v. General Motors Corp.*,
    141 F.3d 715 (7th Cir. 1998) .............................................................................................. 13

*Elosu v. Middlefork Ranch Inc.*,
    26 F.4th 1017 (9th Cir. 2022) ............................................................................................... 9

*Gold v. Lumber Liquidators, Inc.*
    323 F.R.D. 280 (N.D. Cal. 2017) ....................................................................................... 13

*Hadley v. Kellogg Sales Co.*,
    2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) ..................................................................... 4

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021) ................................................................................................ 4

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
    87 F. Supp. 3d 928 (N.D. Cal. 2015) .................................................................................. 11

*Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*,
    185 F. Supp. 2d 1103 (C.D. Cal. 2001) .............................................................................. 11

*Krause v. Hawaiian Airlines, Inc.*,
    2019 WL 13225251 (E.D. Cal. June 7, 2019) .................................................................... 11

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ....................................................................................................... 8, 10

*Laux v. Mentor Worldwide, LLC*,

295 F. Supp. 3d 1094 (C.D. Cal. Nov. 8, 2017),
   *aff'd*, 786 Fed. App'x 84 (9th Cir. 2019) ................................................................. 14

*Lin v. Solta Med., Inc.*,
   2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) .......................................................... 13

*Medo v. Super. Ct.*,
   251 Cal. Rptr. 924 (Cal. Ct. App. 1988) ..................................................................... 3

*Mims v. Fed. Express Corp.*,
   2015 WL 12711651 (C.D. Cal. Ja. 15, 2015) .............................................................. 4

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
   533 F. Supp. 3d 802 (N.D. Cal. 2021),
   *aff'd*, 2022 WL 3572943 (9th Cir. Aug. 19, 2022). .................................................... 5

*Riley v. Volkswagen Grp. of Am., Inc.*,
   51 F.4th 896 (9th Cir. 2022) ........................................................................................ 4

*In re Ripple Labs, Inc. Litig.*,
   2024 WL 4583525 (N.D. Cal. Oct. 24, 2024) .......................................................... 10

*Rogers v. Raymark Indus., Inc.*,
   922 F.2d 1426 (9th Cir. 1991) .................................................................................. 15

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................................................ 3, 14

*Sullivan v. U.S. Dep't of Navy*,
   365 F.3d 827 (9th Cir. 2004) ...................................................................................... 8

*Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*,
   2024 WL 1975456 (N.D. Cal. Mar. 31, 2024) ........................................................... 6

*United States v. Holguin*,
   51 F.4th 841 (9th Cir. 2022) ....................................................................................... 7

*VIA Techs., Inc. v. ASUS Comp., Int'l*,
   2017 WL 3051048 (N.D. Cal. July 19, 2017) .......................................................... 12

*Woodall v. Walt Disney Co.*,
   2025 WL 659750 (C.D. Cal. Feb. 5, 2025) ........................................................ 10, 11

<u>STATUES & RULES</u>

Fed. R. Civ. P. 26 ........................................................................................... 2, 10, 11
Fed. R. Evid. 403 ................................................................................................ *passim*
Fed. R. Evid. 702 ................................................................................................ *passim*
Fed. R. Evid. 703 ........................................................................................................ 11

**PRELIMINARY STATEMENT**

The Court should exclude Mr. Minkler's opinions about the potential use of NSO's spyware by law enforcement for the reasons discussed in Plaintiffs' opening motion, none of which NSO successfully rebuts in its opposition brief.

There are four principal reasons to exclude Mr. Minkler's testimony:

*First*, Mr. Minkler's opinions are not relevant to punitive damages and injunctive relief. NSO is wrong to argue otherwise. It is well-established that punitive damages are assessed based on the defendant's "conduct" at issue in the case, and Mr. Minkler's testimony does not relate to any actual facts at issue. Mr. Minkler admits that he knows virtually nothing about the facts of this case and that his "opinion is [based] in the future," Tr. at 235:19–236:6, i.e., about a hypothetical scenario. Although NSO pretends that Mr. Minkler's opinions "discuss benefits to law enforcement that he believes are already accruing" from Pegasus, Opp. at 10, Mr. Minkler testified that he is "not aware of the lawful use of Pegasus by federal law enforcement agencies," Tr. at 159:20–22.[1] For those same reasons, Mr. Minkler's testimony is too speculative to be relevant to injunctive relief, and in any case, injunctive relief is a question for the Court.

*Second*, even if testimony about hypothetical uses of Pegasus by law enforcement were relevant, Mr. Minkler is not qualified under Rule 702 to opine on that topic. NSO argues that Mr. Minkler need not be "the leading expert on Title III or FISA" and argues his qualifications are rooted in his experience. Opp. at 7. The opinions Mr. Minkler offers, however, must be "within the scope of his expertise," and they are not. Mr. Minkler is offering an opinion about how NSO's spyware could theoretically be utilized by U.S. law enforcement, lawfully under Title III and FISA, statutes over which he has a demonstrable lack of knowledge. In addition, Mr. Minkler admits that he is "not qualified to testify about the lawfulness of some law enforcement technique in a foreign country," with the exception of having "limited knowledge" and "limited understanding" involving how

---

[1] Mr. Minkler's expert report, Dkt. No 572-4, Ex. A, is cited herein as "Report." An excerpt of Mr. Minkler's deposition transcript is attached as Exhibit A to the Declaration of Gina Cora and cited herein as "Tr." Plaintiff's Motion to Exclude Mr. Minkler, Dkt. No. 572-3, is cited herein as "Mot." NSO's opposition brief, Dkt. No. 612-2, is cited herein as "Opp."

