JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  jakro@kslaw.com
AARON S. CRAIG
  acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:     (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES
LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>            Plaintiffs,<br><br>     v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>            Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR A STAY OF PORTIONS OF THE ORDER DENYING IN PART MOTION TO SEAL**<br><br>Judge:   Hon. Phyllis J. Hamilton<br><br>Hearing Date:  May 8, 2025<br>Hearing Time:  1:30 p.m. |

**TABLE OF CONTENTS**

I. STATEMENT OF ISSUE ................................................................................................. 2

II. BACKGROUND ............................................................................................................. 2

III. LEGAL STANDARD ..................................................................................................... 6

IV. LEGAL ARGUMENT .................................................................................................... 6

    A. Defendants Have Shown a Substantial Case for Relief on the Merits Because the Order on Sealing Manifestly Fails to Consider Material Facts and Dispositive Legal Arguments. ................................................................... 6

    B. Defendants and Defendants' Non-Testifying Employees Will Suffer Irreparable Harm Absent a Stay. ......................................................................... 11

    C. A Stay Will Cause Plaintiffs No Harm and the Public Interest Favors a Stay. ......... 13

IV. CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accent Delight Int'l Ltd. v. Sotheby's*,
   No. 18-cv-9011, 2019 WL 2602862 (S.D.N.Y. June 25, 2019) .................................................. 9

*Cal. Life Sci. Ass'n v. Ctr. for Medicare & Medicaid Servs.*,
   No. 20-cv-08603, 2020 WL 7696050 (N.D. Cal. Dec. 28, 2020) ........................................... 11

*Compal Elec., Inc. v Apple Inc.*,
   No. 17-cv-01010, 2017 WL 11423604 (S.D. Cal. Sept. 5, 2017) ...................................... 9, 10

*In re Copley Press, Inc.*,
   518 F.3d 1022 (9th Cir. 2008) ............................................................................................... 11

*Delphix Corp. v. Actifio, Inc.*,
   No. 13-cv-04613, 2014 WL 4145520 (N.D. Cal. Aug. 20, 2014) .......................................... 10

*Earth Island Inst. v. Wheeler*,
   No. 20-cv-00670, 2020 WL 12044119 (N.D. Cal. Sept. 1, 2020) ............................................ 6

*Finjan, Inc. v. Cisco Sys. Inc.*,
   No. 17-cv-00072, 2019 WL 4168952 (N.D. Cal. Sept. 3, 2019) .............................................. 9

*Finjan, Inc. v. Juniper Networks, Inc.*,
   826 F. App'x 928 (Fed. Cir. 2020) .......................................................................................... 8

*Foltz v. State Farm Mut. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) ............................................................................................. 7, 8

*Hestia Educ. Grp., LLC v. King*,
   No. 15-cv-01463, 2016 WL 1323079 N.D. Cal. Apr. 5, 2016) ................................................ 6

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ................................................................................................................. 5

*Hunt v. Cont'l Cas. Co.*,
   No. 13-cv-05966, 2015 WL 5355398 (N.D. Cal. Sept. 14, 2015) ............................................ 7

*Lair v. Bullock*,
   697 F.3d 1200 (9th Cir. 2012) .............................................................................. 5, 6, 10, 12

*Leap Sys., Inc. v. Moneytrax, Inc.*,
   No. 05-cv-1521, 2010 WL 2232715 (D.N.J. June 1, 2010) ................................................... 12

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) (per curiam) .............................................................. 5, 6, 10, 12

*Marsh USA Inc. v. Karasaki*,
    No. 08-cv-4195, 2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) ............................................. 12

*Nichols v. Brown*,
    No. 11-cv-09916, 2013 WL 12579750 (C.D. Cal. July 18, 2013) .......................................... 5

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................................ 5, 12

*Omari v. Ras Al Khaimah Free Trade Zone Auth.*,
    No. 16-cv-3895, 2017 WL 3896399 (S.D.N.Y. Aug. 18, 2017) .................................... 8, 9, 10

*PostX Corp. v. Secure Data in Motion*,
    No. 02-cv-04483, 2005 WL 8177635 (N.D. Cal. Aug. 31, 2005) ........................................... 6

*Providence Journal v. Fed. Bureau of Investigation*,
    595 F.2d 889 (1st Cir. 1979) ......................................................................................... 11, 13

*Regeneron Pharms., Inc. v. HHS*,
    510 F. Supp. 3d 29 (S.D.N.Y. 2020) ..................................................................................... 11

