# EXHIBIT B

to Declaration of Micah G. Block in Support of
Plaintiffs' Motion for Sanctions

Pages 1 - 73

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Phyllis J. Hamilton, Judge

WHATSAPP, INC., et al.,           )
                                  )
          Plaintiffs,             )
                                  )
  VS.                             )      **NO. C 19-07123 PJH**
                                  )      **SEALED PAGES 9 to 42**
NSO GROUP TECHNOLOGIES            )      **AND PAGES 54 to 73**
LIMITED, et al.,                  )
                                  )
          Defendants.             )
_____ )
                                     Oakland, California
                                  Thursday, February 15, 2024

**SEALED TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    DAVIS POLK AND WARDELL LLP
                    450 Lexington Avenue
                    New York, New York  10017
             BY:  **ANTONIO PEREZ-MARQUES, ATTORNEY AT LAW**
                  **CRAIG CAGNEY, ATTORNEY AT LAW**
                  **GREG D. ANDRES, ATTORNEY AT LAW**

                    DAVIS POLK AND WARDELL LLP
                    1600 El Camino Real
                    Menlo Park, California  94025
             BY:  **MICAH G. BLOCK, ATTORNEY AT LAW**

                    **O'MELVENY and MYERS LLP**
                    7 Times Square
                    New York, New York  10036
             BY:  **JEFFREY A.N. KOPCZYNSKI, ATTORNEY AT LAW**

             **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

1    I'm concerned that the Court may not be able to move it by

2  a week or three months, and I understand the scheduling

3  challenges that happen in the court; and so I worry about

4  losing a date that's locked in.

5    I think the date that you have is appropriate and fair,

6  and there's been certainly plenty of notice to the parties.

7         **THE COURT:**  Right.  If I could lock in a date of

8  March 3rd, the date that they are requesting, would that

9  present a hardship to you?

10         **MR. BLOCK:**  Well, it would be three months of

11  additional hardship; but I can confer with my client on that,

12  Your Honor.  I would have to run it by them before accepting

13  it.

14         **THE COURT:**  Right.  I would actually rather have the

15  case go to trial then to impose sanctions for not being able to

16  comply with their discovery obligations in this case.  I would

17  rather have it go to trial and --

18         **MR. BLOCK:**  So would we, Your Honor, just to be clear.

19         **THE COURT:**  Yeah, yeah.  Three months is not such

20  an -- an overly long period of time.  I really intended the

21  December date to be firm, but I'm sure any jury date that would

22  be called in the first of December would much rather, if they

23  were given the choice, come in the first week of March.

24    So, all things considered, I will grant the request of the

25  Defense to give them optimum time, but I want you to understand

 1   I'm not varying any of these other days again.

 2       I'm just -- I'm not going to vary the dates.  So you are

 3   going to have to comply no matter what you are told by your

 4   client.  Mr. Akrotirianakis, do you understand?

 5               **MR. AKROTIRIANAKIS:**  The Court has been very clear.

 6               **THE COURT:**  Okay.  So --

 7               **MR. BLOCK:**  Your Honor, if I may --

 8               **THE COURT:**  Yes.

 9               **MR. BLOCK:**  Beg your pardon.  I didn't mean to cut you

10   off.

11               **THE COURT:**  That's okay.

12               **MR. BLOCK:**  I was going to ask because you had said

13   you intended to grant NSO's proposal.  We do have the issue of

14   the current sequencing where the expert disclosures fall before

15   the end of fact discovery, and we would propose to clean that

16   up if you are going to make these other shifts in the schedule.

17               **THE COURT:**  Okay.  Well, what I'm going to do today is

18   simply to grant the request to move the trial date to -- well,

19   first of all, I'm granting two requests.

20       One, to give them the six months that they want to

21   complete discovery because then I would not feel at all

22   reluctant to impose sanctions if they decide they don't want to

23   do it if I give them the amount of time so that they can do it.

24       So I'm giving them to the September date for fact

25   discovery and the March 3rd date for trial.  All the other

 1    dates are negotiable except I need 120 days between dispositive

 2    motions and trial.

 3        Defendants' proposed schedule only gives me 90 days

 4    between dispositive motions and trial.  So, that will have to

 5    be adjusted.  I want you to all meet and confer and to submit a

 6    stipulation that includes the dates besides the two dates that

 7    I'm giving you today.

 8            MR. BLOCK:  Got it, Your Honor.  And so we are clear,

 9    the February 26th date is off calendar and we will certainly

10    confer.

11            THE COURT:  The February 26th date?

12            MR. BLOCK:  The date on the current schedule, which is

13    upcoming and has not yet been moved, is off.

14            THE COURT:  Yes.

15            MR. BLOCK:  I just want to be absolutely clear that

16    that's off the calendar, Your Honor.

17            THE COURT:  All the dates that are currently scheduled

18    are vacated.  I have set a new dispositive motions date and

19    trial date.  You-all can fill in the blanks for the other dates

20    as long as I have 120 days between the dispositive motion

21    hearing date and trial.  Is that clear?

22            MR. AKROTIRIRIANAKIS:  Yes, Your Honor.

23            MR. BLOCK:  Very clear, Your Honor.  And one more

24    thing to hopefully save you a bit of work.  We had filed

25    motions last week for interim schedule relief and to adjust the

SEALED PROCEEDINGS

1    the other Zoom link for the other webinar.

2              **THE CLERK:**  Yes.

3              **THE COURT:**  Okay.

4                  (Proceedings adjourned at 2:53 p.m.)

5                          ---oOo---

6

7

8                    <u>**CERTIFICATE OF REPORTER**</u>

9         I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11

12   DATE:   March 1, 2024

13

14

15

16   _____

17        Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
          United States District Court - Official Reporter

18

19

20

21

22

23

24

25

# EXHIBIT C

to Declaration of Micah G. Block in Support of
Plaintiffs' Motion for Sanctions

**Davis Polk**

Greg D. Andres
+1 212 450 4724
greg.andres@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

July 2, 2024

Re: *WhatsApp LLC v. NSO Group Techs. Ltd*, No. 4:19-cv-7123 (PJH) (N.D. Cal.)

Joseph N. Akrotirianakis
King & Spalding LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071

Dear Counsel:

I write on behalf of Plaintiffs WhatsApp LLC and Meta Platforms, Inc. ("Plaintiffs") in connection with the above-captioned action.

We have become aware that a publicly available website called "Edna Karnaval" has published documents concerning the Israeli blocking order, including some that appear to reflect memoranda from King & Spalding.[1]  We have no knowledge as to how these documents were obtained or whether they are genuine. Nonetheless, out of an abundance of caution, we are providing you with notice.

Please advise us by July 9, 2024 of your position as to whether these documents are genuine, whether you intend to assert a claim of privilege over any of these documents, the basis for such claim after their publication, and any efforts you have made to recover the documents or take down the article since it was published on May 29, 2024.  Plaintiffs reserve all rights.

Very truly yours,

*/s/ Greg D. Andres*

Greg D. Andres

---

[1] The article is located at the following URL: https://ednakarnaval.com/nso-%D7%A7%D7%95%D7%9E%D7%91%D7%99%D7%A0%D7%AA-%D7%A1%D7%A4%D7%A8-%D7%94%D7%A0%D7%A9%D7%99%D7%90-%D7%A9%D7%9C-%D7%97%D7%99%D7%99%D7%9D-%D7%95%D7%99%D7%A1%D7%9E%D7%95%D7%A0%D7%A1%D7%A7%D7%99/.

# EXHIBIT H

to Declaration of Micah G. Block in Support of
Plaintiffs' Motion for Sanctions



Roy Blecher, Partner
Phone: 073-320-2021
E-mail: royb@krb.law

August 23, 2024

Ronald Arthur Lehmann, Adv.
Fischer (FBC & Co.)
146 Menachem Begin Rd.
**Tel Aviv**                                                    **Via Email**

Dear Mr. Lehmann,

Re: ***WhatsApp LLC et al. v. NSO Group Technologies Ltd. et al.*, 4:19-cv-07123-PJH (N.D. Cal.)**

On behalf of Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd., we are producing herewith electronically stored information ("**ESI**") to your clients, WhatsApp LLC and Meta Platforms Inc. ("**Plaintiffs**"), in response to Plaintiffs' First Set of Requests for Production of Documents dated June 3, 2020, Plaintiffs' Second Set of Requests for Production of Documents dated May 12, 2023, and the Court's Orders of February 23, 2024 (Dkt. No. 292), and August 1, 2024 (Dkt. No. 358). This production is numbered NSO-AWS-00000001 through NSO-AWS-00009311 (NSO Production Volume 006), and it is available at the link sent to you by email. Password(s) will be sent by separate email.

This production is made subject to the terms and provisions of the Stipulated Protective Order in the subject action (Dkt. No. 132), in which you are among Plaintiffs counsel of record. Moreover, this ESI is designated Highly Confidential - Attorneys' Eyes Only, pursuant to the Stipulated Protective Order. In providing this production, Defendants do not intend to waive, and do not waive, the objections set forth in Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents (and the amendments thereto) and Defendants' Objections and Responses to Plaintiffs' Second Set of Production of Documents dated July 6, 2020, February 28, 2023, and June 12, 2023.



Finally, the ESI in this production includes Defense Know-how subject to the provisions of the Israeli Defense Export Control Law-2007 ("**DECL**"). Defense Know-how Transfer, as defined in Sections 2 and 15(a)(2) of the DECL is subject to the requirements of Section 15(a) of the DECL. We are not aware of any license by the Defense Export Control Agency that relates to this ESI. It is the obligation of FBC & Co. to comply with its legal obligations under Israeli law and to obtain any licenses that may be required before transmitting export control-restricted materials outside of Israel, within Israel to a non-Israeli, or to any foreign individual or entity.

Very truly yours,

Roy Blecher, Adv.

# EXHIBIT J

to Declaration of Micah G. Block in Support of
Plaintiffs' Motion for Sanctions

# KING & SPALDING

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Tel:  +1 213 443 4355
Fax: +1 213 443 4310
www.kslaw.com

Aaron S. Craig
Partner
acraig@kslaw.com

<p style="text-align:center; color:red;">HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY</p>

September 4, 2024

**VIA EMAIL**

Craig Cagney, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

Re:     *WhatsApp, LLC, et al. v. NSO Group Technologies Limited et al.*

Dear Craig:

This letter responds to any remaining questions posed by your letter of August 26, 2024.

First, with respect to any documents produced to Davis Polk in the United States, NSO has already confirmed in communications dated August 27 and 28 that those materials may be disclosed to the plaintiffs' experts (if otherwise permitted under the governing protective order) and to court reporters, videographers, and other vendors (if those third parties have signed the protective order).  We presume that this resolves the primary concerns expressed in your letter about the documents produced by Defendants in the United States.  If it does not, please let me know so that we can confer.

Second, with respect to the AWS Server materials produced to the Fischer firm (who are your clients' counsel of record in this action), that production satisfies NSO's discovery obligations.   Your letter provides no authority to the contrary, and your complaints about it are ironic considering your own admonitions to King & Spalding accompanying each document production by Plaintiffs that those productions may be subject to export restrictions that would restrict (and have in fact restricted) King & Spalding from sharing the produced materials with our clients.[1]

---

[1] Each of your productions has been accompanied with a letter—from you—that reads:

Craig Cagney, Esq.
Davis Polk & Wardwell LLP
Page 2

Here, NSO has produced materials to Plaintiffs' counsel of record and advised them that it is their obligation to comply with legal obligations and obtain any necessary licenses required to disseminate materials further to Plaintiffs, their personnel, or their counsel outside of Israel.

We note that although the materials produced to Fischer are subject to certain restrictions under Israel's Defense Export Control Law, nothing prevents Fischer from sharing the materials with technical experts not precluded by Israeli law. And, of course, nothing prevents Facebook, WhatsApp, Davis Polk, or Fischer from seeking an export license from the Israeli Defense Export Control Administration. We presume from your letter that the Plaintiffs have failed to seek any such license, despite being on notice for more than a year that many of the materials sought by Plaintiffs in their discovery requests and motion practice are export-controlled.[2]

We further note that this issue of transmitting across borders export-controlled material that is critical to the national security of foreign nations is one that Defendants have flagged from the outset of the case. This issue was created by Plaintiffs' hyper-aggressive decision to sue Defendants in California when neither NSO, nor its customers who used Pegasus, nor the criminals and terrorists who comprise the alleged "target users" have any contact with California or the United States.[3] Please recall that NSO sought to avoid these issues by asking the Court to dismiss the lawsuit so it could be refiled in Israel, where it obviously belongs. Plaintiffs successfully opposed that request, assuring the Court that all the evidence Plaintiffs needed was located in the United States. In spite of all this, we are happy to confer with you at your convenience at a time while a deposition in this matter is not ongoing (which impacted deposition schedule is another situation entirely of Plaintiffs' making).

Third, with respect to the redactions, those marked "PII" should be self-explanatory. NSO redacted certain personal information from the documents in accordance with standard e-discovery practices. If you have questions about the reason for the PII redactions on certain documents, we are happy to meet and confer with you about them and remove any redactions the parties agree should be lifted. Those redactions marked "Per Court Order" have been made to protect the identities of NSO's government customers, consistent with NSO's obligations under Israeli law and the Court's discovery orders in this matter. The redactions marked "Export Controlled"

---

For the avoidance of doubt, by making this production and Plaintiffs' prior productions available to U.S. counsel for Defendants in the United States, Plaintiffs are under no obligation to determine, and do not take any position on, whether any of the produced documents are subject to the U.S. Department of Commerce's Bureau of Industry and Security Export Administration Regulations, 15 C.F.R. §§ 730.1, 730.6, or whether any such documents may be further transmitted to Defendants or any other party restricted from receiving such documents under those regulations. It is the obligation of King & Spalding to comply with all its legal obligations in that regard, and to obtain any licenses necessary before transmitting such documents to Defendants or any other entities.

[2] We note that, in spite of our letter and on-the-record statements, Plaintiffs continue to appear to ignore BIS restrictions concerning the disseminating of technology to NSO witnesses. In every deposition to date of an NSO employee, Plaintiffs' counsel has repeatedly shared export-controlled technology with the deponent.

[3] The Court allowed the matter to proceed in California based on Plaintiffs' (now admittedly false) representations about "server locations." In fact, none of Plaintiffs' signaling servers and only a tiny number of their relay servers were located in California, and that neither Defendants nor their customers had any control over which WhatsApp relay servers transmitted Pegasus messages.

Craig Cagney, Esq.
Davis Polk & Wardwell LLP
Page 3

comply with additional requirements imposed on NSO by the Israeli Ministry of Defense, which has required that certain information be removed before it would license the production of documents to Plaintiffs and their counsel in this litigation.

       If you have any additional questions or concerns, we would be happy to meet and confer at your convenience.  As indicated, that conference will have to be when a deposition is not taking place.

Very truly yours,

Aaron S. Craig

cc:     fb.nso@davispolk.com
       k&snso@kslaw.com

# EXHIBIT K

to Declaration of Micah G. Block in Support of
Plaintiffs' Motion for Sanctions

# Davis Polk

Craig Cagney
+1 212 450 3162
craig.cagney@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

September 12, 2024

Re: *WhatsApp, LLC, et al., v. NSO Group Techs. Ltd. et al.*, 4:19-cv-7123 (PJH)

Via Email

Aaron Craig
King & Spalding LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071

Dear Aaron:

We write in regard to your letter dated September 4, 2024 and in regard to other deficiencies in Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd.'s (collectively, "NSO") participation in discovery in this litigation.

## I.      Production of Discovery only Accessible in Israel by Israeli Citizens

NSO's latest tactic to avoid discovery, to produce materials to Plaintiffs' Israeli counsel, which you have made only accessible to Israeli citizens while in Israel, does not "satisf[y] NSO's discovery obligations." Plaintiffs and their U.S. counsel, who as you know, are trial counsel in this matter, have no access to that material and have been prejudiced by your conduct. Plaintiffs' experts have been denied access to the material, Plaintiffs were unable to question NSO's witnesses about the content and meaning of that material, and the material is otherwise unusable in the litigation.

Your conduct violates the Court's orders dated November 15, 2023 (Dkt. No. 233), February 23, 2024 (Dkt. No. 292), and August 1, 2024 (Dkt. No. 358).

## II.      Deficiencies in NSO's Document Productions

NSO's belated confirmation on August 27, 2024 that its U.S. production Volumes 5, 7, and 8 may be shared with Plaintiffs' Experts and used in depositions significantly prejudiced Plaintiffs' ability to use those documents during depositions beginning that day and in expert reports due three days later. Plaintiffs reserve the right to supplement their expert reports and reopen the depositions as they review NSO's untimely document productions.

Those productions also suffer from several other deficiencies that violate the Court's orders. For example, to date, NSO has not produced any communications between employees, price lists, customer contracts, and other materials which Plaintiffs requested in this litigation and the Court ordered NSO to produce. During depositions, NSO's witnesses confirmed the existence of such documents which NSO has nonetheless failed to produce.

**Davis Polk**

***Communications.***  Defendants have not produced any documents from NSO custodians, nor provided an explanation of how NSO collected such documents, if any.  During his August 27, 2024 deposition, NSO VP of Client Executives Ramon Eshkar testified that he "communicate[s] with [] co-workers at NSO using email" and "using messaging services."  Eshkar Dep. Tr. at 65:10-66:20.  Mr. Eshkar also referenced communications with customers regarding R&D (Eshkar Dep. Tr. at 97:1-16) and "messages to customers related to service availability" that may pertain to Relevant Spyware in this litigation (*Id.* at 191:21-192:2).[1] NSO's productions have omitted all such communications that NSO's witnesses admit exist, despite NSO's obligation to produce such communications in response to Plaintiffs' document requests.[2]

***Price list for Pegasus spyware.***  In response to Plaintiffs' RFP No. 120, which requested product pricing information,[3] NSO represented that "after a good faith search and reasonable inquiry, [Defendants] do not have any nonprivileged documents responsive to this request."  NSO's Responses and Objections to Plaintiffs' Fifth Requests for Production at 11.  This representation has been proven inaccurate.  Mr. Shohat and NSO VP of Global Business Operations Sarit Bizinsky Gil testified to the existence of a "price list which is a general guideline for [NSO's] sales people."  Shohat Dep. Tr. at 98:14-99:24; *see* Gil Dep. Tr. at 99:12-100:13 ("[t]here were several price lists that existed [between 2018 and 2020]" that were stored in the form of an "Excel spreadsheet" and "a PDF" saved on NSO employees' computers).  Ms. Gil specifically testified that (1) this price list "is composed of [NSO's] various products and their prices: the standard price, the regional head price, which is the discounted price that they can provide; and, like, the final discounting could be given by the CBO," (2) that "[a]t that time of 2018 to 2020, the price list was also per region, so could be different prices for different geographies," and (3) that the price list includes prices "for a certain amount of concurrent targets, installations . . . [and] prices for covert vectors."[4]  Gil Dep. Tr. at 98:25-104:18.  Ms. Gil further testified to the existence of "price proposal document[s]" that are sent to NSO's customers as well as a "template" price proposal document consisting of "information on the cost of the maintenance" to which "every [NSO] sales manager" had or should have had access.  *Id.* at 95:25-98:18. This information is directly responsive to Plaintiffs' RFP No. 120.  NSO has previously represented that such financial information is not subject to any Israeli law restrictions.  NSO must produce these documents before the close of fact discovery on September 13, 2024.

***Documents showing the full functionality of the Relevant Spyware.***  NSO failed to produce documents that show the full functionality of all relevant spyware, including Heaven, Eden, Erised, Pegasus, and Phantom, all of which NSO's witnesses stated involved zero-click exploits that were installed using WhatsApp and that used WhatsApp's servers.  NSO has failed to produce documents showing the full functionality of any of these spyware programs despite its discovery obligations to do so, as set forth in the

---

[1] Such communications are responsive to Plaintiffs' RFP No. 1, in response to which NSO agreed to "produce documents and communications sufficient to show NSO's development, testing, troubleshooting and maintenance with respect to the functionality of the RELEVANT SPYWARE."  Letter from A. Craig to C. Cagney dated December 13, 2023.

[2] Defendants agreed to produce communications in response to Plaintiffs' RFP Nos. 1, 3, 5, 14, 15, 17, 20, 28.  Letter from A. Craig to C. Cagney dated December 13, 2023.  Additionally, the Court ordered Defendants to produce documents responsive to Plaintiffs' other requests (Dkt. No. 292), which also call for communications.  E.g., Plaintiffs' RFP Nos. 7, 9, 10, 16, 19, 23.

[3] Specifically, Plaintiffs' RFP No. 120 requested: "Presentations, price lists, price analyses, or other documents sufficient to show the applicable pricing, including but not limited to contract pricing, per-device pricing, average pricing, or other pricing metrics, for Relevant Spyware in the Relevant Time Period."  Pls' Fifth Requests for Production at 5-6.

[4] Counsel for NSO represented during Ms. Gil's deposition that "we have given you the revenue information that was actually obtained by the company . . . [s]o I don't know why you are talking about this list, because the real information's much more accurate than this list."  Gil Dep. Tr. at 105:24-106:9.  Plaintiffs understand that the purported "real information" NSO's counsel referenced is a single Excel spreadsheet, Bates stamped NSO_WHATSAPP_00045858, which includes a "relevant revenue" category that Ms. Gil admitted was calculated for this litigation.  NSO has not produced the price list that Mr. Shohat and Ms. Gil referenced, which contains information that is relevant to this litigation and responsive to Plaintiffs' requests.

**Davis Polk**

Court's orders dated November 15, 2023 (Dkt. No. 233), February 23, 2024 (Dkt. No. 292), and August 1, 2024 (Dkt. No. 358).

Additionally, as you know, the Court ordered NSO to produce documents responsive to Plaintiffs' RFP Nos. 1, 3, 5, 7, 9, 10, 14, 15, 16, 17, 19, 20, 21, 23, 24, 28, and 30. (Dkt. Nos. 292 and 358.) We have repeatedly requested that NSO produce all documents responsive to these requests, including in my letter to you dated March 3, 2024.

By September 13, 2024, please produce all remaining responsive documents, and please cure all deficiencies, including those listed above, by supplementing your document production.

### III.     NSO's Application of Improper Redactions

As outlined in my August 26, 2024 letter, many documents in NSO's productions—namely Volumes 7 and 8—contain redactions that read, "PII," "Per Court Order," or "Export Controlled."

In your letter dated September 4, 2024, you provide no authority for making redactions for PII. To the extent such redactions were made pursuant to Israeli law, those redactions are improper and violate the Court's order compelling discovery despite those restrictions.

Numerous documents appear to redact phone numbers and Google Account credentials as "PII."[5] In particular, many documents, including NSO_WHATSAPP_00012913, NSO_WHATSAPP_00044814, and hundreds of similar iterations of the same type of document, titled "Deviate installations on white environment," contain phone numbers that you redacted. Yet, during his deposition, NSO's VP of Research and Development, Tamir Gazneli, specifically testified that the phones referenced in NSO_WHATSAPP_00012913 "are all NSO-controlled devices on which the ERISED [exploit] is being tested." Gazneli Dep. Tr. at 272:9-274:8. NSO-controlled test phone numbers are not PII, and it is accordingly improper for NSO to redact such numbers. Moreover, this information is highly relevant, as it would permit Plaintiffs to identify attackers and target phone numbers from Plaintiffs' own logs and other documents. Furthermore, the account credentials would permit Plaintiffs to determine whether NSO controlled any of the third-party servers, which are apparently held under fake names and which NSO's witnesses testified were established by NSO's "White Team." By September 13, 2024, please re-produce these documents without PII redactions. Specifically, Plaintiffs request that NSO provide un-redacted versions of NSO_WHATSAPP_00012913, NSO_WHATSAPP_00044814, and all similar documents titled "Deviate installations on white environment."

Additionally, NSO's redactions on the basis that information is "Export Controlled" violate the Court's order to produce documents "despite the DECL and other Israeli restrictions." (Dkt. No. 233 at 10.) While Plaintiffs have honored NSO's clawback requests dated August 25 and 30 in accordance with the Protective Order, Plaintiffs disagree that limitations imposed by Israeli law are a legitimate basis to claw back or redact portions of responsive documents that the Court has compelled NSO to produce "despite the DECL and other Israeli restrictions." (Dkt. No. 233 at 10.)

---

[5] Such documents include, e.g.,

> NSO_WHATSAPP_00012913, NSO_WHATSAPP_00002330, NSO_WHATSAPP_00006453, NSO_WHATSAPP_00007865, NSO_WHATSAPP_00007888, NSO_WHATSAPP_00007997, and NSO_WHATSAPP_00008469.

**Davis Polk**

By September 13, 2024, please re-produce all documents without any such "Export Controlled" redactions.[6]

As for NSO's redactions "Per Court Order," by September 13, 2024, please confirm that all such redactions—e.g., in NSO_WHATSAPP_00008469—are limited solely to the identities of NSO's customers. We disagree that blanket redactions of customer identities are proper.  NSO should instead pseudo-anonymize these documents so Plaintiffs can understand the context, and determine whether any documents refer to the same client.  By September 13, 2024, please produce all such documents with pseudonyms instead.

Finally, to the extent NSO stands by its redactions, it must provide a detailed log substantiating the basis for such redactions.  We request that NSO provide this log by the close of fact discovery.

### IV.    NSO's Log of Withheld Documents

On Tuesday, September 3, 2024, NSO produced to Plaintiffs a "Privilege Log" consisting of only four entries.[7]  The lack of entries raises concerns.

By September 13, 2024, please confirm that NSO is not withholding any other documents on the basis of privilege or Israeli Law (including either Israeli Court Orders or the DECL), and please describe the searches that NSO conducted to identify the documents it has produced in this litigation.

### V.    Relevant Time Period of Discovery

During depositions of NSO's employees, it came to light that NSO has deployed installation vectors that targeted or used WhatsApp since as early as the "end of 2017" *up until at least* May 10, 2020 (which is the current boundary of discovery ordered by the Court).  Gazneli Dep. Tr. at 266:23-267:4, 299:21-300:23. Specifically, Mr. Gazneli, testified that an exploit called Erised, which targeted WhatsApp, "remained in use by NSO customers as of at least May 2020."  *Id.* at 270:16-29.  NSO's counsel improperly directed Mr. Gazneli not to testify to whether the Erised exploit or other exploits targeted WhatsApp either after May 2020 or today.  *Id.* at 62:17-63:13, 271:9-20.  Mr. Gazneli followed the improper instruction and refused to answer, despite admitting he knew whether NSO is "currently working on any installation vectors that would operate via WhatsApp."  *Id.*  NSO's counsel also improperly directed other NSO's witnesses not to testify to similar questions.  These facts are relevant to Plaintiffs' requests for injunctive relief, and NSO's refusal to answer these questions is telling.

In the Court's February 23, 2024 order, the Court selected a relevant period one year before the activity observed by Plaintiffs began and one year after they remediated it, because NSO refused to identify the relevant period and objected to Plaintiffs' proposed time period as unduly burdensome.  The Court also ruled that "if . . . plaintiffs are able to provide evidence that any attack lasted beyond that timeframe, plaintiffs may seek further discovery."  (Dkt. No. 292 at 4.)  The testimony of NSO's witnesses now confirms

---

[6] Such documents include e.g.,

> NSO_WHATSAPP_00005017, NSO_WHATSAPP_00005385, NSO_WHATSAPP_00007823, NSO_WHATSAPP_00007865, NSO_WHATSAPP_00008034, NSO_WHATSAPP_00008102, NSO_WHATSAPP_00008141, NSO_WHATSAPP_00008359, NSO_WHATSAPP_00008629.

[7] On June 25, 2024, counsel for NSO sent Plaintiffs the metadata for documents produced by TREO Asset Management in a document entitled "WhatsApp – Privilege Log – Metadata."  However, this document is not a proper privilege log, as it does not describe why the documents within are privileged.  It only contains the metadata of the relevant documents.

**Davis Polk**

that Plaintiffs' proposed time period was accurately tailored to NSO's relevant conduct.[8]  Thus, NSO's reliance on the Court's time period to both withhold relevant documents and avoid answering relevant questions is improper.

Accordingly, please confirm by September 13, 2024 that NSO will stipulate to a relevant discovery time period of August 1, 2017 to present, and that NSO will produce documents and provide testimony regarding this relevant time period.

### VI.    NSO's Refusal to Provide 30(b)(6) Testimony on Certain Topics

NSO objections to providing 30(b)(6) testimony in response to Topics 2, 3, 8, 12, 13, 24, 25, 46, 49 through 55, and 61 are improper.  These topics are highly relevant and seek information related to: (i) NSO's knowledge and acknowledgement of the WhatsApp Terms of Service (Topics 2 and 3[9]), (ii) NSO's discovery and use of its WhatsApp exploit as well as NSO's response to Plaintiffs' discovery of the exploit (Topics 8, 24, 25, and 46[10]), (iii) any (non-privileged) information about advice NSO sought or received with regard to whether its Relevant Spyware violated U.S. law or the WhatsApp Terms of Service (Topics 12 and 13), (iv) the role of Westbridge Technologies Inc. with respect to the development, licensing, or sale of Relevant Spyware (Topic 61), and (v) NSO's efforts and policies regarding compliance with their discovery obligations in this litigation (Topics 49-55).

In its Objections and Responses to Plaintiffs' Notice of Deposition dated August 26, 2024, NSO objected to all of the above-listed topics primarily on the basis of Israeli law restrictions, rather than any defect in the topics.  As we have outlined in other portions of this letter, such objections are improper, given the Court's order to produce documents "despite the DECL and other Israeli restrictions."  (Dkt. No. 233 at 10.)

Additionally, in its Objections and Responses to Plaintiffs' Notice of Deposition, NSO substantially narrowed the scope of certain Rule 30(b)(6) topics on which Plaintiffs seek testimony from NSO.  Specifically, NSO sought to restrict the scope of 29 different topics—Topics 4, 5, 6, 7, 9, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 36, 37, 38, 39, 40, 41, 42, 43, 45, 47, 56, 58, and 59—to the time period between April 29, 2018 and May 10, 2020.  As outlined in the preceding section, such restrictions on testimony are improper and not supported by the Court's order compelling document discovery.  Moreover, as we discussed in Section V of this letter, discovery has shown that NSO has utilized WhatsApp computers beyond the period from April 29, 2018 and May 10, 2020, including as early as the "end of 2017."  (Gazneli Dep. Tr. at 299:21-300:23).

Please confirm by September 13, 2024 whether NSO will agree to provide any additional Rule 30(b)(6) testimony on the topics above.

---

[8] In Plaintiffs' Motion to Compel Discovery (Dkt. No. 235-2), Plaintiffs sought documents from between January 1, 2018 and present, based on discovery that was available at that time.  As deposition testimony has now indicated, NSO used WhatsApp computers as early as "the end of 2017."

[9] While NSO objects to Topic 3 in part because "it requires information about the actions of NSO Customers that are unknown to Defendants," discovery taken so far indicates that NSO itself performs tests using WhatsApp; NSO should, at a minimum, be prepared to provide testimony on its own or its own employees' "acknowledgement of or acceptance of WhatsApp's Terms of Service" per Topic 3.  Defs' R&Os to Pls' Notice of Deposition, dated August 26, 2024.  However, NSO has failed to produce such documents, which it acknowledges exist, to Plaintiffs' U.S. counsel, as discussed in the first section of this letter.

[10] NSO objects to Topic 46 in part because it represents that "preparing to testify about any such reference to Plaintiffs' Computers in any of the Accused Technologies, including references to Plaintiffs' domain names or IP addresses, would require reviewing an enormous amount of computer code to confirm whether any such references exist, which is unduly burdensome."

**Davis Polk**

### VII.    NSO Witnesses' Failure to Provide 30(b)(6) Testimony and Refusal to Respond to Questions

Beyond NSO's limitations on 30(b)(6) testimony as stated in its Responses and Objections to Plaintiffs' Notice of Deposition, you continued to improperly limit the scope of Plaintiffs' 30(b)(6) topics during the depositions themselves—including by objecting to questions that were within the scope of Plaintiffs' topics *even as narrowed by NSO* in its responses and objections.  Additionally, based on your improper instructions about the applicability and scope of the Court's *Richmark* order (Dkt. No. 233), NSO's witnesses refused to answer many relevant questions even in their personal capacity [11]

NSO's CEO, Mr. Shohat—who was designated as NSO's Rule 30(b)(6) witness for Topics 10, 41, 43, 55, 56, 57, 58, 59, and 60[12]—refused to answer certain questions in his corporate capacity relating to Topics 41, 43, 44, and 59.[13]

NSO's VP of Research and Development, Mr. Gazneli—who was designated as NSO's Rule 30(b)(6) witness for Topics 4, 5, 6, 7, 9, 14 through 23, 26 through 37, 45 through 48, and partially designated for Topic 1[14]—refused to answer, in his Rule 30(b)(6) capacity, numerous questions relating to, e.g., Topics 5, 7, 14, 16, 20, 21, 22, and 47.[15]  Additionally, based on your improper instructions about the Court's

---

[11] *See, e.g., Vasquez v. Leprino Foods Co.*, 2019 WL 1934015, at *5-6 (E.D. Cal. May 1, 2019) (holding that counsel improperly instructed a witness not to answer based on relevance where "the Court did not define or otherwise specify any limit on the [] deposition" of that witness); *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 2019 WL 356805, at *4-5 (N.D. Ill. Jan. 29, 2019) (holding that court's order *denying* certain document requests did *not* apply to deposition questioning and did not provide counsel with justification to instruct witness not to answer questions based on relevance objections); *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 2021 WL 5863937, at *2 (C.D. Cal. Aug. 13, 2021) ("[e]ven assuming that relevancy . . . is narrower than discovery under Rule 26, it does not follow that objections based on relevance are encouraged or permitted"); *Hernandez v. Lynch*, 2019 WL 6998774, at *3 (C.D. Cal. June 18, 2019) (where "discovery order did not address the scope of these questions . . . [c]ounsel may not instruct deponent not to answer questions on the grounds that they are attempting to enforce a court order under Rule 30(d)(3).").

The Court's ruling on Plaintiffs' motion to compel the production of *documents does not operate as a protective order allowing NSO's employees to avoid answering inculpatory questions during a deposition*. The Court set a limited time period for document discovery based on NSO's assertions of burden, and because NSO failed to disclose to the Court the full time period during which it utilized Plaintiffs' computers.  There is no similar burden associated with witnesses answering questions within their knowledge about relevant conduct outside of that time period.

[12] Shohat Dep. Tr. at 13:3-11, 25:20-26:4.  During the deposition of Mr. Gazneli, counsel for NSO represented that Mr. Shohat was the 30(b)(6) designee on Topic 10.  Gazneli Dep. Tr. at 9:12-20.

[13] You instructed Mr. Shohat not to answer, in his 30(b)(6) capacity, questions about specific spyware misuse investigations conducted by NSO, purportedly on the basis of your improper narrowing of the scope of Topic 44, which reads, "Any investigation, including the results of any investigation, conducted by NSO into the use of Relevant Spyware" (and, as narrowed by NSO:  "non-privileged aspects of the process by which investigations are conducted by Defendants into the use of the Accused Technologies").  *See* Shohat Dep. Tr. at 24:19-28:6, 30:7-31:10, 34:12-17.

You instructed Mr. Shohat not to answer, in his 30(b)(6) capacity, questions about Westbridge, despite that some of these questions were within the scope of even NSO's narrowed Topic 41 ("Defendants' efforts to market and sell in the United States, including through Defendants' affiliates, the Accused Technology in use between April 29, 2018 and May 10, 2020") and narrowed Topic 59 ("the relationship between Defendants and Westbridge Technologies, Inc. with respect to the Accused Technology in use between April 29, 2018 and May 10, 2020").  *Id.* at 137:25-138:6, 138:7-11, 138:19-139:15.  All questions were within the scope of the 30(b)(6) topics as drafted by Plaintiffs.

You instructed Mr. Shohat not to answer, in his 30(b)(6) capacity, questions about NSO's oversight of customers, purportedly on the basis of your improper time-period-based narrowing of the scope of Topic 43 which, as drafted by Plaintiffs, reads, "Defendants' oversight of its customers' potential misuse of the Relevant Spyware, including the conditions that Defendants put on its customers' use of the Relevant Spyware, the obligations that NSO Customers have to notify Defendants of any potential misuses of the Relevant Spyware, and Defendants' ability to suspend or terminate service to customers who misuse the Relevant Spyware." *See id.* at 183:14-184:11, 184:16-185:16.

[14] Gazneli Dep. Tr. at 8:23-9:11.

[15] You instructed Mr. Gazneli not to answer, in his 30(b)(6) capacity, questions about the development of Pegasus, the information that Pegasus seeks to obtain, and the deployment of Pegasus, despite that some of these questions were within the scope of even NSO's narrowed 30(b)(6) topics, including Topics 5, 7, and 16.  *See* Gazneli Dep. Tr. at 90:2-91:23, 101:4-14, 111:3-112:14, 113:7-114:16, 121:12-21, 123:2-20.  NSO's narrowed Topic 5 reads, "Defendants' understanding of the full functionality of the Accused Technology in use between April 29, 2018 and May 10, 2020"; NSO's narrowed Topic 7 reads, "Defendants' understanding of research, development and testing of the Accused Technology in use between April 29, 2018 and May 10, 2020"; and NSO's narrowed Topic 16 reads, "Defendants' understanding of how the Accused Technology in use between April 29, 2018 and May 10, 2020 could be used, with respect to the Target Devices."

You instructed Mr. Gazneli not to answer, in his 30(b)(6) capacity, questions about NSO's establishment of an anonymized transmission network and leasing of third-party servers that were within the scope of even NSO's narrowed Topic 47 (which, as narrowed by NSO, reads: "Defendants'

# Davis Polk

*Richmark* order, Mr. Gazneli refused to provide any testimony regarding any "installation vectors that would work via WhatsApp" beyond those in existence during 2018, 2019, and 2020 (Gazneli Dep. Tr. at 46:17-47:6) and refused to testify about whether "NSO is actively working to develop installation vectors that would operate via WhatsApp" (*id.* at 63:3-7).

NSO's VP of Client Executives, Mr. Eshkar—who was designated as NSO's 30(b)(6) witness for Topics 11, 38, and 42 and partially designated for Topic 1[16]—refused to answer certain questions relating to these topics in his corporate capacity.[17]  Additionally, based on your improper instructions about the Court's *Richmark* order, Mr. Eshkar did not provide any testimony at all about, among other things, whether NSO "create[s] anonymized Facebook accounts."  Eshkar Dep. Tr. at 50:11-52:19; *see also id.* at 48:20-50:9.

During the deposition of NSO's VP of Global Business Operations, Ms. Gil—who was designated as NSO's 30(b)(6) witness for Topics 39 and 40[18]—counsel for Defendants objected to a question regarding pricing for Defendants' products, which was within the scope of Plaintiffs' Rule 30(b)(6) topics.[19]

By September 13, 2024, please confirm whether NSO will treat these answers to Plaintiffs' Rule 30(b)(6) questions—which were purportedly in the deponents' personal capacities—as Rule 30(b)(6) answers binding on NSO, or let us know when you will be providing another witness to fully address these questions. Additionally, by September 13, 2024 please confirm whether NSO will make its witnesses available again to answer all the questions which you improperly instructed them not to answer on the basis of the Court's *Richmark* order.

## VIII.    NSO's Failure to Supplement or Amend its Response to Plaintiffs' RFAs

NSO has failed to supplement or amend its responses to Plaintiffs' Request for Admission Nos. 6, 7, 8, 34, 35, and 38.[20]  The Court specifically ordered NSO to supplement its response to RFA No. 38 within 21 days

---

understanding of the development of the Accused Technology in use between April 29, 2018 and May 10, 2020, including general information about Defendants' use of third party servers in the Accused Technology").  *See id.* at 127:22-128:16, 130:11-131:13, 292:3-293:3.

You instructed Mr. Gazneli not to answer, in his 30(b)(6) capacity, questions about the Heaven installation vector and the manner in which any WhatsApp exploit accesses Plaintiffs' computers, some of which were within the scope of even NSO's narrowed Topics 14, 20, 21, and 22 (and all of which were within the scope of the topics as drafted by Plaintiffs).  *Id.* at 133:24-134:6, 134:24-136:10, 139:8-17-140:1, 141:4-25, 197:24-198:8, 220:7-221:15.  NSO's narrowed Topic 14, reads, "Defendants' understanding of the development of the Accused Technology in use between April 29, 2018 and May 10, 2020"; NSO's narrowed Topic 20 reads, "Defendants' understanding of the Accused Technology in use between April 29, 2018 and May 10, 2020";  NSO's narrowed Topics 21 and 22 read, "Defendants' understanding of the Accused Technology in use between April 29, 2018 and May 10, 2020, relating to Plaintiffs' Computers."

[16] Eshkar Dep. Tr. at 10:20-12:21.

[17] You instructed Mr. Eshkar not to answer, in his 30(b)(6) capacity, questions about the systems NSO provides to customers, NSO's creation of anonymized WhatsApp accounts for use by its customers, training demonstrations provided by NSO to its customers, and NSO customers' use of the Relevant Spyware generally.  Eshkar Dep. Tr. at 22:11-19, 26:25-28:24, 39:18-43:25, 52:21-54:17, 70:16-72:25, 97:23-98:8.  All of these questions fall within the scope of Topics 1, 11, 38, and 42, for which Mr. Eshkar was designated as NSO's 30(b)(6) witness.  As drafted by Plaintiffs, Topic 1 reads, "Your creation, use, and deletion of WhatsApp accounts, including by or on behalf of Your customers, directors, employees, subsidiaries, affiliates, agents, and representatives";  Topic 11 reads, "Your communications with NSO Customers regarding Relevant Spyware functionality and its legality";  Topic 38 reads, "Defendants' marketing and promotion of the Relevant Spyware, including the brand names used to market NSO Spyware, the capabilities marketed to customers or potential customers, any product demonstrations provided to customers or potential customers";  and Topic 42 reads, "Defendants' knowledge of the use of the Relevant Spyware by NSO Customers, including NSO Customers' control over selecting targets and knowledge of exploits."

[18] Gil Dep. Tr. at 42:17-44:11.

[19] Gil Dep. Tr. at 237:18-238:12 (objecting to question reading: "as the corporate representative to discuss defendants' pricing in 2018 and 2019, do you know how defendants allowed WestBridge to set prices for defendants products?").

[20] Plaintiffs' RFA No. 6 reads, "Admit that since July 19, 2020, You have performed a demonstration of NSO Spyware for a Person located outside Israel." Plaintiffs' RFA No. 7 reads, "Admit that since July 19, 2020, You have shared information concerning Your finances with a Person located outside Israel." Plaintiffs' RFA No. 8 reads, "Admit that since July 19, 2020, You have shared documentation about NSO Spyware with a Person located outside Israel." Plaintiffs' RFA No. 34 reads, "Admit that, between April 29, 2019 and May 10, 2019, WestBridge used, caused to be used, and Controlled the Device associated with the phone number (202) 765-5322."  Plaintiffs' RFA No. 35 reads, "Admit that between April 29, 2019 and May 10, 2019, WestBridge

---

**Davis Polk**

of its August 1, 2024 Order.  NSO has failed to do so.  With regard to RFA Nos. 34 and 35, former Westbridge Technologies Inc. employee, Josh Shaner, produced documents in this litigation that demonstrate he used, on behalf of Westbridge, the device associated with the phone number (202) 765-5322.[21]

Please provide your supplemented or amended responses to RFA Nos. 6, 7, 8, 34, 35, and 38 by September 13, 2024.

Plaintiffs reserve all rights.

Very truly yours,

*/s/ Craig Cagney*

Craig Cagney

---

employee Josh Shaner, used, caused to be used, and Controlled the Device associated with the phone number (202) 765-5322."  Plaintiffs' RFA No. 38 reads, "Admit that You had Control over the servers that resolve to the Internet Protocol (IP) address 54.93.81.200 during the 2019 Attack Period."  Pls.' First Set of RFAs, dated March 7, 2023.  Plaintiffs have repeatedly requested a supplemental response to RFA No. 38, including in my letters to you dated August 3, 2023 and March 3, 2024.

[21] *See* SHANER_WHATSAPP_00001453, SHANER_WHATSAPP_00001483, SHANER_WHATSAPP_00001484, SHANER_WHATSAPP_00001486.