1

2

3                  UNITED STATES DISTRICT COURT

4                NORTHERN DISTRICT OF CALIFORNIA

5

6

7    WHATSAPP INC., et al.,                    Case No. 19-cv-07123-PJH

                 Plaintiffs,
8
                                               **FINAL PRETRIAL ORDER**
9         v.
                                               Re: Dkt. 488, 491, 505, 506, 509, 510,
10   NSO GROUP TECHNOLOGIES
     LIMITED, et al.,                          512, 514, 573, 593, 601
11               Defendants.

12

13

14          Pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, this final pretrial

15   order is hereby entered and shall control the course of the trial unless modified by a

16   subsequent order.

17   I.     MOTIONS IN LIMINE

18          A.      Plaintiffs' Motion in Limine No. 1

19          Plaintiffs' first motion in limine asks the court to preclude defendants from offering

20   "evidence, testimony, or argument about the alleged identities or affiliations of its

21   customers or prospective customers, including governments or law enforcement, military,

22   or intelligence agencies."  See Dkt. 593 at 6.

23          As an initial matter, such evidence is irrelevant to the issue of compensatory

24   damages.  The alleged identities of defendants' customers has no bearing on the costs

25   incurred by plaintiffs in responding to the conduct at issue.

26          To the extent that the alleged identities of defendants' customers are relevant to

27   punitive damages, the court first emphasizes that the punitive damages analysis does not

28   look to defendants' conduct as a whole, it "must be tied to oppression, fraud, or malice in

the conduct which gave rise to liability in the case." See Livingston v. ABB, Inc., 100 F.Supp.3d 894, 904 (C.D. Cal. 2015) (citing Medo v. Superior Court, 205 Cal.App.3d 64, 68 (1988)). In other words, the punitive damages analysis looks to defendants' intent with respect to the conduct alleged in this case.

At the pretrial conference, defendants' counsel maintained that defendants are "unable to turn over" much of the evidence regarding which client(s) conducted the specific intrusions at issue in this case because they are "not items that we have possession of or ever did." See Dkt. 684 at 49. In other words, defendants' counsel argues that they have not refused to produce the discovery, they argue that they are unable to produce the discovery because it is not in their possession.

Over the course of the pretrial conference, defendants' counsel maintained that defendants do not have information about which of their client(s) were responsible for accessing the 1400 target devices at issue in this suit, or the client's reason(s) for the access. See Dkt. 684 at 41 ("We would not know who are the specific customers who are targeting those 1400."); id. at 65 ("what I think you're looking for is do you -- do you have evidence about what your customers did with the -- with your system and who they investigated and where those people are and what numbers of the target devices were being used, and so on. And the answer to that remains, as I've said earlier, Your Honor, that that is not information that NSO ever had.").

Defendants' counsel reiterated that they do not have specific information about the attacks at issue in this case:

> To the extent that that was requested in discovery and ordered by the Court, we provided whatever we had. We do not have discovery about who our clients target, what their criminal investigations are. As you would expect, we don't know what client X is investigating. It would be totally inappropriate for a software provider to be exposed to what criminal investigations or what counterterrorism investigations are being conducted by a foreign nation state. They wouldn't want us to know that and we wouldn't want to know that.

See Dkt. 684 at 66-67.

On other occasions, defendants' counsel implied that, to the extent that

United States District Court
Northern District of California

1    defendants did have information that was not produced, any non-production was due to

2    national security reasons.  See Dkt. 684 at 15-16 ("generally speaking what the

3    customers, you know, the details of their operations, to the extent it's known to NSO,

4    Your Honor is correct that that has not -- that is not a subject that the witnesses were

5    allowed to testify about or that we were allowed to produce evidence of for national

6    security reasons.")

7            Defendants also point out, correctly, that the court previously concluded that they

8    "need not disclose the identities of their third-party clients."  See Dkt. 292 at 5.  However,

9    the court simultaneously concluded that, while "plaintiffs need not discover the specific

10   identities of the third parties, they were "permitted to discover information about what

11   actions were taken by those third parties," because "defendants have raised the actions

12   of those third-party clients as a defense."  See id. (emphasis in original).

13           Regardless of the reason, the fact remains that plaintiffs have not had a

14   meaningful opportunity to review evidence regarding which of defendants' clients were

15   responsible for the alleged attacks.  Defendants argue that plaintiffs' own documents

16   identify "at least four countries as NSO customers," but it does not appear that

17   defendants have confirmed that those countries are indeed their customers, nor – more

18   importantly – have defendants confirmed that any of those countries were responsible for

19   the attacks alleged in this suit.  Defendants rely on generalized evidence about their

20   business practices, stating that they have a practice of licensing Pegasus only for lawful

21   purposes and terminating the license of any client found to be misusing Pegasus, but

22   there is an absence of specific evidence tying those general business practices to the

23   specific events of this case.

24           The end-result of all of this discussion is that neither party has non-speculative

25   evidence about the identities of which NSO customers were responsible for the attacks

26   alleged in this case.  As a result, it would be improper for the court to allow evidence of

27   NSO's other customers and their supposed intent, entirely unrelated to the events of this

28   lawsuit.  While plaintiffs' motion largely frames the argument as defendants' refusal to

provide relevant discovery, the pretrial conference clarified defendants' position that they are not in possession of the discovery at issue in this motion in limine, as can be seen in the transcript quotations above.  Accordingly, any ruling by the court is based purely on the <u>absence</u> of evidence, not on alleged discovery misconduct.

Defendants cite a number of cases broadly allowing intent-related evidence for reasons of "background" or "context."  But the reasoning of those cases cannot be directly applied here, because those cases did not involve the same sort of discovery limitations due to the necessity of applying the <u>Richmark</u> analysis.  <u>See</u> <u>Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468 (9th Cir. 1992).  The Richmark court noted that "we are not unmindful of the difficulties foreign corporations face in doing business in the United States, nor of the rather delicate nature of relations between sovereign states," but that  "international business requires the accommodation of different legal climates." <u>Id.</u> at 1478-79.  The Ninth Circuit made clear that, "just as United States companies doing business in" a foreign country must expect to abide by that country's laws, when a foreign company "availed itself of business opportunities in this country, it undertook an obligation to comply with the lawful orders of United States courts."  <u>Id.</u> at 1479.

Like the <u>Richmark</u> court, this court does "not minimize the difficult situation in which" defendants have been placed due to their competing legal obligations, but the fact remains that, in this case, plaintiffs have not had a full opportunity to test and scrutinize evidence regarding which of defendants' clients were responsible, or the actions taken or motivations for the attacks at issue, thus distinguishing this case from more-typical punitive damages cases in which discovery is unfettered by <u>Richmark</u> considerations.

Importantly, even if the evidentiary record did establish which of defendants' client(s) were responsible for the attacks at issue, defendants would not be permitted to impute the law enforcement/military purposes <u>of those clients</u> to defendants themselves.[1]

---

[1] Because defendants argue that both the identity of their clients, as well as their clients' purposes, are relevant to the punitive damages analysis, the court discusses them both here, and notes that the discussion overlaps with the analysis of plaintiffs' second motion in limine.

United States District Court
Northern District of California

While it may be true that the clients' intent was "solely" investigatory, NSO is a for-profit company and thus does not have congruent intent with a government client.

Moreover, it would be inconsistent to allow defendants to argue that it has the exact same purpose as its clients while simultaneously arguing that defendants have nothing to do with the decision of who to target and no control over when and where Pegasus is used.  Defendants cannot claim, on the one hand, that its intent is to help its clients fight terrorism and child exploitation, and on the other hand say that it has nothing to do with what its client does with the technology, other than advice and support. Additionally, there is no evidence as to the specific kinds of crimes or security threats that its clients actually investigate and none with respect to the attacks at issue.

There are also references in the record to uses of Pegasus that do not meet defendants' proffered description of how it is used (such as the cited media report regarding Dubai), and plaintiffs' evidence suggests that members of 'civil society' have been a target of Pegasus hacks.  While defendants admit there are abuses and misuses and have a protocol for investigating them, they were unable to provide a coherent explanation for how they are able to detect misuses if they don't monitor the use of Pegasus or know when it is being used.

Finally, just as defendants seek to exclude evidence of their alleged conduct unrelated to this lawsuit in connection with their sixth motion in limine, the court believes that the principle must be consistently applied.  Defendants argue that NSO's alleged conduct towards non-parties, such as the late Jamal Khashoggi, is "irrelevant to damages" as well as "inadmissible under Rule 403 because the risk of unfair prejudice and confusion of the issues would substantially outweigh even if there were any negligible probative value," as they "could serve only to inflame the passions of the jury and unfairly prejudice it."  See Dkt. 596-3 at 21.  The court finds this reasoning convincing, and concludes that it operates to bar not only allegations regarding NSO's conduct as to Jamal Khashoggi, but also NSO's conduct as to other parties unrelated to this suit.  In addition, just as the court is not admitting plaintiffs' evidence and argument

United States District Court
Northern District of California

1   regarding the alleged 'civil society' status of its hacked users, the proper balance under

2   Federal Rule of Evidence 403 favors excluding such evidence/argument from both sides.

3       At the hearing, the court discussed the difficulty in line-drawing, allowing

4   defendants to describe their business on one hand, without delving into the insufficiently-

5   supported evidence regarding any law enforcement purposes.  Plaintiffs' counsel offered

6   a suggestion that defendants could say that they license their products to foreign

7   governments, among others, without starting down the slippery slope of arguing that

8   every target of Pegasus must be a criminal.  While the court will still need to address

9   objections to specific evidence as they arise, the court for now adopts plaintiffs' counsel's

10  suggestion and will allow defendants to argue that they licensed Pegasus to governments

11  and their agencies, but will not allow them to argue about those governments' purported

12  motives related to crime, terrorism, child exploitation, or similar topics.  Depending on the

13  evidence, testimony, and argument presented, the court may also require that a jury

14  instruction be given on this topic.  Accordingly, with the above caveat, plaintiffs' first

15  motion in limine is GRANTED.

16      B.      Plaintiffs' Motion in Limine No. 2

17      Plaintiffs' second motion in limine seeks to preclude defendants from offering

18  "evidence, testimony, or argument that Pegasus is used, can be used, or is needed to

19  investigate crime, including child sex exploitation and terrorism, including because of

20  end-to-end encryption."  See Dkt. 593 at 9.

21      The court resolves this motion in largely the same way that it resolved plaintiffs'

22  first motion in limine.  Discovery showing that the specific intrusions on plaintiffs' systems

23  were the result of an investigation into criminal activity or terrorism is not in the

24  evidentiary record, and thus, such testimony may not presented at trial.  Plaintiffs' second

25  motion in limine is GRANTED.

26      C.      Plaintiffs' Motion in Limine No. 3

27      Plaintiffs' third motion in limine seeks to preclude defendants from offering

28  "evidence, testimony, or argument regarding its purported efforts to screen potential

customers and regulate its existing customers' use of its spyware."  See Dkt. 593 at 11.

Again, the limited nature of the discovery in this case requires that this motion be granted.  As discussed above, in connection with plaintiffs' first motion in limine, the evidentiary record is opaque as to which of defendants' clients were responsible for the attacks at issue, and thus plaintiffs were unable to discover evidence about whether screening procedures were followed with respect to those clients.  Moreover, to the extent that the parties discuss facts regarding clients who were found to have misused Pegasus, those facts appear to have come from media reports, rather than from defendants.

Accordingly, in the absence of specific evidence of instances where screening procedures were not effective, the court concludes that it would be improper to allow generalized evidence of screening procedures that may or may not have relevance to the conduct alleged in this case.  Accordingly, plaintiffs' third motion in limine is GRANTED.

D.      Plaintiffs' Motion in Limine No. 4

Plaintiffs' fourth motion in limine seeks to preclude defendants from presenting any "evidence, testimony, or argument suggesting it lacked control over its customers' use of Pegasus."  See Dkt. 593 at 13.

The court views this issue as similar to the one presented by plaintiffs' third motion in limine.  Because there is an absence of evidence as to which of defendants' client(s) were responsible for the attacks at issue, there is no way to establish defendants' relative level of control as to those specific client(s).  In other words, as before, defendants attempt to rely on generalized evidence about their business practices, without any specific evidence tying those business practices to the facts of this case.  Accordingly, plaintiffs' fourth motion in limine is GRANTED.

E.      Plaintiffs' Motion in Limine No. 5

Plaintiffs' fifth motion in limine seeks to preclude defendants from offering "evidence, testimony, or argument about the alleged insufficiency of Whatsapp's security measures, including that Whatsapp purportedly 'created' the vulnerability NSO exploited."

1    See Dkt. 593 at 14.

2    In essence, to the extent defendants intend to offer such evidence, it would be an

3    attempt to re-litigate the issue of causation that was already determined in the court's

4    order granting summary judgment.  Thus, plaintiffs' fifth motion in limine is GRANTED.

5    Defendants of course remain able to argue that the costs incurred by plaintiffs were

6    unreasonable, as they argue in their response to plaintiffs' motion.

7    F.    Plaintiffs' Motion in Limine No. 6

8    Plaintiffs' sixth motion in limine seeks to preclude "evidence, testimony, or

9    argument about the alleged use of Whatsapp by terrorists, criminals, or other bad actors,

10   including characterizing the Whatsapp users who were targeted in NSO's attacks as

11   actual or suspected bad actors."  See Dkt. 593 at 15.

12   The court resolves this motion in the same way that it resolved plaintiffs' first and

13   second motions in limine.  In the absence of evidence showing that the specific intrusions

14   on plaintiffs' systems were the result of actual investigations into terrorist or criminal

15   activity, any such arguments or testimony may not be presented at trial.  Plaintiffs' sixth

16   motion in limine is GRANTED.

17   G.    Plaintiffs' Motion in Limine No. 7

18   Plaintiffs' seventh motion in limine seeks to preclude "evidence, testimony, or

19   argument about plaintiffs' reputation, including references to irrelevant disputes, legal

20   allegations, and controversies involving plaintiffs or their officers."  See Dkt. 593 at 18.

21   As discussed at the pretrial conference, as reputational damages are not at issue

22   in this case, neither party will be permitted to introduce evidence, testimony, or argument

23   regarding plaintiffs' reputation or any harm to it.  Accordingly, plaintiffs' seventh motion in

24   limine is GRANTED, and as will be discussed below, defendants' first motion in limine is

25   granted for the same reason.

26   H.    Plaintiffs' Motion in Limine No. 8

27   Plaintiffs' eighth motion in limine seeks to preclude testimony from defendants'

28   experts Shepard and Minkler "because the entirety of their opinions concern irrelevant

policy matters, lack any evidentiary foundation, and are more prejudicial than probative." See Dkt. 593 at 19.  Plaintiffs also seek to exclude much of the testimony of defendants' expert McGraw based on the same rationale.

Plaintiffs acknowledge that they seek the same relief here that they seek via their Daubert motions, and the court will address all expert testimony together, in section II of this order.  Thus, plaintiffs' eighth motion in limine is DENIED as moot.

I.      Defendants' Motion in Limine No. 1

Defendants' first motion in limine seeks to exclude "evidence of purported injury to Whatsapp's reputation."  See Dkt. 601 at 9.

As discussed above, in connection with plaintiffs' seventh motion in limine, defendants' first motion in limine is GRANTED.

J.      Defendants' Motion in Limine No. 2

Defendants' second motion in limine seeks to exclude "testimony of witnesses not disclosed during discovery period."  See Dkt. 601 at 11.

Plaintiffs' response states that they do not intend to call any witnesses that were not identified on initial disclosures or made available for deposition, and thus, defendants' second motion in limine is GRANTED, and the court will not permit any undisclosed witnesses to testify.

K.      Defendants' Motion in Limine No. 3

Defendants' third motion in limine seeks to exclude "evidence of the identities and occupations of ~1,400 targets referenced in complaint."  See Dkt. 601 at 13.

Plaintiffs' response argues that they do not intend to introduce such evidence as part of their case, but would want to respond if defendants were to put on evidence of Whatsapp's users being criminals or terrorists.  As discussed above, defendants will not be permitted to introduce such evidence, and thus plaintiffs will not need to use evidence regarding the targets' identities in response.  Accordingly, defendants' third motion in limine is GRANTED.

1    L.    Defendants' Motion in Limine No. 4

2    Defendants' fourth motion in limine seeks to exclude the "argument that NSO

3    'used' Pegasus."  See Dkt. 601 at 15.

4    The court attempted to gain additional clarity on the intended scope of this motion

5    from the parties at the pretrial conference, with mixed results.  In connection with

6    summary judgment, the court has already determined that defendants are liable for the

7    attacks at issue in this case and will not allow testimony that contradicts that

8    determination.  Thus, defendants' fourth motion in limine is DENIED as moot.

9    M.    Defendants' Motion in Limine No. 5

10    Defendants' fifth motion in limine seeks to exclude "testimony on topics about

11    which plaintiffs refused to produce a Rule 30(b)(6) witness."  See Dkt. 601 at 16.

12    Specifically, defendants seek to exclude testimony on these topics: (1) defendants'

13    actions constituting malice, oppression, or fraud, (2) plaintiffs' cooperation with law

14    enforcement and efforts to address whether WhatsApp hampers efforts to stop crime,

15    terrorism, and child exploitation imagery, and (3) damages theories other than the actions

16    plaintiffs took and the time plaintiffs' employees spent responding to NSO's exploit in May

17    2019."

18    Starting with topic (2), in light of the court's ruling excluding defendants' evidence

19    that Pegasus was used to combat crime, terrorism, and child exploitation, the court does

20    not see how evidence of plaintiffs' cooperation would be relevant to any claim or defense

21    in the action.  Thus, as to (2), defendants' fifth motion in limine is DENIED as moot.

22    As to topic (1), plaintiffs are not required to designate a witness to lay out their

23    legal theories of punitive damages.  To the extent that plaintiffs attempt to show malice,

24    oppression, or fraud using documents or witnesses that were not produced in discovery,

25    those documents or witnesses will be excluded, but the court finds no basis for excluding

26    all testimony on the topic as a whole, especially since the relevant inquiry looks to

27    defendants' conduct, and thus the relevant discovery would seem to be in defendants'

28    possession, not plaintiffs'.  Thus, as to (1), defendants' fifth motion in limine is DENIED.

United States District Court
Northern District of California

1    As to topic (3), again, to the extent that plaintiffs attempt to establish damages

2   using documents or witnesses that were not produced in discovery, those documents or

3   witnesses will be excluded, but the court finds no basis for a broader exclusion based on

4   the argument that plaintiffs did not designate a witness to outline their legal theories.

5   Thus, as to (3), defendants' fifth motion in limine is DENIED.

6    N.    Defendants' Motion in Limine No. 6

7    Defendants' sixth motion in limine seeks to exclude "evidence about other lawsuits

8   against NSO and the use of Pegasus being related to the death of Jamal Khashoggi."

9   See Dkt. 601 at 20.

10    Plaintiffs do not oppose defendants' sixth motion in limine, and thus, it is

11   GRANTED.

12    O.    Defendants' Motion in Limine No. 7

13    Defendants' seventh motion in limine seeks to exclude "evidence of Israeli national

14   security proceedings and related information."  See Dkt. 601 at 22.

15    Plaintiffs' response states that they "do not intend to affirmatively offer" such

16   evidence, but may do so to "impeach the credibility of NSO's witnesses and to rebut

17   NSO's presentation of evidence.  See Dkt. 644-3 at 15.

18    The court does not see a scenario where plaintiffs would need to present such

19   evidence, and thus GRANTS defendants' seventh motion in limine.

20    P.    Defendants' Motion in Limine No. 8

21    Defendants' eighth motion in limine seeks to exclude "evidence of 'Black Cube'

22   and its purported 'intimidation.'"  See Dkt. 601 at 25.

23    Plaintiffs state that they do not intend to introduce evidence of Black Cube, and

24   thus, defendants' eighth motion in limine is GRANTED.

25    Q.    Defendants' Motion in Limine No. 9

26    Defendants' ninth motion in limine seeks to exclude "evidence of the Entity List

27   and President Biden's executive order."  See Dkt. 601 at 26.

28    Plaintiffs' response argues that they do not oppose the motion as long as

United States District Court
Northern District of California

defendants are precluded from offering evidence about the purported benefit to law enforcement.  In light of the court's earlier rulings on defendants' evidence, the court sees no need for plaintiffs to introduce the evidence challenged here, and thus, defendants' ninth motion in limine is GRANTED.

R.      Defendants' Motion in Limine No. 10

Defendants' tenth motion in limine seeks to exclude "evidence of pretrial sanctions."  See Dkt. 601 at 28.

Plaintiffs argue that the jury needs to be instructed on pretrial sanctions to ensure that defendants do not benefit from their refusal to meaningfully participate in discovery. However, given that the jury is considering only issues of damages – not liability – the court sees no need for the jury to be instructed on defendants' discovery conduct. Instead, the appropriate remedy is exclusion of any unproduced evidence.  Accordingly, defendants' tenth motion in limine is GRANTED.

II.      EXPERT TESTIMONY

The parties have filed a total of nine motions related to expert testimony, seven of which are motions to exclude under Federal Rule of Evidence 702 and Daubert v. Merrell Dow, and two of which are motions to strike supplemental expert reports as untimely under Federal Rule of Civil Procedure 26.  The court will start with the Daubert motions.

Federal Rule of Evidence 702 permits experts qualified by "knowledge, experience, skill, expertise, training, or education" to testify "in the form of an opinion or otherwise" based on "scientific, technical, or other specialized knowledge" if that knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met.  See Fed. R. Evid. 702, Advisory Committee Notes.  Although there is a presumption of admissibility, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588 (1993), the trial court is obliged

1    to act as a "gatekeeper" with regard to the admission of expert scientific testimony under

2    Rule 702.  Id. at 597.

3        Daubert requires a two-part analysis.  First, the court must determine whether an

4    expert's testimony reflects "scientific knowledge," whether the findings are "derived by the

5    scientific method," and whether the work product is "good science"—in other words,

6    whether the testimony is reliable and trustworthy.  Id. at 590 & n.9, 593.  Second, the

7    court must determine whether the testimony is "relevant to the task at hand."  Id. at 597.

8        As a threshold matter, many of the Daubert motions relate to experts whose

9    testimony is relevant only to liability issues, not to damages issues.  Specifically, the court

10   refers to these motions: (1) plaintiffs' motion to exclude the testimony of Ty Shepard (Dkt.

11   505), who offers testimony on "the use of encrypted messaging applications by threat

12   actors, the utility of tools like NSO's Pegasus for the United States and its allies to

13   counter such threats, related military and intelligence practices, and the market for

14   cybersurveillance tools" (see Dkt. 617 at 6); (2) plaintiffs' motion to exclude the testimony

15   of Terrance McGraw (Dkt. 514), who offers testimony on the "lawful intercept" industry

16   and the extent to which any harm suffered by plaintiffs was not caused by defendants; (3)

17   plaintiffs' motion to exclude the testimony of Joshua Minkler (Dkt. 573), who opines that

18   "tools such as Pegasus benefit law enforcement by filling a rapidly increasing gap in law

19   enforcement's  ability to intercept the communications of criminals using end-to-end

20   encrypted services such as WhatsApp" (see Dkt. 613 at 7); (4) defendants' motion to

21   exclude the testimony of Anthony Vance (Dkt. 509), who offers technical testimony about

22   the steps taken by defendants to access plaintiffs' servers and plaintiffs' steps to

23   circumvent access, as well as policy-related testimony about end-to-end encryption; and

24   (5) defendants' motion to exclude the testimony of David Youssef (Dkt. 512), who offers

25   technical testimony on the capabilities of defendants' software and defendants' efforts to

26   deliver malware to plaintiffs' users.

27       As discussed at length at the pretrial conference, the court finds that the testimony

28   of defendants' non-damages experts (i.e., Shepard, McGraw, and Minkler) is overly

United States District Court
Northern District of California

13

1    reliant on the type of generalized testimony regarding law enforcement, military, and

2    intelligence purposes that are not sufficiently tethered to the conduct alleged in this case.

3    Accordingly, plaintiffs' motions to exclude the testimony of Shepard, McGraw, and

4    Minkler are GRANTED, as their testimony is not relevant to the issues to be considered

5    at trial and thus not "relevant to the task at hand."

6        Regarding plaintiffs' experts, plaintiffs argue that Youssef and Vance's testimony is

7    relevant to punitive damages.  However, as defendants argue, plaintiffs previously

8    opposed a request for additional time for defendants to depose Youssef, arguing that it

9    was "likely moot" in light of the summary judgment order resolving all liability issues.

10   While plaintiffs maintained that they "cannot agree to forgo calling Youssef under any

11   circumstances, including, for example, if NSO is permitted to call its technical expert," the

12   court's order made clear that it "cannot envision a circumstance in which either party will

13   be permitted to put on testimony from their technical experts," and denied defendants'

14   request as moot.  See Dkt. 498 at 5, Dkt. 519 at 3.  Defendants argue that principles of

15   judicial estoppel require that Youssef's testimony be excluded, as the court relied on

16   plaintiffs' representation regarding the non-presentation of Youssef's testimony, his

17   testimony will not be permitted at trial.  Accordingly, defendants' motion to exclude

18   Youssef's testimony is GRANTED.

19       As to Vance, aside from rebutting testimony of defendants' experts, he offers

20   testimony only as to the narrow issue of defendants' circumvention of plaintiffs' security

21   measures, which is more appropriately presented by a fact witness.  Because

22   defendants' policy-related experts will not be permitted to testify, Vance will not need to

23   rebut their testimony, and thus, defendants' motion to exclude Vance's testimony is

24   GRANTED.

25       That leaves two Daubert motions remaining:  (1) plaintiffs' motion to exclude the

26   testimony of defendants' damages expert Gregory Pinsonneault (Dkt. 510), and (2)

27   defendants' motion to exclude the testimony of plaintiffs' damages expert Dana Trexler

28   (Dkt. 506).  Each party has also filed a motion to strike as untimely the supplemental

1  damages report of the opposing party's expert.  See Dkt. 488, 491.

2        The court starts with defendants' motion to exclude the testimony of plaintiffs'

3  damages expert Dana Trexler.  Defendants seek to exclude opinions (1) related to costs

4  incurred by 14 employees who Trexler did not interview, (2) including stock grants as part

5  of labor costs, and (3) related to disgorgement.

6        As to (3), plaintiffs have confirmed that they are no longer seeking damages based

7  on disgorgement.  Thus, the court believes dispute (3) to be moot.  Plaintiffs' counsel

8  stated that they still intend to "put into the record evidence regarding NSO's finances and

9  the enormous revenues that they obtained from the product and the unlawful conduct,"

10  (see Dkt. 684 at 18), but it appears that the full disgorgement analysis no longer needs to

11  be presented to the jury.

12        As to (1), there is no requirement that an expert personally interview all employees

13  who incurred labor costs.  The Ninth Circuit has held that an expert's opinion can rely on

14  "facts or data in the case that the expert has been made aware of or personally

15  observed."  Stephens v. Union Pacific R.R. Co., 935 F.3d 852, 856 (9th Cir. 2019).  The

16  Federal Rules of Evidence also expressly allow an expert to rely on hearsay if "experts in

17  the particular field would reasonably rely on those kinds of facts or data in forming an

18  opinion on the subject."  FRE 703.  Defendants of course remain free to cross-examine

19  Trexler about her reliance on hearsay and any other aspects of her analysis that they see

20  as lacking, but defendants have not presented any basis for entirely excluding this portion

21  of her testimony.  Thus, defendants' motion is denied as to (1).

22        As to (2), similarly, defendants may certainly disagree with the inclusion of RSUs,

23  but they have no basis for excluding the opinion entirely.  Trexler relied on a spreadsheet

24  created by plaintiffs, and she reviewed the source documents upon which the

25  spreadsheet was created.  Again, defendants may certainly cross-examine Trexler on the

26  inclusion of RSUs in general, and to criticize their specific valuations, but exclusion is not

27  the proper remedy.   Thus, defendants' motion is denied as to (2).

28        The court now turns to plaintiffs' motion to exclude certain opinions of defendants'

damages expert Gregory Pinsonneault.

As an initial matter, plaintiffs challenge Pinsonneault's report to the extent he offers legal conclusions.  Although plaintiffs' motion is not entirely clear in identifying the extent of Pinsonneault's purported legal opinions, the motion does identify at least one instance in which Pinsonneault offers an opinion about damages and causation.

The court takes this opportunity to make clear that neither party's expert will be permitted to offer legal conclusions, and plaintiffs' motion is granted on that limited basis.

Plaintiffs then challenge Pinsonneault's opinions based on lack of expertise, but the court disagrees, finding that the jury should resolve any disagreement between the experts.  Also, to the extent that plaintiffs challenge Pinsonneault's calculations of defendants' profits, it is unclear whether that testimony still needs to be presented to the jury in light of plaintiffs' withdrawal of their disgorgement claim.  Accordingly, to the extent that plaintiffs seek exclusion of Pinsonneault's non-legal opinions, their motion is denied.

As mentioned above, both parties have also filed a motion to strike as untimely the supplemental expert report of the opposing damages expert.  <u>See</u> Dkt. 488, 491. Although the court recognizes that the disputes are distinguishable, the court will nevertheless allow both supplemental damages reports to be admitted and DENIES both motions to strike.

## III.   <u>VOIR DIRE</u>

As discussed at the pretrial conference, the court will incorporate the parties' jointly-proposed questions into the voir dire which will be conducted primarily by the court.  The parties will each be allotted up to 20 minutes for followup questions but will not be permitted to use their questions to argue the case.

## IV.   <u>JURY INSTRUCTIONS</u>

At the pretrial conference, the court indicated it will accept the parties' jointly submitted jury instructions.

United States District Court
Northern District of California

Regarding the disputed instructions, the court addresses two preliminary issues first.  The court first concludes that there is no need for a separate instruction on willfulness in conjunction with the punitive damages instruction.  While the court agrees with defendants that the statute expressly permits a party to seek punitive damages only for "willful conduct", the court also agrees with plaintiffs that a finding of willfulness was necessarily implied by its summary judgment order.  Specifically, the order found defendants liable under both section (a)(2) and section (a)(4).  Section (a)(2) requires intent (whoever 'intentionally accesses a computer…'), and section (a)(4) requires knowledge and 'intent to defraud.'  Intentional and knowing conduct that was clearly committed without permission and not negligently or by accident is, in the court's view, sufficient to establish that the conduct was willful.  As the Supreme Court has observed, "willful" is a word of many meanings" and "its construction [is] often…influenced by its context."  Ratzlaf v. United States, 510 U.S. 135, 141 (1994).  Moreover, the court finds that defendants' proffered instruction would serve only to increase jury confusion to require a separate finding on 'willfulness' when it is not being asked to decide liability.

Regarding the parties' dispute over compensatory damages and the inclusion of investigatory costs, the court is persuaded by the reasoning of another court in this district in Meta Platforms, Inc. v. BrandTotal, Ltd., in which the court considered and rejected the view that the Van Buren line of cases should be "construed as abrogating a slew of previous district court decisions holding that investigative costs are recoverable under the CFAA" particularly given the way that modern unlawful intrusions are committed.  See 605 F.Supp.3d 1218, 1264 (N.D. Cal. 2022) ("The Court declines to construe Van Buren and hiQ as foreclosing a loss based on Facebook's investigative costs.").

The parties are directed to meet and confer, and to submit revised jointly proposed jury instructions in light of this order and the court's statements at the pretrial conference regarding issues such as nominal damages, by **April 21, 2025**.  A further written order will be issued if needed, and of course, there will be a formal charge conference before

case specific jury instructions are finalized.

## V.    VERDICT FORM

Regarding the verdict form, the parties are directed to meet and confer and to submit a jointly proposed verdict form consistent with this order by **April 21, 2025**.

## VI.    DISCOVERY DESIGNATIONS

Both parties have submitted extensive lists of deposition excerpts and other discovery responses.  Given the rulings contained in this order, and the time limits that will be imposed on the presentation of evidence, the court expects a reduction in the volume of deposition excerpts and other discovery.  The parties are directed to revise their respective lists and to file them by **April 21, 2025**.  The court will require that from these lists each party identify the witnesses to be called the following day so that objections may be considered in advance of the trial day.

## VII.    MOTIONS TO SEAL DOCUMENTS AND TRIAL EVIDENCE

As discussed at the pretrial conference, the court DENIES any request to close the courtroom to the public.  And while it is disinclined to seal any exhibits that are used for trial, the court will address those exhibits as they arise during the course of trial.  And as stated at the pretrial conference, the parties are directed to meet and confer and to submit a filing, no later than **April 21, 2025**, which identifies any provisionally-sealed documents that either party intends to introduce as trial exhibits along with the location of the document in the record.

## VIII.    TRIAL SCHEDULE AND TIME LIMITS

The duration of the trial shall be 5 days commencing on Monday, **April 28, 2025**. The trial schedule will be Monday through Friday, from 8:30 a.m. to 1:30 p.m., with two 15-minute breaks each day, except for the first and last of trial which will run to 4:00 pm.

18

Jury selection will occur on the first day, as will opening statements and as much of the presentation of evidence as possible.  Each side will be allotted 9 hours to present its case, not including closing arguments for which May 5, 2025, is available if needed.

IX.    <u>FINAL COMMENTS</u>

As discussed at the pretrial conference, the parties are directed to submit a brief joint case description, a joint witness list, and a list of all participating attorneys for the court's use during voir dire.  These documents must be filed by **April 24, 2025**.

**IT IS SO ORDERED.**

Dated:  April 15, 2025

_/s/ Phyllis J. Hamilton_
PHYLLIS J. HAMILTON
United States District Judge