JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
 *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS' BRIEF RE EVIDENCE OF EXPORT CONTROLS**<br><br>Judge: Hon. Phyllis J. Hamilton<br><br>Action Filed: 10/29/2019<br>Trial Date: April 28, 2025 |

At trial, Defendants' witnesses Yaron Shohat and Tamir Gazneli will testify to the following facts: (1) the Pegasus installation vectors at issue in this case—Heaven, Eden, and Erised—were export-controlled technologies closely regulated by the Government of Israel between 2018 and 2020; (2) between 2018 and 2020 (as now), the Government of Israel required NSO to receive a license to market or license its technology and required each customer to execute an end-user certificate to the Government of Israel; (3) the Government of Israel reviewed and approved every license Defendants issued for Heaven, Eden, and Erised between 2018 and 2020; and (4) the Government of Israel reviewed and approved the use of the specific WhatsApp vulnerabilities used by Heaven, Eden, and Erised between 2018 and 2020.

No party has moved to exclude this evidence, and this Court issued no order excluding it.[1] The evidence is relevant background on the nature of Defendants' business, which will be helpful to the jury's understanding of the case. The evidence is also relevant in multiple respects to whether Plaintiffs are entitled to punitive damages.

*First*, the evidence is relevant to whether Defendants acted with "malice" or "oppression." As the Court will instruct the jury, "'[m]alice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of [Plaintiffs]." Cal. Civ. Code § 3294(c). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* That the Government of Israel approved the precise installation vectors and vulnerabilities at issue in this case makes it less likely that Defendants acted in "willful" or "conscious disregard" of Plaintiffs' rights, *id.*, because it shows that Defendants sought and received government approval for the conduct at issue in this case.

*Second*, the evidence is also relevant to whether Defendants' conduct was "despicable." As the Court will instruct the jury, "'[d]espicable conduct' is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people." (Dkt. 703-5 at

---

[1] As the Court acknowledged, Defendants' MIL No. 7 did not seek to exclude evidence of Israel's export-control regulation of Defendants' technologies. Plaintiffs' MIL No. 3 sought to exclude only evidence of *NSO's* "purported efforts to screen potential customers and regulate its existing customers' use of its spyware," not Israel's export-control review. (Dkt. 686 at 6-7.)

8.) Reasonable people could conclude that the Government of Israel's approval of the precise installation vectors and WhatsApp vulnerabilities at issue in this case makes Defendants' conduct less "despicable" than if Defendants acted unilaterally without government oversight or approval.

***Third***, the evidence is relevant rebuttal to the assertions Plaintiffs have made and will continue to make about Defendants and Pegasus. At trial, Plaintiffs will repeatedly refer to Pegasus as "spyware" or "malware" in an attempt to create a connection in the jury's mind between Pegasus and the sorts of malicious viruses that private computer hackers use to steal individuals' bank-account or credit-card information. Plaintiffs also intend to portray Defendants as rogue "hackers" who operate in the shadows and will continue to do so unless punished and deterred by punitive damages. The fact that the Government of Israel reviewed and approved the precise installation vectors and WhatsApp vulnerabilities at issue in this case helps to rebut Plaintiffs' narrative about Defendants' conduct being nefarious, to distinguish Pegasus from "spyware" and "malware" in the common understandings of those terms, and to explain to the jury why punitive damages are neither necessary nor justified.

Nothing in the Plaintiffs' Statement (Dkt. 724) renders the proffered evidence inadmissible. The Court did not exclude evidence regarding the specific identities of NSO's government customers, or the use of Pegasus to investigate serious crimes and terrorism, because the evidence improperly placed the "imprimatur" of government legitimacy on Pegasus. It did so because NSO was not able to introduce evidence showing which customer investigated which target; the purpose of any specific investigation; or its own knowledge of any specific investigation. (Dkt. 686 at 2-6.) None of those rationales apply here, where NSO can present competent, first-hand evidence regarding export controls that are directly relevant to the conduct at issue and has repeatedly done so for years in sworn testimony. (*See, e.g.*, Dkt. 45-11, April 2, 2020.)

Dated: April 29, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*