JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
*jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
*acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **DEFENDANTS' MOTION FOR REMITTITUR OR NEW TRIAL** <br><br> Date:   July 17, 2025 <br> Time:   1:30 p.m. <br> Place:  Courtroom 3, Ronald V. Dellums Federal Building & U.S. Courthouse, 1301 Clay Street, Oakland, California <br><br> Action Filed: 10/29/2019 |

1

## <u>TABLE OF CONTENTS</u>

2

NOTICE OF MOTION ............................................................................................................... 1

3

POINTS AND AUTHORITIES.................................................................................................. 1

4

       I.         The punitive damages award is unconstitutionally excessive. ................................ 3

5

       II.       The punitive damages award reflects the jury's reliance on improper factors. ....... 8

6

CONCLUSION ......................................................................................................................... 10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

DEFENDANTS' MOTION FOR                                     Case No. 4:19-cv-07123-PJH
REMITTITUR OR NEW TRIAL

1    **PLEASE TAKE NOTICE** that Defendants NSO Group Technologies Ltd. and Q Cyber

2    Technologies Ltd. (collectively "NSO") hereby requests remittitur or a new trial.  NSO brings this

3    motion under Rule 59 of the Federal Rules of Civil Procedure. The motion is based on the following

4    Points and Authorities; the Declaration Joseph N. Akrotirianakis ("Akro. Decl.") and its exhibits;

5    the pleadings, papers, and records on file in this case; and such oral argument as may be presented.

6    NSO submits that the issues presented by this motion are straightforward, conclusively resolved by

7    binding precedent, and do not require oral argument.  As the Local Rules require that motions such

8    as this be noticed for hearing, however, NSO has noticed this matter for a hearing on July 17, 2025,

9    at 1:30 p.m., before the Honorable Phyllis J. Hamilton, United States District Judge, in the United

10   States Courthouse, 1301 Clay Street, Courtroom 3, Oakland, California.

11       Under Rule 59, the Constitution requires the Court to remit the jury's award of punitive

12   damages or, in the alternative, to order a new trial.[1]  The jury awarded Plaintiffs $167,254,000 in

13   punitive damages—***slightly more than 376 times*** the compensatory damages award of $444,719.

14   That outrageous punitive award exceeds the maximum lawful punitive damages award in this case

15   by many orders of magnitude.  First, the jury's award egregiously violates Due Process limits on

16   the amount of punitive damages awards, under which the jury could not properly award punitive

17   damages greater than four times compensatory damages.  Second, the jury's award is unlawful

18   because it reflects the improper desire to bankrupt NSO out of general hostility toward its business

19   activities other than the limited conduct for which punitive damages could be awarded in this case.

## POINTS AND AUTHORITIES

21       The Court should remit the jury's punitive damages award or, in the alternative, order a new

22   trial on punitive damages.  Rule 59 grants the Court broad discretion to order a new trial or alter or

23   amend a judgment.  Fed. R. Civ. P. 59(a), (e).  A Rule 59 motion is the appropriate means to

24   challenge a punitive damages award.  *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*,

---

[1] NSO of course does not concede that *any* award of damages, whether compensatory or punitive, was appropriate in this case.  NSO maintains its arguments, rejected by the Court on summary judgment, that Plaintiffs lacked sufficient evidence to prove the merits of their claims and that the Court lacks personal jurisdiction over NSO.  NSO also maintains its objections to the Court's evidentiary rulings and jury instructions.  But because the Court has already rejected NSO's arguments on those issues, NSO does not press them in this motion.

1    492 U.S. 257, 279 (1989); *ConsumerDirect, Inc. v. Pentius, LLC*, 2025 WL 819027, at *7 (C.D.

2    Cal. Jan. 9, 2025).  When a punitive damages award is excessive, a court may give the plaintiff a

3    choice between a new trial or a remittitur of punitive damages.  *Fenner v. Dependable Trucking*

4    *Co.*, 716 F.2d 598, 603 (9th Cir. 1983); *see, e.g.*, *ConsumerDirect*, 2025 WL 819027, at *7; *Yates*

5    *v. GunnAllen Fin.*, 2006 WL 1821194, at *3 (N.D. Cal. June 30, 2006).

6          That is what the Court should do here.  NSO is entitled to remittitur or a new trial because

7    the jury's punitive damages award of $167,254,000 is blatantly unlawful.

8          ***First***, the amount of the punitive damages award is unconstitutionally excessive.  The Due

9    Process Clauses of the Fifth and Fourteenth Amendments "prohibit[] the imposition of grossly

10   excessive or arbitrary punishments on a tortfeasor."  *State Farm Mut. Auto Ins. Co. v. Campbell*,

11   538 U.S. 408, 416 (2003) (citing *BMW of N. Am. v. Gore*, 517 U.S. 559, 562 (1996)).  That means

12   "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a

13   significant degree, will satisfy due process."  *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 776 (9th

14   Cir. 2005) (cleaned up) (quoting *State Farm*, 538 U.S. at 425).  Indeed, the Ninth Circuit has

15   "limited punitive damages to a 4 to 1 ratio where there are significant economic damages but

16   behavior is not particularly egregious," as is true here.  *Riley v. Volkswagen Grp. of Am., Inc.*, 51

17   F.4th 896, 902 (9th Cir. 2022) (cleaned up).  Even for "more egregious behavior," punitive damages

18   may not exceed "six to nine times compensatory damages."  *Id*.  Since *State Farm*, the Ninth Circuit

19   has never approved any punitive damages award larger than nine times compensatory damages,

20   and very few awards larger than four times compensatory damages.[2]  Here, the punitive damage

21   award was *376 times* the compensatory damages award.  That award is flagrantly unconstitutional.

22         ***Second***, the punitive damages award clearly reflects the jury's consideration of legally

23   _____

24   [2] *See, e.g.*, *Estate of Hill ex rel. Grube v. NaphCare, Inc.*, 2025 WL 1098549, at *4 (9th Cir. Apr.
     14, 2025); *Hardeman v. Monsanto Co.*, 997 F.3d 941, 976 (9th Cir. 2021); *Mitri v. Walgreen Co.*,
25   660 F. App'x 528, 530 (9th Cir. 2016); *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1036 (9th Cir.
     2020), *rev'd on other grounds*, 594 U.S. 413 (2021); *King v. Geico Indem. Co.*, 712 F. App'x 649,
26   650-51 (9th Cir. 2017); *S. Union Co. v. Irvin*, 563 F.3d 788, 791-92 (9th Cir. 2009); *Leavey v.*
     *Unum Provident Corp.*, 295 F. App'x 255, 259 (9th Cir. 2008); *Planned Parenthood of*
27   *Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005).  The
     Ninth Circuit has authorized larger multipliers in nominal damages cases, *Arizona v. ASARCO LLC*,
28   773 F.3d 1050 (9th Cir. 2014) (en banc), but Plaintiffs did not receive nominal damages here.

DEFENDANTS' MOTION                                                    Case No. 4:19-cv-07123-PJH
FOR REMITTITUR OR NEW TRIAL

1    improper factors.  The only plausible explanation for the amount of the award is that the jury was

2    attempting to bankrupt NSO.  That is an improper purpose for a punitive damages award, and it

3    resulted in an award that grossly exceeds NSO's ability to pay.  The award also plainly reflects an

4    improper desire to punish NSO for alleged conduct toward third parties not before the Court,

5    specifically the WhatsApp users on whom Plaintiffs accused *NSO* of spying throughout Plaintiffs'

6    opening and closing statements.  That too is an unlawful basis for a punitive damages award.

7            For all these reasons, the Court should remit the punitive damages award to $444,719 (or,

8    at most, to four times compensatory damages) or order a new trial.

9    **I.      The punitive damages award is unconstitutionally excessive.**

10           Under Supreme Court and Ninth Circuit precedent on punitive damages, "this case is neither

11   close nor difficult."  *State Farm*, 538 U.S. at 418.  Although courts reviewing compensatory

12   damages awards usually weigh "three guideposts" for excessiveness, *State Farm*, 538 U.S. at 418,

13   no such balancing is required here.  An award of *376 times* compensatory damages far exceeds any

14   award that any court has ever upheld under the Due Process Clause after *State Farm*.  Nothing more

15   is required for the Court to grant this motion.

16           Nonetheless, a consideration of the three *State Farm* guideposts only strengthens that

17   conclusion.  Those guideposts are: "(1) the degree of reprehensibility of the defendant's misconduct;

18   (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive

19   damages award; and (3) the difference between the punitive damages awarded by the jury and the

20   civil penalties authorized or imposed in comparable cases."  *State Farm*, 538 U.S. at 418; *see Bains*,

21   405 F.3d at 775.  Here, applying those factors under the Supreme Court's and Ninth Circuit's

22   binding precedent compels a conclusion that punitive damages greater than, at the most, four times

23   the compensatory damages determined by the jury cannot constitutionally be assessed against NSO.

24   The Ninth Circuit has "limited punitive damages to a 4 to 1 ratio where there are significant

25   economic damages by behavior is not particularly egregious," which is the case here.[3]  *Riley*, 51

26   
_____

27   [3] Even for "more egregious behavior," punitive damages should "rang[e] from six to nine times
     compensatory damages."  *Riley*, 51 F.4th at 902; *accord Zhang v. Am. Gem Seafoods, Inc.*, 339
     F.3d 1020, 1044 (9th Cir. 2003).  In no event, therefore, could punitive damages in this case exceed

28   nine times compensatory damages.

DEFENDANTS' MOTION                                              Case No. 4:19-cv-07123-PJH
FOR REMITTITUR OR NEW TRIAL

1    F.4th at 902 (cleaned up); *accord Grube*, 2025 WL 1098549, at *4; *Mitri*, 660 F. App'x at 530;

2    *Planned Parenthood*, 422 F.3d at 962.

3    **_Reprehensibility_.**  The conduct for which NSO was held liable under the CDAFA was not

4    reprehensible.  To assess reprehensibility, courts "consider[] whether: [1] the harm caused was

5    physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless

6    disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability;

7    [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the

8    result of intentional malice, trickery, or deceit, or mere accident."  *State Farm*, 538 U.S. at 419.

9    Even "[t]he existence of any one of these factors weighing in favor of a plaintiff may not be

10    sufficient to sustain a punitive damages award."  *Id.*

11    These "reprehensibility" factors favor NSO.  The conduct for which NSO was held liable

12    under the CDAFA was the use of WhatsApp servers in California to transmit code for the Pegasus

13    installation vector to, and receive limited metadata from, target devices between in April-May 2019.

14    Plaintiffs have admitted that this conduct did not damage or affect their servers or system in any

15    way.  No WhatsApp information was taken or obtained from the servers, and no information was

16    left on the servers.[4]  Plaintiffs claimed only economic harm in the form of investigation and

17    remediation costs, not any physical or other noneconomic harm.  This Court has held that "the

18    health or safety of others" is not at issue in this case, so NSO cannot be punished for allegedly

19    disregarding third parties' health or safety.  (*E.g.*, Akro Decl. Exh. A [Trial Day 5 Tr.] at 1115-

20    1129.)  And Plaintiffs—Meta and WhatsApp—are obviously not financially vulnerable.

21    Therefore, the only factors that arguably apply are that Pegasus code traversed WhatsApp

22    servers on more than one occasion and that the jury found that NSO acted with malice, oppression,

23    or fraud. (Dkt. 736.) But only one version of Pegasus (Eden) used California-based servers, so NSO's

24

[4] In rebuttal argument, WhatsApp argued that the jury should reject NSO's arguments about harm to WhatsApp servers because NSO "trespassed on to WhatsApp servers and took information.  It says that in the jury instructions." (Akro Decl. Exh. B [Trial Day 6 Tr.] at 1136.)  Every part of that assertion is improper.  The Court rejected WhatsApp's "trespass" theory even before its current counsel appeared in the case. (Dkt. 111 at 40-44.)  None of WhatsApp's information was taken from WhatsApp's servers, full stop. (*See* Dkt. 419-2 at 16.)  And the jury instructions of course, say neither of those things. (*See* Dkt. 737 at 15-18.)

4

1  creation of that version did not involve repeated conduct.  (Akro Decl. Exh. A [Trial Day 5 Tr.] at

2  982-83.)  And malice, oppression, or fraud must be found for *any* punitive damages award, so that

3  alone is not enough to show "egregious" reprehensibility.

4         At a minimum, NSO's conduct does not reflect the *degree* of extreme malice or fraud that

5  could support a substantial punitive damages award.  In *Gore* itself, the Supreme Court held that the

6  defendant's longtime concealment of damage to its cars, though fraudulent, was not "sufficiently

7  reprehensible to warrant imposition of a $2 million exemplary damages award."  *Gore*, 517 U.S. at

8  579-80.  The Court emphasized that the plaintiff's harm was "purely economic in nature," the

9  defendant's "conduct evinced no indifference to or reckless disregard for the health and safety of

10  others," and "the omission of a material fact may be less reprehensible than a deliberate false

11  statement, particularly when there is a good-faith basis for believing that no duty to disclose exists."

12  *Gore*, 517 U.S. at 576, 580.  Here too, Plaintiffs did not introduce any evidence that NSO ever made

13  a deliberate false statement to them, relying instead on NSO's alleged "concealment" of its conduct.

14  (*E.g.*, Akro Decl. Exh. B [Trial Day 6 Tr.] at 1242-43; Dkt. 494 at 12.)  But Plaintiffs have never

15  argued or established that NSO owed them a duty to disclose, and NSO had no such duty.  (*See* Dkt.

16  732-5 at 4; Dkt. 732-3 at 3-5.)  As in *Gore*, therefore, NSO's conduct was not "sufficiently egregious

17  to justify a punitive sanction that is tantamount to a severe criminal penalty."  *Gore*, 517 U.S. at 585.

18         The Ninth Circuit's precedent compels the same conclusion.  For example, the Ninth Circuit

19  limited punitive damages to 3.8 times compensatory damages in *Hardeman*, even though "four of the

20  five factors support[ed] that [the defendant's] actions were reprehensible," including that the

21  defendant caused "serious physical harm" through "repeated actions" that exhibited malice and

22  "indifference to or a reckless disregard of the health or safety of others."  997 F.3d at 973-76 (cleaned

23  up).  The Ninth Circuit likewise limited punitive damages to four times compensatory damages in

24  *Ramirez*, where the defendant engaged in "repeated and willful" misconduct "for more than a decade"

25  against a class of "financially vulnerable" individuals but "there was no physical harm" or "an

26  indifference to health or safety."  951 F.3d at 1036-37.  In *Irvin* the Ninth Circuit limited punitive

27  damages to a 3-to-1 ratio when the defendant caused $400,000 in economic harm to "a very large

28  company" and did not "inflict[] egregious physical or economic harm upon the weak."  563 F.3d at

DEFENDANTS' MOTION                                      Case No. 4:19-cv-07123-PJH
FOR REMITTITUR OR NEW TRIAL

791-92.  And in *Grube* the Ninth Circuit held the "ratio of punitive to compensatory damages" could not "exceed four to one" even though the defendant caused the plaintiff's *death* through "reckless disregard of [his] safety."  2025 WL 1098549, at *4; *see also Mitri*, 660 F. App'x at 530 (limiting punitive damages to a 4-to-1 ratio when the defendant "placed [the plaintiff] in a financially vulnerable position" by firing him in retaliation for reporting Medicare fraud); *King*, 712 F. App'x at 649 (reducing punitive damages to four times compensatory damages where jury found defendant "act[ed] in bad faith" but plaintiff "suffered only economic and emotional harm").[5]

In the few cases where the Ninth Circuit has approved awards at a greater ratio than 4-to-1, it has found reprehensible conduct of an entirely different magnitude than NSO's conduct.  In *Zhang* and *Bains*, the defendants engaged in repeated acts of racial discrimination, which "is a different kind of harm, a serious affront to personal liberty" that "often results in large punitive damage awards."  *Zhang*, 339 F.3d at 1043; *see Bains*, 405 F.3d at 775-77 (finding "intentional, repeated ethnic harassment" to be "highly reprehensible").  And even in those cases, the Ninth Circuit limited to punitive damages to six to nine times compensatory damages.  *Zhang*, 339 F.3d at 1044 (seven times); *Bains*, 405 F.3d at 777 (six to nine times).  The Ninth Circuit also approved a 9-to-1 ratio in *Planned Parenthood*, where the defendants made "true threats" of violence against doctors, conduct the court held was "close[] to treading on personal liberty, which we [have] found seriously reprehensible in discrimination cases."  422 F.3d at 959.

NSO engaged in no remotely similar conduct.  The undisputed evidence—which this Court excluded from the jury's consideration—is that NSO licenses its technology exclusively for use in government investigations lawful under the laws of those governments' countries.  That the technology temporarily functioned by sending harmless messages through WhatsApp servers is hardly reprehensible.  Even under the evidence this Court permitted the jury to hear, there is no precedent for a ratio higher than 4-to-1.  As far as NSO is aware, the Ninth Circuit has never

_____

[5] District courts within the Ninth Circuit agree.  *E.g.*, *McCray v. Westrock Servs., LLC*, 2024 WL 4579108, at *11 (C.D. Cal. Sept. 10, 2024) (reducing punitive damages to 1.2 times compensatory damages); *Yates*, 2006 WL 1821194, at *3 (three times compensatory damages); *Leavey v. UNUM/Provident Corp.*, 2006 WL 1515999, at *17 (D. Ariz. May 26, 2006) (1.5 times compensatory damages).

1  approved a ratio higher than 4-to-1 in any non-discrimination case where, as here, the defendant

2  caused purely economic damages to a corporate entity.

3       ***Ratio of Punitive to Compensatory Damages.***  As the above discussion shows, the absurd

4  376-to-1 ratio of punitive to compensatory damages in this case is many times greater than ratios

5  the Supreme Court and Ninth Circuit have held to be unconstitutional.   The Ninth Circuit has

6  "limited punitive damages to a ***4 to 1*** ratio where there are significant economic damages by

7  behavior is not particularly egregious," which is the case here.  *Riley*, 51 F.4th at 902 (cleaned up

8  and emphasis added) (citing *Planned Parenthood*, 422 F.3d at 962).[6]  "A ratio higher than 4 to 1

9  may be upheld where a particularly egregious act has resulted in only a small amount of economic

10  damages," but "when compensatory damages are substantial, a ratio lower than 4 to 1 may be the

11  limit."  *Ramirez*, 951 F.3d at 1037 (cleaned up).  Indeed, "[w]hen compensatory damages are

12  substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the

13  outermost limit of the due process guarantee." *State Farm*, 538 U.S. at 425.

14       Here, Plaintiffs' compensatory damages of $444,719 are substantial.  The Ninth Circuit has

15  described far smaller compensatory awards as "substantial."  *See Mitri*, 660 F. App'x at 530-31

16  ($88,000); *Bains*, 405 F.3d at 776 ($50,000); *Planned Parenthood*, 422 F.3d at 963-64 (roughly

17  $15,000).  Accordingly, this clearly is not a case in which "a small amount of economic damages"

18  could support a ratio greater than 4-to-1.  *Bains*, 405 F.3d at 776 (cleaned up).[7]  Rather, it is a case

19  where a 4-to-1 ratio represents the outer limit of constitutionality.   *Riley*, 51 F.4th at 902;

20  *Hardeman*, 997 F.3d at 976.

21       ***Civil Penalties.***  Although this guidepost is less important than the other two, the "civil

22  penalties authorized or imposed in comparable cases," *State Farm*, 538 U.S. at 418, further show

23  that the punitive damages award here is unconstitutionally excessive.  Plaintiffs received punitive

24  damages only under CDAFA, and the maximum fine under CDAFA is $10,000.  Cal. Penal Code

25  ─────────────

26  [6] *See State Farm*, 538 U.S. at 425 (recognizing that the typical ceiling for punitive damages is four times compensatory damages); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 497-98 (2008) ("[B]y most accounts the median ratio of punitive to compensatory awards has remained less than 1:1.").

27  [7] Even in *Riley*, where the defendant's "reprehensibility was especially high" and the plaintiffs received "relatively low" compensatory damages ranging from $582 to $3,111, the Ninth Circuit

28  held that punitive damages could not exceed an 8-to-1 ratio.  51 F.4th at 900 n.2, 902-03.

DEFENDANTS' MOTION                                    Case No. 4:19-cv-07123-PJH
FOR REMITTITUR OR NEW TRIAL

1    § 502(d). The Supreme Court and the Ninth Circuit have held that a $10,000 penalty cannot support

2    punitive damages award significantly smaller than the award here. *E.g.*, *State Farm*, 538 U.S. at

3    428 ($10,000 penalty could not support $145 million punitive damages); *Gore*, 517 U.S. at 584

4    ($10,000 maximum fine could not support $2 million punitive damages); *Mitri*, 660 F. App'x at

5    531 ($10,000 maximum penalty could not support $1.155 million punitive damages).

6                                          *   *   *

7         For the above reasons, NSO submits that any punitive damages in this case should not

8    exceed Plaintiffs' $444,719 compensatory damages award. But if punitive damages were to exceed

9    compensatory damages, this case falls squarely within the category of cases in which the Supreme

10   Court and this Court have held that a 4-to-1 ratio represents the outer constitutional limit. A 4-to-

11   1 ratio would produce a punitive damages award of roughly $1.77 million, and for the reasons given

12   above, any award here should fall well below that amount. The jury's award of $167,254,000—a

13   *376-to-1* ratio—plainly cannot survive constitutional scrutiny.

14   **II.     The punitive damages award reflects the jury's reliance on improper factors.**

15        In addition to grossly violating due process limits on the amount of punitive damages, the

16   jury's $167,254,000 award can only be explained by the jury's consideration of factors that cannot

17   support punitive damages as a matter of law.

18        ***First***, the most plausible explanation for the oddly specific amount of the punitive damages

19   award is that the jury chose that amount in an attempt to bankrupt NSO. Even applying Plaintiffs'

20   interpretation of NSO's balance sheet, the jury's award comes close to wiping out all of NSO's

21   current "assets." (*See* Exh. A-1779.) That is unlawful. A jury may not award more punitive

22   damages than a defendant is able to pay, and it may not award punitive damages in an attempt to

23   "financially destroy[]" the defendant. *Adams v. Murakami*, 54 Cal. 3d 105, 112 (1991); *see* CACI

24   No. 3947. Accordingly, under California law, "punitive damages awards generally are not

25   permitted to exceed 10 percent of the defendant's net worth." *Weeks v. Baker & McKenzie*, 63 Cal.

26   App. 4th 1128, 1166 (1998). Because the punitive damages award far exceeds that cutoff, exceeds

27   NSO's ability to pay—even under Plaintiffs' (erroneous) reading of the evidence—and reflects an

28

8

DEFENDANTS' MOTION                                              Case No. 4:19-cv-07123-PJH
FOR REMITTITUR OR NEW TRIAL

1    improper desire to bankrupt NSO, the award should be set aside as excessive.[8]

2    ***Second***, the punitive damages award reflects an improper desire to punish NSO for conduct

3    other than the conduct that was held unlawful in this case.  This Court held before trial—at

4    Plaintiffs' urging—that the only relevant conduct was NSO's use of WhatsApp servers, not the

5    downstream use of Pegasus on target user devices.  At trial, however, Plaintiffs built their case

6    around a drumbeat of accusations about NSO "spying" on WhatsApp users, including by describing

7    in detail the information Pegasus allows governments to collect from investigatory targets'

8    phones—none of which had anything to do with Plaintiffs' claims.  (*E.g.*, Akro Decl. Exh. B [Trial

9    Day 6 Tr.] at 1240-42; Akro Decl. Exh. C [Trial Day 2 Tr.] at 283-85.)  Even though "spying" was

10   not the conduct for which Plaintiffs could seek punitive damages—the only conduct for which

11   punitive damages could be awarded was NSO's access to WhatsApp servers in California—

12   Plaintiffs repeatedly and expressly asked the jury to punish NSO for "spying" on WhatsApp users.

13   (Akro Decl. Exh. B [Trial Day 6 Tr.] at 1245-48, 1267-72, 1282-84, 1333, 1335, 1338-40.)  Indeed,

14   the *very last thing* Plaintiffs told the jury was that the jury should "award a punitive damages

15   number that sends a message that spying is not okay."  (*Id.* at 1340.)  Particularly given the

16   astonishing disparity between Plaintiffs' claimed damages and the punitive damages award, there

17   can be little doubt that the award reflects the jury's disapproval of NSO's technology as a whole,

18   without regard to its effect on Plaintiffs.

19       That too was unlawful.  The Due Process Clause forbids a jury from awarding punitive

20   damages based even "in part upon its desire to punish the defendant for harming persons who are

21

22   [8] The jury appears to have been influenced by Plaintiffs' improper presentation of undisclosed
     expert testimony from their expert Dana Trexler, whose attempts to impugn the honesty of NSO's
23   CEO Yaron Shohat regarding NSO's ability to pay were among the last pieces of testimony the
     jury heard.  With due respect, the Court should not have permitted Ms. Trexler to testify as to
24   opinions she never previously disclosed as required by Rule 26, even though Plaintiffs received
     NSO's financial information a month before trial.  Doing so deprived NSO of any ability to
25   anticipate or prepare for Ms. Trexler's testimony.  The Court exacerbated this issue by preventing
     NSO's expert from testifying about NSO's explanation of the financial statements that Ms. Trexler
26   challenged in her testimony on the grounds that it was inadmissible hearsay (even though Rule 703
     permits experts to rely on hearsay, and Ms. Trexler's entire opinion about compensatory damages
27   was based purely on hearsay—her out-of-court interviews with Claudiu Gheorghe and ten other
     employees of Plaintiffs).  (Akro Decl. Exh. B [Trial Day 6 Tr.] at 1222-24.)
28
                                                    9

1    not before the court." *Philip Morris USA v. Williams*, 549 U.S. 346, 349 (2007).  As this Court has

2    recognized, the WhatsApp users whom governments may have monitored using Pegasus were not

3    before the Court and are irrelevant to Plaintiffs' claimed injuries.  Plaintiffs thus could not seek or

4    receive punitive damages based on any harm those users allegedly suffered as a result of Pegasus.

5    Yet that is exactly what Plaintiffs sought, and what the jury did.  That violated due process because

6    "a defendant threatened with punishment for injury a nonparty victim has no opportunity to defend

7    against the charge." *Philip Morris*, 549 U.S. at 353.  Here, in particular, the Court prohibited NSO

8    from offering the evidence it would have introduced to rebut Plaintiffs' "spying" accusations,

9    including evidence that the WhatsApp users against whom Pegasus has been deployed are

10   overwhelmingly terrorists, drug traffickers, sex traffickers, pedophiles, and other criminals who

11   Plaintiffs are very well aware use WhatsApp to commit unspeakable crimes and who are, therefore,

12   lawful targets of government monitoring.  (Dkt 686 at 1-7.)[9]  For this reason as well, the punitive

13   damages award should be set aside.

### Conclusion

15        The Court should remit the jury's award of punitive damages or, if Plaintiffs refuse the

16   remittitur, order a new trial.

17

18    Dated: May 29, 2025                              KING & SPALDING LLP

19                                                     By: *Joseph N. Akrotirianakis*
                                                        JOSEPH N. AKROTIRIANAKIS
20                                                      AARON S. CRAIG
                                                        *Attorneys for Defendants*
21                                                      NSO GROUP TECHS. LTD. and
                                                        Q CYBER TECHS. LTD.
22

23

24   _____
     [9] This Court has acknowledged that this so-called "spying" (which is no more "spying" than the
25   use of a wiretap) may well be legal in the countries in which it occurs—and indeed it is.  (Akro
     Decl. Exh. A [Trial Day 5 Tr.] at 1154.)  The only conduct this Court held unlawful under CDAFA
26   was the use of WhatsApp servers in California, not governments' monitoring of user devices.
     (Moreover, there is no evidence that any California WhatsApp server was ever used to install
27   Pegasus *successfully*, and so no evidence that any California server was ever used in connection
     with "spying.")  It was entirely improper for Plaintiffs to ask the jury to punish NSO for alleged
28   "spying" that neither this Court nor any other has held to be unlawful.

DEFENDANTS' MOTION                                              Case No. 4:19-cv-07123-PJH
FOR REMITTITUR OR NEW TRIAL