<pre>
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                         OAKLAND DIVISION

 4

 5    WHATSAPP LLC AND META          )   C-19-07123 PJH
      PLATFORMS, INC.,               )
 6                                   )   OAKLAND, CALIFORNIA
                     PLAINTIFFS,     )
 7                                   )   MAY 6, 2025
                VS.                  )
 8                                   )   VOLUME 7
      NSO GROUP TECHNOLOGIES LIMITED )
 9    AND Q CYBER TECHNOLOGIES       )   PAGES 1370-1401
      LIMITED,                       )
10                                   )
                     DEFENDANTS.     )
11    _____)

12

13                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE PHYLLIS J. HAMILTON
14                  UNITED STATES DISTRICT JUDGE

15

16    A P P E A R A N C E S:

17    FOR THE PLAINTIFFS:    DAVIS POLK & WARDWELL
                             BY:  GREG D. ANDRES
18                                ANTONIO J. PEREZ
                             450 LEXINGTON AVENUE
19                           NEW YORK, NEW YORK  10017

20                           BY:  MICAH G. BLOCK
                             900 MIDDLEFIELD ROAD, SUITE 200
21                           REDWOOD CITY, CALIFORNIA  94063

22    OFFICIAL COURT REPORTERS:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                   CERTIFICATE NUMBER 9595
23                                 IRENE RODRIGUEZ, CSR, RMR, CRR
                                   CERTIFICATE NUMBER 8074
24
               PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25                  TRANSCRIPT PRODUCED WITH COMPUTER
</pre>

APPEARANCES (CONTINUED)


FOR THE DEFENDANTS:    KING & SPALDING
                       BY:  JOSEPH N. AKROTIRIANAKIS
                            AARON S. CRAIG
                       633 WEST FIFTH STREET, SUITE 1600
                       LOS ANGELES, CALIFORNIA  90071

                       BY:  MATTHEW V. NOLLER
                       50 CALIFORNIA STREET, SUITE 3300
                       SAN FRANCISCO, CALIFORNIA  94111

```
1    OAKLAND, CALIFORNIA                          MAY 6, 2025

2                     P R O C E E D I N G S

3         (COURT CONVENED AT 10:34 A.M.)

4         (JURY OUT AT 10:34 A.M.)

5              THE CLERK:  THANK YOU.  PLEASE BE SEATED.

6              MR. ANDRES:  GOOD MORNING, YOUR HONOR.

7              THE COURT:  GOOD MORNING.

8              THE CLERK:  CALLING CIVIL CASE 19-7123-PJH, WHATSAPP,

9    INC., ET AL VERSUS NSO GROUP, ET AL.

10         COUNSEL, STEP FORWARD AND STATE YOUR APPEARANCES.

11             MR. ANDRES:  GREG ANDRES, TONY PEREZ FOR META AND

12   WHATSAPP, AND OUR CLIENT, CARL WOOG.

13             MR. AKROTIRIANAKIS:  GOOD MORNING, YOUR HONOR.

14         JOE AKROTIRIANAKIS, AARON CRAIG, AND MATT NOLLER ON BEHALF

15   OF DEFENDANTS.

16             THE COURT:  ALL RIGHT.  GOOD MORNING.

17         THE NOTE FROM THE JURY, HAVE YOU SEEN IT?

18             MR. ANDRES:  YES.

19             THE COURT:  OKAY.  A COUPLE THINGS.

20         ONE IS, I ALREADY GAVE THE INSTRUCTION THAT THEY WOULD NOT

21   HAVE A TRANSCRIPT AVAILABLE, SO I CAN SIMPLY DENY THE REQUEST.

22         THE OTHER OPTIONS ARE, MOST OF THE AUTHORITY IN THIS REALM

23   HAS TO DEAL WITH CRIMINAL CASES, OBVIOUSLY, AND HARDLY ANY

24   CASES HAVE DAILY TRANSCRIPTS PREPARED.  SO WE DON'T HAVE A LOT

25   OF AUTHORITY WITH REGARD TO TRANSCRIPTS.
```

1      WHAT WE HAVE IS A LOT OF AUTHORITY WITH REGARD TO READ

2   BACKS.  THE -- ONE OF THE BENCH HANDBOOKS, DESK BOOKS THAT WE

3   USE DOES CITE SOME NINTH CIRCUIT AUTHORITY THAT A TRANSCRIPT

4   SHOULD NEVER BE SUBMITTED INTO THE JURY ROOM, MUCH LESS THEY

5   HAVEN'T DESIGNATED WHICH PARTICULAR WITNESS, SO WE WOULDN'T

6   SEND ALL THE TRIAL TRANSCRIPTS BACK INTO THE JURY ROOM.

7      MOREOVER, AT LEAST IN MY EXPERIENCE WHEN WE'VE HAD

8   REQUESTS FOR READ BACKS, WE'VE -- I'VE ALWAYS REQUIRED -- I

9   JUST LEARNED IN BABY JUDGE SCHOOL, THE WHOLE PROHIBITION IS

10  AGAINST THE UNDUE EMPHASIS ON ONE ASPECT OF TESTIMONY OVER

11  ANOTHER ASPECT OF TESTIMONY, AND WHEN I'VE HAD READ BACKS, I'VE

12  REQUIRED THE COURT REPORTER TO READ THE ENTIRETY OF A

13  PARTICULAR WITNESS'S TESTIMONY, DIRECT AND CROSS, SO AS TO

14  AVOID THE EMPHASIS ON ONE ASPECT OVER THE OTHER.

15     GRANTED, MOST OF THE AUTHORITY, AND ALL OF MY EXPERIENCE

16  IN THIS REGARD, IS IN CRIMINAL CASES.

17     CIVIL CASES, THERE'S, I THINK, A LOT MORE LEEWAY, AND I

18  WOULD BE OF THE OPINION THAT IF YOU TWO -- IF BOTH SIDES

19  AGREED, I'D DO WHATEVER YOU WANTED TO DO IF BOTH SIDES WANTED

20  ME TO DO THE SAME THING.

21     SO I PUT THAT OUT THERE.

22      MR. AKROTIRIANAKIS:  YES, YOUR HONOR.

23     I WILL SAY, I'M SURE MR. ANDRES'S EXPERIENCE IS PROBABLY

24  THE SAME, ALL OF MY EXPERIENCE WAS WHEN I WAS AN ASSISTANT,

25  YOUR HONOR, WITH THIS ISSUE, AND IT IS AS THE COURT SAID.

1              THIS QUESTION IS KIND OF A YES OR NO QUESTION.

2              AND THE OTHER THING I WILL MENTION IS WE DON'T ACTUALLY

3       KNOW IF THEY WANT THE TRANSCRIPT, FOR EXAMPLE, OF A WITNESS'S

4       TESTIMONY.  FOR EXAMPLE, IF THEY SAID, CAN WE HAVE A TRANSCRIPT

5       OF THE CLOSING ARGUMENT OR THE OPENING STATEMENT OR WHATEVER,

6       THAT WOULD BE, OF COURSE -- THAT'S NOT EVIDENCE, RIGHT?

7              SO THEN IN THAT CIRCUMSTANCE, I WOULD SAY SURELY THE

8       ANSWER SHOULD BE NO.

9              MY THINKING IS THAT A POLITE WAY TO RESPOND TO THE JURY

10      MIGHT BE TO JUST SAY, AS YOU WERE INSTRUCTED AT THE OUTSET OF

11      THE MATTER, AND THEN INCLUDE THE TEXT OF THAT INSTRUCTION.

12             BUT I'M HAPPY TO SPEAK WITH MR. ANDRES AND --

13               MR. ANDRES:  YOUR HONOR, YOU CLEARLY GAVE THAT

14       INSTRUCTION, SO THAT'S IN THE RECORD.

15             I WOULDN'T BE OPPOSED TO YOUR HONOR SAYING, IF YOU'RE

16      INTERESTED IN THE TESTIMONY OF A PARTICULAR WITNESS, WE COULD

17      HAVE THAT TESTIMONY READ BACK, BUT WE WOULD READ BACK THE

18      ENTIRETY OF THE TESTIMONY.

19             THAT'S FINE WITH ME AS WELL.

20               THE COURT:  UM-HUM.  I'VE DONE THAT AS WELL.

21               MR. AKROTIRIANAKIS:  YEAH, THE ENTIRETY OF THE

22       TESTIMONY OF THAT WITNESS, YEAH.

23               THE COURT:  AND THEY TYPICALLY DECLINE AT THAT POINT

24       BECAUSE THAT'S NOT WHAT THEY REALLY WANT.

25               MR. AKROTIRIANAKIS:  YEAH.  I MEAN, I GUESS MY

1      CONCERN IS SORT OF DOING ANYTHING THAT COERCES IN ONE DIRECTION

2      OR ANOTHER, LIKE THAT QUESTION MIGHT, AS YOU JUST MENTIONED,

3      YOUR HONOR.

4           SO MY PREFERENCE, I THINK, WOULD BE JUST TO, YOU KNOW,

5      POLITELY DIRECT THEM TO THE OPENING INSTRUCTION.

6           BUT, AGAIN, I'M HAPPY TO TALK.

7                MR. ANDRES:  I MEAN, WE COULD DO -- SORRY.

8                THE COURT:  SHOULDN'T WE FIND OUT --

9                MR. ANDRES:  WE COULD DO BOTH.

10               THE COURT:  SHOULDN'T WE FIND OUT FIRST -- I WOULD

11     PROPOSE A TWO-STEP PROCESS.

12          FIRST, FIND OUT IF THERE'S A PARTICULAR ASPECT OF A

13     TRANSCRIPT THAT THEY'RE INTERESTED IN, AND THEN WE COULD

14     DETERMINE WHETHER OR NOT WE WISH TO DO IT.

15          I MEAN, FOR INSTANCE, THEY COULD BE ASKING FOR A PART OF

16     THE TRANSCRIPT THAT'S ONE OF THE VIDEOS AND WE DON'T HAVE THEM.

17     THEY AREN'T TRANSCRIBED, RIGHT?

18               MR. AKROTIRIANAKIS:  YES.

19               THE COURT:  AND THE QUESTION WOULD BE THE PLAYBACK OF

20     THE EVIDENCE, WHICH IS A DIFFERENT QUESTION.  IT WOULD HAVE TO

21     BE DONE IN OPEN COURT, ET CETERA, ET CETERA, AND THERE'S NO

22     TRANSCRIPT.

23          SO MAYBE WE GET THE DETAIL FIRST OF WHAT THEY'RE LOOKING

24     FOR AND THEN WE DETERMINE IF WE CAN DO IT.

25               MR. ANDRES:  THAT WORKS FOR ME, YOUR HONOR.

```
1        THERE'S -- SORRY.

2              MR. AKROTIRIANAKIS:  I WAS GOING TO SAY, THAT'S FINE,

3        YOUR HONOR.

4              MR. ANDRES:  THOSE TRANSCRIPTS ARE TRANSCRIBED

5        BECAUSE THEY'RE DEPOSITIONS, SO WE HAVE THE SIGNED

6        CERTIFICATION OF THOSE DEPOSITIONS.

7              THE COURT:  OH, YEAH, BUT --

8              MR. ANDRES:  WE HAVE TRANSCRIPTS OF THOSE.

9              THE COURT:  WE HAVE OBJECTIONS THAT HAVE BEEN RULED

10       ON.

11             MR. ANDRES:  I'M SAYING THAT -- I'M SORRY.  WHAT I

12       WAS SAYING IS THAT THE VIDEOS THAT WERE PLAYED, YOU MAY

13       REMEMBER THERE WAS A -- THERE WAS THE TRANSCRIPT ON THERE.

14             THE COURT:  UM-HUM.

15             MR. ANDRES:  AND WE HAVE THAT.  SO ALL OF THOSE

16       OBJECTIONS HAVE BEEN TAKEN OUT, EVERYTHING THAT'S ON THAT VIDEO

17       HAS BEEN AGREED UPON BY THE PARTIES.

18             THE COURT:  OKAY.

19             MR. ANDRES:  SO WE COULD DO THAT, TOO, IF THEY WANT

20       IT.

21          BUT THAT'S FINE, YOUR HONOR, WE AGREE WITH THAT APPROACH

22       TO ASK WHAT THEY WANT.

23             THE COURT:  OKAY.  NOW, IN TERMS OF THE PROCEDURE FOR

24       DOING THAT, I'VE DONE IT BOTH WAYS, BRING THEM ALL OUT, ASK

25       THEM THE QUESTION, SEND THEM BACK, THEY TALK, BRING THEM OUT
```

```
1        AGAIN.  THAT'S ONE WAY.

2             OR I COULD SIMPLY WRITE ON THIS, PLEASE TELL US WHAT IT IS

3        YOU'RE LOOKING FOR BEFORE WE MAKE A DECISION.

4             OR, THREE, I CAN ASK KELLY TO GO BACK THERE AND ASK THEM,

5        WHICH PORTION OF THE TRANSCRIPT DO YOU WANT?

6             OF THOSE THREE, WHAT DO YOU WANT?

7                  MR. AKROTIRIANAKIS:  I PREFER TWO.

8                  THE COURT:  TWO, FOR ME TO WRITE IN THE QUESTION AND

9        THEN HAVE THEM RESPOND.

10                  MR. ANDRES:  THAT WORKS FOR ME, YOUR HONOR.

11                  THE COURT:  OKAY.  THAT'S WHAT WE'LL DO.

12             AND I'LL ASK, WHAT ASPECT OF THE TRIAL OR WHICH WITNESS

13        DID YOU WISH TO HAVE THE TRANSCRIPT FOR?

14                  MR. AKROTIRIANAKIS:  MAYBE JUST WHAT --

15                  MR. ANDRES:  PORTION.

16                  MR. AKROTIRIANAKIS:  -- PORTION OF THE TRANSCRIPT.

17                  THE COURT:  WHAT PORTION OF THE TRANSCRIPT ARE YOU

18        INTERESTED IN?

19                  MR. ANDRES:  CORRECT.

20                  MR. AKROTIRIANAKIS:  VERY GOOD.

21                  THE COURT:  HOW'S THAT?

22                  MR. AKROTIRIANAKIS:  VERY GOOD.

23                  MR. ANDRES:  PERFECT, YOUR HONOR.

24             (PAUSE IN PROCEEDINGS.)

25                  THE COURT:  OKAY.  KELLY.
```

1      MR. AKROTIRIANAKIS:  YOUR HONOR, PERHAPS -- BECAUSE

2   THAT DIRECTIVE SORT OF IMPLIES THAT IT WOULD BE AVAILABLE TO

3   THEM, MAYBE SOMETHING -- ONE MORE SENTENCE, LIKE, THAT

4   INFORMATION IS NECESSARY FOR THE COURT TO CONSIDER THIS, OR

5   WHATEVER YOU WOULD LIKE, YOUR HONOR.

6      BECAUSE THE ANSWER MIGHT COME BACK, WE WANT THIS PART OF

7   THE TRANSCRIPT, AND THEN THE NEXT ONE IS, LIKE, WELL, NO, YOU

8   CAN'T HAVE THAT.

9      THE COURT:  RIGHT, OKAY.

10      MR. AKROTIRIANAKIS:  SO TO MAKE IT CLEAR THAT THIS IS

11   JUST A REQUEST FOR FURTHER INFORMATION TO ALLOW THE COURT TO

12   CONSIDER THE QUESTION THEY'VE ASKED, AS OPPOSED TO THE ANSWER

13   IS, YES, YOU MAY HAVE A TRANSCRIPT, AND HERE'S WHAT IT IS.

14   THAT'S MY CONCERN.

15      THE COURT:  HOW ABOUT -- OKAY.  WHAT PORTION OF THE

16   TRANSCRIPT ARE YOU INTERESTED IN REVIEWING?  I NEED THIS

17   INFORMATION --

18      MR. AKROTIRIANAKIS:  TO CONSIDER THE REQUEST.

19      MR. ANDRES:  TO MAKE THE DETERMINATION.

20      THE COURT:  -- TO MAKE A DETERMINATION IF IT CAN BE

21   PROVIDED.

22      MR. ANDRES:  CORRECT.

23      MR. AKROTIRIANAKIS:  YES, YOUR HONOR.  THANK YOU.

24      (PAUSE IN PROCEEDINGS.)

25      THE COURT:  OKAY.

1                  MR. ANDRES:  THANK YOU, YOUR HONOR.

2                  THE COURT:  TAKE THIS BACK IN TO THEM AND BRING US

3       BACK AN ANSWER (HANDING).

4                  THE CLERK:  YES, YOUR HONOR.

5                  THE COURT:  THANK YOU.

6           I GUESS WHILE YOU ALL ARE HERE, WE CAN TALK ABOUT -- I

7       MEAN, REGARDLESS OF WHAT THE VERDICT IS, WE WILL, I ASSUME,

8       STILL SET A HEARING ON THE REQUEST FOR INJUNCTIVE RELIEF?

9                  MR. ANDRES:  YOUR HONOR --

10                 THE COURT:  OR WILL THAT DEPEND UPON WHETHER OR NOT

11      EITHER KIND OF DAMAGES ARE AWARDED TO THE PLAINTIFF?

12                 MR. ANDRES:  I MEAN, OUR POSITION IS IRRESPECTIVE,

13       IT'S A SEPARATE ISSUE FROM THE DAMAGES, AND WE OBVIOUSLY ALL

14       BRIEFED IT.  I THINK IT'S UP TO YOUR HONOR WHETHER OR NOT YOU

15       THINK THAT THE EVIDENCE DURING THE TRIAL IS SUFFICIENT FOR TO

16       YOU MAKE A DECISION ON THAT.

17          SO WE NEED -- WE NEED AN ARGUMENT, I SUPPOSE.  WHEN YOU

18      SAY A HEARING, I DON'T KNOW THAT WE NEED THE WITNESSES, BUT I

19      THINK THAT'S UP TO YOU AND UP TO THE PARTIES, AND I THINK ON

20      THE WHOLE, WE THINK THE EVIDENCE IS MORE THAN SUFFICIENT FROM

21      THE TRIAL FOR YOU TO MAKE A RULING.

22          BUT WE'RE CERTAINLY HAPPY TO SCHEDULE ARGUMENT AND,

23      FRANKLY, WE'RE EAGER TO DO THAT.

24                 THE COURT:  OKAY.

25                 MR. NOLLER:  YES, YOUR HONOR.  I MEAN, YOU RULED AT

1    THE OUTSET OF THE TRIAL THAT NOTHING RELEVANT TO THE INJUNCTION

2    WOULD COME IN AT THE TRIAL.

3                THE COURT:  RIGHT.

4                MR. NOLLER:  SO WE THINK THERE'S ALL SORTS OF

5    EVIDENCE AS TO ONGOING CONDUCT AND PUBLIC POLICY ISSUES THAT

6    ARE DIRECTLY RELEVANT TO INJUNCTIVE RELIEF THAT WEREN'T

7    RELEVANT AT THE TRIAL.

8        SO OUR POSITION, AS WE'VE STATED IN THE PAPERS, IS THAT

9    THERE NEEDS TO BE A SEPARATE EVIDENTIARY HEARING, OR THERE

10   CERTAINLY NEEDS TO BE AT LEAST AN ARGUMENT.

11               THE COURT:  WELL, I AGREE THERE NEEDS TO BE AN

12   ARGUMENT.  I WOULDN'T RULE ON THE PAPERS ON THIS PARTICULAR

13   MOTION.

14       I ACTUALLY HAVEN'T READ THEM, BUT I'VE KIND OF FLIPPED

15   THROUGH THEM AND, YEAH, THEY NEED SOME MORE ATTENTION.

16       BUT IF WE HAVE AN EVIDENTIARY HEARING, I'D ONLY BE WILLING

17   TO SET ASIDE ONE DAY, LIKE, THREE OR FOUR HOURS FOR ANY

18   ADDITIONAL TESTIMONY.

19               MR. NOLLER:  UNDERSTOOD.  I THINK THAT WOULD BE UP TO

20   THE COURT AS TO HOW TO SCHEDULE THAT.

21               THE COURT:  YEAH, YOU COULD DO IT WITHIN THAT

22   TIMEFRAME, I'M ASSUMING.

23               MR. NOLLER:  I'M SURE THAT WE CAN --

24               THE COURT:  I GUESS IT --

25               MR. NOLLER:  I'M SURE WE CAN ACCOMMODATE WHATEVER

```
 1        YOUR HONOR ORDERS.

 2                MR. ANDRES:  THAT'S OUR REQUEST, YOUR HONOR.

 3                THE COURT:  RIGHT.  I WOULD ONLY BE WILLING TO SET

 4        ASIDE -- ANY THURSDAY, I HAVE MY LAW AND MOTION ON THURSDAY,

 5        AND I WOULD DEVOTE, LIKE, MAYBE FOUR HOURS TO THAT ON A

 6        THURSDAY IN THE UPCOMING MONTH OR TWO.

 7                MR. NOLLER:  GREAT.

 8                THE CLERK:  (HANDING.)

 9                THE COURT:  HMM.

10            THE ANSWER IS DEPOSITION OF TAMIR GAZNELI AND

11        SARIT B. GIL.

12                MR. ANDRES:  THOSE WERE BOTH VIDEOS, YOUR HONOR.

13        MR. GAZNELI'S VIDEO IS APPROXIMATELY AN HOUR AND A HALF.

14                MR. PEREZ:  1:40.

15                MR. ANDRES:  1:40.  AND MS. GIL'S IS ABOUT SEVEN OR

16        TEN MINUTES.  SO WE WOULDN'T BE OPPOSED TO REPLAYING THOSE.

17        THAT WOULDN'T HAVE TO BE A READ BACK.

18            ALTERNATIVELY, WE HAVE THE TRANSCRIPTS THAT BOTH SIDES

19        HAVE AGREED TO WITH RESPECT TO THE -- WITH RESPECT TO WHAT WAS

20        SAID ON THAT VIDEO.  IT'S NOT IN DISPUTE.  THERE'S NO

21        OBJECTIONS.  THERE'S NOTHING THAT EITHER PARTY DIDN'T AGREE TO

22        BECAUSE WE PLAYED IT FOR THE JURY.

23            SO WE COULD MAKE THE VIDEOS AVAILABLE TO THE JURY, WE

24        COULD PLAY THEM, WE COULD GIVE THEM THE TRANSCRIPT, ANY OR ALL

25        OF THE ABOVE WOULD BE OKAY FOR THE PLAINTIFFS.
```

```
1              THE COURT:  OKAY.

2              MR. ANDRES:  I'D BE INCLINED TO JUST GIVE THEM THE

3       VIDEOS, BUT THAT'S --

4              THE COURT:  HMM, YEAH.  THIS IS A LITTLE BIT

5       DIFFERENT.

6              MR. ANDRES:  I AGREE.

7              MR. AKROTIRIANAKIS:  YEAH.  I THINK IF -- I THINK IF

8       THE COURT IS GOING TO PROVIDE THAT TO THE JURY, THAT IT SHOULD

9       BE PROVIDED IN ITS ENTIRETY, AND I THINK THAT WHAT THAT MEANS

10      IS THE EXAMINATION ALSO OF MR. GAZNELI, WHICH THE COURT WILL

11      RECALL IS EFFECTIVELY THE CROSS OR REDIRECT, HOWEVER YOU WANT

12      TO THINK ABOUT IT, TO THE TESTIMONY IN THE DEPOSITION.

13          SO THE ONLY WAY REALLY TO AVOID THE UNDUE EMPHASIS

14      QUESTION WOULD BE TO CONSIDER MR. GAZNELI'S DEPOSITION

15      TESTIMONY, TOGETHER WITH HIS DIRECT AND, OF COURSE, THE

16      CROSS-EXAMINATION OF HIS LIVE TESTIMONY, BECAUSE THAT COMPRISES

17      HIS TESTIMONY.

18          THE COURT WILL RECALL THERE WASN'T AN OPPORTUNITY FOR

19      CROSS-EXAMINATION -- I ASKED FOR IT, BUT THERE WASN'T AN

20      OPPORTUNITY FOR CROSS-EXAMINATION DIRECTLY AFTER MR. GAZNELI'S

21      DEPOSITION WAS PLAYED.

22          SO I THINK TO AVOID THE PROBLEM THAT THE CASES DO REFER

23      TO, YOUR HONOR, THAT THE APPROPRIATE RESPONSE IS EITHER YOU

24      HAVE TO RELY ON YOUR MEMORY OF IT, OR YOU CAN HAVE A READ BACK

25      IN THE FORM OF EITHER A -- I'M NOT SUGGESTING THEY BE GIVEN
```

 1    THIS CHOICE, BUT THE COURT'S CHOICE, OF COURSE, THE PLAYING OF

 2    THE DEPOSITION OR A TRANSCRIPT OF THE -- OF WHAT WAS PLAYED

 3    FROM THE DEPOSITION, PLUS THE TRANSCRIPT OF THE TESTIMONY GIVEN

 4    HERE, YOUR HONOR.

 5            THE COURT:  OKAY.  I -- I DON'T DISAGREE WITH THAT,

 6    THAT WE'D NEED BOTH PORTIONS, AND WE'RE LOOKING AT ABOUT TWO

 7    HOURS.

 8            MR. AKROTIRIANAKIS:  UM-HUM.

 9            THE COURT:  FOR BOTH, I THINK.

10            MR. AKROTIRIANAKIS:  YES, YOUR HONOR.

11            THE COURT:  IF MY MEMORY HOLDS.

12        BUT THE QUESTION IS, DO -- ARE YOU IN AGREEMENT THAT THE

13    TRANSCRIPT -- IF THE -- IF THE TRANSCRIPT IS ALLOWED OF YOUR

14    EXAMINATION, THEN I WOULD WANT THE TRANSCRIPT OF THE VIDEO AND

15    NOT THE DEPOSITION -- THE VIDEO DEPOSITION, BUT THE TRANSCRIPT

16    OF THAT SO THAT THEY'RE LOOKING AT TWO -- AT BOTH SIDES.

17        SO EITHER IN OPEN COURT OR IN THE BACK, IT WOULD HAVE TO

18    BE EQUIVALENT ON BOTH SIDES.  THAT MEANS IT WOULD HAVE TO BE

19    TRANSCRIPT AND NOT VIDEO.

20            MR. AKROTIRIANAKIS:  YES.

21            THE COURT:  AND IT WOULD BE ON BOTH SIDES.

22            MR. AKROTIRIANAKIS:  I AGREE WITH THAT, YOUR HONOR.

23    WE HAVE THE -- WHAT DO YOU CALL IT? -- THE CLIPS REPORT, IF YOU

24    WILL.  THAT PROBABLY -- THE ONE ISSUE WITH THAT VERSUS THE

25    TRANSCRIPT OF THE TRIAL IN TERMS OF GIVING THAT TO THE JURORS

1      IS THAT IT'LL HAVE, LIKE, MINE OR THEIRS IN ONE COLOR AND THE

2      OTHER PARTY'S ADDITIONS TO THE DIRECT EXAMINATION IN A

3      DIFFERENT COLOR.

4              THE COURT:  THAT'S OKAY.

5              MR. AKROTIRIANAKIS:  YEAH.  WELL, THEY MIGHT

6      SPECULATE ABOUT THAT.  MAYBE WE COULD PHOTOCOPY IT INTO BLACK

7      OR WHITE -- BLACK AND WHITE, OR PERHAPS HAVE THE COURT REPORTER

8      READ BACK BOTH PARTS OF IT IF IT'S A READ BACK RATHER THAN A

9      TRANSCRIPT, WHICH IS MY PREFERENCE.

10             THE COURT:  YOUR PREFERENCE WOULD BE A?

11             MR. AKROTIRIANAKIS:  READ BACK OF TESTIMONY.  SO READ

12     THE CLIPS STRAIGHT THROUGH, AND THEN READ THE ENTIRETY OF THE

13     DIRECT AND CROSS-EXAMINATION GIVEN IN COURT.

14             THE COURT:  UM-HUM.  OKAY.

15             MR. ANDRES:  YOUR HONOR, WE'D OBJECT TO THAT.  THAT'S

16     NOT WHAT THEY'VE ASKED FOR.  THEY'VE ASKED FOR THE DEPOSITION

17     TESTIMONY OF THOSE TWO WITNESSES.

18         I DON'T THINK IT'S ACCURATE TO SAY THAT THAT DOESN'T

19     REFLECT ANY OF THE DEFENDANTS' QUESTIONS IN THERE BECAUSE THEY

20     GOT TO ADD THEIR OWN DESIGNATIONS.  I BELIEVE, ALTHOUGH I

21     WASN'T THERE, AT LEAST IN SOME OF THE DEPOSITIONS -- I CAN BE

22     CORRECTED, I'M NOT CHALLENGING MR. AKROTIRIANAKIS -- IN SOME OF

23     THOSE DEPOSITIONS, DID HE GIVE -- DID HE TAKE DIRECT EXAM -- HE

24     DID ASK QUESTIONS.  I DON'T REMEMBER AS TO THOSE TWO, SO I'M

25     NOT REPRESENTING THAT.

1           BUT IN EITHER CASE, THAT IS NOT WHAT THEY ASKED FOR.  THEY

2      ASKED SPECIFICALLY, AND YOU HAVE THE NOTE, I HAVEN'T SEEN IT,

3      BUT AS YOU READ IT, IT SAYS --

4           THE COURT:  HERE (HANDING).

5           MR. ANDRES:  -- THE DEPOSITION TESTIMONY OF THESE TWO

6      WITNESSES.

7           THEY DIDN'T ASK FOR THE TRIAL TESTIMONY.

8           WHAT PORTION -- OKAY.  DEPOSITION OF TAMIR GAZNELI AND

9      SARIT GIL.

10          DEPOSITION.  THAT'S NOT THE TRIAL TRANSCRIPT.  THAT'S THE

11     DEPOSITION.  THAT'S SOMETHING ENTIRELY DIFFERENT.

12          SO I THINK THAT YOU SHOULD GIVE THEM THE VIDEOS.  IF THEY

13     DON'T WANT TO GIVE THE VIDEOS, THAT'S FINE, WE CAN GIVE THE

14     TRANSCRIPTS.  BUT I THINK WE SHOULD GIVE THE VIDEOS.  I'M HAPPY

15     TO GIVE THEM BOTH.

16          THAT'S WHAT THEY ASKED FOR.

17          MR. CRAIG:  CAN WE SEE THAT?

18          MR. ANDRES:  YEAH (HANDING).

19          THE COURT:  THERE ARE COUNTER-DESIGNATIONS, RIGHT, IN

20     THE DEPOSITION TRANSCRIPTS?

21          MR. ANDRES:  YES.

22          MR. AKROTIRIANAKIS:  YEAH.

23          BUT THE POINT, YOUR HONOR, IS THAT THE -- THAT A PARTY IN

24     A DEPOSITION DOESN'T HAVE, IN MOST CASES WHEN IT'S A PARTY

25     WITNESS, AS MR. GAZNELI AND MS. GIL WERE, THE OPPORTUNITY AND,

1    INDEED, THE REASON TO DEVELOP THE TESTIMONY BY WAY OF

2    CROSS-EXAMINATION.

3          IN FACT, IN THIS CASE, OTHER THAN PERHAPS, YOU KNOW, LIKE

4    ONE CLARIFYING QUESTION OR SOMETHING LIKE THAT, THE ONLY TIMES

5    WHEN THE TESTIMONY OF A WITNESS SUBPOENAED BY THE PLAINTIFFS

6    WAS DEVELOPED BY CROSS-EXAMINATION WOULD HAVE BEEN -- AND WHAT

7    I'M SAYING APPLIES REALLY TO THE WAY BOTH PARTIES HAVE

8    PERFORMED HERE, AS ALL PARTIES DO -- WHEN THE WITNESS COULD NOT

9    BE BROUGHT HERE FOR THE TRIAL, LIKE IN THE CASE OF MR. SHANER

10   AND MR. DIVITTORIO WHO ARE THIRD PARTY WITNESSES AND LIVE OUT

11   OF THE DISTRICT.

12         SO I THINK THAT IT WOULD BE -- I THINK IT WOULD BE RUNNING

13   RIGHT INTO THE, AND FOR NO REASON, THE UNDUE EMPHASIS PROBLEM

14   TO HAVE JUST THE ONE PART OF THE TESTIMONY WITHOUT THE OTHER

15   PART OF THE TESTIMONY.

16         THE COURT:  I ALREADY TOLD YOU, I AGREE WITH YOU.

17   I'M NOT GOING TO DO THAT.  I'M NOT GOING TO JUST PLAY ONE PART

18   OR THE OTHER.  THERE HAS TO BE COMPLETENESS.

19         I'M VERY RELUCTANT TO SEND A TRANSCRIPT BACK INTO THE JURY

20   ROOM.  ALL OF THE NINTH CIRCUIT CRIMINAL CASES AT LEAST COUNSEL

21   AGAINST DOING THAT.  IT SHOULD BE DONE HERE IN OPEN COURT.

22         MR. AKROTIRIANAKIS:  YES, YOUR HONOR.

23         THE COURT:  ALL RIGHT.  SO UNLESS BOTH PARTIES AGREE

24   TO A PROCEDURE, I WILL EITHER TELL THE JURY -- I'LL SIMPLY

25   REREAD THE INSTRUCTION AND NOT GIVE THEM ANYTHING; OR TELL THEM

1    THAT IF THEY WISH TO HAVE, PARTICULARLY WITH REGARD TO GAZNELI

2    SINCE IT WAS UNUSUAL THAT HE WAS PRESENTED BOTH ON VIDEO AND IN

3    PERSON, THEY'D HAVE TO HAVE THE ENTIRETY OF HIS TESTIMONY

4    REREAD TO THEM AND THEY'RE LOOKING AT ABOUT TWO HOURS.

5           MR. AKROTIRIANAKIS:  PLUS THE PREPARATION TIME,

6    WHATEVER THAT IS.

7           MR. ANDRES:  YEAH, IT'S MORE LIKE FOUR HOURS.

8    BECAUSE IT'S 2 HOURS FROM THE VIDEO, IT'S AN HOUR AND

9    40 MINUTES FOR THE VIDEO.  I DON'T KNOW HOW LONG HIS

10   CROSS-EXAMINATION AND DIRECT EXAMINATION WAS.

11          BUT I THINK IF YOU WANT TO WRITE BACK, YOUR HONOR, THAT --

12   YOU COULD OBVIOUSLY ASK THEM IF THEY WANT THE TRIAL TRANSCRIPT

13   OR THE VIDEO, AND THEY COULD TELL YOU THAT, TOO.

14          BUT WE COULD SAY, BASED ON YOUR REQUEST, WE --

15          THE COURT:  IT DOESN'T MATTER IF THEY WANT IT OR NOT.

16          MR. ANDRES:  FINE.

17          THE COURT:  I WOULD GIVE THEM BOTH.

18          MR. ANDRES:  BASED ON YOUR REQUEST, I CAN CALL YOU

19   BACK IN AND PLAY THE VIDEOS AND READ THE TESTIMONY OF THESE TWO

20   WITNESSES.

21          I THINK WE'D HAVE TO GO THROUGH THAT TO MAKE SURE THAT --

22   WELL, YOUR HONOR WILL KNOW WHERE THE OBJECTIONS ARE AND WHAT

23   WAS RELEVANT AND NOT RELEVANT.  THAT ALL HAS TO BE TAKEN OUT.

24          IF I COULD JUST HAVE ONE MINUTE, YOUR HONOR.

25          MR. AKROTIRIANAKIS:  YES, YOUR HONOR.  AS I THINK

1    ABOUT THIS IN TERMS OF TRYING TO ACCOMPLISH SOME EQUIVALENCE, I

2    THINK THAT IT SHOULD BE READING OF BOTH AS OPPOSED TO PLAYING

3    OF A VIDEO AND THEN READING OF THE OTHER.

4          THE COURT:  YEAH.

5          MR. AKROTIRIANAKIS:  AND I -- I GUESS MY PREFERENCE,

6    AND IT'S THE SIMPLEST SOLUTION, TOO, WOULD JUST BE TO REREAD

7    THEM THE INSTRUCTION, OR TO PROVIDE THEM THE INSTRUCTION.

8          BUT IF THE COURT IS GOING TO HONOR THIS REQUEST, THEN I

9    THINK THAT IT SHOULD BE TRANSCRIPT, TRANSCRIPT, AND READ, NOT

10   PROVIDED, AND IN OPEN COURT, OF COURSE.

11         MR. ANDRES:  I GUESS THE ONLY OTHER OPTION,

12   YOUR HONOR -- AND SORRY, I DON'T MEAN TO BE ARGUMENTATIVE ABOUT

13   THIS, IT'S NOT A DIFFICULT QUESTION -- WE WOULD NOT OBJECT TO

14   SENDING THE TRANSCRIPT OF THE VIDEOS BACK AND THE TRANSCRIPT OF

15   THE TRIAL.

16         THE COURT:  WELL, THAT'S WHAT I ASKED.

17         MR. ANDRES:  YEAH.  WELL, I THOUGHT YOU WERE

18   SUGGESTING YOU WOULD READ IT, BECAUSE THAT'S GOING TO TAKE FOUR

19   HOURS.  IF WE JUST SEND IT ALL BACK, IT'LL TAKE MUCH LESS TIME

20   BECAUSE THEY'LL FIND WHATEVER THEY'RE LOOKING FOR.

21         MR. AKROTIRIANAKIS:  THAT'S THE UNDUE EMPHASIS

22   PROBLEM.

23         THE COURT:  YEAH, IT'S EVERYTHING IF WE DO YOUR

24   PORTION AS WELL, THEN YOU'RE BOTH ON EQUAL -- WE'RE ON EQUAL

25   FOOTING.  THE ONLY DANGER IS IF THEY'RE NOT REALLY LOOKING AT

1    THAT PORTION, THEY REALLY WANT SOMETHING FROM THE VIDEO, THEN

2    THEY MIGHT VERY WELL JUST IGNORE THE OTHER PORTION.

3              MR. AKROTIRIANAKIS:  EXACTLY, WHICH IS THE UNDUE

4    EMPHASIS PROBLEM.

5              MR. ANDRES:  WELL, IT'S NOT, BECAUSE IT'S MADE

6    AVAILABLE.  IT'S NO DIFFERENT FROM READING IT IN THE COURTROOM

7    AND THEM NOT CARING ABOUT WHAT IT SAYS.  THEY'RE GOING TO FOCUS

8    ON WHAT THEY WANT TO FOCUS ON.

9         I THINK JUST IN TERMS OF THE TIMING, THAT'S PROBABLY THE

10   MOST EFFICIENT, PUTTING ASIDE THAT TODAY IS THE LAST DAY,

11   ANYWAY, TO --

12             THE COURT:  WELL, THE TIME TO SET UP AND TO READ BACK

13    AND TO DO ALL OF THAT, WE'RE TALKING HOURS.

14             MR. ANDRES:  FOUR.

15             MR. AKROTIRIANAKIS:  THIS IS WHAT THE CASES SAY,

16   YOUR HONOR.  IT'S --

17             THE COURT:  YEAH.  NO, I'M TOTALLY FAMILIAR WITH

18    THAT, AND I'M NOT SO SURE THAT THEY WOULD WANT THAT.  I'M NOT

19    SO SURE THAT THEY'RE STUCK ON SOMETHING THAT WOULD REQUIRE THEM

20    TO HEAR, YOU KNOW, TO SPEND FOUR HOURS AT.

21        SO I'M INCLINED TO -- NOT TO GIVE THEM, UNLESS BOTH SIDES

22   AGREE TO A PARTICULAR PROCEDURE, I WOULD BE INCLINED TO -- TO

23   JUST RE-GIVE THEM THE INSTRUCTION THAT NO TRANSCRIPT IS

24   AVAILABLE.

25             OR TO TELL THEM THE TRUTH, THAT IT WOULD TAKE FOUR HOURS

1    TO SET UP AND TO COMPLETE IT, DO YOU STILL WANT TO DO THAT?

2          MR. ANDRES:  SO SENDING ALL THE TRANSCRIPTS BACK IS

3    NOT AN OPTION?

4          THE COURT:  UNLESS BOTH SIDES AGREE.  I DON'T SEND

5    TRANSCRIPTS BACK AT ALL.  WE'RE CAUTIONED AGAINST DOING THAT.

6    BUT I WOULD DO IT IF BOTH SIDES AGREE TO IT.

7          MR. ANDRES:  THAT'S WHAT WE'D LIKE TO DO, SO IT'S

8    JUST A QUESTION OF WHETHER MR. AKROTIRIANAKIS AGREES TO THAT.

9          THEY COULD HAVE ALL OF THE TESTIMONY, ALL OF THE

10   TRANSCRIPTS FROM THE VIDEOS, ET CETERA, ET CETERA.

11         MR. AKROTIRIANAKIS:  YEAH, I'VE MADE MY POSITION --

12         MR. ANDRES:  OKAY.

13         MR. AKROTIRIANAKIS:  -- I THINK CLEAR ON THAT.

14         MR. ANDRES:  I'M JUST ASKING.

15         MR. AKROTIRIANAKIS:  IN TERMS OF RESPONDING TO THE

16   NOTE, I THINK THAT IT WOULD BE FINE TO READ THE EARLIER

17   PREINSTRUCTION, OR TO GIVE THEM THE PREINSTRUCTION AND SAY

18   SOMETHING LIKE, YOU KNOW, COUNSEL ON BOTH SIDES HAVE REFERENCED

19   THE TRANSCRIPT.  A TRANSCRIPT OF AT LEAST PARTS OF THIS TRIAL

20   HAS BEEN PREPARED; HOWEVER, THE PROCEDURE FOR WHAT YOU'RE

21   ASKING FOR IS, AND THEN JUST TELL THEM WHAT THE COURT'S

22   INTENTION WOULD BE, AND I THINK THAT THAT WILL ADDRESS THE

23   ISSUE.  AND LETTING THEM KNOW, OF COURSE, THAT IT WILL TAKE

24   FOUR HOURS, BOTH THE SET UP AND TO PROVIDE THEM THE READ BACK,

25   YOUR HONOR.

1391

```
 1                 THE COURT:  OKAY.

 2                 MR. ANDRES:  THAT'S FINE.

 3                 THE COURT:  THAT'S -- WHAT ARE YOU AGREEING TO?

 4                 MR. ANDRES:  SO I THINK YOU CAN TELL THEM WHAT YOUR

 5       ORIGINAL INSTRUCTION WAS AND THAT, ALTERNATIVELY, THAT YOU'RE

 6       AVAILABLE TO SHOW THEM THE VIDEO AND REREAD THE TRANSCRIPT, BUT

 7       THAT WILL TAKE -- THAT YOU EXPECT THAT TO TAKE SEVERAL HOURS IF

 8       THAT'S WHAT THEY'RE ASKING FOR.

 9                 THE COURT:  YES.  OKAY.

10            WE'LL BRING THEM OUT AND DO THIS HERE IN OPEN COURT.

11                 MR. ANDRES:  OKAY.

12                 THE COURT:  I DON'T HAVE THAT PRELIMINARY

13       INSTRUCTION.

14                 MR. ANDRES:  I DO, YOUR HONOR.

15                 MR. AKROTIRIANAKIS:  THE ONE -- THE ONE THING THAT

16       I'D JUST -- I WANT TO MAKE CLEAR THAT I'M NOT AGREEING TO IS I

17       DON'T THINK THAT THEY SHOULD BE TOLD, NOR SHOULD THEY BE

18       ALLOWED TO HAVE VIDEO AND TRANSCRIPT.  IT SHOULD BE TRANSCRIPT

19       AND TRANSCRIPT.

20                 THE COURT:  NO.  HE AGREED TO THAT.

21                 MR. AKROTIRIANAKIS:  YES, YOUR HONOR.

22                 THE COURT:  HE AGREED THAT IT WOULD BE TRANSCRIPT AND

23       TRANSCRIPT.

24                 MR. AKROTIRIANAKIS:  YES, YOUR HONOR.  MAY I

25       (HANDING)?
```

```
1                THE COURT:  YES.

2                MR. AKROTIRIANAKIS:  THANK YOU.

3                MR. ANDRES:  SORRY, YOUR HONOR, HERE'S --

4                THE COURT:  THAT'S OKAY.  WE HAVE ALL -- OH.

5                MR. ANDRES:  THIS IS A TRANSCRIPT OF THE TRIAL OF

6       WHAT YOU SAID.

7            (PAUSE IN PROCEEDINGS.)

8                THE COURT:  OKAY.

9            (PAUSE IN PROCEEDINGS.)

10           THE CLERK:  ALL RISE FOR THE JURY.

11           (JURY IN AT 11:01 A.M.)

12               THE CLERK:  THANK YOU.  PLEASE BE SEATED.

13               MR. ANDRES:  IT'S COMING, YOUR HONOR.

14               THE COURT:  OKAY.

15               MR. ANDRES:  WE'RE JUST TRYING TO --

16           (PAUSE IN PROCEEDINGS.)

17               MR. ANDRES:  IT'S AT THE BOTTOM, YOUR HONOR

18        (HANDING).

19               THE COURT:  OKAY.  THANK YOU.

20           ALL RIGHT.  MEMBERS OF THE JURY, WE DO HAVE YOUR RESPONSE

21      TO MY NOTE INDICATING THE ASPECTS OF THE TRANSCRIPTS THAT YOU

22      WOULD LIKE TO REVIEW.

23           I JUST WANT TO FIRST TAKE THE OCCASION TO REMIND YOU OF

24      THE INSTRUCTION I GAVE YOU AT THE BEGINNING OF THE CASE, BEFORE

25      YOU STARTED HEARING EVIDENCE.  I SAID I URGE YOU TO PAY CLOSE
```

1    ATTENTION TO THE TRIAL TESTIMONY AS IT IS GIVEN.  DURING

2    DELIBERATIONS, YOU WILL NOT HAVE A TRANSCRIPT OF THE TRIAL

3    TESTIMONY.

4        I WANTED TO ALSO JUST GIVE YOU SOME ADDITIONAL

5    INFORMATION.

6        IT IS UNUSUAL IN A CASE TO HAVE TRANSCRIPTS PREPARED EVERY

7    DAY.  WE NEVER HAVE THAT IN MOST CASES.  IT'S BECAUSE THESE

8    PARTIES HAVE CONTRACTED TO DO THAT, TO HAVE THEM PREPARED EVERY

9    DAY, BUT WE USUALLY DON'T HAVE TRANSCRIPTS.

10        AND WHEN A JURY WANTS TO HAVE A -- BE REMINDED OF

11    TESTIMONY, WE DO SOMETHING CALLED A READ BACK.  THAT MEANS THAT

12    THE COURT REPORTER WILL READ FROM THE NOTES THAT SHE'S BEEN

13    TAKING OF THE TESTIMONY.

14        I ALSO WANT TO TELL YOU, THERE ARE LEGAL REQUIREMENTS THAT

15    REQUIRE COMPLETENESS OF THE TESTIMONY SO THAT THERE ISN'T UNDUE

16    EMPHASIS PLACED ON ANY PORTION OF A WITNESS'S TESTIMONY OVER

17    ANOTHER PORTION OF A WITNESS'S TESTIMONY.

18        SO EITHER YOU'LL HAVE TO RELY UPON YOUR OWN MEMORIES, OR

19    THE ALTERNATIVE WOULD BE FOR US TO TAKE THE TIME TO SET UP, TO

20    GET ALL THE TRANSCRIPTS PREPARED, AND TO HAVE THE COURT

21    REPORTER READ BACK THE ENTIRETY OF MR. GAZNELI'S TESTIMONY.

22        WE ESTIMATE THAT THE SET UP TIME AND THE READ BACK TIME

23    MAY TAKE AS MANY AS THREE OR FOUR HOURS.

24        SO I'M GOING TO SEND YOU BACK, AND YOU DECIDE, OF THOSE

25    TWO ALTERNATIVES, HOW YOU WISH TO PROCEED.

1          THANK YOU.

2               THE CLERK:  ALL RISE FOR THE JURY.

3               THE COURT:  JUST KNOCK ON THE DOOR WHEN YOU'VE COME

4     TO A DECISION.

5          (JURY OUT AT 11:04 A.M.)

6               THE COURT:  OKAY.  THANK YOU.

7               MR. ANDRES:  THANK YOU, YOUR HONOR.

8               MR. AKROTIRIANAKIS:  THANK YOU, YOUR HONOR.

9          (PAUSE IN PROCEEDINGS.)

10               MR. AKROTIRIANAKIS:  MAY I BE EXCUSED, YOUR HONOR?

11               THE COURT:  YES.  AS LONG AS SOMEONE IS HERE.

12               MR. AKROTIRIANAKIS:  I JUST WANT TO STEP IN THE

13     HALLWAY SO I'M NOT TEXTING.

14               THE COURT:  OH, SURE.

15               MR. AKROTIRIANAKIS:  OH, WE'RE WAITING -- I WILL

16     WAIT.

17               THE COURT:  YEAH, I'M SURE IT WON'T TAKE MORE THAN A

18     MINUTE OR TWO.

19               MR. AKROTIRIANAKIS:  I JUST LOST MY MIND FOR A

20     SECOND.  THANK YOU.

21          (PAUSE IN PROCEEDINGS.)

22               THE COURT:  ALL RIGHT, COUNSEL, I HAVE A RESPONSE

23     FROM THE JURY.

24          WE WITHDRAW THE QUESTION.  THANK YOU.

25               MR. AKROTIRIANAKIS:  THANK YOU, YOUR HONOR.

```
 1                MR. ANDRES:  AMEN.

 2           (RECESS FROM 11:06 A.M. UNTIL 1:28 P.M.)

 3                THE COURT:  ALL RIGHT.

 4           COUNSEL, WE'VE RECEIVED A NOTE FROM THE JURY THAT THEY

 5      HAVE REACHED A UNANIMOUS VERDICT.

 6           READY TO TAKE THE VERDICT?

 7           MADAM CLERK, WILL YOU BRING THEM IN.

 8           (PAUSE IN PROCEEDINGS.)

 9                THE CLERK:  ALL RISE FOR THE JURY.

10           (JURY IN AT 1:30 P.M.)

11                THE COURT:  ALL RIGHT.

12           YOU MAY BE SEATED.

13           ALL RIGHT.  MEMBERS OF THE JURY, WHO SPEAKS FOR YOU AS

14      YOUR FOREPERSON?

15           ALL RIGHT.  JUROR NUMBER 5, MR. LEDBETTER.

16           HAS THE JURY REACHED A UNANIMOUS VERDICT IN THIS MATTER?

17                JUROR:  YES, YOUR HONOR, WE HAVE.

18                THE COURT:  ALL RIGHT.

19           MS. COLLINS, WILL YOU GET THE VERDICT FORM FOR ME?

20                THE CLERK:  (HANDING.)

21           (PAUSE IN PROCEEDINGS.)

22                THE COURT:  ALL RIGHT.  I WILL -- WELL, PLEASE LISTEN

23      CAREFULLY AS THE VERDICT IS PUBLISHED.  YOU MAY BE POLLED AFTER

24      I PUBLISH THE VERDICT.

25           ALL RIGHT.  WE, THE JURY -- I'M GOING TO READ IT TO YOU
```

1    NOW.

2         WE, THE JURY, UNANIMOUSLY AGREE TO THE ANSWERS TO THE

3    FOLLOWING QUESTIONS AND RETURN THEM UNDER THE INSTRUCTIONS OF

4    THIS COURT AS OUR VERDICT IN THESE MATTERS IN THIS CASE.

5         NUMBER 1.  WHAT AMOUNT OF COMPENSATORY DAMAGES HAS

6    WHATSAPP PROVEN THAT NSO SHOULD PAY?

7         ANSWER:  $444,719.

8         QUESTION NUMBER 2(A).  HAS WHATSAPP PROVEN BY CLEAR AND

9    CONVINCING EVIDENCE THAT NSO ENGAGED IN MALICE, OPPRESSION, OR

10   FRAUD IN VIOLATING THE CALIFORNIA COMPREHENSIVE DATA ACCESS AND

11   FRAUD ACT?

12        ANSWER:  YES.

13        SECTION 2(B).  SHOULD PUNITIVE DAMAGES BE IMPOSED ON THE

14   FACTORS SET FORTH IN JURY INSTRUCTION NUMBER 27?

15        ANSWER:  YES.

16        QUESTION 3.  WHAT IS THE AMOUNT OF PUNITIVE DAMAGES THAT

17   NSO SHOULD PAY?

18        ANSWER:  $167,254,000.

19        ALL RIGHT.  AND, MR. LEDBETTER, IS THAT A CORRECT READING

20   OF YOUR VERDICT?

21             JUROR:  YES, YOUR HONOR, IT IS.

22             THE COURT:  ALL RIGHT.  DOES ANY PARTY WISH TO HAVE

23    THE JURY POLLED?

24             MR. AKROTIRIANAKIS:  YES, PLEASE, YOUR HONOR.

25             THE COURT:  ALL RIGHT.

1397

```
 1            ALL RIGHT.  MEMBERS OF THE JURY, I'M GOING TO ASK EACH ONE

 2    OF YOU THE SAME QUESTION, STARTING FIRST WITH JUROR NUMBER 1.

 3            DOES THE VERDICT AS PUBLISHED REPRESENT YOUR TRUE VERDICT

 4    IN ALL RESPECTS?

 5            JUROR:  YES, YOUR HONOR.

 6            THE COURT:  ALL RIGHT.  THANK YOU.

 7            JUROR NUMBER 2, DOES THE VERDICT AS PUBLISHED REPRESENT

 8    YOUR TRUE VERDICT?  DOES IT CONSTITUTE YOUR TRUE VERDICT, YOUR

 9    INDIVIDUAL VERDICT IN ALL RESPECTS?

10            JUROR:  YES, YOUR HONOR.

11            THE COURT:  ALL RIGHT.  JUROR NUMBER 3, DOES THE

12    VERDICT AS PUBLISHED REPRESENT YOUR TRUE VERDICT IN ALL

13    RESPECTS?

14            JUROR:  YES, YOUR HONOR.

15            THE COURT:  ALL RIGHT.

16            JUROR NUMBER 4, DOES THE VERDICT AS PUBLISHED REPRESENT

17    YOUR TRUE VERDICT IN ALL RESPECTS?

18            JUROR:  YES, YOUR HONOR.

19            THE COURT:  ALL RIGHT.

20            AND, MR. LEDBETTER, I'LL ASK YOU AGAIN, DOES THE VERDICT

21    AS PUBLISHED REPRESENT YOUR INDIVIDUAL TRUE VERDICT?

22            JUROR:  YES, YOUR HONOR.

23            THE COURT:  ALL RIGHT.

24            JUROR NUMBER 6, DOES THE VERDICT AS PUBLISHED REPRESENT

25    YOUR TRUE VERDICT?
```

1          JUROR:  YES, YOUR HONOR.

2          THE COURT:  ALL RIGHT.

3      AND JUROR NUMBER 7, DOES THE VERDICT AS PUBLISHED

4  REPRESENT YOUR INDIVIDUAL, TRUE VERDICT?

5          JUROR:  YES, YOUR HONOR.

6          THE COURT:  ALL RIGHT.  AND JUROR NUMBER 8, DOES THE

7   VERDICT AS PUBLISHED REPRESENT YOUR INDIVIDUAL, TRUE VERDICT?

8          JUROR:  YES, YOUR HONOR.

9          THE COURT:  ALL RIGHT.

10      THANK YOU, MEMBERS OF THE JURY.

11      I WANT TO THANK YOU FOR YOUR ATTENTIVENESS, YOUR

12  PUNCTUALITY.  I UNDERSTAND THAT JURY SERVICE IS AN

13  INCONVENIENCE FOR ALL.  I KNOW WE'VE TAKEN YOU OUT OF YOUR

14  LIVES FOR THESE LAST SEVEN BUSINESS DAYS, AND I, ON BEHALF OF

15  THE NORTHERN DISTRICT OF CALIFORNIA, APPRECIATE YOUR SERVICE.

16      JURY SERVICE IS ONE WAY IN WHICH EACH OF US CAN

17  PARTICIPATE IN OUR DEMOCRACY.

18      AND ON BEHALF OF THE PARTIES AS WELL, I THANK YOU FOR YOUR

19  TIME AND ATTENTION.

20      YOU ARE NOW DISCHARGED AS JURORS, WHICH MEANS YOU CAN TALK

21  ABOUT THE CASE.  YOU CAN TALK TO ANYONE YOU WISH ABOUT THE

22  CASE.

23      THE ATTORNEYS HERE MIGHT BE INTERESTED IN HEARING FROM

24  YOU.  IT IS TOTALLY UP TO YOU AS TO WHETHER OR NOT YOU WISH TO

25  SPEAK TO THEM.

1          I WOULD LIKE YOU, FIRST, TO GO BACK INTO THE JURY ROOM AND

2     I'M GOING TO JOIN YOU JUST FOR A FEW WORDS IN PRIVATE BEFORE

3     YOU LEAVE.

4          AND WHEN YOU LEAVE, YOU HAVE TWO CHOICES.  YOU CAN EITHER

5     COME BACK THROUGH THE COURTROOM AND TALK TO THE LAWYERS IF

6     YOU'D LIKE TO, OR YOU CAN EXIT THROUGH THE PRIVATE ENTRYWAY

7     THAT YOU HAVE BEEN COMING IN AND OUT OF.  IF YOU DO NOT WISH TO

8     SPEAK TO THEM, IT'S TOTALLY, TOTALLY UP TO YOU.

9          ONCE AGAIN, THANK YOU, AND I'LL SEE YOU BACK IN THE JURY

10    ROOM IN JUST A MOMENT.

11              THE CLERK:  ALL RISE FOR THE JURY.

12         (JURY OUT AT 1:35 P.M.).

13              THE COURT:  ALL RIGHT.  THANK YOU.

14         COUNSEL, WE WILL FILE AND RECORD THE VERDICT TODAY.

15    OBVIOUSLY A JUDGMENT WILL NOT BE ENTERED UNTIL AFTER I'VE HEARD

16    THE MOTION FOR PERMANENT INJUNCTION.

17         YOU ALL HAVE INDICATED -- I'LL SET ASIDE FOUR HOURS.  IT

18    MAY BE EVIDENTIARY IN NATURE.  I WOULD JUST LIKE TO KNOW THE

19    NAMES OF THE WITNESSES THAT WILL BE CALLED IN ADVANCE.

20         YOU CAN CONTACT MS. COLLINS AND SCHEDULE IT FOR A DATE ON

21    A THURSDAY ANY TIME THAT'S AVAILABLE IN MAY OR JUNE.

22              MR. ANDRES:  VERY BRIEFLY, YOUR HONOR.  FIRST OF ALL,

23     THANK YOU VERY MUCH AND THANK YOU TO THE COURT STAFF,

24     MS. COLLINS AND LEE-ANNE.

25         I JUST WANT TO BE VERY CLEAR ABOUT WHAT'S PUBLIC AND

1    WHAT'S NOT IN TERMS OF THE EXHIBITS AND THE TRANSCRIPT AND THE

2    LIKE, BECAUSE OBVIOUSLY WE EXPECT TO GET MEDIA REQUESTS.

3        SO I ASSUME THAT ALL THE EXHIBITS, OTHER THAN THE

4    REDACTIONS OR THINGS THAT ARE SEALED, ARE ON THE RECORD AND

5    PUBLIC.

6        THE COURT:  ALL OF THE EXHIBITS ARE PUBLIC, EXCEPT

7    THOSE THAT WERE SEALED AND NOT SHOWN TO THE PUBLIC DURING

8    TRIAL.  THOSE REMAIN UNDER SEAL.

9        MR. ANDRES:  CORRECT.  SAME WITH THE VIDEOS THAT WERE

10   SHOWN IN PUBLIC ASIDE FROM THOSE THAT INCLUDED ANY, ANY SEALED

11   DOCUMENTS, WE'LL CUT THOSE OUT.

12       THE COURT:  YES.

13       MR. ANDRES:  I UNDERSTAND THAT THE TRANSCRIPT DOESN'T

14   BECOME -- GO ON TO THE RECORD UNTIL 21 DAYS SO THE PARTIES HAVE

15   TO SHOW ANY REDACTIONS, SO THAT'S NOT ON THE PUBLIC.  WE DO

16   HAVE AN OFFICIAL COPY, OBVIOUSLY, BUT IT'S UNOFFICIAL, WE

17   UNDERSTAND THAT.

18       THE COURT:  RIGHT.

19       MR. ANDRES:  FOR THOSE VIDEO DEPOSITIONS, THERE ARE

20   ALSO TRANSCRIPTS OF THOSE THAT THE PARTIES EXCHANGED.  I ASSUME

21   THAT'S PUBLIC SINCE THE VIDEOS WERE PLAYED IN PUBLIC.

22       THE COURT:  YES.

23       MR. ANDRES:  I THINK THAT'S EVERYTHING.

24       YOUR HONOR, SORRY, BUT, AGAIN, THANK YOU VERY MUCH FOR

25   YOUR TIME, AND WE LOOK FORWARD TO SEEING YOU AGAIN FOR THE

1    PRELIMINARY INJUNCTION.  BUT THANK YOU, I REALLY APPRECIATE

2    YOUR TIME.

3              THE COURT:  AND WE DO WANT YOU TO TAKE ALL THE

4    BINDERS AND TRANSCRIPTS AWAY.  WE DON'T WANT TO HAVE TO DISPOSE

5    OF THAT.

6              MR. ANDRES:  ABSOLUTELY.  THANK YOU, YOUR HONOR.

7              THE COURT:  ALL RIGHT.  HAVE A GOOD WEEKEND.

8         ACTUALLY, IT'S JUST TUESDAY.  I'M AHEAD OF MYSELF.  I'M

9    SORRY.

10             (THE EVENING RECESS WAS TAKEN AT 1:38 P.M.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7        WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8   UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9   CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10  HEREBY CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16       _____
         IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8076
17

18       _____

19       LEE-ANNE SHORTRIDGE, CSR, CRR
         CERTIFICATE NUMBER 9595
20

21       DATED:  MAY 6, 2025

22

23

24

25