1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone:   (213) 443-4355
5  Facsimile:   (213) 443-4310

6  Attorneys for Defendants
   NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11

12 | WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,

   Plaintiffs,

   v.

   NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,

   Defendants.

Case No. 4:19-cv-07123-PJH

**NOTICE OF MOTION AND MOTION TO STRIKE UNDISCLOSED WITNESSES FROM PLAINTIFFS' WITNESS LIST FOR AUGUST 28, 2025 EVIDENTIARY HEARING AND FOR SANCTIONS**

Date:  August 14, 2025
Time:  1:30 p.m.
Place: Zoom Webinar

Action Filed: 10/29/2019

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1
II. BACKGROUND ............................................................................................................... 2
III. ARGUMENT .................................................................................................................... 4
   A. Plaintiffs' Motion Does Not Rely on Any Witness on Their Witness List .................... 4
   B. Rules 26 and 37 Apply to the August 28, 2025, Hearing ............................................... 5
   C. Plaintiffs' Purported Fact Witnesses Should Be Excluded ............................................ 7
   D. Anthony Vance Should Be Excluded ............................................................................. 9
   E. The Court Should Order Payment of Attorneys' Fees for Plaintiffs' Failure .............. 10
IV. CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Roberts*,
  2021 WL 1663783 (D. Mont. Apr. 28, 2021) ........................................................................ 4, 8

*Avila v. Willits Envt'l Remediation Tr.*,
  633 F.3d 828 (9th Cir. 2011) .................................................................................................... 9

*Estate of Brown v. Lambert*,
  2020 WL 3606392 (S.D. Cal. July 2, 2020) ............................................................................. 6

*Finjan, Inc. v. Proofpoint, Inc.*,
  2015 WL 9900617 (N.D. Cal. Oct. 26, 2015) ....................................................................... 5, 8

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021) .................................................................................................. 10

*IntegrityMessageBoards.com v. Facebook, Inc.*,
  2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ........................................................................... 5

*Kohn v. State Bar of Calif.*,
  497 F. Supp. 3d 526 (N.D. Cal. 2020) ...................................................................................... 5

*Lockhart v. Techtronic Indus. N. Am., Inc.*,
  2024 WL 1427014 (9th Cir. Apr. 3, 2024) ............................................................................. 10

*Marchand v. Mercy Med. Ctr.*,
  22 F.3d 933 (9th Cir. 1994) ...................................................................................................... 4

*Martin v. DePuy Orthopaedics, Inc.*,
  2015 WL 2342077 (D. Nev. May 24, 2015) .......................................................................... 11

*Med. Provider Fin. Corp., II v. Sw. Drs. Grp., LLC*,
  2008 WL 11451258 (D. Nev. Nov. 3, 2008) ............................................................................ 8

*Merchant v. Corizon Health, Inc.*,
  993 F.3d 733 (9th Cir. 2021) .................................................................................................... 5

*Nunes v. County of Stanislaus*,
  2020 WL 1324808 (E.D. Cal. Mar. 20, 2020) .......................................................................... 4

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014) ................................................................................................ 4, 8

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
  20 F.4th 466 (9th Cir. 2021) ..................................................................................................... 6

*Padilla v. City of Richmond*,
 509 F. Supp. 3d 1168 (N.D. Cal. 2020) ................................................................................... 5

*Skydive Ariz., Inc. v. Quattrochi*,
 704 F. Supp. 2d 841 (D. Ariz. 2010) .................................................................................. 6, 7

*True Health Chiropractic Inc. v. McKesson Corp.*,
 2015 WL 5341592 (N.D. Cal. Sept. 12, 2015) ...................................................................... 11

*Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*,
 259 F.3d 1101 (9th Cir. 2001) .......................................................................................... 8, 10

**Other Authorities**

Fed. R. Civ. P. 26 .................................................................................................................. *passim*

Fed. R. Civ. P. 30(b)(6) .................................................................................................................. 3, 7

Fed. R. Civ. P. 37 .................................................................................................................. *passim*

1  **PLEASE TAKE NOTICE** that on August 14, 2025 at 1:30 p.m., Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. (collectively "NSO") will bring on for hearing before the Honorable Phyllis J. Hamilton, United States District Judge, via Zoom Webinar, a motion to strike witnesses from Plaintiffs' Witness List for Hearing on Motion for Permanent Injunction (Dkt. 767) (the "Motion"). The Motion also seeks monetary sanctions in the form of Defendants' reasonable expenses, including attorney's fees, pursuant to Rule 37(c)(1)(A). NSO's Motion is based on Rules 26 and 37 of the Federal Rules of Civil Procedure, this Notice of Motion, the following Points and Authorities, the accompanying Declaration of Aaron Craig, and such other written or oral argument as may be presented at or before the time this Motion is taken under submission by the Court.

**POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Rule 37(c)(1) provides that "[i]f a party fails to provide information or *identify a witness* as required by Rule 26(a) or (e), the party is not allowed to use that information *or witness* to supply evidence on a motion, *at a hearing*, or at trial . . . ." Rule 37 contains no exclusion for post-trial motions. Ninth Circuit case law is abundantly clear that Rule 26 applies to post-trial motions.

On June 26, 2025, Plaintiffs provided the Court with their list of witnesses to testify at the August 28, 2025 hearing on Plaintiffs' Motion for Permanent Injunction. Plaintiffs' list contained five witnesses. Four of them were not properly disclosed and they cannot be allowed to testify, and the fifth is subject to a well-taken (and granted, albeit on relevance grounds that are less applicable here than they were to the jury trial) *Daubert* motion. Plaintiffs knew from the outset that they were seeking a permanent injunction. (Compl., Dkt. No. 1 at 14). They have no excuse for not having disclosed the witnesses they now want to testify in support of that injunction. During a conference of counsel, Defendants asked whether there were any new facts or events since the dates of Plaintiffs' disclosures that would justify the failure to disclose, such as any new attempts to install Pegasus on target devices via Plaintiffs' servers or other "attacks" on Plaintiffs' servers. Plaintiffs did not identify any new facts or events. (Craig Decl. ¶ 2.)

Two of Plaintiffs' witnesses were not disclosed at all in Plaintiffs' Rule 26 disclosures. Two

others were initially disclosed, but those disclosures were subsequently withdrawn because the witnesses had no percipient testimony as they were not employed by Plaintiffs during the time of the events alleged in the Complaint. Plaintiffs further promised that if these latter two witnesses were to testify, Plaintiffs would "make any required disclosures by the expert disclosure deadline and make them available for deposition during the expert period." (Craig Decl. Exh. 5.) No such expert disclosure was provided, and Defendants did not take these witnesses' depositions in reliance on Plaintiffs' promise. (Craig Decl. ¶ 7.)

Defendants have met and conferred repeatedly with Plaintiffs, who refused to amend their witness list by a reasonable and necessary deadline of July 8, 2025. Defendants explicitly told Plaintiffs that if they amended their witness list *after* Defendants filed this Motion in order to moot it, that would be rank gamesmanship, and that Plaintiffs needed to provide Defendants with their final witness list by July 8, 2025, so that any remaining disputes could be resolved with sufficient time to prepare for the August 28, 2025, hearing. (Craig Decl. ¶ 3 & Exh. 1.) If Plaintiffs were to try this gambit, that would only cement the conclusion that the Court should sanction Plaintiffs in the amount Defendants were forced to expend to file this Motion.

## II.    BACKGROUND

After claiming entitlement to injunctive relief in their October 2019 Complaint (Dkt. No. 1 at 14), Plaintiffs moved for an injunction on February 24, 2025 (*see* Dkt. No. 557-3). Plaintiffs based their motion and reply brief on undisputed facts and deposition testimony from five witnesses, including their expert, David Youssef (*See id.*; Dkt. No. 637). The Court initially set an evidentiary hearing on that motion for July 17, 2025. (Dkt. No. 739.)

Much to Defendants' surprise, on June 26, 2025, Plaintiffs disclosed five *different* witnesses to testify at the evidentiary hearing. (Dkt. No. 767.) They were:

| | |
|---|---|
| Lander Brandt: | Ongoing harm to Plaintiffs |
| Chris Rohlf: | Ongoing harm to Plaintiffs |
| Andrew Blaich: | Ongoing harm to Plaintiffs |
| Carl Woog: | Balance of hardships and public interest in injunctive relief |
| Anthony Vance: | Balance of hardships and public interest in injunctive relief. |

1 **_Lander Brandt and Chris Rohlf_**:  Plaintiffs did not disclose Messrs. Brandt and Rohlf in their August 4, 2020, initial disclosures, but did disclose them in their first and second amended initial disclosures in 2023 and 2024 as having information about "Plaintiffs' investigation of Defendants' exploitation of vulnerability in the WhatsApp service." (Craig Decl. Exhs. 2–4.) Defendants learned that Messrs. Brandt and Rohlf started working for Plaintiffs only after all the events in the lawsuit had taken place. (Craig Decl. ¶ 7.) Defendants' counsel then conferred with Plaintiffs in advance of filing a motion to strike Messrs. Brandt and Rohlf from Plaintiffs' amended initial disclosures. That motion became unnecessary after Plaintiffs emailed Defendants, stating that they did not intend to rely on the testimony of Lander Brandt or Chris Rohlf as fact witnesses and should Plaintiffs "decide to designate them as expert witnesses, [Plaintiffs] will make any required disclosures by the expert disclosure deadline and make them available for deposition during the expert period." (Craig Decl. Exh. 5.) In reliance on Plaintiffs' representation that Messrs. Brandt and Rohlf's only role would be as expert witnesses and in compliance with the expert disclosure requirements, Defendants did not depose Mr. Brandt or Mr. Rohlf. (Craig Decl. ¶ 7.) Plaintiffs never provided any expert disclosures for either witness. (*Id.*)

**_Andrew Blaich_**:  Plaintiffs never disclosed Andrew Blaich in any Rule 26 disclosure, and Defendants had never heard of him until June 26, 2025.

**_Carl Woog_**:  Plaintiffs never disclosed Carl Woog in any Rule 26 disclosure. Plaintiffs designated Mr. Woog as its corporate designee under Rule 30(b)(6) on the topic of "Plaintiffs' internal and external statements concerning the WhatsApp vulnerabilities that were the subject of media attention on or around May 14, 2019." (Craig Decl. Exh. 6 at 101:10–105:5). Mr. Woog's designation pursuant to Rule 30(b)(6) did not encompass the "balance of hardships and public interest in injunctive relief," and Defendants did not examine Mr. Woog on those topics and have had no opportunity to examine him on them.

**_Anthony Vance_**:  Plaintiffs filed two expert disclosures for Dr. Vance, one offering "technical testimony about the steps taken by defendants to access plaintiffs' servers and plaintiffs' steps to circumvent access," (Dkt. No. 686 at 13), and one in rebuttal of Defendants' experts. Defendants filed a *Daubert* motion to strike Dr. Vance's testimony (Craig Decl. Exh. 7), which the

1  Court granted on the grounds that "he offers testimony only as to the narrow issue of defendants'
2  circumvention of plaintiffs' security measures, which is more appropriately presented by a fact
3  witness."[1] (Dkt. No. 686 at 14.)
4      The Court has since reset the evidentiary hearing for August 28, 2025 (*See* Dkt. No. 768).
5  The parties will have four hours on that motion. Argument on Defendants' Motion for New Trial
6  or Remittitur has also been set for the same day.

**III.  ARGUMENT**

    **A.  Plaintiffs' Motion Does Not Rely on Any Witness on Their Witness List**

The Court should strike Plaintiffs' witness list out of hand because none of those witnesses was offered in support of Plaintiffs' motion for a permanent injunction. In support of that motion, Plaintiffs cited testimony from five witnesses, including Plaintiffs' expert David Youssef. (*See* Dkt. No. 557-3 (Plaintiffs' opening brief citing testimony from Ramon Eshkar, Tamir Gazneli, Claudiu Gheorghe, Yaron Shohat, and David Youssef); Dkt. No. 637 (Plaintiffs' reply brief citing testimony from Mr. Gazneli and Mr. Shohat.)) Plaintiffs' witness list, however, does not include any of the witnesses on which Plaintiffs previously relied. Instead, it includes five *new* witnesses never once mentioned in Plaintiffs' briefs. (*See* Dkt. No. 767.)

The Ninth Circuit has "warned" that parties cannot "'indulge in gamesmanship with respect to'" witness disclosure, especially mere weeks before the hearing at which those witnesses might testify. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) (quoting *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 n.3 (9th Cir. 1994)); *see also* Fed R. Civ. P. 26 advisory committee's note to 1993 amendment (same). Courts in this Circuit thus do not hesitate to strike witnesses where, as here, there is no substantial excuse for an "undisputedly last-minute [witness] disclosure." *Adams v. Roberts*, 2021 WL 1663783, at *2 (D. Mont. Apr. 28, 2021); *Nunes v. County of Stanislaus*, 2020 WL 1324808, at *4 (E.D. Cal. Mar. 20, 2020) (excluding witnesses

---

[1] To the extent Plaintiffs are designating Dr. Vance to rebut Mr. Minkler's testimony, Defendants do not object on Rule 26 and 37 grounds to the extent his prior disclosures rebut Mr. Minkler or his predecessor, Jay Town. However, Dr. Vance's opinions are unreliable and are not based on sufficient facts or data, or specialized knowledge, as set forth in Defendants' *Daubert* motion filed January 9, 2025. (Dkt. No. 509, Craig Decl. Exh. 7.) The Court did not rule on this portion of Defendants' *Daubert* motion against Dr. Vance because it granted the motion on relevance grounds.

whom "Plaintiff waited to disclose . . . until four months prior to trial"); *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9900617, at *3 (N.D. Cal. Oct. 26, 2015) (excluding witnesses whom party "ha[d] known about" for months yet were only "disclosed at the eleventh hour").

Plaintiffs' gamesmanship is especially inappropriate here because their original briefing on their motion *did not even mention* the witnesses they now intend to call. As this Court has repeatedly explained, "courts do not consider arguments raised for the first time on reply." *Padilla v. City of Richmond*, 509 F. Supp. 3d 1168, 1180 (N.D. Cal. 2020) (Hamilton, J.); *Kohn v. State Bar of Calif.*, 497 F. Supp. 3d 526, 533 (N.D. Cal. 2020) (Hamilton, J.); *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *8 n.4 (N.D. Cal. Nov. 6, 2020) (Hamilton, J.) ("not consider[ing] the merits of [party's] new contention" that was not raised "in its opening brief"). Plaintiffs have announced their intention to introduce new evidence and make argument based thereon after Defendants filed their replacement Opposition (*i.e.*, in their yet-to-be-filed replacement reply). Having previously staked their motion on *other* witnesses, Plaintiffs cannot now do an about-face and base their motion on an entirely new slate of witnesses.

### B.    Rules 26 and 37 Apply to the August 28, 2025, Hearing

Rule 37(c)(1) straightforwardly authorizes this Court to sanction Plaintiffs by striking undisclosed witnesses on their witness list. That Rule is clear: "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party **is not allowed to use that . . . witness to supply evidence on a motion, at a hearing**, or at a trial, unless the failure was substantially justified or is harmless." Fed R. Civ. P. 37(c)(1) (emphasis added). The Ninth Circuit has described this sanction as "automatic" absent a showing of substantial justification or harmlessness. *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021). As relevant here, Rule 26(a)(1) and (2) required Plaintiffs to disclose all fact witnesses (*i.e.*, "individual[s] likely to have discoverable information") that they "may use to support [their] claims," Fed. R. Civ. P. 26(a)(1)(A)(i), and all expert witnesses they "may use at trial to present evidence" in the form of expert opinion testimony, Fed. R. Civ. P. 26(a)(2)(A). Under the plain text of these Rules, Plaintiffs thus cannot use any undisclosed "witness to supply evidence," whether on their injunction "motion" or "at [any] hearing" on that motion. Fed. R. Civ. P. 37(c)(1).

During the parties' meet-and-confer, Plaintiffs took the position that these Rules do not apply to their motion for a permanent injunction because it is a post-trial motion. That is factually and legally wrong—which is no doubt why Plaintiffs could not point to any authority supporting their view. (Craig Decl. ¶ 2.) Indeed, Plaintiffs' injunction motion is not a *post-trial* motion at all. They filed that motion months before the trial, based "exclusively on undisputed facts from the" *pre-trial* "summary judgment record" (Dkt. No. 637 at 2), and then vigorously opposed "put[ing] off a decision on the motion" until after trial (Dkt. No. 569 at 4). There is no question that Plaintiffs could not have relied on undisclosed witnesses had this Court resolved Plaintiffs' motion when they asked for it to be decided. So, Plaintiffs are not free to circumvent Rule 26 and 37 simply because this Court made the purely administrative decision to resolve their motion after trial—especially when the Court viewed "an evidentiary hearing" as merely an alternative to "special interrogatories to the jury." (Dkt. No. 577 at 2.)

Plaintiffs are also wrong on the law. Even where parties put evidence at issue in "various post-trial motions," courts in this Circuit have held that "Rule 26" still "governs [the] dispute." *Estate of Brown v. Lambert*, 2020 WL 3606392, at *1, *3 (S.D. Cal. July 2, 2020) (compelling production of previously undisclosed reinsurance agreement put at issue in post-trial motions); *Skydive Ariz., Inc. v. Quattrochi*, 704 F. Supp. 2d 841, 846–47 (D. Ariz. 2010) (excluding expert evidence under Rule 37 that was first proffered in connection with post-trial motion), *rev'd in part on other grounds*, 673 F.3d 1105 (9th Cir. 2012). The Ninth Circuit has tacitly agreed: In assessing whether a post-trial expert declaration is "untimely under Federal Rules of Civil Procedure 26 and 37," the Ninth Circuit examines only whether the declaration was "timely disclosed," without ever suggesting (as Plaintiffs do) that those Rules categorically do not apply to post-trial motions. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 488 (9th Cir. 2021).

These decisions follow from the plain text of both Rules. Rule 37's clear prohibition on using undisclosed witnesses as evidence "on a motion" or "at a hearing" admits no exception for post-trial motions or hearings. Fed. R. Civ. P. 37(c)(1). Similarly, Rule 26(a) applies to evidence used on *any* "claims"—including matters related to proposed remedies such as "damages claimed by the disclosing party," *see* Fed. R. Civ. P. 26(a)(1)(A)(i) & (iii), and the "permanent injunction"

1  claimed in Plaintiffs' Complaint (Dkt. No. 1 at 14).  As courts have recognized, producing expert
2  evidence "for the first time, during post-trial proceedings . . . is highly unorthodox, completely
3  inappropriate, and makes a mockery of" Rule 26(a)'s requirements. *Skydive Ariz.*, 704 F. Supp. 2d
4  at 846–47 ("giv[ing] no consideration to [party's] arguments" in post-trial motion that were based
5  on testimony of expert who was "not disclose[d] . . . as an expert witness" under Rule 26(a)(2)).

6  Accordingly, Plaintiffs cannot produce evidence from any undisclosed witnesses unless
7  they show their failure to disclose "was substantially justified or is harmless." Fed. R. Civ. 37(c)(1).
8  As set forth more fully below, Plaintiffs' failure to disclose their witnesses is neither substantially
9  justified nor harmless.  It is not justified because Plaintiffs have identified no new facts or events
10 since their previous disclosures that would warrant allowing testimony from undisclosed witnesses,
11 despite being asked that precise question during a conference of counsel.  (Craig Decl. ¶ 2.)  It is
12 also not harmless because, but for Plaintiffs' failure to disclose, Defendants would have taken the
13 depositions of Mr. Rohlf, Mr. Brandt and Mr. Blaich, and would have asked additional questions
14 of Mr. Woog during his deposition.

### C. Plaintiffs' Purported Fact Witnesses Should Be Excluded

16 Plaintiffs' new witness list now includes four purported fact witnesses: Andrew Blaich, Carl
17 Woog, Lander Brandt, and Chris Rohlf.  (Dkt. No. 767 at 1.)  None of these witnesses was properly
18 disclosed under Rule 26.  And because Plaintiffs' eleventh-hour disclosure now is neither justified
19 nor harmless, Rule 37 straightforwardly authorizes the Court to strike these witnesses.

20 Plaintiffs never disclosed Andrew Blaich in any Rule 26 disclosure.  (*See* Craig Decl. Exhs.
21 2–4.)  In fact, Defendants' counsel had never even heard of Mr. Blaich until Plaintiffs included him
22 on their June 26, 2025, witness list.  Defendants have no idea who he is or what he does, though
23 internet searches identify him as being closely affiliated with Citizen Lab, Plaintiffs' Canadian
24 contractor from whom the Court denied Defendants discovery.

25 Plaintiffs also never disclosed Carl Woog in any Rule 26 disclosure.  (*See* Craig Decl. Exhs.
26 2–4.)  Plaintiffs did designate Mr. Woog as their Rule 30(b)(6) representative for the limited
27 purpose of testifying on "Plaintiffs' internal and external statements concerning the WhatsApp
28 vulnerabilities that were the subject of media attention on or around May 14, 2019." (Craig Decl.

Exh. 6 at 101:10–105:5). But that limited designation did not encompass the "balance of hardships and public interest in injunctive relief" topics on which Plaintiffs would have him now testify. (Dkt. No. 767 at 1.) NSO therefore never had any opportunity to examine Mr. Woog about his opinions on the balance of hardships or the public-interest factors. (*See* Craig Decl. ¶ 8.)

Messrs. Brandt and Rohlf also were not properly disclosed. Plaintiffs' amended Rule 26(a) disclosures indicated those witnesses might have evidence about "Plaintiffs' investigation of Defendants' exploitation of vulnerability in the WhatsApp service" (Craig Decl. Exh. 3 at 1–2; Exh. 4 at 1–2). But evidence about Plaintiffs' *investigation* of harm in the past is not evidence of NSO's supposed *ongoing* harm to Plaintiffs, for which Plaintiffs now proffer these two witnesses. More importantly, Plaintiffs expressly told NSO that they did not intend to call Mr. Brandt or Mr. Rohlf as fact witnesses and that they would make the required expert disclosures "[i]f we decide to designate them as expert witnesses." (Craig Decl. Exh. 5.) Plaintiffs cannot try to walk back these representations now: The Rules are designed so that parties "try cases on the merits, not by surprise, and not by ambush." *Ollier*, 768 F.3d at 862. And Plaintiffs' initial disclosure of these witnesses "without any indication that [they would] provide expert opinions" forecloses their ability to designate these witnesses as expert witnesses at this late hour. *Med. Provider Fin. Corp., II v. Sw. Drs. Grp., LLC*, 2008 WL 11451258, at *1 (D. Nev. Nov. 3, 2008) (collecting cases).

Plaintiffs offer no justification for waiting to disclose these witnesses until June 26, 2025—which was then just 21 days before the scheduled hearing on their motion. (*See* Dkt. No. 739.). There is none: Plaintiffs had known about each of these witnesses for years, and knew since 2019 that they would be seeking an injunction. Moreover, it is well established that waiting until mere weeks before a hearing to disclose a witness is not harmless. *See, e.g., Ollier*, 768 F.3d at 862–63 (affirming exclusion of witnesses "less than a year before trial" as "well within [the court's] discretion" because "[t]he last thing a party or its counsel wants in a hotly contested lawsuit is to make last-minute preparations and decisions on the run"); *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (disclosure of witness "one month before" trial was not harmless, given need to "prepare to question him at trial"); *accord, e.g., Adams*, 2021 WL 1663783, at *2 (similar); *Finjan*, 2015 WL 9900617, at *3 (similar).

Accordingly, the Court should strike all four of Plaintiffs' purported fact witnesses.

### D. Anthony Vance Should Be Excluded

The Court also should strike Plaintiffs' purported expert witness, Anthony Vance, as summarized here and as set forth in full in NSO's *Daubert* briefing. (*See* Dkt. Nos. 509, 646.) Dr. Vance is manifestly not qualified to rebut NSO's experts on the benefits or supposed harms of Pegasus, and the opinions he proffers are unreliable at every step. While there is no risk of misleading a jury here, the Court should still strike Dr. Vance because his testimony will be a waste of time, and the parties are limited to four hours on August 28, 2025, for both the presentation of evidence and the oral argument (which is expected to be extensive).

*First*, Dr. Vance has no expertise in law enforcement, military, or intelligence by which he might speak to the benefits or harms of Pegasus. To the contrary, Dr. Vance is an academic with research with research interests in "[b]ehavioral and organizational cybersecurity" and "[n]euroscience applications to cybersecurity," *i.e.*, how people respond neurologically to corporate cybersecurity warnings. (Dkt. No. 509-4 App'x B at 2.) That narrow "cybersecurity" focus has no bearing on lawful intercept technologies like Pegasus: As Dr. Vance admitted, he does not "know [of] specific intercept technologies" (Dkt. No. 509-6 at 247:25–248:7), has never "written about that specifically," and in his courses has merely "debated with [his] students" the "various equities involved" (*id.* at 108:25–109:21). Indeed, Dr. Vance has no meaningful experience in the relevant area of cybersecurity as applied to *governments* or government agencies operating in the *specific fields* of law enforcement, military, or intelligence. He has never held any position or published in these areas, and has participated in only one case in these areas. (*Id.* at 107:8–108:4, 126:18–23, 128:20–131:20, 133:8–12.). And the only talks he has given at national-security conferences have concerned *employees' "access rights" to employer information*—which he admits is only "broadly relevant" to national security generally, not to any specific opinion he might offer here. (Dkt. 624-2 at 134:3–135:17.)

Because Dr. Vance does not "'stay[ ] within the reasonable confines of his subject area,'" his opinions must be excluded "[f]or this reason alone." *Avila v. Willits Envt'l Remediation Tr.*, 633 F.3d 828, 838 (9th Cir. 2011) (citation omitted) (affirming exclusion of chemist who opined

"on the content of waste in the chrome-plating industry").

*Second*, even if Dr. Vance were qualified (he is not), his rebuttal opinions are inherently unreliable at multiple steps. His bottom-line conclusion that "the harms caused by Pegasus outweigh any supposed benefits" (Dkt. No. 509-5 § II.D.1) is inherently flawed and unreliable because he admits he *did not even consider* any of Pegasus' many benefits (*see* Dkt. No. 509-6 at 151:14–154:1, 222:4–12). Moreover, he offered no explanation for *how* he selected which harms are relevant (he arbitrarily includes harms allegedly caused by NSO's clients) or *how* he "weighs" those harms against benefits he did not even consider. (*See id.* at 212:13–217:1.) Nor can Dr. Vance reliably ground his methodology in experience, as he expressly *denied* ever researching or writing about the costs and benefits of tools like Pegasus. (*See id.* at 107:12–108:4 ("I do not talk about end-to-end encryption in my research" and "haven't written directly about that")). The fact that Dr. Vance may have discussed these costs and benefits at a high level in his class does not make him an expert or his bottom-line conclusions reliable.

It is well established that "'*any* step that renders the analysis unreliable . . . *renders the expert's testimony inadmissible*.'" *Hardeman v. Monsanto Co.*, 997 F.3d 941, 961 n.12 (9th Cir. 2021) (citation omitted). Because multiple steps in Dr. Vance's analysis are unreliable, his opinions impermissibly amount to nothing more than his own say-so. In short, Dr. Vance's unexpert and unreliable testimony should not be used to waste any part of the four hours the Court has afforded the parties for a hearing on the injunction motion. The Court should strike Dr. Vance from the witness list.

### E. The Court Should Order Payment of Attorneys' Fees for Plaintiffs' Failure

"In addition to" striking Plaintiffs' witness list, the Court can and should "order payment of the reasonable expenses, including attorney's fees, caused by" Plaintiffs' failure to comply with Rule 26. Fed. R. Civ. P. 37(c)(1)(A). The Court has "particularly wide latitude" to impose this additional sanction. *Yeti*, 259 F.3d at 1106. Courts in this Circuit have often imposed a monetary sanction as a matter of course, without any further discussion. *See, e.g., Lockhart v. Techtronic Indus. N. Am., Inc.*, 2024 WL 1427014, at *2 (9th Cir. Apr. 3, 2024) ("Because Lockhart failed to timely serve Rule 26 disclosures, the district court did not abuse its discretion by imposing a

monetary sanction of a portion of defendants' attorneys' fees."); *Martin v. DePuy Orthopaedics, Inc.*, 2015 WL 2342077, at *2 (D. Nev. May 24, 2015) (authorizing defendant to "submit an affidavit of reasonable expenses, including attorney's fees, caused by Plaintiff's failure," without discussion); *True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 5341592, at *9 (N.D. Cal. Sept. 12, 2015) (awarding "attorneys' fees for filing the motion" for Rule 37 sanctions, as that was a "certain consequence of [the other party's] failure" to comply with Rule 26).

An additional monetary sanction is needed here to sanction Plaintiffs' patent gamesmanship. To recap, Plaintiffs' witness list (1) consists entirely of witnesses whose testimony was *not* the basis for Plaintiffs' motion; (2) includes two witnesses (Messrs. Blaich and Woog) whom Plaintiffs never previously disclosed under Rule 26(a); and (3) includes two other fact witnesses (Messrs. Brandt and Rohlf) whom Plaintiffs specifically told NSO would not be called as fact witnesses. And when Plaintiffs met and conferred on this motion, they failed to offer any authority for their view that these witnesses could testify despite not being properly disclosed under Rule 26. Yet Plaintiffs refused to withdraw any of them from their witness list by the very reasonable July 8, 2025, date requested by Defendants—a deadline necessary in order to have this motion filed and served in sufficient time for it be heard on August 14, 2025—the last available hearing date before the evidentiary hearing itself will be held.

Accordingly, the Court should further award NSO attorney's fees for the time its attorneys spent conferring upon and briefing this motion.

## IV.     CONCLUSION

The Court should strike Plaintiffs' witness list in full and should allow NSO to submit an affidavit of reasonable expenses, including attorney's fees for time spent conferring upon and briefing this motion.

Dated: July 9, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG