Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         gina.cora@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE UNDISCLOSED WITNESSES** <br><br> Ctrm: 3 <br> Judge: Hon. Phyllis J. Hamilton <br> Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................2

      A.    Plaintiffs Move for a Permanent Injunction on the Undisputed Facts.............2

      B.    NSO Opposes Plaintiffs' Motion, Relying on New Facts ...............................3

      C.    The Court Schedules an Evidentiary Hearing.................................................4

ARGUMENT .................................................................................................................................5

    I.    The Court Should Deny NSO's Motion to Strike Plaintiffs' Fact Witnesses...............5

      A.    Plaintiffs Are Not Limited to the Evidence Cited in Their Earlier Motion .....5

      B.    Plaintiffs Complied with the Disclosure Requirements of Rule 26(a)............6

      C.    Plaintiffs' Disclosure of Witnesses Was Substantially Justified and Harmless .........................................................................................................9

    II.    The Court Should Deny NSO's Motion to Strike Plaintiffs' Expert Witness ...........11

    III.    The Court Should Deny NSO's Motion for Sanctions ..............................................13

CONCLUSION ............................................................................................................................13

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Acumed, LLC v. Stryker Corp.*,
   2007 WL 4180682 (D. Or. Nov. 20, 2007), *aff'd*, 551 F.3d 1323 (Fed. Cir. 2008) ................... 11

*Charlton v. Est. of Charlton*,
   841 F.2d 988 (9th Cir. 1988) ............................................................................................. 3

*David E. Watson, P.C. v. United States*,
   668 F.3d 1008 (8th Cir. 2012) ......................................................................................... 12

*Est. of Brown v. Lambert*,
   2020 WL 3606392 (S.D. Cal. July 2, 2020) ..................................................................... 8

*F.T.C. v. BurnLounge, Inc.*,
   753 F.3d 878 (9th Cir. 2014) ........................................................................................... 12

*GTE Prods. Corp. v. Kennametal, Inc.*,
   772 F. Supp. 907 (W.D. Va. 1991) ................................................................................... 7

*i4i Ltd. P'ship v. Microsoft Corp.*,
   670 F. Supp. 2d 568 (E.D. Tex. 2009),
   *withdrawn and superseded on rehearing by* 598 F.3d 831 (Fed. Cir. 2010),
   *aff'd sub nom.* 564 U.S. 91 (2011) ................................................................................... 6

*Kaepplinger v. Michelotti*,
   2021 WL 2633312 (N.D. Ill. June 25, 2021) ..................................................................... 9

*Lanard Toys, Ltd. v. Novelty, Inc.*,
   375 F. App'x 705 (9th Cir. 2010) ..................................................................................... 9

*May v. Brunton*,
   2014 WL 6086255 (S.D. Cal. Nov. 13, 2014) ................................................................... 8

*MVT Servs., LLC v. Great W. Cas. Co.*,
   2021 WL 1169681 (D.N.M. Mar. 26, 2021) ..................................................................... 8

*Patmont Motor Werks, Inc. v. CSK Auto Inc.*,
   2006 WL 2591042 (D. Nev. Sept. 8, 2006) ..................................................................... 6

*S.F. Baykeeper v. W. Bay Sanitary Dist.*,
   791 F. Supp. 2d 719 (N.D. Cal. 2011) ............................................................................. 9

*Skydive Ariz., Inc. v. Quattrochi*,
   704 F. Supp. 2d 841 (D. Ariz. 2010), *rev'd in part*, 673 F.3d 1105 (9th Cir. 2012) ................... 8

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
   2010 WL 2522428 (E.D. Tex. June 18, 2010) ............................................................................. 7

*United States v. Flores*,
   901 F.3d 1150 (9th Cir. 2018) ................................................................................................. 12

### STATUTES & RULES

N.D. Cal. Civ. L.R. 7-8(a) ............................................................................................................ 13

N.D. Cal. Civ. L.R. 37-4(b)(3) ..................................................................................................... 13

Fed. R. Civ. P. 26 .............................................................................................. 1, 2, 6, 7, 8, 12

Fed. R. Civ. P. 26 Advisory Committee Notes (2000 amendment) ................................................ 6

Fed. R. Civ. P. 26(a) ........................................................................................................... 2, 6, 7

Fed. R. Civ. P. 26(a)(1) .................................................................................................................. 6

Fed. R. Civ. P. 26(a)(1)(A)(i) ........................................................................................................ 6

Fed. R. Civ. P. 26(a)(2) .................................................................................................................. 8

Fed. R. Civ. P. 37(c)(1) .................................................................................................................. 9

Fed. R. Evid. 702 .......................................................................................................................... 12

**PRELIMINARY STATEMENT**

On May 15, 2025, the Court scheduled an evidentiary hearing on Plaintiffs' motion for a permanent injunction. Dkt. No. 739. The Court ordered the parties to "exchange witness lists, if any, 21 days before the motion hearing." *Id.* Plaintiffs complied with that order, and provided NSO with their list of witnesses and the topics of their witnesses' testimony on June 26, 2025. Dkt. No. 767.

NSO has now moved to strike *all* of the witnesses that Plaintiffs intend to call at the evidentiary hearing, which has been rescheduled to August 28, 2025. NSO first argues that Plaintiffs can only rely on the evidence cited in their earlier motion for a permanent injunction. Dkt. No. 770 at 4–5. Next, NSO claims that Plaintiffs cannot call any fact witnesses not listed on Plaintiffs' initial disclosures. *Id*. at 5–9. NSO also argues that Plaintiffs' expert witness, Dr. Anthony Vance, should be excluded for the reasons provided in NSO's previous *Daubert* motion. *Id*. at 9–10. Finally, NSO asks this Court to sanction Plaintiffs. *Id*. at 10–11. All of NSO's arguments are meritless.

*First*, NSO provides no authority limiting Plaintiffs to the evidence cited in their original motion for a permanent injunction. Plaintiffs filed their motion before NSO expanded the factual record (by filing unsupported declarations on topics that its executives refused to discuss during their depositions) and before the Court agreed with NSO's request to hold an evidentiary hearing. Having argued that the Court should consider additional evidence and hold a hearing before ruling on Plaintiffs' motion, NSO cannot stop Plaintiffs from responding with relevant evidence of their own.

*Second*, NSO fails to provide any basis to strike Plaintiffs' fact witnesses.[1] Plaintiffs complied with Rule 26, which requires a party to disclose witnesses who "may . . . support its claims or defenses." Fed. R. Civ. P. 26(a). Plaintiffs only determined that these witnesses would support their motion for a permanent injunction when NSO put forward new facts in its opposition and the Court agreed with NSO that an evidentiary hearing was necessary. NSO fails to cite any authority obligating Plaintiffs to disclose injunction-related witnesses earlier in the case, and district courts consistently deny motions to strike witnesses from testifying about injunction-related issues.

---

[1] Plaintiffs no longer intend to call Chris Rohlf. Plaintiffs previously disclosed both Mr. Rohlf and Lander Brandt while they confirmed which witness could accommodate the adjourned hearing date, which the Court had not yet approved at the time of their disclosure.

1

NSO's claims of "unfair surprise" are unfounded. NSO received Plaintiffs' witness list over seven weeks before the evidentiary hearing. Mr. Blaich and Mr. Brandt will testify about recent developments that Plaintiffs have observed indicating NSO's continued activity on Plaintiffs' platforms and continued collection of WhatsApp messages from the WhatsApp client application, including activity as recent as 2025. And Mr. Woog will testify about what Plaintiffs know about the victims of NSO's May 2019 attack—a topic that NSO repeatedly asked about during Mr. Woog's deposition. All three witnesses will testify live, and thus will be subject to NSO's cross-examination.

*Third*, the Court should reject NSO's request to exclude Dr. Anthony Vance, one of Plaintiffs' experts, from testifying at the evidentiary hearing. The sole witness that NSO intends to call live is Joshua Minkler, who NSO asserts is an expert on "policy" issues relevant to the public interest in the injunction Plaintiffs seek. The Court previously excluded Mr. Minkler's testimony, and therefore precluded Dr. Vance from rebutting Mr. Minkler's policy opinions. To the extent that Mr. Minkler's testimony is permitted, Plaintiffs are entitled to rebut that testimony. The Court should deny NSO's request to strike Dr. Vance's testimony, but, if the Court disagrees, the Court should also strike Mr. Minkler's testimony.

*Finally*, the Court should reject NSO's preposterous request for sanctions. Plaintiffs complied with the Federal Rules of Civil Procedure and this Court's orders. To the extent NSO complains that Plaintiffs reserved their rights when providing a witness list seven weeks before the hearing, NSO's problems are self-created. Plaintiffs suggested delaying disclosure of witnesses until three weeks before the rescheduled hearing, but NSO refused. There was no bad faith on Plaintiffs' part in reserving the right to narrow their witness list, particularly at a time when the adjourned hearing date had been requested but not yet approved by the Court.

NSO's motion to strike Plaintiffs' witnesses, as well as NSO's motion for sanctions, should be denied.

## BACKGROUND

### A. Plaintiffs Move for a Permanent Injunction on the Undisputed Facts

On February 24, 2025, Plaintiffs moved for a permanent injunction. Dkt. No. 557-3. Plaintiffs' motion relied on the evidence submitted to the Court in connection with the parties' motions

2

for partial summary judgment, and Plaintiffs took the position that "there is no additional evidence required to evaluate Plaintiffs' request and there are no obstacles to issuing a permanent injunction now." *Id.* at 2. Plaintiffs noticed their motion for a hearing on April 10, 2025—the same day as the final pretrial conference. *Id.* at 1.

Two days later, NSO filed an administrative motion to continue the briefing deadlines and vacate the April 10, 2025 hearing date that Plaintiffs had requested. Dkt. No. 560. In that administrative motion, NSO argued that an evidentiary hearing was required before the Court could issue an injunction. *See id.* at 1–3. Plaintiffs responded by citing case law allowing courts to issue permanent injunctions without an evidentiary hearing "when the facts are not in dispute." Dkt. No. 568-3 at 2 (quoting *Charlton v. Est. of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988)).

On March 10, 2025, the Court agreed to continue the hearing date on Plaintiffs' motion. Dkt. No. 577. In its order, the Court stated that it would set a hearing date "[a]fter reviewing the fully briefed motion," and advised the parties "that the court is likely to follow its general practice of hearing such motions after trial." *Id.* at 2.

**B.   NSO Opposes Plaintiffs' Motion, Relying on New Facts**

NSO filed its opposition brief on March 14, 2025. Dkt. No. 604-2. In that brief, NSO reiterated its argument that the Court must hold an evidentiary hearing before issuing a permanent injunction, as "most of the significant 'facts' Plaintiffs cite in their motion are disputed, and NSO would submit evidence to dispute them at a hearing." *Id.* at 4.

To support its view that the injunction turned on disputed issues of fact, NSO attached declarations to its opposition brief containing previously undisclosed facts about the current state of its business—a point that Plaintiffs addressed in their reply brief. *See* Dkt. No. 637 at 4 & n.3. For instance, NSO attached a declaration from Tamir Gazneli (NSO's head of research and development) stating that NSO's WhatsApp-based installation vectors were no longer operational. Dkt. No. 605-3 ¶ 5. Mr. Gazneli's statements about the current status of NSO's WhatsApp-based installation vectors covered a topic that Mr. Gazneli refused to discuss at his deposition:

Q. And as to NSO continues to make available to its customers a 0 click exploit

that uses WhatsApp servers, you are not willing to tell me.

3

A. No.

Q. No, you are not willing to tell me?

MR. AKROTIRIANAKIS: We already had this conversation, counsel.

MR. PEREZ-MARQUES: Is that right? I just want to make sure I understand the "no." The no is you won't tell me, right?

A. I can't tell you.

Decl. of Micah G. Block in Supp. of Opp. to Mot. to Strike ("Block Decl.") Ex. A (Gazneli Dep.), at 271:9–20; *see also id.* at 46:13–15 (NSO's counsel instructing witness to answer question "to the extent it is within the time period April 29, 2018 to May 10, 2020").

NSO also attached a declaration from Yaron Shohat (NSO's chief executive officer) that admitted that NSO's spyware continues to secretly collect WhatsApp messages from WhatsApp users. *See* Dkt. No. 604-3. In his declaration, Mr. Shohat stated that Pegasus "has competitors that offer products, similar to Pegasus, that permit the remote collection of information from mobile devices" including "WhatsApp messages, among other social media messages." *Id.* ¶ 10. Mr. Shohat then stated that prohibiting NSO from "collect[ing] the same messages" would harm NSO's business. *Id.* The only conclusion that can be drawn from Mr. Shohat's statement is that NSO continues to collect WhatsApp messages today. Though Mr. Shohat's declaration discusses the current functionality of NSO's spyware, NSO previously refused to provide discovery or answer deposition questions about its conduct after 2020, let alone about how its spyware collects WhatsApp messages. *See* Dkt. No. 429-2 at 21–25 (containing NSO's explanation as to why it was unable to provide discovery about post-2020 conduct).

**C.    The Court Schedules an Evidentiary Hearing**

After the damages trial in this matter, the Court set the hearing on Plaintiffs' motion for permanent injunction for July 17, 2025. Dkt. No. 739. In that notice, the Court ordered that the "[p]arties shall exchange witness lists, if any, 21 days before the motion hearing." *Id.*

On June 25, 2025, the parties filed a joint stipulation to continue the hearing on Plaintiffs' motion for permanent injunction to August 28, 2025, or a later date convenient to the Court. Dkt. No. 764. The stipulation remained pending on June 26, 2025; on that date, the parties conferred, and

4

Plaintiffs proposed holding the deadline to exchange witness lists in abeyance in order to allow the Court sufficient time to act on the parties' joint stipulation. Block Decl. ¶ 6. NSO rejected this proposal. *Id.* The parties therefore exchanged initial witness lists on June 26, 2025. Plaintiffs' disclosure listed five witnesses (Lander Brandt, Chris Rohlf, Andrew Blaich, Carl Woog, and Anthony Vance) to testify in person at the hearing. *See* Dkt. No. 767. NSO's disclosure listed one live witness (Joshua Minkler), and three witnesses (Mr. Gazneli, Col. Ty Shepard, and Yaron Shohat) who would provide testimony through their declarations. *See* Dkt. No. 766.

On June 27, 2025, the Court granted the parties' joint stipulation and rescheduled the evidentiary hearing to August 28, 2025. Dkt. No. 768. Plaintiffs intend to provide a final witness list three weeks before the hearing, in accordance with the Court's order.

## ARGUMENT

### I. The Court Should Deny NSO's Motion to Strike Plaintiffs' Fact Witnesses

NSO's motion fails to identify any legitimate basis to strike Plaintiffs' fact witnesses from testifying at the August 28, 2025 hearing.

#### A. Plaintiffs Are Not Limited to the Evidence Cited in Their Earlier Motion

NSO first argues that Plaintiffs can only rely on the evidence that Plaintiffs cited in their February 24, 2025 motion for permanent injunction. Dkt. No. 770 at 4–5. This argument ignores the context of Plaintiffs' earlier motion, intervening events, and common sense.

Plaintiffs' initial motion for a permanent injunction explained that Plaintiffs were entitled to a permanent injunction on the undisputed facts and without the need for an evidentiary hearing. *See* Dkt. No. 558 at 7. For this reason, Plaintiffs did not attach evidence regarding, for instance, the ongoing harm to Plaintiffs from NSO's continued activities on Plaintiffs' platforms. Put differently, Plaintiffs did not include testimony relevant for an evidentiary hearing because they did not think an evidentiary hearing was required.

NSO now claims that Plaintiffs should not be permitted to "introduce new evidence" at the evidentiary hearing ordered by the Court, and should instead be limited to only the evidence cited in their earlier brief. Dkt. No. 770 at 5. NSO does not hold themselves to the same standard, nor does NSO cite to case law imposing such a remedy. Moreover, NSO ignores that the Court's order setting

5

the injunction hearing invited both parties to exchange witness lists and therefore present evidence relevant to Plaintiffs' proposed injunction. *See* Dkt. No. 739.

In addition, NSO tries to preempt Plaintiffs from including any new evidence in any reply brief in support of their motion for a permanent injunction. *See* Dkt. No. 770 at 5. But the general prohibition on including new evidence in reply briefs makes little sense when the non-moving party expands the scope of the dispute by including new evidence in its opposition brief, as NSO did here. *See, e.g.*, *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1249 (N.D. Cal. 2018) ("[T]he court has the discretion to consider new evidence presented on reply, particularly if the new evidence appears to be a reasonable response to the opposition."); *see also Terrell v. Contra Costa Cnty.*, 232 F. App'x 626, 629 n.2 (9th Cir. 2007) (ruling that information in reply brief was not new where reply brief "addressed the same set of facts supplied in [] opposition to the motion but provides the full context to [opposition's] selected recitation of the facts"). Having introduced new evidence in its opposition, NSO cannot now try to limit what Plaintiffs say in reply.

### B.   Plaintiffs Complied with the Disclosure Requirements of Rule 26(a)

NSO next argues that Rule 26(a) required Plaintiffs to disclose all witnesses who will testify at the forthcoming evidentiary hearing before the jury trial, and that Plaintiffs' purported failure to disclose these witnesses triggers Rule 37's prohibition on using "undisclosed" witnesses at the evidentiary hearing. *See* Dkt. No. 770 at 5–6. NSO's argument relies on an unsupported interpretation of Rule 26(a)'s disclosure requirements.

Rule 26(a)(1), which governs the disclosure of fact witnesses, requires a party to disclose relevant witnesses "that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). As NSO itself previously asserted, "[i]njunctive relief is a *remedy*, not a 'claim.'" Dkt. No. 190 at 17 (arguing that NSO should not have to produce documents outside of the period from January 2018 through May 2019). Until the Court scheduled an evidentiary hearing on Plaintiffs' motion for a permanent injunction at the end of the jury trial, Plaintiffs did not intend to use any witnesses to support their request for an injunction. In fact, Plaintiffs initially took the position that no additional evidence was necessary to grant the permanent injunction, *see* Dkt. No. 558 at 2, and maintained that position until the end of trial. *See* Block Decl. Ex. B (Trial Tr.), at 1379:12–21

6

(Plaintiffs' counsel arguing at the last day of trial that there was no need for an evidentiary hearing). Under Rule 26, a party is not "obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendment; *see Patmont Motor Werks, Inc. v. CSK Auto Inc.*, 2006 WL 2591042, at *3 (D. Nev. Sept. 8, 2006) (ruling that party did not violate Rule 26 by failing to disclose information it did not believe it was required to use).

Consistent with this view of Rule 26(a), district courts have permitted parties to rely on witnesses at a permanent injunction hearing who were not on their initial disclosures. For instance, the district court in *i4i Ltd. P'ship v. Microsoft Corp.* ruled that Rule 26(a) does not require premature disclosure of witnesses who are only relevant to issues related to a permanent injunction. 670 F. Supp. 2d 568, 601 n.9 (E.D. Tex. 2009), *withdrawn and superseded on rehearing by* 598 F.3d 831 (Fed. Cir. 2010), *aff'd* 564 U.S. 91 (2011). In denying a motion to strike a witness not included on the sponsoring party's initial disclosures from testifying about the ease of complying with an injunction, the court explained that "[t]he first instance where the information . . . became relevant to these proceedings was when [plaintiff] filed its motion for permanent injunction" and "the information provided . . . is highly relevant to the" motion for permanent injunction. *Id.* Recognizing the soundness of this approach, the Federal Circuit relied on the new witness's information in affirming a modified permanent injunction on appeal. *See* 598 F.3d at 863–64 .

Likewise in *GTE Prods. Corp. v. Kennametal, Inc.*, the district court allowed a party to submit evidence from five new witnesses in connection with a hearing for a permanent injunction. 772 F. Supp. 907, 920 (W.D. Va. 1991). The district court rejected the argument that this was improper, calling it a "spurious objection," and stating that "[i]njunctive relief is an equitable remedy to be granted by the Court, not a jury. The issue was briefed and argued at a post-trial hearing at which time it was entirely appropriate for [the party] to put forth relevant evidence." *Id.* at 920 n.6; *see also Smith & Nephew, Inc. v. Arthrex, Inc.*, 2010 WL 2522428, at *3 n.1 (E.D. Tex. June 18, 2010) (denying motion to strike declarations where "declarations are relevant for consideration of the *eBay* factors and that disclosing these declarations during briefing on the permanent injunction is not contrary to the local rules or to this Court's docket control order").

7

The same analysis governs here. Mr. Blaich, Mr. Brandt, and Mr. Woog will all testify about issues specific to Plaintiffs' motion for a permanent injunction, and in response to NSO's assertion that there are disputed issues of fact that need to be resolved. Mr. Blaich will present evidence about NSO's recent activity on Plaintiffs' platforms, which has continued into 2025. Mr. Brandt will testify in response to NSO's recent admission that its spyware continues to allow for the collection of WhatsApp messages from WhatsApp users. This information was not relevant to the proceedings until NSO put forward new evidence that it used to argue that Plaintiffs were not suffering ongoing harm, and the Court scheduled an evidentiary hearing to consider that evidence. Mr. Woog will present evidence about Plaintiffs' efforts to determine the identities of the WhatsApp users who were attacked by NSO in May 2019, as NSO claims that the targets of its spyware are relevant to the public interest in an injunction. *See* Dkt. No. 759-2 at 15 (touting use of spyware in "sensitive law-enforcement, military, and intelligence operations"). Plaintiffs have produced extensive document discovery about this work, and Mr. Woog answered questions about it during his deposition. While it remains Plaintiffs' view that the undisputed facts suffice to enter the injunction sought, now that the Court has agreed with NSO's proposal to hear evidence, the testimony of Mr. Blaich, Mr. Brandt, and Mr. Woog will be directly responsive to NSO's evidentiary showing and thus relevant to the issues that the Court will decide. These witnesses should not be barred from testifying.

None of the cases cited by NSO has any bearing on this analysis. Though NSO's primary argument is that Plaintiffs failed to comply with Rule 26(a)'s requirements for disclosure of fact witnesses, *see* Dkt. No. 770 at 5, the cases it cites deal with unrelated provisions of Rule 26. In *Estate of Brown v. Lambert*, the district court ordered a party to produce a reinsurance policy that was relevant at the outset of the case. 2020 WL 3606392, at *6 (S.D. Cal. July 2, 2020). By contrast here, the obligation to disclose injunction-related witnesses unrelated to the attack vectors used in 2018 and 2019 arose only after the trial, when the Court ordered the parties to exchange witness lists before the forthcoming hearing. The district court in *Skydive Arizona, Inc. v. Quattrochi*, another case cited by NSO, excluded a post-trial declaration from a previously undisclosed expert that directly responded to the trial testimony of the opposing party's expert. 704 F. Supp. 2d 841, 847 (D. Ariz. 2010), *rev'd in part*, 673 F.3d 1105 (9th Cir. 2012). Putting aside the question of whether Rule 26's

8

expert disclosure regime even applies to post-trial proceedings,[2] neither of these cases supports NSO's position: that Plaintiffs were obliged to disclose fact witnesses before Plaintiffs intended to rely on them to support their claims or defenses, and before NSO disclosed new facts about its current activities.

**C.     Plaintiffs' Disclosure of Witnesses Was Substantially Justified and Harmless**

Even under NSO's view of Rule 26, Plaintiffs' disclosure of purportedly "undisclosed" witnesses was both "substantially justified" and "harmless." Fed. R. Civ. P. 37(c)(1). In order to determine whether a disclosure was "substantially justified" or "harmless," a court may consider: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). Under this framework, there is no basis to preclude any of Plaintiffs' witnesses from providing testimony at the forthcoming hearing.

***Andrew Blaich.*** Plaintiffs intend to call Mr. Blaich, a security engineer at Meta, to testify about NSO's more recent activity on Plaintiffs' services and throughout the course of this litigation. As explained above, Plaintiffs did not previously call Mr. Blaich as a witness since much of the activity he will describe occurred after the 2018 to 2020 period at issue in the damages-only trial. Additionally, his testimony responds to arguments only recently made by NSO relating to the existence of ongoing harm. Moreover, Mr. Blaich will be testifying about what Plaintiffs have discovered about *NSO's own ongoing activity*, so there should be no surprise to NSO. *See S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 734 (N.D. Cal. 2011) (concluding that failure to disclose witnesses prior to filing for partial summary judgment was substantially harmless and justified because witness addressed issues "which cannot be considered a surprise").[3] Plaintiffs intend to provide

---

[2]  *See, e.g.*, *May v. Brunton*, 2014 WL 6086255, at *3 (S.D. Cal. Nov. 13, 2014) (declining to strike expert declaration because "the purpose of Rule 26(a)(2)—which was designed to prevent ambush *at trial*—is not implicated here"); *MVT Servs., LLC v. Great W. Cas. Co.*, 2021 WL 1169681, at *1 (D.N.M. Mar. 26, 2021) ("[T]he Court is not convinced that the disclosure of a post-trial expert on attorneys' fees was required under Rule 26." (citation modified)).

[3]  Two security engineers listed on Plaintiffs' initial disclosures who could have discussed these ongoing investigations (Drew Robinson and Michael Scott) are no longer employed by Plaintiffs. As NSO has noted earlier in these proceedings, a party can substitute for an unavailable witness

any previously unproduced evidence that Mr. Blaich will rely upon three weeks before the evidentiary hearing.

**Lander Brandt.**  Plaintiffs intend to call Mr. Brandt, a security engineer focused on WhatsApp, to respond to new statements submitted by NSO in declarations attached to its opposition brief.  Specifically, NSO's declarants stated that NSO continues to collect WhatsApp messages from the mobile devices of WhatsApp users but no longer collects them *through* WhatsApp's servers.  *See, e.g.*, Dkt. No. 605-2 ¶¶ 8–10.  NSO failed to produce any documentary evidence, let alone computer code, showing how it achieves this data collection and refused to let their witnesses answer questions about NSO's current operations at their depositions.  *See, e.g.*, Block Decl. Ex. A (Gazneli Dep.), at 271:9–20.  Without evidence in the discovery record on this point, Plaintiffs intend to call Mr. Brandt, who has relevant knowledge of WhatsApp's security architecture, to explain the methods required by NSO to collect WhatsApp messages and other data from mobile devices.  Here too, NSO surely knows the methods it uses to surveil WhatsApp users, even if they refused to produce discovery about those methods, so this testimony should not come as a surprise.  Plaintiffs intend to provide any previously unproduced evidence that Mr. Brandt will rely upon three weeks before the evidentiary hearing.

**Carl Woog.**  Plaintiffs intend to call Mr. Woog to testify about Plaintiffs' understanding of the identity of the victims of NSO's May 2019 attack on WhatsApp, in order to rebut NSO's repeated admonition that its technology is used to collect private information from "terrorists and criminals." Dkt. No. 759-2 at 15.  NSO's assertion that it "never had any opportunity to examine Mr. Woog about" this topic, Dkt. No. 770 at 8, is false.  NSO deposed Mr. Woog for over seven hours and asked numerous questions about the identities of the victims of NSO's attack.  At his deposition, Mr. Woog explained that NSO has "attacked, based on the information we have learned, over 100 members of civil society, including journalists, [and] lawyers . . . ."  Block Decl. Ex. C (Woog Dep.), at 361:23–362:1.  Mr. Woog also explained that WhatsApp has "policies that we enforce against certain type[s]

---

when the witness's unavailability is outside of the sponsoring party's control. *See* Dkt. No. 480; *see also Kaepplinger v. Michelotti*, 2021 WL 2633312, at *5 (N.D. Ill. June 25, 2021) (finding that substitution of witnesses was substantially justified because witness's unavailability was "not within Plaintiffs' control").

of legal activity such as terrorist organizations, and [we] respond to those challenges with the information we have available." *Id.* at 72:8–12.

*   *   *

The fact that each of Plaintiffs' fact witnesses will testify live at the August 28, 2025 hearing further mitigates any prejudice to NSO based on purported surprise. *See Acumed LLC v. Stryker Corp.*, 2007 WL 4180682, at *2 (D. Or. Nov. 20, 2007) (allowing party to submit new evidence in connection with motion for permanent injunction, because other party had sufficient opportunity to rebut submissions at hearing), *aff'd*, 551 F.3d 1323 (Fed. Cir. 2008). By contrast, NSO will rely on self-serving and conclusory declarations from its executives. This selective disclosure aligns with NSO's approach to the entire litigation: disclose only what is helpful to them and conceal everything else. This Court has previously concluded that "terminating sanctions may be reasonably warranted given that defendants' discovery non-compliance goes to the key facts at issue in this case," Dkt. No. 494 at 9, and remarked that it was "really sort of flummoxed by the defense position primarily on how this case should be tried given the evidence that has been—that has not been shared with the plaintiff." Block Decl. Ex. D (Pretrial Conf. Tr.), at 31:19–21. At the August 28, 2025 hearing, Plaintiffs' witnesses will present evidence about NSO's ongoing conduct on Plaintiffs' platforms— and NSO has not produced any discovery on this topic. Plaintiffs should not be punished for trying to present evidence that NSO has concealed.

## II. The Court Should Deny NSO's Motion to Strike Plaintiffs' Expert Witness

The Court should also deny NSO's renewed *Daubert* motion to exclude testimony from Plaintiffs' expert witness, Dr. Vance. Plaintiffs anticipate that Dr. Vance will testify on the same topics as NSO's policy expert, Mr. Minkler. The Court previously excluded NSO's policy experts (including Mr. Minkler) from offering "generalized testimony regarding law enforcement, military, and intelligence purposes that are not sufficiently tethered to the conduct alleged in this case," and thus ruled that there was no need for Dr. Vance to offer rebuttal testimony. Dkt. No. 686 at 13–14. Now, NSO lists Mr. Minkler as the only witness who will appear in person at the August 28, 2025 hearing. Dkt. No. 766. The Court should permit Dr. Vance to rebut his testimony.

*First*, the evidentiary hearing does not implicate the core concerns behind Federal Rule of Evidence 702 and *Daubert*. "*Daubert* is meant to protect *juries* from being swayed by dubious scientific testimony. When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (quoting *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012)); *see also F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("There is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial." (citation modified)). In fact, NSO admits that "there is no risk of misleading a jury here." Dkt. No. 770 at 9. There is therefore no reason to police Dr. Vance's expert testimony.

*Second*, NSO's concerns about Dr. Vance's testimony being a "waste of time," *id.*, are misguided. As an initial matter, Dr. Vance will rebut the opinions of Mr. Minkler, NSO's expert. And as a practical matter, Plaintiffs expect that the parties will evenly divide the time allocated to witness testimony, just as the parties evenly divided time at trial. *See* Dkt. No. 684 at 5:12–13 ("So each side will be allotted essentially two days after jury selection and your opening statements. That's nine hours each."). The time for Dr. Vance's direct examination will be deducted from Plaintiffs' time budget and will not limit NSO's ability to use its own time as it sees fit.

*Third*, NSO's motion to exclude Dr. Vance's testimony should be independently rejected. Contrary to Mr. Minkler's lack of relevant experience, Dr. Vance is a leading cybersecurity expert and can speak to the "benefits or harms of Pegasus," Dkt. No. 770 at 9, from that vantage point. *See* Dkt. No. 623-3 at 6–11 (explaining Dr. Vance's qualifications). Many of NSO's criticisms of Dr. Vance's opinions—for instance, that he failed to analyze the benefits of Pegasus to law enforcement—stem not from Dr. Vance's own neglect, but from NSO's failure to comply with its discovery obligations. *See id.* at 23.

*Fourth*, if the Court excludes Dr. Vance from testifying, it should also exclude Mr. Minkler. As set forth in Plaintiffs' *Daubert* motion, Mr. Minkler lacks any first-hand knowledge of the lawful use of Pegasus by U.S. law enforcement agencies, or even the investigatory challenges posed by end-to-end encryption. *See, e.g.*, Dkt. No. 572-3 at 8 ("Mr. Minkler testified that he has no knowledge of Pegasus ever being used by law enforcement in the United States.").

**III.     The Court Should Deny NSO's Motion for Sanctions**

Because Plaintiffs complied with Rule 26, and because any belated disclosure is substantially justified or harmless, there is no basis to sanction Plaintiffs. *See* Dkt. No. 770 at 10–11. In arguing for sanctions, NSO takes issue with Plaintiffs' reservation of rights to update their witness list, and refusal to "withdraw" any witnesses by July 8, 2025. *See id.* at 11. NSO ignores that any lack of finality in Plaintiffs' witness list came from NSO's insistence to disclose witness lists in late June, rather than three weeks before the rescheduled hearing date of August 28, 2025—a date chosen to ensure that *NSO's witnesses* could attend. *See* Dkt. No. 768 at 1.

Moreover, NSO's motion for sanctions fails to comply with Civil Local Rule 7-8(a) (requiring a separately filed motion for sanctions) and Civil Local Rule 37-4(b)(3) (requiring a party seek attorney fees or other costs to "itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed"). NSO's request for sanctions should therefore be rejected.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny NSO's motion.

| | |
|---|---|
| Dated: July 23, 2025 | Respectfully submitted,<br><br>DAVIS POLK & WARDWELL LLP<br><br>By: /s/ Greg D. Andres<br>    Greg D. Andres<br>    Antonio J. Perez-Marques<br>    Gina Cora<br>    Craig T. Cagney<br>    Luca Marzorati<br>      (admitted *pro hac vice*)<br>    DAVIS POLK & WARDWELL LLP<br>    450 Lexington Avenue<br>    New York, New York 10017<br>    Telephone: (212) 450-4000<br>    Facsimile: (212) 701-5800<br>    Email: greg.andres@davispolk.com<br>            antonio.perez@davispolk.com<br>            gina.cora@davispolk.com<br>            craig.cagney@davispolk.com<br>            luca.marzorati@davispolk.com<br><br>    Micah G. Block (SBN 270712)<br>    DAVIS POLK & WARDWELL LLP<br>    900 Middlefield Road, Suite 200<br>    Redwood City, California 94063<br>    Telephone: (650) 752-2000<br>    Facsimile:  (650) 752-2111<br>    Email: micah.block@davispolk.com<br><br>    *Attorneys for Plaintiffs*<br>    *WhatsApp LLC and Meta Platforms, Inc.* |