JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
*jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
*acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:     (213) 443-4355
Facsimile:      (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>            Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>            Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**REPLY IN SUPPORT OF MOTION TO STRIKE UNDISCLOSED WITNESSES FROM PLAINTIFFS' WITNESS LIST FOR AUGUST 28, 2025 EVIDENTIARY HEARING AND FOR SANCTIONS**<br><br>Action Filed: 10/29/2019 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ......................................................................................................... 1

II. BACKGROUND ........................................................................................................... 2

III. ARGUMENT ................................................................................................................ 3

    A. NSO Did Not Rely on "New" Evidence in Its Opposition to a Permanent Injunction. . 3

    B. Rule 37 Requires Exclusion of Plaintiffs' Undisclosed Witnesses. .............................. 6

        1. Plaintiffs Did Not Comply with Rule 26(a). ........................................................... 6

        2. Plaintiffs' Belated Disclosure Was Neither Substantially Justified Nor Harmless. 8

    C. Plaintiffs Do Not Establish Any Need to Call Blaich, Brandt, Woog or Vance. .......... 13

    D. This Sanctions Motion, Including the Request for Monetary Sanctions, Complies with the Local Rules ................................................................................................................ 14

IV. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Roberts*,
 2021 WL 1663783 (D. Mont. Apr. 28, 2021) ............................................................................. 7

*Charlton v. Estate of Charlton*,
 841 F.2d 988 (9th Cir. 1988) .................................................................................................. 14

*Finjan, Inc. v. Proofpoint, Inc.*,
 2015 WL 9900617 (N.D. Cal. Oct. 26, 2015) ........................................................................... 7

*GTE Prods. Corp. v. Kennametal, Inc.*,
 772 F. Supp. 907 (W.D. Va. 1991) ........................................................................................... 7

*i4i Ltd. P'ship v. Microsoft Corp.*,
 670 F. Supp. 2d 568 (E.D. Tex. 2009) ...................................................................................... 7

*Kure Shipping S.A. v. La. Pac. Corp.*,
 No. 4:98-cv-00648-PJH, Dkt. 215 (N.D. Cal. Feb. 1, 2001) ................................................... 12

*Microsoft v. Search People Ent. Ltd.*,
 2025 WL 1666239 (W.D. Wash. 2025) .................................................................................. 15

*Moltan Co. v. Eagle–Picher Indus.*,
 55 F.3d 1171 (6th Cir. 1995) .................................................................................................. 14

*Nunes v. County of Stanislaus*,
 2020 WL 1324808 (E.D. Cal. Mar. 20, 2020) .......................................................................... 7

*Ollier v. Sweetwater Union High Sch. Dist.*,
 768 F.3d 843 (9th Cir. 2014) .................................................................................................... 6

*S.F. Baykeeper v. W. Bay Sanitary Dist.*,
 791 F. Supp. 2d 719 (N.D. Cal. 2011) ...................................................................................... 9

*Skydive Ariz., Inc. v. Quattrochi*,
 704 F. Supp. 2d 841 (D. Ariz. 2010) ........................................................................................ 6

*United States v. Microsoft*,
 253 F.3d 34 (D.C. Cir. 2001) .................................................................................................. 14

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6) ............................................................................................................ 12

Fed. R. Civ. P. 37 ................................................................................................................. *passim*

## I. INTRODUCTION

Rule 37(c)(1) is unambiguous: It provides that "[i]f a party fails to provide information or *identify a witness* as required by Rule 26(a) or (e), the party is not allowed to use that information *or witness* to supply evidence . . . *at a hearing*." Rule 37 contains no exception for post-trial hearings, and Ninth Circuit case law is abundantly clear that Rule 26 applies to post-trial motions. NSO's motion should therefore be granted.

Plaintiffs' opposition asserts, over and over, that Plaintiffs are justified in disclosing new witnesses because they respond to two pieces of supposedly "new evidence" introduced by NSO in its opposition to the Permanent Injunction Motion: (1) that NSO does not have any installation vectors that interact with WhatsApp servers, and (2) that Pegasus customers can access WhatsApp messages on target devices. Rules 26 and 37 do not provide an exception for responding to new facts raised in an opposition by a defendant. But even if they did, neither of these facts is remotely "new." First, NSO's CEO Yaron Shohat testified unequivocally in his 2024 deposition that NSO no longer has any installation vectors that involve any interaction with WhatsApp servers. Second, Pegasus has *always* had the functionality of allowing collection of WhatsApp messages, a fact emphasized over and over at trial by Plaintiffs' counsel, who called it "spying" in his closing argument. NSO has *never* said that Pegasus ever lost the functionality to collect WhatsApp messages. This functionality is a core part of how Pegasus helps governments around the world combat terrorism and serious crime. The collection of WhatsApp messages by NSO's customers is also irrelevant to this case and to any potential injunction, because such messages are collected from the phones of targets, not from WhatsApp servers, and are never transmitted over WhatsApp servers at any point in the collection process. Therefore, this functionality of Pegasus was not found by this Court to violate CFAA or CDAFA—indeed, **that functionality has never been accused of violating CFAA or CDAFA**. Only the very beginning of the Pegasus installation process, with respect to three versions of Pegasus in use for parts of 2018 to 2020, was held to violate CFAA and CDAFA.

Plaintiffs also claim to have complied with Rules 26 and 37, apparently arguing (without expressly saying so) that their disclosure of witnesses on June 26, 2025, is an allowable supplement

to their initial disclosures. But Plaintiffs' disclosure is untimely; if a party could supplement its initial disclosures at any time simply by presenting a list of undisclosed witnesses, there could never be any violation of Rule 37. This is not the law, and courts routinely find violations of Rule 37 in circumstances no different than those here.

Astonishingly, Plaintiffs' opposition discloses that Plaintiffs also intend to make *another* production of previously undisclosed documents three weeks before the hearing. (Opp. at 9:23-10:2, 10:14-16.) This would be unfairly prejudicial to Defendants unless the Court reopens discovery in this case, which the Court should not do. The Court should make clear that documents from any such late production may not be used at the evidentiary hearing or in any briefing. The extremely belated timing of such production (which Plaintiffs do not even attempt to explain or justify[1]) gives Defendants no ability to seek further discovery about the subject of these documents, to inquire into their provenance or completeness, to learn whether other documents related to the produced documents are being withheld by Plaintiffs (as has happened throughout this case), or to take depositions about these documents before trial. Plaintiffs do not say what these documents are, why Plaintiffs withheld them until three weeks before the hearing, why they were not produced before the discovery cutoff, or what legal authority allows them to violate this Court's deadlines so egregiously. The fact that Plaintiffs' witnesses will be subject to (effectively blind) cross-examination on this new information does not come close to curing the unfair prejudice to Defendants. The Court, in addition to striking Plaintiffs' undisclosed witnesses, should state that the time to produce documents has long passed and that Plaintiffs may not sandbag Defendants with a new document production about which Defendants had no opportunity to take discovery.

## II.   BACKGROUND

Plaintiffs disclosed their five witnesses (one now withdrawn) on June 26, 2025: Andrew Blaich, Carl Woog, Lander Brandt, Chris Rolfe (withdrawn), and Anthony Vance. Mr. Blaich and Mr. Woog were never disclosed pursuant to Rule 26. When Defendants sought to take Mr. Brandt's deposition, Plaintiffs' counsel represented that he would not be a percipient witness and that they

---

[1] Plaintiffs pointedly do not say, and the Court should not assume, that such documents describe events after the discovery cutoff.

2

would provide an expert report before calling him; Defendants forewent Mr. Brandt's deposition in reliance on that statement. Defendants moved to exclude Dr. Vance's testimony on relevance and foundational grounds; the Court granted that motion for relevance and did not address the other grounds to exclude Dr. Vance. Dr. Vance is an academic who has never testified before as an expert, and whose area of study is far afield from the proposed subject matter of his testimony.

On July 23, Plaintiffs disclosed to NSO and the Court that they intended to produce "any unproduced evidence that [Mr. Blaich and Mr. Brandt] will rely upon three weeks before the evidentiary hearing." The discovery cutoff was in September 2024, and Plaintiffs have made no effort to try to justify why they should be allowed to produce and use new evidence nearly one year later. Of course, Rule 37(c)(1) applies not only to undisclosed witnesses, but "information" as well.

### III.    ARGUMENT

#### A.    NSO Did Not Rely on "New" Evidence in Its Opposition to a Permanent Injunction.

Plaintiffs' opposition hinges on the Court's believing that two facts in NSO's opposition to the motion for preliminary injunction are "new." But neither of those facts is "new" in any way.

*First*, the fact that NSO no longer has any Pegasus installation vector that uses Plaintiffs' servers is not remotely "new" or "previously undisclosed." (Opp. at 3:15-4:9.) Defendants' CEO, Yaron Shohat, testified unequivocally at his deposition that NSO no longer has *any* "installation vector for Pegasus . . . that uses [Plaintiffs'] technology in any way":

> Q.    Do defendants have an installation vector for Pegsaus today that uses Whatsapp technology in any way?
>
> A.    No.
>
> Q.    Do defendants have an installation vector for Pegsaus today that uses Facebook technology in any way?
>
> A.    No.

(Dkt. No. 396-5, Exh. H at 51:23-52:2). Mr. Shohat gave that testimony on August 29, 2024,

approximately *ten months* before NSO filed its opposition.

The fact that Plaintiffs claim that Mr. Gazneli's declaration testimony about Pegasus' installation vectors constitutes new evidence, while failing to even mention Mr. Shohat's deposition testimony (which was specifically cited in the permanent injunction opposition), shows the weakness of Plaintiffs' position. Mr. Gazneli's declaration simply reiterates Mr. Shohat's testimony. The fact that Mr. Shohat rather than Mr. Gazneli had previously testified about this fact does not render the fact "new." That Mr. Gazneli believed, at the time of his deposition, that his license to provide export-controlled information did not permit him to answer a question about the then-present state of NSO's installation vectors does not in any way erase from the record the fact that NSO's CEO, Mr. Shohat, provided the same information at his deposition. Therefore, the fact that no Pegasus installation vector uses WhatsApp or Facebook technology in any way is not a "new fact" and does not justify Plaintiffs' eleventh-hour disclosure of previously undisclosed witnesses (and apparently now a new document production as well).

***Second***, the fact that Pegasus collects WhatsApp messages from users is also not remotely "new." (Opp. at 4:10-21.) Plaintiffs alleged in their complaint that Pegasus could collect WhatsApp messages, including the iOS version of Pegasus that did not use WhatsApp servers in any way. (Dkt. 1 at ¶ 24.) Plaintiffs also offered several trial exhibits, produced by Defendants, that showed that the functionality of Pegasus includes the collection of WhatsApp messages. (PTX-59 at ¶ 2.1 ("[Pegasus can m]onitor a multitude of applications, including … WhatsApp"); *see also* PTX-9 at 4.) And Plaintiffs' counsel relied heavily on this fact in closing argument, saying that it constituted "spying" on WhatsApp users. (*E.g.,* May 6, 2025 Trial Tr. at 1338:13-16 ("Mr. Akrotirianakis asked for a definition of spying. This is what Pegasus does, and it's in Exhibit 59. Ask to see it. This is what spying is.") Pegasus's collection of WhatsApp messages is not a new fact, because all the documentary information produced by Defendants about the functionality of Pegasus touts this as a key feature, and Defendants *have never stated or suggested that Pegasus ever stopped collecting WhatsApp messages*. Further, Defendants never refused to answer any questions about this topic. It is not a new fact in any way.

Moreover, the fact that versions of Pegasus that do not interact with WhatsApp servers can

4

collect WhatsApp messages should not be relevant to any issue in the preliminary injunction because it is unrelated to the issues in the case. The collection of WhatsApp messages from the devices of NSO's customers' targets has never been held to be unlawful. WhatsApp servers were only ever used in the initial "handshake" steps of the process, whereby NSO's customers would install the Pegasus agent on the devices of their targets. The extraction of WhatsApp messages from the phones of terrorists and criminals by law enforcement agencies has never involved any transmittal of information over WhatsApp servers. This functionality was not at issue in the case, and certainly was never held to violate CFAA or CDAFA. Because this issue is irrelevant, it cannot justify Plaintiffs' attempt to call new previously undisclosed witnesses or use new documents.

The fact that Defendants' witnesses were not legally authorized to answer a small number of questions at their depositions is an immaterial distraction. It has nothing to do with the issues in this motion because the two facts on which Plaintiffs rely (that Pegasus installation vectors since the Hummingbird vectors have nothing to do with WhatsApp servers, and that Pegasus can collect WhatsApp messages from mobile devices) are not new and were known to Plaintiffs during discovery and at all times since.

Moreover, the Court limited factual discovery to a window of approximately two years: April 29, 2018, through May 10, 2020. (Dkt. 292 at 4:4.) As the Court well knows, Defendants obtained limited licenses from Israel's Defense Export Control Agency to allow Defendants' employee witnesses to provide testimony about this time period. The Court's Order limiting discovery specifically provided Plaintiffs with the opportunity to return to the Court and request an expansion of this discovery period if "plaintiffs are able to prove that any attack lasted beyond that timeframe." (Dkt. 292 at 4:4-7.) *Plaintiffs never did.* Plaintiffs cannot now be heard to complain that Defendants failed to provide evidence as to certain time periods, having never proven (or even suggested, at least until its July 23, 2025 opposition to this motion) that any NSO attack on its servers lasted beyond that timeframe, and never having asked the Court to expand the allowable time period for which discovery should be had. Plaintiffs cannot now claim that Defendants' witnesses adherence to the Court's order limiting the allowable discovery period somehow allows them to identify and call previously undisclosed witnesses in violation of Rules 26 and 37.

**B.     Rule 37 Requires Exclusion of Plaintiffs' Undisclosed Witnesses.**

**1.     Plaintiffs Did Not Comply with Rule 26(a).**

Even if Defendants had cited "new" facts in its opposition to the permanent injunction—which they did not—that would not relieve Plaintiffs of their burden to comply with Rule 26(a). Plaintiffs argue that Rule 26(a) does not apply to post-trial remedies motions (Opp. 6:20-7:1), but the law is squarely to the contrary. By definition, all post-trial motions deal with remedies, not claims or defenses (because claims and defenses are resolved at trial), but it is settled law that Rules 26 and 37 apply to post-trial remedies motions. Defendants set forth this settled law in their motion, and Plaintiffs do not address it. For example, in *Skydive Ariz., Inc. v. Quattrochi*, 704 F. Supp. 2d 841, 846–47 (D. Ariz. 2010), the Court excluded an effort to introduce a previously undisclosed witness in connection with a post-trial motion that sought fees and increased damages, calling it "highly unorthodox, completely inappropriate, and mak[ing] a mockery of the Rules."

Plaintiffs next argue that they had no obligation to disclose witnesses or documents that they did not intend to use (Opp. 7:2-6), but it is preposterous for Plaintiffs to contend that they did not previously intend to call these witnesses. Plaintiffs sought a permanent injunction in their Complaint. Rule 26 gives rise to an obligation to disclose witnesses a party believes will support its case, which here included a request for injunctive relief. Plaintiffs imply that they did not anticipate needing to call these witnesses until the date they disclosed them June 26, 2025. But this is inexcusable.[2] Essentially, Plaintiffs are arguing that they never thought about which witnesses they would want to call to testify at an evidentiary hearing in support of a permanent injunction. That cannot excuse a failure to disclose witnesses, especially when it has caused massive prejudice to Defendants in the form of foregoing those witnesses' depositions.

The Court should not permit Plaintiffs to "indulge in gamesmanship with respect to" witness disclosure, especially mere weeks before the hearing at which those witnesses might testify. *Ollier*

---

[2] Plaintiffs' citation to the advisory committee's notes is unavailing. While the notes provide that a party does not need to disclose witnesses it does not intend to use, it also imposes a requirement to supplement *when* a party determines that it may use a witness. It is implausible that Plaintiffs did not know it may want to use these witnesses at the time they filed their Permanent Injunction Motion on February 24, 2025, if not long before.

*v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) (internal quotation marks omitted). Courts do not hesitate to strike witnesses where, as here, there is no substantial excuse for an "undisputedly last-minute [witness] disclosure." *Adams v. Roberts*, 2021 WL 1663783, at *2 (D. Mont. Apr. 28, 2021); *see, e.g.*, *Nunes v. County of Stanislaus*, 2020 WL 1324808, at *4 (E.D. Cal. Mar. 20, 2020) (excluding witnesses whom "Plaintiff waited to disclose . . . until four months prior to trial"); *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9900617, at *3 (N.D. Cal. Oct. 26, 2015) (excluding witnesses whom party "ha[d] known about" for months yet were only "disclosed at the eleventh hour").

In response to all of this on-point authority, Plaintiffs cite only two out-of-circuit district court cases, one of which is 35 years old. Neither case is relevant or persuasive. In *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 601 n.9 (E.D. Tex. 2009), the *plaintiff* moved to exclude a *defense* witness who would testify about the "ease of compliance" with an injunction. In those circumstances, the district court explained that "[t]he first instance where the information in [the witness'] declaration became relevant to these proceedings was when [plaintiff] filed its motion for permanent injunction including its proposed injunctive language." *Id.* The same is not true here, where Plaintiffs have known about their claim for injunctive relief (and all of the elements needed to establish that claim) since the complaint was filed.[3]

The other case Plaintiffs cite, *GTE Prods. Corp. v. Kennametal, Inc.*, 772 F. Supp. 907 (W.D. Va. 1991), did not even mention Rule 26. It concerned affidavits—not live testimony—submitted "[i]n support of [a] request for a stay" pending appeal, not a permanent-injunction motion. *Id.* at 920. And the court rejected an objection by the plaintiff—not the defendant—that the defendant could not "place testimony in the record after the trial has been completed." *Id.* at 920 n.6. That has no bearing on the issue here. NSO does not object to the mere submission of testimony after trial. But this Court ordered an evidentiary hearing on Plaintiffs' motion for a permanent injunction, and that hearing is subject to Rule 26's disclosure requirements. Nothing in

---

[3] Plaintiffs wrongly state the Federal Circuit "[r]ecognized the soundness of this approach." (Opp. at 7:16-17.) The district court's Rule 26 ruling was not appealed, so the appellate court had no occasion to consider its propriety.

*GTE* permits Plaintiffs to call live witnesses at that hearing whom Plaintiffs did not disclose as required by Rule 26.

### 2. Plaintiffs' Belated Disclosure Was Neither Substantially Justified Nor Harmless.

Because Plaintiffs did not disclose their new witnesses as required by Rule 26(a), Rule 37(c)(1) requires exclusion unless Plaintiffs' failure to disclose those witnesses was "substantially justified" or "harmless." That is not the case for any of Plaintiffs' undisclosed witnesses.

**Mr. Blaich.** It is undisputed that Mr. Blaich was never disclosed to Defendants until June 26, 2025. Plaintiffs intend to call Mr. Blaich to testify about "NSO's more recent activity" "throughout the course of this litigation." Plaintiffs also admit that much (but not all) of the activity "he will describe occurred after the 2018 to 2020 period at issue in the damages-only trial." In other words, Mr. Blaich's testimony will include his interpretation of NSO activity for times including 2018-2020, as well as NSO activity prior to the discovery cutoff. Plaintiffs also state they intend to produce documents related to Mr. Blaich's testimony three weeks before the evidentiary hearing." (Opp. at 9:23-10:2.)

Based on Plaintiffs' own statements in their Opposition, the belated disclosure of Mr. Blaich is not substantially justified. If Plaintiffs believed they had relevant evidence about NSO's conduct after 2020, they should have produced it in discovery, and they offer no explanation for why they did not. Plaintiffs give no reason as to why Mr. Blaich was not previously disclosed pursuant to Rule 26; Plaintiffs knew they would be seeking an injunction, and Plaintiffs amended their Rule 26 disclosures on November 30, 2023, and again on August 2, 2024, without including Mr. Blaich.[4] The failure to disclose was not harmless; Defendants would have taken Mr. Blaich's deposition had he been disclosed. The threatened new document dump is also not harmless; Defendants will have no opportunity to measure the authenticity and completeness of Plaintiffs' document production on

---

[4] Plaintiffs cannot say they made their disclosures in anticipation of a trial that they knew would not contain any injunctive relief issues, because at all times during discovery, the Court had not yet decided that the jury trial was not to include any evidence or argument relating to injunctions; that ruling came just a few days before the April 28, 2025 start of trial. Mr. Blaich, like Plaintiffs' other belatedly identified witnesses, were required to be disclosed during the discovery period.

the subject matters covered, including to test whether Plaintiffs are simply cherry-picking helpful documents while withholding unhelpful ones, as they have done throughout the case.

Plaintiffs claim that Mr. Blaich's testimony should be allowed because it concerns his interpretation of NSO's ongoing activity. There is no exception in Rule 37 for witnesses testifying about the opposing party's activity. The case of *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719 (N.D. Cal. 2011), does not hold otherwise. In that case, the court allowed declarations from two previously undisclosed witnesses about the subject of their own uses of San Francisco Bay, not those of the defendant, in order to establish the association's standing to bring the claim. *Id.* at 734. The case does not hold that witness testimony about an opposing party's actions is somehow exempt from Rules 26 and 37. Nor does the case hold that disclosures are not required if the witnesses' testimony will not be a surprise to the opposing party, as Plaintiffs suggest. Such a standard would be totally unworkable for courts to enforce. And to be clear, Mr. Blaich's testimony *will* be a surprise to Defendants. Because no version of Pegasus uses Plaintiffs' servers in any way (as has been the case for many years), Defendants have no idea what Mr. Blaich plans to testify. This motion was filed to protect Defendants against such unfair surprise.

Finally, based on Plaintiffs' description, it appears that Mr. Blaich's testimony will be expert testimony in disguise. Mr. Blaich apparently intends to testify to his interpretation of computer data, which is unquestionably a subject matter requiring specialized expertise. Even if Mr. Blaich is an employee of Meta and was not specially retained or specially employed to be an expert, his testimony would still need to have been timely disclosed pursuant to Rule 26(a)(2)(C), giving Defendants notice of a summary of the facts and opinions to which he is expected to testify.

**Mr. Brandt.** Defendants' concerns about the undisclosed expert nature of Mr. Blaich's testimony are equally applicable to Mr. Brandt. In 2024, Plaintiffs' counsel promised that if they were to call Mr. Brandt as a witness, they would first provide an expert disclosure, thus recognizing that any testimony he may give was expert in nature. Craig Decl. Exh. 5 (Dkt. No. 771-5). No such disclosure was provided by Plaintiffs' counsel—then or now—and Defendants did not to take Mr. Brandt's deposition in reliance on counsel's representation. Plaintiffs' description of Mr. Brandt's expected testimony (and document production) in their opposition brief confirms the

9

1  expert nature of such testimony: Plaintiffs describe Mr. Brandt as testifying about "the methods
2  required by NSO to collect WhatsApp messages and other data from mobile devices."  Mr. Brandt
3  has never worked for NSO, so he has no percipient knowledge about NSO's "methods" for
4  collecting WhatsApp messages.  Any testimony from Mr. Brandt about what NSO is "required" to
5  do (or more precisely, how Pegasus allows NSO's government agency customers) to collect
6  information from mobile devices would be entirely Mr. Brandt's opinion, not percipient testimony.

7         Plaintiffs try to justify their election to call Mr. Brandt to testify without the promised expert
8  disclosure by couching his testimony as responsive to something NSO *never said*.  Plaintiffs write
9  that "NSO declarants stated that NSO continues to collect WhatsApp messages from the mobile
10 devices of WhatsApp users but no longer collects them *through* WhatsApp servers," and cites to
11 Mr. Shohat's declaration (Dkt. No. 605-2) at paragraphs 8-10.  That is a mischaracterization of Mr.
12 Shohat's declaration.  Pegasus **never** collected WhatsApp messages "through" WhatsApp servers,
13 so no witness for NSO has ever said that Pegasus "no longer" collects WhatsApp messages
14 "through WhatsApp servers"—such testimony would make no sense.  Mr. Shohat's declaration
15 says nothing about the manner by which WhatsApp messages get transmitted from the target device
16 to NSO's customers, but the record is clear that such activity takes place through third-party servers,
17 not through WhatsApp servers. (May 2, 2025 Trial Tr. at 909:3-8.)  The record is clear that
18 WhatsApp servers were used only in the initial "handshake" stages of installing Pegasus on target
19 devices—which is the only conduct for which NSO was held liable in this case—and were never
20 involved in any way in the ultimate collection of WhatsApp messages from target devices. (Order
21 re Motions for Summary Judgment and Motion for Sanctions, Dkt. No. 494 at 11-12.)  Nothing in
22 Mr. Shohat's declaration or in any other testimony or evidence in the case suggests otherwise.

23        ***Mr. Woog.***  It is undisputed that Mr. Woog was never disclosed pursuant to Rule 26.  That
24 is sufficient reason to exclude his testimony, but it is not the only one.  Plaintiffs describe Mr.
25 Woog's expected testimony as about "Plaintiffs' efforts to determine the identities of the [target
26 users]."  Mr. Woog testified at deposition that the only thing Plaintiffs did to determine the identities
27 of the target users was to obtain a list of phone numbers, match them to whatever name information
28 those users provided when signing up for Plaintiffs' services, and give that list to its Canadian

partner Citizen Lab. While Mr. Woog was aware of several things that Plaintiffs *might* have done to determine the identity of target users, he did not have any first-hand knowledge of *what was actually done* and did not know whether *anyone* actually did *anything*. (Supp. Craig Decl. Exh. 8, Woog Tr. 182:16-193:5.) After mentioning various things that "may" and "could" have happened, Mr. Woog testified: "Q. So you didn't take the steps, and you don't know really whether anybody took the steps because you didn't do them, right? A. I did not do those steps, sir. Q. Okay, and you don't know whether anybody else, in fact, did those things, right? A. I do not recall the details there." (*Id.* at 188:3-9.) Thus, any testimony from Mr. Woog about the target users could only be what others (most likely Citizen Lab) told him about what was done to ascertain the identities of the target users. That is inadmissible hearsay.

Allowing such testimony would also be massively unfair to Defendants considering the Court's discovery rulings. Defendants moved the Court to compel documents withheld by Plaintiffs about (1) their "communications with third-party witness Citizen Lab, and (2) plaintiffs' internal documents relating to their identification of the users allegedly targeted by defendants' software" (Dkt. No. 240), and the Court denied the Motion. (Dkt. No. 292 at 5-7.) Defendants also moved the Court for issuance of a letter rogatory to take discovery from Citizen Lab (Dkt. No. 288); Plaintiffs and Citizen Lab opposed that motion, which the Court ultimately denied. (Dkt. No. 308 at 3:27-4:4.) In connection with those motions, Plaintiffs affirmatively represented to the Court that they ***would not rely*** on the target users' identities to support their claims. (Dkt. No. 300.) This Court relied on that representation in denying NSO's motions: "Based on that representation, the court concludes that further discovery related to … the identity of the alleged victims would not be proportional to the needs of the case at this time. *At the time of trial, the court will account for this limitation when determining the admissibility of evidence.* (Dkt. No. 308 at 3:27-4:4.) This judicially estops Plaintiffs from taking a contrary position now. The Court should not permit Plaintiffs to (1) produce only selected documents about the work of identifying the target users while withholding others; (2) successfully prevent Defendants from obtaining any information from Citizen Lab about its work in identifying the target users through their representations to the Court; and (3) now offer Mr. Woog to testify about what Plaintiffs supposedly did to identify target users.

The fact that Defendants searched the public record to learn about the terrorist and criminal activities of the persons on Plaintiffs' list and included that in their preliminary injunction opposition does not open the door to allow Mr. Woog to provide undisclosed hearsay in response.

Mr. Woog was not disclosed at all pursuant to Rule 26, and he was designated as Plaintiffs' witness only for one Rule 30(b)(6) area of examination: Plaintiffs' internal and external statements concerning the WhatsApp vulnerabilities at issue in this case. He should not be allowed to testify now, particularly not to hearsay about an area where Plaintiffs persuaded the Court to deny discovery to Defendants.

**Dr. Vance**. Plaintiffs argue that *Daubert* motions are unnecessary in bench trials, but that is also false. This Court has indeed excluded expert witnesses in bench trials before. *E.g.*, *Kure Shipping S.A. v. La. Pac. Corp.*, No. 4:98-cv-00648-PJH, Dkt. 215 (N.D. Cal. Feb. 1, 2001) (granting in part several motions to exclude expert witnesses in bench trial).

Exclusion is appropriate here because, as explained in more detail in Defendants' *Daubert* motion, Dr. Vance's testimony is unreliable and a waste of time. He lacks any foundation to rebut Mr. Minkler, a former U.S. Attorney, about law enforcement's need for tools such as Pegasus that can assist law enforcement in overcoming the investigative challenges posed by end-to-end encryption. Dr. Vance is a business professor who has never worked in law enforcement. He is not a "leading cybersecurity expert," as Plaintiffs claim. He has never researched, published on, or testified about law enforcement uses of surveillance technology like Pegasus. (Dkt. No. 509 at 6:27-7:17.) He has never testified as an expert at trial; he has served as an expert twice, and his testimony was partially excluded both times for exceeding his narrow expertise. (Dkt. No. 509 at 4.)

Plaintiffs discount Defendants' argument that Dr. Vance's testimony will be a waste of time by arguing that the time will come off their witness clock, but NSO will need to cross-examine Dr. Vance and conduct *voir dire*, which would presumably count against *Defendants'* clock, not Plaintiffs'. The Court should nip this in the bud by excluding Dr. Vance's testimony.

Finally, in their defense of Dr. Vance, Plaintiffs improperly ask the Court to exclude Defendants' sole live witness, former United States Attorney Josh Minkler. A paragraph in an opposition brief is not a motion to exclude, and if Plaintiffs wanted to exclude Mr. Minkler as a

12

1  witness, there were required to have file a noticed motion in order to give Defendants a full
2  opportunity to respond.  That aside, Plaintiffs are entirely wrong that Mr. Minker lacks first-hand
3  knowledge of the investigatory challenges posed by end-to-end encryption.  His expert disclosure
4  provides several examples of these challenges, and he answered questions for hours at his
5  deposition describing his first-hand knowledge in detail.

### C. Plaintiffs Do Not Establish Any Need to Call Blaich, Brandt, Woog or Vance.

In addition to failing to justify their late disclosure of Messrs. Blaich, Brandt, Woog, and Vance, Plaintiffs do not even substantiate the relevance of those witnesses' testimony.  Plaintiffs did not reference any of those witnesses in their motion for a permanent injunction, proving that Plaintiffs did not believe they needed those witnesses' testimony to support the motion.

Beyond the witnesses' irrelevance, permitting them to testify would simply allow Plaintiffs to waste time and "run out the clock."  The Court has allotted four hours for the hearing, which comprises both evidence and argument.  The Court has now scheduled Defendants' Motion for New Trial and Remittitur on the same day, and it is unclear if the hearing on that motion will be part of the allotted four hours.  Even if the parties have four hours devoted to the injunction hearing, that is plainly inadequate for the direct and cross examination of five witnesses, as well as to argue the many factual and legal issues involved.  The more witnesses there are, the less time the parties will have to provide helpful argument.  And Plaintiffs' claim that their witness time will come off their own clock ignores the basic fact that cross-examination of expert witnesses (properly disclosed or not) routinely takes longer than direct examination.  This is particularly true where the witnesses have not been subject to deposition, which will be the case for Mr. Blaich and Mr. Brandt.

Plaintiffs submit several arguments for why they should be allowed to adduce the testimony of witnesses not cited in their motion, none of which withstands scrutiny.  First, Plaintiffs argue that they did not believe an evidentiary hearing was needed, which is why they "did not attach evidence regarding, for instance, the ongoing harm to Plaintiffs."  That is implausible, but even if it is true, it reflects only Plaintiffs' attempt to disregard the clear legal requirements for a motion for permanent injunction.  It has been clear for decades that "[t]he entry or continuation of an injunction requires a hearing." *Charlton v. Estate of Charlton*, 841 F.2d 988 (9th Cir. 1988); *accord*

13

*United States v. Microsoft*, 253 F.3d 34, 101 (D.C. Cir. 2001); *Moltan Co. v. Eagle–Picher Indus.*, 55 F.3d 1171, 1175 (6th Cir. 1995). So Plaintiffs' position was contrary to settled law. Plaintiffs cannot rely on a claimed tactical decision to withhold evidence because—contrary to all existing authority—they wanted to avoid an evidentiary hearing, as an excuse for changing tack and calling undisclosed witnesses after the Court—consistent with all existing authority—ordered a hearing.

Next, Plaintiffs argue that "NSO does not hold themselves to the same standard" that Plaintiffs should not be permitted to introduce new undisclosed witnesses. (Opp. 5:27.) But NSO's witnesses, both live and by declaration (Shohat, Gazneli and Minkler), ***were all disclosed*** pursuant to Rule 26, and were also each referenced in Defendants' Opposition brief. (Dkt. No. 604-2 at 5.) So this argument makes no sense at all.

Plaintiffs then argue that the Court invited both parties to exchange witness lists and present evidence relevant to Plaintiffs' proposed injunction. (Opp. 5:28-6:2.) But the Court's order did not excuse any party from complying with Rules 26 and 37. Nor did the Court's order permit the making of new document productions three weeks before the evidentiary hearing and nearly a year after the close of discovery, despite Plaintiffs apparent belief to the contrary.

Plaintiffs' final argument is that new evidence is permitted on reply when new evidence is provided in connection with an opposition brief. But the evidence supporting Defendants' Opposition to the Permanent Injunction Motion was not new, so this argument also fails.

### D.   This Sanctions Motion, Including the Request for Monetary Sanctions, Complies with the Local Rules.

Plaintiffs are mistaken that Local Rule 7-8(a) bars Defendants' request for a monetary sanction. That rule says a motion for sanctions must be separately filed, but NSO's motion is a motion for sanctions: Rule 37(c), under which the motion was brought, provides for exclusion as a "sanction" for a party's failure to disclose information or witnesses. Fed. R. Civ. P. 37(c). NSO's motion requested such a sanction under Rule 37(c)(1). The motion also requests a monetary sanction under Rule 37(c)(1)(A), but Local Rule 7-8(a) has never been interpreted to mean that a request for a monetary sanction under Rule 37(c)(1)(A) need be brought *separately* from a motion seeking the exclusion sanction under Rule 37(c)(1), and such an interpretation would be absurd.

Local Rule 37-4(b)(3) also does not bar the request for monetary sanctions. Because NSO's attorney fees and costs cannot be known until after the reply brief and any argument, it is reasonable and customary for NSO to ask for leave to provide the declarations setting forth their fees incurred after the motion is decided, as Defendants have here. (*See* Mot. 11:21-23, Dkt. No. 770; Proposed Order, Dkt. No. 770-1 ¶ 3.)

Plaintiffs also oppose the request for monetary sanctions because the NSO insisted that the parties disclose their witness lists on June 26, 2025, rather than waiting until a later date. But the Court ordered that witness lists be shared and filed three weeks before the evidentiary hearing. And on June 26, 2025, the evidentiary hearing was scheduled for July 17, 2025. It was a Court order, not Defendants' request, that required the filing of witness lists on June 26, 2025. For the avoidance of doubt, Defendants disagree that the Court's subsequent (i.e., post-June 26, 2025) rescheduling of the hearing date to August 28, 2025, somehow reset the clock to give Plaintiffs an opportunity to disclose still more witnesses by August 7, 2025. When a disclosure deadline has already passed, a subsequent continuance does not "re-open" the previously expired deadline, absent an explicit court order saying so. *Microsoft v. Search People Ent. Ltd.*, 2025 WL 1666239 *3 (W.D. Wash. 2025) ("courts have consistently held that when [a] disclosure deadline has already lapsed, subsequent continuances have no effect on reviving the lapsed deadline" (citing cases)).

## IV.   CONCLUSION

The Court should strike Plaintiffs' witness list in full, prohibit Plaintiffs from relying on newly disclosed documents, and allow NSO to submit an affidavit of reasonable expenses, including attorney's fees for time spent conferring upon and briefing this motion.

Dated: July 30, 2025                                    KING & SPALDING LLP

                                                        By: */s/ Joseph N. Akrotirianakis*
                                                        JOSEPH N. AKROTIRIANAKIS
                                                        AARON S. CRAIG