1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    jakro@kslaw.com
2  AARON S. CRAIG (Bar No. 204741)
    acraig@kslaw.com
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone:    (213) 443-4355
5  Facsimile:    (213) 443-4310

6  Attorneys for Defendants
   NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DANA TREXLER, CPA/CFF**<br><br>Date:  February 13, 2025<br>Time:  2:00 p.m.<br>Place: Courtroom 3, Ronald V. Dellums<br>        Federal Building & U.S. Courthouse,<br>        1301 Clay Street, Oakland, California<br><br>Action Filed: 10/29/2019 |

**PLEASE TAKE NOTICE** that on February 13, 2025, at 2:00 p.m., before the Honorable Phyllis J. Hamilton, Senior United States District Judge, in the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Courtroom 3, Oakland, California, Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. (collectively "Defendants") will and hereby do move this Court for an order excluding certain opinions of Plaintiffs' expert witness, Dana Trexler, CPA/CFF. Specifically, Defendants move to exclude Ms. Trexler's opinions that Plaintiffs' labor costs purportedly incurred in responding to Defendants' alleged exploitation of security vulnerabilities in WhatsApp's computer systems and code include: (i) the amounts set forth in Exhibit 2.2 to Ms. Trexler's August 30, 2024, report; and (ii) alleged expenses associated with restricted stock units granted to certain of Plaintiffs' employees. Defendants also move to exclude Ms. Trexler's opinions about Defendants' profits, because Plaintiffs are not legally entitled to disgorgement as a matter of law. Defendants move to exclude this evidence under Federal Rules of Evidence 702 and 402.

NSO's Motion is based on this Notice of Motion, the following Points and Authorities, the accompanying Declaration of Aaron S. Craig ("Craig Decl.") and exhibits thereto, and such other written or oral argument as may be presented.

Dated: January 9, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.    BACKGROUND ............................................................................................................. 2

III.   LEGAL STANDARDS .................................................................................................. 5

IV.   ARGUMENT .................................................................................................................. 5

      A.    Ms. Trexler's Inclusion of the $105,469 In Alleged Labor Costs Set Forth In Her Exhibit 2.2 Is Not Supported By Sufficient Facts or Data. ..................................... 6

      B.    Ms. Trexler's Inclusion of Alleged RSU-Related Expenses in the Alleged Labor Costs Should Be Excluded. ..................................................................................... 6

           1.    Ms. Trexler's Inclusion of RSU-Related Expenses Is Not Supported by Sufficient Facts or Data. ................................................................................ 7

           2.    Ms. Trexler's Inclusion of RSU Expenses Is Not the Product of Reliable Principles and Methods. ............................................................................... 9

           3.    Ms. Trexler's Inclusion of RSU Expenses Does Not Fit the Facts............... 10

      C.    Disgorgement Is Not Available to Plaintiffs, So Ms. Trexler's Opinions About Defendants' Profits Are Irrelevant. ......................................................................... 10

V.    CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ary v. Target Corp.*,
　2023 WL 2622142 (N.D. Cal. Mar. 23, 2023) .......................................................................... 11

*Bakst v. Comm. Mem. Health Sys., Inc.*,
　2011 WL 13214315 (C.D. Cal. Mar. 7, 2011) .......................................................................... 11

*Clark v. Eddie Bauer LLC*,
　2024 WL 177755 (9th Cir. Jan. 17, 2024) ............................................................................... 11

*Cruz v. PacifiCare Health Sys., Inc.*,
　30 Cal. 4th 303 (2003) ............................................................................................................ 10

*Daubert v. Merrell Dow Pharm., Inc.*,
　509 U.S. 579 (1993) ........................................................................................................... 5, 10

*Gen. Elec. Co. v. Joiner*,
　522 U.S. 136 (1997) .................................................................................................................. 5

*Guzman v. Polaris Indus. Inc.*,
　49 F.4th 1308 (9th Cir. 2022) ................................................................................................. 10

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
　28 F.4th 35 (2022) .................................................................................................................. 10

*IntegrityMessageBoards.com v. Facebook, Inc.*,
　2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) .......................................................................... 11

*Kenney v. Fruit of the Earth, Inc.*,
　2023 WL 3565076 (S.D. Cal. Apr. 3, 2023), *aff'd*, 2024 WL 4578981 (9th Cir.
　Oct. 25, 2024) ................................................................................................................... 10, 11

*Kumho Tire Co. v. Carmichael*,
　526 U.S. 137 (1999) ............................................................................................................. 5, 9

*Liu v. SEC*,
　591 U.S. 71 (2020) .................................................................................................................. 10

*Medoff v. Minka Lighting, LLC*,
　2023 WL 4291973 (C.D. Cal. May 8, 2023) .......................................................................... 11

*Mesfun v. Hagos*,
　2005 WL 5956612 (C.D. Cal. Feb. 16, 2005) ......................................................................... 11

*Miller v. Four Winds Int'l Corp.*,
   2012 WL 465445 (D. Idaho Feb. 13, 2012) ............................................................................. 11

*Newkirk v. ConAgra Foods, Inc.*,
   727 F. Supp. 2d 1006 (E.D. Wash. 2010) ............................................................................. 8, 9

*Rabin v. Google LLC*,
   2023 WL 4053804 (N.D. Cal. June 15, 2023) ......................................................................... 11

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .............................................................................................. 10, 11

*Toy v. Am. Family Mut. Ins. Co.*,
   2014 WL 12888386 (D. Colo. Jan. 31, 2014) ........................................................................... 6

*United States v. W.R. Grace*,
   504 F.3d 745 (9th Cir. 2007) ................................................................................................ 5, 10

**Other Authorities**

Fed R. 30(b)(6) ................................................................................................................... 1, 2, 3, 6

Fed. R. Evid. 402 ..................................................................................................................... 2, 11

Fed. R. Evid. 702 ................................................................................................................ *passim*

iii
MOTION TO EXCLUDE CERTAIN OPINIONS OF DANA TREXLER    Case No. 4:19-cv-07123-PJH

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Among the damages Plaintiffs seek to recover in this action are alleged labor costs Plaintiffs claim to have incurred in connection with their response to Defendants' use of security vulnerabilities in WhatsApp's systems and code. Plaintiffs' expert, Dana Trexler CPA/CFF, proposes to testify about the bases for these claimed labor costs, but her proposed testimony on these topics falls short, in several respects, of the standards for admissibility under Federal Rule of Evidence 702. Ms. Trexler also purports to provide an opinion about Defendants' profits that are subject to disgorgement when that remedy is unavailable to Plaintiffs as a matter of law. These opinions should be excluded.

Ms. Trexler includes in her calculation of the labor costs Plaintiffs seek to recover $105,469 in alleged costs associated with 14 employees identified in Exhibit 2.2 to her report. However, Ms. Trexler did not speak with any of those 14 employees to verify the time her report assumes they spent responding to the alleged exploit, and the Rule 30(b)(6) witness Plaintiffs designated to testify about their employees' time spent on the response efforts had no knowledge of these employees, including whether they had spent any time on "response" efforts. Accordingly, Ms. Trexler's opinion that costs associated with these 14 employees should be included in the labor costs Plaintiffs seek to recover is not supported by sufficient facts or data to satisfy Rule 702.

Ms. Trexler also proposes to testify that Plaintiffs' relevant labor costs include expenses allegedly associated with grants of restricted stock units ("RSUs") to all of the employees who worked on the exploit response. Ms. Trexler's inclusion of these alleged RSU expenses in Plaintiffs' claimed labor costs inflates the associated alleged damages significantly—the RSU expenses alone account for over 40% of the total labor costs Ms. Trexler calculates. Ms. Trexler's proposed testimony on this subject fails to satisfy the standards for admissibility under Federal Rule of Evidence 702 for each of three reasons. *First*, Ms. Trexler fails to cite facts or data sufficient to support her opinion that the alleged RSU expenses are properly included in the labor costs Plaintiffs seek to recover. *Second*, Ms. Trexler's opinion that the RSU expenses should be included in Plaintiffs' claimed labor costs is not the product of reliable principles and methods. *Third*, the

opinion is not reliably applied to the facts of the case.

Finally, Ms. Trexler provides an opinion about Defendants' profits for purposes of a disgorgement analysis. She does not provide any opinion about whether disgorgement is an appropriate remedy here. And as a matter of law, disgorgement is not available to Plaintiffs, and therefore Ms. Trexler's opinions about disgorgement and NSO's profits are irrelevant and should be excluded under Federal Rule of Evidence 402.

## II.  BACKGROUND

Ms. Trexler's August 30, 2024, report includes an opinion regarding alleged damages comprised of "the labor cost associated with certain of Plaintiffs' employees involved in the investigation, remediation, and ongoing efforts" in response to Defendants' alleged use of security vulnerabilities in WhatsApp's systems and code (the "Labor Cost Opinion"). (Craig Decl. Exh. A, ¶ 52; *id.*, ¶¶ 51–88.) Ms. Trexler assigns a "burdened labor rate" (the "Hourly Rate") to each of the 22 employees of Plaintiffs alleged to have worked on the response efforts and multiplies each employee's Hourly Rate by an estimated number of hours the employee worked on the response. (*Id.*, ¶ 83 and Exhs. 2.1 & 2.2.) She then sums the resulting amounts for each employee to arrive at her opinion that "Plaintiffs' expenditures to respond to Defendants' exploit total $444,719." (*Id.*, ¶ 86 and Table 3.)

Ms. Trexler's calculation of Plaintiffs' alleged labor costs includes a total of $105,469 in alleged labor costs associated with 14 employees[1] about whom WhatsApp has provided no discovery, and to whom Ms. Trexler did not speak to vet assumptions about their time spent on the response efforts upon which she relied for her calculations. (*Id.,* ¶¶ 81–82 and Exh. 2.2.) Moreover, the Rule 30(b)(6) witness Plaintiffs designated to testify about "the time spent by Plaintiffs' employees in responding to Defendants' exploit" was completely unfamiliar with 12 of those 14 employees and was unable to substantiate the assumptions about the supposed time that any of the 14 employees spent on the response efforts. (*See* Craig Decl. Exh. B at 273:3–17 (setting forth

---

[1] These 14 employees are: Aby John, Andy Yang, Andrey Labunets, Aravind Thangavel, Brendon Tiszka, Igor Milyakov, John Altenmeller, Jon Sheller, Meng Zheng, Mingsong Bi, Nasren Jaleel, Roger Shen, Saish Gersappa and Xi Deng. (Craig Decl. Exh. A, Exh. 2.2.)

1  scope of witness' designation); *id.* at 279:13–15; *id.* at 279:23–280:7; *id.* at 295:25–301:18.)
2  Plaintiffs' Rule 30(b)(6) designee was able to testify only that Andrey Labunets had spent some
3  unquantified time on the response efforts and that Brendon Tiszka contributed about three hours of
4  work to those efforts. (*See id.* at 296:22–297:5; *id.* at 297:15–298:20.) The Rule 30(b)(6) designee
5  was otherwise totally unable to answer any questions about 14 employees that Ms. Trexler believes
6  worked on the exploit. To be clear, there is a group of eight employees of Plaintiffs about whom
7  Defendants are not seeking to exclude Ms. Trexler's opinion by this motion, but there is simply no
8  factual basis to support Ms. Trexler' opinion about the second group of 14 employees that were
9  unknown to Plaintiffs' Rule 30(b)(6) designee.

10   In selecting her Hourly Rate for each employee included in her Labor Cost Opinion, Ms.
11  Trexler included alleged costs relating to the employee's salary, performance bonus, employer
12  payroll taxes, employer portion of health benefits, and, controversially, RSU grants. (Craig Decl.
13  Exh. A, ¶ 85.) As the source for the alleged RSU expense, Ms. Trexler relied on a document bearing
14  bates label WA-NSO-00192854, which purportedly shows the "RSU Expense to Meta" for each
15  relevant employee's "Work Performed in 2019." (*Id.*, Exh. 3.1.4.) Ms. Trexler divided the "RSU
16  Expense" value for each employee by an assumed 2,080 hours worked in 2019 to arrive at an
17  "Hourly RSU Expense to Meta" for each employee. (*Id.*)

18   Ms. Trexler's report does not provide any explanation for the values in the underlying "RSU
19  Expense" data. She does not explain what the "RSU Expense" represents; nor does she identify
20  when the RSUs were granted. However, Meta's 2018 Annual Report on U.S. Securities and
21  Exchange Commission ("SEC") Form 10-K, states that, as of December 31, 2018, the company
22  had $8.96 billion in unrecognized compensation expense relating to previously granted RSUs and
23  that Meta expected to recognize that expense "over a weighted-average period of three years based
24  on vesting under the award service conditions."[2] Similarly, Meta's 2019 Annual Report identifies
25  $12.21 billion of unrecognized RSU-related compensation expense that the company expected to
26  recognize "over a weighted-average period of three years based on vesting under the award service

---

[2] SEC Form 10-K for year ended December 31, 2018, at 80, available at https://www.sec.gov/Archives/edgar/data/1326801/000132680119000009/fb-12312018x10k.htm.

conditions."[3]

The 2019 "RSU Expenses" that Ms. Trexler used for her analysis thus do not appear to be tied to RSUs granted in 2019, but instead appear to be based on work performed and grants awarded *in previous years*. Certainly nothing in Ms. Trexler's August 30, 2024, report shows that the 2019 "RSU Expenses" are attributable to work performed by employees in 2019 to respond to the alleged exploitation of WhatsApp's security vulnerabilities. Moreover, if the "RSU Expense" values Ms. Trexler used do reflect RSUs that Plaintiffs granted in 2019, per Meta's 2019 Annual Report, such expenses would not have been fully recognized by Meta during 2019, but instead would have been recognized "over a weighted-average period of three years based on vesting under the award service conditions."[4]

In addition, although Ms. Trexler states that the Hourly Rates underlying her Labor Cost Opinion are intended to reflect "expenditures paid by [Plaintiffs] to, or on behalf of, an employee" (Craig Decl. Exh. A, ¶ 84), nothing in her report shows or explains how the RSU Expense values on which she relies to determine employees' Hourly Rates are associated with any amount of actual costs paid by Plaintiffs. Granting stock units to an employee does not require an employer to pay any money to the employee.

Ms. Trexler's inclusion of the alleged RSU Expense values in determining the cited employees' Hourly Rates accounts for over 40% of the total labor cost that she calculates. (*See* Craig Decl. Exh. C, ¶¶ 62–63 and Figures 9 & 10; *see also* Craig Decl. Exh. A, Exhs. 2.1, 2.2, & 3.1.) Of what Ms. Trexler calculates to be $444,719 in alleged labor costs attributed to work responding to the exploit, fully $178,764 stems from Ms. Trexler's inclusion of the purported RSU-related expenses. (*See* Craig Decl. Exh. C, ¶ 63 and Figure 10.)

Ms. Trexler's initial and supplemental reports both include sections purporting to calculate Defendants' profits for licensing certain Pegasus systems. While the initial report is limited to April and May 2019, and the supplemental report covers 2018, 2019, and 2020, and while Ms.

---

[3] SEC Form 10-K for year ended December 31, 2019, at 98, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001326801/000132680120000013/fb-12312019x10k.htm.
[4] *Id.*

4

1  Trexler's methodology for calculating profits in her supplemental report is completely different
2  from her methodology in her initial report, all of Ms. Trexler's opinions about Defendants' profits
3  relate solely to the remedy of disgorgement. (Craig Decl. Exh. A, ¶¶ 89–123; Craig Decl. Exh. F,
4  ¶¶ 7–8, 14–48.)

### III. LEGAL STANDARDS

Plaintiffs bear the burden to establish that Ms. Trexler's testimony is "based on sufficient facts or data," and is the "product of reliable principles and methods" that have been "reliably applied … to the facts of the case." Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *United States v. W.R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007).

It is the trial judge's responsibility to act as a "gatekeeper" by ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also W.R. Grace*, 504 F.3d at 759. The Court's gatekeeping function exists to ensure that an expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). To this end, the Court must conduct a "holistic" analysis of the expert's testimony for "overall sufficiency of the underlying facts and data, and the reliability of the methods, as well as the fit of the methods to the facts of the case." *W.R. Grace*, 504 F.3d at 762, 765. Where the proposed testimony fails to satisfy these standards, the Court can, and should, exclude it. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### IV. ARGUMENT

Ms. Trexler's inclusion of the $105,469 in alleged costs associated with the 14 employees identified in Exhibit 2.2 to her report is not supported by sufficient facts or data to satisfy Rule 702. Further, Ms. Trexler's proposed testimony incorporating the RSU Expense values set forth in WA-NSO-00192854 in her calculation of Plaintiffs' alleged labor costs in responding to the exploit is not supported by sufficient facts or data; nor is that opinion the product of reliable principles and methods reliably applied to the facts of this case. Accordingly, this Court should exclude Ms. Trexler's Labor Cost Opinion to the extent that it relies on and incorporates the purported costs (i) set forth in Exhibit 2.2 and (ii) relating to RSUs. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589–

90. **Finally**, because disgorgement is unavailable to Plaintiffs as a matter of law, Ms. Trexler's opinions about Defendants' profits should also be excluded.

### A. Ms. Trexler's Inclusion of the $105,469 In Alleged Labor Costs Set Forth In Her Exhibit 2.2 Is Not Supported By Sufficient Facts or Data.

Ms. Trexler's opinion that Plaintiffs' labor costs incurred in responding to the exploit include $105,469 associated with the employees identified in Exhibit 2.2 to her report is not supported by sufficient facts or data to satisfy Rule 702. Ms. Trexler did not speak with any of these individuals to confirm the assumptions about their time allegedly spent on the response that underlies her calculations in Exhibit 2.2. (*See* Craig Decl. Exh. A, ¶¶ 81–82.) Instead, she asserts she spoke with former WhatsApp employee Claudiu Gheorghe, whose knowledge of these 14 employees is unknown, and who was *not* Plaintiff's corporate designee on "the time spent by Plaintiffs' employees in responding to Defendants' exploit." Further, the 30(b)(6) witness Plaintiffs did designate as to this subject had no knowledge of whether 12 of the 14 employees listed on Ms. Trexler's Exhibit 2.2 had worked on the response at all, much less for the large amounts of time underlying Ms. Trexler's calculations. (*See* Craig Decl. Exh. B at 279:13–15; *id.* at 279:23–280:7; *id.* at 295:25–301:18.) Plaintiffs' Rule 30(b)(6) witness was only able to confirm that Andrey Labunets had spent some time on the response efforts, and that Brendon Tiszka contributed about three hours of work to those efforts (as opposed to the 64 hours counted by Ms. Trexler for Mr. Tiszka). (*See id.* at 296:22–297:5; *id.* at 297:15–298:20; Craig Decl. Exh. A, Exh. 2.2.)

Accordingly, Ms. Trexler's opinion that Plaintiffs' labor costs incurred in responding to the exploit include the $105,469 associated with the employees identified in her Exhibit 2.2 lacks sufficient factual support to be reliable and admissible under Rule 702. *Cf. Toy v. Am. Family Mut. Ins. Co.*, 2014 WL 12888386, at *6 (D. Colo. Jan. 31, 2014) (examining related 30(b)(6) testimony in assessing whether proposed opinion testimony had sufficient factual support for admission).

### B. Ms. Trexler's Inclusion of Alleged RSU-Related Expenses in the Alleged Labor Costs Should Be Excluded.

The Court should also exclude Ms. Trexler's opinion that alleged RSU-related expenses should be included in her Labor Cost Opinion. Her inclusion of such expenses is not supported by

sufficient facts or data, is not the product of reliable principles and methods, and does not fit the facts of this case.

### 1. Ms. Trexler's Inclusion of RSU-Related Expenses Is Not Supported by Sufficient Facts or Data.

Ms. Trexler fails to cite facts or data sufficient to support her inclusion of RSU-related expenses into her Labor Cost Opinion.

*First*, Ms. Trexler fails to cite facts or data sufficient to show that the alleged RSU-related expenses that she incorporates into her Labor Cost Opinion relate to work by Plaintiffs' employees in responding to Defendants' alleged exploitation of WhatsApp security vulnerabilities—which are the purported labor costs Plaintiffs seek to recover. The alleged RSU-related expenses that Ms. Trexler bakes into her Labor Cost Opinion come from Plaintiffs' document bearing bates label WA-NSO-00192854. (*See* Craig Decl. Exh. A, Exh. 3.1.4, n.1.) But nothing in that document, nor any other facts Ms. Trexler cites, supports the conclusion that the data set forth in WA-NSO-00192854 reflects expenses relating to RSUs granted as compensation for work Plaintiffs' employees performed during 2019, much less for their work that year responding to the alleged exploit. (*See* Craig Decl. Exh. D.) To the contrary, Meta's SEC filings indicate that Meta recognizes compensation relating to RSU grants "over a weighted-average period of approximately three years based on vesting under the award service conditions,"[5] suggesting that RSU-related expenses recognized during 2019 would not have been incurred based on work performed during that year, but would instead relate to RSUs granted in prior years based on work performed in prior years. Further, to the extent that the data set forth in WA-NSO-00192854 does reflect RSU grants made during 2019 for work performed in response to the alleged exploit, it would be inappropriate to include such amounts in the alleged 2019 labor costs Plaintiffs seek to recover given Meta's statements in its SEC filings that the company recognizes RSU expenses over a weighted-average

---

[5] *See* SEC Form 10-K for year ended December 31, 2018, at 80, available at https://www.sec.gov/Archives/edgar/data/1326801/000132680119000009/fb-12312018x10k.htm; *see also* SEC Form 10-K for year ended December 31, 2019, at 98, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001326801/000132680120000013/fb-12312019x10k.htm.

period of approximately three years, rather than in the years that grants are made. For the above reasons, Ms. Trexler has not shown that the data set forth in WA-NSO-00192854 offers reliable support for her opinion that RSU Expense amounts reflected therein should be included in the exploit response labor costs she purports to calculate. *See Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006, 1016 (E.D. Wash. 2010) (where expert fails to cite reliable supporting data or facts, the opinion "fail[s] the first step of the *Daubert* inquiry").

**Second**, Ms. Trexler fails to show that the data set forth in WA-NSO-00192854 reflects actual costs that Plaintiffs paid either to or on behalf of the identified employees. This is critical, because Ms. Trexler states that the employee Hourly Rates from which she purports to calculate relevant labor costs are intended to reflect amounts paid by Plaintiffs either "directly to" the employees or "on behalf of" those employees. (Craig Decl. Exh. A, ¶ 84.) But Ms. Trexler has not shown that the amounts set forth in WA-NSO-00192854 correspond to equivalent amounts of costs directly incurred and paid by Plaintiffs. For this reason too, Ms. Trexler's opinion incorporating the RSU Expense amounts into her calculation of labor costs lacks sufficient support for admission. *See Newkirk*, 727 F. Supp. 2d at 1016.

**Third**, Ms. Trexler purports to calculate for each employee included in her Labor Cost Opinion an "Hourly RSU Expense to Meta for Work Performed in 2019" by dividing the total 2019 "RSU Expense" for each employee set forth in WA-NSO-00192854 by *an assumed* 2,080 hours of work by each employee in 2019 (estimated by multiplying 52 weeks by 40 hours). (Craig Decl. Exh. A, Exh. 3.1.4, n.2.) Ms. Trexler cites no facts or data of any kind to support her assumption that each identified employee *actually worked* 2,080 hours in 2019. Without citation to any such factual support, Ms. Trexler's calculation of "Hourly RSU Expense[s]" for each employee, which she the simply adds into each employee's "Hourly Rate" for purposes of her Labor Cost Opinion, is wholly unreliable. *See Newkirk*, 727 F. Supp. 2d at 1017 ("without citation to any source, the Court must conclude that those foundational statements are not based on sufficient facts or data").

For all these reasons, Ms. Trexler's inclusion of the alleged RSU-related expenses in her Labor Cost Opinion is not supported by sufficient facts or data as required by Rule 702. Accordingly, the Court should exclude the Labor Cost Opinion to the extent that it includes such

alleged RSU-related expenses.

### 2. Ms. Trexler's Inclusion of RSU Expenses Is Not the Product of Reliable Principles and Methods.

As explained above, it is entirely unclear what the purported RSU Expense data that Ms. Trexler includes in her Labor Cost Opinion represents, and it certainly does not appear to reflect amounts that Plaintiffs paid to or on behalf of employees for 2019 work on the exploit response. Ms. Trexler fails to show that the RSU Expense amounts relate to work *on the exploit response* (the costs of which her Labor Cost Opinion seeks to quantify, (*see* Craig Decl. Exh. A, ¶ 86), rather than work performed in other years. *See supra* at 7–8. Nor does she show that the RSU Expense amounts reflect Plaintiffs' "economic cost incurred in connection with [each] subject employee's time" (what Ms. Trexler says her Hourly Rates are intended to measure. (Craig Decl. Exh. A, ¶ 84.) *See supra* at 8. Accordingly, Ms. Trexler's inclusion of the RSU Expense amounts to calculate alleged labor costs to Plaintiffs resulting from the exploit is not the product of reliable principles and methods. *See Newkirk*, 727 F. Supp. 2d at 1018 (to meet the reliability standard, an expert's opinions must "logically derive from the stated bases").

Further, when assessing the reliability of proposed expert testimony, one important consideration is whether the expert's methodology is one that is "generally accepted" by other experts in the relevant field. *Kumho*, 526 U.S. at 151. Here, Defendants' expert Gregory Pinsonneault testified that, in the 50 to 75 cases in which he has been engaged as an expert and in which issues concerning fully burdened labor costs have been present, he cannot recall a single case in which any expert—for any party—included RSU-related expenses in their calculation of burdened labor cost as Ms. Trexler does in her report. (*See* Craig Decl. Exh. E at 319:17–320:10.) He has never done it, and before this case, he has never seen an opposing expert attempt it. (*Id.*) This strongly suggests that Ms. Trexler's inclusion of the alleged RSU Expenses in her calculation of Hourly Rates for employees alleged to have worked on the response is not "generally accepted" and thus is not sufficiently reliable for admission under Rule 702.

In fulfilling its gate-keeping role, the Court should exclude this unreliable and misleading testimony. *See Newkirk*, 727 F. Supp. 2d at 1018.

### 3. Ms. Trexler's Inclusion of RSU Expenses Does Not Fit the Facts.

Finally, in the absence of a showing that the RSU Expense amounts Ms. Trexler includes in her calculation of labor costs purportedly attributable to the exploit actually reflect costs incurred by Plaintiffs as the result of the exploit, Ms. Trexler's opinion does not "fit," and is not reliably applied to, the facts of this case. *See Daubert*, 43 F.3d at 1320 (noting that the requirement of "fit" or "helpfulness" demands "a valid scientific connection to the pertinent inquiry as a precondition to admissibility"). Where, as here, the methods underlying an expert's opinion do not fit the facts of the case, the proposed testimony falls short of the reliability threshold imposed by Rule 702 and *Daubert* and should be excluded. *See W.R. Grace*, 504 F.3d at 765.

### C. Disgorgement Is Not Available to Plaintiffs, So Ms. Trexler's Opinions About Defendants' Profits Are Irrelevant.

Ms. Trexler provides several calculations of Defendants' profits, all of which are for the sole purpose of determining the amount she contends should be disgorged from Defendants to Plaintiffs. (Craig Decl. Exhs. A, F.) But the remedy of disgorgement is not available to Plaintiffs in this case. Because Plaintiffs cannot receive disgorgement, and Defendants' profits are not relevant to any other issue in the case, Ms. Trexler's opinions about those profits are irrelevant and should be excluded.

Disgorgement is an equitable remedy,[6] the availability of which depends on the "traditional equitable principles" that govern in "federal court." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). "[S]tate law can neither broaden nor restrain a federal court's power to issue equitable relief." *Id.* Accordingly, even when a state "authorize[s] its courts to give equitable relief," a federal court may not award that relief "if an adequate legal remedy exists." *Id.* at 842-44; *accord Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312-13 (9th Cir. 2022). That includes the equitable remedy of disgorgement: "[W]here monetary damages provide an adequate remedy, a federal court may not consider the merits of equitable claims for … disgorgement…." *Kenney v. Fruit of the Earth, Inc.*, 2023 WL 3565076, at *3 (S.D. Cal. Apr. 3, 2023), *aff'd*, 2024 WL 4578981

---

[6] *Liu v. SEC*, 591 U.S. 71, 79-81 (2020); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 39 (2022); *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 307 (2003).

(9th Cir. Oct. 25, 2024); *see Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *2 (9th Cir. Jan. 17, 2024) (rejecting disgorgement claim for absence of "proof of inadequate legal remedies"); *Rabin v. Google LLC*, 2023 WL 4053804, at *13 (N.D. Cal. June 15, 2023) (same); *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *12 (C.D. Cal. May 8, 2023) (same); *Ary v. Target Corp.*, 2023 WL 2622142, at *5 (N.D. Cal. Mar. 23, 2023); *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *5-6 (N.D. Cal. Nov. 6, 2020) (same).

That rule forecloses Plaintiffs from recovering disgorgement. Plaintiffs' "complaint does not allege that [they] lack[] an adequate legal remedy," *Sonner*, 971 F.3d at 844, and they have not otherwise proved that damages are inadequate to remedy their claimed harms. To the contrary, the only harm Plaintiffs claim to have suffered because of Defendants' alleged actions is the $444,719 they allegedly expended to investigate and remediate the vulnerability in WhatsApp. Plaintiffs' claim for money damages fully remedies that alleged harm. Therefore, Plaintiffs have an adequate legal remedy and cannot seek the equitable remedy of disgorgement. *E.g.*, *Clark*, 2024 WL 177755, at *2; *Kenney*, 2023 WL 3565076, at *3.

Because Plaintiffs cannot recover disgorgement, Ms. Trexler's opinions on Defendants' profits are irrelevant. Ms. Trexler offers those opinions solely to support Plaintiffs' improper disgorgement claim (Craig Decl. Exh. A, ¶¶ 89–123; Craig Decl. Exh. F, ¶¶ 7–8, 14–48), and Defendants' profits are not relevant to any other issue in the case. Ms. Trexler's opinions on profits thus would not assist the jury in deciding any relevant issue and should, therefore, be excluded under Rule 402. *See Bakst v. Comm. Mem. Health Sys., Inc.*, 2011 WL 13214315, at *12 (C.D. Cal. Mar. 7, 2011) (excluding as irrelevant expert opinion on unavailable remedies); *Mesfun v. Hagos*, 2005 WL 5956612, at *14-15 (C.D. Cal. Feb. 16, 2005) (excluding as irrelevant expert opinion on unavailable defense); *cf. Miller v. Four Winds Int'l Corp.*, 2012 WL 465445, at *3 (D. Idaho Feb. 13, 2012) (excluding as irrelevant testimony on unavailable remedies).

## V.    CONCLUSION

For the reasons shown above, the Court should exclude Ms. Trexler's opinions incorporating the amounts set forth in her Exhibit 2.2 and the alleged RSU-related expenses in her

calculation of alleged labor costs Plaintiffs seek to recover in this case. The Court should also exclude Ms. Trexler's opinions about NSO's profits.

Dated: January 9, 2025

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
AARON S. CRAIG
*Attorneys for Defendants*

12

MOTION TO EXCLUDE CERTAIN OPINIONS OF DANA TREXLER

Case No. 4:19-cv-07123-PJH