1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1600
4  Los Angeles, CA 90071
   Telephone:    (213) 443-4355
5  Facsimile:    (213) 443-4310

6  Attorneys for Defendants
   NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD.
7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  WHATSAPP INC., a Delaware corporation,      Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
13  corporation,                                **DEFENDANTS' TRIAL BRIEF**

14              Plaintiffs,                      Date:   April 10, 2025 (Pretrial Conf.)
                                                Time:  2:00 p.m.
15         v.                                    Place:  Courtroom 3, Ronald V. Dellums
                                                        Federal Building & U.S. Courthouse,
16  NSO GROUP TECHNOLOGIES LIMITED                      1301 Clay Street, Oakland, California
    and Q CYBER TECHNOLOGIES LIMITED,
17
                                                Action Filed: October 29, 2019
18              Defendants.
19                                              Trial: April 28, 2025

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2

I.      INTRODUCTION ........................................................................................................ 1

3

II.     BACKGROUND ......................................................................................................... 1

4

III.    ARGUMENT .............................................................................................................. 5

5

     A.    Plaintiffs Are Not Entitled to Compensatory Damages. .......................................... 5

6

     B.    Plaintiffs Have Abandoned Their Disgorgement Claim. ........................................... 7

7

     C.    Plaintiffs Are Not Entitled to Punitive Damages. ..................................................... 8

8

          1.    Defendants Did Not Willfully Violate CDAFA. ................................................ 9

9

          2.    Defendants Are Not Guilty of Oppression, Fraud, or Malice. ......................... 9

10

          3.    Plaintiffs Cannot Recover Punitive Damages for Conduct Outside of

11

              California or for Harm to WhatsApp Users. ................................................... 11

12

     D.    Plaintiffs Are Not Entitled to the Broad Injunction They Seek. ........................... 12

13

          2.    Plaintiffs' Contract Claims Do Not Support Injunctive Relief. ................... 13

14

          3.    Plaintiffs Are Not Entitled to Injunctive Relief on Any Claim. .................... 15

15

          4.    Plaintiffs' Proposed Injunction Is Not Narrowly Tailored. ........................... 17

16

IV.     REQUEST TO SEAL TRIAL AND EXHIBITS ...................................................... 17

17

V.      CONCLUSION ......................................................................................................... 17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS'                                                    Case No. 4:19-cv-07123-PJH
TRIAL BRIEF

1

## TABLE OF AUTHORITIES

2

3

**Page(s)**

4

**Cases**

5

*ACT 898 Prods. v. WS Indus.*,
   774 F. App'x 1012 (9th Cir. 2019) ..................................................................... 15

6

*Altman v. PNC Mortg.*,
   850 F. Supp. 2d 1057 (E.D. Cal. 2012)................................................................. 8

7

8

*Benn v. Allstate Ins. Co.*,
   569 F. Supp. 3d 1029 (C.D. Cal. 2021)............................................................... 13

9

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
   2021 WL 3173736 (S.D.N.Y. July 26, 2021) ........................................................ 6

10

11

*Betts v. Allstate Ins. Co.*,
   154 Cal. App. 3d 688 (1984)................................................................................. 9

12

13

*Cal. Physicians Serv., Inc. v. Healthplan Services, Inc.*,
   2021 WL 879797 (N.D. Cal. Mar. 9, 2021) ........................................................ 15

14

*CCDB Partners v. DKS Sys., LLC*,
   2019 WL 13218559 (D. Minn. Dec. 12, 2019) ..................................................... 8

15

16

*Charlton v. Estate of Charlton*,
   841 F.2d 988 (9th Cir. 1988)............................................................................... 12

17

18

*El Omari v. Buchanan*,
   2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) ...................................................... 6

19

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006)............................................................................ 9, 10

20

21

*Fraser v. Mint Mobile, LLC*,
   2022 WL 2391000 (N.D. Cal. July 1, 2022)......................................................... 6

22

*Henderson v. Sec. Nat'l Bank*,
   72 Cal. App. 3d 764 (1977).................................................................................. 8

23

24

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022)............................................................................. 16

25

26

*Instant Infosystems, Inc. v. Open Text, Inc.*,
   2021 WL 1540615 (Cal. Ct. App. 2021)............................................................... 8

27

28

*Int'l Medcom, Inc. v. S.E. Int'l, Inc.*,
   2015 WL 7753267 (N.D. Cal. Dec. 2, 2015) ................................................................. 14, 15

*Jarvis v. State Farm Gen. Ins. Co.*,
   2024 WL 4003319 (C.D. Cal. July 26, 2024) .................................................................. 14

*L.A. Mem'l Coliseum Comm'n v. NFL*,
   634 F.2d 1197 (9th Cir. 1980) ......................................................................................... 15

*Local Ventures & Invs., LLC v. Open Found.*,
   2019 WL 7877936 (N.D. Cal. May 13, 2019) ................................................................. 8

*Long Beach Drug Co. v. United Drug Co.*,
   13 Cal. 2d 158 (1939) ....................................................................................................... 13

*Meta Platforms, Inc. v. Nguyen*,
   2023 WL 8686878 (N.D. Cal. Aug. 22, 2023) ................................................................. 15

*Mintz v. Bartelstein*,
   2012 WL 12865276 (C.D. Cal. Nov. 15, 2012) ............................................................... 8

*Moltan Co. v. Eagle–Picher Indus.*,
   55 F.3d 1171 (6th Cir. 1995) ........................................................................................... 12

*Mycogen Corp. v. Monsanto Co.*,
   28 Cal. 4th 888 (Cal. Ct. App. 2002) .............................................................................. 14

*Nexans Wires S.A. v. Sark-USA, Inc.*,
   319 F. Supp. 2d 468 (S.D.N.Y. 2004) .............................................................................. 6

*PDF Print Commc'ns Inc. v. Fed. Mut. Ins. Co.*,
   2022 WL 2189631 (C.D. Cal. Mar. 29, 2022) ........................................................... 13, 14

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007) .......................................................................................................... 12

*Rep. of the Philippines v. Pimentel*,
   553 U.S. 851 (2008) .......................................................................................................... 17

*Saffron Rewards, Inc. v. Rossie*,
   2022 WL 2918907 (N.D. Cal. July 25, 2022) ................................................................. 6

*Sprint Nextel Corp. v. Welch*,
   2014 WL 68957 (E.D. Cal. Jan. 8, 2014) ......................................................................... 15

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) .......................................................................................................... 11

iv

*United States v. Microsoft*,
    253 F.3d 34 (D.C. Cir. 2001) ................................................................... 12

*ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*,
    2024 WL 1984897 (W.D.N.Y. May 6, 2024) ........................................... 14

*Van Buren v. United States*,
    593 U.S. 374 (2021) ................................................................................... 6

*W. Watersheds Project v. Abbey*,
    719 F.3d 1035 (9th Cir. 2013) ................................................................. 15

*Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*,
    2003 WL 27384425 (C.D. Cal. Mar. 31, 2003) ....................................... 14

*White v. Univ. of Cal.*,
    2012 WL 12335354 (N.D. Cal. Oct. 9, 2012) .......................................... 17

*Wyatt Tech. Corp. v. Smithson*,
    2006 WL 5668246 (C.D. Cal. Aug. 14, 2006) ........................................... 8

**Statutes**

18 U.S.C. § 1030(e)(11) ................................................................................. 6, 7

Cal. Civ. Code § 3294(c) ................................................................. 8, 9, 10, 11

Cal. Civ. Code § 3390(e) ............................................................................ 14, 15

Cal. Civ. Code § 3423(e) ................................................................................. 13

Cal. Civ. Proc. Code § 526(b)(5) .................................................................... 13

Cal. Penal Code § 502(c) ............................................................................... 8, 9

Cal. Penal Code § 502(e)(4) .......................................................................... 8, 9

**Other Authorities**

58 Cal. Jur. 3d Specific Performance § 3 ........................................................ 14

58 Cal. Jur. 3d Specific Performance § 32 ...................................................... 14

DEFENDANTS' TRIAL BRIEF                                    Case No. 4:19-cv-07123-PJH

## I.     INTRODUCTION

Plaintiffs are wrong about the remedies to which they are entitled. The $444,719 compensatory damages estimate of Plaintiffs' expert is greatly overstated because she included the time of employees as to whom Plaintiffs' 30(b)(6) designee, on the examination topic of "the time spent by plaintiffs' employees in responding to defendants' exploit," could not testify that they actually worked *any* hours on any "remediation" of the WhatsApp system. Plaintiffs' damages expert also massively overinflated the "labor cost" Plaintiffs claim to have incurred to remediate WhatsApp's security deficiencies by including stock options granted years prior to the events in the litigation. Plaintiffs also cannot recover punitive damages because there has been no willfulness, malice, oppression, or fraud. Even if the Court were to award punitive damages, the amount must be tethered to the amount of compensatory damages, which are at less than $445,000, even according to Plaintiffs damages expert. Finally, Plaintiffs are not entitled to any injunction, much less the wide-ranging injunction they seek, which goes far beyond the conduct Plaintiffs challenged in this suit.

## II.    BACKGROUND

NSO develops and licenses lawful intercept, cybersurveillance, and other technologies. Its flagship product, Pegasus, allows governments to remotely collect data from mobile devices. The technology is used exclusively to investigate serious crimes, combat terrorism, and conduct national security investigations.

Pegasus is not synonymous with using WhatsApp. While Plaintiffs would like the Court to believe that every version of Pegasus involves attacks on their servers, the evidence is that *no* current versions of Pegasus involve transmitting messages across WhatsApp servers or infrastructure or doing anything else that could possibly be construed as an attack on Plaintiffs' systems. For a brief period of time, several years ago, NSO's covert-Android version of Pegasus involved sending messages through WhatsApp servers. But NSO's "one-click Android," "covert ioS," and "one-click ioS" versions of Pegasus did not then, and do not now, require the use of WhatsApp servers. The only connection between Pegasus and WhatsApp is that the dozens of types of data that NSO's customers can access from the devices of the criminals and terrorists that

DEFENDANTS'
TRIAL BRIEF                                                    Case No. 4:19-cv-07123-PJH

1 | are targets of investigation include WhatsApp messages that criminals and terrorists commonly
2 | send or receive.  It is important to note, however, that Pegasus is not any longer installed through
3 | WhatsApp servers, and no target data is sent over WhatsApp servers during the extraction process.

4 |      It is undisputed that during the brief period when covert-Android Pegasus involved
5 | transmitting messages across WhatsApp servers, Pegasus did not harm the operation of WhatsApp
6 | or remove, manipulate, or even access any WhatsApp data.  None of the data on WhatsApp's
7 | servers was impaired or corrupted, and no WhatsApp server was compromised.  (Akro. Decl.. Ex.
8 | D, Gheorghe Tr. at 183:1-184:7.)  NSO did not create any of the vulnerabilities in WhatsApp's
9 | codebase, and Pegasus did not interfere with the operation or availability of WhatsApp's services
10 | in any way.  (*Id.* at 276:14-280:6; *see also id* at 183:7-12, 250:10-251:1; Akro. Decl. Ex. E,
11 | Robinson Tr. at 200:25-201:10.) Moreover, target data was not extracted over WhatsApp's servers.
12 | The messages from those few versions of Pegasus merely passed through WhatsApp's servers on
13 | their way to the target device. Once the message reached the target device, it caused the device to
14 | connect to non-WhatsApp servers (owned by NSO's customers) and download the Pegasus agent.
15 | This explains why Plaintiffs' claimed compensatory damages—even as massively inflated as they
16 | are—are just $444,719.

17 |      In light of the fairly modest amount of compensatory damages sought by Plaintiffs, the
18 | primary issue in the first phase of the jury trial will be whether NSO has been guilty of oppression,
19 | fraud, or malice in committing a willful violation of CDAFA.  The fact issues related to equitable
20 | relief will include whether an injunction is in the public interest and whether the balance of
21 | hardships supports an injunction.  Key to all of those questions is Plaintiffs' role in creating a need
22 | for Pegasus among sovereign government customers, how Pegasus is used by those customers, and
23 | what NSO does to minimize the possibility of misuse.

24 |      WhatsApp touts its end-to-end encryption as among the platform's chief selling points.
25 | WhatsApp puts powerful encryption technology into the hands of anyone who signs up an account,
26 | and signing up does not even require users to provide their real name (or any name, for that matter).
27 | End-to-end encryption means that the historical government surveillance tools with which the Court
28 | is doubtlessly familiar are useless in fighting terrorism, sex trafficking, and other horrific crimes.

1    WhatsApp knows its platforms are used to recruit terrorists, plan terrorist attacks, and exchange

2    movies and photos of children being subjected to acts of unspeakable sexual abuse.  Proof of

3    WhatsApp's knowledge comes in the form of witness testimony about Plaintiffs' employees

4    haplessly trying to stem the criminal abuse of Plaintiffs' platforms based on voluntary "user

5    reports" made to Plaintiffs' "trust and safety," terrorism, and child exploitative-imagery teams.

6    (Akro. Decl. Ex. F, Gautam Tr. at 37:18–46:13.)  In light of Plaintiffs' recent policy changes about

7    content moderation that post-date the Presidential election (and the discovery cutoff), it may be that

8    Plaintiffs are no longer making any effort to stop the use of WhatsApp to promote terrorism, child

9    exploitation, and other crimes.  Moreover, Plaintiffs often choose not to cooperate with law

10    enforcement requests for assistance (or "slow-walk" them until they become moot).

11        Because Pegasus allows governments to obtain lawful access to a target's phone after that

12    phone unencrypts encrypted messages, governments use Pegasus to access the phones of their

13    highest priority terrorist and criminal targets.  Some government agencies (like the CIA, according

14    to Mark Zuckerberg's appearance on Joe Rogan's podcast[1]) have developed their own tools to

15    access the encrypted content of target phones, but others lack the ability or resources to develop

16    similar technology.  Many countries, including "western" democracies, have licensed the use of

17    Pegasus, and Pegasus benefits both the United States and its allies.  Pegasus has been used to

18    capture high-profile drug kingpins (such as "El Chapo"), foil terrorist plots, and break up human

19    trafficking rings.  The FBI itself licensed Pegasus, and the United States paid for at least two other

20    countries, including Colombia, to license Pegasus.  Testimony from an expert witness in military

21    and intelligence surveillance, retired Colonel Ty Shepard, will detail how the ==United States benefits==

22    ==directly from its allies' use of Pegasus==.

23        Plaintiffs assert that Defendants' sovereign customers have occasionally misused Pegasus

24    because some of the roughly 1,400 targets referenced in the complaint were identified by Citizen

25    Lab as "VIPs" or members of "civil society."  But as this Court has noted, "a given individual may

26

27    [1]  WION, *Meta CEO Zuckerberg says CIA can access your WhatsApp messages*,
     https://www.msn.com/en-in/money/news/meta-ceo-zuckerberg-says-cia-can-access-your-
28    whatsapp-messages/vi-BB1rk3pb (last accessed Mar. 13, 2025.)

1   be the proper subject of law enforcement or national security efforts even if that individual is also

2   an attorney, journalist, etc." (Dkt. 305 at 5.) That is exactly the case here. For example, a target

3   that Plaintiffs and Citizen Lab describe as "civil society" and a "journalist," Rupesh Kumar Singh,

4   was arrested when caught in a car full of explosives. (Akro. Decl. Ex. H.) Likewise, Citizen Lab

5   "VIP" Abdullah al-Muhaysini is a known Al-Qaeda recruiter. This terrorist is the subject of a video

6   recording in which he salutes the family of a suicide bomber before sending that young man to his

7   death. (Akro. Decl. Exh. O.) These are typical targets for whom Defendants' customers use

8   Pegasus.

9           NSO licenses Pegasus to governments and to government agencies that pass a rigorous

10  screening process. This process has involved the following:

11          •       Initial review by NSO's Business Ethics Committee, (Akro. Decl. Ex. I) which

12  contains numerous former senior U.S. officials.

13          •       Review of NSO's marketing by the Israeli Ministry of Defense ("MoD").

14          •       MoD review of all licensing.

15          •       Contractual restrictions that Pegasus may only be used against terrorism and serious

16  crime (Akro. Decl. Ex. J).

17  

18

19          •       Ongoing monitoring.

20          •       Investigations of all allegations of misuse, including termination of customer

21  licenses.

22          In short, Pegasus fills a need for governments to gain access to the encrypted

23  communications of the terrorists, drug traffickers, child pornographers, and other criminals

24  Plaintiffs know use WhatsApp to promote terrorism and crime. All of this militates against a

25  decision that the public's interest is best served by an injunction, let alone the sweeping injunction

26  proposed by Plaintiffs. Similarly, these facts suggest that the balancing of harms weighs against

27  an injunction, and that Defendants have not been guilty of oppression, fraud, or malice. At

28  minimum, it unquestionably provides a basis to greatly narrow the injunction sought by Plaintiffs,

4

1  which would essentially outlaw all versions of Pegasus, whether or not they interact with any

2  WhatsApp vulnerability or send messages across WhatsApp servers.

3  **III.    ARGUMENT**

4      **A.    Plaintiffs Are Not Entitled to Compensatory Damages.**

5      The jury should not award Plaintiffs any compensatory damages because Defendants did

6  not cause Plaintiffs to incur the expenses they seek to recover.  The time and money Plaintiffs spent

7  improving the security of their system was instead the direct result (as a matter of both proximate

8  and but-for causation) of the fact that WhatsApp's codebase contained vulnerabilities that Plaintiffs

9  would have paid the exact same amount to fix when those vulnerabilities inevitably came to light,

10  irrespective of anything Defendants did.  Defendants did not create those vulnerabilities.  (Akro.

11  Decl. Ex. N, Response to Request for Admission No. 176-177; Akro. Decl. Ex. E, Robinson Tr. at

12  200:25-201:10.)  Moreover, even if Plaintiffs persuade the jury that Defendants somehow caused

13  their expenditures, the amounts claimed by Plaintiffs' expert are overstated for reasons discussed

14  below.

15      Defendants did not do anything to harm the operation of WhatsApp's computer systems.

16  As Plaintiffs' managers admitted, their "servers were not compromised" (Akro. Decl. Exh. K), and

17  the so-called "attacks" on Plaintiffs' servers did not slow down or otherwise affect those servers,

18  did not delete any data from those servers, and did not prevent Plaintiffs' customers from using

19  WhatsApp (Akro. Decl. Exh. D, Georghe Tr. at 250:10-256:19).  Instead, Defendants discovered

20  pre-existing security flaws in WhatsApp's code that enabled NSO's government customers to send

21  WhatsApp messages that would install Pegasus on the phones of terrorists and criminals.  These

22  security flaws were in WhatsApp's code because WhatsApp programmers borrowed code from

23  publicly available repositories (or "libraries") of computer code to build WhatsApp.  The libraries

24  from which Plaintiffs borrowed code were known to contain vulnerabilities.  (Akro. Decl. Exh. E,

25  Robinson Tr. at 98:21-100:1.)

26      Plaintiffs' claimed compensatory damages are labor costs of employees fixing WhatsApp

27  code vulnerabilities that Defendants did not create. (Akro. Decl. Ex. N, Response to RFA No. 176-

28  177.)  It was inevitable that Plaintiffs would have discovered these flaws in the absence of Pegasus

5

1  and NSO, and, while they equivocated at their depositions, Plaintiffs' witnesses will be unable to

2  testify truthfully before this Court that they would have left those vulnerabilities in place once they

3  discovered them—they would have instead patched the vulnerabilities to strengthen the security of

4  WhatsApp.  The cost of Plaintiffs undertaking these improvements at some later date would have

5  been the same (adjusted for inflation) as whatever amount Plaintiffs spent in 2019, and Plaintiffs

6  would have had all the same employees on their payroll even if the vulnerability used by Pegasus

7  had never existed.  Plaintiffs therefore will be unable to show that the expenses they undertook

8  were caused by Defendants.

9          Moreover, Plaintiffs' claimed damages consist of costs that are not recoverable under the

10  Computer Fraud and Abuse Act.  As defined by the CFAA, "[t]he term 'loss' . . . relates to costs

11  caused by harm to computer data, programs, systems, or information services."  *Van Buren v.*

12  *United States*, 593 U.S. 374, 391-92 (2021) (citing 18 U.S.C. § 1030(e)(11)).  "Loss" is accordingly

13  "[l]imit[ed]" to "technological harms—such as the corruption of files—of the type unauthorized

14  users cause to computer systems and data."  *Id.* Applying that definition, courts have "consistently"

15  held that costs, to qualify as "loss," must be "cost[s] of investigating or remedying damage *to a*

16  *computer*."  *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004)

17  (emphasis added), *aff'd*, 166 F. App'x. 559 (2d Cir. 2006); *accord Saffron Rewards, Inc. v. Rossie*,

18  2022 WL 2918907, at *8 (N.D. Cal. July 25, 2022); *Fraser v. Mint Mobile, LLC*, 2022 WL

19  2391000, at *2 (N.D. Cal. July 1, 2022); *El Omari v. Buchanan*, 2021 WL 5889341, at *14

20  (S.D.N.Y. Dec. 10, 2021); *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736, at *3-4

21  (S.D.N.Y. July 26, 2021).    Plaintiffs, however, have admitted that NSO did not damage

22  WhatsApp's servers, the only computers Plaintiffs allege.  (Akro. Decl.. Ex. D, Gheorghe Tr. at

23  183:1-184:7, 250:10-251:1, 276:14-280:6; 250:10-251:1.)    That precludes treating their

24  investigatory costs as "loss' under CFAA.

25          In particular, Plaintiffs do not claim and cannot prove that they incurred remediation

26  expenses to "restor[e] the data, program, system, or information to its condition *prior to the*

27  *offense*," as the CFAA requires.  18 U.S.C. § 1030(e)(11) (emphasis added).  It is undisputed that

28  NSO did not create the vulnerability used by Pegasus; it was a preexisting vulnerability that

WhatsApp introduced into its own code.  Plaintiffs thus did not restore WhatsApp "to its condition prior to the offense," *id.*, by repairing the vulnerability.  Rather, Plaintiffs devoted labor to correct *existing* flaws in WhatsApp's code and thereby *improve* the security of WhatsApp relative to its "condition prior to the offense." *Id.*  The cost of that labor is not "loss" recoverable under the CFAA, and the value of those improvements should be factored in when calculating the damages claimed by Plaintiffs.

In addition to these problems, Plaintiffs' expert's estimate of $444,719 is inflated in at least two respects.  Ms. Trexler accounts for the time of 22 of Plaintiffs' employees in reaching that number.  However, Plaintiff's 30(b)(6) witness on "the time spent by Plaintiffs' employees in responding to Defendants' exploit" testified that as to 12 of those 22,[2] he had no information about their titles or what any of them did to respond to NSO's exploit in 2019.  (Akro. Decl. Exh. E, Robinson Tr. 295:25-301:12.)   As to another employee, Brendon Tiszka, Plaintiff's 30(b)(6) witness testified he worked about three hours responding to the exploit, notwithstanding Ms. Trexler's belief that he worked for 64 hours on the project. (*Id.*)  Further, Ms. Trexler takes the unprecedented step of including the value of restricted stock units granted to Plaintiffs' employees years earlier than 2019 as part of their compensation—a measure Defendants' expert will testify that he has never seen before in his career (which spans approximately 75 engagements of this type).  The inclusion of restricted stock units inflates the compensation of some of Plaintiffs' software engineers to over $1 million per year.  For these reasons, Plaintiffs' calculation of compensatory damages is overstated.

### B.    Plaintiffs Have Abandoned Their Disgorgement Claim.

Throughout this case, Plaintiffs have consistently claimed that they were entitled to disgorgement.  NSO incurred substantial legal and expert expenses opposing that claim.  Then, one day before the filing of this document, Plaintiffs suddenly and without explanation stated in an email that they "no longer intend to seek disgorgement."  (Akro. Decl. Exh. B.)  In reliance on Plaintiffs' representation they are no longer seeking disgorgement in any respect, Defendants have

---

[2] Aby John, Andy Yang, Aravind Thangavel, Igor Milyakov, John Altenmueller, John Sheller, Ming Yang, Mingsong Bi, Nasrin Jaleel, Roger Shen, Saish Gersappa and Xi Deng.

1    deleted from this brief substantial arguments for why Plaintiffs are not entitled to disgorgement as

2    a matter of law.  In the event that Plaintiffs attempt to renounce their abandonment of a claim for

3    disgorgement, Defendants reserve all rights to raise arguments opposing disgorgement.

4         **C.    Plaintiffs Are Not Entitled to Punitive Damages.**

5         "Punitive damages are never awarded as a matter of right, are disfavored by the law, and

6    should be granted with the greatest of caution and only in the clearest of cases." *Altman v. PNC*

7    *Mortg.*, 850 F. Supp. 2d 1057, 1086 (E.D. Cal. 2012) (citing *Henderson v. Sec. Nat'l Bank,* 72 Cal.

8    App. 3d 764, 771 (1977)).  The only cause of action for which Plaintiffs may seek punitive damages

9    is their claim under CDAFA.  But a CDAFA plaintiff may recover punitive damages only if it

10   proves *both* that the defendant's CDAFA violation was "willful" *and*, with "clear and convincing

11   evidence," that the defendant acted with "oppression, fraud, or malice."  Cal. Penal Code § 502(e)(4).

12   Plaintiffs contend willfulness is not required, but Penal Code § 502(e)(4) unambiguously provides

13   otherwise.  Courts thus agree that a court may "award punitive or exemplary damages" under

14   CDAFA only "[i]f the violation was *willful*, *and* it is proved by clear and convincing evidence that

15   a defendant has been guilty of oppression, fraud, or malice." *Local Ventures & Invs., LLC v. Open*

16   *Found.*, 2019 WL 7877936, at *7 (N.D. Cal. May 13, 2019) (emphasis added).[3]

17        Plaintiffs will not be able to prove, much less by clear and convincing evidence, that NSO—

18   a lawful intercept provider operating under strict oversight to fight terrorism, human trafficking,

19   and other serious crimes—acted willfully and was "guilty of oppression, fraud, or malice."

20

21

22   [3] *See also Mintz v. Bartelstein*, 2012 WL 12865276, at *5 (C.D. Cal. Nov. 15, 2012) ("Section
     502(e)(4) provides that punitive damages are available where a defendant commits a '*willful*
23   *violation*' of the statute and 'has been guilty of oppression, fraud, or malice as defined in
     subdivision (c) of Section 3294 of the Civil Code.'" (emphasis added)); *Instant Infosystems, Inc. v.*
24   *Open Text, Inc.*, 2021 WL 1540615, at *16 (Cal. Ct. App. 2021) (under CDAFA, jury was required
     to find defendant "*willfully engaged* in the offending conduct with malice, oppression, or fraud"
25   (emphasis added)); *CCDB Partners v. DKS Sys., LLC*, 2019 WL 13218559, at *5 (D. Minn. Dec.
     12, 2019) ("A court may award punitive damages [under CDAFA] if a party shows 'by clear and
26   convincing evidence that a defendant has been guilty of oppression, fraud, or malice' in a *willful*
     *violation* of subdivision (c)." (emphasis added, alterations omitted)); *Wyatt Tech. Corp. v. Smithson*,
27   2006 WL 5668246, at *11 (C.D. Cal. Aug. 14, 2006) ("Punitive damages are recoverable [under
     CDAFA] for willful violations."), *rev'd in part on other grounds*, 345 F. App'x 236 (9th Cir. 2009).
28

8

**1.    Defendants Did Not Willfully Violate CDAFA.**

Plaintiffs cannot prove that any CDAFA violation was willful.  Each substantive provision of CDAFA requires "knowing" conduct, so a "willful" CDAFA violation requires something more than acting with the knowledge and purpose to commit the act.  Cal. Penal Code § 502(c), (e)(4). Otherwise, the "willfulness" requirement would be entirely superfluous.  In context, therefore, "willful" under CDAFA must mean an intent to commit an unlawful act in California. Plaintiffs cannot prove that NSO—a lawful intercept provider operating under the strict oversight of both the Israeli Government and an independent business ethics committee to fight terrorism, human trafficking, and other serious crimes—acted with the intent to violate CDAFA.

**2.    Defendants Are Not Guilty of Oppression, Fraud, or Malice.**

Even if Plaintiffs could prove willfulness, punitive damages are available only if they could also "establish[] by *clear and convincing evidence* that [NSO] is guilty of (1) fraud, (2) oppression or (3) malice. *In re First All. Mortg. Co.*, 471 F.3d 977, 998 (9th Cir. 2006).  This is a high standard. Indeed, not even bad faith (standing alone) can establish that a defendant "acted with the quality of intent which is requisite to an award of punitive damages."  *Betts v. Allstate Ins. Co.*, 154 Cal. App. 3d 688, 708 (1984).  Instead, "[t]here must be substantial evidence of an intent to vex, injure and annoy, a conscious disregard of the plaintiff's rights, before punitive damages may be awarded." *Id.* at 709.

NSO has not acted with fraud, oppression, or malice.  Just the opposite.  NSO has acted to save lives by developing critically needed lawful intercept technology and licensing that technology exclusively to governments and government agencies for the purpose of fighting terrorism, human trafficking, child exploitation, and other unspeakable crimes.  NSO has acted under the strict oversight of both the Israeli Government and a business ethics committee tasked with approving or disapproving each potential sale.  Far from being (a) malicious, (b) oppressive, or (c) fraudulent, NSO conducts itself with the best of social intentions and the utmost ethical integrity.

***Malice.***  NSO is not guilty of "malice," defined as "conduct which is [1] intended by the defendant to cause injury to the plaintiff or [2] despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code

9

1   § 3294(c)(1).  If anyone has acted with malice, it is WhatsApp, as evidenced by a pre-suit message

2   from Plaintiffs' 30(b)(6) witness Claudiu Gheorghe stating that WhatsApp CEO Will Cathcart

3   "wants us to move quicker, *he wants us to damage NSO as much as possible* and we need more

4   capacity to find issues for that." (Akro Decl. Exh. L, emphasis added.)  Plaintiffs have no like

5   evidence of any malicious intent from NSO.

6        First, NSO's intention in creating and selling the Pegasus software was not to injure

7   Plaintiffs but to help governments stop the terrorism, human trafficking, and other violent crimes

8   that Plaintiffs' encryption technology facilitates.  The evidence will show that NSO specifically

9   designed the relevant versions of Pegasus *not* to damage WhatsApp or impair or impede the

10  WhatsApp service.  And Plaintiffs admit that Pegasus was in fact used without causing any harm

11  to WhatsApp servers.  Plaintiffs internally acknowledged that WhatsApp servers were not

12  compromised (Akro. Decl. Ex. K, Exh. 1083), and their 30(b)(6) designee testified that Pegasus did

13  not impair the servers' availability, slow them down, corrupt any data on those servers, or take or

14  delete any of WhatsApp's data. (Akro. Decl. Exh. D, Georghe Tr. 183:1-184:7; 276:14-280:6.)

15       Second, NSO did not engage in any "despicable conduct," let alone "with a willful and

16  conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).  That definition

17  requires " conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would

18  be looked down upon and despised by ordinary decent people."  *In re First All. Mortg. Co.*, 471

19  F.3d at 998; *see also* CACI 3945 (Punitive Damages—Entity Defendant—Trial Not Bifurcated).

20  Here, NSO acted with the intention of providing a valuable service to sovereign governments—

21  helping them apprehend terrorists and violent criminals and protect the rights and safety of their

22  citizens from terror attacks and other crimes.  While Plaintiffs disagree with NSO's approach to

23  serving those ends—i.e., licensing to governments software to enable them to obtain information

24  from terrorists' and criminals' mobile devices—that approach is a far cry from being "so vile, base,

25  contemptible, miserable, wretched or loathsome that it would be looked down upon and despised

26  by ordinary decent people."  *In re First All. Mortg. Co.*, 471 F.3d at 998.

27       **Oppression.**  For similar reasons, NSO is not guilty of "oppression," defined as "despicable

28  conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's

10

1    rights." Cal. Civ. Code § 3294(c)(2).  As noted above, NSO's conduct was not despicable.

2    Moreover, NSO did not subject Plaintiffs—both multi-billion-dollar corporations—to any

3    "hardship," let alone "cruel and unjust hardship."  Plaintiffs employ full-time employees whose

4    jobs include closing vulnerabilities in Plaintiffs' software as needed.  Those employees responded

5    to NSO's software by simply doing their jobs, which was not a "cruel and unjust hardship."

6        ***Fraud.***  NSO is not guilty of "fraud," defined as "an intentional misrepresentation, deceit,

7    or concealment of a material fact known to the defendant with the intention on the part of the

8    defendant of thereby depriving a person of property or legal rights or otherwise causing

9    injury." Cal. Civ. Code § 3294(c)(3).  NSO had no communications with Plaintiffs, so it made no

10    "intentional misrepresentation" to "deceive" Plaintiffs, let alone "with the intention … of thereby

11    depriving [Plaintiffs] of property or legal rights or otherwise causing injury."

12        NSO also concealed nothing from Plaintiffs. While Plaintiffs have argued that NSO

13    configured Pegasus to "conceal" its use of the WhatsApp service, that is false. The evidence will

14    show that the Pegasus messages were not "concealed" at all—the content of the call initiation

15    messages appeared in plain, human-readable text that any minimally competent engineer would

16    have immediately recognized as not having been composed by an official WhatsApp client

17    application.  Indeed, the evidence will show that WhatsApp engineers recognized the nature of the

18    messages immediately upon first inspection.  The evidence will show that the only reason WhatsApp

19    did not recognize the Pegasus messages earlier was simply that WhatsApp was not looking.

20            **3.    Plaintiffs Cannot Recover Punitive Damages for Conduct Outside of**

21                **California or for Harm to WhatsApp Users.**

22        As CDAFA is a California statute, it cannot authorize Plaintiffs to recover "punitive

23    damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction."

24    *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-22 (2003).  Here, none of the acts

25    on which the Court found NSO liable was committed inside California.  While the Court found that

26    Pegasus messages happened to travel through California servers 43 times, which was enough

27    conduct *directed towards* California to support jurisdiction, that is insufficient to establish that any

28    of NSO's conduct was committed *inside* California.  First, there is no evidence that NSO (rather

1   than its customers) sent any of those 43 transmissions that purportedly transited through California

2   servers.  Second, the 43 transmissions neither originated from nor were destined for California—

3   they merely passed through the California servers, en route to their final destinations in foreign

4   countries. Third, even if all 43 Pegasus messages were attributed to NSO and constituted acts inside

5   California, punitive damages would be limited to those 43 transmissions.

6        Plaintiffs also cannot recover punitive damages for any purported harm *to WhatsApp users*

7   because "[p]unitive damages may not be used to punish Defendants for the impact of their conduct

8   on persons other than Plaintiffs." CACI 3945 (Punitive Damages—Entity Defendant—Trial Not

9   Bifurcated); *see also Philip Morris USA v. Williams*, 549 U.S. 346, 353-54 (2007) (prohibiting

10  punitive damages based on harm to nonparties). That is doubly so here, where the evidence will be

11  undisputed that none of those third-party users was in California (or even the United States).

12  Granting relief related to third parties in jurisdictions outside California would require including

13  those third parties in this litigation and applying to them the laws of those other jurisdictions. *Philip*

14  *Morris*, 549 U.S. at 353-54.

15       **D.    Plaintiffs Are Not Entitled to the Broad Injunction They Seek.**

16       Finally, for the reasons set forth in more detail in NSO's forthcoming opposition, Plaintiffs

17  are not entitled to the overbroad injunction that they seek.

18            **1.    Plaintiffs Cannot Receive an Injunction Without a Hearing.**

19       As a threshold matter, the entry of an injunction generally requires a hearing.  *See Charlton*

20  *v. Estate of Charlton*, 841 F.2d 988 (9th Cir. 1988).  A summary adjudication of liability "does not

21  substitute for a relief-specific evidentiary hearing."  *United States v. Microsoft*, 253 F.3d 34, 101

22  (D.C. Cir. 2001).  Nor does a "trial on liability . . . unless the matter of relief was part of the trial

23  on liability, or unless there are no disputed factual issues regarding the matter of relief."  *Id.*

24  (citations omitted); *see also Moltan Co. v. Eagle–Picher Indus.*, 55 F.3d 1171, 1175 (6th Cir.

25  1995) ("An evidentiary hearing is ordinarily required prior to the issuance of a permanent

26  injunction.").   Here, NSO previously identified multiple disputed factual issues regarding

27  Plaintiffs' demand for a sweeping permanent injunction.  (*See generally* Dkt. No. 560.)  Those

28  disputes include, but are not limited to, whether the three relevant versions of Pegasus present any

1    future risk to Plaintiffs (i.e., whether NSO can begin licensing those versions again once the lawsuit

2    has concluded), whether any version of Pegasus is now installed through WhatsApp's servers,

3    whether quotations in the press accurately reflect NSO's plans and present additional risk of future

4    violations to WhatsApp, who the end users of Pegasus are (which WhatsApp continues to dispute),

5    and the lawful purposes for which Pegasus is used.  The first three disputes are relevant to

6    determining whether Plaintiffs have proven a concrete risk of future harm, while the remaining

7    disputes are relevant to determining the potential public benefits of Pegasus.  The Court must weigh

8    both of those factors when determining whether an injunction should issue.

9                    **2.      Plaintiffs' Contract Claims Do Not Support Injunctive Relief.**

10       Plaintiffs cannot receive an injunction on their breach of contract claim as a matter of law.

11   Under California law, "[a]n injunction *cannot be granted* . . . [t]o prevent the breach of a contract

12   the performance of which would not be specifically enforced." Cal. Civ. Proc. Code § 526(b)(5)

13   (emphasis added); Cal. Civ. Code § 3423(e) ("An injunction may not be granted . . . [t]o prevent

14   the breach of a contract the performance of which would not be specifically enforced").

15   WhatsApp's Terms of Service cannot be "specifically enforced."  Specific performance is available

16   only for "affirmative covenants" in a contract—that is, requirements *affirmatively to perform* some

17   act.  *Long Beach Drug Co. v. United Drug Co.*, 13 Cal. 2d 158, 168-70 (1939).  But WhatsApp's

18   Terms contain no "affirmative" covenants that could be enforced through specific performance.

19   Plaintiffs seek only to enforce *negative* covenants *prohibiting* certain conduct.  Such an injunction,

20   issued solely "to prohibit future breaches of contract," is not permitted.  *PDF Print Commc'ns Inc.*

21   *v. Fed. Mut. Ins. Co.*, 2022 WL 2189631, at *4 (C.D. Cal. Mar. 29, 2022).

22       Courts likewise disfavor "injunctions that would require supervision from the court for

23   many years or for an indefinite period."  *Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1038 (C.D.

24   Cal. 2021) (cleaned up).  WhatsApp's Terms do not contemplate a single transaction but instead

25   create an ongoing relationship of indefinite length between WhatsApp and its users.  Plaintiffs,

26   accordingly, seek to impose *continuing* obligations requiring NSO to refrain *forever* from creating

27   WhatsApp accounts, using Plaintiffs' platforms, decompiling or reverse-engineering WhatsApp,

28   and so on. Such an injunction "to prohibit future breaches of contract" is "unworkable and entirely

                                                    13

1  unpoliceable" because it "would require detailed or day to day judicial supervision of" NSO's

2  operations.  *PDF Print Commc'ns*, 2022 WL 2189631, at *4.

3     Nor may Plaintiffs receive specific performance of "[a]n agreement, the terms of which are

4  not sufficiently certain to make the precise act which is to be done clearly ascertainable." Cal. Civ.

5  Code § 3390(e).  WhatsApp's Terms lack the required certainty.  For example, Plaintiffs seek to

6  enforce provisions prohibiting "harmful code" and "illegal" conduct.  But the Terms do not define

7  those or other key terms, and the relevant provisions do not specify any "precise act" NSO must

8  perform.  Cal. Civ. Code § 3390(e).  Such nonspecific provisions may not be enforced through

9  specific performance or an injunction.  *E.g.*, *Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, 2015 WL

10  7753267, at *2-3 (N.D. Cal. Dec. 2, 2015).

11     Moreover, "a party may not obtain both specific performance and damages for the same

12  breach of contract, either in single or multiple actions." *Mycogen Corp. v. Monsanto Co.*, 28 Cal.

13  4th 888, 905 (Cal. Ct. App. 2002); *see* 58 Cal. Jur. 3d Specific Performance § 3.  Because Plaintiffs

14  are seeking damages for breach of WhatsApp's Terms, they may not also seek specific performance.

15     Even if specific performance were not categorically unavailable, Plaintiffs cannot satisfy

16  the multi-factor test governing whether specific performance is appropriate.  To receive specific

17  performance, a plaintiff must prove: "(1) the inadequacy of [its] legal remedy; (2) an underlying

18  contract that is both reasonable and supported by adequate consideration; (3) the existence of a

19  mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to

20  know what it is to enforce; and (5) a substantial similarity of the requested performance to that

21  promised in the contract." *Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*, 2003

22  WL 27384425, at *24 (C.D. Cal. Mar. 31, 2003).

23     Plaintiffs cannot satisfy these requirements.  First, they have an adequate legal remedy in

24  the form of money damages.  *Jarvis v. State Farm Gen. Ins. Co.*, 2024 WL 4003319, at *6 (C.D.

25  Cal. July 26, 2024); *ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, 2024 WL 1984897, at *2-3

26  (W.D.N.Y. May 6, 2024).  Second, WhatsApp's Terms are not reasonable because they are a "one-

27  sided," 58 Cal. Jur. 3d Specific Performance § 32, "contract of adhesion" that NSO "had no ability

28  to negotiate" (Dkt. 111 at 27).  Third, the Terms are not sufficiently definite because they use vague,

14

undefined language that does not require any "precise act." Cal. Civ. Code § 3390(e); *see Cal. Physicians Serv., Inc. v. Healthplan Servs., Inc.,* 2021 WL 879797, at *4 (N.D. Cal. Mar. 9, 2021); *Int'l Medcom*, 2015 WL 7753267, at *2-3. Fourth, the Terms lack mutuality of remedies because Plaintiffs seek to bind NSO to the Terms while also denying NSO access to WhatsApp. If NSO is bound by the Terms, then Plaintiffs are bound to provide access to WhatsApp. Fifth, and for similar reasons, the performance Plaintiffs seek to impose is not similar to that promised in the Terms. There is no conceivable contractual basis for Plaintiffs to seek *both* (1) to prohibit NSO from using WhatsApp *and* (2) to prohibit future violations of the Terms. Plaintiffs also seek to prohibit NSO from using *any* of Plaintiffs' platforms, none of which are subject to WhatsApp's terms or even relevant to this case.

### 3.    Plaintiffs Are Not Entitled to Injunctive Relief on Any Claim.

Plaintiffs cannot establish the requirements for a permanent injunction: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013) (cleaned up).

Plaintiffs have not proved irreparable injury or inadequate legal remedies because they claim to have suffered only monetary harm that can be remedied through an award of damages. *ACT 898 Prods. v. WS Indus.,* 774 F. App'x 1012, 1015-16 (9th Cir. 2019); *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980). Plaintiffs have abandoned any claim to the sort of non-monetary harms recognized as irreparable in other CFAA cases, such as reputational harm or loss of goodwill. *E.g.*, *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686878 (N.D. Cal. Aug. 22, 2023); *see Sprint Nextel Corp. v. Welch*, 2014 WL 68957, at *7-9 (E.D. Cal. Jan. 8, 2014) (finding no irreparable injury from CFAA violation). And Plaintiffs cannot prove the risk of any future harm because NSO's witnesses will testify that the vulnerabilities underlying the Pegasus installation vectors that used WhatsApp have been closed and cannot be reopened. NSO's witnesses will also testify without contradiction that NSO has no "installation vector for Pegasus

15

. . . that uses [Plaintiffs'] technology in any way." (Dkt. 396-5, Akro. Decl. Exh. H at 51:23-52:2.)

The balance of hardships favors NSO. Plaintiffs do not substantiate any specific hardship they would suffer without an injunction, while Plaintiffs' requested injunction "threat[ens]" to "drive[] [NSO] out of business." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). Although this case involves only a very limited subset of Pegasus products that were installed through WhatsApp servers years ago, Plaintiffs seek to prohibit NSO (and its government customers) from using *any* of Plaintiffs platforms for *any* reason, and even from *collecting* information from *any* of Plaintiffs' users' devices with Pegasus versions that do *not* use WhatsApp servers. That would prohibit NSO from engaging in entirely lawful conduct to assist authorized government investigations that have nothing to do with the conduct the Court held unlawful. NSO's witnesses will testify that such a prohibition would effectively eliminate NSO's business and require its customers to purchase similar services from NSO's competitors, causing irreparable harm to NSO's business.[4]

The public interest also disfavors an injunction. NSO's evidence will show that versions of Pegasus that do not use WhatsApp are currently being used by governments around the world in sensitive law-enforcement, military, and intelligence operations. Plaintiffs' proposed injunction would halt those investigations by prohibiting the collection of messages sent and received by terrorists and criminals using any of Plaintiffs' services—*even using versions of Pegasus that do not touch WhatsApp servers*. Such an injunction would cause law enforcement and national security agencies around the globe who rely on NSO to "go dark" on ongoing investigations into suspected criminals and terrorists within their own territories. By requiring NSO to cut off access to all versions of Pegasus (even those not adjudged to violate the law) within thirty days, the Court would be impairing active law-enforcement, military, and intelligence operations around the world. Plaintiffs cite no public interest sufficient to overcome these extreme consequences. *See hiQ Labs*, 31 F.4th at 1202 (holding interest in thwarting threat actors was outweighed by the risks associated

---

[4] The requested injunction would also prohibit NSO's employees from using Plaintiffs' platforms even for personal uses, and would even prohibit NSO's *attorneys* from using any of Plaintiffs' platforms in any way. These prohibitions would impose unwarranted burdens on lawful conduct by third parties and chill NSO's ability to find legal representation, no matter how unrelated to this case.

16

DEFENDANTS' TRIAL BRIEF                                                Case No. 4:19-cv-07123-PJH

1    with "giving companies . . . free rein to decide, on any basis, who can collect and use data")

2              **4.     Plaintiffs' Proposed Injunction Is Not Narrowly Tailored.**

3          Even if Plaintiffs were entitled to *some* injunction (and they are not), the injunction

4    Plaintiffs seek is grossly overbroad and legally invalid. First, the injunction seeks to prohibit

5    ordinary and lawful conduct, such as using all of Plaintiffs' platforms for unobjectionable personal

6    or business purposes. Second, the proposed injunction seeks to prohibit conduct this Court did not

7    hold to be illegal, such as collecting data through versions of Pegasus that do not use WhatsApp as

8    an installation vector, "[s]ending, storing, or transmitting viruses or other harmful code through

9    Plaintiffs' Platforms," using Plaintiffs' platforms other than WhatsApp, or "using Plaintiffs'

10   Platforms for 'illegal' purposes." Third, the proposed injunction applies to Plaintiffs' government

11   customers, in violation of Rule 19 and those customers' sovereign immunity. (Dkt. 111 at 34);

12   *Rep. of the Philippines v. Pimentel*, 553 U.S. 851, 865 (2008); *White v. Univ. of Cal.*, 2012 WL

13   12335354, at *10 (N.D. Cal. Oct. 9, 2012). Fourth, Plaintiffs have not come close to satisfying

14   their high burden to justify an order requiring NSO and its customers to destroy their code and data.

15   **IV.    REQUEST TO SEAL TRIAL AND EXHIBITS**

16        Defendants ███████████████████████████████████████

17   ████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████. Defendants hereby respectfully make that request. Defendants

21   likewise respectfully request that the Court seal any exhibits relating to these subjects.

22   **V.    CONCLUSION**

23        For the foregoing reasons, Plaintiffs are not entitled to the remedies they seek at trial or

24   from the Court.

25   Dated: March 13, 2025                    KING & SPALDING LLP

26                                            By: */s/ Joseph N. Akrotirianakis*
                                              JOSEPH N. AKROTIRIANAKIS
27                                            AARON S. CRAIG
                                              *Attorneys for Defendants*
28

                                              17

NSO GROUP TECHS. LTD. and
Q CYBER TECHS. LTD.

DEFENDANTS' TRIAL BRIEF                                      Case No. 4:19-cv-07123-PJH