Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
    (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
            antonio.perez@davispolk.com
            gina.cora@davispolk.com
            craig.cagney@davispolk.com
            luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE EXPERT TESTIMONY OF COL. TY SHEPARD**<br><br>Date:    February 13, 2025<br>Time:    1:30 p.m.<br>Ctrm:    3<br>Judge:   Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

BACKGROUND .......................................................................................................................... 3

    I.      Col. Shepard's Background ................................................................................... 3

    II.     Col. Shepard's Report .......................................................................................... 3

    III.   Col. Shepard's Deposition .................................................................................... 4

LEGAL STANDARD ................................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

    I.      Col. Shepard's Military Experience Does Not Qualify Him as an Expert on Any of the Offered Opinions and His Testimony Cannot Be Properly Tested Because It Is Based on Classified Information ............................................................ 5

    II.     Each of Col. Shepard's Opinions Should Be Excluded Under Rule 702 .................... 7

          A.    Col. Shepard Has No Reliable Basis To Opine that Threat Actors Use Encrypted Messaging Applications To Undermine U.S. and Allied National Security ...................................................................................... 7

          B.    Col. Shepard Has No Reliable Basis To Opine that the United States and Its Allies Widely Use Surveillance Tools Like Pegasus To Protect National Security ...................................................................................... 9

          C.    Col. Shepard Has No Reliable Basis To Opine on the Marketplace for Commercial Surveillance Tools and WhatsApp's Work with Law Enforcement ................................................................................................. 11

          D.    Col. Shepard Has No Reliable Basis To Opine on Governments' Compliance with Terms of Service .............................................................. 13

          E.    Col. Shepard Has No Reliable Basis To Opine that Many Cyber Surveillance Tools Do Not Have the Safeguards that Pegasus Does ............. 14

    III.   Col. Shepard's Testimony Should Be Excluded Because His Opinions Will Not Help the Jury Determine Damages or the Court Determine Injunctive Relief .......... 14

CONCLUSION ............................................................................................................................. 18

i

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alkayali v. Hoed*,
2018 WL 3425980 (S.D. Cal. July 16, 2018) .................................................... 15, 16

*Barber v. City of Santa Rosa*,
2010 WL 5069868 (N.D. Cal. Dec. 7, 2010) .................................................... 9

*Brice v. Haynes Invs., LLC*,
548 F. Supp. 3d 882 (N.D. Cal. 2021) ............................................ 15, 17, 18

*Caldwell v. City of San Francisco*,
2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) .................................................... 14

*Crescenta Valley Water Dist. V. Exxon Mobile Corp.*,
2013 WL 12120533 (C.D. Cal. Mar. 14, 2013) .................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .................................................................................... 5, 15

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) .................................................................. 10, 11

*Facebook, Inc. v. Power Ventures, Inc.*,
252 F. Supp. 3d 765 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) ...................... 18

*Giuliano v. Sandisk Corp.*,
2015 WL 10890654 (N.D. Cal. May 14, 2015) .................................................... 15

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................................................... 16

*Hartley v. Dillard's, Inc.*,
310 F.3d 1054 (8th Cir. 2002) .................................................... 13

*Kumho Tire Co., v. Carmichael*,
526 U.S. 137 (1999) .................................................... 5

*In re Leap Wireless Int'l, Inc.*,
301 B.R. 80 (Bankr. S.D. Cal. 2003) .................................................... 7, 10, 11

*Lin v. Solta Med., Inc.*,
2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) .................................................... 14

*In re PFA Ins. Mktg. Litig.*,
696 F. Supp. 3d 788 (N.D. Cal. 2021) .................................................... 11

*In re Ripple Labs, Inc. Litig.*,

ii

2024 WL 4583525 (N.D. Cal. Oct. 24, 2024) ........................................................ 5

*In re Roundup Prods. Liab. Litig.*,
2024 WL 3737622 (N.D. Cal. June 20, 2024) .................................................... 12

*Rovid v. Graco Childs. Prods. Inc.*,
2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) ...................................................... 17

*Sullivan v. U.S. Dep't of Navy*,
365 F.3d 827 (9th Cir. 2004) ............................................................................. 5

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
648 F. App'x 609 (9th Cir. 2016) ................................................................. 10, 11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
978 F. Supp. 2d 1053 (C.D. Cal. 2013) ........................................................... 17

*United States v. Cerna*,
2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) ........................................... 5, 8, 9

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000) ........................................................................... 5

*United States v. Hermanek*,
289 F.3d 1076 (9th Cir. 2002) ........................................................................... 9

*United States v. Holguin*,
51 F.4th 841 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509 (2023) ................. 6

*United States v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020) ..................................................................... 6, 8, 9

*Williams v. Illinois*,
567 U.S. 50 (2012) ......................................................................................... 14

STATUTES & RULES

Cal. Penal Code § 502(e)(4) ...................................................................... 16, 17

Fed. R. Evid. 403 ................................................................................................ 7

Fed. R. Evid. 702 ......................................................................... 1, 2, 5, 7, 13, 14

OTHER AUTHORITIES

Fact Sheet: President Biden Signs Executive Order to Prohibit U.S. Government Use of
Commercial Spyware that Poses Risks to National Security, https://www.whitehouse.gov/brief-
ing-room/statements-releases/2023/03/27 (Mar. 27, 2023) ..................................... 10

Exec. Order No. 14093, 88 Fed. Reg. 18957 (Mar. 27, 2023)................................... 10

Meta Platforms, Inc., *Government Requests for User Data*,
https://transparency.meta.com/reports/government-data-requests ............................. 12

Press Release, U.S. Dep't of Com., Commerce Adds NSO Group and Other Foreign Companies
    to Entity List for Malicious Cyber Activities (Nov. 3, 2021), https://www.com-
    merce.gov/news/press-releases/2021/11/commerce-adds-nso-group-and-other-foreign-compa-
    nies-entity-list ........................................................................................................................... 10

WhatsApp, *About Government Requests for User Data*,
    https://faq.whatsapp.com/808280033839222 ............................................................................ 12

WhatsApp, *Information for Law Enforcement Authorities*,
    https://faq.whatsapp.com/444002211197967/?locale=en_US ................................................. 12

## NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY

PLEASE TAKE NOTICE THAT, on February 13, 2025 at 1:30 pm in Courtroom 3 of the U.S. District Court for the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. will and hereby do move to exclude the testimony of Col. Ty M. Shepard, whom Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. (collectively, "NSO") have designated as an expert.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Micah G. Block and all exhibits thereto, the pleadings and papers on file in this action, and on such other written and oral argument as may be presented to the Court.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

The Court should exclude the testimony of Defendants' purported expert, Ty M. Shepard, a former U.S. Army colonel, under Federal Rule of Evidence 702 and *Daubert*, for three primary reasons.

*First*, Col. Shepard is not qualified under Rule 702 to give expert testimony on any of the opinions he is offering, and his testimony cannot be properly tested because he relies on purportedly "classified" information. At his deposition, Col. Shepard testified that he undertook no study, empirical analysis, nor used any kind of expert methodology to arrive at his opinions—all of which go to NSO's policy arguments regarding Pegasus's purported beneficial use for governments and law enforcement. Col. Shepard explained that he is "operational" and "not academic." Tr. at 175:9–17.[1] Indeed, he has published no articles on any topic, is not a researcher or teacher, and he has no degrees relevant to the opinions he is offering. Tr. 218:24–219:7, 210:21–212:17; 226:15–25. His testimony is based on anecdotes from his military experience—the details of which Col. Shepard claims to be unable to disclose because they are "classified" information—and his personal views.

*Second*, Col. Shepard's opinions are not "based on sufficient facts or data" or "the product of reliable principles and methods." Fed. R. Evid. 702(c). For instance, Col. Shepard opines that 99% of "threat actors" use encrypted messaging applications, but his 99% opinion is not based on any research, study, or analysis. His opinion is pure speculation, inadmissible under Rule 702. Col. Shepard likewise impermissibly speculates about the facts of this case. NSO provided Col. Shepard with virtually no evidence at all and nothing about the specifics of NSO's attacks on WhatsApp that are at issue. Col. Shepard lists only four documents with Bates numbers (meaning they were produced in discovery in this action) among his materials "considered," and those documents were just NSO's marketing material related to Pegasus and the Business Ethics Committee Charter of Triangle

---

[1] Col. Shepard's deposition transcript is attached as Exhibit B to the Declaration of Micah Block and cited herein as "Tr." Col. Shepard's expert report is attached as Exhibit A to the Declaration of Micah Block and cited herein as "Report."

Holdings SA (NSO's parent company).[2]  NSO did not give Col. Shepard a list of its customers—which NSO also refused to produce in this case—yet Col. Shepard opines about the identity of NSO's customers and legitimacy of Pegasus as a cyber surveillance tool.  *See, e.g.*, Report ¶¶ 38, 40.  Such opinion, untethered from the evidence, is not "based upon sufficient facts or data" to be admissible expert testimony.  Fed. R. Evid. 702(a).

*Third*, even if Col. Shepard's military background gives him some experience or special knowledge relevant to this case (it does not) and his opinions were reliable (they are not), the Court should exclude Col. Shepard's testimony under Rule 702 because it will not "help the trier of fact understand the evidence or determine a fact in issue." *Id.*  Defendants have long argued that they should be excused from liability in this litigation because—according to them—NSO only sells its Pegasus spyware to sovereign governments and Pegasus can only be used to investigate crime and terrorism.  This Court has already rejected this purported law enforcement defense, when, on December 20, 2024, it ruled that NSO was liable for hacking servers owned by Plaintiffs.  Given the Court's ruling on liability, the only question for the jury is how much NSO owes Plaintiffs in damages.  Col. Shepard's proffered opinions, on their face, could not possibly "help the trier of fact understand the evidence or determine a fact in issue" with respect to determining that amount.  Fed. R. Evid. 702(a).  NSO claims that Col. Shepard's testimony may bear on Plaintiffs' requests for punitive damages and injunctive relief, but Col. Shepard has no knowledge of the specifics of NSO's attack against WhatsApp and no knowledge of NSO's customers or how Pegasus is used other than anecdotes for which he cannot share the details because they are "classified."  Rule 702 does not permit Col. Shepard to offer opinions about the merits of Pegasus or NSO in the abstract.  The Court should reject NSO's attempt to call Col. Shepard to put his military imprimatur on NSO's irrelevant claim that it makes the world a better place.

---

[2] Col. Shepard did not even sign the governing protective order in this case, presumably because he was not being asked to review any information designated "Confidential."  Tr. at 345:22–346:9.

## BACKGROUND

### I.    Col. Shepard's Background

In 1998, Col. Shepard received a Bachelor of Science degree in social science from California Polytechnic State University, San Luis Obispo, where he took "six or seven" courses in computer science.  Report ¶ 3; Tr. at 215:19–217:3.  After graduating college, Col. Shepard served in a variety of positions in the United States Army, California National Guard, and California Military Department between 1998 and 2024.  Report ¶¶ 3–16.  Col. Shepard has never previously served as an expert witness.  Report ¶ 19; *see* Tr. at 10:11–12.  Col. Shepard has not authored any publications on any topic.  Report ¶ 20; Tr. at 210:21–211:5.

### II.    Col. Shepard's Report

NSO served Plaintiffs with Col. Shepard's expert report on August 30, 2024.  In his report, Col. Shepard offers five principle opinions:

**1.**  Threat actors use encrypted messaging applications to undermine U.S. and allied national security.

**2.**  The United States and its allies widely use surveillance tools like Pegasus to protect national security.

**3.**  The United States and its allies draw on a large market of cyber surveillance tools, which need to be maintained as confidential.

**4.**  Government agencies routinely ignore terms of service.

**5.**  Many cyber surveillance tools do not have the safeguards like those used by Pegasus.

*See* Report ¶¶ 23–45, at 6–12 (describing these opinions in the "intended testimony and reasoning" section, which includes 23 numbered paragraphs, spanning six pages of text).

Col. Shepard's report does not cite anything—no documents (public or produced in this litigation) and no testimony—in support of his opinions.  Appendix I to his report is a "list of information considered" that includes four documents produced in this case and various public documents.  Report at 13, 17.  As the basis for his opinions, Col. Shepard relies on his military experience: "Through my various assignments, I am familiar with the marketplace of commercial and non-commercial cyber-surveillance tools, including Pegasus, used by the United States and its allies/partners.

3

I am also familiar with the technical tradecraft practiced by significant U.S. adversaries, including nation-states, terrorist groups, international criminal syndicates, drug traffickers, human smugglers, and others."  Report ¶ 18.

### III.    Col. Shepard's Deposition

Plaintiffs deposed Col. Shepard on November 21, 2024.  Col. Shepard described himself as "operational" and "not an academic," Tr. at 175:9–17, and extensively relied on his military experience as the basis for his expertise and opinions. *See, e.g.*, Tr. at 172:23–173:9–25 (explaining that the basis for his opinion that threat actors routinely use encrypted messaging platforms is his "personal experiences").[3]  Col. Shepard testified that he is "well versed" on the "operational and strategic side of cybersecurity" and in "cyber surveillance tools."  Tr. at 210:11–20, 218:17–22.  Despite this, he has never authored any publications on cybersecurity or cyber surveillance.  Tr. at 210:21–211:5, 219:3–7.

When pressed on details regarding the military experiences forming the bases of his opinions, Col. Shepard frequently refused to provide them because, according to him, the details constitute "classified" information.  *See, e.g.*, Tr. at 336:7–337:7 ("[T]here's a lot of information as far as the classified side and deployments that I utilized as far as to—to base my opinion . . . .").  Col. Shepard admitted that, at trial, he could not share such classified information with the jury, Court, or anyone else, absent everyone having security clearance.  Tr. at 71:3–20.

## LEGAL STANDARD

A witness who has been qualified as an expert by knowledge, skill, experience, training, or education may give an opinion on scientific, technical, or otherwise specialized topics if "(1) the expert's scientific, technical, or other special knowledge will help the trier of fact understand the evidence or determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) the

---

[3] Col. Shepard admitted to not being an expert in WhatsApp's encryption capabilities (Tr. 170:18–25); U.S laws governing surveillance (Tr. at 202:22–203:6, 204:22–205:5); law enforcement (Tr. at 232:21–233:1); military intelligence (Tr. at 94:20–21, 233:9–234:11); foreign policy (Tr. at 234:12–14); human rights (Tr. at 234:15–17); U.S. expert control laws (Tr. at 234:18–20); Israeli expert control laws (Tr. at 234:21–23); and international trade law (Tr. at 234:24–235:1).

testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met.  *In re Ripple Labs, Inc. Litig.*, 2024 WL 4583525, at *1 (N.D. Cal. Oct. 24, 2024).  The district court plays a "gatekeeping role" to ensure that the proponent of an expert's testimony satisfies its burden of demonstrating that the testimony is admissible.  *Sullivan v. U.S. Dep't of Navy*, 365 F.3d 827, 833 (9th Cir. 2004) (citing *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 141 (1999)).  Evidence must be both reliable and relevant in order to be admissible, and the expert must be qualified with respect to the opinions offered.  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

## ARGUMENT

There are several, independent reasons to exclude Col. Shepard's opinions under Rule 702. *First*, Col. Shepard is not qualified to give expert testimony on any of the opinions he offers, and his testimony cannot be properly tested because it is based on "classified" information that Col. Shepard will not reveal.  *Second*, each of his specific opinions is unreliable for a variety of reasons, including that they are not "based on sufficient facts or data," nor "the product of reliable principles and methods."  Fed. R. Evid. 702.  *Third*, even if Col. Shepard were qualified and his opinions were reliable, they would not assist the jury to "understand the evidence or determine a fact in issue" in the damages trial, *id.*, nor assist the Court in deciding Plaintiffs' request for injunctive relief.

I.   **Col. Shepard's Military Experience Does Not Qualify Him as an Expert on Any of the Offered Opinions and His Testimony Cannot Be Properly Tested Because It Is Based on Classified Information**

Experts relying on their experience, like Col. Shepard, must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinions, and how that experience is reliably applied to the facts."  Fed. R. Evid. 702 advisory committee's notes to 2000 amendment; *see United States v. Cerna*, 2010 WL 11627594, at *6 (N.D. Cal. Dec. 17, 2010) (citing *Hankey*, 203 F.3d at 1168).  The district court may then examine "whether the expert's experience supports the expert's conclusions," "whether the expert's reasoning is circular, speculative, or

otherwise flawed," or "whether the expert's reasoning is adequately explained." *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509 (2023). "Reliability becomes *more*, not less important" when expert opinion is based on experience rather than scientific knowledge. *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (emphasis added).

Col. Shepard's military experience fails to provide a sufficient or reliable basis for the opinions he offers. For example, Col. Shepard opines, among other things, that "threat actors" use encrypted messaging platforms like WhatsApp, and that NSO's Pegasus spyware is routinely used to access these encrypted messages. Report ¶¶ 1, 23–26. Yet Col. Shepard has never actually used Pegasus spyware, and NSO gave him no access to the spyware or any data about customers or those targeted with Pegasus. Tr. at 224:14–16, 303:12–20. Moreover, Col. Shepard lacks any knowledge about NSO's use of Pegasus to access WhatsApp servers or the mobile devices of WhatsApp users without authorization—the subject of this lawsuit. *See* Tr.at 266:9–13. Instead, Col. Shepard testified to merely being present during "classified" discussions with unidentified individuals in which the use of Pegasus was discussed. Tr. at 70:5–11. Col. Shepard claims to be unable to share details about these discussions because the details are "classified." Tr. at 69:23–71:2.

Col. Shepard's inability to testify as to the classified information that forms the bases of his opinions is an independent reason why his opinions are unreliable. Throughout his testimony, Col. Shepard stated that he could not answer questions related to his opinions on the grounds that the information is classified.[4] This refusal prevented Plaintiffs from performing any meaningful inquiry

---

[4] *See e.g.*, Tr. at 69:23–71:21 (stating that he cannot explain the basis of his first-hand knowledge that Pegasus is being utilized by Ukraine and in Europe because the information is classified); Tr. 80:11–82:24, 95:7–17 (stating that he cannot testify to the specifics of the "four or five" instances where he is aware of Pegasus's successful use or to the identity of the parties using Pegasus in those instances because the information is classified); Tr. at 91:25–93:5 (stating that he cannot identify many of the U.S. allies he claims to have knowledge of using Pegasus because the information is classified); Tr. at 98:19–99:22, 113:14–114:19 (stating that he cannot discuss conversations he testifies to have had with the CIA regarding Pegasus or misuses of Pegasus because they are classified); Tr. at 198:5–22 (stating that he cannot discuss the specifics of the lawful surveillance tools he refers to in his report because they are classified); Tr. at 307:10–308:8 (stating that information in reports he has read about "the effects" that limiting use of technologies like Pegasus would have on "national security of the United States, our partner and allied countries" is classified); Tr. at 316:15–318:1; Report at ¶ 26 (stating that the names of the "surveillance tools similar to Pegasus" are "classified"); Tr. 319:6–22 (stating that he cannot provide the names of the NSO

into the basis for Col. Shepard's opinions and leaves the Court unable to verify the reliability of his methodology. *See In re Leap Wireless Int'l, Inc.*, 301 B.R. 80, 85 (Bankr. S.D. Cal. 2003). In *In re Leap Wireless*, a creditor moved to strike an expert report valuing the price of certain licenses held by the debtor on the grounds that the expert relied upon "comparable sales information and term sheets that were subject to confidentiality agreements." *Id.* at 81–82. In granting the creditor's motion to strike, the court found that the report "inextricably relie[d] on confidential information," and the expert conclusions "c[ould not] be tested" leaving it "with the bare option . . . to trust but not verify" the expert's conclusions. *Id.* at 84–85. Further, the court was unmoved by the expert's belief that his conclusions would not have changed even if the confidential information had not been considered. *Id.* Likewise here, Defendants seeks to introduce an expert opinion based on information without producing or permitting questioning regarding such information.[5] This renders Col. Shepard's methodology untestable, and therefore, inadmissible under Rule 702 because the court cannot properly perform its gatekeeping function under Daubert.

## II. Each of Col. Shepard's Opinions Should Be Excluded Under Rule 702

Each of the five opinions that Col. Shepard offers is unreliable and should be excluded under Rule 702.

### A. Col. Shepard Has No Reliable Basis To Opine that Threat Actors Use Encrypted Messaging Applications To Undermine U.S. and Allied National Security

Col. Shepard's first opinion that "Threat Actors Use Encrypted Messaging Applications to Undermine U.S. and Allied National Security" is unreliable. Report ¶¶ 23–25. At his deposition,

---

customers he claims to have firsthand knowledge about unless "the courtroom is secure" and everyone in the room has the appropriate security clearance).

[5] The court in *Leap Wireless* also found the expert's testimony to be inadmissible under Rule 403, because the probative value of expert's report was "substantially outweighed by the danger of unfair prejudice" given expert's reliance on confidential information, which "left the court and [creditor] with the bare option . . . to trust but not to verify." *Id.* at 85. That argument also applies here. To the extent the Court does not exclude Shepard's testimony under Rule 702, the Court should exclude it under Rule 403, because of Col. Shepard's reliance on classified information, among other reasons.

1    Col. Shepard added that, based on his personal experience, "over 99 percent" or "99 percent" of

2    "threat actors" used encrypted messaging applications.  Tr. at 173:7–175:19.  Yet Col. Shepard ad-

3    mits that he has not conducted any "study" on the use of encrypted messaging applications by threat

4    actors and, in support of his 99% figure, could only "refer back to, like, [his] time on the border to

5    give a specific example operationally."  Tr. at 175:9–19.  In his report, Col. Shepard states that he

6    has "witnessed threat actors using encrypted messaging applications,"[6] including "Russian intelli-

7    gence services (and proxies) operating in Ukraine and Eastern Europe, terrorist groups in the Middle

8    East, and groups trafficking in drugs, other illicit items, or human beings on the U.S. southern bor-

9    der."  Report ¶ 24.  At his deposition, Col. Shepard clarified that he in fact has no firsthand experience

10   to support that sweeping conclusion.  For instance, Col. Shepard admitted that he only had an "advi-

11   sory" role in Eastern Europe and could not remember how many times he reviewed any electronic

12   communications on the mobile devices that were obtained.  *See* Tr. at 179:20–180:19.  Col. Shepard

13   also testified that the only time he had personally obtained any devices and reviewed their contents

14   was during his service in the Middle East.  Tr. at 182:11–183:9.  But Col. Shepard last served in the

15   Middle East in 2007 (Report ¶ 5)—long before the widespread adoption of any encrypted messaging

16   application, and two years before WhatsApp was even created.

17          The analytical gap between Col. Shepard's experience and his opinions confirms that Col.

18   Shepard did not provide a reliable basis for his intended testimony regarding "threat actors" using

19   encrypted messaging applications, much less WhatsApp.  A court cannot rely on a potential expert's

20   general qualifications to establish the reliability of their testimony.  *See, e.g.*, *Valencia-Lopez*, 971

21   F.3d at 901, *Cerna*, 2010 WL 11627594, at *13.  In *Valencia-Lopez*, the government's expert opined

22   that the chance of drug cartels coercing a driver to smuggle drugs was "almost nil, almost none."  971

23   F.3d at 895.  Although the expert had general law enforcement expertise, he "never explained the

24   methodology, if any, that he relied on to arrive at the near-zero probability of drug trafficking organ-

25   izations using coerced couriers."  *Id.* at 900.  In addition, "the record d[id] not establish the method

26

27   ———————————————

28   [6] Col. Shepard's report does not say that he witnessed threat actors using "WhatsApp" specifically, as opposed to "encrypted messaging applications" generally.  Report ¶ 24.

8

[the expert] employed to arrive at his 'almost nil' opinion." *Id.* Likewise here, Col. Shepard's experience gives him no basis to opine on threat actors use of encrypted messaging services.

Col. Shepard's failure to explain *how* he concluded that 99% of threat actors used encrypted messaging applications provides another reason to exclude this opinion. "As a prerequisite to making the Rule 702 determination that an expert's methods are reliable, the court must assure that the methods are adequately explained." *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002). An expert who bases his opinion in personal experience must nonetheless "detail the knowledge, investigatory facts and evidence he was drawing from." *Id.* Here, Col. Shepard made no attempt to link his limited experience to his conclusion that 99% or more of threat actors used encrypted messaging applications. *See Cerna*, 2010 WL 11627594, at *13 (excluding testimony from law enforcement expert based on "conclusory reasoning" about the "culture" of gangs). Though Col. Shepard claimed reliance on other studies in his deposition, he has "neither identified with specificity or submitted such materials," so there is no way to "show a 'known or potential rate of error,' their 'general acceptance,' or whether [the expert] has applied them 'reliably to the facts of the case.'" *Barber v. City of Santa Rosa*, 2010 WL 5069868, at *7 (N.D. Cal. Dec. 7, 2010) (excluding opinion based on expert having "'seen studies' indicating tasers are 'three-percent unsuccessful'"); *see also Crescenta Valley Water Dist. v. Exxon Mobile Corp.*, 2013 WL 12120533, at *6 (C.D. Cal. Mar. 14, 2013) (excluding expert opinion purporting to rely on study not referenced in expert report).

### B. Col. Shepard Has No Reliable Basis To Opine that the United States and Its Allies Widely Use Surveillance Tools Like Pegasus To Protect National Security

Col. Shepard's second opinion concerning the "routine use of tools like Pegasus . . . by the U.S. and allied countries" as well as the "operational gaps that the lack of such tools would create in attempting to counter threat actors using encrypted messaging applications," Report ¶ 1, is unreliable.

At his deposition, Col. Shepard could not name one instance of the United States actually deploying Pegasus or other similar surveillance tools in the interest of national security, Tr. at 82:13–83:9, and disclaimed any firsthand knowledge of the United States using Pegasus. Tr. at 244:21–

245:12.[7]  Col. Shepard claims that the United States "uses tools using signals intelligence," but does not specify what those tools are or his basis for claiming that they are "like Pegasus."  Tr. at 243:13–244:19.  Because Col.'s Shepard's testimony on the use of Pegasus and similar technologies by the United States is wholly speculative, it should be excluded.  *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022) (Because Rule 702 requires an expert's opinion to be "based on sufficient facts or data," a court "may reject wholly speculative or unfounded testimony."); *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 614 (9th Cir. 2016) (excluding opinion estimating market share where there was no evidence in record regarding customer preferences).

Col. Shepard's opinion regarding "U.S. allies" use of Pegasus or similar technologies is likewise inadmissible.  At his deposition, Col. Shepard could testify to Mexico's use of Pegasus—because of public reports on this topic—but refused to provide the identities of any other "U.S. allies" using Pegasus.  Tr. 106:4–20.  He claimed to know of a handful of such instances but refused to provide details because the information is "classified."  Tr. at 82:13–18 ("Q. And who was using the Pegasus tool in these instances?  A. Again, I can't—it's—as far as classified, as far as—I can't go over the specifics as far as what country—or the people that were utilizing it."); Tr. at 92:24–93:19 ("Q. Is your testimony that the names of the allied counties that utilized Pegasus is classified information?  A. To my knowledge, I—I believe so.").   This reliance on classified information is reason enough to exclude Col. Shepard's opinion.  *See In re Leap Wireless Int'l, Inc.*, 301 B.R. at 85 (striking expert report for relying on "confidential information which cannot be tested . . . . in preparing his

---

[7] In fact, in March 2023, President Biden signed an Executive Order banning "spyware that poses risks to national security," Exec. Order No. 14093, 88 FR 18957 (Mar. 27, 2023), and in the accompanying press release, the White House referenced the Department of Commerce having, in November 2021, added four foreign commercial entities "to the Entity List for engaging in the proliferation and misuse of cyber intrusion tools contrary to the national security or foreign policy interests of the United States." *See* FACT SHEET: President Biden Signs Executive Order to Prohibit U.S. Government Use of Commercial Spyware that Poses Risks to National Security (Mar. 27, 2023), https://www.whitehouse.gov/briefing-room/statements-releases/2023/03/27. One of those four referenced entities was NSO.  *See* Press Release, U.S. Dep't of Com., Commerce Adds NSO Group and Other Foreign Companies to Entity List for Malicious Cyber Activities (Nov. 3, 2021), https://www.commerce.gov/news/press-releases/2021/11/commerce-adds-nso-group-and-other-foreign-companies-entity-list (describing adding NSO to the Entity List for "malicious cyber activities" and "for engaging in activities that are contrary to the national security or foreign policy interests of the United States."

1    report and arriving at his conclusion").

2         More generally, any opinion by Col. Shepard related to NSO's customers is unreliable be-

3    cause Col. Shepard admitted to not having reviewed a "full list" of NSO's customers.  Tr. at 287:10–

4    12.  This fact is unsurprising given that NSO has refused to produce such a list in discovery, arguing

5    "[n]either Plaintiffs' claims nor NSO's defenses rise or fall on those identities" of NSO's customers,

6    Dkt. No. 249-2 at 13.  It is unfair for NSO to resist production of its customer list on the basis that

7    the information is irrelevant, while now seeking to inject expert testimony on this topic into the dam-

8    ages trial.  In any case, the absence of record evidence concerning the identity of NSO's customers

9    prevents Col. Shepard from offering any opinions on this topic.  *See Elosu*, 26 F.4th at 1025; *Ther-*

10   *moLife*, 648 F. App'x at 614; *In re Leap Wireless Int'l, Inc.*, 301 B.R. at 85.

11        Finally, because Col. Shepard has no basis to testify about the use of Pegasus, he likewise has

12   no basis to offer an opinion about what would occur if Pegasus were not used.  *See* Report ¶¶ 29, 30–

13   33.

14   **C. Col. Shepard Has No Reliable Basis To Opine on the Marketplace for Commercial**

15        **Surveillance Tools and WhatsApp's Work with Law Enforcement**

16        Col. Shepard's third opinion concerns "the marketplace for such commercial tools and the

17   need to maintain them as confidential."  Report ¶ 1; *see also* Report ¶¶ 31–35.  As part of this opinion,

18   Col. Shepard describes the development and importance of commercial surveillance tools.  Report

19   ¶¶ 31–33.  In particular, Col. Shepard opines that commercial surveillance tools need to act with

20   stealth because encrypted message providers "do not help the government obtain access to encrypted

21   communications," and may even make changes to their platforms to stop the surveillance tools.  Re-

22   port ¶¶ 34–35.

23        *First*, Col. Shepard fails to explain how his experience supports his opinions related to the

24   marketplace for commercial surveillance tools.  And an expert's general experience in a field does

25   not give the expert carte blanche to opine on every aspect of the field.  For instance, an expert with

26   decades of experience in the life insurance industry lacked any basis for offering an opinion on indi-

27   viduals' motivations for purchasing life insurance policies.  *See In re PFA Ins. Mktg. Litig.*, 696 F.

28   Supp. 3d 788, 800 (N.D. Cal. 2021) (calling opinion "speculative and unsupported").  While Col.

Shepard claims that he is "familiar with the marketplace of commercial and non-commercial cyber-security tools, including Pegasus, used by the United States and its allies/partners," Report ¶ 18, his deposition testimony undermines this supposed familiarity. As stated above, Col. Shepard testified that he has no firsthand knowledge or experience with the United States licensing Pegasus and re-fused to disclose the U.S. allies that he says supposedly licensed NSO's spyware (a topic on which NSO has also withheld discovery) claiming such information is "classified." *See* Tr. at 82:13–83:9, 244:21–245:12. More specifically, Col. Shepard testified that he has never been involved in the purchase or sale of Pegasus. Tr. at 246:2–247:19. The admitted gaps in Col. Shepard's experience demonstrate that his opinions relating to the marketplace for commercial surveillance should be ex-cluded.

*Second*, Col. Shepard fails to explain how his experience supports his opinions regarding the way that "encrypted messaging application providers such as WhatsApp" respond to government requests. Report ¶ 34. Col. Shepard has never requested data from Meta or WhatsApp. Tr. at 392:23–393:1. He neither cited nor listed in his materials considered any of Plaintiffs' actual publi-cations regarding how they respond to requests from law enforcement authorities.[8] Nor has Col. Shepard ever applied for a court order to request such information, or even read such an application, which would be "outside of [his] scope as far as how the procedures—the technical procedures work as far—how that goes." Tr. at 189:15–190:5. At his deposition, Col. Shepard "remember[ed] read-ing" reports stating that WhatsApp responded to "77 percent" or "25 percent" of court orders in some capacity, but could not identify or recall those reports. Tr. at 188:16–189:11; *see In re Roundup Prods. Liab. Litig.*, 2024 WL 3737622, at *3 (N.D. Cal. June 20, 2024) (excluding opinion where expert "seemed to be unfamiliar with portions of the relevant literature" and "struggled to recall what they said or what he thought about them"). Given Col. Shepard's lack of experience with law en-forcement requests to WhatsApp (coupled with his lack of research or analysis), and given his failure

---

[8] *See, e.g.*, WhatsApp, *Information for Law Enforcement Authorities*, https://faq.whatsapp.com/444002111197967/?locale=en_US; WhatsApp, *About Government Re-quests for User Data*, https://faq.whatsapp.com/808280033839222; Meta Platforms, Inc., *Govern-ment Requests for User Data*, https://transparency.meta.com/reports/government-data-requests.

1    to consider the central documents describing this process, his intended testimony on this topic is not

2    based on "sufficient facts or data." Fed. R. Evid. 702. Because Col. Shepard's opinion is "so funda-

3    mentally unsupported," "it can offer no assistance to the jury" and must be excluded. *Hartley v.*

4    *Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002).

5        **D.  Col. Shepard Has No Reliable Basis To Opine on Governments' Compliance with**

6            **Terms of Service**

7        Col. Shepard's fourth opinion concerns "government actors' compliance with terms of ser-

8    vice." Report ¶ 1. Specifically, Col. Shepard opines that "[i]ntelligence agencies typically do not

9    follow ordinary terms of service when acting in a governmental capacity and pursuing major security

10   and safety threats," and that "many non-government users routinely engage in activities that are in-

11   consistent with the Terms of Service and without adverse action by providers." Report ¶¶ 36–37.

12       Col. Shepard's expert report lacks any description or example of any violation of any terms

13   of service, let alone the WhatsApp Terms of Service by a government actor. At his deposition, Col.

14   Shepard testified that he did not perform any study or empirical analysis about how often government

15   agencies breach terms of service because, according to him, "it's a very common technique, espe-

16   cially in the cybersecurity world" and that "there's no analysis needed." Tr. 388:22–390:11. Col.

17   Shepard could only rely on a general example of a "good guy" using "a VoIP number not associated

18   with you," "a name not associated with you," "an e-mail not associated with you," and "a VPN that

19   says you're in Hungary." Tr. at 250:21–251:23; *see also* Tr. at 384:6–10 ("I'm aware of government

20   employees using WhatsApp on phones, creating accounts, not associated with phone numbers in the

21   United States, using VPNs to -- when the accounts are created to appear outside of the United

22   States."). Importantly, however, Col. Shepard admitted that he had no basis to opine that these prac-

23   tices violated WhatsApp's terms of service. He testified that he had not read the WhatsApp Terms

24   of Service in connection with his engagement and had no understanding of whether the WhatsApp

25   Terms of Service prevented the conduct he described. Tr. at 251:24–252:18; *see also* Tr. at 384:17–

26   20 ("In terms of WhatsApp specifically, the terms of service, as we talked about before, I don't know

27   all the details in the terms of service."). Because Col. Shepard has no idea what the WhatsApp Terms

28   of Service permit or prohibit, he has no basis to opine on compliance with these terms of service.

1  Col. Shepard's recollection of the terms of service were "so vague that it cannot be helpful to the

2  jury." *Lin v. Solta Med., Inc.*, 2024 WL 5199905, at *4 (N.D. Cal. Dec. 23, 2024) (excluding expert

3  opinion).

4      **E.  Col. Shepard Has No Reliable Basis To Opine that Many Cyber Surveillance Tools**

5          **Do Not Have the Safeguards that Pegasus Does**

6          To opine that many cyber surveillance tools do not have Pegasus's "safeguards, "Col. Shep-

7  ard's report merely rehashes NSO's marketing materials and does not describe the safeguards of any

8  other tool. *See* Report ¶¶ 38–45.  Prior to submitting his expert report, Col. Shepard had no discus-

9  sions with NSO personnel regarding how the safeguards operated in practice, or whether their pub-

10 lished policies were followed in every instance.  Tr. at 259:14–19.  His report does not even name

11 any other "cyber surveillance tool" with which he is comparing Pegasus, let alone describe the com-

12 parative safeguards.  Report ¶¶ 44, 45.  He also could not name any such tool at his deposition.  He

13 claimed to have knowledge about "five or six" competing commercial surveillance tools but said that

14 he was unable to remember a single one of their names.  Tr. at 402:21–403:2 ("I don't recall this—

15 I'd have to—I'd have to go look.").  Without remembering their names, he of course did not study

16 their "safeguards," nor understand the due diligence the companies perform, and he admitted at his

17 deposition to not having done any empirical analysis on the due diligence of other cyber surveillance

18 companies.  Tr. at 408:11–411:1.  The Court should thus exclude this opinion.  *See, e.g.*, *Williams v.*

19 *Illinois*, 567 U.S. 50, 80 (2012) ("[T]rial courts can screen out experts who would act as mere con-

20 duits for hearsay by strictly enforcing the requirement that experts display some genuine 'scientific,

21 technical, or other specialized knowledge.'" (quoting Fed. R. Evid. 702(a)); *see also Caldwell v. City*

22 *of San Francisco*, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021) ("The Ninth Circuit has rec-

23 ognized that experts cannot insert non-existent facts into the record through their expert reports" and

24 "cannot use experts as mere 'conduits' for otherwise inadmissible evidence.").

25    **III.    Col. Shepard's Testimony Should Be Excluded Because His Opinions Will Not**

26            **Help the Jury Determine Damages or the Court Determine Injunctive Relief**

27         Even if this Court concludes that Col. Shepard's military service provides a reliable basis for

28 him to offer opinions at trial, the entirety of his report is nonetheless irrelevant to any issue that will

1  be raised at the forthcoming damages-only trial.  Expert opinion testimony is relevant if it assists the

2  factfinder in deciding a pertinent factual issue.  *Daubert*, 509 U.S. at 591 ("Expert testimony which

3  does not relate to any issue in the case is not relevant and, ergo, non-helpful." (internal quotation

4  marks and citations omitted)); *see Giuliano v. Sandisk Corp.*, 2015 WL 10890654, at *4 (N.D. Cal.

5  May 14, 2015) ("Expert testimony must be sufficiently tied to the facts of the case such that it will

6  aid in determining a fact in issue.").  Here, Col. Shepard's opinions "have no relevance to the legal

7  and factual matters to be resolved by the jury" and thus should be excluded.  *Brice v. Haynes Invs.,*

8  *LLC*, 548 F. Supp. 3d 882, 903 (N.D. Cal. 2021).

9       The Court's order granting Plaintiffs' motion for summary judgment found that NSO was

10  liable for violating the CFAA, violating the CDAFA, and for breaching the WhatsApp Terms of

11  Service.  *See* Dkt. No. 494 at 10–15.  In light of the Court's order, "a trial will proceed only on the

12  issue of damages."  *Id*. at 16.  None of Col. Shepard's proffered opinions have any relevance to the

13  categories of relief that Plaintiffs intend to seek at the damages-only trial.

14       ***Compensatory damages***.  Col. Shepard's expert testimony has no relevance to Plaintiffs' re-

15  quest for compensatory damages.  As a baseline measure of damages, Plaintiffs intend to seek com-

16  pensatory damages for Plaintiffs' costs in responding to NSO's attack.  Col. Shepard admitted at his

17  deposition that he did not conduct any analysis of how much time and money Plaintiffs spent re-

18  sponding to NSO's attack.  *See* Tr. at 304:8–16 ("Q. You've done no analysis of whether Plaintiffs

19  suffered loss or incurred costs as a result of the attacks; correct? . . . THE WITNESS: Again, I don't—

20  I don't know any detailed information on any potential exploits of devices or the people associated

21  with them.").  As such, Col. Shepard's testimony has no relevance to this issue.

22       ***Disgorgement of profits***.  Col. Shepard's testimony has no relevance to Plaintiffs' request for

23  disgorgement.  Because NSO is liable for breaching the WhatsApp Terms of Service, Plaintiffs intend

24  to seek disgorgement of the profits that NSO unjustly obtained.  *See Alkayali v. Hoed*, 2018 WL

25  3425980, at *6 (S.D. Cal. July 16, 2018) ("California law permits plaintiffs to seek disgorgement of

26  a defendant's unjust enrichment as a restitutionary remedy for breach of contract.").  Here too, Col.

27  Shepard admitted that he did not conduct any analysis.  *See* Tr. at 305:24–306:2 ("Again, any—any

28  re- — any potential exploits of 1,400 devices and the — the finances associated with that, I—I don't

have any visibility on."); Tr. at 306:4–11 ("Q. And you've done no analysis more generally of whether NSO's violations of U.S. law or WhatsApp term—WhatsApp's terms of service have generated profit to NSO; correct? . . . THE WITNESS: I—I don't have any situational awareness on that.").  In light of these admissions, Col. Shepard's testimony has no relevance to Plaintiffs' request for disgorgement of NSO's profits.

*Punitive damages*. Col. Shepard's testimony has no relevance to Plaintiffs' request for punitive damages.  Plaintiffs intend to seek punitive damages for NSO's violation of the CDAFA.  *See* Cal. Penal Code § 502(e)(4) (allowing court to award "punitive or exemplary damages" for violation of CDAFA); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1044 (S.D. Cal. 2023) (CDAFA "allows for compensatory damages, punitive damages, and attorneys' fees").  Under California law, a plaintiff can recover punitive damages where "it is proved by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice."  Cal. Penal Code § 502(e)(4).

None of Col. Shepard's opinions relate to the conduct that is actually at issue in this case or the evidence that is in the record.  For instance, his first opinion concerns the purported use of encrypted messages by "threat actors," but the identity of the target users has no bearing on any claims or defenses in this case, and NSO has provided no evidence about the identity of the target users. Similarly, his second opinion concerns the use of Pegasus by certain customers, but the identity of NSO's customers has no bearing on any claims or defenses in this case, and NSO has provided no evidence about the identity of its customers, or whether the attacks against WhatsApp servers were actually part of any law enforcement activity.  *See* Tr. at 270:8–274:2; *see also* Dkt. No. 249-2 at 13 (NSO arguing that "[n]either Plaintiffs' claims nor NSO's defenses rise or fall on those identities"). His fourth opinion suffers from the same flaws: whether government actors comply with terms of service generally is not relevant to NSO's law breaking or the appropriate remedies.  These opinions all center on the "social utility" of NSO's Pegasus spyware, which is irrelevant to what the jury must decide.  *Brice*, 548 F. Supp. at 902 (excluding expert opinions regarding "social utility" of various business arrangements at issue in RICO case).

More broadly, Col. Shepard has not analyzed how Pegasus actually functioned in this case. Tr. at 277:10–280:17 ("Q. But you haven't examined the facts and circumstances of this case with respect to the exploitation?  A. I guess the specifi- —if you're talking about a specific detail on an exploit of a device as far as associated with this case, as far as looking at it directly, I've not seen, you know, or been read in on that.").   Nor has Col. Shepard conducted any analysis of whether NSO obtained any information from WhatsApp's servers or the target devices of WhatsApp users.  Tr. at 280:18–285:5; Tr. at 282:7–21 (stating that he could testify "[a]s far as operationally" and "how I saw it being used in the southwest border in—Eastern Europe" when asked whether he has done an "analysis of whether or how NSO obtained information from WhatsApp servers").  While Col. Shepard may have high-level opinions about the nature of NSO's conduct and the need for its business, he has no basis to opine on whether, in this case, NSO acted with "oppression, fraud, or malice." Cal. Penal Code § 502(e)(4); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1068 (C.D. Cal. 2013) (excluding expert's "general testimony" regarding collision investigations where expert "offers no opinions that are specific to the Camry or the collision"); *Rovid v. Graco Childs. Prods. Inc.*, 2018 WL 5906075, at *8 (N.D. Cal. Nov. 9, 2018) (excluding expert's testimony that "did *not* even attempt to simulate" the facts in the case).  As such, Col. Shepard's testimony has no relevance to the jury's consideration of punitive damages.

Moreover, even if it were within the province of the jury to consider matters within the scope of Col. Shepard's intended testimony when it evaluates punitive damages, there is no basis to conclude here that Col. Shepard's testimony will help that evaluation.  The trier of fact is capable of evaluating NSO's culpability based on the record evidence.  NSO has not identified any evidence that the jury will need Col. Shepard's special expertise (if any) to understand.  If NSO believes that the context of its business cuts against an award of punitive damages, "that context may be readily provided by percipient witnesses." *Brice*, 548 F. Supp. 3d at 903 (cleaned up).  There is no need or basis to inject a former military officer's personal views into the jury's determination.

***Injunctive relief***. Finally, Col. Shepard's testimony has no relevance to Plaintiffs' request for injunctive relief stemming from NSO's violations of the CFAA, CDAFA, and the WhatsApp Terms

1  of Service.  *See Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 785 (N.D. Cal. 2017)

2  (granting permanent injunctive relief based on CFAA violation) *aff'd*, 749 F. App'x 557 (9th Cir.

3  2019).  None of the opinions that Col. Shepard offers are relevant to the four-factor test for determin-

4  ing injunctive relief, including the analysis of the balance of the hardships and public interest.  In

5  addition, Col. Shepard offers no specific opinion that bears on whether NSO's continued access *to*

6  *WhatsApp's servers* will have an impact on the public interest.  Finally, as with punitive damages

7  above, even if it is within the province of the Court to consider any matter within the scope of Col.

8  Shepard's intended testimony when it evaluates equitable remedies, NSO has not established and

9  cannot establish that Col. Shepard's intended testimony will be helpful to the Court.

10  <u>**CONCLUSION**</u>

11        For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to

12  exclude the expert opinions of Col. Ty Shepard.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  January 9, 2025

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  /s/ Micah G. Block
      Greg D. Andres
      Antonio J. Perez-Marques
      Gina Cora
      Craig T. Cagney
      Luca Marzorati
        (admitted *pro hac vice*)
      DAVIS POLK & WARDWELL LLP
      450 Lexington Avenue
      New York, New York 10017
      Telephone: (212) 450-4000
      Facsimile: (212) 701-5800
      Email: greg.andres@davispolk.com
        antonio.perez@davispolk.com
        gina.cora@davispolk.com
        craig.cagney@davispolk.com
        luca.marzorati@davispolk.com

      Micah G. Block (SBN 270712)
      DAVIS POLK & WARDWELL LLP
      900 Middlefield Road, Suite 200
      Redwood City, California 94063
      Telephone: (650) 752-2000
      Facsimile:  (650) 752-2111
      Email: micah.block@davispolk.com

      *Attorneys for Plaintiffs*
      *WhatsApp LLC and Meta Platforms, Inc.*