Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
          antonio.perez@davispolk.com
          gina.cora@davispolk.com
          craig.cagney@davispolk.com
          luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |  |
|---|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., a Delaware corporation, | ) ) ) ) | Case No. 4:19-cv-07123-PJH |
|  | ) ) | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GREGORY A. PINSONNEAULT** |
| Plaintiffs, | ) ) |  |
| v. | ) ) ) | Date:    February 13, 2024 |
|  | ) | Time:   1:30 p.m. |
| NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, | ) ) ) | Ctrm:   3 Judge:  Hon. Phyllis J. Hamilton Action Filed: October 29, 2019 |
| Defendants. | ) ) ) |  |

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

BACKGROUND ..................................................................................................................2

    I.    Mr. Pinsonneault's Background.................................................................2

    II.    Plaintiffs Serve Damages Expert Reports.................................................2

    III.    Mr. Pinsonneault's Opinions ...................................................................3

        A.    Mr. Pinsonneault's Opinions Regarding Plaintiffs' Labor Costs ...................3

        B.    Mr. Pinsonneault's Opinions Regarding NSO Profits Derived From Its Illegal Covert Android Exploit ...................4

LEGAL STANDARD............................................................................................................5

ARGUMENT.......................................................................................................................5

    I.    Mr. Pinsonneault's Opinions Regarding the Proper Measure of "Actual Damages" Should Be Excluded ...................5

        A.    Mr. Pinsonneault Cannot Offer Legal Conclusions as to the Proper Measure of Compensatory Damages ...................6

        B.    Mr. Pinsonneault Lacks Expertise To Opine That Certain Labor Costs Should Be Excluded...................8

    II.    Mr. Pinsonneault's Opinion Regarding The Amount of NSO's Illegal Profits Should Be Excluded...................13

        A.    Mr. Pinsonneault Uses an Unreliable Methodology To Estimate the Amount That NSO Spent on Covert Android-Related Research and Development ...................14

        B.    Mr. Pinsonneault Lacks Sufficient Facts and Data To Estimate the Number of Employees Who Worked on Covert Android-Related Research and Development...................15

CONCLUSION...................................................................................................................18

i

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69*,
  815 F.3d 1195 (9th Cir. 2016) ............................................................................ 9

*Am. Transp. Sys., Inc. v. Prevost Car US Inc.*,
  2024 WL 5185314 (C.D. Cal. Oct. 9, 2024) ...................................................... 16

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  2013 WL 5955666 (N.D. Cal. Nov. 6, 2013) ..................................................... 8

*Banga v. Kanios*,
  2021 WL 4133754 (N.D. Cal. Sept. 10, 2021) ................................................... 11

*Barber v. United Airlines, Inc.*,
  17 F. App'x 433 (7th Cir. 2001) ......................................................................... 16

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*,
  853 F. Supp. 2d 181 (D. Mass. 2012) *aff'd sub nom.*
  *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
  752 F.3d 82 (1st Cir. 2014) ................................................................................. 16

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
  923 F. Supp. 2d 1245 (S.D. Cal. 2013) .............................................................. 15

*Calico Brands, Inc. v. Ameritek Imps., Inc.*,
  2007 WL 9658317 (C.D. Cal. Nov. 27, 2007) ................................................... 8

*In re Conagra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ....................................................................... 11

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ............................................................................ 16

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................. 5, 10, 12

*GPNE Corp. v. Apple, Inc.*,
  2014 WL 3870256 (N.D. Cal. Aug. 6, 2014) ..................................................... 11

*Grodzitsky v. Am. Honda Motor Co.*,
  957 F.3d 979 (9th Cir. 2020) .............................................................................. 14

*Gunaratna v. Dennis Gross Cosmetology LLC*,
  2023 WL 2628620 (C.D. Cal. Mar. 15, 2023) ................................................... 8

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) .............................................................................. 6

*Harbor Compliance Corp. v. Firstbase.Io, Inc.*,
  2024 WL 1442165 (E.D. Pa. Apr. 3, 2024) ....................................................... 7

ii

*Highfields Cap. I, LP v. SeaWorld Ent., Inc.*,
  2022 WL 1037210 (S.D. Cal. Mar. 25, 2022) ................................................................ 7

*Hsin Lin v. Solta Med., Inc.*,
  2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) ............................................................. 15

*Lantec, Inc. v. Novell, Inc.*,
  306 F.3d 1003 (10th Cir. 2002) .................................................................................. 16

*LinkCo, Inc. v. Fujitsu Ltd.*,
  2002 WL 1585551 (S.D.N.Y. July 15, 2002) ............................................................... 7

*McMillan v. Weeks Marine, Inc.*,
  478 F. Supp. 2d 651 (D. Del. 2007) .......................................................................... 11

*Mighty Enters. v. She Hong Indus. Co.*,
  745 F. App'x 706 (9th Cir. 2018) ............................................................................... 11

*Mullins v. Premier Nutrition Corp.*,
  178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) ............................................................... 12

*NetFuel, Inc. v. Cisco Sys.*,
  2020 WL 1274985 (N.D. Cal. Mar. 10, 2020) ............................................................ 14

*Pavo Sols. LLC v. Kingston Tech. Co.*,
  2019 WL 8138163 (C.D. Cal. Nov. 20, 2019), *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022) .............. 10

*In re Ripple Labs, Inc. Litig.*,
  2024 WL 4583525 (N.D. Cal. Oct. 24, 2024) .............................................................. 5

*Siring v. Or. State Bd. of Higher Educ.*,
  927 F. Supp. 2d 1069 (D. Or. 2013) .......................................................................... 10

*Stephens v. Union Pac. R.R. Co.*,
  935 F.3d 852 (9th Cir. 2019) ................................................................................. 5, 15

*TAKTL, LLC v. IWR, N. Am., LLC*,
  2024 WL 4415194 (W.D. Pa. Oct. 4, 2024) ................................................................ 7

*United States v. Cerna*,
  2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) ........................................................... 12

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017) .................................................................................... 6

*United States v. Duncan*,
  42 F.3d 97 (2d Cir. 1994) ........................................................................................... 6

*United States v. Hankey*,
  203 F.3d 1160, 1168 (9th Cir. 2000) ......................................................................... 12

*United States v. Middleton*,
  231 F.3d 1207 (9th Cir. 2000) .................................................................................... 7

*United States v. Tin Yat Chin*,
  371 F.3d 31 (2d Cir. 2004) ........................................................................................ 16

*United States v. Valencia-Lopez,*
   971 F.3d 891 (9th Cir. 2020) .................................................................. 12

*Wendell v. GlaxoSmithKline L.L.C.,*
   858 F.3d 1227 (9th Cir. 2017) ......................................................... 13, 14

*White v. Ford Motor Co.,*
   312 F.3d 998 (9th Cir. 2002) .................................................................. 8

*Zimmer Surgical, Inc. v. Stryker Corp.,*
   365 F. Supp. 3d 466 (D. Del. 2019) ...................................................... 10

## STATUTES & RULES

Fed. R. Civ. P. 26(e) .......................................................................................... 3

Fed. R. Evid. 702 ................................................... 5, 8, 10, 12, 13, 15, 16

Fed. R. Evid. 703 ........................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY

PLEASE TAKE NOTICE THAT, on February 13, 2025 at 1:30 p.m. in Courtroom 3 of the U.S. District Court for the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. will and hereby do move to exclude portions of the expert testimony of Gregory A. Pinsonneault.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Micah G. Block and all exhibits thereto, the pleadings and papers on file in this action, and on such other written and oral argument as may be presented to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

On December 20, 2024, this Court granted Plaintiffs WhatsApp LLC and Meta Platforms, Inc.'s ("Plaintiffs") motion for partial summary judgment and ruled that Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. ("NSO") were liable on all of Plaintiffs' claims. *See* Dkt. No. 490. The Court then scheduled a trial solely on the issue of the proper damages, which is scheduled to commence on March 3, 2025. At this damages-only trial, NSO will rely on the testimony of Gregory A. Pinsonneault, its damages expert. Certain aspects of Mr. Pinsonneault's testimony improperly attempt to rehabilitate NSO's failures to comply with its discovery obligations and relitigate the Court's ruling on liability. The Court should exclude Mr. Pinsonneault from offering testimony in support of these opinions to ensure that the scope of his testimony complies with the requirements of Federal Rule of Evidence 702 and *Daubert*.

*First*, the Court should exclude Mr. Pinsonneault's legal opinions regarding the addressable scope of compensatory damages. Plaintiffs' damages expert has calculated the amount that Plaintiffs spent in labor costs responding to NSO's attack. Mr. Pinsonneault is free to offer alternative calculations but should not be permitted to instruct the jury that certain categories of costs are not what he calls "actual damages." These are improper legal opinions that invade the exclusive province of this Court and the jury.

*Second*, Mr. Pinsonneault should not be permitted to weave into his testimony opinions about topics unrelated to damages and outside his expertise. Throughout the course of his expert report, Mr. Pinsonneault purports to opine on Plaintiffs' victim outreach strategy and Plaintiffs' technical measures to stop unauthorized access. Mr. Pinsonneault lacks any qualifications to offer expert opinions on these topics, and such testimony should therefore be excluded.

*Third*, the Court should exclude Mr. Pinsonneault's opinion regarding NSO's unjustly obtained profits. This Court has already concluded that NSO failed to comply with its discovery obligations; one aspect of NSO's failure was its refusal to produce detailed financial information. Mr. Pinsonneault attempts to take unfair advantage of the evidentiary gap NSO created by inventing a methodology to estimate NSO's profits from its unlawful conduct directed at WhatsApp. Mr. Pinsonneault's methodology—using headcount as a proxy for corporate spending—lacks any indicia of

1

reliability, ignores key evidence in the record, and relies on cherry-picked information on issues which NSO improperly withheld discovery from Plaintiffs.  The Court should prevent Mr. Pinsonneault from offering this testimony to the jury.

At bottom, the Court should permit Mr. Pinsonneault to offer only those opinions that rely on his expertise and a sound methodology.  The portions of Mr. Pinsonneault's proposed testimony that stray past these clearly established lines should be excluded. These portions include, but are not limited to: Mr. Pinsonneault's opinions on Plaintiffs' labor costs (Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 47–67); Mr. Pinsonneault's opinions on NSO's profits subject to disgorgement (*Id.* ¶¶ 114–127, Dkt. No. 490-4, Ex. D (Pinsonneault Second Supp. Rep.), ¶¶ 18–23); and Mr. Pinsonneault's opinions regarding restricted stock units (*see* Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 278:11–14; 281:9–18).

## BACKGROUND

### I.    Mr. Pinsonneault's Background

Mr. Pinsonneault is the managing director and chief executive officer of LitiNomics, Inc., a financial and economic consulting firm that primarily focuses on litigation consulting.  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) 487-5 ¶ 4; Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 53:5–54:1.  Mr. Pinsonneault's work has focused on litigation consulting for over two decades.  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 6; Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 54:2–17.

### II.    Plaintiffs Serve Damages Expert Reports

On August 30, 2024, Plaintiffs served the affirmative expert report of their damages expert, Dana Trexler (the "Trexler Report").  *See* Dkt. No. 487-3.  The Trexler Report calculated (1) Plaintiffs' labor costs incurred in responding to NSO's attack and (2) the amount of NSO's profits stemming from the sale of the "Android zero-click installation vector for Pegasus," *Id.* at ¶ 89, also known as "Covert Android."  After Ms. Trexler submitted her initial report, Plaintiffs deposed Sarit Bizinsky Gil, NSO's corporate representative witness on damages issues, which provided insight into a document that NSO had produced just days before the expert report deadline.  In light of this new

information, Ms. Trexler submitted a supplemental report (the "Trexler Supplemental Report"), which included a revised estimate of NSO's profits stemming from the sale of Covert Android.[1]

### III.    Mr. Pinsonneault's Opinions

Mr. Pinsonneault has submitted three expert reports in this matter.[2]  Throughout these reports, Mr. Pinsonneault raises numerous disagreements with Ms. Trexler and offers his own affirmative opinions. As detailed below, Plaintiffs now seek to exclude certain of Mr. Pinsonneault's opinions.

### A.  Mr. Pinsonneault's Opinions Regarding Plaintiffs' Labor Costs

Mr. Pinsonneault opines that Plaintiffs' labor costs incurred in responding to NSO's attacks are $216,914, Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 67, lower than the $444,719 that Ms. Trexler calculated.  Dkt. No. 487-3 ¶ 86.  Mr. Pinsonneault arrives at this lower number because he believes that Ms. Trexler's labor cost calculations include costs which are not "actual damages related to the allegations made by Plaintiffs or that they are caused by Defendants."  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) at 21.

Mr. Pinsonneault offers three reasons why certain labor costs are not actual damages.  First, he excludes the labor costs that Plaintiffs incurred in contacting victims of NSO's attacks because he opines that WhatsApp was not required to contact victims and instead only did so "presumably in an effort to mitigate bad publicity and/or improve their standing in the public eye" as a result of NSO's attack.  *Id.* ¶ 49.  Second, Mr. Pinsonneault opines that Plaintiffs' response costs are overstated because it is improper to include stock-based compensation in determining the labor costs of Plaintiffs' employees.  *Id.* ¶¶ 55–63.  Third, he opines that the labor costs of certain employees are "not

---

[1]    The procedural history underpinning the expert reports in this case is set forth in greater detail in Plaintiffs' motion to strike the second supplemental report of Mr. Pinsonneault.  Dkt. No. 490-3.

[2]    NSO served Mr. Pinsonneault's initial rebuttal report on September 21, 2024.  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.).  NSO  then served Mr. Pinsonneault's supplemental report on November 8, 2024.  Dkt. No. 490-4, Ex. B.  NSO later served Mr. Pinsonneault's second supplemental report on November 21, 2024.  Dkt. No. 490-4, Ex. D.  Plaintiffs have moved to strike Mr. Pinsonneault's second supplemental report as untimely and beyond the allowed scope of a supplemental report under Federal Rule of Civil Procedure 26(e).  *See* Dkt. No. 490-3.

1  supported" by the record and should therefore be excluded.  *Id.* ¶ 65.  Mr. Pinsonneault calculates

2  that these exclusions reduce Plaintiffs' labor costs from $444,719 to $216,914.  *Id.* ¶ 67.

3       Mr. Pinsonneault offers other critiques of Ms. Trexler's calculation of Plaintiffs' labor costs,

4  but does not calculate the impact of these criticisms.  For example, he opines that certain costs in-

5  curred by Plaintiffs in responding to NSO's attack would have arisen anyway, so they are not "actual

6  damages."  *Id.* ¶ 51.  Mr. Pinsonneault does not specify which response costs fall into this bucket.

7  He also states that certain response costs may have made Plaintiffs' products more secure,  though

8  he does not calculate how much this "enhanced security" should reduce Plaintiffs' "actual damages."

9  *Id.* ¶ 54.

10  **B. Mr. Pinsonneault's Opinions Regarding NSO Profits Derived From Its Illegal Cov-**

11  **ert Android Exploit**

12       Mr. Pinsonneault also offers opinions regarding the profits NSO derived from its Covert An-

13  droid installation vector, which NSO used to access WhatsApp's servers and deliver Pegasus spyware

14  to WhatsApp users' devices.  *See id.* ¶ 91.  To calculate NSO's profits subject to disgorgement, Mr.

15  Pinsonneault purports to calculate NSO's Covert Android revenues through an analysis of a spread-

16  sheet (the "Revenue Spreadsheet") that NSO disclosed on August 26, 2024, four days before Plain-

17  tiffs were required to serve affirmative expert reports.  Dkt. No. 487-3 ¶ 8 n.5; *see* Dkt. No. 487-4.

18       The first step in Mr. Pinsonneault's calculations is determining the appropriate period in

19  which to calculate NSO's profits subject to disgorgement.  In his initial report, Mr. Pinsonneault

20  elected to estimate NSO's profits only "in the time period January 1, 2019 through May 19, 2019."

21  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 97.  In his supplemental report, Mr. Pinsonneault

22  criticized Ms. Trexler for using a broader time period, but did not update his disgorgement analysis.

23  Dkt. No. 490-4, Ex. B (Pinsonneault Supp. Rep) ¶¶ 13–14.  In his second supplemental report, Mr.

24  Pinsonneault finally updated his disgorgement analysis to include "calculations . . . for the additional

25  time periods included by Ms. Trexler in her Trexler Supplemental Report."  Dkt. No. 490-4, Ex. D

26  (Pinsonneault Second Supp. Rep.) ¶ 6.

27

28

4

For each time period, Mr. Pinsonneault applies a profit margin to his calculated revenues to arrive at NSO's profits subject to disgorgement.  Mr. Pinsonneault applies two profit margins for each time period.  The first profit margin is the combined operating profit of NSO Group and Q Cyber, as set forth in the audited financials of the companies. *See, e.g.*, Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) at Figure 16 and Schedule 2.0, n. a, b.  The second operating profit is the same, except it purports to exclude the research and development ("R&D") costs that NSO incurred to develop Covert Android.  *Id.* ¶ 124.

## LEGAL STANDARD

The proponent of expert testimony bears the burden of establishing the testimony's admissibility by a preponderance of the evidence, including that: "(1) the expert's scientific, technical, or other special knowledge will help the trier of fact understand the evidence or determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  As the gatekeepers of the admissibility of expert testimony, courts must first determine whether the testimony is reliable and trustworthy and then decide whether it is relevant to the task at hand.  *In re Ripple Labs, Inc. Litig.*, 2024 WL 4583525, at *1 (N.D. Cal. Oct. 24, 2024).  The court may look to many factors to determine reliability, including whether an expert has adequately accounted for obvious alternative explanations, *id.* at 2, or whether the expert's opinion rests on "facts or data in the case that the expert has been made aware of or personally observed," not merely assumptions and speculation.  *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856–57 (9th Cir. 2019).

## ARGUMENT

### I.    Mr. Pinsonneault's Opinions Regarding the Proper Measure of "Actual Damages" Should Be Excluded

In her report, Ms. Trexler calculates Plaintiffs' "expenditure of resources to respond to and remediate Defendants' conduct described in the Complaint."  Dkt. No. 487-3 ¶ 50.  Ms. Trexler states that she "offer[s] no opinion on whether" this remedy "is available on Plaintiffs' causes of action,

5

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GREGORY A. PINSONNEAULT - CASE NO. 4:19-cv-07123-PJH

which I understand is a legal question." *Id*. ¶ 48.  In response to Ms. Trexler's opinion, Mr. Pinson-neault challenges certain aspects of Ms. Trexler's calculations. *See* Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 55–62 (disagreeing with inclusion of stock-based compensation in Plaintiffs' labor costs).  However, Mr. Pinsonneault also goes further and contends that certain labor costs are not "actual damages." *Id*. ¶¶ 47–54.  In doing so, Mr. Pinsonneault exceeds the scope of an expert witness and goes outside the bounds of his own economics expertise.  The Court should strike these opinions and only allow the jury to consider Mr. Pinsonneault's disagreements with Ms. Trexler's calculation of labor costs.

### A.  Mr. Pinsonneault Cannot Offer Legal Conclusions as to the Proper Measure of Compensatory Damages

The Ninth Circuit "has repeatedly affirmed that 'an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)).  "This prohibition of opinion testimony on an ultimate issue of law recognizes that, '[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *Id*.  (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).  "Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter*, 373 F.3d at 1016.  Mr. Pinsonneault violates this rule in two ways.

*First*, Mr. Pinsonneault improperly opines on whether Plaintiffs can recover compensatory damages for the time that Plaintiffs' employees spent contacting the victims of NSO's attack.  As a threshold matter, Mr. Pinsonneault is wrong.  Contrary to Mr. Pinsonneault's suggestion, a party need not have a "legal obligation" to contact victims in order to recover the cost of doing so.  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 48–49.  The Computer Fraud and Abuse Act ("CFAA") de-fines loss to include "any reasonable cost to any victim, including the cost of responding to an of-fense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense."  18 U.S.C. § 1030(e)(11).  Plaintiffs' notification of victims, which

allowed Plaintiffs to gather additional technical information regarding NSO's attack, fits comfortably within courts' interpretation of this definition. *See, e.g.*, *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008) ("where the offender has actually accessed protected information, discovering who has that information and what information he or she has is essential to remedying the harm").

In any event, the question of whether Plaintiffs can recover compensatory damages for certain activities is one for the finder of fact, not for Mr. Pinsonneault. A damages expert cannot opine on the categories of damages that are available in an action. Such opinions are "attorney argument dressed up as an expert opinion," which "must be excluded." *Lin v. Solta Medical, Inc.*, 2024 WL 5199905, at *12 (N.D. Cal. Dec. 23, 2024); *see Highfields Cap. I, LP v. SeaWorld Ent., Inc.*, 2022 WL 1037210, at *12 (S.D. Cal. Apr. 6, 2022) (excluding damages opinion "at least in part based upon the premise that Plaintiffs had a duty to mitigate damages"); *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *3 (S.D.N.Y. July 16, 2002) (barring damages expert from testifying about proper theory of damages). Similarly, damages experts cannot opine on whether plaintiffs have provided a sufficient factual basis to establish their damages. *See, e.g.*, *TAKTL, LLC v. IWR, N. Am., LLC*, 2024 WL 4415194, at *8 (W.D. Pa. Oct. 4, 2024) (excluding testimony that plaintiffs had not "establish[ed] reasonable certainty that a damage even occurred"); *Harbor Compliance Corp. v. Firstbase.io, Inc.*, 2024 WL 1442165, at *14 (E.D. Pa. Apr. 3, 2024) (excluding testimony that plaintiffs "failed in proving damages with 'reasonable certainty'").

*Second*, Mr. Pinsonneault improperly opines that Plaintiffs cannot recover damages for vulnerabilities that Plaintiffs would have otherwise discovered. In his report, Mr. Pinsonneault states that "[g]iven that Plaintiffs would likely have eventually discovered these vulnerabilities and incurred these same expenses to remediate and resolve their security vulnerabilities, Ms. Trexler's inclusion of these expenses as actual damages caused by Defendants is inappropriate." Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 50. Later, Mr. Pinsonneault claims that Ms. Trexler's calculation of labor costs is inflated because "she does not account for the fact that after the incident, Plaintiffs' products were more secure." *Id*. ¶ 54. Mr. Pinsonneault's opinion is an impermissible legal opinion.

The Ninth Circuit evaluated—and rejected—the precise argument that Mr. Pinsonneault advances.  In *United States v. Middleton*, the defendant charged with violating the CFAA argued that there was no evidence that an employee "was diverted from his other responsibilities or that such a diversion caused [the victim company] a financial loss."  231 F.3d 1207, 1214 (9th Cir. 2000).  The Ninth Circuit rejected this argument and found that these labor costs were properly considered damages under the CFAA, reasoning that the victim "would have had to pay a similar amount had it hired an outside contractor to repair the damage."  *Id.*  "[B]eing versed in the case law is not likely to provide any tangible benefit to the expert, because he is precluded from offering an opinion about the law." *Calico Brands, Inc. v. Ameritek Imports, Inc.*, 2007 WL 9658317, at *2 (C.D. Cal. Nov. 27, 2007).  The fact that Mr. Pinsonneault misstates the law is yet another reason to exclude his opinion.

## B.  Mr. Pinsonneault Lacks Expertise To Opine That Certain Labor Costs Should Be Excluded

Mr. Pinsonneault is not qualified to give certain opinions about the proper measure of "actual damages" because those opinions exceed the scope of his own expertise.  As described above, Mr. Pinsonneault opines (1) that WhatsApp was not obligated or required to notify victims of NSO's attack, Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 49, (2) that NSO's attack had the effect of making Plaintiffs' products more secure, *id.* ¶ 54, and (3) that stock-based compensation is usually not included when calculating labor costs, Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 278:11–14; 281:9–18.  Yet by Mr. Pinsonneault's own admissions, he lacks the expertise necessary to offer any of these conclusions.  As a result, Mr. Pinsonneault should not be permitted to testify on these issues at trial.

Whether a witness can be qualified as an expert is determined by whether the witness has the "knowledge, skill, experience, training, or education" as to the subject matter he or she seeks to opine.  Fed. R. Evid. 702.  "Under Federal Rule of Evidence 702, experts may not make expert conclusions about areas outside their expertise." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2013 WL 5955666, at *2 (N.D. Cal. Nov. 6, 2013) (citing *White v. Ford Motor Co.*, 312 F.3d 998, 1008–09 (9th Cir. 2002)).  "Courts regularly find that an expert's qualifications in one field do not automatically translate to

8

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GREGORY A. PINSONNEAULT - CASE NO. 4:19-cv-07123-PJH

qualification to opine in a separate field, even if those fields are related in some general sense." *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 2628620, at *10 (C.D. Cal. Mar. 15, 2023). While Plaintiffs do not contest for purposes of this motion Mr. Pinsonneault's qualifications to calculate the amount of Plaintiffs' labor costs, Mr. Pinsonneault lacks the qualifications to opine on topics beyond this scope.

*First*, Mr. Pinsonneault lacks the expertise to opine on the necessity or propriety of Plaintiffs' decision to contact victims of NSO's attack. By his own admission, Mr. Pinsonneault disclaimed any expertise "regarding when victim outreach or notification is or is not required or appropriate in response to a cyber attack." Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 216:8–217:4, 217:17–21. And Mr. Pinsonneault disclaimed any expertise regarding "whether or not it is a regular practice for a victim company to conduct victim outreach to affected users after attacks like the ones alleged in this case." *Id.* at 223:4–7. Mr. Pinsonneault did not review any documents regarding the necessity or propriety of victim outreach and admitted he lacks expertise "in whether or not WhatsApp had a contractual obligation to notify the users who it learned had been targeted with Pegasus in this case." *Id.* at 224:12–15. Those reasons alone are enough to exclude Mr. Pinsonneault's opinion.

Mr. Pinsonneault's experience as a damages expert does not provide him any insight into what actions are appropriate or required in responding to a cyberattack. Courts routinely police expert opinions that cross the line into opining on the proper response. For instance, in *A.G. v. Paradise Valley Unified School District No. 69*, the Ninth Circuit endorsed the opinions of plaintiff's behavioral psychologist expert on issues related to the plaintiff's behavior but found that the district court improperly relied on the expert's testimony regarding what services were "not legally required by federal or state statute." 815 F.3d 1195, 1207 (9th Cir. 2016).

Relatedly, Mr. Pinsonneault lacks the expertise to opine on the reasons Plaintiffs contacted victims of NSO's attack. In his initial rebuttal report, Mr. Pinsonneault speculates that Plaintiffs contacted victims "presumably in an effort to mitigate bad publicity and/or improve their standing in the public eye." Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 49. But that is not an *expert* opinion, it is simply an opinion. At his deposition, Mr. Pinsonneault stated that he based this opinion

9

on "the involvement of hundreds of hours of several employees" and "the involvement of senior executives." Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 231:23–232:4. When asked about what expertise he brought to bear in making this opinion, Mr. Pinsonneault admitted that he was not an expert in corporate public relations and instead pointed to his experience "calculat[ing] damages for corrective advertising campaigns on several occasions." *Id*. at 233:20–234:15.

Normally, "[t]echnical experts generally may not testify about 'motives, intent, or state of mind,' as determinations on those issues are reserved for the jury." *Pavo Sols. LLC v. Kingston Tech. Co.*, 2019 WL 8138163, at *13 (C.D. Cal. Nov. 20, 2019), *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022); *see Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." (quoting *Siring v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013))). Here, Mr. Pinsonneault compounds the problem because he lacks any relevant experience that would allow him to furnish an opinion about why a company took certain steps. The fact that Mr. Pinsonneault calculated damages in a case involving correcting advertising campaigns does not make him an expert in corporate public relations, any more than calculating damages for a case involving spyware makes him an expert on how to hack WhatsApp's servers.

*Second*, Mr. Pinsonneault lacks the expertise to offer an opinion as to whether Plaintiffs would have discovered the vulnerability exploited in NSO's attack, or whether NSO's attack had the effect of enhancing Plaintiffs' security. At his deposition, Mr. Pinsonneault admitted that he does not consider himself a technology expert. Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 56:13–14. Though he has an undergraduate degree in computer science, Mr. Pinsonneault does not consider himself a computer scientist and has never worked as a software developer or a security engineer. *Id*. at 55:14–56:10. He cannot testify about how WhatsApp voice calls are made or how WhatsApp's servers operate. *Id*. at 56:15–22. Nonetheless, Mr. Pinsonneault claimed that he had the expertise to opine

1  on the security of Plaintiffs' products before and after NSO's May 2019 attack based on his review

2  of the evidence.  *Id.* at 248:5–14.

3      As a threshold matter, none of the evidence supports Mr. Pinsonneault's conclusions.  Mr.

4  Pinsonneault's opinions therefore are irrelevant because they do not have a valid connection to the

5  pertinent expertise and will not help the trier of fact understand the evidence or determine a fact in

6  issue.  Fed R. Evid. 702(a); *Daubert*, 509 U.S. at 591–92.  In the words of Mr. Pinsonneault, NSO's

7  CEO "testified generally that companies seek to close security vulnerabilities," and NSO's technical

8  expert explained that Plaintiffs' "investigation and remediation actions are the standard response to

9  discovery of vulnerabilities."  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.)  ¶¶ 52, 53.  Neither

10  NSO's CEO nor its technical expert reached the conclusions that Mr. Pinsonneault offers: that "Plain-

11  tiffs would likely have eventually discovered these vulnerabilities" and that "Plaintiffs' products were

12  more secure" after NSO's attack.  *Id.* ¶¶ 51, 54.[3]

13      Moreover, Mr. Pinsonneault's expertise as a damages expert does not give him cybersecurity

14  expertise.  *See, e.g.*, *GPNE Corp. v. Apple, Inc.*, 2014 WL 3870256, at *7 (N.D. Cal. Aug. 6, 2014)

15  (excluding damages expert from offering "technical testimony outside the scope of [damages ex-

16  pert's] expertise"); *Banga v. Kanios*, 2021 WL 4133754, at *3 (N.D. Cal. Sept. 10, 2021) (excluding

17  damages expert from testifying about plaintiff's likely future earnings); *see also McMillan v. Weeks*

18  *Marine*, Inc., 478 F. Supp. 2d 651, 659 (D. Del. 2007) (same).  Nor can Mr. Pinsonneault rely entirely

19  on the opinion of Mr. McGraw, *see Mighty Enters., Inc. v. She Hong Indus. Co.*, 745 F. App'x 706,

20  709 (9th Cir. 2018), as "[a]n expert's sole or primary reliance on the opinions of other experts raises

21  serious reliability questions," *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014).

22      *Third*, Mr. Pinsonneault opines that including restricted stock units in the fully burdened labor

23  costs of Plaintiffs' employees is improper because he has never seen an expert do so.  *See* Block

24  Decl., Ex. C (Pinsonneault Dep. Tr.) at 278:11–14; 281:9–18.  Courts can sometimes admit expert

25  _____

26  [3]  Mr. Pinsonneault also opines that it was "unlikely" that Plaintiffs' labor in August and September
    2019 would have given Plaintiffs "additional information" regarding NSO's attacks.  Block Decl.

27  Ex. B (Pinsonneault Rebuttal Rep.) ¶ 75.  For these same reasons, Mr. Pinsonneault lacks the
    expertise to offer this opinion.

28

testimony based on an expert's extensive experience.  *See, e.g.*, *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) (allowing government law enforcement agents to testify about gang and drug investigations "based on their experience rather than based on any systematic methodology" because of their "'years of experience and special knowledge.'").  When experts rely on their expertise as opposed to a systematic methodology, they "must describe their relevant background and explain how that background informed the opinions they offer."  *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016).  Importantly, experts relying on their experience must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinions, and how that experience is reliably applied to the facts**.**"  Fed. R. Evid. 702 advisory committee's note (2000); *see United States v. Cerna*, 2010 WL 11627594, at *6 (N.D. Cal. Dec. 17, 2010) (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)).  A court cannot rely on a potential expert's general qualifications to establish the reliability of their testimony.  *See, e.g.*, *United States v. Valencia-Lopez*, 971 F.3d 891, 901 (9th Cir. 2020), *Cerna*, 2010 WL 11627594, at *13.

Mr. Pinsonneault does not explain how his observations as an expert in unrelated cases informs his opinion as to whether Plaintiffs can recover the cost of restricted stock units here.  Moreover, he offers no evidentiary or factual basis to tie his purported recollection from dozens of unrelated cases to the facts of this case.  *See Daubert*, 509 U.S. at 591 (requiring expert testimony to be "sufficiently tied to the facts of the case").  Perhaps Mr. Pinsonneault could have conducted a systematic analysis of expert opinions in other cases and opined on how the results of that analysis apply here.  But he did not.  Instead, Mr. Pinsonneault falls back on his experience generally, which he fails to tie to the facts of this case.

Though Mr. Pinsonneault may have experience in *calculating* labor costs, he does not have any experience in determining, as a matter of law, what components are properly included in labor costs.  Moreover, he offers no evidentiary or factual basis to tie his purported recollection from dozens of unrelated cases to the facts of *this* case.  *See* Fed. R. Evid. 702 advisory committee's note (2000); *Cerna, 2010 WL 11627594 at *6.*  Allowing him to give the jury blanket statements about

how he recalls experts having opined or calculated damages in other cases would be unreliable, unfair and distracting, particularly where there is no practical way for Plaintiffs to adequately challenge those statements on cross-examination, which would require reviewing the facts and distinguishing features of the dozens of unrelated cases he purports to describe. Therefore, Mr. Pinsonneault does not employ a reliable methodology or explain how his general experience in other cases supports his conclusion that restricted stock units should be excluded in this case. He should not be permitted to offer opinion testimony about what he remembers other experts doing in other cases.

## II.    Mr. Pinsonneault's Opinion Regarding The Amount of NSO's Illegal Profits Should Be Excluded

Both damages experts estimate the profits that NSO obtained from accessing WhatsApp servers without authorization. *See* Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 91 (determining the "maximum profit attributable to the inclusion of covert Android installation vectors in the Pegasus product"); Dkt. No. 487-6 ¶ 7 (providing "reasonable estimation of Defendants' profits earned in connection with Defendants' Exploit"). As Mr. Pinsonneault acknowledged during his deposition, any estimate of NSO's profit margin from its spyware should be based on a stand-alone profit-and-loss statement for the Pegasus Covert Android vector (the NSO product that used WhatsApp's servers as an installation vector). Block Decl., Ex. C (Pinsonneault Dep. Tr.) at 306:5–307:11. However, contrary to the Court's order, NSO refused to produce that financial information in discovery. *See* Dkt. No. 405-2 at 13–14 (describing NSO's refusal to produce financial documents that the Court ordered NSO to produce). As a result, both experts relied on NSO's overall profit margin as a proxy for the profits NSO made from its illegal spyware. Without any financial information regarding expenses specifically linked to the Covert Android installation vector for Pegasus, Ms. Trexler calculated two operating profit margins: one that deducts all operating costs and another that deducts all operating costs except for R&D expenses. Dkt. No. 487-3 ¶¶ 119, 121; *see* Dkt. No. 487-6 ¶ 43. By contrast, Mr. Pinsonneault refuses to acknowledge the lack of financial disclosures by NSO and uses an unreliable methodology and cherry-picked data to calculate the portion of R&D expenses

13

associated with Covert Android.  Mr. Pinsonneault's calculation of NSO's profit margin should thus be excluded.

### A.  Mr. Pinsonneault Uses an Unreliable Methodology To Estimate the Amount That NSO Spent on Covert Android-Related Research and Development

Mr. Pinsonneault uses an unreliable methodology to calculate the amount that NSO spent on Covert Android-related R&D, which infects his estimate of NSO's Covert Android-specific profit margin.  Therefore, his opinion on NSO's Covert Android-specific profit margin should be excluded.

An expert's opinion must be "the product of reliable principles and methods."  Fed. R. Evid. 702.  Under *Daubert*, "the district court judge must ensure that all admitted expert testimony is both relevant and reliable."  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017).  To assess reliability, the district court can examine the expert's principles and methodologies, including "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable."  *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 985 (9th Cir. 2020) (quoting *Wendell*, 858 F.3d at 1232).

There is no such support for Mr. Pinsonneault's proposed method of apportioning NSO's R&D expenses.  In his report, Mr. Pinsonneault assumes that NSO allocated such expenses equally and based on the headcount of its employees.  In other words, because, according to Mr. Pinsonneault, 32 out of 118 (27.1%) of NSO's R&D employees were "involved" in Covert Android installation vectors, Mr. Pinsonneault concludes that NSO dedicated 27.1% of its R&D expenses to the Covert Android installation vector.  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.), Figure 15 (calculating the 27.1% figure) and Schedule 2.0 n. F (calculating NSO's R&D related to Covert Android).

There is no evidence that NSO apportioned R&D expenses in this manner.  *See* Dkt. No. 487-3 ¶ 121 ("The information available to date does not delineate costs to determine those R&D costs related to Pegasus versus other products, the existing WhatsApp vector versus other vectors, or new products in the pipeline.").  None of Mr. Pinsonneault's reports provide any justification for this methodology—indeed, Mr. Pinsonneault does not even attempt to explain his basis for using this

1  method.  *See* Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 122–123.  Moreover, Mr. Pinson-

2  neault's methodology ignores evidence in the record showing that the Covert Android vector was the

3  most complicated to develop technically and therefore more costly.  *See* Dkt. No. 487-3 ¶ 121; *see*

4  *also* Block Decl., Ex. A (Gazneli Dep. Tr.) at 106:4–107:4 (describing advantages of covert installa-

5  tion vectors over one-click installation vectors); Block Decl., Ex. D (NSO_WHATSAPP_00000287)

6  (describing development of Covert Android installation vector as "a significant milestone for Pega-

7  sus").

8          Mr. Pinsonneault's headcount-based method of apportionment therefore falls short of the re-

9  liability standard imposed by *Daubert*.  Courts have rejected similar methods of simplistic calculation

10  premised on unsupported assumptions.  For instance, where an expert "failed to provide the 'meth-

11  odology' underlying his apportionment amount or explain how he arrived at that figure based on the

12  facts of this case, his apportionment opinion is not backed by 'sufficient facts or data' or by 'reliable

13  principles and methods'" and was excluded.  *NetFuel, Inc. v. Cisco Sys. Inc.*, 2020 WL 1274985, at

14  *9 (N.D. Cal. Mar. 17, 2020); *see also Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 923 F.

15  Supp. 2d 1245, 1255 (S.D. Cal. 2013) (rejecting damages theory assuming that $1 of infringing sales

16  corresponds $1 of lost profits).  Mr. Pinsonneault cannot cure NSO's failure to produce detailed

17  financial information by making a crude and unreliable assumption about NSO's allocation of R&D

18  expenses.

19      **B.  Mr. Pinsonneault Lacks Sufficient Facts and Data To Estimate the Number of Em-**

20          **ployees Who Worked on Covert Android-Related Research and Development**

21          Even if Mr. Pinsonneault's headcount-based estimate is methodologically sound (which it is

22  not), Mr. Pinsonneault lacks "sufficient facts or data" to determine the number of employees who

23  worked on Covert Android-related R&D.  To satisfy this standard, "the expert's opinion must rest on

24  'facts or data in the case that the expert has been made aware of or personally observed,' not merely

25  assumptions and speculation."  *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019)

26  (quoting Fed. R. Evid. 703).  Here, the facts and data that Mr. Pinsonneault relies upon are inherently

27  unreliable, and Mr. Pinsonneault ignores countervailing evidence in reaching his conclusion.  His

28

estimate of the number of employees who worked on Covert Android-related R&D, which informs his estimate of NSO's profit margin for the Covert Android installation vector, should thus be excluded.

To reach his opinion included in his initial rebuttal report, Mr. Pinsonneault relies primarily on a single conversation with a single NSO employee—Tamir Gazneli, NSO's head of R&D—who apparently told Mr. Pinsonneault that 29 to 32 employees worked on Covert Android-related R&D in the 2018 to 2019 timeframe.[4]  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.) ¶ 122.  Mr. Pinsonneault's conversation with Mr. Gazneli does not constitute "sufficient facts or data" on which expert testimony be based.  Fed. R. Evid. 702.  For this reason, courts routinely exclude expert opinions derived primarily from conversations with party witnesses, especially in the face of contradictory information in the record.  For example, recently, a court in the Central District of California excluded a damages expert's opinion that was "primarily based on a conversation with Plaintiff's CEO" where "the record before the Court lacks any other evidence to support this opinion."  *Am. Transp. Sys., Inc. v. Prevost Car US Inc.*, 2024 WL 5185314, at *4 (C.D. Cal. Oct. 9, 2024); *see also United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) (excluding expert opinion based on short conversation to the exclusion of other significant data); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1025–26 (10th Cir. 2002) (upholding exclusion of economic expert who "attempted to spin anecdotes from a handful of personal conversations" into expert opinion).

Mr. Pinsonneault's single conversation with Mr. Gazneli suffers from the same defect.  Block Decl. Ex. B (Pinsonneault Rebuttal Rep.), Schedule 2.1, n. F (citing to a single conversation with Mr. Gazneli).  Mr. Gazneli's estimate of the number of employees who worked on Covert Android-related R&D is not in the record and, moreover, is not reliable.  During his deposition, Mr. Gazneli claimed

---

[4]  To update the disgorgement analysis in his second supplemental report, Mr. Pinsonneault had to include the number of employees who worked on Covert Android R&D in the additional time periods.  Mr. Pinsonneault does not cite to a conversation with Mr. Gazneli, and merely states that he "understand[s] the maximum number of R&D employees involved in covert Android installation vectors was 30 in 2018 and 34 in 2020."  Dkt. No. 492-4, Schedule S2.1 n. F. An "understanding" is not facts or data—it is mere speculation that cannot be relied upon.  *See Hsin Lin v. Solta Medical, Inc.*, 2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) at *12 ("As pure speculation, it is not helpful to the jury . . .").

not to recall how many people worked on NSO's overall R&D team in 2018 and 2019, let alone how many individuals focused on the Covert Android installation vector. Block Decl., Ex. A (Gazneli Dep. Tr.) at 52:19–24. Still, Mr. Pinsonneault bases his entire analysis on Mr. Gazneli's estimate.

Furthermore, Mr. Pinsonneault's reliance on his conversation with Mr. Gazneli makes his opinions even more unreliable in light of the contradictory evidence in the record, which Mr. Pinsonneault ignored. Because expert testimony must be "based on sufficient facts or data," Fed. R. Evid. 702, experts cannot only consider the evidence that supports their position. Courts exclude expert testimony where experts cherry-pick facts to bolster their expert opinion. *See, e.g.*, *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055–57 (8th Cir. 2000); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*, 853 F. Supp. 2d 181, 188 (D. Mass. 2012) (precluding expert testimony that "cherry-picked" certain data points) *aff'd sub nom. Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82 (1st Cir. 2014).

Here, Mr. Pinsonneault seemingly ignored documents in the record that contradict his estimates of the number of employees who worked on Covert Android-related R&D, and R&D overall. For instance, Mr. Pinsonneault concludes that a total of 120 employees worked on all installation vectors, but multiple documents in the record state that NSO had a total of 304 employees working on R&D during the relevant time period. *See e.g.*, Block Decl. Ex. E (WA-NSO-00074999) at -043; Block Decl. Ex. F (JEFF00007831) at -836; Block Decl. Ex. F (FPM-00026827) at -844. Similarly, Mr. Pinsonneault relies on his conversation with Mr. Gazneli to conclude that 32 employees worked on Covert Android-related R&D, but this ignores at least one document produced by NSO that suggests that 44 employees worked on Covert Android-related research-and-development. These documents, if considered, would alter the profit margin that Mr. Pinsonneault calculates, and underscores the unreliability of his approach as a whole.

This same document, the spreadsheet on which Mr. Pinsonneault relies, indicates that there were 44 R&D employees who NSO internally classified as working on Android. Mr. Pinsonneault provides no explanation for why he used the self-serving statements from Mr. Gazneli instead of

NSO's internal records, which only adds to the argument that Mr. Pinsonneault's methodology and analysis are unreliable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to exclude portions of Mr. Pinsonneault's expert testimony.


Dated:  January 9, 2025                                      Respectfully Submitted,

                                                            DAVIS POLK & WARDWELL LLP

                                                            By:  /s/ Micah G. Block
                                                                 Greg D. Andres
                                                                 Antonio J. Perez-Marques
                                                                 Gina Cora
                                                                 Craig T. Cagney
                                                                 Luca Marzorati
                                                                   (admitted *pro hac vice*)
                                                                 DAVIS POLK & WARDWELL LLP
                                                                 450 Lexington Avenue
                                                                 New York, New York 10017
                                                                 Telephone: (212) 450-4000
                                                                 Facsimile: (212) 701-5800
                                                                 Email: greg.andres@davispolk.com
                                                                       antonio.perez@davispolk.com
                                                                       gina.cora@davispolk.com
                                                                       craig.cagney@davispolk.com
                                                                       luca.marzorati@davispolk.com

                                                                 Micah G. Block (SBN 270712)
                                                                 DAVIS POLK & WARDWELL LLP
                                                                 900 Middlefield Road, Suite 200
                                                                 Redwood City, California 94063
                                                                 Telephone: (650) 752-2000
                                                                 Facsimile:  (650) 752-2111
                                                                 Email: micah.block@davispolk.com

                                                                 *Attorneys for Plaintiffs*
                                                                 *WhatsApp LLC and Meta Platforms, Inc.*