Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         gina.cora@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., a Delaware corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>                    Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE EXPERT TESTIMONY OF TERRENCE MCGRAW**<br><br>Date:    February 13, 2025<br>Time:    1:30 p.m.<br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

BACKGROUND .......................................................................................................................3

I.      Mr. McGraw's Background ..........................................................................3

II.     NSO Retains Mr. McGraw But Does Not Permit Him to Review Pegasus Code .......3

III.    NSO Serves Mr. McGraw's Expert Reports .....................................................4

IV.     The McGraw Rebuttal Report .......................................................................5

LEGAL STANDARD................................................................................................................5

ARGUMENT ...........................................................................................................................6

I. The Court Should Exclude Mr. McGraw's Opinions Because They Have No
Relevance to Plaintiffs' Damages ..........................................................................6

    A.   The Court Should Exclude Mr. McGraw's Technical Opinions That
         Contradict the Court's Ruling on Liability .............................................7

    B.   The Court Should Exclude Mr. McGraw's Opinions on Ultimate Issues
         of Law ...........................................................................................8

    C.   Mr. McGraw's Policy Opinions Should Be Excluded Because His
         Opinions Are Irrelevant to the Issues That Will Be Raised at the
         Damages-Only Trial ..........................................................................8

II.     The Court Should Exclude Mr. McGraw's Opinions Regarding the Functionality
        and Development of NSO's Pegasus Spyware ...........................................................9

    A.   NSO Rejected Mr. McGraw's Request to Review Pegasus Code .................10

    B.   The Limited Materials That Mr. McGraw Reviewed Do Not Provide Him
         with Sufficient Facts or Data to Opine on the Functionality of NSO's
         Pegasus Spyware .............................................................................11

    C.   The Court Should Exclude Mr. McGraw's Opinions Regarding NSO's
         Research-and-Development Process ......................................................12

    D.   The Court Should Exclude Mr. McGraw from Offering Opinions
         Regarding Pegasus's Operation on Target Devices ...................................14

    E.   The Court Should Independently Preclude NSO from Offering Expert
         Testimony Regarding Pegasus as a Discovery Sanction .............................14

III.    The Court Should Exclude Mr. McGraw's Policy Opinions About "Lawful
        Intercept" Technology.....................................................................................15

    A.   Mr. McGraw Lacks Qualifications to Offer Policy Opinions Regarding
         "Lawful Intercept" Technology ...........................................................15

i

B.   Mr. McGraw Has No Reliable Basis to Opine on NSO's Customers or
     Targets..............................................................................................................16

C.   Mr. McGraw's Policy Opinions Should Be Excluded Because His
     Opinions  Regarding "Lawful Intercept" Technology Lack Intellectual
     Rigor ...............................................................................................................17

CONCLUSION.......................................................................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Ash Grove Cement Co. v. Emps. Ins. of Wausau*, 246 F.R.D. 656 (D. Kan. 2007) ........................ 12

*Autotech Techs. Ltd. v. Autmationdirect.com, Inc.*, 2005 WL 3180147 (N.D. Ill. Nov. 23, 2005) ............................................................................................................................. 11

*Brice v. Haynes Invs., LLC*, 548 F. Supp. 3d 882 (N.D. Cal. 2021) ................................... 9

*Daubert v. Merrell Dow Pharms., Inc.* (*Daubert II*), 43 F.3d 1311 (9th Cir. 1995) ...................... 17

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) ............................... 5, 6, 7, 16

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002)................................. 12

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2022) ................................. 12, 17

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) ................................ 6, 8

*In re Ripple Labs, Inc. Litig.*, 2024 WL 4583525 (N.D. Cal. Oct. 24, 2024) ................................... 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053 (C.D. Cal. 2013)................................................................. 9

*King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, 2009 WL 3187685 (S.D. Ind. Sept. 29, 2009) ............................................................................................................................. 12

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)......................................... 6, 17

*Maldonado v. Apple, Inc.*, 2021 WL 1947512 (N.D. Cal. May 14, 2021) ..................................... 11

*Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867 (N.D. Cal. 2016) .................................. 16

*United States v. Cerna*, 2010 WL 11627594 (N.D. Cal. Dec. 17, 2010)........................................ 16

*United States v. Diaz*, 876 F.3d 1194 (9th Cir. 2017)........................................................ 8

*United States v. Duncan*, 42 F.3d 97 (2d Cir. 1994)........................................................ 8

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ................................................ 16

*Veritas Operating Corp. v. Microsoft Corp.*, 2008 WL 687118 (W.D. Wash. Mar. 11, 2008) ....... 11

*Vox Marketing Grp., LLC v. Prodigy Promos L.C.*, 521 F. Supp. 3d 1135 (D. Utah 2021) ............ 10

*Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043 (N.D. Cal. Nov. 14, 2017)........................... 12

STATUTES

Cal. Penal Code § 502.................................................................................................. 9

RULES

Fed. R. Civ. P. 56...................................................................................................... 6

Fed. R. Evid. 702 ............................................................................................... *passim*

1

## NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY

2

PLEASE TAKE NOTICE THAT, on February 13, 2025 at 1:30 pm in Courtroom 3 of the

3 U.S. District Court for the Northern District of California, Plaintiffs WhatsApp LLC ("WhatsApp")

4 and Meta Platforms, Inc. ("Meta"; together with WhatsApp, "Plaintiffs") will and hereby do move

5 to exclude the expert testimony of Terrence McGraw.  This Motion is based upon this Notice of

6 Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of

7 Micah G. Block and all exhibits thereto, the pleadings and papers on file in this action, and on such

8 other written and oral argument as may be presented to the Court.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. ("NSO") seek to introduce at trial the expert testimony of Terrence McGraw, who offers five principal opinions:

- Opinion No. 1: NSO did not target computers in California.
- Opinion No. 2: Neither NSO nor its customers accessed any WhatsApp server without authorization or exceeded their authorized access.
- Opinion No. 3: NSO did not damage any WhatsApp server.
- Opinion No. 4: NSO did not cause WhatsApp any loss.
- Opinion No. 5: Holding software tool makers liable for the actions of users would have widespread negative repercussions.

All of Mr. McGraw's opinions should be excluded under Federal Rule of Evidence 702 because they advance contentions not relevant to the determination of damages (including contentions that have already been rejected by the Court), purport to offer technical opinions not backed by sufficient analysis (particularly because Mr. McGraw was denied access to the Pegasus source code), or constitute improper and irrelevant "policy" opinions not backed by any discernible methodology.

*First*, the Court's ruling granting Plaintiffs' motion for partial summary judgment, which found NSO liable on all of Plaintiffs' claims, renders the lion's share of Mr. McGraw's proposed testimony irrelevant and warrants its exclusion.  Several of Mr. McGraw's opinions on technical topics address issues the Court has already adjudicated as a matter of law or espouse positions the Court has already rejected.  Mr. McGraw's opinions on policy topics have no relevance to any claim or defense in the case.  Mr. McGraw should not be permitted to advance merits-related contentions that have already been rejected by the Court to a jury tasked only with deciding the amount that NSO owes Plaintiffs in damages.  Those opinions, if allowed, would not assist the jury in any way.

*Second*, Mr. McGraw's proposed technical opinions are not backed by sufficient analysis and thus should be excluded as unreliable, or in the alternative, as an evidentiary sanction for NSO's discovery violations.  Most notably, Mr. McGraw himself requested the Pegasus source code to reach a "definitive conclusion" regarding the spyware's operation, but NSO refused to make it available to him.  NSO similarly denied Mr. McGraw access to other evidence relevant to his opinions, including

1

any evidence regarding its customers or the identities of the users it targeted.  NSO's refusal to grant its own expert access to evidence necessary for his conclusions, consistent with its "repeated[] fail[ure] to produce relevant discovery and fail[ure] to obey court orders regarding such discovery," Dkt. No. 494 at 9, precludes Mr. McGraw from providing expert testimony that satisfies Rule 702 and *Daubert*.  Given these foundational shortcomings, the Court should exclude Mr. McGraw's opinions regarding Pegasus in full.  In the alternative, the Court should preclude NSO from offering expert testimony on issues NSO denied Plaintiffs the opportunity to test fully through discovery as part of the "appropriate" evidentiary sanctions the Court agreed to issue.  Dkt. No. 494 at 9.

*Third*, the Court should exclude Mr. McGraw's proposed "policy" opinions, including his characterization of Pegasus as "lawful intercept" technology and his views regarding the "negative repercussions" that would arise from holding NSO liable.  As to his opinion that Pegasus constitutes "lawful intercept" technology, Mr. McGraw by his own admission lacks the requisite qualifications or expertise to opine on the "lawfulness" of the Pegasus spyware, and Mr. McGraw concedes that he has conducted no analysis as to whether any activity by NSO or its customers was "lawful"—especially because NSO has refused to provide any information about its customers or the targets of its spyware.  Moreover, Mr. McGraw's opinion that NSO's Pegasus is "lawful intercept" technology does not rest on any discernible methodology.  The same is true of his final opinion as to the "negative repercussions" that would arise from holding NSO liable—an opinion that Mr. McGraw conceded was nothing more than his own view as to "moral culpability"—that is not backed by any recognized methodology, contradicts the Court's summary judgment ruling finding NSO liable, and has no relevance to the issues the jury needs to decide at trial.

Because none of Mr. McGraw's opinions satisfy Rule 702 and none would be helpful to a jury charged only with the determination of damages, his testimony should be excluded in full.

# BACKGROUND

## I.    Mr. McGraw's Background

Mr. McGraw enlisted in the Army in 1987 and later became a commissioned officer in 1994. McGraw Dep. Tr. at 24:24–25:9.[1]  While serving in the National Guard, he completed a bachelor's degree in history from Old Dominion University.  Tr. at 23:5–11.  In 2004, he completed a master's degree in information systems management from Central Michigan University.  Tr. at 23:17–24:1. He attended the U.S. Army School of Information Technology in 2005 to become a telecom systems engineer.  Tr. at 27:1–6.  After completing that program, Mr. McGraw served in a variety of cyber-security-related positions in the military until he retired in 2014.  McGraw Rep. ¶¶ 6–10.  After leaving the military, he worked for Dell SecureWorks as an executive.  *Id*. ¶ 11.  He now owns his own consulting firm.  Tr. at 32:17–21.

Mr. McGraw has never previously served as an expert witness.  Tr. at 49:20–23.  He has never published on cybersecurity.  McGraw Rep. ¶ 4; Tr. at 46:25–47:2.

## II.    NSO Retains Mr. McGraw But Does Not Permit Him to Review Pegasus Code

After being retained, Mr. McGraw asked to review the Pegasus "production code" in order to "make a definitive conclusion on what function served what purpose."  Tr. at 68:6–20; *see also* Tr. at 237:2–16 (recounting that he "asked to review the Pegasus code very early on," and "asked to see the underlying source code for Pegasus").  Mr. McGraw admitted that the "production code" would have been useful to form his opinions.  *See* Tr. at 72:12–13 ("If we were able to review the code, we would have reviewed the code."); *see also* Tr. at 272:23–25 ("I didn't review the code not because I didn't want to but because Israeli law precluded me from doing so.").  Yet when Mr. McGraw asked NSO to review the code, "[t]he answer was 'no.'"  Tr. at 237:16.

In light of NSO's refusal, the only code that Mr. McGraw reviewed was what Plaintiffs pro-duced from the AWS Server, which NSO told Mr. McGraw "was R&D code for the development of

---

[1] Mr. McGraw's deposition transcript is attached as Exhibit C to the Declaration of Micah Block and cited herein as "Tr."  Mr. McGraw's expert report is attached as Exhibit A to the Declaration of Micah Block and cited herein as "McGraw Rep."  Mr. McGraw's rebuttal expert report is attached as Exhibit B to the Declaration of Micah Block and cited herein as "McGraw Rebuttal Rep."

Pegasus." Tr. at 67:1–6. Mr. McGraw has "not actually seen a WhatsApp installation server" and has "not seen actual production code." Tr. at 236:10–237:1; *see also, e.g.*, Tr. at 239:19–21 ("We did not have access to actual production of WhatsApp installation server or the underlying Pegasus code."). Mr. McGraw also failed to "review any code associated with how the WhatsApp installation server interacts with any official WhatsApp client." Tr. at 239:1–4.

### III.    NSO Serves Mr. McGraw's Expert Reports

NSO served Plaintiffs with Mr. McGraw's expert report (the "McGraw Report") on August 30, 2024. The McGraw Report begins with a background on what Mr. McGraw calls "the lawful intercept industry," dating back to the telegraph in the nineteenth century. McGraw Rep. ¶¶ 16–28. He also explains the legal frameworks for government surveillance and the statutory authority of various state and federal agencies. *Id*. ¶¶ 16, 22–25, 27. In his report, he identifies five headline opinions:

- Opinion No. 1: NSO did not target computers in California.
- Opinion No. 2: Neither NSO nor its customers accessed any WhatsApp server without authorization or exceeded their authorized access.
- Opinion No. 3: NSO did not damage any WhatsApp server.
- Opinion No. 4: NSO did not cause WhatsApp any loss.
- Opinion No. 5: Holding software tool makers liable for the actions of users would have widespread negative repercussions.

Mr. McGraw also provides a summary of how he believes WhatsApp voice-over-IP calling works and his understanding of how NSO exploited WhatsApp's architecture to covertly deliver malware to WhatsApp users. *Id*. ¶¶ 49–81. The appendix to Mr. McGraw's report lists information "provided" during his engagement, including documents produced by Plaintiffs, NSO, and public materials. *Id*. at 37.[2] In addition to reviewing documents produced in this litigation and public materials, Mr.

---

[2] In his deposition, Mr. McGraw admitted that he had not reviewed all of the documents listed in this appendix. Tr. at 57:24–25 ("To say that I read through every one of those documents, I would not say that on the record.").

1  McGraw spoke with Tamir Gazneli, NSO's Vice President of Research & Development, four times.

2  *Id.*; Tr. at 59:3–14.  Mr. McGraw did not take any notes during those interviews.  Tr. at 59:22–24.

3  **IV.    The McGraw Rebuttal Report**

4      NSO served Plaintiffs with Mr. McGraw's rebuttal report (the "McGraw Rebuttal Report")

5  on September 21, 2024.  That report purports to rebut the expert reports of Plaintiffs' experts David

6  Youssef and Anthony Vance.  In responding to Mr. Youssef's report, the McGraw Rebuttal Report

7  takes issue with various parts of Mr. Youssef's analysis.  *See* McGraw Rebuttal Rep. ¶¶ 9–70.  Many

8  of these technical rebuttal opinions repeat Mr. McGraw's conclusions from the McGraw Report,

9  including that NSO's Pegasus was "simply doing what was allowed" by WhatsApp.  *Id.* ¶ 29; *see,*

10 *e.g.*, *id.* ¶ 41 ("Pegasus simply sent messages through the WhatsApp servers to the target devices.");

11 *id.* ¶ 42 (NSO "compl[ied] with the WhatsApp servers' technical requirements").  In addition, Mr.

12 McGraw opines that the targets of the attacks against WhatsApp's servers were "third-party targets

13 of lawful interception," and that NSO's customers (not NSO) executed these attacks.  *Id.* ¶¶ 37–38.

14     Like the McGraw Report, the McGraw Rebuttal Report contains opinions related to policy

15 issues connected with NSO's Pegasus spyware.  For instance, Mr. McGraw opines that "those in the

16 lawful intercept and cybersecurity industry would not typically apply [the term 'spyware'] to lawful

17 intercept technology."  *Id.* ¶ 33.  In addition, Mr. McGraw opines that "Pegasus is not used to target

18 'WhatsApp users' in general.  Instead, it is licensed exclusively to governments and subject to strict

19 limitations on its use."  *Id.* ¶ 53.

20     Plaintiffs deposed Mr. McGraw on December 16, 2024.

21                              **LEGAL STANDARD**

22     A witness who has been qualified as an expert by knowledge, skill, experience, training, or

23 education may give an opinion on scientific, technical, or otherwise specialized topics if (1) the ex-

24 pert's scientific, technical, or other specialized knowledge will help the trier of fact understand the

25 evidence or determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) the

26 testimony is the product of reliable principles and methods, and (4) the witness has applied the prin-

27 ciples and methods reliably to the facts of the case.  Fed. R. Evid. 702; *see Daubert v. Merrell Dow*

28 *Pharms., Inc.*, 509 U.S. 579 (1993).  As the proponent of Mr. McGraw's testimony, NSO bears the

burden of establishing by a preponderance of the evidence that the admissibility requirements are met. *See* Fed. R. Evid. 702.

*Daubert* requires a two-part analysis. First, the Court must first analyze whether an expert's testimony reflects "scientific knowledge" that is "derived by the scientific method" and whether the work product is "good science"—that is, whether the testimony is reliable and trustworthy. *In re Ripple Labs, Inc. Litig.*, 2024 WL 4583525, at *1 (N.D. Cal. Oct. 24, 2024) (quoting *Daubert*, 509 U.S. at 590 & n.9, 593). Accordingly, an expert's opinion may reach the jury only if that opinion applies the expert's "knowledge and experience" to the facts of the case with a "sufficient foundation of reliability." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004). Even for nonscientific fields that are not amenable to peer review or statistical analysis, the expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 152 (1999).

Second, the Court must determine whether the testimony is "relevant to the task at hand." *Daubert*, 509 U.S. at 597. Expert testimony is relevant if the knowledge underlying it has a "valid . . . connection to the pertinent inquiry." *Id*. at 591–92. As Rule 702 requires, it must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Daubert*, 509 U.S. at 591. But "scientific validity [and relevance] for one purpose is not necessarily scientific validity for other, unrelated purposes." *Daubert*, 509 U.S. at 591.

## ARGUMENT

### I.    The Court Should Exclude Mr. McGraw's Opinions Because They Have No Relevance to Plaintiffs' Damages

The Court's ruling granting Plaintiffs' motion for partial summary judgment eliminates the need for all of Mr. McGraw's opinions. On December 20, 2024, the Court concluded that there was "no genuine dispute as to any material fact" on Plaintiffs' CFAA, CDAFA, and breach of contract claims. Dkt. No. 490 at 2 (quoting Fed. R. Civ. P. 56(a)). Because Mr. McGraw's opinions relate to issues the Court has already adjudicated, or have no relevance to the issues that remain, they will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a);

*see also Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (internal quotation marks and citations omitted).

### A. The Court Should Exclude Mr. McGraw's Technical Opinions That Contradict the Court's Ruling on Liability

The Court's conclusions in its ruling on summary judgment flatly contradict Mr. McGraw's opinions:

- ***Targeting California-based servers***.  Mr. McGraw opines that "NSO did not configure Pegasus to intentionally target any computers in California."  McGraw Rep. ¶ 108.  But this Court concluded that NSO "expressly aimed" Pegasus at computers in California.  Dkt. No. 494 at 5.

- ***Unauthorized access***.  Mr. McGraw opines that "neither NSO nor its customers either accessed any WhatsApp server without authorization or exceeded their authorized access to any WhatsApp server."  McGraw Rep. ¶ 123; *see also* McGraw Rebuttal Rep. ¶¶ 16–32.  But this Court concluded that any difference between the two theories was "semantic," and NSO exceeded its authorized access.  Dkt. No. 494 at 11–12.

- ***Evading detection***.  Mr. McGraw opines that Pegasus was not designed to evade detection by WhatsApp's servers.  McGraw Rebuttal Rep. ¶ 42.  But this Court concluded that NSO "redesigned Pegasus to evade detection after plaintiffs first fixed the security breach."  Dkt. No. 494 at 12.

- ***Obtaining information***.  Mr. McGraw opines that Pegasus "could not exfiltrate any information" from WhatsApp servers.  McGraw Rebuttal Rep. ¶ 41.  But this Court concluded that NSO's spyware obtains information "directly from the target users' devices" as well as from WhatsApp's servers.  Dkt. No. 494 at 12.

- ***Loss to Plaintiffs***.  Mr. McGraw opines that NSO's unauthorized access "did not cause Plaintiffs to incur any loss."  McGraw Rep. ¶ 148.  But this Court concluded that Plaintiffs "incurred costs investigating and remediating defendants' breaches."  Dkt. No. 494 at 15.

7

- ***Holding spyware makers liable***.  Mr. McGraw opines that there would be "[c]oncerning policy implications" from holding spyware makers like NSO liable.  McGraw Rep. ¶ 154.  But this Court has found NSO liable on all of Plaintiffs' claims.  Dkt. No. 494 at 10–15.

Each of these matters has already been resolved by the Court as a matter of law, rendering Mr. McGraw's opinions irrelevant.

### B.  The Court Should Exclude Mr. McGraw's Opinions on Ultimate Issues of Law

Even if the Court's decision granting Plaintiffs' motion for summary judgment had not rendered nearly all Mr. McGraw's opinions irrelevant, these opinions should be excluded for the independent reason that they offer a conclusion on an ultimate issue of law.  The Ninth Circuit "has repeatedly affirmed that 'an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'"  *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (emphasis omitted) (quoting *Hangarter*, 373 F.3d at 1016).  "This prohibition of opinion testimony on an ultimate issue of law recognizes that, '[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'"  *Id.*  (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

All of the technical opinions in the McGraw Report (i.e., Opinion Nos. 1 through 4) are explicitly framed in terms of an ultimate issue of law and should be excluded on that basis.  For instance, Mr. McGraw should not be permitted to testify as to whether NSO "targeted" Plaintiffs' computers, McGraw Rep. at 21, which precisely mimics the argument that NSO asserted—and the Court rejected.  *See* Dkt. No. 494 at 5.  For similar reasons, Mr. McGraw should not be permitted to rehash NSO's arguments as to whether NSO acted "without authorization" or "exceeding authorized access," or whether Plaintiffs suffered "damage" or "loss"—all of which rely on misguided interpretations of the CFAA.

### C.  Mr. McGraw's Policy Opinions Should Be Excluded Because His Opinions Are Irrelevant to the Issues That Will Be Raised at the Damages-Only Trial

Like his technical opinions, Mr. McGraw's policy opinions "have no relevance to the legal and factual matters to be resolved by the jury."  *Brice v. Haynes Invs., LLC*, 548 F. Supp. 3d 882,

1   903 (N.D. Cal. 2021).  To the extent the Court's ruling did not dispose of Mr. McGraw's opinions,

2   any opinions that remain lack any connection to the categories of damages that Plaintiffs seek.

3      ***Compensatory damages / unjust enrichment.***  Mr. McGraw's expert testimony has no rele-

4   vance to Plaintiffs' requests for compensatory damages or for disgorgement of NSO's profits.  Aside

5   from his inappropriate legal opinion that Plaintiffs should not be able to recover for responding to

6   NSO's attack, *see* McGraw Rep. ¶¶ 145–48, Mr. McGraw does not offer any opinions relevant to

7   these theories of damages.

8      ***Punitive damages***.  Mr. McGraw's testimony likewise has no relevance to Plaintiffs' request

9   for punitive damages.  As explained below, Mr. McGraw did not conduct any independent analysis

10  of NSO's customers or targets, let alone the customers or targets of the attacks that exploited

11  WhatsApp's servers.  In fact, Mr. McGraw conceded that "whether the customer was the FBI or Al-

12  Qaeda … [t]he technical analysis would remain the same."  Tr. at 77:10–17.  As such, Mr. McGraw

13  offers no more than speculative testimony about the "social utility" of NSO's Pegasus spyware,

14  which is irrelevant to what the jury must decide.  *Brice*, 548 F. Supp. at 902 (excluding expert opin-

15  ions regarding "social utility" of various business arrangements at issue in RICO case).  While Mr.

16  McGraw may have high-level opinions about the nature of NSO's conduct and the need for its busi-

17  ness, he has no basis to opine on whether, in this case, NSO acted with "oppression, fraud, or mal-

18  ice."  Cal. Penal Code § 502(e)(4); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg.,*

19  *Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1068 (C.D. Cal. 2013) (excluding expert's

20  "general testimony" regarding collision investigations where expert "offers no opinions that are spe-

21  cific to the Camry or the collision").  As such, Mr. McGraw's expert testimony has no relevance to

22  the jury's consideration of punitive damages.

23  **II.**  **The Court Should Exclude Mr. McGraw's Opinions Regarding the Functionality**

24      **and Development of NSO's Pegasus Spyware**

25     Setting aside the fact that Mr. McGraw's opinions regarding Pegasus's functionality are ir-

26  relevant, those opinions should also be excluded as unreliable.  NSO "repeatedly failed to produce

27  relevant discovery and failed to obey court orders regarding such discovery."  Dkt. No. 494 at 9.

28  NSO's tactical decision to deny its own expert access to Pegasus source code deprives Mr. McGraw

of a reliable basis for his opinions.  Because Mr. McGraw neither reviewed any code showing how Pegasus functioned (which NSO did not produce) nor conducted any investigation into how NSO developed Pegasus (which NSO did not allow), he lacks sufficient facts or data for his conclusions on these issues.  In the alternative, the Court should preclude Mr. McGraw from testifying on these topics as part of the discovery sanction that the Court has already found was "appropriate."  *Id.*

### A.  NSO Rejected Mr. McGraw's Request to Review Pegasus Code

In order for an expert's testimony to satisfy Federal Rule of Evidence 702, it must be "based on sufficient facts or data."  Fed. R. Evid. 702(b).  Though Mr. McGraw's opinions all relate to how NSO's Pegasus spyware functions, NSO—the party that sponsors him as an expert—refused his request to review the source code for the Pegasus spyware.  *See* Tr. at 237:2–5.  This deprived Mr. McGraw of "sufficient facts or data" and warrants exclusion of all his opinions regarding the functionality of the Pegasus spyware.

Despite never having reviewed Pegasus code, Mr. McGraw offers expert opinions about how Pegasus operates.  For instance, Opinion No. 1 in the McGraw Report advances the theory that NSO's Pegasus spyware did not target any servers in California.  *See, e.g.*, McGraw Rep. ¶ 110 ("I have seen no evidence suggesting that NSO configured any Pegasus installation to target" WhatsApp signaling servers in California).  In offering Opinion No. 2, which focuses on whether NSO or its customers accessed WhatsApp servers without authorization, Mr. McGraw likewise relies on a description of certain technical features of the Pegasus spyware.  *See, e.g.*, *id*. ¶¶ 127–31 (describing "operation of Pegasus" with respect to WhatsApp's servers).  And Opinion No. 3 of the McGraw Report similarly relies upon technical aspects of NSO's Pegasus spyware.  *See, e.g.*, *id*. ¶¶ 141–42 (describing technical aspects of Pegasus messages).

Courts exclude the opinions of technical experts who offer opinions about the functioning of computer code that they did not review.  In *Vox Marketing Group, LLC v. Prodigy Promos L.C.*, another case brought under the CFAA, the district court excluded a technical expert from opining on when a feature was operational when the expert "had not reviewed the actual digital files" at issue.  521 F. Supp. 3d 1135, 1152 (D. Utah 2021).  The expert's failure to review these files meant that "the basis of that opinion is not grounded in sufficient facts or data," and thus "will not 'help the trier

of fact to understand the evidence or to determine a fact in issue.'" *Id*. (quoting Fed. R. Evid. 702(a)); *see, e.g.*, *Veritas Operating Corp. v. Microsoft Corp.*, 2008 WL 687118, at *3 (W.D. Wash. Mar. 11, 2008) (prohibiting expert who did not review source code from opining that code was "severely buggy"); *Autotech Techs. Ltd. v. Automationdirect.com, Inc.*, 2005 WL 3180147, at *9 (N.D. Ill. Nov. 23, 2005) (excluding opinion of expert who did not review product's source code and instead relied upon publicly available information); *see also Maldonado v. Apple, Inc.*, 2021 WL 1947512, at *20 (N.D. Cal. May 14, 2021) ("The flaw in [expert]'s opinion is precisely that the underlying material was not communicated to him and he did not review it.") (emphasis omitted).

**B.  The Limited Materials That Mr. McGraw Reviewed Do Not Provide Him with Sufficient Facts or Data to Opine on the Functionality of NSO's Pegasus Spyware**

Mr. McGraw concedes that he lacks access to Pegasus production code, and instead bases his technical opinions on (1) computer code produced by Plaintiffs, including the contents of the AWS Server, (2) information from Tamir Gazneli, NSO's head of research-and-development, and (3) "open-source materials regarding the operation of Pegasus." McGraw Rep. ¶ 73. Yet none of these sources is sufficient for Mr. McGraw to offer an expert opinion on how Pegasus operated.

As a threshold matter, Mr. McGraw's course of conduct after being retained underscored the importance of the Pegasus "production code" in offering technical opinions in this case. He asked to review the Pegasus production code, as it would have helped inform his conclusions. *See, e.g.*, Tr. at 72:12–13 ("If we were able to review the code, we would have reviewed the code.").

The contents of the AWS Server produced by Plaintiffs are not a sufficient substitute for Mr. McGraw's opinions on the functionality of the "production code" that Mr. McGraw asked to review, but NSO refused to provide. First, as NSO admitted, the AWS Server only contains portions of the Pegasus spyware. Dkt. No. 208 at 4 (admitting that AWS Server contained "code that comprises *part* of the Pegasus system" (emphasis added)). Mr. Gazneli admitted that the AWS Server contained only snapshots of Pegasus code at a single point in time and did not show the distinctions between the three different installation vectors that NSO used to target Plaintiffs' servers. *See* Dkt. No. 405-4, Ex. N at 322:22–323:1 ("The code may change. I don't know if it changed in specific timing before and after."). Second, Mr. McGraw admitted that it was impossible to determine whether, if

1    any, portions of the code on the AWS Server made it into the "production code" that NSO actually

2    used, including against the WhatsApp servers.  *See* Tr. at 275:11–18 (acknowledging that "[y]ou

3    can't be deterministic" as to whether the code on the AWS Server was used in production).

4         Nor can Mr. McGraw rehabilitate his opinions by relying on Mr. Gazneli's testimony.

5    Throughout his deposition, Mr. McGraw said that the code on the AWS Server "comports" with Mr.

6    Gazneli's description of Pegasus "production code."  *See, e.g.*, Tr. at 137:9–138:1, 141:5–21.  But

7    the Court should not allow Mr. McGraw, who has never seen Pegasus production code, to parrot Mr.

8    Gazneli's description of the spyware's functionality.  *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL

9    6887043, at *6 (N.D. Cal. Nov. 14, 2017) (precluding expert opinion based on "uncritical acceptance

10   of other evidence in the case, which can speak for itself"); *see also Ash Grove Cement Co. v. Emps.*

11   *Ins. of Wausau*, 246 F.R.D. 656, 661 (D. Kan. 2007) (ruling that expert "may not simply parrot or

12   recite the opinions and knowledge of other expert and fact witnesses"); *Dura Auto. Sys. of Indiana,*

13   *Inc. v. CTS Corp.*, 285 F.3d 609, 612–14 (7th Cir. 2002) (preventing expert from serving as "mouth-

14   piece" of another person); *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, 2009 WL 3187685,

15   at *2 (S.D. Ind. Sept. 29, 2009) ("When an expert's proffered opinion merely parrots information

16   provided to him by a party, that opinion is generally excluded.").

17       **C.  The Court Should Exclude Mr. McGraw's Opinions Regarding NSO's Research-**

18       **and-Development Process**

19       For similar reasons, the Court should exclude Mr. McGraw from offering opinions or testi-

20   mony regarding the process that NSO used to develop its spyware because they are not "based on

21   sufficient facts or data."  Fed. R. Evid. 702(b).  Mr. McGraw admitted that he has no knowledge of

22   the way that NSO developed its advanced understanding of WhatsApp's server architecture or the

23   way that NSO developed its Pegasus spyware to utilize that infrastructure.  Tr. at 187:25–188:18.

24   The Court should therefore exclude Mr. McGraw's "wholly speculative" and "unfounded testimony."

25   *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022).

26       In the McGraw Rebuttal Report, Mr. McGraw attempts to defend NSO's reverse-engineering

27   of the WhatsApp client application by noting that individuals could "download the WhatsApp client

28   application before signing up for a WhatsApp account and agreeing to WhatsApp's terms of service."

1  McGraw Rebuttal Rep. ¶ 51.  Based on that speculation, Mr. McGraw concludes that "it is simply

2  wrong to imply that NSO had to go through a tedious research process to understand the WhatsApp

3  client application" for purposes of reverse-engineering.  *Id.*[3]

4       Despite the fact that Mr. McGraw opined on the general level of difficulty of reverse-engi-

5  neering the WhatsApp application, he conceded that he lacked any knowledge of NSO's actual efforts

6  to reverse-engineer the WhatsApp client application, or to understand WhatsApp's infrastructure

7  more broadly.  For instance, Mr. McGraw conceded that he "did not have insight into whether or not

8  NSO had any access to WhatsApp in any—in any manner" during NSO's research-and-development

9  process.  Tr. at 190:22–24.  Similarly, whether NSO actually extracted and decompiled the code for

10  the WhatsApp client app was "outside of" Mr. McGraw's opinion.  Tr. at 191:19–22.  Mr. McGraw

11  also admitted that he did not know "how NSO developed [its] understanding" of how WhatsApp's

12  servers communicated with one another.  Tr. at 193:23–24 ("I don't have any direct knowledge of

13  how [NSO] came to have that information.").

14       More broadly, Mr. McGraw disclaimed any opinion regarding the difficulty of NSO's devel-

15  opment of installation vectors to target WhatsApp (which NSO code-named "Hummingbird").  Mr.

16  McGraw testified that he had no opinion regarding the degree of sophistication required for Pegasus

17  generally.  *See* Tr. at 215:4–5 ("My opinion based on this report is based on the client application.").

18  Mr. McGraw's deposition revealed that he lacked knowledge of NSO's development efforts.  For

19  instance, Mr. McGraw admitted that he "did not have any access to or inquire about how NSO de-

20  veloped their capabilities as far as developing the vectors of Hummingbird." Tr. at 189:6–9. Despite

21  speaking to Mr. Gazneli, Mr. McGraw did not ask him "how [NSO] developed their capabilities."

22  Tr. at 188:21–22.  Mr. McGraw had no idea how long it took NSO to develop its exploits, or the

23  amount of resources NSO expended.  Tr. at 211:21–213:8.  In light of these admissions, Mr.

24  McGraw's testimony about how NSO developed Pegasus would be based on nothing more than spec-

25  ulation or impermissible parroting of fact witness testimony, and should thus be excluded.

26  _____

27  [3] In granting Plaintiffs' motion for partial summary judgment, the Court recognized that NSO "of-
28  fer[red] no evidence as to when they did such reverse-engineering or decompiling."  Dkt. No. 494
    at 14.

**D.  The Court Should Exclude Mr. McGraw from Offering Opinions Regarding Pegasus's Operation on Target Devices**

Just as Mr. McGraw lacks sufficient facts and data to opine on how NSO developed Pegasus or how Pegasus worked in operation, he lacks any basis to opine on how the Pegasus agent—the portion of Pegasus that extracts information from a target's mobile device—functions once it is installed, or the role that NSO plays in this process.  The Court should thus exclude Mr. McGraw from offering any opinions regarding how Pegasus interacted with target devices.

As Mr. McGraw acknowledged at his deposition, NSO refused to provide any code showing how the Pegasus agent operates once installed on target devices.  Tr. at 62:13–15 ("There's no actual code related to the exploit that is the Pegasus agent.").  Nonetheless, Mr. McGraw offers opinions regarding how NSO's Pegasus functions on these target devices.  *See, e.g.*, McGraw Rep. ¶ 80 (opining that "the operation of [the Pegasus agent] did not use or otherwise rely upon the WhatsApp application or any WhatsApp infrastructure"); McGraw Rebuttal Rep. ¶ 48 (criticizing opinion that "Pegasus users altered, damaged, or deleted data on the target devices") (emphasis omitted); *id.* ¶ 109 (claiming that evidence "does not establish that information was successfully extracted from a particular target device without permission").  Because he lacks sufficient facts or data to support any opinions about how Pegasus functions on target devices, or the role that NSO's customers play in this process, Mr. McGraw should not be permitted to offer such opinions at trial.[4]

**E.  The Court Should Independently Preclude NSO from Offering Expert Testimony Regarding Pegasus as a Discovery Sanction**

Preventing Mr. McGraw from offering opinions regarding the functionality of Pegasus is particularly appropriate because NSO made the conscious decision not to provide him—or anyone else in this case—with Pegasus code.  In granting Plaintiffs' motion for sanctions, the Court concluded that NSO "repeatedly failed to produce relevant discovery and failed to obey court orders regarding

---

[4] By contrast, Plaintiffs' primary technical expert appropriately acknowledged that NSO did not produce code showing the operation of the Pegasus agent.  *See* Youssef Rep. ¶ 112 ("It is my understanding this exploit led to the installation of a final-stage payload; the Defendants do not produce evidence with which to analyze this final-stage payload's function or capabilities.").

such discovery," and that the "[m]ost significant" failing related to "Pegasus source code."  Dkt. No. 494 at 9.  Specifically, NSO's "limitation of its production such that it is viewable only by Israeli citizens present in Israel is simply impracticable for a lawsuit that is to be litigated in this district."  *Id*.  Though the Court did not need to impose evidentiary sanctions to find NSO liable on Plaintiffs' claims, it agreed to "impose evidentiary sanctions when appropriate."  *Id*.  Such sanctions would be proper at this juncture.  NSO should not be permitted to proffer expert testimony as to issues on which it has denied its adversary the underlying discovery needed to challenge such assertions.

### III.     The Court Should Exclude Mr. McGraw's Policy Opinions About "Lawful Intercept" Technology

Even if the Court finds that Mr. McGraw's opinions about the "policy implications" of finding NSO liable are relevant to the amount of Plaintiffs' damages, it should nonetheless exclude these opinions as unreliable and unsupported by appropriate expertise or analysis.  Mr. McGraw's background betrays a lack of expertise regarding "lawful intercept" technology and surrounding "policy concerns."  McGraw Rep. ¶ 149.  Mr. McGraw admits he has conducted no analysis to determine whether any use of Pegasus by any NSO customer was lawful, or lawfully authorized, and that he does not have the capability to make such determination—whether under the laws of the United States or any other jurisdiction. *See* Tr. at 101:21–22 ("I'm not a lawyer.  I cannot say whether the activity was lawful or not lawful.").  For this reason, Mr. McGraw's characterization of Pegasus as "lawful"—a term repeated 30 times throughout his reports—lacks any foundation or reliable basis.  Mr. McGraw's nontechnical testimony should therefore be excluded.

#### A.  Mr. McGraw Lacks Qualifications to Offer Policy Opinions Regarding "Lawful Intercept" Technology

Mr. McGraw lacks the required "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, to offer opinions on what constitutes "lawful intercept" technology, whether NSO's Pegasus spyware falls within this category, or the implications of holding NSO liable.  *See, e.g.*, McGraw Rep. ¶ 154 ("Concerning policy implications may arise from holding software makers liable for how users decide to employ those tools."); McGraw Rebuttal Rep. ¶ 99 ("NSO is a lawful-intercept software developer providing a capability to vetted and approved government customers.").

1    To provide expert opinions, an expert's knowledge must contain a "valid . . . connection to

2  the pertinent inquiry." *Daubert*, 509 U.S. at 592.  "To be able to testify . . . expert witnesses must

3  describe their relevant background and explain how that background informed the opinions they of-

4  fer." *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016).  Experts relying

5  on experience must "explain how that experience leads to the conclusion reached, why that experi-

6  ence is a sufficient basis for the opinions, and how that experience is reliably applied to the facts."

7  Fed. R. Evid. 702 advisory committee's note (2000); *see United States v. Cerna*, 2010 WL 11627594,

8  at *6 (N.D. Cal. Dec. 17, 2010) (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)).

9    Mr. McGraw's background provides no expertise regarding the use of "lawful intercept" tech-

10  nology or the "repercussions" or "implications" of holding NSO liable.  *See* McGraw Rep. ¶¶ 149–

11  154.  Before being retained as an expert in this case, Mr. McGraw knew nothing about NSO or Peg-

12  asus beyond what was in the public domain.  Tr. at 13:22–14:9.  Mr. McGraw has never "personally

13  operated" a tool under any lawful authorization.  Tr. at 165:16.  He has never used Pegasus or any

14  other commercial spyware, has only a general familiarity with processes under U.S. law to conduct

15  cyber surveillance on an individual, and has no insight at all into the laws of other countries.  Tr. at

16  89:21–90:18.  In light of his limited Pegasus-related experience, and his inability to review NSO's

17  code, Mr. McGraw knows almost nothing about Pegasus beyond what is "enumerated in [NSO's]

18  documentation."  Tr. at 149:23–25. Mr. McGraw's lack of experience using what he calls "lawful

19  intercept" tools renders him wholly unqualified to offer an opinion about what might occur if NSO

20  is prevented from accessing Plaintiffs' computers without authorization.

21    **B.  Mr. McGraw Has No Reliable Basis to Opine on NSO's Customers or Targets**

22    In addition to lacking any relevant qualifications or experience, Mr. McGraw lacks any reli-

23  able basis to expert testimony about the identities of NSO's customers, or whether NSO vets them.

24  Mr. McGraw opines that "lawful intercept" technologies are used by "governments and law enforce-

25  ment agencies," McGraw Rep. ¶ 18, and that NSO provides Pegasus to "vetted and approved gov-

26  ernment customers," McGraw Rebuttal Rep. ¶ 99.  But Mr. McGraw conceded that he has not seen

27  a list of NSO's customers and cannot verify whether they are governments or government agencies.

28  Tr. at 74:22–76:9.  Mr. McGraw did no analysis to explore NSO's response to customer misuse,

1    stating that he was "not sure how I would verify that other than what they said," which he took at

2    "face value."  Tr. at 96:18–24.   And Mr. McGraw has no insights as to whether NSO's customers

3    include the nations he believes would abuse Pegasus.  Tr. at 82:8–11.

4          Mr. McGraw likewise lacks any reliable basis to offer expert testimony about Pegasus targets.

5    Mr. McGraw opines that customers use tools like Pegasus to "enable lawful surveillance of criminals

6    and terrorists."  McGraw Rep. ¶ 39.  But Mr. McGraw admitted that he has "not seen a list of Pegasus

7    customer targets," and has "not done any analysis as to who may or may not have been a target," or

8    "whether the targets were actual or suspected criminals," as these analyses were "outside of scope of

9    [his] opinion."  Tr. at 120:6–25.  Similarly, Mr. McGraw conceded that he has "no insight" into

10   whether NSO's customers used Pegasus lawfully.  Tr. at 299:5–7 ("Do I have any insights into which

11   customers of NSO may or may not have used this lawfully, I do not.").  Because Mr. McGraw's

12   knowledge of Pegasus, NSO's customers, and Pegasus victims comes entirely from taking NSO's

13   claims at face value, he is unqualified to opine about Pegasus or "lawful intercept" technology.

14       **C.  Mr. McGraw's Policy Opinions Should Be Excluded Because His Opinions**

15            **Regarding "Lawful Intercept" Technology Lack Intellectual Rigor**

16         Even if Mr. McGraw were an expert in "lawful intercept" technology (which he is not) or had

17   any reliable basis to opine on NSO's customers or targets (which he does not), Mr. McGraw none-

18   theless relies on an unreliable methodology to determine whether a product is "lawful intercept"

19   technology.  The "basic function of expert testimony" is "to help the trier of fact understand highly

20   specialized issues that are not within common experience."  *Elosu*, 26 F.4th at 1026 (citing *Kumho*

21   *Tire*, 526 U.S. at 148–49).   The trial judge must demand more than "the expert's word" that his

22   methodology is sound.  Fed. R. Evid. 702 advisory committee's note (2000) (citing *Daubert v. Mer-*

23   *rell Dow Pharms., Inc.* (*Daubert II*), 43 F.3d 1311, 1319 (9th Cir. 1995))

24         Mr. McGraw's characterization of Pegasus as "lawful intercept" technology lacks the "intel-

25   lectual rigor" required of expert testimony.  *See Kumho Tire*, 526 U.S. at 152.  Although the McGraw

26   Report includes several lists of what he describes as "L[awful] [I]ntercept providers," Mr. McGraw

27   admitted under oath that he was not "making an assertion that any of [that software is] a lawful

28   intercept technology."  Tr. at 154:17–19.  Indeed, the very materials from which Mr. McGraw derives

1    his entire understanding of Pegasus's capabilities and NSO's business describe Pegasus as *different*

2    from "lawful intercept." *See, e.g.*, Dkt. No. 401-2, Ex. 7 at *683–684. Even NSO's head of R&D

3    testified that "Pegasus is different than lawful interception." Gazneli Dep. Tr. at 97:10–13.

4         Mr. McGraw instead builds his opinion on Pegasus based on who he imagines uses it. In his

5    deposition, he provided three considerations for his opinion that Pegasus is "lawful intercept" tech-

6    nology. The first is his belief that Pegasus is not something "you can just buy on the dark web …

7    and use against [your], you know, aggrieved wife or spouse." Tr. at 93:6–9. Yet Mr. McGraw

8    admitted that he had identified Pegasus for sale on the dark web, and NSO's own corporate repre-

9    sentatives have acknowledged that it has been misused. Tr. at 109:1–6; *see also* Shohat Dep. Tr. at

10   24:1–7 (admitting misuse). The second is that "NSO has specifically stated that they have a process

11   which not only they vet internally but through the Israeli government," but Mr. McGraw admitted

12   that he lacks any knowledge of this process. Tr. at 93:12–21. The third is the belief that NSO and

13   the Israeli government place certain terms on the use of Pegasus, but Mr. McGraw admits that he

14   does not know what those terms are, how NSO enforces them, or whether NSO enforces them at all.

15   *See* Tr. at 93:18–21, 96:18–24, 97:9–11.

16        In sum, Mr. McGraw's methodology—consisting solely of taking NSO statements at face

17   value—does not pass muster under Rule 702. He admits that he "believe[s] the marketing literature"

18   and that evaluating the truthfulness of NSO's claims was outside the scope of both his assignment

19   and his abilities. Tr. at 96:20–24 ("All I can do is take NSO testimony under oath as face value.").

20   Because Mr. McGraw's opinions on "lawful intercept" do not reflect any discernible methodology,

21   and instead parrot what he describes as NSO's "marketing literature," the Court should exclude Mr.

22   McGraw from offering them at trial.[5]

23                              **CONCLUSION**

24        For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to

25   exclude the expert opinions of Terrence McGraw.

26   _____

27   [5] Mr. McGraw likewise fails to provide a methodology to opine, as he did in his deposition, that
     NSO's customers (rather than NSO) should face "moral culpability" for their misuse of Pegasus.
28   *See* Tr. at 102:17–19.

Dated:  January 9, 2025          Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  /s/ Micah G. Block
       Greg D. Andres
       Antonio J. Perez-Marques
       Gina Cora
       Craig T. Cagney
       Luca Marzorati
         (admitted *pro hac vice*)
       DAVIS POLK & WARDWELL LLP
       450 Lexington Avenue
       New York, New York 10017
       Telephone: (212) 450-4000
       Facsimile: (212) 701-5800
       Email: greg.andres@davispolk.com
           antonio.perez@davispolk.com
           gina.cora@davispolk.com
           craig.cagney@davispolk.com
           luca.marzorati@davispolk.com

       Micah G. Block (SBN 270712)
       DAVIS POLK & WARDWELL LLP
       900 Middlefield Road, Suite 200
       Redwood City, California 94063
       Telephone: (650) 752-2000
       Facsimile:  (650) 752-2111
       Email: micah.block@davispolk.com

       *Attorneys for Plaintiffs*
       *WhatsApp LLC and Meta Platforms, Inc.*