Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
          antonio.perez@davispolk.com
          gina.cora@davispolk.com
          craig.cagney@davispolk.com
          luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.<br><br>                          Plaintiffs,<br><br>        v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>                          Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE EXPERT TESTIMONY OF JOSHUA J. MINKLER**<br><br>Date:    April 10, 2025<br>Time:    2:00 p.m.<br>Ctrm:   3<br>Judge:   Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

BACKGROUND ...........................................................................................................4

    I.     Mr. Minkler's Background............................................................................4

    II.    Mr. Minkler's Report ...................................................................................4

    III.   Mr. Minkler's Deposition.............................................................................5

LEGAL STANDARD......................................................................................................6

ARGUMENT..................................................................................................................6

    I.     Mr. Minkler's Testimony Should Be Excluded Because His Opinions Are Irrelevant to the Issues Remaining to Be Decided in This Case.................................7

    II.    Mr. Minkler Is Not Qualified to Opine on Whether U.S. or Foreign Law Enforcement Could Legally Use Pegasus.................................10

    III.   Mr. Minkler's Opinions Should Be Excluded Because They Are Not Reliable........12

    IV.   Mr. Minkler's Testimony Should Be Excluded under Rule 403 Because of the Substantial Risk of Unfair Prejudice, Confusing the Jury, and Wasting Time.........19

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Aguilar v. Int'l Longshoremen's Union Local No. 10,*
    966 F.2d 443 (9th Cir. 1992) ....................................................................... 7

*Am. Honda Motor Co. v. Allen,*
    600 F.3d 813 (7th Cir. 2010) ..................................................................... 17

*Avila v. Willits Env't Remediation Tr.,*
    633 F.3d 828 (9th Cir. 2011) ..................................................................... 10

*Brice v. Haynes Invs., LLC,*
    548 F. Supp. 3d 882 (N.D. Cal. 2021) ........................................................ 7

*Caldwell v. City of S.F.,*
    2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) ............................................ 16

*Cooper v. Brown,*
    510 F.3d 870 (9th Cir. 2007) ....................................................................... 7

*Crow Tribe of Indians v. Racicot,*
    87 F.3d 1039 (9th Cir. 1996) ....................................................................... 7

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) ................................................................................. 6, 7

*Dep't of Toxic Substances Control v. Technichem, Inc.,*
    2016 WL 1029463 (N.D. Cal. Mar. 15, 2016) ...................................... 13, 18

*Doe v. Bridges to Recovery, LLC,*
    2021 WL 4690830 (C.D. Cal. May 19, 2021) ............................................ 16

*Elosu v. Middlefork Ranch Inc.,*
    26 F.4th 1017 (9th Cir. 2022) ............................................................... 12, 17

*Exeltis USA Inc. v. First Databank, Inc.,*
    2020 WL 7025089 (N.D. Cal. Nov. 30, 2020) ........................................... 18

*Giganews, Inc. v. Perfect 10, Inc.,*
    2019 WL 1422723 (C.D. Cal. Mar. 13, 2019) ........................................... 16

*Gold v. Lumber Liquidators, Inc.,*
    323 F.R.D. 280 (N.D. Cal. Nov. 15, 2017) ................................................ 17

*Hardeman v. Monsanto Co.,*
    997 F.3d 941 (9th Cir. 2021) .................................................................... 7, 8

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
   87 F. Supp. 3d 928 (N.D. Cal. 2015) ........................................................................ 15

*Illuminia, Inc. v. BGI Genomics Co., Ltd*,
   2021 WL 4979799 (N.D. Cal. Oct. 27, 2021) ............................................................ 9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ........................................................................................... 6, 13

*Laux v. Mentor Worldwide, LLC*,
   295 F. Supp. 3d 1094 (C.D. Cal. Nov. 8, 2017), *aff'd*, 786 Fed. App'x 84 (9th Cir. 2019). ...... 18

*In re Leap Wireless Int'l, Inc.*,
   301 B.R. 80 (Bankr. S.D. Cal. 2003) ....................................................................... 17

*Lin v. Solta Medical, Inc.*,
   2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) ..................................................... 7, 17

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
   2014 WL 3417941 (N.D. Cal. July 11, 2014) ........................................................... 18

*Medo v. Super. Ct.*,
   251 Cal. Rptr. 924 (Cal. Ct. App. 1988) ................................................................... 8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   480 F. Supp. 3d 1000 (N.D. Cal. 2020), *aff'd*, 2022 WL 13613963 (9th Cir. Oct. 21, 2022) ... 16

*Pooshs v. Phillip Morris USA, Inc.*,
   287 F.R.D. 543 (N.D. Cal. 2012) .............................................................................. 6

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) .................................................................................... 7

*Retamosa v. Target Corp.*,
   2021 WL 4499236 (C.D. Cal. May 4, 2021) ............................................................ 19

*In re Ripple Labs, Inc. Litig.*,
   2024 WL 4583525 (N.D. Cal. Oct. 24, 2024) ...................................................... 6, 13

*Rogers v. Raymark Indus., Inc.*,
   922 F.2d 1426 (9th Cir. 1991) ................................................................................ 20

*SEC v. Reyes*,
   2007 WL 963422 (N.D. Cal. Mar. 30, 2007) .......................................................... 14

*Serna v. Costco Wholesale Corp.*,
   2024 WL 4720884 (C.D. Cal. Sept. 16, 2024) ........................................................ 19

*Shannon v. United States*,
   512 U.S. 573 (1994) ............................................................................................... 19

*Siqueiros v. Gen. Motors LLC*,
   2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ............................................................... 18

*Stanley v. Novartis Pharms. Corp.*,
  2014 WL 12573393 (C.D. Cal. May 6, 2014) ............................................................ 17

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ........................................................................................................ 8

*Stephens v. Union Pac. R.R. Co.*,
  935 F.3d 852 (9th Cir. 2019) ........................................................................................ 16

*Sullivan v. U.S. Dep't of Navy*,
  365 F.3d 827 (9th Cir. 2004) .......................................................................................... 6

*Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*,
  2024 WL 1975456 (N.D. Cal. Mar. 31, 2024) ............................................................ 10

*Takeda Pharms. U.S.A., Inc. v. Par Pharm. Cos., Inc.*,
  2015 WL 13877466 (D. Del. Nov. 24, 2015) .......................................................... 9, 11

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
  648 F. App'x 609 (9th Cir. 2016) ........................................................................... 13, 17

*United States v. Cerna*,
  2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) .......................................................... 12

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) .................................................................................. 6, 12

*United States v. Harris*,
  863 F.2d 887 (9th Cir. 1988) ........................................................................................ 19

*United States v. Hermanek*,
  289 F.3d 1076 (9th Cir. 2002) ................................................................................ 14, 15

*United States v. Holguin*,
  51 F.4th 841 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509 (2023) ........................... 12

*United States v. Simpson*,
  460 F.2d 515 (9th Cir. 1972) ........................................................................................ 19

*United States v. Valencia-Lopez*,
  971 F.3d 891 (9th Cir. 2020) ........................................................................................ 12

*Venture Corp. v. Wherify Wireless, Inc.*,
  2005 WL 5960919 (C.D. Cal. Sept. 23, 2005) ........................................................... 18

*Waymo LLC v. Uber Techs., Inc.*,
  2018 WL 646701 (N.D. Cal. Jan. 30, 2018) .............................................................. 16

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) ............... 16, 17

*Williams v. Illinois*,
  567 U.S. 50 (2012) ................................................................................................. 15, 16

STATUTES & RULES

18 U.S.C. §§ 2510–23 ................................................................................................. 10

18 U.S.C. §§ 3121–27 ................................................................................................. 10

Fed. R. Civ. P. 26 ................................................................................................. 13, 14

Fed. R. Evid. 403 ................................................................................................ *passim*

Fed. R. Evid. 702 ................................................................................................ *passim*


OTHER AUTHORITIES

Exec. Order No. 14093, 88 FR 18957 (Mar. 27, 2023) ...............................................8

Foreign Intelligence Surveillance Act..............................................2, 7, 8, 10, 11

Press Release, *Fact Sheet: President Biden Signs Executive Order to Prohibit U.S. Government Use of Commercial Spyware that Poses Risks to National Security*, The White House (Mar. 27, 2023), https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2023/03/27/fact-sheet-president-biden-signs-executive-order-to-prohibit-u-s-government-use-of-commercial-spyware-that-poses-risks-to-national-security/ ............................................................. 8, 9

Press Release, *U.S. Dep't of Com., Commerce Adds NSO Group and Other Foreign Companies to Entity List for Malicious Cyber Activities*, U.S. Dep't of Commerce (Nov. 3, 2021), https://www.commerce.gov/news/press-releases/2021/11/commerce-adds-nso-group-and-other-foreign-companies-entity-list................................................................................................9

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ...........................2, 5, 6, 10, 11

## NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY

PLEASE TAKE NOTICE THAT, on April 10, 2025 at 2:00 p.m. in Courtroom 3 of the U.S. District Court for the Northern District of California, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. will and hereby do move to exclude the testimony of Joshua J. Minkler, who Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd. (collectively, "NSO") have designated as an expert.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Gina Cora and all exhibits thereto, the pleadings and papers on file in this action, and on such other written and oral argument as may be presented to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court should exclude NSO's proffered expert, Joshua J. Minkler, a former federal prosecutor in Indianapolis, from opining about the potential use of NSO's spyware by law enforcement.  Mr. Minkler's opinions should be excluded under Federal Rule of Evidence 702 and *Daubert* for several reasons, including because they are irrelevant, he is unqualified to give them, and his opinions are unreliable.  They should also be excluded under Federal Rule of Evidence 403 because of the substantial risk of unfair prejudice to Plaintiffs, jury confusion, and wasted time.

*First*, Mr. Minkler's testimony should be excluded because it is irrelevant.  Given the Court's ruling on liability, the only question for the jury at the upcoming damages trial is how much NSO owes Plaintiffs in damages for NSO's violation of the federal and state computer hacking statutes and NSO's breach of WhatsApp's Terms of Service.  Mr. Minkler's proffered opinions—which are all related to lawful surveillance of electronic communications by law enforcement—do not "help the trier of fact understand the evidence or determine a fact in issue" with respect to determining damages in this civil litigation.  Fed. R. Evid. 702(a).  Indeed, even if the Court had not already found NSO's conduct was unlawful, Mr. Minkler's testimony would be irrelevant.  Unlike the examples that Mr. Minkler cites in his report, the attacks at issue in this case had no connection to U.S. federal law enforcement, nor were they authorized by any U.S. court.  Further, as Mr. Minkler admits, there is no indication that U.S. law enforcement has ever deployed Pegasus.  *See, e.g.*, Tr. at 159:20–22 (Mr. Minkler testifying in response to a question about whether the attacks at issue in this case

involved the lawful use of Pegasus in the United States by law enforcement that he is "not aware of the lawful use of Pegasus by federal law enforcement agencies" at all); *see also id.* at 57:15–25 (he has not witnessed or observed anyone using Pegasus); *id.* at 76:2–4 (he "did not use Pegasus as a federal law enforcement officer between 1994 and 2020").  At bottom, Mr. Minkler's opinions are about the hypothetical benefit of Pegasus to U.S. law enforcement if U.S. law enforcement were to use Pegasus.  Mr. Minkler himself recognizes the hypothetical nature of his opinion, explaining that his "opinion is in the future" and that "[c]learly, [the U.S. Department of Justice, including the FBI,] decided in '22 not to use [Pegasus].  Could they . . . have a different opinion based on a necessity to use it?  Yes." *Id*. at 235:19–236:6.[1]  Mr. Minkler's testimony, which is unrelated to any actual facts here, should be excluded under Rule 702 as irrelevant.

*Second*, even if testimony about hypothetical uses of Pegasus by law enforcement were relevant, Mr. Minkler is not qualified under Rule 702 to opine on that topic, either with respect to U.S. or foreign law enforcement.  Mr. Minkler admits to not knowing the legislative purpose of Title III and to *not having even read* the provisions of FISA on which he relies in his report.  He also does not know the name of the statute containing Title III and lists the incorrect name in his report.  Mr. Minkler has never published, researched, or taught anything—nor is he qualified to theorize on how law enforcement could use Pegasus consistent with Title III and FISA.  Mr. Minkler relies on his experience prosecuting criminal cases in Indianapolis as the basis for his testimony, but that experience is itself limited and stale.  In his 26 years as a federal prosecutor, Mr. Minkler had occasion to be involved in cases in which Title III wiretaps were used to investigate crimes and two cases involving FISA warrants.  He testified, however, that the last time he applied to a court for a Title III wiretap was in or before 2014, and he has never applied for a FISA warrant.  With respect to the

---

[1] In other words, Mr. Minkler opines on an imagined scenario in which the U.S. Department of Justice obtains a court order to use Pegasus under Title III of the of the Omnibus Crime Control and Safe Streets Act of 1968 or the Foreign Intelligence Surveillance Act ("FISA") at some future time in connection with a hypothetical investigation that has nothing to do with this case.  Mr. Minkler recognizes that the attacks at issue in this case were not made pursuant to a court order issued under Title III or FISA.  *Id.* at 80:4–81:6.  Although Mr. Minkler did not review the Court's decision finding NSO liable for violations of the federal and state anti-hacking statues and breach of WhatsApp's Terms of Service, he understands that the Court made those findings.  *Id.* at 77:15–78:6.

legality of using Pegasus by foreign law enforcement under foreign law, Mr. Minkler has no expert qualifications whatsoever.  Despite offering opinions on this topic, Mr. Minkler "agree[d]" at his deposition that he is "not qualified to testify about the lawfulness of some law enforcement technique in a foreign country," with the exception of having "limited knowledge" and "limited understanding" involving how Mexican law enforcement agencies were using information shared by the Drug Enforcement Administration ("DEA") in 2008.  *Id.* at 160:12–20.

*Third*, Mr. Minkler's opinions should be excluded because they are unreliable.  For example, Mr. Minkler's opinions on the hypothetical use of Pegasus by U.S. law enforcement are not "based on sufficient facts or data" because there are no facts or data indicating that U.S. law enforcement actually uses, or even intends to use, Pegasus.  Fed. R. Evid. 702(b).  Mr. Minkler also intends to testify about the investigatory challenges posed by end-to-end encryption in law enforcement investigations for which he has no personal experience, and instead relies on press releases he read.  This testimony is not "based on sufficient facts and data," because Mr. Minkler has no knowledge of the body of evidence and nuances of those investigations.  He is just a conduit for hearsay.  Also noteworthy is that Mr. Minkler selects potentially prejudicial child sexual exploitation and terrorism cases (that he was not involved in) to demonstrate the purported challenges law enforcement face due to end-to-end encryption but admitted at his deposition that he has never prosecuted any child sexual exploitation case or any terrorism case in which the use of end-to-end encryption prevented law enforcement from intercepting and deciphering communications.  Tr. at 278:12–22.  This testimony will only waste the jury's time and would at best confuse them.

*Finally*, Mr. Minkler's testimony should also be precluded under Rule 403 because, among other reasons, it is meant to support NSO's policy argument that NSO should not be *liable* in this case because its technology has a (theoretical) beneficial use to law enforcement.  Not only has the Court already found NSO liable, but the jury's role is not to make policy determinations but rather determine the appropriate damages in the case.  Permitting Mr. Minkler to offer his opinions before the jury, therefore, creates a substantial risk of unfair prejudice to Plaintiffs because jurors may mistakenly believe that they should not award, or reduce, damages owed to Plaintiffs based on policy considerations that are irrelevant to the remaining damages issues in this case.

## BACKGROUND

### I.    Mr. Minkler's Background

Mr. Minkler received a law degree from Indiana University School of Law in 1988, where he took classes on criminal law and criminal procedure that did not cover federal law on electronic surveillance.  Report, App. A; Tr. at 82:13–83:20.  Mr. Minkler has taken no other classes relevant to his purported expertise, to the extent the classes he did take were even relevant.  Tr. at 82:21–23, 83:2–4, 83:14–20, 258:22–259:4.  After graduating from law school, Mr. Minkler worked as an Assistant Prosecuting Attorney for Kent County, Michigan from 1989 to 1994.  Report ¶ 5.  From 1994 to 2020, Mr. Minkler then served in a variety of positions in the U.S. Attorney's Office for the Southern District of Indiana, including as the Acting, and confirmed, U.S. Attorney from 2014 to 2020.  Report ¶ 5.  Since 2020, Mr. Minkler has been a partner at Barnes & Thornburg, where he represents white-collar defendants and individuals or entities being investigated for white-collar crimes.  Report, App. A; Tr. at 14:15–15:6.  Mr. Minkler has not previously served as an expert witness.  Report ¶ 22; Tr. at 84:13–25.  Mr. Minkler has not authored any publications on any topic relevant to his purported expertise.  Report ¶ 3 n.1, Tr. at 83:21–84:8, 96:2–10.  Mr. Minkler has also not taught any courses on any topic.  Tr. at 70:24–71:1, 96:12–17.

### II.    Mr. Minkler's Report

NSO served Plaintiffs with Mr. Minkler's expert report on December 18, 2024.  In his report, Mr. Minkler offers opinions on four overarching topics:

1. "[T]he lawful interception and surveillance of communications by federal law enforcement officers;" Report ¶ 1; *see also id.* ¶¶ 35–40;

2. "[T]he unique investigatory challenges presented to state and federal law enforcement by end-to-end encryption and endpoint encryption;" *id.* ¶ 1; *see also id.* ¶¶ 41–49;

3. "Lawful Surveillance Used by Foreign Governments;" *id.* at 21; *see also id.* ¶¶ 50–54; and

4. "[T]he benefits of tools such as Pegasus in law enforcement and national security operations." *Id.* ¶ 1; *see also id.* ¶¶ 55–62.

Mr. Minkler largely relies on publicly available documents in support of his opinions.  *See* Report, App. B (Mr. Minkler's "list of information considered," most of which are published articles).  Mr. Minkler considered just seven documents produced in discovery in this case, in addition to the complaint.  *Id.* (listing eight bullets under "Documents Produced in this Litigation").  Mr. Minkler did not sign the stipulated protective order governing the handling of confidential documents in this case, nor did he speak to, or interview, anyone at NSO.  Tr. at 90:9–11, 120:2–6.  Mr. Minkler considered three "scholarly publications and treatises," one of which is a treatise on the laws governing wiretapping and electronic surveillance that was published in 1975.  Report, App. B; Tr. at 110:6–112:6.

### III.    Mr. Minkler's Deposition

Plaintiffs deposed Mr. Minkler on February 11, 2025.  Mr. Minkler relied on his experience as a federal prosecutor as the basis for his expert opinion.  *See, e.g.*, Tr. at 122:7–123:6 (stating that the basis for his proffered testimony is his "training and experience during the time period that [he] served as a federal prosecutor, supervisor, and as the U.S. Attorney.").[2]  He testified that he was not basing his expert opinion on his experience as a law firm partner at Barnes & Thornburg, a role he has had since 2020.  *Id.* at 16:2–6.

Mr. Minkler purported to know "more than a layperson" about the lawful interception and surveillance of communications by federal law enforcement officers.  *Id.* at 66:15–67:7.  He testified that his experience with lawful interception, specifically Title III warrants, came from cases that he "prosecuted or the prosecutions [he] supervised."[3]  *Id.* at 172:24–173:8.  Mr. Minkler testified that

---

[2] Mr. Minkler admitted to not being an expert in, *inter alia*: computer code, Tr. at 87:21–22; international intelligence, *id.* at 91:24–92:3; foreign policy, *id.* at 92:4–5; human rights, *id.* at 92:6–7; U.S. export control laws, *id.* at 92:8–16; Israeli export control laws, *id.* at 92:17–19; and international trade law, *id.* at 92:23–93:5.

[3] While not stated in his report, Mr. Minkler admitted in his deposition that his report describes cases in which he had no involvement.  *See infra* at 15–16.  Mr. Minkler also testified that quotations from witness testimony, which are uncited in his report, were based upon his memory, including from events many years prior and during times when he was not a federal prosecutor.  *See infra* at 14.  As Mr. Minkler admits, some of the language he quotes with attribution may have come from a conversation with a current AUSA in his former district.  *Infra* at 14–15; *see also* Tr. at 105:14–106:12 (testifying that he spoke with two former and one current AUSAs regarding his expert engagement in this case).

he has not been personally involved in an investigation that led to a Title III wiretap application since at least 2014, meaning he did not draft any Title III applications, seek approval of any applications by the U.S. Department of Justice as required, or present any applications to an Article III judge. *Id.* at 27:11–28:17.

Mr. Minkler testified that he has no experience with Pegasus. He testified to having "not used" Pegasus, *id.* at 89:11, that "[n]obody has talked to [him] about it," *id.* at 89:12, that he does not understand how it functions on a technical level, *id.* at 88:2–4, and that he is "not aware of the lawful use of Pegasus in the United States by federal law enforcement agencies." *Id.* at 159:20–22.

## LEGAL STANDARD

A witness who qualifies as an expert by knowledge, skill, experience, training, or education may give an opinion on scientific, technical, or otherwise specialized topics "if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 546 (N.D. Cal. 2012) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). "The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met." *In re Ripple Labs, Inc. Litig.*, 2024 WL 4583525, at *1 (N.D. Cal. Oct. 24, 2024). The district court plays a "gatekeeping" role to ensure that the proponent of an expert's testimony satisfies its burden of demonstrating that the testimony is admissible. *Sullivan v. U.S. Dep't of Navy*, 365 F.3d 827, 833 (9th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). Evidence must be both reliable and relevant in order to be admissible, and the expert must be qualified with respect to the opinions offered. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

## ARGUMENT

Mr. Minkler's testimony should be excluded under Rule 702 and *Daubert*, as well as Rule 403, for several, independent reasons.

## I. Mr. Minkler's Testimony Should Be Excluded Because His Opinions Are Irrelevant to the Issues Remaining to Be Decided in This Case

"The court must determine whether the [proffered expert] testimony is 'relevant to the task at hand.'" *Lin v. Solta Medical, Inc.*, 2024 WL 5199905, at *1 (N.D. Cal. Dec. 23, 2024) (quoting *Daubert*, 509 U.S. at 597). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance." (quotation omitted)).

Here, all of Mr. Minkler's opinions "have no relevance to the legal and factual matters to be resolved by the jury" and thus should be excluded. *Brice v. Haynes Invs., LLC*, 548 F. Supp. 3d 882, 903 (N.D. Cal. 2021). Mr. Minkler's opinions all relate to conduct by federal law enforcement, which is entirely unrelated to NSO's conduct, which Mr. Minkler himself acknowledges. *See, e.g.*, Tr. at 79:21–81:6.[4]  Moreover, because the Court has already found NSO liable on Plaintiffs' claims, "a trial will proceed only on the issue of damages." Dkt. No. 494 at 16. None of Mr. Minkler's proffered opinions have any relevance to the damages that NSO owes Plaintiffs. Mr. Minkler testified that he did no analysis on whether Plaintiffs suffered loss or incurred loss, or whether NSO profited. Tr. at 133:8–13. He also testified that did not do the "analysis" of whether NSO's activity generating profits violated U.S. law or WhatsApp's Terms of Service. *Id.* at 133:14–17.

NSO has previously argued that Mr. Minkler's testimony is relevant to punitive damages and injunctive relief, *see* Dkt. No. 501 at 11–12, but neither argument withstands scrutiny.

Regarding punitive damages, NSO argues that Mr. Minkler's testimony will help elucidate whether "NSO 'has been guilty of oppression, fraud or malice.'" *Id.* (citing *Hardeman v. Monsanto*

---

[4] In rendering his irrelevant opinions, Mr. Minkler also opines on the scope of Title III and FISA. *See, e.g.*, Report ¶¶ 37–38. These are irrelevant topics to any issue in this case, but they are also an improper subject of expert testimony, because the role of experts is to interpret and analyze factual evidence and not to testify about the law. *See, e.g.*, *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (stating that matters of law are "inappropriate subjects for expert testimony"). Setting aside that Title III and FISA are irrelevant to any fact issue the jury must determine, if anyone were to be instructing the jury on Title III and FISA, it should be the Court, not Mr. Minkler.

7

*Co.*, 997 F.3d 941, 971 (9th Cir. 2021)).  Mr. Minkler has admitted that his understanding of the facts in this case is very limited, just "based on reviewing the Complaint."  Tr. at 120:7–11; *see also id.* at 55:18–56:4 (testifying that he is only "somewhat familiar with the allegation[s] in the Complaint"); Report, App. B (listing seven "documents produced in this litigation" other than the Complaint).[5] Given Mr. Minkler's lack of knowledge regarding NSO's attacks of WhatsApp at issue in this case, his testimony is irrelevant to assessing whether NSO acted with oppression, fraud, or malice in connection with the attacks at issue.  "Punitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud or malice *in the conduct which gave rise to liability in the case*." *Medo v. Super. Ct.*, 251 Cal. Rptr. 924, 926 (Cal. Ct. App. 1988); *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–23 (2003) (noting that with punitive damages, "[a] defendant should be punished for the conduct that harmed the plaintiff").  Because Mr. Minkler's opinions are about speculative, hypothetical uses of Pegasus, they are unrelated to assessing whether NSO acted with oppression, fraud, or malice *in connection with the attacks at issue in this case*.

Regarding the relevance of Mr. Minkler's testimony to injunctive relief, NSO is also incorrect.  NSO argues that Mr. Minkler's testimony "as to the public benefits of Pegasus and similar technologies . . . bear[s] directly on the public harm that would result from an injunction interfering with the operation of Pegasus or with the ongoing law enforcement investigations in which it is currently being used."  Dkt. No. 501 at 15.  NSO's statement cannot be true.  Mr. Minkler testified that he has no knowledge of Pegasus ever being used by law enforcement in the United States.  *See, e.g.*, Tr. at 79:21–81:6 ("[T]here is no Title 3 or FISA warrant that I'm aware of that has been authorized for anyone in this country, government agency, to use or install Pegasus.").[6]  Indeed, Mr.

---

[5] Notably, Mr. Minkler's testimony is so far removed from the facts of this case that he did not read the Court's opinion granting Plaintiffs' motion for summary judgment, Tr. at 77:15–78:6, and did not sign the protective order necessary to access confidential documents produced by Plaintiffs in this case, *id.* at 120:2–6.

[6] In fact, in March 2023, President Biden signed an Executive Order banning "spyware that poses risks to national security."  Exec. Order No. 14093, 88 FR 18957 (Mar. 27, 2023).  In the accompanying press release, the White House referenced the U.S. Department of Commerce having, in November 2021, added four foreign commercial entities "to the Entity List for engaging in the proliferation and misuse of cyber intrusion tools contrary to the national security or foreign policy interests of the United States." *See* Fact Sheet: President Biden Signs Executive Order to Prohibit U.S. Government Use of Commercial Spyware that Poses Risks to National Security (Mar. 27, 2023),

Minkler testified that he did not review a list of NSO customers, *id.* at 116:10–119:20, so he does not even know who is using Pegasus. His report claims that "Pegasus has been used by several Western-style democracies," but he expressly states that his conclusion is "[b]ased on public reporting." Report ¶ 54; Tr. at 262:9–23. Any testimony by Mr. Minkler about the "public benefits" of Pegasus therefore is irrelevant, because that testimony lacks foundation as it is just based on a hypothetical situation, unrelated to the facts of this case. *Cf. Takeda Pharms. U.S.A., Inc. v. Par Pharm. Companies, Inc.,* 2015 WL 13877466, at *1 (D. Del. Nov. 24, 2015) ("Finally, even assuming that the propriety of the Takeda label is relevant, it is a matter for the FDA's determination. I am not inclined to resolve infringement on the basis of a hypothetical solution to a hypothetical FDA issue.").

In any case, Plaintiffs' entitlement to injunctive relief is a question for the Court, not the jury, and so even if Mr. Minkler's testimony were relevant to injunctive relief, Mr. Minkler's testimony is irrelevant to the jury. There is no scenario, therefore, in which Mr. Minkler should be permitted to testify before the jury in a damages trial. *See, e.g., Illuminia, Inc. v. BGI Genomics Co., Ltd*, 2021 WL 4979799, at *9 (N.D. Cal. Oct. 27, 2021) (granting motion in limine to "[e]xclude evidence or argument concerning alleged irreparable harm and evidence or argument that is solely related to issues relevant to the request for injunction"); *Cave Consulting Grp., LLC v. Optuminsight, Inc.*, No. 5:11-cv-469-EJD, Dkt. No. 294 at 3 (N.D. Cal. Feb. 23, 2015) (granting motion in limine and noting that "neither side should introduce evidence or argument that is solely directed to the issue of whether a permanent injunction should issue"); *see also infra* at 19–20 (explaining why the Court should exclude Mr. Minkler's testimony on Rule 403 grounds).

---

https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2023/03/27/fact-sheet-president-biden-signs-executive-order-to-prohibit-u-s-government-use-of-commercial-spyware-that-poses-risks-to-national-security/. One of those four referenced entities was NSO. *See* Press Release, U.S. Dep't of Com., Commerce Adds NSO Group and Other Foreign Companies to Entity List for Malicious Cyber Activities (Nov. 3, 2021), https://www.commerce.gov/news/press-releases/2021/11/commerce-adds-nso-group-and-other-foreign-companies-entity-list (describing adding NSO to the Entity List for "malicious cyber activities" and "for engaging in activities that are contrary to the national security or foreign policy interests of the United States").

## II.     Mr. Minkler Is Not Qualified to Opine on Whether U.S. or Foreign Law Enforcement Could Legally Use Pegasus

A purported expert must be "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[C]ourts routinely exclude expert testimony where the expert's opinion is not within the scope of his expertise." *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*, 2024 WL 1975456, at *1 (N.D. Cal. Mar. 31, 2024) (citing *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011)). Here, the Court should find that Mr. Minkler is unqualified to opine on whether U.S. or foreign law enforcement could legally use Pegasus.

Mr. Minkler purports to opine on the legal "parameters" in which "federal law enforcement could lawfully deploy Pegasus or similar software capabilities in the United States," Report ¶ 40, and he identifies those parameters as being Title III and FISA. Tr. at 49:18–50:8. Mr. Minkler, however, is not an expert on Title III or FISA, either as it currently exists or in a hypothetical future scenario in which U.S. law enforcement intends to use Pegasus. This is evidenced by his confusion about federal law. In his report, Mr. Minkler writes "Title III of the Electronic Communications Privacy Act, 18 U.S.C. 2510, *et seq.*, has specific requirements that must be met before a wiretap may be issued . . . ." Report ¶ 37. That statement is wrong. It is Title III of the *Omnibus Crime Control and Safe Streets Act of 1968* (the "Wiretap Act") that has specific requirements for when a wiretap may issue. *See* 18 U.S.C. §§ 2510–23. Title I (not Title III) of the Electronic Communications Privacy Act (the "ECPA") amended the Wiretap Act. *See id.* Title III of the ECPA is not about wiretaps at all, but rather is about pen registers and trap and trace devices. *See* 18 U.S.C. §§ 3121–3127. Mr. Minkler does not know this. At his deposition, when asked what Title III of the ECPA is, Mr. Minkler responded: "That's the law which governs the application and authorization of the interception of electronic communications." *Id.* at 51:9–13; *see also id.* at 51:20–52:5.[7] Mr. Minkler does understand that "there are no actual communications that are intercepted" by pen registers and trap and trace devices. *Id.* at 52:6–10.

Mr. Minkler's confusion on Title III is troubling given that Mr. Minkler is offering an opinion

---

[7] Notably, Mr. Minkler testified to having read his report "[a]t least twice" prior to his deposition, Tr. at 52:22–53:1, and yet he found no errors in his report, *id.* at 8:5–13.

on how the hypothetical use of Pegasus by law enforcement could be consistent with Title III. *See Takeda Pharms*, 2015 WL 13877466, at *1 (striking expert opinion where the purported expert "was characterized as an expert in FDA procedures, yet he relied at one point on the wrong regulations"). This point of confusion is just the tip of the iceberg.

At his deposition, Mr. Minkler testified that he does not have "any information or expertise about the legislative purpose of Title [III]." Tr. at 55:1–4. He admitted to not understanding why Congress passed Title III in 1968, *id.* at 54:8–13, and to being unaware that the statute was passed after studies showed that government agencies and private individuals had extensively wiretapped non-consenting parties without facing legal sanctions. *Id.* at 54:14–19. When asked if he could explain "why NSO's conduct in this case is not similar to those types of conduct that led to the passage of Title [III] which were unauthorized wiretaps and recordings," Mr. Minkler responded that "I would say I don't know enough about the facts and circumstances of NSO's conduct in this case to determine whether or not it was consistent with the abuses you described in the [19]60s." *Id.* at 55:18–56:14.

Mr. Minkler's insufficient qualifications to opine on FISA are also apparent from his deposition testimony. Mr. Minkler testified that *he has not read* the sections of FISA he cites in his report. *Id.* at 72:19–73:2. Mr. Minkler also testified that he has never applied for a FISA warrant or appeared before a FISA court. *Id.* at 73:21–74:1. Mr. Minkler's *sole basis* for knowledge as it relates to FISA is having supervised two national security investigations that involved FISA warrants between five and ten years ago. *Id.* at 74:2–15.

With respect to opinions about the purported "lawful surveillance" used by foreign governments," Report at 21, Mr. Minkler has no qualifications whatsoever. In his report, Mr. Minkler opines on purported "lawful surveillance" by foreign countries, based on information he read in preparing his report. *See id.* ¶¶ 50–54; Tr. at 159:24–160:6; 256:23–261:5. Despite this, at his deposition, Mr. Minkler agreed that he is not giving any legal opinion about the legality of law enforcement efforts in any foreign country, Tr. at 160:7–11, and "agree[d]" that he was "not qualified to testify about the lawfulness of some law enforcement technique in a foreign country," with an exception of having "limited knowledge" and "limited understanding" involving how Mexican law

enforcement agencies used information shared by the DEA in 2008.  *Id.* at 160:12–20.  More generally, Mr. Minkler agreed that he has never done any research about the legal frameworks of other countries beyond what he describes in his report and has never done any analytical study on the laws of other nations as they relate to intercepting communications.  *Id.* at 257:23–258:16; *id.* at 112:15–19 (testifying that, in preparing his report, he relied on a study published in 1975 to determine whether or not other countries have laws in place on electronic surveillance).

Accordingly, the Court should determine that Mr. Minkler is not qualified to opine on the legal parameters (current or future) for electronic surveillance by law enforcement (within or outside) the United States.

## III.    Mr. Minkler's Opinions Should Be Excluded Because They Are Not Reliable

Experts relying on their experience, like Mr. Minkler, must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinions, and how that experience is reliably applied to the facts."  Fed. R. Evid. 702 advisory committee's notes to 2000 amendment; *see United States v. Cerna*, 2010 WL 11627594, at *6 (N.D. Cal. Dec. 17, 2010) (citing *Hankey*, 203 F.3d at 1168).  The district court may then examine "whether the expert's experience supports the expert's conclusions," "whether the expert's reasoning is circular, speculative, or otherwise flawed," or "whether the expert's reasoning is adequately explained." *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2509 (2023). "Reliability becomes *more*, not less important" when expert opinion is based on experience rather than scientific knowledge.  *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (emphasis added).

Mr. Minkler's experience fails to provide a reliable basis for many of the opinions he offers.

*First*, Mr. Minkler's opinions on the hypothetical use of Pegasus by U.S. law enforcement are not "based on sufficient facts or data" because there are no facts or data indicating that U.S. law enforcement actually uses, or even intends to use, Pegasus.  Fed. R. Evid. 702(c); *see supra* at 1–2, 10.  Because Rule 702 requires an expert's opinion to be "based on sufficient facts or data," a court "may reject wholly speculative or unfounded testimony."  *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022).  The Court should preclude Mr. Minkler's wholly speculative and

1   unfounded opinions on the hypothetical use of Pegasus by law enforcement.  *See ThermoLife Int'l,*

2   *LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 614 (9th Cir. 2016) (excluding opinion on damages

3   based on estimated market share where there was no evidence in record regarding customer

4   preferences).

5          *Second*, Mr. Minkler's opinions on the lawfulness of electronic surveillance by foreign law

6   enforcement are unreliable and do not reflect any specialized expertise.  Mr. Minkler admits that he

7   does not have any specialized expertise on this topic, other than some irrelevant experience with

8   Mexican law enforcement using information shared by the DEA in 2008.  *See* Tr. at 160:7–20.

9   Without any specialized expertise in the area, Mr. Minkler is unqualified to testify on this topic.  *See*

10  *supra* at 10–12.  Because he has no expertise in this area, his opinions on the topic are also

11  unreliable.  *See Ripple Labs*, 2024 WL 4583525, at *2 (An expert opinion is "reliable if the

12  knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant]

13  discipline.'" (alteration in original) (quoting *Kumho Tire*, 526 U.S. at 149)).

14         The unreliability of Mr. Minkler's testimony on foreign law enforcement is readily apparent.

15  To fill the gap in his qualifications, Mr. Minkler relies on a "Comparative Study on Wiretapping and

16  Electronic Surveillance Laws in Major Foreign Countries" that was published in 1975.  *See* Report,

17  Appendix B; Tr. at 110:6–112:6.  Mr. Minkler admitted that he "reviewed [that] document to

18  determine whether countries had laws in place on electronic surveillance, or whether they did not."

19  *Id.* at 112:15–19.  As his testimony made clear, Mr. Minkler did not know whether or not foreign

20  countries have laws in place on electronic surveillance and decided to consult a study from over 50

21  years ago to find out.  The Court should exercise its gatekeeping function to preclude the jury from

22  hearing Mr. Minkler opine on topics about which he knows nothing and, as a result, will do "no more

23  than regurgitate information given to him by other sources," including a study published in 1975.

24  *Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15,

25  2016) ("When he is not simply speculating, [expert] often does no more than regurgitate information

26  given to him by other sources (including self-serving assertions by the defendants).").

27         *Third*, Mr. Minkler should be precluded from testifying about opinions premised on

28  undisclosed sources, because those opinions both violate Rule 26 and are unreliable.  Rule

26(a)(2)(B)(ii) requires the disclosure of all "facts or data considered by the witness" in forming expert opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii); *see SEC v. Reyes*, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007) ("When experts serve as testifying witnesses, the discovery rules generally require the materials reviewed or generated by them to be disclosed, regardless of whether the experts actually rely on those materials as a basis for their opinions."). Mr. Minkler's report repeatedly quotes witness testimony without any source. *See, e.g.*, Report ¶¶ 12–13, 19. When questioned about the sources, Mr. Minkler testified that the quotations were from his memory, even when he purportedly heard the quote years prior to preparing his report.[8] On redirect, NSO's lawyer elicited testimony that Mr. Minkler's unattributed quotations were of the people who told him about the testimony, as opposed to the witnesses who purportedly made the statement. Tr. at 284:14–285:7 ("The source was either the AUSA or agent that was familiar with the publicly available information at the trial. And they were, to the best of my recollection, relaying to me what was said or what the trial testimony was. So my use of quotes was the information they provided to me about what the witness had said."). Given that Mr. Minkler testified that he does not have a photographic memory or some other unique memory trait that would permit him to remember exact quotes from things he heard or read years ago, *id.* at 278:23–279:6, Mr. Minkler's testimony on this point is implausible.

Mr. Minkler's use of unidentified, unexplained sources violates Rule 26 and renders his opinions unreliable. "As a prerequisite to making the Rule 702 determination that an expert's

---

[8] *See, e.g.*, Tr. at 178:4–180:22 (testifying that he personally recalls the statements quoted in Paragraph 12 of his report from a sentencing he attended "more than ten years ago" and that he "reviewed the press release" about the case but failed to cite it in his report); *id.* at 184:4–186:2 (testifying that he "believe[s] . . . [he] review[ed] the press release" of a terrorism case to draft Paragraph 14 of his report, but he failed to cite it); *id.* at 191:11–193:13 (testifying that he reviewed the press release of the case discussed in Paragraph 16 of his report, but he failed to cite it); *id.* at 195:2–196:14 (testifying that he drafted Paragraph 17 of his report based on his "recollection of" the Clifford King case, but that did not rely on anything else, although he included exact dates from almost five years ago); *id.* at 198:20–202:17 (testifying that Paragraph 18 of his report is based on his "recollection of the case and trial testimony of the case as relayed to [him] by the assistants who were prosecuting the case" and that he did not rely on any documents despite quoting testimony, stating that he is "not sure that quote is verbatim, but that is the quote that I recall from the trial"); *id.* at 204:2–207:25 (testifying that he reviewed the press release and spoke with AUSA Bradley Blackington in order to draft Paragraph 19 of his report on the Jason Betts case but failed to cite either of these sources or verify the direct quotes of Betts' testimony that he includes—without citation—in his report).

methods are reliable, the court must assure that the methods are adequately explained." *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002). An expert who bases his opinion in personal experience must nonetheless "detail the knowledge, investigatory facts and evidence he was drawing from." *Id.* Not having done so, and having violated Rule 26's disclosure obligations, Mr. Minkler's opinions should be precluded. *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 949 (N.D. Cal. 2015) (finding that an expert is precluded from relying on phone conversations he had with witnesses because he failed to timely disclose the conversations under Rule 26 and the opposing party only learned about them during the witnesses' deposition).

*Fourth*, Mr. Minkler's opinions on law enforcement trends or specific law enforcement investigations for which he has no personal experience or specialized knowledge are not reliable because they are not "based on sufficient facts and data." For example, Mr. Minkler's expert report opines that end-to-end encryption presents limitations to law enforcement "in several cases, including cases of child exploitation" and "the realm of national security." *See* Report ¶¶ 45–48. In those paragraphs, Mr. Minkler describes investigations and prosecutions in which he was not involved. Tr. at 250:1–9 (testifying that he was not involved in the Ohio child sexual exploitation case); *id.* at 250:19–251:1 (testifying he did not work on the Garland, Texas terrorist investigation); *id.* at 251:20–252:12 (testifying he has no personal knowledge of *United States v. Rhodes*, the January 6th seditious conspiracy prosecution); *id.* at 255:3–13 (testifying that he is "not personally aware of what occurred in th[e] investigation" of Matthew Crooks' planned assassination of President Trump). Indeed, Mr. Minkler admitted at this deposition that he has never prosecuted any child sexual exploitation case or any terrorism case in which the use of end-to-end encryption prevented law enforcement from intercepting and deciphering communications. *Id.* at 278:12–22.

Mr. Minkler has no reliable basis to testify about the particular challenges faced by law enforcement in investigations in which he was not involved. Lacking his own knowledge, Mr. Minkler instead repeats (some) facts that he obtained from public sources. *See* Report ¶¶ 45–48; Tr. at 250:10–252:22. The Court should preclude as unreliable Mr. Minkler's testimony about specific prosecutions or law enforcement trends based on parroting back public sources. *See, e.g.*, *Williams v. Illinois*, 567 U.S. 50, 80 (2012) ("[T]rial courts can screen out experts who would act as mere

conduits for hearsay by strictly enforcing the requirement that experts display some genuine 'scientific, technical, or other specialized knowledge.'" (quoting Fed. R. Evid. 702(a)); *see also Caldwell v. City of S.F.*, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021) ("The Ninth Circuit has recognized that experts cannot insert non-existent facts into the record through their expert reports" and parties cannot "use experts as mere 'conduits' for otherwise inadmissible evidence.").[9]

*Fifth*, any opinion by Mr. Minkler related to NSO's customers or contracts with its customers is unreliable.  Mr. Minkler opines that he has "verified that NSO's [customer] contracts contain clauses related to human rights and lawful intelligence gathering," Report ¶ 34, yet admitted that his "verification" process included doing nothing other than reviewing *one* (redacted) customer contract that NSO produced in this litigation, Tr. at 119:6–20.  Mr. Minkler testified to doing nothing to corroborate that the rest of NSO's customer contracts contained similar language.  *Id.* at 119:18–20. While an expert may assume facts in their analysis, those facts must have some support in the record, but because NSO's contracts were not produced and Mr. Minkler did not review them, Mr. Minkler's opinions are unsupported speculation and should be properly disregarded by this Court.  *See Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019); *Caldwell*, 2021 WL 1391464, at *5. Further, even if all of NSO's customer contracts were disclosed, Mr. Minkler's review of a single customer contract is an insufficient basis to extrapolate a conclusion about what NSO "contractually

---

[9] Testimony on child sexual exploitation, national security, or other sensitive issues should also be precluded under Rule 403, given the irrelevance of these topics to any issue for the jury and the substantial risk of unfair prejudice and juror confusion. *See, e.g., Doe v. Bridges to Recovery, LLC*, 2021 WL 4690830, at *8 (C.D. Cal. May 19, 2021) (finding that it would be unduly prejudicial to allow an expert to opine on the issue of "sexual exploitation"); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 480 F. Supp. 3d 1000, 1010 (N.D. Cal. 2020) (excluding evidence relating to legality of plaintiff's abortion procedures because the "raging [public] debates" on the topic "are barely, if at all, relevant to the causes of action that will be tried to the jury," and "will confuse the jury about the issues it needs to decide, waste a significant amount of trial time, and be prejudicial"), *aff'd*, 2022 WL 13613963 (9th Cir. Oct. 21, 2022); *Giganews, Inc. v. Perfect 10, Inc.*, 2019 WL 1422723, at *5 (C.D. Cal. Mar. 13, 2019) (excluding evidence that child pornography was uploaded to plaintiff's servers because "[s]uch evidence is irrelevant, and any marginal relevance it may have is outweighed by the risk of undue prejudice"); *see also Waymo LLC v. Uber Techs., Inc.*, 2018 WL 646701, at *22 (N.D. Cal. Jan. 30, 2018) (holding that it is improper under Rule 403 for one party to "devote[] time and effort to describing salacious and inflammatory details . . . that have no discernible relevance to the claims in this case in an apparent bid to poison the judge, if not the jury, against [the other party]").

requires," Report ¶ 34, of all customers.  *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 530 (N.D. Cal. 2020) ("[I]t is not possible to draw meaningful conclusions from such a small sample size because the data is not statistically significant."), *aff'd*, 845 F. App'x 563 (9th Cir. 2021); *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010) ("[A] sample size of one is rarely, if ever, sufficient.").

Mr. Minkler also admitted to not having reviewed a "list" of NSO's customers.  *Id.* at 116:10–12, 118:2–5.  This fact is unsurprising given that NSO has refused to produce such a list in discovery, arguing "[n]either Plaintiffs' claims nor NSO's defenses rise or fall on those identities" of NSO's customers, Dkt. No. 249-2 at 13.  It is unfair for NSO to resist production of its customer list on the basis that the information is irrelevant, while now seeking to inject expert testimony on this topic into the damages trial.  In any case, the absence of record evidence concerning the identity of NSO's customers should preclude Mr. Minkler from offering any opinions on this topic.  *See Elosu*, 26 F.4th at 1025; *ThermoLife*, 648 F. App'x at 614; *In re Leap Wireless Int'l, Inc.*, 301 B.R. 80, 85 (Bankr. S.D. Cal. 2003).

*Sixth,* Mr. Minkler's opinion on NSO's state of mind, including with respect to developing Pegasus, should be excluded because it is unreliable, does not reflect any specialized expertise, and improperly invades the province of the jury.  *See Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 294 (N.D. Cal. Nov. 15, 2017) ("Courts routinely exclude expert testimony as to intent, motive, or state of mind as issues better left to a jury."); *Stanley v. Novartis Pharms. Corp.*, 2014 WL 12573393, at *6 (C.D. Cal. May 6, 2014) ("[T]he opinions of [expert] witnesses on the intent, motives, or states of mind of corporations . . . have no basis in any relevant body of knowledge or expertise") (quotation omitted) (alteration in original)); *Solta Med., Inc.*, 2024 WL 5199905, at *12 (excluding expert testimony about what a corporate defendant knew).

Mr. Minkler's response at his deposition to a question about whether he did any analysis of NSO's state of mind in developing, using, or selling Pegasus is telling:

> *I have reviewed materials provided by NSO. The documents speak for themselves.* My—from reviewing those reports, it appears to me that their state of mind, again, from reviewing the documents I reviewed,

1
2
3

> was to provide a tool for law enforcement to properly, in compliance with the laws of that country, intercept end-to-end encrypted communications. *That's the extent of my analysis*.

*Id.* at 157:5–17 (emphasis added). Mr. Minkler's opinion, as he appears to recognize, is not the result of any independent analysis. Rather, it is merely an impermissible conduit of hearsay because—in his own words—"[t]he documents speak for themselves." *Id.* Experts may not simply regurgitate documents. *See Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022) ("An expert . . . may not restate or summarize record evidence and then state a conclusion without applying a methodology that is reliable and which evinces his/her expertise."); *Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 7025089, at *5 (N.D. Cal. Nov. 30, 2020) ("[E]xpert testimony that 'merely summarizes the record evidence and gratuitously interprets it' is improper." (quoting *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *13 n. 8 (N.D. Cal. July 11, 2014))); *Technichem*, 2016 WL 1029463, at *1 (excluding expert opinion that "often does no more than regurgitate information given to him by other sources").

    *Finally*, Mr. Minkler should be precluded from offering any opinion weighing the benefits to the public in law enforcement's hypothetical use of Pegasus versus the risks of such use, because such opinion is speculative and unreliable. *See Venture Corp. v. Wherify Wireless, Inc.*, 2005 WL 5960919, at *1 (C.D. Cal. Sept. 23, 2005) ("The Court has the authority and responsibility to exclude expert testimony that is speculative or unreliable."). As indicated above, Mr. Minkler has no basis to opine on U.S. law enforcement's hypothetical use of Pegasus or foreign law enforcements' use of Pegasus. *See supra* at 10–12. He thus has no basis to speculate on the benefits or risks of such use. *See Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1102–03 (C.D. Cal. Nov. 8, 2017) (excluding an expert from providing his opinion where his expert report failed to explain his methodology and was based simply on the expert's "because I said so" opinion, without facts, data, or reliable principles and methods to support the conclusion), *aff'd*, 786 Fed. App'x 84 (9th Cir. 2019).

**IV.     Mr. Minkler's Testimony Should Be Excluded under Rule 403 Because of the Substantial Risk of Unfair Prejudice, Confusing the Jury, and Wasting Time**

Mr. Minkler's testimony should be precluded under Rule 403 because of the substantial risk of unfair prejudice, confusing the jury, and wasting time.  Because Mr. Minkler's opinions are all irrelevant to any fact issue for the jury to decide, his offered testimony seems, at its core, to go to NSO's policy argument that it should not be liable in this case because its technology has a (theoretical) beneficial use to law enforcement.  But this policy argument should not reach the jury. The jury's role is to decide issues of fact and not make policy judgments.  *See United States v. Harris*, 863 F.2d 887 (9th Cir. 1988) ("The jury's obligation is to apply the law to the facts and the defendant is not entitled to a 'nullification instruction' which would instruct the jury to ignore the law and acquit on the basis of sympathy or community conscience." (quoting *United States v. Simpson*, 460 F.2d 515, 519–20 (9th Cir. 1972)); *see also Shannon v. United States*, 512 U.S. 573, 576 (1994) (noting the "well-established principle that a jury is to base its verdict on the evidence before it, without regard to the possible consequences of the verdict").

The Court has already rejected NSO's purported law-enforcement defense when it found NSO liable on Plaintiffs' claims, and NSO should be precluded from making the same irrelevant policy argument before the jury in the guise of expert testimony.  *See, e.g., Retamosa v. Target Corp.*, 2021 WL 4499236, at *1 (C.D. Cal. May 4, 2021) (granting motion in limine to preclude evidence or argument that "a verdict for [party] will somehow make the community a safer and better place to live and work" because such evidence was "irrelevant to actual damages alleged . . . and ha[d] a substantial likelihood of unfairly prejudicing the jury [by] encourag[ing] the jury to render a verdict based on personal interest and bias rather than on the evidence"); *Serna v. Costco Wholesale Corp.*, 2024 WL 4720884, at *3 (C.D. Cal. Sept. 16, 2024) (granting motion in limine to preclude "arguments meant to appeal to a jury's concern for community safety," noting further that neither party should "present theories of the case or arguments that would encourage the jury to make a decision on an improper basis").  "Jurors may well assume that an expert, unlike an ordinary mortal, will offer an authoritative view on the issues addressed; if what an expert has to say is instead tangential to the real issues, the jury may follow the 'expert' down the garden path and thus focus

1    unduly on the expert's issues to the detriment of issues that are in fact controlling." *Rogers v.*

2    *Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991).

3                                            **<u>CONCLUSION</u>**

4            For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to

5    exclude the expert opinions of Mr. Minkler.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  March 6, 2025                    Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  /s/ Gina Cora
      Greg D. Andres
      Antonio J. Perez-Marques
      Gina Cora
      Craig T. Cagney
      Luca Marzorati
        (admitted *pro hac vice*)
      DAVIS POLK & WARDWELL LLP
      450 Lexington Avenue
      New York, New York 10017
      Telephone: (212) 450-4000
      Facsimile: (212) 701-5800
      Email: greg.andres@davispolk.com
           antonio.perez@davispolk.com
           gina.cora@davispolk.com
           craig.cagney@davispolk.com
           luca.marzorati@davispolk.com

      Micah G. Block (SBN 270712)
      DAVIS POLK & WARDWELL LLP
      900 Middlefield Road, Suite 200
      Redwood City, California 94063
      Telephone: (650) 752-2000
      Facsimile:  (650) 752-2111
      Email: micah.block@davispolk.com

      *Attorneys for Plaintiffs*
      *WhatsApp LLC and Meta Platforms, Inc.*