Greg D. Andres
Antonio J. Perez-Marques
Craig T. Cagney
Gina Cora
Luca Marzorati
  (admitted pro hac vice)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
          antonio.perez@davispolk.com
          craig.cagney@davispolk.com
          gina.cora@davispolk.com
          luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

Attorneys for Plaintiffs
WhatsApp LLC and Meta Platforms, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC. | Case No. 4:19-cv-07123-PJH |
| Plaintiffs, | **PLAINTIFFS' MOTIONS IN LIMINE** |
| v. | Pretrial Conference Date: April 10, 2025<br>Time:   2 p.m.<br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton |
| NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, | Trial Date: April 28, 2025 |
| Defendants. | |

# TABLE OF CONTENTS

PAGE

1. NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING THE ALLEGED IDENTITIES OF ITS CUSTOMERS OR PROSPECTIVE CUSTOMERS, INCLUDING GOVERNMENTS OR LAW ENFORCEMENT, MILITARY, OR INTELLIGENCE AGENCIES .............................................1

2. NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO THAT PEGASUS IS USED OR NEEDED TO INVESTIGATE CRIME, INCLUDING CHILD SEX EXPLOITATION AND TERRORISM ...................................................4

3. NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING ITS CUSTOMER DUE DILIGENCE ...........................................6

4. NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING ITS LACK OF CONTROL OVER ITS CUSTOMERS .............................8

5. NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING THE ALLEGED INSUFFICIENCY OF WHATSAPP'S SECURITY MEASURES .................9

6. NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING THE PURPORTED USE OF WHATSAPP BY BAD ACTORS, INCLUDING CHARACTERIZING THE WHATSAPP USERS TARGETED IN NSO'S ATTACKS AS PURPORTED BAD ACTORS ..................................10

7. NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO PURPORTEDLY RELATING TO PLAINTIFFS' REPUTATION .............................13

8. NO EXPERT TESTIMONY FROM COL. TY SHEPARD AND JOSHUA J. MINKLER, AND NO TESTIMONY FROM ANY OTHER NSO WITNESS OFFERING SIMILAR POLICY OPINIONS ...................................14

CONCLUSION .........................................................21

# **TABLE OF AUTHORITIES**

P<small>AGE(S)</small>

C<small>ASES</small>

*Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*,
  2013 WL 12122803 (C.D. Cal. June 21, 2013) ........................................................ 15

*In re Bard IVC Filters Prods. Liab. Litig.*,
  2018 WL 934795 (D. Ariz. Feb. 15, 2018) ............................................................. 5

*Bob Barker Co. v. Ferguson Safety Prods., Inc.*,
  2007 WL 4554012 (N.D. Cal. Dec. 4, 2007) ........................................................... 9

*Brice v. Haynes Invs., LLC*,
  548 F. Supp. 3d 882 (N.D. Cal. 2021) ................................................................... 18

*Buckley v. Evans*,
  2007 WL 2900173 (E.D. Cal. Sept. 28, 2007) ....................................................... 4

*Burke v. City of Santa Monica*,
  2011 WL 13213593 (C.D. Cal. Jan. 10, 2011) ....................................................... 14

*Creative Computing v. Getloaded.com LLC*,
  386 F.3d 930 (9th Cir. 2004) ................................................................................. 9

*Doe v. Bridges to Recovery, LLC*,
  2021 WL 4690830 (C.D. Cal. May 19, 2021) ......................................................... 6

*Dupard v. Kringle*,
  76 F.3d 385 (9th Cir. 1996) ............................................................................. 13, 14

*Emery v. Harris*,
  2014 WL 710963 (E.D. Cal. Feb. 21, 2014) ........................................................... 8

*Forbes v. Cnty. of Orange*,
  2013 WL 12165672 (C.D. Cal. Aug. 4, 2013) ....................................................... 13

*Gardner v. Fed. Express Corp.*,
  2015 WL 5821428 (N.D. Cal. Oct. 6, 2015) ......................................................... 10

*Giganews, Inc. v. Perfect 10, Inc.*,
  2019 WL 1422723 (C.D. Cal. Mar. 13, 2019) .................................................... 6, 12

*In re Leap Wireless Int'l, Inc.*,
  301 B.R. 80 (Bankr. S.D. Cal. 2003) .................................................................... 17

*Livingston v. ABB, Inc.*,
  100 F. Supp. 3d 894 (C.D. Cal. 2015) ................................................................. 2, 7

*Magadia v. Wal-Mart Assocs., Inc.*,
  2018 WL 6003376 (N.D. Cal. Nov. 15, 2018) ......................................................... 9

*Medo v. Superior Ct.*,
251 Cal. Rptr. 924 (Ct. App. 1988) ................................................................ 5, 19

*Messick v. Patrol Helicopters Inc.*,
360 F. App'x 786 (9th Cir. 2009) .................................................................. 8, 11

*Mims v. Fed. Express Corp.*,
2015 WL 12711651 (C.D. Cal. Jan. 15, 2015) ................................................... 5

*N.W. v. City of Long Beach*,
2016 WL 9021966 (C.D. Cal. June 7, 2016) ....................................................... 1

*NeSmith v. Cnty. of San Diego*,
2022 WL 272011 (S.D. Cal. Jan. 28, 2022) ..................................................... 11

*Old Chief v. United States*,
519 U.S. 172 (1997) ........................................................................................ 13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
480 F. Supp. 3d 1000 (N.D. Cal. 2020),
*aff'd*, 2022 WL 13613963 (9th Cir. Oct. 21, 2022) ..................................... 6, 12

*Retamosa v. Target Corp.*,
2021 WL 4499236 (C.D. Cal. May 4, 2021) .............................................. 5, 6, 20

*Rogers v. Raymark Indus., Inc.*,
922 F.2d 1426 (9th Cir. 1991) ....................................................................... 17

*Seals v. Mitchell*,
2011 WL 1399245 (N.D. Cal. Apr. 13, 2011) .................................................. 13

*Serna v. Costco Wholesale Corp.*,
2024 WL 4720884 (C.D. Cal. Sept. 16, 2024) ............................................. 5, 20

*Shannon v. United States*,
512 U.S. 573 (1994) .................................................................................. 19, 20

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ................................................................................... 5, 19

*United States v. Harris*,
863 F.2d 887 (9th Cir. 1988) ......................................................................... 19

*United States v. Hitt*,
981 F.2d 422 (9th Cir. 1992) ......................................................................... 12

*United States v. Simpson*,
460 F.2d 515 (9th Cir. 1972) ......................................................................... 19

*United States v. Ward*,
747 F.3d 1184 (9th Cir. 2014) ....................................................................... 11

*Waymo LLC v. Uber Techs., Inc.*,
2018 WL 646701 (N.D. Cal. Jan. 30, 2018) ................................................. 6, 12

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
   2010 WL 11505684 (C.D. Cal. Jan. 25, 2010) ........................................................ 1

*Zucchella v. Olympusat, Inc.*,
   2023 WL 9379193 (C.D. Cal. Dec. 6, 2023) .......................................................... 4

<u>STATUTES & RULES</u>

18 U.S.C. § 1030 ............................................................................................................ 3, 9

Cal. Penal Code § 502 ............................................................................................ 5, 11, 15

Fed. R. Evid. 401 ................................................................................................... *passim*

Fed. R. Evid. 402 ................................................................................................... *passim*

Fed. R. Evid. 403 ................................................................................................... *passim*

Fed. R. Evid. 404 ......................................................................................................... 13

Plaintiffs WhatsApp LLC and Meta Platforms, Inc. respectfully request that the Court issue an order precluding Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO"), their counsel, and witnesses from mentioning, referring to, or offering during trial any evidence, testimony, or argument relating to any of the topics described in Plaintiffs' Motions *in Limine* set forth below.

## 1. NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING THE ALLEGED IDENTITIES OF ITS CUSTOMERS OR PROSPECTIVE CUSTOMERS, INCLUDING GOVERNMENTS OR LAW ENFORCEMENT, MILITARY, OR INTELLIGENCE AGENCIES

NSO should be precluded from offering evidence, testimony, or argument about the alleged identities or affiliations of its customers or prospective customers, including governments or law enforcement, military, or intelligence agencies. *See, e.g.*, Dkt. No. 396-2 at 3, 19; Dkt. No 419-02 at 1; Dkt No. 469 at 1. As an initial matter, NSO should not be permitted to do so because it has long denied Plaintiffs discovery regarding its customers. *See N.W. v. City of Long Beach*, 2016 WL 9021966, at *4 (C.D. Cal. June 7, 2016) (granting motion *in limine* to "preclude[] Defendants from introducing evidence at trial that was not produced in response to Plaintiff's discovery requests"); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684, at *20 (C.D. Cal. Jan. 25, 2010) (precluding plaintiff from "arguing or presenting evidence at trial" that plaintiff failed to provide in its discovery responses). Further, evidence and testimony of this type is inadmissible because it is irrelevant to the issue of damages, and any probative value it may have would be substantially outweighed by the risk of unfair prejudice, jury confusion, and wasted time. *See* Fed. R. Evid. 401, 402, 403.

During discovery, NSO refused to produce information about the identities of its customers and successfully argued that its customers' identities were "not sufficiently important" to warrant discovery, Dkt. No. 249-2 at 12, and that "[n]either Plaintiffs' claims nor NSO's defenses rise or fall on those identities." Dkt. No. 249-2 at 13; *see* Dkt. No. 292 at 5; Ex. 1 (Defs.' Resps. & Objs. to Pls.' Fifth Reqs. for Produc.) at 24–25. Similarly, NSO witnesses have consistently refused to testify regarding the names or purported agency affiliations of Pegasus licensees. *See, e.g.*, Ex. 2

(Shohat Dep. Tr.) at 20:18–21 (Q. "[W]ill you just make clear that you are instructing the witness not to identify customers, if that's what you are doing? MR. AKROTIRIANAKIS: By name or agency, yes."); Ex. 3 (Eshkar Dep. Tr.) at 156:3–8 ("Q. Are you able to name customers who handle the installation and infrastructure themselves? A. Yes. Q. Will you please identify them for the record? MR. AKROTIRIANAKIS: Okay, that I will instruct him not to answer."); Ex. 4 (Gil Dep. Tr.) at 131:25–132:3 (Q. "Shall we use a real customer, would that be easier?  A. No. We are not allowed.  MR. CRAIG: She can't say that.").  The lone exception is NSO's selective identification of the FBI as a purported Pegasus licensee and Facebook as an alleged prospective licensee.  *See* Dkt. No. 468 at 2; Dkt. No. 45-11 ¶ 10.

NSO should not now be able to reverse course and attempt to use this type of information at trial.  It would unfairly prejudice Plaintiffs for NSO to refuse discovery regarding the identities of its customers, only to turn around and introduce unsubstantiated evidence regarding the same at trial, particularly when such evidence is irrelevant.

As NSO itself argued, the purported identities of NSO's customers or prospective customers have no bearing on any claim or defense in this case.  *See* Dkt. No. 249-2 at 13.  Plaintiffs agree.  Whether Pegasus was used by foreign governments, militaries, or law enforcement agencies,[1] licensed by the FBI, or sought to be licensed by Facebook does not make Plaintiffs' costs in responding to NSO's attacks any "more or less probable."  Fed. R. Evid. 401.  Nor is such evidence relevant to punitive damages.  Punitive damages "are not . . . recoverable in the abstract," but "must be tied to oppression, fraud or malice *in the conduct which gave rise to liability in the case*." *Livingston v. ABB, Inc.*, 100 F. Supp. 3d 894, 904 (C.D. Cal. 2015) (citation omitted & emphasis in original).  NSO's hacking of Plaintiffs' servers was not authorized by any law enforcement agency, let alone the FBI, and therefore is irrelevant to the conduct that "gave rise to liability in the case." At bottom, it is NSO, not its customers, that was found liable for violating federal and state anti-

---

[1] NSO's expert Joshua J. Minkler admits that there is no indication that U.S. law enforcement has ever deployed Pegasus.  *See, e.g.*, Ex. 6 (Minker Dep. Tr.) at 159:20-22 (testifying in response to a question about whether the attacks at issue in this case involved the lawful use of Pegasus in the United States by law enforcement that he is "not aware of the lawful use of Pegasus by federal law enforcement agencies" at all).

hacking law, and breaching the WhatsApp Terms of Service (the "Terms"). And it is NSO's conduct, not that of its customers, that the jury will evaluate in deciding whether to award Plaintiffs damages.

Additionally, the identities of NSO's customers should be excluded under Rule 403 because the risk of jury confusion and unfair prejudice substantially outweighs any probative value. NSO has provided no factual basis to allege the identities of any of its customers, including with respect to the FBI. NSO has not produced an agreement with the FBI, or evidence that the FBI used Pegasus.[2] In fact, NSO's assertion that the FBI used Pegasus is belied by the FBI's own statements that it did not. Dkt. No. 466 at 25 n.16.

Similarly, NSO's sole "support" for its allegation that Facebook attempted to license Pegasus is a self-serving declaration from NSO's founder and former CEO Shalev Hulio filed in support of NSO's motion to dismiss in which Mr. Hulio claims that he was approached by two unnamed "Facebook representatives" who allegedly sought to "use certain capabilities of Pegasus" in October 2017. Dkt. No. 45-11 ¶ 10. Tellingly, NSO refused to produce any discovery on this assertion.

Offering irrelevant and unsubstantiated evidence regarding the purported identities of NSO's customers or prospective customers would serve only to mislead the jury into thinking that the actions of NSO's customers—rather than NSO—are at issue in this case. A jury could decline to award Plaintiffs damages—not based on the jury's own judgment and consideration of the evidence—but because a presumptively trustworthy government agency purportedly licensed Pegasus, or Facebook allegedly attempted to license the same, or because a foreign law enforcement agency allegedly used it for the public good. Moreover, such evidence could give the jury the false impression that there is some exception under the law for conduct authorized by foreign law enforcement agencies, which there is not. *Cf.* 18 U.S.C. § 1030(f).

---

[2] Instead, NSO has relied solely on a letter certifying that a Delaware company was authorized to purchase Pegasus on the FBI's behalf and a certificate submitted to the Israeli government indicating how the FBI intended to use Pegasus. *See* Dkt. No. 466 at 24.

The introduction of such evidence would likewise waste time and result in needless delay, both because of the time it would take for NSO to present its irrelevant evidence and because Plaintiffs would be compelled to rebut that unsubstantiated evidence.  In essence, such evidence would do little more than "create unnecessary sideshows and mini-trials of little, if any, relevance." *Zucchella v. Olympusat, Inc.*, 2023 WL 9379193, at *4 (C.D. Cal. Dec. 6, 2023).  This is exactly the danger that Rule 403 is intended to protect against, and the Court should exclude any reference to such evidence on this basis alone.  *See Buckley v. Evans*, 2007 WL 2900173, at *4 (E.D. Cal. Sept. 28, 2007) ("In any trial there is a risk that . . . the sideshow will swallow up the circus.  The trial court's weapon[]to prevent this [is] the Federal Rule of Evidence 403 . . . ." (internal quotation marks and citations omitted)).

## 2.  NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO THAT PEGASUS IS USED OR NEEDED TO INVESTIGATE CRIME, INCLUDING CHILD SEX EXPLOITATION AND TERRORISM

NSO should be precluded from offering evidence, testimony, or argument that Pegasus is used, can be used, or is needed to investigate crime, including child sex exploitation and terrorism, including because of end-to-end encryption.  NSO has asserted that Pegasus "is needed for [its customers] to fight crime and terror," Ex. 2 (Shohat Dep. Tr.) at 71:3–7, despite claiming that it is "not able to see the identity of [Pegasus] targets," *id.* at 231:5–13, and that Pegasus cannot be used on "any device that is in the United States or has a U.S. phone number."  Dkt. No. 468 at 4.  NSO's experts have similarly opined on the hypothetical benefit of Pegasus to U.S. law enforcement, *see, e.g.*, Ex. 5 (Minkler Rep.) ¶¶ 40, 54, 60–62, while admitting that they have no knowledge of U.S. law enforcement ever having used Pegasus.  *See, e.g.*, Ex. 6 (Minkler Dep. Tr.) at 159:20–22.  For example, NSO experts claim law enforcement needs tools like Pegasus because of end-to-end encryption used in "cases of child exploitation" and "the realm of national security," Ex. 5 (Minkler Rep.) ¶¶ 45–48, yet base that opinion on investigations and prosecutions in which they were not involved.  *See, e.g.*, Ex. 6 (Minkler Dep. Tr.) at 250:1–252:12.  Setting aside the lack of foundation, evidence and argument of this type is irrelevant, prejudicial, and presents a substantial risk of jury confusion in a damages-only trial.

Argument and testimony regarding the hypothetical benefit of Pegasus to law enforcement is irrelevant to the sole issue of damages at trial.  Such evidence does not make the time and money Plaintiffs spent responding to NSO's attacks any more or less probable.  *See* Fed. R. Evid. 401, 402.

Similarly, such an argument is not relevant to whether NSO acted with "oppression, fraud, or malice" for the purpose of punitive damages.  Cal. Penal Code § 502(e)(4).  Punitive damages punish a defendant for "the conduct that *harmed the plaintiff*, not for being an unsavory . . . business."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) (emphasis added); *see also Mims v. Fed. Express Corp.*, 2015 WL 12711651, at *9 (C.D. Cal. Jan. 15, 2015) ("Punitive damages are a means to punish reprehensible conduct, not a reprehensible defendant.").  Thus, "[c]ountering Plaintiffs' punitive damages arguments does not mean . . . that Defendants can present irrelevant evidence or try this case on the basis of corporate character."  *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2 (D. Ariz. Feb. 15, 2018).  Rather, punitive damages "must be tied to oppression, fraud or malice *in the conduct which gave rise to liability in the case*."  *Medo v. Superior Ct.*, 251 Cal. Rptr. 924, 926 (Ct. App. 1988) (emphasis in original).  Because there is no evidence to support an argument that NSO's hacking of WhatsApp's servers and the devices of WhatsApp's users had a connection to law enforcement activities, the speculative benefit of Pegasus to U.S. law enforcement is irrelevant to whether NSO acted with oppression, fraud, or malice with respect to "the conduct which gave rise to [NSO's] liability."  *Medo*, 251 Cal. Rptr. at 926.

Even if this testimony and argument had marginal probative value (it does not), it would be substantially outweighed by the risk of unfair prejudice and jury confusion, and the Court should exclude it under Rule 403.  Introducing policy arguments regarding the purported social utility of Pegasus would improperly "appeal to a jury's concern for community safety" and thereby "encourage the jury to make a decision on an improper basis."  *Serna v. Costco Wholesale Corp.*, 2024 WL 4720884, at *3 (C.D. Cal. Sept. 16, 2024); *see also Retamosa v. Target Corp.*, 2021 WL 4499236, at *1 (C.D. Cal. May 4, 2021) (granting motion *in limine* to preclude evidence or argument that "a verdict for [party] will somehow make the community a safer and better place to

5

live and work" because such evidence was "irrelevant to actual damages alleged . . . and ha[d] a substantial likelihood of unfairly prejudicing the jury [by] encourag[ing] the jury to render a verdict based on personal interest and bias rather than on the evidence").

Similarly, argument and testimony regarding child sexual exploitation, terrorism, or other sensitive issues should be precluded under Rule 403.  Even if NSO provided a factual basis to allege Pegasus was used to combat such crimes—which it has not—such evidence is irrelevant to any issue for the jury and presents a substantial risk of unfair prejudice and juror confusion.  *See, e.g.*, *Doe v. Bridges to Recovery, LLC*, 2021 WL 4690830, at *8 (C.D. Cal. May 19, 2021) (finding that it would be unduly prejudicial to allow an expert to opine on the issue of "sexual exploitation"); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 480 F. Supp. 3d 1000, 1010 (N.D. Cal. 2020) (excluding evidence relating to legality of plaintiff's abortion procedures because the "raging [public] debates" on the topic "are barely, if at all, relevant to the causes of action that will be tried to the jury," and "will confuse the jury about the issues it needs to decide, waste a significant amount of trial time, and be prejudicial"), *aff'd sub nom*, *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 2022 WL 13613963 (9th Cir. Oct. 21, 2022); *Giganews, Inc. v. Perfect 10, Inc.*, 2019 WL 1422723, at *5 (C.D. Cal. Mar. 13, 2019) (excluding evidence that child pornography was uploaded to plaintiff's servers because "[s]uch evidence is irrelevant, and any marginal relevance it may have is outweighed by the risk of undue prejudice"); *see also Waymo LLC v. Uber Techs., Inc.*, 2018 WL 646701, at *22 (N.D. Cal. Jan. 30, 2018) (holding that it is improper under Rule 403 for one party to "devote[] time and effort to describing salacious and inflammatory details . . . that have no discernible relevance to the claims in this case in an apparent bid to poison the judge, if not the jury, against [the other party]").

### 3.  NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING ITS CUSTOMER DUE DILIGENCE

NSO should be precluded from offering evidence, testimony, or argument regarding its purported efforts to screen potential customers and regulate its existing customers' use of its spyware.  Such speculative evidence is irrelevant to the issue of damages, unfairly prejudicial, and likely to cause jury confusion.

NSO has claimed that it licenses Pegasus only to select government customers, and it terminates or suspends existing customers' access upon learning of misuse.  *See* Ex. 2 (Shohat Dep. Tr.) at 26:23–28:6; Dkt. No. 469 at 3; Ex. 7 (2021 Transparency Report) at 8–9.  Such evidence regarding NSO's due diligence practices is irrelevant to damages.  It is irrelevant to the time and money Plaintiffs spent responding to NSO's attack.  Plaintiffs anticipate that NSO will seek to introduce such evidence on the basis that it purportedly bears on NSO's culpability and therefore punitive damages.  It does not.  That NSO alleges it screened potential customers and regulated its existing customers' use of its spyware does not make it more or less probable that NSO itself acted with "oppression, fraud or malice" to the conduct at issue in this case, particularly when NSO has provided no evidence of its purported due diligence practices being applied in the conduct at issue in this case.  *See Livingston*, 100 F. Supp. 3d at 904 ("Punitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud or malice *in the conduct which gave rise to liability in the case.*" (citation omitted & emphasis in original)).

In fact, NSO has denied Plaintiffs any opportunity to evaluate its purported due diligence practices.  As explained above, NSO has not provided discovery regarding the identities of its customers or their use of Pegasus.  *See* Mot. *in Limine* No. 1.  Nor has NSO permitted Plaintiffs to test the validity of its claims regarding its policies against customer misuse.  NSO refused to produce the details of investigations into customers who misused Pegasus, including whether or not those customers' access to Pegasus was suspended or terminated, and the reasons why NSO reached such decisions.  Indeed, despite the fact that NSO witnesses have admitted that Pegasus was abused by at least 10 customers so severely that NSO disconnected their access, Ex. 2 (Shohat Dep. Tr.) at 181:6–15, NSO has declined to provide information on any of these investigations, with the exception of one that was confirmed to exist through public reporting.[3]  *Id.* at 29:24–32:14 (admitting Pegasus was used to target Dubai's Princess Haya).  Plaintiffs likewise have been denied an opportunity to receive discovery as to the targets and thus cannot evaluate the extent of

---

[3] *See* Haroon Siddique, *Dubai ruler hacked ex-wife using NSO Pegasus spyware, high court judge finds*, THE GUARDIAN (Oct. 6, 2021), https://www.theguardian.com/world/2021/oct/06/dubai-ruler-hacked-ex-wife-using-nso-pegasus-spyware-high-court-judge-finds-sheikh-mohammed-princess-haya.

Pegasus's misuse (which has been widely reported[4]) or test whether and to what extent NSO took any responsive actions in such cases.

Even if evidence about NSO's purported due diligence practices had marginal probative value, it would be substantially outweighed by the risk of unfair prejudice and jury confusion. Speculative evidence on this topic would likely confuse the jury into believing that due diligence practices untethered to the conduct at issue in this case bear on the amount of damages to which Plaintiffs are entitled.  *See Messick v. Patrol Helicopters Inc.*, 360 F. App'x 786, 789 (9th Cir. 2009) (affirming exclusion of evidence as "speculative, confus[ing], and a waste of time"); *Emery v. Harris*, 2014 WL 710963, at *2 (E.D. Cal. Feb. 21, 2014) (excluding evidence because it was "speculative and lack[ed] foundation," unrelated to "the actions taken in [the] case," and likely to cause "jury confusion as to the issues to be decided and . . . mislead the jury").

Because evidence of NSO's purported customer due diligence efforts has no bearing on the issue of damages and is more prejudicial than probative, it should be excluded.  *See* Fed. R. Evid. 401, 402, 403.

## 4.  NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING ITS LACK OF CONTROL OVER ITS CUSTOMERS

NSO should not be permitted to end-run the Court's summary judgment ruling by offering evidence, testimony, or argument suggesting it lacked control over its customers' use of Pegasus.

Throughout this case, NSO has sought to evade accountability by claiming that its customers, and not NSO, operated NSO's spyware.  *See, e.g.*, Dkt. No. 419-5, Ex. H ¶ 14 ("Defendants do not participate in any governmental customer's installation of the Pegasus technology on any target device.").  On summary judgment, the Court rejected this very same argument, finding that NSO conspired with its customers within the meaning of the CFAA in spite of any purported "delegation of Pegasus operation to [NSO's] clients."  Dkt. No. 494 at 13 (citing

---

[4] *See, e.g.*, Azam Ahmed, *A Journalist Was Killed in Mexico. Then His Colleagues Were Hacked*, N.Y. TIMES (Nov. 27, 2018), https://www.nytimes.com/2018/11/27/world/americas/mexico-spyware-journalist.html; Craig Timberg et al., *Pegasus spyware used to hack U.S. diplomats working abroad*, WASH. POST (Dec. 3, 2021), https://www.washingtonpost.com/technology/2021/12/03/israel-nso-pegasus-hack-usdiplomats/.

18 U.S.C. § 1030(b)).  Because "[t]he Court has already ruled on these matters in its summary judgment order[]" evidence and testimony on "these issues would have no probative value, and would merely waste time."  *Magadia v. Wal-Mart Assocs., Inc.*, 2018 WL 6003376, at *2 (N.D. Cal. Nov. 15, 2018); *see also Bob Barker Co. v. Ferguson Safety Prods., Inc.*, 2007 WL 4554012, at *1 (N.D. Cal. Dec. 4, 2007) ("The Court will instruct the jury to disregard evidence probative of breach as it relates to issues already decided on summary judgment.").

Setting aside that the Court considered and rejected this argument on summary judgment, such arguments are irrelevant because the sole issue for trial is the amount of damages Plaintiffs are entitled to as a result of NSO's—not its customers'—violations of federal and state law and breaches of the WhatsApp Terms.

Finally, NSO should not be permitted to assert any defense based on its customers when it has resisted providing Plaintiffs any discovery regarding its interactions with its customers.  *See* Mot. *in Limine* No. 1.  Such evidence should therefore be excluded.

## 5.   NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING THE ALLEGED INSUFFICIENCY OF WHATSAPP'S SECURITY MEASURES

NSO should be precluded from offering evidence, testimony, or argument about the alleged insufficiency of WhatsApp's security measures, including that WhatsApp purportedly "created" the vulnerability NSO exploited.  Such evidence, testimony, or argument would be improper because it is irrelevant to the issue of damages and would likely confuse the jury.  The Court has already found that NSO exceeded authorized access to WhatsApp servers, Dkt. No. 494 at 12–13, and any attempt to argue that Plaintiffs "left the door open" is irrelevant to any damages Plaintiffs are entitled to.  *See Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 936 (9th Cir. 2004) (finding that defendant's argument that plaintiff could have prevented some of the harm is "analogous to a thief arguing that I would not have been able to steal your television if you had installed deadbolts instead of that silly lock I could open with a credit card").

Even if this evidence had minimal probative value, it would be substantially outweighed by the risk of jury confusion and wasting time.  *See* Fed. R. Evid. 403.  The introduction of this irrelevant evidence would likely spawn a series of "mini-trial[s]" so that Plaintiffs could present an

accurate picture of their security measures to the jury—all in connection with evidence that ultimately has no bearing on the issues in this case. *Gardner v. Fed. Express Corp.*, 2015 WL 5821428, at *3 (N.D. Cal. Oct. 6, 2015) ("[A]ny attempt to limit the jury's consideration of such evidence will devolve into a mini-trial over . . . a question which has little relevance, if any, to any claim or defense."). Evidence, testimony, and argument of this type should therefore be precluded under Rule 403.

**6. NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO REGARDING THE PURPORTED USE OF WHATSAPP BY BAD ACTORS, INCLUDING CHARACTERIZING THE WHATSAPP USERS TARGETED IN NSO'S ATTACKS AS PURPORTED BAD ACTORS**

NSO should be precluded from offering evidence, testimony, or argument about the alleged use of WhatsApp by terrorists, criminals, or other bad actors, including characterizing the WhatsApp users who were targeted in NSO's attacks (the "Target Users") as actual or suspected bad actors. From motion practice and depositions, it is clear that NSO will attempt to reduce the damages it should pay by maligning WhatsApp and its customer base. Indeed, in the first paragraph of its summary judgment briefing, NSO leveled irrelevant accusations that WhatsApp is used by "terrorists, human traffickers, and other criminals . . . to plan and commit serious crimes," that WhatsApp provides its service to "criminals" free of charge, and that WhatsApp hides evidence located on "criminals' mobile devices." Dkt. No. 469 at 1; *see also* Dkt. No. 45 at 6 (alleging one of the Target Users was a terrorist who used WhatsApp "to plan an attack"). NSO's questioning during depositions has been no different. *See* Ex. 8 (Woog Dep. Tr.) at 68:13-17 ("Q. All right. You understand the entire Taliban government of Afghanistan uses WhatsApp as its telecommunications platform, correct? A. Sir, I'm not aware of the actions of the entire Taliban"); *id.* at 122: 16-18 (Q. "Is WhatsApp intended to be used for people to communicate child pornography to each other? A. No, sir."). And NSO's experts have similarly opined on such irrelevant information. *See, e.g.*, Ex. 9 (Shepard Rep.) ¶ 23 (claiming that "terrorist organizations, narcotics groups, human traffickers, organized crime, cross-border gangs, and nation-states" use WhatsApp).

10

As with NSO's claims that its unnamed customers were all law-abiding government agencies, *see* Mot. *in Limine* No. 1, speculative claims by NSO regarding the use of WhatsApp by bad actors should be precluded as irrelevant, prejudicial, and calculated to cause jury confusion. *See* Fed. R. Evid. 401, 402, 403.

*First*, this evidence is plainly irrelevant to the amount of damages owed to Plaintiffs for NSO's own unlawful conduct. Whether there are purported "bad actors" among the over 2 billion WhatsApp users does not make the fact or amount of damages "any more or less probable," and therefore is irrelevant. Fed. R. Evid. 401. NSO itself appears to concede that evidence or argument regarding the identities of WhatsApp users is irrelevant to the issue of damages. *See* Dkt. No. 512 at 6 (arguing that evidence "has no bearing on the issue of damages because it describes the purported impact of Pegasus *on third parties* [i.e., WhatsApp users], not on Plaintiffs" (emphasis in original)). The Target Users (and WhatsApp users generally) are not parties to the case, nor are Plaintiffs seeking damages on their behalf. Whether the Target Users are civil society members or purported bad actors has no bearing on Plaintiffs' costs in responding to NSO's attack. Nor is such evidence relevant to whether NSO acted with "oppression, fraud, or malice" for the purposes of punitive damages. Cal. Penal Code § 502(e)(4); *cf. United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014) (stating that the identity of a person that has been defrauded was "irrelevant to the defendant's culpability").

*Second*, even if these types of arguments by NSO had marginal probative value, the Court should exclude them under Rule 403 because they are substantially outweighed by the risk of confusing the issues, misleading the jury, and unfair prejudice. *See* Fed. R. Evid. 403. Setting aside the irrelevance of this topic to damages, any testimony or argument by NSO characterizing WhatsApp users, including the Target Users, as bad actors would be speculative and therefore necessarily have minimal, if any, probative value for that reason as well. *See NeSmith v. Cnty. of San Diego*, 2022 WL 272011, at *7 (S.D. Cal. Jan. 28, 2022) ("Given the highly speculative nature of the report, it has marginal probative value to the determination of economic and noneconomic damages . . . ."); *Patrol Helicopters*, 360 F. App'x at 789 (affirming exclusion of evidence as "speculative, confus[ing], and a waste of time"). NSO provided no evidentiary foundation for any

testimony regarding the identities of WhatsApp users or the characterization of them as actual or suspected bad actors. For instance, NSO's expert Terrance McGraw opined that Pegasus customers use Pegasus to surveil "criminals and terrorists," Ex. 10 (McGraw Rep.) ¶ 39, but he admitted that he had not "seen a list of Pegasus customer targets," nor performed any analysis "as to who may or may not have been a target" or "whether the targets were actual or suspected criminals." Ex. 11 (McGraw Dep. Tr.) at 120:6–25. Similarly, NSO's expert Col. Ty Shepard stated that "99 percent" of "threat actors" used encrypted messaging applications, Ex. 12 (Shepard Dep. Tr.) at 173:7–175:19, but he admitted that he had "not been presented" a list of all of the Target Users and had done no analysis of the Target Users. *Id.* at 303:12–20.

If there were any minimal probative value of testimony and argument on this topic (and there is not), it would be substantially outweighed by the risk of unfair prejudice and misleading the jury and should be precluded for that reason as well. *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."). Introducing testimony and argument regarding the purported use of WhatsApp by bad actors would create a substantial danger that a jury would evaluate damages based on an emotional or otherwise improper reaction to NSO's irrelevant and inflammatory accusations. A jury could be confused by NSO's arguments and decide that the Target Users could be terrorists and child molesters and thus not award, or reduce, damages on that basis. *See Waymo*, 2018 WL 646701, at *22 (excluding under Rule 403 "salacious and inflammatory details about [defendant] that have no discernible relevance to the claims in this case in an apparent bid to poison the judge, if not the jury, against [defendant]); *Planned Parenthood Fed'n of Am.*, 480 F. Supp. 3d at 1010 (excluding evidence relating to legality of plaintiff's abortion procedures because the "raging [public] debates" on the topic "are barely, if at all, relevant to the causes of action that will be tried to the jury," and "will confuse the jury about the issues it needs to decide, waste a significant amount of trial time, and be prejudicial"); *Giganews*, 2019 WL 1422723, at *5 (excluding evidence that child pornography was uploaded to plaintiff's servers because "[s]uch evidence is irrelevant, and any marginal relevance it may have is outweighed by the risk of undue

12

prejudice"); *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("Unfair prejudice within [Rule 403's] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (internal quotation marks & citations omitted)).  Because this evidence and testimony has no probative weight and is highly prejudicial, it should be excluded under Rules 401, 402, and 403.

### 7.    NO EVIDENCE, TESTIMONY, OR ARGUMENT BY NSO PURPORTEDLY RELATING TO PLAINTIFFS' REPUTATION

NSO should be precluded from offering evidence, testimony, or argument about Plaintiffs' reputation, including references to irrelevant disputes, legal allegations, and controversies involving Plaintiffs or their officers.  Such evidence is irrelevant, inadmissible character evidence, and unfairly prejudicial.  *See* Fed. R. Evid. 401, 402, 403, 404.

For example, in depositions and written discovery, NSO has attempted to undermine Plaintiffs' reputation by falsely suggesting that Plaintiffs profit through the sale of their users' private information, *see* Dkt. No. 105 at 2 & n.4, making repeated references to the "Cambridge Analytica scandal," *see, e.g.*, Ex. 13 (Glick Dep. Tr.) at 59:22–25, 136:14–137:3, and requesting documents and communications produced in unrelated antitrust litigations involving Plaintiffs.  Ex. 14 (Defs.' Fourth Set of Reqs. for Produc.) at 6.

These types of arguments and statements are irrelevant to the remaining issues in this case. Plaintiffs are not seeking reputational damages, and therefore any evidence purportedly bearing on Plaintiffs' reputation is irrelevant to the sole issue of damages.  Indeed, NSO conceded as much in its recently filed *Daubert* motion, stating that parties agreed "to not introduce evidence or argument" about reputation.  *See* Dkt. No. 512 at 9 n.2.

Such evidence also constitutes inadmissible character evidence under Rule 404.  *See, e.g.*, *Seals v. Mitchell*, 2011 WL 1399245, at *5 (N.D. Cal. Apr. 13, 2011) (excluding reference to plaintiff's other lawsuits and grievances as "inadmissible character evidence"); *Forbes v. Cnty. of Orange*, 2013 WL 12165672, at *13 (C.D. Cal. Aug. 4, 2013) ("Evidence of Plaintiff's litigiousness would undoubtedly cause the jury to question the validity of Plaintiff's current claims

and thus is inadmissible character evidence." (citing *Dupard v. Kringle*, 76 F.3d 385 (9th Cir. 1996))).

Even if evidence and testimony on this topic had marginal probative value, it would be substantially outweighed by the risk of unfair prejudice and misleading the jury, and should be excluded under Rule 403. Such evidence and testimony could only be intended to cast Plaintiffs in a negative light with respect to matters irrelevant to this litigation, and thereby improperly "provoke an emotional response in the jury" and risk the jury penalizing Plaintiffs regardless of the merits of Plaintiffs' case. *Burke v. City of Santa Monica*, 2011 WL 13213593, at *6 (C.D. Cal. Jan. 10, 2011).

## 8. NO EXPERT TESTIMONY FROM COL. TY SHEPARD AND JOSHUA J. MINKLER, AND NO TESTIMONY FROM ANY OTHER NSO WITNESS OFFERING SIMILAR POLICY OPINIONS

NSO should be precluded from offering testimony from its experts Col. Ty Shepard and Joshua J. Minkler because the entirety of their opinions concern irrelevant policy matters, lack any evidentiary foundation, and are more prejudicial than probative. NSO should also be precluded from offering testimony from its other witnesses and experts about similarly irrelevant policy opinions.

Plaintiffs have separately filed *Daubert* motions seeking to exclude the testimony of Col. Shepard, Mr. Minkler, and Mr. McGraw. *See* Dkt. Nos. 504-3, 513-3, 572-3. If the Court grants Plaintiffs' *Daubert* motions, the Court need not review the portions of this motion *in limine* seeking to preclude the testimony of these experts under Rules 401 and 403.

### a. Col. Shepard's Testimony Should Be Excluded Because All of His Opinions Are Irrelevant, Unfairly Prejudicial, and Likely to Cause Jury Confusion

#### i. Col. Shepard's Testimony Is Irrelevant to Damages

Expert testimony is admissible only if relevant to the issues in controversy. *See Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*, 2013 WL 12122803, at *2 (C.D. Cal. June 21, 2013) ("Expert testimony is . . . subject to relevance or prejudice considerations under Rules 401-403."). The sole issue for trial is determining the amount of damages Plaintiffs are entitled to as a

result of NSO violating federal and state anti-hacking law, and breaching the WhatsApp Terms. Plaintiffs anticipate seeking costs they incurred related to responding to and remediating NSO's attack and punitive damages to punish NSO for its misconduct and deter similar unlawful acts in the future. None of Col. Shepard's policy opinions bears any relevance to these categories of relief, and therefore his testimony should be excluded.

*First*, Col. Shepard's testimony is irrelevant to Plaintiffs' request for compensatory damages. Col. Shepard admitted that he conducted no analysis regarding the costs Plaintiffs incurred in remediating NSO's attack, and therefore his testimony has no relevance to this issue. *See* Ex. 12 (Shepard Dep. Tr.) at 304:8–16 ("Q. You've done no analysis of whether Plaintiffs suffered loss or incurred costs as a result of the attacks; correct? . . . [A.] Again, I don't—I don't know any detailed information on any potential exploits of devices or the people associated with them.").

*Second*, Col. Shepard's testimony is irrelevant to Plaintiffs' request for punitive damages. Col. Shepard's policy opinions have no bearing on whether NSO itself acted with "oppression, fraud, or malice" for the purposes of punitive damages. Cal. Penal Code § 502(e)(4). Instead, his opinions concern, in the abstract, the purported benefits to law enforcement of tools like Pegasus and the purported risks of encrypted messaging platforms generally. These opinions do not relate to the conduct that is at issue in this case, and therefore have no bearing on punitive damages.

For instance, Col. Shepard's first opinion claims—without support—that "over 99 percent" or "99 percent" of "threat actors" use encrypted messaging applications to undermine U.S. national security interests. Ex. 12 (Shepard Dep. Tr.) at 173:7–175:19; *see* Ex. 9 (Shepard Rep.) ¶¶ 23–25. But there has been no showing that the users targeted by NSO's spyware were "threat actors." Indeed, NSO only confirmed that Princess Haya and her attorney were targeted with NSO's spyware. *See* Ex. 2 (Shohat Dep. Tr.) at 29:24–32:14. Regardless, as argued above, the identities of the Target Users have no bearing on the amount of damages NSO must pay. Similarly, his second opinion claims that the United States and allied countries make "routine use of tools like Pegasus" to protect national security interests, Ex. 9 (Shepard Rep.) ¶ 1, without naming any instance in which the United States actually deployed Pegasus or similar surveillance tools. *See* Ex.

12 (Shepard Dep. Tr.) at 243:13–244:19.  As with the Target Users, the purported identities of NSO's customers have no bearing on any claim or defense in this case, and again NSO has provided no evidence regarding the identities of its customers.  *See* Mot. *in Limine* No. 1.  Col. Shepard's fourth opinion fares no better.  He claims that intelligence agencies "typically do not follow ordinary terms of service" when pursuing security and safety threats.  Ex. 9 (Shepard Rep.) ¶¶ 36–37.  Whether government actors who are not parties to this case comply with terms of service is plainly irrelevant to the damages owed by NSO, which has already been found to have breached WhatsApp's Terms.

Moreover, Col. Shepard has provided no evidentiary foundation for applying his generalized policy opinions to the specific conduct at issue in this case.  Col. Shepard has not analyzed how Pegasus functioned in this case.  *See* Ex. 12 (Shepard Dep. Tr.) at 279:13–20 ("Q. But you haven't examined the facts and circumstances of this case with respect to the exploitation? A. I guess the specifi- —if you're talking about a specific detail on an exploit of a device as far as associated with this case, as far as looking at it directly, I've not seen, you know, or been read in on that.").  Nor has he conducted any analysis regarding whether NSO obtained information from WhatsApp's servers or the devices of Target Users.  *Id.* at 280:18–285:5.  Accordingly, Col. Shepard has no basis to offer any opinions that would inform the jury's determination of whether NSO acted with "oppression, fraud, or malice."  His testimony is accordingly irrelevant to punitive damages, just as it is to compensatory damages.

> ii.   Col. Shepard's Testimony Presents a Substantial Risk of Unfair Prejudice and Jury Confusion

Even if his generalized policy opinions were relevant, Col. Shepard's testimony should be excluded under Rule 403 because any marginal probative value would be substantially outweighed by the risk of unfair prejudice and jury confusion.  Fed. R. Evid. 403.

The crux of Col. Shepard's testimony is about the social utility of NSO's technology, but that ignores Plaintiffs' claims, now established as true, and the analysis that led the Court to find NSO liable, which focused on NSO's use of WhatsApp's servers prior to installing their spyware on a Target User's device.  Admitting testimony on whether the use of spyware and other

interception technologies is useful in "mitigating terrorist threats," "preventing assassinations," and "preventing organized crime," Ex. 12 (Shepard Dep. Tr.) at 114:14–115:2, would do little more than invite the jury to make a judgment call as to the "good" or "bad" use of surveillance technology, and thus distract them from the sole issue of damages.  At bottom, NSO seeks to introduce the irrelevant testimony of a military officer to distract the jury by painting NSO as an integral player in stopping international crime.  "Jurors may well assume that an expert, unlike an ordinary mortal, will offer an authoritative view on the issues addressed; if what an expert has to say is instead tangential to the real issues, the jury may follow the 'expert' down the garden path and thus focus unduly on the expert's issues to the detriment of issues that are in fact controlling." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991).  Excluding Col. Shepard's opinions would avoid this problem.

Further, Col. Shepard's reliance on and references to "classified" information would unfairly prejudice Plaintiffs and confuse the jury.  *See* Ex. 12 (Shepard Dep. Tr.) at 69:23–71:2 (claiming that he was present during "classified" discussions with unidentified individuals regarding Pegasus, and declining to provide information about those discussions because it is "classified"); *see also In re Leap Wireless Int'l, Inc.*, 301 B.R. 80, 85 (Bankr. S.D. Cal. 2003) (finding the probative value of expert's report was "substantially outweighed by the danger of unfair prejudice" given expert's reliance on confidential information, which "left the court and [creditor] with the bare option . . . to trust but not to verify").  At his deposition, Col. Shepard repeatedly (yet inconsistently) invoked the need to protect classified information and would likely do so again during Plaintiffs' cross-examination.  *See, e.g.*, Ex. 12 (Shepard Dep. Tr.) at 91:25–93:5 (stating that he cannot identify many of the U.S. allies he claims to have knowledge of using Pegasus because the information is classified).  This would serve only to confuse the jury and complicate their remit of awarding Plaintiffs the proper amount of damages.

### b.  Mr. Minkler's Testimony Should Be Excluded Because All of His Opinions Are Irrelevant, Unfairly Prejudicial, and Likely to Cause Jury Confusion

#### i.  Mr. Minkler's Testimony Is Irrelevant to Damages

All of Mr. Minkler's opinions are irrelevant "to the legal and factual matters to be resolved by the jury" in the upcoming damages trial and therefore should be excluded.  *Brice v. Haynes Invs., LLC*, 548 F. Supp. 3d 882, 903 (N.D. Cal. 2021).

As an initial matter, Mr. Minkler's proffered opinions—which all broadly relate to lawful surveillance of electronic communications by U.S. law enforcement—bear no relation to NSO's conduct in this case, as Mr. Minkler himself acknowledges.  *See, e.g.*, Ex. 6 (Minkler Dep. Tr.) at 79:21-81:2 (testifying that "[t]here is no Title [III] or FISA warrant that I'm aware of that has been authorized for anyone in this country, government agency, to use or install Pegasus"); *id.* at 81:3–6 (confirming that "no United States federal judge approved NSO's use of Pegasus to obtain any information for WhatsApp users").  Indeed, Mr. Minkler admits that he is "not aware of the lawful use of Pegasus in the United States by federal law enforcement agencies," *id.* at 159:10–22, despite opining on topics like "the benefits of tools such as Pegasus in law enforcement and national security operations."  Ex. 5 (Minkler Rep.) ¶¶ 1, 55–62.

Mr. Minkler's opinions are not only untethered to any conduct in this case, they are also irrelevant to the sole issue of damages for trial.  Mr. Minkler confirmed in his deposition that he conducted no analysis on whether "Pegasus harmed WhatsApp's computers," or whether Plaintiffs' "suffered loss or incurred loss."  Ex. 6 (Minkler Dep. Tr.) at 133:5–10.

Nor do his opinions bear any relation to whether NSO acted with "oppression, fraud, or malice" for the purpose of punitive damages.  Mr. Minkler admits that his very limited understanding of the facts in this case is "based on reviewing the Complaint," *id.* at 120:7–11, and that he is only "somewhat familiar with the allegation[s] in the Complaint."  *Id.* at 55:18–56:4.  In fact, Mr. Minkler did not read the Court's opinion granting Plaintiffs' motion for summary judgment, *id.* at 77:15–20, nor sign the protective order to access documents designated confidential by the parties, *id.* at 120:2–6.  *See also* Ex. 5 (Minkler Rep.) App. B (listing seven "documents produced in this litigation" that he considered).  Mr. Minkler's lack of knowledge

18

regarding NSO's attacks of WhatsApp at issue in this case confirms that his testimony is irrelevant to assessing whether NSO acted with oppression, fraud, or malice in connection with the attacks at issue.  "Punitive damages are not simply recoverable in the abstract.  They must be tied to oppression, fraud or malice in the conduct which gave rise to liability in the case."  *Medo*, 251 Cal. Rptr. at 926; *see State Farm*, 538 U.S. at 422–23 (noting that punitive damages punish a defendant "for the conduct that harmed the plaintiff").  Because Mr. Minkler's opinions are about speculative, hypothetical uses of Pegasus, they are irrelevant to evaluating whether NSO acted with oppression, fraud, or malice in connection with NSO's attacks of Plaintiffs at issue in this case.  Mr. Minkler's testimony should therefore be precluded as irrelevant.

  ii. <u>Mr. Minkler's Testimony Presents a Substantial Risk of Unfair Prejudice,</u>
    <u>Jury Confusion, and Wasting Time</u>

    Even if testimony regarding the hypothetical utility of Pegasus to law enforcement were relevant, Mr. Minkler's testimony should be precluded under Rule 403 because the probative value of his opinions, if any, is substantially outweighed by the risk of unfair prejudice, confusing the jury, and wasting time.  At bottom, Mr. Minkler's opinions go only to NSO's policy argument that it should not be liable in this case because its technology is theoretically beneficial to law enforcement.  The Court has already adjudicated NSO liable on Plaintiffs' claims, and thus Mr. Minkler's testimony serves no purpose other than to distract the jury from the facts and improperly appeal to the jury's sense of community safety.  *See United States v. Harris*, 863 F.2d 887 (9th Cir. 1988) ("The jury's obligation is to apply the law to the facts and the defendant is not entitled to a 'nullification instruction' which would instruct the jury to ignore the law and acquit on the basis of sympathy or community conscience." (quoting *United States v. Simpson*, 460 F.2d 515 at 519–20 (9th Cir. 1972)); *see also Shannon v. United States*, 512 U.S. 573, 576 (1994) (noting the "well-established principle that a jury is to base its verdict on the evidence before it, without regard to the possible consequences of the verdict.").

    Permitting Mr. Minkler to offer his opinions before the jury would therefore create a substantial risk of unfair prejudice to Plaintiffs because jurors may mistakenly believe that they should not award, or reduce, damages owed to Plaintiffs based on policy arguments that are

irrelevant to the sole issue of damages in this case. *See, e.g.*, *Retamosa*, 2021 WL 4499236, at *1 (precluding evidence or argument that "a verdict for [party] will somehow make the community a safer and better place to live and work" because such evidence was "irrelevant to actual damages alleged . . . and ha[d] a substantial likelihood of unfairly prejudicing the jury [by] encourag[ing] the jury to render a verdict based on personal interest and bias rather than on the evidence"); *Serna*, 2024 WL 4720884, at *3 (precluding "arguments meant to appeal to a jury's concern for community safety," given that such arguments "would encourage the jury to make a decision on an improper basis"). Mr. Minkler's testimony therefore warrants exclusion under Rule 403.

### c. Testimony from NSO's Other Witnesses and Experts Regarding Similarly Irrelevant Policy Opinions Should Be Excluded

For the reasons set forth above, NSO should be precluded from offering testimony from its other experts who opine on similarly irrelevant policy matters as Col. Shepard and Mr. Minkler. NSO's expert Terrance McGraw, for instance, devotes portions of his expert reports to characterizing Pegasus as a "lawful intercept" technology, Ex. 15 (McGraw Rebuttal Rep.) ¶ 99, and alleging that customers use tools like Pegasus to "enable lawful surveillance of criminals and terrorists." Ex. 10 (McGraw Rep.) ¶ 39. As with Col. Shepard and Mr. Minkler's opinions, Mr. McGraw's generalized claims about the social utility of Pegasus have no bearing on any category of relief at issue in this case. And like Col. Sheppard and Mr. Minkler, Mr. McGraw provides no evidentiary foundation to apply his policy opinions to the conduct at issue at trial. Mr. McGraw admitted that he had "not seen a list of Pegasus customer targets," and had "not done any analysis as to who may or may not have been a target," or "whether the targets were actual or suspected criminals," as these analyses were "outside of scope of [his] opinion." Ex. 11 (McGraw Dep. Tr.) at 120:6–25. He similarly conceded that he has no insight into whether NSO's customers used Pegasus lawfully. *Id.* at 299:5–7 ("Do I have any insights into which customers of NSO may or

may not have used this lawfully, I do not.").  Thus, testimony from Mr. McGraw, and similar expert testimony on policy opinions, should be excluded as irrelevant and prejudicial.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motions *in Limine*.

PLAINTIFFS' MOTIONS *IN LIMINE* - CASE NO. 4:19-CV-07123-PJH

Dated:   March 13, 2025

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

By:    /s/ *Micah G. Block*
          Greg D. Andres
          Antonio J. Perez-Marques
          Craig T. Cagney
          Gina Cora
          Luca Marzorati
            (admitted pro hac vice)
          DAVIS POLK & WARDWELL LLP
          450 Lexington Avenue
          New York, New York 10017
          Telephone: (212) 450-4000
          Facsimile: (212) 701-5800
          Email: greg.andres@davispolk.com
                  antonio.perez@davispolk.com
                  craig.cagney@davispolk.com
                  gina.cora@davispolk.com
                  luca.marzorati@davispolk.com

          Micah G. Block (SBN 270712)
          DAVIS POLK & WARDWELL LLP
          900 Middlefield Road, Suite 200
          Redwood City, California 94063
          Telephone: (650) 752-2000
          Facsimile:  (650) 752-2111
          Email: micah.block@davispolk.com

          Attorneys for Plaintiffs
          WhatsApp LLC and Meta Platforms, Inc.