Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         gina.cora@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC. and META PLATFORMS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED, <br><br> Defendants. | Case No. 4:19-cv-07123-PJH <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DANA TREXLER** <br><br> Date: April 10, 2025 <br> Time: 2:00 p.m. <br> Ctrm: 3 <br> Before the Honorable Phyllis J. Hamilton <br><br> Action Filed: Oct. 29, 2019 |

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................3

      I.      Ms. Trexler Properly Relies on Interviews to Formulate Her Opinions ......................3

      II.     Ms. Trexler Properly Includes Equity Compensation in the Form of RSUs to Calculate Plaintiffs' Fully Burdened Labor Rate ..........................................................6

            A.     Ms. Trexler Relies on Sufficient Facts to Opine that RSUs Should Be Included in Plaintiffs' Labor Costs ..................................................................6

            B.     Ms. Trexler's Inclusion of RSUs Reflects Reliable Principles and Methods ..............................................................................................................10

            C.     Ms. Trexler's Inclusion of RSU Compensation Fits the Facts of the Case ...11

CONCLUSION .............................................................................................................................11

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
   738 F.3d 960 (9th Cir. 2013) ................................................................................................ 5

*Alexander v. FBI*,
   486 F.R.D. 137 (D.D.C. 1998) ............................................................................................... 6

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
   2018 WL 1611835 (N.D. Cal. Apr. 3, 2018) ...................................................................... 6-7

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
   666 F. Supp. 3d 328 (S.D.N.Y. 2023) ................................................................................... 3

*Bourns, Inc. v. Raychem Corp.*,
   1999 WL 35131842 (C.D. Cal. Dec. 28, 1999) .................................................................... 3

*Childs' Broad. Corp. v. Walt Disney Co.*,
   357 F.3d 860 (8th Cir. 2004) ................................................................................................. 4

*Ciarlante v. Brown & Williamson Tobacco Corp.*,
   143 F.3d 139 (3d Cir. 1998) ................................................................................................. 8

*Clean Team Janitorial Serv., Inc. v. United States*,
   171 Fed. Cl. 1 (2024) ............................................................................................................ 9

*Clougher v. Home Depot, U.S.A, Inc.*,
   696 F. Supp. 2d 285 (E.D.N.Y. 2010) ................................................................................ 10

*Deghand v. Wal-Mart Stores, Inc.*,
   980 F. Supp. 1176 (D. Kan. 1997) ........................................................................................ 5

*Facebook, Inc. v. Power Ventures, Inc.*,
   252 F. Supp. 3d 765 (N.D. Cal. 2017) .................................................................................. 3

*Fillman v. Valley Pain Specialists, P.C.*,
   2016 WL 192656 (E.D. Pa. Jan. 15, 2016) .......................................................................... 9

*Goldie v. Hartford Ins. Co.*,
   2006 WL 8451352 (C.D. Cal. Feb. 16, 2006) ...................................................................... 6

*Guillory v. Domtar Indus. Inc.*,
   95 F.3d 1320 (5th Cir. 1996) ................................................................................................. 5

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ............................................................................................ 4, 8

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ................................................................................................. 8

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
  605 F. Supp. 3d 1295 (N.D. Cal. 2022) ........................................................................... 9, 11

*Kampe v. Volta*,
  2024 WL 308262 (N.D. Cal. Jan. 26, 2024) .......................................................................... 11

*Lucent Techs., Inc. v. Microsoft Corp.*,
  2011 WL 2728317 (S.D. Cal. July 13, 2011) ......................................................................... 7

*Metaquotes Ltd. v. Metaquotes Software Corp*,
  2023 WL 3506413 (C.D. Cal. May 17, 2023) ......................................................................... 8

*Munguia-Brown v. Equity Residential*,
  2023 WL 1868875 (N.D. Cal. Jan. 24, 2023) .......................................................................... 5

*In re MyFord Touch Consumer Litig.*,
  291 F. Supp. 3d 936 (N.D. Cal. 2018) ..................................................................................... 5

*SEC v. Jasper*,
  678 F.3d 1116 (9th Cir. 2012) ................................................................................................ 11

*SEC v. Worldcom, Inc.*,
  2003 WL 22004827 (S.D.N.Y. Aug. 26, 2003) ...................................................................... 10

*Schachter v. Citigroup, Inc.*,
  218 P.3d 262 (Cal. 2009) ........................................................................................................ 10

*Scott v. Chipotle Mexican Grill, Inc.*,
  315 F.R.D. 33 (S.D.N.Y. 2016) ......................................................................................... 9, 10

*Senne v. Kansas City Royals Baseball Corp.*,
  591 F. Supp. 3d 453 (N.D. Cal. 2022) ..................................................................................... 5

*Stephens v. Union Pac. R.R. Co.*,
  935 F.3d 852 (9th Cir. 2019) ................................................................................................... 3

*Talkdesk, Inc. v. Pham*,
  2024 WL 4866690 (C.D. Cal. Aug. 9, 2024) ......................................................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 WL 124347 (N.D. Cal. Jan. 8, 2013) .............................................................................. 9

*Toy v. Am. Fam. Mut. Ins. Co.*,
  2014 WL 12888386 (D. Colo. Jan. 31, 2014) ......................................................................... 6

*Turner v. ThyssenKrupp Materials, N.A.*,
  492 F. Supp. 3d 1045 (C.D. Cal. 2020) ................................................................................... 5

*In re Webster*,
  2002 WL 32700045 (Bankr. D. Kan. Oct. 25, 2002) .............................................................. 8

*Zucchella v. Olympusat, Inc.*,
  2023 WL 2628107 (C.D. Cal. Jan. 10, 2023) .......................................................................... 6

STATUTES & RULES

Fed. R. Evid. 703 ................................................................................................................. 3, 7

Fed. R. Civ. P. 30(b)(6) ............................................................................................................ 6

OTHER AUTHORITIES

*Fact Sheet: Computing Hourly Rates of Pay Using the 2,087-Hour Divisor*, U.S. Office of Personnel Management, https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/computing-hourly-rates-of-pay-using-the-2087-hour-divisor/ (last visited Jan. 21, 2025) .... 8

**PRELIMINARY STATEMENT**

Dana Trexler, Plaintiffs' damages expert, has over 25 years of experience analyzing economic damages in complex litigation matters. At trial, Ms. Trexler will summarize the labor costs that Plaintiffs incurred in responding to NSO's attacks, which Ms. Trexler conservatively calculated as totaling $444,719. NSO chose not to depose Ms. Trexler, and its motion does not challenge her ample qualifications. Rather, NSO seeks to exclude discrete portions of Plaintiffs' response costs. In particular, NSO takes issue with the portions attributable to hours estimates that a WhatsApp supervisor provided and the portions relating to equity compensation in the form of restricted stock units ("RSUs").

The Court should deny NSO's motion. Instead of providing a legal basis on which to exclude Ms. Trexler's testimony, NSO merely disagrees with her conclusions. This disagreement is at most a matter for cross-examination. Courts consistently recognize that arguments like NSO's—regarding the existence of contrary documents, or disputes about inputs in a damages model—go to the weight of the expert's opinion. They do not warrant exclusion.

*First*, NSO argues that Ms. Trexler cannot opine on Plaintiffs' response costs related to employees she did not personally interview. The law imposes no such requirement. NSO ignores voluminous evidence—upon which Ms. Trexler relied—showing the time and effort that all these employees spent in responding to NSO's unauthorized access to Plaintiffs' computers, and myriad cases permitting similar testimony.

*Second*, NSO asserts that Ms. Trexler should not be permitted to present her opinion that Plaintiffs' response costs include equity compensation in the form of RSUs that Plaintiffs paid to their employees. NSO contends that the cost of issuing RSUs is not a cost at all. Aside from being factually incorrect, that is simply a disagreement with part of Ms. Trexler's opinions, and no reason to exclude her testimony.[1]

---

[1] NSO's motion also seeks to present a dispute about whether disgorgement is an available legal remedy in this case. *See* Dkt. No. 502-2 at 10–11. Because Plaintiffs no longer seek disgorgement as a remedy, the Court need not address NSO's argument. Regardless, that now-mooted dispute regarding disgorgement is no grounds to exclude Ms. Trexler's opinions, including regarding NSO's profits. NSO itself asserts that those opinions may be relevant to issues other than disgorgement, such as punitive damages. Dkt. No. 608-2 at 2–3.

# BACKGROUND

On August 30, 2024, Plaintiffs served the affirmative expert report of Ms. Trexler (the "Trexler Report"). *See* Dkt. No. 487-3. The Trexler Report calculates Plaintiffs' labor costs incurred in responding to and remediating NSO's attacks.[2] To calculate Plaintiffs' labor costs, Ms. Trexler first identifies which of Plaintiffs' employees were involved in responding to NSO's attacks, and how many hours they spent on the response. *See, e.g.*, *id.* ¶¶ 54–59. Ms. Trexler spoke directly with eight employees who responded to NSO's attacks, including Claudiu Gheorghe, a former software engineering manager at WhatsApp. *Id.* ¶ 54. Mr. Gheorghe oversaw WhatsApp's VoIP infrastructure, coordinated the technical response to NSO's attacks, and provided Ms. Trexler with further details on the nature and amount of time that additional employees spent on the response. *Id.* ¶ 81–82; *see also* Declaration of Micah G. Block in Support of Plaintiffs' Opposition ("Block Decl.") Ex. B (Gheorghe Dep. Tr.), at 21:9–22:3. These employees, who are listed in Exhibit 2.2 to the Trexler Report, are the subject of NSO's motion to exclude.

After learning which employees were involved and how long they spent working on the response, Ms. Trexler calculates each employee's "burdened labor rate," which reflects the cost of the employee's labor to Plaintiffs. Dkt. No. 487-3 ¶ 83. This burdened labor rate includes each employee's salary, employer 401(k) contributions, the employer portion of payroll taxes, employer-paid healthcare costs, performance bonus, and RSUs. *Id.* ¶¶ 84–85. Because all of the employees were salaried, Ms. Trexler then converts this burdened labor rate into "an hourly-equivalent compensation rate for each of" Plaintiffs' employees involved in responding to the attacks. *Id.* ¶ 86. As part of calculating the hourly-equivalent rate, Ms. Trexler assumes that each employee was compensated based on the standard full-time amount of 2,080 hours per year (40 hours per week across 52 weeks). Finally, Ms. Trexler multiplies each employee's hourly-equivalent rate by their respective time spent responding to the attacks and sums those figures to arrive at a total response cost of $444,719. *Id.* ¶ 86; *see also id.,* at Tbl. 3.

---

[2] The Trexler Report also calculates the amount of NSO's profits stemming from the sale of the "Android zero-click installation vector for Pegasus," that was used to carry out the attacks. *Id.* ¶ 89. Plaintiffs no longer seek disgorgement of NSO's unjust profits as a remedy.

At NSO's request, the parties scheduled Ms. Trexler's deposition for November 13, 2024. On November 8, 2024, NSO reversed course and withdrew their request. *See* Dkt. No. 525-1 ¶ 5. Ms. Trexler has not been deposed in this case.

NSO filed their motion to exclude certain of Ms. Trexler's opinions on January 9, 2025. Dkt. No. 502-2. Plaintiffs file this opposition in accordance with the Court's order, which set "other pretrial deadlines . . . according to the parties' stipulation." Dkt. No. 540.

## ARGUMENT

### I. Ms. Trexler Properly Relies on Interviews and Other Documents to Formulate Her Opinions

NSO contends that a damages expert cannot opine on labor costs associated with any employee she did not personally interview. That is not the law. Ms. Trexler's opinions regarding Plaintiffs' labor costs—including with respect to employees whom she did not interview—are supported by sufficient facts and data, and are admissible. An expert's opinion can rely on "facts or data in the case that the expert has been made aware of or personally observed." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019). Under the Federal Rules of Evidence, an expert may rely on hearsay if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Here, to understand which employees responded and the timeframe of their response, Ms. Trexler spoke with eight of Plaintiffs' individual-contributor and supervising employees and reviewed documents showing the employees responding to NSO's attacks. *See* Dkt. No. 487-3 ¶¶ 51–88. This approach has been used in similar cases. *See Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 780 (N.D. Cal. 2017) ("It is unquestionable that an expert forming an opinion about the salary and the hours worked by an employee would rely on statements by the employee in an interview."); *Bourns, Inc. v. Raychem Corp.*, 1999 WL 35131842, at *2 (C.D. Cal. Dec. 28, 1999) ("[I]nterviews are the kind of evidence reasonably relied upon by experts in measuring damages."); *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 355 (S.D.N.Y. 2023) (holding that attack on expert's testimony went to "the weight and not the admissibility of his proffered testimony" because "it is not uncommon for experts to rely on interviews with third parties in forming their opinions") (internal quotations and citation omitted).

To the extent NSO doubts the strength of the evidence on which Ms. Trexler relies, its recourse is cross-examination, not exclusion.

Ms. Trexler provided a sufficient basis for her opinions regarding Plaintiffs' labor costs. In forming her opinions, Ms. Trexler spoke with eight of Plaintiffs' employees to verify the full list of individuals involved in responding to NSO's attacks. *See* Dkt. No. 487-3 ¶¶ 54–80. As part of this process, Ms. Trexler spoke with Claudiu Gheorghe, who served as the software engineering manager of VoIP infrastructure at WhatsApp from 2017 to 2019, and who "orchestrated efforts among engineering teams, security teams, and legal teams" responding to the attacks. *Id*. ¶¶ 75–77; *see also* Block Decl. Ex. B (Gheorghe Dep. Tr.), at 21:9–22:3. In addition to reporting on his own time, Mr. Gheorghe identified "14 other Meta professionals that participated in the investigation and response efforts." *Id*. ¶ 81. Given Mr. Gheorghe's insight into which of Plaintiffs' employees were involved in responding to NSO's attacks and how many hours these employees spent responding, Ms. Trexler includes his estimates as to the hours they worked responding to NSO's attacks. *See id.*, Ex. 2.2.

NSO claims that how Mr. Gheorghe knew these 14 employees is "unknown." Dkt. No. 502-2 at 6. That is wrong, as the evidence in this case shows, and as Mr. Gheorghe's testimony will confirm. *See, e.g.*, Block Decl. Ex. B (Gheorghe Dep. Tr.), at 22:4–17 (listing employees, including ones he identified to Ms. Trexler, who were on his team); 268:13–22 (identifying another member of the response team); 74:5–14 (same); 75:13–15 (same). Even if well-grounded, NSO's claim would be a matter for cross-examination, not exclusion. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination" (quoting *Childs.' Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004))). But in any event NSO misdescribes the record. For example, in addition to her conversation with Mr. Gheorghe, Ms. Trexler considered various documents that show the involvement of these employees in responding to the attacks. *See, e.g.* Dkt. No. 487-3 ¶ 51 n.99 (citing WA-NSO-00017583 and WA-NSO-00166464); *id.* ¶ 46 n.95 (citing WA-NSO-00018457); *see also id.*, Ex. B (including as "Documents Considered" WA-NSO-00060339, WA-NSO-

4

Pls.' Opp. to Defs.' Mot. to Exclude Certain Opinions of Dana Trexler | Case No. 4:19-cv-07123-PJH

00020296, WA-NSO-00018449, and WA-NSO-00060597). These documents show the 14 employees contributing to the investigation, sometimes in direct response to Mr. Gheorghe's outreach. NSO does not mention these documents in their motion.

More broadly, NSO points to no authority for its fundamental argument, which is that a damages expert must actually speak with each employee before estimating their number of hours worked in connection with any labor-costs opinion. To the contrary, courts have repeatedly allowed damages experts to offer testimony that relies on evidence other than individualized conversations with employees. For example, in *Senne v. Kansas City Royals Baseball Corp.*, a court in this district denied a motion to exclude damages expert testimony regarding hours worked based on variety of sources, including publicly available data and deposition testimony. 591 F. Supp. 3d 453, 483–84 (N.D. Cal. 2022); *see also Munguia-Brown v. Equity Residential*, 2023 WL 1868875, at *2–3 (N.D. Cal. Jan. 24, 2023) (denying motion to exclude damages expert testimony that calculated employee time based on a representative sample of employees); *Turner v. ThyssenKrupp Materials, N.A.*, 492 F. Supp. 3d 1045, 1048–49 (C.D. Cal. 2020) (denying motion to exclude damages expert testimony regarding owed compensation based on job cost data); *Deghand v. Wal-Mart Stores, Inc.*, 980 F. Supp. 1176, 1181 (D. Kan. 1997) (denying motion to exclude damages expert testimony relying on employment information provided by counsel to expert).

As these examples show, Ms. Trexler's methodology of speaking to employees to determine their hours is reliable. "Because the Court acts merely as a gatekeeper and not a factfinder, an expert whose methodology is otherwise reliable should not be excluded simply because the facts upon which his or her opinions are predicated are in dispute, unless those factual assumptions are 'indisputably wrong.'" *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)). If anything, NSO's criticisms are more appropriate for cross-examination. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013) ("The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.").

Despite the voluminous evidentiary basis for Ms. Trexler's opinion, NSO asserts that Ms. Trexler's opinion is not supported by sufficient facts or data because, it argues, Drew Robinson, Plaintiffs' corporate designee on the time spent by Plaintiffs' employees in responding to NSO's exploit, was unfamiliar with some of the employees that Mr. Gheorghe managed in responding to NSO's attacks. *See* Dkt. No. 502-2 at 2. Mr. Robinson's incomplete recall in deposition should not prevent Ms. Trexler from relying on Mr. Gheorghe's reporting or contemporaneous documents to estimate the hours that certain of Plaintiffs' employees worked. "A Rule 30(b)(6) deposition is not a 'memory test.'" *Goldie v. Hartford Ins. Co.*, 2006 WL 8451352, at *2 (C.D. Cal. Feb. 16, 2006) (quoting *Alexander v. FBI*, 486 F.R.D. 137, 143 (D.D.C. 1998)); *see also Williamson v. Google LLC*, 2018 WL 11414609, at *2 (N.D. Cal. May 24, 2018) (same). That is why Plaintiffs properly objected to NSO's applicable Rule 30(b)(6) notice and topics, including on this basis. *See* Block Decl. Ex. A (Pls.' Resps. & Objs. to Defs.' Am. Notice of Videorecorded Deposition), at 18–20, 39–40. Unlike the sole case that NSO cites, Mr. Robinson's Rule 30(b)(6) testimony did not *contradict* the evidence that Ms. Trexler relied on. *Toy v. Am. Fam. Mut. Ins. Co.*, 2014 WL 12888386, at *3–4 (D. Colo. Jan. 31, 2014) (precluding expert from relying on argument that was contradicted by corporate designee). Ms. Trexler undoubtedly has sufficient facts or data for her opinion, and NSO's argument is about the weight of those facts or data, which is not a basis for exclusion.

## II. Ms. Trexler Properly Includes Equity Compensation in the Form of RSUs to Calculate Plaintiffs' Fully Burdened Labor Rate

NSO also seeks to exclude equity compensation in the form of RSUs from Ms. Trexler's labor cost calculations. NSO argues that the inclusion of RSUs is not supported by sufficient facts or data, is not the product of reliable principles and methods, and is not a generally accepted method. Dkt. No. 502-2 at 6–10. NSO is incorrect on all three points.

### A. Ms. Trexler Relies on Sufficient Facts to Opine that RSUs Should Be Included in Plaintiffs' Labor Costs

Ms. Trexler relies on sufficient facts in opining that Plaintiffs' RSU costs were incurred in response to NSO's attacks. In forming her RSU opinions, Ms. Trexler relies upon conversations with Plaintiffs' employees and documentary evidence, all of which show the time and associated costs

6

1  that Plaintiffs incurred in responding to NSO's attacks.  As discussed below, NSO's criticisms are
2  no basis for exclusion here because Ms. Trexler's opinions are not "fundamentally unsupported."
3  *Zucchella v. Olympusat, Inc.*, 2023 WL 2628107, at *2 (C.D. Cal. Jan. 10, 2023) ("Only if the ex-
4  pert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such
5  testimony be excluded"); *see BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 1611835, at *4 (N.D.
6  Cal. Apr. 3, 2018) (an opinion that "lacks valid factual support" is excludable, but "an opinion that
7  is supported with facts but of which the expert may have limited knowledge" is "not excludable
8  because the issue it presents is one of weight and credibility, not admissibility").  NSO's challenges
9  to Ms. Trexler's factual basis all lack merit.
10     NSO's first contention—that Ms. Trexler lacks sufficient facts or data to show that the RSU
11 costs Ms. Trexler calculates relate to Plaintiffs' work responding to NSO's attacks, Dkt. No. 502-2
12 at 7–8—ignores the robust foundation for Ms. Trexler's opinion.  The document Ms. Trexler primar-
13 ily relies on (the "RSU Spreadsheet") prominently states that it shows the "RSU Expense to Meta,
14 for work <u>performed in 2019</u> by relevant employee."  *See* Dkt. No. 487-3 Ex. 3.1.4 n.1 (citing to the
15 RSU Spreadsheet (WA-NSO-00192854)).  The RSU expenses listed in the RSU Spreadsheet there-
16 fore are those paid to Plaintiffs' employees in 2019, just like the salary, bonus, and other figures
17 included in the burdened labor cost.  To verify the figures in the RSU Spreadsheet, Ms. Trexler spoke
18 with Plaintiffs' employees who created the RSU Spreadsheet and discussed how Plaintiffs awarded
19 RSUs and recognized costs associated with those RSUs in the relevant timeframe.  These employees
20 have responsibility for payroll and equity programs at Meta.  *See id.* ¶ 6.  Ms. Trexler also reviewed
21 the source files that contain the facts and data which support the RSU Spreadsheet.  *See id.* Ex. B
22 (including as "Documents Considered" WA-NSO-00192850–WA-NSO-00192852).  In doing so,
23 Ms. Trexler based her opinion on "the types of documents and information upon which experts in
24 [her] field typically rely when performing such an analysis."  *Id.* ¶ 6, Ex. B; *see Lucent Techs., Inc.*
25 *v. Microsoft Corp.*, 2011 WL 2728317, at *2 (S.D. Cal. July 13, 2011) (noting that Federal Rule of
26 Evidence 703 and *Daubert* allow "experts to render opinions even if based on inadmissible evidence
27 so long as the inadmissible evidence is of the type reasonably relied on by experts in that field").
28

After speaking with Plaintiffs' employees who created the RSU Spreadsheet, reviewing their calculations, and reviewing the supporting files, Ms. Trexler concluded that the RSU Spreadsheet accurately shows Plaintiffs' RSU expenses for the relevant employees in the relevant period, and included it in the Trexler Report.[3]

NSO's second contention—that Ms. Trexler lacks sufficient facts or data to show that the RSU Spreadsheet reflects the "actual costs" paid by Plaintiffs—appears to be made without any real explanation. Dkt. No. 502-2 at 8. Based on Mr. Pinsonneault's deposition testimony, it seems that NSO's position may be rooted in its expert's idea that "granting a share of stock is not the equivalent of giving . . . the same amount of cash that that stock is worth." Block Decl. Ex. C (Pinsonneault Dep. Tr.), at 279:19–22. Regardless, that NSO and its expert may disagree with how Ms. Trexler calculated the cost of the RSUs does not mean Ms. Trexler lacks a sufficient basis for her opinions, or that her RSU-related opinions should be excluded.

NSO's third contention—that Ms. Trexler lacks sufficient facts or data to assume that each salaried employee worked 2,080 hours—rests on a misunderstanding of Ms. Trexler's methodology. Dkt. No. 502-2 at 8. As part of her calculation of hourly labor costs (including costs associated with awarding RSUs), Ms. Trexler *assumed* that Plaintiffs' employees are compensated for 2,080 hours in a work year. *See, e.g.,* Dkt. No. 487-3, Ex. 3.1 n.5. NSO argues that this assumption is inappropriate because Ms. Trexler did not show that each employee actually worked 2,080 hours in 2019. *See* Dkt. No. 502-2 at 8. This is, at best, a challenge to Ms. Trexler's methodology, not to a supposed absence of facts or data. But even if properly framed, NSO's challenge fails. The Third Circuit has explained that because "a salaried employee is generally hired to perform a particular task" it is a "needless abstraction" to "attempt to measure how many days a salaried employee 'actually works' in a given year." *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 151 (3d Cir. 1998); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992), *as amended on denial of*

---

[3] To the extent NSO has questions about the nature or extent of Ms. Trexler's conversations and review of the documents that undergird her RSU-related opinions, she was prepared to address such questions in the deposition that NSO declined to take, and will be prepared to address such questions at trial. *See Hangarter*, 373 F.3d at 1017 n.14 (questions regarding the nature of an expert's evidence are properly explored during direct and cross-examination).

*reh'g* (May 22, 1992) (noting that salaried paralegals are "paid even when they're not working"). The same rationale applies here: it is a meaningless abstraction to inquire into how many hours Plaintiffs' employees actually worked because they were salaried and are not compensated based on the number of hours they work. In order to calculate an implied hourly labor cost for each employee, Ms. Trexler reasonably assumed that employees are compensated for 2,080 hours in a work year.[4] If NSO believes that Ms. Trexler's assumption regarding hours worked in a year is materially inaccurate, that goes at most to the weight of her testimony and does not support exclusion. *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 54 (S.D.N.Y. 2016) ("To the extent that [defendant] wishes to challenge [expert]'s calculation of average weekly hours, they may do so on cross-examination."); *JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 605 F. Supp. 3d 1295, 1309 (N.D. Cal. 2022) ("[T]he Court finds that [defendant]'s assertion that [expert] made an unsupported assumption and therefore reached faulty conclusions bears on the weight of his testimony, not its admissibility"). So too here. That Ms. Trexler calculated hourly RSU costs using an assumption regarding hours worked per year is no basis to exclude any of her testimony, and specifically no ground to support NSO's attempt to preclude her from testifying about RSUs.

In sum, NSO's criticisms regarding the factual bases for Ms. Trexler's RSU opinions are not warranted, and are certainly not a basis for exclusion. Ms. Trexler spoke with Plaintiffs' employees and considered documentary evidence, which provided sufficient facts and data upon which to base her opinions.

---

[4] Ms. Trexler undoubtedly has a solid basis for this assumption. *See Metaquotes Ltd. v. Metaquotes Software Corp*, 2023 WL 3506413, at *7 (C.D. Cal. May 17, 2023) (converting an annual salary to an hourly rate "assuming 2,080 hours of work per year"); *Clean Team Janitorial Serv., Inc. v. United States,* 171 Fed. Cl. 1, 11 (2024) (noting the typical forty-hour work week for a full-time employee); *In re Webster,* 2002 WL 32700045, at *2 (Bankr. D. Kan. Oct. 25, 2002) (assuming that a full year of work is equivalent to 2,080 hours); *Fillman v. Valley Pain Specialists, P.C.*, 2016 WL 192656, at *5 n.11 (E.D. Pa. Jan. 15, 2016) (awarding damages based on 2,080 hours of work per year); *Fact Sheet: Computing Hourly Rates of Pay Using the 2,087-Hour Divisor*, U.S. Office of Personnel Management, https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/computing-hourly-rates-of-pay-using-the-2087-hour-divisor/ (last visited Jan. 21, 2025).

### B. Ms. Trexler's Inclusion of RSUs Reflects Reliable Principles and Methods

NSO separately contends that Ms. Trexler's RSU opinions were not based on reliable principles or methods. Dkt. No. 502-2 at 9. As a preliminary matter, the inclusion or exclusion of certain forms of compensation (like RSUs) in labor costs is not itself a methodology—it is the selection of data. Experts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 124347, at *1 (N.D. Cal. Jan. 8, 2013) (finding that disagreement between experts on which data to use to calculate damages did not render the "experts' models unreliable" and was best addressed by cross-examination); *see also Scott*, 315 F.R.D. at 53 (noting the "liberal standard for admitting expert testimony, as well as the lack of a standard methodology for calculating a salaried employee's effective hourly rate"). Regardless, the methodology that Ms. Trexler used to form her opinions about Plaintiffs' RSU expenses was reliable: she spoke with Plaintiffs' employees, reviewed their calculations, and reviewed the source materials to verify the calculations. If NSO has specific questions about how Ms. Trexler calculated the figures in her report, they are free to ask them during cross-examination.

NSO also "strongly suggests," but does not affirmatively say, that including RSU expenses in labor cost calculations is not generally accepted. Dkt. No. 502-2 at 9. This argument is wrong, too. First, courts do consider stock-based compensation in labor cost calculations. *See Talkdesk, Inc. v. Pham*, 2024 WL 4866690, at *10 (C.D. Cal. Aug. 9, 2024) (agreeing that an appropriate remedy in a labor dispute could include "restoring stock" that was granted to an employee as part of their compensation); *Clougher v. Home Depot, U.S.A, Inc.*, 696 F. Supp. 2d 285, 293 (E.D.N.Y. 2010) (including stock options in calculation of plaintiff's compensation); *SEC v. Worldcom, Inc.*, 2003 WL 22004827, at *40 (S.D.N.Y. Aug. 26, 2003) ("Restricted shares offer a form of equity compensation that is distinctly superior for shareholders compared with stock options."); *Schachter v. Citigroup, Inc.*, 218 P.3d 262, 268 (Cal. 2009) (defining "wages" as including "contingent future rights of full ownership in . . . restricted stock"). Moreover, NSO's own damages expert acknowledges that "RSUs are granted as part of a package" in connection with a promotion or hiring. Block Decl. Ex. C (Pinsonneault Dep. Tr.), at 276:1–5. Second, because courts have recognized the "lack

of a standard methodology for calculating a salaried employee's effective hourly rate," NSO's suggestion "should be explored and highlighted through cross-examination and presentation of contrary evidence." *Scott*, 315 F.R.D. at 53 (citations omitted). Third, NSO's sole basis for their "suggest[ion]" is that their expert says he has not seen an expert include RSUs in labor cost calculations. *See* Dkt. No. 502-2 at 9. That assertion is entirely unsubstantiated, which unfairly prevents Plaintiffs from testing it. *Id.* A party needs more than its own expert's say-so to exclude an opposing expert. *See JH Kelly*, 605 F. Supp. 3d at 1311 (a "challenge plainly goes to the weight of the evidence" when a party "cites its own expert's testimony" that a method "is 'not appropriate for or used in dispute resolution engagement'" (internal citations omitted)).

### C. Ms. Trexler's Inclusion of RSU Compensation Fits the Facts of the Case

Underpinning all of NSO's RSU arguments is their assertion, without explanation, that RSUs are not a cost to Plaintiffs. *See* Dkt. No. 502-2 at 10. NSO does not elaborate on this point, but its own damages expert acknowledged that it is "possible that there is an economic cost associated with granting a restricted stock unit." Block Decl. Ex. C (Pinsonneault Dep. Tr.), at 280:23–281:1; *see also id*. at 293:6–12 ("[T]here may be an economic cost, [but] not on all occasions."). NSO's damages expert further acknowledges that "the granting of these RSU awards may be recognized as an expense and that some employer related taxes may be paid for such grants." Dkt. No. 508-4, Ex. B ¶ 60. Courts agree that RSUs are an expense that must be recorded by a company. *See, e.g., Kampe v. Volta*, 2024 WL 308262, at *4 (N.D. Cal. Jan. 26, 2024) ("The value of the RSUs are expenses to [the company] and [the company] was required to account for them as such."). The Ninth Circuit has explained that granting stock options to employees is a cost to the granting company because "the company could have sold its treasury stock at the market price, rather than grant an option on such stock to another." *SEC v. Jasper*, 678 F.3d 1116, 1120 (9th Cir. 2012). If NSO disagrees with Ms. Trexler's calculation of the cost of the RSUs, such a disagreement about the calculation of certain figures does not warrant exclusion.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny NSO's motion to exclude certain of Ms. Trexler's opinions.

Dated: March 20, 2025                     Respectfully Submitted,

                                              DAVIS POLK & WARDWELL LLP

                                              By:  */s/ Micah G. Block*
                                                      Greg D. Andres
                                                      Antonio J. Perez-Marques
                                                      Gina Cora
                                                      Craig T. Cagney
                                                      Luca Marzorati
                                                        (admitted *pro hac vice*)
                                                      DAVIS POLK & WARDWELL LLP
                                                      450 Lexington Avenue
                                                      New York, New York 10017
                                                      Telephone: (212) 450-4000
                                                      Facsimile: (212) 701-5800
                                                      Email: greg.andres@davispolk.com
                                                                antonio.perez@davispolk.com
                                                                gina.cora@davispolk.com
                                                                craig.cagney@davispolk.com
                                                                luca.marzorati@davispolk.com

                                                      Micah G. Block (SBN 270712)
                                                      DAVIS POLK & WARDWELL LLP
                                                      900 Middlefield Road, Suite 200
                                                      Redwood City, CA 94063
                                                      Telephone: (650) 752-2000
                                                      Facsimile: (650) 752-2111
                                                      Email: micah.block@davispolk.com

                                                     *Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*