Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         gina.cora@davispolk.com
         craig.cagney@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF GREGORY A. PINSONNEAULT**<br><br>Date: April 10, 2025<br>Time: 2:00 p.m.<br>Ctrm: 3<br>Before the Honorable Phyllis J. Hamilton<br><br>Action Filed: Oct. 29, 2019 |

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....... 1

ARGUMENT ....... 2

I. Mr. Pinsonneault Offers Inadmissible Legal Conclusions as to the Types of Damages that are Recoverable ....... 2

II. Mr. Pinsonneault Cannot Be a Mouthpiece for the Testimony of Others ....... 7

III. The Court Should Exclude Certain of Mr. Pinsonneault's Opinions on RSUs ....... 9

IV. The Court Should Exclude Mr. Pinsonneault's Testimony Regarding NSO's R&D-adjusted Profit Margin ....... 10

A. The Idisis Declaration Is Tardy and Unfairly Prejudicial and Should Be Stricken ....... 11

B. Even if the Idisis Declaration Stands, Mr. Pinsonneault's Opinions Cannot ....... 11

CONCLUSION ....... 14

i

PLS.' REPLY IN SUPPORT OF MOT. TO EXCLUDE CERTAIN EXPERT OPINIONS OF GREGORY A. PINSONNEAULT | CASE NO. 4:19-CV-07123-PJH

## TABLE OF AUTHORITIES

Page(s)

Cases

*Calvert v. Ellis*, 2014 WL 3897949 (D. Nev. Aug. 8, 2014) .......... 6

*CareDx, Inc. v. Natera, Inc.*, 2021 WL 1840646 (D. Del. May 7, 2021) .......... 12

*City of Seattle v. Monsanto Co.*, 2023 WL 8355799 (W.D. Wash. Dec. 1, 2023) .......... 11, 14

*In re ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014) .......... 8, 9

*Creative Computing v. Getloaded.com LLC*, 386 F.3d 930 (9th Cir. 2004) .......... 4

*Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463 (N.D. Cal. Mar. 15, 2016) .......... 7, 9

*Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 11701485 (N.D. Cal. Nov. 29, 2021) .......... 5

*Foshee v. Zuniga*, 2021 WL 1947560 (N.D. Cal. May 14, 2021) .......... 9

*GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) .......... 10

*Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) .......... 3, 7

*Humphreys v. Regents of Univ. of Cal.*, 2006 WL 1867713 (N.D. Cal. July 6, 2006) .......... 5

*Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461 (D. Mass. 2017) .......... 10

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671 (S.D.N.Y. Jan. 30, 2025) .......... 7

*Learning Care Grp., Inc. v. Armetta*, 2016 WL 3248178 (D. Conn. June 12, 2016) .......... 3

*Lin v. Solta Medical, Inc.*, 2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) .......... 2, 3

*LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551 (S.D.N.Y. July 16, 2002) .......... 3, 6

*Mendoza v. Intuitive Surgical, Inc.*,
2020 WL 1976472 (N.D. Cal. Apr. 24, 2020) ........ 8

*NetFuel, Inc. v. Cisco Sys. Inc.*,
2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) ........ 13

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
2016 WL 7319524 (S.D. Cal. Jan 12, 2016) ........ 8

*Ronaldo Designer Jewelry, Inc. v. Cox*,
2020 WL 1124599 (N.D. Miss. Mar. 6, 2020) ........ 3

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016) ........ 5

*Self v. Perspecta Enter. Sols., LLC*,
2023 WL 6020792 (S.D. Cal. Jan. 31, 2023) ........ 6

*Stephens v. Union Pac. R.R. Co.*,
935 F.3d 852 (9th Cir. 2019) ........ 11

*SuccessFactors, Inc. v. Softscape, Inc.*,
544 F. Supp. 2d 975 (N.D. Cal. 2008) ........ 3

*Trust v. Apple Inc.*,
2013 WL 12094821 (S.D. Cal. May 7, 2013) ........ 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
978 F. Supp. 2d 1053 (C.D. Cal. 2013) ........ 8, 9

*United States v. 1,014.16 Acres of Land*,
558 F. Supp. 1238 (W.D. Mo. 1983) ........ 8

*United States v. Cerna*,
2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) ........ 10

*United States v. Middleton*,
231 F.3d 1207 (9th Cir. 2000) ........ 4

*United States v. Pac. Gas & Elec. Co.*,
2016 WL 1640462 (N.D. Cal. Apr. 26, 2016) ........ 7

*United States v. Phillips*,
477 F.3d 215 (5th Cir. 2007) ........ 3

*Waymo LLC v. Uber Techns., Inc.*,
2017 WL 6887043 (N.D. Cal. Nov. 14, 2017) ........ 7

iii

PLS.' REPLY IN SUPPORT OF MOT. TO EXCLUDE CERTAIN EXPERT OPINIONS OF GREGORY A. PINSONNEAULT | CASE NO. 4:19-CV-07123-PJH

STATUTES & RULES

Fed. R. Civ. P. 26(a)(2)(B)(i) .......... 9

Fed. R. Evid. 702 .......... *passim*

Fed. R. Evid. 703 .......... 14

iv

PLS.' REPLY IN SUPPORT OF MOT. TO EXCLUDE CERTAIN EXPERT OPINIONS OF GREGORY A. PINSONNEAULT | CASE NO. 4:19-CV-07123-PJH

**PRELIMINARY STATEMENT**

NSO's opposition confirms that certain opinions by its damages expert, Mr. Gregory Pinsonneault, are inadmissible.

*First*, NSO proposes testimony from Mr. Pinsonneault in the form of inadmissible legal conclusions related to the categories of damages that Plaintiffs are entitled to recover. For example, Mr. Pinsonneault would testify that the law does not allow Plaintiffs to recover damages because, in his purported opinion, Plaintiffs were remediating "WhatsApp's *own* security vulnerabilities," *see* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 50, as opposed to "investigating and remediating *defendants'* breaches" and "breaking and entering" of WhatsApp servers as the Court found when determining liability. *See* Dkt. No. 494 at 6, 15. That is not economic analysis, but rather a legal argument about which Mr. Pinsonneault is unqualified to testify. NSO tries to defend the admissibility of Mr. Pinsonneault's legal opinions by arguing they merely "rebut Ms. Trexler's assertions that certain amounts included in her computation are Plaintiffs' actual damages." Dkt. No. 608-2 at 12–13 (internal quotations omitted). But the opinions of Plaintiffs' expert, Dana Trexler, are properly confined to her realm of expertise as an economist and are not subject to challenge as legal opinions. Whatever NSO's purported objection is to Plaintiffs' ability to recover their costs of investigation and remediation, Rule 702 does not permit NSO to raise those objections by presenting legal arguments through an expert witness.

*Second*, NSO proposes testimony from Mr. Pinsonneault in the form of inadmissible non-economic, legal, and technical opinions that he is unqualified to provide. This proposed testimony includes opinions that "WhatsApp was not obligated or required to provide [victim] notifications," Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 49, and that "Ms. Trexler's quantification . . . includes time for victim outreach that WhatsApp was not required to perform." *Id.* ¶ 47. NSO's opposition brief argues Mr. Pinsonneault merely seeks to "rebut" Ms. Trexler's report by "point[ing] to witness testimony in the record . . . ." including from other experts. Dkt. No. 608-2 at 2. However, experts cannot simply rehash testimony from other witnesses when they lack the relevant expertise. The Court should accordingly exclude Mr. Pinsonneault's testimony on these topics about which he lacks qualifications to opine.

*Third*, Mr. Pinsonneault offers opinions for which he has no reliable methodology and proffered no evidence in support. For example, Mr. Pinsonneault opines that equity compensation in the form of restricted stock units ("RSUs") has not been used to calculate damages in other cases. But this is blanket speculation by Mr. Pinsonneault, who offers no data to support that claim. There is no foundation for the premise that Mr. Pinsonneault's other cases have the same facts or are otherwise relevant here.

*Lastly*, Mr. Pinsonneault's opinion of NSO's research and development ("R&D")-adjusted profit margin for its Covert Android version of Pegasus relies on insufficient facts and data and is based on an unreliable methodology. Implicitly acknowledging these deficiencies, NSO unsuccessfully attempts to cure them by submitting with its opposition brief, a declaration from its CFO that contains new assertions that were not disclosed by NSO during fact discovery and never disclosed in any of the three reports Mr. Pinsonneault already submitted in this matter. As an initial matter, the Court should strike the untimely declaration in support of an expert opinion. Even assuming arguendo that the declaration can be considered, the declaration does not cure Mr. Pinsonneault's foundational failures in forming his opinion.

## ARGUMENT

### I. Mr. Pinsonneault Offers Inadmissible Legal Conclusions as to the Types of Damages That Are Recoverable

Mr. Pinsonneault's rebuttal report improperly includes opinions that "Ms. Trexler's quantification of the cost of WhatsApp's response either includes time for victim outreach that WhatsApp was not required to perform or includes time spent in order to resolve and remediate vulnerabilities that WhatsApp would have otherwise spent even in the absence of Pegasus and NSO." Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 47. Mr. Pinsonneault's opinions are inadmissible. Mr. Pinsonneault is not permitted to offer speculative testimony about what Plaintiffs would have done if NSO had not attacked WhatsApp, nor instruct the jury on the law.

It is well established that experts cannot opine on the categories of damages available in an action because such opinions are speculation, "attorney argument dressed up as an expert opinion." *Lin v. Solta Medical, Inc.*, 2024 WL 5199905, at *12 (N.D. Cal. Dec. 23, 2024); *see, e.g.*, *LinkCo,*

*Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *3 (S.D.N.Y. July 16, 2002) (barring damages expert from testifying about proper theory of damages). Courts regularly exclude expert testimony that would effectively "instruct[] the jury as to the applicable law," which is "the distinct and exclusive province of the court." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *see also Ronaldo Designer Jewelry, Inc. v. Cox*, 2020 WL 1124599, at *5 (N.D. Miss. Mar. 6, 2020) ("Thus, to the extent [the expert] opines as to which damages are available or appropriate for which claims, her opinions must be excluded."). The testimony Mr. Pinsonneault seeks to provide—regarding what categories of damages are or are not recoverable pursuant to the causes of action in this case—is precisely the type that courts reject as speculative and inadmissible instruction as to the law. *Compare* Dkt. No. 508-4, Ex. C (Pinsonneault Dep. Tr.) 215:13–216:7 (testifying that "victim outreach . . . activities are far away from kind of a tie to the actual . . . allegations in this case") *with Learning Care Grp., Inc. v. Armetta*, 2016 WL 3248178, at *7 (D. Conn. June 12, 2016) ("opinions on legal theories of recovery and which damages theories match up with which causes of action are inappropriate subjects for expert testimony, because they are legal conclusions").

*First*, as to victim notification expenditures, NSO seeks to admit Mr. Pinsonneault's opinion as to whether "costs related to providing [victim] notifications is appropriately considered actual damages to Plaintiffs caused by Defendants." *See* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 49 (stating "WhatsApp was not obligated or required to provide [victim] notifications"); *see also id*. ¶ 47 (referring to "victim outreach that WhatsApp was not required to perform"). As Plaintiffs discussed in their opening brief, those costs are recoverable under the CFAA. *See* Dkt. No. 510 at 7 (citing *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008)); *see also United States v. Phillips*, 477 F.3d 215, 224 (5th Cir. 2007) (holding that university's expenses "to notify other victims of [defendant's] data theft" was a loss recoverable under the CFAA). Mr. Pinsonneault's testimony on that topic constitutes improper legal conclusions, which "must be excluded." *Lin*, 2024 WL 5199905, at *12.

*Second*, as for remediation costs, Mr. Pinsonneault opines that Plaintiffs may have been remediating "WhatsApp's *own* security vulnerabilities," *see* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 50, as opposed to "investigating and remediating *defendants'* breaches" and "breaking

and entering" of WhatsApp servers. *See* Dkt. No. 494 at 6, 15. NSO's opposition confirms that it intends Mr. Pinsonneault to "criticize[] Ms. Trexler for failing to consider and address" the "propositions" that "(i) that Plaintiffs would have discovered and incurred expenses to remediate the WhatsApp security vulnerabilities from which this case arises whether or not Defendants exploited those vulnerabilities; or (ii) that Plaintiffs' remediation work to close the vulnerabilities made WhatsApp more secure." Dkt. No. 608-2 at 13. But these are not admissible expert opinions based on a reliable methodology. They are simple speculation. At best, these are matters for NSO's attorneys to raise when they cross-examine Ms. Trexler.

NSO's opposition essentially concedes that its purpose in proffering these opinions from Mr. Pinsonneault is to have him endorse NSO's legal arguments. For example, NSO defends Mr. Pinsonnault's opinions by arguing "that, in closing the vulnerability at the center of this case, Plaintiffs made WhatsApp's communications platform and the Company's own IT infrastructure more secure than it had been before they discovered the existence of the vulnerability (that Plaintiffs themselves created)." Dkt. No. 608-2 at 14. Again, that is a legal argument at best.[1] But in all events it is far outside Mr. Pinsonneault's claimed expertise, and not a proper topic for him to address.[2] The Court should not permit testimony from Mr. Pinsonneault that purports to instruct the jury that Plaintiffs

[1] Even as a legal argument, it is irrelevant. Courts including the Ninth Circuit have rejected such arguments, finding them "analogous to a thief arguing that I would not have been able to steal your television if you had installed deadbolts instead of that silly lock I could open with a credit card." *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 936 (9th Cir. 2004). NSO's attempt to distinguish *United States v. Middleton*, which Plaintiffs cite in their opening brief, is accordingly unavailing. In that case, the Ninth Circuit rejected a CFAA defendant's arguments that there was no evidence that an employee "was diverted from his other responsibilities or that such a diversion caused [the victim company] a financial loss." 231 F.3d 1207, 1214 (9th Cir. 2000). NSO argues that *United States v. Middleton* does not apply because "*security vulnerabilities . . . existed in WhatsApp's own code base before Defendants ever did anything to 'exploit' them*." Dkt. No. 608-2 at 14 (emphasis in original). However, NSO's argument contradicts the ruling of *Creative Computing*. Moreover, if NSO were correct, liability and damages under the CFAA or CDAFA would never come to bear: a CFAA defendant could always argue, absurdly, that it merely exploited—and plaintiff merely remedied—a preexisting "vulnerability."

[2] Mr. Pinsonneault cites nothing—not even NSO's technical experts—to support this proposition in his report. *See* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 54. NSO's opposition brief likewise provides no citation to support its incorrect assertion that "it is undisputed that, in closing the vulnerability at the center of this case, Plaintiffs made [WhatsApp] . . . more secure." Dkt. No. 608-2 at 13–14. Regardless, Mr. Pinsonneault lacks the required expertise to offer this opinion, and the Court should accordingly exclude it.

may not recover the costs they incurred to "clos[e] the vulnerability at the center of this case." Dkt. No. 608-2 at 14.

NSO's next attempt to defend Mr. Pinsonneault's improper opinions is to assert (incorrectly) that he is not "instruct[ing] jurors on what amounts are or are not actual damages," but seeks to "rebut Ms. Trexler's assertions that certain amounts included in her computation are Plaintiffs' actual damages." *Id.* at 11–12 (internal quotations omitted).[3] That is a distinction without a difference. Ms. Trexler's opinions offer economic analysis to quantify damages that Plaintiffs seek. Even if NSO has objections to those categories, that would not justify using its damages expert to present those objections.

None of the cases cited by NSO in its opposition brief stand for the proposition NSO advances, which is that a damages expert can offer non-economic testimony about what categories of costs are appropriately recoverable if they do so in the guise of criticizing or rebutting another expert. *See* Dkt. No. 608-2 at 10, 14. *Humphreys* is an employment discrimination case in which failure to mitigate damages was an affirmative defense properly submitted to the jury, and grounded in qualified expert testimony regarding damages. *Humphreys v. Regents of Univ. of California*, 2006 WL 1867713, at *6 (N.D. Cal. July 6, 2006).[4] *Humphreys* did not permit a damages expert to offer technical opinions. Further, even in *Humphreys*, the court held the damages expert "may not testify that [plaintiff] had an obligation to accept [another] position." *Id.* Here, Mr. Pinsonneault purports to opine on which of Plaintiffs' activities were technologically related to NSO's attacks and whether

---

[3] For Mr. Pinsonneault's opinions to be admissible, his testimony must satisfy the same requirements under the Federal Rules of Evidence and *Daubert* as an affirmative expert. *See Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 11701485, at *2 n.1 (N.D. Cal. Nov. 29, 2021) ("Expert opinions in rebuttal are subject to the same requirements as any other expert opinions."); *see also Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016).

[4] In *Humphreys*, defendant's damages expert included in his report criticism of plaintiff's expert for not analyzing "alternative [job opportunities] offered [to the plaintiff] and the compensation that may have been offered," which would operate to reduce the amount of damages. Report of George J. Fruehan at 2, *Humphreys v. Regents of Univ. of California*, 2006 WL 4731739 (N.D. Cal. March 1, 2006).

"WhatsApp was [] obligated or required to provide [victim] notifications." *See* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 49.[5] That is not allowed.

*Self* was also an employment discrimination case. In that case, the defendant's rebuttal damages expert criticized the use of certain "employee [earnings] comparators" used by the plaintiff's damages expert to calculate "Plaintiff's claims of underpayment and wrongful termination." *Self v. Perspecta Enter. Sols., LLC*, 2023 WL 6020792, at *6 (S.D. Cal. Jan. 31, 2023). Defendant's rebuttal expert substituted three employee comparators "who better-matched Plaintiff's responsibility, job duties, and level of oversight." *Id.* There was no evidence that the defendant's expert—a labor economist—lacked expertise to opine on "employee [earnings] comparators" in calculating underpayment damages. *See id.* NSO cites *Self*, including for the proposition that a rebuttal damages expert can "offer opinions quantifying plaintiffs' economic loss under alternative scenarios in which [the] Court might determine plaintiff was, or was not, underpaid during her employment by defendant." Dkt. No. 608-2 at 10 (citing *Self*, 2023 WL 6020792, at *4). However, here, Mr. Pinsonneault's opinions that Plaintiffs seek to exclude are not about calculating damages pursuant to "alternative scenarios" but rather about opining on the categories of damages that are available in an action, which are improper legal opinions that he is unqualified to provide. *See LinkCo, Inc.*, 2002 WL 1585551, at *3.

*Calvert* is also distinguishable. In that case, the court declined to exclude testimony from defendants' medical expert, which sought to rebut the lost income analysis of plaintiff's vocational expert for failing to consider the effect of plaintiff's medical issues on plaintiff's life expectancy (and therefore, lost income). *Calvert v. Ellis*, 2014 WL 3897949, at *7 (D. Nev. Aug. 8, 2014). In *Calvert*, not only did the medical expert have expertise in the subject on which he was opining—the effect of medical issues on life expectancy—but the expert was not seeking to provide a legal conclusion about the categories of damages recoverable in the action. *Id.*

---

[5] *See also* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 47 ("Ms. Trexler's quantification of the cost of WhatsApp's response [] includes time for victim outreach that WhatsApp was not required to perform").

## II. Mr. Pinsonneault Cannot Be a Mouthpiece for the Testimony of Others

NSO's defense of Mr. Pinsonneault's non-economic, legal and technical opinions appears to be that he will "point to witness testimony in the record . . . ." Dkt. No. 608-2 at 2. That is no basis for admissibility. "[E]xpert testimony that simply rehashes otherwise admissible evidence about which the expert has no personal knowledge is inadmissible." *United States v. Pac. Gas & Elec. Co.*, 2016 WL 1640462, at *2 (N.D. Cal. Apr. 26, 2016) (cleaned up); *see Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) ("When he is not simply speculating, [expert] often does no more than regurgitate information given to him by other sources (including self-serving assertions by the defendants)."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671, at *8 (S.D.N.Y. Jan. 30, 2025) ("expert who merely repeated testimony of a lay witness was not testifying as an expert witness based upon specialized knowledge, but rather [was] acting as a conduit for another witness's testimony in the guise of an expert's opinion") (alteration in original) (quotation omitted).

Here, Mr. Pinsonneault lacks the expertise to opine that "WhatsApp was not obligated or required to provide [victim] notifications," Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 49, and that "Ms. Trexler's quantification . . . includes time for victim outreach that WhatsApp was not required to perform." *Id.* ¶ 47; Dkt. No. 508-4, Ex. C (Pinsonneault Dep. Tr.), at 216:8–217:4, 217:17–21 (admitting he lacks expertise regarding "when victim outreach or notification is or is not required or appropriate in response to a cyber attack").[6] Instead of applying his expertise, Mr. Pinsonneault presents, with no independent analysis whatsoever, deposition testimony from two of Plaintiffs' fact witnesses. *See* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 48. An expert must always apply their expertise to the facts of the case, including deposition testimony. *See Hangarter*, 373 F.3d at 1018. Otherwise, the expert is merely acting as a mouthpiece for lawyer argument about evidence already in the case, and that is impermissible. *See, e.g., Waymo LLC v. Uber Techns., Inc.*, 2017 WL 6887043 at *6 n.3 (N.D. Cal. Nov. 14, 2017). Mr. Pinsonneault fails

[6] NSO's contention that Mr. Pinsonneault "does not opine on the necessity or propriety of Plaintiffs' decision to contact victims," Dkt. No. 608-2 at 15–16 (citation and quotation omitted), is clearly at odds with the plain text of Mr. Pinsonneault's report.

to apply his expertise here. Instead, Mr. Pinsonneault copies and pastes deposition testimony, does no analysis, and summarily concludes that "WhatsApp was not obligated or required to provide these [victim] notifications." Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 49. Such expert testimony is not helpful to the jury, is not a product of Mr. Pinsonneault's expertise, and should be excluded.

NSO also contends in its opposition that certain of Mr. Pinsonneault's non-economic opinions should be admitted because other experts support them. Dkt. No. 608-2 at 13–14. But again, that is no grounds to admit his testimony. Experts may, of course, rely on other expert testimony "if other evidence supports [the expert's] opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014); *see also Mendoza v. Intuitive Surgical, Inc.*, 2020 WL 1976472, at *7 (N.D. Cal. Apr. 24, 2020); *Trust v. Apple Inc.*, 2013 WL 12094821, at *5 (S.D. Cal. May 7, 2013). However, while experts may rely on another expert in part, they may not adopt another expert's opinion as their own, especially where they lack the relevant expertise.[7] Mr. Pinsonneault's opinions violate this rule.

For example, Mr. Pinsonneault should not be allowed to opine that "Plaintiffs would likely have eventually discovered these vulnerabilities" even absent NSO's attacks. Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 51. Mr. Pinsonneault has no relevant technical qualifications to offer that opinion. *See* Dkt. No. 510 at 10. Instead, he bases his opinion entirely on the testimony of NSO's CEO and NSO's technical expert, Terrence McGraw. *See* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 51–53. In fact, although Mr. Pinsonneault's Rebuttal Report quotes extensively from the deposition transcript of Mr. McGraw, he does no independent analysis of the opinions

[7] NSO's cited cases acknowledge this rule. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053 at 1066 (C.D. Cal. 2013) ("expert opinions may find a basis *in part* on what a different expert believes") (emphasis added) (citation omitted); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2016 WL 7319524, at *2 (S.D. Cal. Jan 12, 2016) (the expert "relied *in part* on other experts"). In *Trust*, an expert relied on another expert in "forming his own non-infringement opinions," but that reliance, unlike Mr. Pinsonneault's, was not mere regurgitation, because the two experts examined the evidence together "to determine[] what it was that was found." 2013 WL 12094821, at *5 (cleaned up). Similarly, in *United States v. 1,014.16 Acres of Land*, an expert relied on other experts, but only so that he could conduct his own calculations: "[Expert], a real estate appraiser examined the hydrology data provided by [another expert] and forestry data provided by [another expert] in arriving at his estimates of value." 558 F. Supp. 1238, 1242 (W.D. Mo. 1983).

he seeks to reproduce. *Id.* [8] This reliance on another expert's testimony "raises serious reliability questions." *See In re Conagra*, 302 F.R.D. at 556. Additionally, Mr. McGraw is subject to a separate *Daubert* challenge, Dkt. No. 514, and when "the soundness of the underlying expert judgment is in issue, the testifying expert cannot merely act as a conduit for the underlying expert's opinion." *In re Toyota Motor Corp.,* 978 F. Supp. 2d at 1066 (citation omitted). "Moreover, more scrutiny will be given to an expert's reliance on the information or analysis of another expert where the other expert opinions were developed for the purpose of litigation," which is also the case with the McGraw opinions here. *Id.*

**III. The Court Should Exclude Certain of Mr. Pinsonneault's Opinions on RSUs**

At his deposition, Mr. Pinsonneault opined that he has never seen RSUs included in a fully burdened labor rate in his other litigations. Dkt. No. 508-4, Ex. C (Pinsonneault Dep. Tr.) at 278:11–14; 281:9–18. Mr. Pinsonneault's lack of experience with RSUs does not mean that that RSUs were not properly considered by Ms. Trexler. Additionally, Mr. Pinsonneault never included that opinion in his reports and it is untethered to the facts of this case. *See* Dkt. No 510 at 11–12.

NSO argues that this testimony is permissible as a "supplement" to his report. Dkt. No. 608-2 at 16. But NSO concedes that it was not disclosed in his reports. *See id*. Federal Rule of Civil Procedure 26 is clear that an expert's disclosure must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Mr. Pinsonneault "may not testify to opinions not disclosed in his written expert report" or merely volunteered by him in his deposition. *Foshee v. Zuniga*, 2021 WL 1947560, at *8 (N.D. Cal. May 14, 2021). Here, Mr. Pinsonneault's reports offered specific challenges to Ms. Trexler's RSU calculations, but did not purport to offer a blanket opinion about treatment of RSUs in dozens of other, unrelated cases. *See* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 55–63. The Court should accordingly exclude these opinions.

---

[8] Mr. Pinsonneault also quotes extensively from the deposition transcript of Yaron Shohat, NSO's CEO, and does no independent analysis of that testimony. For the reasons discussed previously, that parroting of witness testimony is impermissible. *See, e.g., Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1.

In addition to the disclosure problem, this "other cases" opinion is not tethered to the facts of this case. Mr. Pinsonneault has never explained how his observations as an expert in unrelated cases inform his opinion as to whether Plaintiffs can recover the cost of RSUs here. *See* Dkt. No. 510 at 12. Absent such explanation, Mr. Pinsonneault's "blanket assertion[]" about RSUs "lacks any methodological explanation" and must be excluded. *See Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 473 (D. Mass. 2017). "Even where the reliability of expert testimony is largely dependent on the expert's experience, the witness must still explain how the experience leads to the conclusions reached, why the experience provides a sufficient basis for the opinions, and how the experience is reliably applied to the facts." *United States v. Cerna*, 2010 WL 11627594, at *6 (N.D. Cal. Dec. 17, 2010).

Moreover, permitting Mr. Pinsonneault's "other cases" opinion would be unfair, because undermining it would require investigating and distinguishing the dozens of unrelated (and undisclosed) cases on which the opinion purports to rely. By offering his opinion regarding RSUs in other cases solely on the basis of his own say-so, Mr. Pinsonneault unfairly insulates his opinion from proper cross examination. *See GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *2–6 (N.D. Cal. Apr. 16, 2014) ("[Defendant] cannot cross-examine [expert] on his assertions, all of which fundamentally reduce to taking his opinion based on 30 years of experience for granted."). The Court should not "simply take the expert's word for it that his or her experience renders the entirety of his/her testimony reliable." *Cerna*, 2010 WL 11627594, at *6.

## IV. The Court Should Exclude Mr. Pinsonneault's Testimony Regarding NSO's R&D-adjusted Profit Margin

As the opening brief showed, Mr. Pinsonneault's calculation of NSO's R&D-adjusted profit margin for its Covert Android version of Pegasus is inadmissible because it does not arise from sufficient facts and data or from a reliable methodology. *See* Dkt. No. 510 at 13–15. Implicitly acknowledging the deficiencies in Mr. Pinsonneault's report, NSO now submits with its opposition brief a declaration from NSO's CFO, Yifa Idisis, which introduces new facts that were not previously

in the record and not referenced in Mr. Pinsonneault's reports. *See* Dkt. No. 608-4 (the "Idisis Declaration"). The Court should accordingly strike the Idisis Declaration. Whether or not the Court does so, Mr. Pinsonneault's testimony regarding NSO's R&D-adjusted profit margin is inadmissible.

**A. The Idisis Declaration Is Tardy and Unfairly Prejudicial and Should Be Stricken**

The Court should strike the Idisis Declaration under Federal Rules of Civil Procedure 26 and 37. This new declaration was not disclosed during fact discovery, was never submitted with any of Mr. Pinsonneault's three reports, and stems from a declarant who is not on NSO's witness list or Rule 26(a) disclosures. Nonetheless, the Idisis Declaration is "aimed at remedying the deficiencies" in the methodology Mr. Pinsonneault applied in the three reports he already submitted in this matter. *City of Seattle v. Monsanto Co.*, 2023 WL 8355799, at *7 n.5 (W.D. Wash. Dec. 1, 2023) (internal quotation marks omitted). Courts have stricken such declarations, reasoning that they are "little more than a back-door effort around the Court's discovery deadlines" and disallowing "[a]ny argument implementing [the declaration's] provided rationale." *Id.* (citation omitted). NSO cannot now fill holes in Mr. Pinsonneault's flawed methodology by submitting with its opposition brief a new declaration, which the Court should accordingly strike.

**B. Even if the Idisis Declaration Stands, Mr. Pinsonneault's Opinions Cannot**

Regardless of whether the Idisis Declaration is stricken, Mr. Pinsonneault's opinions regarding an R&D-adjusted profit margin must be excluded for the reasons stated in the opening brief. *See* Dkt. No. 510 at 13–18.

*First*, Mr. Pinsonneault's opinion about calculating an R&D-adjusted profit margin lacks sufficient facts or data. Rules 702 and 703 require that "the expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (quoting Fed. R. Evid. 703). Here, Mr. Pinsonneault's report establishes that his only source for one of the key inputs to his opinion was an unsubstantiated (and self-serving) estimate from an NSO employee. Specifically, Mr. Pinsonneault's headcount ratio—which he uses to calculate his R&D-adjusted profit margin—requires both a numerator, which is the number of engineers who worked on R&D for covert Android applications, and a denominator, which is the number of engineers who worked

on R&D overall. As Mr. Pinsonneault admitted in his report, he drew the numerator solely from a "[c]onversation with Tamir Gazneli, September 18, 2024." Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) Sched. 2.1; *see also id.* ¶ 122 (stating "Mr. Gazneli estimated that between 29–32 R&D employees were working on covert Android installation vectors").[9] Neither Mr. Pinsonneault nor NSO's opposition brief cite to any documents supporting this numerator.[10] Mr. Pinsonneault's R&D-adjusted profit margin that depends entirely on Mr. Gazneli's "estimate" is precisely the type of opinion Courts exclude as lacking sufficient lacks or data. In *CareDx, Inc. v. Natera, Inc.*, for example, the expert's opinion on expense apportionment similarly used a numerator based only on a percentage estimate provided by a company executive. 2021 WL 1840646, at *3 (D. Del. May 7, 2021). Even though the denominator came from an SEC filing, the Court excluded the expert's opinion on apportionment because he "did not review [the company's] ledger or . . . invoices to test . . . [the] estimate" provided by company's CEO, and did not "interview any marketing or other personnel . . . who could provide more specific data." *Id.* The Court should accordingly exclude Mr. Pinsonneault's opinions on the R&D-adjusted profit margin for lack of sufficient facts and data.

*Second*, even if his R&D-adjusted profit margin were supported by sufficient facts or data, Mr. Pinsonneault fails to apply "reliable principles and methods" in making this calculation. Fed. R. Evid. 702. Mr. Pinsonneault's method is to apportion NSO's total R&D expenses based on estimated employee headcount figures alone.[11] That is unreliable because it is untethered to the facts of the

---

[9] In their opening brief, Plaintiffs pointed to three documents showing that there were over 300 employees working on R&D. *See* Dkt. No. 508-4, Exs. E–G. NSO argues these documents do not contradict Mr. Pinsonneault's analysis because they included employees "who do not work [sic] NSO or Q Cyber, but instead work for other affiliated companies on other products." Dkt. No. 608-2 at 21. However, this ignores that those same documents show that Pegasus constituted well over 70% of the sales of the combined company, implying there may have been meaningfully more than 32 R&D employees working on the covert Android version of Pegasus. *See* Dkt. No. 508-4, Ex. F (JEFF00007831) at -836).

[10] NSO's purported defense that Mr. Pinsonneault "reviewed with Mr. Gazneli pertinent corporate records that Defendants produced in discovery . . . to obtain both the numerator (the number of engineers who worked on covert Android Pegasus) *and the denominator (the total number of R&D employees)*" Dkt. No. 608-2 at 21 (emphasis added) obscures the point and does not refute the lack of support for the *numerator* in Mr. Pinsonneault's headcount ratio opinion.

[11] NSO's opposition seeks to compare Mr. Pinsonneault's methodology to Ms. Trexler's, which is not at issue here. Dkt. No. 608-2 at 19. To do so, NSO misdescribes Ms. Trexler's analysis, wrongly asserting that her report assumes "that *all* of Defendants' R&D expenses for the relevant time period can be attributed to the development of the covert Android installation vectors." Dkt. No. 608-2 at

case, and ignores, for example, any varying levels of compensation across product or business segments, R&D expenses besides labor costs, and record evidence indicating that the Covert Android vector was the most complicated and costly to develop. *See* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 120–127.[12] Courts regularly exclude proposed expert opinions that use unreliable methodologies to apportion expenses. *See, e.g.*, *NetFuel, Inc. v. Cisco Sys. Inc.*, 2020 WL 1274985, a *9 (N.D. Cal. Mar. 17, 2020).

In its opposition brief, NSO tries to defend Mr. Pinsonneault's methodology by arguing that "[b]ecause the vast majority of Defendants' R&D expenses are comprised of (i) direct labor costs (ii) and matters directly related to headcount (such as travel expenses, software license fees and overhead) (see Idisis Decl. ¶ 5), the percentage of R&D employees who worked on covert Android Pegasus is an excellent proxy for the percentage of Defendants' R&D expenditures related to covert Android Pegasus." Dkt. No. 608-2 at 20. However, the only basis NSO provides for this argument is a citation to the Idisis Declaration. *See id*. Not one of Mr. Pinsonneault's three reports makes this point, which appears for the first time in the Idisis Declaration. Further, there is not a single mention

---

19 (emphasis in original). NSO misunderstands Ms. Trexler's use of percentages: because Ms. Trexler was adding back R&D as a *percentage* of all NSO revenue to calculate the company's adjusted profit margin, she appropriately included the full amount of R&D (so as not to mismatch expenses for one product with revenues for all products); she then multiplied that *percentage* by the revenue *specifically attributable to the covert Android version of Pegasus* in order to arrive at her adjusted operating profit margin for the covert Android version of Pegasus. Dkt. No. 487-3 (Trexler Rep.) at ¶¶ 119–121. Notably, NSO does not move to exclude this portion of Ms. Trexler's opinion. *See* Dkt. No. 502-2. Nor could it, because Mr. Pinsonneault employed the same methodology when estimating a profit margin that includes all expenses, i.e., *not* adjusted for R&D *See* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 124 fig. 16. Neither side objects to that approach under *Daubert*. Where Mr. Pinsonneault's approach runs afoul of the standards of Rule 702 is when he applies an unreliable methodology to calculate an R&D-adjusted operating profit margin, based on insufficient facts and data.

[12] Mr. Pinsonneault's unusual conclusion—an R&D-adjusted operating profit margin of 35.4%—is further evidence that his methodology is unreliable. Mr. Pinsonneault's purported R&D-adjusted operating profit margin of 35.4% for the Covert Android Pegasus product is only *8.4 percentage points* higher than his non-R&D-adjusted operating profit margin of 27.0% itself, a remarkably odd conclusion mathematically when the combined company's R&D (of $67.4 million) as a percentage of the combined company's revenue of $216.5 million is 31.1%, implying that for the average NSO product, the R&D-adjusted operating profit margin should be *31.1 percentage points* higher (rather than 8.4 percentage points higher) than the non-R&D-adjusted operating profit margin. Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶ 124. This discrepancy is striking and almost impossible to square with the overwhelming evidence that Pegasus and its various installation vectors including Covert Android were NSO's "flagship" products and were complicated and costly to develop. *See, e.g.*, Dkt. No. 487-3 ¶ 121; Dkt. No. 596-2 at 1.

of conversations with Ms. Idisis in the portion of Mr. Pinsonneault's report regarding his methodology of using employee headcount to perform his R&D calculation (despite that other portions of his reports do cite to conversations with her). *See* Dkt. No. 508-4, Ex. B (Pinsonneault Rebuttal Rep.) ¶¶ 120–127. The Court should accordingly reject NSO's attempt—which in any event is unsuccessful—to cure deficiencies in Mr. Pinsonneault's three reports by submitting a new declaration in its *Daubert* opposition brief. *See City of Seattle*, 2023 WL 8355799, at *7 (striking declarations that introduced information neither "mentioned . . . in [the expert's] initial expert report nor supplements" and holding the "declarations should have been reflected in their reports or otherwise produced . . . prior to . . . motions challenging each respective expert's testimony"). In any event, the Court should exclude Mr. Pinsonneault's R&D-adjusted profit margin as unreliable due to its flawed methodology.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Exclude Certain Expert Testimony of Gregory A. Pinsonneault.

Dated: March 27, 2025

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: */s/ Micah G. Block*

Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
antonio.perez@davispolk.com
gina.cora@davispolk.com
craig.cagney@davispolk.com
luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*

15

PLS.' REPLY IN SUPPORT OF MOT. TO EXCLUDE CERTAIN EXPERT OPINIONS OF GREGORY A. PINSONNEAULT | CASE NO. 4:19-CV-07123-PJH