Greg D. Andres
Antonio J. Perez-Marques
Gina Cora
Craig T. Cagney
Luca Marzorati
   (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
             antonio.perez@davispolk.com
             gina.cora@davispolk.com
             craig.cagney@davispolk.com
             luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.,<br><br>                              Plaintiffs,<br><br>        v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>                              Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF TERRENCE MCGRAW**<br><br>Date:    April 10, 2025<br>Time:   2:00 p.m.<br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

**TABLE OF CONTENTS**

<u>PAGE</u>

INTRODUCTION ..........................................................................................................................1

ARGUMENT ...............................................................................................................................2

I.    The Court Should Exclude Mr. McGraw's Opinions Because They Have No
       Relevance To Plaintiffs' Damages......................................................................................2

       A.    Mr. McGraw's Opinions Contradict the Court's Rulings.................................2

       B.    Mr. McGraw's Opinions Are Not Relevant to Remedies................................4

       C.    The Court Should Exclude Mr. McGraw's Opinions That Amount to, or
              Depend Upon, Unfounded Legal Conclusions .................................................8

II.   The Court Should Exclude Mr. McGraw's Opinions Regarding the Functionality
       of Pegasus ..........................................................................................................................9

       A.    Mr. McGraw Lacks Sufficient Facts or Data to Opine on How Pegasus
              Interacted with WhatsApp's Servers................................................................9

       B.    Mr. McGraw Disclaimed Any Opinions Regarding Pegasus's Operation
              on Target Devices ..........................................................................................11

       C.    The Court Should Alternatively Preclude NSO From Offering Expert
              Testimony Regarding Pegasus as a Discovery Sanction ...............................12

III.  The Court Should Exclude Mr. McGraw's Policy Opinions ....................................13

       A.    Mr. McGraw Lacks Sufficient Qualifications.................................................13

       B.    Mr. McGraw Lacks Any Reliable Methodology ...........................................14

CONCLUSION ...........................................................................................................................15

# TABLE OF AUTHORITIES

PAGE(S)

### CASES

*Lin v. Solta Med., Inc.*,
  2024 WL 5199905 (N.D. Cal. Dec. 23, 2024) ............................................................. 8

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014) ...................................................................................... 15

*Philip Morris USA v. Williams*,
  549 U.S. 346 (2007) ..................................................................................................... 5

*State Farm Fire & Cas. for Robinson v. Helen of Troy, LLC*,
  2017 WL 2774072 (W.D. Wash. June 27, 2017) ...................................................... 12

*United Servs. Auto. Assoc. v. Wells Fargo Bank, N.A.*,
  2019 WL 6896674 (E.D. Tex. Dec. 18, 2019) ............................................................ 6

### STATUTES & RULES

18 U.S.C. § 1030(a)(4) ......................................................................................................... 3

18 U.S.C. § 1030(c)(4)(A)(i)(I) . ......................................................................................... 3

18 U.S.C. § 1030(g) .............................................................................................................4

Cal. Penal Code § 502(e)(4) ................................................................................................. 6

Fed. R. Civ. P. 26 ............................................................................................................... 14

Fed. R. Civ. P. 37(b)(2)(A) ............................................................................................... 12

Fed. R. Evid. 403 ................................................................................................................. 6

## **INTRODUCTION**

Plaintiffs' motion to exclude the testimony of Terrence McGraw, NSO's technical expert, establishes that all of Mr. McGraw's opinions should be excluded under Federal Rule of Evidence 702 as either irrelevant, unreliable, or otherwise improper.  In its opposition, NSO admits, as it must, that the Court's order finding NSO liable for violating federal and state law rendered many of Mr. McGraw's opinions irrelevant.  NSO relied extensively on Mr. McGraw at the summary judgment stage, using his expert reports to assert that that the Court lacked jurisdiction over NSO, that NSO did not access any of Plaintiffs' computers without authorization, and that NSO did not cause Plaintiffs any loss or damage—all of which are requirements under the CFAA, the CDAFA, or for breach of contract.  The Court rejected each of those propositions in full.  Plaintiffs have established that Mr. McGraw's remaining opinions suffer from fundamental defects, and NSO's arguments should not prevent them from also being excluded.

*First*, Plaintiffs have established that Mr. McGraw's opinions have no relevance to the upcoming damages-only trial.  As a threshold matter, NSO attempts to revive many of Mr. McGraw's technical opinions, but they were considered and rejected in the Court's summary judgment ruling, and should therefore be excluded.  The Court should also prohibit NSO from repackaging Mr. McGraw's liability-related testimony as relevant to damages.  Mr. McGraw did not review any materials related to Plaintiffs' labor costs, which form the basis for Plaintiffs' request for compensatory damages.  Instead, the thrust of Mr. McGraw's proffered testimony is that Plaintiffs suffered no damage at all—a position that the Court has found to be incorrect.  NSO's efforts to smuggle in Mr. McGraw's already-rejected liability opinions through punitive damages testimony should likewise be denied.

*Second*, Plaintiffs have shown that Mr. McGraw's opinions regarding the functionality of Pegasus are unreliable and should be excluded, given that NSO rejected his request to review Pegasus source code in order to form a "definitive conclusion" about how Pegasus operates.  Mr. McGraw also acknowledged at his deposition that he did not (and was not asked to) conduct any analysis on the Pegasus agent—i.e., how the spyware operated on target devices.  Nonetheless, NSO seeks to proffer his testimony on these very issues.  The limitations that NSO chose to impose on its own

1

expert's analysis (denying Mr. McGraw's requests for needed information) render his testimony un-reliable and inadmissible.  In the alternative, his testimony regarding Pegasus should be excluded as a discovery sanction: NSO should not have the luxury of proffering expert testimony on matters that, in violation of Court orders, it denied its adversary the opportunity to test fully in discovery.

*Third*, Plaintiffs have demonstrated that the Court should exclude Mr. McGraw from his sweeping policy opinions about Pegasus and the harm of holding NSO liable (which the Court already has).  While NSO attempts to construct a *post hoc* methodology for Mr. McGraw's opinion that Pegasus is "lawful intercept" technology, it completely ignores the astonishing concessions that Mr. McGraw made at his deposition.  Mr. McGraw conceded that he has no legal training, no legal experience, and no basis to opine as to whether Pegasus is either "lawful" (which it is not) or even "intercept technology" (which NSO's own witnesses denied).  His planned characterization of Pegasus as "lawful intercept" technology is thus admittedly baseless, and also presents an acute risk of juror confusion.  Mr. McGraw also conceded that he has no idea who used Pegasus, or who it was used against—despite those being two of the three factors that he claimed made a technology "lawful."  Mr. McGraw's opinion that imposing liability would have "negative consequences" equally lacks any discernible methodology, and is in any event irrelevant now that liability has been found.

The Court should therefore exclude Mr. McGraw from testifying at the upcoming damages only trial.

## ARGUMENT

**I.    The Court Should Exclude Mr. McGraw's Opinions Because They Have No Relevance To Plaintiffs' Damages**

All of Mr. McGraw's opinions relate to issues that the Court has already adjudicated, or have no relevance to the issues that remain to be decided.  *See* Dkt. No. 513-3 at 6–9.

### A.    Mr. McGraw's Opinions Contradict the Court's Rulings

NSO acknowledges that the Court's decision finding NSO liable renders certain of Mr. McGraw's opinions irrelevant, and agrees that "Mr. McGraw will not opine as to [1] whether NSO targeted WhatsApp's California servers or [2] whether NSO exceeded authorized access to WhatsApp servers."  Dkt. No. 621 at 6.  The Court should therefore exclude all portions of the

1    McGraw Report that support these opinions.  *See* McGraw Rep. ¶¶ 108–144.[1]  NSO argues to pre-

2    serve at least four of Mr. McGraw's other opinions, but these are also inconsistent with the Court's

3    ruling on summary judgment.

4        ***Evading detection***.  NSO maintains that the Court's conclusion that NSO evaded detection

5    does not contradict Mr. McGraw's opposite opinion because the Court cited NSO's efforts to rede-

6    sign Pegasus, while Mr. McGraw focused on Pegasus's technical specifications.  Dkt. No. 621 at 7.

7    Yet the Court considered and rejected Mr. McGraw's view of Pegasus's technical specifications too.

8    It found NSO liable, and rejected Mr. McGraw's argument that Pegasus "passed through the

9    Whatsapp servers just like any other message would."  Dkt. No. 494 at 11.[2]

10        ***Obtaining information***.  NSO argues that the Court found only that NSO obtained data

11   "through" WhatsApp servers, and did not decide whether NSO obtained data "*stored on* WhatsApp

12   servers *from* WhatsApp servers."  Dkt. No. 621 at 7.  NSO reads the summary judgment opinion too

13   narrowly.  The Court concluded that it "need not resolve" the "statutory interpretation questions" of

14   whether an "alleged [CFAA] violator must 'obtain or alter' information from the same computer that

15   he 'access[es].'"  Dkt. No. 494 at 11–12.  That was because NSO both accessed and obtained infor-

16   mation from the "same computer": WhatsApp's servers.

17        ***Loss to Plaintiffs***.  In its opposition, NSO again argues that the Court stopped short of finding

18   that Plaintiffs suffered losses.  Dkt. No. 621 at 7–8; *see also*, *e.g.*, Dkt. No. 600 at 6.  NSO again

19   misreads the Court's opinion.  In finding NSO liable for breaching the WhatsApp Terms of Service,

20   the Court found that Plaintiffs "incurred costs investigating and remediating defendants' breaches."

21   Dkt. No. 494 at 15.  And in finding NSO liable for violating the CFAA, the Court necessarily found

22   that Plaintiffs suffered losses of at least $5,000.  *See* 18 U.S.C. § 1030(a)(4); *id.* § 1030(c)(4)(A)(i)(I);

23

24   ———————————

25   [1]  Mr. McGraw's expert report was previously filed at Dkt. No. 513-4, Ex. A, and is cited herein as
     "McGraw Rep."  Mr. McGraw's rebuttal report was previously filed at Dkt. No. 513-4, Ex. B,
26   and is cited herein as "McGraw Rebuttal Rep."

27   [2]  Though punitive damages require a higher standard of proof than liability under the CFAA, Dkt.
     No. 621 at 7, Mr. McGraw should not be permitted to confuse the jury by directly contradicting
28   the Court's findings.

1    *id.*  § 1030(g).  The upcoming trial is to determine the amount of Plaintiffs' compensatory damages,

2    but the Court has already rejected the notion that no damage or loss was incurred.

3       ***Alleged consequences of holding spyware companies liable***.  NSO claims that the Court's

4    finding on liability does not "contradict Mr. McGraw's opinions about the societal harms that could

5    result from prohibiting government surveillance technology."  Dkt. No. 621 at 8.  NSO fails to men-

6    tion that the relevant section of the McGraw Report does not discuss "prohibiting government sur-

7    veillance technology" (which this case is not about) but instead warns of the risks of "holding soft-

8    ware makers *liable*."  McGraw Rep. at 31; *id.* ¶ 154 (emphasis added).  As its title indicates, this

9    section of the McGraw Report plainly relates to NSO's liability, which is no longer an issue in the

10   case.

11      **B.**  **Mr. McGraw's Opinions Are Not Relevant to Remedies**

12      To the extent Mr. McGraw's opinions—all of which were squarely aimed at avoiding liabil-

13   ity—were not foreclosed by the Court's ruling on summary judgment, they are not relevant to any of

14   the issues that remain in the case.

15      ***Compensatory damages***.  In his reports and at his deposition, Mr. McGraw did not offer any

16   opinions about the amount of compensatory damages that Plaintiffs can recover.  *See* Dkt. No. 513-

17   3 at 9.  NSO's attempts to recast Mr. McGraw's technical opinions as opinions about compensatory

18   damages, *see* Dkt. No. 621 at 18–19, are unavailing.

19      *First*, Mr. McGraw's technical opinions—for instance, whether Pegasus "damage[d], im-

20   pair[ed], or compromise[d] WhatsApp's servers or service" or "alter[ed], damage[d], or delete[d] any

21   data on those servers," *id.* at 18—will not help the jury assess Plaintiffs' costs in responding to NSO's

22   May 2019 attack.  At trial, Plaintiffs' damages expert will present her conclusions on the amount of

23   time that certain of Plaintiffs' employees spent on this effort, and their fully burdened labor rate.  *See*

24   Dkt. No. 595 at 9.  Mr. McGraw has not reviewed Plaintiffs' damages expert report, or any of the

25   financial data that underpins Plaintiffs' response costs.  Neither the McGraw Report nor the McGraw

26   Rebuttal Report mentions the amount of time Plaintiffs' employees spent or the costs Plaintiffs in-

27   curred, let alone offers opinions about what portion of the response costs were not caused by NSO.

28   Even if Mr. McGraw were to convince the jury that NSO's attack on Plaintiffs was harmless (which

it was not), Mr. McGraw provides no opinions on how that would reduce the $444,719 in response costs that Plaintiffs claim.[3]

*Second*, Mr. McGraw's opinions on whether Plaintiffs suffered a "loss" under the CFAA contradict the Court's summary judgment ruling, *see supra* at 3–4, and cannot be converted into damages opinions now that NSO has been found liable. Tellingly, NSO cited these same opinions in opposing Plaintiffs' motion for summary judgment. *See* Dkt. No. 469 at 24 (citing the McGraw Report for the argument that "Plaintiffs' investigation and repair costs are not 'loss' under" the CFAA). The Court necessarily rejected that argument in finding NSO liable for violating the CFAA. Neither the McGraw Report nor the McGraw Rebuttal Report include any opinions delineating which, if any, of the $444,719 in response costs were "unreasonable" because they occurred after Plaintiffs "could have . . . closed their vulnerability" or because they "*improved* Plaintiffs' software." Dkt. No. 621 at 19. Mr. McGraw's opinions on "loss" instead reflect an attempt to persuade the jury that no damages were incurred, which would be inconsistent with the Court's summary judgment ruling.

**Punitive damages**. In awarding punitive damages, the inquiry must focus on "the conduct that harmed the plaintiff." *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007). Here, the jury will be tasked with determining whether the conduct that gave rise to liability—in particular, NSO's exploitation of Plaintiffs' infrastructure, and repeated attacks on Plaintiffs' servers even after Plaintiffs implemented security upgrades—merits awarding punitive damages against NSO. The McGraw Report and McGraw Rebuttal Report are silent on these issues. NSO admits that Mr. McGraw offers no opinions on NSO's development of Pegasus, including its reverse-engineering and decompiling of WhatsApp code. Dkt. No. 621 at 12–13. Mr. McGraw did not investigate the WhatsApp Installation Server ("WIS"), or how NSO obtained the private keys that it used to unlock the WhatsApp

---

[3] Mr. McGraw's opinions on the adequacy of Plaintiffs' security measures and practices are likewise unreliable. Dkt. No. 621 at 19. Mr. McGraw purports to apply standards based on documents that he admits he did not read, and that did not exist in 2019. Dkt. No. 513-4, Ex. C at 303:13–14, 304:3–5. Instead, Mr. McGraw relied on "blog posts" he found on Google. *Id.* at 307:2–3.

servers.  Dkt. No. 513-4, Ex. C at 241:4–15; Declaration of Antonio J. Perez-Marques in Support of

Plaintiffs' Reply ("Perez-Marques Decl.") Ex. B (McGraw Dep. Tr.), at 247:22–249:14.  Nor did Mr.

McGraw investigate what Pegasus did once installed on a mobile device.  Dkt. No. 513-4, Ex. C at

147:8–149:3.

NSO's attempts to link Mr. McGraw's testimony to punitive damages, Dkt. No. 621 at 20–

21, all fall short.

*First*, Mr. McGraw's proposed background testimony on the "lawful intercept" industry, *id.*

at 20, is far removed from NSO's conduct at issue.  For instance, activity that took place decades ago

and lawful conduct by other companies have no bearing on whether NSO's specific conduct was

oppressive, fraudulent, or malicious.  *See* Cal. Penal Code § 502(e)(4).  This is especially true because

Mr. McGraw by his own admission has no evidence that NSO followed "any strict legal process."

Dkt. No. 513-4, Ex. C at 101:7–13.  Courts routinely exclude proffered expert testimony about the

background of an industry within which a party might operate that has no actual connection to the

facts of the case.  *See, e.g.*, *United Servs. Auto. Assoc. v. Wells Fargo Bank, N.A.*, 2019 WL 6896674,

at *2 (E.D. Tex. Dec. 18, 2019).  In this case, background testimony from Mr. McGraw would simply

waste time and confuse the jury in a consolidated, damages-only trial in which NSO has already

evinced the intent to call 19 witnesses during its case-in-chief.  Fed. R. Evid. 403.

*Second*, Mr. McGraw's proposed testimony on "Pegasus's use of Plaintiffs' infrastructure,"

Dkt. No. 621 at 20, falls afoul of what the Court has already decided and should instruct the jury.  As

stated above, the Court rejected most of the core factual assumptions and opinions that make up Mr.

McGraw's technical testimony.  In addition, NSO deliberately steered Mr. McGraw away from the

critical facts showing NSO's fraud, oppression, and malice.  NSO admits that Mr. McGraw has no

opinions to give on NSO's research and development process or on NSO's repeated efforts to over-

come Plaintiffs' security updates, in spite of his purported rebuttal opinions.  *Id.* at 12–13.  And more

importantly, Mr. McGraw has no opinions on how NSO operated the WIS or the mechanisms by

which it communicated, which is the core of NSO's unlawful conduct as found by the Court.  Dkt.

No. 513-4, Ex. C at 240:24–241:2 ("I make no opinion on how NSO operated the WIS server or the

mechanisms by which it communicated.").  Indeed, Mr. McGraw and NSO's counsel insisted that

1    the operation of the WIS and NSO's harvesting of legitimate WhatsApp credentials—the crucial

2    activities that enabled NSO's unlawful conduct—were beyond the scope of Mr. McGraw's remit.

3    *See, e.g.*, Dkt. No. 513-4, Ex. C at 240:8–23; Perez-Marques Decl. Ex. B (McGraw Dep. Tr.), at

4    246:4–22, 248:13–17, 250:4–10, 250:20–251:1, 251:16–23, 253:22–254:3.

5        *Third*, as explained below, *infra* at 13–15, Mr. McGraw lacks a sufficient basis for his policy

6    opinion that Pegasus is a "legitimate lawful intercept tool," Dkt. No. 621 at 21, and such speculation

7    is unrelated to the conduct at issue in this case.    At his deposition, Mr. McGraw admitted that he has

8    only a "basic understanding of the approval process for use of lawful intercept technologies" in the

9    United States, and has no familiarity with such processes outside the United States.    Dkt. No. 513-4,

10    Ex. C at 83:12–84:18.    As it relates to Pegasus, Mr. McGraw "cannot say whether" the use of Pegasus

11    in any case was lawful or unlawful and "certainly can't say whether it was lawful in another country."

12    *Id.* at 101:21–23. The Court has already found that NSO unlawfully accessed Plaintiffs' computers,

13    and Mr. McGraw should not be allowed to advocate for a *post hoc* nullification under the guise of

14    punitive damages testimony.

15        *Fourth*, Mr. McGraw's arguments about whether NSO "compromised" Plaintiffs' servers or

16    "altered, damaged, or deleted data from those servers," Dkt. No. 621 at 21, should be rejected as

17    similarly inappropriate attempts to relitigate the Court's summary judgment ruling, and are thus ir-

18    relevant to punitive damages and confusing to a jury.

19        *Fifth*, NSO now claims that Mr. McGraw's opinions that Pegasus did not "evade detection"

20    are relevant to the jury's determination of punitive damages.    *Id.* at 7.    As stated above, the Court

21    rejected Mr. McGraw's contention about NSO's attempts to "evade detection" in finding that NSO

22    acted with an intent to defraud.    *See* Dkt. No. 494 at 12.    And Mr. McGraw's principal basis for this

23    opinion— "using genuine credentials that comply with a server's technical requirements is not a form

24    of hacking," McGraw Rebuttal Rep. ¶ 43—has already been rejected by the Court as an incorrect

25    legal argument against liability.

26        *Sixth*, NSO does little to hide that its final justification for Mr. McGraw's relevance to puni-

27    tive damages is a direct attack on the Court's liability finding.    In a single sentence, NSO twice

28    questions the Court's summary judgment ruling, saying that Mr. McGraw will rebut "allegations"

1    that Plaintiffs' security changes "somehow put NSO on notice" and that NSO's subsequent changes

2    "somehow constitute fraud." Dkt. No. 621 at 21. Yet these facts underpinned the Court's ruling, and

3    are not just "allegations." Mr. McGraw should not be able to offer directly contradictory testimony

4    to minimize NSO's punitive damages.

5        ***Injunctive relief.*** NSO's argument that Mr. McGraw's opinions are relevant to injunctive

6    relief, *id.* at 21–22, is misplaced. Because the parties agree that injunctive relief is a question for the

7    Court, *id.* at 21, arguments concerning the alleged relevance of Mr. McGraw's testimony to injunc-

8    tive relief would not justify presenting his testimony to a jury.[4] In all events, Plaintiffs move for a

9    permanent injunction based on the undisputed facts, and there is no need to complicate the damages-

10   only trial with unrelated expert testimony. *See generally* Dkt. No. 558; Dkt. No. 637.

11       **C. The Court Should Exclude Mr. McGraw's Opinions That Amount to, or Depend**

12           **Upon, Unfounded Legal Conclusions**

13       The Court should also exclude Mr. McGraw's opinion regarding "what, if any, damages or

14   loss Pegasus caused to WhatsApp," Dkt. No. 621 at 1, because it is explicitly framed in terms of an

15   ultimate issue of law. *See* Dkt. No. 513-3 at 8. NSO and Mr. McGraw cannot make inadmissible

16   legal opinions admissible by characterizing them as non-legal and disclaiming any legal expertise.

17   Moreover, Mr. McGraw's opinions on "loss" and "damage" mirror NSO's legal arguments. *Com-*

18   *pare* McGraw Rep. at 29 ("NSO did not damage any WhatsApp server") *and id.* at 30 ("NSO did not

19   cause WhatsApp any loss"), *with* Dkt. No. 600 at 5 ("Defendants did not do anything to harm the

20   operation of WhatsApp's computer systems."), *and id.* at 6 (arguing that "investigatory costs" are

21   not "'loss' under CFAA"). These opinions are "attorney argument dressed up as an expert opinion

22   and must be excluded." *Lin v. Solta Med., Inc.*, 2024 WL 5199905, at *12 (N.D. Cal. Dec. 23, 2024).

---

26   [4] Though NSO's opposition raises the possibility of having the jury hear evidence related to Plain-
27   tiffs' request for injunctive relief, *id.* at 22, it proposed just one week earlier that "the jury should
      be dismissed and the remaining equitable issues should be tried to the Court," which it claimed
28   would be in the "interests of judicial economy and convenience for the Court, jury, and parties."
      Dkt. No. 591 at 16, 18.

## II.    The Court Should Exclude Mr. McGraw's Opinions Regarding the Functionality of Pegasus

The Court should independently exclude Mr. McGraw from offering opinions about the functionality of Pegasus at trial.  In its opposition, NSO asserts that Mr. McGraw will testify "whether NSO fraudulently programmed Pegasus to evade detection," and "whether Pegasus took information stored on WhatsApp servers from those servers."  Dkt. No. 621 at 1.  However, Mr. McGraw admits that his request to review Pegasus code, in order to form a "definitive conclusion," was *denied* by NSO.  Dkt. No. 513-4, Ex. C at 68:18–20, 237:12–16.  He thus has not reviewed any computer code relating to the version of Pegasus that actually attacked Plaintiffs' servers, depriving Mr. McGraw of any sufficient facts or data on which to opine as to the functionality of that code.  *See* Dkt. No. 513-3 at 9–12.  As to the agent that operates on the target devices, Mr. McGraw disclaimed any opinions whatsoever at his deposition, and he should not be permitted to resuscitate them at trial.  Alternatively, based on the Court's conclusion that NSO's refusal to produce Pegasus production code was one of its "repeated[] fail[ures] to produce relevant discovery and fail[ures] to obey court orders regarding such discovery," Dkt. No. 494 at 9, the Court should preclude Mr. McGraw from offering opinions about how Pegasus operated.

### A.    Mr. McGraw Lacks Sufficient Facts or Data to Opine on How Pegasus Interacted with WhatsApp's Servers

Mr. McGraw's inability to review the Pegasus computer code that was used in attacks on Plaintiffs' servers renders his technical opinions about Pegasus's alleged functionality unreliable.  All of the technical opinions that Mr. McGraw intends to offer about Pegasus are framed in terms of what NSO or Pegasus allegedly *did not* do.  *See* McGraw Rebuttal Rep. ¶¶ 40–41 (opining that Pegasus did not obtain information from WhatsApp's servers or target devices); *id.* ¶¶ 42–45 (opining that Pegasus did not "evade[] detection by WhatsApp servers").  Mr. McGraw has no basis to categorically opine on the limitations of Pegasus's functionality given that he does not have a complete picture of how it operated.

In contrast to the full copy of Pegasus production code—which Plaintiffs requested and NSO improperly refused to produce, *see* Dkt. No. 494 at 9—none of the other sources that Mr. McGraw

9

reviewed conclusively shows how Pegasus operates, or gives Mr. McGraw any reliable basis to opine on Pegasus's limitations. *First*, the Pegasus code on the AWS Server produced by Plaintiffs contains only portions of the Pegasus spyware, and only shows how those portions functioned at a single point in time. *See* Dkt. No. 513-3 at 11–12.[5] *Second*, Mr. McGraw's reliance on Plaintiffs' internal documents, internal discussions, and deposition testimony, *see* Dkt. No. 621 at 10, suffers from the same flaw, as Plaintiffs' engineers who investigated NSO's attack also lacked access to the Pegasus production code. *See* Perez-Marques Decl. Ex. A, (Robinson Dep. Tr.) at 370:17–24 (describing Plaintiffs' unsuccessful efforts to pull the Pegasus code from servers linked to NSO in May 2019). *Third*, Mr. McGraw's generalized observations that other related technologies usually try to avoid damaging network infrastructure, Dkt. No. 621 at 10, provide no basis for an expert opinion about what Pegasus *did not* do when accessing Plaintiffs' servers.

As Plaintiffs set out in their motion, courts have repeatedly excluded the opinions of technical experts who offer opinions about the functioning of computer code that they did not review. *See* Dkt. No. 513-3 at 10–11. NSO's efforts to distinguish these cases on their facts, *see* Dkt. No. 621 at 10–11, are unpersuasive. For instance, NSO asks the Court to excuse Mr. McGraw's failure to review Pegasus code because he is only "opining about how Pegasus interacted with WhatsApp servers." *Id.* at 11. But Mr. McGraw admitted at his deposition that he did not, and was not asked to, investigate the interaction between the WIS and WhatsApp's servers. *See* Dkt. No. 513-4, Ex. C at 242:1–244:6. Even if Mr. McGraw did review this code, his opinions are not limited to Pegasus's interactions with the WhatsApp servers—they include opinions about Pegasus unrelated to WhatsApp's servers. *See, e.g.*, McGraw Rebuttal Rep. ¶ 34 (describing communications between Pegasus agent and Pegasus users that, according to Mr. McGraw, do not "interact with WhatsApp servers"); *id.* ¶ 37 (opining that NSO only "executes the Pegasus exploit chain against its own devices"). In all events, Mr. McGraw lacks a full picture of how Pegasus interacts with WhatsApp's servers, because

---

[5] NSO confusingly refers to "AWS server logs." Dkt. No. 621 at 10. This conflates two different sources of technical evidence: the Pegasus source code on an AWS server registered to NSO, and server logs captured by Plaintiffs' engineers showing the impact of the Pegasus production code on Plaintiffs' servers.

he lacks a full picture of how Pegasus operates.  His failure to review the source code underpinning his opinions mandates exclusion.[6]

**B.    Mr. McGraw Disclaimed Any Opinions Regarding Pegasus's Operation on Target Devices**

Mr. McGraw's opinions about how the Pegasus agent operates once installed on a mobile device are likewise unfounded and inadmissible.  *See* Dkt. No. 513-3 at 14.  In its opposition, NSO admits that it refused to provide Mr. McGraw with any code related to the Pegasus agent.  *See* Dkt. No. 621 at 12.  And NSO fails to address the fact that Mr. McGraw abandoned his opinions about the operation of Pegasus on victims' devices during his deposition: Under oath, Mr. McGraw expressly disclaimed any opinions "related to the exploit of the target device."  Dkt. No. 513-4, Ex. C at 147:1–4 ("That is not what I was asked to provide technical analysis for.  So it was not within the scope of my report, so I was not—not investigating something I wasn't asked to do."); *id.* at 148:9–15 ("Well, I didn't investigate the endpoint capabilities to any real degree because it was not something I was asked to go look at technically.  So any—any opinion that I would offer at this point would be just based on a cursory review of documentation.  It's not an opinion that I would be willing to stand by on the fly.").  Mr. McGraw later refused to "make an opinion in a legal proceeding that may have weight or bearing on something that [he] was not asked to research," and admitted that giving such an opinion "would be irresponsible on [his] part."  *Id.* at 148:21–149:2.  Given Mr. McGraw's admitted lack of investigation, the Court should preclude Mr. McGraw from offering any opinions about the Pegasus agent.  *See, e.g.*, McGraw Rep. ¶ 47; McGraw Rebuttal Rep. ¶¶ 34, 93.

---

[6]    NSO's refusal to produce Pegasus code does not have the same impact on the technical opinions offered by Plaintiffs' technical experts.  Both of Plaintiffs' experts appropriately acknowledged that NSO's refusal to produce Pegasus source code hampered their ability to offer opinions on Pegasus's operation.  *See* Dkt. No. 513-3 at 14 n.4 (describing expert report of David Youssef); Dkt. No. 509-4 at 2 (expert report of Anthony Vance).  And unlike Mr. McGraw, neither of Plaintiffs' experts' made definitive statements about what Pegasus spyware did not do, and instead cabined their opinions to the technological features they observed based on computer code. *See* Dkt. No. 627 at 3 (listing Mr. Youssef's technical opinions).

**C. The Court Should Alternatively Preclude NSO From Offering Expert Testimony Regarding Pegasus as a Discovery Sanction**

The Court has already concluded that NSO's failure to produce Pegasus source code was the "[m]ost significant" of its discovery violations.  Dkt. No. 494 at 9.  As Plaintiffs showed in their opening brief, even if Mr. McGraw's technical opinions were admissible, they should be precluded as a discovery sanction based on that violation.  *See* Dkt. No. 513-3 at 14–15.  NSO's arguments against the imposition of sanctions, Dkt. No. 621 at 13, both lack merit.  *First*, Plaintiffs respectfully believe NSO is incorrect in suggesting that the Court has "already chosen which . . . sanctions to impose" for NSO's discovery violations.  *Id.*  Plaintiffs prevailed at summary judgment without re-lying on sanctions to fill any evidentiary gap.[7]  The Court stated that it would "impose evidentiary sanctions when appropriate."  *Id.* at 9.[8]  *Second*, preventing Mr. McGraw from offering conclusive opinions on how Pegasus does or does not operate is a fitting sanction for NSO's failure to produce Pegasus production code.  NSO should not be permitted to proffer expert testimony on issues that it denied Plaintiffs the ability to fully test through discovery—and indeed on which it denied its own expert the information needed to make a "definitive conclusion."  Federal Rule of Civil Procedure 37(b)(2)(A) allows the Court to "prohibit[] the disobedient party from supporting or opposing desig-nated claims or defenses," including in connection with expert testimony, *see, e.g.*, *State Farm Fire & Cas. for Robinson v. Helen of Troy, LLC*, 2017 WL 2774072, at *1–2 (W.D. Wash. June 27, 2017) (precluding cross-examination of expert as sanction for failure to produce documents).  An eviden-tiary sanction is proper here.

---

[7]  The Court did impose evidentiary sanctions related to jurisdiction, but did so only *after* finding that the existing record supported jurisdiction.  *See* Dkt. No. 494 at 10 ("[T]he court reiterates its previous conclusion that the record supports a finding that defendants are subject to personal jurisdiction in this district.").

[8]  Plaintiffs decided not file an independent sanctions motion alongside their motion to exclude Mr. McGraw to avoid burdening with the Court with a separate dispute at the April 10, 2025 pretrial conference, but remain willing to follow whatever procedure the Court deems appropriate.

### III. The Court Should Exclude Mr. McGraw's Policy Opinions

Plaintiffs showed in their opening brief that the Court should also independently exclude Mr. McGraw from offering policy opinions, including about "the benefits to society from lawful intercept technologies and the negative public consequences that could result from prohibiting such technologies." Dkt. No. 621 at 1. Mr. McGraw lacks both the qualifications and the requisite methodology to offer policy opinions about "lawful intercept" technology. Dkt. No. 513-3 at 15–18. As to the characterization of Pegasus as "lawful intercept" technology, Mr. McGraw admits that he is unable to opine on the "lawfulness" of Pegasus's use, and that he conducted no analysis as to whether the use of Pegasus was lawful in any instance. *Id.* at 15–16. As to the purported benefits of Pegasus, or the "negative consequences" that would result from a finding of liability, Mr. McGraw has admitted this is nothing more than his own views on "moral culpability," and that he conducted no analysis in support. *Id.* at 17–18. Expert testimony is not admissible on such basis.

#### A. Mr. McGraw Lacks Sufficient Qualifications

Mr. McGraw's experience gives him no basis to offer opinions on whether Pegasus is "'lawful intercept' technology." Dkt. No. 513-3 at 15–16. As the term "'lawful intercept' technology" suggests, and as NSO admits, this opinion turns on whether Pegasus is, was, or can be "lawful." *See* Dkt. No. 621 at 17 (admitting that Mr. McGraw defines "lawful intercept technology" as technology used "to conduct *lawful* surveillance . . . under the *laws* and customs of the government customer[s]" (emphasis added)). NSO tries to signal that Mr. McGraw has some basis to opine on whether Pegasus is "lawful" by touting Mr. McGraw's experience "in the development and evaluation of technologies used under" various legal authorities, "determining" the "lawful use of surveillance and counterintelligence tools," and "navigating legal and ethical considerations." Dkt. No. 621 at 14.

However, NSO ignores all the concessions that Mr. McGraw made in his deposition. Mr. McGraw is "not a lawyer," has only a "basic understanding of the approval process for use of lawful intercept technologies" in the United States, and has no familiarity with such processes outside the United States. Dkt. No. 513-4, Ex. C at 83:18–84:21. As it relates to Pegasus, Mr. McGraw "cannot say whether" the use of Pegasus in any case "was lawful or lawful" and "certainly can't say whether it was lawful in another country." *Id.* at 101:21–23. Moreover, Mr. McGraw admitted that he has

1    no "insights into which customers of NSO may or may not have used this lawfully." *Id.* at 299:5–7.

2    Mr. McGraw has never "personally operated" Pegasus or any other lawful intercept tool under any

3    lawful authorization. *Id.* at 165:16. Given these admissions, Mr. McGraw lacks the qualifications to

4    determine whether a certain intercept technology is in any way "lawful."

5            **B.      Mr. McGraw Lacks Any Reliable Methodology**

6            Mr. McGraw's opinion that Pegasus is "lawful intercept" technology is not based on any

7    reliable methodology. Mr. McGraw failed to conduct any analysis to support his view. Furthermore,

8    the definition of "lawful intercept" technology that Mr. McGraw provided at his deposition exposes

9    the deficiencies of his methodology as applied, as Mr. McGraw admits that he lacks the crucial evi-

10   dence to determine whether Pegasus is in fact "lawful."

11           *First*, Mr. McGraw's failure to provide any definition of "lawful intercept" technology until

12   his deposition violates the disclosure obligations imposed by Rule 26, and undermines the validity

13   of his methodology. At his deposition, Mr. McGraw agreed that his "reports contain a complete

14   statement of the opinions [he] will express at trial in this matter" and that he has "not reached any

15   opinions other than those set forth in [his] report." *Id.* at 51:17–52:1. Throughout his two reports,

16   Mr. McGraw never actually explains why Pegasus is "lawful intercept" technology, and instead uses

17   the term without any explanation of why he thinks it applies to Pegasus or NSO. NSO attempts to

18   fix this shortcoming in its opposition by cobbling together a supposed methodology. *See* Dkt. No.

19   621 at 17. But the portions of the McGraw Report that NSO cites in explaining his purported "meth-

20   odology" do not offer any conceivable framework: ¶ 18 does not mention Pegasus or NSO at all, and

21   ¶ 46 merely declares "NSO . . . licenses LI software" and that NSO's "flagship LI product" is Pega-

22   sus.[9] Mr. McGraw's failure to disclose a methodology warrants exclusion of his opinion, particularly

23   because having an expert—without any analytical basis—characterizing Pegasus as a "lawful"

24

25

26   [9]   Mr. McGraw either failed to account for, or ignored, NSO's internal documents and executive
         testimony that described Pegasus as *different* than lawful interception. *See* Dkt. No. 513-3 at 17–
27       18. While NSO attempts to bridge the gap between the opinions of its technical expert and its
         chief technological witness in a footnote, *see* Dkt. No. 621 at 17 n.3, there is no indication that
28       Mr. McGraw's expert opinion adopts their attorney argument.

1   technology poses a significant risk of jury confusion (in addition to contradicting the Court's sum-

2   mary judgment ruling, *see supra* at 3).

3       *Second*, to the extent that Mr. McGraw revealed a methodology at his deposition, he subse-

4   quently admitted that he lacked crucial facts to support it.  At his deposition, Mr. McGraw suggested

5   that his characterization of Pegasus as "lawful intercept" technology relies on the identities of NSO's

6   customers, the identities of the targets, and the associated vetting procedures and safeguards.  *See*

7   Dkt. No. 513-3 at 18.  But Mr. McGraw admitted that he did not see a list of NSO's customers, did

8   not see a list of NSO's targets, and did no analysis of NSO's supposed vetting procedures.  *See id.* at

9   16–17.  In fact, Mr. McGraw admitted under oath that his opinion that Pegasus is "lawful intercept"

10  technology would change if any of the three factors he listed in his deposition were to change.  Dkt.

11  No. 513-4, Ex. C at 78:19–24.  NSO has long refused to produce information about the identities of

12  its customers, which it believes are irrelevant.  More recently, NSO has recently moved *in limine* to

13  exclude all evidence on Mr. McGraw's second factor—the targets—on grounds that the identities of

14  Pegasus victims are irrelevant.  Dkt. No. 601 at 5–7.  And in its opposition, NSO admits that Mr.

15  McGraw has no opinions on either NSO's customers or Pegasus's targets, Dkt. No. 621 at 16.  Given

16  that two of the three pillars of Mr. McGraw's opinion on what constitutes "lawful intercept" technol-

17  ogy have crumbled, his continued insistence that Pegasus is "lawful intercept" technology lacks the

18  required analytical rigor, and should be excluded.

19      *Third*, Mr. McGraw admitted that his opinion was not based on analysis, but merely reflected

20  his view on "moral culpability."  Dkt. No. 513-4, Ex. C at 102:17–19.  This admission confirms that

21  Mr. McGraw's policy opinions lack a sufficient methodology and intellectual rigor.  "Personal opin-

22  ion testimony is inadmissible as a matter of law under Rule 702."  *Ollier v. Sweetwater Union High*

23  *Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).  Mr. McGraw's opinions on what NSO now character-

24  izes as "societal harms," Dkt. No. 621 at 8, are unsupported personal opinions on morality that have

25  no place at a jury trial.  The Court should exclude them altogether.

26                                      **<u>CONCLUSION</u>**

27      For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' mo-

28  tion to exclude the expert testimony of Terrence McGraw.

Dated: ___March 27, 2025___          Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  _/s/ Antonio J. Perez-Marques_
       Greg D. Andres
       Antonio J. Perez-Marques
       Gina Cora
       Craig T. Cagney
       Luca Marzorati
         (admitted *pro hac vice*)
       DAVIS POLK & WARDWELL LLP
       450 Lexington Avenue
       New York, New York 10017
       Telephone: (212) 450-4000
       Facsimile: (212) 701-5800
       Email: greg.andres@davispolk.com
            antonio.perez@davispolk.com
            gina.cora@davispolk.com
            craig.cagney@davispolk.com
            luca.marzorati@davispolk.com

       Micah G. Block (SBN 270712)
       DAVIS POLK & WARDWELL LLP
       900 Middlefield Road, Suite 200
       Redwood City, California 94063
       Telephone: (650) 752-2000
       Facsimile:  (650) 752-2111
       Email: micah.block@davispolk.com

       *Attorneys for Plaintiffs*
       *WhatsApp LLC and Meta Platforms, Inc.*