# Exhibit 2

**UNREDACTED VERSION OF DOCUMENT PROPOSED**

**TO BE FILED UNDER SEAL**

JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
 jakro@kslaw.com
AARON S. CRAIG (Bar No. 204741)
 acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DECLARATION OF TAMIR GAZNELI IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**FILED UNDER SEAL**<br><br>**[UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL]** |

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

DECLARATION OF TAMIR GAZNELI                                   Case No. 4:19-cv-07123-PJH

I, Tamir Gazneli, declare as follows:

1. I am Tamir Gazneli, I have personal knowledge of the facts set forth herein, and except as otherwise stated, I could testify competently to each fact herein.

2. I am the Director of Research and Development at NSO Group. Based on my experience in that position, I am familiar with the operation of the Pegasus software, including the "Hummingbird" installation vectors ("Heaven," "Eden," and "Erised"), as those installation vectors existed between April 2018 and May 2020.

3. The Hummingbird installation vectors operated, in part, by sending WhatsApp messages to a target's WhatsApp application (or "client") on the target's mobile device. These WhatsApp messages contained code that was executed on the target's mobile device, but not on WhatsApp's servers. The code was written into certain fields of the messages sent over WhatsApp. NSO did not design these fields. Rather, these were fields that WhatsApp's servers allowed messages to include.

4. From the perspective of a Pegasus user, the Hummingbird installation of Pegasus was triggered by the user entering a surveillance target's mobile telephone number into a field in a program running on the user's laptop. In response, the program would instruct a server called the WhatsApp Installation Server ("WIS") to install Pegasus on the surveillance target's device. To do so, WIS would compose messages, which were then sent to the surveillance target's device over WhatsApp, using a genuine WhatsApp client and genuine WhatsApp credentials.

5. Thus, although WIS created the WhatsApp messages, those messages were sent to the target device (via WhatsApp servers) using a genuine WhatsApp client and genuine WhatsApp credentials. WIS could not itself connect to a WhatsApp server.

6. Each of NSO's government customers had its own set of genuine WhatsApp clients that Pegasus used to send WhatsApp messages to a surveillance target.

7. Those genuine WhatsApp clients were downloaded and activated through the normal procedures for downloading and activating WhatsApp clients, including the creation of

genuine authentication credentials that authorized the WhatsApp client to connect to WhatsApp servers.

8. Pegasus used these genuine WhatsApp clients and authentication credentials to connect to the WhatsApp system and to send the messages required for implementing the Hummingbird installation vectors.

9. Neither the WhatsApp client nor WhatsApp servers prevented, through any technological restriction or limitation, the messages sent by Pegasus from being sent to target devices. That is why those messages could be delivered at all.

10. The messages sent by Pegasus contained code created by NSO, but none of that code was executed on WhatsApp servers. The Pegasus code was executed only on target devices. The messages traveled through WhatsApp servers in the same way as any other message sent using a genuine WhatsApp client. Pegasus did not alter, delete, impair, or corrupt any information on WhatsApp servers.

11. When Pegasus would connect to WhatsApp using the genuine WhatsApp client and genuine authentication credentials, the WhatsApp servers would initially provide the same information they usually provide in response to any WhatsApp call. Specifically, the WhatsApp servers would check whether the target device had an active WhatsApp account and provide that information to the genuine WhatsApp client used by Pegasus. WhatsApp servers provide that information during every WhatsApp call initiated by any WhatsApp user, because WhatsApp cannot initiate a call with a callee who does not have a WhatsApp account.

12. When the target device processed the messages from WIS, the processing would cause the target device to download surveillance software (the Pegasus agent) from the NSO customer's servers.

13. Pegasus's "Heaven" installation vector sent messages containing code instructing the target device to connect to an IP address of an external server controlled by NSO's government customers. The information about the external server IP address and the instruction to connect to

1  that IP address were contained solely within the code sent by Heaven, not within any
2  communication sent by WhatsApp signaling servers.

3  14. At one point in my deposition, I was asked about a "forged server response" sent
4  by Pegasus. As I testified, that was a message sent by Pegasus—not by WhatsApp servers—that
5  target devices would interpret as a message from WhatsApp's servers. Pegasus did not instruct
6  WhatsApp's servers to send the "forged server response" to target devices.

7  15. It was the WhatsApp infrastructure (not Pegasus) that selected the set of IP
8  addresses corresponding to the WhatsApp relay servers available to Pegasus. Pegasus did not
9  control what set of IP addresses WhatsApp's infrastructure made available or what servers
10 received messages addressed to those IP addresses. The decision of which relay server IP address
11 in the set to use for any given connection was a decision made by the WhatsApp client (not by
12 Pegasus or NSO's WIS server). The WhatsApp client made that decision based on the respective
13 performance (i.e., latency) of the servers at the provided IP addresses, not the physical location of
14 any of those servers. The selection of server IP addresses by the WhatsApp infrastructure, and
15 Pegasus's choice of which of those IP addresses to use, are *runtime* decisions made *when an NSO*
16 *customer uses Pegasus*. At that time (when the customer uses Pegasus), NSO cannot see what
17 relay server IP addresses are available, let alone determine the physical locations of servers
18 corresponding to those IP addresses, let alone choose which IP address to use. The only role NSO
19 played in the choice of relay servers is to configure Pegasus to choose the relay server IP address
20 (from those offered by WhatsApp) using a genuine WhatsApp client, and the genuine WhatsApp
21 client chose based on lowest latency, not on the physical location of the servers corresponding to
22 the offered IP addresses.

23 16. NSO never installed the Pegasus agent on the device of a non-consenting third
24 party. NSO never used an installed Pegasus agent to obtain information from the device of a non-
25 consenting third party.

1  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 18th day of October 2024.

_____
TAMIR GAZNELI