# EXHIBIT R

*Unredacted Version
of Document
Proposed to be Filed
Under Seal*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                   OAKLAND DIVISION
 4   --------------------------------X
 5   WHATSAPP INC.                   :
 6   a Delaware corporation, and     :
 7   META PLATFORMS INC.,            :
 8   a Delaware Corporation          :
 9            Plaintiffs,            :
10        v.                         :   Case No.
11   NSO GROUP TECHNOLOGIES LTD.     :   4:19-cv-07123-PJH
12   and                             :
13   Q CYBER TECHNOLOGIES LTD.,      :
14            Defendants.            :
15   --------------------------------X
16
17            Deposition of SARIT BIZINSKY GIL
18                       LONDON
19           FRIDAY, SEPTEMBER 6TH, 2024
20                   8:19 A.M. BST
21
22     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
23
24
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

1  Deposition of SARIT BIZINSKY GIL, held at
2  the offices of:
3
4
5      DAVIS POLK & WARDWELL LLP
6      5 ALDERMANBURY SQUARE
7      LONDON
8      EC2 7HR
9      UNITED KINGDOM

Page 4

1  ALSO PRESENT:
2  SHIRA PLOTNIK, NSO GROUP
3  DANA TREXLER, STOUT (ZOOM)
4  VARDA YAARI, HEBREW INTERPRETER
5  MOR ILAN, HEBREW INTERPRETER (ZOOM)
6  PHILIP HILL, VIDEOGRAPHER, VERITEXT
7  CHRIS LANG, COURT REPORTER, VERITEXT

Page 3

1       A P P E A R A N C E S
2
3  ON BEHALF OF PLAINTIFFS WHATSAPP & META:
4      LUCA MARZORATI, ESQUIRE
5      ANTONIO PEREZ-MARQUES, ESQUIRE
6      GERSHAM JOHNSON, ESQUIRE
7      QUENTIN ULRICH, ESQUIRE (ZOOM)
8      DAVIS, POLK & WARDWELL LLP
9      1600 CAMINO REAL
10     MENLO PARK, CALIFORNIA
11     94025
12     LUCA.MARZORATI@DAVISPOLK.COM
13     GERSHAM.JOHNSON@DAVISPOLK.COM
14     ANTONIO.PEREZ@DAVISPOLK.COM
15
16 ON BEHALF OF DEFENDANTS & THE WITNESS:
17     AARON CRAIG, ESQUIRE
18     JOSEPH N. AKROTIRIANAKIS, ESQUIRE
19     KING & SPALDING LLP
20     633 WEST FIFTH STREET
21     SUITE 1600
22     LOS ANGELES, CALIFORNIA 90071
23     JAKRO@KSLAW.COM

Page 5

SARIT BIZINKSY GIL ..................9
    Examination by MR. MARZORATI     9
    Examination by MR. CRAIG       244

Exhibit 2041   Sarit Gil's Linkedin   10
               Profile
Exhibit 2001   [previously marked]    42
               Plaintiffs' notice of deposition of
               defendants, NSO Technologies
               Limited and Q Cyber Technologies
               Limited, pursuant to Federal Rule
               of Civil Procedure 30(b)(6).
Exhibit 2019   [previously marked]    51
               Q Technologies company overview,
               FPM-00025660 through 790
Exhibit 2042   WA-NSO-00118599,       76
               email of 3/19/2018, from Eran Gorev
               to Andrew Kowal
Exhibit 2043   FPM-00027140, an       82
               email from Kevin Wilson to Eran
               Gorev of 5/22/2018
Exhibit 2003   [previously marked]    90
               DIVITTORIO_WHATSAPP_00000058,
               WHATSAPP exchange, custodian:
               Terrence DiVittorio
Exhibit 2044   FPM-00012119,          112
               Pricing Policy Feb 13, 2014
Exhibit 2004   [previously marked]    135
               A contract dated December 17, 2015
Exhibit 2005   [previously marked]    144
               NSO_WHATSAPP_00000179 through 199,
               an agreement of November 11, 2018
Exhibit 2045   An A3 version of a     158
               Microsoft Excel spreadsheet that
               bears the Bates number (on the
               produced version) of
               NSO_WHATSAPP_00045858.

Page 6

| | | |
|---|---|---|
| 1 | Exhibit 2046    NSO_WHATSAPP_00000034 through 52, audited financial statement of NSO. December 31, 2019 | 216 |
| 3 | Exhibit 2047    DIVITTORIO_WHATSAPP_00000055 through 57, Whatsapp exchange, custodian: Terrence DiVittorio | 224 |
| 5 | Exhibit 2048    DIVITTORIO_WHATSAPP_00000050, Whatsapp exhange of 7/10/2018. Custodian: Terrence DiVittorio | 241 |

Page 7

Friday, September 6, 2024
(8:19 a.m.)

THE VIDEOGRAPHER: Good morning. We are going on the record. The time is 08:19 a.m. local time in London, United Kingdom, on today's date, September 6, 2024. My name is Philip Hill representing Veritext Legal Solutions.

This video deposition is being held at Davis Polk in London and is being taken by counsel for plaintiff.

Caption for this case is WhatsApp LLC et al versus NSO Group Technologies Limited et al. This case is being held in the United States District Court for the northern district of California, Oakland division. Case number 4:19-cv-07123-PJH.

The name of today's witness is Sarit Bizinsky.

Please will all counsel on the video Zoom conference link and counsel in the Davis Polk office in London please introduce themselves for the record.

MR. MARZORATI: Luca Marzorati, from Davis Polk & Wardwell. With me in the room is Antonio Perez-Marques and Gersham Johnson. On the Zoom is Dana Trexler, who is an expert at Stout, and who has -- is authorized to see highly confidential, attorneys' eyes only, information under the protective order.

MR. CRAIG: Aaron Craig, representing the witness and the

Page 8

defendants in the case. With me in the room are Joe Akrotirianakis of King & Spalding and Shira Plotnik of NSO Group.

THE VIDEOGRAPHER: Please will the interpreter introduce herself -- both interpreters -- one in the Davis Polk office in London, and the other one on the Zoom link.

THE INTERPRETER: Varda Yaari, for European Depositions.

THE INTERPRETER: Mor Ilan, for European Depositions.

THE VIDEOGRAPHER: Today's court reporter is Chris Lang, representing Veritext Legal Solutions. Please will the court reporter firstly swear in both the interpreters and then afterwards please swear in the witness. Thank you.

THE COURT REPORTER: Will counsel please stipulate that, in lieu of formally swearing in the witness, the reporter will instead ask the witness to acknowledge that their testimony will be true under the penalties of perjury, that counsel will not object to the admissibility of the transcript based on proceeding in this way, and that the witness has verified that she is in fact Sarit Gil?

MR. MARZORATI: That's okay with us.

MR. CRAIG: Yes, so stipulated.

THE COURT REPORTER: Would the interpreters please acknowledge that they will translate the questions and answers in this deposition to the best of their ability,

Page 9

under penalty of perjury?

THE INTERPRETER: I do.

THE INTERPRETER: I do.

THE COURT REPORTER: Ms Gil, do you hereby acknowledge that your testimony will be true under the penalties of perjury?

A. I do.

THE COURT REPORTER: Thank you. Please proceed.

SARIT BIZINSKY GIL
having acknowledged their testimony will be true under the penalties of perjury testified as follows:

MR. MARZORATI: Good morning.

A. Good morning.

By Mr. Marzorati:

Q. Would you please state your name for the record?

A. Sarit Bizinsky Gil.

Q. And do you prefer I address you as Ms. Bizinsky, Ms. Gil, Ms. Bizinsky Gil?

A. Whatever.

Q. Okay. Is Ms. Gil okay?

A. Ms. Gil is okay.

Q. Is this your first deposition?

A. Yes.

Q. Okay. I am sure your lawyers talked to you about this, but it is a question and answer format, so I will ask

3 (Pages 6 - 9)

Page 158

1  A. Good afternoon.
2  Q. Welcome back.
3     Can customers use defendants' Pegasus system without
4     paying for maintenance?
5  MR. CRAIG: Objection. Incomplete hypothetical.
6     Foundation.
7  A. As I explained before, customers who buy under the
8     perpetual deals must pay maintenance in order to
9     continue and get the support of the company, the updates
10    and the upgrades.
11 Q. So, as part of that maintenance payment, they are
12    entitled to the updates and the upgrades?
13 A. Yes.
14 Q. And you understand that defendants' technology needs,
15    occasionally, to be updated and upgraded?
16 MR. CRAIG: Objection. Foundation.
17 A. Err, yes.
18    (Exhibit 2045         marked for identification)
19 Q. I want to show you a document marked as exhibit 2045.
20    And we have printed it out in large format.
21    This is a document, a Microsoft Excel spreadsheet
22    printed out that bears the Bates number, on the produced
23    version, NSO_WhatsApp_00045858.
24    Ms. Gil, do you recognize this document?
25 A. Yes.

Page 159

1  Q. What is this document?
2  A. This document is the Excel spreadsheet that I prepared
3     for this deposition, with the instructions that I got
4     from my lawyers, in order to be able to estimate the
5     revenues that the company did in association with the
6     Android covert vectors. In the time period of 2018 to
7     2020.
8  Q. So this document was created for the purposes of this
9     deposition?
10 A. Yes.
11 Q. And no similar document exists outside of this document,
12    that's created for this litigation, right?
13 MR. CRAIG: Objection. Vague and ambiguous.
14 A. What do you mean by that?
15 Q. Sure.
16 A. Can you clarify?
17 Q. In the normal course of business, do defendants track
18    revenues attributable to covert iOS, or covert Android?
19    Is that something you do as part of your regular job?
20 MR. CRAIG: Vague and ambiguous. Go ahead.
21 A. In some of the agreements, as you will see later when
22    I explain it, in the CRM originally there was a split of
23    the portion of the covert vectors. And typically, also,
24    the covert Android. So, in this respect, this was done
25    at a time when the agreement was signed.

Page 160

1  Q. So, certain numbers in the document existed outside of
2     this document, but this was a document created for the
3     purpose of this deposition, correct?
4  A. Yes, but all the revenues that we got -- and the
5     starting point of this is the revenues of the company,
6     which are part of the financial, audited financial
7     results that the company had.
8  Q. When you say "the company", what are you referring to?
9  A. I am referring to NewCo consolidated reports, and this
10    is where I got all the revenues.
11 Q. From the consolidated financial reports of NewCo?
12 A. Yes.
13 Q. And is that the current name of that company? It is
14    still known as NewCo?
15 A. This is the name that I know, yes.
16 Q. Okay. What's your involvement in preparing the
17    company's audited financial statements?
18 A. No involvement.
19 Q. Okay. So let's take a look at the spreadsheet. Column
20    A of this spreadsheet is entitled "account number",
21    correct?
22 A. Yes.
23 Q. And what does account number refer to?
24 A. So each account number is a customer of the company,
25    an anonymized number.

Page 161

1  Q. So each company, by each law enforcement agency within
2     a country, correct?
3  MR. CRAIG: Objection to form.
4  A. It is each customer that has a system of any kind, of
5     the company.
6  Q. Okay. Were the account numbers created for the purpose
7     of this spreadsheet, or do they exist elsewhere?
8  A. They were prepared for this spreadsheet.
9  Q. So if there is another document that says "customer
10    number 4", it's not the same -- there is no way to
11    guarantee it is the same account number 4 in this
12    document, correct?
13 A. Correct.
14 Q. And what order were the customers labeled in?
15 A. Just the order that I got from the way that the Excel of
16    the revenue is done. And it is alphabetical, if
17    I remember. Yes.
18 Q. Okay. You mentioned an Excel of the revenue. What's
19    that?
20 A. This is how I got the information from the finance
21    department, in an Excel of the entire 2018 until end of
22    2020 results. Full results. Full.
23 Q. So the finance department keeps an Excel of revenue per
24    customer --
25 A. Yes.

Page 174

1  Q. The terms "Storm", "Spider", "Momento", and "Maestro"
2     are on this spreadsheet. Is it fair to say that these
3     correspond to the products you can't talk about due to
4     DECA regulations?
5  A. Yes.
6  Q. Okay. Are all of these products offered for sale by
7     defendants?
8  A. Yes.
9  Q. Again, are you aware of certain of defendants' corporate
10    entities selling certain products? I would like to
11    understand is one product an NSO product, is one product
12    a Q product, or are they all sold variously?
13 MR. CRAIG: Object to the form of the question.
14 A. Can you translate?
15    Okay, so if I understand correctly your question,
16    and you were asking whether there is a change, or there
17    is a difference between what is sold by either of the
18    entities, then I say that there is no difference, and it
19    doesn't matter whether -- which entity, legal entity,
20    sold the product.
21 Q. To return to one of the first questions I asked you,
22    your legal employer is Q Cyber of Israel, correct?
23 A. Yes.
24 Q. Do you -- in your day to day work in 2018 and 2019, did
25    you perceive any difference between people who worked

Page 175

1     for Q Cyber Israel and NSO Group? Was there anything
2     that was specific to one company or to the other?
3  MR. CRAIG: Object to form. But go ahead and answer.
4  A. I don't know.
5  Q. You don't know, or you didn't perceive anything?
6  A. I didn't perceive anything.
7  Q. Okay. So we talked about columns C through K, and we
8     just talked about column L, which is "product". Is
9     column L information that is in the finance spreadsheet
10    as well?
11 A. Yes.
12 Q. Okay. Let's now look at column M, which is "total sum
13    in thousands of dollars for relevant revenue within
14    2018", do you see that?
15 A. Yes.
16 Q. Is this column in the finance spreadsheet?
17 A. No.
18 Q. Okay. How did you calculate -- did you calculate column
19    M?
20 A. Yes.
21 Q. And how did you calculate column M?
22 A. So wherever there is a -- this was like a pro rata,
23    straightforward calculation for the revenues, for the
24    relevant vector, according to the relevant timeframes
25    that I got that these vectors, the covert Android

Page 176

1     vectors, were operational. If relevant to the customer
2     at all.
3  Q. And who gave you information about dates where the
4     relevant vectors were operating?
5  A. I got it from my lawyers.
6  Q. Okay.
7  A. Yes.
8  Q. And what dates were used for those periods?
9  A. So, in 2018 it was, I think, 79 days out of the quarter.
10    I don't remember exactly the dates but it was 79 days of
11    the quarter for Q4. Then, in Q1, we took the entire
12    Q1/2019. And then, I think, 40 something days in
13    Q2/2019 and then in Q1/2020. And in Q2/2020, it was,
14    I think, 60 days in the first quarter and 40 days in the
15    other quarter. If I am not mistaken. But ...
16 Q. So your lawyers gave you dates to calculate the relevant
17    revenue within these years, is that correct?
18 A. Yes.
19 Q. What is your understanding of what these dates are?
20 MR. CRAIG: Well, let me just admonish you to not reveal any
21    communications with your lawyers in trying to answer
22    that question. If you can answer that question without
23    taking into account any information you got from your
24    lawyers, then you should try to do so.
25 A. So, as I said, in this period of time there was any

Page 177

1     covert Android vector that was operational.
2  Q. Did you know that information before speaking with your
3     lawyers? The dates in these periods when covert
4     Android --
5  A. No.
6  Q. No you didn't?
7  A. No.
8  Q. If your lawyers had given you different dates to
9     calculate the vectors, would you have used those?
10 A. Yes.
11 Q. Okay. Did you do any of your own independent work to
12    confirm that these are the days the covert vectors were
13    operational?
14 A. Again, sorry?
15 Q. Did you do any of your own independent work to confirm
16    that these were the days where these covert vectors were
17    operational?
18 A. Yes.
19 Q. What work was that?
20 A. I asked the head of R&D to send me as well the dates.
21 Q. And were those dates the same dates that you were
22    provided by your lawyer?
23 A. Yes.
24 Q. And when did the covert -- excuse me. When did the
25    head -- the head of R&D is Mr. Gazneli, correct?