JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
  *acraig@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:    (213) 443-4310

Attorneys for Defendants NSO GROUP TECHNOLOGIES
LIMITED and Q CYBER TECHNOLOGIES LIMITED

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>        Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS' RESPONSE AND OBJECTION TO PLAINTIFFS' SECOND PROPOSED ORDER GRANTING MOTION FOR PERMANENT INJUNCTION AND REQUEST FOR ADMINISTRATIVE STAY AND FOR BRIEFING SCHEDULE FOR MOTION TO STAY**<br><br>Judge:   Hon. Phyllis J. Hamilton<br><br>Action Filed:   10/29/2019 |

## I.    INTRODUCTION

Defendants object to Plaintiffs' second proposed order granting a permanent injunction on three grounds.[1]

*First*, the Order should take into account the provisions of 18 U.S.C. § 1030(f) and acknowledge that it "does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States," or Defendants' creating or maintaining technologies used for such purposes if Defendants have been contracted to do so.  The injunction should not deter U.S. government agencies from contracting for the use of Pegasus if they have decided to fulfill their mandates to the public by doing so.  *Second*, the injunction should not prohibit the collection of information from the WhatsApp "client applications" on the phones of the targets of NSO's sovereign customers in ways that do not require any use of WhatsApp servers, because that conduct was never challenged in the case or held unlawful by the Court, and because such a provision would prohibit foreign sovereign governments from collecting information from foreign targets that is not unlawful in those foreign countries and that would interfere with the delicate balance between law enforcement interests and privacy rights worldwide—a balance that every country has the right to decide for itself.  *Third*, Plaintiffs' proposed order makes virtually meaningless the Court's admonition that "foreign sovereign governments should be excluded or carved out from any injunctive relief" (Dkt. 802 at 13-15), including by requiring the NSO to disable the access of those foreign sovereign governments to systems that "use, access or depend on the WhatsApp Platform."  Defendants are attaching hereto a revised proposed injunction, in both clean (Exh. 1) and redline (Exh. 2) form, that corrects these defects in Plaintiffs' proposals.

In light of the novelty of the application of the facts of this case to CFAA and CDAFA, the many difficult issues the Court has acknowledged will need to be decided by the Court of Appeals,

---

[1] NSO maintains all arguments it raised in opposition to Plaintiffs' Motion for Permanent Injunction.  By filing these objections, NSO does not intend to waive those arguments or concede that any injunction is proper.

1    and the irreparable and irreversible damage this injunction would cause not only to NSO's business

2    but to law enforcement and intelligence efforts around the world, Defendants will move the Court

3    to stay the permanent injunction pending appeal.  Defendants request that the Court should set a

4    briefing schedule on that motion and, to preserve the status quo, administratively stay any

5    injunction until the Court resolves the motion to stay.

6    **II.     ARGUMENT**

7         **A.     The Injunction Should Incorporate the CFAA's Law-Enforcement Exception.**

8         The CFAA excepts domestic law enforcement activities: "This section does not prohibit

9    any lawfully authorized investigative, protective, or intelligence activity of a law enforcement

10   agency of the United States, a State, or a political subdivision of a State, or of an intelligence

11   agency of the United States."  18 U.S.C. § 1030(f).  This language should be incorporated into the

12   Court's injunction because, without it, the injunction would appear to prohibit inarguably lawful

13   conduct which cannot be enjoined consistent with U.S. law.

14        It is reasonably foreseeable that a law enforcement or intelligence agency of the United

15   States will use Pegasus.[2]  Read literally, Plaintiffs' proposed injunction would interfere with the

16   United States' ability even to consider using Pegasus for its own law-enforcement or intelligence

17   operations.  If a U.S. law enforcement or intelligence agency again wishes to use Pegasus in a time

18   of domestic crisis or in furtherance of a law enforcement or intelligence operation, neither it nor

19   NSO should need to initiate judicial proceedings to clarify whether the Court's injunction prohibits

20   the executive branch of the United States from doing so.[3]  This can be avoided simply by

21   incorporating the CFAA's law-enforcement exception into the injunction, and the Court should do

22   so.

23

24   _____

     [2] In 2018, the FBI licensed the use of Pegasus and the CIA assisted Djibouti in obtaining a Pegasus

25   license that same year.  (Dkt. 616-2.)  The record is also undisputed that the FBI turned to NSO
     for its assistance with crises.  (See Exh. 3 hereto.)

26   [3] Doing so would risk creating critical delays, which can be highly detrimental to time-sensitive

27   law enforcement and intelligence activities, particularly should the Court be unavailable to hear
     the request in an expedited fashion.

28
     _____
     DEFENDANTS' RESPONSE AND                    2            Case No. 4:19-cv-07123-PJH
     OBJECTION TO SECOND ORDER
     GRANTING PERMANENT INJUNCTION

**B.     The Injunction Should Not Prohibit the Collection of Data from End-User Devices If WhatsApp Servers Are Not Used.**

The Court asked Plaintiffs to clarify whether former paragraph 3(c) (now 3(b)) was intended to cover the collection of data from users' devices, given the arguments about whether the collection of data from target devices implicates the use of Plaintiffs' servers.  Plaintiffs have now clarified, through paragraph 3(b) and their broad definition of "WhatsApp Platform," that they are indeed asking the Court to enter an injunction prohibiting *any* collection of WhatsApp data from target devices, whether or not the collection involves any use of WhatsApp servers.  The Court should refuse, and instead should limit the collection of data to taking information from WhatsApp servers or, at the outer limits, using WhatsApp servers to transmit WhatsApp data from target devices to the Pegasus system.  This limitation would match the Court's liability holding, the lawful scope of any injunction in this case, and would strike a fair balance between protecting Plaintiff's rights and the law enforcement and intelligence needs of NSO's foreign sovereign customers.

*First*, the collection by NSO's foreign sovereign governmental customers of WhatsApp data sent or received by foreign targets is not even arguably unlawful if the messages are not transmitted back to the Pegasus system via WhatsApp servers.  On summary judgment, the Court found that NSO had violated the CFAA and CDAFA only for sending information "via" or "through" WhatsApp servers:   "While [NSO's WhatsApp Installation Server] does obtain information directly from the target users' devices, it also obtains information about the target users' device ***via the Whatsapp servers***."  (Dkt. 494 at 12, emphasis added.)  Based on this factual finding, "the court GRANT[ED] summary judgment in plaintiffs' favor on the CFAA claim under both section (a)(2) and (a)(4), on the theory that defendants exceeded their authorization.  Defendants appear to fully acknowledge that the WIS sent messages through Whatsapp servers that caused Pegasus to be installed on target users' devices and that the WIS was then able to obtain protected information by having it sent from the target users, ***through the Whatapp servers***, and back to the WIS."  (*Id.* at 12-13, emphasis added.)  The entire basis for liability was the fact that

1    information about the target users' devices was sent "through the WhatsApp servers."

2    Now, however, Plaintiffs want an injunction to prohibit the sending of WhatsApp data from

3    target devices directly to NSO's foreign sovereign customers, even if there is absolutely no use of

4    WhatsApp servers or any other device owned by Plaintiffs during that transaction.  The Court did

5    not find that the collection of data from target users' devices, through servers other than those

6    owned by WhatsApp, after Pegasus was installed on the devices, constituted a violation of the

7    CFAA or CDAFA.  Plaintiffs never even asked the Court to ***find*** that such conduct violated the

8    CFAA or CDAFA.  And there has been no showing (or even argument) that such conduct violates

9    the laws of the countries where it occurs.[4]

10    *Second*, while the Court has recognized that injunctions can prohibit legal conduct, that is

11    true only when doing so is "necessary and appropriate in the public interest to correct or dissipate

12    the evil effects ***of past unlawful conduct*** or to prevent ***continued violations*** of the law."  (Dkt.

13    802 at 16 (emphasis added).) That is not even arguably the case with respect to the mere collection

14    of WhatsApp messages from end-user devices, which is not unlawful and has no necessary

15    connection to the conduct this Court held was unlawful. WhatsApp messages can be and are

16    collected by NSO's government customers in ways that never interact with WhatsApp servers or

17    implicate any of the conduct this Court held unlawful. Accordingly, there is no lawful basis to

18    enjoin the collection of WhatsApp messages from end-user devices when that collection does not

19    involve the use of WhatsApp servers.

20    *Third*, enjoining the lawful collection of WhatsApp messages by foreign sovereign

21

22    _____

       [4]  The conduct Plaintiffs seek to enjoin—the collection of WhatsApp messages by foreign

23    governments from foreign target phones through servers not owned by WhatsApp—is also entirely
       foreign conduct without any nexus to the United States.  It is undisputed that WhatsApp does not

24    store on their own servers the messages sent and received using the WhatsApp client application—
       WhatsApp brags about this extensively in its marketing.  All such data is stored only on users'

25    devices.  The collection by foreign sovereign governments of WhatsApp messages sent and received
       by foreign target users and stored only on their foreign devices, and the transmission of those

26    messages solely using third party servers located in foreign countries, has zero nexus to the United
       States and cannot constitutionally be prohibited under the Foreign Commerce Clause or Due

27    Process Clause.

28    _____
       DEFENDANTS' RESPONSE AND                    4                Case No. 4:19-cv-07123-PJH
       OBJECTION TO SECOND ORDER
       GRANTING PERMANENT INJUNCTION

governments would have terrible consequences.  All of NSO's customers are sovereign governments (as confirmed by global auditing firm EY, formerly Ernst & Young).  (Dkt. 45-14.) It is undisputed that NSO's customers use Pegasus to collect information, which includes WhatsApp messages, from the phones of targets, so long as those phones are not U.S. phone numbers and are located outside the United States.

The Court has stated aloud that it does not know whether the use of Pegasus is lawful or unlawful around the world, and that it is "probably lawful" in some countries.  (May 2, 2025, Trial Tr.  1154:9-14.)  NSO's contracts and Israeli Ministry of Defense licenses require NSO's customers to use Pegasus only to prevent or investigate terrorism and serious crime, which is unquestionably proper activity of a sovereign government, and many governments have chosen to use Pegasus as a law enforcement and intelligence tool for this purpose.  They have weighed the costs and benefits of using Pegasus versus other methods of surveillance, and NSO's customers have decided that Pegasus is a valuable tool in fulfilling their goals of investigating and preventing terrorism and serious crime.[5]  Due to the ubiquity of WhatsApp as a medium for international encrypted communication, forcing NSO to remove from Pegasus the functionality of collecting information from WhatsApp users would hamstring the law-enforcement and intelligence efforts of NSO's foreign sovereign customers, including major U.S. allies such as Western European democracies.  This would represent a drastic shift in the delicate balance between security and privacy that each of these nations has struck.  Because of this, and the simple fact that collecting WhatsApp messages from target devices and sending them over servers that WhatsApp does not own is lawful conduct in the countries where it takes place and has never been held unlawful in the United States, the injunction should not cover that conduct.  Any such injunction should be limited to collecting information *from WhatsApp servers*, or alternatively, *using WhatsApp servers* to transmit information from client devices back to the Pegasus system.

---

[5] While Plaintiffs have inserted into their arguments throughout the case, over and over, that some of these governments use Pegasus against targets that Plaintiffs think are "good guys," there has not been evidence to support that.  Nor is it up to Plaintiffs or, with all due respect, to the Court to decide how other nations may conduct surveillance operations under those nations' own laws.

Plaintiffs' proposed section 3(a) should likewise be clarified to state that it is not intended to prohibit the collecting of WhatsApp messages of targets by sending them via servers that are not owned by WhatsApp, as the language "interacts with … any aspect of the WhatsApp Platform" is ambiguous.

**C.      The Exclusion of Foreign Sovereign Governments Should Be Meaningful.**

In its Order, the Court decided that "foreign sovereign governments should be excluded or carved out from any injunctive relief." (Dkt. 802 at 13-15.)  Presumably, the Court intended this exclusion to be meaningful and not a mere technicality.  Plaintiffs' proposed injunction pays lip service to the Court's Order by excluding foreign sovereign governments from its definition of Prohibited Parties.  This is not meaningful, however, because the effect of Plaintiffs' proposed injunction on NSO's foreign sovereign customers would be identical with or without this language. For example, as discussed above, paragraph 3's broad prohibition on the mere collection of data from WhatsApp users would directly prohibit foreign government agencies' law-enforcement and intelligence investigations.  In addition, paragraph 4's requirement "to disable customer access to any and all computer code or technologies that use, access, or depend on the WhatsApp Platform" would have a dramatic effect on ongoing (and future) law enforcement and intelligence operations of those foreign sovereign governments and would have the same effect as if the injunction applied against NSO's customers.

Defendants' proposed injunction would give meaning to the Court's prior direction.  It makes clear that the disabling of customer access to computer code or technologies or the deletion of WhatsApp data[6] does not apply to foreign sovereign customers.

**D.      The Court Should Administratively Stay the Injunction Pending NSO's Motion to Stay Pending Appeal.**

When the Court issues an injunction, NSO intends to move promptly for a stay of the

---

[6]  For the avoidance of doubt, Defendants do not have the technical means or the contractual (or other legal) right to delete WhatsApp data NSO's foreign sovereign customers have collected from target devices.

1  injunction pending its appeal to the Ninth Circuit.  As NSO will argue in that motion, a stay

2  pending appeal is proper because: (1) there are "serious legal questions" going to the merits of the

3  Court's rulings in this case, including its summary judgment order, its evidentiary rulings, and its

4  order granting a permanent injunction; (2) NSO and its government customers will be irreparably

5  harmed in the absence of a stay pending appeal; (3) Plaintiffs will not be irreparably harmed by a

6  stay; and (4) the public interest favors a stay. *See Ariz. Democratic Party v. Hobbs*, 976 F.3d 1081,

7  1086 (9th Cir. 2020); *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011).

8       In the meantime, the Court should administratively stay any injunction until the Court rules

9  on NSO's motion for a stay pending appeal. The purpose of an administrative stay is "to preserve

10  the status quo until the substantive motion for a stay pending appeal can be considered on the

11  merits." *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019); *accord Nat'l Urban League v.*

12  *Ross*, 977 F.3d 698, 702 (9th Cir. 2020).  Accordingly, to preserve the status quo that has existed

13  for years, the Court should set a briefing schedule for NSO's motion to stay pending appeal and

14  administratively stay any permanent injunction until the Court resolves NSO's substantive motion

15  to stay.

16  **III.    CONCLUSION**

17       NSO respectfully requests that the Court:

18       1. Modify Plaintiffs' proposed injunction in the manner described herein and set forth in

19  Defendants' proposed redline and clean versions filed concurrently herewith;

20       2. Set a briefing schedule for NSO's motion for a stay pending appeal; and

21       3. Administratively stay any injunction until the Court resolves NSO's motion to stay.

22  DATED: November 4, 2025          KING & SPALDING LLP

23                        By: */s/Joseph N. Akrotirianakis*

24                          JOSEPH N. AKROTIRIANAKIS
                        AARON S. CRAIG

25                          Attorneys for Defendants NSO GROUP

26                          TECHNOLOGIES LIMITED and Q
                        CYBER TECHNOLOGIES LIMITED

27

28