Greg D. Andres
Antonio J. Perez-Marques
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:   greg.andres@davispolk.com
         antonio.perez@davispolk.com
         luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:   micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFFS' SECOND PROPOSED ORDER GRANTING MOTION FOR PERMANENT INJUNCTION AND REQUEST FOR ADMINISTRATIVE STAY AND FOR BRIEFING SCHEDULE FOR MOTION TO STAY**<br><br>Judge:  Hon. Phyllis J. Hamilton<br><br>Action Filed: October 29, 2019 |

Pursuant to the Court's November 5, 2025 Order, Dkt. No. 806, Plaintiffs submit the following response to NSO's objection to Plaintiffs' proposed injunction order (the "Proposed Injunction") and NSO's request for an administrative stay of the yet-to-be entered injunction. Dkt. No. 805.

In its objection, NSO proposes purported "exception[s]" in seeking to re-write the injunction in a manner that would leave it free to engage in the very conduct the Court has already ruled it intends to enjoin and has already found to harm WhatsApp. These purported "exceptions" would, in fact, swallow the rule, and because they are unsupported by the law and record in this case should be rejected.

## I. The CFAA's Law Enforcement Exception Is Irrelevant to Injunctive Relief

Plaintiffs' Proposed Injunction properly omits reference to the CFAA's law enforcement exception. As the Court has repeatedly found, "there is no evidence that Pegasus has been used for law enforcement purposes within the United States." Dkt. No. 802 at 13; *see* Dkt. No. 684 at 38:10–11 (similarly finding "no evidence" of NSO's products being used by U.S. law enforcement agencies). NSO now claims that it is "reasonably foreseeable" that U.S. law enforcement will use Pegasus. Dkt. No. 805 at 2. That argument fails. *First*, NSO failed to produce evidence that U.S. law enforcement used, currently uses, or plans to use Pegasus to access WhatsApp's servers or WhatsApp client applications.[1] *Second*, NSO cannot prospectively claim (nor should the Court) that any potential use of Pegasus would be "lawfully authorized" under the CFAA, as NSO admits that it has no visibility into its customers' activities—including "who [its] clients target" or "what their criminal investigations are"—because it "wouldn't want to know that." Dkt. No. 684 at 66:16–67:11; *see* 18 U.S.C. § 1030(f).

---

[1] NSO's oft-repeated assertion that the FBI licensed Pegasus is of no moment. *See* Dkt. No. 805 at 2 n.2. NSO has produced no evidence that the FBI actually used Pegasus, and the FBI itself has stated that it did not. *See* Dkt. No. 466 at 25 n.16. NSO's claim that the CIA purportedly assisted the nation of Djibouti in obtaining a Pegasus license is equally baseless. *See* Dkt. No. 805 at 2 n.2. NSO relies on speculative testimony from its purported expert, who disclaimed any firsthand knowledge of such assistance and relied solely on "open source information." *See* Dkt. No. 648-4 at 83:10–85:10. That expert further confirmed that he was not aware of the "U.S. utilizing the Pegasus system in any [hands-on] way." *Id*.

In fact, the U.S. government itself has concluded that NSO's business is "contrary to the national security or foreign policy interests of the United States and those acting on behalf of such entities." Addition of Certain Entities to the Entity List, 86 Fed. Reg. 60759 (Nov. 4, 2021). Indeed, the U.S. Department of Commerce added NSO to the Entity List based on "investigative information" that NSO "developed and supplied spyware to foreign governments that used this tool to maliciously target government officials, journalists, businesspeople, activists, academics, and embassy workers." *Id.* Notably, the United States has never appeared in this litigation or supported NSO's assertion that U.S. law enforcement has any interest in the Pegasus product, including at the Supreme Court where NSO unsuccessfully petitioned for a writ of certiorari and argued that this case implicated the "United States' most sensitive intelligence and military operations." Pet. for Cert., *NSO Grp. Techs. Ltd. v. WhatsApp Inc.*, No. 21-1338 (April 6, 2022), 2022 WL 1057006, at *10–11.

Aside from speculation, NSO offers no explanation for how it is "reasonably foreseeable" that U.S. law enforcement would employ Pegasus when the U.S. government itself continues to deem NSO's activities contrary to national security interests. Dkt. No. 805 at 2. Moreover, NSO cites no precedent incorporating the provision it seeks, and no authority for the proposition that Courts should try to craft injunctions to account for a law breaker's claim that it may seek to act within some statutory safe harbor in the future.

This Court has already considered and rejected a similar argument from NSO. During summary judgment, NSO advanced an overbroad "law enforcement" theory in an effort to evade liability. NSO contended that *all* of its conduct after December 2018 was lawful under the CFAA's law enforcement exception, Dkt. No. 468 at 8, 23–24, which the Court necessarily rejected in granting summary judgment in favor of Plaintiffs. *See* Dkt. No. 494 at 12–13; Dkt. No. 684 at 38:6–11. NSO's revisions to the Proposed Injunction invite the same problem. *See* Dkt. No. 805-1. NSO does not merely "incorporate" the CFAA's exception for U.S. law enforcement activities as it contends, Dkt. No. 805 at 2, but instead creates a sweeping carveout allowing NSO to "develop[], us[e], sell[], offer[] for sale, distribut[e], transfer[], or licens[e] any technology" for any "lawfully authorized"

investigation, 805-1 ¶ 5, despite having produced no evidence that any such investigation has or could take place in the U.S. or otherwise.[2]

In short, NSO's objection rests entirely on conjecture, not evidence, finds no support in the law, and should be overruled.

## II. NSO Should Be Enjoined from Collecting Information from the WhatsApp Client Application on WhatsApp Users' Devices

The Proposed Injunction properly bars NSO from collecting data, or assisting others in collecting data, from the WhatsApp Platform, which includes WhatsApp servers and client applications. *See* Dkt. No. 803-1 ¶¶ 2, 3(b).[3] In granting Plaintiffs' permanent injunction, the Court recognized that "the ultimate purpose of defendants' actions was to obtain data from the target users." Dkt. No. 802 at 8. The Court also found that the ongoing harm to Plaintiffs extends beyond unauthorized access to their servers: Plaintiffs are harmed "when they are not able to offer the end-to-end encryption that they have promised their users." *Id.* at 7; *see id.* at 11 ("[T]he court has previously concluded that plaintiffs themselves are harmed when [their] users' data is unlawfully accessed.").

Incredibly, NSO concedes that it continues to unlawfully collect information from WhatsApp users' devices through methods it refuses to disclose. *See* Dkt. No. 805 at 4 ("WhatsApp messages can be and are collected . . . in ways that never interact with WhatsApp servers . . . ."); *see also* Dkt. No. 802 at 7 ("[T]he court agrees with plaintiffs that, 'by not telling us how they're collecting WhatsApp messages - the burden is improperly put on the plaintiffs to try to figure out how they're doing it and whether they're accessing our servers[.]'"). Notably, NSO has never contended that it is possible to collect WhatsApp messages without interacting with the WhatsApp *client application*, which is equally a component of the WhatsApp Platform, as defined in the Proposed Injunction. *See*

---

[2] In all events, NSO waived any argument regarding the CFAA's law enforcement exception by failing to raise it in either its original or revised opposition to Plaintiffs' motion for a permanent injunction. *See Bautista-Perez v. Holder*, 681 F. Supp. 2d 1083, 1092 (N.D. Cal. 2009) (finding defendant waived objection by "failing to raise it in opposition to Plaintiffs' motion for preliminary injunction").

[3] The Proposed Injunction applies to the WhatsApp Platform, which includes "WhatsApp servers and the WhatsApp client applications." Dkt. No. 803-1 at 1.

Dkt. No. 803-1 ¶ 1. Because NSO's conduct continues to inflict the very harm the Court found irreparable, the injunction must prohibit NSO from "its ultimate purpose" of collecting WhatsApp messages, whether through WhatsApp's servers or the WhatsApp client application.

NSO argues—without support—that it cannot be enjoined from conduct for which it was not held liable in the case. *See* Dkt. No. 805 at 5–6. That is wrong. Courts have long recognized that injunctions may extend to acts "entirely proper when viewed alone" if necessary to prevent recurrence of unlawful conduct. *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88–89 (1950); *see also Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 784 (N.D. Cal. 2017) ("[F]ederal courts have the equitable power to enjoin otherwise lawful activity . . . if the injunction is necessary and appropriate in the public interest to correct or dissipate the evil effects of past unlawful conduct or to prevent continued violations of the law." (internal quotation marks & citations omitted)), *aff'd*, 749 F. App'x 557 (9th Cir. 2019). The Court applied those same principles in granting the injunction. *See, e.g.*, Dkt. No. 802 at 17 ("[W]hile it may remain legal to create new Whatsapp accounts and to use Whatsapp, the facts in this case show that such activities have been used as a precursor to illegal activities, and thus, the court, in its discretion, concludes that such activity must be enjoined."). And here, the unauthorized exfiltration of WhatsApp messages from the client application—whether via WhatsApp's servers or through another undisclosed method—is not some tangential activity. It is the very objective of NSO's unlawful conduct and the reason it chose to hack Plaintiffs' servers. *See* Dkt. No. 802 at 5.

Moreover, the premise of NSO's argument is that the record does not show precisely how the Pegasus agent infiltrates the WhatsApp client application, after it has been installed on a mobile device by whatever means. *See* Dkt. No. 805 at 3–4. But that void of information exists only because NSO refused to produce the relevant code, in violation of the Court's discovery orders. *See* Dkt. No. 494 at 13 (granting sanctions based on NSO's "failure to produce Pegasus source code"). As with the Court's findings on liability, NSO should not be permitted to benefit from its discovery misconduct by asserting that WhatsApp has not shown precisely how the on-device hacking of the WhatsApp client application violates the law.

NSO further contends that enjoining the collection of WhatsApp messages "would have terrible consequences" for its unidentified foreign sovereign customers (Dkt. No. 805 at 4–5), none of which has ever asserted an interest in the litigation. That argument, again, impermissibly attempts to relitigate the Court's prior findings. The Court has already determined that the public interest weighs in favor of an injunction and explicitly declined to "consider evidence or argument about the use of Pegasus by foreign governments in foreign countries." Dkt. No. 802 at 13. Allowing NSO to re-raise that argument would subvert the Court's ruling and rest again on speculation, not evidence. NSO cites no evidence that its customers use Pegasus to "prevent or investigate terrorism and serious crime," Dkt. No. 805 at 5, and it disregards the ample record of abuses. See Dkt. No. 782 at 10–11; Dkt. No. 802 at 13–14 ("It would violate basic principles of equity and fairness to allow defendants to rely on such evidence, but to prohibit plaintiffs from doing so."). And NSO's argument makes clear that it is NSO seeking the exception for *itself* rather than a foreign sovereign client because the Court has already determined foreign sovereigns are not within the definition of "prohibited parties" under Rule 65 as described in the injunction order. See Dkt. No. 802 at 13; Dkt. No. 803-1 ¶ 1.

### III.    The Proposed Injunction Sufficiently Excludes NSO's Foreign Sovereign Customers

Consistent with the Court's direction, Plaintiffs' Proposed Injunction expressly excludes NSO's purported foreign sovereign customers from the definition of "Prohibited Parties" and therefore from the injunction's scope. See Dkt. No. 803-1 ¶¶ 1–3 ("bind[ing]" and "enjoin[ing]" only the Prohibited Parties). NSO now insists that Plaintiffs' revisions are "not meaningful." Dkt. No. 805 at 6. But NSO's objection reveals that its true concern is the opposite—NSO wants an injunction that is meaningless as to NSO itself. That is, NSO wants to craft exceptions so broad that, according to NSO's representation that it serves only law enforcement agencies, none of NSO's own conduct will be enjoined. The Court should reject those proposals.[4]

For instance, NSO contends that paragraphs 3(b) and 4 of the Proposed Injunction would "directly prohibit foreign government agencies' law-enforcement and intelligence investigations."

---

[4] NSO previously advanced a similar argument when it asserted it was immune from suit "as an agent of a foreign state," which the Court and the Ninth Circuit unanimously rejected. *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 17 F.4th 930, 933 (9th Cir. 2021).

Dkt. No. 805 at 6. Those provisions, however, apply only to Prohibited Parties (e.g., NSO)—not to NSO's foreign sovereign customers—and those provisions (3(b) and 4) enjoin conduct the Court has deemed unlawful. Paragraph 3(b) prohibits the Prohibited Parties (e.g., NSO) from "[c]ollecting, or assisting others in collecting, data or information from the WhatsApp Platform." Dkt. No. 803-1 ¶ 3(b); *see* Dkt. No. 802 at 17 ("[T]he court agrees that 'collecting data' goes to the conduct at the heart of this lawsuit."). Paragraph 4 of the Proposed Injunction requires the Prohibited Parties to "delete and destroy" computer code related to the WhatsApp Platform, and "disable customer access" to computer code that uses, accesses, or depends on the WhatsApp Platform, among other things. Dkt. No. 803-1 ¶ 4; *see* Dkt. No. 802 at 17–18 ("The court concludes that [paragraph 4] is necessary to prevent future violations, especially given the undetectable nature of defendants' technology."). No restriction on the activities of foreign sovereigns is imposed; it is only NSO and the other Prohibited Parties who are prohibited from engaging in the enjoined conduct.

By contrast, NSO's proposed revisions would render the injunction toothless. *See* Dkt. No. 805-1. Under NSO's proposed injunction, *NSO* would no longer be required to delete WhatsApp data *in its own possession* if that data had been obtained by its foreign sovereign customers,[5] nor disable its foreign customers' access to "computer code or technologies that use, access, or depend on the WhatsApp client application" *that NSO itself maintains*. *Id.* ¶ 3. In other words, under NSO's proposal, as long as NSO claims some connection to a foreign sovereign customer (which it has refused to identify), NSO can continue facilitating its customers' use of spyware that uses, accesses, or depends on the WhatsApp client application, and to the data of WhatsApp users obtained from the WhatsApp client application. This would result in no injunction at all because, as the evidence has shown, aside from NSO's customers entering the target phone number and pressing enter, NSO does everything—creating WhatsApp accounts, developing the malware, providing technical support,

---

[5] NSO claims that it does not have "the technical means or the contractual (or other legal) right to delete WhatsApp data" its foreign customers have collected. Dkt. No. 805 at 6 n.6. NSO cites no support for this self-serving assertion. Nor can Plaintiffs test the veracity of NSO's claim when it has failed to produce any agreements with its customers or Pegasus code. *See* Dkt. No. 466 at 24–25; Dkt. No. 494 at 9.

renting anonymized servers, exfiltrating the data from a device to a customer, reverse engineering WhatsApp services, and developing exploit vectors. *See* Dkt. No. 466 at 17; Dkt. No. 465 at 6–10.

NSO further reveals its improper purpose through its overbroad proposed revisions. *See* Dkt. No. 805-1. For example, NSO's proposed new paragraph 5 not only refers to U.S. law enforcement, but also asks the Court to order that its injunction "does not prohibit the Prohibited Parties from developing, using, selling, offering for sale, distributing, transferring, or licensing any technology for lawfully authorized investigative, protective, or intelligence activities." *Id.* ¶ 5. But NSO has always claimed—without evidence—that it uses, sells, offers, etc. technology *only* for such activities, "lawfully authorized" by its unidentified foreign agency customers. Dkt. No. 805 at 5. In other words, NSO's purported "exception" would permit the full scope of conduct for which NSO was found liable in this case. And, as seen in this case, that assertion does not insulate NSO from liability. *See* Dkt. No. 494 at 16. The Court should reject it.

## IV.   The Court Should Deny NSO's Request for An Administrative Stay[6]

The Court should deny NSO's request for a stay of the yet-to-be-entered permanent injunction during the pendency of NSO's yet-to-be filed stay motion. *See* Dkt. No. 805 at 6–7. NSO provides no basis for why an administrative stay is warranted, and instead seemingly asserts that an administrative stay is always appropriate to "preserve the status quo." *Id.* But, as the Ninth Circuit has recognized, the grant of an administrative stay depends "on the facts of th[e] case." *Nat'l Urb. League v. Ross,* 977 F.3d 698, 701 (9th Cir. 2020).

The facts here do not warrant an administrative stay. The Court has already carefully weighed extensive evidence, expert and witness testimony, and argument in finding that NSO's conduct caused Plaintiffs irreparable harm. *See* Dkt. No. 802 at 4–10. As courts in this Circuit have recognized, an administrative stay is inappropriate where "[a] preliminary injunction is necessary precisely to alter the status quo and address the irreparable harm that Plaintiffs face absent an injunction." *S.F. A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1235 (N.D. Cal. 2025). The Court has also recognized that there is "no dispute that [NSO's] conduct is ongoing." Dkt. No. 802 at 10.

---

[6] Plaintiffs do not oppose NSO's request for a briefing schedule for NSO's forthcoming motion for a stay pending appeal. *See* Dkt. No. 805 at 7.

Delaying enforcement would therefore perpetuate the very harm the injunction is designed to prevent. And NSO "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

## **CONCLUSION**

For the foregoing reasons, the Court should enter Plaintiffs' Proposed Injunction as submitted and deny NSO's request for an administrative stay.

Dated: November 10, 2025

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: */s/ Greg D. Andres*
 Greg D. Andres
 Antonio J. Perez-Marques
 Luca Marzorati
   (admitted *pro hac vice*)
 DAVIS POLK & WARDWELL LLP
 450 Lexington Avenue
 New York, New York 10017
 Telephone: (212) 450-4000
 Facsimile: (212) 701-5800
 Email: greg.andres@davispolk.com
   antonio.perez@davispolk.com
   luca.marzorati@davispolk.com

 Micah G. Block (SBN 270712)
 DAVIS POLK & WARDWELL LLP
 900 Middlefield Road, Suite 200
 Redwood City, California 94063
 Telephone: (650) 752-2000
 Facsimile: (650) 752-2111
 Email: micah.block@davispolk.com

 *Attorneys for Plaintiffs*
 *WhatsApp LLC and Meta Platforms, Inc.*