Greg D. Andres
Antonio J. Perez-Marques
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
              antonio.perez@davispolk.com
              luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES**<br><br>Date:    January 8, 2026<br>Time:   1:30 p.m.<br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES ...................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

BACKGROUND .............................................................................................2

    A.    Cooley LLP ...................................................................................2

    B.    Fischer (FBC & Co.) .......................................................................2

    C.    Davis Polk & Wardwell LLP ............................................................2

    D.    O'Melveny & Myers LLP ................................................................5

ARGUMENT .................................................................................................6

I.    Plaintiffs Are Entitled to Recover Reasonable Attorney's Fees .............................7

    A.    The CDAFA and California Civil Code § 1717 Authorize the Court to Award Attorney's Fees to Plaintiffs ...................................................7

        i.    The CDAFA Authorizes Plaintiffs' Attorney's Fees ..........................7

        ii.    California Civil Code § 1717 Authorizes Plaintiffs' Attorney's Fees ...................................................................................8

    B.    Plaintiffs Are Entitled to Reasonable Attorney's Fees for Litigating NSO's Interlocutory Appeal ............................................................11

    C.    Plaintiffs Are Entitled to Reasonable Attorney's Fees for Their Israeli Counsel ......12

    D.    The Court Should Not Segregate Plaintiffs' Attorney's Fees for Their CDAFA, CFAA and Breach of Contract Claims ...........................................13

II.    The Requested Fee Amount Is Reasonable.......................................................16

    A.    Plaintiffs' Fixed Fee Arrangements Reflect a Reasonable Fee .................................17

        i.    Analysis of Time Spent Confirms that the Fixed Fee Was Reasonable ...................................................................................18

    B.    Hourly Fee Arrangements Reflect Reasonable Fees ...................................................18

        i.    Plaintiffs' Hourly Rates Are Reasonable ...........................................19

    C.    The Number of Hours Expended by Plaintiffs' Counsel Is Reasonable ...................20

CONCLUSION ...............................................................................................21

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Amphastar Pharms. Inc. v. Aventis Pharm. SA*,
    2020 WL 8680070 (C.D. Cal. Nov. 13, 2020) ......................................................................... 17

*Alvarado v. Wal-Mart Assocs., Inc.*,
    2025 WL 2775774 (9th Cir. Sept. 30, 2025) ....................................................................... 16

*Barjon v. Dalton*,
    132 F.3d 496 (9th Cir. 1997) ............................................................................................. 19

*Berkla v. Corel Corp*,
    302 F.3d 909 (9th Cir. 2002) ............................................................................................. 11

*Billon, Inc. v. Slatin*,
    2018 WL 1409746 (C.D. Cal. Jan. 3, 2018) .................................................................. 10, 13

*BillFloat Inc. v. Collins Cash Inc.*,
    2023 WL 2333879 (N.D. Cal. Mar. 1, 2023), *aff'd*, 105 F.4th 1269 (9th Cir. 2024) ................... 9

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989) ............................................................................................................ 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................................. 19

*Buena Vista, LLC v. New Res. Bank*,
    2011 WL 3794904 (N.D. Cal. Aug. 26, 2011) .................................................................. 16

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*,
    65 F.4th 1145 (9th Cir. 2023) ........................................................................................... 6

*Comet Techs. USA Inc., v. XP Power LLC*,
    No. 5:20-cv-06408 (N.D. Cal. Jan. 28, 2025) .................................................................. 20

*Cotton v. City of Eureka*,
    889 F. Supp. 2d 1154 (N.D. Cal. 2012) ............................................................................ 19

*Cyclone USA, Inc. v. LL & C Dealer Servs., LLC*,
    2010 WL 2104963 (C.D. Cal. May 24, 2010) .................................................................. 15

*In re Cypress Semiconductor Sec. Litig.*,
    1995 WL 779116 (N.D. Cal. Dec. 29, 1995) ..................................................................... 8

*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*,
    211 Cal App. 4th 230 (2012) ............................................................................................. 8

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ............................................................................................. 11

*Facebook, Inc. v. Ilikead Media Int'l Co.*,
   2022 WL 2289064 (N.D. Cal. Feb. 1, 2022), *report and recommendation adopted as modified*,
   2022 WL 2289058 (N.D. Cal. Mar. 15, 2022) ................................................................ 7

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) ...................................................................................... 14

*Facebook, Inc. v. Power Ventures, Inc.*,
   2017 WL 3394754 (N.D. Cal. Aug. 8, 2017) .................................................................. 7

*Facebook, Inc. v. Sluchevsky*,
   2020 WL 5823277 (N.D. Cal. Aug. 28, 2020) ........................................... 7, 16, 19, 21

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ........................................................................................................ 8

*Hancock Lab'ys, Inc. v. Admiral Ins. Co.*,
   777 F.2d 520 (9th Cir. 1985) ........................................................................................ 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................ 13, 16, 19

*Higher Taste v. City of Tacoma*,
   717 F.3d 712 (9th Cir. 2013) .......................................................................................... 8

*Hjelm v. Prometheus Real Est. Grp., Inc.*,
   3 Cal. App. 5th 1155 (2016) ........................................................................................ 16

*Hsu v. Abbara*,
   891 P.2d 804 (1995) ...................................................................................................... 10

*Ketchum v. Moses*,
   17 P.3d 735 (Cal. 2001) .......................................................................................... 19, 21

*KJ-Park, LLC v. Match Group, LLC*,
   2025 WL 345921 (N.D. Cal. Jan. 30, 2025) .............................................................. 7, 9

*Kilopass Tech., Inc. v. Sidense Corp.*,
   82 F. Supp. 3d 1154 (N.D. Cal. 2015) ......................................................................... 18

*Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsym Corp.*,
   791 F.2d 1334 (9th Cir. 1986) ........................................................................................ 7

*Lansmont Corp. v. SPX Corp.*,
   2014 WL 1267003 (N.D. Cal. Mar. 27, 2014) ........................................................ 8, 16

*Love v. Associated Newspapers, Ltd.*,
   611 F.3d 601 (9th Cir. 2010) ........................................................................................ 13

*Lynwood Invs. CY Ltd. v. Konovalov*,
   No. 3:20-cv-03778 (N.D. Cal. Apr. 11, 2023) ............................................................. 20

*Mai v. HKT Cal, Inc.*,
   281 Cal. Rptr. 3d 255 (Cal. Ct. App. 2021) ................................................................ 17

*Mangold v. Cal. Pub. Utils. Comm'n*,
    67 F.3d 1470 (9th Cir. 1995) ........................................................................... 7, 11

*Manriquez v. Vangilder*,
    2022 WL 1184164 (9th Cir. Apr. 21, 2022) .......................................................... 15

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ............................................................... 14

*Meta Platforms, Inc. v. Soc. Data Trading Ltd.*,
    2022 WL 18806267 (N.D. Cal. 2022) ............................................................ 7, 21

*Meta Platforms, Inc. v. Qibaa*,
    2025 WL 2496129 (N.D. Cal. Aug. 1, 2025), *report and recommendation adopted as modified*,
    2025 WL 2494241 (N.D. Cal. Aug. 29, 2025) ....................................................... 7

*Mountain Air Enters., LLC v. Sundowner Towers, LLC.*,
    3 Cal. 5th 744 (2017) .......................................................................................... 8

*Nitsch v. DreamWorks Animation SKG Inc.*,
    2017 WL 2423161 (N.D. Cal. June 5, 2017) ........................................................ 20

*Ng. v. US Bank, NA*,
    2016 WL 6995884 (N.D. Cal. Nov. 30, 2016) ...................................................... 11

*NSO Grp. Techs. Ltd. v. WhatsApp Inc.*,
    143 S. Ct. 562 (2023) ........................................................................................... 6

*Pac. Steel Grp. v. Com. Metals Co.*,
    No. 4:20-cv-07683 (N.D. Cal. Sept. 29, 2025) .................................................... 20

*In re Penrod*,
    802 F.3d 1084 (9th Cir. 2015) .............................................................................. 9

*Perfect 10 Inc. v. Giganews, Inc.*,
    2015 WL 1746484 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) ................. 17

*Perez v. Safety-Kleen Sys., Inc.*,
    2010 WL 934100 (N.D. Cal. Mar. 15, 2010), *aff'd*, 448 F. App'x 707 (9th Cir. 2011) ............. 16

*Premier Floor Care, Inc. v. Albertsons Companies, Inc.*,
    2024 WL 4844372 (N.D. Cal. Nov. 20, 2024) ...................................................... 8

*QuickLogic Corp. v. Konda Techs., Inc.*,
    No. 5:21-cv-04657 (N.D. Cal. May 27, 2025) ..................................................... 20

*Ridgeway v. Wal-Mart Stores Inc.*,
    269 F. Supp. 3d 975 (N.D. Cal. 2017) ................................................................ 19

*Reynolds Metals Co. v. Alperson*,
    599 P.2d 83 (1979) ............................................................................................. 13

*Seguros La Metropolitana, S.A. v. Naviera Lavinel, C.A.*,
    1989 WL 50115 (D. Or. May 11, 1989) ............................................................... 12

*Serv. Emps. Int'l Union v. Rosselli*,
   2010 WL 4502176 (N.D. Cal. Nov. 1, 2010) ............................................................ 8

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
   2020 WL 2539002 (N.D. Cal. May 19, 2020), *aff'd sub nom.*
   *SPIP Litig. Grp., LLC v. Apple, Inc.*, 847 Fed. App'x 928 (Fed. Cir. 2021) ............................ 17

*Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*,
   249 Cal. Rptr. 3d 309 (Cal. Ct. App. 2019) ............................................................ 19

*Upwork Glob. Inc. v. Growth Lab Inc*,
   2024 WL 4184076 (N.D. Cal. Aug. 22, 2024), *report and recommendation adopted*, 2024 WL
   4602713 (N.D. Cal. Sept. 12, 2024) ............................................................ 9

*Wang v. Douglas Aircraft Co.*,
   121 F.3d 719 (9th Cir. 1997), *appeal after remand*, 221 F.3d 1350 (2000) ............................ 12

*Webb v. Sloan*,
   330 F.3d 1158 (9th Cir. 2003) ............................................................ 13

*WhatsApp Inc v. NSO Grp. Techs. Ltd.*,
   17 F.4th 930 (9th Cir. 2021) ............................................................ 8

*Wilson v. Tesla, Inc.*,
   833 F. App'x 59 (9th Cir. 2020) ............................................................ 7

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
   556 F.3d 815 (9th Cir. 2009) ............................................................ 7

*W. Oilfields Supply Co. v. Goodwin*,
   2010 WL 4553450 (D. Nev. Nov. 3, 2010), *aff'd*, 461 F. App'x 624 (9th Cir. 2011) ................ 14

*Wynn v. Chanos*,
   2015 WL 3832561 (N.D. Cal. June 19, 2015), *aff'd*, 685 Fed. App'x 578 (9th Cir. 2017) ....... 20

*Yamada v. Nobel Biocare Holding AG*,
   825 F.3d 536 (9th Cir. 2016) ............................................................ 19

*Yamada v. Snipes*,
   786 F.3d 1182 (9th Cir. 2015) ............................................................ 11

*Zhu v. Li*,
   2023 WL 4770431 (N.D. Cal. July 26, 2023) ............................................................ 9, 11

## STATUTES & RULES

18 U.S.C. § 1030(a)(2) ................................................................................................ 14

Cal. Penal Code § 502(c)(7) ...................................................................................... 14

Cal. Penal Code § 502(e)(2) ..................................................................................... 6, 7

Cal. Civil Code § 1717 .......................................................................................... *passim*

Fed. R. Civ. P. 54(d)(2) ............................................................................................... 1

N.D. Cal. Civ. L.R. 54-5(a) ......................................................................................... 1

## NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES

PLEASE TAKE NOTICE THAT, on January 8, 2026 at 1:30 p.m. in Courtroom 3 of the U.S. District Court for the Northern District of California in Oakland, Plaintiffs WhatsApp LLC and Meta Platforms, Inc. will and hereby do move for an award of reasonable attorney's fees against Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") under Federal Rule of Civil Procedure 54(d)(2) and Local Civil Rule 54-5. This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Micah G. Block, Catalina Vergara, Ronald A. Lehmann, Phillip E. Morton, and all exhibits thereto, the pleadings and papers on file in this action, and upon such other written and oral argument as may be presented to the Court.

Plaintiffs request that the Court award Plaintiffs their reasonable attorney's fees for the work done by Plaintiffs' counsel at Davis Polk & Wardwell LLP ("Davis Polk"), O'Melveny & Myers LLP ("O'Melveny"), Cooley LLP ("Cooley"), and Fischer (FBC & Co.) ("Fischer"), between September 2019 and August 2025. Plaintiffs reserve the right to request additional attorney's fees and costs.

## MEMORANDUM OF POINTS AND AUTHORITIES

On December 20, 2024, this Court held Defendants liable for violating the Computer Fraud and Abuse Act ("CFAA") and the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), and for breaching the WhatsApp Terms of Service. Dkt. No. 494. On May 6, 2025, after a six-day trial, a jury unanimously awarded Plaintiffs $444,719 in compensatory damages and $167,254,000 in punitive damages.[1] Dkt. No. 736. On November 12, 2025, this Court entered a final judgment, including a permanent injunction. *See* Dkt. Nos. 809, 810.

The CDAFA and California Civil Code § 1717 specifically allow for an award of attorney's fees. All of the claims on which Plaintiffs prevailed stem from the same facts and present overlapping legal issues. Plaintiffs' attorney's fees should thus be awarded in full.

---

[1] The Court ultimately reduced the punitive damages award to $4,002,471. Dkt. No. 802 at 22–23.

The amount of attorney's fees that Plaintiffs seek is reasonable. Plaintiffs do not seek to recoup every expense incurred in litigating this matter, and the requested fee amount represents a significant discount to what Plaintiffs' counsel would normally charge for the hours they expended and to what courts hold to be reasonable. Most of Plaintiffs' costs were incurred pursuant to fixed-fee arrangements, meaning Plaintiffs' counsel were not paid by the hour but instead paid based on the completion of various tasks. Block Decl. ¶ 14, Vergara Decl. ¶ 5. Courts recognize that fixed-fee arrangements provide strong evidence of the reasonableness of attorney's fees, given they are negotiated at arm's-length. In all events, all of Plaintiffs' attorney's fees would be reasonable if analyzed under the lodestar method commonly used in the Ninth Circuit.

The Court should therefore grant Plaintiffs' motion for attorney's fees in the amount of $15,914,095.

## BACKGROUND

Plaintiffs have relied on the work of four different law firms in connection with this litigation.

### A.    Cooley LLP

Plaintiffs filed their complaint on October 29, 2019. Dkt. No. 1. Attorneys from Cooley represented Plaintiffs at the outset of the litigation and assisted Plaintiffs in early motions and case investigation. *See* Morton Decl. ¶ 4; *see* Dkt. Nos. 7, 8, 13 (notices of appearances filed by Cooley attorneys).[2]

### B.    Fischer (FBC & Co.)

Plaintiffs engaged the Israeli firm Fischer in November 2019. Lehmann Decl. ¶ 4. Fischer advised Plaintiffs on Israeli law issues, including legal issues related to the Israeli Defense Export Control Law ("DECL"), as well as Israeli contract law, judgment collection, civil procedure, and other statutory and regulatory issues. *Id*. ¶ 6. Fischer also reviewed relevant documentation and assisted in the preparation of legal arguments. *Id*.

### C.    Davis Polk & Wardwell LLP

Davis Polk began representing Plaintiffs in May 2020, replacing Cooley. *See* Block Decl.

---

[2]    Cooley withdrew as counsel in September 2020. *See* Morton Decl. ¶ 4; *see* Dkt. No. 148 (notice of withdrawal).

¶ 3.  Attorneys at Davis Polk first appeared in this litigation on June 17, 2020.  *See* Dkt. No. 97.  In the subsequent five years, Davis Polk has served as Plaintiffs' lead counsel through motion practice, fact discovery, expert discovery, trial, and post-trial.  Davis Polk continues to be Plaintiffs' lead counsel in this litigation.

In 2020, Davis Polk's initial motion practice included:

- opposing NSO's motion to stay discovery pending resolution of its motion to dismiss, Dkt. No. 106;

- opposing NSO's motion to dismiss Plaintiffs' claim for injunctive relief, Dkt. No. 109;

- moving to compel discovery from NSO, Dkt. No. 116;

- opposing NSO's motion for a protective order, Dkt. No. 123;

- opposing NSO's motion to stay pending appeal, Dkt. No. 125; and

- moving to strike NSO's affirmative defenses, Dkt. No. 140.

While the case was stayed pending NSO's appeal to the Ninth Circuit, Davis Polk advanced nonparty fact discovery.  *See* Block Decl. ¶¶ 8, 10.  The case returned to this Court on January 9, 2023, after the Supreme Court denied NSO's petition for a writ of certiorari.  *See* Dkt. No. 162.  Throughout the course of the discovery period, Davis Polk's work related to written fact discovery included:

- responding to 180 requests for admission, 9 interrogatories, and 274 requests for production served by NSO, *see* Block Decl. ¶¶ 8, 10;

- reviewing and producing approximately 195,666 pages of documents in response to NSO's discovery requests, *see* Block Decl. ¶ 11; and

- reviewing approximately 46,542 pages of documents produced by NSO, *see* Block Decl. ¶ 11.

Davis Polk's work on fact deposition discovery included:

- traveling to London to depose four of NSO's executives (Ramon Eshkar, Tamir Gazneli, Sarit Bizinsky Gil, and Yaron Shohat), who refused to make themselves available in the United States, *see* Block Decl. ¶¶ 6, 8, 11, 13, 57-58;

- traveling to Washington, D.C. and McClean, VA to depose two employees (Terrence

DiVittorio and Joshua Shaner) of NSO's U.S. affiliate, Westbridge Technologies, Inc., *see* Block Decl. ¶¶ 7-8; and

- traveling to Washington, D.C., Los Angeles, and North Carolina to defend the depositions of nine of Plaintiffs' employees (Aashin Gautam, Claudiu Gheorghe, Susan Glick, Jonathan Lee, Cortney Padua, Jesus Barcons Palau, Drew Robinson, YuanYuan Wang, and Carl Woog), *see* Block Decl. ¶¶ 6-7, 11.[3]

Davis Polk's work on motion practice continued through the discovery period, including:

- opposing NSO's motion for a protective order under *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992), Dkt. No. 181, and arguing against that motion at the November 2, 2023 hearing, Dkt. No. 232;

- opposing NSO's motion to dismiss for *forum non conveniens*, Dkt. No. 220, and arguing against that motion at the November 2, 2023 hearing, Dkt. No. 232;

- filing at least 11 discovery dispute letters, Dkt. Nos. 210, 224, 306, 307, 366, 381, 383, 387, 408, 409, 411;

- moving for an order regarding NSO's document preservation obligations, Dkt. No. 197;

- moving to compel discovery under *Richmark*, Dkt. No. 235, and arguing in support of that motion at the February 15, 2024 hearing, Dkt. No. 289;

- opposing NSO's motion to compel discovery of additional documents, Dkt. No. 250;

- opposing NSO's motion for relief from the case management schedule, Dkt. No. 272;

- opposing NSO's motion for issuance of letter rogatory to the Citizen Lab, Dkt. No. 288;

- moving for issuance of letter rogatory to NSO's employees in Israel, Dkt. No. 319; and

- moving to compel discovery related to the Amazon Web Services ("AWS") server, Dkt. No. 331.

Throughout the discovery period, Davis Polk also negotiated discovery-related issues with NSO and nonparties. (As noted below, O'Melveny also assisted with respect to a third-party subpoena to AWS. *See* Vergara Decl. ¶ 4.)

At the end of the fact discovery period, Plaintiffs moved for summary judgment, Dkt. No.

---

[3] Plaintiffs are not seeking costs for these travel expenses.

399, opposed NSO's motion for summary judgment, Dkt. No. 420, and moved for sanctions, Dkt. No. 405. Davis Polk argued all three of these motions at the November 7, 2024 hearing. Dkt. No. 460.

During the expert discovery phase of the litigation, Davis Polk's work included:

- working with Plaintiffs' three expert witnesses (one damages expert and two technical experts), who served a total of six expert reports, *see* Block Decl. ¶ 10;

- defending the depositions of two expert witnesses (Anthony Vance and David Youssef), *see* Block Decl. ¶¶ 9, 11;

- deposing NSO's four expert witnesses (Terrence McGraw, Joshua Minkler, Gregory Pinsonneault, and Ty Shepard), *see* Block Decl. ¶¶ 6-9; and

- briefing seven motions to exclude expert testimony, *see* Block Decl. ¶ 11.

Davis Polk served as Plaintiffs' lead trial counsel at the jury trial on compensatory and punitive damages from April 28, 2025 to May 6, 2025, and also appeared on behalf of Plaintiffs at pretrial conferences. *See* Block Decl. ¶¶ 6-13. Most recently, on August 28, 2025, Davis Polk appeared on behalf of Plaintiffs at a hearing on Plaintiffs' motion for a permanent injunction and Defendants' motion for a new trial. *See* Block Decl. ¶¶ 7-8, 11-12.

Since Davis Polk began representing Plaintiffs in May 2020, Plaintiffs have filed over 240 submissions with the Court, including responses to many of NSO's over 270 submissions. *See* Block Decl. ¶ 20. During this time period, there were at least 28 motions requiring both sides to file substantive briefs, leading to at least 11 substantive decisions from the Court. *Id.*

### D.     O'Melveny & Myers LLP

Plaintiffs retained O'Melveny in 2020 to advise on and assist with appellate-related motion practice underway in this Court. Vergara Decl. ¶ 3; *see* Dkt. No. 125 (opposition to NSO's motion to stay pending appeal). O'Melveny then served as lead counsel for Plaintiffs on NSO's interlocutory appeal to the U.S. Court of Appeals for the Ninth Circuit. Vergara Decl. ¶ 3; *see WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 20-16408 (9th Cir.). In that proceeding, O'Melveny—on Plaintiffs' behalf—moved to dismiss the appeal for lack of jurisdiction, submitted an answering brief to NSO's

appeal, argued the case in front of a three-judge panel, and opposed NSO's petition for panel rehearing and rehearing *en banc*.  The Ninth Circuit unanimously affirmed this Court's denial of NSO's motion to dismiss, *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 17 F.4th 930 (9th Cir. 2021), and denied NSO's petition for rehearing, Filed Order, Dkt. No. 87, *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 20-16408 (9th Cir. Jan. 6, 2022).

Following the Ninth Circuit's decision, NSO subsequently filed a petition for a writ of certiorari to the Supreme Court in April 2022, Pet. for a Writ of Cert., *NSO Grp. Techs. Ltd. v. WhatsApp Inc.*, No. 21-1338 (April 6, 2022), 2022 WL 1057006, which Plaintiffs opposed, *id.*, Br. in Opp'n to Cert., No. 21-1338 (May 3, 2022), 2022 WL 1415870.  O'Melveny drafted Plaintiffs' opposition and, after the Supreme Court called for the views of the Solicitor General, led a meeting with the Solicitor General to present Plaintiffs' position.  Vergara Decl. ¶ 3.  On January 9, 2023, the Supreme Court denied Defendants' petition for a writ of certiorari.  *NSO Grp. Techs. Ltd. v. WhatsApp Inc.*, 143 S. Ct. 562 (2023).

Later, during fact discovery, O'Melveny assisted with respect to a third-party subpoena to AWS, including drafting a joint letter moving to compel Defendants to produce data hosted by AWS. *See* Vergara Decl. ¶ 4.

## ARGUMENT

This Court may award attorney's fees under the CDAFA and Cal. Civ. Code § 1717.  The CDAFA provides that "[i]n any action brought pursuant to this subdivision the court may award reasonable attorney's fees."  Cal. Penal Code § 502(e)(2).  Cal. Civ. Code § 1717(a) provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs."  California law governs the issue of attorney's fees here because Plaintiffs seek attorney's fees pursuant to a state law cause of action. A federal court sitting in diversity or exercising supplemental jurisdiction applies the law of the forum state regarding an award of attorney's fees.  *See Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 65 F.4th 1145, 1148–49 (9th Cir. 2023).  Moreover, "[s]tate law governs both plaintiffs'

6

'right to fees' and the 'method of calculating the fees.'" *Wilson v. Tesla, Inc.*, 833 F. App'x 59, 61 n.2 (9th Cir. 2020) (quoting *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *see also Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("State law [also] establishes the required showing for attorney's fees in an action in diversity."); *KJ-Park, LLC v. Match Group, LLC*, 2025 WL 345921, at *1–2 (N.D. Cal. Jan. 30, 2025) (awarding attorney's fees and noting that "for contracts governed by California law, courts 'look to California law, specifically Cal. Civ. Code section 1717, in interpreting the attorney fee provision'" (quoting *Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsym Corp.*, 791 F.2d 1334, 1341 (9th Cir. 1986)).

## I.   Plaintiffs Are Entitled to Recover Reasonable Attorney's Fees

The CDAFA and Cal. Civ. Code § 1717 authorize Plaintiffs' award of attorney's fees.   Plaintiffs' CDAFA claim provided the foundation for the jury's punitive damages award and hinged on many of the same facts and legal questions as Plaintiffs' CFAA and breach of contract claims.   In light of this overlap, the Court should award Plaintiffs all of their reasonable attorney's fees expended in this litigation, and not attempt to segregate attorney's fees by claim.

### A.   The CDAFA and California Civil Code § 1717 Authorize the Court to Award Attorney's Fees to Plaintiffs

#### i.   The CDAFA Authorizes Plaintiffs' Attorney's Fees

"In any action brought under [the CDAFA] the court may award reasonable attorney's fees." Cal. Penal Code § 502(e)(2).  Relying on this provision, courts in this district have repeatedly awarded attorney's fees under the CDAFA. *See, e.g.*, *Meta Platforms, Inc. v. Qibaa*, 2025 WL 2496129, at *9 (N.D. Cal. Aug. 1, 2025), *report and recommendation adopted as modified*, 2025 WL 2494241 (N.D. Cal. Aug. 29, 2025); *Meta Platforms, Inc. v. Soc. Data Trading Ltd.*, 2022 WL 18806267, at *5–6 (N.D. Cal. Nov. 15, 2022); *Facebook, Inc. v. ILikeAd Media Int'l Co. Ltd.*, 2022 WL 2289064, at *7 (N.D. Cal. Feb. 1, 2022), *report and recommendation adopted as modified*, 2022 WL 2289058 (N.D. Cal. Mar. 15, 2022); *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277, at *10 (N.D. Cal. Aug. 28, 2020); *Facebook, Inc. v. Power Ventures, Inc.*, 2017 WL 3394754, at *6–7 (N.D. Cal. Aug. 8, 2017).

Plaintiffs' victory in this litigation cements the appropriateness of an award of attorney's fees under the CDAFA. A plaintiff prevails when it obtains "actual relief on the merits of [its] claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715 (9th Cir. 2013) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). Here, the Court concluded that there was no genuine dispute as to any material fact related to Plaintiffs' CDAFA claim, and granted Plaintiffs summary judgment on this claim. *See* Dkt. No. 494 at 13; *see also In re Cypress Semiconductor Sec. Litig.*, 1995 WL 779116, at *1 (N.D. Cal. Dec. 29, 1995) (party awarded summary judgment was "prevailing party" under Rule 54(d)); *Lansmont Corp. v. SPX Corp.*, 2014 WL 1267003, at *2 (N.D. Cal. Mar. 27, 2014) (reaching same conclusion under California law). Later, the jury found that NSO "engaged in malice, oppression or fraud" in violating the CDAFA, and determined that punitive damages were appropriate. *See* Dkt. No. 736 at 2–3; *see, e.g.*, *Serv. Emps. Int'l Union v. Rosselli*, 2010 WL 4502176, at *2–3 (N.D. Cal. Nov. 1, 2010) (finding it appropriate to award attorney's fees following a jury verdict against defendants). Under the plain reading of the CDAFA, Plaintiffs are entitled to their reasonable attorney's fees.

### ii. California Civil Code § 1717 Authorizes Plaintiffs' Attorney's Fees

The Court may also award Plaintiffs attorney's fees pursuant to Cal. Civ. Code § 1717. Parties may contract for attorney's fees under California law. *See* Cal. Code of Civ. P. § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."); *see Premier Floor Care, Inc. v. Albertsons Companies, Inc.*, 2024 WL 4844372, at *2 (N.D. Cal. Nov. 20, 2024) ("Section 1021 'permits parties to contract out of the American rule . . . by executing an agreement that allocates attorney fees.'" (quoting *Mountain Air Enters., LLC v. Sundowner Towers*, *LLC*, 3 Cal. 5th 744, 751 (2017)). Section 1717 in turn provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing

party," which is the case here, "then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." Cal. Civ. Code § 1717(a). Courts in this district routinely award attorney's fees to prevailing parties pursuant to contractual agreements and Section 1717. *See, e.g.*, *Zhu v. Li*, 2023 WL 4770431, at *4 (N.D. Cal. July 26, 2023) (finding that plaintiff may recover attorney's fees pursuant to § 1717 and a contractual indemnification provision); *KJ-Park*, 2025 WL 345921, at *10; *Upwork Glob. Inc. v. Growth Lab Inc.*, 2024 WL 4184076, at *6 (N.D. Cal. Aug. 22, 2024), *report and recommendation adopted*, 2024 WL 4602713 (N.D. Cal. Sept. 12, 2024); *BillFloat Inc. v. Collins Cash Inc.*, 2023 WL 2333879, at *6 (N.D. Cal. Mar. 1, 2023), *aff'd*, 105 F.4th 1269 (9th Cir. 2024).

Section 1717 applies to Plaintiffs' breach of contract claim. "The phrase 'on the contract' is liberally construed, such that a claim 'on a contract' 'involves an agreement, arises under/out of, is based on, or relates to the agreement by seeking to define or interpret its terms to determine or enforce a party's rights or duties.'" *BillFloat Inc.*, 2023 WL 2333879, at *5 (quoting *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal App. 4th 230, 242 (2012)); *see also In re Penrod*, 802 F.3d 1084, 1088 (9th Cir. 2015) ("Under California law, an action is 'on a contract' when a party seeks to enforce . . . the provisions of the contract."). "[T]o recover attorneys' fees under section 1717, a party must show that the contract authorizes such fees, the party is the prevailing party, and the attorneys' fees are reasonable." *KJ-Park*, 2025 WL 345921, at *2.

Plaintiffs prevailed on their breach of contract claim and the WhatsApp Terms of Service provide that NSO is obligated to pay WhatsApp's reasonable attorney's fees and costs. The Court found in its summary judgment order that the WhatsApp Terms of Service constituted "a contract . . . between plaintiffs and defendants," that plaintiffs did not waive certain "contractual provisions," that "plaintiffs . . . sufficiently established breach," and that "plaintiffs incurred costs investigating and remediating defendants' breaches, which are sufficient to establish the fourth and final

9

element of a breach of contract claim," "resulting damages." Dkt. No. 494 at 13–14. The jury later awarded Plaintiffs $444,719 as compensatory damages for NSO's breach of contract. *See* Dkt. No. 736. Defendants did not bring any claims, nor were they awarded any damages. These facts conclusively establish that Plaintiffs are the prevailing party on the contract claim. *See* Cal. Civ. Code § 1717(b)(1) ("[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract."); *Billon, Inc. v. Slatin,* 2018 WL 1409746, at *2 (C.D. Cal. Jan. 3, 2018) ("The prevailing party is the party who recovered a greater relief in the action on the contract."). The Supreme Court of California and California "Courts of Appeal [have] recognized that a trial court has no discretion to deny attorney fees to the successful litigant" "when the results of the litigation on the contract claims are *not* mixed—that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other . . . ." *Hsu v. Abbara*, 891 P.2d 804, 812 (1995). In *Hsu*, "the judgment was a 'simple, unqualified win' . . . for the [defendant] on the only contract claim between" the parties. *Id.* at 813. The *Hsu* court accordingly concluded that "the trial court had no discretion to deny the [defendant] their attorney fees under section 1717 by finding . . . that there was no party prevailing on the contract." As Plaintiffs prevailed on the only contract claim, *Hsu* dictates that the Court should award Plaintiffs their reasonable attorney's fees.

The contract at issue in this litigation, the WhatsApp Terms of Service, authorize Plaintiffs' reasonable attorney's fees as a result of NSO's breach of those terms:

> You agree to defend, indemnify, and hold harmless the WhatsApp Parties from and against all liabilities, damages, losses, and expenses of any kind (including reasonable legal fees and costs) relating to, arising out of, or in any way in connection with any of the following: (a) your access to or use of our Services, including information provided in connection therewith; (b) your breach or alleged breach of our Terms; or (c) any misrepresentation made by you. You will cooperate as fully as required by us in the defense or settlement of any Claim.

Dkt. No. 741-13 (2016 WhatsApp Terms of Service) at 6; *see also* Dkt. No. 401-2, Ex. 23 (2020 WhatsApp Terms of Service) at 4–5 (same). The WhatsApp Terms of Service also include a

10

choice-of-law provision, identifying California as the governing law. *See* Dkt. No. 741-13 at 7;

Dkt. No. 401-2 at 90 (same). This choice-of-law provision applies here, and the WhatsApp Terms

of Service's "indemnification provision [is interpreted] pursuant to California cont[r]act-interpreta-

tion principles." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1003 (9th Cir. 2023) (applying Cali-

fornia law "[b]ased on the [contract]'s choice-of-law provision"); *see also Ng. v. US Bank, NA*,

2016 WL 6995884, at *3 (N.D. Cal. Nov. 30, 2016) ("California law governs the right to recover

attorneys' fees pursuant to an underlying contract." (citing *Berkla v. Corel Corp.*, 302 F.3d 909,

919 (9th Cir. 2002)). The indemnification language in the WhatsApp Terms of Service clearly ap-

plies to attorney's fees that Plaintiffs incurred litigating their breach of contract claim against NSO.

As the Ninth Circuit has held, a prevailing party "is entitled to attorney fees pursuant to" such a

provision, which "expressly refers to [a party's] 'breach' of its obligations pursuant to the [con-

tract]—contemplating an intra-party action for breach of contract, not claims by third parties." *See*

*Epic Games*, 67 F. 4th at 1003–04. Under California contract law and principles, this indemnifica-

tion language entitles Plaintiffs to attorney's fees for NSO's breach of contract. *See Zhu,* 2023 WL

4770431, at *4 (awarding attorney's fees pursuant to indemnification provision that is "substan-

tially similar to that in *Epic Games*"). Because Plaintiffs prevailed in their breach of contract

claim, and NSO agreed to the WhatsApp Terms of Service and the indemnification provision in

those terms, the Court should award Plaintiffs their reasonable attorney's fees pursuant to Section

1717.

**B.    Plaintiffs Are Entitled to Reasonable Attorney's Fees for Litigating NSO's Interlocutory Appeal**

Plaintiffs are entitled to recover the fees incurred in litigating the interlocutory appeal. *See*

*Yamada v. Snipes*, 786 F.3d 1182, 1209–10 (9th Cir. 2015). In *Yamada*, the Ninth Circuit held that

a party that prevailed in district court proceedings after an interlocutory appeal was entitled to attor-

ney's fees arising from the appeal. *Id.* The *Yamada* court reasoned that a prevailing party "should

presumptively be eligible for attorney's fees incurred during the [interlocutory] appeal, because that appeal likely contributed to the success of the underlying litigation." *Id.* at 1210.

*Yamada*'s logic mandates the award of attorney's fees here. O'Melveny successfully defended against NSO's interlocutory appeal over the course of multiple years in both the Ninth Circuit and the U.S. Supreme Court. *See* Vergara Declaration ¶¶ 3, 5. The denial of NSO's interlocutory appeal was crucial to the success of the district court litigation, as NSO argued that the district court should have dismissed the complaint. Dkt. No. 117 at 1. If NSO prevailed on its interlocutory appeal, the case would have been dismissed and Plaintiffs could not have prevailed on any claim.

**C.      Plaintiffs Are Entitled to Reasonable Attorney's Fees for Their Israeli Counsel**

Plaintiffs are also entitled to recover the fees incurred by attorneys from Fischer, an Israeli law firm. Numerous Fischer attorneys provided advice on relevant Israeli law issues that arose in this case, including NSO's repeated invocations of the protections of Israeli law. *See, e.g.*, Dkt. No. 249-2 (claiming "the potential for discovery to violate Israeli export-control laws"); Dkt. No. 429-2 (describing "competing obligations under Israeli law"). Courts have awarded fees for foreign counsel when issues of international law are relevant to prosecuting the case in the United States. *See Seguros La Metropolitana, S.A. v. Naviera Lavinel, C.A.*, 1989 WL 50115, at *2 (D. Or. May 11, 1989) (finding that using Canadian counsel was reasonable "[c]onsidering the international nature of this lawsuit"). Mr. Lehmann is Fischer's lead attorney on this case and is admitted *pro hac vice* to this Court, *see* Dkt. No. 175, but the other Fischer attorneys who worked on this case are neither members of the California Bar nor admitted *pro hac vice*. That does not prevent this Court from ordering an award of their fees: the Ninth Circuit has held that "[t]here is no categorical prohibition that prevents a district court from awarding attorney's fees to a foreign attorney who was not formally associated as counsel of record," and that a foreign attorney who "facilitated the prosecution of [the] case in the United States" by "securing necessary . . . records from sources in [a foreign country]" is entitled to "an appropriate award." *Wang v. Douglas Aircraft Co.*, 121 F.3d 719 (9th Cir. 1997), *appeal after remand*, 221 F.3d 1350 (2000) (affirming that the "district court shall make an appropriate award of attorney's fees" to the foreign attorney for work "that did not duplicate the services of the attorneys working on [the] case in California"). Fischer clears that bar.

**D.     The Court Should Not Segregate Plaintiffs' Attorney's Fees for Their CDAFA, CFAA and Breach of Contract Claims**

All of Plaintiffs' claims in this case share common facts and related legal theories.  *See* Dkt. 494 at 13 (recognizing that "CDAFA is the state-law equivalent of the CFAA" and granting summary judgment "on the CDAFA claim for the same reasons as the CFAA claim"); Dkt. No. 111 (holding that Plaintiffs' "breach of contract claim involves the same common nucleus of operative facts as the tort claims," and noting "[t]he alleged torts in the complaint center on the improper access to and misuse of WhatsApp's application, servers, and network."); *see also* Dkt. No. 802 at 9 n.1, 17 (reasoning that "[w]hile reverse engineering is not expressly covered by the CFAA, the fact that defendants breached Whatsapp's terms of service by doing so is a fact that informs the court's understanding of the risk of ongoing harm and the scope of any injunction needed to prevent such harm" and granting injunction prohibiting "activities such as reverse engineering or decompiling" because they "are sufficiently related to defendants' unlawful access of plaintiffs' and their users' data").  Therefore, if the Court awards attorney's fees pursuant either to the CDAFA or Section 1717 and the WhatsApp Terms of Service, fees should not be segregated or carved out according to the multiple claims on which Plaintiffs prevailed.

When a party prevails on one claim governed by a statutory fee-shifting provision like the CDAFA or Section 1717, it can also recover attorney's fees for "work done on claims that 'involve a common core of facts or [are] based on related legal theories' as the claims governed by the statutory . . . fees provision." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).  "[T]he focus" in determining relatedness "is on whether the claims arose out of a common course of conduct." *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003).  On the other hand, claims are unrelated only if "'distinctly different' *both* legally *and* factually." *Id.* (citation omitted).  Courts have similarly recognized that, in the Section 1717 context, "allocation is not required when the issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not." *Billon*, 2018 WL 1409746, at *3 (citation omitted); *see also Reynolds Metals Co. v. Alperson*, 599 P.2d 83, 86 (1979) ("Attorney's fees need not be apportioned

13

when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed"); *W. Oilfields Supply Co. v. Goodwin*, 2010 WL 4553450, at *1 (D. Nev. Nov. 3, 2010) ("interrelation of contract and non-contract claims allows a court to award the entire fee if doing so would be reasonable"), *aff'd*, 461 F. App'x 624 (9th Cir. 2011). Because all of Plaintiffs' claims involve the same factual underpinnings and legal issues, Plaintiffs should be awarded reasonable attorney's fees for all their work.

*First*, the same facts established NSO's liability on all three claims. From the outset of the case, Plaintiffs relied on identical factual allegations in claiming a violation of the CFAA, the CDAFA, and a breach of WhatsApp Terms of Service. *See* Dkt. No. 1 ¶¶ 49, 58, 67. Plaintiffs' strategy through written discovery targeted facts that helped prove all three claims. As a result, the key facts that Plaintiffs established in discovery—including facts regarding NSO's research-and-development efforts, development of WhatsApp-specific installation vectors, and circumvention of WhatsApp security updates—were essential to establishing NSO's liability under the CFAA and for breach of contract, in addition to establishing NSO's violation of the CDAFA.

*Second*, Plaintiffs' CFAA, contract and CDAFA claims overlap. Relevant sections of the CDAFA and the CFAA contain nearly identical language. *Compare, e.g.*, Cal. Penal Code § 502(c)(7) ("knowingly and without permission accesses or causes to be accessed") *with* 18 U.S.C. § 1030(a)(2) ("intentionally accesses a computer without authorization"). The Ninth Circuit has recognized that the legal "analysis under both [CFAA and CDAFA] is similar." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016); *see also Meta Platforms v. BrandTotal*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022) (describing CDAFA as "a state law counterpart to the CFAA" and noting that "the necessary elements of [CDAFA] do not differ materially from the necessary elements of the CFAA"). Plaintiffs' contract claim depended in part on Plaintiffs' CFAA and CDAFA claims: Plaintiffs alleged that NSO violated a provision of the WhatsApp Terms of Service providing that WhatsApp can be "accessed and used 'only for legal, authorized, and acceptable purposes,'" *see* Dkt. No. 1 ¶ 20, and prohibiting "'gain[ing] or attempt[ing] to gain unauthorized access to [WhatsApp's] Services or systems.'" *See* Dkt. No. 1 ¶ 22; Dkt. No. 399-2, Ex. 11; *see also* Dkt. No. 111; Dkt. No. 802 at 9 n.1, 17. Thus, NSO's violation of CDAFA necessarily violates the

WhatsApp Terms of Service.  *See Cyclone USA, Inc. v. LL & C Dealer Servs., LLC*, 2010 WL 2104963, at *6 (C.D. Cal. May 24, 2010) (finding that reliance on violations of federal and state law in support of contract argument "deepened the inherent interrelationship and overlap among the" claims).  Given the overlapping legal analysis between Plaintiffs' CDAFA, CFAA, and contract claims, Plaintiffs are entitled to attorney's fees for all their work.  *See Manriquez v. Vangilder*, 2022 WL 1184164, at *2 (9th Cir. Apr. 21, 2022) (holding that district court did not abuse discretion in declining to apportion attorney's fees "where Defendants were found liable for both state and federal claims based on the same facts").

The Court has repeatedly noted the overlap between Plaintiffs' CDAFA and CFAA claims in particular.  For instance, the Court granted Plaintiffs summary judgment on their CDAFA claim "for the same reasons as the CFAA claim."  Dkt. No. 494 at 13.  The Court also instructed the jury on the overlap between the CFAA and the CDAFA, calling the CDAFA "a California law equivalent of the federal [CFAA], with the additional requirement that a computer be unlawfully accessed in California," and reiterating that the Court "concluded [NSO] violated the [CDAFA] for the same reasons that they violated the federal [CFAA] and because [NSO] unlawfully accessed a computer in California."  Dkt. No. 737 at 18.

Further, many of the defenses asserted by Defendants in this litigation were common across all three claims: among other things, Defendants moved to dismiss all claims for lack of subject matter jurisdiction on the basis of derivative foreign sovereign immunity (*see* Dkt. No. 45 at 8), moved to dismiss all claims for lack of personal jurisdiction (*see* Dkt. No. 45 at 11, Dkt. No. 396-2 at 8), moved to dismiss all claims on the basis of *forum nonconveniens* (*see* Dkt. No. 215-1), and moved for summary judgment on all claims on the purported basis that its customers operate Pegasus and that the act of state doctrine barred Plaintiffs' claims (Dkt. No. 396-2 at 18–20).

*Finally*, as a practical matter, it would be impossible to separate Plaintiffs' work on their CDAFA claims from their work on their CFAA and breach of contract claims.  Plaintiffs' CDAFA claims were litigated alongside Plaintiffs' other successful claims, and nearly every dispute bore on all of Plaintiffs' claims.  This provides another reason why the Court should decline to segregate fees.

*See Buena Vista, LLC v. New Res. Bank*, 2011 WL 3794904, at *5 (N.D. Cal. Aug. 26, 2011) ("Because it would be impossible to disentangle the allegations in the complaint, the Court declines to segregate fees for contract claims from fees for non-contract claims."). Therefore, Plaintiffs should be permitted to recover all reasonable attorney's fees spent in this litigation. *See, e.g.*, *Sluchevsky*, 2020 WL 5823277, at *11 (recommending recovery under CDAFA for all hours that the plaintiff's attorneys spent litigating the matter which involved other causes of action).[4]

## II.    The Requested Fee Amount Is Reasonable

"Once a determination is made that attorney's fees are appropriate, the standard to be applied in calculating an award of attorney's fees is that of 'reasonableness.'" *Perez v. Safety-Kleen Sys., Inc.*, 2010 WL 934100, at *3 (N.D. Cal. Mar. 15, 2010) (Hamilton, J.), *aff'd*, 448 F. App'x 707 (9th Cir. 2011). "Under California law, the general rule is that the amount of an attorney's fee award is within the sound discretion of the trial court in the absence of a patent abuse of that discretion." *Hancock Lab'ys, Inc. v. Admiral Ins. Co.*, 777 F.2d 520, 526 (9th Cir. 1985); *see also Lansmont Corp. v. SPX Corp.*, 2014 WL 1267003, at *1 (N.D. Cal. Mar. 27, 2014) ("Ultimately, California law allows a judge, having been informed of the relevant circumstances, to determine a reasonable fee from his or her own knowledge and experience.").

Here, the $15,914,095 that Plaintiffs incurred in attorney's fees was reasonable. Of that total, the vast majority was paid pursuant to fixed-fee agreements with Davis Polk and with O'Melveny. The fixed-fee agreements show the amount that Plaintiffs actually paid for counsel's work on various phases of the case, and provide strong evidence that the underlying fees were reasonable. Moreover,

---

[4]  Though this Court dismissed Plaintiffs' trespass to chattels claim early in the litigation, *see* Dkt. No. 111 at 40–44, there is no basis to separate and deduct any trespass-to-chattels-specific work. "[A] plaintiff may recover fees for work performed on her unsuccessful claims if they 'are so intertwined' with her successful claims 'that it would be impracticable, if not impossible, to separate the attorney's time into compensable and non-compensable units." *Alvarado v. Wal-Mart Assocs., Inc.*, 2025 WL 2775774, at *4 (9th Cir. Sept. 30, 2025) (quoting *Hjelm v. Prometheus Real Est. Grp., Inc.*, 3 Cal.App.5th 1155 (2016)). Not only did Plaintiffs' trespass-to-chattels claim rely on the same core conduct as Plaintiffs' other claims, but "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.

calculating an effective hourly rate for attorney's fees billed pursuant to these fixed-fee agreements confirms that the fees were reasonable. Plaintiffs paid the remainder of their attorney's fees via hourly billing. The rates charged via hourly billing are also reasonable, as they reflect prevailing market rates.

### A.    Plaintiffs' Fixed Fee Arrangements Reflect a Reasonable Fee

The majority of attorney's fees that Plaintiffs seek to recover were negotiated and paid by Plaintiffs pursuant to fixed-fee agreements. *See* Block Decl. ¶ 70 ($13,153,333 fees to Davis Polk); Vergara Decl. ¶¶ 5–6 ($1,210,094.57 fees to O'Melveny pursuant to mixed fixed-fee and hourly agreement). These agreements were negotiated at arm's-length between Plaintiffs and their outside counsel, and have been paid in full by Plaintiffs. Both Davis Polk and O'Melveny negotiated these agreements with Plaintiffs before they were involved in the case. Davis Polk's arrangement was negotiated in 2020, and the fees to which Plaintiffs and Davis Polk agreed at the outset of the case have not been renegotiated, even as the district court litigation was stayed for multiple years and key case deadlines were repeatedly postponed. Block Decl. ¶ 14. O'Melveny's fixed-fee arrangement existed through 2023, before converting to an hourly billing standard in 2024. Vergara Declaration ¶ 5.

The Supreme Court has ruled that "[t]he presence of a pre-existing fee agreement may aid in determining reasonableness." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). "[E]vidence that an institutional client in a competitive legal market was willing to pay the rates charged without any guarantee of reimbursement is important evidence that the rate was reasonable." *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *18 n.14 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017); *see also Amphastar Pharms. Inc. v. Aventis Pharma SA*, 2020 WL 8680070, at *27 (C.D. Cal. Nov. 13, 2020) (holding that rate actually paid by sophisticated client is a reasonable rate); *Mai v. HKT Cal, Inc.*, 281 Cal. Rptr. 3d 255, 266 (Cal. Ct. App. 2021) ("A prima facie case as to the costs incurred and their reasonableness can be established by the plaintiff's testimony that bills for the services were paid."). Thus, the amount paid pursuant to a fixed-fee agreement is "just as effective an approximation of general billing practices" as the lodestar method, as it reflects "*what clients actually pay* for legal services." *Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, 2020 WL 2539002,

at \*5 (N.D. Cal. May 19, 2020), *aff'd sub nom. SPIP Litig. Grp., LLC v. Apple, Inc.*, 847 Fed. App'x 928 (Fed. Cir. 2021); *see also Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1167 (N.D. Cal. 2015) ("The attorney-client fee arrangement can often provide valuable indication of the prevailing reasonable rate in the community."). The fixed-fee arrangements in this case accurately reflect the rates that a paying client was willing to pay for the specific tasks that Plaintiffs' counsel completed on the way to prevailing in this litigation and evidence the reasonableness of those rates.

### i. Analysis of Time Spent Confirms that the Fixed Fee Was Reasonable

As set forth in the accompanying declarations and the reports referenced therein, the effective rates charged by Plaintiffs' counsel are below the range of fees for attorneys with comparable expertise and experience. Based on the caselaw cited in, *infra*, Section II.B.i, conservative reasonable hourly rates for a partner, counsel, and associate would be $1,400, $900, and $650, respectively. Multiplying these hourly rates by the hours that Davis Polk's core team members spent on this action (*see* Block Decl. ¶¶ 6–13) would result in a lodestar of $15,317,575, which is *higher* than the fees Davis Polk seeks here, further demonstrating the reasonableness of the fee request. The lodestar would be even greater if these rates were applied to the hours of the full Davis Polk trial team.

Moreover, based on the total amount Plaintiffs paid to Davis Polk and calculated using *only* the hours worked by core team members (consisting of partners, counsel, and three associates), Davis Polk's effective rate was approximately $779 per hour, which is below the hourly rates that courts in this district have recently approved. Davis Polk's effective rate would be significantly lower if the hours of all Davis Polk team members were included. O'Melveny and Cooley also had effective rates of less than $760 per hour—below the rates recently approved by courts in this district—based on the total hours O'Melveny and Cooley timekeepers spent and the total amount that Plaintiffs paid to O'Melveny and Cooley. *See* Vergara Decl. ¶¶ 5–6, Morton Decl. ¶¶ 7, 17–18, 21.

### B. Hourly Fee Arrangements Reflect Reasonable Fees

For the portion of attorney's fees that was billed pursuant to a traditional hourly billing rate, a review of Plaintiffs' counsel's hourly rates confirms the reasonableness of Plaintiffs' request.

In determining the reasonableness of an attorney's fees request, courts often employ the lodestar method, which "is calculated by multiplying the number of hours the prevailing party reasonably

18

expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)); *see Sluchevsky*, 2020 WL 5823277, at *10 (using lodestar to evaluate reasonableness of attorney's fees awarded under CDAFA).   Under California law, "[i]t is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method.  Declarations of counsel setting forth the reasonable hourly rate, the number of hours worked and the tasks performed are sufficient." *Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*, 249 Cal. Rptr. 3d 309, 331 (Cal. Ct. App. 2019) (cleaned up).

### i. Plaintiffs' Hourly Rates Are Reasonable

Plaintiffs' counsel's hourly rates are reasonable.  The determination of a reasonable hourly rate involves "examining the prevailing market rates in the community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1166 (N.D. Cal. 2012) (quoting *Hensley*, 461 U.S. at 433); *see Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 985 (N.D. Cal. 2017) ("To determine whether counsel's hourly rates are reasonable, the Court looks to the 'hourly amount to which attorneys of like skill in the area would typically be entitled.'" (quoting *Ketchum v. Moses*, 17 P.3d 735, 742 (Cal. 2001))). The "relevant community" for the purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds.  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

The hourly rates that O'Melveny, Cooley, and Fischer charged when billing Plaintiffs by the hour were consistent with, or lower than, the customary hourly charges for experienced attorneys litigating complex cases in the Northern District of California.  For the work that O'Melveny billed to Plaintiffs on an hourly rate, they charged between $900 and $1400 per hour.  Vergara Decl. ¶ 5. For the work that Cooley billed to Plaintiffs on an hourly rate, they charged between $1,025 and $1,700 per hour for partners, between $960 and $1,020 per hour for counsel, and between $755 and $875 per hour for associates.  Morton Decl. ¶¶ 8–16.  And for the work that Fischer billed to Plaintiffs on an hourly rate, they charged between $270 and $515 per hour for partners, and between $100 and $320 per hour for associates and an articled clerk.  Lehmann Decl. ¶¶ 8–21.

19

Plaintiffs' counsel's rates are in accord with those deemed reasonable by courts in this district in connection with attorneys with similar skills and experience.  Plaintiffs' attorneys are highly experienced and qualified.  *See* Block Decl. ¶¶ 6–13 (including attorney biographies), Lehmann Decl. ¶¶ 8–21; Vergara Decl. ¶¶ 9–16; Morton Decl. ¶¶ 8–16.  Courts in this district have recently held rates of up to $2,169 for partners, up to $1,552 for counsel, up to $1,278 for associates, and up to $710 for support staff to be reasonable and consistent with market rates in the area.  *See Pac. Steel Grp. v. Com. Metals Co.*, No. 4:20-cv-07683, Dkt. No. 562 at 36–37 (N.D. Cal. Sept. 29, 2025); *Comet Techs. USA Inc., v. XP Power LLC*, No. 5:20-cv-06408, Dkt. No. 585 at 8 (N.D. Cal. Jan. 28, 2025); *see also QuickLogic Corp. v. Konda Techs., Inc.*, No. 5:21-cv-04657, Dkt. No. 202 at 4–5, Dkt. No. 211 at 4–5 (N.D. Cal. May 27, 2025); *Lynwood Invs. CY Ltd. v. Konovalov*, No. 3:20-cv-03778, Dkt. No. 201 at 10–13 (N.D. Cal. Apr. 11, 2023) ($1,293 per hour for a partner reasonable in 2022 and $882 per hour for an of counsel reasonable in 2021), *vacated on other grounds*, 2024 WL 4688895 (9th Cir. Nov. 6, 2024); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (rates between $870 and $1,200 per hour for senior attorneys "fair and reasonable" in 2017); *Wynn v. Chanos*, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015) (finding a rate of $1,085 per hour for a partner and $710 per hour for associates reasonable in 2015), *aff'd*, 685 Fed. App'x 578 (9th Cir. 2017).

## C.    The Number of Hours Expended by Plaintiffs' Counsel Is Reasonable

Since September 2019, Plaintiffs' counsel have spent more than 21,500 hours working on this case through initial motion practice, appeal, fact discovery, expert discovery, trial, and post-trial motions and hearings.  *See* Block Decl. ¶ 5; Lehmann Decl. ¶ 7; Vergara Decl. ¶ 5, Morton Decl. ¶¶ 7–18.

The hours Plaintiffs' counsel expended are commensurate with the length and complexity of the case.  *First*, the sophistication of Defendants' spyware and Defendants' attacks on Plaintiffs made it more challenging for Plaintiffs to investigate and understand Defendants' misconduct, leading to the retention of both testifying and consulting experts.  *See, e.g.*, Dkt. No. 802 at 9 ("The court . . . places emphasis on the covert, undetectable nature of defendants' technology, as well as the repeated efforts to circumvent plaintiffs' security measures . . . ."); Dkt. No. 747-2 at 34 (trial

20

testimony from NSO CEO Yaron Shohat that NSO's exploits were "very sophisticated"); Dkt. No. 747-4 at 138:9–140:13 (trial testimony from Claudiu Gheorghe that it was a "very sophisticated . . . attack and exploit").

*Second*, Defendants' business model is based around covert attacks and secrecy, making it hard for Plaintiffs to develop the factual record. *See Soc. Data Trading*, 2022 WL 18806267, at *6 (finding that "the amount of time counsel spent working on the case was reasonable" because defendant "is engaged in surreptitious online activity, which takes time to investigate"); *see also* Dkt. No. 802 at 10 ("[T]he court agrees with plaintiffs' argument that the evidence 'establishes that NSO maintains the technical expertise and commercial incentives not only to access plaintiffs' servers, but also to hide any access from plaintiffs.'").

*Third*, that Defendants are headquartered in Israel not only increased the complexity of serving Defendants, but also introduced issues unique to Israeli law including the DECL. *See Soc. Data Trading*, 2022 WL 18806267, at *6 ("SDTL is also based abroad, which required Meta's attorneys to take extra steps to serve SDTL with process.").

*Lastly*, Defendants' litigation tactics, including their refusal to participate in discovery, expanded the scope of the issues to be litigated, necessitating the filing of additional motions and preparation for oral arguments. *See, e.g.*, Dkt. No. 235-2 (Plaintiffs' motion to compel discovery under *Richmark*); Dkt. No. 289 (February 15, 2024 hearing regarding Plaintiffs' motion to compel discovery under *Richmark*); Dkt. No. 405-2 (Plaintiffs' motion for sanctions).

The Court should accordingly find that the hours expended by Plaintiffs' attorneys on this litigation are reasonable. *See Sluchevsky*, 2020 WL 5823277, at *10 ("Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." (cleaned up)); *see also Ketchum,* 17 P.3d at 742 ("[A]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee.").

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for attorney's fees in the amount of $15,914,095.

Dated:  November 26, 2025

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  /s/ Micah G. Block
    Greg D. Andres
    Antonio J. Perez-Marques
    Luca Marzorati
      (admitted *pro hac vice*)
    DAVIS POLK & WARDWELL LLP
    450 Lexington Avenue
    New York, New York 10017
    Telephone: (212) 450-4000
    Facsimile: (212) 701-5800
    Email: greg.andres@davispolk.com
          antonio.perez@davispolk.com
          luca.marzorati@davispolk.com

    Micah G. Block (SBN 270712)
    DAVIS POLK & WARDWELL LLP
    900 Middlefield Road, Suite 200
    Redwood City, California 94063
    Telephone: (650) 752-2000
    Facsimile:  (650) 752-2111
    Email: micah.block@davispolk.com

    *Attorneys for Plaintiffs*
    *WhatsApp LLC and Meta Platforms, Inc.*