1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
      jakro@kslaw.com
2   AARON S. CRAIG (Bar No. 204741)
      acraig@kslaw.com
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1600
4   Los Angeles, CA 90071
    Telephone: (213) 443-4355
5   Facsimile: (213) 443-4310

6   Attorneys for Defendants
    NSO GROUP TECHNOLOGIES LIMITED and
7   Q CYBER TECHNOLOGIES LIMITED

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                         OAKLAND DIVISION
11

12  WHATSAPP INC., a Delaware corporation,      Case No. 4:19-cv-07123-PJH
    and FACEBOOK, INC., a Delaware
13  corporation,                                **DEFENDANTS NSO GROUP
                                                TECHNOLOGIES LIMITED AND Q
14                  Plaintiffs,                 CYBER TECHNOLOGIES OPPOSITION
            v.                                  TO PLAINTIFFS' MOTION FOR
15                                              ATTORNEY'S FEES**
    NSO GROUP TECHNOLOGIES LIMITED
16  and Q CYBER TECHNOLOGIES LIMITED,           Date: January 22, 2026
                                                Time: 1:30 PM
17                  Defendants.                 Courtroom:  3
                                                Judge: Hon. Phyllis J. Hamilton
18
                                                Action Filed: 10/29/2019
19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

        A.      Complaint and Initial Motion Practice........................................................ 2

        B.      Interlocutory Appeal ................................................................................. 3

        C.      Discovery ................................................................................................. 3

        D.      Summary Judgment and Damages Trial ..................................................... 3

        E.      Plaintiffs' Motion for Attorneys' Fees....................................................... 4

III.    ARGUMENT ...................................................................................................... 5

        A.      CDAFA Is the Only Basis for a Fees Award. ............................................ 5

        B.      Plaintiffs May Receive Reasonable Fees Only for Their CDAFA Claim. ............. 7

        C.      Plaintiffs' Fee Request Is Not Reasonable................................................. 9

                1.      Plaintiffs Must Be Ordered to Produce Time Entries. ............................... 11

                2.      Plaintiffs Fail to Establish Prevailing Rates................................ 13

                3.      Plaintiffs' Hours and Requested Fees Are Not Reasonable...................... 16

IV.     CONCLUSION ................................................................................................ 19

1

2

<u>**TABLE OF AUTHORITIES**</u>

3

**Page(s)**

4

**Cases**

5

*Akins v. Enter. Rent-A-Car Co. of S.F.,*
 79 Cal. App. 4th 1127 (2000).................................................................. 8

*Alki Partners, LP v. DB Fund Servs., LLC,*
 4 Cal. App. 5th 574 (2016)............................................................. 5, 6, 7

*Alzheimer's Inst. of Am. v. Eli Lilly & Co.,*
 No. 10-CV-00482-EDL, 2016 WL 7732621 (N.D. Cal. Apr. 14, 2016) ........................ 12, 18

*Amphastar Pharms. Inc. v. Aventis Pharma SA,*
 No. 5:09-CV-00023-SHK, 2020 WL 8680070 (C.D. Cal. Nov. 13, 2020) ........................ 10

*Bell v. Williams,*
 No. 18-CV-01245-SI, 2023 WL 4850761 (N.D. Cal. July 28, 2023)..................................... 11

*Berman v. Freedom Fin. Network, LLC,*
 30 F.4th 849 (9th Cir. 2022)........................................................................... 8

*BillFloat Inc. v. Collins Cash Inc.,*
 No. 20-CV-09325-EMC, 2023 WL 2333879 (N.D. Cal. Mar. 1, 2023)................................... 7

*Blanchard v. Bergeron,*
 489 U.S. 87 (1989)..................................................................................... 10

*Buena Vista, LLC v. New Res. Bank,*
 No. C 10-01502 CW, 2011 WL 3794904 (N.D. Cal. Aug. 26, 2011) ........................................ 9

*Camacho v. Bridgeport Fin., Inc.,*
 523 F.3d 973 (9th Cir. 2008)......................................................................... 16

*Carnes v. Zamani,*
 488 F.3d 1057 (9th Cir. 2007)......................................................................... 5

*Christian Rsch. Inst. v. Alnor,*
 165 Cal. App. 4th 1315 (2008)............................................................... 11, 13, 19

*Comet Techs. USA Inc., v. XP Power LLC,*
 No. 5:20-cv-06408, Dkt. No. 585 (N.D. Cal. Jan. 28, 2025) ...................................... 15

*Cyclone USA, Inc. v. LL & C Dealer Servs., LLC,*
 No. CV 03-992 AJW, 2010 WL 2104963 (C.D. Cal. May 24, 2010) ................................. 8, 9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*Diamond v. John Martin Co.*,
    753 F.2d 1465 (9th Cir. 1985)................................................................................. 8

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
    122 F.3d 1211 (9th Cir. 1997)............................................................................ 9, 13

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023).................................................................................. 7

*Facebook, Inc. v. Sluchevsky*,
    No. 19-CV-01277-JSC, 2020 WL 5823277, at *11 (N.D. Cal. Aug. 28, 2020),
    *report and recommendation adopted*, No. 19-CV-01277-YGR, 2020 WL
    5816578 (N.D. Cal. Sept. 30, 2020)....................................................................... 9

*Facebook, Inc. v. Sluchevsky*,
    No. 19-CV-01277-JSC, 2020 WL 5823277 (N.D. Cal. Aug. 28, 2020)................................ 15

*Gilead Scis., Inc. v. Merck & Co.*,
    2017 WL 3007071 (N.D. Cal. July 14, 2017)...................................................... 17, 18

*Golba v. Dick's Sporting Goods, Inc.*,
    238 Cal. App. 4th 1251 (2015)........................................................................ 18, 19

*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013).............................................................................. 12

*Heppler v. J.M. Peters Co.*,
    73 Cal. App. 4th 1265 (1999)................................................................................. 8

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) .................................................................. 10, 11, 13, 16

*Kilopass Tech., Inc. v. Sidense Corp.*,
    82 F. Supp. 3d 1154 (N.D. Cal. 2015) .................................................................. 10

*KJ-Park, LLC v. Match Grp., LLC*,
    No. 23-CV-02346-VKD, 2025 WL 345921 (N.D. Cal. Jan. 30, 2025) ...................... 7, 12, 13

*Lynwood Invs. CY Ltd. v. Konovalov*,
    No. 3:20-cv-03778, Dkt. No. 201 (N.D. Cal. Apr. 11, 2023) ................................... 15

*Mai v. HKT Cal, Inc.*,
    66 Cal. App. 5th 504 (2021).................................................................................. 10

*Mann v. Quality Old Time Serv., Inc.*,
    139 Cal. App. 4th 328 (2006)................................................................................. 9

*Manriquez v. Vangilder*,
    No. 21-15403, 2022 WL 1184164 (9th Cir. Apr. 21, 2022) ................................... 9

iii

*Meta Platforms, Inc. v. Nguyen*,
    No. 21-CV-10066-JSC, 2023 WL 8686913 (N.D. Cal. Oct. 10, 2023) ................................. 10

*Mitchell v. Wells Fargo Bank, N.A.*,
    No. 13-04017-KAW, 2014 WL 1320295 (N.D. Cal. Apr. 1, 2014) ..................................... 16

*Mountjoy v. Bank of Am., N.A.*,
    245 Cal. App. 4th 266 (2016) .......................................................................................... 11

*Ng v. US Bank, NA*,
    No. 15-CV-04998-KAW, 2016 WL 6995884 (N.D. Cal. Nov. 30, 2016) ............................. 7

*Nitsch v. DreamWorks Animation SKG Inc.*,
    2017 WL 2423161 (N.D. Cal. June 5, 2017) ................................................................... 15

*Pac. Steel Grp. v. Com. Metals Co.*,
    No. 4:20-cv-07683, Dkt. No. 562 (N.D. Cal. Sept. 29, 2025) ........................................... 15

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV 11-07098-AB SHX, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ...................... 10

*QuickLogic Corp. v. Konda Techs., Inc.*,
    No. 5:21-cv-04657, Dkt. No. 202 ..................................................................................... 15

*Seguros La Metropolitana, S.A. v. Naviera Lavinel, C.A.*,
    No. CIV. 87-527-FR, 1989 WL 50115 (D. Or. May 11, 1989) ........................................ 18

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
    No. C 16-03463 WHA, 2020 WL 2539002 (N.D. Cal. May 19, 2020) ............................. 10

*Telegram Messenger Inc. v. Lantah, LLC*,
    No. 18-CV-02811-CRB, 2020 WL 6415506 (N.D. Cal. Nov. 2, 2020) ............................. 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    No. 7640, 2020 WL 5371404 (N.D. Cal. Sept. 8, 2020) ................................................... 17

*Wang v. Douglas Aircraft Co.*,
    121 F.3d 719 (9th Cir. 1997) .......................................................................................... 18

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) .......................................................................................... 17

*Wynn v. Chanos*,
    2015 WL 3832561 (N.D. Cal. June 19, 2015) ................................................................. 15

*Zhu v. Li*,
    No. 19-CV-02534-JSW, 2023 WL 4770431 (N.D. Cal. July 26, 2023) .............................. 7

*Upwork Glob. Inc. v. Growth Lab Inc.*,
    No. 23-CV-06605-DMR, 2024 WL 4184076 (N.D. Cal. Aug. 22, 2024) ............................ 7

iv

1

**Statutes**

2   Cal. Civ. Code § 1717(a)..............................................................................................7

3   Cal. Penal Code § 502(e)(2)......................................................................................5, 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS'          CASE NO. 5:24-cv-04660-EJD
MOTION FOR ATTORNEY'S FEES

1    **I.    INTRODUCTION**

2    By their Motion for Attorney's Fees, Plaintiffs request nearly $16 million, an award that

3    would dwarf the less than $4.45 million monetary award from the damages trial.  Plaintiffs have a

4    substantial burden to justify their entitlement to such an extraordinarily large award, including by

5    establishing that their counsel's rates are consistent with prevailing rates in the community in cases

6    like this one and by establishing the reasonableness of the type and amount of the work for which

7    they seek fees.  Plaintiffs' motion falls far short of that burden.  Instead of justifying their fees by

8    reference to the lodestar method, as California law requires, Plaintiffs seek to rely on fixed-fee

9    arrangements without providing the necessary information on individual lawyers' rates or

10   comparing those rates to prevailing rates in the community. Plaintiffs have also refused to produce

11   their counsel's time entries or any other evidence sufficient to establish the reasonableness of their

12   fees, and even the summary information that has been provided reflects millions of dollars in

13   overbilling and unrecoverable fees.

14   Plaintiffs' fees request should be denied or, at a minimum, substantially limited.  *First*,

15   Plaintiffs are not entitled to fees under a third-party indemnification provision in their terms of

16   service, but only under the California Comprehensive Data Access and Fraud Act ("CDAFA").

17   *Second*, Plaintiffs are not entitled to recover fees that relate solely to their contract claim or to their

18   unsuccessful trespass to chattels claim, but make no effort at any apportionment.  *Third*, Plaintiffs

19   should not be permitted to seek nearly $16 million in fees without producing contemporaneous time

20   records.  Plaintiffs' current motion is supported only by declarations from their litigation counsel,

21   which are not sufficient to allow Defendants (or the Court) to identify improper or unnecessary

22   time entries.  *Fourth*, Plaintiffs cannot rely on fixed-fee arrangements for their fee request, and they

23   fail to provide sufficient evidence of the prevailing rates that should be used to calculate their fee

24   lodestar. And, *fifth*, even Plaintiffs' generic descriptions of their activities reveal millions of dollars

25   in excessive and inefficient billing.  Plaintiffs' trial counsel, for example, billed more than

26   Plaintiffs' appellate counsel while this matter was stayed during NSO's interlocutory appeal.  For

27   all these reasons, Plaintiffs motion should be denied.  At a minimum, Plaintiffs should be ordered to

28   produce contemporaneous time records so that Defendants can then effectively oppose Plaintiffs' fee

1

1  request and lodestar calculations, with the remainder of their motion being denied.

2  **II.    BACKGROUND**

3      **A.    Complaint and Initial Motion Practice**

4      According to Plaintiffs, the events underlying this lawsuit primarily occurred in 2018 and

5  early 2019. (*See* Dkt. No. 465 at 4-5.) They culminated in April and May 2019, when Plaintiffs

6  identified a version of NSO's Pegasus product the installation process of which was initiated by the

7  program sending and receiving certain messages over WhatsApp's servers. (*See id.*) Plaintiffs

8  presented evidence that their own employees investigated and blocked the version of Pegasus at

9  issue. (*See id.* at 5.)

10      In September 2019, Plaintiffs engaged Cooley LLP and filed this lawsuit shortly afterward.

11  (*See* Decl. of Phillip E. Morton ("Morton Decl.") ¶ 4; Dkt. No. 1 ("Compl.").) The Complaint

12  alleged four causes of action: (1) violation of the federal Computer Fraud and Abuse Act

13  ("CFAA"), (2) violation of the CDAFA, (3) breach of WhatsApp's terms of service, and (4) trespass

14  to chattels. (Compl. ¶¶ 49-78.) Around the same time the Complaint was filed, Plaintiffs retained

15  the Israeli law firm Fischer advise on Israeli law, to review relevant documentation, and to assist

16  with preparing legal arguments. (Decl. of Ronald Lehmann ("Lehmann Decl.") ¶¶ 4, 6.) No lawyer

17  from Fisher, however, was admitted pro hac vice until March 30, 2023. (*See id.* ¶ 4.)

18      On April 2, 2020, Defendants moved to dismiss the Complaint. (*See* Dkt. No. 45.) On

19  April 23, 2020, Plaintiffs opposed. That same day, O'Melveny & Myers LLP first appeared on

20  Plaintiffs' behalf,[1] bringing the total number of firms representing Plaintiffs to three. (*See* Dkt. No.

21  54.) Plaintiff WhatsApp also moved to disqualify Defendants' litigation counsel, which the Court

22  denied. (*See* Dkt. No. 94.)

23      In May 2020, just a few weeks later, Plaintiffs engaged a *fourth* firm: Davis Polk &

24  Wardwell LLP. (*See* Decl. of Micah Block ("Block Decl.") ¶ 3.)

25      The Court eventually granted in part and denied in part Defendants' motion to dismiss.

26  (Dkt. No. 111.) In doing so, it dismissed Plaintiffs' claim for trespass to chattels. (*Id.* at 40-44.)

27

28      [1] This contradicts the declaration from O'Melveny & Myers partner Catalina Vergara, which claims that O'Melveny was retained only after appellate proceedings were "underway." (Decl. of Catalina Vergara ("Vergara Decl.") ¶ 3.)

Plaintiffs did not amend their Complaint to reassert that claim.

**B.    Interlocutory Appeal**

Defendants quickly noticed their intent to appeal the decision, so that they could preserve their right to immunity from suit under the doctrine of foreign sovereign immunity.  (*See* Dkt. Nos. 112, 157.)  Accordingly, the Court stayed the litigation as of September 29, 2020.  (Dkt. No. 155.) Cooley formally withdrew as counsel around that time, leaving Plaintiffs represented by three separate firms.  (*See* Dkt. Nos. 148-54; Morton Decl. ¶ 4.)

The district court litigation remained stayed for nearly two and a half years (*see* Vergara Decl. ¶ 3); the Supreme Court denied Defendants' petition for a writ of certiorari in January 2023. O'Melveny served as Plaintiffs' appellate counsel.  (*See* Pls' Mot. at 5-6; Vergara Decl. ¶ 3.)  Davis Polk does not claim any substantive involvement in the appeal.  (*See generally* Block Decl.)

**C.    Discovery**

Proceedings in this Court resumed in early 2023.  The Court entered a scheduling order on February 16, 2023.  (Dkt. No. 165.)  Davis Polk served as Plaintiffs' primary counsel, with O'Melveny assisting on a single third-party subpoena.  (Vergara Decl. ¶ 4.)

A central focus of discovery was whether, or to what extent, Defendants would be required to produce discovery that was otherwise subject to restrictions under Israeli law.  (*See* Dkt. Nos. 233, 292.)  In order to meet its obligations under both U.S. and Israeli law, Defendants produced approximately 5,000 documents (*see* Dkt. No. 429-3) and made four senior executives, including their CEO, available for deposition (*see* Pls.' Mot. at 3).

**D.    Summary Judgment and Damages Trial**

Ultimately, the Court granted Plaintiffs summary judgment on their remaining three claims. (Dkt. No. 494.)  First, it granted Plaintiffs summary judgment under the CFAA because the versions of NSO's technology at issue "obtain[ed] information about target users' devices via the WhatsApp servers."  (*Id.* at 12.)  Second, the Court granted Plaintiffs summary judgment on the CDAFA claim "for the same reasons," while also concluding, as an evidentiary sanction, that the versions of NSO's technologies at issue targeted California servers.  (*Id.* at 13.)  Third, the Court awarded Plaintiffs summary judgment on their contractual claim, finding that NSO had agreed to the terms

1    of service; that NSO breached the terms by reverse-engineering or decompiling WhatsApp code

2    while developing the technologies at issue; and that WhatsApp had incurred costs in investigating

3    and remediating those breaches. (*Id.* at 13-15.)

4       In late April and early May 2025, a trial was held on issues of damages.  After post-trial

5    motions were resolved, the Court entered a final judgment against NSO for $444,719 in

6    compensatory damages and $4,002,471 in punitive damages. (Dkt. No. 810.)  The judgment also

7    included a permanent injunction against NSO. (*Id.*)

8       **E.    Plaintiffs' Motion for Attorneys' Fees**

9       On November 26, 2025, Plaintiffs moved for an award of attorneys' fees. (Dkt. No. 816.)

10   They seek fees totaling $15,914,095, which includes fees charged by all four law firms.  Plaintiffs

11   seek these fees under CDAFA and an indemnity provision in WhatsApp's terms of service.

12      *Cooley.*  Plaintiffs seek $1,447,138.31 in fees incurred by Cooley during the one year it

13   represented them. (Morton Decl. ¶ 21.)  This includes a fixed fee of $50,000 for Cooley's work

14   opposing Defendants' motion to dismiss, with the remainder of Cooley's work being billed at

15   hourly rates. (*Id.* ¶ 6.)  Plaintiffs fail to provide time entries or descriptions detailing the hourly

16   work performed.  Based on the limited information set forth in Cooley's declaration, the vast

17   majority of the hourly fees were associated with WhatsApp's failed motion to disqualify King &

18   Spalding ($395,060.42) or have been lumped together in a single category described solely as

19   "[c]ase background, investigation, early motions, and general case communications"

20   ($607,394.72). (Morton Decl. ¶ 18.)

21      *O'Melveny*.  Plaintiffs seek $1,210,094.57 in fees incurred by O'Melveny for handling a

22   single set of appellate proceedings and a single third-party subpoena. (Vergara Decl. ¶¶ 3-4, 6.)

23   The vague descriptions of work performed suggest that O'Melveny also had some responsibilities

24   that overlapped with Plaintiffs' lead counsel, including involvement in motions to disqualify,

25   discovery, two memoranda on theories of liability, and the motion for summary judgment. (*See id.*

26   ¶ 5.)  Some of the work was performed at a fixed fee, which Plaintiffs do not disclose. (*See id.*)

27   The remainder of the work was billed at hourly rates, but Plaintiffs do not provide the actual number

28   of hours billed at their hourly rates (as opposed to hours captured by the fixed fee); do not provide

1   any lawyer's individual billing rate; do not provide rates for their associates and counsel at all; and

2   do not submit time entries detailing the work done.  (*See id.* ¶¶ 5-16.)

3       *Davis Polk*.  Plaintiffs seek $13,153,333 in fees incurred by Davis Polk between 2020 and

4   2025—including approximately $1.3 million while this case was entirely stayed.  (*See* Block Decl.

5   ¶¶ 22-38, 70.)  The fees were fixed by agreement, rather than hourly.  (*See id.* ¶ 14.)  Plaintiffs do

6   not, however, provide the actual agreement.  Nor do they provide evidence of their customary

7   hourly rates or any time entries, despite relying on that information to establish the reasonableness

8   of their request.

9       *Fischer*.  Plaintiffs seek $103,529.34 in fees incurred by Fischer between 2019 and 2025.

10  (Lehmann Decl. ¶ 24.)

11  **III.    ARGUMENT**

12      "In a diversity case, the law of the state in which the district court sits determines whether

13  a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is

14  governed by federal law."  *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007).  Accordingly,

15  Plaintiffs concede that state law governs both their right to any fees and the method of calculating

16  those fees.  (Mot. at 6-7.)

17      **A.    CDAFA Is the Only Basis for a Fees Award.**

18      Although CDAFA grants the court discretion to award reasonable attorneys' fees, *see* Cal.

19  Penal Code § 502(e)(2), Plaintiffs are not separately entitled to seek fees under the indemnity

20  provisions contained in their terms of service.

21      Ordinarily, "an indemnification provision allows one party to recover costs incurred

22  defending actions by third parties, *not attorney fees incurred in an action between the parties to the*

23  *contract*."  *Alki Partners, LP v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 600 (2016) (emphasis

24  added).  The use of key phrases such as "'indemnify' and 'hold harmless' generally obligates the

25  indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay

26  third persons—that is, it relates to third party claims, not attorney fees incurred in a breach of

27  contract action between the parties to the indemnity agreement itself."  *Id.*  Courts will also construe

28  the indemnification provision in the context of the broader agreement.  *Id.*  "Generally, if the

surrounding provisions describe third party liability, the clause will be construed as a standard third party indemnification provision." *Id.* Courts will not infer that an indemnification provision covers attorneys' fees between the contracting party if the language of the clause "does not specifically provide for attorney's fees *in an action on the contract*." *Id.* at 600-01 (cleaned up, emphasis in original). Indemnification clauses, for example, that reference "any and all losses, including reasonable attorney's fees, arising from any cause or for any reason whatsoever" *do not* permit the indemnitee to recover attorney's fees in an action against the indemnitor. *Id.* at 601 (cleaned up). Nor do indemnification clauses that provide protection against "any, all, and every claim" that arises out of the "performance of the contract." *Id.*

Here, the WhatsApp terms of service contain an indemnification provision that would require Defendants to "*defend*, *indemnify*, and *hold harmless* the WhatsApp Parties" from all liabilities (including reasonable legal fees) that relate in any way to three categories of claims.[2] (Mot. at 10 (citing Dkt. No. 741-13 at 6).) The provision thus uses the "key" phrases "indemnify" and "hold harmless," which indicate a traditional third-party indemnity clause, and it contains no express reference to a lawsuit between the contracting parties. *Alki*, 4 Cal. App. 5th at 600-01. One of the enumerated categories of indemnifiable claims refers to Defendants' "breach or alleged breach of the terms" (Mot. at 10), but, taken in context, that category clearly refers to third-party claims that may have arisen from a WhatsApp user's breach of the terms. First, the indemnity provision contains a defense obligation in addition to an indemnification obligation. (*See id.*) The defense obligation applies to all three categories of indemnifiable claims, which indicates that the category referencing "breaches" of the terms was not intended to encompass a suit between the indemnitor and the indemnitee directly. Second, the provision ends with a requirement that Defendants cooperate fully with WhatsApp in the defense or settlement of any claim, including one arising from Defendants' purported breach of the terms. (Mot. at 10.) Such a requirement would be absurd if the provision were intended to include claims directly between the parties, as it would permit WhatsApp to sue Defendants and then direct them to cooperate in settlement. For all these

_____

[2] Defendants do not waive any of their objections, arguments, or defenses relating to the Terms of Service or to Plaintiffs' claim for breach of contract.

6

1    reasons, the indemnity provision in the terms of service was plainly intended to be limited to third-

2    party claims.[3]

3          None of the cases cited by Plaintiffs requires otherwise.  None of those cases interpreted

4    the contractual language at issue here.  The Court is required to construe each indemnification

5    provision individually, just as it would any other contract.  *Alki*, 4 Cal. App. 5th at 600.  In *Zhu v.*

6    *Li*, No. 19-CV-02534-JSW, 2023 WL 4770431, at *4 (N.D. Cal. July 26, 2023), the court concluded

7    that an indemnity provision referencing the recovery of fees for breach was not limited to third

8    parties, in part because the context of the agreement did not support such a limitation (unlike the

9    context of the WhatsApp indemnification provision).  Similarly, in *Epic Games, Inc. v. Apple, Inc.*,

10    67 F.4th 946, 1004 (9th Cir. 2023), the court concluded that an indemnity referencing fees for

11    "breach" was not limited to third parties based in part on the "surrounding context" and in part on

12    the fact that the potential indemnitor could not provide an example of why a third party would sue

13    Apple (the indemnitee) for a potential breach of the contract.  Here, WhatsApp was plainly concerned

14    about its customers misusing its services in ways that could generate third-party claims against it

15    (*e.g.*, sending illegal content, sending illegal communications by auto-messaging or auto-dialing,

16    publishing falsehoods via WhatsApp, impersonating others, misusing intellectual property, etc.).

17    (*See* Dkt. No. 741-13 at 2, 5.)  Plaintiffs' remaining cases do not involve a party seeking fees under

18    an indemnity provision at all.[4]

19        **B.**    **Plaintiffs May Receive Reasonable Fees Only for Their CDAFA Claim.**

20          Given that CDAFA provides the only viable basis for recovering fees, Plaintiffs may only

21    recover fees on that statutory cause of action—and perhaps their claim under the federal CFAA to

---

[3] Even if the indemnity provision entitled Plaintiffs to seek fees in first-party actions, California law forbids unilateral fee-shifting provisions.  The California Civil Code provides that a fee-shifting provision authorizes fees for "the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not."  Cal. Civ. Code § 1717(a).  Accordingly, if the Court were to find that the indemnity clause permits Plaintiffs to seek fees from Defendants, it would also entitle Defendants to seek fees from Plaintiffs if Defendants prevail on appeal.  Indeed, if Plaintiffs succeed on their argument, they will be estopped from asserting that WhatsApp users in general are not entitled to recover their fees in litigation against WhatsApp.

[4] *KJ-Park, LLC v. Match Grp., LLC*, No. 23-CV-02346-VKD, 2025 WL 345921, at *2 (N.D. Cal. Jan. 30, 2025); *Upwork Glob. Inc. v. Growth Lab Inc.*, No. 23-CV-06605-DMR, 2024 WL 4184076, at *5 (N.D. Cal. Aug. 22, 2024); *BillFloat Inc. v. Collins Cash Inc.*, No. 20-CV-09325-EMC, 2023 WL 2333879, at *5 (N.D. Cal. Mar. 1, 2023); *Ng v. US Bank, NA*, No. 15-CV-04998-KAW, 2016 WL 6995884, at *8 (N.D. Cal. Nov. 30, 2016).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'          CASE NO. 5:24-cv-04660-EJD
MOTION FOR ATTORNEY'S FEES

1    the extent overlapping.  Fees relating to Plaintiffs' breach-of-contract claim and *unsuccessful*

2    trespass to chattels claim must be carved out of any award.

3        When a party asserts both a "cause of action for which attorney fees are provided by statute"

4    and "other causes of action for which attorney fees are not permitted, the prevailing party may

5    recover only on the statutory cause of action." *Akins v. Enter. Rent-A-Car Co. of S.F.*, 79 Cal. App.

6    4th 1127, 1133 (2000).  Although fees incurred on issues common to both types of claims may be

7    included in an award, *see id.*, the corollary is that fees incurred on issues unique to the non-fee-

8    bearing claim must be excluded.  The Court may forgo apportionment only if "the liability issues are

9    so interrelated that it would have been impossible to separate them into claims for which attorney

10   fees are properly awarded and claims for which they are not." *Id.*  Time-keeping and billing

11   procedures may make it difficult to segregate intertwined issues, but "they do not, without more,

12   make it impossible." *Heppler v. J.M. Peters Co.*, 73 Cal. App. 4th 1265, 1297 (1999) (quoting

13   *Diamond v. John Martin Co.*, 753 F.2d 1465, 1467 (9th Cir. 1985)).  As Plaintiffs' own authorities

14   acknowledge, "apportionment or an attempt at apportionment is required unless the court finds the

15   claims are so inextricably intertwined that even an estimated adjustment would be meaningless."

16   *Cyclone USA, Inc. v. LL & C Dealer Servs., LLC*, No. CV 03-992 AJW, 2010 WL 2104963, at *6

17   (C.D. Cal. May 24, 2010).

18       Here, Plaintiffs' contract claims present numerous issues that should be "severed and

19   isolated for purposes of the attorney fee award." *Id.*  To prove that WhatsApp's terms of service

20   constituted an enforceable contract, Plaintiffs were required to develop evidence regarding the

21   process for creating a WhatsApp account and assenting to the terms of service. *Berman v. Freedom*

22   *Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022).  Plaintiffs prepared a corporate designee

23   to testify on the topic.  (*See, e.g.*, Dkt. No. 419-2 at 5 (citing Dkt. No. 401-2 Ex. 2 at 175:2-10,

24   176:23-177:13, 185:14-19.))  None of this information related in any way to Plaintiffs' CDAFA

25   claim.  Plaintiffs also developed discovery regarding conduct specific to their breach-of-contract

26   claim, such as information about NSO's activities reverse-engineering or decompiling code.  (*See,*

27   *e.g.*, Dkt. No. 399-2 at 8.)  It is undisputed that neither reverse-engineering nor decompiling code

28

1   is prohibited by the CFAA or CDAFA.  (*See* Mot. at 13.)[5]  Relatedly, Plaintiffs were required to

2   address Defendants' affirmative defense of waiver in discovery and on summary judgment, which

3   was entirely unrelated to Plaintiffs' CDAFA claim.  (*See, e.g.*, Dkt. No. 419-2 at 7-8 & n.10.)  The

4   fees relating to these issues could be identified in billing records and segregated from any fee award,

5   regardless of whether some "common issues" separately exist between the CDAFA and contract

6   claims. Ultimately, the "mere fact that the [contract] claims were a part of this overall case and

7   involved the same parties does not mean that these claims arose from the same 'course and conduct'

8   as the other claims." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1230 (9th

9   Cir. 1997).  Because issues relating to Plaintiffs' contract claim can be segregated, "apportionment

10   or an attempt at apportionment is required." *Cyclone USA*, 2010 WL 2104963, at *6.[6]

11          As for Plaintiffs' trespass to chattels claim, they are not entitled to any fees for that claim

12   because this Court dismissed it, and Plaintiffs never sought to revive it. Plaintiffs fail to explain

13   how their dismissed trespass to chattels claim relied "on the same core conduct as Plaintiffs' other

14   claims." (Mot. at 16 n.4.)  Nor do they explain why it would be impracticable, if not impossible,

15   to separate their time entries into compensable and non-compensable units.  (*See id.*)  As a result,

16   they "may not recover for work on causes of action on which [they were] unsuccessful." *Mann v.*

17   *Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 342 (2006).

18          **C.     Plaintiffs' Fee Request Is Not Reasonable.**

19          Regardless of whether Plaintiffs' fee request is made under CDAFA or their terms of

20   service, the fees must be reasonable.  *See* Cal. Penal Code § 502(e)(2); Dkt. No. 741-13 at 6.

21   Plaintiffs' requested fees are not.  At a minimum, Plaintiffs have not provided sufficient information

22   to allow Defendants or the Court to assess the reasonableness of their request, which itself supports

23

24          [5] The Court's decision to enjoin these activities was premised, in part, on the erroneous conclusion that it was authorized to enjoin breaches of contract under California law. (*See* Dkt. No. 802 at 17.)

25          [6] None of Plaintiffs' other authorities alters this conclusion. *See Manriquez v. Vangilder*, No. 21-15403, 2022 WL 1184164, at *2 (9th Cir. Apr. 21, 2022) (applying precedent regarding

26   apportionment in civil rights cases); *Facebook, Inc. v. Sluchevsky*, No. 19-CV-01277-JSC, 2020 WL 5823277, at *11 (N.D. Cal. Aug. 28, 2020), *report and recommendation adopted*, No. 19-CV-

27   01277-YGR, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020) (default judgment case that did not specifically address apportionment); *Buena Vista, LLC v. New Res. Bank*, No. C 10-01502 CW, 2011

28   WL 3794904, at *5 (N.D. Cal. Aug. 26, 2011) (applying general rules regarding apportionment to the facts of a case involving RICO claims, unfair competition claims, and contract claims).

1   denying that request.

2          **First**, Plaintiffs largely seek fees based on fixed-fee arrangements, but California law is

3   clear that "a court assessing attorney fees begins with a touchstone or lodestar figure." *Ketchum v.*

4   *Moses*, 24 Cal. 4th 1122, 1131 (2001).  Federal courts routinely apply this method when calculating

5   reasonable fee awards under CDAFA.  *E.g.*, *Meta Platforms, Inc. v. Nguyen*, No. 21-CV-10066-

6   JSC, 2023 WL 8686913, at *1 (N.D. Cal. Oct. 10, 2023). The lodestar is calculated based on

7   prevailing hourly rates and the number of hours reasonably expended.[7]  *See id.* 1131-32, 1134.

8   Plaintiffs provide no California authorities permitting a court to supplant that analysis by simply

9   adopting a fixed-fee arrangement between the parties instead.  The sole California case Plaintiffs

10  cite addressed the standard for proving fees and costs as compensatory damages, which the court

11  distinguished from the standard for securing an award of fees in post-trial motions.  *Mai v. HKT*

12  *Cal, Inc.*, 66 Cal. App. 5th 504, 518-19 (2021).

13         Even the federal authorities that control fee awards under federal statutes make clear that

14  arrangements such as fixed-dollar fees "should not determine the court's decision. The criterion for

15  the court is not what the parties agree but what is reasonable." *Blanchard v. Bergeron*, 489 U.S.

16  87, 92 (1989).[8]  Plaintiffs are thus required to, but do not, submit evidence of individual attorneys'

17  billing rates and establish those rates' reasonableness through a comparison with prevailing rates

18  in CDAFA cases in this District.

19

20         [7] California law permits the lodestar to be adjusted based on several factors, *see Ketchum*, 24
    Cal. 4th at 1132, but Plaintiffs do not request any such adjustment.  To the contrary, they argue that
21  their request for fees in connection with Davis Polk's work is reasonable because it is less than the
    lodestar that they estimate for that same work.  (Mot. at 18.)

22         [8] The remaining cases cited by Plaintiffs do not require a different conclusion.  *See Amphastar*
    *Pharms. Inc. v. Aventis Pharma SA*, No. 5:09-CV-00023-SHK, 2020 WL 8680070, at *27 (C.D.
23  Cal. Nov. 13, 2020) (determining reasonableness of hourly rates; no reference to fixed-fee
    agreement); *Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, No. C 16-03463 WHA, 2020 WL
24  2539002, at *1 (N.D. Cal. May 19, 2020) (determining that monthly flat fees paid to counsel could
    be compensable in a patent case, but applying a 50 percent reduction to "ensure patent owner did
25  not overpay, yet still compensate Cisco for fees actually paid"); *Kilopass Tech., Inc. v. Sidense*
    *Corp.*, 82 F. Supp. 3d 1154, 1168, 1173-74 (N.D. Cal. 2015) (question before the court was whether
26  "a particular hybrid contingency agreement may be used in establishing a 'reasonable' rate for
    purposes of calculating the lodestar"; court refused to enhance the lodestar to account for the actual
27  fees and costs incurred under the special contingency arrangement); *Perfect 10, Inc. v. Giganews,*
    *Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *18 (C.D. Cal. Mar. 24, 2015) (addressing
28  how a court may determine the prevailing hourly rate when calculating a fee award; no discussion
    of abandoning the lodestar in favor of a fixed-fee agreement).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'          CASE NO. 5:24-cv-04660-EJD
MOTION FOR ATTORNEY'S FEES

1   *Second*, Plaintiffs do not submit sufficient information about the work for which they seek

2   fees to establish that those fees are reasonable.  The vague, high-level descriptions Plaintiffs provide

3   do not justify the size of their request, and the limited information Plaintiffs provide confirms that

4   Plaintiffs seek fees for plainly unnecessary, duplicative, and excessive work.

5               **1.    Plaintiffs Must Be Ordered to Produce Time Entries.**

6   As a threshold matter, Plaintiffs should be ordered to produce their counsel's time entries

7   so that Defendants could effectively oppose their fee request and so that the Court can properly

8   evaluate the lodestar.  *See* Civil L.R. 54-5(b)(2).

9   To determine reasonable compensation, the Court "must carefully review attorney

10  documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not

11  subject to compensation." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).  The party seeking

12  fees bears the burden of documenting the appropriate hours expended and hourly rates. *Christian*

13  *Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008).  Thus, Plaintiffs must provide records

14  sufficient to show how much time was spent on particular claims, whether the case was overstaffed,

15  and whether hours were reasonably expended. *Id.*  Many of the defenses available to parties

16  opposing fee requests (*e.g.*, reductions in hours for block billing, vague entries, clerical tasks,

17  inefficiency, etc.) also depend on access to detailed time records.  As a result, parties in both state

18  and federal court routinely satisfy their evidentiary burden by submitting time records, regardless

19  of whether strictly required to do so. *E.g., Mountjoy v. Bank of Am., N.A.*, 245 Cal. App. 4th 266,

20  270 (2016) ("The motion was supported by a 41–page "Billing Detail" printout showing the time

21  entries for the services provided."); *Christian Rsch. Inst.*, 165 Cal. App. 4th at 1324 (approving

22  trial court's assessment of billing entries); *Bell v. Williams*, No. 18-CV-01245-SI, 2023 WL

23  4850761, at *3 (N.D. Cal. July 28, 2023) ("In support of the fee motion, Bell has submitted

24  declarations from the lawyers and the paralegal who worked on the case describing their

25  professional experience and their work on this case, and attached to each declaration are the

26  attorney's or paralegal's time sheets.").

27  Here, Plaintiffs seek nearly $16 million in fees without submitting a single time entry or

28  even abstracts of time entries.  Instead, they rely on generalized descriptions of tasks or "categories"

11

of work that provide no way for Defendants or the Court to determine whether the vast number of hours described were spent efficiently, whether reductions for block billing are warranted, or whether other deductions from the lodestar may be appropriate.[9]

Cooley, for example, seeks more than $600,000 for work described only as "[c]ase background, investigation, early motions, and general case communications." (Morton Decl. ¶ 18.) Fees for internal communications without further descriptions are often removed from lodestar awards (*see infra* Section III.C.3), but determining which fees to remove would require access to detailed time records.  The risk of inefficiency also exists because Plaintiffs were simultaneously represented by as many as four law firms, resulting in the likely duplication of efforts and billing for tasks associated with Plaintiffs' transition from Cooley to Davis Polk. *See supra* Section II.A; *Alzheimer's Inst. of Am. v. Eli Lilly & Co.*, No. 10-CV-00482-EDL, 2016 WL 7732621, at *8 (N.D. Cal. Apr. 14, 2016) (identifying fees incurred during the transition of a matter between law firms and reducing them by 75 percent).  Without access to detailed time records, though, Defendants cannot identify the hours or fees that should be removed from the lodestar.

Similarly, Davis Polk often unnecessarily attended court proceedings with multiple lawyers. As examples only, four members of Davis Polk's "core" team attended the November 2023 hearing on *forum non conveniens* issues (Dkt. No. 232); four members of Davis Polk's core team attended the February 2024 discovery hearing (Dkt. No. 289); and six attended the November 2024 hearing on summary judgment (Dkt. No. 494 at 1).  For each of these hearings, only one member of the team was local—the rest traveled from New York.  Davis Polk similarly overstaffed depositions, with (for example) *four* separate attorneys defending the deposition of Claudiu Gheorghe and *three* defending the deposition of Carl Woog.  (*See* Declaration of J. Akrotirianakis Exhs. A & B.) Plaintiffs make no attempt to justify this apparent overbilling, but the proper amount of fees or number of hours to exclude from the lodestar cannot be determined without detailed time records. *See KJ-Park*, 2025 WL 345921, at *7 (declining to deduct fees for overstaffing because applicant

---

[9] Federal courts may opt to make "across the board" cuts when faced with large fee applications. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013).  The Court still must be able to justify the percentage of each reduction if the total exceeds ten percent.  *Id.* at 1203-04.  In this case, the billing information provided by Plaintiffs is so generic that it would be difficult to propose meaningful "across the board reductions" other than those specified below in Section III.C.3.

was only seeking fees for *one* attorney's time).

When the risk of overbilling is acute, a district court can abuse its discretion by refusing to require the production of original time records and billing statements. *See Ent. Rsch. Grp.*, 122 F.3d at 1232. Accordingly, Plaintiffs' motion should be denied—or, at a minimum, Plaintiffs should be ordered to produce contemporaneous time records so that Defendants and the Court may identify overstaffing, duplication of hours, and other excessive or otherwise unnecessary hours.

### 2.    Plaintiffs Fail to Establish Prevailing Rates.

Plaintiffs bear the burden of documenting their counsel's hourly rates as well. *Christian Rsch.*, 165 Cal. App. 4th at 1320. The prevailing rate, for purposes of the lodestar calculation, is the "rate for private attorneys in the community conducting *noncontingent* litigation of the same type." *Ketchum*, 24 Cal. 4th at 1133 (2001); *Christian Rsch. Inst.*, 165 Cal. App. 4th at 1321. According to Plaintiffs' own authorities, the party seeking fees "has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *KJ-Park*, 2025 WL 345921, at *4 (emphasis added).

Plaintiffs fail to meet their burden. They do not submit any evidence from disinterested parties regarding the prevailing rates in this District for technology litigation involving CFAA and CDAFA claims. They do not submit expert evidence, declarations establishing customary rates from local practitioners, or even marketing surveys regarding the rates charged by peer firms handling similar litigation.

The only evidence that they submit to establish the prevailing hourly rates for this matter are four declarations—one from each of Plaintiffs' litigation counsel.

*Davis Polk.* Plaintiffs' primary counsel, Davis Polk, asserts $13,153,333 in fees, but its declaration does not provide any of its attorneys' customary hourly rates. (Block Decl. ¶¶ 14, 70.) Plaintiffs do not explain the failure, other than to suggest that the fees were billed pursuant to an alternative fee arrangement. (*See* Block Decl. ¶ 14.) As discussed in Section III.C, however, such fee agreements do not alleviate a party from establishing the appropriate lodestar.

*Cooley.* Plaintiffs' initial counsel, Cooley, identifies six partners whose 2019 hourly rates

13

ranged from $1,025 to $1,605 and whose 2020 hourly rates ranged from $1,085 to $1,775; one special counsel whose 2019 hourly rate was $900 and whose 2020 rate was $1,020; and two associates whose 2019 hourly rates were $755 and whose 2020 hourly rates were $875. (Morton Decl. ¶¶ 8-16.) Cooley's declarant does *not* attest that these rates reflect the prevailing fees in the community for CFAA or CDAFA litigation. Nor does Cooley provide any information about the class year of the two associates, making it impossible to judge their level of experience or their rates. (*See* Morton Decl. ¶¶ 15-16.) Similarly, Plaintiffs apparently seek fees for the work of two dozen associates, resource attorneys, and staff, but provide no information about their qualifications or rates. (*See id.* ¶ 17.)

*O'Melveny*. O'Melveny's declarant states that the four senior attorneys assigned to the matter included three partners and one "senior leader" from its e-discovery practice. (*See* Vergara Decl. ¶¶ 8-12.) These four lawyers charged between "approximately" $900 and $1,400 per hour, but the declaration does not specify which lawyer charged which rate. (*See id.* ¶¶ 5, 9-12.) O'Melveny's declarant does *not* attest that these rates reflect the prevailing fees in the community for appellate work or for CFAA/CDAFA litigation. Plaintiffs also appear to seek fees for the work of two counsel and one associate, who spent over 600 hours on this matter collectively. (*See id.* ¶¶ 14-16.) No information is provided about their qualifications, nor is any information provided about their customary billing rates.

*Fischer*. Plaintiffs' Israeli counsel identifies fourteen lawyers whose fees Plaintiffs seek to recover. (Lehmann Decl. ¶¶ 8-21.) For many of the lawyers, Fischer's declarant presents a range of hourly fees charged between 2019 and 2025, without specifying the rates charged in a given year. (*See id.* ¶¶ 8-11, 13-14.) Fischer's declarant attests that the rates identified are the proper prevailing rates in the community charged for similar services, but does not identify a community or the relevant similar services—and merely refers back to Plaintiffs' motion for support. (*See id.* ¶ 22.)

In summary, no rate information is provided for any of Davis Polk's attorneys; two dozen Cooley associates, resource attorneys, and staff; and two counsel and one associate from O'Melveny. Incomplete rate information or qualifications are provided for two Cooley associates, O'Melveny's four senior lawyers, and seven of Fischer's attorneys. And, with respect to all of the

14

lawyers, Plaintiffs provide no third-party evidence establishing that the rates cited are consistent with the prevailing rates in the community for the work that was performed by each firm.  Indeed, the rates identified are far higher than rates that Facebook has paid in other CFAA matters in this jurisdiction during the relevant time period.  *See Sluchevsky*, 2020 WL 5823277, at *10.  Facebook has previously paid partner rates of $685 (2019) and $710 (2020), senior associate rates of $590 (2019) and $610 (2020), fourth-year associate rates of $335 (2019) and $360 (2020), and first-year associate rate of $200).  *See id.*  Given their failure to support the reasonableness of their counsel's rates in this matter, Plaintiffs should be denied recovery for all related fees.

None of the PACER materials or cases cited by Plaintiffs salvages their deficient showing.[10]  The *Pacific Steel* matter was an antitrust case in which the party seeking fees submitted declarations from all trial counsel, prior decisions holding those firms' rates to be reasonable, and expert testimony confirming that the rates identified are in line with prevailing rates.  *Pac. Steel Grp. v. Com. Metals Co.*, No. 4:20-cv-07683, Dkt. No. 562 at 35–37 (N.D. Cal. Sept. 29, 2025).  The fee request was also unopposed.  *Id.* at 37.  The *Comet Technologies* matter was a trade-secret dispute that resulted in a $40 million verdict.  *Comet Techs. USA Inc., v. XP Power LLC*, No. 5:20-cv-06408, Dkt. No. 585 at 1 (N.D. Cal. Jan. 28, 2025).  No specific challenge was raised to the rates or hours requested by Comet, but the company still provided third-party market surveys to confirm the reasonableness of its rates.  *Id.* at 7-8.  Similarly, the plaintiffs in *QuickLogic* supported their rates with excerpts from the American Intellectual Property Law Association's September 2019 survey.  *QuickLogic Corp. v. Konda Techs.*, Inc., No. 5:21-cv-04657, Dkt. No. 211 at 4 (N.D. Cal. May 27, 2025).  The fee request in the *Lynwood* matter was also supported by third-party surveys from the relevant time period, and the rates for associates and paralegals were not challenged.  *Lynwood Invs. CY Ltd. v. Konovalov*, No. 3:20-cv-03778, Dkt. No. 201 at 10–15 & n.8 (N.D. Cal. Apr. 11, 2023).  The remaining cases cited by Plaintiffs were decided years before the attorneys in this case rendered their services and are thus irrelevant.  *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017); *Wynn v. Chanos*, 2015

---

[10] Plaintiffs' motion does not request judicial notice of the PACER materials they cite, at least one of which is an attorney submission and not a court order.  (*See* Mot. at 20 (citing *QuickLogic Corp. v. Konda Techs., Inc.*, No. 5:21-cv-04657, Dkt. No. 202 at 4–5).)

15

1    WL 3832561, at *2 (N.D. Cal. June 19, 2015); *see Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973,

2    981 (9th Cir. 2008) (holding district court abused its discretion in applying market rates in effect

3    more than two years before work performed).  None of these cases reflects the prevailing rates for

4    CFAA/CDAFA work (Davis Polk, Cooley), for appellate work (O'Melveny), or for a specialty in

5    foreign law (Fischer).  And none of them covers the full time period of this litigation.

6        In sum, Plaintiffs have failed to satisfy their burden of establishing a prevailing market rate

7    in order to calculate an appropriate lodestar.  As a result, the motion should be denied.

8                    **3.        Plaintiffs' Hours and Requested Fees Are Not Reasonable.**

9        Finally, the Court must "carefully review attorney documentation of hours expended" to

10   ensure that no inefficient or duplicative efforts are compensated.  *Ketchum*, 24 Cal. 4th at 1132.  As

11   discussed above, the lack of detailed billing information hampers Defendants' ability to contest the

12   hours (and hence the fees) identified by Plaintiffs.  Nonetheless, even the limited information

13   provided by Plaintiffs indicates that substantial reductions in hours and related fees are required.

14       ***First***, Plaintiffs seek to recover $395,060.42 (526.1 hours of attorney time) for a single

15   motion to disqualify.  (*See* Morton Decl. ¶ 18.)  Plaintiffs are not entitled to any fees for that motion

16   because this Court denied it, and it was not necessary or related to any of the claims on which

17   Plaintiffs prevailed. That aside, the hours Plaintiffs seek are plainly excessive. *See Mitchell v. Wells*

18   *Fargo Bank, N.A.*, No. 13-04017-KAW, 2014 WL 1320295, at *4 (N.D. Cal. Apr. 1, 2014)

19   (approving 37.4 hours as reasonable for counsel to prepare a Rule 12(b)(6) motion, to draft the

20   subsequent reply, to prepare a supplemental brief, and to attend the motion hearing).  Neither

21   Plaintiffs nor Cooley provide any explanation as to why a single, unsuccessful motion at the outset

22   of the case would require *526.1 hours* of attorney time.  Assuming that the motion to disqualify

23   prepared by Cooley were twice as complex as a Rule 12(b)(6) motion, 75 hours would be the

24   reasonable number of hours.  Accordingly, the lodestar for this category of fees should be reduced

25   by at least 85 percent.

26       ***Second***, Plaintiffs seek to recover $607,394.72 (807.2 hours of attorney time) for a single

27   category of Cooley's fees (unsupported by any billing records or other explanation) labeled "[c]ase

28   background, investigation, early motions, and general case communications." (Morton Decl. ¶ 18.)

DEFENDANTS' OPPOSITION TO PLAINTIFFS'                    CASE NO. 5:24-cv-04660-EJD
MOTION FOR ATTORNEY'S FEES

1    Such requests are unacceptably vague. *See, e.g.*, *Gilead Scis., Inc. v. Merck & Co.*, 2017 WL

2    3007071, at *8 (N.D. Cal. July 14, 2017) (finding "[d]escriptions such as 'work on case

3    coordination,' 'work on case strategy issue,' 'work on case facts,' and 'work on case arguments'"

4    inadequate as vague). Such entries should be deducted from the lodestar in their entirety. *See id.*

5    (finding where "40 percent of the hours identified . . . [were] vague," a "40% reduction [was]

6    justified for vague entries"). Fees should also be reduced if generated by unnecessary internal

7    communications. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No.

8    7640, 2020 WL 5371404, at *10 (N.D. Cal. Sept. 8, 2020) (citing *Welch v. Metro. Life Ins. Co.*,

9    480 F.3d 942, 949 (9th Cir. 2007)).

10    **Third**, Plaintiffs seek to recover $1,210,094.57 paid to their appellate counsel, O'Melveny.

11    (Vergara Decl. ¶ 6.) O'Melveny's role, however, primarily involved opposing Defendants' Ninth

12    Circuit appeal, opposing Defendants' cert petition, and leading a meeting with the Solicitor

13    General.[11]  (*See id.* ¶ 3.) The appellate attorneys identified in O'Melveny's declaration spent

14    "nearly" or "approximately" 1,191 hours, which is excessive on its face. (*Id.* ¶¶ 9-11, 14-16.)

15    Assuming that 75 hours is a reasonable amount of time to draft a complex brief, and even 15 hours

16    to prepare for a meeting with a government official, a reasonable number of hours for O'Melveny's

17    appellate attorneys would be 315—as O'Melveny's appellate counsel prepared four filings and led

18    one meeting. (*See* Mot. at 5-6.) The loadstar associated with O'Melveny's work should thus be

19    reduced by at least 876 hours or 73.6 percent.

20    **Fourth**, Plaintiffs seek to recover approximately $1,256,000 paid to their trial counsel at

21    Davis Polk, *while the trial court litigation was stayed pending appeal*. (Block Decl. ¶¶ 22-38, 70.)

22    The fees appear to have been billed primarily for "ongoing strategic analysis," third-party

23    discovery, and "managing document collection and production." (*Id.*) Many of the same entries

24    make only vague reference to "ongoing strategic analysis." (Block Decl. ¶¶ 23, 25, 29, 31-38.)

25    The entry in Paragraph 47 is similarly vague. (*Id.* ¶ 47.) Together, these entries account for 971.5

26

27    [11] O'Melveny also assisted Plaintiffs with one third-party subpoena to Amazon Web Services.
(Vergara Decl. ¶ 4.) Most of that work appears to have been conducted by a "senior leader" in
O'Melveny's e-discovery practice, who spent "nearly eighty hours" on those tasks. (*Id.* ¶ 12.)

28    O'Melveny indicates that other work was performed for a fixed fee, but does not identify the fixed
fee charged or the hours attributable to work performed at the fixed fee. (*See iId.* ¶ 5.)

DEFENDANTS' OPPOSITION TO PLAINTIFFS'                    CASE NO. 5:24-cv-04660-EJD
MOTION FOR ATTORNEY'S FEES

1    hours of attorney time, all of which should be excluded from any lodestar calculation. *See, e.g.*,

2    *Gilead Scis.*, 2017 WL 3007071, at *8 (rejecting as vague "[d]escriptions such as 'work on case

3    coordination,' 'work on case strategy issue,' 'work on case facts,' and 'work on case arguments'").

4    While some work could theoretically be appropriate during the stay, Plaintiffs fail to explain

5    why their trial counsel billed them more than their appellate counsel during that period. Nor do

6    Plaintiffs explain why it was reasonable for them to pursue such substantial third-party discovery

7    or collect documents during a court-imposed stay. Accordingly, this subset of fees should be

8    reduced by at least ninety percent. *See Telegram Messenger Inc. v. Lantah, LLC*, No. 18-CV-

9    02811-CRB, 2020 WL 6415506, at *8 (N.D. Cal. Nov. 2, 2020) (reducing hours billed during stay

10   by ninety percent); *Alzheimer's Inst. of Am.*, 2016 WL 7732621, at *7 (same).

11   *Fifth*, California law is clear that the "lodestar cannot take into account attorney fees for

12   work performed on behalf of California clients by out-of-state counsel who were not members of

13   the California Bar or admitted to practice law on a pro hac vice basis when the legal services were

14   rendered." Cal. Prac. Guide Civ. Trials & Ev. § 17:743 (citing *Golba v. Dick's Sporting Goods,*

15   *Inc.*, 238 Cal. App. 4th 1251 (2015)). Holding otherwise would compensate the unauthorized

16   practice of law. *Id.*

17   Here, the Israeli law firm Fischer claims to have begun representing Plaintiffs in November

18   2019. (Lehmann Decl. ¶ 4.) Fischer concedes, however, that it did not formally appear or seek

19   admission pro hac vice until March 30, 2023. (*Id.*). Accordingly, any fees that Fischer accrued

20   before that date cannot be included in the lodestar calculation. Fischer's declaration, however, does

21   not include time sheets—or even enough detail—to allow Defendants or the Court to identify which

22   of its fees were billed on or after March 20, 2023. As a result, Fischer's fees of $103,529.34 must

23   be excluded.

24   Neither of the cases cited by Plaintiffs requires otherwise. They concede that California

25   law controls both their right to fees and the method of calculating those fees. (Mot. 6-7.) *Seguros*

26   *La Metropolitana, S.A. v. Naviera Lavinel, C.A.*, No. CIV. 87-527-FR, 1989 WL 50115 (D. Or.

27   May 11, 1989), was a matter brought in admiralty and does not address California law. *Wang v.*

28   *Douglas Aircraft Co.*, 121 F.3d 719 (9th Cir. 1997), is an unpublished decision from 1997 that

18

1   cannot be cited to Ninth Circuit courts.  9th Cir. R. 36-3(c).  Regardless, the *Wang* opinion was

2   issued before the California state-court decisions addressing awards of fees to foreign counsel.  *See*

3   *Golba*, 238 Cal. App. 4th at 1261-63 (relying on a California Supreme Court decision from 1998).

4                                               *  *  *

5          Ultimately, Plaintiffs' vague, generic time descriptions warrant denial of their motion.  *See*

6   *Christian Rsch. Inst.*, 165 Cal. App. 4th at 1329 ("[C]ounsel may not submit a plethora of

7   noncompensable, vague, blockbilled attorney time entries and expect particularized, individual

8   deletions as the only consequence.").  Plaintiffs' generic references to "covert attacks and secrecy,"

9   to NSO's location in Israel, and to the difficulties of discovery have nothing to do with

10  substantiating their fee request and cannot justify their failure to do so adequately.[12]

11  **IV.     CONCLUSION**

12         For the foregoing reasons, Plaintiffs' Motion for Attorney's Fees should be denied.  In the

13  alternative, Plaintiffs should be ordered to produce contemporary time records in support of their

14  fee request, and Defendants should be given leave to file an amended opposition 30 days after any

15  production has been completed.

16  Dated: December 17, 2025                   KING & SPALDING LLP

17

18                                             By:  */s/ Joseph N. Akrotirianakis*
                                                   JOSEPH N. AKROTIRIANAKIS
19                                                 AARON S. CRAIG

20                                             *Attorneys for Defendants*

21

22

23

24

25

26

---

27  [12] Plaintiffs' unsubstantiated suggestion that NSO's *inability* to produce certain discovery
    somehow caused them to spend *more* money makes no sense.  NSO's inability to produce certain
28  documents and information likely *saved* Plaintiffs money, given that document-review fees are
    often a prime driver of litigation expenses.

                                               19