Greg D. Andres
Antonio J. Perez-Marques
Luca Marzorati
  (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    greg.andres@davispolk.com
              antonio.perez@davispolk.com
              luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email:    micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| WHATSAPP LLC and<br>META PLATFORMS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED<br>and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF**<br>**MOTION FOR ATTORNEY'S FEES**<br><br>Date:    January 22, 2026<br>Time:   1:30 p.m.<br>Ctrm:   3<br>Judge:  Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..........................................................................................................................2

I.    Plaintiffs May Recover All of Their Fees Under the CDAFA ...............................2

II.   Plaintiffs' Fee Request Is Reasonable and Supported ........................................5

    A.    Plaintiffs' Fixed-Fee Agreements Reflect a Reasonable Fee ....................5

    B.    Plaintiffs Have Substantiated Their Request .............................................7

    C.    Plaintiffs Establish Prevailing Market Rates .............................................8

    D.    Plaintiffs' Hours and Requested Fees Are Reasonable ...........................10

CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

<u>CASES</u>

<span align="right"><u>PAGE(S)</u></span>

*Akins v. Enter. Rent-A-Car Co. of S.F.*,
  94 Cal. Rptr. 2d 448 (2000) ........................................................................... 5

*Alzheimer's Inst. of Am. v. Eli Lilly & Co.*,
  2016 WL 7732621 (N.D. Cal. Apr. 14, 2016), *aff'd sub nom.*
  *AIA Am., Inc. v. Eli Lilly & Co.*, 695 F. App'x 573 (Fed. Cir. 2017) .................. 12, 13

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
  2020 WL 8680070 (C.D. Cal. Nov. 13, 2020) ............................................... 7

*Bell v. Farmers Ins. Exch.*,
  2004 WL 1281818 (Cal. Ct. App. June 9, 2004) ........................................... 9

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ...................................................................................... 6, 7

*City of Los Angeles v. Metro. Water Dist. of S. California*,
  42 Cal. App. 5th 290 (2019) ....................................................................... 11

*City of Sacramento v. Drew*,
  207 Cal. App. 3d 1287 (1989) .................................................................... 12

*Clark v. Am. Marine Corp.*,
  320 F. Supp. 709 (E.D. La. 1970) ............................................................... 6

*Cyclone USA, Inc. v. LL & C Dealer Servs., LLC*,
  2010 WL 2104963 (C.D. Cal. May 24, 2010) ............................................. 4

*Democratic Party of Washington State v. Reed*,
  388 F.3d 1281 (9th Cir. 2004) .................................................................... 15

*Doskocz v. ALS Lien Servs.*,
  321 Cal. Rptr. 3d 476 (2024) ...................................................................... 8

*Elation Sys., Inc. v. Fenn Bridge LLC*,
  2023 WL 5988731 (Cal. Ct. App. Sept. 15, 2023) ...................................... 14

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) .................................................................... 4

*Facebook, Inc. v. Sluchevsky*,
  2020 WL 5823277 (N.D. Cal. Aug. 28, 2020) ............................................ 9

*Gajanan Inc. v. City & Cnty. of San Francisco*,
  2025 WL 1076796 (Cal. Ct. App. Apr. 10, 2025) ....................................... 15

*Golba v. Dick's Sporting Goods, Inc.*,
  238 Cal. App. 4th 1251 (2015) .................................................................... 15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................... 5, 11–12

*Heppler v. J.M. Peters Co.*,
  73 Cal. App. 4th 1265 (1999) ..................................................................... 4

*Kilopass Tech., Inc. v. Sidense Corp.*,
  82 F. Supp. 3d 1154 (N.D. Cal. 2015) ..................................................... 7, 10

*Lansmont Corp. v. SPX Corp.*,
  2014 WL 1267003 (N.D. Cal. Mar. 27, 2014) .......................................... 10

*Mai v. HKT Cal, Inc.*,
  66 Cal. App. 5th 504 (2021) ........................................................................ 7

*Meta Platforms, Inc. v. Soc. Data Trading Ltd.*,
  2022 WL 18806267 (N.D. Cal. Nov. 15, 2022) ....................................... 11

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ..................................................................... 6

*Nemecek & Cole v. Horn*,
  208 Cal. App. 4th 641 (2012) ................................................................... 10

*Perdue v. Kenny A ex. Rel. Winn*,
  559 U.S. 542 (2010) ..................................................................................... 6

*Perfect 10, Inc. v. Giganews, Inc.*,
  2015 WL 1746484 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) ............... 6–7

*PLCM Grp. v. Drexler*,
  22 Cal. 4th 1084 (2000), *as modified* (June 2, 2000) ......................... 9, 10

*Powell v. FCA US LLC*,
  2020 WL 4937358 (E.D. Cal. Aug. 24, 2020) ........................................... 3

*Raining Data Corp. v. Barrenechea*,
  175 Cal. App. 4th 1363 (2009) .................................................................... 7

*Ramirez v. Trans Union, LLC*,
  2022 WL 17722395 (N.D. Cal. Dec. 15, 2022) .......................................... 9

*Si Nos Dejan v. BPBH*,
  2005 WL 1377126 (Cal. Ct. App. June 10, 2005) ..................................... 14

*Skyline Advanced Tech. Servs. v. Shafer*,
  2020 WL 7025081 (N.D. Cal. Nov. 30, 2020) ........................................... 9

*Straight Path IP Grp., Inc. v. Cisco Systems, Inc.*,
  2020 WL 2539002 (N.D. Cal. 2020) ..................................................... 5, 6

*Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*,
  249 Cal. Rptr. 3d 309 (2019) .................................................................... 7, 8

*Syers Props. III, Inc. v. Rankin*,
  172 Cal. Rptr. 3d 456 (2014) ........................................................................ 9

*Telegram Messenger Inc. v. Lantah, LLC*,
  2020 WL 6415506 (N.D. Cal. Nov. 2, 2020) ............................................... 13

*United Steelworkers of Amer. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) ........................................................................ 8

*Webb v. Sloan*,
  330 F.3d 1158 (9th Cir. 2003) ...................................................................... 5

*Yuga Labs, Inc. v. Ripps*,
  2024 WL 489248 (C.D. Cal. Jan. 11, 2024) ................................................ 10

*Zynga Inc. v. Waas*,
  2011 WL 588147 (N.D. Cal. Jan. 31, 2011), *report and recommendation adopted*, 2011 WL
  588050 (N.D. Cal. Feb. 10, 2011) .............................................................. 14

STATUTES & RULES

Cal. Civ. L. R. 54-5(b)(2).................................................................................... 8

## PRELIMINARY STATEMENT

NSO concedes that Meta is entitled to recover fees under CDAFA and focuses its Opposition primarily on challenging the amount of the fees to be awarded.  NSO's arguments fail for multiple reasons, and this Court should grant Plaintiffs' motion and order NSO to pay Plaintiffs' reasonable attorney's fees in the amount of $15,914,095.

*First*, Plaintiffs may independently recover all their fees pursuant to the CDAFA.  Accordingly, NSO's arguments regarding recovery of fees pursuant to the Terms of Service are immaterial. *Second*, and relatedly, Plaintiffs do not need to apportion their fees claim-by-claim because their claims are interrelated, both legally and factually, and it would not be feasible to so apportion them. *Third*, Plaintiffs' request is reasonable and supported.  Plaintiffs litigated these claims over more than six years.  The litigation involved voluminous fact and expert discovery, as well as researching, drafting, and arguing numerous motions—motions to dismiss, cross motions for summary judgment, appeals to the Ninth Circuit and Supreme Court, *Daubert* motions, a motion for a permanent injunction, and a motion for a new trial.  This case required a sophisticated understanding of multiple subject matters and areas of law, many of which presented novel issues.  Discovery was further complicated by the fact that NSO violated this Court's orders, requiring significant motion practice resulting in sanctions against NSO.  Plaintiffs could have requested an enhancement to their fees, but have requested only what they paid to Plaintiffs' counsel.[1]  Moreover, Plaintiffs' requested fees reflect a substantial discount to rates charged in similar cases and are supported by sufficient documentation.[2]

At bottom, NSO's Opposition reflects yet another effort to trivialize the significance of their illegal conduct and the consequent seriousness and importance of this proceeding—no different from NSO's prior characterizations of this case as a "show trial."  *See* Dkt. No. 649 at 2.  NSO's notion that $15.9 million of attorney's fees over the course of a hotly contested, six-year-plus litigation is unreasonable disregards, among other things, that: (1) NSO was found by this Court, on the basis of

---

[1] *See* Opp. at 10 n.7 (acknowledging "California law permits the lodestar to be adjusted based on several factors").

[2] To the extent the Court requests further information, Plaintiffs request that such review be conducted in camera.  *See infra* Section II.B.

undisputed facts, to have violated federal and California law and to have breached its contract with WhatsApp (*see* Dkt. No. 494 at 16); (2) that a unanimous jury awarded Plaintiffs $167,254,000 in punitive damages, concluding that NSO acted with malice, oppression, or fraud in violating the CDAFA (*see* Dkt. No. 736 at 1); and (3) based on NSO's past violations and risk of future harm, this Court issued a significant injunction for Plaintiffs' protection. *See* Dkt. No. 809.[3]  It also disregards the extent to which the demands of this litigation were increased by NSO's own conduct, including its deliberate efforts to conceal its unlawful hacking from WhatsApp and its resistance to and eventual violation of its own discovery obligations.  The Court should reject NSO's attempts to belittle the significance of these proceedings and the results obtained, or the degree of work required to achieve those results.  NSO's challenges are without merit.

## ARGUMENT

### I.    Plaintiffs May Recover All of Their Fees Under the CDAFA

NSO does not dispute that Plaintiffs may recover their fees under the CDAFA, including fees for work related to Plaintiffs' CFAA and breach of contract claims that involve a common core of facts or are based on related legal theories.  Dkt. No. 823 (NSO's Opposition, "Opp.") at 5–8 (conceding Plaintiffs may recover under the CDAFA and CFAA "to the extent overlapping").  However, NSO seeks to contest the extent of overlap between Plaintiffs' CDAFA, breach of contract, and former trespass to chattels claim.  To support that argument, NSO resorts to highlighting tasks they claim do not overlap with the CDAFA, but NSO's arguments only demonstrate that Plaintiffs' claims are inextricably intertwined, and that apportionment is improper.

NSO argues that Plaintiffs incurred fees solely related to their breach of contract claim, for which NSO claims attorney's fees are not authorized.  *See* Opp. at 8 (arguing Plaintiffs "developed discovery regarding conduct specific to their breach-of-contract claim, such as information about NSO's activities reverse-engineering or decompiling code.").  For that argument, NSO cites a portion of Plaintiffs' motion for summary judgment that references an NSO witness's deposition testimony admitting to reverse engineering, a report by one of Plaintiffs' experts opining that NSO engaged in

---

[3] The Court later remitted the punitive damages award to a 9x multiple of the compensatory damages award. Dkt. No. 802 at 22–23.

reverse-engineering, and an NSO document titled "Heaven OpSec," which describes measures NSO took to protect its "Heaven" installation vector. *See id.* (citing Dkt. No. 399-2 at 8). NSO also argues that the fees Plaintiffs incurred to prepare a corporate designee on the process for agreeing to the WhatsApp Terms of Service should be excluded because they only relate to the breach of contract claim. *See id.* NSO's examples do not support its argument. To the contrary, they reinforce the overlap between the CDAFA and other claims, including breach of contract: The Court has repeat-edly recognized the key role that reverse engineering played in NSO's exploit, which gave rise to NSO's violations of the CDAFA. *See* Dkt. No. 111 (holding that Plaintiffs' "breach of contract claim involves the same common nucleus of operative facts as the tort claims," and noting "[t]he alleged torts in the complaint center on the improper access to and misuse of WhatsApp's application, serv-ers, and network.").[4] For example, at summary judgment and at trial, Plaintiffs cited the "Heaven OpSec" document in connection with Plaintiffs' claims that NSO violated CDAFA and CFAA by intentionally accessing WhatsApp's servers and target devices. *See* Dkt. No. 399-2 at 17 (citing PX2033); Dkt. No. 753 at 127:21–128:10. In any event, NSO's suggestion that Plaintiffs could ap-portion fees on a question-by-question basis by deposition or by component of an expert report is not feasible. *See Powell v. FCA US LLC*, 2020 WL 4937358, at *11 (E.D. Cal. Aug. 24, 2020) (declining to apportion expert witness fees for an expert who testified in relation to "an issue common to both a cause of action for which fees are permitted and one for which they are not" (citation omitted)).

NSO's argument that fees Plaintiffs incurred in responding to NSO's waiver defense are only related to the breach of contract claim is misplaced. *See* Opp. at 9. In its Answer, NSO asserted that *all* Plaintiffs' claims were barred "by the equitable doctrines of waiver, estoppel, laches, and/or un-clean hands" and further argued that "Plaintiffs have historically been complacent about the security of WhatsApp" and that "WhatsApp has had a very large number of vulnerabilities." Dkt. No. 128 at 9. Again, apportionment is not practical or warranted when claims are intertwined, and the caselaw

---

[4] *See also* Dkt. No. 802 at 9 n.1, 17 (reasoning that "[w]hile reverse engineering is not expressly covered by the CFAA, the fact that defendants breached Whatsapp's terms of service by doing so is a fact that informs the court's understanding of the risk of ongoing harm and the scope of any in-junction needed to prevent such harm" and granting injunction prohibiting "activities such as re-verse engineering or decompiling" because they "are sufficiently related to defendants' unlawful access of plaintiffs' and their users' data").

1    NSO cites does not require such a result.

2         In *Heppler v. J.M. Peters Co.*, the appellate court found it was an error to not apportion attor-

3    ney's fees incurred in trying a seven-week trial with multiple defendants, who were each alleged to

4    have caused distinct types of damage.  *See* 73 Cal. App. 4th 1265, 1271–72, 1297 (1999) (one sub-

5    contractor's "part of the case could have been tried in considerably less time than seven weeks had

6    the trial not taken up issues that involved the other nonsettling subcontractors.").  *Heppler* is distin-

7    guishable because in that case, "[n]ot all the issues involving Martin's case were integrally associated

8    with the other issues in the case" and it would have been "eminently unfair to tag Martin with all of

9    plaintiffs' attorney fees for the entire seven-week trial" involving other parties.  *Id*. at 1297.  Simi-

10   larly, it was feasible to draw lines in *Entertainment Research Group., Inc. v. Genesis Creative*

11   *Group., Inc.*, where the court apportioned fees because one part of the litigation "involved completely

12   different legal theories and questions."  122 F.3d 1211, 1230 (9th Cir. 1997).  That case involved two

13   copyright claims that turned on whether there were "unauthorized distributions" of copyrighted ma-

14   terial, whereas the crux of the remaining claims and "of the overall litigation . . . was whether an

15   agency relationship existed between [appellee] and [appellant]."  *Id*.  NSO also repeatedly cites to

16   *Cyclone USA, Inc. v. LL & C Dealer Services, LLC*, but in that case the court declined to apportion

17   fees even though there were varied claims, including Lanham Act, fraud, and breach of contract

18   claims, in part because there was an "inherent interrelationship and factual overlap" among the

19   claims.  2010 WL 2104963, at *6 (C.D. Cal. May 24, 2010).  Here, Plaintiffs' fees may not be ap-

20   portioned based on different parties in a lawsuit, as in *Heppler*, or on clearly distinct claims with

21   different fact patterns, as in *Entertainment Research Group*.  Rather, here, as in *Cyclone USA*, there

22   are legal and factual overlaps between Plaintiffs' claims.  *See* Dkt. No. 816 (Plaintiff's Motion for

23   Attorney's Fees, "Mot.") at 13–15.

24        Lastly, NSO's argument that Plaintiffs must apportion the fees incurred on their trespass to

25   chattels claim that the Court dismissed in July 2020 fails for similar reasons.  *See* Opp. at 9; Dkt. No.

26   111.  Here, the trespass to chattels claim relied on the same conduct as Plaintiffs' other claims.  *See*

27   Dkt. No. 1 at 13 (alleging that NSO "intentionally and without authorization interfered with Plain-

28

tiffs' possessory interest in their computer systems, including by accessing and using Plaintiffs' servers to transmit malicious code for the purpose of unlawfully compromising Target Users' devices, all without authorization from Plaintiffs and Target Users").  Moreover, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).  Again, NSO's authority supports Plaintiffs' position: "To paraphrase the wisdom expressed by another appellate court, litigation may involve a series of attacks on an opponent's case.  The final ground of resolution may become clear only after a series of unsuccessful attacks.  Compensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim."  *Akins v. Enter. Rent-A-Car Co. of S.F.*, 94 Cal. Rptr. 2d 448, 452 (Cal. Ct. App. 2000) (cited by Opp. at 14).  The trespass to chattels claim may not have succeeded, but it was part of the development of Plaintiffs' successful case, as it was based on the same misconduct that underpinned Plaintiffs' other claims.  *See, e.g.*, Dkt. No. 111 ("[P]laintiffs contend that defendants impaired the value and quality of WhatsApp's servers by designing a program that concealed malicious code and made it appear that WhatsApp, rather than defendants, sent the code.").

Because the same course of conduct gave rise to all of Plaintiffs' claims and apportionment would not be feasible, the Court should reject NSO's arguments regarding apportionment.  *See* Mot. at 13 ("[C]laims are unrelated only if 'distinctly different *both* legally *and* factually.'" (quoting *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003))).

## II.    Plaintiffs' Fee Request Is Reasonable and Supported

Plaintiffs' request for fees is reasonable and supported by sufficient evidence.  Plaintiffs' declarations show that the fees they request are consistent with prevailing market rates and that the hours they devoted to this litigation are reasonable in light of its scope and complexity.

### A.  Plaintiffs' Fixed-Fee Agreements Reflect a Reasonable Fee

NSO argues that the Court may not consider Plaintiffs' fixed-fee arrangements and *must* conduct a lodestar analysis.  That is not the law.  While courts often employ the lodestar method, *see* Mot. at 18, Judge Alsup noted in *Straight Path IP Grp., Inc. v. Cisco Systems, Inc.* that "the lodestar's

place as the *preferred* method does not make it the *only* method.  Even the Supreme Court acknowledges this."  2020 WL 2539002, at *4 (N.D. Cal. 2020) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–53, 556 (2010)).

NSO asks the Court to conclude that Plaintiffs' fixed-fee arrangements are presumptively unreasonable.  In *Straight Path*, Judge Alsup rejected that argument, reasoning that while the lodestar may provide a touchstone for traditional hourly fee arrangements, alternative approaches may be appropriate when faced with alternative fee arrangements.  *See id*. (citing *Perdue*, 559 U.S. at 551–53, 556).  In *Straight Path*, Judge Alsup found a flat-fee arrangement similar to the one here was reasonable, in part because "[s]everal of the considerations leading to the adoption of the lodestar method still apply to the flat-fee method."  *Id.* at *5.  These include that both methods "look to the market" to determine "what *practitioners actually charge* in the market for legal representation," that "the flat-billing rate remains *what clients actually pay* for legal services," and that "flat-rate billing may prove just as effective an approximation of general billing practices" as the lodestar.  *Id.*  Ultimately, in determining reasonableness, the court looks to the market for legal services.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) ("The district court's function is to award fees that reflect economic conditions in the district.").

Contrary to NSO's assertion, Plaintiffs do not argue that the Court should "simply adopt[] a fixed-fee arrangement between the parties."  Opp. at 10.  Instead, Plaintiffs ask the Court to look to their fixed-fee arrangements as an indicator of reasonableness.  In *Blanchard v. Bergeron*, the Supreme Court advised that "[t]he presence of a pre-existing fee agreement may aid in determining reasonableness." 489 U.S. 87, 93 (1989).[5]  Other district courts in the Ninth Circuit have also noted that rates paid by clients are a strong indication of reasonableness.  *See Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *18 n.14 (C.D. Cal. Mar. 24, 2015) ("[E]vidence that an institutional client in a competitive legal market was willing to pay the rates charged without any guarantee of reimbursement is important evidence that the rate was reasonable."), *aff'd*, 847 F.3d 657 (9th Cir.

---

[5] The language NSO cites to from *Blanchard* is from a 1970 Eastern District of Louisiana case.  *See* Opp. at 10 (citing *Blanchard*, 489 U.S. at 92 (quoting *Clark v. Am. Marine Corp.*, 320 F. Supp. 709, 711 (E.D. La. 1970))).  *Blanchard* states that "the fee arrangement is but a single factor and not determinative," and is thus consistent with Plaintiffs' position.  *Blanchard*, 489 U.S. at 92.

2017); *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 2020 WL 8680070, at *27 (C.D. Cal. Nov. 13, 2020) (holding that rate paid by sophisticated client is a reasonable rate); *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1167 (N.D. Cal. 2015) ("The attorney-client fee arrangement can often provide valuable indication of the prevailing reasonable rate in the community.") (citing *Blanchard*, 489 U.S. at 93).[6]  Plaintiffs' fixed-fee agreements therefore provide a strong indication of the reasonableness of Plaintiffs' fee request.

### B. Plaintiffs Have Substantiated Their Request

NSO claims that because the Court must conduct a lodestar, Plaintiffs are required to submit evidence of their "individual attorneys' billing rates."  *See* Opp. at 10.  However, NSO also states (correctly) that "[t]he lodestar is calculated based on *prevailing hourly rates* and the number of hours reasonably expended."  *Id.* at 10 (emphasis added).  Thus, calculating a lodestar would not require the evidence NSO says is lacking.  Here, Plaintiffs have provided evidence of the prevailing market rates.  *See* Mot. at 19–20.  Plaintiffs have also provided evidence of the hours reasonably expended and the fees that they paid.  *See* Dkt. Nos. 816-1–816-4.  Should the Court wish to conduct a lodestar, it has the required evidence.[7]

NSO also states that Plaintiffs' counsel's time entries are required.  *See* Opp. at 11.  Again, NSO misstates the law.  California law is clear that detailed billing timesheets are not required.  *See* Mot. at 19 (quoting *Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*, 249 Cal. Rptr. 3d 309 (2019)); *see also Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1375 (2009) ("The law is clear, however, that an award of attorney fees may be based on counsel's declarations, without production of detailed time records.").  Plaintiffs' declarations in support of their motion for attorney's fees are consistent with the documentation that courts have found to be

---

[6] NSO's attempt to distinguish *Mai v. HKT Cal, Inc.* (which stands for the proposition that "a prima facie case as to the costs incurred and their reasonableness can be established by the plaintiff's testimony that bills for the services were paid") as involving a different standard is misplaced, because that case addresses the standard for proving attorney's fees at trial, under an even *higher* standard than post-trial motions.  66 Cal. App. 5th 504, 518–19 (2021).

[7] Moreover, both Cooley and O'Melveny have submitted supplemental declarations providing even further detail regarding the qualifications and billing rates of their employees in response to NSO's criticisms.  *See* Morton Supp. Decl.; Vergara Supp. Decl.

sufficient.  For example, in *Sweetwater*, "the three attorneys primarily involved in the litigation pro-vided declarations under penalty of perjury supporting the hours sought, which were broken down by hours expended in each category of services rendered."  *Sweetwater*, 249 Cal. Rptr. at 332.  Like NSO, the party opposing the fee request "complain[ed] that Sweetwater did not present billing time-sheets to support their request, but presented declarations with general summaries of blocked-billing statements."  *Id.*  The *Sweetwater* court concluded that the trial court had sufficient information to evaluate the fee request, reasoning in part that "[t]he same trial judge presided over the entire matter, was familiar with the record and issues, and was thus well equipped to evaluate the reasonableness of the time expended by Sweetwater's counsel."  *Id.*  As in *Sweetwater*, the Court is well equipped to evaluate Plaintiffs' request.

While the Court may decide Plaintiffs' request without detailed time records, the Civil Local Rules provide that "[d]epending on the circumstances, the Court may require production of an ab-stract of or the contemporary time records for inspection, including in camera inspection, as the Judge deems appropriate."  Civil L.R. 54-5(b)(2).   Plaintiffs can provide these timekeeper logs to the Court for in camera review, should it so require, in a manner that appropriately preserves attorney work product protection and attorney-client privilege.

## C.    Plaintiffs Establish Prevailing Market Rates

Plaintiffs provide substantial information allowing the Court to determine that Plaintiffs' fees were reasonable in light of prevailing market rates.

*First*, in both the Ninth Circuit and California, "rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Amer. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Doskocz v. ALS Lien Servs.*, 321 Cal. Rptr. 3d 476, 486 (2024).  Plaintiffs cite numerous cases in this district holding that rates *higher* than those Plaintiffs paid in this case were reasonable and consistent with prevailing market rates.  *See* Mot. at 20 (string citing cases showing that courts in this district have recently held rates of up to $2,169 for partners, up to $1,552 for counsel, up to $1,278 for associates, and up to $710 for support staff to be reasonable

8

and consistent with market rates in the area).[8]  NSO cites no authority for its insinuation that a party must "submit expert evidence" to establish prevailing market rates.  *See* Opp. at 13.  California courts have held that expert testimony is not required.  *See PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1096 (2000), *as modified* (June 2, 2000) ("The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony.").  And the fact that the fees Plaintiffs paid are *lower* than prevailing market rates is strong evidence their requested fees are reasonable.  *Skyline Advanced Tech. Servs. v. Shafer*, 2020 WL 7025081, at *3 (N.D. Cal. Nov. 30, 2020) (finding the rate charged by plaintiff's counsel to be "reasonable . . . because it is lower than the prevailing rates in this district for attorneys of comparable skill and reputation.").

    *Second*, Plaintiffs' caselaw both demonstrates the prevailing market rates and supports the manner in which Plaintiffs have established them.  *See Syers Props. III, Inc. v. Rankin*, 172 Cal. Rptr. 3d 456, 463 (2014) ("courts will look to equally difficult or complex types of litigation to determine which market rates to apply.").  NSO argues that the Court must rely on a prevailing market rate for "technology litigation involving CFAA and CDAFA claims" specifically but cites *no authority* for the proposition.  *See* Opp. at 13.  Again, that is not the law.  *See, e.g.*, *Bell v. Farmers Ins. Exch.*, 2004 WL 1281818, at *14 (Cal. Ct. App. June 9, 2004) (affirming trial court's finding that requested rates were consistent with those of other attorneys "handling complex civil litigation.").  Plaintiffs' authorities showing fees—which courts in this district have approved—for complex civil litigation matters provide more than sufficient information for the Court to find that the fees Plaintiffs paid are reasonable.  *See Syers Props. III, Inc*, 172 Cal. Rptr. 3d at 462–65 (rejecting arguments that court abused its discretion in setting lodestar by adopting hourly rates that exceeded actual rates billed, and by defining the relevant legal market more broadly than simply insurance defense work).[9]

---

[8] Plaintiffs paid O'Melveny a blended rate of less than $760 per hour, which is consistent with prevailing market rates for appellate work specifically.  *See Ramirez v. Trans Union, LLC*, 2022 WL 17722395, at *9 (N.D. Cal. Dec. 15, 2022) (approving rates of $1,200 and $985 per hour for appellate attorneys).

[9] NSO argues that the fees Plaintiffs incurred in this litigation are not reasonable because they are higher than those Facebook, Inc. paid in *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277 (N.D. Cal. Aug. 28, 2020).  In *Sluchevsky*, an action brought against two individual defendants for webscraping, the Court granted Facebook's motion for default judgment (after twenty-five docket entries in total).  *See id.*  It is not comparable at all in complexity and magnitude to this action.

9

*Lastly*, the attorney-client fee arrangement itself "can often provide valuable indication of the prevailing reasonable rate in the community." *See also Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1167 (N.D. Cal. 2015). Here, Plaintiffs' supporting declarations provide detailed explanation of the fees they *actually paid* and the legal work their law firms provided. *Cf. Nemecek & Cole v. Horn*, 208 Cal. App. 4th 641, 651 (2012) (granting requested attorney's fees where counsel did not disclose what his "actual" rate was). Further, the Court is deeply familiar with the complexity of this litigation, NSO's litigation tactics, and Plaintiffs' successful prosecution of the case. *See, e.g.*, Dkt. No. 494 at 16 (granting Plaintiffs' motions for sanctions and for summary judgment); Dkt. No. 802 at 25 (granting Plaintiffs' motion for a permanent injunction). The Court accordingly has more than sufficient information with which to find that the fees Plaintiffs paid are reasonable and consistent with prevailing market rates. *See Lansmont Corp. v. SPX Corp.*, 2014 WL 1267003, at *1 (N.D. Cal. Mar. 27, 2014) ("Ultimately, California law allows a judge, having been informed of the relevant circumstances, to determine a reasonable fee from his or her own knowledge and experience."); *PLCM Grp.*, 22 Cal. 4th at 1096 ("[T]he determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court . . . . The value of legal services performed in a case is a matter in which the trial court has its own expertise." (citations omitted)).

## D. Plaintiffs' Hours and Requested Fees Are Reasonable

The hours expended by Plaintiffs' counsel in this action are commensurate with the length and complexity of the case, including the novelty of NSO's spyware attacks and the nature of NSO's litigation tactics. NSO's faulty comparison of Plaintiffs' fee request to the monetary damages awarded in this case entirely ignores the permanent injunction. *See* Opp. at 1. The injunctive relief is a "significant component of the success achieved in this case," and should not be ignored. *Yuga Labs, Inc. v. Ripps*, 2024 WL 489248, at *10 (C.D. Cal. Jan. 11, 2024). In any event, Plaintiffs' legal fees were largely billed pursuant to fixed fee arrangements that did not even depend on the hours expended by Plaintiffs' counsel. *See* Dkt. Nos. 816-1–816-4.

*First*, after NSO spent *millions* of dollars to create a novel, "undetectable" spyware that it "repeated[ly]" improved to "circumvent plaintiffs' security measures," NSO implies that Plaintiffs cannot recover $607,394.72 in fees it paid Cooley for, among other things, initial investigation into

the facts of the case. *Compare* Dkt. No. 802 at 9 ("The court . . . places emphasis on the covert, undetectable nature of defendants' technology, as well as the repeated efforts to circumvent plaintiffs' security measures . . . ."), *and* Dkt. No. 741-14 (NSO financial statement showing over *one hundred million dollars* of research and development expenses over 2019 and 2018), *with* Opp. at 16–17 (NSO's Opposition brief implying Plaintiffs cannot recover fees for early work on the case). Courts in this district regularly allow parties to recover attorney's fees related to case investigation. *See, e.g.*, *Meta Platforms, Inc. v. Soc. Data Trading Ltd.*, 2022 WL 18806267, at *6 (N.D. Cal. Nov. 15, 2022) (finding that "the amount of time counsel spent working on the case was reasonable" because defendant "is engaged in surreptitious online activity, which takes time to investigate"). NSO cites no authority to support that the Court should deviate from that practice. *See* Opp. at 16–17 (not even addressing *Meta Platforms, Inc. v. Soc. Data Trading Ltd.*). Moreover, Plaintiffs' fees related to investigation—which are a small fraction of NSO's "research and development" spend—are especially justified in this action given the complexity of NSO's spyware and the cloud of secrecy in which it has operated. *See* Dkt. No. 802 at 10 ("[T]he court agrees with plaintiffs' argument that the evidence 'establishes that NSO maintains the technical expertise and commercial incentives not only to access plaintiffs' servers, but also to hide any access from plaintiffs.'"). Lastly, in any event, Cooley has submitted a supplemental declaration in response to NSO's criticisms which provides more detail regarding this category of fees that NSO challenges. *See* Morton Supp. Decl. ¶ 9 (stating that the category includes, among other things "factual and legal research projects," and work on "administrative motions and stipulations; work related to case management conference statements").

*Second*, NSO argues Plaintiffs cannot recover fees associated with their motion to disqualify Defendants' counsel, *see* Dkt. No. 47-3, because "this Court denied it, and it was not necessary or related" to Plaintiffs' claims. *See* Opp. at 16. NSO provides no authority for this proposition. Rather, Plaintiffs are entitled to compensation for all hours reasonably spent by their counsel; "[t]here is no requirement that each motion or opposition be successful to be reasonable." *City of Los Angeles v. Metro. Water Dist. of S. Cal.*, 42 Cal. App. 5th 290, 307 (2019); *Hensley*, 461 U.S. at 435 ("[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention

1    raised in the lawsuit."); *City of Sacramento v. Drew*, 207 Cal. App. 3d 1287, 1303 (1989) ("Compen-

2    sation is ordinarily warranted even for unsuccessful forays.").

3         *Third*, NSO argues Plaintiffs' fees should be reduced because of a "risk of inefficiency" as

4    Plaintiffs were represented by multiple law firms.  Opp. at 12.  NSO's argument fails.  Each law firm

5    had a discrete role in this litigation: Cooley represented Plaintiffs until September 2020 (*see* Dkt. No.

6    816-1 (Block Decl.) ¶ 3; Dkt. No. 816-3 (Morton Decl.) ¶ 4); O'Melveny's role was focused on

7    serving as appellate counsel to Plaintiffs with regard to NSO's interlocutory appeal and advising on

8    a single third-party subpoena (*see* Dkt. No. 816-4 (Vergara Decl.) at 3–4); and Fischer's role was

9    focused on advising Plaintiffs on Israeli law issues (*see* Dkt. No. 816-2 (Lehmann Decl.) ¶ 6).  NSO

10   argues that the "transition" from Cooley to Davis Polk could have resulted in "likely duplication of

11   efforts" and cites to *Alzheimer's Institute of America v. Eli Lilly & Co.  See* Opp. at 18.  However, in

12   that case, the court reduced the requested fees because "the *majority . . .* involve[d] transition-related

13   tasks."  2016 WL 7732621, at \*8 (N.D. Cal. Apr. 14, 2016) (emphasis added), *aff'd sub nom. AIA*

14   *Am., Inc. v. Eli Lilly & Co.*, 695 F. App'x 573 (Fed. Cir. 2017).  Here, in contrast, during the period

15   NSO argues there could have been "likely duplication," Davis Polk billed Plaintiffs for drafting and

16   filing briefs on six motions, as well as for providing ongoing strategic analysis.  *See* Dkt. No. 816-1

17   (Block Decl.) ¶ 21.  Moreover, Davis Polk attorneys spent 1,465.2 hours working on this action dur-

18   ing that period and charged Plaintiffs $600,000, resulting in an implied average hourly rate of $410,

19   which is far below rates approved in comparable cases.  *See* Mot. at 27.

20        *Fourth*, NSO challenges the work performed by O'Melveny for Plaintiffs, and arbitrarily pro-

21   poses reducing their recoverable hours to 315.  *See* Opp. at 17.  The O'Melveny hours for which

22   Plaintiffs seek reimbursement reflect the substantial work O'Melveny performed in this action, in-

23   cluding drafting and strategic advice in connection with: Plaintiffs' motion to dismiss NSO interloc-

24   utory appeal for lack of jurisdiction and their reply brief in support of that motion; multiple letters to

25   the Ninth Circuit; Plaintiffs' answering appellate brief to the Ninth Circuit; Plaintiffs' brief in oppo-

26   sition to petition for rehearing and rehearing en banc; Plaintiffs' opposition to NSO's motion to stay

27   the Ninth Circuit's mandate pending the resolution of NSO's petition for certiorari; Plaintiffs' oppo-

28   sition to NSO's petition for certiorari; leading a meeting with the U.S. Solicitor General to present

Plaintiffs' position regarding NSO's petition for certiorari; and—after playing a critical role in the Ninth Circuit affirming the ruling of this Court and the Supreme Court denying NSO's petition for certiorari—assisting with Plaintiffs' third-party subpoena to Amazon Web Services, Inc. *See NSO Grp. Techs. Ltd. v. WhatsApp Inc.*, No. 20-16408, Dkt. Nos. 13-1, 15, 17, 19, 32, 72, 74, 86, 89 (9th Cir. 2021); Dkt. No. 816-4 ¶ 3–4. In light of the complexity and substantial briefing associated with NSO's appeal, the O'Melveny fees Plaintiffs paid and seek to recover are reasonable.

*Fifth*, Plaintiffs are entitled to recover fees they paid to Davis Polk relating to third-party discovery and assistance with the Ninth Circuit appeal while the trial court litigation was stayed pending appeal. Plaintiffs relied substantially on third-party discovery to progress this litigation given NSO's delay and ultimate failure in producing discovery. *See* Dkt. No. 494 at 9 (granting Plaintiffs' motion for sanctions, reasoning that "defendants have repeatedly failed to produce relevant discovery and failed to obey court orders regarding such discovery" and stating "defendants' discovery non-compliance goes to the key facts at issue in this case").[10] Nonetheless, NSO requested that the Court "reduce[]" fees related to "substantial third-party discovery" and "collect[ion] [of] documents" "by at least ninety percent." *See* Opp. at 18. Neither of the two cases NSO cites for its argument supports a reduction. In *Telegram Messenger Inc.*, the court reduced hours billed during a stay because the defendant sought fees for preparing a motion it never filed and for counsel "traveling to New York to observe a hearing in [a separate] SEC Action," the relevance of which defendant "fail[ed] to explain." *See Telegram Messenger Inc. v. Lantah, LLC*, 2020 WL 6415506, at *7–8 (N.D. Cal. Nov. 2, 2020). Moreover, in both cases, the party seeking fees did not explain why billing time during the stay was reasonable. *See id.*; *Alzheimer's Inst. of Am. v. Eli Lilly & Co.*, 2016 WL 7732621, at *7 (N.D. Cal. Apr. 14, 2016). In any event, both of those cases acknowledged that "some continued work during a stay is appropriate." 2020 WL 6415506, at *8; *Alzheimer's Inst. of Am.* 2016 WL 7732621, at *7.

---

[10] The Court should reject NSO's nonsensical argument that NSO's failure "to produce certain documents and information likely *saved* Plaintiffs money." Opp. at 19 n.12. Due to NSO's delay and eventual failure to produce relevant documents, Plaintiffs were forced to engage in significant third-party discovery to understand NSO's spyware and conduct (not to mention that Plaintiffs were forced to litigate NSO's repeated discovery noncompliance through extensive motion practice). *See, e.g.*, Dkt. No. 405-2 (Plaintiffs' motion for sanctions); Dkt. No. 331-2 (Plaintiffs' motion to compel production).

Here, during the stay, Plaintiffs paid legal fees to Davis Polk for, among other things, seeking discovery from numerous third parties and providing strategic advice while the action was being appealed.  *See* Dkt. 816-1 ¶¶ 22–30 (summarizing fees paid in connection with seeking discovery from over forty third parties).  Such third-party discovery was crucial to Plaintiffs' progression of the litigation.  *See, e.g.*, Dkt. 399-3; Dkt. No. 422-1, Dkt. No. 741 at 2–3 (exhibits admitted at trial including documents produced by third parties).  Moreover, fees incurred in connection with third-party discovery and providing advice during the appeal are properly recoverable.  *See Elation Sys., Inc. v. Fenn Bridge LLC*, 2023 WL 5988731, at *10 (Cal. Ct. App. Sept. 15, 2023) (affirming trial court's award of fees related to third-party discovery); *Zynga Inc. v. Waas*, 2011 WL 588147, at *1 (N.D. Cal. Jan. 31, 2011) (awarding plaintiff "all its fees" in action requiring third-party discovery), *report and recommendation adopted*, 2011 WL 588050 (N.D. Cal. Feb. 10, 2011); *Si Nos Dejan v. BPBH*, 2005 WL 1377126, at *1 (Cal. Ct. App. June 10, 2005) (affirming award of attorney's fees and rejecting argument that appellate and trial counsel's fees were duplicative, adopting trial court's reasoning that "it's to be expected that trial counsel [collaborates] with appellate counsel in preparing for an appeal and response to an appeal, and oral argument." (alteration in original)).

*Sixth*, NSO argues that Davis Polk "overstaffed" the matter, pointing to examples where multiple Davis Polk attorneys attended hearings or depositions.  *See* Opp. at 12 (arguing Plaintiffs "overstaffed" and therefore "overbill[ed]").  This argument misses the mark entirely:  Plaintiffs paid Davis Polk fixed fees based on deliverables (i.e., not based on the number of timekeepers or the number of hours spent working on the matter).  *See* Dkt. No. 816-1 ¶ 14.  Therefore, the number of attorneys at a deposition or the number of hours spent on a deposition did not affect the fee that Plaintiffs paid.

Although Davis Polk's fees were not based on hours, the hours expended by Davis Polk further support that its fees were reasonable.  Davis Polk included in its declaration the hours of only Core Team Members.  *See* Dkt. No. 816-1 ¶ 19.  Davis Polk did not include the significant hours spent by additional associates, paralegals, support staff, and law students.  *See id*.  If Davis Polk had included those additional hours, its effective hourly rate (measured by dividing the fixed fee by the hours expended) would be even *lower*.  In any event, the Ninth Circuit has held that "[p]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort," and

explained that the court should exercise judgment and consider the "circumstances of the individual case to decide whether there was unnecessary duplication." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir. 2004). Having multiple lawyers at a hearing may be appropriate "because their assistance is or may be needed by the lawyer arguing the case" or when a "lawyer who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later." *Id.* at 1287. Here, Davis Polk only sent attorneys to hearings who were arguing or assisting other attorneys in arguing before the Court.[11] Moreover, as noted above, the fixed-fee nature of the Plaintiffs' engagements moots NSO's argument.

*Lastly*, after NSO attempted to place Israeli law at the center of this case (including by relying on it as the basis for its refusal to participate in discovery), NSO now argues, without legal basis, that awarding $103,529.34 in fees that Plaintiffs paid to its Israeli counsel, Fischer, "would compensate the unauthorized practice of law." *See* Opp. at 18. NSO's Israeli counsel was not engaged in "the unauthorized practice of law." NSO's *own* authority, *Golba*, recognizes that "performance of legal services outside of California for a California client does not automatically constitute the practice of law in California." *Golba v. Dick's Sporting Goods, Inc.*, 238 Cal. App. 4th 1251, 1268 (2015). *Golba* further endorsed the proposition that "out-of-state attorneys sitting at their desks in Chicago, New York, Florida, or wherever, may bill time and be compensated on the case without having to be admitted *pro hac vice*." *Golba*, 238 Cal. App. 4th at 1268 (quotation omitted). California appellate courts regularly affirm the award of fees paid to out-of-state lawyers who "did not sign pleadings, attend court, or have direct contact" with clients but who provided legal advice relevant to the action. *See, e.g.*, *Gajanan Inc. v. City & Cnty. of S.F.*, 2025 WL 1076796, at *14, *16 (Cal. Ct. App. Apr. 10, 2025). NSO provides no basis to exclude the fees that Plaintiffs paid to Fischer.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for attorney's fees and order NSO to pay $15,914,095.

---

[11] NSO cites to the depositions of Claudiu Gheorghe and Carl Woog as examples of "overstaffing." *See* Opp. at 12. However, the hours of two attorneys at those depositions are not even included in Davis Polk's declaration in support of Plaintiffs' Motion for Attorney's Fees. *See* Dkt. No. 816-1 (Block Decl.) ¶ 5. In any event, Davis Polk charged a flat fee per deposition or argument; the attendance of additional attorneys did not affect Davis Polk's fees at all. *See* Dkt. No. 816-1 ¶ 14.

Dated:  January 7, 2026          Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By:  /s/ Micah G. Block
  Greg D. Andres
  Antonio J. Perez-Marques
  Luca Marzorati
   (admitted *pro hac vice*)
  DAVIS POLK & WARDWELL LLP
  450 Lexington Avenue
  New York, New York 10017
  Telephone: (212) 450-4000
  Facsimile: (212) 701-5800
  Email: greg.andres@davispolk.com
     antonio.perez@davispolk.com
     luca.marzorati@davispolk.com

  Micah G. Block (SBN 270712)
  DAVIS POLK & WARDWELL LLP
  900 Middlefield Road, Suite 200
  Redwood City, California 94063
  Telephone: (650) 752-2000
  Facsimile:  (650) 752-2111
  Email: micah.block@davispolk.com

  *Attorneys for Plaintiffs*
  *WhatsApp LLC and Meta Platforms, Inc.*