1

2                          UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4

5

6    WHATSAPP INC., et al.,

                    Plaintiffs,                    Case No. 19-cv-07123-PJH

7

8         v.                                       **ORDER GRANTING MOTION FOR
                                                   ATTORNEY'S FEES, DENYING
9    NSO GROUP TECHNOLOGIES                         MOTION TO SEAL**
     LIMITED, et al.,
10                                                 Re: Dkt. 816, 828
                    Defendants.

11

12

13         Before the court is plaintiffs' motion for attorney's fees.  See Dkt. 816.  Having

14   read the papers filed by the parties and carefully considered their arguments and relevant

15   authority, and good cause appearing, the court hereby rules as follows.

16   A.    Legal standard

17         Section 502(e)(2) of the California Comprehensive Computer Data Access and

18   Fraud Act ("CDAFA") states that "[i]n any action brought pursuant to this subdivision the

19   court may award reasonable attorney's fees."  In "action[s] involving state law claims,"

20   federal courts "apply the law of the forum state to determine whether a party is entitled to

21   attorneys' fees, unless it conflicts with a valid federal statute or procedural rule."  MRO

22   Communications, Inc. v. AT&T Co., 197 F.3d 1276, 1282 (9th Cir. 1999).  State law

23   governs both plaintiffs' right to fees and the method of calculating the fees.  See Wilson v.

24   Tesla, Inc., 833 Fed. Appx. 59, 61 n.2 (quoting Mangold v. Cal. Pub. Util. Comm'n, 67

25   F.3d 1470, 1478 (9th Cir. 1995)).

26         Section 1717 of the California Civil Code also provides that "[i]n any action on a

27   contract, where the contract specifically provides that attorney's fees and costs, which

28   are incurred to enforce that contract, shall be awarded," the prevailing party "shall be

United States District Court
Northern District of California

United States District Court
Northern District of California

1    entitled to reasonable attorney's fees."

2        When a party prevails on a claim governed by a statutory fee-shifting provision,

3    that party may also recover attorney's fees for "work done on claims that involve a

4    common core of facts" or are "based on related legal theories."

5        The Ninth Circuit has recognized that "the test for relatedness of claims is not

6    precise," explaining that "the focus is to be on whether the unsuccessful and successful

7    claims arose out of the same 'course of conduct.'"  See Webb v. Sloan, 330 F.3d 1158,

8    1169 (9th Cir. 2003) (citing Schwarz v. Secretary of Health & Human Services, 73 F.3d

9    895, 903 (9th Cir. 1995)).  The Webb court acknowledged that it may sometimes be

10   "likely that some of the work performed in connection with the unsuccessful claim also

11   aided the work done on the merits of the successful claim," but emphasized that "the

12   focus is on whether the claims arose out of a common course of conduct."  Id.

13       California courts have similarly held that "[w]hen the liability issues are so

14   interrelated that it would have been impossible to separate them into claims for which

15   attorney fees are properly awarded and claims for which they are not, then allocation is

16   not required."  See, e.g., Akins v. Enterprise Rent-A-Car Co. of SF, 79 Cal.App.4th 1127,

17   1133 (2000).

18   B.    Analysis

19       Plaintiffs argue that they are entitled to fees under either CDAFA and/or section

20   1717 of the California Civil Code, which provides for attorney's fees in contract cases.

21       Defendants argue that CDAFA is the only basis for a fee award in this case.  See

22   Dkt. 823 at 11-13.  Defendants further argue that plaintiffs may not recover any fees for

23   their breach of contract claim, and that any portion of fees attributable to that claim

24   should not be included in any fee award.  See id. at 13-15.  Defendants acknowledge that

25   the court may forgo apportionment if "the liability issues are so interrelated that it would

26   have been impossible to separate them," but argue that plaintiffs' contract claim is not

27   sufficiently interrelated to their CDAFA claim.  See id. at 14 (citing Akins, 79 Cal.App.4th

28   at 1133.

1    Specifically, defendants argue that plaintiffs' contract claim presented "numerous

2    issues that should be severed and isolated for purposes of the attorney fee award." See

3    Dkt. 823 at 14 (internal citation omitted).  In particular, defendants point to the discovery

4    regarding defendants' activity reverse-engineering or decompiling Whatsapp code,

5    arguing that such discovery was relevant only to the contract claim and not to the CDAFA

6    claim.  See id. at 14-15.

7    In the court's view, plaintiffs' position regarding the relatedness of their claims is

8    more reasonable than defendants' position.  All of plaintiffs' claims are both legally and

9    factually related.

10    Factually, there is no question that plaintiffs' claims "arose out of the same course

11    of conduct."  It was defendants' access of plaintiffs' technology that formed the basis of

12    all claims asserted in this case.  Defendants argue that certain activities – such as

13    reverse-engineering and decompiling plaintiffs' code – were factually distinct from the

14    conduct underlying the CDAFA violations and thus should be considered "unrelated" and

15    part of a separate "course of conduct."  The court disagrees, as defendants' view would

16    run afoul of the Ninth Circuit's guidance in Webb, which made clear that "the focus is on

17    whether the claims arose out of a common course of conduct" even if the claims lack

18    perfect overlap.  At the pleadings stage of the case, the court observed that the "breach

19    of contract claim involves the same common nucleus of operative facts as the tort

20    claims," and the subsequent proceedings have not persuaded the court to change that

21    view.  See Dkt. 111 at 32.

22    Legally, the court also concludes that plaintiffs' claims are sufficiently interrelated

23    such that apportionment is not warranted.  While defendants are correct that the breach

24    of contract claim involved allegations of additional conduct (such as reverse-engineering

25    and decompiling) beyond what was directly implicated by the CDAFA claim, that

26    additional conduct is precisely what enabled defendants to access defendants'

27    information in violation of CDAFA.  Thus, the authority cited by defendants, in which the

28    Ninth Circuit found that different claims "involved completely different legal theories and

United States District Court
Northern District of California

United States District Court
Northern District of California

1    questions" and thus chose to apportion fees, is not applicable to the present case.  See,

2    e.g., Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d

3    1211, 1230 (9th Cir. 1997); see also Heppler v. J.M. Peters Co., 73 Cal.App.4th 1265,

4    1297 (1999) (fees should be apportioned in cases involving multiple defendants with

5    distinct theories of relief).

6        Thus, both factually and legally, the court concludes that plaintiffs' CDAFA claim is

7    sufficiently related to their breach of contract claim such that apportionment is not

8    required.  The court reaches the same conclusion with respect to plaintiffs' trespass to

9    chattels claim, which was dismissed at the pleadings stage.  See, e.g., Akins, 79

10   Cal.App.4th at 1133 ("The final ground of resolution may become clear only after a series

11   of unsuccessful attacks.  Compensation is ordinarily warranted even for those

12   unsuccessful attacks, to the extent that those attacks led to a successful claim.")

13       Overall, the court concludes that plaintiffs have shown that they are entitled to

14   recovery of fees under CDAFA, and that the fees incurred in connection with their breach

15   of contract and trespass to chattels claims are sufficiently related under Webb and Akins.

16   Thus, the court does not need to address whether fees are also recoverable under Cal.

17   Civ. Code § 1717.

18       In addition to challenging plaintiffs' entitlement to fee recovery in the first place,

19   defendants also challenge the amount of fees sought, arguing that they are

20   unreasonable.  See Dkt. 823 at 15-25.  Specifically, defendants argue that plaintiffs

21   improperly seek fees based on fixed-fee arrangements rather than the lodestar method,

22   and that plaintiffs did not submit sufficient information about their expended hours.

23   Defendants further argue that plaintiffs must be ordered to produce time records, that

24   plaintiffs fail to establish their hourly rates, and that the amount of expended hours and

25   requested fees is not reasonable.

26       Regarding the fixed-fee agreement, the court rejects the argument that they are

27   incompatible with a fee award.  The court instead agrees with the view taken by Judge

28   Alsup in Straight Path IP Group, Inc. v. Cisco Systems, Inc., that the lodestar method is

4

United States District Court
Northern District of California

1  not "the only method," as "the flat-billing rate remains what clients actually pay for legal

2  services."  2020 WL 2539002 (N.D. Cal. May 19, 2020) (emphasis in original).  Plaintiffs'

3  fee arrangement reflects a real-world valuation of counsel's legal services, as they were

4  negotiated by plaintiffs' two main firms before they were involved in the case.  See Dkt.

5  816 at 24; see also Moreno v. City of Sacramento, 534 F.3d 1106, 1115 (9th Cir. 2008)

6  ("The district court's function is to award fees that reflect economic conditions in the

7  district.").  Thus, the court concludes that the fixed-fee agreements support the

8  reasonableness of plaintiffs' fee request, without any further need for detailed time

9  records.

10      Also, plaintiffs submit declarations to support the conclusion that an hourly billing

11  method would have resulted in a lodestar that is greater than the fees that were actually

12  bargained-for and paid.  See Dkt. 816 at 25.

13      Regarding plaintiffs' counsel's rates, plaintiffs are correct that they have cited

14  multiple cases holding that rates higher than plaintiffs' counsel's were reasonable and

15  consistent with the prevailing market.  See Dkt. 816 at 27.  Moreover, the amounts

16  charged are actually lower than rates that this court has approved on similarly complex

17  cases, and lower than prevailing rates in this district.  See, e.g., Lansmont Corp. v. SPX

18  Corp., 2014 WL 1267003 (N.D. Cal. Mar. 27, 2014) ("Ultimately, California law allows a

19  judge, having been informed of the relevant circumstances, to determine a reasonable

20  fee from his or her own knowledge and experience.").  The court finds no basis for

21  defendants' argument that plaintiffs must submit evidence regarding prevailing rates

22  specifically for CFAA and CDAFA cases.

23      Regarding the amount of hours expended by plaintiffs' counsel, the court

24  concludes that the amount of hours expended in the case was warranted given the

25  case's legal and technological complexity, as well as the number of discovery-related

26  motions necessitated by the national security protections invoked by defendants.

27      Accordingly, plaintiffs' motion for attorney's fees (Dkt. 816) is GRANTED, and fees

28  are awarded in the amount of $15,914,095.

1    Finally, plaintiffs have filed a motion to seal, seeking to shield certain information

2  about their fee arrangements with counsel.  Defendants oppose the motion to seal,

3  arguing that attorney fee rates are typically not considered sealable.  <u>See</u> Dkt. 830 at 2

4  (citing cases).  The court finds defendants' authority to be more persuasive, and DENIES

5  plaintiffs' motion to seal (Dkt. 828).  Plaintiffs are directed to file unredacted versions of

6  the documents filed provisionally under seal, no later than seven (7) days from the date

7  of this order.

8    **IT IS SO ORDERED.**

9  Dated:  January 30, 2026

10                                   ___/s/ *Phyllis J. Hamilton*___
                                        PHYLLIS J. HAMILTON
11                                      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28