July 31, 2026

Re: *WhatsApp LLC v. NSO Group Technologies Ltd.*, No. 4:19-cv-07123-PJH (N.D. Cal.)

The Honorable Phyllis J. Hamilton
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 3 – 3rd Floor
1301 Clay Street, Oakland, CA 94612

Dear Judge Hamilton:

Plaintiffs and Defendants submit this joint letter pursuant to the Court's Standing Order Regarding Discovery Disputes. This letter concerns Plaintiffs' post-judgment discovery requests served March 4, 2026 (Exhibits A–B) and NSO's responses and objections thereto (Exhibits C–F).

## I.      Plaintiffs' Position

NSO refuses to produce responsive information about its financing (RFP No. 1), tax returns (RFP No. 11), distributions and compensation (RFP No. 4, Interrogatory No. 9), and valuations (RFP No. 13, Interrogatory Nos. 5–7). Rule 69 permits broad post-judgment discovery into a judgment debtor's assets, and NSO's objections should be overruled. What NSO offers to produce, it conditions on Plaintiffs' advance waiver of their right to seek further discovery or accepting a sharply limited right to seek supplementation, subject to NSO's objection. The Court should order production of these documents, without NSO's conditions, within 30 days.

### A.      Background

This Court entered judgments for Plaintiffs totaling more than $20 million. Dkt. Nos. 810, 835. NSO has paid neither. Plaintiffs served post-judgment discovery requests on March 4, 2026. NSO initially refused to provide information about assets outside the United States or predating December 12, 2025, before agreeing to produce a subset. *See* Dkt. No. 853. On June 23, 2026, NSO agreed to produce certain documents only if Plaintiffs agreed that the production "satisfie[s]" and "eliminate[s]" the underlying requests. Ex. G at 1. On July 15, 2026, NSO agreed to produce certain documents only if doing so would "narrow" the requests and require Plaintiffs to serve new requests for any further documents. A responding party may not condition production on the requesting party's advance waiver of the right to review what is produced and seek warranted supplementation. *See* Fed. R. Civ. P. 26(e); 34(b)(2). Although Plaintiffs negotiated in good faith to narrow the requests and conferred with NSO on May 8, June 16, and June 26, they cannot agree the prioritized production will suffice until NSO produces the documents at issue. NSO has flatly refused to produce the credit and loan agreements.

### B.      Requested Relief

Rule 69 permits broad discovery into a judgment debtor's assets, and "[t]he presumption should be in favor of discovery." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014); *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *4 (N.D. Cal. Dec. 18, 2009). NSO's objections conflate the scope of permissible discovery with the scope of execution:

post-judgment discovery reaches a judgment debtor's assets even where the creditor "could not ultimately execute [the] judgment against [that] property." *NML Capital*, 573 U.S. at 138.[1]

Plaintiffs do not seek nonparty discovery, but instead seek documents in NSO's possession, custody, or control concerning NSO's own assets, liabilities, and transfers—its corporate and financing records, its tax returns, the payments and distributions it made to its own officers and equity holders, and valuations of its own business. Courts only require a "a threshold showing of the necessity and relevance" when post-judgment discovery is sought *from a nonparty*. *NML Cap., Ltd. v. Republic of Argentina*, 2013 WL 655211, at *2 (N.D. Cal. Feb. 21, 2013). The authorities NSO invokes are inapposite; they limit discovery directed at a nonparty, and confirm that a judgment debtor may be subjected to a searching examination of its own finances.

For each of the requests addressed below, NSO's conditional offer at most covers only a portion of the responsive categories identified in the request. None of the offers, even if fully performed, would satisfy the underlying request. Plaintiffs seek production of the materials identified below without NSO's conditions and without prejudice to their right to seek other documents responsive to the requests.

**RFP No. 1** seeks all documents concerning NSO's corporate governance, formation, capitalization, ownership, financing, and organizational structure—including loan or credit agreements, operating agreements, by-laws, and board minutes. Ex. A at 4. NSO agreed to produce only formation and shareholder documents plus a lien summary, and only if Plaintiffs agree in advance that the production "satisf[ies]" RFP No. 1. Ex. G at 1. NSO's offer omits entire categories expressly identified in the request. Loan and credit agreements show to whom NSO owes money, on what terms, and what collateral secures each debt—the information Plaintiffs need to determine what remains available to satisfy the judgment. Courts routinely order their production. *See Packaging Corp. of Am. v. Bonert's, Inc.*, 2019 WL 1123165, at *2 (C.D. Cal. Mar. 11, 2019); *Am. Zurich Ins. Co. v. ESG Republic, Inc.*, 2026 WL 242045, at *2 (E.D. Cal. Jan. 29, 2026). The Court should order production of the documents NSO has agreed to produce—without conditions—together with the loan and credit agreements, within 30 days.

**RFP No. 11** seeks all federal, state, and foreign tax returns filed since January 9, 2023. NSO agreed to produce only corporate income tax returns for 2023 and 2024, on the condition that it would "satisf[y]" RFP Nos. 8 and 11. Ex. G at 1. That offer does not address other categories of tax filings within the scope of the request. Tax returns disclose income, assets, and liabilities, and courts routinely require their production post-judgment. *See Petconnect Rescue, Inc. v. Salinas*, 2026 WL 1138349, at *3 (S.D. Cal. Apr. 20, 2026). The Court should order production of the 2023–2024 corporate income tax returns within 30 days, and NSO's 2025 return when filed, all without conditions.

**RFP No. 4 and Interrogatory No. 9** seek payments, distributions, and compensation to NSO's officers, managers, and equity holders since January 9, 2023. RFP No. 4 also seeks documents

---

[1] Even the authorities NSO invokes confirm the point. *See, e.g.*, *Devas Multimedia Priv. Ltd. v. Antrix Corp.*, 2021 WL 3616787, at *6 (W.D. Wash. Aug. 16, 2021) ("Regardless of whether this Court lacks authority to permit execution against assets located in other countries, Intervenors are entitled to obtain discovery of Respondent's assets both within and outside of the United States.").

identifying capital contributions provided to NSO during the same period. Ex. A at 4. NSO agreed to produce this information from May 6, 2025 forward, anonymized, excluding anything already in its audited financials—all on the condition that it would "satisf[y]" RFP Nos. 4 and 20 and Interrogatories No. 8 and No. 9. Ex. G at 1. NSO's offer does not address the capital-contributions component of RFP No. 4 at all. Plaintiffs are entitled to the transaction-level detail needed to trace NSO's assets. *See Patriot Rail Corp. v. Sierra R.R. Co.*, 2016 WL 492702, at \*9 (E.D. Cal. Feb. 9, 2016). NSO's proposal to withhold anything "already in" its audited financials is untenable: NSO has now produced financial statements for 2023 and 2024, but those statements report only aggregate balances—not the amount, date, recipient, and purpose of the individual payments needed to trace where NSO's assets went. NSO's substitution of May 6, 2025 for the January 9, 2023 start date should also be rejected. Post-judgment discovery reaches assets that may have been "concealed or fraudulently transferred," and courts in this District permit discovery reaching well before judgment. *See Ryan*, 2009 WL 5114077, at \*1, \*2 (approving a five-year period). The Court should order NSO to produce documents sufficient to show payments, distributions, and other compensation to officers, managers, members, and equity holders from January 9, 2023 forward, identifying for each payment the amount, date, recipient's role or category, and purpose, without NSO's conditions.

**RFP No. 13 and Interrogatory Nos. 5–7** seek valuations of NSO's business and assets, formal and informal, as well as identification of all real property, intellectual property, and other assets. NSO agreed to produce board minutes and third-party offers reflecting valuations above \$150,000 from May 6, 2025 forward. Ex. G at 2. That offer excludes internal valuations, appraisals, and pro forma estimates within the scope of RFP No. 13, does not address the asset-identification requirements of Interrogatory Nos. 5–7, and imposes an arbitrary \$150,000 threshold and start date for which NSO identifies no basis. *See Packaging Corp. of Am.*, 2019 WL 1123165, at \*2 (ordering production of appraisals and valuations). The Court should order production from January 9, 2023 forward, without conditions.

## II.      Defendants' Position

"[I]nformation that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." *NML Capital*, 573 U.S. at 144 (citing Fed. R. Civ. P. 26).[2] Courts thus properly require Rule 69 discovery to "be tailored to the specific purpose of enabling a judgment creditor to discover assets upon which it can seek to execute...." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012); *see also Blasket Renewable Invs., LLC v. Spain*, 2026 U.S. Dist. LEXIS 137920, at \*4 (D.D.C. June 22, 2026) (Rule 69 discovery "must be capable of identifying attachable assets"); *Crews v. Sun Sols. AZ LLC*, 2024 U.S. Dist. LEXIS 161328, at \*7-8 (D. Ariz. Sep. 9, 2024) (Rule 69 discovery may be "limit[ed] … on grounds of relevance ... and proportionality"); *Montgomery v. eTreppid Techs., LLC*, 2009 LX 91811, at \*5-6 (D. Nev. Feb. 25, 2009) ("The court has broad discretion to limit [Rule 69] discovery.")

---

[2] Plaintiffs misread *NML*, which held only the FSIA does not immunize foreign states from Rule 69 discovery. 573 U.S. at 139-40 ("[T]his is not a case about the breadth of Rule 69(a)(2)."). The Supreme Court emphasized that "other sources of law" and comity should inform determinations of "whether the discovery is warranted." *Id*. at 146 n.6.

Plaintiffs seek expansive discovery far beyond Defendants' executable assets, reaching back years before judgment and deep into the worldwide finances of countless third-party non-debtors. *See*, *e.g.*, "You," Exs. A-B. Defendants' initial Responses set forth objections but also substantive answers to all Requests with respect to Defendants' assets in the United States as of December 12, 2025, the date the judgment became enforceable. Given that Plaintiffs have established no right to enforce the judgment outside this District pending appeal, 28 U.S.C. § 1963, the Responses more than met the needs of the case. Defendants' main objections, which cut across most or all of the Requests, further establish that the remaining Requests are irrelevant and disproportional.[3]

First, information regarding non-debtors' assets—such as payments to officers or equity holders, or loan and credit agreements reflecting debts to third parties—is irrelevant. A payment or debt is not an attachable asset of Defendants, the only judgment debtors. "Disclosure concerning the assets of a non-party is not generally contemplated by Rule 69(a)," absent a showing of "relevance – i.e., at least some demonstration of concealed or fraudulent transfers or alter ego." *Uniden Corp. of Am. v. Duce Trading Co.*, 1993 U.S. Dist. LEXIS 10441, at *2 (W.D.N.Y. July 19, 1993); *Trendsettah U.S. v. Swisher Int'l*, 2021 U.S. Dist. LEXIS 239951, at *6-7 (C.D. Cal. Aug. 13, 2021); *Beautyko LLC v. Amazon Fulfillment Servs.*, 2018 U.S. Dist. LEXIS 64746, at *6-7 (W.D. Wash. Apr. 16, 2018); *GMA Acc. v. Elec. Wonderland, Inc.*, 2012 U.S. Dist. LEXIS 72897, at *14-15, *22-25 (S.D.N.Y. May 22, 2012). Plaintiffs do not even attempt to make such a showing.[4]

Second, information regarding nonexecutable assets within or outside the United States is simply irrelevant. *See NML Capital*, 573 U.S. at 144. It is undisputed that, under the laws of Israel, where Defendants' substantial assets are located, a foreign judgment is not enforceable until it "is no longer appealable." Foreign Judgments Enforcement Law, Section 3.2 (Isr. 1958); *see EM Ltd. v. Argentina*, 695 F.3d 201, 204 (2d Cir. 2012) (noting, without disapproval, district court's finding that discovery into assets in Argentina would be "useless information" where "no Argentinian court" would permit execution).[5] The laws of Luxembourg, where Defendants' ultimate parent is incorporated, are similar. *See Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1392 (9th Cir. 1995).[6]

---

[3] The Court should reject Plaintiffs' attempts to use Defendants' productions subject to objections against them.

[4] Relevance is not limited to discovery from third parties. *Beautyko* (at *5) concerned both subpoenas and requests for "the Judgment Debtors to produce personal financial information of nondebtor[s]." Regardless, the key question is whether a showing has been made that warrants disclosure of the information under Rule 69. Plaintiffs' cases are not to the contrary. In *Packaging Corp.* (at *9), the court allowed some requests where the plaintiff "presented sufficient evidence" of fraudulent transfer and denied others for lack of a "particularized showing." *Am. Zurich* was unopposed.

[5] Nor may Plaintiffs access judgment enforcement mechanisms in Israel pending appeal. *See Averbuch v. Otkritie Int'l Inv. Mgmt. Ltd.*, CivA 9474/16 (Isr. 18 Feb. 2018) (asset discovery permitted only after judgment is "declared enforceable"), *available at* https://he.afiklaw.com/caselaw/6432. Plaintiffs' reliance on *Ryan* is thus misplaced. *Ryan* did not involve a foreign jurisdiction where discovery of assets was unavailable pending appeal. *Id.* at *6 n.2.

[6] Plaintiffs overstate *Devas*' holding. Unlike in *Devas*, where plaintiffs had already commenced enforcement proceedings abroad and there was no indication that enforcement was unavailable in any relevant jurisdiction, 2021 U.S. Dist. LEXIS 154109, at *16 & n.5, Plaintiffs here have not yet commenced any enforcement actions abroad, and they already "know" that the judgment is unenforceable in Israel or Luxembourg, *NML*, 573 U.S. at 144.

Third, information before the judgment became enforceable is irrelevant and disproportional.  *See Devas*, 2021 U.S. Dist. LEXIS 154109, at *21 (setting "date of the [Arbitral] Award" as start date).

Finally, Plaintiffs mischaracterize Defendants' position in a misguided effort to fabricate a "dispute."  Defendants have not sought "advance waiver of [Plaintiffs'] right to review what is produced and seek warranted supplementation."  Defendants have sought to negotiate the scope of Plaintiffs' *existing* requests, as is inherent in any meaningful meet and confer process, based on Plaintiffs' representations that such narrowing is possible, only to see Plaintiffs revert to their baseline position that only full compliance with the Requests as written would suffice.  *See, e.g.*, *InfusAID LLC v. InfuSystem Inc.*, 2018 U.S. Dist. LEXIS 17051, at *4-14 (D. Kan. Feb. 2, 2018) (ordering parties "to meaningfully confer to narrow the scope of these discovery requests" before documents were produced where "plaintiff did little more than demand full compliance").

At the first meet and confer on May 8, Plaintiffs stated their desire to go directly to the Court. Ex. H at 1-2.  At Defendants' urging, the parties engaged in discussions that resulted in the production of numerous documents and supplemental responses (Exs. E-F) pursuant to a June 4 Stipulation, while "negotiations continue as to the remaining scope of the Post-Judgment Discovery."  Dkt. No. 853.  On June 5, Plaintiffs sent an "agenda" for a "meet and confer on the balance of Plaintiffs' March 4 requests."  Ex. I.  At the June 16 meet and confer, Plaintiffs expressed willingness to consider a written response to that agenda on the premise that the parties could reach agreement on narrowing and eliminating specific requests (as had been done with Interrogatory No. 10 and RFP No. 7, *see, e.g.*, Ex. H at 1).  Ex. J. Defendants sent a proposal on June 23, and expected to negotiate it on a call on June 26; they were surprised to learn that Plaintiffs were now unwilling to engage in *any* discussion of the scope of their requests.  Ex. J.

Defendants have repeatedly clarified that they do not ask Plaintiffs to "waive" any right to supplement their requests as warranted, but only to reasonably delimit the scope of their *existing* requests.  Ex. K at 1; *see, e.g.*, *Montgomery*, 2009 LX 91811, at *5-6, *8 (narrowing requested discovery at the "initial" stage of post-judgment proceedings without prejudice to plaintiffs' ability to "renew his request" later).  What Defendants oppose is Plaintiffs' expectation that Defendants will continue to produce documents indefinitely, slowly eroding their valid objections, without any corresponding compromise by Plaintiffs that a compliant production would satisfy their existing requests.  Ex. K at 1.  Indeed, Defendants proposed a revised stipulation offering to produce *all* of the categories of documents sought in Plaintiffs' own proposed stipulation, with the exception of deferring negotiation of loan and credit agreements for discussion with other pending requests, while preserving "[P]laintiffs' right to seek warranted supplementation under Federal Rule 26(e) upon review of the production and Defendants right to object thereto"—language from Plaintiffs' own letter.  Ex. L at 3.  After Defendants offered to remove that language, Plaintiffs found new language to object to, giving Defendants no time to respond.  Plaintiffs have refused any further videoconferences, only emails.  Ex. M.  That is not a good faith meet and confer.

**Relief Requested:**  Defendants therefore request that the Court either: (i) adopt the June 4 Stipulation as the final resolution of the Requests; or alternatively (ii) direct the parties to continue

conferring in a good faith effort to narrow the scope of remaining requests in line with Defendants' June 23 Proposal; or (iii) set a briefing schedule for Defendants' motion for protective order to allow full and fair briefing of the numerous issues raised by Plaintiffs' broad discovery demands.

**Respectfully submitted,**

| **DAVIS POLK & WARDWELL LLP** | **CURTIS, MALLET-PREVOST, COLT & MOSLE LLP** |
|---|---|
| **By:** /s/ *Greg D. Andres* | **By:** /s/ *Juan O. Perla* |
| Greg D. Andres | Juan O. Perla |
| Antonio J. Perez-Marques | Turner Smith |
| Luca Marzorati | Steven Thomas |
| (admitted *pro hac vice*) | (admitted *pro hac vice*) |
| DAVIS POLK & WARDWELL LLP | CURTIS, MALLET-PREVOST, COLT & MOSLE LLP |
| 450 Lexington Avenue | 101 Park Avenue |
| New York, New York 10017 | New York, New York 10178 |
| Telephone: (212) 450-4000 | Telephone: (212)-696-6084 |
| Facsimile: (212) 701-5800 | Email: jperla@curtis.com |
| Email: greg.andres@davispolk.com | tsmith@curtis.com |
| antonio.perez@davispolk.com | sthomas@curtis.com |
| luca.marzorati@davispolk.com | |
| | |
| Micah G. Block (SBN 270712) | Jerrold L. Bregman (SBN 149896) |
| DAVIS POLK & WARDWELL LLP | BG LAW LLP |
| 900 Middlefield Road, Suite 200 | 21650 Oxnard Street, Suite 500 |
| Redwood City, California 94063 | Woodland Hills, CA 91367 |
| Telephone: (650) 752-2000 | Telephone: (818)-827-9101 |
| Facsimile: (650) 752-2111 | Facsimile: (818)-827-9099 |
| Email: micah.block@davispolk.com | Email: jbregman@bg.law |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants NSO Group* |
| *WhatsApp LLC and Meta Platforms,* | *Technologies Ltd. And Q Cyber Technol-* |
| *Inc.* | *ogies Ltd.* |