Kellen S. Dwyer
(admitted *pro hac vice*)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street, NW, Suite 643A
Washington, DC 20037
kdwyer@holtzmanvogel.com
Phone: (202) 737-8808

Bradley A. Benbrook
(CA Bar # 177786)
Stephen M. Duvernay
(CA Bar # 250957)
Benbrook Law Group, PC
701 University Ave., Suite 106
Sacramento, CA 95825
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com
Phone: (916) 447-4900
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP INC., a Delaware Corporation, and FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL SUBMISSION REGARDING MOTION FOR CONTEMPT**<br><br>Judge: Hon. Phyllis J. Hamilton |

## **Introduction**

WhatsApp invites this Court to commit clear error by holding NSO in contempt, without having heard any testimony, based on a burden-shifting framework that WhatsApp invented. WhatsApp accused NSO of creating 23 new WhatsApp accounts yet has refused to identify those accounts or the "technical and behavior signatures" that allegedly tie those accounts to unnamed NSO employees. And WhatsApp claims an "NSO customer" sent "malicious URLs" over WhatsApp, but refused to identify the customer, the URLs, or the supporting evidence.

WhatsApp claims it did not disclose its evidence because "NSO could use [it] to evade detection going forward." Dkt. 864, at 1. WhatsApp did not want "to give up the specific markers by which we were able to identify these particular accounts," so, it explained, "what we've done here is say 'here is an affidavit, if you can controvert it, please go ahead.'" Tr. of Aug. 20 Hr'g at 11. WhatsApp then refused to present any testimony at the contempt hearing, even after NSO asserted its right to cross-examine witnesses, *id.* at 22, 52, so that it could continue to keep its evidence secret. But the Ninth Circuit requires the moving party to offer clear and convincing evidence supported by live testimony, even if it would prefer to keep its evidence secret (as most parties would). There is no special privilege that protects Meta's investigative methods.

In the guise of a proposed order, WhatsApp now makes a new motion for a show cause order, followed by a second contempt hearing. But WhatsApp could have moved for a show cause order initially; instead, it "move[d] for an order holding [NSO] in civil contempt," Dkt. 854, at 1, and set a "hearing on plaintiff's motion for contempt," Dkt. 866. Even today, WhatsApp continues to ask the Court to hold NSO in contempt based on the August 20 hearing. WhatsApp cannot ask the Court to find that it proved contempt at the August 20 hearing and, simultaneously, ask to re-do the process and hold a second contempt hearing if the Court finds it failed to prove contempt at the first hearing. That is the definition of getting two bites at the apple. It should not be allowed.

## Argument

### I. WhatsApp's Contempt Motion Should Be Denied Because It Has Failed To Meet Its Burden of Proof and Offered No Testimony at the Contempt Hearing.

"The standard for finding a party in civil contempt is well settled: ***The moving party has the burden*** of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden ***then shifts*** to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (emphasis added) (quoting *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). And "a civil contempt proceeding, which may lead to the assessment of a fine, is a trial within the meaning of Fed. R. Civ. P. 43(a), rather than a hearing on a motion within the meaning of Fed. R. Civ. P. 43(e) and that the issues may not be tried on the basis of affidavits." *Hoffman ex rel NLRB v. Beer Drivers & Salesmen's Local Union*, 536 F.2d 1268, 1277 (9th Cir. 1976); *accord Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 495 (9th Cir.1983). Because a "civil contempt proceeding is considered a 'trial' within the meaning of Rule 43(a), … witness testimony must be taken in open court.'" *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, No. 21-mc-80189-DMR, 2022 U.S. Dist. LEXIS 219078, at *9 (N.D. Cal. June 6, 2022) (quoting S*alamon v. Creditors Specialty Serv. Inc.*, No. C 11-172 CW, 2012 U.S. Dist. LEXIS 146808, 2012 WL 4857810, at *3 (N.D. Cal. Oct. 11, 2012)).[1]

Instead of offering detailed evidence or live testimony, WhatsApp gambled on convincing the Court to adopt its burden-shifting framework. WhatsApp claims that a party moving for contempt can essentially win by default if "the movant's evidence stands unrebutted" by "contrary

---

[1] *See also Johnson v. Castagnola*, No. 18-cv-00583-SVK, 2019 U.S. Dist. LEXIS 147764, at *5-6 (N.D. Cal. Aug. 29, 2019) ("A civil contempt proceeding is considered a 'trial' within the meaning of Rule 43(a), which means that oral testimony is required."); *Nikko Materials USA, Inc. v. R.E. Serv. Co.*, No. C 03-2549 SBA, 2006 U.S. Dist. LEXIS 45236, at *11 (N.D. Cal. June 22, 2006) ("[C]ivil contempt may not be tried on the basis of affidavits alone.").

evidence." Pls.' Reply Br. at 3. But it is only after the moving party meets its "***burden*** of showing [a violation] by clear and convincing evidence" that "[t]he burden ***then shifts*** to the contemnors." *Affordable Media*, 179 F.3d at 1239. The Court applied this settled framework just ***three days*** before the contempt hearing in this case. *See Operating Engineers' Health & Welfare Tr. Fund v. Capurro AG*, No. 4:22-cv-03004 HSG, 2026 U.S. Dist. LEXIS 183438, at *14 (N.D. Cal. Aug. 17, 2026) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. ***Once the moving party does so***, the burden then shifts…." (cleaned up)) (emphasis added)); *accord POP Top Corp. v. Rakuten Kobo Inc.*, No. 20-cv-04482-YGR, 2026 U.S. Dist. LEXIS 46011, at *5 (N.D. Cal. Mar. 5, 2026). Indeed, the party without the burden of proof quite literally does not have the burden of presenting proof; it may simply argue that the opposing party has not met its burden. *See, e.g.*, S*oremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1542 (9th Cir. 1989).

In the two cases WhatsApp cites for its novel burden-shifting framework, the defendants either ***admitted*** to violating a court order or failed to submit affidavits after being ordered to do so. In *Peterson v. Highland Music*, "Defendants d[id] not even attempt to dispute" that they violated the court's order; they "offe[red] various excuses as to why their repeated refusals to comply with the judgment were not their fault and should be excused." 140 F.3d 1313, 1323 (9th Cir. 1998). And *Vasquez v. Libre* found that "[b]ecause [defendants] have not filed any evidence to contradict the declaration of [plaintiff], ***despite the Court's order to show cause ordering them to do so***, the Court may treat as true the facts set forth in that declaration." 2023 U.S. Dist. LEXIS 11334, at *31 (N.D. Cal. Jan. 23, 2023) (emphasis added).

Finally, *Peterson* reaffirmed that "a district court ordinarily should not impose contempt sanctions solely on the basis of affidavits" and simply allowed "[a] trial court may in a contempt

proceeding narrow the issues by requiring that affidavits on file be controverted by counter-affidavits ***and may thereafter*** treat as true the facts set forth in uncontroverted affidavits." 140 F.3d at 1324 (emphasis added). WhatsApp chose not to call witnesses at the contempt hearing, betting that it could convince this Court to extend *Peterson* to cases where there was no order "requiring that affidavits on file be controverted." *Id.* That gambit should fail, the motion should be denied outright, and the Court should issue NSO's original proposed order. *See* Dkt. 863-1.

## II. WhatsApp Should Not Get a Second Bite at the Apple.

### A. WhatsApp Should Not Get a Second Contempt Hearing

WhatsApp wants to turn back the clock and move for a show cause order. But WhatsApp could have done so initially. *See Stewart v. O'Neill*, 225 F. Supp. 2d 6, 10 (D.D.C. 2002) ("the ultimate question of contempt is not before the Court; plaintiffs seek only an Order that defendant show cause why he should not be held in contempt"). Instead, WhatsApp chose to move for an order of contempt, set a contempt hearing, and ask the Court to hold NSO in contempt at that hearing (and again in supplemental briefing), thereby placing "the ultimate question of contempt … before the Court." *Id.* Having failed to meet its burden, WhatsApp cannot get a redo.

### B. WhatsApp Has Not Made a Sufficient Showing Even for a Show Cause Order.

Courts "should be cautious when authorizing contempt proceedings" and "[o]rders to show cause should not issue merely because someone requests one." *In re Costa*, 172 B.R. 954, 963 (Bankr. E.D. Cal. 1994). Rather, the moving party must "***demonstrat[e]*** [ ] facts that, if not rebutted," constitute clear and convincing evidence. *Id.* (emphasis added). But WhatsApp has intentionally not disclosed its evidence or even identified accounts it claims NSO created. WhatsApp vague and conclusory affidavit does not "demonstrate" any "facts." *Id.*

## III. NSO Cannot Meaningfully Respond To WhatsApp's Intentionally Vague Allegations Without More Information.

It would be extremely difficult to respond to WhatsApp's allegation that NSO employees

created 23 new WhatsApp accounts if WhatsApp continues to refuse to identify those accounts or the technical and behavioral signatures" that allegedly tie them to NSO employees. Without this information, NSO would be forced to indiscriminately question hundreds of employees (and former employees?) about whether and how any might have used WhatsApp for any purpose on any device. Similarly, NSO cannot effectively investigate whether an "NSO customer" sent "malicious URLs" to their targets if WhatsApp refuses to identify the customer or the malicious URLs. Without that information, NSO would have to go to all of its customers—each of whom is a law enforcement or intelligence agency of a sovereign nation—and ask broad questions about whether any of their agents have ever texted any "malicious URLs" over WhatsApp. And, after all of this, it may be that the alleged "NSO customer" that WhatsApp believes it identified, is no longer (or perhaps never was) an NSO customer. This inefficient process that would be unlikely to yield helpful information, definitely not within the requested 14 days.

Accordingly, NSO's alternative Proposed Order (*see* **Exhibit A**) requires WhatsApp to provide the information necessary for NSO to respond to WhatsApp's proposed order. NSO does not seek information about WhatsApp's sources and methods; it simply asks WhatsApp to identify the facts and evidence referenced in the Blaich declaration, such as the "accounts," the "testing groups," the "NSO customer," the "malicious URLs," and the "technical and behavioral signatures."

## IV. If the Court Does Order NSO To File a Responsive Declaration, It Should Be Limited to the Factual Issues Raised by Plaintiff's Contempt Motion

WhatsApp seeks to use its proposed order to get discovery on a number of issues that are not related to the violations alleged in its contempt motion. WhatsApp requests a complete accounting of "all the steps NSO has taken to comply with each provision of the Permanent

Injunction since its effective date," even those it has never even been accused of violating.[2] Dkt. 870-1 ¶ 2. WhatsApp also wants NSO to explain whether it has "collected data from the WhatsApp application on target devices." *Id.* ¶ 2(d). But the allegation that NSO collected data from WhatsApp applications was not raised until the hearing and, even then, WhatsApp admitted it was based on nothing more than the fact that NSO is still in business. Tr. of Aug 20 Hr.'g at 13.

Accordingly, any show cause order should be limited to confirming or denying the allegations made in WhatsApp's affidavit to the extent those allegations, if true, would actually violate the injunction. *See infra* Part V.

## V. Before Ordering Additional Affidavits, the Court Should Clarify Two Threshold Disputes About the Scope of the Permanent Injunction.

The Court should clarify two disagreements about the scope of the injunction in order to (1) help NSO ensure ongoing compliance with the Court's order; (2) narrow the factual questions to be litigated; and (3) allow the Parties to accurately portray the injunction in the Ninth Circuit.

### A. The Court Should Clarify Whether NSO Employees Are Barred From Using Their Pre-Existing WhatsApp Accounts for Any Purpose.

As the Court itself acknowledged, the Injunction was not originally intended to cover the use of pre-existing WhatsApp accounts. *See* Tr. of Aug. 20, 2026, Hr'g at 14 ("[T]here clearly is no explicit prohibition in the injunction against using preexisting accounts. It's not something that even occurred to me specifically as a category."). This intent appears evident from Section 3(d) of the Injunction, which bars NSO from "creating" WhatsApp account, but not from "using" them.

[2] This certification of compliance is exactly what WhatsApp requested and the Court denied when drafting the permanent injunction. *See* Dkt. 802 at 18 (ordering WhatsApp to remove certification provision from any revised proposed injunction). Thus, WhatsApp is attempting to use its proposed order to show cause to get what the court already said wasn't warranted.

PI ¶ 3(d).[3] But if the Court did mean to ban all NSO employees from using pre-existing WhatsApp accounts for any purpose, clarification would be helpful. In a country where WhatsApp is the primary means of text-based communication, it will be difficult to ensure that employees do not use WhatsApp on their personal devices to communicate with their family, friends, and dependents. Implementing such a broad injunction would certainly be a human resources challenge, and individual employees will need time to adjust. Many employees, for instance, likely use WhatsApp to communicate with healthcare providers, caretakers for their parents or children, teachers, and other parents with whom they share responsibilities. This greater clarity would reduce unintended consequences and increase compliance. It could also reduce the time and expense of continuing to litigate WhatsApp's contempt motion. If the injunction includes pre-existing WhatsApp accounts, NSO may have to investigate the personal communications every employee. By contrast, if the injunction is limited to "creating new WhatsApp accounts," PI ¶ 3(d)**,** the Parties can focus their dispute on the 23 alleged newly-created WhatsApp accounts.

**B. The Court Should Clarify Whether the Permanent Injunction Is Violated By the Independent Decision Of Foreign Sovereigns To Use WhatsApp To Text "Malicious URLs" To Their Targets.**

WhatsApp admits that the entity that allegedly texted these "malicious URLs" via WhatsApp was "an NSO customer," not NSO. *See* Blaich Decl. ¶ 13 ("The Threat Intelligence team assesses with high confidence that this activity was carried out ***by an NSO customer***." (emphasis added)); Mot. 4 ("[A]n NSO customer using NSO spyware and NSO-Operated delivery

[3] While NSO did characterize the Permanent Injunction as broadly as it could be read on appeal, it was required to challenge all possible applications of the injunction in order to avoid a waiver. *See Daily v. City of Phx.*, 765 F. App'x 325, 327 (9th Cir. 2019) (appellants waive "any challenge to [an] aspect of the district court's ruling by failing to make any arguments about [them] in their opening brief"). Nonetheless, NSO continues to believe that the injunction should not be read so broadly as to bar NSO employees from using pre-existing WhatsApp accounts for any purpose.

infrastructure sent one-click malicious URLs using WhatsApp to a WhatsApp User."). Moreover, WhatsApp does not allege that customers sent NSO-created spyware through WhatsApp servers or to WhatsApp client applications. Rather, WhatsApp alleges that an NSO customer used WhatsApp to text "a malicious URL link for a non-Meta, third-party website" which, if clicked, would "attempt to cause malware to download" from that "non-Meta, third-party website." Blaich Decl. ¶ 14. Thus, the only alleged nexus to WhatsApp is the independent decision by an (alleged) NSO customer to text a "malicious URL" to their target via WhatsApp.

This presents a straightforward legal question: does an independent decision by an NSO customer to text a malicious URL to a target via WhatsApp violate the injunction? How the Court answers this question will greatly affect the time and resources needed to litigate WhatsApp's contempt motion. If the injunction is not violated by an independent decision by NSO's sovereign customers, NSO's defense will be straightforward. It will demonstrate that it does not and could not control how customers send "malicious URLs" to clients and that the technology that NSO does provide to its customers—what WhatsApp confusingly labels "NSO-controlled delivery infrastructure"—has nothing to do with WhatsApp. If, however, an independent decision by an NSO customer does violate the injunction, NSO will have to investigate whether or not one of its customers did, in fact, text a "malicious URL" to one of its targets, which will take a significant amount of time. Moreover, the question of whether, and to what extent, the injunction purports to govern the conduct of NSO's customers is currently before the Ninth Circuit. Greater clarity on this point will ensure that NSO can portray the injunction accurately in its ongoing appeal, and would give NSO the chance to challenge any broadening of the injunction in its current appeal.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' contempt motion or, in the alternative, issue NSO's Proposed Order.

Dated: September 3, 2026

Respectfully submitted,

HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC

By: _*/s/ Kellen S. Dwyer*_____

Kellen S. Dwyer
(admitted *pro hac vice*)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street, NW, Suite 643A
Washington, DC 20037
kdwyer@holtzmanvogel.com
Phone: (202) 737-8808

Bradley A. Benbrook
Stephen M. Duvernay
Benbrook Law Group, PC
701 University Ave., Suite 106
Sacramento, CA 95825
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com
Phone: (916) 447-4900

*Attorneys for Defendants*