September 10, 2026

Re: *WhatsApp LLC v. NSO Group Technologies Ltd.*, No. 4:19-cv-07123-PJH (N.D. Cal.)

The Honorable Phyllis J. Hamilton
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 3 – 3rd Floor
1301 Clay Street, Oakland, CA 94612

Dear Judge Hamilton:

Plaintiffs WhatsApp LLC and Meta Platforms, Inc. and Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited submit this joint status statement pursuant to the Court's order at the August 20, 2026 hearing. *See* Dkt. No. 877.

## I. Plaintiffs' Position

### A. Document Dispute

Pursuant to the Court's order at the August 20, 2026 hearing, the parties met and conferred on September 3, 2026 regarding the three categories of discovery identified in the parties' post-judgment discovery dispute letters. *See* Dkt. Nos. 870, 873, 874. The parties met and conferred for approximately one hour on September 3, 2026. A substantial portion of the discussion addressed the three categories of document discovery identified by the Court at the August 20, 2026 hearing. The parties discussed at length the scope of the requests that remain in dispute but were unable to reach agreement. Notwithstanding the Court's guidance at the August 20 hearing, NSO maintained its objections across the board, including its objection to producing its relevant agreements with third parties.

The three categories of disputed discovery are: (1) loan and credit agreements; (2) valuations of NSO's business and assets; and (3) insider distributions and compensation. On **loan and credit agreements**, NSO proposed, on condition of global agreement, an interrogatory response summarizing the economic terms or production of agreements with counterparty identities redacted/withheld. That proposal is inconsistent with the Court's guidance at the August 20 hearing. The Court contemplated redaction only where "the other party [to the agreement] was one of their government customers . . . whose identity has not been ordered." Hearing Tr. (Aug. 20, 2026) at 49:23–50:13. Nothing suggests any sovereign interest is implicated here, and NSO has made no indication to the contrary. To the extent NSO invokes ordinary third-party confidentiality, the Court's protective order more than adequately addresses that concern. Moreover, Plaintiffs are entitled to know with whom NSO is transacting, including to guard against related-party dealings designed to frustrate collection. On **valuations and assets**, NSO continues to refuse to disclose assets in Luxembourg and Israel, which is where its material assets are believed to be. With respect to **payments and distributions**, NSO merely reiterated its prior offer to produce only anonymized information and only as part of a global resolution.

NSO's proposals are substantially unchanged and remain insufficient for the reasons already fully briefed in the parties' July 31 letter (Dkt. No. 870) and August 17 supplemental letter (Dkt. No. 874). Contrary to NSO's accusations that Plaintiffs have not worked to resolve disputes, Plaintiffs have met each of NSO's objections and the documents that Plaintiffs are seeking in this joint letter are narrower than the original requests, which themselves were already carefully streamlined.

### B. Deposition Dispute

The parties have also reached impasse with respect to post-judgment deposition discovery. Plaintiffs served NSO with a Rule 30(b)(6) notice on July 23, 2026 (Exhibit A) and with a Rule 30(b)(1) deposition notice for NSO's CEO, Akiva Rosner, on August 25, 2026 (Exhibit B). NSO has taken the position that it will not proceed with deposition scheduling (or even provide any objection or counterproposal regarding the Rule 30(b)(6) topics) unless and until the document issues are resolved.

### C. Requested Relief

Plaintiffs are mindful of the Court's direction at the August 20 hearing and offer two proposals below. First, if the Court wishes to receive further briefing on the document disputes, Plaintiffs request that the Court set a single, consolidated briefing schedule for a motion to compel addressing all outstanding disputes: the three document categories, the Rule 30(b)(6) deposition, and Mr. Rosner's individual deposition. Plaintiffs propose: (1) Plaintiffs' opening brief in support of their motion to compel due 7 days from the date the Court enters its order setting a briefing schedule; (2) Defendants' opposition due 14 days after Plaintiffs' opening brief; and (3) Plaintiffs' reply due 7 days after Defendants' opposition. This schedule would allow the Court to resolve all outstanding disputes in a single proceeding. In the alternative, Plaintiffs respectfully submit that the document discovery disputes are ripe for resolution without further briefing and propose that the Court (1) order NSO to produce the remaining categories and (2) order the parties to present the deposition disputes via joint letter within 5 business days after such order.

## II. Defendants' Position

The Court should order production on the basis set out below as a means of resolving the three pending document issues without further briefing at this time. Alternatively, the Court should permit a motion for a protective order regardless of whether it also grants leave to file a motion to compel. Fed. R. Civ. P. 26(c); *see, e.g.*, *West v. Int'l House of Pancakes, LLC*, No. 09-00542 ACK-KSC, 2011 U.S. Dist. LEXIS 70811, at *14 (D. Haw. June 30, 2011) (motion for protective order is proper to challenge "overbroad or irrelevant" discovery requests); *Laker Airways, Ltd. v. Pan Am. World Airways*, 103 F.R.D. 42, 46 (1984) (similar for "otherwise improper" requests).

As explained in the July 31, 2026 joint letter, Dkt. No. 870, Plaintiffs' discovery requests extend far beyond the proper scope of Rule 69, *i.e.*, discovery of executable assets of the judgment debtors. Still, in a spirit of good faith to avoid burdening the Court unnecessarily, Defendants already produced many categories of documents including their audited financial statements for 2023 and 2024, their corporate formation documents, and existing liens on their assets, in addition to certified disclosures about their assets in the United States, shareholder agreements, outgoing transfers, and authorized signatories, among others. Dkt. Nos 870-4—870-6. Additionally, Defendants are

ready to produce their corporate income tax returns from 2023 and 2024, which are in Hebrew, once Plaintiffs follow through with their commitment from months ago to submit a stipulated protective order governing generative AI use to translate and review confidential documents. Dkt. No. 873-1. Defendants have also already agreed to produce their audited financial statements for 2025 once finalized. Dkt. No. 853 ¶ 2.

Defendants' consistent efforts have been met with Plaintiffs' repeated refusals to make any reciprocal movements toward compromise. Dkt. No. 870 at 5; Dkt. Nos 870-8—870-13, Exs H-M. Plaintiffs, in fact, have rejected the *very idea of compromise*, insisting that Defendants make a series of concessions, steadily eroding their valid objections, while refusing on principle to narrow their existing requests as is expected in the ordinary meet and confer process. Dkt. No. 870 at n.3.[1]

This dynamic has continued up to and since the filing of the July 31 joint letter. Before that letter, the parties almost executed a second stipulation for a supplemental production based on Plaintiffs' own "agenda" on "the balance of Plaintiffs' March 4 requests," but those efforts were inexplicably cut short when Plaintiffs forced the filing of a joint letter late on a Friday—Shabbat—in Israel, without giving Defendants an opportunity to respond to Plaintiffs' last-minute decision to raise the bar for an agreement. *Id.* at 5; Dkt. No. 870-13, Ex. M. Even so, in an effort to narrow the issues for the Court, Defendants made a voluntary, unilateral supplemental production of categories of documents identified in the unexecuted stipulation, as explained in Defendants' August 7 supplemental letter. Dkt. No. 873. That letter would have been unnecessary, and this entire "dispute" could have been averted, had Plaintiffs acted reasonably and waited until after Shabbat. Plaintiffs' subsequent letter summarized the remaining issues without narrowing them.

At the August 20 hearing, which was calendared to address the pending contempt motion, the Court raised the issue of Rule 69 discovery and offered guidance on the three remaining document issues: (i) loan and credit agreements, (ii) distributions and payments to officers and equity holders, and (iii) valuation and identification of assets.[2] Consistent with Defendants' request in the July 31 letter, the Court ordered "one last meet-and-confer on these three issues alone," and if the issues could not be resolved, a joint statement with the parties' positions on whether a motion to compel or a motion for protective order would be better to address those issues. Tr. 49:2-4; 51:3-13.

Pursuant to the Court's directives, Defendants came to that meet and confer with a good faith global proposal to resolve those issues, as follows: (i) produce the economic terms of the loan and credit agreements in the form of a certified answer, or the agreements themselves, without third-party identifying information—consistent with the Court's suggestion that "[i]f NSO's party to a particular loan agreement or credit agreement, they can provide the information without the third party," and that redactions could be used, Tr. 49-50; (ii) produce information about assets owned

[1] Defendants have explained to Plaintiffs, before and after the July 31 letter, that all Defendants seek is an agreement on the scope of *existing* requests, leaving Plaintiffs free to seek supplementation as warranted. Dkt. No. 870 at 5.

[2] At the hearing, Plaintiffs mischaracterized Defendants' arguments as objecting to "nonparty discovery." Tr. 49:14-22. Defendants' objection is not that documents are in possession of third parties. It's that documents *concerning third-party assets* are irrelevant absent the requisite showing, regardless of who has them. Dkt. No. 870 at 3-4.

by Defendants in any jurisdiction where it holds assets valued above a *de minimis* amount of $150,000 in the aggregate, other than Israel and Luxembourg, and produce any valuations of assets in such jurisdictions to the extent they exist; and (iii) produce information on payments or distributions to officers or equity holders, starting as of January 9, 2023, subject to PII redactions required by Israeli privacy laws. Given that Plaintiffs have yet to show good cause to enforce the judgment outside the Northern District of California, or any right to enforce it in Israel or Luxembourg, pending appeal, Dkt. No. 870 at 4, those productions and disclosures are more than sufficient to meet "the needs of the case." Fed. R. Civ. P. 26(b)(1).

Perhaps unsurprisingly given Plaintiffs' expressed position going into the meet and confer, Exhibit C at 1-2, Plaintiffs rejected those items out of hand before even hearing the full proposal. Plaintiffs offered no counterproposal. Instead, they were laser focused on discussing deposition notices—a topic not ordered for this meet and confer but Plaintiffs now wish to submit to the Court.[3]

Plaintiffs' categorical rejection of Defendants' proposal with respect to the loan and credit agreements is not only par for the course but also particularly telling. In their July 31 letter, Plaintiffs argued that those agreements are relevant "to determine what remains available to satisfy the judgment." Dkt. No. 870 at 2. When faced with Defendants' offer to provide the economic terms of any such agreements after having already disclosed existing liens on assets—information that is sufficient to show "what remains available"—Plaintiffs once again raised the bar, indicating that they needed the names of third parties to identify targets for enforcement. That, of course, is *why* a heightened showing for discovery of third-party assets is critical. Although Defendants' position is that the agreements are irrelevant, they are willing in the interests of compromise to produce their terms. What Defendants object to is exposing their uninvolved counterparties to harassing discovery demands from Plaintiffs into *their* finances, without the requisite showing on Plaintiffs' part that those agreements are not ordinary arms' length transactions—indeed without Plaintiffs even first *looking at the terms of the agreements Defendants offered to produce*. *See NML Capital, Ltd. v. Republic of Arg.*, No. C 12-80185 JSW (MEJ), 2013 U.S. Dist. LEXIS 24010, at *4-6 (N.D. Cal. Feb. 21, 2013) (denying discovery of non-party assets as irrelevant and unnecessary upon *debtor's* motion that plaintiff failed to make requisite showing of alter ego or fraudulent transfer).

For these reasons, and in the interest of avoiding unnecessary briefing, Defendants request that the Court order production on the basis of Defendants' proposal above as satisfying the remaining requests, without prejudice to Defendants' objections. Alternatively, the Court should order

[3] Briefing on deposition notices is premature as no clear dispute has arisen and a Court ruling on pending issues could offer guidance for the parties to resolve or narrow any issues. Contrary to Plaintiffs' contention, Defendants have cooperatively worked to schedule a deposition and have twice informed Plaintiffs that, due to travel and upcoming Jewish holidays, Defendants could be generally available after October 4, subject to any further rulings by this Court. A ruling on the document issues would aid the parties in identifying the proper scope of a deposition. So would a ruling on the pending statements for any further contempt proceedings considering that Plaintiffs intend to misuse Rule 69 discovery, which is limited to executing a "money judgment," to pursue discovery for its contempt motion without Court authorization. *See, e.g.*, Ex. A (topics 17-20). In any case, the request to brief deposition issues now only further demonstrates the need for a motion for a protective order.

briefing on a protective order on one of two proposed schedules set forth below to allow Defendants to fully and fairly litigate their objections to the remaining document issues, which cut across many of Plaintiffs' other requests, and protect against the annoyance, oppression, and undue burden of Plaintiffs' intractable demands for further irrelevant, unduly intrusive discovery.

| **Only motion for protective order (MPO)** | **Both motion to compel (MC) and cross-MPO** |
|---|---|
| MPO - within 14 days from order authorizing briefing<br>Opposition – within 14 days of MPO<br>Reply– within 7 days of Opposition | MC - within 14 days from order authorizing briefing (plaintiffs may self-expedite)<br>Opposition/Cross-MPO - within 14 days of MC<br>Opposition to MPO / Reply for MC - within 14 days of Opposition to MC<br>Reply – within 7 days of Opposition to MPO |

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

By: /s/ *Micah G. Block*

Greg D. Andres
Antonio J. Perez-Marques
Luca Marzorati
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
antonio.perez@davispolk.com
luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs WhatsApp LLC and Meta Platforms, Inc.*

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**

By: /s/ *Juan O. Perla*

Juan O. Perla
Turner Smith
(admitted *pro hac vice*)
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Telephone: (212)-696-6084
Email: jperla@curtis.com
tsmith@curtis.com

Jerrold L. Bregman (SBN 149896)
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818)-827-9101
Facsimile: (818)-827-9099
Email: jbregman@bg.law

*Attorneys for Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd.*