United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WHATSAPP INC., et al.,
Plaintiffs,
v.
NSO GROUP TECHNOLOGIES LIMITED, et al.,
Defendants.

Case No. 19-cv-07123-PJH

**ORDER DENYING MOTION FOR CONTEMPT**

Re: Dkt. 854, 879, 880

Plaintiffs' motion for contempt came on for hearing on August 20, 2026. Plaintiffs appeared through their counsel, Micah Block, Luca Marzorati, Antonio Perez-Marques, and Greg Andres. Defendants appeared through their counsel, Kellen Dwyer. Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby rules as follows.

A. Legal standard

"Civil contempt ... consists of a party's disobedience to a specific and definite order by failure to take all reasonable steps within the party's power to comply." Epic Games, Inc. v. Apple Inc., 161 F.4th 1162, 1176 (9th Cir. 2025) (citing In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993)).

In a civil contempt action, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." FTC v. Enforma Natural Products, 362 F.3d 1204, 1211 (9th Cir. 2004) (citing FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir.1999); Stone v. City and County of San Francisco, 968 F.2d 850, 856 n. 9 (9th Cir.1992)).

The contempt "need not be willful," however, a person should not be held in contempt if his action "appears to be based on a good faith and reasonable interpretation of the court's order." Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006) (citing In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir.1987); but see also Dual-Deck Video Cassette Recorder, 10 F.3d at 695 ("there is no good faith exception to the requirement of obedience to a court order.").

"In contempt proceedings[,] ... a decree will not be expanded by implication or intendment beyond the meaning of its terms," but those terms must be "read in the light of the issues and the purpose for which the suit was brought." Epic Games v. Apple, 161 F.4th at 1176 (citing Terminal R.R. Ass'n of St. Louis v. United States, 266 U.S. 17, 29 (1924)).

B. Analysis

After plaintiffs prevailed at trial on their CFAA, CDAFA, and breach of contract claims, plaintiffs sought a permanent injunction against defendants. For purposes of this motion, the relevant provisions of the injunction are those prohibiting or requiring the following conduct:

> Paragraph 3(a): Developing, using, selling, offering for sale, distributing, transferring, or licensing, whether directly or through a third party, intermediary, or proxy, any technology that interacts with or emulates any aspect of the WhatsApp Platform in any way, including as a method or approach used to install and deploy the technology (an "installation vector"), without first requesting and obtaining Plaintiffs' express written permission;
>
> Paragraph 3(d): Creating accounts, whether directly or through a third party, intermediary, or proxy, on the WhatsApp Platform, without first requesting and obtaining Plaintiffs' express written permission.
>
> Paragraph 4: The Prohibited Parties are required to delete and destroy any and all computer code or technologies that use, access, or depend on the WhatsApp Platform, including the WhatsApp Installation Server ("WIS"), to delete all data obtained or derived from use of or access to the WhatsApp Platform in the Prohibited Parties' possession, and to disable customer access to any and all computer code or technologies maintained by the Prohibited Parties that use, access, or depend on the WhatsApp Platform.

See Dkt. 809.

Plaintiffs now seek an order holding defendants in civil contempt for violating the above provisions of the permanent injunction. Plaintiffs' opening motion argued that defendants had violated the injunction in two ways: (1) creating and operating Whatsapp accounts, and (2) deploying one-click malicious URLs through the Whatsapp platform. See Dkt. 854 at 9-10. However, in their opposition brief, defendants drew a distinction between the alleged creation of new accounts and the alleged operation of pre-existing Whatsapp accounts, the latter of which was not barred by the injunction, defendants argued. See Dkt. 863 at 18-20. In their reply, Whatapp divides category (1) into two subcategories – one for 'creating' Whatsapp accounts and one for 'operating' Whatsapp accounts. See Dkt. 864 at 6-12.

Before reaching the merits of plaintiffs' arguments regarding contempt, the court must address and clarify the applicable legal standard, about which plaintiffs argue several different positions. The court will also discuss the proper procedure for resolving a contempt motion, including the parties' arguments on whether an evidentiary hearing is necessary.

When plaintiffs first filed their contempt motion, they did not discuss any need to hold an evidentiary hearing. Instead, plaintiffs submitted the declaration of Andrew Blaich, and only in their reply did plaintiffs offer that "Mr. Blaich is available to testify at any evidentiary hearing the court may wish to hold." See Dkt. 854-3; Dkt. 864 at 7.

In their reply, plaintiffs also expressly made the argument, for the first time, that a court may grant a contempt motion on the papers, without any evidentiary hearing at all. See Dkt. 864 at 7-8. Specifically, plaintiffs argued that the Ninth Circuit's decisions in Peterson v. Highland Music, Inc. and Hoffman ex rel. NLRB v. Beer Drivers & Salesmen's Loc. Union No. 888 held that a court may "treat as true the facts set forth in uncontroverted affidavits," and may, in turn, grant contempt motions on the basis of those facts. See Peterson, 140 F.3d 1313, 1324 (9th Cir. 1998); Hoffman, 536 F.2d 1268, 1277 (9th Cir. 1977).

United States District Court
Northern District of California

In arguing that no hearing was necessary, plaintiffs also argued that their evidence (i.e., the Blaich declaration) fully satisfied the "clear and convincing evidence" standard that is applicable to a contempt motion.

Plaintiffs maintained their position at the motion hearing, arguing that the Peterson case "stands for the very clear proposition at the Ninth Circuit that you do not need an evidentiary hearing." See Dkt. 878 at 44.

Later in the motion hearing, plaintiffs explained that, if the court was not convinced that they had already satisfied the "clear and convincing evidence" standard, that the "correct next step is an order to show cause" issued to defendants, directing them to present evidence to rebut plaintiffs' evidentiary showing. See Dkt. 878 at 42.

In contrast, defendants argued that there was no need to issue an order to show cause or hold an evidentiary hearing, because plaintiffs' evidence was not sufficient to meet the "clear and convincing evidence" standard. See Dkt. 878 at 20-22. Defendants argued that plaintiffs were misstating the relevant standard by claiming that the Blaich declaration was enough to shift the evidentiary burden from plaintiffs to defendants. Defendants argued that the proper application of the standard was to first require plaintiffs' evidence to meet the "clear and convincing evidence" standard, and only if that occurred, then the burden would shift to the defendants to rebut the plaintiffs' showing. See id.

At the end of the hearing, the court noted that the parties' briefing did not discuss these procedural issues, and thus directed the parties to file supplemental briefs with their competing procedural proposals to resolve the contempt motion. See Dkt. 878 at 53.

Plaintiffs' supplemental brief again argued that "the court should find NSO in contempt on the papers." See Dkt. 879 at 2. Plaintiffs argued that their evidence already satisfied the "clear and convincing evidence" standard, and that Peterson and Hoffman were clear in holding that an evidentiary hearing was not required in order to issue a contempt order. See id. at 2-3. Plaintiffs argued only "in the alternative" that the court

could issue an order to show cause and require defendants to come forth with evidence to rebut plaintiffs' showing. Importantly, plaintiffs also articulated a new standard for determining whether to issue an order to show cause – plaintiffs argued that "the court need only find that there has been a 'sufficient preliminary showing' of contempt to require the alleged contemnor to come forward with evidence." See id. at 3.

Plaintiffs' supplemental brief contained the first mention of this new "sufficient preliminary showing" standard. For support, plaintiffs cited to Epic Games, Inc. v. Apple Inc., No. 20-cv-5640, Dkt. 925 (N.D. Cal. Apr. 23, 2024). However, in that order, the court did not purport to set out a new legal standard; in fact, the Epic court specifically noted that "[t]o succeed on such a motion, Epic Games must show, by clear and convincing evidence, that (1) Apple violated the injunction, (2) its violation was 'beyond substantial compliance,' and (3) its conduct was 'not based on any good faith and reasonable interpretation of the injunction.'" Id. (emphasis added). When the Epic court ultimately concluded that "Epic Games has made a sufficient preliminary showing that, viewed holistically, Apple's practice changes undermine the spirit of the injunction by limiting competition, impeding the free flow of information, and constraining user choice," it was implicitly applying the "clear and convincing evidence" standard and determining that the plaintiff had indeed made a sufficient preliminary showing under that "clear and convincing evidence" standard.

Plaintiffs also cite three other cases from this district. See Hernandez v. City of Monterey, No. 13-cv-2354, Dkt. 900 (N.D. Cal. Aug. 2, 2024); Vasquez v. Libre, 2023 WL 360242 (N.D. Cal. Jan. 23, 2023); Facebook v. Power Ventures, 2017 WL 3394754 (N.D. Cal. Aug. 8, 2017). While plaintiffs are correct that those cases involved proceedings where the court held some type of evidentiary hearing and/or directed the alleged contemnors to certify compliance, all of them also involved only the 'clear and convincing' evidentiary standard, rather than any sort of lower 'preliminary' standard. In each of those cases, the court applied the 'clear and convincing' standard and found that it was met, and ordered further proceedings/submissions only after finding that the standard

was met. That is consistent with the 'burden-shifting' framework identified back in plaintiffs' opening motion – the initial burden is indeed the 'clear and convincing' burden, and only if plaintiffs meet that standard does the burden shift to the contemnors to show compliance. See Dkt. 854 at 9; see also Dkt. 880 at 3 (citing FTC v. Affordable Media).

Defendants' supplemental brief makes the same argument that they made in their opposition brief – that plaintiffs have misstated the burden-shifting framework, and that plaintiffs must first meet the "clear and convincing evidence" standard before the burden shifts to defendants to rebut the evidentiary showing. See Dkt. 880 at 3-4.

Having reviewed all of the authority cited by the parties, the court concludes that defendants are correct that plaintiffs' evidence must meet the "clear and convincing evidence" standard before the burden shifts to defendants to rebut the evidentiary showing. The court has found no lower, preliminary standard that applies to the decision to issue an order to show cause. Thus, the first proper inquiry for the court is to determine whether the evidence submitted in support of plaintiffs' contempt motion is sufficient to constitute "clear and convincing evidence" of contempt. If it does, the court can then determine whether it is preferable to issue an order to show cause, or to simply grant the contempt motion on the same basis as in Peterson and Hoffman.

As mentioned above, plaintiffs' evidentiary showing consists entirely of the declaration of Andrew Blaich, a security engineer investigator on the 'threat intelligence' team at Meta. See Dkt. 854-3. And as also mentioned above, plaintiffs set forth three categories[1] of defendants' conduct that they allege violate the injunction: (1) creating Whatsapp accounts, (2) operating Whatsapp accounts, and (3) deploying one-click malicious URLs through the Whatsapp platform. See Dkt. 864 at 6-12.

1. Creating Whatsapp accounts

Plaintiffs argue that defendants violated paragraph 3(d) of the injunction by

[1] At the motion hearing, plaintiffs attempted to add a fourth alleged category of injunction-violating conduct, but the court rejected that attempt, because the defendants had no opportunity to meaningfully respond to a newly-raised argument. See Dkt. 878 at 14.

creating new Whatsapp accounts. Plaintiffs rely on the testimony of Blaich, who submitted a declaration attesting that NSO created at least 23 new accounts after the injunction took effect. See Dkt. 854-3, ¶ 7.

Specifically, Blaich states that 23 new Whatsapp accounts were created, bearing "technical and behavioral signatures that Meta has previously associated with NSO testing, including account registration patterns, device and other related information, and connections to known NSO-controlled infrastructure." Blaich decl. (Dkt. 854-3), ¶ 7, 9.

Defendants respond by arguing that plaintiffs have not provided the account names, phone numbers, or any other identifying information for the 23 accounts in question. See Dkt. 863 at 16-18. Defendants argue that, without such identifying information, plaintiffs' evidence cannot meet the "clear and convincing evidence" standard.

At the motion hearing, plaintiffs acknowledged that they were "very concerned about disclosing to NSO the precise tools" used to "track their activity," and that it "would be problematic" to "force us [i.e., plaintiffs] to give up the specific markers by which we were able to identify these particular accounts." See Dkt. 878 at 10-11. Instead, plaintiffs described their approach as follows: "what we've done here is say, 'Here is an affidavit. If you can controvert it, please go ahead.'" Id. at 11.

In the court's view, plaintiffs took a calculated risk in choosing to limit the level of detail in their supporting evidence. The upside was described in the previous paragraph – plaintiffs were able to limit the information about their tracking activity that was made available to defendants. However, the downside is that the lack of specificity in the Blaich declaration prevents the court from being able to conclude that they have met the "clear and convincing evidence" standard. The court agrees with the argument, made by defendants, that plaintiffs are asking the court to "simply accept Mr. Blaich's assurance that he has looked at Whatsapp's undisclosed internal evidence and concluded, 'with high confidence,' that NSO created new Whatsapp accounts." See Dkt. 863 at 18.

Similarly, the Blaich declaration asserts that the 23 new accounts "share technical

and behavioral signatures that Meta has previously associated with NSO testing," but provides little detail about what those "technical and behavioral signatures" actually are, stating only in general terms that they include "account registration patterns, device and other related information, and connections to known NSO-controlled infrastructure." See Blaich decl. (Dkt. 854-3), ¶ 7, 9.

Overall, the court concludes that plaintiffs' evidence that defendants have created new Whatsapp accounts, in violation of the permanent injunction, fails to meet the applicable "clear and convincing evidence" standard. Accordingly, the court will not enter an order to show cause. The court also concludes that the failure to meet the applicable legal standard distinguishes this case from Peterson and Hoffman. Thus, plaintiffs' motion for contempt on the basis that defendants have created new Whastapp accounts is DENIED.

2. Operating Whatsapp accounts

As discussed above, plaintiffs' opening contempt motion grouped "creating" and "operating" Whatsapp accounts into a single category of conduct. See Dkt. 854 at 9-10. However, defendants' opposition brief argued that the injunction "does not bar NSO employees from using pre-existing Whatsapp accounts," and plaintiffs' reply separated their arguments about "creating" new accounts from their arguments about "operating" pre-existing accounts. Thus, the threshold question for the court is whether the language of the injunction actually does prohibit defendants from using pre-existing Whatsapp accounts.

While plaintiffs initially relied on paragraph 3(d) of the injunction, which barred "[c]reating accounts, whether directly or through a third party, intermediary, or proxy, on the WhatsApp Platform," plaintiffs now argue that the operation of already-existing Whatsapp accounts violates paragraph 3(a) of the injunction, which prohibits "using . . . any technology that interacts with or emulates any aspect of the WhatsApp Platform in any way." Plaintiffs also argue that, to the extent that the Whatsapp app itself cannot constitute "technology that interacts with" Whatsapp, that the cellphones used to interact

United States District Court
Northern District of California

with Whatsapp are themselves the applicable "technology." Dkt. 864 at 11.

Defendants argue that the injunction's language could have barred them from using Whatsapp "for any purpose" if plaintiffs had so chosen, and argue that any ambiguities should be resolved against the party who drafted the language. See Dkt. 863 at 20.

Though a close call, the court agrees that the language of the injunction is ambiguous at best in prohibiting all uses of pre-existing Whatsapp accounts, and that the ambiguity should be resolved against plaintiffs, who, at the court's request, due to the complexity of and the secrecy surrounding the technology, drafted the injunction's language. Plaintiffs' interpretation of paragraph 3(a) to cover any and all uses of pre-existing accounts is a tortured one, and not what the court had in mind by issuing an order that prohibited using "any technology that interacts with or emulates any aspect of the WhatsApp Platform in any way." Accordingly, plaintiffs' motion for contempt is DENIED to the extent that it is premised on defendants' alleged use of pre-existing Whatsapp accounts.

3. Deploying one-click malicious URLs through the Whatsapp platform

Plaintiffs claim that defendants violated paragraph 3(a) of the injunction by "using . . . developing . . . distributing, transferring, or licensing . . . technology that interacts with or emulates any aspect of the Whatsapp platform," and paragraph 4 of the injunction by failing to "disable customer access to any and all computer code or technologies" that depend on the Whatsapp platform.

As before, plaintiffs rely on the Blaich declaration, which states that, in February and April 2026, a NSO-affiliated Whatsapp account sent malicious URLs to targets over Whatsapp. Blaich decl., ¶¶ 16-17. Blaich states that the attribution to NSO was based on five factors: (1) URL infrastructure (i.e., the format of the URLs), (2) URL redirect behavior, (3) lure design (i.e., the message templates were similar to those used by NSO in the past), (4) targeting profile (i.e., the locations of the targets match areas in which Pegasus has been used), and (5) continuity with prior NSO conduct. Blaich decl., ¶ 18.

Defendants make two arguments in response: (1) plaintiffs' evidence does not meet the "clear and convincing evidence" standard, and (2) the injunction does not prohibit sovereign governments from using Whatsapp to send URLs to targets of their operations. See Dkt. 863 at 22-28.

The court will start with the second argument, because it presents a threshold question. Defendants seek a blanket ruling that an "independent decision by an NSO customer to text a malicious URL to a target via Whatsapp" does not violate the injunction, without any further information needed. See Dkt. 880 at 8-9. But the court cannot go that far. Simply put, there are not enough details before the court about the division of labor between defendants and their sovereign customers. In other words, when one of those customers chooses to "text a malicious URL to a target," to what extent are defendants involved in the technical operations that occur after the URL is clicked? To what extent do defendants operate and maintain the software that is downloaded onto the target's device? The answers to these questions are relevant to whether the challenged conduct is indeed solely an act of the customers (and thus outside the injunction's scope), or whether defendants participate in the conduct, which would bring the conduct within the scope of behavior prohibited by the injunction.

That leaves the question of whether plaintiffs' evidence is sufficient to constitute "clear and convincing evidence" that defendants were indeed involved in the deploying of malicious URLs through the Whatsapp platform. As mentioned above, plaintiffs rely on the Blaich declaration to tie defendants to the deployments, and he stated that the attribution to NSO was based on the five factors set forth above. Blaich decl., ¶ 18.

Overall, as with the evidence regarding the creation of new Whatsapp accounts, the court concludes that the details provided in the Blaich declaration are simply not enough to meet the demanding "clear and convincing evidence" standard. As before, it appears that plaintiffs' approach was to err on the side of under-disclosing details at first, hoping that the court would allow them a second bite at the apple by supplementing their evidence later, including through the order to show cause procedure. But as discussed

United States District Court
Northern District of California

above, the Ninth Circuit has not provided for a procedure where a plaintiff may make a 'placeholder' evidentiary showing at first, and then supplement it later if the evidence falls short of the "clear and convincing" standard. Instead, the plaintiff's initial showing must meet the "clear and convincing evidence" standard. For that reason, plaintiffs' motion for contempt must be DENIED to the extent it is based on the alleged deployment of malicious URLs through the Whatsapp platform.

C. Conclusion

For the foregoing reasons, plaintiffs' motion for contempt (Dkt. 854) is DENIED.

**IT IS SO ORDERED.**

Dated: October 16, 2026

/s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge