Juan O. Perla (appearance pro hac vice)
Turner Smith (appearance pro hac vice)
David V. Holmes (appearance pro hac vice)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 696-6084
jperla@curtis.com
tsmith@curtis.com
dholmes@curtis.com

Jerrold L. Bregman (SBN 149896)
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Tel: (818) 827-9101
Fax: (818) 827-9099
jbregman@bg.law

*Attorneys for Defendants*
*NSO Group Technologies Limited*
*and Q Cyber Technologies Limited*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**DEFENDANTS' MOTION FOR ENTRY OF PROTECTIVE ORDER**<br><br>Judge: Hon. Phyllis J. Hamilton<br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iii

NOTICE OF MOTION .......... 1

PRELIMINARY STATEMENT AND RELIEF SOUGHT .......... 1

STATEMENT OF RELEVANT FACTS .......... 2

A. Plaintiffs' Expansive Post-Judgment Discovery Requests Into Worldwide Assets of Non-Debtors and Defendants' Efforts to Reach a Negotiated Resolution of those Requests .......... 2

B. Plaintiffs' Sudden Refusal to Narrow their Requests and Further Attempts to Expand Post-Judgment Discovery Beyond the Scope of Rule 69 Through Corporate Depositions .......... 4

C. Plaintiffs Issue a Subpoena to a Non-Debtor Before the Court Has Resolved the Pending Discovery Issues .......... 8

LEGAL STANDARD .......... 9

POINTS AND AUTHORITIES .......... 10

I. Plaintiffs' Requests Must Be Reasonably Limited under Federal Rules 69 and 26 .......... 11

A. Discovery of Assets and Financial Affairs of Non-debtors Is Improper Absent a Heightened Showing of Relevance .......... 11

B. The Requests Lack Any Reasonable Geographic Scope .......... 14

C. The Requests Lack a Reasonable Threshold Amount .......... 16

D. The Relevant Time Period Extends Too Far Back .......... 16

II. Any Deposition Must Be Similarly Limited Whether Under Rule 30(b)(6) or 30(b)(1) .......... 17

A. Plaintiffs May Not Reach a Foreign Deponent's Knowledge of Their Personal Affairs or the Affairs of Other Non-Parties Without Serving Them Under the Hague Convention .......... 17

B. Plaintiffs May Not Inquire Into Injunction-Related Topics under Rule 69 or Based on a Failed Contempt Motion .......... 19

CONCLUSION ........................................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Beautyko LLC v. Amazon Fulfillment Servs.*, Case No. C16-355 RSM, 2018 U.S. Dist. LEXIS 64746 (W.D. Wash. Apr. 16, 2018) .......... 12, 13

*Blasket Renewable Invs., LLC v. Spain*, Civil Action No. 20-817 (JDB), 2026 U.S. Dist. LEXIS 137920 (D.D.C. June 22, 2026) ...... 10

*Crews v. Sun Sols. AZ LLC*, No. CV-23-01589-PHX-DWL, 2024 U.S. Dist. LEXIS 161328 (D. Ariz. Sep. 9, 2024) ........ 10

*Devas Multimedia Private Ltd. v. Antrix Corp.*, C18-1360 TSZ, 2021 U.S. Dist. LEXIS 154109 (W. D. Wash. Aug. 16, 2021) ...................... 16

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288 (E.D. Va. 2012) .......... 10

*EM Ltd. v. Argentina*, 695 F.3d 201 (2d Cir. 2012) .......... 15

*GMA Acc. v. Elec. Wonderland, Inc.*, 07 Civ. 3219 (PKC) (DF), 2012 U.S. Dist. LEXIS 72897 (S.D.N.Y. May 22, 2012) ............. 12

*Gubarev v. BuzzFeed, Inc.*, No. 17-cv-60426, 2017 U.S. Dist. LEXIS 216713 (S.D. Fla. Aug. 15, 2017) .......................... 18

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-md-2885, 2020 U.S. Dist. LEXIS 173730 (N.D. Fla. Feb. 18, 2020) ....................... 17

*In re Baycol Prods. Litig.*, 348 F. Supp. 2d 1058 (D. Minn. 2004) .......... 18

*In re Uber Techs., Inc.*, Case No. 23-md-03084, 2024 U.S. Dist. LEXIS 123530 (N.D. Cal. July 14, 2024) .......... 10, 14

*InfusAID LLC v. InfuSystem Inc.*, Case No. 17-2243-CM, 2018 U.S. Dist. LEXIS 17051 (D. Kan. Feb. 2, 2018) ......................... 5

*Insulet Corp. v. Eoflow Co., Ltd.*, Civil Action No. 23-11780-FDS, 2025 U.S. Dist. LEXIS 87095 (D. Mass. May 6, 2025) .......... 20

*Laker Airways, Ltd. v. Pan Am. World Airways*, 103 F.R.D. 42 (D.C. Cir. 1984) .......... 10

*McCarthy v. Johnson*,
Case No. 21-mc-4 (GMH), 2022 U.S. Dist. LEXIS 139094 (S.D.N.Y. Aug. 2, 2022) ............ 17

*Montgomery v. eTreppid Techs., LLC*,
3:06-CV-0056-PMP (VPC), 2009 LX 91811 (D. Nev. Feb. 25, 2009) ................................ 5, 10

*Nichols v. Credit Union 1*,
Case No. 2:17-cv-02337-APG-GWF, 2019 U.S. Dist. LEXIS 241626 (. Nev. July 26, 2019) 10

*NML Capital, Ltd. v. Republic of Argentina*,
No. C 12-80185 JSW (MEJ), 2013 U.S. Dist. LEXIS 24010
(N.D. Cal. Feb. 21, 2013) ........................................................................................ 12

*Reebok Int'l v. McLaughlin*,
49 F.3d 1387 (9th Cir. 1995) .................................................................................... 15

*Republic of Argentina v. NML Capital, Ltd.*,
573 U.S. 134 (2014) ............................................................................................ 10, 15

*Trendsettah U.S. v. Swisher Int'l*,
SA CV 14-01664-JVS (DFMx), 2021 U.S. Dist. LEXIS 239951
(C.D. Cal. Aug. 13, 2021) ........................................................................................ 12

*Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*,
254 F. Supp. 2d 469 (D. Del. 2003) ........................................................................... 17

*Uniden Corp. of Am. v. Duce Trading Co.*,
89-CV-0878E, 1993 U.S. Dist. LEXIS 10441 (W.D.N.Y. July 19, 1993) ............................... 12

**Statutes**

28 U.S.C. § 1963 ....................................................................................................... 15

**Rules**

Fed. R. Civ. P. 26 ..................................................................................................... 10

Fed. R. Civ. P. 26(b)(1) ........................................................................................ 11, 16

Fed. R. Civ. P. 26(c)(1) ................................................................................................. 9

Fed. R. Civ. P. 30(b)(1) .......................................................................................... 8, 18

Fed. R. Civ. P. 30(b)(6) .......................................................................................... 6, 18

Fed. R. Civ. P. 62(a) .................................................................................................. 16

Fed. R. Civ. P. 69 ................................................................................................. passim

**Treaties**

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 (entered into force Oct. 7, 1972)........ 1, 20

**Other Authorities**

Foreign Judgments Enforcement Law (Isr. 1958) ........ 15

Protection of Privacy Law 5741 (Isr. 1981)........ 5

## NOTICE OF MOTION

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendants NSO Group Technologies Limited ("NSO") and Q Cyber Technologies Limited ("Q Cyber" and, collectively with NSO, "Defendants") hereby move for entry of a protective order (the "Motion") in the form filed concurrently herewith (the "Proposed Protective Order"). The Motion is based on the below Points and Authorities; the Declaration of Juan O. Perla and exhibits; and the records on file in this case.

## PRELIMINARY STATEMENT AND RELIEF SOUGHT

Plaintiffs seek to engage in an unjustified and disproportional examination of the worldwide assets and financial affairs of countless non-debtors going back years before any judgment was entered, without even attempting to satisfy the requisite heightened showing of relevance that this information is likely to lead to executable assets of Defendants, the only judgment debtors in this case, as required under Federal Rules 69 and 26. Even the requests for information regarding Defendants' assets lack any appropriate geographic, amount or time period limitations, reaching further than is reasonably, relevant and proportional for the needs of the case.

Despite Defendants' good faith efforts to provide more documents and information than is warranted to meet the needs of the case, Plaintiffs continue to press ahead with more post-judgment discovery demands including two deposition notices directed to Defendants, seeking to cover topics that suffer from the same over-breadth, irrelevance and disproportionality. The same limitations should apply to those depositions. Furthermore, Plaintiffs have issued and served the notices only on Defendants, naming a specific corporate witness that resides abroad and is not a party in this action. Accordingly, any deposition of a foreign corporate witness may not properly reach knowledge of personal affairs or the affairs of other non-parties without first complying with the compulsory procedures under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 (entered into force Oct. 7, 1972).

Given Plaintiffs' insistence on enforcing their overly broad, disproportional requests as written, Defendants need this Court to set the proper boundaries of post-judgment discovery. Accordingly, Defendants ask the Court to enter the Proposed Protective Order.

## STATEMENT OF RELEVANT FACTS

On November 12, 2025, this Court entered judgment for Plaintiffs in the amount of $4,447,190, Dkt. No. 810, as well as a permanent injunction, Dkt No. 809. On January 30, 2026, the Court awarded Plaintiffs $15,914,095 in attorneys' fees. Dkt. No. 835. Defendants timely appealed the judgment, the injunction and award of attorneys' fees to the U.S. Court of Appeals for the Ninth Circuit. Those appeals have been fully briefed and are currently being considered for oral arguments as early as February 2027. Plaintiffs have not requested leave for good cause to register and enforce any judgment outside the Northern District of California, as would be required under 28 U.S.C. § 1963 pending appeal.

### A. Plaintiffs' Expansive Post-Judgment Discovery Requests Into Worldwide Assets of Non-Debtors and Defendants' Efforts to Reach a Negotiated Resolution of those Requests

On March 4, 2026, Plaintiffs served their First Set of Requests for Production of Documents in Aid of Judgment (the "RFPs," Dkt. No. 870-1) and Plaintiffs' First Set of Interrogatories in Aid of Judgment (the "Interrogatories," Dkt. No. 870-2, collectively with the RFPs, the "Requests"). The Requests sought expansive discovery far beyond any executable assets of the judgment debtors, sweeping back three years before entry of judgment and reaching deep into the worldwide assets and finances (above $5,000) of countless entities and individuals—from ultimate beneficial owners down to the clerical staff—none of whom are judgment debtors.[1]

[1] *See, e.g.*, "You" and "Your," Dkt. Nos. 870-1—870-2 at 2 (defining "You," and "Your" to mean "NSO Group Technologies Limited and Q Cyber Technologies Limited, *as well as their affiliates, predecessors, parents, subsidiaries, divisions, officers, employees, agents, principals, beneficial owners, and attorneys, and each Person acting or purporting to act on their behalf or under their control*" (emphasis added)); "Affiliate," Dkt. No. 870-1 at 1 (defining "Affiliate" to mean "with respect to any person or entity, any other person that *directly or indirectly controls, is controlled by, or is under common control with such person or entity*" and defining "control" as "the power

After an agreed-upon 30-day extension, on May 4, 2026, Defendants timely served their responses and objections ("Responses") to the Requests. Dkt. Nos. 870-3—870-4. Defendants' Responses set forth general and specific objections, and subject to those objections, also provided substantive answers with respect to Defendants' assets in the United States as of December 12, 2025, the date any judgment first became enforceable.

Within days, at Plaintiffs' request, counsel for the parties met and conferred. From the start, Plaintiffs stated their desire to go directly to the Court with what they viewed as three "threshold issues": (i) geographic scope; (ii) temporal scope; and (iii) Interrogatory No. 10 and RFP No. 7. *See* Dkt. No. 870-8 at 1-2. Although Plaintiffs took the position that nothing less than what they asked for in the Requests would be sufficient without first bringing the supposed "threshold issues" to the Court, Defendants developed a proposal in an effort to avoid burdening the Court unnecessarily. And their efforts proved fruitful. Based on Defendants' proposal, Plaintiffs agreed that a response to Interrogatory No. 10 would eliminate the need to respond to RFP No. 7—resolving one of the "threshold issues." Specifically, Defendants agreed to identify any person(s) with authority to transfer funds or sign checks on behalf of, or contractually bind, Defendants, excluding anyone with authority to do those things in the ordinary course of business not exceeding $150,000 annually, starting as of May 6, 2025, *i.e.*, the date the jury returned its damages verdict. *See* Dkt. No. 870-6 at 6. Defendants promptly provided that information.

Defendants also proposed to supplement their responses to the Interrogatories and, to the extent applicable, the RFPs with respect to any jurisdictions outside of Israel and Luxembourg where assets owned by defendants—exceeding a total of $150,000—are located, as of May 6, 2025. This proposal should have resolved the threshold issues because it was undisputed that execution of a foreign judgment is not permitted in Israel or Luxembourg pending appeal. Plaintiffs initially rejected that proposal, without offering any alternatives, but after further

---

to direct or cause the direction of the management or policies of such person or entity, directly or indirectly, whether through the ownership of voting securities, by contract, or otherwise" (emphasis added)).

outreach by Defendants, Plaintiffs finally proposed a narrower set of requests focusing on four specific categories of production in line with what Defendants had originally suggested. On May 22, the parties conferred again. Dkt No. 853 at 1. In a spirit of cooperation and to avoid burdening the Court unnecessarily, Defendants agreed to provide the information for Plaintiffs' four specific categories. To implement that agreement, the parties entered into a stipulation on June 4 providing for the production of numerous documents and supplemental responses (Dkt. Nos. 870-5—870-6), while "negotiations continue as to the remaining scope of the Post-Judgment Discovery." Dkt. No. 853.

Pursuant to that stipulation, Defendants produced significant documents including (i) their audited financial statements for 2023 and 2024, (ii) an organizational chart showing the ownership chain of all subsidiaries and affiliates of Defendants, and (iii) information about financial accounts worldwide, in addition to certified disclosures about (a) outgoing transfers of assets above $100,000 since January 9, 2023, and (b) authorized signatories. Dkt. Nos. 853; 870-5—870-6. Defendants also agreed to produce their audited financial statements for 2025 once finalized on a reasonable schedule. Dkt. No. 853 ¶ 2. The June 4 Stipulation showed that the parties were capable of narrowing the Requests to achieve a reasonable compromise through the meet and confer process.

### B. Plaintiffs' Sudden Refusal to Narrow their Requests and Further Attempts to Expand Post-Judgment Discovery Beyond the Scope of Rule 69 Through Corporate Depositions

On June 5, Plaintiffs sent Defendants an "agenda" for a "meet and confer on the balance of Plaintiffs' March 4 requests." Dkt. No. 870-9. On June 8, Plaintiffs filed a motion for contempt for alleged violations of the injunction. Dkt. No. 854.

At a meet and confer on June 16, Plaintiffs expressed willingness to consider a written response to their agenda regarding asset discovery on the premise that the parties could reach agreement on eliminating or narrowing specific requests (as had been done with Interrogatory No. 10 and RFP No. 7, *see*, *e.g.*, Dkt. No. 870-8 at 1). Dkt. No. 870-10. Defendants sent a proposal

on June 23. The proposal included an offer to produce (i) Defendants' corporate formation documents and any shareholder agreements that are or were in effect as of January 9, 2023; (ii) documents sufficient to show any liens or other security interests on Defendants' assets; (iii) Defendants' corporate income tax returns for 2023 and 2024; (iv) documents sufficient to show payments, distributions and other compensation to officers and equity holders, such as members, starting as of May 6, 2025, on an anonymous basis in accordance with Israel's Protection of Privacy Law 5741 (1981); and (v) board minutes, or written offers or presentations to third parties, indicating a valuation of Defendants' total enterprise value or any of their assets above $150,000 starting as of May 6, 2025, to the extent any exist. Dkt. No. 870-7. In addition to protecting the identity of non-party officers and equity holders through redactions in accordance with the Israeli privacy law, Defendants' proposal maintained its objection that information about the assets and financial affairs of non-debtors, such as loan and credit agreements, was not relevant and was disproportional to the needs of the case given that Plaintiffs had not even attempted to make the requisite heightened showing of relevance for why they needed that information.

Defendants expected to negotiate that proposal during a videoconference on June 26, but Defendants were surprised to learn, however, that Plaintiffs were no longer willing to engage in any discussion about narrowing the scope of their Requests. Dkt. No. 870-10. Plaintiffs, in fact, rejected the *very idea of compromise*, insisting that Defendants make a series of concessions (steadily eroding their valid objections), while Plaintiffs refused to narrow their existing requests as would be expected of any requesting party in the meet-and-confer process. Dkt. No. 870 at n.3.[2]

---

[2] *See, e.g.*, *InfusAID LLC v. InfuSystem Inc.*, Case No. 17-2243-CM, 2018 U.S. Dist. LEXIS 17051, at *4-14 (D. Kan. Feb. 2, 2018) (ordering parties "to meaningfully confer to narrow the scope of these discovery requests" before documents were produced where "plaintiff did little more than demand full compliance"); *Montgomery v. eTreppid Techs., LLC*, 3:06-CV-0056-PMP (VPC), 2009 LX 91811, at *5-6, *9 (D. Nev. Feb. 25, 2009) (narrowing requested discovery at the "initial" stage of post-judgment proceedings without prejudice to plaintiffs' ability to "renew his request" later if warranted).

By June 29, the motion for contempt was fully briefed. Dkt. Nos. 863-64. The Court ordered that a hearing on the motion for contempt would take place on August 20. Dkt. No. 865.

On July 23, Plaintiffs served Defendants with a notice of deposition under Federal Rule 30(b)(6) (the "30(b)(6) Notice"). Dkt. No. 881-1. The notice included broad topics seeking information covered by Defendants' objections to Plaintiffs' Requests including further intrusive discovery into the assets and financial affairs of non-debtors, for instance, information regarding (i) receivables or other debts owed to entities in and outside of Defendants' corporate group and; (ii) transactions between other entities that would not necessarily include Defendants.[3] *Id.* The notice also included topics that fall outside the plain terms of Federal Rule 69, namely topics relating to the injunction and Plaintiffs' then pending contempt motion.

Meanwhile, Defendants continued their good faith efforts to engage with Plaintiffs, and the parties almost executed a second stipulation for a supplemental production based on Plaintiffs' own "agenda" on "the balance of Plaintiffs' March 4 requests," but those efforts were inexplicably scuttled when Plaintiffs forced the filing of a joint letter late on Friday, July 31—Shabbat in Israel—without giving Defendants an opportunity to respond to Plaintiffs' last-minute demands. Dkt. No. 870-13 at 2-4; *see also* Dkt. No. 870-12. In that letter, Defendants explained the need for a heightened showing of relevance before Plaintiffs can obtain information regarding non-parties and their assets. Dkt. No. 870 at 4. Plaintiffs argued that "[c]ourts only require a threshold showing of necessity and relevance when post-judgment discovery is sought from a non-party," not from Defendants. *Id.* at 2.

---

[3] *See, e.g.*, "You" and "Yours," Dkt. No. 881-1 at 2 (defining "You" and "Yours" to mean "NSO Group Technologies Limited and Q Cyber Technologies Limited, *as well as their predecessors, parents, subsidiaries, divisions, officers, employees, agents, principals, beneficial owners, and attorneys, and each Person acting or purporting to act on their behalf or under their control*" (emphasis added)); "Defendants," Dkt. No. 881-1 at 2 (defining "Defendants" to mean "NSO Group Technologies Limited and Q Cyber Technologies Limited, *as well as their current and former directors, employees, subsidiaries, corporate parents, affiliates, agents, representatives, and all other persons acting or purporting to act on their behalf*" (emphasis added)).

Even so, in an effort to narrow the issues before the Court, Defendants voluntarily produced categories of documents identified in the unexecuted stipulation, including (i) their corporate formation documents and (ii) existing liens on their assets, in addition to certified disclosures about (i) shareholder agreements and (ii) board minutes or written offers to third parties indicating a valuation of Defendants' total enterprise value starting as of January 9, 2023. Defendants filed a supplemental letter advising the Court of that development. Dkt. No. 873.[4] After Defendants' production, Plaintiffs filed their own supplemental letter summarizing the remaining issues without making any efforts to narrow them. Dkt. No. 874.

While that joint letter was pending before the Court, the parties met and conferred on August 13 regarding the 30(b)(6) Notice. Defendants informed Plaintiffs of their objections to the topics, including the fact that any ruling on the issues raised in the July 31 letter would likely resolve most of the objections to the deposition topics. Defendants further objected to any injunction-related topics. Nevertheless, Defendants noted that a witness could be generally available for deposition after October 4 (after summer travel and Jewish holidays), subject to any forthcoming rulings by the Court regarding the scope of post-judgment discovery. Dkt. No. 881 at 4 n.3.

At the August 20 hearing, which was calendared to address Plaintiffs' pending contempt motion, the Court raised the issue of Rule 69 discovery and offered guidance on the three remaining document issues: (i) loan and credit agreements, (ii) distributions and payments to officers and equity holders, and (iii) valuation and identification of assets. Consistent with Defendants' request in the July 31 letter, the Court ordered "one last meet-and-confer on these three issues alone," and if the issues could not be resolved, a joint statement with the parties' positions on whether a motion

[4] Additionally, Defendants are ready to produce their corporate income tax returns from 2023 and 2024, which are in Hebrew, once Plaintiffs follow through with their commitment from months ago to submit a stipulated protective order governing generative AI use to translate and review confidential documents. Dkt. No. 873-1.

to compel or a motion for protective order would be better to address those issues. August 20, 2026 Hearing Transcript ("Tr."), Dkt. No. 878, 49:2-4; 51:3-13.

At that hearing, Plaintiffs suggested that Defendants "should be subject to discovery" to show compliance with the injunction. Tr. 42:20-21. However, despite the Court permitting additional briefing regarding "a path forward towards additional [contempt] proceedings" (Tr. 52:11-15), Plaintiffs did not request the Court's authorization to take any discovery in connection with their contempt motion. Dkt. No. 879. Plaintiffs instead requested an order to show cause requiring Defendants to detail why "[they] should not be held in contempt." *Id.* at 2.

Just three business days after the August 20 hearing, Plaintiffs served Defendants with a notice of deposition under Federal Rule 30(b)(1) naming Akiva Rosner, CEO of NSO, as the corporate witness (the "30(b)(1) Notice"). Dkt. No. 881-2.

Pursuant to the Court's directives at the August 20 hearing, Defendants attended the court-ordered meet and confer on September 3 with a good faith global proposal to resolve the three remaining issues. Perhaps unsurprisingly given Plaintiffs' expressed position going into the meet and confer, Dkt. No. 881-3 at 1-2, Plaintiffs rejected the very concept of a global resolution before even hearing the full proposal and further rejected each item independently. Plaintiffs offered no counterproposal. Instead, they reverted to their baseline position that nothing less than what they requested in their Requests as written would suffice and were laser focused on discussing the deposition notices—a topic outside the items identified by the Court for that meet and confer. Dkt. No. 881 at 4. On September 10, pursuant to the Court's directive, the parties submitted a joint status statement with their respective positions on the need for further briefing. Dkt. No. 881.

### C. Plaintiffs Issue a Subpoena to a Non-Debtor Before the Court Has Resolved the Pending Discovery Issues

On September 23, while the parties' joint statement was still pending before the Court, Plaintiffs issued a subpoena to non-party Hippocrene Ventures LLC, a Delaware entity. *See* Perla Decl., Exhibit B. The subpoena seeks, among other things, information about Hippocrene's assets and its relationship and business dealing with other non-debtor non-parties. Upon receiving

Plaintiffs' notice of the subpoena, Defendants informed Plaintiffs of their objections to the subpoena and requested a meet and confer to discuss a path forward. On October 8, the parties met and conferred but were unable to achieve any resolution regarding the subpoena at that time.

In an effort to avoid burdening the Court with issues regarding the subpoena, Defendants continued to engage with Plaintiffs to understand their reason for issuing the subpoena. In response to Defendants' inquiry, on October 23, Plaintiffs explained that, based on documents already produced by Defendants, they understand that Hippocrene acquired certain secured creditor rights in NSO-related entities and they believe a relationship may exist between Hippocrene and Defendants. Plaintiffs wish to understand any flows of money between Hippocrene and Defendants. While Defendants do not believe this is a sufficient heightened showing of relevance, in a spirit of cooperation on October 28, Defendants committed to produce documents sufficient to identify any notes issued to Hippocrene by or for the benefit of Defendants pursuant to which any proceeds flow from Hippocrene directly to or for the benefit of Defendants in response to RFP No. 6 in the March 4 Requests. Defendants made a production that same day.

Meanwhile, on October 16, the Court issued an order granting Defendants' request for further briefing on post-judgment discovery and setting a briefing schedule for "cross-motions" to "resolve pending discovery issues." Dkt. No. 885. The Court simultaneously denied Plaintiffs' motion for contempt. Dkt. No. 884. The Court also denied Plaintiffs' request for an order to show cause, disposing of all pending proceedings regarding the contempt motion. *Id.* Pursuant to the Court's briefing order, Defendants now submit this motion for a protective order.

## LEGAL STANDARD

The Court may issue a protective order under Rule 26(c) "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Court may do so by, among other things, (1) "forbidding the disclosure or discovery"; (2) "specifying terms . . . for the disclosure or discovery"; and (3) "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A)-(D). The Court may enter a protective order with respect to all forms of discovery,

including depositions, interrogatories, requests for documents, and subpoenas. *See, e.g.*, *Laker Airways, Ltd. v. Pan Am. World Airways*, 103 F.R.D. 42, 46 (D.C. Cir. 1984) (observing that a party may challenge overly broad discovery requests through a motion for a protective order); *Nichols v. Credit Union 1*, Case No. 2:17-cv-02337-APG-GWF, 2019 U.S. Dist. LEXIS 241626 at *6 (D. Nev. July 26, 2019) (stating that an overly broad discovery request establishes good cause for a protective order); *see also In re Uber Techs., Inc.*, Case No. 23-md-03084-CRB (LJC), 2024 U.S. Dist. LEXIS 123530, at *28-30 (N.D. Cal. July 14, 2024) (granting defendant Uber's motion for a protective order from several subpoenas under Rule 26 on grounds that certain requests sought confidential information and were overly broad, unnecessary, and disproportionate to the needs of the case).

## <u>POINTS AND AUTHORITIES</u>

Discovery in aid of executing a money judgment under Federal Rule 69 has limitations based on Federal Rule 26 and "other sources of law," such as comity, that "bear on the propriety" of "the nature and scope" of discovery requests. *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 146 n.6 (2014) ("*NML Capital*"). "[I]nformation that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." *Id.* at 144-45 (citing Fed. R. Civ. P. 26). Courts thus properly require Rule 69 discovery to "be tailored to the specific purpose of enabling a judgment creditor to discover assets upon which it can seek to execute. . . ." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012); *see also Blasket Renewable Invs., LLC v. Spain*, Civil Action No. 20-817 (JDB), 2026 U.S. Dist. LEXIS 137920, at *4 (D.D.C. June 22, 2026) (Rule 69 discovery "must be capable of identifying attachable assets"); *Crews v. Sun Sols. AZ LLC*, No. CV-23-01589-PHX-DWL, 2024 U.S. Dist. LEXIS 161328, at *7-8 (D. Ariz. Sep. 9, 2024) (Rule 69 discovery may be "limit[ed] … on grounds of relevance ... and proportionality"); *Montgomery v. eTreppid Techs., LLC*, 3:06-CV-0056-PMP (VPC), 2009 LX 91811, at *5-6 (D. Nev. Feb. 25, 2009) ("The court has broad discretion to limit [Rule 69] discovery.").

Plaintiffs seek discovery far beyond what is permissible or even contemplated under Rule 69. The Requests target information outside any relevant or reasonable scope based on entities geography, amount, or time period. Despite Defendants' good faith efforts in producing more information than is necessary and accordingly narrowing the Requests based on "the needs of the case," Fed. R. Civ. P. 26(b)(1), Plaintiffs keep returning with endless demands for more information based on their overly broad, irrelevant and disproportional Requests as written. Moreover, Plaintiffs have been insistent on obtaining information of non-debtor, non-parties without even attempting to make the requisite heightened showing of relevance. Defendants thus need a protective order not only with regards to the three categories of documents that are in dispute, but globally across all of Plaintiffs' Requests.

The protective order should also encompass the depositions noticed by Plaintiffs, which seek equally overbroad and disproportionate information, including injunction-related topics that are now foreclosed by this Court's denial of Plaintiffs' contempt motion and that would in any case fall outside the plain terms of Rule 69 itself.

## I. Plaintiffs' Requests Must Be Reasonably Limited under Federal Rules 69 and 26

### A. Discovery of Assets and Financial Affairs of Non-debtors Is Improper Absent a Heightened Showing of Relevance

Despite Plaintiffs' contentions to the contrary, their Requests, and post-judgment discovery efforts generally, clearly show that Plaintiffs are seeking unwarranted and improper discovery into non-party assets. Defendants need a protective order that prevents Plaintiffs from engaging in a broad and unreasonable fishing expedition into the assets of non-debtor non-parties, as this amounts to undue burden and harassment of both Defendants and the non-parties.

Information regarding non-debtors' assets—such as information about payments or distributions to officers or equity holders, or information regarding Defendants' debts and liabilities—is irrelevant to identifying executable assets of Defendants, the only judgment debtors, absent a heightened showing of "relevance – i.e., at least some demonstration of concealed or fraudulent transfers or alter ego." *Uniden Corp. of Am. v. Duce Trading Co.*, 89-CV-0878E, 1993

U.S. Dist. LEXIS 10441, at *2 (W.D.N.Y. July 19, 1993); *GMA Acc. v. Elec. Wonderland, Inc.*, 07 Civ. 3219 (PKC) (DF), 2012 U.S. Dist. LEXIS 72897, at *14-15, *22-25 (S.D.N.Y. May 22, 2012) (denying non-party discovery where plaintiff provided no reason to diverge from the "usual rule" that post-judgment discovery against a non-party is only permitted to search for the judgment debtor's hidden assets). Courts in the Ninth Circuit including the Northern District of California have adopted the same standard. *See, e.g., Trendsettah U.S. v. Swisher Int'l*, SA CV 14-01664-JVS (DFMx), 2021 U.S. Dist. LEXIS 239951, at *6-7 (C.D. Cal. Aug. 13, 2021) ("[I]nquiry into the assets and finances of the [non-party] is not permitted" absent a showing that "the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them."); *Beautyko LLC v. Amazon Fulfillment Servs.*, Case No. C16-355 RSM, 2018 U.S. Dist. LEXIS 64746, at *6-7 (W.D. Wash. Apr. 16, 2018) (permitting post-judgment discovery of non-party only upon a sufficient showing of commingling of assets); *NML Capital, Ltd. v. Republic of Argentina*, No. C 12-80185 JSW (MEJ), 2013 U.S. Dist. LEXIS 24010, at *4-6 (N.D. Cal. Feb. 21, 2013) ("*NML Capital II*") (denying discovery of non-party assets as irrelevant and unnecessary after concluding that plaintiff failed to make requisite showing of alter ego or fraudulent transfer).

As the district court in *NML Capital II* explained, "disclosure concerning the assets of a non-party is generally not contemplated by Rule 69(a), and such discovery should only be permitted when the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." 2013 U.S. Dist. LEXIS 24010, at *4-5 (internal quotations omitted). There, the plaintiff sought information regarding non-debtor Yacimientos Petroliferos Fiscales S.A. ("YPF") and argued that an alter ego relationship existed between YPF and the Republic of Argentina. The court held that "[plaintiff's] allegations regarding YPF's relationship to the Republic are insufficient as a matter of law to overcome the presumption that YPF is a separate juridical entity for purposes of asset discovery on an alter-ego theory." *Id.* at *5. Inversely, in *Beautyko*, the court granted post-judgment

discovery of information about nondebtors only after a heightened showing was made, including evidence suggesting commingling of funds. 2018 U.S. Dist. LEXIS 64746, at *6-7.

After multiple meet-and-confers and letters to the Court, Plaintiffs have yet to even attempt to make such a showing. Instead, they have erroneously argued that a heightened showing is not necessary when seeking discovery of non-party assets directly from Defendants as opposed to seeking information directly from the non-party. Dkt. No. 870 at 2. In fact, in the July 31 joint letter, Plaintiffs conceded that "[c]ourts only require a threshold showing of necessity and relevance when post-judgment discovery is sought from a non-party." *Id.* While Plaintiffs are correct that a heightened showing is necessary when seeking information from a non-party, that requirement is not limited to discovery from non-parties. In *Beautyko*, the court required the heightened showing even though that case concerned requests for "the Judgment Debtors to produce personal financial information of nondebtor[s]." 2018 U.S. Dist. LEXIS 64746, at *5; *see also NML Capital II*, 2013 U.S. Dist. LEXIS 24010, at *4-6 (denying information about non-parties upon *debtor's* motion). The key question is whether the information is about non-party assets, not who possesses that information or objects to its production.

Despite making no heightened showing, Plaintiffs have remained focused on obtaining non-party information, even going so far as refusing to accept documents with non-party information redacted in accordance with Israeli privacy protection laws.[5] Plaintiffs have insisted that they need the names of non-parties to identify targets for enforcement. That, of course, is *why* a heightened showing for discovery of non-party assets is critical. Defendants object to exposing their uninvolved counterparties and employees to harassing discovery demands into *their own assets and finances*, without the requisite showing by Plaintiffs. *See In re Uber*, 2024 U.S. Dist.

[5] The Israel Protection of Privacy Law 5741 (1981) prohibits the unauthorized disclosure of "personal data," such as a name, and "data of special sensitivity," including information about "a person's salary and financial activity." *See* Exhibit A appended to the Declaration of Juan O. Perla ("Perla Decl.") at Sec. 3 (defining personal data and data of special sensitivity, subsection 10-11); *see, also e.g.*, Ex. A at Sec. 1, 2(7)-(9).

LEXIS 123530, at *8-9, *12-13 (granting Defendant Uber's request for protective order to bar enforcement of overly broad and irrelevant requests directed towards its' third-party vendor).

This is not a hypothetical concern. While this Court was considering further briefing on these issues, Plaintiffs proceeded with exactly this type of non-party discovery by issuing a subpoena on Hippocrene, a non-debtor non-party. The subpoena calls for, among other things, information about (i) all of the non-party's transfers or loan transactions "of any kind" "during the relevant period[, dating back to January 1, 2025]" with various other non-parties, (ii) the non-party's communications with other non-parties including both specified individuals and "any Person" relating to Defendants or the judgment in this action, and (iii) the non-party's sources of funding. Ex. B at 5-10. By Plaintiffs' own admission, this post-judgment discovery request to Hippocrene is where "[c]ourts [have required] a threshold showing of necessity and relevance." Dkt. No. 870 at 2. And yet Plaintiffs have made no more showing of any basis under Rule 69 to pursue information about the affairs of those various other non-debtors than it has regarding the affairs of Hippocrene. It is precisely this type of overbroad, irrelevant and harassing non-party discovery—and its potential to expand indefinitely to encompass an increasing number of Defendant's business relationships—that must be carefully constrained under Rule 69.

It is important that this Court draw a line in the sand regarding the requirement to make the requisite showing of relevance to justify seeking information about the assets and financial affairs of non-parties before being permitted to obtain that information from Defendants or others. Otherwise, Plaintiffs will continue to utilize this post-judgment discovery process to unduly harass uninvolved nonparties and embarrass Defendants. Therefore, this Court should limit the Requests to assets of Defendants, not their liabilities or debts to non-parties or other information about non-parties (including information protected under Israel's Privacy Protection law), unless Plaintiffs have first made the requisite heightened showing to establish the need for that information.

**B. The Requests Lack Any Reasonable Geographic Scope**

Information regarding nonexecutable assets whether in or outside the United States is simply irrelevant and disproportional. The Supreme Court in *NML Capital* made clear that "[i]f,

. . ., [Plaintiffs' Requests] had sought only 'information that could not lead to executable assets in the United States or abroad,' then [Defendant] likely would be correct to say that the [Requests] were unenforceable . . . because information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." 573 U.S. at 144-145; *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 204 (2d Cir. 2012) (noting district court's finding that discovery into assets in Argentina would be "useless information" where "no Argentinian court" would permit execution). Plaintiffs have yet to request this Court's leave, let alone establish good cause, to register and enforce the judgment outside of the Northern District of California pending appeal. 28 U.S.C. § 1963. Nor could they. In a spirit of cooperation, Defendants voluntarily disclosed that it has no assets in the United States other than two registered trademarks.

Plaintiffs now push for irrelevant discovery into jurisdictions where they could not enforce this Court's judgment pending appeal. It is undisputed that, under the laws of Israel, where Defendants' substantial assets are located, a foreign judgment is not enforceable until it "is no longer appealable." Foreign Judgments Enforcement Law, Section 3.2 (Isr. 1958).[6] The laws of Luxembourg, where Defendants' ultimate parent is incorporated, are similar. *See Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1392 (9th Cir. 1995) (finding that "[u]nless recognized by the Luxembourg government, foreign judgments do not have any force in that country"). The appeals in this case are still pending. The judgment is therefore unenforceable in either Israel or Luxembourg and discovery into assets in those jurisdictions is irrelevant and disproportionate to the needs of the case. Fed. R. Civ. P. 26(1) ("Parties may obtain discovery… considering… whether the burden or expense of the proposed discovery outweighs its likely benefit"). Thus discovery should be limited to assets in the United States, or, at the very least, to assets outside of Israel or Luxembourg.

---

[6] *See also Enforcement of Judgments 2026: Israel*, Chambers and Partners, https://practiceguides.chambers.com/practice-guides/enforcement-of-judgments-2026/israel (last visited Oct. 30, 2026) (explaining that one of the conditions specified in the Enforcement of Foreign Judgments Law for enforcing a foreign judgment in Israel is that "the judgment is unappealable").

**C. The Requests Lack a Reasonable Threshold Amount**

None of Plaintiffs' Requests, except Interrogatory No. 8, provides a threshold amount. This is unreasonable. Given that this case involves a total judgment of more than $20 million, such expansive Requests, which could capture large amounts of irrelevant information, is disproportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1) (proportionality should be assessed in light of "the amount in controversy"). Even Plaintiffs' Interrogatory No. 8 sets an absurdly low threshold amount of $5,000 for transfers of assets. Dkt. No. 870-2 at 5. Plaintiffs already acknowledged that this threshold amount is far too low as they accepted a stipulated production of information identifying "all transfers of assets . . . above $100,000." *See* Dkt. No. 853 at 1. Plaintiffs also accepted the identification of authorized signatories for Interrogatory No. 10, excluding "anyone with authority to do those things in the ordinary course of business not exceeding $150,000 annually." *See* 870-6 at 6. Those higher threshold amounts are more reasonable. This Court should therefore grant a protective order limiting Plaintiffs' Requests to a threshold amount of $150,000, or at the very least, any amounts exceeding $100,000.

**D. The Relevant Time Period Extends Too Far Back**

In addition to the overly broad geographic, amount, and entity-based scope of the Requests, Plaintiffs also request discovery dating as far back as January 9, 2023, years before a judgment was ever issued in this case. Information before an award of damages becomes enforceable is irrelevant and disproportional. *See Devas Multimedia Private Ltd. v. Antrix Corp.*, C18-1360 TSZ, 2021 U.S. Dist. LEXIS 154109, at *21 (W. D. Wash. Aug. 16, 2021) (setting the "date of the [Arbitral] Award" as the start date for post-judgment discovery). Plaintiffs did not obtain a money judgment until November 12, 2025, and the judgment was not enforceable until after the automatic 30-day stay provided for under Federal Rule 62(a). Therefore, a more reasonable time period for post-judgment discovery should start December 12, 2025, or at the earliest on May 6, 2025, when the jury returned a damages verdict.

**II. Any Deposition Must Be Similarly Limited Whether Under Rule 30(b)(6) or 30(b)(1)**

Plaintiffs should not be permitted to inquire into deposition topics that are outside the scope of permissible Rule 69 discovery as set forth above. Any narrowing of the scope of the Requests should thus apply equally to the scope of any deposition.

Furthermore, given Plaintiffs demonstrated attempts to seek information about the assets and financial affairs of non-debtors from Defendants or non-parties, the Court should make clear that Plaintiffs are not permitted to reach a foreign deponent's knowledge of personal affairs or the corporate affairs of non-parties without first complying with the compulsory procedures for obtaining testimony from a non-party under the Hague Convention. And given the Court's denial of Plaintiffs' contempt motion, deposition topics related to the injunction should be prohibited.

**A. Plaintiffs May Not Reach a Foreign Deponent's Knowledge of Their Personal Affairs or the Affairs of Other Non-Parties Without Serving Them Under the Hague Convention**

Plaintiffs may only reach a foreign corporate witness' knowledge of Defendants' assets, not knowledge of personal affairs or the corporate affairs of other non-parties.

When discovery from a foreign non-party is requested, a party "must resort to the Hague Evidence Convention's discovery procedures (where available) if," as in this case, "the Court does not have personal jurisdiction over the nonparty." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, Case No. 3:19-md-2885, 2020 U.S. Dist. LEXIS 173730, at *7 n.6 (N.D. Fla. Feb. 18, 2020). As another district court put it, "'[w]hen discovery is sought from a non-party in a foreign jurisdiction, application of the Hague [Evidence] Convention . . . is *virtually compulsory*.'" *Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) (emphasis added); *see also McCarthy v. Johnson*, Case No. 21-mc-4 (GMH), 2022 U.S. Dist. LEXIS 139094, at *10 (S.D.N.Y. Aug. 2, 2022) (noting that "a chorus of federal courts have held that where, as here, a party seeks discovery from a nonparty foreign national residing in a foreign country over whom the court lacks jurisdiction, such discovery is governed by the Hague Convention."); *Gubarev v. BuzzFeed, Inc.*, Case No. 1:17-cv-60426, 2017 U.S. Dist. LEXIS 216713, at *4 (S.D.

Fla. Aug. 15, 2017) ("The court here has no personal jurisdiction over [the foreign, non-party individual from whom discovery was sought], and thus the Hague [Evidence] Convention is the only means by which to facilitate discovery."); *In re Baycol Prods. Litig.*, 348 F. Supp. 2d 1058, 1060 (D. Minn. 2004) ("It also appears that resort to the [Hague Evidence] Convention is the only means available to obtain the requested discovery from [the individual from whom discovery was sought], as he is a foreign person that is not a party to this case, and who is not otherwise subject to the jurisdiction of this Court.").

Here, both the 30(b)(6) Notice and the 30(b)(1) Notice were served only *on Defendants* as corporate parties to this action, not on any other entity or individual personally. Plaintiffs have requested Mr. Rosner, who resides in Isreal, as the corporate witness under Rule 30(b)(1), and Defendants intend to designate Mr. Rosner as the corporate witness under Rule 30(b)(6). Mr. Rosner is the CEO of NSO, but he is not individually a party to this action. Both the United States and Israel are parties to the Hague Convention, and therefore, the Hague Convention would apply to reach Mr. Rosner's testimony in his personal capacity.[7] Yet, Plaintiffs have chosen not to proceed in that manner. Accordingly, Mr. Rosner's non-corporate knowledge of his personal affairs or his personal knowledge of the affairs of other non-parties is off limits as a matter of law unless Plaintiffs comply with the Hague Convention. Requiring Mr. Rosner to testify in his personal capacity would allow Plaintiffs impermissibly to circumvent the Hague Convention.

Authorizing a deposition that bypasses the Hague Convention would undermine basic principles of comity. The Hague Convention was developed to ensure that global best practices for the taking of evidence were used across jurisdictions in accordance with the local laws and procedures of each jurisdiction. *See* 6 James Wm. Moore et al., Moore's Federal Practice § 28.11 [1] (3d ed. 2026) ("The Hague Evidence Convention represents the international legal

---

[7] *See Status Table Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=82 (last visited Oct. 30, 2026).

community's response to difficulties posed by differences among civil law and common law legal systems…by providing alternative means of obtaining evidence in member nations, the Hague Evidence Convention avoids potential intrusion on judicial sovereignty in nations with civil law systems"). If U.S. courts permit parties to end run these requirements by stretching the Federal Rules beyond their proper reach, courts in other jurisdictions may similarly disregard the Hague Convention when taking evidence from Americans in the United States.

Compliance with the Hague Convention is especially important in the post-judgment context. Unlike in the pre-trial context where procedures exist to exclude a corporate witness' testimony based on personal knowledge or prevent it from binding the corporation at trial, where the case is ultimately decided, in the post-judgment context, the primary objective of a deposition is not to bind the company but to obtain information about its assets. A foreign witness who is required to testify in their corporate role on behalf of a corporation is vulnerable to intrusive and harassing inquiries into their own financial affairs or those of other non-parties. Since that information cannot then be taken back once disclosed, such an expansive deposition could undermine the effectiveness of Defendants' entity-based objections. The least that could be required in this context is compliance with the procedural safeguard for foreign deponents under the Hague Convention whether the deposition is issued to Defendants under Rule 30(b)(6) or Rule 30(b)(1).

**B. Plaintiffs May Not Inquire Into Injunction-Related Topics under Rule 69 or Based on a Failed Contempt Motion**

Given this Court's October 16, 2026 Order denying Plaintiffs motion for contempt and request for a show-cause order, Plaintiffs are foreclosed from requesting any discovery relating to their failed contempt motion. *See* Dkt. No. 881-1 at 5 (Topics 17-20). The Court heard oral arguments on Plaintiffs' motion for contempt and even permitted post-hearing statements regarding any further contempt proceedings. Tr. 51:23-53:21. Plaintiffs failed to request any discovery and rested instead on their insufficient evidence. Plaintiffs should not be permitted to seek discovery now after having failed to do so. *See* Fed. R. Civ. P. 26(b)(2)(c)(iii) (the court

"must" limit the frequency and extent of discovery where it determines that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action").

Moreover, any injunction-related discovery under the guise of post-judgment discovery is improper as it goes far beyond the terms of Rule 69 itself. The text of Rule 69 makes clear that any discovery must be in "[i]n aid of the judgment or execution." Fed. R. Civ. P. 69(a)(2). The text also makes clear that the "judgment" that the rule refers to is a "money judgment." Fed. R. Civ. P. 69(a)(1). An injunction is not a money judgment. As a result, courts have permitted post-judgment discovery regarding an injunction under Rule 69 only where the requesting party shows a connection between the requested discovery and enforcement of a money judgment. *See, e.g.*, *Insulet Corp. v. Eoflow Co., Ltd.*, Civil Action No. 23-11780-FDS, 2025 U.S. Dist. LEXIS 87095, at *9 (D. Mass. May 6, 2025). That is not the case here.

Since this Court has denied Plaintiffs' motion for contempt, and Plaintiffs have not and cannot establish any connection between the injunction-related topics and enforcement of the money judgment, the protective order should prohibit any further attempts to misuse the post-judgment discovery process under Rule 69 to obtain unwarranted discovery regarding the injunction.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter the Proposed Protective Order.

Respectfully submitted,

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**

*/s/ Juan O. Perla*

Juan O. Perla
Turner Smith
David V. Holmes
(admitted *pro hac vice*)
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Telephone: (212)-696-6084
Email: jperla@curtis.com
tsmith@curtis.com
dholmes@curtis.com

Jerrold L. Bregman (SBN 149896)
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818)-827-9101
Facsimile: (818)-827-9099
Email: jbregman@bg.law

*Attorneys for Defendants NSO Group Technologies Ltd. And Q Cyber Technologies Ltd.*