Greg D. Andres
Antonio J. Perez-Marques
Luca Marzorati
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
antonio.perez@davispolk.com
luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL POST-JUDGMENT DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**DISCOVERY MATTER**<br><br>Date: December 17, 2026<br>Time: 1:30 p.m.<br>Ctrm: 3<br>Judge: Hon. Phyllis J. Hamilton<br><br>Action Filed: October 29, 2019 |

**[PUBLIC REDACTED VERSION]**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 17, 2026, at 1:30 p.m., or as soon after that as the matter may be heard, Plaintiffs WhatsApp LLC ("WhatsApp") and Meta Platforms, Inc. ("Meta," and together with WhatsApp, "Plaintiffs"), will move before the Honorable Phyllis J. Hamilton, in Courtroom 3 of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, for an order compelling Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") to produce documents, respond to interrogatories, and produce a witness for deposition.

The Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Luca Marzorati ("Marzorati Decl.") filed with it, the pleadings and papers in this action, the arguments of counsel, and any other matter that the Court may properly consider.

Dated: October 30, 2026

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: */s/ Micah G. Block*

Greg D. Andres
Antonio J. Perez-Marques
Luca Marzorati
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
antonio.perez@davispolk.com
luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........ 1
BACKGROUND ........ 2
A. The Judgment and NSO's Refusal to Pay ........ 2
B. Plaintiffs' Requests and NSO's Objections ........ 3
C. NSO's Partial Production and the Court's Guidance ........ 3
LEGAL STANDARD ........ 6
ARGUMENT ........ 7
I. NSO'S THRESHOLD OBJECTIONS DO NOT LIMIT RULE 69 DISCOVERY ........ 7
A. NSO's Pending Appeal Does Not Suspend Discovery ........ 7
B. Discovery Extends to NSO's Assets Abroad, Whether or Not They Can Be Executed Upon Here ........ 8
C. Discovery Reaches Back to January 2023 ........ 11
D. NSO's Own Financial Records Are Not "Nonparty" Discovery ........ 12
II. EACH DISPUTED CATEGORY GOES TO THE CORE OF RULE 69 ........ 12
A. Credit and Loan Agreements (RFP No. 1) ........ 13
B. Distributions and Compensation (RFP No. 4 and Interrogatory No. 9) ........ 15
C. Valuations (RFP No. 13 and Interrogatory Nos. 5–7) ........ 16
D. NSO May Not Condition Production on Plaintiffs' Waiver of Their Requests ........ 18
III. NSO MUST PROVIDE RULE 30(b)(6) TESTIMONY AND PRODUCE ITS CEO FOR DEPOSITION ........ 18
CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Al-Sadhan v. Twitter Inc.*, 2024 WL 3012491 (N.D. Cal. June 14, 2024) ........ 19

*Am. Zurich Ins. Co. v. ESG Republic, Inc.*, 2026 WL 242045 (E.D. Cal. Jan. 29, 2026) ........ 13

*Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16 (2d Cir. 2014) ........ 9

*Averbuch v. Otkritie Int'l Inv. Mgmt. Ltd.*, CivA 9474/16 (Isr. Feb. 18, 2018) ........ 8

*Beautyko LLC v. Amazon Fulfillment Servs.*, 2018 WL 1792183 (W.D. Wash. Apr. 16, 2018) ........ 12

*Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) ........ 7

*Blasket Renewable Investments, LLC v. Kingdom of Spain*, 2026 WL 1785188 (D.D.C. June 22, 2026) ........ 10

*Brae Asset Funding, L.P. v. Applied Fin., LLC*, 2006 WL 3497876 (N.D. Cal. Dec. 4, 2006) ........ 8, 18

*Caisson Corp. v. Cnty. W. Bldg. Corp.*, 62 F.R.D. 331 (E.D. Pa. 1974) ........ 15, 18

*Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428 (8th Cir. 1998) ........ 18

*Crews v. Sun Sols. AZ LLC*, 2024 WL 4120273 (D. Ariz. Sept. 9, 2024) ........ 10, 16

*CSPC Dophen Corp. v. Hu*, 2020 WL 4059521 (E.D. Cal. July 20, 2020) ........ 19

*Devas Multimedia Priv. Ltd. v. Antrix Corp.*, 2021 WL 3616787 (W.D. Wash. Aug. 16, 2021) ........ 10, 11

*Directv, Inc. v. Trone*, 209 F.R.D. 455 (C.D. Cal. 2002) ........ 7

*E.I. DuPont de Nemours & Co. v. Kolon Indus.*, 286 F.R.D. 288 (E.D. Va. 2012) ........ 10

*EM Ltd. v. Republic of Argentina*,

695 F.3d 201 (2d Cir. 2012), *aff'd*, 573 U.S. 134 (2014) .......... 9

*Erickson Prods., Inc. v. Kast*,
2025 WL 2577886 (N.D. Cal. Sept. 5, 2025) .......... 13

*JW Gaming Dev., LLC v. James*,
2021 WL 2322265 (N.D. Cal. June 7, 2021) .......... 10, 11, 13, 17

*King & Ballow v. Thompson*,
2018 WL 2350082 (M.D. Tenn. Jan. 11, 2018) .......... 17

*Nat'l Serv. Indus., Inc. v. Vafla Corp.*,
694 F.2d 246 (11th Cir. 1982) .......... 8

*Packaging Corp. of Am. v. Bonert's, Inc.*,
2019 WL 1123165 (C.D. Cal. Mar. 11, 2019) .......... 13, 14, 16

*Patriot Rail Corp. v. Sierra R.R. Co.*,
2016 WL 492702 (E.D. Cal. Feb. 8, 2016) .......... 11, 12, 15

*Reebok Int'l v. McLaughlin*,
49 F.3d 1387 (9th Cir. 1995) .......... 8

*Republic of Argentina v. NML Capital, Ltd.*,
573 U.S. 134 (2014) .......... 7, 9, 10

*Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
2011 WL 2607158 (N.D. Cal. July 1, 2011) .......... 19

*Ryan Inv. Corp. v. Pedregal De Cabo San Lucas*,
2009 WL 5114077 (N.D. Cal. Dec. 18, 2009) .......... *Passim*

*Solid Income Ltd. v. EnergyInvest LLC*,
2025 WL 2417181 (N.D. Cal. Aug. 21, 2025) .......... 13, 17

*Sys. Div., Inc. v. Teknek Elecs., Ltd.*,
2005 WL 8260387 (C.D. Cal. Apr. 11, 2005) .......... 18

*Textron Fin. Corp. v. Gallegos*,
2016 WL 4077505 (S.D. Cal. Aug. 1, 2016) .......... 15

*Tradewinds Ltd. v. Discovery*,
2024 WL 3086665 (C.D. Cal. May 17, 2024) .......... 13

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*,
2021 WL 5863937 (C.D. Cal. Aug. 13, 2021) .......... 12

*Uniden Corp. v. Duce Trading Co.*,
1993 WL 286102 (W.D.N.Y. July 19, 1993) .......... 12

*Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*,
2005 WL 8162980 (C.D. Cal. Mar. 14, 2005) .......... 15

## Statutes & Rules

28 U.S.C. § 1963 .......... 3, 7
Fed. R. Civ. P. 26 .......... 18, 19
Fed. R. Civ. P. 30(b)(1) .......... 19
Fed. R. Civ. P. 34(b)(2) .......... 18
Fed. R. Civ. P. 37 .......... 7
Fed. R. Civ. P. 69 .......... 6, 18

## Other Authorities

Foreign Judgments Enforcement Law, § 3.2 (Isr. 1958) .......... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs WhatsApp LLC ("WhatsApp") and Meta Platforms, Inc. ("Meta," and together with WhatsApp, "Plaintiffs") move to compel Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "NSO") to respond fully to Plaintiffs' First Set of Requests for Production of Documents in Aid of Judgment (the "RFPs") and First Set of Interrogatories in Aid of Judgment (the "Interrogatories"), and to produce a witness for deposition.

## PRELIMINARY STATEMENT

NSO owes Plaintiffs more than $20 million. It has paid nothing, posted no bond, and sought no stay. Nearly eight months after Plaintiffs served basic post-judgment discovery, NSO still has not said what it owns, whom it owes, or where its money has gone. This motion asks for two things that would answer those questions: the remaining documents in the three narrow categories the Court itself identified at the August 20 hearing—loan and credit agreements, payments and distributions to insiders, and valuation and identification of assets—and related deposition testimony.

Plaintiffs served their RFPs and Interrogatories on March 4, 2026. Plaintiffs met and conferred with NSO on May 8, May 22, June 16, and June 26, presented the disputes by joint letter, and returned to the table for the final conference the Court ordered, held on September 3. In the nearly eight months since Plaintiffs served their requests, NSO has produced only approximately 181 pages and refuses to produce its loan and credit agreements. It has said that it will produce more responsive documents, but only if Plaintiffs first agree that the production "satisf[ies]" or "eliminate[s]" their requests. On September 3, NSO offered summaries, redacted counterparty identities, and anonymized payment data—all conditioned on a global resolution of both the RFPs and Interrogatories, and none of which would show whom NSO owes, who owes NSO, or whom NSO has paid. Plaintiffs declined those deficient substitutes. NSO will not schedule any deposition until the document disputes are resolved, and it insists that its CEO and presumptive corporate representative, Akiva Rosner—the one person NSO says controls every significant transfer of its funds— may be deposed only through the Hague Convention. Each position has the same effect: it further delays Plaintiffs' ability to identify NSO's assets and collect on the judgment.

What remains in dispute is narrow: the three categories the Court identified, each corresponding to a specific gap in NSO's own production. NSO's 2024 financial statements report $219.5 million in total assets, $161.5 million of them receivables owed mostly by other group companies. But NSO has not identified those obligors, the agreements underlying the charges registered against its assets, or the payments it has made to insiders. NSO's offered substitutes are insufficient: summaries cannot replace the agreements themselves, and anonymized payments cannot replace the identities of the payees, because neither would show where NSO's value actually is. Testimony is the ordinary next step; a corporate designee's testimony is how a creditor tests a corporate debtor's account of its assets. And Mr. Rosner—whom NSO identified as the only person authorized to approve any transfer, check, or contract above $25,000—is the witness best positioned to explain where NSO's money has gone. If NSO designates him as its Rule 30(b)(6) witness, his individual and corporate testimony can be taken in one sitting.

NSO's threshold objections do not change that analysis. Rule 69 discovery exists to find a debtor's assets; it does not require the creditor first to prove those assets can be executed upon. Part I of this motion shows that NSO's pending appeal, the foreign location of its assets, the timing of pre-judgment transfers, and its position that its own records are "nonparty" documents do not limit discovery. Part II shows that each of the three categories of discovery Plaintiffs seek to compel goes to the core of Rule 69 and that NSO's partial offers fall short. Part III shows that NSO has no legitimate basis to withhold Rule 30(b)(6) testimony or Mr. Rosner. The Court should order complete production and that testimony now, so that this process moves forward rather than repeats.

## BACKGROUND

### A. The Judgment and NSO's Refusal to Pay

On December 20, 2024, the Court granted summary judgment to Plaintiffs on liability. Dkt. No. 494. On May 6, 2025, a jury returned a verdict on damages. Dkt. No. 736. The Court entered final judgment of $4,447,190 on November 12, 2025, Dkt. No. 810, and awarded $15,914,095 in attorneys' fees on January 30, 2026, Dkt. No. 835—a total of $20,361,285, exclusive of post-judgment interest. NSO has appealed both awards but has neither posted a bond nor obtained a stay of

execution or of post-judgment discovery. Nearly a year after judgment, it has paid nothing. Marzorati Decl. ¶ 5.

### B. Plaintiffs' Requests and NSO's Objections

On March 4, 2026, Plaintiffs served RFPs and Interrogatories covering standard categories for enforcing a money judgment, beginning January 9, 2023, when NSO's immunity defenses had been finally rejected and the case returned to this Court to proceed on the merits. Plaintiffs' RFPs and Interrogatories requested corporate governance and financing (RFP No. 1), payments and distributions to insiders (RFP No. 4; Interrogatory No. 9), tax returns (RFP No. 11), valuations and asset identification (RFP No. 13; Interrogatory Nos. 5–7), and persons with authority over NSO's assets (Interrogatory No. 10). Marzorati Decl. Exs. A–B; Dkt. No. 840.[1] NSO served its responses and objections on May 4, 2026. Marzorati Decl. Exs. C–D; Dkt. No. 852. It refused any information about assets outside the United States or predating December 12, 2025, when the Rule 62(a) automatic stay expired, citing 28 U.S.C. § 1963, the asserted lack of U.S. jurisdiction to attach foreign assets, and the asserted unenforceability of a U.S. judgment in Israel pending appeal. Marzorati Decl. Ex C, at 4–5; *id*. Ex. D, at 4–5; *see, e.g.*, *id*. Ex. C, at 8–9 (Resp. to RFP No. 1); *id*. Ex. D, at 10 (Resp. to Interrogatory No. 3). Subject to those objections, NSO identified two U.S. trademarks and stated that it owned nothing else in the United States. *id*. Ex. D, at 12 (Resp. to Interrogatory No. 6).

### C. NSO's Partial Production and the Court's Guidance

The parties met and conferred on May 8, May 22, June 16, and June 26, 2026. Dkt. No. 870 at 1; Marzorati Decl. ¶ 6. NSO has made three document productions, totaling approximately 181 pages.[2] The first, on July 13, 2026, consisted of NSO's [redacted] (Marzorati Decl. Ex. H (PJ-NSO-000001–024), *id*. Ex. I (PJ-NSO-000025–042), *id*.

---

[1] Pursuant to Civil Local Rule 37-2, Plaintiffs' RFPs and Interrogatories, and NSO's responses and objections to them, are attached as Exhibits A-D to the Marzorati Declaration; NSO's supplemental responses are filed at Dkt. No. 870-6.

[2] NSO has designated its post-judgment productions as confidential under the Stipulated Protective Order, Dkt. No. 132. Plaintiffs have therefore provisionally filed under seal the portions of this motion and the accompanying exhibits that describe those materials, pursuant to Civil Local Rule 79-5(f), and take no position on whether they warrant sealing.

Ex. J (PJ-NSO-000043–63), *id*. Ex. K (PJ-NSO-000064–081)); documents [redacted] (*id*. Ex. L (PJ-NSO-000082), *id*. Ex. M (PJ-NSO-000083), *id*. Ex. Q (PJ-NSO-000095), *id*. Ex. R (PJ-NSO-000096)); [redacted] (*id*. Ex. N (PJ-NSO-000084)); and printouts of the public USPTO records for two U.S. trademark registrations (*id*. Ex. O (PJ-NSO-000085–089), *id*. Ex. P (PJ-NSO-000090–094)). With that production, NSO served supplemental responses stating that it had made no transfers above $100,000 since January 9, 2023 other than those "identified in the final, audited financial statements" or "carried out in the ordinary course of business," and that, since October 9, 2025, its CEO, Akiva Rosner, has been the only person with authority to approve any transfer, check, or contract above $25,000. Dkt. No. 870-6 at 6–7 (Supp. Resp. to Interrogatory Nos. 8, 10).

NSO made its second production on August 7, 2026—only after Plaintiffs had presented the disputes to the Court by joint letter. Dkt. No. 873-1 at 2–3. It consists of [redacted] (Marzorati Decl. Ex. S (PJ-NSO-000097–107), *id*. Ex. T (PJ-NSO-0000108–114), *id*. Ex. Z (PJ-NSO-0000162–164)); NSO Group's amended articles of association (*id*. Ex. U (PJ-NSO-000115–52)); NSO Group's certificate of incorporation (*id*. Ex. V (PJ-NSO-000153); and Q Cyber's name-change certificate and the early articles and certificate of incorporation of Q Cyber's predecessor (*id*. Ex. W (PJ-NSO-000154), *id*. Ex. X (PJ-NSO-000153–160), *id*. Ex. Y (PJ-NSO-000161)). NSO's cover letter stated that no shareholder agreements exist and that no board minutes or written offers or presentations "indicating a valuation of Defendants' total enterprise value" exist from January 9, 2023 forward, and it stood on NSO's objections to producing payment and distribution information. Dkt. No. 873-1 at 2–3. NSO is withholding its 2023 and 2024 tax returns pending an order governing translation and has deferred its 2025 financial statements until they are completed. *Id.* at 3; Dkt. No. 853 ¶ 2.

NSO's third production came on October 28, 2026, after Plaintiffs subpoenaed Hippocrene Ventures LLC, the Delaware entity that acquired the rights of NSO's secured lenders in 2025. Marzorati Decl. ¶ 15 & Ex. G. It is a single document: [redacted]

[redacted] Marzorati Decl. Ex. AA (PJ-NSO-000165–181), at -000165, 000178–180. According to the document, [redacted]. *Id.* at -000169, 000178–179. [redacted] *Id.* at -000165, 000169. [redacted] *Id.* at -000176–177.

These productions do not identify NSO's specific assets in Israel or Luxembourg or their value, the obligors on the [redacted], the terms of or counterparties to the agreements underlying the registered charges, or the individual payments NSO has made to insiders. *Id.* Ex. H (PJ-NSO-000001–024), *id.* Ex. I (PJ-NSO-000025–042), *id.* Ex. J (PJ-NSO-000043–63), *id.* Ex. K (PJ-NSO-000064–081). [redacted] *Id.* On June 23, 2026, NSO offered to produce additional documents on the condition that the corresponding requests "would be deemed satisfied and eliminated." Dkt. No. 870-7 at 1; Marzorati Decl. ¶ 6. On July 15, 2026, NSO proposed a revised stipulation that deferred negotiation of the loan and credit agreements. Dkt. No. 870-12; Marzorati Decl. ¶ 6. NSO has declined to produce its loan and credit agreements. Dkt. No. 870 at 1.

On July 31, 2026, the parties presented the disputes over RFP Nos. 1, 4, 11, and 13 and Interrogatory Nos. 5–7 and 9 by joint letter. Dkt. No. 870. NSO then filed a unilateral letter describing a seven-document production while expressly "stand[ing] on [its] objections including with respect to third party non-debtors' assets." Dkt. No. 873-1 at 3. Plaintiffs responded that the production mooted none of the disputes. Dkt. No. 874. At the August 20, 2026 hearing, the Court ordered a final meet and confer on three categories: (i) loan and credit agreements, (ii) payments and distributions to officers and equity holders, and (iii) valuation and identification of assets. Marzorati Decl. Ex. E, at 49:2–4, 51:3–13

That September 3, 2026 conference did not resolve the disputes. Dkt. No. 881 at 1. NSO offered—only as part of a global resolution—a summary of the economic terms of its loan and credit agreements or the agreements with counterparty identities withheld; information about assets above $150,000 outside Israel and Luxembourg, where NSO and its parent entities are headquartered; and payment and distribution information with personally identifying information redacted. *Id.* at 3–4; Marzorati Decl. ¶ 12.

Separately, Plaintiffs noticed a Rule 30(b)(6) deposition on July 23, 2026, and a Rule 30(b)(1) deposition of NSO's CEO, Akiva Rosner, on August 25, 2026. Dkt. Nos. 881-1, 881-2. Plaintiffs have no objection to NSO designating Mr. Rosner as its Rule 30(b)(6) witness, in which case both could proceed in a single sitting. At an August 13, 2026 meet and confer, NSO told Plaintiffs it would send a markup of the Rule 30(b)(6) topics reflecting its objections. Marzorati Decl. ¶ 8. It never did. It instead proposed to wait until the Court rules on "the proper scope of asset discovery," Dkt. No. 881-3 at 4, and at the September 3 conference refused to provide any markup, Marzorati Decl. ¶ 13. NSO now refuses to schedule any deposition until the document disputes are resolved, and contends that Mr. Rosner may be deposed only through the Hague Convention. Dkt. No. 881 at 2; Marzorati Decl. ¶ 13. On October 16, 2026, the Court directed the parties to present all outstanding disputes, including the deposition disputes, by cross-motion. Dkt. No. 885.

## LEGAL STANDARD

Rule 69(a)(2) provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). Every discovery procedure in the Federal Rules, including the motion to compel, is therefore available. *See* Fed. R. Civ. P. 69 advisory committee's note to 1970 amendment ("The amendment assures that, in aid of execution on a judgment, all discovery procedures provided in the rules are available[.]"). A party may move to compel when the responding party "fails to answer an interrogatory submitted under Rule 33," "fails to produce documents . . . as requested under Rule 34," or, for a corporation, "fails to make a designation under Rule 30(b)(6)." Fed. R. Civ. P. 37(a)(3)(B)(ii)–(iv). "[A]n evasive or

incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). For post-judgment discovery, relevance is measured against Rule 69's purposes: "to identify assets that can be used to satisfy a judgment" and "to discover concealed or fraudulently transferred assets." *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *1 (N.D. Cal. Dec. 18, 2009); *see also Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014) ("The rules governing discovery in postjudgment execution proceedings are quite permissive."). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

## ARGUMENT

### I. NSO'S THRESHOLD OBJECTIONS DO NOT LIMIT RULE 69 DISCOVERY

NSO raises four categorical objections that cut across every request: (1) its pending appeal, (2) the foreign location of its assets, (3) the timing of pre-judgment transfers, and (4) its characterization of its own records as "nonparty" discovery. Each confuses *collecting* on a judgment with *finding* assets. Rule 69(a)(1) governs how a creditor collects; Rule 69(a)(2) governs how it finds what there is to collect. None of the four objections limits Plaintiffs' ability to discover assets.

#### A. NSO's Pending Appeal Does Not Suspend Discovery

A pending appeal does not automatically suspend discovery. NSO argues that because its appeal is pending and the judgment has not been registered elsewhere under 28 U.S.C. § 1963, Plaintiffs have "no right to enforce the judgment outside this District" and may discover only NSO's assets in the United States as of December 12, 2025. Dkt. No. 870 at 4; *see* Marzorati Decl. Ex. C, at 4–5; Marzorati Decl. Ex. D, at 4–5. But Section 1963 says nothing about discovery. It allows a creditor to register a judgment in another district so it can be enforced there—ordinarily once the judgment is final on appeal, or earlier for good cause. 28 U.S.C. § 1963. And there is "settled authority indicating that discovery in aid of execution is not precluded by the filing of an appeal." *Ryan*, 2009 WL 5114077, at *2. *Brae Asset Funding, L.P. v. Applied Financial, LLC* illustrates the point. 2006 WL 3497876 (N.D. Cal. Dec. 4, 2006). With an appeal pending, the court there addressed registration

under Section 1963 and discovery under Rule 69 in separate parts of its order, and it resolved the discovery request under Rule 69 alone, without relying on registration. *Id.* at *3. It permitted the creditor to depose the debtors' former CEO and former president because "[i]f a judgment may be executed upon after an appeal has been filed, certainly discovery in aid of its execution is not precluded by the filing of an appeal." *Id.* at *1, *3 (quoting *Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246 (11th Cir. 1982)). The same is true here: NSO has posted no bond and obtained no stay, so the judgment remains enforceable and discovery in aid of it may proceed.

NSO's foreign-law argument fails for the same reason. NSO says a foreign judgment is not enforceable in Israel until it "is no longer appealable," and that the law of Luxembourg, where NSO's ultimate parent is incorporated, is "similar." Dkt. No. 870 at 4 (citing Foreign Judgments Enforcement Law, § 3.2 (Isr. 1958), and *Reebok Int'l, Ltd. v. McLaughlin*, 49 F.3d 1387, 1392 (9th Cir. 1995)). *Ryan* rejected the exact argument that NSO now makes. The foreign debtors there argued that because Mexican law barred execution on their Mexican property pending appeal, "if their property cannot yet be subject to execution, it is premature to supply [the judgment creditor] with information about such property." 2009 WL 5114077, at *2. The court held that in federal court the Federal Rules govern discovery, even where foreign law restricts execution. *Id.* Similarly, here, NSO cannot invoke a foreign-law restriction on execution to resist Rule 69 discovery pending appeal.

Nor does NSO identify any bar to discovery in this Court. Its one Israeli decision holds only that Israeli enforcement mechanisms, including asset discovery in Israeli proceedings, are unavailable pending appeal. Dkt. No. 870 at 4 n.5 (citing *Averbuch v. Otkritie Int'l Inv. Mgmt. Ltd.*, CivA 9474/16 (Isr. Feb. 18, 2018)). That concerns what Israeli courts will do, and NSO does not contend that any Israeli or Luxembourg law bars it from *producing* information in this case. Having neither sought nor obtained a stay of post-judgment discovery, NSO must comply now.

### B. Discovery Extends to NSO's Assets Abroad, Whether or Not They Can Be Executed Upon Here

NSO next objects that "U.S. courts generally lack jurisdiction to attach and execute on assets located outside the United States." Marzorati Decl. Ex. C, at 5; *id.* Ex. D, at 5. But whether or not a court can execute on foreign assets, the Supreme Court has rejected the premise that discovery is

limited to assets the court can execute on.

In *NML*, the Court rejected the argument that "if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property," because a creditor seeking discovery "does not yet know what property [the debtor] has and where it is, let alone whether it is executable under the relevant jurisdiction's law." 573 U.S. at 144; *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 208 (2d Cir. 2012) ("[T]he district court's power to order discovery to enforce its judgment does not derive from its ultimate ability to attach the property in question."), *aff'd*, 573 U.S. 134 (2014). The Second Circuit later applied *NML* to affirm worldwide asset discovery, holding that potential immunity from attachment "does not preclude discovery of that property," and that a debtor's "self-serving legal assertion" that its property is beyond reach "does not entitle it to withhold otherwise discoverable information." *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 17–18 (2d Cir. 2014).

NSO's principal authority, a single sentence from *NML*, does not support it. In addressing Argentina's argument that discovery should be limited to property that could ultimately be attached, the Court observed that "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." 573 U.S. at 144. NSO reads that sentence incorrectly as confining Rule 69 discovery to assets that can be executed upon. Dkt. No. 870 at 3. To the contrary, read in context, it confirms that Plaintiffs' requests here are proper. The Court made that observation about a *hypothetical* subpoena that "bizarrely" sought *only* information that could not possibly lead to executable assets, and immediately added: "[b]ut of course that is not what the subpoenas seek." *NML*, 573 U.S. at 144–45. The subpoenas in *NML* instead asked for information about the debtor's "worldwide assets generally," and the Court approved them so that the creditor could "identify where Argentina may be holding property that *is* subject to execution." *Id.* at 145. Plaintiffs' requests are of the same kind: they seek the information needed to determine what can be reached. And even on NSO's reading, Plaintiffs' requests qualify, because the information they seek can plainly lead to executable assets.

NSO's receivables illustrate the point. Other companies in NSO's corporate group owe NSO

$161.5 million. If any of them has money or does business in the United States, Plaintiffs may be able to collect that debt here. But Plaintiffs cannot know until NSO says who those companies are. Nor are NSO's assets in Israel and Luxembourg permanently beyond reach. By NSO's own account, the restriction it invokes lifts once the appeal is resolved, and those assets will be reachable thereafter. NSO's objection would invert *NML*: it would require Plaintiffs to establish executability before they may learn what NSO owns, when the purpose of the discovery is to make that determination possible.[3] That is also contrary to the aims of Rule 69, which are "to determine what assets the judgment debtor has and how they be collected on" because "a judgment creditor is entitled to fish for assets of the judgment debtor." *JW Gaming Dev., LLC v. James*, 2021 WL 2322265, at *4 (N.D. Cal. June 7, 2021) (citing *Ryan*, 2009 WL 5114077, at *4).

NSO's other authorities limited discovery only where it reached beyond the judgment debtor or lacked any connection to the debtor's assets. Neither is true here. *Blasket Renewable Investments, LLC v. Kingdom of Spain* quashed subpoenas to nonparty U.S. businesses "two steps removed" from the debtor, while recognizing that a creditor "cannot know whether such payments exist without postjudgment discovery." 2026 WL 1785188, at *4 (D.D.C. June 22, 2026). *Crews v. Sun Solutions AZ LLC* limited discovery because the person whose finances were sought "is not a 'judgment debtor' in this action." 2024 WL 4120273, at *2 (D. Ariz. Sept. 9, 2024). NSO is. By contrast, *E.I. DuPont de Nemours & Co. v. Kolon Industries, Inc.* compelled a foreign judgment debtor to identify each customer from which it "holds a receivable" or that "otherwise holds [its] assets," along with the asset's location and value. 286 F.R.D. 288, 290, 293 (E.D. Va. 2012). That is precisely what Plaintiffs seek for NSO's receivables. Nor can NSO distinguish *Devas Multimedia Priv. Ltd. v. Antrix Corp.*, 2021 WL 3616787 (W.D. Wash. Aug. 16, 2021), on the ground that Plaintiffs already "know" the judgment cannot be enforced in Israel or Luxembourg. Dkt. No. 870 at 4 n.6. *Devas* held that "[r]egardless of whether this Court lacks authority to permit execution against assets located in other

---

[3] NSO also contends that *NML* "held only" that the FSIA does not immunize foreign states from Rule 69 discovery. Dkt. No. 870 at 3 n.2. If so, *NML*'s relevance passage cannot narrow Rule 69 either. Nor does *NML*'s footnote 6 assist NSO. It notes only that "other sources of law," such as "settled doctrines of privilege" and a court's discretion to "consider comity interests and the burden that the discovery might cause," may bear on such requests. 573 U.S. at 146 n.6 . NSO asserts no privilege and identifies no conflict with any foreign sovereign's law or policy.

countries," the creditors "are entitled to obtain discovery of Respondent's assets both within and outside of the United States." *Devas*, 2021 WL 3616787, at *6.

### C. Discovery Reaches Back to January 2023

NSO maintains that anything predating December 12, 2025, when the judgment became enforceable, is irrelevant, and has offered at most a May 6, 2025 start date—the date of the jury verdict—for certain categories. Dkt. No. 870 at 4–5; Dkt. No. 870-7 at 2–3. That limit would shut off discovery into the very period when NSO had the greatest incentive to move assets: between this Court's December 2024 liability ruling and the May 2025 verdict, when NSO knew it would owe damages but not how much. What NSO owned and transferred then is directly relevant to "discover[ing] concealed or fraudulently transferred assets." *Ryan*, 2009 WL 5114077, at *1.

NSO's limit is also contrary to the practice of courts in this Circuit, which routinely permit Rule 69 discovery reaching back to the start of the underlying litigation. *See id.* at *2–3 (rejecting overbreadth objection and finding reasonable requests reaching back to 2006, when the action began, roughly three years before judgment); *Patriot Rail Corp. v. Sierra R.R. Co.*, 2016 WL 492702, at *6 (E.D. Cal. Feb. 8, 2016) (overruling objection to discovery reaching back to the start of the litigation, because both cases discussed by the parties "allowed discovery all the way back to the date litigation commenced"); *JW Gaming*, 2021 WL 2322265, at *5 (N.D. Cal. June 7, 2021) (rejecting temporal-scope objection to five and a half years of records where the debtor cited "no authority that tethers permissible post-judgment discovery to the date on which the judgment was entered"). Plaintiffs ask for a period that covers far less: this action was filed in October 2019, more than three years before the January 2023 start date. Despite the fact that this litigation put Defendants on notice of a potential monetary judgment, Plaintiffs request discovery covering *only* the period after which this Court lifted its stay pending Defendants' appeal of this Court's denial of NSO's motion to dismiss. *Devas* is not to the contrary. The court there began discovery at the arbitral award only because the intervenors "ha[d] already agreed to this timeframe." 2021 WL 3616787, at *8. It never decided how far back Rule 69 discovery may reach.

### D. NSO's Own Financial Records Are Not "Nonparty" Discovery

Finally, NSO argues that payments to its officers and equity holders, and its loan and credit agreements, concern "non-debtors' assets" because "[a] payment or debt is not an attachable asset of Defendants." Dkt. No. 870 at 4. That argument misreads Rule 69, contradicts the Court's guidance at the August 20 hearing, and rests on authorities that address discovery into the finances of someone other than the judgment debtor. Money NSO has paid out to insiders is exactly what a creditor must trace to "discover concealed or fraudulently transferred assets," *Ryan*, 2009 WL 5114077, at *1, and NSO's debts show which of its own assets are encumbered and which remain available. The Court has already said as much: "in my view, this is not third-party discovery." Marzorati Decl. Ex. E, at 49:5–6. In this motion, Plaintiffs seek no discovery from any nonparty and none into any nonparty's own finances—only documents in NSO's possession, custody, or control about NSO's own assets, liabilities, and transfers.

NSO's authorities do not change that. They require a threshold showing of fraudulent transfer or alter ego before a creditor may examine the finances of someone *other than* the judgment debtor. *See* Dkt. No. 870 at 4 (citing, *e.g.*, *Uniden Corp. of Am. v. Duce Trading Co.*, 1993 WL 286102, at *1 (W.D.N.Y. July 19, 1993); *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 2021 WL 5863937, at *3 (C.D. Cal. Aug. 13, 2021)). NSO says the showing applies even to requests directed to the debtor, pointing to *Beautyko*, which involved a request that the judgment debtors produce "personal financial information of nondebtor[s]." Dkt. No. 870 at 4 n.4 (citing *Beautyko LLC v. Amazon Fulfillment Servs.*, 2018 WL 1792183, at *2 (W.D. Wash. Apr. 16, 2018)). But Plaintiffs seek no insider's personal finances—only NSO's records of what NSO itself paid and owes. Courts reject the threshold-showing argument in exactly that setting. *See Patriot Rail*, 2016 WL 492702, at *5–6 (overruling judgment debtor's objection that a showing of "fraudulent conveyance or alter ego" was required, because the cases it cited "involve discovery or enforcement efforts directed to non-parties, which is not what is sought here").

## II. EACH DISPUTED CATEGORY GOES TO THE CORE OF RULE 69

With those objections cleared away, each disputed category—credit and loan agreements, payments to insiders, and valuations—goes to the core of Rule 69: what NSO owns, what it owes,

and where its money has gone. A judgment creditor is entitled to "a very thorough examination of a judgment debtor with respect to its assets, including discovery of the identity and location of any of the judgment debtor's assets, wherever located," *Ryan*, 2009 WL 5114077, at *1, and "[t]he presumption should be in favor of discovery," *Solid Income Ltd. v. EnergyInvest LLC*, 2025 WL 2417181, at *3 (N.D. Cal. Aug. 21, 2025). The three categories fill the gaps in NSO's production: valuations and asset identification show what NSO owns and where; the loan and credit agreements show which of those assets are already encumbered, and to whom; and the insider-payment records show what has left the company. NSO cannot carry its burden of showing that these core financial records fall outside Rule 69.

**A. Credit and Loan Agreements (RFP No. 1)**

NSO must produce its loan and credit agreements. They will show what NSO owes, to whom, and which of its assets secure those debts—precisely the information that allows a judgment creditor to "identify sources of income and assets that may be used to satisfy the judgment." *Erickson Prods., Inc. v. Kast*, 2025 WL 2577886, at *3 (N.D. Cal. Sept. 5, 2025) (granting motion to compel judgment debtor to produce "documents relating to any debts owed to or by [the judgment debtor] to third parties"). NSO has produced some documents responsive to RFP No. 1 but refuses to produce the agreements themselves.

Courts routinely order production of these agreements. *See, e.g.*, *Packaging Corp. of Am. v. Bonert's, Inc.*, 2019 WL 1123165, at *2 (C.D. Cal. Mar. 11, 2019) (ordering production of "information regarding loans to [Defendant's] shareholders," as well as "loan agreements, promissory notes, and other agreements evidencing 'all loans ever made to [Defendant]'"); *Am. Zurich Ins. Co. v. ESG Republic, Inc.*, 2026 WL 242045, at *2–3 (E.D. Cal. Jan. 29, 2026) (directing judgment debtor to produce "[l]oan/mortgage documents," "[l]ines of credit and/or loans," and "[d]ocuments regarding other outstanding debts, judgments, attachments, or liens"); *JW Gaming*, 2021 WL 2322265, at *4 (rejecting objection that subpoena for judgment debtor's bank records was overbroad because it "inquire[d] about debts, loans, and credit lines in addition to tangible assets," since the debtor "conflate[d]" post-judgment information-gathering "with the actual execution of a judgment"); *Tradewinds Ltd. v. Grupo Dolphin Discovery*, 2024 WL 3086665, at *4–5 (C.D. Cal. May 17, 2024)

(ordering judgment debtor to produce documents relating to a $30 million loan). NSO's attempts to distinguish these cases fail. NSO says *Packaging* required a threshold showing of suspected fraudulent transfer and that *American Zurich* was unopposed. Dkt. No. 870 at 4 n.4. But the *Packaging* showing applied only because the subpoenas were directed to nonparties. *See* 2019 WL 1123165, at *1 ("To obtain discovery from a nonparty, a judgment creditor must make a threshold showing."). And opposed or not, *American Zurich* reflects the ordinary scope of discovery from a judgment debtor. Plaintiffs seek NSO's own agreements from NSO.

Neither the registry extracts NSO has produced nor its latest offer—a summary of economic terms, or the agreements with counterparty identities withheld—fills that gap. [redacted] Marzorati Decl. Ex. S (PJ-NSO-000097–107), *id.* Ex. T (PJ-NSO-000108–114). But they do not show how much each lender is owed, which lender gets paid first, or what lets a lender seize the pledged assets. Plaintiffs need to know that to tell which NSO assets are already spoken for. They also need to know who the lenders are. If a lender is tied to NSO's insiders or parent companies, a pledge to that lender could be a way to keep NSO's assets away from Plaintiffs—a real concern given that lenders changed after judgment. The one agreement NSO has produced confirms the point. [redacted] *Id.* Ex. AA (PJ-NSO-000165–181) at 000169–171. [redacted] *Id.* at -000176–177. NSO has produced neither the Credit Agreement nor the amendment. The Court contemplated redaction only where "the other party [to the agreement] was one of their government customers . . . whose identity has not been ordered." *Id.* Ex. E, at 49:23–50:13. No sovereign interest is implicated here, and the protective order addresses any ordinary confidentiality concern. Without the agreements, Plaintiffs would hold a list of charges they cannot evaluate, with no way to tell whether any NSO asset is actually available to satisfy the judgment.

The Court should order NSO to produce its loan and credit agreements responsive to RFP No. 1 from January 9, 2023 forward, without redaction of counterparty identities, subject to the existing protective order.

**B. Distributions and Compensation (RFP No. 4 and Interrogatory No. 9)**

NSO must produce transaction-level records of its payments to insiders. RFP No. 4 and Interrogatory No. 9 seek payments, distributions, and compensation to NSO's officers, managers, members, and equity holders since January 9, 2023. *Id*. Ex. A, at 5; *Id*. Ex. B, at 5. RFP No. 4 also seeks capital contributions to NSO during the same period. *Id*. Ex. A, at 5. This information shows where NSO's money has gone, and "the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Textron Fin. Corp. v. Gallegos*, 2016 WL 4077505, at *3 (S.D. Cal. Aug. 1, 2016) (quoting *Caisson Corp. v. Cnty. W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974)); *see Patriot Rail*, 2016 WL 492702, at *9 (granting motion to compel discovery of "information about the executive compensation paid out to [the debtor's] executives," whose "relevance . . . is apparent from [its] face" because it "seeks to learn what happened [to] the assets of [the judgment debtor]"); *Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*, 2005 WL 8162980, at *2 (C.D. Cal. Mar. 14, 2005) ("[T]he scope of post-judgment discovery is broad, enabling judgment creditors to seek discovery of both current assets and past financial transactions that could lead to the existence of fraudulently concealed or fraudulently conveyed assets." (cleaned up)).

Nothing NSO has produced or offered shows where NSO's assets went. Its financial statements report only aggregates—a $14 million intercompany set-off at year-end 2024, for example, without saying who received what. Marzorati Decl. Ex. H (PJ-NSO-000001–024), *id*. Ex. I (PJ-NSO-000025–042), *id*. Ex. J (PJ-NSO-000043–63), *id*. Ex. K (PJ-NSO-000064–081). Its transfer disclosure excludes anything in those statements or made "in the ordinary course of business" (according to NSO) and so omits at least salary, bonuses, equity awards, and distributions, as well as whatever else NSO may be using that caveat to withhold. Dkt. No. 870-6 at 6–7. And its offers fall short: each would withhold payees' identities, none includes capital contributions, and its June 23 proposal started only on May 6, 2025—leaving out both the months after the December 2024 liability

ruling, when NSO had the strongest incentive to move assets, and the names needed to trace payments. Dkt. No. 870-7 at 2–3; Dkt. No. 881 at 4. NSO invokes Israel's Protection of Privacy Law, 5741-1981, Dkt. No. 870-7 at 2; Marzorati Decl. ¶ 12, but it has not identified any provision of that statute that bars producing payees' identities in a U.S. proceeding under a protective order. And after judgment "the desire for confidentiality must necessarily yield," with "any legitimate confidentiality concerns . . . remedied with a protective order." *Crews*, 2024 WL 4120273, at *2 (citation omitted). The existing order does that: NSO may designate the records Attorneys' Eyes Only and file any names under seal, Dkt. No. 132, as it has done with material Israel permitted it to share only on those terms. *See* Dkt. No. 798-1 ¶¶ 3–12. A debtor that has paid nothing on more than $20 million in judgments while continuing to operate is spending its money somewhere. [redacted] Marzorati Decl. Ex. AA (PJ-NSO-000165–181), at -000169, 000178–179. These records are the only way to find out where that money went.

The Court should order NSO to produce documents sufficient to show payments, distributions, and other compensation to officers, managers, members, and equity holders from January 9, 2023 forward, identifying for each payment the amount, date, recipient's role or category, and purpose.

### C. Valuations (RFP No. 13 and Interrogatory Nos. 5–7)

NSO must produce its valuations and identify its assets. RFP No. 13 and Interrogatory Nos. 5–7 seek any valuation of NSO's business or assets—including formal or informal appraisals, estimates of value, offers, proposals, and pro forma indications of value—and identification of NSO's real property, intellectual property, and other assets. Valuations reveal a debtor's net worth and the assets that drive it, and courts routinely permit discovery into them. *See Packaging*, 2019 WL 1123165, at *2 (granting in part and denying in part motion to quash third-party subpoenas seeking "any requests for financing by [Defendant], including . . . appraisals" and "documents concerning 'efforts by [Defendant] to sell or transfer its business,'" including "valuations"); *see also King & Ballow v. Thompson*, 2018 WL 2350082, at *7 (M.D. Tenn. Jan. 11, 2018) (finding requests for

"business valuations" and financial statements "clearly within the broad scope of permissible post-judgment discovery"), *report and recommendation adopted*, 2018 WL 2336593 (M.D. Tenn. May 23, 2018). Breadth is no objection: "[t]he scope of discovery under Rule 69 encompasses the ability to find actual assets, uncover hidden assets, and trace assets," and is therefore "very broad." *Solid Income Ltd.*, 2025 WL 2417181, at *3 (citing *JW Gaming*, 2021 WL 2322265, at *4).

NSO's response falls short. On valuations, it states only that no "board minutes, or written offers or presentations to third parties, indicating a valuation of Defendants' total enterprise value" exist from January 9, 2023 forward. Dkt. No. 873-1 at 2–3. But RFP No. 13 seeks "any valuation of [Defendants'] business or assets," formal or informal, and whether or not addressed to "total enterprise value." Marzorati Decl. Ex. A, at 6; *see* Dkt. No. 870-9 at 1. And NSO's own production shows that [redacted] Marzorati Decl. Ex. AA (PJ-NSO-000165–181) at -000171. Whatever analysis supports that figure is responsive and has not been produced. On asset identification, NSO proposes to disclose only assets above an arbitrary $150,000 threshold and to exclude Israel and Luxembourg—where NSO and its parents are headquartered and its bank accounts are held—without identifying any basis for either limit. Those limits would block the first step of enforcement. NSO's financial statements report asset classes only in the aggregate; they do not identify the affiliates that owe NSO its receivables. *Id.* Ex. H (PJ-NSO-000001–024), *id.* Ex. I (PJ-NSO-000025–042), *id.* Ex. J (PJ-NSO-000043–63), *id.* Ex. K (PJ-NSO-000064–081). Valuations and asset identification supply that information and will tell Plaintiffs where to register or domesticate the judgment once the appeal is resolved. Without them, Plaintiffs would know of two U.S. trademarks and no other specific, identifiable asset—and would have to start over after the appeal, at risk of NSO secretly moving or encumbering the very assets Plaintiffs seek to identify.

The Court should order NSO to produce all valuations responsive to RFP No. 13 from January 9, 2023 forward, including informal appraisals, estimates, offers, proposals, and other indications of value, and to answer Interrogatory Nos. 5–7 fully, without a monetary threshold or the exclusion of Israel and Luxembourg.

### D. NSO May Not Condition Production on Plaintiffs' Waiver of Their Requests

NSO also may not condition production on Plaintiffs' advance agreement that a partial production "satisfie[s]" or "eliminate[s]" the underlying requests. Dkt. No. 870 at 1. NSO calls this ordinary negotiation over scope. *Id.* at 5. But narrowing by agreement is one thing; requiring the requesting party to give up, before seeing the production, its right to review it and seek warranted supplementation is another. *See* Fed. R. Civ. P. 26(e), 34(b)(2).

## III. NSO MUST PROVIDE RULE 30(b)(6) TESTIMONY AND PRODUCE ITS CEO FOR DEPOSITION

NSO refuses to produce any deposition witness. It says the Rule 30(b)(6) deposition must wait until the document disputes are resolved, and that its CEO may be deposed only through the Hague Convention. Rule 69 permits discovery from "any person" "as provided in these rules," Fed. R. Civ. P. 69(a)(2), and depositions are a core tool of that discovery. *See, e.g.*, *Brae*, 2006 WL 3497876, at *3 (permitting, while appeal was pending, depositions of judgment debtors' former CEO and former president, who held the same offices at the successor entity added as a judgment debtor). That right reaches a corporate debtor's officers: a creditor "is entitled to a very thorough examination of the judgment debtor," and a corporate debtor's officer "may be deposed in that capacity." *Caisson*, 62 F.R.D. at 335; *see also Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430–31 (8th Cir. 1998) (district court abused its discretion by refusing to compel depositions of corporate judgment debtor and its sole officer, because "the presumption should be in favor of full discovery of any matters arguably related to [the creditor's] efforts to trace [the debtor's] assets"). Foreign debtors are no exception. In *Systems Division, Inc. v. Teknek Electronics, Ltd.*, the court compelled a Scottish judgment debtor and its U.S. affiliate to designate Rule 30(b)(6) witnesses, ordered the depositions to proceed "within the jurisdiction of this Court" rather than in Scotland and Chicago as the debtors requested, and awarded Rule 37 expenses. 2005 WL 8260387, at *2 (C.D. Cal. Apr. 11, 2005). Neither of NSO's objections justifies its refusal to appear.

NSO's first objection—that the Rule 30(b)(6) deposition must wait until the document disputes are resolved—would hold that deposition hostage. Plaintiffs served the notice on July 23, 2026. Dkt. No. 881-1. On August 13, NSO agreed to mark up the topics to reflect its view of the proper

scope of post-judgment discovery, Marzorati Decl. ¶ 8, then reversed course and proposed to wait until the Court rules on "the proper scope of asset discovery." Dkt. No. 881-3 at 3. That has it backwards: the markup was NSO's vehicle for pressing its scope objections. More than two months later, NSO has provided neither the markup nor a witness. Marzorati Decl. ¶¶ 8, 10–13 & Ex. F. A party that objects to deposition topics must seek a protective order; it may not simply decline to appear. *See* Fed. R. Civ. P. 26(c), 30(b)(1).

NSO's second objection, to deposing Mr. Rosner, fares no better. NSO identified him in its answer to Interrogatory No. 10 as the only person with general authority to approve any transfer, check, or contract above $25,000, Dkt. No. 870-6 at 6–7, and that authority is undisputed. No one is better placed to testify about where NSO's money has gone. The choice of Rule 30(b)(6) designee belongs to NSO, but given Mr. Rosner's role, NSO could readily designate him and resolve both notices in a single sitting—sparing itself the burden of preparing multiple witnesses. NSO objects to any Rule 30(b)(1) deposition of Mr. Rosner that is not limited to topics related to enforcement of the money judgment. Marzorati Decl. ¶ 13. But disagreement over the scope of particular questions is no reason to refuse to produce a witness at all.

Nor does the Hague Convention supply a reason to withhold him. If service of process itself may be made on a foreign defendant through its U.S. counsel—in Hague Convention countries, and even where counsel disclaims authority to accept—so may a deposition notice. *See Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) ("Nothing in the Hague Convention prohibits such service"); *Al-Sadhan v. Twitter Inc.*, 2024 WL 3012491, at *2–3 (N.D. Cal. June 14, 2024) (collecting cases permitting such service "even when the attorney has not been authorized to accept service of process"); *CSPC Dophen Corp. v. Hu*, 2020 WL 4059521, at *5 (E.D. Cal. July 20, 2020) (authorizing service through U.S. counsel that disclaimed authority, because counsel had "repeatedly appeared on behalf of [those parties]"), *report and recommendation adopted*, 2020 WL 6118611 (E.D. Cal. Oct. 16, 2020). NSO's U.S. counsel has appeared for NSO and accepted service of all documents throughout this litigation. Marzorati Decl. ¶ 36. And NSO has never before insisted on the Hague Convention: before judgment, Plaintiffs deposed four NSO executives—including its then-CEO, Yaron Shohat—on Rule 30 notices served by email on that same

counsel. *Id.* ¶ 36 & Exs. BB–EE. NSO offers no reason counsel cannot accept the same notice for its current CEO.

NSO's deposition objections follow the pattern of its document objections: each defers discovery, and none identifies an actual bar. The Court should order NSO to produce a Rule 30(b)(6) designee and to make Mr. Rosner available for deposition under Rule 30(b)(1) within 30 days of the Court's order; should NSO designate Mr. Rosner, both may proceed in a single sitting.

**CONCLUSION**

Plaintiffs respectfully request that the Court grant their motion to compel and order NSO to: (1) within 14 days of the Court's order, produce, without geographic limitation and from January 9, 2023 forward, documents and information responsive to RFP Nos. 1, 4, and 13 and supplement its answers to Interrogatory Nos. 5–7 and 9, as set forth in Parts II.A–C, without conditioning that production on Plaintiffs' agreement that it satisfies or eliminates any request; and (2) within 30 days of the Court's order, produce a Rule 30(b)(6) designee and make Mr. Rosner available for deposition under Rule 30(b)(1), in a single sitting should NSO designate him, as set forth in Part III.

Dated: October 30, 2026

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: */s/ Micah G. Block*

Greg D. Andres
Antonio J. Perez-Marques
Luca Marzorati
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
antonio.perez@davispolk.com
luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*