Juan O. Perla (appearance *pro hac vice*)
Turner Smith (appearance *pro hac vice*)
David V. Holmes (appearance *pro hac vice*)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 696-6084
jperla@curtis.com
tsmith@curtis.com
dholmes@curtis.com

Jerrold L. Bregman (SBN 149896)
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Tel: (818) 827-9101
Fax: (818) 827-9099
jbregman@bg.law

*Attorneys for Defendants*
*NSO Group Technologies Limited*
*and Q Cyber Technologies Limited*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

WHATSAPP LLC and
META PLATFORMS, INC.,

Plaintiffs,

v.

NSO GROUP TECHNOLOGIES LIMITED
and Q CYBER TECHNOLOGIES LIMITED,

Defendants.

Case No. 4:19-cv-07123-PJH

**DEFENDANTS' RESPONSE IN SUPPORT OF MOTION FOR ENTRY OF PROTECTIVE ORDER**

Judge: Hon. Phyllis J. Hamilton
Action Filed: October 29, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

POINTS AND AUTHORITIES ..... 2

I. Plaintiffs' Requests Must Be Reasonably Limited under Federal Rules 69 and 26 ..... 3

A. Plaintiffs Have Made No Showing to Warrant Discovery into Non-Debtor Assets ..... 3

B. Assets in Israel and Luxembourg are Not Executable Pending Appeal and So Their Discovery Is Not Relevant or Proportional to the Needs of the Case ..... 8

C. The Requests Lack a Reasonable Threshold Amount ..... 10

D. No Valid Rationale Exists for Reaching Back Years Before Judgment ..... 11

II. Defendants Have Substantially Responded to Plaintiffs' Discovery Requests and This Court Should Not Order Further Production ..... 12

A. Loan and Credit Agreements (RFP No. 1) ..... 12

B. Distributions and Compensation (RFP No. 4 and Interrogatory No. 9) ..... 13

C. Asset Identification and Valuation (RFP No. 13 and Interrogatory Nos. 5–7) ..... 14

D. Defendants Do Not Seek And Have Never Sought Any "Waiver" of Future Requests If Warranted ..... 15

III. Any Deposition Must Be Similarly Limited Whether Under Rule 30(b)(6) or 30(b)(1) ..... 16

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

## Cases

*7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090 (9th Cir. 1999) .......... 5

*Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 Fed. Appx. 16 (2d Cir. 2014) .......... 9

*Beautyko LLC v. Amazon Fulfillment Servs.*, Case No. C16-355 RSM, 2018 U.S. Dist. LEXIS 64746 (W.D. Wash. Apr. 16, 2018) .......... 6

*Blasket Renewable Investments, LLC v. Kingdom of Spain*, Civil Action No. 20-817 (JDB), 2026 U.S. Dist. LEXIS 137920 (D.D.C. June 22, 2026) .......... 5

*Cardenas v. Performance Auto Wholesalers LLC*, Case No. 1:24-cv-23654-RAR, 2026 U.S. Dist. LEXIS 32890 (S.D. Fla. Feb. 16, 2026) .......... 17

*Crews v. Sun Solutions AZ LLC*, CV-23-01589-PHX-DWL, 2024 U.S. Dist. LEXIS 161328 (D. Ariz. Sep. 9, 2024) .......... 5

*Devas Multimedia Priv. Ltd. v. Antrix Corp.*, C18-1360 TSZ, 2021 U.S. Dist. LEXIS 154109 (W.D. Wash. Aug. 16, 2021) .......... 10

*Dexia Credit Local v. Rogan*, Case No. 02 C 8288, 2008 U.S. Dist. LEXIS 91149 (N.D. Ill. Nov. 10, 2008) .......... 4

*E.I. DuPont de Nemours & Co. v. Kolon Industries, Inc.*, 286 F.R.D. 288 (E.D. Va. 2012) .......... 5

*Goodyear Tire & Rubber Co. v. Ceva Logistics Singapore, Ltd.*, 348 F.R.D. 54 (E.D. La. 2024) .......... 18

*Gravestock v. Abilene Motor Express, Inc.*, 8:14-cv-00170-JVS-KESx, 2017 U.S. Dist. LEXIS 225703 (C.D. Cal. Mar. 1, 2017) .......... 18

*Great Am. Assurance Co. v. Liberty Surplus Ins. Co.*, 669 F. Supp. 2d 1084 (N.D. Cal. 2009) .......... 17

*Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534 (D. Nev. 2008) .......... 18

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 323 F.3d 1122 (9th Cir. 2003) .......... 4

*InfusAID LLC v. InfuSystem Inc.*,
Case No. 17-2243-CM, 2018 U.S. Dist. LEXIS 17051 (D. Kan. Feb. 2, 2018) ....................... 15

*Montgomery v. eTreppid Techs., LLC*,
3:06-CV-0056-PMP (VPC), 2009 LX 91811 (D. Nev. Feb. 25, 2009) .................................. 16

*NML Capital, Ltd. v. Republic of Argentina*,
No. C 12-80185 JSW (MEJ), 2013 U.S. Dist. LEXIS 24010 (N.D. Cal. Feb. 21, 2013) ........... 5

*Ranza v. Nike*,
793 F.3d 1059 (9th Cir. 2015)........................................................................................ 4

*Republic of Argentina v. NML Capital, Ltd.*,
573 U.S. 134 (2014) ............................................................................................... 8, 10

*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*,
No. C 06-3219 JW (RS), 2009 U.S. Dist. LEXIS 118337 (N.D. Cal. Dec. 18, 2009)................ 9

*Sanofi-Aventis v. Sandoz, Inc.*,
272 F.R.D. 391 (D.N.J. 2011) ..................................................................................... 18

*Trendsettah U.S. v. Swisher Int'l*,
SA CV 14-01664-JVS (DFMx), 2021 U.S. Dist. LEXIS 239951 (C.D. Cal. Aug. 13, 2021).... 3

*United States v. Taylor*,
166 F.R.D. 356 (M.D.N.C. 1996) ................................................................................ 18

**Rules**

Fed. R. Civ. P. 26............................................................................................... 2, 16

Fed. R. Civ. P. 30(b)(6)...................................................................................... 17, 18

Fed. R. Civ. P. 69............................................................................................ 1, 2, 3, 16

**Other Authorities and Treaties**

1B Julian B. McDonnell & James P. Nehf,
*Secured Transactions Under the Uniform Commercial Code* § 9B.03, LexisNexis (database updated 2026)............................................................................................... 4

CivA 9474/16 *Averbuch v. Otkritie Int'l Inv. Mgmt. Ltd.*, (2018) (Isr.)........................................ 9

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters
23 U.S.T. 2555, T.I.A.S. No. 7444 (entered into force Oct. 7, 1972)..................................... 16

National Labor Court 49/3-2 *State of Israel v. Israel Raich*, (1989) (Isr.) .................................... 7

National Labor Court 56/3-260 *Alfariah v. Director General of Nat'l. Ins. Inst.*, (1997) (Isr.)..... 7

Protection of Privacy Law 5741 (Isr. 1981)....................................................................... 7, 14

## INTRODUCTION

Plaintiffs attempt to portray Defendants NSO Group Technologies Limited ("NSO") and Q Cyber Technologies Limited ("Q Cyber") as having refused to comply with post-judgment discovery requests. That is not true. Defendants have consistently acted in good faith to produce responsive documents and to propose further productions that are relevant and proportional to the needs of the case. Plaintiffs have equally refused to engage in productive negotiation of the scope of discovery, essentially refusing to accept any limitations on discovery under Rule 69.

Despite Plaintiffs' unwillingness to compromise, Defendants have already produced significant responsive documents and provided substantive information in certified answers to the interrogatories. While Plaintiffs try to minimize Defendants' productions and responses by characterizing them as consisting of only 181 pages, those pages contain Defendants' core financial information—as is clear from Plaintiffs' own motion, which relies on those documents extensively. One would also never guess from Plaintiffs' motion that Defendants offered months ago to produce hundreds of additional pages of corporate income tax documents in Hebrew, as soon as the parties jointly submit to the Court a proposed order governing the use of AI for translating and reviewing confidential documents, as the parties had already agreed to do. All that is needed is for Plaintiffs to provide Defendants with their final comments on that proposed order, which they committed to do more than five months ago.

While ignoring hundreds of pages of tax documents Defendants have already agreed to produce but Plaintiffs have not bothered to accept, Plaintiffs push for additional discovery into irrelevant topics with an overly burdensome and disproportional scope. The common thread in all of Plaintiffs' demands is that they seem to believe that merely holding a judgment and invoking the broad scope of discovery under Rule 69 is sufficient to entitle them to everything they might want to ask, without any reasonable limitation. That's not how Rule 69 discovery works.

The purpose of Rule 69 discovery is to identify *executable assets of the judgment debtor*. Like any discovery under the Federal Rules, Rule 69 discovery is subject to all the limitations of

Rule 26, including relevance and proportionality. Among other things, as Defendants have repeatedly explained, this means that Plaintiffs are not automatically entitled to discovery into the assets of non-debtors, without at least making some showing of relevance—*i.e.*, that those assets might be executable as assets of the judgment debtor. Plaintiffs still make no attempt at satisfying that requirement, even though they now have extensive information about Defendants' finances. It is clear that they cannot meet that requirement.

The Court should put a stop to this overreach and limit Plaintiffs' post-judgment discovery to what is relevant and proportional—information about Defendants' executable assets in the United States subject to reasonable amount and temporal limitations. The Court should deny Plaintiffs' motion to compel and grant Defendants' motion for a protective order.

## POINTS AND AUTHORITIES

As the Supreme Court has explained, Rule 69 discovery is delimited by the contours of Rule 26, including proportionality and relevance. *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 144 (2014) ("*NML Capital*"). Accordingly, as with any discovery, courts have broad discretion to limit discovery under Rule 69. *Id.* at 139; *see* Defs. Br., Dkt. No. 886 at 10.

Plaintiffs seek irrelevant and disproportional discovery into non-executable assets of non-debtors worldwide, including for routine, *de minimis* amounts stretching back years before judgment—without providing even an inkling of support to suspect that Defendants have engaged in anything other than fair-market transactions in the course of ordinary business despite the extensive information about Defendants' finances that Plaintiffs reference throughout their motion. They also insist on obtaining more information about Defendants' non-executable assets abroad, namely in Israel and Luxembourg, than is relevant or proportional for the needs of the case. Contrary to Plaintiffs' portrayal of Defendants as having refused to cooperate with discovery, Defendants have already responded to Plaintiffs' requests beyond what is required to meet the needs of the case. Finally, to avoid burdening the Court with future disputes, Defendants request that the Court clarify that any deposition must be similarly limited.

## I. Plaintiffs' Requests Must Be Reasonably Limited under Federal Rules 69 and 26

### A. Plaintiffs Have Made No Showing to Warrant Discovery into Non-Debtor Assets

Plaintiffs agree that the purpose of Rule 69 is to "identify assets *that can be used to satisfy a judgment*" (Pls. Mot. 7 (emphasis added)), and Plaintiffs do not and could not dispute that Defendants' debts are, by definition, assets of non-debtors. Nor do or could Plaintiffs dispute that assets of non-debtors cannot be used to satisfy the judgment against Defendants. Instead, Plaintiffs attempt to argue that they need information about non-debtor assets to understand "which of [Defendants'] own assets are encumbered and which remain available." Pls. Mot. 12. This argument falls flat given that Defendants have already provided documentation sufficient to show existing liens on its assets. *See* Pls. Exs. S-T. Defendants have also produced information about their assets in the United States and even offered to identify assets outside of Luxembourg and Israel valued in excess, individually or in the aggregate, of $150,000. That information is more than sufficient to identify which assets are available for execution.

In any case, information about encumbrances on Defendants assets is irrelevant to identifying executable assets of Defendants absent some evidence to suggest that those encumbrances could be voided. As Defendants made clear in their motion for a protective order, and in prior exchanges of letters between the parties, courts have held that judgment creditors *may* obtain discovery into assets of non-debtors only upon making a heightened showing of the relevance of that information to the purposes of Rule 69. That is, they must show that the information sought is relevant to identifying attachable assets of the debtor, or offer some showing "sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between [the debtor and the third party]." *Trendsettah U.S. v. Swisher Int'l*, SA CV 14-01664-JVS (DFMx), 2021 U.S. Dist. LEXIS 239951, at *6-7 (C.D. Cal. Aug. 13, 2021). In the absence of such a showing, discovery of the assets of non-debtors is simply irrelevant and disproportional.

Plaintiffs do not contest this standard. Nor do they make any attempt in their motion to meet it. That is particularly telling because Plaintiffs already have extensive information about

Defendants' financial affairs—as is plain from their motion, which cites repeatedly to the existing production and discusses Defendants' finances in great detail. Plaintiffs have not pointed to any information in Defendants' financial materials that raises any reasonable suspicion about Defendants' dealings and relationships with other parties. Rather, Defendants' audited financials and other disclosures show ordinary arm's length transactions.

The sole facts on which Plaintiffs seem to rely through innuendo—which involve the promissory note issued by Hippocrene Ventures LLC *that Defendants voluntarily disclosed*—do not raise any prima facie doubt to justify any further discovery into non-debtors' affairs (from Defendants or non-debtors). To the contrary, it shows an ordinary transaction for fair-market value, and Plaintiffs do not contend otherwise. *See Dexia Credit Local v. Rogan*, Case No. 02 C 8288, 2008 U.S. Dist. LEXIS 91149, at *23 (N.D. Ill. Nov. 10, 2008) (finding judgment creditor could successfully allege a fraudulent transfer of assets, but only in an instance where the *judgment debtor* made an interest-free loan, unsupported by documentation and for an indefinite term) (emphasis added); *see also* 1B Julian B. McDonnell & James P. Nehf, *Secured Transactions Under the Uniform Commercial Code* § 9B.03, LexisNexis (database updated 2026) (noting that while, "fraudulent transfer laws apply to the obligations that the debtor incurs…incurring debt for borrowing money will generally not be voidable because the debtor is receiving loan proceeds in exchange for a promise to repay").[1] Plaintiffs do not point to any evidence supporting plausible claims of fraudulent conveyance or alter ego, and pure conjecture and speculation are insufficient to make a heightened showing of relevance. *See NML Capital, Ltd. v. Republic of Argentina*, No.

[1] Moreover, the promissory note clarifies the nature of the relationship between Hippocrene and Defendants, *i.e.*, a creditor-lender relationship. Even intercompany loans, which involve entities that are under common ownership and control, do not in and of themselves suggest anything other than arm's length dealings. *See Ranza v. Nike*, 793 F.3d 1059, 1074-75 & n.9 (9th Cir. 2015) (noting that the provision of inter-company financing with overlapping officers is insufficient to negate the entities' separate corporate personalities or trigger any concerns of fraud or any similar injustice); *see also Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 323 F.3d 1122, 1135 (9th Cir. 2003) (emphasizing that common ownership and shared management is insufficient to establish an alter-ego relationship).

C 12-80185 JSW (MEJ), 2013 U.S. Dist. LEXIS 24010, at *4-6 (N.D. Cal. Feb. 21, 2013) ("*NML Capital II*") (denying discovery of non-party assets as irrelevant and unnecessary upon debtor's motion that plaintiff failed to make requisite showing of alter ego or fraudulent transfer).[2]

Plaintiffs attempt to distinguish their requests as seeking information within the custody and control of Defendants, as opposed to seeking "non-party discovery." Pls. Mot. 12. This is a red herring. The question is not who has possession or custody of the documents (which might be relevant if Defendants' objection were based on burden alone); but rather it is whether the information sought is relevant and proportional to the needs of the case.[3] *See, e.g.*, *NML Capital II*, 2013 U.S. Dist. LEXIS 24010, at *4-6. The answer to that question does not depend on who holds the information. Plaintiffs' attempts to distinguish Defendants' caselaw only serve to further support Defendants' arguments. *See Blasket Renewable Investments, LLC v. Kingdom of Spain*, Civil Action No. 20-817 (JDB), 2026 U.S. Dist. LEXIS 137920, at *4 (D.D.C. June 22, 2026) (denying discovery where there was an insufficient basis to inquire into dealings with U.S. entities); *see also* Pls. Mot. 10 (acknowledging that *Crews v. Sun Solutions AZ LLC*, No. CV-23-01589-PHX-DWL, 2024 U.S. Dist. LEXIS 161328, at *6 (D. Ariz. Sep. 9, 2024), "limited discovery because the person whose finances were sought 'is not a 'judgment debtor,'" and failing to note that in *E.I. DuPont de Nemours & Co. v. Kolon Industries, Inc.*, 286 F.R.D. 288, 292-93 (E.D. Va. 2012) the court ordered discovery related to the judgment debtor's assets, not assets of non-debtors).

Plaintiffs are not automatically entitled to the names of Defendants' counterparties. It is not enough to want to identify targets for enforcement without so much as some factual predicate to

---

[2] Plaintiffs also reference a drop in Defendants' cash reserves over a one-year period. A relatively minor drop in cash flow year-to-year is unremarkable, especially given Plaintiffs reference to Defendants' audited financial statements listing about $220 million in assets.

[3] For the avoidance of doubt, Defendants may not be compelled to produce documents that are outside of their custody or control. *See 7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1107-08 (9th Cir. 1999) (defining control as a legal right to obtain documents upon demand and finding theoretical control insufficient).

believe they hold *Defendants' assets*. Dkt. No. 881 at 1-2. It is for this reason that a heightened showing is so vital. Requests for information about non-debtors' assets triggers the privacy interests of those non-parties, regardless of whether the information is held by the non-parties themselves or by Defendants. Plaintiffs should not be allowed to harass Defendants' officers and directors or commercial counterparties—an obvious tactic to put pressure on Defendants—by subjecting their sensitive financial and business information to disclosure and then dragging them into court to defend discovery requests without first making some threshold showing that such discovery might lead to executable assets. The subpoena on Hippocrene illustrates the point that Plaintiffs are already proceeding with efforts to drag non-debtors into extensive, burdensome discovery into their own finances and the finances of their counterparties. While Plaintiffs agree that these types of non-party requests require a heightened showing of relevance, Dkt. No. 870 at 2; Pls. Mot. 12, 14, they have failed to offer any such support for their broad request in the subpoena.

The same is true with respect to Plaintiffs' demand for information identifying non-debtor individuals who received payments or distributions from Defendants. Plaintiffs attempt to distinguish themselves from *Beautyko LLC v. Amazon Fulfillment Servs.*, Case No. C16-355 RSM, 2018 U.S. Dist. LEXIS 64746 (W.D. Wash. Apr. 16, 2018) by arguing that they are not requesting information about the personal finances of a non-debtor, and yet in the same breath they ask this Court to approve discovery into payments received by individual officers or equity holders who are non-debtors, without even a shred of evidence that those payments were not made in the ordinary course of business. Pls. Mot. 12.

In an attempt to reach a negotiated compromise, Defendants nevertheless offered to produce information about those payments but without the names of the non-debtors in accordance with Israel's Protection of Privacy Law 5741 (1981). Dkt. No. 881 at 4; *see also* Defs. Ex. A. Israeli caselaw confirms that salary and compensation terms is sensitive personal financial information and is precisely the types of information that cannot be disclosed without the

individual's consent. *See* National Labor Court 49/3-2 *State of Israel v. Israel Raich*, (1989) (Isr.), attached as Exhibit C to the Second Declaration of Juan O. Perla ("Second Perla Decl.") filed concurrently herewith.[4] As with loan and credit agreements, Plaintiffs rejected that offer and made clear that they want the names of individuals to identify targets for enforcement. Dkt. No. 881 at 1. Rule 69 does not entitle them to that information absent the requisite threshold showing of relevance.

A heightened showing requirement is also reasonable given the needs of the case. While Plaintiffs complain that they have only received 181 pages of documents, Defendants' productions include the most significant documents for post-judgment discovery such as audited financial statements from 2023 and 2024 (and soon to be produced for 2025 as already agreed), information about bank accounts worldwide and corporate tax returns (as soon as the stipulated AI order is submitted to the Court as previously agreed). Despite the extensive information they already have, Plaintiffs have yet to even attempt a heightened showing to justify their requests for further discovery into non-debtor assets. Plaintiffs' own recounting of Defendants' finances show that Defendants have substantial assets relative the size of the money judgment. It is therefore unnecessary and disproportional to seek discovery of non-debtor assets simply because Defendants are not capable of reaching Defendants' substantial assets abroad as a matter of law, at least pending appeal. A heightened showing is thus reasonable to ensure that any discovery into the assets or finances of non-debtor non-parties is relevant and/or necessary, and is not being pursued merely to harass Defendants, their counterparties, or their officers and equity holders.

[4] Plaintiffs claim that personal identifying information (PII) can be disclosed to them freely because of the existence of a stipulated protective order. They cite no Israeli law to support that contention. Moreover, the problem with that approach is that such information cannot be disclosed in confidence to Plaintiffs, because Plaintiffs have made it clear that they intend to use it to identify targets for further enforcement efforts. *See* National Labor Court 56/3-260 *Alfariah v. Director General of Nat'l. Ins. Inst.*, (1997) (Isr.) (noting need to balance fundamental rights of human dignity and privacy for non-litigants whose information may be disclosed), Second Perla Decl., Ex. D.

**B. Assets in Israel and Luxembourg are Not Executable Pending Appeal and So Their Discovery Is Not Relevant or Proportional to the Needs of the Case**

Plaintiffs do not contest that Israeli and Luxembourg law prevent execution of foreign judgments while an appeal is pending. Nor do they dispute that this Court may not attach or execute on those assets, or any assets outside this district. Instead, Plaintiffs rebut an argument that Defendants have not made regarding whether the current appeals stay discovery. Pls. Mot. 7-8. Rather, Defendants have consistently noted that that laws of Israel and Luxembourg do not permit execution of foreign judgment while an appeal is pending *and therefore discovery into those assets is irrelevant and disproportional to the needs of the case*. Dkt. No. 870 at 4-5; Dkt. No. 881 at 4; Defs. Br. 15.

Plaintiffs' only response to this argument is to point to the Supreme Court's decision in *NML Capital* in support of Plaintiffs' requests for worldwide discovery. That is a misreading and overstatement of that case. As Defendants have explained, the Court in *NML Capital* merely held that the Foreign Sovereign Immunities Act does not immunize a foreign state from worldwide, post-judgment discovery; it did not "authorize" or "approve" of any such discovery. To the contrary, the Court assumed without deciding that such discovery would be available in the ordinary course and made explicitly clear that "this is not a case about the breadth of Rule 69(a)(2)." 573 U.S. at 139-40. To the extent *NML Capital* spoke about the scope of post-judgment discovery, it explicitly stated that if discovery requests "sought only 'information that could not lead to executable assets in the United States or abroad,' then [Defendant] likely would be correct to say that the [Requests] were unenforceable . . . *because information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place*." *NML Capital*, 573 U.S. at 144-45 (emphasis added). Plaintiffs also mischaracterize the Second Circuit cases that followed *NML Capital*. Pls. Mot. 9. Contrary to Plaintiffs' description of the case as affirming worldwide discovery, in *Aurelius Capital Master, Ltd. v. Republic of Argentina*, the Second Circuit made clear that its decision was limited to "issues of sovereign immunity [and] treaty interpretation." 589

Fed. Appx. 16, 16 (2d Cir. 2014). Therefore, all determinations in that case were limited to questions of the immunity of assets from discovery, such as military and diplomatic property. Moreover, to the extent the Second Circuit referenced *NML Capital*, it confirmed Defendants' position that *NML Capital* dealt with whether "the FSIA prohibits discovery of sovereign property that is potentially immune from attachment." *Id.* at 17. To the extent *NML Capital* and subsequent Second Circuit cases can be read to have permitted broad discovery, it must be noted that the judgments at issue in those case totaled around $2.5 billion. 573 U.S. at 136-37. For a judgment of that size, it may have been proportional to the needs of the case to permit broader discovery. By contrast, in the present case the judgment is just over $20 million. It would be completely disproportional to the needs of the case to order discovery as broad as in *NML Capital*.

Additionally, contrary to Plaintiffs' contentions, their discovery requests seek exactly what *NML Capital* determined would be irrelevant, *i.e.*, information that could not lead to executable assets in the United States or abroad. Plaintiffs remain focused on obtaining information about assets in Israel and Luxembourg which Plaintiffs do not dispute may not be executed upon while an appeal is pending. Plaintiffs' reliance on *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, is misplaced. No. C 06-3219 JW (RS), 2009 U.S. Dist. LEXIS 118337 (N.D. Cal. Dec. 18, 2009). That case predated the Supreme Court's decision in *NML Capital* and therefore did not have the opportunity to consider the Court's analysis regarding requests for inexecutable assets. Additionally, *Ryan* involved a foreign jurisdiction where discovery of assets was available pending appeal even though assets were not executable pending appeal. *Id.* at *6 n.2. In fact, the *Ryan* court made a point of noting that Mexican law did not prevent discovery of assets pending appeal. *Id.* By contrast, here, as Plaintiffs acknowledge, Israeli law does not grant access to judgment enforcement mechanisms such as discovery to enforce a foreign judgment pending appeal. *See* CivA 9474/16 *Averbuch v. Otkritie Int'l Inv. Mgmt. Ltd.*, (2018) (Isr.) (asset discovery permitted only after judgment is "declared enforceable"), Second Perla Decl., Ex. E; *see also* Foreign

Judgments Enforcement Law, Section 3.2 (Isr. 1958), Second Perla Decl. Ex. F. *Ryan* is therefore inapposite.[5]

Lastly, Plaintiffs overstate the holding in *Devas Multimedia Priv. Ltd. v. Antrix Corp.* In *Devas*, plaintiffs had already commenced enforcement proceedings abroad and there was no indication that enforcement was unavailable in any relevant jurisdiction, C18-1360 TSZ, 2021 U.S. Dist. LEXIS 154109, at *16 & n.5 (W.D. Wash. Aug. 16, 2021). Therefore, discovery into assets outside the United States was at least arguably relevant and proportional to the needs of the case (where the judgment reached more than $1 billion). By contrast, Plaintiffs here have not indicated that they have commenced any enforcement actions abroad, and they do not dispute that they already "know" that assets in Israel or Luxembourg are not executable pending appeal. *NML Capital*, 573 U.S. at 144. As a result, Plaintiffs should not be granted discovery regarding assets in Israel or Luxembourg.

Defendants have already disclosed information about their assets in the United States and have offered to do the same for assets outside of Israel and Luxembourg above a minimum threshold of $150,000 (to exclude *de minimis* items such as computer equipment held by remote employees, *etc.*). Such information is well beyond what is proportional for the needs of the case.

**C. The Requests Lack a Reasonable Threshold Amount**

As Defendants explained in their motion for a protective order, Plaintiffs' requests do not have any threshold amount, other than a couple of interrogatories that set an absurdly low amount of $5,000. Plaintiffs do not even address the issue of a monetary threshold in their motion to

---

[5] Plaintiffs attempt to shoehorn their request for information about Defendants' receivables into their request for worldwide discovery. Pls. Mot. 9-11. But receivables is not one of the categories of documents that Plaintiffs have requested in their motion. Dkt. No. 870-9 at 1. In fact, although Plaintiffs had identified receivables as part of their proposed "agenda" for discussion during the meet and confers, Plaintiffs themselves chose to defer that discussion for another time. Moreover, to the extent that information about receivables includes customer identifying information, this Court has already said such information is redactable consistent with Israeli export control laws. *See* Dkt. No. 878, August 20 Hearing Transcript, 49:23-50:1.

compel except to suggest that no monetary limit should be applied. Pls. Mot. 17. Discovery requests with no minimum threshold amount (or even a $5,000 threshold amount) would clearly result in overbroad and burdensome discovery. Under Plaintiffs' proposed limitless threshold, even information about office supplies would need to be produced. It cannot be disputed that such information would be useless and disproportional to the needs of any case, especially one involving a money judgment of just over $20 million as is the case here.

Plaintiffs' suggestion that Defendants' proposed minimum threshold of $150,000 is an "arbitrary" cutoff is without merit. By its very nature, any proposed monetary threshold would be arbitrary. The question is whether the proposed threshold is proportional to the needs of the case. A $150,000 threshold is more proportional than no threshold (or any lower threshold) given the $20 million judgment, which warrants discovery only of assets that could make a reasonable dent in the judgment.

**D. No Valid Rationale Exists for Reaching Back Years Before Judgment**

Plaintiffs insist that the temporal scope needs to begin on January 9, 2023, based purely on speculation and conjecture, without making any showing as to the relevance of that date.

Plaintiffs allege without any support that a broader temporal scope would capture "the very period when NSO had the greatest incentive to move assets: between this Court's December 2024 liability ruling and the May 2025 verdict, when NSO knew it would owe damages but not how much." Pls. Mot. 11. Plaintiffs argue that this temporal scope is needed to capture any fraudulent transfers that may have occurred in that time. However, Plaintiffs have Defendants' audited financial statements from 2023 and 2024 and have pointed to no evidence to suggest that there were any unusual transfers. And Defendants already provided a certified answer to that effect. Even when provided with the very documentation that should support their allegations if there was any merit to them, Plaintiffs point to nothing that suggests any irregularities during that period to justify their far-reaching temporal scope. A more reasonable time period should start when the judgment became enforceable, or at most when a damages verdict was entered.

**II. Defendants Have Substantially Responded to Plaintiffs' Discovery Requests and This Court Should Not Order Further Production**

Plaintiffs try to downplay Defendants' production of their most significant financial documents and Defendants' good faith efforts to reach a negotiated resolution on additional productions. As detailed below, Defendants have either produced substantially all documents requested, or have proposed productions that are reasonable and proportional to the needs of the case. Moreover, contrary to Plaintiffs' contentions, Defendants have never requested that Plaintiffs waive any of their rights in exchange for a production of documents.

**A. Loan and Credit Agreements (RFP No. 1)**

In their motion, Plaintiffs ask this Court to compel production of Defendants' loan and credit agreements in response to RFP No. 1. Pls. Mot. 13. This Request initially asked for production of "[a]ll Documents concerning Your corporate governance, formation, capitalization, ownership, financing, and organizational structure during the Relevant Time Period, including corporate charters, certificates of incorporation or formation, shareholder agreements, partnership agreements, operating agreements, merger agreements, equity purchase or sale agreements, loan or credit agreements, qualifications to do business, by-laws, and minutes (including board and committee minutes and resolutions)." Pls. Ex. A at 4. Plaintiffs now request only production of loan and credit agreements because Defendants have already substantially satisfied the remainder of the request. As part of the June 4 stipulation, Defendants produced an organizational chart showing the ownership chain of Defendants' subsidiaries and affiliates (Pls. Ex. N). Defendants have also produced their (i) amended articles of association (Pls. Ex. U); (ii) certificates of incorporation (Pls. Ex. V); and (iii) Q Cyber's name-change certificate (Pls. Ex. W-Y). The cover letter accompanying the production further stated that no shareholder agreements exist starting as of January 9, 2023. Dkt. No. 873-1 at 2. None of the other categories of documents are relevant, and Plaintiffs no longer insist on their production except for loan and credit agreements.

As it relates specifically to loan and credit agreements, that information is also not relevant to identifying Defendants' executable assets, as it is undisputed that a debt to a third-party is not an asset of Defendants that Plaintiffs can reach to satisfy the judgment (as explained more fully above). Still, Defendants offered to produce either (i) the economic terms of the loan and credit agreements in the form of a certified answer, or (ii) the agreements themselves, without third-party identifying information. Dkt. No. 881 at 3. Defendants believed this offer would satisfy Plaintiffs since they claimed in the July 31 letter to the Court that those agreements were relevant "to determine what remains available to satisfy the judgment." Dkt. No. 870 at 2. Plaintiffs offer a similar justification now in their motion to compel. Pls. Mot. 14. However, when faced with Defendants' offer to provide the economic terms of any such agreements after having already disclosed existing liens on assets—information that is sufficient to show "what remains available"—Plaintiffs once again raised the bar, indicating that they needed the names of non-parties to identify targets for enforcement. It is for this reason that Defendants seek a protective order and request that this Court deny the motion to compel. Despite Defendants' good faith efforts to produce documentation to satisfy the request, Plaintiffs insist on obtaining everything they have asked for, including improper disclosure of assets of non-parties, without making any heightened showing. This is unreasonable and disproportional to the needs of the case.[6]

**B. Distributions and Compensation (RFP No. 4 and Interrogatory No. 9)**

Plaintiffs re-stylize RFP No. 4 as seeking "transaction-level records" of Defendants' payments to "insiders." Pls. Mot. 15. Without explanation as to these new terms, Plaintiffs depart from their original request and interrogatory seeking "[d]ocuments sufficient to identify … payments, distributions, or compensation … to any officer, manager, member, or equity holder."

[6] Plaintiffs make reference to the promissory note produced by Defendants as part of a claim that unredacted loan and credit agreements are needed to identify lenders that might have ties to Defendants. Pls. Mot. 14. Defendants voluntarily produced that document without redactions as part of an effort to address Plaintiffs' curiosity about Hippocrene and hopefully obviate the need for further harassing requests on Defendants' counterparties.

Pls. Ex. A at 5; Pls. Ex. B at 5. This Court should ignore Plaintiffs' new broader request and instead look to the request as written. In their motion, Plaintiffs claim that this information is not seeking personal finances of individual non-debtors; however, that is exactly what this request seeks on its face. Pls. Mot. 12-13. Plaintiffs ask about payments to individuals without offering any basis for the relevance of that information. Again, Defendants offered to make the vast majority of the information available, expect for the names of the individuals. Dkt. No. 881 at 4. Defendants are obligated to withhold that information to comply with Israel's Protection of Privacy Law 5741 (1981), which prohibits the unauthorized disclosure of "personal data," such as a name, and "data of special sensitivity," including information about "a person's salary and financial activity." *See* Dkt. No. 886-13 n.5; Defs. Ex. A. It is well settled under Israeli caselaw that this is exactly the type of information the disclosure of which would be prohibited without the individuals' consent. *See supra* Section I.A. If after receiving the redacted information, Plaintiffs could show any irregularities in those payments to justify compelling the production of the personal identifying information, then Defendants could seek leave from an Israeli court to allow for the disclosure of that information. This more measured approach would be reasonable and proportionate to the needs of the case.

**C. Asset Identification and Valuation (RFP No. 13 and Interrogatory Nos. 5–7)**

Lastly, Plaintiffs ask this Court to compel production of valuations of Defendants' "assets … —including formal or informal appraisals, estimates of value, offers, proposals, and pro forma indications of value—and identification of NSO's real property, intellectual property, and other assets," without any geographic or amount limitation. Pls. Mot. 16. Plaintiffs conveniently ignore that Defendants (i) provided a substantive response with respect to valuations after Plaintiffs refused to explain their vague request and (ii) offered to identify assets owned by Defendants in any jurisdictions outside of Israel and Luxembourg—exceeding a total of $150,000—as of May 6, 2025. As to the response on valuations provided by Defendants, at the June 6 meet-and-confer, Defendants noted that, as reflected in their Responses to this Request and Interrogatories, the terms

utilized in RFP No. 13 were vague regarding what types of valuations Plaintiffs were seeking. Pls. Ex. C at 18-19; Pls. Ex. D at 11-13.

For instance, to aid Defendants in identifying responsive documents, Defendants asked Plaintiffs to provide examples of what was meant by "formal" and "informal" appraisals or indications of value. Plaintiffs refused to provide examples and instead encouraged Defendants to provide a definition in their proposed written offer. Defendants did so, and as part of proposed stipulation, offered to provide "[b]oard minutes, or written offers or presentations to third parties indicating a valuation of Defendants' total enterprise value, starting as of January 9, 2023, to the extent any exist." Dkt. No. 870-12 at 2. Although the parties did not execute that stipulation, Defendants' cover letter accompanying their August 7 production nevertheless explained that "no such documents exist." Dkt. No. 873-1 at 3. Plaintiffs now return with their vague and overbroad request, which this Court should deny in favor of Defendants' more specific interpretation.

**D. Defendants Do Not Seek And Have Never Sought Any "Waiver" of Future Requests If Warranted**

For the avoidance of doubt, contrary to Plaintiffs' half-hearted contention (Pls. Mot. 18), Defendants have never sought an advance waiver of Plaintiffs' right to seek warranted supplementation once the productions are reviewed. Tellingly, Plaintiffs never came back to Defendants asking for supplementation of any of the productions that were already made.

Defendants have sought to negotiate the scope of Plaintiffs' existing requests, as is inherent in any meaningful meet-and-confer process, based on Plaintiffs' representations that such narrowing is possible. *See, e.g.*, *InfusAID LLC v. InfuSystem Inc.*, Case No. 17-2243-CM, 2018 U.S. Dist. LEXIS 17051, at *4-14 (D. Kan. Feb. 2, 2018) (ordering parties "to meaningfully confer to narrow the scope of these discovery requests" before documents were produced where "plaintiff did little more than demand full compliance"). Defendants have repeatedly clarified that they are not asking Plaintiffs to "waive" any right to supplement their requests as warranted, but only to reasonably delimit the scope of their existing requests. Dkt. No. 870-11 at 1; *see, e.g.*, *Montgomery*

*v. eTreppid Techs., LLC*, 3:06-CV-0056-PMP (VPC), 2009 LX 91811, at *5-6, *8 (D. Nev. Feb. 25, 2009) (narrowing requested discovery at the "initial" stage of post-judgment proceedings without prejudice to plaintiffs' ability to "renew his request" later). Yet Plaintiffs continue to advance that false narrative.

**III. Any Deposition Must Be Similarly Limited Whether Under Rule 30(b)(6) or 30(b)(1)**

Contrary to Plaintiffs' claims, Defendants have not "refuse[d] to produce any deposition witness." Pls. Mot. 18. As Defendants have made clear, they are prepared to produce Mr. Rosner as the corporate witness in a single deposition pursuant to both the Rule 30(b)(6) and Rule 30(b)(1) "after October 4, subject to any further rulings by this Court." Dkt. No. 881 at 4 n.3.

To mitigate the need to come back to the Court with future disputes, Defendants request that the Court make clear that any limitations on post-judgment discovery imposed by this Court be applied equally to any deposition. In particular, Plaintiffs should not be permitted to question Mr. Rosner, or any witness who are not judgment debtors themselves, about their own finances or their business affairs with other non-debtors. Defs. Br. 17-18. Again, under Rule 69 and 26, that information is not discoverable without a threshold showing that it is relevant to identifying attachable assets of the debtors. Furthermore, with respect to Mr. Rosner, who resides in Israel, Plaintiffs are limited to information within the corporate knowledge of NSO, and not to information that is solely within his personal knowledge or within his knowledge as an officer or employee of other entities, unless Plaintiffs comply with the procedures under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 (entered into force Oct. 7, 1972) ("Hague Convention") to serve an appropriate request on Mr. Rosner in his personal capacity. Defs. Br. 17-18.

Plaintiffs mischaracterize Defendants' Hague Convention argument. Defendants did not suggest that Mr. Rosner would not be made available at all; rather, that Mr. Rosner should only be made available in his capacity as a witness for the company, something that Plaintiffs appear to

agree with in their motion. Pls. Mot. 18 (noting that "a creditor 'is entitled to a very thorough examination of the judgment debtor,' and a corporate debtor's officer 'may be deposed *in that capacity*.'") (emphasis added). This is because a party would ordinarily need to comply with service under the Hague Convention to obtain the testimony of a non-party deponent, who resides abroad (and over whom the Court lacks personal jurisdiction), in their individual capacity. However, in the context of a corporate party in post-judgment discovery, a corporate deponent residing abroad should be compelled to testify only as to corporate knowledge on behalf of the company that is a party to the dispute and over whom the Court has personal jurisdiction.

In the context of depositions, the distinction between personal knowledge and corporate knowledge is meaningful. It governs who the witness represents while giving the testimony, the scope of their testimony, and the preparation required. As it relates to personal knowledge, U.S. courts define "personal knowledge" as firsthand knowledge of a matter that is acquired through a witness's own sensory perceptions and observations. *Cardenas v. Performance Auto Wholesalers LLC*, Case No. 1:24-cv-23654-RAR, 2026 U.S. Dist. LEXIS 32890, at *40 (S.D. Fla. Feb. 18, 2026) ("[P]ersonal knowledge can be established by showing that the witness was in a physical position to see, hear, or otherwise perceive the matters to which the testimony relates."). It includes reasonable inferences drawn from sense, data and firsthand observations, provided those inferences are grounded in actual experience rather than conjecture. *Great Am. Assurance Co. v. Liberty Surplus Ins. Co.*, 669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009) ("[P]ersonal knowledge includes opinions and inferences grounded in observations and experience."). It is distinct from corporate knowledge insofar as the testimony of a corporate designee represents the knowledge, opinions, and subjective beliefs of the corporation itself.

Rule 30(b)(6) allows a deposing party to name an organization as the deponent and describe the matters for examination. For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters. Fed. R. Civ. P. 30(b)(6). A

Rule 30(b)(6) deponent "must testify about information known or reasonably available to the organization." *See* Fed. R. Civ. P. 30(b)(6). Courts have held that known or reasonably available information may be derived from documents, employees, or other sources such as prior fact witness deposition testimony. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996); *see also Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008). But reasonably available should not swallow the distinction between corporate knowledge and an individual deponent's personal knowledge of personal matters or matters not attributable to the corporation that is being deposed. *See Goodyear Tire & Rubber Co. v. Ceva Logistics Singapore, Ltd.*, 348 F.R.D. 54, 77 (E.D. La. 2024); *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 395 (D.N.J. 2011).

Given that Plaintiffs issued deposition notices only to Defendants, who are corporations, any deposition of Mr. Rosner, a non-party residing abroad, should be limited to his corporate knowledge, not his personal knowledge, unless and until Plaintiffs comply with service under the Hague Convention to serve a notice individually on Mr. Rosner.[7] Defs. Br. 18-19. And any deposition should take place in Israel. *Gravestock v. Abilene Motor Express, Inc.*, 8:14-cv-00170-JVS-KESx, 2017 U.S. Dist. LEXIS 225703, *2-3 (C.D. Cal. Mar. 1, 2017) (noting general presumption that the deposition should be conducted in the district of deponent's residence or at the corporation's principal place of business).

Lastly, while Plaintiffs do not explicitly request any discovery into injunction-related topics, they note that Defendants object to "any Rule 30(b)(1) deposition of Mr. Rosner that is not limited to topics related to enforcement of the money judgment," without clarifying whether Plaintiffs still intend to inquire into topics unrelated to enforcement of the money judgment. Pls.

---

[7] Plaintiffs' contention that depositions in this action have been previously performed without complying with the Hague Convention are unavailing. In those instances, the parties arrived at a separate agreement as to those specific depositions. Plaintiffs decided to forgo any further discussions with Defendants about the scope of the depositions and instead prematurely brought the issue before this Court.

Mot. 19. This alone raises concerns that Plaintiffs intend to proceed with topics that are unrelated to any money judgment, including potentially questions related to the injunction and their failed motion for contempt, which would be clearly beyond the scope of Rule 69. The Court's rejection of their contempt motion further forecloses any discovery into the injunction.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter the Proposed Protective Order.

Respectfully submitted,

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**

*/s/ Juan O. Perla*

Juan O. Perla
Turner Smith
David V. Holmes
(admitted *pro hac vice*)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Telephone: (212)-696-6084
Email: jperla@curtis.com
tsmith@curtis.com
dholmes@curtis.com

Jerrold L. Bregman (SBN 149896)
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818)-827-9101
Facsimile: (818)-827-9099
Email: jbregman@bg.law

*Attorneys for Defendants NSO Group Technologies Ltd. and Q Cyber Technologies Ltd.*