Greg D. Andres
Antonio J. Perez-Marques
Luca Marzorati
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
antonio.perez@davispolk.com
luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHATSAPP LLC and META PLATFORMS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>Defendants. | Case No. 4:19-cv-07123-PJH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF PROTECTIVE ORDER**<br><br>**DISCOVERY MATTER**<br><br>Date: December 17, 2026<br>Time: 1:30 p.m.<br>Ctrm: 3<br>Judge: Hon. Phyllis J. Hamilton<br><br>Action Filed: October 29, 2019 |

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....................1

BACKGROUND ....................2

LEGAL STANDARD ....................3

ARGUMENT ....................3

I. NSO HAS NOT CARRIED ITS BURDEN TO SHOW GOOD CAUSE ....................3

II. NSO'S OBJECTIONS ARE NOT PERMISSIBLE LIMITS ON DISCOVERY ....................4

A. Plaintiffs Seek NSO's Own Records, Not Non-Debtors' Assets ....................5

B. Israel's Privacy Law Does Not Justify Withholding Payee Identities ....................7

C. Discovery Extends to NSO's Assets in Israel, Luxembourg, and Elsewhere Abroad ....................8

D. No Dollar Threshold Is Warranted ....................9

E. Discovery Properly Reaches Back to January 9, 2023 ....................10

III. NSO'S DEPOSITION OBJECTIONS DO NOT JUSTIFY A PROTECTIVE ORDER ....................10

A. No Separate Limit on Deposition Scope Is Warranted ....................11

B. The Hague Convention Does Not Govern the Deposition of a Party's CEO ....................11

C. No Order Barring Injunction-Related Questions Is Warranted ....................12

CONCLUSION ....................14

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
2020 WL 5578428 (N.D. Fla. Feb. 18, 2020) ........ 11

*In re Baycol Prods. Litig.*,
348 F. Supp. 2d 1058 (D. Minn. 2004) ........ 11

*Beautyko LLC v. Amazon Fulfillment Servs.*,
2018 WL 1792183 (W.D. Wash. Apr. 16, 2018) ........ 6

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) ........ 3

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
712 F.3d 1349 (9th Cir. 2013) ........ 3, 9, 11, 13

*BrightEdge Techs., Inc. v. Searchmetrics GmbH*,
2017 WL 5171227 (N.D. Cal. Nov. 8, 2017) ........ 8

*Caisson Corp. v. Cnty. W. Bldg. Corp.*,
62 F.R.D. 331 (E.D. Pa. 1974) ........ 11

*In re CRT Antitrust Litig.*,
2014 WL 5462496 (N.D. Cal. Oct. 23, 2014) ........ 12

*Devas Multimedia Priv. Ltd. v. Antrix Corp.*,
2021 WL 3616787 (W.D. Wash. Aug. 16, 2021) ........ 3

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
286 F.R.D. 288 (E.D. Va. 2012) ........ 6, 14

*E. & J. Gallo Winery v. Andina Licores S.A.*,
2007 WL 333386 (E.D. Cal. Jan. 31, 2007) ........ 14

*Fitbit, Inc. v. P-Cove Enters.*,
2018 WL 2215465 (N.D. Cal. May 15, 2018) ........ 13

*Glass Egg Digital Media v. Gameloft, Inc.*,
2019 WL 2499710 (N.D. Cal. June 17, 2019) ........ 7

*Gubarev v. BuzzFeed, Inc.*,
2017 WL 5634935 (S.D. Fla. Aug. 15, 2017) ........ 11

*Hernandez v. Lynch*,
2019 WL 6998774 (C.D. Cal. June 18, 2019) ........ 13

*Insulet Corp. v. EOFlow Co.*,
2025 WL 1333427 (D. Mass. May 6, 2025) ........ 10, 14

*La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
285 F.R.D. 481 (N.D. Cal. 2012) .......... 3

*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
2019 WL 356805 (N.D. Ill. Jan. 29, 2019) .......... 13

*McCarthy v. Johnson*,
2022 WL 3038862 (D.D.C. Aug. 2, 2022) .......... 11

*Meggitt (Orange Cnty.), Inc. v. Yongzhong*,
2014 WL 12967458 (C.D. Cal. Mar. 21, 2014) .......... 12

*Montgomery v. eTreppid Techs., LLC*,
2009 WL 465941 (D. Nev. Feb. 25, 2009) .......... 4, 6

*Munoz v. China Expert Tech., Inc.*,
2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011) .......... 12

*Nichols v. Credit Union 1*,
2019 WL 13147902 (D. Nev. July 26, 2019) .......... 4

*NML Cap., Ltd. v. Republic of Argentina*,
2013 WL 655211 (N.D. Cal. Feb. 21, 2013) .......... 6

*Patriot Rail Corp. v. Sierra R.R. Co.*,
2016 WL 492702 (E.D. Cal. Feb. 8, 2016) .......... 6

*Reebok Int'l, Ltd. v. McLaughlin*,
49 F.3d 1387 (9th Cir. 1995) .......... 8

*Reece v. Basi*,
2014 WL 2565986 (E.D. Cal. June 6, 2014),
*aff'd*, 704 F. App'x 685 (9th Cir. 2017) .......... 3

*Republic of Argentina v. NML Cap., Ltd.*,
573 U.S. 134 (2014) .......... 3, 4, 8

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) .......... 7

*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*,
2009 WL 5114077 (N.D. Cal. Dec. 18, 2009) .......... 3

*SEC v. Volkswagen AG*,
2023 WL 1927244 (N.D. Cal. Feb. 10, 2023) .......... 8

*Shapiro v. Paul Revere Life Ins. Co.*,
1997 WL 601430 (N.D. Cal. 1997) .......... 13

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*,
482 U.S. 522 (1987) .......... 7, 11

*Solid Income Ltd. v. EnergyInvest LLC*,

2025 WL 2417181 (N.D. Cal. Aug. 21, 2025) ... 3

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, 2019 WL 6134958 (N.D. Cal. Nov. 19, 2019) ... 7, 12

*Timeless Prod. FZ LLC v. Baker*, 350 F.R.D. 638 (N.D. Cal. 2026) ... 13

*Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*, 254 F. Supp. 2d 469 (D. Del. 2003) ... 11

*In re Uber Techs., Inc.*, 2024 WL 3416644 (N.D. Cal. July 14, 2024) ... 4, 7

*United States v. D & P Prods., Inc.*, 2019 WL 5091131 (E.D. Cal. Aug. 28, 2019) ... 14

*United States v. Vetco, Inc.*, 691 F.2d 1281 (9th Cir. 1981) ... 7

*Vasquez v. Leprino Foods Co.*, 2019 WL 1934015 (E.D. Cal. May 1, 2019) ... 13

*Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*, 2005 WL 8162980 (C.D. Cal. Mar. 14, 2005) ... 5

## STATUTES & RULES

Fed. R. Civ. P. 26 ... 3, 12

Fed. R. Civ. P. 30 ... *passim*

Fed. R. Civ. P. 62 ... 9, 10

Fed. R. Civ. P. 69 ... *passim*

## OTHER AUTHORITIES

12 C. Wright & A. Miller, *Federal Practice & Procedure* § 3014 (3d ed.) ... 5

## PRELIMINARY STATEMENT

NSO owes Plaintiffs more than $20 million. It has paid nothing, posted no bond, and obtained no stay. Yet by its own account, it has continued to operate and to pay its employees since the judgment. MTC at 4–5, 16.[1] NSO now asks this Court for an order that would prevent Plaintiffs from learning the location of NSO's money. NSO's proposed order would improperly limit post-judgment discovery to the United States, where NSO claims its only assets are two trademarks; exclude Israel and Luxembourg, where NSO and its parents are headquartered and its known accounts are held; exclude assets worth less than $150,000; reach back no further than December 12, 2025; bar discovery of "information of any person or entity other than Defendants"; and prohibit all injunction-related discovery. Dkt. No. 886-4 ¶¶ 1–7. Each proposed limit carves out exactly where NSO's money is most likely to be. NSO's motion should be denied. Rule 69 does not let a judgment debtor decide where its creditor may look.

NSO's motion for a protective order rests on a premise the Court has already considered and rejected: that NSO's payments to insiders, debts to lenders, and receivables are information about "non-debtors' assets." Mot. at 11. The Court disagreed, stating: "in my view, this is not third-party discovery." Dkt. No. 889-5 (Aug. 20, 2026 Hr'g Tr.) at 49:5–6. The rest of NSO's motion largely repeats its July 31 joint-letter positions, Dkt. No. 870, which Plaintiffs' motion to compel already answers: a pending appeal does not suspend Rule 69 discovery, foreign assets are not beyond discovery, and discovery properly reaches back before the judgment. MTC at 7–20 (Parts I–III).

What is new in the motion runs into a more basic problem: NSO offers no evidence that warrants issuance of a protective order. A protective order requires a showing of specific harm, yet NSO's only declaration comes from its U.S. counsel, Dkt. No. 886-1 ("Perla Decl."), and attaches an unofficial translation of an Israeli statute and a subpoena. Perla Decl. ¶¶ 2–3 & Exs. A–B. Part I of this opposition shows that this failure alone requires denial. Part II shows that each document limit

---

[1] Defendants' Motion for Entry of Protective Order (Dkt. No. 886) is cited herein as "Mot." Plaintiffs' Motion to Compel Post-Judgment Discovery (Dkt. No. 888) is cited herein as "MTC."

proposed by NSO also fails on its own terms. Part III shows that NSO's proposed deposition limitations would let its CEO speak for NSO while refusing, absent a request through the Hague Convention, to allow him to answer questions about NSO's relationship with the lender that has funded it since the judgment.

Plaintiffs' Requests are narrowly tailored to the three categories the Court identified on August 20—loan and credit agreements, payments and distributions to insiders, and valuation and identification of assets—plus the two noticed depositions. Plaintiffs have dropped injunction topics from the corporate deposition and offered to consider any other limit NSO could substantiate, though NSO substantiated none.

NSO asks for an order that would leave nothing meaningful to discover. The Court should deny NSO's motion and grant Plaintiffs' motion to compel, Dkt. No. 888.

## BACKGROUND

Plaintiffs' motion to compel sets out the background in full. MTC at 2–6. In brief, the Court entered final judgment of $4,447,190 on November 12, 2025, Dkt. No. 810, and awarded $15,914,095 in attorneys' fees on January 30, 2026, Dkt. No. 835. NSO has appealed both awards but has neither posted a bond nor obtained a stay, and it has paid nothing. MTC at 2–3.

To locate assets, Plaintiffs served requests for production and interrogatories on March 4, 2026 (the "Requests"). *See* Dkt. No. 840; Dkt. No. 889 (Marzorati Decl.) Exs. A–B. After four meet-and-confers, a joint letter, Dkt. No. 870, and the further conference the Court ordered on August 20, NSO has produced about 181 pages. MTC at 3–5. NSO's offers at that conference were conditioned on a global resolution, and none would have shown whom NSO pays, owes, or is owed by. *Id.* at 1–2, 5–6. On these cross-motions, Plaintiffs seek only the three categories the Court identified and the two noticed depositions. *See id.* at 20.

Plaintiffs noticed a Rule 30(b)(6) deposition of NSO on July 23, 2026, and a Rule 30(b)(1) deposition of NSO's chief executive officer, Mr. Rosner, on August 25, 2026. Dkt. Nos. 881-1, 881-2. At an August 13 meet-and-confer, NSO promised a markup of the Rule 30(b)(6) topics; it never

provided one. MTC at 6. On October 16, 2026, the Court directed the parties to present all outstanding disputes by cross-motion. Dkt. No. 885. NSO filed this motion on October 30, 2026, Dkt. No. 886, and Plaintiffs filed their motion to compel the same day, Dkt. No. 888.

After the September 3 conference left NSO's lenders undisclosed, Plaintiffs subpoenaed Hippocrene Ventures LLC, the Delaware entity that acquired NSO's secured lenders' rights. MTC at 4. The subpoena prompted NSO to produce the Hippocrene note. *Id.* at 4–5.

**LEGAL STANDARD**

A party seeking a protective order must show "good cause" to protect it "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "[A] party asserting good cause bears the burden, for each particular document [it] seeks to protect, of showing that specific prejudice or harm will result." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013); *see Devas Multimedia Priv. Ltd. v. Antrix Corp.*, 2021 WL 3616787, at *5 (W.D. Wash. Aug. 16, 2021) (applying that rule to Rule 69 discovery). The party resisting discovery "has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). That burden is "heavy." *Reece v. Basi*, 2014 WL 2565986, at *2 (E.D. Cal. June 6, 2014) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)), *aff'd*, 704 F. App'x 685 (9th Cir. 2017). After judgment, relevance is measured against Rule 69, which authorizes discovery "from any person—including the judgment debtor." Fed. R. Civ. P. 69(a)(2). "The rules governing discovery in post[-]judgment execution proceedings are quite permissive." *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138 (2014).

**ARGUMENT**

**I. NSO HAS NOT CARRIED ITS BURDEN TO SHOW GOOD CAUSE**

NSO cannot meet its burden to justify a protective order by recasting Rule 69 as a narrow remedy. NSO suggests that post-judgment discovery must be "tailored" to executable assets. Mot. at 10–11. The rule is the opposite: a judgment creditor is entitled to "a very thorough examination

of a judgment debtor with respect to its assets," and "[t]he presumption should be in favor of discovery." MTC at 12–13 (quoting *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *1 (N.D. Cal. Dec. 18, 2009), and *Solid Income Ltd. v. EnergyInvest LLC*, 2025 WL 2417181, at *3 (N.D. Cal. Aug. 21, 2025)).

None of NSO's authorities supports its suggestion. As Plaintiffs' motion explains, *NML*'s relevance passage confirms debtor-focused discovery, and *DuPont*, *Blasket*, and *Crews* each either compelled discovery from the debtor or limited discovery reaching beyond it. MTC at 9–10. *NML*'s footnote 6 preserves only privilege and comity objections; NSO asserts no privilege and, as shown in Part II.B, makes no comity showing. *Id.* at 10 n.3. The one case NSO adds is no different: *Montgomery v. eTreppid Technologies, LLC* directed that "the initial focus of discovery should be on the judgment debtors themselves" and compelled their tax returns, bank records, and accounting records. 2009 WL 465941, at *1–2 (D. Nev. Feb. 25, 2009).

Nor does NSO offer evidence of specific harm. NSO's only declaration, from U.S. counsel, attaches an unofficial translation of an Israeli statute and the Hippocrene subpoena. Perla Decl. ¶¶ 2–3 & Exs. A–B. No NSO officer describes any cost, volume, or harm warranting a protective order. Confidentiality, the only interest NSO identifies, is addressed by the Stipulated Protective Order. Dkt. No. 132; *see* MTC at 16. NSO's Rule 26(c) cases do not help. *Nichols v. Credit Union 1* was a pre-judgment class action about "discovery on discovery." 2019 WL 13147902, at *1–2 (D. Nev. July 26, 2019). *In re Uber Technologies, Inc.* concerned pre-judgment subpoenas to Uber's competitor and vendors—and where the court ordered production, it held that "the existing Protective Order . . . [is] sufficient to protect any privacy interests." 2024 WL 3416644, at *7 & n.7 (N.D. Cal. July 14, 2024). So too here.

Because NSO has made no particularized showing of harm, the Court should deny its motion at the threshold.

## II. NSO'S OBJECTIONS ARE NOT PERMISSIBLE LIMITS ON DISCOVERY

NSO's objections to document discovery share a common design: each carves out exactly where NSO's money is most likely to be. NSO would exclude what it paid insiders and owes lenders by relabeling its own records as non-party information, and would withhold the names of those it

paid by invoking a privacy statute it never explains. NSO would also exclude Israel and Luxembourg, where it and its parents are headquartered and its known accounts are held; every payment below $150,000; and the period before December 12, 2025, during which NSO knew a judgment was coming. Dkt. No. 886-4 ¶¶ 1–7. What would remain are two U.S. trademarks NSO has already disclosed. Rule 69 does not let a judgment debtor define the search for its assets so that nothing can be found.

### A. Plaintiffs Seek NSO's Own Records, Not Non-Debtors' Assets

NSO's payments to insiders, its debts, and its receivables are records of NSO's own assets, and no heightened showing is required to obtain them. The parties agree on the test: "[t]he key question is whether the information is about non-party assets." Mot. at 13.[2] These documents are not; they are NSO's records of what NSO paid, owes, and is owed.

NSO's contrary characterization confuses its own money with someone else's. NSO calls "information about [its] payments or distributions to officers or equity holders, or information regarding Defendants' debts and liabilities" information about "non-debtors' assets." Mot. at 11. But a payment NSO made to an officer is money that left an NSO account, and a loan is a repayment promise NSO made, often secured by NSO's property. Plaintiffs are not asking what an officer did with his salary or what a lender owns; they are asking what NSO paid and owes, to whom, and on what terms. An individual's bank statements and mortgage papers list the people paid and the bank holding the mortgage, yet no one would call them records of someone else's finances. As the Court observed, "this is not third-party discovery." Dkt. No. 889-5 (Aug. 20, 2026 Hr'g Tr.) at 49:5–6; *see* MTC at 12.

These records are how a creditor finds a debtor's assets, which cannot be done by looking only at what the debtor holds today. *See Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*, 2005 WL 8162980, at *2 (C.D. Cal. Mar. 14, 2005) (post-judgment discovery reaches "both current assets and past financial transactions that could lead to the existence of fraudulently concealed

---

[2] NSO's complaint that the Requests define "You" and "Affiliate" to include NSO's officers, employees, beneficial owners, and affiliates, Mot. at 2 n.1, 6 n.3, does not change the answer. Those definitions identify whose files NSO must search for responsive documents, as in any document request; they do not convert NSO's own records into discovery of anyone else's assets. Plaintiffs seek only NSO's records of NSO's own assets, liabilities, and transfers. MTC at 12.

or fraudulently conveyed assets" (cleaned up)); 12 C. Wright & A. Miller, *Federal Practice & Procedure* § 3014 (3d ed.) (creditor may discover "assets that have been fraudulently transferred or are otherwise beyond the reach of execution"). Payment records are the only way to trace money paid to insiders. Loan agreements are the only way to know what remains for Plaintiffs—and whether a pledge to an insider-linked lender such as Hippocrene keeps assets out of reach.

That is why the "heightened showing" NSO demands has no application here: it applies only when a creditor seeks to examine a non-debtor third-party's finances, and NSO's own authorities draw exactly that line. *See Patriot Rail Corp. v. Sierra R.R. Co.*, 2016 WL 492702, at *5–6 (E.D. Cal. Feb. 8, 2016) (rejecting debtor's demand for a showing of "fraudulent conveyance or alter ego" because the cited cases "involve discovery or enforcement efforts directed to non-parties, which is not what is sought here"); MTC at 12. Plaintiffs' motion explains why *Uniden*, *Trendsettah*, and *Beautyko* address the finances of someone other than the judgment debtor. MTC at 12. NSO adds *NML Cap., Ltd. v. Republic of Argentina*, 2013 WL 655211 (N.D. Cal. Feb. 21, 2013), which it describes as a ruling "upon debtor's motion." Mot. at 13. It was not. The creditor there moved to compel a non-party, Chevron, to produce documents about Argentina's instrumentalities, and the court applied the third-party threshold test because "the scope of discovery that may be obtained from third parties by a judgment creditor is limited." *NML Cap.*, 2013 WL 655211, at *1–3. The case says nothing about a judgment debtor's own loan agreements or payments. *Beautyko*, NSO's lead example, in fact compelled the judgment debtors to produce essentially everything the creditor sought about the debtors themselves—including financial statements given to lenders, bank records, "[d]ocuments reflecting the current assets and liabilities of each Judgment Debtor, and all asset transfers," security interests, and "[r]ecords of all accounts receivable, notes receivable, or indebtedness due." *Beautyko LLC v. Amazon Fulfillment Servs.*, 2018 WL 1792183, at *3–5 (W.D. Wash. Apr. 16, 2018). The court withheld only a non-debtor co-owner's personal tax returns and third parties' dealings with him. *Id.* at *3. Plaintiffs seek no insider's personal returns or accounts. And *Montgomery*, which NSO cites for the proposition that courts may narrow discovery at an "initial" stage, Mot. at 5

n.2, narrowed discovery to the judgment debtors' own records—which is all Plaintiffs ask for here. 2009 WL 465941, at *1–2.[3]

Because each disputed category records NSO's own assets, liabilities, or transfers, NSO's heightened-showing objection fails, and the Court should deny paragraph 1 of the proposed order.[4]

### B. Israel's Privacy Law Does Not Justify Withholding Payee Identities

NSO's reliance on Israel's Protection of Privacy Law as a bar to discovery is misplaced. NSO has not shown that the law bars it from disclosing whom it paid. The argument is merely NSO's non-party argument that the Court already rejected in another form, and NSO bears "the burden of showing that such [foreign] law bars production." *United States v. Vetco, Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981); *see Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, 2019 WL 6134958, at *1 (N.D. Cal. Nov. 19, 2019) (party must "prove that [foreign law] bars it from producing the discovery"). NSO's only evidence is its U.S. counsel's declaration attaching an unofficial translation of the Protection of Privacy Law, 5741-1981, with no explanation of its meaning or application. Perla Decl. ¶ 2 & Ex. A. No Israeli-law expert explains the statute, and no one attests to any enforcement risk. The Court need not "adhere blindly" to NSO's unsupported reading. *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 544 n.29 (1987).

Even if the Protection of Privacy Law applied here, NSO does not attempt the governing analysis. Foreign blocking statutes do not "deprive an American court of the power to order a party

---

[3] The same rule governs the Rule 30(b)(6) topics. Receivables owed to NSO are NSO's assets, so topics addressing them seek debtor discovery. *See E.I. DuPont de Nemours & Co. v. Kolon Indus., I*nc., 286 F.R.D. 288, 290, 293 (E.D. Va. 2012); MTC at 9–10. NSO also objects to topics addressing transactions among other entities "that would not necessarily include Defendants." Mot. at 6. Those topics are directed to flows of value within NSO's own corporate group. MTC at 9–10, 15. To avoid any doubt, Plaintiffs will limit them to transactions through which value moved to or from NSO, directly or through an affiliate. Whether NSO's value has moved to its affiliates is a question about NSO's assets, and a Rule 30(b)(6) witness is the natural source of the answer.

[4] NSO devotes pages to Plaintiffs' subpoena to Hippocrene, Mot. at 8–9, 14, but that subpoena is not at issue here. The Court need not address it, and any protective order should not reach it. There are also serious questions whether NSO may object to the subpoena at all, because a party "does not have standing [to] object to a nonparty subpoena on the basis that the subpoena seeks irrelevant information, or that it would impose an undue burden . . . when the nonparty has not objected." *In re Ube*r, 2024 WL 3416644, at *2–3 (quoting *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019)).

subject to its jurisdiction to produce evidence." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474 (9th Cir. 1992) (quoting *Aérospatiale*, 482 U.S. at 544 n.29). The invoking party must show that comity outweighs disclosure under *Richmark*'s multi-factor test. *Id.* at 1474–75. This Court has already rejected NSO's earlier Israeli-law objections. *See* Dkt. No. 233. NSO does not cite *Richmark* or its factors; its comity argument is a single citation to *NML*'s footnote 6. Mot. at 10 (citing 573 U.S. at 146 n.6). Nor is the one sensitivity the Court identified at the August 20, 2026 hearing implicated: it contemplated withholding counterparty identities only for government customers whose identities have not been ordered disclosed. MTC at 14. The payees here are NSO's own officers, managers, and equity holders. Courts in this District routinely order production notwithstanding foreign privacy statutes. *See BrightEdge Techs., Inc. v. Searchmetrics GmbH*, 2017 WL 5171227, at *2 (N.D. Cal. Nov. 8, 2017) (German privacy laws); *SEC v. Volkswagen AG*, 2023 WL 1927244, at *2 n.1 (N.D. Cal. Feb. 10, 2023) (German discovery rules). Any residual concern is addressed by the Stipulated Protective Order, which permits Attorneys' Eyes Only designation. Dkt. No. 132; MTC at 16.

The Court should reject NSO's request to withhold or anonymize payee identities, Dkt. No. 886-4 ¶ 1, and order production under the Stipulated Protective Order.

### C. Discovery Extends to NSO's Assets in Israel, Luxembourg, and Elsewhere Abroad

NSO seeks to exclude the discovery of assets located in Israel and Luxembourg. Granting NSO's request would wall off nearly everything NSO owns. Plaintiffs' motion explains why neither the appeal nor the foreign location of assets limits discoverability under Rule 69: Section 1963 governs registration, not discovery; *NML* rejected limiting discovery to executable assets; and courts routinely permit worldwide asset discovery. MTC at 7–11 (Part I.A–B). NSO's fallback request would effectively prevent the discovery Plaintiffs are entitled to, because Israel and Luxembourg are where NSO and its parents are headquartered and its known accounts are held. MTC at 3–4, 17. And the information is needed now: it will tell Plaintiffs where to register the judgment after the appeal, and delay would leave NSO free to move or encumber those assets. *Id.* at 17.

Nor do the authorities NSO adds in its motion support a geographic limit. *Reebok International, Ltd. v. McLaughlin* held only that a court lacked personal jurisdiction to hold a non-party Luxembourg bank in contempt of an asset-freeze order, because the bank "obeyed the only law applicable to it." 49 F.3d 1387, 1394 (9th Cir. 1995). It says nothing about discovery from a party. And as Plaintiffs' motion explains, *Ryan* rejected the very argument NSO makes—that foreign law barring execution pending appeal forecloses discovery. MTC at 8. The practice guide NSO cites, Mot. at 15 n.6, is not authority. The Court should deny paragraph 2 of the proposed order.

**D. No Dollar Threshold Is Warranted**

Plaintiffs requested identification of any transfer of assets exceeding $5,000. In response, NSO asks the Court to exclude transfers or transactions for less than $150,000 but offers no legitimate reason for doing so. Instead, NSO speculates that without the $150,000 floor, Plaintiffs' Requests "could capture large amounts of irrelevant information." Mot. at 16. It does not say how many transactions fall below $150,000, what a floor of $150,000 would exclude, or what producing responsive transactions below the proposed floor would cost, and no one at NSO attests to any of this. *See* Perla Decl. ¶¶ 2–3. A protective order requires a showing "that specific prejudice or harm will result," *Blum*, 712 F.3d at 1355; a hypothetical that information "could" be irrelevant is not that showing.

Nor does the June 4 stipulation or NSO's supplemental interrogatory response supply that showing. The $100,000 transfer disclosure and $150,000 ordinary-course figures were an interim arrangement to move production forward while negotiations continued, with rights expressly reserved. Dkt. No. 853 ¶ 1 ($100,000 transfer disclosure); Dkt. No. 870-6 at 7 ($150,000 ordinary-course figure). Plaintiffs never agreed that those figures mark the limits of relevance, and NSO cannot convert an interim, non-waiving arrangement into a floor.

NSO's proposed $150,000 floor is also arbitrary and ill-suited to the disputed categories. It is untethered to anything, MTC at 17, and the more than $20 million NSO owes Plaintiffs favors discovery, not limits. Insider payments can each fall below $150,000 yet add up to large sums; valuations and asset identification are not "transactions" at all; and a floor would invite structuring to stay beneath it.

Plaintiffs do not oppose reasonable limits, but any limit must rest on a demonstrated burden. If NSO substantiates one, Plaintiffs will address it in good faith. A burden asserted only in the abstract cannot support a protective order, and the Court should deny the $150,000 floor, Dkt. No. 886-4 ¶ 3.

**E. Discovery Properly Reaches Back to January 9, 2023**

Plaintiffs have requested that NSO search for and produce responsive documents beginning from January 9, 2023. NSO's suggestion that December 12, 2025 should be the beginning date for responsive documents would exclude the period when NSO had the greatest incentive to move assets; Plaintiffs' motion to compel explains why discovery properly reaches back to January 9, 2023. MTC at 12 (Part I.C). Two further points confirm it. First, Rule 62(a) stays execution, not discovery, and NSO has already represented that it made no transfers above $100,000 since January 9, 2023, other than those in its financial statements or in the ordinary course, Dkt. No. 870-6 at 6–7—undercutting any claim that the period is too burdensome to search. Second, NSO's own authority permitted transfer discovery reaching years before the verdict because there is "a presumption in favor of 'full discovery'" and past transfers "may reasonably relate[] to [the debtors'] ability to satisfy the judgment." *Insulet Corp. v. EOFlow Co.*, 2025 WL 1333427, at *3 (D. Mass. May 6, 2025). *Insulet* also held that such discovery is "not dependent on the veracity of the asset-concealment claims." *Id.* The Court should reject NSO's start date.

**III. NSO'S DEPOSITION OBJECTIONS DO NOT JUSTIFY A PROTECTIVE ORDER**

NSO offers to produce its CEO to speak for the company as a Rule 30(b)(6) witness while placing much of what he knows off limits. Although NSO now says it "intend[s] to designate Mr. Rosner as the corporate witness under Rule 30(b)(6)," Mot. at 18, it asks the Court to (1) limit any deposition to NSO's proposed document scope, Mot. at 17; Dkt. No. 886-4 ¶ 5; (2) rule that Mr. Rosner's "non-corporate knowledge of his personal affairs or his personal knowledge of the affairs of other non-parties is off limits as a matter of law unless Plaintiffs comply with the Hague Convention," Mot. at 18; Dkt. No. 886-4 ¶ 6; and (3) bar all injunction-related questions, Mot. at 19–20; Dkt. No. 886-4 ¶ 7. The first argument falls with NSO's document limits; the second has no basis in law

and contradicts NSO's own practice; and the third addresses topics Plaintiffs have already agreed to handle separately. *See also* MTC at 18–20.

**A. No Separate Limit on Deposition Scope Is Warranted**

NSO offers no independent reason to narrow the scope of depositions, arguing only that "[a]ny narrowing of the scope of the Requests should thus apply equally to the scope of any deposition." Mot. at 17. That derivative limit falls for the reasons in Part II. NSO must show "that specific prejudice or harm will result," *Blum*, 712 F.3d at 1355, yet it never provided the topic-by-topic markup it promised and, outside Topics 17–20, identifies no objectionable topic. MTC at 18–19. Scope objections are preserved at the deposition by objecting, not by refusing to answer. Fed. R. Civ. P. 30(c)(2). The Court should deny paragraph 5 of the proposed order.

**B. The Hague Convention Does Not Govern the Deposition of a Party's CEO**

Nothing in the Hague Convention stands between Plaintiffs and a deposition of NSO's chief executive. The Convention is neither the exclusive means nor a mandatory first resort for obtaining discovery from a party over which the court has jurisdiction. *Aérospatiale*, 482 U.S. at 539 ("[T]he Convention was intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad."). A corporate judgment debtor's officer "may be deposed in that capacity" as part of "a very thorough examination of the judgment debtor," and a deposition notice may be served on a foreign party through its U.S. counsel. MTC at 18–20 (quoting *Caisson Corp. v. Cnty. W. Bldg. Corp.*, 62 F.R.D. 331, 335 (E.D. Pa. 1974), and collecting cases).

NSO's contrary authorities are inapposite: none involved an officer of a party, and each turned on the court's lack of personal jurisdiction over a foreign non-party. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 5578428, at *5–7 (N.D. Fla. Feb. 18, 2020) (French government-associated research institute that was not a defendant and over which the court lacked jurisdiction); *Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) (Dutch individuals who were "not parties to the lawsuit" and "not otherwise subject to the jurisdiction of the Court"); *McCarthy v. Johnson*, 2022 WL 3038862, at *1 (D.D.C. Aug. 2, 2022) (Hong Kong-based adviser to the deceased debtor); *Gubarev v. BuzzFeed, Inc.*, 2017 WL 5634935, at *1 (S.D. Fla. Aug. 15, 2017) (director of a foreign non-party company); *In re Baycol Prods. Litig.*, 348 F.

Supp. 2d 1058, 1060 (D. Minn. 2004) (Italian prosecutor, "a foreign person that is not a party to this case"). NSO is a party over which this Court has jurisdiction, and Mr. Rosner is its CEO.

NSO's line between Mr. Rosner's "corporate" and "personal" knowledge is also artificial. Putting "the affairs of other non-parties" off limits, Mot. at 18, would cover the questions that matter most. NSO's payments to insiders, including Mr. Rosner, are NSO's own transfers. And Mr. Rosner appears to have personal knowledge of NSO's dealings with Hippocrene. MTC at 5. NSO's rule would let its CEO testify about NSO's finances while refusing, absent a letter of request, to answer questions about the lender relationship that has funded NSO since the judgment.

Nor do comity or the post-judgment posture warrant a detour through the Convention. NSO argues that bypassing it would undermine comity and that its safeguards are "especially important" after judgment, Mot. at 18–19, but cites only a treatise passage on the Convention's general purpose. The post-judgment setting cuts the other way: Rule 69 entitles a creditor to examine a corporate debtor's officers, and courts have compelled foreign judgment debtors' witnesses to appear in the forum. MTC at 18. And before judgment, NSO never invoked the Convention when Plaintiffs deposed four NSO executives, including its then-CEO, on notices served on U.S. counsel. MTC at 19–20.

Worse, a Hague request would serve only to delay. Courts recognize that Hague procedures are "slow and cumbersome" and decline to require them where ineffective. *Meggitt (Orange Cnty.), Inc. v. Yongzhong*, 2014 WL 12967458, at *2 (C.D. Cal. Mar. 21, 2014) (quoting *Munoz v. China Expert Tech., Inc.*, 2011 WL 5346323, at *1 (S.D.N.Y. Nov. 7, 2011)); *see Sun Grp.*, 2019 WL 6134958, at *3; *In re CRT Antitrust Litig.*, 2014 WL 5462496, at *6 (N.D. Cal. Oct. 23, 2014). NSO's own positions—that Israeli law restricts disclosure and that Israel will not enforce the judgment pending appeal—confirm that a letter of request would yield delay, not testimony. The Court should deny paragraph 6 of the proposed order and direct NSO to produce Mr. Rosner under Rule 30(b)(1), in a single sitting with his Rule 30(b)(6) testimony. *See* MTC at 20.

### C. No Order Barring Injunction-Related Questions Is Warranted

No order is needed to keep injunction topics out of the corporate deposition; Plaintiffs have already agreed to address them separately. A protective order guards against actual "annoyance,

embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1); it does not resolve disputes already settled. On August 13, 2026, "[a]t Defendants' urging, Plaintiffs agreed to address the injunction-related topics separately from the topics relating to enforcement of the money judgment." Dkt. No. 889 (Marzorati Decl.) ¶ 8. Plaintiffs' motion seeks a Rule 30(b)(6) designee only on asset topics. MTC at 18–20. NSO nonetheless asks the Court to bar Topics 17–20, Mot. at 19–20, and all "post-judgment discovery regarding the injunction," Dkt. No. 886-4 ¶ 7—an accommodation it requested and already received.

Nor is NSO entitled to an advance order restricting what Plaintiffs may ask Mr. Rosner individually. The movant must show "that specific prejudice or harm will result." *Blum*, 712 F.3d at 1355. Counsel "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Those are the "exclusive grounds," *Shapiro v. Paul Revere Life Ins. Co.*, 1997 WL 601430, at *1 (N.D. Cal. 1997), and instructing a witness "not to answer based on relevancy is entirely improper," *Fitbit, Inc. v. P-Cove Enters.*, 2018 WL 2215465, at *2 (N.D. Cal. May 15, 2018); *see Timeless Prod. FZ LLC v. Baker*, 350 F.R.D. 638, 639 (N.D. Cal. 2026). NSO identifies no expected question, no harm from answering, and no privilege. Its remedy for an improper question is to object on the record, with Rule 30(d)(3) available if questioning becomes abusive.

The denial of Plaintiffs' contempt motion does not supply such a limitation. NSO asserts that Plaintiffs "did not request the Court's authorization to take any discovery" in those proceedings. Mot. at 8. In fact, Plaintiffs asked the Court to order a sworn declaration detailing NSO's compliance—itself a request for information. Dkt. No. 879-1. Regardless, the order did not address depositions and left the injunction in place. Dkt. No. 884. Orders that do not address deposition questioning are not "limitation[s] ordered by the court." *See Vasquez v. Leprino Foods Co.*, 2019 WL 1934015, at *2, 6 (E.D. Cal. May 1, 2019); *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 2019 WL 356805, at *4–5 (N.D. Ill. Jan. 29, 2019) (order denying document requests did not limit deposition questioning); *Hernandez v. Lynch*, 2019 WL 6998774, at *3 (C.D. Cal. June 18, 2019).

Rule 69 also reaches injunction-related discovery. Although Plaintiffs do not at this time seek a Rule 30(b)(6) topic on injunction compliance, NSO has provided no authority that would bar Plaintiffs from posing forward-looking questions related to NSO's compliance. And Rule 69 supplies no basis for barring such questions to Mr. Rosner. Plaintiffs do not seek to reopen or supplement the denied contempt motion; any compliance questions would look forward, as part of his ordinary deposition. Rule 69(a)(2) authorizes discovery "[i]n aid of the judgment or execution" and, unlike Rule 69(a)(1), is not limited to money judgments. NSO's own authority permitted post-judgment discovery serving only a permanent injunction because it "reasonably aid[ed] the enforcement of the final judgment and permanent injunction." *Insulet*, 2025 WL 1333427, at *2–3; *see also United States v. D & P Prods., Inc.*, 2019 WL 5091131, at *2 (E.D. Cal. Aug. 28, 2019) (post-judgment discovery available "to investigate and to ensure compliance with this injunction"); *E. & J. Gallo Winery v. Andina Licores S.A.*, 2007 WL 333386, at *5 (E.D. Cal. Jan. 31, 2007). The point is stronger here, where the Final Judgment "shall also include the permanent injunction." Dkt. No. 810. And questions about how NSO earns revenue and who pays it are asset discovery in their own right. *See DuPont*, 286 F.R.D. at 290, 293. Because there is no legal basis for cabining questions to monetary judgments alone, Plaintiffs request that the Court decline to enter paragraph 7 of the proposed order and leave objections to particular questions for the deposition record. If the Court has concerns about injunction-related questioning, the answer is to defer them to a concrete dispute—not to bar such discovery for the life of the injunction.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny NSO's Motion for Entry of Protective Order in its entirety and grant Plaintiffs' Motion to Compel Post-Judgment Discovery, Dkt. No. 888.

Dated: November 13, 2026

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: *Micah G. Block*

Greg D. Andres
Antonio J. Perez-Marques
Luca Marzorati
(admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: greg.andres@davispolk.com
antonio.perez@davispolk.com
luca.marzorati@davispolk.com

Micah G. Block (SBN 270712)
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
Email: micah.block@davispolk.com

*Attorneys for Plaintiffs*
*WhatsApp LLC and Meta Platforms, Inc.*