Mexican law enforcement agencies were using information shared by the Drug Enforcement Administration ("DEA") in 2008. Tr. at 160:12–20. This is insufficient "knowledge, skill, experience, training, or education" under Rule 702.

*Third*, Mr. Minkler's testimony is not reliable for the several reasons outlined in Plaintiffs' motion, and, perhaps recognizing that, NSO advocates for a very low admissibility bar: not "unreliable nonsense opinions." Opp. at 4, 12. This is not the basis for admissibility under Rule 702. In support of its position, NSO relies on dicta from a 2013 case that predates the 2023 amendments to Rule 702, which were meant to clarify that a proponent of expert testimony must satisfy the preponderance standard as to reliability for an expert to be admitted, and that only once that admissibility threshold is crossed, do attacks on reliability go to the weight of the evidence. *Id.* at 4. The Court should exercise its gatekeeping function and rule that NSO has not met its burden under Rule 702 to show that Mr. Minkler's testimony is reliable or would be helpful to the jury. NSO cannot show that Mr. Minkler's testimony is "based on sufficient facts and data," is the "product of reliable principles and methods," and that Mr. Minkler's opinion reflects a reliable application of principles and methods to the facts of the case. NSO also concedes that Mr. Minkler did not disclose sources of information (including conversations with AUSAs and agents) in preparing his report. That failure to follow the disclosure requirements of Rule 26 is another basis for preclusion.

*Finally*, Mr. Minkler's testimony should also be excluded under Rule 403 because, fundamentally, it is meant to support NSO's policy argument that NSO should not be *liable* in this case because its technology has a (theoretical) beneficial use to law enforcement. Not only has the Court already found NSO liable, but the jury's role is not to make policy determinations about NSO's technology divorced from the conduct at issue but rather determine the appropriate damages in the case based on NSO's conduct. Mr. Minkler's testimony is far afield from the facts at issue. For example, NSO admits that "Mr. Minkler buttressed his opinions by referring to a few recent, high-profile cases in which law enforcement was stymied by its inability to access encrypted communications." *Id.* at 17. These "high-profile" examples of cases (in which Mr. Minkler took no part) are about child exploitation, terrorism, and the attempted assassination of President Trump. Those cases have nothing to do with this case and Mr. Minkler does not have specialized knowledge

1  or expertise with respect to those cases, and jurors could easily believe that NSO's technology was
2  being used by law enforcement in the attacks at issue (even though there is no evidence to support
3  that) and that it was used to stop crimes of child molestation, terrorism, or violence (even though
4  there is no evidence to support that either).  The Court should exclude Mr. Minkler's testimony under
5  Rule 403 because his testimony has no probative value and creates a substantial risk of unfair
6  prejudice to Plaintiffs, jury confusion, and wasted time.

**ARGUMENT**

I.  **Mr. Minkler's Testimony Should Be Excluded Because His Opinions Are Irrelevant to the Issues Remaining to Be Decided in This Case.**

  A.  **Mr. Minkler's Opinions Are Irrelevant to Punitive Damages.**

Mr. Minkler's opinions, which all relate to law enforcement matters, "have no relevance to the legal and factual matters to be resolved by the jury" in the damages-only trial and thus should be excluded.  *Brice v. Haynes Invs., LLC*, 548 F. Supp. 3d 882, 903 (N.D. Cal. 2021).  NSO's argument that Mr. Minkler's testimony is relevant to the availability of punitive damages and injunctive relief, *see* Opp. at 8, ignores binding authority and does not withstand scrutiny.

Regarding punitive damages, NSO incorrectly maintains that without Mr. Minkler's opinions "concerning how tools such as Pegasus fill a rapidly expanding gap in law-enforcement needs," the "jury cannot properly determine whether NSO's conduct in licensing Pegasus was so reprehensible it warrants imposition of punitive damages."  *Id.*  In making this argument, NSO ignores the law, including from the Supreme Court, *see* Mot. at 8, establishing that "[p]unitive damages are not simply recoverable in the abstract.  They must be tied to oppression, fraud or malice in the conduct which gave rise to liability in the case."  *Medo v. Super. Ct.*, 251 Cal. Rptr. 924, 926 (Cal. Ct. App. 1988); *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–23 (2003) (With punitive damages, "[a] defendant should be punished for the *conduct* that harmed the plaintiff." (emphasis added)).  Mr. Minkler, by his own admission, has virtually no personal knowledge of the conduct at issue in this case (i.e., NSO's attacks on WhatsApp's servers).  The little he knows is just "based on reviewing the Complaint."  Tr. at 120:7–11; *see also id.* at 55:18–56:4 (testifying that he is only "somewhat familiar with the allegation[s] in the Complaint"); Report, App. B (listing seven

3
Plaintiffs' Reply ISO Motion to Exclude Joshua J. Minkler - Case No. 4:19-cv-07123-PJH

"documents produced in this litigation" other than the Complaint); Tr. at 120:2–6 (admitting he did not sign the governing protective order).[2] Ignoring relevant authority, NSO seeks to expand the scope of the conduct at issue relevant to the jury's assessment of punitive damages to include NSO's corporate character. *See* Opp. at 9–10. NSO's arguments may be relevant to why NSO is not a "reprehensible defendant," but they are irrelevant to the availability of punitive damages, because "[p]unitive damages are a means to punish reprehensible conduct, not a reprehensible defendant." *Mims v. Fed. Express Corp.*, 2015 WL 12711651, at *9 (C.D. Cal. Jan. 15, 2015); *see In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2 (D. Ariz. Feb. 15, 2018) ("Countering Plaintiffs' punitive damages arguments does not mean . . . that Defendants can present irrelevant evidence or try this case on the basis of corporate character.").[3]

Mr. Minkler's testimony, moreover, is not akin to the type of expert testimony on "a challenged product or technology" for punitive damages that courts allow. *See* Opp. at 9. In the cases NSO cites, courts allowed expert testimony on harms that the plaintiff allegedly suffered due to the challenged product or technology. *See Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 899, 901 n.4 (9th Cir. 2022) (describing expert testimony that "increased NOx emissions increase the risk of harm to human health" in a case brought by class-action opt-out plaintiffs about "emissions defeat devices installed" in their cars); *Hadley v. Kellogg Sales Co.*, 2019 WL 3804661, at *1, *16–17 (N.D. Cal. Aug. 13, 2019) (crediting that plaintiff's expert "admitted that he [could not] find one

---

[2] For example, when asked if he could explain "why NSO's conduct in this case is not similar to those types of conduct that led to the passage of Title [III] which were unauthorized wiretaps and recordings," Mr. Minkler responded that "I would say *I don't know enough about the facts and circumstances of NSO's conduct in this case* to determine whether or not it was consistent with the abuses you described in the [19]60s." *Id.* at 55:18–56:14 (emphasis added). Tellingly, Mr. Minkler's response was not that he did not know enough about what happened in the 1960s, as opposed to being that he does not understand what happened in this case.

[3] Defendants are wrong to rely on *Hardeman v. Monsanto* to suggest that Mr. Minkler's testimony is permissible indirect evidence of NSO's intent. Opp. at 9 (citing *Hardeman v. Monsanto Co.*, 997 F.3d 941, 971 (9th Cir. 2021)). In that case, the court explained that "malice may be proved either expressly through direct evidence or by implication through indirect evidence from which the jury draws inferences," and then determined that "[s]ubstantial evidence of Monsanto's malice was presented to the jury, supporting [the] punitive damages" awarded. *Hardeman*, 997 F.3d. at 971. This decision does not stand for the proposition that a defendant may disprove malice by introducing speculative expert testimony, untethered to the conduct at issue, about purported benefits of its product to society at large. This is what NSO seeks to do through Mr. Minkler.

study that finds that cereal consumption increases the risk of coronary heart disease, diabetes, or obesity" in case where "a frequent cereal eater" sued Kellogg alleging misleading "heart healthy" cereal packaging); *Buell-Wilson v. Ford Motor Co.*, 73 Cal. Rptr. 3d 277, 290, 312 (Ct. App.), *as modified on denial of reh'g* (Apr. 10, 2008), *review granted and opinion superseded*, 187 P.3d 887 (Cal. 2008) (determining that the jury properly weighed each party's "expert testimony concerning the design and safety issues of the Explorer" for punitive damages in a case where a couple sued Ford "as a result of [a] rollover and roof crush of her Ford Explorer . . . that left her a paraplegic"). Mr. Minkler's proffered testimony is distinguishable from the testimony at issue in these cases, because, in each of these cases, there was a close connection between the *harm alleged to be* caused by the conduct at issue and the expert testimony relevant to punitive damages. Mr. Minkler's opinions, however, are not about the conduct at issue, or about any harm suffered by Plaintiffs. They are not even about a "product or technology," Opp. at 9, but rather, in NSO's own words: "They relate to *NSO* and whether the tools it developed can and do benefit law enforcement," *id.* at 10.

### B. Mr. Minkler's Opinions Are Irrelevant to Injunctive Relief and, in Any Case, Should Not Be Heard by the Jury.

The undisputed facts, based on the Court's decision on summary judgment, permit the Court to grant Plaintiffs' pending motion for injunctive relief without holding an evidentiary hearing. *See* Dkt. Nos. 557-3, 637. Setting that aside, NSO argues that Mr. Minkler's opinions are relevant to injunctive relief because they speak to the "public interest," *see* Opp. at 11, but his opinions are too speculative for this to be true. *See Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 533 F. Supp. 3d 802, 816–17 (N.D. Cal. 2021) (holding that public interest favored injunction prohibiting defendant's surreptitious video recordings and rejecting defendant's argument that such recordings serve the public interest by assisting in government investigations where defendants "do not . . identify any [materials] . . . that led directly to any [government] prosecutions or regulatory actions" and "there is at most a weak connection between those [government] activities and the specific [materials] covered by the Preliminary Injunction"), *aff'd*, 2022 WL 3572943 (9th Cir. Aug. 19, 2022).

In any case, NSO admits that "the entitlement to injunctive relief is a question for the Court, not the jury," but insinuates that the jury should nevertheless hear Mr. Minkler's testimony because

"[i]t remains relevant to punitive damages." Opp. at 12. If the Court concludes, as it should, that Mr. Minkler's testimony is not relevant to punitive damages, then NSO must concede there is no basis for the jury to hear his testimony.[4] *See also infra* Part IV (Mr. Minkler's testimony should be excluded under Rule 403).

## II. Mr. Minkler Is Not Qualified to Opine on Whether U.S. or Foreign Law Enforcement Could Legally Use Pegasus.

Mr. Minkler is not qualified "by knowledge, skill, experience, training, or education" to give the opinions that he is offering in this case, Fed. R. Evid. 702, because his opinions are "not within the scope of his expertise." *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*, 2024 WL 1975456, at *1 (N.D. Cal. Mar. 31, 2024) (citing *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011))). NSO's arguments to the contrary are based on the claim that Mr. Minkler need not be "the leading expert on Title III or FISA" but that he is good enough. *See* Opp. at 5–7. The Court should also reject NSO's argument that Mr. Minkler's experience "leading Operation Money Clip," in which the DEA interacted with Mexican law enforcement in 2008, coupled with reviewing four sources (one from 1975 and two he could not recall) in connection with his expert report, qualifies him as an expert on "lawful surveillance by foreign governments." *Id.* at 7–8.

NSO cites Mr. Minkler's general experience as a "distinguished U.S. Attorney with over thirty years of law enforcement experience," *id*. at 5, and accuses Plaintiffs of "quibbl[ing]" about Mr. Minkler's lack of knowledge of Title III, including about its legislative history. *Id*. at 6. These arguments do not overcome the fact that Mr. Minkler's opinions are "not within the scope of his expertise."[5] For example, Mr. Minkler's practical experience in prosecuting cases may have given

---

[4] NSO references the Court's order directing the parties to "consider whether an evidentiary hearing or special interrogatories to the jury is the appropriate procedure for resolving any factual disputes," Dkt. No. 577 at 2, but omits that NSO did not propose any special interrogatories to the jury in connection with its pretrial filings," *see* Dkt. Nos. 587-5, 589-2.

[5] *Surgical Instrument Serv. Co.*, 2024 WL 1975456, at *1 (citing *Avila*, 633 F.3d at 839). In arguing Mr. Minkler is qualified, NSO offers contradicting descriptions of the nature of Mr. Minkler's opinions as they relate to U.S. law enforcement. NSO first describes Mr. Minkler as being "qualified to opine on the legal process for lawfully intercepting communications or how tools such as Pegasus *fill* a gap in *current* law-enforcement surveillance techniques." Opp. at 5 (emphasis added to demonstrate misleading use of present tense); *see also id*. at 10 (asserting, in arguing that Mr. Minkler's opinions are not speculative, that "his opinions discuss benefits to law enforcement that he

6

him some grasp of Title III and FISA, but he is not an expert on these topics, let alone qualified to theorize about how Title III and FISA may or may not permit law enforcement to use Pegasus in the future under hypothetical circumstances. Mr. Minkler wrote, read, and reread his report without realizing that he named the incorrect statute for Title III, *see* Mot. at 2, and NSO does not dispute this error, *see* Opp. at 6. NSO also does not dispute that Mr. Minkler never applied for a FISA warrant or appeared in FISA court and that he was involved in only two national security investigations that utilized FISA between five and ten years ago. *See* Opp. at 5–8. NSO also admits that, at the time of his deposition, "Mr. Minkler had not read every single section included in the long-form title of the statute." *Id*. at 6, n.2; *compare* Minkler Rep. at ¶ 38, *with* Tr. at 72:19–73:2. This last admission is notable given NSO's position that "[c]ertainly, no expert in the legal field would offer an opinion about a legal document without having read the actual document first." *See* Dkt. No. 509 at 18.

Further, NSO tries to argue that Mr. Minkler is qualified enough, arguing that "Rule 702 does not demand distinction in a particular field," and that "Mr. Minkler needs only 'specialized knowledge beyond the jury's common knowledge of a topic.'" Opp. at 7 (citing *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022)). NSO's reliance on *United States v. Holguin*, is misplaced. In *Holguin*, law enforcement officers testified "to their extensive training and experience with gang and drug investigations" in a gang and drug prosecution. *Id*. Appellants argued the testimony should be excluded because the officers' knowledge was "ordinary among their law enforcement colleagues." *Id.* The court rejected that argument, explaining that "[m]any people who have received the same training and experience will have the same specialized knowledge beyond the jury's common knowledge of a topic." *Id.* Unlike the basis of the objection in *Holguin*, the issue here is whether the scope of Mr. Minkler's opinions is within his qualifications—it is not.[6]

---

believes *are already accruing*" (emphasis added)). Elsewhere, NSO itself describes Mr. Minkler's opinion in hypothetical terms: "In other words, Mr. Minkler's opinion is that Pegasus *could be* deployed in the United States pursuant to 'a valid Title 3' order or a 'valid warrant . . . from the FISA court.'" *Id.* at 6 (emphasis added).

[6] Because of the nature of Mr. Minkler's opinions, NSO is also wrong to analogize Mr. Minkler to law enforcement professionals "routinely qualified to offer expert testimony based on their training and experience." Opp. at 6 (quoting *Holguin*, 51 F.4th at 854). In *Holguin*, the law enforcement expert testimony at issue was from agents with "extensive training and experience with gang and drug investigations" in a gangs-and-drug prosecution. *Id.*; *see also Holguin*, 51 F.4th at 851

7

With respect to Mr. Minkler's opinion on the purported "lawful surveillance" used by foreign governments," NSO's opposition demonstrates that Mr. Minkler possesses no qualifications to offer this opinion. NSO does not contend with Mr. Minkler's own testimony that he is "not qualified to testify about the lawfulness of some law enforcement technique in a foreign country," with the exception of having "limited knowledge" and "limited understanding" involving how Mexican law enforcement agencies used information shared by the DEA in 2008. Tr. at 160:12–20. *See* Opp. at 7. Despite Mr. Minkler's own testimony, this experience from 2008 is the "Operation Money Clip" that is the (faulty) foundation for NSO's argument that Mr. Minkler is qualified to opine on purported lawful surveillance by all foreign governments generally. NSO is silent as to Mr. Minkler's admission that his "knowledge" and "understanding" from Operation Money Clip is "limited." *Id*. NSO is also silent on the fact that Mr. Minkler agreed that he has never done any research about the legal frameworks of other countries beyond what he describes in his report and has never done any analytical study on the laws of other nations as they relate to intercepting communications. Tr. at 257:23–258:16. Instead, NSO appears to argue that the limited and flawed research Mr. Minkler undertook in connection with preparing his report qualifies him to be an expert on the topic of purported lawful surveillance by foreign governments.[7] *See* Opp. at 7. These arguments ignore Rule 702 and the Court's "gatekeeping" function. *Sullivan v. U.S. Dep't of Navy*, 365 F.3d 827, 833 (9th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). An expert does not become qualified by undertaking research for the expert assignment in question. Rather, the expert must *be* qualified as a threshold manner to offer expert opinions. *See* Fed. R. Evid. 702 ("A witness who *is* qualified as an expert by knowledge, skill, experience, training, or education *may* testify . . . ."

---

(describing "[d]ual-role testimony"). There is no equivalence to the circumstances here, where Mr. Minkler's opinions are actually removed from his own experience and based on the hypothetical future use of Pegasus by law enforcement.

[7] NSO admits that Mr. Minkler's opinion on foreign surveillance is based on a 1975 study, but misleadingly claim that he also "consult[ed] several extensive treatises and databases." *See* Opp. at 7. Other than the 1975 study, Mr. Minkler lists just two other publications in the "Scholarly Publications and Treatises" section of the "Information Considered" appendix to his report, *see* Report, App'x B, and he testified that he did not "specifically recall" them, Tr. at 113:8–114:9. He also consulted a single database, one compiled by Vodafone with support of a law firm. Report ¶ 52.

(emphasis added)). Because Mr. Minkler is not qualified to opine on the opinions he is offering, the Court should exclude his testimony.

### III. Mr. Minkler's Opinions Should Be Excluded Because They Are Not Reliable.

NSO cannot meet its burden to show, by a preponderance of the evidence, that Mr. Minkler's "testimony is based on sufficient facts or data," that his "testimony is the product of reliable principles and methods," and that his "opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. NSO's response is to ask the Court to apply a very low bar—not found within Rule 702—to not exclude Mr. Minkler's opinions because they are not "unreliable nonsense opinions." Opp. at 12 (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)). The dicta that NSO relies on for this low standard is from a case that predates the 2023 amendments to Rule 702, which were meant to make clear that the Court must exercise its gatekeeping function to ensure the proponent of the expert demonstrates the reliability of the expert's opinion by a preponderance of the evidence. *See* Fed. R. Evid. 702 advisory committee notes to 2023 amendment ("The amendment clarifies that the preponderance standard applies to the three reliability-based requirements . . . that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard . . . . [O]nce the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence."). NSO needs to meet a burden higher than simply demonstrating that Mr. Minkler's opinions are not "unreliable nonsense," and it has failed to do so.

*First*, Mr. Minkler's opinions on the hypothetical use of Pegasus by U.S. law enforcement are not "based on sufficient facts or data" because there are no facts or data indicating that U.S. law enforcement actually uses, or even intends to use, Pegasus. Fed. R. Evid. 702(b); *see also supra* at 1–2. NSO's argument to the contrary in its opposition brief simply ignores Mr. Minkler's own telling admissions. *Compare* Tr. at 80:23–81:6 ("There is no Title 3 or FISA warrant that I'm aware of that has been authorized for anyone in this country, government agency, to use or install Pegasus."), *with* Opp. at 13. Without "sufficient facts or data" to establish that there is any domestic use of Pegasus, Mr. Minkler's testimony is "wholly speculative" and "unfounded" and must be excluded. *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022).

9

*Second*, Mr. Minkler's opinions on the lawfulness of electronic surveillance by foreign law enforcement are unreliable and do not reflect any specialized expertise. As explained above, Mr. Minkler has admittedly insufficient experience and knowledge to qualify him as an expert on purported lawful surveillance by foreign countries. *See supra* at 8. NSO's opposition ignores Mr. Minkler's own testimony. *See* Opp. at 13–14. NSO also ignores Mr. Minkler's testimony when arguing that Mr. Minkler "permissibly uses his specialized knowledge to *summarize* the relevant facts from a variety of reliable sources and *synthesize* those sources with his first-hand experience . . . ." *Id*. at 14. This is what Mr. Minkler actually said: he "reviewed [the 1975 treatise] to determine whether countries had laws in place on electronic surveillance, or whether they did not." Tr. at 112:15–19. He also testified to not even recalling two of the four sources that NSO now claims he synthesized and summarized. *See supra* at 8 n. 7. Because Mr. Minkler lacks expertise in lawful surveillance of foreign countries, his opinions on the topic are unreliable and should be excluded. *See In re Ripple Labs, Inc. Litig.*, 2024 WL 4583525, at *2 (N.D. Cal. Oct. 24, 2024) (An expert opinion is "reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'" (quoting *Kumho Tire*, 526 U.S. at 149)).

*Third*, Mr. Minkler should be precluded from testifying about opinions premised on undisclosed sources, because those opinions are both unreliable and violate Rule 26(a)(2)(B)(ii), which requires the disclosure of all "facts or data considered by the witness" in forming expert opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). NSO concedes that Mr. Minkler "relied on undisclosed press releases" *and* undisclosed "AUSAs or agents for the substance of witness testimony" in his report. Opp. at 15, n.5. Because Rule 26(a)(2)(B)(ii) is clear that the expert's "report must contain" "the facts or data considered by the witness in forming" their opinions, this information should have been disclosed. *See Woodall v. Walt Disney Co.*, 2025 WL 659750, at *2 (C.D. Cal. Feb. 5, 2025) (granting *Daubert* motion to exclude expert testimony based on expert's failure to disclose confidential agreements under Rule 26(a)). Contrary to NSO's argument, the undisclosed information is not "trivial" and "immaterial to Mr. Minkler's substantive opinions." Opp. at 14–16. Also contrary to NSO's argument, it is irrelevant whether the missing information was from the "Qualifications" section of Mr. Minkler's report or the "Discussion" section, particularly given

NSO's argument that the "facts and data" that underly Mr. Minkler's opinions are primarily from his experience. *See, e.g.*, *id*. at 17 ("The small handful of cases for which he relies on public sources is dwarfed by the dozens (if not hundreds) of other cases from his own experience that also *underpin his opinions*." (emphasis added)). The Court should also reject NSO's argument that its disclosure failure is sanctioned because "Plaintiffs never sought to compel any supplemental disclosures." *Id*. at 16. Rule 26(e) provides that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect." The burden, therefore, was on NSO to supplement Mr. Minkler's report after Mr. Minkler's February 11, 2024 deposition.[8]

*Fourth*, Mr. Minkler's opinions on law enforcement trends or specific law enforcement investigations for which he has no personal experience or specialized knowledge are not reliable, because they are not "based on sufficient facts and data," and NSO's response on this point fails to grapple with the fundamental problems with Mr. Minkler's testimony. Mr. Minkler admitted at this deposition that he has never prosecuted any child sexual exploitation case or any terrorism case in which the use of end-to-end encryption prevented law enforcement from intercepting and deciphering communications. Tr. at 278:12–22. While experts do not need to have personal knowledge on the matters on which they opine, *see* Fed. R. Evid. 703, they do need to have a reliable basis for the opinions that they are offering. NSO argues that Mr. Minkler's basis comes from reading

---

[8] Indeed, courts in the Ninth Circuit routinely decide Rule 26 deficiencies together with *Daubert* motions. *See, e.g.*, *Woodall*, 2025 WL 659750, at *2 (C.D. Cal. Feb. 5, 2025) (collecting cases); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 949 (N.D. Cal. 2015) (finding that an expert was precluded from relying on phone conversations he had with witnesses because he failed to timely disclose the conversations under Rule 26 and the opposing party only learned about them during the witnesses' deposition, without reference to any prior motion to compel). NSO relies on two inapposite cases to argue that Plaintiffs were required to compel these required disclosures. In both cases, the courts denied "exclusionary sanctions" in circumstances where the expert report was nonexistent or woefully deficient and the opposing party delayed in taking action. *See Krause v. Hawaiian Airlines, Inc.*, 2019 WL 13225251, at *4 (E.D. Cal. June 7, 2019) (The retained expert produced "no written report whatsoever" and the court found "perhaps equally dubious" the defendant's decision to wait and move to strike rather than compel.); *Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*, 185 F. Supp. 2d 1103, 1107 (C.D. Cal. 2001) (finding expert reports failed to comply with Rule 26 in many ways and court was "persuaded by plaintiffs' argument that defendants now attempt to exploit plaintiff's failure to comply with [Rule 26] in order to designate rebuttal experts that should have been designated long ago").

1  "authoritative and reliable DOJ sources," but Mr. Minkler is not applying any specialized knowledge in "buttress[ing] his opinions," Opp. at 17, with recitations of partial information about "a few recent, high-profile cases" from DOJ press releases. *Compare* Report ¶¶ 45–48, *with* Tr. at 250:1–9, *and id.* at 250:19–251:1, *and id.* at 251:20–252:12, *and id.* at 255:3–13.

*Fifth*, any opinion by Mr. Minkler related to NSO's customers or contracts with its customers is unreliable. Mr. Minkler asserts that he has "verified that NSO's [customer] contracts contain clauses related to human rights and lawful intelligence gathering," Report ¶ 34, yet admitted that his "verification" process included doing nothing other than reviewing one (redacted) customer contract, Tr. at 119:6–20. Mr. Minkler also admitted to not having reviewed a "list" of NSO's customers. *See* Mot. at 17. NSO concedes that Mr. Minkler consulted only "one" contract in forming his opinion but argues that Mr. Minkler's review of that contract is sufficient support for Mr. Minkler to opine on the contents of NSO's customer "contracts" (plural) because of "public reporting by NSO" and there being "no evidence indicating any other customer contract lacks similar language." [9] Opp. at 17–18. NSO's arguments fail for two primary reasons. One, they ignore the obvious: there is "no evidence" of any other customer contracts because NSO refused to produce discovery on its customers. *See* Dkt. No. 249-2 at 13. Two, these points do not bolster the reliability of Mr. Minkler's use of a sample size of one. NSO argues that the cases cited in Plaintiffs' motion on this point are "inapposite, as they both involved data sets several magnitudes larger than the set of NSO's customers." Opp. at 18. But NSO does not explain why it maintains that a sample size of one is statistically significant, or methodologically sound, in light of the number of NSO's customers (a number NSO does not reveal in its brief).[10] *Id.*

---

[9] NSO contends that Mr. Minkler "does not purport to opine on NSO's customers or contracts with its customers; he says merely that he 'verified' that, consistent with NSO's public reporting, 'NSO's contracts contain clauses related to human rights and lawful intelligence gathering." Opp. at 17 (quoting Report ¶ 34)). NSO's position that Mr. Minkler's statement that he "verified" the content of NSO's contracts is not an "opinion" is difficult to understand, but, in any case, NSO appears to want Mr. Minkler to testify to this point, because it does not argue that Mr. Minkler will not seek to offer this testimony if permitted to testify at trial. *See id*. at 17–19.

[10] NSO's reliance on *VIA Techs., Inc. v. ASUS Comp., Int'l*, 2017 WL 3051048, at *7 (N.D. Cal. July 19, 2017), is misplaced because, there, the court ruled that the expert "was still bounded by a technical assessment of which designs were representative, and it is possible that even a sample size of one could be sufficient for her purposes." Mr. Minkler performed no threshold "technical assessment"

12

*Sixth*, the Court should preclude Mr. Minkler from opining on NSO's state of mind, including with respect to developing Pegasus, because it is unreliable, does not reflect any specialized expertise, and improperly invades the province of the jury, for all the reasons described in Plaintiffs' motion. *See* Mot. at 17. NSO argues that "Mr. Minkler never opines on NSO's state of mind," Opp. at 19, but, at his deposition, Mr. Minkler testified that "it appears to me that [NSO's] *state of mind* . . . was to provide a tool for law enforcement to properly, in compliance with the laws of that country, intercept end-to-end encrypted communications." Tr. at 157:5–17 (emphasis added); *see also* Opp. at 20 (omitting "state of mind" from selective quotation of deposition testimony). Mr. Minkler's testimony is consistent with his report, where he opines that NSO's Pegasus technology "*appears designed to* capture more traditional forms of communications or information . . . *while also providing law enforcement* access to new data streams." Report ¶ 60 (emphasis added). NSO's opposition misleadingly omits the second italicized portion of this quote. *See* Opp. at 20. Based on Mr. Minkler's own words, he is indeed opining that NSO's state of mind, or intention, was to design Pegasus for law enforcement. This is expert testimony as to "NSO's past . . . 'intentions,'" which NSO itself argues is impermissible. *Id*. at 19. Indeed, in a recently decided case, this Court excluded expert testimony as to intention, citing *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998), for the proposition that the "expert 'lacked any scientific basis for an opinion about the motives of [defendant's] designers' and accordingly 'could not testify as an expert that [defendant] had a particular motive.'" *Lin v. Solta Med., Inc.*, 2024 WL 5199905, at *12 (N.D. Cal. Dec. 23, 2024).[11] That same reasoning applies here. Mr. Minkler has no expertise from which he can reliably opine

---

that "bound" him to determine that the one contract he reviewed was representative of all of NSO's contracts.

[11] NSO's selective quotations to this Court's decision in *Lin*, as well to *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 294 (N.D. Cal. 2017), are misleading. *See* Opp. at 19. NSO implies that the cases stand for narrow propositions when they do not. *See Lin*, 2024 WL 5199905, at *12 ("[O]pinions of expert witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise."); *Gold*, 323 F.R.D. at 294 ("Courts routinely exclude expert testimony as to intent, motive, or state of mind as issues better left to a jury.").

13

PLAINTIFFS' REPLY ISO MOTION TO EXCLUDE JOSHUA J. MINKLER - CASE NO. 4:19-CV-07123-PJH

1  on the motives or state of mind of NSO in developing or making Pegasus available in the market,
2  and thus his opinion should likewise be excluded.

3  *Finally*, Mr. Minkler should be precluded from offering any opinion weighing the benefits to
4  the public in law enforcement's hypothetical use of Pegasus versus the risks of such use, because
5  such opinion is speculative and unreliable.  Overlooking Mr. Minkler's deposition testimony, NSO
6  argues that Mr. Minkler does not purport to "weigh any benefits or risks" and would only provide
7  "the jury with information about certain of those benefits."  Opp. at 20.  His deposition testimony,
8  however, indicates the opposite.  *See* Tr. at 153:16–156: 11 (testifying that his "analysis and opinion
9  did consider" weighing the harms of hacking into Meta's servers against the potential benefits to
10 national security); Tr. 155:4–155:19 (explaining he "reviewed materials alleging that end users had
11 abused, in the cases you listed, Pegasus technology" and "*weighed* that against what I saw was the
12 value to law enforcement of this type of technology if properly used by law enforcement. And *my*
13 *opinion after weighing* those factors was that a tool such as Pegasus would be beneficial to law
14 enforcement" (emphasis added)).  Mr. Minkler's testimony on this point is based on his speculation,
15 given his many admissions regarding the limits of his knowledge, and such a speculative "because I
16 said so" opinion is unreliable.  *See Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1102–03
17 (C.D. Cal. Nov. 8, 2017), *aff'd*, 786 Fed. App'x 84 (9th Cir. 2019).

18 **IV.   Mr. Minkler's Testimony Should Be Excluded under Rule 403 Because of the**
19        **Substantial Risk of Unfair Prejudice, Confusing the Jury, and Wasting Time.**

20      Mr. Minkler's testimony should also be excluded under Rule 403 because of the substantial
21 risk of unfair prejudice, confusing the jury, and wasting time.  NSO argues, incorrectly, that Mr.
22 Minkler's opinions do not recast "irrelevant policy argument  . . . in the guise of expert testimony,"
23 principally arguing that Plaintiffs "ignore the unique, policy-infused nature of punitive damages."
24 Opp. at 21.  NSO does not acknowledge that "[a] defendant should be punished for the *conduct* that
25 harmed the plaintiff."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–23 (2003)
26 (emphasis added).  Mr. Minkler has admitted to having no knowledge regarding the "conduct that
27
28

harmed the plaintiff," *see supra* at 3–4, and his testimony is speculative and hypothetical.[12] Mr. Minkler's testimony also presents a substantial risk of unfair prejudice and jury confusion, for several reasons. As Mr. Minkler admits, there is no evidence that the attacks at issue in this case were done by law enforcement pursuant to a federal court order under Title III or FISA. Moreover, Mr. Minkler "buttress[es]" his opinions with "high-profile" cases, Opp. at 17, where end-to-end encryption purportedly facilitated child sexual exploitation, terrorism, and other inflammatory crimes, but, again, there is no evidence that the attacks at issue in this case had anything to do with stopping child exploitation, terrorism, or any other crime. Indeed, NSO has moved *in limine* to exclude the identities of the actual targets, revealing that it does not want those identities to be before the jury. Dkt. No. 601 at 5–7. NSO argues that "Mr. Minkler never references Plaintiffs in connection with sexual exploitation or terrorism," Opp. at 21, but Mr. Minkler need not expressly state that WhatsApp facilitates child sexual exploitation or terrorism, to strongly imply it, and Mr. Minkler does expressly speculate that his investigation into a methamphetamine organization was stymied by the target's communications "through platforms that employed [end-to-end] encryption, including possibly WhatsApp or Facebook Messenger." Report ¶ 18. If permitted to testify, this is what Mr. Minkler will do, expressly or by implication, about child exploitation and terrorism crimes as well. "Jurors may well assume that an expert, unlike an ordinary mortal, will offer an authoritative view on the issues addressed; if what an expert has to say is instead tangential to the real issues, the jury may follow the 'expert' down the garden path . . . ." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991). The Court should thus preclude Mr. Minkler's testimony under Rule 403.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to exclude the expert opinions of Mr. Minkler.

---

[12] NSO is misplaced to invoke *Cooper Indust., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 & n.5, 438–39 (2001). *See* Opp. at 21. Neither *Cooper Industries*, nor any authority cited by NSO, provides that juries are "intrinsically required" to weigh policy considerations about tangential topics or hypothetical scenarios akin to the kind that Mr. Minkler's opinions seek to inject into the case (i.e., whether U.S. law enforcement could benefit from Pegasus if, at some point in the future, U.S. law enforcement agencies used it consistent with Title III or FISA).

Dated: March 27, 2025           Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  */s/ Greg D. Andres*
     Greg D. Andres
     Antonio J. Perez-Marques
     Gina Cora
     Craig T. Cagney
     Luca Marzorati
      (admitted *pro hac vice*)
     DAVIS POLK & WARDWELL LLP
     450 Lexington Avenue
     New York, New York 10017
     Telephone: (212) 450-4000
     Facsimile: (212) 701-5800
     Email: greg.andres@davispolk.com
            antonio.perez@davispolk.com
            gina.cora@davispolk.com
            craig.cagney@davispolk.com
            luca.marzorati@davispolk.com

     Micah G. Block (SBN 270712)
     DAVIS POLK & WARDWELL LLP
     900 Middlefield Road, Suite 200
     Redwood City, California 94063
     Telephone: (650) 752-2000
     Facsimile: (650) 752-2111
     Email: micah.block@davispolk.com

     *Attorneys for Plaintiffs*
     *WhatsApp LLC and Meta Platforms, Inc.*