*Reyna v. Arris Int'l PLC*,
    No. 17-cv-01834, 2018 WL 1400513 (N.D. Cal. Mar. 20, 2018) .......................................... 10

*In re Sealed Case*,
    825 F.2d 494 (D.C. Cir. 1987) ............................................................................................. 11

*In re Search Warrant for Second Floor Bedroom*,
    489 F. Supp. 207 (D.R.I. 1980) ............................................................................................ 11

*Seidl v. Am. Century Cos., Inc.*,
    No. 10-cv-4152, 2014 WL 10937513 (W.D. Mo. July 2, 2014) ........................................... 11

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
    No. 16-cv-00119, 2017 WL 11527607 (N.D. Cal. Dec. 27, 2017) ........................................ 10

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03-md-1570, 2020 WL 1181943 (S.D.N.Y. Mar. 12, 2020) ........................................... 10

**Other Authorities**

Local Civil Rule 7-2 ...................................................................................................................... 1

Local Civil Rule 7-9 ...................................................................................................................... 6

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 8, 2025, at 1:30 p.m., or as soon as this matter may be heard pursuant to the Motion to Expedite Briefing filed contemporaneously herewith,[1] Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively, the "Defendants") will move, and hereby do move, this Court for a stay of its recent order on sealing issues with respect to the following documents identified in Exhibit A to Defendants' Unopposed Omnibus Administrative Motion to File Under Seal (Dkt. No. 550-1):

<u>Documents with Employees' Names for which Redaction is Sought</u>:  Rows 5, 6, 7, 8, 11, 13, 18, 19, 29, 34, 36, 43, 68.

<u>Israeli Export Controlled Documents</u>: Rows 1, 2, 3, 5, 7, 9, 10, 13, 16, 17, 22, 25, 26, 29, 30, 31, 32, 33, 35, 38, 41, 42, 43, 52, 53, 55, 56, 60, 61, 62, 63, 64, 65, 66, 73, 75, 76, 77, 82, 85 and 87

<u>Documents Making Reference to Confidential Foreign Proceedings for which Redaction is Sought</u>:  Rows 49, 70, 71 (Dkt. 405-4, Block Decl. Exhs. D-G only), 72 (Dkt. 405-4, Block Decl. Exh. I only).

These documents are also identified in more detail in a table in the accompanying Proposed Order.

Defendants respectfully request that the Court stay those portions of its Order denying in part Defendants' Motion to Seal, *see* Dkt. No. 633 ("Order on Sealing") affecting the documents listed above, pending resolution of Defendants' Motion for Leave to File a Motion for Reconsideration, which Defendants intend to file on Tuesday, April 1, and any reconsideration by the Court.  The portions of the Order on Sealing for which Defendants seek a stay and the particular documents at issue are set forth on a table in the Proposed Order accompanying this Motion.  A stay is necessary to prevent Defendants from being irreparably harmed by the disclosure of highly

---

[1] May 8 is the earliest date on which Defendants may notice a hearing under Local Civil Rule 7-2. Pursuant to Defendants' Emergency Motion for Expedited Briefing Schedule, or, in the Alternative, for an Administrative Stay, however, Defendants are asking that the Court shorten the time for briefing and hearing on this Motion for Stay so that it will be fully briefed by **April 2, 2025**, or that the Court extend the date on which disclosure is due (currently April 4, 2025) until after the Court has considered this Motion for Stay.

1

DEFENDANTS' EMERGENCY MOTION FOR STAY                                    Case No. 4:19-cv-07123-PJHH

sensitive and proprietary technical and other export-controlled information, the public disclosure of which would be damaging to Defendants and third parties; to prevent disclosure of information that the Government of Israel has strictly controlled under law for reasons familiar to the Court; and to prevent irreparable harm to Defendants' non-testifying employees, who will have their personal information disclosed. A stay would also serve the interests of judicial economy, both for this Court and potentially for the Ninth Circuit. Given the vitally important interests at stake and Defendants' obligations under Israeli law to make every effort to protect the information at issue, Defendants will need to seek interlocutory relief in the Ninth Circuit if the forthcoming Motion for Leave to Seek Reconsideration is unsuccessful.

Defendants are currently required to publicly file the information at issue here by April 4, 2025. Accordingly, Defendants are simultaneously requesting expedited briefing on this Motion and **respectfully request that the Court rule on this Motion no later than 12:00 p.m. PDT on April 3, 2025**. Defendants respectfully inform the Court that, given the April 4 deadline for publicly filing documents, if the Court has not ruled on this stay request by noon on April 3, in order to meet their obligations under Israeli law, Defendants will be required to seek interlocutory relief from the Ninth Circuit pursuant to the collateral order doctrine.

I.   **STATEMENT OF ISSUE**

Whether, to avoid irreparable harm and promote judicial economy, the Court should stay portions of the Order on Sealing denying in part Defendants' Motion to Seal, with respect to the documents identified in the accompanying Proposed Order, until the Court rules on Defendants' forthcoming Motion for Leave to File a Motion Reconsideration and any reconsideration by the Court.

II.   **BACKGROUND**

At the Court's direction, Defendants submitted an Unopposed Omnibus Administrative Motion to File Under Seal, Dkt. No. 550, collecting prior requests to seal documents or information submitted in connection with Defendants' filings related to the parties' cross-motions for summary judgment and Plaintiffs' motion for sanctions. *See* Dkt. Nos. 396, 399, 405, 413, 417, 418, 419, 429, 433, 436, 443, 446, 454. Before submitting the motion, the parties met and conferred on several

occasions, and Plaintiffs did not oppose any of the relief sought by Defendants in the motion. Dkt. Nos. 550 at 1.[2] On March 21, 2025, the Court entered an Order on Sealing granting in part and denying in part the motion. Dkt. No. 633. The Court found that Defendants (like Plaintiffs) had sought to seal entire documents rather than redact only the "truly sensitive information." Dkt. No. 633 at 3–4. The Court held that, "[t]o the extent that either party requests the sealing of an entire document when it would have been possible to instead redact the sensitive information, those requests [are] denied." Dkt. No. 633 at 4. As a result, the Court ordered disclosure even of information that the Court acknowledged would otherwise meet the standard for sealing because Defendants' motions had not been sufficiently tailored to isolate that particular information.

For example, the Court denied Defendants' requests to seal the "names of defendants' non-testifying employees" and thus ordered disclosure of that information. Dkt. No. 633 at 7 (denying this request as to one particular declaration exhibit and "any other [such] documents"). In ruling on Plaintiffs' parallel omnibus motion to seal, however, the Court acknowledged that the personal information of non-testifying employees was properly kept sealed. Dkt. No. 633 at 5–6. Under the current Order on Sealing, Defendants' non-testifying employees will have their personal information (including private WhatsApp account numbers) publicly exposed simply because Defendants' motion—even though it provided a sound basis to keep that information sealed—did not sufficiently tailor the request for sealing.

Similarly, the Court denied Defendants' requests to seal "highly confidential technical and commercially sensitive materials" designated under the protective order, including documents reflecting the functioning of its source code and other technology, Dkt. No. 633 at 8, as well as, in some instances, requests to seal documents containing discussion of sealed foreign court proceedings and orders, *id.* at 11 (noting that Defendants sought "to seal entire documents rather than making limited redactions of truly sealable material"). Although the Court granted Defendants' requests to seal source code present in several documents, *see* Dkt. No. 633 at 9, its Order on Sealing

---

[2] Although the Court "intended the parties to file a single, combined omnibus motion," each party instead separately filed its own "omnibus" motion. Dkt. 633 at 2. Defendants regret this misunderstanding and the burden it placed on the Court.

3

requires Defendants to disclose confidential technical information that *would reveal equivalent proprietary information about how the software works*.

The Court also denied Defendants' request to seal limited portions of six documents containing references to confidential and non-public foreign orders.

Defendants do not contest much of the Order on Sealing, including its denial of Defendants' requests relating to NSO's revenues, its financial and accounting practices, and the corporate and legal structure of NSO's affiliates. Defendants do, however, request a stay of the portions of the Order on Sealing denying sealing requests related to three categories of information—(1) personally identifiable information concerning Defendants' employees, (2) technical and other export controlled information regarding Defendants' technology, and (3) confidential information pertaining to sealed foreign proceedings—that, if disclosed, would cause Defendants irreparable harm.[3]

*First*, Defendants will seek reconsideration of the Court's determination to make public personally-identifiable information of Defendants' employees who are not witnesses in this litigation, including the employees' names and email addresses. *See* Dkt. No. 550 § II.E. Defendants sought to seal their non-testifying employees' information—*e.g.*, "names, emails, phone numbers"—arguing that courts have long recognizes that "third-party privacy interests" present compelling reasons to justify sealing. Dkt. No. 550 at 6. In denying Defendants' request to seal these documents, the Court reasoned that Defendants had sought to "seal the entire document … rather than redacting the names of those employees," explained that the Court would not "rewrite" the sealing request, and ordered Defendants to reveal those employee names and their personal information. Dkt. No. 633 at 7.[4] In contrast, reviewing Plaintiffs' requests to seal the names of non-testifying employees, the Court noted that Plaintiffs sought "redactions of only those names" "rather than filing the entire documents under seal," and granted Plaintiffs' motion as to those requests.

---

[3] The specific documents at issue are set forth in the Proposed Order accompanying this Motion.

[4] The Court did, however, permit Defendants to "redact personal phone numbers to the extent they appear" in a small number of the twenty-one documents containing personal information of employees who are not witnesses in this litigation. *Compare* Dkt. 550 at 6, *with* Dkt. 633 at 9 (allowing Defendants to "redact personal phone numbers" that appear in certain exhibits").

Dkt. No. 633 at 5–6. As a result, under the Court's current ruling, Plaintiffs' non-testifying employees will have their personal information protected, while Defendants' non-testifying employees will not, solely because—through no fault of the employees themselves—Defendants' motion was not sufficiently tailored.

*Second*, Defendants will seek reconsideration of the Court's denial of requests to seal highly sensitive, non-public information regarding Defendants' technology, including confidential and competitive technical information, the disclosure of which would reveal the functioning of Defendants' software. *See* Dkt. No. 550 § II.B. Defendants sought to seal this information, explaining that they "are required to seek sealing of these materials in this proceeding for the reasons set forth in the Craig Decl. ¶ 11." Dkt. No. 550 at 4–5; *see id.* at 4. In denying in part Defendants' requests to seal these documents, the Court disregarded that disclosing "competitive sensitively technical information" regarding the "development" and "functioning of Defendants' technology," Dkt. No. 550 at 5, would have the same practical effect as disclosing Defendants' source code, which the Court has ordered to be redacted and sealed. Dkt. No. 633 at 4, 9.

*Third*, Defendants will seek reconsideration of the Court's denial of the requests to seal (i) Opposition to Defendants' limited portions of Exhibit 43 to the Block Declaration in support of Plaintiffs' Motion for Summary Judgment (Dkt. No. 418-5, Request for Admission No. 5 and Response thereto), which contain references to highly confidential and sealed foreign court proceedings and orders, and (ii) Exhibits A, C-G, and H-K to the Block Declaration in support of Plaintiff's Motion for Sanctions (Dkt. No. 405-4) (same). Dkt. No. 550 § II.A. Defendants asked to seal Exhibits and portions of an Exhibit to the Block Declaration containing discussion of these sealed, confidential foreign proceedings, explaining that this information should remain sealed "[i]n the interests of comity and out of respect for the applicable legal interests that affect such information" and expressly referring the Court to a substantially redacted paragraph in the Craig Declaration that advances "additional argument" on this issue. *Id.*; *see* Dkt. No. 419-1, Craig Decl. ¶ 11. Dkt. No. 550 at 4. Defendants believe the Court's denial of these requests may have been inadvertent in light of its rulings granting sealing of certain attorney declarations and other documents discussing similar subject matter.

## III. LEGAL STANDARD

In ruling on a motion to stay an interlocutory order, a district court considers (1) whether the applicant has shown a "substantial case for relief on the merits" or likelihood of success on the merits; (2) whether the applicant will be "irreparably injured" absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) whether the public interest lies. *Lair v. Bullock*, 697 F.3d 1200, 1203–04 (9th Cir. 2012); *see Nichols v. Brown*, No. 11-cv-09916, 2013 WL 12579750, at *1–2 (C.D. Cal. July 18, 2013). Under the Ninth Circuit's "sliding scale" approach, "a strong[] showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 964–66 (9th Cir. 2011) (per curiam) (citation omitted). The first two factors, however, are the "most critical." *Nken v. Holder*, 556 U.S. 418, 434–35 (2009). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of the court's discretion. *Id.* at 433–34; *see Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) ("[T]he traditional stay factors contemplate individualized judgments in each case.").

## IV. LEGAL ARGUMENT

All four traditional factors favor a stay in this case. *First*, Defendants are likely to succeed on the merits and, at a minimum, present a substantial question on the merits, because they have strong arguments that the Order on Sealing manifestly failed to consider materials facts and dispositive legal arguments on three categories of information presented in Defendants' Motion. *Second*, Defendants will suffer irreparable injury absent a stay. Without a stay, Defendants' non-testifying employees will have their personal information irretrievably made public, subjecting them to potential harassment. And Defendants will suffer irreparable harm from the public disclosure of proprietary and highly sensitive technical information about the operation of Defendants' software. *Third*, Plaintiffs will not be injured at all—let alone substantially harmed—by a stay. Plaintiffs did not oppose keeping all of this information permanently under seal. *Fourth*, the public interest cuts in favor of a stay and reconsideration before the Court orders disclosure of information that the Government of Israel has deemed important, as discussed in numerous sealed filings in this action, and the personal information of Defendants' employees.

### A. Defendants Have Shown a Substantial Case for Relief on the Merits Because the

**Order on Sealing Manifestly Fails to Consider Material Facts and Dispositive Legal Arguments.**

To satisfy the first factor in the stay analysis, an applicant must show only that "there is a substantial case for relief on the merits," not that it is "more likely than not that they will win on the merits." *Lair*, 697 F.3d at 1204; *see Leiva-Perez*, 640 F.3d at 968 (explaining that this first factors asks "whether the stay petitioner has made a strong argument on which he could win"). Defendants readily meet that standard.

Under Local Rule 7-9, to notice a motion seeking reconsideration of an interlocutory order, a party must obtain leave of court. Civil L.R. 7-9(a). "[A] party may seek leave to file a motion for reconsideration if it shows reasonable diligence and a 'manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.'" *Earth Island Inst. v. Wheeler*, No. 20-cv-00670, 2020 WL 12044119, at *1 (N.D. Cal. Sept. 1, 2020) (quoting N.D. Cal. Civil L.R. 7-9(b)(3)). Whether to grant such leave "is committed to the court's sound discretion." *Hestia Educ. Grp., LLC v. King*, No. 15-cv-01463, 2016 WL 1323079, at *1 (N.D. Cal. Apr. 5, 2016); *see PostX Corp. v. Secure Data in Motion*, No. 02-cv-04483, 2005 WL 8177635, at *1 n.1 (N.D. Cal. Aug. 31, 2005) (granting leave to file, and ultimately granting, motion for reconsideration on this ground).

On all three categories of information, Defendants have strong arguments that the Order on Sealing manifestly fails to consider material facts or dispositive legal arguments that were presented in Defendants' Motion. In addition, as explained below, the Court's Order on Sealing resulted in inconsistent rulings that Defendants could not have anticipated and addressed in prior briefing, and that, too, provides a strong basis for reconsideration.

**1.    *Personally Identifiable Information Concerning Defendants' Employees.***

Defendants have a strong argument on the merits that the Court should reconsider its Order on Sealing requiring disclosure of personally identifiable information of Defendants' employees who are not witnesses in this litigation, including the employees' names and contact information (e.g., WhatsApp/telephone numbers). *See* Dkt. No. 550 § II.E. The Court's disparate treatment of the non-testifying witnesses for the parties—on the ground that Defendants sought to seal entire

documents *containing* employees' names while Plaintiffs sought to redact *only* employees' names—punishes Defendants' employees for actions and circumstances completely outside their control. Defendants respectfully submit that the disparate treatment of their employees manifestly disregards the material fact that the names of Defendants' non-testifying employees—just like those of Plaintiffs'—are irrelevant to the disposition of the case. So too, this ruling disregards the dispositive legal point that revealing the names of such non-testifying employees implicates "important privacy concerns of nonparties" that substantially outweigh any negligible public interest in exposing the names of employees who have not testified in this matter. *Hunt v. Cont'l Cas. Co.*, No. 13-cv-05966, 2015 WL 5355398, at *2 (N.D. Cal. Sept. 14, 2015); *see Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003).

In addition, although these materials would reveal confidential and personally identifiable information concerning third parties, the Court's Order on Sealing manifestly fails to "conscientiously balance[] the competing interests" between the public's right of access and the interests of third parties in shielding their personal information from public view. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). As courts have recognized, sealing is appropriate where a party can "[s]imply redact[] the identifying information of third parties" from "records and disclos[e] the remaining information." *Id.* at 1137. Here, the Court conducted no balancing, instead concluding that it would "issue up-or-down rulings on the requests" as presented. Dkt. No. 633 at 4, 7. Not balancing competing interests warrants reconsideration. *See Finjan, Inc. v. Juniper Networks, Inc.*, 826 F. App'x 928 (Fed. Cir. 2020) (vacating portion of unsealing order for similar reasons); *cf. Foltz*, 331 F.3d at 1137 (concluding that "third-party … personnel records [should] be redacted … to protect third-party privacy interests).

At bottom, the practical effect of the Court's Order on Sealing is to impose a sanction—the brunt of which will be borne by blameless non-testifying employees—by ordering disclosure of information that concededly meets the standard for sealing, based solely on Defendants' failure to more narrowly tailor their motion. But the Court did not cite any precedent supporting such a ruling that effectively penalized non-parties and exposes their personally identifiable information merely for a litigant's failure to more narrowly tailor a motion designed to protect indisputably protectable

8

information.  And as explained, the case law cuts against such a result penalizing non-parties.  The Defendants thus have strong arguments on the merits that the Court should reconsider its Order on Sealing to provide parallel treatment for Defendants' non-testifying employees and Plaintiffs' non-testifying employees.  That is, the Court should allow the personally identifiable information to be redacted from the documents cited in Defendants' Motion, Dkt. No. 633 at 6.

### 2. *Technical Information Regarding Defendants' Technology.*

On Defendants' requests to seal highly sensitive, non-public information regarding Defendants' technology, Defendants have strong arguments for reconsideration on at least two grounds.  First, the Order on Sealing fails to account for substantial international comity interests.  As courts have recognized, sealing "nonpublic government information" from "a foreign government" is "essential to preserve higher values," and "the principle of international comity counsels in favor of protecting [such] document[s] from disclosure."  *Omari v. Ras Al Khaimah Free Trade Zone Auth.*, No. 16-cv-3895, 2017 WL 3896399, at *14 (S.D.N.Y. Aug. 18, 2017) (citations omitted) (sealing White Paper).  Indeed, refusing to seal technical information that must be protected under Israeli export control laws—and thus is "not publicly accessible"—"would harm the integrity of those respective judicial systems," and a "concern for comity" provides "compelling reasons" to seal such information.  *Compal Elec., Inc. v Apple Inc.*, No. 17-cv-01010, 2017 WL 11423604, at *3 (S.D. Cal. Sept. 5, 2017); *cf. Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-cv-9011, 2019 WL 2602862, at *9 (S.D.N.Y. June 25, 2019) (holding that, under principles of comity, where a foreign court has taken under advisement whether to keep a document sealed, the District Court would permit the foreign court to "rule on the issue in the first instance").  As Defendants explained, they "are required to seek sealing of these materials in this proceeding for the reasons set forth in the Craig Decl. ¶ 11."  Dkt. No. 550 at 5; *see id.* at 4 (citing *Compal Elec.*, 2017 WL 11423604 at *3 and *Omari*, 2017 WL 3896399 at *14).  The Court's manifest disregard for the critical comity interests implicated by this information provides firm grounds for reconsideration.

Second, Defendants respectfully submit that the Court's Order on Sealing requiring disclosure of technical information about the operation of Defendants' software is internally inconsistent with the ruling that the source code itself should remain sealed.  The Court's ruling

effectively disregards the material fact that disclosing "competitive sensitively technical information" regarding the "development" and "functioning of Defendants' technology," Dkt. No. 550 at 5, would have the same practical effect as disclosing Defendants' source code, which the Court has ordered to be sealed. Dkt. No. 633 at 4, 9. It would publicly disclose propriety details about the functioning of the software that would be irreparably damaging to Defendants' business. *See* Declaration of Tamir Gazneli ("Gazneli Decl.") ¶¶ 2 (providing example of technical information as to which sealing was denied, and explaining how it shows the precise operation of the software).

Failing to account for this practical reality has resulted in a ruling that effectively nullifies the Court's Order on Sealing regarding Defendants' source code and clashes with the decisions of numerous courts in this District, which have regularly concluded that there are compelling reasons to seal documents that reveal details about a company's technology. *See Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072, 2019 WL 4168952, at *2 (N.D. Cal. Sept. 3, 2019) (sealing material that "reveals the identification, organization, and/or operation of Cisco's proprietary products"); *Reyna v. Arris Int'l PLC*, No. 17-cv-01834, 2018 WL 1400513, at *2 (N.D. Cal. Mar. 20, 2018) (sealing information that provides "insights into Intel's hardware and software architecture"); *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 16-cv-00119, 2017 WL 11527607, at *2 (N.D. Cal. Dec. 27, 2017) (sealing "proprietary business information about the architecture of Synchronoss's technology"); *Delphix Corp. v. Actifio, Inc.*, No. 13-cv-04613, 2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014) (sealing "information regarding Delphix's product architecture and development").

### 3. *Confidential Information Pertaining to Sealed Foreign Proceedings.*

On Defendants' requests to seal Exhibits and portions of Exhibits to the Block Declaration in support of Plaintiffs' motion for sanctions (Dkt. 405-4) containing discussion of sealed foreign government proceedings, the Court's ruling is inconsistent with its rulings permitting redacting and sealing of other documents that reference the same confidential foreign government proceedings. *See* Doc. 633 at 10–11 (granting motion to seal as to portions of Craig Declaration [Dkt. 396-1], Block Declaration [Dkt. 405-3], Dawson Declaration [Dkt. 433-1], and Gelfand Declaration [Dkt. 429-19] on this ground). Defendants respectfully submit that this may have been an oversight in

the Order on Sealing. Disclosing these documents would effectively undermine the Court's ruling permitting other documents referencing the same foreign government proceedings to be sealed. Given the important international comity interests involved, Defendants should be permitted to redact all references to those proceedings. Dkt. 550 at 4; Dkt. 419-1, Craig Decl. ¶ 11; *see In re Terrorist Attacks on Sept. 11, 2001*, 2020 WL 1181943, at *5 (S.D.N.Y. Mar. 12, 2020) (noting "particularly important" comity considerations when it comes to foreign sovereigns); *Compal Elec.*, 2017 WL 11423604 at *3.

**B.    Defendants and Defendants' Non-Testifying Employees Will Suffer Irreparable Harm Absent a Stay.**

Defendants can also readily show that "irreparable harm is probable if the stay is not granted." *Leiva-Perez*, 640 F.3d at 968; *see Lair*, 697 F.3d at 1214 (explaining that the applicant must show "a *probability* of irreparable injury") (emphasis original).

To begin with, Defendants will be irreparably harmed without a stay because, if they comply with the Order and disclose these categories of information, Defendants would lose their ability to challenge the Order. "Secrecy is a one-way street: Once information is published, it cannot be made secret again. An order to unseal thus 'conclusively determine[s]' that the information will be public. For the same reason, such an order is 'effectively unreviewable on appeal from a final judgment.'" *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008); *see Providence Journal v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979) ("Once the documents are [disclosed] pursuant to the lower court's order, confidentially will be lost for all time. The status quo could never be restored."). Simply put, failing to grant a stay here will "entirely destroy [Defendants'] rights to secure meaningful review." *Id.* at 890. Accordingly, Defendants will suffer certain and irreparable harm without a stay of the Order. *See Seidl v. Am. Century Cos., Inc.*, No. 10-cv-4152, 2014 WL 10937513, at *8 (W.D. Mo. July 2, 2014) (staying order to unseal documents to prevent the information from being revealed "before Defendants could protect their interests by seeking appellate review"); *In re Search Warrant for Second Floor Bedroom*, 489 F. Supp. 207, 212 (D.R.I. 1980) (granting motion to unseal document but staying decision "[t]o preserve the status quo and to prevent irreparable harm").

In addition, absent a stay, Defendants face irreparable injury to their business, including their relationships with customers and competitive advantage in the marketplace. Defendants will suffer such harm by being forced to disclose their proprietary and technical information about the operation of their software, which will allow competitors to unfairly compete with Defendants and place Defendants at a severe disadvantage in the marketplace. *See Leap Sys., Inc. v. Moneytrax, Inc.*, No. 05-cv-1521, 2010 WL 2232715, at *9 (D.N.J. June 1, 2010) (refusing to unseal business document containing confidential information and holding that "the public's right of access does not outweigh the irreparable harm that [the company] would suffer if the terms were unsealed" where "business competitors may use the information to unfairly compete with [the company], thereby placing [it] at a severe tactical disadvantage"). As explained in the Declaration of Tamir Gaznel, the technical information included in documents such as the McGraw Declaration submitted in support of Defendants' Motion for Summary Judgment (Dkt. No. 396-4), *see* Gazneli Decl. ¶ 2, provide a precise description of how Defendants' software operates and would permit others to deduce Defendants' research and working methods, their capabilities and strategies, and could also be used to determine how Defendants identify vulnerabilities to facilitate lawfully ordered surveillance of criminal and terrorist suspects, *id.* at ¶ 3. As a practical matter, this information about the operation of the software is of substantially the same nature as what can be learned from the source code. *Id.* at ¶ 2. As a result, revealing the technical material would have the same effect as revealing parts of the source code, which the Court acknowledged should remain sealed given the irreparable harm that would result from its release.

In addition, absent a stay, Defendants will be forced to reveal information that is controlled under Israeli export control laws and that, under the terms of their licenses, Defendants must make every effort to keep under seal. Forcing Defendants to publicly disclose that information would threaten Defendants' ability to maintain its relationship with the government, which is needed for Defendants to timely and expeditiously receive export licenses that are necessary to conduct its business. *See* Dkt. No. 419-1, Craig Decl. ¶ 11.

Disclosing the names of non-testifying employees would also cause irreparable harm, both to Defendants' employees and to Defendants' business. The employees will irretrievably have their

information publicly disclosed, thus exposing them to potential harassment given the highly charged issues at stake in this case. As explained in the Michal Alcheh Declaration, when NSO Group employees become known, they are sometimes targeted by anti-Israel organizations. Michal Alcheh Decl. ¶ 4. And Defendants' business will be impaired by the loss of employees' confidence in the ability of the business to protect their information. *Id.* at ¶ 5. Given the national security field in which Defendants operate, credible pledges of confidentiality to employees are essential for recruiting and retaining top talent. *Id.*; *see Marsh USA Inc. v. Karasaki*, No. 08-cv-4195, 2008 WL 4778239, at *14 (S.D.N.Y. Oct. 31, 2008).

### C. A Stay Will Cause Plaintiffs No Harm and the Public Interest Favors a Stay.

Factors three and four, which require the Court to weigh the public interest "against the harm to the opposing party," also clearly favor a stay. *Lair*, 697 F.3d at 1215 (citing *Nken*, 556 U.S. at 435); *see Leiva-Perez*, 640 F.3d at 964–66 (holding that the stay inquiry is "flexible" and involves an equitable balancing of stay factors). In contrast to the irreparable injury Defendants face without a stay, Plaintiffs will suffer no harm whatsoever from a stay. Indeed, Plaintiffs conceded as much when they chose not to oppose *any part* of the relief sought in Defendants' Omnibus Motion to Seal. Dkt. No. 550 at 1. Even if Defendants' motion for reconsideration is ultimately unsuccessful, granting a stay would do no more than "postpone[] the moment of disclosure … by whatever period of time" it takes to resolve Defendants' motion and any reconsideration by the Court, and potentially any subsequent appeal. *Providence Journal*, 595 F.2d 890.

The public interest also overwhelmingly favors a stay. As explained, *supra* § IV.A, the Order on Sealing implicates important international comity and security considerations, requires release of confidential technology documents that Plaintiffs did not object to sealing, and disparately treats—through no fault of their own—identically situated non-testifying employees. There is no public interest in disclosing details of how Defendants' software operates or information that the government of Israel has determined must be controlled under export control laws. As explained in the Declaration of Tamir Gazneli, disclosure would also "allow third parties, including hostile state parties, to deduce Defendants' research and working methods, Defendants' capabilities and strategies, and could also be used to determine how Defendants identify vulnerabilities and develop

tools to facilitate lawfully ordered surveillance of criminal and terrorist suspects." Gazneli Decl. ¶ 3. At the same time, there is a substantial public interest in preventing potentially hostile countries and individuals from obtaining that information. And there is plainly no public interest in exposing the names of employees who did not testify in this matter—that is why Plaintiffs' employees' names are remaining under seal. Given all this, the public interest weighs in favor of staying the portions of the Order on Sealing at issue here so that Defendants can at least have their request for reconsideration fully briefed and considered on the merits. Even if the Court ultimately disagrees with the merits of Defendants' forthcoming Motion for Leave to File for Reconsideration, that motion will raise important legal issues—particularly those involving international comity and respect for foreign proceedings—that warrant full briefing and consideration by the Court and on which, if necessary, Defendants should be afforded sufficient time to pursue interlocutory relief in the Ninth Circuit.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Emergency Motion for a Stay pending resolution of Defendants' Motion for Leave to File a Motion for Reconsideration and any reconsideration by the Court.

DATED: March 28, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED